## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re Application of CHEVRON CORPORATION for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings | Case Nos.    2:10-mc-00208-JD,                 2:10-mc-00209-JD |
| In re Application of RODRIGO PEREZ PALLARES and RICARDO REIS VEIGA for an Order to Conduct Discovery for Use in Foreign Proceedings | |

### MEMORANDUM OF LAW IN PARTIAL OPPOSITION TO APPLICATIONS FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS FILED BY CHEVRON CORPORATION AND RODRIGO PEREZ PALLARES AND RICARDO REIS VEIGA

Eric W. Bloom*
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC 20006
(202) 282-5000

* *Pro hac vice* application pending.

Jonathan F. Bloom
Thomas W. Dymek
Identification Nos. 45542, 86248
STRADLEY, RONON, STEVENS & YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA 19103-7098
(215) 564-8000

*Attorneys for Interested Party
Republic of Ecuador*

# TABLE OF CONTENTS

                                                                                                                                        **Page**

BACKGROUND ............................................................................................................................3

ARGUMENT ..................................................................................................................................6

       I.       The Common Interest Privilege Protects Communications Between The Republic And Kohn ..................................................................................................6

             A.       The Republic's Attorneys Communicated In Confidence With Kohn ........6

             B.       The Republic's Communications With Kohn Were In Furtherance Of Common Legal Interests ............................................................................7

       II.      Attorney Work Product Protects The Documents At Issue Here .............................9

       III.     Kohn Cannot Waive The Republic's Attorney-Client Privilege Or Work Product Protection ....................................................................................................9

CONCLUSION .............................................................................................................................10

The Republic of Ecuador (the "Republic") submits this memorandum in partial opposition to the applications for discovery under 28 U.S.C. § 1782 filed by Applicant Chevron Corporation (Case No. 2:10-mc-00208-JD) and by Applicants Rodrigo Perez Palleres and Ricardo Reis Veiga (Case No. 2:10-mc-00209-JD) from attorney Joseph C. Kohn and his law firm, Kohn, Swift & Graf, P.C. (collectively, "Kohn"). Specifically, the Republic objects to the production of any document or the disclosure of any information that may be covered by the Republic's work product protection or attorney-client privilege as extended by the common interest / joint defense agreement between the Republic and Kohn's current or former clients, the *Lago Agrio* plaintiffs.[1] The Republic takes no position on whether Chevron's requested discovery from Kohn meets the statutory or discretionary requirements associated with Section 1782. Moreover, the Republic expects that if this Court grants Chevron's application, Kohn will assert privilege as appropriate to cover the Republic's protected information. However, because a privileged communication, once disclosed, is normally deemed disclosed forever, the Republic files this Partial Opposition to Chevron's Application.

Chevron's effort to obtain discovery from Kohn is just one piece of a seventeen-year, multi-continent pollution damages war between Chevron and its subsidiaries (collectively, "Chevron"), on the one hand, and a group of indigenous Ecuadorian citizens, on the other. The plaintiffs' case against Chevron was first brought in the United States District Court for the Southern District of New York in 1993. That case was ultimately dismissed on *forum non*

---

[1] We recently requested from counsel for Kohn an opportunity to review responsive documents reflecting communications with the Republic or counsel for the Republic and an opportunity to review the privilege log as it relates to these documents to ensure accurate and fulsome descriptions. We have been advised, however, that the privilege log will not be completed until Monday, at which time it will be produced to the Applicants. Assuming the Republic obtains the documents over which the joint defense / common interest privilege is being asserted, the Republic will separately review the descriptions after receipt of the privilege log to ensure its agreement with Kohn's descriptions of the documents and the privilege assertions. Any disagreements will be brought to the attention of counsel for Kohn and/or this Court.

*conveniens* grounds, and subsequently re-filed in an Ecuadorian court ("*Lago Agrio*") in 2003. The environmental litigation is now in its eighth year in Ecuador.

