UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

CHEVRON CORPORATION,

               Plaintiff,

vs.

STEVEN DONZIGER, THE LAW OFFICES
OF STEVEN R. DONZIGER, et al.,

               Defendants.

CASE NO. 11-CV-0691-LAK

---

**STEVEN DONZIGER'S AND THE LAW OFFICES OF STEVEN R. DONZIGER'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
CHEVRON'S COMPLAINT**

---

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ..................................................................1

II.    ARGUMENT ..........................................................................................1

    A.    Legal standard ..............................................................................1

    B.    Chevron's First Claim for Relief for violations of RICO, 18 U.S.C. § 1962(c), fails to state a claim upon which this Court may grant relief. ..................2

        1.    Chevron's Complaint impermissibly seeks to apply RICO to conduct that is overwhelmingly extraterritorial. ...........................2

        2.    Chevron has not alleged a pattern of racketeering activity. ........................5

        3.    Chevron has not adequately alleged any predicate acts sufficient to support its RICO claim. ..........................................7

            a.    Chevron has not adequately alleged extortion under the Hobbs Act or New York State law. ................................7

            b.    Chevron has not alleged the reliance and resulting harm necessary to support a claim of mail or wire fraud. .......................10

            c.    Defendants' alleged false statements to U.S. Courts and alleged efforts to cover up their unlawful conduct does not constitute predicate acts under RICO. .....................................14

            d.    Chevron's money laundering allegations fail along with its extortion and fraud allegations. ...............................15

    C.    Chevron's Second Claim for Relief for conspiracy to violate RICO, 18 U.S.C. § 1962(d), fails to state a claim which this Court may grant relief. .........................................................................15

    D.    Chevron's Third Claim for Relief for fraud fails to state a claim upon which this Court may grant relief. ..........................................16

    E.    Chevron's Fourth Claim for Relief for tortious interference with contract fails to state a claim upon which this Court may grant relief. .................19

    F.    Chevron's Fifth Claim for Relief for trespass to chattels fails to state a claim upon which this Court may grant relief. .......................................21

    G.    Chevron's Sixth Claim for Relief for unjust enrichment fails to state a claim upon which this Court may grant relief. .......................................22

    H.    Chevron's Seventh Claim for Relief for civil conspiracy fails to state a claim upon which this Court may grant relief. .......................................23

    I.    Chevron's Eighth Claim for Relief for violations of New York Judiciary Law § 487 fails to state a claim upon which this Court may

**TABLE OF CONTENTS**
**(cont'd)**

|  |  |  | **Page** |
|--|--|--|---------|
|  |  | grant relief. .................................................................................................... | 23 |
|  | J. | Chevron's Ninth Claim for Relief for a declaration that the Judgment by the Lago Agrio Court against Chevron is unenforceable or non-recognizable fails to state a claim upon which this Court may grant relief. ...................................................................................................... | 24 |
| III. |  | CONCLUSION ................................................................................................... | 27 |

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Amalfitano v. Rosenberg*
428 F. Supp. 2d 196 (S.D.N.Y. 2006) ........................................................................23

*Amusement Indus., Inc. v. Stern*
693 F. Supp. 2d 327 (S.D.N.Y. 2010) ....................................................................16, 18

*Anza v. Ideal Steel Supply Corp.*
547 U.S. 451 (2006)................................................................................................13

*Baisch v. Gallina*
346 F .3d 366 (2d Cir. 2003) ..................................................................................13

*Basic v. Fitzroy Eng'g, Ltd.*
949 F. Supp. 1333 (N.D. Ill. 1996) ......................................................................26, 27

*Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J.*
448 F.3d 573 (2nd Cir. 2006) ..................................................................................22

*Brownstone Inv. Group, LLC. v. Levey*
468 F. Supp. 2d 654 (S.D.N.Y. 2007) ......................................................................17

*Building Indus. Fund v. Local Union No. 3 Int'l Broth of Elec. Workers,
AFL-CIO*
992 F. Supp. 162 (E.D.N.Y. 1996) ............................................................................9

*C.V. Starr & Co., Inc. v. American Int'l Group, Inc.*
No. 06 Civ. 2157 (HB), 2006 WL 2627565 (S.D.N.Y. Sep. 14, 2006)....................................22

*Carmona v. Spanish Broadcasting System, Inc.*
No. 08 civ. 4475 (LAK), 2009 WL 890054 (S.D.N.Y. Mar. 30, 2009) ............................15, 23

*Cedeño v. Intech Group, Inc.*
733 F. Supp. 2d 471 (S.D.N.Y. 2010) ..................................................................2, 4, 5

*Conte v. Newsday, Inc.*
703 F. Supp. 2d 126 (E.D.N.Y. 2010) ....................................................................8, 10

*Deck v. Engineered Laminates*
349 F.3d 1253 (10th Cir. 2003) ................................................................................8

*DeFalco v. Bernas*
244 F.3d 286 (2d Cir. 2001) ....................................................................................5

*Doe ex rel. Doe v. Federal Exp. Corp.*
571 F. Supp. 2d 330 (D. Conn. 2008)........................................................................21

*Dole Food Co., Inc. v. Gutierrez*
2004 WL 3737123 (C.D. Cal. 2004) ........................................................................27

*Ello v. Singh*
531 F. Supp. 2d 552 (S.D.N.Y 2007) ........................................................................8

*Feeley v. Whitman Corp.*
65 F. Supp. 2d 164 (S.D.N.Y. 1999) ..........................................................................7

*First Capital Asset Management, Inc. v. Satinwood, Inc.*
385 F.3d 159 (2d Cir. 2004) ..................................................................................15

# TABLE OF AUTHORITIES
## (cont'd)

Page(s)

*First Pac. Bancorp, Inc. v. Bro*
   847 F.2d 542 (9th Cir. 1988) ....................................................................................9

*G-I Holdings, Inc. v. Baron & Budd*
   179 F. Supp. 2d 233 (S.D.N.Y. 2001) .......................................................................9

*Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*
   713 F. Supp. 2d 215 (S.D.N.Y. 2010) .....................................................................22

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*
   17 F. Supp. 2d 275 (S.D.N.Y. 1998) .......................................................................20

*Harris v. Mills*
   572 F.3d 66 (2d Cir. 2009) ........................................................................................1

*Hemi Group, LLC v. City of New York*
   130 S.Ct. 983 (2010) ................................................................................................11

*Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.*
   665 F. Supp. 2d 239 (S.D.N.Y. 2009) .....................................................................14

*Hollander v. Flash Dancers Topless Club*
   173 Fed. Appx. 15 (2d Cir. 2006) ...........................................................................11

*I.S. Joseph Co., Inc. v. J. Lauritzen A/S*
   751 F.2d 265 (8th Cir. 1984) .....................................................................................9

*In re Am. Express Co. S'holders Litig.*
   39 F.3d 395 (2d Cir. 1994) ......................................................................................11

*In re Jetblue Airways Corp. Privacy Litigation*
   379 F. Supp. 2d 299 (E.D.N.Y. 2005) .....................................................................22

*Kashelkar v. Rubin & Rothman*
   97 F. Supp. 2d 383 (S.D.N.Y. 2000) .......................................................................18

*Kimm v. Lee*
   No. 04 Civ. 5724(HB), 2005 WL 89386 (S.D.N.Y. Jan. 13, 2005) .........................10

*Kirch v. Liberty Media Corp.*
   449 F.3d 388 (2nd Cir. 2006) ..................................................................................23

*Lerner v. Fleet Bank, N.A..*
   318 F.3d 113 (2d Cir. 2003) ....................................................................................13

*Linens of Europe, Inc. v. Best Mfg., Inc.*
   No. 03 Civ. 9612 (GEL), 2004 WL 2071689 (S.D.N.Y. Sep. 16, 2004).....................6

*Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*
   354 F. Supp. 2d 293 (S.D.N.Y. 2008) .......................................................................6

*McLaughlin v. American Tobacco Co.*
   522 F.3d 215 (2d Cir. 2008) ....................................................................................14

*Mergens v. Dreyfoos*
   166 F.3d 1114 (11th Cir. 1999) ...............................................................................18

*Mina Investment Holdings Ltd. v. Steven W. Lefkowitz*
   16 F. Supp. 2d 355 (S.D.N.Y. 1998) .......................................................................20

**TABLE OF AUTHORITIES**
(cont'd)

Page(s)

*Morrison v. National Australia Bank Ltd.*
130 S.Ct. 2869 (2010) .................................................................................................4

*N. Trust Bank of Florida/Sarasota N.A. v. Coleman*
632 F. Supp. 648 (S.D.N.Y. 1986) ...........................................................................23, 24

*Nastro v. D'Onofrio*
542 F. Supp. 2d 207 (D. Conn. 2008).........................................................................6

*Nat'l Group for Commc'n and Computers Ltd. v. Lucent Techs. Inc.*
420 F. Supp. 2d 253 (S.D.N.Y. 2006) .......................................................................16

*Norex Petroleum Ltd. v. Access Indus., Inc.*
540 F. Supp. 2d 438 (S.D.N.Y. 2007) .......................................................................5

*Norex Petroleum Ltd. v. Access Industries, Inc.*
631 F.3d 29 (2d Cir. 2010) ................................................................................2, 3, 4, 5

*Norris v. Grosvenor Marketing Ltd.*
803 F.2d 1281 (2nd Cir. 1986) ..................................................................................19

*North South Finance Corp. v. Al-Turki*
100 F.3d 1046 (2d Cir. 1996) ....................................................................................4

*Park South Assoc. v. Fischbein*
626 F. Supp. 1108 (S.D.N.Y. 1986) ...........................................................................9

