UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

                           Plaintiff,


                    -against-                                    11 Civ. 0691 (LAK)


STEVEN DONZIGER, et al.,

                           Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OPINION**


            Appearances:


Randy M. Mastro                         Julio C. Gomez
Andrea E. Neuman                        JULIO C. GOMEZ, ATTORNEY AT LAW LLC
Scott A. Edelman
Kristen L. Hendricks                    Carlos A. Zalaya, II
William E. Thomson                      F. GERALD MAPLES, PA
GIBSON, DUNN & CRUTCHER, LLP
*Attorneys for Plaintiff*               *Attorneys for Defendants Hugo Gerardo*
                                        *Camacho Naranjo and Javier Piaguaje*
                                        *Payaguaje*

Steven R. Donziger
*Defendant* Pro Se
                                        Gordon Mehler
                                        Joyce Young
John W. Keker                           LAW OFFICES OF GORDON MEHLER, P.L.L.C.
Jan Nielsen Little                      *Attorneys for Defendants Stratus Consulting,*
Elliot R. Peters                        *Inc., Douglas Beltman, and Ann Maest*
KEKER & VAN NEST, LLP
*Attorneys for Defendant Donziger*


LEWIS A. KAPLAN, *District Judge.*

            A court in Lago Agrio, Ecuador, has entered a judgment of more than $18 billion (the

2

"Judgment") against Chevron Corporation ("Chevron") in an action alleging environmental harms by Texaco, Inc. ("Texaco"), the shares of which were acquired by Chevron in 2001, years after Texaco ceased operations in Ecuador.  Chevron brought this action against the Lago Agrio Plaintiffs ("LAPs"), certain of their attorneys, and others on a variety of theories.  The centerpiece of the complaint, however, is its claim for a declaration that the Judgment may not be recognized or enforced anywhere outside of Ecuador and for a corresponding injunction.  It seeks that relief on a variety of grounds, including that the Judgment was rendered under a system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law and that it was procured by fraud.

On March 7, 2011, this Court granted Chevron's motion for a preliminary injunction barring the LAPs and others from, among other things, commencing, prosecuting, advancing in any way, or receiving benefit from any action or proceeding, outside the Republic of Ecuador, for recognition or enforcement of the Judgment.[1]  Appeals from that ruling have been taken.  Defendant Steven Donziger subsequently moved to dismiss the complaint for failure to state a claim.[2]  The matter now is before the Court on Chevron's motion to bifurcate for expedited discovery and trial of its declaratory judgment claim (the ninth claim for relief).

I.

Chevron argues that this Court should promptly determine its claim for a declaration

---

[1]

*Chevron Corp. v. Donziger*, ___ F.Supp.2d ____, No. 11 Civ. 0691 (LAK), 2011 WL 778052 (S.D.N.Y. Mar. 7, 2011) (hereinafter "*Donziger*").

[2]

DI 242.

that the Judgment is not recognizable or enforceable so that it may have certainty with respect to a large claimed liability and, should it prevail, protection against a multiplicity of vexatious efforts to enforce the Judgment around the world.  It would leave its various other claims for later resolution.  At a minimum, it wishes to proceed promptly on its contention that the Judgment is not recognizable or enforceable on all of the grounds it alleges save that it was procured by fraud.

Those defendants who have appeared in this action resist this application on a host of grounds.  They contend that the proposed bifurcation of the declaratory judgment claim would violate their Seventh Amendment right to a jury trial, that there is no need for an expedited resolution of the declaratory judgment claim, and that bifurcation would prejudice them.  They argue also that this Court can or should not pass judgment on the fairness and impartiality of the Ecuadorian judicial system, on whether enforcement of the Judgment would be contrary to public policy, or on the question whether the Lago Agrio court had personal jurisdiction over Chevron.

Many of these arguments go to the merits of Chevron's claim that the Judgment is not recognizable or enforceable, which is quite a different matter from whether that claim should be bifurcated and decided first.  Others rest on assumptions about whether the declaratory judgment claim could be resolved first without prejudicing any legitimate interests of the defendants.  The remainder ignore the Court's ability to deal with defendants' claims in a manner consistent with the rights of all concerned even if bifurcation were granted.  Before proceeding to those matters, however, it is important to keep one's eye on the forest rather than the trees.

