UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
     :
CHEVRON CORPORATION,     :
     :
    Plaintiff,     :
     :
   v.     :    Case No. 11 Civ. 0691 (LAK)
     :
STEVEN DONZIGER, et al.,     :
     :
    Defendants.     :
     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CHEVRON CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS STEVEN DONZIGER, THE LAW OFFICES OF STEVEN DONZIGER, AND DONZIGER & ASSOCIATES, PLLC'S MOTION TO DISMISS CHEVRON'S AMENDED COMPLAINT**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT ...................................................................................................................4

I.    Donziger Lacks Standing to Move to Dismiss the Declaratory Relief Claim and, in Any Event, His Arguments Are Without Merit ...............................................................4

II.    At the Proper Time, the Court Should Reject the Remainder of Donziger's Motion........8

    A.    Chevron's RICO Allegations Properly State a Claim for Relief .........................8

        1.    Chevron Does Not Seek Extraterritorial Application of RICO ...............8

        2.    Donziger's Single-Scheme Arguments Contradict Well-Established Precedent ...........................................................................12

        3.    Chevron Has Properly Pleaded Multiple Predicate Acts ........................14

            a) Donziger's Attack on Chevron's Extortion Allegations Rests on Fundamental Errors of Law ......................................................14

            b) Chevron Has Properly Pleaded Mail/Wire Fraud Predicates..............17

            c) Chevron Properly Alleged Violations of RICO Predicates 18 U.S.C. §§ 1503 (Obstruction) & 1512 (Witness Tampering)..................................................................................20

            d) Chevron's Money Laundering Allegations Properly Plead That Funds Were Transferred to Carry on Unlawful Activity .............23

        4.    Chevron's RICO Conspiracy Claim Requires Only That It Plead a § 1962(c) Violation Against Any Defendant, Which It Has Done .........23

    B.    Chevron Has Properly Pleaded Common Law Claims........................................24

        1.    Chevron Has Stated a Fraud Claim Based on Third-Party and First-Party Reliance Theories ................................................................24

        2.    The Tortious Interference With Contract Claim Is Within the Statute of Limitations and Properly States a Claim ................................28

        3.    New York Law Does Not Require Tangible Property or Physical Trespass to Support a Trespass to Chattels Claim ..................................30

i

**Table of Contents**
**(Continued)**

Page

4.    Unless Enjoined, Donziger Will Be Unjustly Enriched at Chevron's Expense, in Addition to the Millions He Has Already Received  31

5.    New York Law Permits a Cause of Action for Civil Conspiracy............32

6.    Donziger Was Acting as an Attorney in New York and Is Thus Liable Under New York Judiciary Law § 487........................................33

CONCLUSION.....................................................................................................................35

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abbott Labs. v. Gardner*,
  387 U.S. 136 (1967)............................................................................................... 8

*Ackerman v. Ackerman*,
  517 F. Supp. 614 (D.C.N.Y. 1981) ...................................................................... 6

*Alexander & Alexander of New York, Inc. v. Frizten*,
  68 N.Y. 2d 968 (1986) ......................................................................................... 33

*America Online v. IMS*,
  24 F. Supp. 2d 548 (E.D. Va. 1998) .................................................................... 30

*Antonios A. Alevizopoulous & Assocs. v. Comcast Int'l Holdings, Inc.*,
  100 F. Supp. 2d 178 (S.D.N.Y. 2000) ................................................................. 28

*Arista Records LLC v. Doe*,
  604 F.3d 110 (2d Cir. 2010) ................................................................................. 4

*Ashcroft v. Iqbal*,
  556 U.S. __, 129 S. Ct. 1937 (2009)................................................................... 1, 4

*Aymes v. Gateway Demolition, Inc.*,
  817 N.Y.S.2d 233 (2006)...................................................................................... 25

*Basic v. Fitzroy Eng'g, Ltd.*,
  949 F. Supp. 1333 (N.D. Ill. 1996), *aff'd* 1997 WL 753336 (7th Cir. Dec. 4, 1997) ............ 6, 7

*Beacon Constr. Co. v. Matco Elec. Co.*,
  521 F.2d 392 (2d Cir. 1975) ................................................................................. 6

*Beck v. Prupis*,
  529 U.S. 494 (2000)............................................................................................... 23

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................. 1, 4

*Blazevska v. Raytheon Aircraft Co.*,
  522 F.3d 948 (9th Cir. 2008) ................................................................................ 8

*Boyle v. United States*,
  129 S. Ct. 2237 (2009)........................................................................................... 11

**Table of Authorities**
**(Continued)**

Page(s)

*Bridge v. Phoenix Bond & Indem. Co.*,
    553 U.S. 639 (2008)................................................................................ 18

*Brownstone Inv. Group LLC v. Levey*,
    468 F. Supp. 2d 654 (S.D.N.Y. 2007) .................................................. 26

*Building Indus. Fund v. Local Union No. 3, IBEW*,
    992 F. Supp. 162 (E.D.N.Y. 1996) ...................................................... 15

*Buxton Mfg. Co. v. Valiant Moving & Storage, Inc.*,
    657 N.Y.S.2d 450 (N.Y. App. Div. 1997) ............................................ 24

*C.V. Starr & Co. v. Am. Int'l Group, Inc.*,
    No. 06 Civ. 2157(HB), 2006 WL 2627565 (S.D.N.Y. Sept. 14, 2006).................................. 32

*Calabrese v. CSC Holdings, Inc.*,
    283 F. Supp. 2d 797 (E.D.N.Y. 2003) .................................................. 17

*Cedeño v. Intech Group, Inc.*,
    733 F. Supp. 2d 471 (S.D.N.Y. 2010) ........................................... 9, 10, 11

*Chase v. Dow Chem. Co.*,
    875 F.2d 278 (10th Cir. 1989) .............................................................. 27

*Cinao v. Reers*,
    893 N.Y.S.2d 851 (2010)............................................................... 33, 35

*Clute v. Davenport Co.*,
    116 F.R.D. 599 (D. Conn. 1987) ............................................................ 8

*Compuserve Inc. v. Cyber Promotions, Inc.*,
    962 F. Supp. 1015 (S.D. Ohio 1997) .................................................... 30

*Conte v. Newsday, Inc.*,
    703 F. Supp. 2d 126 (E.D.N.Y. 2010) .................................................. 16

*Contrast Carmona v. Spanish Broad. Sys., Inc.*,
    No. 08 Civ. 4475 (LAK), 2009 WL 890054 (S.D.N.Y. Mar. 30, 2009) .................................. 32

*Cunningham v. New York City*, No. 04 Civ. 10232 (LBS),
    2008 WL 1944696 (S.D.N.Y. May 1, 2008) ........................................... 8

*Deck v. Engineered Laminates*,
    349 F.3d 1253 (10th Cir. 2003) .............................................................. 15

**Table of Authorities**
**(Continued)**

Page(s)

*Dist. of Columbia v. Merit Sys. Prot. Bd.*,
   762 F.2d 129 (D.C. Cir. 1985)........................................................................................ 4

*Dole Food Co. v. Gutierrez*,
   2004 WL 3737123 (C.D. Cal. 2004) ............................................................................ 7

*Dover Ltd. v. A.B. Watley, Inc.*,
   No. 04 Civ. 7366, 2006 WL 2987054 (S.D.N.Y. Oct. 18, 2006) ............................... 4

*Dupree v. Voorhees*,
   876 N.Y.S.2d 840 (N.Y. Sup. Ct. 2009), *aff'd in relevant part by* 891 N.Y.S.2d 422
   (N.Y. App. Div. Dec. 8, 2009)................................................................................... 35

*Duttle v. Bandler & Kass*, No. 82 CIV. 5084 (KMW),
   1989 WL 31503 (S.D.N.Y. Mar. 27, 1989)............................................................... 18

*Eastman Kodak Co. v. Camarata*,
   No. 05-CV-6384L, 2006 WL 3538944 (W.D.N.Y. Dec. 6, 2006) ........................... 31

*Envtl. Def. Fund, Inc. v. Massey*,
   986 F.2d 528 (D.C. Cir. 1993) .................................................................................... 8

*European Community v. RJR Nabisco, Inc.*,
   No. 02-CV-5771 (NGG) (VVP), 2011 WL 843957 (E.D.N.Y. March 8, 2011 ........ 9

*Faulkner v. Arista Records LLC*,
   602 F. Supp. 2d 470 (S.D.N.Y. 2009) ...................................................................... 29

*First Capital Asset Mgmt. v. Brickellbush, Inc.*,
   218 F. Supp. 2d 369 (S.D.N.Y. 2002), *aff'd* 385 F.3d 159 (2d Cir. 2004)......... 19, 24

*First Pacific Bancorp, Inc. v. Bro*,
   847 F.2d 542 (9th Cir. 1988) ..................................................................................... 15

*Foster v. Churchill*,
   665 N.E.2d 153 (N.Y. 1996)...................................................................................... 29

*Fradet v. Schwartz*,
   No. 95 Civ. 3943 (LLS), 1996 WL 521428 (S.D.N.Y. Sept. 12, 1996) ................... 18

*G-I Holdings v. Baron & Budd*,
   238 F. Supp. 2d 521 (S.D.N.Y. 2002) .................................................................. 26, 27

*Granite Partners, L.P. v. Bear, Stearns & Co.*,
   17 F. Supp. 2d 275 (S.D.N.Y. 1998) ........................................................................ 29

**Table of Authorities**
**(Continued)**

Page(s)

*Guilbert v. Gardner,*
480 F.3d 140 (2d Cir. 2007) ................................................................. 29

*Haber v. Kisner,*
680 N.Y.S.2d 233 (N.Y. App. Div. 1998) .............................................. 33

*Hall American Center Associates Ltd. Partnership v. Dick,*
726 F. Supp. 1083 ( E.D. Mich. 1989)................................................... 17

*Hemi Group, LLC v. City of New York,*
130 S. Ct. 983 (2010)............................................................................ 18

*Holtkamp v. Parklex Assoc.,*
No. 14514/2006, 2011 WL 621122 (N.Y. Sup. Ct. Feb. 22, 2011).......... 35

*Hy Cite Corp. v. Badbusinessbureau,*
418 F. Supp. 2d 1142 (D. Ariz. 2005) ............................................. 16, 17

*Hyosung Am., Inc. v. Sumagh Textile Co.,*
25 F. Supp. 2d 376 (S.D.N.Y. 1998) ........................................... 24, 25, 26

*I.S. Joseph Co. v. J. Lauritzen A/S,*
751 F.2d 265 (8th Cir. 1984) ................................................................ 15

*In re Jet Blue Airways Corp. Privacy Litig.,*
379 F. Supp. 2d 299 (E.D.N.Y. 2005) ................................................... 30

*Italverde Trading, Inc. v. Four Bills of Lading,*
485 F. Supp. 2d 187 (E.D.N.Y. 2007) .................................................. 2, 5

*Kashelkar v. Rubin & Rothman,*
97 F. Supp. 2d 383 (S.D.N.Y. 2000) ..................................................... 26

*Kearney v. Foley & Lardner, LLP,*
590 F.3d 638 (9th Cir. Cal. 2009)......................................................... 17

*Kimm v. Chang Hoon Lee,*
2005 U.S. Dist. LEXIS 727 (S.D.N.Y. Jan. 13, 2005) ............................ 16

*Kirch v. Liberty Media Corp.,*
449 F.3d 388 (2006).............................................................................. 33

*LaFrance Corp. v. Werttemberg,*
C07-1932Z, 2008 U.S. Dist. LEXIS 98741 (W.D. Wa. Nov. 24, 2008) ................. 30

**Table of Authorities**
**(Continued)**

Page(s)

*Lang v. Hougan,*
136 Wn. App. 708 (Wash. Ct. App. 2007) ........................................................................ 30

*Lerner v. Fleet Bank, N.A.,*
318 F.3d 113 (2d Cir. 2003) ................................................................................................ 19

*Levine v. Michael Ashton, Inc.,*
No. 110042/09, 2010 WL 128077 (Jan. 4, 2010) .............................................................. 25

*Linens of Eur., Inc. v. Best Mfg.,*
2004 U.S. Dist. LEXIS 18575 (S.D.N.Y. Sept. 15, 2004) ............................................ 12, 13

*Luckenbach S.S. Co. v. United States,*
312 F.2d 545 (2d Cir. 1963) .................................................................................................. 6

*Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.,*
354 F. Supp. 2d 293 (S.D.N.Y. 2004) ................................................................................. 13

*Manco Contracting Co. (W.W.L.) v. Bezdikian,*
45 Cal. 4th 192 (2008) ........................................................................................................... 6

