UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

                          Plaintiff,

          -against-                                               11 Civ. 0691 (LAK)


STEVEN DONZIGER, et al.,

                          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OPINION**


          Appearances:


                         Randy M. Mastro
                         Andrea E. Neuman
                         Scott A. Edelman
                         William E. Thomson
                         GIBSON, DUNN & CRUTCHER, LLP
                         *Attorneys for Plaintiff*

                         John W. Keker
                         Elliot R. Peters
                         Jan Nielsen Little
                         KEKER & VAN NEST LLP
                         *Attorneys for Defendants Steven Donziger, The Law Offices*
                         *of Steven R. Donziger, and Donziger and Associates PLLC*

                         Julio C. Gomez
                         JULIO C. GOMEZ, ATTORNEY AT LAW LLC

                         Carlos A. Zelaya, II
                         F. Gerald Maples
                         F. GERALD MAPLES, PA

                         *Attorneys for Defendants Hugo Gerardo Camacho Naranjo*
                         *and Javier Piaguaje Payaguaje*

Lewis A. Kaplan, *District Judge.*

This is an action by Chevron Corporation ("Chevron") for, among other things, a declaration that a multibillion dollar judgment entered against it by a provincial court in Ecuador (the "Judgment") is not entitled to recognition or enforcement and an injunction against its enforcement outside of Ecuador.  The defendants include the Ecuadorian plaintiffs, referred to here and elsewhere as the Lago Agrio Plaintiffs ("LAPs"), and others including, Steven Donziger, a New York attorney who has acted for them in previous litigation in New York and in relation to the Ecuadorian lawsuit.  The prior proceedings in this and related actions have been extensive, and the Court assumes familiarity with its previous decisions.[1]

---

[1]
These include the following:

Decisions in proceedings brought under 28 U.S.C. § 1782:  *In re Chevron Corp.*, 709 F. Supp.2d 283 (S.D.N.Y.) (*"Berlinger § 1782 I"*), *aff'd sub nom.*, *Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2010); *In re Chevron Corp.*, 736 F. Supp.2d 773 (S.D.N.Y. 2010) ("*Berlinger § 1782 II*"); *In re Chevron Corp.*, 749 F. Supp.2d 135 (S.D.N.Y.) ("*Donziger §1782 I*"), *fuller opinion*, *In re Chevron Corp.*, 749 F. Supp.2d 141 (S.D.N.Y.) ("*Donziger §1782 II*"), *on reconsideration*, 749 F. Supp.2d 170 (S.D.N.Y.) ("*Donziger § 1782 III*"), *aff'd sub nom.*, *Lago Agrio Plaintiffs v. Chevron Corp.*, Nos. 10-4341-cv, 10-4405-cv (CON), 2010 WL 5151325 (2d Cir. Dec. 15, 2010).

Decisions in this case: *Chevron Corp. v. Donziger*, ___ F. Supp.2d ____, 2011 WL 778052 (S.D.N.Y. Mar. 7, 2011) ("*Donziger I*") (granting preliminary injunction); *Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), 2011 WL 979609 (S.D.N.Y. Mar. 7, 2011) ("*Donziger II*") (denying motion to transfer case to another judge); *Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), 2011 WL 1408386 (S.D.N.Y. Apr. 6, 2011) ("*Donziger III*") (denying stay pending appeal and other relief); *Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), 2011 WL 1465679 (S.D.N.Y. Apr. 15, 2011) ("*Donziger IV*") (granting separate trial and expedited discovery on claim for declaratory judgment); *Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), 2011 WL 1560926 (S.D.N.Y. Apr. 18, 2011) ("*Donziger V*") (denying motion to stay certain aspects of preliminary injunction pending appeal); *Chevron Corp. v. Donziger*, ___ F. Supp.2d ___,, No. 11 Civ. 0691 (LAK), 2011 WL 1747046 (S.D.N.Y. May 9, 2011) (*"Donziger VI"*) (denying recusal motion).

### I.    The Present Motion and Its Context

Chevron's original complaint is described in *Donziger IV* in some detail,[2] and that description need not be repeated here.  For present purposes, it suffices to say that Count 9 sought a declaration against all defendants, including Donziger, that the Judgment is unenforceable and unrecognizable "on, among others, grounds of fraud, failure to afford procedures compatible with due process, lack of impartial tribunals, and contravention of public policy."[3]

On April 15, 2011, the Court granted Chevron's motion to bifurcate Count 9 for a separate trial.  Five days later, Chevron amended the complaint.  Insofar as that change in the pleading is pertinent here, it is only for the fact that Chevron dropped Donziger, the Law Offices of Steven R. Donziger, and certain others as defendants on Count 9.  The only remaining defendants on that claim are the LAPs[4] and the Amazon Defense Front, the creditors on the Judgment.

