UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

                  Plaintiff,


      -against-


MARIA AGUINDA SALAZAR, et al.,                11 Civ. 3718 (LAK)
                                                  (Action No. 2)

                  Defendants,

        -and-


STEVEN DONZIGER, et al.,

                  Intervenors.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

                  Plaintiff,


      -against-                                    11 Civ. 0691 (LAK)
                                                  (Action No. 1)

STEVEN DONZIGER, et al.,

                  Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OPINION


        Appearances:


                Randy M. Mastro
                Andrea E. Neuman
                Scott A. Edelman

William E. Thomson
GIBSON, DUNN & CRUTCHER, LLP
*Attorneys for Plaintiff*

Julio C. Gomez
JULIO C. GOMEZ, ATTORNEY AT LAW LLC

Carlos A. Zelaya, II
F. Gerald Maples
F. GERALD MAPLES, PA

*Attorneys for Defendants Hugo Gerardo Camacho Naranjo
and Javier Piaguaje Payaguaje*

LEWIS A. KAPLAN, *District Judge.*

The background of these actions has been fully explained in a number of previous

opinions by the Court,[1] familiarity with which is assumed.  The matter now is before the Court on

---

[1]

These include the following:

Decisions in proceedings brought under 28 U.S.C. § 1782:  *In re Chevron Corp.*, 709 F. Supp.2d 283 (S.D.N.Y.) (*"Berlinger § 1782 I"*), *aff'd sub nom.*, *Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2010); *In re Chevron Corp.*, 736 F. Supp.2d 773 (S.D.N.Y. 2010) (*"Berlinger § 1782 II"*); *In re Chevron Corp.*, 749 F. Supp.2d 135 (S.D.N.Y.) (*"Donziger §1782 I"*), *fuller opinion*, *In re Chevron Corp.*, 749 F. Supp.2d 141 (S.D.N.Y.) (*"Donziger §1782 II"*), *on reconsideration*, 749 F. Supp.2d 170 (S.D.N.Y.) (*"Donziger § 1782 III"*), *aff'd sub nom.*, *Lago Agrio Plaintiffs v. Chevron Corp.*, Nos. 10-4341-cv, 10-4405-cv (CON), 2010 WL 5151325 (2d Cir. Dec. 15, 2010).

Decisions in this case:  *Chevron Corp. v. Donziger*, ___ F. Supp.2d ____, 2011 WL 778052 (S.D.N.Y. Mar. 7, 2011) (*"Donziger I"*) (granting preliminary injunction); *Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), 2011 WL 979609 (S.D.N.Y. Mar. 7, 2011) (*"Donziger II"*) (denying motion to transfer case to another judge); *Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), 2011 WL 1408386 (S.D.N.Y. Apr. 6, 2011) (*"Donziger III"*) (denying stay pending appeal and other relief); *Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), 2011 WL 1465679 (S.D.N.Y. Apr. 15, 2011) (*"Donziger IV"*) (granting separate trial and expedited discovery on claim for declaratory judgment); *Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), 2011 WL 1560926 (S.D.N.Y. Apr. 18, 2011) (*"Donziger V"*) (denying motion to stay certain aspects of preliminary injunction pending appeal); *Chevron Corp. v. Donziger*, ___ F. Supp.2d ___,, No. 11 Civ. 0691 (LAK), 2011 WL 1747046 (S.D.N.Y. May 9, 2011) (*"Donziger VI"*) (denying recusal motion); *Chevron v. Donziger*, No. 11 Civ. 0691, 2011 WL 2150450 (S.D.N.Y. May 31, 2011) (*"Donziger

the motion of Chevron Corporation ("Chevron") in No. 11 Civ. 3718 (LAK) for an order compelling

the two Lago Agrio Plaintiff Representatives (the "LAP Representatives") who have appeared in

this action to compel Pablo Fajardo Mendoza ("Fajardo"), Juan Pablo Saenz ("Saenz"), Julio Prieto

Mendez ("Prieto"), and Luis Francisco Yanza ("Yanza") to appear for depositions.

*Facts*

An Ecuadorian court has entered a multibillion dollar judgment against Chevron (the

"Judgment") in an action brought by the 47 Lago Agrio plaintiffs (the "LAPs"). Fajardo, Saenz, and

Prieto are among their Ecuadorian lawyers. Fajardo claims to hold powers of attorney from the

LAPs, and both he and Yanza have retained U.S. counsel on their behalves in other proceedings.

Chevron commenced Action No. 1 on February 1, 2011 against the LAPs, Fajardo,

Frente de Defensa de la Amazonia (the "ADF"), its co-founder Luis Yanza, and others seeking,

among other things, damages for alleged violations of the Racketeer Influenced and Corrupt

Organizations Act, a declaration that the Judgment is neither recognizable nor enforceable because

it was rendered in a legal system that does not afford appropriate protections and in any case was

procured by fraud, and other relief. The LAP Representatives have appeared and are defending

against Chevron's claims. The other 45 LAPs, Fajardo, Yanza, the ADF and certain other

defendants defaulted, and a certificate of default has been entered against them.

