UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

                Plaintiff,

     -against-

MARIA AGUINDA SALAZAR, et al.,           11 Civ. 3718 (LAK)
                                  (Action No. 2)
                Defendants,

      -and-

STEVEN DONZIGER, et al.,

                Intervenors.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

                Plaintiff,

     -against-                        11 Civ. 0691 (LAK)
                                  (Action No. 1)
STEVEN DONZIGER, et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

Randy M. Mastro
Andrea E. Neuman
Scott A. Edelman
William E. Thompson
GIBSON, DUNN & CRUTCHER, LLP
*Attorneys for Plaintiff*

John W. Keker
Elliot R. Peters
Jan Nielsen Little
KEKER & VAN NEST, LLP
*Attorneys for Intervenor Donziger*

Julio C. Gomez
GOMEZ, ATTORNEY AT LAW LLC

Carlos A. Zelaya, II
F. Gerald Maples
F. GERALD MAPLES, PA
*Attorneys for Defendants Hugo Gerardo
Camacho Naranjo and Javier Piaguaje
Payaguaje*

LEWIS A. KAPLAN, *District Judge.*

An Ecuadorian court has entered a multibillion dollar judgment (the "Judgment") against Chevron Corporation ("Chevron") in an action brought by the 47 Lago Agrio plaintiffs (the "LAPs"), two of which, Camacho Naranjo and Piaguaje Payaguaje (the "LAP Representatives"), have appeared in this action.  Chevron now seeks, in addition to other relief, a declaration from this Court that the Judgment is not recognizable or enforceable.  The Court previously granted Chevron's motion for a preliminary injunction barring, *inter alia*, attempts to enforce the Judgment pending determination of the lawsuit and Chevron's motion to bifurcate its declaratory judgment claim for a separate trial.  The matter now is before the Court in Action No. 2 on motions of (1) Chevron for partial judgment on the pleadings regarding certain defenses asserted by the LAP Representatives or, in the alternative, to strike those defenses,[1] and (2) the LAP Representatives' motion for leave to amend their answer [2] The background of these actions has been fully explained in a number of previous opinions,[3] familiarity with which is assumed.

---

[1]

Action No. 2, DI 49.

[2]

*Id.* DI 42.

[3]

These include the following:

Decisions in proceedings brought under 28 U.S.C. § 1782:  *In re Chevron Corp.*, 709 F. Supp. 2d 283 (S.D.N.Y.) (*"Berlinger § 1782 I"*), *aff'd sub nom.*, *Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2010); *In re Chevron Corp.*, 736 F. Supp. 2d 773 (S.D.N.Y. 2010) (*"Berlinger § 1782 II"*); *In re Chevron Corp.*, 749 F. Supp. 2d 135 (S.D.N.Y.) (*"Donziger §1782 I"*), *fuller opinion*, *In re Chevron Corp.*, 749 F. Supp. 2d 141 (S.D.N.Y.) (*"Donziger §1782 II"*), *on reconsideration*, 749 F. Supp. 2d 170 (S.D.N.Y.) (*"Donziger § 1782 III"*), *aff'd sub nom.*, *Lago Agrio Plaintiffs v. Chevron Corp.*, Nos. 10-4341-cv, 10-4405-cv (CON), 2010 WL 5151325 (2d Cir. Dec. 15, 2010).

Decisions in this case:  *Chevron Corp. v. Donziger*, 768 F. Supp. 2d 581 (S.D.N.Y. 2011) (*"Donziger I"*) (granting preliminary injunction); *Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), 2011 WL 979609 (S.D.N.Y. Mar. 7, 2011) (*"Donziger II"*) (denying motion

Chevron argues that certain of the LAP Representatives' defenses are legally insufficient and that it is entitled to judgment on the pleadings on those defenses or, in the alternative that they be stricken.  The LAP Representatives, however, take the position that, even if the Judgment (1) was rendered by a legal system that does not afford impartial tribunals and the essentials of due process, (2) was procured by the fraud on the part of the LAP Representatives, (3) was entered despite a lack of personal jurisdiction over Chevron and (4) is wholly or partly penal in nature, and even if its (5) enforcement would violate public policy,  Chevron should not have a declaration that the Judgment is unenforceable and an injunction against its enforcement because Chevron also was guilty of misconduct in relation to the Ecuadorian litigation.

Except, perhaps, insofar as the LAP Representatives seek to avoid entry of an injunction on the basis of certain of their allegations, that assertion is untenable.

---

to transfer case to another judge); *Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), 2011 WL 1408386 (S.D.N.Y. Apr. 6, 2011) ("*Donziger III*") (denying stay pending appeal and other relief); *Chevron Corp. v. Donziger*, ___ F. Supp. 2d ____, 2011 WL 1465679 (S.D.N.Y. Apr. 15, 2011) ("*Donziger IV*") (granting separate trial and expedited discovery on claim for declaratory judgment); *Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), 2011 WL 1560926 (S.D.N.Y. Apr. 18, 2011) ("*Donziger V*") (denying motion to stay certain aspects of preliminary injunction pending appeal); *Chevron Corp. v. Donziger*, ___ F. Supp. 2d ___, No. 11 Civ. 0691 (LAK), 2011 WL 1747046 (S.D.N.Y. May 9, 2011) ("*Donziger VI*") (denying recusal motion); *Chevron v. Donziger*, No. 11 Civ. 0691 (LAK), 2011 WL 2150450 (S.D.N.Y. May 31, 2011) ("*Donziger VII*") (granting in part and denying in part motion to intervene); *Chevron Corp. v. Salazar*, No. 11 Civ. 3718 (LAK), 2011 WL 2326893 (S.D.N.Y. Jun. 14, 2011) ("*Salazar I*") (denying motion to stay pending intervention appeal); *Chevron Corp. v. Salazar*, No. 11 Civ. 3718 (LAK), 2011 WL 2581784 (S.D.N.Y. Jun. 24, 2011) ("*Salazar II*") (denying motion to stay discovery); *Chevron Corp v. Salazar*, ___ F. Supp. 2d ____, 2011 WL 2556046 (S.D.N.Y. Jun. 28, 2011) ("*Salazar III*") (denying motion to compel deposition ).

*Procedural Posture*

*The Filing of This Action and The Amended Complaint*

In anticipation of the entry of judgment in the Ecuadorian litigation, Chevron commenced Action No. 1 on February 1, 2011 against the LAPs and some of their agents and attorneys. The Judgment entered shortly thereafter, which in some part at least, prompted the filing of an amended complaint.

The amended complaint seeks, among other things, damages for alleged violations of the Racketeer Influenced and Corrupt Organizations Act, a declaration that the Judgment is neither recognizable nor enforceable because it was rendered in a legal system that does not afford appropriate protections and in any case was procured by fraud, and other relief. [4]

On April 15, 2011, the Court granted Chevron's motion for a separate trial on Count 9 of the complaint, the count that seeks declaratory and other relief with respect to the Judgment on grounds of non-recognizability and non-enforceability.[5] It further provided for expedited discovery, set a November 14, 2011 trial date, and stayed the remaining claims for adjudication following the resolution of Count 9. Five days later, Chevron amended the complaint.[6]

---

[4]

 The LAP Representatives are the only judgment creditors that have appeared and are defending against Chevron's claims. The other 45 LAPs and certain other defendants defaulted, and a certificate of default has been entered against them.

