UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
CHEVRON CORPORATION,                                      :
                                                          :
                    Plaintiff,                            :
                                                          :
                                                          :      CASE NO. 11-CV-0691 (LAK)
          v.                                              :
                                                          :
STEVEN DONZIGER et al.,                                   :
                                                          :
                    Defendants.                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## JOINT REPORT CONCERNING SCHEDULING AND DISCOVERY MATTERS

         Pursuant to the Court's February 16, 2012 Order [DI 389] directing the parties to meet

and confer with respect to "proposed discovery, scheduling and further proceedings," the parties

submit the following joint report identifying areas of agreement and certain threshold disputes.[1]

As to the disputed issues, each side has set forth their respective positions below.  By submitting

this joint report, plaintiff and defendants do not waive any of their rights to object to or otherwise

challenge the positions and proposals set forth in the other side's "Position" sections.

## SCHEDULE

*Plaintiff's Position:*

         Chevron proposes that discovery should commence promptly, with the parties adhering to

a 300-day schedule for the completion of all discovery (running from the issuance of a

---

[1]      While the parties generally agree that any future disputes arising in the course of
discovery should be presented to the Magistrate Judge in the first instance, Chevron
requests that the Court resolve the threshold disagreements identified in this joint report
through the issuance of a scheduling and case management order.

scheduling order or similar Court directive) that includes the following interim deadlines:  <u>120 days</u> – last day to serve written discovery; <u>180 days</u> – initial expert disclosures; <u>225 days</u> – rebuttal expert disclosures.  This schedule provides a reasonable amount of time for the parties to conduct discovery relevant to Chevron's claims and any viable defenses thereto, while avoiding any unnecessary delay that would prejudice Chevron by allowing defendants to seek to disrupt Chevron's operations around the world through judgment enforcement efforts.

While Chevron generally agrees that the parties should endeavor to complete written discovery as early as possible during the discovery period, Chevron believes that the parties should be permitted to take deposition testimony at their discretion.  Defendants' suggestion to suspend all depositions until written discovery is completed is not viable given that a standard purpose of taking depositions is to address potential document-related issues that may be the subject of follow-up written discovery.

*Defendants' Position:*

The Donziger and Stratus defendants have long-pending Federal Rule of Civil Procedure 12(b)(6) motions, the resolution of which could significantly impact the scope of this action going forward and thus the scope of discovery.  Additionally, the Ecuadorian defendants intend to challenge the Court's jurisdiction pursuant to Rule 12(b)(2) and may also bring Rule 12(b)(6) or 12(c) motions.  Subject to this Court's current order that parties may propound discovery requests and respond with objections and responses, but not produce any actual factual discovery, defendants believe that discovery should not commence until these motions are resolved and the pleadings are settled.  Commencing discovery when it is uncertain what, if any, claims are actually at issue, and which defendants remain in the case, would be inefficient and impose unnecessary burdens on all parties and on the Court.  Accordingly, defendants propose

that the parties have 30 days from the date the Court enters a scheduling order to file any motions addressed to the pleadings, including motions to amend or add counterclaims and any further Rule 12 motions or supplements to existing Rule 12 motions.  The time to answer written discovery, including requests for production, requests for admission, and interrogatories, should commence once all such motions, including the motions already on file, are resolved and the pleadings are settled.

Defendants further propose that the parties substantially complete written discovery and document production, including the resolution by Magistrate Judge Francis (and any appeals therefrom) of any disputes regarding such discovery and the parties' compliance with his orders, before commencing depositions.  The parties shall meet and confer regarding the number and timing of depositions they wish to take, with any disputes to be resolved by Magistrate Judge Francis.  Defendants believe that the division of discovery into written and deposition discovery phases will encourage the parties to proceed with written discovery, including document production, as expeditiously and efficiently as possible, and will ensure that any and all relevant documents are available for use during depositions.  Of course, defendants recognize that if during the course of deposition discovery a party learns of additional documents or categories of documents that have not yet been obtained through written discovery, a party may serve targeted follow up written discovery to obtain such materials.

Defendants further propose that once the deposition schedule is set, and the time needed to complete depositions is known or can be estimated with some accuracy, the Court should hold a status conference to set a schedule for expert disclosures and reports, expert discovery, dispositive motions, pretrial, and trial.

