UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHEVRON CORPORATION,

                Plaintiff,

        v.

STEVEN DONZIGER et al.,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CASE NO. 11-CV-0691 (LAK)

**DEFENDANTS STEVEN DONZIGER, THE LAW OFFICES OF STEVEN R. DONZIGER, DONZIGER & ASSOCIATES, PLLC., JAVIER PIAGUAJE PAYAGUAJE, AND HUGO GERARDO CAMACHO NARANJO'S RESPONSE TO ORDER TO SHOW CAUSE WHY A TEMPORARY RESTRAINING ORDER SHOULD NOT BE ENTERED**

1

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ......................................................................................... 1

    A.    Unnecessary ................................................................... 1

    B.    Unfair ............................................................................ 4

    C.    Unworthy ...................................................................... 5

        1.    Chevron is attempting to circumvent the Second Circuit's prior orders and opinions in this action. ............................. 5

        2.    Chevron has not demonstrated a likelihood of success on the merits ............................................................ 7

            a. Chevron has failed to state a valid RICO cause of action, must less establish any likelihood of success on the merits of that claim. ............................................. 8

            b. Chevron's RICO conspiracy cause of action is also defective and unlikely to succeed on the merits. ........... 10

            c. Chevron has not shown that it is likely to succeed on the merits of its unjust enrichment or common-law fraud claims, the only state-law causes of action it relies upon in its renewed motion. ............................. 11

                i. Unjust enrichment. ................................................. 11

                ii. Common law fraud ................................................ 14

            d. Chevron's other state-law causes of action are equally without merit. ..................................................... 15

                i. Tortious interference with contract. ........................... 15

                ii. Trepass to chattels ............................................... 16

                iii. Civil conspiracy ................................................. 16

                iv. New York Judiciary Law § 487 ............................... 17

REQUESTED RELIEF ......................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Albion Alliance Mezzanine Fund, L.P. v. State Street Bank & Trust Co.,*
  797 N.Y.S. 2d 699 (N.Y. Supp., 2003)................................................................16

*Am. Bldg. Maint. Co. v. N.Y. v. Acme Prop. Serv., Inc.,*
  515 F. Supp. 2d 298 (N.D.N.Y. 2007)................................................................16

*Amalfitano v. Rosenberg,*
  427 F. Supp. 2d 196 (S.D.N.Y. 2006)................................................................17

*Amusement Indus., Inc. v. Midland Ave. Assocs., LLC,*
  10 CIV.5064 LAK GWG, 2011 WL 3463117 (S.D.N.Y. Sept. 27, 2011) (Kaplan, J.)..........12

*Amusement Indus., Inc. v. Stern,*
  693 F.Supp.2d 327 (S.D.N.Y. 2010) (Kaplan, J.).............................................12, 14

*Amusement Indus., Inc. v. Stern,*
  786 F. Supp. 2d 758 (S.D.N.Y. 2011) (Kaplan, J.)................................................12

*Anwar v. Fairfield Greenwich Ltd.,*
  728 F. Supp. 2d 462 (S.D.N.Y. 2010)..................................................................1

*Aramony v. United Way of Am.,*
  969 F. Supp. 226 (S.D.N.Y. 1997)......................................................................3

*Arthur Properties, S.A. v. ABA Gallery, Inc.,*
  11 CIV. 4409 LAK, 2011 WL 5910192 (S.D.N.Y. Nov. 28, 2011) (Kaplan, J.)..............12

*Axel Johnson, Inc. v. Arthur Andersen & Co.,*
  830 F. Supp. 204 (S.D.N.Y. 1993)......................................................................11

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.,*
  448 F.3d 573 (2d Cir. 2006).............................................................................11

*Breakaway Solutions, Inc. v. Morgan Stanley & Co., Inc.,*
  2004 WL 1943900 (Del. Ch. Aug. 27, 2004) .....................................................13

*Carmona v. Spanish Broad. Sys., Inc.,*
  08 CIV. 4475 (LAK), 2009 WL 890054 (S.D.N.Y. Mar. 30, 2009) (Kaplan, J.)..............12

*Carroll v. LeBoeuf, Lamb, Greene & MacRae, LLP,*
  623 F. Supp. 2d 504 (S.D.N.Y. 2009) (Kaplan, J.)................................................12

*Chevron Corp. v. Naranjo*,
   11-1150-cv(L) (2d Cir. May 12, 2011) ................................................................6

*Chevron Corp. v. Naranjo*,
   667 F.3d 232 (2d Cir. 2012).......................................................................5, 6

*City of New York v. Smokes-Spirits.Com, Inc.*,
   541 F.3d 425 (2d Cir. 2008), *overruled on other grounds by Hemi Group, LLC v. City of New York*, 130 S.Ct. 983 (2010) ...............................................14

*Deck v. Engineered Laminates*,
   349 F.3d 1253 (10th Cir. 2003) ....................................................................9

*Doe ex rel. Doe v. Federal Exp. Corp.*,
   571 F. Supp. 2d 330 (D. Conn. 2008) .........................................................16

*EBC I, Inc. v. Goldman Sachs & Co.*,
   777 N.Y.S.2d 440 (2004)........................................................................12, 13

*Faiveley Trans. Malmo AB v. Wabtec Corp.*,
   559 F.3d 110 (2d Cir. 2009)............................................................................1

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
   385 F. 3d 159 (2d Cir. 2004)....................................................8, 10, 15, 17

*G-I Holdings, Inc. v. Baron & Budd*,
   1798 F. Supp. 2d 233 (S.D.N.Y. 2001).........................................................9

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
   481 F.3d 60 (2d Cir. 2007).............................................................................2

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*,
   17 F. Supp. 2d 275 (S.D.N.Y. 1998).........................................................15

*Harger v. Price*,
   204 F. Supp. 2d 699 (S.D.N.Y. 2002) (Kaplan, J.).................................11, 12

*I.S. Joseph Co., Inc. v. J. Lauritzen A/S*,
   751 F.2d 265 (8th Cir. 1984) .........................................................................9

*In re Parmalat Sec. Litig.*,
   684 F. Supp. 2d 453 (S.D.N.Y. 2010) (Kaplan, J.), *aff'd sub nom. Food Holdings Ltd. v. Bank of Am. Corp.*, 423 Fed. Appx. 73 (2d Cir. 2011) ...............................12

*In re Rezulin Products Liab. Litig.*,
   390 F. Supp. 2d 319 (S.D.N.Y. 2005) (Kaplan, J.).......................................12

