UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEVRON CORPORATION,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>STEVEN DONZIGER, et al.,<br><br>　　　　　　　Defendants. | Case No. 11-CV-0691 (LAK) |

**STEVEN DONZIGER, THE LAW OFFICES OF STEVEN R. DONZIGER, AND DONZIGER & ASSOCIATES, PLLC'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR LEAVE TO FILE (1) AMENDED ANSWER AND (2) COUNTERCLAIMS**

684231

Defendants Steven Donziger, The Law Offices of Steven R. Donziger, and Donziger and Associates, PLLC (collectively, "Donziger"), move this Court for leave (1) to file an Amended Answer to Chevron's Amended Complaint to withdraw the affirmative defense of collateral estoppel, and (2) to assert counterclaims. A copy of Donziger's Amended Answer and Counterclaims is attached as Exhibit A.

I.      SUMMARY

In response to this Court's July 31, 2012 Order with regard to Donziger's previously asserted defenses of *res judicata* and collateral estoppel, in order to make clear that Donziger is not asserting a collateral estoppel defense, and in order to address the Court's observation that the Ecuadorian Plaintiffs' stipulation has no bearing on the prior-adjudication defenses asserted by Donziger, *see* Dkt. No. 550, at 62, Donziger hereby moves the Court for leave to amend his Answer to withdraw the affirmative defense of collateral estoppel (the 7th affirmative defense in his current Answer). The proposed Amended Answer also deletes the previously asserted *res judicata* defense which the Court dismissed in its July 31 Order,[1] and notes that the Court dismissed Chevron's Ninth Claim for Relief on February 21, 2012.

Donziger also seeks leave to assert new counterclaims against Chevron for fraud and civil extortion. As detailed in the proposed counterclaims, Chevron has engaged in a coordinated scheme of intentionally false and misleading statements and extortion intended to harass and intimidate Donziger and eliminate the fruits of Donziger's and the Ecuadorian Plaintiffs' now nearly 19-years' worth of legal efforts in Ecuador. As part of its scheme, for example, Chevron has made false and misleading statements regarding: the plot by Diego Borja and Wayne Hansen

---

[1] To the extent the Court's Order did not completely dismiss Donziger's *res judicata* defense, Donziger seeks leave to amend to withdraw that defense as well.

to bribe and discredit Judge Nunez; the evidentiary record in the Lago Agrio litigation, including the specific scientific evidence supporting the judgment against Chevron; the statements and opinions of the Ecuadorian Plaintiffs' environmental experts and counsel concerning the evidentiary record; Donziger's statements and conduct during the Lago Agrio litigation; and Donziger's knowledge of and participation in the alleged ghostwriting of the Lago Agrio Judgment.  With respect to Donziger in particular, Chevron's efforts are calculated to coerce Donziger into abandoning or unjustly comprising his efforts to hold Chevron accountable for the environmental devastation caused by its predecessor in the Ecuadorian Amazon, thereby depriving him of his rights and interests to advise the Ecuadorian Plaintiffs free from fear and intimidation, and his lawful interest in the multi-billion dollar judgment rendered against Chevron.

Donziger's motion is timely under the Court's scheduling order and should be granted.

## II.   PROCEDURAL BACKGROUND

This action commenced on February 1, 2011, when Chevron, in an attempt to preempt recognition and enforcement of an expected judgment in Ecuador (the "Judgment"), asserted nine causes of action, including claims for alleged fraud, civil conspiracy, unjust enrichment and RICO violations, against Donziger, the Ecuadorian Plaintiffs, and various others.  Dkt. No. 1.  In addition to seeking money damages, in Claim Nine of its Complaint, Chevron sought a permanent injunction under the Declaratory Judgment Act and the New York Foreign Judgments Recognition Act (the "Recognition Act") barring the enforcement, anywhere in the world outside of Ecuador, of any judgment rendered against it by the Ecuadorian courts.  On February 14, 2011, the anticipated Judgment was indeed rendered by the Ecuadorian Court against Chevron. On March 7, 2011, this Court granted a global injunction barring any efforts by Donziger and the Ecuadorian Plaintiffs to seek recognition or enforcement of the Judgment, based on Claim Nine

of the Complaint, which injunction was subsequently appealed to the Second Circuit.

