UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

             Plaintiff,

   v.

STEVEN DONZIGER, et al.,

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11 Civ. 0691 (LAK)


**PLAINTIFF CHEVRON CORPORATION'S MEMORANDUM
OF LAW IN SUPPORT OF ITS OPPOSITION TO DEFENDANTS HUGO
GERARDO CAMACHO NARANJO AND JAVIER PIAGUAJE
PAYAGUAJE'S MOTION FOR LEAVE TO FILE AMENDED ANSWER**


GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND .......................................................................................................................... 2

LEGAL STANDARD................................................................................................................... 4

ARGUMENT................................................................................................................................ 6

    A.    The LAP Representatives' Proposed Amendment Amounts To Bad Faith............ 6

    B.    The LAP Representatives Are Pursuing A Dilatory Motive. ................................ 8

    C.    Allowing The LAP Representatives To Withdraw The Collateral Estoppel Defense Would Prejudice Chevron........................................................................ 10

    D.    The LAP Representatives Have Unduly Delayed Seeking To Withdraw Their Collateral Estoppel Defense. ........................................................................ 12

    E.    Granting Leave To Amend Would Encourage Duplicative Litigation And Undermine Judicial Economy................................................................................ 14

CONCLUSION............................................................................................................................ 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*,
  626 F.3d 699 (2d Cir. 2010) ................................................................................................ 6

*Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*,
  760 F.2d 442 (2d Cir. 1985) ................................................................................................ 6

*Bergerson v. N.Y. State Office of Mental Health, Central N.Y. Psychiatric Ctr.*,
  652 F.3d 277 (2d Cir. 2011) ................................................................................................ 6

*Block v. First Blood Assocs.*,
  988 F.2d 344 (2d Cir. 1993) ...................................................................................... 10, 12

*Chevron Corp. v. Donziger*,
  768 F. Supp. 2d 581 (S.D.N.Y. 2011) ................................................................................ 8

*Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*,
  690 F.2d 1157 (5th Cir. 1982) .......................................................................................... 14

*City of L.A. v. San Pedro Boat Works*,
  635 F.3d 440 (9th Cir. 2011) ............................................................................................ 12

*Cresswell v. Sullivan & Cromwell*,
  922 F.2d 60 (2d Cir. 1990) .......................................................................................... 5, 10

*DCD Programs, Ltd. v. Leighton*,
  833 F.2d 183 (9th Cir. 1987) .............................................................................................. 5

*Dussouy v. Gulf Coast Inv. Corp.*,
  660 F.2d 594 (5th Cir. 1981) ............................................................................................ 14

*Foman v. Davis*,
  371 U.S. 178 (1962) ............................................................................................................ 5

*Gurary v. Winehouse*,
  235 F.3d 792 (2d Cir. 2000) ............................................................................................... 5

*In re Beacon Assocs. Litig.*,
  818 F. Supp. 2d 697 (S.D.N.Y. 2011) ................................................................................ 6

*Krumme v. WestPoint Stevens, Inc.*,
  143 F.3d 71 (2d Cir. 1998) ................................................................................................. 6

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*,
  192 F.3d 337 (2d Cir. 1999) ............................................................................................. 10

*Lozano v. Ocwen Fed. Bank, FSB*,
  489 F.3d 636 (5th Cir. 2007) ............................................................................................ 12

*McCoy v. Erie Ins. Co.*,
  204 F.R.D. 80 (S.D. W. Va. 2001) ..................................................................................... 7

# TABLE OF AUTHORITIES
**(**continued**)**

Page

*Perrian v. O'Grady*,
 958 F.2d 192 (7th Cir. 1992) ................................................................................ 14

*Ruotolo v. City of New York*,
 514 F.3d 184 (2d Cir. 2008) ............................................................................ 10, 12

*State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*,
 921 F.2d 409 (2d Cir. 1990) .............................................................................. 7, 10

*Steir v. Girl Scouts of the USA*,
 383 F.3d 7 (1st Cir. 2004) ..................................................................................... 10

