USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/24/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

                Plaintiff,

      -against-                             11 Civ. 0691 (LAK)

STEVEN DONZIGER, et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge*.

        Patton Boggs LLP ("PB") – which represents the Lago Agrio Plaintiffs ("LAPs") in most of the U.S. litigation relating to the $18 billion-plus Ecuadorian judgment rendered against Chevron Corporation ("Chevron") and, in addition, itself has sued Chevron at least three times in matters relating to this overall controversy – moves to quash a subpoena *duces tecum* served upon it by Chevron in this action. It argues principally that the subpoena would require it to disclose privileged or other protected material[1] and that compliance would subject it to undue burden.

*The Privilege Claim*

        PB is a law firm engaged now and in the recent past in litigation – both as counsel to the LAPs and, to a considerably lesser extent, as a party itself – and invites the Court to conclude

---

[1] For ease of expression, the Court henceforth uses the term "protected material" to refer to both to privileged and to otherwise protected material.

2

that all or substantially all of the documents subject to the subpoena therefore are protected material. But PB, at its request, has deferred preparation of any privilege log, so there is no evidence now before the Court as to exactly what documents are said to be protected.[2] The circumstances here, however, suggest that PB possesses substantial numbers of relevant documents that ultimately may prove not to be protected materials.

First, there is reason to doubt whether many – if any – of the subpoenaed documents are protected by the attorney-client privilege. The LAP Representatives – the two LAPs who have appeared in this action – are said to be "a *campesino* and a canoe operator living in the remote Ecuadorian jungle."[3] The likelihood of any material number of attorney-client communications between the LAPs and PB, which are the sole focus of the attorney-client privilege as distinguished from attorney work product,[4] is slim. Indeed, when Steven Donziger, long the chief U.S. counsel for the LAPs,[5] was required to comply with a subpoena in a Section 1782 proceeding, his privilege

---

[2] PB Motion for Miscellaneous Relief in Connection with Subpoena [DI 493], at 3.

[3] LAP Reps. Memo in Support of Motion to Dismiss for Lack of Personal Jurisdiction [DI 518], at 1.

[4] *E.g.*, *United States v. Mejia*, 655 F.3d 126 (2d Cir. 2011) ("The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice."); *see also United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975) (stating that the work product doctrine is "distinct from . . . the attorney-client privilege").

[5] *E.g.*, *Chevron Corp. v. Donziger*, 749 F. Supp. 2d 141, 144 (S.D.N.Y. 2010); *see Chevron Corp. v. Salazar*, 275 F.R.D. 437, 441 (stating that Donziger "had represented the plaintiffs in the *Aguinda* case and . . . effectively masterminded the Lago Agrio litigation").

log did not identify a single such communication.[6]

Second, PB's motion essentially ignores the fact that the protection accorded to attorney work product in important respects is less extensive than that accorded to attorney-client communications.

> "There are two types of work product, ordinary or fact (herein 'fact') and opinion. As we have stated previously, fact work product may encompass factual material, including the result of a factual investigation. *See In re Grand Jury Subpoena Dated Oct. 22, 2001*, 282 F.3d 156, 161 (2d Cir. 2002). In contrast, opinion work product reveals the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative,' and is entitled to greater protection than fact work product. *United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998) (quoting Fed. R. Civ. P. 26(b)(3))."[7]

Ordinary work product is discoverable on a showing that the party seeking disclosure "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."[8] And while the bar is higher for discovery of so-called opinion work product, it too may be discovered on a "highly persuasive showing" of need.[9]

---

[6] *Chevron Corp. v. Donziger*, 749 F. Supp. 2d 170, 173 (S.D.N.Y. 2010) (noting that Donziger's privilege log "lists not even one document that was written by or addressed to any of the Lago Agrio plaintiffs – the clients whose privilege supposedly is being asserted").

[7] *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007).

[8] FED. R. CIV. P. 26(b)(3)(A)(ii).

