UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEVRON CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>STEVEN DONZIGER, THE LAW OFFICES OF STEVEN R. DONZIGER, et al.,<br><br>    Defendants. | CASE NO. 11-CV-0691(LAK) |

**DEFENDANTS HUGO GERARDO CAMACHO NARANJO'S AND
JAVIER PIAGUAJE PAYAGUAJE'S REPLY IN SUPPORT OF THEIR
MOTION FOR LEAVE TO FILE AMENDED ANSWER**

**PRELIMINARY STATEMENT**

In Chevron Corporation's Opposition to the Motion for Leave to Amend, Chevron again admitted that what it seeks in this purported racketeering and fraud suit is what the Second Circuit denied it—a preemptive ruling on the validity and enforceability of the Ecuadorian judgment. Chevron opposes the timely motion for leave to amend of Defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje ("the Ecuadorian Plaintiffs") to withdraw two defenses because it would "preclude Chevron from litigating the recognizability of the Ecuadorian judgment" in New York. (Dkt. 569, at 5.) That is precisely the point. Chevron does not get to choose, as judgment debtor, where to litigate "the recognizability" of the Ecuadorian judgment. The Ecuadorian Plaintiffs do not seek enforcement in New York. Chevron cannot force them to litigate the judgment in New York. Yet, forcing a ruling on the validity of the Ecuadorian judgment is the sole basis for Chevron's opposition here.

Courts routinely grant leave to amend, especially when the amendment is sought within the time established by the Court's scheduling order to seek leave. The proposed amendment would eliminate two defenses and streamline the proceeding. There is no evidence of bad faith, dilatory motive, undue delay, or prejudice to Chevron resulting from the proposed amendment.

Chevron's opposition is the latest in a series of attempts to have this Court improperly pronounce to all nations whether the Ecuadorian judgment is valid and enforceable. Chevron's first attempt, a misguided worldwide injunction on enforcement, had "no legal basis" because New York law did not "allow[] the district court to declare the Ecuadorian judgment non-recognizable."[1] Chevron's second and third attempts, seeking to block enforcement through

---

[1] *Chevron Corp. v. Naranjo*, 667 F.3d 232, 241-42 (2d Cir. 2012) ("There is thus no legal basis for the injunction that Chevron seeks, and, on these facts, there will be no such basis until judgment-creditors affirmatively seek to enforce their judgment in a court governed by New York or similar law.")

1

attachment[2], also failed.  Now, although Chevron is the judgment debtor and cannot dictate where enforcement will occur, Chevron admits that its opposition to a routinely-granted motion for leave to amend is in reality its latest effort to flaunt the direct holding of the Second Circuit by transforming this supposed RICO and fraud proceeding into an improper vehicle to achieve its primary goal of "litigating the recognizability of the Ecuadorian judgment" in New York. (Dkt. 569, at 5.)

The Court should grant leave to amend.

## ARGUMENT

Rule 15(a)'s liberal standard favors amendments to pleadings.  Chevron's arguments otherwise are unavailing.

First, Chevron argues that Rule 15(a)'s "rationale" does not apply because the Ecuadorian Plaintiffs seek "to evade adjudication of the defenses that they placed at issue and *to preclude Chevron from litigating the recognizability of the Ecuadorian judgment*."  ((Dkt. 569, at 5) (emphasis added).)  Apart from the admission that Chevron continues its suit for a purpose the Second Circuit prohibited, the Ecuadorian Plaintiffs' withdrawal of defenses would not preclude Chevron from litigating any claim it has pled.  The cases Chevron cites, where amendment allowed resolution of a plaintiff's claims on the merits, are thus inapplicable. (Dkt. 569, at 5.)

Second, Chevron's argument that the Ecuadorian Plaintiffs "effectively seek reconsideration" and that the Court "should again deny leave to amend,"—is wrong on both counts.  The Court did not treat the Ecuadorian Plaintiffs' "Representation" as a motion for leave to amend.  In fact, the Court wrote that "*even if* the Court were to treat the Representation . . . as a motion for leave to amend," (Dkt. 550, at 70) (emphasis added), meaning of course that the

---

[2] See  (Dkt. 445-1 (Mar. 15, 2012 Hearing Transcript 23:25-24:4; 24:13-21).)

Court *did not* treat the "Representation" as a motion for leave to amend. Not having sought leave to amend, the Ecuadorian Plaintiffs are not seeking reconsideration of something not previously sought. Rule 15(a) governs.

