UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                        :
CHEVRON CORPORATION,                                     :
                                                        :
                    Plaintiff,                           :
                                                        :
            v.                                           :   11 Civ. 0691 (LAK)
                                                        :
STEVEN DONZIGER et al.,                                  :
                                                        :
                    Defendants.                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

---

## NON-PARTY PATTON BOGGS LLP'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S SUBPOENA TO PRODUCE DOCUMENTS

---

LEADER & BERKON LLP

630 Third Avenue
New York, New York 10017
Telephone:  (212) 486-2400
Facsimile:  (212) 486-3099

*Attorneys for Non-Party Patton Boggs LLP*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

GENERAL OBJECTIONS ................................................................................................. 2

OBJECTIONS TO DEFINITIONS ................................................................................... 12

OBJECTIONS TO INSTRUCTIONS ............................................................................... 32

RESPONSES AND OBJECTIONS TO REQUESTS FOR "DOCUMENTS TO BE
PRODUCED BY PATTON BOGGS" ............................................................................. 36

    DOCUMENT REQUEST NUMBER 1: ......................................................................... 37

    DOCUMENT REQUEST NUMBER 2: ......................................................................... 39

    DOCUMENT REQUEST NUMBER 3: ......................................................................... 42

    DOCUMENT REQUEST NUMBER 4: ......................................................................... 45

    DOCUMENT REQUEST NUMBER 5: ......................................................................... 47

    DOCUMENT REQUEST NUMBER 6: ......................................................................... 50

    DOCUMENT REQUEST NUMBER 7: ......................................................................... 53

    DOCUMENT REQUEST NUMBER 8: ......................................................................... 54

    DOCUMENT REQUEST NUMBER 9: ......................................................................... 56

    DOCUMENT REQUEST NUMBER 10: ....................................................................... 60

    DOCUMENT REQUEST NUMBER 11: ....................................................................... 64

    DOCUMENT REQUEST NUMBER 12: ....................................................................... 68

    DOCUMENT REQUEST NUMBER 13: ....................................................................... 71

    DOCUMENT REQUEST NUMBER 14: ....................................................................... 76

    DOCUMENT REQUEST NUMBER 15: ....................................................................... 80

    DOCUMENT REQUEST NUMBER 16: ....................................................................... 83

    DOCUMENT REQUEST NUMBER 17: ....................................................................... 86

    DOCUMENT REQUEST NUMBER 18: ....................................................................... 90

    DOCUMENT REQUEST NUMBER 19: ....................................................................... 94

DOCUMENT REQUEST NUMBER 20: ........................................................................ 97

DOCUMENT REQUEST NUMBER 21: ........................................................................ 99

DOCUMENT REQUEST NUMBER 22: ....................................................................... 105

DOCUMENT REQUEST NUMBER 23: ....................................................................... 108

DOCUMENT REQUEST NUMBER 24: ....................................................................... 112

DOCUMENT REQUEST NUMBER 25: ....................................................................... 112

DOCUMENT REQUEST NUMBER 26: ....................................................................... 113

DOCUMENT REQUEST NUMBER 27: ....................................................................... 116

DOCUMENT REQUEST NUMBER 28: ....................................................................... 118

DOCUMENT REQUEST NUMBER 29: ....................................................................... 121

DOCUMENT REQUEST NUMBER 30: ....................................................................... 121

DOCUMENT REQUEST NUMBER 31: ....................................................................... 122

DOCUMENT REQUEST NUMBER 32: ....................................................................... 122

DOCUMENT REQUEST NUMBER 33: ....................................................................... 123

DOCUMENT REQUEST NUMBER 34: ....................................................................... 125

DOCUMENT REQUEST NUMBER 35: ....................................................................... 128

DOCUMENT REQUEST NUMBER 36: ....................................................................... 130

DOCUMENT REQUEST NUMBER 37: ....................................................................... 134

DOCUMENT REQUEST NUMBER 38: ....................................................................... 137

DOCUMENT REQUEST NUMBER 39: ....................................................................... 140

DOCUMENT REQUEST NUMBER 40: ....................................................................... 142

DOCUMENT REQUEST NUMBER 41: ....................................................................... 145

DOCUMENT REQUEST NUMBER 42: ....................................................................... 146

DOCUMENT REQUEST NUMBER 43: ....................................................................... 148

DOCUMENT REQUEST NUMBER 44: ....................................................................... 149

DOCUMENT REQUEST NUMBER 45:........................................................................ 152

DOCUMENT REQUEST NUMBER 46:........................................................................ 154

DOCUMENT REQUEST NUMBER 47:........................................................................ 157

DOCUMENT REQUEST NUMBER 48:........................................................................ 162

DOCUMENT REQUEST NUMBER 49:........................................................................ 166

DOCUMENT REQUEST NUMBER 50:........................................................................ 169

DOCUMENT REQUEST NUMBER 51:........................................................................ 172

DOCUMENT REQUEST NUMBER 52:........................................................................ 176

DOCUMENT REQUEST NUMBER 53:........................................................................ 180

DOCUMENT REQUEST NUMBER 54:........................................................................ 181

DOCUMENT REQUEST NUMBER 55:........................................................................ 184

DOCUMENT REQUEST NUMBER 56:........................................................................ 184

DOCUMENT REQUEST NUMBER 57:........................................................................ 185

DOCUMENT REQUEST NUMBER 58:........................................................................ 185

## <u>INTRODUCTION</u>

On August 24, 2012, this Court denied non-party Patton Boggs LLP's ("Patton Boggs") Motion to Quash the Subpoena propounded by Chevron Corporation ("Chevron").   (*See generally* Dkt. 571.)  The Court noted that its ruling was "without prejudice to PB's privilege and burden claims" which would be considered "in the context of ruling on any Rule 45(c)(2)(B) objections to the subpoena" due to be filed on or before September 7, 2012.  (*Id.* at 7.)  The Court directed that those objections "shall specify each category of document as to which it claims privilege or other protection in sufficient detail to permit evaluation of the claim to the extent that may be done categorically."  (*Id.* at 8.)

In response to this Court's August 24, 2012 Order, Patton Boggs hereby files its Rule 45(c)(2)(B) Objections to the Subpoena.  As directed by the Court, these Objections set forth, to the extent possible, categories of documents over which Patton Boggs intends to claim privilege or other protections, to the extent the Subpoena's individual Requests are not modified or otherwise withdrawn or stricken.  As Patton Boggs has argued to the Court, (*see generally* Dkts. 527 & 558), the volume of data potentially responsive to Chevron's Subpoena as drafted is overwhelming, and while Patton Boggs has undertaken substantial efforts to collect potentially responsive documents, including the retention of forensic document collection experts, the outcome of the meet and confer process and this Court's ruling on the Objections will impact the individual documents and electronic data that will need to be reviewed to determine responsiveness and prepare a privilege log.

Given the fact that the parameters of a document review have not been defined and considering the current posture of these proceedings, Patton Boggs respectfully submits that it is not possible at this time to exhaustively list all categories of documents over which Patton Boggs intends to claim privilege or other protections.  Patton Boggs reserves all rights to assert

1

privilege (including, but not limited to, attorney client, work product, joint defense and common interest) claims with respect to individual documents if (a) Chevron, through the meet and confer process, or (b) this Court, in the course of further proceedings, does not narrowly tailor the Requests to exclude protected documents or otherwise strike Requests targeted at such information.  As documents and data are reviewed for responsiveness, additional categories of documents subject to claims of privilege or other protections may become evident and Patton Boggs expressly reserves the right to supplement the categories listed here.[1]

## **GENERAL OBJECTIONS**

### *General Objections Addressing Manner of Production*

1.      Patton Boggs objects to the Requests to the extent they call for production at Gibson, Dunn & Crutcher LLP's office at 200 Park Avenue, New York, New York.  Patton Boggs recommends that the parties meet and confer to set a plan for production.

2.      Patton Boggs objects that the return date specified on the Subpoena is unduly burdensome and unreasonable given (1) the volume of documents and data potentially responsive to Chevron's Request, (2) the complexity of Patton Boggs' information and technology systems, (3) the number of custodians at issue, (4) the fact that custodians are spread across multiple Patton Boggs' offices, and (5) Chevron's failure to narrowly tailor each Request to target non-privileged documents and data reasonably calculated to the discovery of admissible evidence.  Before any document is produced, Patton Boggs will necessarily need to process, filter, and review each individual document or document series to determine whether the document is responsive to Chevron's Subpoena and whether any privilege, protection, or immunity protects the documents from disclosure.  As drafted, Chevron's Subpoena purports to

---

[1] These Objections replace and amend the Responses and Objections served on Chevron on July 20, 2012.

require a substantial volume of data to be processed, filtered, reviewed for responsiveness and privilege, and logged.  (*See* Dkts. 509, 524, 556.)  The timing of any production will largely depend on Chevron's willingness to tailor its Subpoena to limit the amount of data and information that will need to be processed, filtered, and reviewed.  The amount of time required to complete each of these tasks is necessarily determined by the scope and breadth of the Subpoena's Requests, which will be resolved through the meet and confer process and by Order of this Court, if Court intervention is necessary.

*General Objection Addressing Republic of Ecuador Documents*

3.    Certain of Patton Boggs' documents that may be responsive to the Subpoena are documents that Patton Boggs created or obtained in the course of its representation of the Embassy of Ecuador.  Patton Boggs submitted proof of its attorney-client relationship with the Embassy of Ecuador at the time Patton Boggs moved to quash the Subpoena.  (*See* Dkt. 527, at 25-27 (citing exhibits).)  Chevron's opposition to the motion to quash did not challenge Patton Boggs' status as registered agent, and Patton Boggs submits Chevron has waived that argument. (Dkt. 541 at 37, n.31.)  Patton Boggs, as directed by the sovereign government of the Republic of Ecuador and its Embassy, once again objects to the Subpoena to the extent it purports to call for documents obtained or created in the course of Patton Boggs' representation and asserts sovereign immunity.  Because the documents are immune from disclosure and Patton Boggs' status as a registered agent of the Embassy of Ecuador is not in dispute, Patton Boggs will not here assert categories of privilege or work product protections for those documents created or obtained in the course of that representation, subject to the foregoing Objections.

*General Objections Regarding the Types and Categories of Documents Purportedly Responsive to the Subpoena*

4.    **§ 1782 Proceeding Documents, Where Patton Boggs Represented Clients in**

**Addition to the Afectados.**[2]  Patton Boggs objects that Chevron's Subpoena effectively seeks Patton Boggs' entire litigation file related to its ongoing representation of its clients in several "1782 ACTIONS" and is intended to interfere with, interrupt, or otherwise obstruct Patton Boggs' ability to effectively represent its clients in related, ongoing proceedings.  For example, as detailed in Patton Boggs's below Responses and Objections to specific requests, Patton Boggs represents Uhl, Baron, Rana & Associates ("UBR") in an ongoing proceeding in the District of New Jersey.  *See In re Chevron Corp.*, No. 2:10-cv-02675-KM-CW (D.N.J.).  Patton Boggs, on behalf of UBR, is currently engaged in briefing on Chevron's motion to compel documents from UBR.  Notwithstanding this active representation, Chevron specifically seeks documents "RELATED TO" UBR, including documents that reflect current litigation strategy and attorney-client privileged documents, including communications with UBR employees.  *See* Request 22.  Where active discovery proceedings are ongoing in other courts, Patton Boggs' clients that are parties to this action (in this example, UBR) would be significantly harmed or disadvantaged to the extent Chevron seeks work product or attorney-client privileged documents regarding those proceedings.  In addition to UBR, Patton Boggs also directly represents The Weinberg Group; Daniel L. Rourke; Douglas C. Allen, P.A.; Jonathan Shefftz; Lawrence W. Barnthouse; Carlos Picone; and R. Paolo Scardina, and has also advised other clients in connection with collateral proceedings related to this litigation.  Patton Boggs further notes that Magistrate Judge Francis previously held in *Chevron Corp. v. Salazar* that "documents created in connection with this litigation and the related § 1782 proceedings need not be logged or produced."  (No. 1:11-cv-3718, Dkt. 289.)  Applying this holding, these documents would not be subject to production or

---

[2]  The "Afectados" refers to Patton Boggs' clients, a coalition of residents from various indigenous and farming communities located in the Amazon region of Ecuador (commonly referred to as "los Afectados" or, in English, the "Affected Ones").

privilege logging in the first instance.

5.       **Patton Boggs Litigation Documents, Where Patton Boggs Was Itself a Plaintiff in Proceedings.**  This Court has recognized that Patton Boggs "itself has sued Chevron at least three times in matters relating to this overall controversy," (Dkt. 571, at 1), and its own attorneys have represented Patton Boggs as *pro se* counsel in those proceedings.[3]  Patton Boggs maintains that it should not be required to produce or log documents created in connection with proceedings where Patton Boggs is a plaintiff against Chevron or Gibson, Dunn & Crutcher LLP. To the extent that Chevron's Subpoena purports to call for the production of such documents, Patton Boggs objects that such Requests are unduly burdensome, vexatious, and interposed for the purpose of harassing Patton Boggs.  Patton Boggs further objects that documents created in connection with collateral proceedings initiated directly by Patton Boggs (as plaintiff) are not in any way relevant to the claims alleged in Chevron's Amended Complaint and all requests for such documents are not reasonably calculated to lead to the discovery of admissible evidence.

6.       **Documents Created in the Course of, or in Response to, the *Salazar* and *Donziger* Proceedings.**  This Court noted in the now-vacated Preliminary Injunction opinion that Patton Boggs "has been quite involved in this case behind the scenes."  (*See Chevron Corp. v. Donziger, et al.*, 768 F.Supp.2d 581, 659 (S.D.N.Y. Mar. 7, 2011).)  Patton Boggs actively serves as appellate counsel to Defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje.  Patton Boggs appeared as counsel of record in the appeal of the Preliminary Injunction to the United States Court of Appeals, and now serves as counsel of record to Messrs.

---

[3] *Patton Boggs v. Chevron Corp.*, 10-cv-1975-HHK (D.D.C.); *Patton Boggs v. Chevron Corp., et al.*, 11-cv-0799-HHK (D.D.C.); *Patton Boggs v. Chevron Corp.*, Nos. 11-7082-cv (L), 11-7089-cv (Con) (D.C. Cir.); and *Patton Boggs v. Chevron Corp.*, 12-cv-0901-ES (D.N.J.)  Patton Boggs is represented by Leader & Berkon LLP in its appeal of this Court's exoneration of the Preliminary Injunction bond.  *See Chevron Corp. v. Patton Boggs, et al.*, Nos. 12-1959-cv (L), 12-1960-cv (Con) (2d Cir.).

Camacho and Piaguaje in connection with Chevron's presently pending appeal to the United States Supreme Court.   As counsel, Patton Boggs regularly confers with the Afectados' trial counsel and engages in protected communications with trial and appellate counsel to other defendants in the present proceeding to discuss strategy.   Patton Boggs objects to Chevron's Subpoena to the extent that the Subpoena purports to require Patton Boggs to review and produce or log documents created in the course of, or in response to, Chevron's Complaint or Amended Complaint in this very proceeding, the *Salazar* proceeding, and related appeals or discovery proceedings stemming from subpoenas issued in this or the *Salazar* action.   To the extent Chevron's Subpoena calls for these documents, the Requests are unduly burdensome, vexatious, and interposed for the purpose of harassing Patton Boggs and its clients.   Production of such documents and would interfere with Patton Boggs' ability to continue to actively represent its clients.   Patton Boggs further notes that Magistrate Judge Francis previously held in *Chevron Corp. v. Salazar* that "documents created in connection with this litigation . . . need not be logged or produced."   (No. 1:11-cv-3718, Dkt. 289.)   If that holding were applied here, these documents would not be subject to production or logging.

       7.      **Communications Internal to Patton Boggs Attorneys and Professionals.** Patton Boggs objects to Chevron's request that Patton Boggs process, filter, review for responsiveness and privilege, and log communications solely between and among Patton Boggs' attorneys and professionals ("internal communications").   Because Patton Boggs is a non-party and actively represents the Afectados, Patton Boggs should not be required to log internal communications between and among Patton Boggs attorneys in the course of their representation because it would be unduly burdensome, vexatious, and requirement interposed for the purpose of harassing Patton Boggs.   Patton Boggs further notes that Chevron's counsel Jones Day, in

responding to a subpoena served on behalf of Defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje in the *Salazar* proceedings, argued that "[s]ubstantive communications solely between Jones Day," should not be required to be placed on a privilege log. *See Chevron Corp. v. Salazar, et al.*, 3:11-mc-90219-JSW, Jones Day Motion, at 11. Chevron's counsel explained that "[l]ogging such documents would not plausibly give defendants any information with which they could challenge these privileges" and whatever "marginal benefit" may be derived from such a log is "substantially outweighed by the burden on Jones Day of reviewing and logging all of the internal communications."

8.     **Collection of Documents from Attorneys and Professionals Working Fewer Than Fifty (50) Hours on the CHEVRON LITIGATIONS.**    Patton Boggs objects to Chevron's request requiring Patton Boggs to collect documents from the individual computing devices of potential document custodians that have not worked on the CHEVRON LITIGATIONS for more than fifty (50) hours.  Because certain custodians worked less than fifty (50) hours on the CHEVRON LITIGATIONS, they cannot be considered "key players" in the CHEVRON LITIGATIONS.  Thus, the collection, processing, and filtering of documents from potential document custodians that have not worked on the CHEVRON LITIGATIONS for more than fifty (50) hours will cause Patton Boggs to incur additional, substantial costs and add to the burden imposed on Patton Boggs as a non-party.  In addition, collection of documents from custodians who did not work more than fifty (50) hours on the litigation is not likely to lead to the discovery of unique documents that are not in the possession of other document custodians or are not otherwise available through Patton Boggs' information and data servers, including its firm-wide document management system which allows users to save documents to a common knowledge management system.

9.      **Collection of Documents from Certain Legal Secretaries.**   Patton Boggs intends to collect, process, filter, review, and produce or log documents from legal secretaries if Patton Boggs determines that they are in possession of potentially responsive data or documents that would not otherwise be available through Patton Boggs' common server and computer applications.  However, Patton Boggs specifically objects to the extent that Chevron's Subpoena purports to require Patton Boggs to collect electronic documents of legal secretaries that have primarily used and relied on Patton Boggs' firm-wide document management computer applications.  Requiring Patton Boggs to collect, process, filter, review, produce or log, the documents of every legal secretary in every office of the law firm that may have received or created a document in the course of assisting a Patton Boggs attorney or professional in the CHEVRON LITIGATIONS without any reasonable limitation will cause Patton Boggs to incur substantial costs and unduly burden Patton Boggs as a non-party.  The marginal benefit to Chevron, if any, is far outweighed by the increased costs and burden to Patton Boggs.

10.     **Documents Subject to Other Discovery Proceedings.**   Patton Boggs objects to the Subpoena as unduly burdensome and unreasonable to the extent the Requests contained therein call for the production of documents from persons other than Patton Boggs where such persons are equally susceptible to Rule 45 subpoenas.  Patton Boggs will not produce documents from any such persons except as otherwise specified, including, but not limited to, documents obtained during the course of Patton Boggs' current or former representation of certain clients who were or are respondents in related § 1782 proceedings.  Chevron similarly has refused to produce such documents.  *See* Chevron's Objections and Responses to Stratus Defendants' Request for Production, *Chevron Corp. v. Donziger, et al.*, at ¶ 30, No. 11-0691 (S.D.N.Y. Aug. 13, 2012) ("Chevron objects to these Requests as unduly burdensome and unreasonable to the

extent that they call for the production of documents from persons other than Chevron where such persons are susceptible to Rule 45 subpoenas. Chevron will not product documents from such persons except as otherwise specified.").

11.     **Documents Subject to Protective Orders or Confidentiality Agreements.** Patton Boggs objects that upon preliminary review, the Subpoena calls for the production of documents, many of which are subject to protective orders entered in related proceedings or non-disclosure agreements; thus, Patton Boggs is prohibited from and does not otherwise have the authority to produce any such documents.

12.     **Documents Previously Produced in Related U.S. Proceedings.** Patton Boggs objects that many of the Requests in the Subpoena call for the production of documents that were previously produced in related "1782 ACTIONS" and other U.S. proceedings.  By virtue of its representation of certain clients in related discovery proceedings, including assisting its clients in responding to subpoenas during the document collection process, Patton Boggs possesses numerous client documents.  Purporting to place upon Patton Boggs the obligation to gather, re-review, re-log, and re-produce any such documents would be extremely burdensome, and Patton Boggs will not log or produce such documents.  Chevron also agrees with this premise, asserting *in this proceeding*: "Chevron objects to these Request [sic] as unduly burdensome and unreasonable to the extent that they purport to require Chevron to produce documents that have been previously produced . . . in any litigation[.]"  *See* Chevron's Objections and Responses to Stratus Defendants' Request for Production, *Chevron Corp. v. Donziger, et al.*, at ¶ 33, No. 11-0691 (S.D.N.Y. Aug. 13, 2012).

13.     **Date Limitations.**  During earlier meet-and-confer discussions between Chevron and Patton Boggs concerning Patton Boggs' request that Chevron narrow its Subpoena by

excluding documents created after February 1, 2011, Chevron agreed to exclude from the Subpoena documents created after February 14, 2011 with respect to Requests: 15, 17, 18, 19, 20, and portions of 21, 22, 23, 24, 25, and 30.   Chevron also agreed to exclude from the Subpoena documents created after June 15, 2011 with respect to Request 16.   Patton Boggs objects that, as to those Subpoena's Requests for which Chevron refused to provide any date limitation,[4] Chevron purports to require Patton Boggs to produce documents created after February 14, 2011 and continuing "through the present."[5]   Chevron has not articulated any rationale or specific need, as to any particular Request, for Patton Boggs' documents to the extent created after February 14, 2011, and which post-date both the filing of Chevron's Complaint on February 1, 2011, and the Lago Agrio Court's issuance of the judgment on February 14, 2011.   Chevron's Requests for which it has not agreed to a date restriction amount to an unbridled and continuing "fishing expedition."   For example, despite its allegations of "fraud" and "collusion" Chevron has not been able to adduce any evidence of any alleged wrongdoing that post-dates the filing of its Complaint or the Lago Agrio Judgment.   Given that

---

[4] Document Requests Numbers: 1-6, 8-14, 21 (only sub-parts c, d, h, k, l, m, n, p), 26-29, and 31-58.

[5] Patton Boggs also objects insofar as, in refusing to further temporally limit certain requests, Chevron seeks to impose upon non-party Patton Boggs discovery obligations at odds with those it seeks to impose upon itself.   *See*, *e.g.*, *Chevron Corp. v. Salazar*, No. 11-cv-3718, Dkt. 360, at 3 (S.D.N.Y. Sept. 20, 2011) ("[d]istressingly, Chevron has taken a view of its own discovery responsibilities sharply different from the obligations it seeks to impose on [Patton Boggs].").   For example, in response to defendant Stratus' request for production, Chevron unilaterally determined that it would not produce documents post-dating February 14, 2011 for the following categories of documents:

- Communications between any party and Cabrera and documents relating to Cabrera and his appointment and public statements made about Cabrera;
- Communications between the defendants themselves;
- Communications between any defendant and the Ecuadorian Court or any sitting judge in Ecuador or Court filings in Ecuador;
- Scientific testing in Ecuador; Communications with the press;
- Communications with experts, both Chevron's and the LAPs' including payment to them; and
- Communications with United States Government or legislature; Surveillance of any party involved in the Ecuadorian ligation, the BIT Arbitration or the United States litigations.

the process of collecting, processing, reviewing, and logging potentially responsive documents for each of the Requests without a date limitation, "through the present," creates an additional and unnecessary burden, and economic hardship on non-party Patton Boggs, on balance, Patton Boggs' request for a date restriction as to the entire Subpoena is reasonable.

14.     **Contention Requests.**  Patton Boggs objects to the fact that, upon preliminary review, many of the Requests in the Subpoena are in fact "contention requests."  Earlier in this proceeding, Chevron entered into an agreement with defendant Stratus concerning discovery obligations, whereby those parties agreed to defer until a later date the production of documents in response to Requests that could be characterized as "contention requests," as explained by Chevron in its Responses and Objections.  *See*, *e.g.*, Chevron's Objections and Responses to Stratus Defendants' Request for Production, *Chevron Corp. v. Donziger, et al.*, at p. 26, No. 11-0691 (S.D.N.Y. Aug. 13, 2012) (providing no response to defendant Stratus' request stating: "The parties have agreed to defer the contention Requests.").  The reasons for this deferment apply with at least equal force to non-party Patton Boggs.

***Other General Objections and Reservations of Rights***

15.     Patton Boggs objects to the Requests because the overwhelming majority of them, as discussed *infra*, seek to harass, cause unnecessary delay, needlessly increase the costs of this litigation, and place substantial burden on non-party Patton Boggs.  Pending the outcome of the meet-and-confer conference regarding this Subpoena, Patton Boggs reserves the right to seek sanctions and other appropriate relief based on Chevron's (and its counsel's) violations of Rule 26(g) and Rule 45 of the Federal Rules of Civil Procedure.

16.     Patton Boggs, on behalf of its clients, reserves its own and its clients' rights to object to the use of documents produced in response to these Requests.  By producing documents, Patton Boggs does not make any admission with respect to those documents

produced or placed on a privilege log, including as to their relevancy, authenticity, or admissibility.

17.    That Patton Boggs has responded and/or objected to the Subpoena Requests set forth herein should not be taken as an incidental or implied admission that Patton Boggs accepts or admits the existence of any "facts" stated, implied, or assumed by the Subpoena Requests or in Chevron's Amended Complaint, or any other pleadings or its counsel's arguments or statements.

18.    Patton Boggs asserts as a General Objection those objections or reservations set forth in the section titled "Introduction," *supra*, to these Objections and Responses.

19.    Patton Boggs hereby incorporates by reference any other objections raised to the Court or otherwise contained in its Motion to Quash, including its memorandum of law, or Reply Brief in Support of the Motion (Dkts. 527, 558).  This includes, but is not limited to, Patton Boggs' objections to incurring costs associated with responding to the Subpoena and producing confidential documents without a protective order in place.

20.    Each and all of the foregoing General Objections, Objections to Definitions, and Objections to Instructions are expressly incorporated into the following Specific Objections and Responses to the Requests.  For particular emphasis, one or more of the General Objections may be reiterated in a Specific Objection.  The absence of any reiteration in a given Specific Objection is neither intended nor shall be construed as a limitation of waiver of any General Objection.

## OBJECTIONS TO DEFINITIONS

21.    Many of Chevron's Definitions attempt to define entities or corporations to include "partners, executives , officers, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, assigns, or any other PERSON or entity acting, or

purporting to act, on [the entity's] behalf, either directly or indirectly, whether as an employee or as an independent contract," (*see*, *e.g.*, Definition Number 26) or use substantially similar vague and ambiguous language, (*see* Definition Numbers 6, 8, 11, 16, 24, 26, 27, 35, 44, 45, 46, 47, 50, 51, 52, 54, 57, 62, 66, 68, and 72).  To the extent that Chevron does not include the identities of such persons or entities, such Definitions are overly broad and exceedingly vague, lack any discernable parameters, and are therefore incomprehensible.  For example, many of the Requests, as drafted, could even purport to require review, production, or logging for those documents Patton Boggs and Patton Boggs counsel, Leader & Berkon, share in common.  Where similar or like terms or phrases are used without specific identification to persons or entities, Patton Boggs objects and will respond to Requests employing this term based on the information actually known to Patton Boggs.

22.     Patton Boggs objects to Definition Number 1 ("RESPONDENT") and Definition Number 82 ("'YOU' and 'YOUR'") as overly broad and unduly burdensome because it identifies documents that exceed the scope of the documents required to be produced by the Federal Rules of Civil Procedure and other applicable authority.  Specifically, Patton Boggs objects to Definition Number 1 to the extent it purports to define RESPONDENT to include Patton Boggs' "affiliates, partners, advisors, officers, directors, employees, representatives, agents, and any other PERSON acting, or purporting to act, on their behalf," where those documents are not in Patton Boggs' actual possession.  Patton Boggs objects to Definition Number 82 to the extent it purports to define YOU and YOUR to include Patton Boggs' "agents, attorneys, and accountants," where those documents are not in Patton Boggs' actual possession.  The collection, processing, filtering, review and production or privilege logging of documents beyond those documents in non-party Patton Boggs' *actual* possession is unduly burdensome

13

and unreasonable. It is especially unreasonable given that, to the extent Chevron seeks documents in the possession of other persons, those persons are susceptible to Rule 45 subpoenas. Chevron has extensively used the Rule 45 subpoena process in connection with the CHEVRON LITIGATIONS, having served 67 subpoenas. (*See* Declaration of C. Marino ("Marino Decl."), dated July 20, 2012, Dkt. 529-00 – 529-15.) Chevron cannot possibly argue that this Objection is unreasonable, as Chevron lodged a similar Objection in its August 13, 2012 Objections to Defendant Steven R. Donziger's Requests for Production: "Chevron objects to these Requests as unduly burdensome and unreasonable to the extent that they call for the production of documents from persons other than Chevron where such persons are susceptible to Rule 45 subpoenas. Chevron will not produce documents from such persons except as otherwise specified."

23.    Patton Boggs objects to Definition Number 2 ("1782 ACTIONS") to the extent it calls for the production of documents obtained or created in connection with Patton Boggs' active representation of the Afectados or other clients, *see supra* Paragraph 4, or seeks documents that are subject to claw back requests, protective orders, confidentiality agreements and/or other limitations, including but not limited to documents obtained from Joseph Kohn, the Weinberg Group, and Alberto Wray. Patton Boggs will not produce documents from such persons except as otherwise specified. Patton Boggs further objects because, as drafted, this Request purports to seek materials previously produced in related § 1782 actions, and to the extent Patton Boggs is in possession of previously produced documents it will not re-review, re-log, or re-produce those documents.

24.    Patton Boggs objects to Definition Number 3 ("AAA LITIGATION") to the extent it calls for the production of documents obtained or created by Cristobal Bonifaz or other

attorneys for the Republic of Ecuador in connection with the case *Republic of Ecuador v. ChevronTexaco Corp.*, 04 Civ. 8378 (S.D.N.Y.) or related arbitration, as these documents may have already been found to be privileged or otherwise protected by the United States District Court for the District of Massachusetts, *see In re Chevron Corp.*, 762 F. Supp. 2d 242 (D. Mass. Dec. 22, 2010), and may be subject to the assertion of common-interest or other protections by the Republic of Ecuador, Patton Boggs' clients, or Patton Boggs. Patton Boggs will not produce documents from such persons except as otherwise specified.

25.     Patton Boggs objects to Definition Number 4 ("AGREEMENTS") because it is overly broad and exceedingly vague, lacks any discernable parameters, and is therefore incomprehensible. For example, Chevron's Subpoena purports that an AGREEMENT would include "any contract . . . whether or the not the agreement was communicated."

26.     Patton Boggs objects to Definition Number 5 ("AGUINDA LITIGATION") as vague, ambiguous, and overbroad insofar as it includes "all related appellate proceedings." In responding to Requests employing this term, Patton Boggs construes the term "AGUINDA LITIGATION" to apply to the case of *Aguinda et al. v. Texaco Inc.*, 93 Civ. 7527 (S.D.N.Y.), and any direct appeals of that action, but will not include appeals in other matters, although such matters may be construed as related in some way.

27.     As stated in Paragraph 21, Patton Boggs objects to Definition Number 6 ("ALLIANZA PAIS") because it is overly broad, exceedingly vague, and lacks any discernable parameters.

28.     As stated in Paragraph 21, Patton Boggs objects to Definition Number 7 ("AMAZON DEFENSE FRONT") because it is overly broad, exceedingly vague, and lacks any discernable parameters, and is therefore incomprehensible. Chevron does not include the

identities of the "Front's members, partners, officers, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, assigns or any other PERSON or entity acting, or purporting to act, on the Front's behalf either directly or indirectly." Patton Boggs will respond to Requests employing this term based on the information actually known to Patton Boggs.

29.     As stated in Paragraph 21, Patton Boggs objects to Definition Number 8 ("AMAZON WATCH") because it is overly broad and exceedingly vague, and lacks any discernable parameters.

30.     Patton Boggs objects to Definition Number 9 ("ASSEMBLY OF THE AFFECTED") insofar as it suggests that the "ASSEMBLY OF THE AFFECTED" does not actually represent the Afectados or other indigenous inhabitants of the concession area formerly operated, in part, by Chevron's predecessor Texaco, Inc.

31.     As stated in Paragraph 21, Patton Boggs objects to Definition Number 11 ("BURFORD") because it is overly broad and exceedingly vague, and lacks any discernable parameters.

32.     Patton Boggs objects to Definition Number 13 ("CABRERA REPORT") because it is overbroad to the extent it calls for the production of any "parts, sections, or annexes of" the CABRERA REPORT where a document (or orphaned page of a document), on reasonable review, cannot be determined to be a "part[], section[], or annex[]" of the CABRERA REPORT.

33.     Patton Boggs objects to Definition Number 14 ("CABRERA WORKPLAN") as overbroad to the extent Chevron calls for the production of any "parts, sections, or annexes of" the CABRERA WORKPLAN where a document (or orphaned page of a document), on reasonable review, cannot be determined to be a "part[], section[], or annex[]" of the CABRERA

WORKPLAN.

34.     As stated in Paragraph 21, Patton Boggs objects to Definition Number 16 ("CHEVRON") because it is overly broad, exceedingly vague, and lacks any discernable parameters.

35.     Patton Boggs objects to Definition 17 ("CHEVRON LITIGATIONS") because it is confusing and duplicative of other definitions.  This definition is unduly burdensome because it is exclusively comprised of several cross-references to other definitions.  The term CHEVRON LITIGATIONS is not independently defined and instead references a series of over forty collateral proceedings (including appeals, arbitrations, and Ecuadorian and United States trial and discovery proceedings) by referring to "any one or all" of eight (8) other definitions.

36.     Patton Boggs objects to Definition Number 18 ("CO-CONSPIRATORS") because it is argumentative and an inaccurate description of Patton Boggs, to the extent Patton Boggs is identified by Chevron as a "CO-CONSPIRATOR[]."  The use of this is harassing and inflammatory.  It is a pejorative term that is intended to presumptively cast aspersions upon certain persons or groups by referencing them as such.  Patton Boggs is not a named party in this litigation and Chevron's Amended Complaint has not averred that Patton Boggs committed any RICO violation or predicate act.  Nor has Chevron asserted any cause of action against Patton Boggs.  Patton Boggs has not conspired with any person or entity concerning any of the allegations contained herein, nor has Patton Boggs committed any unlawful act.  The phrase is also overbroad to the extent it is not limited to identified persons or entities, as Chevron uses the vague and over broad language "including but not limited to."  Chevron is in the best position to identify those it claims committed unlawful acts.  Finally, the phrase incorporates six (6) other definitions by reference and, thus, is confusing and adds an undue burden on Patton Boggs'

good-faith efforts to respond to the Subpoena.

37.     Patton Boggs objects to Definition Number 19 ("COMMUNICATION") because it is overly broad and unduly burdensome because it exceeds the scope of the documents required to be produced, as defined in Local Civ. R. 26.3(c)(1).  Patton Boggs will adhere to Local Civ. R. 26.3(c)(1).

38.     Patton Boggs objects to Definition Number 20 ("COURT EXPERTS") because it is overly broad, exceedingly vague, and lacks any discernable parameters, and is therefore incomprehensible.  Chevron does not include the identities of the "experts of the LAGO AGRIO COURT" it refers to, and does not even reveal the names of the "experts nominated by CHEVRON."   Patton Boggs will respond to Requests employing this term based on the information actually known to Patton Boggs.

