# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEVRON CORPORATION,<br><br>                    Plaintiff,<br><br>       v.<br><br>STEVEN DONZIGER, THE LAW<br>OFFICES OF STEVEN R. DONZIGER,<br>et al.,<br><br>                    Defendants. | **CASE NO. 11-CV-0691(LAK)** |

**DEFENDANTS HUGO GERARDO CAMACHO NARANJO AND
JAVIER PIAGUAJE PAYAGUAJE'S MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**

349738.5

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT ..............................................................................................................................3

    I.     Legal Standard ................................................................................................................3

    II.    Chevron fails to state a claim for common law fraud against
          Camacho or Piaguaje .....................................................................................................5

         A.    New York law does not recognize a fraud claim premised on
               misrepresentations to third parties, not communicated to or
               relied on by the plaintiff............................................................................ 6

         B.    None of Chevron's theories state a common law fraud claim. ................ 14

               1.    Chevron's fraud allegations, based on statements
                     made to a foreign court or as part of an ongoing
                     lawsuit, might state a defense to enforcement of the
                     judgment, but not an affirmative claim for money damages. ....... 14

                   a.    There is a difference between common law fraud and
                         a fraud defense to enforcement of a foreign judgment. .... 14

                   b.    The allegedly fraudulent statements are protected by
                         *Noerr-Pennington* and the litigation privilege
                         and cannot form the basis of a fraud claim. ..................... 17

                 2.    Chevron's fraud claim based on "fraud by the court" fails. ......... 18

                 3.    Chevron's fraud claim based on "fraud on the public" fails......... 19

         C.    Chevron's fraud claim fails to meet the Rule 9(b) standard. ................... 19

                 1.    The Amended Complaint does not identify the speaker.............. 21

                 2.    The Amended Complaint does not allege that Camacho or
                       Piaguaje participated in any alleged fraudulent statements. ........ 21

                 3.    The Amended Complaint does not allege facts showing
                     proximate causation. .................................................................... 23

    III.    The tortious interference claim is time barred. .......................................................24

    IV.    The trespass to chattels claim is without merit. .....................................................25

    V.     The unjust enrichment claim fails because Camacho and Piaguaje
          have not been enriched at Chevron's expense. ......................................................25

    VI.    Chevron's civil conspiracy claim fails along with its other common-law
          claims. ............................................................................................................................26

    VII.    Any "claim" of vicarious RICO liability should be dismissed. .............................27

CONCLUSION...........................................................................................................................29

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abacus Fed. Sav. Bank v. Lim*,
    75 A.D.3d 472 (2010) ........................................................................................26

*Abbatiello v. Monsanto Co.*,
    522 F. Supp. 2d 524 (S.D.N.Y. 2007)................................................................13

*Adelphia Recovery Trust v. Bank of America, N.A.*,
    624 F. Supp. 2d 292 (S.D.N.Y. 2009)..................................................................7

*Agency Holding Corp. v. Malley-Duff & Associates, Inc.*,
    483 U.S. 143 (1987)...........................................................................................28

*Alnwick v. European Micro Holdings, Inc.*,
    281 F.Supp.2d 629 (S.D.N.Y. Sept. 15, 2003) ..................................................21

*Am. Bldg. Maint. Co. of N.Y. v. Acme Prop. Servs., Inc.*,
    515 F. Supp. 2d 298 (N.D.N.Y. 2007)...........................................................27, 28

*Am. Financial Int'l Group-Asia, L.L.C. v. Bennett*,
    2007 WL 1732427 (S.D.N.Y. June 14, 2007) ....................................................13

*Amusement Indus., Inc. v. Stern*,
    693 F. Supp. 2d 327 (S.D.N.Y. 2010) (Kaplan, J.).........................................5, 9

*Anudokem v. Am. Home Mortg. Servicing, Inc.*,
    C09-01660 HRL, 2010 WL 532440 (N.D. Cal. Feb. 9, 2010) .............................22

*Apace Communications, Ltd. v. Burke*,
    522 F. Supp. 2d 509 (W.D.N.Y. 2007) .........................................................20, 26

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .............................................................4

*Ashley v. Dixon*,
    48 N.Y. 430 (1872) ............................................................................................10

*Aymes v. Gateway Demolition, Inc.*,
    817 N.Y.S.2d 233 (App. Div. 1st Dep't 2006) ...................................................12

*Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*,
    820 F. Supp. 2d 490 (S.D.N.Y. 2011) *aff'd sub nom. Baldessarre ex rel. Baldessarre*
    *v. Monroe-Woodbury Cent. Sch. Dist.*, 11-2835-CV, 2012 WL 4039986 (2d Cir. Sept.
    14, 2012) .............................................................................................................4

ii

*Barnhardt v. Federated Dep't Stores, Inc.*,
   No. 04 Civ. 3668, 2005 U.S. Dist. LEXIS 3631 (S.D.N.Y. Mar. 5, 2005)............................13

*Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.*,
   229 F.3d 1135, No. 00-7302, 2000 WL 1508873 (2d Cir. Oct. 11, 2000) .............................17

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ............................................................4

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*,
   448 F.3d 573 (2d Cir. 2006)........................................................................................................25

*Bruff v. Mali*,
   36 N.Y. 200 (1867) .............................................................................................................. *passim*

*Burns v. Int'l Sec. Servs. v. Int'l Union*,
   47 F.3d 14 (2d Cir. 1995)..............................................................................................................4

*Buxton Mfg. Co. v. Valiant Moving & Stor., Inc.*,
   239 A.D.2d 452 (N.Y. App. Div. 1997) .....................................................................................13

*Campbell v. Thales Fund Mgmt., LLC*,
   2010 WL 4455299 (S.D.N.Y. Oct. 12, 2010) ............................................................................27

*Carpet Group Int'l v. Oriental Rug Imps. Ass'n*,
   256 F.Supp.2d 249 (S.D.N.Y.2003).............................................................................................17

*Castellano v. Young & Rubicam, Inc.*,
   257 F.3d 171 (2d Cir. 2001)........................................................................................................23

*Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo*,
   148 F.3d 194 (2d Cir. 1998)......................................................................................................7, 8

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)..........................................................................................................4

*City of New York v. Cyco.Net, In*c.,
   383 F. Supp. 2d 526 (S.D.N.Y. 2005)........................................................................................13

*City of New York v. Smokes-Spirits.Com, Inc.*,
   541 F.3d 425 (2d Cir. 2008)......................................................................................................7, 8

*Coastal States Mktg., Inc. v. Hunt*,
   694 F.2d 1358 (5th Cir. 1983) ...................................................................................................17

*DDR Const. Services Inc. v. Siemens Industry, Inc.*,
   2011 WL 982049 (S.D.N.Y. Mar. 22, 2011) .............................................................................27

iii

*Desser v. Schatz,*
    182 A.D.2d 478 (N.Y. App. Div. 1992) ...............................................................13

*Eaton, Cole & Burnham Co. v. Avery,*
    83 N.Y. 31 (1880) ........................................................................... *passim*

*Escoett & Co. v. Alexander & Alexander, Inc.,*
    296 N.Y.S.2d 929.....................................................................................12

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Intern. N.V.,*
    400 Fed. Appx. 611 (2d Cir. 2010) .........................................................13

*Filler v. Hanvit Bank,*
    01 CIV. 9510 (MGC), 2003 WL 22110773 (S.D.N.Y. Sept. 12, 2003) .....................19, 20, 26

*Fisher v. APP Pharmaceuticals, LLC,*
    783 F. Supp. 2d 424 (S.D.N.Y. 2011) ....................................................22

*FSP, Inc. v. Societe Generale,*
    02CV4786GBD, 2005 WL 475986 (S.D.N.Y. Feb. 28, 2005)................................22

*Garelick v. Carmel,*
    529 N.Y.S.2d 126......................................................................................12

*Hayden v. Paterson,*
    594 F.3d 150 (2d Cir. 2010).......................................................................3

*In re Crude Oil Commodity Litigation,*
    No. 06 Civ. 6677, 2007 WL 1946553 (S.D.N.Y. June 28, 2007)............................21

*In re Joint E. & S. Asbestos Litig.,*
    88 CIV. 1286 (PNL), 1990 WL 124330 (S.D.N.Y. Aug. 20, 1990)........................7

*Itzkoff v. F & G Realty of N.J. Corp.,*
    890 F. Supp. 351 (D.N.J. 1995) ................................................................8

*Kelly v. L.L. Cool J.,*
    145 F.R.D. 32 (S.D.N.Y. 1992) ...............................................................12

*Korangy Publ'g, Inc. v. Miceli,*
    No. 110327/08, 2009 WL 586131 (N.Y. Sup. Ct. N.Y. Co. Feb. 27, 2009) ...........12

*Leber–Krebs, Inc. v. Capitol Records,*
    779 F.2d 895 (2d Cir.1985).......................................................................15, 16

