# EXHIBIT 2901

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re Application of                           :
                                               :    10-mc-0002 (LAK).
CHEVRON CORPORATION, et al,                    :
                                               :    ECF Case
                              Petitioners.     :
                                               :
                                               :
                                               :
------------------------------------------------------------x

## AFFIDAVIT OF STEVEN R. DONZIGER

COMMONWEALTH OF        )
MASSACHUSETTS          ) ss:
                       )
COUNTY OF NANTUCKET    )

       I, STEVEN R. DONZIGER, being duly sworn, state:

       1.     I am a practicing attorney and a member of the Bars of the State of New York and the District of Columbia. My office is in New York City and consists of myself and two associates.

       2.     I graduated from American University in 1983 and from Harvard Law School in 1991.

       3.     Since 1993, I have served as counsel to a group of Ecuadorian clients (the "Lago Agrio Plaintiffs"). I have represented these clients in their efforts to seek redress for damages caused by Texaco's exploitation of Ecuador's oil resources.

       4.     Over these seventeen years, my representation of the Lago Agrio Plaintiffs has constituted a significant part of my professional practice. For the last two

909598.1

years – and as of today – I have spent virtually all of my professional time in connection with the Lago Agrio litigation in Ecuador and, more recently, the related litigation here in the United States. I am bilingual in Spanish and English.

5. I have reviewed the Subpoenas that were served upon me on August 9, 2010 by Chevron Corporation and Rodrigo Perez Pallares and Ricardo Reis Veiga (the "Subpoenas").

6. Based upon this review, I believe that it would be extremely burdensome and disruptive to my practice – including my representation of the Lago Agrio Plaintiffs in currently pending proceedings – to identify, collect, review, and produce the massive number of documents demanded in the Subpoenas. I reach this conclusion for the following reasons:

7. Many of the Requests, Definition, and Instructions are so confusing, compound and/or vague that they are difficult for me to understand. For example, the Definition of the term "PLAINTIFF AFFILIATED PERSON" includes, among others, "any PERSON directly or indirectly assisting PLAINTIFFS in the LAGO AGRIO LITIGATION." I do not know how to interpret the phrase "directly or indirectly assisting PLAINTIFFS." Moreover, I believe it would be difficult or impossible for me to include within the scope of my review and production all of the individuals and organizations that have expressed support for the plaintiffs in the Lago Agrio litigation. This is only one example of the burden I would face in attempting to understand the Subpoenas.

8. Regardless of the interpretation given to the Subpoenas, it would be a monumental burden for me to attempt to identify responsive documents among the

2

909598.1

scores of thousands of documents that I possess regarding the Lago Agrio litigation. During my involvement in the case, I have accumulated a large volume of paper documents. I have also accumulated more than 50,000 e-mails and many thousands of electronic documents.

9. Although most of these documents are located in my New York City office, some of my paper files are located in Ecuador. Even if those files contained no documents that were ultimately determined to be responsive to the Subpoenas - an unlikely situation - I would need to review them first to ensure that I have fully complied.

10. It would be an enormous burden to me if I were required to devote my office's full time and attention to responding to these Subpoenas. The Lago Agrio litigation remains active, and I have ongoing responsibilities that include coordinating the multinational legal team and developing and implementing the team's legal strategy. Before I was served with the Subpoenas, these litigation-related tasks required and received my office's full time and attention.

11. Apart from the burden of reviewing my files and documents, it is clear to me that the Subpoenas would require me to produce a massive number of documents. Based on my preliminary review of my files (with the assistance of an associate of my firm), I believe that I would be required to produce many tens of thousands of documents. This is a conservative estimate, and it is not based on a document-by-document review of my e-mails, paper files, or electronic documents.

12. Preparing such a large document production would be burdensome and expensive. My firm has not previously handled a review and production of this scale. Moreover, some of the Subpoenas' instructions impose technical obligations that I

3

do not believe we would be capable of handling without outside vendors (which I understand can be expensive, depending on the services provided). For example, the Instructions require documents to be Bates stamped before they are reviewed for privilege.

13. The privilege review will be time consuming and complicated. It is clear that the Subpoenas seek many documents and communications that are entitled to the protections of the attorney-client privilege, the attorney work product doctrine, and other privileges. For just one example, Request 60 seeks "All COMMUNICATIONS between YOU and any lawyer or attorney that represented or is representing any party in any of the 1782 ACTIONS [related to certain subjects]." I am a party to a 1782 ACTION (this action), and this Request appears to seek my communications with my own lawyers. Many of the other requests seek documents or communications from or among members of the plaintiff legal team ("PLAINTIFF AFFILIATED PEOPLE" includes "PLAINTIFFS' LAWYERS").

14. The burden of the privilege review is further increased by the detailed requirements the Subpoenas set forth regarding the contents of a privilege log. I believe that the privilege log of documents withheld from my production on the basis of privilege will be enormous, and creating it will be extremely time consuming.

15. I am aware that Chevron and Perez and Veiga have issued and served subpoenas pursuant to 28 U.S.C. § 1782 upon various other participants in the Lago Agrio litigation. I am aware that proceedings relating to these proceedings are currently pending in various courts across the United States.

4

909598.1

16. In light of the other proceedings instituted in this Court and others pursuant to 28 U.S.C. § 1782, I also believe that many of the documents responsive to the Subpoenas may be obtained from other sources with considerably less burden and issues of privilege. Items that are uniquely in my possession include such documents as my litigation notes and my work papers, would I believe, be privileged.

17. As I stated above, my office consists of myself and two associates. Searching for and reviewing the enormous volume of files and documents related to the Lago Agrio litigation would require virtually all of my office's time and attention. Although I do not know how long this work would take to complete, I estimate that the collection, review and privilege analysis would take no less than two months if the Subpoenas were to be modified as requested in my Memorandum of Law, and would take at least six months if I am directed to respond to the Subpoenas as written.

Steven R. Donziger

Sworn to before me this
25th day of August, 2010

Notary Public



909598.1

5