UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHEVRON CORPORATION,                                    Case No. 11 Civ. 0691 (LAK)

               Plaintiff,

    vs.

STEVEN R. DONZIGER, et al.,

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## PROPOSED INTERVENORS' MEMORANDUM OF
## LAW IN SUPPORT OF MOTION TO INTERVENE


SCHWARCZ, RIMBERG, BOYD &
RADER, LLP
6310 San Vicente Blvd., Suite 360
Los Angeles, CA 90048
Telephone: (323) 302-9488
Facsimile:  (323) 931-4990

JUDITH KIMERLING, ESQ.
23 Waverly Place, #4-F
New York, NY 10003
Telephone: (212) 777-2135

Attorneys for Proposed Intervenors

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................1

II.     STATEMENT OF RELEVANT FACTS ...............................................7

III.    SUMMARY OF ARGUMENT................................................................9

IV.     ARGUMENT........................................................................................11

        A.     Intervention Is Warranted under Federal Rule of Civil
             Procedure 24(a)..........................................................................11

             1.     The Motion is Timely ....................................................13

                     i.     The Motion is Timely Given the Recent
                            Discovery by the Huaorani Intervenors that
                            Their Interests in the Lago Agrio Judgment
                            Are Not Adequately Represented .......................14

                     ii.    There Will Be No Undue Delay or Prejudice
                              to the Existing Parties ..........................................17

                     iii.   Denial of This Motion Would Severely
                              Prejudice the Huaorani Intervenors ....................20

                     iv.   The Unusual Circumstances in this Case
                              Militate For a Finding That This Motion
                            is Timely ..............................................................21

             2.     The Huaorani Intervenors Have a Direct, Substantial
                  and Legally Protectable Interest in This Action ............22

             3.     The Huaorani Intervenors' Interest in the Lago Agrio
                  Judgment May be Impaired by the Disposition of This
                  Action ...........................................................................23

             4.     The Unique Interests of the Huaorani Intervenors
                  Are Not Adequately Protected by the Parties to
                  This Action ...................................................................25

         B.     Alternatively, Permissive Intervention is Warranted ..............28

V.      CONCLUSION ....................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

## <u>CASES</u>

*Acree v. Republic of Iraq*,
370 F.3d 41 (D.C. Cir. 2004)……………………………………………...14

*Aerotel, Ltd. v. IDT Corp.,*
486 F. Supp. 2d 277 (S.D.N.Y. 2007)……………………………………..4, 24

*Am. Farm Bureau Fedn v. United States EPA*,
2011 U.S. Dist. LEXIS 118233 (M.D. Pa. Oct. 13, 2011)…………………..26

*Bates v. Jones*,
127 F.3d 870 (9th Cir. 1997)………………………..…………….............22

*B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*,
440 F.3d 541 (1st Cir. 2006)……………………………………...……13

*Brennan v. N.Y. City Bd. of Educ.*,
260 F.3d 123 (2d Cir. 2001)………………………………………….12, 22

*Butler, Fitzgerald & Potter v. Sequa Corp.,*
250 F.3d 171 (2d Cir. 2001)……………………………………...…14

*Caterino v. Barry*,
922 F.2d 37 (1st Cir. 1990)……………………………………………18

*Chevron Corp. v. Camacho Naranjo*,
667 F.3d 232 (2d Cir. 2012)…………………………………………….7

*Ctr. for Biological Diversity v. Delgado*,
61 Fed. Appx. 381 (9th Cir. 2003)……………………………….…13

*Development Fin. Corp. v. Alpha Hous. & Health Care*,
54 F.3d 156 (3rd Cir. 1995)…………………………………….……...28

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Dimond v. District of Columbia,*
792 F.2d 179 (D.C. Cir. 1986) …………………...........................................27

*Fiandaca v. Cunningham,*
827 F.2d 825 (1st Cir. 1987) …………………………………………………18

*Georgia v. U.S. Army Corps of Eng'rs,*
302 F.3d 1242 (11th Cir. 2002) …………………………………….…..20

*Gulino v. Bd. of Educ.,*
2009 U.S. Dist. LEXIS 84677 (S.D.N.Y. Sept. 16, 2009) …………….....…12

*Heaton v. Monogram Credit Card Bank,*
297 F.3d 416 (5th Cir. 2002)……………………………….…………20

*Hilton v. Guyot,*
159 U.S. 113 (1895) ……………………………………………………..4, 24

*Hurd v. Ill. Bell Tel. Co.,*
234 F.2d 942 (7th Cir. 1956) …………………….......................................20
352 U.S. 918, 77 S. Ct. 216 (1956)………………………….......................20

*Interoceanica Corp. v. Sound Pilots, Inc.,*
107 F.3d 86 (2d Cir. 1997)………………………………………………21

*Int'l Design Concepts, LLC v. Saks, Inc.,*
486 F. Supp. 2d 229 (S.D.N.Y. 2007) ……………….......................................28

*In re Bank of N.Y. Derivative Litig.,*
320 F.3d 291 (2d Cir. 2003) …………………………….......……..13, 22

*N.Y. Pub. Interest Research Group, Inc. v. Regents of Univ. of State of N.Y.,*
516 F.2d 350 (2d Cir. 1975) …………………….......................................23

*Overview Books, LLC v. United States,*
438 Fed. Appx. 31, 33 (2d Cir. 2011)………………………………………6, 21

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Res-tor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.*,
    725 F.2d 871 (2d Cir. 1984) …………………..........................................22

*Sagebrush Rebellion, Inc. v. Watt*,
    713 F.2d 525 (9th Cir. 1983)…………………………..………....................26

*Smoke v. Norton*,
    252 F.3d 468 (D.C. Cir. 2001) …………………………………………..14

*Southwest Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) …………………….…………………..12

*Spirt v. Teachers Ins. & Annuity Ass'n*,
    93 F.R.D. 627 (S.D.N.Y. 1982) …………………………………………14
    691 F.2d 1054 (2d Cir. 1982) …………………………………………14
    463 U.S. 1223, 103 S. Ct. 3565 (1983) …………………………….……14

*Stallworth v. Monsanto Co.*,
    558 F.2d 257 (5th Cir. 1977) …………………………………………12

*Trbovich v. United Mine Workers of America*,
    404 U.S. 528, 92 S. Ct. 630 (1972) …………………….......................25

*United States v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002) …………………………………6, 12, 19

*United States v. Covington Technologies Co.*,
    967 F.2d 1391 (9th Cir. 1992) …………………………….……………13

*United Airlines, Inc. v. McDonald*,
    432 U.S. 385, 97 S. Ct. 2464 (1977) ………………………………………13

*United States v. Pitney Bowes, Inc.*,
    25 F.3d 66 (2d Cir. 1994) …………………………………….……13, 20, 22

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*United States v. Yonkers Bd. of Educ.*,
    801 F.2d 593 (2d Cir. 1986) ……………………………………………….13

*U.S. Postal Serv. v. Brennan*,
    579 F.2d 188 (2d Cir. 1978) …………………………………..……….14, 29

*Viacom Int'l, Inc. v. Kearney*,
    212 F.3d 721 (2d Cir. 2000) …………………................................28

*Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec.*,
    922 F.2d 92 (2d Cir. 1990) …………………………,,,,,,,,,…12, 14, 22, 23

*Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*,
    782 F. Supp. 870 (S.D.N.Y. 1991) ………………..…………………….17

## STATUTES

Fed. R. Civ. P. 24 ……………………………………..……………….*passim*

28 U.S.C. §1367(b) …………………..……………..….............................28

## INTERNATIONAL CASES

*Société Eram Shipping Company Limited and others v Hong Kong*
*and Shanghai Banking Corporation Limited*,
    (2003) UKHL 30 …………………………………………………………4

## INTERNATIONAL CONVENTIONS

*Convention on Jurisdiction and the Enforcement of Judgments*
*in Civil and Commercial Matters (Brussels)*,
    1262 UNTS 153; 8 ILM 229 (1969) ………………..…………………4

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Council Regulation (EC) No 44/2001 of 22 December 2000 on*
*jurisdiction and the recognition and enforcement of judgments*
*in civil and commercial matters ("Brussels I Regulation")*
   Official Journal L 012 , 16/01/2001, P. 0001 - 0023   ……………………4

