UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHEVRON CORPORATION,

          Plaintiff,

vs.

STEVEN R. DONZIGER, et al.,

          Defendants.

Case No. 11 Civ. 0691 (LAK)

---

**DECLARATION OF JUDITH KIMERLING IN SUPPORT OF MOTION TO INTERVENE**

    I, JUDITH KIMERLING, hereby declare under penalty of perjury pursuant to 28 U.S.C. §1746, that the following is true and correct:

    1.    I am an attorney at law duly licensed to practice law in the State of New York and admitted to practice before the U.S. District Court for the Southern District of New York. I am attorney of record for the Proposed Intervenors, who seek to intervene in the above-captioned matter on behalf of themselves, their communities and family groups, and the Huaorani people ("Huaorani Intervenors"). I am one of the attorneys responsible for this motion and have knowledge of the facts stated herein.

    2.    I am currently employed as a Professor in the Political Science Department and Environmental Studies Program at The City University of New York (CUNY), Queens College. I first met members of the Huaorani people in 1990, when I was living in Ecuador. Since 2007, I have worked with *Ome Gompote Kiwigimoni Huaorani* (We Defend Our Huaorani Territory), also called *"Ome Yasuni,"* an alliance of indigenous Huaorani communities who came

together to protect a 758,051-hectare area of rainforest known as "The Intangible Zone" and to defend the right of the Huaorani to continue to live freely and in accordance with their culture in what remains of their ancestral territory.

3. On July 19, 2012, Plaintiffs Kemperi Baihua Huani, et al., on behalf of themselves, on behalf of their family groups, on behalf of their communities, and on behalf of the Huaorani people (the "Kemperi Plaintiffs") filed an action in the Southern District of New York, *Kemperi Baihua Huani v. Steven Donziger, et al.,* Case No. 12-cv-5570 (referred to as the "Huani Action"), asserting claims for declaratory relief, constructive trust, unjust enrichment, and accounting against Defendants Steven Donziger ("Donziger"), the Law Offices of Steven R. Donziger, and Donziger and Associates, PLLC (collectively the "Donziger Defendants"), and the Ecuadorian nongovernmental organization *Frente de Defensa de la Amazonia* a/k/a Amazon Defense Front or Amazon Defense Coalition ("ADF").

4. On or about September 6, 2012, the Huani Action was deemed related to this pending action.

5. On November 2, 2012, the Donziger Defendants in the Huani Action advised the Kemperi (Huani) Plaintiffs that they [Donziger Defendants] intended to file a motion to dismiss the Complaint in the Huani Action based on a lack of subject matter jurisdiction.  In part to respond to such contention, and, additionally, to ensure that the rights and interests of the Kemperi Plaintiffs are best protected and that judicial efficiency is preserved , (i.e. to prevent inconsistent findings of fact and rulings of law) and to ensure that their legally protectable interests are adequately represented and protected in this action, the Kemperi Plaintiffs determined that the most efficient procedural mechanism for resolving their claims and protecting their interests would be to intervene in the instant case, instead of initiating a new lawsuit in state court and following this case as nonparties.  The Kemperi Plaintiffs and the proposed Huaorani Intervenors are the same people.

6. As required by Federal Rule of Civil Procedure 24(c), attached hereto as Exhibit A is the Huaorani Intervenors Proposed Answer and Cross-Complaint in Intervention, which includes cross-claims against the Donziger Defendants and ADF.

7. I am informed that on or about February 14, 2011, following years of litigation (the "Lago Agrio Litigation"), Judge Nicolas Zambrano Lozada, the Presiding Judge of the Provincial Court of Justice of Sucumbíos in Ecuador, rendered judgment against Chevron Corporation ("Chevron") for damages to the environment and affected communities and community members caused by Chevron's petroleum activities in the Ecuadorian Amazon (the "Lago Agrio Judgment"). The Lago Agrio Judgment orders Chevron to pay $8.64616 billion for environmental remediation, compensation, and mitigation measures ("Environmental Remedial Measures"), including, *inter alia,* $600 million to remediate ground waters; $5.39616 billion to remediate soils; $200 million to restore native flora and fauna and help remedy the impact on the affected Indigenous peoples' food supply caused by damage to their sources of subsistence; $150 million to deliver potable water supplies; $800 million to develop and implement a health plan that includes treatment for people with cancer; and $1.4 billion to establish and maintain a permanent healthcare system to serve the affected populations. The Environmental Remedial Measures also include $100 million for remedial measures to mitigate the unique harm to the affected Indigenous peoples' communities, including displacement from their ancestral territories and other cultural impacts ("Cultural Damages"). The Huaorani Intervenors are members of the Huaorani people, an Indigenous people and minority group in the Amazon region of Ecuador. The Huaorani were named in the Lago Agrio Litigation as part of the group of *Afectados* for whose benefit the Lago Agrio Judgment was entered.

