UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

                Plaintiff,

       -against-                                    11 Civ. 0691 (LAK)

STEVEN DONZIGER, et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

        Randy M. Mastro
        Andrea E. Neuman
        William E. Thompson
        GIBSON, DUNN & CRUTCHER, LLP
        *Attorneys for Plaintiff*


        Julio C. Gomez
        JULIO C. GOMEZ, ATTORNEY AT LAW LLC

        Tyler G. Doyle
        Craig Smyser
        Larry R. Veselka
        Christina A. Bryan
        Garland D. Murphy, IV
        SMYSER KAPLAN & VESELKA, L.L.P.

        *Attorneys for Defendants Hugo Gerardo, Camacho*
        *Naranjo and Javier Piaguaje Payaguaje*

LEWIS A. KAPLAN, *District Judge.*

An Ecuadorian court has entered an $18.2 billion judgment (the "Judgment") against Chevron Corporation ("Chevron")[1] in an action brought by 47 individuals referred to as the Lago Agrio Plaintiffs (the "LAPs"), two of whom, Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje (the "LAP Representatives"), have appeared in this action.[2] Chevron brought this action against the LAPs, their lead U.S. attorney, Steven Donziger and his law offices, and others involved in the Lago Agrio Litigation,[3] claiming that the Judgment is the product of fraud and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The RICO and, to some extent, the fraud claims rest on allegations that Steven Donziger, a New York lawyer, and others based in the United States, here conceived, substantially executed, largely funded, and significantly directed[4] a scheme to extort and defraud Chevron, a U.S. company, by, among other things, (1) bringing a lawsuit in Ecuador;[5] (2) fabricating (principally in the United States) evidence for use in that lawsuit

---

[1] DI 168 (Lago Agrio Judgment).

[2] The other LAPs have defaulted and are not defending against this action. Hendricks Decl. [DI 206] ¶ 15 & Ex. 16 (Clerk's certificate).

[3] Chevron alleges also that various "co-conspirators" were part of the RICO enterprise, but they are not named as defendants.

[4] Amended complaint ("Cpt.") ¶ 1 (alleging that defendants "sought to extort defraud, and otherwise tortiously injure plaintiff Chevron by means of a plan they conceived and substantially executed in the United States."); *id.* ¶ 2 ("The enterprise's ultimate aim is to create enough pressure on Chevron in the United States to extort it into paying to stop the campaign against it.").

[5] *Id.* ¶ 3.

in order to obtain an unwarranted judgment there;[6] (3) exerting pressure on Chevron to coerce it to pay money not only by means of the Ecuadorian litigation and judgment, but also by subjecting Chevron to public attacks in the United States and elsewhere based on false and misleading statements;[7] (4) inducing U.S. public officials to investigate Chevron;[8] and (5) making false statements to U.S. courts and intimidating and tampering with witnesses in U.S. court proceedings to cover up their improper activities.[9] In other words, the RICO claims include the allegation that the RICO Defendants – a term defined in the amended complaint– formulated a scheme to extort and otherwise wrongfully to obtain money from Chevron by conducting and conspiring to conduct the affairs of an enterprise through a pattern of racketeering activity that included acts in the United States by Americans as well as acts in Ecuador by both Americans and Ecuadorians.[10] The LAPs reportedly are pursuing proceedings to enforce the Judgment in at least Canada, Brazil and

---

[6] *E.g.*, *id.* ¶ 145 ("Back in the United States, preparations were well underway for drafting Cabrera's report [the report of a supposedly independent, court-appointed expert]."); *id.* ¶ 151 ("While Stratus [LAP environmental consultant] was the primary coordinator of the . . . Cabrera Report, other members of the [LAP's] U.S.-based team of experts . . . also contributed to the report without attribution in the report or disclosure to Chevron."); *id.* ¶¶ 353-56.

[7] *Id.* ¶ 214.

[8] *Id.* ("And they have taken this pressure campaign to U.S. state and federal agencies, seeking their falsely induced assistance in this racketeering scheme."); *id.* ¶ 216.

