UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

Plaintiff,

-against- 11 Civ. 0691 (LAK)

STEVEN DONZIGER et al.,

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

Randy M. Mastro
Andrea E. Neuman
William E. Thompson
GIBSON, DUNN & CRUTCHER, LLP
*Attorneys for Plaintiff*

Julio C. Gomez
GOMEZ, ATTORNEY AT LAW LLC

Tyler G. Doyle
Craig Smyser
Larry R. Veselka
SMYSER KAPLAN & VESELKA, L.L.P.

*Attorneys for Defendants Hugo Gerardo, Camacho Naranjo and Javier Piaguaje Payaguaje*

LEWIS A. KAPLAN, *District Judge.*

On November 27, 2012, this Court granted in part and denied in part the motion of defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje (the "LAP Representatives") for judgment on the pleadings dismissing the amended complaint. It did so on substantially the same basis as it had denied the motion of the Donziger Defendants to dismiss the same pleadings months before in *Chevron Corp. v. Donziger* ("*Chevron I*").[1] The LAP Representatives, though not the Donziger Defendants, now move for an order, pursuant to Section 1292(b) of the Judicial Code,[2] certifying for interlocutory appeal two questions: whether New York law permits a claim for fraud based on injury suffered as a result of detrimental reliance by a person other than the plaintiff[3] and whether "a foreign judgment debtor may bring an affirmative common-law fraud claim in New York against a judgment creditor based on alleged fraud in obtaining the foreign judgment."[4]

I

Section 1292(b) provides that a district judge may certify an order for interlocutory appeal if the judge (1) is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion," and (2) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." Not every order that

---

1 871 F. Supp.2d 229, 257 (S.D.N.Y. 2012).

2 28 U.S.C. § 1292(b).

3 The LAP Representatives describe this as a claim for "third-party fraud," but the description in the text is more accurate.

4 DI 651, at 1.

satisfies this standard, however, should be certified.[5] Moreover, the question whether to certify in a given case, even where the statutory criteria are satisfied, is committed to the discretion of the district court.[6] The exercise of that discretion properly is informed not only by the statutory requirement that an immediate appeal afford a serious prospect of "materially advanc[ing] the ultimate termination of the litigation," but, where appropriate, also by such considerations as:

> "(1) the time an appeal would likely take; (2) the need for a stay pending appeal and the effect on the litigation, including discovery, that would result from a stay; (3) the probability of reversal on appeal; (4) the effect of a reversal on the remaining claims; (5) the benefit of further factual development and a complete record on appeal, particularly in rapidly developing or unsettled areas of the law; and (6) the probability that other issues may moot the need for the interlocutory appeal."[7]

It therefore is appropriate to consider whether and to what extent the proffered issues arise and the context in which they do so.

---

5

*See, e.g., Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865–66 (2d Cir.1996) (interlocutory appeal "is a rare exception to the final judgment rule"); *Romea v. Heiberger & Assocs., Inc.*, 988 F. Supp. 715, 717 (S.D.N.Y. 1998); *Trinidad v. Am. Airlines, Inc.*, 932 F. Supp. 521, 528 (S.D.N.Y. 1996).

6

This proposition is established by a large body of case law and literature that has been most helpfully summarized by Judge Weinstein in *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp.2d 139, 161–66 (E.D.N.Y. 1999). *See also Koehler*, 101 F.3d at 865 ("allows for an appeal from an otherwise unappealable interlocutory order upon consent of both the district court and the court of appeals"); *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1344 (2d Cir. 1972) ("Congress plainly intended that an appeal under § 1292(b) should lie only when the district court and the court of appeals agreed on its propriety. It would wholly frustrate this scheme if the court of appeals could coerce decision by the district judge."), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 130 S.Ct. 2869 (2010); *D'Ippolito v. Cities Serv. Co.*, 374 F.2d 643, 649 (2d Cir. 1967) ("[W]e cannot conceive that we would ever mandamus a district judge to certify an appeal under 28 U.S.C. § 1292(b) in plain violation of the Congressional purpose that such appeals should be heard only when both the courts concerned so desire."); *Hirsch v. Bruchhausen*, 284 F.2d 783, 786 (2d Cir. 1960) ("[W]e have no right or desire to control the trial judge's exercise of discretion in denying leave for an interlocutory appeal.").

7

*Nat'l Asbestos Workers Med. Fund*, 71 F. Supp.2d at 163.

