UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                           :
CHEVRON CORPORATION,              :

                Plaintiff,        :
                           :      11-CV-0691 (LAK)
    v.                            :

STEVEN DONZIGER, et al.,          :

                Defendants.     :
                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DECLARATION OF LAUREN J. ELLIOT ON BEHALF OF CHEVRON CORPORATION IN SUPPORT OF ITS OPPOSITION TO PATTON BOGGS LLP'S SUPPLEMENTAL SUBMISSION CLAIMING UNDUE BURDEN FROM COMPLIANCE WITH MODIFIED SUBPOENA

LAUREN J. ELLIOT hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.      I am an attorney admitted to the bar of the State of New York and a partner in the law firm of Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), counsel of record for Chevron Corporation ("Chevron") in the above-captioned matter.

2.      I make this declaration on behalf of Chevron in support of its opposition to Patton Boggs LLP's ("Patton Boggs's") Supplemental Submission Claiming Undue Burden from Compliance with Modified Subpoena. I am personally familiar with the facts set forth herein.

3.      On behalf of Chevron, I have been attempting to resolve issues relating to this document subpoena with Patton Boggs's counsel at Leader & Berkon LLP ("L&B") since July 2012.

4.      The early discussions with Leader & Berkon regarding Chevron's subpoena and Patton Boggs's production in response thereto are detailed in my declaration dated July 27, 2012, which was filed in this case (Dkt. No. 546) in support of Chevron's opposition to Patton

Boggs's motion to quash.  L&B requested "a number of proposed modifications to the subpoena that will substantially narrow the field of documents that will need to be collected, processed, filtered, reviewed and logged."  Ex. 16.  Chevron agreed to the majority of those proposed modifications, including Patton Boggs's request that it be permitted to limit the document custodians to those attorneys and legal professionals who billed more than 50 hours to the matter.    I understand from L&B that 58 Patton Boggs lawyers and professionals billed more than 50 hours to this matter. *See* Exhibit 16.  At the time of the discussions relating to custodians, I understood that limiting the custodians in this manner would ease Patton Boggs's concerns about burden regarding its custodians.[1]

5.    On August 24, 2012, this Court denied Patton Boggs's motion to quash, and ordered that:  (1) Patton Boggs serve objections to Chevron's subpoena by September 7, 2012; (2) the parties meet and confer in person to discuss the subpoena and objections; and (3) the parties file by September 14, 2012, a joint letter setting out the remaining points in dispute.

6.    After two days of oral argument and a subsequent joint submission, the Court issued an Order on November 18, 2012 resolving all remaining disputes in connection with the subpoena.  The Court's Order narrowed the scope of the subpoena, further alleviating burden concerns articulated by Patton Boggs in its motion to quash.

7.    Per the Court's direction at the September 27, 2012 hearing, the parties had a number of discussions to try to find mutually-agreeable search terms during the month of December, 2012.

---

[1]  Despite having originally proposed the use of 58 custodians, Patton Boggs now is attempting to limit the number of custodians by suggesting to Chevron that Patton Boggs only produce documents from 6 to 10 custodians.  (Patton Boggs Br. at 4).

8.      Patton Boggs initially proposed 369 search terms.  In response, Chevron agreed to 255 of the Patton Boggs terms, proposed modifications to approximately 114 of Patton Boggs's terms and proposed roughly 300 additional terms.  Chevron's additional terms included, *inter alia*, relevant acronyms, code names, names of the Post-Cabrera Cleansing Experts, the names of the wells and stations in the former Concession area and the names of members of Cabrera's team.  Patton Boggs has agreed to 169 of Chevron's proposed terms.  While the meet-and-confer continues, the parties currently have agreed on approximately 507 search terms.

9.      During these meet and confer sessions, counsel for the parties reviewed and discussed search terms on an individualized basis (i.e., term by term).  L&B provided information regarding the number of document "hits" each term generated and rejected terms which they believed were generating a disproportionately large number of hits.  L&B explained that certain of the names Chevron proposed as search terms are also names of parties or witnesses in other cases and therefore those terms generated a large number of "false hits."  L&B also indicated that the names of the Post-Cabrera Cleansing Experts are generating "false hits" because Patton Boggs has retained these expert witnesses in other litigations.  L&B did not inform Chevron of what percentage of the "hits" for a given term are false hits.

10.      Chevron proposed multiple times to L&B that they discuss with their document vendor possible ways to limit the searches to yield fewer false hits, including the use of "NOT" to exclude documents related to other litigations.  Although I understand that "NOT" is often used to exclude irrelevant documents from being captured in searches, L&B has to date not agreed to use "NOT" to exclude such documents.  In some cases, L&B indicated that it did not know the reason for the large number of hits, but assumed that the hits must be false hits.  Chevron proposed that they sample some of the search results or talk with individual custodians

to see if they could determine the reason for the large number of hits, but L&B has not agreed to do either.

