# EXHIBIT 1

Case 1:11-cv-00691-LAK   Document 714-1   Filed 01/07/13   Page 1 of 4

# BURFORD GROUP

Regency Court, Glategny Esplanade
St Peter Port GY1 1WW
GUERNSEY

29 September 2011

**COURIER**

Purrington Moody Weil LLP
201 North Church Street, Suite 200
Greensboro, NC 27401 USA

Steven R. Donziger
c/o 245 West 104th Street, #7D
New York, New York 10025

Pablo Estenio Fajardo Mendoza, Esq.
c/o Frente de Defensa de la Amazonia
Calle Progreso y Eloy Alfaro, esquina
Nueva Loja, Sucumbíos
Ecuador

Luis Francisco Yanza Angamraca
c/o Frente de Defensa de la Amazonia
Calle Progreso y Eloy Alfaro, esquina
Nueva Loja, Sucumbíos
Ecuador

El Frente de Defensa de la Amazonia
c/o Frente de Defensa de la Amazonia
Calle Progreso y Eloy Alfaro, esquina
Nueva Loja, Sucumbíos
Ecuador

Ladies and Gentlemen:

**Re:** *Maria Aguinda y Otros v. Chevron Corporation*

We are writing in connection with the funding agreement dated as of October 31, 2010 (the "**Funding Agreement**") between, among others, Treca Financial Solutions ("**Treca**" or the "**Funder**"), the plaintiffs in the proceeding entitled *Maria Aguinda y Otros v. Chevron Corporation* in the Provincial Court of Justice of Sucumbios, Ecuador [No. 2003-00020] (collectively, the "**Claimants**") and El Frente de Defensa de la Amazonia (the "**FDA**"). Capitalized terms used herein but not otherwise defined have the meanings ascribed thereto in the Funding Agreement.

As you know, Burford Group is the investment adviser to Treca and conducted the due diligence and negotiations that resulted in Treca's entry into the Funding Agreement.

It is clear from the evidence that has come to light subsequent to our discussions with you and Treca's entry into the Funding Agreement that Claimants, the FDA, their affiliates and their attorneys (collectively, "you") have engaged in conduct and activity that gives rise to numerous material breaches of the Funding Agreement. In addition to breaching the Funding Agreement – through misrepresentations and other material failures – the conduct discovered amounts to fraud.

Indeed, now that we are in possession of more facts – facts only revealed through discovery in the proceeding before Judge Kaplan – we believe that you and particularly your US representatives engaged in a multi-month scheme to deceive and defraud in order to secure

BUR0000845

- 2 -

desperately needed funding from Treca, all the while concealing material information and misrepresenting critical facts in the fear that we would have walked away had we known the true state of affairs.

The record is replete with examples of misrepresentation and disingenuous conduct. We set out here only a few examples.

First, Cabrera. Both your public statements prior to the date of the Funding Agreement and your statements to us during our diligence suggested (1) that your ex parte communications with Cabrera were limited, (2) that they were lawful under Ecuadorian law, and (3) that Chevron's suggestions to the contrary were false. In the Invictus report,[1] we were told: "Chevron claims that the outtakes show unlawful collusion between Plaintiffs, their experts, and Mr. Cabrera. . . . But as with virtually any other claim by Chevron in this litigation, reality is being distorted here." (Page 4). The Invictus report also said that "Chevron has cited in its submissions no Ecuadorian law or rule that prevents ex parte communication" (page 5) and that Chevron is "[c]leverly using the lens of U.S. norms to distort what transpired in Ecuador" and "us[ing] its findings regarding Plaintiffs' involvement with the Cabrera Report to create the impression that it is the victim of an injustice in Ecuador." (Page 4) Throughout, you characterize Chevron's "arguments concerning Mr. Cabrera" as "misleading." (Page 4) Separately from the Invictus Report, you assured us that your contacts with Cabrera were limited and entirely permissible.

