UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

                    Plaintiff,

         -against-                               11 Civ. 0691 (LAK)

STEVEN DONZIGER, et al.,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM AND ORDER**

LEWIS A. KAPLAN, *District Judge.*

       This matter – which concerns an $18.2 billion judgment obtained in Ecuador in the Lago Agrio litigation by the LAPs against Chevron in the Lago Agrio litigation (the "Judgment") – is before the Court on the motion of members of the Huaoroni people in Ecuador to intervene as defendants, as of right or by permission, for the purposes of (1) defending the validity of the Judgment, (2) challenging the alleged representation of the Huaorani people in the Lago Agrio litigation by the Donziger Defendants and the Amazon Defense Front ("ADF"), and (3) asserting cross-claims against the Donziger Defendants and the ADF for (a) a declaration that the Donziger Defendants and the ADF are obliged to ensure that "every Huaorani community and every Huaorani is . . . entitled to recover their share of [any] judgment proceeds,"[1] (b) imposition of a constructive trust over any proceeds of the Judgment, and (c) unjust enrichment. In essence, the proposed intervenors – the Huaorani for purposes of this decision – contend that Donziger, other lawyers for

---

    [1]    Prop. Answer in Intervention at 118 ¶ 69

the LAPs, and their allies intend to take for themselves and for those who have financed their efforts as much of any recovery as ever may be obtained on the Judgment and to cut the Huaorani out of what they say is their fair share of the benefits.  Chevron, the LAP Representatives, and the Donziger Defendants all oppose the motion.

### A.      Intervention as of Right

Intervention is governed by Rule 24 of the Federal Rules of Civil Procedure.  To the extent the motion seeks to intervene as of right, it provides that one must be permitted to intervene if he or she "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."[2] Moreover, intervention as of right is appropriate only when all of the following requirements are met:

> "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties."[3]

There are several problems with this motion in light of this standard, only some of which are mentioned.

First, the motion is untimely.  Chevron commenced this action on February 11, 2011.

---

[2]   FED. R. CIV. P. 24(a)(2).

[3]   *MasterCard Int'l. Inc. v. Visa Int'l. Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006) (citing *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)).

3

The trial court in Ecuador issued its judgment on February 14, 2011.[4]  The Huaorani thus should have been aware by at least that date of all the facts upon which they base their motion and, therefore, their need to intervene in this case.[5]

Instead of seeking to intervene, however, the Huaorani initiated a suit in this district against the Donziger Defendants and ADF in July 2012, asserting claims substantially similar to the cross claims they seek to assert here.[6]  On November 2, 2012, Donziger informed the Huaorani that he intended to move to dismiss their complaint for lack of federal subject matter jurisdiction.[7]  On November 28, 2012, the Huaorani voluntarily dismissed their action.  Rather than refiling in state court, as they clearly could have done, the Huaorani moved to intervene in this case.

The Huaorani contend that they did not become aware of a divergence between their interests and those of the LAPs – and therefore of their need to intervene – until "after they receiv[ed] inadequate responses from ADF to questions about the Huaorani's interests in the Lago Agrio Judgment" in January 2012.[8]  It is clear from the parties submissions, however, that counsel for the Huaorani has disapproved of the manner in which Donziger and the ADF have conducted

---

[4] The Judgment was revised on March 4, 2011.  *See* DI 186.

[5] The parties dispute whether the Huaorani previously were involved in litigation against Chevron.  While the LAPs contend that the Huaroani's involvment extends as far back as 1993, when "the Huaorani sued Texaco, Gulf Oil," *see* DI 689, at 2, counsel for the Huaorani claims that that suit was brought by the Kichwa – which "are an entirely different people and tribe from the Huaorani" – and that "[n]one of the Huaorani Intervenors . . . was a plaintiff in" that case.  Kimerling Supp. Decl. [DI 710] ¶ 11.

[6] *Keperi Baihua Huani, et al. v. Steven Donziger*, No. 12-cv-5570 (LAK).

