# EXHIBIT C
# Part 1a

I, ALBERTO GUERRA BASTIDAS, hereby declare under penalty of perjury under the laws of Ecuador and the United States of America, that the following is true and correct:

1.    I am a citizen of Ecuador, born in the city of San Gabriel, province of Carchi, Ecuador, ███████ ██. My home address is ███████████████████████ ████████████████████████ and my national identity number is ██████████. I declare that I am over 18 years of age and that I have no physical or mental disabilities. I have personal knowledge of the facts stated in this document, and if I were called to testify about these facts, I would and could do so.

2.    I have not requested nor have I received any money or any compensation in exchange for signing this sworn declaration. Further, I have not been offered any compensation, present or future, in exchange for signing this sworn declaration.

3.    I received a law degree from the Central University of Ecuador and graduated in 1982. I have attached to this sworn declaration a copy of my curriculum vitae with a summary of my employment history, signed by me, as Attachment A.

4.    I was appointed Judge of the Provincial Court of Sucumbíos in 1998. In January of 2002 I was chosen Presiding Judge of the Provincial Court of Sucumbíos and I finished my two-year term as Presiding Judge in January of 2004. During this time, between May 13, 2003 and January 7, 2004, I was the Judge of oral summary trial No. 002-2003 brought against Chevron. At the beginning of the case I doubted the validity of the Plaintiffs' claims, but due to public pressure brought to bear by the representatives of the Plaintiffs during the first hearing in the case, I allowed the case to continue because I felt that if I didn't, my personal safety would be at risk.

5.    My first interaction with the representatives and attorneys for the Plaintiffs in the case against Chevron, Messrs. Pablo Fajardo, Luis Yanza and Steven Donziger, as well as with the attorneys for the company, from the law firm of Callejas & Asociados, including Alberto Racines and Adolfo Callejas, was in my capacity as Judge of the case. I attach to this sworn declaration photographs of Messrs. Pablo Fajardo, Luis Yanza and Steven Donziger, signed by me, as Attachments B, C and D, respectively.

6.    In May of 2008, I was dismissed as Judge of the Sucumbíos Court. According to the Judiciary Council, the reason for my dismissal was that I made statements in private stating that the Chevron case should be declared null. In reality, I believe I was dismissed because I confronted Judges Novillo and Yáñez, who succeeded me as judges in this case, regarding several dubious and illegal rulings they had issued in the proceedings, and regarding their practice of asking the settling experts for 25 percent of their fees in consideration for having appointed them as such. The reason why I believed that the Chevron case should have been declared null was that the settling experts were being appointed in violation of Ecuadoran law. I must clarify that the appointment of Mr. Richard Cabrera, to perform the "global assessment," also contravened Ecuadoran procedural law.

PUBLICLY FILED
REDACTED VERSION
Case 1:11-cv-00691-LAK   Document 746-3   Filed 01/28/13   Page 3 of 120
*C E R T I F I E D   T R A N S L A T I O N*

2

7.   After leaving the Lago Agrio Court, I continued having contact with several people from the legal community from that city. Among them was attorney Nicolás Zambrano, who in August of 2008 was appointed Judge of the Provincial Court of Sucumbíos, the same post I had previously held. I attach to this sworn declaration a photograph of Mr. Nicolás Zambrano, signed by me, as Attachment E. My relationship with Mr. Zambrano began in 1998, when he was a prosecutor in the city of Lago Agrio and I was Magistrate Judge of the Provincial Court of Sucumbíos. At that time, Mr. Zambrano would occasionally ask me, as a favor, to issue rulings dismissing certain cases. I was careful to issue these rulings with some legal grounds, but I became aware that the party benefitting from my decisions was paying Mr. Zambrano for arranging to have the case ruled in its favor. As a former and experienced prosecutor, Mr. Zambrano had ample knowledge of criminal law and procedure, but very limited knowledge of civil law rules, substantively and especially procedurally. Therefore, after he was appointed Judge of the Sucumbíos Court, Mr. Zambrano and I reached a financial agreement in which I would help him by writing writs and rulings which Mr. Zambrano had to issue as judge in civil cases assigned to him randomly, in exchange for compensation or payment of USD $1,000 per month, approximately, for this work. At that time I was dealing with financial hardships after having been dismissed, unjustifiably, from the Sucumbíos Court of Justice, and for this reason I agreed to this arrangement. I was Mr. Zambrano's "ghostwriter" and I wrote the great majority of the rulings issued in civil cases assigned to Mr. Zambrano, including the Chevron case, which continued until February of 2012, when Mr. Zambrano was removed from the Provincial Court of Sucumbíos.

8.   At the beginning, I would generally work on the weekends, at my home in Quito, writing the rulings and judgments that Mr. Zambrano had to issue as judge the following week. Mr. Zambrano and I would meet regularly in the Quito airport during layovers on his flights to his home in Manta; he would give me the files, court records and important documents pertaining to the cases of that week, so that I would work on the rulings and judgments related to each case. Depending on Mr. Zambrano's itinerary, we would meet again at the Quito airport on his way back from Manta when he was returning to the city of Lago Agrio, and I would deliver to him the court files and some flash drives containing the files with the corresponding rulings. The same procedure was applied to the Chevron case. Mr. Zambrano would give me the documents and later I would work on the rulings that I delivered to him so that he would sign them as the judge of the case. We did not use e-mail for this for two reasons. First, because Mr. Zambrano is not very skilled with technology, so sending files via e-mail was difficult for him; second, because Mr. Zambrano is very careful and distrustful, and therefore he would tell me we had to be careful and not leave any evidence regarding this.

9.   Another mechanism we would use, less frequently, is that Mr. Zambrano would send me the documents in freight packages on TAME airline, and I would return them in the same manner, via shipment on the same airline, TAME. I attach to this sworn declaration Attachment F, consisting of the records of shipment of packages, certified by TAME, between Mr. Zambrano and I, between Quito and Lago Agrio, signed by me.

10.   Regarding the payments I received from Mr. Zambrano for performing this job as a ghostwriter, I must state that, generally, he would give me money in cash during our quick meetings in the Quito

airport. At other times, Mr. Zambrano would deposit money directly into my bank account at Banco Pichincha. I attach to this sworn declaration the deposits made by Mr. Zambrano, certified by Banco Pichincha, as Attachments G and H, signed by me. Furthermore, it was my custom to write down on my daily planner the receipt of those payments from Mr. Zambrano, as in the specific instance registered on February 24, 2012. I attach to this sworn declaration a copy of my daily planner, signed by me, as Attachment I.

11.   On August of 2009, Mr. Juan Núñez, who by that time was the judge of the Chevron case, became entangled in the scandal of the videos. Because of that scandal, Judge Núñez had to recuse himself from the Chevron case proceedings. In keeping with the law, it then fell on Judge Nicolás Zambrano Lozada to preside over the Chevron case starting in October of 2009.

12.   Once it became clear that Mr. Núñez would have to withdraw from the Chevron case, Mr. Zambrano asked me to attempt, through friends of mine, to get in touch with the attorneys for Chevron in order to negotiate an agreement by which the company would pay Mr. Zambrano and me for issuing the final judgment in Chevron's favor. Mr. Zambrano told me that Chevron would have much more money than the Plaintiffs for this agreement, and therefore we could get a better deal and greater profits for ourselves. I do not recall the exact date, but approximately between August and October of 2009, I approached attorney Alberto Racines, of Mr. Adolfo Callejas' law firm, to tell him I could establish a direct connection with Judge Zambrano so they could discuss and negotiate important and decisive issues in the case, including the judgment. For several weeks I insisted on this deal with Mr. Racines, but he rejected my proposal and a relationship with Chevron was never achieved. It was publicly known that I was close to Mr. Zambrano, and some attorneys in the city of Lago Agrio, including an attorney close to Chevron's local attorneys, knew that I was writing rulings on his behalf. Now, it must be clearly stated that I have no personal knowledge that Chevron's attorneys ever knew about my agreement with Mr. Zambrano and, obviously, Chevron's representatives never paid me for any work I did on behalf of Judge Zambrano.

13.   Following Chevron's rejection of any negotiation regarding the judgment, I arranged a meeting with Mr. Pablo Fajardo at Mr. Zambrano's suggestion. Mr. Zambrano told me to have that meeting because he had reached an agreement with the Plaintiffs' representatives to quickly move the case along in their favor, but he did not tell me the details of that agreement. Mr. Fajardo and I met in Quito, at the corner of Río Coca and 6 de Diciembre streets, and we discussed my role as ghostwriter for Mr. Zambrano and we agreed on 3 things: (1) I would make the case move quickly; (2) Chevron's procedural options would be limited by not granting their motions on alleged essential errors in rulings I was to write, so the case would not be delayed; and (3) the Plaintiffs' representatives would pay me approximately USD $1,000 per month for writing the court rulings Mr. Zambrano was supposed to write. My understanding was that I had to follow these guidelines during the remainder of the case. After a short time, I met with Messrs. Fajardo, Donziger and Yanza in the Honey & Honey Restaurant located on Eloy Alfaro and Portugal streets. I attach to this sworn declaration a photograph of the "Honey & Honey" restaurant, signed by me, as Attachment J. During this meeting, Mr. Donziger thanked me for my work as ghostwriter in this case and for helping steer the case in favor of the Plaintiffs'. The payments from the

Plaintiffs' representatives were given to me by Mr. Fajardo in cash, or were deposited into my savings account at Banco Pichincha. I remember that I while I was writing court rulings for Mr. Zambrano I would regularly meet with Mr. Fajardo, perhaps twice per month, to discuss my work.

14.   I attach to this sworn declaration Attachments K, L, M and N, consisting of certified copies, signed by me, from Banco Pichincha of deposits of USD $1,000 made on December 23, 2009, and February 5, 2010, by Ms. Ximena Centeno, whom I know to be a worker at the Plaintiffs' office. The payments I received from the Plaintiffs were in addition to the payments I received from Mr. Zambrano for my work as ghostwriter for his other cases.

15.   During the time that Mr. Zambrano was the judge for the Chevron case, I was handling the proceedings behind the scenes. Mr. Zambrano and I agreed that I would write the court rulings in favor of the Plaintiffs. Sometimes I would write a court decision in favor of Chevron to avoid suspicion. Mr. Zambrano rarely gave me guidelines on how to specifically write court rulings, trusting that I would handle the process in keeping with the Plaintiffs' interests. Because Messrs. Zambrano and Fajardo knew that I would follow the procedural guidelines aligned with the Plaintiffs' interests, and given the primary purpose of not slowing down the process, I did not have to consult with them regularly regarding the court rulings.

16.   On several occasions, I don't recall the exact dates, Mr. Fajardo and I discussed specific procedural issues of the case against Chevron. Sometimes these conversations were over the phone and other times we discussed these issues when Mr. Fajardo would give me money in person. I remember that we had a series of discussions regarding Chevron's motions on essential errors, which Messrs. Fajardo and Donziger told me in one of the meetings they viewed as an obstacle to speeding up the case.

17.   To my understanding, Chevron's legal representatives did not know that the Plaintiffs' representatives were paying me money, nor did they know that I, as a ghostwriter, was steering the case in favor of the Plaintiffs.

18.   During Mr. Zambrano's time as judge of the Chevron case, I was able to write many court rulings for the Chevron case, as well as other civil cases, on the computer at my home in Quito, which I sent to him via TAME or gave them to him in person at the Quito airport. I attach to this sworn declaration 9 Microsoft Word documents signed by me as Attachments O, P, Q, R, S, T, U, V and W, which were in my personal computer, and which are court rulings written by me for the Chevron case, and which Mr. Zambrano signed and issued in that case.

19.   My relationship with the Plaintiffs was close. So much so that at some point, I don't recall the exact date, I dared write Mr. Donziger an e-mail asking him to help me with the immigration situation of one of my children, who lives in Chicago. Mr. Donziger did not answer my e-mail directly, but he sent word through Mr. Fajardo confirming that he had received the e-mail and that he would look into the issue. He never actually concretely replied to my request.

20.    The monthly payments I received from the Plaintiffs' representatives and attorneys stopped after Mr. Zambrano was replaced as judge in the Chevron case by Mr. Leonardo Ordóñez, who had been appointed Chief Judge of the Provincial Court of Sucumbíos. During this time I continued writing the court rulings for Mr. Zambrano in other civil cases, and he continued paying me for this work as ghostwriter.

21.    Around August of 2010, Chevron filed a motion for the recusal of Mr. Ordóñez as judge of the case, which Mr. Zambrano had to rule on. Mr. Zambrano saw this as an opportunity to once again take control of the Chevron case, and asked me to help him write the court ruling sustaining Judge Ordóñez's disqualification from the case. At that time, and due to those circumstances, I resumed my role as Mr. Zambrano's ghostwriter in the Chevron case. Mr. Zambrano also saw this as an opportunity to once again approach Chevron's attorneys to see if they were willing to pay to have the case decided in their favor. Just as before, Mr. Zambrano and I believed that Chevron could pay more money than the Plaintiffs and could pay immediately, instead of paying only after the case was resolved.

22.    Mr. Zambrano again asked me to get in touch with my contacts to try to negotiate a financial agreement with Chevron. Given that my previous attempts to approach Mr. Racines had been unsuccessful, on this occasion I approached ███████████ ████████████████████████ ███████████ ██████ ████ ██████████████ ██████ ███████ ████████████████████████ ████████████ to propose to Chevron, through Mr. Callejas' firm, to have Chevron write the final judgment in the case in exchange for a payment to Mr. Zambrano and me, but this attempt failed and nothing came of it. The end result of all this was that Chevron rejected any approach or negotiation with Judge Zambrano and me, and we understood that there was no chance to negotiate an agreement with the aforementioned company, Chevron.

23.    Once I knew of Chevron's refusal, Mr. Zambrano suggested and authorized me to seek an agreement with the Plaintiffs' representatives so that they could obtain a verdict in their favor, in exchange for a payment of at least USD $500,000 to Mr. Zambrano; and whatever amount I could negotiate or agree to for myself. The proposal entailed Plaintiffs writing a draft of the judgment and Judge Zambrano signing it and issuing it as his own. I approached Mr. Fajardo with this offer, and he expressed interest in the subject and stated that he would discuss it with Mr. Donziger. Later on I was called by Mr. Fajardo to a meeting that took place at the Honey & Honey restaurant. Messrs. Fajardo, Yanza and Donziger were present. I summarized the proposal in detail and Mr. Donziger replied that at the moment they did not have that sum of money to pay us. Subsequently, Mr. Zambrano told me he was in direct contact with Mr. Fajardo and that the Plaintiffs' representatives had agreed to pay him USD $500,000 from whatever money they were to collect from the judgment, in exchange for allowing them to write the judgment in the Plaintiffs' favor. Mr. Zambrano told me he would share with me part of that money once it was paid to him.

24.    From that point forward, our modus operandi regarding my role as ghostwriter in the Chevron case changed. Mr. Zambrano advised me that we had to be more careful because the attorneys for Chevron

would be very attentive to any irregularities. Because of that, a few times I traveled to Lago Agrio to work on the court rulings for the Chevron case, from Mr. Zambrano's residence in that city. I worked on a laptop that Mr. Fajardo had given to me personally so that I could draft the relevant court rulings. Eventually, I had to return that laptop to Mr. Fajardo a short time before the judgment was issued on February 14, 2011.

25.   In late January or early February of 2011, approximately two weeks before the trial court in the Chevron case issued the judgment, Mr. Zambrano gave me a draft of the judgment so that I could revise it. It was through him that I found out that the attorneys for the Plaintiffs had written that judgment and had delivered it to him. Mr. Zambrano asked me to work on the document to fine-tune and polish it so it would have a more legal framework. In recalling these facts initially, I assumed I had received the document on a flash drive given to me by Mr. Zambrano in the Quito airport, as he usually did with the projects I helped him with. But later on I specifically remembered that I worked on that document in Mr. Zambrano's residence in Lago Agrio using Mr. Fajardo's computer. I do not recall the exact date this happened, but I worked on the draft judgment for several hours during two days. Mr. Zambrano explicitly asked me not to make copies nor leave traces of this document nor the changes I was making, outside of the file on which I worked.

26.   I began to work on the document as soon as I received it. First I read the holding and I began to work on several sections that needed more structure and basis, especially with terminology related to environmental law. I remember that I called Mr. Fajardo on his cell phone to ask him about some sections of the document that confused me. Mr. Fajardo told me not to worry and that he would e-mail me a memory aid to clarify my questions. Mr. Fajardo e-mailed me a document of around 10 to 12 pages titled "Memory Aid," with some information about the case. In reality, the document did not help me much with my doubts, so that day I worked on punctuation and spelling. I spent the following day making around 20 changes to improve its structure and make it seem more like a judgment issued by the Sucumbíos Court.

27.   Overall, I made very few changes to this document—mostly word changes due to personal preference—and the document I returned to Mr. Zambrano was not too different from the one the Plaintiffs had given him.

28.   Based on what Mr. Zambrano told me, it is my understanding that the Plaintiffs' attorneys made changes to the judgment up to the very last minute before it was published. But I have never read the final judgment that was published on February 14, 2011 and signed by Judge Zambrano; therefore I don't know for certain what changes were made after I turned the project over to Mr. Zambrano. After Mr. Zambrano issued the judgment, I assisted him over the phone as he prepared the supplemental and clarification order for the judgment.

29.   I knew at that time, and I know now, that the agreement in which I participated, and by which the Plaintiffs' representatives drafted the judgment in the Chevron case which Judge Zambrano issued, with my help, was a violation of Ecuadoran laws.  According to Ecuadoran law, only a judge is authorized to

**PUBLICLY FILED**
Case 1:11-cv-00691-LAK    Document 746-3    Filed 01/28/13    Page 8 of 120
**REDACTED VERSION**
*C E R T I F I E D   T R A N S L A T I O N*

7

write rulings and judgments. For these same reasons I knew at the time, as I know now, that the arrangement in which I participated, whereby I drafted court rulings for Mr. Zambrano steering the case in favor of the Plaintiffs, and was paid by the Plaintiffs' representatives for that work, was a violation of Ecuadoran law. And I knew at that time, as I know now, that the agreement that Mr. Zambrano told me he had reached with the representatives' attorneys, to let them draft the judgment in favor of the Plaintiffs and against Chevron, in exchange for him receiving USD $500,000 once they collected the money from the judgment, was a violation of Ecuadoran law.

30.    After that I distanced myself from the Chevron case. I have no knowledge as to how the judgment at the appellate level, as signed by the appellate justices, nor any subsequent court rulings in the case against Chevron were reached. I focused on helping Mr. Zambrano with other civil and labor cases that required court rulings and judgments from him, and that is why I continued working as a ghostwriter for Judge Zambrano until his dismissal as judge at the end of February of 2012.

31.    I have had no other contact with the attorneys for the Lago Agrio Plaintiffs since then, except for a meeting arranged by Mr. Fajardo in his Quito office, located in a house at José de Abascal E12A-143 and Portete. I do not recall the exact date of the meeting, but I estimate it was around May or June of 2011. During that meeting, Mr. Fajardo told me that in the case that was being heard in the United States, they needed people to testify about the suitability of the Ecuadoran legal system. Then he proposed that I go to the United States to testify to that effect and thus discredit Chevron's attorneys. Mr. Fajardo offered to pay my airfare and hotel expenses and to give me USD $5,000 for giving that testimony. Mr. Fajardo told me I would have to travel in November of 2011 and I told him I would consider his offer. Mr. Fajardo never again reaffirmed the proposal nor did I seek him out to follow up on the subject.

32.    In addition to the work I did on the Chevron judgment by going through the draft written by the Plaintiffs' representatives, I also performed similar work on other judgments for other cases for Judge Zambrano. On one particular occasion, the representatives of the Compañía Oleoducto de Crudos Pesados, known as OCP, paid Judge Zambrano and me to issue an appellate judgment that they had written. The OCP representatives gave me the draft of the appellate judgment in a flash drive, which was loaded onto Judge Zambrano's computer with the help of a computer technician. Judge Zambrano subsequently issued that judgment drafted by OCP as if it were his own. I attach to this sworn declaration the draft judgments from other cases that I worked on, which were later signed by Judge Zambrano, as Attachments X and Y, signed by me.

33.    In April of 2012, Mr. Zambrano, who had recently been dismissed from his post as Judge of the Sucumbíos Court, authorized me to begin talks with Chevron's representatives to reveal the truth regarding the drafting of the judgment in the Chevron case. However, since these talks with Chevron's representatives began, Mr. Zambrano has had a change of heart for reasons he has not fully explained to me, and now says he is not willing to cooperate with Chevron and to reveal the truth. I, for my part, have nonetheless decided to tell Chevron the truth and I have submitted documents and other evidence that confirm what actually happened. I have only asked Chevron to receive a payment for the documentary evidence I had in my possession or which I have been able to obtain, as well as payment

for my time and expenses in collecting this documentary evidence. In exchange for this, Chevron has paid me USD $38,000 to compensate me for the documents I have submitted; for my personal computer on which I wrote several of the judgments and court rulings, including some for the Chevron case as part of my agreement with Mr. Zambrano; for flash drives and compact discs; for two cell phones I used during the relevant time period; for my password and access to the e-mail account I used during the relevant time period; and for my time and expenses in these task[s]. The documents I have submitted to the company include: copies of my bank records and deposits made to my account at Banco Pichincha; certified records from TAME for the delivery of packages between Lago Agrio and Quito; copies of my credit card statements and copies of my cell phone calls records for the months of May, June and July of 2012. However, I have not received, nor have I requested, any compensation for making this sworn declaration, or any other testimony, which I provide abiding by the truth, voluntarily and of my own free will.

