# EXHIBIT E

## AFFIDAVIT OF ADOLFO CALLEJAS RIBADENEIRA

I, Adolfo Callejas Ribadeneira, declare under penalty of perjury under the laws of Ecuador and the United States of America that the following is true and correct:

1. I am over the age of 21, under no disability, and am competent to testify to the matters contained in this affidavit. I am a lawyer by training, an Ecuadorian citizen with the cédula identification number ▇▇▇▇▇▇▇, and a resident of Quito, Ecuador. Since 2003, I have been the lead partner heading the legal team associated with my law firm of Adolfo Callejas & Associates, and lead counsel of record representing Chevron Corporation in the case of Maria Aguinda et al. v. Chevron Corporation, Case No. 002-2003 (the "Aguinda case"), filed in the court now known as the Provincial Court of Justice of Sucumbíos in Lago Agrio, Ecuador, and currently pending on cassation appeal before the National Court of Justice in Quito. I have personal knowledge of the facts set forth in this affidavit.

2. In the summer of 2009, one of the lawyers on my legal team representing Chevron Corporation in the Aguinda case, Dr. Ivan Alberto Racines Enriquez, informed me that he had happened to encounter Dr. Alberto Guerra Bastidas, who was by then a former judge and former President of the Sucumbíos Provincial Court who previously presided over the Aguinda case, on the street in Quito. Dr. Racines told me that Dr. Guerra had said, in words and substance, that the judgment in the Aguinda case could issue soon and that Dr. Guerra wanted to discuss it with Dr. Racines. Dr. Racines told me he understood this to be an overture by Dr. Guerra to influence the outcome of the Aguinda case in Chevron's favor for a price. Dr. Racines told me that, although he had responded with words to the effect, "Yeah, sure," to appease Dr. Guerra for the moment, Dr. Racines had no intention of following up with Dr. Guerra on the matter. I replied



1

that I agreed that he should not follow up with Dr. Guerra, and that was the end of the conversation.

3. As I previously swore in a contemporaneous affidavit that I signed on October 16, 2009 (a true and correct copy of which is attached hereto as Exhibit A), on October 8, 2009, I received a telephone call from Mrs. Liliana Suarez, the former Secretary of the court for the Sucumbíos Provincial Court. In that call, Mrs. Suarez told me that Dr. Nicolás Augusto Zambrano Lozada, who was then the Substitute President of the Provincial Court and judge presiding on the Aguinda case, wished to hear directly from Chevron's lawyers alone regarding our concerns about the management of the proceedings in the Aguinda case by the previous judges. Mrs. Suarez said that the October 9 holiday would be a good opportunity for this, and that if I wished, I could travel to the City of Manta, Ecuador, where she then resided, and that she would facilitate the meeting there and would introduce me to Dr. Zambrano. I thanked her for her intentions and reminded her that, under Ecuadorian law, judges were not allowed to meet with a party to a proceeding without previous notification to the opposing party so that they could be present. Thus, I did not believe it would be possible to meet with Dr. Zambrano, and I added that I would not be able to travel to Manta in any event due to a previous family commitment. Mrs. Suarez responded that she understood, and that in any case I should not hesitate to call her if I believed she could intercede in this matter in the future. I did not contact her at any point thereafter.

4. At about the same time, in early October 2009, Dr. Racines told me that he received a telephone call from Dr. Alberto Guerra Bastidas. As recounted by Dr. Racines, Dr. Guerra told him that Dr. Guerra could serve as an intermediary for communicating with Judge Zambrano regarding the Aguinda case and correcting the errors that former Judge Juan

Evangelista Nunez Sanabria had committed, that Dr. Guerra could "fix" the entire case, and that Dr. Guerra could influence the subject of the judgment in the Aguinda case in Chevron's favor. I told Dr. Racines to be very careful and that these types of contacts should be avoided, as such contacts were not permitted by Chevron and were prohibited under Ecuadorian law.

5. Days later, Dr. Racines told me that he received a follow-up call from Dr. Guerra, asking whether Chevron's lawyers had decided whether we would be willing to speak with Dr. Zambrano. Dr. Racines also told me that he responded by saying that Chevron's lawyers had been very busy with all of the events of the case. Dr. Racines reported to me that he later received on his cell phone several additional calls from Dr. Guerra, but that Dr. Racines did not answer any of them.

6. Perhaps one or two months after the calls that Dr. Racines received from Dr. Guerra in October 2009, Dr. Racines told me that he happened to encounter Dr. Guerra at a restaurant in Quito and that Dr. Guerra had told him that he (Dr. Guerra) could "fix" the judgment in the Aguinda case in favor of Chevron for a reasonable value that would benefit everyone and that Dr. Racines would receive a portion. According to Dr. Racines, Dr. Guerra also stated that he knew who would draft the judgment in the Aguinda case. I told Dr. Racines that we should avoid any further contact with Dr. Guerra.

7. In approximately the last quarter of 2010, another one of the lawyers on my legal team in the Aguinda case, Dr. Patricio Efrain Campuzano Merino, told me that, earlier that day, he received a telephone call from ███████████, ███████████, who said she had something important to discuss with him regarding the Aguinda case, and that he met with her shortly thereafter. Dr. Campuzano told me that, in his meeting with ███████, she said that Judge Zambrano wanted to know whether Chevron would be interested in drafting the final judgment



3

of the trial court in favor of Chevron in the Aguinda case. Dr. Campuzano told me that he understood Dr. Guerra had conveyed that information to ▇. Based on Dr. Campuzano's recitation of his discussion with ▇, I understood ▇ to mean that Chevron could pay an amount of money to Judge Zambrano to obtain and ghostwrite a judgment in its favor in the Aguinda case. I replied to Dr. Campuzano with a firm, "No."

