UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
CHEVRON CORPORATION, :
:
               Plaintiff, :
:
  -against- :
: Case No. 11 Civ. 0691 (LAK)
:
STEVEN R. DONZIGER, et al., :
:
               Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CHEVRON CORPORATION'S MOTION TO STRIKE DEFENDANTS'
DECLARATIONS OFFERED IN RESPONSE TO CRIME-FRAUD
BRIEFING, OR IN THE ALTERNATIVE TO COMPEL DEFENDANTS
TO PRODUCE THE DECLARANTS FOR DEPOSITION**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

## PRELIMINARY STATEMENT

Plaintiff Chevron Corporation ("Chevron") respectfully moves to strike the declarations of Juan Pablo Sáenz (Dkt. 152), a non-party co-conspirator in this case, and two supposed Ecuadorian legal experts, Dr. Juan Pablo Albán Alencastro (Dkt. 154-5) and Dr. Farith Ricardo Simon Campaña (Dkt. 154-6) (collectively, the "Declarants"). In the alternative, the Court should compel Defendants to produce these Declarants for their depositions. Defendants offered the three Declarations as their core evidence in response to Chevron's prima facie showing of crime-fraud, in connection with Patton Boggs's objections to Chevron's subpoena. After relying heavily on these declarations, Defendants are now unwilling or unable to produce the Declarants for their depositions, either in the United States or Ecuador. The Court should grant Chevron the requested relief here of striking these three declarations as a matter of basic fairness: If they won't be made available for Chevron to cross-examine at a deposition, it is simply unfair to consider them at all. *See, e.g.*, *Palm Beach Strategic Income, LP v. 358 1276 Canada Inc.*, 2009 WL 7466346, at *4 (S.D. Fla. Feb. 10, 2009) (striking affidavit where witness failed to appear for deposition).

## FACTUAL BACKGROUND

On February 28, 2011, Defendants moved to increase the amount of the bond that Chevron posted in support of its temporary restraining order. Dkt. 152. In support, Defendants submitted their co-conspirator Sáenz's declaration (Dkt. 154), which in turn attached the declarations of purported Ecuadorian legal experts Albán (Dkt. 154-5) and Simon (Dkt. 154-6).

More than a year later, in June 2012, Chevron issued a subpoena *duces tecum* to Defendants' co-conspirator, Patton Boggs. Patton Boggs responded with a motion to quash (Dkt. 522), which the Court denied (Dkts. 571, 582). On September 25 and 27, 2012, the Court heard argument regarding Patton Boggs's objections to Chevron's subpoena, which resulted in an order formally resolving most of Patton Boggs's objections on November 16, 2012. Dkt. 621.

At the Court's direction (Dkt. 644), Chevron filed a supplemental brief on December 12, 2012, to address "the extent to which the requests as modified" in Chevron's subpoena "seek material in areas as to which I either already have found or should find that the first of the two prongs of the crime-fraud exception is satisfied." Dkt. 657. Among other things, Chevron's brief (and accompanying declarations) established a prima facie case of crime-fraud in connection with Defendants' extortionate campaign to obtain and then seek to enforce a fraudulent $18 billion judgment.

On December 19, 2012, Defendants moved for an order to show cause to stay the Court's consideration of crime-fraud issues (Dkt. 677), which the Court denied the same day, while permitting additional time for Defendants and Patton Boggs to respond. Dkt. 681. Patton Boggs (Dkt. 718) and the Donziger Defendants together with the LAPs (Dkt. 712) responded to Chevron's supplemental crime-fraud brief. Defendants once again invoked the Declarants, arguing that Defendants' and their co-conspirators' contacts with the supposedly "independent" court-appointed expert Richard Cabrera were not prohibited under Ecuadorian law at the time those contacts occurred. *See, e.g.*, Dkt. 712 at 8 & n.2 (citing declarations of Sáenz (Dkt. 152 ¶¶ 56, 59); Albán (Dkt. 154-5 ¶¶ 9-12, 19); and Simon (Dkt. 154-6 ¶¶ 4-5, 7-8)). The three declarations were the only evidence Defendants offered to counter Chevron's overwhelming showing of the Cabrera fraud and judgment fraud, of which there is far more than "prima facie" evidence.

On January 22, 2013, Chevron notified Defendants' counsel that Chevron intended to take the Declarants' depositions and asked for available dates. After more than a week with no satisfactory response, on January 31, 2013, Chevron issued deposition notices. Ex. A. Defendants' counsel then notified Chevron that Sáenz refuses to make himself available for deposition, not just in the United States but also in Ecuador, and that Defendants' counsel has been unable to

2

contact or confirm whether Albán and Simon will make themselves available for depositions. *Id*. Defendants' counsel also explained that although the three declarations were signed in February 2011, Defendants submitted them again in 2013 without first confirming that the Declarants would be willing to serve as witnesses in the case. *Id*.

