**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                 :
CHEVRON CORPORATION,                                             :
                                                                 :
          Plaintiff,                     :
                                                                 :
    v.                                         :    11 Civ. 0691 (LAK)
                                                                 :
STEVEN DONZIGER, *et al.*,                                       :
                                                                 :
          Defendants.                    :
                                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**PLAINTIFF CHEVRON CORPORATION'S MOTION TO**
**COMPEL LAP REPRESENTATIVES AND DONZIGER DEFENDANTS TO PRODUCE**
**DOCUMENTS AND RECORDINGS OF ALLEGED INTERACTIONS BETWEEN**
**CHEVRON AND POTENTIAL WITNESSES**


GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035
*Attorneys for Plaintiff Chevron Corporation*

**PRELIMINARY STATEMENT**

Chevron Corporation ("Chevron") respectfully moves under Rule 37 to compel the LAP

Representatives and Donziger ("Defendants") to produce documents and recordings that LAP

agents have publicly claimed they have, relating to contacts between Chevron representatives

and witnesses in Ecuador.  The materials are relevant and responsive to Chevron's document re-

quests, as well as Defendants' Rule 26 disclosure obligations.  Defendants intend to rely on these

documents and recordings at trial in their attempt to discredit witnesses who have come forward

in the case because they have talked publicly about using them without actually disclosing

them.[1]

In recent months, Chevron has introduced new evidence proving that counsel for the

LAPs ghostwrote the Ecuadorian judgment after promising the judge a bribe and otherwise cor-

rupting the litigation.  *See* Dkts. 745, 764.  In particular, Chevron relies on sworn accounts by a

former Ecuadorian judge (Guerra) who was personally involved in the ghostwriting and agreed

to the LAPs' bribe (along with Judge Zambrano), and an Ecuadorian engineer (Reyes) who inde-

pendently confirms the Cabrera fraud.  This new evidence "is potentially devastating to the

LAPs, to their Ecuadorian counsel and Mr. Donziger, and to their various associates and allies."

Dkt. 843 at 28.

Defendants responded to this evidence by attacking Guerra and Reyes in the press and ar-

ranging for civil and criminal actions to be filed against them in Ecuador.  Exs. 3, 4; Dkts. 746-1,

746-2.  Defendants say they have undisclosed evidence—including alleged recordings of a con-

versation between a private attorney representing Chevron and Zambrano—that they claim will

show Chevron has attempted to corrupt Zambrano, Guerra, and other potential witnesses.

---

[1]  Chevron met and conferred in good faith with Defendants prior to filing this motion, but De-
fendants have refused to produce the subject materials.  Exs. 1, 2.

Ex. 12.  Chevron requested this alleged evidence in discovery, and Defendants do not claim that it is irrelevant or privileged.  Rather, Defendants refuse to produce this evidence for the sole reason that the materials were created after July 10, 2012, and thus, they claim, fall outside their production obligations.

The Court should compel Defendants to produce these purported documents and recordings which they have stated they will use in this litigation.  Chevron's document requests sought all materials that Defendants intended to rely on at trial, and Defendants agreed to produce such materials irrespective of any date limitation.  Without access to these supposed documents and recordings, Chevron would be handicapped in preparing for trial and would be unable to respond to this latest tactic in Defendants' fraudulent scheme.  The Court should order Defendants to produce these alleged materials forthwith.[2]

### ARGUMENT

Defendants cannot refuse to produce these highly relevant materials on the basis that they were created after July 10, 2012.  As a preliminary matter, the materials would come within the scope of Defendants' continuing Rule 26 disclosure obligations because Defendants would seek to rely on the materials in support of their defense of this action.[3]  Moreover, Rule

---

[2]  In the alternative, Chevron respectfully requests that the Court issue an order barring Defendants from relying in this action, for any purpose, on alleged documents and recordings purporting to show contacts between Chevron's representatives and Judge Zambrano or other witnesses related to the Lago Agrio Court or the Lago Agrio Litigation, as reflected in the *El Telgrafo* article dated February 5, 2013 (Ex. 12).

[3]  *See, e.g.*, *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 67 (E.D.N.Y. 2012) (Rule 26 "mandates that a party disclose documents that may be used to support its claims or defenses" and obligates that party "to timely supplement or correct its initial Rule 26 disclosures, and its responses to interrogatories and document demands, 'if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing'" (quoting Fed. R. Civ. P. 26)); *see also Gutshall v. New Prime, Inc.*, 196 F.R.D. 43, 45 (W.D. Va. 2000) (ordering production of materials that defendant "intends to use . . . at trial for impeachment purposes" because it was "relevant to the subject matter of the case").

37(a)(3)(B)(iv) allows a party to move to compel "production" if "a party fails to . . . permit inspection [of documents or materials] as requested under Rule 34." Chevron specifically requested—and Defendants agreed to produce, *without* date limitations—all documents on which Defendants intend to rely at trial.[4]

Defendants do not claim that they will not seek to use these alleged materials in defense of this action. As this Court has recognized, their incentive to attack Guerra, and anyone who corroborates his account, is "enormous." Dkt. 843 at 15. To the extent Defendants have materials that allegedly undermine Guerra's credibility or that of other potential witnesses, it is inconceivable that Defendants will not attempt to use such evidence here. Otherwise, they will have to reverse their avowed position that they did not ghostwrite the judgment,[5] and they will have no choice but to concede that the judgment was a fraud and is unrecognizable anywhere in the world.[6]

But there is no need to speculate here about Defendants' intentions. In a brief filed yesterday in the Southern District of Florida, the LAPs indicated they intend to oppose summary judgment in *this* action by presenting evidence that challenges Guerra's credibility: "Make no mistake, the [LAPs] will present evidence in the Southern District of New York . . . estab-

---

4   Ex. 5, RFP 23 (requesting "All documents YOU intend to rely upon or introduce at trial of this matter."); *id.*, Instruction 19 ("Except where expressly stated, the relevant time period for these Requests is January 1, 2003 through the present."); Ex. 6, RFP 23 ("Donziger incorporates Donziger's General Objections, and particularly Objection Nos. 5, 10, 14, 16, and 19. Subject to and without waiving these objections, Donziger will produce responsive, non-privileged materials within Donziger's custody or control and to the extent that such documents have not already been produced."); Ex. 7; Ex. 8; Ex. 9.

