UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEVRON CORPORATION,<br><br>             Plaintiff,<br><br>    v.<br><br>STEVEN DONZIGER, THE LAW OFFICES OF STEVEN R. DONZIGER, et al.,<br><br>             Defendants. | CASE NO. 11-CV-0691(LAK) |

**DEFENDANTS HUGO GERARDO CAMACHO NARANJO AND JAVIER PIAGUAJE PAYAGUAJE'S MOTION TO STRIKE AFFIDAVITS ACCOMPANYING <u>CHEVRON'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

**PRELIMINARY STATEMENT**

Defendants Hugo Camacho and Javier Piaguaje move to strike the affidavit of Alberto Guerra Bastidas and the affidavits of four Chevron lawyers—Adolfo Callejas Ribadeneira, Ivan Alberto Racines Enriquez, Patricio Efrain Campuzano Merion, and Enrique Carvajal Salas—that Chevron submitted in support of its motion for partial summary judgment. (Dkts. 746-3, 746-10, 746-11, 746-12, 746-13.) The affidavits describe, in large part, purported contacts between Guerra and Chevron in 2009 and 2010 in which Guerra allegedly offered to fix the Lago Agrio litigation in Chevron's favor, and contacts between Guerra and Zambrano in which Zambrano supposedly hired Guerra to negotiate a financial agreement with Chevron.  Because (1) the

405920.4

Guerra affidavit was purchased by Chevron; (2) all of the affidavits contain inadmissible hearsay; and (3) Chevron withheld or failed to disclose the content of the affidavits purportedly created by its own lawyers for years despite obligations to do so, the Court should strike the affidavits and should not consider them when ruling on Chevron's motion for partial summary judgment.

## DISCUSSION

**I.    The Court Should Strike Guerra's Affidavit Because It Is Paid-For Testimony.**

Guerra says he solicited bribes from Chevron in 2009 and 2010, but was rejected each time. When Guerra solicited a bribe from Chevron in April 2012, the company finally agreed. To date, Chevron has paid Guerra at least $62,000, plus other benefits.[1] It doesn't take an expert in ethics or influencing witnesses to know that this is improper. *See, e.g.*, *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non–Marine Assoc.*, 865 F. Supp. 1516, 1526 (S.D. Fla. 1994) ("[Q]uite simply, a witness has the solemn and fundamental duty to tell the truth. He or she should not be paid a fee for doing so."). Numerous courts have recognized that the proper sanction for the wrongful payment of a fact witness is the exclusion of the tainted witness. *See, e.g., Golden Door,* 865 F. Supp. at 1526–27 (excluding "testimony given in this action by any of the fact witnesses who received monetary compensation from [counsel]"), *rev'd in part on other grounds,* 117 F.3d 1328, 1335 n.2 (11th Cir. 1997) (approving of the district court's exclusion of paid fact witnesses); *Rocheux Int'l of New Jersey v. U.S. Merchants Fin. Grp., Inc.*, No. 06-6147, 2009 WL 3246837, at *4 (D.N.J. Oct. 5, 2009) ("Mr. McAlindin's decision to pay Mr. Gutierrez for factual testimony has cast a cloud over the legitimacy of that testimony, and the Court must

---

[1] This consists of $38,000 for "evidence" reasonably worth no more than $500 (consisting of 1 hard drive, 7 thumb drives, 4 day planners, copies of bank, phone, email, and credit card records, 2 cell phones, 1 floppy disc, 7 CDs, and some paper shipping records) and at least $24,000 for two months (Jan.-Feb. 2013) of "living expenses." Dkt. 746-3.

2

405920.4

prevent this suspect evidence from contaminating future proceedings."). The Court should exclude Guerra's tainted affidavit.

