UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEVRON CORPORATION,<br>                    Plaintiff,<br>        v.<br>STEVEN DONZIGER, THE LAW<br>OFFICES OF STEVEN R. DONZIGER,<br>    et al.,<br>                    Defendants. | CASE NO. 11-CV-0691(LAK) |

**DECLARATION OF CRAIG SMYSER IN SUPPORT OF
DEFENDANTS HUGO GERARDO CAMACHO NARANJO AND
JAVIER PIAGUAJE PAYAGUAJE'S APPLICATION FOR A
CONTINUANCE PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 56(D) AND OPPOSITION TO CHEVRON
CORPORATION'S MOTION FOR PARTIAL SUMMARY
JUDGMENT ON ALL CLAIMS, COUNTERCLAIMS,
AND AFFIRMATIVE DEFENSES, AND SUMMARY JUDGMENT
ON DEFENDANTS' AFFIRMATIVE DEFENSE OF
COLLATERAL ESTOPPEL**

I, Craig Smyser, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.      I am a Partner at the law firm of Smyser Kaplan & Veselka, L.L.P., counsel for Defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje ("Defendants") in the above-captioned matter. I submit this Declaration in support of Defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje's Application for a Continuance Pursuant to Federal Rule of Civil Procedure 56(d) and Opposition to Chevron Corporation's Motion for Partial Summary Judgment on All Claims, Counterclaims, and Affirmative Defenses, and Summary Judgment on Defendants' Affirmative Defense of Collateral Estoppel.

2.      On January 28, 2013, Chevron filed its Motion for Partial Summary Judgment on All Claims, Counterclaims and Affirmative Defenses, and Summary Judgment on Defendants'

405942.2

Affirmative Defense of Collateral Estoppel (the "Motion"). The Motion and supporting exhibits and affidavits total over 5,400 pages, not including the tens of thousands of pages of other materials Chevron cited in its Motion that have previously been filed in the docket in this case. Chevron also submitted a 124-page Rule 56.1 Statement which sets forth almost 350 separate allegedly undisputed facts, which facts are based largely on expert conclusions and appear to touch on and relate to every aspect of the near decade-long Ecuadorian Litigation and every disputed issue in this case.

3. In support of the almost 350 allegedly undisputed facts in its Rule 56.1 Statement, Chevron cites to hundreds of documents culled from materials it obtained in numerous proceedings initiated under 28 U.S.C. §1782. Chevron's discovery actions under section 1782 took place in over fifteen federal district courts across the country. These proceedings targeted anyone who provided any assistance to the Ecuadorian Plaintiffs in the underlying litigation, including over forty separate individuals and companies. They included legal counsel, law interns, litigation funders, media consultants, and consulting experts. Specifically, Chevron brought the following section 1782 proceedings against the Ecuadorian Plaintiffs' counsel and supporters:

- *Chevron v. Stratus Consulting, David J. Chapman, Douglas Beltman, Jennifer M. H. Peers, David M. Mills, Peter N. Jones, Laura Belanger, and Ann S. Maest,* District of Colorado, Docket No. 10-cv-00047.

- *Chevron v. Charles William Calmbacher*, Northern District of Georgia, Docket No. 10-mi-00076.

- *Chevron v. 3 TM Consulting, LLC, and 3 TM International, Inc.*, Southern District of Texas, Docket No. 10-mc-00134.

- *Chevron v. Uhl, Baron, Rana & Associates, Inc. and Juan Cristobal Villao Yepez*, District of New Jersey, Docket No. 10-cv-02675.

405942.2

- *Chevron v. E-Tech International and William Powers*, Southern District of California Docket no. 10-cv-01146.

- *Chevron v. Norman Nelson Alberto Wray Espinosa*, District of Columbia, Docket No. 10-mc-00371.

- *Chevron v. Mark Quarles*, Middle District of Tennessee, Docket No. 10-cv-00686.

- *Chevron v. Joseph Berlinger, Crude Productions, LLC, Third Eye Motion Picture Company, Inc., Michael Bonfiglio and Radical Media*, Southern District of New York, Docket No. 10-mc-00001.

- *Chevron v. Steven Donziger*, Southern District of New York, Docket No. 10-mc-00002.

