UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEVRON CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>STEVEN DONZIGER, THE LAW OFFICES OF STEVEN R. DONZIGER; et al.,<br><br>　　　　　Defendants. | Case No. 11-CV-0691 (LAK) |

**DECLARATION OF MATTHEW M. WERDEGAR IN SUPPORT OF STEVEN DONZIGER, THE LAW OFFICES OF STEVEN R. DONZIGER AND DONZIGER & ASSOCIATES, PLLC'S APPLICATION FOR A CONTINUANCE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(D) AND IN OPPOSITION TO PLAINTIFF CHEVRON CORPORATION'S MOTION TO FOR PARTIAL SUMMARY JUDGMENT ON ALL CLAIMS, COUNTERCLAIMS AND AFFIRMATIVE DEFENSES, AND SUMMARY JUDGMENT ON DEFENDANTS' AFFIRMATIVE DEFENSE OF COLLATERAL ESTOPPEL**

735567.03

I, MATTHEW M. WERDEGAR, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am a partner in the law firm of Keker & Van Nest, LLP, counsel of record for Defendants Steven Donziger, The Law Offices of Steven R. Donziger, and Donziger & Associates, PLLC (collectively "Donziger") in the above-captioned matter. I submit this Declaration in support of Donziger's Application for a Continuance Pursuant to Federal Rule of Civil Procedure 56(d) and in Opposition to Plaintiff Chevron Corporation's Motion for Partial Summary Judgment on All Claims, Counterclaims and Affirmative Defenses, and Summary Judgment on Defendants' Affirmative Defense of Collateral Estoppel.

2. On January 28, 2013, Chevron filed the current motion, which seeks Partial Summary Judgment on All Claims, Counterclaims and Affirmative Defenses, and Summary Judgment on Defendants' Affirmative Defense of Collateral Estoppel (the "Motion"). Based upon my own review of Chevron's pleadings and a further review performed at my direction, I am informed and believe the Motion and supporting exhibits and affidavits total over 5,400 pages. Among the materials Chevron submitted is a 124-page Rule 56.1 Statement setting forth 344 separate allegedly undisputed facts, which facts appear to touch on and relate to every aspect of the near decade-long litigation and every disputed issue in this case.

3. In support of the 344 allegedly undisputed facts in its Rule 56.1 separate statement, Chevron cites to hundreds of documents culled from materials it obtained in numerous proceedings initiated under 28 U.S.C. §1782. Based upon my review of the record in this matter and records search performed at my direction, I am informed and believe that Chevron's discovery actions under section 1782 took place in over fifteen district courts across the country. These proceedings targeted over forty separate individuals and companies that had provided

assistance to the Ecuadorian Plaintiffs in the underlying Lago Agrio litigation, included Donziger and other legal counsel, law interns, litigation funders, banks, consulting experts, and non-governmental organizations. Specifically, Chevron brought the following section 1782 proceedings against the Ecuadorian Plaintiffs' counsel and supporters:

- *Chevron v. Stratus Consulting, David J. Chapman, Douglas Beltman, Jennifer M. H. Peers, David M. Mills, Peter N. Jones, Laura Belanger, and Ann S. Maest*, District of Colorado, Docket No. 10-cv-00047.

- *Chevron v. Charles William Calmbacher*, Northern District of Georgia, Docket No. 10-mi-00076.

- *Chevron v. 3 TM Consulting, LLC, and 3 TM International, Inc.*, Southern District of Texas, Docket No. 10-mc-00134.

- *Chevron v. Uhl, Baron, Rana & Associates, Inc. and Juan Cristobal Villao Yepez*, District of New Jersey, Docket No. 10-cv-02675.

- *Chevron v. E-Tech International and William Powers*, Southern District of California Docket no. 10-cv-01146.

- *Chevron v. Norman Nelson Alberto Wray Espinosa*, District of Columbia, Docket No. 10-mc-00371.

- *Chevron v. Mark Quarles*, Middle District of Tennessee, Docket No. 10-cv-00686.

- *Chevron v. Joseph Berlinger, Crude Productions, LLC, Third Eye Motion Picture Company, Inc., Michael Bonfiglio and Radical Media*, Southern District of New York, Docket No. 10-mc-00001.

- *Chevron v. Steven Donziger*, Southern District of New York, Docket No. 10-mc-00002.

