# EXHIBIT 1

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("*Agreement*") is made and entered into as of March 22, 2013 by and among Chevron Corporation ("*Chevron*"), Stratus Consulting, Inc. ("*Stratus*"), Douglas Beltman ("*Beltman*"), Ann Maest ("*Maest*" and together with Beltman and Stratus, the "*Stratus Parties*"). Chevron and the Stratus Parties are referred to collectively as the "*Parties*," or each, a "*Party*."

### RECITALS

WHEREAS, a suit styled *María Aguinda y Otros v. Chevron Corporation*, Case No. 002-2003 (the "*Lago Agrio Litigation*"), was filed against Chevron in the Provincial Court of Justice of Sucumbíos, Ecuador on May 7, 2003, alleging that Chevron was liable for purported environmental harms due to oil production activities conducted in Ecuador.

WHEREAS, the Lago Agrio Litigation resulted in a first instance judgment issued against Chevron on February 14, 2011, initially in the amount of approximately $18.2 billion (the "*Lago Agrio Judgment*");

WHEREAS, the Stratus Parties were retained by and participated in the Lago Agrio Litigation at the direction of attorneys in the United States, including Steven Donziger and the law firm of Kohn, Swift & Graf;

WHEREAS, on February 1, 2011, Chevron filed the action styled *Chevron Corporation v. Donziger et al.*, 11 Civ. 0691 (LAK), in the U.S. District Court for the Southern District of New York (the "*Court*"), alleging claims pursuant to the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c), (d), and state law claims including fraud, tortious interference, and unjust enrichment against the plaintiffs in the Lago Agrio Litigation and certain of their attorneys, representatives, and consultants, including the Stratus Parties (the "*RICO Action*") (Dkt. 283);

WHEREAS, on February 1, 2013, the Stratus Parties filed a Second Amended Answer, which asserted counterclaims in the RICO Action for defamation *per se* and *prima facie* tort;

WHEREAS, on February 28, 2013, Chevron moved to dismiss the Stratus Parties' counterclaims, and that motion is currently pending before the Court;

WHEREAS, each of the Stratus Parties and Chevron each deny the allegations asserted against them and deny any liability in the RICO Action; and

WHEREAS, Chevron and each of the Stratus Parties have agreed that it is in the best interests of the Parties to enter into this Agreement to resolve their respective claims in the RICO Action, and to settle and release, upon the terms set forth herein, any and all claims arising between or among them relating to the RICO Action.

# A G R E E M E N T

NOW, THEREFORE, in consideration of the above, the Parties hereto hereby agree as follows:

1. **<u>Agreement to Cooperate.</u>**

(a) <u>Discovery and Testimony</u>: Each of the Stratus Parties agree to cooperate fully in responding to Chevron's requests for discovery or information in the RICO Action, the arbitration currently pending in the Permanent Court of Arbitration, the Hague, Netherlands, under the U.S.-Ecuador Bilateral Investment Treaty, PCA Case No. 2009-23 (the "***BIT Arbitration***"), and any action pursuant to 28 U.S.C. § 1782 seeking discovery relating to the Lago Agrio Litigation or the BIT Arbitration or any action relating to the Lago Agrio Litigation or the Lago Agrio Judgment or against a "Non-Party Co-Conspirator," identified in Paragraph 18 and its subparts in the First Amended Complaint of the RICO Action, whether previously filed or to be filed in the future, in any jurisdiction (the "***Related Actions***"), whether in a court of law or an arbitration. Such agreement to cooperate shall include but not be limited to (1) responding to any outstanding or future Chevron discovery request in the RICO Action; (2) making Ann Maest and Douglas Beltman, and other Stratus employees as necessary, available to testify in person, by deposition or by written statement, under oath, in any stage of the RICO Action, the BIT Arbitration, or the Related Actions, at the request of Chevron upon reasonable notice; and (3) taking steps to obtain and produce to Chevron the complete, unredacted Stratus materials currently possessed by Stratus's counsel at Silver & DeBosky. Beltman and Maest each further specifically agrees to testify in person, by deposition or by written statement, under oath, in any stage of the BIT Arbitration, the RICO Action, or Related Actions, including hearing testimony, at the request of Chevron upon reasonable notice. The Stratus Parties each understand that they are obligated to tell the truth, as required by oath, affirmation, legal obligation, or declaration made under penalty of perjury, when providing written or oral testimony in any judicial, arbitral, or other forum, or giving written or oral statements in any investigation.

