## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

CHEVRON CORPORATION,

                   Plaintiff,

    v.

STEVEN DONZIGER, THE LAW
OFFICES OF STEVEN R. DONZIGER,
et al.,

                   Defendants.

CASE NO. 11-CV-0691(LAK)

**DEFENDANTS HUGO GERARDO CAMACHO AND JAVIER PIAGUAJE PAYAGUAJE'S RESPONSE IN OPPOSITION TO CHEVRON CORPORATION'S MOTION TO SANCTION AND HOLD THE DONZIGER DEFENDANTS AND LAPS REPRESENTATIVES IN CONTEMPT OF COURT**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND .................................................................................................. 2

    A.    Camacho and Piaguaje Have Produced All Responsive Documents
        in Their Possession. ...................................................................... 2

    B.    The Ecuadorian Lawyers' and Agents' Documents Are Not Within
        Camacho or Piaguaje's Possession, Custody, or Control. ....................... 3

    C.    Camacho and Piaguaje Cannot Produce Documents Outside of
        Their Possession, Custody, or Control. ............................................. 5

    D.    The Ecuadorian Action for Protection Was Instituted to Obtain a
        Definitive Statement of Ecuadorian Law, Not to Create an
        Impediment to any U.S. Court Order. ............................................... 6

    E.    Camacho and Piaguaje Did Not Refuse to Comply with the Court's
        February 13, 2013 Order—They Cannot Comply as a Matter of
        Ecuadorian Law. ......................................................................... 9

ARGUMENT ..................................................................................................... 10

I.    Contempt is Unwarranted. .............................................................................. 10

    A.    The Court Cannot Order Contempt or Sanctions because it Lacks
        Personal Jurisdiction Over Camacho and Piaguaje. ............................. 10

    B.    As a Matter of Ecuadorian Law, Camacho and Piaguaje Have No
        Ability to Produce Documents in the Possession or Control of
        Their Ecuadorian Lawyers and Agents. ............................................ 11

        1.    Ecuadorian Law Prohibits the Lawyers from Turning Over
            to Camacho and Piaguaje Documents Belonging to All of
            the Lago Agrio Plaintiffs. ...................................................... 12

        2.    An Ecuadorian Court Order Prohibits the Lawyers and
            Agents from Turning Over to Camacho and Piaguaje
            Documents Belonging to All of the Lago Agrio Plaintiffs ............... 12

        3.    Chevron's Complaints about the Ecuadorian Protection
            Order Fail. ......................................................................... 13

i

  C.  Camacho and Piaguaje Diligently Attempted to Comply with the
     Discovery Requests and February 13 Order. ........................................................16

  D.  Because Compliance is Impossible, Contempt is Unwarranted ...........................17

  E.  Contempt or Other Sanctions Cannot Be Entered Against Camacho
     and Piaguaje Based on the Acts of their Ecuadorian Attorneys. ..........................18

II.  None of the Requested Alternative Sanctions are Warranted............................................19

  A.  Chevron Cannot Undermine a Merits Trial Through its Request
     For Drastic Sanctions Effectively Awarding Judgment........................................20

  B.  The Court Should Not Enter Any Finding Or Inference Based On
     Camacho And Piaguaje's Inability To Produce Documents Outside
     Of Their Possession. .............................................................................................21

III.  Chevron's Complaints about Document Production and Interrogatory
   Responses Do Not Merit Sanctions. ...............................................................................24

CONCLUSION......................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps;">CASES</span>

*Badgley v. Santacroce,*
    800 F.2d 33 (2d Cir. 1986)........................................................................................17, 18

*Baker v. Gen. Motors Corp,*
    86 F.3d 811 (8th Cir. 1996) ............................................................................................19

*Chevariat v. Williams Pipeline Co.,*
    11 F.3d 1420 (7th Cir. 1993) ..........................................................................................17

*Cohen v. Horowitz,*
    No. 07 Civ. 5834 (PKC) 2008 WL 2332338 (S.D.N.Y. June 4, 2008) ..................................18

*Gucci America, Inc. v. Weixing Li,*
    2012 WL 5992142 (S.D.N.Y. Nov. 15, 2012)......................................................................15

*In re Grand Jury Subpoena,*
    218 F.Supp.2d 544 (S.D.N.Y. 2002)..................................................................................15

*In re Keene Corp.,*
    168 B.R. 285 (S.D.N.Y. 1994).........................................................................................10

*In re September 11th Liability Ins. Coverage Cases,*
    243 F.R.D. 114 (S.D.N.Y. 2007) ......................................................................................10

*In re Westinghouse Elec. Corp. Uranium Contracts Litigation,*
    563 F.2d 992 (10th Cir. 1977) .........................................................................................20

*Leadsinger, Inc. v. Cole,*
    No. 05 Civ. 5606(HBP), 2006 WL 2266312 (S.D.N.Y. Aug. 4, 2006)..................................10

*Linde v. Arab Bank, PLC,*
    269 F.R.D. 186 (E.D.N.Y. 2010) ......................................................................................16

*Linde v. Arab Bank, PLC,*
    706 F.3d 92 (2d Cir. 2013)........................................................................................13, 16

*M'Baye v. New Jersey Sports Prod., Inc.,*
    2008 WL 1849777 (S.D.N.Y. April 21, 2008) ....................................................................18

*Maria Aguinda et al v. Chevron Corporation,*
    Case No. 2003-002................................................................................................. *passim*

406292.4

*Motorola Credit Corp. v. Uzan*,
   388 F.3d 39 (2d Cir. 2004)..................................................................................14

*MTB Bank v. Fed. Armored Exp., Inc.*,
   93 CIV. 5594 (LBS), 1998 WL 43125 (S.D.N.Y. Feb. 2, 1998)..............................................11

*Orbit One Commn's, Inc. v. Numerex Corp*,
   271 F.R.D. 429 (S.D.N.Y. 2010) .........................................................................22

*Peninsula Asset Management (Cayman) Ltd. v. Hankook Tire Co. Ltd.*,
   2005 WL 3046284 (S.D.N.Y. Nov. 14, 2005)........................................................17

*Reino de Espana v. American Bureau of Shipping*,
   03 Civ. 3573, 2005 WL 1813017 (S.D.N.Y. Aug. 1, 2005) ....................................17

*Republic of Ecuador v. Connor*,
   --- F.3d ----, 2013 WL 539011 (5th Cir. Feb. 13, 2013) .......................................15

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
   306 F.3d 99 (2d Cir. 2002)............................................................................21, 22

*Rimkus Consulting Group, Inc. v. Cammarata, et al.*,
   688 F.Supp. 2d 598 (S.D. Tex. 2010) ..................................................................24

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
   490 F.3d 130 (2d Cir. 2007)..................................................................................2

*Signature Combs, Inc. v. U.S.*,
   222 F.R.D. 343 (W.D. Tenn. 2004) ......................................................................20

*Sobol v. E.P. Dutton, Inc.*,
   112 F.R.D. 99 (S.D.N.Y. 1989) ...........................................................................18

*Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*,
   357 U.S. 197 (1958)...........................................................................................20

*Star Direct Telecom, Inc. v. Global Crossing Bandwith, Inc.*,
   No 05-CV-6734T, 2012 WL 1067664 (W.D.N.Y. Mar. 22, 2012) ........................21

*Ulyanenko v. Metropolitan Life Ins. Co.*,
   275 F.R.D. 179 (S.D.N.Y. 2011) .........................................................................20

