UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
CHEVRON CORPORATION, :
:
Plaintiff, :
:
-against- :
: Case No. 11 Civ. 0691 (LAK)
:
STEVEN R. DONZIGER, et al., :
:
Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**CHEVRON CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS HUGO GERARDO CAMACHO NARANJO AND JAVIER PIAGUAJE
PAYAGUAJE'S MOTION,
JOINED BY THE DONZIGER DEFENDANTS,
TO STRIKE AFFIDAVITS ACCOMPANYING CHEVRON'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................. 1

ARGUMENT ............................................................................................ 3

I.     The Court Should Not Strike the Guerra Affidavit Because Guerra Was Not Paid For His Testimony. ................................................................. 3

II.    The Challenged Affidavits Are Admissible Evidence. .......................... 8

       A.    The Court Can Consider the Affidavits on Summary Judgment Because the Evidence Can Be Reduced to Admissible Form. ............... 8

       B.    The Challenged Testimony Is Admissible as Non-Hearsay or Under an Exception to the Hearsay Rule. ................................................. 9

              1.    Affidavit of Alberto Guerra Bastidas ....................... 10

                    a.    Admissible Non-Hearsay Testimony ............... 10

                    b.    Testimony Admissible Under an Exception to the Rule Against Hearsay ............................. 13

              2.    The Chevron Attorneys Affidavits ............................ 15

                    a.    Specific Challenges to the Callejas Affidavit ... 16

                    b.    General Challenge to the Chevron Attorneys Affidavits ............... 18

III.   Chevron Produced the Challenged Affidavits and Related Materials in Discovery. ....................................................................................... 18

       A.    Chevron Fully Responded to Defendants' Discovery Requests. ......... 19

       B.    The 2009 Affidavits of Chevron's Attorneys Were Properly Withheld as Attorney Work Product. ................................................. 21

       C.    Chevron Has No Duty to Supplement Its Discovery Responses From the Count 9 Action. ............................................................... 22

CONCLUSION ...................................................................................... 23

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Caldwell v. Cablevision Systems Corp.*,
  925 N.Y.S.2d 103 (App. Div. 2011) .................................................................. 8

*Centennial Mgmt. Servs., Inc. v. Axa Re Vie*,
  193 F.R.D. 671 (D. Kan. 2000) ......................................................................... 3

*Chapala v. Interfaith Med. Ctr.*,
  2006 U.S. Dist. LEXIS 73033 (E.D.N.Y. Oct. 5, 2006) ................................... 10

*Design Strategy, Inc. v. Davis*,
  469 F.3d 284 (2d Cir. 2006) ............................................................................. 23

*Erie Painting & Maint., Inc. v. Ill. Union Ins. Co.*,
  876 F. Supp. 2d 222 (W.D.N.Y. 2012) .............................................................. 9

*Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*,
  865 F. Supp. 1516 (S.D. Fla. 1994) ............................................................... 6, 7

*Guang Dong Light Headgear Factory Co., Ltd. v. ACI Int'l, Inc.*,
  No. 03-4165-JAR, 2008 WL 53665 (D. Kan. Jan. 2, 2008) ............................ 22

*Halebian v. Berv*, 869 F. Supp. 2d 420, 443 (S.D.N.Y. 2012) ....................... 8

*Hausler v. JPMorgan Chase Bank, N.A.*,
  845 F. Supp. 2d 553 (S.D.N.Y. 2012) .................................................. 8, 16, 18

*Inst. for the Dev. of Earth Awareness v. People for the Ethical Treatment of Animals*,
  272 F.R.D. 124 (S.D.N.Y. 2011) ..................................................................... 22

*J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*,
  909 F.2d 1524 (3d Cir. 1990) ..................................................................... 17, 18

*Lujan v. Cabana Mgmt., Inc.*,
  284 F.R.D. 50 (E.D.N.Y. 2012) ....................................................................... 22

*Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.*,
  833 F. Supp. 2d 282, 319 (E.D.N.Y. 2011) ....................................................... 8

*Patterson v. Balsamico*,
  440 F.3d 104 (2d Cir. 2006) ............................................................................. 23

*Prasad v. MML Investors Services, Inc.*,
  No. 04 Civ. 380 (RWS), 2004 WL 1151735 (S.D.N.Y. May 24, 2004) ............. 3

*Presbyterian Church of Sudan v. Talisman Energy, Inc.,*
  582 F.3d 244 (2d Cir.2009) ............................................................................... 8

*Rocheux Int'l of N.J. v. U.S. Merchants Fin. Grp., Inc.*,
  No. 06-6147, 2009 WL 3246837 (D.N.J. Oct. 5, 2009) ..................................... 7

*Saltzman v. Commissioner*,
131 F.3d 87 (2d Cir. 1997)..................................................... 14

*Schindler Elevator Corp. v. Otis Elevator Co.*,
No. 06 Civ. 5377-CM-THK, 2010 WL 4007303 (S.D.N.Y. Oct. 6, 2010)........................ 23

*Sphere Drake Ins., Ltd. v. All Am. Life Ins. Co.*,
300 F. Supp. 2d 606 (N.D. Ill. 2003) ......................................... 8

*Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*,
301 F.3d 610 (7th Cir. 2002).................................................. 9

*Stokes v. City of New York*,
No. CV 2005-7-JFB-MDG, 2006 WL 2064976 (E.D.N.Y. July 24, 2006) ........................ 22

*U.S. v. Dambruck*,
270 F. App'x 30 (2d Cir. 2008)............................................... 10

*United States v. Badalamenti*,
794 F.2d 821 (2d Cir. 1986)................................................. 14

*United States v. Best*,
219 F.3d 192 (2d Cir. 2000)................................................. 14

*United States v. Delvecchio*,
816 F.2d 859 (2d Cir. 1987)................................................. 14

*United States v. Farhane*,
634 F.3d 127 (2d Cir. 2011)................................................. 10

*United States v. Innamorati*,
996 F. 2d 456 (1st Cir. 1992) ................................................ 3

*United States v. Persico*,
645 F.3d 85 (2d Cir. 2011)................................................... 14

*United States v. Vitale*,
459 F.3d 190 (2d Cir. 2006)................................................... 7

*White v. Fin. Credit Corp.*,
No. 99 C 4023, 2001 WL 1665386 (N.D. Ill. Dec. 27, 2001)............................. 22

### Other Authorities

5 Weinstein's Federal Evidence, § 16.04.......................................... 13

### Rules

Fed. R. Civ. P. 56(c)(2)..................................................... 8

Fed. R. Evid. 611(b)........................................................ 7

Page(s)

Fed. R. Evid. 801(c) ................................................................. 9, 17, 18

Fed. R. Evid. 801(d) .............................................................................. 9

Fed. R. Evid. 801(d)(2) .................................................................... 12, 13

