UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
CHEVRON CORPORATION,
:
               Plaintiff,
:
  -against-
:  Case No. 11 Civ. 0691 (LAK)
:
STEVEN R. DONZIGER, et al.,
:
               Defendants.
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CHEVRON CORPORATION'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS HUGO GERARDO CAMACHO NARANJO
AND JAVIER PIAGUAJE PAYAGUAJE'S MOTION,
JOINED BY THE DONZIGER DEFENDANTS,
TO SUPPLEMENT THE SUMMARY JUDGMENT RECORD WITH NEW EVIDENCE**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

I.     The Court Cannot Consider the Declaration on Summary Judgment Because the Evidence Cannot Be Reduced to Admissible Form. ...................................................... 4

II.    The Offered Testimony is Not Admissible as Non-Hearsay or Under an Exception to the Hearsay Rule. ............................................................................................. 5

    A.    The Declaration Itself is Inadmissible Hearsay that Does Not Qualify for an Exception to the Rule. .................................................................................. 5

    B.    The Statements Regarding Chevron's Alleged Surveillance are Hearsay Within Hearsay. ........................................................................................................ 9

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Amnesty Am. v. Town of W. Hartford*,
  361 F. 3d 113 (2d Cir. 2004) ............................................................................................... 3

*Banco de Espana v. Federal Reserve Bank*,
  114 F.2d 438 (2d Cir. 1940) ................................................................................................ 4

*Instinet Inc. v. Ariel (UK) Ltd.*,
  2012 WL 4195391 (S.D.N.Y. Sept. 20, 2012) .................................................................... 9

*J.K. Walkden, Ltd. v. Lord & Taylor*,
  2001 WL 619040 (S.D.N.Y. June 5, 2001) ......................................................................... 7

*Parsons v. Honeywell, Inc.*,
  929 F.2d 901 (2d Cir. 1991) ................................................................................................ 7

*Santos v. Murdock*,
  243 F.3d 681 (2d Cir. 2001) ........................................................................................ 1, 2, 4

*U.S. v. Dambruck*,
  270 F. App'x 30 (2d Cir. 2008) ........................................................................................... 5

*U.S. v. Farhane*,
  634 F.3d 127 (2d Cir. 2011) ................................................................................................ 5

*U.S. v. Lang*,
  589 F.2d 92 (2d Cir. 1978) .................................................................................................. 6

*U.S. v. Persing*,
  436 Fed App'x 13, 21 n.21 (2d Cir. 2011) .......................................................................... 6

*Williamson v. United States*,
  512 U.S. 594 (1994) ............................................................................................................ 6

### Rules

Fed. R. Civ. P. 11(b)(3) ................................................................................................................ 3
Fed. R. Civ. P. 56(c)(2) ....................................................................................................... 2, 3, 4
Fed. R. Evid. 801(c) .............................................................................................................. 1, 5
Fed. R. Evid. 801(d)(2)(E) ......................................................................................................... 5
Fed. R. Evid. 802 ........................................................................................................................ 5
Fed. R. Evid. 803 ................................................................................................................... 5, 6
Fed. R. Evid. 804 ........................................................................................................................ 5
Fed. R. Evid. 804(b) ................................................................................................................... 6
Fed. R. Evid. 804(b)(2) .............................................................................................................. 6

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

Fed. R. Evid. 804(b)(3) ............................................................................................................ 6

Fed. R. Evid. 804(b)(4) ............................................................................................................ 6

Fed. R. Evid. 804(b)(6) ............................................................................................................ 6

Fed. R. Evid. 805 ...................................................................................................................... 9

Fed. R. Evid. 807 .................................................................................................................. 5, 7

Fed. R. Evid. 901(a) ................................................................................................................. 8

Fed. R. Evid. 901(b) ................................................................................................................. 8

**PRELIMINARY STATEMENT**

A party cannot offer a declaration or affidavit in opposition to summary judgment unless it also makes "an implicit or explicit showing that the affiant is prepared to testify in a manner consistent with [the] affidavit." *Santos v. Murdock*, 243 F.3d 681, 684 (2d Cir. 2001). Defendants make no such showing with respect to the offered declaration, allegedly from former judge Nicolás Zambrano. Indeed, to the contrary, they have disclaimed any ability to produce him for deposition at all. They cannot avoid summary judgment by relying on a declaration while also shielding the declarant from deposition—or even from a binding oath. The declaration is inadmissible hearsay, and Defendants' request to add it to the record should be denied.

