UNITED STATES DISTRICT COURT                    **(ECF)**
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
CHEVRON CORPORATION,                 :   11 Civ. 0691 (LAK) (JCF)
                                     :
            Plaintiff,               :        REPORT AND
                                     :      <u>RECOMMENDATION</u>
     - against -                     :
                                     :
STEVEN DONZIGER, et al.,             :
                                     :
            Defendants.              :
- - - - - - - - - - - - - - - - - -:
TO THE HONORABLE LEWIS A. KAPLAN, U.S.D.J.:

     In this action, defendants and counter-claimants Steven
Donziger, The Law Offices of Steven R. Donziger, and Donziger &
Associates, PLLC (collectively, the "Donziger Defendants") bring
counterclaims against plaintiff and counter-claim defendant Chevron
Corporation ("Chevron").  The Donziger Defendants claim that (1)
Chevron has sought to obtain property interests of the Donziger
Defendants by harassment, intimidation, and the commencement of
vexatious litigation; and (2) Chevron has knowingly misrepresented,
omitted, and concealed material facts in its pleadings and
representations to a number of courts, government agencies, media,
and public at large, causing harm to the Donziger Defendants.
Chevron now moves under Rule 12(b)(6) of the Federal Rules of Civil
Procedure to dismiss the Donziger Defendants' counterclaims for
failure to state a claim.  For the reasons set forth below, I
recommend that the motion be granted.

Background

I assume familiarity with the extensive history of this controversy in this Court and the Court of Appeals, which is fully set out in numerous published decisions. E.g., Chevron Corp. v. Naranjo, 667 F.3d 232 (2d Cir. 2012), cert. denied, 133 S. Ct. 423 (2012); Chevron Corp. v. Donziger, 871 F. Supp. 2d 229 (S.D.N.Y. 2012); In re Chevron Corp., 709 F. Supp. 2d 283 (S.D.N.Y. 2010), aff'd sub nom. Chevron Corp. v. Berlinger, 629 F.3d 297 (2d Cir. 2011); In re Chevron Corp., 736 F. Supp. 2d 773 (S.D.N.Y. 2010). Nevertheless, some background is needed to frame the disputes at issue here.

A.   Chevron's Action Against Donziger Defendants

In 2011, an Ecuadorian trial court (the "Lago Agrio Court") entered a multibillion dollar judgment (the "Judgment") against Chevron in an action (the "Lago Agrio Litigation") brought by 47 individual Ecuadorian residents (the "Lago Agrio Plaintiffs" or "LAPs").  In anticipation of the judgment, Chevron filed an action against (1) the LAPs, (2) their counsel, the Donziger Defendants, (3) Stratus Consulting, Inc. and two of its employees, and (4) several other defendants.[1]

---

[1] These other individuals and entities include Pablo Fajardo Mendoza, Luis Yanza, Selva Viva Selviva CIA, Ltda, and the Amazon Defense Front.

Chevron claimed that Steven Donziger and other persons based in the United States conceived, funded, and executed a scheme to extort and defraud Chevron by, among other things, (1) bringing a baseless lawsuit in Ecuador; (2) fabricating evidence for use in that lawsuit in order to obtain an unwarranted judgment there; (3) exerting pressure on Chevron to coerce it to pay money not only by means of the Ecuadorian litigation and the Judgment, but also by subjecting Chevron to public attacks in the United States and elsewhere based on false and misleading statements; (4) inducing U.S. public officials to investigate Chevron on the basis of false claims; and (5) making false statements to U.S. courts and intimidating and tampering with witnesses in U.S. court proceedings to prevent Chevron from obtaining evidence of the fraud.

> B.   Donziger Defendants' Counterclaims

On November 28, 2012, the Donziger Defendants filed their counterclaims against Chevron. (Defendants Steven Donziger, the Law Offices of Steven R. Donziger and Donziger & Associates, PLLC's Counterclaims ("Counterclaims")). The defendants allege the following facts, which are presumed true on a motion to dismiss.

In anticipation of an unfavorable outcome in the Lago Agrio Litigation in Ecuador, Chevron embarked on a campaign to undermine the Ecuadorian judiciary and the plaintiffs' lawyers, including Mr. Donziger. (Counterclaims, ¶ 4). Chevron's strategy involved three

3

main avenues of attack: (1) using false and misleading evidence of corruption against the LAPs and their counsel to taint the results of the Lago Agrio Litigation; (2) improperly undermining the scientific and eyewitness evidence adduced by the Lago Agrio Court during the eight-year trial; and (3) leveling false claims of fraud and other misconduct against Mr. Donziger and the rest of the LAP's legal team.  (Counterclaims, ¶ 5).

    This strategy -- effected by Chevron's senior officers and managers, including its Chairman and CEO, John Watson, its General Counsel R. Hewitt Pate, and its American counsel -- involved propagating a narrative of fraud, collusion, and corruption in connection with the Lago Agrio Litigation through a campaign of public relations, lobbying, and collateral litigation. (Counterclaims, ¶ 56).  Specifically, Chevron depicted Mr. Donziger as the principal protagonist, who "orchestrat[ed] corruption, with the goal of obtaining a fraudulent multi-billion dollar judgment against Chevron" and as being "at the center of a decades-long $27.3 billion fraud[.]" (Counterclaims, ¶ 57) (internal quotation marks omitted) (alterations in original).  "In short, Chevron decided to follow the advice of 'Dick the Butcher' in Henry The Sixth, part 2: 'The first thing we do, let's kill all the lawyers.'" (Counterclaims, ¶ 57).

