UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

           Plaintiff,

   v.                                11 Civ. 0691 (LAK)

STEVEN DONZIGER, et al.,

           Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CHEVRON CORPORATION'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO RECONSIDER THE COURT'S MARCH 15, 2013 ORDER REGARDING CHEVRON'S SUBPOENA TO PATTON BOGGS, DKT. 905**

## TABLE OF CONTENTS

Page

BACKGROUND ................................................................................................................... 3

LEGAL STANDARD............................................................................................................ 6

ARGUMENT ......................................................................................................................... 7

    I.    Defendants Fail to Meet the Standard for Reconsideration. ...........................................7

        A.    Defendants Identify No Evidence that the Court Overlooked. ...............................7

        B.    Defendants' Purported "Errors" Are Unsupported and Immaterial.........................8

        C.    Defendants Do Not Argue, Let Alone Establish, "Manifest Injustice" In The Court's Considering The Full Record Of Defendants' Fraud. .......................12

    II.    If Anything, the Record Supports Expanding the Crime-Fraud Categories. ...................15

CONCLUSION................................................................................................................... 16

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*,
   731 F.2d 1032 (2d Cir. 1984) ................................................................................... 2, 13, 15

*In re Health Mgmt. Sys. Inc. Secs. Litig.*,
   113 F. Supp. 2d 613 (S.D.N.Y. 2000) ................................................................................... 6

*In re Rezulin Prods. Liab. Litig.*,
   224 F.R.D. 346 (S.D.N.Y. 2004) ........................................................................................... 6

*RST (2005) Inc. v. Research in Motion Ltd.*,
   597 F. Supp. 2d 362 (S.D.N.Y. 2009) ........................................................... 6, 7, 8, 10, 12, 15

*United States v. Billini*,
   No 99 CR 156 (JGK), 2006 WL 3457834 (S.D.N.Y. Nov. 22, 2006) ................................... 6

*United States v. Jacobs*,
   117 F.3d 82 (2d Cir. 1997) .................................................................................................... 4

*United States v. McDonald*,
   No. 01-CR-1168JSWDW, 2002 WL 31956106 (E.D.N.Y. May 9, 2002) .......................... 10

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ........ 2, 6, 7

*W.R. Grace & Co.-Conn. v. Viskase Corp.*,
   No. 90 C 5383, 1991 WL 150188 (N.D. Ill. July 30, 1991) ................................................ 15

**Rules**

Fed. R. Civ. P. 56(c)(3) ................................................................................................................ 14

Local Civ. R. 6.3 ........................................................................................................................... 7

On March 15, 2013, after months of briefing, argument, and additional briefing and evidentiary submissions, this Court ruled on Chevron Corporation's ("Chevron") subpoena to third-party Patton Boggs, LLP. Dkt. 905. Among other things, the Court ordered Patton Boggs to begin producing documents that represented only "factual" work-product and to log documents protected by the attorney-client privilege or "opinion" work product. *Id.* This Court's decision does not yet resolve Patton Boggs's privilege objections and merely addresses the first of two prongs of the crime-fraud exception. Even though the order relates only to Chevron's subpoena to Patton Boggs, any alleged work-product protection belongs solely to Patton Boggs, and any supposed "burden" in producing documents is Patton Boggs's burden, Patton Boggs has not sought reconsideration. Nonetheless, Defendants Hugo Gerardo Camacho Naranjo and Javier Piguaje Payaguaje and the Donziger Defendants now ask this Court to reconsider its decision. In addition to its baseless attacks on Chevron's good faith, Defendants' motion is full of disrespectful, ad hominem attacks on the Court itself, including a charge that certain of the Court's statements "often border[] on misleading." Dkt. 959 at 4 n. 1. At bottom, however, Defendants' complaint is that there is just too much evidence and that the Court should not have considered it all. Defendants come nowhere near meeting the demanding standard for reconsideration.