In this Section 1782 action, Applicants seek documents and a deposition from Mr. Kohn, a U.S. attorney for the indigenous Ecuadorian citizens, and his law firm. Though this legal dispute obviously involves some of its citizens, the sovereign Republic has never been a party to its citizens' litigation with Chevron. In fact, in the early years of that litigation, the Government of Ecuador publicly sided with Chevron's predecessor.[2] More recently, elected leaders of the Republic have offered public statements of sympathy for the plaintiffs. But at all times, the Government has stated that it would leave resolution of the legal issues to the Ecuadorian courts and has declined requests from both parties to intervene on their behalf.[3]

In recent years, Chevron has brought three successive arbitrations against the Republic in an effort to obtain a declaration that a certain 1995 environmental release from the Republic and its state-owned oil company, PetroEcuador, released Chevron not only from claims belonging to the State, but from all third-party claims as well—even though the release was limited to claims belonging to the State, and notwithstanding an earlier Memorandum of Understanding that specifically reserved and excluded from the release rights of third-parties. Finding itself adverse to Chevron in those arbitrations, the Republic exercised its right to enter into a joint defense agreement with the Ecuadorian plaintiffs for the purposes of obtaining information regarding the *Lago Agrio* case needed to defend itself against Chevron's attacks and pursuing certain shared legal strategies to defend itself with respect to specific claims and defenses raised by Chevron. *See* Dec. 1 Bloom Decl., Ex. 2, Declaration of Eric W. Bloom (Nov. 19, 2010) ("Nov. 19 Bloom

---

[2] *See* Declaration of Eric W. Bloom (December 1, 2010) ("Dec. 1 Bloom Decl."), Ex. 4, Oral Arg. Tr. (Apr. 29, 1998) at 22, *Jota v. Texaco, Inc.*, 97-9102(L), 97-9104 (CON), 97-9108 (CON) (2d. Cir.).
[3] *See* Dec. 1 Bloom Decl., Ex. 3, Deposition of Alberto Wray (November 2, 2010) ("Wray Tr.") at 35:20-36:9.

Decl.") ¶ 7. Inter-counsel communications regarding these subjects are protected by the common interest privilege—a privilege that cannot be waived by one party without consent of the other. Under these circumstances, the Republic expects Kohn to assert privilege over any and all written or oral communications with representatives of the Republic that are otherwise covered by the privilege.

In seeking similar documents from Mr. Kohn's former co-counsel, Steven Donziger, in the U.S. District Court for the Southern District of New York, Chevron moved to compel *all* documents listed on Mr. Donziger's privilege log, primarily on the basis that Mr. Donziger failed to produce a privilege log in a timely manner. Applicants also criticized the Republic for relying on Mr. Donziger to protect the privilege, even though it is unnecessary for both parties to a joint defense agreement to assert privilege to protect that privilege. *See, e.g.*, *Sony Electronics, Inc. v. Soundview Tech., Inc.*, 217 F.R.D. 104, 108 (D. Conn. 2002); *In re Payroll Exp. Corp.*, 1996 WL 706941 (S.D.N.Y. 1996). By this pleading, the Republic makes clear that it is asserting, and not waiving, all applicable evidentiary privileges.

## BACKGROUND

From 1993 to the present, indigenous Ecuadorian citizens have been embroiled as plaintiffs in litigation against Chevron over oilfield pollution in Ecuador. That litigation began in the U.S. District Court for the Southern District of New York ("*Aguinda*") but, at Chevron's insistence, was conditionally dismissed on *forum non conveniens* grounds in favor of litigation in Ecuador. The re-filed case ("*Lago Agrio*") is now at the epicenter of multiple collateral attacks launched by Chevron, which alleges that the plaintiffs are engaged in a "massive" fraud and that the Government of Ecuador has interfered with the judicial processes.