*Philadelphia Reserve Supply Co. v. Norwalk & Associates, Inc.*
Civ. A. No. 91-0449, 1992 WL 210590 (E.D. Pa. Aug. 25, 1992) ...........................14

*Plata v. Darbun Enterprises, Inc.*
No. 09 cv 44-1EG (CAB), 2009 WL 3153747 (S.D. Cal. Sep. 23 2009)....................26

*Ray Larsen Associates, Inc. v. Nikko America, Inc.*
No. 89 Civ. 2809 (BSJ), 1996 WL 442799 (S.D.N.Y. Aug. 6 1996) ........................14

*Republic of Ecuador, et al., v. Chevron Corporation, et al.*, Nos. 10-1020-
cv (L) 10-1026 (Con), – F.3d – , 2011 WL 905118 (2d Cir. Mar. 17,
2011) ......................................................................................................16, 17, 18, 25

*Republic of Ecuador v. ChevronTexaco Corp.*
376 F. Supp. 2d 334 (S.D.N.Y. 2005) .......................................................................19

*RSM Production Corp. v. Fridman*
643 F. Supp. 2d 382 (S.D.N.Y. 2009) .......................................................................20

*Schaifer Nance & Co. v. Estate of Warhol*
119 F.3d 91 (2d Cir. 1997) ........................................................................................6

*Scheidler v. National Organization for Women*
Inc., 537 U.S. 393 (2003).........................................................................................7

*Schertenleib v. Traum*
589 F.2d 1156 (2d Cir. 1978) ....................................................................................23

*Schuh v. Druckman & Sinel, LLP*
No. 07 Civ. 366 (LAK) (GWA), 2008 WL 542504 (S.D.N.Y. Feb. 29,
2008) .........................................................................................................................18

*Segarra v. Messina*
153 F.R.D. 22 (N.D.N.Y. 1994) ...............................................................................10

**TABLE OF AUTHORITIES**
(cont'd)

<u>Page(s)</u>

*Seldon v. Bernstein*
No. 09 Civ. 6163 (AKH), 2010 WL 3632482 (S.D.N.Y. Sep. 16, 2010)..................................24

*Sharma v. Skaarup Ship Mgmt. Corp.*
916 F.2d 820 (2nd Cir. 1990) .....................................................................................................20

*Sheridan v. Mariuz*
No. 07 Civ. 3313 (SCR) (LMS), 2009 WL 920431 (S.D.N.Y. Apr. 6,
2009) ...........................................................................................................................................13

*Speight v. Benedict*
No. 5:05-CV-542 (FJS/GHL), 2007 WL 951492 (N.D.N.Y. Mar. 28,
2007) ...........................................................................................................................................14

*Starr v. Sony BMG Music Entm't*
592 F.3d 314 (2d Cir. 2010) .........................................................................................................1

*U.S. v. Philip Morris USA, Inc.* Civ. Action No. 99-2496 (GK), – F. Supp.
2d – , 2011 WL 1113270 (D.D.C. Mar. 28, 2011) .......................................................................4

*UFCW Local 1776 v. Eli Lilly and Co.*
620 F.3d 121 (2d Cir. 2010) .......................................................................................................11

*United States v. Biaggi*
909 F.2d 662 (2d Cir. 1990) .......................................................................................................14

*United States v. Bryser*
954 F.2d 79 (2d Cir. 1992) .........................................................................................................21

*United States v. Pendergraft*
297 F.3d 1198 (11th Cir. 2002) ....................................................................................................8

*Vemco, Inc. v. Camardella*
23 F.3d 129 (6th Cir. 1994) ..........................................................................................................9

*von Bulow by Auersperg v. von Bulow*
657 F. Supp. 1134 (S.D.N.Y. 1987) ..............................................................................................9

*World Wide Wrestling Entm't v. Jakks Pacific, Inc.*
530 F. Supp. 2d 486 (S.D.N.Y. 2007) .........................................................................................15

*Zhu v. First Atlantic Bank*
No. 05 Civ. 96 (NRB), 2005 WL 2757536 (S.D.N.Y. Oct. 25, 2005) ............................6, 16, 19

**State Cases**

*Aglira v. Julien & Schlesinger, P.C.*
631 N.Y.S.2d 816 (1995)............................................................................................................19

*Alexander & Alexander of New York, Inc. v. Fritzen*
68 N.Y.2d 968 (1986)..................................................................................................................23

*Aymes v. Gateway Demolition Inc.*
817 N.Y.S.2d 233 (2006)......................................................................................................16, 17

*Chung v. Wang*
912 N.Y.S.2d 647 (2010)............................................................................................................19

*City of Syracuse v. R.A.C. Holding, Inc.*
685 N.Y.S.2d 381 (1999)............................................................................................................23

## TABLE OF AUTHORITIES
### (cont'd)

**Page(s)**

*Eurycleia Partners, LP v. Seward & Kissel, LLP*
  12 N.Y.3d 553 (2009) ...................................................................................16

*Haber v. Kisner*
  680 N.Y.S.2d 233 (N.Y. App. Div. 1998) .....................................................24

*Kaufman v. Cohen*
  760 N.Y.S.2d 157 (2003) ...............................................................................19

*Nineteen New York Properties Limited Partnership v. 535 5th Operating Inc.*
  621 N.Y.S.2d 42 (1995) .................................................................................18

*Oakes v. Muka*
  868 N.Y.S.2d 796 (2008) ...............................................................................23

*Pensee Assoc. v. Quon Indus.*
  660 N.Y.S.2d 563 (1997) ...............................................................................16

*People v. Canale*
  658 N.Y.S.2d 715 (1997) ...............................................................................24

*School of Visual Arts v. Kuprewicz*
  771 N.Y.S. 2d 804 (N.Y. 2003) .....................................................................21

**Federal Statutes**

18 U.S.C. § 659 ..................................................................................................21

18 U.S.C. § 1341 ................................................................................................15

18 U.S.C. § 1343 ................................................................................................15

18 U.S.C. § 1512 ................................................................................................15

18 U.S.C. § 1951 ..............................................................................................7, 8

18 U.S.C. § 1962(c) ........................................................................................2, 5

18 U.S.C. § 1962(d) .....................................................................................15, 16

28 U.S.C. § 1782 .........................................................................................*passim*

28 U.S.C. § 1956(a)(2)(A) ................................................................................15

**State Statutes**

N.Y. C.P.L.R. §§ 5302, 5303, 5304 ..................................................................25

New York Judiciary Law § 487 ...................................................................23, 24

**Federal Rules**

Federal Rule of Civil Procedure 12(b)(6) ..................................................1, 2, 26

**Treatises**

REST 2d TORTS § 217-22 .................................................................................22

## I.    PRELIMINARY STATEMENT

Chevron's Complaint is long on self-serving rhetoric and hyperbole, and is just plain long.  But those dubious qualities are no substitute for adequately pleading the required elements of the serious claims that Chevron has chosen to assert against Stephen Donziger and the Law Offices of Steven R. Donziger (collectively, "Donziger").  Chevron has asserted nine separate claims for relief against Donziger.  Each of these claims has its own specific required elements and its own minimum pleading standards, which any complaint must satisfy.  Yet, Chevron's Complaint, despite its doorstopper-like heft, fails adequately to plead the required elements of any of its nine claims.  Indeed, in many instances, Chevron's own affirmative allegations demonstrate that it cannot adequately plead those elements.

Chevron case against Donziger should not be permitted to advance beyond the pleading stage—must less race towards any expedited trial that could result in damages and sweeping permanent injunctive relief being imposed against Donziger—based upon Chevron's fundamentally defective allegations.  Due process and the Federal Rules of Civil Procedure do not permit such an outcome.  Rather, for all the reasons discussed below, Chevron's Complaint should be dismissed in its entirety for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    ARGUMENT

### A.    Legal standard

In assessing a motion to dismiss brought under Rule 12(b)(6), courts must apply a "plausibility standard," which is guided by "[t]wo working principles." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  First, although the Court must accept all of the complaint's factual allegations as true, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal,* 129 S.Ct. at 1949) (alterations in original).  Second, only complaints that state a "plausible claim for relief" may survive a motion to dismiss. *Id.*  Thus, "'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,' dismissal is appropriate." *Starr v.*

*Sony BMG Music Entm't,* 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1950).

**B.      Chevron's First Claim for Relief for violations of RICO, 18 U.S.C. § 1962(c), fails to state a claim upon which this Court may grant relief.**

Chevron's First Claim for Relief for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), suffers from multiple fatal defects and, thus, fails to state a claim upon which this Court may grant relief.

**1.      Chevron's Complaint impermissibly seeks to apply RICO to conduct that is overwhelmingly extraterritorial.**

In *Norex Petroleum Ltd. v. Access Industries, Inc.*, 631 F.3d 29 (2d Cir. 2010), the Second Circuit addressed the question "whether a United States federal court can properly hear a claim under [RICO] arising from allegations of a conspiracy which primarily involves foreign actors and foreign acts." *Id.* at 30-31. The Second Circuit concluded, unequivocally, that a federal court cannot do so, and that a claim that seeks extraterritorial application of RICO is subject to dismissal pursuant to Rule 12(b)(6). *Id.* at 32-33; *accord Cedeño v. Intech Group, Inc.*, 733 F. Supp. 2d 471 (S.D.N.Y. 2010). The decision in *Norex* is controlling here, and it necessitates the dismissal of Chevron's First Claim for Relief.