First, as the Court explained in *Donziger,* the LAPs have a judgment for more than $18 billion and intend to institute a multiplicity of enforcement actions around the world.  The purpose of this multiplicity of litigation would be not merely to enforce the judgment, but to seek

4

enhanced leverage over Chevron in an attempt to coerce a settlement.[3]  While enforcement in Ecuador is stayed at the moment, some enforcement options outside Ecuador are available now, and the stay in Ecuador could vanish at any moment, i.e., when a decision is reached on the pending appeals.[4]  That threat of immediate and irreparable injury played an important part in the issuance of the preliminary injunction, and the same threat is present today.  All parties have or, at least, ought to have a desire to have the issue of the recognizability and enforceability of the Judgment authoritatively and finally decided at the earliest moment consistent with proper adjudication.

Second, the preliminary injunction in normal circumstances presumably would protect Chevron during the entire pendency of this case, thus obviating any need for expediting final adjudication on the merits. But literally dozens of defendants have defaulted in this action, are outside the country, and may defy the preliminary injunction despite the fact that they are subject to the personal jurisdiction of this Court.  In addition, a final determination by this Court of the recognizability and enforceability of the Judgment may receive greater deference from foreign *fora*, in the event contumacious enforcement attempts are initiated there, than the preliminary injunction. Moreover, those defendants who have appeared have appealed the preliminary injunction.  While this Court thinks a reversal unlikely, that ultimately is a matter for the Court of Appeals.  If there were a reversal as to the interlocutory relief, the need for a final determination on the merits of the issue of recognizability and enforceability would be urgent indeed.  Prudence suggests moving toward such a determination with appropriate speed.

Third, it is clear once again – as it has been previously in the history of this dispute

---

[3]

See Donziger, 2011 WL 778052, at *23-24.

[4]

Id. at *29.

– that the LAPs seek to delay proceedings here while advancing them in Ecuador.  It would be a simple matter for them to agree to abstain from enforcement efforts while this lawsuit proceeds to final resolution at a more relaxed pace .  But they have not done so because delay here while matters proceed in Ecuador is to their advantage and Chevron's detriment, both without regard to the ultimate merits of the issues before this Court.

II.

The background of this case is set forth in *Donziger*, familiarity with which is assumed.  All that need be added here is an update on the status of proceedings in Ecuador,  a more detailed description of the complaint, and discussion of positions taken by defendants on this motion.

*A.     Status in Ecuador*

When the preliminary injunction was issued, the Judgment had been entered against Chevron, and Chevron had sought clarification from the trial court of certain issues.  The trial court subsequently rendered its decision on that request,[5] and Chevron filed its appeal to the Provincial Court.  That appeal is pending.  As *Donziger* stated, the appeal may be decided at any time, and there is good reason to believe that the appellate court will do so quickly in this case.[6]  Until that court rules, the Judgment is not enforceable in Ecuador although even now it could be used "to seek, and perhaps to obtain, preventive measures orders in other Latin American countries, including

---

[5]     DI 186.

[6]     2011 WL 778052, at *23.

6

Colombia, that would freeze or attach Chevron assets."[7]  Once the Provincial Court rules on the pending appeal, the Judgment will be enforceable in Ecuador absent a further stay.  The availability of a stay pending a further appeal in Ecuador and, if such a stay were available at all, the requisite terms, are uncertain.[8]  In light of the Court's previous conclusion that Chevron is likely to prevail on its contention that Ecuador does not provide impartial tribunals and due process, it cannot be assumed that a stay of enforcement in Ecuador pending a further appeal would be granted or that Chevron will receive a fair adjudication on appeal there.  In any case, in the absence of a stay pending a further appeal, the Judgment could become a basis for enforcement efforts – notwithstanding the pendency of a second level appeal in Ecuador – in the United States and at least many foreign jurisdictions.[9]  Thus, enforcement efforts around the world are likely to begin as soon as the Provincial Court rules, which could be at any time, if not sooner.