*Marshall & Ilsley Trust Co. v. Pate,*
819 F.2d 806 (7th Cir. 1987) ............................................................................................... 18

*Mina Investment Holdings, Ltd. v. Steven W. Lefkowitz,*
16 F. Supp. 2d 355 (S.D.N.Y. 1998) ................................................................................... 29

*Minnelli v. Soumayah,*
839 N.Y.S.2d 727 (N.Y. App. Div. 2007) ........................................................................... 32

*Morrison v. Nat'l Australia Bank Ltd.,*
130 S. Ct. 2869 (2010) .................................................................................................. 1, 8, 9

*Motorola Credit Corp. v. Uzan,*
202 F. Supp. 2d 239 (S.D.N.Y. 2002), *rev'd. on other grounds*, 322 F.3d 130 (2d
Cir. 2003) .............................................................................................................................. 16

*N.B. Garments (PVT.), Ltd. v. Kids Int'l Corp.,*
No. 03-08041, 2004 U.S. Dist. LEXIS 3774 (S.D.N.Y. Mar. 10, 2004) ............................ 25

*Nat'l Union Fire Ins. Co. v. Karp,*
108 F.3d 17 (2d Cir. 1997) .................................................................................................... 5

*New York Islanders Hockey Club, LLP v. Comerica Bank—Texas,*
71 F. Supp. 2d 108 (E.D.N.Y. 1999) ................................................................................... 19

**Table of Authorities**
**(Continued)**

Page(s)

*Nineteen New York Props. Ltd. v. 535 5th Operating Inc.*,
  621 N.Y.S. 2d 42 (N.Y. App. Div. 1995) ............................................................... 26

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
  631 F.3d 29 (2d Cir. 2010) ............................................................................. 9, 10

*North South Finance Corp. v. Al-Turki*,
  100 F.3d 1046 (2d Cir. 1996) .............................................................................. 9

*Northern Trust Bank of Florida/Sarasota v. Coleman*,
  632 F. Supp. 648 (S.D.N.Y. 1986) ....................................................................... 33

*NYAT Operating Corp. v. Jackson, Lewis, Schnitzler & Krupman*,
  741 N.Y.S.2d 385 (N.Y. Sup 2002) ...................................................................... 34

*Pac. Gas and Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*,
  461 U.S. 190 (1983) ............................................................................................. 8

*Paino v. Kaiyes Realty LLC*,
  No. 101316/2010, 2011 WL 182896 (N.Y. Sup. Ct. Jan. 18, 2011) ....................... 32

*Park South Associates v. Fischbein*,
  626 F. Supp. 1108 (S.D.N.Y. 1986) ..................................................................... 15

*Pensee Assoc. v. Quon Indus.*,
  660 N.Y.S.2d 563 (1997) ................................................................................... 25

*People v. Canale*,
  240 A.D.2d 839 (N.Y. App. Div. 1997) ................................................................. 33

*Plata v. Darbun Enters, Inc.*,
  No. 09 cv 44-1EG (CAB), 2009 WL 3153747 (S.D. Cal. Sept. 23, 2009) ............. 6, 7

*Pyramid Secur., Ltd. v. IB Resolution, Inc.*,
  924 F.2d 1114 (D.C. Cir. 1991) ........................................................................... 22

*Ray Larsen Assocs. v. Nikko Am.*,
  1996 U.S. Dist. LEXIS 11163 (S.D.N.Y. Aug. 5, 1996) .......................................... 22

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004) ........................................................................... 30, 31

*RSM Prod. Corp. v. Fridman*,
  643 F. Supp. 2d 382 (S.D.N.Y. 2009) ................................................................... 28

**Table of Authorities**
**(Continued)**

Page(s)

*Schlaifer Nance & Co. v. Estate of Warhol,*
  119 F.3d 91 (2d Cir. 1997) ............................................................................ 13

*Schuh v. Druckman & Sinel, LLP,*
  No. 07 Civ. 366 (LAK) (GWA), 2008 WL 542504 (S.D.N.Y. Feb. 29, 2008) ........................ 26

*Sedima, S.P.R.L. v. Imrex Co.,*
  473 U.S. 479 (1985) ....................................................................................... 21

*Smithfield Foods, Inc. v. United Food and Commer. Workers Int'l. Union,*
  585 F. Supp. 2d 789 (E.D. Va. 2008) ................................................................. 13, 17

*Specialized Industrial Services Corp. v. Carter,*
  890 N.Y.S.2d 90 (N.Y. App. Div. 2009) .................................................................. 34

*Spira v. Nick,*
  876 F. Supp. 553 (S.D.N.Y. 1995) ........................................................................ 13

*Starr v. Sony BMG Music Entm't,*
  592 F.3d 314, 324-25 (2d Cir. 2010) ....................................................................... 4

*Stochastic Decisions, Inc. v. DiDomenico,*
  995 F.2d 1158 (2d Cir. 1993) ............................................................................ 20

*Telerate Sys., Inc. v. Caro,*
  689 F. Supp. 221 (S.D.N.Y. 1988) ....................................................................... 29

*Town of Kearny v. Rowlands,*
  829 F.2d 1263 (3d Cir. 1987) ............................................................................ 18

*Turtur v. Rothschild Registry Int'l, Inc.,*
  26 F.3d 304 (2d Cir. 1994) .............................................................................. 24

*UFCW Local 1776 v. Eli Lilly and Co.,*
  620 F.3d 121 (2d. Cir. 2010) ............................................................................ 18

*United States v. Abelis,*
  146 F.3d 73 (2d Cir. 1998) .............................................................................. 14

*United States v. Autuori,*
  212 F.3d 105 (2d Cir. 2000) ............................................................................ 17

*United States v. Basciano,*
  599 F.3d 184 (2d Cir. 2010) ............................................................................ 14

**Table of Authorities**
**(Continued)**

Page(s)

*United States v. Beech-Nut Nutrition Corp.*,
   871 F.2d 1181 (2d Cir. 1989) ................................................... 22

*United States v. Biaggi*,
   909 F.2d 662 (2d Cir. 1990) ..................................................... 22

*United States v. Bodmer*,
   342 F. Supp. 2d 176 (S.D.N.Y. 2004) ...................................... 23

*United States v. Coiro*,
   922 F.2d 1008 (2d Cir. 1991) ................................................... 22

*United States v. Daidone*,
   471 F.3d 371 (2d Cir. 2006) ..................................................... 12

*United States v. Dinome*,
   954 F.2d 839 (2d Cir. 1992) ..................................................... 14

*United States v. Eisen*,
   974 F.2d 246 (2d Cir. 1992) ................................... 20, 21, 22, 27

*United States v. Gotti*,
   459 F.3d 296 (2d Cir. 2006) ..................................................... 14

*United States v. Indelicato*,
   865 F.2d 1370 (2d Cir. 1989) ............................................. 12, 13

*United States v. Jenkins*,
   943 F.2d 167 (2d Cir. 1991) ..................................................... 23

*United States v. Kaplan*,
   490 F.3d 110 (2d Cir. 2007) ..................................................... 21

*United States v. Kattar*,
   840 F.2d 118 (1st Cir. 1988) ..................................................... 17

*United States v. Kumar*,
   617 F.3d 612 (2d Cir. 2010) ..................................................... 21

*United States v. Pendergraft*,
   297 F.3d 1198 (11th Cir. 2002) ................................................ 15

*United States v. Quattrone*,
   441 F.3d 153 (2d Cir. 2006) ..................................................... 21

**Table of Authorities**
**(Continued)**

Page(s)

*United States v. Rosner*,
    352 F. Supp. 915 (S.D.N.Y. 1972) ............................................................... 21

*United States v. William Savran & Assocs., Inc.*,
    755 F. Supp. 1165 (E.D.N.Y. 1991) ............................................................. 31

*United States. v. Philip Morris USA, Inc.*,
    Civ. Action No. 99-2496 (GK), - F. Supp. 2d - , 2011 WL 1113270 (D.D.C. Mar.
    28, 2011) ....................................................................................................... 9

*USA Certified Merchs., LLC v. Koebel*,
    262 F. Supp. 2d 319 (S.D.N.Y. 2003) .......................................................... 14

*Vemco, Inc. v. Camardella*,
    23 F.3d 129 (6th Cir. 1994) ......................................................................... 15

*Vinson v. Washington Gas Light Co.*,
    321 U.S. 489 (1944) ....................................................................................... 4

*Von Bulow v. Von Bulow*,
    657 F. Supp. 1134 (S.D.N.Y. 1987) ............................................................. 15

**Statutes**

18 U.S.C. § 1341 ................................................................................................... 13

18 U.S.C. § 1503 ................................................................................................... 21

18 U.S.C. § 1512 ................................................................................................... 21

18 U.S.C. § 1621 ................................................................................................... 21

18 U.S.C. § 1956 ................................................................................................... 23

18 U.S.C. § 1961 ................................................................................................... 21

18 U.S.C. § 1962 *et seq.* ......................................................................................... 2

18 U.S.C. § 2 ......................................................................................................... 14

28 U.S.C. § 2201 ..................................................................................................... 5

N.Y. C.P.L.R. § 5304 .............................................................................................. 6

N.Y. Jud. Law § 487 ................................................................................. 3, 32, 33, 34

**Table of Authorities**
**(Continued)**

Page(s)

N.Y. Penal § 155.05(2)(e)(iv) ............................................................... 16

Section 10(b) of the Securities Exchange Act of 1934 ........................ 9

**Other Authorities**

25 Fᴇᴅ. Pʀᴏᴄ. § 59:441 (2011) .............................................................. 5

Fᴏʀᴇɪɢɴ Mᴏɴᴇʏ-Jᴜᴅɢᴍᴇɴᴛs Rᴇᴄᴏɢɴɪᴛɪᴏɴ Aᴄᴛ Pʀᴇꜰᴀᴛᴏʀʏ Nᴏᴛᴇ, 13 (ᴘᴀʀᴛ II)
    U.L.A. 2 (1962) ................................................................................. 6

Rᴇsᴛᴀᴛᴇᴍᴇɴᴛ (Sᴇᴄᴏɴᴅ) ᴏꜰ Tᴏʀᴛs § 218 ............................................ 31

Rᴇsᴛᴀᴛᴇᴍᴇɴᴛ (Sᴇᴄᴏɴᴅ) ᴏꜰ Tᴏʀᴛs § 221 ............................................ 31

Rᴇsᴛᴀᴛᴇᴍᴇɴᴛ (Sᴇᴄᴏɴᴅ) Oꜰ Tᴏʀᴛs § 936 ........................................... 28

## PRELIMINARY STATEMENT

Defendant Donziger's motion to dismiss is meritless.  In arguing that Chevron's RICO claim fails because RICO has no extraterritorial effect, he ignores that Chevron's Amended Complaint pleads that the enterprise was directed from the United States and has been funded by Kohn and others in the United States.  The Defendants fraudulently drafted the Cabrera Report in the United States; made and publicized fraudulent statements in the United States as a means of extorting money from Chevron in the United States; planned their extortionate "enforcement" strategy in the United States; tampered with witnesses in the United States; and concealed their ongoing fraud in the United States and in United States courts.  All this, with the object of attempting to force Chevron to make a multi-billion dollar payment—from the United States.  And Chevron's claims are more than "plausible on [their] face."  *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In fact, Chevron has already backed them up with extensive, unrefuted evidence, including admissions from Donziger's Ecuadorian colleagues that they all "might go to jail" for this scheme, and his own attorney's advice that his conduct amounts to "fraud."  Am. Compl. ¶ 270, 284.  Thus, Chevron's RICO claim, predicated on a racketeering scheme largely hatched and executed in the United States and targeting a U.S. victim, clearly passes muster under *Morrison* and its progeny.

Nor does this Court even need to pass on Donziger's motion now.  In light of its bifurcation ruling (*see* Dkt. 278), the Court could focus solely on Chevron's declaratory relief claim and reserve ruling on the remainder of Donziger's motion until later.  As the Court previously recognized, "Chevron has a pressing need—and the defendants should wish—for a definitive resolution of the enforceability and recognizability of the Judgment"; and, "[o]nce that issue is decided, one way or the other, it is likely that the rest of the case will vanish or at least pale in significance."  *Id*. at 13.  Regardless, the Amended Complaint sets forth in detail the factual bases for

1

all of Chevron's claims and easily satisfies the applicable pleading standard (as the LAP Representatives have effectively acknowledged by answering, rather than seeking dismissal.)