Donziger, the Law Offices of Steven R. Donziger, and Donziger and Associates, PLLC (henceforth collectively referred to as "Donziger" except where the context indicates otherwise) now move to intervene as defendants on Count 9, arguing that they have a right to do so or, alternatively, that they should be permitted to intervene in the exercise of discretion.

Parenthetically, it should be noted that the assumption underlying this motion – shared by all parties – is that Donziger, absent intervention, may not participate in discovery or other

---

[2]    *Donziger IV,* 2011 WL 1465679, at *3-4.

[3]    Cpt. [DI 1] ¶ 394.

[4]    Only two of the LAPs, Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje (the "LAP Representatives"), have appeared in this action.

4

proceedings with respect to Count 9 because he is not a party to it.[5]  One might debate the correctness of his position. The point, however, is academic.  In opposing Chevron's motion to bifurcate Count 9 for a separate trial, Donziger argued that the Court, if it were inclined to separate Count 9, should sever it entirely pursuant to FED. R. CIV. P. 21 rather than merely ordering a separate trial pursuant to Rule 42.  Although that request was unopposed, the Court deferred ruling on it. Upon reflection, the Court now agrees that Count 9 should be severed and is entering an order to that effect today.  As Donziger is not named as a defendant on Count 9, he is not a party to that now separate action (referred to below as the "Count 9 Action").  Absent intervention in that separate action, he would have no right to participate in it.  Accordingly, the correctness of the parties' assumption when this motion was made concerning Donziger's right to participate in proceedings with respect to Count 9 is now an academic point.


II.   *Discussion*

Steven Donziger is a member of the New York Bar.  He appeared as counsel for some or all of the LAPs in the *Aguinda* case, in which his clients sought, *inter alia*, damages for alleged personal injuries said to have been caused by environmental torts committed by Texaco, which years later became a Chevron subsidiary.  Since the *Aguinda* case was dismissed on the ground of *forum non conveniens*, he has continued to serve as legal counsel to the LAPs in connection with the Ecuadorian litigation, although he is not admitted to practice in Ecuador and his role has gone very

---

[5]    Donziger's counsel reiterated that position in a conference call on May 26, 2011, stating that Donziger is not a party with respect to Count 9 and therefore has no right to participate absent intervention.  Tr., May 26, 2011, 10:6-19.

far beyond that of counsel.[6]  He has testified that he has a contingent fee arrangement with the LAPs pursuant to which he will receive "slightly less than a third of the overall recovery of attorneys' fees, whatever that may be, if that comes to pass."[7]  Further, although the LAPs have been represented by other attorneys in this and other proceedings, Donziger appears to have played a role in hiring those lawyers and has agreed to work in close connection with them.[8]

        In this context, Donziger asserts that he has a right, or in any case should be permitted, to intervene in the proceedings on Count 9 – which seeks a declaration against his existing clients that the Judgment is neither recognizable nor enforceable – because he (1) has a financial interest in recovering on his contingent fee agreement, (2) an interest in continuing to represent the LAPs, and (3) believes that he may defend his own conduct that may be relevant to Count 9 more vigorously than would the LAP Representatives.

*A.*     *Intervention as of Right*

        Intervention is governed by Rule 24 of the Federal Rules of Civil Procedure.  So far as it is relevant to Donziger's motion to intervention as of right, it provides that one must be

---

[6]

      "Donziger — at least in major respects — has not functioned as a lawyer with respect either to the Lago Agrio litigation or the criminal prosecution. As *Crude* and the outtakes make clear, his efforts have been concentrated heavily in media and public relations, lobbying, and political activism."  *Donziger § 1782 II,* 749 F. Supp.2d at 164.

[7]

      Peters Decl. [DI 296] Ex. A, at 546:18-21.

      At the time of the deposition, Donziger stated that attorneys' fees would be between 10 and 20 percent of the total recovery and that he could receive hundreds of millions of dollars, depending on the amount of any recovery.  *Id.* at 546:22-547:16, 547:20-548:6, 548:11-17.