On April 15, 2011, the Court granted Chevron's motion for a separate trial on Count

9 of the complaint in Action No. 1, the count that seeks declaratory and other relief with respect to

---

*VII*") (granting in part and denying in part motion to intervene); *Chevron Corp. v. Salazar*, No. 11 Civ. 3718, 2011 WL 2326893 (S.D.N.Y. Jun. 14, 2011) ("*Donziger VIII*") (denying motion to stay pending intervention appeal).

4

the Judgment on grounds of non-recognizability and non-enforceability. It further provided for expedited discovery and set a November 14, 2011 trial date.

On or about May 20, 2011, Chevron issued notices to take the depositions of Fajardo, Saenz, Prieto, and Yanza, all of whom apparently reside in Ecuador, on June 3, 10, and 17 and July 8, 2011, respectively. The notices were served on counsel for the appearing defendants and not on the witnesses. Chevron's position is that the LAP Representatives are obliged to produce these witnesses for examination because they are "their witness[es] and agent[s]."[2] Chevron has acknowledged that the witnesses have not been served with subpoenas.[3]

On May 31, 2011, the Court granted defendant Donziger's alternative request to formally sever Count 9 of the amended complaint in Action No. 1, which resulted in the opening of Action No. 2.[4] None of the witnesses whose depositions Chevron seeks is a party to Action No. 2.

On June 3, 2011, Fajardo failed to appear for examination, and it appears that other Ecuadorian witnesses have followed or will follow suit.[5] Chevron now moves to compel the appearing defendants to produce Fajardo, Saenz, Prieto and Yanza for depositions in New York and ordering sanctions to follow from any failure to comply with such an order.

---

[2]

> Tr., May 26, 2011, at 2-4.

[3]

> *See* Chevron Mem. at 14 ("Chevron has no practicable way to depose these witnesses because it cannot subpoena witnesses in Ecuador.")

[4]

> *Donziger VII*, 2011 WL 2150450, at *1.

[5]

> Prieto and Yanza's depositions are scheduled to take place in the coming weeks. Given that the other Ecuadorian witnesses have not appeared for their depositions, it is likely that Prieto and Yanza will not appear either.

*Discussion*

1.      Rule 30(a) provides that a party may conduct the deposition of "any person." Certainly Fajardo, Saenz, Prieto and Yanza are "persons."  Moreover, Fajardo and Yanza are parties to Action No. 1 and could be required to appear in an appropriate location for deposition in that action by the simple expedient of serving a notice of deposition on them or, had they appeared by counsel, on that counsel.[6]  There is no indication, however, that Chevron has served the notices of their depositions on the witnesses themselves, and none of them has appeared by counsel. Accordingly, there is no basis in the present circumstances for an order directing Fajardo, Saenz, Prieto and Yanza to appear for examination as parties to Action No. 1 pursuant to the notices.  Nor is there any basis for ordering these witnesses to appear for examination pursuant to the notices of deposition as nonparty witnesses in Action No. 2. As nonparties in that action, that are not subject to deposition merely by the service of a notice.  Service of a subpoena would be necessary.[7]  Indeed, Chevron implicitly so recognizes by seeking an order "compelling Defendants [i.e., the LAPs and the other defendants in Action No. 2] to produce" Fajardo, Saenz, Prieto and Yanza for examination.


2.      Chevron next contends, among other things, that the Lago Agrio litigation in which the Judgment was entered is an "enterprise . . . which consists of Ecuadorian and U.S. contingency-fee lawyers, funders, Ecuadorian plaintiffs and organizations (most notably, the

---

[6]

    8A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2106 (3d ed. 2011) ("Rule 30(b)(1) requires a party desiring to take the deposition of any person upon oral examination to give reasonable notice in writing to every other party to the action . . . . If a party is to be examined, the notice under this rule is sufficient to require the party's attendance.").

[7]

    *Id.* ("if the deponent is not a party, he or she must be subpoenaed").

6

[ADF])".[8]  Fajardo, it argues, is "a principal architect of the fraudulent scheme" that produced the

Judgment.[9]   Saenz and Prieto are among the LAPs' Ecuadorian lawyers, and the LAPs have

submitted declarations and affidavits of Fajardo[10] and Saenz[11] to this and other U.S. courts in

litigation concerning the Ecuadorian action.  In addition, Fajardo and Yanza appear to have been

involved in obtaining funding to pursue the Ecuadorian case and repeatedly have acted on behalf

of the LAPs, including in the United States and often pursuant to express powers of attorney.