[5]

 *Donziger IV*, 2011 WL 1465679.

[6]

 Action No.1, DI 283.

 Insofar as that change in the pleading is pertinent here, it is only for the fact that Chevron dropped Donziger, the Law Offices of Steven R. Donziger, and certain others as defendants on Count 9. Donziger later sought leave to intervene as of right or, in the alternative, through permission of the Court.

5

*The Answer to the Amended Complaint, Chevron's Motion, and the Severance*

Both Donziger and the LAP Representatives filed answers to the amended complaint.[7] They include defenses of "unclean hands," *in pari delicto* ("IPD"), and fraud.  The underlying premise for each is the same – Chevron's alleged misconduct should bar relief in this action.

On May 31, 2011, Chevron moved, pursuant to Rules 12(h)(2) and 12(c) for partial judgment on the pleadings dismissing the unclean hands, IPD, and fraud defenses or, in the alternative, to strike them pursuant to Rule 12(f).   That motion remains pending and is one of the two motions now before the Court.

On the same day, the Court granted defendants' alternative requests to sever formally Count 9. This resulted in the opening of Action No. 2,[8] which includes only Count 9 of the amended complaint.  Although others are named defendants in Action No. 2, the LAP Representatives are the only defendants who have not defaulted and are defending this action.[9]

*The LAP Representatives' Motion for Leave to Amend Their Answer and Their Purported Amended Answer, Filed Without Leave*

On June 15, 2011, the LAP Representatives moved for leave to file an amended answer

---

[7]     *Id.* DI 307, DI 311.

[8]     *Donziger VII*, 2011 WL 2150450, at *1.

[9]     Donziger has been "permitted to intervene [in Action No. 2] for the limited purposes of (1) cross-examining witnesses or parties whose depositions are conducted by others solely on the questions whether the Judgment is not enforceable or recognizable because it was procured by fraud by Donziger, either individually or in concert with others, and (2) objecting to interrogatories, document requests, subpoenas for documents served on non-parties, and deposition questions, solely on the ground that the requested discovery would violate an evidentiary privilege personal to Donziger."  *Id.*, at *6.

to the amended complaint,[10] which is the second of the two motions now before the Court. Apparently without regard to that pending motion, they filed also, on June 21, 2011, a purported amended answer to the amended complaint.[11] The amended answer differs from the original answer to the amended complaint, so far as is relevant here, only with respect to the allegations of the unclean hands, IPD, and fraud defenses.

Chevron argues that the amended answer filed without leave on June 21, 2011 should be stricken and opposes the motion for leave to amend as untimely and on the ground that the changes in the unclean hands, IPD, and fraud defenses would be futile because they would not cure the deficiencies in those defenses in the original answer to the amended complaint.

The parties have briefed fully both Chevron's motion for partial judgment on the pleadings dismissing those defenses as they appear in the original answer and the legal sufficiency of those defenses as they appear in the proposed amended answer to the amended complaint.

*Discussion*

A.    *The Amended Answer Filed Without Leave Is A Nullity and Is Stricken*

For the sake of good order, the Court first addresses Chevron's request that the LAP Representatives' amended answer to the amended complaint,[12] filed while their motion for leave to amend was pending and without leave of court, be stricken.

Rule 15(a)(1) provides in relevant part:

---

[10]    Action No. 2, DI 42.

[11]    *Id.* DI 63.

[12]    *Id.*

"A party may amend its pleading once as a matter of course within:

> "(A) 21 days after serving it, or

> "(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."[13]

The purported amended answer to the amended complaint, filed on June 21, 2011 without leave of court, was filed more than 21 days after the service of the LAP Representatives' original answer to the amended complaint, which occurred on May 10, 2011, and therefore was not authorized by Rule 15(a)(1)(A).  Nor was that purported answer a "pleading . . . to which a responsive pleading [wa]s required."  It therefore was not authorized by Rule 15(a)(1)(B).

The filing of the June 21, 2011 amended answer filing without leave of court, as the LAP Representatives tacitly concede, was improper.  It will be stricken.


B.     *Leave to Amend the Answer to the Amended Complaint*

The LAP Representatives seek leave to amend their answer to the amended complaint. Chevron opposes the motion on the ground that it is untimely and, in any case, that the proposed amendments would be futile.  The Court turns now to that motion, initially to Chevron's contention that the motion is untimely.

The Scheduling Order in this case required that any amendments to, or motions for leave to amend, the pleadings be filed by May 13, 2011.[14]  The motion for leave to amend was not filed until June 15.   The LAP Representatives, however, cannot argue that they had inadequate time

---

[13]       Fed. R. Civ. P. 15(a)(1).

[14]       Action No. 1, DI 279.

to consider their affirmative defenses to this case, which is the only portion of their proposed amended pleading at issue here, before answering. The original complaint was served on February 1, 2011. The LAP Representatives were served through their agent and appeared through counsel on February 8.[15] Their time to respond to the original complaint repeatedly was extended, ultimately until April 4, 2011,[16] when they filed their first answer.[17] They then amended that answer as of right on April 11.[18]

Chevron then filed an amended complaint on April 20,[19] and the LAP Representatives filed their answer to it on May 10.[20] Their answer to the amended complaint therefore was their third answer in this case, which was filed more than three months after service of the original complaint.

All of the facts that underlie the proposed amendments that are the subject of the motion for leave were well known to the LAP Representatives months ago because the proposed new material is taken, nearly verbatim, from the declaration of Mr. Saenz (one of the LAP Representatives' Ecuadorian lawyers), which they filed in this Court on February 28, 2011, and from their contemporaneously filed supplemental papers in opposition to the preliminary injunction motion.[21] Indeed, the LAP Representatives, perhaps without meaning to do so, admit as much, arguing that leave

---

[15]      *Id.* DI 60, 75.

[16]      *Id.* DI 129, 213, 236.

[17]      *Id.* DI 259.

[18]      *Id.* DI 271.

[19]      *Id.* DI 283.

[20]      *Id.* DI 311.

[21]      Action No. 2, DI 78, at 3 (citing Action No. 1, DI 151, 152, 173 at 6).

to amend should be granted, in part because "the challenged defenses [are] based on information known presently — particularly where that information is already in the record and well-known to Chevron."[22]

In *Parker v. Columbia Pictures Industries*,[23] the Court of Appeals considered the tension between the liberal standard for amendment of pleadings under Rule 15 and Rule 16(b)(4), which provides that scheduling orders may be altered only for good cause shown.  It resolved that tension by holding "that despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause."[24]  And it went on to state that "a finding of 'good cause' depends on the diligence of the moving party."[25]

In this case, the LAP Representatives have not made an effort to establish "good cause" for the change in the deadline for amendment of the pleadings that their motion effectively seeks. Nevertheless, there is nothing really new in the relevant portions of the proposed amended complaint, so Chevron would not be prejudiced by its interposition.  Accordingly, the Court sees no harm if the proposed amended answer were allowed notwithstanding the failure to seek leave to file it within the period allowed by the scheduling order.