While the defendants respectfully submit that the above approach should be adopted by the Court, in the event that the Court is inclined to adopt Chevron's approach to scheduling, defendants respectfully submit that the deadlines proposed by Chevron are too truncated, given the number and complexity of the claims and defenses and the fact and expert discovery needed to ready this matter for trial.  Indeed, under Chevron's proposal, there is only sixty days between the time a party would be obliged to produce documents (assuming that the request was served on the first day of discovery and the assistance of Magistrate Judge Francis is not required to resolve any dispute regarding the request) and the deadline for initial expert disclosures; *i.e.,* only sixty days to review and analyze any documents that are produced, conduct follow up discovery in light of those documents, and to take any fact depositions utilizing those documents, before expert discovery commences.  Defendants believe this schedule is unfair and is intended to permit Chevron to leverage the two-year head start on discovery that it has enjoyed under the guise of 28 U.S.C. § 1782.  Chevron's claim that its proposed schedule is necessary because the Lago Agrio plaintiffs may commence actions to enforce the judgment in their favor in Ecuador is a red herring, especially given the Second Circuit's recent opinion in the *Salazar* action.

Additionally, with respect to Chevron's urging of the Court to set an expedited schedule, the Stratus defendants note that they are not involved in any judgment enforcement efforts, have had no opportunity to conduct any discovery because they were not involved in the *Salazar* action before this Court (11-CV-03718), and that discovery will be both a huge time and financial burden in any event, without imposing an expedited discovery schedule.  Chevron has taken an enormous amount of discovery over years in related actions and the Stratus defendants will be prejudiced if Chevron convinces the Court to rush to judgment on this damages action.

Defendants therefore submit that the period for the completion of written discovery, including the resolution of disputes, should be at least 240 days, with each party required to complete its production of documents in response to a request for production within 60 days of service of a request or 30 days after a relevant court order resolving any dispute concerning the request, whichever is later.  The deadline for the completion of oral factual depositions, including foreign country depositions, should be 360 days.  Chevron should make its expert disclosures in 420 days (Chevron has proposed that both sides make simultaneous expert disclosures, an approach with which the defendants disagree), defendants should make their expert disclosures within 480 days, and Chevron should make its rebuttal expert disclosures within 510 days.  Expert depositions would follow, with the close of all discovery within 565 days.

Additionally, in order to ensure that discovery remains on schedule and that any disputes relating to discovery are promptly identified and efficiently resolved, defendants propose that Magistrate Judge Francis hold monthly telephonic discovery status conferences with all parties.

## INITIAL DISCLOSURES

*Plaintiff's Position:*

In light of the considerable discovery conducted to date in prior and ongoing related proceedings, including the initial disclosures already made by the parties in last year's *Salazar* action, Chevron suggests that the parties forego any further initial disclosures under Rule 26(a)(1) of the Federal Rules of Civil Procedure.

*Defendants' Position:*

Defendants believe that the parties should provide all standard initial disclosures once the Court has resolved all motions directed to the pleadings and discovery has commenced.  The

Donziger and Stratus defendants note that they did not participate in the discovery that took place in the *Salazar* action (the Stratus defendants had no role or participation in that case at all), nor did they or the Ecuadorian defendants participate in most of the "ongoing related proceedings" Chevron references. Given that Chevron already prepared initial disclosures with respect to the *Salazar* action, preparing updated disclosures to address all of the information required under Rule 26 for *this action* should not impose any undue burden. Defendants believe that compliance with the initial disclosure requirements of Rule 26 will help to focus and streamline discovery going forward.

## RELEVANT PERIOD FOR DISCOVERY PURPOSES

*Plaintiff's Position:*

Chevron seeks to establish a default relevant period at the outset of discovery that covers the entire time from the initial filing of the Lago Agrio complaint in Ecuador through the initiation of this action by Chevron (*i.e.*, the period of January 1, 2003 through February 14, 2011). Chevron recognizes, however, that certain narrowly defined topics—to the extent deemed relevant in this action—likely would warrant a broader period, and thus has suggested that the parties meet and confer in an effort to identify such topics and then present to the Court for expedited resolution any remaining disputes concerning the relevant time period.