*In re Rezulin Products Liab. Litig.*,
    392 F. Supp. 2d 597 (S.D.N.Y. 2005) (Kaplan, J.)..................................................12

*Labajo v. Best Buy Stores, L.P.*,
    478 F. Supp. 2d 523 (S.D.N.Y. 2007)....................................................................11

*Lerner v. Fleet Bank, N.A.*,
    318 F.3d 113 120 (2d Cir. 2003).............................................................................8

*Marketplace LaGuardia Ltd. Partnership v. Harkey Enter., Inc.*,
    No. 07-CV-1003 (CBA), 2008 WL 905188 (E.D.N.Y. Mar. 31, 2008)................11

*Mfrs. Hanover Trust Co. v. Chemical Bank*,
    160 A.D.2d 113 (N.Y. 1st. Dept. 1990)................................................................13

*Morrison v. Nat'l Australia Bank Ltd.*,
    130 S.Ct. 2869 (2010).............................................................................................8

*Naughtright v. Weiss*,
    -- F. Supp. 2d -- , No. 10 Civ. 8451 (RWS) 2011 WL 5835047 (S.D.N.Y. Nov. 18,
    2011).....................................................................................................................16

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
    631 F.3d 29 (2d Cir. 2010)......................................................................................8

*Norris v. Grosvenor Mktg. Ltd.*,
    803 F.2d 1281 (2d Cir. 1986)................................................................................15

*Oakes v. Muka*,
    868 N.Y.S.2d 796 (2008)......................................................................................17

*Picard v. Kohn*,
    No. 11 Civ. 1181 (JSR), 2012 WL 566298 (S.D.N.Y. Feb. 22, 2012)............4, 8, 9

*Piccoli A/S v. Calvin Klein Jeanswear Co.*,
    19 F. Supp. 2d 157 (S.D.N.Y. 1998) (Kaplan, J.)................................................12

*Prime Mover Capital Partners, L.P. v. Elixir Gaming Technologies, Inc.*,
    793 F. Supp. 2d 651 (S.D.N.Y. 2011) (Kaplan, J.)..............................................12

*Republic of Ecuador v. ChevronTexaco Corp.*,
    376 F. Supp. 2d 334 (S.D.N.Y. 2005)..................................................................15

*Roberts v. Atl. Recording Corp.*,
    892 F. Supp. 83 (S.D.N.Y. 1995) ...........................................................................1

*Schertenleib v. Traum*,
    589 F.2d 1156 (2d Cir. 1978)................................................................................17

*School of Visual Arts v. Kuprewicz,*
    771 N.Y.S. 2d 804 (N.Y. 2003) ........................................................................16

*Schuh v. Druckman & Sinel, LLP,*
    No. 07 Civ. 336 (LAK) (GWA), 2008 WL 542504 (S.D.N.Y. Feb. 29, 2008) ......................14

*Stein v. Gelfand,*
    476 F. Supp. 2d 427 (S.D.N.Y. 2007) (Kaplan, J.) ..................................................12

*Stochastic Decisions, Inc. v. DiDomenico,*
    995 F.2d 1158 (2d Cir. 1993) .............................................................................3

*United States v. Pendergraft,*
    297 F.3d 1198 (11th Cir. 2002) ...........................................................................9

*United States v. Tenzer,*
    213 F.3d 34 (2d Cir. 2000) ..................................................................................5

*Weisberg v. Smith,*
    401 F. Supp. 2d 359 (S.D.N.Y. 2005) (Kaplan, J.) ..............................................12

*West 79th Street Corp. v. Congregational Kahl Minchas Chinuch,*
    No. 03 Civ. 8606 (RWS), 2004 WL 2187069 (S.D.N.Y. Sep. 29, 2004) ................10

*Yick Man Mui v. United States,*
    614 F.3d 50 (2d Cir. 2010) ..................................................................................5

**STATUTES**

28 U.S.C. § 1782 ........................................................................................................10

New York Judiciary Law § 487 ..........................................................................14, 17

New York's Uniform Foreign Country Money-Judgments Recognition Act, N.Y.
    C.P.L.R. Art. 53 .......................................................................................................5

**OTHER AUTHORITIES**

Rule 12(b)(6) ..........................................................................................................4, 7

## PRELIMINARY STATEMENT

It's Groundhog Day. One year ago Chevron Corporation ("Chevron") led this court into grievous error, barring worldwide enforcement of the Ecuadorian judgment. Now Chevron seeks an equally overreaching order to accomplish the same thing. The attachment order it seeks violates not just the most recent Second Circuit Court of Appeals opinion vacating this Court's preliminary injunction and directing this Court to dismiss Chevron's declaratory and injunctive relief claim in its entirety, but also the Second Circuit's earlier order modifying the preliminary injunction to permit the defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje (the "Ecuadorian defendants") to seek and pay for legal representation. The Court should not again follow Chevron's lead into error and injustice.

## ARGUMENT

"Temporary restraining orders . . . are among 'the most drastic tools in the arsenal of judicial remedies,' and must be used with great care." *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 462, 472 (S.D.N.Y. 2010) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). The temporary restraining order ("TRO") requested by Chevron pending resolution of its motion for an order of attachment is unnecessary, unfair and unworthy.[1]

### A.   Unnecessary

Chevron's motion for an order of attachment and, *a fortiori*, its request via order to show cause for a temporary restraining order are unnecessary because there is no actual and imminent threat of harm to Chevron. "A showing of irreparable harm is the single most important prerequisite for the issuance of a [temporary restraining order]."[2] *Faiveley Transport Malmo AB*

---

[1] By filing this opposition, the Ecuadorian defendants do not concede that the assertion of personal jurisdiction over them by this Court is lawful or proper, and specifically reserve their rights to continue to contest the lawfulness and propriety of this Court's purporting to subject them to such jurisdiction.

[2] The *Faiveley* decision addressed the issuance of a preliminary injunction. However, "[t]he standards for a TRO are the same as those governing the granting of preliminary injunctive relief." *Roberts v. Atl.*

*v. Wabtec Corp.,* 559 F.3d 110, 118 (2d Cir. 2009).  Accordingly, "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Grand River Enterprise Six Nations,* 481 F.3d at 66-67.  "To satisfy the irreparable harm requirement, [Chevron] must demonstrate that absent [injunctive relief it] will suffer an injury that is neither remote nor speculative, but actual and imminent[.]"  *Id.* (quotation marks and alterations in the original omitted).