On April 15, 2011, while that appeal was pending, this Court bifurcated Claim Nine for an expedited trial regarding the enforceability of the Judgment and stayed discovery regarding the remaining claims.  Dkt. Nos. 278-279.  Although Chevron had originally named Donziger as a defendant to the Claim Nine action for declaratory judgment, on April 20, 2011, five days after the Court's bifurcation order, Chevron filed an Amended Complaint dropping him from Claim Nine.  Dkt. No. 283.  Donziger subsequently moved on May 2, 2011 to intervene in the Claim Nine action.  Dkt. No. 295.  Donziger's Answer to Chevron's Amended Complaint was filed May 4, 2011, while his motion to intervene was still pending.  Dkt. No. 307.  The Court ruled on May 31 that Donziger had no right to participate in any substantive way in the bifurcated Claim Nine action, *see* Dkt. No. 327, and the Court also severed Claim Nine from the remainder of the action to proceed while Claims One through Eight were stayed, Dkt. No. 328.  Donziger was effectively "benched" from the litigation as of May 2011.

Donziger's May 4 Answer included a number of general affirmative defenses, including defenses of *res judicata* and collateral estoppel.  In their Answer, the Ecuadorian Plaintiffs also asserted affirmative defenses of *res judicata* and collateral estoppel.  In September 2011, while the appeal of the preliminary injunction Order was pending, the Ecuadorian Plaintiffs filed a stipulation with this Court stating in relevant part that "[t]he Ecuadorian Plaintiffs further agree and stipulate never to seek recognition of the Lago Agrio Judgment under New York law.  The Ecuadorian Plaintiffs agree and stipulate never to seek recognition of the Lago Agrio Judgment in the State of New York by any means or under any law."  Case No. 11-cv-3718, Dkt. No. 296.  By stipulating that they would not seek recognition of their judgment in the State of New York "by any means," the Ecuadorian Plaintiffs made clear that the defense of collateral estoppel

3

would never apply in this case with respect to the Judgment, as that defense requires recognition of a foreign judgment before collateral estoppel effect can be granted. *See Alfadda v. Fenn*, 966 F. Supp. 1317, 1325 (S.D.N.Y. 1997).

On September 19, 2011, the Second Circuit vacated this Court's preliminary injunction order and stayed proceedings in the Claim Nine action pending its opinion. *See Chevron Corp. v. Naranjo*, 667 F.3d 232, 246 (2d Cir. 2012). In the opinion that followed in January 2012, the Second Circuit rejected this Court's interpretation of the Recognition Act as "grant[ing] putative Judgment debtors a cause of action to challenge foreign judgments before enforcement of those judgments is sought," concluding instead that "Judgment debtors can challenge a foreign judgment's validity under the Recognition Act only defensively, in response to an attempted enforcement …." *Id*. at 234. In dismissing Chevron's declaratory relief action, the Second Circuit emphasized that U.S. courts may not issue advisory opinions regarding the legitimacy of foreign judgments. *Id*. at 246.

In February 2012, this Court lifted the stay of proceedings with respect to this action (Claims One through Eight), but directed that deposition testimony should not be given, nor interrogatories or requests for admissions substantively answered, nor requested or subpoenaed documents produced pending further order of the Court. Dkt. No. 389.

On March 1, 2012, before a scheduling order had been entered and before any discovery could be taken in this matter, Chevron moved for partial summary judgment on Donziger's and the Ecuadorian Plaintiffs' asserted affirmative defenses of *res judicata* and collateral estoppel. In an apparent attempt to end-run the Second Circuit's dismissal of its declaratory judgment action, Chevron's motion challenged the defendants to demonstrate that the Judgment "is entitled to recognition under applicable U.S. law." Dkt. No. 397, at 1. Donziger and the Ecuadorian

4

Plaintiffs pointed out, in response, that Chevron's motion was moot in light of the Ecuadorian Plaintiffs' stipulation months earlier that they would "never seek recognition of the Lago Agrio Judgment in the State of New York by any means or under any law." Dkt. No. 450, at 4, 7-9.

On June 25, 2012, while Chevron's motion for partial summary judgment was pending, the Court vacated the remaining restrictions on discovery and issued a case schedule under which discovery must be completed no later than May 31, 2013. Dkt. No. 494. As modified by the Court's Order on July 25, 2012, Donziger's deadline for seeking leave to amend or to add parties is August 15, 2012. Dkt. No. 534. No trial date has been set, and the parties have for the last several weeks been meeting and conferring on scheduling and other issues.