*Stephenson v. Dow Chem. Co. (In re Agent Orange Prod. Liab. Litig.)*,
 220 F.R.D. 22 (E.D.N.Y. 2004) ......................................................................... 5, 14

*Strauss v. Douglas Aircraft Co.*,
 404 F.2d 1152 (2d Cir. 1968) .................................................................................. 5

*Whiting v. Incorporated Village of Old Brookville*,
 182 F.R.D. 14 (E.D.N.Y. 1998) .............................................................................. 5

*Williams v. Citigroup Inc.*,
 659 F.3d 208 (2d Cir. 2011) ................................................................................ 5, 8

*Wimm v. Jack Eckerd Corp.*,
 3 F.3d 137 (5th Cir. 1993) ..................................................................................... 13

**Statutes**

28 U.S.C. § 1782(a) ........................................................................................................ 7

**Rules**

Fed. R. Civ. P. 15(a) ....................................................................................................... 4

S.D.N.Y. L. Civ. R. 6.3 .................................................................................................. 6

**Other Authorities**

3-15 Moore's Federal Practice
 Civil § 15.02 (2012) ................................................................................................ 5

6 Wright, Miller & Kane, § 1487 .................................................................................. 12

**PRELIMINARY STATEMENT**

Defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje (the "LAP Representatives") seek leave to amend their answer "to withdraw the affirmative defense of collateral estoppel with prejudice to reassertion in this action." Mot. at 1. The LAP Representatives contend that their proposed amendment would preclude this Court from addressing the recognizability and enforceability of the $18 billion Ecuadorian judgment, and would allow the LAP Representatives to litigate that issue "in the fora of their choice." *Id*. at 8. The LAP Representatives attempted this very same maneuver in opposing Chevron's motion for partial summary judgment on the affirmative defenses of collateral estoppel and *res judicata*, which the Court granted in part on July 31, 2012. Dkt. 550. In that ruling, the Court treated the LAP Representatives' efforts to withdraw these defenses as a motion for leave to amend their answer, and then denied it on the basis of bad faith, prejudice to Chevron, and undue delay. *Id*. at 69. The LAP Representatives now effectively seek reconsideration of that decision. For the reasons that the Court already identified, as well as several others, the Court should deny their motion.

*First*, as this Court has already found, the LAP Representatives' proposed amendment amounts to bad faith, in that it is a "blatant exercise in forum shopping." *Id*.[1] *Second*, the LAP Representatives have a dilatory motive in seeking this amendment—it is part of their overarching strategy to delay, or even prevent, any court from reaching the extensive evidence of fraud underlying the Ecuadorian judgment, enabling the defendants to pursue enforcement of that judgment in what they deem to be the most favorable jurisdictions, where they hope the courts won't

---

[1] The motion to amend is a continuation of the LAP Representatives' bad faith attempt to avoid the collateral estoppel effect of a ruling in this Court, while they continue to litigate the issue in other *fora*. *See, e.g.*, Dkt. 400-26 (Ex. 2149) at 9-10 (arguing in the District of Maryland that determinations in the Ecuadorian judgment are entitled to "deference and preclusive effect.").

1

reach the issue of fraud.  *Third*, as this Court has also found, allowing the LAP Representatives to withdraw the collateral estoppel defense would prejudice Chevron because the issue of whether the judgment is entitled to recognition and enforcement has already been litigated here "virtually to the point of trial readiness."  Dkt. 550 at 68.  *Fourth*, the LAP Representatives have unduly delayed seeking this amendment, as this Court noted in its July 31 order.  Although the LAP Representatives filed this motion on the last day for seeking amendments under the Scheduling Order, that, of course does not render their proposed amendment *per se* timely—particularly when the LAP Representatives had been aware of the basis for the amendment for many months (during which they amended the answer as to other issues) and allowed Chevron to "expend[] enormous resources . . . litigating precisely the issue they now seek to take to other *fora*."  *Id*. at 69.  *Finally*, considerations of judicial economy also weigh heavily in favor of denying the LAP Representatives' efforts to engage in duplicative litigation on these same issues in other courts.