[9] *See In re Grand Jury Proceedings*, 219 F.3d 175, 190-91 (2d Cir. 2000).

In addition, "[t]o be entitled to protection for opinion work product, the party asserting the privilege must show 'a real, rather than speculative, concern' that the work product will reveal counsel's thought processes 'in relation to pending or anticipated litigation.' *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d at 386 (quoting *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d 676, 680 (2d Cir. 1987))." *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d at 183-84.

Third, PB has failed to show that it is not in possession of documents obtained from third parties that nonetheless are responsive to the subpoena. As a general matter, "third-party documents in the possession of an attorney do not merit work product protection."[10]

For these reasons alone, the contention that the subpoena should be quashed in its entirety because it calls for protected materials must be rejected. But there is still another difficulty, which is whether and to what extent any protection that otherwise might have attached has been forfeited by virtue of the crime-fraud exception or otherwise.

To invoke the crime-fraud exception, a party

"must demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime. This is a two-step process. First, the proposed factual basis must strike 'a prudent person' as constituting 'a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof.' *In re John Doe*, 13 F.3d at 637 (quoting *In re Grand Jury*, 731 F.2d at 1039). Once there is a showing of a factual basis, the decision whether to engage in an in camera review of the evidence lies in the discretion of the district court. *Zolin*, 491 U.S. at 572, 109 S. Ct. at 2630-31. Second, if and when there has been an in camera review, the district court exercises its discretion again to determine whether the facts are such that the exception applies. These factual determinations are governed by the clearly erroneous standard."[11]

Moreover, "work-product [that] itself may be part of a criminal scheme" is not protected "from judicial examination."[12]

In this case, the Court already has held that there are no genuine issues of material

---

[10] *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 386 (2d Cir. 2003).

[11] *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997).

[12] *In re John Doe Corp.*, 675 F.2d 482, 492 (2d Cir. 1982).

Case 1:11-cv-00691-LAK   Document 571   Filed 08/24/12   Page 5 of 8

5

fact with respect the existence of fraud tainting at least some aspects of the Ecuadorian litigation.[13] Certainly the probable cause prong has been satisfied with respect to some subjects of inquiry.[14] Whether responsive documents in PB's possession were in furtherance of that fraud cannot be determined on the present record, as this requires at least a privilege log and may require *in camera* inspection of at least some documents.

None of this is intended to rule, one way or the other, on whether the crime-fraud exception has been satisfied. That would be premature. The point instead is that there is not sufficient basis to quash the subpoena now, without further inquiry, on the assumption that it calls only for protected material. Nor has any persuasive basis been advanced for any modification that would eliminate or greatly reduce the privilege issues. Indeed, PB made this motion without any meaningful effort to confer with Chevron to narrow the issues.[15] Moreover, while some discussions have occurred subsequently, it appears that PB has flatly refused to discuss individual requests for production.[16]

---

[13] *Chevron Corp. v. Donziger*, 11 Civ. 0691 (LAK), — F. Supp.2d —, 2012 WL 3538749, at *10-14, *31-34 (S.D.N.Y. July 31, 2012).

[14] It is unnecessary for present purposes to address Chevron's contention that PB itself made fraudulent representations to U.S. courts in resisting discovery here.

[15] Elliot Decl. [DI 546] ¶¶ 6-7 ("Patton Boggs first raised issues with Chevron about the substance of the document subpoena at 9:42 p.m. on July 18, 2012, or two days before the court-extended deadline for response and more than 30 days after service of the subpoena . . . . The July 18th letter states that it does not purport to address the majority of Patton Boggs's objections to the document subpoena, which it describes as 'more properly reserved for motion practice and written objections.'"); *see id.* Exs. 1, 3, 5.

[16] *Id.* ¶ 20 ("I proposed multiple times that the parties discuss each request individually and attempt to resolve objections. [PB's counsel] repeatedly refused to engage in a request-by-request discussion, stating that such an exercise would 'not be productive.'").