## I.     There Is No Evidence Of Bad Faith.

Chevron contends that bad faith is present because the Ecuadorian Plaintiffs engaged in "forum shopping" and made a false statement to this Court. Not so.

The Ecuadorian Plaintiffs' decision not to enforce the Ecuadorian judgment in New York, but to enforce it in other jurisdictions, does not show bad faith. In fact, this follows the Second Circuit's directive that recognition and enforcement were to be addressed in the courts where the Ecuadorian Plaintiffs enforce the Ecuadorian judgment, rather than in this Court. *Chevron Corp. v. Naranjo*, 667 F.3d 232, 241-44 (2d Cir. 2012). The Ecuadorian Plaintiffs' decision is also consistent with established law. If a plaintiff's "tactical" decision to eschew federal court by withdrawing federal claims is not bad faith, then the Ecuadorian Plaintiffs' reaffirming their Representation never to seek recognition or enforcement in New York—made nearly a year ago—through an amended answer that withdraws defenses cannot constitute bad faith either.[3]

How can the Ecuadorian Plaintiffs be engaged in bad faith forum shopping when Chevron, not the Ecuadorian Plaintiffs, chose the forum? Chevron chose New York nearly a decade after Chevron renounced this same forum in favor of Ecuador and promised the Second

---

[3] *See Ramotnik v. Fisher*, 568 F. Supp. 2d 598, 603 (D. Md. 2008) ("it is not bad faith for a plaintiff to bring both State and federal claims in State court and then, upon removal, seek dismissal of the federal claims and remand to State court"); *Mansu v. Kennedy*, CIV 08-2012WBSDAD, 2008 WL 5411938, at *2 (E.D. Cal. Dec. 24, 2008) (no "bad faith; although plaintiffs' motivation [for seeking to withdraw federal claim] clearly appears to be their desire to obtain remand, such a tactical decision is permissible").

Circuit that it would accept jurisdiction in Ecuador.[4]  Under Chevron's theory, a judgment debtor has the right to choose this Court to pass on a foreign judgment but when the judgment creditor objects to the forum, the judgment creditor is forum shopping.  This argument turns the concept of forum shopping on its head.

Chevron's accusation of bad faith, based on what Chevron claims to be forum shopping, could be dismissed as ironic were it not for Chevron's gamesmanship related to this case, including a violation of the local rules and, at the very least, a misrepresentation to the clerk of the Southern District when it filled out the required cover sheet accompanying its Complaint.  When Chevron filed this RICO action in February 2011 it did not list Case No. 1:10-cv-00316-LBS, pending before The Honorable Leonard B. Sand, as a related action, even though the forms required Chevron to list the case.  *See* Dkt. 161-2; Local Rule for Division of Business Among Judges 13(c)(i) ("When a civil case is filed . . ., the person filing . . . *shall disclose* on form JSC44C *any* contention of relatedness.") (emphasis added).  The case before Judge Sand was related, it was pending on February 1, 2011 when Chevron filed its complaint in this action, and Chevron was even represented in that case by Randy Mastro, its lead counsel in this matter.[5]  Although Chevron was required to identify that case as related, it did not.  *See id.*  Instead, having been pleased by this Court's actions in the Donziger 1782 proceeding, including the suggestion to

---

[4] Chevron falsely claims that the Ecuadorian Plaintiffs have represented that New York is *the* "escape hatch" for litigating the recognizability of the Ecuadorian judgment. (Dkt. 569, at 9.) This unilateral reservation does not act, as Chevron suggests, as a forum selection clause requiring the bona fides of any Ecuadorian judgment to be reviewed in New York.  In reality, they stated that "Chevron . . . reserved the ability *in an enforcement action* to defend itself on the grounds that . . . the judgment was obtained by fraud." (Dkt. 61, at 10 (emphasis added).)  This is not an enforcement action.  Chevron has an escape hatch in New York *only if* the Ecuadorian Plaintiffs enforce in New York.  As the Second Circuit concluded, "[Chevron] can challenge [the Ecuadorian] judgment's validity under the Recognition Act only defensively, in response to an attempted enforcement—an effort that the [Ecuadorian Plaintiffs] have not yet undertaken anywhere, and might never undertake in New York."  *Naranjo*, 667 F.3d at 234.  Thus, the reservation only restricts the circumstances under which Chevron may challenge any Ecuadorian judgment – not the *venue* for the challenge.  *See Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 396-97 (2d Cir. 2011).