39.     Patton Boggs objects to Definition Number 21 ("CRIMINAL CASES") because it is overly broad and exceedingly vague, lacks any discernable parameters, and is therefore incomprehensible.  Chevron defines the term as "all investigations . . . RELATED TO actual or potential criminal accusations or charges" without limitation.  Although the Request purports not to be limited to the terminated criminal cases against Rodrigo Perez Pallares and Ricardo Veiga, Patton Boggs respectfully submits that without sufficient detail or identification, the only reasonable way to limit the definition is to restrict the term to include only the now terminated criminal cases against Messrs. Perez and Veiga.  Patton Boggs will not produce documents that only mention Perez and Veiga in passing with no substantive discussion, or documents regarding Perez and Veiga's § 1782 discovery proceedings in the United States which have no direct bearing on their dismissed criminal cases.

40.     Patton Boggs objects to Definition Number 23 ("DOCUMENT") because it is

overly broad and unduly burdensome because it exceeds the scope of the term "document" as defined by Fed. R. Civ. P. 34(a)(1)(A) and Local Civ. R. 26.3(c)(2).  Patton Boggs will adhere to the definitions found in Fed. R. Civ. P. 34(a)(1)(A) and Local Civ. R. 26.3(c)(2).

41.     Patton Boggs further objects to Definition Number 23 ("DOCUMENT") to the extent that the definition conflicts with Chevron's existing agreement to exclude from the Subpoena's ambit documents filed with courts, drafts of documents filed with courts and communications regarding those filings.  Patton Boggs notes that Chevron has agreed that Patton Boggs need not produce or privilege log "drafts of documents filed" unless the filed document "include[s] statements Patton Boggs knew or should have known to be false."  (Young Supp. Decl., ¶ 22.)  Patton Boggs does not know of any document that was filed by Patton Boggs that includes false statements and to date Chevron refused to refer Patton Boggs to any specific filings, despite repeated requests that Chevron do so.  (*Id.*)  Therefore, Patton Boggs will not produce or privilege log any "drafts of documents filed" or communications regarding those drafts.

42.     As stated in Paragraph 21, Patton Boggs objects to Definition Number 24 ("DONZIGER & ASSOCIATES") because it is overly broad and exceedingly vague, and lacks any discernable parameters. .

43.     Patton Boggs objects to Definition Number 25 ("DRAFT ALEGATO") because it is exceedingly vague and incomprehensible.  Although Chevron has provided a file name and a Bates number, Chevron did not provide Patton Boggs the actual document at issue.  As a non-party, Patton Boggs should not have the burden of searching for and analyzing information that Patton Boggs may or may not possess to comprehend Chevron's Definition of a term.  Patton Boggs submits it is unreasonable to purport to require documents relating to a Microsoft Word

file name or Bates number and Objects to this Definition as incomprehensible.

44.     As stated in Paragraph 21, Patton Boggs objects to Definition Number 26 ("ELAW") because it is overly broad and exceedingly vague, and lacks any discernable parameters.

45.     As stated in Paragraph 21, Patton Boggs objects to Definition Number 27 ("E-TECH") because it is overly broad, exceedingly vague, and lacks any discernable parameters.

46.     Patton Boggs objects to Definition Number 28 ("FORMER CONCESSION AREA") as argumentative insofar as Chevron purports to disregard its corporate relationship with TEXPET and provide conflicting and confusing positions regarding Chevron's liability for the actions of entities affiliated with TEXPET.

47.     Patton Boggs objects to Definition Number 29 ("FUSION MEMO") because it is vague and adds to non-party Patton Boggs' burden.  Chevron references the "FUSION MEMO" as a particular document and with a Bates number apparently assigned by Chevron or other counsel outside of Patton Boggs, but Chevron failed to provide to Patton Boggs a copy of the document referenced and non-party Patton Boggs should not be burdened with first attempting to identify the referenced documents before determining whether it possesses any documents responsive to Requests involving this definition.  Second, Patton Boggs objects to the extent Chevron purports to require Patton Boggs to produce or log "any updated version of that memorandum," because the phrase "any updated version" is vague and ambiguous and would unduly burden Patton Boggs.  For example, it is possible that drafts, parts, or sections of the "FUSION MEMO" were incorporated into memoranda, briefs, or other documents.  It would be unreasonable for Patton Boggs to search documents for partial portions of any "FUSION MEMO" in Spanish and English, to the extent the "FUSION MEMO" exists in multiple

languages.  Also, other versions of the "FUSION MEMO" (if they exist) may not be clearly titled "FUSION MEMO" or would otherwise make it difficult, burdensome, or impossible for Patton Boggs to determine if a document is an "updated version" of the FUSION MEMO, to the extent the document is not clear on its face.

48.     Patton Boggs objects to Definition Number 31 ("INVICTUS MEMO") because it is vague and adds to non-party Patton Boggs' burden.  Chevron purports to require Patton Boggs to produce or log "any other draft or version of that memorandum," as the phrase "any other draft or version" is vague and ambiguous and would unduly burden Patton Boggs.  In this regard, it is possible, for example, that drafts, parts, or sections of the "INVICTUS MEMO" were incorporated into memoranda, briefs, or other documents.  It would be unreasonable to require Patton Boggs to search documents for partial portions of any "INVICTUS MEMO" in Spanish and English, to the extent the "INVICTUS MEMO" exists in multiple languages.  Also, other versions of the "INVICTUS MEMO" may not be clearly titled "INVICTUS MEMO" or would otherwise make it difficult, burdensome, or impossible for Patton Boggs to determine if a document is an "other draft or version" of the INVICTUS MEMO, to the extent the document is not clear on its face.

49.     Patton Boggs objects to Definition Number 32 ("JOTA LITIGATION") as vague, ambiguous, and overbroad insofar as it includes "all related appellate proceedings."  In responding to Requests employing this term, Patton Boggs construes the term "JOTA LITIGATION" to apply to the case of *Jota v. Texaco Inc.*, 94 Civ. 9266 (S.D.N.Y.), and any direct appeals therefrom, but will not include appeals in other matters, although such matters may be "related" in some way.

50.     Patton Boggs objects to Definition Number 33 ("JUDGMENT TRUST") as

overly broad, exceedingly vague, and unduly burdensome as it purports to include in the definition of "JUDGMENT TRUST" "any trust, account, corporate entity, or other legal or financial structure established to receive and distribute funds obtained through the litigation." Moreover, although Chevron references certain trusts as mentioned in a particular document and, at times, with a Bates number apparently assigned by Chevron or other counsel outside of Patton Boggs, Chevron failed to provide to Patton Boggs a copy of the document referenced and non-party Patton Boggs should not be burdened with first attempting to identify the referenced documents before determining whether it possesses any documents responsive to Requests involving this definition.  (*See*, *e.g.*, "the Settlement Trust and the Settlement Trust Account discussed in the draft Settlement Agreement produced in the 1782 ACTIONS at DONZ00026334").

51.    Patton Boggs objects to Definition Number 34 ("KATIA FACH GOMEZ MEMO") because it is vague and adds to non-party Patton Boggs' burden.  As a preliminary matter, although Chevron references the "KATIA FACH GOMEZ MEMO" as a particular document and with a Bates number apparently assigned by Chevron or other counsel outside of Patton Boggs, Chevron failed to provide to Patton Boggs a copy of the document referenced and non-party Patton Boggs should not be burdened with first attempting to identify the referenced documents in order to determine whether it possesses documents responsive to Requests involving this definition.  Second, Patton Boggs objects to the extent Chevron purports to require Patton Boggs to produce or log "any other version of that document," as the phrase "any other version" is vague and ambiguous and would unduly burden Patton Boggs.  In this regard, it is possible, for example, that drafts, parts, or sections of the "KATIA FACH GOMEZ MEMO" were incorporated into memoranda, briefs, or other documents.  It would be unreasonable to

require Patton Boggs to search documents for partial portions of any "KATIA FACH GOMEZ MEMO" in Spanish and English, to the extent the "KATIA FACH GOMEZ MEMO" exists in multiple languages.  Also, other versions of the "KATIA FACH GOMEZ MEMO" may not be clearly titled "KATIA FACH GOMEZ MEMO" or would otherwise make it difficult, burdensome, or impossible for Patton Boggs to determine if a document is an "other version" of the KATIA FACH GOMEZ MEMO, to the extent the document is not clear on its face.

52.     As stated in Paragraph 21, Patton Boggs objects to Definition Number 35 ("KOHN SWIFT & GRAF") because it is overly broad, exceedingly vague, and lacks any discernable parameters.

53.     Patton Boggs objects to Definition Number 36 ("LAGO AGRIO APPELLATE COURT") because it is overly broad, exceedingly vague, and lacks any discernable parameters as Chevron does not identify all judges of the LAGO AGRIO APPELLATE COURT for which it seeks information.  Patton Boggs will respond to Requests employing this term based on the information actually known to Patton Boggs.

54.     Patton Boggs objects to Definition Number 39 ("LAGO AGRIO APPELLATE PANEL") because it is overly broad, exceedingly vague, and lacks any discernable parameters as Chevron does not identify all judges of the LAGO AGRIO APPELLATE PANEL for which it seeks information.  Patton Boggs will respond to Requests employing this term based on the information actually known to Patton Boggs.

55.     Patton Boggs objects to Definition Number 42 ("LAGO AGRIO LITIGATION") because it is exceedingly vague, ambiguous, and overbroad insofar as it includes "any appeals and enforcement actions stemming therefrom."  In responding to Requests employing this term, Patton Boggs construes the term "LAGO AGRIO LITIGATION" to apply to the case of *Maria*

*Aguinda y Otros v. Chevron Corporation*, in the Provincial Court of Justice of Sucumbíos in Ecuador, and any appeals or enforcement actions therefrom, but will not include appeals in other matters, although such matters may be "related" in some way.

56.     Patton Boggs objects to Definition Number 43 ("LAGO AGRIO PLAINTIFF ACTIVISTS") because it is overly broad and unduly burdensome insofar as it purports to include in the definition of "LAGO AGRIO PLAINTIFF ACTIVISTS" an unlimited and undefined group of entities or PERSONS without identifying such PERSONS or stating why they are applicable to "LAGO AGRIO PLAINTIFF ACTIVISTS."  Patton Boggs further objects to this term insofar as it defines such persons based on unspecified "activities intended to promote awareness of the LAGO AGRIO LITIGATION and related issues."

57.     As stated in Paragraph 21, Patton Boggs objects to Definition Number 44 ("LAGO AGRIO PLAINTIFF CONSULTANTS") because it is overly broad, exceedingly vague, and lacks any discernable parameters.

58.     As stated in Paragraph 21, Patton Boggs objects to Definition Number 45 ("LAGO AGRIO PLAINTIFF LABORATORIES") because it is overly broad, exceedingly vague, and lacks any discernable parameters.

59.     As stated in Paragraph 21, Patton Boggs objects to Definition Number 46 ("LAGO AGRIO PLAINTIFF LAW FIRMS") because it is overly broad, exceedingly vague, and lacks any discernable parameters.

60.     As stated in Paragraph 21, Patton Boggs objects to Definition Number 47 ("LAGO AGRIO PLAINTIFF LOBBYISTS") because it is overly broad, exceedingly vague, and lacks any discernable parameters.

61.     Patton Boggs objects to Definition Number 48 ("LAGO AGRIO PLAINTIFF

RELATED PARTIES") because it is confusing and duplicative of other definitions. This definition is unduly burdensome because it is exclusively comprised of several cross-references to other definitions. The term LAGO AGRIO PLAINTIFF RELATED PARTIES is not independently defined and instead references twelve (12) additional, defined terms, which themselves, each contain an unspecified number of persons and entities—both named and unnamed.

62.      As stated in Paragraph 21, Patton Boggs objects to Definition Number 50 ("LAGO AGRIO PLAINTIFFS PUBLIC RELATIONS CONSULTANTS") because it is overly broad, exceedingly vague, and lacks any discernable parameters.

63.      As stated in Paragraph 21, Patton Boggs objects to Definition Number 51 ("LAW OFFICES OF STEVEN R. DONZIGER") because it is overly broad, exceedingly vague, and lacks any discernable parameters.

64.      As stated in Paragraph 21, Patton Boggs objects to Definition Number 52 ("MEDIA") because it is overly broad, exceedingly vague, and lacks any discernable parameters in that it purports to include the "officers, directors or employees of companies in the media business."

65.      Patton Boggs objects to Definition Number 53 ("MOODIE MEMO") because it is vague and adds to non-party Patton Boggs' burden. Chevron references the "MOODIE MEMO" as a particular document and with a Bates number apparently assigned by Chevron or other counsel outside of Patton Boggs, but Chevron failed to provide to Patton Boggs a copy of the document referenced and non-party Patton Boggs should not be burdened with first attempting to identify the referenced documents before determining whether it possesses any documents responsive to Requests involving this definition.

66.     As stated in Paragraph 21, Patton Boggs objects to Definition Number 54 ("NEXTANT") because it is overly broad, exceedingly vague, and lacks any discernable parameters.

67.     Pursuant to Paragraph 21, Patton Boggs objects to Definition Number 57 ("PETROECUADOR") because it is overly broad and exceedingly vague, and lacks any discernable parameters.

68.     Patton Boggs objects to Definition Number 58 ("POST-CABRERA CLEANSING CONSULTANTS") because it is inflammatory and argumentative, and further objects that this Definition purports to include "any other PERSON whose work was sought for the purpose of submitting reports to the LAGO AGRIO COURT regarding damages assessments in 2010."   Thus, as drafted, this term is overly broad, exceedingly vague, and lacks any discernable parameters, because the inclusion of the term "PERSON," which itself "refers to any natural person or any business, legal or governmental entity, or association" necessarily injects into the Definition additional requests aimed at an unlimited and unidentifiable number of individuals or entities, rendering the Definition unduly burdensome and incapable of response.

69.     Patton Boggs objects to Definition Number 59 ("PREPARATION" or "PREPARE") because it purports to unnecessarily replace the ordinary definitions of the commonly-used terms "PREPARATION" or "PREPARE" that carry widely-understood meanings and are not specialized terms of art.  Patton Boggs further objects that in so replacing the ordinary definitions of "PREPARATION" or "PREPARE," Chevron has incorporated into these definitions such suggestive, inflammatory, and irrelevant terms as "ghostwriting" and "advance knowledge."

70.     Patton Boggs objects to Definition Number 60 ("PROVIDE" or "PROVIDED")

because it purports to unnecessarily replace the ordinary definitions of the commonly-used terms "PROVIDE" or "PROVIDED" that carry widely-understood meanings and are not specialized terms of art. Patton Boggs further objects that in so replacing the ordinary definitions of "PROVIDE" or "PROVIDED," Chevron has incorporated into these definitions such subjective terms as "what is desired or needed."

71.     Patton Boggs objects to Definition Number 61 because the term "PURPORTED CABRERA TEAM" is itself inflammatory and argumentative.

72.     As stated in Paragraph 21, Patton Boggs objects to Definition Number 62 ("RAINFOREST ACTION NETWORK" or "RAN") because it is overly broad, exceedingly vague, and lacks any discernable parameters.

73.     Patton Boggs objects to Definition Number 63 ("RECORD") to the extent it does not encompass all documents that were before the LAGO AGRIO COURT.

74.     Patton Boggs objects to Definition Number 64 ("RELATED TO," "RELATING TO," "IN RELATION TO," "REGARDING," "CONCERNING") because it is overly broad and unduly burdensome because it calls for documents that exceed the scope of the term "concerning" as defined by Local Civ. R. 26.3(c)(7) and violates its prohibition that "[n]o discovery request shall use broader definitions or rules of construction than those set forth in paragraphs (c) and (d)." Patton Boggs will adhere to the definition found in Local Civ. R. 26.3(c)(7).

75.     Patton Boggs objects to Definition Number 65 ("RICO DEFENDANTS"), because it is confusing and duplicative of other definitions. This term is unduly burdensome when Chevron's definitions are primarily comprised of cross-references to other definitions. The term RICO DEFENDANTS is not independently defined and instead references five (5)

additional, defined terms, which themselves, each contain an unlimited number of persons and entities—both named and unnamed.

76.     As stated in Paragraph 21, Patton Boggs objects to Definition Number 66 ("ROE") because it is overly broad, and exceedingly vague, and lacks any discernable parameters.

77.     Pursuant to Paragraph 21, Patton Boggs objects to Definition Number 68 ("SELVA VIVA") because it is overly broad, exceedingly vague, and lacks any discernable parameters.

78.     Patton Boggs objects to Definition Number 69 ("SELVA VIVA DATABASES") because it is overly broad and unduly burdensome because it identifies documents that exceed the scope of the documents required to be produced by the Federal Rules of Civil Procedure and other applicable authority, by encompassing and incorporating by reference five additional defined terms, which themselves each contain an unspecified number of persons and entities—both named and unnamed.  Thus, imposing on Patton Boggs the obligation to produce all documents "related to" such "SELVA VIVA DATABASES" would be an unduly burdensome obligation.  Patton Boggs further objects to this definition to the extent it purports to refer to documents already produced in 1782 ACTIONS because it is duplicative and overly burdensome, and thus enlarges Patton Boggs' obligations pursuant to Fed. R. Civ. P. 45(c)(1).

79.     Patton Boggs objects to Definition Number 71 ("SELVA VIVA RECORD SUMMARY") because it is vague and adds to non-party Patton Boggs' burden.  As a preliminary matter, Chevron references the "SELVA VIVA RECORD SUMMARY" as a particular document and with a Bates number apparently assigned by Chevron or other counsel outside of Patton Boggs, but Chevron failed to provide to Patton Boggs a copy of the document

referenced and non-party Patton Boggs should not be burdened with first attempting to identify the referenced documents before determining whether it possesses any documents responsive to Requests involving this definition.  Second, Patton Boggs objects to the extent Chevron purports to require Patton Boggs to produce or log "any other version of that document," as the phrase "any other version" is vague and ambiguous and would unduly burden Patton Boggs.  For example, it is possible that drafts, parts, or sections of the "SELVA VIVA RECORD SUMMARY" were incorporated into memoranda, briefs, or other documents.  It would be unreasonable for Patton Boggs to search documents for partial portions of any "SELVA VIVA RECORD SUMMARY" in Spanish and English, to the extent the "SELVA VIVA RECORD SUMMARY" exists in multiple languages.  Also, other versions of the "SELVA VIVA RECORD SUMMARY" may not be clearly titled "SELVA VIVA RECORD SUMMARY" or would otherwise make it difficult, burdensome, or impossible for Patton Boggs to determine if a document is an "other version" of the "SELVA VIVA RECORD SUMMARY," to the extent the document is not clear on its face.

80.   As stated in Paragraph 21, Patton Boggs objects to Definition Number 72 ("STRATUS") because it is overly broad, exceedingly vague, and lacks any discernable parameters.

81.   Patton Boggs objects to Definition Number 73 ("SUPPLEMENTAL CABRERA REPORT") because it is overbroad to the extent Chevron calls for the production of any "parts, sections, or annexes of" the SUPPLEMENTAL CABRERA REPORT where the document (or orphaned page of a document) is not labeled or titled or cannot otherwise, on reasonable review, be determined to be a "part[], section[], or annex[]" of the SUPPLEMENTAL CABRERA REPORT.

82.     Patton Boggs objects to Definition Number 74 ("TEXPET") because Chevron purports to disregard its corporate relationship with "TEXPET" and provide conflicting and confusing positions regarding Chevron's liability for the actions of entities affiliated with TEXPET.

83.     Patton Boggs objects to Definition Number 75 ("TEXPET REMEDIATION AND RELEASE") to the extent it assumes that Chevron adequately performed its legal obligations pursuant to the Memorandum of Understanding between The Government of Ecuador, PETROECUADOR, and TEXPET, dated December 14, 1994.

84.     Definition Number 76 ("THE CABRERA REPORTS") is duplicative of other definitions.   And, thus, Patton Boggs hereby incorporates and re-states its objections to Definitions Numbers 13 and 73.

85.     Patton Boggs objects to Definition Number 77 ("THREATS") because it unnecessarily seeks to replace the ordinary definition of the word "THREAT" that carries a widely-understood meaning and is not a specialized term of art.

86.     Patton Boggs objects to Definition Number 78 ("TRECA FUNDING AGREEMENT") because it is vague and adds to non-party Patton Boggs' burden.  Chevron references the "TRECA FUNDING AGREEMENT" as a particular document and with a Bates number apparently assigned by Chevron or other counsel outside of Patton Boggs, but Chevron failed to provide to Patton Boggs a copy of the document referenced and non-party Patton Boggs should not be burdened with first attempting to identify the referenced documents before determining whether it possesses any documents responsive to Requests involving this definition.

87.     Patton Boggs objects to Definition Number 79 ("TRUST EMAIL") because it is

vague and adds to non-party Patton Boggs' burden.  First Chevron references the "TRUST EMAIL" as a particular document and with a Bates number apparently assigned by Chevron or other counsel outside of Patton Boggs, but Chevron failed to provide to Patton Boggs a copy of the document referenced and non-party Patton Boggs should not be burdened with first attempting to identify the referenced documents before determining whether it possesses any documents responsive to Requests involving this definition.  Second, Patton Boggs objects to the extent Chevron purports to require Patton Boggs to produce or log "any other version of the document," as the phrase "any other version" is vague and ambiguous and would unduly burden Patton Boggs.  For example, it is possible that drafts, parts, or sections of the "TRUST EMAIL" were incorporated into memoranda, briefs, or other documents.  It would be unreasonable for Patton Boggs to search documents for partial portions of any "TRUST EMAIL" in Spanish and English, to the extent the "TRUST EMAIL" exists in multiple languages.  Also, other versions of the "TRUST EMAIL" may not be clearly titled "TRUST EMAIL" or would otherwise make it difficult, burdensome, or impossible for Patton Boggs to determine if a document is an "other version" of the "TRUST EMAIL," to the extent the document is not clear on its face.

88.    Patton Boggs objects to Definition Number 80 ("UNFILED LAGO AGRIO PLAINTIFFS' WORK PRODUCT") because it as overly broad and unduly burdensome because it calls for documents that exceed the scope of the documents required to be produced by the Federal Rules of Civil Procedure and other applicable authority, by encompassing and incorporating by reference thirteen additional, defined terms, which themselves each contain an unspecified number of persons and entities and are subject to numerous, independent grounds for objection as already set forth, *supra*.  Requiring Patton Boggs to identify, collect, review, and produce or log all documents "related to" such "UNFILED LAGO AGRIO PLAINTIFFS'

WORK PRODUCT" would be unduly burdensome.  Patton Boggs further objects to this definition to the extent it purports to refer to documents already produced in 1782 ACTIONS because it is duplicative and overly burdensome, and thus enlarges Patton Boggs' obligations pursuant to Fed. R. Civ. P. 45(c)(1).  Patton Boggs also objects to this definition to the extent it assumes facts in dispute and purports to define as "unfiled" certain documents that may have been before were before the LAGO AGRIO COURT.  Finally, Patton Boggs objects to Chevron's unfounded and negative implication that Patton Boggs secretly provided documents and/or information to the Lago Agrio Court without formally submitting or filing same.

89.     Patton Boggs objects to Definition Number 81 ("WORK") because it unnecessarily seeks to replace the ordinary definition of the word "WORK" that carries a widely-understood meaning and is not a specialized term of art.

90.     Patton Boggs objects to Definition Number 82 ("YOU" and "YOUR") because by incorporating by reference the earlier defined term "RESPONDENT," the definition greatly exceeds the permissible scope of any pronoun meant to refer to a respondent, as defined in Local Civ. R. 26.3(c)(5), and violates its prohibition that "[n]o discovery request shall use broader definitions or rules of construction than those set forth in paragraphs (c) and (d)."  Patton Boggs will adhere to the definition found in Local Civ. R. 26.3(c)(5).

## OBJECTIONS TO INSTRUCTIONS

91.     Patton Boggs objects to Instruction Number 1 insofar as Patton Boggs does not have possession, custody, or control of material possessed by former employees, former agents, subcontractors, independent contractors, third parties, the media, Chevron, Chevron's counsel, or other persons and entities whose material is not accessible to Patton Boggs.  To the extent such persons would have responsive documents if the discovery were directed to them, but those documents are not known to or in the possession, custody, or control of Patton Boggs, Patton

Boggs will not produce them, including documents in Chevron's possession and those from public sources or other third parties that are equally available and/or accessible to Chevron.

In response to a nearly identical Instruction contained in Stratus' Request for Production served on Chevron, Chevron responded with the blanket objection: "Chevron further objects to this Instruction because it improperly purports to impose on Chevron obligations beyond those required by the Federal Rules of Civil Procedure and the Local Rules . . . by demanding that Chevron produce documents not within Chevron's possession, custody, or control. This objection applies to Chevron's response to every Requests [sic]." *See Chevron Corp. v. Donziger, et al.*, at ¶ 6, No. 11-0691 (S.D.N.Y. Aug. 13, 2012).  Chevron also interposed this "general objection" in response to Stratus' Request for Production: "Chevron objects to these Requests as unduly burdensome and unreasonable to the extent that they purport to require Chevron to produce documents that are publicly available and that Defendants can access as readily as Chevron." *Id.* at p. 10.  Non-party Patton Boggs should not be held to more onerous obligations than Chevron seeks to apply to itself.

92.     Patton Boggs objects to Instruction Number 2 as to the time and place of production for the reasons provided *supra* ¶¶ 1–2.

93.     Patton Boggs objects that Instruction Number 3 further enlarges Chevron's overly broad and unduly burdensome Requests because it purports to include in the instruction for production wholly irrelevant materials, such as index tabs, file dividers, and binder spine labels. Patton Boggs also objects to this instruction to the extent it seeks to preclude Patton Boggs from redacting protected or unresponsive portions of documents.

94.     Patton Boggs objections to the extent that Instruction Number 4 purports to place on Patton Boggs an obligation that is not consistent with the Orders of this Court.  Patton Boggs

further objects that it would be unduly burdensome to produce or privilege log any items at this juncture where the Court has left open the possibility of Patton Boggs renewing its burden and other claims, and where issues regarding the scope of a document collection have still not been resolved, *see, e.g.*, *supra* ¶¶ 3-9.

95.     Patton Boggs objects to Instruction Number 5 as overly broad and unduly burdensome to the extent that it demands production of duplicative versions of documents already requested for production that are in Chevron's possession, or draft documents, that are likely protected.

96.     Patton Boggs objects that Instruction Number 6 conflicts with Fed. R. Civ. P. 45(d), which provides Patton Boggs with a choice to *either* produce documents as they are kept in the ordinary course of business *or* label them to correspond to the categories in the demand.

97.     Patton Boggs objects insofar as compliance with Instruction Number 7 would be unduly burdensome, because it purports to impose on Patton Boggs obligations beyond those imposed by the Federal Rules of Civil Procedure.  Patton Boggs further objects to this instruction to the extent it purports to suggest Patton Boggs' knowing destruction or disposal of documents responsive to the Requests set forth in the Subpoena.

98.     In response to Instruction Number 8, Patton Boggs provides that it has no documents responsive to Chevron Requests 14, 29, 30, 55, 56, 57, and 58.

99.     Patton Boggs objects to Instruction Number 9 to the extent it seeks to enlarge the obligations imposed on Patton Boggs under Federal Rule of Civil Procedure 45(d), which permits Patton Boggs to produce documents in the manner they are maintained in the ordinary course of business.  Patton Boggs further objects to Instruction Number 9 as being overly broad and unduly burdensome in the metadata requested.  Again, Chevron has demanded far more from

non-party Patton Boggs than Chevron claims it is required to provide.  For example, its August 3, 2011 Objections to Requests for Production served by Defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje, Chevron objected to the production of metadata as "overly broad and unduly burdensome" and indicated it would only produce the following categories of metadata:    BEG_PROD_NUM,   END_PROD_NUM,   BEGATTACH, ENDATTACH, FROM, RECIPIENT, CC, BCC, DATE (sent date for e-mail create date for files), SUBJECT (subject line for e-mail, filename for file, title for hard copy), DOCTYPE, FILENAME, AUTHOR, and CUSTODIAN.  As Judge Francis noted in the *Salazar* proceeding, "[d]istressingly, Chevron has taken a view of its own discovery responsibilities sharply different from the obligations it seeks to impose on [Patton Boggs]."  *See Chevron Corp. v. Salazar*, No. 11-cv-3718, Dkt. 360, at 3, (S.D.N.Y. Sept. 20, 2011).

100.    Patton Boggs objects to Instruction Number 10 to the extent it seeks to enlarge the obligations imposed on Patton Boggs under Federal Rule of Civil Procedure 45(d), which permits Patton Boggs to produce documents in the manner they are maintained in the ordinary course of business.  Patton Boggs further objects to Instruction Number 11 to the extent it precludes the possibility of confidentiality designations on produced documents consistent with any agreement reached by the parties or pursuant to Court order.

101.    Patton Boggs objects to Instruction Number 11 to the extent it seeks to enlarge Patton Boggs' obligations under the Federal Rules of Civil Procedure and the local rules of this Court.

102.    Patton Boggs objects to Instruction Number 15 to the extent it seeks to impose obligations and burdens on Patton Boggs beyond what is permitted by the Federal Rules of Civil Procedure and the Local Rules of this Court and Patton Boggs hereby incorporates its objections

to Instructions Number 1, *supra*.

103.    Patton Boggs objects to Instruction Number 16 because it purports to set a time period for which relevant, non-privileged documents, if any, should be produced, that is overly broad and unduly burdensome because Chevron seeks to obtain documents not only dating as far back as January 1, 2003, but continuing in perpetuity.  Because the Requests are without any temporal limitation they seek to impose obligations far beyond those imposed by the Federal Rules of Civil Procedure and specifically contravene Fed. R. Civ. P. 45(c)(1), (3)(A)(iv).  Patton Boggs objects to the production of any documents dated or created after February 1, 2011, the date on which Chevron filed its Complaint in *Chevron Corp. v. Donziger, et al.*, No. 11-0691 (S.D.N.Y.) (the "RICO Action"), with regard to certain earlier Requests.

## RESPONSES AND OBJECTIONS TO REQUESTS FOR "DOCUMENTS TO BE PRODUCED BY PATTON BOGGS"

In an effort to comply with the Court's Memorandum & Order dated August 24, 2012, (Dkt. 571), and subject to the foregoing objections, and a more complete review of Patton Boggs' documents, Patton Boggs has specified categories of documents over which it likely would assert protection from disclosure.  Patton Boggs prepared the categories listed herein in good faith and made its best efforts to comply with this Court's August 24, 2012 Memorandum & Order.  However, as outlined previously in the "Introduction" section, *supra*, as documents are reviewed for responsiveness, additional categories of documents subject to claims of privilege or other protections may become evident and Patton Boggs expressly reserves the right to supplement the categories listed herein or to place documents directly on a privilege log, to the extent that a privilege log is ordered served, that may not fall within the categories specified here but is otherwise entitled to a good-faith assertion of privilege or other protection.  Patton Boggs expressly reserves the right to modify or expand its categories listed herein.

Where possible, Patton Boggs has also provided exemplars of documents that are privileged or otherwise protected from disclosure that may be responsive to the Requests. The listing of certain documents throughout these Objections and Responses should not be construed as Patton Boggs' privilege log and Patton Boggs intends, at the appropriate time to prepare and serve a privilege log. Patton Boggs reserves its right ultimately to submit a privilege log in this proceeding in compliance with the Federal Rules of Civil Procedure, the Court's Local Rules, and any further Order of this Court.

**DOCUMENT REQUEST NUMBER 1:**

All DOCUMENTS RELATED TO the scope of YOUR authority or YOUR authority to represent or act on behalf of the LAGO AGRIO PLAINTIFFS in Ecuador, the United States, Canada or any other jurisdiction in which the LAGO AGRIO PLAINTIFFS are now seeking or plan to seek enforcement of the LAGO AGRIO JUDGMENT.

**OBJECTION TO DOCUMENT REQUEST NUMBER 1:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, and YOUR in full as if fully set forth herein. Patton Boggs objects to the extent that the Request seeks the production of documents that are not relevant to the claims and defenses at issue in the RICO Action and/or not reasonably calculated to lead to the discovery of admissible evidence. As a non-party, Patton Boggs' retention agreement and other documents regarding its retention by its clients has no bearing on the claims alleged by Chevron in its Amended Complaint. The retention agreement, and other related documents, to the extent those documents evince or contain legal strategy or other protected information, are subject to protection from disclosure. Patton Boggs further objects to this Request to the extent it is propounded for the improper, vexatious purpose of harassing or intimidating Patton Boggs.

37

**Potential and Non-Exclusive Privilege Categories**

Notwithstanding the foregoing objections, based on a preliminary review of Patton Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of documents that may be in its possession, as drafted, Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- retention agreements (and drafts of same) to the extent they reflect litigation strategy;

- draft filings in connection with the 28 U.S.C. § 1782 proceeding against Steven Donziger wherein Chevron alleged by Order to Show Cause seeking sanctions that Patton Boggs lacked authority to represent its clients;

- draft filings in connection with other proceedings in which Chevron asserts the same arguments regarding Patton Boggs' purported lack of authority;

- communications or directives from Patton Boggs' clients and/or clients' representatives regarding Patton Boggs' scope of work and authority; and

- internal documents memorializing direct communications with defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, and/or other legal protections, including common-interest protections. To further assist the Court, exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| Date | Author | Recipient | Document Type | Description | Basis |
|------|--------|-----------|---------------|-------------|-------|
| Jan. 19, 2011 | S. Alyssa Young, Esq. (Leader & Berkon) | Justin Strochlic, Esq. (Patton Boggs); Eric S. Westenberger, Esq. (Patton Boggs); Adlai J. J. Small, Esq. (Patton Boggs); Patrick Gilmartin, Esq. (Patton Boggs); | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation, containing thoughts, impressions, | Work Product |

| | | Andrew Kirshenbaum, Esq. (Patton Boggs) | | and legal strategy regarding Donziger § 1782 action. | |
|---|---|---|---|---|---|
| April 21, 2011 | Patrick Conti, Esq. (Patton Boggs); Anneberkie Carrasco, Esq. (Patton Boggs) | File | Notes | Notes, prepared in anticipation of litigation, reflecting discussion of litigation strategy with Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje. | Attorney-Client Communication; Work Product |
| May 9, 2011 | Ab. Pablo Fajardo Mendoza | Eric S. Westenberger, Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with *Chevron Corp. v. Donziger et al.,* No.1:11-cv-0891-LAK ("RICO"). | Work Product |
| Jan. 29, 2011 | Ab. Pablo Fajardo Mendoza | Eric S. Westenberger, Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with case management. | Work Product |

**DOCUMENT REQUEST NUMBER 2:**

All DOCUMENTS RELATED TO YOUR actual or potential involvement in the PREPARATION of any brief, motion, or pleading in connection with the LAGO AGRIO LITIGATION or the appeal of the LAGO AGRIO JUDGMENT.

**OBJECTION TO DOCUMENT REQUEST NUMBER 2:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, YOUR, and PREPARATION in full as if fully set forth herein.

As drafted, this Request purports to call for the production of any draft filings submitted to the Ecuadorian courts or submitted to foreign enforcement courts or communications RELATED TO those filings. Patton Boggs' "actual or potential involvement" in advising its clients in the Ecuadorian proceedings is not relevant to the fraud and other claims raised by Chevron in its Amended Complaint. Chevron has already agreed to exclude from production or privilege logging "draft filings." *See* Supplemental Declaration of Alyssa Young, ¶ __. Accordingly, this Request should be withdrawn or stricken. Patton Boggs further objects that this Request is overly broad and unduly burdensome because it requires Patton Boggs to search its entire active litigation file and purports to call for the production of draft filings that are or may have been contemplated but have not been filed with the Ecuadorian courts, which would, at a minimum, be entitled to protection as attorney work product. Chevron did not take reasonable steps to narrowly tailor the Request to the extent that Chevron only seeks to prove that Patton Boggs was "actual[ly] or potential[ly] involve[d]" in the LAGO AGRIO LITIGATION. Patton Boggs further objects to this Request to the extent it calls for documents that are in the possession, custody, or control of—or available or accessible to—any other individuals or entities and whose material is not in Patton Boggs' actual possession, who are subject to subpoena pursuant to Federal Rule of Civil Procedure 45. Insofar as such persons would have responsive documents if the Request was directed to them, but those documents are not in the possession of Patton Boggs, Patton Boggs will not produce them, including documents in Chevron's possession and those from public sources or other third parties that are equally available and/or accessible to Chevron.