*Lerner v. Fleet Bank, N.A.,*
    459 F.3d 273 (2d Cir. 2006).....................................................................19, 26

iv

*Linens of Europe, Inc. v. Best Mfg., Inc.*,
  2004 WL 2071689 (S.D.N.Y. Sept. 16, 2004)........................................................................24

*Litvinov v. Hodson*,
  74 A.D.3d 1884 (N.Y. App. Div. 2010) ...............................................................................12

*Luna v. U.S.*,
  454 F.3d 631 (7th Cir. 2006) ...............................................................................................8

*Luxpro Corp. v. Apple Inc.*,
  C 10-03058 JSW, 2011 WL 1086027 (N.D. Cal. Mar. 24, 2011) ..........................................17

*Marketplace LaGuardia Ltd. P'ship v. Harkey Enter., Inc.*,
  No. 07-CV-1003 (CBA), 2008 WL 905188 (E.D.N.Y. Mar. 31, 2008)................................25

*Martirano v. Frost*,
  25 N.Y.2d 505 (1969) ...........................................................................................................17

*Matsushita Electronics Corp. v. Loral Corp.*,
  974 F. Supp. 345 (S.D.N.Y. 1997) ........................................................................................17

*McCarthy v. Olin Corp.*,
  119 F.3d 148 (2d Cir. 1997).................................................................................................12

*Mikhlin v. HSBC*,
  No. 08-CV-1302(CPS), 2009 WL 485667 (E.D.N.Y. Feb.26, 2009)..............................28, 29

*Mills v. Polar Molecular Corp.*,
  12 F.3d 1170 (2d Cir. 1993)............................................................................................21, 22

*Morris v. Castle Rock Entm't, Inc.*,
  246 F. Supp. 2d 290 (S.D.N.Y. 2003)....................................................................................13

*Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs., Div. of/and Am. Home Prods. Corp.*,
  850 F.2d 904 (2d Cir. 1988)................................................................................................4

*Norris v. Grosvenor Mktg. Ltd.*,
  803 F.2d 1281 (2d Cir. 1986)...............................................................................................24

*Orlin v. Torf*,
  513 N.Y.S.2d 870 (3d Dep't 1987) ........................................................................................12

*Pensee Assoc. v. Quon Indus.*,
  660 N.Y.S.2d 563,567 (N.Y. A.D. [1st Dep't] 1997)............................................................12

*Reiser v. Residential Funding Corp.*,
  380 F. 3d 1027 (7th Cir. 2004) .............................................................................................8

*Rice v. Manley*,
    66 N.Y. 82 (1876) ..................................................................................8, 10, 11

*Ruffing v. Union Carbide Corp.*,
    308 A.D.2d 526 (N.Y. App. Div. 2003) ..................................................12

*School of Visual Arts v. Kuprewicz*,
    3 Misc.3d 278, 771 N.Y.S.2d 804 (N.Y. Sup. Ct. 2003) ........................25

*Sedona Corp. v. Ladenburg Thalmann & Co., Inc.*,
    No. 03Civ.3120, 2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005) ..............21

*Sellers v. M.C. Floor Crafters, Inc.*,
    842 F.2d 639 (2d Cir. 1988)......................................................................4

*Snow v. Judson*,
    38 Barb. 210 (N.Y. 1862) ........................................................................11

*Turtur v. Rothschild Registry Int'l, Inc.*,
    26 F.3d 304 (2d Cir. 1994)........................................................................9

*U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*,
    152 F. Supp. 2d 443 (S.D.N.Y. 2001).....................................................24

*USC Certified Merchs., LLC v. Koebel*,
    262 F.Supp.2d 319 (S.D.N.Y. 2003)........................................................28

*Weldon v. United States*,
    225 F.3d 647, 2000 WL 1134358 (2d Cir. Aug. 9, 2000) .......................15

*Woodling v. Garrett Corp.*,
    813 F.2d 543 (2d Cir. 1987)......................................................................7

STATUTES

U.S. CONST. amend. I ...........................................................................................17, 18

FED. R. CIV. P. (9)(b).........................................................................................*passim*

FED. R. CIV. P. 12(b)(6) .........................................................................................3, 4

FED. R. CIV. P. 12(c) ..............................................................................................3, 4

FED. R. CIV. P. 12(e)...............................................................................................24

FED. R. CIV. P. 12(h)(2) ...........................................................................................3

FED. R. CIV. P. 60(b) ..........................................................................................15, 16

N.Y. C.P.L.R. § 5304 ............................................................................................................14

**OTHER AUTHORITIES**

Harvey S. Perlman, "Interference with Contract and Other Economic Expectancies: A
    Clash of Tort and Contract Doctrine," 49 U. Chi. L. Rev. 61, 72 (1982) ...............................11

Restatement (Second) of Torts, § 533 .........................................................................................13

349738.5

## PRELIMINARY STATEMENT

Chevron Corporation sued two residents of the rainforest, Defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje, for alleged fraudulent statements that they never made and that Chevron never relied on.  Chevron's fraud claim is actually just a repackaging of a defense to enforcement of the Ecuadorian judgment, and it is not cognizable as an affirmative claim for damages.  Chevron also seeks to hold Camacho and Piaguaje liable for conspiracy to commit fraud, but the complaint does not refer to any agreement to conspire or any culpable act by Camacho or Piaguaje.  These claims fail as a matter of law.

In addition to the reasons set forth in the Court's prior decisions dismissing the first-party fraud and other claims asserted by Chevron, (e.g., Dkt. 468), the Court should dismiss Chevron's two remaining claims against Camacho and Piaguaje for the following reasons:

First, Chevron's fraud claim based on third-party reliance is not cognizable under New York law.  The Second Circuit's recent decisions rejecting fraud based on third-party reliance are binding on this Court.  And the weight of other authority rejects any fraud claim based on pure third-party reliance.  New York's highest court has never allowed a third-party fraud claim on facts even remotely similar to this case.  In fact, New York's highest court has allowed fraud claims based on representations to third parties when they are relied on by the *plaintiff*, not when reliance is solely by a third party.  The case law thus allows for indirect reliance, but not pure third-party reliance as Chevron alleges here.  Chevron has not alleged that it relied on any alleged misrepresentations, directly or indirectly.  Chevron's fraud claim fails as a matter of New York law.

Second, Chevron's "third-party fraud" claim is yet another impermissible means of

Chevron attempting to nullify the judgment it lost.[1]  Chevron has not cited a single case in which any New York court recognized a cause of action for third-party fraud in connection with alleged misrepresentations made to a court in the course of pending litigation.  Allowing such a claim would turn the tort of "fraud" on its head, violate the common law privilege for litigation statements, and defeat the purpose of the fraud-based defenses to enforcement of a judgment.

Chevron knew of every argument—even if not the exact wording—contained in the alleged misrepresentations, including the arguments presented in the challenged Cabrera and Calmbacher expert reports, and presented its contrary arguments to the courts in Ecuador.  The alleged fraudulent statements did not prevent Chevron from making any argument or presenting any evidence.  How can Chevron claim that the Ecuadorian court was "defrauded" when Chevron presented all of its evidence to the court for its consideration?  More importantly, Chevron can attempt to present its "fraud" arguments in response to any enforcement action and attempt to obtain a finding that the judgment is not entitled to recognition and should not be enforced on the basis of the alleged fraud.  Allowing a separate, affirmative fraud claim under these circumstances is duplicative, wasteful, improper, and contrary to law.

Third, Chevron's fraud claim fails to comply with Federal Rule of Civil Procedure (9)(b).  The Amended Complaint does not include any relevant facts about Camacho or Piaguaje.  Chevron does not allege that Camacho or Piaguaje made any allegedly fraudulent representations.  Nor does Chevron allege any facts showing that Camacho or Piaguaje knew about or participated in any alleged misrepresentations made by others.  Conclusory allegations that a fraud defendant "knew or should have known" about false statements are insufficient as a

---

[1] With the United States Supreme Court's rejection on October 9, 2012 of Chevron's Petition for Writ of Certiorari seeking review of the Second Circuit's dissolution of Chevron's worldwide anti-enforcement injunction, Chevron has now lost its effort to dodge responsibility for the Ecuadorian environmental disaster in every U.S. appellate court that has addressed the matter.  The Supreme Court's action is significant because Chevron dumped its usual lengthy and factually distorted "fraud story" in the Petition and the Supreme Court denied certiorari nonetheless.

matter of law.  Furthermore, Chevron fails to adequately plead the required proximate causation because none of the alleged statements caused the Ecuadorian trial court to render judgment against Chevron.

Fourth, because Chevron has not sufficiently alleged a fraud claim against Camacho or Piaguaje, Chevron's civil conspiracy claim fails as well.  There is no other viable independent tort to serve as the basis for conspiracy.  Moreover, Chevron's lumped references to "Defendants" and failure to allege facts showing any agreement or action by Camacho or Piaguaje are fatal to the conspiracy claim against these two Ecuadorians.