*Inter-American Convention on Extraterritorial Validity*
*of Foreign Judgments and Arbitral Awards,*
   1439 UNTS 87; OASTS No. 51; 18 ILM 1224 (1979)   ……………………4

*Hague Convention on Choice of Court Agreements,*
   June 30, 2005, 44 I.L.M.1294   …………………………..…………………..4

## <u>SECONDARY SOURCES</u>

*20 Moore's Federal Practice-Civil* § 303.10(b) …………………………………..14

*Wright & Miller* § 1916 …………………………..…………………………………14

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.**   <u>**INTRODUCTION**</u>

By way of this Motion, the proposed Huaorani Intervenors (plaintiffs in the

case deemed related by this Court on September 6, 2012 (Case No. 12-cv-5570))[1],

on behalf of themselves, on behalf of their family groups, on behalf of their

communities, and on behalf of the Huaorani people (also spelled "Waorani")

(hereinafter "Huaorani Intervenors"), seek to intervene as a party in order to defend

their significantly protectable rights and interests in the Lago Agrio Judgment.[2]

The Huaorani Intervenors are members of the Huaorani people, an Indigenous

people and minority group in the Amazon region in Ecuador, whose injuries

(among other groups') were the subject of the Lago Agrio Litigation; whose

---

[1]    *Kemperi Baihua Huani, et al. v. Steven Donziger, et al.,* Case No. 12-cv-5570 (the "Huani Action") (asserting claims for declaratory relief, constructive trust, unjust enrichment, and accounting).  On November 2, 2012, the Donziger Defendants in the Huani Action advised the Huaorani Plaintiffs that they [Donziger Defendants] intended to file a motion to dismiss the Complaint in the Huani Action based on a lack of subject matter jurisdiction.  *See* Declaration of Judith Kimerling ("Kimerling Decl.") at ¶ 5.  In part to respond to such contention, and additionally, to ensure that the rights and interests of the Huaorani Intervenors are best protected and that judicial efficiency is preserved, i.e., to prevent inconsistent findings of fact and rulings of law that could result if the plaintiffs in the Huani Action are compelled to re-file their claims in state court, and to ensure that their legally protected interests are adequately represented and protected in this action, the Huaorani Intervenors have filed the instant Motion.

[2]    As the Court is aware, the Lago Agrio Judgment followed years of litigation in the Republic of Ecuador arising out of an action brought by 48 individuals, the Lago Agrio Plaintiffs ("LAPs") for the environmental damage and devastation caused by Chevron Corporation's ("Chevron") petroleum activities in the Ecuadorian Amazon.  On February 14, 2011, Judge Nicolas Zambrano Lozada, the Presiding Judge of the Provincial Court of Justice of Sucumbíos in Ecuador, entered judgment against Chevron and ordered it to pay more than $8.6 billion for environmental remediation, compensation and mitigation measures ("Environmental Remediation Measures") and more than $8.6 billion in punitive damages (or alternatively, to apologize to the affected communities within 15 days), in order to repair and compensate the injuries suffered by the communities and community members affected by the operations, including the proposed Huaorani Intervenors and their communities and family groups, and the Huaorani people.  By decision dated January 3, 2012, the Appellate Division of the Provincial Court of Justice of Sucumbios affirmed the Lago Agrio Judgment in all material respects.

ancestral lands and territory, natural resources, and environment have been contaminated, destroyed, degraded, depleted, and endangered by Chevron's petroleum activities in the Amazon region in Ecuador, as found by the Ecuadorian Court; who were displaced from large areas of their ancestral lands and territory as a result of Chevron's petroleum activities; whose culture, way of life, subsistence, and economy were severely disrupted, harmed, and endangered as a result of Chevron's conduct; whose health was harmed and endangered by Chevron's conduct; whose rights were violated and impaired; and on whose behalf, among others, the Lago Agrio Judgment was entered. *See* Huaorani Intervenors' Proposed Answer and Cross-Complaint in Intervention, attached as Exhibit A to the Kimerling Decl. (hereinafter "Intervenors' Cross-Compl.") at ¶ 3. The Huaorani were named in the Lago Agrio Litigation as part of the group of "*Afectados*" for whom the Lago Agrio Judgment was rendered. *Id.*

Intervention by the Huaorani Intervenors is warranted in this case in order to:

(1) respond as a party to Chevron's challenges to the validity of the Lago Agrio Judgment due to the alleged conduct by Defendants Steven Donziger ("Donziger"), the Law Offices of Steven R. Donziger, and Donziger and Associates, PLLC (collectively the "Donziger Defendants"), the Lago Agrio Plaintiffs ("LAPs"), and the Ecuadorian nongovernmental organization Frente de Defensa de la Amazonia a/k/a Amazon Defense Front or Amazon Defense Coalition ("ADF") and their agents and associates (*see* Chevron Amended Complaint, ¶¶ 389-391, 415), and protect the Huaorani Intervenors' interests in the Lago Agrio Judgment;[3] and

---

[3]     In the pending action, Chevron filed a Complaint against (i) the Donziger Defendants; (ii) U.S.-based environmental consultants hired by Donziger; and (iii) Donziger's Ecuadorian colleagues and their alleged "front organizations," including ADF and ADF's lawyer, Pablo Fajardo Mendoza, who is also counsel of record for the LAPs in Ecuador. *See* Chevron Amended Complaint at ¶ 1. In the

(2) ensure efficient judicial resolution of the deemed-related Huaorani
Intervenors' cross claims against the Donziger Defendants and ADF, (but <u>not</u>
against the plaintiff victims in the Lago Agrio Litigation) for harm caused by
improperly claiming to represent the interests of the Huaorani Intervenors and by
failing to adequately represent or protect those interests in both this pending case
and the Lago Agrio Litigation.  *See* Intervenors' Cross-Compl. at ¶ 16; Huani
Complaint at ¶ 16.

In short, this case presents the truly extraordinary situation of a third party
with significant interests at stake, but without a rightful defender.[4]  First, the
Huaorani Intervenors have a direct and significantly protectable interest in
defending the validity of the Lago Agrio Judgment, which the Huaorani

---

Amended Complaint, Chevron alleges, *inter alia*, that the Donziger Defendants
and ADF conspired, together and with others, to "extort, defraud and otherwise
tortuously injure" Chevron by, among other things, bringing a "sham" lawsuit in
Lago Agrio and obtaining the Lago Agrio Judgment against Chevron through a
variety of illegal and corrupt means.  The claims remaining at issue in this lawsuit
are Chevron's claims for violations of  New York Judiciary Law § 487 (against the
Donziger Defendants), RICO (against all defendants except the LAPs), fraud
(against all defendants) and civil conspiracy (against all defendants).  *See* Dkt. 468
(May 24, 2012 decision on Motion to Dismiss).  While the Huaorani Intervenors
deny having any part in any alleged misconduct as asserted in the Chevron
Complaint, and deny having knowledge thereof, Rule 24 requires intervention as a
party plaintiff or defendant.  Because the Huaorani Intervenors' interests are most
closely aligned with the LAPs in the context of Chevron's claims, (but not
adequately represented by counsel for the LAPs), the Huaorani Intervenors seek to
intervene as a party defendant to the claims against the LAPs only, in order to
protect their interests in the Lago Agrio Judgment.  Thus, a proposed Answer to
Chevron's claims of fraud and civil conspiracy only, and not the RICO claims, is
lodged herewith.  *See* Intervenors' Proposed Answer and Cross-Complaint (Ex. A
to Kimerling Decl.) at ¶¶ 388-395 and 414-419.  The Huaorani Intervenors also
seek to file a Cross-Complaint to assert cross-claims for declaratory relief, breach
of fiduciary duty/constructive trust, unjust enrichment and accounting against the
Donziger Defendants and ADF.  *Id.*

[4]     Indeed, none of the proposed Huaorani Intervenors has ever entered into any
retainer agreement with the Donziger Defendants, ADF, and/or any of their
associates, and are informed and believe that no member of the Huaorani People
has ever entered into a retainer agreement with the Donziger Defendants, ADF,
and/or any of their agents or associates to represent their interests in the Lago
Agrio Litigation.  *See* Kimerling Decl., ¶ 20; Intervenors' Cross-Compl. at ¶ 16.