8.      In addition to Environmental Remedial Measures, the Lago Agrio Judgment orders Chevron to pay punitive damages to compensate the Indigenous and colonist (settler) communities and community members who had been harmed by Chevron's activities in the Ecuadorian Amazon (collectively referred to as "the *Afectados*"), including the Huaorani Intervenors and their communities and family groups, other Huaorani, and the Huaorani people, for their pain and suffering, and to punish Chevron for unreasonable and malicious conduct in the Lago Agrio Litigation which prolonged the suffering of the *Afectados*, in an amount equal to the total aggregate value of the Environmental Remedial Measures ($8.64616 billion) or, alternatively, to publicly apologize to the *Afectados* within fifteen days. I am informed that Chevron failed to apologize and thus is further obligated by the Lago Agrio Judgment to pay $8.64616 billion in punitive damages.

9.      The Lago Agrio Judgment further orders Chevron to pay an additional amount equal to ten percent (10%) of the total "amount sentenced" to ADF. I am informed that, because Chevron has not apologized to the *Afectados*, the value of the award to ADF is now $1.729232 billion, and the judgment totals more than $19 billion.

10.     To ensure the proper administration and distribution of the Lago Agrio Judgment proceeds to the benefit of the affected communities and community members, Judge Zambrano directed the plaintiffs in the Lago Agrio Litigation to establish a trust fund for the judgment monies, with ADF or the person or persons it designates as the beneficiary of the trust, and with ADF or the person or persons it designates as the directors of the trust. The decision to award the relief to the ADF – which is not a plaintiff in the Lago Agrio Litigation – was apparently made by the lawyers for the plaintiffs and ADF, without consulting the Huaorani and other affected Indigenous peoples.

11. I am further informed that the Appellate (Sole) Division of the Provincial Court of Sucumbios has affirmed the Lago Agrio Judgment in all material respects, and directed the plaintiffs to establish a second trust fund to administer the punitive damages monies, leaving its instructions and direction to the same board of directors that will manage the trust with the monies for the Environmental Remedial Measures.

12. On the website maintained by ADF and the U.S.-based NGO Amazon Watch to support the Lago Agrio litigation, and in other public communications, ADF and its attorneys claim to represent all of the *Afectados*, including the Huaorani. The Huaorani Intervenors dispute such representation, maintaining that ADF and its lawyers and associates were never authorized to represent their interests in connection with the Lago Agrio Litigation.

13. Efforts by the Huaorani Intervenors to obtain meaningful information from ADF about the basis of its purported representation of the Huaorani and whether ADF will distribute any portion of the Lago Agrio Judgment to remediate, compensate, and mitigate the harms that the Huaorani Intervenors and other Huaorani have suffered have been rebuffed.

14. On or about January 18, 2012, representative members of the Huaorani Intervenors sent a letter to ADF seeking clarification regarding the basis and scope of its (and its lawyers) purported representation of the Huaorani Intervenors and the Huaorani people. The letter also questioned claims by ADF's *Asemblea de Afectados y Afectadas por Texaco* (Assembly of Persons Affected by Texaco) ("ADAT"), which similarly purports to represent all of the *Afectados*, including the Huaorani Intervenors, and additionally, asked ADF to provide the names of the members of ADAT. The letter further explained that the Huaorani Intervenors had learned about claims by ADF that the Lago Agrio Litigation would remedy harms suffered by the Huaorani as a result of Chevron's activities, and

requested meaningful information about plans to distribute any portion of the Lago Agrio Judgment to repair and compensate harms to the Huaorani Intervenors and other Huaorani. The letter further inquired about reports that the plaintiffs and lawyers in the Lago Agrio Litigation had made an agreement with the Republic of Ecuador for the government of Ecuador to administer proceeds of the litigation, and asked ADF to tell the Huaorani Intervenors if those reports are true, and provide them with a copy of all agreements between ADF and Ecuador. The letter was directed to Luis Yanza and Pablo Fajardo [Mendoza], and asked ADF to provide the requested information in writing. A true and correct copy of the January 18, 2012 letter and certified translation of such letter is attached hereto as Exhibit "B."