[9] *Id.* ¶¶ 273-77, 291-300, 311-16.

[10] The background of the case has been discussed in several opinions, perhaps most extensively in *Chevron v. Donziger,* __ F. Supp.2d ___, No. 11 Civ. 0691 (LAK), 2012 WL 3538749 (S.D.N.Y. July 31, 2012) (determining, *inter alia,* that certain material facts pertinent to Chevron's claim of fraud with respect to the Ecuadorian judgment are undisputed); *id.*, 2012 WL 1711521 (S.D.N.Y. May 14, 2012) (sustaining sufficiency of, *inter alia,* RICO and aspects of common law fraud claims).

Argentina, this being consistent with an apparent strategy "to pursue an aggressive world-wide enforcement strategy in order to obtain settlement leverage over Chevron."[11] Moreover, as an internal LAP memorandum revealed, there is evidence that the LAPs intend to seek enforcement in jurisdictions that would avoid "relitigation of the merits of the [Ecuadorian] case"[12] and have expressed "particular interest" in enforcement proceedings in countries in which their counsel have relationships with governments and important individuals.[13]

On and after November 30, 2012, the LAP Representatives served 30 subpoenas on 26 non-parties[14] for the production of documents and other tangible materials.[15] Twenty of the non-parties are persons or entities who served as technical expert witnesses or consultants to Chevron with respect to the litigation in Ecuador, and the subpoenas directed to them seek, broadly speaking, documents relating to the Ecuadorian litigation as well as the litigation in this Court relating to that litigation, in each case for the period 2000 to date. Five of the other six non-parties are Chevron

---

[11] *Chevron v. Donziger,* 768 F. Supp.2d 581, 622-24 (S.D.N.Y. 2011), *rev'd on other grounds sub nom. Chevron Corp. v. Naranjo,* 667 F.3d 232 (2d Cir.), *cert. denied,* 133 S.Ct. 423 (2012).

[12] *Id.,* 768 F. Supp. 2d at 624 (quoting internal memorandum) (internal quotation marks omitted).

[13] *Id.*

[14] Four were served with two substantially identical subpoenas. In each case, the second subpoena was served after the December 1, 2012 date fixed by this Court as the last date for the service of document requests. Dkt. 494 ¶ 2(b).

[15] The subpoenas were issued by United States District Courts in the Northern, Southern and Western Districts of Texas, the Central District of California, the District of Delaware, the District of Massachusetts, the District of Colorado, the District of the District of Columbia, the Southern District of Ohio, and the District of Minnesota.

5

investigators and public relations consultants, who are commanded to produce the same sort of information as the experts and, in addition, information gathered with respect to particular Ecuadorian lawyers or others associated with the LAPs' prosecution of the Ecuadorian litigation. The final non-party served with a subpoena is the U.S. Chamber of Commerce.

Most of the subpoenaed material already has been sought in requests for production directed to Chevron in this action.[16]

Chevron contends principally that this Court should enter a protective order striking, or compelling the withdrawal of, the subpoenas as follows:  (a) all subpoenas addressed to the 20 Chevron environmental contractors, experts, and consultants, which are directed to the merits of the Ecuadorian lawsuit, and (b) the subpoenas addressed to 23 of the non-parties (including the 20 environmental witnesses) in respect of whom the LAP Representatives are seeking discovery in this action through Chevron.

I

As an initial matter, it is necessary to consider whether and to what extent this Court has the power to grant the requested relief.

Fed. R. Civ. P. 45(c)(3) provides that "the issuing court must quash or modify a subpoena" on timely motion in circumstances there specified.  Any motion to quash or modify therefore must be made in the issuing court.[17]  Each of these subpoenas was issued by a court other

---

[16] Chevron Motion Ex. 3 (comparing subpoena specifications with outstanding production requests to Chevron).

[17] 9 MOORE'S FEDERAL PRACTICE § 45.50[4] (4th ed. 2012) ("only the issuing court has the power to grant a motion to quash or modify the subpoena").