An Ecuadorian court has entered an $18.2 billion judgment (the "Judgment") against Chevron Corporation ("Chevron")[8] in an action brought by 47 individuals referred to as the Lago Agrio Plaintiffs (the "LAPs"), two of whom, Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje (the "LAP Representatives"), have appeared in this action.[9] Chevron brought this action against the LAPs, their lead U.S. attorney, Steven Donziger and his law offices, and others involved in the Lago Agrio Litigation.[10] Its amended complaint asserts that the Judgment is the product of fraud and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The RICO and, to some extent, the fraud claims rest on allegations that Steven Donziger, a New York lawyer, and others based in the United States, here conceived, substantially executed, largely funded, and significantly directed[11] a scheme to extort and defraud Chevron, a U.S. company, by, among other things, (1) bringing the lawsuit in Ecuador;[12] (2) fabricating (principally in the United States) evidence for use in that lawsuit in order to obtain an unwarranted judgment there;[13] (3) exerting

8 DI 168 (Lago Agrio Judgment).

9 The other LAPs have defaulted and are not defending against this action. Hendricks Decl. [DI 206] ¶ 15 & Ex. 16 (Clerk's Certificate).

10 Chevron alleges also that various "co-conspirators" were part of the RICO enterprise, but they are not named as defendants.

11 Amended complaint ("Cpt.") ¶ 1 (alleging that defendants "sought to extort defraud, and otherwise tortiously injure plaintiff Chevron by means of a plan they conceived and substantially executed in the United States."); *id.* ¶ 2 ("The enterprise's ultimate aim is to create enough pressure on Chevron in the United States to extort it into paying to stop the campaign against it.").

12 *Id.* ¶ 3.

13 *E.g.*, *id.* ¶ 145 ("Back in the United States, preparations were well underway for drafting Cabrera's report [the report of a supposedly independent, court-appointed expert]."); *id.* ¶

pressure on Chevron to coerce it to pay money not only by means of the Ecuadorian litigation and Judgment, but also by subjecting Chevron to public attacks in the United States and elsewhere based on false and misleading statements;[14] (4) inducing U.S. public officials to investigate Chevron;[15] and (5) making false statements to U.S. courts and intimidating and tampering with witnesses in U.S. court proceedings to cover up their improper activities.[16] In other words, the RICO claims include the allegation that the RICO Defendants – a term defined in the amended complaint – formulated a scheme to extort and otherwise wrongfully to obtain money from Chevron by conducting and conspiring to conduct the affairs of an enterprise through a pattern of racketeering activity that included acts in the United States by Americans as well as acts in Ecuador by both Americans and Ecuadorians.[17]

In light of the Court's rulings in favor of the defendants as to the legal sufficiency of the amended complaint, what remains is the following:

---

151 ("While Stratus [LAP environmental consultant] was the primary coordinator of the . . . Cabrera Report, other members of the [LAP's] U.S.-based team of experts . . . also contributed to the report without attribution in the report or disclosure to Chevron."); *id.* ¶¶ 353–56.

14 *Id.* ¶ 214.

15 *Id.* ("And they have taken this pressure campaign to U.S. state and federal agencies, seeking their falsely induced assistance in this racketeering scheme."); *id.* ¶ 216.

16 *Id.* ¶¶ 273–77, 291–300, 311–16.

17 The background of the case has been discussed in several opinions, perhaps most extensively in *Chevron Corp. v. Donziger*, __ F. Supp.2d ___, No. 11 Civ. 0691 (LAK), 2012 WL 3538749 (S.D.N.Y. July 31, 2012) ("*Chevron II*") (determining, *inter alia*, that certain material facts pertinent to Chevron's claim of fraud with respect to the Ecuadorian judgment are undisputed); *id.*, 2012 WL 1711521 (S.D.N.Y. May 14, 2012) (sustaining sufficiency of, *inter alia*, RICO and aspects of common law fraud claims).

- Counts 1 and 2, which assert substantive and conspiracy claims under RICO against all defendants except the LAPs.
- Count 3, which asserts a fraud claim against all defendants, subject to the Court's determination that the amended complaint does not sufficiently allege any claim of fraud based on detrimental reliance by Chevron.
- Count 7, which seeks to hold all defendants liable on a conspiracy theory at least for any primary state law torts committed by other defendants or non-party co-conspirators.
- Count 8, which asserts a claim against Donziger under Section 487 of the New York Judiciary Law.