11.     While the meet-and-confer continues, the parties currently have agreed on approximately 507 search terms, and approximately 121 terms remain under discussion.   To more quickly bring closure to the meet-and-confer process, on January 6, 2013, Chevron set forth in writing its position on several outstanding search terms and offered concessions on many other terms. (Ex. 15).  With respect to the terms that remain under discussion, Chevron has agreed to attempt to modify 70 terms, Chevron has identified 30 terms (including the names of many Post-Cabrera Cleansing Experts) that it proposed Patton Boggs modify by using the "NOT" connector with another term to exclude what Patton Boggs claims are false positives, and Chevron has identified 19 terms, which it contends Patton Boggs should use without any modifiers.  Patton Boggs has not demonstrated that any of the 19 terms cause it any incremendetal burden—significant additional hits, over the hits generated by the already agreed-upon terms.  *Id.*  Chevron also is agreeing to withdraw 34 terms in total.  *Id.*

12.     Throughout the discussions, L&B made no mention of the possibility of using predictive coding or other similar technology-assisted review tools to ease their purported burden.

13.     Attached hereto as Exhibit 1 is a true and correct copy of a letter from The Burford Group to Purington Moody Weil LLP, Steven Donziger, Pablo Fajardo, Luis Yanza, and the Amazon Defense Front, dated September 23, 2011, bearing the Bates Numbers BUR0000845 through BUR0000847 dated September 29, 2011.  Burford produced this document to Chevron on December 21, 2013.

14.     Attached hereto as Exhibit 2 is a true and correct excerpted copy of the transcript from the September 27, 2012 hearing before this Court.

15.     Attached hereto as Exhibit 3 is a true and correct excerpted copy of the transcript from the September 25, 2012 hearing before this Court.

16.     Attached hereto as Exhibit 4 is a true and correct copy of a letter and enclosure from J. Tyrrell to N. Economou, dated May 5, 2010, and bearing the Bates Numbers DONZ00081518 Page 1 of 5 through 5 of 5.

17.     Attached hereto as Exhibit 5 is a true and correct copy of the website titled "FAQs about IQ Review" and *available at* http://iqreview.epiqsystems.com/media/IQReviewFAQs.pdf.

18.     Attached hereto as Exhibit 6 is a true and correct copy of the website titled "International Law Firm Allen & Overy Pilots IQ Review to Get to Relevant Documents Faster" and *available at* http://iqreview.epiqsystems.com/media/IQR_A_and_O_Case_Study_US.pdf.

19.     Attached hereto as Exhibit 7 is a true and correct copy of the website titled "During a European Regulatory Review a Corporation Turns to IQ Review to Meet Deadlines and Control Costs" and *available at* http://iqreview.epiqsystems.com/media/IQReview_Regulatory_Review_US.pdf.

20.     Attached hereto as Exhibit 8 is a true and correct copy of the website titled "An AM Law 50 Firm Pilots IQ Review to Identify Responsive Documents Earlier" and *available at* http://iqreview.epiqsystems.com/media/IQR_AMLAW50_Case_Study_US.pdf.

21.     Attached hereto as Exhibit 9 is a true and correct copy of the joint submission regarding the Patton Boggs subpoena, jointly filed by Chevron and Patton Boggs before the Court in this action on September 14, 2012.

22.     Attached hereto as Exhibit 10 is a true and correct copy of Chevron's subpoena directed to Patton Boggs dated June 13, 2012.

23.     Attached hereto as Exhibit 11 is a true and correct copy of Chevron's subpoena directed to Karen Hinton dated November 28, 2012.

24.     Attached hereto as Exhibit 12 is a true and correct copy of Chevron's subpoena directed to Rainforest Action Network dated November 28, 2012.

25.     Attached hereto as Exhibit 13 is a true and correct copy of Chevron's subpoena directed to Amazon Watch dated November 28, 2012.

26.     Attached hereto as Exhibit 14 is a true and correct copy of the transcript from the November 15, 2010 hearing before the United States Court of Appeals for the Second Circuit.

27.     Attached hereto as Exhibit 15 is a true and correct copy of my letter to S. Alyssa Young of Leader & Berkeron LLP dated January 6, 2013.

28.     Attached hereto as Exhibit 16 is a true and correct copy of a letter from S. Alyssa Young of Leader & Berkon LLP to Randy Mastro of Gibson Dunn dated July 18, 2012.


I declare under penalty of perjury that the foregoing is true and correct.


Executed this 7th day of January, 2013 at New York, New York.

Lauren J. Elliot