At the start of discovery before Judge Kaplan, Mr. Donziger attempted to maintain the same position taken with us before Treca's funding: namely, that the ex parte communications were limited and lawful, and that Chevron's allegations to the contrary are false.[2] But over the course of discovery Donziger admitted that plaintiffs had in fact ghost written the entire Cabrera report and had worked very hard to cover that up. Donziger Deposition Transcript 3089: 3-8 (admitting that "Stratus had drafted final report for Cabrera for Cabrera to submit to the Court" and that plaintiffs "didn't want others to know"). Donziger also revealed that "one of your own Ecuadorian lawyers representing the Lago Agrio plaintiffs on the ground in Ecuador wrote to you in late March that they all might end up in jail if it came out what Stratus had done for Cabrera." (3645: 8-15) These statements by plaintiffs' own representatives – that the ex parte contacts consisted of full-blown ghost-writing and that their legality in Ecuador was of great concern – flatly contradict your representations that the contacts were limited and lawful and that Chevron's allegations to the contrary were false.

While there is much more to your fraudulent conduct than just Cabrera, the significance of your deception with respect to Cabrera cannot be understated. There is no question that we would not have recommended that Treca enter into the Funding Agreement with you had we been

---

[1] While it may have had other functions as well, a key function of the Invictus Report was to provide us and Treca with Patton Boggs' analysis of the case as a major part of our recommendation and Treca's investment decision. That function – and our and Treca's reliance on the Report – was clearly understood by all involved. Indeed, when the Report was delayed in July 2010, so too was Treca's investment decision because of non-receipt of the Report.

[2] See Steven R. Donziger's Memorandum of Law in Support of Motion to Quash or Modify Subpoenas, In re Chevron, No. 10-mc-0002 (S.D.N.Y. filed Aug. 27, 2010), at 2, fn.2 (asserting that Donziger "denies" Chevron's "unsupported contention that there was some improper 'collusion' between the plaintiffs and Cabrera"); see also id. (asserting that Chevron has "not cited any order, rule, regulation, or law that would prohibit any party to the Lago Agrio litigation . . . from meeting ex parte with either Cabrera or any other expert").

BUR0000846

- 3 -

aware at the time that your own lawyers thought they might "end up in jail" for your conduct with respect to Cabrera.

Also revealed in discovery was a letter from Joseph Kohn, dated August 9, 2010 – while we were actively engaged in discussions with you, and which you never mentioned to us – in which he criticized Mr. Donzinger for having misled him in virtually the same way we have been misled. Kohn was co-counsel on the case and had provided most of its funding up to that point. Yet he, like us, had been misled about the plaintiffs' role in drafting the Cabrera report. He wrote: "I am [] shocked by recent disclosures concerning potentially improper and unethical, if not illegal, contacts with the court-appointed expert, Mr. Cabrera, which are coming out in the U.S. discovery proceedings being initiated by Chevron. Not only did we not know of any of this conduct, it is contrary to assurances that Donziger and you made to us on numerous occasions."[3] Given that we relied on your assertions that your role in the Cabrera report was limited and lawful, and that Chevron's accusations were false, it would certainly have been material to us to know that you had likewise misled your co-counsel and prior funder and that, upon learning of your misrepresentations, he had accused you of "unethical, if not illegal" conduct.

Moreover, with your funding drying up from Kohn, it is now clear that you were willing to do and say anything to attract new funding. You misled us about Kohn's relationship with you and the current status of that relationship, and the reasons you would not be able to deliver Kohn as a signatory to the intercreditor agreement. Those too were material misrepresentations.

In these and other ways, you have breached the Funding Agreement – specifically, sections 5 and 10 – by withholding vital information and, indeed, working to convince us that Chevron's allegations of wrongdoing by your attorneys were false.

Yours truly,

**BURFORD GROUP**

By: _____
       Authorized Signatory

---

[3] *See* DONZ00026949, Letter from J. Kohn to P. Fajardo *et al.*, at 1.

BUR0000847