[7] Kimerling Decl. [DI 647] ¶ 5.

[8] DI 646, at 16.

the Lago Agrio litigation and distribution of the Judgment – and therefore has been aware of her

clients' purported interest in this case – since well before that date.[9] But even assuming for the sake

of argument that the Huaorani did not become aware of their need to intervene until January 2012,

their motion still would be untimely.  The Huaorani waited until November 2012 – eleven months

after they claim first to have become aware of their interest in this case – to intervene.  The Second

Circuit has found delays of such length – and even shorter ones – sufficient to deny intervention

motions.[10]  The untimeliness of the motion is alone sufficient to warrant denial of the request to

intervene as of right.

Second, insofar as the proposed intervenors seek to intervene to defend the essential

validity of the Judgment – that is to say, to defend the broad proposition that Chevron is liable and

for the amount fixed by the Ecuadorian courts – their objectives are entirely aligned with those of

the existing defendants, most notably but not exclusively the LAP Representatives.  There is no

basis for supposing that their defense of the broad thrust of the Judgment would not protect

adequately any interest the Huoarani might have.[11]

---

[9]

      *See* Stavers Decl. [DI 675] ¶24-25 (quoting speech made by present counsel on April 5, 2011).  Counsel for Huaorani submitted a declaration which itself reveals that she was concerned with Donziger and the ADF's handling of the litigation even before the Judgment was entered.  *See* Kimerling Supp. Decl. [DI 710] at ¶¶ 19-20.

[10]

      *See, e.g., United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 71 (2d Cir. 1994) (affirming denial of as-of-right and permissive intervention where petitioner had constructive knowledge of its interest eight months before it moved to intervene).  *See also Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 367, 93 S. Ct. 2591, 2604, 37 L. Ed. 2d 648 (1973) (motion to intervene untimely when filed four months after action commenced and three months after applicants had actual notice of the action).

[11]

      *See generally Chevron Corp. v. Donziger,* No. 11 Civ. 3718 (LAK), 2011 WL 2150450, at *4-5 (S.D.N.Y. May 31, 2011), *appeal dismissed,* No. 11-2260 (2d Cir. filed July 31, 2011).

As noted previously, there is one respect in which the existing defendants do not represent adequately the objectives of the proposed intervenors. Chevron has maintained from the outset that Donziger, the LAPs' Ecuadorian counsel, and others intend to ensure that any proceeds of the Judgment are placed (at least initially) in a trust outside of Ecuador under a trustee of whom they approve, to control any Judgment proceeds, to shut out the LAPs and the Republic of Ecuador, and "set[] themselves up as a source of patronage through billions of dollars in remediation contracts."[12] It maintains also that the Judgment or, at least significant parts of it, actually were written by or on behalf of the LAPs, provided to the judge *ex parte,* and adopted by the Lago Agrio court. The Lago Agrio court and the intermediate appellate court – which Chevron contends was constituted improperly – collectively provided for the creation and management by the ADF of two trusts – one to receive and deal with the $8.646 billion in remediation damages and the other the $8.646 billion in "punitive damages."[13] Chevron thus suggests that the idea of putting any monetary recovery that ultimately reaches Ecuador into trusts controlled by the LAPs and their allies – at least two of which, Yanza and the ADF, are defendants in this action – came from the LAPs without

_____

As will appear, there is one respect in which the LAP Representatives and other defendants in this case are unlikely adequately to represent the interests of the proposed intervenors.

[12]

Am. Cpt. ¶¶ 65-66, 330.

[13]

*Chevron Corp. v. Donziger,* __ F. Supp.2d ___, ___, No. 11 Civ. 0691 (LAK), 2012 WL 3538749, at *4-5 (S.D.N.Y. July 31, 2012); DI 417 Ex. A (Jan. 3, 2012 Ecuadorian appellate court decision), at 16-17.