34.   I believe that by making this sworn declaration, I am confronting the Plaintiffs in the case against Chevron and the Government of President Rafael Correa. I am aware that by making this decision, I am risking the security of my life and the lives of my family, but I feel duty-bound to state the truth. I have informed Chevron's representatives about my concerns regarding the safety risks that this sworn declaration could cause me, and Chevron's representatives have committed themselves to take necessary and reasonable measures to protect my security.

I declare that the foregoing is true and correct under penalty of perjury and in accordance to the laws of Ecuador and the United States of America, and the laws of the States of California, Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin and Wyoming, and in accordance to the laws of the District of Columbia, and in accordance to the laws of any qualified jurisdiction, and that this sworn declaration was executed in the city of Chicago, Illinois, on November 17, 2012.

_____[signature]_____

ALBERTO GUERRA BASTIDAS

National Identification No. █████████

Sworn before me on  _____.


_____
Notary Public


ATTACHMENTS

# *RIVERA INTERPRETING, INC.*

*Tel. 310.621.7683 ■ jrivera62@yahoo.com ■ Fax 818.341.8958*

Nov. 21, 2012

Re: DECLARATION OF ALBERTO GUERRA BASTIDAS

To Whom It May Concern:

I, Jesús Rivera, affirm that I am a certified judicial interpreter and translator of the Spanish and English languages. I am certified by:

- The Judicial Council of the State of California, since 2000,
- The Administrative Office of the U.S. Courts, since 2006,
- The American Translators Association (English ↔ Spanish) since 2008.

I affirm that on Nov. 21, 2012, as contracted by Gibson, Dunn & Crutcher LLP, I finished translating from the Spanish into the English language an 8-page document titled "DECLARATION OF ALBERTO GUERRA BASTIDAS," and that said translation is true and accurate to the best of my ability.

Sincerely,

Jesús Rivera

*Certified by: U.S. & California Courts and the American Translators Association*

YO, ALBERTO GUERRA BASTIDAS, declaro bajo pena de perjurio de acuerdo con las leyes de Ecuador y de los Estados Unidos de América, que lo sigue a continuación es verdadero y correcto:

1.      Soy ciudadano ecuatoriano, nacido en la ciudad de San Gabriel, provincia del Carchi, Ecuador, ███████████████████ estoy domiciliado ███████████████, ███████████ y con cédula de identidad número ███████████. Declaro que soy mayor de 18 años y que no tengo ningún impedimento físico ni mental. Tengo conocimiento personal de los hechos expuestos en este documento, y si soy llamado a testificar sobre estos hechos, lo haría y puedo declarar lo mismo.

2.      No he solicitado ni he recibido dinero alguno o ninguna remuneración a cambio de firmar esta declaración juramentada. Tampoco se me ha ofrecido remuneración alguna, presente o futura, a cambio de firmar esta declaración juramentada.

3.      Soy abogado titulado en la Universidad Central del Ecuador por graduado en 1982. Adjunto a esta declaración juramentada mi hoja de vida con un resumen de mi historial de empleo, firmada por mí, como Anexo A.

4.      Fui nombrado como Juez de la Corte Provincial de Sucumbíos en 1998. En enero 2002 fui seleccionado Presidente de la Corte Provincial de Sucumbíos y completé mi término de dos años como Presidente en enero de 2004. Durante ese tiempo, desde mayo 13 de 2003, hasta el 7 de enero de 2004, fui el Juez del juicio verbal sumario No. 002-2003 seguido en contra de la compañía Chevron. Al inicio del caso, dudé sobre la validez de las pretensiones de los demandantes, pero debido a la presión pública impuesta por los representantes de los demandantes durante la primera audiencia del caso, permití que el caso continuara porque percibí que al no hacerlo, mi seguridad personal corría riesgo.

5.      Mi primera interacción con los representantes y abogados de los demandantes del caso en contra de Chevron, los señores Pablo Fajardo, Luis Yanza y Steven Donziger, como también con los abogados de la compañía de la firma Callejas & Asociados, incluyendo a Alberto Racines y Adolfo Callejas, fue en ejercicio de mi papel como Juez de la causa. Adjunto a esta declaración juramentada las fotos de los Sres. Pablo Fajardo, Luis Yanza, Steven Donziger, firmadas por mí, como Anexos B, C, y D, respectivamente.

6.      En mayo de 2008, fui destituido como Juez de la Corte de Sucumbíos. De acuerdo al Consejo de la Judicatura, la razón por la cual fui destituido fueron las declaraciones que hice en privado afirmando que el caso de Chevron debía ser declarado nulo. En realidad creo que fui destituido porque me enfrenté a los jueces Novillo y Yáñez, que fueron los jueces del caso después de mi persona, con respecto a varias decisiones dudosas e ilegales que ellos habían tomado al interior del proceso, y sobre su práctica de pedir a los peritos dirimentes el 25 por ciento de sus honorarios como contraprestación por su nombramiento como tales. La razón por la que creía que el caso Chevron debía ser declarado nulo, era porque el nombramiento de los peritos dirimentes estaba realizándose en contra de lo que establece la Ley ecuatoriana. Debó aclarar que el nombramiento del



1

Sr. Richard Cabrera, para realizar el "peritaje global" también fue en contra de lo que establece la Ley procesal del Ecuador.

7.      Después de salir de la Corte de Justicia de Lago Agrio, yo seguí manteniendo relaciones con un número de personas de la comunidad legal en esa ciudad. Entre ellos se encontraba el abogado Nicolás Zambrano, quien fue nombrado en agosto de 2008 como Juez en la Corte Provincial de Sucumbíos, en la misma posición que yo había ocupado anteriormente. Adjunto a esta declaración juramentada la foto del Sr. Nicolás Zambrano firmada por mí, como Anexo E. Mi relación con el Sr. Zambrano da inicio en 1998, tiempo en el que él se desempeñaba como fiscal en la ciudad de Lago Agrio y yo como ministro Juez de la Corte Provincial de Sucumbíos. Por aquel entonces, ocasionalmente, el Sr. Zambrano me pedía de favor que dictara providencias desestimando determinados casos. Yo era cuidadoso al emitir estas providencias con algún fundamento legal, pero me di cuenta que el interesado de mis pronunciamientos le pagaba al Sr. Zambrano por arreglar que el caso fuera fallado en su beneficio. Como antiguo y experimentado fiscal, el Sr. Zambrano tenía amplio conocimiento de la ley penal y su procedimiento, pero un conocimiento bastante limitado de la normativa civil en lo sustantivo y sobretodo en lo procedimental. Por tanto, después de ser nombrado Juez de la Corte de Sucumbíos, el Sr. Zambrano y yo llegamos a un acuerdo económico, en el que yo le colaboraba en la redacción de los autos y sentencias que el Sr. Zambrano tenía que emitir como Juez al interior de los casos civiles que le correspondían en sorteo, a cambio de la retribución o pago de 1,000 dólares mensuales, aproximadamente, por este trabajo. A esa época, yo estaba afrontando una situación financiera difícil por haber sido despedido, injustificadamente, de la Corte de Sucumbíos, por lo cual accedí a este arreglo. Yo era el "escritor fantasma" del Sr. Zambrano y escribí la gran mayoría de las providencias dictadas en los casos civiles que al Sr. Zambrano correspondió , incluyendo el caso Chevron, lo cual perduró hasta febrero de 2012, cuando el Sr. Zambrano fue separado de la Corte Provincial de Sucumbíos.

8.      En un principio, yo generalmente trabajaba los fines de semana desde mi casa en Quito en la redacción de las providencias y sentencias que el Sr. Zambrano tenía que emitir como Juez la semana siguiente. El Sr. Zambrano y yo nos reuníamos de manera recurrente en el aeropuerto de Quito cuando él hacía escala para volar a su casa en Manta, y en ese momento me entregaba los expedientes, cuerpos y documentos importantes incorporados a los respectivos procesos durante esa semana, para que yo trabajara en las providencias y sentencias correspondientes de cada caso. Dependiendo del itinerario del Sr. Zambrano, nos encontrábamos de nuevo en el aeropuerto de Quito cuando él venía de Manta e iba en retorno a la ciudad de Lago Agrio, y yo le entregaba los expedientes de los casos y unas memorias portátiles con los archivos de las providencias respectivas. El mismo procedimiento se aplicaba para el caso Chevron. El Sr. Zambrano me entregaba los documentos y posteriormente yo trabajaba en las providencias que le entregaba para que él las firmara como el Juez de la causa. No utilizábamos el correo electrónico para esto por dos razones. La primera porque el Sr. Zambrano no es una persona muy hábil con la tecnología entonces se le dificultaba mandar los archivos por correo electrónico, y la segunda, ya que el Sr. Zambrano es muy cuidadoso y desconfiado por lo que me decía que teníamos que ser cuidadosos y no dejar evidencia alguna al respecto.



9.      Otro mecanismo que utilizábamos, menos frecuente, es que el Sr. Zambrano me enviaba los documentos en paquetes por carga en la aerolínea TAME, y yo se los regresaba por correo de la misma manera por medio de la misma aerolínea TAME. Adjunto a esta declaración juramentada los registros de envío de paquetes certificados por TAME entre el Sr. Zambrano y mi persona entre Quito y Lago Agrio, firmada por mí, como Anexo F.

10.     En cuanto a los pagos que recibí del Sr. Zambrano para llevar a cabo este trabajo de escritor fantasma, debo indicar que, por lo general, él me entregaba cantidades de dinero en efectivo durante nuestras rápidas reuniones en el aeropuerto de Quito. En otras ocasiones, el Sr. Zambrano me depositaba dinero directamente en mi cuenta bancaria en el Banco Pichincha. Adjunto a esta declaración juramentada los depósitos realizados por el Sr. Zambrano certificados por el Banco Pichincha firmados por mí, como Anexos G y H, respectivamente. Además, tenía por costumbre, anotar en mi agenda personal la recepción de esos pagos del Sr. Zambrano, como es el caso específico del que consta en fecha 24 de febrero, 2012. Adjunto a esta declaración juramentada una copia de mi agenda, firmada por mí, como Anexo I.

11.     En agosto de 2009, el Sr. Juan Núñez, quien para ese momento era el Juez del caso Chevron, se vio envuelto en el escándalo de los videos. Por ese escándalo el Juez Núñez tuvo que excusarse de la tramitación del caso Chevron y posteriormente correspondió dicho conocimiento del caso Chevron, por mandato legal, al Juez Nicolás Zambrano Lozada, a partir de octubre de 2009.

12.     En el momento en que quedó claro que el Sr. Núñez tendría que salir del caso Chevron, el Sr. Zambrano me pidió que intentara, a través de mis amistades, ponerme en contacto con los abogados de la empresa Chevron para negociar un acuerdo en el que la compañía nos pagaría al Sr. Zambrano y a mí por emitir la sentencia definitiva a favor de Chevron. El Sr. Zambrano me dijo que Chevron tendría mucho más dinero que los demandantes para este acuerdo por eso podríamos obtener un mejor acuerdo y mayores beneficios para nosotros mismos. No recuerdo la fecha exacta, pero aproximadamente entre agosto y octubre de 2009, yo me acerqué al abogado Alberto Racines de la firma del Sr. Adolfo Callejas, para decirle que yo podía crear una conexión directa con el Juez Zambrano para que discutieran y negociaran temas importantes y decisivos del caso, incluyendo la sentencia. Le insistí al Sr. Racines durante varias semanas para este acuerdo, pero él rechazó mi propuesta, y nunca se logró conseguir un acercamiento con Chevron. Era públicamente conocido que yo era cercano al Sr. Zambrano, y algunos abogados de la ciudad de Lago Agrio, incluso un abogado cercano a los abogados locales de Chevron, sabían que yo le redactaba las decisiones a su nombre. Ahora bien, es importante aclarar que no tengo conocimiento personal que los abogados de Chevron supieran de mi acuerdo con el Sr. Zambrano y, obviamente, los representantes de Chevron nunca me pagaron por ningún trabajo que yo realicé a nombre del Juez Zambrano.



13.     Tras la negativa de Chevron a cualquier negociación respecto de la sentencia, facilite una reunión con el Sr. Pablo Fajardo por sugerencia del Sr. Zambrano. El Sr. Zambrano me dijo que tuviera esa reunión porque él había conseguido un acuerdo con los representantes de los demandantes para mover el proceso de manera rápida a favor de ellos, pero no me contó los detalles de ese acuerdo. El Sr. Fajardo y yo nos reunimos en Quito, en la esquina de las calles de Río Coca y 6 de Diciembre, en la cual discutimos mi rol como escritor fantasma del Sr. Zambrano y acordamos 3 cosas: (1) yo haría que el caso se moviera con rapidez; (2) se le limitaría el espacio procesal a la Chevron no concediéndole sus peticiones respecto a los errores esenciales alegados en los autos que yo escribiese para no retardar el proceso; y (3) los representantes de los demandantes me pagarían aproximadamente 1.000 dólares mensuales por escribir las providencias que le correspondían hacer al Sr. Zambrano. Mi entendimiento es que yo tenía que seguir estas directrices durante el resto de la tramitación del caso. Al poco tiempo, me reuní con los Sres. Fajardo, Donziger, y Yanza, en el restaurante Honey & Honey ubicado en Eloy Alfaro y Portugal. Adjunto a esta declaración juramentada la foto del restaurante "Honey & Honey", firmada por mí, como Anexo J. Durante esa reunión, el Sr. Donziger me agradeció por mi trabajo como escritor fantasma en el caso y por ayudar a conducir el caso a favor de los demandantes. Los pagos de los representantes de los demandantes me los entregaba el Sr. Fajardo en efectivo o me los depositaban en mi cuenta de ahorros del Banco Pichincha. Recuerdo que también me reunía con el Sr. Fajardo regularmente mientras estaba escribiendo las providencias para el Sr. Zambrano, quizás dos veces al mes, para discutir mi trabajo.

14.     Adjunto a esta declaración juramentada copias certificadas por el Banco Pichincha de los depósitos por 1.000 dólares realizados el 23 de diciembre de 2009 y el 5 de febrero de 2010, por la Sra. Ximena Centeno, quien tengo conocimiento que era una trabajadora de la oficina de los demandantes, firmadas por mí, como Anexos K, L, M, y N. Los pagos que recibí de los demandantes eran adicionales a los pagos que recibí del Sr. Zambrano por mi trabajo en sus otros casos como su escritor fantasma.

15.     Durante el período que el Sr. Zambrano fue Juez del caso de Chevron, yo manejaba el proceso tras bastidores. El Sr. Zambrano y yo acordamos que yo escribiría las providencias a favor de los demandantes. A veces, yo dictaba alguna providencia a favor de Chevron para evitar sospechas. El Sr. Zambrano rara vez me daba directrices sobre cómo escribir las providencias en específico, confiando en que yo manejaría el proceso acorde a los intereses de los demandantes. En tanto los Sres. Zambrano y Fajardo conocían que yo mantendría la directriz procesal a fin a los intereses de los demandantes, y a efecto primordial de no desacelerar el curso del proceso, yo no tenía que consultar constantemente con ellos sobre las providencias.

16.     En varias ocasiones, no recuerdo con exactitud las fechas, el Sr. Fajardo y yo conversamos temas específicos del procedimiento del caso contra Chevron. A veces estas conversaciones eran por teléfono, y otras veces hablamos de estos temas cuando el Sr. Fajardo me entregaba dinero en persona. Recuerdo que tuvimos una serie de conversaciones acerca de las peticiones de Chevron por errores esenciales, las cuales los



Sres. Fajardo y Donziger me dijeron en una de las reuniones que veían como un impedimento para que el caso se agilizara.

17.    A mi entender, los representantes legales de Chevron no conocían que los representantes de los demandantes me estaban pagando dineros, ni tampoco sabían que yo estaba, como escritor fantasma, direccionando el caso a favor de los demandantes.

18.    Durante el período del Sr. Zambrano como Juez del caso Chevron, yo alcancé a escribir muchas providencias del caso Chevron, y otros procesos civiles, desde el computador de mi casa en Quito, que le hice llegar por medio de correo de TAME o entregándoselas personalmente en el aeropuerto de Quito. Adjunto a esta declaración juramentada 9 documentos de Microsoft Word firmados por mí, que estaban en mi computador personal, que son providencias escritas por mí, del caso Chevron, mismas que el Sr. Zambrano firmó y publicó en el caso, como Anexos O, P, Q, R, S, T, U V y W,

19.    Mi relación era cercana con los demandantes. Tanto que en algún momento, no recuerdo la fecha con exactitud, me atreví a escribir al Sr. Donziger un correo electrónico pidiéndole que me ayudara con la situación migratoria de uno de mis hijos que vive en Chicago. El Sr. Donziger no me respondió directamente a mi correo electrónico, pero me hizo llegar razones por medio del Sr. Fajardo estableciéndome que había recibido el correo y que iba a preocuparse por el tema. En realidad nunca me respondió concretamente sobre mi petición.

20.    Los pagos mensuales que recibí de los representantes y abogados de los demandantes se detuvieron después que el Sr. Zambrano fue sustituido como Juez del caso Chevron por el Sr. Leonardo Ordóñez, quien fue elegido Presidente de la Corte Provincial de Sucumbíos. Durante este período de tiempo, continué escribiendo las providencias del Sr. Zambrano en otros casos civiles, y él me continuó pagando por este trabajo de escritor fantasma.

21.    Aproximadamente en agosto de 2010, Chevron radicó una moción para solicitar la recusación del Sr. Ordóñez como el Juez del caso, decisión que el Sr. Zambrano tuvo que decidir. El Sr. Zambrano vio esto como una oportunidad para retomar el control del caso Chevron, y me pidió que le ayudara a redactar la providencia por la que se aceptaba la recusación del caso del Juez Ordóñez. A ese momento, y por tal circunstancia, reanudé mi papel como escritor fantasma del Sr. Zambrano en el caso de Chevron.  El Sr. Zambrano también vio en esto una oportunidad para acercarse nuevamente a los abogados de Chevron para ver si estaban dispuestos a pagar para decidir el caso en su favor. Como antes, el Sr. Zambrano y yo creímos que Chevron podría pagar más dinero que los demandantes y podría pagar inmediatamente, en vez de pagar solamente después de que el caso se hubiese resuelto.

22.    El Sr. Zambrano me pidió nuevamente que me comunicara con mis contactos para tratar de negociar un acuerdo económico con Chevron. Como mis anteriores intentos de acercamiento al Sr. Racines fueron infructuosos, me acerqué en esta ocasión a ██████



▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ y le pedí que le ofreciera a Chevron, a través de la firma del Sr. Callejas, que Chevron escribiese la sentencia final del caso a cambio de un pago al Sr. Zambrano y a mí, pero este intento falló y no pasó nada. La conclusión de todo eso es que Chevron se negó a cualquier acercamiento o negociación con el Juez Zambrano y conmigo, y entendimos que no había oportunidad de negociar un acuerdo con la precitada compañía Chevron.

23.    Una vez que conocí la respuesta negativa de Chevron, el Sr. Zambrano me sugirió y autorizó el buscar un acuerdo con los representantes de los demandantes con el fin de que estos obtengan un veredicto a su favor, a cambio de un reconocimiento en favor del Sr. Zambrano por la suma de al menos $500.000 dólares; y en mi beneficio, de la suma que pueda concertar o acordar. La oferta propuesta incluía que los demandantes redactarían el borrador de la sentencia y el Juez Zambrano la firmaría y la publicaría como de su autoría. Ese acercamiento lo hice con el Sr. Fajardo, quien manifestó interés sobre el tema e indicó que sobre aquello hablaría con el Sr. Donziger. Posteriormente fui citado por el Sr. Fajardo a una reunión que se realizó en el restaurante Honey & Honey. En ella participaron los Sres. Fajardo, Yanza y Donziger. Yo, recapitulé la propuesta en concreto, y como respuesta obtuve de parte del Sr. Donziger que en ese momento no tenían esa suma de dinero para pagarnos. Posteriormente el Sr. Zambrano me dijo que estaba en contacto directamente con el Sr. Fajardo, y que los abogados de los representantes habían accedido a pagarle $500.000 dólares de lo que ellos recolectaran en el futuro con la sentencia, a cambio de permitirles escribir la sentencia a favor de los demandantes. El Sr. Zambrano me dijo que compartiría conmigo una parte de ese dinero una vez le fuera entregado a él.