      8.    Sometime in October 2010, another one of the lawyers on my legal team representing Chevron Corporation in the Aguinda case, Dr. Enrique Carvajal Salas, reported to me a recent conversation he had with a ▇ friend of his in Lago Agrio, Ecuador. According to Dr. Carvajal, his ▇ friend said that he had discussed matters with Dr. Guerra and that, based on the ▇ friend's discussion with Dr. Guerra: (a) Judge Zambrano, who had been recently appointed to preside over the Aguinda case again, did not know what to do in the case, and that as a result, Judge Zambrano had enlisted the help of Dr. Guerra, who would be paid but Judge Zambrano had not yet figured out how to pay him; (b) Judge Zambrano intended, among other things, to resolve the issue of Chevron's essential error petitions the same way that Judge Ordonez had (leaving Chevron without important evidence), and that Judge Zambrano would issue his rulings on Chevron's essential error petitions at the same time that he issued the judgment in the Aguinda case; and (c) Judge Zambrano would no longer try to reach some agreement with Chevron because he was aware that the company would not make financial arrangements with anybody, but, instead, that Judge Zambrano was sure to do so with the plaintiffs. I understood from Dr. Carvajal that his ▇ friend was saying Judge Zambrano likely would attempt to reach an agreement with the plaintiffs to receive money from them in exchange for issuing the judgment in the Aguinda case in their favor.

4

9. In late April 2012, Dr. Carvajal reported to me that he recently had encountered Dr. Guerra at the Provincial Court in Lago Agrio. According to Dr. Carvajal, they exchanged greetings, and then, as Dr. Carvajal walked away, Dr. Guerra came running up behind him. Dr. Carvajal reported to me that, when he turned around, Dr. Guerra said, "Dr. Carvajal, I want to tell you that I would like to make any kind of statement about the fact that I helped to prepare the first instance judgment." According to Dr. Carvajal, he immediately answered: "You and who else, you and who else?," after which Dr. Guerra replied, "Fajardo and Zambrano." Dr. Carvajal further reported that Dr. Guerra then added: "I am willing to make a public statement, which will be one more scandal. I have evidence and I can provide to the company my hard drive and, if necessary, I will be available to render an affidavit or statement in the U.S.A." As Dr. Carvajal related it to me, he told Dr. Guerra that he would follow up with me, and Dr. Guerra gave his cell phone number to Dr. Carvajal.

10. Dr. Carvajal told me shortly thereafter that he communicated his April 2012 discussion with Dr. Guerra to Dr. Carvajal's ▮▮▮ friend, who then met with Dr. Guerra, and that Dr. Guerra then confirmed the information that he had conveyed to Dr. Carvajal and said that Dr. Guerra would be willing to sign a declaration attesting to these facts.

I declare under penalty of perjury under the laws of Ecuador and the United States of America that the foregoing is true and correct.

Executed: December 7, 2012, Quito, Ecuador

_____
Adolfo Callejas Ribadeneira

5

# EXHIBIT A

## AFFIDAVIT OF ADOLFO CALLEJAS RIBADENEIRA

My name is Adolfo Callejas Ribadeneira. I have personal knowledge of the facts set forth in this affidavit. I am over the age of 21, under no disability, and am competent to testify to the matters contained in this affidavit.

Since 2003, I have been the authorized legal representative for Chevron Corporation in connection with civil case number 002/2003, which has been filed with the President of the Provincial Court of Sucumbíos by Mrs. María Aguinda Salazar and 47 other Ecuadorian citizens based on alleged environmental impact.

On Thursday, October 8, 2009, I received a telephone call from the attorney Mrs. Liliana Suárez, an ex-Secretary of the Superior Court of Justice of Lago Agrio, who indicated to me that Dr. Nicolás Zambrano, Substitute President of the current Provincial Court of Justice of Sucumbíos, wished to hear directly from the lawyers of the defendant regarding our concerns about the management of the proceedings and the case by the previous judges. As we know, Dr. Zambrano, by decision of the sole chamber of said court, is to continue hearing case number 002/2003, due to the acceptance of the recusal submitted by the nominal President, Dr. Juan Núñez. Mrs. Suárez added that the October 9 holiday would be a good opportunity for this, and that if I wished I could travel to the city of Manta, where she currently resides, and she would facilitate the meeting there and would introduce me to Dr. Zambrano. I thanked her for her intentions and reminded her that, since the enactment of the New Organic Code of the Judicial Function, it is prohibited for judges to meet with a party to a proceeding without previous notification to, and the presence of, the opposing party. Thus, I did not believe it would be possible to meet with



1

Dr. Zambrano in the city of Manta, to which I added that I would not be able to travel due to a previous family commitment.

Mrs. Suárez indicated that she understood the situation, and that in any case I should not hesitate to call her if I believed she could intercede in this matter in the future.

REDACTED AS PRIVILEGED

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed: October 16, 2009

Adolfo Callejas Ribadeneira

Subscribed and sworn to me this 16th day of October 2009. Witness my hand and official seal.

Viveen C. Radlein

Notary Public



VIVEEN C. RADLEIN
Notary Public - State of Florida
My Comm. Expires May 11, 2013
Commission # DD 881872
Bonded Through National Notary Assn.

2

My Commission Expires: May 11, 2013