## ARGUMENT

It would be fundamentally unfair to allow Defendants to trumpet the three declarations as their sole evidence on one of the most critical issues in this case—the Cabrera fraud—and then turn around and refuse to produce the Declarants for deposition. The Declarations are Defendants' only "evidence" to date that Ecuadorian law supposedly permits secret payments to, *ex parte* meetings with, and ghostwriting the report of, a court-appointed "neutral" expert that Defendants have described as a "Special Master." And the Declarations are ambiguous at best. If presented with the true facts at a deposition, it is possible or even likely that the experts would admit that the Cabrera fraud was illegal under Ecuadorian law, which makes their depositions all the more important. At the very least, if Chevron cannot test this "evidence" by deposing the Declarants under oath, then the evidence itself should be stricken.

Courts consistently have recognized that a party's failure to produce a declarant for deposition should result in the striking of that witness's proffered testimony. *See Palm Beach Strategic Income, LP v. 358 1276 Canada Inc.*, No. 08-80186, 2009 WL 7466346, at *4 (S.D. Fla. Feb. 10, 2009) (striking affidavit for failing to appear for deposition and for noncompliance with related court orders); *Richardson v. Honda Mfg. of Alabama, LLC*, 635 F. Supp. 2d 1261, 1265 n.2 (N.D. Ala. 2009) (similar); *Crawford v. NCB, Inc.*, 2001 U.S. Dist. LEXIS 10261, at *2–*3 (S.D. Fla. May 4, 2001), *adopted by* 2001 U.S. Dist. LEXIS 8925 (S.D. Fla. May 17, 2001) (similar).

In *Ndabishuriye v. Albert Schweitzer Soc'y, USA, Inc.*, 136 Fed. App'x 795 (6th Cir. 2005), the Sixth Circuit affirmed summary judgment and quoted with approval the district

3

court's ruling that "it would be fundamentally unfair to accept an affidavit from a person who suddenly emerged, signed an affidavit favoring the defendants, and then disappeared again before he could be cross-examined." *Id*. at 799.  The district court had stricken the affidavit of a witness whom the offering party claimed "was somewhere in Central America, [and] that his whereabouts were otherwise unknown," yet this witness had somehow "gotten wind of [the] lawsuit and submitted a properly notarized affidavit before vanishing into the wilderness." *Id.*

Here, there is an even stronger case for striking the three declarations, because the Declarants are well-known to the Defendants and presumably the LAPs' team has regular contact with them in Ecuador.  Indeed, Sáenz is a key member of the LAPs' Ecuadorian legal team and a co-conspirator who previously has submitted false and misleading declarations in courts across the United States.  *See, e.g.*, *Chevron Corp. v. Banco Pichincha*, 11-cv-24599-MGC, Dkt. 55-13 (S.D. Fla. Apr. 16, 2012).  And Saenz is himself obligated per the LAPs' funding agreement to be available for depositions, Dkt. 252-1, who often is quoted in the press on behalf of the LAPs.

Of course, there is nothing new about Defendants' tactic of relying on testimony and then refusing to make the declarants available for deposition.  In particular, the LAPs' counsel strategically decided to have lead Ecuadorian lawyer Pablo Fajardo sign a declaration purporting to fully disclose the LAPs' contacts with Cabrera because, as the LAPs' lawyers noted, "[i]f Donziger signs, he will most certainly be deposed . . . We figured that with [Fajardo], [Chevron] likely would not slow down the process by deposing him (as we would say the dep needs to go forward in Ecuador)." Dkt 549-3 (Ex. 2407).

## CONCLUSION

The Court should strike the declarations Juan Pablo Sáenz (Dkt. 152), Dr. Juan Pablo Albán Alencastro (Dkt. 154-5), and Dr. Farith Ricardo Simon Campaña (Dkt. 154-6), or in the alternative compel Defendants to make these Declarants available for deposition immediately.

4

| | |
|---|---|
| Dated:  February 4, 2013<br>New York, New York | Respectfully submitted,<br><br>/s/ Randy M. Mastro<br>Randy M. Mastro<br>Andrea E. Neuman<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: 212.351.4000<br>Facsimile:  212.351.4035<br><br>William E. Thomson<br>333 South Grand Avenue<br>Los Angeles, California 90071<br>Telephone: 213.229.7000<br>Facsimile:  213.229.7520<br><br>*Attorneys for Chevron Corporation* |

*Chevron v. Donziger*, No. 11 Civ. 0691-LAK (S.D.N.Y)

**Index of Exhibits to Chevron Corporation's Motion to Strike Defendants' Declarations Offered in response to Crime-Fraud Briefing, or in the Alternative to Produce the Declarants for Deposition**

Exhibit A:   Letter from R. Mastro to L. Veselka, dated February 2, 2013.