5   *E.g.*, Dkt. 712 at 6 ("Defendants have repeatedly denied the accusations that the Ecuadorian Plaintiffs' legal team 'ghostwrote' or otherwise had improper involvement in the drafting of the Lago Agrio Judgment.").

6   To date, Defendants have failed meaningfully to challenge any of Chevron's evidence, offering only the fantastical theory that Chevron somehow "slipped" Defendants' unfiled documents to the judge. Dkt. 754-1 (Ex. 3101) at 173:9-17.

lish[ing] that Judge Guerra is a liar and his purchased testimony is patently false." Ex. 10 at 5.
The LAPs claim that their "response" to Guerra "is not yet complete, and it would be unfair to
require [them] to preview any part of it prior to the due date for a summary judgment response in
New York." *Id*. There is nothing "unfair" about compelling the LAPs to timely produce docu-
ments as required under the rules and the parties' agreements. Indeed, nothing is less consistent
with the spirit of the Federal Rules than the LAPs' attempt to withhold discovery in order to cre-
ate a litigation "surprise."

In short, Defendants agreed to produce all trial materials regardless of when they were
created, and the law is clear that Defendants may not refuse to produce responsive materials
merely because they became available after production. *See, e.g.*, *Texas Instruments Inc. v.
Powerchip Semiconductor Corp.*, 06 Civ. 2305(SHS)(RLE), 2007 WL 1541010, at *13
(S.D.N.Y. May 24, 2007). Here, in particular, the case concerns an ongoing conspiracy and rel-
evant events occur on almost a daily basis.[7] Accordingly, the Court should compel prompt pro-
duction of the specific, relevant, and responsive materials that Defendants are wrongfully with-
holding.[8]

Dated: February 27, 2013
New York, New York

Respectfully submitted,

/s/ Randy M. Mastro

Randy M. Mastro
Andrea E. Neuman
GIBSON, DUNN & CRUTCHER LLP

---

[7] As this Court has recognized, "this is a complaint which, everybody understands, charges a
continuing conspiracy and course of conduct which is alleged to be going on today and is al-
leged to be likely to continue tomorrow and for the indefinite future." Ex. 11 at 9:23-10:2;
*see also id.* at 7:15-8:12 ("reject[ing] categorically the idea that there ought to be a February
14, 2011 cut-off" for discovery and noting that "[t]here are so many common sense reasons
why the defendant's position is wrong that it's mind-boggling").

[8] Courts have denied motions to compel where—unlike here—the moving party "has not
pointed to any *specific* documents that [the other side] has failed to produce." *Trilegiant
Corp. v. Sitel Corp.*, 272 F.R.D. 360, 368 (S.D.N.Y. 2010) (emphasis added).

4

200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile:  212.351.4035

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile:  213.229.7520

*Attorneys for Chevron Corporation*

*Chevron v. Donziger*, No. 11 Civ. 0691-LAK (S.D.N.Y)

**Index of Exhibits to Plaintiff Chevron Corporation's Motion to Compel LAP Representatives and Donziger Defendants to Produce Documents and Recordings of Alleged Interactions Between Chevron and Potential Witnesses**

Exhibit 1:     February 15, 2013 letter from L. Elliot to M. Werdegar and C. Smyser.

Exhibit 2:     February 25, 2013 letter from J. Little to L. Elliot.

Exhibit 3:     Transcript of a February 20, 2013 interview of P. Fajardo on the radio program Ecuador en Movimiento, and certified English translation thereof.

Exhibit 4:     February 18, 2013 criminal complaint filed by P. Fajardo against A. Guerra, and certified English translation thereof.

Exhibit 5:     Chevron Corporation's First Supplemental Set of Requests for Production to Defendants Huge Gerardo Camacho Naranjo, Javier Piaguaje Payaguaje, Steven Donziger, The Law Offices of Steven R. Donziger, Donziger & Associates, PLLC, Stratus Consulting, Inc., Ann Maest, and Douglas Beltman, dated December 1, 2012.

Exhibit 6:     Steven Donziger, The Law Offices of Steven R. Donziger, and Donziger & Associates, PLLC's Responses to Chevron Corporation's First Supplemental Set of Requests for Production, dated January 11, 2013.

Exhibit 7:     February 15, 2013 email correspondence from N. Vo to L. Elliot.

Exhibit 8:     February 13, 2013 letter from L. Elliot to L. Veselka.

Exhibit 9:     February 15, 2013 letter from L. Elliot to L. Veselka.

Exhibit 10:    Ecuadorian Plaintiffs' Opposition to Presentation of New Evidence at February 27 Hearing or, in the Alternative, Motion to Continue Hearing, *In re Chevron Corp.*, No. 1:11-cv-24599-MGC, Dkt. 126 (S.D. Fla. Feb. 26, 2013).

Exhibit 11:    Transcript of December 20, 2012 hearing, *Chevron Corporation v. Donziger*, No. 11-cv-00691-LAK (S.D.N.Y.).

Exhibit 12:    February 5, 2013 *El Telegrafo* article entitled "Tres agentes de Kroll trabajan en Quito al servicio de Chevron" ["Three Kroll Agents Work in Quito at Chevron's Service"], and a certified English translation thereof.