II. **The Court Should Strike the Ecuadorean Lawyers' Affidavits and Supporting Attachments, and Parts of Guerra's Affidavit, Because They Contain Inadmissible Hearsay**

Affidavits submitted in connection with a motion for summary judgment must present facts or testimony that would be admissible at trial. *Wahad v. FBI*, 179 F.R.D. 429, 435 (S.D.N.Y. 1998). "Hearsay testimony that would not be admissible if testified to at trial may not properly be set forth in a Rule 56 affidavit accompanying a summary judgment motion." *Spector v. Experian Info. Servs. Inc.*, 321 F. Supp. 2d 348, 353 (D. Conn. 2004). In this case, Callejas's, Racines's, Campuzano's, and Carvajal's 2012 affidavits (and attached purported 2009 affidavits by Racines and Callejas) include statements allegedly made to them by admittedly corrupt former Judge Guerra, and others supposedly made on behalf of former Judge Zambrano. These statements—out of court statements offered for their truth—are hearsay (and, sometimes, hearsay within multiple layers of hearsay) and are not admissible at trial or on summary judgment. Fed. R. Evid. 801(c), 802. For example, Callejas states that in the summer of 2009, Racines told him that Guerra told Racines that the final judgment in the Lago Agrio litigation will soon be issued and that Guerra wanted to discuss the upcoming judgment with Racines. (Dkt. 746-10, at ¶ 2.) Callejas further states that in October 2009, Racines told him that Guerra told Racines that Guerra could serve as an intermediary with Zambrano and fix the entire case. (*Id.* at ¶ 4.) And Callejas states that in the last quarter of 2010, Campuzano told Callejas that a friend of Campuzano's told Campuzano that Guerra told the friend that Zambrano told him (Guerra) that Zambrano would no longer try to reach out to Chevron to see if it was interested in arranging a favorable judgment. (*Id.* at ¶ 7.). The multiple levels of hearsay are dizzying. The

3

rest of Callejas's and Racines's 2012 affidavits (and their alleged 2009 affidavits), as well as Campuzano's and Carvajal's 2012 affidavits contain similar statements by Guerra. None of the purported statements come from Judge Zambrano directly. What Chevron claims about the writing of the Judgment itself is all hearsay from Guerra about what Guerra now claims that Judge Zambrano said after Chevron agreed to pay Guerra hundreds of thousands of dollars over two years and held out the chance for even more thereafter, depending upon how his "testimony" plays out.

Chevron offers these statements to prove the truth of the matter asserted. For example, Chevron's partial summary judgment motion states that "[m]ultiple sources confirm that Zambrano shopped the Lago Agrio litigation to the highest bidder" and that in October 2009, "Guerra called . . . Racines to tell him that Guerra could 'act as an intermediary' with Zambrano and 'fix the entire case.'" (Dkt. 745, at 23.) To support these and other similar factual statements, Chevron's motion cites to its Rule 56.1 statement, which in turn cites to the corresponding paragraphs in the Ecuadorean lawyers' affidavits. Because no exception applies to the hearsay statements discussed above, the court should strike Callejas's, Racines's, Campuzano's, and Carvajal's affidavits (2012 and 2009) and should not consider them when ruling on Chevron's motion for partial summary judgment. *See Wahad*, 179 F.R.D. at 436 (striking hearsay statements in a summary judgment affidavit); *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999) ("A court may . . . strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements."), *abrogated on other grounds by Pacenza v. IBM Corp.*, 363 F. App'x 128 (2d Cir. 2010).

4

Similarly, Guerra's affidavit recounts numerous statements that Judge Zambrano allegedly made to him. For example, Guerra states that Judge Zambrano "asked me to attempt, through friends of mine, to get in touch with the attorneys for Chevron in order to negotiate an agreement by which the company would pay Mr. Zambrano and [Guerra] for issuing the final judgment in Chevron's favor." (Dkt. 746-3, at ¶ 12.) Guerra also states that "Mr. Zambrano told me that Chevron would have much more money than the Plaintiffs for this agreement, and therefore we could get a better deal and greater profits for ourselves." (*Id.*). Guerra's declaration is chock full of, and continues to repeat, hearsay:

- "Mr. Zambrano told me to have that meeting because he had reached an agreement with the Plaintiffs' representatives . . . ." (*Id.* at ¶ 13).

- Mr. Zambrano "asked me to help him write the court ruling sustaining Judge Ordonez's disqualification from the case." (*Id.* at ¶ 21).