- *Chevron v. Richard Kamp and E-Tech International*, District of New Mexico, Docket No. 10-mc-00021

- *Chevron v. Charles Champ*, Western District of North Carolina, Docket No. 10-mc-00027

- *Chevron v. Carlos Emilio Picone*, District of Maryland, Docket No. 10-cv-02990

- *Chevron v. Daniel Rourke*, District of Maryland, Docket No. 10-cv-02989

- *Chevron v. Jonathan S. Shefftz*, District of Massachusetts, Docket No. 10-mc-10352.

- *Chevron v. Lawrence W. Barnthouse*, Southern District of Ohio, Docket No. 10-mc-00053.

- *Chevron v. Douglas C. Allen*, District of Vermont, Docket No. 10-mc-00091.

- *Chevron v. Robert Paolo Scardina*, Western District of Virginia, Docket No. 10-cv-00549.

- *Chevron v. Kohn, Swift & Graf, P.C., and Joseph C. Kohn, Esq.*, Eastern District of Pennsylvania, Docket No. 10-mc-00208.

- *Chevron v. Cristobal Bonifaz*, District of Massachusetts, Docket No. 10-mc-30022

- *Chevron Corporation v. The Weinberg, et al*. District of Columbia, Docket No. 11-mc-00030.

- *Chevron Corporation v. Environmental Law Alliance Worldwide (ELAW)*, District of Oregon, Docket No. 11-mc-07003

405942.2

- *Chevron Corporation v. Aaron Marr Page*, District of Maryland, Docket No. 11-mc-00395.

- *Chevron Corporation v. Banco Pichincha*, Southern District of Florida, Docket No. 11-cv-24599.

4. In many of the 1782 proceedings listed above, Chevron obtained documents as well as deposition testimony. Chevron has only recently produced to Defendants the materials Chevron obtained in these proceedings.

5. In support of the current Motion, Chevron submitted documents and materials, including affidavits, from at least 15 fact and expert witnesses: Troy Dahlberg, Michael Green, Patrick Juola, James Spigelman, Michael Younger, Keith Rayner, Gustavo Romero Ponce, Adolfo Callejas Ribadeneira, Patricio Campuzano Merino, Enrique Carvajal Salas, Alberto Guerra Bastidas, Ivan Racines Enriquez, Andres Rivero, Doe 1, and Doe 2. The Court has prohibited Defendants' counsel from disclosing the identities of Doe 1 and Doe 2 to anyone except counsel of record. Based on the dates and other information disclosed in the affidavits submitted in support of the Motion, it appears that Chevron spent many months, and in some cases years, investigating, gathering, and preparing these materials.

6. Among the materials Chevron submitted in support of its Motion is an affidavit from former Judge Alberto Guerra Bastidas and certain documents and other evidence it purchased from him. According to Chevron, Guerra first approached Chevron to volunteer his testimony for this case in April 2012. Chevron obtained the materials from Guerra upon which it now relies as early as July 13, 2012. Chevron, however, withheld such materials from Defendants and did not reveal its contacts with Guerra until the filing of the current Motion. The Motion is the first time that Chevron disclosed Guerra's story, its interactions with Guerra, and its compensation agreement with him. Prior to the Motion, and throughout the latter half of 2012

405942.2

and early 2013, Chevron did not produce any of the extensive collection of materials, electronic media, and documents it obtained from Guerra. Even after filing its Motion, Chevron waited until February 8, 2013, to offer the electronic media and various other materials it obtained from Guerra for inspection by Defendants. Attached hereto as **Exhibit 1** is a true and correct copy of Chevron's letter offering to make the Guerra materials available for inspection. This letter is offered for the limited purpose of showing Chevron's position on the Guerra materials and is not offered for the truth of the matter asserted.

7. Defendants' co-defendant Steven R. Donziger served his first set of requests for production on Chevron on July 10, 2012, only three days before Chevron began to receive key documents and materials from Guerra. Defendants served their first set of requests for production on Chevron on October 16, 2012. The materials Chevron obtained from Guerra are responsive to Defendants' requests for production, including the following requests in Defendants' first set of requests for production: Request Nos. 18, 24, 85, 117, 119. Dkt. 618, Ex. 1. Among other things, these requests seek "all communications with or concerning the presiding judges of the Lago Agrio litigation, whether before, during, or after an individual judge's participation in the case"; all documents related to "any investigation conducted that relates in any way to . . . any judge"; all documents "related to payments of any kind made or given by any person or entity to any official, employee, representative or agent of the ROE, including but not limited to . . . bribes"; all documents "related to any communications with any judge, official, or employee of the Lago Agrio Court"; and all documents "related to communications with, interference with, guidance to, instruction to, or pressure on the Lago Agrio Court by any person." *Id.* The Guerra materials are also responsive to Donziger's July 10, 2012 requests. Among other things, Donziger's requests ask Chevron to produce all documents