3

735567.03

- *Chevron v. Richard Kamp and E-Tech International*, District of New Mexico, Docket No. 10-mc-00021

- *Chevron v. Charles Champ*, Western District of North Carolina, Docket No. 10-mc-00027

- *Chevron v. Carlos Emilio Picone*, District of Maryland, Docket No. 10-cv-02990

- *Chevron v. Daniel Rourke*, District of Maryland, Docket No. 10-cv-02989 Date Filed:

- *Chevron v. Jonathan S. Shefftz*, District of Massachusetts, Docket No. 10-mc-10352.

- *Chevron v. Lawrence W. Barnthouse*, Southern District of Ohio, Docket No. 10-mc-00053.

- *Chevron v. Douglas C. Allen*, District of Vermont, Docket No. 10-mc-00091.

- *Chevron v. Robert Paolo Scardina*, Western District of Virginia, Docket No. 10-cv-00549.

- *Chevron v. Kohn, Swift & Graf, P.C., and Joseph C. Kohn, Esq.*, Eastern District of Pennsylvania, Docket No. 10-mc-00208.

- *Chevron v. Cristobal Bonifaz*, District of Massachusetts, Docket No. 10-mc-30022

- *Chevron Corporation v. The Weinberg Group, et al.* District of Columbia, Docket No. 11-mc-00030.

- *Chevron Corporation v. Environmental Law Alliance Worldwide (ELAW)*, District of Oregon, Docket No. 11-mc-07003

- *Chevron Corporation v. Aaron Marr Page*, District of Maryland, Docket No. 11-mc-00395.

- *Chevron Corporation v. Banco Pichincha*, Southern District of Florida, Docket No. 11-cv-24599.

735567.03

4. In many of the 1782 proceedings listed in Paragraph 3, above, Chevron obtained documents as well as deposition testimony from the targets of the proceedings. Chevron has only recently produced to Donziger many of the documents Chevron obtained in these proceedings. Chevron produced to Donziger materials it had obtained through the 1782 proceedings as late as February 15 and February 21, 2013, weeks after Chevron filed the Motion. Donziger was not a party to, and did not participate in, any of the proceedings listed except for the 1782 action directed against him.

5. In support of Chevron's current Motion, Chevron submitted documents and materials, including affidavits, from the following fact and expert witnesses: Troy Dahlberg, Michael Green, Patrick Juola, James Spigelman, Michael Younger, Keith Rayner, Gustavo Romero Ponce, Adolfo Callejas Ribadeneira, Patricio Campuzano Merino, Enrique Carvajal Salas, Alberto Guerra Bastidas, Ivan Racines Enriquez, and Andres Rivero. In addition, Chevron submitted declarations from two individuals (aka Doe 1 and Doe 2) whose identity this Court has prohibited counsel from disclosing to anyone except counsel of record. Based on the dates and other information disclosed in the affidavits submitted in support of Chevron's Motion, it appears that Chevron spent many months, and in some cases years, investigating, gathering, and preparing these materials.

6. Among the materials Chevron submits in support of its Motion is an affidavit from former Ecuadorian judge Alberto Guerra Bastidas and certain documents it obtained from him in exchange for, according to Chevron's agreement with Guerra, cash payments totaling at least $38,000. *See* Dkt. No. 755-14, at 1-2. According to Chevron's agreement with Guerra, Guerra first approached Chevron to volunteer his testimony for this case in April 2012. *See* Dkt. No. 755-14, at 1. Chevron obtained the materials from Guerra upon which it now relies as early

735567.03

as July 13, 2012. *See id.* Chevron withheld these materials from Donziger, and did not reveal its contacts with Guerra to Donziger, until the filing of the current Motion. To my knowledge, the Motion is the first time that Chevron disclosed Guerra's identity, its interactions with Guerra, and its compensation agreement with him. Based upon a review of Chevron's production performed at my direction, I am informed and believe that, prior to the Motion, Chevron did not produce any of the extensive collection of materials, electronic media, and documents it obtained from Guerra. Chevron certainly did not disclose in its production letters that it was producing such materials. Even after filing its Motion, Chevron waited until February 8, 2013, to offer the electronic media and various other materials it obtained from Guerra for inspection by Defendants. Attached hereto as **Exhibit 1** is a true and correct copy of Chevron's letter offering to make the Guerra materials available for inspection.

7. Donziger served his First Set of Requests for Production on Chevron on July 10, 2013. The materials Chevron obtained from Guerra are responsive to Donziger's requests for production, including in particular Request Nos. 48, 49, and 50 in Donziger's First Set of Requests for Production. Dkt. No. 624-10, at 21-22. Among other things, these requests ask Chevron to produce all documents "concerning Judge Alberto Guerra Bastidas … in both [his] judicial and nonjudicial capacities;" all documents "constituting or concerning any communications between Chevron" and Guerra; and "all documents concerning any investigation" of Guerra, "in both [his] judicial and nonjudicial capacities." *Id.* In response to these requests, Chevron agreed to produce documents through July 10, 2012. *See* Dkt. No. 624-17, at 9-10; Dkt. No. 721 (Schedule 3).