(b) <u>Confidentiality and Privilege Designations</u>: The Stratus Parties agree to remove any confidentiality designations on any documents they have produced or will produce in the RICO Action or Related Actions. The Stratus Parties further agree not to assert any common-interest or joint-defense privilege, attorney-client privilege, attorney work-product protection, or similar privileges or protections asserted over documents responsive to Chevron's discovery requests in the RICO Action or Related Actions and to produce such documents in a timely fashion. Notwithstanding the provisions of this subpart, the Stratus Parties may assert attorney-client privilege or attorney work-product protection over the Stratus Parties' communications with and work performed on behalf of the Stratus Parties by Zeichner Ellman & Krause LLP, the Law Offices of Gordon Mehler PLLC, and Andrew S. Lipton, Esq., and attorney-client privilege or attorney work-product protection over the Stratus Parties' communications with and work performed on behalf of the Stratus Parties by Rick Kornfeld but only to the extent such communication or work with Rick Kornfeld is dated after March 6, 2011. Chevron reserves the right to challenge any such assertion of privilege or work product protection on any grounds.

(c) <u>Duty to Meet</u>: The Stratus Parties agree to cooperate with Chevron in its ongoing investigation by meeting with counsel for Chevron, as reasonably requested, and by responding

to questions posed by Chevron's counsel. Such meetings shall occur at a reasonable location designated by Chevron or its counsel.

    2.    **Agreement Regarding Public Statements.**

    (a)    <u>By Chevron.</u> Chevron hereby agrees that it shall take no steps to promote and will take reasonable steps to prevent its agents, attorneys, or employees from making any public remarks, statements or opinions—whether orally, electronically, or in writing, and whether attributed or anonymous (including through website materials, internet posts, discussion boards, and publicity and/or promotional materials)—asserting that any or all of the Stratus Parties have committed fraud or have knowingly participated in the wrongdoing committed by Steven Donziger and the Lago Agrio Plaintiffs' representatives. Chevron shall also not make any private statements to clients or prospective clients of Stratus asserting that any or all of the Stratus Parties have committed fraud or have knowingly participated in the wrongdoing committed by Steven Donziger and the Lago Agrio Plaintiffs' representatives. Nothing herein shall prevent Chevron from making any statement or argument concerning this Agreement or the matters set forth in any oral or written testimony by any of the Stratus Parties. Chevron may make any statements regarding the Stratus Parties it deems appropriate, whether or not otherwise prohibited by this Agreement, in the event of a breach of this Agreement by the Stratus Parties as determined under Section 4 of this Agreement.

    Chevron agrees to remove the following content from its websites, blogs, and other internet media that Chevron directly controls: (1) the video entitled "Stratus Consulting's Role in Ecuador Litigation Fraud," currently available at http://www.theamazonpost.com/video; (2) "Boulder consulting firm, Stratus, may get no help from its insurance companies," currently available at http://www.theamazonpost.com/in-the-news/boulder-consulting-firm-stratus-may-get-no-help-from-its-insurance-companies; (3) "O Papel da Consultoria Stratus no Caso Fraudulento contra a Chevron," currently available at http://www.theamazonpost.com/portugues-blogs/o-papel-da-consultoria-stratus-no-caso-fraudulento-contra-a-chevron; (4) "O Papel da Consultoria Stratus no Caso Fraudulento contra a Chevron," currently available at http://www.theamazonpost.com/portugues-blogs/o-papel-da-consultoria-stratus-no-caso-fraudulento-contra-a-chevron-2; (5) "Stratus Consulting's Role in the Fraudulent Case against Chevron," currently available at http://www.theamazonpost.com/news/stratus-consultings-role-in-the-fraudulent-case-against-chevron; (6) "Law Week Colorado: A Bit Of A Jungle," currently available at http://www.theamazonpost.com/news/colorado-law-week-a-bit-of-a-jungle; (7) "In the News – Wizbang – Enviromental Scientist Caught Agreeing To Ignore Her Own Data, Make Up New Claims," currently available at http://www.theamazonpost.com/news/wizbang-enviromental-scientist-caught-agreeing-to-ignore-her-own-data-make-up-new-claims; (8) "Center for Individual Freedom – Declining Stratus for Eco-Suits?" currently available at http://www.theamazonpost.com/in-the-news/center-for-individual-freedom-declining-stratus-for-eco-suits; (9) "Shopfloor – Accused of Racketeering, Anti-Chevron Consultants Now Work for Feds on Gulf Spill," currently available at http://www.theamazonpost.com/in-the-news/shopfloor-accused-of-racketeering-anti-chevron-consultants-now-work-for-feds-on-gulf-spill; (10) "New York Times – Stratus Consulting, Defendant in Chevron Ecuador Lawsuit, Works as U.S. Government Consultant on BP Deepwater Horizon Spill," currently available at http://www.theamazonpost.com/in-the-news/httpbit-lykzahyv; (11) the document currently located at http://www.chevron.com/documents/pdf/ecuador/Stratus-Consulting-Ruling.pdf; (12)