*Worldcom Network Services, Inc. v. Metro Access, Inc.*,
   205 F.R.D. 136 (S.D.N.Y. 2002) .........................................................................20

**STATUTES**

28 U.S.C. § 1782.................................................................................................................15, 24

FED. R. CIV. P. 34.........................................................................................................................18

FED. R. CIV. P. 37.........................................................................................................................10

FED. R. EVID. 401.........................................................................................................................22

FED. R. EVID. 502.........................................................................................................................24

**OTHER AUTHORITIES**

Restatement (Third) of the Foreign Relations Law of the United States § 441............................13

406292.4

# PRELIMINARY STATEMENT[1]

No basis exists in law or in fact for sanctions against Defendants.  Chevron Corporation seeks litigation death-penalty sanctions against Camacho and Piaguaje based on their inability to force their lawyers in Ecuador to violate Ecuadorian law.  Chevron wants to obtain judgment through discovery procedure rather than on the "merits" of its legally tenuous and factually vacuous third-party fraud claim against Camacho and Piaguaje, residents of Ecuador with no ties to New York.  But Camacho and Piaguaje cannot produce documents they do not have or force production from other individuals who refuse to give them the documents.  The Court should deny the requested sanctions for several reasons:

*First*, the Court lacks personal jurisdiction over Camacho and Piaguaje.  The Court has not determined that it has personal jurisdiction and has not resolved their jurisdictional challenge.  Under these circumstances, the Court should not sanction parties beyond its jurisdictional reach.

*Second*, Camacho and Piaguaje have produced all documents in their possession.  Under Ecuadorian law Camacho and Piaguaje have no control over the requested additional documents in Ecuador and no practical ability to force the persons who putatively have control over the documents to produce them.  It is thus impossible for Camacho and Piaguaje to comply with the Court's February 13, 2013 Order.  There is thus no basis for contempt or sanctions.  Nor can Camacho and Piaguaje be charged with lack of effort in attempting to comply with the Court's Order.  Camacho and Piaguaje have diligently requested and attempted to obtain the documents in the possession and control of their Ecuadorian lawyers and agents on numerous occasions during the last nine months since Chevron served its document requests.  Moreover, under Ecuadorian law, they cannot be held vicariously liable for the independent decisions of counsel.

---

[1] This Opposition is made subject to and without waiver of Camacho's and Piaguaje's contest of personal jurisdiction.  (Dkt. 518; Dkt. 568).

406292.4

The Court should not sanction Camacho and Piaguaje or hold them in contempt based on their lawyers' unwillingness to violate the law of their own homeland.  *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) "[A] party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain.").

*Lastly*, the requested case-dispositive, or even lesser sanctions of adverse findings or inferences, would be improper on this record.  As a sanction for Defendants' inability to produce documents they do not have (even though they have sought them) and cannot produce, Chevron seeks (1) judgment without the need for Chevron to present any evidence or proof of its claims or (2) a show trial where the jury only hears Chevron's "evidence" and story and receives instructions that point them toward Chevron's desired outcome, all without mention of Chevron's pollution of the Ecuadorian rainforest.  The Court should not engage in such a denial of due process and a fair trial.  The Court should deny Chevron's motion for sanctions.[2]

## BACKGROUND

### A.   Camacho and Piaguaje Have Produced All Responsive Documents in Their Possession.

Camacho and Piaguaje, residents of the remote Amazonian rainforest, have produced to Chevron all non-privileged responsive documents in their possession, a total of 1184 pages. (Declaration of Jarod Stewart, ¶¶ 2-3).  In September 2011, they produced 466 pages in the Count 9 action.  (*Id.*, ¶ 2).  After receiving Chevron's requests in this action, Camacho and Piaguaje produced all additional documents, 716 bates-numbers of materials, between September 2012 and February 2013.  (*Id.*, ¶ 3).[3]  Their privilege log contains 478 entries.  (*Id.*).

---

[2] To the extent relevant to Chevron's motion against them, Camacho and Piaguaje join in Donziger's Opposition.

[3] Camacho and Piaguaje's responses to Chevron's requests noted that, where documents were potentially within their possession, they would produce documents that had not already been produced.  (See, e.g., Dkt. 608, Ex. 2; Stewart Decl., Ex. A).

2

Camacho and Piaguaje have had little to no involvement with the day-to-day of the lawsuit, *Maria Aguinda et al v. Chevron Corporation*, Case No. 2003-002, in the Provincial Court of Justice, Sucumbíos, Ecuador ("*Aguinda*").  They are not involved in the legal strategy.  They have not "reviewed the court filings in [*Aguinda*] and ha[ve] no personal knowledge of the content of virtually any of those filings."  (Dkt. 918, Exs. 15, 16, Supp. Resp. No. 22).  Camacho and Piaguaje each have "no personal knowledge regarding most of the actions taken by lawyers and others in the Chevron litigations to hold Chevron responsible for what it did to [his] family and community."  (*Id.*, Supp. Resp. No. 23).

Camacho and Piaguaje produced all documents within their possession that were responsive to Chevron's June 7, 2012 requests.  Their production of all documents within their possession negates any factual basis for sanctions.

### B.   The Ecuadorian Lawyers' and Agents' Documents Are Not Within Camacho or Piaguaje's Possession, Custody, or Control.

Chevron's sanctions argument is based on forcing Camacho and Piaguaje to turn over documents from other Ecuadorians, including their lawyers.  Ecuadorian law governs the relationships put at issue by Chevron's arguments.  The clients/principals (Camacho, Piaguaje), attorneys (Fajardo, Sáenz, Prieto), and agents (Yanza) are all citizens of Ecuador.  The power of attorney and retainer agreements between Camacho/Piaguaje and Mr. Fajardo are governed by Ecuadorian law.  (Dkt. 106-6 (Ex. 481); Dkt. 355-32 (Ex. 1106)).  Chevron's arguments about attorney-client or agent-principal relationships, based on case law from New York, are thus inapposite.  (Dkt. 894, at 4).

Under Ecuadorian law, Camacho and Piaguaje do not have the legal right to obtain upon demand documents created, compiled, or obtained by their attorneys or agents in the course of the *Aguinda* suit that belong to all of the Plaintiffs.  (Dkt. 563, Ex. 1; Dkt. 580, Ex. A; Stewart

Decl., Ex. D).  Defendants took this position when Chevron first sought documents from them in the United States.  (*See* Dkt. 96, Case No. 11-cv-3718 (LAK), filed June 30, 2011) ("Mr. Camacho and Mr. Piaguaje do not control the various individuals from whom Chevron seeks documents. Even assuming Messrs. Camacho and Piaguaje *were* able to obtain documents in the possession of their attorneys, these documents would be limited to materials prepared in the scope of the representation of *these two individuals*.") (emphasis in original). Under Ecuadorian law, when one lawyer represents a group of clients, a "quasi-contract of community" has been created such that the information the lawyer obtained or created in the course of his representation of that group of clients belongs to all clients and not to one in particular.  (Dkt. 580, Bermeo Aff., ¶ 6; Stewart Decl., Ex. D, Villalba Report, ¶ 4.3).[4]  "[N]o party may request that the documents be divided, much less that all of them be made available" to him without obtaining unanimous consent.  (*Id.*, ¶¶ 4.3, 4.7).  Before any of the information the lawyer obtained in the representation can be given to one of the clients, the authorization of all clients is required for one of them to obtain access to that information.  (*Id.*, ¶ 4.7; Dkt. 563, Bermeo Aff., ¶ 3; Dkt. 580, Bermeo Aff., ¶ 6).  That authorization is not present here.  (Stewart Decl., Ex. B; Stewart Decl. Ex. C; Dkt. 836, Ex. 3).[5]  If the lawyer discloses the information without consent, he is subject to penalties including imprisonment for up to five years.  (Dkt. 563, Ex. 1, ¶ 2; Dkt. 580, Bermeo Aff., ¶ 6; Stewart Decl., Ex. D, Villalba Report, ¶ 4.6).