Fed. R. Evid. 801(d)(2)(E) .......................... 2, 10, 11, 12, 13, 16, 17

Fed. R. Evid. 802 .................................................................................. 9

Fed. R. Evid. 803 .................................................................................. 9

Fed. R. Evid. 803(3) ........................................................................ 13, 14

Fed. R. Evid. 804 .................................................................................. 9

Fed. R. Evid. 805 ......................................................................... 9, 12, 13

Fed. R. Evid. 807 .................................................................................. 9

## PRELIMINARY STATEMENT

Unable to dispute the evidence of ghostwriting and bribery, Defendants attack the messenger. Nominally seeking to exclude the testimony of Alberto Guerra Bastidas and four of Chevron's lawyers in Ecuador, Defendants' motion is an extension of a public relations campaign calculated to smear any witness who testifies against them and exposes their scheme, and ignores applicable law. The Court should deny Defendants' motion. Defendants' practice of filing a motion as cover for "a libel-proof press release . . . needs to come to a halt." Ex. 3632 at 35:20–36:9.

Guerra has not been paid for his testimony. Rather, Chevron reasonably compensated Guerra for obtaining and providing documentary evidence, and it is now providing reasonable living expenses for Guerra and his family to ensure their security and minimize the sacrifice he is making coming forward to testify now that he and his family have had to move to the United States; no payments to Guerra are contingent on his giving any particular testimony in this or any other case. Dkt. 746-3 ¶ 2 (Ex. C); Dkt. 755-14 (Ex. 3268) at 4. Indeed, it is Defendants and their allies who have created the conditions in Ecuador that have twice obligated Chevron to come to the aid of those who provide evidence of Defendants' corruption, and which this Court has found justifies sealing the affidavits of witnesses. Dkt. 843. Defendants suggest that Chevron's payments to Guerra for a hard drive and other related items are unreasonable, but ignore compensation for Guerra's time and effort to collect this information, and conflate the items with the information they contain—information that confirms Defendants' role in the procurement of a fraudulent $18 billion judgment against Chevron. Indeed, while Defendants now suggest "it doesn't take any expert" to find these payments objectionable, they were already aware by the time they made this meritless motion that one of the nation's leading ethics experts, Dr. George Cohen of the University of Virginia School of Law, has opined that such reasonable, disclosed

payments on Chevron's part are ethically appropriate.

Defendants' other purported bases for striking these affidavits are similarly unmoored from the law and facts. Arguing that the affidavits comprise inadmissible hearsay, Defendants assert that "no exception applies" to the statements (Dkt. 916 at 4) but they do not discuss or even cite a single one of the many exceptions, or address the circumstances that render an out-of-court statement non-hearsay. For instance, Defendants state that "[n]one of the purported statements come from Judge Zambrano directly," (*id*.) but fail to address that statements made by Zambrano to Guerra are not hearsay because they are statements against interest by a co-conspirator made during and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E). Moreover, their discovery arguments mischaracterize the proceedings upon which they rely and ignore the explanations Chevron has provided. Defendants claim "Chevron has not explained" its reasoning in response to a letter from Defendants (Dkt. 916 at 8) even though Chevron responded with a detailed letter just days later. Ex. 3633. And the discovery requests upon which Defendants rely, provided in a different action, did not reach the two extant affidavits, which were work product at the time in any event. Furthermore, Defendants mischaracterize Adolfo Callejas's deposition testimony regarding Guerra. In fact, the LAPs refused to accept Callejas's incorporation of Chevron's interrogatory responses, and the LAPs' counsel never asked Callejas about Guerra, despite Callejas's express invitation that counsel identify the specific judges on which he wanted testimony. Even assuming *arguendo* some deficiency in responses in a prior action, however, that would not warrant suppressing the response now in this separate case.

The affidavits at issue are admissible evidence in support of Chevron's motion for partial summary judgment, and Chevron properly disclosed the affidavits in response to Defendants' discovery requests. The Court should deny Defendants' motion to strike these affidavits.

## ARGUMENT

### I. The Court Should Not Strike the Guerra Affidavit Because Guerra Was Not Paid For His Testimony.

Reasonable compensation of a witness for information or expenses is proper and is not cause for the exclusion of the witness's testimony. *Prasad v. MML Investors Services, Inc.*, No. 04 Civ. 380 (RWS), 2004 WL 1151735, at *5–7 (S.D.N.Y. May 24, 2004); *United States v. Innamorati*, 996 F. 2d 456, 481–82 (1st Cir. 1993); *Centennial Mgmt. Servs., Inc. v. Axa Re Vie*, 193 F.R.D. 671, 679–81 (D. Kan. 2000). Chevron's payments to Guerra fall into two categories: payments for the information contained on Guerra's computer and other sources, and relocation expenses for Guerra and his family to live in the United States. All of Chevron's payments to Guerra were disclosed to Defendants, and no payment was made or will be made depending on Guerra's testimony or the outcome of this, or any, litigation. Dkt. 746-3 (Ex. C) ¶ 2 ("Guerra Affidavit"); Dkt. 755-14 (Ex. 3268) at 4. Defendants cannot assert otherwise. Dkt. 916 at 2–3.

After Guerra came forward with information regarding Zambrano and the fraudulent judgment, he provided corroborating evidence to Chevron, contained on a computer hard drive, flash drives, discs, cell phones, and planners. Dkt. 755-14 (Ex. 3268) ¶¶ 5-6. Guerra also assembled telephone and bank records, and provided them to Chevron. *Id.* In exchange for this corroborating information, and Guerra's efforts to collect this information, Chevron compensated Guerra a fixed sum of $38,000. *Id.* Defendants mischaracterize Chevron's payments to Guerra as payments only for the physical items themselves (Dkt. 916 at 2 n.1; Dkt. 766 at 8 n.2), ignoring Chevron's explanation that it purchased the *information* reflected in Guerra's documents and records, and not just the physical materials. Ex. 3633 at 2.[1] Defendants'

---

[1] Defendants falsely assert that Chevron has "not explained" its position in response to Defendants' February 8, 2013 letter. Dkt. 916 at 8. Chevron sent a detailed response to Defendants three days later. *See* Ex. 3633.

unsupported estimate of "no more than $500" for the physical items is a red herring. *See* Dkt. 916 at 2 n.1. In addition to the time Guerra spent gathering that evidence, the information contained in those items corroborates the statements in the Guerra Affidavit, including draft orders in the Lago Agrio Litigation that Guerra ghostwrote for Judge Zambrano, shipping records, calendars, and other documents corroborating Guerra's account, as well as proof of the LAP team's payment of Guerra's monthly fee directly into his bank account. *See, e.g.*, Dkt. 764 ¶¶ 197–203, 205-06. As this Court recently held, "the Guerra declaration, in and of itself, establishes probable cause to suspect that the LAPs' representatives, including Fajardo, Donziger, and Yanza, bribed Judge Zambrano to obtain their desired result in the Ecuadorian case and the privilege of writing the Judgment and that they took advantage of the latter." Dkt. 905 at 62. Chevron's fixed-sum compensation of $38,000 to Guerra for information corroborating that testimony—corroborating evidence that was expected to be of significant value in demonstrating Defendants' illegal scheme—is reasonable.