The purported Zambrano declaration is an exemplar of unreliable and inadmissible hearsay. It is an out-of-court statement, offered "in evidence to prove the truth of the matter asserted in the statement" (Fed. R. Evid. 801(c)), that could not withstand cross-examination. Indeed, notwithstanding its blanket denial that the LAP team ghostwrote the $18.2 billion judgment, the declaration fails to address, much less refute, Chevron's key evidence regarding Defendants' and their co-conspirators' fraud and corruption, including draft judgments and orders in the Ecuadorian case issued by Zambrano that have been found on Alberto Guerra's hard drive, shipping records demonstrating numerous shipments between Guerra and Zambrano during his tenure as judge, and records and notes documenting that Guerra received repeated payments from Zambrano.

Defendants' motivation for shielding Zambrano from being cross-examined or testifying under a binding oath is obvious. His statement contains assertions that are ludicrous and false on their face. For example, since Chevron has already proven that it would have been impossible for him to have read the entire record and written the more than 180-page, single-spaced judgment during the several weeks available to him during his second tenure on the case, now Zam-

1

brano claims to have actually started writing the judgment during his first tenure on the case—but even then he would have had to have proceeded at a pace equivalent to a full-time job. This, even though he could not possibly have known the next judge assigned would have his two-year tenure on the case cut short by a successful Chevron recusal motion and even though it is illegal under Ecuadorian law for him to have presumed to start drafting the judgment at that premature stage. Above all, the declaration offers no explanation for the substantial overlap between Defendants' unfiled work product and the Ecuadorian judgment. While it contains a vague reference to unidentified materials supposedly left outside Zambrano's door, it does not assert that any of the LAPs' unfiled work product was secretly submitted in that fashion. And such an ex parte submission would not cure the fraud in any event. Without any explanation for this evidence, no reasonable finder of fact could credit Zambrano's claim to be the sole author of the judgment. Moreover, his statement is not notarized, disclaims submission to this Court's jurisdiction, and declines to make any commitment that he will actually testify.

Substantive problems aside, while the Court may consider testimony in affidavits at the summary judgment stage, it can do so only when the testimony can be presented in an admissible form at trial. *See, e.g.*, Fed. R. Civ. P. 56(c)(2); *Santos*, 243 F.3d at 684. But despite being able to obtain a declaration from Zambrano, as well as recordings of his telephone conversations, Defendants have disclaimed an ability to "force Mr. Zambrano to appear" and they "cannot confirm at this time that he will attend" the deposition *they* noticed. Ex. 3682; *see also* Ex. 3683). If Defendants cannot ensure that Zambrano will testify at their deposition in Lima, then *a fortiori* they cannot ensure that he will appear at trial in New York. In fact, Zambrano's declaration itself attempts to avoid this Court's jurisdiction. Dkt. 974-1 (asserting that submitting the declaration "does not mean that I submit to the jurisdiction of the United States of America"). Thus, the dec-

2

laration is inadmissible and not competent evidence on summary judgment.[1]

Given these failings, Defendants' motion is nothing more than an attempt to delay the Court's consideration of Chevron's motion for partial summary judgment and cover for "a libel-proof press release."  Dkt. 977-1 at 35:20–36:9; *see also* Ex. 3684 (*More Revelations About Chevron's Paid Witness & Its Miami Lawyer, Andres Rivero*, The Chevron Pit (Apr. 6, 2013, 2:11 PM), http://thechevronpit.blogspot.mx/2013/04/more-revelations-about-chevrons-paid.html) ("Chevron not only is lying to a U.S. court about what happened in the historic Ecuadorian trial that the oil giant lost, it also offered a $1 million bribe to turn evidence against the Ecuadorians and their lawyers, testified an Ecuador judge in a legal declaration filed yesterday in the Southern District Court of New York.").