    Chevron's campaign -- led by Randy M. Mastro of Gibson, Dunn

& Crutcher -- reached a wide-ranging audience, including U.S. and Ecuadorian courts, U.S. and Ecuadorian government officials, international tribunals, supporters and potential supporters of the LAPs, the media, and the general public. (Counterclaims, ¶¶ 58, 60).  The campaign's goals were to (1) damage Mr. Donziger's credibility and reputation; (2) disrupt his professional relationship with the LAPs and other supporters of the Lago Agrio Litigation; (3) sway public opinion and the opinion of the supporters and potential supporters of the LAPs; (4) gain the support of U.S. government officials in connection with Chevron's efforts to interfere with the Lago Agrio Litigation; (5) gain favorable rulings from U.S. and Ecuadorian courts against Mr. Donziger and other representatives and supporters of the LAPs; (6) taint the Lago Agrio judgment in the eyes of enforcement courts worldwide; (7) persuade U.S. and Ecuadorian officials to investigate Mr. Donziger; and (8) coerce Mr. Donziger as well as other lawyers into abandoning the Lago Agrio Litigation out of fear for their reputations and careers. (Counterclaims, ¶ 59).

    The counterclaims include six examples of Chevron's alleged false and misleading representations regarding the Lago Agrio Litigation, Mr. Donziger, and others representing the LAPs.

    First, Chevron made false and misleading representations regarding the purported bias and corruption of Judge Nuñez -- the

judge presiding over the Lago Agrio Litigation in August 2009 -- in clandestine video recordings released on YouTube on August 31, 2009. (Counterclaims, ¶¶ 62-63). Chevron claimed that the videos were recorded by an Ecuadorian citizen, Diego Borja, and an American, Wayne D. Hansen, and that it did not initiate or participate in the videos' production. (Counterclaims, ¶¶ 64-65). It also claimed that the videos depicted a premature disclosure of the verdict in the Lago Agrio Litigation and a $3 million bribery scheme. (Counterclaims, ¶¶ 63, 76). However, Chevron was intricately tied to Mr. Borja and Mr. Hansen and to the production of the recordings. (Counterclaims, ¶¶ 85-114). Further, Chevron mischaracterized the videos because they show no judicial impropriety. (Counterclaims, ¶¶ 76-82). As a result of the videos and Chevron's subsequent public campaign regarding the videos, Judge Nuñez recused himself from the Lago Agrio Litigation. (Counterclaims, ¶¶ 71-72).

Second, Chevron represented to U.S. courts and to the general public in its press releases and other public statements that there is no legitimate evidence to support the LAPs' environmental claims and that LAP's lawyers' claims to the contrary are false. (Counterclaims, ¶¶ 115-121). In doing so, Chevron omitted material information about the scientific evidence of environmental pollution and about its own improper environmental sampling and

analytic methods.  (Counterclaims, ¶¶ 122-145).

Third, Chevron falsely represented that the LAPs and their legal and technical experts "know" or "admit" that insufficient scientific evidence was produced in the Lago Agrio Litigation. (Counterclaims, ¶ 146).   Chevron mischaracterized or omitted material information regarding the testimony of LAPs' experts, Dr. Ann Maest and Doug Beltman, and one of LAPs' lawyers, Pablo Fajardo.  (Counterclaims, ¶¶ 146-153).

Fourth, Chevron made false and misleading statements regarding Mr. Donziger's <u>ex</u> <u>parte</u> contacts with a court-appointed damages expert, Richard Cabrera, and the Lago Agrio Court.  (Counterclaims, ¶¶ 154-177).   The Donziger Defendants call these alleged misrepresentations a "centerpiece of [Chevron's] campaign" to undermine the Lago Agrio Litigation and to characterize Mr. Donziger and other LAPs' lawyers as criminals.  (Counterclaims, ¶ 154).   Chevron represented that the LAP's legal team's meetings with Mr. Cabrera were improper, that the submission of materials for his review and possible adoption was "ghostwriting," and that payments made to him were "bribes."  (Counterclaims, ¶ 154). These statements were made in its press releases, on its public relations website, and to U.S. courts, and included statements from Mr. Pate and Mr. Mastro.  (Counterclaims, ¶ 155-161).  Chevron has used these representations as "a core argument in multiple legal

proceedings against [Mr.] Donziger," leading U.S. courts, including this Court, to believe that it was "improper for a party to meet _ex parte_ with a 'court-appointed' expert and assist in the drafting of his technical work." (Counterclaims, ¶¶ 160-161).  In making these representations, Chevron failed to disclose material information, including the facts that (1) all court-appointed experts in the Lago Agrio Litigation were paid by whichever party requested the appointment of an expert for that issue and that Chevron itself paid experts appointed at its request (Counterclaims, ¶ 166); (2) Chevron's own technical teams had _ex parte_ meetings and collaborated with other court-appointed experts (Counterclaims, ¶ 167); and (3) there was no provision of Ecuadorian law that prohibited parties from having _ex parte_ contacts with court-appointed experts (Counterclaims,  ¶ 170).

Fifth, Chevron made false and misleading statements regarding the appearance of Mr. Donziger and other representatives of the LAPs in outtakes from the film _Crude_.[2]  (Counterclaims ¶¶ 178-190).