First, Defendants do not argue—let alone establish—that this Court overlooked controlling decisions or factual matters that were put before the Court. Nor can Defendants point to an intervening change in the law. While Defendants discuss certain supposed factual "errors" in the Court's ruling, these are not errors at all, and in any event do not warrant reconsideration because they are at minor details that do not undermine the Court's reasoning or conclusions.

Second, Defendants argue (without any case law support) that this Court should have considered the subpoena in a vacuum, ignoring additional evidence of Defendants' fraud that has

1

now come to light, and that considering this evidence was "procedurally improper." Dkt. 959 at 2. But in ruling that Chevron had established the first prong of the crime-fraud exception, the Court correctly determined what a "prudent person" would have a "reasonable basis to suspect" about Defendants, based on the record. *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1039 (2d Cir. 1984). There is no reason to overlook evidence already in the record when considering crime-fraud issues—particularly where, as here, Defendants have now had the opportunity to respond to this evidence. Indeed, it is Defendants' *own* fraud and other activities that are at issue, and after two years of litigation in this Court, Defendants cannot blame Chevron or the Court for their inability to produce evidence or put forth a viable argument casting doubt on Chevron's claims.

Finally, to the extent this Court is inclined to reconsider any aspect of its ruling or otherwise consider additional evidence, the Court should expand the scope of its crime-fraud rulings to include evidence submitted with Chevron's reply brief in support of its motion for summary judgment. Furthermore, Chevron anticipates being able to put before the Court in the next few days additional new evidence going to the "cleansing expert" and other categories in Chevron's subpoena that bears directly on Patton Boggs's direct role in furthering a crime or fraud.[1]

Defendants thus fail to meet the standard for reconsideration, and the Court should therefore deny their motion. In the alternative, the Court should consider additional evidence of Defendants' fraud and expand Patton Boggs's production accordingly.

---

[1] Consequently, to the extent the Court is inclined to consider additional evidence, Chevron requests relief from Local Civil Rule 6.3 to submit new evidence that has developed since the Court's earlier ruling and which will show Patton Boggs's direct role in "cleansing expert" and other fraud. *See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (noting availability of new evidence is a proper basis for reconsideration).

**BACKGROUND**

Patton Boggs, as counsel to the LAPs, has "participated heavily" in Defendants' extortionate scheme since February 2010 and played a material role in, among other things, preventing Chevron from obtaining discovery in Section 1782 proceedings, recruiting and orchestrating the work of the so-called "cleansing experts," and drafting the LAPs' final "alegato" (closing briefing in the Lago Agrio litigation). Dkt. 905 at 29-30.

Chevron served a subpoena on Patton Boggs on June 15, 2012. Patton Boggs requested a three-week extension of the deadline to respond and an extension of the deadline to submit a privilege log until "the conclusion of a production." Dkt. 493 at 3. This Court granted Patton Boggs's requested extension with respect to the privilege log. Dkt. 515.

On July 20, 2012, Patton Boggs moved to quash Chevron's subpoena. Dkts. 522-529, 532. Chevron opposed the motion on the basis of, among other things, the crime-fraud exception to the attorney-client privilege and work-product protection. Dkt. 541, 546-549. On August 24, 2012, this Court denied Patton Boggs's motion to quash, finding it "impossible on the basis of the record before the Court to conclude that compliance with the appropriate specifications of the subpoena would be unduly burdensome." Dkt. 571 at 7. The order was without prejudice to Patton Boggs's privilege and burden objections, and Chevron's invocation of the crime-fraud exception, which the Court said it would consider in the context of ruling on objections to the subpoena. *Id.*

On September 7, 2012, Patton Boggs served 186 pages of additional objections. Dkt. 579. On September 25 and 27, 2012, this Court held hearings regarding Patton Boggs's objections and limited the scope of Chevron's subpoena in an effort to reduce the alleged burden on Patton Boggs. *See* Dkt. 621. The Court also requested supplemental briefing from Patton Boggs on the alleged burden of complying with the modified subpoena, and from Chevron on the extent

3

to which the modified subpoena "seek[s] materials as to which I either already have found or should find that the first of the two prongs of the crime-fraud exception is satisfied." *See* Dkt. 644, 657 at 6; *see also* Dkt. 571 at 4-5.[2]