As detailed below, since 2004, Chevron has commenced a AAA arbitration in New York, two major international arbitrations, and, more recently, a series of Section 1782 discovery

3

actions, against the Republic, even though the Republic had affirmatively refused to intervene in *Lago Agrio* or *Aguinda* on behalf of either party.[4]

First, in June 2004, Chevron brought a AAA arbitration in New York against the Republic's state-owned oil company, PetroEcuador, seeking a declaration that *Lago Agrio* should be dismissed outright or that PetroEcuador should be contractually obligated to indemnify Chevron for all defense costs and any liability that Chevron might incur in *Lago Agrio*. Dec. 1 Bloom Decl., Ex. 1, Demand for Arbitration (June 2004). PetroEcuador and the Republic filed a petition to stay the AAA arbitration in New York state court, which Chevron removed to the Southern District of New York. In June 2007 the District Court permanently stayed the AAA arbitration on the ground that the Republic was not a party to, nor was otherwise contractually bound by, the agreement that Chevron argued committed the Republic to arbitration and indemnification. *Republic of Ecuador v. ChevronTexaco Corp.*, 499 F. Supp. 2d at 452, *aff'd*, *Republic of Ecuador v. ChevronTexaco Corp.*, 296 F. App'x 124 (2d Cir. 2008), *cert. denied*, __ U.S. __, 129 S. Ct. 2862 (2009).

Second, as part of its overall plan to discredit the Ecuadorian judiciary, Chevron filed an international arbitration under the Ecuador-U.S. Bilateral Investment Treaty ("BIT") against the Republic in December 2006, alleging that it had been "denied justice" by the Ecuadorian judiciary through long delays in the resolution of certain contract disputes unrelated to *Lago Agrio*. Even though those disputes were pending in different Ecuadorian courts before different judges, Chevron tried to use the *Lago Agrio* case as an example of the alleged bias and incompetence of the Ecuadorian judiciary as a whole. To defend against these accusations, the

---

[4] *See* Dec. 1 Bloom Decl., Ex. 3, Wray Tr. at 35:20-36:9.

4

Republic was forced to continue investigating the status and history of the *Lago Agrio* proceedings—despite having no other involvement in the case.

Third, on September 23, 2009, Chevron initiated a second BIT arbitration against the Republic, this time alleging that the Republic has violated the BIT by "allowing" the *Lago Agrio* case to proceed, as if the State either had the right or obligation to shut down private-party litigation. Declaration of Scott A. Edelman (Nov. 15, 2010), Ex. F, Notice, ¶ 76 (Sept. 23, 2009). In Chevron's view, the Republic had earlier "released" it from *all* claims—and thus the Republic became responsible for the acts of the private-party plaintiff, even though the environmental litigation was launched at a time when the Republic was siding with Texaco. Chevron also alleges that the Republic has "colluded" with the plaintiffs in causing the *Lago Agrio* court to deny Chevron due process. Among other relief, Chevron seeks a declaration that it is not liable to the *Lago Agrio* plaintiffs, that PetroEcuador is instead "exclusively" liable for any damages awarded in that proceeding, and that any judgment against it should be declared unenforceable.

Fourth, Chevron has filed a series of Section 1782 actions, including this one, seeking discovery purportedly in aid of the current BIT arbitration and the *Lago Agrio* litigation. In those actions, Chevron has repeatedly alleged misconduct by the *Lago Agrio* plaintiffs, including improper communications with the court-appointed expert and "collusion" with the Government of the Republic, and insinuated that Government officials have also acted improperly. However, Chevron has never alleged—much less submitted any evidence showing—that the Government (or its U.S. lawyers) reviewed, edited, or altered any of the expert reports that form the heart of its fraud claims.

Having found itself adverse to Chevron and with an information deficit regarding the facts of the longstanding *Aguinda* and *Lago Agrio* cases, the Republic exercised its right to have its counsel consult with counsel for the other party adverse to Chevron—the *Lago Agrio* plaintiffs. Nov. 19 Bloom Decl. ¶¶ 5-8. Thus, in January 2006 when Winston & Strawn LLP had just entered its appearance on behalf of the Republic in the AAA action, respective counsel for the Republic and the *Lago Agrio* plaintiffs entered into a joint defense / common interest agreement. *Id.* ¶ 9.