Chevron's RICO allegations leave no doubt that the RICO defendants' purported racketeering scheme is centered in and focused on Ecuador and overwhelmingly involves conduct occurring outside the United States. At the heart of Chevron's RICO allegations is the *Aguinda* case, which commenced in Ecuador in May 2003. Chevron claims that that case, and the RICO defendants' prosecution of that case in Ecuador over the last eight years, constitutes a pattern of racketeering activity in violation of RICO. *See, e.g.,* Complaint ¶¶ 3, 62-64, 312, 314. Indeed, Chevron describes the defendants' alleged "criminal scheme" as involving three lines of attack: (1) intimidating or corrupting the Lago Agrio court to obtain a judgment against Chevron in the *Aguinda* litigation; (2) colluding with the Republic of Ecuador to procure criminal charges against Chevron's attorneys; and (3) conducting a public relations campaign against Chevron regarding the *Aguinda* litigation. *Id.* ¶ 67. Each of these "lines of attack" relates directly to the *Aguinda* case and events in Ecuador.

Moreover, the great majority of the racketeering conduct alleged by Chevron relating to

the Ecuadorian *Aguinda* litigation occurred *outside* the United States.  Specifically, Chevron

accuses the RICO defendants of :

- Colluding with Ecuadorian government to engineer a favorable change in Ecuadorian environmental laws.  *See* Complaint ¶¶ 58-62.

- Attempting to influence and intimidate the judges presiding over the *Aguinda* litigation through the creation of a "private army" to conduct demonstrations in front of the Lago Agrio courthouse and at site inspections, through *ex parte* meetings with the judges, and through enlisting Ecuadorian officials to pressure the judiciary.  *See id.* ¶¶ 70-77, 79-83.

- Attempting to corrupt the judicial inspection process, and submitting false and biased expert reports to the Lago Agrio court.  *See id.* ¶¶ 87-112.

- Arranging Richard Cabrera's appointment as global assessment expert, recruiting him "to join their conspiracy" and to allow defendants' to "ghostwrite" his report, which was later submitted to the Lago Agrio court, facilitating "mock inspections," and paying Cabrera for work he allegedly did not perform.  *See id.* ¶¶ 113-134, 152, 171-175.

- Colluding with the Republic of Ecuador to bring criminal charges against Chevron's attorneys in Ecuador.  *See id.* ¶¶ 185-198.

All of this alleged wrongful conduct, which constitutes not only the foundation, but also the

superstructure of Chevron's RICO claim, occurred—if it occurred at all—*in Ecuador*, and not in

the United States.

Additionally, the RICO defendants are predominantly Ecuadorian in citizenship and

residency.  Pablo Fajardo Mendoza (who allegedly is "primarily responsible for prosecuting the

sham litigation" and "one of the heads of the criminal enterprise"), Luis Yanza and the Frente de

Defensa de la Amazonia (who allegedly are "primarily responsible" for exerting influence over

and colluding with the Ecuadorian courts and government), and Selva Viva (who allegedly is a

"conduit for funding" the RICO enterprise), all are Ecuadorian.  *See* Complaint ¶¶ 10-13, 306(a)-

(d).  This leaves only Donziger and the Stratus Consulting defendants as United States-based

RICO defendants, and the Stratus Consulting defendants' alleged role is limited to only a small

piece of the alleged overall scheme—"coordinating the drafting of and actually ghostwriting the

Cabrera Report" and promoting that report as independent.  *See id.* ¶ 306(e).

Cognizant of *Norex*, Chevron also includes in its Complaint allegations of conduct

occurring inside the United States. The Second Circuit, however, has made clear that "simply alleging that some domestic conduct occurred cannot support a claim for domestic application." 631 F.3d at 33; *accord U.S. v. Philip Morris USA, Inc.*, Civ. Action No. 99-2496 (GK), – F. Supp. 2d – , 2011 WL 1113270, at *4 (D.D.C. Mar. 28, 2011) ("[I]solated domestic conduct does not permit RICO to apply to what is essentially foreign activity."). The Supreme Court also has strongly warned against using subsidiary allegations of domestic conduct to avoid or overcome the prohibition on extraterritorial application of federal statutes, such as RICO, that were not expressly intended by Congress to apply outside the United States: *"[I]t is a rare case of prohibited extraterritorial application that lacks all contact with the territory of the United States. But the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in the case."* *Morrison v. National Australia Bank Ltd.*, 130 S.Ct. 2869, 2883 (2010) (emphasis added); *see also Cedeño*, 733 F. Supp. 2d at 473 (rejecting plaintiffs "attempt to sidestep *Morrison* by arguing that their complaint alleges predicate acts" occurring within the United States). What is more, even before *Morrison* and *Norex* confirmed that RICO does not have *any* extraterritorial reach, it was settled law in this Circuit that domestic conduct that is "merely preparatory to the fraud, rather than conduct that is both material to the completion of the fraud and the direct cause of the alleged injury" cannot justify the application of RICO to claims that relate predominately to foreign conduct. *North South Finance Corp. v. Al-Turki*, 100 F.3d 1046, 1053 (2d Cir. 1996).

The domestic conduct alleged by Chevron in this case is either preparatory or peripheral to the RICO defendants' alleged overarching scheme to procure a fraudulent judgment in the Ecuadorian *Aguinda* litigation and to secure criminal charges against Chevron's attorneys in Ecuador in order to extort Chevron into agreeing to a sizeable settlement. This is especially true if Chevron's many allegations of alleged wrongdoing that cannot support a RICO claim as a matter of law are stripped away, including Chevron's allegations regarding the RICO defendants' (1) public relations efforts within the United States (*see* Complaint ¶¶ 201-220, 244-245); (2) purported false statements to state and federal officials ( *see* Complaint ¶¶ 221-227, 246); and (3) supposed efforts to cover up their misconduct by obstructing and tampering with

Chevron's 28 U.S.C. § 1782 discovery efforts (*see* Complaint ¶ 248; *see also id.* ¶¶ 249-292). As explained in Sections B.3.a. & B.3.c., *infra*, these allegations do not support any predicate act under RICO and, therefore, cannot justify extending RICO's reach to an alleged criminal scheme centered in and on Ecuador.

What is left are allegations relating to domestic efforts to prepare expert reports for use in Ecuador and the wiring of funds from United States banks to support activities relating to the *Aguinda* litigation. Complaint ¶¶ 92-111, 135-142, 147-157, 161-170, 176, 185, 322. These limited contacts with the United States, which are not alleged to be the direct cause of Chevron's injuries, "are insufficient to support extraterritorial application of the RICO statute." *Norex*, 631 F.3d at 33; *cf. Cedeño*, 733 F. Supp. 2d at 472 (alleged money laundering inside the United States insufficient to justify application of RICO to alleged scheme that overwhelmingly involved foreign conduct); *Norex Petroleum Ltd. v. Access Indus., Inc.*, 540 F. Supp. 2d 438, 443-444 (S.D.N.Y. 2007) (allegations that defendants "operated and directed the Illegal Scheme from [the Southern District of New York]," wired money from United States accounts to bribe foreign officials, and committed money laundering and wire fraud within the United States "do not support … jurisdiction of the RICO claim asserted in this case").

In sum, permitting Chevron to proceed with its RICO claim in this case would violate the prohibition on extraterritorial application of the Act. The Court, therefore, should dismiss Chevron's First Claim for Relief.

### 2.    Chevron has not alleged a pattern of racketeering activity.

To state a claim for a violation of 18 U.S.C. § 1962(c), Chevron must plead, *inter alia*, that the RICO defendants committed "two or more acts constituting a pattern of racketeering activity …." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001). Chevron's Complaint, despite its length, fails adequately to plead this essential element. Rather, Chevron's Complaint makes clear that all of the wrongful acts that Chevron accuses the RICO defendants of committing relate to—and were in alleged furtherance of—a single, even if wide-ranging, effort to extort Chevron into paying a sizeable settlement in the *Aguinda* case. In Chevron's own words: "The enterprise's ultimate aim is to create enough pressure on Chevron in the United

States to extort it into paying to stop the campaign against it. The RICO defendants have sought to … force the company into making *a payoff*." Complaint ¶ 2 (emphasis added); *see also id.* ¶ 3 ("*To effect this plan*, the RICO defendants initiated a sham litigation in Lago Agrio, Ecuador …." (emphasis added)); *id.* ¶ 317 ("The ultimate objective of the RICO Defendants' … is to coerce Chevron into making *a* multi-billion dollar *payment* …." (emphasis added)). Thus, Chevron's Complaint only alleges multiple acts in furtherance of a single attempted act of alleged extortion. This is insufficient to support a claim under RICO.

"*Multiple acts in furtherance of a single extortion episode constitute only a single predicate act of attempted extortion, not a pattern of two or more predicate acts.*" *Linens of Europe, Inc. v. Best Mfg., Inc.*, No. 03 Civ. 9612 (GEL), 2004 WL 2071689, at * 16 (S.D.N.Y. Sep. 16, 2004) (emphasis added); *accord Nastro v. D'Onofrio*, 542 F. Supp. 2d 207, 215 (D. Conn. 2008) ("[M]ultiple acts of mail fraud in furtherance of a single episode of fraud involving one victim and one basic transaction cannot constitute the necessary pattern." (quoting *Tellis v. U.S. Fid. & Guar. Co.*, 826 F.2d 477, 478 (7th Cir. 1986)); *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 354 F. Supp. 2d 293, 301-305 (S.D.N.Y. 2008) ("[A] completed act of extortion along with the intermediate steps toward completion of that act constitute one predicate act, not multiple distinct attempts."); *Zhu v. First Atlantic Bank*, No. 05 Civ. 96 (NRB), 2005 WL 2757536, at *4 (S.D.N.Y. Oct. 25, 2005) (quoting and following *Linens of Europe*); *see also Schaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997) ("[C]ourts must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO."). In *Linens of Europe*, for example, the plaintiff alleged that defendants repeatedly threatened one of plaintiff's officers, sent "a group of thugs" to assault him, and threatened plaintiff with further harm if it did not sell itself. 2004 WL 2071689, at *16. Despite these allegations of multiple wrongful acts, the court concluded that plaintiff's complaint "alleges, at best, a single episode of extortion directed at a single victim[.]" *Id.*

The same is true here. Although Chevron accuses the RICO defendants of all sorts of wrongdoing, all of these alleged acts—according to Chevron's own allegations—were related to, and in furtherance of, defendants' alleged unitary goal of forcing Chevron to pay a large

settlement to resolve the *Aguinda* litigation.  *See* Complaint ¶¶ 2-3, 317.  All of the predicate acts alleged by Chevron thus relate to the same basic episode or transaction—the *Aguinda* litigation—involve the same purported target—Chevron—and simply represent "intermediate steps" towards the RICO defendants' purported ultimate goal.  Chevron does not accuse the RICO defendants of repeatedly extorting it (to date, the RICO defendants have not received any money from Chevron) or of seeking a series of different "payoffs" from Chevron based on different extortionate schemes.  To the contrary, Chevron's Complaint consistently talks about a singular "goal" and a singular "payoff" based upon a singular campaign of pressuring Chevron.  Nor does Chevron accuse the RICO defendants of engaging in a pattern of extorting and/or defrauding companies other than Chevron.