B.      *The Complaint*

As described in *Donziger,* the complaint in this action asserts nine claims.  In light of the issues presented here, it is pertinent to go into more detail, as the relationship, or lack thereof, among various claims is significant.

1.      *The RICO Claims – Counts 1 and 2*

Counts 1 and 2 allege violations of 18 U.S.C. §§ 1962(c) and (d) – i.e., conduct of

---

[7]

        *Id.* at *23, 28.

[8]

        *Id.* at *23.

[9]

        *Id.* at *29.

the affairs of an enterprise through a pattern of racketeering activity and conspiring to do so, respectively. It is important to recognize that none of the LAPs, who as judgment creditors are the prime targets of Chevron's declaratory judgment claim, is a party to Counts 1 and 2. The only defendants on these claims who have appeared in this action are the LAPs' U.S. lawyer, Mr. Donziger, and Stratus Consulting and two of its employees. None of these defendants is a creditor on the Judgment.

The alleged racketeering enterprise is an association in fact consisting of the defendants (other than the LAPs) and alleged co-conspirators not named as defendants.[10] The alleged goals of the enterprise include:

- manufacturing evidence of Chevron's liability for the Lago Agrio case, procuring sham criminal charges in Ecuador against certain Chevron attorneys, conducting a public pressure campaign including the spreading of false and misleading information about Chevron and the Lago Agrio case, and obstructing Chevron's efforts in U.S. court proceedings to discover the truth;[11]

- prosecuting the Ecuadorian litigation, which Chevron alleges was a sham;[12]

- influencing and colluding "with Ecuadorian government and court officials" and making false statements to Chevron stockholders, financial analysts,

---

[10]
       Cpt. [DI 1] ¶ 306.

[11]
       *Id.* ¶ 306a.

[12]
       *Id.* ¶ 306b.

investors, and state and federal officials in the United States;[13] and

- ghostwriting the Cabrera report and other submissions to the Lago Agrio court and falsely promoting that report as independent to the media and to U.S. courts.[14]

The pattern of racketeering activity allegedly consisted of:

- Extortion in violation of the Hobbs Act[15] and the New York Penal Law[16] in that the RICO defendants allegedly have threatened to "(1) continue to pursue a scheme of misrepresentation to the great harm . . . of Chevron . . . ; (2) continue to conspire with Ecuadorian officials to have Chevron's attorneys criminally prosecuted on trumped up charges; and (3) secure a fraudulent multi-billion dollar judgment against Chevron and file lawsuits in the United States and in other foreign jurisdictions seeking recognition and enforcement of the judgment," "unless and until Chevron 'settles' the Lago Agrio Litigation."[17]

- Mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 in that the RICO defendants engaged in a scheme or artifice to defraud Chevron,

---

[13] *Id.* ¶ 306c.

[14] *Id.* ¶ 306e.

[15] 18 U.S.C. § 1951.

[16] N.Y. PENAL LAW §§ 110.00, 155.05(2)(e), 155.42.

[17] Cpt. ¶ 314.

various courts here and in Ecuador, and the greater public concerning Chevron's alleged liability "by manufacturing evidence [for use in Ecuador], colluding with . . . Cabrera to submit . . . manufactured evidence [in Ecuador], and then holding out the Cabrera Report as independent and neutral when it decidedly was not," all for the purpose of coercing Chevron to make a multi-billion dollar payment.[18]

- Money laundering in violation of 18 U.S.C. § 1956(a)(2)(A) in that Donziger and defendant Yanza knowingly caused the transfer of funds to and from the United States with the intent that they be used to promote the alleged Hobbs Act and mail and wire fraud offenses.[19]

- Obstruction of justice in violation of 18 U.S.C. § 1503 in that the RICO defendants and their counsel filed or caused to be filed in Section 1782 proceedings brought by Chevron in U.S. courts allegedly false documents that misrepresented Cabrera's status as a supposedly independent expert.[20]

- Witness tampering in violation of 18 U.S.C. § 1512 in that Donziger allegedly tampered with (1) Dr. Charles Calmbacher in connection with his deposition in a Section 1782 proceeding in the Northern District of Georgia, (2) Mark Quarles in connection with a declaration he submitted in 2007 in this Court, and (3) numerous Stratus employees in connection with a Section

---

[18]    *Id.* ¶ 317.