1.      **Declaratory Relief.**  As an initial matter, Donziger does not even have standing to litigate this claim—and will not unless his pending motion to intervene is granted.  In any event, this Court already considered and rejected Donziger's justiciability challenges when it granted Chevron's motion for a preliminary injunction.  Among other things, the Court already has concluded that "[t]his [i]s an [a]ppropriate [c]ase for [d]eclaratory [r]elief" and that this case is ripe, given the imminence of the threatened harm to Chevron.  Dkt. 181 at 84, 69-71.  Under the Declaratory Judgment Act, Chevron has the right to seek a declaration that the Ecuadorian judgment is unenforceable on one or more of the grounds set forth in New York's Recognition Act (*e.g.*, fraud, lack of impartial tribunals, due process).  None of the cases Donziger relies on establishes a blanket rule prohibiting declaratory relief as to recognition of foreign judgments currently on appeal, and the factual circumstances at issue here counsel in favor of a decision on the merits.  Contrary to Donziger's principal argument, declaratory relief is available where, as here, there is a present controversy between the parties but all of the elements for an affirmative damages claim have yet to be realized.  *See Italverde Trading, Inc. v. Four Bills of Lading*, 485 F. Supp. 2d 187, 213 (E.D.N.Y. 2007).  His ripeness challenge aside, Donziger otherwise concedes this claim's sufficiency.

2.      **RICO.**  There is little question that the Amended Complaint properly states claims under the Racketeer Influenced & Corrupt Organizations Act, 18 U.S.C. § 1962 *et seq.*  As a result of presiding over this case and the related § 1782 proceedings for more than a year, this Court has great familiarity with both Chevron's allegations and the evidentiary record that underlies the Amended Complaint's wealth of detail about defendants' wrongdoing.  Donziger's

2

motion distorts and rewrites and, when that fails, simply ignores Chevron's pleading allegations and controlling case law.  Unlike those cases that have declined to apply RICO to cases involving predominantly foreign activities, here Chevron has alleged multiple predicate acts that themselves have no foreign component at all—such as mail and wire fraud, witness tampering, and obstruction of justice, as well as RICO predicates for which there is no question they properly contain a foreign component, such as money laundering.

In addition to ignoring the enterprise's substantial U.S.-based and -focused activities, Donziger also misstates the applicable law when he argues that Chevron's RICO claim fails as evincing but a single scheme, despite numerous separate predicate acts.  And the damages Chevron claims here—especially the attorneys' fees imposed on Chevron to combat defendants' wrongful activities—are supported by ample factual allegations and well-established case law.

3.      **Fraud and other common law claims.**  Similarly, Donziger's challenges to Chevron's common law claims for fraud, interference with contract, unjust enrichment, and trespass to chattels all fail.  The allegations in the Amended Complaint establish that Donziger and his co-defendants orchestrated an elaborate conspiracy to, among other things, falsify evidence and deliberately publicize falsehoods to third parties and Chevron, interfere with TexPet's contracts with Ecuador, trespass upon Chevron's corporate property interests, and unjustly enrich themselves at Chevron's expense.

4.      **New York Judiciary Law § 487.**  Donziger argues that Chevron had to seek relief for Donziger's deceptive acts committed toward New York courts in those underlying cases, rather than through a separate lawsuit here.  But this is incorrect.  Where, as here, a plaintiff does not seek to collaterally attack an underlying judgment obtained in a New York court, a § 487 claim need not be asserted in the underlying action itself.  Nor does Donziger even attempt to

dispute the underlying allegations in Chevron's Amended Complaint on this claim.

Consequently, Donziger's motion should be denied in its entirety.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that," when accepted as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard, however. does *not* impose a "heightened pleading standard." *Arista Records LLC v. Doe*, 604 F.3d 110, 119-20 (2d Cir. 2010); *see also Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 324-25 (2d Cir. 2010). Chevron's claims easily satisfy this standard. In fact, not only do the vast majority of the factual allegations come directly from defendants' own mouths, but defendants themselves, their co-conspirators, and their own lawyers have recognized that their conduct is "dirty" and "illegal," that it constitutes "fraud," and could land them in "jail." Am. Compl. ¶¶ 72, 75, 270.

## I. Donziger Lacks Standing to Move to Dismiss the Declaratory Relief Claim and, in Any Event, His Arguments Are Without Merit

Donziger is not a party to Chevron's declaratory relief claim, and therefore he lacks standing to move for its dismissal. *E.g.*, *Dover Ltd. v. A.B. Watley, Inc.*, No. 04 Civ. 7366, 2006 WL 2987054, at *8 (S.D.N.Y. Oct. 18, 2006). Further, Donziger's pending motion to intervene does not entitle him to move to dismiss. To the contrary, a merely potential intervenor does not become "a party," capable of litigating fully on the merits, unless and until the motion to intervene is granted; until then, the intervenor must take the proceedings as they currently stand. *See Vinson v. Wash. Gas Light Co.*, 321 U.S. 489, 498 (1944); *Dist. of Columbia v. Merit Sys. Prot. Bd.*, 762 F.2d 129, 132 (D.C. Cir. 1985); 25 FED. PROC. § 59:441 (2011).

In any event, Donziger's arguments are meritless.  He asserts that Chevron's declaratory judgment claim should be dismissed because Chevron's rights to challenge the Ecuadorian judgment "are limited to the rights accorded under" New York's Recognition Act and there is no provision permitting a "judgment debtor, such as Chevron, to bring an affirmative claim for declaration that a judgment is non-recognizable and unenforceable within the State of New York . . . ."  Mot. at 26-27.  Not only is Chevron not limited to the New York Recognition Act, but Donziger's assertion fundamentally misunderstands the Declaratory Judgment Act.

Courts interpreting New York's Recognition Act have expressly stated that "where a party against whom a foreign judgment is entered is likely to suffer large and/or catastrophic losses as a result of another party's self-enforcement of the foreign judgment, the party facing the losses can initiate a declaratory judgment action and seek injunctive relief."  *Italverde Trading*, 485 F. Supp. 2d at 213; *see also*, *e.g.*, Am. Compl. ¶¶ 328-37.  Nor is there any requirement, as Donziger contends, that a statute must affirmatively authorize a party to bring a claim for declaratory relief.  On the contrary, under the Declaratory Judgment Act, so long as there is "a case of actual controversy" a court may "declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought*."  28 U.S.C. § 2201 (emphasis added).  Thus, the fact that the Recognition Act provides a "procedural vehicle for a judgment creditor to seek recognition and enforcement of a foreign money judgment in New York" (Mot. at 27) does not preclude Chevron from seeking a declaration of the parties' rights and legal relations under that statute.  As Federal Rule of Civil Procedure 57 recognizes, the "existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."  *See also Nat'l Union Fire Ins. Co. v. Karp,* 108 F.3d 17, 21 (2d Cir. 1997).  And the Second Circuit  expressly stated, in the context of this case, that Texaco did *not* "prom-

5

ise to wait until after a judgment was issued to challenge the fairness of the Lago Agrio litiga-

tion," and that "[h]aving reserved the rights conferred by N.Y. C.P.L.R. 5304, Chevron remains

free to enforce them whenever and wherever it chooses, limited only by the scope of the statute

and the availability of a forum prepared to address its claims." *Republic of Ecuador v. Chevron*

*Corp.*, Nos. 10-1020-cv & 10-1026, _ F.3d _, 2011 WL 905118, at *9 (2d Cir. Mar. 17, 2011).[1]

Forcing Chevron to wait to have its rights determined until the Lago Agrio Plaintiffs file

suit would contravene the very purpose of the Declaratory Judgment Act, which is to "afford a

speedy and inexpensive method . . . to settle legal rights and remove uncertainty and insecurity

from legal relationships without awaiting a violation of the rights or a disturbance of the relation-

ships." *Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 397 (2d Cir. 1975) (quotation

omitted). Chevron's Claim Nine does just that by seeking a declaration regarding the enforcea-

bility of the Lago Agrio judgment under the New York Recognition Act. Chevron thus is "in the

very predicament for which the Declaratory Judgments Act was intended to grant relief."

*Luckenbach S.S. Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963).

Donziger's reliance on inapposite case law does not change this result. Neither *Plata v.*

*Darbun Enters, Inc*., No. 09 cv 44-1EG (CAB), 2009 WL 3153747 (S.D. Cal. Sept. 23, 2009),

nor *Basic v. Fitzroy Eng'g, Ltd.*, 949 F. Supp. 1333 (N.D. Ill. 1996), holds, as Donziger con-

tends, that "claims seeking a declaration invalidating a foreign judgment or holding it to be unen-

---

[1] Although Donziger asserts that New York's Recognition Act is the sole "procedural vehicle" to enforce or chal-
lenge a foreign judgment (Mot. at 25), the Act does not purport to limit a party's procedural options. Rather, it sets
forth *substantive* rights regarding the recognition and enforcement of foreign money judgments. *See Ackerman v.
Ackerman*, 517 F. Supp. 614, 624 (D.C.N.Y. 1981); *Manco Contracting Co. (W.W.L.) v. Bezdikian*, 45 Cal. 4th 192,
198 (2008). Indeed, the prefatory statement to the uniform act upon which the New York Act is based, *see Acker-
man*, 517 F. Supp. at 624, explains that "[t]he Act does not prescribe a uniform enforcement procedure. Instead, the
Act provides that a judgment entitled to recognition will be enforceable in the same manner as the judgment of a
court of a sister state which is entitled to full faith and credit." FOREIGN MONEY-JUDGMENTS RECOGNITION ACT
PREFATORY NOTE, 13 (part II) U.L.A. 2 (1962). Thus, there is nothing improper about a party seeking a declaration
that a foreign judgment is unenforceable and non-recognizable on one or more of the substantive grounds (*e.g.*,
fraud, lack of impartial tribunals) set forth in N.Y. C.P.L.R. § 5304.

forceable are premature before any actual enforcement action is commenced."[2]  Mot. at 28.  *Plata* did not even involve a request for declaratory relief; there, the plaintiff sought to enforce a judgment and the defendant counterclaimed that the judgment was void but without stating any legally cognizant basis for such a claim.  2009 WL 3153747, at *1, *9.  And in *Basic*, the court dismissed the request for declaratory relief not because a judgment debtor can never seek a declaration of non-enforceability, but because the foreign action there was at an embryonic stage where the defendant could still withdraw or add claims, leaving "the court [to] only guess as to the particular claims on which the [foreign] judgment would rest," and because the plaintiff had not shown how a declaration of unenforceability would avoid imminent harm.  949 F. Supp. at 1337-38.  Donziger does not contend that any of these circumstances exists here.

Lastly, this Court already has correctly rejected Donziger's argument that Chevron's declaratory relief claim is not ripe.  It has ruled that "Chevron has established . . . that the threatened harm is sufficiently imminent in light of the interplay of Ecuadorian, United States and other pertinent law," even notwithstanding a pending Ecuadorian appeal.  Dkt. 181 at 69.  True, an appeal may temporarily stay enforcement proceedings in Ecuador (*see id*. at 54), but as this Court already observed based on the evidence before it, "there is a 'substantial chance' that the judgment will become enforceable in Ecuador quite soon," and "the LAPs even now may seek 'preventive measures' freezing or attaching Chevron assets in certain Latin American countries," meaning that this Court cannot assume that Chevron "will receive due process in the appellate process" in Ecuador.  *Id*. at 71-73.  Because the allegations in the Amended Complaint demonstrate that Chevron's declaratory relief claim is fit for judicial decision and that Chevron would

---

[2]  *Dole Food Co. v. Gutierrez*, 2004 WL 3737123 (C.D. Cal. 2004), is similarly inapposite.  The case was dismissed for absence of an actual controversy because no foreign judgment had been obtained and the foreign case was in very early stages, having issued only threshold jurisdictional and venue rulings.  *Id.* at *3, 15.

suffer hardship if this Court were to withhold declaratory relief (Am. Compl. ¶¶ 328-37), this Court should again reject Donziger's ripeness argument. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967); *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 201 (1983) ("One does not have to await the consummation of threatened injury to obtain preventive relief.").

## II.   At the Proper Time, the Court Should Reject the Remainder of Donziger's Motion

Other than Claim Nine, the Court has stayed the action. The Court has the power and discretion to defer a ruling on the remaining portions of this case until such time as those claims and defenses are actually at issue. *See Cunningham v. New York City*, No. 04 Civ. 10232 (LBS), 2008 WL 1944696 at *4 (S.D.N.Y. May 1, 2008) (Sand, J.); *Clute v. Davenport Co.*, 116 F.R.D. 599, 599 (D. Conn. 1987). But whenever the Court considers the remaining claims, it should deny the motion to dismiss.