[8]

      *See, e.g.*, Mastro Decl. [No. 10-MC-00002 (LAK), DI 150], Ex. 42 (draft Motley Rice retainer agreement); Ex. 45 (draft Patton Boggs retainer agreement).

permitted to intervene if he or she "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."[9]   Moreover, intervention as of right is appropriate only when all of the following requirements are met:

> "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties."[10]

At least two of these requirements are not satisfied here.

### 1.    *Donziger Asserts No "Interest" Within the Meaning of Rule 24(a)*

The word "interest," like so many others, means many things, depending upon the context.  So, for example, one may have an abiding "interest" in the New York Mets in the sense of having a desire to know all about them or hoping that they win baseball games.  One may have an "interest" also in the sense of owning equity in them.  And there are other possibilities.  The important point, for present purposes, however, is that the word "interest" as it is used in Rule 24(a) has been construed very narrowly.[11]   In order to intervene as of right, the putative intervenor, in addition to satisfying the other requirements, must advance a concern that is "direct, substantial, and

---

[9]     FED. R. CIV. P. 24(a)(2).

[10]     *MasterCard Int'l. Inc. v. Visa Int'l. Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006) (citing *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)).

[11]     6 MOORE'S FEDERAL PRACTICE § 24.03[2][a] (3d ed. 2010) (citing *Donaldson v. United States,* 400 U.S. 517, 530-31 (1971)).

legally protectable."[12]  Put another way, "[a] Rule 24 interest must be significantly protectable and direct as opposed to remote or contingent."[13]  Thus, Donziger's contingent fee agreement,[14] which at best gives him a right to collect from his clients a share of any proceeds of the Judgment that eventually may be collected on their behalf, assuming *arguendo* that the Judgment withstands appeal in Ecuador and any other proceedings attacking it, does not satisfy Rule 24(a).

Donziger nevertheless argues that New York law affords him a charging lien on the Judgment for his contingent fee and that the lien supplies the requisite interest under Rule 24(a). He is mistaken.

New York by statute creates a charging lien "from the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor," in favor of an attorney "who appears for a party . . . , which attaches to a . . . judgment . . . in his client's favor."[15]  Such a lien is regarded as creating a vested right.[16]  But the Judgment here at issue is that of an Ecuadorian court, and it was rendered in an action in which there

---

[12]
    *Id.* (quoting *Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)).  *Accord*, *Angelo Holding Corp. v. United States*, 321 Fed. Appx. 28, 30 (2d Cir. 2009); *Person v. N.Y. State Bd. of Elections*, 467 F.3d 141, 144 (2d Cir. 2006); *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001); *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001).

[13]
    *United States v. State of New York*, 820 F.2d 554, 558 (2d Cir. 1987); *Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*, 725 F.2d 871, 874 (2d Cir.1984).  *See also Washington Elec.*, 922 F.2d ast 97; *Peoples Benefit Life Ins. Co.*, 271 F.3d at 415.

[14]
    *See* Peters Decl. Ex. A, at 546-549.

[15]
    N.Y. JUD. L. § 475 (McKinney 2005).

[16]
    *See Attorneys at Law*, 7 N.Y. JUR.2D § 288 (2009).

is no suggestion that Donziger ever appeared as counsel.[17]

There is at least some question whether the New York charging lien statute would apply to a judgment rendered in a foreign court. But it is unnecessary to decide that. Even if the statute did apply, it in any case would "grant[] a charging lien to an attorney only when there has been an appearance by that attorney in [the] action which creates or is the source of the funds against which the lien is asserted."[18] As Donziger has not appeared as counsel in the Lago Agrio case in Ecuador,[19] he has no charging lien on the Judgment.[20]

Donziger's other putative interests – his desire to avoid being enjoined from seeking to collect attorneys' fees from the Judgment and to defend his reputation against allegations of wrongdoing – are even more removed from the area protected by Rule 24(a).

To begin with, Donziger is not a party to the Count 9 Action, which seeks no injunction against him individually. True, Rule 65(d)(2) provides that an injunction against the

---

[17]   There is no evidence that Donziger is admitted to practice before Ecuadorian courts.