Indeed, Chevron contends that the LAP Representatives are "merely the public face" of an

association of the Ecuadorian plaintiffs, their lawyers, their organizations, and their financiers.[12]

These witnesses, it argues, are managing agents of that association or organization.  In consequence,

Chevron argues, the LAP Representatives can and should be ordered to produce them.

The word "person" in Rule 30(a) is sufficiently broad to comprehend an

"association" of the sort Chevron alleges.  This is confirmed by the fact that Rule 30(b)(6), which

specifically includes associations and other entities in the list of organizations subject to deposition

under its special terms, and the Advisory Committee's note make clear that the reach of this concept

is broad indeed:

> "'[O]ther entity' is added to the list of organizations that may be named as
> deponent. The purpose is to ensure that the deposition process can be used

[8] Chevron Mem. [DI 41] at 1.

[9] *Id.*

[10] *E.g.*, No. 10 MC 0002, DI 165.

[11] *E.g.*, No. 11 Civ. 0691, DI 152-155.

[12] Chevron Mem. at 7.

> to reach information known or reasonably available to an organization *no matter what abstract fictive concept is used to describe the organization.* Nothing is gained by wrangling over the place to fit into current rule language such entities as limited liability companies, limited partnerships, business trusts, more exotic common-law creations, or forms developed in other countries."[13]

If an organization, "no matter what abstract fictive concept is used to describe" it, may be deposed under Rule 30(b)(6), it necessarily is a "person" that may be deposed under Rule 30(a).  Indeed, a 30(b)(6) deposition is merely one of two alternative means by which a corporation or other organization may be deposed under the Federal Rules of Civil Procedure, the other being a deposition of the entity by a named officer, director or managing agent under Rule 30(a).[14]

But even granting that the alleged association in appropriate circumstances may be deposed under Rule 30(a), it does not inevitably follow that the LAP Representatives may be compelled to produce these witnesses pursuant to these notices.  There are at least two threshold questions – (1) whether the notices of deposition at issue purported to seek the deposition(s) of the association, and (2) whether the association may be deposed by the service of a simple notice of deposition on counsel for the LAP Representatives.

These notices of deposition were addressed to the witnesses, not the alleged association.  As the notices did not indicate that the LAP Representatives were being served as representatives of the alleged association, the LAP Representatives cannot be compelled to produce

---

[13]

        Adv. Comm. Note 2007 (emphasis added).

[14]

        *E.g., Sugarhill Records Ltd. v. Motown Record Corp.,* 105 F.R.D. 166, 169 (S.D.N.Y. 1985) (party seeking deposition of corporation has choice of examining corporation by named officer, director or managing agent or, under Rule 30(b)(6), by describing subjects of examination and allowing corporation to designate witness) (citing cases).

the witnesses pursuant to them.[15]  But Chevron would not prevail on this argument in the present

posture even absent this formal defect.  As one noted commentator has written, "only a party may

be compelled to give testimony pursuant to a simple notice."[16]  The association to which Chevron

points is not a party.  Thus, even if the notices of deposition had identified the association rather than

Fajardo and the other witnesses as the deponent(s), service of compulsory process on the association

would have been necessary.[17]


　　　3.　　　Chevron next contends that the Ecuadorian attorneys – Fajardo, Saenz, and

Prieto – as well as Yanza are agents of the LAPs, including the LAP Representatives, and that they

therefore are obliged to follow their instructions and provide them with information pertinent to their

agencies.

　　　As an initial matter, Fajardo holds broad powers of attorney granted to him

by the LAPs, including at least one of the two LAP Representatives.[18]  Both he and Yanza have

entered into retention agreements with American law firms on their behalf.[19]  Their agent-principal

relationships with the LAP Representatives is conclusively established by this alone.  Nor is that all.

---

[15]

　　　*See, e.g., Application of Johnson and Johnson*, 59 F.R.D. 174, 177 (D. Del. 1973).

[16]

　　　*E.g.,* 7 MOORE'S FEDERAL PRACTICE § 30.03[2], at 30-18 (3d ed. 2010).

[17]

　　　9 *id.* § 45.02[4][b] (subpoena required for deposition of nonparty witness); 8A WRIGHT ET AL., § 2103 (compulsory process necessary to take deposition of nonparty).

[18]

　　　Champion Decl. [DI 43] ¶ 3 & Exs. 1, 13, 14.

[19]

　　　*Id.* ¶ 4 & Exs. 43, 44, 45.