That leaves the question whether leave to amend nevertheless should be denied on the ground of futility.  But there is no reason to deal with the question of the sufficiency of the unclean

---

[22] LAP Reps. Mem. [DI 38] at 26-27 (footnote omitted).

[23] 204 F.3d 326 (2d Cir. 2000).

[24] *Id.* at 340.

[25] *Id.*

hands, IPD, and fraud defenses in that context in light of the facts that (1) these defenses are not materially different in the proposed amended answer than they were in the original, and (2) the parties have fully briefed that question both with respect to the original answer and the proposed amended answer.  Accordingly, the motion for leave to amend will be granted, and the Court will treat Chevron's motion for partial judgment on the pleadings dismissing or to strike those defenses as applicable to the amended answer to the amended complaint.[26]

C.      *The Motion to Dismiss or Strike the Unclean Hands, IPD, and Fraud Defenses*

Under Rule 12(h)(2), a party may bring a motion for "failure . . . to state a legal defense to a claim" under Rule 12(c).  Rule 12(c) governs motions for judgment on the pleadings.[27]  When deciding a Rule 12(c) motion, the Court applies the same standard applied to a Rule 12(b)(6) motion to dismiss.[28]  The Court therefore views the pleadings in the light most favorable to, and draws all

---

[26]

See *Cullen v. City of New York*, No. 07 CV 3644 (CBA)(JMA), 2011 WL 1578581 (E.D.N.Y. Apr. 26, 2011) (treating proposed amended complaint as operative complaint in deciding motion to dismiss); *Smith v. Chase Manhattan Bank*, No. 97 CIV. 4507(LMM), 1998 WL 642930, at *1 (Sept. 18, 2998) (analyzing motion to dismiss based on proposed amended complaint); *McLoughlin v. Altman*, No. 92 Civ. 8106(KMW), 1993 WL 362407, at *3 (S.D.N.Y. Sept.13, 1993) (deciding motion to dismiss based on a proposed amended pleading because it represented "represent[ed] plaintiff's best effort to save her action from dismissal")*, aff'd*, 22 F.3d 1091 (2d Cir. 1994).

[27]

"After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).

[28]

See *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (citing *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)).  *See also Burnette v. Carothers*,192 F.3d 52, 56 (2d Cir. 1999); *Nat'l Ass'n of Pharm. Mfgs., Inc. v. Ayerst Labs., Div. of/and Am. Home Prods. Corp.*, 850 F.2d 904, 909 n. 2 (2d Cir. 1988) ( "Pursuant to Fed. R. Civ. P.  12(h)(2) . . . a defense of failure to state a claim may be raised in a Rule 12(c) motion for judgment on the pleadings, and when this occurs the court simply treats the motion as if it were a motion to dismiss.").

reasonable inferences in favor of, the non-moving party.[29]  Judgment is appropriate if, based on the

pleadings, the moving party is entitled to judgment as a matter of law.

> The LAP Representatives make essentially two arguments in support of the proposition

that the challenged defenses of unclean hands, IPD, and fraud should stand – viz., that (1) the defenses,

if proved, would defeat Chevron's claims on their merits even if Chevron otherwise would be entitled

to relief and, in any case,[30] (2) a declaratory judgment is a discretionary and equitable remedy, and

Chevron's alleged misconduct, if established, should cause the Court to decline to grant declaratory

relief without regard to the underlying merits.[31]  The Court will deal first with the contention that

alleged misconduct by Chevron, if established, would foreclose it from maintaining a declaratory

judgment action in view of the discretionary and allegedly equitable nature of that remedy and then

turn to the remaining contention.

1.       *A Plaintiff's Misconduct In Relation to the Underlying Dispute Does Not
Foreclose A Declaratory Judgment*

> The LAP Representatives contend first that unclean hands, IPD, and fraud are defenses

to any declaratory judgment action because the declaratory remedy is discretionary and supposedly

equitable[32] in nature.  The argument ignores the nature and purpose of declaratory judgment actions

---

[29]

> *See Hayden*, 594 F.3d at 160; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994); *Madonna v. United States*, 878 F.2d 62, 65 (2d Cir. 1989).

[30]

> LAP Reps. Mem., at 10-17.

[31]

> *Id.* at 17-21.

[32]

> Despite the LAP Representatives' rhetoric, it is clear beyond any doubt that a declaratory judgment is not an equitable remedy, at least in the usual sense of that term.  *E.g., Diematic Mfg. Corp. v. Packaging Industries, Inc.*, 516 F.2d 975, 978 (2d Cir.), *cert. denied*, 423 U.S.

and rests, at least in part, on an erroneous premise.

The purpose of the declaratory judgment remedy was ably stated by another judge of this Court not long ago:

> "The [declaratory judgment] remedy was designed as a means to facilitate early and effective adjudication of disputes at a time when a controversy, though actual, may still be incipient, but before it expands into larger conflict. The action generally commences at the instance of a party facing potential liability to another who may have an accrued claim at that time but has not yet commenced coercive litigation to pursue relief. By enabling the parties to narrow the issues and differences and expedite resolution of their conflict, the [declaratory judgment] procedure helps to minimize the prolongation of disputes, reduce the risk of loss and avoid the unnecessary accumulation of damages.

> "Declaratory relief thus not only functions as an adjudicatory device but serves a preventive purpose as well. It permits the court in one action to define the legal relationships and adjust the attendant rights and obligations at issue between the parties so as to avoid the dispute escalating . . . .   In this manner, the statute can avert greater damages and multiple actions and collateral issues involving not only the original litigants but potentially other third parties. So employed, the remedy promotes several utilitarian values in the adjudication of disputes: speed, economy and effectiveness."[33]

In keeping with that purpose, it long has been established that (1) a complaint for a declaratory judgment states a sufficient claim for relief as long as it alleges an actual controversy in respect of which a judicial determination of the parties' respective rights would be useful in clarifying or settling legal issues and finalizing the controversy,[34] and (2) the court in a proper declaratory judgment action "should exercise its power to declare the rights and legal relations of the parties *whatever they may*

---

913 (1975) ("a declaratory judgment action is a creature of statute, and therefore is 'neither fish nor fowl, neither legal nor equitable'" (citing *American Safety Equip. Corp. v. J.P. Maguire & Co.*, 391 F.2d 821, 824 (2d Cir. 1968)).

[33]   *Dow Jones & Co. v. Harrod's, Ltd.*, 237 F. Supp. 2d 394, 405 (S.D.N.Y. 2002) (footnote omitted), *aff'd*, 346 F.3d 357 (2d Cir. 2003).

[34]   *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005); *Kidder, Peabody & Co., Inc. v. Maxus Energy Corp.*, 925 F.2d 556, 562 ( 2d Cir. 1991).