*Defendants' Position:*

Defendants believe that Chevron's proposed default relevant period for discovery is far too narrow and that any pre-selected default time period is unnecessary and inappropriate. There are many relevant issues and events, about which defendants are entitled to seek discovery, that pre-date January 1, 2003, including, but not limited to, issues relating to the core disputes of the case—Texaco's operations in and pollution of the Ecuadorian Amazon, Chevron's merger with

Texaco, the commencement and prosecution of the original *Aguinda* litigation in the United

States, and Chevron's settlement with the Republic of Ecuador.  Therefore, defendants believe it

is inappropriate to set at the outset any default period, at least any period that does not include

the dates related to the issues described in the preceding sentence, and to shift the burden to

defendants to justify seeking discovery outside that period.  Rather, the temporal scope of

discovery should be addressed, as is typically the case and as is the default under the Federal

Rules, on a topic area by topic area basis, with the responding party having the right to object to

specific discovery requests that it believes are temporally overbroad.

## DOCUMENT DISCOVERY

*Areas of Agreement:*

The parties agree that written responses and objections to requests for production will be

due within thirty days of service, subject to any additional time to respond provided under the

Federal Rules and/or the Local Civil Rules as a result of the propounding party's selected

manner of service, with production of materials commencing thereafter on a rolling basis.  (As

noted below, however, the parties have not reached agreement on the timeframe for completing

such productions.)

The parties also agree that, whenever a party obtains materials in response to a subpoena

issued in this action pursuant to Rule 45 of the Federal Rules of Civil Procedure or through any

other formal discovery mechanism, the party will make such materials available to all other

parties within seven days without the need for a request for production.  Any party requesting

copies of such productions will bear the costs of copying.

Finally, the parties generally agree that keyword search terms are an appropriate

discovery tool, when used in combination with other, traditional document search methods, such

as interviews of relevant document custodians.  Subject to resolution of a dispute concerning the

timing of such efforts (see below), the parties will endeavor to develop mutually acceptable

search terms to be applied by the parties to their respective document collections as part of their

search for and review of materials for potential production.

*Plaintiff's Position:*

Chevron believes that, subject to any applicable protective orders or confidentiality

agreements, the parties should be permitted to use any materials already in their possession

produced by any entity or individual in prior or ongoing related proceedings, subject to the

resolution of any issues relating to authentication or admissibility.

Chevron further believes that it would be appropriate to limit each entity party's

production obligations to materials from various common sources (*e.g.*, corporate records) and

from the files of specifically identified custodians.  For the latter category, Chevron believes that

the parties should meet and confer to develop agreed-upon custodian lists *at the outset of*

*discovery*, and has suggested the following guidelines for the initial total number of custodians:

Defendants – five custodians per entity; Chevron – twenty-five custodians.  These totals would

include employees and any individual third parties whose files are within the possession, custody

or control of the party.  Given that most of the parties have been engaged in related litigation for

many years, defendants' suggestion that they cannot identify relevant custodians from Chevron

simply is not credible.  In any event, Chevron further has suggested that, after initial production,

a requesting party could seek materials from a limited number of additional custodians based on

a good faith belief that such custodians may possess non-duplicative files that are material to the

claims or defenses in the action and where the benefits substantially outweigh the costs of

production.

With respect to keyword search terms, Chevron maintains that the parties also should develop agreed-upon lists at the outset of discovery.

Chevron maintains that the timeframe for the parties to complete their respective document productions will be dictated by the ultimate scope of discovery negotiated by the parties and resolved by the Court through any necessary motion practice, as well as the overall schedule established by the Court.  Defendants' suggestion that productions uniformly must be completed within 60 days (or 30 days from relevant court order resolving any dispute) is not reasonable, particularly given defendants' refusal to negotiate custodians or search terms at the outset.  Chevron maintains that—with reasonable limits on custodians and the proper use of negotiated search terms—the parties should be able to complete productions within 120 days.

*Defendants' Position:*

Defendants believe that parties are obligated to produce to other parties in this matter all discovery obtained in related matters (including any 28 U.S.C. § 1782 proceeding initiated by any party or the *Salazar* action).  Defendants do not believe that the parties should be entitled to selectively use by default any and all materials already in their possession produced by any entity or individual in any prior or ongoing related proceedings.  Specifically, the Donziger and Ecuadorian defendants object to the use by Chevron in this action of any privileged materials that Chevron obtained from the Donziger defendants in the Donziger 28 U.S.C. § 1782 action or the *Salazar* action as a result of the Court's orders in those actions compelling the Donziger defendants to produce such materials.  Involuntary, judicially compelled waivers of privilege do not carry over from one action to another.  This issue was pending before this Court at the time that the Second Circuit Court of Appeals stayed the *Salazar* action, and remains unresolved.