Chevron's hysterical letter to Court of March 9, 2012 should persuade anyone that Chevron continues to cry wolf.  The Ecuadorian Plaintiffs have not yet initiated any recognition or enforcement action.[3]  And whatever enforcement action is eventually filed in any country will take months or years to come to fruition.  The idea that Chevron's request for a TRO has to be heard pell mell on shortened time, the idea that defendants should get only two business days to respond to an order to show cause why a TRO should not issue, and the idea that this litigation cannot proceed in an orderly manner, is absurd, as any objective observer would conclude.

This Court already has ruled, in its January 6, 2012 Memorandum Opinion denying Chevron's original motion for an order of attachment, that proof of damages is not established by the fact and amount of the Ecuadorian judgment.  Dkt. No. 377, at 5-6.  Nothing has changed in that regard.  Chevron still "has not established that it has paid any part of the Judgment."  *Id.* at 5.  And the fact that the Ecuadorian Judgment may have some value to someone—enough to provide critical litigation funding for those involved in prosecuting the environmental case and defending against Chevron's collateral attacks and efforts to delay or deny justice for the company's historic contamination—is not  "damage" to Chevron.  Chevron has promised not to pay the Judgment no matter what—"till hell freezes over"—so transfers of interests in that

---

*Recording Corp.,* 892 F. Supp. 83, 86 (S.D.N.Y. 1995).

[3]  The only evidence Chevron cites to support the purported urgency of its motion is that counsel for the Ecuadorian plaintiffs has announced that the Ecuadorian plaintiffs "plan to commence" enforcement actions at some unspecified time in the future.  Dkt. No. 405, at 2.

unpaid Judgment hurt Chevron not at all.[4]

The same is true with Chevron's claimed attorneys' fees. Legal fees can constitute RICO damages only when they are proximately caused by a RICO violation. *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1166 (2d Cir. 1993); *see also Aramony v. United Way of Am.*, 969 F. Supp. 226, 232-233 (S.D.N.Y. 1997) (rejecting proposition that "the fees expended investigating a defendant's underlying fraudulent scheme are sustainable RICO injuries"). Chevron would have litigated the *Aguinda* case to the hilt to avoid responsibility for the horrific despoliation of the soil and water and the deleterious health and other effects on scores of communities across an area the size of Rhode Island no matter what any individual RICO defendant did or didn't do. Chevron has not shown that any specific amount of attorneys' fees is directly related to any allegation in the complaint. Furthermore, Messrs. Camacho Naranjo and Piaguaje Payaguaje had been prosecuting the *Aguinda* case for more than a dozen years before any of the alleged improprieties took place—for eight years in the United States and at least four in Ecuador. Chevron fails to provide any factual or legal basis for seeking legal fees as damages against these non-RICO defendants.[5]   The Ecuadorian trial and appellate decisions, which the Court now has in translation, establish that nothing in Chevron's complaint in this case had any effect on the Judgment in Ecuador. In short, Chevron has failed to establish any nexus between any fees it has incurred and the specific allegations of the Chevron Amended Complaint.[6]

---

[4]   Recognizing this fundamental defect in its motion, Chevron attempts to argue that defendants have been unjustly enriched—not as a result of receiving anything directly or indirectly from Chevron, which they haven't—but simply as result of obtaining litigation funding from third-parties in exchange for interests in the unpaid Judgment. But, as discussed in detail below, Chevron's novel theory is contrary to New York law, which requires that any unjust benefit be at the plaintiff's expense.

[5]   Chevron also fails to provide any basis for trebling its purported damages with respect to the non-RICO defendants. Trebling of damages is a RICO remedy.

[6]   The evidence before the Ecuadorian trial and appellate courts demonstrated that Chevron/Texaco (hereinafter "Chevron") (a) recklessly adopted sub-standard operational practices in Ecuador to cut production costs to the bare minimum, creating what experts believe could be the largest and most damaging oil-related disaster of all time; (b) flagrantly violated multiple Ecuadorian laws, its own contractual obligations, and oil industry standards in effect at the time; and thereby (c) caused massive

## B.     Unfair

Chevron's motion for an order of attachment and, *a fortiori*, its request via order to show cause for a temporary restraining order are unfair because:

1)  The pleadings are not settled.  While promptly acting on Chevron's every request, the Court has declined to rule on the Donziger and Stratus defendants' fully briefed Rule 12(b)(6) motions to dismiss for nearly a year.[7]  Jurisdictional issues raised but not decided in the Second Circuit remain to be resolved.  Counterclaims are contemplated, but not yet filed.  New case law, such as Judge Rakoff's recent opinion in *Picard v. Kohn*, No. 11 Civ. 1181 (JSR), 2012 WL 566298 (S.D.N.Y. Feb. 22, 2012), raise additional issues about the validity of Chevron's RICO claim.

2)  The Court ordered the parties to meet and confer and report back by March 9.  *See* Dkt. No. 389.  During that time-consuming process, Chevron's counsel never mentioned its intention to file immediately its renewed motion for an order of attachment, request a TRO, and ask for an expedited schedule.  Nor did Chevron's counsel mention that it intended simultaneously to file a motion for partial summary judgment.  The fact that this deception by omission has been approved by the Court does not make it right or any less prejudicial to the defendants.  The time allowed by this Court to respond to the Order to Show Cause why a TRO should not issue—two business days followed by a hearing next week[8]—prejudices defendants'

---

environmental damage to an area the size of Rhode Island that for decades to come will create myriad health risks for thousands of rainforest inhabitants unless there is a comprehensive clean-up.  The evidence against Chevron came not only from the plaintiffs, but also from *Chevron's own experts and environmental auditors* as well as independent third-party sources.  Indeed, Chevron's legal representative in Ecuador, Rodrigo Peres Pallares, has publicly admitted that Chevron dumped approximately 16 billion gallons of toxic production water into the rivers and streams of Ecuador. *See* Declaration of Tyler G. Doyle In Support of Defendants' Response to Order to Show Cause Why a Temporary Restraining Order Should Not Be Entered and Exh. C.

[7] As yet another example of the stark contrast with the Court's near instantaneous rulings on Chevron's myriad requests, the Court has yet to act on the Ecuadorian defendants' lead counsel's unopposed motion for admission *pro hac vice*, which has been pending for three weeks.

[8] Defendants requested extensions of time on Thursday, March 8, 2012, the day after receiving the Court's Order to Show Cause (Dkt. No. 413).  The Court declined to respond to defendants' requests. *See*

ability to respond, and, under the circumstances, constitutes a denial of due process.