On July 31, 2012, the Court issued an opinion on Chevron's motion for partial summary judgment. Dkt. No. 550. In it, the Court ruled that the Ecuadorian Plaintiffs' stipulation neither mooted their defenses of *res judicata* and collateral estoppel, nor sufficed to withdraw them without prejudice from this action. *Id*. at 59. With respect to Donziger specifically, the Court noted that he has "made no Representation comparable to that of the [Ecuadorian Plaintiffs] and [has] done nothing else to forego the benefit of that defense until [his] argument on this motion." *Id*. at 62. The Court indicated that a Motion to Amend the Answer would have been required to effectively withdraw the collateral estoppel defense, *id*. at 66-67, but further noted that even were the Court to treat the Ecuadorian Plaintiffs' stipulation as a motion by the Ecuadorian Plaintiffs and Donziger for leave to amend to withdraw their collateral estoppel and *res judicata* defenses, "that motion would be denied," *id*. at 70. Proceeding to the merits, the Court dismissed Donziger's and the Ecuadorian Plaintiffs' *res judicata* defense, but declined to rule "at this stage of the proceedings" that "Chevron is entitled to a determination in its favor regarding the recognizability and enforceability of the Judgment or the collateral estoppel defense." *Id*. at 97.

5

**III.     ARGUMENT**

Federal Rule of Civil Procedure 15(a)(2) specifies that federal courts should "freely give" leave to amend "when justice so requires."  Accordingly, "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith."  *See Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).  Although leave also may be denied if amendment has been unduly delayed, mere delay, absent a showing of bad faith or prejudice, is not grounds for denial of leave to amend.  *Id.*; *see also Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n. 6 (2d Cir. 1987) (citations omitted). Because Donziger's motion plainly satisfies the Rule 15(a) standard, for the reasons set forth below, the Court should grant him leave to withdraw his affirmative defense of collateral estoppel and to assert new counterclaims against Chevron.

    **A.     The Court Should Grant Leave to Amend to Withdraw the Affirmative Defense of Collateral Estoppel.**

Donziger proposes a simple amendment to his Answer to withdraw his collateral estoppel defense, and to delete the now-dismissed *res judicata* defense.

Donziger has not unduly delayed moving to amend.  As discussed above, Donziger was not a party to the now-dismissed declaratory judgment action.  The remainder of the litigation, Claims One through Eight, was stayed less than a month after Donziger filed his Answer, and has only recently been revived pursuant to the Court's June 25 Scheduling Order.  Donziger's request for leave to amend comes at an early stage *of this case*, before any significant discovery, and is hardly indicative of undue delay.

In its July 31, 2012 Order on Chevron's motion for partial summary judgment, the Court suggested that Chevron would be prejudiced by an amendment to withdraw *res judicata* and collateral estoppel defenses because Donziger's and the Ecuadorian Plaintiffs' failure to seek

6

leave to amend earlier caused Chevron to spend time and resources in discovery. Dkt. No. 550, at 68-69. But "the enormous resources expended litigating" the enforceability issue took place in the context of Chevron's declaratory judgment claim, Claim 9, which has now been dismissed in its entirety by order of the Second Circuit. Donziger was not even a party to that action, because Chevron dropped him as a defendant and the Court denied his requests to intervene. Moreover, the notion that Chevron was somehow prejudiced by having to conduct discovery regarding the enforceability of the Judgment for purposes of litigating affirmative defenses is misplaced, because the question whether that judgment is entitled to recognition or enforcement was already squarely presented by Chevron's affirmative claim for declaratory relief.

Nor is there any evidence of bad faith. In its July 31, 2012 Order, the Court suggested that to allow Donziger and the Ecuadorian Plaintiffs to take the issue of recognizability and enforceability "off the table" in this case "would be to acquiesce in a blatant exercise in forum shopping." Dkt. No. 550, at 69. This is not so. The Ecuadorian Plaintiffs' stipulation to the Court in September 2011, well before Chevron brought its motion for partial summary judgment, made clear that the recognition of the Judgment in New York was no longer an issue in this case, for the Ecuadorian Plaintiffs or, derivatively, for Donziger. There is no bad faith in Donziger confirming what has been clear since September, long before the Court lifted the stay in this matter. Moreover, since Donziger only has a contingency fee interest in the Judgment, he is not in a position affirmatively to seek its recognition or enforcement. Thus, Donziger cannot possibly be "forum shopping" by withdrawing his affirmative defense of collateral estoppel.

This action is just commencing. Written discovery is just beginning; the parties continue to meet and confer over the anticipated scope and timing of discovery. Other defendants have either already amended their answers to eliminate these *res judicata* and collateral estoppel

7

defenses, *see* Stratus Defendants' Amended Answer, Dkt. No. 499, at 88 and 90 (*cf.* Stratus Answer, Dkt. No. 474, at 88 and 90), or have similarly moved to amend to delete these claims, *see* Ecuadorian Plaintiffs' Motion to Amend, Dkt. No. 553.  Donziger should be permitted to amend his Answer accordingly.