Accordingly, the Court should exercise its broad discretion under Rule 15 to deny the LAP Representatives' motion for leave to amend their answer.

## BACKGROUND

Chevron filed its First Amended Complaint on April 20, 2011.  Dkt. 283.  On May 10, 2011, the LAP Representatives filed an Answer asserting, among other things, the affirmative defenses of collateral estoppel and *res judicata*.  Dkt. 311.

On August 24, 2011, after obtaining leave of court, the LAP Representatives filed their First Amended Answer, which continued to assert collateral estoppel and *res judicata* as defenses.  Dkt. 350.

Two weeks later, on September 7, 2011, the LAP Representatives filed, in the "Count 9 action" (Case No. 11-cv-03718), a document in which they stated:

2

> The Ecuadorian Plaintiffs do not intend and specifically disclaim any intent to enforce whether through prejudgment attachment or any other method of enforcement, the Lago Agrio Judgment in the State of New York. The Ecuadorian Plaintiffs further agree and stipulate never to seek recognition of the Lago Agrio Judgment under New York law. The Ecuadorian Plaintiffs agree and stipulate never to seek recognition of the Lago Agrio Judgment in the State of New York by any means or under any law.

Dkt. 451-1 (hereinafter, the "Representation"). The Representation did not reflect any agreement with Chevron and it was not endorsed by any court. *Id.* The LAP Representatives filed the Representation eight days before the scheduled close of discovery in the Count 9 action, Dkt. 279, and nine days before the Second Circuit was to hear oral argument on the LAP Representatives' appeal from this Court's preliminary injunction order.

On March 1, 2012, Chevron moved for partial summary judgment on the LAP Representatives' affirmative defenses of collateral estoppel and *res judicata*.[2] Chevron argued, among other things, that the Ecuadorian judgment (which is the basis for these defenses) was not recognizable and thus not entitled to preclusive effect. Dkt. 397. In opposition, the LAP Representatives relied on their earlier Representation and argued that Chevron's motion was moot: "Because New York law would require Defendants to show that the Judgment is entitled to recognition under the New York Recognition Act in order to invoke res judicata or collateral estoppel, Defendants' stipulation precludes them from relying on the defenses of res judicata or collateral estoppel in this case." Dkt. 450 at 1-2.

On July 31, 2012, this Court granted Chevron's motion in part, dismissing the *res judicata* defense based on a finding that the Ecuadorian court expressly reserved Chevron's right to pursue actions in the United States. Dkt. 550 at 96. However, the Court denied Chevron's mo-

---

[2] Chevron also moved as to these same defenses as asserted by the Donziger Defendants.

3

tion as to the collateral estoppel defense.  *Id.* at 95.[3]

This Court's July 31 ruling also rejected the LAP Representatives' assertion that they were not relying on the Ecuadorian judgment in pleading the defenses of collateral estoppel and *res judicata*.  Specifically, the Court found that the LAP Representatives' answer had sufficiently asserted these defenses based on the Ecuadorian judgment—not other unspecified rulings—and that the LAP Representatives' arguments to the contrary were "internally inconsistent" and contrary to "their own words and actions" in the case.  *Id*. at 49-51.  Further, the Court held that the Representation did not moot the defenses because it amounted to an ineffective "unilateral amendment of the answers."  *Id*. at 66.  Even if the LAP Representatives had formally moved for leave to amend, the Court held "that motion would be denied" because the LAP Representatives had engaged in bad faith and undue delay, and granting leave to amend would prejudice Chevron.  *Id*. at 66-70.

On August 1, 2012—the day after this Court's ruling on partial summary judgment—the LAP Representatives moved for leave to amend their answer to withdraw the affirmative defense of collateral estoppel.