*Alleged Undue Burden*

The undue burden argument rests principally on the contention that searching PB's files for responsive documents, reviewing them, and preparing a privilege log would be very costly in time, money, and distraction from other activities. But the argument may not be accepted uncritically at this stage.

As an initial matter, the parties are at loggerheads over the proper scope of the subpoena and consequent scope of the search that is appropriate, even putting aside all questions of privilege. This in part is a product of the fact that PB has not yet interposed specific objections to particular subpoena specifications, preferring instead to attempt to have the subpoena quashed without any detailed examination of the information it seeks. It is further attributable in part to the fact that there was no meaningful effort to negotiate the scope of the subpoena in the weeks preceding the filing of the motion to quash and what appears to have been extraordinary stubbornness on both sides in the weeks since.[17] And while PB, through counsel, has advanced a number of suggestions that, if adopted, might limit the burden on it, the declarations upon which it relies to substantiate the claim of undue burden assume that the subpoena is enforced as written. Thus, for example, while PB has suggested that its obligation to search for responsive documents be limited to documents prepared by or sent to personnel who have devoted at least 50 hours to the relevant matters,[18] it has provided no evidence as to whether and to what extent that might reduce the burden.

---

[17] *Compare* Aug. 3, 2012 Young Decl. [DI 557], *with* Elliot Decl. [DI 546].

[18] Elliot Decl. [DI 546], Ex. 1, at 4.

Moving beyond these problems, the declarations PB relies upon are somewhat obscure and to some extent possibly inconsistent. Mr. Kessler, for example, first estimated that 2,510 gigabytes of data would be collected and, that there would be a reduction rate of 95 percent, resulting in 125.5 gigabytes of data requiring review.[19] Then, nine days later, he revised these figures to 1,200 gigabytes collected with a reduction rate of only 80 percent, the effect of which was to nearly double the amount of data requiring review to 240 gigabytes and to dramatically increase the cost and time of compliance.[20] Apart from conclusory generalizations, no explanation is offered for any of these assumptions.[21] And there are other possible difficulties.

Finally, it is far from clear that the burden of complying with this subpoena, whatever exactly that ultimately might entail once its proper scope is determined, would be out of line with what occurs in comparable litigation in this electronic age.

In short, it is impossible on the basis of the record before the Court to conclude that compliance with the appropriate specifications of the subpoena would be unduly burdensome.

### Conclusion

The motion to quash the subpoena [DI 522] is denied. This ruling is without prejudice to PB's privilege and burden claims, which will be considered, if necessary, in the context of ruling on any Rule 45(c)(2)(B) objections to the subpoena, which PB shall file on or before

---

[19] July 11, 2012 Kessler Aff. [DI 509] ¶ 4-5.

[20] July 20, 2012 Kessler Aff. [DI 524] ¶¶ 5-9; *see also* July 20, 2012 Perlstein Decl. [DI 523] ¶ 4-7.

[21] *See* Garrett Aff. [DI 547] ¶¶ 12-18.

8

September 7, 2012. The obligation to produce a privilege log is deferred pending further order of the Court save that PB's Rule 45(c)(2)(B) objections shall specify each category of document as to which it claims privilege or other protection in sufficient detail to permit evaluation of the claim to the extent that may be done categorically.[22] Counsel shall meet *in person* and confer for as long as is necessary to discuss each of the subpoena specifications and each of PB's objections if any. They shall provide the Court with a joint letter, no later than September 14, 2012, setting out in the fashion employed in paragraph 22 of the supplemental declaration of S. Alyssa Young[23] each remaining point in dispute.

SO ORDERED.

Dated:       August 23, 2012

_____
Lewis A. Kaplan
United States District Judge

---

[22] For example, as noted above, documents obtained from third parties typically are not privileged or protected work product.

[23] Aug. 3, 2012 Young Decl. [DI 557] ¶ 22.