[5] The appellate court's mandate was issued in that case three months later on May 2, 2011.  (Case No. 1:10-cv-00316-LBS, Dkt. 37.)

4

Chevron to bring a RICO claim[6], Chevron listed that 1782 in this Court as the only related action. Chevron gamed the process to hand pick its preferred Court. This Court should not have and should not now permit this explicit forum-shopping and flaunting of the SDNY rules.

With respect to the "false statement" accusation, the Ecuadorian Plaintiffs did not lie about needing more time to "organize some response" to Chevron's massive summary judgment filing. (Dkt. 569, at 8.) The Ecuadorian Plaintiffs requested, and took, the time to determine the appropriate legal response in light of their Representation.

## II.     There Is No Evidence of Dilatory Motive.

Chevron first claims that the Ecuadorian Plaintiffs' "goal is to avoid *ever* adjudicating the recognizability and enforceability of the Ecuadorian judgment." (Dkt. 569, at 8 (emphasis in original).) False. The Ecuadorian Plaintiffs have already initiated enforcement actions in Canada and Brazil. Consistent with the Second Circuit's holding, the courts of these jurisdictions will adjudicate recognizability and enforceability.[7] *Naranjo*, 667 F.3d at 243-44. Chevron will have every opportunity to litigate these issues in the appropriate fora. *See id.*

Chevron next falsely claims that the Ecuadorian Plaintiffs intend to pursue "enforcement in jurisdictions that they believe will not examine the abundant evidence of their fraud." (Dkt. 569, at 8 (citing Dkt. 49-5).) The privileged strategy memorandum Chevron cites to support that claim says nothing about courts examining (or not examining) evidence of fraud. Chevron will no doubt argue that the Ecuadorian judgment should not be recognized (on the basis of fraud) by courts in Canada, Brazil, or any other enforcement nation. Importantly, the courts in each of

---

[6] (Case No. 1:10-mc-00002-LAK, Dkt. 85, Transcript of Sept. 23, 2010 Hearing, at 24:21-22) ("THE COURT: Now, do the phrases Hobbs Act, extortion, RICO, have any bearing here?").)

[7] The Ecuadorian Plaintiffs acknowledge that they do not seek to litigate the judgment's recognizability and enforceability in New York because it is not properly at issue in this case, as confirmed in the Second Circuit's opinion based in part on the Ecuadorian Plaintiffs' September 7, 2011 Representation.

*those nations*, not any New York court, will consider and accept or reject Chevron's fraud allegations. Chevron fails to provide *a shred of support* for the conclusory assertion that foreign courts are unlikely "ever" to address Chevron's fraud allegations.

Moreover, all the emails Chevron claims show a "dilatory motive", Dkt. 569, at 8-9, predate this lawsuit, so they are irrelevant to seeking leave to amend in this case. The only "delays" the Ecuadorian Plaintiffs have sought in this lawsuit pertain to their ability to respond effectively to Chevron's tidal waves of paper in the time provided under the rules. In fact, Chevron has sought any number of such delays itself, including a delay on the very issue of Chevron's deadline to seek leave to amend.[8]

### III.  There Is No Evidence of Prejudice to Chevron.

Chevron cannot show any prejudice. First, Chevron argues that Rule 41 should prevent amendment because Chevron has spent time and money here and because the Ecuadorian Plaintiffs may "steal away" to "refile elsewhere." This analogy does not apply, legally or factually. Rule 41 applies to claims, not to defenses, and to dismissal of an entire action, not withdrawal of a discrete claim or defense.[9] The factual error is this: the Ecuadorian Plaintiffs will not "steal away" or "refile" elsewhere. They never filed in this Court in the first place. Instead, Chevron "stole away" from the forum it chose—Ecuador—to file in a court Chevron

---

[8] Significantly, Chevron sought and obtained an extension of the deadline for leave to amend its complaint until August 22, 2012. Chevron chose to forego that opportunity. Chevron's conscious decision not to seek leave to amend its Complaint by the Court's deadline—with the attendant consequences of limiting Chevron to facts and allegations of conduct pre-dating the filing of this suit in February 2011—can be traced to Chevron's gamble that this Court will deny the Ecuadorian Plaintiffs leave to amend. Chevron of course knew that if it amended its Complaint, the Ecuadorian Plaintiffs would have a right to amend their answer, thus accomplishing the amendments Chevron here desperately seeks to prevent. Did Chevron act in bad faith by requesting more time to amend and then refusing to do so?