## Potential and Non-Exclusive Privilege Categories

For the reasons expressed, *supra*, Patton Boggs objects that this Request purports to seek those documents that are quintessential protected material directly from the litigation file of

active counsel in the ongoing CHEVRON LITIGATIONS.  Thus, Patton Boggs further objects

that the Request calls for the production of documents protected from disclosure by the work

product doctrine, although depending on the circumstances, it is possible that other protections

would apply, including the attorney-client privilege, common-interest protections, immunities, or

other limitation on discovery pursuant to the constitutions, laws, or judicial orders of tribunals of

the United States and/or the Republic of Ecuador, and for which the right of waiver may not be

held by Patton Boggs, but by another, legally-distinct entity, individual or combination or

grouping thereof.

Notwithstanding the foregoing objections, based on a preliminary review of Patton

Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of

documents that may be in its possession, as drafted, Patton Boggs submits that this Request may

call for the production of the following categories of material that is or may be protected from

disclosure:

- draft filings of documents submitted or contemplated to be submitted to the Ecuadorian courts;

- research memoranda and other documents related to potential filings;

- communications reflecting attorney impressions regarding filing of Alegato and accompanying exhibits;

- communications from the clients or client representatives regarding the content of potential filings or the development of strategy in connection with same; and

- communications internal (i.e., among and between Patton Boggs attorneys) and external to Patton Boggs (i.e., among and between Patton Boggs and co-counsel, translators, and other client agents) regarding draft filings or other legal strategy in connection with the LAGO AGRIO LITIGATION.

These documents may be protected from disclosure under the attorney-client privilege,

work product doctrine, common-interest protections, and/or other legal protections.  To further

assist the Court, exemplars certain, specific documents that may be responsive to this Request, as

drafted, and without limitation, are set forth immediately below.

| Jan. 12, 2011 | Eric R. Daleo, Esq. (Patton Boggs) | Ab. Juan Pablo Sáenz; Edward M. Yennock, Esq. (Patton Boggs) | Email with attachments | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation, in connection with Ecuadorian Aguinda action and attaching draft filing regarding same. | Work Product |
|---|---|---|---|---|---|
| Oct. 5, 2011 | Erica R. Stein, Esq. (Patton Boggs) | Edward M. Yennock, Esq. (Patton Boggs) | Email with attachment | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation, reflecting discussions concerning legal strategy in connection with Borja § 1782 action and attaching draft filing regarding same. | Work Product |

**DOCUMENT REQUEST NUMBER 3:**

All DOCUMENTS RELATED TO YOUR travel to Ecuador RELATED TO CHEVRON

or the CHEVRON LITIGATIONS, including but not limited to passports, itineraries, credit card

bills, receipts, invoices, expense reports, notes, sketches, diaries, calendars, trip logs,

photographs, and video recordings.

**OBJECTION TO DOCUMENT REQUEST NUMBER 3:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's

definitions for the terms DOCUMENTS, RELATED TO, YOUR, CHEVRON, and CHEVRON

LITIGATIONS in full as if fully set forth herein.  Patton Boggs objects to this Request as over-

broad, unduly burdensome, and unreasonable.  Travel by Patton Boggs professionals is not relevant to Chevron's claims alleged in its Amended Complaint.  Even if Chevron had any relevant interest in any specific Patton Boggs' professionals' travel to Ecuador, Chevron should and could have, but did not, take reasonable steps to narrowly tailor this Request.  In addition, Patton Boggs is not in possession of many of the materials sought, including, for example, the passports of its professionals and personal photographs its professionals may or may not have taken.  Taken on its face, the magnitude of documents sought in the Request, if read literally, and the burden and expense imposed by the collection, review, and production efforts will be unduly burdensome and thus conflicts with Fed. R. Civ. P. 45(c)(1).  Patton Boggs also objects to this Request to the extent it is propounded for the improper, vexatious purpose of harassing or intimidating Patton Boggs or its professionals and the burden and impropriety of this Request far outweighs any conceivable benefit that Chevron would gain in prosecuting the claims set forth in its Amended Complaint.

## Potential and Non-Exclusive Privilege Categories

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, or both, or are confidential, or are subject to common-interest protections.  The Request appears target largely two kinds of documents: (1) documents that would reveal the purpose of Patton Boggs professionals' travels to Ecuador, including revealing the identities of consultants and other individuals Patton Boggs professionals may have interacted with, and the purpose or strategy involved in such interactions, and (2) documents that would reveal litigation strategy insofar as documents created in the course of travel to Ecuador include "notes" reflecting discussions among counsel and other agents regarding the trial in Ecuador or currently-pending appeal.

Notwithstanding the foregoing objections, based on a preliminary review of Patton Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of documents that may be in its possession, as drafted, Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- notes created during the course of travel in Ecuador, or elsewhere, containing legal strategy in connection with the LAGO AGRIO LITIGATION;

- draft briefs, motions, research memoranda, and other documents that Patton Boggs professionals may have created during the course of or in anticipation of travel to Ecuador; and

- "invoices, expense reports…diaries, calendars, trip logs" to the extent they reflect litigation strategy, confidential material, or factual investigation.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, common-interest protections, and/or other legal protections.  To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| Jan. 6, 2011 | Ab. Juan Pablo Saenz | Edward M. Yennock, Esq. (Patton Boggs); Eric S. Westenberger, Esq. (Patton Boggs) | Email with attachments | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with Ecuadorian Aguinda action and attaching report and spreadsheet regarding same. |
| --- | --- | --- | --- | --- |
| Jan. 4, 2011 | Aaron Marr Page, Esq. (Forum Nobis) | Eric S. Westenberger, Esq. (Patton Boggs); Eric R. Daleo, Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with Ecuadorian Aguinda action. |
| Jan. 6, 2011 | Eric S. Westenberger, Esq. (Patton Boggs) | Jason W. Rockwell, Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with Ecuadorian Aguinda action. |

| May 18, 2011 | Eric S. Westenberger, Esq. (Patton Boggs) | Jonathan S. Abady, Esq. (Emery Celli); James E. Tyrrell, Jr. Esq. (Patton Boggs); Steven R. Donziger, Esq. (Donziger & Associates); Ilann M. Maazel, Esq. (Emery Celli); Andrew Wilson, Esq. (Emery Celli); Andrew G. Celli, Jr., Esq. (Emery Celli); Ingrid L. Moll , Esq. (Motley Rice); Edward M. Yennock, Esq. (Patton Boggs); Eric R. Daleo, Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation reflecting thoughts, impressions, and legal strategy in connection with Ecuadorian Aguinda litigation. |

## DOCUMENT REQUEST NUMBER 4:

All DOCUMENTS RELATED TO YOUR travel to Argentina, Brazil, Canada, Columbia, Panama, or Venezuela RELATED TO CHEVRON or the CHEVRON LITIGATIONS, including but not limited to passports, itineraries, credit card bills, receipts, invoices, expenses reports, notes, sketches, diaries, calendars, trip logs, photographs, and video recordings.

## OBJECTION TO DOCUMENT REQUEST NUMBER 4:

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, YOUR, CHEVRON, and CHEVRON LITIGATIONS, in full as if fully set forth herein.

This Request facially purports to require Patton Boggs to disclose its travels to a series of countries for the purpose of conducting a "fishing" expedition through Patton Boggs' files for information on pending or future enforcement proceedings.   Travel by Patton Boggs professionals to countries around the world, particularly to countries other than Ecuador, is not relevant to Chevron's claims alleged in its Amended Complaint.  Chevron seeks to gain a tactical litigation advantage outside the four corners of this proceeding, without justification, through its

attempts to divine through Patton Boggs' travel those countries in which its clients may or may not contemplate future enforcement proceedings.  In addition, Patton Boggs is not in possession of many of the materials sought, including, for example, the passports of its professionals and personal photographs its professionals may or may not have taken.

Taken on its face, the magnitude of documents sought in the Request, if read literally, and the burden and expense imposed by the collection, review, and production efforts will be unduly burdensome and thus conflicts with Fed. R. Civ. P. 45(c)(1). It would increase the burden because Patton Boggs would necessarily need to use broad search terms to collect documents potentially responsive to this Request, including the names of the six countries identified in the Request.  Patton Boggs further objects to this Request to the extent it is propounded for the improper, vexatious purpose of harassing or intimidating Patton Boggs or its professionals and the burden and impropriety of this Request outweighs any conceivable benefit that Chevron would gain in prosecuting the claims set forth in its Amended Complaint.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, or both, or are confidential or subject to common-interest protections.  Providing a response listing categories of protected documents that Patton Boggs may have responsive to this Request would itself reveal litigation strategy regarding enforcement jurisdictions.

Notwithstanding the foregoing objections, to the extent Patton Boggs may be in possession of such documents, as drafted, Patton Boggs submits that this Request may call for the production of the following  categories of material that is or may be protected from disclosure:

- notes created during the course of travel in Argentina, Brazil, Canada, Columbia, Panama, or Venezuela containing legal strategy in connection with the LAGO AGRIO LITIGATION;

- draft briefs, motions, research memoranda, and other documents that Patton Boggs professionals may have created during the course of or in anticipation of travel; and

- "invoices, expense reports…diaries, calendars, trip logs" to the extent they reflect litigation strategy, confidential material, or factual investigation.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, common-interest protections, and/or other legal protections. Patton Boggs will not, at this time, reveal specific examples of documents responsive to this Request given Patton Boggs' objection that any documents, or even privilege log entries, have the potential to reveal pending or contemplated litigation strategy.

**DOCUMENT REQUEST NUMBER 5:**

All DOCUMENTS RELATED TO any travel by any of the LAGO AGRIO PLAINTIFFS, of any of the non-U.S. resident RICO DEFENDANTS or any of the non-U.S. resident CO-CONSPIRATORS to the United States RELATED TO CHEVRON or the CHEVRON LITIGATIONS, including but not limited to passports, itineraries, credit card bills, receipts, invoices, expense reports, notes, sketches, diaries, calendars, trip logs, photographs, and video recordings.

**OBJECTION TO DOCUMENT REQUEST NUMBER 5:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, CO-CONSPIRATORS, CHEVRON, CHEVRON LITIGATIONS, and RICO DEFENDANTS in full as if fully set forth herein.

As drafted, this Request purports to require Patton Boggs to collect, process, filter, identify, review, and log or produce "[a]ll DOCUMENTS" that in any way reflect the travels of

"non-U.S. resident[s]" to the United States.  The Request is not limited in any way to particular individuals and purports to include, through its definition of "RICO DEFENDANTS" and "CO-CONSPIRATORS," the travel of any and all employees of foreign corporations (e.g., Selva Viva), and non-governmental organizations (e.g., Amazon Watch).  Patton Boggs is not in a position, nor should it be required to be in a position, to determine the legal immigration status of individuals or the staff of foreign corporations or entities.

Patton Boggs also objects that, as drafted, this single Request is actually comprised of 3 requests and is thus unreasonably compound.  In total, factoring in Chevron's over-broad definitions of LAGO AGRIO PLAINTIFFS, CO-CONSPIRATORS, and RICO DEFENDANTS, the Request seeks to identify documents "RELATED TO any travel" for at least 55 entities and individuals.  The Request should be withdrawn or stricken for this reason alone.  Patton Boggs also submits that as a non-party law firm, and active litigation counsel, there are parties better situated to produce the information Chevron here seeks.  Indeed, Chevron has already served 67 subpoenas on other non-parties (*see generally* Marino Decl., Dkts. 529-0 – 529-15), including some of the very non-parties for which Chevron now purports to require Patton Boggs to produce travel documents.

This Request is overly broad and unduly burdensome because it calls for documents that exceed the scope of the documents required to be produced by the Federal Rules of Civil Procedure and other applicable authority, by purporting to call for the production of an unlimited range of documents spanning from "credit card bills" to "sketches."  Chevron did not take reasonable steps to narrowly tailor the Request.  Taken on its face, the magnitude of documents sought in the Request, if read literally, and the burden and expense imposed by the collection, review, and production efforts will be extraordinary and thus conflicts with Fed. R. Civ. P.

45(c)(1).  Patton Boggs also objects to this Request to the extent it is propounded for the improper, vexatious purpose of harassing or intimidating Patton Boggs.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, or both, or are confidential, or are subject to common-interest protections.  Notwithstanding the foregoing objections, based on a preliminary review of Patton Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of documents that may be in its possession, as drafted, Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- draft pleadings, including defendants Hugo Gerardo Camacho Naranjo's and Javier Piaguaje Payaguaje's Answer and Amended Answer denying personal jurisdiction in the Southern District of New York;

- research memoranda, communications, and other documents created in anticipation of the filing of defendants Hugo Gerardo Camacho Naranjo's and Javier Piaguaje Payaguaje's Motion to Dismiss the claims against them in Chevron's Complaint and Amended Complaint for lack of personal jurisdiction;

- communications including notes and other documents reflecting proposed strategy in connection with defendants Hugo Gerardo Camacho Naranjo's and Javier Piaguaje Payaguaje's Merits Appeal to the U.S. Court of Appeals for the Second Circuit in connection with this Court's Preliminary Injunction;

- factual investigations conducted by Patton Boggs professionals in connection with contemplated or possible filings that implicate personal jurisdiction arguments; and

- "invoices, expense reports…diaries, calendars, trip logs" to the extent they reflect litigation strategy or confidential material.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, common-interest protections, and/or other legal protections.  To further

assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| March 28, 2011 | Patrick Gilmartin, Esq. (Patton Boggs); Andrew Kirshenbaum, Esq. (Patton Boggs) | File | Memorandum | Draft memorandum, prepared in anticipation of litigation, reflecting thoughts, impressions, and legal theories, in connection with U.S Appellate proceeding in the 2nd Circuit. | Work Product |
|---|---|---|---|---|---|
| May 3, 2011 | Patrick Conti, Esq. (Patton Boggs) | File | Filing | Draft filing, prepared in anticipation of litigation, reflecting discussion of legal advice with clients, in connection with U.S. Appellate proceeding in the 2nd Circuit. . | Attorney Client Privilege; Work Product |

## DOCUMENT REQUEST NUMBER 6:

ALL DOCUMENTS RELATED TO any travel by any of the LAGO AGRIO PLAINTIFFS, any of the RICO DEFENDANTS, or any of the other CO-CONSPIRATORS to Argentina, Brazil, Canada, Columbia, Panama or Venezuela RELATED TO CHEVRON or the CHEVRON LITIGATIONS, including but not limited to passports, itineraries, credit card bills, receipts, invoices, expense reports, notes, sketches, diaries, calendars, trip logs, photographs, and video recordings.

## OBJECTION TO DOCUMENT REQUEST NUMBER 6:

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, LAGO AGRIO PLAINTIFFS, RICO DEFENDANTS, CO-CONSPIRATORS, CHEVRON, and CHEVRON LITIGATIONS in full as if fully set forth herein.

As drafted, this Request purports to require Patton Boggs to collect, process, filter, identify, review, and log or produce "[a]ll DOCUMENTS" that in any way reflect the travels of LAGO AGRIO PLAINTIFFS, RICO DEFENDANTS, and/or CO-CONSPIRATORS, to Argentina, Brazil, Canada, Columbia, Panama or Venezuela. The Request is not limited in any way to particular individuals and purports to include, through its definition of "RICO DEFENDANTS" and "CO-CONSPIRATORS," the travel of any employee of foreign corporations (e.g., Selva Viva), and non-governmental organizations (e.g., Amazon Watch) to any of six foreign countries. Patton Boggs is not in a position, nor should it be required, to determine the travels of non-Patton Boggs personnel to a series of foreign countries.

This Request facially purports to require Patton Boggs to disclose travels of the LAGO AGRIO PLAINTIFFS or their agents to a series of countries, and without limitation, for the purpose of "fishing" through Patton Boggs' files for information on pending or future enforcement proceedings. As a general matter, travel by the LAGO AGRIO PLAINTIFFS and their agents to countries around the world, particularly to countries other than Ecuador, is not relevant to Chevron's fraud and other claims set forth in its Amended Complaint. Chevron seeks to gain a tactical litigation advantage outside the four corners of this proceeding, without justification, through its attempts to divine through Patton Boggs' travel those countries in which its clients may or may not contemplate future enforcement proceedings. In addition, Patton Boggs simply is not in possession of many of the materials sought, including, for example, the passports of its professionals and personal photographs its professionals may or may not have taken.

Patton Boggs also objects that, as drafted, this single Request is actually comprised of 474 requests and is thus unreasonably compound. In total, factoring in Chevron's over-broad

definitions of LAGO AGRIO PLAINTIFFS, CO-CONSPIRATORS, and RICO DEFENDANTS, the Request seeks to identify documents "RELATED TO any travel" to six countries for 79 entities and individuals.  The Request should be withdrawn or stricken for this reason alone. Patton Boggs also submits that as a non-party law firm, and active litigation counsel, there are parties better situated to produce the information Chevron here seeks.  For example, Chevron has already served 67 subpoenas on other non-parties (*see generally* Marino Decl., Dkts. 529-0 – 529-15), including some of the very non-parties for which Chevron now purports to require Patton Boggs to produce travel documents.

This Request is overly broad and unduly burdensome because it calls for documents that exceed the scope of the documents required to be produced by the Federal Rules of Civil Procedure and other applicable authority, by purporting to call for the production of an unlimited range of documents spanning from "credit card bills" to "sketches."  Chevron did not take reasonable steps to narrowly tailor the Request.  Taken on its face, the magnitude of documents sought in the Request, if read literally, and the burden and expense imposed by the collection, review, and production efforts will be extraordinary and thus conflicts with Fed. R. Civ. P. 45(c)(1).  Further, documents concerning the travel of any of the LAGO AGRIO PLAINTIFFS, CO-CONSPIRATORS, and RICO DEFENDANTS, has no bearing on the fraud and other claims alleged by Chevron in its Amended Complaint.  Patton Boggs further objects to this Request to the extent it is propounded for the improper, vexatious purpose of harassing or intimidating Patton Boggs.

## Potential and Non-Exclusive Privilege Categories

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, or both, or are confidential or subject to common-interest protections.  Providing a response listing categories of

protected documents that Patton Boggs may have responsive to this Request would itself reveal litigation strategy regarding enforcement jurisdictions.

Notwithstanding the foregoing objections, to the extent Patton Boggs may be in possession of such documents, as drafted, Patton Boggs submits that this Request may call for the production of the following  categories of material that is or may be protected from disclosure:

- notes created during the course of travel in Argentina, Brazil, Canada, Columbia, Panama, or Venezuela containing legal strategy in connection with the LAGO AGRIO LITIGATION;

- draft briefs, motions, research memoranda, and other documents that may have been created during the course or in anticipation of travel; and

- "invoices, expense reports…diaries, calendars, trip logs" to the extent they reflect litigation strategy or confidential material.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, and/or other legal protections.  Patton Boggs will not, at this time, reveal specific examples of documents responsive to this Request given Patton Boggs' objection that any documents, or even privilege log entries, have the potential to reveal pending or contemplated litigation strategy.

**DOCUMENT REQUEST NUMBER 7:**

ALL DOCUMENTS RELATED TO any travel by any of the LAGO AGRIO PLAINTIFFS, any of the RICO DEFENDANTS or any of the other CO-CONSPIRATORS to Argentina, Brazil, Canada, Columbia, Panama or Venezuela RELATED TO CHEVRON or the CHEVRON LITIGATIONS, including but not limited to passports, itineraries, credit card bills, receipts, invoices, expense reports, notes, sketched, diaries, calendars, trip logs, photographs, and video recordings.

**OBJECTION TO DOCUMENT REQUEST NUMBER 7:**

Chevron has withdrawn this Request.  *See* A. Young Supp. Decl., Dkt. 557, at ¶ 22.

## DOCUMENT REQUEST NUMBER 8:

ALL DOCUMENTS RELATED TO any power of attorney granted by any LAGO AGRIO PLAINTIFF to anyone, including but not limited to YOU, Pablo Fajardo Mendoza, Luis Yanza, Julio Prieto Mendéz, Juan Pablo Sáenz, or Ermel Chávez, related to the LAGO AGRIO LITIGATION.

## OBJECTION TO DOCUMENT REQUEST NUMBER 8:

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, YOU, and LAGO AGRIO LITIGATION in full as if fully set forth herein. Patton Boggs objects to the extent that the Request seeks the production of documents that are not relevant to the claims and defenses at issue in the RICO Action and/or not reasonably calculated to lead to the discovery of admissible evidence.

To the extent Chevron seeks any power of attorneys granted "to anyone" and "not limited to" Paton Boggs, Patton Boggs objects to this Request as unduly burdensome and unreasonable to the extent it calls for the production of documents from persons other than Patton Boggs where such persons are susceptible to Rule 45 subpoenas.

Any power of attorney or other documents regarding the scope of Patton Boggs' or any other agent's authority vis-à-vis its clients has no bearing on the fraud and other claims alleged by Chevron in its Amended Complaint. Any power of attorney or other documents regarding the scope of Patton Boggs' or any other agent's authority vis-à-vis its clients, to the extent those documents evince or contain legal strategy or other protected information, are subject to protection from disclosure. Patton Boggs objects to this Request to the extent it is propounded for the improper, vexatious purpose of harassing or intimidating Patton Boggs. Additionally, the

Request, as drafted, purports to require Patton Boggs to seek "any power of attorney" that was ever granted by any of the LAGO AGRIO PLAINTIFFS to any person.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, or both, or are confidential, or are subject to common-interest protections.   Notwithstanding the foregoing objections, based on a preliminary review of Patton Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of documents that may be in its possession, as drafted, Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- power of attorney (and drafts of same) to the extent they reflect litigation strategy;

- drafts of the Power of Attorney filed in connection with the 28 U.S.C. § 1782 proceeding against Steven Donziger wherein Chevron alleged that Patton Boggs lacked authority to represent its clients or communications regarding that draft;

- draft filings filed in other proceedings in which Chevron asserts the same arguments; communications or directives from Patton Boggs' clients or clients' representatives regarding Patton Boggs' authority to act on behalf of its clients; and

- notes and other internal documents memorializing direct communications with defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, common-interest protections, and/or other legal protections.   To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| Jan. 23, 2011 | Justin S. Strochlic, Esq. (Patton Boggs) | Eric S. Westenberger, Esq. (Patton Boggs), Adlai J. J. Small, Esq. (Patton Boggs); Eric R. Daleo, Esq. | Email with attachment | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of | Work Product |

| | | (Patton Boggs) | | litigation reflecting case strategy in connection with Donziger § 1782 and attaching draft letter regarding same. | |
|---|---|---|---|---|---|
| Jan. 11, 2011 | Adlai J. J. Small, Esq. (Patton Boggs) | Eric S. Westenberger, Esq. (Patton Boggs); Jason W. Rockwell, Esq. (Patton Boggs); Just S. Strochlic, Esq. (Patton Boggs) | Email with attachment | Electronic correspondence, between and among Ecuadorian Plaintiff's counsel prepared in anticipation of litigation reflecting case strategy in connection with Donziger § 1782 and attaching draft filing regarding same. | Work Product |

**DOCUMENT REQUEST NUMBER 9:**

All DOCUMENTS RELATED TO the funding of the LAGO AGRIO LITIGATION or the CRIMINAL CASES.

**OBJECTION TO DOCUMENT REQUEST NUMBER 9:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms CRIMINAL CASES, DOCUMENTS, RELATED TO, LAGO AGRIO LITIGATION in full as if fully set forth herein. As noted in the Objection to the definition of "CRIMINAL CASES," Chevron purports to define the term as "actual or potential criminal accusations . . . RELATING TO the LAGO AGRIO LITIGATION." On its face and without limitation, this would purport to include documents in Patton Boggs' possession relating to "actual or potential criminal accusations" that are unknown to Patton Boggs.

Separately, Chevron has failed in any way to define or limit the term "funding" and, as drafted, the term is vague and can encompass a range of activities that are not specified. For example, this term can be construed so broadly so as to encompass any payment of any sum of

money having anything to do with the CHEVRON LITIGATIONS, and Chevron's payment to the Afectados of its Bill of Costs ordered to be paid by the Second Circuit in connection with the appeal of this Court's issuance of the Preliminary Injunction.

In any event, Patton Boggs objects that this Request is overly broad and unduly burdensome. The terms of the Afectados' or Patton Boggs' "funding" or other documents that discuss "funding" do not have any bearing on the allegations set forth in Chevron's Amended Complaint. Similarly, Chevron has objected to the term "payment" used in connection with expert compensation. For example:

| Defendant Stratus *in this very proceeding* requested Chevron produce: | Chevron indicated in its August 13, 2012 objections and responses to this request: |
|---|---|
| "All Documents concerning payments (or possible or potential payments) made (or to be made or possibly made) by you or on your behalf to Chevron Experts or their agents or employers." | "Chevron objects to this Request as overbroad, unduly burdensome and unreasonable because it seeks all Documents regarding 'payments . . . without any limitation as to the purpose of the payment, which would lead to the production of materials that are not relevant to any party's claims or defenses." |

*See Chevron Corp. v. Donziger, et al.*, at p. 34, No. 11-0691 (S.D.N.Y. Aug. 13, 2012). Non-party Patton Boggs respectfully submits that it should not be held to a standard different than the standard Chevron applies to itself.

Further, to the extent that Chevron seeks to discover documents related to the financing of the litigation against it, the disclosure of this information would materially disadvantage Patton Boggs and its clients and potentially give Chevron an unfair litigation advantage insofar as Chevron could use the discovery to (1) gain an understanding of any potential limitations on Patton Boggs' or co-counsel's ability to perform certain work, (2) afford Chevron an opportunity to exploit resources to the extent that Chevron determines funding is limited, (3) Chevron can attempt – through direct contact, public filings, publicity, or other means – to purposefully or

57

indirectly interfere with or disrupt ongoing or potential funding opportunities to the extent Chevron obtains information regarding potential funding sources previously unknown to Chevron, and (4) potentially place Chevron in a better position in connection with settlement strategy and global resolution of the CHEVRON LITIGATIONS.

Patton Boggs should not be forced to collect, process, filter, review, and privilege log all such documents. Patton Boggs further objects Chevron did not take reasonable steps to narrowly tailor the Request. Taken on its face, the magnitude of documents sought in the Request, if read literally, and the burden and expense imposed by the collection, review, and production efforts will be extraordinary and thus conflicts with Fed. R. Civ. P. 45(c)(1). Patton Boggs further objects to this Request to the extent it is propounded for the improper, vexatious purpose of harassing or intimidating Patton Boggs.

Insofar as Chevron purports to seek documents relating to Rodrigo Perez Pallares and Ricardo Veiga, Patton Boggs objects to the collection, processing, filtering, reviewing, and privilege logging of such documents post-dating August 9, 2011, the date on which the dismissal of the criminal charges against Pallares and Veiga, that had been pending in Ecuador, was affirmed on appeal. Patton Boggs further objects to the collection, processing, filtering, reviewing, and privilege logging of documents relating to the Lago Agrio Litigation, otherwise responsive to this Request that post-date January 13, 2012, the date on which the appellate panel for the Provincial Court of Justice Sucumbios issued its clarification order.

## Potential and Non-Exclusive Privilege Categories

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, or both, are confidential, or are subject to common-interest protections. Relatedly, Patton Boggs objects to this Request to the extent it purports to seek information and documents that may be the subject

of a non-disclosure or confidentiality agreement with a third party, which documents or information by the terms of the agreement may not be disclosed by Patton Boggs.

Notwithstanding the foregoing objections, based on a preliminary review of Patton Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of documents that may be in its possession, as drafted, Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- communications with LAGO AGRIO PLAINTIFFS' transactional attorneys, to provide information to assist those transactional attorneys in evaluating potential financing agreements;

- internal communications or memoranda summarizing funding agreements in anticipation of litigation;

- documents, including memoranda, outlining proposed scope of work in form of budget; and

- invoices, agreements, and other documents, to the extent they reflect litigation strategy or confidential material.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, and/or other legal protections. To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| July 7, 2010 | Edward M. Yennock, Esq. (Patton Boggs) | Jason W. Rockwell, Esq. (Patton Boggs); Eric S. Westenberger, Esq. (Patton Boggs); Eric R. Daleo, Esq. (Patton Boggs) | Email with Attachments | Electronic correspondence, between and among Ecuadorian Plaintiffs counsel, prepared in anticipation of litigation, in connection with Ecuadorian Aguinda action, defensive discovery proceedings, and judgment enforcement, and | Work Product |

| | | | | attaching invoice and memorandum regarding same. | |
|---|---|---|---|---|---|

## DOCUMENT REQUEST NUMBER 10:

All DOCUMENTS RELATED TO any PERSON, who financially supported or invested in, was asked to financially support or invest in, or who offered to financially support or invest in the LAGO AGRIO LITIGATION or the CRIMINAL CASES, including but not limited to BURFORD; Christopher Bogart; Selvyn Seidel; Russel DeLeon; Orin Kramer; Torvia Limited; H5; Elliott Management; Nugent Investments Limited; Calunius; Credit Suisse; IMF Australia; Juridica; Ironshore; Integro Group; Ambridge Partners; AON; KOHN SWIFT & GRAF; Joseph Kohn; Oil Watch; AMAZON WATCH; RAINFOREST ACTION NETWORK; New Orleans Group; Satee GMBH; 88 Capital LLC; Jonaks Limited; Equitable Outcomes; David Sherman; Glen Krevlin; Michael Donziger; Russel O. Wiese; Calumia Capital; Douglas Ellenoff; Eric Saltzman; and John Weintraub.

## OBJECTION TO DOCUMENT REQUEST NUMBER 10:

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms LAGO AGRIO LITIGATION, CRIMINAL CASES, KOHN SWIFT & GRAF, AMAZON WATCH, RAINFOREST ACTION NETWORK, DOCUMENTS and RELATED TO in full as if fully set forth herein.  As noted in the Objection to the definition of "CRIMINAL CASES," Chevron purports to define the term as "actual or potential criminal accusations . . . RELATING TO the LAGO AGRIO LITIGATION."  On its face and without limitation, this would purport to include documents in Patton Boggs' possession relating to "actual or potential criminal accusations" that are unknown to Patton Boggs.  Additionally, as drafted, the Request would purports to include documents in Patton Boggs' possession relating to

"any PERSON" who "was asked to financially support or invest in, or who offered to financially support or invest in the LAGO AGRIO LITIGATION or the CRIMINAL CASES." Patton Boggs does not know the identity, nor can it be expected to contemplate or determine the identity, of any and all persons who at some point may have either been asked to financially support or inquired as to providing financial support for same.

Separately, Chevron has failed in any way to define or limit the terms "financially supported" or "invested" and, as drafted, the term is vague and can encompass a range of activities that are not specified. For example, this term can be construed so broadly so as to encompass any investment or offer of any sum of money or other form of investment having anything to do with the CHEVRON LITIGATIONS on behalf of any "PERSON," which by its definition would include a non-exhaustive list of individuals, law firms, banks, and corporate entities.

In any event, Patton Boggs objects that this Request is overly broad and unduly burdensome. The details of the LAGO AGRIO PLAINTIFFS' or Patton Boggs' "financial[] support[]" or "invest[ments],"or other documents that discuss "financial[] support[]" or "invest[ments]," do not have any bearing on the allegations set forth in Chevron's Amended Complaint. Further, to the extent that Chevron seeks to discover documents related to the financing of the litigation against it, the disclosure of this information would materially disadvantage Patton Boggs and its clients and potentially give Chevron an unfair litigation advantage insofar as Chevron could use the discovery to (1) gain an understanding of any potential limitations on Patton Boggs' or co-counsel's ability to perform certain work, (2) afford Chevron an opportunity to exploit resources to the extent that Chevron determines funding is limited, (3) Chevron can attempt – through direct contact, public filings, publicity, or other

means – to purposefully or indirectly interfere with or disrupt ongoing or potential funding opportunities to the extent Chevron obtains information regarding potential funding sources previously unknown to Chevron, and (4) potentially place Chevron in a better position in connection with settlement strategy and global resolution of the CHEVRON LITIGATIONS.

Patton Boggs should not be forced to collect, process, filter, review, and privilege log all such documents.  Patton Boggs further objects Chevron did not take reasonable steps to narrowly tailor the Request.  Taken on its face, the magnitude of documents sought in the Request, if read literally, and the burden and expense imposed by the collection, review, and production efforts will be extraordinary and thus conflicts with Fed. R. Civ. P. 45(c)(1).  Patton Boggs further objects to this Request to the extent it is propounded for the improper, vexatious purpose of harassing or intimidating Patton Boggs.

## Potential and Non-Exclusive Privilege Categories

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, or both, are confidential, or are subject to common-interest protections.  Notwithstanding the foregoing objections, based on a preliminary review of Patton Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of documents that may be in its possession, as drafted, Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- communications with LAGO AGRIO PLAINTIFFS' transactional attorneys, to provide information to assist those transactional attorneys in evaluating potential funding agreements;

- internal communications or memoranda summarizing existing and/or anticipated funding agreements in anticipation of litigation;

- documents, including memoranda, outlining proposed scope of work in form of budget; and

- invoices, agreements, and other documents, to the extent they reflect litigation strategy or confidential material.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, common-interest privilege, and/or other legal protections.  To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| July 29, 2010 | Eric R. Daleo, Esq. (Patton Boggs) | Eric S. Westenberger, Esq. (Patton Boggs); Edward M. Yennock, Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation reflecting thoughts and impressions in connection with case management. | Work Product |
| July 7, 2010 | Edward M. Yennock, Esq. (Patton Boggs) | Jason W. Rockwell, Esq. (Patton Boggs); Eric S. | Email with Attachments | Electronic correspondence, between and among | Work Product |

| | | | | | |
|---|---|---|---|---|---|
| | | Westenberger, Esq. (Patton Boggs); Eric R. Daleo, Esq. (Patton Boggs) | | Ecuadorian Plaintiffs counsel, prepared in anticipation of litigation, in connection with Ecuadorian Aguinda action, defensive discovery proceedings, and judgment enforcement, and attaching invoice and memorandum regarding same. | |
| July 20, 2010 | Steven Donziger, Esq. (Donziger & Associates) | Jonathan S. Abady, Esq. (Emery Celli); William H. Narwold, Esq. (Motley Rice); James E. Tyrrell, Esq. (Patton Boggs); Eric S. Westenberger, Esq. (Patton Boggs); Nicolas Economou (H5); Julia Brickell (H5) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel and consultants, prepared in anticipation of litigation regarding case management. | Work Product |
| July 29, 2010 | Eric S. Westenberger, Esq. (Patton Boggs) | James E. Tyrrell, Esq. (Patton Boggs, LLP) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation concerning case management. | Work Product |

**DOCUMENT REQUEST NUMBER 11:**

All DOCUMENTS RELATED TO Andres Snaider.

**OBJECTION TO DOCUMENT REQUEST NUMBER 11:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS and RELATED TO in full as if fully set forth herein.

Patton Boggs objects that this Request is overly broad and unduly burdensome because it purports to seek, without limitation, anything that might relate in any way to "Andres Snaider."

To the extent Chevron seeks any documents that in any way relate to Andres Snaider, non-party Patton Boggs objects to this Request as unduly burdensome and unreasonable to the extent it calls for the production of documents related to a single person – Andres Snaider – where that person is susceptible to a Rule 45 subpoena.

Chevron did not take reasonable steps to narrowly tailor the Request.  This Request facially purports to require Patton Boggs to disclose any and all information relating in any way to Andres Snaider, without limitation, and for the purpose of "fishing" through Patton Boggs' files for information on pending or future enforcement proceedings, as Chevron apparently believes that Andres Snaider and his firm Nextant, is involved in crafting in crafting enforcement strategy.  As a general matter, information regarding pending or future enforcement proceedings is not relevant to Chevron's fraud and other claims set forth in its Amended Complaint.  Chevron seeks to gain a tactical litigation advantage outside the four corners of this proceeding, without justification, through its attempts to divine through over-broad requests for documents any information relating to pending or potential enforcement proceedings.  In addition, Patton Boggs simply is not in possession of many of the materials sought.