Finally, although Chevron has suggested that Camacho and Piaguaje are vicariously liable under RICO, there are no allegations in the Amended Complaint to support such a claim and Chevron's suggestions of vicarious RICO liability are wrong as a matter of law.

The Court should dismiss Chevron's claims against Camacho and Piaguaje.[2]

## ARGUMENT

### I.     Legal Standard

Rule 12(c) governs motions for judgment on the pleadings.  Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.").  When deciding a Rule 12(c) motion, the Court applies the same standard that would be applied to a Rule 12(b)(6) motion to dismiss.  *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010); *see also Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs., Div. of/and Am. Home Prods. Corp.*, 850 F.2d 904, 909 n. 2 (2d Cir. 1988) ("Pursuant to Fed. R. Civ. P. 12(h)(2) . . . a defense of failure to state a claim may be raised in a Rule 12(c) motion for judgment on the pleadings, and when this occurs the court simply treats the motion as if it were a

---

[2] This motion is made subject to and without waiver of Camacho's and Piaguaje's contest of personal jurisdiction.

motion to dismiss.").   Under Rule 12(b)(6), a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (internal citations and quotations omitted).   A plaintiff must allege enough facts to state a claim to relief that is "plausible" on its face. *Id.* at 1974.   "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009).   Judgment is also appropriate if, based solely on the contents of the pleadings, the moving party is entitled to judgment as a matter of law.  *Burns v. Int'l Sec. Servs. v. Int'l Union*, 47 F.3d 14, 15 (2d Cir. 1995); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).

"When considering a Rule 12(c) motion, 'a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.'"  *Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 500 (S.D.N.Y. 2011) *aff'd sub nom. Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 11-2835-CV, 2012 WL 4039986 (2d Cir. Sept. 14, 2012). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).   "Finally, the Court may also look to 'matters of which judicial notice may be taken,' 'even if the corresponding documents are not attached to[ ] or incorporated by reference in the complaint.'" *Baldessarre*, 820 F. Supp. 2d at 500.

4

## II.    Chevron fails to state a claim for common law fraud against Camacho or Piaguaje

Chevron has three theories that underlie its claim of common law fraud: (1) fraud on the court; (2) fraud by the court; and (3) fraud on the public.  First, Chevron alleges that Defendants made misrepresentations to the court in Ecuador, which deceived the court and resulted in the judgment against Chevron.   Second, and in the alternative, Chevron alleges that Defendants participated in a fraud by the court in Ecuador, which resulted in the judgment.[3]   Finally, Chevron alleges that Defendants made fraudulent statements to third parties such as investors, analysts, and government officials.

The elements of fraud under New York law are: "(1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant intended to deceive *plaintiff*; (4) *plaintiff* believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss."  *Amusement Indus., Inc.  v. Stern*, 693 F. Supp. 2d 327, 347 (S.D.N.Y. 2010) (Kaplan, J.) (emphasis added) (quoting *Ross v. Louis Wise Servs., Inc.*, 8 N.Y.3d 478, 488 (2007)).

All three of Chevron's fraud theories fail because they are premised on reliance by third parties, which is not cognizable under New York law.  The Second Circuit has interpreted New York law and concluded that a plaintiff cannot pursue a fraud claim based on third-party reliance.  This Court is bound to follow the Second Circuit's interpretation.  Moreover, the New York state court decisions demonstrate that no claim of third-party fraud can survive based on the facts of this case.

In addition, there is no independent cause of action for fraud on the court or fraud by the court, only a potential defense to enforcement of the judgment.   A judgment debtor cannot

---

[3] The Defendants could not simultaneously "defraud" the court in Ecuador while participating in a "fraud "by the court in Ecuador.  They did neither, but the point is that Chevron's fraud theories are mutually exclusive.

pursue money damages against a judgment creditor based on alleged fraud in connection with the judgment. And a claim of "fraud by the court," *e.g.* ghostwritten judgment, does not fit into any of the elements outlined above, including that the defendant made a representation to the plaintiff upon which the plaintiff reasonably and justifiably relied to its detriment. Allowing such a claim would be an attempt to place a round peg into a square hole. Neither Chevron nor the Ecuadorian court is "relying" on the statements by the Ecuadorian court; presumably the only party relying on the Ecuadorian judgment is an enforcement court. If fraud indeed occurred, that could potentially be addressed by the enforcement court, not by this Court via a common law fraud claim. For these reasons, claims of fraud in connection with a judgment may be raised as a potential defense to enforcement, but not an affirmative claim for common-law fraud.

Chevron's fraud claim also fails because the allegations in the Amended Complaint do not meet the common law elements outlined above, do not meet the Rule 9(b) standard, and do not create a causal link between any alleged misrepresentations and any damage to Chevron.

### A.   New York law does not recognize a fraud claim premised on misrepresentations to third parties, not communicated to or relied on by the plaintiff.

Chevron asserts that Camacho and Piaguaje should be liable for fraud even though Chevron does not allege that Chevron received or relied on any fraudulent statements to its detriment. Those are required elements of a fraud claim. Chevron's claim fails as a matter of law.[4]

All of the misrepresentations alleged in the Amended Complaint were directed to third-parties (*e.g.,* U.S. and Ecuadorian courts and government officials, and investors, analysts and

---

[4] Chevron's Amended Complaint does not point to any alleged misrepresentation on which Chevron relied to its detriment. As this Court recognized, "Chevron, to the extent its claim rests on its own alleged reliance on defendants' misstatements therefore fails to state a legally sufficient claim for common law fraud." (Dkt. 468, at 40.)

media) with the alleged intent of deceiving those third parties, not Chevron.[5]   New York law

does not permit a fraud claim premised on third-party reliance.  *See City of New York v. Smokes-*

*Spirits.Com, Inc.*, 541 F.3d 425, 545 (2d Cir. 2008), *overruled on other grounds by Hemi Group,*

*LLC v. City of New York*, 130 S.Ct. 983 (2010) ("allegations of third-party reliance . . . are

insufficient to make out a common law fraud claim under New York law"); *Cement & Concrete*

*Workers Dist. Council Welfare Fund v. Lollo*, 148 F.3d 194, 196 (2d Cir. 1998) (New York law)

("[A] plaintiff does not establish the reliance element of fraud . . . by showing only that a third

party relied on defendant's false statements . . . .").

When the Second Circuit has rendered a decision interpreting New York law, that

interpretation is binding on this Court unless an intervening decision of the state's highest court

has resolved the issue.  *Adelphia Recovery Trust v. Bank of America, N.A.*, 624 F. Supp. 2d 292,

309-10 (S.D.N.Y. 2009) ("In the Second Circuit, a federal district court will 'conclusively defer

to a federal court of appeals' interpretation of the law of a state that is within its circuit.")

(quoting *Booking v. General Star Mgmt. Co.*, 254 F.3d 414, 421 (2d Cir. 2001)); *see also*

*Woodling v. Garrett Corp.*, 813 F.2d 543, 557 (2d Cir. 1987) ("A ruling of one panel of this

Circuit on an issue of state law normally will not be reconsidered by another panel absent a

subsequent decision of a state court or of this Circuit tending to cast doubt on that ruling."); *In re*

*Joint E. & S. Asbestos Litig.*, 88 CIV. 1286 (PNL), 1990 WL 124330, at *5 (S.D.N.Y. Aug. 20,

1990) (following Second Circuit's interpretation of state law despite intermediate state court

holdings to the contrary).  "If a district court concludes that the intermediate state appellate

courts have correctly answered a question [that a circuit] court botched, it should report its

---

[5] Chevron has previously claimed that "Donziger and the other defendants made false statements directly to Chevron," citing ¶¶ 109-121, 187-88, 235, and 246-59 of the Amended Complaint.  (Dkt. 324, at 26.)  But all of those paragraphs concern alleged representations made in court filings and to investors and the media—they do not allege misrepresentations made directly by Camacho or Piaguaje to Chevron.

conclusions while applying the existing law of the circuit." *Luna v. U.S.*, 454 F.3d 631, 636 (7th Cir. 2006); *see also Reiser v. Residential Funding Corp.*, 380 F. 3d 1027, 1029 (7th Cir. 2004) (admonishing district court for failing to follow federal precedent interpreting state law); *Itzkoff v. F & G Realty of N.J. Corp.*, 890 F. Supp. 351, 356 (D.N.J. 1995) (holding that "the Court is of course bound by any Third Circuit decisions regarding how the New Jersey Supreme Court would rule"). This Court cannot disregard the Second Circuit's relatively recent decisions in *Cement & Concrete Workers* and *Smokes-Spirits.Com*, both of which concluded that New York law does not permit a fraud claim based on third-party reliance.