Intervenors contend is valid regardless of any alleged misconduct by the Donziger Defendants and/or ADF -- conduct with which the Huaorani Intervenors have no involvement and about which they have no firsthand information or knowledge, with the exception of information about the Donziger Defendants' and ADF's (and their agents' and associates') purported representation of the Huaorani. *See* Huani Compl. at ¶¶ 16, 19; Intervenors' Cross-Compl. at ¶¶ 16, 19.  Although this case is not directly an enforcement proceeding, it is clear that an underlying purpose of Chevron's pending action is to obtain a judgment with rulings on important issues that could be used to challenge enforcement of the Lago Agrio Judgment in the United States and abroad.  *See, e.g.*, *Aerotel, Ltd. v. IDT Corp.,* 486 F. Supp. 2d 277, 283 (S.D.N.Y. 2007) (citing *Hilton v. Guyot,* 159 U.S. 113 (1895)) (A court will not grant comity to foreign judgments when the judgment was rendered via fraud).[5]

 Second, Chevron's remaining claims at issue in this case directly overlap

---

[5] *See also Société Eram Shipping Company Limited and others v Hong Kong and Shanghai Banking Corporation Limited*, (2003) UKHL 30 (U.K. court declining to enforce foreign judgment obtained by fraud); *Hague Convention on Choice of Court Agreements,* June 30, 2005, 44 I.L.M.1294, Article 9 (recognition or enforcement of foreign judgment may be refused if the judgment was obtained by fraud); *Inter-American Convention on Extraterritorial Validity of Foreign Judgments and Arbitral Awards*, 1439 UNTS 87; OASTS No. 51; 18 ILM 1224 (1979), Article 2 (no extraterritorial validity of foreign judgment if it is manifestly contrary to principles and laws of public policy); *Council Regulation (EC) No 44/2001 of 22 December 2000 on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters ("Brussels I Regulation")*, Article 34 (foreign judgment shall not be recognized if it is contrary to public policy in the Member State in which recognition is sought); *Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters (Brussels)*,1262 UNTS 153; 8 ILM 229 (1969) ("Brussels Convention"), Article 27 (foreign judgment shall not be recognized if recognition would be contrary to public policy in the State in which recognition is sought).

with the Huaorani Intervenors' asserted claims, which call into question whether the Donziger Defendants and/or ADF properly represent Huaorani Intervenors' interests and rights to benefit from their portion of the Lago Agrio Judgment. *See* Intervenors' Cross-Compl. at ¶¶ 54-98.  For example, Chevron has alleged, *inter alia*, that: (i) the Donziger Defendants and ADF are planning to unlawfully control nearly all of the proceeds from the Lago Agrio Judgment, including remedial monies that were earmarked for environmental remediation, compensation and mitigation measures for the benefit of the affected communities and their members, including the Huaorani Intervenors (Chevron Amended Complaint at ¶¶ 65-66); (ii) that any amounts that the Donziger Defendants and ADF collect on the Lago Agrio Judgment will be "dissipated and funneled to off-shore havens beyond the reach of U.S. Courts." (Dkt. 405 at 8); (iii) that the Donziger Defendants and ADF have made agreements with funders and third-party investors in exchange for interests in the Lago Agrio Judgment, and have already collected more than $10 million by selling shares in the Lago Agrio Judgment (Dkt. 405 at 10, 16); (iv) that the Donziger Defendants and ADF "admit their intention to continue selling off pieces" of the Lago Agrio Judgment (Dkt. 405 at 16, citing Dkt. 365 at 13-15); and (v) that the Republic of Ecuador reportedly expects to receive ninety percent (90%) of the proceeds of the Lago Agrio Judgment (Chevron Amended Complaint at ¶ 65).  Likewise, the Huaorani Intervenors believe and have alleged that, should the LAPs recover any proceeds through enforcement proceedings,[6] ADF will not properly distribute any portion of the judgment proceeds to compensate or repair harms to the Huaorani.  *See* Intervenors' Cross-Compl. at ¶ 22; Huani Compl. at ¶ 22.  For these reasons, the Huaorani Intervenors seek leave to assert cross-claims

---

[6]    According to reports in the press, the Donziger Defendants and ADF are currently pursuing legal actions in Canada, Brazil and Argentina to enforce the Lago Agrio Judgment and collect monies from Chevron.  *See* Kimerling Decl., ¶ 17.

against the Donziger Defendants and ADF for declaratory relief, breach of fiduciary duty/constructive trust, unjust enrichment and accounting.  *See* Intervenors' Cross-Compl. at ¶¶ 54-98 (Ex. A to Kimerling Decl.).

Third, should the Huaorani Intervenors be required to bring parallel state court litigation in order to assert their claims against the Donziger Defendants and ADF, there would be a likelihood of inconsistent findings of fact and rulings of law, as well as an inefficient overlap in judicial resources.  *See United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002).  Further, should the claims pending in this lawsuit be decided in favor of Chevron, the Huaorani Intervenors would likely be left with no recourse to pursue remedies for the harm suffered at the hands of Chevron.  Although counsel for the LAPs and ADF were never authorized to represent the interests of the Huaorani in the Lago Agrio Litigation, their continued assertions to the contrary could have collateral estoppel effect on the ability of the Huaorani Intervenors and other members of the Huaorani People to seek redress for the damages caused to them, to their communities, to their family groups, and to the Huaorani People.  *See Overview Books, LLC v. United States*, 438 Fed. Appx. 31, 33 (2d Cir. 2011).

In sum, the presence of the Huaorani Intervenors before this Court is necessary to ensure that the Huaorani's legally protectable interests are adequately represented during the pending action between Chevron and the Donziger Defendants (and associates), which directly challenges the Lago Agrio Judgment to which the Huaorani are beneficiaries, and that the rights of the Huaorani to their portion of the Lago Agrio Judgment are secured so that they may be recompensed for the significant harm and damage caused to the natural resources in their ancestral lands, and to their health, environment, culture, economy, and way of life which were adversely affected and disrupted by Chevron's misconduct, as alleged and adjudicated in the Lago Agrio Litigation. Fed. R. Civ. P. 24(a), (b).  As set

forth in detail below, this Motion is timely and meets all relevant requirements of Rule 24.

## II.   STATEMENT OF RELEVANT FACTS

For purposes of this Motion, the background facts relevant to the history of the Lago Agrio Litigation, the Lago Agrio Judgment, and related litigation in the United States are succinctly stated by the Second Circuit in its January 26, 2012 decision. *See Chevron Corp. v. Camacho Naranjo*, 667 F.3d 232, 234-239 (2d Cir. 2012). A complete factual background pertaining specifically to the Huaorani Intervenors are fully set forth in the Complaint filed in the Huani Action, deemed a related case in this matter.

The affected Indigenous peoples and communities who are the intended beneficiaries of the Lago Agrio Judgment include the proposed Huaorani Intervenors and their communities and family groups, and the Huaorani people. The suggestion to have ADF (who had not been a party to the Lago Agrio Litigation) be responsible for administering the relief in the Lago Agrio Litigation was apparently made by the lawyers and ADF, without consulting the Huaorani and other affected Indigenous peoples and communities.[7] *See* Kimerling Decl., ¶ 10; Intervenors' Cross-Compl. at ¶ 57. Further, on the website maintained by ADF and the U.S. based NGO Amazon Watch to support the Lago Agrio Litigation, ADF claims to represent all of the *Afectados*, including the Huaorani and other Indigenous peoples, as well as settlers (colonists), who have been affected by

---

[7]   To ensure the proper administration and distribution of the Lago Agrio Judgment proceeds to the benefit of the affected communities and community members, Judge Zambrano directed the plaintiffs to establish a trust fund for the judgment monies, with ADF or the person or persons it designates as the beneficiary of the trust, and with ADF or the person or persons it designates as the director(s) of the trust. The decision by the Appellate (Sole) Division of the Provincial Court of Justice of Sucumbíos affirming the Lago Agrio Judgment in all material respects further directed the plaintiffs to establish a second trust fund to administer the punitive damages monies, leaving its instructions and direction to the same board of directors that will manage the trust with the monies for the Environmental Remedial Measures.

Chevron's actions in the Ecuadorian Amazon.  *See* Kimerling Decl., ¶ 12; Intervenors' Cross-Compl. at ¶ 15.