15.   ADF responded to the January 18, 2012 letter from the Huaorani representatives by letter dated January 26, 2012, and signed by Luis Yanza and Pablo Fajardo. In said response, ADF admitted that it had attempted to communicate with the Huaorani Intervenors and other Huaorani, but had not been able to do so – explicitly acknowledging that ADF had never obtained authorization to represent the interests of the Huaorani in the Lago Agrio Litigation, and further acknowledging that ADF and the lawyers who work with ADF in the litigation had never informed or consulted with the Huaorani Intervenors or other representatives of the Huaorani in that matter, or included them in decision-making related to their interests or to the conduct of the litigation. The response letter from ADF further admitted that the Huaorani people should benefit from the Lago Agrio Litigation, but refused to acknowledge that it would pay the Huaorani Intervenors and/or other Huaorani any portion of the Lago Agrio Judgment to compensate or repair the injuries they have suffered, or to otherwise explain how those injuries would be repaired or compensated. The letter proposed that the Huaorani representatives organize a meeting for ADF to attend and give

them the information they require. A true and correct copy of the January 26, 2012 letter and certified translation of such letter is attached hereto as Exhibit "C."

16. By letter dated February 10, 2012, Pentibo Nagaipe Baihua Miipo, Coordinator of the Huaorani community Bameno and General Coordinator of *Ome Gompote Kiwigimoni Huaorani*, responded to the January 26, 2012 letter from Mr. Yanza and Mr. Fajardo. The February 10, 2012 letter to Mr. Yanza and Mr. Fajardo stated that the Huaorani representatives would be happy to meet with ADF, and explained that, in order to have a "serious meeting" and not just "talk in the air" (i.e., without adequate knowledge), the Huaorani representatives would need to get the written information they had already requested in their January 18, 2012 letter, before organizing the meeting to talk. After "get[ting] to know" said information, the Huaorani representatives would be able to engage in a meaningful dialogue with ADF and, as the February 10, 2012 letter further explained, would then like to organize a meeting with ADF in order "to talk and find a solution." To date, ADF has not responded to the February 10, 2012 letter, or provided any of the information requested by Huaorani Intervenors' representatives in their January 18, 2012 letter. A true and correct copy of the February 10, 2012 letter and certified translation of such letter is attached hereto as Exhibit "D."

17. According to reports I have seen in the press, the Donziger Defendants and ADF are currently pursuing legal actions in Canada, Brazil and Argentina to enforce the Lago Agrio Judgment and collect monies from Chevron.

18. ADF has refused to acknowledge what portion of the Lago Agrio Judgment corresponds to the Huaorani Intervenors and other Huaorani. ADF has also refused to acknowledge how any portion of the Lago Agrio Judgment would be used to remediate, compensate, and/or mitigate the harms that the Huaorani Intervenors and other Huaorani have suffered. In addition, ADF has refused to disclose the names of other persons (members of ADAT) who purportedly work

with ADF and the Donziger Defendants to ostensibly represent the interests of the Huaorani Intervenors in the litigation, and who purport to make decisions in their name of all of the *Afectados*, including the Huaorani Intervenors. ADF has further refused to disclose whether reports regarding a possible arrangement or deal with the Republic of Ecuador that would entrust Ecuador's government to receive and administer monies from the Lago Agrio Judgment are true.

19.   Since the Lago Agrio Judgment was rendered, the Huaorani Intervenors learned for the first time that they have a substantial legal interest in the Lago Agrio Judgment and that their rights to the remedies awarded by the Lago Agrio Judgment appear to be controlled by ADF and the Donziger Defendants. Since this Court issued its opinion on Chevron's motion for a preliminary injunction in this case, the Huaorani Intervenors learned for the first time that alleged misconduct by the Donziger Defendants and ADF has jeopardized the Lago Agrio Judgment and the Huaorani Intervenors' rights to remedies. Subsequently, after attempting to obtain information from ADF about the portion of the Lago Agrio Judgment that corresponds to the Huaorani, the Huaorani Intervenors have determined that ADF has no interest in providing meaningful information to them in response to their questions and concerns, or in distributing any portion of the Lago Agrio Judgment to the Huaorani Intervenors, including, *inter alia*, their share of the $1.4 billion awarded for health care; the $100 million awarded to mitigate the unique harm to the affected Indigenous peoples' communities, including displacement from their ancestral territories and other cultural impacts; the $200 million awarded to restore flora and fauna and help remedy impacts on the affected Indigenous peoples' food supply and sources of subsistence; the $150 million awarded to deliver potable water supplies; and the $8.646 billion awarded as punitive damages.

20. No Huaorani Intervenor, and to my knowledge, no member of the Huaorani People, has ever entered into any retainer agreement with the Donziger Defendants, ADF, and/or any of their agents or associates to represent their interests in the Lago Agrio Litigation.