6

than this one. Accordingly, any motions to quash or modify them must be addressed to the issuing courts.[18] But that is not the end of the matter.

The principle that only the court that issues a subpoena has the power to quash or modify it "does not alter the broader concept that the district court in which an action is pending has the right and responsibility to control the broad outline of discovery."[19] "A party's 'discovery rights [in other districts] can rise no higher than their level in the district of trial' . . . Consequently, a party

---

[18] Although there is some contrary authority, many courts in the First, Second, Third, Fourth, Seventh, Eighth, and Tenth Circuits have held that an issuing court may transfer a motion or, in any case, remit a motion to quash to the court in which the action is pending or deny or stay the motion to quash pending a decision in the court in which the action is pending and then defer to its ruling. *In re Digital Equip. Corp.,* 949 F.2d 228, 231 (8th Cir. 1991) (remittal of motion to court in which action is pending); *Petersen v. Douglas Cty. Bank & Trust Co.,* 940 F.2d 1389, 1391 (10th Cir. 1991) (transfer); *EEOC v. Orig. Honeybaked Ham of Ga., Inc.,* No. 11–cv–02560–MSK–MEH, 2012 WL 934312, at *2 (D. Colo. Mar. 19, 2012) (court in which action pending lacks jurisdiction to quash subpoena "unless there is a transfer or remittance from the issuing court"); *Limon v. Barryco Barge Lines LLC,* No. G–07–0274, 2009 WL 1347363, at *2 (S.D. Tex. May 13, 2009) (issuing court may in its discretion remit the matter to the court in which the action is pending); *Stanziale v. Pepper Hamilton LLP,* No. M8–85, 2007 WL 473703, at *3 (S.D.N.Y. Feb.9, 2007) (transfer); *Hartz Mountain Corp. v. Chanelle Pharm'l Vet. Prods. Mfg. Ltd.,* 235 F.R.D. 535, 536-37 (D. Me. 2006) (issuing court may stay action on motion to quash, permit the party seeking relief to seek protective order in court in which action is pending, and then defer to that decision); *United States v. Star Scientific, Inc.,* 205 F. Supp.2d 482, 485-86 (D. Md. 2002) (transfer); *In re Subpoena Duces Tecum To: Schnider Nat'l Bulk Carriers,* 918 F. Supp. 272, 273 (E.D. Wis. 1996); *Central States, Southeast & Southwest Areas Pension Fund v. Quickie Transp. Co.,* 174 F.R.D. 50, 51-52 (E.D. Pa. 1997) (denial with leave to refile in court in which action is pending). A district court in the Fifth Circuit has suggested the same procedure. *Avance v. Kerr-McGee Chem. LLC,* No. 5:04CV209, 2005 WL 5315654, at *4 (E.D. Tex. Aug. 9, 2005) (denying motion to quash subpoena issued in another district absent "transfer or remittance of the issue to this Court"); 9A CHARLES ALLAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 2463.1, at 520 (3d ed. 2008) ("within the discretion of the district court that issued the subpoena to transfer motions involving the subpoena to the district in which the action is pending").

[19] *Static Control Components, Inc. v. Darkprint Imaging,* 201 F.R.D. 431 (M.D.N.C. 2001), *accord Straily v. UBS Fin. Servs., Inc.,* No. 07-cv-00884-REB-KMT, 2008 WL 5378148, at *2 (D. Colo. Dec. 23, 2008); *Platinum Air Charters, LLC v. Aviation Ventures, Inc.,* No. 2:05-cv-01451-RCJ-LRL, 2007 WL 121674, at *3 (D. Nev. Jan. 10, 2007).

may seek a Rule 26(c) protective order to preclude another party from obtaining discovery from a non-party via subpoena issued by another court."[20] Moreover, the district court in which the action is pending may issue protective orders ruling that discovery not be had or that it be conducted on limited terms, as these are issues that extend beyond the details of a specific subpoena.[21] As one court helpfully put it, the court in which an action is pending may grant a protective order prohibiting discovery sought by a subpoena issued in another district in certain circumstances:

> "where (1) the issues raised are central to the case and extend beyond the specifics of the particular subpoena, and (2) the requested ruling is necessary to insure that general discovery issues will receive uniform treatment, regardless of the district in which the discovery is pursued. Certainly, [the court in which the action is pending] has the obligation to insure that another district does not broaden the scope of discovery beyond what would be allowed in this Court or otherwise enter an order that would be inconsistent with the scope of discovery already drawn by this Court."[22]

This is entirely consistent with both the language and the structure of the Federal Rules of Civil Procedure. Rule 26 controls the overall scope of discovery. Rule 26(c) authorizes "any party" to seek relief from inappropriate discovery efforts. And Rule 45(c), which was designed

---

[20] *Vilma v. Goodell,* Civ. Action Nos. 12-1283, 12-1718, 12-1744, 12-1283, 2012 WL 4926993, at *3 (E.D. La. Oct. 16, 2012) (quoting *Fincher v. Keller Indus., Inc.,* 129 F.R.D. 123, 125 (M.D.N.C. 1990)).

The LAP Representatives' memorandum contains a heading that asserts that "Rule 45 dictates that motions for protective orders should be submitted in the district issuing the subpoena." Dkt. 872, at 1. That statement is untrue. Moreover, the cases upon which the LAP Representatives rely – namely, this Court's decisions filed at Dkt. 653 and 588 – hold only that motions to quash or modify subpoenas must be addressed to the issuing courts. As the authorities discussed in the text reflect, that is a related but nevertheless quite distinct proposition.

[21] *Rajala v. McGuire Woods, LLP,* Civ. Action No. 08-2638-CM-DJW, 2010 WL 4683979, at *5 (D. Kan. Nov. 12, 2010).

[22] *Id.* at 7.

8

to afford protection to those (usually non-parties) who are served with subpoenas, affords those served with subpoenas in districts other than those in which the action is pending a ready source of relief. Indeed, the advisory note to Rule 45(c) makes clear that the rule "is not intended to diminish rights conferred by Rules 26-37 or any other authority."[23] The requirement that a motion to quash or modify a subpoena be filed in the issuing court thus is entirely reconcilable with the authority of the court in which the action is pending to issue a protective order at the behest of a party to exercise its broad authority over the scope of discovery.

The subpoenas at issue here all raise general discovery issues that are central to the case, that extend beyond the specifics of the particular subpoenas, and that require uniform treatment, regardless of the districts in which discovery is pursued. These include whether the LAPs are entitled to discovery with respect to the merits of the Ecuadorian litigation, the nature and extent of Chevron's investigation of both this and the Ecuadorian cases, and experts who are consulting or who may be called upon to consult or testify in this action. Accordingly, this Court may entertain the motion for a protective order in furtherance of its obligation "to control the broad outline of discovery" in this case and to prevent any attempt to seek broader discovery in other districts than has been or would be permitted here, where the action is pending.[24]

---

[23] Fed. R. Civ. P. 45 1991 advisory committee's note.

[24] Consistent with this view, the Court expresses no view on the question whether twenty-one of the subpoenas were deficient on their faces because they were made returnable at a law office in Houston despite the fact that they were issued by courts in other districts. This raises a witness protection issue and does not implicate the contours of discovery in this case. Accordingly, the Court declines to rule on the sufficiency of the subpoenas served on the U.S. Chamber of Commerce, Trevor Andrew Melby, and Ogilvy & Mather, as Chevron challenges them only on this ground.

II

The first question concerns the subpoenas addressed to the twenty experts who apparently were or may be consulted or called upon to testify in either the Ecuadorian case, this case or both. They seek all documents and communications concerning either litigation; payment concerning the experts' involvement with either; the experts' contacts at Chevron; materials they have reviewed; work plans, letters and reports; meetings with Chevron regarding either litigation; communications with Ecuadorian court officials; testimony or potential testimony; communications with other experts; and like materials. As the LAP Representatives put it, all of their subpoenas "seek documents to (1) demonstrate the existence of the pervasive pollution of the Oriente region of Ecuador and its devastating impact on the environment and people of the Oriente; and (2) prove knowledge of same by Chevron's experts and consultants at the time of their contrary submissions to the Lago Agrio Court."[25]

As has been shown already, the core of this case is Chevron's claim that Steven Donziger, a New York lawyer, and others conceived, substantially executed, largely funded, and significantly directed[26] a scheme to extort and defraud Chevron, a U.S. company, by, among other things, (1) bringing a lawsuit in Ecuador;[27] (2) fabricating (principally in the United States) evidence for use in that lawsuit in order to obtain an unwarranted judgment there;[28] (3) exerting pressure on

---

[25] Dkt. 672, at 2.

[26] Amended complaint ("Cpt.") ¶ 1 (alleging that defendants "sought to extort defraud, and otherwise tortiously injure plaintiff Chevron by means of a plan they conceived and substantially executed in the United States."); *id.* ¶ 2 ("The enterprise's ultimate aim is to create enough pressure on Chevron in the United States to extort it into paying to stop the campaign against it.").

[27] *Id.* ¶ 3.

[28] *E.g., id.* ¶ 145 ("Back in the United States, preparations were well underway for drafting Cabrera's report [the report of a supposedly independent, court-appointed expert]."); *id.* ¶ 151 ("While Stratus [LAP environmental consultant] was the primary coordinator of the . . . Cabrera Report, other members of the [LAP's] U.S.-based team of experts . . . also

Chevron to coerce it to pay money not only by means of the Ecuadorian litigation and judgment, but also by subjecting Chevron to public attacks in the United States and elsewhere based on false and misleading statements;[29] (4) inducing U.S. public officials to investigate Chevron;[30] and (5) making false statements to U.S. courts and intimidating and tampering with witnesses in U.S. court proceedings to cover up their improper activities.[31] In other words, the RICO claims include the allegation that the RICO Defendants – a term defined in the amended complaint– formulated a scheme to extort and otherwise wrongfully obtain money from Chevron, a U.S. company, by conducting and conspiring to conduct the affairs of an enterprise through a pattern of racketeering activity that included acts in the United States by Americans as well as acts in Ecuador by both Americans and Ecuadorians. The LAPs are sued as principals allegedly liable for the fraud of Donziger and other agents. Thus, the central issue about the Ecuadorian judgment is whether the LAPs procured it by fraud or other misconduct in furtherance of the overall extortion scheme. The questions whether and why there is pollution in the Oriente region and whether Chevron's experts were aware of that simply have nothing to do with the case. In fact, until this, their latest, *volte face,* that has been the LAPs position. Just last year, in litigating Count 9 of this complaint,[32] the LAP Representatives sought to preclude Chevron from calling certain expert witnesses. They argued that Chevron's proposed experts

---

contributed to the report without attribution in the report or disclosure to Chevron."); *id.* ¶¶ 353-56.

[29] *Id.* ¶ 214.

[30] *Id.* ("And they have taken this pressure campaign to U.S. state and federal agencies, seeking their falsely induced assistance in this racketeering scheme."); *id.* ¶ 216.

[31] *Id.* ¶¶ 273-77, 291-300, 311-16.

[32] Count 9 sought a declaration that the Judgment was neither recognizable nor enforceable on the grounds that Ecuador does not provide the essentials of due process or fair tribunals and that the Judgment was procured by fraud. It was severed from this action to permit it to proceed to trial separately and, ultimately, dismissed on grounds not here relevant.

11

> "many of which concern irrelevant subjects such as the scientific evidence presented in the Ecuadorian proceedings or the history of Texaco's business in Ecuador—make clear that Chevron is attempting to relitigate the entirety of its failed defense to the Ecuadorian case. Without conceding that Chevron has any right to initiate a challenge to a non-existent final judgment, this action is, at best, limited only to the single challenge available to Chevron under New York's Recognition of Foreign Country Money Judgment's Act . . . -- whether the Ecuadorian judicial system provides basic due process and impartial tribunals. At least 26 of Chevron's 29 experts propose to opine on matters not relevant to this narrow issue, and should be struck."[33]

In other words, they argued that relitigation of the merits of the Ecuadorian lawsuit – including whether the region is polluted and, if so, who is responsible for it – was not appropriate in that case. It certainly is not appropriate in this case, which concerns principally the alleged extortion scheme and fraud.

In these circumstances, the LAP Representatives' attempt to subpoena Chevron's experts' documents relating to the Ecuadorian litigation go far beyond the bounds of appropriate discovery here. As the LAP Representatives previously have argued, this case is not an occasion to relitigate the merits of the pollution claims that were involved in the Ecuadorian case. At most, the question whether the Ecuadorian record contains evidence that arguably supports the Judgment may have a bearing on whether the Ecuadorian courts afforded the essentials of due process which in turn goes to the question whether the Judgment is entitled to recognition or enforcement in the United States which in turn goes to whether an essential prerequisite to the LAP Representatives' collateral estoppel defense is satisfied.[34] But even that is a matter to be determined in light of the record of the Ecuadorian proceeding – not on the basis of correspondence, work product and memoranda in the files of Chevron's expert witnesses and consultants that never made it into the record. And in the event that Chevron ultimately identifies experts to offer testimony for that

---

[33] *Chevron v. Salazar,* No. 11-3718, Dkt. 130, at 2-3.

[34] *See Chevron Corp. v. Donziger,* __ F. Supp.2d ___, No. 11 Civ. 0691 (LAK), 2012 WL 3538749, at *24-25 (S.D.N.Y. July 31, 2012) (recognizability of Judgment prerequisite to collateral estoppel defense).

12

purpose about whether the Ecuadorian record contains evidence that justifies the Judgment, the LAP Representatives would be entitled to discovery under Fed. R. Civ. P. 26(a)(2).

The subpoenas seek also information with respect to this action, including *inter alia* work papers of experts who may be consulting with Chevron and its counsel as well as others who may be called to testify here. As noted, an adverse party is entitled to the discovery set forth in Fed. R. Civ. P. 26(a)(2) with respect to experts who may testify at trial. But the timing of such disclosure already has been fixed by this Court[35] and its scope is fixed by the rule. The LAP Representatives are not entitled to use subpoenas issued out of other courts to obtain broader or earlier disclosure of potential trial witnesses in this action than is thus available to them here under the rule. They certainly are not entitled to do an end-run around Rule 26(b)(4)(D)(ii) to obtain discovery of facts or opinions from consulting experts who will not be used at trial.[36]

Accordingly, Chevron is entitled to a protective order prohibiting the LAP Representatives from obtaining any of the requested discovery from any of the twenty experts, contractors, and consultants to which it has issued subpoenas.[37]

III

Chevron seeks relief also with respect to the subpoenas addressed to 23 of the non-parties in respect of whom the LAP Representatives are seeking discovery in this action through

---

[35] Dkt.494 (initial expert disclosures to be served by February 1, 2013).

[36] Such discovery is available, insofar as is relevant here, only upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means. Fed. R. Civ. P. 26(b)(4)(D)(ii); 6 MOORE'S FEDERAL PRACTICE § 26.80[2] (3d ed. 2012).

[37] They are AMEC, CH2M Hill Cos., Gino Cesar Binachi Mosquere, Cambridge Environmental & Construction Corp., Center for Toxicology and Environmental Health LLC, DiPaolo Consulting, ENTRIX, Inc., Exponent, Inc., Fugro (USA) Inc., Geomatrix, Golder Associates Inc., Risk Management Resources LLC, Soil Analytical Services, Inc., Douglas Southgate, URS Corp., Pedro Alvarez, GSI Environmental Inc., Robert Hinchee, Douglas Mackay, and NewFields.

13

Chevron, the argument in essence being that the subpoenas are duplicative of discovery already being sought from it. In view of the determination that the LAP Representatives may not obtain discovery by these subpoenas from the twenty environmental experts, consultants, and contractors, this dispute concerns only three subpoena targets – Oliver Doug Beard, Kroll Associates, Inc. ("Kroll"), and Stroz Friedberg LLC ("Stroz").

Beard and Kroll offer, among other things, private investigative services. Stroz is a digital risk management and investigations firm. The subpoenas addressed to them are very broad, seeking all documents and communications concerning the Ecuadorian litigation, this case, and other related litigation as well as lawyers for and other individuals associated with the LAPs and payments to them by Chevron. In each case, the subpoenas seek all or substantially the same documents that the LAP Representatives and/or other defendants in this case have sought by requests for production addressed to Chevron. Accordingly, to the extent that there are relevancy and privilege objections, they are likely to be identical with respect to both the subpoenas and the documents requests served on Chevron. At a minimum, there will be substantial overlap between the issues that this Court will decide in the context of the objections to the requests to Chevron and those raised by these subpoenas, which doubtless will include important questions as to relevancy and, in all likelihood, as to the existence of work product protection and whether and to what extent any such protection will have been overcome by any showing of substantial need and inability to obtain the substantial equivalent of the information from other sources.[38]

As the LAP Representatives' right to the material sought by these subpoenas "can rise no higher than . . . in this district," it would make little sense to litigate these issues elsewhere before they are litigated here. Accordingly, while the Court acknowledges that it is conceivable that one or more of these three witnesses may have responsive documents that are not within the possession, custody or control of Chevron, and that therefore cannot be reached by means of the outstanding document request(s) to Chevron, it is not in the interests of consistency or economy to

---

[38] *See* Fed. R. Civ. P. 26(b)(3)(A).

litigate the relevancy and work product objections to these documents in two or more districts at the same time. The prudent course is for the parameters of the appropriate discovery of these materials to be established first in this district. Following the production by Chevron of such of these materials as properly prove to be discoverable, it may be appropriate for the LAP Representatives and these three witnesses to determine whether the witnesses have possession, custody, or control of responsive, unproduced materials that are within the proper bounds of discovery and, if necessary, to litigate any remaining issues with respect to these three subpoenas in whichever court ultimately proves appropriate given the nature of those issues. Accordingly, the protective order shall defer proceedings with respect to these three subpoenas until a more appropriate time.

IV

The foregoing is sufficient to dispose of this motion, but it is important also to recognize that these subpoenas raise a substantial issue as to the good faith of those who served them. In order to understand the concern, it is necessary to understand their timing

This case was commenced on February 1, 2011. The parties were free to pursue discovery right from the outset. In April 2011, the Court (a) severed Count 9, which sought a declaration that the Ecuadorian judgment was neither recognizable nor enforceable outside Ecuador, (b) required completion of discovery in the so-called Count 9 Action by September 15, 2011,[39] and (c) set that case down for trial on November 14, 2011. At the same time, it stayed discovery "with respect to matters not relevant to Count Nine and any alleged defenses thereto" pending further order.[40] While the Court of Appeals ultimately dismissed the Count 9 action, it did not do so until after the September 15, 2011 close of the discovery period, at which point the case was substantially ready for trial.

Following the appellate decision, the Court first lifted the April 2011 discovery stay

---

[39] That date was slightly extended with respect to certain expert discovery.

[40] Dkt. 279.

15

in part, ultimately lifting it in its entirety on June 25, 2012.[41] It directed that all document production requests be served by December 1, 2012.[42] Trial subsequently has been set for October 15, 2013.[43]

The parties thus were free to pursue discovery with respect to all issues from February 1, 2011 through mid-April 2011 and then again from June 25, 2012 until now. In addition, they were free to pursue discovery with respect the recognizability and enforceability of the Judgment throughout the nearly two years since this case was filed. Yet these subpoenas to 26 non-party witnesses spread through ten other judicial districts – which in substantial respects seek documents previously requested from Chevron[44] – were not served until the day immediately preceding the close of the period for seeking serving document discovery demands and, in a few cases, until after that period expired.[45] Why?

The circumstances strongly suggest that the reason for this last second tactic is a desire to delay the resolution of this case.[46] The LAPs are proceeding abroad with efforts to enforce

---

[41] Dkt. 389, 494.

[42] Dkt. 494, ¶ 2(b).

[43] Minute entry, Oct. 18, 2012.

[44] This is especially significant in view of the fact that most of the 26 witnesses are or were employed or engaged by Chevron and therefore are properly regarded, in the absence of evidence to the contrary, as subject to its control. Relevant documents in the hands of these witnesses presumptively may be obtained by seeking them from Chevron, which would be obliged to produce them as materials within its possession, custody or control.

[45] Four of the subpoenas in fact were served after the December 1, 2012 final date for seeking document discovery. *See* Dkt. 667, Ex. 1.

[46] As recently as last week, the LAPs' counsel was found by another judge to have engaged in a different form of "jurisdictional maneuvering," "strategically avoid[ing] an appearance in [this action] in favor of starting an independent action elsewhere to make an argument that was available to them here. *Patton Boggs LLP v. Chevron Corp.,* No. 12 Civ. 0901, Dkt. 42, at 2 (Dec. 14, 2012) (letter order transferring action to this Court). On an earlier

the Ecuadorian judgment in at least three other countries and threaten to commence proceedings in still more. Although the Count 9 action has been dismissed, this action holds the potential for findings and determinations that, if adverse to them, could be prejudicial to those efforts. Thus, delay of this action would be in their interest.

The potential for delay here, in the absence of this protective order, is obvious. But for the protective order issued here, the scope of these subpoenas and privilege issues would be litigated in as many as 26 separate motions in as many as ten different courts with the prospect of appeals to as many as seven different circuits. There would be a possibility of inconsistent rulings generating multiple applications by one side or the other for reconsideration of earlier rulings by different courts in light of subsequent rulings in others. The likelihood of extended appellate proceedings would be substantial.

Rule 26(c) permits the court in which an action is pending to issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Effectively compelling Chevron to litigate the proper scope of discovery in this action not only in this action, but also in a host of other courts in more than two score proceedings would be intolerable even in the absence of reason to suppose that this tactic was adopted for the purposes of delay and of subjecting it to that burden. Even assuming, however, that the LAP Representatives' motives were pure, the effect of doing so would be oppressive and certainly against any conception of the overriding purpose of the Federal Rules of Civil Procedure, which is to secure "the just, speedy, and inexpensive determination of every action and proceeding."[47]

---

occasion, this Court found in a related proceeding that the LAP Representatives' counsel deliberately, and in defiance of the rules of this Court, failed to submit a privilege log in "a deliberate attempt to structure the response to [certain] subpoenas in a way that would create the maximum possibility of delay" in order to gain the tactical advantage inherent in the continuation of the Ecuadorian litigation while stalling discovery here. *In re Chevron Corp*, 749 F. Supp. 2d 170, 185 (S.D.N.Y. 2010), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 Fed. App'x. 393 (2d Cir. 2010).

[47] Fed. R. Civ. P. 1.

17

## IV

For the foregoing reasons, plaintiff's motion for a protective order is granted to the extent indicated herein. The LAP Representatives shall not seek to enforce the subpoenas listed in Dkt. 667 Ex. 1 nor obtain any documents or other things pursuant to them. This ruling is without prejudice to an application by the LAP Representatives, following the determination of plaintiff's objections to the outstanding requests for production of documents, for leave to seek to enforce any portions of the subpoenas directed to Beard, Kroll and Stroz enforcement of which is not foreclosed by this Court's rulings on those objections.

SO ORDERED.

Dated:      December 19, 2012

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)