In practical terms, then, the principal basis for liability on the part of the LAP Representatives would appear to be vicarious liability (*respondeat superior*) for any torts or violations by Donziger and their other agents and attorneys.

II

We begin with the question whether an interlocutory appeal would materially advance the ultimate termination of this litigation, assuming solely for the moment that the two questions sought to be certified in fact were controlling questions of law as to which there were substantial grounds for difference of opinion and, for that matter, that both were resolved in the LAP Representatives' favor. This Court is convinced that it would not.

As an initial matter, both of the proposed questions go only to the sufficiency of Count 3, the state law fraud claim. Neither goes to the RICO claims at all.[18] As the breadth of the RICO claims is comparable to that of the fraud claim, even dismissal of the entire state law fraud claim would not significantly change the scope of the litigation. In any case, it certainly would not advance its termination. The case would continue largely unchanged as to the Donziger and Stratus Defendants, all of whom are named on the RICO counts.

An interlocutory appeal, even if it resulted in the entire dismissal of Count 3 as to the LAP Representatives, would not even end the lawsuit as to them.[19] They would remain defendants on the state law conspiracy claim (Count 7), an effect of which is to leave them exposed to possible

---

18 As the Court made clear in its decision on the Donziger Defendants' motion to dismiss, the Supreme Court held only recently that "no showing of reliance is required to establish that a person has violated § 1962(c) by conducting affairs of an enterprise through a pattern of racketeering activity consisting of acts of mail [or wire] fraud." *Chevron I*, 871 F. Supp.2d at 249–51(quoting *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649 (2008) (internal quotation marks omitted)). Thus, not even the mail fraud predicate acts relied upon by plaintiff to establish the requisite pattern of racketeering activity would be affected by a determination that injury caused third party reliance on fraudulent statements or omissions is not a sufficient basis under New York law for a common law fraud claim for damages. In any case, the amended complaint relies upon several predicate offenses other than mail and wire fraud to make out the alleged pattern. *See id.* at 247–52.

19 As one commentator has noted, "[w]here the order complained of is failure to dismiss a claim, an interlocutory appeal is appropriate only where inclusion of that claim significantly increases the complexity and duration of trial or pretrial proceedings." Note, *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b)*, 88 HARV. L. REV. 607, 621–22 (1975).

liability with respect to the Judiciary Law claim asserted in Count 8 against Donziger.[20] Moreover, if the LAP Representatives were to prevail on only one of the two proffered questions, they would remain defendants on the fraud claim, fully involved in substantially all aspects the case.

The Court's conclusion that an interlocutory appeal would not materially advance the ultimate termination of this litigation alone requires denial of this motion. But a few words are appropriate also with respect to the assertion that the proffered questions meet the statutory criteria and other factors informing the exercise of the Court's discretion.

## III

*The First Question*

This Court recognizes that our Circuit has said that New York law does not permit fraud claims based on third party reliance.[21] The question, however, is one of New York law on which the ultimate decision maker is the New York Court of Appeals. In this Court's view, New York recognizes such claims.[22] Nor is this Court alone. For one thing, the United States Supreme Court in *Bridge* relied upon a New York Court of Appeals decision that this Court finds authoritative to conclude that "no showing of reliance is required to establish that a person has violated § 1962(c)

---

20 It perhaps is doubtful that Chevron would be able to prove their conspiracy claim against the LAP Representatives, whatever its prospects with respect to other defendants. That, however, remains to be seen. Moreover, it should not be overlooked that as Donziger allegedly committed the wrongs alleged against him as the LAPs' agent and at least arguably did so within the scope of his employment, the possibility of a third party claim by Donziger against the LAP Representatives for indemnity or contribution would remain a possibility.

21 *Chevron I*, 871 F. Supp.2d at 256–57.

22 *Id.*

by conducting affairs of an enterprise through a pattern of racketeering activity consisting of acts of mail [or wire] fraud."[23] While the Supreme Court is no more the ultimate expositor of New York law than any other federal court, its view of the current viability and authority of New York decisions warrants respect. Moreover, the Second Circuit has yet to address its prior rulings in light of a subsequent Appellate Division decision to the contrary.[24]

In these circumstances, it is debatable whether there is "substantial ground for difference of opinion" on the point, especially in view of the fact that the Circuit has not addressed the New York appellate decisions that reached conclusions at variance with its own.[25] And even if it were not, there would remain the issue whether the question would be "controlling" within the meaning of Section 1292(b).