There is no inconsistency between Chevron's allegations that Donziger and the LAPs intend to funnel any judgment proceeds obtained outside Ecuador into off-shore trusts and that they also procured the Judgment provisions for two Ecuadorian trusts. Chevron has made clear its view that the purpose of the off-shore trusts is to enable payments of legal fees and returns to investors in the lawsuit outside of Ecuador, thus avoiding at least Ecuadorian limitations on legal fees, and then passing any residuum to the Ecuadorian trusts establish by the Judgment.

Chevron's knowledge, was adopted by allegedly compliant Ecuadorian courts for reasons that perhaps will not withstand examination, and that it was a means of ensuring that defendants and co-conspirators in this case control the disposition of any money ultimately recovered.

The Huaorani seek intervention to assert cross-claims against Donziger and the ADF, not only to defend the essentials of the Ecuadorian Judgment. Broadly speaking, those cross-claims assert that Donziger and the ADF are seeking to control entirely any recovery that may be obtained and, moreover, to do so for their own benefit and to the detriment of the Huaorani. The proposed answer in intervention alleges, for example, that (a) "the decision to award control over the judgment monies to ADF," which as a matter of form was made by the Ecuadorian courts, "was made by the Donziger Defendants and ADF,"[14] (b) the Ecuadorian courts' adoption of that course was made in reliance on defendants' false representations that they represented, among others, the Huaorani people,[15] and (c) "the Donziger Defendants and ADF do not intend to distribute any portion of [any] . . . Judgment proceeds to Huaorani interveners" but "first to fill[] the coffers of the Donziger Defendants and ADF."[16]

It is entirely obvious that the Donziger Defendants and the LAP Representatives would not represent the Huaorani position to extent that the Huaorani assert misbehavior by them to cut the Huaorani out of any benefits. The Huaorani's difficulty on this aspect of their motion, however, is that Chevron can be relied upon to do so. The claim that Donziger and the ADF made the decision – later incorporated in the Judgment – to award control over any recoveries to a trust

---

[14]
    Prop. Answer in Intervention at [DI 647-1] at 113, ¶ 57.

[15]
    *Id.* at 120, ¶ 72.

[16]
    *Id.* at 118, ¶ 67.

run by the ADF falls well within Chevron's contention that the Judgment was ghost written by the LAPs and/or their allies, passed to the court *ex parte*, and adopted by the court.[17]   Moreover, Chevron has asserted vocally that Donziger and the other lawyers have schemed to ensure that any recovery that may be obtained be placed in a trust outside of Ecuador for the purpose of cutting up the pie among the lawyers and their financiers in a jurisdiction outside of Ecuadorian control, and then passing the residue to the Ecuadorian trusts which they control through ADF.[18]

In these circumstances, the Court concludes that any interest[19] the Huaorani may have here is represented adequately by the existing parties.  Accordingly, even if the application were timely, which it is not, and even if the other requirements of Rule 24(a) were satisfied, the Court would deny intervention as of right on that ground.

Finally, it cannot be said that any interest the proposed intervenor may have with respect to their proposed cross claims against Donziger and the ADF, as a practical matter, would

---

[17]

*See* DI 397, at 14-18.

[18]

Tr., Dec. 20, 2012, at 67 ("It's actually in the Invictus memo.  It's proposed that such an offshore trust be set-up so that the funds can be divided in a way outside the government of Ecuador and Ecuadorian law."); Hendricks Decl. [DI 6] Ex. 341, (Invictus Memorandum), at 26-28; Tr., Sept. 27, 2012, at 99-100 ("[Patton Boggs] want to create a trust and move the proceeds offshore . . . . Creation of a trust being in Patton Boggs's own internal documents to move the money out of Ecuador so they could divide it up more easily offshore.").