24.    A partir de lo anotado, cambió nuestro modus operandi con respecto a mi función como escritor fantasma en el caso de Chevron. El Sr. Zambrano me señaló que había que ser más cuidadoso puesto que los abogados de Chevron estaban muy pendientes de encontrar irregularidades, de ahí que unas veces, yo viajaba a Lago Agrio donde trabajaba en las providencias del caso Chevron desde el domicilio que mantenía el Sr. Zambrano en esa ciudad. Trabajaba en un computador portátil que el Sr. Fajardo me había entregado personalmente para que yo pudiese escribir las providencias respectivas. Ese computador debí finalmente regresarle al Sr. Fajardo poco tiempo antes que fuera publicada la sentencia de febrero 14 de 2011.

25.    A finales de enero o principios de febrero de 2011, aproximadamente dos semanas antes que el fallo de primera instancia del caso Chevron fuera emitido, el Sr. Zambrano me entregó un borrador de sentencia para que la revisara; por él me informé sobre el hecho de que los abogados de los demandantes habían redactado esa sentencia y le habían entregado. El Sr. Zambrano me pidió que trabajara en el documento para afinarlo y pulirlo dándole más estructura jurídica. Al recordar estos hechos, en un principio asumí que había recibido el documento en una memoria extraíble entregada por el Sr. Zambrano en el aeropuerto de Quito, como solía hacer con los proyectos en los que lo ayudaba, pero más tarde recordé con exactitud que sobre dicho documento trabajé



desde el domicilio del Sr. Zambrano en Lago Agrio y usando el computador del Sr.
Fajardo. No recuerdo qué fecha exactamente ocurrió esto, pero trabajé en el borrador de
la sentencia por el transcurso de varias horas durante dos días. El Sr. Zambrano me pidió
explícitamente que no hiciera copias ni que dejara rastro de este documento ni de los
cambios que le hacía, fuera del archivo en el que trabajé.

26.      Apenas recibí el documento, empecé a trabajar en el mismo. Primero leí la parte
constitutiva, y me puse a trabajar en varias secciones que necesitaban más estructura y
base, sobretodo en la terminología relacionada con la ley ambiental. Recuerdo que llamé
al Sr. Fajardo a su celular para preguntarle sobre unas partes que me generaron confusión
del documento. El Sr. Fajardo me dijo que no me preocupara y que me iba a enviar por
correo electrónico una ayuda de memoria para clarificarme mis preguntas. El Sr. Fajardo
me envió por correo un documento de unas 10 a 12 páginas titulado Ayuda de Memoria
con cierta información del caso. En realidad el documento no me ayudó mucho con mis
incógnitas, entonces trabajé ese día en temas de puntuación y ortografía. El día siguiente
me dediqué a hacer unos 20 cambios para darle más estructura y que resultara similar a
una sentencia proveniente de la Corte de Sucumbíos.

27.      En general, le hice muy pocos cambios al documento, mayormente cambios de
palabras por una cuestión de preferencia personal, y el documento que le devolví al Sr.
Zambrano no era muy diferente que el que los demandantes le habían dado.

28.      Tengo entendido, basado en lo que me dijo el Sr. Zambrano, que los abogados de
los demandantes le hicieron cambios a la sentencia hasta el último minuto antes de ser
publicada. Pero nunca he leído la sentencia final que fue publicada el 14 de febrero de
2011 y firmada por el Juez Zambrano, entonces no tengo certeza qué cambios se hicieron
después que yo entregué el proyecto al Sr. Zambrano. Después de que el Sr. Zambrano
dictara la sentencia, le ayudé vía telefónica a preparar la providencia de ampliación y
aclaración a dicha sentencia.

29.      Yo sabía en ese momento, y lo sé hoy, que ese acuerdo del cual yo era partícipe,
por el cual los representantes de los demandantes redactaban la sentencia del caso de
Chevron y el Juez Zambrano, con mi ayuda, la dictaba, era una violación de las leyes
Ecuatorianas. Según la legislación Ecuatoriana, el Juez es el único autorizado para
redactar los autos y sentencias. Por las mismas razones sabía en ese momento, y lo sé
hoy, que el arreglo en el que participé en el que yo redactaba providencias para el Sr.
Zambrano manejando el caso a favor de los demandantes, y ser pagado por los
representantes de los demandantes por ese trabajo, era una violación de la Ley
ecuatoriana. Y sabía en ese momento, y lo sé hoy, que el acuerdo que el Sr. Zambrano me
dijo que había conseguido con los abogados de los representantes, para dejarles redactar
la sentencia a favor de los demandantes y en contra de Chevron, a cambio de que él
recibiera US$500.000 dólares una vez recolectaran el dinero de la sentencia, era una
violación de la Ley ecuatoriana.

30.      Después de eso me desentendí del caso Chevron. No tengo conocimiento cómo se
hizo la sentencia de segunda instancia firmada por los jueces de segundo nivel, ni



ninguna de las providencias posteriores a esa en el caso en contra de la compañía
Chevron. Yo me concentré en ayudarle al Sr. Zambrano en los otros casos civiles y
laborales que necesitaban providencias y sentencias de su parte, y por eso seguí
trabajando como el escritor fantasma del Juez Zambrano, hasta que él fue destituido de su
función de Juez a finales de febrero de 2012.

31.     No he tenido ningún otro contacto con los abogados de los demandantes de Lago
Agrio desde entonces, exceptuando una reunión que me citó el Sr. Fajardo en su oficina
en Quito que estaba localizada en una casa en José de Abascal E12A-143 y Portete. La
reunión no recuerdo bien que fecha fue, pero estimo se dio en mayo o junio de 2011.
Durante esa reunión, el Sr. Fajardo me dijo que en el caso que se estaba llevando a cabo
en los Estados Unidos necesitaban personas que dieran testimonio sobre la idoneidad del
sistema jurídico ecuatoriano. Entonces me propuso si yo podía viajar a los Estados
Unidos para realizar ese testimonio y con eso desacreditar a los abogados de la Chevron.
El Sr. Fajardo ofreció pagarme los pasajes de avión, la estadía de hotel y entregarme
5.000 dólares por realizar este testimonio. El Sr. Fajardo me dijo que el viaje había que
hacerse en noviembre de 2011 y yo le manifesté que iba a considerar la propuesta. El Sr.
Fajardo nunca más se ratificó en la propuesta y yo tampoco lo busqué para hacer
seguimiento al tema.

32.     En adición al trabajo que hice en la sentencia de Chevron, revisando el borrador
que los representantes de los demandantes escribieron, también realicé un trabajo similar
en otras sentencias de otros casos del Juez Zambrano. En determinada ocasión, los
representantes de la Compañía Oleoducto de Crudos Pesados, conocida como OCP, nos
pagaron al Juez Zambrano y a mí por dictar una sentencia de apelación que ellos habían
escrito. Los representantes de la OCP me entregaron el borrador de la sentencia de
apelación en una memoria portátil, el cual se transfirió al computador del Juez Zambrano
con la ayuda de un técnico de computación. Después el Juez Zambrano emitió como suyo
el borrador de la sentencia escrito por OCP. Adjunto a esta declaración juramentada los
borradores de sentencia de otros casos en los que yo trabajé que fueron posteriormente
firmados por el Juez Zambrano, firmados por mí, como Anexo X y Y.

33.     En abril de 2012, el Sr. Zambrano, quien había sido recientemente removido de su
posición de Juez de la Corte de Sucumbíos me autorizó el iniciar conversaciones con los
representantes de Chevron para compartir la verdad acerca de la redacción de la sentencia
del caso Chevron. Sin embargo, desde que iniciaron estas conversaciones con los
representantes de Chevron, el Sr. Zambrano ha cambiado de opinión, por razones que no
me ha explicado del todo, y ahora dice no estar dispuesto a cooperar con Chevron y a
compartir la verdad. Yo, por mi parte, he decidido de todas maneras decir la verdad a
Chevron y he hecho entrega de documentos y otra evidencia que sustentan lo que
realmente ocurrió. A Chevron le he solicitado únicamente recibir un pago por la
evidencia documental que había en mi posesión o que he sido capaz de obtener, al igual
que el pago de mi tiempo y los costos en la recolección de esta evidencia documental. A
cambio de esto, Chevron me ha pagado un total de US$38,000 dólares para compensarme
por los documentos que he entregado; por mi computador personal donde escribí varias
de las sentencias y providencias, incluidas unas del caso Chevron, como parte de mi



8

acuerdo con el Sr. Zambrano; por memorias portátiles y discos compactos; por dos equipos celulares que utilizaba durante el período de tiempo de estos hechos; por la contraseña y el acceso a mi cuenta de correo electrónico que utilizaba durante el período de tiempo de estos hechos; y por mi tiempo y los costos en estas tarea. Los documentos que he entregado a la compañía incluyen: copia de mis registros bancarios y depósitos hechos a mi cuenta del Banco Pichincha; los registros de envío de paquetes de TAME certificados por la compañía entre Lago Agrio y Quito; copia de mis registros de mi tarjeta de crédito y copia de mis registros de llamada de mi celular durante los meses mayo, junio y julio de 2012. Ahora bien, no he recibido nunca ni solicitado ninguna compensación para dar esta declaración juramentada, o cualquier testimonio, que doy ateniéndome a la verdad, de manera voluntaria y bajo mi propia y libre decisión.

34.    Mi opinión es que al dar esta declaración juramentada, me enfrento a los demandantes del caso en contra de la Chevron y al gobierno del Presidente Rafael Correa. Sé que al tomar esta decisión asumo riesgos de seguridad para la integridad de mi vida y la de mi familia, pero me siento obligado a declarar la verdad. Yo le he informado a los representantes de Chevron de mis preocupaciones sobre los riesgos de seguridad que la presente declaración me podría generar y los representantes de Chevron se han comprometido a tomar las medidas necesarias y razonables para proteger mi seguridad.

Declaro que lo anterior es verdadero y correcto bajo la pena de perjurio y de acuerdo con las leyes de Ecuador y de los Estados Unidos de América, y las leyes de los estados de California, Alabama, Alaska, Arizona, Arkansas, Carolina del Norte, Carolina del Sur, Colorado, Connecticut, Dakota del Norte, Dakota del Sur, Delaware, Florida, Georgia, Hawai, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Misisipi, Missouri, Montana, Nebraska, Nevada, Nueva Jersey, Nueva York, Nuevo Hampshire, Nuevo México, Ohio, Oklahoma, Oregón, Pensilvania, Rhode Island, Tennessee, Texas, Utah, Vermont, Virginia, Virginia Occidental, Washington, Wisconsin y Wyoming, y de acuerdo a las leyes del Distrito de Columbia, y de acuerdo a las leyes de cualquier jurisdicción competente, y que esta declaración juramentada se ejecutó en la ciudad de Chicago, Illinois, el día 17 de noviembre de 2012.

ALBERTO GUERRA BASTIDAS
Cédula de Ciudadanía: ███████

Jurando ante mi el día _____.

_____
Notario Público

ANEXOS.

9

# ATTACHMENT A

[initials]

[CERT.GEOTEXT:VER]

# CURRICULUM VITAE

## PERSONAL INFORMATION

Last Names:                    Guerra Bastidas

First Name:                    Alberto

Citizen Identification Card No.:   ████████

Place and Date of Birth:       ████████ | ████████

Marital Status:                Married

Address:                       ████████████

Telephone:                     ████████

E-mail:                        ████████████

## EDUCATION

SECONDARY EDUCATION:

Colegio Nacional Teodoro Gómez de la Torre – Ibarra          1969 – 1975

HIGHER EDUCATION:

Universidad Central de Ecuador – Quito
School of Law                                               1975 – 1991

Universidad Andina Simón Bolívar – Quito
Advanced Specialization in Procedural Law                   2001 – 2002

Universidad Central de Ecuador – Quito
Master of International Environmental Law                   2005 – 2007

[initials]

[CERT.GEOTEXT:VER]

## ACADEMIC DEGREES AND TITLES

| | |
|---|---|
| Graduate in International Environmental Law | 2007 |
| Graduate with Specialization in Procedural Law | 2002 |
| Juris Doctor | 1982 |
| Attorney Licensed to Practice in the Courts of Ecuador | 1982 |
| Bachelor of Political and Social Sciences | 1980 |
| High School Diploma, Specialization in Social Sciences | 1975 |

## WORK EXPERIENCE

LEGAL ADVISOR
OPTIMA Insurance Agency, LLC                    2010 – 2012

LEVEL 1 ADVISOR
National Assembly of Ecuador                    2009 – 2010

LEGAL ADVISOR
OPTIMA Insurance Agency, LLC                    2008 – 2009

MAGISTRATE JUDGE, COURTROOM CHIEF JUDGE
Superior Court of Justice of Nueva Loja          2006 – 2008

MAGISTRATE JUDGE
Superior Court of Justice of Nueva Loja          2003 – 2006

MAGISTRATE JUDGE, CHIEF JUDGE
Superior Court of Justice of Nueva Loja          2001 – 2003

MAGISTRATE JUDGE
Superior Court of Justice of Nueva Loja          1998 – 2003

TWENTY-SECOND CIVIL COURT JUDGE OF PICHINCHA
Superior Court of Justice of Quito               1995 – 1998

Private practice Attorney                        1982 – 1995

[initials]

[CERT.GEOTEXT:VER]

**SEMINAR PRESENTATIONS**

Seminar on Criminal Procedure Law, with Related Laws and Codes
May 2004, Nueva Loja, Sucumbíos (Speaker)

The New Code of Criminal Procedure and its Role in Ecuadorian Society
July 2003, Nueva Loja (Speaker)

**PUBLISHED WORKS**

"Child and Adolescent Law"
Co-Author, 2008

"Procedural Reality of Judgment Enforcement"
Co-Author, 1999–2003

**SPECIALIZED STUDIES, COURSES AND SEMINARS ATTENDED**

International Environmental Law, Institute of Graduate Studies, Universidad
Central del Ecuador School of Law, 2005–2007

Mediation: A New Culture for Change, Word Mediation, Crans-Montana,
Switzerland, September 2005

Management Indicators, Office of the Comptroller General of Ecuador, Quito, July 2005

Management Control for Public Administration, Office of the Comptroller General of Ecuador,
Quito, June 2005

Government Contracting, Office of the Comptroller General of Ecuador, Quito, November 2004

Training Program on Specific Skills for the Use of the Code of Criminal
Procedure, USAID-CNJ, Quito, 2003

Specialization in Procedural Law, Universidad Andina Simón Bolívar, Quito
2001–2002

[initials]

[CERT.GEOTEXT:VER]

PUBLICLY FILED
REDACTED VERSION

**GEOTEXT**
Translations

translations@geotext.com
www.geotext.com

| | |
|---|---|
| STATE OF NEW YORK ) | |
| ESTADO DE NUEVA YORK ) | ss |
| ) | |
| COUNTY OF NEW YORK ) | |
| CONDADO DE NUEVA YORK ) | |

## CERTIFICATION/
## CERTIFICACIÓN

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English of the attached document.

Por la presente certifico que la traducción adjunta de español a inglés es, a mi leal saber y entender, traducción fiel y exacta del documento adjunto.

Ken Hetzel, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me/Suscrito y jurado ante mí

this _31st_ day of _December_, 20 _12_.

a los _31_ días del mes de _December_ de 20 _12_.

KRISTEN DUFFY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DU6121852
Qualified in Queens County
My Commission Expires January 31, 2013

| | | | | |
|---|---|---|---|---|
| New York | Washington, D.C. | Chicago | Houston | San Francisco |
| t: +1.212.631.7432 | t: +1.202.828.1267 | t: +1.312.242.3756 | t: +1.713.353.3909 | t: +1.415.576.9500 |
| London | Paris | Stockholm | Frankfurt | Hong Kong |
| t: +44.20.7553.4100 | t: +33.1.42.68.51.47 | t: +46.8.463.11.87 | t: +49.69.7593.8434 | t: +852.2159.9143 |

# ANEXO A



# CURRICULUM VITAE

## DATOS PERSONALES

| | |
|---|---|
| Apellidos: | Guerra Bastidas |
| Nombres: | Alberto |
| No. Cédula de ciudadanía: | ██████████ |
| Lugar y fecha de nacimiento: | ██████████ |
| Estado civil: | Casado |
| Dirección: | ██████████ |
| Teléfono: | ██████████ |
| E-mail: | ██████████ |

## ESTUDIOS REALIZADOS

SECUNDARIOS:

| | |
|---|---|
| Colegio Nacional Teodoro Gómez de la Torre – Ibarra | 1969 – 1975 |

SUPERIORES:

| | |
|---|---|
| Universidad Central de Ecuador – Quito Facultad de Jurisprudencia | 1975 – 1991 |
| Universidad Andina Simón Bolívar – Quito Especialización Superior en Derecho Procesal | 2001 – 2002 |
| Universidad Central del Ecuador – Quito Maestría en Derecho Ambiental Internacional | 2005 – 2007 |



**TITULOS ACADEMICOS Y OTROS**

| | |
|---|---|
| Egresado en Derecho Ambiental Internacional | 2.007 |
| Egresado Especialización Derecho procesal | 2.002 |
| Doctor en Jurisprudencia | 1.982 |
| Abogado de Juzgados y Tribunales | 1.982 |
| Licenciado en Ciencias Políticas y Sociales | 1.980 |
| Bachiller, Especialización Sociales | 1.975 |

**PRINCIPAL EXPERIENCIA LABORAL**

ASESOR JURIDICO
OPTIMA Agencia de seguros Cia. Ltda.          2010 – 2012

ASESOR NIVEL 1
Asamblea Nacional del Ecuador                 2009 – 2010

ASESOR JURIDICO
OPTIMA Agencia de seguros Cia. Ltda.          2008 – 2009

MINISTRO JUEZ, PRESIDENTE DE SALA
Corte Superior de Justicia de Nueva Loja      2006 – 2008

MINISTRO JUEZ
Corte Superior de Justicia de Nueva Loja      2003 – 2006

MINISTRO JUEZ PRESIDENTE DE LA CORTE
Corte Superior de Justicia de Nueva Loja      2001 – 2003

MINISTRO JUEZ
Corte Superior de Justicia de Nueva Loja      1998 – 2003

JUEZ VIGESIMO SEGUNDO DE LO CIVIL DE PICHINCHA
Corte Superior de Justicia de Quito           1995 – 1998

Ejercicio profesional                         1982 – 1995



**SEMINARIOS DICTADOS**

Seminario de Derecho Procesal Penal con Leyes y Códigos Afines,
Mayo 2004, Nueva Loja, Sucumbíos (Conferencista)

El Nuevo Código de Procedimiento Penal en su rol con la Sociedad Ecuatoriana,
Julio 2003, Nueva Loja (Conferencista)

**OBRAS JURIDICAS PUBLICADAS**

"Derecho de la Niñez y Adolescencia"
Coautor, 2008

"Realidad procesal de la Ejecución de Sentencia"
Coautor, 1999 – 2003

**ESTUDIOS DE ESPECIALIZACION, CURSOS Y SEMINARIOS RECIBIDOS**

Derecho Ambiental Internacional, Instituto de Posgrado, Facultad de Jurisprudencia
de la Universidad Central del Ecuador, 2005 – 2007

La Mediación Una Nueva Cultura para el cambio, Word Metiation.  Cransmontana-
Suiza, septiembre 2005

Indicadores de Gestión, Contraloría General del Estado, Quito, julio 2005

Control de Gestión de la Administración Pública, Contraloría General del Estado,
Quito, junio 2005

Contratación Pública, Contraloría General del Estado, Quito, noviembre 2004

Programa de Capacitación en Destrezas Específicas para el Manejo del Código de
Procedimiento Penal, USAID-CNJ, Quito, 2003

Especialización en Derecho Procesal, Universidad Andina Simón Bolívar, Quito
2001 - 2002



# ATTACHMENT B

[CERT.GEOTEXT VER]





# Pablo Fajardo

Alberto Guerra Bastidas



PUBLICLY FILED
REDACTED VERSION

translations@geotext.com
www.geotext.com

| | |
|---|---|
| STATE OF NEW YORK | ) |
| ESTADO DE NUEVA YORK | ) |
| | ) ss |
| COUNTY OF NEW YORK | ) |
| CONDADO DE NUEVA YORK | ) |

## CERTIFICATION/
## CERTIFICACIÓN

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English of the attached document.

Por la presente certifico que la traducción adjunta de español a inglés es, a mi leal saber y entender, traducción fiel y exacta del documento adjunto.

Ken Hetzel, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me/Suscrito y jurado ante mí

this _31st_ day of _December_, 20 _12_.

a los _31_ días del mes de _December_ de 20 _12_.

KRISTEN DUFFY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DU6121852
Qualified in Queens County
My Commission Expires January 31, 2013

| | | | | |
|---|---|---|---|---|
| New York<br>t: +1.212.631.7432 | Washington, D.C.<br>t: +1.202.828.1267 | Chicago<br>t: +1.312.242.3756 | Houston<br>t: +1.713.353.3909 | San Francisco<br>t: +1.415.576.9500 |
| London<br>t: +44.20.7553.4100 | Paris<br>t: +33.1.42.68.51.47 | Stockholm<br>t: +46.8.463.11.87 | Frankfurt<br>t: +49.69.7593.8434 | Hong Kong<br>t: +852.2159.9143 |

# ANEXO B





# Pablo Fajardo

Alberto Guerra Bastidas



# ATTACHMENT C

[CERT.GEOTEXT VER]





# Luis Yanza



Alberto Guerra Bastidas

GEOTEXT
Translations

translations@geotext.com
www.geotext.com

| STATE OF NEW YORK | ) | |
|---|---|---|
| ESTADO DE NUEVA YORK | ) | ss |
| | ) | |
| COUNTY OF NEW YORK | ) | |
| CONDADO DE NUEVA YORK | ) | |

## CERTIFICATION/
## CERTIFICACIÓN

This is to certify that the attached translation is, to the best of my knowledge and belief, a true
and accurate translation from Spanish into English of the attached document.