- "Mr. Zambrano again asked me to get in touch with my contacts to try to negotiate a financial agreement with Chevron." (*Id.* at ¶ 22).

- "Mr. Zambrano suggested and authorized me to seek an agreement with the Plaintiffs' representatives so that they could obtain a verdict in their favor, in exchange for a payment of at least USD $500,000 to Mr. Zambrano; and whatever amount I could negotiate or agree to for myself." (*Id.* at ¶ 23).

- "Mr. Zambrano told me he was in direct contact with Mr. Fajardo . . . . Mr. Zambrano told me he would share with me part of that money once it was paid to him." (*Id.*).

- "Mr. Zambrano advised me that we had to be more careful because the attorneys for Chevron would be very attentive to any irregularities." (*Id.* at ¶ 24).

- "It was through [Mr. Zambrano] that I found out that the attorneys for the Plaintiffs had written that judgment and had delivered it to him." (*Id.* at ¶ 25).

- "Mr. Zambrano asked me to work on the document to fine-tune and polish it so it would have a more legal framework." (*Id.*).

- "Mr. Zambrano explicitly asked me not to make copies nor leave traces of this document nor the changes I was making, outside of the file on which I worked." (*Id.*).

5

- "Based on what Mr. Zambrano told me, it is my understanding that the Plaintiffs' attorneys made changes to the judgment up to the very last minute before it was published." (*Id.* at ¶ 28).

Because Chevron offers these statements to prove the truth of the matter asserted, (*see, e.g.*, Dkt. 745, at 22 (quoting, from paragraph 23 of Guerra's affidavit, what Zambrano allegedly told Guerra)), and because the statements do not fall within any exception to the hearsay rule, they are inadmissible and should be struck.[2]

### III. The Court Should Also Strike Certain Portions of the Ecuadorean Lawyers' Affidavits Because They Should Have Been Disclosed in Response to Prior Discovery Requests

In addition to being inadmissible hearsay, the portions of the Ecuadorean lawyers' affidavits (both 2012 and 2009) relating to the contacts Guerra or Zambrano (indirectly) allegedly had with Chevron in 2009 and 2010 should also be struck because Chevron did not produce or disclose this information in response to prior discovery requests. A party who has responded to a discovery request, including an interrogatory or a request for production, "must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). If a party fails to follow Rule 26(e), "the party is not allowed to use that information or witness to supply evidence *on a motion*, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added).

In the Ecuadorean lawyers' affidavits and supporting materials attached to the January 28, 2013 motion for partial summary judgment, Chevron disclosed for the first time that it had

---

[2] Specifically, the Court should strike the alleged statements Zambrano made to Guerra that appear in paragraphs 12, 13, 21, 22, 23, 24, 25, 28, 29, and 33 of Guerra's affidavit.

several contacts with Guerra in 2009 and 2010 in which Guerra allegedly offered to fix the Lago Agrio case in Chevron's favor in exchange for bribes.  Chevron also disclosed for the first time that Zambrano's court staff allegedly tried to set up an *ex parte* meeting with its lawyers in 2009.  This information had been in Chevron's possession for years, including purportedly in affidavit form.[3]  But Chevron never disclosed the information in response to discovery requests that called for its disclosure.  In one of their interrogatories in the Count 9 action, Camacho and Piaguaje asked Chevron to "[d]escribe each and every specific factual basis for [its] contention that the judges in the ECUADORIAN LITIGATION were and are corrupt and not impartial."  *See* Chevron Response to Defendants' Modified First Set of Interrogatories, Interrogatory No. 9, attached as Exhibit A.  Neither Chevron's initial response nor its supplemental response to the interrogatories mentioned contacts between Guerra or Zambrano and Chevron's Ecuadorean attorneys, or the substance of what Guerra or Zambrano's staff supposedly said.  *Id.;* Chevron Supplemental Response to Defendants' Modified Interrogatories, attached as Exhibit B.  In addition, when Callejas testified as a Rule 30(b)(6) representative for Chevron, he was asked about Chevron's factual basis for alleging that the judges who presided over the Lago Agrio case were corrupt.  Mr. Callejas adopted as his answer the interrogatory response that did not mention contacts with Guerra or others, even though Callejas himself had already prepared one of the declarations improperly withheld.  Callejas Sept. 9, 2011 Depo. Tr. at 46, 50-51, 57, attached as Exhibit C.  Chevron also objected to Camacho and Piaguaje's Request for Production No. 216, requesting "[a]ll documents from Adolfo Callejas regarding the CHEVRON LITIGATIONS" as "duplicative of other requests . . . . in response to which responsive, non-objectionable documents . . . are already being provided."  Exhibit D.