405942.2

"concerning Judge Alberto Guerra Bastidas … in both [his] judicial and nonjudicial capacities;" all documents "constituting or concerning any communications between Chevron" and Guerra; and "all documents concerning any investigation" of Guerra, "in both [his] judicial and nonjudicial capacities."  In response to these requests, Chevron agreed to produce documents only through July 10, 2012, before it first received documents from Guerra.  Dkt. 624-17; Dkt. 721 (Schedule 3).

8.  In addition, Chevron's current Motion relies on the affidavits of Alberto Racines and Adolpho Callejas.  Chevron, however, did not disclose these affidavits to Defendants in either this action or the Count 9 action until it filed the current Motion.  Similar to the materials from Guerra, these affidavits are also responsive to Defendants' discovery requests.  Dkt. 618, Ex. 1, Requests for Production Nos. 18, 24, 85, 117, 119.  If Chevron had disclosed these affidavits earlier, Defendants would have been able to obtain all relevant documents and take the depositions of Callejas and Racines about the contacts Chevron says it had with Guerra in 2009 and 2010.  On information and belief, and based upon my and my law firm's review of the evidence already in the record, *see, e.g*., Resp. to 56.1 Statement 181-206, it is my expectation that the relevant documents and deposition testimony would demonstrate that Guerra's allegations are false, or at the very least raise a fact issue for a jury trial.

9.  Chevron has refused to produce any documents from the email accounts to which Guerra gave Chevron access: albertoguerrab@hotmail.com and albertoguerra54@hotmail.com.  In exchange for $38,000 from Chevron, among other things, Guerra gave Chevron permission to access, inspect, copy, and preserve the contents of these two email accounts.  Dkt. 755-14 (Attachment A).  Chevron, however, has produced no documents from either account.  In response to Defendants' counsel's letter dated March 11, 2013 requesting that Chevron

405942.2

immediately produce any emails it obtained from these accounts, Chevron responded on March 14, 2013 that it was not able to obtain any "responsive" emails from either account. Attached hereto as **Exhibit 2 and 3** are true and correct copies of the parties' letters dated March 11, 2013 and March 14, 2013, respectively, on this issue. Exhibit 3 is offered for the limited purpose of showing Chevron's position with respect to the Guerra materials and is not offered for the truth of the matter asserted.

10.  Chevron's current Motion relies on, among other things, an affidavit and certain materials from Fernando Reyes. The Reyes affidavit was signed on October 12, 2012, but Chevron kept it secret for two full months, until December 12, 2012. Dkt. No. 658-18-658-21. Chevron also did not offer to make the materials it obtained from Reyes available for inspection until January 31, 2013, several days after it filed the current Motion. Attached hereto as **Exhibit 4** is a true and correct copy of Chevron's letter dated January 31, 2013 making the Reyes materials available for inspection. Exhibit 4 is offered for the limited purpose of showing Chevron's position with respect to the Reyes materials and is not offered for the truth of the matter asserted. If Chevron had disclosed the Reyes affidavit and related materials earlier, Defendants would have been able to review that material and include relevant documents in their opposition to Chevron's current Motion, as well as to take the depositions of Reyes as well as other witnesses relevant to Reyes' declaration, including Gustavo Pinto. On information and belief, and based upon my any my law firm's review of the evidence already in the record, *see, e.g.*, Resp. to 56.1 Statement 27-35, it is my expectation that these discovery materials and deposition testimony will confirm that Reyes' declaration is untruthful, or at the very least raise issues of fact for a jury trial.

405942.2

11. Although discovery in this case has been going on for over eight months, Chevron waited until two months ago to produce the vast majority of the documents responsive to Defendants' document requests in this case. Defendants' requests for production in this case were served on Chevron on October 16, 2012. Dkt. 618, Ex. 1. Based on my and my law firm's review of Chevron's production letters, it is my understanding and belief that, to date, Chevron has produced to Defendants a total of over 6 million pages of documents. It is further my understanding and belief that the majority of these materials were produced within the last two months. Since January 1, 2013, Chevron has produced over 3.2 million pages of documents to Defendants.

12. Under the discovery schedule set by this Court, Defendants have until May 31, 2013 to review and analyze Chevron's document productions and to prepare and depose any relevant witnesses. Dkt. 494.

13. Document discovery is far from complete. Chevron continues to produce documents, and produced documents as recently as March 14, 2013. This production alone included 27,293 pages of documents. Indeed, Chevron's March 14, 2013 production letter states that it is providing documents "as part of its *continuing* production," in the case. Chevron has provided Defendants with no indication as to when it will conclude its document production, or what portion of its responsive documents has been produced. Attached hereto as **Exhibit 5** is a true and correct copy of Chevron's production letter dated March 14, 2013.

14. Defendants have not had a chance to depose any of the at least 15 witnesses who submitted affidavits and reports in support of Chevron's current Motion. In fact, because document discovery is far from complete, no party has deposed any witnesses in this case.

405942.2

Moreover, this Court ruled in the last seven days on the number of depositions each side may take. Dkt. 910.

15. After being served with Chevron's current Motion for summary adjudication, Defendants identified 15 declarants who they wanted to depose prior to opposing Chevron's current Motion: Troy Dahlberg, Michael Green, Patrick Juola, James Spigelman, Michael Younger, Keith Rayner, Gustavo Romero Ponce, Adolfo Callejas Ribadeneira, Patricio Campuzano Merino, Enrique Carvajal Salas, Alberto Guerra Bastidas, Ivan Racines Enriquez, Andres Rivero, Doe 1, and Doe 2. Defendants requested that Chevron make these witnesses available for deposition prior to Defendants' deadline for responding to Chevron's Motion. Attached hereto as **Exhibit 6** is a true and correct copy of a letter from Defendants' counsel to the Court dated February 6, 2013 requesting for an extension of time on Defendants' deadline to respond to Chevron's Motion, to allow them to depose relevant witnesses.

16. By its letters dated February 12 and 13, 2013, Chevron stated that it was willing to make certain of the above witnesses available but only on limited dates and under certain conditions. Specifically, Chevron offered limited dates between February 25 and March 6, 2013 for most of the 15 witnesses Defendants identified in their February 6, 2013 letter to the Court. Attached hereto as **Exhibits 7 and 8** are true and correct copies of letters from Chevron's counsel dated February 12 and 13, 2013, respectively, to Defendants' counsel on this issue. These exhibits are offered for the limited purpose of showing the schedule offered by Chevron's counsel and not for the truth of the matter asserted.

17. In addition to the limited dates provided by Chevron for the witnesses whose testimony is at issue in Chevron's Motion, Chevron insisted that any deposition of any of these witnesses—regardless of the subject matters or scope of their testimony at trial—would only

405942.2

happen once. In other words, Chevron insisted that any deposition would be Defendants' only opportunity to depose these witnesses for this entire litigation. Attached hereto as **Exhibit 9** is a true and correct copy of Chevron's correspondence, dated February 15, 2013, on this issue. These exhibits are offered for the limited purpose of showing Chevron's counsel position with respect to deposition scheduling and not for the truth of the matter asserted.

18.  In light of Chevron's position, on February 15, 2013, Defendants informed Chevron that they could not accept the conditions imposed by Chevron and therefore would not be going forward with any depositions. Defendants explained that Chevron's unwillingness to agree to Defendants' modest request to be able to depose some of the declarants for a limited period of time focusing on the subject matters relevant to the current Motion, and resuming such depositions (and using the unused time remaining under the Federal Rules) later in the discovery period for other subject matters relevant to the broader case, is unreasonable. Attached hereto as **Exhibit 10** is a true and correct copy of Defendants' counsel's letter dated February 15, 2013 to counsel for Chevron on this issue.

19.  If Chevron had disclosed the Guerra allegations earlier, including starting in July 2012 when Chevron began to receive information from Guerra, Defendants could have propounded additional interrogatories, requests for admission and requests for production pertaining to these new allegations and evidence. Defendants could have issued document subpoenas to relevant third parties, including Guerra himself who now resides in the United States. On information and belief, and based upon my and my law firm's review of the evidence already in the record, *see, e.g.*, Resp. to 56.1 Statement 181-206, it is my expectation that the responses to this additional discovery would likely produce additional evidence further calling into question Guerra's allegations. If Chevron had disclosed the Guerra allegations earlier,

405942.2

Defendants could have sought to obtain deposition testimony from not only Guerra himself, but other relevant witnesses including Nicolás Augusto Zambrano Lozada and Ximena Centeno. On information and belief, and based upon my and my law firm's review of the evidence already in the record, it is my expectation that the deposition testimony would show that Guerra's allegations are false, or at the very least raise a fact issue as to which account is true.

20. In addition to being unable to depose any of the relevant witnesses, Defendants have been handicapped by this Court's Order prohibiting counsel from disclosing the declarations of Doe 1 and 2 to anyone except counsel of record. The Order has hindered Defendants' counsel's ability to investigate and rebut the factual allegations in these witnesses' declarations and in Chevron's declarations. In compliance with the Court's Order, Defendants' counsel has not disclosed the contents—or identity—of either Doe Declarant to anyone who is not counsel of record. Accordingly, Defendants' counsel has not had the benefit of the thoughts and knowledge of their clients or their clients' Ecuadorian lawyers in responding to these portions of Chevron's Motion.

21. Chevron's scorched-earth litigation tactics have prevented Defendants from being able to marshal a complete response to Chevron's current motion. The docket sheet of this case shows that over 200 filings have occurred since the beginning of the year, and over 150 filings since Chevron filed this Motion on January 28, 2013.

22. Since Chevron filed its motion, Chevron has served Defendants with more than 10,000 pages of motions, briefs, letters, and notices. During that same period of time, Defendants have had to respond to over 11 separate motions from Chevron, in addition to answering scores of discovery requests, meeting and conferring on numerous discovery issues

405942.2

including issues arising from a slew of subpoenas by Chevron, and moving to compel Chevron's responses to Defendants' own discovery requests.

23. The following six lawyers at Smyser Kaplan & Veselka, L.L.P. currently represent Defendants in this action: myself, Larry R. Veselka, Jarod R. Stewart, Hector R. Chavez, Tyler G. Doyle, and Garland D. Murphy. Each of these attorneys is involved in other cases that the firm also handles. In contrast, Chevron is one of the world's largest corporations, with annual revenues and profits ranging in the billions. Chevron's recently-served privilege logs, which exceeded 17,000 pages, disclosed that it has retained more 60 different law firms and over 2,000 legal personnel to work on this case. Its lead counsel, Gibson Dunn, has enlisted 114 lawyers to work on this case.

24. Attached hereto as **Exhibit 11** is a true and correct copy of the transcript of a March 5, 2013 hearing in the above-captioned matter.

25. Attached hereto as **Exhibit 12** is a true and correct copy of the February 27, 2013 declaration of Hugo Gerardo Camacho Naranjo.

26. Attached hereto as **Exhibit 13** is a true and correct copy of the February 27, 2013 declaration of Javier Piaguaje Payaguaje.

27. Attached hereto as **Exhibit 14** is a true and correct copy of a portion of Chevron Corporation's Supplemental Responses to Defendants Hugo Gerardo Camacho Naranjo's and Javier Piaguaje Payaguaje's First Set of Interrogatories in the above-captioned case, dated February 15, 2013. This exhibit is offered for the limited purpose of showing the damages that Chevron is claiming in this matter and is not offered for the truth of the matter asserted.

405942.2

28. Attached hereto as **Exhibit 15** is a true and correct copy of Defendant Hugo Gerardo Camacho Naranjo's Supplemental Objections and Responses to Chevron Corporation's First Set of Interrogatories in the above-captioned case, dated March 2, 2013.

29. Attached hereto as **Exhibit 16** is a true and correct copy of Defendant Javier Piaguaje Payaguaje's Supplemental Objections and Responses to Chevron Corporation's First Set of Interrogatories in the above-captioned case, dated March 2, 2013.

30. Attached hereto as **Exhibit 17** is a true and correct copy of the February 28, 2013 Affidavit of Dr. Juan Pablo Albán Alencastro.

31. Attached hereto as **Exhibit 18** is a true and correct copy of the December 8, 2006 Power of Attorney agreement between Pablo Fajardo Mendoza and, among others, Defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje.

32. Attached hereto as **Exhibit 19** is a true and correct copy of Chevron Corporation's Responses and Objections to Defendants Hugo Gerardo Camacho Naranjo's and Javier Piaguaje Payaguaje's Modified First Set of Interrogatories, Case No. 11-cv-3718 (LAK), dated August 25, 2011. This document is offered for the limited purpose of showing Chevron's prior statements about Alberto Guerra Bastidas and not for the truth of the matter asserted.

33. Attached hereto as **Exhibit 20** is a true and correct copy of a February 8, 2013 letter from Craig Smyser to Randy Mastro.

34. Attached hereto as **Exhibit 21** is a true and correct copy of a February 11, 2013 letter from Randy Mastro to Craig Smyser. This letter is offered for the limited purpose of showing Chevron's contentions about the Guerra materials it obtained and is not offered for the truth of the matter asserted.

405942.2

35. Attached hereto as **Exhibit 22** is a true and correct copy of a list summarizing Chevron Corporation's payments to or on behalf of Diego Borja between August 2009 and September 2011, as reflected in the documents attached as Exhibit 23 to this declaration.

36. Attached hereto as **Exhibit 23** is a true and correct copy of documents produced by Chevron Corporation in the above-captioned matter that reflect Chevron's payments to or on behalf of Diego Borja between August 2009 and September 2011.

37. Attached hereto as **Exhibit 24** is a true and correct copy of the February 28, 2013 Declaration of Raúl Rosero Rivas.

38. Attached hereto as **Exhibit 25** is a true and correct copy of an October 20, 2003 article in *El Universo* titled "Judge Guerra: The national justice system is competent."

39. Attached hereto as **Exhibit 26** is a true and correct copy of an October 18, 2009 article in *El Universo* titled "Former judge asks for investigation of complaints in case."

40. Attached hereto as **Exhibit 27** is a true and correct copy of the article titled "Leaked Cables Reveal Chevron Lobbying Efforts" published on September 22, 2011 in *Courthouse News Service*.

41. Attached hereto as **Exhibit 28** are true and correct copies of nineteen orders entered by Judge Nicolás Augusto Zambrano Lozada in Case No. 2003-0002, *Maria Aguinda y otros c. Chevron Corporation*, in the Provincial Court of Justice of Sucumbíos on the following dates: October 11, 2010; October 19, 2010; October 27, 2010; November 9, 2010; November 10, 2010; November 22, 2010; December 1, 2010; December 3, 2010; December 10, 2010; December 13, 2010; December 14, 2010; December 29, 2010; January 5, 2011; January 19, 2011; February 2, 2011; February 21, 2011; March 4, 2011; March 15, 2011; and March 18, 2011, all of which have been produced by Chevron Corporation in the above-captioned matter.

42. Attached hereto as **Exhibit 29** is a true and correct copy of Alberto Guerra's flight records from TAME Airlines, produced by Chevron Corporation bearing bates number CVX-RICO-5913615, which was designated as "Confidential" by Chevron pursuant to the Protective Order, Dkt. 723, and accordingly is being FILED UNDER SEAL.  Defendants do not concede that the document merits protection under the Protective Order and reserve the right to challenge the confidentiality of this document pursuant to the provisions of the Protective Order.

43. Attached hereto as **Exhibit 30** is a true and correct copy of documents produced by Chevron bearing bates numbers CVX-RICO-1157121 to CVX-RICO-1157287, which are exhibits to the "Fusion Memo."

44. Attached hereto as **Exhibit 31** is a true and correct copy of a chart titled "Index of Currently-Known Fusion Memo Materials Found as Submissions to the Lago Agrio Court."

45. Attached hereto as **Exhibit 32** is a true and correct copy of excerpts from the court document "Acta de Inspeccion Judicial al Pozo Aguarico 02" in Case No. 2003-0002, *Maria Aguinda y otros c. Chevron Corporation*, in the Provincial Court of Justice of Sucumbíos, which have been produced by Chevron in the above-captioned matter.

46. Attached hereto as **Exhibit 33** is a true and correct copy of the December 16, 2010 Order of the Provincial Court of Justice of Sucumbíos in Case No. 2003-0002, *Maria Aguinda y otros c. Chevron Corporation*, which was issued during the tenure of Nicolás Augusto Zambrano Lozada as presiding judge.

47. Attached hereto as **Exhibit 34** is a true and correct copy portions of the June 4, 2010 submission of Chevron Corporation in Case No. 2003-0002, *Maria Aguinda et al v. Chevron Corporation*, in the Provincial Court of Justice of Sucumbíos, which has been produced by Chevron in the above-captioned matter.

405942.2

48. Attached hereto as **Exhibit 35** is a true and correct copy of a page of the court record in Case No. 2003-002, *Maria Aguinda et al v. Chevron Corporation*, in the Provincial Court of Justice of Sucumbíos, produced by Chevron Corporation in the above-captioned matter.

49. Attached hereto as **Exhibit 36** are true and correct copies of excerpts from orders entered on February 3, 2008 and October 30, 2008 in Case No. 2003-002, *Maria Aguinda et al v. Chevron Corporation*, in the Provincial Court of Justice of Sucumbíos, produced by Chevron Corporation in the above-captioned matter. This exhibit is offered for the limited purpose of showing that digital submissions were made to the court in Lago Agrio and not for the truth of the matters asserted.

50. Attached hereto as **Exhibit 37** are true and correct copies of excerpts from reports submitted by an expert, Gerardo Barros, in Case No. 2003-002, *Maria Aguinda y otros c. Chevron Corporation*, in the Provincial Court of Justice of Sucumbíos on May 26, 2006 and March 28, 2007, both of which have been produced by Chevron in the above-captioned matter. This exhibit is offered for the limited purpose of showing that digital submissions were made to the court in Lago Agrio and not for the truth of the matters asserted.

51. Upon information and belief, the following Chevron motions (identified by date and time of submission) filed with the Ecuadorian appellate court concerned Chevron's "ghostwriting" claims: May 5, 2011, 10:50 a.m.; July 26, 2011, 5:48 p.m.; September 19, 2011, 1:15 p.m.; December 6, 2011, 4:47 p.m.; December 21, 2011, 4:28 p.m.; December 21, 2011, 4:45 p.m.

52. Upon information and belief, the following Chevron motions (identified by date and time of submission) filed with the Ecuadorian appellate court concerned Chevron's Cabrera and

405942.2

environment-related claims: April 21, 2011, 2:20 p.m.; May 5, 2011, 10:50 a.m.; September 19, 2011, 1:15 p.m.; December 6, 2011, 4:47 p.m.; December 21, 2011, 4:28 p.m.

53. Upon information and belief, the following Chevron motions (identified by date and time of submission) filed with the Ecuadorian appellate court concerned Chevron's claims of falsified signatures: 13, 2011, 10:05 a.m.; July 25, 2011, 3:10 p.m.; August 1, 2011, 10:18 a.m.; December 21, 2011, 4:47 p.m.

54. Upon information and belief, the following Chevron motions (identified by date and time of submission) filed with the Ecuadorian appellate court concerned Chevron's requests that the Lago Agrio Judgment be nullified for reasons including fraud: April 21, 2011, 2:20 p.m.; May 5, 2011, 10:50 a.m.; July 25, 2011, 3:10 p.m.; July 26, 2011, 5:48 p.m.; September 19, 2011, 1:15 p.m.; December 21, 2011, 4:25 p.m.

55. Attached hereto as **Exhibit 38** is a true and correct copy of the August 1, 2011 Expert Report of Joseph L. Staats, Ph.D.

56. Attached hereto as **Exhibit 39** is a true and correct copy of a February 2, 2009 memorandum produced to Chevron Corporation bearing the bates numbers WOODS-HDD-0012793-WOODS-HDD-0012805.

57. Attached hereto as **Exhibit 40** is a true and correct copy of the August 22, 2011 Expert Rebuttal Report of Ronald H. Butters, Ph.D.

58. Attached hereto as **Exhibit 41** is a true and correct copy of the February 22, 2012 Declaration of Richard J. Fateman, Ph.D.

59. Attached hereto as **Exhibit 42** is a true and correct copy of the July 28, 2011 Expert Report of Dr. Héctor Alberto Cabrera Suárez.

405942.2

60. Attached hereto as **Exhibit 43** is a true and correct copy of the Expert Report of Dr. José Julio Benítez Astudillo.

61. Attached hereto as **Exhibit 44** is a true and correct copy of an excerpt from Simon & Schuster's International Spanish Dictionary (2d ed. 1997).

62. Attached hereto as **Exhibit 45** is a true and correct copy of an excerpt from Louis A. Robb, Diccionario de Terminos Legales (1979).

Dated:     March 18, 2013.
           Houston, Texas

By: _____
Craig Smyser
*Admitted Pro Hac Vice*
Federal ID 0848

405942.2