8. In addition, Chevron's current Motion relies on the affidavits of Alberto Racines and Adolpho Callejas. To my knowledge, Chevron did not disclose these affidavits to Donziger

or the Ecuadorian Plaintiffs in either this action or the Count 9 action, until it filed the current Motion. Similar to the materials from Guerra, these affidavits are also responsive to Request Nos. 48-50 in Donziger's First Set of Requests for Production to Chevron, served on July 10, 2012.

9. According to Chevron's agreement with Guerra, in exchange for cash payments totaling at least $38,000 from Chevron, Guerra gave Chevron, among other things, permission to access, inspect, copy, and preserve the contents of these two email accounts: albertoguerrab@hotmail.com and albertoguerra54@hotmail.com. Dkt. No. 755-14 (Attachment A). Chevron, however, has produced no documents from either account. In response to Defendants' counsel's letter dated March 11, 2013 requesting that Chevron produce immediately any emails it obtained from these accounts, Chevron responded on March 14, 2013 that it was not able to obtain any "responsive" emails from either account. Chevron did not explain what it meant by "responsive." Attached hereto as **Exhibit 2 and 3** are true and correct copies of the parties' letters dated March 11, 2013 and March 14, 2013, respectively, on this issue.

10. Chevron's current Motion relies on, among other things, an affidavit and certain materials from Francisco Reyes. The Reyes affidavit was signed on October 12, 2012, but Chevron did not disclose the affidavit to Donziger until December 12, 2012. *See* Dkt. No. 658-18-658-21. Chevron also did not make the materials it obtained from Reyes available for inspection until January 31, 2013, several days after it filed the current Motion. Attached hereto as **Exhibit 4** is a true and correct copy of Chevron's letter dated January 31, 2013 making the Reyes materials available for inspection.

11. Although discovery in this case has been going on for over eight months, Chevron waited until just a couple of months ago to produce the majority of documents responsive to

Donziger's document requests in this case. As noted, Donziger's requests for production in this case were served on Chevron on July 10, 2012. Dkt. No. 624-10. Based upon a review of Chevron's productions and related production letters performed at my direction, I am informed and believe that, to date, Chevron has produced to Donziger a total of over 6 million pages of documents. I am further informed and believe that the majority of these materials were produced within the last two months. Since January 2013, Chevron has produced over 3.2 million pages of documents to Donziger.

12. Document discovery is far from complete. Chevron continues to produce documents, and produced documents as recently as March 14, 2013. This production alone included 27,293 pages of documents. Indeed, Chevron's March 14, 2013 production letter states that it is providing documents "as part of its *continuing* production," (emphasis added) in the case. Chevron has provided Donziger with no indication as to when it will conclude its production, or what portion of its responsive documents has been produced. Attached hereto as **Exhibit 5** is a true and correct copy of Chevron's production letter dated March 14, 2013.

13. Donziger has not had a chance to depose any of the 15 witnesses who submitted affidavits and reports in support of Chevron's Motion. Indeed, no party has commenced fact depositions in this action, and this Court only recently ruled on the number of depositions each side may take. Dkt. No. 910.

14. After being served with Chevron's Motion for summary adjudication, Donziger and the Ecuadorian Plaintiffs told the Court and Chevron that they would like to depose the following 15 witnesses before opposing Chevron's Motion: Troy Dahlberg, Michael Green, Patrick Juola, James Spigelman, Michael Younger, Keith Rayner, Gustavo Romero Ponce, Adolfo Callejas Ribadeneira, Patricio Campuzano Merino, Enrique Carvajal Salas, Alberto

8

735567.03

Guerra Bastidas, Ivan Racines Enriquez, and Andres Rivero. Defendants requested that Chevron make these witnesses available for deposition prior to Defendants' deadline for responding to Chevron's Motion. Attached hereto as **Exhibit 6** is a true and correct copy of Defendants' counsel's February 6, 2013 letter to the Court requesting an extension of time on Defendants' deadline to respond to Chevron's Motion, to allow them to depose relevant witnesses.

15. By its letters dated February 12 and 13, 2013, Chevron stated that it was willing to make certain of the above witnesses available but only on limited dates and under certain conditions. Specifically, Chevron offered limited dates between February 25 and March 6, 2013 for most of the 15 witnesses Defendants identified in their February 6, 2013 letter to the Court. Attached hereto as **Exhibits 7 and 8** are true and correct copies of letters from Chevron's counsel dated February 12 and 13, 2013, respectively, to Defendants' counsel on this issue.

16. In addition to providing only limited dates for the witnesses, Chevron insisted that any deposition of any fact witnesses—regardless of the subject matter or scope of their testimony at trial—would only happen once. In other words, Chevron insisted that any deposition would be Donziger's only opportunity to depose these witnesses for this entire case. As for the expert witnesses whose declarations Chevron relies upon in support of the Motion, Chevron only agreed to permit further depositions of these witnesses "should any of them provide expert reports after the date of their deposition that differ in material respects from the declarations submitted with Chevron's Motion" and then only as to "any new opinions in their subsequent-flied expert reports[.]" Attached hereto as **Exhibit 9** is a true and correct copy of Chevron's correspondence, dated February 15, 2013, on this issue.

17. In light of Chevron's unreasonable and untenable position, on February 15, 2013, Defendants informed Chevron that they could not accept such unilateral conditions imposed by

Chevron and therefore would not be going forward with the depositions. Defendants explained that Chevron's unwillingness to agree to Defendants' modest request to be able to depose some of the declarants for a limited period of time focusing on the subject matters relevant to the current motion, and resuming such depositions (and using the unused time remaining under the rules) later in the discovery period for other subject matters relevant to the broader case, was unreasonable. Attached hereto as **Exhibit 10** is a true and correct copy of Defendants' counsel's letter dated February 15, 2013 to counsel for Chevron on this issue.

18. The docket sheet of this case shows that over 200 filings have occurred since the beginning of the year, and over 150 filings since Chevron filed this motion on January 28, 2013.

19. Since Chevron filed its motion, I am informed and believe that Chevron has served Defendants with more than 10,000 pages of motions, briefs, letters, and notices. During that same period of time, Donziger has had to respond to over 11 separate motions from Chevron, in addition to answering scores of discovery requests, meeting and conferring on numerous discovery issues including issues arising from a slew of subpoenas by Chevron, and moving to compel Chevron's responses to Defendants' own discovery requests.

20. Chevron's recently-served privilege logs, which exceeded 17,000 pages, discloses that it has retained 60 different law firms and over 2,000 legal personnel to work on this case and related matters. Chevron's privilege logs list 114 attorneys from the law firm of Gibson Dunn alone.

21. Chevron's deliberate delay in producing the Guerra, Reyes, Racines and Callejas affidavits and related documents and other evidence has severely impacted Donziger's ability to marshal his opposition to the Motion. For example, had Chevron timely disclosed the new affidavits and documents included with its motion, Donziger could have propounded additional

interrogatories, requests for admission and request for production pertaining to this evidence and related issues. And Donziger could have issued document subpoenas to relevant third parties, including Guerra himself, who now resides in the United States. But Chevron waited until after the deadline to serve written discovery had passed before making any of this information available. Donziger also could have endeavored to obtain deposition testimony from other highly relevant witnesses, such as Judge Zambrano and former Selva Viva employee Ximena Centeno, showing that Guerra's affidavit, and Chevron's other new affidavits, are materially false and misleading. In addition, Donziger could have undertaken expert forensic analyses of the Guerra's materials. Because of Chevron's belated disclosure of these affidavits, Donziger has not had adequate time to secure this evidence prior to its deadline to oppose Chevron's motion.

22. Attached hereto as **Exhibit 11** is a true and correct copy of relevant excerpts of the January 20, 2011 deposition of Ann Maest.

23. Attached hereto as **Exhibit 12** is a true and correct copy of relevant excerpts of the January 29, 2011 deposition of Steven Donziger.

24. Attached hereto as **Exhibit 13** is a true and correct copy of an email dated June 11, 2009 from Steven Donziger to Brian Parker, which is labeled DONZ00113455 and was marked as Exhibit 1853 during the deposition of Steven Donziger.

25. Attached hereto as **Exhibit 14** is a true and correct copy of relevant excerpts of the July 19, 2011 deposition of Steven Donziger.

///

///

///

735567.03

26. Attached hereto as **Exhibit 15** is a true and correct copy of relevant excerpts of the September 13, 2011 deposition of Donald Moncayo.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 18th day of March, 2013 in San Francisco, California.

_____
Matthew M. Werdegar

735567.03