the document currently located at http://www.theamazonpost.com/wp-content/uploads/20120618_Chevron-Reprint.pdf?; (13) the portion of the post under "The Cabrera Fraud: Ghostwriting Supposedly Neutral Damage Reports" consisting of the entire text of the bullet point stating: "When the fraud was exposed in discovery proceedings…" currently located at http://www.theamazonpost.com/the-fraudulent-case-against-chevron-in-ecuador; (14) the screenshot only used to click on the video called "The fraudulent case against Chevron in Ecuador Part2" and currently located at http://www.theamazonpost.com/video; (15) a paid search result for "Stratus Consulting" that returns a link to www.theamazonpost.com.  Chevron does not agree to remove any material unless it is specifically identified herein.

Chevron will take no action to allow and will take reasonable steps to prevent its agents, attorneys, or employees from releasing the specifically identified material.  Nothing in this Agreement limits Chevron's ability to submit to any court or arbitral tribunal any memoranda, correspondence, or other documents describing Stratus's role in the RICO Action, the Lago Agrio Litigation, the Lago Agrio Judgment, or the Related Actions, or limits Chevron's ability to provide any such material in response to a request from a government agency or a judicial subpoena, or to re-publish on its websites, blogs, and other internet media any such publicly filed court, agency or arbitration documents.

(b) **By the Stratus Parties:**  Each of the Stratus Parties hereby agree that they shall not make, or cause or allow and will take reasonable steps to prevent their agents, attorneys, or employees from making, at any time or place, in any way, mode, forum or media, any public remarks, statements, or opinions, orally, electronically, or in writing, whether attributed or anonymous (including through website materials, internet posts, discussion boards, and publicity and/or promotional materials), regarding the Lago Agrio Litigation, the underlying claims in the Lago Agrio Litigation, the RICO Action, the Related Actions, any work relating to reports or submissions in the Lago Agrio Litigation by Richard Stalin Cabrera Vega ("the Cabrera Report"), or any actions arising from or related to these matters, or regarding Chevron, its officers, agents, attorneys, employees in connection with the subject matter of the foregoing matters, except as otherwise permitted or approved as part of this Agreement, or as required by any court or government agency in any adjudicative proceeding or investigation.  Nothing herein shall prevent the Stratus Parties from making any statement concerning this Agreement or the matters set forth in any oral or written testimony by any of the Stratus Parties.

The Stratus Parties agree to remove any pre-existing statements regarding any and all matters related to Chevron, Richard Stalin Cabrera Vega, the Cabrera Report, the Lago Agrio Litigation, the Lago Agrio Judgment, the RICO Action, the BIT Arbitration, and the Related Actions, from any blogs, websites, or other media controlled by any of the Stratus Parties or any of their employees or agents.  The Stratus Parties agree that they will not in any remarks, statements, or opinions assert the factual or scientific validity or accuracy of all or any part of the Cabrera Report.

3. **Adverse Representation Provision.**  The Parties agree to the following adverse representation provision:

(a) Beltman and Maest agree, for a period of 20 years, not to provide services to or represent in any capacity, including, but not limited to, as a disclosed or undisclosed agent, representative, contractor, subcontractor, consultant, observer, testifying expert, or consulting expert, any party or entity in any active, potential, or threatened litigation against, any active or potential adjudication or administrative action, or any public or private investigation of Chevron. Upon receipt of information or notice, including, but not limited to, notice from Chevron that Beltman or Maest are in breach of this Adverse Representation Provision, Beltman and Maest agree to immediately withdraw from such representation. In the event that Beltman and Maest do not immediately withdraw from such representation, the provisions of Section 4 of this Agreement shall apply.

(b) For any matters in which Chevron is involved as more than a *de minimis* party (for the purposes of this Agreement, *de minimis* shall mean 1% or less of the total claimed or potential value at issue), or any matters in which Chevron is a *de minimis* party but the total claimed or potential value exceeds $50 billion dollars, Stratus agrees not to provide services to or represent in any capacity, including, but not limited to, as a disclosed or undisclosed agent, representative, contractor, subcontractor, consultant, observer, testifying expert, or consulting expert, any party or entity in any active, potential, or threatened litigation against, any active or potential adjudication or administrative action, or any public or private investigation of, Chevron. Upon receipt of information or notice, including, but not limited to, notice from Chevron that Stratus is in breach of this Adverse Representation Provision, Stratus agrees to immediately withdraw from such representation. In the event that Stratus does not immediately withdraw from such representation, the provisions of Section 4 of this Agreement shall apply.

Notwithstanding the foregoing, for any matters that (i) otherwise would fall within the scope of this subpart (b), and (ii) for which Stratus was retained to provide services to or represent in any capacity, including, but not limited to, as a disclosed or undisclosed agent, representative, contractor, subcontractor, consultant, observer, testifying expert, or consulting expert, any party or entity, and (iii) it was not reasonably foreseeable upon diligent inquiry and investigation that Chevron could be involved in the matter within 12 months after the time Stratus was retained, Stratus will not be required to withdraw from the matter, and Stratus agrees not to participate in any way in the allocation of costs, damages, or liability to or for any subgroup, tier, or defined collection of fewer than all parties, of which Chevron is a member. Upon receipt of information or notice, including, but not limited to, notice from Chevron that Stratus is in breach of this Adverse Representation Provision, Stratus agrees to immediately withdraw and officially disavow any allocation of costs, damages, or liability in which it participated. In the event that Stratus does not immediately withdraw and officially disavow any such allocation of costs, damages, or liability, the provisions of Section 4 of this Agreement shall apply.

(c) For any matters in which Chevron is involved as a *de minimis* party and the total claimed or potential value does not exceed $50 billion dollars, Stratus agrees not to participate in any way in the allocation of costs, damages, or liability to or for Chevron, and Stratus agrees not to participate in any way in the allocation of costs, damages, or liability to or for any subgroup, tier, or defined collection of fewer than all parties, of which Chevron is a member. Upon receipt of information or notice, including, but not limited to, notice from Chevron that Stratus is in breach of this Adverse Representation Provision, Stratus agrees to

immediately withdraw and officially disavow any allocation of costs, damages, or liability in which it participated.  In the event that Stratus does not immediately officially disavow and withdraw any such allocation of costs, damages, or liability, the provisions of Section 4 of this Agreement shall apply. Otherwise, for any matter falling within the scope of this subpart c, the Agreement Regarding Public Statements in Section 2 of this Agreement shall apply.

       (d)     For any matters in which (i) Chevron becomes involved in a matter in which Stratus has been retained to provide services to or represent another entity in that matter in any capacity, including, but not limited to, as a disclosed or undisclosed agent, representative, contractor, subcontractor, consultant, observer, testifying expert, or consulting expert, and (ii) Chevron becomes involved in that matter by acquiring a substantial interest in an entity involved in that matter, and (iii) Chevron's acquisition of that interest occurs *after* Stratus has submitted a proposal to be retained for that matter, Stratus agrees not to participate in any way in the allocation of costs, damages, or liability to or for Chevron, and Stratus agrees not to participate in any way in the allocation of costs, damages, or liability to or for any group, tier, or defined collection of parties of which Chevron is a member.  Upon receipt of information or notice, including, but not limited to, notice from Chevron that Stratus is in breach of this Adverse Representation Provision, Stratus agrees to officially disavow or withdraw any allocation of costs, damages, or liability in which it participated. In the event that Stratus does not officially disavow or withdraw any such allocation of costs, damages, or liability, the provisions of Section 4 of this Agreement shall apply. Otherwise, for any matter falling within the scope of this subpart d, the Agreement Regarding Public Statements in Section 2 of this Agreement shall apply.

       (e)     In the Portland Harbor matter, CERCLA-10-2001-0240, Stratus agrees not to participate in any way in the allocation of costs, damages, or liability to or for Chevron or any of its subsidiaries or related entities, and Stratus agrees not to participate in any way in the allocation of costs, damages, or liability to or for any group, tier, or defined collection of parties of which Chevron or any of its subsidiaries or related entities are a member. Stratus agrees that David Chapman will be permitted 6 weeks to make an orderly withdrawal from the matter and thereafter will have no further involvement in the matter, paid or unpaid, and will not review, comment on, or be consulted on any documents, conclusions, decisions, opinions or issues related to the matter.  Stratus further agrees that it will complete its work regarding "Phase 2" of the Portland Harbor matter, but will not participate in any way in Phase 3, Phase 4, or any other future phases of work at Portland Harbor, unless and until Chevron settles or is no longer involved in the Portland Harbor matter.  Upon receipt of information or notice, including, but not limited to, notice from Chevron that Stratus is in breach of this Adverse Representation Provision, Stratus agrees to immediately withdraw from its representation of any entity in the matter at issue and officially disavow or withdraw any allocation of costs, damages, or liability in which it participated.  In the event that Stratus does not immediately withdraw from such representation, and officially disavow or withdraw any allocation of costs, damages, or liability in which it participated, the provisions of Section 4 shall apply.  Otherwise, for any matter falling within the scope of this subpart e, the Agreement Regarding Public Statements in Section 2 of this Agreement shall apply.

       (f)     With the exception of subpart a, which shall apply in accordance with its terms, the remainder of this Section shall apply for a period of 10 years from the date of this Agreement.  After the expiration of any provisions in this Section, in any matter in which Stratus

provides services to or represents in any capacity, including, but not limited to, as a disclosed or undisclosed agent, representative, contractor, subcontractor, consultant, observer, testifying expert, or consulting expert, any party or entity in any active, potential, or threatened litigation against, any active or potential adjudication or administrative action, or any public or private investigation of, Chevron or any of its subsidiaries or related entities, the Agreement Regarding Public Statements in Section 2 of this Agreement shall not apply.

    4.    **Breach.**  In the event a Party asserts a breach of this Agreement has occurred, it shall notify the alleged breaching party in writing. Within 2 business days of receipt of such notice, the alleged breaching Party shall respond. If the Parties are unable to resolve the dispute, it shall be submitted for resolution as set forth below:

    a.  For any alleged breach of the cooperation provisions set forth in Section 1 of this Agreement, insofar as that alleged breach relates to the prosecution of the RICO action, the BIT Arbitration, or the Related Actions, the United States District Court for the Southern District of New York will retain jurisdiction over the parties. As to any such dispute, the parties agree to expedited resolution. If a dispute under Section 1 is resolved in Chevron's favor, the Stratus Party affected shall have 5 business days to proceed as directed, unless directed to do so on a more expedited basis. If such Stratus party fails to do so it shall be in breach under this Agreement;

    b.  For any alleged breach other than as set forth above in subpart a, or for any other dispute concerning this Agreement or the interpretation and enforcement of this Agreement, such alleged breach or dispute shall be submitted to arbitration before one arbitrator at Jams/ Endispute in New York, N.Y. agreed to by the Parties;

    c.  For any alleged breach of Section 3 of this Agreement, such alleged breach shall be submitted to arbitration before one arbitrator at Jams/ Endispute in New York, N.Y. agreed to by the Parties.  The Parties agree to expedited resolution.  If a dispute under Section 3 is resolved in Chevron's favor, then without the necessity of any confirmation of an award or decision, the Stratus Party found to have breached Section 3 will have 14 business days to implement such determination.  If the Stratus Party fails to do so, it shall be in breach under this agreement;

    d.  In the event of breach of Section 1 or Section 3 of this Agreement by any of the Stratus Parties, and the Stratus Party or Stratus Parties fail to timely cure the breach as determined pursuant to this Section, Chevron shall have the right to recover from the breaching Stratus Party or Stratus Parties as stipulated damages the sum of $5 million.  The Stratus Parties acknowledge that this stipulated damages provision is an integral and material part of the consideration for this Agreement, is included in this Agreement to relieve Chevron of the burden of proving actual damages resulting from any breach of Section 1 or Section 3 of this Agreement, is a reasonable approximation of the damages that Chevron would incur from a breach of Section 1 or Section 3 of this Agreement and, notwithstanding Section 18, is a non-severable provision.   In the event of a breach by any of the Stratus Parties of Section 1 of this Agreement related to the production of documents or meeting with counsel for Chevron that is not timely cured, Chevron shall have the right to seek specific performance of this provision.  In the event of a breach by any of the Stratus parties of Section 3 of this Agreement that is not timely cured, Chevron shall have the right to seek the removal of any of the Stratus parties from

the matter based on this Agreement, conflict of interest, disqualification, or any other basis available under applicable law.  Other than as specifically set forth in this subpart, a breach of any provision of this Agreement shall be subject to ordinary principles of law and equity with regard to damages.

    5.    **<u>Representations and Warranties</u>.**

    (a)    <u>By the Stratus Parties</u>.  The Stratus Parties jointly and severally represent and warrant to Chevron as follows:

    (i)    The execution, delivery, and performance by Stratus of this Agreement are within Stratus's powers, have been duly authorized by those members of Stratus whose approval is required by the terms of Stratus's respective organizational documents, require no government approval, and do not contravene any law or regulation or any contractual restriction applicable to or binding upon Stratus.  This Agreement is the legal, valid and binding obligation of each of the Stratus Parties, enforceable against each of the Stratus Parties in accordance with its terms.

    (ii)    Each of the Stratus Parties has the power, right, and authority to settle and release fully and completely all claims to be settled and released in this Agreement.  Stratus is duly organized, validly existing, and in good standing under the laws of the jurisdiction of its incorporation or organization.

    (iii)    No consent, approval, or authorization of or filing with any governmental authority or other third party is required to be obtained or made by any of the Stratus Parties in connection with the execution and delivery of this Agreement or the performance of its obligations hereunder, other than any consents, approvals, authorizations, or filings which have previously been obtained or made (and each of which is in full force and effect).

    (iv)    None of the Stratus Parties has any financial interest, contingent or otherwise, in any proceeds from the Lago Agrio Judgment or any litigation against Chevron.

    (v)    Andrew S. Lipton, Esq. was retained as outside counsel for Stratus Consulting, Inc. after the RICO Action was filed and to represent Stratus solely in that matter and the related insurance coverage action.  Andrew S. Lipton has not previously represented any Stratus Parties in any matter.

    (b)    <u>By Chevron</u>.  Chevron represents and warrants to the Stratus Parties as follows:

    (i)    The execution, delivery, and performance by Chevron of this Agreement and the other documents to be delivered hereunder are within Chevron's powers, have been duly authorized by Chevron, require no government approval, and do not contravene any law or regulation or any contractual restriction applicable to or binding upon Chevron.  This Agreement and the other documents to be delivered by Chevron hereunder are the legal, valid, and binding obligations of Chevron, enforceable against Chevron in accordance with their respective terms.

Page **8** of **14**

          (ii)    Chevron has the power, right, and authority to settle and release fully and completely all claims to be settled and released in this Agreement.  Chevron is a corporation duly organized, validly existing, and in good standing under the laws of the state of Delaware.  Chevron has all the requisite power and authority to execute and deliver this Agreement and to perform its obligations hereunder.

      6.    **Stipulation of Dismissal.**  Upon execution of this Agreement, the Parties will execute, by their respective attorneys, a Stipulation of Dismissal, with prejudice and without costs or attorneys' fees to either Party, and upon Conditions Precedent such Stipulation of Dismissal shall be filed with the United States District Court for the Southern District of New York promptly thereafter.  Such Stipulation of Dismissal shall substantially take the form of the Stipulation of Dismissal attached hereto as Exhibit A.

      7.    **Mutual Releases.**

          (a)    With the execution and delivery of this Agreement, Chevron does hereby forever release, discharge, and acquit any and all claims, demands, obligations, suits, and causes of action of whatever kind, nature, or description whatsoever, whether known or unknown, suspected or unsuspected, which it may have against each of the Stratus Parties, their officers, directors, employees, shareholders, agents, servants, assigns, predecessors, successors, successors-in-interest, and attorneys , now or hereafter, arising out of, or by reason of, or in any manner connected with  the subject matter of, alleged in, or giving rise to the RICO Action.  Except as provided in Section 4, Chevron irrevocably covenants and agrees never to institute or cause to be instituted or to continue to prosecute any suit or other form of action or proceeding of any kind or nature whatsoever against the Stratus Parties, its officers, directors, employees, shareholders, agents, servants, assigns, predecessors, successors, and successors-in-interest, and attorneys by reason of or in connection with the foregoing matter.  It is expressly understood that the release of each of the Stratus Parties and their attorneys does not extend to Joseph Silver or Martin Beier or the law firm of Silver & DeBosky, or any person or entity identified in Chevron's complaint in the RICO action as a defendant or co-conspirator other than the Stratus Parties and Joshua Lipton and David Chapman.

          (b)    With the execution and delivery of this Agreement, each of the Stratus Parties does hereby forever release, discharge, and acquit any and all claims, demands, obligations, suits, and causes of action of whatever kind, nature, or description whatsoever, whether known or unknown, suspected or unsuspected, which each may have against Chevron, its officers, directors, employees, shareholders, parent corporations, subsidiaries, divisions, agents, servants, assigns, predecessors, successors, successors-in-interest, affiliated companies, attorneys,  and insurers, now or hereafter, arising out of, or by reason of, or in any manner connected with the subject matter of, alleged in, or giving rise to, the RICO Action, the Lago Agrio Litigation, or any Related Actions.  Except as provided in Section 4, each of the Stratus Parties irrevocably covenant and agree never to institute or cause to be instituted or to continue to prosecute any suit or other form of action or proceeding of any kind or nature whatsoever against Chevron, its officers, directors, employees, shareholders, parent corporations, subsidiaries, divisions, agents, servants, assign, predecessors, successors, successors-in-interest, affiliated companies, attorneys, and insurers, by reason of or in connection with any of the foregoing matters, claims or causes of action.

(c) The matters released hereby, however, shall not include any claims, demands, obligations, suits, and causes of action or liabilities of Chevron or each of the Stratus Parties arising under this Agreement.

(d) It is hereby further understood and agreed that the acceptance of delivery of this Agreement by Chevron and each of the Stratus Parties shall not be deemed or construed as an admission of liability by any party released by the terms hereof.

(e) It is hereby further understood and agreed that nothing in the acceptance of delivery of this Agreement shall prevent Chevron from maintaining legal action or seeking damages against any other party involved in the RICO Action, Lago Agrio Litigation, or any Related Actions, except for as against each of the Stratus Parties.

8. **Indemnification.**  From and after the date of this Agreement, each of the Stratus Parties shall indemnify Chevron from and against and in respect of any and all losses, damages, claims, costs and expenses, interest, awards, judgments, fines and penalties (including reasonable attorneys' fees and expenses) (collectively, "*Losses*") suffered or incurred by Chevron resulting from, arising out of or relating to (i) any inaccuracy in or breach of any representation or warranty of such Stratus Party contained in Section 5(a) of this Agreement, (ii) any breach or non-performance by such Stratus Party of their covenants and agreements contained in this Agreement, or (iii) any claim whether now or in the future against such Stratus Party arising out of or related to the Stratus Parties' work in the Lago Agrio Litigation or Related Actions.

9. **Approved Public Statement.**  Chevron and the Stratus Parties will each issue a press release announcing the agreement, comprised of language to be agreed upon by the Parties, within ten (10) days of the date that this Agreement is becomes effective under Section 22. The language agreed upon shall be considered permitted or approved for the purposes of Section 2 of this Agreement.

10. **Successors in Interest.**  The Parties agree that this Agreement shall be binding upon the Parties and, as applicable, to the extent they remain under the Parties' control, their heirs, executors, administrators, dependents, predecessors, successors, subsidiaries, divisions, alter egos, affiliated corporations, and related entities, and their present officers, directors, partners, employees, attorneys, assigns, agents, representatives, and any or all of them, and any past officers, directors, partners, employees, attorneys, assigns, agents, representatives.

11. **No Assignment.**  Each Party warrants and represents that it has not assigned or transferred to any other person any of the claims, causes of action, or other matters that are released by this Agreement.

12. **Entire Agreement.**  This Agreement contains the entire agreement and understanding concerning the subject matter of the Agreement between the Parties and supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral. Each of the Parties to this Agreement acknowledges that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation, or warranty, express or implied, not contained in this Agreement to induce any party to execute this Agreement. The Parties further acknowledge that they are not executing this Agreement in

reliance on any promise, representation, or warranty not contained in this Agreement.  It is expressly understood and agreed that this Agreement may not be altered, amended, modified or otherwise changed in any respect, except by a writing duly executed by the Parties, their successors or assigns in interest, or their authorized representatives.

       13.    **Advice of Counsel.**  Each Party represents that it has been represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement and that it has executed this Agreement with the consent and upon the advice of such counsel, or that it has had the opportunity to seek such consent and advice.  Each Party acknowledges that it has read this Agreement and assents to all the terms and conditions contained in this Agreement without any reservations and that it has had, or has had the opportunity to have had, the same explained to it by its own counsel, who have answered any and all questions which have been asked of them, or which could have been asked of them, with regard to the meaning of any of the provisions of this Agreement.

       14.    **No Admissions.**  By entering into this Agreement, no Party intends to make, nor shall be deemed to have made, any admission of any kind.  The Parties agree that they are entering into this Agreement to avoid the costs of further litigation and to settle potential disputes between and among the Parties.  This Agreement is the product of informed negotiations and compromises of previously stated legal positions.  Nothing contained in this Agreement shall be construed as an admission by any Party as to the merit or lack of merit of any particular claim, counterclaim, or defense.  Any statements made in the course of negotiations have been and shall be without prejudice to the rights of the Parties in any disputes or transactions with any other person or entity not party to this Agreement.

       15.    **Governing Law.**  This Agreement shall in all respects be interpreted, enforced, and governed by the laws of the State of New York without reference to New York's principles concerning conflicts of laws.

       16.    **Counterparts.**  This Agreement may be executed in one or more counterparts, each of which shall be an original as against any party who signed it, and all of which shall constitute one and the same document.

       17.    **Construction.**  The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.  It is understood and acknowledged that this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or its counsel has participated in the drafting of this Agreement.

       18.    **Severability of Agreement.**  If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable for any reason, in whole or in part, the remaining provisions not so declared shall nevertheless continue in full force and effect, but shall be construed in such a manner so as to effectuate the intent of this Agreement as a whole, notwithstanding such stricken provision or provisions. Chevron and the Stratus Parties agree that in the event any part of this Agreement is rendered or declared invalid or unenforceable, they

will negotiate, in good faith, to agree on a permitted replacement part that reflects their original intent.  The Parties agree that this Section shall not apply to Section 4, subpart d.

       19.       **Amendment and Waiver.**  Neither this Agreement, nor any of the provisions hereof, may be changed, waived, discharged or terminated, except by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

       20.       **Attorneys' Fees, Costs, and Expenses.**  Each party shall bear its own attorneys' fees, costs, and expenses incurred in connection with this Agreement, including any existing or future attorneys' fees, costs, and expenses associated with compliance with Section 1.  In the event of any litigation relating to this Agreement, including arbitration under Section 4, the prevailing party shall be entitled to recover its reasonable attorneys' fees, expenses and costs.  In the event that Maest and/or Beltman cease to be affiliated with Stratus, the reasonable travel costs and expenses incurred by Maest and/or Beltman associated with compliance with Section 1 of this Agreement will be borne by Chevron.

       21.       **No Third Party Beneficiaries.**  Nothing contained in this Agreement, expressed or implied, is intended to confer upon any person or entity other than the Parties hereto any benefits, rights, or remedies.

       22.       **Conditions Precedent**.  The effectiveness of this Agreement is conditioned on the following:  The entry of an order by the Honorable Lewis A. Kaplan (a) granting approval of this Agreement, and (b) that the United States District Court for the Southern District of New York will retain continuing jurisdiction over the Parties as set forth in Section 4 of this Agreement.

       23.       **Notices.**  Any notice required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been given either (a) upon actual receipt or three (3) days after deposit in the United States mail, registered or certified mail, postage prepaid, return receipt requested; (b) upon actual receipt if sent via reputable overnight courier; or (c) upon actual confirmation of receipt, if by email  All notices shall be addressed as follows:

If to Chevron:                     General Counsel
                                         Chevron Corporation
                                         6001 Bollinger Canyon Road
                                         San Ramon, CA 94583

                                         Randy M. Mastro
                                         Andrea Neuman
                                         Gibson, Dunn & Crutcher LLP
                                         200 Park Avenue
                                         New York, NY 10166
                                         rmastro@gibsondunn.com
                                         aneuman@gibsondunn.com

| | |
|---|---|
| If to Stratus: | Joshua Lipton<br>Stratus Consulting, Inc.<br>P.O. Box 4059 (80306)<br>1881 9th Street, Suite 201<br>Boulder, Colorado 80302<br>jlipton@stratusconsulting.com |
| If to Douglas Beltman: | Douglas Beltman<br>Stratus Consulting, Inc.<br>P.O. Box 4059 (80306)<br>1881 9th Street, Suite 201<br>Boulder, Colorado 80302<br>dbeltman@stratusconsulting.com |
| If to Ann Maest: | Ann Maest<br>Stratus Consulting, Inc.<br>P.O. Box 4059 (80306)<br>1881 9th Street, Suite 201<br>Boulder, Colorado 80302<br>amaest@stratusconsulting.com |

[The remainder of this page is intentionally left blank]

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the date first written above.

CHEVRON CORPORATION

By: _____
Kari H. Endries
Assistant Secretary for Chevron Corporation

STRATUS CONSULTING

By:_____
Douglas Beltman
Executive Vice President, Stratus Consulting, Inc.

DOUGLAS BELTMAN

By:_____

ANN MAEST

By:_____

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the date first written above.

CHEVRON CORPORATION

By:_____
Kari H. Endries
Assistant Secretary for Chevron Corporation

STRATUS CONSULTING

By:_____
Douglas Beltman
Executive Vice President, Stratus Consulting, Inc.

DOUGLAS BELTMAN

By:_____

ANN MAEST

By:_____

Page 14 of 14

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the date first written above.

CHEVRON CORPORATION

By:_____
    Kari H. Endries
    Assistant Secretary for Chevron
    Corporation, Inc.

STRATUS CONSULTING

By:_____
    Douglas Beltman
    Executive Vice President, Stratus
    Consulting, Inc.

DOUGLAS BELTMAN

By:_____

ANN MAEST

By:_____*Ann Maest* (signed)_____