---

[4] The same rule would apply to agents who represents a group of principals in common, since an agent must also be entrusted to safeguard the confidential information of the principals.  Moreover, under Chevron's theory that Fajardo controls Yanza's documents, this principle of Ecuadorian law would apply to "the other Ecuadorian agents" such as Yanza. (Dkt. 562, at 3 ("[T]he attorneys have 'control' over the other agents' documents.")).

[5] Chevron has refused to produce documents from a number of lawyers it terms "Outside Counsel."  (Dkt. 580). This includes all documents in the possession of the vast majority of the attorneys who represented the company in connection with the Lago Agrio litigation, including a number of Ecuadorian attorneys.  (*Id.*).

### C.     Camacho and Piaguaje Cannot Produce Documents Outside of Their Possession, Custody, or Control.

Chevron's motion is based on an erroneous assumption of an essential fact.  Chevron mistakenly claims (as it claimed in its August 2012 motion to compel) that Camacho and Piaguaje have refused to obtain documents from Ecuador.  Wrong.  Camacho and Piaguaje and their U.S. counsel, Smyser Kaplan & Veselka, L.L.P. ("SKV"), have repeatedly asked their Ecuadorian lawyers for documents that would be responsive to Chevron's requests for production.  (Stewart Decl., ¶¶ 4-8, 13).  After sending Mr. Fajardo and Mr. Sáenz copies of Chevron's June 7, 2012 requests for production, Camacho and Piaguaje and SKV asked Mr. Fajardo and his colleagues on several occasions throughout June, July, August and September 2012 to provide copies of all relevant, responsive documents.  (Stewart Decl., ¶¶ 5-8).  These requests were made in person, over the telephone, and via email.  (*Id.*).  Each time, Mr. Fajardo responded that under Ecuadorian law he was required to obtain the permission of all of the *Aguinda* Plaintiffs before he could release information belonging to the collective group to just two of its members and that consent had been refused.  (*Id.*).  Each time, Mr. Fajardo responded that he faced administrative and criminal penalties if he turned over the requested documents to Camacho or Piaguaje without the unanimous consent of the *Aguinda* Plaintiffs.  (*Id.*; *see also* Dkt. 563, Ex. 2; Stewart Decl., Ex. C).  Mr. Sáenz gave the same rejections and reasons. (Stewart Decl., ¶¶ 5-8).  Mr. Fajardo even stated that if he were to turn over the documents to Camacho or Piaguaje, other *Aguinda* Plaintiffs had informed him that they would make use of all available judicial tools to stop him.  (Stewart Decl., Ex. C).

Camacho and Piaguaje do not have possession, custody, or control of the documents requested in order to produce them to Chevron.   They cannot produce what they do not have.

**D.    The Ecuadorian Action for Protection Was Instituted to Obtain a Definitive Statement of Ecuadorian Law, Not to Create an Impediment to any U.S. Court Order.**

Camacho and Piaguaje's inability to produce documents from their Ecuadorian counsel was known to Chevron long before it served the document requests at issue.  (Dkt. 96, 11-cv-3718(LAK)).  Thus, on August 13, 2012, before meeting and conferring with Defendants and without referring to any particular document requests, Chevron filed a motion to compel Defendants to produce "all responsive documents in the possession, custody, or control of their agents in Ecuador."  (Dkt. 562, at 4).  Chevron's motion mistakenly relied on inapplicable New York agency law.  (*Id.*).  Two days later, Camacho and Piaguaje responded by arguing that Chevron's motion was (1) premature because it was filed without any attempt to meet and confer and (2) improper because Chevron asked for an advisory ruling in the abstract, failing to address any particular request for production.  (Dkt. 563).  Defendants stated that they had tried but could not obtain the documents from Mr. Fajardo, who declined to subject himself to penalties under Ecuadorian law for divulging the information belonging to all the *Aguinda* Plaintiffs.  (*Id.*).  Defendants also submitted the declaration of Dr. Armando Bermeo Castillo, a former Justice and President of Ecuador's highest court, stating that Ecuadorian law prohibits an Ecuadorian lawyer like Mr. Fajardo from providing to Camacho or Piaguaje documents compiled in prosecuting the *Aguinda* suit.  (*Id.*, Ex. 1).  Three weeks later, in a belated attempt to shore up its failure to submit any evidence relevant to the applicable law, Chevron submitted an unauthorized reply brief along with a responsive declaration on Ecuadorian law.  Defendants then provided a rebuttal declaration on Ecuadorian law from Dr. Bermeo.  (Dkt. 580, Ex. A).

Without a ruling from an Ecuadorian court as to the correct answer, the question of whether the requested documents were in Camacho and Piaguaje's control would turn on competing declarations from Ecuadorian legal experts.  Given that the only way to resolve an

issue of foreign law is to ask a court in that foreign country for a ruling, and consistent with Mr. Fajardo's other clients' statements that they would use all available judicial tools to stop him from turning over documents to Camacho and Piaguaje, the undersigned counsel suggested to Mr. Fajardo in early October 2012 that someone in Ecuador seek a declaration from an Ecuadorian court as to the rights and obligations of the lawyers and clients in this relationship governed by Ecuadorian law.  (Smyser Decl., ¶ 2; Stewart Decl., ¶ 9).  Mr. Fajardo did not indicate then whether he would act on the suggestion.  (*Id.*).

Octavio Ismael Cordova Huanca, one of the *Aguinda* Plaintiffs who had refused to give Mr. Fajardo consent in September 2012 and who stated that he would pursue all available legal remedies against Mr. Fajardo if he were to turn over the documents without unanimous consent, hired a separate lawyer and filed an action for protection against Pablo Fajardo, Juan Pablo Sáenz, Julio Prieto, and Luis Yanza on October 18, 2012.  (Dkt. 895, Ex. 3508).[6]  The petition sought an order precluding them "from delivering any part of the information to Chevron Corporation" because it is "extremely delicate, since it reflects the totality of the options, plans, and legal strategies that the [Ecuadorian lawyers] have prepared in their ongoing battle against Chevron" and disclosure would "irreparably harm the rights" mentioned in the petition, including constitutional rights.  (*Id.*, at 1-2).

The trial court misunderstood the petition, believing it to be an attempt to obtain a declaration against a U.S. court order and denied it on that basis.  (*Id.*, Ex. 3509).   Mr. Cordova,

---

[6] This was not a "plan to avoid complying with [] discovery obligations."  (Dkt. 894, at 6).  After making a suggestion about seeking a definitive court ruling on the disputed question, the undersigned counsel did not know any details about this lawsuit other than the fact that it had been filed, until January 15, 2013, when the protection order was entered. (Smyser Decl., ¶¶ 3-6).  Counsel simply received updates as to whether or not a decision had been issued in the case.  (*Id.*).  Before January 15, 2013, the undersigned counsel had not seen any of the pleadings or orders and was unaware of who had filed the action, where it was filed, or what the petition sought.  (*Id.*).  Mr. Smyser did not suggest excluding Chevron from the proceeding.  (*Id.*, ¶ 4).  Seeking a court ruling to know the correct answer under Ecuadorian law is no evidence of bad faith or "collusion."

through his attorney, appealed, arguing that his "action for protection does NOT seek to annul a court order. It seeks to prevent individuals (the Defendants) from divulging sensitive information that would result in a violation of my constitutional rights." (Dkt. 895, Ex. 3512, at 4). The appellate court agreed. (*Id.*, Ex. 3513). The panel, consisting of Judges Wilfrido Erazo Araujo, Nelson Wilfrido Guaman Guerrero, and Maria Avila Delgado, noted that an action for protection was permitted if it concerned the violation of a constitutional right, the action by the defendant would bring about serious harm, and the harm cannot be remedied through administrative channels. (*Id.* at 46). The appellate panel found that the trial court's dismissal of the action was inconsistent with these legal principles (in other words, the petition met the legal requirements for an action for protection) and remanded with instructions to allow the action. (*Id.* at 47).

At a hearing before the trial court on January 11, 2013, Mr. Cordova's attorney, Dr. Samaniego argued that the information requested by Chevron was "confidential" since it "constitutes our plans, ideas, and strategies for addressing the case against the oil company" and disclosure would give Chevron "an unlimited advantage with respect to our claims that justice be done in this case." (Dkt. 895, Ex. 3516). Dr. Samaniego argued that if Mr. Fajardo and others turned over this information to Camacho and Piaguaje it would violate Mr. Cordova's constitutional rights to confidentiality, access to courts, and effective judicial protection. (*Id.*). The "disastrous consequences" that would result included violations of "the right to life, the right to health, and the right to live in a healthy sustainable environment" since "the company would not carry out the court-ordered environmental remediation action" if it were able to block enforcement of the *Aguinda* judgment by having access to Plaintiffs' confidential files containing their privileged plans and strategies. (*Id.*). In response, Mr. Fajardo stated that "in the face of strong pressure that we, the attorneys and social leaders are receiving in this case, and in the face

of a growing threat, even the threat of our attorneys being sanctioned in the United States, we have discussed the matter and decided to turn over the information Chevron is requesting." (*Id.*).

On January 15, 2013, the Court granted the action for protection and entered an order (the "Ecuadorian Protection Order") prohibiting Fajardo, Sáenz, Prieto, and Yanza from turning over documents related to the representation of all Plaintiffs in the *Aguinda* case. (Dkt. 734, Ex. A).

### E.   Camacho and Piaguaje Did Not Refuse to Comply with the Court's February 13, 2013 Order—They Cannot Comply as a Matter of Ecuadorian Law.

On February 13, 2013, notwithstanding (1) the provisions of Ecuadorian law barring disclosure, (2) the expert opinion of Dr. Bermeo, and (3) the Ecuadorian Protection Order, the Court issued a brief order granting Chevron's motion to compel in full. (Dkt. 787). The Court did not provide the reasoning behind its decision, promising that a memorandum opinion would be forthcoming. (*Id.*). The memorandum opinion and reasoning have not yet been provided.

Camacho and Piaguaje have not refused to comply with or deliberately disobeyed the Court's February 13th Order. On February 15, the undersigned counsel sent a letter to Mr. Fajardo, asking him immediately to notify counsel whether he or any other persons or entities associated with the *Aguinda* plaintiffs would provide to Camacho and Piaguaje the materials sought by Chevron, as ordered by the Court. (Dkt. 836, Ex. 2). Mr. Fajardo responded on February 18, stating that he would not deliver the documents requested by Chevron and ordered by the Court based on Ecuadorian law and an Ecuadorian court order prohibiting him from doing so. (Dkt. 836, Ex. 3). On February 20, 2013, Camacho and Piaguaje informed the Court that Mr. Fajardo had refused to provide them the requested materials. (Dkt. 836). Camacho and Piaguaje have no ability to comply with the February 13th Order as a matter of Ecuadorian law.

## ARGUMENT

## I.   Contempt is Unwarranted.

Chevron bears the burden of establishing its entitlement to sanctions under Rule 37 of the Federal Rules of Civil Procedure.  *See In re September 11th Liability Ins. Coverage Cases*, 243 F.R.D. 114, 125 (S.D.N.Y. 2007).  Chevron has not met its burden here, as there is no evidence of willful noncompliance with the February 13th Order.  The evidence shows that Camacho and Piaguaje have done everything possible to obtain the documents but cannot do so.

### A.   The Court Cannot Order Contempt or Sanctions because it Lacks Personal Jurisdiction Over Camacho and Piaguaje.

The Court's Order does not apply to Defendants.  Camacho and Piaguaje, a *campesino* and a canoe operator living in the remote Ecuadorian jungle, lack minimum contacts with New York. (Dkt. 518; Dkt. 568).[7]  Moreover, Chevron's claims of third-party fraud and conspiracy all center on conduct allegedly occurring in Ecuador.  (*Id.*).  They do not "arise from" any alleged New York contacts by these two life-long residents of the Amazon.  (*Id.*).

Because the Court lacks personal jurisdiction over Camacho and Piaguaje, the Court's February 13th Order is thus void and of no legal effect against Camacho and Piaguaje, and any purported failure to comply cannot give rise to contempt.  *See Leadsinger, Inc. v. Cole,* No. 05 Civ. 5606(HBP), 2006 WL 2266312, at *11–12 (S.D.N.Y. Aug. 4, 2006) (where New York court did not have personal jurisdiction over defendant, it could not hold him in contempt for alleged violation of TRO); *In re Keene Corp.,* 168 B.R. 285, 291 (S.D.N.Y. 1994) ("It is ... beyond cavil that the claim for civil contempt must fall if the order that was disobeyed ... exceeded the power of the issuing court.").

---

[7] Camacho and Piaguaje incorporate by reference as if fully set forth herein their briefing and arguments made in support of their motion to dismiss.  (Dkt. 518; Dkt. 568).

406292.4

**B.     As a Matter of Ecuadorian Law, Camacho and Piaguaje Have No Ability to Produce Documents in the Possession or Control of Their Ecuadorian Lawyers and Agents.**

Camacho and Piaguaje do not have control over documents in the possession of their Ecuadorian lawyers and agents.  Control is defined as "the legal right, authority, or ability to obtain upon demand documents in the possession of another." *MTB Bank v. Fed. Armored Exp., Inc.*, 93 CIV. 5594 (LBS), 1998 WL 43125, *4 (S.D.N.Y. Feb. 2, 1998).  Chevron argues that Camacho and Piaguaje have "a legal right to the documents in Fajardo's files", citing to inapplicable New York law about the attorney-client relationship.  (Dkt. 894, at 11 (citing Dkt. 84, 11-cv-3718 (LAK) ("[l]awyers are agents for their clients" under New York law)).  Whether they have a legal right to the documents is governed by Ecuadorian law, which forbids disclosure by Messrs. Fajardo, Sáenz, Prieto, and Yanza.  The "retainer agreements"—which state that "[t]he Plaintiffs' files shall be and remain the property of the Plaintiffs"—do not change this conclusion.  (Dkt. 106-6 (Ex. 481); Dkt. 355-32 (Ex. 1106)).  Camacho and Piaguaje have the right to any documents that are theirs individually, which they have produced to Chevron, but only "the Plaintiffs" (plural) have the right to "the Plaintiffs'" (plural) files.  (Dkt. 355-32 (Ex. 1106)).  The documents belong to all of the Plaintiffs, not just one or two of them.  Under Ecuadorian law, the files are held in common and cannot be released to one member of the community without the unanimous consent of all.  (Dkt. 563, Ex. 1; Dkt. 580, Ex. A; Stewart Decl., Ex. D).  Camacho and Piaguaje have no legal right to the requested documents in Ecuador.

Chevron's arguments about "ability" to obtain the documents fare no better.  Mr. Fajardo providing videos he received anonymously showing Chevron's rigging of judicial inspections in the presence of bodyguards from the Ecuadorian military is irrelevant to whether he can provide information belonging to the *Aguinda* plaintiffs to Camacho and Piaguaje individually.  The videos did not belong to the Plaintiffs.  Nor were there any such restrictions on the non-

11

confidential, non-privileged information disclosed in the declarations and documents provided by Messrs. Fajardo and Sáenz. Camacho and Piaguaje do not have the ability to obtain documents which their lawyers refuse to produce based on potential criminal penalties for revealing the confidential and privileged information of all their clients.

1.     **Ecuadorian Law Prohibits the Lawyers from Turning Over to Camacho and Piaguaje Documents Belonging to All of the Lago Agrio Plaintiffs.**

Ecuadorian law and culture take privacy rights seriously. Confidentiality is addressed in constitutional and civil code provisions, including the Constitution, which "guarantees the conscience clause to all persons, and professional secrets . . . ." (Dkt. 563, Ex. 1; *see also* Dkt. 580, Ex. A; Stewart Decl., Ex. D). Art. 335.1 of the Judicial Code prohibits an attorney from "revealing secrets of its client, their documents, or their instructions." (*Id.*). Numerous articles of the Penal Code would subject Mr. Fajardo and the other lawyers to fines and imprisonment if they disclosed personal information or professional secrets and documents of the other forty-five *Aguinda* plaintiffs. (*Id.*). Two former Justices of the Ecuadorian Supreme Court have opined as to how these provisions proscribe Mr. Fajardo and the other Ecuadorian counsel from providing such material. (*Id.*). Mr. Fajardo has responded to Camacho and Piaguaje's requests to produce documents as demanded by Chevron by declining to violate those legal proscriptions and to subject himself to those penalties. (Dkt. 563, Ex. 2; Stewart Decl., Ex. C; Dkt. 836, Ex. 3).

2.     **An Ecuadorian Court Order Prohibits the Lawyers and Agents from Turning Over to Camacho and Piaguaje Documents Belonging to All of the Lago Agrio Plaintiffs**

The Ecuadorian Protection Order prohibits Messrs. Fajardo, Sáenz, Prieto, and Yanza from turning over materials created or compiled in connection with the *Aguinda* suit. (Dkt. 734 Ex. A, at 3-4). It is well established that "a state may not require a person to do an act in another state that is prohibited by the law of that state or the law of the state of which he is a national."

Restatement (Third) of the Foreign Relations Law of the United States § 441.[8]  Camacho and Piaguaje cannot obtain any additional documents to produce to Chevron because they cannot force their lawyers and agents to violate Ecuadorian law and the Ecuadorian Protection Order.

### 3.      Chevron's Complaints about the Ecuadorian Protection Order Fail.

Chevron and the Court have labeled the Ecuadorian Protection Order "collusive."  The Court recently called it "troublesome" that "the only attorney appearance listed on the decision is that of Fajardo."  (Dkt. 905, at 49).  The Court believed that that there was "no evidence of record" to support the undersigned counsel's representation, "in an unsworn letter," that "the two parties to the [Ecuadorian] proceeding were represented by separate counsel."  (*Id.*, at 48 n.201). With all due respect, the Court made an error of fact.  There is, and was, abundant evidence in the record (most of it submitted by Chevron and in the Court's file at the time of Dkt. 905) that the plaintiff in the action for protection, Mr. Cordova, was represented by his own counsel.

Dr. Samaniego's name is "listed on the decision" and appears on every pleading and in every argument made by the plaintiff in that case.  The original petition, filed October 18, 2012, states:  "I sign with my counsel, Dr. Nicolás Samaniego Agila, whom I expressly authorize to file any motion and appear at any proceeding necessary to safeguard my rights."  (Dkt. 895, Ex. 3508, at 8).  When the original petition was denied, Dr. Samaniego filed a motion for reconsideration on behalf of his client.  (*Id.*, Ex. 3510).  After reconsideration was denied, Dr. Samaniego filed the appeal.  (*Id.*, Ex. 3512).  Upon remand to the trial court, Dr. Samaniego appeared and argued on behalf of Mr. Cordova at the January 11, 2013 hearing:

---

[8] Chevron's reliance on *Linde v. Arab Bank, PLC*, 706 F.3d 92 (2d Cir. 2013) is misplaced. In that case, the party who was sanctioned actually possessed the documents at issue, but declined to produce them on foreign law grounds.  *Id.* at 97-101.  Here, in contrast, Camacho and Piaguaje do not have possession of the documents at issue. And the record establishes that those who do have possession, custody or control of the documents are not willing to provide them to Camacho or Piaguaje, despite notice of the February 13 order and repeated requests

13

> This being the date and time set for the hearing, it is declared to be convened and, first, the Judge advises the parties of their obligation to comply with the provisions of Art. 14 of the Law on Judicial Guarantees and Constitutional Oversight; next *giving the floor to the plaintiff, who says, through his counsel*, with respect to the proceeding:

(*Id.*, Ex. 3516, at 1 (emphasis added)).

Mr. Fajardo did not appear on behalf of Mr. Cordova at any stage of the proceeding. He was not arguing "on behalf of Mr. Cordova", who had Dr. Samaniego present making all of his arguments on his behalf. (*Id.*). The Court's conclusion that "section FOUR [of the January 15, 2013 decision] quotes Fajardo" arguing "on behalf of Mr. Cordova", Dkt. 905, at 49, was incorrect, another error of fact, and based on the erroneous assumption that Mr. Cordova lacked separate counsel. Mr. Fajardo in fact disagreed with Mr. Cordova on the central point at issue, stating that "we have discussed this matter and decided to hand over the information that Chevron is demanding." (Dkt. 734, Ex. A, at 3). The case was not "collusive in the sense that ... the ostensible defendants agreed with the ostensible plaintiff." (*See* Dkt. 905, at 48). The Ecuadorian court entered an order to protect Mr. Cordova's constitutional rights, which were threatened by Mr. Fajardo's statement, not to do what "all of the parties" asked the court to do.

Chevron's argument that Defendants sought an Ecuadorian court order to "obstruct this Court's order without informing the Court or Chevron", Dkt. 894, at 14, is baseless. The argument is based largely on *Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004), which is inapposite. First, in that case, the defendants "deliberately courted legal impediments to the enforcement of a federal court's orders." *Id.* at 60. Here, Camacho and Piaguaje did not seek any order, much less deliberately. As threatened in September 2012, (Stewart Decl., Ex. C), one of Mr. Fajardo's other clients sued him to prevent disclosure in Ecuador. Second, there was no order of this Court to "obstruct" as of October 18, 2012, when Mr. Cordova filed the action for

protection, or as of January 15, 2013, when the Ecuadorian Protection Order issued.[9]   Third, Ecuadorian law did not require notice to Chevron.   (Stewart Decl., Ex. D, Villalba Report, ¶¶ 6.1, 6.2).   Fourth, the undersigned counsel could not have provided much notice of anything as counsel's knowledge was limited to the fact that some legal proceeding had been initiated in Ecuador to seek a definitive court ruling on the precise legal question at issue.   (Smyser Decl., ¶¶ 4-5).   Counsel did not know where the action was pending, who the parties were, or what specific relief was sought.   (*Id.*).   Fifth, Chevron's complaint of lack of notice is duplicitous given its penchant to conduct its actions in secret—including filming and recording opposing counsel, refusing to turn over declarations from its own lawyers regarding former Judge Guerra, and engaging in undercover judicial sting operations—and given that it filed dozens of proceedings under 28 U.S.C. § 1782 without providing any notice to the *Aguinda* court in Sucumbíos, Ecuador, where the case was pending.   Only after Chevron obtained rulings from U.S. courts allowing discovery did the company then file that material with the *Aguinda* court. Chevron has yet to learn that what is good for the goose is good for the gander.   *See Republic of Ecuador v. Connor*, --- F.3d ----, 2013 WL 539011, at *2 (5th Cir. Feb. 13, 2013).

Chevron's argument that *Defendants* sought to delay resolution of Chevron's motion to compel so that they could obtain an order from an Ecuadorian court is baseless.   There was no grand scheme to delay, as Chevron alleges.   Rather, "the Court delayed action on Chevron's motion" because "the Chevron motion was made before the parties had completed efforts to

---

[9] The other cases Chevron cites on this topic, Dkt. 894 at 14, are also distinguishable.  The relevant individual in *In re Grand Jury Subpoena*, 218 F.Supp.2d 544 (S.D.N.Y. 2002) did not "use his significant influence to gain cooperation of Republic officials" but rather suggested "bases for non-compliance."  *Id.* at 564.  Here, Camacho and Piaguaje did not suggest bases for non-compliance; they asked for the documents, which are not available under Ecuadorian law.  Even assuming Mr. Cordova was acting for Camacho and Piaguaje, his petition did not suggest bases for non-compliance with a U.S. court order, but rather sought protection from constitutional violations. Similarly, the non-party at issue in *Gucci America, Inc. v. Weixing Li*, 2012 WL 5992142 (S.D.N.Y. Nov. 15, 2012) sought authorization from foreign regulators nearly one year after being ordered to produce documents.  Here, there was no "clear order" from this Court requiring production at the time Mr. Cordova filed his petition for protection.

negotiate the scope of the documents requests." (Dkt. 787, at 1 (Court's order); *see also* Dkt. 598, at 16:6-9 ("My immediate inclination with respect to the pending motion to compel relating to documents in Ecuador is just to wait and resolve it with everything else with respect to that request."))[10]   As did the Court, Defendants argued that Chevron's motion was premature and had to be postponed for that reason long before Mr. Cordova filed his action for protection. (Dkt. 563).  Any delay was "self-imposed" by Chevron in filing a premature motion.  Only after Chevron filed its motion and filed its unauthorized conflicting affidavit did it occur to counsel that the only way to resolve the issue definitively was for it to be decided in Ecuador.  (Smyser Decl., ¶ 2).

### C.   Camacho and Piaguaje Diligently Attempted to Comply with the Discovery Requests and February 13 Order.

Camacho and Piaguaje have produced all non-privileged responsive documents within their possession. (Stewart Decl., ¶¶ 2-3).  They sought to obtain additional documents from their Ecuadorian lawyers and agents, but permission was denied.  (*Id.*, ¶¶ 4-8, 13).  Chevron's arguments that letters from Defendants' U.S. counsel to Mr. Fajardo were "calculated to fail" is false and based on a misleading citation to *Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 199 (E.D.N.Y. 2010).  The court in *Linde* found that the letters requesting information from foreign authorities were "calculated to fail" because they "mischaracterize[d] the status of the lawsuit" and the court's rulings in a way that would undoubtedly lead the foreign authorities to deny the request for information.  (*Id.*).  Here, the letter Defendants' counsel sent to Mr. Fajardo in February 2013 contained an accurate description and translation of this Court's February 13th Order and requested Mr. Fajardo's compliance.  (Dkt. 836, Ex. 2).  Defendants took all reasonable steps to comply with the Order—they informed their Ecuadorian lawyers and agents

---

[10] *See also* Dkt. 598, at 16:20-24; 17:4-18.

what documents were requested, asked them for the documents on numerous occasions in writing, over the phone, and in person, and informed them of the Court's Order requiring production—they cannot do anything further, within reason, to comply.[11]   Camacho and Piaguaje's actions constitute a diligent attempt to comply with the Order in a reasonable manner. *See, e.g.*, *Peninsula Asset Management (Cayman) Ltd. v. Hankook Tire Co. Ltd.*, 2005 WL 3046284, *3 (S.D.N.Y. Nov. 14, 2005) ("[I]t appears that FSS has made a good faith effort to comply with plaintiffs discovery demands. FSS has requested leave to comply from its headquarters in Seoul, and that permission was denied. In addition … FSS produced some documents relating to its investigation of the defendants to the plaintiffs.  Because Korean law prevents FSS from complying with plaintiffs' subpoena ... this Court will not force FSS to disobey the Korean Act. Since FSS has diligently attempted to comply with this Court's prior Order, plaintiffs' motion for contempt is denied.").

### D.    Because Compliance is Impossible, Contempt is Unwarranted

"[A]n order of civil contempt is appropriate 'only where it appears that obedience is within the power of the party being coerced by the order.' A court's power to impose coercive civil contempt is limited by an individual's ability to comply with the court's coercive order." *Badgley v. Santacroce*, 800 F.2d 33, 36-37 (2d Cir. 1986).  "A party may defend against a contempt by showing that his compliance is 'factually impossible.'"   *Id.* (citing *United States v.*

---

[11] Chevron's suggestion that Camacho and Piaguaje should fire their Ecuadorian lawyers, who represent them in seeking to obtain justice and a proper remediation for their lands, in order to produce documents to Chevron in a jurisdiction where they have been sued despite their utter lack of contacts with New York is absurd.  Camacho and Piaguaje are not plaintiffs in this lawsuit, seeking access to U.S. courts while shielding their files from discovery, so there is no basis to conclude that they should just "pack it up" and fire their Ecuadorian lawyers.  *Cf. Reino de Espana v. American Bureau of Shipping*, 03 Civ. 3573, 2005 WL 1813017, *9 (S.D.N.Y. Aug. 1, 2005) (finding that Spain could not rely on foreign privilege to prevent discovery in action it initiated in U.S. courts).  As one court has explained, "the fact that a party could obtain a document if it tried hard enough and maybe if it didn't try hard at all does not mean that the document is in its possession custody or control; in fact it means the opposite."  *Chevariat v. Williams Pipeline Co*., 11 F.3d 1420, 1426 (7th Cir. 1993) (holding that court should not have excluded evidence because of prior failure to produce it when it was not within that party's control).

*Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983) ("Where compliance

is impossible, neither the moving party nor the court has any reason to proceed with the civil

contempt action.")).  "A classic application of the factual impossibility defense arises when a

court orders an individual to produce documents that are not in his possession or control." *Id.*

Here, it was factually impossible for Camacho and Piaguaje to comply with the Court's

Order because the documents they were ordered to produce are outside of their control.

Accordingly, any sanctions, including contempt, would be unjustified.  *See M'Baye v. New*

*Jersey Sports Prod., Inc.*, 2008 WL 1849777, at *4 (S.D.N.Y. April 21, 2008) (declining to

impose sanctions without further evidence of willfulness where plaintiff failed to produce

documents in possession of his former manager, who refused give them to plaintiff despite

repeated requests); *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 102 (S.D.N.Y. 1989) ("She cannot

produce, she asserts, that which does not exist or is neither in her possession nor under her

control. If compliance is impossible there is no basis for imposing sanctions").[12]

### E.  Contempt or Other Sanctions Cannot Be Entered Against Camacho and Piaguaje Based on the Acts of their Ecuadorian Attorneys.

Camacho and Piaguaje have done everything possible to obtain and produce all

responsive documents.  Chevron's real complaint is that their lawyers and agents, including Mr.

Fajardo, have not complied with the Court's Order.   But Camacho and Piaguaje cannot be

sanctioned vicariously for the acts of their attorneys.  "[T]he attorney is solely responsible for

custody of documents and protection of professional secrets." (Stewart Decl., Ex. D, Villalba

Report, ¶ 4.7).  It is the attorney's decision under Ecuadorian law whether to release the

documents and subject himself to potential criminal penalties in Ecuador—that decision is not

---

[12] *See also Cohen v. Horowitz,* No. 07 Civ. 5834 (PKC) 2008 WL 2332338, at *1-2 (S.D.N.Y. June 4, 2008) ("Legal and practical inability to obtain the requested documents from the non-party, including by reason of foreign law, may place the documents beyond the control of the party who has been served with a Rule 34 request.").

406292.4

Camacho's or Piaguaje's. Camacho and Piaguaje cannot be sanctioned or held in contempt vicariously for their lawyer's independent decision. (Dkt. 918, Ex. 17, Alban Decl. ¶¶ 24, 28).

## II.    None of the Requested Alternative Sanctions are Warranted.

Chevron seeks a variety of sanctions against Camacho and Piaguaje, even though the limiting factor—Ecuadorian statutory and constitutional law—prevents their Ecuadorian agents from producing the documents. Chevron should not enjoy any windfall advantages from its proposed sanctions where Camacho and Piaguaje have no ability to comply with the Order, where Chevron is already well served by its years of successful discovery efforts, and where the Court has ruled, multiple times, that genuine fact issues exist. (*See* Dkts. 550, 878 (denying Chevron's Motions for Summary Judgment)). Chevron wants the Court to grant it judgment without a trial or, if a trial must be had, for the trial to be conducted as a show trial with (1) no mention of Chevron's degradation of the Amazon rain forest and its communities, (2) with the defendants limited in the evidence they can offer for the jury to hear, and (3) crippling instructions to the jury that make the outcome a foregone conclusion. Such an outcome, effectively awarding judgment to Chevron through discovery procedure, undermines the Court's prior rulings, deprives Camacho and Piaguaje of due process, and robs Camacho and Piaguaje of the opportunity to confront Chevron's sole claim against them, in a jurisdiction in which they never belonged. *See Baker v. Gen. Motors Corp*, 86 F.3d 811, 817 (8th Cir. 1996) (finding abuse of discretion where district court entered adverse jury instruction as discovery sanction, since "there is a strong policy favoring trial on the merits and against depriving a party of his day in court.").

406292.4

A. **Chevron Cannot Undermine a Merits Trial Through its Request For Drastic Sanctions Effectively Awarding Judgment.**

Chevron's requests for litigation death-penalty sanctions—in the form of (1) default judgment, (2) striking answers and/or affirmative defenses, and (3) prohibiting Defendants from opposing Chevron's claims—are an improper attempt to avoid the "merits" of its third-party fraud claim against Defendants. These requests amount to a summary disposition, a form of relief that Chevron has already sought thrice and the Court has rejected multiple times. (*See* Dkts. 550, 878). Awarding drastic case-ending sanctions would undermine the Court's prior rulings that genuine issues of material fact remain. *See Signature Combs, Inc. v. U.S.*, 222 F.R.D. 343, 346 (W.D. Tenn. 2004) (denying motion for preclusion sanctions where genuine issues of material facts remained, since "[a]warding effective judgment to Plaintiffs on this issue as a discovery sanction undermines these prior holdings. Also, the ongoing and argumentative character of the case does not lend itself well to a dismissal that, through round-about litigation tactics, avoids a final resolution on the merits.").

Awarding judgment through sanctions is especially inappropriate where, as here, Defendants have no control over the mandates of Ecuadorian law preventing disclosure of commonly-owned documents. *See, e.g.*, *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197 (1958) (finding litigation-ending sanction unjustified where party's inability to provide documents was due to foreign law); *Ulyanenko v. Metropolitan Life Ins. Co.*, 275 F.R.D. 179, 186 (S.D.N.Y. 2011) (declining litigation-ending sanction where Defendant did not disregard order, but rather endeavored to comply); *In re Westinghouse Elec. Corp. Uranium Contracts Litigation*, 563 F.2d 992, 997 (10th Cir. 1977) (vacating sanctions and noting that "the fact of foreign illegality may prevent the imposition of sanctions for subsequent disobedience to the discovery order"). That Camacho and Piaguaje's

Ecuadorian agents are prohibited from turning over materials should not result in drastic sanctions against Camacho and Piaguaje themselves.  *See Worldcom Network Services, Inc. v. Metro Access, Inc.*, 205 F.R.D. 136, 143 (S.D.N.Y. 2002) (declining default judgment discovery sanction where evidence suggested that failure to obey was not fault of defendant but of its agent).  Any sanction that would effectively award judgment to Chevron would be inappropriate.

> **B.** **The Court Should Not Enter Any Finding Or Inference Based On Camacho And Piaguaje's Inability To Produce Documents Outside Of Their Possession.**

As shown *supra*, Camacho and Piaguaje are legally unable to obtain control over the requested documents without the authorization of each and every other *Aguinda* plaintiff. Furthermore, Camacho and Piaguaje's U.S. Counsel has tried, repeatedly and emphatically, to obtain and produce the documents.  (Stewart Decl., ¶¶ 4-8, 13).  Given these facts, Chevron cannot show that any adverse inference instruction or fact finding would be proper here.

"Adverse inference and preclusion sanctions are . . . severe sanctions that should be reserved for egregious conduct[.]"  *Star Direct Telecom, Inc. v. Global Crossing Bandwith, Inc*., No 05-CV-6734T, 2012 WL 1067664, at *7 (W.D.N.Y. Mar. 22, 2012).  Under Second Circuit law, a party seeking an adverse inference instruction where evidence was not timely produced must be able to show, among other things, "that the party that failed to timely produce the evidence had 'a culpable state of mind' and that "the evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."  *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 107 (2d Cir. 2002).

These elements are not met here.[13]  Neither Camacho nor Piaguaje could be said to be culpably, willingly, or even negligently failing to produce documents.  They turned over or

---

[13] Defendants' responses to Chevron's Requested Findings are contained in a separate appendix.  (Stewart Decl. Ex. F).

406292.4

logged all responsive documents they have individually. (Stewart Decl., ¶¶ 2-3). They have sought to produce materials from their Ecuadorian counsel, but their Ecuadorian counsel has refused to produce such materials due to the unambiguous mandate of Ecuadorian law. (Stewart Decl., ¶¶ 4-8, 13; Dkt. 563, Ex. 2; Stewart Decl., Ex. C; Dkt. 836, Ex. 3). Camacho and Piaguaje are not at fault for the statutory and constitutional restrictions on the actions of their attorneys; they do not and cannot have a "culpable state of mind."

Nor can Chevron meet the relevance requirement, for which "[Second Circuit] cases make clear that 'relevant' means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence." *Residential Funding*, 306 F.3d at 108–09. Rather, the "party seeking the adverse-inference instruction must adduce sufficient evidence for a trier of fact to infer that 'the destroyed [or unavailable] evidence was of the nature alleged by the party.'" *Id.* at 109 (quoting *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998)). Extrinsic evidence should be shown, and "[w]ithout such evidence, severe sanctions are not warranted." *Orbit One Commn's, Inc. v. Numerex Corp*, 271 F.R.D. 429, 439 (S.D.N.Y. 2010). It is not sufficient for Chevron "merely to point to the fact that the opposing party has failed to produce requested information." *Id.* But Chevron tries exactly that, posting its overbroad array of discovery requests without extrinsic evidence showing how any of those specific requests relate to the sole cause of action remaining against Camacho and Piaguaje—third-party fraud. The relevance requirements cannot be swept aside by a glib assertion that each one of over two hundred document requests went to Chevron's one remaining claim.

Some of Chevron's requested findings go to matters that this Court has precluded. In seeking an adverse inference or finding that the Republic of Ecuador's prosecution of Ricardo Reis Veiga and Rodrigo Perez Pallares was "baseless", Chevron attempts to arrive at a

conclusion that it and the Court already put aside: the substantive merits of Chevron's flawed remediation of the Oriente in the 1990s.  The "baselessness" of the prosecution can only be evaluated by examination of the extent of Chevron's pollution as compared with its scandalously limited "remediation."   Similarly, Chevron's proposed findings about the Cabrera Report's factual evidence of contamination represent Chevron's third about-face regarding the truth of its pollution in Ecuador.   Chevron made myriad accusations that the lawsuit to hold Chevron responsible for its pollution of the rain forest was "sham" and "objectively baseless litigation." Those allegations led Camacho and Piaguaje, whose families suffered at the hands of Chevron's pollution, to request documents regarding Chevron's drilling activities in their land.  (Dkt. 619-1, at 8-21).   When Chevron sought to avoid having to produce a document in court about those drilling operations, the Court sustained the effort to suppress this evidence by suggesting a blue-line of Chevron's Amended Complaint, leading Chevron to concede that good faith questions exist about TexPet's conduct in the Oriente.  (Dkt. 720, at 2).  Chevron now finds it inconvenient to accept that a factual basis exists for the claim that Chevron's pollution ravaged the rain forest communities and seeks to obtain a ruling not through evidence but through sanctions on the merits of the issue on which it sought to avoid production: the fact of pollution in Ecuador. Chevron should not obtain inferences or findings about its pollution in the Oriente after fighting for months, over Defendants' objections, to skirt its discovery obligations on such topics.

Other findings sought by Chevron would only support allegations it has abandoned.  For example, Chevron argues that Camacho and Piaguaje "colluded" with Ecuadorian officials.  (*See* Dkts. 745, 894 (alleging collusion)).  But if those officials were part of the alleged scheme, then Chevron's sole remaining claim against Camacho and Piaguaje—third party fraud—would not

logically apply to representations made to these officials as they would no longer be considered third parties. Chevron's requested findings about collusion should be rejected.

Chevron also fails to show prejudice to justify any of its requested findings since Chevron has obtained exhaustive discovery on all topics. Chevron's vast and broad four-year discovery expedition under 28 U.S.C. § 1782 yielded hundreds of thousands if not millions of documents from a wide variety of actors. In some cases, Chevron enjoyed the fruits of its discovery efforts for years yet did not share its findings with Defendants until last month. (Stewart Decl., Ex. E; Dkt. 920, at 9-13). Meanwhile, Chevron's third party subpoenas to litigation funders, U.S. law firms, and other actors continue, and the Parties and non-parties have dutifully produced documents, provided privilege logs, and/or reached a series of Fed. R. Evid. 502 agreements to streamline the discovery process for Chevron as to its related allegations. (*See, e.g.*, Dkt. 855). Finally, Chevron's document requests to Patton Boggs, and this Court's rulings thereon, touch on nearly all facets of the *Aguinda* litigation, going back several years. In sum, Chevron cannot allege that a lack of documents causes it prejudice where Defendants must by and large look to Chevron's production for answers. *Cf. Rimkus Consulting Group, Inc. v. Cammarata, et al.*, 688 F.Supp. 2d 598, 608 (S.D. Tex. 2010) (declining severe sanctions where, despite the loss of evidence, "there is extensive evidence available to the plaintiff to prosecute its claims and respond to the defenses"). Chevron has not provided any evidence as how its proposed inferences or findings would directly relate to the few third party fraud accusations remaining against Camacho and Piaguaje.

### III. Chevron's Complaints about Document Production and Interrogatory Responses Do Not Merit Sanctions.

Camacho and Piaguaje's document production does not merit sanctions. In this Action and in Count 9, Defendants have complied with discovery requests and orders as to the

documents within their or their U.S. counsel's possession, custody, or control.  (Stewart Decl., ¶¶ 2-3).  Chevron's protests as to Defendants' Ecuadorian agents' production of documents are unfounded and do not merit sanctions.  (*See supra*, Sections I-II.)

Chevron's complaints as to Defendants' interrogatories are unfounded.  After receiving Chevron's interrogatories, Camacho and Piaguaje objected to the discovery requests' improper form and substance—just as Chevron had done in the past.  (Dkt. 805)  The Court overruled Defendants' objections and ordered Camacho and Piaguaje to supplement their responses.  (Dkt. 809.)  Defendants complied, performing investigation through questions, telephone conferences, and face-to-face interviews in order to furnish Chevron with the best available information to the queries.  (Stewart Decl. ¶¶ 14-20).  Camacho and Piaguaje verified the responses to the best of their ability, providing an oath as to their accuracy to the extent they could do so in good faith. (Dkt. 895, Exs. 3527, 3528 at 43).

Furthermore, Chevron complains that Camacho and Piaguaje "appear not to have actually asked their lawyers for their information."  (Dkt. 894 at 24.)  This is an unwarranted assumption. For example, Chevron claims that because interrogatory answers do not identify payments to Ecuadorian judges that were never made, Defendants must not have consulted with their lawyers. (*Id.*).  Since no bribes were made, Defendants have answered the interrogatory in full.  And as Defendants made clear in a call that Chevron requested *after* moving for sanctions, Camacho and Piaguaje *did* request information from their lawyers and provided supplemental answers based on that information and to the best of their ability.  (Stewart Decl. ¶¶ 14-20).  Defendants should not be punished for giving truthful answers that Chevron does not want to hear.

## CONCLUSION

For the foregoing reasons, Defendants Camacho and Piaguaje respectfully request that the Court deny Chevron's motion for contempt and sanctions.

406292.4

Dated: March 26, 2013                    Respectfully submitted,

Houston, TX

By: _____ /s/ *Tyler G. Doyle*_____
         CRAIG SMYSER (*pro hac vice*)
         LARRY R. VESELKA (*pro hac vice*)
         TYLER G. DOYLE
         SMYSER KAPLAN & VESELKA, L.L.P.
         700 Louisiana, Suite 2300
         Houston, TX 77002
         Telephone: 713.221.2330
         Facsimile: 713.221.2320
         Email:    tydoyle@skv.com
         Email:    csmyser@skv.com
         Email:    lveselka@skv.com

         Julio C. Gomez
         GOMEZ LLC
         The Trump Building
         40 Wall Street, 28th Floor
         New York, NY  10005
         Tel:    212.400.7150
         Fax:    212.400.7151
         Email:  jgomez@gomezllc.com

         *Attorneys for Defendants Hugo Gerardo Camacho*
         *Naranjo and Javier Piaguaje Payaguaje*

406292.4