Chevron's payments to Guerra for living expenses are also legal and ethical. As an initial matter, the relocation of Guerra and his family to the United States for their safety and security is justified, because as this Court recently recognized, there is an "unacceptable risk of retaliation and harm" to those individuals who have come forward in Ecuador to expose the truth about ghostwriting the judgment. *See* Dkt. 837; Dkt. 843; Dkt. 941. Guerra's living expenses are guaranteed for two years and "[n]o payment is contingent on the content of Guerra's statements or testimony or the outcome of any matter in which Guerra testifies." Dkt. 755-14 (Ex. 3268) at 4. The agreement between Guerra and Chevron states: "It is expressly acknowledged that Chevron has no control over, and places no limits on the content of, Guerra's testimony." *Id*. Moreover, at the end of two years, there will be an "independent assessment" of Guerra's safety

and security, and if necessary, "Chevron and Guerra will act in good faith to reach an agreement on new terms" which "will not be contingent on the content of Guerra's statements or testimony or the outcome of any matter in which Guerra testifies, or on the outcome of any investigation in which he provides statements or testimony." *Id.*

The amount of the payments to Guerra for living expenses are reasonable—indeed, they will provide for a "materially" lesser standard of living in the United States than Guerra enjoyed in Ecuador. In his expert declaration, Professor Jerry Nickelsburg compared the standard of living of Guerra and his family in Quito, Ecuador to their location in the United States and concluded that Guerra's standard of living would "likely materially decrease" as a result of the relocation. Ex. 3634 at 1; *see also id.* at 4 (monthly payments by Chevron are "significantly less than that which would be required to maintain in the United States the standard of living enjoyed by the individuals in Ecuador").

To ensure that Chevron's payments to Guerra were proper, Chevron retained Professor George M. Cohen, the Brokaw Professor of Corporate Law at the University of Virginia School of Law, and the author of numerous books and articles on legal ethics, to evaluate those payments. *See* Exs. 3635–3637. With respect to Chevron's payments to Guerra for information, Professor Cohen opines that "Chevron's counsel may pay the witness solely for the information in his possession, so long as that payment is a fixed sum not in any way contingent on his testimony or the outcome of any litigation; the payment is reasonable relative to the prior payment, the effort to be expended to acquire it, and its expected value in demonstrating the illegal scheme; the witness makes no promise to testify in exchange for the payment; and no future payment will be made to the witness for his testimony other than legally and ethically

permitted payment for expenses incurred in connection with testifying." Ex. 3636 ¶ 6. The record shows that all of these requirements are satisfied.

With respect to Chevron's payments to Guerra for his living expenses, Professor Cohen opines that "Chevron's counsel may compensate the witness for expenses, so long as that payment is a fixed sum not in any way contingent on the content of his testimony or the outcome of any litigation and the payment is reasonable." Ex. 3637 ¶ 6. Professor Cohen concludes that such "permitted expenses" may include "any expenses incurred by a witness in preparing to testify, in connection with testifying, or as a consequence of testifying, including expenses for housing and subsistence that extend beyond the time of his testifying, so long as sufficient evidence is presented to support the basis for these incurred expenses – in this case, legitimate concerns for the safety and security of the witness and his family." *Id.*

Defendants fail to even acknowledge the expert opinions of Professors Cohen and Nickelsburg, and they make no attempt to contest these expert opinions. Rather, Defendants rely on two distinguishable cases to support their argument that paid-for testimony of a fact witness should be excluded. In *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 865 F. Supp. 1516 (S.D. Fla. 1994), the court divided payments to a fact witness into several categories—information, living expenses, deposition testimony, and future trial testimony—and excluded witness testimony because of certain payments to witnesses "in return for their testimony," and because payments were contingent on "helpful" testimony. *Id.* at 1521-22, 1526. Here, Chevron made payments for specific information and expenses with no such *quid pro quo*. In fact, the court in *Golden Door* specifically noted that "[p]ayments made to fact witnesses as actual expenses as permitted by law will not be disturbed or set aside. The Court's opinion today pertains only to payments made to fact witnesses for the purpose of obtaining their

testimony in a case." *Id.* at 1526 n.11.  Similarly, Defendants rely on *Rocheux Int'l of N.J. v.*

*U.S. Merchants Fin. Grp., Inc.*, No. 06-6147, 2009 WL 3246837 (D.N.J. Oct. 5, 2009), which

involved the payment of a witness in exchange for testimony rather than for information and

expenses.  In *Rocheux*, the court excluded a witness's testimony after counsel paid the witness a

"consulting" fee and then belatedly identified the witness as an expert in an attempt to justify the

payment.  *Id.* at *1.  The court held that counsel "improperly procured payment for [the

witness's] factual testimony" and that counsel "did not compensate [the witness] for his costs."

*Id.* at *3–4.  Thus, neither of Defendants' cases involves compensating a witness for information,

and both cases support Chevron's compensation of Guerra for reasonable living expenses.  This

is consistent with Professor Cohen's expert opinion that case law supports "a line between

paying for information, which is permissible, and paying for testimony, which is not."  Ex. 3635

¶ 25; Ex. 3636 ¶ 25.  Thus, this Court has no reason to exclude Guerra's testimony as improper.

Finally, Chevron disclosed its compensation to Guerra for information and expenses, and

Defendants are free to challenge the credibility, veracity, or bias of any witness at trial.  *See* Fed.

R. Evid. 611(b) (permitting cross-examination on "matters affecting the witness's credibility");

*United States v. Vitale*, 459 F.3d 190, 195 (2d Cir. 2006) ("Cross-examination is the principal

means to show that a witness is biased" and a party "may conduct a general attack on the

credibility of the witness, or it may mount a more particular attack on the witness' credibility" by

"revealing possible biases, prejudices, or ulterior motives of the witness.") (internal citations and

quotations omitted).  Moreover, Defendants noticed Guerra's deposition and will have the

opportunity to ask any such questions.  Therefore, this Court should not strike the affidavit.[2]

---

[2]  Even if this Court were somehow to determine that Guerra had been paid in exchange for testimony, such
payments do not require the exclusion of the witness's testimony.  "Many courts, including courts in this Circuit,
have found that a compensated fact witness is competent to testify as long as the fact that payments were made to
[Footnote continued on next page]

## II.    The Challenged Affidavits Are Admissible Evidence.

### A.    The Court Can Consider the Affidavits on Summary Judgment Because the Evidence Can Be Reduced to Admissible Form.

On a motion for summary judgment, "'[t]he principles governing admissibility of evidence do not change,' but the Court is afforded 'broad discretion in choosing whether to admit evidence' into the record before [it]." *Halebian v. Berv*, 869 F. Supp. 2d 420, 443 (S.D.N.Y. 2012) (quoting *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 262 (2d Cir.2009)).  It is within the Court's discretion to consider the affidavits in support of the motion for summary judgment because the testimony therein will be presented in an admissible form at trial.  *See, e.g.*, Fed. R. Civ. P. 56(c)(2) (under Rule 56, the non-movant may object to consideration of "material cited to support . . . a fact [that] cannot be presented in a form that would be admissible in evidence"); *Hausler v. JPMorgan Chase Bank, N.A.*, 845 F. Supp. 2d 553, 573 n.12 (S.D.N.Y. 2012) ("Though the [affidavits] themselves may or may not be admissible as evidence at trial, the expert opinions contained therein are certainly amenable to presentation in forms that would be admissible.  In short, the Court may consider and credit the [affidavits] in the summary judgment context because this expert testimony would be admissible as such if [the witness] was called to testify in person."); *Sphere Drake Ins., Ltd. v. All Am. Life Ins. Co.*, 300 F. Supp. 2d 606, 614 (N.D. Ill. 2003) ("The material that is submitted in support of a summary judgment motion is not necessarily itself admissible at trial, but must set forth evidence that would be admissible if presented in appropriate form at trial.  In other words, 'the evidence need

---

[Footnote continued from previous page]

that witness is disclosed to the trier of fact."  *Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.*, 833 F. Supp. 2d 282, 319 (E.D.N.Y. 2011) (citations omitted); *see also Caldwell v. Cablevision Systems Corp.*, 925 N.Y.S.2d 103, 110 (App. Div. 2011) ("[T]he appropriate remedy in a case such as this one, where one might reasonably infer that a fact witness has been paid a fee for testifying, is to permit opposing counsel to fully explore the matter of compensation on cross-examination and summation, and to leave it for a properly instructed jury to consider whether the payment made to the witness was, in fact, disproportionate to the reasonable value of the witness's lost time and, if so, what effect, if any, that payment had on the witness's credibility.") (citations omitted).

not be admissible in form (for example, affidavits are not normally admissible at trial), but it must be admissible in content.'") (quoting *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002)).

Defendants do not dispute the fact that Callejas, Racines, Campuzano, and Carvajal (the "Chevron Attorneys") and Guerra will testify if properly noticed during a deposition or at trial, and do not appear to dispute that the affidavits as such may be considered on summary judgment. In fact, Defendants have included all of these witnesses among the 21 fact witnesses they intend to depose, pursuant to the Court's Rule 16 Order. *See* Dkt. 910; Ex. 3638. The Court may therefore assume the testimony contained in the Guerra and Chevron Attorneys affidavits will be presented in an admissible form at trial and that on summary judgment, they are not hearsay, but the functional equivalent of live testimony.

> **B.** **The Challenged Testimony Is Admissible as Non-Hearsay or Under an Exception to the Hearsay Rule.**

Defendants challenge statements within these affidavits as inadmissible hearsay, but they are incorrect. Federal Rule of Evidence 801(c) defines hearsay as a statement, other than one made by the declarant while testifying at trial, offered "in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). While hearsay is generally inadmissible, there are several categories of statements that are excluded or qualify as exceptions to this rule. *See generally* Fed. R. Evid. 802, 803, 804, 807. Other statements, such as prior witness statements and statements by a party-opponent, are not hearsay. *See* Fed. R. Evid. 801(d). In addition, Rule 805 specifically condones the admission of evidence containing multiple layers of hearsay, where each layer is independently covered by a hearsay exception. Fed. R. Evid. 805; *Erie Painting & Maint., Inc. v. Ill. Union Ins. Co.*, 876 F. Supp. 2d 222, 233 n.74 (W.D.N.Y. 2012) (admitting evidence containing multiple layers of hearsay); *Chapala v. Interfaith Med.*

*Ctr.*, 2006 WL 2882567, at *6 (E.D.N.Y. Oct. 6, 2006) (admitting evidence containing "two or more levels of hearsay").  Each challenged statement in the affidavits can either be reduced to admissible form at trial, is not hearsay, or falls within an exception to the hearsay rule.

### 1.  Affidavit of Alberto Guerra Bastidas

Defendants concede the admissibility of the majority of the Guerra Affidavit and only challenge as hearsay statements made to Guerra by Zambrano.  Dkt. 916 at 5–6.  Defendants argue that because "the statements do not fall within any exception to the hearsay rule, they are inadmissible and should be struck."  *Id*. at 6.  But Defendants' request to strike the Guerra Affidavit should be denied because the contested testimony is either not hearsay or falls within an exception to the hearsay rule and is therefore admissible.  Defendants ignore this governing law.

### a.  Admissible Non-Hearsay Testimony

Statements made by Zambrano to Guerra are not hearsay because they are statements against interest by a co-conspirator.  *See* Fed. R. Evid. 801(d)(2)(E) (statement "made by the party's co-conspirator during and in furtherance of the conspiracy" is not hearsay and is admissible); *U.S. v. Dambruck*, 270 F. App'x 30, 34 (2d Cir. 2008).  A statement falls within the co-conspirator exemption where a preponderance of the evidence shows that:  (i) there was a conspiracy, (ii) its members included the declarant and the party against whom the statement is offered, and (iii) the statement was made during the course of and in furtherance of the conspiracy.  *United States v. Farhane*, 634 F.3d 127, 161 (2d Cir. 2011).

Chevron offers Guerra's testimony against Defendants, and has submitted substantial evidence demonstrating a conspiracy involving Zambrano and the Defendants.  Indeed, this Court recently held that "Chevron has established at least probable cause to believe there was fraud or other criminal activity in the procurement of the Judgment and in other respects relating to the Lago Agrio litigation in which that Judgment was rendered and in certain litigations in the

United States relating to the Ecuadorian litigation," and specifically held that "there is probable cause also to suspect that LAP lawyers and other representatives later bribed Judge Zambrano to obtain the result they wanted and, pursuant to the arrangement they struck with him, actually wrote the decision to which he signed his name[] after some cosmetic and inconsequential editing by Guerra." Dkt. 905 at 3–4, 29. The Court's findings regarding the ghostwritten judgment are "supported by abundant evidence that portions of the Judgment are identical or substantially similar to internal documents prepared by the LAPs that never were filed with the Court." *Id.* at 62; *see also* Dkt. 550 at 86 (holding as a "matter of law" that the author of the judgment had access to the LAPs' unfiled "Fusion Memo"); *id.* at 97 (finding "serious questions concerning the preparation of the Judgment itself in view of the identity between some portions of the Judgment and the Unfiled Fusion Memo, especially in light of the undisputed pattern of *ex parte* advocacy in the Lago Agrio Litigation and the undisputed instance of the LAP team's coercion of and duress on one of the judges to obtain a desired result"). Chevron has submitted expert analyses, bank records, shipping records, emails between and among the co-conspirators, and supporting affidavits that leave no doubt as to the existence of the conspiracy and Zambrano's participation in it. *See* Dkt. 764.

Zambrano's statements were made "during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Indeed, they lie at its heart. Defendants' conspiracy was ongoing in 2010 and 2011, when Zambrano made the challenged statements. *See* Dkt. 283; Dkt. 764 ¶¶ 23–99. Zambrano's statements to Guerra about securing a payment from the LAPs in return for allowing them to draft a favorable judgment, and the logistics of doing so, are in furtherance of Defendants' conspiracy to defraud Chevron by bribing Zambrano and ghostwriting the judgment.

The following statements in the Guerra Affidavit are therefore admissible non-hearsay:

- "Once it became clear that Mr. Núñez would have to withdraw from the Chevron case, Mr. Zambrano asked me to attempt, through friends of mine, to get in touch with the attorneys for Chevron in order to negotiate an agreement by which the company would pay Mr. Zambrano and me for issuing the final judgment in Chevron's favor. Mr. Zambrano told me that Chevron would have much more money than the Plaintiffs for this agreement, and therefore we could get a better deal and greater profits for ourselves." Dkt. 746-3 (Ex. C) ¶ 12.

- "Mr. Zambrano told me to have that meeting because he had reached an agreement with the Plaintiffs' representatives to quickly move the case along in their favor, but he did not tell me the details of that agreement." *Id.* ¶ 13.

- "Around August of 2010, Chevron filed a motion for the recusal of Mr. Ordóñez as judge of the case, which Mr. Zambrano had to rule on. Mr. Zambrano saw this as an opportunity to once again take control of the Chevron case, and asked me to help him write the court ruling sustaining Judge Ordóñez's disqualification from the case." *Id.* ¶ 21.

- "Mr. Zambrano suggested and authorized me to seek an agreement with the Plaintiffs' representatives so that they could obtain a verdict in their favor, in exchange for a payment of at least USD $500,000 to Mr. Zambrano; and whatever amount I could negotiate or agree to for myself." *Id.* ¶ 23.

- "Subsequently, Mr. Zambrano told me he was in direct contact with Mr. Fajardo and that the Plaintiffs' representatives had agreed to pay him USD $500,000 from whatever money they were to collect from the judgment, in exchange for allowing them to write the judgment in the Plaintiffs' favor. Mr. Zambrano told me he would share with me part of that money once it was paid to him." *Id.*[3]

- "Mr. Zambrano advised me that we had to be more careful because the attorneys for Chevron would be very attentive to any irregularities." *Id.* ¶ 24.

- "It was through [Zambrano] that I found out that the attorneys for the Plaintiffs had written that judgment and had delivered it to him." *Id.* ¶ 25.

- "Mr. Zambrano asked me to work on the document to fine-tune and polish it so it would have a more legal framework." *Id.*

- "Mr. Zambrano explicitly asked me not to make copies nor leave traces of this document nor the changes I was making, outside of the file on which I worked." *Id.*

---

[3]  To the extent Defendants allege this statement involves multiple layers of hearsay, each layer qualifies as an exemption from the rule prohibiting hearsay. Fed. R. Evid. 805. Statements made by Fajardo to Zambrano are admissible non-hearsay as statements of a party-opponent. Fed. R. Evid. 801(d)(2). Statements made by Zambrano to Guerra are admissible non-hearsay statements made by a co-conspirator during and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E).

- "Based on what Mr. Zambrano told me, it is my understanding that the Plaintiffs' attorneys made changes to the judgment up to the very last minute before it was published." *Id.* ¶ 28.[4]

- "And I knew at that time, as I know now, that the agreement that Mr. Zambrano told me he had reached with the representatives' attorneys, to let them draft the judgment in favor of the Plaintiffs and against Chevron, in exchange for him receiving USD $500,000 once they collected the money from the judgment, was a violation of Ecuadoran law." *Id.* ¶ 29.[5]

- "Mr. Zambrano has had a change of heart for reasons he has not fully explained to me, and now says he is not willing to cooperate with Chevron and to reveal the truth."[6] *Id.* ¶ 33.

### b. Testimony Admissible Under an Exception to the Rule Against Hearsay

Statements made to Guerra by Zambrano regarding Zambrano's motive, intent, and plan to secure a bribe in exchange for entering a fraudulent judgment are also admissible under the state-of-mind exception to the hearsay rule. *See* Fed. R. Evid. 803(3) ("The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness . . . A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will."). In short, statements expressing intent are admissible despite the hearsay rule as long as the statement is not merely an assertion about the past. *See* 5 Weinstein's Federal Evidence, § 16.04.

---

[4] To the extent Defendants allege this statement involves multiple layers of hearsay, each layer qualifies as an exemption from the rule prohibiting hearsay. Fed. R. Evid. 805. Statements made by "Plaintiffs' attorneys" to Zambrano are admissible non-hearsay as statements of a party-opponent or statements of a co-conspirator. Fed. R. Evid. 801(d)(2), (2)(E). Statements made by Zambrano to Guerra are admissible non-hearsay statements made by a co-conspirator during and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E).

[5] Defendants do not specify what alleged hearsay they challenge in ¶ 29 of the Guerra Affidavit. Chevron assumes Defendants challenge this statement, which is admissible as a non-hearsay statement by a co-conspirator made during and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E).

[6] Defendants continue to actively pursue enforcement of the fraudulent judgment, and Zambrano will not be paid until the judgment is enforced. Dkt. 746-3 (Ex. C) ¶ 29. Therefore, the conspiracy is ongoing and Defendants and Zambrano continue to be active participants. Zambrano's statement that he will not cooperate to tell the truth regarding the judgment furthers the conspiracy's goal of enforcing the fraudulent judgment.

Under the state-of-mind exception to the rule against hearsay, "[a] declarant's out-of-court statement of intent may be introduced to prove that the declarant acted in accordance with that intent." *Saltzman v. Comm'r*, 131 F.3d 87, 94 (2d Cir. 1997) (quoting *United States v. Delvecchio*, 816 F.2d 859, 863 (2d Cir. 1987)). Evidence that would otherwise be excluded as hearsay is admissible under this exception to show both the declarant's intent and that he or she carried out that intent. *See, e.g.*, *United States v. Persico*, 645 F.3d 85, 100–03 (2d Cir. 2011) (wife of a murder victim testified the victim said he had to go to Brooklyn to meet his organized crime boss, and the statement was admitted against the crime boss in a RICO case to show the victim's intent to go to Brooklyn and that he acted in furtherance of that intent).

Where, as here, a statement by a declarant of his or her own state of mind is offered against a non-declarant, it will be admissible if there is independent evidence that connects the declarant's statement with the non-declarant's activities. *United States v. Best*, 219 F.3d 192, 198 (2d Cir. 2000) (in defendant's prosecution for Medicare fraud, co-defendant's out-of-court statement that he intended to ask defendant to create fraudulent document was proper because there was sufficient independent evidence of defendant's own conduct that corroborated the proposition that co-defendant had followed through on his intent). Corroboration need not be eyewitness observations and may be provided by circumstantial evidence. *Id.* at 199 (citing *United States v. Badalamenti*, 794 F.2d 821, 825–26 (2d Cir. 1986)). Because independent evidence corroborates Zambrano's statements regarding his intent, plan, and motive for seeking a bribe and connects those statements with the activities of Defendants—their payments to Guerra and drafting of the judgment—the following statements[7] are admissible against Defendants un-

---

[7] Dkt. 746-3 (Ex. C) ¶ 23, discussed above as an admissible non-hearsay statement of a co-conspirator during and in furtherance of the conspiracy, is also admissible under the state-of-mind exception as evidence of Zambrano's motive, intent, and plan to accept a bribe in exchange for entering a false judgment. Fed. R. Evid. 803(3).

der the state-of-mind exception:

- "Mr. Zambrano asked me to attempt, through friends of mine, to get in touch with the attorneys for Chevron in order to negotiate an agreement by which the company would pay Mr. Zambrano and me for issuing the final judgment in Chevron's favor."  Dkt. 746-3 (Ex. C) ¶ 12.

- "Mr. Zambrano told me that Chevron would have much more money than the Plaintiffs for this agreement, and therefore we could get a better deal and greater profits for ourselves."  *Id*. ¶ 12.

- "Mr. Zambrano again asked me to get in touch with my contacts to try to negotiate a financial agreement with Chevron."  *Id*. ¶ 22.

These statements can be corroborated by independent supporting declarations that demonstrate Zambrano directed Guerra to act in accordance with this plan.  Dkts. 746-10 (Ex. E); Dkt. 746-11 (Ex. F); Dkt. 746-12 (Ex. G); Dkt. 746-13 (Ex. H); Dkt. 746-14 (Ex. I).  Corroborating evidence also connects Zambrano's statements to Defendants' activities—when his solicitation attempts were rebuffed by Chevron, Zambrano accepted Defendants' bribe and allowed them to draft a fraudulent judgment.  Dkt. 764 ¶¶ 104–09, 125–29, 143–71, 181–206.

Thus, all of the challenged statements in the Guerra Affidavit are admissible as either non-hearsay statements or an exception to the hearsay rule.

## 2.     The Chevron Attorneys Affidavits

Defendants concede the admissibility of the majority of the testimony in the Chevron Attorneys' affidavits, and challenge as hearsay only "statements allegedly made to [the Chevron Attorneys] by admittedly corrupt former Judge Guerra, and others supposedly made on behalf of former Judge Zambrano."  Dkt. 916 at 3.  Defendants' motion to strike the Chevron Attorneys' affidavits should be denied because the statements in the Chevron Attorneys' affidavits can either be reduced to admissible form at trial, are non-hearsay, or fall within an exception to the hearsay rule.

### a.      Specific Challenges to the Callejas Affidavit

Defendants challenge three statements in the Callejas affidavit, claiming the "multiple levels of hearsay are dizzying." *See* Dkt. 916 at 3. But Callejas's challenged testimony can be reduced to admissible, non-hearsay at trial. *See Hausler*, 845 F. Supp. 2d at 573 n.12. For example, Defendants challenge the following two statements in Callejas's affidavit:

- "In the summer of 2009, one of the lawyers on my legal team representing Chevron Corporation in the Aguinda case, Dr. Ivan Alberto Racines Enriquez, informed me that he had happened to encounter Dr. Alberto Guerra Bastidas, who was by then a former judge and former President of the Sucumbíos Provincial Court who previously presided over the Aguinda case, on the street in Quito. Dr. Racines told me that Dr. Guerra had said, in words and substance, that the judgment in the Aguinda case could issue soon and that Dr. Guerra wanted to discuss it with Dr. Racines. Dr. Racines told me he understood this to be an overture by Dr. Guerra to influence the outcome of the Aguinda case in Chevron's favor for a price. Dr. Racines told me that, although he had responded with words to the effect, 'Yeah, sure,' to appease Dr. Guerra for the moment, Dr. Racines had no intention of following up with Dr. Guerra on the matter." Dkt. 746-10 (Ex. E) ¶ 2.

- "At about the same time, in early October 2009, Dr. Racines told me that he received a telephone call from Dr. Alberto Guerra Bastidas. As recounted by Dr. Racines, Dr. Guerra told him that Dr. Guerra could serve as an intermediary for communicating with Judge Zambrano regarding the Aguinda case and correcting the errors that Former Judge Juan Evangelista Nunez Sanabria had committed, that Dr. Guerra could 'fix' the entire case, and that Dr. Guerra could influence the subject of the judgment in the Aguinda case in Chevron's favor." *Id*. ¶ 4.

There are three layers of alleged hearsay embedded in this testimony: (i) statements made by Guerra to Racines,[8] (ii) statements made by Racines to Callejas, and (iii) Callejas's statements in the affidavit itself. The fact that Callejas is available to testify at trial eliminates the third layer of alleged hearsay. The first two layers of purported hearsay are likewise eliminated by the fact that the other two declarants, Guerra and Racines, have submitted declarations corroborating these statements, are available to provide deposition or trial testimony, and will presumably

---

[8]   Guerra's statements to Racines are independently admissible as non-hearsay statements made by a co-conspirator during and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E).

testify in accordance with their written declarations.[9]  *See* Dkt. 746-11 (Ex. F) ¶¶ 2, 4; Dkt. 746-3

(Ex. C) ¶ 12.  Once the testimony of Guerra and Racines is introduced at trial, Callejas's

testimony will be reduced to an admissible form because it will concern statements made by the

declarants "while testifying at the current trial or hearing."  *See* Fed. R. Evid. 801(c); *J.F.

Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1529, 1542 (3d Cir. 1990) (holding an

affidavit submitted by Spagnola, which was "based upon information from Spagnola's sales

personnel," could be considered on summary judgment because "there is no indication that

Spagnola's sales force would be unavailable to testify at trial" and "[t]he averments of

Spagnola's affidavit are capable of proof through admissible evidence").

  The final statement in Callejas's affidavit that Defendants challenge is:

- "In approximately the last quarter of 2010, another one of the lawyers on my legal team in the Aguinda case, Dr. Patricio Efrain Campuzano Merino, told me that, earlier that day, he received a telephone call from [REDACTED] who said she had something important to discuss with him regarding the Aguinda case, and that he met with her shortly thereafter.  Dr. Campuzano told me that, in his meeting with [REDACTED], she said that Judge Zambrano wanted to know whether Chevron would be interested in drafting the final judgment of the trial court in favor of Chevron in the Aguinda case.  Dr. Campuzano told me that he understood Dr. Guerra had conveyed that information to [REDACTED].  Based on Dr. Campuzano's recitation of his discussion with [REDACTED] I understood [REDACTED] to mean that Chevron could pay an amount of money to Judge Zambrano to obtain and ghostwrite a judgment in its favor in the Aguinda case."  Dkt. 746-10 (Ex. E) ¶7.

There are four layers of alleged hearsay embedded in this testimony:  (i) statements made by

Guerra to Doe Witness,[10] (ii) statements made by Doe Witness to Campuzano, (iii) statements

made by Campuzano to Callejas, and (iv) Callejas's statements in the affidavit itself.  Callejas is

available to testify at trial, therefore eliminating the fourth layer of alleged hearsay.  The first

---

[9]  At Defendants' request, Chevron made available for deposition all of the declarants relied upon in its motion for partial summary judgment (Dkt. 744), including Guerra and the Chevron Attorneys, prior to the date of Defendants' opposition to that motion.  However, Defendants refused to depose those witnesses.  *See* Exs. 3639–3642.

[10]  Guerra's statements to Doe Witness are independently admissible as non-hearsay statements made by a co-conspirator during and in furtherance of the conspiracy.  Fed. R. Evid. 801(d)(2)(E).

three layers of purported hearsay are eliminated because the other three declarants—Guerra, Doe Witness, and Campuzano—have submitted declarations discussing these incidents, are available to provide deposition or trial testimony, and will presumably testify in accordance with their written declarations. *See* Dkt. 746-12 (Ex. G) ¶¶ 2, 3; Dkt. 746 ¶ 2 (Doe Decl. filed under seal). Thus, Callejas's testimony itself can be reduced to an admissible form because it concerns statements made by the declarants "while testifying at the current trial or hearing." *See* Fed. R. Evid. 801(c); *J.F. Feeser*, 909 F.2d at 1542.

### b. General Challenge to the Chevron Attorneys Affidavits

Defendants do not challenge any specific statements in the Racines, Campuzano, and Carvajal affidavits. Instead, Defendants generally argue that all of the Chevron Attorneys' affidavits "contain similar statements by Guerra [from Zambrano]" and that "[n]one of the purported statements come from Judge Zambrano directly." Dkt. 916 at 4.

As discussed in detail above, all of the statements in the Chevron Attorneys' affidavits can be presented in a form admissible at trial and should be considered by the Court on summary judgment. *See Hausler*, 845 F. Supp. 2d at 573 n.12. Moreover, any statements by Zambrano— the only statements which appear to be challenged by Defendants—are admissible as non-hearsay statements made by a co-conspirator during and in furtherance of the conspiracy. *See supra* Section II.B.1.a. The Court should therefore consider the Chevron Attorneys' affidavits on summary judgment as corroborating evidence of Guerra's testimony.

### III. Chevron Produced the Challenged Affidavits and Related Materials in Discovery.

Although Defendants refer to discovery requests made in this action (Dkt. 916 at 8 n.5), they do not argue that Chevron violated its discovery requirements in this case. Nor could they—the Guerra Affidavit and the related affidavits identified by Defendants were produced on January 28, 2013, as Defendants admit (Dkt. 916 at 6), which is nearly a month prior to the

February 22, 2013 deadline for discovery related to those documents.

Defendants' discovery argument is actually predicated on discovery in the Count 9 action (Case No. 11-cv-3718). Dkt. 916 at 7 (detailing Chevron's responses to discovery requests and deposition questions in Count 9). But Chevron fulfilled its discovery obligations in the Count 9 action—it logged the 2009 Affidavits as attorney work product, and of course it did not produce or disclose documents or information related to its 2012 interactions with Guerra, because those interactions had not yet occurred. By the time they took place, the Count 9 action had been closed, terminating Chevron's discovery obligations.

### A. Chevron Fully Responded to Defendants' Discovery Requests.

In 2009, when Chevron attorneys Callejas and Racines were approached by Guerra and others with offers from Zambrano to fix the Lago Agrio Litigation, they summarily rejected Zambrano's overtures and drafted contemporaneous affidavits recounting the events for potential use in litigation. *See* Dkt. 746-10 (Ex. E); Dkt. 746-11 (Ex. F) (the "2009 Affidavits"). The 2009 Affidavits were not publicly filed at that time, and remained confidential.

Years later, in the Count 9 action, Chevron responded to Defendants' requests for the production of documents, and produced all non-privileged documents subject to any objections and clarifications. *See, e.g.*, Dkt. 916-5 (Ex. E). Documents subject to the attorney-client privilege or work product doctrine were withheld or redacted, and logged accordingly—specifically Chevron withheld the 2009 Affidavits as work product. *See* Ex. 3643 at 29 (logging "Non-public drafts, reports, or affidavits relating to the LAGO AGRIO LITIGATION" authored by "OUTSIDE COUNSEL or IN-HOUSE COUNSEL or CHEVRON OTHER IN-HOUSE or COMMON INTEREST COUNSEL" as "Attorney Work Product"). In response to Defendants'

interrogatories, and specifically in response to Interrogatory No. 9[11]—the interrogatory Defend-ants discuss in their motion to strike—Chevron interposed various objections, stated that "the full extent" of these judges' "improper conduct of the Lago Agrio Litigation, including any improper contacts with the Lago Agrio Plaintiffs and their representatives" was "not yet known," and then listed detailed facts demonstrating the corruption and impartiality of each judge in the Lago Agrio Litigation. Dkt. 916-2 (Ex. B) at 12–30. At the time, as reflected in the 2009 Affidavits, Chevron was not aware of the contacts between Zambrano and the LAP team that Guerra would ultimately reveal, and thus, could not have disclosed them in response to an interrogatory on that topic.

In September 2011, the LAPs' counsel deposed Callejas as Chevron's Rule 30(b)(6) rep-resentative in the Count 9 action. The LAPs' counsel asked him to "identify the specific judges that Chevron is saying acted in a biased manner or were corrupt." Ex. 3644 at 33:5-7. Callejas identified "all the judges who have heard the case in Lago Agrio," which necessarily includes both Guerra and Zambrano, and then attempted to incorporate the aforementioned interrogatory responses into his testimony. *Id*. at 33:25–34:5, 45:18–46:17. But counsel for the LAPs refused to accept that adoption, instead instructing Callejas, "I don't want you to answer in any way based on the interrogatories." *Id*. at 47:2–3. Callejas invited the LAPs' counsel to ask for facts regarding specific judges, but the LAPs' counsel never asked Callejas about Zambrano or Guer-ra. *Id*. at 41:20–21.

On February 21, 2012, this Court dismissed the Count 9 action. Case No. 11-cv-3718, Dkt. 380. In April 2012, Guerra came forward and over the next several months revealed his in-volvement as ghostwriter for Zambrano and his knowledge of the LAPs' bribery scheme. Dkt.

---

[11] *See* Dkt. 916-1 (Ex. A) at 12 ("Describe each and every specific factual basis for your contention that the judges in the ECUADORIAN LITIGATION were and are corrupt and not impartial.").

755-14 (Ex. 3268) at 1.  On November 17, 2012, Guerra signed an affidavit describing these events.  Dkt. 746-3 (Ex. C).  Subsequently, on January 28, 2013, Chevron filed its motion for partial summary judgment, including the Guerra Affidavit, and submitted the Chevron Attorneys' affidavits and other corroborating evidence of Guerra's account—including the 2009 Affidavits.  Chevron also produced other documents related to Guerra, including tapes and transcripts of conversations with Guerra.  These documents were produced to Defendants, or made available to them, prior to the February 22, 2013 deadline for responses to the relevant written discovery.  *See* Dkt. 808.  Defendants do not argue otherwise.

Not only has Chevron timely produced the material in question, it has already explained these facts to Defendants.  On February 8, 2013, Defendants sent a letter to Chevron setting forth many of the arguments made again in the instant motion to strike.  Dkt. 916-7.  Three days later, Chevron responded to Defendants with a detailed letter (i) identifying documents that Chevron previously produced from Guerra, (ii) reiterating its offer for Defendants to inspect the devices, (iii) explaining that Chevron compensated Guerra for information, not just physical devices, and (iv) demonstrating that Chevron fully responded to discovery requests in the Count 9 action.  Ex. 3633.  Also on February 11, 2013 Chevron sent Defendants copies of the Cohen and Nickelsburg expert reports, as well as the executive summary of a report on the security situation in Ecuador.  Ex. 3645.  Defendants did not submit either of these letters with their motion to strike or address their content, and even imply that Chevron did not respond to their letter at all, which is false.  *See* Dkt. 916 at 8.

**B.    The 2009 Affidavits of Chevron's Attorneys Were Properly Withheld as Attorney Work Product.**

Chevron properly logged the 2009 Affidavits as work product in the Count 9 action, and its decision not to rely on them at that time has no bearing on its ability to do so now, where, as

Defendants do not dispute, it has timely produced them in discovery. "[W]here an affidavit or declaration has been drafted with the assistance of counsel and executed by the affiant for possible use in conjunction with a motion, courts have held that such affidavits qualify for work product protection up until the time the affidavit or declaration is publicly filed in connection with the motion." *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 60–62 (E.D.N.Y. 2012) (holding that declarations "constituted work product up until the date they were filed" and plaintiff's "failure to provide the privileged [declarations] in advance of their filing does not violate Rule 26"); *see also Inst. for the Dev. of Earth Awareness v. People for the Ethical Treatment of Animals*, 272 F.R.D. 124, 125 (S.D.N.Y. 2011) (executed affidavits drafted for possible use on a summary judgment motion "remained work product until the lawyer elected to serve and file them"); *Stokes v. City of New York*, No. CV 2005-7-JFB-MDG, 2006 WL 2064976, at *2 (E.D.N.Y. July 24, 2006) (affidavit is protected by work product doctrine until it is "filed in this action or otherwise publicly disclosed"). Work product protection of affidavits is necessary because "the attorney who caused the preparation of the affidavit may have a strategic reason for changing course and deciding not to file the document." *Lujan*, 284 F.R.D. at 61. The cases Defendants cite are inapposite and did not concern documents protected by the work product doctrine. *See White v. Fin. Credit Corp.*, No. 99 C 4023, 2001 WL 1665386, at *3 (N.D. Ill. Dec. 27, 2001) (striking plaintiff's credit report); *Guang Dong Light Headgear Factory Co., Ltd. v. ACI Int'l, Inc.*, No. 03-4165-JAR, 2008 WL 53665, at *1 (D. Kan. Jan. 2, 2008) (striking declaration of witness who was not properly disclosed).

### C. Chevron Has No Duty to Supplement Its Discovery Responses From the Count 9 Action.

Defendants cite Rule 26(e)(1)(A) for the proposition that Chevron has not supplemented its discovery responses (Dkt. 916 at 6), but Defendants fail to specify any discovery response

requiring supplementation. Assuming that Defendants refer to Chevron's interrogatory responses from the Count 9 action, Chevron is not required to supplement its interrogatory response in an inactive case. *See, e.g.*, *Schindler Elevator Corp. v. Otis Elevator Co.*, No. 06 Civ. 5377-CM-THK, 2010 WL 4007303, at *4–5 (S.D.N.Y. Oct. 6, 2010) (denying motion to strike supplemental interrogatory responses, submitted after case was remanded, because "[o]nce the court granted summary judgment and dismissed the complaint, [plaintiff] could not supplement its interrogatory responses, because the case was closed"). The Count 9 action terminated on February 21, 2012 (Case No. 11-cv-3718, Dkt. 380) and Chevron's response to Interrogatory No. 9 was still complete at that time, as Guerra had not yet contacted Chevron with his additional information.[12]

## CONCLUSION

The Court should deny Defendants' motion to strike affidavits accompanying Chevron's motion for partial summary judgment.

Dated:  April 4, 2013            Respectfully submitted,
        New York, New York


                                    _/s/ Randy M. Mastro_
                                    Randy M. Mastro
                                    Andrea E. Neuman
                                    GIBSON, DUNN & CRUTCHER LLP
                                    200 Park Avenue
                                    New York, New York 10166

---

[12] Defendants fail to acknowledge that preclusion of testimony under Rule 37(c), for failure to comply with Rule 26(e), is a discretionary remedy. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 298 (2d Cir. 2006) (holding that "the plain text" of Rule 37(c) provides a court with "discretion to impose other, less drastic, sanctions"). In exercising its discretion, the Court should consider "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (quotation omitted) (brackets in original). Defendants make no attempt to justify their "drastic" sanction—notably, they ignore the fact that the purported discovery failures were in a separate action, and thus could not prejudice Defendants in this action, where the information and documents were disclosed.

Telephone: 212.351.4000
Facsimile:  212.351.4035

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile:  213.229.7520

*Attorneys for Chevron Corporation*