The Zambrano declaration is inadmissible and the Court should deny Defendants' motion and disregard the declaration in its entirety.

**ARGUMENT**

The offered Zambrano declaration is hearsay not subject to an exception, and is thus inadmissible.  It is Defendants' burden to show otherwise, and they cannot do so.

On summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P.

---

[1] Defendants' motion thus fails to satisfy the Federal Rules of Civil Procedure, in particular Rule 11, which requires factual assertions to have "evidentiary support" or at least be "likely [to] have evidentiary support."  *See* Fed. R. Civ. P. 11(b)(3); *Amnesty Am. v. Town of W. Hartford*, 361 F. 3d 113, 131 (2d Cir. 2004) (noting attorneys are "presumed not to offer in opposition to summary judgment evidence that they have no good faith basis to believe will be available or admissible at trial").  Despite this requirement, Defendants' motion is replete with factual assertions in the strongest possible language whose only "basis" is an inadmissible declaration that Defendants have admitted they cannot reduce to admissible form.  *See*, *e.g.*, Dkt. 973 at 1, 4 ("The declaration shows that Chevron's key witness, Guerra, is a liar . . . . Surely Chevron does not want to stand on the false testimony . . . . Mr. Zambrano's evidence strikes at the heart of Chevrons' case and is relevant to the most material facts of this case.").  The law of this case even makes it clear that testimony by non-deposed foreign witnesses will not be admissible at trial or considered in any other proceeding.  Dkts. 882 at 2; 910 at 2 ("no foreign witness who fails to submit to a deposition . . . shall be permitted to testify at trial or other proceedings").

3

56(c)(2). When an objection is made, the burden is on the proponent of the material to show either that the material is admissible as presented or to explain the admissible form that is anticipated at trial. Fed. R. Civ. P. 56(c)(2) advisory committee's note to 2010 amendments ("The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."). Defendants have not, and cannot, demonstrate that the contents of the Zambrano declaration will be presented in an admissible form at trial. Therefore, this Court should not consider or rely on any part of his declaration. Even if Defendants could demonstrate that Zambrano will testify at deposition or at trial, they cannot overcome the fact that the declaration itself, along with certain statements therein, is inadmissible hearsay.

### I. The Court Cannot Consider the Declaration on Summary Judgment Because the Evidence Cannot Be Reduced to Admissible Form.

"[A]n implicit or explicit showing that the affiant is prepared to testify in a manner consistent with an affidavit is required to oppose summary judgment." *Santos v. Murdock*, 243 F.3d 681, 684 (2d Cir. 2001); *see also Banco de Espana v. Federal Reserve Bank of New York*, 114 F.2d 438, 445 (2d Cir. 1940) (finding "express averment" unnecessary where "other circumstances indicate" that the affiant, a foreign diplomat immune to process, would testify at trial). Not only have Defendants failed to make any showing that Zambrano is prepared to testify in a manner consistent with his affidavit,[2] Zambrano himself indicates that he will not so testify. *See* Dkt. 974-1 ¶ 1. In the very first paragraph of the declaration, Zambrano states that he does not "submit to the jurisdiction of the United States of America" and fails to indicate that, if called upon to do so, he could and would testify consistent with the contents of his declaration. *See id.* For this reason alone, the Zambrano declaration should be disregarded in its entirety.

---

[2] *See* Dkt. 982-1 (2013.03.28 Letter from L. Veselka to A. Neuman) ("Mr. Zambrano is a third-party, outside of Defendants' control.") Ex. 3682 (2013.04.08 Letter from Craig Smyser to R. Mastro) (noting that Defendants cannot confirm that Zambrano will appear for his noticed deposition).

4

**II.     The Offered Testimony is Not Admissible as Non-Hearsay or Under an Exception to the Hearsay Rule.**

    **A.     The Declaration Itself is Inadmissible Hearsay that Does Not Qualify for an Exception to the Rule.**

The purported Zambrano declaration is the definition of hearsay: it is an out-of-court statement offered "in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). While hearsay is generally inadmissible, there are several categories of statements that are excluded or qualify as exceptions to this rule. *See generally* Fed. R. Evid. 802, 803, 804, 807. Unlike the affidavits submitted by Chevron, for example, the Zambrano declaration fails to qualify for an exception or exclusion to the rule prohibiting hearsay and should be disregarded.

The Zambrano declaration does not fall within any category that would render it exempt or excluded from the hearsay rule. Under Rule 801(d), a statement is not hearsay if it is "offered against an opposing party" and it "was made by the party in an individual or representative capacity." Fed. R. Evid. 801(d). Unlike the declaration submitted by Alberto Guerra Bastidas, which contained statements made by Defendants and their co-conspirators and was offered by Chevron against Defendants, the Zambrano declaration is not a statement made by a party-opponent. Further, Defendants cannot argue that Zambrano's testimony is admissible as a statement made by a co-conspirator. Co-conspirator statements are admissible if the statements were made "during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E); *U.S. v. Dambruck*, 270 F. App'x 30, 34 (2d Cir. 2008). To demonstrate that a statement was made "during and in furtherance of the conspiracy," the district court must find "by a preponderance of the evidence (a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy." *United States v. Farhane*, 634 F.3d 127, 161 (2d Cir. 2011) (quotation marks omitted). Here there is no evidence of a conspiracy that included Zam-

5

brano and Chevron, the party against whom the declaration is being offered, or that these statements were made in furtherance of any such conspiracy. The Zambrano declaration does not qualify as non-hearsay under the exclusions listed in Rule 801(d).

The Zambrano declaration also fails to qualify for any *exception* to the rule prohibiting hearsay. Although Federal Rule of Evidence 803 lists several categories of statements that qualify for an exception to the rule, the Zambrano declaration does not fit within any of the enumerated categories. *See generally* Fed. R. Evid. 803. The declaration does not contain former testimony, it was not made under the belief of imminent death, it is not a statement of personal or family history, and it is not offered against a party that wrongfully caused Zambrano's unavailability. *See* Fed. R. Evid. 804(b), (2), (4), (6). Nor can the Zambrano declaration qualify as a statement against interest under Rule 804(b)(3). Statements that are against a declarant's "proprietary or pecuniary interest" are admissible under the theory that "a reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true because, when made, it . . . had so great a tendency . . . to expose the declarant to civil or criminal liability." Fed. R. Evid. 804(b)(3); *U.S. v. Persing*, 436 Fed App'x 13, 21 n.21 (2d Cir. 2011). There is nothing in Zambrano's declaration that rises to the level of a statement against interest.[3]

---

[3] While it does not meet the admissibility requirements as a statement against interest, Zambrano's declaration does demonstrate that he acted in a manner that was inconsistent with Ecuadorian law. Most notably, Zambrano violated Ecuadorian law by using materials supposedly "left at the door to [his] office at the Court" in his decision (Dkt. 974-1 ¶16), and drafting his decision before issuing the autos para sentencia (Dkt. 974-1 ¶11). *See* Ex. 3679 (Declaration of Dr. Santiago Velazquez Coello, filed concurrently with Chevron's Reply in Support of Motion for Summary Judgment). These admissions do not, however, fall under the statement against interest exception to the hearsay rule because they serve the beneficial purpose of attempting—albeit unsuccessfully—to refute Chevron's evidence of corruption and fraud. A hearsay statement is admissible as a statement against interest only if "the incriminating statement sufficiently 'tended' to subject the declarant to criminal liability" that a reasonable man in his position would not have made it unless he believed it was true. *United States v. Lang*, 589 F.2d 92, 97 (2d Cir. 1978). Accordingly, the statement must not serve some other beneficial purpose to the declarant, which would reduce its trustworthiness. *See Williamson v. United States*, 512 U.S. 594, 600 (1994) (noting that state-
[Footnote continued on next page]

Indeed, Zambrano claims that his actions throughout the Lago Agrio litigation were "by mandate of the law," "transparent and in accordance with statutory law and equity," and "as stipulated by Ecuadorian law." Dkt. 974-1 ¶¶ 3, 4, 5, 8, 15. Thus, Defendants cannot argue that, by making this declaration, Zambrano feared any sort of exposure to civil or criminal liability.

The Zambrano declaration lacks the necessary "circumstantial guarantees of trustworthiness" to qualify for admission under the residual exception in Rule 807. *See* Fed. R. Evid. 807(a) ("Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804: (1) the statement has equivalent circumstantial guarantees of trustworthiness . . ."). In fact, Zambrano's declaration raises more questions regarding his credibility and veracity than it answers, and falls far short of the high standard required for admissibility under Rule 807. *See, e.g.*, *J.K. Walkden, Ltd. v. Lord & Taylor*, 2001 WL 619040, at *4 (S.D.N.Y. June 6, 2001) ("The residual exception articulated in Rule 807 is to be applied 'very rarely, and only in exceptional circumstances.'") (quoting *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991)). Not only does the declaration lack relevant and admissible corroborating evidence,[4] it fails to respond

---

[Footnote continued from previous page]
ments inculpating other individuals in the context of a confession are inherently less trustworthy because they are beneficial to the declarant in that they attempt to shift blame or curry favor).

[4] To corroborate Zambrano's story, Defendants filed two audio recordings of purported conversations between Zambrano and Andrés Rivero and Zambrano and Dr. Efraín Mendoza. These recordings are themselves hearsay, they address only tangential aspects of the declaration, and they lack all indicia of credibility. Defendants assert that they "do not have" and "cannot produce" "the original recordings," and do not indicate how they came to possess the filed recordings or whether they have even attempted to obtain the original recordings. Ex. 3682. Further, both the audio files and the transcripts of those audio files are incomplete. The transcripts of both recordings contain extensive ellipses and one of the recordings appears to begin and end in the middle of a conversation. Ex. 3683.

The Federal Rules of Evidence provides two ways of authenticating documents. Rule 902 lays out the requirements for introducing certain categories of records as "self-authenticating." Fed. R. Evid. 902. Zambrano's audio recordings do not fall within any category of records that would be self-authenticating. Alternatively, Rule 901(a) states, "to satisfy the requirement of authenticating or identifying an item of
[Footnote continued on next page]

7

to, much less refute, Chevron's evidence of judgment fraud.  Zambrano does not, for example, deny or explain why Guerra's hard drive contained draft judgments issued by Zambrano in this and other cases (Dkt. 755-16 (Ex. 3278) at 10-11, 38), why TAME shipping records show numerous shipments between Zambrano and Mr. Guerra (Dkt. 763-6 (Ex. 3289)), or why Mr. Guerra's planner and bank records indicate that he received payments from Zambrano (Dkts. 746-3 at 10).

Further, Zambrano fails to provide a plausible explanation for the substantial overlap between Defendants' internal work product and the Ecuadorian judgment.  Zambrano's declaration states:  "I confirm that I am the only author of the judgment that I issued on February 14, 2011, and of the clarification that I issued on March 4, 2011.  I did not receive support or assistance from Dr. Alberto Guerra or from any other person, much less from the litigant parties."  Dkt. 974-1 ¶ 14.  He goes on to note that "occasionally documents related to the case that were not incorporated into the process were left at the door to my office at the Court . . . . I verified all of that information regarding the case, that is to say, I made sure that it was not false information and also that the basis for such information is in the record.  This was relevant information that, as I read it, I realized it could be of use in my decision."  *Id.* ¶ 16.  But these statements do not explain how portions of Defendants' internal and unfiled work product, including the Fusion

---

[Footnote continued from previous page]
evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  Rule 901(b) gives illustrative examples of ways that a proponent can authenticate evidence, including by witness testimony, by showing distinctive characteristics of the proffered evidence, or by proof that it was produced by a certain process or system that speaks to its authenticity.  Fed. R. Evid. 901(b).  Defendants have already indicated that they "do not have" and "cannot produce" "the original recordings," nor can they produce the original recording devices for inspection.  Ex. 3682.  Defendants have not even offered to attempt to obtain the original recordings.  Ex. 3683.  Further, Defendants will not confirm that Zambrano will be made available to testify regarding the authenticity of the recordings.  *Id.*  Without being able to satisfy Rule 901's requirements, Defendants will be unable to authenticate the audio recordings or reduce them to admissible form and should be unable to submit those recordings for consideration on summary judgment.

8

Memo, the draft alegato, the Fajardo Trust email, the Moodie Memorandum and the unfiled Clapp expert report, came to be copied verbatim (typos and all) in the final judgment. In fact, this Court has already found "as a matter of law that whoever wrote the Judgment had access to and copied portions of the [Unfiled Fusion] Memo," and that the draft alegato (a draft version of the LAPs' final brief to be submitted to the court) "contains several word strings identical in the Judgment and the Fusion Memo." Dkt. 550 at 86, 29 n.116. Zambrano's declaration does not clarify how this occurred, much less demonstrate that it was legal or appropriate.

### B. The Statements Regarding Chevron's Alleged Surveillance are Hearsay Within Hearsay.

Under Federal Rule of Evidence 805, evidence containing multiple layers of hearsay is only admissible when each layer is independently covered by a hearsay exception. Fed. R. Evid. 805; *Instinet Inc. v. Ariel (UK) Ltd.*, 2012 WL 4195391, at *6 (S.D.N.Y. Sept. 20, 2012) (denying admission of hearsay within hearsay because each layer of hearsay did not fall under an exception to the rule). The allegations contained in Zambrano's declaration regarding the supposed surveillance of Zambrano's partner are hearsay within hearsay, and thus inadmissible even if the declaration were admissible:

> On September 3, 2012, my partner was alerted by personnel at her workplace that she was being investigated and spied on by a woman who turned out to be a former policewoman by the name of Magda Enith Ramirez Benavides, who was illicitly associated with four other people, among them two former policemen of Ecuador. After we found out that my partner was being followed, we had the referenced person detained with the help of the police. She was found to be carrying two mobile phones, one hidden in her private parts. At a meeting that we had with Dr. Efraín Mendoza, an attorney for Mrs. Magda Enith Ramirez Benavides and the two former policemen, he revealed that one of them had told him that the person being watched as me and that an oil company was investigating me because I had issued an judgment in the province of Sucumbíos (see audio number two).

Dkt. 974-1 ¶ 21.

9

The declaration establishes no basis of personal knowledge for Zambrano to make these claims—indeed, it isn't even clear whose out-of-court statement Zambrano is purportedly repeating here. But any statements made by Zambrano's partner, the police, or Dr. Mendoza are inadmissible in any event. These individuals are neither party-opponents nor co-conspirators, nor do their statements fall within one of the enumerated exceptions to the hearsay rule.

Moreover, this is not a new allegation, and it has been rebutted by the investigator in question, Ramirez, who gave a statement in Ecuador that she had been hired to investigate alleged "infidelity," and that the investigation had nothing to do with Zambrano. Ex. 3685.

## CONCLUSION

The Court should deny Defendants' motion to supplement the summary judgment record and disregard Zambrano's declaration in its entirety.

Dated: April 12, 2013
     New York, New York

Respectfully submitted,

       /s/ Randy M. Mastro
Randy M. Mastro
Andrea E. Neuman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for Chevron Corporation*