_____

[2] _Crude_ is a documentary released in 2009, which, according to its own press package, "captures the evidentiary phase of the Lago Agrio trial, including field inspections and the appointment of independent expert Richard Cabrera to assess the region." _In re Application of Chevron Corp._, 709 F. Supp. 2d at 288-89 (internal quotation marks omitted).  The film also depicts the environmental damage allegedly caused by TexPet, the corporate predecessor to Chevron, and interviews with Ecuadorians dying of diseases allegedly caused by oil spills.  _Id._ at 289.  The Court ordered the outtakes from the documentary to be produced to Chevron.  _Id._ at

Chevron and its agents cited in misleading ways to excerpts of the outtakes, often omitting critical sentences or phrases immediately adjacent to the excerpts. (Counterclaims, ¶ 178).

Finally, Chevron made false and misleading statements regarding Mr. Donziger's involvement in "ghostwriting" the Ecuadorian judgment. (Counterclaims, ¶ 191). In statements on its website, in a letter to Ecuador's Prosecutor General, and in a statement by Mr. Pate, Chevron falsely claims that the LAPs' lawyers ghostwrote the judgment. (Counterclaims, ¶¶ 193-196).

Based on the allegations described above, the counterclaims consist of two causes of action.

First, the Donziger Defendants assert that Chevron "knowingly misrepresented, omitted, and/or concealed material facts in their pleadings and representations" before a number of courts, government agencies, the media, and the public at large. (Counterclaims, ¶ 200). As a result of Chevron's fraud, Mr. Donziger has suffered numerous injuries, including "significant damage to [his] reputation and goodwill, impairment of his professional relationship with the Ecuadorian Plaintiffs, and attorneys' fees and costs [he] has incurred defending against Chevron's misrepresentations and the baseless, improperly motivated

---

299.

litigation that Chevron has pursued against [him]."
(Counterclaims, ¶ 205).

Second, Mr. Donziger alleges that by "wrongful use and
infliction of fear, Chevron has sought to obtain property
interests" of Mr. Donziger and the LAPs, including their interest
in Chevron's full satisfaction of the Judgment, by seeking to
coerce Mr. Donziger and the LAPs to abandon or settle the Lago
Agrio Litigation on terms favorable to Chevron." (Counterclaims,
¶ 212).

<u>Discussion</u>

A.   <u>Legal Standard</u>

To survive a motion to dismiss under Rule 12(b)(6), "a
complaint must contain sufficient factual matter . . . to 'state a
claim to relief that is plausible on its face.'" <u>Ashcroft v.
Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v.
Twombly</u>, 550 U.S. 544, 570 (2007)).  While a complaint need not
make "'detailed factual allegations,'" it must contain more than
mere "'labels and conclusions' or []'formulaic recitation[s] of the
elements of a cause of action.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at
555).  A complaint with "'naked assertion[s]' devoid of 'further
factual enhancement'" is insufficient. <u>Id.</u> (alteration in
original) (quoting <u>Twombly</u>, 550 U.S. at 557).  Further, where the
complaint's factual allegations permit the court to infer only a

possible, but not a plausible, claim for relief, it fails to meet the minimum standard.  <u>Id.</u> at 679.  In ruling on a motion to dismiss, the court's task "'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  <u>GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd.</u>, 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting <u>Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York</u>, 375 F.3d 168, 176 (2d Cir. 2004)).

In assessing a motion to dismiss under Rule 12(b)(6), a court must take as true the allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007) (per curiam); <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 110-11 (2d Cir. 2010).  However, this is inapplicable to legal conclusion and a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555).

A court does not accept as true on a motion to dismiss "conclusions of law or unwarranted deductions of fact."  <u>First Nationwide Bank v. Gelt Funding Corp.</u>, 27 F.3d 763, 771 (2d Cir. 1994) (internal quotation marks omitted).  "This principle applies with even greater force in a fraud case governed by the more

stringent pleading requirements of [Rule 9(b) of the Federal Rules of Civil Procedure]". <u>Id.</u> Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

"[I]n order to comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" <u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273, 290 (2d Cir. 2006) (quoting <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1175 (2d Cir. 1993)). While "the fraud alleged must be stated with particularity . . . the requisite intent of the alleged [perpetrator] of the fraud need not be alleged with great specificity." <u>Chill v. General Electric Co.</u>, 101 F.3d 263, 267 (2d Cir. 1996) (internal citation omitted); Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Nevertheless, a plaintiff "must allege facts that give rise to a strong inference of fraudulent intent." <u>Lerner</u>, 459 F.3d at 290 (internal quotation marks omitted).

    B.   <u>Attempted Civil Extortion and Duress</u>

    Mr. Donziger alleges that Chevron has attacked him "based on false and intentionally misleading statements," "physically

12

threatened, harassed, and intimidated [him]," and "acted with
intent to induce fear in [him]," all "to obtain property interests
of [him] and the [LAPs]." (Counterclaims, ¶¶ 208, 210-212).
Chevron argues that Mr. Donziger's civil extortion and duress
claims are not recognized under New York law, which should apply in
this case because all of the alleged injuries and a substantial
amount of the alleged wrongdoing occurred in New York. (Plaintiff
Chevron Corporation's Memorandum of Law in Support of Its Motion to
Dismiss Defendants Steven Donziger, the Law Offices of Steven R.
Donziger, and Donziger & Associates, PLLC's Counterclaims ("Chevron
Memo.") at 7). Chevron contends in the alternative that even under
California law, Mr. Donziger's extortion and duress claims fail.
(Chevron Memo. at 13). Mr. Donziger argues that California law
should apply because California has the most significant interest
in regulating Chevron's conduct emanating from its California
headquarters, and that California law recognizes his civil
extortion and duress claims. (Memorandum of Law in Opposition to
Plaintiff Chevron Corporation's Motion to Dismiss Defendants Steven
Donziger, the Law Offices of Steven R. Donziger, and Donziger &
Associates, PLLC's Counterclaims ("Donziger Memo.") at 9-14).

     1.   <u>Choice of Law</u>

     In a diversity action, as here, a federal court must apply the
choice of law rules of the forum state, which in this case is New

York. <u>GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.</u>, 449 F.3d 377, 382 (2d Cir. 2006) (citing <u>Klaxon Co. v. Stentor Electric Manufacturing Co.</u>, 313 U.S. 487 (1941)); <u>Chrysler Capital Realty, Inc. v. Grella</u>, 942 F.2d 160, 162 (2d Cir. 1991).

A court in New York first asks "whether there is an actual conflict of laws" because if "there is no actual conflict[,] [] New York will dispense with a choice of law analysis." <u>Curley v. AMR Corp.</u>, 153 F.3d 5, 12 (2d Cir. 1998); <u>see also</u> <u>International Business Machines Corp. v. Liberty Mutual Insurance Co.</u>, 363 F.3d 137, 143 (2d Cir. 2004) (New York choice of law doctrine provides that court is free to bypass choice of law analysis and apply New York law in absence of material conflict). However, if there is a substantive conflict between or among the laws of each jurisdiction, a conflict of laws analysis is necessary. <u>Curley</u>, 153 F.3d at 12. Laws are in conflict "[w]here the applicable law from each jurisdiction provides different substantive rules." <u>Id.</u> A "material conflict" is a conflict that has "a significant possible effect" on the outcome of the case. <u>Simon v. Phillip Morris Inc.</u>, 124 F. Supp. 2d 46, 71 (E.D.N.Y. 2000).

Here, the Donziger Defendants plead a cause of action for civil extortion or duress. Mr. Donziger alleges only, through an "attempted extortion," that Chevron has "sought to obtain" his "property interest" in the Judgment. (Counterclaims, ¶¶ 212-213).

14

Thus, his cause of action would properly be characterized as attempted civil extortion or attempted duress. Chevron contends that neither New York nor California law recognizes a cause of action for attempted civil extortion or attempted duress. (Chevron Memo. at 7).

There is no dispute that New York does not recognize a cause of action for either claim. See Jenkins v. Easton, No. 08 CV 713, 2009 WL 811592, at *7 (E.D.N.Y. March 27, 2009) (finding it unlikely New York recognizes duress as tort); Weiss v. La Suisse, 69 F. Supp. 2d 449, 462 (S.D.N.Y. 1999) (holding, under New York law, that duress is defense, not tort cause of action); Minnelli v. Soumaya, 41 A.D.3d 388, 389, 839 N.Y.S.2d 727, 827 (1st Dep't 2007) (finding no private right of action for civil extortion in New York). Under California law, duress only provides for restitution of wrongfully obtained property, and there is no such wrongfully obtained property here. See Platino Records, Inc. v. Univision Music, LLC, No. B212336, 2010 WL 1840216, at *7 (Cal Ct. App. 2d Dist. May 10, 2010) (holding that plaintiff cannot seek restitution under doctrine of duress because it did not pay defendant anything). Further, while California recognizes the tort of civil extortion, its intermediate appellate courts have held that no cause of action exists for attempted civil extortion. See, e.g., Furhman v. California Satellite Systems, 179 Cal. App. 3d 408, 426,

15

231 Cal. Rptr. 113 (Cal. Ct. App. 3d Dist. 1986), <u>disapproved on other grounds by</u> <u>Silberg v. Anderson</u>, 50 Cal. 3d 205, 212-13, 244 Cal. Rptr. 638, 642 (1990).

However, federal district courts in California sitting in diversity have found that there is a private right of action for a claim for attempted extortion.  <u>See, e.g.</u>, <u>Monex Deposit Co. v. Gilliam</u>, 666 F. Supp. 2d 1135 (C.D. Cal. 2009); <u>TaiMed Biologics, Inc. v. Numoda Corp.</u>, No. C 10-03260, 2011 WL 1630041 (N.D. Cal. April 29, 2011).  In <u>Monex</u> and <u>TaiMed Biologics</u>, the district courts declined to dismiss the civil extortion claim even though, in each case, the plaintiff "never paid any money or transferred any property in response to [the] [d]efendants' threats."  <u>Monex</u>, 666 F. Supp. 2d at 1136; <u>accord TaiMed Biologics</u>, 2011 WL 1630041, at *5.  In both instances, the courts held that a claim for attempted extortion would further the legislative purpose set forth in California Penal Code §§ 523 and 524, which prohibit "extortion notwithstanding that the defendant ultimately obtained no money or property by means of his extortionate threats."  <u>Monex</u>, 666 F. Supp. 2d at 1137; <u>accord TaiMed Biologics</u>, 2011 WL 1630041, at *5.

Therefore, it is at least arguable that California allows a cause of action for attempted civil extortion, thus creating a conflict that is likely to have "a significant possible effect" on the outcome of the case.  Accordingly, it is appropriate to proceed

16

with a conflict analysis.

    2.   Interest Analysis

New York has adopted an "interest-analysis" for conflicts. See Babcock v. Johnson, 12 N.Y.2d 473, 240 N.Y.S.2d 743 (1963). The hallmark of the interest analysis is that "[j]ustice, fairness, and the best practical result, may best be achieved by giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation." Id. at 481, 240 N.Y.S.2d at 749 (internal citation and quotation marks omitted); see also Schultz v. Boy Scouts of America, 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 95 (1985) ("[T]he law of the jurisdiction having the greatest interest in the litigation will be applied and . . . the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." (alterations in original)).

New York courts have developed several general guiding principles for conducting the interest analysis. "For tort actions, the jurisdiction with the greatest interest is generally the jurisdiction in which the loss occurred -- or where the plaintiff is located." Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP, 612 F. Supp. 2d 267, 283-84 (S.D.N.Y. 2009).

17

"However, where the loss was suffered is not conclusive and does not trump a full interest analysis." Id. at 284; see also Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A., 731 F.2d 112, 121 (2d Cir. 1984) (applying New York law because New York "has the superior interest" in case); Amusement Industry, Inc. v. Stern, 693 F. Supp. 2d 327, 340 (S.D.N.Y. 2010) (location of loss does not override full interest analysis where there is another location with greater interest in having its law applied).

In addition, New York courts distinguish "between rules regulating conduct and rules governing loss allocation." AroChem International, Inc. v. Buirkle, 968 F.2d 266, 270 (2d Cir. 1992); see also Cooney v. Osgood Machinery, Inc., 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 922 (1993). Where, as here, the laws in conflict are conduct-regulating, the jurisdiction where the tort occurred will have predominant concern, "because of its interest in affecting the conduct" within its borders and because "of a reliance interest on the part of actors whose conduct is at issue." AroChem International, Inc., 968 F.2d at 270; Thomas H. Lee, 612 F. Supp. 2d at 284 (for conflicts involving conduct-regulating rules, "the site of the tort, not the place of the loss, governs"). Further, where the alleged misconduct has the "national and worldwide scope," the general principles outlined above -- usually applied to more limited and localized disputes -- may be less useful.

Bergeron v. Phillip Morris, Inc., 100 F. Supp. 2d 164, 170 (E.D.N.Y. 2000).

Applying this guidance, a review of the Donziger Defendnats' Counterclaims establishes that New York has the "most significant interest in, or relationship to, the dispute." White Plains Coat & Apron Co. v. Cintas Corp., 460 F.3d 281, 284 (2d Cir. 2006) (internal quotation marks omitted).

First, virtually all of Mr. Donziger's alleged injuries have occurred in New York, and not in California. He is a New York resident, whose principal place of business is New York, and is a member of only the New York bar. (Counterclaims, ¶¶ 8-10). He claims that Chevron has subjected him to "harassing and economically ruinous litigation," "deplete[d his] assets," harmed his "right to pursue his lawful business," "disrupted[ed his] professional relationship," and "trump[ed] up baseless criminal investigations." (Counterclaims, ¶ 211). His assets, business, and professional standing are all centered in New York, and Chevron has sued Mr. Donziger only in New York. Likewise, Mr. Donziger has not alleged that he or his family was harassed in California. Indeed, he has not alleged that he has suffered any harm in that state.

Second, New York is the site of a substantial amount of the alleged wrongdoing by Chevron. Mr. Donziger asserts two types of

conduct on the part of Chevron: (1) false statements and (2) harassing conduct. (Counterclaims, ¶¶ 209-210). The majority of the challenged statements made through Chevron's press releases and its website were reports of Chevron's findings through its litigation in this Court, led by Chevron's New York-based lawyer, Mr. Mastro. (Counterclaims, ¶¶ 116-120, 155-159). In addition, as discussed, there is no allegation of any harassment occurring in California.

Mr. Donziger contends that neither the place of loss nor the domicile of the victim is a dispositive factor in the interest analysis, and asserts that the majority of the liability-creating conduct occurred in California. (Donziger Memo. at 11). Mr. Donziger presumes that Chevron's campaign must have emanated from its headquarters in that state. (Donziger Memo. at 9; Counterclaims, ¶¶ 5-6, 11, 55-56). However, while acknowledging that numerous statements were published in New York, especially in connection with litigation in this Court, he does not identify any statement that was drafted, spoken, or published in California.

Therefore, where the vast majority of the injuries were suffered in New York, and at least a substantial portion of the liability-creating conduct occurred here, New York has the most significant interest. See Schultz, 65 N.Y.2d at 201-02, 491 N.Y.S.2d at 98 (applying law of state where center of claims

occurred, not law of state which had "only isolated and infrequent contacts," thus meeting parties' reasonable expectations); see also White Plains Coat, 460 F.3d at 285 (laws of jurisdiction where vast majority of conduct supporting claim occurred and damages suffered apply).

Accordingly, because New York law applies and New York does not recognize claims for attempted civil extortion or duress, I recommend that these claims be dismissed.

C.   Fraud

New York law requires five elements to establish a common law fraud claim: (1) a material misrepresentation (2) made with knowledge of its falsity and (3) intent to defraud (4) resulting in reasonable reliance on the representation and (5) resulting damage to the plaintiff.  See Crigger v. Fahnestock and Co., 443 F.3d 230, 234 (2d Cir. 2006); Eurycleia Partners, LP v. Seward & Kissel, LLP, 12 N.Y.3d 553, 559, 883 N.Y.S.2d 147, 150 (2009).  Chevron claims that Mr. Donziger fails to plead that Chevron (1) caused him cognizable injury, (2) deceived him, or anyone else, to his detriment, and (3) made material misrepresentations or actionable omissions of material facts.  (Chevron Memo. at 7-10).

1.   Cognizable Injury

"New York law awards only 'out-of-pocket' expenses in fraud cases, entitling plaintiffs to damages solely for their actual

21

pecuniary losses." Kregos v. Associate Press, 3 F.3d 656, 665 (2d Cir. 1993). Plaintiffs are limited to recover only "what they lost" and not "what they might have gained" absent the fraud. Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 80 (1996). Those pecuniary losses "must be the direct, immediate, and proximate result of the misrepresentation," and "independent of other causes." Kregos, 3 F.3d at 685.[3] Mr. Donziger alleges that he has (1) suffered damage to his reputation and professional standing, and (2) incurred substantial legal fees and costs to defend himself.

First, Mr. Donziger's alleges "reputational harm" and "impairment of his professional relationship with the [LAPs]." (Counterclaims, ¶ 205). However, "[d]amages for injury to a

---

[3] Mr. Donziger cannot allege injury by relying on potential depreciation to the value of the Judgment caused by the alleged misstatements. New York has established a framework for determining whether an attorney has a legally protective economic interest in a judgment, N.Y. Jud. Law § 475, and Judge Kaplan has already held that Mr. Donziger cannot meet the statutory requirements. Chevron Corp. v. Donziger, No. 11 Civ. 691, 2011 WL 2150450, at *3 (S.D.N.Y. May 31, 2011). Therefore, Chevron's alleged misrepresentations undermining the Judgment are not relevant to determining Mr. Donziger's injuries. These alleged misrepresentations relate to: (1) the videos recordings of Judge Nuñez's alleged corruption, (2) the scientific evidence in the Lago Agrio Litigation (3) scientific experts and lawyers of the LAPs, (4) the ex parte contacts with court officials by the representatives of the LAPs other than Mr. Donziger, and (5) quotations from Crude from the representatives of the LAPs other than Mr. Donziger.

plaintiff's business reputation or lost profits that would have been realized but for the fraud are generally not recoverable." Spithogianis v. Haj-Darwish, No. 07 Civ. 4609, 2008 WL 82188, at *7 (S.D.N.Y. Jan. 27, 2008).  While courts have allowed claims based on injury to reputation and goodwill to go forward, such a decision "often hinge[s] on a determination of the extent to which the damages alleged in a particular case would be undeterminable and speculative." Kwon v. Yun, No. 05 Civ. 1142, 2006 WL 416375, at *11-12 (S.D.N.Y. Feb. 21, 2006) (internal quotation marks omitted); see also Stewart v. Jackson & Nash, 976 F.2d 86, 88-90 (2d Cir. 1992) (permitting fraudulent inducement claim to proceed where plaintiff claimed injuries to professional opportunity, professional reputation, and career growth and potential); Hyman v. International Business Machines Corp., No. 98 Civ. 1371, 2000 WL 1538161, at *4 (S.D.N.Y. Oct. 17, 2000) (permitting fraud claim in employment context to proceed and stating that damages could be measured based on how long plaintiffs would have maintained prior at-will employment).

Here, Mr. Donziger has provided no basis for how the damages to his reputation and professional standing could be determined. He has not alleged any lost opportunities or other damages he suffered as a result of the alleged harm to his reputation. Further, he has alleged no injury to his professional standing

23

apart from the damages to his interest in the Lago Agrio Litigation, which the Court has already found was not a cognizable injury. See Chevron Corp., 2011 WL 2150450, at *3. When, as here, potential for recovery is remote and merely speculative, dismissal is warranted. See, e.g., Lehman v. Dow Jones & Co., 783 F.2d 285, 296 (2d Cir. 1986) (speculative claim such as loss of "finder's fee" not recoverable in fraud); Gouldsbury v. Dan's Supreme Supermarket, Inc., 154 A.D.2d 509, 512, 546 N.Y.S.2d 379, 381-82 (2d Dep't 1989) (damages from potential court claim too remote to be recoverable in fraud action). Therefore, to the extent Mr. Donziger's claims are based on the alleged harm to his reputation, they should be dismissed.

Second, Mr. Donziger alleges that his expenditure of legal fees and costs arose from Chevron's alleged misrepresentations about his relationship with the court-appointed expert, Richard Cabrera. (Counterclaims, ¶¶ 160, 205) ("Chevron has used its false and misleading representations regarding Cabrera as a core argument in multiple legal proceedings against Donziger."). He claims that he has incurred legal fees in a Section 1782 discovery proceeding Chevron initiated against him and in this action. (Counterclaims, ¶ 160).

Chevron does not contend that the legal fees and costs are not cognizable fraud damages; rather, it contends that Mr. Donziger

24

fails to allege facts showing that such fees and costs were the "direct, immediate, and proximate result of [Chevron's] misrepresentation." (Chevron Memo. at 20 (quoting <u>Kregos</u>, 3 F.3d at 665)). However, Mr. Donziger claims that Chevron's misrepresentations form the basis of its litigation against him (Counterclaims, ¶¶ 73-74, 205), and as discussed below, courts have relied on such statements to Mr. Donziger's detriment. In connection with litigation in this Court, and in particular, in the Section 1782 discovery proceedings, he has incurred substantial legal fees and costs. Thus, he adequately pleads that he has suffered a cognizable injury with respect to his legal fees.

   2. <u>Reasonable Reliance</u>

  Mr. Donziger does not allege that he relied on Chevron's alleged false representations to its detriment. Rather, he argues that those misrepresentations were relied on by the Lago Agrio Court, U.S. courts, U.S. state and federal government agencies and officials, Ecuadorian government officials, the media, and potential supporters of the LAPs. (Counterclaims, ¶ 204). Because Mr. Donziger's cognizable injury consists of his legal fees in defending Section 1782 discovery proceedings and the instant litigation, it is the reliance by this Court that is relevant.

  The issue of reliance by third parties as a predicate to fraud claims was resolved in <u>Chevron Corp.</u>, 871 F. Supp. 2d at 256-57.

Chevron had alleged that the Donziger Defendants had made misrepresentations to various third parties, including U.S. courts, which relied on those misrepresentations to cause harm to Chevron. Id. at 254. While noting contrary decisions by the Second Circuit, Judge Kaplan concluded that decisions by the New York Court of Appeals -- albeit from more than a century ago -- allowing recovery for common law fraud based on third party reliance remain authoritative. Id. at 257. Thus, Mr. Donziger's allegations based on this Court's reliance are actionable.

To successfully plead a fraud claim, Mr. Donziger must also allege that the reliance on the misrepresentation or material omission was justifiable. Lama Holding Co., 88 N.Y.2d at 421, 646 N.Y.S.2d at 80. He fails to satisfy this requirement.

Here, Mr. Donziger claims that Chevron failed to disclose to this Court information that would prove that the LAPs' lawyers' interactions with Mr. Cabrera were not improper, that they did not "ghostwrite" his report, and that the payments they made to him were not bribes.[4] (Counterclaims, ¶¶ 166-171). For example,

---

[4] Many of Mr. Donziger's allegations of misrepresentation concern representations unrelated to this action, such as evidence pertaining to the YouTube videos regarding Judge Nuñez (Counterclaims, ¶¶ 83-114), evidence of contamination in the Lago Agrio Litigation (Counterclaims, ¶¶ 122-145), and Chevron's own ex parte contacts with the Lago Agrio Court (Counterclaims, ¶¶ 171-177). These allegations did not cause Mr. Donziger to incur legal fees and costs related to defending the § 1782 action, and therefore, I need not consider them.

Chevron allegedly did not "disclose that all court-appointed experts in the Lago Agrio Litigation were paid by whichever party requested the appointment of an expert for that issue, and that Chevron itself paid those . . . experts who were appointed at its request." (Counterclaims, ¶ 166). Similarly, Chevron allegedly failed to disclose that its own team had "ex parte meetings with, and collaborated with, other court-appointed global experts, and that such meetings were consistent with court rules and practice." (Counterclaims, ¶ 167).

However, the evidence Mr. Donziger claims disproves Chevron's statements was public information and certainly known to him. He does not claim that he did not know about the Ecuadorian legal practices allowing ex parte contacts with and payments to the court-appointed expert. And, there was no allegation here that the omitted information was within the exclusive knowledge of Chevron.

Where, as here, the allegedly omitted information was publicly available, there is no fraud. Gomez-Jimenez v. New York Law School, 36 Misc. 3d 230, 254, 943 N.Y.S.2d 834, 852 (N.Y. Sup. Ct. 2012) (dismissing fraud claim based on theory that information published in US News showed that defendants made false claims); see also Colasacco v. Robert E. Lawrence Real Estate, 68 A.D.3d 706, 708, 890 N.Y.S.2d 114, 117 (2d Dep't 2009) (reliance on alleged misrepresentation was unreasonable where "plaintiffs could easily have ascertained these facts through the use of ordinary means");

27

Urstadt Biddle Properties, Inc. v. Excelsior Realty Corp., 65
A.D.3d 1135, 1137, 885 N.Y.S.2d 510, 512 (2d Dep't 2009) (plaintiff
could not have justifiably relied on alleged misrepresentation
about real estate taxes due under lease where tax liability was in
public records).  Thus, Mr. Donziger cannot plead causation-by-
reliance on the basis of statements where the evidence of their
supposed falsity was readily available.

Furthermore, Chevron did not have a duty to disclose all
public information that would shed a negative light on its
arguments.  See Missouri Portland Cement Co. v. Cargill, Inc., 498
F.2d 851, 872 (2d Cir. 1974) ("Court should tread lightly in
imposing a duty of self-flagellation."); Tuchman v. DSC
Communications Corp., 14 F.3d 1061, 1069 (5th Cir. 1994) ("[T]he
defendants were under no duty to employ the adjectorial
characterization that the plaintiffs believe is more accurate."
(internal quotation marks omitted)).  Rather, its alleged omissions
could have been addressed "through the unimpeded adversary
process." Weldon v. U.S., No. 99-6142, 2000 WL 1134358, at *2 (2d
Cir. Aug. 9, 2000).  Mr. Donziger has had and continues to have
opportunities to contest Chevron's allegations against him in this
litigation.

Indeed, Mr. Donziger makes no claim that Chevron submitted
forged evidence to the Court or that the integrity of the judicial
system was corrupted in a way that prevented him from adequately

contesting Chevron's allegations.  See id.; cf. Hazel-Atlas Glass
Co. v. Hartford-Empire Co., 322 U.S. 238 (1944), overruled on other
grounds, Standard Oil Co. Of California v. United States, 429 U.S.
17 (1976) (fraud upon court will lie where party has submitted
false or forged documents); Oxxford Clothes XX, Inc. v. Expeditors
International of Washington, Inc., 127 F.3d 574, 578 (7th Cir.
1997) (fraud upon court will apply to "conduct that might be
thought to corrupt the judicial process itself, as where a party
bribes a judge or inserts bogus documents into the record." (cited
in Weldon, 2000 WL 1134358, at *2)).   He was given a fair
opportunity to contest Chevron's allegations, and, at least in some
instances, he declined to do so.  See Chevron Corp. v. Donziger,
886 F. Supp. 2d 235, 289 (S.D.N.Y. 2012) ("Th[e] uncontradicted
evidence demonstrates that the [Cabrera] report and subsequent
response filed in Cabrera's name were tainted by fraud.").  To the
extent that he has contested Chevron's allegations, this Court has
simply rejected his version of events.  See In re Chevron Corp.,
749 F. Supp. 2d 141, 147 & n.20 (S.D.N.Y. 2010).  Therefore, Mr.
Donziger fails to allege reasonable reliance.

### 3.   Misrepresentation

Finally, even if Mr. Donziger had successfully pled reasonable
reliance, he fails to allege "a misrepresentation or a material
omission of fact." Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d
173, 178, 919 N.Y.S.2d 465, 469 (2011) (internal quotation marks

omitted).   At most, Mr. Donziger has alleged a nonactionable interpretation of evidence on the part of Chevron.  See Missouri Portland Cement Co., 498 F.2d at 872.

Notably, this Court has already found that there is no dispute of material fact that the Donziger Defendants and the LAP's counsel have engaged in fraudulent conduct with respect to the Cabrera report.  Chevron Corp., 886 F. Supp. 2d at 289 ("[T]he decisions to terminate judicial inspections, to pursue the global assessment, and to select Cabrera as the global expert were tainted by the duress and coercion applied to him by Fajardo, Donziger, and perhaps others in ex parte meetings."); Chevron Corp. v. Donziger, 768 F. Supp. 2d 581, 636 (S.D.N.Y. 2012), rev'd on other grounds sub nom. Chevron Corp. v. Naranjo, 667 F.3d 232 (2d Cir. 2012) (finding "ample evidence of fraud in the Ecuadorian proceedings," including "a scheme in which Stratus ghost-wrote much or all of Cabrera's supposedly independent damages assessment without, as far as the record discloses, notifying the Ecuadorian court of its involvement").

The allegedly omitted information does not disprove Chevron's allegation or this Court's factual findings.  For example, Mr. Donziger faults Chevron for not disclosing that all court-appointed experts get paid by whichever party requested such an appointment. (Counterclaims, ¶ 166).  However, Chevron has not claimed the absence of such process but that the Donziger Defendants paid Mr.

Cabrera outside this process from what they called "our secret account" and promised him future consideration. (Chevron Memo. at 24). Mr. Donziger has not contested the existence of this "secret account" or denied the allegation that Mr. Cabrera was paid outside the legitimate process. Similarly, Mr. Donziger claims that Chevron failed to disclose that no Ecuadorian legal provision prohibits parties from having <u>ex parte</u> contacts with court-appointed experts. (Counterclaims, ¶ 170). However, Chevron's allegations were based on court orders precluding such contacts with Mr. Cabrera and statements by Mr. Cabrera and Mr. Fajardo denying the occurrence of such contacts. (Amended Complaint, ¶¶ 139, 187-188).

Furthermore, as discussed above, to the extent that Mr. Donziger disagreed with Chevron's characterization of evidence, that contrary view was "safely [] left for [his] riposte." <u>Missouri Portland Cement Co.</u>, 498 F.2d at 873.

Accordingly, because the Donziger Defendants fail to plead reasonable reliance or a misrepresentation of fact, I recommend that Chevron's motion to dismiss be granted as to the Donziger Defendant's fraud claims.

<u>Conclusion</u>

For the foregoing reasons, I recommend that the plaintiff's motion to dismiss (Docket no. 696) be granted and the defendants' counterclaims be dismissed. Pursuant to 28 U.S.C. § 636(b)(1) and

31

Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Lewis A. Kaplan, Room 2240, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.


Respectfully Submitted,


JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE


Dated:     New York, New York
           April 15, 2013

Copies mailed this date:

Randy M. Mastro, Esq.
Kristen L. Hendricks, Esq.
Anne Champion, Esq.
Gibson, Dunn & Crutcher, LLP
200 Park Avenue, 47th Floor
New York, New York  10166

Andrea E. Neuman, Esq.
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive
Irvine, CA  92612


32

William E. Thomson, Esq.
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA  90071

Carlos A. Zelaya, II, Esq.
F. Gerald Maples, Esq.
F. Gerald Maples, PA
365 Canal Street, Suite 2650
New Orleans, LA  70130

Julio Gomez, Esq.
Gomez LLC Attorney At Law
40 Wall Street, 28th Floor
New York, New York  10005

Larry R. Veselka, Esq.
Tyler G. Doyle, Esq.
Smyser Kaplan & Veselka, L.L.P.
Bank of America Building
700 Louisiana, Suite 2300
Houston, TX  77002