Chevron and Patton Boggs filed their respective briefing and accompanying materials on December 12 and 13, 2012. *See* Dkts. 657, 660, 662, 664, 665. The Court then granted Patton Boggs's request for additional time to respond to Chevron's crime-fraud briefing. Dkt. 671. At that point, Defendants, who had not yet participated in the crime-fraud briefing, moved by order to show cause to stay the Court's consideration of any crime-fraud issues, *see* Dkt. 677, which the Court denied after granting both Defendants and Patton Boggs additional time to respond. Dkt. 681. Defendants and Patton Boggs's filed their supplemental briefs and supporting materials on January 7, 2013. *See* Dkts. 712, 715-18.

On March 15, 2013, this Court issued a detailed order requiring Patton Boggs to produce a limited number of documents. Dkt. 905 (the "Patton Boggs Subpoena Order"). The Court found that Chevron had overcome Patton's Boggs's "fact work product" protection because of a substantial need for the documents and undue hardship in obtaining them through other sources. *See id.* at 59, 72. The Court also described Patton Boggs's role in numerous aspects Defendants' scheme. *See id*. at 29-30 (finding that Patton Boggs is likely "an important and, in many respects, unique source of evidence" in light of its role in the Lago Agrio litigation and related U.S. litigation). As a result, the Court ruled that Patton Boggs likely had relevant evidence related to Defendants' fraud and that Chevron had a substantial need to obtain that discovery from Patton Boggs. *Id*. at 67-68.[3]

---

[2] Otherwise privileged communications or materials must be produced where a factual basis exists to show: (1) "probable cause to believe that a fraud or crime has been committed" and (2) "the communications in question were in furtherance of the fraud or crime." *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997).

[3] The Court found it "unnecessary to determine for present purposes whether there is probable cause to sus-

4

Turning to Patton Boggs's documents purportedly protected by attorney-client privilege or "opinion" work product, the Court held that Chevron had satisfied the first prong of the crime-fraud exception by demonstrating probable cause to believe Defendants had engaged in a crime or fraud.  Specifically, the Court concluded that Chevron had made a prima facie showing of crime-fraud with respect to documents related to (1) judicial bribery and judgment fraud in Ecuador; (2) fraud in procuring Cabrera's appointment and in ghostwriting his report; (3) obstruction of justice in connection the Stratus 1782 proceedings in the District of Colorado (the "Stratus 1782"); and (4) Calmbacher fraud.  *See id.* at 4-5.

However, the Court did not at that time order Patton Boggs to produce any documents over which it had asserted attorney-client privilege or "opinion" work product objections because the Court did not reach the second prong of the crime-fraud exception—*i.e.*, whether the communications at issue were in furtherance of the crime or fraud.  *See, e.g., id.* at 65.  Rather, the Court narrowed Chevron's subpoena to only those categories as to which the Court had found probable cause of a crime or fraud, in an effort to further minimize Patton Boggs's burden in complying with the subpoena and to "minimize any genuine work product protection and attorney-client privilege issues."  *See id*. at 5.

Despite the cautious, limited, and well-supported nature of the Patton Boggs Subpoena Order, Defendants now seek reconsideration.  Dkt. 959.  Yet Defendants have failed to identify any evidence or law overlooked by the Court that would cast doubt on the above findings—let alone demonstrate the absence of probable cause as to any of them.  Rather, they take issue with certain minor details in the Court's order that were unnecessary to the decision, and they argue that the Court improperly relied on evidence submitted in connection with Chevron's January 28,

---

pect that [Patton Boggs] or any of its personnel was a culpable or knowing participant in any alleged fraud or crime."  *Id.* at 6.

5

2013 Motion for Partial Summary Judgment (Dkt. 745) and Chevron's March 12, 2013 Motion for Sanctions (Dkt. 893).

## LEGAL STANDARD

"Reconsideration of a previous order by the court is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *RST (2005) Inc. v. Research in Motion Ltd.*, 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009) (quoting *In re Health Mgmt. Sys. Inc. Secs. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).

Local Rule 6.3 governs reconsideration of any pre-judgment order. "[R]elief is available under Local Civil Rule 6.3 only if the movant demonstrates that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion." *In re Rezulin Prods. Liab. Litig.*, 224 F.R.D. 346, 349 (S.D.N.Y. 2004) (internal quotation marks omitted). "Such a motion may not advance new facts, issues or arguments not previously presented to the court." *Id.* (internal quotation marks omitted). Nor may reconsideration "be used as a vehicle for relitigating issues already decided by the Court." *RST*, 597 F. Supp. 2d at 365 (internal quotation marks omitted). Rather, "[t]he major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *.Id* (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992)). "New evidence, for these purposes, must be evidence that could not have been found by due diligence." *United States v. Billini*, No 99 CR 156 (JGK), 2006 WL 3457834, at *1 (S.D.N.Y. Nov. 22, 2006) (internal quotation marks omitted).[4]

"Rule 6.3 is intended to ensure the finality of decisions and to prevent the practice of a losing party plugging . . . the gaps of a lost motion with additional matters." *RST*, 597 F. Supp.

---

[4] Indeed, a party may not submit new evidence in support of a Rule 6.3 motion unless that party receives leave of court. *See* Local Civ. R. 6.3 ("No affidavits shall be filed by any party unless directed by the Court.").

2d at 365 (internal quotation marks omitted). "A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent Rule 6.3 from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment." *Id.*

## ARGUMENT

**I.   Defendants Fail to Meet the Standard for Reconsideration.**

Defendants seek reconsideration of the Patton Boggs Subpoena Order despite the absence of any overlooked controlling decision of law, intervening change in the law, or new evidence that they could not have discovered earlier with reasonable diligence. *See RST*, 597 F. Supp. 2d at 365.[5] Instead, they focus on a handful of minor factual details in the Court's ruling without connecting these details to any "clear error" in the decision. *Id.* Defendants also argue (without any supporting legal authority) that the Court should have ignored "new" evidence in the record when ruling on Chevron's subpoena. Reconsideration is unwarranted.

**A.   Defendants Identify No Evidence that the Court Overlooked.**

One possible basis for reconsideration would be "the availability of new evidence" that could not have been found earlier by reasonable diligence. *Virgin Atl. Airways, Ltd.*, 956 F.2d at 1255. In the Patton Boggs Subpoena Order, the Court found probable cause to believe that Defendants, among other things, bribed an Ecuadorian judge to obtain a favorable judgment, coerced the judge to appoint Cabrera, ghostwrote the Cabrera Report and misrepresented the report as independent, obstructed justice to prevent that ghostwriting from coming to light, and forged at least two other expert reports submitted to the Ecuadorian court. *See* Dkt. 905, at 4–5. Were there any evidence to undermine these findings, such evidence should have been readily availa-

---

[5] Given that Defendants' *own* acts of fraud are at issue, there can be no "new evidence" that Defendants could not have discovered earlier.

7

ble to Defendants from the start of this litigation—after all, Defendants' *own* activities are at issue. But even now, in seeking reconsideration, Defendants can identify no such evidence. As the District of Maryland recently noted, "the failure[,] or should I say more accurately[,] the inability for the Ecuadorian Plaintiffs . . . to identify a single explanation in that record at this time [for their apparent frauds], after the passage of this much time, doesn't help" and, "leaves me with no doubt that something is going on, something is amiss there." Dkt. 850-9 at 57:3–10 (transcript of 1/25/13 hearing).

### B. Defendants' Purported "Errors" Are Unsupported and Immaterial.

Another possible ground for reconsideration could be the "need to correct a clear error." *RST*, 597 F. Supp. 2d at 365. Defendants argue that the Patton Boggs Subpoena Order contains four errors concerning: (1) the assessment of counsel's appearance during an Ecuadorian proceeding seeking a protective order, (2) the discussion of an email from a Patton Boggs attorney, (3) the description of a filing made in the Ecuadorian Court, and (4) the disinclination to determine Chevron's purported permission to complete inspections in Ecuador. Dkt. 959 at 3–4 & n.1. None of these issues presents a "clear" error, and there is no "need" to correct such minor details that do not undermine the Court's conclusion or reasoning in any way.

#### 1. Defendants Fail to Show Clear Error Regarding the "Collusive" Ecuadorian Protective Order Proceeding.

In the Patton Boggs Subpoena Order, the Court found that Chevron has a substantial need for documents because Defendants had engaged in "extraordinary efforts to raise obstacles to [their court ordered] disclosure." *See* Dkt. 905 at 50. In particular, the Court relied on Defendants' repeated refusal to produce—in either the Count 9 action (11 Civ. 3718 (LAK)) or in this case—documents within the possession, custody, or control of their attorneys and agents in Ecuador, despite Court orders compelling them to do so. *See id.* at 46–47.

8

As an example, the Court discussed Defendants' latest maneuver: a "collusive" Ecuadorian protective order issued in a suit brought by one Ecuadorian plaintiff, Octavio Ismael Cordova Huanca ("Cordova"), against his attorneys in the Lago Agrio litigation, including Pablo Fajardo, and the head of the Amazon Defense Front, Luis Yanza. *Id.* at 48; *see also* Dkt. 809 at 2 (rejecting Defendants' Rule 33.3(b) objection to interrogatories based on Defendants' "astonishing" resistance to discovery, including "a secret and collusive Ecuadorian lawsuit to obtain a court order barring their Ecuadorian agents from complying with document discovery requests, refusing to appear for depositions, and invoking frivolous privilege objections to block and delay discovery"). In referring to that Ecuadorian proceeding as "collusive," the Court relied on a number of points, chief among them was that "the ostensible defendants [Fajardo and Yanza] agreed with the ostensible plaintiff [Cordova]." Dkt. 905 at 48. In addition, the Court relied on secrecy of that proceeding, *id*. at 48 (noting it was brought "unbeknownst to the Court or Chevron"), and the inexplicable switch from third-person to first-person voice in the Ecuadorian court's written order, suggesting that the judge was not author of the opinion, *id.* at 50. Finally, the Court noted that "the only attorney appearance listed on the decision is that of Fajardo." *Id.* at 49.

Defendants take issue with this last point. They insist that Fajardo did not appear on behalf of Cordova, but, rather, Cordova was represented by a different attorney who was not listed among the putative defendants. Dkt. 959 at 4 (citing Dkt. 950 at 19–21). Yet, even assuming that to be the case, Defendants do not and cannot contest that Fajardo argued in *favor* of Cordova, the plaintiff. Fajardo, a defendant, ostensibly speaking in his own defense, is quoted in the decision as stating: "[W]e have discussed this matter and decided to hand over the information that Chevron is demanding, *with which it is obvious that the constitutional rights of the plaintiffs*

9

*and the other plaintiffs in the principal case are being violated.*" Dkt. 734-1 at 4 (emphasis added); *see also* Dkt. 865-3 Ex. 3516, at 3-4 (record of hearing); Dkt. 950 at 14 (Defendants' opposition to motion for sanctions, misleadingly omitting the text italicized above). Consequently, even assuming an attorney other than Fajardo appeared at the hearing on behalf of Cordova, this would not call into question the Court's core finding that the action was "collusive" because both "parties" were arguing in favor of the same relief—that sought by Cordova, the plaintiff.

Moreover, regardless of the accuracy of any findings concerning the "collusive" Ecuadorian protective order, Defendants cannot show that any alleged error "might reasonably be expected to alter the conclusion reached by the court." *RST*, 597 F. Supp. 2d at 365. Their "obstinance with respect to discovery" is evident from their refusal to comply with numerous court orders. *See* Dkt. 905 at 47–48. The result of this obstinacy is that Patton Boggs must produce documents—Chevron cannot obtain them elsewhere without undue hardship. *Id.* at 50. In other words, the Ecuadorian protective order, whether collusive or not, is but one example among many of Defendants' evasion of their Court-ordered discovery obligations.[6]

### 2. Defendants Fail to Show Clear Error Regarding the Fajardo Declaration.

Defendants next take issue with the Court's citation of an email drafted by Patton Boggs attorney Eric Westenberger, which the Court discussed in the context of Patton Boggs's role in

---

[6] After Defendants filed this motion, they filed the Zambrano declaration (Dkt. 974-1), which does not undermine the Court's conclusion of a reasonable basis to suspect that Defendants bribed Zambrano. The Zambrano declaration is inherently suspicious. His refusal to submit to the jurisdiction of this Court renders his assertion that the statement is issued under "penalty of perjury" a nullity. *See* Dkt. 974-1, at p. 2. Further, the declaration does not, and cannot, explain the evidence corroborating the Guerra declaration. *See* Dkt. 905 at 14 n.49. Nor does Zambrano deny that Guerra ghostwrote orders for him, a point Defendants' concede. *See* Dkt. 917, at 18-19. Defendants also do not claim to be able to produce Zambrano to testify. *See* Dkt. 982-1; *see also* Dkt. 1006 at p.1 n.1; Dkt. 1014. Consequently, even if considered, Zambrano's declaration would not demonstrate the absence of probable cause to believe that Defendants bribed him and ghostwrote the judgment, much less "clearly" do so. *See United States v. McDonald*, No. 01-CR-1168JSWDW, 2002 WL 31956106, at *5 (E.D.N.Y. May 9, 2002) ("[A] finding of probable cause is not negated by an innocent explanation which may be consistent with the facts alleged."); *see also* Dkt. 850-9, at 57:11-14 (noting existence of rebuttal evidence "does not necessarily eviscerate the existence" of probable cause to support application of crime-fraud exception).

10

the Stratus 1782 proceeding before the District of Colorado. Dkt. 959 at 4 n.1. The Court found that Patton Boggs was "heavily involved in drafting" Fajardo's declaration submitted in support of Defendants' motion for a protective order in the Stratus 1782. Dkt. 905 at 31. In describing the Fajardo declaration, this Court quoted an email from Westenberger stating an intention to "cleanse any perceived impropriety related to the Cabrera Report." *Id*. (quoting Dkt. 9 Ex. 13).

Defendants contend that Westenberger was not referring to the Fajardo Declaration filed in the Stratus 1782, but rather was referring to a different Fajardo declaration (or a "brief" that resembled a declaration) submitted to the Ecuadorian court. *See* Dkt. 959 n.1; *see also* Dkt. 400-10 at 54. In other words, according to Defendants, Westenberger was not referring to the misleading Fajardo declaration submitted in *Colorado*, but rather was referring to another document submitted to mislead the *Ecuadorian* court. As this Court found, however, this is a distinction without a difference. Defendants and Patton Boggs drafted both the Colorado and Ecuador documents to cover their tracks by omitting any mention of their improper contacts with Cabrera. *See* Dkt. 905 at 32-33, 60-61 (noting Patton Boggs "drafted the Fajardo declarations that were submitted to the Colorado and Ecuadorian courts"); *see also* Dkt. 355-28 (Ex. 1093) at 35 (Defendants acknowledging that contacts with Cabrera could "come back to haunt [them] in a big way"). And they submitted that Ecuadorian pleading in U.S. courts in order to deceive those courts about the character of their relationship with Cabrera and its permissibility under Ecuadorian law. *See* Dkt. 549 ¶ 44; Dkt. 549-4 (Ex. 2414) ¶22. Thus, Defendants fail to show clear error in the Court's conclusion that Patton Boggs was materially involved in the creation of the misleading Fajardo declaration submitted in the Stratus 1782. At best, the Westenberger email shows that this Court may have been too conservative in its findings and should also have found that Patton Boggs's role in authoring misleading submissions extended to Ecuador.

11

### 3. Defendants' Two Remaining "Errors" Are Neither Errors Nor Relevant to this Court's Order.

Defendants argue the Court erred in (i) characterizing the above-referenced Ecuadorian Fajardo declaration as a "declaration" when in fact it was a "brief," and (ii) declining to find "that Chevron was permitted to complete all of the inspections that it asked for at the outset of the judicial site inspection process." Dkt. 959 at 4 n.1. With regard to the first alleged "error," regardless of the label, the Fajardo document made material, and misleading, factual representations to the Ecuadorian court. *See* Dkt. 549-4, at 59 ("I appear before you to clarify the truth about Cabrera's work."). And the second alleged "error" reveals nothing more than Defendants' failure to persuade the Court of a fact that they find relevant; it is not a factual "error" at all.

Moreover, neither alleged "error" has any material connection to reasoning or outcome of the Patton Boggs Subpoena Order. Defendants have not satisfied their burden in seeking reconsideration.

### C. Defendants Do Not Argue, Let Alone Establish, "Manifest Injustice" In The Court's Considering The Full Record Of Defendants' Fraud.

In the absence of any intervening change in the law or clear error in the Court's reasoning, Defendants argue the Court should have ignored "new" evidence submitted in connection with Chevron's recent motion for summary judgment and motion for sanctions—evidence submitted after Defendants filed their supplemental crime-fraud briefing. *See* Dkt. 959 at 4-5. But Defendants do not and cannot show that it was a "manifest injustice" for the Court to consider the full record of Defendants' misconduct in ruling on Patton Boggs's objections to Chevron's subpoena. *See RST*, 597 F. Supp. 2d at 365.

Defendants do not cite a single case indicating that it would be preferable (let alone required) for a court to overlook evidence in the record when determining whether a moving party has made met its burden under the first prong of the crime-fraud exception. Nor would such a

12

rule make sense.  The operative question is whether Chevron has a sufficient evidentiary basis to suspect that a crime or fraud has been committed.  *See In re Grand Jury*, 731 F.2d at 1039 (crime-fraud exception does not require a finding that a crime or fraud actually was perpetrated but only that "a prudent person have a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications [in question] were in furtherance thereof.").  There would be no reason to *ignore* later-filed evidence that corroborates evidence already in the record and findings the court has already made, especially when the additional evidence concerns defendants' own wrongdoing.  *Cf.* Fed. R. Civ. P. 56(c)(3) (on summary judgment, court "may consider" all materials "in the record," not only those cited by parties).

Moreover, much of the evidence on which this Court relied was in the record well before Defendants' crime-fraud brief.  *See* Dkt. 905 at 4 n.9 (noting that the Court had already determined in 2011 that there is no genuine dispute as to much of the evidence); *id.* at 8 (relying on the factual findings in the Court's partial summary judgment order); *id.* at 20 (relying on expert analysis of judgment submitted on or prior to December 12, 2012); *id.* at 22 (same); *id.* at 24 (same); *id.* at 31 (relying on Westenberger email filed February 6, 2011); *id.* at 27 (relying on evidence submitted on or prior to August 31, 2012); *see also id.* at 22-23 (finding evidence submitted in support of Chevron's first motion for summary judgment in 2012 "warrants a finding of probable cause").  In addition, Defendants claim the Court improperly relied on "new reports from Chevron's experts" (Dkt. 959 at 3), when in fact the expert declarations cited in the Patton Boggs Subpoena Order were submitted either in connection with Chevron's *original* motion for summary judgment in 2012, *see* Dkt. 905 at 19 (discussing Chevron's experts and citing to July 31, 2012 summary judgment order), or were included in Chevron's crime-fraud briefing filed on

13

December 12, 2012, *see id.* at 21 n.78 (citing expert testimony included in docket entry 658).[7]

Even if the Court had refused to consider Chevron's "new" evidence, the Court's conclusions would still stand. The only "new" evidence is the declaration of former Ecuadorian judge Alberto Guerra (describing, among other things, the $500,000 bribe that Defendants offered to him and the Ecuadorian judge who issued the judgment against Chevron) and the corroborating evidence, including declarations, first submitted in connection with Chevron's Motion for Partial Summary Judgment on January 28, 2013. Dkt. 959 at 3; *see* Dkts. 744-55. Yet this Court made clear that other previously submitted evidence (on file well before the Guerra declaration) independently demonstrated probable cause to believe that the Defendants had bribed Zambrano. *See* Dkt. 959 at 18 ("Even *before* the Guerra affidavit was filed . . . , Chevron had presented substantial evidence of fraud in the procurement of judgment." (emphasis added)); *id.* at 18-21 (discussing "[a]dditional [e]vidence that the LAPs—[n]ot the Judge—[w]rote the [j]udgment"; citing evidence discussed in Court's original summary judgment order and in the papers on the underlying motion). Thus, the Guerra declaration was not essential to the Court's ruling.

In any event, with respect to any of the evidence submitted in support of Chevron's motion for summary judgment or for sanctions, *see* Dkts. 745, 894, including Guerra, Defendants' procedural objections are moot because Defendants have now had the opportunity to respond. Even assuming for the sake of argument that Defendants were able to create a triable issue on summary judgment (which they cannot, *see* Dkt. 1006), the standard for crime-fraud is different. Chevron's burden is lower, and the Court need not resolve doubts against Chevron as it would on summary judgment. *Cf. W.R. Grace & Co.-Conn. v. Viskase Corp.*, No. 90 C 5383, 1991 WL

---

[7] The Court also referred to the testimony of Chevron's expert, Thomas Barnett, submitted on January 7, 2013, with respect to the effect of the Court's order limiting the scope of the Patton Boggs subpoena. *See* Dkt. 905 at 45 (citing Dkt. 713 at 7-8); *see also* Dkt. 716 (Barnett affidavit). Defendants do not claim this expert's testimony was necessary to the Court's finding on Patton Boggs's burden in complying with the subpoena, particularly where the Court assumed Patton Boggs's cost estimation was accurate. *See id.* at 71.

150188, at *3 (N.D. Ill. July 30, 1991) (noting burden under crime-fraud doctrine is lower than that for summary judgment); Dkt. 905 at 22-23 (finding evidence that was insufficient to warrant summary judgment nevertheless "warrants a finding of probable cause); *id*. at 28 (noting the "standard relevant to the crime-fraud exception to the work product doctrine and the attorney client privilege is less demanding" than that relevant to summary judgment).

In short, Defendants do not and cannot point to any evidence in the record that would "reasonably be expected to alter the conclusion" that there is a "reasonable basis to suspect" that they engaged in frauds or crimes. *In re Grand Jury*, 731 F.2d at 1032; *RST*, 597 F. Supp. 2d at 365.

## II.   If Anything, the Record Supports Expanding the Crime-Fraud Categories.

To the extent the Court is inclined to reconsider its ruling or otherwise take into account new evidence that has recently entered the record, the Court should expand its crime-fraud ruling to cover the "Cleansing Fraud" and "funding" categories in Chevron's subpoena. *See* Dkt. 657 at 17-18, 21-23. In the Patton Boggs Subpoena Order, the Court declined to find probable cause "on the present record" as to fraud in the cleansing reports and it did not discuss the funding fraud. *See* Dkt. 905 at 64. Soon to be filed evidence will demonstrate, however, that the cleansing experts were part of Defendants' overall fraud—a fraud that has also been perpetrated on at least one of Defendants' funders. Therefore, to the extent the Court reconsiders the Patton Boggs Subpoena Order in light of any recently filed, or soon to be filed, evidence or arguments, Chevron respectfully requests that the Court consider any new evidence on cleansing and funding fraud in the record and find probable cause of a crime or fraud relating to these issues.

## CONCLUSION

The Court should deny Defendants' motion to reconsider the Patton Boggs Subpoena Order. In the alternative, the Court should expand its crime-fraud ruling to cover Defendants' and Patton Boggs's fraudulent use of cleansing experts and fraud against funders.

Date: April 15, 2013

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

`s/ Randy M. Mastro`

Randy M. Mastro
Andrea E. Neuman
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for Chevron Corporation*