**ARGUMENT**

**I. The Common Interest Privilege Protects Communications Between The Republic And Kohn**

The common interest privilege is an extension of the attorney-client privilege and "protects communications between an individual and an attorney for another when the communications are 'part of an on-going and joint effort to set up a common defense strategy.'" *Matter of Bevill, Bresler & Schulman Asset Management Corp.*, 805 F. 2d 120, 126 (3d Cir. 1986) (citing *Eisenberg v. Gagnon,* 766 F.2d 770, 787 (3d Cir. 1985)); *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) (citing *United States v. Bay State Ambulance and Hosp. Rental Serv.*, 874 F.2d 20, 28 (1st Cir. 1989)). To garner protection under the common interest privilege the party claiming the privilege must show that "the communication in question was given in confidence and that the client reasonably understood it to be so given." *Schwimmer*, 892 F.2d at 243-44 (citing *United States v. Keplinger*, 776 F.2d 678, 701 (7th Cir. 1985); *Kevlik v. Goldstein*, 724 F.2d 844, 849 (1st Cir. 1989)).

**A. The Republic's Attorneys Communicated In Confidence With Kohn**

From the beginning, the communications between the Republic, its attorneys, and Kohn were made in confidence. According to Black's Law Dictionary, communications in confidence

6

are those "made in trust and not intended for public disclosure." BLACK'S LAW DICTIONARY 317 (8th ed. 2007). Here the vast majority of email communications between representatives of the Republic and Kohn were sent directly between counsel for the purpose of discussing legal strategy—there is no colorable argument that they were intended for public disclosure. Even the few communications that included third parties were to experts or consultants retained by the *Lago Agrio* plaintiffs—both groups who the Republic's attorneys reasonably expected to keep the communications confidential. *See In re Grand Jury Investigation*, 918 F. 2d 374, 386 (3d Cir. 1990)(citing 8 *Wigmore on Evidence* § 2311 (McNaughton rev. ed. 1961))(confirming that presence of a third party will not vitiate the attorney-client privilege, if the third party possesses a commonality of interest with the client). Additionally, as is evidenced by the fact that the parties entered in to a joint defense agreement, both parties actually and reasonably understood all communications to be in confidence. Thus, assuming the content of these emails satisfy the other requirements of attorney client privilege, there is no legally valid justification for disregarding the Republic's claim of common interest privilege based on lack of confidentiality.

### B. The Republic's Communications With Kohn Were In Furtherance Of Common Legal Interests

Chevron—not the Republic—created and then maintained a legal environment in which it made sense for the Republic and the *Lago Agrio* plaintiffs to share privileged information. Parties may enter into a privileged common interest relationship when their counsel decides to undertake an "on-going and joint effort to set up a common defense strategy." *Eisenberg*, 766 F.2d at 787. "[T]he parties among whom privileged matter is shared must have a common legal, as opposed to commercial, interest" and "they must have demonstrated cooperation in formulating a common legal strategy." *Bank Brussels Lambert v. Credit Lyonnais Suisse*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995). Once a common interest relationship is formed, the privilege

7

"allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others." *In re Teleglobe Communications Corp.* 493 F.3d 354, 364 (3d Cir. 2007).

Here, Chevron's decision to repeatedly bring arbitration and litigation claims against the Republic—including claims for breach of contract and violation of the BIT—that challenge the very existence of the *Lago Agrio* action and its marshalling of the same arguments in its actions against the Republic as it has raised in *Lago Agrio* created the common interest between the Republic and the *Lago Agrio* plaintiffs. Although the Republic and the *Lago Agrio* plaintiffs do not share a common interest in the outcome of the *Lago Agrio* litigation, they do share identical legal interests in preventing:

- an arbitration or U.S. court order predicated on alleged breaches of the Republic's contract or treaty commitments that would require the Republic to intervene in its domestic court proceedings, contrary to Ecuadorian law, to shut down the *Lago Agrio* litigation prior to judgment;

- an arbitration or U.S. court order predicated on alleged breaches of the Republic's contract or treaty commitments finding that the Chevron is or is not liable to the *Lago Agrio* plaintiffs;

- Chevron from preemptively challenging a *Lago Agrio* judgment and thereby violating its promise to the *Aguinda* courts that it would submit to jurisdiction in Ecuador, thereby compromising the reputation of the Ecuadorian judiciary and wasting precious judicial resources;

In furtherance of their shared legal interests, counsel for the Republic and the *Lago Agrio* plaintiffs entered into a joint defense agreement and common interest relationship to share privileged information and strategy. Thus, the Republic's privilege and work product protections extend to communications between representatives of the Republic and the *Lago Agrio* plaintiffs in furtherance of these common legal interests.

## II. Attorney Work Product Protects The Documents At Issue Here

The documents the Republic seeks to protect may also be protected under the attorney work product doctrine, which "'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *In re Cendant Corp. Securities Litigation*, 343 F.3d 658, 662 (3d Cir. 2003) (quoting *United States v. Nobles*, 422 U.S. 225, 238 & n. 11 (1975)). This protection applies to "'documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).'" *Id.* (quoting Fed.R.Civ.P. 26(b)(3)).

First, there is no dispute that every email and attachment is a document. Second, the Republic anticipates that Kohn's privilege log will make clear that each and every document protected by the Republic was prepared in anticipation of or in the throes of litigation or arbitration against the Republic. Third, the privilege log will demonstrate that the documents to or from the Republic's counsel were drafted by an attorney or created at the direction of an attorney. Simply put, the privilege log will show that the emails and attachments exchanged between the Republic and Kohn meet all of the requirements to be protected under the attorney work product doctrine.

## III. Kohn Cannot Waive The Republic's Attorney-Client Privilege Or Work Product Protection

As just one party to the common interest / joint defense agreement, Kohn may not waive the privilege or work product protections held by the Republic. RICE, 1 ATTORNEY CLIENT PRIVILEGE IN THE UNITED STATES, § 4:30, at 4-199-200 (2d ed. 2010) ("[C]onsistent with the law when parties who share communications under a joint defense agreement or community of interests arrangement, because each client has equal rights to the protection of the privilege, *one*

9

*of the joint clients cannot waive the privilege for the remainder of the group of clients.*"); *see also Chicago Ins. Co. v. Health Care Indemnity, Inc.*, 2010 WL 3123149, *3 (S.D. W.Va. August 06, 2010); *Haines v. Liggett Group Inc.*, 975 F.2d 81, 90 (3d Cir. 1992) (stating that privilege is the client's, not the attorney's).

Moreover, it is black letter law that protection is not waived by a party sharing attorney work product with parties that are not its adversaries. *See* 8 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE; Civil 2d § 2024 at 369 (2d ed. 1994) ("Thus, the result should be, that disclosure of a document to third persons does not waive the work-product immunity unless it has substantially increased the opportunities for potential adversaries to obtain the information."); *United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010) ("Voluntary disclosure does not necessarily waive work-product protection . . . because it does not necessarily undercut the adversary process." (internal citations and quotation omitted)).

## CONCLUSION

For the foregoing reasons, the Republic objects to any discovery requested in the Applications that would otherwise impinge on the Republic's evidentiary privileges.

Dated: Philadelphia, PA
December 1, 2010

By: s/ Thomas W. Dymek

Eric W. Bloom*
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC 20006
Phone: (202) 282-5000
Fax: (202) 282-5100

Jonathan F. Bloom
Thomas W. Dymek
Identification Nos. 45542, 86248
STRADLEY, RONON, STEVENS & YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA 19103-7098
(215) 564-8000

*Pro hac vice* application pending.

*Attorneys for Appellant*
*The Republic of Ecuador*

10