Consequently, even if Chevron has pleaded a claim for extortion under the Hobbs Act or New York State Law and/or any other cognizable predicate act, it has not pleaded a "pattern of racketeering activity" as is required under RICO.

3. **Chevron has not adequately alleged any predicate acts sufficient to support its RICO claim.**

a. **Chevron has not adequately alleged extortion under the Hobbs Act or New York State law.**

A private individual commits extortion under the Hobbs Act by obtaining or attempting to obtain property from another party by the use or threatened use of force, violence or fear.  *See* 18 U.S.C. § 1951; *Scheidler v. National Organization for Women*, Inc., 537 U.S. 393, 404-09 (2003).  "These same elements are required [to establish extortion] under New York law." *Feeley v. Whitman Corp.*, 65 F. Supp. 2d 164, 174 (S.D.N.Y. 1999).  Chevron's complaint fails to plead any predicate act of extortion for the simple reason that Chevron does not allege that the RICO defendants have any obtained any money or property from Chevron, by threatened use of force, violence or fear, or otherwise.

Nor does Chevron's complaint plead any predicate act of attempted extortion.  Chevron alleges that the RICO defendants' goal is to force Chevron to settle the *Aguinda* litigation, and that they have attempted to achieve this goal through improper litigation and public relations pressure tactics.  But nowhere in Chevron's 394-paragraph Complaint is there any allegation that

the RICO defendants ever actually threatened Chevron or demanded a payment of money or property "to stop the campaign against it." Complaint ¶ 2.  The only allegation that comes close is Chevron's claim that Atossa Soltani (a non-defendant) wrote a letter "on behalf of Amazon Watch" (another non-defendant) to Chevron's incoming CEO, in which she cited the damages estimate contained in the Cabrera Report and "threatened" that until Chevron took steps to resolve the *Aguinda* litigation, it would continue to play out "in the courts of Ecuador and the global court of public opinion." Complaint ¶ 206.  Even if the contents of this letter could be construed as an extortionate threat,[1] it was not made by Donziger or any of the other RICO defendants and, therefore, cannot support Chevron's RICO claim against them.  *See Conte*, 703 F. Supp. 2d at 137-138 (dismissing RICO claim where only allegation of threatened violence or fear was made by a non-RICO defendant); *see also Ello v. Singh*, 531 F. Supp. 2d 552, 574 (S.D.N.Y 2007) ("Plaintiff must establish each element [of a RICO claim] as to each individual defendant.").

Lacking any allegation of any actual threat, Chevron may attempt to argue that pursuing the *Aguinda* litigation, and publicizing that litigation, in an effort to put pressure on Chevron indirectly satisfies the "threat" element of a Hobbs Act violation.  But any such argument would be contrary to established RICO law.  Virtually every court to have considered the issue, including multiple courts in this District, has concluded that neither threatening nor prosecuting a lawsuit in order to obtain money or property constitutes extortion for purposes of RICO, even if the lawsuit is meritless or based upon false evidence.  As the Tenth Circuit explained in *Deck v. Engineered Laminates*, 349 F.3d 1253 (10th Cir. 2003):  "We recognize that litigation can induce fear in a defendant; and it would be fair, at least in other contexts, to characterize as 'wrongful' the filing of a groundless lawsuit, particularly when the plaintiff resorts to fraudulent evidence. ***But we join a multitude of other courts in holding that meritless litigation is not extortion under [18 U.S.C.] § 1951.***"  *Id.* at 1257-1258 (emphasis added); *accord United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002) ("threat to file litigation … even if made in

---

[1] *Cf. Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 137-138 (E.D.N.Y. 2010) (threats of defamation are not extortionate acts for purposes of RICO).

bad faith and supported by false affidavits, was not 'wrongful'" within the meaning of the term in 18 U.S.C. § 1951); *Vemco, Inc. v. Camardella,* 23 F.3d 129, 134 (6th Cir. 1994) ("A threat of litigation if a party fails to fulfill even a fraudulent contract … does not constitute extortion."); *First Pac. Bancorp, Inc. v. Bro,* 847 F.2d 542, 547 (9th Cir. 1988) (threats of litigation are not predicate acts for RICO purposes); *I.S. Joseph Co., Inc. v. J. Lauritzen A/S,* 751 F.2d 265, 267-68 (8th Cir. 1984) (holding that threats to sue, even if characterized as extortion by plaintiff, do not constitute predicate acts of racketeering under RICO); *G-I Holdings, Inc. v. Baron & Budd,* 179 F. Supp. 2d 233, 259 (S.D.N.Y. 2001) ("even accepting [plaintiff's] allegations that defendants threatened 'economically ruinous litigation', and that the threatened lawsuits lacked merit, [plaintiff] has not pleaded extortion, which is a prerequisite of a violation of the Hobbs Act." (internal citation omitted)); *Building Indus. Fund v. Local Union No. 3 Int'l Broth of Elec. Workers, AFL-CIO*, 992 F. Supp. 162, 176 (E.D.N.Y. 1996) ("The filing of a meritless lawsuit … even if for the purpose of harassment, does not involve a threat of force, violence or fear."); *von Bulow by Auersperg v. von Bulow*, 657 F. Supp. 1134, 1143-45 (S.D.N.Y. 1987) (holding that malicious prosecution claim does not constitute predicate act of racketeering); *Park South Assoc. v. Fischbein,* 626 F. Supp. 1108, 1114 (S.D.N.Y. 1986) ("No one likes to be sued. Parties sometimes even settle lawsuits that they consider to be extortion. But that does not make the filing of a complaint in such an action extortionate."). Thus, even assuming that Chevron's factual allegations are all true, Donziger's pursuit of a plaintiffs' judgment in the *Aguinda* litigation at most constitutes tortious conduct under state law. It is not a Hobbs Action violation: "If a suit is groundless or filed in bad faith, the law of torts may provide a remedy. Resort to a federal criminal statute is unnecessary." *I.S. Joseph Co.*, 751 2d at 267-268 ().

Chevron's theory that the RICO defendants are extorting Chevron by threatening to spread false information about the *Aguinda* litigation and to tarnish Chevron's reputation fares no better. As a threshold matter, most of the statements referenced in Chevron's Complaint are statements of non-parties to this litigation such Amazon Watch, Rain Forest Action Network, Atossa Soltani, and Karen Hilton; not Donziger or any other RICO defendant. *See* Complaint ¶ 17(f)-(h) & (l). But even if this were not the case, neither threatening defamation nor acting on

that threat qualify as extortion for purposes of RICO. *See Conte*, 703 F. Supp. 2d, at 137-138

("plaintiff's allegations that defendants threatened to defame him are insufficient for plaintiff's

RICO claim"); *Kimm v. Lee*, No. 04 Civ. 5724(HB), 2005 WL 89386, at *6 (S.D.N.Y. Jan. 13,

2005) (dismissing RICO claim based on alleged extortionate threats that "are-at best-thinly

clothed defamation claims"); *see also Segarra v. Messina*, 153 F.R.D. 22, 28-29 (N.D.N.Y.

1994) (defamation and libel are not predicate acts under the RICO statute). No doubt Chevron

does not appreciate the various press releases, press conferences, interviews and other public

statements that have been made by various individuals and entities regarding the *Aguinda*

litigation, any more than Donziger and his co-defendants appreciate Chevron's relentless,

accusatory press releases. But treating those communications as criminally extortionate threats

by Donziger would constitute an unprecedented expansion of the Hobbs Act and RICO.

 In sum, Chevron has failed to allege that the RICO defendants have actually obtained any

money or property from Chevron (actual extortion), or that they have threatened Chevron with

any cognizable fear of economic loss should it not settle with them (attempted extortion). All

Chevron has alleged is that the RICO defendants have filed and pursued "sham" litigation in

Ecuador and have conducted an aggressive publicity campaign against Chevron in connection

with the *Aguinda* litigation. The overwhelming weight of authority holds that such allegations

are insufficient to support a RICO claim based upon extortion, even if the RICO defendants'

conduct was "wrongful" or tortious in general terms and could support state law claims for

malicious prosecution, defamation, or libel.

   **b.**  **Chevron has not alleged the reliance and resulting harm necessary to support a claim of mail or wire fraud.**

 Chevron's Complaint alleges that the RICO defendants have engaged in multiple acts of

mail and wire fraud. But to support a civil RICO claim based upon such predicate acts,

defendants' alleged "scheme to defraud" must both proximately and actually have caused

Chevron some actual injury:

> To show injury by reason of a RICO violation, a plaintiff must demonstrate that
> the violation caused his injury in two senses. *First*, he must show that the RICO
> violation was the proximate cause of his injury, meaning "there was a direct
> relationship between the plaintiff's injury and the defendant's injurious conduct."

> *Second*, he must show that the RICO violation was the but-for (or transactional)
> cause of his injury, meaning that but for the RICO violation, he would not have
> been injured.

*UFCW Local 1776 v. Eli Lilly and Co.*, 620 F.3d 121, 132 (2d Cir. 2010) (internal citations

omitted) (emphasis added); *see also Hemi Group, LLC v. City of New York*, 130 S.Ct. 983, 989-

91 (2010) (plaintiff city could not show proximate cause on RICO claim alleging that city had

lost tax revenue because of defendant business' failure to file cigarette sale customer lists with

the State of New York, since business's fraudulent conduct was directed at a third party, *i.e.*, the

state, and the city was only indirectly injured as a result). Chevron's Complaint fails adequately

to plead this required causal connection.

Chevron's theory of causation with respect to the RICO defendants' alleged mail and

wire fraud is pleaded in the most conclusory of terms. Chevron simply alleges that "[t]he RICO

Defendants' false and misleading statements have been relied on by U.S. Courts, U.S. state and

federal government agencies, Chevron's shareholders, investors, analysts, the media, and by the

Lago Agrio court by means of its acceptance of Defendants' and Cabrera's misrepresentations

and omissions and its failure to take meaningful corrective action. Further, RICO Defendants

false and misleading statements have caused Chevron substantial damage." Complaint ¶ 321.

These barebones allegations of reliance and causation are far from sufficient. "Merely restating

the requirements of RICO in the form of an allegation does not suffice to state a claim without

some factual allegation from which proximately caused financial injury may be inferred."

*Hollander v. Flash Dancers Topless Club*, 173 Fed. Appx. 15, 18 (2d Cir. 2006); *see also In re*

*Am. Express Co. S'holders Litig.*, 39 F.3d 395, 400 n.3 (2d Cir. 1994) ("[W]hile the complaint

does cursorily assert that American Express was a victim of the RICO defendants' acts and that

these acts were the proximate cause of American Express's alleged injuries, these conclusory

allegations of the legal status of the defendants' acts need not be accepted as true for the

purposes of ruling on a motion to dismiss.").

Although Chevron describes the RICO defendants' alleged false statements in

painstaking detail, nowhere in its Complaint does Chevron allege any facts to support its claim

that any of those alleged false statements were relied upon by Chevron or anyone else or

proximately caused Chevron any injury.  For example, Chevron's Complaint alleges that Donziger and others attempted "manipulate and depress Chevron's stock price."  Complaint ¶ 228.  As evidence of the supposed impact of these efforts, Chevron cites a handful of alleged comments by oil industry analysts and members of the business media regarding Chevron's potential liability exposure in the *Aguinda* litigation and its potential impact on Chevron's stock price.  *See, e.g.,* Complaint ¶¶ 227, 238-240.  But Chevron's Complaint does not include any factual allegations that any investors relied on those comments or that that reliance caused Chevron's stock price to drop or caused Chevron any other actual harm.  *See id; see also id.* ¶ 233 (alleging that Donziger lobbied an analyst at UBS and provided him with false information, but not alleging that the analyst relied or otherwise acted on this information).

The same is true with respect to Donziger's alleged false statements to United States government officials and courts.  Chevron points to a number of allegedly false statements made to such officials, but its Complaint is silent on any reliance by any official on those statements.  *See, e.g.,* Complaint ¶ 222-223 (alleging that non-party Amazon Watch wrote twice to the SEC asking it to investigate Chevron's disclosures regarding the Aguinda litigation, but not alleging that the SEC took any action in response); *see also id.* ¶ 226 (alleging that Douglas Beltman provided a member of Congress with false "talking points," but not alleging that anyone ever used or relied upon those "talking points").[2]  And with respect to United States Courts, Chevron's own allegations confirm that no federal court refused to permit Chevron to conduct discovery pursuant to 28 U.S.C. § 1782 because of any alleged misrepresentation by Donziger or any other RICO defendant.  Indeed, Chevron's Complaint trumpets the fact that it is based in very large part on the fruits of its Section 1782 discovery efforts.  *See* Complaint ¶ 302.

Moreover, any theory of proximate cause that Chevron may seek to advance with respect to Donziger's alleged fraudulent statements would be so attenuated as to be nonexistent for purposes of RICO.  Under RICO, "*compensable RICO damages must flow directly from the*

---

[2] The only action by a government official in response to the RICO defendants' alleged false statements referenced in Chevron's Complaint is a letter from New York's Attorney General to Chevron.  *See* Complaint ¶ 227.  But there is no allegation that the New York Attorney General ever actually commenced any investigation of Chevron.

*commission of the predicate RICO acts themselves **and cannot be the result of an**
**intermediary's actions that may have been induced or caused by the alleged RICO activity.**"
*Sheridan v. Mariuz,* No. 07 Civ. 3313 (SCR) (LMS), 2009 WL 920431, at *7 (S.D.N.Y. Apr. 6,
2009) (emphasis added).  With respect to Donziger's and the other RICO defendants' alleged
false statements to the media and industry analysts, Chevron would need to allege that the
various analysts and reporters to whom the statements were made relied upon those statements
and, in turn, repeated those statements to their clients or the public, who, in turn, relied upon
those statements in some way that harmed Chevron's reputation and good will.  Both the
Supreme Court and the Second Circuit repeatedly have rejected RICO claims premised upon this
sort multi-link chain of alleged causation.  *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451,
460 (2006) (proximate cause requires a "direct causal connection" between the RICO violations
and the injury suffered); *Baisch v. Gallina*, 346 F .3d 366, 373 (2d Cir. 2003) (Proximate
causation does not exist where the plaintiff's injury was "indirectly (and hence not proximately)
caused by the racketeering activity."). *Lerner v. Fleet Bank, N.A..* 318 F.3d 113, 123 (2d Cir.
2003) (rejecting RICO claim where "the connection between the RICO violation and the injury
alleged is too attenuated to satisfy the proximate cause requirement.").

As for Donziger's alleged false statements to the Lago Agrio Court, that Court's
Judgment (a certified translation of which is in the record, and which the Court may judicially
notice) states that the Court was well-aware of Chevron's claims of allegedly fraudulent
evidence—including Charles Calmbacher's report, the Cabrera Report, and the defendants'
alleged whitewashing of the Cabrera report—and that the Court did not rely on that evidence in
rendering its decision. *See, e.g,* Judgment [Doc. No. 168], at 48-58.  In other words, the Lago
Agrio Court has expressly disclaimed reliance on any of defendants' allegedly fraudulent
submissions.  But, even if the Lago Agrio Court relied on fraudulent evidence, its informed
decision to do so, despite Chevron's repeated claims to that Court that the evidence was
fraudulent and must be disregarded, is an independent intervening factor that breaks any causal
connection between Donziger's alleged scheme to submit fraudulent evidence to the Lago Agrio
court and the court's subsequent judgment.  "When factors other than the defendant's fraud are

an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions." *McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 226 (2d Cir. 2008)

In sum, Chevron has failed adequately to allege that any false statement, evidence, or other false communication by Donziger directly caused any injury to Chevron.

> **c.      Defendants' alleged false statements to U.S. Courts and alleged efforts to cover up their unlawful conduct does not constitute predicate acts under RICO.**

Chevron's Complaint alleges as predicate offenses in support of its RICO claim, Donziger's and other RICO defendants' alleged efforts to cover up and excuse their misconduct by making false statements to various United States courts, obstructing justice, and witness tampering:  "Determined to prevent their conspiracy to defraud and extort Chevron from being exposed in the discovery and other proceedings Chevron commenced in U.S. federal courts, the RICO Defendants embarked on a campaign of obstruction and lies ...." Complaint ¶ 248; *see also id.* ¶ 4 (defendants "have also made false statement to U.S. Courts in an attempt to cover up their wrongdoing ...."); *id.* ¶ 249-292.  Yet, while such conduct, if it actually occurred, may be wrongful, it is not a cognizable predicate act for purposes of RICO.

"Attempting to hide one's involvement in a [RICO] scheme after it has been exposed in order to limit liability should not be confused with concealing the scheme itself in furtherance of its perpetration." *Philadelphia Reserve Supply Co. v. Norwalk & Associates, Inc.*, Civ. A. No. 91-0449, 1992 WL 210590, at *6 (E.D. Pa. Aug. 25, 1992) (citing *Pyramid Sec., Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1117-18 (D.C. Cir. 1991); *accord Ray Larsen Associates, Inc. v. Nikko America, Inc.*, No. 89 Civ. 2809 (BSJ), 1996 WL 442799, at *7 (S.D.N.Y. Aug. 6 1996); *see also United States v. Biaggi,* 909 F.2d 662, 686 (2d Cir. 1990) (reversing RICO conviction for which the second predicate act was attempted cover-up of the first predicate act).  Furthermore, "[s]uborning perjury, perjury, filing a court action, filing a false affidavit, and giving false testimony do not constitute predicate acts within the meaning of the RICO statute." *Speight v. Benedict*, No. 5:05-CV-542 (FJS/GHL), 2007 WL 951492, at *6 (N.D.N.Y. Mar. 28, 2007); *see also Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d

239, 260 (S.D.N.Y. 2009) (perjury not a predicate offense under RICO; *World Wide Wrestling Entm't v. Jakks Pacific, Inc.*, 530 F. Supp. 2d 486, 513 (S.D.N.Y. 2007) (same).

Additionally, even if Donziger's alleged attempts to obstruct justice and tamper with witnesses to "cover up" his wrongdoing was a cognizable predicate act under RICO, once again Chevron has failed to allege that it suffered any direct harm as a result of this conduct. Indeed, Chevron's own Complaint trumpets the fact that it is based on the fruits of its 28 U.S.C. § 1782 discovery efforts. Thus, Chevron has failed adequately to allege any predicate act of obstruction of justice or witness tampering.

> **d.    Chevron's money laundering allegations fail along with its extortion and fraud allegations.**

Finally, Chevron accuses Donziger of money laundering in violation of 28 U.S.C. § 1956(a)(2)(A). This section of the United States Code criminalizes the transportation or transmission of funds from the United States to a place outside the United States "with the intent to promote the carrying on of a specified unlawful activity[.]" The unlawful activities specified in Chevron's complaint are violations of 18 U.S.C. §§ 1341 and 1343 (mail and wire fraud) and 18 U.S.C. § 1512 (Hobbs Act). Thus, Chevron's money laundry claims against Donziger are dependent upon its allegations that Donziger has committed mail and wire fraud and Hobbs Act extortion. Because Chevron has failed adequately to allege any such violations by Donziger or any other RICO defendant, its money laundering claims also are defective and cannot support Chevron's RICO claim.

**C.    Chevron's Second Claim for Relief for conspiracy to violate RICO, 18 U.S.C. § 1962(d), fails to state a claim upon which this Court may grant relief.**

Because Chevron has failed adequately to state a claim under RICO, its conspiracy to violate RICO claim also fails and must be dismissed. *See First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004) ("because Plaintiffs did not adequately allege a substantive violation of RICO," plaintiffs' RICO conspiracy claim also was "properly dismissed");*Carmona v. Spanish Broadcasting System, Inc.*, No. 08 civ. 4475 (LAK), 2009 WL 890054, at *9 (S.D.N.Y. Mar. 30, 2009) (Kaplan, J.) ("Plaintiffs' clear failure to satisfy the pleading requirements of the previous subsections is necessarily fatal to any conspiracy claim

they might assert under Section 1962(d)."); *Nat'l Group for Commc'n and Computers Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 272 (S.D.N.Y. 2006) ("Case law in this Circuit confirms that a 1962(d) conspiracy claim must be dismissed where the substantive RICO claim is deficient.").

**D.      Chevron's Third Claim for Relief for fraud fails to state a claim upon which this Court may grant relief.**

To state a claim for common law fraud under New York law, Chevron must allege with particularity that: "(1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 347 (S.D.N.Y. 2010) (Kaplan, J.) (quoting *Ross v. Louis Wise Servs., Inc.*, 8 N.Y.3d 478, 488 (2007)); *accord Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009). Chevron's fraud claim fails adequately to plead these required elements for at least the following five reasons.

*First*, Chevron lacks standing to bring a fraud claim because the alleged misrepresentations—including the purportedly falsified Calmbacher reports, the Cabrera report, the endorsements of the Cabrera report, and the *Aguinda* plaintiffs' new expert reports allegedly based on the Cabrera reports, among others—were made to third parties, not to Chevron. Specifically, Chevron alleges that the statements were made to United States and Ecuadorian courts, United States federal and state government agencies, and Chevron's investors, analysts, and the media. *See* Complaint ¶ 353. Nowhere in the complaint does Chevron allege that the misrepresentations were made to Chevron itself. *Cf. Pensee Assoc. v. Quon Indus.*, 660 N.Y.S.2d 563, 567 (1997) (plaintiff lacked standing to assert fraud claim in the absence of allegations that defendant made misrepresentations directly to plaintiff); *see also Aymes v. Gateway Demolition Inc.*, 817 N.Y.S.2d 233, 234 (2006) (holding same).

*Second*, even if the alleged false misstatements were made to Chevron, there is no allegation that the misrepresentations were made for the purpose of deceiving *Chevron*. Rather,

Chevron alleges that the defendants made the misrepresentations "with the intent of obtaining favorable rulings from the U.S. and Lago Agrio courts, pressuring U.S. state and federal agencies to pursue investigations of Chevron, and propagating false information about Chevron to shareholders, investors, analysts, and the media." Complaint ¶ 355. Thus, Chevron has not alleged that Donziger made any false statements for the purpose of deceiving *Chevron*, or inducing or tricking *Chevron*—as opposed to various third parties—to take any particular action in reliance upon defendants' alleged misinformation. *See Aymes*, 817 N.Y.S.2d at 234 (2006) (fraud claim defective where no allegation that the alleged misrepresentations were made for the purpose of influence *plaintiff's* conduct). To the extent that the complaint suggests that Donziger defendants made false statements to pressure Chevron to settle the case, that claim is not actionable because Chevron hasn't settled the case.

*Third*, although Chevron asserts in passing that it reasonably and justifiably relied upon Donziger's alleged misrepresentations (Complaint ¶ 356), Chevron pleads no facts to support this conclusory allegation. To the contrary, the facts alleged in the complaint and the facts already in the record before the Court show that Chevron did not rely upon any of defendants' allegedly false statements. In the course of the *Aguinda* litigation, Chevron submitted its own expert report disputing the conclusions reached by Calmbacher and the plaintiffs' other experts, as well as Cabrera. Similarly, in the 28 U.S.C. § 1782 discovery proceedings leading up to the present action, Chevron repeatedly questioned the independence of Cabrera and the provenance of his expert work. Moreover, Chevron submitted multiple motions and argued repeatedly to the Lago Agrio Court that Donziger and the other defendants had submitted false and fraudulent evidence to the Court. Thus, Chevron's own allegations, as well as the facts in the record, affirmatively establish that Chevron did not rely on the allegedly false statements made by Donziger or any of the other defendants.

*Fourth,* even if Chevron had alleged some facts suggesting that it relied on any of Donziger's alleged misstatements, any reliance by Chevron would be unreasonable and unjustified. As a matter of law, reliance is not justifiable when the parties are in adverse relationships. *See Brownstone Inv. Group, LLC. v. Levey*, 468 F. Supp. 2d 654, 659 (S.D.N.Y.

2007) (no justifiable reliance where "the alleged misrepresentation occurred in the course of this litigation"); *Kashelkar v. Rubin & Rothman*, 97 F. Supp. 2d 383, 395 (S.D.N.Y. 2000) ("Plaintiff does not and cannot plead reliance because all of the alleged 'misrepresentations' appeared in legal papers in the course of adversary litigation"); *Nineteen New York Properties Limited Partnership v. 535 5th Operating Inc.*, 621 N.Y.S.2d 42, 43 (1995) (there could be no detrimental reliance on statements made in pleadings; *see also Mergens v. Dreyfoos*, 166 F.3d 1114, 1118 (11th Cir. 1999) (reliance was not justifiable where parties were in adverse relationships).   Because each of Donziger's alleged misstatements was made during the course of the hotly contested *Aguinda* litigation, any reliance by *Chevron* on Donziger's alleged statements is unreasonable and unjustified as a matter of law.   Furthermore, because Chevron obtained through its 28 U.S.C. § 1782 discovery proceedings evidence allegedly proving that various of Donziger's statements were false, Chevron could not thereafter have justifiably relied upon those alleged misstatements, even if the parties were not adverse.   *See Schuh v. Druckman & Sinel, LLP*, No. 07 Civ. 366 (LAK) (GWA), 2008 WL 542504, at *10 (S.D.N.Y. Feb. 29, 2008) (Kaplan, J.) (under New York law, "where a party makes a statement that is false but other facts are available to plaintiff to demonstrate that the statement is false, the plaintiff cannot show justifiable reliance.").

   *Finally*, even if Chevron can satisfy all of the above elements, Chevron cannot show that its injuries came about because it relied on Donziger's alleged misstatements.   Chevron merely alleges that "as a direct … result of Defendants' fraud," it has suffered harm to its reputation and goodwill and has been forced to incur attorneys' fees and the costs to defend itself in the Ecuadorian litigation and the 28 U.S.C. § 1782 proceedings.   Complaint ¶ 357.   This conclusory allegation of causation is insufficient to support a fraud claim.   ***The reliance requirement means that it is insufficient for a fraud plaintiff to show merely that some chain of events beginning with a false statement by defendants led to his injury.***" *Schuh*, 2008 WL 542504, at *10 (emphasis added).   Rather, Chevron must allege that its injuries stem from, and are a result of, *its* reliance on the alleged misstatements.   *See Amusement Indus.*, 693 F. Supp. 2d at 347. Chevron does not, and cannot, make any such allegation because Chevron's injuries came about,

if they came about at all, despite Chevron's best efforts to refute the misrepresentations, and not because of its reliance on those representations to alter its course of conduct.

For all of these reasons, Chevron's complaint fails to state a claim for fraud.[3]  Chevron's Third Claim for Relief, therefore, should be dismissed.

**E.     Chevron's Fourth Claim for Relief for tortious interference with contract fails to state a claim upon which this Court may grant relief.**

Chevron's tortious interference with contract claim fails for at least two reasons. *First*, the claim is time-barred.  Actions to recover damages to property must be commenced in New York within three years.  *See Norris v. Grosvenor Marketing Ltd.*, 803 F.2d 1281, 1287 (2nd Cir. 1986) (citing N.Y. C.P.L.R. § 214(4)); *accord Chung v. Wang,* 912 N.Y.S.2d 647, 648 (2010*)*. Here, Chevron's claim stems from the alleged effort by Donziger to enlist the Ecuadorian government to aid the *Aguinda* litigation in violation of Ecuador's purported obligations under the 1998 Final Release between Ecuador, Petroecuador, and TexPet.  But the *Aguinda* case began over seven years ago, and Chevron has complained about Ecuador's alleged breach of its obligations under the 1998 Final Release in permitting the *Aguinda* litigation to proceed for more than five years.  Indeed, Chevron asserted breach of contract counterclaims against the Republic of Ecuador and Petroecuador in this District based upon the *Aguinda* litigation more than five years ago.  *See Republic of Ecuador v. ChevronTexaco Corp.*, 376 F. Supp. 2d 334, 344 (S.D.N.Y. 2005) ("The second and third counterclaims are asserted against both Ecuador and Petroecuador, and concern alleged breaches of the 1995 Settlement and 1998 Final Release. Specifically, Ecuador and Petroecuador are said to have breached those agreements by 'allowing the Lago Agrio lawsuit to proceed as a private-attorney-general action,' by 'refusing to inform the court in Lago Agrio that they owned and released all rights to environmental remediation or restoration by TexPet in the concession area,' and by not 'indemnifying ChevronTexaco and TexPet for any of their costs' in the Lago Agrio litigation.").  Moreover, Chevron's own

---

[3] Nor has Chevron stated a claim for fraudulent concealment.  A fraud claim "may be predicated on acts of concealment where the defendant had a duty to disclose material information." *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 165 (2003).  Because the Ecuadorian plaintiffs did not owe Chevron a duty of care during litigation, Chevron's attempt to state a claim for fraudulent concealment fails. *Aglira v. Julien & Schlesinger, P.C.*, 631 N.Y.S.2d 816, 819 (1995) ("An

Complaint affirmatively alleges that defendants have been working with the Ecuadorian government since at least 1999 to circumvent the 1998 Final Release. *See* Complaint ¶¶ 58-61. And Chevron has publicly complained about the alleged effort by Donziger and others to encourage the Ecuadorian government to assist the *Aguinda* plaintiffs for well over three years. *See, e.g.,* Elsen Cert., Ex. Q [Doc. No. 64-10] (Chevron complaining as of October 2007). Accordingly, New York's statute of limitations precludes Chevron's claim.

*Second*, Chevron's claim fails to allege that Donziger is the "but for" cause of any alleged contract breach. Under New York law, tortious interference with contract requires the plaintiff to assert that there would not have been a breach but for the activities of the defendant. *Sharma v. Skaarup Ship Mgmt. Corp.,* 916 F.2d 820, 828 (2nd Cir. 1990). In other words, Chevron "must allege that there would not have been a breach but for the activities of defendants." *Id.* (internal quotation omitted). Chevron's Complaint fails to do so. To the contrary, Chevron affirmatively alleges that defendants' relationship with the government of Ecuador regarding the *Aguinda* litigation was one of "collaboration" and "collusion." Complaint ¶¶ 77, 82. These allegations negate any claim that Donziger's or any other defendants' conduct was a "but for" cause of the Republic of Ecuador's alleged breach of its agreements with Chevron. This is because *"collusion involving a party to the contract indicates as a matter of law that the party involved was predisposed to breach its contractual obligations; thus, the allegedly interfering party cannot be the 'but for' cause of the breach." Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 294 (S.D.N.Y. 1998) (emphasis added); *see also Mina Investment Holdings Ltd. v. Steven W. Lefkowitz,* 16 F. Supp. 2d 355 (S.D.N.Y. 1998) (dismissing tortious interference with contract claim for failure to allege "but for" causation where plaintiffs alleged that defendant conspired or acted in concert with the breaching party); *accord RSM Production Corp. v. Fridman*, 643 F. Supp. 2d 382, 410 (S.D.N.Y. 2009) (citing *Granite Partners* and *Mina Investment* and dismissing tortious interference with contract claim where party to contract was predisposed toward breach even in the absence of defendant's alleged interference).

Because Chevron failed to file its tortious interference claim with three years as required

---

attorney does not owe a duty of care to his adversary or one with whom he is not in privity.")

by New York law, and because Chevron's claim alleges facts affirmatively negating any claim that Donziger was the but for cause of any alleged contractual breach, Chevron's Fourth Claim for Relief must be dismissed.

**F.**    **Chevron's Fifth Claim for Relief for trespass to chattels fails to state a claim upon which this Court may grant relief.**

Chevron's Fifth Claim for Relief rests on a skewed and untenable interpretation of the trespass to chattels cause of action. To state a claim for trespass to chattels, Chevron must plead facts establishing that Donziger "intentionally, and without justification or consent, *physically interfered with* the use and enjoyment of *personal property* in [Chevron's] possession." *School of Visual Arts v. Kuprewicz*, 771 N.Y.S. 2d 804, 807 (N.Y. 2003) (emphases added). In its Complaint, Chevron claims that Donziger has trespassed on Chevron's reputation and goodwill and on Chevron's resources and funds, which "were necessarily redirected from their intended uses to defendant against Defendants' fraudulent litigation and misleading media campaign." Complaint ¶ 269; *see also id.* ¶¶ 368, 370-371. These allegations do not state a claim for trespass to chattels.

Despite Chevron's novel and unsupported assertion to the contrary, neither goodwill nor reputation constitute "chattels." "A 'chattel' is defined as '[m]ovable or transferable property; personal property; esp.; a physical object not capable of manual delivery and not the subject matter of real property.' *As intangibles, goodwill and reputation do not fit within the definition of a chattel.*" *Doe ex rel. Doe v. Federal Exp. Corp.*, 571 F. Supp. 2d 330, 333 (D. Conn. 2008) (quoting Black's Law Dictionary (8th Ed. 2004) (emphasis added; alteration in original). Nor is money a "chattel," except under extraordinary circumstances not present here. *See, e.g., United States v. Bryser*, 954 F.2d 79, 85 (2d Cir. 1992) (holding that the phrase "goods and chattels" in 18 U.S.C. § 659 could include money where "the money was stored in large bundles and was not serving its usual function as a medium for exchange. As such, the money stolen by appellants was indistinguishable from other kinds of property commonly stored for property owners.").

Furthermore, even if goodwill, reputation, and money constituted "chattels," Chevron has failed to allege that Donziger or any other defendant "physically interfered" with those assets.

*See Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.* 713 F. Supp. 2d 215, 231

(S.D.N.Y. 2010) ("[T]he plaintiffs have failed to state a claim for conversion or trespass to

chattels because the defendants never assumed physical control over the intellectual property.")

(citing *Dowling v. United States*, 473 U.S. 207, 217 (1985)); *In re Jetblue Airways Corp. Privacy

Litigation*, 379 F. Supp. 2d 299, 329 (E.D.N.Y. 2005) (requiring actual possession for a trespass

to chattels claim)).  Indeed, that a defendant could dispossess or otherwise physically

intermeddle with or take possession of an intangible concept like goodwill or reputation makes

no sense on its face.  *See* REST 2d TORTS § 217-22 (stating that trespass to chattels, whether

through dispossession or intermeddling, involves intentional "***physical contact*** with the chattel.")

(emphasis added).  And Chevron's Complaint does not alleged that Donziger or any other

defendant has taken physical control over any of Chevron's funds or other resources.

     In sum, because goodwill, reputation, and money are not chattels, and because "physical

contact" is required for a trespass to chattels claim and Chevron has not alleged any physical

contact with any chattel, Chevron's Fifth Claim for Relief must be dismissed.

**G.**    **Chevron's Sixth Claim for Relief for unjust enrichment fails to state a claim upon which this Court may grant relief.**

     Chevron fails to state a claim for unjust enrichment, because Chevron has failed to allege

any enrichment.  To establish a claim for unjust enrichment in New York, Chevron must plead:

"(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good

conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of

N.J.*, 448 F.3d 573, 579 (2nd Cir. 2006).  "In addition, plaintiff must have had direct dealings or

some sort of quasi-contractual relationship with [the] defendant." *C.V. Starr & Co., Inc. v.

American Int'l Group, Inc.*, No. 06 Civ. 2157 (HB), 2006 WL 2627565, at *3 (S.D.N.Y. Sep. 14,

2006).

     Apply these required elements to Chevron's Complaint, it is clear that Chevron's unjust

enrichment claim badly misses the mark.  Chevron does not allege that it and Donziger were in

any type of quasi-contractual relationship such that the doctrine of unclean hands possibly could

apply.  Moreover, Chevron points to no benefit that Donziger has retained at Chevron's expense,

and indeed it cannot do so. Rather, Chevron's allegations are merely prospective and hypothetical: "Any property that Defendants obtain from Chevron *will be* acquired as a result of Defendants' ... conduct." Complaint ¶ 376 (emphasis added). Given that the "essence" of a claim for unjust enrichment "is that one party *has received* money or a benefit at the expense of another" and that Chevron has not alleged the receipt of any money or benefit by Donziger, Chevron's Complaint fails to state a cognizable claim. *City of Syracuse v. R.A.C. Holding, Inc.*, 685 N.Y.S.2d 381, 382 (1999) (emphasis added); *accord Carmona* , 2009 WL 890054, at *6 (Kaplan, J.) (dismissing unjust enrichment claim where plaintiffs failed to allege that defendant was in fact enriched).

**H.     Chevron's Seventh Claim for Relief for civil conspiracy fails to state a claim upon which this Court may grant relief.**

Chevron's civil conspiracy claim fails alongside Chevron's other state-law causes of action. New York does not recognize an independent tort of conspiracy. *See Alexander & Alexander of New York, Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986) ("[A]s we long ago held, a mere conspiracy to commit a tort is never of itself a cause of action." (internal quotation marks and citation omitted; alteration incorporated)). Consequently, because Chevron has not sufficiently alleged any underlying torts, Chevron necessarily fails to state an actionable claim for civil conspiracy. *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2nd Cir. 2006).

**I.     Chevron's Eighth Claim for Relief for violations of New York Judiciary Law § 487 fails to state a claim upon which this Court may grant relief.**

New York Judiciary Law § 487 is penal statute "intended to regulate, through criminal and civil sanctions, the conduct of litigation before the New York courts." *Schertenleib v. Traum*, 589 F.2d 1156, 1166 (2d Cir. 1978). "The mere fact that a wrongdoer is an attorney is insufficient to impose liability . . . ." *N. Trust Bank of Florida/Sarasota N.A. v. Coleman*, 632 F. Supp. 648, 650 (S.D.N.Y. 1986). Rather, "*[s]ection 487 is aimed at actions by an attorney in his or her role as an attorney*." *Id.* (emphasis added); *see also Amalfitano v. Rosenberg*, 428 F. Supp. 2d 196, 207 (S.D.N.Y. 2006) (observing that Section 487 "supports a civil action by a party to a litigation *against the attorneys representing parties in the litigation*" (emphasis added)); *accord Oakes v. Muka*, 868 N.Y.S.2d 796, 798 (2008) (Judiciary Law § 487 "applies to

an attorney acting in his or her capacity as an attorney, not to a party who is represented by counsel and who, incidentally, is an attorney.").

In this case, Chevron's Section 487 claim is based upon allegations that Donziger engaged in wrongdoing with respect to certain federal proceedings in New York. *See* Complaint ¶¶ 386-388. Even assuming, *arguendo*, that these factual allegations are true, Chevron's Section 487 claim must still be dismissed for failure to state a valid claim because Chevron does not—and cannot—allege that Donziger acted as an attorney and represented any party in any of the relevant proceedings. *See, e.g., Coleman*, 632 F. Supp. at 650 (granting motion to dismiss Section 487 claim where attorney's alleged wrongdoing was committed in his capacity as personal representative and ancillary executor of estate); *Haber v. Kisner*, 680 N.Y.S.2d 233 (N.Y. App. Div. 1998) (affirming dismissal of Section 487 claims because attorney's alleged misconduct was in his role as trustee); *People v. Canale*, 658 N.Y.S.2d 715, 717 (1997) (holding that "Judiciary Law § 487 should be limited to situations where an attorney was acting as an advocate representing a client and not as a witness.").

Moreover, "[i]f an allegedly injured party is aware that a lawyer is violating § 487 at the time the violation occurs, the victim's exclusive remedy is to bring an action in the course of that same proceeding." *Seldon v. Bernstein*, No. 09 Civ. 6163 (AKH), 2010 WL 3632482, at *2 (S.D.N.Y. Sep. 16, 2010). Thus, even if Donziger were acting as an attorney representing a party in the 28 U.S.C. § 1782 proceedings and the proceeding involving Republic of Ecuador referenced in Chevron's Complaint, there is no reason Chevron could not have brought its purported Section 487 claim against Donziger in those proceedings. Chevron's Complaint certainly doesn't explain why Chevron was unable to do so.

New York Judiciary Law § 487 is simply inapplicable to the conduct by Donziger alleged in Chevron's Complaint. Consequently, Chevron's Eighth Claim for Relief must be dismissed.

**J.     Chevron's Ninth Claim for Relief for a declaration that the Judgment by the Lago Agrio Court against Chevron is unenforceable or non-recognizable fails to state a claim upon which this Court may grant relief.**

Chevron's Ninth Claim for Relief seeks a declaration that any Ecuadorian judgment in the *Aguinda* case is non-recognizable and unenforceable, in New York or anywhere else in the

world, and further seeks a worldwide permanent injunction barring any effort by Donziger or virtually anyone else to enforce any such judgment. *See* Complaint ¶¶ 394, 397. Chevron seeks this relief even though the *Aguinda* judgment is not yet final, and no one has commenced an enforcement action in New York (or anywhere else). Chevron's rights challenge any Ecuadorian judgment in the *Aguinda* case, however, are limited to the rights accorded under New York's Recognition of Foreign Country Money Judgments Act (the "New York Recognition Act"). Specifically, as the Second Circuit concluded in *Republic of Ecuador, et al., v. Chevron Corporation, et al.*, Nos. 10-1020-cv (L) 10-1026 (Con), – F.3d – , 2011 WL 905118, at * 2 (2d Cir. Mar. 17, 2011):

> Texaco ... offered to satisfy any judgments in Plaintiffs' favor, ***reserving its right to contest their validity only in the limited circumstances permitted by New York's Recognition of Foreign Country Money Judgments Act*** *. ... [T]hat **promise**, along with Texaco's more general promise to submit to Ecuadorian jurisdiction, **is enforceable against Chevron in this action and any future proceedings between the parties, including enforcement actions**[.]

*Id.* at *2, n.4 (emphasis added). And New York's Recognition Act does not confer upon a judgment creditor any affirmative rights to have a court declare a judgment non-recognizable and unenforceable, nor does it confer upon a court the power to issue such a declaration beyond the bounds of a specific enforcement action within its jurisdiction.

N.Y. C.P.L.R. § 5303 provides that a foreign country judgment meeting the requirements of Section 5302 "is enforceable by an action on the judgment, a motion for summary judgment in lieu of complaint, or in a pending action by counterclaim, cross-claim or affirmative defense." Section 5304, in turn, provides various grounds upon which a court can refuse to recognize a foreign money judgment that otherwise satisfies the requirement of Section 5302 in the context of an enforcement action under Section 5303. *See* N.Y. C.P.L.R. § 5303. In other words, the New York Act provides a procedural vehicle for a judgment creditor to seek recognition and enforcement of a foreign money judgment in New York, and Section 5304 of the New York Recognition Act provides a judgment creditor with various affirmative defenses in an enforcement action. Nowhere in the New York Recognition Act, however, is there any provision for a judgment debtor to bring an affirmative claim for declaration that a judgment is non-

recognizable and unenforceable within the State of New York, much less beyond its territorial boundaries. Furthermore, counsel for Donziger has been unable to identify any reported case, in New York or in any other jurisdiction within the United States, where a court granted the type of affirmative, worldwide declaratory and injunctive relief requested by Chevron under the auspices of the Uniform Foreign Country Money Judgment Act or otherwise.

Indeed, the only analogous cases uniformly have held that claims seeking a declaration invalidating a foreign judgment or holding it to be unenforceable are premature before any actual enforcement action is commenced. For example, in *Plata v. Darbun Enterprises, Inc.*, No. 09 cv 44-1EG (CAB), 2009 WL 3153747 (S.D. Cal. Sep. 23 2009), defendants filed a counterclaim seeking to have a Mexican judgment against them declared void. The court dismissed the claim under Federal Rule of Civil Procedure 12(b)(6), explaining:

> Defendant's allegations fail to present a cognizable legal theory or facts sufficient to support a cognizable legal basis for the Court to affirmatively declare the Mexican Judgment void, *as opposed to merely declining to enforce or recognize it pursuant to Darbun's affirmative defense to Plaintiffs' claim under the Uniform Foreign-Country Money Judgments Recognition Act.*

*Id.* at * 8-9 (emphasis added). Similarly, a district court in Illinois dismissed a declaratory judgment action seeking to have the court declare a future judgment in a New Zealand lawsuit unenforceable. The court held that there was not "actual controversy" as required by the Constitution because a final judgment had not yet been entered in New Zealand and because the New Zealand plaintiff had not yet sought to have the judgment confirmed in a United States court. *See Basic v. Fitzroy Eng'g, Ltd.*, 949 F. Supp. 1333, 1337 (N.D. Ill. 1996). In affirming the dismissal for lack of subject matter jurisdiction in *Basic*, the Seventh Circuit explained that the "Constitution does not allow a federal district court to issue advisory opinions based on [fears] of future judgments and speculation." *Basic*, 1997 WL 753336, at *5 (7th Cir. 1997), at *5. The court added:

> Assuming that a New Zealand court renders a judgment in Fitzroy's favor, *Fitzroy must then have to bring an enforcement action against Basic....* According to Basic, any judgment against him in the NZ action should not be recognized by an Illinois court, or by a federal court sitting in Illinois, because the cause of action on which the judgment [will be] based is repugnant to the public policy of this state. Basic will have that opportunity to make that argument. But that opportunity will take place on another day and in front of another judge.

*Id.* (emphasis added); *see also Dole Food Co., Inc. v. Gutierrez,* 2004 WL 3737123, at \*15 (C.D. Cal. 2004) (dismissing declaratory relief claims seeking to invalidate a foreign judgment and explaining that "[i]f and when the Managua Defendants obtain a judgment against Dole and attempt to enforce it, Dole will have an opportunity to challenge Special Law 364 and any actual judgment rendered thereunder," but until that happens, the court lacks subject matter jurisdiction).

In short, the New York Act defines the boundaries of Chevron's rights to challenge the *Aguinda* judgment, and the New York Act simply does not confer upon Chevron any rights to the sweeping declaratory and injunctive relief requested in its Ninth Claim. Chevron's Ninth Claim for Relief, therefore, fails to state a claim upon which this Court properly may grant relief.

## III.   CONCLUSION

For all the foregoing reasons, the Court should dismiss Chevron's Complaint in its entirety.

Respectfully submitted,

Dated:  March 30, 2011

By:   */s/ Elliot R. Peters*
ELLIOT R. PETERS
JOHN W. KEKER (admitted *pro hac vice*)
JAN NIELSEN LITTLE (admitted *pro hac vice*)
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:415.391.5400
Facsimile: 415.397.7188
Email:   epeters@kvn.com
Email:   jkeker@kvn.com
Email:   jlittle@kvn.com

**Attorneys for STEVEN DONZIGER, THE LAW OFFICES OF STEVEN R. DONZIGER**