[19]    *Id.* ¶ 322.

[20]    *Id.* ¶¶ 323-24.

1782 application pending in the District of Colorado.[21]

2.      *The Common Law Tort Claims – Counts 3-5 and 7*

As noted, Counts 3 through 5 make state law tort claims for fraud, tortious interference with contract, and trespass to chattels.  As there is no common law tort of civil conspiracy in New York, Count 7, which alleges such a conspiracy, has no significance save that it is a vehicle for holding co-conspirators vicariously liable for torts committed by others in furtherance of a conspiracy.[22]  That said, it is appropriate to focus on the particular allegations.

Count 3, the common law fraud claim, alleges that defendants made false representations to U.S. courts, the Lago Agrio court, federal and state agencies and officials in the United States, and Chevron's stockholders, investors, analysts, and the media, all in efforts to obtain favorable rulings from U.S. and the Lago Agrio courts, to pressure U.S. officials to investigate Chevron, and to propagate false information about Chevron.[23]

Count 4 alleges that defendants have tortiously interfered with and induced breach of Texaco's settlement with Ecuador[24] by a variety of means including use of the allegedly

---

[21]

*Id.* ¶¶ 325-29.

[22]

*See Alexander & Alexander of New York, Inc. v. Fritzen*, 68 N.Y.2d 968, 969, 510 N.Y.S.2d 546, 503 N.E.2d 102 (1986) (citations omitted); *see also Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir.2006) ("New York does not recognize an independent tort of conspiracy.").

[23]

Cpt. ¶¶ 353-56.

[24]

*See Donziger*, 2011 WL 778052, at *4-5.

"fabricated Cabrera report."[25]

Count 5 alleges that the previously alleged extortion, collusion, and deceit constituted trespass to Chevron's chattels by interfering with the use and enjoyment of its property.[26]

### 3.      The Other State Law Claims – Counts 6 and 8

Counts 6 and 8 allege, respectively, that the receipt by defendants of any proceeds of the Judgment would constitute unjust enrichment[27] and that Donziger is liable to Chevron for violation of New York Judiciary Law Section 487,[28] which provides private parties a cause of action for damages against any person injured by deceit or collusion by an attorney of any court or party.

### 4.      The Declaratory Judgment Claim – Count 9

Finally, Count 9 seeks a declaration that the Judgment is unenforceable and unrecognizable "on, among others, grounds of fraud, failure to afford procedures compatible with due process, lack of impartial tribunals, and contravention of public policy."[29]   In a subsequent filing, Chevron made clear that it challenges the Judgment also on the ground that the Lago Agrio

---

[25]   Cpt. ¶¶ 361-62.

[26]   *Id.* ¶¶ 368-69.

[27]   *Id.* ¶¶ 375-77.

[28]   *Id.* ¶¶ 385-90.

[29]   *Id.* ¶ 394.

12

court lacks personal jurisdiction over it.[30]

III.

Rule 57 of the Federal Rules of Civil Procedure states that "[t]he court may order a speedy hearing of a declaratory-judgment action."  In addition, Rule 42(b) further provides in relevant part:

> "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues [or] claims . . . When ordering a separate trial, the court must preserve any federal right to a jury trial." [31]

As one commentator has put it, "Rule 42(b) is sweeping in its terms and allows the district court, in its discretion, to grant a separate trial of any kind of issue in any kind of case."[32] It may do so whenever it concludes that separate trials would prevent delay or prejudice or serve convenience.[33]  Among the pertinent considerations are the degree of difference between the issues to be tried separately, the overlap or lack thereof in the proof, and any prejudice to either side by the district court's failure to adopt its view of the matter.[34]

---

[30]

DI 200.

[31]

F.R.C.P. 42(b).

[32]

9A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 2398, at 126 (2008).  *See also Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir. 1984) (The decision to bifurcate rests "firmly within the discretion of the trial court."); *Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 283 (2d Cir. 1990).

[33]

*Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 370 (2d Cir. 1988).

[34]

*See, e.g., Gaffney v. Dep't. of Inf. Tech. and Telecommunications*, 569 F. Supp.2d 455, 459 (S.D.N.Y. 2008); 8 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 42.20 [4] (3d ed. 2010).

As an initial matter, Chevron has a pressing need – and the defendants should wish – for a definitive resolution of the enforceability and recognizability of the Judgment.  While the enforcement of the Judgment is stayed in Ecuador pending the first level appeal, that appeal could be decided at any time.  Once that occurs, the Judgment could become the basis for enforcement efforts in all or most states under the Uniform Foreign Country Money Judgments Recognition Act (the "Uniform Act" or the "Act") and in many places abroad "even though  [a further] appeal therefrom is pending or it is subject to [further] appeal."[35]  A prompt resolution of its prayer for a declaration of non-enforceability and non-recognizability therefore is highly desirable.   Any unnecessary delay likely would be seriously prejudicial.  Moreover, Rule 57 embodies a strong policy favoring early resolution of declaratory judgment actions.

Second, it is important in resolving motions such as this to apply experience and practical common sense.  The core of this case is the issue of the enforceability of the Judgment outside of Ecuador.  Once that issue is decided, one way or the other, it is likely that the rest of the case will vanish or at least pale in significance.   Such a decision probably would be dispositive of the unjust enrichment count, dramatically narrow or eviscerate the RICO and fraud claims, and leave little incentive to pursue what remains.[36]

Third, none of the defendants who has appeared in this case has offered any persuasive basis for concluding that a separate and early trial of Count 9 would be prejudicial in any

---

[35]

N.Y. CPLR § 5302.

In the absence of proof of contrary law elsewhere in the United States or abroad, the Court applies New York law.  *Donziger*, 2011 WL 778052, at *31.

[36]

Chevron has acknowledged that it is at least possible that a decision on the merits of Count 9 could change the scope of relief that Chevron would continue to seek.  Tr., Mar. 30, 2011, at 9:1-20.

material way.  Their most elaborate argument – the contention that it would deprive them of rights deprived by the Seventh Amendment – is not convincing for reasons discussed in more detail below.

Fourth, the defendants' contention that there would be a substantial overlap in the proof in separate trials of Count 9 and of the remaining counts seems, at least at this point, to be at least exaggerated for several reasons going beyond the likelihood that a decision on the merits of Count 9 probably would narrow or eliminate the remaining counts.

To begin with, many of the alternative grounds for the declaration sought by Count 9 do not depend upon facts that might be at issue on the counts that would be deferred if this motion were granted.  Certainly the claim that the Ecuadorian court lacked personal jurisdiction over Chevron, the alleged repugnancy of the Judgment to U.S. or New York public policy, and the question whether at least part of the Judgment represents an unenforceable penalty all probably could be determined without reference to any of the facts alleged in the RICO and state law claims or defenses thereto.

Next, Donziger and the LAP Representatives both contend, Donziger by a pending motion and the latter in their amended answer, that Chevron's complaint does not state any legally sufficient claim.  They both have asserted other grounds for dismissal of particular counts.  To the extent, if any, that they prevail on any of these contentions, even the potential for overlap would be reduced, as a dismissal of Count 9 of course would moot the entire issue and the dismissal of any of the RICO and state law counts would narrow any possible common proof.[37]

To be sure, there are areas of *possible* evidentiary overlap between Count 9 and the RICO and state law claims.  Although Chevron's common law fraud and RICO claims are

---

[37] The Court does not now express any view on the merits of the appearing defendants' contentions in this regard.

significantly broader than its contention that the Judgment was procured by fraud,[38] some of Chevron's contentions on those counts – notably, the claims relating to the allegedly fraudulent Cabrera report – are common to its contention that the Judgment was procured by fraud.  Similarly, there may be some overlap between the fraud and RICO claims and the question whether recognition and enforcement should be denied on the ground that the Judgment was rendered in a system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law.[39] But these are merely possibilities.  Donziger already has argued that any fraud with respect to the Cabrera report would be immaterial because the Judgment did not rely on it.[40] Likewise, perhaps despite positions taken thus far, it is not yet clear that evidence of the manner in which the Lago Agrio case actually was handled – as distinguished from the characteristics of the Ecuadorian legal system in general or, perhaps, in categories of cases such as the Lago Agrio case – would be received in evidence on the issue of whether the Ecuadorian system is impartial and consistent with due process.[41]

　　　　　Nor are these the only reasons to believe that the claim of overlapping proof is overdrawn.  It must be borne in mind also that the two LAP Representatives, who are judgment

---

[38]　For example, they raise issues concerning fraud allegedly perpetrated on U.S. courts, U.S. government agencies and officials, Chevron stockholders, and the securities markets, none of which has anything to do with the enforceability of the Judgment.

[39]　*See* N.Y. CPLR § 5304(a), subd. 1.

[40]　*See, e.g.,* Tr., Feb. 18, 2011, 31:10-32:11.

[41]　*See, e.g., Society of Lloyd's v. Ashenden,* 233 F.3d 473, 477-78 (7th Cir. 2000); *Genujo Lok Betgeiligungs GmbH v. Zorn,* 943 A.2d 573, 578-59 (Me. 2008); *CIBC Mellon Trust Co. v. Mora Hotel Corp. N.V.,* 296 A.D.2d 81, 89, 743 N.Y.S.2d 408, 414 (1st Dep't. 2002), *aff'd,* 100 N.Y.2d 215, 762 N.Y.S.2d 5 (2003).

creditors and thus the central focus of Count 9, are not defendants on the RICO claims and are

defendants on the state law claims only on of theories of vicarious liability – conspiracy and agency.

They are not personally charged with any fraudulent behavior.  On the other hand, the only other

appearing defendants who are charged with misconduct in the RICO and tort claims – Donziger and

the Stratus defendants – are not judgment creditors. They may prove not to be proper parties to

Count 9 or may be dropped by the plaintiff, as defendants on, the declaratory judgment claim.[42]

In sum, then, there is a possibility, but by no means a certainty, of some factual

overlap.  But the Court has ample means at its disposal to minimize any need for duplicative proof

in two separate trials should genuine and substantial overlap appear to be likely once the case has

matured.  Should it prove desirable, the bifurcation order might be modified to defer the claim that

the Judgment was procured by fraud for later trial together with the RICO and state law claims, to

the extent those claims survive motion practice, while proceeding to trial or other disposition of the

remainder of the alleged grounds for non-recognition and non-enforcement of the Judgment.  The

use of a special verdict in the Count 9 trial could eliminate also any need to retry any issues common

to Count 9 and a second trial if indeed a second trial ever occurred.  And there are still other

alternatives.

In the last analysis, the Rule 42 balance comes down to this.  There is very

substantial reason to proceed promptly to final determination of Count 9, deferring the other aspects

---

[42]
 Attorney Donziger, for example, is named as a defendant on Count 9.  Nevertheless, Chevron already has asserted that only the LAPs and the Amazon Defense Front are entitled to contest the declaratory judgment claim because only they are judgment creditors. DI 200, at 11.  They have indicated also that either the Court or Chevron could drop him as a defendant on that count. DI 229, at 23.  While the Court does not now express a view on these matters, it is appropriate to recognize that changes in the parties may be in the offing and that those changes, should they occur, could further reduce or eliminate any overlap of proof.

of the case to the extent they survive for later consideration.  The potential areas of overlapping proof between Count 9 and the other counts are limited.  The Court has the tools necessary to manage and, if necessary, reduce or eliminate duplication of efforts in any second trial that might occur.  Hence, there is little or no risk of prejudice.  The balance strongly favors bifurcation, subject to revision if that proves necessary.

IV.

Donziger and the two Lago Agrio Representatives assert that separation of Count 9 from the rest of the case would violate their Seventh Amendment right to trial by jury.  The essence of the argument, as the Court understands it, is that Count 9 cannot be decided without determination of factual issues common to the RICO and tort claims, that defendants have a right to a jury trial on the latter claims, and that the Court, under *Beacon Theatres, Inc. v. Westover*,[43] must conduct a jury trial on those common factual issues before or at the same time as it tries the declaratory judgment claim.  This argument does not withstand analysis.

In *Beacon Theatres*, Beacon claimed that Fox West Coast Theatres, a competitor, and Fox's distributors were violating the federal antitrust laws by agreeing to "clearances" during which Fox had the exclusive right to show first-run motion pictures in the area and threatened to sue Fox for treble damages.[44]  Fox brought an action against Beacon for a declaratory judgment that its actions and those of the distributors were consistent with the antitrust laws and for an anti-suit

---

[43]

359 U.S. 500 (1959).

[44]

*Id.* at 502.

injunction.[45]  Beacon counterclaimed for damages and other relief for the alleged antitrust violation and cross claimed against an exhibitor that had intervened.[46] It demanded a jury trial of the factual issues.[47]  The district court, however, viewed Fox's complaint as raising "essentially equitable" issues, bifurcated its declaratory judgment claim for a non-jury trial and deferred resolution of Beacon's counterclaim and cross claim.[48]

The Supreme Court ultimately held that Beacon's antitrust counterclaim raised the same antitrust issue as to the lawfulness of the clearances as the declaratory judgment complaint, that Beacon had a right to try that counterclaim to a jury, and ordering bifurcation and a non-jury trial of the declaratory judgment claim therefore had violated Beacon's Seventh Amendment rights.[49]  Subsequently, in *Dairy Queen v. Wood*, it made clear that legal claims "must be determined prior to any final determination of . . . equitable claims" in cases in which there are issues common to equitable and legal claims.[50]

Even assuming for purposes of argument that Count 9 and the RICO and state law claims raise some essential common issues, the necessary predicate of the defendants' argument that bifurcation of Count 9 for early trial would violate the Seventh Amendment is the unstated premise

---

[45]     *Id.* at 502-3.

[46]     *Id.* at 503.

[47]     *Id.*

[48]     *Id.*

[49]     *Id.* at 508-9.

[50]     369 U.S. 469, 479 (1962).

that a separate trial on Count 9 would be non-jury.[51]  But that is not necessarily or even probably so here.

The Declaratory Judgment Act, under which Count 9 is brought, is simply a procedural mechanism that provides a basis for seeking relief.[52]  A declaratory judgment action is neither inherently equitable nor inherently legal.[53]  The right to a jury trial in such a case depends upon the nature of the underlying claim.[54]  In deciding whether there is a right to a jury in any case, a court examines first "whether the [underlying] action would have been deemed legal or equitable in 18th century England" and, second, whether the remedy sought is legal or equitable.  It then balances the two, "giving greater weight to the latter."[55]  This is true in declaratory judgment actions

---

[51]

Defendants seem to be under the impression that a declaratory judgment claim is inherently equitable and therefore a claim on which there is no right to a jury trial, although they have been far from consistent, at least on the latter point.  *E.g.,* Tr., Mar. 30, 2011, 15:2-16:18, 16:25-17:16.

[52]

*See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937) ("[T]he operation of the Declaratory Judgment Act is procedural only."); *see also In re Joint E. and S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) (same); *Union Labor Life Ins. Co. v. Olsten Corp. Health and Welfare Benefit Plan*, 617 F.Supp.2d 131, 150 (E.D.N.Y. 2008) (Declaratory Judgment Act is a "procedural device" that does not allow plaintiffs to avoid requirements imposed by substantive law. (citing *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1428 (Fed.Cir.1997))) .

[53]

*Diematic Mfg. Corp. v. Packaging Industries, Inc.*, 516 F.2d 975, 978 (2d Cir.), *cert. denied*, 423 U.S. 913 (1975) ("a declaratory judgment action is a creature of statute, and therefore is 'neither fish nor fowl, neither legal nor equitable'" (citing *American Safety Equip. Corp. v. J.P. Maguire & Co.*, 391 F.2d 821, 824 (2d Cir. 1968))).

[54]

12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 57.64 (3d ed. 2010) ("the right to a jury trial is determined by the nature of the underlying dispute, not the declaratory judgment suit: if a jury is permitted on the underlying claim, the declaratory judgment action may also be conducted before a jury.").

[55]

*Pereira v. Farace,* 413 F.3d 330, 337 (2d Cir. 2005) (internal quotation marks and citations omitted).

as well as others.  So, for example, there would be a right to a jury in a suit by the maker of a promissory note for a declaration that the note had been paid because there would be such a right in an action for damages on the note.

The Court will not now decide whether defendants would have a right to a jury trial on Count 9, as the parties have not briefed the question.  What is clear, however, is that the underlying claim in Count 9 is whether the Lago Agrio judgment creditors are entitled to recognition and enforcement of the Judgment.  If there would have been a right to a jury in a suit for recognition and enforcement, it seems quite likely that there would be a right to a jury in an action for a declaration that the Judgment is not entitled to recognition and enforcement.  For present purposes, it is sufficient to determine only that the neither party has established that a trial of Count 9 would be non-jury.  Absent such a showing, there is no Seventh Amendment issue.

Donziger's contention that evidence of statements that he has made concerning such matters as the honesty and fairness of the Ecuadorian legal system, among others, might be offered both at a trial of Count 9 and at a later trial of RICO and state law claims does not alter this conclusion, at least at this stage.  No *Beacon Theatres* issue would exist unless, at a minimum, (a) Count 9 were tried non-jury, and (b) its resolution determined factual issues essential to the resolution not only of Count 9, but also to RICO or state law claims deferred for later resolution. As discussed, however, Donziger has not established either of these propositions.  Moreover, in the event further proceedings demonstrate that there is a Seventh Amendment issue, the Court would be obliged to, and would, take appropriate measures to ensure that no Seventh Amendment rights were lost.[56]

---

[56]

Nor would there be any problem with different juries – one in the trial of Count 9 and a second in a subsequent trial – hearing evidence concerning Donziger's statements.

Very much the same analysis disposes of the LAP Representatives' contention that bifurcation of Count 9 would violate their Seventh Amendment rights because their unclean hands defense would raise factual questions common to legal claims in this case.  Assuming for sake of argument that the unclean hands defense is legally sufficient, a matter yet to be decided, it would be no more than an equitable defense to equitable claims.[57]  In any case, it remains to be seen whether a separate trial of Count 9 would take place before a jury.  Thus, it is premature to determine whether, how and when the unclean hands defense would be raised appropriately in a trial of Count 9.

## V.

The Court has considered the remainder of the appearing defendants' arguments. All either go to the merits of Count 9 rather than to the present motion, are premature and/or are unpersuasive.  The Court comments on only one.

The appearing defendants argue that if Count 9 is to separated, it should be severed rather than bifurcated to allow for an immediate appeal from a determination of the issues of recognizability and enforceability.  Assuming *arguendo* that any claims remain following a trial on Count 9 and that the losing party or parties wish to appeal the outcome of the separate trial, there

---

Different juries may "examine overlapping evidence" as long as they do "not decide factual issues that are common to both trials and essential to the outcome." *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1126 (7th Cir. 1999).  Such an approach is permissible because the "Seventh Amendment is concerned about factual conclusions, not evidence." *Id.* at 1128.  *See also Paine, Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 587 F.Supp. 1112, 1117 (D.C.Del. 1984) ("The prohibition is not against having two juries review the same evidence, but rather against having two juries decide the same essential issues.").

[57]

*See, e.g.*, *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 607 (2d Cir. 2005).

would be at least two and possibly three avenues for prompt appellate review – entry of a Rule 54(b) certificate, certification pursuant to 28 U.S.C. § 1292(b), and perhaps a Rule 21 severance.  There is no reason to choose now.


## VI.

The interests of justice, convenience, the avoidance of prejudice, and the desirability of an expedited resolution of Count 9 all support conducting a separate trial on that claim.  Chevron's motion to bifurcate Count 9 therefore is granted.  The Court, however, retains complete flexibility to ensure that the matter is handled appropriately and that any Seventh Amendment rights are preserved.  It therefore will stand ready to consider changes to this order, should circumstances warrant, as the matter proceeds.

SO ORDERED.

Dated:          April 15, 2011


_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)