### A.   Chevron's RICO Allegations Properly State a Claim for Relief

#### 1.   Chevron Does Not Seek Extraterritorial Application of RICO

Donziger's claim that the RICO enterprise he directed and controlled in significant part from the United States is a foreign enterprise outside RICO's reach is meritless. *See* Mot. at 1-6. "Simply because a case's factual background involves some conduct occurring abroad" does not mean an enterprise is not subject to RICO; instead, "a court must first inquire into whether applying a statute implicates any issue of extraterritoriality." *Blazevska v. Raytheon Aircraft Co.*, 522 F.3d 948, 952 (9th Cir. 2008). *See also Envtl. Def. Fund, Inc. v. Massey*, 986 F.2d 528, 532 (D.C. Cir. 1993). This case bears no resemblance to the cases in which courts have found an insufficient nexus between the enterprise and the United States to warrant application of RICO.

Donziger invokes *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010), to argue that Chevron's RICO claim is barred because RICO lacks extraterritorial reach. In *Morrison*, the

8

Supreme Court held that Section 10(b) of the Securities Exchange Act of 1934 does not provide a private cause of action in "foreign-cubed" cases—cases where *foreign* plaintiffs sue *foreign* defendants for misconduct in connection with securities traded on *foreign* exchanges (hence "foreign cubed"). *Id*. at 2875, 2888; *see also id*. at 2894 fn. 11 (Stevens, J., concurring). It also rejected the so-called "conduct" and "effects" tests previously adopted by the circuit courts, including the Second Circuit, to resolve questions of extraterritorial jurisdiction. *Id*. at 2881.

The post-*Morrison* RICO cases Donziger relies on involve RICO claims brought by *foreign* plaintiffs against *foreign* defendants with only an attenuated connection to the U.S.[3] In *Norex Petroleum Ltd. v. Access Indus., Inc.*, 631 F.3d 29 (2d Cir. 2010), for example, the Second Circuit ruled that a Canadian shareholder of a Russian oil company could not maintain a RICO claim involving "primarily foreign actors and foreign acts." *Id*. at 31; *see also Cedeño v. Intech Group, Inc.*, 733 F. Supp. 2d 471, 478 (S.D.N.Y. 2010) (dismissing RICO claim brought by Venezuelan plaintiffs against foreign actors whose only alleged domestic contact was the use of U.S. banks of launder money).

In *Cedeño*, Judge Rakoff found that *Morrison* requires a court to look to "the 'focus' of congressional concern" in enacting the applicable statute when evaluating its territorial reach. 733 F. Supp. 2d at 473. He held that "the focus of RICO is on the enterprise as the recipient of, or cover for, a pattern of criminal activity" and that RICO does not evidence any "concern with foreign enterprises." *Id*. at 472-73. Similarly, the court in *European Community v. RJR*

---

[3] The pre-*Morrison* cases relied on by Donziger are unavailing. In *North South Finance Corp. v. Al-Turki*, 100 F.3d 1046 (2d Cir. 1996), the court concluded that RICO did not apply to "a dispute among groups of foreign companies and foreign nationals, arising out of the 1989 sale and reorganization of a French bank" with "attenuated" connections to New York. *Id*. at 1048, 1053. Its analysis—which Donziger cites for his "preparatory or peripheral" argument—relies on the now repudiated conduct test. *See id*. at 1051, 1053. And in *United States v. Philip Morris USA, Inc.*, Civ. Action No. 99-2496 (GK), - F. Supp. 2d - , 2011 WL 1113270, (D.D.C. Mar. 28, 2011), the court vacated an injunction decree where the effects test was the "sole basis" for the RICO defendant's liability because *Morrison* subsequently had rejected that test. *Id*. at *4-5.

*Nabisco, Inc.*, No. 02-CV-5771 (NGG) (VVP), 2011 WL 843957, at *10 (E.D.N.Y. March 8, 2011), held that the location of an "enterprise" under RICO should be determined by reference to the "'brains,' that is, where the [enterprise's] decision[s] are made, as opposed to the 'brawn,' that is, how the [enterprise] acts."

Unlike *Cedeño* and *Norex*, which involved "foreign-cubed" fact patterns, this action involves an enterprise funded and directed from the U.S. against a domestic corporation—all with the ultimate purpose of procuring a "juicy check" from the United States. Am. Compl. ¶ 60. The ringleader of the conspiracy, Donziger—who has described himself as "the person primarily responsible for putting [the Lago Agrio] team together and supervising it" (*id*. ¶ 8)—resides in and transacts business from the U.S., and most importantly, has orchestrated the criminal scheme with Fajardo, Yanza, the Front, Selva Viva, the Stratus Defendants, and others, in substantial portions from or in the U.S. *See, e.g.*, *id*. ¶¶ 25, , 69-70, 82, 145-46, 176, 185, 214-225, 234, 238, 246, 266-67, 271-72, 342. Chevron has also identified more than a dozen other U.S. based co-conspirators, including Colorado-based Stratus Consulting, Inc., Douglas Beltman and Ann Maest; Philadelphia attorney Joseph Kohn, who provided over $7 million to fund the scheme; and financier Burford, which, though its agents in New York, has committed at least $4 million. *Id*. ¶¶ 15-18, 328-29. In fact, of the 306 paragraphs that make up the "Factual Basis for Claims" section of Chevron's Amended Complaint, over two-thirds of them relate to U.S. conduct.[4]

The ghostwriting of the Cabrera Report from the U.S. was not "only a small piece of the alleged overall scheme." Mot. at 4. Defendant Beltman characterized the U.S.-drafted Cabrera Report as "probably the single most important technical document for the case" and that it would "pull together all of the work over the last 15 or so years[.]" Am. Compl. ¶ 149.

---

[4] *See* Am. Compl. ¶¶ 33, 58-59, 64-65, 68-71, 73, 81-82, 104-106, 108, 119, 124-125, 127-160, 162-185, 190-198, 214-260, 263-323, 328-335, 337-338.

In addition to the Cabrera fraud (*id.* ¶¶ 122-98), the RICO Defendants committed many other predicate acts in the U.S. that are actionable and directly caused injuries to Chevron. Among other things, the enterprise was directed by Donziger in the U.S. (*id.* ¶¶ 8, 25, 342a); was funded by Kohn and Burford in substantial part in the U.S. (*id.* ¶¶ 3, 328-29); made and publicized fraudulent statements in the U.S. as a means of extorting money from Chevron (*id.* ¶¶ 214-59); committed mail and wire fraud in the U.S. (*id.* ¶¶ 353-57, Appx. B); wired funds from U.S. banks to support the scheme (*id.* ¶ 358); developed its enforcement strategy in the U.S. (*id.* ¶¶ 18s, 331, 335); and concealed its ongoing fraud in the U.S. (*id.* ¶¶ 266-320, 359-365).

The Court should reject Donziger's conclusory assertions that these acts constitute "isolated domestic conduct" or were "preparatory or peripheral" to the scheme. His assertions are not rooted in analysis of the factual allegations themselves, but rather on his own flawed legal arguments. *See* Mot. at 5 ("As explained in Section B.3.a. & B.3.c., *infra*, these allegations do not support any predicate act under RICO . . ."). Thus, while Donziger leads with this argument, it actually depends on the Court adopting his subsequent arguments and "stripping away" dozens of paragraphs of factual allegations. But those subsequent legal arguments are unfounded, and Donziger cannot rely on them to rewrite Chevron's Amended Complaint. *See* Sections II.A.3.a. (addressing extortion) & II.A.3.c. (addressing obstruction of justice), *infra*.

Moreover, the mere fact that Chevron challenges the enforceability of a foreign judgment and has alleged wrongful conduct in Ecuador does not immunize an enterprise from RICO liability. The definition of an enterprise emphasizes the significance of a "common purpose," *see Boyle v. United States*, 129 S. Ct. 2237, 2244 (2009), and thus an enterprise that has as its purpose causing an injury in the U.S.—*i.e.*, a coerced payment from Chevron (Am. Compl. ¶ 2)—is domestic in focus. *Contrast Cedeño*, 733 F. Supp. 2d at 474 (dismissing RICO claims where the

11

"alleged enterprise" and the "impact of the predicate activity" were "entirely foreign"). The scheme always had a U.S. focus, since Chevron has no Ecuadorian assets. Am. Compl. ¶ 332.

Finally, Donziger's theory of extraterritoriality would leave this Court unable to remedy even the undisputedly domestic aspects of the RICO conspiracy, conduct that Congress clearly intended to prohibit. For example, Appendix B to the Amended Complaint outlines hundreds of acts of mail and wire fraud, many involving no foreign participation whatsoever. *See, e.g.*, Am. Compl, Appx. B ¶¶ 15, 17. Moreover, Chevron's allegations of obstruction of justice and witness tampering are entirely domestic. *Id.* ¶¶ 266-323. There can be no extraterritorial question at all regarding these predicate acts, and it defies logic and public policy to contend that the RICO Defendants may escape the reach of U.S. laws by *expanding* their unlawful scheme to extort money from Chevron by employing a foreign lawsuit as part of the unlawful scheme.

## 2. Donziger's Single-Scheme Arguments Contradict Well-Established Precedent

The Second Circuit has repeatedly rejected the argument that "multiple, albeit distinct acts in furtherance of ***one*** wrongful scheme does not constitute a pattern of criminal activities." Mot. at 8 (original emphasis). Multiple acts of racketeering in furtherance of a single scheme may constitute a "pattern" sufficient for RICO liability. *United States v. Daidone*, 471 F.3d 371, 374-75 (2d Cir. 2006) (to allege a "pattern of racketeering activity" the plaintiff must demonstrate only that the defendants committed "multiple racketeering predicates —which. . . can be part of a single scheme"); *United States v. Indelicato*, 865 F.2d 1370, 1382 (2d Cir. 1989).

Donziger tries to create the illusion of authority for his position by quoting from cases addressing an entirely different issue—the improper splitting of individual predicate acts into component parts to expand the number of acts. *See* Mot. at 6-7. *Linens of Europe, Inc. v. Best Manufacturing*, 2004 U.S. Dist. LEXIS 18575, at *10-11 (S.D.N.Y. Sept. 15, 2004), is the para-

digmatic example.  The court held that even though the defendants had "repeatedly" threatened the plaintiff, it was in furtherance of a single demand, and thus "the complaint's averments in this regard allege, at best, a single act of attempted extortion, not a pattern of two or more such acts." *Id.* at *53.  Because the complaint pleaded *no other predicate acts*, the court dismissed the RICO claim.  *Id.* at *59.  *See also Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997) (where only "one purportedly fraudulent act: the negotiation of the Agreement," plaintiff could not allege "pattern" by calling each negotiating step in the "one purportedly fraudulent act" a separate "scheme"); *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 354 F. Supp. 2d 293, 303 (S.D.N.Y. 2004).

Whether or not Donziger's Hobbs Act violation alone satisfies the RICO pattern requirement, Chevron has alleged extortion as one of many predicate acts.  Am. Compl. ¶¶ 366-67; *see also id.*, Appx. B (listing mail and wire violations); *id.* ¶¶ 266-323 (conduct in obstruction of justice); *id.* ¶¶ 312-16 (tampering with witnesses); *id.* ¶¶ 328-30 (laundering of money).  Further, any attempt by Donziger to merge extortion with the other predicate acts alleged by Chevron is contrary to binding Second Circuit precedent.  *See Indelicato*, 865 F.2d at 1383 ("we conclude that where in fact there are a number of different acts, each should be separately counted"); *see also, e.g., Smithfield Foods, Inc. v. United Food and Commer. Workers Int'l. Union*, 585 F. Supp. 2d 789, 810-11 (E.D. Va. 2008) (denying motion to dismiss where defendant argued that plaintiff "'attempts to separate multiple acts in furtherance of the same alleged [extortion] scheme into multiple predicate acts'") (alteration in original); *Spira v. Nick*, 876 F. Supp. 553, 559 (S.D.N.Y. 1995) (Kaplan, J.) ("Inasmuch as each such use of the mails is separately indictable under 18 U.S.C. § 1341, each constitutes an act of racketeering under RICO.").

### 3.   Chevron Has Properly Pleaded Multiple Predicate Acts

#### a)   Donziger's Attack on Chevron's Extortion Allegations Rests on Fundamental Errors of Law

Donziger argues that Chevron has not satisfied a purported "'threat' element of a Hobbs Act violation." Mot. at 7-8.  But "the law within this Circuit is clear that the wrongful use of fear need not be a consequence of an implicit or explicit threat[.]"  *United States v. Abelis*, 146 F.3d 73, 83 (2d Cir. 1998); *see also, e.g.*, *United States v. Gotti*, 459 F.3d 296, 332-33 (2d Cir. 2006).

Even if there were such a requirement, Donziger and his co-conspirators have threatened Chevron, both explicitly (Am. Compl. ¶¶ 212 (beheading and burying effigies of Chevron employees), 332-33 (Donziger threatening "one of the biggest forced asset seizures in history" and "a significant disruptive impact on the company's operations")) and implicitly (*id.* ¶¶ 200 (criminal prosecutions were meant as a "hammer over [Chevron's] head"), 205-06 (as captured by *Crude* cameras, Donziger and Kohn acknowledging that criminal prosecutions were a threat against Chevron, and Donziger stating that support from President Correa meant that Chevron employees were "shittin' in their pants right now")).[5]  Furthermore, and of particular relevance because Chevron seeks injunctive relief, Donziger's co-conspirators have made it clear that they intend to maintain an ongoing campaign of judicial and extra-judicial threats against Chevron until the company pays them off.  *Id.* ¶¶ 331-35.  Finally, *Crude*, which was produced at his behest, funded by his co-conspirators, and edited at his direction—and which Donziger knew Chevron would see—presented Donziger's overarching threat to obtain a judgment by illicit

---

[5] Contrary to Donziger's assertion (Mot. at 8-9), any threats made by co-conspirators are attributed to Donziger, under agency law, as the aider and abettor of those threats, and under RICO.  18 U.S.C. § 2; *United States v. Basciano*, 599 F.3d 184, 206 (2d Cir. 2010); *United States v. Dinome*, 954 F.2d 839, 843-844 (2d Cir. 1992) ("[E]vidence beyond a defendant's own predicate acts . . . is relevant to establishing a charged pattern of racketeering."); *USA Certified Merchs., LLC v. Koebel*, 262 F. Supp. 2d 319, 329 (S.D.N.Y. 2003) (RICO liability may be determined by principles of agency).   For example, Chevron alleges that Soltani is a "co-conspirator" and member of the criminal enterprise (Am. Compl. ¶ 1, 18g, 107, 125, 217, 222), and that the RICO Defendants used Soltani, and her organization, Amazon Watch, "as their proxy."  *Id.* at ¶ 222; *see also id.* at ¶¶ 217-21.

means including political control over the Ecuadorian judiciary, pressure tactics on the court, and recruitment of activists, celebrities, journalists and politicians to their cause. *See* Am. Compl. ¶¶ 164, 206, 225, 227-28, 253, 329.

Donziger's argument that fraudulent litigation and/or defamation cannot constitute extortion is incorrect. While Donziger cites cases dismissing RICO allegations arising from litigation (Mot. at 8-9), in each of those cases litigation alone—and in some cases, merely the threat of litigation—was the *sole* basis for the extortion allegation.[6] Unlike here, there was no broader scheme of which litigation was merely a component. Several of the cases Donziger cites draw this very distinction. *See, e.g.*, *Von Bulow v. Von Bulow*, 657 F. Supp. 1134, 1145 (S.D.N.Y. 1987) ("In concluding that a RICO claim may not be maintained in this case, the Court need not address the situation where allegedly unjustified suits form a part of some more extensive scheme of racketeering activity, such as extortion."). That *all* litigation is not extortionate does not mean that *no* litigation can properly form part of any extortionate enterprise.

By contrast, Chevron has alleged a far broader campaign of extortion than one merely predicated on fraudulent litigation. *See, e.g.*, Am. Compl. ¶¶ 74 (intimidating judges and relying on their fear that they will be killed if they rule against the Lago Agrio Plaintiffs); 212 (violent

---

[6] *Deck v. Engineered Laminates*, 349 F.3d 1253, 1257-58 (10th Cir. 2003) ("As for extortion, Plaintiff alleges no more than abusive litigation."); *United States v. Pendergraft*, 297 F.3d 1198, 1205-08 (11th Cir. 2002) ("A threat to litigate, by itself, is not necessarily 'wrongful' within the meaning of the Hobbs Act…. our holding is a narrow one."); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 135 (6th Cir. 1994) ("A threat of litigation … does not constitute extortion."); *First Pacific Bancorp, Inc. v. Bro*, 847 F.2d 542, 547 (9th Cir. 1988) ("The proposed shareholder derivative suit was neither served nor filed. Appellants concede that it was not a catalyst for any corporate action. Accordingly, it is not an extortionate act."); *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 266-267 (8th Cir. 1984) ("[Plaintiff] commenced this RICO action to obtain injunctive relief and damages for the severe injury that it alleges the threat of suit caused to its relationship with the Bank."); *G-I Holdings, Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 256 (S.D.N.Y. 2001) ("The predicate acts of extortion in this case revolve around the Defendants' alleged threats, made repeatedly and forcefully over a period of years, to inflict ruinous litigation on anyone who got in the way of their litigation strategy and to encourage other plaintiffs' asbestos lawyers to do the same."); *Building Indus. Fund v. Local Union No. 3, IBEW*, 992 F. Supp. 162, 176 (E.D.N.Y. 1996) (finding that "a systematic campaign to harass them through the filing of litigation and administrative complaints" did not constitute extortion); *Park South Associates v. Fischbein*, 626 F. Supp. 1108, 1114 (S.D.N.Y. 1986) (finding that "instituting a number of supposedly meritless lawsuits" did not constitute extortion).

threats in the form of burying effigies of Chevron employees); 215-237 (public pressure campaign based on false statements); 238-45 (attempting to procure government investigations based on false statements); 246-59 (attempting to manipulate Chevron's stock price based on false statements to prompt shareholder pressure to "settle"); 260-65 (false public allegations of murder and genocide); *see also, e.g.*, *id.* ¶ 347 (describing "wide-ranging campaign" of extortion).  For example, Donziger and his co-conspirators arranged to have bogus criminal charges brought against Chevron employees as a means of exerting pressure against Chevron.  *Id.* ¶¶ 200-13.  Donziger and co-conspirator Joseph Kohn minced no words about the extortionate purpose of these charges, with Kohn observing on film "that may be something that we could facilitate going away at the right time . . . . if they wanted it to go away" and Donziger replying, "Precisely." *Id.* ¶ 205.  This is well within the scope of the Hobbs Act, as this Court has expressly found.  *See Motorola Credit Corp. v. Uzan*, 202 F. Supp. 2d 239 (S.D.N.Y. 2002) (Rakoff, J.), *rev'd. on other grounds*, 322 F.3d 130 (2d Cir. 2003); *see also* N.Y. Penal § 155.05(2)(e)(iv).

Donziger's assertion that "defamation" does not "qualify as extortion for the purposes of RICO" misses the point.  Mot. at 9-10.  Conduct that may properly be labeled defamatory is *not necessarily* extortion, just as not all violence or assertions of color of right are extortion.  But such conduct may be extortionate where, as here, it is *also* a means of wrongfully creating economic fear in an attempt to obtain the property of another.  *See, e.g.*, *Hy Cite Corp. v. Badbusinessbureau*, 418 F. Supp. 2d 1142, 1149-1150 (D. Ariz. 2005).  In the cases Donziger cites, the courts ruled that the conduct at issue did not amount to threats of economic harm or violence, and thus did not constitute extortion—they did not hold, as he implies, that a threat to defame can *never* be extortionate.  *See Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 137-38 (E.D.N.Y. 2010); *Kimm v. Chang Hoon Lee*, 2005 U.S. Dist. LEXIS 727, 19-20 (S.D.N.Y. Jan. 13, 2005).

Neither suing nor defaming the victim immunizes an extortionist from liability, and there are numerous examples of extortionate schemes involving fraudulent litigation and/or defamation. *See, e.g.*, *United States v. Kattar*, 840 F.2d 118, 122 (1st Cir. 1988) (threat to mount public relations attack on victim sufficient to uphold extortion conviction); *Calabrese v. CSC Holdings, Inc.*, 283 F. Supp. 2d 797, 809-10 (E.D.N.Y. 2003) (scheme amounting to "more than the institution of frivolous litigation . . . satisfies the pleading requirements for establishing that Defendants engaged in a Hobbs Act violation"); *Smithfield Foods, Inc. v. United Food & Commer. Workers Int'l Union*, 585 F. Supp. 2d 789, 803-06 (E.D. Va 2008) (the "*First Amendment* provides no refuge for extortion."); *Hy Cite*, 418 F. Supp. 2d at 1149-50 (scheme to obtain payments in exchange for ceasing of defamatory statements constituted extortion); *Hall Am. Ctr. Assocs. Ltd. P'ship v. Dick*, 726 F. Supp. 1083, 1096-97 ( E.D. Mich. 1989) (scheme involving the filing of frivolous lawsuits "suffice to state a claim under the Hobbs Act and consequently a predicate act under RICO"). *Cf. Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 646 (9th Cir. Cal. 2009) (sham exception to *Noerr-Pennington* doctrine applied "where the allegedly unlawful conduct 'consists of making intentional misrepresentations to the court' and those misrepresentations or the 'party's knowing fraud upon … the court deprive the litigation of its legitimacy'"). Chevron has alleged that the RICO Defendants' false statements were intended to wrongfully cause or exploit Chevron' fear of economic harm so that they could obtain Chevron's property. *See, e.g.*, Am. Compl. ¶¶ 215, 220, 239, 246, 347. This suffices to state an extortion predicate act.

### b) Chevron Has Properly Pleaded Mail/Wire Fraud Predicates

Donziger does not contest that Chevron has adequately pleaded each of the elements of mail and wire fraud: "(i) a scheme to defraud, (ii) to get money or property, (iii) furthered by the use of interstate mail or wires." *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000); Am. Compl. ¶¶ 353-57, Appx. B. Instead, he erroneously argues that Chevron has failed to allege

"reliance" or that these predicate acts were the actual or proximate cause of Chevron's damages. But Chevron is not required to assert "reliance," nor is it required to demonstrate that every predicate act caused it harm.  Nonetheless, Chevron has adequately alleged these concepts.

RICO plaintiffs need not allege "reliance" to state a claim for mail fraud as a predicate act.  As the Supreme Court in *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), explained, "[N]o showing of reliance is required to establish that a person has violated § 1962(c) by conducting affairs of an enterprise through a pattern of racketeering activity consisting of acts of mail fraud." *Id.* at 649.  The Court held that first-party reliance is not an indispensible prerequisite for establishing proximate cause under RICO.  *Id.* at 653-59.

Similarly, a RICO plaintiff need only allege that it has been harmed by *one* of the predicate acts constituting the pattern of racketeering activity; it need not allege that each predicate act has caused injury.  *See, e.g.*, *Marshall & Ilsley Trust Co. v. Pate*, 819 F.2d 806, 809-10 (7th Cir. 1987); *Town of Kearny v. Rowlands*, 829 F.2d 1263, 1268 (3d Cir. 1987); *Fradet v. Schwartz*, No. 95 Civ. 3943 (LLS), 1996 WL 521428, at *6 (S.D.N.Y. Sept. 12, 1996); *Duttle v. Bandler & Kass*, No. 82 CIV. 5084 (KMW), 1989 WL 31503, at *3-4 (S.D.N.Y. Mar. 27, 1989).[7]  Because Donziger does not dispute that Chevron has properly alleged a causal relationship between its injuries and at least one of the other predicate acts it has alleged, there is no need for Chevron to show that any act of mail and wire fraud caused its damages in order to state its RICO claim.

While Chevron is not obligated to plead proximate causation of damages, the Amended Complaint does so.  "Central to the notion of proximate cause is the idea that a person is not liable to all those who may have been injured by his conduct, but only to those with respect to

---

[7] Donziger's reliance on *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 132 (2d. Cir. 2010), is therefore misplaced.  In that case, the Second Circuit held that a RICO plaintiff must allege that defendants' conduct *as a whole* was the proximate cause of its injuries, and not that each and every predicate act caused harm.  *See also Hemi Group, LLC v. City of New York*, 130 S. Ct. 983, 989-91 (2010).

whom his acts were a substantial factor in the sequence of responsible causation, and whose injury was reasonably foreseeable or anticipated as a natural consequence." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 123 (2d Cir. 2003). Donziger cannot seriously claim his actions were not a "substantial factor" in causing Chevron's injuries, or that he did not reasonably anticipate those injuries. The numerous fraudulent statements made by Donziger and his co-conspirators to the public, members of the media, investors, and U.S. governmental agencies have impaired Chevron's goodwill, and have required Chevron to expend significant resources in response. *See, e.g.*, Am. Compl. ¶¶ 337, 376. Further, Donziger has admitted that the purpose of the mail and wire fraud was to "increase the cost to Chevron" including the "cost of their sullied reputation . . . in the media."[8] *Id.* ¶ 214. And of course defendants' acts of mail and wire fraud also served as vehicles to obtain their fraudulent judgment in Ecuador, causing Chevron to expend money on attorney's fees seeking to stop the judgment or its enforcement. *Id.* ¶¶ 335, 337, Appx. B.

Donziger's fraudulent communications have also imposed substantial attorney's fees and professional costs on Chevron—a category of damages that he does not even address. Am. Compl. ¶ 376. Chevron has been forced to respond to the conspirators' fraudulent statements to U.S. courts in the § 1782 proceedings, the Lago Agrio Court, and U.S. government agencies. These costs are unquestionably the direct result of the actions of Donziger and his co-conspirators, and it is "well settled that legal fees may constitute RICO damages when they are the proximate consequence of a RICO violation." *First Capital Asset Mgmt. v. Brickellbush,*

---

[8] Donziger's claim that statements to media and analysts could not have proximately caused harm to Chevron is meritless. Mot. at 14. The harm to Chevron's goodwill and public relations were the express purpose of such statements, and thus any resulting injury was reasonably foreseeable by Donziger. The fact that the media and analysts passed along the RICO Defendants' fraudulent statements to the public does not constitute an "intervening act" that breaks the causal chain. *See New York Islanders Hockey Club, LLP v. Comerica Bank—Texas*, 71 F. Supp. 2d 108, 118 (E.D.N.Y. 1999) (finding that the intervening acts of a third party do not automatically sever the causal link). Finally, Donziger and his co-conspirators communicated their fraudulent statements directly to the public via press releases and their websites. *See, e.g.*, Am. Compl. ¶¶ 108, 221, 223, 230, 232, 233, 245, 249, 255.

*Inc.*, 218 F. Supp. 2d 369, 382 (S.D.N.Y. 2002) (Kaplan, J.), *aff'd* 385 F.3d 159 (2d Cir. 2004); *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1167 (2d Cir. 1993).

Donziger's attempt to distance his criminal scheme from the Lago Agrio judgment fails. Mot. at 15. While the Lago Agrio court disclaimed reliance on the fraudulent Cabrera Report, that judgment itself refutes this. The judgment necessarily relied on the Cabrera Report and expressly relied on the RICO Defendants' "whitewashing" expert reports, which defendants designed to rehabilitate the Cabrera Report so that one presented with the new reports "might feel comfortable concluding that certain parts of Cabrera are a valid basis for damages." Am. Compl. ¶¶ 191, 325. Moreover, Donziger and/or his co-conspirators either ghostwrote the judgment itself or secretly provided non-public materials to whoever wrote it that were incorporated into the judgment. *Id*. ¶ 326; *see also* Dkt. 297 at 17-20. Donziger's claim that the judgment is an "independent intervening factor" breaking the causal chain is baseless. Mot. at 15.[9]

### c)  Chevron Properly Alleged Violations of RICO Predicates 18 U.S.C. §§ 1503 (Obstruction) & 1512 (Witness Tampering)

Donziger attempts to evade Chevron's allegations of obstruction of justice and witness tampering by asserting, in direct contradiction to the statutory text, that this conduct "is not a cognizable predicate act for purposes of RICO." Mot. at 14. Of course it is. RICO predicate

---

[9] And Chevron has properly alleged "reliance" and proximate cause with respect to the predicate acts of mail and wire fraud. For example, Donziger's and his co-conspirators' fraudulent communications in the Lago Agrio Litigation and in litigation before U.S. Courts inflicted harm on Chevron by proximately causing it to expend resources to rebut them. *E.g.* Am. Compl. ¶¶ 120-21, 266, 273-77, 286-94, 299. As the Second Circuit has made clear, a law firm's misrepresentations made in the hope of attempting to induce a settlement can constitute mail fraud and predicate acts under RICO. *United States v. Eisen*, 974 F.2d 246, 253 (2d Cir. 1992). The *Eisen* defendants "conducted the affairs of the Eisen law firm through a pattern of mail fraud" and other illegal activity, just as Chevron has alleged Donziger has done. *See id.* at 251. Chevron has also sufficiently pleaded third-party reliance. Among other examples, the RICO Defendants convinced third parties to conduct reviews of the Cabrera Report by falsely touting Cabrera's independence, and numerous media organizations have relied on and repeated their false refrains about Cabrera's independence. Am. Compl. ¶¶ 184, 236. In addition, the RICO Defendants' fraudulent communications to the New York Attorney General resulted in that office contacting Chevron about its disclosures relating to the Lago Agrio Litigation, which, along with the resulting media coverage, led some to assert that it caused a "short-term knock" to Chevron's stock price. *Id.* ¶ 245. Chevron's costs expended in responding to these and other acts of mail and wire fraud properly plead a causative nexus.

acts are defined by statute, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481-82 (1985), and the definitional provision, 18 U.S.C. § 1961, lists numerous state and federal crimes, and expressly includes 18 U.S.C. §§ 1503 (Obstruction of Justice) and 1512 (Witness Tampering).

Donziger's cases are not to the contrary. Donziger cites several cases for the proposition that "perjury [is] not a predicate offense under RICO." Mot. at 16. While it is true that the federal perjury statute (18 U.S.C. § 1621) is not itself a RICO predicate act, the Second Circuit has cautioned that labeling a criminal act as perjury does not insulate conduct that otherwise constitutes a RICO predicate act violation. *Eisen*, 974 F.2d at 254. In *Eisen*, for example, the court rejected the argument that the "mail fraud offense as a RICO predicate act [can] be suspended simply because perjury is part of the means for perpetrating the fraud." *Id.* Here, too, Chevron's properly pleaded obstruction of justice and witness tampering predicate acts cannot be suspended simply because the RICO Defendants' misdeeds may have also included perjury along with other obstructive conduct. *See United States v. Kumar*, 617 F.3d 612, 620 (2d Cir. 2010) (finding that section 1503 "'embraces the widest variety of conduct that impedes the judicial process'") (quoting *United States v. Rosner*, 352 F. Supp. 915, 919 (S.D.N.Y. 1972)).

Donziger does not argue that Chevron's complaint fails to allege that he and others violated sections 1503 and 1512. Nor would such an argument have merit, as Chevron pleaded that, on numerous occasions, Donziger and his co-conspirators knowingly sought to corruptly influence the testimony of others in connection with various official proceedings, and otherwise sought to impede those proceedings. *E.g.*, Am. Compl. ¶¶ 266-320; *see United States v. Kaplan*, 490 F.3d 110, 125-127 (2d Cir. 2007) (discussing the elements of section 1512); *United States v. Quattrone*, 441 F.3d 153, 170-171 (2d Cir. 2006) (discussing the elements of section 1503). Indeed, Donziger effectively concedes the point. *See* Mot. at 14 (quoting Chevron's allegations of

false statements and conceding that "such conduct, if it actually occurred, may be wrongful").

Without discussion, Donziger also cites several cases that purportedly establish that attempts to conceal misconduct are not cognizable as RICO predicate acts. Mot. at 14-15. But the cases on which he relies solely concern whether predicate acts undertaken *after* a scheme is complete should be considered in the RICO pattern analysis and are otherwise entirely distinguishable.[10] *Id*. Even if one assumes that Donziger is here trying to challenge Chevron's pattern allegations, these cases do not support his position, because the obstructionist conduct alleged in the Amended Complaint was engaged in while the criminal scheme was ongoing, conducted as an integral and essential part of that scheme, undertaken by multiple conspirators and their agents over a long period of time, and part of a consistent pattern of concealment and fraud before various governmental bodies. Am. Compl. ¶¶ 266-320. The Second Circuit has had no trouble including "concealment" activities as part of a RICO pattern in appropriate cases. *See*, *e.g.*, *United States v. Coiro*, 922 F.2d 1008, 1017 (2d Cir. 1991); *Eisen*, 974 F.2d at 269 n.8; *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1199 (2d Cir. 1989).

Finally, Donziger claims that "Chevron has failed to allege that it suffered any direct harm as a result of this conduct." Mot. at 15. This is simply not true. *See* Am. Compl. ¶ 337 (alleging injuries, including fees incurred "in the Section 1782 proceedings").

---

[10]For example, in *Pyramid Secur., Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1117 (D.C. Cir. 1991), the defendants were alleged to have engaged in securities fraud, "churning" a customer's account to generate illicit brokerage fees. *Id.* at 1115-18. Because the fraud was discovered and stopped after only three months, the court found that it presented "closed-ended continuity" of insufficient duration to constitute a RICO pattern. *Id.* at 1116. Relying on general conspiracy law principles, the court found that the defendants' subsequent attempts to conceal the extent of their fraud did not extend the duration of the scheme for the purposes of the pattern analysis, because, "a conspiracy generally ends when the design to commit substantive misconduct ends." *Id.* at 1117. *See also United States v. Biaggi*, 909 F.2d 662 (2d Cir. 1990) (holding that a RICO pattern was not alleged where only predicate acts were the taking of the bribe and denial of that bribe-taking to a government investigator); *Ray Larsen Assocs. v. Nikko Am.*, 1996 U.S. Dist. LEXIS 11163, at *23 n.8 (S.D.N.Y. Aug. 5, 1996) (obstruction of justice allegations "must be excluded [from the continuity analysis] because efforts by a defendant to cover up the underlying conduct *are inadequate to satisfy the continuity requirement* of the RICO statute") (emphasis added).

### d) Chevron's Money Laundering Allegations Properly Plead That Funds Were Transferred to Carry on Unlawful Activity

Donziger mounts no independent challenge to Chevron's money laundering allegations, and instead asserts that Chevron's money laundering allegations fail because they depend on Chevron's mail and wire fraud and extortion allegations, and he believes that he has dispensed with those allegations elsewhere in his motion. Mot. at 15. Donziger is mistaken. Even if this Court were to credit his attack on Chevron's other predicate act allegations, what remains is sufficient to state a money laundering claim to support the RICO "pattern of racketeering activity" requirement. Money laundering requires only that the transfer of funds be made with the intent to "carry on" the specified unlawful activity—not that the underlying activity be complete or successful. 18 U.S.C. § 1956(a)(2)(A); *United States v. Bodmer*, 342 F. Supp. 2d 176, 191 (S.D.N.Y. 2004); *see also United States v. Jenkins*, 943 F.2d 167, 172-73 (2d Cir. 1991) (finding that similar language in the Travel Act does not require Government to "establish that the accused took a substantial step in furtherance of the intended unlawful activity"). Chevron has properly alleged that the transfer of funds was to promote the carrying on of unlawful activity (*e.g.*, Am. Compl. ¶ 358), and Donziger does not argue otherwise.

### 4. Chevron's RICO Conspiracy Claim Requires Only That It Plead a § 1962(c) Violation Against Any Defendant, Which It Has Done

Donziger makes the limited argument that the RICO conspiracy claim must be dismissed if the Court dismisses the substantive § 1962(c) claim and otherwise concedes that the conspiracy claim against him has been properly pleaded. For the conspiracy claim against Donziger to survive dismissal, Chevron need only have pleaded a substantive § 1962(c) claim against *any* defendant—including Fajardo, Yanza, and the Front, who have defaulted, and Stratus, Beltman, and Maest. *See Beck v. Prupis*, 529 U.S. 494, 506-07 (2000). Donziger has not established that Chevron failed to adequately plead a § 1962(c) claim against the other defendants. Thus, the

23

RICO conspiracy claim against Donziger should not be dismissed, even if the Court were to find that Chevron has not properly pleaded a § 1962(c) allegation against him.

> **B.      Chevron Has Properly Pleaded Common Law Claims**

> **1.      Chevron Has Stated a Fraud Claim Based on Third-Party and First-Party Reliance Theories**

"Under New York law, 'the essential elements of a . . . fraud claim include a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff.'" *Hyosung Am., Inc. v. Sumagh Textile Co.*, 25 F. Supp. 2d 376, 382 (S.D.N.Y. 1998) (quoting *Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 310 (2d Cir. 1994)).  Here, Donziger does not and cannot dispute that Chevron has sufficiently alleged (1) material false representations, (2) an intent to defraud, and (3) damage. *See, e.g.*, Am. Compl. ¶¶ 28, 30, 68, 109-121, 187-188, 235, 244, 246-259, 357, 392.  Instead, he argues that Chevron cannot state a fraud claim because the alleged misrepresentations were made to third parties and Chevron could not justifiably rely on the statements of an adversary.  Mot. at 16-18.  This argument is unsupportable:  Chevron has stated a claim for common law fraud based on third-party and first-party reliance theories.  Defendants obtained, by means of fraudulent misconduct, an $18 billion judgment against Chevron, in which the Ecuadorian court relied on defendants' fraudulent submissions, both overtly and covertly.  *Id.* ¶ 325-26.  Chevron's expenditure of funds to combat this fraud and its fruits represents compensable damages.  Am. Compl. ¶ 337; *cf. First Capital*, 218 F. Supp. 2d at 382 (Kaplan, J.).  In addition, Chevron seeks injunctive relief precluding defendants from further effecting their fraud and causing Chevron damages.

First, it is well established that a fraud claim lies where a *third party* relied upon defendant's misrepresentations, resulting in an injury to plaintiff.  *Buxton Mfg. Co. v. Valiant Moving & Storage, Inc.*, 657 N.Y.S.2d 450, 451 (N.Y. App. Div. 1997).  Though Donziger cites two cases

for the proposition that Chevron does not have standing under New York law to assert a third-party reliance theory, *Pensee Assoc. v. Quon Indus.*, 660 N.Y.S.2d 563 (1997); *Aymes v. Gateway Demolition, Inc.*, 817 N.Y.S.2d 233 (2006), neither case discusses the third-party reliance doctrine and both are factually distinguishable.[11]  As the court in *Levine v. Michael Ashton, Inc.*, No. 110042/09, 2010 WL 128077, at *9 (N.Y. Sup. Ct. Jan. 4, 2010), recently recognized, New York courts have acknowledged exceptions to *Pensee* and have sustained fraud claims "where the misrepresentation sued upon was made to a third party who relied on the representation to the detriment of plaintiff . . . ."  For example, in *N.B. Garments (PVT.), Ltd. v. Kids Int'l Corp.*, No. 03-08041, 2004 U.S. Dist. LEXIS 3774, at *1 (S.D.N.Y. Mar. 10, 2004), the defendants drafted a fraudulent bill of lading, with the intent to induce a third party to deliver goods to it rather than the plaintiff.  As a result, the defendants acquired the goods belonging to the plaintiff without paying for them.  *Id.*  The defendants argued that the fraud claim should be dismissed because a third party rather than the plaintiff had relied upon their misrepresentations.  *Id.* at *3.  The court found that this argument was without merit, because "New York law has, since the 1800's, allowed for fraud claims based on third-party reliance."  *Id.* at *3 n.5.

Like *N.B. Garments* and other third-party reliance cases, Chevron alleges that various third parties (including the media, U.S. and Ecuadorian courts, the U.S. Congress, federal and state agencies, and others) relied on fraudulent statements by Donziger and the other defendants, and that Chevron—the intended victim—suffered foreseeable harm.  *See, e.g.*, Am. Compl. ¶¶ 28, 30, 68, 244, 246-259, 357, 392.  For example, the Ecuadorian court recently entered an

---

[11] "Most of th[o]se decisions [which have dismissed fraud claims based on misrepresentations made to third parties] address situations presenting a risk of far-flung liability for inchoate or unintended injuries."  *Hyosung Am.*, 25 F. Supp. 2d at 383 n. 8 (quotation marks omitted).  In *Aymes*, for example, the court dismissed a fraud claim a property owner filed against a demolition company who allegedly made false statements to the city where there was "no allegation that the supposed misrepresentations were made for the purpose of influencing the actions of [the] plaintiff."  817 N.Y.S.2d at 234.  Here, on the other hand, Donziger clearly sought to influence Chevron and extort a settlement.

over $18 billion judgment against Chevron—a judgment "which necessarily relied on Cabrera's fraudulent report (the only 'evidence' of causation in the case) and on the reports of the RICO Defendants' other 'new' experts . . . who themselves have admitted to relying on the Cabrera Report[.]" *Id.* ¶ 325.  Chevron has also alleged that defendants collaborated directly with the Ecuadorian court in crafting that judgment.  *Id.* ¶¶ 325-26.  And central to the fraudulent scheme was Donziger's goal to cause "immediate and definite" harm to Chevron—something that he has accomplished.  *See Hyosung Am., Inc.*, 25 F. Supp. 2d at 384 (third-party reliance sufficient because the "immediate consequence" was to deprive plaintiff of property); Am. Compl. ¶¶ 328-37.  Thus, Donziger's argument that he is excused from liability for his fraudulent conduct because he and other defendants made false statements to third parties should be rejected.

Second, Donziger and the other defendants made false statements directly to Chevron.  *E.g.*, Am. Compl. ¶¶ 109-121, 187-188, 235, 246-59.  Thus, the fraud claim may be sustained on a first-party reliance theory.  Though Donziger cites a couple of factually distinguishable cases in which courts have dismissed fraud claims where the courts were convinced that the plaintiff could not establish the element of justifiable reliance, none of these cases held that it is "unreasonable and unjustified as a matter of law" for a party to rely on statements made by an adversary in litigation.[12]  Mot. at 18.  To the contrary, "to hold that a party cannot as a matter of law rely" on the statements of its adversary "goes too far," *G-I Holdings v. Baron & Budd*, 238 F. Supp. 2d 521, 542 (S.D.N.Y. 2002), and an adversary's misrepresentations made in the hope of

---

[12]Unlike the pervasive fraud at issue in this case, the cases cited by Donziger involve an error in a caption page, *Kashelkar v. Rubin & Rothman*, 97 F. Supp. 2d 383, 395 (S.D.N.Y. 2000), a lie during a deposition, *Brownstone Inv. Group LLC v. Levey*, 468 F. Supp. 2d 654, 659 (S.D.N.Y. 2007), and false statements in a complaint and a motion.  *Nineteen New York Props. Ltd. v. 535 5th Operating Inc.*, 621 N.Y.S. 2d 42, 43 (N.Y. App. Div. 1995).  The holding in *Nineteen New York Props.* is also reasonable in its context, because otherwise, every case would include a counterclaim for fraud based on the supposed untruths in the complaint.  There is no threat of such a result here.  Additionally, unlike in this case, the plaintiffs in Donziger's cases could not identify any injuries flowing from their supposed misrepresentations.  *See Kashelkar*, 97 F. Supp. 2d at 395; *Brownstone*, 468 F. Supp. 2d at 659 (alleged misrepresentation occurred after the injury); *Schuh v. Druckman & Sinel, LLP*, No. 07 Civ. 366 (LAK) (GWA), 2008 WL 542504, at *10 (S.D.N.Y. Feb. 29, 2008).

26

attempting to induce a settlement can give rise to a fraud claim. *Eisen*, 974 F.2d at 253; *see also Chase v. Dow Chem. Co.*, 875 F.2d 278, 283 (10th Cir. 1989); *see also* Am. Compl. ¶¶ 400, 117, 190. In *G-I Holdings*, law firms falsified evidence and court records with the goal of defrauding a defendant—a strikingly similar fact pattern to that alleged here. *See G-I Holdings*, 238 F. Supp. 2d at 529-30.

Here, too, although it consistently disputed its liability, Chevron reasonably and foreseeably had no choice but to defend itself against fabricated evidence and lies in the Lago Agrio Litigation for several years given defendants' on-going efforts to conceal their fraud from Chevron and the public. Am. Compl. ¶ 400. Donziger's argument that "Chevron did not rely on the allegedly false statements made by Donziger or any of other defendants" and that no false statements were made "for the purpose of deceiving Chevron" (Mot. at 17) "takes an unrealistically narrow view of the [Complaint] and ignores settled authority that perjury and fake evidence defraud the adverse party," *Eisen*, 974 F.2d at 253. Further, Chevron did not know the full extent of defendants' fraud until recently, when the § 1782 proceedings began to expose evidence of a deep and pervasive fraud. *See, e.g.*, Am. Compl. ¶¶ 117, 190.

Even assuming *arguendo* that false representations made during the course of litigation are not actionable, Donziger and the other Defendants did not limit their false representations to the litigation context. Rather, they intentionally disseminated false information throughout the marketplace to Chevron and its shareholders, analysts, and the media. *See id.* ¶¶ 246-59. And contrary to Donziger's assertion, Chevron's Amended Complaint clearly alleges that Chevron was harmed by the statements contained in the New York Attorney General's letter, as the defendants trumpeted the letter as an "investigation" and a "probe" into Chevron's handling of the matter, which caused the press to proclaim that Chevron was "mishandl[ing]" the matter, harm-

ing Chevron's goodwill.  *Id*. ¶ 245.  Under these circumstances, Chevron has stated a viable

fraud claim against Donziger on a first-party (and third-party) reliance theory.

Finally, Chevron's fraud allegations properly state a claim because Chevron seeks injunc-

tive relief preventing defendants from further injuring it.  *See* RESTATEMENT (SECOND) OF TORTS

§ 936 (where the other elements of fraud are met, and third-party reliance has caused or will

cause the plaintiff foreseeable harm, there is no reason to allow the fraud to continue).

**2.      The Tortious Interference With Contract Claim Is Within the Statute of Limitations and Properly States a Claim**

Donziger asserts that Chevron fails to allege that he is the "but for" cause of Ecuador's

breach, because allegations of "collaboration" and "collusion" supposedly prove that Ecuador

was predisposed to breach.  Mot. at 20.  He also argues the claim is time-barred.  Not so.

**But-for causation.**  Donziger's argument contradicts case law and common sense.  "The

critical inquiry . . . is whether the breaching party would have breached its obligations without

the involvement of the interfering party."  *Antonios A. Alevizopoulous & Assocs. v. Comcast*

*Int'l Holdings, Inc.*, 100 F. Supp. 2d 178, 187 (S.D.N.Y. 2000).  Here, it cannot be said as a mat-

ter of law that Ecuador would have breached the contracts had defendants not "persuaded [it] to

refuse to defend Chevron's [contractual] rights and those of its subsidiaries . . . ."  Am. Compl. ¶

398; *see also id*. at ¶¶ 396-399.  After all, previous Ecuadorian Attorneys General *refused* to in-

dict anyone—until President Correa stepped in, at defendants' behest.  *Id*. ¶ 211.  Thus, Chev-

ron's allegations support a finding of but-for causation.  *See Antonios A. Alevizopoulous*, 100 F.

Supp. 2d at 187 ("allegation of collusion coupled with the allegation of wrongful interference or

inducement to breach, leads to the conclusion of tortious interference").[13]

---

[13] Further, the cases relied on by Donziger are distinguishable.  In *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 410 (S.D.N.Y. 2009), the court dismissed an interference claim because the complaint *specifically stated* that

[Footnote continued on next page]

**Statute of Limitations.**  Donziger also argues that the statute of limitations has run on Chevron's interference with contract claim, but he ignores both the facts and the relevant case law.  Under New York law, "a contract [that] requires continuing performance over a period of time" can be *successively* breached, and each successive breach, in turn, resets the statute of limitations because breach is a necessary element of an interference with contract claim.  *Guilbert v. Gardner*, 480 F.3d 140, 150 (2d Cir. 2007); *see also Foster v. Churchill*, 665 N.E.2d 153, 156 (N.Y. 1996) (identifying breach as an element).  Ecuador's contract with TexPet is just such a contract: Ecuador has a *continuing* duty to release TexPet under the 1995 Settlement Agreement and the 1998 Final Release.  *See* Am. Compl. ¶¶ 398-99; *see*, *e.g.*, *Faulkner v. Arista Records LLC*, 602 F. Supp. 2d 470, 478 (S.D.N.Y. 2009) (obligation had "no set end date" and thus the contract required continuing performance and, because it had been successively breached, breach of contract claim was not time-barred).  Because of the numerous breaches to the agreement in the last three years—including Ecuador's failure to perform its share of remediation and the filing of criminal charges against Chevron officials (*e.g.*, Am. Compl. ¶¶ 83-84, 200-13, 325, 399)—Donziger's statute-of-limitations defense is not well-founded, as each successive breach completes a new tort and resets the statute of limitations.  And, especially in these circumstances, Chevron's allegations properly state a claim because injunctive relief is appropriate to prevent future harm resulting from interference with contract.  *Telerate Sys., Inc. v. Caro*, 689 F. Supp. 221, 233-34 (S.D.N.Y. 1988).

---

[Footnote continued from previous page]
the breaching party was predisposed to breach the contract (not because of alleged collaboration between the defendant and the breaching party).  In *Mina Investment Holdings, Ltd. v. Steven W. Lefkowitz*, 16 F. Supp. 2d 355, 360-61 (S.D.N.Y. 1998) (emphasis added), the court dismissed an interference claim because the complaint alleged that the contract had been breached "at least nine separate times" *before* the defendant had ever interfered such that the contract "could not be completed *regardless of the [defendant's] conduct*."  And in *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 293-94 (S.D.N.Y. 1998), the court dismissed an interference claim against a dealer because the complaint alleged that the dealer was just one "among" many dealers engaging in the challenged activity such that it could not be said that the breaching party would have performed in the absence of the dealer.

### 3. New York Law Does Not Require Tangible Property or Physical Trespass to Support a Trespass to Chattels Claim

Donziger's argument that Chevron has not adequately pleaded its trespass to chattels claim ignores the relevant case law regarding both what constitutes a chattel and what constitutes "interference" with chattels.  Chevron's complaint alleges every essential element of a trespass to chattels claim:  Donziger and the other defendants have intentionally "intermeddl[ed] with" Chevron's property, which was "impaired as to its condition, quality, or value."  *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) (quotation marks and citations omitted); Am. Compl. ¶¶ 246-59, 337, 404-05.  None of the cases cited by Donziger establishes that intangibles cannot be a chattel capable of being trespassed; indeed, one case explicitly recognizes the possibility of a trespass to an intangible property right.  *See In re Jet Blue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 328-29 (E.D.N.Y. 2005).  Relying on the Restatement (Second) of Torts, which New York also follows, *see Register.com, Inc.*, 356 F.3d at 404, courts have held that harm to business reputation and goodwill is actionable on a trespass-to-chattels theory, as "recovery may be had for a trespass that causes harm to something in which the possessor has a legally protected interest."  *Compuserve Inc. v. Cyber Promotions, Inc.*, 962 F. Supp. 1015, 1022-23 (S.D. Ohio 1997) (citing Restatement (Second) of Torts § 218(d)); *see also Am. Online v. IMS*, 24 F. Supp. 2d 548, 550 (E.D. Va. 1998).  Similarly, courts have acknowledged that a "'chattel' includes both tangible and intangible goods, such as corporate property."  *Lang v. Hougan*, 136 Wash. App. 708, 718 (2007); *see also LaFrance Corp. v. Werttemberg*, C07-1932Z, 2008 U.S. Dist. LEXIS 98741, at *9 (W.D. Wash. Nov. 24, 2008).  Chevron has stated a trespass to chattel claim based on defendants' interference with the company's funds and resources or intangibles such as reputation and goodwill.  *See* Am. Compl. ¶¶ 337, 404-05.

Donziger's assertion that physical trespass is required to plead a trespass to chattels is al-

so incorrect.  A trespass to chattels may occur "even though the chattel is not touched, and is not removed from the possession of" the owner.  RESTATEMENT (SECOND) OF TORTS § 221 cmt. g.  It may also occur when one "destroy[s] a chattel while it is in another's possession"—just as Donziger and the other defendants have attempted to destroy Chevron's goodwill and stock price.  *Id.* at § 221(d); *e.g.*, Am. Compl. ¶¶ 246-59, 337, 404-05.  And injunctive relief is a proper remedy to a trespass to chattels.  *Register.com*, 356 F.3d at 404.  Thus, Donziger's motion to dismiss Chevron's fifth claim for trespass to chattels should be denied.

### 4. Unless Enjoined, Donziger Will Be Unjustly Enriched at Chevron's Expense, in Addition to the Millions He Has Already Received

Donziger's arguments that Chevron's unjust enrichment claim should be dismissed because it has "failed to allege any enrichment" and that that "Chevron points to no benefit that Donziger has retained at Chevron's expense" are baseless.  Mot. at 22.  Chevron's Amended Complaint alleges that Donziger and the other Defendants will be enriched at Chevron's expense if their conduct is not enjoined.  *See Eastman Kodak Co. v. Camarata*, No. 05-CV-6384L, 2006 WL 3538944, at *14-15 (W.D.N.Y. Dec. 6, 2006).  Injunctive relief is available to remedy unjust enrichment.  *See, e.g.*, *United States v. William Savran & Assocs., Inc.*, 755 F. Supp. 1165, 1182-83 (E.D.N.Y. 1991).  Whether or not Donziger has yet obtained money directly from Chevron, Chevron's request for an injunction is proper, because Chevron has properly alleged that unless restrained, Donziger will be unjustly enriched at Chevron's expense by virtue of the fraudulent judgment he has procured.  *See, e.g.*, Am. Compl. ¶¶ 32, 58, 65, 68, 71, 325, 328, 342, 410-413.

Moreover, an unjust enrichment claim may arise out of a relationship between a tortfeasor and the injured party.  As the court in *Eastman Kodak*, 2006 WL 3538944, at *14-15, recognized, a defendant who "knowingly further[s] a scheme to defraud" and is "enriched" at the plaintiff's expense has a sufficient connection to the plaintiff to sustain an unjust enrichment

claim.  Indeed, Donziger concedes as much when he asserts that a plaintiff "must have had direct dealings *or* some sort of quasi-contractual relationship" with the defendant.  Mot. at 22 (quoting *C.V. Starr & Co. v. Am. Int'l Group, Inc.*, No. 06 Civ. 2157(HB), 2006 WL 2627565, at \*3 (S.D.N.Y. Sept. 14, 2006)) (emphasis added); *see also Minnelli v. Soumayah*, 839 N.Y.S.2d 727, 728 (N.Y. App. Div. 2007) (extortionate behavior "may be elements of a cause of action for . . . unjust enrichment").  *Contrast Carmona v. Spanish Broad. Sys., Inc.*, No. 08 Civ. 4475 (LAK), 2009 WL 890054, at \*6 (S.D.N.Y. Mar. 30, 2009) (Kaplan, J.) (dismissing radio listener's unjust enrichment claim against radio broadcaster because "merely . . . listening to a radio broadcast" does not establish a "direct contact or an actual substantial relationship" with the broadcaster).

Here, Donziger knowingly directed defendants' criminal enterprise, and obtained a benefit in the form of a judgment, issued on February 14, 2011.  Am. Compl. ¶¶ 68, 325, 342.  As a result of this judgment, Donziger expects to obtain substantial sums of money.  *Id.* ¶¶ 58, 330.  Though Donziger is not a named beneficiary of the judgment, he has surely been enriched by the decision, both in the form of his expected fees, and in the publicity he has gotten (and helped generate) regarding the judgment.  Donziger has already directly received monetary benefits—in fact, over $1 million has been paid to him personally.  *See* Am. Compl. ¶ 328.  And these unjust benefits came at Chevron's expense, in the form of myriad harms to Chevron that were a necessary result of defendants' scheme.  *See id.* ¶¶ 246-59, 337. .

### 5.    New York Law Permits a Cause of Action for Civil Conspiracy

Chevron has properly pleaded several underlying torts, including fraud, interference with contract, trespass to chattels, and violation of  New York Judiciary Law 487, to support its conspiracy claim.  *See supra*, Sections II.B.1-3, *see infra* Section II.B.6.  Thus, Chevron's civil conspiracy may not be dismissed.  *See Paino v. Kaiyes Realty LLC*, No. 101316/2010, 2011 WL 182896 at \*2 (N.Y. Sup. Ct. Jan. 18, 2011) (holding that New York permits a "cause of action"

for civil conspiracy to commit a tort; however, "a claim alleging conspiracy to commit a tort stands or falls with the underlying tort").[14]

### 6. Donziger Was Acting as an Attorney in New York and Is Thus Liable Under New York Judiciary Law § 487

The purpose of New York Judiciary Law § 487 is to "enforce an attorney's special obligation to protect the integrity of the courts and foster their truth-seeking function," *Cinao v. Reers*, 893 N.Y.S.2d 851, 858 (2010) (quotation marks omitted), and as such it makes it a misdemeanor for an attorney admitted to the New York bar to engage in, or consent to, "any deceit or collusion" "with intent to deceive the court or any party . . . ."  N.Y. Jud. L. § 487(1).

Donziger's argument that he was not "acting as an attorney" and thus is not liable under New York Judiciary Law § 487 fails.  Mot. at 24.  Chevron's Amended Complaint clearly alleges that Donziger is a member of the New York bar and was participating in litigation conduct in New York.  *See* Am. Compl. ¶¶ 8, 32, 304-13, 422.  Donziger formally appeared in the LAPs' case seeking to stay the Bilateral Investment Treaty arbitration before Judge Sand, a fact of which the Court may take judicial notice.  *See* Notice of Appearance, *Yaiguaje et al. v. Chevron Corp. and Texaco Petroleum Co.*, No. 10 CV 0316 (LBS) (S.D.N.Y. Mar. 10, 2010) (Dkt. 30). The cases Donziger cites are distinguishable, as they all involve defendants who *happened* to be licensed to practice law, but who were *not acting as attorneys at all*.  *See, e.g.*, *People v. Canale*, 240 A.D.2d 839, 841 (N.Y. App. Div. 1997) (acting as a witness); *Northern Trust Bank of Florida/Sarasota v. Coleman*, 632 F. Supp. 648, 650 (S.D.N.Y. 1986) (acting as a personal representative); *Haber v. Kisner*, 680 N.Y.S.2d 233 (N.Y. App. Div. 1998) (acting as a trustee).

---

[14] To the extent that Donziger suggests that a separate claim for civil conspiracy is procedurally improper, he is incorrect.  The cases Donziger cites stand for the unremarkable proposition that a conspiracy claim cannot be sustained without an underlying tort.  *See Alexander & Alexander of New York, Inc. v. Frizten*, 68 N.Y.2d 968, 969 (1986); *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2006).

Unlike the defendants in all of those cases, Donziger has acted as an attorney throughout the execution of his wrongful scheme, although he has also had non-attorney roles in the conspiracy.  Donziger has described himself as "the person primarily responsible for putting [the Lago Agrio legal] team together and supervising it."  Am. Compl. ¶ 8.  He has stated that he and his co-conspirators plan to enforce the Lago Agrio judgment in the U.S. and elsewhere and are assembling legal teams to do just that—another clear example of Donziger acting as a lawyer. Am. Compl. ¶ 71.  Donziger has also specifically described the compensation he anticipates receiving as a result of his fraudulent activities as "legal fees we can earn from this case" (*id*.)—a further indication that he thinks of his role as that of a lawyer subject to all of the ethical, civil, and criminal laws of New York, including Judiciary Law § 487.  Such statements are more than sufficient to demonstrate that Donziger knew he was acting as an attorney.  *See NYAT Operating Corp. v. Jackson, Lewis, Schnitzler & Krupman*, 741 N.Y.S.2d 385, 386 (N.Y. Sup. 2002) (defendant could be liable under § 487 because she made statements "as an attorney about her work as an attorney," even though she no longer represented the clients).  Donziger's role as an advisor in the Ecuadorean litigation does not mitigate his role *as an attorney* in the litigation before New York courts.  As this Court has stated, Donziger's role went "beyond" that of an attorney, but that does not make his legal work any less subject to Judiciary Law § 487.  Dkt. 181 at 39.

Donziger's argument that Chevron should have brought its § 487 claim earlier also fails. It ignores the fact that Donziger's improper conduct was part of a larger fraudulent scheme "greater in scope than the issues determined in the prior proceeding."  *Specialized Industrial Services Corp. v. Carter*, 890 N.Y.S.2d 90, 92 (N.Y. App. Div. 2009) (quotation marks omitted). "[A] separate lawsuit may be brought where the alleged perjury or fraud in the underlying action was merely a means to the accomplishment of a larger fraudulent scheme."  *Id.* at 92 (quotation

marks omitted); *see also Holtkamp v. Parklex Assoc.*, No. 14514/2006, 2011 WL 621122 , at \*26 (N.Y. Sup. Ct. Feb. 22, 2011) (separate suit allowed where "the alleged fraudulent representation made by counsel . . . was merely ancillary to [the] purported original scheme to defraud plaintiffs").  Further, New York courts have held that the prohibition on bringing a separate action under § 487 applies only when the purpose of that separate action is to collaterally attack a final judgment in an earlier New York action.  *See Dupree v. Voorhees*, 876 N.Y.S.2d 840, 845 (N.Y. Sup. Ct. 2009), *aff'd in relevant part by* 891 N.Y.S.2d 422 (N.Y. App. Div. Dec. 8, 2009).  That is not the case here.[15]

## CONCLUSION

For all of the foregoing reasons, this Court should deny Donziger's motion to dismiss in its entirety.  To the extent the Court for any reason finds that the Amended Complaint is deficient in any respect, Chevron respectfully requests leave to amend.

Dated:  May 18, 2011
      New York, New York

Respectfully submitted,
GIBSON, DUNN & CRUTCHER LLP

/s/ Randy M. Mastro

Randy M. Mastro
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile:  212.351.4035

Scott A. Edelman
2029 Century Park East
Los Angeles, California 90067
Telephone: 310.552.8500
Facsimile:  310.551.8741

---

[15] As the court in *Cinao* recently found, "[t]here is nothing in Judiciary Law 487 that would limit its applicability to deceit practiced on a court sitting in New York" and "[a] New York court has sufficient interest in supervising the conduct of attorneys admitted before its bar . . . to apply Judiciary Law § 487 to the attorney's conduct no matter where the action is pending."  893 N.Y.S. 2d at 858-59.  Thus, Donziger may be held liable for his wrongful deceit and collusion outside New York.

Andrea E. Neuman
3161 Michelson Drive
Irvine, California 92612
Telephone: 949.451.3800
Facsimile:  949.451.4220

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile:  213.229.7520
Attorneys for Chevron Corporation