[18]   *Weg and Myers, P.C. v. Banesto Banking Corp.*, 175 A.D.2d 65, 66, 572 N.Y.S.2d 321, 323 (1st Dept. 1991). *Accord*, *Max E. Greenberg, Cantor & Reiss v. State*, 128 A.D.2d 939, 940, 512 N.Y.S.2d 587, 588 (3d Dept. 1987). *See also In re Air Crash at Belle Harbor, N.Y. on November 12, 2001*, Nos. 02 MDL 1448 (RWS), 02 Civ. 4758 (RWS), 2006 WL 3247675, at *2 (S.D.N.Y. Nov. 9, 2006) ("lien only attaches when proceeds from an identifiable fund are created by an attorney's own efforts in the action or proceeding").

[19]   In one of the *Crude* outtakes, Donziger indicated that he has not appeared as counsel on behalf of the LAPs in Ecuador although he has remained "the link to all of the work in the United States and all of the institutional history of the case." *See* Hendricks Decl. [No. 10-MC-00002 (LAK), DI 41] Ex. A, CRS-027-16-05.

[20]   In any case, it is not clear whether an attorney claiming a charging lien with respect to a lawsuit in which the attorney appeared has a Rule 24(a) "interest" unless the lien is perfected. *See Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001). The parties have not addressed the question whether Donziger, even assuming he has a charging lien, has perfected it.

LAPs would bind their agents, attorneys, and "other persons who are in active concert or participation with" them to the extent such persons receive actual notice of the injunction. Accordingly, if an injunction is issued against the LAPs in the Count 9 Action, and if Donziger thereafter violated that injunction as their agent or attorney of the LAPs or otherwise in concert or participation with them, he would be subject to contempt sanctions.  In that respect, however, he would stand no differently from any attorney or other person who might subject him- or herself to the risk of sanctions by acting assisting or acting for any enjoined party in violating an injunction directed at that party.  One who might fall into such a category would not have the sort of "direct, substantial, . . . legally protectable" and non-contingent stake that Rule 24(a) requires.

Finally, Donziger has been accused in the amended complaint with actions that, if proved, could reflect adversely on his reputation or perhaps worse.  He will have his chance to defend against those accusations when the counts of that complaint to which he remains a party are tried or otherwise determined.  But the fact that some of those actions might, depending upon how the Count 9 Action unfolds, be relevant to Count 9 as well does not give him an "interest" sufficient to give him the right to inject himself as a party into the Count 9 Action.

2.     *Donziger Has Not Shown that His Interests Are Inadequately Represented by the LAP Representatives*

Chevron in the Count 9 Action seeks a declaration that the Judgment is not subject to recognition and enforcement because, among other reasons, (1) Ecuador does not provide impartial tribunals or procedures compatible with due process of law, (2) the Judgment was procured by fraud, (3) its enforcement would offend pertinent public policy, and (4) the Ecuadorian court lacked jurisdiction over Chevron.  The alleged fraud is said to have been perpetrated by Donziger

and others.

As an initial matter, the ultimate objectives of Donziger and of the LAP Representatives with respect to the Count 9 Action are identical.  They all want it dismissed or, alternatively, to obtain a declaration that the Judgment is enforceable and subject to recognition. Donziger nevertheless argues that the LAP Representatives "may not adequately represent [his] interests."[21]  He suggests this is so because the LAP Representatives "might choose not to mount a vigorous defense against Chevron's allegations that Donziger, and his alleged co-conspirators, engaged in fraudulent conduct to obtain a favorable judgment," choosing instead "to emphasize that any such fraudulent conduct is immaterial because it did not actually influence the" Judgment.[22]  He argues that this possibility satisfies what he says is a "minimal" burden of showing a possibility of inadequate representation.[23]  This argument is incorrect on the law and, in any case, difficult to square with the facts.

Under Rule 24(a)(2), the putative intervenor has the burden of showing that its interest will not be represented adequately by the named parties.[24]  That burden generally is minimal.[25]  Where, as here, however, "the putative intervenor and a named party have the same

---

[21]    Donziger Mem. [DI 295], at 9.

[22]    *Id.*

[23]    *Id.*

[24]    *Pitney Bowes*, 25 F.3d at 70.

[25]    *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972).

ultimate objective," the Second Circuit demands "a more rigorous showing of inadequacy."[26]  The putative intervenor can overcome the presumption of adequate representation in such a case only by providing evidence of, for example, "collusion, adversity of interest, nonfeasance, or incompetence."[27]

Donziger has made no such showing here.  He has offered only the possibility that the LAP Representatives might choose not to contest the allegations that Donziger and others acting on their behalf committed fraud in pursuing the Judgment and instead put all of their eggs in one basket – a contention that any fraud was immaterial.  That suggestion is insufficient to overcome the presumption of adequate representation.

It seems quite likely that the LAP Representatives will seek to defend the multibillion dollar Judgment on every ground arguably open to them, as they have done so far.[28]  It is especially likely that they will continue to dispute Chevron's allegations of fraud and misconduct by Donziger and other attorneys and agents of the LAPs in view of Donziger's relationship to them. [29] He still is among their attorneys.[30]  He therefore is in a position to influence the manner in which the LAP

---

[26]

*Butler*, 250 F.3d at 179.

[27]

*Id.* at 180.

[28]

In their answer, the LAP Representatives affirmatively deny that the Lago Agrio litigation "was subject to corruption and undue influence," rather than simply arguing that any alleged fraud was immaterial.  LAP Rep. Ans. [DI 311] ¶ 91.  They deny also all other fraud-related allegations made in the complaint.  *See id*. ¶¶ 389-395, 431.

[29]

Certainly Donziger has advanced no authority for the proposition that the LAP Representatives could avoid the consequences of any fraud by their attorneys in the procurement of the Judgment by disassociating themselves from the actions of their attorneys and agents and disavowing personal knowledge of any such misconduct.

[30]

Donziger Rep. [DI 319] at 4-5.

Representatives defend the Judgment.  Thus, there is no reason to suppose that the LAP Representatives will not adequately defend any personal concern that Donziger may have with respect to the accusations of misconduct on his part.

The result would be no different even if Donziger no longer were among the LAPs' attorneys.  The Second Circuit has indicated that a discharged attorney does not have a right to intervene in his or her former client's lawsuit even where the discharged attorney has a financial stake in the outcome because intervention would create the risk that the "an intervenor-counsel might advance arguments either not raised, or even in conflict with those already made, unintentionally undermining the current trial strategy" and create the added risk that the "cost-benefit calculuses" of the discharged counsel and former client may diverge.[31]  For example, while discharged counsel primarily might be interested in maximizing the financial recovery to collect attorneys' fees, the former client might wish to "forego pecuniary remuneration for equitable relief or other non-monetary compensation, or might simply wish to discontinue litigation [and/or settle] in light of ever-mounting inconvenience and expense."[32]  Such "competing concerns might lead to a litigation impasse or to the subjugation of the client's interests to that of its former counsel."[33]

Donziger thus is in a double bind or something very close to it.  The fact that Donziger controls or, at least, is in a position to influence the conduct of the litigation on behalf of the LAP Representatives makes it exceptionally likely that their litigation strategy will reflect his

---

[31]  *Butler,* 250 F.3d at 179.

[32]  *Id.*

[33]  *Id.*

concerns.  That would be true even if he were not still among their counsel, as their interest in

defending the Judgment gives them every incentive to do so.  In any case,  even if there were some

reason to suppose that the LAP Representatives might adopt a strategy not entirely to Donziger's

liking, it would not give him a right to intervene because "disagreement with an existing party over

trial strategy [does not] qualif[y] as inadequate representation."[34]  And even if Donziger's concern

were not adequately represented by the LAP Representatives, his financial interest in the outcome

is not the type of interest contemplated by Rule 24(a)(2).


B.      *Permissive Intervention*

        In the alternative, Donziger seeks leave to intervene on the grounds that (1) he has

claims and defenses in the original action that share common questions of law and fact with the

Count 9 Action, and (2) his participation in a trial of the Count 9 Action would enhance the factual

development.  He argues also that his intervention would not delay or prejudice Chevron.

        Under Rule 24(b)(1)(B), a Court, in its discretion, may grant permission to intervene

if the movant "has a claim or defense that shares with the main action a common question of law

or fact."  Permissive intervention is appropriate in circumstances in which intervention would not

"unduly delay or prejudice the adjudication of the original parties' rights."[35]  The Court may consider

also "additional relevant factors" including:  (1) "the nature and extent of the intervenors' interests,"

(2) "the degree to which those interests are adequately represented by other parties," and (3)

"whether parties seeking intervention will significantly contribute to full development of the

---

[34]     *Id.* at 181.

[35]     Fᴇᴅ. R. Cɪᴠ. P. 24(b)(3).

underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented."[36]  Moreover, it is within the Court's discretion to limit the scope of any intervention.[37]

The Count 9 Action, depending upon the manner in which it ultimately unfolds, may involve questions of fact that are common to the remaining part of the original complaint, assuming that the RICO and fraud claims it contains survive Donziger's pending motion to dismiss them.  As the Court acknowledged in ruling on the bifurcation motion:

> "To be sure, there are areas of possible evidentiary overlap between Count 9 and the RICO and state law claims. Although Chevron's common law fraud and RICO claims are significantly broader than its contention that the Judgment was procured by fraud, some of Chevron's contentions on those counts — notably, the claims relating to the allegedly fraudulent Cabrera report — are common to its contention that the Judgment was procured by fraud. Similarly, there may be some overlap between the fraud and RICO claims and the question whether recognition and enforcement should be denied on the ground that the Judgment was rendered in a system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law."[38]

Apart from the possible existence of some common questions, however, the other factors pertinent to the issue of permissive intervention either cut against Donziger or are neutral.  His concern with enforceability of the Judgment is coextensive with that of his clients, who will represent that concern adequately.  And while it is conceivable that Donziger's participation in the Count 9 Action could

---

[36]

    *Citizens Against Casino Gambling in Erie Cnty. v. Hogen*, No. 10–2132–cv, 2011 WL 1134316, at *1 (2d Cir. 2011) (quoting *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir.1986)).

[37]

    *See, e.g.*, *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 378 (1987).

[38]

    *Donziger IV*, 2011 WL 1465679, at *6.

    The issue whether the Judgment was rendered in a system that does not provide impartial tribunals or procedures compatible with due process might present questions common to the RICO and fraud claims against Donziger only to the extent that Donziger's alleged fraud in procuring the Judgment were pertinent to that issue, a matter that has not yet been addressed by the parties.

contribute to the consideration and just resolution of the issues it presents, it is just as likely – especially in view of his previous delaying tactics in the Section 1782 proceedings[39] and his failure to adhere to a schedule fixed by the Court on the preliminary injunction motion[40] – that they will delay and render such a resolution more difficult.

That said, the possibility of some factual overlap between some aspects of the Count 9 Action and the RICO and fraud claims that remain pending against Donziger, albeit subject to his pending motion to dismiss, favors limited intervention.  Most significantly, witnesses deposed in the Count 9 Action with respect to any common issues might have to be deposed again in the remaining action against Donziger unless their depositions could be used in both.  Moreover, depositions taken in the Count 9 Action with respect to any such issues could be inadmissible in the action to which Donziger remains a party unless Donziger has "an opportunity . . . to develop the [deposition] testimony by . . . cross . . . examination."[41]  Accordingly, Donziger will be permitted to intervene for the limited purposes of (1) cross-examining witnesses or parties whose depositions are conducted by others solely on the questions whether the Judgment is not enforceable or recognizable because it was procured by fraud by Donziger, either individually or in concert with others, and (2) objecting to interrogatories, document requests, subpoenas for documents served on non-parties, and deposition questions, solely on the ground that the requested discovery would

---

[39]

*See Donziger I*, 2011 WL 778052, *51 n.401 ("[T]here is abundant evidence in e-mails to which Donziger and attorneys for the LAPs suggesting that they were taking positions in the U.S. litigations which they knew were unlikely to prevail for the purpose of delay"); *Donziger § 1782 III*, 749 F.Supp.2d 170, 185 (finding Donzgier's "failure to submit a privilege log . . . a deliberate attempt to structure the response to the subpoenas in a way that would create the maximum possibility for delay").

[40]

*See Donziger I*, 2011 WL 778052, at *46.

[41]

*See* FED. R. CIV. P. 804(b)(1).

violate an evidentiary privilege personal to Donziger.[42]


*Conclusion*

        Donziger's motion to intervene [DI 292] is granted to the limited extent, and on the limited basis, set forth above.  It is denied in all other respects.  The Court, however, retains flexibility over the scope of intervention to ensure that it does not unduly delay the resolution of the Count 9 Action or prejudice the parties. It stands ready to consider changes to this order, should circumstances warrant, as the matter proceeds.

        SO ORDERED.

Dated:       May 31, 2011


                             Lewis A. Kaplan
                        United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[42]     The Court will consider whether and to what extent Donziger may participate in any trial of the Count 9 Action once it is clear that it actually will be tried, at which time the Court will be much better informed as to issues to be tried and whether Donizger's concern with their resolution warrants such participation.