Lawyers are agents for their clients.[20] Fajardo, Saenz and Prieto therefore are

agents of the LAPs on that basis alone.  Moreover, in this case, many of the LAPs, including

defendant Piaguaje, entered into a funding agreement with Treca Financial Solutions ("Treca")

pursuant to which Treca committed to provide substantial financing for the LAPs' pursuit of a

recovery from Chevron in exchange for a share of any such recovery.[21]  In Section 5 of that

agreement, the LAPs "irrevocably instructed the Nominated Lawyers [Patton Boggs, which

represents the LAP Representatives in the appeal from this Court's preliminary injunction] to keep

[Treca] fully informed of all material developments."  The funding agreement, moreover, requires

the LAPs, "as requested by the Nominated Lawyers or the Claimants'[22] U.S. Representative [i.e.,

Donziger]" to:

> "us[e] the Claimants' reasonable efforts and subject to any relevant legal
> rules, cause all persons related to the Claim, *including the Claimants'*
> *lawyers,* to . . . appear at any hearings (including hearings located abroad)
> reasonably required in connection with . . . the Claim generally."[23]

And the point in this instance is not that the LAP Representatives are under any contractual

obligation to Chevron by virtue of the funding agreement.  Rather, it is that the funding agreement

confirms what in any case is clear as a matter of law – that the LAPs as the litigants are principals

---

[20]

*E.g., Link v. Wabash R.R. Co.,* 370 U.S. 626, 633-34 (1962); *Jenkins v. General Motors Corp.,* 164 F.R.D. 318, 320 (N.D.N.Y. 1996) ("The attorney and client stand in a relationship of principal and agent, with the attorney being the agent of the client/principal, and acting with, at least, apparent authority.").

[21]

Champion Decl. [DI 40] Ex. 46, Schedule 1.

Fajardo appears to have signed the agreement on behalf of the LAPs.

[22]

"Claimants" is defined to include the LAPs.

[23]

*Id.* § 5.1 (emphasis added).

and their lawyers are their agents.  The question thus becomes whether an individual party to a federal lawsuit may be compelled to produce his or her agent for a deposition where, as here, the deposition would concern directly the agent's conduct of the principal's affairs in relation to matters that are the subject of the federal lawsuit.  In other words, may the LAP Representatives be compelled to produce their Ecuadorian agents for examination with respect to such matters as whether the agents participated in obtaining a judgment in favor of the LAP Representatives by fraud?

The principle that a corporation or other organization may be deposed by an officer, director or managing agent sheds light on this question.  The ability to examine an organization by an officer or director is straightforward – officers and directors are in formal control of an organization and thus speak for the entity which, as a legal construct rather than a corporeal being, cannot speak for itself.  In addition, organizations may be deposed by their managing agents because such agents are likely to respond to the organizations' requests, have an appropriate level of responsibility with respect to the matters in suit, and reasonably may be regarded as having the organizations' interests in mind.  These considerations apply equally to large corporations and much more modest organizations.  A two person partnership that entrusts responsibilities to a non-partner may be examined by that non-partner as long as the non-partner qualifies as a "managing agent" with respect to the matters involved in the litigation.

The present motion, however, presents the question whether an individual party to litigation, not an organizational party, may be required to produce his or her agent or managing agent for a deposition.  As the foregoing suggests, there are strong arguments for the proposition that the rules should so provide.  Chevron has not cited any authority in the 73 years since the adoption of the Federal Rules of Civil Procedure to support the proposition that an

individual is required to produce his or her agent or managing agent for a deposition.  Indeed, even

in cases involving organizational parties, courts have held that such organizations are not required

"to produce persons for deposition who are merely alleged to be in the party's control."[24]  Such

witnesses may be subpoenaed, assuming that they are within the subpoena power of the relevant

court.[25]  If they are located abroad, they often may be examined pursuant to letters rogatory or other

means.  But the failure of the Rules Advisory Committee to address this point in the entire history

of the Federal Rules of Civil Procedure makes improvisation unwise.

        While it is quite likely that these witnesses, as a matter of fact and law, are

within the control of the LAP Representatives, the Court declines to construe Rule 30 to permit it

to direct that the LAP Representatives produce them for deposition.  Whether Chevron would be

entitled to a missing witness charge or other relief at trial or in subsequent motion practice based on

the failure of the LAP Representatives to procure the witnesses' appearances will abide the event.

---

[24]

> See *Ethypharm S.A. France v. Abbott Lab.*, 271 F.R.D. 82, 91-92 (D. Del. 2010); *Honda Lease Trust v. Middlesex Mut. Assurance*, No. 3:05 CV 1426 (RNC), 2008 WL 3285242, at *3 (S.D.N.Y. Aug. 7, 2008); *In re Ski Train Fire of November 11, 2000 Kaprun Austria*, No. MDL 1428 (SAS) THK, 2006 WL 1328259, at*9 (S.D.N.Y May 16, 2006).

[25]

> *In re Ski Train*, 2006 WL 1328259, at *9.

12

*Conclusion*

For the foregoing reasons, plaintiff's motion to compel [DI 40] is denied.

SO ORDERED.

Dated:          June 28, 2011

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)