*be.*"[35]  Thus, while unclean hands, IP, or fraud – like the statute of limitations, a release or a host of

other affirmative defenses –  in appropriate circumstances may require or warrant a declaration of

rights *concerning the underlying dispute* that is unfavorable to a plaintiff who seeks declaratory relief,

they have no proper role in determining whether a court should entertain an action to determine the

respective rights of the parties, "whatever they may be." To put it another way, the question whether

a party seeking a negative declaration, as Chevron does here, has been guilty of some form of

misconduct is unrelated to the question whether a declaratory judgment would serve a useful purpose

in settling disputed legal relations or any of the other considerations that inform the exercise of

discretion in determining whether declaratory relief is appropriate. Such misconduct therefore has no

bearing on the availability of declaratory relief, whatever its effect with respect to which side should

prevail on the merits of the underlying controversy.  The LAP Representatives have cited no authority

to the contrary.

To be sure, declaratory relief is not available as a matter of right.  It lies in the

discretion of the court.[36]  But the factors pertinent to the exercise of that discretion are responsive to

the underlying purpose of the declaratory judgment mechanism – to provide "a means by which rights

and obligations may be adjudicated in cases involving an actual controversy that has not reached the

stage at which either party may seek a coercive remedy and in cases in which a party who could sue

---

[35]

 *E.g., Rockland Power & Light Co. v. City of New York,* 289 N.Y. 45, 51 (1942) (emphasis added).  *See also Fort Howard Paper Co. v. William D. Witter, Inc.,*787 F.2d 784 (2d Cir. 1986) ("a declaratory judgment action should be entertained 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'") (quoting *Broadview Chemical Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969)).

[36]

 *See, e.g., N.Y. Times v. Gonzales,* 459 F.3d 160, 165-66 (2d Cir.2006).

for coercive relief has not yet done so."[37]   Thus, in determining whether to entertain actions for declaratory judgments, courts consider:

> "(I) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (ii) whether a judgment would finalize the controversy and offer relief from uncertainty; (iii) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (iv) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (v) whether there is a better or more effective remedy."[38]

Misconduct bearing on which side should prevail with respect to the dispute that is the subject of the declaratory action is not within or comparable to any of these considerations.

The Court therefore turns to the questions whether the affirmative defenses, if proved, would defeat Chevron's claim that it is entitled to a determination that the Judgment is neither recognizable nor enforceable and to an injunction against its enforcement and, if so, whether those defenses are pleaded sufficiently.

### 2.   *The Unclean Hands Defense Does Not Apply to the Declaratory Judgment Claim*

The unclean hands defense contends, broadly speaking, that Chevron engaged in various sorts of alleged misconduct in Ecuador in relation to the Lago Agrio litigation in efforts to procure a favorable result – efforts that, assuming as the Court does for purposes of this motion that they were made, failed with respect to acquiring a Judgment in its favor.   The unclean hands defense has no application to Chevron's declaratory judgment claim for two reasons.

---

[37]

10B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2751 (3d ed. 2011).

[38]

*Gonzales*, 459 F.3d at 167 (internal quotation marks omitted) (citing *Dow Jones*, 346 F.3d at 359–60).

>    (a)    *The Claim in Respect of Which Chevron Seeks a Declaration is Legal Rather than Equitable*

Unclean hands is a defense only to equitable, not legal, claims.[39]  Accordingly, the first question is whether Chevron's claim is equitable or legal in nature.

The fact that this is an action for a declaratory judgment has no bearing on this issue, as a declaratory judgment action is neither inherently equitable nor inherently legal.  It is simply a procedural mechanism that provides a form of relief previously unknown both at law and in equity.[40] The nature of the declaratory judgment action depends on the character of the underlying claim – "[i]f the declaratory judgment action does not fit into one of the existing equitable patterns but is essentially an inverted law suit an action brought by one who would have been a defendant at common law," it

---

[39]

*Aetna Cas. and Sur. Co. v. Anierro Concrete Co.*, 404 F.3d 566, 607 (2d Cir. 2005) (affirming district court holding to that effect); *Dayton Superior Corp. v. Marjam Supply Co.*, No. 07 CV 5215 (DRH) (WDW), 2011 WL 710450, at *18 (E.D.N.Y. Feb. 22, 2011); *Uto v. Job Site Servs., Inc.*, 269 F.R.D. 209, 213 (E.D.N.Y. 2010); *Roswell Capital Partners LLC v. Alternative Const. Technologies*, No. 08 Civ. 10647 (DLC), 2009 WL 222348, at *13 n.12 (S.D.N.Y. Jan. 30, 2009);  *RST (2005) Inc. v. Research in Motion Ltd.*, No. 078 Civ. 3737 (VM), 2008 WL 5416379, at *8 (S.D.N.Y. Dec. 17, 2008); *Gala Jewelry, Inc. v. Harring*, No. 05 Civ. 7713 (GEL), 2006 WL 3734202, at *2 n.3 (S.D.N.Y. Dec. 18, 2006) (Lynch, J.) ("this circuit restricts the 'unclean hands' doctrine to suits in equity, thereby categorically defeating defendant's attempted defense in this suit at law"); *SC For. Econ. Ass'n Technostryoyexport v. Int'l Dev. and Trade Servs., Inc.*, No. 03 Civ. 5562 (JGK), 386 F. Supp. 2d 461, 477 (S.D.N.Y. 2005).

[40]

*See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937) ("[T]he operation of the Declaratory Judgment Act is procedural only."); *In re Joint E. and S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) (same); *Luckenbach S.S. Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963) ("Declaratory relief is a mere procedural device by which various types of substantive claims are vindicated."); *Union Labor Life Ins. Co. v. Olsten Corp. Health and Welfare Benefit Plan*,  617 F. Supp. 2d 131, 150 (E.D.N.Y. 2008) (Declaratory Judgment Act is a "procedural device" that does not allow plaintiffs to avoid requirements imposed by substantive law) (citing *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1428 (Fed. Cir.1997))) .

is legal in nature.[41]  "But if the action is the counterpart of a suit in equity," it is equitable.[42]  In making this determination, which usually arises with respect to whether there is a right to a jury trial, a court examines first "whether the action would have been deemed legal or equitable in 18th century England" and, second, whether the remedy sought is legal or equitable.[43]  It then balances the two, "giving greater weight to the latter."[44]

In this case, Chevron seeks a declaration that the Judgment is neither enforceable nor recognizable.  It thus anticipates an action or actions by the LAP Representatives and the Amazon Defense Front to enforce and collect money damages upon the Judgment.  While the issue appears not to have been much litigated, it seems beyond serious question that "[a]ction to recover a money judgment on a foreign judgment . . . is clearly an action at law."[45]  The fact that New York and many other states have supplanted the traditional common law action for enforcement of a foreign money judgment with the updated statutory mechanism embodied in the Uniform Act for the Recognition of Foreign Country Money Judgments, codified in New York as Article 53 of the CPLR, does not change the analysis.  As the Supreme Court recognized in holding that the right to jury trial attaches to "a statutory cause of action that, although unknown at common law, is analogous to common-law causes

---

41
    *Owens-Illinois, Inc. v. Lake Shore Land Co.*, 610 F.2d 1185, 1189 (7th Cir. 1979).

42
    *Id.*

43
    *Pereira v. Farace*, 413 F.3d 330, 337 (2d Cir. 2005) (internal quotation marks and citations omitted).

44
    *Id.* (internal quotation marks and citations omitted).

45
    *Little v. Little*, 127 Mont. 152, 155-56, 259 P.2d 343, 344 (1953)

that were tried before juries,"[46] such suits involve "*legal* rights . . . in contradistinction to those where equitable rights alone were recognized and equitable remedies administered."[47]  As an unclean hands defense, even if sufficiently pled, applies only to equitable claims and remedies, the LAP Representatives' unclean hands defense does not apply to Chevron's claim for a declaration that the Judgment is neither recognizable nor enforceable.

>    (b)    *Any Unclean Hands on Chevron's Part Would Be Irrelevant to the*
>            *Issue on Which A Declaration is Sought*

Even putting aside the legal as opposed to equitable nature of the specific claim in respect of which Chevron seeks declaratory relief, the equitable defense of unclean hands would be inapplicable with regard to that claim.[48]

As already mentioned, the declaratory judgment remedy is no more than a procedural mechanism that permits judicial resolution of an actual controversy before any party commences a traditional action for coercive relief.  The party asserting a right (Party A) against another has whatever burdens that it would have if it sued for coercive relief notwithstanding that it is a defendant in an action for a declaration by another party (Party B) that Party A has no such right.[49]  For example, if

---

46

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 729 (1999) (citing *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 347-48 (1998)); *see Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 40-42 (1989).

47

*Granfinanciera*, 492 U.S. at 41 (quoting *Parsons v. Bedford*, 8 Pet. 433, 447 (1830) (internal quotation marks omitted) (emphasis in original)).

48

*See supra* notes 34 - 37 and accompanying text.

49

10B WRIGHT, § 2768 ("the requirements of pleading and practice in actions for declaratory relief are exactly the same as in other civil actions").

Party B sues Party A for a declaration that B does not owe A $1,000 on a promissory note allegedly made by B on the ground that B never made the alleged note, the existence of which would be an element of A's case if A sued on the note, A would have the burden of proving the making of the note despite the fact that B was the plaintiff in the declaratory judgment action. Likewise, if B admitted the making of the note, but contended that it did not owe A the $1,000 because it had paid the note, because the obligation had been released, or on some other basis in avoidance, B would have the burden of proving its defense in the declaratory judgment action because B would have had that burden in an action by A to recover on the note.[50]   Likewise, if A asserted the statute of limitations in an effort to bar the B's declaratory judgment action, the relevant statute would be that applicable to A's underlying claim on the note. "So long as the claim [by A] can be made, its negative can be asserted" by B.[51]   Thus, nothing concerning the pleading, proof and trial of the issue in respect of which a declaration is sought changes because that issue arises in the context of a declaratory judgment action.

Applying this principle to the present case is straightforward. The LAPs claim that Chevron owes them more than $18 billion on the Ecuadorian Judgment. In an action for coercive relief, the LAPs would be obliged to prove the Ecuadorian Judgment if its existence or authenticity

---

[50]

See, e.g., Fireman's Fund Ins. Co. v. Videfreeze Corp., 540 F.2d 1171, 1176 (3d Cir. 1976) (burden of proof in declaratory judgment action is on party that asserts the affirmative on issue); Schoeps v. Museum of Modern Art, 594 F. Supp. 2d 461, 463 (S.D.N.Y. 2009) ("In an action for declaratory judgment, the burden of proof rests on the party who would bear it if the action were brought in due course as a claim for non-declaratory relief.") (citing Preferred Acc. Ins. Co. .of N.Y. v. Grasso, 186 F.2d 987, 990-91 (2d Cir. 1951) (Clark, J.)) (burden of proof in declaratory judgment action borne by party asserting the affirmative of the issue)).

[51]

Luckenbach, 312 F.2d at 548, 549 (statute of limitations in declaratory judgment action applies "not to the form of relief, but to the [underlying] claim on which the relief is based").

were disputed and, depending upon the resolution of a question that need not now be resolved, perhaps also that there is no mandatory basis for non-recognition and non-enforceability.[52]  Chevron would have available to it all of the affirmative defenses afforded by law, including its contentions that the Judgment was procured by fraud.  But the LAP Representatives do not even suggest, let alone provide any support for, the proposition that unclean hands on the part of Chevron, even if proved, would be a basis for stripping Chevron of defenses afforded to it by law in an action by the LAPs to enforce the Judgment.  In consequence, any unclean hands by Chevron would not even be relevant to the question whether Chevron is entitled to a declaration that the Ecuadorian Judgment is not entitled to recognition or enforcement.  Indeed, a moment's reflection shows that the LAP Representatives contrary position is baseless.  If a judgment is flawed by the inadequacies of the legal system that rendered it, because it was procured by fraud, because the rendering forum lacked jurisdiction over the defendant or for some other reason, it is difficult to see why its flaws should be overlooked by any country in which enforceability of the flawed judgment becomes an issue because the losing party made unsuccessful but improper attempts to avoid its entry.  That country or those countries have an independent interest in seeing to it that their courts and institutions are not made tools for the enforcement of fundamentally flawed judgments of other nations.

> *(c)      The Unclean Hands Defense Applies to the Prayer for an Injunction*

Chevron seeks, in addition to a declaratory judgment, an injunction restraining enforcement of the Judgment.  That is a traditional equitable remedy to which an unclean hands

---

[52]      *See Flame S.A. v. Industrial Carriers, Inc.*, __ F. Supp. 2d ___, No. 10 Civ. 9557 (LAK), 2011 WL 1450384, at *2 (S.D.N.Y. Apr. 13, 2011) (recognizing existence of issue as to whether judgment creditor or judgment debtor has burden of proof with respect to mandatory grounds of non-recognition and non-enforceability) (citing cases).

defense is pertinent and, in an appropriate case, potentially dispositive. Indeed, Chevron concedes that unclean hands would be "among 'the factors the court must consider when deciding whether to exercise its discretion and grant an injunction.'"[53] It nevertheless argues that the unclean hands defense in the proposed amended answer to the amended complaint is insufficient because Chevron's alleged conduct is not sufficiently related to the question at issue here – the enforceability of the Judgment obtained by the LAPs – and because the proposed defense does not allege injury to the LAPs.[54]

> (d)    *Portions of the Unclean Hands Defense May Be Sufficiently Related*

Chevron and the LAP Representatives agree that unclean hands may not be "based merely on the generalized odiousness of the plaintiff"[55] but that it is cognizable where the party seeking equitable relief is guilty of "[a]ny willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct."[56] They both rely upon *Specialty Minerals, Inc. v. Pluess-Staufer AG*,[57] which states that factual allegations supporting unclean hands must have an "immediate and necessary relation to the equity that plaintiff seeks in respect of the matter in litigation." The Court therefore applies that standard to the allegations of the proposed unclean hands defense.

---

[53]      Pl. Mem. [DI 78] at 10 (quoting *Dunlop-McCullen v. Local 1-S*, 149 F.3d 85, 90 (2d Cir. 1998)).

[54]      *Id.* at 11-13.

[55]      LAP Reps. Mem., at 11.

[56]      395 F. Supp. 2d 109, 112 (quoting *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806,  815 (1945) (internal quotation marks omitted); Pl. Mem., at 11.

[57]      395 F. Supp. 2d 109, 112 (S.D.N.Y. 2005); Pl. Mem., at 11; LAP Reps. Mem., at 11.

The proposed amended answer alleges the following:

1.  In or about 1993, and in any case prior to both the *forum non conveniens* dismissal of the *Aguinda* case in 2001[58] and the commencement of the Lago Agrio case in 2003, Chevron communicated with Ecuadorian officials in an effort to enlist Ecuadorian government support to bring about the *forum non conveniens* dismissal of the *Aguinda* case and to ensure that the case, if dismissed in the United States and refiled in Ecuador, would be defeated.[59]

2.  In order to obtain the *forum non conveniens* dismissal of the earlier *Aguinda* action, Texaco and "ChevronTexaco" allegedly promised the Southern District and the Second Circuit that it would not object to jurisdiction in Ecuador, which the LAP Representatives characterize as "a bald-faced lie," and then asserted that the Ecuadorian court in which the Lago Agrio case later was filed "lacked jurisdiction over the company."[60]

3.  In 2000, an expert submitted to the Southern District in support of a *forum non conveniens* dismissal, allegedly "on behalf of Chevron,"[61] an affidavit that the plaintiffs in the New York cases "can obtain from Ecuadorian civil courts impartial and independent justice without corruption or interference from the

---

[58] *Aguinda v. Texaco, Inc.*, 142 F.Supp. 2d 534 (S.D.N.Y.,2001), *aff'd*, 303 F.3d 470 (2d Cir. 2002).

[59] Action No. 2, DI 42, Att. 1, at 91-93.

[60] *Id.* at 93.

[61] *Id.* at 93.

military or any other public or private entity."  More than five years later, it is alleged, unnamed Chevron affiliates used influence over and lied to the Ecuadorian military to block the collection of scientific evidence at a particular site by leading the military to believe that there was a security threat at the site and thus obtained, under false pretenses, a military report to the court that warned of a security threat at that site and led the court to cancel that inspection.[62]

4.      Chevron allegedly orchestrated a videotaped "sting" operation against the then-presiding Ecuadorian judge that was designed to create the appearance that the judge was implicated in a bribery scheme.[63]

5.      Chevron operated a sham laboratory under the name of a legitimate operation to analyze samples taken in connection with the Lago Agrio trial.[64]

6.      Chevron filed too many motions and otherwise engaged in "procedural misconduct designed to stonewall the Lago Agrio Litigation, including the harassment of expert witnesses and threats of criminal sanctions against the judge in order to coerce him to rule in Chevron's favor."[65]

7.      Chevron was guilty of misconduct in relation to the U.S. Section 1782 proceedings in that it allegedly "attempt[ed] to influence witnesses . . . in an

---

[62]     *Id.* at 93-96.

[63]     *Id.* at 96-100.

[64]     *Id.* at 100-01.

[65]     *Id.* at 101-04.

effort to obtain documents and testimony" and "engaged in a smear campaign [in an attempt] to induce clients of the [LAPs'] legal representatives and consultants to terminate their relationships with those entities" in order to impair their ability to litigate the Ecuadorian case.[66]

The Court begins by rejecting outright those of the LAP Representatives' allegations that, even if true, would not even approach making out an unclean hands defense. This disposes of a good deal of the verbiage relating to the efforts to obtain a *forum non conveniens* dismissal of the *Aguinda* case many years ago. The issue in suit here is whether the 2011 judgment that the LAPs and the ADF obtained in Ecuador, in a lawsuit begun in 2003, was rendered in a system that did not afford fair tribunals and the essentials of due process, was procured by fraud, or is unenforceable for other reasons. The allegations of misconduct relating to obtaining the *forum non conveniens* dismissal before the Ecuadorian litigation even began simply do not have the requisite "immediate and necessary relation to the equity that plaintiff seeks in respect of the matter in litigation."[67] In addition, many of those allegations are contradicted by U.S. court record or otherwise are demonstrably false.[68] Much

---

[66]
    *Id.* at 104.

[67]
    *Specialty Minerals, Inc.*, 395 F. Supp. 2d at 112.

[68]
    In relation to paragraph (2) above, Chevron never promised the Southern District that *Chevron* would not object to jurisdiction in Ecuador. It never was a party to the New York litigation, and it did not even acquire the stock of Texaco – which made such a representation, but the separate corporate existence of which must be recognized unless and until sufficient reason for doing otherwise is made out – until after Judge Rakoff twice dismissed the litigation on *forum non conveniens* grounds. After Chevron acquired the stock of Texaco, Texaco filed a brief in the Court of Appeals that bore the names of its outside counsel and, in addition, those of two in-house attorneys apparently employed by Chevron, then and briefly known as ChevronTexaco. The fact that the names of in-house lawyers employed by Chevron appeared on a brief filed not on behalf of Chevron, but its subsidiary Texaco, did not transform anything said in that brief into a promise or representation *by Chevron*, unless there was a basis for piercing the corporate veil. And it did not make a

the same can be said for the allegations relating to the U.S. Section 1782 proceedings and the alleged smear campaign.

That leaves many of the allegations of misconduct in, and in relation to, the Ecuadorian litigation itself[69] – the claims of thwarting a site inspection, of attempts to frame one judge and to pressure another, of the use of a sham laboratory, and of alleged harassment of expert witnesses. The Court therefore addresses Chevron's contention that the LAP Representatives have not alleged that they were injured by any of this alleged misconduct and that such injury is an essential element of the defense.

Certainly the proposed amended answer asserts no injury from any of this alleged misconduct. There is no allegation that the proposed site inspection cancellation was based on an allegedly trumped up claim of a security concern had any bearing at all on the result in Ecuador or, for that matter, that the site inspection did not later take place or that it was not abandoned for other reasons. There is no suggestion that either of the judges who were targets of Chevron's alleged

---

statement, even if it properly were attributable to Chevron, that *Texaco* would not object to jurisdiction in Ecuador a representation that Chevron – which to that point was not a defendant even in New York – would not do so if it was sued in Ecuador. As far as this Court is aware, none of the LAPs ever has asserted before this Court or the Court of Appeals that there was a basis for piercing the veil, instead obscuring the issue by attributing Texaco's statements and actions to Chevron without explanation.

In relation to paragraph (3) above, the 2000 affidavit to which the LAP Representatives refer was filed before Texaco's shares were acquired by Chevron and therefore could not have been filed  "on behalf of Chevron," as the LAP Representatives' counsel asserts in the proposed pleading.

[69]    The Court does not regard the allegation of the filing of too many motions, of allegedly baseless motions, of discovery delay, and the like in the Ecuadorian case as remotely approaching a sufficient claim of unclean hands. As the LAP Representatives acknowledge, unclean hands requires "'[a]ny willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct.'" LAP Reps. Mem., at 11 (quoting *Precision Instrument*, 324 U.S. at 185).  The proposed amended answer does not  approach that standard.

improper attentions was influenced to the LAPs' detriment in any way.[70]  There is no allegation that could support a finding that the LAPs were injured by Chevron's alleged use of a misleading name for a laboratory.  Thus, the motion squarely presents the question whether injury to the party asserting the defense of unclean hands in consequence of the inequitable conduct of its adversary is an essential element of the defense.

There is, to be sure, language in the cases suggesting one result or the other.  In *PenneCom B.V. v. Merrill Lynch & Co.,*[71] for example, the Circuit stated that "[c]ourts apply the maxim requiring clean hands where the party asking for the invocation of an equitable doctrine has committed some unconscionable act that is 'directly related to the subject matter in litigation' *and has injured the party attempting to invoke the doctrine*,"[72] language that supports Chevron's position.  On the other hand, the LAP Representatives point to cases that describe the defense of unclean hands without reference to any requirement of injury.  Neither side, however, has pointed to a single case, the result of which turned on whether injury is required or even discussed the issue in any depth.

Very early in its exposure to the controversy of which this case is only the latest part, this Court made clear that it does not "for a minute assume *a priori* that anyone's hands in this matter

---

[70]

The LAP Representatives' memorandum suggests that the judge who was the target of the alleged "sting" operation was disqualified or removed from the case and that this delayed its final disposition.  Def. Br. (DI 38) at 16-17.  Not only does this allegation not appear in the pleading, but any inference of injury would be purely speculative, as the assumption that the outcome of the case would have been equally favorable to the LAPs had it been decided by that judge or even earlier in time is unsupported by any factual allegations.

[71]

372 F.3d 488 (2d Cir. 2004) (emphasis supplied).

[72]

*Id.* at 493 (quoting *Weiss v. Mayflower Doughnut Corp.,* 1 N.Y.2d 310, 316 (1956)).

are clean."[73]  As it said on another occasion, "for all I know, both sides are behaving corruptly" in

Ecuador.[74]  In all the circumstances, the better course of action is not to attempt to decide this question

in a vacuum.  Accordingly, Court, at least for the present motion, declines to dismiss the defense of

unclean hands to the extent it is (1) based only on the allegations of misconduct in or in relation to the

Lago Agrio litigation that are enumerated above and (2) asserted with respect only to the issue whether

Chevron, if it otherwise prevails, would be entitled to the equitable remedy of an injunction.[75]

### 3.      The In Pari Delicto Defense Has No Bearing Here

The LAP Representatives' thirty-first defense incorporates by reference its unclean

hands and fraud defenses, the latter discussed below, and asserts in conclusory terms that Chevron

attempted to avoid the entry of judgment against it in Ecuador by improper means such as lobbying

the Ecuadorian government, corrupting and intimidating judges, and abusing process.[76]  Although IPD,

unlike unclean hands, is a defense to a legal claim in appropriate circumstances,[77] it has no proper

application here.[78]  In any case, the LAP Representatives have not adequately pleaded the defense.

---

[73]

    *Donziger VI*, 2011 WL 1747046, at n.64.

[74]

    *Id.* at *10.

[75]

    The Court leaves for later determination the question whether, assuming that any party is entitled to a jury trial of issues of fact on the declaratory judgment claim,  the unclean hands issues should be tried separately to the court alone.

[76]

    DI 42, Att. 1, at 104-6.

[77]

    *See, e.g.*, *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 138 (1968).

[78]

    As an initial matter, IPD, even if properly pleaded and proved, is not pertinent to whether a court should entertain a declaratory judgment action and decide the merits of the

IPD is "[t]he principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing."[79]   The phrase actually is an abbreviation of the longer statement, "*in pari delicto potior est conditio defendentis*: 'In a case of equal or mutual fault . . . the position of the [defending] party . . . is the better one.'"[80] In the typical action for coercive relief, "the defense prohibits plaintiffs from recovering damages *resulting from their own wrongdoing*"[81] where the plaintiff's "wrongdoing [is] at least substantially equal to that of the defendant."[82] Its typical application is well illustrated by the Second Circuit's decision in *BrandAid*.[83]

BrandAid, a company in some financial distress, wished to raise capital.  Cyberian expressed interest in purchasing $21 million of BrandAid common stock.  Based on Cyberian's false assurances that Cyberian had the money and that it had no intention to changes BrandAid's board of

---

underlying dispute, although it of course may have a bearing in a proper case on which way the underlying dispute is resolved.  This point was been discussed previously, and there is no need to repeat the prior discussion here.  *See supra* notes 34 - 37 and accompanying text.

[79]

BLACK'S LAW DICTIONARY at 862 (9th ed. 2009).

[80]

*Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (citing BLACK'S LAW DICTIONARY at 711 (5th ed. 1979)).

[81]

*Nisselson v. Kernout*, 469 F.3d 143, 151 (1st Cir. 2006) (emphasis supplied).

[82]

*BrandAid Mktg. Corp. v. Biss*, 462 F.3d 216, 218 (2d Cir. 2006).

As previously discussed, in a declaratory judgment case, a court for most purposes looks through the declaratory judgment mechanism to apply the legal principles and rules that would govern had the action brought by the defendant for coercive relief.  Thus, in this case, one for most purposes considers these matters as if the LAP Representatives had sued Chevron on the Judgment.  That being the case, Chevron should be regarded for purposes of the IPD as the defending party and thus the party entitled to prevail should both sides be equally at fault.

[83]

*Id.*

directors, BrandAid issued the shares, which it placed in escrow for release to Cyberian upon its payment of the $21 million.  Cyberian failed to come up with the money, but it eventually sought to effect a "cashless takeover" by purportedly voting the escrowed shares to remove BrandAid's officers and directors and appoint new ones.

BrandAid promptly sued Cyberian for breach of contract and fraud.  Cyberian counterclaimed, alleging that Cyberian has misled it as to the value of the company in inducing it to contract to purchase the shares.  After a brief trial, the district court ruled for Cyberian on the ground that BrandAid's alleged fraud with respect to the value of the company gave Cyberian an IPD defense to BrandAid's claims.  But the Court of Appeals reversed on each of two independent grounds.  It held, first, that:

> "Whatever misrepresentations BrandAid may have made about its condition, there is no suggestion that this in any way caused Cyberian to use fraud and other unlawful conduct to attempt its purchase and hostile takeover. But it is this fraud and other chicanery on which BrandAid's claims are premised."[84]

Second, it held that BrandAid's culpability "pale[d] in comparison to" that of Cyberian because it had disclosed its financial affairs in SEC filings even if it had not be entirely straightforward in its direct negotiations with Cyberian.[85]  Accordingly, BrandAid's "wrongdoing [was not] at least substantially equal to that of the defendant."[86]

The application of these principles here is straightforward.  Chevron seeks a negative declaration of non-recognition and non-enforceability with respect to a Judgment procured by the

---

[84]

      *Id.* at 218.

[85]

      *Id.* at 219.

[86]

      *Id.*

LAPs – allegedly by fraud – in a system that allegedly does not afford fair tribunals or the essentials of due process.  The Judgment allegedly was rendered in the absence of personal jurisdiction and, in at least some respects, allegedly is of a penal character and unenforceable for other reasons.  The Court assumes *arguendo* for purposes of these motions that the LAP Representatives' allegations of Chevron misconduct are true.  But even on that assumption, there is nothing in the proposed amended answer that suggests that Chevron's misconduct caused the harm with respect to which Chevron seeks relief – the entry of the disputed Ecuadorian judgment.  Just as in *BrandAid,* the alleged misconduct by the declaratory judgment plaintiff did not lead to the harm it complained of – in BrandAid's case the fraudulent attempt by Cyberian to vote the stock for which it had not paid and in this case the LAP Representatives' improper procurement of a flawed judgment.  And even if one could infer some causal connection between the alleged Chevron misconduct and the LAPs' procurement of the Judgment, there certainly is nothing in the proposed amended answer that would permit the inference that the alleged misconduct by Chevron was equally or more responsible for the entry of an $18 billion judgment *against Chevron* than any alleged misconduct by the LAPs and their agents.

### 4.    Fraud

The proposed amended answer alleges that Chevron was guilty of fraud in that it brought Section 1782 proceedings in which it sought discovery of alleged misbehavior in Ecuador by the LAPs without disclosing to the U.S. courts that it too had engaged in similar conduct in Ecuador. So the question for decision is whether the fraud defense in the proposed amended answer to the amended complaint pleads facts which, if proved, would be a defense to Chevron's action.  In other words, would proof of the facts alleged in the fraud defense foreclose Chevron from relief even if the Ecuadorian judgment was (a) rendered by a system that does not afford impartial tribunals or due

process of law, (b) procured by fraud, © rendered in the absence of personal jurisdiction over Chevron, or (d) of a penal character, in whole or in part, or would not be subject to recognition or enforcement here for another reason?

There are several fundamental problems with the LAP Representatives' position, either of two of which independently would be sufficient for purposes of the alleged fraud defense.

### (a)     The Fraud Claim Is Insufficiently Pleaded

First, the LAPs' fraud defense alleges that Chevron brought roughly twenty Section 1782 proceedings in which it cited the alleged involvement of the LAPs' agents with the preparation of the Cabrera report.  It cites two examples, a case in the Eastern District of Pennsylvania and another in the District of New Mexico.[87]  And it then charges Chevron with having failed to disclose that Ecuadorian law permits *ex parte* contacts with court appointed experts and that Chevron engaged in such contacts with other experts.  Thus, the claim of fraud rests on the assertion that Chevron fraudulently breached an obligation to disclose these facts to those courts.  This falls grievously short of a legally sufficient claim of fraud related to the subject of this action.

Fraud consists of the:

(1) defendant ma[king] a representation as to a material fact; (2) such representation was false; (3) defendant intend[ing] to deceive plaintiff; (4) plaintiff believ[ing] and justifiably rel[ying] upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustain[ing] pecuniary loss."[88]

The Court assumes further, without deciding, that a claim of fraud would be sufficiently stated if a

---

[87]     Action No. 2, DI 42, Att. 1, at 88-89.

[88]     *Ross v. Louise Wise Servs.*, 8 N.Y.3d 478, 488 (2007) (citation and internal punctuation and quotation marks omitted).

plaintiff alleged the making of a false statement for the purpose of deceiving a third party coupled with justifiable reliance by that third party resulting in consequential harm to the plaintiff.  Even on that assumption, the LAP Representatives have not alleged all of the elements of fraud.

As an initial matter, there is no allegation in the proposed amended answer that Chevron knew that Ecuadorian law permitted such *ex parte* contacts, which is a disputed issue in this case, even if that turns out to have been the case.[89]  But Rule 9(b), which applies to fraud allegations, requires allegations of *scienter* that are considerably more than conclusory.[90]  Those requirements are not satisfied here.

In any case, the statements of which the LAP Representatives complain were made in contested litigation before United States District Courts in which the LAP Representatives participated.  In both of the two specific examples cited by the LAP Representatives,[91] the LAP Representatives told the courts what the LAP Representatives claim the facts to have been – that *ex parte* contacts with court-appointed experts in Ecuador were permissible, that the judge in the case had invited them, and that Chevron had engaged in them.[92]  Indeed, it is entirely clear that the questions

---

[89]

In fact, Chevron consistently has contended that the LAPs' contacts with Cabrera were improper under Ecuadorian law.

[90]

*E.g., ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 99 (2d Cir.2007).

[91]

Action No. 2, DI 42, Att. 1, at 89-90.

[92]

Ecuadorian Plaintiffs' Opposition to the Chevron Applicants' Applications for Discovery Under 28 U.S.C. § 1782 [DI 35] at 5-6 & n.3, in *Chevron Corp. v. Kohn, Swift & Graf, P.C.*, No. 10-mc-00208 (E.D. Pa. filed Dec. 8, 2008).

[Corrected] Respondents' and Ecuadorian Plaintiffs' Objections Pursuant to Fed. R. Civ. P. 72(b) to the Magistrate's September 1, 2010 Opinion and Order Authorizing Discovery [DI 84] at 4-6 (admitting that LAPs assisted in the preparation of the Cabrera report, charging that Chevron consultants ghost wrote part of the report of another independent

whether such *ex parte* contacts were permitted and whether Chevron also had engaged in them were put before the courts, which were free to rely on whatever it found more persuasive.[93]

There is no legally sufficient allegation of fraud here.

> (b)   *Even If the Fraud Claim Were Pleaded Sufficiently, It Would Not Bear Sufficient Relation to the Underlying Dispute*

In the last analysis, the fraud claim is that Chevron fraudulently induced one or more of the Section 1782 courts to order discovery that Chevron intends to use to prove that the Judgment was obtained by the LAPs through fraud committed by them with respect to Ecuadorian litigation. In substance, that is a part of the unclean hands defense, not a free standing defense or claim for relief. And it fails for reasons expressed previously in connection with the unclean hands defense.

### Conclusion

For the foregoing reasons, (1) the LAP Representatives amended answer to the amended complaint, improperly filed without leave of Court [DI 63] is stricken; (2) the LAP Representatives' motion for leave to file an amended answer to the amended complaint [DI 42] is granted.[94] Chevron's motion for judgment on the pleadings dismissing certain defenses of the LAPs' answer to the amended complaint or for other relief [DI 49] is deemed applicable to the amended

---

expert, and asserting the practice in Ecuador is that parties do not share with their adversaries their submissions to court-appointed experts), in *In re Chevron Corp.*, 10-mc-00021-JCH-LFG (D.N.M. filed Aug. 16, 2010).

[93]

> *Id.*

[94]

> This ruling is without regard to whether the twenty-eighth, thirtieth, and thirty-first defenses are legally sufficient, which is dealt with in deciding Chevron's motion for partial judgment on the pleadings or other relief.

answer to the amended complaint and granted to the extent that the twenty-eighth and thirty-first

defenses and so much of the thirtieth defense as is (a) based upon anything other than the points noted

in the text and (b) addressed to anything other than Chevron's claim for injunctive is granted.  The

latter motion is otherwise denied.  These rulings are made only with respect to Action No. 2 and thus

do not resolve this motion with respect to Donziger's defenses because he is not a party to this action.

To the extent, if any, that these issues are pertinent to Action No. 1, the Court reserves decision.

SO ORDERED.

Dated:          August 17, 2011

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)