Additionally, the Donziger, Stratus, and Ecuadorian defendants did not participate in many of the prior or ongoing related proceedings and do not have all of the materials that were produced in those actions. The Stratus defendants had no role in the *Salazar* action, and neither the Donziger nor the Stratus defendants have had any opportunity to date to obtain discovery from Chevron as to any issue in this action.

Defendants disagree with Chevron's proposal that it only be initially required to produce responsive materials from a limited universe of specifically identified custodians, who must be identified at the outset of discovery.  Neither the defendants nor the Court have any way of knowing at this point how many Chevron employees and agents, including multiple law firms, have custody of documents relevant to the myriad issues in this action or who those individual custodians may be.  Chevron's insistence that the parties should be required to identify custodians at the outset, in combination with Chevron's desire to forego initial disclosures, seems to be intended to keep defendants as in the dark as possible regarding the location of relevant documents within Chevron's sprawling corporate organization.  Consequently, the Court should not set any fixed number of custodians or require defendants to identify *Chevron's* custodians at the outset of discovery.  Adopting Chevron's proposal would significantly prejudice defendants' ability to obtain relevant, responsive documents from Chevron. Defendants believe that the appropriate time to discuss the identity and number of relevant custodians whose documents must be searched is after the parties have provided their initial disclosures and have served and responded to initial interrogatories and requests for production, so that the discussion is not performed in a vacuum.  Additionally, defendants believe that 25 total custodians for Chevron is far too few, given Chevron's size, the number of its employees and agents who are likely to possess relevant documents, and the breadth of Chevron's claims in

this action.  Given the massive, detailed filings Chevron has made in multiple proceedings, Chevron has indicated to the Court and the parties that it can obtain documents internally to support its arguments surrounding this dispute from multiple sources.  Moreover, the Stratus defendants were not parties to the *Salazar* action and have no information to guide them in determining appropriate Chevron custodians at this time, and the Donziger defendants were not permitted to participate in discovery in the *Salazar* action, hence Chevron's suggestion that the defendants should not be heard to argue that they cannot identify custodians, is meritless.

Defendants further believe that any discussions concerning the use of keyword search terms as a component of the parties' respective searches for relevant documents should be deferred until after the parties have served their initial disclosures and requests for production, so that the parties understand the universe of documents being requested and are in a position to discuss search terms likely to hit upon documents within that universe.

Defendants also propose that the parties should forego the use of Orders to Show Cause to submit discovery disputes to the Court, unless absolutely necessary under the circumstances.

Finally, as noted, defendants believe that any determinations regarding the specific scope and timing of discovery should occur only once the pleadings are settled, as the Court's rulings on defendants' pending and anticipated motions could significantly impact the scope of the claims at issue.  However, as noted above, defendants believe that allowing a party 120 days to produce documents, especially in light of the overall discovery schedule proposed by Chevron, is unreasonable.  Each party should be required to complete its production of documents in response to a request for production within 60 days of service of a request or 30 days after a relevant court order resolving any dispute concerning the request, whichever is later.

**PRIVILEGE LOGS**

*Areas of Agreement:*

The parties generally agree that, with respect to timing of production of privilege logs, Local Civil Rule 26.2 will not apply, and the parties will provide privilege logs on a rolling basis consistent with their respective document productions as discussed above.  The parties are continuing to meet and confer regarding the appropriate timing for any rolling production of privilege logs.

The parties also generally agree that certain categories of materials need not be included on privilege logs or can be logged on a collective basis, and are continuing to meet and confer regarding the scope of such categories.

**INTERROGATORIES**

*Areas of Agreement*:

The parties agree that a responding party must serve its answers and objections to interrogatories within thirty days after service, subject to any additional time to respond provided under the Federal Rules and/or the Local Civil Rules as a result of the propounding party's selected manner of service.  The parties further agree that Local Civil Rules 33.3(a) and (c) will not apply to this action.

The parties will continue to meet and confer on potential adjustment to the number limit established by Rule 33(a) of the Federal Rules of Civil Procedure.

**DEPOSITIONS**

*Areas of Agreement*:

The parties agree to explore the possibility of arranging for voluntary deposition appearances by certain foreign-based witnesses formally beyond the parties' control.  To the

extent any depositions are conducted on foreign soil, Chevron would insist that they be conducted pursuant to the Federal Rules of Civil Procedure, and the parties agree to raise any disputes concerning such depositions with Magistrate Judge Francis in the first instance.  While the defendants agree that it is preferable that depositions on foreign soil be governed by the Federal Rules of Civil Procedure and agree to do so to the extent permitted by local law, the defendants do not agree that no depositions may be conducted on foreign soil if local law does not permit such to be conducted under the Federal Rules of Civil Procedure.

The parties generally agree that the standard seven-hour limitation should not apply to depositions of Spanish-speaking witnesses, and will endeavor in good faith to reach agreement on the appropriate approach to such depositions on a case-by-case basis.

The parties will continue to meet and confer on potential adjustment to the presumptive number limit on depositions set forth in Rule 30(a) of the Federal Rules of Civil Procedure. Also, to the extent a deposition notice pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure requires a party to produce multiple witnesses, the parties will endeavor in good faith to reach agreement on a total hour limitation for such testimony or, alternatively, on how to count such depositions for purposes of the "without leave" number limit.

*Plaintiff's position*:

Chevron believes that at least 90 days before the close of discovery, each party should be required to provide a list of all foreign-based individuals they may seek to call as trial witnesses. Chevron believes that no party should be permitted at trial to rely on testimony—live or recorded—from any foreign-based witness who refuses to sit for deposition prior to trial.

*Defendants' position*:

Given that the Ecuadorian defendants, and other foreign-based individuals, object that the Court lacks personal jurisdiction over them, Chevron's position could unfairly prejudice the Ecuadorian defendants, as well as the Donziger and Stratus defendants, by preventing them from bringing as a trial witness any individual who will not come to New York for deposition, as Chevron has previously insisted for other witnesses. If the individual is willing to give a deposition in his or her country of residence, defendants should not be prohibited from subsequently calling that person as a trial witness simply because Chevron preferred to take that person's deposition in New York and rejected the witness' offer to appear for a deposition in his or her country of residence.

## PROTECTIVE ORDER(S)

*Areas of Agreement*:

The parties agree that it would be appropriate for the Court to endorse a stipulated protective order preserving the confidentiality of information that a party in good faith believes constitutes sensitive or personal information, whether or not that information was disclosed in any prior or ongoing related proceeding, the disclosure of which may cause injury to the business or person of an affected party. Examples of information that may merit such protection include social security numbers and personal telephone numbers, sensitive customer and vendor information, and non-public financial information.

The parties further agree that such a stipulated protective order should address the inadvertent production of privileged materials and appropriate claw-back procedures. Consistent with Rule 26(b)(5) of the Federal Rules of Civil Procedure and Rule 502 of the Federal Rules of

Evidence, such inadvertent production would not be deemed to constitute a waiver in this action or in any other proceeding.

Finally, Chevron has requested that defendants consider agreeing to a stipulated protective order that would allow Chevron to shield from disclosure due to safety concerns the identities of certain third-party agents.   The parties will continue to meet and confer on this issue.


Dated: March 7, 2012                    GIBSON, DUNN & CRUTCHER LLP



                                        /s/ Randy M. Mastro
                                        Randy M. Mastro
                                        200 Park Avenue
                                        New York, New York 10166-0193
                                        Telephone: 212.351.4000
                                        Facsimile:  212.351.4035

                                        *Counsel for Chevron Corporation*


Dated: March 7, 2012                    KEKER & VAN NEST LLP



                                        /s/ John W. Keker
                                        John W. Keker
                                        633 Battery Street
                                        San Francisco, CA 94111
                                        Telephone: 415.391.5400
                                        Facsimile:  415.397.7188

                                        *Counsel for Steven Donziger, The Law Offices of Steven R. Donziger, and Donziger & Associates, PLLC*

Dated: March 7, 2012                    SMYSER KAPLAN & VESELKA, LLP



                                        /s/ Tyler G. Doyle
                                        Tyler G. Doyle
                                        Craig Smyser (*pro hac vice pending*)
                                        Larry R. Veselka (*pro hac vice pending*)
                                        700 Louisiana, Suite 2300
                                        Houston, TX 77002
                                        Telephone: 713.221.2330
                                        Facsimile:  713.221.2320


                                        *Counsel for Defendants Hugo Gerardo Camacho*
                                        *Naranjo and Javier Piaguaje Payaguaje*


Dated: March 7, 2012                    ZEICHNER ELLMAN & KRAUSE LLP



                                        /s/ Stuart A. Krause

                                        Stuart A. Krause
                                        575 Lexington Avenue
                                        New York, N.Y. 10022
                                        Telephone: 212.223.0400
                                        Facsimile: 212.753.0396

                                        *Counsel for Defendants Stratus Consulting Inc.,*
                                        *Douglas Beltman, and Ann Maest*