3) The proposed TRO is oppressively broad and vindictive. It would bar any defendant from giving his child lunch money, paying rent, or buying a piece of fruit.

## C.    Unworthy

### 1.    Chevron is attempting to circumvent the Second Circuit's prior orders and opinions in this action.

Chevron's motion for an order of attachment and, *a fortiori*, its request via order to show cause for a temporary restraining order are an impermissible end run around prior appellate decisions, which are the law of the case and must be obeyed.[9] In its January 26, 2012 Order and Opinion, the Second Circuit Court of Appeals vacated this Court's March 7, 2011 preliminary injunction, which prohibited the Defendants from "directly or indirectly funding, commencing, prosecuting, advancing in any way, or receiving benefit from any action or proceeding, outside the Republic of Ecuador, for recognition or enforcement of the judgment" rendered in Ecuador. *Chevron Corp. v. Naranjo*, 667 F.3d 232, 234, 237 n.10, 247 (2d Cir. 2012) (Dkt. No. 644-1). The Second Circuit further directed this Court to dismiss "Chevron's claim for injunctive and declaratory relief under the Recognition Act in its entirety." *Id.* at 247.

The Second Circuit's vacating the injunction was predicated on its decision that New York's Uniform Foreign Country Money-Judgments Recognition Act, N.Y. C.P.L.R. Art. 53, did not grant putative judgment-debtors like Chevron a cause of action to challenge foreign judgments before enforcement of those judgments is sought in New York. *Naranjo*, 667 F.3d at 239-242. The Second Circuit went on to say that considerations of international comity provided

---

Declaration of Tyler G. Doyle In Support of Defendants' Response to Order to Show Cause Why a Temporary Restraining Order Should Not Be Entered, and Exhs. A and B.

[9] "When an appellate court has once *decided an issue*, the trial court, at a later stage of the litigation, is under a duty to follow the appellate court's ruling on that issue." *United States v. Tenzer*, 213 F.3d 34, 40 (2d Cir. 2000) (emphasis added). "The mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010).

"additional reasons" to reject this Court's injunction. *Id.* at 242. The Second Circuit said "grave" comity concerns existed "when a court in one country attempts to preclude the courts of every other nation from ever considering the effect of that foreign judgment . . . . The court presuming to issue such an injunction sets itself up as the definitive international arbiter of the fairness and integrity of the world's legal systems." *Id.* at 244. The Second Circuit went on to characterize as "radical" the effort of a court "to enjoin parties holding a judgment issued in one foreign country from attempting to enforce that judgment in yet another foreign country." *Id.*

Moreover, even before the Second Circuit vacated this Court's preliminary injunction in its entirety, the Second Circuit Court of Appeals stayed the injunction, insofar as it sought to restrain activities, like financing the case, other than commencing, prosecuting or receiving benefit from recognition, enforcement, or pre-judgment seizure or attachment proceedings. *Chevron Corp. v. Naranjo,* 11-1150-cv(L) (2d Cir. May 12, 2011) (Dkt. No. 135). Now, the Court's hastily entered Order to Show Cause threatens to enter a TRO enjoining defendants and others "from transferring or attempting to transfer any of his, her or its assets, including any debts and property in which he, she, or it claims any right, including the judgment entered by the Lago Agrio Court . . . ." The entry of this proposed TRO would preclude any of the defendants with an interest in the Ecuadorian Judgment from transferring any portion of that interest in order to finance the defense of this case, including the defense against Chevron's current onslaught of ancillary and preemptive filings. Granting Chevron such relief would be directly contrary to the Second Circuit's May 12, 2011 stay order.

Further, in its proposed order of attachment, Chevron proposes a bizarre and tortured form of relief, characterizing itself as a "garnishee" and seeking to have itself barred from paying any judgment to defendants to insure that defendants do not receive funds which may ultimately be subject to a judgment payable by Chevron. Chevron's ploy is certainly creative, but it is completely unsupported by the law,[10] and it is nothing more than an end run to obtain what the

---

[10] *See* Dkt 365, at 23-25.

Second Circuit would not let them obtain directly:  An improper worldwide injunction against enforcement of the Ecuadorian judgment, albeit one dressed up like a wolf in sheep's clothing to allow Chevron to claim that the Court is merely attempting to accomplish the same result indirectly.

Chevron's attempted end-run around the Second Circuit is highlighted by the fact that no TRO or attachment order is sought against the Stratus defendants, whom Chevron alleges are equally liable for purported RICO and common law violations.  If Chevron truly had a need for "security over Defendants assets,"[11] Chevron would have sought attachment and a TRO against the Stratus defendants as well.  But it did not.  The requested TRO, and order of attachment, are simply another thinly veiled attempt by Chevron to use this Court to frustrate enforcement of the Ecuadorian Judgment anywhere in the world.  The Second Circuit has ruled that such a "radical" global anti-enforcement injunction is improper.  Chevron is not entitled to come back before this Court to obtain that improper relief under the guise of prejudgment attachment.

**2.    Chevron has not demonstrated a likelihood of success on the merits.**

In addition to being foreclosed by the Second Circuit's rulings, Chevron is not entitled to the TRO it seeks because it has not demonstrated a likelihood of success on the merits of its underlying RICO and common law claims.  The Donziger and Ecuadorian defendants hereby incorporate by reference as if fully set forth herein the Donziger defendants' long-pending motion to dismiss pursuant to Rule 12(b)(6) (Dkt. Nos. 302-304 & 325) and the Donziger defendants' and the Ecuadorian defendants' opposition to Chevron's original motion for an order of attachment and sur-reply in support thereof (Dkt. Nos. 365 & 372-373).  As set forth in detail in those pleadings, and as discussed below, Chevron has failed properly to state any claim against the Donziger defendants or the Ecuadorian defendants, much less demonstrated a likelihood to succeed on the merits of those claims.

---

[11] Dkt. No. 405, at 7.

a.   **Chevron has failed to state a valid RICO cause of action, much less establish any likelihood of success on the merits of that claim.**

Chevron's RICO cause of action is fatally flawed in multiple respects.

*First*, Chevron's RICO cause of action impermissibly seeks to apply RICO to alleged conduct that is overwhelmingly extraterritorial, in contravention of *Norex Petroleum Ltd. v. Access Indus., Inc.*, 631 F.3d 29 (2d Cir. 2010). At the heart of the Chevron's RICO claim is the *Aguinda* litigation in Ecuador, and the great majority of the racketeering conduct alleged by Chevron involves conduct outside the United States involving non-U.S. citizens. Chevron's tactical inclusion of some allegations of conduct occurring inside the United States cannot remedy this defect. "It is the rare case of prohibited extraterritorial application that lacks all contact with the territory of the United States. But the presumption against extraterritorial application would be craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in the case." *Morrison v. Nat'l Australia Bank Ltd.*, 130 S.Ct. 2869, 2883 (2010); *see* Dkt. No. 303, at 2-6; Dkt. No. 325, at 1.

*Second*, Chevron lacks standing to pursue its RICO claim. For Chevron to have standing, defendants' alleged injurious conduct must be both the factual and proximate cause of the injury alleged. *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113 120 (2d Cir. 2003). "Proximate cause, in this context, refers not to the foreseeability of harm to plaintiff, but instead to the directness of the relationship between the purported enterprise's alleged criminal acts and the plaintiff's injuries." *Picard v. Kohn*, No. 11 Civ. 1181 (JSR), 2012 WL 566298, at * 3 (S.D.N.Y. Feb. 22, 2012). "Acts that merely 'furthered, facilitated, permitted or concealed an injury which happened or could have happened independently of the act' do not directly cause that injury, and thus do not proximately cause it." *Id.* (citing cases).

In this case, Chevron's alleged injuries—the Judgment against it in Ecuador, the harm to its reputation resulting from the *Aguinda* litigation, and the attorneys' fees it has incurred—all "could have happened independently" of anything the Donziger defendants are alleged to have

8

done.  The *Aguinda* litigation is the direct result not of Donziger's alleged conduct, but Chevron's insistence that the Ecuadorian plaintiffs' environmental tort claims be litigated in Ecuador, rather than the United States.  And Chevron presented the courts in Ecuador with all of the same allegations of fraud that are at issue in this case, and the Ecuadorian courts rejected those allegations and concluded the Chevron was liable for its predecessor's environmental crimes.  Therefore, at most, the Donziger defendants "merely 'facilitated'"[12] the Ecuadorian Judgment, to the extent that the rulings of a sovereign nation's trial and appellate courts can be said to have been facilitated by alleged misconduct that was known to and considered by those courts in rendering their decisions, which is insufficient to establish proximate cause and RICO standing.  *Id.*

*Third*, Chevron has not alleged a pattern of racketeering activity.  All of the Donziger defendants' alleged bad acts, according to Chevron's Amended Complaint, were related to, and in furtherance of, defendants' alleged unity goal of forcing Chevron to pay a large settlement to resolve the *Aguinda* litigation.  At best, Chevron has alleged a single act of racketeering.  *See* Dkt. No. 303, at 6-8; Dkt. No. 325, at 1-2.

*Fourth*, Chevron has not adequately alleged extortion under the Hobbs Act or New York State law.  Virtually every court to have considered the issue, including multiple courts in this District, have concluded that neither threatening nor prosecuting a lawsuit in order to obtain money or property constitutes extortion for the purposes of RICO, even if the lawsuit were meritless or based on false evidence, which defendants deny was the case here.  *See, e.g., Deck v. Engineered Laminates*, 349 F.3d 1253, 1257-1258 (10th Cir. 2003); *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002); *G-I Holdings, Inc. v. Baron & Budd*, 1798 F. Supp. 2d 233, 259 (S.D.N.Y. 2001).  "If a suit is groundless or filed in bad faith, the law of torts may provide a remedy.  Resort to a federal criminal statute is unnecessary." *I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265, 267-68 (8th Cir. 1984); *see* Dkt. No. 303, at 8-11; Dkt. No.

---

[12] *Picard*, 2012 WL 566298, at *4.

325, at 2.

*Fifth*, Chevron has not alleged the reliance and resulting harm necessary to support a claim of mail or wire fraud. *See* Dkt. No. 303, at 11-15; Dkt. No. 325, at 2-3.

*Sixth*, Chevron alleged false statements to U.S. courts and alleged efforts to cover up their unlawful conduct in connection with 28 U.S.C. § 1782 discovery proceedings do not constitute predicate acts under RICO. Chevron is attempting to elevate discovery disputes in the course of litigation to the level of racketeering. Chevron's allegations, for the most part, also refer generally to "RICO Defendants" and not to specific defendants, which is improper. 628 F. Supp. 2d 475, 495 S.D.N.Y. 2009) ("lumping the defendants into collective allegations results in a failure to demonstrate the elements of 1962(c) with respect to each defendant individually"). The impropriety of this practice is heightened here, where the request for a TRO and an order of attachment are sought only against some, but not all, of the alleged RICO defendants. Chevron has not shown that any particular defendant acted with any wrongful intent or improper purpose in any U.S. proceeding. *See* Dkt. No. 303, at 15-16; Dkt. No. 325, at 3-4; Dkt. No. 365, at 9-10.

*Seventh*, Chevron's money laundering claims against the Donziger defendants are dependent upon its allegations that Donziger has committed Hobbs Act extortion and mail and wire fraud. Because Chevron's allegations with respect to those predicate acts are insufficient, "the 'specified unlawful activity' required [to support its money laundering claim] may not be satisfied by reference to those allegations." *West 79th Street Corp. v. Congregational Kahl Minchas Chinuch*, No. 03 Civ. 8606 (RWS), 2004 WL 2187069, at *9 (S.D.N.Y. Sep. 29, 2004); *see* Dkt. No. 303, at 16-17; Dkt. No. 325, at 4.

### b.    Chevron's RICO conspiracy cause of action is also defective and unlikely to succeed on the merits.

Because Chevron has failed adequately to state a claim under RICO, its conspiracy to violate RICO claim also fails. *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F. 3d 159, 182 (2d Cir. 2004).

c.  **Chevron has not shown that it is likely to succeed on the merits of its unjust enrichment or common-law fraud claims, the only state-law causes of action it relies upon in its renewed motion.**

(i)  **Unjust enrichment**

Although Chevron claims that defendants have been enriched as a result of the *Aguinda* litigation and the Ecuadorian Judgment, Chevron has not alleged—and cannot allege—that defendants have been enriched at *Chevron's* expense.  Chevron has not paid a penny to defendants as a result of the *Aguinda* litigation, having vowed to fight until hell freezes and then continue to fight on the ice, rather than pay to remedy the human and environmental devastation caused by its reckless drilling operations.  Nor has anyone else paid defendants any money to which Chevron is legally or equitably entitled. *See e.g., Axel Johnson, Inc. v. Arthur Andersen & Co.*, 830 F. Supp. 204, 212 (S.D.N.Y. 1993) ("[N]o cause of action for unjust enrichment lies for hypothetical future liabilities.  To be actionable, a claim for unjust enrichment requires that the defendant already has been enriched."); *see also* Dkt. No. 303 at 24; Dkt. No. 325 at 7; Dkt. No. 365 at 13.

Chevron argues that "it does not matter" that any alleged enrichment has not been at Chevron's expense.  It is, however, black letter New York law that to recover for unjust enrichment, the enrichment must be at the plaintiff's expense. *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) ("To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) *at the plaintiff's expense*; and (3) that equity and good conscience require restitution.")(emphasis added)).  The "essence" of a claim for unjust enrichment "is that one party has received money or a benefit *at the expense of another*." *Marketplace LaGuardia Ltd. Partnership v. Harkey Enter., Inc.*, No. 07-CV-1003 (CBA), 2008 WL 905188, at *6 (E.D.N.Y. Mar. 31, 2008) (internal quotations omitted; emphasis added); *see also See Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 531 (S.D.N.Y. 2007) (stating that unjust enrichment in New York requires enrichment at plaintiff's expense).  "*Where the defendant receives a benefit, but not at the plaintiff's expense, an unjust enrichment claim fails.*" *Id.* (citing *Giant Supply Corp. v.*

11

*City of New York*, 607 N.Y.S.2d 29 (1998)) (emphasis added).

Indeed, this Court has recognized this well-established rule no fewer than fifteen times. *See, e.g., Harger v. Price*, 204 F. Supp. 2d 699, 710 (S.D.N.Y. 2002) (Kaplan, J.) ("In order to state a claim for unjust enrichment under New York law 'plaintiff must show that (1) defendant was enriched, (2) the enrichment was *at plaintiff's expense* and (3) the circumstances were such that equity and good conscience require defendant to make restitution.'" (emphasis added)); *Arthur Properties, S.A. v. ABA Gallery, Inc.*, 11 CIV. 4409 LAK, 2011 WL 5910192, *4 (S.D.N.Y. Nov. 28, 2011) (Kaplan, J.) (enrichment must be at plaintiff's expense); *Amusement Indus., Inc. v. Midland Ave. Associates, LLC*, 10 CIV.5064 LAK GWG, 2011 WL 3463117, at *18 (S.D.N.Y. Sept. 27, 2011) (Kaplan, J.) (same); *Prime Mover Capital Partners, L.P. v. Elixir Gaming Technologies, Inc.*, 793 F. Supp. 2d 651, 679 (S.D.N.Y. 2011) (Kaplan, J.) (enrichment must be at plaintiff's expense); *Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 784 (S.D.N.Y. 2011) (Kaplan, J.) (same); *In re Parmalat Sec. Litig.*, 684 F. Supp. 2d 453, 484 (S.D.N.Y. 2010) (Kaplan, J.), *aff'd sub nom. Food Holdings Ltd. v. Bank of Am. Corp.*, 423 Fed. Appx. 73 (2d Cir. 2011); *Amusement Indus., Inc. v. Stern*, 693 F.Supp.2d 327, 356 (S.D.N.Y. 2010) (Kaplan, J.) (same); *Carroll v. LeBoeuf, Lamb, Greene & MacRae, LLP*, 623 F. Supp. 2d 504, 513 (S.D.N.Y. 2009) (Kaplan, J.) (same); *Carmona v. Spanish Broad. Sys., Inc.*, 08 CIV. 4475 (LAK), 2009 WL 890054, at *6 (S.D.N.Y. Mar. 30, 2009) (Kaplan, J.) (same); *Stein v. Gelfand*, 476 F. Supp. 2d 427, 435 (S.D.N.Y. 2007) (Kaplan, J.) (same); *In re Rezulin Products Liab. Litig.*, 392 F. Supp. 2d 597, 618 (S.D.N.Y. 2005) (Kaplan, J.) (same); *In re Rezulin Products Liab. Litig.*, 390 F. Supp. 2d 319, 341 n.112 (S.D.N.Y. 2005) (Kaplan, J.) (same); *Weisberg v. Smith*, 401 F. Supp. 2d 359, (S.D.N.Y. 2005) (Kaplan, J.) (same); *Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 166 (S.D.N.Y. 1998) (Kaplan, J.) (same); *see also Harger*, 204 F.Supp.2d at 710 ("In contrast, DWWC was not enriched at plaintiff's expense. . . . In consequence, there is no basis for the claim of unjust enrichment against Commissioner.com.").

None of the cases Chevron cites in an attempt to get around this bedrock principle of

New York law stands for the proposition that an unjust enrichment claim will lie in the absence of a benefit "at the plaintiff's expense." For example, in *EBC I, Inc. v. Goldman Sachs & Co.*, 777 N.Y.S.2d 440 (2004), the "enrichment" was "effectively *conferred by plaintiff* in the form of a lower price for its shares." *Id.* at 443-444 (emphasis added). The plaintiff in *EBC I* would have received the full value for its shares but for defendants' unjust enrichment. The alleged unjust enrichment was thus at the plaintiff's expense—the plaintiff was deprived of the full, fair value of its shares because, as the plaintiff alleged, "defendant underpriced plaintiff's shares in order to reap an additional profit . . . when it 'flipped' its shares in the balloon-priced aftermarket." *Id.* at 442-443. The decisions in *Mfrs. Hanover Trust Co. v. Chemical Bank*, 160 A.D.2d 113 (N.Y. 1st. Dept. 1990), and *Breakaway Solutions, Inc. v. Morgan Stanley & Co., Inc.*, 2004 WL 1943900 (Del. Ch. Aug. 27, 2004), are consistent with the longstanding rule of New York law that an unjust enrichment claims requires enrichment at the plaintiff's expense. The plaintiff in *Mfrs. Hanover Trust* sought to recover from the defendant "the first of two redundant electronic wire transfer payments." 160 A.D.2d at 114. Thus, since plaintiff had sent an extra wire payment, the defendant was enriched "at the plaintiff's expense." *Id.* at 117. Similarly, in *Breakaway Solutions*, the alleged unjust enrichment was, in the Court's words, "at Breakaway's expense." 2004 WL 1943900, *15.

Despite having the opportunity to do so in its original attachment motion, reply, or renewed attachment motion, Chevron still has not, and cannot, identify any alleged enrichment that has occurred "at Chevron's expense." No enforcement has occurred. No judgment has been paid. No money or benefits have been conferred on defendants by Chevron. Chevron's legally infirm and improper unjust enrichment claim cannot serve as the basis for any attachment or restraining order.

What is more, in order to demonstrate a likelihood of success on this equitable claim, Chevron must show that its own hands are clean, which even the limited evidence the Ecuadorian defendants so far have been able to obtain through discovery (the Donziger defendants, of course, have been deprived by the Court of any opportunity to date to conduct any

discovery) shows that Chevron's hands are as soiled as its former oil fields in Ecuador.[13]

### (ii)   Common law fraud

Essentially conceding its inability to prove likelihood of success on the merits of its fraud claim, Chevron relegates its arguments in support of this claim to a single footnote,[14] rehashing some of Chevron's rote allegations of fraud.  Nothing in Chevron's footnote changes the fact that its common law fraud claim against the Donziger and Ecuadorian defendants fails to allege that Chevron detrimentally relied upon any alleged false statement by any defendant or that it suffered any harm as a result of any such reliance.  All of the misrepresentations alleged by Chevron were directed to third-parties (*e.g.,* U.S. and Ecuadorian courts and government officials, and investors, analysts and media) with the alleged intent of deceiving those third parties, not Chevron.  *See City of New York v. Smokes-Spirits.Com, Inc.,* 541 F.3d 425, 545 (2d Cir. 2008), *overruled on other grounds by Hemi Group, LLC v. City of New York,* 130 S.Ct. 983 (2010) ("allegations of third-party reliance . . . are insufficient to make out a common law fraud claim under New York law").  Chevron further undercuts its fraud theory by simultaneously accusing every Ecuadorian judge involved in the trial and appeals of the *Aguinda* case of being corrupt and engaged in a conspiracy with defendants.  *E.g.,* Dkt. No. 405, at n.6.  And Chevron has not alleged that it suffered any harm, much less the supposed $260 million of alleged "damages," as a direct result of its reliance on any of defendants' purported misstatements.  *See Amusement Indus.,* 693 F. Supp. 2d at 347; *Schuh v. Druckman & Sinel, LLP,* No. 07 Civ. 336 (LAK) (GWA), 2008 WL 542504, at *10 (S.D.N.Y. Feb. 29, 2008); *see generally* Dkt. No. 303, at 17-20; Dkt. No. 325, at 4-5; Dkt. No. 365, at 10-11.

---

[13]   Defendants hereby incorporate by reference the evidence of Chevron's fraud and unclean hands discussed in defendants' opposition to Chevron's prior motion for attachment, *see* Dkt. No. 365, at 25-32 and evidence cited therein, as well as earlier evidence presented to this Court.  *See* Dkt. Nos. 152-154, 174-176.

[14] Dkt. No. 405, at n.6.

**d.      Chevron's other state-law causes of action are equally without merit.**

Chevron's renewed motion for attachment does not present any basis for this Court to enter a TRO, or an order of attachment, based upon Chevron's claims of tortious interference with contract, trespass to chattels, civil conspiracy, or New York Judiciary Law § 487. Chevron has not tied its supposed "damages" to any of these claims. However, to the extent the Court construes Chevron's motion as raising these claims, Chevron has failed to establish—and cannot establish—a likelihood of success on the merits as to any of them.

**(i)      Tortious interference with contract**

Chevron's tortious interference with contract claim suffers multiple, incurable defects. *First*, it is time barred. The relevant statute of limitations is three years. *See Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281, 1287 (2d Cir. 1986). Yet, the *Aguinda* case commenced eight years ago, and Chevron has publicly complained about Ecuador's supposed breach of its obligations under the 1998 Final Release for more than six years. Indeed, Chevron asserted breach of contract counterclaims premised on the 1998 Final Release against the Republic of Ecuador in 2005. *See Republic of Ecuador v. ChevronTexaco Corp.*, 376 F. Supp. 2d 334, 344 (S.D.N.Y. 2005); *see also* Dkt. No. 303, at 20-21; Dkt. No. 325, at 5-6. And Chevron has publicly complained about the alleged effort by Donziger and others to encourage the Ecuadorian government to assist the *Aguinda* plaintiffs for well over three years. *See, e.g.,* Dkt. No. 64-10 (Elsen Cert., Ex. Q) (Chevron complaining as of October 2007). Accordingly, New York's statute of limitations precludes Chevron's claim.

*Second,* Chevron has not alleged, and cannot establish, that the Donziger or Ecuadorian defendants are the cause of any alleged breach of contract by the Republic of Ecuador. Instead, Chevron's Amended Complaint alleges that defendants' relationship with the government of Ecuador regarding the *Aguinda* litigation is one of "collaboration" and "collusion." Amended Complaint ¶¶ 81, 85. These allegations negate any claim that defendants' conduct was the "but for" cause of Ecuador's alleged breach of its agreements with Texaco. *See, e.g., Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 294 (S.D.N.Y. 1998); *see also*

Dkt. No. 303, at 21-22; Dkt. No. 325, at 6.

### (ii)   Trespass to chattels

Chevron's allegations that defendants have interfered with Chevron's goodwill and reputation and have caused Chevron to expend resources litigating the *Aguinda* suit fail to satisfy the legal requirements of a trespass to chattels claim under New York law.  Chevron fails to allege any physical interference,  and it fails to allege any interference with chattels.  *See School of Visual Arts v. Kuprewicz,* 771 N.Y.S. 2d 804, 807 (N.Y. 2003) (trespass to chattels claim requires physical interference with personal property).  "As intangibles, goodwill and reputation do not fit within the definition of a chattel."  *Doe ex rel.  Doe v. Federal Exp. Corp.,* 571 F. Supp. 2d 330, 333 (D. Conn. 2008).  If Chevron's trespass allegations were sufficient, any defendant in any litigation could sue the plaintiff for trespass to chattels based upon the reputational and financial impact of the plaintiff's lawsuit.  That is not the law.  *See* Dkt. No. 303, at 22023; Dt. No. 325, at 6-7; Dkt. No. 365 at 12.

### (iii)   Civil conspiracy

There is no independent tort of civil conspiracy under New York law.  *See* Dkt. No. 278, at 10.  Therefore, because Chevron has failed to sufficiently allege any independent tort, it cannot succeed on its civil conspiracy claim.  *See Naughtright v. Weiss,* -- F. Supp. 2d -- , No. 10 Civ. 8451 (RWS) 2011 WL 5835047, at * 10 (S.D.N.Y. Nov. 18, 2011).  Moreover, Chevron has not established—and cannot establish– that defendants, particularly the Ecuadorian defendants targeted by its present motion, who are indigenous residents of the Ecuadorian Amazon, knowingly agreed to wrongfully deprive Chevron of its property.  *See, .e.g., Albion Alliance Mezzanine Fund, L.P. v. State Street Bank & Trust Co.,* 797 N.Y.S. 2d 699, 707 (N.Y. Supp., 2003).  ("A claim for civil conspiracy requires, *inter alia,* proof of an agreement to engage in a common scheme or plan to deprive plaintiff of his property."  (internal quotation omitted)).  Nor has Chevron shown any overt act by the Ecuadorian defendants in furtherance of the alleged conspiracy.  *See Am. Bldg. Maint. Co. v. N.Y. v. Acme Prop. Serv., Inc.,* 515 F. Supp. 2d 298, 318

(N.D.N.Y. 2007). They simply elected to sue Chevron in Ecuador, the venue Chevron insisted upon, seeking redress for the human and environmental devastation wrought by Chevron's predecessor-in-interest. Dkt. No. 303 at 25; Dkt. No. 325 at 7-8; Dkt. No. 365 at 13-14.

### (iv)   New York Judiciary Law § 487

Chevron's New York Judiciary Law § 487 claim against the Donziger defendants fails to allege that Donziger committed any malfeasance while representing any party in any New York proceeding involving Chevron. Chevron's failure to do so necessitates the dismissal of this claim. *See Amalfitano v. Rosenberg, 427* F. Supp. 2d 196, 207 (S.D.N.Y. 2006) (Section 487 only "supports a civil action by a party to a litigation against the attorneys representing parties in the litigation"); *Oakes v. Muka*, 868 N.Y.S.2d 796, 798 (2008) (Judiciary Law § 487 "applies to an attorney acting in his or her capacity as an attorney."); *see also Schertenleib v. Traum,* 589 F.2d 1156, 1166 (2d Cir. 1978)(holding that Section 487 does not have extraterritorial application" and applies only to "the conduct of litigation before the New York courts"); *see generally* Dkt. No. 303, at 25-26; Dkt. No. 325, at 8-9.

### REQUESTED RELIEF

Defendants request the following relief:

*First*, the Court should vacate the Order to Show Cause why a TRO should not be entered, provide an additional 14-days for defendants to respond to the Order to Show Cause why an order of attachment should not be entered against defendants, attaching all of their assets, vacate the March 27 hearing on the Order to Show Cause, and set a new hearing date in April, as the defendants have not been afforded sufficient time to respond to Chevron's thirty-five page memorandum of law, over 350 exhibits, and new fact and expert declarations.

*Second*, if the Court is considering issuing a TRO, and eventually an order of attachment, it should require Chevron to post a bond in the amount of the Judgment it effectively seeks to enjoin, or at least in the amount of the attachment ordered.

*Third*, if the Court issues a TRO, it should narrowly circumscribe the terms of that TRO in such a way as to confirm that:

(1) Nothing in the TRO shall prohibit any party seeking legal advice, including the provision of legal advice related to contemplated or future litigation funding arrangements;

(2) Nothing in the TRO shall prohibit the parties or their counsel from defending this action, including prosecuting any and all appeals and satisfying obligations and costs in connection with same;

(3) Nothing in the TRO shall prohibit counsel from engaging in legal work on behalf of their client(s) and/or preparing work product for use in the Ecuadorian litigation, in a future foreign judgment enforcement or recognition action, or in defending or offensively pursuing other actions against Chevron or its agents, and satisfying obligations and costs in connection with same;

(4) Nothing in the TRO shall prohibit any party from retaining counsel in connection with any future proceedings, including future judgment enforcement proceedings, including by and through the assignment of contingent interests in the Ecuadorian Judgment;

(5) Nothing in the TRO shall impair any existing contractual relationships between the parties and any third party or counsel;

(6) Nothing in the TRO shall prohibit any party or counsel for any party from seeking, contracting for, or obtaining litigation funding arrangements for payment of legal representation or other litigation costs in the above-captioned action or any other action, including foreign judgment enforcement proceedings;

(7) Nothing in the TRO shall prohibit any funder from financing the representation of any party in the above-captioned action or any other action, including future potential judgment enforcement proceedings, and litigation funders and other third parties legally entitled shall continue to enjoy first priority payment status;

(8) Nothing in the TRO shall affect any contractual rights any person or entity may have with any party to receive and/or retain the benefit of any and all such contracts;

18

(9) The personal assets of the parties shall be not subject to the terms of the TRO; and

(10) The assets of third parties, including defendants' agents, shall not be subject to the terms of the TRO.

                                           Respectfully submitted,

Dated:  March 11, 2012

                              By: /s/ Tyler G. Doyle_____
                                   TYLER G. DOYLE
                                   NY Bar  No. 4372637
                                   CRAIG SMYSER (*pro hac vice pending*)
                                   LARRY R. VESELKA (*pro hac vice
                                   pending*)
                                   SMYSER KAPLAN & VESELKA, L.L.P.
                                   700 Louisiana, Suite 2300
                                   Houston, TX 77002
                                   Telephone:  (713) 221-2330
                                   Facsimile:   (713) 221-2320
                                   Email:   tydoyle@skv.com
                                   Email:   csmyser@skv.com
                                   Email:   lvesalka@skv.com

                                   *Attorneys for Defendants Hugo Gerardo
                                   Camacho Naranjo and Javier Piaguaje
                                   Payaguaje*


                              By: /s/ Elliot R. Peters_____
                                   ELLIOT R. PETERS
                                   JOHN W. KEKER (*pro hac vice*)
                                   JAN NIELSEN LITTLE (*pro hac vice*)
                                   KEKER & VAN NEST LLP
                                   633 Battery Street
                                   San Francisco, CA  94111-1809
                                   Telephone:  (415) 391-5400
                                   Facsimile:   (415) 397-7188
                                   Email:   epeters@kvn.com
                                   Email:   jkeker@kvn.com
                                   Email:   jlittle@kvn.com

                                   *Attorneys for Steven Donziger, The Law
                                   Offices Of Steven R. Donziger And
                                   Donziger & Associates, PLLC*

                                           19