      **B.**    **The Court Should Grant Leave to Assert the Proposed Counterclaims.**

The Court should grant leave to file the proposed counterclaims because Chevron would not suffer undue prejudice and Donziger has not committed undue delay or bad faith.  In determining prejudice, courts examine whether the opposing party will be required to expend significant additional resources, whether amendment will significantly delay disposition, and the movant's ability to bring a timely claim in another jurisdiction.  *Block,* 988 F.2d at 350.  None of these factors are implicated by the instant motion.

Because the core facts underlying the proposed counterclaims are closely related to, and largely intertwined with, Chevron's existing fraud and racketeering allegations, as well as Donziger's existing affirmative defenses, the addition of the proposed counterclaims will not require the expenditure of significant additional resources to conduct discovery or prepare for trial.  *Sea Trade Co., Ltd. v. FleetBoston Fin. Corp.*, No. 03 Civ. 10254 (JFK), 2006 WL 2786081, at *2 (S.D.N.Y. Sept. 26, 2006) (no undue prejudice where counterclaim arose from the same transaction that gave rise to the complaint).  In any event, "the need for new discovery is not sufficient to constitute undue prejudice on its own." *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 100 (S.D.N.Y. 2010).[2]

---

[2] *See also A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) ("even if discovery were prolonged, 'the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading'" (quoting *United States v. Continental Ill. Nat'l Bank & Trust Co.*, 889 F.2d 1248, 1255 (2d Cir.1989));

8

684231

Nor will the addition of new counterclaims delay resolution of this case. The parties served their initial disclosures just two weeks ago and discovery has just begun. No depositions have been discussed, much less scheduled. And no trial date has been set. Under these circumstances, there is simply no basis to conclude that Chevron would be unduly prejudiced by Donziger's assertion of the proposed counterclaims. *McCoy v. Goldberg*, 845 F. Supp. 155, 158 n.3 (S.D.N.Y. 1994) (no prejudice where discovery had barely commenced, no depositions had been scheduled, and no trial date had been set). Indeed, given that the proposed counterclaims are very likely "compulsory" in nature, it is Donziger who would be unfairly prejudiced if leave is not granted because he may well be barred from bringing a later independent action on those claims. *See* Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1417 (3d ed.).

Nor has Donziger unduly delayed seeking to assert the proposed counterclaims. Less than three months after Chevron commenced this action, this Court granted Chevron's request to bifurcate its declaratory judgment claim for an expedited trial regarding the enforceability of the Judgment. A consequence of that decision is that <u>*this* action</u> was largely inactive from April 15, 2011 until only a few months ago. Although the Court nominally lifted the stay of proceedings in February 2012, it did not issue a scheduling order or permit discovery to commence in the ordinary course until June 25 – less than two months ago. Donziger was excluded from participating in the bifurcated Claim Nine action, and is only now in a position to actively litigate and defend. In short, Donziger is not guilty of delay, much less undue delay. *McCoy*, 845 F. Supp. at 157 (S.D.N.Y. 1994) (holding that third-party defendant's delay of two and one-half years in seeking amend its Answer to add affirmative defenses and counterclaims did not

---

*New Windsor v. Tesa Tuck, Inc.*, 919 F. Supp. 662, 679 (S.D.N.Y. 1996) ("The burden of further discovery and motions is not a satisfactory basis to deny a motion to amend.").

9

684231

constitute bad faith where case had been dormant, in part, due to the court's decision to sever the instant third-party actions from the principal action); *see also In re AMF Bowling Sec. Litig.*, 99 CIV. 3023 (DC), 2003 WL 2012401, at *2 (S.D.N.Y. May 2, 2011) (15 month delay in seeking leave to amend was not "undue" because litigation was stayed for 7 of those months).

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Donziger's motion for leave to amend.

Dated:  August 15, 2012                                       Respectfully submitted,


By: */s/ John W. Keker*
JOHN W. KEKER (*pro hac vice*)
ELLIOT R. PETERS
JAN NIELSEN LITTLE (*pro hac vice*)
MATTHEW M. WERDEGAR (*pro hac vice*)
KEKER & VAN NEST, LLP
633 Battery Street
San Francisco, CA  94111-1809
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188
Email:   jkeker@kvn.com
Email:   epeters@kvn.com
Email:   jlittle@kvn.com

Attorneys for STEVEN DONZIGER, THE LAW OFFICES OF STEVEN R. DONZIGER, AND DONZIGER & ASSOCIATES, PLLC

10

684231