### LEGAL STANDARD

The LAP Representatives invoke the "liberal standard" of Rule 15, asserting that "leave to amend 'shall be freely given when justice so requires.'"  Mot. at 4 (quoting Fed. R. Civ. P. 15(a)).  But the LAP Representatives' own authorities confirm that the rationale for this liberality has no application here:  "If the underlying facts or circumstances relied upon by a plaintiff may

---

[3] The Court did, however, make a number of significant findings about defendants' fraud.  *See, e.g., id*. at 97 ("[T]he LAPs' procurement of the termination of judicial inspections, the adoption of the global assessment, and the appointment of Cabrera all unquestionably were tainted.  The secret participation of the LAP team in Cabrera's activities and its secret drafting of the bulk of Cabrera's report were tainted as well.").

4

be a proper subject of relief, he *ought to be afforded an opportunity to test his claim on the merits*." *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (emphasis added).[4]  Here, the LAP Representatives do not seek to test any claims or theories on the merits; they seek precisely the opposite—to evade adjudication of the defenses that they placed at issue and to preclude Chevron from litigating the recognizability of the Ecuadorian judgment.

In any event, even if some "liberality" were appropriate, liberality has its limits. "[L]eave to amend is not granted automatically or reflexively." *Whiting v. Incorporated Village of Old Brookville*, 182 F.R.D. 14, 16 (E.D.N.Y. 1998).  And "[p]arties will not be permitted to abuse the liberal amendment policy based upon the 'belief that [leave must be granted] in all cases, under all conditions even when they have been dilatory and substantial prejudice has resulted.'" *Stephenson v. Dow Chem. Co. (In re Agent Orange Prod. Liab. Litig.)*, 220 F.R.D. 22, 25 (E.D.N.Y. 2004) (quoting *Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152, 1158 (2d Cir. 1968)) (second brackets in original).[5]

"The court plainly has discretion . . . to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (citations omitted) (leave to amend properly denied when sought 17 months after commencement of action and after summary judgment motion).  Courts routinely deny leave to

---

[4]  *Accord DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) ("In exercising its discretion a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities."); 3-15 Moore's Federal Practice - Civil § 15.02 (2012) ("The Rule allows for liberal amendment in the interests of resolving cases on the merits.").

[5]  The LAP Representatives claim they have an "absolute right" to withdraw their defense and raise the issue instead "in the fora of their choice." Mot. at 8.  This ignores both Rule 15 (which requires leave of court to amend a pleading) and this Court's "broad discretion" in considering whether to grant leave to amend.  *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000).

5

amend where a motion evidences bad faith or undue delay, or would prejudice the opposing party.[6] As this Court has already found: "All of these factors are present here."  Dkt. 550 at 68.

## ARGUMENT

The LAP Representatives effectively seek reconsideration of this Court's July 31, 2012 order on partial summary judgment—which treated the Representation as a motion for leave to amend the answer to withdraw the defenses of collateral estoppel and *res judicata*, and then denied that motion based on the defendants' bad faith and undue delay, and prejudice to Chevron. The LAP Representatives raise no new arguments this time around.  Accordingly, the Court should again deny leave to amend.  *See Bergerson v. N.Y. State Office of Mental Health, Central N.Y. Psychiatric Ctr.*, 652 F.3d 277, 288-89 (2d Cir. 2011) (noting "a strong presumption against amendment of prior orders [absent] an intervening change of controlling law or . . . new evidence [becoming] available"); *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 701 (S.D.N.Y. 2011) ("Reconsideration of a previous order by the court is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." (quotation marks omitted)); S.D.N.Y. L. Civ. R. 6.3 (motions for reconsideration must set forth "concisely the matters or controlling decisions which counsel believes the Court has overlooked").

### A.    The LAP Representatives' Proposed Amendment Amounts To Bad Faith.

In ruling on Chevron's motion for partial summary judgment, this Court found that the LAP Representatives' (and other defendants') efforts to withdraw the defenses of collateral es-

---

[6]   *See AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726-27 (2d Cir. 2010) (leave to amend properly denied based on prejudice, where parties had already conducted extensive discovery and filed cross-motions for summary judgment); *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (leave to amend properly denied; motion was "especially prejudicial given the fact that discovery had been completed and [the defendant] had already filed a motion for summary judgment"); *Krumme v. WestPoint Stevens, Inc.*, 143 F.3d 71, 88 (2d Cir. 1998) (same where defendant had been aware of facts supporting proposed counterclaims for some time and discovery had been completed).

6

toppel and *res judicata* amounted to bad faith. "[A]llowing the SJ Defendants to take the issue of recognizability and enforceability off the table in this case while preserving it in every other court in this and other nations would be to acquiesce in a blatant exercise in forum shopping." Dkt. 550 at 69. The Court elaborated: "[I]t is abundantly obvious that the effort has been made for the sole purposes of (a) avoiding what the SJ Defendants evidently fear would be an adverse result, and (b) shifting the issue to other *fora* more to their liking." *Id.*

The LAP Representatives ignore this Court's express finding that "[a]ll of these factors" that weigh in favor of denying leave to amend "are present here," including "'bad faith.'" *See* Dkt. 550 at 68 (setting forth the various factors supporting denial of leave to amend). In fact, the LAP Representatives openly admit that they seek to withdraw the collateral estoppel defense in order to shop it in what they believe will be a more favorable forum: "Asserting these defenses in other jurisdictions while withdrawing them in New York is no evidence of bad faith." Mot. at 6.[7] The LAP Representatives are wrong. Their "blatant exercise in forum shopping," Dkt. 550 at 69, is the epitome of bad faith. *See, e.g., State Trading Corp. of India, Ltd. v. Assurance-foreningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) (finding bad faith and affirming denial of a

---

[7] In support of this counterintuitive proposition, the LAPs cite one out-of-circuit decision in which the plaintiff sought leave to amend to remove class claims, and the plaintiff's counsel offered to be sworn and testify under oath that he was not "planning . . . to file a lawsuit asserting similar claims in this Court or in any other court." *McCoy v. Erie Ins. Co.*, 204 F.R.D. 80, 83 n.2 (S.D. W. Va. 2001). Obviously, counsel for the LAP Representatives has made no such representation here and indeed admits it intends to raise these defenses elsewhere. Mot. at 6; Dkt. 550 at 69. *McCoy* is also distinguishable because there, the defendants failed to respond to the assertion that they had incurred no fees or costs to defend the class claims. 204 F.R.D. at 83 n.3. In contrast, this Court has recognized the "enormous resources expended litigating" the Ecuadorian judgment, as well as the enforceability of that judgment here. Dkt. 550 at 69. Finally, the court in *McCoy* did not grant the plaintiff's motion for leave to amend; it held the motion in abeyance so that the parties could present proposals for modifying the scheduling order and other proposals that would lead to an efficient resolution of the action. 204 F.R.D. at 84.

7

"tactical" motion to amend filed after an adverse ruling).[8]

As further evidence of their bad faith, the LAP Representatives falsely stated to this Court on March 11, 2012, that they needed additional time to review and respond to the evidence supporting Chevron's motion for partial summary judgment. Dkt. 462-31 (Ex. 2391) at 2 (stating that they needed weeks to "organize some response to the . . . thousands of pages of exhibits and some contradicting evidence and/or a request pursuant to Rule 56(d) for the opportunity to take necessary discovery to contradict Chevron's claimed evidentiary bases for the motion."). But as this Court is aware, when the LAP Representatives finally did respond to Chevron's motion, they failed to dispute any of Chevron's evidence and relied solely on the argument that their defenses did not refer to the Ecuadorian judgment—which was a post hoc, bad-faith attempt to avoid an adverse ruling on these defenses.

### B.     The LAP Representatives Are Pursuing A Dilatory Motive.

The LAP Representatives do not address another highly relevant factor in the amendment calculus: their "dilatory motive." *Williams*, 659 F.3d at 213-14. In fact, the LAP Representatives and other defendants have employed a strategy of delay throughout this and related proceedings.[9] Their goal is to avoid *ever* adjudicating the recognizability and enforceability of the Ecuadorian judgment, instead pursuing enforcement in jurisdictions that they believe will not examine the abundant evidence of their fraud. *See* Dkt. 49-5 (Ex. 341). This Court has acknowledged the defendants' dilatory tactics on several occasions. *See, e.g.*, *Chevron Corp. v.*

---

[8]   The LAP Representatives accuse *Chevron* of "forum shopping." Mot. at 7. But Chevron initiated § 1782 actions in numerous districts because the statute requires Chevron to seek discovery in the district in which the respondent "resides or is found." 28 U.S.C. § 1782(a). Chevron brought this action in the S.D.N.Y. because the LAPs' lead American counsel resides here, and many of the events underlying Chevron's claims occurred in, or were initiated from, this district.

[9]   *See, e.g.*, Dkt. 47-54 ("What about the following? Appeal; move for stay; if we win with [the District Judge] great; if we lose, we produce whatever we want (narrow read); [Gibson Dunn] complains and then we move for clarification. If we lose again, we think about another appeal.").

8

*Donziger*, 768 F. Supp. 2d 581, 653 n.401 (S.D.N.Y. 2011) ("[T]here is abundant evidence in emails to which Donziger and attorneys for the LAPs [were parties] suggesting that they were taking positions in the U.S. litigations which they knew were unlikely to prevail for the purpose of delay.").

The LAPs already have filed two foreign recognition and enforcement actions, in Canada and Brazil, seeking to seize the assets of Chevron foreign affiliates based on the fraudulent Ecuadorian judgment. The statement of claim in the Canadian court expressly seeks to avoid any review of defendants' fraud in procuring the judgment. *See* Mastro Decl., Ex. 1, *Yaiguaje v. Chevron Corp.*, No. CV-12-454778, Statement of Claim, ¶ 12 ("All the facts, findings, and conclusions of law stated in the Judgments and Clarifications in Ecuador are *res judicata* as between the parties.").[10] The same is true in Brazil. *See* Mastro Decl., Ex. 2, Brazilian Enforcement Complaint, ¶¶ 17, 26 (invoking the judgment as "res judicata" and "object[ing] to the addition of new documents, the production of other evidence being unnecessary, considering the nature and purpose of this action for recognition."). This, despite the LAPs' representations to this Court and the Second Circuit that New York provided Chevron with an "escape hatch" and as well a "forum and a venue." Dkt. 61 at 9-10; Dkt. 49-9 (Ex. 345), at 83:17-19.

In short, the LAP Representatives' motive in seeking to withdraw their collateral estoppel defense is to evade or, at a minimum, delay this Court's adjudication of their fraud, while simultaneously pursuing enforcement actions abroad in courts that are less likely *ever* to address the issue. Their motion should be denied on this basis alone.

---

[10] *See also id.*, ¶ 13 ("Chevron is estopped from challenging any finding, fact, or determination of law in the Ecuadorian decision on the merits. Further, Chevron is restricted from challenging the Ecuadorian Decisions on the basis of fraud unless it can demonstrate that the allegations are new, not the subject of prior adjudication and were not discoverable by the exercise of due diligence.").

9

**C.     Allowing The LAP Representatives To Withdraw The Collateral Estoppel Defense Would Prejudice Chevron.**

As this Court has also held, allowing the LAP Representatives to withdraw the defense of collateral estoppel would prejudice Chevron. Dkt. 550 at 68.[11] "In gauging prejudice, [courts] consider, among other factors, whether an amendment would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'" *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). These factors are present here.

In denying the LAP Representatives' previous effort to withdraw their defenses, the Court found the analogy to Rule 41 "especially persuasive" because that rule "prevent[s] a plaintiff from subjecting a defendant to the cost and expense of litigation and then, if the plaintiff fears an unwanted result in the court in which the action is pending, stealing away only to refile elsewhere." Dkt. 550 at 69. The Court noted that by September 7, 2011 (the date of the Representation), "the question whether the Judgment is entitled to recognition or enforcement already had been litigated virtually to the point of trial readiness." *Id.* at 68.

---

[11] Motions for leave to amend may be subject to greater scrutiny when, as here, they are filed after a dispositive motion or adverse ruling. *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990); *see also Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004) (requiring "substantial and convincing evidence to justify a belated attempt to amend a complaint"); *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 350 (2d Cir. 1999) ("Only after [the district court] rejected appellant's original defense, granted summary judgment, and issued an injunction, did appellant move—under the auspices of a motion for reargument—to add the unlawful use defense. It is obvious why appellant, having just lost the case, would want to relitigate it under a new theory. However, such a strategy engages all the considerations—undue delay, bad faith, and prejudice to the opposing party—that would motivate a district court to deny the motion to amend."); *Assuranceforeningen Skuld*, 921 F.2d at 418 ("When the moving party has had an opportunity to assert the amendment earlier, but has waited until after judgment before requesting leave, a court may exercise its discretion more exactingly.").

10

The LAP Representatives respond that the extensive discovery conducted in the Count 9 action concerned only the recognizability and enforceability of the judgment and "was not directed to defenses of collateral estoppel or res judicata." Mot. at 7. This is disingenuous—and inconsistent with this Court's findings and the LAP Representatives' own conduct. If, as the LAP Representatives now claim, the collateral estoppel and *res judicata* defenses were *not* at issue in the Count 9 action, then there would have been no reason to file the Representation purporting to withdraw those defenses.

Moreover, because the collateral estoppel defense is premised on the Ecuadorian judgment, it is inextricably intertwined with that judgment. Indeed, the LAP Representatives have conceded that their defense cannot apply unless the Ecuadorian judgment is enforceable. Dkt. 450 at 1-2 ("Because New York law would require Defendants to show that the Judgment is entitled to recognition under the New York Recognition Act in order to invoke res judicata or collateral estoppel, Defendants' stipulation precludes them from relying on the defenses of res judicata or collateral estoppel in this case."); *see also* Mot. at 3 ("this defense requires that before a foreign judgment may support collateral estoppel it must be recognized"). Accordingly, all the prior discovery and litigation in the Count 9 action concerning recognizability and enforceability of the judgment necessarily involved the same issues raised by the LAP Representatives' collateral estoppel defense—issues that Chevron has spent substantial time and money litigating "virtually to the point of trial readiness." Dkt. 550 at 68.[12]

---

[12] The LAP Representatives claim they would be prejudiced by denial of their motion, Mot. at 8, but they fail to articulate any specific prejudice other than being required to litigate issues that they previously inserted into this action. The LAP Representatives also cite no authority that would allow them to evade the adjudication of a defense they placed at issue, much less in circumstances such as those here, where the goal is to avoid a proper inquiry into an Ecuadorian judgment the preparation of which has raised "serious questions." Dkt. 550 at 97.

The LAP Representatives also assert that allowing them to withdraw their defense "will reduce the scope of discovery and decrease the burden and expense of this litigation on Chevron." Mot. at 5. What the LAP Representatives overlook is that Chevron would be forced to litigate the same issues in other jurisdictions—and in the process "'expend significant additional resources.'" *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)); *see also* 6 Wright, Miller & Kane, § 1487, at 623 and n.9 (noting that an amendment would be prejudicial when it "substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation"). The amendment would also "significantly delay the resolution of the dispute" by impeding a final determination as to the recognizability and enforceability of the Ecuadorian judgment. *Ruotolo*, 515 F.3d at 192.

### D. The LAP Representatives Have Unduly Delayed Seeking To Withdraw Their Collateral Estoppel Defense.

The LAP Representatives also have unduly delayed their efforts to withdraw the collateral estoppel defense. As this Court noted, the LAP Representatives "easily could have attempted precisely the same tactic months earlier than they did. Had such an attempt been successful, the SJ Defendants would have saved themselves, their adversary, and the courts the enormous resources expended litigating precisely the issue they now seek to take to other *fora*. They have offered no excuse for their failure to have put forward the Representation until such a late hour." Dkt. 550 at 69.[13]

---

[13] The LAPs' failure to withdraw the affirmative defenses at issue despite having amended previously and, at the time of that amendment, knowing the factual basis (or lack thereof) for the current proposed amendment, further supports denial of this motion. *See Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 644 (5th Cir. 2007) (affirming denial of motion to amend where moving party "had been

12

The LAP Representatives point to this Court's June 25, 2012 scheduling order, which gave parties until August 1, 2012 (the date that the LAP Representatives filed this motion) to seek leave to amend. Mot. at 4-5. But this Court's summary judgment ruling—which found undue delay—came more than a month *after* that scheduling order. In addition, the existence of a scheduling order does not alleviate the requirement that parties must seek leave to amend, and must do so within a reasonable time after learning of facts giving rise to the propose amendment, which the LAP Representatives have failed to do. *See Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 141-42 (5th Cir. 1993) (rejecting argument that denial of leave to amend was an abuse of discretion because the party sought leave to amend eight months in advance of the deadline for amendment, and noting that the party "cite[s] no authority which supports the proposition that the district court was bound to permit all amendments sought before the deadline, and we are not persuaded that that is what the law requires.").

The LAP Representatives also rely on the severance of the Count 9 action and subsequent stay of discovery in this action. Mot. at 5 ("Only in recent weeks has the discovery process begun in this matter."). As reflected in this Court's recent opinion, however, during that stay of discovery in this case, the parties in the Count 9 action expended enormous resources "litigating precisely the issue [the LAP Representatives] now seek to take to other *fora*." Dkt. 550 at 69. Thus, it is not accurate for the LAP Representatives to claim that they are seeking to withdraw this defense "at such an early stage before any discovery," Mot. at 5, when in fact extensive discovery on this issue had already taken place as of September 2011. *See* Dkt. 550 at 68.

---

aware of the factual underpinnings of the [proposed amendment] for some time," and noting "the district court may consider that the moving party failed to take advantage of earlier opportunities to amend."); *City of L.A. v. San Pedro Boat Works*, 635 F.3d 440, 454 (9th Cir. 2011) ("[T]he district court's discretion to deny leave to amend is particularly broad where [a party] has previously amended").

13

E.  **Granting Leave To Amend Would Encourage Duplicative Litigation And Undermine Judicial Economy.**

Finally, notions of judicial economy further support denial of leave to amend. Allowing the LAP Representatives to withdraw their collateral estoppel defense here would result in duplicative litigation in other jurisdictions concerning issues that have been litigated extensively in this Court. "'The burden to the judicial system can justify a denial of a motion to amend even if the amendment would cause no hardship at all to the opposing party.'" *Stephenson*, 220 F.R.D. at 25 (quoting *Perrian v. O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992)); *see also Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir. 1982) ("In keeping with the purposes of [Rule 15], the court should consider judicial economy and whether the amendments would lead to expeditious disposition of the merits of the litigation."); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) ("[I]t is appropriate for the court to consider judicial economy and the most expeditious way to dispose of the merits of the litigation.").

## CONCLUSION

As this Court has already held, the LAP Representatives' attempt to withdraw the affirmative defense of collateral estoppel amounts to bad faith, would unduly prejudice Chevron, and is the result of undue delay. The Court should deny the LAP Representatives' motion for leave to amend their answer.

Dated: August 20, 2012                 Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

*/s/ Randy M. Mastro*
Randy M. Mastro
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

Andrea E. Neuman
3161 Michelson Drive
Irvine, California 92612
Telephone: 949.451.3800
Facsimile: 949.451.4220

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

Attorneys for Chevron Corporation