[9] *Singh v. Prudential Ins. Co. of Am., Inc.*, 200 F. Supp. 2d 193, 199-200 (E.D.N.Y. 2002) ("[Plaintiff] can amend her complaint to drop her federal civil rights claims against the City Defendants under Rule 15(a); she need not invoke Rule 41 . . . . [Rule] 15(a) is the appropriate mechanism [w]here a plaintiff desires to eliminate an issue, or one or more but *less than all* of several claims.") (emphasis added) (citation omitted); *Wakefield v. N. Telecom, Inc.,* 769 F.2d 109, 114 n. 4 (2d Cir. 1985) ("district court may permit withdrawal of a claim under Rule 15").

perceived as friendly to its arguments of lawyer and court-bashing. And how is it possible to "refile" a defense? To phrase the question is to underscore the absurdity of Chevron's argument. A defense can only be filed in response to a claim. The Ecuadorian Plaintiffs could not file a defense in any forum until a claim is made against them, as Chevron discovered in Count 9.

Moreover, the "expense" of litigating the Count 9 case is legally irrelevant.[10] Count 9 was an action *by Chevron* asking this Court to declare that the Ecuadorian judgment was not enforceable. So "all the prior discovery and litigation" was and would have been undertaken in any event. The Second Circuit's subsequent dismissal of Count 9 caused Chevron to expend litigation expenses, *not* the defenses that the Ecuadorian Plaintiffs now seek leave to amend.

Chevron also argues that "if the collateral estoppel and res judicata defenses were not at issue in the Count 9 action, then there would have been no reason to file the Representation purporting to withdraw those defenses." (Dkt. 569, at 11.) Wrong. The Representation was filed to make clear that the Court did not have subject matter jurisdiction over Chevron's Count 9 claim because the Ecuadorian Plaintiffs would never seek enforcement in New York. A logical, inevitable corollary of the Representation, as well as the dismissal of the Count 9 action, is that they cannot assert the defenses of collateral estoppel and res judicata.

Chevron also contends that this motion should be subject to "greater scrutiny" because it was filed after Chevron's motion for partial summary judgment. (Dkt. 569, at 10 n.11.) First, the motion for leave to amend seeks to withdraw defenses that the Ecuadorian Plaintiffs believed were no longer asserted with respect to the Judgment, as confirmed by the Representation in September 2011, over six months *before* Chevron filed its motion. The Ecuadorian Plaintiffs

---

[10] *See St. Paul Fire & Marine Ins. Co. v. Heath Fielding Ins. Broking Ltd.*, 91 CIV. 0748, 1996 WL 19028, at *7 n.19 (S.D.N.Y. Jan. 17, 1996) ("the 'time, effort and money' spent by [defendants] to defend against Plaintiff's claims does not constitute the kind of prejudice which would justify denial of Plaintiff's motion to amend" to drop those claims) (citing *Block v. First Blood Associates*, 988 F.2d 344, 350–51 (2d Cir. 1993)).

7

sought leave only after the Court indicated its disagreement regarding the effect of the Representation. Second, Chevron fails to account for the impact of the Court's Scheduling Order.[11] The Order does not provide that only certain parties may seek leave to amend or that a party may seek to amend only certain causes of action or defenses. Since both Chevron's Motion for Partial Summary Judgment and the Ecuadorian Plaintiffs' Opposition were on file when the Court issued its June 25th Order, the issues regarding the two defenses were fully presented. If the Court had intended to preclude the Ecuadorian Plaintiffs, or any other party, from seeking leave to amend pleadings or to limit amendments to certain defenses, it would have done so in the Order.

Chevron finally argues that if this Court does not rule on the enforceability and recognizability of the Ecuadorian judgment, Chevron will be "forced to litigate the same issues in other jurisdictions." (Dkt. 569, at 12.) That of course is precisely the point: the Ecuadorian Plaintiffs, not Chevron, are the judgment creditors and are empowered to seek enforcement in a jurisdiction of their choosing. The Second Circuit made that legal point clear. *Naranjo*, 667 F.3d at 234, 244. Chevron, as the judgment debtor, does not get to choose the forum for litigating the judgment's enforceability.

The proposed amended answer will not require Chevron "to expend significant *additional* resources to conduct discovery and prepare for trial." The *withdrawal* of defenses does not create new obligations or delay any deadlines or settings. There is no prejudice to Chevron in having the Ecuadorian Plaintiffs assert fewer defenses to the purported RICO and fraud claims.[12]

---

[11] Chevron's cases cited for the alleged prejudice of permitting amendment after a dispositive motion, Dkt. 569, at 10 n.11, do not include any in which the proposed amendment was filed by the scheduling order deadline.

[12] *See Perrin & Nissen Ltd. v. SAS Group Inc.*, 06 CIV. 13089 (MGC), 2009 WL 855693, at *4 (S.D.N.Y. Mar. 27, 2009) ("There can be no prejudice to defendants by allowing plaintiff to drop some of its claims."); *Hamilton v. City of New York*, 06 CIV. 15405 DC, 2011 WL 1842990, at *3 (S.D.N.Y. May 10, 2011) (no prejudice because withdrawal of claim would not create "additional expense for the opposing party").

**IV.     There Is No Evidence of Undue Delay.**

Chevron argues that the LAPs "have offered no excuse for their failure to have put forward the Representation until such a late hour." (Dkt. 569, at 12.) The Ecuadorian Plaintiffs did not make the Representation at "a late hour." Counsel admittedly did not think of the Representation and its impact on subject matter jurisdiction until shortly before it was made, mainly because counsel did not believe the Court could entertain Chevron's offensive use of the New York Recognition Act's defenses, a position the Second Circuit ultimately confirmed. The Representation was offered to make plain that the Ecuadorian Plaintiffs would never provide occasion for a New York court to consider the Ecuadorian judgment. It was filed two months after counsel was hired and some six months after Chevron filed the lawsuit—hardly an "undue delay" and certainly not "a late hour." In the context of this 19-year old battle to hold Chevron accountable for its devastation of Ecuador, the accusation of undue delay for a period of months is risible.

As this Court recognized a few days before this filing, "discovery is just beginning in this action." (Dkt. 572, at 2.) The Court issued its Order setting the deadline for seeking leave to amend on June 25—the Ecuadorian Plaintiffs timely sought leave to amend 36 days later. Because "discovery is just beginning in this action," there has been no undue delay in seeking leave to amend (by the deadline) to withdraw defenses that the Ecuadorian Plaintiffs believed they clearly abandoned in the Representation.

**V.     Allowing Amendment Will Not Encourage Duplicative Litigation Nor Undermine Judicial Economy.**

Chevron argues that "notions of judicial economy further support denial of leave to amend." (Dkt. 569, at 14). This argument is ridiculous. Chevron essentially argues that if a party forum shops—as Chevron did here—over the objection of the opposing party and then

9

litigates issues in its chosen forum, including issues an appellate court determines could not be litigated in that forum, that the resources expended in wrongful litigation are entitled to such respect that the opposing party must be confined to the forum. The only reason there could potentially be any "duplicative litigation" is that Chevron chose to pursue an improper preemptive claim in the Count 9 action. If Chevron had followed the law and waited for an enforcement action to be filed before raising its defenses (including alleged fraud), then Chevron would not have undertaken discovery in its misguided Count 9 claim. Chevron has only itself to blame for any duplication.

There will be no "burden to the judicial system" if the Court grants leave to amend. Allowing the validity of the Ecuadorian judgment to be determined by courts in the appropriate fora—not New York—will only lessen the burden on this Court and the Second Circuit. The proposed amended answer will not result in any *additional* discovery, motion practice, or hearings in this lawsuit, nor will it delay resolution of Chevron's RICO and fraud claims by this Court. It is Chevron who has "burdened the judicial system" with improper litigation in an inappropriate forum, filing massive, repetitive motions (via different vehicles) seeking the same relief the Second Circuit plainly held was not available in the forum Chevron chose.

## CONCLUSION

For the foregoing reasons, the Court should grant the Ecuadorian Plaintiffs' motion for leave to file an amended answer.

Dated: August 30, 2012 Respectfully submitted:

Houston, TX

By: _____/s/ *Tyler G. Doyle*_____
CRAIG SMYSER (*pro hac vice*)
LARRY R. VESELKA (*pro hac vice*)
TYLER G. DOYLE
SMYSER KAPLAN & VESELKA, L.L.P.
700 Louisiana, Suite 2300
Houston, TX 77002
Telephone: 713.221.2330
Facsimile:  713.221.2320
Email: tydoyle@skv.com
Email: csmyser@skv.com
Email: lveselka@skv.com

Julio C. Gomez
GOMEZ LLC
The Trump Building
400 Wall Street, 28th Floor
New York, NY  10005
Tel: 212.400.7150
Fax: 212.400.7151
Email: jgomez@gomezllc.com

*Attorneys for Defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje*

11