Patton Boggs also objects to this Request on the ground that it purports to require Patton Boggs to produce documents "RELATED TO Andres Snaider" in his roles as an attorney and client agent, active in this litigation, who also serves as a consultant in his position as Owner of the consulting company NEXTANT.  Patton Boggs objects that Chevron again seeks documents concerning or prepared by active litigation counsel comprising a portion of the litigation file in this ongoing litigation.

Additionally, Patton Boggs objects to this Request to the extent it calls for documents that are in the possession, custody, or control of—or available or accessible to—any other

individuals or entities other than Patton Boggs and whose material is not accessible to Patton

Boggs.  Insofar as such persons would have responsive documents if the discovery were directed

to them, but those documents are not known to or in the possession, custody, or control of Patton

Boggs, Patton Boggs will not produce them, including documents in Chevron's possession and

those from public sources or other third parties that are equally available and/or accessible to

Chevron.  Patton Boggs further objects to this Request inasmuch as the Request calls for the

production of documents and information protected from disclosure by the attorney-client

privilege, work product doctrine, or both, are confidential, or subject to common-interest

protection, and for which the right of waiver may not be held by Patton Boggs but by another,

legally-distinct entity, individual or combination or grouping thereof.  Relatedly, Patton Boggs

objects to this Request to the extent it purports to seek information and documents that may be

the subject of a non-disclosure or confidentiality agreement with a third party, which documents

or information by the terms of the agreement may not be disclosed by Patton Boggs.

Additionally, Patton Boggs further objects to this Request to the extent it is propounded for the

improper, vexatious purpose of harassing or intimidating Patton Boggs.

## Potential and Non-Exclusive Privilege Categories

Patton Boggs objects to this Request to the extent it calls for the production of documents

protected from disclosure by the attorney-client privilege, work product doctrine, or both, are

confidential, or subject to common-interest protections.  This Request appears to be targeted at

documents that would reveal litigation strategy insofar as documents relating to Andres Snaider

include any "notes" reflecting discussions among counsel and other agents regarding the LAGO

AGRIO JUDGMENT and related collateral proceedings.

Notwithstanding the foregoing objections, based on a preliminary review of Patton

Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of

documents that may be in its possession, as drafted, Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- communications between and among counsel concerning litigation strategy;

- communications between and among counsel and counsel's agents concerning future travel and containing litigation strategy; and

- memoranda, and other documents, that Patton Boggs professionals may have created in anticipation of litigation.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, common-interest privilege, and/or other legal protections.  To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below:

| April 24, 2012 | Eric R. Daleo, Esq. (Patton Boggs) | Andres Snaider (Nextant) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel prepared in anticipation of litigation, in connection with Ecuadorian Aguinda litigation. | Work Product |
|---|---|---|---|---|---|
| March 1, 2012 | Eric R. Daleo, Esq. (Patton Boggs) | Jan Little, Esq. (Keker Van Nest); Craig Smyser, Esq. (Smyser Kaplan); Larry Veselka, Esq. (Smyser Kaplan); Jarod Stewart, Esq. (Smyser Kaplan); Julio C. Gomez, Esq. (Gomez LLC); John Keker, Esq. (Keker Van Nest); Matthew Wedegar, Esq. (Keker van Nest); Andres Snaider (Nextant); James E. Tyrrell, Jr. (Patton | Email with attachment | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel and co-counsel, prepared in anticipation of litigation, in connection with defensive discovery proceedings, Ecuadorian Aguinda action, judgment enforcement, Ecuadorian Plaintiffs' interest in monitoring outcome of Bilateral | Common Interest; Work Product |

| | | Boggs); Eric S. Westenberger, Esq. (Patton Boggs); Jason W. Rockwell, Esq. (Patton Boggs); Justin S. Strochlic, Esq. (Patton Boggs); Edward M. Yennock, Esq. (Patton Boggs) | | Investment Treaty ("BIT") proceedings, *Chevron Corp. v. Donziger et al., No. 1:11-cv-0691-LAK* ("RICO"), and *Chevron Corp. v. Salazar et al., No. 1:11-cv-3718-LAK* ("*Salazar*") and attaching memorandum regarding same. | |
|---|---|---|---|---|---|
| April 13, 2012 | Eric R. Daleo, Esq. (Patton Boggs) | Garland Murphy, Esq. (Smyser Kaplan); Craig Smyser, Esq. (Smyser Kaplan); LarryVeselka, Esq. (Smyser Kaplan); Eric S. Westenberger, Esq. (Patton Boggs); Edward M. Yennock, Esq. (Patton Bogs); Andres Snaider (Nextant) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel and co-counsel, prepared in anticipation of litigation, reflecting thoughts, impressions, and legal theories in connection with Banco Pichincha § 1782 action. | Common Interest; Work Product |

## DOCUMENT REQUEST NUMBER 12:

All DOCUMENTS RELATED TO NEXTANT.

## OBJECTION TO DOCUMENT REQUEST NUMBER 12:

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, and NEXTANT in full as if fully set forth herein.

Patton Boggs objects that this Request is overly broad and unduly burdensome because it purports to seek, without limitation, anything that might relate in any way to "NEXTANT." To the extent Chevron seeks any documents that in any way relate to the entity Nextant, non-party Patton Boggs objects to this Request as unduly burdensome and unreasonable to the extent it

calls for the production of documents related to a single entity – Nextant – without limitation and where that entity is susceptible to a Rule 45 subpoena.  Patton Boggs cannot ascertain from the exceedingly vague Request the types of documents contemplated by or potentially responsive to the Request.

Patton Boggs also objects to this Request on the ground that it purports to require Patton Boggs to produce documents "RELATED TO NEXTANT," a consulting company retained by the Afectados, which employs and is owned by attorneys, to provide advice and consultation on litigation strategy.  Patton Boggs further objects to the extent Chevron purports to seek through this Request documents and/or communications reflecting attorney advice and litigation strategy concerning or prepared by active litigation counsel, which comprise a portion of the litigation file in this ongoing litigation.

Chevron did not take reasonable steps to narrowly tailor the Request.  This Request facially purports to require Patton Boggs to disclose any and all information relating in any way to "NEXTANT," without limitation, and for the purpose of "fishing" through Patton Boggs' files for information on pending or future enforcement proceedings.  As a general matter, information regarding pending or future enforcement proceedings is not relevant to Chevron's fraud and other claims set forth in its Amended Complaint.  Chevron seeks to gain a tactical litigation advantage outside the four corners of this proceeding, without justification, through its attempts to divine through over-broad requests for documents any information relating to pending or potential enforcement proceedings.

Additionally, and for the same concerns germane to Request Number 11, *supra*, Patton Boggs objects to this Request to the extent it calls for documents that are in the possession, custody, or control of—or available or accessible to—any other individuals or entities other than

Patton Boggs and whose material is not accessible to Patton Boggs.  Insofar as such persons would have responsive documents if the discovery were directed to them, but those documents are not known to or in the possession, custody, or control of Patton Boggs, Patton Boggs will not produce them, including documents in Chevron's possession and those from public sources or other third parties that are equally available and/or accessible to Chevron.  To the extent Chevron seeks any documents that in any way relate to "NEXTANT," Patton Boggs objects to this Request as unduly burdensome and unreasonable to the extent it calls for the production of documents from persons other than Patton Boggs where such persons are susceptible to Rule 45 subpoenas.  Patton Boggs further objects to this Request inasmuch as the Request calls for the production of documents and information protected from disclosure by the attorney-client privilege, work product doctrine, or both, common-interest protections, are confidential, and for which the right of waiver may not be held by Patton Boggs but by another, legally-distinct entity, individual or combination or grouping thereof.  Relatedly, Patton Boggs objects to this Request to the extent it purports to seek information and documents that may be the subject of a non-disclosure or confidentiality agreement with a third party, which documents or information by the terms of the agreement may not be disclosed by Patton Boggs.  Patton Boggs further objects to this Request to the extent it is propounded for the improper, vexatious purpose of harassing or intimidating Patton Boggs.

Finally, while Chevron has agreed to exclude from production documents created after February 14, 2011, with respect to a number of other Requests (*see* A. Young Supp. Decl., Dkt. 557, at ¶ 22), Patton Boggs objects that Chevron specifically purports to require Patton Boggs to produce documents in response to this Request created after February 14, 2011 and continuing "through the present."  Chevron has not and cannot articulate a specific need for documents

related to "NEXTANT," to the extent created after February 14, 2011, and which post-date the filing of Chevron's Complaint.  The process of searching for potentially responsive documents "through the present" creates an additional and unnecessary burden on non-party Patton Boggs.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, or both, are confidential, or subject to common-interest protections.  This Request appears to be targeted at documents that would reveal litigation strategy insofar as documents relating to "NEXTANT" include any "notes" reflecting discussions among counsel and other agents regarding the LAGO AGRIO JUDGMENT and related collateral proceedings.

Notwithstanding the foregoing objections, and based on a preliminary review of Patton Boggs' documents that may be responsive to this Request, to further assist the Court, and given that this Request calls for virtually identical responsive materials as Request Number 11, Patton Boggs restates and incorporates by reference in full here those privilege categories, and illustrative examples of documents.

**DOCUMENT REQUEST NUMBER 13:**

ALL DOCUMENTS RELATED TO meetings or COMMUNICATIONS between any PERSON on the one hand, and the ROE, on the other hand, REGARDING CHEVRON or the CHEVRON LITIGATIONS, including but not limited to meetings or COMMUNICATIONS with President Rafael Correa and his staff, all government ministries (including the Ministry of Environment), all executive branch agencies, prosecutors, legislators, judicial bodies, and judges.

**OBJECTION TO DOCUMENT REQUEST NUMBER 13:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, COMMUNICATIONS, ROE, CHEVRON, and CHEVRON LITIGATIONS in full as if fully set forth herein.

Patton Boggs objects to the fact that this Request is so overbroad as to require the production of any document in any way related to any communication between *anyone* and the ROE and its agents, including its attorneys. Nor does the Request make any distinction between open and notorious meetings or communications versus private ones. Chevron has not cited and cannot cite any justification for imposing upon Patton Boggs the obligation to produce documents having nothing to do with itself or with its clients. The Request is not at all tailored to capture only documents relevant to Chevron's claims of alleged improper collusion between the ROE and the Ecuadorian Plaintiffs in connection with the Lago Agrio Litigation. Instead, it appears designed to impose the maximum possible burden on Patton Boggs.

Further, Patton Boggs objects to the Request insofar as it is aimed at learning the Ecuadorian Plaintiffs' legal strategy in connection with 28 U.S.C. § 1782 proceedings against Chevron-affiliated persons, in which both the Ecuadorian Plaintiffs and the ROE appeared as Petitioners. Chevron has no right to peer into opposing counsel's thought processes in connection with the Ecuadorian Plaintiffs' investigation of Chevron's at best questionable conduct in connection with the Lago Agrio Litigation. The same holds true for 28 U.S.C. § 1782 proceedings initiated by Chevron in which the Ecuadorian Plaintiffs and the ROE both appeared as Interested Parties.

Patton Boggs also objects to this Request to the extent that it purports to seek documents reflecting the Ecuadorian Plaintiffs' legal strategy in responding to Chevron's disputed allegations that the Ecuadorian Plaintiffs have unlawfully colluded with ROE officials. Without

72

limitation or modification, this Request demands Patton Boggs' and co-counsel's work product, including: (1) reviews and analyses of Chevron's allegations regarding unlawful collusion with the ROE, including but not limited to analyses of Ecuadorian law; (2) discussion of potential responses to Chevron's position, set forth by counsel and Patton Boggs professionals in memoranda, email communications, and other documents; and (3) communications regarding the presentation of evidence to this Court, to the Second Circuit, and in other fora in connection with Chevron's allegations of improper collusion.  Chevron is not entitled to a window into counsel's thinking as to the proper response to Chevron's allegations, nor should Patton Boggs be forced to log such documents on a privilege log.

Further to the foregoing point, Patton Boggs objects to the request on the grounds that, even assuming that "meetings" and "communications" between the Ecuadorian Plaintiffs and the ROE have taken place regarding the litigation, such meetings are neither here nor there in terms of Chevron's RICO and other claims.  Chevron's Ecuadorian counsel has admitted under oath to holding multiple, private meetings with Ecuador's attorney general and other ROE officials, with the goal of extracting assurances that the Lago Agrio Litigation would be handled in a manner favorable to Chevron.  (Dkt. 152-25.)  Even before that, internal memoranda reveal that Chevron's predecessor, Texaco, Inc., was regularly meeting with multiple high-level Ecuadorian officials for the purpose of enlisting these officials in Texaco's efforts to defeat the *Aguinda* matter then pending in New York.  (Dkts. 152-26, 152-27, 152-28 and 152-23.)  More recently— indeed, after Chevron filed its Complaint in this action excoriating the Ecuadorian Plaintiffs for political maneuvering—numerous media outlets reported on leaked diplomatic cables describing how Chevron consistently meets with ROE officials to "quietly explore" ways to make the Lago Agrio Litigation disappear.  (*See*, *e.g.*, A. Klasfeld, *Leaked Cables Reveal Chevron Lobbying*

73

*Efforts, Courthouse News Service*, Sept. 22, 2011, *available at* http://www.courthousenews.com/2011/09/22/39994.htm.)  And Chevron has admitted, in light of eye-witness accounts of the same, that its representatives met privately with Ecuadorian judges and other ROE officials regarding the litigation on numerous occasions.  (Response to Request Number 28 of Chevron Corporation's Objections and Responses to Defendant Donziger's First Set of Document Requests, No. 11-cv-0691, dated Aug. 13, 2012.)  Cast in the foregoing light, this Request is an improper attempt by Chevron (1) to obtain a tactical advantage by peering into its litigation adversary's public policy efforts while its own machinations remain largely shrouded; and (2) to obtain fodder with which to publicly harass its litigation adversary while knowing full well that the company's own political maneuvering is, at a minimum, the other side of the very same coin.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents that are protected from disclosure by the attorney-client privilege, the work product doctrine, or both.  Based on a preliminary review of Patton Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of documents that may be in its possession, this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- documents reflecting counsel's analysis of Chevron's allegations regarding unlawful collusion between the Ecuadorian Plaintiffs and the ROE;

- documents reflecting counsel's analysis of Chevron's own private contacts with the ROE;

- documents reflecting counsel's discussion of potential responses to Chevron's arguments regarding alleged unlawful collusion between the Ecuadorian Plaintiffs and the ROE; and

- documents reflecting communications between the Ecuadorian Plaintiffs and the ROE with respect to their mutual prosecution or defense of 28 U.S.C. § 1782 proceedings.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, and/or other legal protections. To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted and without limitation, are set forth immediately below:

| Aug. 21, 2010 | Eric R. Daleo, Esq. (Patton Boggs) | Eric S. Westenberger, Esq. (Patton Boggs); Adlai J. J. Small, Esq. (Patton Boggs); Edward M. Yennock, Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with the Ecuadorian Aguinda action. |
| Jan. 16, 2012 | Eric R. Daleo, Esq. (Patton Boggs) | Ab. Pablo Fajardo Mendoza (Amazon Defense Front); Eric W. Westenberger, Esq. (Patton Boggs); Edward M. Yennock, Esq. (Patton Boggs) | Email and attachment | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with Ecuadorian Aguinda action and attaching draft letter regarding same. |
| May 15, 2012 | Edward M. Yennock, Esq. (Patton Boggs) | Steven Donziger, Esq. (Donziger & Associates); Ab. Julio Prieto (Amazon Defense Front); Eric R. Daleo, Esq. (Patton Boggs) | Email and attachments | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with Ecuadorian Aguinda action and attaching draft letter, letter, and article regarding same. |
| January 25, 2012 | Steven Donziger, Esq. (Donziger & Associates) | Eric S. Westenberger, Esq. (Patton Boggs); Edward M. Yennock, Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with Ecuadorian Plaintiffs' interest in monitoring outcome of Bilateral Investment Treaty ("BIT") proceedings. |

**DOCUMENT REQUEST NUMBER 14:**

ALL DOCUMENTS RELATED TO the writing, drafting, creation, editing, advance knowledge of, or revision by any of the LAGO AGRIO PLAINTIFF RELATED PARTIES of any official communication, order, statement, ruling, report, judgment, sentencia, escrito, providencia, edict or other writing issued by the LAGO AGRIO COURT, any appellate court reviewing any ruling of the LAGO AGRIO COURT, or ROE REGARDING CHEVRON or the CHEVRON LITIGATION.

**OBJECTION TO DOCUMENT REQUEST NUMBER 14:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, LAGO AGRIO RELATED PARTIES, REGARDING, ROE, CHEVRON, and CHEVRON LITIGATION in full as if fully set forth herein.

Patton Boggs does not have any knowledge that any "order, statement, ruling, report, judgment, sentencia, escrito, providencia, edict or other writing" was prepared by anyone other than "the LAGO AGRIO COURT [or] any appellate court reviewing any ruling of the LAGO AGRIO COURT." Accordingly, Patton Boggs does not have any responsive documents showing "advance knowledge of" any judgment or other order issued by the LAGO AGRIO COURT.

Patton Boggs objects to the extent that this Request purports to seek documents reflecting the Afectados' legal strategy in responding to Chevron's disputed allegations that the LAGO AGRIO COURT's judgment was "ghostwritten" or that the Ecuadorian court judge received "secret assistance." Without limitation or modification, this Request would seek Patton Boggs' and co-counsel's work product, including: (1) reviews and analyses of Chevron's allegations regarding the authorship of the Ecuadorian court's judgment; (2) potential responses and

arguments to Chevron's position, set forth by counsel and Patton Boggs professionals in memoranda, email communications, and other documents; and (3) communications regarding the presentation of evidence to this Court, to the Second Circuit, and in other fora that the judgment was not "ghostwritten."  Chevron should not be entitled to view the Afectados' legal strategy and contemplated responses to Chevron's allegations without limitation, nor should Patton Boggs be forced to privilege log such documents.  Patton Boggs thus objects to this Request to the extent it is propounded for the improper, vexatious purpose of harassing or intimidating Patton Boggs.

Patton Boggs also objects to the collection, processing, filtering, reviewing, and privilege logging of documents relating to the Lago Agrio Litigation, otherwise responsive to this Request, that post-date January 13, 2012, the date on which the appellate panel for the Provincial Court of Justice Sucumbios issued its clarification order.  While Chevron has agreed to exclude from production documents created after February 14, 2011, with respect to a number of other Requests (*see* A. Young Supp. Decl., Dkt. 557, at ¶ 22), Patton Boggs further objects that Chevron specifically purports to require Patton Boggs to produce documents in response to this Request created after the LAGO AGRIO COURT's judgment issued February 14, 2011 and continuing "through the present."  To the extent Chevron seeks to prove that the Afectados had "advance knowledge" of the writing of the Ecuadorian judgment, Chevron has not and cannot articulate a specific need for documents created after February 14, 2011.  The process of searching for potentially responsive documents "through the present" creates an additional and unnecessary burden on non-party Patton Boggs.  It would also be manifestly unfair to order the Afectados' counsel to reveal trial strategy in connection with this proceeding.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, or both, or are confidential.

As stated above, Patton Boggs is not in possession of any documents evincing "advance knowledge of" any judgment or other order issued by the LAGO AGRIO COURT."  However, to the extent the Request, as drafted and without date limitations, purports to seek documents created after February 14, 2011, Patton Boggs possesses a great deal of documents that reflect the Afectados' legal strategy in responding to Chevron's disputed allegations concerning the subject matter of this Request.  Based on a preliminary review of Patton Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of documents that may be in its possession, as drafted, Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- reviews and analyses of Chevron's allegations regarding the authorship of the Ecuadorian court's judgment;

- potential responses and arguments to Chevron's position, set forth by counsel and Patton Boggs professionals in memoranda, email communications, and other documents;

- communications regarding the presentation of evidence to this Court, to the Second Circuit, and in other fora that the judgment was not "ghostwritten";

- draft and contemplated filings, and communications regarding those filings, in connection with ongoing § 1782 and other proceedings that address Chevron's allegations; and

- memoranda regarding and detailing enforcement strategy and addressing and responding to Chevron's allegations.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, and/or other legal protections.  To further assist the Court, an exemplars

of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| Jan. 27, 2012 | Suzanne M. Bradley, Esq. (Patton Boggs) | File | Memorandum | Memorandum prepared in anticipation of litigation in connection with Ecuadorian Aguinda action and *Chevron Corp. v. Donziger et al, No. 1:11-cv-0691-LAK* "RICO". | Work Product |
| Dec. 29, 2011 | Edward M. Yennock, Esq. (Patton Boggs); Anneberkie Carrasco, Esq. (Patton Boggs); Eric R. Daleo, Esq. (Patton Boggs) | File | Filing | Draft filing, prepared in anticipation of litigation and reflecting mental impressions and case theories in connection with Ecuadorian Aguinda action. | Work Product |
| June 17, 2011 | Erica R. Stein, Esq. (Patton Boggs) | File | Memorandum | Memorandum, prepared in anticipation of litigation reflecting thoughts and impressions in connection with Ecuadorian Aguinda action and *Chevron Corp. v. Donziger et al, No. 1:11-cv-0691-LAK* "RICO". | Work Product |
| Jan. 20, 2012 | Eric R. Daleo, Esq. (Patton Boggs) | James E. Tyrrell, Jr., Esq. (Patton Boggs); Jason W. Rockwell, Esq. (Patton Boggs); Adlai J. J. Small, Esq. (Patton Boggs); Edward M. Yennock, Esq. (Patton Boggs); Eric S. Westenberger, Esq. (Patton Boggs) | Email with attachments | Electronic communication, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation and reflecting counsel's case theories in connection with Ecuadorian Aguinda action and *Chevron Corp. v. Donziger et al, No. 1:11-cv-0691-LAK* "RICO" and | Work Product |

| | | | | | |
|---|---|---|---|---|---|
| | | | | attaching report and filing regarding same. | |
| Dec. 20, 2011 | Edward M. Yennock, Esq. (Patton Boggs) | Eric R. Daleo, Esq. (Patton Boggs) | Email | Email communication, prepared in anticipation of litigation and reflecting counsel's case theory in connection with Ecuadorian Aguinda action. | Work Product |
| July 18, 2011 | Tim Byrd, Esq. (Smyser Kaplan & Veselka LLP) | Eric S. Westenberger, Esq. (Patton Boggs); Eric R. Daleo, Esq. (Patton Boggs); Craig Smyser, Esq. (Smyser Kaplan); Larry zz-Veselka, Esq. (Smyser Kaplan) | Email with attachment | Email correspondence between and among Ecuadorian Plaintiffs' counsel and co-counsel, prepared in anticipation of litigation and reflecting counsel's mental impressions and legal theories, in connection with Ecuadorian Aguinda action and *Chevron Corp. v. Donziger et al, No. 1:11-cv-0691-LAK* "RICO" and attaching expert biography and article regarding same. | Common Interest; Work Product |

**DOCUMENT REQUEST NUMBER 15:**

All DOCUMENTS RELATED TO any alleged fraud or alleged failure to perform by any party under the TEXPET REMEDIATION AND RELEASE.

**OBJECTION TO DOCUMENT REQUEST NUMBER 15:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, and TEXPET REMEDIATION AND RELEASE in full as if fully set forth herein. Patton Boggs objects that this Request, as drafted, is over-broad, unduly burdensome, and unreasonable insofar as it purports to encompass "[a]ll

DOCUMENTS," including any brief, draft filing, memoranda, and other documents, without limitation, concerning any U.S. or Ecuadorian proceedings in which Patton Boggs has responded to Chevron's allegations and defenses "RELATED TO any alleged fraud or alleged failure to perform by any party under the TEXPET REMEDIATION AND RELEASE."

Relatedly, this Request, as drafted, purports to require Patton Boggs to disclose any and all documents concerning the TEXPET REMEDIATION AND RELEASE, for the purpose of "fishing" through Patton Boggs files to divine litigation strategy related to Patton Boggs claims concerning "alleged fraud or alleged failure to perform by any party under the TEXPET REMEDIATION AND RELEASE."

Patton Boggs further objects to this Request insofar as it purports to impose upon Patton Boggs an obligation to filter or exclude documents previously produced to Chevron or any Chevron-aligned person in the course of the 1782 ACTIONS initiated by Chevron, or any of the CHEVRON LITIGATIONS, or to identify documents already in Chevron's possession and to which Chevron has ready access, because it is burdensome, duplicative, oppressive, and a requirement not imposed by the Federal Rules of Civil Procedure or this Court's Local Rules, and Patton Boggs reserves its right to refrain from re-producing such documents and hereby directs Chevron to those previously-produced documents.  Patton Boggs reserves its right to re-assert those privilege claims over documents that certain courts previously deemed waived where those orders were ultimately held to have been improvidently granted.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, common-interest privilege, and/or other applicable privileges, protections, immunities, or other limitations on discovery pursuant to the constitutions, laws, or judicial orders of tribunals of the United

States and/or the Republic of Ecuador, and for which the right of waiver may not be held by Patton Boggs, but by another legally distinct entity, individual, or combination or grouping thereof, including but not limited to those privileges attaching to the documents and communication of the sovereign ROE.  Finally, Patton Boggs further objects to the production of certain documents which disclosure is barred by the Foreign Sovereign Immunities Act (28 U.S.C. § 1604 *et seq*.).

Notwithstanding the foregoing objections, based on a preliminary review of Patton Boggs' documents that may be responsive to this Request, as drafted, and Patton Boggs' understanding of documents that may be in its possession Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- draft filings, briefs, memoranda, and other documents relating to the RICO Action and other U.S. and Ecuadorian proceedings concerning the TEXPET REMEDIATION AND RELEASE;

- communications with co-counsel and client representatives regarding the content of potential filings or the development of strategy in connection with same;

- internal communications concerning preparation of exhibits in connection with U.S. and Ecuadorian filings; and

- communications discussing status of BIT arbitration and litigation strategy.

To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| Eric R. Daleo, Esq. (Patton Boggs) | Daina Borteck, Esq. (Patton Boggs); Anneberkie Carrasco, Esq. (Patton Boggs); Suzanne Christel (Patton Boggs); Eric R. Daleo, Esq. (Patton Boggs); Riccardo DeBari, Esq. (Patton Boggs); Erin Kahn, Esq. | Email and attachment | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with the Ecuadorian Plaintiffs' interest in monitoring the outcome of the Bilateral Investment | Work Product |

| | | | | |
|---|---|---|---|---|
| | (Patton Boggs); Andrew Kirshenbaum, Esq. (Patton Boggs); Anthony Laura, Esq. (Patton Boggs); Alison Wyllie MacLaren, Esq. (Patton Boggs); Sean Neafsey, Esq. (Patton Boggs); Jonathan Peck, Esq. (Patton Boggs); Amer S. Pharaon, Esq. (Patton Boggs); John S. Prisco, Esq. (Patton Boggs); Jason W. Rockwell, Esq. (Patton Boggs), Adlai J. J. Small, Esq. (Patton Boggs), Erica R. Stein, Esq. (Patton Boggs); Megan Strickland, Esq. (Patton Boggs); Justin S. Strochlic, Esq. (Patton Boggs); Barbara Troyan (Patton Boggs); Sabrina Tyjer (Patton Boggs); Eric S. Westenberger, Esq. (Patton Boggs); Diane Whitford (Patton Boggs); Edward M. Yennock, Esq. (Patton Boggs); John J. Zefutie, Jr., Esq. (Patton Boggs) | | Treaty ("BIT") and attaching document regarding same. | |
| Erica R. Stein, Esq. (Patton Boggs) | File | Filing | Draft filing, prepared in anticipation of litigation in connection with U.S. Appellate proceeding in the 2nd Circuit. | Work Product |

## DOCUMENT REQUEST NUMBER 16:

All DOCUMENTS RELATED TO the CRIMINAL CASES and any purported basis for

the CRIMINAL CASES, including documents PROVIDED to the Ecuadorian Attorney General

in support of criminal prosecution.

**OBJECTION TO DOCUMENT REQUEST NUMBER 16:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms CRIMINAL CASES, DOCUMENTS, PROVIDED, and RELATED TO in full as if fully set forth herein.  As noted in the Objection to the definition of "CRIMINAL CASES," Chevron purports to define the term as "actual or potential criminal accusations . . . RELATING TO the LAGO AGRIO LITIGATION."  On its face and without limitation, this would purport to include documents in Patton Boggs' possession relating to "actual or potential criminal accusations" that are unknown to Patton Boggs.  Thus, this Request, as drafted, purports to require Patton Boggs to disclose any and all documents concerning CRIMINAL CASES that may, by Chevron's own definition, have not yet been initiated, cannot yet be identified at this time, or are unknown to Patton Boggs and could only be sought for the purpose of "fishing" through Patton Boggs files to divine litigation strategy related to past proceedings or those that either have not been initiated or do not yet exist.  In addition, Patton Boggs is simply not in possession of many of the materials sought and further objects to this Request to the extent it is propounded for the improper, vexatious purpose of harassing or intimidating Patton Boggs.

To the extent the Request calls for "[a]ll DOCUMENTS…PROVIDED to the Ecuadorian Attorney General in support of criminal prosecution" Patton Boggs objects that this Request calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, common-interest privilege and/or other applicable privileges, protections, immunities, or other limitations on discovery pursuant to the constitutions, laws, or judicial orders of tribunals of the United States and/or the Republic of Ecuador, and for which the right of waiver may not be held by Patton Boggs, but by another legally distinct entity, individual, or combination or grouping thereof, including but not limited to those privileges attaching to the documents and communication of the sovereign ROE.  Patton Boggs further objects to the

production of certain documents which disclosure is barred by the Foreign Sovereign Immunities Act (28 U.S.C. § 1604 *et seq.*).  To the extent any documents exist otherwise responsive to this request over which the Republic of Ecuador or its agents assert sovereign immunity, Patton Boggs will not log or produce any such documents.

Patton Boggs also objects to the Request insofar as it purports to impose upon Patton Boggs an obligation to filter or exclude documents previously produced to Chevron or any Chevron-aligned person in the course of the 1782 ACTIONS initiated by Chevron, or any of the CHEVRON LITIGATIONS, or to identify documents already in Chevron's possession and to which Chevron has ready access, because it is burdensome, duplicative, oppressive, and a requirement not imposed by the Federal Rules of Civil Procedure or this Court's Local Rules, and Patton Boggs reserves its right to refrain from re-producing such documents and hereby directs Chevron to those previously-produced documents.  Patton Boggs reserves its right to re-assert those privilege claims over documents that certain courts previously deemed waived where those orders were ultimately held to have been improvidently granted.

## Potential and Non-Exclusive Privilege Categories

Notwithstanding the foregoing objections, based on a preliminary review of Patton Boggs' documents that may be responsive to this Request, as drafted, and Patton Boggs' understanding of documents that may be in its possession Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- draft briefs and filings, and other documents filed in U.S. and Ecuadorian proceedings;

- draft declarations of co-counsel or Afectados' agents regarding allegations concerning the "CRIMINAL CASES"; and

- internal communications concerning status of Ecuadorian investigations.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, and/or other legal protections. To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| May 4, 2011 | Edward M. Yennock, Esq. (Patton Boggs) | Keerthi Mundrati, Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with Ecuadorian Aguinda action. | Work Product |

## DOCUMENT REQUEST NUMBER 17:

All DOCUMENTS RELATED TO any suspected, purported, or actual fraudulent testing, sampling, or measuring of samples by the LAGO AGRIO PLAINTIFFS, the LAGO AGRIO PLAINTIFF RELATED PARTIES, the LAGO AGRIO PLAINTIFF CONSULTANTS, the LAGO AGRIO PLAINTIFF LABORATORIES or CHEVRON.

## OBJECTION TO DOCUMENT REQUEST NUMBER 17:

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, LAGO AGRIO PLAINTIFF RELATED PARTIES, the LAGO AGRIO PLAINTIFF CONSULTANTS, LAGO AGRIO PLAINTIFF LABORATORIES, and CHEVRON in full as if fully set forth herein.

Patton Boggs objects that it is does not purport to possess any authority whatsoever to opine or produce documents in furtherance of any opinion, concerning the veracity of any portion of the overwhelming amount of scientific evidence submitted to the Ecuadorian Courts during the LAGO AGRIO LITIGATION. Patton Boggs further objects that the bulk of the documents this Request purports to seek have already been submitted to the Ecuadorian courts

and thus already form part of the trial court record in the Ecuadorian proceedings and Patton Boggs will not re-produce those documents that are equally available to Chevron.

Separately, Patton Boggs objects to the compound and confusing structure of this Request because in total and factoring in Chevron's over-broad definitions of "LAGO AGRIO PLAINTIFFS, the LAGO AGRIO PLAINTIFF RELATED PARTIES, the LAGO AGRIO PLAINTIFF CONSULTANTS, the LAGO AGRIO PLAINTIFF LABORATORIES," the Request purports to include, without limitation, hundreds persons and entities, and additionally seeks the same information concerning CHEVRON itself. Chevron did not take reasonable steps to narrowly tailor this Request and, as drafted, is overly broad and unduly burdensome by purporting to seek documents concerning any and all documents related to anything having to do with testing, sampling, or measuring, on behalf of *both* any Ecuadorian Plaintiff-affiliated party *and* Chevron. Patton Boggs further objects to the extent the Request is propounded for the improper, vexatious purpose of harassing or intimidating Patton Boggs or suggests that Patton Boggs might possess documents evincing "actual fraudulent testing, sampling, or measuring of samples" on behalf of its clients or clients' agents, which is does not, apart from those communications, draft filings, and other documents created in response to Chevron's allegations concerning same in this and other U.S. and Ecuadorian proceedings. Taken on its face, the magnitude of documents sought in the Request, if read literally, and the burden and expense imposed by the collection, review, and production efforts will be extraordinary and thus conflicts with Fed. R. Civ. P. 45(c)(1).

Patton Boggs further objects to this Request to the extent it calls for documents that are in the possession, custody, or control of—or available or accessible to—any other individuals or entities other than Patton Boggs and whose material is not accessible to Patton Boggs. Insofar as

such persons would have responsive documents if the discovery were directed to them, but those documents are not known to or in the possession, custody, or control of Patton Boggs, Patton Boggs will not produce them, including documents in Chevron's possession and those from public sources or other third parties that are equally available and/or accessible to Chevron. Patton Boggs also objects to the Request insofar as it purports to impose upon Patton Boggs an obligation to filter or exclude documents previously produced to Chevron or any Chevron-aligned person in the course of the 1782 ACTIONS initiated by Chevron, or any of the CHEVRON LITIGATIONS, or to identify documents already in Chevron's possession and to which Chevron has ready access, because it is burdensome, duplicative, oppressive, and a requirement not imposed by the Federal Rules of Civil Procedure or this Court's Local Rules, and Patton Boggs reserves its right to refrain from re-producing such documents and hereby directs Chevron to those previously-produced documents.  Patton Boggs reserves its right to re-assert those privilege claims over documents that certain courts previously deemed waived where those orders were ultimately held to have been improvidently granted.

### Potential and Non-Exclusive Privilege Categories

Patton Boggs also objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, common-interest privilege, and/or other applicable privileges, protections, immunities, or other limitations on discovery pursuant to the constitutions, laws, or judicial orders of tribunals of the United States and/or the Republic of Ecuador, and for which the right of waiver may not be held by Patton Boggs.

Notwithstanding the foregoing objections, based on a preliminary review of Patton Boggs' documents that may be responsive to this Request, as drafted, and Patton Boggs' understanding of documents that may be in its possession Patton Boggs submits that this Request

may call for the production of the following categories of material that is or may be protected from disclosure:

- draft briefs, filings, memoranda, and other documents prepared in anticipation of and submitted to U.S. and Ecuadorian courts;

- communications from client representatives regarding content of potential filings or the developments of strategy in connection with same; and

- internal communications concerning draft filings or other legal strategy in connection with U.S. and Ecuadorian proceedings.

To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| Feb. 10, 2011 | Erica R. Stein, Esq. (Patton Boggs) | Edward Yennock, Esq. (Patton Boggs) | Email with attachment | Email correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation and reflecting counsel's case theory in connection with Calmbacher § 1782 action and attaching draft filing regarding same. | Work Product |
| --- | --- | --- | --- | --- | --- |
| Feb. 18, 2011 | Erica R. Stein, Esq. (Patton Boggs) | Edward Yennock, Esq. (Patton Boggs) | Email with attachment | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with *Chevron Corp. v. Donziger*, No. 11-0691 and attaching draft filing regarding same. | Work Product |
| December 13, 2011 | Eric R. Daleo, Esq. (Patton Boggs) | Garland Murphy, Esq. (Smyser Kaplan); Eric S. Westenberger, Esq. (Patton Boggs); Edward M. Yennock, Esq. (Patton Boggs); Sabrina Tyjer, | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel and co-counsel, prepared in anticipation of litigation reflecting case strategy, thoughts, | Common Interest; Work Product |

| | | Paralegal (Patton Boggs) | | and impressions in connection with U.S. Appellate proceeding in the 2nd Circuit. | |
|---|---|---|---|---|---|

## DOCUMENT REQUEST NUMBER 18:

All DOCUMENTS RELATED TO Dr. Charles Calmbacher including but not limited to:

a. All DOCUMENTS RELATED TO the PREPARATION or filing of any DOCUMENT purportedly submitted to the LAGO AGRIO COURT by Dr. Charles Calmbacher or in the name of Dr. Charles Calmbacher;

b. All DOCUMENTS RELATED TO any payments to Dr. Charles Calmbacher in connection with the LAGO AGRIO LITIGATION; and

c. All DOCUMENTS RELATED TO COMMUNICATIONS with Dr. Charles Calmbacher RELATING TO his May 29, 2010 deposition.

## OBJECTION TO DOCUMENT REQUEST NUMBER 18(a) through (c):

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, PREPARATION, COMMUNICATIONS, and LAGO AGRIO LITIGATION in full as if fully set forth herein.

Patton Boggs objects that this Request, as drafted, is overbroad, unduly burdensome, and unreasonable insofar as it purports to encompass "[a]ll DOCUMENTS," including any draft filing, memoranda, and other documents, without limitation, concerning any U.S. or Ecuadorian proceedings in which Patton Boggs has responded to Chevron's allegations "RELATED TO" any alleged fraud in relation to the submission of Charles Calmbacher's expert reports to the Lago Agrio Court.

On a related note, this Request, as drafted, purports to require Patton Boggs to disclose any and all documents concerning Dr. Calmbacher, for the purpose of "fishing" through Patton Boggs files to divine counsel's mental impressions related to the Ecuadorian Plaintiffs' assertion that Dr. Calmbacher's deposition testimony was motivated by personal acrimony and a dispute

about payment.   Patton Boggs further objects that this Request, as drafted, constitutes an improper "contention request" insofar as Chevron purports to require Patton Boggs to justify its clients' rebuttal to Dr. Calmbacher's testimony.

Finally, Patton Boggs specifically objects that this Request purports to seek documents post-dating the deposition of Charles Calmbacher on March 29, 2010, which is the *latest* event or alleged event related to Dr. Calmbacher that supposedly underpins Chevron's claims forms the basis for Chevron's RICO and other claims.   The process of searching for potentially responsive documents without any such date limitation places an additional and unnecessary burden on non-party Patton Boggs.

Moreover, Chevron's demand for documents postdating the submission of Dr. Calmbacher's report and even postdating his subsequent deposition years later elucidate the fact that this Request targets counsel's mental impressions and the Ecuadorian Plaintiffs' legal strategy in responding to Chevron's disputed allegations concerning fraud in connection with Dr. Calmbacher's expert reports.   Without limitation or modification, this Request demands Patton Boggs' and co-counsel's work product, including: (1) reviews and analyses of Chevron's allegations regarding Dr. Calmbacher's reports; (2) discussion of potential responses to Chevron's position, set forth by counsel and Patton Boggs professionals in memoranda, email communications, and other documents; and (3) communications regarding the presentation of argument and evidence to this Court, to the Second Circuit, and in other fora in connection with Chevron's allegations of impropriety concerning Dr. Calmbacher's reports.   Chevron is not entitled to a window into counsel's thinking as to the proper response to Chevron's allegations, nor should Patton Boggs be forced to log such documents on a privilege log.

Moreover, Chevron has objected to the term "payment" used in connection with expert compensation.  For example:

| Defendant Stratus *in this very proceeding* requested Chevron produce: | Chevron indicated in its August 13, 2012 objections and responses to this request: |
|---|---|
| "All Documents concerning payments (or possible or potential payments) made (or to be made or possibly made) by you or on your behalf to Chevron Experts or their agents or employers." | "Chevron objects to this Request as overbroad, unduly burdensome and unreasonable because it seeks all Documents regarding 'payments . . . without any limitation as to the purpose of the payment, which would lead to the production of materials that are not relevant to any party's claims or defenses." |

*See Chevron Corp. v. Donziger, et al.*, at p. 34, No. 11-0691 (S.D.N.Y. Aug. 13, 2012).  Non-party Patton Boggs respectfully submits that it should not be held to a standard different than the standard Chevron applies to itself.

Finally, Patton Boggs specifically objects that this Request purports to seek documents post-dating the deposition of Dr. Charles Calmbacher on March 29, 2010, the occurrence of which forms the basis for Chevron's allegations concerning the subject matter of this Request. The process of searching for potentially responsive documents without any such date limitation creates an additional and unnecessary burden on non-party Patton Boggs.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, the work product doctrine, or both. Based on a preliminary review of Patton Boggs' documents that may be responsive to this Request as drafted and Patton Boggs' understanding of documents that may be in its possession, this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- documents reflecting counsel's analysis of Chevron's allegations regarding impropriety related to the Calmbacher Report;

- documents reflecting counsel's analysis of Chevron's deposition of Charles Calmbacher;

- documents reflecting counsel's analysis of Ecuadorian rulings as they pertain to the Calmbacher Report; and

- documents reflecting counsel's discussion of potential responses to Chevron's arguments regarding alleged impropriety related to the Calmbacher Report.

To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| Sept. 15, 2010 | Eric R. Daleo, Esq. (Patton Boggs) | Ilann M. Maazel, Esq. (Emery Celli); Edward M. Yennock, Esq. (Patton Boggs); Andrew Kirshenbaum, Esq. (Patton Boggs); Diane Whitford (Patton Boggs); Suzanne Christel (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation reflecting case strategy in connection with Stratus, Donziger, and Calmbacher § 1782 actions. | Work Product |
| April 27, 2010 | Ilann M. Maazel, Esq. (Emery Celli) | File | Letter | Draft letter, prepared in anticipation of litigation in connection with Calmbacher § 1781 action. | Work Product |
| Feb. 22, 2011 | Anneberkie Carrasco, Esq. (Patton Boggs) | Eric R. Daleo, Esq. (Patton Boggs); Jason W. Rockwell, Esq. (Patton Boggs); Eric S. Westenberger, Esq. (Patton Boggs); Edward M. Yennock, Esq. (Patton Boggs); Brendan Walsh, Esq. (Patton Boggs); Erica R. Stein, Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with Ecuadorian Aguinda action. | Work Product |

**DOCUMENT REQUEST NUMBER 19:**

All DOCUMENTS RELATED TO any COMMUNICATIONS between any of the LAGO AGRIO PLAINTIFF RELATED PARTIES and the COURT EXPERTS, including but not limited to all AGREEMENTS with, payments or benefits conferred or to be conferred upon, the COURT EXPERTS, whether before, during, or after the COURT EXPERT's appointment by the LAGO AGRIO COURT.

**OBJECTION TO DOCUMENT REQUEST NUMBER 19:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, COMMUNICATIONS, and LAGO AGRIO RELATED PARTIES, and COURT EXPERTS in full as if fully set forth herein.

Further, this Request is duplicative insofar as it relates to "COURT EXPERT" Richard Cabrera.  Between Chevron's 28 U.S.C. § 1782 proceedings and the *Salazar* proceedings, Chevron has served roughly 73 subpoenas, approximately 52 of which demand documents or testimony related to communications with and/or payments to COURT EXPERT Cabrera.  (Dkt. 527 at 22, n. 10.)  Patton Boggs notes that the firm was not yet counsel to the Ecuadorian Plaintiffs in 2009 when the Cabrera Report was submitted and that persons other than a non-party law firm and susceptible to Rule 45 subpoenas would be in a better position to produce the documents at issue.

Moreover, the fact that Chevron seeks documents related to allegedly "improper" or "fraudulent" events that pre-dated Patton Boggs' involvement in the case underscores the point that Chevron is merely attempting to "gain access to information that [Patton Boggs] gathered in the manner in which litigating counsel . . . normally gather information" . . . and not information about events for which Patton Boggs is a "percipient witness and a principal actor." *In re Chevron Corp.*, 749 F.Supp.2d 141, 163 (S.D.N.Y. 2010) (Kaplan, J.).  Chevron is not entitled to

a window into counsel's thinking as to the proper response to Chevron's allegations regarding Cabrera, nor should Patton Boggs be forced to log such documents on a privilege log.

Relatedly, Patton Boggs notes that Chevron has obtained, through 28 U.S.C. § 1782 discovery, virtually the entire litigation file of the Ecuadorian Plaintiffs' long-time lead counsel, Steven Donziger.  Yet, based on that production, Chevron has never made any argument concerning evidence of alleged impropriety with respect to the Ecuadorian Plaintiffs' relationship to any COURT EXPERT other than Mr. Cabrera.  In this light, Chevron's Request as it pertains to other COURT EXPERTS is an unwarranted fishing expedition.

Moreover, Chevron has refused to produce similar documents from its testifying experts, where those documents are not in its "possession."  *See Chevron Corp. v. Donziger, et al.*, at ¶ 9, No. 11-0691 (S.D.N.Y. Aug. 13, 2012).  For example:

| Defendant Stratus *in this very proceeding* instructed Chevron to produce: | Chevron indicated in its August 13, 2012 objections and responses to this instruction: |
|---|---|
| "Unless otherwise specified, the time period applicable to these Requests shall be from 1985 through February 14, 2011." | "Chevron objects to Instruction No. 9 because it is overbroad, unduly burdensome . . . Chevron will also conduct a reasonable and diligent search of documents from testifying Lago Agrio or BIT testifying experts but only to the extent those documents are in Chevron's possession." |

Non-party Patton Boggs respectfully submits that it should not be held to a standard different than the standard Chevron applies to itself.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, the work product doctrine, or both. Based on a preliminary review of Patton Boggs' documents that may be responsive to this Request as drafted and Patton Boggs' understanding of documents that may be in its possession,

this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- documents reflecting counsel's analysis of Chevron's allegations regarding impropriety related to the Cabrera Report;

- documents reflecting counsel's analysis of Ecuadorian rulings as they pertain to the Cabrera Report; and

- documents reflecting counsel's discussion of potential responses to Chevron's arguments regarding alleged impropriety related to the Cabrera Report.

To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| Aug. 17, 2010 | Ilann M. Maazel, Esq. (Emery Celli) | Andrew Wilson, Esq. (Emery Celli); Eric S. Westenberger, Esq. (Patton Boggs); Eric R. Daleo, Esq. (Patton Boggs); Edward M. Yennock, Esq. (Patton Boggs); Ingrid Moll, Esq. (Motley Rice); Jonathan S. Abady, Esq. (Emery Celli); Laura Garr, Esq. (Donziger & Associates); Andrew Woods (Donziger & Associates) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with defensive § 1782 proceedings and Ecuadorian Aguinda action. | Work Product |
| May 4, 2010 | Jonathan S. Abady, Esq. (Emery Celli) | Ilann M. Maazel, Esq. (Emery Celli); Ingrid Moll, Esq. (Motley Rice); Eric S. Westenberger, Esq. (Patton Boggs); Julia Brickell (H5); Andrew Woods (Donziger & Associates); Steven Donziger (Donziger & Associates); Laura Garr, Esq. (Donziger | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel and consultants, prepared in anticipation of litigation reflecting thoughts and impressions in connection with case management and Ecuadorian Aguinda | Work Product |

| | | &      Associates); William H. Narwold, Esq. (Motley Rice); James   E.   Tyrrell, Esq. (Patton Boggs); Andrew   F.   Wilson, Esq. (Emery Celli); Eric R. Daleo, Esq. (Patton      Boggs); Edward           M. Yennock,      Esq. (Patton Boggs) | | action. | |

**DOCUMENT REQUEST NUMBER 20:**

All DOCUMENTS RELATED TO the writing, drafting, creation, editing, or revision of any DOCUMENT or draft DOCUMENT or other writing filed with the LAGO AGRIO COURT, including but not limited to any DOCUMENT or draft DOCUMENT or other writing filed with the LAGO AGRIO COURT under the signature of or in the name CABRERA.

**OBJECTION TO DOCUMENT REQUEST NUMBER 20:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, and RELATED TO, in full as if fully set forth herein.

Patton Boggs objects that this Request is overbroad and not reasonably tailored to lead to the production of admissible evidence.   To the extent this Request broadly seeks "All DOCUMENTS RELATED to" any "DOCUMENT or draft DOCUMENT . . . filed with the LAGO AGRIO COURT," the Request could potentially call for the production of virtually every document in Patton Boggs' possession regarding the Ecuador case as virtually all of Patton Boggs' work product is "RELATED TO" documents that were filed with the Ecuadorian court. Under this reading, Chevron's Request is vexatious and harassing.

To the extent Chevron seeks documents related to the submission of materials to the Ecuadorian court "under the signature of or in the name CABRERA," Patton Boggs submits that,

as an initial matter, the law firm was not counsel in 2009 when the Cabrera Report was submitted

and that other persons susceptible to Rule 45 subpoenas would be in a better position to produce

the documents at issue than a non-party law firm.   In fact, Chevron has already served 52

Subpoenas seeking discovery of the circumstances surrounding the preparation and submission

of the Cabrera Report.  (Dkt. 527 at 22, n. 10.)

Finally, Patton Boggs objects that Chevron specifically purports to require Patton Boggs

to produce documents in response to this Request created long after the Cabrera Report was

submitted to the Ecuadorian court and continuing "through the present."   The process of

searching for potentially responsive documents "through the present" creates an additional and

unnecessary burden on non-party Patton Boggs.  It would also be manifestly unfair to order the

Afectados' counsel to reveal trial strategy in connection with this proceeding.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents

protected from disclosure by the attorney-client privilege, work product doctrine, or both, or are

confidential.   Notwithstanding the foregoing objections, based on a preliminary review of

Patton Boggs' documents that may be responsive to this Request and Patton Boggs'

understanding of documents that may be in its possession, as drafted, Patton Boggs submits that

this Request may call for the production of the following categories of material that is or may be

protected from disclosure:

- Draft filings with the Ecuadorian court and communications regarding those drafts;

- Summaries, analysis, and other work product of Chevron's filings with the Ecuadorian court to the extent such filings reference the Afectados' own filings;

- Communications, memoranda, and other documents reflecting legal strategy in connection with ongoing 28 U.S.C. § 1782 proceedings and other discovery

proceedings, to the extent that filings before the Ecuadorian court are referenced or discussed;

- Documents outlining scope of work or litigation assignments, to the extent those documents reference filings lodged with the Ecuadorian court;

- Contemplated filings to the Ecuadorian court, but not actually filed with that court; and

- Factual investigation and analysis regarding the Cabrera Report, created more than one year after the Cabrera Report was submitted to the Ecuadorian court and in response to allegations by Chevron in various fora.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, and/or other legal protections.  To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| Aug. 28, 2010 | Eric R. Daleo, Esq. (Patton Boggs) | Eric S. Westenberger, Esq. (Patton Boggs); Edward M. Yennock, Esq. (Patton Boggs) | | Electronic correspondence between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with Powers and E-Tech § 1782 actions. | Work Product |
|---|---|---|---|---|---|
| Aug. 31, 2010 | Adlai J. J. Small, Esq. (Patton Boggs) | Eric S. Westenberger, Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with Ecuadorian Aguinda action. | Work Product |

**DOCUMENT REQUEST NUMBER 21:**

All DOCUMENTS RELATED TO CABRERA or the PURPORTED CABRERA TEAM, including but not limited to:

a.      All DOCUMENTS RELATED TO the selection and appointment of CABRERA as an expert in the LAGO AGRIO LITIGATION;

b.      All DOCUMENTS RELATED TO the inclusion of any PERSON in the Annex V of the CABRERA REPORT;

c.      All COMMUNICATIONS with CABRERA or any member of the PURPORTED CABRERA TEAM;

d.      All DOCUMENTS RELATED TO meetings with CABRERA or any member of the PURPORTED CABRERA TEAM;

e.      All DOCUMENTS RELATED TO the planning, drafting, writing, revision, finalization, translations, and submission of THE CABRERA REPORTS; including but not limited to Annex H-1 of the CABRERA REPORT;

f.      All DOCUMENTS RELATED TO the CABRERA WORKPLAN;

g.      All DOCUMENTS RELATED TO the planning, drafting, writing, revision, finalization, translation, and submission of any and all filings submitted in the LAGO AGRIO LITIGATION purportedly by or in the name of CABRERA;

h.      All DOCUMENTS RELATED TO payments or compensation to CABRERA or any other member of the PURPORTED CABRERA TEAM, including but not limited to payments made through the bank account referred to as the "secret account" in DONZ-HDD-0124585;

i.      All DOCUMENTS RELATED TO WORK by any of the LAGO AGRIO PLAINTIFF CONSULTANTS appearing in whole or in part in THE CABRERA REPORTS or any DOCUMENT filed in the LAGO AGRIO LITIGATION by CABRERA;

j.      All DOCUMENTS RELATED TO revisions, edits, modification or changes made by any and all lawyers to THE CABRERA REPORTS, including but not limited to changes made by or at the direction of any LAGO AGRIO PLAINTIF RELATED PARTY who is or purports to be a lawyer;

k.      All DOCUMENTS RELATED TO CABRERA's independence or lack thereof or claims or statements made by any person or entity relating to CABRERA's independence or lack thereof;

l.      All DOCUMENTS RELATED TO any claims that any member of the PURPORTED CABRERA TEAM acted independent of the LAGO AGRIO PLAINTIFF RELATED PARTIES;

m.      All DOCUMENTS RELATED TO the independence or lack of independence of any member of the PURPORTED CABRERA TEAM;

n.      All DOCUMENTS RELATED TO public comments on the CABRERA REPORT;

o.      All DOCUMENTS with the ROE RELATED TO CABRERA or THE CABRERA REPORTS;

p.      All COMMUNICATIONS RELATED TO CABRERA or the CABRERA REPORT with any PERSON who financially supported or invested in, was asked to financially support or invest in, or offered to financially support or invest in the LAGO AGRIO LITIGATION;

q.      All DOCUMENTS RELATED TO samples taken for THE CABRERA REPORTS; and

r.      All DOCUMENTS RELATED TO CABRERA's scheduled deposition, including but not limited to COMMUNICATIONS among any of the LAGO AGRIO PLAINTIFF RELATED PARTIES REGARDING pressuring the LAGO AGRIO COURT to prevent the deposition.

**OBJECTION TO DOCUMENT REQUEST NUMBER 21 (a) through (r):**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, PURPORTED CABRERA TEAM, LAGO AGRIO LITIGATION, CABRERA REPORT, COMMUNICATIONS, CABRERA WORKPLAN, WORK, LAGO AGRIO RELATED PARTY, and ROE in full as if fully set forth herein.

Further, between Chevron's 28 U.S.C. § 1782 proceedings and the *Salazar* proceedings, Chevron has served roughly 73 subpoenas, approximately 52 of which demand documents or testimony  related to communications with and/or payments to COURT EXPERT Cabrera. (Dkt.

527 at 22, n. 10.)  Patton Boggs notes that the firm was not yet counsel to the Ecuadorian

Plaintiffs in 2009 when the Cabrera Report and related filings were submitted and that persons

other than a non-party law firm and susceptible to Rule 45 subpoenas would be in a better

position to produce the documents at issue.

Moreover, the fact that Chevron seeks documents related to allegedly "improper" or

"fraudulent" events that pre-dated Patton Boggs' involvement in the case underscores the point

that Chevron is merely attempting to "gain access to information that [Patton Boggs] gathered in

the manner in which litigating counsel . . . normally gather information" . . . and not information

about events for which Patton Boggs is a "percipient witness and a principal actor." *In re

Chevron Corp.*, 749 F.Supp.2d 141, 163 (S.D.N.Y. 2010) (Kaplan, J.).  Without limitation or

modification, this Request demands Patton Boggs' and co-counsel's work product, including: (1)

reviews and analyses of Chevron's allegations regarding the Cabrera Report; (2) discussion of

potential responses to Chevron's position, set forth by counsel and Patton Boggs professionals in

memoranda, email communications, and other documents; and (3) communications regarding the

presentation of argument and evidence to this Court, to the Second Circuit, and in other fora in

connection with Chevron's allegations of impropriety concerning the Cabrera Report.  Chevron

is not entitled to a window into counsel's thinking as to the proper response to Chevron's

allegations regarding Cabrera, nor should Patton Boggs be forced to log such documents on a

privilege log.  Chevron also has objected to the term "payment" used in connection with expert

compensation.  For example:

| Defendant Stratus *in this very proceeding* requested Chevron produce: | Chevron indicated in its August 13, 2012 objections and responses to this request: |
|---|---|
| "All Documents concerning payments (or possible or potential payments) made (or to be made or possibly made) by you or on your | "Chevron objects to this Request as overbroad, unduly burdensome and unreasonable because it seeks all Documents regarding 'payments . . . |

| behalf to Chevron Experts or their agents or employers." | without any limitation as to the purpose of the payment, which would lead to the production of materials that are not relevant to any party's claims or defenses." |

Moreover, Chevron has repeatedly and blanketedly refused to produce similar documents. For example:

| Defendant Stratus *in this very proceeding* requested Chevron produce:<br><br>"All Documents concerning a determination by Chevron whether to submit materials and/or draft findings, conclusions or analyses to Cabrera." | Chevron indicated in its August 13, 2012 objections and responses to this request:<br><br>"Chevron objects to this Request because it calls for the production of documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection, including documents subject to the common interest doctrine and documents relating to testifying expert work not required to be produced under Rule 26 of the Federal Rules of Civil Procedure. Based on these objections and General Objections . . . Chevron will not produce any documents in response to this Request." |

*See Chevron Corp. v. Donziger, et al.*, at p. 18, No. 11-0691 (S.D.N.Y. Aug. 13, 2012). Non-party Patton Boggs respectfully submits that it should not be held to standards different than those standards Chevron applies to itself.

Finally, Patton Boggs specifically objects to those sub-sections of this Request to which Chevron refused to apply any date limitation,[6] in that they purport to seek documents post-dating the Lago Agrio Judgment entered on February 14, 2011, the contents of which form the basis for Chevron's allegations concerning the subject matter of this Request. The process of searching for potentially responsive documents without any such date limitation creates an additional and unnecessary burden on non-party Patton Boggs.

---

[6] Sub-parts to Request 21: c, d, h, k, l, m, n, p.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, the work product doctrine, or both. Based on a preliminary review of Patton Boggs' documents that may be responsive to this Request as drafted and Patton Boggs' understanding of documents that may be in its possession, this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- documents reflecting counsel's analysis of Chevron's allegations regarding impropriety related to the Cabrera Report;

- documents reflecting counsel's analysis of Ecuadorian rulings as they pertain to the Cabrera Report; and

- documents reflecting counsel's discussion of potential responses to Chevron's arguments regarding alleged impropriety related to the Calmbacher Report.

To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| April 25, 2011 | Eric R. Daleo, Esq. (Patton Boggs) | Eric S. Westenberger, Esq. (Patton Boggs); Edward M. Yennock, Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with Stratus § 1782 action and Ecuadorian Aguinda action. | Work Product |
| Feb. 14, 2011 | Erica R. Stein, Esq. (Patton Boggs); Anneberkie Carrasco, Esq. (Patton Boggs) | James E. Tyrrell, Esq. (Patton Boggs); Edward M. Yennock, Esq. (Patton Boggs) | Memorandum | Memorandum, prepared in anticipation of litigation in connection with Ecuadorian Aguinda action. | Work Product |

**DOCUMENT REQUEST NUMBER 22:**

All DOCUMENTS RELATED TO the work of Uhl, Baron, Rana & Associates for the LAGO AGRIO PLAINTIFFS, or any attempts to pass off that work as being on behalf of CABRERA or to conceal any facts related to that work.

**OBJECTION TO DOCUMENT REQUEST NUMBER 22:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS and RELATED TO in full as if fully set forth herein.

This Request is, in fact, comprised of two distinct document requests: (1) "All DOCUMENTS RELATED TO the work of Uhl, Baron, Rana & Associates for the LAGO AGRIO PLAINTIFFS"; and (2) "ALL DOCUMENTS RELATED TO . . . any attempts to pass off [the work of Uhl, Baron, Rana & Associates] as being on behalf of CABRERA or to conceal any facts related to that work."

The first constituent part – "[a]ll DOCUMENTS RELATED TO the work Uhl, Baron, Rana & Associates" – is overbroad, not narrowly tailored to avoid the disclosure of protected information, burdensome, and interposed for the purpose of harassment.  As discussed *supra* paragraph 4, Patton Boggs directly represents, and has appeared on behalf of, Uhl, Baron, Rana & Associates in connection with an ongoing 28 U.S.C. § 1782 proceeding in the District of New Jersey.  *See In re Application of Chevron Corp.*, No. 2:10-cv-2675 (D.N.J.).  Although Patton Boggs, on behalf of Uhl, Baron, Rana & Associates has submitted briefing to close that proceeding, the § 1782 action remains pending and is being actively litigated.  Read without limitation, Patton Boggs objects to the extent that Chevron's Subpoena purports to call for documents regarding Patton Boggs' active representation of its client, Uhl, Baron, Rana & Associates, in connection with the District of New Jersey proceeding, including attorney-client privileged communications between counsel and Uhl, Baron, Rana & Associates regarding the

§ 1782 proceeding, as well as research memoranda and other internal communications between Patton Boggs professionals created in connection with the active representation.

Patton Boggs also objects to the second constituent part of this Request on the basis of burden, overbreadth, and harassment. Chevron's request for "ALL DOCUMENTS RELATED TO . . . any attempts to pass off [the work of Uhl, Baron, Rana & Associates] as being on behalf of CABRERA or to conceal any facts related to that work" As a preliminary matter, Patton Boggs was not counsel to the Afectados when the Cabrera Report was filed. Patton Boggs further notes that Chevron has already served *two* document subpoenas on UBR and that, pursuant to a Stipulation between the parties and entered by the Court, UBR agreed to produce documents within its possession (and did produce such documents). In serving this Request on UBR's active litigation counsel where Chevron has already sought and received this discovery through other vehicles, Patton Boggs objects that this Request is vexatious and interposed with an intent to harass non-party Patton Boggs.

## Potential and Non-Exclusive Privilege Categories

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, or both, or are confidential. Notwithstanding the foregoing objections, based on a preliminary review of Patton Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of documents that may be in its possession, as drafted, Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- Research memoranda created in connection with Patton Boggs' ongoing representation of UBR in its § 1782 action;

- Communications between Patton Boggs and UBR for the purpose of conveying legal advice in connection with the ongoing § 1782 proceeding;

- Notes and other documents prepared by Patton Boggs professionals and memorializing communications with UBR's principal and other agents of Patton Boggs, including a forensic document collection firm;

- Email communications between and among Patton Boggs professionals regarding litigation strategy in connection with the UBR § 1782 action; and

- Email communications between Patton Boggs attorneys and co-counsel in other law firms, including Emery, Celli, Brinckerhoff, & Abady, LLC, regarding litigation strategy in connection with the UBR § 1782 action.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, and/or other legal protections. To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| Sept. 15, 2010 | Ilann M. Maazel (Emery Celli) | Eric S. Westenberger, Esq. (Patton Boggs); Eric R. Daleo, Esw. (Patton Boggs);Edward M. Yennock, Esq. (Patton Boggs); Ingrid L. Moll, Esq. (Motley Rice); Mathew P. Jasinski, Esq. (Motley Rice); Adam R. Pulver, Esq. (Emery Celli); Andrew Wilson, Esq. (Emery Celli); Jonathan S. Abady, Esq. (Emery Celli) ; Steven R. Donziger, Esq. (Donziger & Associates) | Email with attachment | Email correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation and reflecting counsel's mental impressions, regarding legal research in connection with UBR § 1782 proceeding and attaching filing regarding same. | Work Product |
| July 23, 2010 | Andrew Wilson, Esq. (Emery Celli) | Eric R. Daleo, Esq. (Patton Boggs); Ilann M. Maazel, Esq. (Emery Celli); Ingrid L. Moll, Esq.(Motley Rice); Edward M. Yennock, Esq. | Email | Email correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with U.S. Appellate proceeding in the 3rd | Work Product |

| | | (Patton Boggs) | | Circuit. | |
|---|---|---|---|---|---|
| August  10, 2011 | Eric  R.  Daleo, Esq.  (Patton Boggs) | | Notes | Notes,  prepared  in anticipation  of litigation in connection with  UBR  §  1782 action. | Work Product |

## DOCUMENT REQUEST NUMBER 23:

All DOCUMENTS RELATED TO the work of the POST-CABRERA CLEANSING CONSULTANTS, including but not limited to the Weinberg Group, Douglas C. Allen, P.A.; Jonathan Shefftz; JShefftz Consulting; Lawrence W. Barnthouse; Carlos E. Picone; Daniel L. Rourke; R. Paolo Scardina; Alejandro Garro; Dagmar Schmidt Etkin; Environmental Research Consultants; Industrial Economics, Inc.; and any other PERSONS whose work was sought for the purpose of submitting reports to the LAGO AGRIO COURTS REGARDING damages assessments in 2010, or any attempts to pass off their work as not being dependent on any of CABRERA's alleged work product or to conceal any facts related to their work.

## OBJECTION TO DOCUMENT REQUEST NUMBER 23:

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, REGARDING, and POST-CABRERA CLEANSING CONSULTANTS in full as if fully set forth herein.

As an initial matter, there were no "attempts to pass off [the POST-CABRERA CLEANSING CONSULTANTS'] work as not being dependent on any of CABRERA's alleged work product or to conceal any facts related to their work." As Chevron is aware, to the extent that any of the American experts who prepared damages-related reports on behalf of the Ecuadorian Plaintiffs in 2010 "depended" on the Cabrera Report, that dependence was fully disclosed in the report, as were "facts were related to their work," such as the necessary limitations of their analysis. As observed by the Southern District of Ohio in denying the

"crime-fraud" exception as to documents in the position of so-called POST-CABRERA CLEANSING CONSULTANT Lawrence Barnthouse: "While Chevron has presented evidence showing serious questions going to the authorship of the Cabrera Report . . . there is no factual basis for Chevron's assertion that Mr. Barnthouse was involved in any alleged ongoing fraud in this case.  In fact, *Mr. Barnthouse was explicit in his attribution of much of his report to the Cabrera Report in his assessment of damages in the Lago Agrio Litigation. Barnthouse's Report specifically notes that his 'evaluation relies heavily on Cabrera (2008) but notes significant limitations and uncertainties related to this study.'*") *Chevron Corp. v. Barnthouse*, No. 1:10-mc-00053, Dkt. 36, at 21 (S.D. Ohio Nov. 26, 2010) (emphasis added).

Moreover, Patton Boggs objects to the Request on the grounds that, Chevron has taken full discovery from each of the six American experts who prepared damages-related reports on behalf of the Ecuadorian Plaintiffs in 2010, and is in the process of pursuing additional discovery from the Weinberg Group, the consulting firm that oversaw the preparation of those reports. And Chevron is already well aware of the facts and circumstances surrounding counsel's decision to ask the Lago Agrio Court for an opportunity to submit these supplemental reports, owing to the compelled production of confidential strategy emails and draft filings in the Donziger § 1782 proceeding. Under these circumstances, burdening with discovery a non-party law firm actively litigating on behalf of the Ecuadorian Plaintiffs is unwarranted; other persons susceptible to Rule 45 subpoenas have been and continue to be in a better position to produce the documents at issue, to the extent Chevron would be entitled to such documents at all.   This Request appears to be intended primarily to harass and publicly attack opposing counsel.

Finally, whether or not Chevron's allegations regarding the Cabrera Report amounted to misconduct in the context of Ecuadorian civil practice (a disputed issue then and now), the 2010

supplemental reports were designed to ensure that Chevron's allegations of attorney misconduct and false pretenses did not completely overshadow the merits of the case. Thus, without limitation or modification, this Request demands Patton Boggs' and co-counsel's thoughts and mental impressions regarding, *inter alia*, how best to respond to Chevron's Cabrera-related allegations and attacks. Chevron is not entitled to a window into counsel's thinking as to the proper response to Chevron's allegations regarding Cabrera, nor should Patton Boggs be forced to log such documents on a privilege log.

Additionally, although Chevron has agreed to exclude from production for this Request documents created after February 14, 2011, (*see* A. Young Supp. Decl., Dkt. 557, at ¶ 22), Patton Boggs further objects to the production of documents that post-date September 16, 2010, the date on which the "POST-CABRERA CLEANSING CONSULTANTS" submitted to the Lago Agrio Court their supplemental damages submissions, the occurrence of which forms the basis for Chevron's allegations concerning the subject matter of this Request. The process of searching for potentially responsive documents without any such date limitation creates an additional and unnecessary burden on Patton Boggs, a non-party.

### Potential and Non-Exclusive Privilege Categories

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, the work product doctrine, or both. Based on a preliminary review of Patton Boggs' documents that may be responsive to this Request as drafted and Patton Boggs' understanding of documents that may be in its possession, this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- documents reflecting counsel's communications with supplemental experts regarding Chevron's 28 U.S.C. § 1782 subpoenas to them;

- documents reflecting counsel's analysis of potential responses to Chevron's efforts to discredit and strike the Cabrera Report;

- documents reflecting counsel's supervision of supplemental experts' preparation of 2010 reports;

- documents reflecting counsel's analysis of Chevron's allegations regarding impropriety related to the supplemental reports;

- documents reflecting counsel's analysis of Chevron's depositions of the supplemental experts;

- documents reflecting counsel's analysis of Ecuadorian rulings as they pertain to the supplemental experts;

- documents reflecting communications and other material protected by Rule 26; and

- documents reflecting counsel's discussion of potential responses to Chevron's arguments regarding alleged whitewashing of the Cabrera Report.

To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| Oct. 30, 2010 | Eric R. Daleo, Esq. (Patton Boggs) | Andrew Kirshenbaum, Esq. (Patton Boggs); Edward M. Yennock, Esq. (Patton Boggs) | Email with attachments | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation reflecting thoughts and impressions n in connection with Allen § 1782 proceeding and attaching filings and emails regarding same. | Work Product |
| --- | --- | --- | --- | --- | --- |
| June 24, 2010 | Suzanne M. Bradley, Esq. (Patton Boggs) | Edward M. Yennock, Esq. (Patton Boggs) | Memorandum | Memorandum, prepared in anticipation of litigation reflecting thoughts and impressions in connection with Ecuadorian Aguinda action. | Work Product |

| March 17, 2011 | Adlai J. J. Small, Esq. (Patton Boggs) | Eric S. Westenberger, Esq. (Patton Boggs); Andrew Kirshenbaum, Esq. (Patton Boggs); Eric R. Daleo, Esq. (Patton Boggs); Edward M. Yennock, Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with Rourke § 1782 proceedings. | Work Product |
|---|---|---|---|---|---|

## DOCUMENT REQUEST NUMBER 24:

All DOCUMENTS RELATED TO the writing, drafting, creation, editing, or revision of any DOCUMENT or other writing filed with the LAGO AGRIO COURT under the signature of, in the name of, or purported to be authored by, any of the POST-CABRERA CLEANSING CONSULTANTS.

## OBJECTION TO DOCUMENT REQUEST NUMBER 24:

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, and POST-CABRERA CLEANSING CONSULTANTS in full as if fully set forth herein.

This Request is duplicative of and swallowed by Request Number 23. As such, Patton Boggs here incorporates by reference its response and objections to that earlier Request. However, based on a preliminary review of Patton Boggs' documents and Patton Boggs' understanding of documents that may be in its possession, Patton Boggs has not yet identified any documents falling within the ambit of this Request.

## DOCUMENT REQUEST NUMBER 25:

All DOCUMENTS RELATED TO the POST-CABRERA CLEANSING CONSULTANTS' independence or lack thereof or claims or statements made by any PERSON

or entity RELATING TO the POST-CABRERA CLEANSING CONSULTANTS' independence or lack thereof.

**OBJECTION TO DOCUMENT REQUEST NUMBER 25:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, and POST-CABRERA CLEANSING CONSULTANTS in full as if fully set forth herein.

This Request is duplicative of and swallowed by Request Number 23. As such, Patton Boggs here incorporates by reference its response and objections to that earlier Request. However, based on a preliminary review of Patton Boggs' documents and Patton Boggs' understanding of documents that may be in its possession, Patton Boggs has not yet identified any documents falling within the ambit of this Request.

**DOCUMENT REQUEST NUMBER 26:**

All DOCUMENTS RELATED TO COMMUNICATIONS between the LAGO AGRIO PLAINTIFFS or any of the LAGO AGRIO PLAINTIFF RELATED PARTIES, or any other representative, agent, or advocate for the LAGO AGRIO PLAINTIFFS, on the one hand, and any judge, official, or employee of the LAGO AGRIO COURT, or any judge, official, or employee of any other court in the ROE, on the other hand, RELATED TO the CHEVRON LITIGATIONS.

**OBJECTION TO DOCUMENT REQUEST NUMBER 26:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, COMMUNICATIONS, LAGO AGRIO RELATED PARTIES, ROE and CHEVRON LITIGATIONS in full as if fully set forth herein.

Patton Boggs objects to this Request insofar as it is so overbroad as to encompass any and all contact with the tribunal that presided over the trial in Ecuador for eight years, without any regard to the substance of the contact or whether it was *ex parte* or public.  Chevron has made no effort to tailor this Request to reflect its claims of fraud and misconduct in connection with the Lago Agrio Litigation; rather, the Request is a fishing expedition.  As presently constituted, it appears to demand, *inter alia*, all document related in any way related to a submission to the Lago Agrio Court, briefs, etc.

Further to that point, Patton Boggs objects to the Request insofar as it is aimed at divining the Ecuadorian Plaintiffs' legal strategy in connection with the entirety of the Lago Agrio Litigation.  Chevron has not established and cannot establish such a sweeping entitlement to peer into opposing counsel's thought processes and mental impressions pertaining to every aspect of a nine-year case—particularly where Patton Boggs' representation of the Ecuadorian Plaintiffs' post-dates all but the final stages of that litigation.  Nor should Patton Boggs be forced to log such documents on a privilege log.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents that are protected from disclosure by the attorney-client privilege, the work product doctrine, or both.  Based on a preliminary review of Patton Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of documents that may be in its possession, this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- draft submissions to the Lago Agrio trial court and appellate panel;

- communications between and among counsel regarding legal strategy for draft submissions to the Lago Agrio trial court and appellate panel;

- documents reflecting counsel's analysis of Chevron's allegations that the Ecuadorian Plaintiffs engaged in improper contacts with the Lago Agrio court; and

- documents reflecting counsel's consideration of responses to Chevron's allegations that the Ecuadorian Plaintiffs engaged in improper contacts with the Lago Agrio court.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, and/or other legal protections. To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| Jan. 3, 2011 | Edward M. Yennock, Esq. (Patton Boggs) | Patrick C. Gilmartin, Esq. (Patton Boggs) | Email and attachment | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation reflecting thoughts and impressions in connection with Ecuadorian Aguinda action and attaching draft filing regarding same. | Work Product |
| Jan. 10, 2011 | Edward M. Yennock, Esq. (Patton Boggs) | To File | Draft Memorandum | Draft memorandum, prepared in anticipation of litigation containing thoughts and impressions in connection with Ecuadorian Aguinda action. | Work Product |

| Jan. 5, 2012 | Edward M. Yennock, Esq. (Patton Boggs) | Ab. Pablo Fajardo Mendoza (Amazon Defense Front); Ab. Juan Pablo Saenz (Amazon Defense Front); Vanessa Barham (Amazon Defense Front) | Email with attachments | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with Ecuadorian Aguinda action and attaching filings regarding same. | Work Product |

## DOCUMENT REQUEST NUMBER 27:

All DOCUMENTS RELATED TO Judge Alberto Guerra Bastidas; Judge Efrain Novillo Guzmán; Judge Germán Yánez Ricardo Ruiz; Judge Juan Evangelista Nuñez Sanabria; Judge Leonardo Ordoñez Pina; and Judge Nicolás Augusto Zambrano Lozada in both their judicial and nonjudicial capacities.

## OBJECTION TO DOCUMENT REQUEST NUMBER 27:

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS and RELATED TO.

Patton Boggs objects to this Request insofar as it is, at best, grossly overbroad, and, at worst, indecipherable. To the extent Chevron seeks all documents "RELATED TO" every judge to have presided over the Lago Agrio trial, Chevron may well be seeking essentially every document "related to" that litigation. Or perhaps it is seeking every document submitted to the court—a yet still unjustifiably broad universe of documents. It is not possible to tell. But at a minimum, this Request purports to encompass any and all documents that reflect any contact with the tribunal that presided over the trial in Ecuador for eight years, without any regard to the substance of the contact or whether it was *ex parte* or public. Chevron has made no effort to tailor this Request to reflect its claims of fraud and misconduct in connection with the Lago Agrio Litigation; rather, the Request is a fishing expedition.

Further to that point, Patton Boggs objects to the Request insofar as it is aimed at divining the Ecuadorian Plaintiffs' legal strategy in connection with the entirety of the Lago Agrio Litigation.  For instance, notwithstanding its overall lack of clarity, the Request would certainly appear to encompass Patton Boggs' analyses of judicial opinions emanating from Ecuador, including the Lago Agrio Court's final judgment.  Chevron has not established and cannot establish such a sweeping entitlement to peer into opposing counsel's thought processes and mental impressions pertaining to ostensibly every aspect of a nine-year case.  Nor should Patton Boggs be forced to log such documents on a privilege log.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents that are protected from disclosure by the attorney-client privilege, the work product doctrine, or both.  Based on a preliminary review of Patton Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of documents that may be in its possession, this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- draft submissions to the Lago Agrio trial court;

- counsel's internal discussion and analyses of Chevron's efforts to eliminate many of the Lago Agrio trial judges from the bench;

- communications and draft filings related to Chevron's attempt to entrap  Judge Juan Evangelista Nuñez Sanabria on video using its Ecuadorian agent, Diego Borja;

- communications and draft filings regarding Chevron's threatening of Judge Nicolás Augusto Zambrano Lozada with criminal sanctions if he did not rule in Chevron's favor; and

- draft submissions to U.S. courts regarding Chevron's attacks on the Ecuadorian judiciary.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, and/or other legal protections.  To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted and without limitation, are set forth immediately below.

| Aug. 21, 2010 | Eric R. Daleo, Esq. (Patton Boggs) | Eric S. Westenberger, Esq. (Patton Boggs); Adlai J. J. Small, Esq. (Patton Boggs); Edward M. Yennock, Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with Ecaudorian Aguinda action. | Work Product |
|---|---|---|---|---|---|
| June 22, 2011 | Suzanne Christel (Patton Boggs) | Eric R. Daleo, Esq. (Patton Boggs); Edward M. Yennock, Esq. (Patton Boggs); Erica R. Stein, Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with *Chevron Corp. v. Donziger et al, No. 1:11-cv-0691-LAK* ("RICO"). | Work Product |

**DOCUMENT REQUEST NUMBER 28:**

All DOCUMENTS RELATED TO the drafting, use, and distribution of the UNFILED LAGO AGRIO PLAINTIFFS' WORK PRODUCT in connection with the LAGO AGRIO JUDGMENT or any appellate court review of the LAGO AGRIO JUDGMENT.

**OBJECTION TO DOCUMENT REQUEST NUMBER 28:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, and UNFLIED LAGO AGRIO PLAINTIFFS' WORK PRODUCT in full as if fully set forth herein.

As this Request calls for virtually identical responsive materials as Request 14, Patton Boggs restates and incorporates by reference in full those Objections, privilege categories, and illustrative examples of documents.

Patton Boggs further objects for the following reason:  The underlying premise behind Chevron's Request is flawed, *i.e.*, Chevron's use of the term "UNFILED . . . WORK PRODUCT" relates to Chevron's claim that certain materials in the Afectados' possession were never "filed" in the "RECORD" but were nevertheless incorporated into the JUDGMENT. Chevron's claim that these materials were "UNFILED" is subject to a continuing dispute, as noted in the previously filed declaration of Richard J. Fateman, who is professor emeritus in the Department of Electrical Engineering and Computer Sciences at the University of California, Berkeley.  (*See* Dkt. 532-9, at 5.)  After reviewing numerous declarations prepared by Chevron's "ghostwriting" experts who claimed that material at issue was "unfiled," Professor Fateman concluded that Chevron was wrong to conclude material was "unfiled," as Chevron performed only an "ineffective search of parts of the lower court record" and that "it would be inappropriate to assert that material claimed to be unfiled could not possibly be present in the lower court record."  (*Id.* at ¶ 29.)  Professor Fateman reached these conclusions after personally examining portions of the Lago Agrio Court record which he determined "cannot be accurately recognized" by computer search programs employed by Chevron to reach its conclusion that materials were "UNFILED."  (*See id.* at ¶ 26.)  Therefore, it is possible materials claimed to be "UNFILED" were actually included as part of the Lago Agrio Court record.

Second, even if the actual FUSION MEMO, JUDGMENT TRUST EMAIL, or other documents that Chevron claims to be "UNFILED" were not themselves filed as part of the disclosed court record, there is no reason not to suspect that the documents at issue were not

incorporated into filings, briefs, and other submissions that constituted part of the disclosed RECORD.  For example, attorney Aaron Marr Page testified in connection with the *Chevron Corp. v. Salazar* proceedings that, for example, the arguments advanced in the FUSION MEMO were the same arguments "made repeatedly in numerous different documents" and that the text of the FUSION MEMO appeared "in multiple different documents over the years."   (Page Deposition Tr. 159:23-24, 162:4-6.)

Finally, even if not included in the disclosed court RECORD, materials may have been submitted to the Court through other means.  The Ecuadorian Appellate Court specifically noted that Chevron submitted materials to the court through outside court processes, and that these materials were relied on by the judge presiding over the trial court proceedings.  (*See* Dkt. 417-02 at 4 (appellate court order) ("It is noted that on at least one occasion of which this Chamber is aware, the defendant provided a considerable amount of information to the President of the Court, related to an arbitration case between Chevron Corporation and the Government of Ecuador.  This information was not introduced into the record of case 002-2003 and has not been able to be considered by this Chamber due to the fact that the defendant has not formally entered it into the lawsuit, but even so, and in the Chamber's opinion, it was known and studied by the lower court judge.")).  Chevron has not contended here or elsewhere that submissions to the judge outside of court process are unlawful or improper as a matter of Ecuadorian law.

Therefore, for the reasons expressed here and separately expressed in Patton Boggs' responses and objections to Request 14, incorporated fully here, this Request, as drafted, is ambiguous and vague, and will, as drafted and without limitation, substantially burden non-party Patton Boggs.

Patton Boggs further, specifically objects that this Request purports to seek documents post-dating the Lago Agrio Judgment entered on February 14, 2011, the contents of which form the basis for Chevron's allegations concerning the subject matter of this Request.  The process of searching for potentially responsive documents without any such date limitation creates an additional and unnecessary burden on non-party Patton Boggs.

**DOCUMENT REQUEST NUMBER 29:**

All DOCUMENTS RELATED TO the writing, drafting, editing, advance knowledge of, or revision of the LAGO AGRIO JUDGMENT by any of the LAGO AGRIO PLAINTIFF RELATED PARTIES.

**OBJECTION TO DOCUMENT REQUEST NUMBER 29:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, and LAGO AGRIO PLAINTIFF RELATED PARTIES in full as if fully set forth herein.  As this Request calls for virtually identical responsive materials as Request 14, Patton Boggs restates and incorporates by reference in full those Objections, privilege categories, and illustrative examples of documents.

**DOCUMENT REQUEST NUMBER 30:**

All DOCUMENTS PROVIDED by any LAGO AGRIO PLAINTIFF RELATED PARTY for use in any way by the author(s) of the LAGO AGRIO JUDGMENT, but not contained in the RECORD.

**OBJECTION TO DOCUMENT REQUEST NUMBER 30:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, PROVIDED, RECORD and LAGO AGRIO PLAINTIFF RELATED PARTY in full as if fully set forth herein.  As this Request calls for

virtually identical responsive materials as Request 14, Patton Boggs restates and incorporates by reference in full those Objections, privilege categories, and illustrative examples of documents.

## DOCUMENT REQUEST NUMBER 31:

All DOCUMENTS and COMMUNICATIONS of the LAGO AGRIO PLAINTIFF RELATED PARTIES RELATED TO the proposing, writing, drafting, creation, editing, advance knowledge, or revision of any order, statement, ruling, report, or other writing RELATED TO the LAGO AGRIO LITIGATION and issued by the LAGO AGRIO COURT or the LAGO AGRIO APPELLATE PANEL, including but not limited to the LAGO AGRIO JUDGMENT, the LAGO AGRIO APPELLATE DECISION, the LAGO AGRIO APPELLATE CLARIFICATION ORDER, the February 17, 2012 Order of the LAGO AGRIO APPELLATE PANEL, and the March 1, 2012 Order of the LAGO AGRIO APPELLATE PANEL, including any commenting or advising as to the content of same.

## OBJECTION TO DOCUMENT REQUEST NUMBER 31:

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, COMMUNICATIONS, RELATED TO, LAGO AGRIO LITIGATION, and LAGO AGRIO APPELLATE PANEL in full as if fully set forth herein. As this Request calls for virtually identical responsive materials as Request 14, Patton Boggs restates and incorporates by reference in full those Objections, privilege categories, and illustrative examples of documents.

## DOCUMENT REQUEST NUMBER 32:

All DOCUMENTS and COMMUNICATIONS with the ROE RELATED TO the proposing, writing, drafting, creation, editing, advance knowledge or revision of any order, statement, ruling, report, or other writing RELATED TO the LAGO AGRIO LITIGATION and issued by the LAGO AGRIO COURT or the LAGO AGRIO APPELLATE PANEL, including

but not limited to the LAGO AGRIO JUDGMENT, the LAGO AGRIO APPELLATE DECISION, the LAGO AGRIO APPELLATE CLARIFICATION ORDER, the February 17, 2012 Order of the LAGO AGRIO APPELLATE PANEL, and the March 1, 2012 Order of the LAGO AGRIO APPELLATE PANEL, including any commenting or advising as to the content of same.

**OBJECTION TO DOCUMENT REQUEST NUMBER 32:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, COMMUNICATIONS, ROE, LAGO AGRIO LITIGATION, and LAGO AGRIO APPELLATE PANEL, in full as if fully set forth herein. As this Request calls for virtually identical responsive materials as Request 14, Patton Boggs restates and incorporates by reference in full those Objections, privilege categories, and illustrative examples of documents.

**DOCUMENT REQUEST NUMBER 33:**

All DOCUMENTS RELATED TO the constitution or make-up of the LAGO AGRIO APPELLATE COURT or LAGO AGRIO APPELLATE PANEL in connection with the LAGO AGRIO LITIGATION, including but not limited to the nomination, appointment, removal, dismissal, or recusal of Judge Wilfrido Enrique Erazo Araujo, Judge Luis Alberto Legña Zambrano, Judge Juan Carlos Encarnación Sanchez, Judge Cruz Maria Ávila Delgado, Judge Marco Antonio Yaguache Mora, Judge Milton David Rafael Toral Zevallos, and Judge Alejandro Kleber Orellana Pineda, including any "sorteos" (lotteries) and COMMUNICATIONS between the LAGO AGRIO PLAINTIFF RELATED PARTIES and the ROE REGARDING the same.

**OBJECTION TO DOCUMENT REQUEST NUMBER 33:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, LAGO AGRIO APPELLATE PANEL, LAGO AGRIO LITIGATION, LAGO AGRIO PLAINTIFF RELATED PARTIES, and ROE in full as if fully set forth herein.

Patton Boggs objects to this Request on the grounds that it targets counsel's investigation of and discussion of a response to Chevron's disputed allegation that the constitution of the Appellate Panel was irregular or improper—an allegation apparently premised on Chevron's misrepresentation that the Spanish word "conjuez" means "substitute judge" rather than the proper "associate judge." (Dkt. 417-00 – 417-03.) Without limitation or modification, this Request demands Patton Boggs' and co-counsel's work product, including investigation and analyses of Chevron's allegations that the Appellate Panel was constituted improperly and discussion of potential responses to Chevron's position, and attorney-client communications. Chevron is not entitled to a window into counsel's thinking as to the proper response to Chevron's allegations, nor should Patton Boggs be forced to log such documents on a privilege log.

Finally, Patton Boggs specifically objects that this Request purports to seek documents post-dating January 13, 2012, the date on which the appellate panel for the Provincial Court of Justice Sucumbios issued its clarification order, where the subject matter of the Request, by its own terms, appears to be temporally limited to "the LAGO AGRIO APPELLATE COURT or LAGO AGRIO APPELLATE PANEL in connection with the LAGO AGRIO LITIGATION."

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents that are protected from disclosure by the attorney-client privilege, the work product doctrine, or

both.  Based on a preliminary review of Patton Boggs' documents that may be responsive to this

Request and Patton Boggs' understanding of documents that may be in its possession, this

Request may call for the production of the following categories of material that is or may be

protected from disclosure:

- documents reflecting counsel's analysis of and potential responses to Chevron's arguments as to why the decision of the Lago Agrio appellate panel is not entitled to respect.

These documents may be protected from disclosure under the attorney-client privilege,

work product doctrine, and/or other legal protections.  To further assist the Court, an exemplars

of certain, specific documents that may be responsive to this Request, as drafted and without

limitation, are set forth immediately below.

| March 16, 2012 | Eric R. Daleo, Esq. (Patton Boggs) | Julio C. Gomez, Esq. (Gomez LLC); Hector Chavez (Smyser Kaplan); Larry Veselka, Esq. (Smyser Kaplan); Craig Smyser, Esq. (Smyser Kaplan); Garland D. Murphy, Esq. (Smyser Kaplan); Jarod Stewart, Esq. (Smyser Kaplan); Eric S. Westenberger, Esq. (Patton Boggs); Edward M. Yennock, Esq. (Patton Boggs) | Email with attachment | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel and co-counsel in connection with *Chevron Corp. v. Donziger et al, No. 1:11-cv-0691-LAK* ("RICO") and attaching filing regarding same. |

**DOCUMENT REQUEST NUMBER 34:**

All DOCUMENTS RELATED TO Judge Milton David Toral Cevallos, Judge Luis

Alberto Legña Zambrano, Judge Alejandro Kleber Orellana Pineda, Judge Juan Carlos

Encarnación Sanchez, Judge Cruz Maria Ávila Delgado, Judge Wilfrido Enrique Erazo Araujo or

Judge Marco Antonio Yaguache Mora in both their judicial and nonjudicial capacities.

**OBJECTION TO DOCUMENT REQUEST NUMBER 34:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS and RELATED TO in full as if fully set forth herein.

Patton Boggs objects to this Request insofar as it is, at best, grossly overbroad, and, at worst, indecipherable. To the extent Chevron seeks all documents "RELATED TO" every judge to have been in any way involved with the appellate panel that presided over both parties' appeals from the Lago Agrio Court's judgment, Chevron may well be seeking essentially every document "related to" the appeal. Or perhaps it is seeking every document submitted to the appellate panel—a comparatively smaller yet still unjustifiably broad universe of documents. It is not possible to tell. But at a minimum, this Request purports to encompass any and all documents that reflect contact with the tribunal that presided over the appeal, without any regard to the substance of the contact or whether it was *ex parte* or public. Chevron has made no effort to tailor this Request to reflect its claims of fraud and misconduct in connection with the Lago Agrio Litigation; rather, the Request is a fishing expedition.

Further to that point, Patton Boggs objects to the Request insofar as it is aimed at divining the Ecuadorian Plaintiffs' legal strategy in connection with the appeal in Ecuador. For instance, notwithstanding its overall lack of clarity, the Request would certainly appear to encompass Patton Boggs' analyses of the appellate panel's judicial opinions. This is particularly troubling where these opinions implicate judgment enforcement issues, insofar as Chevron repeatedly petitioned the appellate panel to suspend enforcement of the trial despite the fact that Chevron refused to offer to post a bond as required by Ecuadorian law. Chevron has not established and cannot establish such a sweeping entitlement to peer into opposing counsel's thought processes and mental impressions pertaining to judgment enforcement and other issues

related to the appeal.  Nor should Patton Boggs be forced to log such documents on a privilege log.

**<u>Potential and Non-Exclusive Privilege Categories</u>**

Patton Boggs objects to this Request to the extent it calls for the production of documents that are protected from disclosure by the attorney-client privilege, the work product doctrine, or both.  Based on a preliminary review of Patton Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of documents that may be in its possession, this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- draft submissions to the Lago Agrio appellate panel;

- documents reflecting counsel's analysis of and potential responses to Chevron's arguments as to why the decision of the Lago Agrio appellate panel is not entitled to respect;

- documents reflecting counsel's analysis of various opinions issued by the Lago Agrio appellate panel;

- documents reflecting attorney-client communications on this subject; and

- documents reflecting counsel's analysis and consideration of responses to Chevron's efforts to persuade the Lago Agrio appellate to suspend enforcement of the judgment notwithstanding Chevron's failure to post a bond as required under Ecuadorian law.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, and/or other legal protections.  To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted and without limitation, are set forth immediately below.

| Nov. 7, 2011 | Edward M. Yennock, Esq. (Patton Boggs) | | Filing | Draft filing, prepared in anticipation of litigation containing case strategy, thoughts, and impressions in connection with | Work Product |

127

| | | | | Ecuadorian Aguinda action. | |
|---|---|---|---|---|---|
| Jan. 4, 2012 | Eric S. Westenberger, Esq. (Patton Boggs) | James E. Tyrrell, Esq. (Patton Boggs); Eric R. Daleo, Esq. (Patton Boggs); Edward M. Yennock, Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with Ecuadorian Aguinda action. | Work Product |

## DOCUMENT REQUEST NUMBER 35:

All DOCUMENTS CONCERNING the concept of, necessity or desirability of, or the creation of any trust, account, or legal entity created or to be created for the purposes of holding, managing or administering any of the proceeds of the LAGO AGRIO LITIGATION, including but not limited to all DOCUMENTS concerning the JUDGMENT TRUST discussed in the LAGO AGRIO JUDGMENT, and all COMMUNICATIONS with the LAGO AGRIO COURT concerning the JUDGMENT TRUST.

## OBJECTION TO DOCUMENT REQUEST NUMBER 35:

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, CONCERNING, COMMUNICATIONS, LAGO AGRIO LITIGATION, and JUDGMENT TRUST in full as if fully set forth herein.

Patton Boggs objects to this Request on the grounds that Chevron has not established and cannot establish an entitlement to documents evidencing the Ecuadorian Plaintiffs' plans to manage any proceeds collected by way of enforcement of the Lago Agrio judgment. The hypothetical management of judgment proceeds yet to be collected upon is irrelevant to Chevron's claims of fraud and misconduct in connection with the Lago Agrio Litigation. The Request is meant to harass. Indeed, the particulars of the Ecuadorian Plaintiffs' asset management structure would only arguably be relevant if and when Chevron proves that it is

entitled to those assets and needs to collect against them.  Insofar as this Court has refused to find that Chevron is likely to succeed on the merits of its RICO claims and has denied Chevron the relief of asset attachment on multiple occasions, Chevron is not presently—and may never be—in need of or entitled to discovery in the vein of asset location.  (Dkts. 377, 467.)

Further, without limitation or modification, this Request demands Patton Boggs' and co-counsel's thoughts regarding, *inter alia*, judgment enforcement strategy, as well as counsel's analysis of the Lago Agrio judgment.  Chevron is not entitled to a window into counsel's thinking on these issues, nor should Patton Boggs be forced to log such documents on a privilege log.

Finally, Patton Boggs specifically objects that this Request purports to seek documents post-dating the Lago Agrio Judgment entered on February 14, 2011, the contents of which form the basis for Chevron's allegations concerning the subject matter of this Request.  The process of searching for potentially responsive documents without any such date limitation creates an additional and unnecessary burden on non-party Patton Boggs.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, the work product doctrine, or both.  Based on a preliminary review of Patton Boggs' documents that may be responsive to this Request as drafted and Patton Boggs' understanding of documents that may be in its possession, this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- documents reflecting counsel's analysis of Lago Agrio judgment to the extent it speaks of the formation of a trust; and

- documents reflecting counsel's analysis of Chevron's allegations concerning trust.

To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| March 18, 2011 | Eric S. Westenberger, Esq. (Patton Boggs) | Edward M. Yennock, Esq. (Patton Boggs); Jason W. Rockwell, Esq. (Patton Boggs); Justin S. Strochlic, Esq. (Patton Boggs); Adlai J. J. Small, Esq. (Patton Boggs); John J. Zefutie, Jr., Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation reflecting thoughts, impressions, and case strategy in connection with *Chevron Corp. v. Donziger et al, No. 1:11-cv-0691-LAK* ("RICO") | Work Product |
|---|---|---|---|---|---|
| June 7, 2012 | Eric R. Daleo, Esq. (Patton Boggs) | Eric S. Westenberger, Esq. (Patton Boggs); Edward M. Yennock, Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with Ecuadorian Aguinda action and case management. | Work Product |

**DOCUMENT REQUEST NUMBER 36:**

All DOCUMENTS RELATED TO the allocation or distribution of, division of, interest in, or responsibility for any proceeds, revenue, award, penalty, cost or expense RELATED TO THE LAGO AGRIO LITIGATION, including DOCUMENTS RELATED TO any PERSON who has any interest in or shares in any distribution of any proceeds RELATED TO the LAGO AGRIO JUDGMENT.

**OBJECTION TO DOCUMENT REQUEST NUMBER 36:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS. RELATED TO, and LAGO AGRIO LITIGATION in full as if fully set forth herein.

Separately, Chevron has failed in any way to define or limit the terms "allocation or distribution of, division of, interest in, or responsibility for any proceeds, revenue, award, penalty, cost or expense . . . interest in or shares in any distribution" and, as drafted, the terms are vague and can encompass a range of activities relating to not only THE LAGO AGRIO LITIGATION, but also the LAGO AGRIO JUDGMENT that are not specified.  For example, this term can be construed so broadly so as to encompass any payment of any sum of money to any person, any funding agreement, vendor invoice, retention agreement (*see* Objection to Request Number 1, *supra*), documents and other information concerning the Ecuadorian Judgment Trust, Bills of Costs ordered to be paid to Patton Boggs in related proceedings, and judgment enforcement strategy, without limitation, that in any way concern THE LAGO AGRIO LITIGATION and the LAGO AGRIO JUDGMENT.

In any event, Patton Boggs objects that this Request is overly broad and unduly burdensome.  The terms "allocation or distribution of, division of, interest in, or responsibility for any proceeds, revenue, award, penalty, cost or expense RELATED TO THE LAGO AGRIO LITIGATION, including . . . the LAGO AGRIO JUDGMENT" have no bearing on the allegations set forth in Chevron's Amended Complaint, and to the extent there exist any documents relevant to this proceeding, Chevron has failed to narrowly the Request to permit any such determination.  Further, to the extent that Chevron seeks to discover documents related to the financing of the litigation against it or the division of any moneys that may flow from the award of any judgments in Patton Boggs' favor, the disclosure of this information would materially disadvantage Patton Boggs and its clients and potentially give Chevron an unfair litigation advantage insofar as Chevron could use the discovery to (1) gain an understanding of any potential limitations on Patton Boggs' or co-counsel's ability to perform certain work, (2)

afford Chevron an opportunity to exploit resources to the extent that Chevron determines funding is limited, (3) Chevron can attempt – through direct contact, public filings, publicity, or other means – to purposefully or indirectly interfere with or disrupt ongoing or potential funding opportunities to the extent Chevron obtains information regarding potential funding sources previously unknown to Chevron, and (4) potentially place Chevron in a better position in connection with global resolution of the CHEVRON LITIGATIONS.

Taken on its face, the magnitude of documents sought in the Request, if read literally, and the burden and expense imposed by the collection, review, and production efforts will be extraordinary and thus conflicts with Fed. R. Civ. P. 45(c)(1) and Patton Boggs should not be forced to collect, process, filter, review, and privilege log all such documents. Patton Boggs further objects to this Request to the extent it is propounded for the improper, vexatious purpose of harassing or intimidating Patton Boggs.

Patton Boggs also objects to the Request insofar as it purports to impose upon Patton Boggs an obligation to filter or exclude documents previously produced to Chevron or any Chevron-aligned person in the course of the 1782 ACTIONS initiated by Chevron, or any of the CHEVRON LITIGATIONS, or to identify documents already in Chevron's possession and to which Chevron has ready access, because it is burdensome, duplicative, oppressive, and a requirement not imposed by the Federal Rules of Civil Procedure or this Court's Local Rules, and Patton Boggs reserves its right to refrain from re-producing such documents and hereby directs Chevron to those previously-produced documents, including documents from public sources that are equally available to Chevron.  Patton Boggs reserves its right to re-assert those privilege claims over documents that certain courts previously deemed waived where those orders were ultimately held to have been improvidently granted.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, or both, are confidential, or are subject to common-interest protections, or other protections, immunities, or limitations on discovery pursuant to the constitutions, laws, or judicial orders of tribunals of the United States and/or the Republic of Ecuador, and for which the right of waiver may not be held by Patton Boggs.  Patton Boggs further objects to this Request to the extent it purports to seek information and documents that may be the subject of a non-disclosure or confidentiality agreement with a third party, which documents or information by the terms of the agreement may not be disclosed by Patton Boggs.

Notwithstanding the foregoing objections, based on a preliminary review of Patton Boggs' documents that may be responsive to this Request, as drafted, and Patton Boggs' understanding of documents that may be in its possession Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- communications with LAGO AGRIO PLAINTIFFS' transactional attorneys, to provide information to assist those transactional attorneys in evaluating potential financing agreements;

- internal communications or memoranda summarizing funding agreements in anticipation of litigation;

- documents, including memoranda, outlining proposed scope of work in form of budget; and

- invoices, agreements, and other documents, to the extent they reflect litigation strategy or confidential material.

To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| Feb. 24, 2012 | Erica R. Stein, Esq. (Patton Boggs) | Jason Rockwell, Esq. (Patton Boggs); Brendan Walsh, Esq. (Patton Boggs); Vincent Mehnert, Esq. (Patton Boggs) | Email with attachment | Electronic communication, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with U.S. Appellate proceeding in the 2nd Circuit and attaching notes regarding same. | Work Product |
|---|---|---|---|---|---|

**DOCUMENT REQUEST NUMBER 37:**

All DOCUMENTS RELATED TO Steven Donziger's allocation or distribution of any proceeds RELATED TO the LAGO AGRIO JUDGMENT including all COMMUNICATIONS RELATING TO same.

**OBJECTION TO DOCUMENT REQUEST NUMBER 37:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, and COMMUNICATIONS in full as if fully set forth herein. Patton Boggs objects to the Request insofar as it purports to impose upon Patton Boggs an obligation to filter or exclude documents previously produced to Chevron or any Chevron-aligned person in the course of the 1782 ACTIONS initiated by Chevron, or any of the CHEVRON LITIGATIONS, and specifically *In re Application of Chevron Corp. (Donziger)*, No. 10-cv-0002 (S.D.N.Y.), or to identify documents already in Chevron's possession and to which Chevron has ready access, because it is burdensome, duplicative, and oppressive. This objection is especially valid where, as here, Chevron has already obtained from Steven Donziger unbridled discovery in the form of documents and countless hours of deposition testimony. Patton Boggs will not re-produce such documents and hereby directs Chevron to those previously-produced documents, including documents from public sources that are equally available to Chevron. Patton Boggs reserves its right to re-assert those privilege claims over

documents that certain courts previously deemed waived where those orders were or may ultimately be held to have been improvidently granted.

Separately, Chevron has failed in any way to define or limit the terms "allocation or distribution of any proceeds RELATED TO the LAGO AGRIO JUDGMENT" and, as drafted, the terms are vague and can encompass a range of activities relating the LAGO AGRIO JUDGMENT that are not specified (*see* Objection to Request Number 36, *supra*).  For example, this term can be construed so broadly so as to encompass any payment of any sum of money to Mr. Donziger, any funding agreement, vendor invoice, retention agreement (*see* Objection to Request Number 1, *supra*), billing invoices submitted to Mr. Donziger by any of the Afectados' current, previous, or potential co-counsel and/or agents, Mr. Donziger's bank account statements evincing any payments made to any person in connections with the LAGO AGRIO LITIGATION, and judgment enforcement strategy, without limitation, that in any way concern the LAGO AGRIO JUDGMENT.

In any event, Patton Boggs objects that this Request is overly broad and unduly burdensome.  "Steven Donziger's allocation or distribution of any proceeds RELATED TO the LAGO AGRIO JUDGMENT" has no bearing on the allegations set forth in Chevron's Amended Complaint, and to the extent there exist any documents relevant to this proceeding, Chevron has failed to narrowly the Request to permit any such determination.  Further, to the extent that Chevron seeks to discover documents related to the financing of the litigation against it or the division of any moneys that may flow from the award of any judgments in Patton Boggs' favor, the disclosure of this information would materially disadvantage Patton Boggs and its clients and potentially give Chevron an unfair litigation advantage, *see* Patton Boggs' Objections to Requests Numbers 9, 10, and 36, *supra*.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, or both, are confidential, or are subject to common-interest protections, or other protections, immunities, or limitations on discovery pursuant to the constitutions, laws, or judicial orders of tribunals of the United States and/or the Republic of Ecuador, and for which the right of waiver may not be held by Patton Boggs.  Patton Boggs further objects to this Request to the extent it purports to seek information and documents that may be the subject of a non-disclosure or confidentiality agreement with a third party, which documents or information by the terms of the agreement may not be disclosed by Patton Boggs.

Notwithstanding the foregoing objections, based on a preliminary review of Patton Boggs' documents that may be responsive to this Request, as drafted, and Patton Boggs' understanding of documents that may be in its possession Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- communications with former, current, and potential co-counsel, including Afectados' agents concerning retention and representation;

- internal and external communications or memoranda with co-counsel and Afectados' agents summarizing funding agreements in anticipation of litigation;

- draft briefs and filings in related discovery proceedings, and internal communications regarding same, that address issues of "Steven Donziger's allocation or distribution of, division of, interest in, or responsibility for any proceeds, revenue, award, penalty, cost or expense RELATED TO THE LAGO AGRIO LITIGATION, including . . . the LAGO AGRIO JUDGMENT"; and

- invoices, agreements, and other documents, to the extent they reflect litigation strategy or confidential material.

To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| July 20, 2010 | Steven R. Donziger, Esq. (Donziger & Associates) | Jonathan S. Abady, Esq. (Emery Celli); William H. Narwold, Esq. (Motley Rice); James E. Tyrrell, Jr., Esq. (Patton Boggs); Eric S. Westenberger, Esq. (Patton Boggs); Nicolas Economou (H5); Julia Brickell (H5) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel and consultants, prepared in anticipation of litigation, in connection with case management. | Work Product |

## DOCUMENT REQUEST NUMBER 38:

All DOCUMENTS RELATED TO the release, disposal, sale, transfer or gift whether through contract or otherwise of any interest in any of the proceeds from the LAGO AGRIO JUDGMENT to any individual or entity by any of the LAGO AGRIO PLAINTIFFS, any of the RICO DEFENDANTS or any of the CO-CONSPIRATORS.

## OBJECTION TO DOCUMENT REQUEST NUMBER 38:

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, CO-CONSPIRATORS, RICO DEFENDANTS in full as if fully set forth herein.

Chevron has failed in any way to define or limit the terms "release, disposal, sale, transfer or gift" and, as drafted, the terms are vague and can encompass a range of activities relating to the LAGO AGRIO JUDGMENT and an unlimited number of individuals and entities that are not specified. For example, this term can be construed so broadly so as to encompass documents relating to any payment of any sum of money (or other form of compensation) to any person, any funding agreement, vendor invoice, retention agreement (*see* Objection to Request Number 1,

*supra*), the Ecuadorian Judgment Trust, and judgment enforcement strategy, without limitation, that in any way concern the LAGO AGRIO JUDGMENT.

In any event, Patton Boggs objects that this Request is overly broad and unduly burdensome.  The "release, disposal, sale, transfer or gift whether through contract or otherwise of any interest in any of the proceeds from the LAGO AGRIO JUDGMENT" has no bearing on the allegations set forth in Chevron's Amended Complaint, and to the extent there exist any documents relevant to this proceeding, Chevron has failed to narrowly the Request to permit any such determination.  Further, to the extent that Chevron seeks to discover documents related to the division of any moneys that may flow from the award of any judgments in Patton Boggs' favor, the disclosure of this information would materially disadvantage Patton Boggs and its clients and potentially give Chevron an unfair litigation advantage, *see* Patton Boggs' Objections to Requests Numbers 9, 10, and 36, *supra*.

Separately, Patton Boggs objects to the compound and confusing structure of this Request because in total and factoring in Chevron's over-broad definitions of "LAGO AGRIO PLAINTIFFS, any of the RICO DEFENDANTS or any of the CO-CONSPIRATORS," the Request purports to include, without limitation, "[a]ll DOCUMENTS RELATED TO the release, disposal, sale, transfer or gift whether through contract or otherwise of any interest in any of the proceeds" from 79 persons and entities.

Taken on its face, the magnitude of documents sought in the Request, if read literally, and the burden and expense imposed by the collection, review, and production efforts will be extraordinary and thus conflicts with Fed. R. Civ. P. 45(c)(1) and Patton Boggs should not be forced to collect, process, filter, review, and privilege log all such documents.  Patton Boggs further objects to this Request to the extent it is propounded for the improper, vexatious purpose

of harassing or intimidating Patton Boggs, specifically insofar as this Request facially seeks a substantially similar set of documents as Request Number 36 and Patton Boggs incorporates by reference here its Objection to Request Number 36, *supra*.

Patton Boggs also objects to the Request insofar as it purports to impose upon Patton Boggs an obligation to filter or exclude documents previously produced to Chevron or any Chevron-aligned person in the course of the 1782 ACTIONS initiated by Chevron, or any of the CHEVRON LITIGATIONS, or to identify documents already in Chevron's possession and to which Chevron has ready access, because it is burdensome, duplicative, oppressive, and a requirement not imposed by the Federal Rules of Civil Procedure or this Court's Local Rules, and Patton Boggs reserves its right to refrain from re-producing such documents and hereby directs Chevron to those previously-produced documents, including documents from public sources that are equally available to Chevron. Patton Boggs reserves its right to re-assert those privilege claims over documents that certain courts previously deemed waived where those orders were ultimately held to have been improvidently granted.

## Potential and Non-Exclusive Privilege Categories

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, or both, are confidential, or are subject to common-interest protections, or other protections, immunities, or limitations on discovery pursuant to the constitutions, laws, or judicial orders of tribunals of the United States and/or the Republic of Ecuador, and for which the right of waiver may not be held by Patton Boggs. Patton Boggs further objects to this Request to the extent it purports to seek information and documents that may be the subject of a non-disclosure or confidentiality agreement with a third party, which documents or information by the terms of the agreement may not be disclosed by Patton Boggs.

139

Notwithstanding the foregoing objections, based on a preliminary review of Patton Boggs' documents that may be responsive to this Request, as drafted, and Patton Boggs' understanding of documents that may be in its possession Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- communications with LAGO AGRIO PLAINTIFFS' transactional attorneys, to provide information to assist those transactional attorneys in evaluating potential financing agreements;

- internal communications or memoranda summarizing funding agreements in anticipation of litigation;

- documents, including memoranda, outlining proposed scope of work in form of budget; and

- invoices, agreements, and other documents, to the extent they reflect litigation strategy or confidential material.

To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| Sept. 16, 2010 | Edward M. Yennock, Esq. (Patton Boggs) | Eric S. Westenberger, Esq. (Patton Boggs); Eric R. Daleo, Esq. (Patton Boggs); Adlai J. J. Small, Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation litigation in connection with case management. | Work Product |

**DOCUMENT REQUEST NUMBER 39:**

All DOCUMENTS RELATED TO COMMUNICATIONS with foreign governments in connection with any consideration of enforcing or effort to enforce the LAGO AGRIO JUDGMENT.

**OBJECTION TO DOCUMENT REQUEST NUMBER 39:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, and COMMUNICATIONS in full as if fully set forth herein.

Patton Boggs also objects to this Request on the grounds that Chevron is not entitled to use this proceeding as a means of obtaining an unfair advantage in ongoing litigation by obtaining free access to the Ecuadorian Plaintiffs' contemplated strategy for presenting the Lago Agrio judgment to international courts for evaluation, recognition, and enforcement—of which public policy efforts may well be a part.[7]   In demanding that the Ecuadorian Plaintiffs' enforcement strategy be made an open book, Chevron for practical purposes asks to reinstate the injunction vacated by the Second Circuit in connection with the *Salazar* matter.  *See Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012).   The Second Circuit held that the Ecuadorian Plaintiffs' may freely present the judgment to foreign courts, which may then decide the merits of recognition and enforcement for themselves.  Allowing Chevron to peer into the Ecuadorian Plaintiffs' enforcement strategy under the auspices of its RICO and fraud claims is fundamentally inconsistent with the Second Circuit's ruling.  Moreover, the subtext of Chevron's demand for privileged and otherwise protected documents related to judgment enforcement is familiar and disturbing: courts in other countries—like Canada and Brazil, in this instance—"are inherently assumed insufficiently trustworthy to recognize what is asserted to be the extreme incapacity of the legal system from which the judgment emanates."  *Naranjo,* 667 F.3d at 244.

---

[7] While the extent of Chevron's lobbying efforts in current or potential enforcement jurisdictions remains unknown, Chevron has extensively lobbied both the Republic of Ecuador and the United States government to help the company achieve a favorable outcome in the underlying case. (*See supra* Objection to Request 13; *see Chevron spends $2 million in 2Q on lobbyists*, Associated Press, Sept. 30, 2011, *available at*: http://news.yahoo.com/chevron-spends-2-million-2q-lobbyists-125426709.html (last visited Sept. 7, 2012)).

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, the work product doctrine, or both. However, based on a preliminary review of Patton Boggs' documents and Patton Boggs' understanding of documents that may be in its possession, Patton Boggs has not yet identified any documents falling within the ambit of this Request.

**DOCUMENT REQUEST NUMBER 40:**

All DOCUMENTS RELATED TO any COMMUNICATIONS by any of the LAGO AGRIO PLAINTIFF RELATED PARTIES with any current or former elected or appointed government official of the government of the United States or any state, territory, or possession thereof including any city or town RELATED TO CABRERA, alleged remediation costs or remediation damages in the Oriente attributable to CHEVRON, the extent of alleged environmental harms in the Oriente attributable to CHEVRON, any alleged fraud in connection with the TEXPET REMEDIATION AND RELEASE, the supposed independence or integrity of the Ecuadorian judiciary in adjudicating the CHEVRON LITIGATIONS.  This includes but is not limited to the President, any ambassador, governor, attorney general, mayor, legislator, controller, or comptroller.

**OBJECTION TO DOCUMENT REQUEST NUMBER 40:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, COMMUNICATION, LAGO AGRIO PLAINTIFF RELATED PARTIES, TEXPET REMEDIATION AND RELEASE, CHEVRON, and CHEVRON LITIGATIONS in full as if fully set forth herein.  Patton Boggs further objects to the compound and confusing structure of this Request because it renders the Request unintelligible and without any discernable parameters.  The Request presumes non-party Patton

Boggs has subjective knowledge of the nature of documents contemplated by and encompassed within the Request – including, for example, a knowledge of Chevron's understanding of "any alleged fraud in connection with the TEXPET REMEDIATION AND RELEASE" and Chevron's understanding "the supposed independence of the Ecuadorian Judiciary."

Moreover, Chevron has repeatedly and blanketedly refused to produce similar documents.  For example:

| Defendant Steven R. Donziger *in this very proceeding* requested that Chevron produce:<br><br>"All DOCUMENTS constituting or CONCERNING COMMUNICATIONS between or among Chevron or any PERSON acting on its behalf and the United States government or any United States government official, other than any public pleadings or filings in any United States court, CONCERNING the AGUINDA LITIGATION." | Chevron indicated in its August 13, 2012 objections and response to this Request that it will not produce documents responsive to this Request:<br><br>"Chevron objects to this Request because it calls for the production of documents protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection, including documents subject to the common interest doctrine.  Based on this objection and General Objections Nos. 25, 29, 30, 36, 38, and 40, Chevron will not produce any documents in response to this Request." |
| Defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje in the *Chevron Corp. v. Salazar*, No. 1:11-cv-3718, proceeding requested that Chevron produce the same documents:<br><br>"All DOCUMENTS in YOUR possession, custody, or control CONCERNING any requests by CHEVRON for the United States Department of Justice or any other criminal prosecutor in the United States or Ecuador to investigate any PERSON in connection with the ECUADORIAN LITIGATION." | While Chevron here requests Patton Boggs' produce DOCUMENTS RELATED TO communications with the U.S. Department of Justice, Chevron blanketedly refused in the *Salazar* proceeding to produce its own "DOCUMENTS . . . CONCERNING" its communications with the U.S. Department of Justice:<br><br>"Chevron specifically objects to Request No. 62 on the grounds that it seeks items "not relevant to Count 9 or any alleged defenses thereto" in violation of the Court's April 15, 2011 Scheduling Order [No. 11 Civ. 691 (LAK), DI 279]. Chevron further objects to Request No. 62 on the ground and to the extent that it seeks items protected from disclosure by the attorney-client privilege, the work product doctrine, the common interest doctrine, or any |

|  | other applicable privilege. Based on the foregoing Objections, Chevron will not produce any items in response to Request No. 62." |
| --- | --- |

Non-party Patton Boggs respectfully submits that it should not be held to a standard different than the standard Chevron applies to itself.

Patton Boggs further objects that this Request is not to relevant to Chevron's fraud and other claims as set for in its Amended Complaint and that, as interposed, the Request would cause Patton Boggs burden and is a form of harassment. The Request calls for documents that exceed the scope of the documents required to be produced by the Federal Rules of Civil Procedure and other applicable authority, insofar as Chevron did not take reasonable steps to narrowly tailor the Request. Taken on its face, the magnitude of documents sought in the Request, if read literally, and the burden and expense imposed by the collection, review, and production efforts will be burdensome and thus conflicts with Fed. R. Civ. P. 45(c)(1).

Patton Boggs also interposes a special objection to the use of the phrase "any current or former elected or appointed government official of the government of the United States or any state." Patton Boggs is a law firm with multiple offices, primarily based in Washington, D.C., that has a large public policy practice.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, or both, common-interest privilege, or are confidential.

Notwithstanding the foregoing objections, based on a preliminary review of Patton Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of documents that may be in its possession, as drafted, Patton Boggs submits that this Request may

call for the production of the following categories of material that is or may be protected from disclosure:

- Documents, including communications, summarizing Chevron's allegations and/or addressing potential responses to Chevron's submission of its allegations to United States government officials in an attempt to pressure government officials to take action to adversely impact the Republic of Ecuador and the Afectados' rights; and

- Communications regarding this Court's Order in this proceeding, (Dkt. 79), soliciting views of the Legal Advisor to the United States State Department.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, and/or other legal protections. To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| Jan. 21, 2011 | Eric S. Westenberger, Esq. (Patton Boggs, LLP) | Kenneth B. Reisenfeld (Patton Boggs); Jason W. Rockwell, Esq. (Patton Boggs); James E. Tyrrell, Esq. (Patton Boggs) | Email | Email correspondence, prepared in anticipation of litigation and reflecting counsel's mental impressions in connection with case management. | Work Product |

## DOCUMENT REQUEST NUMBER 41:

All DOCUMENTS RELATED TO any COMMUNICATION by any of the LAGO AGRIO PLAINTIFF RELATED PARTIES with any United States Government Agency or its employees including the Securities and Exchange Commission, the Department of Justice, the Department of State, and the Office of the United States Trade Representative RELATED TO CABRERA, the extent of the alleged remediation costs or remediation damages in the Oriente attributable to CHEVRON, any alleged fraud in connection with the TEXPET REMEDIATION AND RELEASE, the supposed independence of the Ecuadorian Judiciary in adjudicating the CHEVRON LITIGATIONS, the LAGO AGRIO JUDGMENT, the LAGO AGRIO

APPELLATE DECISION, the LAGO AGRIO APPELLATE CLARIFICATION ORDER, enforcement of the LAGO AGRIO JUDGMENT, and attachment of CHEVRON's assets.

## OBJECTION TO DOCUMENT REQUEST NUMBER 41:

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, COMMUNICATION, LAGO AGRIO PLAINTIFF RELATED PARTIES, TEXPET REMEDIATION AND RELEASE, CHEVRON, and CHEVRON LITIGATIONS in full as if fully set forth herein.

To the extent Request Number 41 raises issues identical to those raised by Request Number 40, Patton Boggs further incorporates by reference its Response and Objections to Request 40. Patton Boggs specifically objects here to the use of the phrase "any United States Government Agency" as overbroad and unduly burdensome.

## DOCUMENT REQUEST NUMBER 42:

All DOCUMENTS RELATED TO any COMMUNICATION by any of the LAGO AGRIO PLAINTIFF RELATED PARTIES with any State Attorney General's Office or its employees REGARDING CHEVRON or the CHEVRON LITIGATIONS.

## OBJECTION TO DOCUMENT REQUEST NUMBER 42:

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, COMMUNICATION, LAGO AGRIO PLAINTIFF RELATED PARTIES, CHEVRON, and CHEVRON LITIGATIONS in full as if fully set forth herein.

Patton Boggs objects that it is not in possession of the materials sought. Nevertheless it objects to the extent any documents otherwise responsive to this Request exist that are in the possession, custody, or control of—or available or accessible to—any other individuals or entities other than Patton Boggs and whose material is not accessible to Patton Boggs.

Relatedly, Patton Boggs objects to this Request as unduly burdensome and unreasonable to the extent it calls for the production of documents from persons other than Patton Boggs where such persons are susceptible to Rule 45 subpoenas, including but not limited to the "State[s'] Attorney General's Office or [their] employees."  Insofar as such persons would have responsive documents if the discovery were directed to them, but those documents are not known to or in the possession, custody, or control of Patton Boggs, Patton Boggs will not produce them.

Patton Boggs also objects that this Request is not to relevant to Chevron's fraud and other claims as set forth in its Amended Complaint and that, as interposed, the Request would cause Patton Boggs burden and is a form of harassment, by increasing the burden on Patton Boggs because it would necessarily need to use broad search terms to collect documents potentially responsive to this Request, including the names of "any State Attorney General's Office" and an indeterminate and undefined set of "State Attorney General's Office . . . employees."

## Potential and Non-Exclusive Privilege Categories

Patton Boggs further objects to the extent the Request calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, common-interest privilege, and privileges or protections for which the right of waiver may not be held by Patton Boggs.

Because, based on a preliminary review of Patton Boggs' documents, and Patton Boggs' understanding of documents that may be in its possession, Patton Boggs submits that it does not possess any documents responsive to this Request, as drafted, and, thus, will not (because it can not), at this time, provide categories or specific examples of documents that may be responsive to this Request.  Patton Boggs reserves its right to revise its objection and response to this Request at a later date should future review of its documents further inform its response.

**DOCUMENT REQUEST NUMBER 43:**

All DOCUMENTS RELATED TO any COMMUNICATION by any of the LAGO AGRIO PLAINTIFF RELATED PARTIES with any State's Office of the Comptroller or its employees including the Office of the New York State Comptroller, and the California State Controller's Office REGARDING CHEVRON or the CHEVRON LITIGATIONS.

**OBJECTION TO DOCUMENT REQUEST NUMBER 43:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, COMMUNICATION, LAGO AGRIO PLAINTIFF RELATED PARTIES, CHEVRON, and CHEVRON LITIGATIONS in full as if fully set forth herein.  Patton Boggs objects that this Request is not to relevant to Chevron's fraud and other claims as set forth in its Amended Complaint and that, as interposed, the Request would cause Patton Boggs burden and is a form of harassment.

Patton Boggs objects to this Request to the extent it calls for documents that are in the possession, custody, or control of—or available or accessible to—any other individuals or entities other than Patton Boggs and whose material is not accessible to Patton Boggs.  For example, according to a press release issued by Chevron, on October 7, 2011, Chevron filed a request under New York's Freedom of Information Law ("FOIL") "for documents regarding connections between the Comptroller's office and plaintiffs' representatives."  *See* AmazonPost.com (Chevron publicity website), *Lago Agrio Plaintiffs' New York Lobbying and Political Influence Campaign Exposed*, dated Oct. 10, 2011, *available at* http://www.theamazonpost.com/news/httpbit-lyr6vaom (last visited Aug. 31, 2012).  To the extent Chevron is already seeking to obtain this information from sources other than the non-party law firm, Patton Boggs should not be required to collect, process, filter, review, and produce or privilege log these documents.

Patton Boggs further objects to the extent the Request purports to call for the production of documents beyond those documents *actually* submitted to any State's Office of the Comptroller or its employees, including internal communications between and among Patton Boggs professionals regarding Chevron's FOIL request or other similar documents.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, or both, or are confidential.   Notwithstanding the foregoing objections, based on a preliminary review of Patton Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of documents that may be in its possession, as drafted, Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- documents, including email communications, regarding strategy in light of the New York State Comptroller's position that Chevron should settle the case in Ecuador; and

- communications between and among Patton Boggs professionals regarding Chevron's FOIL application directed to the New York State Comptroller.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, and/or other legal protections.  To further assist the Court, an exemplars of a specific document that may be responsive to this Request, as drafted, and without limitation, is set forth immediately below.

**DOCUMENT REQUEST NUMBER 44:**

All DOCUMENTS RELATED TO any submission of letters, requests, complaints, or petitions on behalf of any of the LAGO AGRIO PLAINTIFF RELATED PARTIES to any

international agency, including the International Commission of Jurists, the Inter-American Commission of Human Rights, the Organization of American States, Hina Jilani or the United Nations and sub-agencies, commissions, and committees thereof RELATED TO CHEVRON or the CHEVRON LITIGATIONS.

**OBJECTION TO DOCUMENT REQUEST NUMBER 44:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, LAGO AGRIO PLAINTIFF RELATED PARTIES, CHEVRON, and CHEVRON LITIGATIONS in full as if fully set forth herein. Patton Boggs also objects to the phrase "any international agency . . . and sub-agencies, commissions, and committees thereof" which is not defined. Patton Boggs simply cannot reasonably determine every possible "international agency," without limitation, operating globally.

As a preliminary matter, Patton Boggs objects because the Request is overly broad, given that it seeks "*any* submission . . . on behalf of *any* of the LAGO AGRIO PLAINTIFF RELATED PARTIES to *any* international agency." Patton Boggs further objects that this Request is specifically targeted to seek documents that are core attorney work product and that would reveal the litigation strategy of Patton Boggs' clients. As Chevron is undoubtedly aware, the Afectados have formally sought relief in the past from international tribunals, including the Inter-American Commission of Human Rights ("IACHR"). Chevron already possesses the materials filed in connection with the Afectados' requests to the IACHR – in fact, Chevron submitted an amicus brief opposing the Afectados' filing. Chevron's request, therefore, is clearly targeted at seeking communications, memoranda, and other documents involved in connection with strategy before the IACHR and other tribunals. To the extent Chevron claims that it does not have the Afectados' filings or submissions before "any international agency," Patton Boggs submits that

any filings or submissions are available or accessible to Chevron by contacting the international agency or agencies directly as opposed to subpoenaing active litigation counsel.

Patton Boggs objects that "DOCUMENTS RELATED TO" submissions to international tribunals and "agenc[ies]" are not in any way relevant to the fraud and other claims set forth in Chevron's Amended Complaint.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, or both, or are confidential.  Notwithstanding the foregoing objections, based on a preliminary review of Patton Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of documents that may be in its possession, as drafted, Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- Communications regarding litigation strategy in connection with proceedings before the IACHR, including communications reflecting planned actions or contemplated proceedings;

- Notes prepared by counsel, including draft meeting agendas or meeting minutes, which reflect litigation strategy;

- Analysis and research performed in connection with IACHR or other international proceedings; and

- Draft letters and other draft submissions to IACHR or other international tribunals, to the extent not filed or otherwise disseminated.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, and/or other legal protections.  To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| 44 | Feb. 4, 2012 | Steven R. Donziger, Esq. (Donziger & Associates) | Eric S. Westenberger, Esq. (Patton Boggs); Edward M. Yennock, Esq. (Patton Boggs); Eric R. Daleo, Esq. (Patton Boggs) | Email with attachment | Email correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation reflecting mental impressions in connection with the Ecuadorian Plaintiffs' interest in monitoring the outcome of the Bilateral Investment Treaty ("BIT") proceedings and attaching draft letter regarding same. | Work Product |

## DOCUMENT REQUEST NUMBER 45:

All DOCUMENTS RELATED TO any statement or testimony prepared or given to any committee within the United States Congress RELATED TO CHEVRON or the CHEVRON LITIGATION.

## OBJECTION TO DOCUMENT REQUEST NUMBER 45:

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, CHEVRON, and CHEVRON LITIGATION in full as if fully set forth herein.  Patton Boggs objects that "any statement or testimony prepared or given to any committee within the United States Congress" is not in any way relevant to Chevron's fraud and other claims as set forth in its Amended Complaint and that, as interposed, the Request would cause Patton Boggs burden and is a form of harassment.

Patton Boggs objects to this Request to the extent it calls for documents that are in the possession, custody, or control of—or available or accessible to—any other individuals or

entities other than Patton Boggs, whose material is not accessible to Patton Boggs, and who are equally susceptible to Rule 45 subpoenas, Patton Boggs will not produce them.

Patton Boggs further objects to the Request insofar as it purports to impose upon Patton Boggs an obligation to filter or exclude documents previously produced to Chevron or any Chevron-aligned person in the course of the 1782 ACTIONS initiated by Chevron, or any of the CHEVRON LITIGATIONS, or to identify documents already in Chevron's possession and to which Chevron has ready access, because it is burdensome, duplicative, oppressive, and a requirement not imposed by the Federal Rules of Civil Procedure or this Court's Local Rules, and Patton Boggs reserves its right to refrain from re-producing such documents and hereby directs Chevron to those previously-produced documents, including documents from public sources that are equally available to Chevron.  Indeed, to the extent this information is publicly available, such as Congressional hearing transcripts or news and media reports relating to same, Patton Boggs should not be required to collect, process, filter, review, and produce or privilege log these documents.

Patton Boggs further objects to the extent the Request purports to call for the production of documents beyond those documents *actually* submitted to any "committee within the United States Congress RELATED TO CHEVRON or the CHEVRON LITIGATION," including internal communications between and among Patton Boggs professionals.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, or both, common-interest privilege, and/or other applicable privileges, protections, immunities, or other limitations on discovery pursuant to the constitutions, laws, or judicial orders of tribunals of the United States and/or the Republic of Ecuador, and for which the right of waiver may not be held

by Patton Boggs, but by another legally distinct entity, including, but not limited to, those privileges attaching to the documents and communication of the sovereign ROE, or internal documents and communications discussing legal strategy.

Notwithstanding the foregoing objections, based on a preliminary review of Patton Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of documents that may be in its possession, as drafted, Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- documents, including internal email communications between and among counsel and Afectados' agents reflecting mental impressions in connection with responding to Chevron's Congressional testimony in support of favorable legislation.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, and/or other legal protections.  To further assist the Court, an exemplar document that may be responsive to this Request, as drafted, and without limitation, is set forth immediately below.

| Nov. 15, 2011 | Steven Donziger, Esq. (Patton Boggs) | Eric S. Westeberger, Esq. (Patton Boggs); Eric R. Daleo, Esq. (Patton Boggs); Edward M. Yennock, Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with Ecuadorian Aguinda action. | Work Product |

## DOCUMENT REQUEST NUMBER 46:

All DOCUMENTS RELATED TO any attempt or plan to enforce the LAGO AGRIO JUDGMENT or attach CHEVRON's assets anywhere in the world, including but not limited to COMMUNICATIONS with current or former government officials, analyses of CHEVRON's

assets, analyses of legal systems, and the retention of agents for the purpose of obtaining an interest in any CHEVRON asset.

## OBJECTION TO DOCUMENT REQUEST NUMBER 46:

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, CHEVRON, and COMMUNICATIONS in full as if fully set forth herein.

Patton Boggs objects that this Request facially purports to require Patton Boggs to disclose "any attempt or plan to enforce the LAGO AGRIO JUDGMENT or attach CHEVRON's assets anywhere in the world," and without limitation, for the improper purpose of "fishing" through Patton Boggs' files for information on pending or future enforcement proceedings. As a general matter, Patton Boggs' "attempt[s] or plan[s] to enforce the LAGO AGRIO JUDGMENT or attach CHEVRON's assets" are not relevant to Chevron's fraud and other claims set forth in its Amended Complaint. Chevron merely seeks to gain a tactical litigation advantage outside the four corners of this proceeding, without justification, through its attempts to divine through Patton Boggs' entire litigation file in which countries and by what mechanisms its clients may or may not contemplate future enforcement proceedings.

Patton Boggs also objects because this Request is over broad and unduly burdensome. As drafted, the Request purports to seek an unlimited amount of documents, including, but not limited to, research memoranda; internal strategy documents and communications; draft filings and internal communications in response to Chevron's allegations in various U.S. and foreign proceedings concerning enforcement and attachment, and even draft filings and research memoranda relating to the stay motion before this and the Second Circuit of portions of the Court's Preliminary Injunction relating to Patton Boggs' ability to conduct work in furtherance of enforcement activities; communications with co-counsel and clients' agents regarding

litigation strategy and retention of various types of experts and consultants.  Chevron failed to narrowly tailor this Request to the extent that Chevron only seeks to prove that Patton Boggs has, in any way participated in or contemplated "attempt[ing] or plan[ning] to enforce the LAGO AGRIO JUDGMENT or attach CHEVRON's assets," a fact Patton Boggs does not dispute.

Patton Boggs further objects to this Request to the extent it is propounded for the improper, vexatious purpose of harassing or intimidating Patton Boggs, including attempting to discover Patton Boggs' flatly privileged enforcement strategy pertaining to the Lago Agrio Judgment.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to the extent this Request purports to seek those documents and communications that are quintessential protected material comprising significant portions of the litigation file for active counsel in the ongoing CHEVRON LITIGATIONS, including but not limited to documents and communications containing LAGO AGRIO JUDGMENT enforcement strategy.  Thus, Patton Boggs further objects that the Request calls for the production of documents protected from disclosure by the work product doctrine, although, depending on the circumstances, it is possible that other protections would apply, including the attorney-client privilege, common-interest privilege, and privileges or protections for which the right of waiver may not be held by Patton Boggs.

Notwithstanding the foregoing objections, based on a preliminary review of Patton Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of documents that may be in its possession, as drafted, Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- memoranda and other documents containing research related to litigation strategy;

- internal (between and among Patton Boggs professionals) and external (between and among Patton Boggs professionals and its clients' agents) communications discussing litigation and enforcement strategy; and

- handwritten notes from meetings relating to enforcement and litigation strategy.

To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| July 22, 2010 | Edward M. Yennock, Esq. (Patton Boggs) | File | Memorandum | Draft memorandum, prepared in anticipation of litigation reflecting thoughts, impressions, and legal strategy in connection with judgment enforcement. | Work Product |
|---|---|---|---|---|---|
| Mar. 5, 2012 | Edward Yennock, Esq. (Patton Boggs) | Erica R. Stein, Esq. (Patton Boggs); Riccardo DeBari, Esq. (Patton Boggs); Sean Neafsey, Esq. (Patton Boggs); John Prisco, Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation and reflecting counsel's mental impressions and case theories and strategies concerning judgment enforcement. | Work Product |
| | May 4, 2011 | Justin S. Strochlic, Esq. (Patton Boggs) | Memorandum | Draft memorandum, prepared in anticipation of litigation reflecting, thoughts, impressions, and case strategy in connection with U.S. Appellate proceeding in the 2nd Circuit. | Work Product |

## DOCUMENT REQUEST NUMBER 47:

All DOCUMENTS RELATED TO COMMUNICATIONS with Karen Hinton REGARDING CHEVRON, the CHEVRON LITIGATIONS, or consideration of enforcing or attempting to enforce the LAGO AGRIO JUDGMENT.

**OBJECTION TO DOCUMENT REQUEST NUMBER 47:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, COMMUNICATIONS, CHEVRON, and CHEVRON LITIGATIONS in full as if fully set forth herein.

Patton Boggs objects to this request on the basis that it demands the disclosure of counsel's thoughts and mental impressions as to potentially limitless subject areas related to the Lago Agrio litigation, apparently on the flawed assumption that such thoughts when communicated to a public relations consultant do not retain their protected nature. In *In re Grand Jury Subpoenas*, 265 F.Supp.2d 321 (S.D.N.Y. 2003) (Kaplan, J.), this very Court addressed the extension of the attorney-client privilege and work product protection to communications with a public relations consultant. In that case, counsel for the target of a high-profile grand jury investigation hired a public relations firm to counteract unbalanced and inaccurate media reports that the target believed might impact the litigation. *In re Grand Jury Subpoenas*, 265 F.Supp.2d at 323. In response to a grand jury subpoena, the public relations firm refused to disclose documents, citing the attorney-client privilege and the work product doctrine. *Id.* at 323. The firm emphasized that its true "target audience was not the public at large. Rather, [it] was focused on affecting the media-conveyed message that reached the prosecutors and regulators responsible for charging decisions. . . ." *Id.* at 323-24. This Court noted that the "privilege in appropriate circumstances extends to otherwise privileged communications that involve persons *assisting the lawyer in the rendition of legal services.*" *Id.* at 325 (emphasis added). The Court observed that "the privilege extends to communications involving consultants used by lawyers to assist in performing tasks that go beyond advising a client as to the law." *Id.* Thus, the issue was whether "efforts to influence public opinion in order to advance the client's legal position . . . are services, the rendition of which also should be

facilitated by applying the privilege to relevant communications which have this as their object."
*Id*. The Court ultimately opined that while, historically, the role of lawyers vis-à-vis public opinion was viewed narrowly, the lawyer's role has more recently come to be seen more broadly. *Id*. at 326-27. "An attorney's duties do not begin inside the courtroom door. He or she cannot ignore the *practical implications* of a legal proceeding for the client." *Id*. at 327 (quoting *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1043 (1991)). The court acknowledged that the risk of public perception jeopardizing a fair trial was real, and that dealing with the media required a sufficient degree of skill such that counsel's retention of an experienced third-party would be justified. *Id*. at 330. The court was "*persuaded that the ability of lawyers to perform some of their most fundamental client functions . . . would be undermined seriously if lawyers were not able to engage in frank discussions of facts and strategies with the lawyers' public relations consultants.*" *Id*. Thus, the court held that the attorney-client privilege would extend to otherwise privileged communications with the public relations firm – even those in which counsel had no role. *Id*. at 331.

This Court's ruling in *In re Grand Jury Subpoenas* applies with equal force here. There can be no reasonable debate that the overall perception of this case communicated by the parties through the media impacts the litigation itself. Chevron obviously believes that to be so—its counsel of record in this case, Randy Mastro, earlier this year was featured in a ten-minute, "opinion" video entitled the "$8 Billion lawyer Joke" on the Wall Street Journal's website, in which Mr. Mastro used the guise of what appears at first to be legitimate journalism as a forum to air Chevron's talking points on the litigation. (http://live.wsj.com/video/opinion-the-8-billion-lawyer-joke/43F54BBB-9A9C-48F8-A1A1-C6E214FD08B2.html#!43F54BBB-9A9C-48F8-A1A1-C6E214FD08B2). More recently, attorney Douglas Cassel, who has represented

Chevron before the Inter-American Commission on Human Rights (Dkt. 557-02, at Ex. 12), has used his status as a Professor of Law at the University of Notre Dame to publish a series of "open letters" advocating Chevron's litigation positions and excoriating the alleged conduct of the Ecuadorian Plaintiffs' lawyers.  (*Id.*)  Moreover, at least one district court presiding over one of Chevron's § 1782 actions expressly cited the public perception of this case, observing that Chevron's allegations had "sent shockwaves through the nation's legal communities." *In re Chevron Corp.*, No. 1:l0-mc-00021, Dkt. 77 at 3 (D.N.M. Sept. 2, 2010).  Apparently owing at least in part to Chevron's efforts to create a sensationalist "atmosphere" around the case, that court applied the crime-fraud exception to documents held by one of the Ecuadorian Plaintiffs' consultants.   In light of Chevron's public relations mastery, the Ecuadorian Plaintiffs' countervailing public relations efforts are critical for their prospects of litigation success.

In addition to the fact that this Request calls for the production of protected materials, it is also oppressively broad.  Chevron has made no effort to limit the subject matter of the Request; rather, it untenably demands each and every document related in any way to the Lago Agrio Litigation and all related cases provided that the document was shared with a particular person.  Such an unrestricted demand inherently calls for the production of irrelevant material. Patton Boggs further objects that this Request is overly broad and unduly burdensome because it requires Patton Boggs to search its entire active litigation file, without subject-matter or date limitation.

Additionally, it is no secret that Patton Boggs' would advise its clients as to potential media avenues; that is not relevant to the fraud and other claims raised by Chevron in its Amended Complaint.  Taken on its face, the magnitude of documents sought in the Request, if read literally, and the burden and expense imposed by the collection, review, and production

efforts will be extraordinary and thus conflicts with Fed. R. Civ. P. 45(c)(1).  Patton Boggs also

objects to this Request to the extent it calls for documents within the possession, custody, and

control of—or available or accessible to—any other individuals or entities other than Patton

Boggs.  Patton Boggs further objects to this Request to the extent it calls for documents already

within the possession of Chevron or more easily accessible to Chevron from public sources or

other third parties.  Moreover, Chevron interposed a "general objection" to the production of

similar documents.  For example:

> Chevron objects to theses Requests as overbroad and unduly
> burdensome to the extent they call for Chevron to produce all
> documents concerning any communications with any public
> relations and lobbying firms or with any "PRESS AGENT."
> Chevron further objects to all Requests concerning public relations
> and lobbying firms to the extent they call for Chevron to produce
> documents that are not relevant to any party's claims or defenses
> and are not reasonably calculated to lead to the discovery of
> admissible evidence, including but not limited to documents
> unrelated to the allegations set forth in Chevron's First Amended
> Complaint.

*See Chevron Corp. v. Donziger, et al.*, at p. 10, No. 11-0691 (S.D.N.Y. Aug. 13, 2012).  Non-

party Patton Boggs respectfully submits that it should not be held to standards different than

those standards Chevron applies to itself.

### **Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents

that are protected from disclosure by the attorney-client privilege, the work product doctrine, or

both.  Based on a preliminary review of Patton Boggs' documents that may be responsive to this

Request and Patton Boggs' understanding of documents that may be in its possession, this

Request may call for the production of the following categories of material that is or may be

protected from disclosure:

- draft press releases prepared or edited by counsel;

- documents reflecting counsel's requests to Karen Hinton for documents vital to the litigation effort, and vice versa; and

- documents reflecting counsel's views about press strategy and how it relates to broader litigation strategy.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, and/or other legal protections.  To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted and without limitation, are set forth immediately below.

| June 6, 2012 | Edward M. Yennock, Esq. (Patton Boggs) | Karen Hinton (Hinton Communications) | Email | Electronic correspondence, between Ecuadorian Plaintiffs' counsel and consultant, prepared in anticipation of litigation in connection with Ecuadorian Plaintiffs' interest in monitoring the outcome of the Bilateral Investment Treaty ("BIT") proceedings. | Work Product |
| May 21, 2012 | Edward M. Yennock, Esq. (Patton Boggs) | Adlai J. J. Small, Esq. (Patton Boggs); Eric S. Westenberger, Esq. (Patton Boggs); Eric R. Daleo, Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with Ecuadorian Aguinda action. | Work Product |

## DOCUMENT REQUEST NUMBER 48:

All DOCUMENTS RELATED TO the seizure, attachment, obstruction, or prevention of movement of any property of CHEVRON.

**OBJECTION TO DOCUMENT REQUEST NUMBER 48:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, and CHEVRON in full as if fully set forth herein.

Patton Boggs objects that this Request facially purports to require Patton Boggs to disclose "[a]ll DOCUMENTS RELATED TO the . . . prevention of movement of any property of CHEVRON" and without limitation, for the improper purpose of "fishing" through Patton Boggs' files for information on pending or future enforcement proceedings. As a general matter, Patton Boggs' involvement in or contemplation of "the seizure, attachment, obstruction, or prevention of movement of any property of CHEVRON" are not relevant to Chevron's fraud and other claims set forth in its Amended Complaint. Chevron merely seeks to gain a tactical litigation advantage outside the four corners of this proceeding, without justification, through its attempts to divine through Patton Boggs' entire litigation file in which countries and by what mechanisms its clients may or may not contemplate future enforcement and/or attachment proceedings.

Patton Boggs also objects that this Request is over broad and unduly burdensome because, as drafted, the Request purports to seek an unlimited amount of documents, including, but not limited to, research memoranda; internal strategy documents and communications; draft filings and internal communications in response to Chevron's allegations in various U.S. and foreign proceedings concerning enforcement and attachment, and even draft filings and research memoranda relating to the stay motion before this and the Second Circuit of portions of the Court's Preliminary Injunction relating to Patton Boggs' ability to conduct work in furtherance of enforcement activities; and communications with co-counsel and clients' agents regarding litigation strategy. Chevron provides no meaningful limitation on the documents it seeks

because "prevention of movement of any property of CHEVRON" can be construed so broadly as to apply to any activity, whatsoever, having anything to do with enforcement of the LAGO AGRIO JUDGMENT.  Further, that Patton Boggs possesses documents and communications relating to enforcement and/or attachment is no secret, *see*, *e.g.*, *Chevron Corp. v. Naranjo, et al.*, Nos. 11-1150(L), 11-1264(Con), Dkt. 135 (2d Cir. May 12, 2011), and Chevron failed to narrowly tailor this Request to the extent that Chevron only seeks to prove that Patton Boggs has contemplated "the seizure, attachment, obstruction, or prevention of movement of any property of CHEVRON," a fact Patton Boggs does not dispute.  (*See*, *e.g.*, Hearing before the United States Court of Appeals for the Second Circuit, Hr'g Tr. at 49:19:–50:5; 57:6–59:8; 72:7–9 (2d Cir. Sept. 16, 2011). This Request is also unduly burdensome in that it purports to seek a subset of documents that is significantly, if not wholly, encompassed within Request Number 46, *supra*, and Patton Boggs incorporates by reference here its Objection to Request Number 46.

Patton Boggs further objects to this Request to the extent it is propounded for the improper, vexatious purpose of harassing or intimidating Patton Boggs, including attempting to discover Patton Boggs' flatly privileged enforcement strategy pertaining to the Lago Agrio Judgment.

**<u>Potential and Non-Exclusive Privilege Categories</u>**

Patton Boggs objects to the extent this Request purports to seek those documents and communications that are quintessential protected material comprising significant portions of the litigation file for active counsel in the ongoing CHEVRON LITIGATIONS, including but not limited to documents and communications containing LAGO AGRIO JUDGMENT enforcement strategy.  Thus, Patton Boggs further objects that the Request calls for the production of documents protected from disclosure by the work product doctrine, although, depending on the circumstances, it is possible that other protections would apply, including the attorney-client

privilege, common-interest privilege, and privileges or protections for which the right of waiver may not be held by Patton Boggs.

Notwithstanding the foregoing objections, based on a preliminary review of Patton Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of documents that may be in its possession, as drafted, Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- memoranda and other documents containing research related to litigation strategy;

- internal (between and among Patton Boggs professionals) and external (between and among Patton Boggs professionals and its clients' agents) communications discussing litigation and enforcement and attachment strategy; and

- handwritten notes from meetings relating to enforcement, attachment, and litigation strategy.

To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| July 22, 2010 | Edward M. Yennock, Esq. (Patton Boggs) | File | Memorandum | Draft memorandum, prepared in anticipation of litigation reflecting thoughts, impressions, and legal strategy in connection with judgment enforcement. | Work Product |
| May 4, 2011 | Justin S. Strochlic, Esq. (Patton Boggs) | File | Memorandum | Draft memorandum, prepared in anticipation of litigation reflecting, thoughts, impressions, and case strategy in connection with U.S. Appellate proceeding in the 2nd Circuit. | Work Product |

**DOCUMENT REQUEST NUMBER 49:**

All DOCUMENTS RELATED TO payments of any kind made or given by any person or entity to any official, court expert, employee, representative or agent of the LAGO AGRIO COURT, including but not limited to compensation, bonuses, bribes, awards, honorariums, or gifts or exchanges of money, goods or services, regardless of form and regardless of whether such payments were ever actually offered or delivered.

**OBJECTION TO DOCUMENT REQUEST NUMBER 49:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS and RELATED TO in full as if fully set forth herein. Patton Boggs also objects to the use of undefined term "court expert," as that could potentially include hundreds of experts (whether appointed by the Court, nominated by the parties, or otherwise submitted a report to the LAGO AGRIO COURT).

As an initial matter, to the extent Chevron's Request suggests that Patton Boggs has knowledge of any improper payment by the Afectados or their agents – whether "actually offered or delivered" – to any "representative or agent of the LAGO AGRIO COURT" including "bribes," Patton Boggs does not have any responsive documents and, further, has no knowledge of such activity.

To the extent Chevron seeks documents "RELATED TO" payments to Patton Boggs objects to the extent that the Request seeks items that are publicly available and/or equally available to Chevron, or are already in the possession, custody or control of Chevron, including DOCUMENTS that have been submitted previously by Chevron in legal proceedings. In fact, when Defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje specifically requested from Chevron "[a]ll DOCUMENTS in YOUR possession, custody, or control CONCERNING any payments, directly or indirectly, made by YOU to [appointed court expert]

Dr. Marcel Munoz Herrería," Chevron indicated that it "will not produce . . . items" in response to the Request and objected on the basis that Chevron's records of payments to Mr. Munoz were "equally available to Defendants."  Patton Boggs further objects to this Request to the extent it is propounded for the improper, vexatious purpose of harassing or intimidating Patton Boggs.

Moreover, Chevron has refused to produce similar documents from its testifying experts, where those documents are not in its "possession."  *See Chevron Corp. v. Donziger, et al.*, at ¶ 9, No. 11-0691 (S.D.N.Y. Aug. 13, 2012).  For example:

| Defendant Stratus *in this very proceeding* instructed Chevron to produce: | Chevron indicated in its August 13, 2012 objections and responses to this instruction: |
|---|---|
| "Unless otherwise specified, the time period applicable to these Requests shall be from 1985 through February 14, 2011." | "Chevron objects to Instruction No. 9 because it is overbroad, unduly burdensome . . . Chevron will also conduct a reasonable and diligent search of documents from testifying Lago Agrio or BIT testifying experts but only to the extent those documents are in Chevron's possession." |

Non-party Patton Boggs respectfully submits that it should not be held to a standard different than the standard Chevron applies to itself.

Finally, Patton Boggs specifically objects that this Request purports to seek documents post-dating the Lago Agrio Judgment entered on February 14, 2011, the contents of which form the basis for Chevron's allegations concerning the subject matter of this Request.  The process of searching for potentially responsive documents without any such date limitation creates an additional and unnecessary burden on non-party Patton Boggs.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, or both, or are confidential.  Notwithstanding the foregoing objections, based on a preliminary review of Patton

Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of documents that may be in its possession, as drafted, Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- memoranda and communications analyzing Chevron's allegations in various 28 U.S.C. § 1782 proceedings regarding historic payments to Richard Cabrera (alleged to have been made before Patton Boggs was counsel of record).

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, and/or other legal protections.  To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| May 4, 2012 | Eric R. Daleo, Esq. (Patton Boggs) | Brendan Walsh, Esq. (Patton Boggs) | Email with attachment | Email correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation and reflecting counsel's mental impressions, in connection with defensive discovery actions and attaching filing regarding same. | Work Product |
| Jan. 23, 2012 | Craig Smyser, Esq. (Smyser, Kaplan & Veselka) | Jan Little, Esq. (Keker Van Nest); Elliot Peters, Esq. (Keker Van Nest); Eric R. Daleo, Esq. (Patton Boggs); Eric S. Westenberger (Patton Boggs); Larry Veselka, Esq. (Smyser Kaplan & Veselka); Christina Bryan, Esq. (Smyser Kaplan & Veselka); Jarod Stewart, Esq. (Smyser Kaplan & Veselka) | Email with Attachment | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel and co-counsel, prepared in anticipation of litigation in connection with Ecuadorian Aguinda action and attaching summary regarding same. | Common Interest; Work Product |

| Mar. 1, 2011 | Eric R. Daleo, Esq. | Edward M. Yennock, Esq. (Patton Boggs) | Email with Attachments | Email correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation in connection with Ecuadorian Aguinda action and attaching summary regarding same. | Work Product |

## DOCUMENT REQUEST NUMBER 50:

All DOCUMENTS RELATED TO any payment, compensation, revenue, or any other thing of value YOU have received, contracted to receive, or have been promised RELATED TO YOUR involvement in, or WORK CONCERNING, the CHEVRON LITIGATIONS.

## OBJECTION TO DOCUMENT REQUEST NUMBER 50:

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, YOU, YOUR, WORK, CONCERNING, and CHEVRON LITIGATIONS in full as if fully set forth herein.

As a non-party, documents relating to Patton Boggs' or its agents' "payment, compensation, revenue" have no bearing on the allegations set forth in Chevron's Amended Complaint and Chevron's Request in this regard is improper insofar as it is propounded for the improper, vexatious purpose of harassing or intimidating Patton Boggs. Separately, to the extent that Chevron seeks to discover documents related to Patton Boggs' or any of its agents' compensation, the disclosure of this information would materially disadvantage Patton Boggs and its clients and potentially give Chevron an unfair litigation advantage insofar as Chevron could use the discovery to (1) gain an understanding of any potential limitations on Patton Boggs' or co-counsel's ability to perform certain work, (2) afford Chevron an opportunity to

169

exploit resources to the extent that Chevron determines Patton Boggs' funding is limited, (3) Chevron can attempt – through direct contact, public filings, publicity, or other means – to purposefully or indirectly interfere with or disrupt ongoing or potential funding opportunities to the extent Chevron obtains information regarding potential funding sources previously unknown to Chevron, and (4) potentially place Chevron in a better position in connection with settlement strategy and global resolution of the CHEVRON LITIGATIONS.

Patton Boggs further objects insofar as the Request is over-broad and unduly burdensome to the extent it purports to include within the definition of "YOU" and unidentified group of individuals and entities for which Patton Boggs cannot be expected to gather, review, privilege log, and produce documents, especially where certain of those individuals or entities have previously been or are currently respondents in ongoing discovery proceedings through which Chevron has already obtained large amounts of discovery.  To the extent this Request purports to include any documents already in Chevron's possession as a result of those proceedings or can be obtained directly from other non-parties susceptible to Rule 45 subpoenas, Patton Boggs will not produce such documents.

Patton Boggs further objects to this Request to the extent it is propounded for the improper, vexatious purpose of harassing or intimidating Patton Boggs, specifically insofar as this Request facially seeks a substantially similar set of documents as Requests Numbers 9, 36, and 38, and Patton Boggs incorporates by reference here its Objection to those Requests, *supra*.

Moreover, Chevron has objected to the term "payment" used in connection with expert compensation.  For example:

| Defendant Stratus *in this very proceeding* requested Chevron produce: | Chevron indicated in its August 13, 2012 objections and responses to this request: |
|---|---|
| "All Documents concerning payments (or | "Chevron objects to this Request as overbroad, |

| | |
|---|---|
| possible or potential payments) made (or to be made or possibly made) by you or on your behalf to Chevron Experts or their agents or employers." | unduly burdensome and unreasonable because it seeks all Documents regarding 'payments . . . without any limitation as to the purpose of the payment, which would lead to the production of materials that are not relevant to any party's claims or defenses." |

*See Chevron Corp. v. Donziger, et al.*, at p. 34, No. 11-0691 (S.D.N.Y. Aug. 13, 2012).  Non-party Patton Boggs respectfully submits that it should not be held to a standard different than the standard Chevron applies to itself.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, or both, are confidential, or are subject to common-interest protections, including but not limited to those documents containing litigation strategy and other confidential information.  Relatedly, Patton Boggs objects to this Request to the extent it purports to seek information and documents that may be the subject of a non-disclosure or confidentiality agreement with a third party, which documents or information by the terms of the agreement may not be disclosed by Patton Boggs.

Notwithstanding the foregoing objections, based on a preliminary review of Patton Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of documents that may be in its possession, as drafted, Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- internal communications or memoranda summarizing funding agreements in anticipation of litigation;

- external communications (between and among co-counsel and agents) regarding payment for translation of documents;

- documents, including memoranda, outlining proposed scope of work in form of budget; and

- billing statements, invoices, other documents, to the extent they reflect litigation strategy or confidential material.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, and/or other legal protections.  To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| July 7, 2010 | Edward M. Yennock, Esq. (Patton Boggs) | File | Spreadsheet | Draft spreadsheet, prepared in anticipation of litigation in connection with case management. | Work Product |
|---|---|---|---|---|---|

## DOCUMENT REQUEST NUMBER 51:

All DOCUMENTS RELATED TO the contents of the INVICTUS MEMO including any DOCUMENTS that are COMMUNICATIONS with, or mention, YOU.

## OBJECTION TO DOCUMENT REQUEST NUMBER 51:

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, INVICTUS MEMO,COMMUNICATIONS, and YOU in full as if fully set forth herein.

Patton Boggs objects that this Request facially purports to require Patton Boggs to disclose "[a]ll DOCUMENTS RELATED TO the . . . prevention of movement of any property of CHEVRON" and without limitation, for the improper purpose of "fishing" through Patton Boggs' files for information on pending or future enforcement proceedings.  As a general matter, Patton Boggs' involvement in or contemplation of "the seizure, attachment, obstruction, or prevention of movement of any property of CHEVRON" are not relevant to Chevron's fraud and other claims set forth in its Amended Complaint.  Chevron merely seeks to gain a tactical litigation advantage outside the four corners of this proceeding, without justification, through its

attempts to divine through Patton Boggs' entire litigation file in which countries and by what mechanisms its clients may or may not contemplate future enforcement and/or attachment proceedings.

Patton Boggs also objects that this Request is over broad and unduly burdensome because, as drafted, the Request purports to seek an unlimited amount of documents, including, but not limited to, research memoranda; internal strategy documents and communications; draft filings and internal communications in response to Chevron's allegations in various U.S. and foreign proceedings concerning enforcement and attachment, and even draft filings and research memoranda relating to the stay motion before this and the Second Circuit of portions of the Court's Preliminary Injunction relating to Patton Boggs' ability to conduct work in furtherance of enforcement activities; and communications with co-counsel and clients' agents regarding litigation strategy.

Taken on its face, the magnitude of documents sought in the Request, if read literally, and the burden and expense imposed by the collection, review, and production efforts will be extraordinary and thus conflicts with Fed. R. Civ. P. 45(c)(1). Chevron provides no meaningful limitation on the documents it seeks because "[a]ll DOCUMENTS RELATED TO the contents of the INVICTUS MEMO" can be construed so broadly as to apply to any activity, whatsoever, having anything to do with enforcement of the LAGO AGRIO JUDGMENT, including, but not limited to, any documents or communications that in any way relate to any of the topics even tangentially addressed in the INVICTUS MEMO that lay outside the purview of strictly enforcement strategy.

Further, that Patton Boggs drafted the INVICTUS MEMO, and otherwise possesses documents and communications relating to enforcement and/or attachment, is no secret, *see*, *e.g.*,

*Chevron Corp. v. Naranjo, et al.*, Nos. 11-1150(L), 11-1264(Con), Dkt. 135 (2d Cir. May 12, 2011), and Chevron failed to narrowly tailor this Request to the extent that Chevron only seeks to prove that Patton Boggs has contemplated enforcement activities, the results of which were memorialized in the INVICTUS MEMO, a fact Patton Boggs does not dispute, and with respect to the INVICTUS MEMO specifically, a strategy the Second Circuit expressly condoned.  (*See*, *e.g.*, Hearing before the United States Court of Appeals for the Second Circuit, Hr'g Tr. at 49:19:–50:5; 57:6–59:8; 72:7–9 (2d Cir. Sept. 16, 2011).   This Request is also unduly burdensome in that it purports to seek a subset of documents that is significantly, if not wholly, encompassed within Requests Numbers 46 and 48, *supra*, and Patton Boggs incorporates by reference here its Objections to Requests Numbers 46 and 48.

Patton Boggs further objects to this Request to the extent it is propounded for the improper, vexatious purpose of harassing or intimidating Patton Boggs, including attempting to discover Patton Boggs' flatly privileged enforcement strategy pertaining to the Lago Agrio Judgment.

Not only does this Request purport to seek documents facially "RELATING TO the contents of the INVICTUS MEMO" it also necessarily includes any documents or communications prepared by Patton Boggs, its co-counsel, or clients' agents in connection with responding Chevron's allegations in this Court, the Second Circuit, and in other U.S. and Ecuadorian proceedings concerning the INVICTUS MEMO and its contents and implications. Relatedly, Patton Boggs objects to the Request insofar as it purports to impose upon Patton Boggs an obligation to filter or exclude documents previously produced to Chevron or any Chevron-aligned person in the course of the 1782 ACTIONS initiated by Chevron, or any of the CHEVRON LITIGATIONS, and specifically *In re Application of Chevron Corp. (Donziger)*,

No. 10-cv-0002 (S.D.N.Y.), or to identify documents already in Chevron's possession and to which Chevron has ready access, because it is burdensome, duplicative, oppressive, and a requirement not imposed by the Federal Rules of Civil Procedure or this Court's Local Rules, and Patton Boggs reserves its right to refrain from re-producing such documents and hereby directs Chevron to those previously-produced documents, including documents from public sources that are equally available to Chevron. Patton Boggs reserves its right to re-assert those privilege claims over documents that certain courts previously deemed waived where those orders were ultimately held to have been improvidently granted.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to the extent this Request purports to seek those documents and communications that are quintessential protected material comprising significant portions of the litigation file for active counsel in the ongoing CHEVRON LITIGATIONS, including but not limited to documents and communications containing LAGO AGRIO JUDGMENT enforcement strategy. Thus, Patton Boggs further objects that the Request calls for the production of documents protected from disclosure by the work product doctrine, although, depending on the circumstances, it is possible that other protections would apply, including the attorney-client privilege, common-interest privilege, and privileges or protections for which the right of waiver may not be held by Patton Boggs.

Notwithstanding the foregoing objections, based on a preliminary review of Patton Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of documents that may be in its possession, as drafted, Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- drafts of the INVICTUS MEMO;

- memoranda and other documents containing research related to litigation strategy; and

- internal (between and among Patton Boggs professionals) and external (between and among Patton Boggs professionals and its clients' agents) communications discussing litigation and enforcement and attachment strategy.

To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| March 12, 2012 | Edward M. Yennock, Esq. (Patton Boggs) | Sean Neafsey, Esq. (Patton Boggs); Erica R. Stein, Esq. (Patton Boggs); John Prisco, Esq. (Patton Boggs); Ricarrdo DeBari, Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation reflecting thoughts, impressions, and case strategy in connection with judgment enforcement. | March 12, 2012 | Edward M. Yennock, Esq. (Patton Boggs) |

**DOCUMENT REQUEST NUMBER 52:**

All DOCUMENTS RELATED TO COMMUNICATIONS with stock market analysts, energy industry analysts, energy industry journalists, or other MEDIA professionals RELATED TO CABRERA, alleged remediation costs or remediation damages in the Oriente attributable to CHEVRON, the extent of the alleged environmental harms in the Oriente attributable to CHEVRON, any alleged fraud in connection with the TEXPET REMEDIATION AND RELEASE, the supposed independence of the LAGO AGRIO PLAINTIFFS from the Ecuadorian Government, and the supposed independence or integrity of the Ecuadorian judiciary in adjudicating the CHEVRON LITIGATIONS.

**OBJECTION TO DOCUMENT REQUEST NUMBER 52:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, COMMUNICATIONS, CHEVRON, MEDIA, CHEVRON LITIGATIONS and TEXPET REMEDIATION AND RELEASE in full as if fully set forth herein.

Patton Boggs also objects that, as drafted, this single Request is actually comprised of 60 requests and is thus unreasonably compound.  In total, factoring in Chevron's over-broad definitions of LAGO AGRIO PLAINTIFFS and MEDIA professionals, and the myriad number of other unidentified and unlimited groups of individuals, the Request seeks to identify documents "RELATED TO COMMUNICATIONS" for 10 entities and individuals, all relating to six distinct topics of inquiry.  The Request should be withdrawn or stricken for this reason alone.  Patton Boggs also submits that as a non-party law firm, and active litigation counsel, there are parties better situated to produce the information Chevron here seeks.  For example, Chevron has already served 67 subpoenas on other non-parties (*see generally* Marino Decl., Dkt. 529-0–529-15).  Further, Chevron did not take reasonable steps to narrowly tailor the Request, and the compound and confusing structure of this Request renders the Request unintelligible and without any discernable parameters as it presumes Patton Boggs has boundless knowledge of the nature of documents contemplated by and encompassed within the Request.

As drafted, this Request purports to call for the production, in part, of any draft press releases or communications RELATED TO those press releases on behalf of the LAGO AGRIO PLAINTIFFS.  That Patton Boggs might possesses drafts of such publicly disseminated documents is no secret and Patton Boggs' role in strategically advising its clients as to potential media avenues is not relevant to the fraud and other claims raised by Chevron in its Amended Complaint.  Patton Boggs further objects that this Request is overly broad and unduly

burdensome because it requires Patton Boggs to search its entire active litigation file, without subject-matter or date limitation.

Taken on its face, the magnitude of documents sought in the Request, if read literally, and the burden and expense imposed by the collection, review, and production efforts will be extraordinary and thus conflicts with Fed. R. Civ. P. 45(c)(1).  Patton Boggs also objects to this Request to the extent it calls for documents within the possession, custody, and control of—or available or accessible to—any other individuals or entities other than Patton Boggs.  Patton Boggs further objects to this Request to the extent it calls for documents already within the possession of Chevron or more easily accessible to Chevron from public sources or other third parties.

Patton Boggs objects to that portion of this Request that is crafted in such a manner as to cast aspersions upon, and trivialize the dignity of the Ecuadorian justice system, and to the extent the Request purports to seek documents in Patton Boggs' possession that call into question the "independence of the LAGO AGRIO PLAINTIFFS," Patton Boggs is simply not in possession of the materials sought.

Moreover, Chevron has repeatedly and blanketedly refused to produce similar documents.  For example:

| Defendant Stratus *in this very proceeding* requested Chevron produce: | Chevron indicated in its August 13, 2012 objections and responses to this request: |
|---|---|
| "All documents concerning advertisements in Ecuador (whether television, radio, or print) paid for by you or on your behalf concerning the Lago Agrio Action, including, but not limited to, all advertisements concerning Cabrera and/or the Cabrera Report." | "Based on and without waiving General Objections . . . Chevron will not produce any additional documents in response to this Request." |

*See Chevron Corp. v. Donziger, et al.*, at p. 28, No. 11-0691 (S.D.N.Y. Aug. 13, 2012).  Non-party Patton Boggs respectfully submits that it should not be held to standards different than those standards Chevron applies to itself.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the work product doctrine, although, depending on the circumstances, it is possible that other protections would apply, including the attorney-client privilege, common-interest privilege, and/or other applicable privileges, protections, immunities, or other limitations on discovery pursuant to the constitutions, laws, or judicial orders of tribunals of the United States and/or the Republic of Ecuador, and for which the right of waiver may not be held by Patton Boggs.

Notwithstanding the foregoing objections, based on a preliminary review of Patton Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of documents that may be in its possession, as drafted, Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- draft press releases containing comments evincing litigation strategy; and

- internal (between and among Patton Boggs professionals) and external (between and among Patton Boggs professionals and its clients' agents) communications discussing previously released or future press releases or other media-related material.

To further assist the Court, an exemplars of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

| Sept. 16, 2010 | Eric S. Westenberger, Esq. (Patton Boggs) | Andrew Wilson, Esq. (Emery Celli); Steven Donziger, Esq. (Donziger & Associates); Adlai J. J. Small, Esq. (Patton Boggs); Jonathan S. Abady, Esq. (Emery Celli); Ilann Maazel, Esq. (Emery Celli); William H. Narwold, Esq. (Motley Rice) Ingrid Moll, Esq. (Motley Rice); Matthew P. Jasinski, Esq. (Motley Rice); Eric R. Daleo, Esq. (Patton Boggs); Edward M. Yennock, Esq. (Patton Boggs); James E. Tyrrell, Jr., Esq. (Patton Boggs) | Email | Electronic correspondence, between and among Ecuadorian Plaintiffs' counsel, prepared in anticipation of litigation reflecting thoughts and impression in connection with case management. | Work Product |

## DOCUMENT REQUEST NUMBER 53:

All DOCUMENTS RELATED TO any protests, rallies, marches, demonstrations, or other events (as well as all DOCUMENTS RELATED TO the entities which have organized, promoted, financed, or otherwise furthered these activities) REGARDING CHEVRON or the CHEVRON LITIGATIONS.

## OBJECTION TO DOCUMENT REQUEST NUMBER 53:

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, CHEVRON, and CHEVRON LITIGATIONS in full as if fully set forth herein.

As an initial matter, Patton Boggs objects to Chevron's use of the term "other events," which renders the scope of this Request incomprehensible. Furthermore, Patton Boggs objects to this Request to the extent it assumes that Patton Boggs can identify the "entities which have

organized, promoted, financed, or otherwise furthered these activities," whatever "these activities" may be.  Relatedly, the decision of an NGO to support the cause of the Ecuadorian Plaintiffs with activism is so far afield of Chevron's RICO and fraud claims that to burden active litigation counsel with such a request is unwarranted.

Moreover, insofar as Chevron's use of the words "protests, rallies, marches, [and] demonstrations" appears to implicate public relations strategy, Patton Boggs objects to this Request on the grounds that it calls for the production of documents protected by the attorney-client privilege or the work product doctrine, and refers the Court to the discussion of privilege set forth in the Ecuadorian Plaintiffs' Objection to Document Request Number 47, *supra*.

**Potential and Non-Exclusive Privilege Categories**

Patton Boggs objects to this Request to the extent it calls for the production of documents that are protected from disclosure by the attorney-client privilege, the work product doctrine, or both.  Based on a preliminary review of Patton Boggs' documents and Patton Boggs' understanding of documents that may be in its possession, Patton Boggs has yet to identify any documents that might fall within the ambit of this Request.

**DOCUMENT REQUEST NUMBER 54:**

All DOCUMENTS RELATED TO any COMMUNICATIONS between any of the LAGO AGRIO PLAINTIFF RELATED PARTIES, on the one hand, and any non-governmental organization ("NGO") or its employees, on the other hand, REGARDING CHEVRON or the CHEVRON LITIGATIONS.

**OBJECTION TO DOCUMENT REQUEST NUMBER 54:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, COMMUNICATIONS, LAGO

AGRIO PLAINTIFF RELATED PARTIES, REGARDING, CHEVRON, and CHEVRON LITIGATIONS in full as if fully set forth herein.

Patton Boggs specifically objects to the Subpoena's use of the undefined term "any non-governmental organization ('NGO') or its employees." Patton Boggs respectfully submits that Chevron has not tailored this Request in any way to lead the admission of relevant evidence. The term non-governmental organization ("NGO") refers generally to "organizations which have not been established by governments or agreements among governments" and is known to be include "BINGOs (business international NGOs), RINGOs (religious international NGOs), ENGOs (environmental NGOs), GONGOs (government-operated NGOs – which may have been set up by governments to look like NGOs in order to qualify for outside aid), QUANGOs (quasi-nongovernmental organizations . . . and many others." *See* Carolyn Stephenson, *What Are Nongovernmental Organizations*, Univ. of Colo. Conflict Information Consortium (Jan. 2005), *available at* http://www.beyondintractability.org/bi-essay/role-ngo (last visited Aug. 31, 2012). At last count, there were over 13,591 NGOs, presumably employing hundreds of thousands of employees. *Id.* (citing *Yearbook of International Organizations*, 1990-91. Table 4, pp. 1665-68.) Chevron does not provide any illustrative examples of an NGO. As drafted, Patton Boggs would not be in a position to populate search terms to possibly capture every "non-governmental organization or its employees" as the Subpoena purports to require. For these and other reasons, the Request as drafted is ambiguous, vague, and burdensome.

Patton Boggs further objects to the extent that the Request is not narrowly tailored to seek specific documents that support its fraud and other claims set forth in Chevron's Amended Complaint. The Request, as drafted, broadly seeks all documents "RELATED TO . . . CHEVRON" and not even limited to the Ecuadorian litigation (meaning that if a Patton Boggs

professional received a newsletter from an NGO that Chevron sponsors, to the extent Chevron's name is listed in the newsletter, the publication could be potentially responsive to the Subpoena as drafted) .  Patton Boggs further objects to Chevron attempting to obtain such documents directly from the non-party law firm, as opposed to pursuing Rule 45 Subpoenas and other discovery vehicles available to obtain documents from non-governmental organization employees.  Patton Boggs also objects to the extent the Subpoena seeks not just communications with "any non-governmental organization," but also documents "RELATED TO" such communications.

## Potential and Non-Exclusive Privilege Categories

Patton Boggs objects to this Request to the extent it calls for the production of documents protected from disclosure by the attorney-client privilege, work product doctrine, or both, or are confidential.  Notwithstanding the foregoing objections, based on a preliminary review of Patton Boggs' documents that may be responsive to this Request and Patton Boggs' understanding of documents that may be in its possession, as drafted, Patton Boggs submits that this Request may call for the production of the following categories of material that is or may be protected from disclosure:

- Research and analysis in connection with submissions by Chevron to the Ecuadorian Court purporting to discuss the relationship between the Afectados and what may possibly be considered a non-governmental organization; and

- Documents, including internal memoranda, reflecting legal strategy in connection with contemplated or actual amicus brief filings before the United States Court of Appeals for the Second Circuit in connection with appeal of this Court's Preliminary Injunction.

These documents may be protected from disclosure under the attorney-client privilege, work product doctrine, and/or other legal protections.  To further assist the Court, an exemplars

of certain, specific documents that may be responsive to this Request, as drafted, and without limitation, are set forth immediately below.

## DOCUMENT REQUEST NUMBER 55:

All DOCUMENTS RELATED TO COMMUNICATIONS among the LAGO AGRIO PLAINTIFF RELATED PARTIES REGARDING any plan on the part of any LAGO AGRIO PLAINTIFF RELATED PARTIES, COURT EXPERTS, or other deponents, to avoid providing responsive answers to questioning during depositions conducted in the CHEVRON LITIGATIONS, including but not limited to the 1782 ACTIONS.

## OBJECTION TO DOCUMENT REQUEST NUMBER 55:

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, COMMUNICATIONS, LAGO AGRIO PLAINTIFF RELATED PARTIES, COURT EXPERTS, CHEVRON LITIGATIONS, 1782 ACTIONS, and REGARDING in full as if fully set forth herein.  Patton Boggs objects that it does not have in its possession, custody, or control, any documents responsive to this Request. Indeed, Patton Boggs never obstructed any depositions by having deponents attempt to avoid providing responsive answers to questioning.  Patton Boggs further objects to this Request to the extent it is propounded for the improper, vexatious purpose of harassing or intimidating Patton Boggs.

## DOCUMENT REQUEST NUMBER 56:

All DOCUMENTS RELATED TO any tampering or influencing of any witness' testimony in any of the CHEVRON LITIGATIONS whether made or contemplated, including the discouragement of witnesses from appearing for their depositions.

**OBJECTION TO DOCUMENT REQUEST NUMBER 56:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS and RELATED TO in full as if fully set forth herein. Patton Boggs objects that it does not have in its possession, custody, or control, any documents responsive to this Request.  Indeed, Patton Boggs never tampered with or influenced any witness' testimony in any of the CHEVRON LITIGATIONS.  Patton Boggs further objects to this Request to the extent it is propounded for the improper, vexatious purpose of harassing or intimidating Patton Boggs.

**DOCUMENT REQUEST NUMBER 57:**

All DOCUMENTS RELATED TO any THREATS made by any of the LAGO AGRIO PLAINTIFF RELATED PARTIES to any individual who has testified, or been deposed during the LAGO AGRIO LITIGATION or the 1782 ACTIONS.

**OBJECTION TO DOCUMENT REQUEST NUMBER 57:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, THREATS, 1782 ACTIONS and LAGO AGRIO PLAINTIFF RELATED PARTIES in full as if fully set forth herein.  Patton Boggs objects that it does not have in its possession, custody, or control, any documents responsive to this Request.  Indeed, no threats were ever made on behalf of Patton Boggs to any individual who has testified or been deposed during the LAGO AGRIO LITIGATION or the 1782 Actions.  Patton Boggs further objects to this Request to the extent it is propounded for the improper, vexatious purpose of harassing or intimidating Patton Boggs.

**DOCUMENT REQUEST NUMBER 58:**

All DOCUMENTS RELATED TO COMMUNICATIONS between and among the LAGO AGRIO PLAINTIFF RELATED PARTIES, whether or not including any third party,

REGARDING efforts to delay or obstruct CHEVRON's discovery efforts in any of the CHEVRON LITIGATIONS.

**OBJECTION TO DOCUMENT REQUEST NUMBER 58:**

Patton Boggs repeats and incorporates by reference its objections to Chevron's definitions for the terms DOCUMENTS, RELATED TO, COMMUNICATIONS, LAGO AGRIO PLAINTIFF RELATED PARTIES, REGARDING, CHEVRON, CHEVRON LITIGATIONSF in full as if fully set forth herein. Patton Boggs objects that it does not have in its possession, custody, or control, any documents responsive to this Request. Indeed, Patton Boggs never undertook any efforts to delay or obstruct CHEVRON's discovery efforts in any of the CHEVRON LITIGATIONS. Rather, Patton Boggs is permitted, and indeed has always and continues, to represent its clients to the fullest extent possible. Patton Boggs further objects to this Request to the extent it is propounded for the improper, vexatious purpose of harassing or intimidating Patton Boggs.

Dated: September 7, 2012                          Respectfully submitted,

S. Alyssa Young
LEADER & BERKON LLP
630 Third Avenue
New York, New York 10017
Telephone:  (212) 486-2400
Facsimile:  (212) 486-3099

*Attorneys for Non-Party Patton Boggs LLP*