Notwithstanding this direct Second Circuit authority, this Court has concluded that "old but square holdings by the New York Court of Appeals" support allowing Chevron's fraud claim based on third-party reliance. (Dkt. 468, at 42.) Respectfully, those three holdings from the century before last are anything but square or on point. Two of them, *Eaton, Cole & Burnham Co. v. Avery*, 83 N.Y. 31 (1880) and *Bruff v. Mali*, 36 N.Y. 200 (1867), allowed fraud based on a defendant's statements to third parties when those statements were ultimately communicated to, and relied upon, *by the plaintiff*. And the third "old" decision, *Rice v. Manley*, 66 N.Y. 82 (1876), plainly recognizes that to pursue a fraud claim, "it must also be added that plaintiff was deceived and damaged." Not only was Chevron not "deceived" (it presented its suspicions about the expert's independence to the trial court), but also to the extent that *Rice* allowed recovery based on third-party reliance, it is distinguishable because it allowed recovery under the "fraud" label for what was in fact tortious interference.

Most importantly, none of these "old" cases involved a judgment debtor asserting a common law fraud claim against the judgment creditor based on allegedly false statements to the judgment court. In those circumstances, the judgment debtor may assert fraud as a defense to

enforcement as a means to avoid the judgment where it is enforced but not as an affirmative claim for relief in an action where no enforcement is sought.

The courts in *Eaton* and *Bruff* did not hold that *reliance by* third parties would establish a fraud claim.  Instead, they held that *communications to* third parties were sufficient to state a claim where the *plaintiff* ultimately relied on them.  The only difference between these two cases and standard fraud cases is that the fraudulent statements in *Eaton* and *Bruff* were communicated indirectly to the plaintiff, rather than directly. Thus, *Eaton* and *Bruff* fall under the "theory of reliance known as 'indirect reliance,'" *see Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 348 (S.D.N.Y. 2010) (Kaplan, J.), which is distinct from "third-party reliance." *See id.* at 348 n.13 ("*Smokes-Spirits.com* and the other cases dealt with a different doctrine: the doctrine of 'third-party reliance.' Under this doctrine, a third party who did not rely on a fraudulent statement attempts to use the reliance of a party who did rely on the fraudulent statement. Here, by contrast, [Plaintiff] asserts that it relied on the fraudulent statements itself."); *see also Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 310 (2d Cir. 1994) (common law fraud claim based on indirect reliance requires a misrepresentation and "notice in the circumstances of its making" that the misrepresentation be communicated to plaintiff).

In *Eaton*, the defendant made a false statement to a credit agency about the amount of its capital on hand.  When the defendant sought to purchase goods from the plaintiff, the plaintiff asked the credit agency about the defendant's capitalization.  In reliance on the defendant's prior statement to the agency, the plaintiff sold the defendant goods on credit.  After the defendant failed to pay, the plaintiff sued for fraud.  The defendant argued there was no fraud because there was no communication with the plaintiff.  The court rejected this argument, holding that indirect communication to the plaintiff was enough to state a fraud claim, *if the plaintiff relied on that*

9

*indirect communication*.  *See Eaton*, 83 N.Y. at 33 ("if the defendant" made the fraudulent statements alleged "*and such statements were communicated to the plaintiff and relied upon by it*, and the alleged sale was procured thereby, the plaintiff was entitled to recover" for fraud) (emphasis added).  The *Bruff* court similarly held that a defendant could be liable for fraud if the statements he communicated to a third party were relayed to the plaintiff and *relied upon by the plaintiff* to his detriment.  *See Bruff*, 36 N.Y. at 201 (defendants issued stock certificates which were "false and fraudulent, and sold and disposed of the same as true and genuine stock, four hundred and eighty shares of which *the plaintiff* purchased [from third parties] and *received as genuine, to his great damage*") (emphasis added).

Here, by contrast, there is no allegation that any of the relevant third parties alleged in the Amended Complaint—the Ecuadorian court, U.S. courts, U.S. federal and state agencies and officials, stockholders, investors, analysts, and the media—ever communicated or relayed any allegedly false statements to Chevron upon which *Chevron* relied to its detriment.  This Court has recognized that Chevron did not rely on any representations or omissions allegedly made by Defendants to courts and other third parties.  (Dkt. 468, at 40.)  There can be no indirect reliance by Chevron, nor has Chevron alleged it.  *Eaton* and *Bruff* do not support the notion that Chevron can pursue a fraud claim in the absence of any detrimental reliance by Chevron itself.

The third "old" decision on third-party reliance, *Rice*, does not apply either.  That case involved, unlike here, a defendant interfering with a contractual relationship between the plaintiff and a third party.  It did not involve "fraud" as it is known today.  Rather, the term "fraud" in *Rice* was a rough way of describing tortious interference.  In 1876, New York law did not recognize a tort for interference with contract unless the interfering party employed "fraud or misrepresentation" in the interference.  *See Ashley v. Dixon*, 48 N.Y. 430 (1872).  The cause of

action arising from such interference was not a traditional fraud, which is why *Rice*, in paraphrasing the holding of *Snow v. Judson*, 38 Barb. 210 (N.Y. 1862), states that "false statements made by an individual in regard to articles manufactured by others, for the purpose of preventing sales by them of such articles, which do in fact prevent such sales and injure the manufacturers in their business, constitute [] a cause of action." *Rice* at 86. This "cause of action" is not traditional fraud but a rough version of the interference tort [and the 'fraud or misrepresentation' meaning the tortious or non-privileged act required to state a claim for tortious interference]." *See* Harvey S. Perlman, "Interference with Contract and Other Economic Expectancies: A Clash of Tort and Contract Doctrine," 49 U. Chi. L. Rev. 61, 72 (1982). As one commentator has explained:

> These facts [of *Rice*] *do not fit comfortably into the elements of fraud*: no statement was made to the plaintiff, nor did he rely on any statement to his detriment.
>
> . . . .
>
> Faced with this state of the world, it is not surprising that courts intent on bringing some cases of *contractually based loss* within the scope of liability for tortious acts might devise a cause of action separate from traditional torts that at once would create and limit liability. The interference tort is such a cause of action.

*Id.* at 75-76 (emphasis added). Finally, since the fraud claim in *Rice* had not been challenged on the ground that reliance was by a third party and not by the plaintiff, the court was not confronted with the issue and any statements on that topic would be mere dicta.

There is no pronouncement of "the highest state court" in New York allowing a fraud claim (divorced from any tortious interference with contract) based on third-party reliance, especially in the case of a judgment debtor suing the judgment creditor for fraud in connection with the judgment. *Eaton* and *Bruff* do not allow such a claim, and *Rice* allowed the plaintiff to recover essentially for tortious interference—it does not stand for the proposition that a judgment

11

debtor may bring an affirmative fraud claim against the judgment creditor as a means of collaterally attacking the judgment.

Chevron has not cited a single case applying New York law where the court allowed a judgment debtor to pursue a fraud claim against the judgment creditor for statements allegedly made during the litigation.  In the absence of a controlling case from the New York Court of Appeals, this Court should look to the authority of lower state court decisions, as well as opinions from the Southern District of New York and the Second Circuit.  "[W]hile a federal court is not bound by lower state court decisions, they do have great weight in informing the court's prediction on how the highest court of the state would resolve the question."  *McCarthy v. Olin Corp.*, 119 F.3d 148, 154 (2d Cir. 1997).

Numerous decisions from the lower New York courts weigh against allowing fraud based on third-party reliance.[6]  Additional decisions by this Court and by the Second Circuit are in

---

[6] *See, e.g.*, *Korangy Publ'g, Inc. v. Miceli*, No. 110327/08, 2009 WL 586131, at *5 (N.Y. Sup. Ct. N.Y. Co. Feb. 27, 2009) (dismissing fraudulent misrepresentation claim because alleged misrepresentation was made to third parties, not plaintiff, "and therefore [defendant] lacked the intent to defraud [plaintiff]"); *Aymes v. Gateway Demolition, Inc.*, 817 N.Y.S.2d 233, 234 (App. Div. 1st Dep't 2006) (plaintiff lacked standing to bring fraud claim "because the alleged misrepresentations were made to [third party], not to plaintiff."); *Pensee Assoc. v. Quon Indus.*, 660 N.Y.S.2d 563,567 (N.Y. A.D. [1st Dep't] 1997) (plaintiff lacked standing to assert fraud claim in the absence of allegations that defendant made misrepresentations directly to plaintiff); *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 38 n.8 (S.D.N.Y. 1992) (reliance element is not satisfied when plaintiff alleges that "the misrepresentation in question was made to or relied on by a third party"); *Garelick v. Carmel*, 529 N.Y.S.2d 126, 128 (2d Dep't.1988) ("in order to plead a valid cause of action sounding in fraud, the complaint must set forth all of the elements of fraud including the making of material representations by the defendant to the plaintiff"); *Orlin v. Torf*, 513 N.Y.S.2d 870, 872 (3d Dep't 1987) ("[W]e note that plaintiff is not a proper party to allege fraud. Any representation that Levine made concerning rabbinical approval was made to the Society, not plaintiff, and plaintiff has not alleged that he relied on the representations in any way"); *Escoett & Co. v. Alexander & Alexander, Inc.*, 296 N.Y.S.2d 929 (1st Dep't.1969) (dismissing fraud counterclaim where "[t]he representations of which the defendant complains were made to third parties and not to it, and those representations were relied upon by those third parties and not by it").

The New York intermediate appellate decisions previously cited by this Court are distinguishable.  For example, the court in *Litvinov v. Hodson*, 74 A.D.3d 1884 (N.Y. App. Div. 2010), allowed a fraud claim based on statements to a third party where the *plaintiff* allegedly relied on those statements.  *See id.* at 1886 (issue was "whether Foy made false representations to plaintiff's employer, Laspro, for the purpose of inducing *plaintiff's detrimental reliance* on those representations") (emphasis added).  In *Ruffing v. Union Carbide Corp.*, 308 A.D.2d 526 (N.Y. App. Div. 2003), the court found that the infant plaintiff stated a fraud claim based on her mother's reliance on statements that the mother's workplace was safe during pregnancy.  The fraud claim against the employer was allowed based on the special circumstances of the in utero child, "an entity whose well being is so intimately intertwined with the well being of the 'third-person' to whom the fraudulent misrepresentation is made, that is, an expectant mother."  *Id.*

accord with this view of New York law.[7]   Moreover, the Restatement provisions concerning fraud and misrepresentation do not allow a fraud claim based on third-party reliance alone.  *See* Restatement (Second) of Torts, § 533.  Like *Eaton* and *Bruff*, they provide that a plaintiff may recover for fraud based on *indirect* reliance—not on third-party reliance.  *See id.* ("The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance *communicated to the other, and that it will influence his conduct* in the transaction or type of transaction involved.") (emphasis added).

Even assuming that a fraud claim by a judgment debtor against a judgment creditor based on third-party reliance were recognized by New York law, which it is not, Chevron has not pleaded any facts to meet the elements of such a claim.  A claim of "third-party fraud," if it were viable, would require showing that the defendant made a false representation to a third party, which the third party relied on to the detriment of the plaintiff.  *See Desser v. Schatz*, 182 A.D.2d 478, 479-80 (N.Y. App. Div. 1992).  Chevron has not alleged any false representations by

("[T]he weight of the limited amount of authority that is addressed at all to questions similar to those posed in this case supports the conclusion that a surviving child injured in utero as the result of a fraudulent statement relied upon by his or her mother does, in fact, possess a valid fraud cause of action."). Those unique circumstances are not present here.  And the decisions in *Buxton Mfg. Co. v. Valiant Moving & Stor., Inc.*, 239 A.D.2d 452 (N.Y. App. Div. 1997), and *Desser v. Schatz*, 182 A.D.2d 478 (N.Y. App. Div. 1992), did not involve a judgment debtor alleging fraud against the judgment creditor based on a judgment.

[7] *See, e.g.*, *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Intern. N.V.*, 400 Fed. Appx. 611, 613 (2d Cir. 2010) ("fraud claims may not be premised on false statements on which a third party relied"); *Am. Financial Int'l Group-Asia, L.L.C. v. Bennett*, 2007 WL 1732427, at *9 (S.D.N.Y. June 14, 2007) (dismissing fraud claims based on "cursory allegations [of] reliance" that "fail[ed] to allege that plaintiffs read the allegedly misleading...statements, or even that they knew of their existence"); *Abbatiello v. Monsanto Co.*, 522 F. Supp. 2d 524, 534 (S.D.N.Y. 2007) (dismissing employees' fraud claim "because New York law requires that the plaintiffs themselves be misled by the alleged misrepresentation or omission"); *Barnhardt v. Federated Dep't Stores, Inc.*, No. 04 Civ. 3668, 2005 U.S. Dist. LEXIS 3631, at *25 (S.D.N.Y. Mar. 5, 2005) ("[t]he reasonable] reliance element of fraud... cannot be established by showing that only a third party, and not the plaintiff, relied on the defendants' allegedly false statements"); *City of New York v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526, 565 (S.D.N.Y. 2005) (dismissing a fraud claim and stating "[u]nlike a RICO cause of action, [a claimant] in a common law fraud cause of action, cannot rely on the reliance of a third party"); *Morris v. Castle Rock Entm't, Inc.*, 246 F. Supp. 2d 290, 296 (S.D.N.Y. 2003) ("such third-party reliance is not enough to sustain a claim for common law fraud").

Camacho or Piaguaje to any third party.  Nor has Chevron alleged any fact showing that Camacho or Piaguaje had knowledge of any specific representations made by others to third parties.  And Chevron has not adequately pleaded reliance by a third party.  The Ecuadorian court did not rely on the statements that Chevron uses as the basis for its third-party fraud claim—statements about Cabrera's and Calmbacher's independence and expert reports.  The Ecuadorian court specifically disclaims reliance on those expert reports.[8]  Chevron has failed to plead the required elements of fraud.  As a result, Chevron's fraud claim predicated on third-party reliance fails as a matter of law.

**B.    None of Chevron's theories state a common law fraud claim.**

**1.    Chevron's fraud allegations, based on statements made to a foreign court or as part of an ongoing lawsuit, might state a defense to enforcement of the judgment, but not an affirmative claim for money damages.**

Chevron's allegations that Camacho and Piaguaje "defrauded" the Ecuadorian court do not fall under the rubric of common law fraud.  They would potentially raise a defense to enforcement of the Ecuadorian judgment, but not an affirmative claim for relief.

*a.    There is a difference between common law fraud and a fraud defense to enforcement of a foreign judgment.*

New York law recognizes allegedly fraudulent statements made to a foreign court or as part of ongoing litigation as a special case of fraud.  N.Y. C.P.L.R. § 5304(b)(3).  New York's Uniform Foreign Country Money Judgments Recognition Act permits a judgment debtor to challenge the foreign judgment in response to an enforcement action on the basis that the judgment was procured by fraud.  *Id.* ("A foreign country judgment need not be recognized if . . . the judgment was obtained by fraud.").  If an affirmative claim for common law fraud were

---

[8] The Court may consider the Ecuadorian judgment because it is incorporated into the Amended Complaint, the Amended Complaint relies heavily upon its terms and effect, and because the judgment is integral to the Amended Complaint.  Moreover, the Court may consider the Ecuadorian judgment as a matter of judicial notice.

available generally in this circumstance, there would be no need for the fraud-based defenses to judgment enforcement in New York's Recognition Act.

Chevron has not cited a single case—because there is none—in which a court applying New York law allowed a fraud claim for money damages to proceed based on alleged misrepresentations made to a court or during litigation.  There is no independent cause of action for fraud in connection with a foreign judgment. Chevron's "fraud" claim based on alleged statements made to the Ecuadorian court is an attempt to turn the tort on its head, for it is not a "fraud" to successfully seek relief on the basis of the evidence put before a legitimate court and which the opposing party had an opportunity to contest.  *See Weldon v. United States*, 225 F.3d 647, 2000 WL 1134358, at *6−7 (2d Cir. Aug. 9, 2000) ("Defense counsel's actions should have been addressed through the unimpeded adversary process. To the extent summary judgment was inappropriate . . . it would have resulted from a failure of Weldon's own counsel and not from defense counsel's fraud.").

New York's Recognition Act allows a judgment debtor to challenge a foreign judgment on the basis of fraud if the judgment creditor first seeks enforcement in New York.[9]  Rule 60(b) of the Federal Rules of Civil Procedure and the "fraud upon the court" doctrine allow judgment debtors who lose a case in United States federal court to seek to set aside the judgment on the basis of fraud in the court where judgment was entered.[10]  *See Leber–Krebs, Inc. v. Capitol Records*, 779 F.2d 895, 899 (2d Cir.1985).  Rule 60(b) authorizes *relief* from a final order of a United States federal court based, among other grounds, on "fraud upon the court."  It states, in pertinent part:

---

[9] The New York Recognition Act would apply here only if the Ecuadorian Plaintiffs sought to enforce the Ecuadorian judgment in New York, which they have not done and will never do.

[10] Rule 60(b) applies only to United States federal court judgments—it cannot apply to the Ecuadorian judgment.

> "On motion and upon such terms as are just, the court may *relieve* a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party . . . . This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, . . . or to *set aside a judgment for fraud upon the court*."

FED. R. CIV. P. 60(b) (emphasis added).  The elements of an action for "fraud upon the court" are: "(1) the defendant's misrepresentation to the court; (2) the impact on the motion as a consequence of that misrepresentation; (3) the lack of an opportunity to discover the misrepresentation and either bring it to the court's attention or bring an appropriate corrective proceeding; and (4) the benefit the defendants derived by inducing the erroneous decision." *Leber-Krebs, Inc.*, 779 F.2d at 899.   Importantly, neither the New York statute nor the Federal Rule permits an affirmative fraud claim for money damages.

No judgment debtor anywhere, whether it lost a judgment in a foreign country (like Chevron did) or in a U.S. court (not here), is permitted to pursue in New York a fraud claim for money damages based on alleged fraud in the judgment.  New York's Recognition Act, Rule 60(b), and the "fraud upon the court" doctrine exist to allow judgment debtors to potentially challenge a judgment obtained by fraud and to potentially have it set aside or to prevent its enforcement if the debtor proves there was fraud.  There would be no purpose to create those statutes and rules if a claim of common law fraud allowed a judgment debtor to obtain in New York "relief" from a final judgment by obtaining money damages from the judgment creditor based on alleged fraud in the judgment.  Chevron's assertions otherwise fly in the face of this established doctrine.

> b.   The allegedly fraudulent statements are protected by *Noerr-Pennington* and the litigation privilege and cannot form the basis of a fraud claim.

Nearly all of Chevron's fraud allegations turn on statements made in the context of litigation.  That the alleged misrepresentations were made in a lawsuit demonstrates why there is no affirmative fraud claim here, only a potential defense to enforcement.  These statements are protected under *Noerr-Pennington* and the common law litigation privilege, and they cannot be the basis for a fraud claim.  *Matsushita Electronics Corp. v. Loral Corp.*, 974 F. Supp. 345, 355 (S.D.N.Y. 1997) (applying *Noerr-Pennington* immunity to litigation); *Martirano v. Frost*, 25 N.Y.2d 505, 508−509 (1969) (upholding common law privilege for litigation statements); *see also Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.*, 229 F.3d 1135, No. 00-7302, 2000 WL 1508873, at *1 (2d Cir. Oct. 11, 2000) ("Noerr Pennington immunity is applicable to RICO actions and to state-law claims such as fraud and tortious interference.").  That the statements were allegedly made to a court in Ecuador does not remove them from the scope of *Noerr-Pennington* immunity, which applies to statements made in foreign litigation.  *See, e.g.*, *Carpet Group Int'l v. Oriental Rug Imps. Ass'n*, 256 F.Supp.2d 249, 266 (S.D.N.Y.2003) (holding that the *Noerr–Pennington* doctrine applies to petitions to foreign governments); *Luxpro Corp. v. Apple Inc.*, C 10-03058 JSW, 2011 WL 1086027, at *5 (N.D. Cal. Mar. 24, 2011) (holding that *Noerr-Pennington* immunity applied to statements made by Apple in "Apple's foreign litigation" against Luxpro Corp. in "Germany and Taiwan"); *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1366 (5th Cir. 1983) (applying *Noerr-Pennington* immunity to foreign activity).

Chevron made these exact same arguments in opposing the Donziger Defendants' motion for leave to amend to add a fraud counterclaim.  (Dkt. 574.)  Chevron argued that fraud allegations based on "statements made . . . in the context of litigation, and in other forms of petitioning activity" are "protected under the First Amendment and the common law litigation

17

privilege, and this cannot be the basis for a tort claim." (*Id.*, at 24.) Either statements made in the context of litigation can be the basis of a fraud claim or they cannot. The Court should not permit Chevron to have it both ways.

2.    **Chevron's fraud claim based on "fraud by the court" fails.**

Chevron's fraud claim based on alleged "fraud by the court and the Ecuadorian Plaintiffs," *e.g.* ghostwriting, is a repackaged version of its fraud defense to enforcement of the Ecuadorian judgment. Who is relying on the alleged fraud under this theory? Not Chevron. Not the Ecuadorian court. Presumably, the party "relying" on the supposedly fraudulent representations made by the Ecuadorian court would be an enforcement court, which is being asked to recognize the judgment as valid but that is, according to Chevron, the product of improper "collusion" with the Ecuadorian court. The identity of the party supposedly "relying" on the alleged fraud by the Ecuadorian court highlights why Chevron's fraud claim must be dismissed for the same reasons as the Count Nine Action in *Salazar*—if the Ecuadorian court participated in a fraud, that question is for an enforcement court to decide within the confines of its own judgment recognition law. That decision does not rest with this Court on the basis of a purported common law fraud claim.

Yet Chevron has admitted that what it seeks through this lawsuit, via its purported fraud claim, is a finding that the Ecuadorian judgment is not entitled to recognition or enforcement because of alleged fraud. (Dkt. 569, at 5.) If Chevron were to succeed on its fraud claim, Chevron would undoubtedly tout such a fraud finding as a reason Chevron should not have to satisfy the Ecuadorian judgment. As demonstrated by Chevron's successive motions for attachment, Chevron does not seek money damages for fraud—it seeks to prevent having to pay the judgment it owes. The Second Circuit rejected Chevron's attempt to obtain a preemptive finding of non-recognition or non-enforceability based on fraud because the Ecuadorian Plaintiffs had not first sought enforcement

18

of the judgment in New York.  Chevron's common-law fraud "claim" is no different than a potential defense to enforcement, which cannot be presented until the Ecuadorian Plaintiffs seek to enforce the judgment.  The Court should reject Chevron's invitation to flaunt the Second Circuit's holding.

### 3.  Chevron's fraud claim based on "fraud on the public" fails.

Chevron alleges that Defendants made misrepresentations to other third parties, including U.S. courts, U.S. federal and state agencies and officials, stockholders, investors, analysts, and the media.  None of the alleged fraudulent statements made to those third parties caused the rendition of the Ecuadorian judgment.  The Ecuadorian court did not rely on any statements made to those third parties.  Moreover, Chevron has not pleaded that any damages resulting from the Ecuadorian judgment were caused by alleged misrepresentations made in the United States or elsewhere.  Chevron complains that it has been damaged due to entry of the judgment, but Chevron has not had to pay a penny of the judgment to date.  The fraud claim based on "fraud on the public" fails as a matter of law.

### C.  Chevron's fraud claim fails to meet the Rule 9(b) standard.

The complaints made against Camacho and Piaguaje in Chevron's Amended Complaint lacks the specificity required by the Federal Rules.  Rule 9(b) provides that in "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).  "The 'particularity requirement' contained in Rule 9(b) is substantial." *Filler v. Hanvit Bank*, 01 CIV. 9510 (MGC), 2003 WL 22110773, at *2 (S.D.N.Y. Sept. 12, 2003).  "[T]he complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 290 (2d Cir. 2006).  Where there are multiple defendants, the plaintiff is not permitted to lump them together by alleging that "defendants" engaged in fraud but rather must inform each defendant as

to the specific nature of his alleged participation in fraud.  *Apace Communications, Ltd. v. Burke*, 522 F. Supp. 2d 509, 517-18 (W.D.N.Y. 2007).  "Rule 9(b) also requires a plaintiff to adequately allege that the defendant's statements were the proximate cause of the plaintiff's injuries." *Filler*, 2003 WL 22110773 at *2.

Chevron alleges six main types of fraudulent statements made by "Defendants," stated generally: "[1] the falsified Calmbacher reports, [2] the true authorship of the Cabrera report, [3] the denial of any improper contact with Cabrera, [4] the supposed independence and neutrality of Cabrera and his liability and damages assessment, [5] the submission of new 'expert' reports based on the fraudulent Cabrera Report, [6] and the fraudulent endorsements of the Cabrera Report," (Dkt. 283, at ¶ 389.)  These alleged misrepresentations, nearly all of which deal with Richard Cabrera, are included in the following paragraphs of the Amended Complaint: ¶ 120 (Calmbacher reports); ¶¶ 157, 165, 167, 188, 229, 230, 231, 232, 233, 235, 236, 237, 240, 242, 243, 245, 248, 249, 250, 251, 267, 273, 287, 289, 308, 312 (Cabrera independence); ¶¶ 254, 255, 277, 287, 308 (authorship of Cabrera report); ¶¶ 291, 293, 295, 297 (relationship and contacts with Cabrera); ¶¶ 243, 309 (endorsements of Cabrera); and ¶¶ 191, 243 (new experts after Cabrera).  Chevron also litters the Amended Complaint with a few other alleged fraudulent statements.  (*See* Dkt. 283, at ¶¶ 105, 108, 239 (David Russell damages estimate), ¶ 239 (letter to SEC about Texaco's dumping), ¶¶ 262-64 (Chevron responsible for Fajardo death), ¶ 301 (Nunez video recordings), ¶ 305 (Crude movie), and ¶ 310 (1995 Texpet release).)  There are no other types of misrepresentations alleged in the Amended Complaint.

For the statements alleged, Chevron fails to provide the specificity required by Rule 9(b) and fails to demonstrate how any of these alleged statements caused the Ecuadorian trial court to enter judgment against Chevron.

349738.5

### 1.    The Amended Complaint does not identify the speaker.

Here, Chevron fails to specify any allegedly fraudulent statements by Camacho or Piaguaje, much less detail the statements verbatim.  Chevron does not "identify the speaker" as required by the Rules.  Instead, Chevron alleges that multiple defendants—usually identified as "the RICO defendants" (a grouping which by definition does not include Camacho and Piaguaje), the "co-conspirators," or some similar collective term—made various misrepresentations.  (*See, e.g.*, Dkt. 283, at ¶¶ 68, 120, 156-58, 163, 223, 233, 236.)  These lumped-together allegations are insufficient as a matter of law.  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); *In re Crude Oil Commodity Litigation*, No. 06 Civ. 6677, 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007) ("In situations where multiple defendants are alleged to have committed fraud, the complaint must specifically allege the fraud perpetrated by each defendant, and 'lumping' all defendants together fails to satisfy the particularity requirement"); *Sedona Corp. v. Ladenburg Thalmann & Co., Inc.*, No. 03 Civ. 3120, 2005 WL 1902780, at *12 (S.D.N.Y. Aug. 9, 2005) ("Neither allegations of ability to control or lumped-together accusations of wrongdoing by undifferentiated groups of defendants, is sufficient to satisfy Rule 9(b)"); *Alnwick v. European Micro Holdings, Inc.*, 281 F.Supp.2d 629, 640 (S.D.N.Y. Sept. 15, 2003) (Rule 9(b) not satisfied where complaint "fail[ed] to specify what each defendant said").

### 2.    The Amended Complaint does not allege that Camacho or Piaguaje participated in any alleged fraudulent statements.

Chevron does not allege that Camacho or Piaguaje made a single fraudulent statement to anyone.  Chevron's sole allegations about Camacho and Piaguaje in relation to the alleged fraud are conclusory—that they "knew or should have known" about misrepresentations made by

agents on their behalf.  (Dkt. 302 at ¶1 n.1, ¶ 389.)  There are no other allegations in the entire Amended Complaint tying Camacho or Piaguaje to any of the alleged fraudulent statements. (Dkt. 283.)

Chevron's conclusory "knew or should have known" allegations are insufficient to satisfy the fraud pleading standards as a matter of law.  *See FSP, Inc. v. Societe Generale*, 02CV4786GBD, 2005 WL 475986, at *10 (S.D.N.Y. Feb. 28, 2005) ("SG contends that the FSP Parties knew or should have known of the broker's fraudulent activities. To allege without more that [the FSP Parties] knew or should have known that a particular representation was false does not satisfy Rule 9(b)."); *Anudokem v. Am. Home Mortg. Servicing, Inc.*, C09-01660 HRL, 2010 WL 532440, *4 (N.D. Cal. Feb. 9, 2010) ("Then, without distinguishing between defendants, the FAC goes on to allege in conclusory fashion that all defendants knew or should have known about the fraud and engaged in deceptive and fraudulent conduct by failing to provide proper disclosures and to take plaintiff's ability to repay the loan into account. The court finds that the elements of fraud are not sufficiently alleged.").

Chevron has not provided any factual basis from which to conclude that Camacho or Piaguaje personally knew about or participated in any of the alleged misrepresentations.  Such facts are required by law.  *Mills*, 12 F.3d at 1175 ("[T]he plaintiffs also had to allege that the Directors personally knew of, or participated in, the fraud."); *Fisher v. APP Pharmaceuticals, LLC*, 783 F. Supp. 2d 424, 433 (S.D.N.Y. 2011) ("[The complaint] fails to differentiate among the named Defendants in each allegation and thus fails to inform each defendant of the circumstances surrounding the fraudulent conduct with which he individually stands charged. . . . This necessitates dismissal of the claim.").  Chevron's failure to allege any facts showing that

Camacho or Piaguaje participated in, or personally knew about, any of the alleged fraudulent statements is fatal to its claim.

### 3. The Amended Complaint does not allege facts showing proximate causation.

"[W]hen factors other than the defendant's fraud are an intervening direct cause of plaintiff's injury, the same injury cannot be said to have occurred by reason of the defendant's actions." *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 189 (2d Cir. 2001). Here, there are two intervening direct causes of Chevron's injury: (1) the evidence of Chevron's contamination of the Ecuadorian rainforest and (2) the Ecuadorian courts' decisions based on this evidence that Chevron was liable for the amount of the judgment.

Nothing alleged in Chevron's Amended Complaint had any effect on the judgment in Ecuador. Certainly none of the alleged fraudulent statements made to any party other than the Ecuadorian trial court (*e.g.*, statements to U.S. courts, Congress, the SEC, or investors) had any effect on the Ecuadorian court's judgment, as these statements were not provided to that court. More importantly, the evidence before the Ecuadorian trial and appellate courts, proved that Chevron (a) recklessly adopted sub-standard operational practices in Ecuador—practices prohibited for thirty years in the United States—to cut production costs to the bare minimum, creating what experts believe could be the largest and most damaging oil-related disaster of all time; (b) flagrantly violated multiple Ecuadorian laws, its own contractual obligations, and oil industry standards in effect at the time; and thereby (c) caused massive environmental damage to an area the size of Rhode Island that for decades to come will create myriad health risks for thousands of rainforest inhabitants and damage to the ecosystem unless there is a comprehensive clean-up. Chevron has not alleged any facts to demonstrate that the fraudulent statements

alleged proximately caused or excused this massive pollution, much less the judgment entered against Chevron in Ecuador.[11]

The Court should dismiss Chevron's fraud claim because Chevron failed to plead (1) specific fraudulent statements by Camacho or Piaguaje, (2) facts showing Camacho's or Piaguaje's participation in those alleged statements, or (3) facts establishing proximate causation.[12]

For all of the above reasons, Defendants Camacho and Piaguaje are entitled to judgment on the pleadings on Chevron's fraud claim.

## III.    The tortious interference claim is time barred.

To state a claim for tortious interference with contractual relations under New York law, a plaintiff must allege: (1) the existence of a valid contract between itself and a third party for a specific term; (2) defendant's knowledge of that contract; (3) defendant's intentional procuring of its breach; and (4) damages."  *Linens of Europe, Inc. v. Best Mfg., Inc.*, 2004 WL 2071689 *19 (S.D.N.Y. Sept. 16, 2004) (quotation omitted).  The relevant statute of limitations is three years.  *See Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281, 1287 (2d Cir. 1986).

---

[11] The Court may consider the Ecuadorian judgment because it is incorporated into the Amended Complaint, the Amended Complaint relies heavily upon its terms and effect, and because the judgment is integral to the Amended Complaint.  Moreover, the Court may consider the Ecuadorian judgment as a matter of judicial notice.

[12] "Ordinarily, dismissal based on failure to plead fraud with particularity under FED. R. CIV. P. 9(b) is without prejudice to a plaintiff's filing an amended complaint to cure the deficient pleading."  *U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 455 (S.D.N.Y. 2001).  However, Chevron declined to seek leave to file a further amended complaint even after getting the Court to extend its date to do so.  Furthermore, "leave to amend may be denied when such amendment would be futile."  *Id.*  Given the scorched-earth discovery campaign Chevron has conducted to date, and the multiple opportunities to amend that have passed, it is clear Chevron has no factual support for any fraud claim against Camacho or Piaguaje, or Chevron would have provided such factual allegations by now.  Allowing an amendment to provide details that do not exist would be futile.  If, however, the Court declines to dismiss based on Chevron's failure to comply with Rule 9(b), Camacho and Piaguaje request that the Court order Chevron to provide a more definite statement of Chevron's fraud claim against Camacho and Piaguaje under Rule 12(e), for the lack of specificity outlined above.

For the reasons stated in this Court's May 14, 2012 opinion, Chevron's tortious interference claim "is untimely and must be dismissed" as to Camacho and Piaguaje as well. (Dkt. 468, at 45.)

## IV.    The trespass to chattels claim is without merit.

The common law tort of "trespass to chattels" requires Chevron to allege "that [Camacho and Piaguaje] intentionally, and without justification or consent, physically interfered with the use and enjoyment of personal property in [Chevron's] possession, and that [Chevron] was harmed thereby." *School of Visual Arts v. Kuprewicz*, 3 Misc.3d 278, 281, 771 N.Y.S.2d 804, 808 (N.Y. Sup. Ct. 2003).

This Court concluded that Chevron's trespass to chattels claim "is without merit." (Dkt. 468, at 46). This meritless claim should be dismissed as to Camacho and Piaguaje as well.

## V.    The unjust enrichment claim fails because Camacho and Piaguaje have not been enriched at Chevron's expense.

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). "Where the defendant receives a benefit, *but not at the plaintiff's expense*, an unjust enrichment claim fails." *Marketplace LaGuardia Ltd. P'ship v. Harkey Enter., Inc.*, No. 07-CV-1003 (CBA), 2008 WL 905188, at *6 (E.D.N.Y. Mar. 31, 2008) (emphasis added).

"It cannot be said at this point that [Camacho or Piaguaje] have been enriched—unjustly or otherwise." (*See* Dkt. 468, at 48.) Chevron does not allege that either Camacho or Piaguaje were claimants on their own behalf or that either directly benefitted from the Ecuadorian Court's

Judgment. For the reasons stated in this Court's May 14, 2012 opinion, Chevron's unjust enrichment claim against Camacho and Piaguaje should be dismissed.

## VI.    Chevron's civil conspiracy claim fails along with its other common-law claims.

Chevron's conspiracy claim fails because it is a derivative tort, and Chevron has failed to allege a viable independent tort claim against Camacho or Piaguaje. *See Abacus Fed. Sav. Bank v. Lim*, 75 A.D.3d 472, 474 (2010) ("New York does not recognize an independent cause of action for conspiracy to commit a civil tort."). Tortious interference, trespass to chattels, and unjust enrichment all fail for the reasons stated by the Court on May 14, 2012. (Dkt. 468.) Chevron's fraud claim fails because it is not a cognizable affirmative claim, and also for lack of detrimental reliance by Chevron, for lack of third-party reliance, and for failure to comply with Rule 9(b). Without a viable independent tort, Chevron's civil conspiracy claim must be dismissed. *See Abacus*, 75 A.D.2d at 474.

To the extent that Chevron's conspiracy claim is based on fraud, Chevron has failed to adequately allege Camacho's or Piaguaje's knowledge of the alleged fraud to satisfy Rule 9(b). *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) ("actual knowledge is required to impose liability on an aider and abettor under New York law"); *Filler v. Hanvit Bank*, 01 CIV. 9510 (MGC), 2003 WL 22110773, at *3 (S.D.N.Y. Sept. 12, 2003) (applying Rule 9(b) to conspiracy to defraud). It is not enough to allege knowledge of fraud in conclusory fashion; Chevron must allege facts which, if true, will "give rise to the 'strong inference,' required by Federal Rule of Civil Procedure 9(b), of actual knowledge" of the alleged fraud. *Lerner*, 459 F.3d at 293. Chevron has not done so, and cannot credibly do so, certainly with respect to these two men who live and work in the backwaters of the Amazon, but instead has pleaded in broad, conclusory terms that Camacho or Piaguaje "knew or should have known" of the alleged fraud. *See Apace Communications, Ltd. v. Burke*, 522 F. Supp. 2d 509, 518 (W.D.N.Y. 2007). Those

26

allegations are insufficient to state a claim of conspiracy to defraud against Camacho or Piaguaje.

Moreover, a plaintiff alleging conspiracy, based on fraud or any other tort, must allege the specific times, facts, and circumstances of the alleged conspiracy. *DDR Const. Services Inc. v. Siemens Industry, Inc.*, 2011 WL 982049, at *22 (S.D.N.Y. Mar. 22, 2011). General allegations referring to "Defendants" "cannot serve as a basis for invoking the doctrine of civil conspiracy under New York law." *Campbell v. Thales Fund Mgmt., LLC*, 2010 WL 4455299, *7 (S.D.N.Y. Oct. 12, 2010). Here, Chevron's Amended Complaint is replete with lumped references to "Defendants" which cannot support a conspiracy claim as to Camacho or Piaguaje in particular.

Chevron has not pleaded that Camacho or Piaguaje entered into any agreement to commit fraud, trespass to chattels, tortious interference with contract, or to unjustly enrich themselves. Nor has Chevron ever alleged a single act taken by *Camacho* or *Piaguaje* that could satisfy the "overt act" element. There are no allegations that they engaged in any "independent culpable behavior." *See Am. Bldg. Maint. Co. of N.Y. v. Acme Prop. Servs., Inc.*, 515 F. Supp. 2d 298, 318 (N.D.N.Y. 2007) ("more than a conclusory allegation of conspiracy or common purpose is required to state a cause of action against a nonactor, who must have allegedly engaged in some 'independent culpable behavior'"). Rather, Chevron provides conclusory allegations of "Defendants" engaging in a conspiracy to "obtain property from Chevron." These allegations fail to state a conspiracy claim against Camacho and Piaguaje as a matter of law.

## VII. Any "claim" of vicarious RICO liability should be dismissed.

Chevron has never pled any RICO claim against Camacho or Piaguaje. The Amended Complaint does not contain any RICO allegations directed to Camacho or Piaguaje. They are not listed in the "RICO Defendants" section of the Amended Complaint, but instead in the

"Remaining Defendants" section.  (*Compare* Dkt. 283, at ¶ 7) ("The defendants listed in paragraphs 8 through 17 are the individuals who have conspired to engage in a pattern of racketeering activity") *with id.* at ¶ 20 ("The Lago Agrio Plaintiffs are those individuals identified in Appendix A.").)   Under the Court's scheduling order, the Court gave Chevron an opportunity to again amend its Complaint; if Chevron believed it had facts that would sustain a RICO Complaint it could have done so by amendment.  Chevron declined to amend and still has not alleged RICO violations against Camacho and Piaguaje.

Moreover, Chevron has not pleaded that Camacho and Piaguaje are vicariously liable for any alleged RICO violations.  The Amended Complaint refers to alleged vicarious *tort* liability, not RICO.  (*See* Dkt. 283 at 1 n.1) (alleging that the Ecuadorian Plaintiffs are "vicariously liable for the torts of their agents undertaken on their behalves.")  A civil RICO claim is not a tort claim of any sort, even by analogy; instead, RICO is a statutory claim modeled on antitrust law. *See Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 150, 152 (1987) (distinguishing RICO claims from 42 U.S.C. §1983 claims which "plainly sound[] in tort;").

In addition, any RICO allegations against Camacho and Piaguaje would still fail as a matter of law.  Vicarious liability cannot attach to Camacho or Piaguaje under the facts alleged by Chevron.  "Courts within the Second Circuit generally do not impose vicarious liability under RICO unless the corporate defendant is a 'central figure' in the RICO scheme."  *Mikhlin v. HSBC*, No. 08-CV-1302(CPS), 2009 WL 485667, at *8 (E.D.N.Y. Feb.26, 2009).  Plaintiffs seeking to impose vicarious liability must, at a minimum, "show that a corporate [or union] officer . . . had knowledge of or was recklessly indifferent toward the unlawful activity."  *USC Certified Merchs., LLC v. Koebel*, 262 F.Supp.2d 319, 328 (S.D.N.Y. 2003).  Even if such knowledge or reckless indifference is shown, courts "consider other factors, such as the number

28

of high-level employees involved in the racketeering activity, their degree of participation in the racketeering activity, whether these employees themselves committed the alleged predicate acts, and whether the corporation [or union] substantially benefited from the racketeering activity." *Mikhlin*, 2009 WL 485667, at *8.

Chevron has not alleged that Camacho or Piaguaje, a farmer and a canoe operator, were "central figures" in the alleged RICO scheme—they obviously were not—or that they knew about or participated in any of the alleged racketeering activity.[13]  Indeed, Camacho and Piaguaje are not part of any of Chevron's factual allegations in support of the RICO claims.[14]  As such, they cannot be vicariously liable for any alleged RICO violations by their agents or representatives.  The Court should dismiss any "claim" or suggestion of vicarious RICO liability against Camacho and Piaguaje.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Camacho's and Piaguaje's motion for judgment on the pleadings.

---

[13] *See* Declarations of Camacho and Piaguaje, Dkts. 446–47  (March 20, 2012) (establishing the impossibility of any characterization of Camacho and Piaguaje as remotely "central figures" to the litigation).

[14] It is a perversion of the RICO statute to allege that, by seeking to have health care infrastructure, such as hospitals and clinics, and sanitation infrastructure, such as water treatment plants, the inhabitants of this indisputably damaged land are engaged in a "RICO scheme" equivalent to Mafioso bosses.

349738.5

Respectfully submitted,

Dated: October 23, 2012
       Houston, TX

By: _____/s/  *Tyler G. Doyle*_____
    CRAIG SMYSER (*pro hac vice*)
    LARRY R. VESELKA (*pro hac vice*)
    TYLER G. DOYLE
    SMYSER KAPLAN & VESELKA, L.L.P.
    700 Louisiana, Suite 2300
    Houston, TX 77002
    Telephone: 713.221.2330
    Facsimile:  713.221.2320
    Email:    tydoyle@skv.com
    Email:    csmyser@skv.com
    Email:    lveselka@skv.com

    Julio C. Gomez
    GOMEZ LLC
    The Trump Building
    400 Wall Street, 28th Floor
    New York, NY  10005
    Tel:    212.400.7150
    Fax:    212.400.7151
    Email:  jgomez@gomezllc.com

    *Attorneys for Defendants Hugo Gerardo Camacho*
    *Naranjo and Javier Piaguaje Payaguaje*

30

349738.5