However, as discussed more fully below, the Huaorani Intervenors dispute such representation, maintaining that ADF and its lawyers and associates were never authorized to represent their interests in connection with the Lago Agrio Litigation.  *See* Huani Compl. at ¶ 16; Intervenors' Cross-Compl. at ¶ 16.  Further, efforts by the Huaorani Intervenors to obtain meaningful information from ADF about the basis and scope of its purported representation of the Huaorani and whether ADF will distribute any portion of the Lago Agrio Judgment to remediate, compensate and mitigate the harms that the Huaorani Intervenors and other Huaorani have suffered, have been rebuffed.  *See* Kimerling Decl., ¶¶ 13-16, 18, 24; Intervenors' Cross-Compl. at ¶ 65.

On January 18, 2012, various representatives of the Huaorani Intervenors sent a letter to ADF seeking clarification regarding the basis of its (and its lawyers) purported representation of the Huaorani, and requesting meaningful information about plans to distribute any portion of the Lago Agrio Judgment to repair and compensate harms to the Huaorani.  *See* Ex. B to Kimerling Decl.; Intervenors' Cross-Compl. at ¶ 18.

In response to such letter, ADF admitted that it had attempted to communicate with the Huaorani but had not been able to do so– explicitly acknowledging that ADF has never obtained authorization to represent the interests of the Huaorani Intervenors or other Huaorani, or informed or consulted with the Huaorani in connection with the conduct of the Lago Agrio Litigation or ADF's and the Donziger Defendants' purported representation of the Huaorani's interests.  *See* Ex. C to Kimerling Decl.; Intervenors' Cross-Compl. at ¶ 19.[8]  In addition,

---

[8]   Nonetheless, as a result of the Donziger Defendants' and ADF's actions in connection with the Lago Agrio Litigation, and of the Lago Agrio Judgment consequently entered and affirmed on appeal, the Donziger Defendants and ADF

ADF refused to acknowledge that it would distribute any portion of the Lago Agrio Judgment to the Huaorani Intervenors to compensate and/or repair the injuries they have suffered.  *Id.*  ADF also refused to disclose whether allegations regarding a possible deal with the Republic of Ecuador that would entrust Ecuador's government to receive and administer monies from the Lago Agrio Judgment are true. *Id.*

## III.   SUMMARY OF ARGUMENT

As set forth in detail below, the Huaorani Intervenors satisfy the requirements for intervention as of right under Federal Rule Civil Procedure 24(a).

First, the motion to intervene is timely because it is filed at the point at which the Huaorani Intervenors first: (1) knew or reasonably should have known that the Lago Agrio Judgment, in which they have a legally protectable interest, had been rendered and certified as enforceable under Ecuadorian law, and that their right to the remedies ordered by the Ecuadorian Court appears to be controlled by ADF and the Donziger Defendants; (2) knew or should have known that the Lago Agrio Judgment (including the Huaorani's interests therein) was being challenged by Chevron and could potentially be jeopardized by rulings in the instant action before this Court; and (3) could reasonably be expected to retain counsel and determine whether ADF and its attorneys have a conflict of interest, whether ADF would provide meaningful information regarding administration of the portion of the Lago Agrio Judgment that pertains to the Huaorani, and whether the Huaorani Intervenors could be assured by and establish trust that their interests in the judgment and in external litigation related to the judgment would be protected.

Upon resolving the last issue in the negative, the Huaorani Intervenors filed the related Huani Action.  This Motion is being filed not only in response to the

---

owe a fiduciary duty to the Huaorani Intervenors.  *See* Intervenors' Cross-Compl. at ¶¶ 16, 59, 68-69, 72. 79, 92.

Donziger Defendants' recent claim in the Huani Action that this Court does not have subject matter jurisdiction over the Huaorani Intervenors' claims, but also to protect the interests of the Huaorani Intervenors in this action and to ensure that their related claims can be resolved by this Court in this action, where there are common issues of fact and law (rather than in duplicative parallel state court litigation).  *See* Kimerling Decl., ¶¶ 12-19.

Second, this pending action, which directly challenges and puts in issue the rights of the Huaorani Intervenors to the remedies awarded by the Lago Agrio Judgment, is still in pre-trial litigation (with an October 13, 2013 trial date and May 31, 2013 deadline for the parties to complete discovery); thus, the Huaorani Intervenors' intervention at this stage would not unduly delay the proceedings or prejudice the interests of the existing parties.

Third, the Huaorani Intervenors have significant interests in this case, including, but not limited to, protection of their share of the Lago Agrio Judgment (awarded to repair and compensate damages sustained by the Huaorani and other persons affected by Chevron's petroleum activities), which is a direct and substantial economic interest that would likely be impaired by a judgment in favor of Chevron in this action.  Indeed, any findings of fact or law with respect to Chevron's RICO, fraud and civil conspiracy claims could be used with collateral estoppel effect in the United States and other foreign courts to preclude enforcement of the Lago Agrio Judgment, as well as to preclude any later action by the Huaorani against Chevron, thus leaving the Huaorani Intervenors with no recourse to pursue remedies for the damages caused by Chevron.

Fourth, the Huaorani Intervenors will be severely prejudiced if they are not permitted to participate as Intervenors; in addition to being left with the possible effects of collateral estoppel, the Huaorani Intervenors will be required to litigate their claims in parallel state court litigation which would likely result in

inconsistent rulings. [9]

Fifth, the unusual circumstances in this case strongly favor litigating all of the related claims and allegations in this action before this Court, rather than in parallel state court proceedings.  The complex and protracted litigation related to the Lago Agrio Judgment has been on-going for nearly two decades, effectively depriving the Huaorani Intervenors (as well as the LAPs) of their rights to a remedy for serious harms caused by Chevron.  Further, the fact that the Donziger Defendants insist that they and ADF represent the interests of the Huaorani strongly favors intervention at this time, as such assertion, if believed, will prejudice the interests of the Huaorani by directly binding and impacting the Huaorani Intervenors, their communities and family groups, and other members of the Huaorani People, despite their exclusion from decision making processes in the Lago Agro Litigation.

Accordingly, the Court should grant the Huaorani Intervenors' motion to intervene as of right, and allow them to ensure that their rights and interests in the Lago Agrio Judgment are protected, at such time as this Court deems appropriate.  Alternatively, the Huaorani Intervenors also meet the less strenuous requirements of Federal Rule Civil Procedure 24(b), for permissive intervention in this case.

## IV.   ARGUMENT

### A.   Intervention Is Warranted under Federal Rule of Civil Procedure 24(a)

Federal Rule of Civil Procedure 24(a)(2), which governs intervention as of right, states in pertinent part:

Upon timely application anyone shall be permitted to intervene in an action .

---

[9]    As set forth below, there is no prejudice to the parties as the proposed intervention will neither disrupt the trial schedule nor burden the parties. *See* Kimerling Decl., ¶ 21.

. . (2) when the applicant claims an interest relating to the property or
transaction which is the subject of the action and the applicant is so situated
that the disposition of the action may as a practical matter impair or impede
the applicant's ability to protect that interest, unless the applicant's interest is
adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2).  The purpose of Rule 24 intervention is twofold:  "to
foster economy of judicial administration and to protect non-parties from having
their interests adversely affected by litigation conducted without their
participation."  *See, e.g., Stallworth v. Monsanto Co.*, 558 F.2d 257, 265 (5th Cir.
1977).  The Second Circuit has summarized Rule 24(a)(2) as follows: "To
intervene as of right, a movant must: (1) timely file an application, (2) show an
interest in the action, (3) demonstrate that the interest may be impaired by the
disposition of the action, and (4) show that the interest is not protected adequately
by the parties to the action."  *See Gulino v. Bd. of Educ.,* 2009 U.S. Dist. LEXIS
84677 (S.D.N.Y. Sept. 16, 2009) (citing *Brennan v. N.Y. City Bd. of Educ.*, 260
F.3d 123, 128-29 (2d Cir. 2001); *see also Wash. Elec. Coop., Inc. v. Mass. Mun.
Wholesale Elec.*, 922 F.2d 92, 96 (2d Cir. 1990).  Each of these requirements must
be evaluated liberally in favor of intervention:

A liberal policy in favor of intervention serves both efficient resolution of
issues and broadened access to the courts.  By allowing parties with a
practical interest in the outcome of a particular case to intervene, [the court]
often prevent[s] or simplif[ies] future litigation involving related interests; at
the same time, [the court] allow[s] an additional interested party to express
its views . . . .

*See United States v. City of Los Angeles*, *supra,* 288 F.3d at 398.

In reviewing these factors, "a district court is required to accept as true the
nonconclusory allegations made in support of an intervention motion." *Southwest*

*Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001); *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 543 (1st Cir. 2006).

The Huaorani Intervenors easily satisfy all four requirements.

### 1.     The Motion is Timely

The Huaorani Intervenors meet the timeliness requirements of Rule 24(a)(2) to intervene in this pending litigation involving the Lago Agrio Judgment.  To determine whether an intervention motion is timely, the Second Circuit considers four factors: "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003) (quoting *United States v. Pitney Bowes, Inc*., 25 F.3d 66, 70 (2d Cir. 1994)).

Intervention after the liability phase of litigation "can be timely when the remedy will affect the rights of the intervening third party." *See United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 596 (2d Cir. 1986).  Likewise, courts have permitted parties to intervene at the post-judgment remedy phase only.  *See, e.g., Ctr. for Biological Diversity v. Delgado*, 61 Fed. Appx. 381 (9th Cir. 2003); *see also United States  v. Covington Technologies Co.,* 967 F.2d 1391, 1394 (9th Cir. 1992) (holding that the court may permit intervention at any stage in the proceeding, including post-judgment).  Where post-judgment intervention is sought by a nonparty in order to participate in the relief or appellate phases of a litigation, "[t]he critical inquiry . . . is whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment," *e.g.*, usually within the time to file an appeal.  *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395-96, 97 S. Ct. 2464, 2470-2471 (1977) (holding that because the post-judgment motion to intervene was filed within the time period for taking an appeal, said

motion was timely); *Spirt v. Teachers Ins. & Annuity Ass'n*, 93 F.R.D. 627, 637

(S.D.N.Y. 1982) (denying post-judgment intervention where applicant waited to

file until approximately two years after final judgment was entered),  aff'd in part

and rev'd in part on other grounds, 691 F.2d 1054 (2d Cir. 1982), vacated on other

grounds, 463 U.S. 1223 (1983), 103 S. Ct. 3565 (1983) (internal citations

omitted).[10]  Thus, it is entirely proper that the Huaorani Intervenors bring this

Motion to Intervene post-Lago Agrio Judgment, but during pre-trial litigation in

the pending action.

> ### i.     The Motion is Timely Given the Recent Discovery by the Huaorani Intervenors that Their Interests in the Lago Agrio Judgment Are Not Adequately Represented

The Second Circuit has adopted a "presumption of adequate representation

that arises when [a putative intervenor] has the same ultimate objective as a party

to the existing suit."  *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir.

1978).  Thus, the Second Circuit has held that when there is an "identity of interest

between a putative intervenor and a party, adequate representation is assured."

*Wash. Elec.*, 922 F.2d at 98  *See also*, *Butler, Fitzgerald & Potter v. Sequa Corp.*,

250 F.3d 171, 179 (2d Cir. 2001) ("We have demanded a more rigorous showing

---

[10]     "Post-judgment intervention is often permitted . . . where the [applicant's] interest did not arise until [judgment was entered] or where intervention would not unduly prejudice the existing parties."  *Acree v. Republic of Iraq*, 370 F.3d 41, 50 (D.C. Cir. 2004), superseded by statute on other grounds (citing *Wright & Miller* § 1916); *see also* 20 Moore's Federal Practice-Civil § 303.10(b) (stating that, if the representation at trial was adequate, the represented person had no reason to intervene and in fact, likely would not have had the right to intervene, and that the failure of the representative to appeal or a divergence of interest has been found to create the inadequacy of representation necessary to warrant intervention at the post-judgment stage); *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001) ("Prior to the entry of judgment, the appellants['] . . . interests were adequately represented by the Government . . . [and the] potential inadequacy of representation came into existence only at the appellate stage." (internal quotations omitted)).  In these situations, intervention is often granted as of right under Federal Rule Civil Procedure 24(a).  *See, e.g., Smoke*, 252 F.3d at 470-71; *Acree*, 370 F.3d at 50.

of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective").

In the Lago Agrio Litigation, when the LAPs and their counsel were prosecuting claims against Chevron for the benefit of the affected communities and community members of the Ecuadorian Amazon ("the *Afectados*"), they and the Huaorani shared the same ultimate objective – prosecution of claims to judgment in order to achieve recourse for the environmental damage and other harms caused to the *Afectados* - and, therefore, the presumption of adequate representation applied.  However, as noted above, since the Lago Agrio Judgment (which did indeed include compensation and other remedies for the Huaorani, among others) was issued and affirmed on appeal, the Huaorani Intervenors learned for the first time that the Judgment includes remedies for the benefit of the Huaorani, and that their right to those remedies appears to be controlled by ADF and the Donziger Defendants.  In other words, they learned that they possess a substantial legal interest in the enforcement of the Lago Agrio Judgment, but that their interests in the Judgment would be controlled by others.  *See* Kimerling Decl., ¶ 19; *see also* Chevron Amended Complaint at ¶¶ 65-66 ("The individual Lago Agrio Plaintiffs, on the other hand, will not receive any portion of the judgment, and thus are at most only nominal plaintiffs. . . . In effect, the RICO Defendants are planning to control nearly all of the proceeds from the judgment, shutting out the Lago Agrio Plaintiffs, the Republic of Ecuador and Petroecuador . . .").

Subsequently, after retaining legal counsel in order to understand and protect their interests in the Lago Agrio Judgment, and seeking meaningful information from ADF regarding their interests (and concerns), the Huaorani Intervenors learned for the first time that ADF has no interest in distributing any portion of the Lago Agrio judgment to the Huaorani, or providing meaningful information about how it plans to repair and/or compensate the injuries suffered by the Huaorani

Intervenors and other Huaorani; that ADF would not provide meaningful information to the Huaorani Intervenors about the basis or scope of its purported representation of the Huaorani, or disclose whether reports that it had made a deal with the Republic of Ecuador that would entrust Ecuador's government to receive and administer monies from the judgment were true; that alleged misconduct by the Donziger Defendants and ADF had jeopardized the enforceability of the Lago Agrio Judgment and the Huaorani Intervenors' right to remedies; that counsel for the LAPs has a conflict of interest with the Huaorani; and that the Huaorani's interests in the Lago Agrio Judgment are not being adequately represented or protected by counsel for the LAPs, the Donziger Defendants, and/or ADF in this case. *See* Kimerling Decl., ¶¶ 12-19, 24.

Thus, only after receiving inadequate responses from ADF to questions about the Huaorani's interests in the Lago Agrio Judgment did the interests of the Huaorani Intervenors clearly diverge from those of the LAPs, so that they could reasonably conclude that such interests are threatened and are not adequately represented by Donziger, ADF, and/or counsel for the LAPs, and they had no option other than to take legal action with their own counsel . *See* Kimerling Decl., ¶¶ 19, 24; Exs. B-D to Kimerling Decl. (summarizing the January 26, 2012 letter from ADF, in which ADF acknowledges that "since a long time ago, we have tried to speak with all of you through the leaders and other persons of the waorani nationality, but it has not been possible to do so," but fails to provide the information requested by the Huaorani representatives).

Subsequently, the Huaorani Intervenors filed a separate action in the Southern District of New York for declaratory relief, constructive trust, unjust enrichment, and accounting - in the Huani Action - and on September 6, 2012, this Court deemed the Huani Action related to the instant case. *See* Kimerling Decl., ¶¶ 3-4.  After delays due to several unsuccessful attempts by the Huaorani plaintiffs in

the Huani Action to serve the summons on the Donziger Defendants, the Donziger Defendants accepted service and notified Huani counsel they objected to the jurisdiction of this Court.  *Id.* at ¶ 5.  The Huani Plaintiffs agreed to consider amending the complaint, and now have determined that the most efficient procedural mechanism for resolving any potential jurisdictional issues in the context of the related cases, would be to intervene in the instant case and assert their rights, interests and claims herein.  *Id.*

 Because the Huaorani Intervenors filed this Motion at the first point in which they reasonably knew that their interests were not being protected and that the Donziger Defendants would challenge the subject matter jurisdiction of this Court over the Huaorani Intervenors' claims in the Huani action (and compel them to file a parallel lawsuit in state court which could not be litigated as a related action), the Motion to Intervene for purposes of participating in this lawsuit is timely and should be granted as of right, as the Huaorani Intervenors have proceeded expeditiously to intervene since learning of these circumstances.  *See Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 782 F. Supp. 870 (S.D.N.Y. 1991) (motion to intervene determined to be timely when filed almost two years after notice of interest in case, because motion was filed shortly after interest became direct).

## ii.   There Will Be No Undue Delay or Prejudice to the Existing Parties

The Huaorani Intervenors' Motion to Intervene in this pending litigation, in which the validity of the Lago Agrio Judgment has been put into issue by Chevron, is also timely under Federal Rule of Civil Procedure 24(a)(2) because it will not cause undue delay or prejudice to the existing parties to this action.  The "prejudice" prong of the timeliness standard under Rule 24 focuses on whether the applicant's delay in seeking intervention (not the intervention itself) will prejudice

the existing parties.  *See Fiandaca v. Cunningham*, 827 F.2d 825, 834 (1st Cir. 1987).  As a general rule, prejudice to existing parties is less likely in a case where, as here, it does not seek to disturb the core judgment, but merely to obtain some other kind of relief.  *See Caterino v. Barry*, 922 F.2d 37, 41 (1st Cir. 1990).

In the present case, the Huaorani Intervenors' intervention for the purpose of protecting and securing their rights to their portion of the Lago Agrio Judgment will not result in undue delay or other prejudice to the existing parties.[11]  The Huaorani Intervenors do not seek any major changes to the current scheduling order, which sets a trial date of October 13, 2013 and a discovery cut-off of May 31, 2013.[12]  Further, the Huaorani Intervenors anticipate at this time that they will participate in the discovery that is already underway in this matter, with some limited additional discovery on overlapping issues, such as the basis for the Donziger Defendants' and ADF's claimed representation of the Huaorani in the Lago Agrio Litigation, (*see* Chevron Amended Complaint ¶¶ 65-66; Intervenors' Cross-Compl. at ¶¶ 65-66,73), their plans for administering any proceeds from the Lago Agrio Judgment (including the status of enforcement actions) (*see* Chevron Amended Complaint ¶¶ 65-66; Intervenors' Cross-Compl. at ¶¶ 8, 82), and allegations that the Donziger Defendants and ADF have made agreements with funders and third party investors in exchange for interests in the Lago Agrio Judgment (Chevron Amended Complaint ¶¶ 65-66, 328-330; Intervenors' Cross-Compl. at ¶¶ 16, 28, 59, 67, 74-75), and that the Republic of Ecuador reportedly

---

[11]      Indeed, it would be in Chevron's interest that all parties affected by the future enforcement and distribution of the Lago Agrio Judgment, including the Huaorani Intervenors, be permitted to participate in the present litigation so as to avoid any subsequent actions involving the Huaorani for redress of damages caused to them by Chevron, or any inconsistent rulings by a state court.

[12]      The only minor change that the Huaorani Intervenors would seek would be a short extension of the deadline for serving written discovery requests, currently set for December 1, 2012, to twenty (20) days after the date when the Huaorani Intervenors are permitted to intervene.  *See* June 25, 2012 Scheduling Order, Dkt. 494; *see also* Kimerling Decl., ¶ 21.

expects to receive ninety percent (90%) of the proceeds of the Lago Agrio Judgment (Chevron Amended Complaint ¶ 65; Intervenors' Cross-Compl. at ¶¶ 14, 77, 90); Kimerling Decl., ¶ 21.

Further, the Huaorani Intervenors do not anticipate offering any evidence at trial that would not also be relevant to the issues already before the Court. Indeed, the issues presented by the parties to this case overlap substantially with the issues presented in the Intervenors' Cross-Complaint, including, but not limited to: (1) the enforceability of the Lago Agrio Judgment; (2) the proper role of the various parties, including ADF and counsel for the LAPs, in the distribution of the Lago Agrio Judgment; and (3) the adequacy of representation of the LAPs and other Afectados by the Donziger Defendants. Further, discovery directed to the Huaorani Intervenors should be limited, as the Huaorani Intervenors, possess little information relevant to Chevron's claims or the Donziger Defendants' and LAPs' defenses. *See* Kimerling Decl., ¶ 21. As noted above, the Huaorani Intervenors did not directly participate in the Lago Agrio Litigation or in decision-making processes related to the conduct of the litigation. *See* Kimerling Decl.,¶ 15.

The alternative to intervention under Rule 24—a separate parallel lawsuit in state court—would likely be more prejudicial to the parties because it would present a risk of inconsistent rulings and create an inefficient overlap in judicial resources. *See United States v. City of Los Angeles,* 288 F.3d at 398; *see also Stallworth,* 558 F.2d at 265 (The purpose of Rule 24 intervention is "to foster economy of judicial administration and to protect non-parties from having their interests adversely affected by litigation conducted without their participation.").

Accordingly, because the Huaorani Intervenors' intervention for the purpose of participating in the defense of the Lago Agrio Judgment and protecting their rights therein would not result in undue delay or prejudice to the existing parties, the motion to intervene is timely and should be granted as of right.

19

### iii.    Denial of This Motion Would Severely Prejudice the Huaorani Intervenors

The Huaorani Intervenors' motion to intervene for the purpose of securing the rights and remedies awarded to them in the Lago Agrio Judgment is also timely because the Court's denial of this motion would result in extreme prejudice to the Huaorani Intervenors.  *See, e.g., Pitney Bowes*, 25 F.3d at 70; *Hurd v. Ill. Bell Tel. Co.*, 234 F.2d 942 (7th Cir. 1956) (granting motion to intervene after judgment on appeal because the case was "so fraught with elements of possible prejudice" to applicants and defendants showed no prejudice from intervention), cert. denied, 352 U.S. 918 (1956), 77 S. Ct. 216 (1956); *Heaton v. Monogram Credit Card Bank*, 297 F.3d 416, 424 (5th Cir. 2002) (denying intervention would deprive the applicant of "the opportunity to exercise the legal rights associated with formal intervention" and ability to appeal" (citations omitted)); *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259-60 (11th Cir. 2002) (finding that applicant would be prejudiced if its motion to intervene were denied).

As discussed above, the Huaorani Intervenors have filed this Motion to Intervene as a third party in this action and have asserted, *inter alia*, a vested interest in ensuring that the remedies awarded by the Ecuadorian court for the benefit of the affected Indigenous peoples be properly administered and distributed by ADF and the Donziger Defendants to repair and compensate the suffering of the affected communities and community members, including the Huaorani Intervenors and other Huaorani.  In the event that this matter proceeds without the Huaorani Intervenors, there is a substantial likelihood that issues of fact and/or law will be decided which directly affect the right to the remedies afforded to the Huaorani by the Lago Agrio Judgment.  Any decision or finding by this Court that the Donziger Defendants and ADF engaged in any alleged fraud or illegal conduct related to the Lago Agrio Judgment could be applied by principles of former

adjudication in any subsequent actions involving the Huaorani, and could greatly prejudice the Huaorani by precluding them from obtaining the remedies afforded to the Huaorani by the Lago Agrio Judgment or otherwise pursuing remedies for the injuries they suffered at the hands of Chevron.  *See* Lago Agrio Judgment at pp. 176-186.

Indeed, as noted above, although counsel for the LAPs and ADF were never authorized to represent the interests of the Huaorani in the Lago Agrio Litigation, they did claim to represent their interests in such litigation, and their continued assertions on behalf of the Huaorani could have collateral estoppel effect on the Huaorani Intervenors' ability to seek redress for the damages caused to themselves, their communities and family groups, and the Huaorani People during the enforcement stage of the Lago Agrio Litigation.  *See Overview Books, LLC, supra*, 438 Fed. Appx. at 33 (a party is collaterally estopped from raising an issue if "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.") (citing *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997)).

### iv.   The Unusual Circumstances in this Case Militate For a Finding That This Motion is Timely

Finally, there are serious and unusual circumstances that strongly favor intervention, including but not limited to, (1) the fact that litigation related to and involving the Lago Agrio Judgment has been extremely protracted and on-going since 1993, without any final resolution to remedy the harms caused to the Huaorani Intervenors and other *Afectados*; (2) the assertion by the Donziger Defendants and ADF that they represent the interests of the Huaorani, which has been challenged by the Huaorani Intervenors, demands resolution prior to a final

decision on the enforceability of the Lago Agrio Judgment, and participation by the Huaorani Intervenors would also contribute to the full development of related and overlapping factual and legal issues presented in this matter; and (3) parallel litigation will likely result in further complex and burdensome re-litigation of issues to be decided by this Court.  These circumstances strongly favor intervention in order for all of the parties' issues to be resolved in one action.  *See In re Bank of N.Y. Derivative Litig*., 320 F.3d 291 at 300 (citing *Pitney Bowes*, 25 F.3d at 70); *Fiandaca*, 827 F.2d at 835 (reversing district court's denial of intervention where "unusual circumstances" included the applicant's potential to remedy a factually insufficient record and the Court's view that "all concerned would have benefited from the [applicant's] participation"); *Bates v. Jones*, 127 F.3d 870, 874 (9th Cir. 1997) (allowing intervention on appeal where the Secretary of State had indicated that he would enforce the ruling of the Circuit Court only as to those parties named in the action).

Given such "unusual circumstances," the potential for severe prejudice to the Huaorani, and the totality of the other factors in this case, the Huaorani Intervenors' Motion to Intervene is timely.

### 2. The Huaorani Intervenors Have a Direct, Substantial and Legally Protectable Interest in This Action

The Huaorani Intervenors have substantial legal interests in the subject matter of this suit.  For an interest to be cognizable under Rule 24 (a)(2), it must be "direct, substantial, and legally protectable."  *Brennan v. N.Y. City Bd. of Educ.*, 260 F.3d at 129 (quoting *Wash. Elec.*, 922 F.2d at 97) (citing*, inter alia, Res-tor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2d Cir. 1984) ("Such an interest must be direct, as opposed to remote or contingent.").  "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes

colorable, will not satisfy the rule." *Id.* (quoting *Wash. Elec.*, 922 F.2d at 97). However, Rule 24 (a)(2) does not require that an intervenor prove a property right, and a direct and substantial economic interest in the litigation can suffice. *Id.* (citing *N.Y. Pub. Interest Research Group, Inc. v. Regents of Univ. of State of N.Y.*, 516 F.2d 350, 351-52 (2d Cir. 1975). Further, "an interest that is otherwise sufficient under Rule 24(a)(2) does not become insufficient because the court deems the [merits of a potential intervenor's claims] to be legally or factually weak." *See Brennan*, 260 F. 3d at 130.

To find the Huaorani Intervenors' legally protectable interest, the Court need look no further than the Lago Agrio Judgment. As described above, the Huaorani are among the Indigenous peoples of the Ecuadorian Amazon who were found by the Ecuadorian Court to be harmed by severe environmental damage and devastation to their land, environment, natural resources, culture, economy, subsistence, health, and way of life due to Chevron's petroleum operations, and for whose benefit the environmental remediation, compensation, and mitigation measures and the punitive damages were awarded. *See* Lago Agrio Judgment at pp. 176-183.

### 3. The Huaorani Intervenors' Interest in the Lago Agrio Judgment May be Impaired by the Disposition of This Action

The Huaorani Intervenors have direct, substantial, and legally protected interests, including property and financial interests, which may be severely impaired by the disposition of this case. Chevron is asserting claims for fraud and racketeering that allegedly occurred during the Lago Agrio Litigation. If Chevron succeeds on those claims, it could potentially use such a judgment to collaterally attack the validity of the Lago Agrio Judgment - in which the Huaorani Intervenors have an interest - in enforcement actions in the United States and abroad. *See, e.g.,*

*Aerotel, Ltd., supra,* 486 F. Supp. 2d at 283 (citing *Hilton v. Guyot,* 159 U.S. 113 (1895)) (A court will not grant comity to foreign judgments when the judgment was rendered via fraud).  *See also* n. 5, supra.  Thus, a final determination in favor of Chevron on those claims would likely impair the interests of the Huaorani Intervenors in their portion of the Lago Agrio Judgment, particularly given the insistence by the Donziger Defendants and ADF that they represent the Huaorani (even though said representation has been challenged by the Huaorani Intervenors).  *See* Intervenors' Cross-Compl. at ¶ 16.

Judicial findings regarding several issues in this matter could have collateral estoppel effect if the Huaorani Intervenors are forced to litigate their claims in state court – or if they pursue claims against Chevron in subsequent litigation in the event that the state court determines that the Huaorani were not adequately represented.  Such issues, which directly affect the rights of the Huaorani Intervenors, include, *inter alia:* (1) whether the Donziger Defendants and ADF intend to direct compensation, remediation, and mitigation monies from the Lago Agrio Judgment to the affected Huaorani communities and community members; (2) whether the Lago Agrio Judgment or any portion of the Judgment in favor of the Huaorani was procured by fraud or racketeering activity (Dkt. 468, at 28-29 (May 14, 2012 Opinion on Motion to Dismiss Amended Complaint) ("Chevron does not allege a scheme that consisted of the allegedly baseless Lago Agrio litigation, either in and of itself or in combination with allegedly false and defamatory statements.  Rather, it alleges that the RICO Defendants are executing a multi-faceted, extortionate scheme that has included not only bringing the Lago Agrio litigation, but also intimidating of Ecuadorian judges, fabricating evidence, making false statements to U.S. courts, Congress, the SEC, and the media, and bringing false criminal charges, all for the purpose of coercing Chevron "into paying to stop the campaign against it."; Dkt. 550, at 98-99 (Opinion on Partial

Summary Judgment Motion) ("The crux of the motion is the contention that the Lago Agrio Judgment should not be recognized or enforced by reason of fraud."); (3) whether the Donziger Defendants and ADF have made agreements with funders and third party investors in exchange for interests in the Lago Agrio Judgment which could affect the remedies ordered by the Ecuadorian court (Chevron Amended Complaint ¶¶ 65-66, 328-330; Intervenors' Cross-Compl. at ¶¶ 16, 28, 59, 67, 74-75; and (4) whether the Donziger Defendants and ADF have made an agreement with the Republic of Ecuador to administer proceeds of the Lago Agrio Judgment, to the detriment of the Huaorani Intervenors and other *Afectados. See* Lago Agrio Judgment at pp. 183-84; *see also* Kimerling Decl., ¶ 23; Chevron Amended Complaint at ¶ 65; Intervenors' Cross-Compl. at ¶¶ 14, 77, 90.

### 4.   The Unique Interests of the Huaorani Intervenors Are Not Adequately Protected by the Parties to This Action

Although the Donziger Defendants and two of the LAPs have been defending against Chevron's challenges to the Lago Agrio Judgment, they are nonetheless unable to adequately represent the Huaorani Intervenors' interests, and do not share identical interests.  To satisfy the "inadequate representation" standard for intervention as of right, an intervenor-applicant need only show that the existing representation "may be" inadequate, and the showing required is "minimal."  *See Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972), 92 S. Ct. 630 (1972).

In determining the adequacy of representation factor under Rule 24, courts generally consider several factors, including: (1) whether the interests of a present party are such that the party will undoubtedly make all of the intervenor's arguments; (2) if so, whether the present party is capable of and willing to make those arguments; and (3) whether the would-be intervenor would offer any necessary element to the proceedings that the other parties would neglect.

*Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525, 528 (9th Cir. 1983); *Am. Farm Bureau Fedn v. United States EPA*, 2011 U.S. Dist. LEXIS 118233, 23-24 (M.D. Pa. October 13, 2011).

Here, both Chevron and the Huaorani Intervenors have called into question whether the Donziger Defendants adequately represent and protect the interests of the Huaorani Intervenors. *See* Kimerling Decl., ¶¶ 13-16, 18, 24.  The Huaorani Intervenors have reason to believe that the Donziger Defendants' interests are no longer aligned with the Huaorani Intervenors.[13]  *Id.* at ¶ 24.  Indeed, repeated inquiries by the Huaorani Intervenors to ADF for the purpose of seeking clarification as to the basis of ADF's (and Donziger Defendants) purported representation of the Huaorani and its plans to distribute any portion of the Lago Agrio Judgment to repair and compensate injuries sustained by the Huaorani, were rebuffed.  *Id.* at, ¶¶ 13-16, 18, 24; Exs. B–D thereto.

In fact, Chevron has alleged in this matter that the Donziger Defendants and ADF do not intend to distribute the judgment award to the affected Indigenous peoples.  *See* Chevron Amended Complaint at ¶¶ 65-66.

Moreover, it is clear that the Donziger Defendants' and ADF's interests in the Lago Agrio Judgment may lie not in securing the Huaorani Intervenors' rights to any portion of the judgment, but rather in collecting as much of the judgment as possible for their own use and benefit.  As a result, a clear conflict of interest exists between the Donziger Defendants  (and ADF) and the Huaorani Intervenors.  Indeed, in this action, Chevron has asserted numerous claims against Donziger,

---

[13]     As this Court is aware, two of the LAPs have also appeared to defend this action.  However, Huaorani Intervenors are informed and believe that their counsel are working in concert with counsel for the Donziger Defendants, and thus cannot adequately protect the interests of the Huaorani Intervenors for the reasons set forth above.  In addition, the named Stratus Defendants cannot adequately protect the interests of the Huaorani as they have a clear interest in protecting themselves from liability in this case and have no relationship, whatsoever with the Huaorani Intervenors.  *See* Kimerling Decl., ¶ 25.

both individually and against his law firm, seeking hundreds of millions of dollars in damages.  Clearly, the interests of the Donziger Defendants lie first and foremost in defending Donziger from the serious allegations of misconduct that have been presented against him personally, and not in protecting the interests of the Huaorani, who are the true victims and intended beneficiaries of the Lago Agrio Judgment.[14]  There is also doubt, given the allegations made in this case (*see* Chevron Amended Complaint at ¶¶ 65-66, 328-330) about whether Donziger and ADF will use any monies they may collect from Chevron (should they succeed in enforcing the Lago Agrio Judgment) to first fill the Donziger Defendants' and ADF's coffers, instead of remunerating the Huaorani Intervenors for the harms they have suffered at the hands of Chevron.  *See Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986) (recognizing that a potential conflict of interest satisfies the minimal burden of showing inadequate representation).  Simply put, the Huaorani Intervenors' interest in this case is not to defend the Donziger Defendants against personal liability, but to defend the integrity of the Lago Agrio Judgment to which they are the intended beneficiaries.  Thus, their interests diverge from both Chevron and the Donziger Defendants, and intervention is proper under Rule 24.

Based on the foregoing, it is clear that the Donziger Defendants' and ADF's interests do not coincide with the Huaorani Intervenors' legally protected interest in protecting their share of the Lago Agrio Judgment, including, *inter alia,* their portion of the $100 million awarded for cultural damages, the $1.4 billion awarded for health care, the $200 million awarded to restore flora and fauna and help remedy impacts on the affected Indigenous peoples' food supply and sources of

---

[14]    As noted above, the Huaorani Intervenors seek to intervene for the purpose of defending only the Lago Agrio Judgment and their right to a portion of that judgment, and not to defend the Donziger Defendants' and ADF's misconduct alleged in this action.

subsistence, the $150 million awarded to deliver potable water supplies, and the $8.646 billion awarded as punitive damages to compensate the suffering of the affected communities and community members.  Because the Donziger Defendants and ADF have been accused in this action of engaging in fraud and other illegal activity which may severely impair future enforcement and proper administration of the Lago Agrio Judgment, while the Huaorani Intervenors have no knowledge of such conduct and, in fact, did not directly participate in the Lago Agrio Litigation, the interests of the Donziger Defendants (and ADF) and the Huaorani Intervenors do not coincide, and the Donziger Defendants cannot be expected to adequately protect the interests of the Huaorani Intervenors in this action.

Accordingly, the Huaorani Intervenors plainly meet the requirements of Federal Rule of Civil Procedure 24 (a)(2)  for "as of right" intervention for purposes of participating in this proceeding, and the Court should grant their Motion to Intervene as of right.[15]

### B.      Alternatively, Permissive Intervention is Warranted

In the alternative, permissive intervention of the Huaorani Intervenors is warranted under Federal Rule of Civil Procedure 24(b).  Rule 24(b) provides, in pertinent part:

> Upon timely application anyone may be permitted to intervene in an action . . . (2) when an applicant's claim or defense and the main action have a

---

[15]      Where intervention is granted to a defendant intervenor, the court has jurisdiction over all of the intervenor's claims pursuant to 28 U.S.C. § 1367(a) when the action, as here, is based on federal question jurisdiction.  *See Development Finance Corp. v. Alpha Housing & Health Care, Inc.* 54 F.3d. 156, 166-167 (3rdCir. 1995) (supplemental jurisdiction extends to counterclaim or cross-claims by intervening defendant).  Section 1367(b), which prohibits supplemental jurisdiction over claims brought by an intervening plaintiff in diversity actions, does not apply here because 1) the Huaorani Intervenors are seeking to intervene as defendants, not as plaintiffs; and 2) there is federal question subject matter jurisdiction in the instant case.  *See* 28 U.S.C. §1367(b); *Viacom Int'l, Inc. v. Kearney,* 212 F.3d 721, 726-727 (2d Cir. 2000).

> question of law or fact in common . . . In exercising its discretion the Court
> shall consider whether the intervention will unduly delay or prejudice the
> adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b).  Here, permissive intervention is appropriate even if the
Court denies the motion to intervene as of right.

In deciding a motion for permissive intervention, courts consider several
factors, including "whether intervention will unduly delay or prejudice the original
parties", "whether the applicant will benefit by intervention", "the nature and extent
of the intervenor's interest," adequacy of representation, and whether the intervenor
will contribute to the full development of the factual and legal issues presented.
*U.S. Postal Serv. v. Brennan*, 579 F.2d at 191-92 (citations omitted); *see also Int'l
Design Concepts, LLC v. Saks, Inc.,* 486 F. Supp. 2d 229, 235 (S.D.N.Y. 2007)
(finding that allowing permissive intervention even after considerable time had
elapsed "will contribute to the full development of factual issues as well as
efficient adjudication of all parties' interests.")

Here, the Huaorani Intervenors will be able to contribute to the full
development of the factual and legal issues presented, for example, issues related
to the purported representation of the Huaorani by the Donziger Defendants, ADF,
and LAPs.  *See* Chevron Amended Complaint at ¶¶ 1, 21-22.

Further, as discussed above, the Huaorani Intervenors' Motion to Intervene
is timely, and they have a significant and legally protectable interest in the subject
matter of this action: defending and securing their rights to their portion of the
Lago Agrio Judgment.  *See* Sections A(1) and (2), *supra*.  Moreover, those rights
and interests could clearly be impaired by rulings in this pending action, because of
the collateral estoppel effect on any issues that might subsequently be litigated by
the Huaorani in state court, or spin-off, litigation.  *See* Section (A)(3), *supra*.

Moreover, the Huaorani Intervenors have reason to believe that the existing

parties cannot be expected to adequately represent or protect the interests of the Huaorani Intervenors in this action, as ADF has failed to provide meaningful information in response to the Huaorani Intervenors' requests for information about distribution of any collected judgment and basis for ADF's (and its lawyers) purported representation of the Huaorani.  *See* Kimerling Decl., ¶¶ 13-16, 18, 24.

In addition, intervention will not unfairly prejudice the parties (e.g., the Huaorani Intervenors are prepared to abide by the briefing and discovery deadlines currently set by the Court, and will only seek a short extension of the upcoming deadline for written discovery).  At the same time, the severity of potential impacts upon the Huaorani Intervenors weighs strongly in favor of allowing their participation as a party.  *See* Section (A)(1)(ii-iii), supra.

Most importantly, the heart of this case challenges the viability of the Lago Agrio Judgment; as direct beneficiaries of the Judgment, the Huaorani Intervenors should be permitted to intervene to defend their interests in one judicially-economical proceeding before this Court.  Accordingly, permissive intervention should be granted.

## V.   **CONCLUSION**

For the foregoing reasons, the Huaorani Intervenors respectfully request that the Court grant their motion to intervene as of right under Federal Rule of Civil Procedure 24(a)(2), or in the alternative, permissively, under Rule 24(b).

Dated:  November 28, 2012                Respectfully submitted,


By:            /s/ Kathryn Lee Crawford

KATHRYN LEE CRAWFORD, ESQ.
lboyd@srbr-law.com
SCHWARCZ, RIMBERG, BOYD &
RADER, LLP
6310 San Vicente Blvd., Suite 360
Los Angeles, CA 90048
Telephone: (323) 302-9488
Facsimile:  (323) 931-4990

JUDITH KIMERLING, ESQ.
judith.kimerling@gmail.com
23 Waverly Place, #4-F
New York, NY 10003
Telephone: (212) 777-2135

Attorneys for Proposed Intervenors