21. The Huaorani Intervenors' intervention – for purposes of ensuring that their rights to their portion of the Lago Agrio Judgment are secured and that their interests in this action are adequately represented and protected - will not result in undue delay or other prejudice to the existing parties. The Huaorani Intervenors are prepared to abide by the dates set by the Court in the current scheduling order for the trial (October 13, 2013) and discovery cut-off (May 31, 2013), and would only request leave of the Court to extend the time for written discovery for twenty (20) days from the date the Huaorani Intervenors are permitted to intervene. Further, the Huaorani Intervenors anticipate at this time that they will participate in the discovery that is already underway in this matter, with some limited additional discovery as to the following overlapping issues: the basis and scope of the Donziger Defendants' and ADF's claimed representation of the Huaorani in the Lago Agrio lawsuit and related litigation; the Donziger Defendants' and ADF's plans for administering the Lago Agrio Judgment; monies or proceeds paid to, or collected by, the Donziger Defendants and/or ADF and/or any of their associates in connection with the Lago Agrio Judgment and related litigation; any actions and/or agreements by the Donziger Defendants, ADF and/or their associates to sell interests in the Lago Agrio Judgment or otherwise encumber, diminish or dissipate interests in the Lago Agrio Judgment, including, *inter alia*, agreements with funders, investors, and/or representatives of the Republic of Ecuador; and the status of proceedings to enforce the Lago Agio Judgment. Moreover, the Huaorani Intervenors do not anticipate offering any evidence at trial which would not also be relevant to issues that have already been raised in this matter. Indeed, the issues

presented by the parties to this lawsuit overlap substantially with the issues presented in the Intervenors' Proposed Cross-Complaint, including, but not limited to: (1) the enforceability of the Lago Agrio Judgment; (2) the proper role of the various parties, including the Donziger Defendants and ADF, in the administration and distribution of the Lago Agrio Judgment for the ends determined by the Ecuadorian court; and (3) the scope and adequacy of representation of the LAPs and other *Afectados* (including the Huaorani Intervenors) by the Donziger Defendants, ADF, and their agents and associates. Further, discovery directed to the Huaorani Intervenors should be limited, as the Huaorani Intervenors possess little information relevant to Chevron's claims, or the Donziger Defendants' defenses. At the same time, participation by the Huaorani Intervenors will contribute to the full development of factual and legal issues presented in the present case relating to the scope and adequacy of representation of the Huaorani by the Donziger Defendants and ADF.

22. The lawsuit in Lago Agrio was brought by forty-eight (48) individual plaintiffs from four communities. None of the named plaintiffs are Huaorani, but the litigation asserted claims on behalf of all Indigenous and colonist (settler) communities and community members who have been harmed by Chevron's petroleum activities in the Ecuadorian Amazon (the *Afectados*), including the Huaorani Intervenors and their communities and family groups, and the Huaorani people.

23. The Huaorani Intervenors have direct, substantial, and legally protected interests, including property and financial interests, which may be severely impaired by rulings and/or relief ordered by the Court in this case, given the issues raised by the parties. The issues and allegations at the heart of this case include allegations related to the validity of the Lago Agrio Judgment, as well as allegations related to the conduct of the Donziger Defendants and ADF and their

purported representation of the Huaorani Intervenors. For example, at issue is 1) whether the Donziger Defendants and ADF intend to direct compensation or other remedial monies from the Lago Agrio Judgment to the Huaorani Intervenors and/or other Huaorani; (2) whether the Lago Agrio Judgment or any portion of the Judgment in favor of the Huaorani is enforceable in U.S. courts; and (3) any collateral estoppel effect of the issues litigated in the matter in subsequent attempts by the Huaorani to recover their portion of the Lago Agrio Judgment.

24. Despite their claim to represent the Huaorani, the Donziger Defendants will not adequately protect the interests of the Huaorani Intervenors in this case. As explained in the Huaorani Intervenors Proposed Answer and Cross-Complaint, the Huaorani Intervenors have reason to believe that the Donziger Defendants' interests are no longer aligned with the Huaorani Intervenors. Indeed, as noted above, repeated inquiries by the Huaorani Intervenors to ADF for the purpose of seeking clarification as to the basis of ADF's and its attorneys' purported representation of the Huaorani, and distribution of the Lago Agrio Judgment to repair and compensate injuries suffered by the Huaorani were rebuffed.

25. I am informed that two of the LAPs have also appeared to defend this action. However, I am informed and believe that their counsel are working in concert with counsel for the Donziger Defendants, and thus cannot adequately protect the interests of the Huaorani Intervenors for the reasons set forth above. In addition, the named Stratus Defendants cannot adequately protect the interests of the Huaorani as they have a clear interest in protecting themselves from liability in this case and have no relationship with the Huaorani Intervenors.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 21st day of November, 2012, at New York, New York.

_____
Judith Kimerling