---

23 553 U.S. at 649, 656–57 n.7.

24 *See Litvinov v. Hodson*, 74 A.D.3d 1884, 1885, 905 N.Y.S.2d 400, 401 (4th Dep't 2010) ("[F]raud may be found where a false representation is made to a third party, resulting in injury to the plaintiff." (internal quotation marks and citation omitted)). Further, at least one district court in this Circuit has agreed with this Court, despite the Second Circuit cases relied upon by the LAP representatives. *See Prestige Builder & Mgmt. LLC v. Safeco Ins. Co. of Am.*, No. 12 Civ. 1947 (ILG), 2012 WL 4801769, at *3–5 (E.D.N.Y. Oct 10, 2012) (following *Chevron I*). And both Appellate Division and district courts of this Circuit have recognized the availability of such fraud claims since the Second Circuit's only substantive discussion of the issue. *E.g.*, *N.B. Garments (PVT.), Ltd. v. Kids Int'l Corp.*, No. 03 Civ. 8041 (HB), 2004 WL 444555, at *3 (S.D.N.Y. Mar. 10, 2004) (explaining that third party reliance is sufficient to sustain a cause of action for common law fraud); *Ruffing v. Union Carbide Corp.*, 308 A.D.2d 526, 528, 764 N.Y.S.2d 462, 465 (2d Dep't 2003) (same).

25 The Court notes that its prior description of the state of the law (DI 634) is correct; the Second Circuit has not held that the law of New York is as the Circuit previously construed it even though a subsequent Appellate Division decision is to the contrary. *See Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 Fed. Appx. 611, 613 (2d Cir. 2010) (summary order relying on Second Circuit precedent without discussion of subsequent contrary New York decision).

"The requirement that there be a 'controlling' question of 'law' has created difficulties that in part blend with the questions raised by the requirement that an appeal might materially advance the ultimate termination of the litigation."[26] Certainly a question would be controlling "if its incorrect disposition would require reversal of a final judgment."[27] On the other hand, a question that would not have a material effect on how the case would be conducted, regardless of its disposition, would not be controlling.[28] Thus, in considering whether the proffered question would be controlling, it is appropriate to consider whether an "interlocutory reversal might save time for the district court, and time and expense for the litigants."[29]

For reasons given previously, resolution of the first of the two proffered questions would not materially advance the ultimate termination of the litigation. Nor would it be likely to save the Court or the parties any time or money. As noted, the overlap between the RICO and fraud claims, the former of which would be unaffected by the outcome of the proposed interlocutory appeal, is so extensive that an appellate disposition with respect to the New York law issue relating to the fraud claim alone would not likely affect the scope, duration or expense of the lawsuit. Moreover, given these parties' track record with respect to such matters, the likelihood of intensive

---

26 16 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS § 3930, at 495–96 (2d ed. 1987).

27 *Id.* at 496.

28 *Id.* at 496–94.

29 *Id.*; *In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978) ("'(t)he courts have tended to make the "controlling question" requirement one with the requirement that its determination "may materially advance the ultimate termination of the litigation"' and that '(t)he critical requirement is that it (an interlocutory appeal) have the potential for substantially accelerating the disposition of the litigation'" (quoting 9 MOORE'S FEDERAL PRACTICE ¶ 110.22(2) (1975)).

and expensive litigation over whether and to what extent discovery and other proceedings ought to go forward pending an interlocutory appeal – and, in all likelihood, the referral to and disposition by the New York Court of Appeals of a certified question – approaches certainty.[30] Neither they, this Court, nor the Court of Appeals should be burdened with this academic exercise. The first proposed question is not "controlling" within the meaning of the statute.

*The Second Question*

The LAP Representatives second proposed question is whether "a foreign judgment debtor may bring an affirmative common-law fraud claim in New York against a judgment creditor based on alleged fraud in obtaining the foreign judgment." They claim this is a matter of "first impression" on which there is "little or no authority."[31]

As an initial matter, the LAP Representatives presuppose that the state law fraud claim is based entirely on the contention that they and/or their agents procured the Judgment by fraud. As we have seen, however, that is incorrect:

> "Chevron alleges that the Donziger Defendants and others 'knowingly misrepresented, omitted, and/or concealed material facts . . . in their representations' to it, U.S. courts, the Lago Agrio court, federal and state agencies and officials in the United States, Chevron's stockholders, investors, analysts, and the media, to obtain favorable rulings from U.S. and the Lago Agrio courts, pressure U.S. officials to investigate Chevron, and propagate false information to harm Chevron. These alleged false representations include the 'Calmbacher reports, the true authorship of the Cabrera Report, the denial of any improper contact [on behalf of the LAPs] with

---

30 The LAP Representatives and defendant Steven Donziger moved nine times for stays of proceedings in 2011 alone. *See* 11 Civ. 0691, DI 237; 11 Civ. 3718, DI 4, 12; 11 Civ. 1150, DI 48, 295, 440, 493, 537, 608. They most recently moved to stay part of the proceedings on December 19, 2012. 11 Civ. 0691, DI 677.

31 DI 651, at 6.

> Cabrera, the supposed independence and neutrality of Cabrera and his liability and damages assessment, the submission of new "expert" reports on the fraudulent Cabrera Report, and the fraudulent endorsements of the Cabrera Report.' Chevron alleges further that Chevron, U.S. courts, the Lago Agrio court, federal and state agencies and officials in the United States, Chevron's stockholders, investors, analysts, and members of the media reasonably relied on these false representations and that Chevron suffered pecuniary and reputational harm as a direct, proximate, and foreseeable result of defendants' fraud."[32]

Thus, the fraud claim is based at least in material part on contentions that the Donziger Defendants and others – acting as agents of the LAPs – (a) fraudulently made false statements to U.S. courts, federal and state agencies and officials, Chevron's stockholders, persons in the investment arena, and journalists, (b) at least some relied upon those fraudulent statements, and (c) Chevron was injured in consequence of that reliance. To that extent, the facts that the Judgment allegedly was obtained by fraud, that Chevron is the judgment debtor, and that these defendants are judgment creditors, while certainly important parts of the context in which these aspects of the alleged fraud occurred, are not the only conduct for which relief is sought. This aspect of the fraud claim – viz., the aspect that is independent of whether the Judgment was obtained by fraud – thus stands or falls regardless of whether New York law would recognize a claim by "a foreign judgment debtor . . . [for] common-law fraud . . . against a judgment creditor based on alleged fraud in obtaining the foreign judgment." In seeking leave to appeal on the basis of their second proffered question, then, the LAP Representatives seek appellate review of what at best is no more than one of two theories underlying one cause of action against them. That would not be a "controlling question of law" within the meaning of Section 1292(b)[33] even if the second proffered question accurately captured

---

32 *Chevron I*, 871 F. Supp.2d at 254 (footnotes omitted).

33 *California Pub. Emps. Ret. Sys. v. Worldcom, Inc.*, 368 F.3d 86, 95–96 (2d Cir. 2004) (holding that where appellant raised question of validity of only one of two possible theories

the second theory underlying Chevron's fraud claim, viz. that it is entitled to relief for fraud in the procurement of the Judgment. And the LAP Representatives' second question does not do even that.

Insofar as the LAP Representatives' motion sought dismissal of the fraud claim, it argued in relevant part – and with phrasing that obscures the flaw in their argument – that "[n]o judgment debtor anywhere, whether it lost a judgment in a foreign country (like Chevron did) or in a U.S. court (not here), is permitted to pursue in New York a fraud claim for money damages based on alleged fraud in the judgment."[34] But that misses entirely a most important point.

Relief for fraud in the procurement a prior judgment long was available in independent actions in equity.[35] The merger of law and equity effected no substantive change. All relief that formerly was available in equity remains available.[36] As the Second Circuit has put it,

---

of jurisdiction, that question could not be "controlling" under § 1292(b)).

34 DI. 601, at 16.

35 "The type of fraud necessary to sustain an independent action attacking the finality of a judgment under Rule 60(d) 'is narrower in scope than that which is sufficient for relief' under Rule 60(b)." *LinkCo, Inc. v. Naoyuki Akikusa,* 367 Fed. Appx. 180, 181 (2d Cir. 2010) (quoting *Gleason v. Jandrucko,* 860 F.2d 556, 558 (2d Cir. 1988)).

36 *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318–19 (1999) ("[T]he substantive prerequisites for obtaining an equitable remedy as well as the general availability of injunctive relief are not altered by [Rule 65] and depend on traditional principles of equity jurisdiction.") (quoting 11A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE: FEDERAL RULES OF CIVIL PROCEDURE § 2941, at 31 (2d ed. 1995) (internal quotation marks omitted)); *Stainback v. Mo Hock Ke Lok Po*, 336 U.S. 368, 382 n.26 (1949) ("Notwithstanding the fusion of law and equity by the Rules of Civil Procedure, the substantive principles of Courts of Chancery remain unaffected."); *Union Mut. Life Ins. Co. v. Friedman*, 139 F.2d 542, 544 (2d Cir. 1944) ("Under the present practice there is no longer a law side and an equity side of the court, but only a civil action in which all relief must be obtained that could formerly be secured either at law or in equity."); 4 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE: FEDERAL RULES OF CIVIL PROCEDURE § 1043, at 177 (3d ed. 2002) ("[With] the merger of law and equity and . . . abolition of . . . forms of action furnish a single uniform procedure by which a litigant may present his claim in an orderly manner to a court empowered to

"[r]elief from a final judgment may also be obtained at any time by way of an *independent action* to set aside a judgment for 'fraud upon the court.'"[37] Indeed, the advisory committee note to Fed. R. Civ. P. 60(b) so recognized, stating that the rule's saving language[38] was intended to make clear that "fraud may be urged as a basis for relief by independent action."[39] Moreover, prior to the merger of law and equity, damages were available in equitable actions in chancery as "incidental to or intertwined with injunctive relief."[40] Thus, the question whether, to quote the LAP

award whatever relief is appropriate and just; the substantive and remedial principles that applied prior to the advent of the federal rules are not changed.").

37 *Gleason*, 860 F.2d at 558 (emphasis in original).

The word "also" in the quoted passage refers to relief by motion under Fed. R. Civ. P. 60 in the action in which the judgment was rendered.

38 Fed. R. Civ. P. 60(b) provides in relevant part that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party . . . ." Fed. R. Civ. P. 60(d) goes on to explain that "[*Fed. R. Civ. P. 60*] *does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding, . . . or (3) set aside a judgment for fraud on the court."* (Emphasis added).

39 *Gleason*, 860 F.2d at 558 (quoting Fed. R. Civ. P. 60 advisory committee notes, 1946 Amendment, Subdivision (b)).

40 *Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry*, 494 U.S. 558, 571 (1990) (quoting *Tull v. United States*, 481 U.S. 412, 424 (1987) (internal quotation marks omitted)). This remains true in the few states in which law and equity continue as separate systems. *E.g.*, *Nottingham Partners v. Dana*, 564 A.2d 1089, 1094 (Del. 1989); *Scotton v. Wright*, 13 Del. Ch. 214, 117 A. 131, 139 (1922) (explaining that "where a case of clearly equitable cognizance is presented, the [Chancery] court, if damages be necessary in order to do complete justice, will as incidental to the main relief decree such damages"); *Fleisher v. James Drug Stores*, 1 N.J. 138, 150–51, 62 A.2d 383, 389 (1948) ("There may be a recovery [in equity] of the damages ensuing from the wrong which calls for equitable relief."); *Assoc'd Metals & Minerals Corp. v. Dixon Chem. & Res., Inc.*, 82 N.J. Super. 281, 297, 197 A.2d 569, 577–78 (1963) ("[I]f the complainant is then entitled to equitable relief, equity's jurisdiction to settle all the issues, even though purely legal in nature, and to award damages for the breach of a legal right involved in the suit, will not be defeated by

Representatives again, "a foreign judgment debtor may bring an affirmative *common-law* fraud claim in New York against a judgment creditor [for damages] based on alleged fraud in obtaining the foreign judgment"[41] is not the right question at all and certainly not one that this Court decided. The right question instead is whether, under New York law, a judgment debtor may sue a judgment creditor for relief with respect to the judgment based on fraud in its procurement and, in an appropriate case, even obtain damages.[42] There is no serious doubt that it may do so.[43] Indeed, the

---

subsequent events which render equitable relief impracticable or unnecessary or unsuitable.") (quoting *Mantell v. Int'l Plastic Harmonica Corp.*, 141 N.J. Eq. 379, 393, 55 A.2d 250, 258–59 (1947) (internal quotation marks omitted)).

Since the merger of law and equity, the question whether particular damages are legal or equitable in nature is significant principally or exclusively as it relates to the right to a jury trial. *See, e.g.*, *Chauffeurs*, 494 U.S. at 564–73.

41 (Emphasis added).

42 While, the Court recognizes that plaintiff's prayer for relief as to its fraud cause of action appears to seek primarily damages, it seeks also equitable relief "as appropriate," including an injunction. Cpt. Prayer for Relief ¶ 5. Further, Fed. R. Civ. P. 54(c) makes clear that a "final judgment should grant the relief to which each party is entitled," including equitable relief. 10 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE: FEDERAL RULES OF CIVIL PROCEDURE § 2664, at 191–92 (3d ed. 1998) ("[W]ith the merger of law and equity, specific or injunctive relief may be awarded even though damages were prayed for and vice-versa.").

43 At a minimum, New York courts allow plaintiffs to seek equitable relief in independent actions from judgments obtained through fraud extrinsic to the issues decided in the underlying action. *Jones v. Buttarazzi*, 204 A.D.2d 1018, 1018, 614 N.Y.S. 957, 957 (4th Dep't 1994) ("Plaintiffs properly brought a plenary action alleging extrinsic fraud with respect to a confession of judgment entered in Rochester City Court."); *Tamimi v. Tamimi*, 38 A.D.2d 197, 199–204, 328 N.Y.S.2d 477, 479–484 (2d Dep't 1972) (declaring Thai divorce decree void where husband obtained the decree through fraud extrinsic to the issues in the action). It is unnecessary now to decide whether such relief is available also in cases of purely intrinsic fraud, *cf. Chevron II*, 2012 WL 3538749, at *30 (noting Court's "preliminary . . . view" that intrinsic fraud is basis for non-recognition of foreign judgment on ground of fraud under CPLR Art. 53), or, if not, whether Chevron will succeed in proving either intrinsic or extrinsic fraud.

LAP Representatives do not claim otherwise.

In these circumstances, the second question the LAP Representatives proffer – whether such an action would have been available at common law – is not presented here. It is not a question of law that is "controlling" in this case. It is of purely academic and historical interest. In any case, the LAP Representatives have advanced no persuasive basis for supposing that there is a substantial basis for difference of opinion with respect to the question whether plaintiff, if it prevails on its claim of fraud in the procurement of the Judgment, would be entitled to at least the relief that would have been available to it in a court of equity in like circumstances prior to the merger of law and equity. Nor, for the reasons given above, would a resolution of this question hold out any serious prospect of materially advancing the ultimate termination of this case.

*Conclusion*

The questions with respect to which the LAP Representatives seek leave to appeal under Section 1292(b) are not controlling questions of law. At least one of them is not a question with respect to which there is substantial ground for difference of opinion. The Court finds no

---

Additionally, the New York Court of Appeals has made clear that a cause of action for damages arises where fraud in obtaining a judgment, including intrinsic fraud, "is merely a means to the accomplishment of a larger fraudulent scheme." *Newin Corp. v. Hartford Accident & Indem. Co.*, 37 N.Y.2d 211, 217, 371 N.Y.S.2d 884, 890 (N.Y. 1975) (allowing independent suit for damages where plaintiffs "alleged that the fraud [("suppressing testimony and suborning perjury")] committed in the bankruptcy proceedings is extrinsic and part of a larger scheme which goes beyond the scope of the [previous] law suit."); *Specialized Indus. Servs. Corp. v. Carter*, 68 A.D.3d 750, 752, 890 N.Y.S.2d 90, 92 (2d Dep't 2009) (affirming principal that "a separate law suit may be brought where the alleged perjury or fraud in the underlying action was merely a means to the accomplishment of a larger fraudulent scheme which was greater in scope than the issues determined in the prior proceeding." (internal quotation marks and citations omitted)). In this case, Chevron alleges that the claimed fraudulent procurement of the judgment was part of a larger fraudulent scheme.

reasonable likelihood that interlocutory review of either of them would materially advance the termination of this litigation. Moreover, in the absence of a complete factual record and findings of fact, any interlocutory appeal would run a substantial risk of being an advisory opinion divorced from the facts that ultimately may be proved. Accordingly, the motion [DI 649] is denied both on the law and in the exercise of discretion.

SO ORDERED.

Dated: January 7, 2013

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)