[19]

"Interest" is a term of art for purposes of Fed. R. Civ. P. 24(a).  In view of the Court's disposition of the motion, it need not decide whether the Huaronis have an "interest" within the meaning of Rule 24(a), which would be an indispensable prerequisite to the existence of a right to intervene.  *See Chevron v. Donziger*, No. 11 Civ. 0691 LAK, 2011 WL 2150450, at *2 (S.D.N.Y. May 31, 2011) ([i]n order to intervene as of right, the putative intervenor, in addition to satisfying the other requirements, must advance a concern that is "direct, substantial, and legally protectable.") (quoting 6 MOORE'S FEDERAL PRACTICE § 24.03[2][a] (3d ed. 2010) (citing *Donaldson v. United States,* 400 U.S. 517, 530-31 (1971)).

8

be impaired or impeded absent intervention.  Indeed, as noted above, they originally sought to

pursue those claims by an independent action in this Court against the Donziger Defendants and the

ADF.[20]  They are free to pursue those claims in independent actions in the New York State and

doubtless other courts.

### B.    Permissive Intervention

Under Rule 24(b)(1)(B), a Court, in its discretion and "[o]n timely motion," may

grant permission to intervene if the movant "has a claim or defense that shares with the main action

a common question of law or fact."  Permissive intervention is appropriate in circumstances in

which intervention would not "unduly delay or prejudice the adjudication of the original parties'

rights.[21]  The Court may consider also "additional relevant factors" including:  (1) "the nature and

extent of the intervener' interests," (2) "the degree to which those interests are adequately

represented by other parties," and (3) "whether parties seeking intervention will significantly

contribute to full development of the underlying factual issues in the suit and to the just and

equitable adjudication of the legal questions presented."[22]  Moreover, it is within the Court's

discretion to limit the scope of any intervention.[23]

---

[20]

    *Huani v. Donziger,* 12 Civ. 5570 (LAK).

[21]

    FED. R. CIV. P. 24(b)(3).

[22]

    *Citizens Against Casino Gambling in Erie Cnty. v. Hogen,* No. 10–2132–cv, 2011 WL
1134316, at *1 (2d Cir. 2011) (quoting *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.,*
797 F.2d 85, 89 (2d Cir.1986)).

[23]

    *See, e.g., Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 378 (1987).

The same considerations that resulted in the conclusion that application to intervene is untimely for purposes of intervention as of right control with respect to permissive intervention as well. The motion is denied for untimeliness irrespective of the existence of common questions of fact or law. This conclusion draws substantial support both from the fact that the concerns or the Huaorani are represented adequately in substantially all respects by the existing parties, that they may press their goal of affirmative relief against Donziger and the ADF in an independent action, and that their presence in this action would delay and complicate the resolution of an already very complicated case. On the latter point, it is especially helpful to focus on the fact that this case is well along the path to an autumn 2013 trial. The time for propounding document requests has expired, and the Court has resolved almost all disputes with respect to document production. Depositions doubtless are about to begin in earnest. All discovery is to be completed by May 31. The joint pretrial order and dispositive motions are due by June 30, 2013. Injection of the proposed intervenors as full fledged parties or anything like that undoubtedly would result in unnecessary delay and the reopening of issues already decided with respect to the proper scope of discovery in this action. Indeed, plaintiff and most of the defendants object to any intervention on the ground that the presence of the Huaorani would result in undue delay and prejudice.[24]

---

[24] Chevron Mem. [DI 674] at 16-19; LAP Reps. Mem. [DI 689] at 18 ("[T]he original parties are all in agreement that allowing Putative Intervenors to join this case will invariably delay and substantially prejudice the original parties by reopening and expanding discovery and delaying trial in this matter indefinitely. Defendants Camacho and Piaguaje have waited decades for justice in this matter, and the needless inclusion of claims by Putative Intervenors that can plainly be heard elsewhere would unduly prejudice Defendants. This principal factor strongly favors denying permissive intervention in this case.")

10

*Conclusion*

The motion by the proposed intervenors (Dkt. 645) to intervene is denied.

SO ORDERED.

Dated:     January 14, 2013

_____
Lewis A. Kaplan
United States District Judge