Por la presente certifico que la traducción adjunta de español a inglés es, a mi leal saber y
entender, traducción fiel y exacta del documento adjunto.

Ken Hetzel, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me/Suscrito y jurado ante mí

this _31st_ day of _December_, 20_12_.

a los _31_ días del mes de _December_ de 20_12_.

KRISTEN DUFFY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DU6121852
Qualified in Queens County
My Commission Expires January 31, 2013

New York
t: +1.212.631.7432

Washington, D.C.
t: +1.202.828.1267

Chicago
t: +1.312.242.3756

Houston
t: +1.713.353.3909

San Francisco
t: +1.415.576.9500

London
t: +44.20.7553.4100

Paris
t: +33.1.42.68.51.47

Stockholm
t: +46.8.463.11.87

Frankfurt
t: +49.69.7593.8434

Hong Kong
t: +852.2159.9143

# ANEXO C



# Luis Yanza



Alberto Guerra Bastidas

# ATTACHMENT D

[CERT.GEOTEXT VER]





## Steven Donziger

Alberto Guerra Bastidas

GEOTEXT
Translations

translations@geotext.com
www.geotext.com

| | | |
|---|---|---|
| STATE OF NEW YORK | ) | |
| ESTADO DE NUEVA YORK | ) | ss |
| | ) | |
| COUNTY OF NEW YORK | ) | |
| CONDADO DE NUEVA YORK | ) | |

## CERTIFICATION/
## CERTIFICACIÓN

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English of the attached document.

Por la presente certifico que la traducción adjunta de español a inglés es, a mi leal saber y entender, traducción fiel y exacta del documento adjunto.

Ken Hetzel, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me/Suscrito y jurado ante mí

this _31st_ day of _December_, 20 _12_.

a los _31_ días del mes de _December_ de 20 _12_.

KRISTEN DUFFY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DU6121852
Qualified in Queens County
My Commission Expires January 31, 2013

| New York | Washington, D.C. | Chicago | Houston | San Francisco |
|---|---|---|---|---|
| t: +1.212.631.7432 | t: +1.202.828.1267 | t: +1.312.242.3756 | t: +1.713.353.3909 | t: +1.415.576.9500 |
| London | Paris | Stockholm | Frankfurt | Hong Kong |
| t: +44.20.7553.4100 | t: +33.1.42.68.51.47 | t: +46.8.463.11.87 | t: +49.69.7593.8434 | t: +852.2159.9143 |

# ANEXO D





# Steven Donziger

Alberto Guerra Bastidas

# ATTACHMENT E

[CERT.GEOTEXT VER]





# Nicolás Zambrano

Alberto Guerra Bastidas

GEOTEXT
Translations

translations@geotext.com
www.geotext.com

| STATE OF NEW YORK | ) | |
| ESTADO DE NUEVA YORK | ) | ss |
| | ) | |
| COUNTY OF NEW YORK | ) | |
| CONDADO DE NUEVA YORK | ) | |

**CERTIFICATION/**
**CERTIFICACIÓN**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English of the attached document.

Por la presente certifico que la traducción adjunta de español a inglés es, a mi leal saber y entender, traducción fiel y exacta del documento adjunto.

Ken Hetzel, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me/Suscrito y jurado ante mí

this _31st_ day of _December_, 20 _12_.

a los _31_ días del mes de _December_ de 20 _12_.

KRISTEN DUFFY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DU6121852
Qualified in Queens County
My Commission Expires January 31, 2013

| New York | Washington, D.C. | Chicago | Houston | San Francisco |
| t: +1.212.631.7432 | t: +1.202.828.1267 | t: +1.312.242.3756 | t: +1.713.353.3909 | t: +1.415.576.9500 |
| London | Paris | Stockholm | Frankfurt | Hong Kong |
| t: +44.20.7553.4100 | t: +33.1.42.68.51.47 | t: +46.8.463.11.87 | t: +49.69.7593.8434 | t: +852.2159.9143 |

# ANEXO E





# Nicolás Zambrano

Alberto Guerra Bastidas

# ATTACHMENT F

[initials]

**SENT**

| POINT OF SALE | INVOICE NO. | DATE | CITIZEN ID NO. | SENDER | CONTENTS | POINT OF ORIGIN | DESTINATION | RECIPIENT | CITIZEN ID NO. OF PERSON WHO SIGNED FOR THE DELIVERY | NAME OF PERSON WHO SIGNED FOR THE DELIVERY | AMT. COLLECTED |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 13007 | 221389 | 20091119 | | GUERRA BASTIDAS ALBERTO | DOCS | UIO | LGQ | LEON NARCISA | | LEON NOLES NARCISA ROSALINA | 1.34 |
| 13006 | 158077 | 20091129 | | GUERRA BASTIDAS ALBERTO | ENVELOPE WITH DOCUMENTS | UIO | LGQ | LEON NARCIZA | | LEON NOLES NARCISA ROSALINA | 1.34 |
| 13007 | 242991 | 20100121 | | GUERRA BASTIDAS ALBERTO | PACKAGE WITH DOCS | UIO | OCC | JURADO JUAN | | JURADO OCHOA JUAN GALO | 10.11 |
| 13006 | 180369 | 20100202 | | GUERRA BASTIDAS ALBERTO | DOCS | UIO | OCC | MOREIRA COLORADO PEDRO | | MEDRANDA MONCAYO IRMA ARACELI | 1.25 |
| 13006 | 243358 | 20100702 | | GUERRA BASTIDAS ALBERTO | DOC | UIO | LGQ | ZAMBRANO NICOLAS | | ZAMBRANO LOZADA NICOLAS AUGUSTO | 1.41 |
| 13007 | 354790 | 20101222 | | GUERRA BASTIDAS ALBERTO | PACKAGE WITH DOCS | UIO | LGQ | ALBAN FERNANDO | | ALBAN ESCOBAR FERNANDO PATRICIO | 4.96 |
| 13006 | 301567 | 20101229 | | GUERRA BASTIDAS ALBERTO | PACKAGE WITH DOCUMENTS | UIO | LGQ | ALBAN FERNANDO | | ALBAN ESCOBAR FERNANDO PATRICIO | 2.22 |
| 13007 | 358245 | 20110104 | | GUERRA BASTIDAS ALBERTO | BOX WITH DOCUMENTS | UIO | LGQ | ALBAN FERNANDO | | ALBAN ESCOBAR FERNANDO PATRICIO | 2.22 |
| 13007 | 360059 | 20110109 | | GUERRA BASTIDAS ALBERTO | BOX WITH DOCUMENTS | UIO | LGQ | ALBAN FERNANDO | | ALBAN ESCOBAR FERNANDO PATRICIO | 2.77 |
| 13007 | 363269 | 20110119 | | GUERRA BASTIDAS ALBERTO | DOCUMENTS | UIO | LGQ | ALBAN FERNANDO | | ALBAN ESCOBAR FERNANDO PATRICIO | 1.41 |
| 13008 | 241253 | 20110124 | | GUERRA BASTIDAS ALBERTO | PACKAGE WITH DOCS | UIO | LGQ | ALBAN FERNANDO | | ALBAN ESCOBAR FERNANDO PATRICIO | 2.77 |
| 13006 | 313928 | 20110203 | | GUERRA BASTIDAS ALBERTO | BOX WITH DOCS | UIO | LGQ | ALBAN FERNANDO | | ALBAN ESCOBAR FERNANDO PATRICIO | 6.06 |
| 13007 | 372089 | 20110211 | | GUERRA BASTIDAS ALBERTO | DOCUMENTS | UIO | LGQ | ZAMBRANO NICOLAS | | JIMENEZ REYES SANTOS VICTORIANO | 1.41 |
| 13006 | 320016 | 20110222 | | GUERRA BASTIDAS ALBERTO | DOCS | UIO | OCC | DAZA ORLANDO | | DAZA CORTEZ ORLANDO JOSE FRANCISCO | 1.5 |
| 13006 | 323634 | 20110308 | | GUERRA BASTIDAS ALBERTO | PACKAGE WITH DOCS | UIO | LGQ | ZAMBRANO NICOLAS | | ZAMBRANO LOZADA NICOLAS AUGUSTO | 1.68 |
| 13007 | 400598 | 20110421 | | GUERRA BASTIDAS ALBERTO | DOCUMENTS | UIO | LGQ | ZAMBRANO NICOLAS | | JIMENEZ REYES SANTOS VICTORIANO | 1.41 |
| 13008 | 270932 | 20110524 | | GUERRA BASTIDAS ALBERTO | PACKAGE WITH DOCS | UIO | LGQ | ZAMBRANO NICOLAS | | ZAMBRANO LOZADA NICOLAS AUGUSTO | 2.77 |
| 13006 | 348909 | 20110530 | | GUERRA BASTIDAS ALBERTO | PACKAGE WITH DOCS | UIO | LGQ | ZAMBRANO NICOLAS | | ZAMBRANO LOZADA NICOLAS AUGUSTO | 1.68 |
| 13008 | 274333 | 20110601 | | GUERRA BASTIDAS ALBERTO | DOCS | UIO | LGQ | ZAMBRANO NICOLAS | | ZAMBRANO LOZADA NICOLAS AUGUSTO | 1.41 |
| 13006 | 362938 | 20110705 | | GUERRA BASTIDAS ALBERTO | BOX WITH DOCS | UIO | LGQ | ZAMBRANO NICOLAS | | ZAMBRANO LOZADA NICOLAS AUGUSTO | 2.77 |
| 13007 | 458148 | 20110927 | | GUERRA BASTIDAS ALBERTO | PACKAGE WITH DOCUMENTS | UIO | LGQ | ZAMBRANO NICOLAS | | ZAMBRANO LOZADA NICOLAS AUGUSTO | 1.41 |
| 13007 | 460768 | 20111003 | | GUERRA BASTIDAS ALBERTO | ENVELOPE WITH FLASH MEMORY DRIVE | UIO | LGQ | ZAMBRANO NICOLAS | Enter | | 1.41 |
| 2004 | 32549 | 20120228 | | GUERRA BASTIDAS ALBERTO | PACKAGE WITH DOCUMENTS | UIO | LGQ | ZAMBRANO NICOLAS | | ZAMBRANO LOZADA NICOLAS AUGUSTO | 3.92 |

**RECEIVED**

| POINT OF SALE | INVOICE NO. | DATE | CITIZEN ID NO. | SENDER | CONTENTS | POINT OF ORIGIN | DESTINATION | RECIPIENT | CITIZEN ID NO. OF PERSON WHO SIGNED FOR THE DELIVERY | NAME OF PERSON WHO SIGNED FOR THE DELIVERY | AMT. COLLECTED |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6002 | 45834 | 20100830 | | AGUILAR ROMERO LUIS JAIRO | DOCUMENTS | LGQ | UIO | GUERRA BASTIDAS ALBERTO | | GUERRA BASTIDAS ALBERTO | 1.41 |
| 6002 | 50962 | 20101229 | | ALBAN ESCOBAR FERNANDO PATRICIO | PACKAGE WITH DOCS | LGQ | UIO | GUERRA BASTIDAS ALBERTO | | GUERRA BASTIDAS ALBERTO | 6.61 |
| 6002 | 51970 | 20110122 | | ZAMBRANO LOZADA NICOLAS AUGUSTO | PACKAGE WITH DOCUMENTS | LGQ | UIO | GUERRA BASTIDAS ALBERTO | | GUERRA BASTIDAS ALBERTO | 6.06 |
| 6002 | 53385 | 20110225 | | ZAMBRANO LOZADA NICOLAS AUGUSTO | PACKAGE WITH DOCUMENTS | LGQ | UIO | GUERRA BASTIDAS ALBERTO | | GUERRA BASTIDAS ALBERTO | 2.22 |
| 7002 | 29319 | 20110420 | | DOMINGUEZ POLO CARLOS VICENTE | DOCUMENTS | LOH | UIO | GUERRA BASTIDAS ALBERTO | | GUERRA BASTIDAS ALBERTO | 1.64 |
| 6002 | 57261 | 20110607 | | ZAMBRANO LOZADA NICOLAS AUGUSTO | DOCUMENTS | LGQ | UIO | GUERRA BASTIDAS ALBERTO | | GUERRA BASTIDAS ALBERTO | 1.41 |
| 7002 | 33975 | 20110628 | | ESPINOSA RUIZ ANGEL OLIVER | DOCUMENTS | LOH | UIO | GUERRA ALBERTO | | GUERRA BASTIDAS ALBERTO | 1.64 |
| 6002 | 60011 | 20120810 | | ZAMBRANO LOZADA NICOLAS AUGUSTO | DOCS | LGQ | UIO | GUERRA ALBERTO | | GUERRA BASTIDAS ALBERTO | 1.52 |
| 16001 | 5278 | 20120224 | | ZAMBRANO LOZADA NICOLAS AUGUSTO | PACKAGE WITH DOCUMENTS | LGQ | UIO | GUERRA BASTIDAS ALBERTO | | GUERRA BASTIDAS ALBERTO | 4 |

[logo:] Tame
[illegible] of Ecuador

LEGAL DEPARTMENT
[signature]
*10-09-2012*

[initials]

[CERT.GEOTEXT:VER]

GEOTEXT
Translations

translations@geotext.com
www.geotext.com

| STATE OF NEW YORK | ) | |
|---|---|---|
| ESTADO DE NUEVA YORK | ) | ss |
| | ) | |
| COUNTY OF NEW YORK | ) | |
| CONDADO DE NUEVA YORK | ) | |

## CERTIFICATION/
## CERTIFICACIÓN

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English of the attached document.

Por la presente certifico que la traducción adjunta de español a inglés es, a mi leal saber y entender, traducción fiel y exacta del documento adjunto.

Ken Hetzel, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me/Suscrito y jurado ante mí

this _31st_ day of _December_, 20 _12_.

a los _31_ días del mes de _December_ de 20 _12_.

KRISTEN DUFFY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DU6121852
Qualified in Queens County
My Commission Expires January 31, 2013

| New York | Washington, D.C. | Chicago | Houston | San Francisco |
|---|---|---|---|---|
| t: +1.212.631.7432 | t: +1.202.828.1267 | t: +1.312.242.3756 | t: +1.713.353.3909 | t: +1.415.576.9500 |
| London | Paris | Stockholm | Frankfurt | Hong Kong |
| t: +44.20.7553.4100 | t: +33.1.42.68.51.47 | t: +46.8.463.11.87 | t: +49.69.7593.8434 | t: +852.2159.9143 |

# ANEXO F



## ENVIADAS

| PTOVENTA | NOFACTURA | FECHA | CEDULA | REMITENTE | CONTENIDO | ORIGEN | DESTINO | DESTINATARIO | CEDULA RETIRA | NOMBRE DE QUIEN RETIRA | VCOBRAR |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 13007 | 221380 | 20091119 | | GUERRA BASTIDAS ALBERTO | DCTOS | UIO | UGLI | LEON NARCISA | | LEON NOLES NARCISA ROSALINA | 1.34 |
| 13006 | 158077 | 20091129 | | GUERRA BASTIDAS ALBERTO | SOBRE CON DOCUMANTOS | UIO | UGLI | LEON NARCIZA | | LEON NOLES NARCISA ROSALINA | 1.34 |
| 13007 | 242991 | 20100121 | | GUERRA BASTIDAS ALBERTO | CARTON CONDCTOS | UIO | OCC | JURADO OCHOA JUAN GALO | | URADO OCHOA JUAN GALO | 10.11 |
| 13006 | 180869 | 20100202 | | GUERRA BASTIDAS ALBERTO | DOCTOS. | UIO | UGLI | MOHERA COLORADO PEDRO | | FERNANDA MONCAYO RIMA ARACELI | 1.25 |
| 13006 | 243352 | 20100722 | | GUERRA BASTIDAS ALBERTO | DOC | UIO | UGLI | ZAMBRANO NICOLAS | | ZAMBRANO LOZADA NICOLAS AUGUSTO | 1.41 |
| 13007 | 354790 | 20101222 | | GUERRA BASTIDAS ALBERTO | CARTON DCTOS | UIO | UGLI | ALBAN FERNANDO | | JUAN ESCOBAR FERNANDO PATRICIO | 4.96 |
| 13006 | 301567 | 20101729 | | GUERRA BASTIDAS ALBERTO | CARTON CON DOCUMTOS | UIO | UGLI | ALBAN FERNANDO | | JUAN ESCOBAR FERNANDO PATRICIO | 2.22 |
| 13007 | 338245 | 20110104 | | GUERRA BASTIDAS ALBERTO | CAJA CON DOCUMENTOS | UIO | UGLI | ALBAN FERNANDO | | JUAN ESCOBAR FERNANDO PATRICIO | 2.22 |
| 13007 | 360059 | 20110109 | | GUERRA BASTIDAS ALBERTO | CAJA CON DOCUMENTOS | UIO | UGLI | ALBAN FERNANDO | | JUAN ESCOBAR FERNANDO PATRICIO | 2.77 |
| 13007 | 362869 | 20110119 | | GUERRA BASTIDAS ALBERTO | DOCUMENTOS | UIO | UGLI | ALBAN FERNANDO | | JUAN ESCOBAR FERNANDO PATRICIO | 1.41 |
| 13008 | 241253 | 20110124 | | GUERRA BASTIDAS ALBERTO | CARTON CON DCTOS | UIO | UGLI | ALBAN FERNANDO | | JUAN ESCOBAR FERNANDO PATRICIO | 2.77 |
| 13006 | 319328 | 20110203 | | GUERRA BASTIDAS ALBERTO | CAJA CON DCTS | UIO | UGLI | ALBAN FERNANADO | | JUAN ESCOBAR FERNANDO PATRICIO | 6.06 |
| 13007 | 372089 | 20110111 | | GUERRA BASTIDAS ALBERTO | DOCUMENTOS | UIO | UGLI | ZAMBRANO NICOLAS | | JIMENEZ REYES SANTOS VICTORIANO | 1.41 |
| 13006 | 320016 | 20110222 | | GUERRA BASTIDAS ALBERTO | DCTOS | UIO | OCC | DAZA ORLANDO | | DAZA CORTEZ ORLANDO JOSE FRANCISCO | 1.5 |
| 13006 | 323634 | 20110306 | | GUERRA BASTIDAS ALBERTO | CARTON CON DCTOS | UIO | UGLI | ZAMBRANO NICOLAS | | ZAMBRANO LOZADA NICOLAS AUGUSTO | 1.68 |
| 13007 | 400598 | 20110421 | | GUERRA BASTIDAS ALBERTO | DOCUMENTOS | UIO | UGLI | ZAMBRANO NICOLAS | | JIMENEZ REYES SANTOS VICTORIANO | 1.41 |
| 13008 | 270952 | 20110524 | | GUERRA BASTIDAS ALBERTO | CARTON CON DCTOS | UIO | UGLI | ZAMBRANO NICOLAS | | ZAMBRANO LOZADA NICOLAS AUGUSTO | 2.77 |
| 13006 | 349059 | 20110530 | | GUERRA BASTIDAS ALBERTO | PAQUETE CON DCTOS | UIO | UGLI | ZAMBRANO NICOLAS | | ZAMBRANO LOZADA NICOLAS AUGUSTO | 1.68 |
| 13008 | 274333 | 20110600 | | GUERRA BASTIDAS ALBERTO | DCTOS | UIO | UGLI | ZAMBRANO NICOLAS | | ZAMBRANO LOZADA NICOLAS AUGUSTO | 1.41 |
| 13006 | 262838 | 20110607 | | GUERRA BASTIDAS ALBERTO | CAJA CON DOC | UIO | UGLI | ZAMBRANO NICOLAS | | ZAMBRANO LOZADA NICOLAS AUGUSTO | 2.77 |
| 13007 | 458148 | 20110907 | | GUERRA BASTIDAS ALBERTO | PAQUETE CON DOCUMENTOS | UIO | UGLI | ZAMBRANO NICOLAS | | ZAMBRANO LOZADA NICOLAS AUGUSTO | 1.41 |
| 13007 | 400768 | 20111006 | | GUERRA BASTIDAS ALBERTO | SOBRE CON FLASH MEMORI | UIO | UGLI | ZAMBRANO NICOLAS | ENTRE | ZAMBRANO LOZADA NICOLAS AUGUSTO | 1.41 |
| 2004 | 32549 | 20120228 | | GUERRA BASTIDAS ALBERTO | CARTON COMN DMCNTOS | UIO | UGLI | ZAMBRANO NICOLAS | | ZAMBRANO LOZADA NICOLAS AUGUSTO | 3.92 |

## RECIBIDAS

| PTOVENTA | NOFACTURA | FECHA | CEDULA | REMITENTE | CONTENIDO | ORIGEN | DESTINO | DESTINATARIO | CEDULA RETIRA | NOMBRE DE QUIEN RETIRA | VCOBRAR |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6002 | 45834 | 20100830 | | AGUILAR ROMERO LUIS JAIRO | DOCUMENTOS | UGLI | UIO | GUERRA BASTIDAS ALBERTO | | GUERRA BASTIDAS ALBERTO | 1.41 |
| 6002 | 50952 | 20101229 | | ALBAN ESCOBAR FERNANDO PATRICIO | PAQUETE CON DOCUMENTOS | UGLI | UIO | GUERRA BASTIDAS ALBERTO | | GUERRA BASTIDAS ALBERTO | 6.51 |
| 6002 | 51970 | 20110132 | | ZAMBRANO LOZADA NICOLAS AUGUSTO | CARTON CON DOCUMENTOS | UGLI | UIO | GUERRA BASTIDAS ALBERTO | | GUERRA BASTIDAS ALBERTO | 6.06 |
| 6002 | 53385 | 20110225 | | ZAMBRANO LOZADA NICOLAS AUGUSTO | CARTON CON DOCUMENTOS | UGLI | UIO | GUERRA BASTIDAS ALBERTO | | GUERRA BASTIDAS ALBERTO | 2.22 |
| 7002 | 29319 | 20110420 | | DOMINGUEZ POLO CARLOS VICENTE | DOCUMENTOS | IOH | UIO | GUERRA ALBERTO | | GUERRA BASTIDAS ALBERTO | 1.64 |
| 6002 | 57761 | 20110607 | | ZAMBRANO LOZADA NICOLAS AUGUSTO | DOCUMENTOS | UGLI | UIO | GUERRA ALBERTO | | GUERRA BASTIDAS ALBERTO | 1.41 |
| 7002 | 33975 | 20110628 | | ESPINOSA RUIZ ANGEL OLIVER | DOCUMATIOS | IOH | UIO | GUERRA ALBERTO | | GUERRA BASTIDAS ALBERTO | 1.64 |
| 6002 | 60011 | 20110810 | | ZAMBRANO LOZADA NICOLAS AUGUSTO | DCTOS | UGLI | UIO | GUERRA BASTIDAS ALBERTO | | GUERRA BASTIDAS ALBERTO | 1.52 |
| 16001 | 5278 | 20120224 | | ZAMBRANO LOZADA NICOLAS AUGUSTO | CARTON CON DOCUMENTOS | UGLI | UIO | GUERRA BASTIDAS ALBERTO | | GUERRA BASTIDAS ALBERTO | 4 |



DIRECCIÓN JURÍDICA
08-10-2012

# ATTACHMENT G

[initials]

[CERT.GEOTEXT:VER]

**ACCOUNT STATEMENT**

**"Ganadolar" [Interest-Bearing Account]**

 Page 1 of 2

**BANCO PICHINCHA**,
A Bank you can trust.
Main Office: Av. Amazonas 4560 y Pereira
Tax ID No.: 1790010937001
Telephone: 2980 980  -  Quito, Ecuador

**GUERRA BASTIDAS ALBERTO**
ACCOUNT: ▉▉▉ / ▉▉

KENNEDY
QUITO          52 R: 0218
CYCLE: JULY 1          SEQ.: 67-001711
Citizen ID / Tax ID: ▉▉▉▉

**BANCO PICHINCHA C.A.**
**SPECIAL TAXPAYER**
**[ECUADORIAN] INTERNAL REVENUE SERVICE**
**RESOLUTION 5368 OF JUNE 2, 1995**
**INVOICE No.  053-051-000007410**

INTERNAL REVENUE SERVICE AUTHORIZATION: 1109596753
ISSUED ON: 05-12-2011
VALID UNTIL: 05-12-2012
TYPE OF ISSUANCE: ORIGINAL
OFFICE: EL INCA
ADDRESS: AV 6 DE DICIEMBRE

DATE OF LAST INVOICE: **06-07-2011**
DATE OF THIS INVOICE: **07-04-2011**

| | | |
|---|---|---|
| * TAXABLE INCOME 0.00 % | 0.00 | V.A.T. COLLECTED:  0.00 |
| ** TAXABLE INCOME 12.00 % | 0.00 | V.A.T. COLLECTED:  0.00 |
| ***AMOUNTS SUBJECT TO WITHHOLDING | | |

| IMPORTANT |
|---|

Dear: ALBERTO

We have important news.

We are pleased to inform you that Banco Pichincha will send its customers e-mails regarding Offers, Promotions, Account Statements and other areas of interest via: campanias@bancopichincha.com.ec and seguridad@bancopichincha.com.ec

ADVISOR: GAIBOR GARCES, SHASKIA-KARINA          AGENCY TELEPHONE: 3287175 Ext  303          E-Mail: sgaibor@pichincha com

| RECONCILIATION | | COMPARATIVE CHART - RECONCILIATION |
|---|---|---|
| DATE OF LAST INVOICE: | 06-07-2011 | |
| DATE OF THIS INVOICE: | 07-04-2011 | |
| PREVIOUS BALANCE | | |
| + DEPOSITS / CREDITS | (3) | |
| - CHECKS / DEBITS | (9) | |
| + INTEREST FOR THE PERIOD | | |
| CURRENT BALANCE | | |
| AVERAGE CASH BALANCE | | |

| **PRODUCT** *of the MONTH* | **"GANADOLAR" [INTEREST-BEARING SAVINGS ACCOUNT]** Did you know that your "GANADOLAR" account comes with a free insurance package? [illegible text]  [logo] BANCO PICHINCHA |
|---|---|

Unless written notice of any discrepancy is received within 30 days, your acceptance of this account statement is presumed.

 PICHINCHA CELULAR
TXT TO 299

An Entire Bank in the
**PALM** of your hand
[initials]

[CERT.GEOTEXT:VER]

**ACCOUNT STATEMENT**
**"Ganadolar" [Interest-Bearing Account]**

**BANCO PICHINCHA**,
A Bank you can trust.
Main Office: Av. Amazonas 4560 y Pereira
Tax ID No.: 1790010937001
Telephone: 2980 980  -  Quito, Ecuador

Page 2 of 2

| GUERRA BASTIDAS ALBERTO | Citizen ID / Tax ID: ███ |
|---|---|
| ACCOUNT: ███ ███ | CYCLE: JULY 1      SEQ.: 67-001711 |

**ACCOUNT ACTIVITY**

| DATE | OFFICE | DOC. NO. | DESCRIPTION | DEBIT | CREDIT | BALANCE |
|---|---|---|---|---|---|---|
| ███ | ███ | ███ | ███ | | ███ | ███ |
| | ███ | ███ | ███ | ███ | | ███ |
| ███ | ███ | ███ | ███ | | | ███ |
| ███ | ███ | ███ | ███ | | | ███ |
| JUN 27 | 108 | 427636792 | DEPOSIT | | 300.00 | ███ |
| ███ | ███ | ███ | ███ | ███ | | ███ |
| ███ | ███ | ███ | ███ | ███ | | ███ |
| JUN 28 | 218 | 431739089 | DEPOSIT | | 200.00 | ███ |
| ███ | ███ | ███ | ███ | ███ | | ███ |
| ███ | ███ | ███ | ███ | | | ███ |
| ███ | ███ | ███ | ███ | | | ███ |
| ███ | ███ | ███ | ███ | ███ | | ███ |

Unless written notice of any discrepancy is received within 30 days, your acceptance of this account statement is presumed.


PICHINCHA CELULAR
TXT TO 299

An Entire Bank in the
**PALM** of your hand.

[initials]

[CERT.GEOTEXT:VER]

GEOTEXT
Translations

translations@geotext.com
www.geotext.com

| STATE OF NEW YORK | ) | |
|---|---|---|
| ESTADO DE NUEVA YORK | ) | ss |
| | ) | |
| COUNTY OF NEW YORK | ) | |
| CONDADO DE NUEVA YORK | ) | |

## CERTIFICATION/
## CERTIFICACIÓN

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English of the attached document.

Por la presente certifico que la traducción adjunta de español a inglés es, a mi leal saber y entender, traducción fiel y exacta del documento adjunto.

Ken Hetzel, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me/Suscrito y jurado ante mí

this _31st_ day of _December_, 20_12_.

a los _31_ días del mes de _December_ de 20_12_.

KRISTEN DUFFY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DU6121852
Qualified in Queens County
My Commission Expires January 31, 2013

| New York | Washington, D.C. | Chicago | Houston | San Francisco |
|---|---|---|---|---|
| t: +1.212.631.7432 | t: +1.202.828.1267 | t: +1.312.242.3756 | t: +1.713.353.3909 | t: +1.415.576.9500 |
| London | Paris | Stockholm | Frankfurt | Hong Kong |
| t: +44.20.7553.4100 | t: +33.1.42.68.51.47 | t: +46.8.463.11.87 | t: +49.69.7593.8434 | t: +852.2159.9143 |

# ANEXO G





**BANCO PICHINCHA**
En confianza.

Matriz: Av. Amazonas 4560 y Pereira • RUC: 1790010937001
Teléfono: 2980 980 • Quito - Ecuador

## ESTADO DE CUENTA
### Cuenta Ganadolar

Página 1 de 2



GUERRA BASTIDAS ALBERTO
CUENTA:

KENNEDY
QUITO          52 R: 0218

CICLO 1 JUL

SEC: 67-001711

C.I. / RUC:

BANCO PICHINCHA C.A.
CONTRIBUYENTE ESPECIAL
RESOLUCION SRI 5368 DEL 2-JUNIO-1995
FACTURA No:          053-051-000007410

AUTORIZACION SRI: 1100506753
OTORGADO EL    : 12-05-2011
VALIDO HASTA   : 12-05-2012
TIPO DE EMISION : ORIGINAL
OFICINA: EL INCA
DIRECCION: AV 6 DE DICIEMBRE

FECHA ULTIMO CORTE (FACTURA)     07-06-2011
FECHA ESTE CORTE (FACTURA)       04-07-2011

* BASE IMPONIBLE  0.00 %:          0.00    VALOR IVA COBRADO:          0.00
** BASE IMPONIBLE  12.00 %:        0.00    VALOR IVA COBRADO:          0.00
* * VALORES SUJETOS A RETENCION

| I M P O R T A N T E |
|---|

ESTIMADO: ALBERTO

Tenemos Noticias Importantes

Nos es grato comunicarle que Banco Pichincha enviará a sus clientes correos electrónicos sobre Campañas, Promociones, Estados de Cuenta y temas de interés a través de: campanias@bancopichincha.com.ec y seguridad@bancopichincha.com.ec

ASESOR: GAIBOR GARCES, SHASKIA-KARINA   TELEFONO AGENCIA: 3207175   Ext. 303   E-MAIL: sgaibor@pichincha.com

| C O N C I L I A C I O N | CUADRO COMPARATIVO CONCILIACION |
|---|---|

FECHA ULTIMO CORTE (FACTURA)       07-06-2011
FECHA DE ESTE CORTE (FACTURA)      04-07-2011
SALDO ANTERIOR
+ DEPOSITOS / CREDITOS        (3)
- CHEQUES / DEBITOS           (9)
+ INTERES PERIODO
SALDO ACTUAL
SALDO PROMEDIO EFECTIVO



**PRODUCTO del MES**

CUENTA DE AHORROS GANADOLAR

¿Sabías que la cuenta GANADOLAR te da un paquete de seguros gratis?
Abre tu cuenta con poco, accede a todos los beneficios y recibe un regalo especial.*

Para mayor información acércate a cualquiera de
nuestras oficinas a nivel nacional o llama a nuestro CALL CENTER al 02-2 999 999
www.pichincha.com

**BANCO PICHINCHA**

Daremos por recibida su conformidad al presente estado de cuenta, a menos que en 30 días reclamos se aviso por escrito de algún reparo.



PICHINCHA
CELULAR
MENSAJEA AL 2523

Todo un Banco en la
**PALMA** de tu mano



## ESTADO DE CUENTA
**Cuenta Ganadolar**



**BANCO PICHINCHA**
En confianza.

Matriz: Av. Amazonas 4560 y Pereira • RUC: 1790010937001
Teléfono: 2980 900 • Quito - Ecuador

Página 2 de 2

GUERRA BASTIDAS ALBERTO

C.I. / RUC: ▮▮▮▮▮▮▮

CUENTA: ▮▮▮▮▮▮▮

CICLO 1 - JUL    SEC: 67-001711

### DETALLE DE MOVIMIENTOS

| FECHA | OFIC. | N. DOC | DESCRIPCION | DEBITO | CREDITO | SALDO |
|-------|-------|--------|-------------|--------|---------|-------|
| 27-JUN | 108 | 427635792 | DEPOSITO | | 300.00 | 446.34 |
| 28-JUN | 248 | 431739609 | DEPOSITO | | 200.00 | 620.23 |

Daremos por recibida su conformidad al presente estado de cuenta, a menos que en 30 días recibamos su aviso por escrito de algún reparo.



PICHINCHA
CELULAR
MENSAJEA AL CEL.

**Todo un Banco en la
PALMA** de tu mano



# ATTACHMENT H

## BANCO PICHINCHA C.A.

DATE:                   06/28/2011

ROUTING No.:            0

ACCOUNT No.:            0

CHECK No.:              0

VALUE:                  0.00

SEQUENCE:               132 - 1 - 112816800

PROCEDURE:              068 - Slips, Cash UIO

USER:                   jmontene   10/25/2012   5:28:18 p.m.   (IP:10.0.91.130)

---

| [logo] **BANCO PICHINCHA** | BANK<br>[illegible] | CURRENCY<br>[illegible] | **DEPOSIT OR PAYMENT IN CASH**<br>COLLECTIONS | |
|---|---|---|---|---|

| **CLIENT OR CARD NUMBER** | | | **AMOUNT IN NUMBERS** | **CENTS** |
|---|---|---|---|---|
| ▓ *0 8 6 1* | TOTAL CASH | | *300* [illegible] | |
| NAME: [illegible] ALBERTO GUERRA | BILLS | | | |
| PLACE AND DATE:<br>**Nueva Loja 24-VI-2011** | COINS | | | |

| | [illegible]<br>[illegible] | |
|---|---|---|
| [illegible]<br><br><br>[illegible] | | [signature]<br>CASHIER SIGNATURE AND SEAL<br>[illegible] *090*[illegible]*18*[illegible]<br>[illegible] |

[stamp:] [illegible]

GEOTEXT
Translations

translations@geotext.com
www.geotext.com

| STATE OF NEW YORK | ) | |
|---|---|---|
| ESTADO DE NUEVA YORK | ) | ss |
| | ) | |
| COUNTY OF NEW YORK | ) | |
| CONDADO DE NUEVA YORK | ) | |

### CERTIFICATION/
### CERTIFICACIÓN

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from Spanish into English of the attached document.

Por la presente certifico que la traducción adjunta de español a inglés es, a mi leal saber y

entender, traducción fiel y exacta del documento adjunto.

Ken Hetzel, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me/Suscrito y jurado ante mí

this _31st_ day of _December_, 20 _12_ .

a los _31_ días del mes de _December_ de 20 _12_ .

KRISTEN DUFFY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DU6121852
Qualified in Queens County
My Commission Expires January 31, 2013

New York
t: +1.212.631.7432

London
t: +44.20.7553.4100

Washington, D.C.
t: +1.202.828.1267

Paris
t: +33.1.42.68.51.47

Chicago
t: +1.312.242.3756

Stockholm
t: +46.8.463.11.87

Houston
t: +1.713.353.3909

Frankfurt
t: +49.69.7593.8434

San Francisco
t: +1.415.576.9500

Hong Kong
t: +852.2159.9143

# ANEXO H





# BANCO PICHINCHA C. A.

FECHA:          2011/06/28
RUTA:           0
CUENTA:         0
# CHEQUE:       0
VALOR:          0.00
SECUENCIA:   132 - 1 - 112816800
PROCESO:     068 - Papeletas Efectivo UIO
USUARIO:     jmontene   2012/10/25  17:28:18   (IP:10.0.91.130)



# ATTACHMENT I

[initials]

[CERT.GEOTEXT]

## February 22 Wednesday
*February*    *Wednesday*

2012          [illegible]

| APPOINTMENTS *Appointments* | ACTIVITIES [illegible] |
|---|---|
| 8:00    *Receipt for re-appraisal of* [illegible] *house* | |
|      *Total value of real estate…421,689.00* | |
| 9:00   *-10% Net realizable Value…379,520.00* | |
| 10:00 | |
| 11:00 | |
| 12:00 | |
| 1:00 | |
| 2:00 | |
| 3:00 | |
| 4:00 | |
| 5:00 | |
| 6:00 | |
| 7:00 | |

| | M | T | W | T | F | S | S |
|---|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 | 4 | 5 |
| February *February* | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| | 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| | 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| | 27 | 28 | 29 | | | | |

WEEK *Week 9*

## February 23 Thursday
*February*    *Thursday*

2012          [illegible]

| APPOINTMENTS *Appointments* | ACTIVITIES [illegible] |
|---|---|
| 8:00    *C N J visit* | |
|      *Attorney General's Office* | |
| 9:00   *Dr. Cesar Morales* | |
|      *Eduardo Lopez (Rent)* | |
| 10:00   *Jose* [illegible] *(house)* | |
|      *Oil change Honda vehicle (35)* | |
| 11:00   *Oil filter included – 90,400 km* | |
|      *Arturo (urine test)* | |
| 12:00 | |
|      *-* | |
| 1:00   *For three days* | |
|      *2 tbsp. of olive oil* | |
| 2:00   *with juice from one lemon while on an empty stomach* | |
|      *Water from* [illegible] *with honey* | |
| 3:00   *(kidney stones)* | |
| 4:00   *Nicolas Zambrano* [illegible] *documents* | |
| 5:00 | |
|      [illegible] *1 tbsp. 8–12 hours* | |
| 6:00 | |
| 7:00 | |

| | M | T | W | T | F | S | S |
|---|---|---|---|---|---|---|---|
| | | | | | 1 | 2 | 3 | 4 |
| March *March* | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| | 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| | 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| | 26 | 27 | 28 | 29 | 30 | 31 | |

[initials]

[CERT.GEOTEXT]

## February 24 Friday

*February        Friday*

*2012*                                    [illegible]

| APPOINTMENTS *Appointments* | | ACTIVITIES [illegible] |
|---|---|---|
| 8:00 | | |
| | Satellite Kit150        8 | |
| 9:00 | 230 channels 085348903 | |
| 10:00 | Nicolas transfers me 2,000.00 account balance | |
| | 3,747.92 | |
| 11:00 | Withdraw 500, balance 3,247.92 | |
| | -Payment of $400, down payment curtains (second phase) | |
| 12:00 | for a total of 1,334.00 | |
| | Curtains to install        Downstairs Guest | 154.70 |
| 1:00 | Study Hall | 134.88 |
| | Carlos's Bedroom (2) | 473.76 |
| 2:00 | Balcony Door | 44.73 |
| | Gaby's bedroom (2) | 295.20 |
| 3:00 | Hall | 230.88 |
| | | 1,344.15 |
| 4:00 | | |
| | Gave Fabian [illegible]        30 | |
| 5:00 | 1 gallon of paint        18 | |
| 6:00 | We received from Elizabeth Pazmino [illegible] | |
| | for Gaby (56 pesos) 2 suitcases | |
| 7:00 | | |

| | M | T | W | T | F | S | S |
|---|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 | 5 |
| February | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| | 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| | 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| | 27 | 28 | 29 | | | | |

WEEK *Week 9*

## February 25 Saturday

*February        Saturday*

*2012*                                    [illegible]

| APPOINTMENTS *Appointments* | ACTIVITIES [illegible] |
|---|---|
| [illegible] | [illegible] |
| [illegible] | [illegible] |
| [illegible] | [illegible] |
| [illegible] | 15 |
| [illegible] | [illegible] |
| *[illegible]* | |
| *[illegible]* | |

## February 26 Sunday

*February        Sunday*

[illegible]

| | |
|---|---|
| Rodrigo Santacruz worked today | |
| We spoke to Jorge and Ely | |
| Pay Rodrigo 20.00 | |
| Work on Lago trials | |

| | M | T | W | T | F | S | S |
|---|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 | 4 |
| March | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| | 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| | 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| | 26 | 27 | 28 | 29 | 30 | 31 | |

[initials]

[CERT.GEOTEXT]

**GEOTEXT**
Translations

translations@geotext.com
www.geotext.com

| STATE OF NEW YORK | ) | |
|---|---|---|
| ESTADO DE NUEVA YORK | ) | ss |
| | ) | |
| COUNTY OF NEW YORK | ) | |
| CONDADO DE NUEVA YORK | ) | |

## CERTIFICATION/
## CERTIFICACIÓN

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English of the attached document.

Por la presente certifico que la traducción adjunta de español a inglés es, a mi leal saber y entender, traducción fiel y exacta del documento adjunto.

Ken Hetzel, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me/Suscrito y jurado ante mí

this 31st day of December, 20 12 .

a los 31 días del mes de December de 20 12 .

KRISTEN DUFFY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DU6121852
Qualified in Queens County
My Commission Expires January 31, 2013

New York
t: +1.212.631.7432

Washington, D.C.
t: +1.202.828.1267

Chicago
t: +1.312.242.3756

Houston
t: +1.713.353.3909

San Francisco
t: +1.415.576.9500

London
t: +44.20.7553.4100

Paris
t: +33.1.42.68.51.47

Stockholm
t: +46.8.463.11.87

Frankfurt
t: +49.69.7593.8434

Hong Kong
t: +852.2159.9143

# ANEXO I



**FEBRERO / February 22 MIÉRCOLES / Wednesday — 2012**

Rec los Recaudos con Penny —
Vale total de juicio — 431,897.55
Vale de Ratificación — 349,316.55
-10%

**FEBRERO / February 23 JUEVES / Thursday — 2012**

U.E.L. CPI
Gente casual
La Casa Grande
Estatus tipo: (Ruth)
José Trujillo (Coca)
Cambio aceite o bien web Honda (35)
trabajo futbol aceite — Hp. que está
Astimo — (xxxxx Brian)

Por Poq día
2 cucharadas de aceite de Oliva
con jugo de / Limón, su cepar en
ayuno de Prednisona con un té
abajo (Centeno Ruso).

Nicolás Zaulbrout a otro bienestar.

Báscula completa — 1/c 8-12 horas.



# ATTACHMENT J

[CERT.GEOTEXT VER]







HONEY & Honey
Now serving the best traditional cuisine
Ecuadorian Braised Goat Stew
Shrimp Stew
Chicken Soup
Grilled Steak
Ecuadorian Fried Pork Stew
Ecuadorian Fruit Drink
Beef Tongue in Sauce
Roasted Pork Leg
Ecuadorian Braised Chicken Stew
Tenderloin with Rice and mixed vegetables
Round out your meak with the best desserts
Peach Cake
Strawberry Cheesecake
Swiss Roll Cake
Quiche Lorraine
Soaked Sponge Cake
Moist Chocolate Cake
Apple Pie
Puff Patry Meringue Cake
CARRY-OUT AND DELIVERY 24 53 466
Tel: 3330 080
Tel: 3319 098
Tel: 3802 152
Tel: 3250 024

Shrimp Stew







[CERT.GEOTEXT VER]

GEOTEXT
Translations

translations@geotext.com
wwww.geotext.com

| STATE OF NEW YORK | ) | |
|---|---|---|
| ESTADO DE NUEVA YORK | ) | ss |
| | ) | |
| COUNTY OF NEW YORK | ) | |
| CONDADO DE NUEVA YORK | ) | |

### CERTIFICATION/
### CERTIFICACIÓN

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English of the attached document.

Por la presente certifico que la traducción adjunta de español a inglés es, a mi leal saber y entender, traducción fiel y exacta del documento adjunto.

Ken Hetzel, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me/Suscrito y jurado ante mí

this 31st day of December, 20 12 .

a los 31 días del mes de December de 20 12 .

KRISTEN DUFFY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DU6121852
Qualified in Queens County
My Commission Expires January 31, 2013

New York
t: +1.212.631.7432

London
t: +44.20.7553.4100

Washington, D.C.
t: +1.202.828.1267

Paris
t: +33.1.42.68.51.47

Chicago
t: +1.312.242.3756

Stockholm
t: +46.8.463.11.87

Houston
t: +1.713.353.3909

Frankfurt
t: +49.69.7593.8434

San Francisco
t: +1.415.576.9500

Hong Kong
t: +852.2159.9143

# ANEXO J











# ATTACHMENT K

[initials]

**ACCOUNT STATEMENT**          [logo:] GANADOLAR
**"Ganadolar" [Interest-Bearing Account]**   [illegible]

[logo:] **BANCO PICHINCHA**,
A Bank you can Trust.

Main Office: Av. Amazonas 4560 y Pereira
Tax ID No. 1790010937001
Telephone: 2980 980
Quito, Ecuador

**Page 1 of 2**

ADVISOR: OROZCO PICO, MARITZA-ALEXANDRA

AGENCY TELEPHONE: 3285172 Ext.

EMAIL: morozco@pichincha.com

**GUERRA BASTIDAS ALBERTO**
**ACCOUNT:** ███████0861
AZUNO S52-55, JOSE BARREIRO/SECTOR BRAZILIA 1 Y 2,
URB. JULIO MATOVELLE
QUITO                52 D  16-4R
CYCLE: JAN 1              SEQ.: 66-000358

**Citizen ID/Tax ID:** ████████

[right margin:] [advertisement]

**SPECIAL TAXPAYER - INTERNAL REVENUE SERVICE (SRI) RESOLUTION 5368 OF JUNE 2, 1995**

| | | | |
|---|---|---|---|
| SRI AUTHORIZATION: | 1106572277 | VALID UNTIL: | JAN 31, 2010 |
| INVOICE No.: | 053-003-0079610 | TYPE OF ISSUANCE: ORIGINAL | |
| OFFICE: | EL INCA | | |
| ADDRESS: AV 6 DE DICIEMBRE | | | |
| TAXABLE INCOME 12% | 0.00 | V.A.T. COLLECTED: | 0.00 |
| TAXABLE INCOME 0% | 2.26 | V A.T. COLLECTED: | 0.00 |

| RECONCILIATION | | COMPARATIVE CHART - RECONCILIATION | |
|---|---|---|---|
| DATE OF LAST STATEMENT: | 12-04-2009 | | |
| DATE OF THIS STATEMENT: | 01-04-2010 | | |
| PREVIOUS BALANCE | ████ | | |
| + DEPOSITS/CREDITS     (5) | ████ | | ☐ Previous Balance |
| - CHECKS/DEBITS     (25) | ████ | | ☐ Deposits/Credits |
| + INTEREST FOR THE PERIOD | ████ | | ■ Checks/Debits |
| CURRENT BALANCE | ████ | | ■ Current Balance |
| AVERAGE CASH BALANCE | ████ | MONTHLY ACCOUNT ACTIVITY | |

**ACTIVITY**

| DATE | OFFICE | DOC  NO | DESCRIPTION | Debit | Credit | Balance |
|---|---|---|---|---|---|---|
| DEC 10 | 197 | 897006328 | INTERBANK PAYMENT SYSTEM MIN  OF ECONOMY CHECKING ACCT | | 1,932 00 | |
| DEC 11 | 108 | 898606806 | DEPOSIT | | 10,000 00 | |
| DEC 11 | 197 | 900207793 | INTERBANK PAYMENT SYSTEM MIN  OF ECONOMY CHECKING ACCT | | 429 33 | |

Unless written notice of any discrepancy is received within 30 days, your acceptance of this account statement is presumed.

**PICHINCHA SERVICES**
**Sierra Region (02) 2-999-999**
**Costa Region 1700-800-800**
**Austro Region (07) 2-848-888**

• See balances and activity
• Transfers
• Bank emergencies
  (blocks and restrictions)

**With just one call… an entire bank at your service.**
• Interest Rates
• Visa, Diners Club and
  MasterCard Inquiries
• Home delivery of check books
  and debit card

[initials]

[CERT.GEOTEXT:VER]

**ACCOUNT STATEMENT**
"Ganadolar" [Interest-Bearing Account]

[logo:] GANADOLAR
[illegible]

[logo:] **BANCO PICHINCHA**
A Bank you can Trust.

Main Office: Av. Amazonas 4560 y Pereira
Tax ID No. 1790010937001
Telephone: 2980 980
Quito, Ecuador

**GUERRA BASTIDAS ALBERTO**
**ACCOUNT:** ████ | ████ **0861**
**Citizen ID/Tax ID** ████████   CYCLE: JAN 1   SEC : 66-000358

Page 2 of 2

## ACCOUNT ACTIVITY

| DATE | OFFICE | DOC. NO. | DESCRIPTION | DEBIT | CREDIT | BALANCE |
|------|--------|----------|-------------|-------|--------|---------|
| ███ | █ | ███ | ████████ | █ | ██ | █ |
| DEC 23 | 134 | 930170609 | DEPOSIT | | 1,000.00 | █ |
| | | | | | | |
| | | | | | | |

Unless written notice of any discrepancy is received within 30 days, your acceptance of this account statement is presumed.

**PICHINCHA SERVICES**
Sierra Region: (02) 2-999-999
Costa Region: 1700-800-800
Austro Region: (07) 2-848-888

• See balances and activity
• Transfers
• Bank emergencies
  (blocks and restrictions)

**With just one call… an entire bank at your service.**
• Interest Rates
• Visa, Diners Club and
  MasterCard Inquiries

• Home delivery of check books
  and debit card

[initials]

[CERT.GEOTEXT:VER]



translations@geotext.com
www.geotext.com

| STATE OF NEW YORK | ) | |
|---|---|---|
| ESTADO DE NUEVA YORK | ) | ss |
| | ) | |
| COUNTY OF NEW YORK | ) | |
| CONDADO DE NUEVA YORK | ) | |

### CERTIFICATION/
### CERTIFICACIÓN

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English of the attached document.

Por la presente certifico que la traducción adjunta de español a inglés es, a mi leal saber y entender, traducción fiel y exacta del documento adjunto.

Ken Hetzel, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me/Suscrito y jurado ante mí

this __31st__ day of _December_, 20 _12_ .

a los __31__ días del mes de _December_ de 20 _12_ .

KRISTEN DUFFY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DU6121852
Qualified in Queens County
My Commission Expires January 31, 2013

New York
t: +1.212.631.7432

London
t: +44.20.7553.4100

Washington, D.C.
t: +1.202.828.1267

Paris
t: +33.1.42.68.51.47

Chicago
t: +1.312.242.3756

Stockholm
t: +46.8.463.11.87

Houston
t: +1.713.353.3909

Frankfurt
t: +49.69.7593.8434

San Francisco
t: +1.415.576.9500

Hong Kong
t: +852.2159.9143

# ANEXO K

**ESTADO DE CUENTA**
Cuenta Ganadolar





**BANCO PICHINCHA**
En confianza.

Matriz: Av. Amazonas 4560 y Pereira
RUC: 1790010937001
Teléfono: 2980 980
Quito - Ecuador

Página 1 de 2

GUERRA BASTIDAS ALBERTO
CUENTA: ██████████ 0854          3285132 2830986
AZ UNO 853 MZ JOSE MARIA PORTUGAL GUAYAQUIL 2 Y 2 URB. JULIO MATORELLE
QUITO                              BZD 04-45
055-3-1  PMC                       DFC 00000004

C.I./ RUC: ██████████

CONTRIBUYENTE ESPECIAL - RESOLUCION SRI 5368 DEL 2-JUNIO-1995

| AUTORIZACION SRI: | 1106572277 | VALIDO HASTA: | 31/ENE/2010 |
| F.   RA No: | 053-003-0079610 | TIPO DE EMISION: | ORIGINAL |
| OFICINA: | EL  INCA | | |
| DIRECCION: | AV 6 DE DICIEMBRE | | |
| BASE IMPONIBLE 12%: | 0.00 | VALOR IVA COBRADO: | 0.00 |
| BASE IMPONIBLE 0%: | 2.26 | VALOR IVA COBRADO: | 0.00 |

ASESOR: OROZCO PICO, MARITZA-ALEXANDRA
TELEFONO AGENCIA: 3285172 Ext.
EMAIL: morozco@pichincha.com

SERVICIOS
Pagos

### CONCILIACION

| | |
|---|---|
| FECHA ULTIMO CORTE (FACTURA) | 04-12-2009 |
| FECHA DE ESTE CORTE (FACTURA) | 04-01-2010 |
| SALDO ANTERIOR | |
| + DEPOSITOS / CREDITOS | (5) |
| - CHEQUES / DEBITOS | (25) |
| + INTERES PERIODO | |
| SALDO ACTUAL | |
| SALDO PROMEDIO EFECTIVO | |

**CUADRO COMPARATIVO CONCILIACION**

### DETALLE DE MOVIMIENTOS

| FECHA | OFIC | N. DOC | DESCRIPCION | DEBITO | CREDITO | SALD O |
|---|---|---|---|---|---|---|
| 10-DIC | 197 | 897006326 | SP&MIN. ECONOMIA CUENTA CORRI | | 1,932.00 | |
| 11-DIC | 188 | 896605606 | DEPOSITO | | 90,000.00 | 22,911.75 |
| 11-DIC | 197 | 900007793 | SP&MIN. ECONOMIA CUENTA CORRI | 429.33 | | 15,241.09 |

la forma más flexible de pagar

Daremos por recibida su conformidad al presente estado de cuenta, a menos que en 30 días rechazmos su aviso por escrito por algún reparo.

**SERVICIOS DEL PICHINCHA**
Región Sierra (02) 2-999-999
Región Costa 1700-800-800
Región Austro (07) 2-848-888

**Con sólo una llamada... todo un banco a su servicio.**
● Consulta de saldos y movimientos
● Transferencias
● Emergencias bancarias
(bloqueos y prohibiciones)

● Consulta de interés
● Consultes de Visa, Diners Club y MasterCard

● Envío de chequera y tarjeta de débito a domicilio



## ESTADO DE CUENTA
### Cuenta Ganadolar





**BANCO PICHINCHA**
En confianza.

Matriz: Av. Amazonas 4560 y Pereira
RUC: 1790010937001
Teléfono: 2980 980
Quito - Ecuador

GUERRA BASTIDAS ALBERTO
CUENTA: ███████████0861
C.I. / RUC: ██████████   CICLO 1 - ENE   SEC: 06-000058

Página 2 de 2

### DETALLE DE MOVIMIENTOS

| FECHA | OFIC. | N. DOC | DESCRIPCION | DEBITO | CREDITO | SALDO |
|-------|-------|--------|-------------|--------|---------|-------|
| 23-DIC | 134 | 930170609 | DEPOSITO | | 1,000.00 | 15,140.44 |

REF INTERNA 106-PIPOLEPMPEH0930042_NG_SEG_201201_00098544

Daremos por recibida su conformidad al presente estado de cuenta, a menos que en 30 días recibamos su aviso por escrito de algún reparo.

**SERVICIOS DEL PICHINCHA**
Región Sierra (02) 2-999-999
Región Costa 1700-800-800
Región Austro (07) 2-848-888

● Consulta de saldos y movimientos
● Transferencias
● Emergencias bancarias
  (bloqueos y prohibiciones)

**Con sólo una llamada... todo un banco a su servicio.**
● Tasas de interés
● Consultas de Visa, Diners Club
  y MasterCard

● Envío de chequera y
  tarjeta de débito a
  domicilio



# ATTACHMENT L

[initials]

[CERT.GEOTEXT:VER]



# BANCO PICHINCHA C. A.

DATE:            12/24/2009
ROUTING NO.:     33333333
ACCOUNT:         0
CHECK NO.:       0
AMOUNT:          0.00
SEQUENCE:        1 -1 – 550047400
PROCEDURE:       068 – Slips, Cash UIO
USER:            jmontene   10/26/2012   11:19:19 a.m.  (IP:10.0.91.130)

| [logo:]<br>**BANCO PICHINCHA**<br>[illegible] | BANK<br>[illegible] | CURRENCY<br>[illegible] | **DEPOSIT OR PAYMENT IN CASH**<br>[illegible] | |
|---|---|---|---|---|
| **CLIENT OR CARD NUMBER** | | | AMOUNT IN NUMBERS | CENTS |
| ▮ 0 8 [illegible] | | TOTAL CASH | 1,000 | 00 |
| | | BILLS | | |
| | | COINS | | |

NAME: ALBERTO GUERRA

PLACE AND DATE: Quito, December 23, 2009
[illegible]
[illegible]

[illegible stamps]

_____                    _____
Signature                                      CASHIER SIGNATURE AND SEAL


[illegible] _____

[illegible] _____

  CC [illegible]                    3 3 3 3 3 3 3 3 3            3 [illegible]


[initials]

[stamp:] BANCO PICHINCHA C.A.
____[illegible initials]____
Elizabeth Calderón Buitrón
Operations Supervisor
El Condado Agency

[CERT.GEOTEXT:VER]

GEOTEXT
Translations

translations@geotext.com
www.geotext.com

| STATE OF NEW YORK | ) | |
|---|---|---|
| ESTADO DE NUEVA YORK | ) | ss |
| | ) | |
| COUNTY OF NEW YORK | ) | |
| CONDADO DE NUEVA YORK | ) | |

## CERTIFICATION/
## CERTIFICACIÓN

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English of the attached document.

Por la presente certifico que la traducción adjunta de español a inglés es, a mi leal saber y entender, traducción fiel y exacta del documento adjunto.

Ken Hetzel, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me/Suscrito y jurado ante mí

this _31st_ day of _December_, 20_12_.

a los _31_ días del mes de _December_ de 20_12_.

KRISTEN DUFFY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DU6121852
Qualified in Queens County
My Commission Expires January 31, 2013

| New York | Washington, D.C. | Chicago | Houston | San Francisco |
|---|---|---|---|---|
| t: +1.212.631.7432 | t: +1.202.828.1267 | t: +1.312.242.3756 | t: +1.713.353.3909 | t: +1.415.576.9500 |
| London | Paris | Stockholm | Frankfurt | Hong Kong |
| t: +44.20.7553.4100 | t: +33.1.42.68.51.47 | t: +46.8.463.11.87 | t: +49.69.7593.8434 | t: +852.2159.9143 |

# ANEXO L





# BANCO PICHINCHA C. A.

FECHA:          2009/12/24
RUTA:           33333333
CUENTA:         0
# CHEQUE:       0
VALOR:          0.00
SECUENCIA:      1 - 1 - 550047400
PROCESO:        068 - Papeletas Efectivo UIO
USUARIO:        jmontene   2012/10/26  11:19:19   (IP:10.0.91.130)



# ATTACHMENT M

[initials]

[CERT.GEOTEXT:VER]

**ACCOUNT STATEMENT**
"Ganadolar" [Interest-Bearing Account]

[logo:] GANADOLAR
[illegible]

**IB BANCO PICHINCHA**
A Bank you can trust.

Main Office: Av. Amazonas 4560 y Pereira
Tax ID No. 1790010937001
Telephone: 2980 980
Quito, Ecuador

**Page 1 of 2**

**GUERRA BASTIDAS ALBERTO**
ACCOUNT: ████ 7200 ████ 0861   3261132 2830848
KENNEDY
QUITO                                    52 R: 0218
CYCLE: MARCH 1                  SEQ.: 8-000645
**Citizen ID/Tax ID:** ███████

ADVISOR: OROZCO PICO, MARITZA-ALEXANDRA

AGENCY TELEPHONE: 3285172 Ext.

EMAIL: morozco@pichincha.com

---

| **IMPORTANT** |
|---|

**DEAR**: ALBERTO

In accordance with the standard issued by the Ecuadorian National Standards Institute (INEN) with respect to the application of the International System of Units (SI), we hereby remind you that the issue date of checks may be written in letters or in numbers. If said date is written in numbers, it must be done in three numerical groupings, separated by a dash and in a descending fashion from highest to lowest, that is, year, month, day. For example: 2009-11-25. Nevertheless, the date format cannot be considered a defect of form that would warrant return of a check.

[right margin:] [advertisement]

| **SPECIAL TAXPAYER - INTERNAL REVENUE SERVICE (SRI) RESOLUTION 5368 OF JUNE 2, 1995** | |
|---|---|
| SRI AUTHORIZATION: 1107871498 | VALID UNTIL: JAN 31, 2011 |
| INVOICE No.: 053-003-0006419 | TYPE OF ISSUANCE: ORIGINAL |
| OFFICE: EL INCA | |
| ADDRESS: AV 6 DE DICIEMBRE | |
| TAXABLE INCOME 12%             0.00 | V.A.T. COLLECTED:                0.00 |
| TAXABLE INCOME 0%              2.26 | V.A.T. COLLECTED:                0.00 |

| **RECONCILIATION** | | **COMPARATIVE CHART - RECONCILIATION** |
|---|---|---|



DATE OF LAST INVOICE:            02-02-2010
DATE OF THIS INVOICE:            04-03-2010
PREVIOUS BALANCE
+ DEPOSITS/CREDITS          (5)
- CHECKS/DEBITS               (21)
+ INTEREST FOR THE PERIOD
CURRENT BALANCE
AVERAGE CASH BALANCE

☐ Previous Balance
☐ Deposits/Credits
☐ Checks/Debits
■ Current Balance

| **ACCOUNT ACTIVITY** | | | | | | |
|---|---|---|---|---|---|---|
| DATE | OFFICE | DOC NO | DESCRIPTION | Debit | Credit | Balance |



| Feb 05 | 120 | 4441838 | DEPOSIT | | 1000 00 | |

Unless written notice of any discrepancy is received within 30 days, your acceptance of this account statement is presumed

PICHINCHA SERVICES
Sierra Region: (02) 2-999-999
Costa Region: 1700-800-800
Austro Region: (07) 2-848-888

**With just one call… an entire bank at your service**
• See balances and activity
• Transfers
• Bank emergencies
  (blocks and restrictions)

• Interest Rates
• Visa, Diners Club and MasterCard Inquiries

• Home delivery of check books and debit card

[initials]

[CERT.GEOTEXT:VER]

**ACCOUNT STATEMENT**
**"Ganadolar" [Interest-Bearing Account]**

[logo:] GANADOLAR

**⟨IB⟩ BANCO PICHINCHA**
A Bank you can trust.
Main Office: Av. Amazonas 4560 y Pereira
Tax ID No. 1790010937091
Telephone: 2980 980
Quito, Ecuador

**Page 2 of 2**

**GUERRA BASTIDAS ALBERTO**
**ACCOUNT:** ████ 7200 ████ 0861
**Citizen ID/Tax ID:** ████████     CYCLE: MARCH 1  SEQ : 8-000645

| ACCOUNT ACTIVITY | | | | | | |
|---|---|---|---|---|---|---|
| DATE | OFFICE | DOC. NO. | DESCRIPTION | DEBIT | CREDIT | BALANCE |
| Feb 12 | 169 | 64005685 | REMITTANCE OF CHECKS ████ | ██ | 1,200 00 | █ |
| Feb 12 | 197 | 64562258 | INTERBANK PAYMENT SYSTEM MIN  OF ECONOMY CHECKING ACCT | | 1,288 11 | |
| | | | | █ | | |
| Feb 26 | 197 | 97709280 | INTERBANK PAYMENT SYSTEM MIN  OF ECONOMY CHECKING ACCT | | 1,434 06 | |

Unless written notice of any discrepancy is received within 30 days, your acceptance of this account statement is presumed

PICHINCHA SERVICES
Sierra Region: (02) 2-999-999
Costa Region: 1700-800-800
Austro Region: (07) 2-848-888

**With just one call… an entire bank at your service.**
• See balances and activity
• Transfers
• Bank emergencies
  (blocks and restrictions)

• Interest Rates
• Visa, Diners Club and MasterCard
  Inquiries

• Home delivery of check books and
  debit card

[initials]

[CERT.GEOTEXT:VER]

GEOTEXT
Translations

translations@geotext.com
www.geotext.com

| STATE OF NEW YORK | ) | |
| ESTADO DE NUEVA YORK | ) | ss |
| | ) | |
| COUNTY OF NEW YORK | ) | |
| CONDADO DE NUEVA YORK | ) | |

## CERTIFICATION/
## CERTIFICACIÓN

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English of the attached document.

Por la presente certifico que la traducción adjunta de español a inglés es, a mi leal saber y entender, traducción fiel y exacta del documento adjunto.

Ken Hetzel, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me/Suscrito y jurado ante mí

this _31st_ day of _December_, 20 _12_ .

a los _31_ días del mes de _December_ de 20 _12_ .

KRISTEN DUFFY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DU6121852
Qualified in Queens County
My Commission Expires January 31, 2013

New York
t: +1.212.631.7432

London
t: +44.20.7553.4100

Washington, D.C.
t: +1.202.828.1267

Paris
t: +33.1.42.68.51.47

Chicago
t: +1.312.242.3756

Stockholm
t: +46.8.463.11.87

Houston
t: +1.713.353.3909

Frankfurt
t: +49.69.7593.8434

San Francisco
t: +1.415.576.9500

Hong Kong
t: +852.2159.9143

# ANEXO M



## ESTADO DE CUENTA
### Cuenta Ganadolar



 **BANCO PICHINCHA**
En confianza.

Matriz: Av. Amazonas 4560 y Pereira
RUC: 1790010937001
Teléfono: 2980 980
Quito - Ecuador

**GUERRA BASTIDAS ALBERTO**
**CUENTA:** ████7200 / ████0861

KENNEDY
QUITO
CICLO 1 MAR

3261132 2830848

52 R: 0218
SEC: 8-000665

**Página 1 de 2**

ASESOR: OROZCO PICO, MARITZA-ALEXANDRA
TELEFONO AGENCIA: 3285172 Ext.
EMAIL: morozco@pichincha.com

**C.I. / RUC:** ████

---

### I M P O R T A N T E

**ESTIMADO: ALBERTO**

De acuerdo a la norma emitida por el Instituto Ecuatoriano de Normalización INEN, respecto a la aplicación del Sistema Internacional de Unidades (SI), nos permitimos recordarle que la fecha de emisión de los cheques puede escribirse en letras o en números. En caso de hacerlo en números, debe realizarse en tres agrupaciones numéricas, separadas por un guión y en forma descendente de mayor a menor, es decir, año, mes, día. Ejemplo: 2009-11-25. Sin embargo, el formato de escritura de la fecha no podrá considerarse como defecto de forma para la devolución de un cheque.

| CONTRIBUYENTE ESPECIAL - RESOLUCION SRI 5368 DEL 2-JUNIO-1995 | | | |
|---|---|---|---|
| AUTORIZACION SRI: 1107871498 | VALIDO HASTA: | 31/ENE/2011 | |
| FACTURA No: 053-003-0006419 | TIPO DE EMISION: | ORIGINAL | |
| OFICINA: EL INCA | | | |
| DIRECCION: AV 6 DE DICIEMBRE | | | |
| BASE IMPONIBLE 12%: | 0.00 | VALOR IVA COBRADO: | 0.00 |
| BASE IMPONIBLE 0%: | 0.00 | VALOR IVA COBRADO: | 0.00 |

### C O N C I L I A C I O N

| | |
|---|---|
| FECHA ULTIMO CORTE (FACTURA) | 02-02-2010 |
| FECHA DE ESTE CORTE (FACTURA) | 04-03-2010 |
| SALDO ANTERIOR | |
| + DEPOSITOS / CREDITOS | (5) |
| - CHEQUES / DEBITOS | (21) |
| + INTERES PERIODO | |
| SALDO ACTUAL | |
| SALDO PROMEDIO EFECTIVO | |

**CUADRO COMPARATIVO CONCILIACION**

☐ Saldo Anterior
☐ Dep / Créd
☐ Cheq / Déb
☐ Saldo Actual

**SERVICIOS**

ASISTENCIA
ODONTOLOGICA
FAMILIAR

Llame al:

Sierra.
(02) 2 265 046

Costa.
(04) 2 596 209

CUANDO
TU FAMILIA
ESTÁ
TRANQUILA,
TIENES UNA
VIDA FELIZ.

---

### D E T A L L E   D E   M O V I M I E N T O S

| FECHA | OFIC. | N. DOC | DESCRIPCION | DEBITO | CREDITO | SALD 0 |
|---|---|---|---|---|---|---|
| 05-FEB | 120 | 44411838 | DEPOSITO | | 1,000.00 | 16,871.54 |

Daremos por recibida su conformidad al presente estado de cuenta, a menos que en 30 días recibamos su aviso por escrito de algún reparo.

**SERVICIOS DEL PICHINCHA**
Región Sierra (02) 2-999-999
Región Costa 1700-800-800
Región Austro (07) 2-848-888

**Con sólo una llamada... todo un banco a su servicio.**
• Consulta de saldos y movimientos
• Transferencias
• Emergencias bancarias
  (bloqueos y prohibiciones)

• Tasas de interés
• Consultas de Visa, Diners Club
  y MasterCard

• Envío de chequera y
  tarjeta de débito a
  domicilio



## ESTADO DE CUENTA
### Cuenta Ganadolar



**BANCO PICHINCHA**
En confianza.

Matriz: Av. Amazonas 4560 y Pereira
RUC: 1790010937001
Teléfono: 2980 980
Quito - Ecuador

GUERRA BASTIDAS ALBERTO
CUENTA: ███████0661
C.I. / RUC: ██████ - CICLO 1 - MAR    SEC: B-000665

Página 2 de 2

### DETALLE DE MOVIMIENTOS

| FECHA | OFIC. | N. DOC | DESCRIPCION | DEBITO | CREDITO | SALDO |
|-------|-------|--------|-------------|--------|---------|-------|
| 12-FEB | 159 | 64005665 | REMESA CHEQUES | | 1,200.00 | 17,271.54 |
| 12-FEB | 197 | 64562358 | SPI-MIN. ECONOMIA CUENTA CORRI | | 1,388.11 | 18,659.65 |
| 26-FEB | 197 | 97709280 | SPI-MIN. ECONOMIA CUENTA CORRI | | 1,434.06 | 18,393.06 |

Daremos por recibida su conformidad al presente estado de cuenta, a menos que en 30 días recibamos su aviso por escrito de algún reparo.

**SERVICIOS DEL PICHINCHA**
Región Sierra (02) 2-999-999
Región Costa 1700-800-800
Región Austro (07) 2-848-888

Con sólo una llamada... todo un banco a su servicio.
● Consulta de saldos y movimientos
● Transferencias
● Emergencias bancarias
(bloqueos y prohibiciones)

● Tasas de interés
● Consultas de Visa, Diners Club
y MasterCard

● Envío de chequera y
tarjeta de débito a
domicilio



# ATTACHMENT N

[CERT.GEOTEXT:VER]



# BANCO PICHINCHA C. A.

DATE:              02/08/2010
ROUTING NO.:       33333333
ACCOUNT:           0
CHECK NO.:         0
AMOUNT:            0.00
SEQUENCE:          64 - 1 - 771485600
PROCEDURE:         068 - Slips, Cash UIO
USER:              jmontene   10/26/2012   11:06:53 a.m.  (IP:10.0.91.130)

| [logo:] **BANCO PICHINCHA** [illegible] | BANK [illegible] | CURRENCY [illegible] | **DEPOSIT OR PAYMENT IN CASH** [illegible] | |
|---|---|---|---|---|
| **CLIENT OR CARD NUMBER** ▉ *0 8 6 1* | | | AMOUNT IN NUMBERS | CENTS |
| | | TOTAL CASH | *1,000* | - |
| NAME: *ALBERTO GUERRA* | | BILLS | - | |
| PLACE AND DATE: *Quito,  February 5, 2010* | | COINS | / | |
| [illegible] [illegible]            [illegible stamps] _____ Signature [illegible] [illegible] **1716841547** [illegible] | | | _____ CASHIER SIGNATURE AND SEAL | |
| | | 33333333        35 | | |

[initials]

[stamp:] BANCO PICHINCHA C.A.
[illegible initials]
Elizabeth Calderón Buitrón
Operations Supervisor
El Condado Agency

[CERT.GEOTEXT:VER]

PUBLICLY FILED
REDACTED VERSION

**GEOTEXT**
Translations

translations@geotext.com
www.geotext.com

| STATE OF NEW YORK | ) | |
|---|---|---|
| ESTADO DE NUEVA YORK | ) | ss |
| | ) | |
| COUNTY OF NEW YORK | ) | |
| CONDADO DE NUEVA YORK | ) | |

## CERTIFICATION/
## CERTIFICACIÓN

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English of the attached document.

Por la presente certifico que la traducción adjunta de español a inglés es, a mi leal saber y entender, traducción fiel y exacta del documento adjunto.

Ken Hetzel, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me/Suscrito y jurado ante mí

this _31st_ day of _December_, 20 _12_ .

a los _31_ días del mes de _December_ de 20 _12_ .

KRISTEN DUFFY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DU6121852
Qualified in Queens County
My Commission Expires January 31, 2013

New York
t: +1.212.631.7432

Washington, D.C.
t: +1.202.828.1267

Chicago
t: +1.312.242.3756

Houston
t: +1.713.353.3909

San Francisco
t: +1.415.576.9500

London
t: +44.20.7553.4100

Paris
t: +33.1.42.68.51.47

Stockholm
t: +46.8.463.11.87

Frankfurt
t: +49.69.7593.8434

Hong Kong
t: +852.2159.9143

# ANEXO N





# BANCO PICHINCHA C. A.

FECHA:        2010/02/08
RUTA:         33333333
CUENTA:       0
# CHEQUE:     0
VALOR:        0.00
SECUENCIA:    64 - 1 - 771485600
PROCESO:      068 - Papeletas Efectivo UIO
USUARIO:      jmontene  2012/10/26  11:06:53   (IP:10.0.91.130)

# ATTACHMENT O

# Metadata Fields

**AUTHOR: User**
**CORRFINALFILEEXTENSION: .DOC**
**CUSTODIANNAME: Guerra, Alberto**
**DOCDATE: 10/20/2009**
**DOCTYPE: EDOC**
**LOGDOCID: 365925**
**MSFILE_AUTHOR: User**
**MSFILE_CREATIONTIME: 10/20/2009 07:24:00**
**MSFILE_LAST_SAVED_BY: User**
**MSFILE_LASTSAVETIME: 10/20/2009 07:24:00**
**MSFILE_SUBJECT:**
**NUMPAGES: 4**
**RECIP:**
**TITLE: PROVIDENCIA TEXACO.DOC [TEXACO RULING.DOC]**

[initials]

OFFICE OF THE PRESIDENT OF THE PROVINCIAL COURT OF JUSTICE OF SUCUMBIOS. Nueva Loja, October 20, 2009, at 3:45 p.m. WHEREAS: In my capacity as Acting President of the Provincial Court of Justice of Sucumbíos, pursuant to the court order issued by the Provincial Court of Justice of Sucumbíos at 10:00 a.m. on September 10, 2009, as well as the ruling it issued at 3:00 p.m. on October 14, 2009, I hereby assume jurisdiction over case No. 002-2003 filed by María Aguinda, Angel Piguaje, et al. against Chevron Texaco Corporation for environmental damage. The Court takes notice of the current case status and orders the incorporation into the case file of the filings and other documents found at pages 158,134 et seq. immediately following the ruling issued at 9:30 a.m. on August 28 of this year, found at pages 158,132 to 158,133. Addressing them in the chronological order they were presented, the following is decreed: 1) In the event that occurrences showing a lack of courtesy and respect between the litigants' attorneys took place, as alleged by plaintiffs' counsel in a filing received by the Clerk to the President of the Court at 5:00 p.m. on September 2, 2009, this Court would ask the parties' attorneys to adhere to Article 2 of the Judiciary Act. 2) As it pertains to the brief filed with the Clerk of this Office on September 2, 2007 at 5:02 p.m. by Attorney Pablo Fajardo Mendoza, plaintiffs' counsel, the Court determines that the ruling on this matter be followed, which refers the petition to the provisions of the order issued on August 28, 2009 at 9:30 a.m. 3) Regarding the prayer contained in the brief filed by the plaintiff's attorney at 5:04 p.m. on September 2, 2009, the entirety of its contents, in both form and substance, shall be taken into consideration for the corresponding purposes to be specified at the appropriate time in the proceedings. 4) With regard to the brief filed by the plaintiffs' attorney at 5:06 p.m. on September 2, 2009, its content shall be taken into consideration at the appropriate time in the proceedings. 5) With respect to the constitutional, legal, and doctrinal analysis set forth in the brief filed by Dr. Adolfo Callejas Ribadeneira, in the capacity in which he appears, with the Clerk to the President of the Court on September 2, 2009, at 5:30 p.m., the Court states that, when ruling on the matter, the relevant constitutional and legal principles shall be applied as therein requested. 6) [As to] the brief filed by Dr. Adolfo Callejas Ribadeneira, counsel for the defendant, and received by the Clerk to the President of the Court on September 2, 2009, at 5:31 p.m., requesting supplementation and clarification of the rulings of July 9, 2009 at 2:00 p.m. and August 3, 2009 at 4:00 p.m., as well as the revocation of paragraphs 11) and 3) of the August 28, 9:30 a.m. ruling, the Court finds these rulings to be clear and unequivocal; they do not fail to address issues in dispute. Nonetheless, it must be made clear that the matters to which the pleading refers may give rise to specific controversies on which [the Court] must

rule at the time final judgment is issued. For these reasons, the request for supplementation and clarification is denied, as is the requested revocation. 7) As it pertains to the brief received at the office of the Clerk to the President of the Court on September 2 at 5:32 p.m., signed by the defendant's attorney, [the Court] states that its letter and intent shall be taken into consideration in a timely manner. 8) With respect to the content of the briefs received on September 2, 2009, at 5:33 p.m. and 5:34 p.m., filed by counsel for the defendant company, it is necessary to point out that in this regard it is pertinent to follow the provisions of Article 291 of the Code of Civil Procedure, which states: "Once revocation, clarification, modification, or supplementation is granted or denied, it may not be requested a second time," a legal requirement assumed to be met in this case according to the text of the request, as well as the last prior ruling relating to this issue. The requested revocation is therefore denied. 9) As it pertains to the brief received by the Clerk to the President of the Court at 5:35 p.m. on September 2, 2009, and at the request of counsel for the defendant, the annex referenced therein shall be incorporated into the proceedings in order to document its existence, as requested. 10) It is ordered that the contents of the brief filed by counsel for the defendant on September 2, 2009, at 5:36 p.m. be taken into consideration. 11) With regard to the brief filed on September 2, 2009, at 5:38 p.m. by Dr. Adolfo Callejas, counsel for the defendant, and based on the provisions of Article 291 of the Code of Civil Procedure, the requested supplementation is denied. 12) Attending to the request made by expert Engineer Gerardo Barros in a brief filed with the Clerk to the President of the Court on September 9, 2009, at 11:44 a.m., official letters are directed to be sent as specifically indicated therein to the National Hydrocarbons Office, the Office of the President of Petroproducción, DINAPAH (Ministry of the Environment), and the PEPDA Project (Affiliate of Petroproducción) of the city of Quito, [and] such official letters must include a certified copy of the documents found at pages 158,184 through 158,182 [sic], in order to avoid any confusion. A one-time extension is granted as to the deadline for delivery of the expert report to be generated by the aforementioned professional for a period of thirty days beginning on the date notice is given of this ruling. Take note that the judicial mailbox stated by the appearing party is No. 97. Lastly, take note of the schedule for field visits set forth by said expert. 13) With regard to the brief filed by Dr. Adolfo Callejas, counsel for the defendant, on September 11, 2009, at 5:50 p.m., it should be noted that Articles 346 and 1014 of the Code of Civil Procedure strictly set forth the only substantive requirements common to all trials and levels of court, the infringement or violation of which entails the annulment of the proceedings. The case record reflects no act or acts of the judge previously presiding over the matter, Dr. Juan Núñez, that give rise to any of the grounds [for annulment] set forth in the aforementioned procedural rules, and for this reason the Court denies the specific request to declare the nullity of each

[initials]

[CERT.GEOTEXT]

and every one of the actions taken by the aforementioned ex-judge of this case. 14) The request seeking an extension of the deadline for submitting the report on the translation of the book "Premier of Oil and Gas Production" [sic], filed by expert Francisco Javier Ortega on September 14, 2009, at 3:55 p.m., is granted on this occasion for a period of ten days, beginning on the date notice of this ruling is given. 15) Attending to the request by counsel for the defendant, Dr. Adolfo Callejas, contained in the brief filed with the Clerk to the President of the Court on September 16, 2009, at 10:30 a.m., it is granted, and therefore the Court orders the certified copy specified in the request to be provided, including its attachments. 16) Pablo Armando Gordón Rosero, General Manager of the Company CORPLABEC S.A., through briefs filed on September 16, 2009, requests that the report regarding the analysis of the soil and water samples, considered "characteristic samples" be [acknowledged as] filed; that is, the obligation be deemed as fulfilled, and being that it cannot be free of charge, [he requests that] the defendant Corporation be ordered to comply with its obligation to that company; the request is accepted, and consequently, said party is ordered to fulfill its obligation to the aforementioned company within a period of eight days. Note shall be taken of judicial mailbox No. 144 for notifications to the aforementioned expert, and the authority granted to the attorneys representing him, Drs. Carlos Aguinda and Sofía Pazmiño, shall be recognized. 17) Dr. Adolfo Callejas, counsel for the defendant, in a brief filed on September 17, 2009, at 5:43 p.m., insists that the procedural acts made in this case by the judge who previously presided over this matter, Dr. Juan Núñez, be declared null; this issue has already been ruled upon herein. 18) With regard to the request made by Dr. Adolfo Callejas in briefs filed with the Clerk to the President of the Court as of 9:40 a.m. on September 18, 2009, relating to the reports issued by expert Marcelo Muñoz Herrería and concerning the Guanta Central, Auca Sur, Yuca Central, Culebra 01, Auca Central, and Yulebra Stations, and Auca 17 and Auca 19 Wells, documents which can be found at pages 158,470 through 158,709, as to the challenge they express and set forth therein, these shall be taken into consideration at the appropriate time in the proceedings. As for the claim that there is an essential error, the Court dissents from the legal opinion of the judge who previously presided over the matter, Dr. Juan Núñez, who admitted petitions pertaining thereto, and without this being any indication of a future outcome, the undersigned Judge, before issuing a ruling regarding the alleged essential error, orders the opposing party to be served with the contents of each and every one of those requests so it may respond to them within a period of ten days. 19) The statements made by the plaintiff in its brief filed with the Clerk to the President of the Court on September 18, 2009, at 5:00 p.m. shall be taken into consideration at the appropriate time in the proceedings. 20) [As to] the September 24, 2009, 11:55 a.m. brief filed

[initials]

[CERT.GEOTEXT]

by expert Biologist Jorge Bermeo Sarmiento, which primarily requests an extension of the deadline for submitting his report, he is granted a period of 20 days beginning on the date notice of this ruling is given. 21) Turning to the request made by Engineer Cecilia Morales B., Manager of Laboratorios ANNCY, in a memorandum received by the Clerk to the President of this Court on October 1, 2009, at 8:50 a.m., the Court orders the defendant company to pay invoice No. 4051, in the amount of USD $31,576.16, to said professional or her representative within a period of ten days, beginning on the date when notice of this ruling is given. 22) Expert Engineer Gerardo Barros's petition, filed with the Clerk to the President of this Court on October 1, 2009, at 8:50 a.m., is dismissed because it has already been decided as per section 12) of this ruling. 23) The contents of the brief filed by the plaintiffs' counsel, Attorney Pablo Fajardo, received by the Clerk to the President of this Court on October 1, 2009, at 10:15 a.m., shall be considered in a timely manner. 24) Counsel for the defendant company, in a brief filed on September 28, 2009, at 8:25 a.m., moves for recusal of Dr. Juan Núñez Zanabria, asking that he be indefinitely precluded from hearing and acting in this matter. This issue, having already been ruled on by the Provincial Court of Justice of Sucumbíos, as referenced at the beginning of this ruling, does not warrant opinion from this Court, which has now taken up this matter. 25) The petition contained in the brief received by the Clerk to the President of this Court on October 2, 2009, at 8:25 a.m., in which counsel for the defendant requests a declaration of annulment of each and every act in which former judge, Dr. Juan Núñez, intervened, has already been addressed in section 13) of this ruling, and therefore there is no need for any further ruling thereupon. Notice to be given. It is so ordered.


Atty. Nicolás Zambrano Lozada

ACTING PRESIDENT



PUBLICLY FILED
REDACTED VERSION

GEOTEXT
Translations

translations@geotext.com
www.geotext.com

STATE OF NEW YORK           )
ESTADO DE NUEVA YORK        )        ss
                            )
COUNTY OF NEW YORK          )
CONDADO DE NUEVA YORK       )

## CERTIFICATION/
## CERTIFICACIÓN

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English of the attached document.

Por la presente certifico que la traducción adjunta de español a inglés es, a mi leal saber y entender, traducción fiel y exacta del documento adjunto.

Ken Hetzel, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me/Suscrito y jurado ante mí

this _31st_ day of _December_, 20 _12_.

a los _31_ días del mes de _December_ de 20 _12_.

KRISTEN DUFFY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DU6121852
Qualified in Queens County
My Commission Expires January 31, 2013

New York
t: +1.212.631.7432

Washington, D.C.
t: +1.202.828.1267

Chicago
t: +1.312.242.3756

Houston
t: +1.713.353.3909

San Francisco
t: +1.415.576.9500

London
t: +44.20.7553.4100

Paris
t: +33.1.42.68.51.47

Stockholm
t: +46.8.463.11.87

Frankfurt
t: +49.69.7593.8434

Hong Kong
t: +852.2159.9143

# ANEXO O

# Metadata Fields

**AUTHOR: Usuario**
**CORRFINALFILEEXTENSION: .DOC**
**CUSTODIANNAME: Guerra, Alberto**
**DOCDATE: 2009/10/20**
**DOCTYPE: EDOC**
**LOGDOCID: 365925**
**MSFILE_AUTHOR: Usuario**
**MSFILE_CREATIONTIME: 2009/10/20 07:24:00**
**MSFILE_LAST_SAVED_BY: Usuario**
**MSFILE_LASTSAVETIME: 2009/10/20 07:24:00**
**MSFILE_SUBJECT:**
**NUMPAGES: 4**
**RECIP:**
**TITLE: PROVIDENCIA TEXACO.DOC**



PRESIDENCIA DE LA CORTE PROVINCIAL DE JUSTICIA DE SUCUMBIOS.- Nueva Loja, octubre 20 del 2009.- las 15H45.- VISTOS : En mi calidad de Presidente Subrogante de la Corte Provincial de Justicia de Sucumbíos, atendiendo el auto resolutorio expedido por la Sala de la Corte Provincial de Justicia de Sucumbíos a las 10H00 de septiembre 10 del 2009 así como de la providencia emitida por la misma a las 15H00 de octubre 14 del 2009, Avoco conocimiento de la causa signada con el No. 002-2003 que por daños ambientales sigue María Aguinda, Angel Piguaje y otros, en contra de la compañía Chevron Texaco Corporation, advirtiendo su estado procesal y a continuación de la providencia expedida a las 9h30 del 28 de agosto del cursante año, la que obra de fojas 158.132 a fojas 158.133, se dispone tener por incorporado a los autos los escritos y más instrumentos que obran de folios 158.134 en adelante. Que en lo pertinente, proveyendo los mismos en atención a su cronológica presentación se dispone: 1) De haberse provocado hechos que dicen de la falta de consideración y respeto entre los abogados de las partes litigantes conforme se insinúa en el escrito presentado por el procurador común de los demandantes, el que fuera recibido en secretaría de presidencia a las 17h00 de septiembre 2 del 2009, éste operador de justicia se permite insinuar a los señores abogados de las partes se permitan advertir lo prescrito por el Art. 2 del Código Orgánico de la Función Judicial. 2) En lo atinente al escrito presentado en la Secretaría de esta Presidencia el 2 de septiembre del 2007 a las 17h02 por el abogado Pablo Fajardo Mendoza, procurador judicial de los demandantes, se dispone estar a lo previsto sobre el particular que refiere su petición a lo previsto en providencia de 28 de agosto del 2009 a las 9h30. 3) Atendiendo el petitorio constante del escrito presentado por el abogado de los accionantes a las 17h04 de septiembre 2 del 2009 se dispone tener en cuenta el total contenido de su texto, en fondo y forma, para los fines consiguientes que se advertirán en el momento procesal oportuno. 4) En lo atinente al escrito presentado por el abogado de la parte demandante a las 17h06 de septiembre 2 del 2009 se prevé tener en cuenta su contenido en el momento procesal oportuno. 5) Respecto del análisis constitucional, legal y doctrinario que se expone en escrito que el Dr. Adolfo Callejas Ribadeneira en la calidad que comparece presenta en la Secretaría de la Presidencia el 2 de septiembre del 2009 a las 17h30 se indica que, al tiempo de resolver la causa se aplicarán los principios constitucionales y legales atinentes al caso conforme así lo solicita. 6) El escrito presentado por el Doctor Adolfo Callejas Ribadeneira, procurador común de la parte demandada, y recibido en secretaria de la Presidencia el 2 de septiembre del 2009 a las 17h31, y de cuyo contexto se solicita la ampliación y aclaración de las providencias de 9 de julio del 2009 a las 14h00 y de 3 de agosto del 2009 a las 16h00; y, adicionalmente, sobre la revocatoria del numeral 11) y numeral 3) de la providencia de 28 de agosto a las 9h30, esta Presidencia considera que las mismas son claras y en modo alguno oscuras; que por ellas tampoco se omiten expresar pronunciamientos con respecto a puntos controvertidos; no obstante, es preciso aclarar que los temas a los que el petitorio se remite, bien pueden constituir incidentes procesales con respecto de los cuales deberá



haber pronunciamiento al momento de expedir sentencia; por lo antes anotado se niega la ampliación y aclaración, así como la revocatoria que se solicita. 7) En lo referente al escrito recibido en Secretaría de la Presidencia el 2 de septiembre a las 17h32, suscrito el mismo por el abogado de la parte demandada se indica que su texto y manifiesto, se tomará en cuenta oportunamente. 8) Con respecto al contenido de los escritos recibidos el 2 de septiembre del 2009 a las 17h33 y 17h34, presentados por el procurador judicial de la compañía demandada, se hace necesario señalar que al efecto es preciso atender lo previsto por el Art. 291 de la Codificación del Código de Procedimiento Civil, misma que textualmente reza: "Concedida o negada la revocación, aclaración, reforma o ampliación, no se podrá pedir por segunda vez", presupuesto jurídico que se infiere cumplido en el caso conforme al texto de la solicitud así como de la providencia última inmediata referente al tema, por lo que se niega la revocatoria solicitada. 9) En lo atinente al escrito recibido en Secretaría de la Presidencia a las 17h35 del 2 de septiembre del 2009 y a solicitud del procurador judicial de la parte demandada, se dispone incorporar al proceso el anexo que se refiere el mismo con el fin de que quede constancia de su existencia como así se solicita. 10) Se dispone tener en cuenta el contenido del escrito presentado por el procurador judicial de la parte demandada el 2 de septiembre del 2009 a las 17h36. 11) En lo atinente al escrito presentado el 2 de septiembre del 2009 a las 17h38 por parte del Dr. Adolfo Callejas, procurador judicial de la parte demandada y en sustento en lo previsto por el Art. 291 de la Codificación del Código de Procedimiento Civil, se deniega la ampliación solicitada. 12) Atendiendo lo solicitado por el perito ingeniero Gerardo Barros en escrito presentado en Secretaría de la Presidencia el 9 de septiembre del 2009 a las 11h44 se dispone oficiar conforme puntualmente lo indica a la Dirección Nacional de Hidrocarburos, Presidencia de Petroproducción, DINAPAH (Ministerio del Ambiente) y al Proyecto PEPDA (Filial Petroproducción) de la ciudad de Quito, debiendo incluirse a los mencionados oficios copia certificada del instrumento que corre de folios 158.184 a 158.182, con fin de evitar confusiones ; por esta sola vez se amplía el plazo de entrega del informe de la experticia a efectuarse por dicho profesional por treinta días a contarse desde la fecha de notificación de la presente providencia. Téngase en cuenta la casilla judicial No. 97 que señala el compareciente y finalmente, tómese en cuenta el cronograma de salidas de campo que refiere dicho perito. 13) En lo que dice relación al escrito suscrito por el Doctor Adolfo Callejas, procurador judicial de la parte demandada  en fecha 11 de septiembre del 2009 a las 17h50, cabe señalar que, la Codificación del Código de Procedimiento Civil por su Art. 346 y 1014 prevé en forma taxativa las causas de solemnidad sustancial comunes a todos los juicios e instancias y cuya transgresión o violación, acarrea la nulidad de la causa. Consta de autos que la actuación o actuaciones del anterior Juez de la causa doctor Juan Núñez, no se hallan incursas en ninguna de las causales que refieren las disposiciones procesales antes anotadas, razón por la cual, se niega la petición concreta referente a que se declare la nulidad de todas

y cada una de las actuaciones realizadas por el ya mencionado ex Juez de la causa. 14) La solicitud tendiente a obtener ampliación de plazo para presentar informe respecto a la traducción del libro Premier Of Oil And Gas Production, que presenta el perito licenciado Francisco Javier Ortega el 14 de septiembre del 2009 a las 15h55, admitiéndolo por esta vez, se lo concede por el término de diez días contados a partir de la notificación de la presente providencia. 15) Atendiendo la petición del procurador judicial de la parte demandada Doctor Adolfo Callejas y constante en escrito presentado en Secretaría de Presidencia el 16 de septiembre del 2009, a las 10h30, se la admite y por consecuencia se dispone conceder la copia certificada que refiere dicha solicitud así como de sus anexos. 16) Pablo Armando Gordón Rosero, Gerente General de la Empresa CORPLABEC S.A. mediante escritos presentado el 16 de septiembre del 2009, solicita que por presentado el informe referente al análisis de muestras de suelos y aguas consideradas como "muestras testigos" esto es, por satisfecha ya la obligación a la que se comprometiera, no pudiendo ser ésta gratuita, se disponga que la Compañía demanda cumpla su obligación para con dicha empresa, particular que se lo admite y por consecuencia se dispone que dicha parte procesal en el término de ocho días cumpla su obligación con la empresa antes indicada. Se tendrá en cuenta el casillero judicial No. 144 para notificaciones al antes mencionado perito así como se advertirá de la facultad que confiere a sus abogados patrocinadores doctores Carlos Aguinda y Sofía Pazmiño,. 17) El Dr. Adolfo Callejas, procurador judicial de la parte demandada, en escrito de 17 de septiembre del 2009 a las 17h43, insiste se declare la nulidad de las actuaciones procesales en las que dentro de la presente causa interviene el ex Juez de la causa Dr. Juan Núñez, particular que se encuentra anteriormente y al interior de la presente providencia ya proveído. 18) En lo atinente a la solicitud que formula el Doctor Adolfo Callejas mediante escritos presentados en Secretaría de Presidencia a partir de las 9h40 del 18 de septiembre del 2009, relacionadas las mismas a los informes emitidos por el perito Marcelo Muñoz Herrería y atinentes a las Estaciones Guanta Central, Auca Sur, Yuca Central, Culebra 01, Auca Central, Yulebra y Pozos Auca 17 y Auca 19, instrumentos que constan de folios 158.470 a 158.709, en cuanto a la impugnación que por ellos se manifiesta y pronuncia, se dispone tenerlos en cuenta en el momento procesal oportuno. En lo referente a la alegación sobre la existencia de error esencial, esta Presidencia estima que, apartándose del criterio jurídico del ex Juez de la causa Dr. Juan Núñez quien diera curso a solicitudes atinentes a los mismos; y, sin que implique en modo alguno anticipación de criterio, el suscrito Juez y en el caso, previo a emitir pronunciamiento respecto del error esencial solicitado, dispone correr traslado a la contraparte con el total contenido de todas y cada una de dichas solicitudes con fin se pronuncien respecto de ellas dentro del término de diez días. 19) Lo manifestado por la parte actora mediante escrito presentado en Secretaría de esta Presidencia el 18 de septiembre del 2009 a las 17h00, se tomará en cuenta en el momento procesal oportuno. 20) Mediante escrito de 24 de septiembre del 2009 a las 11h55, presentado

por el perito Biólogo Jorge Bermeo Sarmiento, por el cual, en lo principal, solicita ampliación de plazo para la presentación de su informe, se indica que a éste se le concede el plazo de 20 días a partir de la fecha que se notifique la presente providencia. 21) Atendiendo lo solicitado por la Ingeniera Cecilia Morales B. Gerente de Laboratorios ANNCY, en comunicación ingresa a Secretaría de esta Presidencia el 1 de octubre del 2009 a las 8h50, se dispone que la compañía demandada cubra el importe de la factura No. 4051, por el valor de $31,576.16 USD a favor de dicha profesional o su representada, ello dentro del plazo de diez días de notificada la presente providencia. 22) El petitorio del perito Ingeniero Gerardo Barros ingresado a Secretaría de esta Presidencia el 1 de octubre del 2009 a las 8h50, se lo desestima por encontrarse ya proveído en el numeral 12) de la presente providencia. 23) El contenido del escrito presentado por el procurador judicial de la parte demandante, Abogado Pablo Fajardo, recibido en Secretaría de esta Presidencia el 1 de octubre del 2009 a las 10h15, se lo considerará oportunamente. 24) El procurador judicial de la compañía demandada, mediante escrito de 28 de septiembre del 2009 a las 08H25, propone demanda de recusación en contra del doctor Juan Núñez Zanabria, a fin, éste, sea separado definitivamente del conocimiento y sustanciación de la causa. Particular indicado que, por evidenciado ya como efecto de las providencias que ha emitido la Sala de la Corte Provincial de Justicia de Sucumbíos con respecto de las cuales se hace referencia en el encabezado de la presente providencia, no amerita pronunciamiento por parte del actual operador que ha avocado conocimiento del presente proceso. 25) Petitorio constante del escrito recibido en secretaría de esta presidencia el 2 de octubre del 2009 a las 08H25, por el que se solicita por parte del procurador judicial de la parte demandada la declaratoria de nulidad de todas y cada una de las actuaciones procesales en las que ha intervenido el ex juez doctor Juan Núñez, se encuentra ya atendido por el numeral 13) de la presente providencia y sin que por tanto sea necesario pronunciamiento adicional.  Notifíquese y Cúmplase.-


Ab. Nicolás Zambrano Lozada

PRESIDENTE SUBROGANTE

# ATTACHMENT P

[initials]

[CERT.GEOTEXT]

# Metadata Fields

**AUTHOR:** User
**CORRFINALFILEEXTENSION:** .DOC
**CUSTODIANNAME:** Guerra, Alberto
**DOCDATE:** 11/18/2009
**DOCTYPE:** EDOC
**LOGDOCID:** 365931
**MSFILE_AUTHOR:** User
**MSFILE_CREATIONTIME:** 11/18/2009      2:54:00 p.m.
**MSFILE_LAST_SAVED_BY:** User
**MSFILE_LASTSAVETIME:** 11/18/2009      6:54:00 p.m.
**MSFILE_SUBJECT:**
**NUMPAGES:** 7
**RECIP:**
**TITLE:** TEXACO_ORDER (November 23 third).DOC [PROVIDENCIA_TEXACO
(noviembre 23 tercera).DOC]

[initials]

[CERT.GEOTEXT]

OFFICE OF THE PRESIDENT OF THE PROVINCIAL COURT OF JUSTICE OF SUCUMBÍOS. Nueva Loja, November 20, 2009, at 2:40 p.m. In the case No. 002-2003 filed by María Aguinda, Angel Piguaje, et al., against Chevron Corporation for environmental damage, the Court orders that the pleadings and, if applicable, the documentation attached thereto, filed by the parties be added to the case file after the ruling issued at 5:30 p.m. on November 10, 2009. Addressing them in the chronological order in which they were presented, the following is decreed: 1) Admitting as proper the comments pertaining to [his] experience in the subject matter, techniques for video transcription, and the use and handling of audiovisual material in support of the request made by the defendant in its petition filed at 8:32 a.m. on November 13, 2009, the pertinent part of section 3) of the most recent order noted [above], thus setting aside the appointment of the expert set forth therein. Mr. Luís Velasteguí Galarza is appointed for purposes of preparation of the required expert report, who must take charge of his duties on the date of….    at…., and must submit his report within a period of 10 days from the date of his swearing-in.

2) As it pertains to the legal arguments and the factual annexes in support of the request contained in the brief filed with the Clerk of this Office on November 13, 2009, at 5:15 p.m. by counsel for the defendant company, the following is noted: that, ultimately, there is no evidence on the record of the alleged irreparable harm; the presiding judge is not charged with issuing any opinion when proceeding on a verbal and summary case based on only one party's claims that an alleged bias or hostility is widely known or public, of harm having been caused to the integrity of the case as a result of the acts taken on the matter by his predecessor; instead and unless where pertinent as to the grounds for annulment that are set forth and detailed specifically in Articles 346 and 1014 of the Code of Civil Procedure, as it will later be explained; that the claim for annulment of all acts of the former judge, given its nature, should be heard as a motion, and with regard to it or to any other, Article 844 of said Code requires that it be decided at the time when judgment is issued; and, pursuant to Article 845 of the Code of Civil Procedure, an appeal can proceed only with regard to the judgment, reasons for which the request is rejected and the motion for appeal is denied.

3) In attending to the petition contained in the brief filed by counsel for the defendant at 5:20 p.m. on November 13, 2009, and bearing in mind that the principle of good faith and procedural fairness must govern the behavior of all parties to the matter without distinction, who must not even have the skewed intention to discredit their intellectual counterpart, or distort opinions, much less [make] requests for *a priori* evaluations by the judge, inasmuch as statements made as a result thereof could well be taken as an act of hostility or

[initials]

bias, which the presiding judge prefers not to incur out of respect for the bench, the case and the parties thereto, due to which the Court orders that the entire contents of the aforementioned brief be taken into consideration for the pertinent purposes, which shall be advised at the appropriate time in the proceedings.

4) As it pertains to the specific request contained in the brief filed by the defendant by way of its counsel at 5:25 p.m. on the 13th of this month and year, the Court orders and directs the Clerk of the Court to enter said request [into the record].

5) With regards to the request contained in the brief filed by the defendant at 5:30 p.m. on November 13, 2009, and being that the case record reflects that expert translator Mr. Francisco Ortega submitted the translation of the book "Primer of Oil and Gas Production" [*Compendio de Producción de Petróleo y de Gas*] at 5:06 p.m. on October 26, 2009, order No. 12) of the ruling of 5:30 p.m. on November 10, 2009 is amended to indicate the date and time of that submission, and it is therefore ordered that the parties be served with the entirety of said document so they may submit opinions regarding its content or comment on the expert's submission, within a period of 10 days.

6) As it pertains to the content of the brief filed by the defendant at 5:35 p.m. on November 13, 2009, and for the reason so justified, the monetary amounts due to the expert engineer Gerardo Barros are ordered to be deposited so they may be paid to said professional within a period of 15 days.

7) With respect to the legal analysis and opinion set forth in the brief that Dr. Adolfo Callejas Ribadeneira filed, in the capacity in which he appears, with the Clerk to the President of the Court on November 13, 2009, at 5:38 p.m., [the Court] indicates that at the appropriate time in the proceedings, a ruling shall be issued on the motion to commence an investigation regarding the claim that the eight reports by expert Dr. Marcelo Muñóz [sic] contain essential errors.

8) The contents, in form and substance, of the brief filed with the Clerk of the Court by attorney Pablo Fajardo, plaintiffs' counsel, at 5:40 p.m. on November 13 of the present year, as requested, shall be taken into consideration in a timely manner.

9) As it pertains to the discussion in support of the request contained in the brief filed at 5:41 p.m. by plaintiffs' counsel, the presiding judge considers that only the expert or his representative may render such an opinion, and therefore the request is denied.

[initials]