---

[3] Indeed, the attachments to Callejas's and Racines's 2012 affidavits are affidavits that Callejas and Racines purport to have signed in October 2009.

7

Chevron never produced these witness statements in response to document requests in Count 9[4] or in this case[5], until the motion for partial summary judgment was filed, some four months after Chevron began its production in this case.  Moreover, Chevron has not explained why it withheld or failed to disclose those contacts when, following Chevron's motion for partial summary judgment, Camacho and Piaguaje's counsel asked Chevron's counsel for an explanation.  *See* Feb. 8, 2013 Ltr. to Mastro, attached as Exhibit G.  Because Chevron withheld evidence it should have disclosed, the Court should strike those portions of the Ecuadorean lawyers' affidavits and supporting attachments that contain evidence that was in Chevron's possession at the time it answered Camacho and Piaguaje's prior discovery requests.[6]  *See White v. Fin. Credit Corp.*, No. 99 C 4023, 2001 WL 1665386, at*3 (N.D. Ill. Dec. 27, 2001) (striking evidence that had been requested during discovery but had been disclosed only in a summary judgment filing after discovery had ended); *cf. Guang Dong Light Headgear Factory Co., Ltd. v. ACI Int'l, Inc.*, No. 03-4165-JAR, 2008 WL 53665, at *1 (D. Kan. Jan. 2, 2008) (striking the summary judgment affidavit of a witness who had not previously been disclosed).  If Defendants' counsel had engaged in this kind of "hide-the-ball" conduct, the Court would *sua sponte* have invited a sanctions motion, as it has done for Chevron on multiple occasions.

---

[4] *See, e.g.*, Camacho/Piaguaje Interrogatory No. 13 (Ex. A), Requests for Production Nos. 10, 12, 17, 31, 37, 41, 70. (Ex. E).

[5] *See, e.g.*, Donziger Request for Production Nos. 15, 28-30, attached as Exhibit F; Camacho/Piaguaje Requests for Production Nos. 18, 24, 85, 117, 119, attached as Exhibit D.

[6] In particular, the Court should strike: (1) the attachments to Callejas's and Racines's affidavits, which are the purported 2009 affidavits; (2) paragraphs 2–8 in Callejas's affidavit; (3) Campuzano's entire affidavit; (4) Racines's entire affidavit; and (5) paragraphs 2–7 in Carvajal's affidavit.

## CONCLUSION

For the foregoing reasons, the Court should strike Guerra's, Callejas's, Racines's, Campuzano's, and Carvajal's affidavits and supporting attachments and should not rely upon them when ruling on Chevron's motion for partial summary judgment.

Dated: March 18, 2013
Houston, Texas

Respectfully submitted,

      /s/  *Tyler G. Doyle*
CRAIG SMYSER (*pro hac vice*)
LARRY R. VESELKA (*pro hac vice*)
TYLER G. DOYLE
SMYSER KAPLAN & VESELKA, L.L.P.
700 Louisiana, Suite 2300
Houston, TX 77002
Telephone:     (713) 221-2330
Facsimile:     (713) 221-2320
Email:     tydoyle@skv.com
Email:     csmyser@skv.com
Email:     lveselka@skv.com

Julio C. Gomez
GOMEZ LLC
The Trump Building
40 Wall Street, 28th Floor
New York, NY  10005
Telephone:     (212) 400-7150
Facsimile       (212) 400-7151
Email:     jgomez@gomezllc.com

*Attorneys for Defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje*