# EXHIBIT 3686

# SETTLEMENT AGREEMENT

This Settlement Agreement ("***Agreement***") is made and entered into as of April 15, 2013 by and among Chevron Corporation, a Delaware corporation ("***Chevron***"), Burford Capital Limited, a Guernsey company ("***BCL***"), Burford Capital LLC, a Delaware limited liability company ("***BC LLC***"), Litigation Risk Solutions, a Delaware limited liability company ("***LRS***"), Treca Financial Solutions, a Cayman Islands corporation ("***Treca***"), and Nugent Investments Limited, a Guernsey company ("***Nugent***") (together with BCL, BC LLC, LRS, Glenavy and Treca, "***Burford***" or the "***Burford Parties***"), and Ecuadorian Ventures LLC, an Illinois limited liability company ("***Ventures***").  Chevron, the Burford Parties and Ventures are referred to collectively as the "***Parties***," or each, a "***Party***."  All dollar amounts used herein refer to U.S. dollars.

# RECITALS

WHEREAS, a suit styled *María Aguinda y Otros v. Chevron Corporation*, Case No. 002-2003 ("***Lago Agrio Litigation***"), was filed against Chevron in the Provincial Court of Justice of Sucumbíos, Ecuador on May 7, 2003, alleging that Chevron was liable for purported environmental harms due to oil production activities conducted in Ecuador.  The Lago Agrio Litigation resulted in a first instance judgment issued against Chevron on February 14, 2011, in the amount of approximately $18,200,000,000 ("***Lago Agrio Judgment***");

WHEREAS, on or about October 31, 2010, Treca Financial Solutions ("***Treca***"), El Frente de Defensa de la Amazonia (the "***FDA***"), and parties identified in Schedule 1 of the agreement as "Claimants," entered into a Funding Agreement whereby Treca ("Funder") would provide the Claimants with funding for specified expenses related to the pursuit, settlement, or enforcement of the Lago Agrio Judgment (the "***Funding Agreement***").  Funding Agreement, Schedule 1 ¶ 2.  The total "Capital Commitment" included an "initial Tranche" in the amount of $4,000,000, a "second Tranche" in the amount of $5,500,000, and a "third Tranche" in the amount of $5,500,000.  Funding Agreement ¶ 2; Funding Agreement, Schedule 1¶ 3;

WHEREAS, on or about October 31, 2010, Treca, Torvia Limited, Patton Boggs LLP, Donziger & Associates, PLLC, Emery, Celli, Brinckerhoff & Abady LLP, Pablo Estenio Fajardo Mendoza, Esq., Erik T. Moe, H5, the FDA and the other parties thereto, entered into an Intercreditor Agreement for purposes of allocating among the relevant parties (including Treca) any proceeds from the Lago Agrio Judgment (the "***Intercreditor Agreement***");

WHEREAS, the Intercreditor Agreement provides, pursuant to Section 3.2 and other provisions, that Treca is entitled to a portion of any proceeds of the Lago Agrio Judgment;

WHEREAS, on or about November 2, 2010, Treca provided $4,000,000 to the "Trust Account" maintained by the "Nominated Lawyers," defined as Patton Boggs LLP in the Funding Agreement, in satisfaction of the "initial Tranche" under the Funding Agreement;

WHEREAS, on or about February 1, 2011, Chevron filed the action styled *Chevron Corporation v. Donziger et al.*, 11-Civ.-0691 (LAK), in the United States District Court for the Southern District of New York ("***RICO Action***"), alleging claims pursuant to the Racketeering

Influenced and Corrupt Organizations Act, § 1962(c) and (d), and state law claims, including fraud, tortious interference, and unjust enrichment, against the plaintiffs in the Lago Agrio Litigation and certain of their attorneys, representatives, and consultants. Chevron also asserted a claim for a declaratory judgment pursuant to 28 U.S.C. § 2201(a) that the Lago Agrio Judgment was unenforceable and not entitled to recognition pursuant to the New York Recognition of Foreign Money Judgments Act, N.Y. CPLR 5301 *et seq.* ("**Declaratory Relief Claim**");

WHEREAS, on March 7, 2011, the court entered a preliminary injunction with respect to the Declaratory Relief Claim, restraining Defendants from enforcing or taking any action to enforce the Lago Agrio Judgment;

WHEREAS, as more and more evidence and court findings came to light in the RICO Action and related actions, evidencing fraud by and on behalf of the counterparties to the Funding Agreement, Burford notified Claimants of their material breaches of the Funding Agreement, and Treca notified Claimants, on or about September 23, 2011, of its termination of the Funding Agreement, in accordance with Section 11.1 thereof, based upon Treca's belief that it had been defrauded in connection with entering into the Funding Agreement;

WHEREAS, Treca duly terminated the Funding Agreement;

WHEREAS, Section 11.3 of the Funding Agreement provides that certain sections of the Funding Agreement survive its termination, including Section 7 thereof, which together with the Intercreditor Agreement, provides for the distribution of proceeds from any recovery to Treca (as well as the other parties to the Intercreditor Agreement);

WHEREAS, Treca retains an interest in the proceeds of the Lago Agrio Judgment pursuant to the surviving provisions of the Funding Agreement and the Intercreditor Agreement ("**Burford Interest**");

WHEREAS, Nugent was the record owner of all fifteen (15) outstanding shares of stock of Treca until December 30, 2010, when Nugent, Ventures and Treca entered into an agreement pursuant to which Nugent sold four (4) ordinary shares of Treca's capital stock to Ventures for $4,000,000;

WHEREAS, as a result of its ownership of shares in Treca, Ventures retains an interest in the proceeds of the Lago Agrio Judgment pursuant to the surviving provisions of the Funding Agreement and the Intercreditor Agreement ("**Ventures Interest**");

WHEREAS, on November 13, 2012, Chevron issued subpoenas for the production of documents to BG Ltd., BG LLC, and Glenavy ("**RICO Subpoenas**");

WHEREAS, as a result of Burford's funding of the initial Tranche under the Funding Agreement, Chevron expressly cited Burford as a co-conspirator of the Defendants in its allegations in Chevron's First Amended Complaint in the RICO Action (Dkt. 283), and Chevron has advised Burford that, given Burford's actions in this regard and, in particular, its retention of an interest in the Lago Agrio Judgment, Chevron intends to bring claims against Burford for money damages and equitable relief in the absence of a settlement between the parties;

WHEREAS, Burford does not concede its liability for such damages and believes that each of the Burford Parties has good defenses thereto, but nevertheless wishes to enter into this Agreement to put to rest any potential claims against it by Chevron;

WHEREAS, as a result of their ownership of shares of Treca, Nugent and Ventures may also be liable for any damages to Chevron caused by Treca's funding of the initial Tranche under the Funding Agreement;

WHEREAS, Nugent and Ventures do not concede their liability for such damages and believe they have good defenses thereto, but nevertheless wish to enter into this Agreement to put to rest any potential claims against them by Chevron; and

WHEREAS, Chevron, Burford, and Ventures have agreed that it is in the best interests of the Parties to settle and release any and all claims arising between or among them upon the terms set forth herein, including claims arising from (a) the Funding Agreement, including all documents and agreements entered into in connection with the Funding Agreement or related to the Funding Agreement, or (b) the Burford Interest or the Ventures Interest in the proceeds of the Lago Agrio Judgment, including, in each case, any and all disputes and claims or potential disputes or claims related thereto.

## AGREEMENT

NOW, THEREFORE, the Parties hereto hereby agree as follows:

1. **Agreement to Renounce the Treca Interests**.  The Burford Parties and Ventures hereby renounce all claims arising under the Funding Agreement and the Intercreditor Agreement, including all claims regarding, and the right to payment of, the Burford Interest and the Ventures Interest and any right of Treca or Ventures to claim damages under Section 11 of the Funding Agreement.  The Burford Parties agree to undertake their commercially reasonable best efforts to inform the counterparties to the Funding Agreement of this renouncement of their interest and to take all necessary legal steps to ensure that such renouncement is effective and legally binding as promptly as practicable after the date of this Agreement.  The Burford Parties and Ventures hereby covenant not accept any payment of proceeds from the Lago Agrio Judgment made pursuant to the Funding Agreement or the Intercreditor Agreement.  If any payment is sent to Treca or any of the other Burford Parties pursuant to the Funding Agreement or the Intercreditor Agreement, the Burford Parties will promptly return the entirety of such payment to the applicable parties.

2. **Agreement to Dissolve Treca**.  The Burford Parties and Ventures agree to commence the process to voluntarily wind up and dissolve Treca and Ventures, as the sole shareholders of Treca, as promptly as practicable after the date of this Agreement.  The Burford Parties and Ventures shall use their commercially reasonable best efforts to dissolve Treca and Ventures no later than December 31, 2013.  The Burford Parties and Ventures further covenant to pursue such dissolution until it is complete, effective, and legally binding.  The Burford Parties will submit a notice to Chevron of the order dissolving Treca pursuant to Section 152 of the Cayman Companies Law within five (5) days of the issuance of such order.  Ventures will

submit a notice to Chevron of the order dissolving Ventures pursuant to Illinois Statutes, Chapter 805, Section 35, within five (5) days of the issuance of such order.

3.  **Agreement to Cooperate**.

    (a) Discovery and Testimony.  The Burford Parties, including, without limitation, their corporate representatives, including Christopher Bogart, agree to cooperate fully in responding to Chevron's requests for discovery or information in the RICO Action, the arbitration currently pending in the Permanent Court of Arbitration, the Hague, Netherlands, under the U.S.-Ecuador Bilateral Investment Treaty, PCA Case No. 2009-23 (the "***BIT Arbitration***"), and any action pursuant to 28 U.S.C. § 1782 seeking discovery relating to the Lago Agrio Litigation or the BIT Arbitration or any action relating to the Lago Agrio Litigation or the Lago Agrio Judgment, whether previously filed or to be filed in the future, in any jurisdiction (the "***Related Actions***"), whether in a court of law or an arbitration.  Such agreement to cooperate shall include, but not be limited to, (1) responding to the RICO Subpoenas and any future Chevron discovery request in the RICO Action; and (2) making themselves and any employees of the Burford Parties, as necessary, available to testify in person, by deposition or by written statement, under oath, in any stage of the RICO Action, the BIT Arbitration, or the Related Actions, at the request of Chevron, upon reasonable notice. Christopher Bogart further specifically agrees to testify in person, by deposition or by written statement, under oath, in any stage of the BIT Arbitration, the RICO Action, or Related Actions, including hearing testimony, at the request of Chevron upon reasonable notice. The Burford Parties each understand that they are obligated to tell the truth, as required by oath, affirmation, legal obligation, or declaration made under penalty of perjury, when providing testimony in any judicial, arbitral, or other forum, or giving statements in any investigation.

    (b) Confidentiality and Privilege Designations.  The Burford Parties agree to not to designate as confidential any documents they will produce in response to the RICO Subpoenas or other discovery requests by Chevron in the RICO Action or Related Actions, except as to any document containing confidential business information pertaining to any of the Burford Parties.  To facilitate litigation of the Related Actions, Chevron may request that the Burford Parties remove confidentiality designations on particular documents they have already produced, and the Burford Parties shall comply with any such request unless the document contains confidential business information pertaining to any of the Burford Parties.  Chevron may also request that the Burford Parties agree to redact any confidential business information from a document and agree to removal of the confidentiality designation from the document in its redacted form and the Burford Parties shall not unreasonably withhold such consent.  Chevron may also request the Burford Parties further agree not to assert any common-interest or joint-defense privilege, attorney-client privilege, attorney work product protection, or similar privileges or

protections asserted over documents responsive to Chevron's discovery requests in the RICO Action or Related Actions, including the RICO Subpoenas, and to produce such documents in a timely fashion. Notwithstanding the provisions of this paragraph, the Burford Parties may assert attorney-client privilege or attorney work-product protection over the Burford Parties' communications with and work performed on behalf of the Burford Parties by their in-house counsel, Torys LLP, Volterra Fietta, and Kellogg, Huber, Hansen, Todd, Evans & Figel PLLC.

(c) <u>Duty to Meet</u>.  The Burford Parties agree to cooperate with Chevron in its ongoing investigation by meeting with counsel for Chevron, as reasonably requested, and by responding to questions posed by Chevron's counsel.  Such meetings shall occur in New York.

(d) <u>Notices Under the Funding Agreement or the Intercreditor Agreement</u>.  The Burford Parties shall, within five (5) days of receiving any notices, documents, or other information from any counterparty to the Funding Agreement or the Intercreditor Agreement, provide full and complete copies of such notices, documents, or other information to Chevron; provided, that if the provision of such documents or other information would be in clear breach of Treca's confidentiality obligations under the Funding Agreement or Intercreditor Agreement, Treca shall notify Chevron of the nature of such information or other document received and, to the extent it is able to do so without breaching its confidentiality obligations, shall provide a summary of such materials to Chevron.

4. **Representations and Warranties**.

   (a) <u>By Burford</u>.  Each of the Burford Parties jointly and severally represent and warrant to Chevron and Ventures as follows:

   (i.) The execution, delivery, and performance by each of the Burford Parties of this Agreement and the other documents to be delivered hereunder are within each Burford Party's powers, have been duly authorized by Burford, require no government approval, and do not contravene any law or regulation or any contractual restriction applicable to or binding upon any Burford Party.  This Agreement is the legal, valid, and binding obligation of each of the Burford Parties, enforceable against each of the Burford Parties in accordance with its terms.

   (ii.) Each Burford Party has the power, right, and authority to settle and release fully and completely all claims to be settled and released in this Agreement.  Each Burford Party is duly organized, validly existing, and in good standing under the laws of the relevant jurisdiction of each the Burford Parties' incorporation or organization.

(iii.) No consent, approval, or authorization of or filing with any governmental authority or other third party is required to be obtained or made by any of the Burford Parties in connection with the execution and delivery of this Agreement or the performance of its obligations hereunder, other than any consents, approvals, authorizations, or filings which have previously been obtained or made (and each of which is in full force and effect).

(iv.) The authorized capital of Treca consists of fifty thousand (50,000) ordinary shares, of which 15 ordinary shares have been duly issued and are outstanding as fully paid.

(v.) Nugent is the record owner of eleven (11) shares of Treca's capital stock (the "**Burford Shares**"), representing all of the equity interests owned by any of the Burford Parties in Treca.  Nugent has good and valid title to the Burford Shares, free and clear of all liens, pledges, security interests, and encumbrances (together, "**Liens**").  The Burford Shares are not subject to any preemptive rights, restrictions on transfer, or similar rights.

(vi.) Treca was formed by the Burford Parties for the sole purpose of entering into the Funding Agreement and the Intercreditor Agreement and performing its obligations under, and receiving the benefits under, those agreements.  Other than becoming a party to the Funding Agreement and the Intercreditor Agreement in connection with the Lago Agrio Litigation, Treca has not engaged in any other business or activity of any type or kind whatsoever.

(vii.) There are no outstanding judgments against Treca, and there are no actions, suits, proceedings (including arbitration proceedings), orders, investigations or claims, pending or threatened, against or affecting Treca except relating to the Lago Agrio Litigation and related matters.

(viii.) There are no outstanding judgments against any of the Burford Parties in connection with the Lago Agrio Litigation, and there are no actions, suits, proceedings (including arbitration proceedings), orders, investigations or claims, pending or threatened, against or affecting any Burford Party (A) that seek to restrain or prohibit any Burford Party from entering into and performing the transactions contemplated by this Agreement or (B) that question the validity of this Agreement, the transactions contemplated hereby, or the ownership of the Burford Shares.

(b) By Ventures.  Ventures represents and warrants to Chevron and the Burford Parties as follows:

(i.) The execution, delivery, and performance by Ventures of this Agreement and the other documents to be delivered hereunder are within Ventures' powers, have been duly authorized by Ventures, require no government approval, and do not contravene any law or regulation or any contractual restriction applicable to or binding upon Ventures.  This Agreement is the legal, valid, and binding obligation of Ventures, enforceable against Ventures in accordance with its terms.

(ii.) Ventures has the power, right, and authority to settle and release fully and completely all claims to be settled and released in this Agreement. Ventures is duly organized, validly existing, and in good standing under the laws of the jurisdiction of its incorporation or organization.

(iii.) No consent, approval, or authorization of or filing with any governmental authority or other third party is required to be obtained or made by Ventures in connection with the execution and delivery of this Agreement or the performance of its obligations hereunder, other than any consents, approvals, authorizations, or filings which have previously been obtained or made (and each of which is in full force and effect).

(iv.) Ventures is the record owner of four (4) shares of Treca's capital stock (the "***Ventures Shares***"), representing all of the equity interests owned by Ventures in Treca.  Ventures has good and valid title to the Ventures Shares, free and clear of all liens, pledges, security interests and encumbrances (together, "***Liens***").  The Ventures Shares are not subject to any preemptive rights, restrictions on transfer or similar rights.

(v.) There are no outstanding judgments against Ventures in connection with the Lago Agrio Litigation, and there are no actions, suits, proceedings (including arbitration proceedings), orders, investigations or claims, pending or threatened against or affecting Ventures (i) that seek to restrain or prohibit Ventures from entering into and performing the transactions contemplated by this Agreement or (ii) that question the validity of this Agreement, the transactions contemplated hereby or the ownership of the Ventures Shares.

(c) <u>By Chevron</u>.  Chevron hereby represents and warrants to the Burford Parties and Ventures as follows:

(i.) The execution, delivery, and performance by Chevron of this Agreement and the other documents to be delivered hereunder are within Chevron's powers, have been duly authorized by Chevron, require no government approval, and do not contravene any law or regulation or any contractual restriction applicable to or binding upon

Page **7** of **14**

Chevron.  This Agreement and the other documents to be delivered by Chevron hereunder are the legal, valid, and binding obligations of Chevron, enforceable against Chevron in accordance with their respective terms.

(ii.) Chevron has the power, right, and authority to settle and release fully and completely all claims to be settled and released in this Agreement.  Chevron is a corporation duly organized, validly existing, and in good standing under the laws of the state of Delaware.  Chevron has all the requisite power and authority to execute and deliver this Agreement and to perform its obligations hereunder.

5. **Mutual Releases**.

   (a) Defined Terms.

   (i.) "*Chevron Releasees*" shall refer to Chevron, and to all of its past and present, direct and indirect, parents, subsidiaries, and affiliates; the predecessors, successors and assigns of Chevron; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing.

   (ii.) "*Burford Releasees*" shall refer to each of the Burford Parties, and each of their past and present, direct and indirect, parents, subsidiaries, and affiliates; the predecessors, successors and assigns of each of the Burford Parties; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing.

   (iii.) "*Ventures Releasees*" shall refer to Ventures and each of its past and present, direct and indirect, parents, subsidiaries, and affiliates; the predecessors, successors and assigns of Ventures; and each and all of the present and former members, managers, principals, partners, officers, directors, supervisors, employees, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing.

   (iv.) "*Released Parties*" shall mean and refer to the Chevron Releasees, Burford Releasees, and Ventures Releasees collectively.

   (b) With the execution and delivery of this Agreement, the Chevron Releasees, Burford Releasees, and Ventures Releasees do hereby forever mutually release, discharge, and acquit any claims, demands, obligations, or against the other Released Parties related to the Funding Agreement, the Intercreditor Agreement, or that have been, or could have been, asserted in the RICO Action, or arising out of Lago Agrio Litigation, or any Related Actions.  The

Chevron Releasees, Burford Releasees and Ventures Releasees irrevocably covenant and agree never to institute or cause to be instituted or continued prosecution of any suit or other form of action or proceeding of any kind or nature whatsoever against the other Released Parties, by reason of or in connection with any of the foregoing matters, claims, or causes of action.

(c) The matters released hereby, however, shall not include any claims, demands, obligations, suits, and causes of action or liabilities of any of the Released Parties arising under this Agreement.

(d) It is hereby further understood and agreed that the acceptance of delivery of this Agreement by the Released Parties shall not be deemed or construed as an admission of liability by any Party released by the terms hereof.

(e) It is hereby further understood and agreed that nothing in the acceptance of delivery of this Agreement shall prevent Chevron from maintaining legal action or seeking damages against any other Party involved in, or related to, the Lago Agrio Litigation or any of the Related Actions, except for the Burford Releasees and the Ventures Releasees.

6. **Approved Public Statement**. Chevron and the Burford Parties will issue a joint press release announcing the agreement in the form attached as Exhibit A hereto, on April 15, 2013. Such press release shall convey in substance that Chevron is pleased Burford appropriately sought to terminate the Funding Agreement when it learned of the fraud engaged in by Claimants and their lawyers and representatives, and that Chevron is pleased that Burford has chosen to come forward and cooperate with Chevron's efforts to uncover a multi-billion fraudulent and extortionate scheme against it, has declined to provide more funds to further the scheme, and has renounced any interest in proceeds from the fraudulent Lago Agrio Judgment. The Parties shall not otherwise make public statements about this agreement except that the Parties may make public statements, including in court filings, that are consistent with the joint release attached as Exhibit A.

7. **Non-disparagement**. The Parties each agree that they will not make or cause to be made any statements that disparage, are inimical to, or damage the reputation of any other Party or any of its or their affiliates, subsidiaries, members, partners, agents, officers, directors, or employees, except that if any of the Burford Parties or any related entities, past or future, provide funding or material support to any individual or entity for the purposes of advancing any active, potential, or threatened litigation, potential adjudication or administrative action, arbitration, or any public or private investigation, in which Chevron Corporation or any of its subsidiaries is an adverse party, then this clause (clause 7) and clause 6 will cease to have any further force and effect as to Chevron Corporation.

8. **Successors in Interest**. The Parties agree that this Agreement shall be binding upon the Parties and, as applicable, to the extent they remain under the Parties' control, their heirs, executors, administrators, dependents, predecessors, successors, subsidiaries, divisions, alter egos, affiliated corporations, and related entities, and their present officers, directors,

partners, employees, attorneys, assigns, agents, representatives, and any or all of them, and any past officers, directors, partners, employees, attorneys, assigns, agents, or representatives.

9. **No Assignment**.  Each Party warrants and represents that it has not assigned or transferred to any other person any of the claims, causes of action, or other matters that are released by this Agreement.

10. **Entire Agreement**.  This Agreement contains the entire Agreement and understanding concerning the subject matter of the Agreement between the Parties, and supersedes and replaces all prior negotiations, and proposed settlement agreements, written or oral.  Each of the Parties to this Agreement acknowledges that no other Party to this Agreement, nor any agent or attorney of any such Party, has made any promise, representation or warranty, express or implied, not contained in this Agreement to induce any Party to execute this Agreement.  The Parties further acknowledge that they are not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement.  It is expressly understood and agreed that this Agreement may not be altered, amended, modified, or otherwise changed in any respect, except by a writing duly executed by the Parties, their successors or assigns in interest, or their authorized representatives.

11. **Advice of Counsel**.  Each Party represents that it has been represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement and that it has executed this Agreement with the consent and upon the advice of such counsel, or that it has had the opportunity to seek such consent and advice.  Each Party acknowledges that it has read this Agreement and assents to all the terms and conditions contained in this Agreement without any reservations and that it has had, or has had the opportunity to have had, the same explained to it by its own counsel, who have answered any and all questions which have been asked of them, or which could have been asked of them, with regard to the meaning of any of the provisions of this Agreement.

12. **No Admissions**.  By entering into this Agreement, no Party intends to make, nor shall be deemed to have made, any admission of any kind.  The Parties agree that they are entering into this Agreement to avoid the costs of further litigation and to settle potential disputes between the Parties.  This Agreement is the product of informed negotiations and compromises of previously stated legal positions.  Nothing contained in this Agreement shall be construed as an admission by any Party as to the merit or lack of merit of any particular claim or defense.  Any statements made in the course of negotiations have been and shall be without prejudice to the rights of the Parties in any disputes or transactions with any other person or entity not party to this Agreement.

13. **Governing Law**.  This Agreement shall in all respects be interpreted, enforced, and governed by and under the internal laws of the State of New York.

14. **Exclusive Jurisdiction**.  All Parties except BCL hereby stipulate and agree that exclusive jurisdiction and venue as to any and all disputes concerning this Agreement, including disputes concerning the interpretation and enforcement of this Agreement and any alleged breach of the cooperation provisions in Section 3 of this Agreement, shall rest with any federal or state

court of competent jurisdiction located in New York County, New York. Each of the Parties to this Agreement except BCL agrees to consent to the exercise of personal jurisdiction by a federal or state court located in New York County, New York, with respect to any action brought based on any dispute concerning this Agreement, except that nothing in the foregoing shall restrict Chevron's ability to seek enforcement of this agreement against BCL pursuant to the following: BCL hereby agrees that the Courts of England and Wales shall have exclusive jurisdiction over any and all disputes concerning this Agreement, insofar as it involves a claim by or against BCL, including disputes concerning the interpretation and enforcement of this Agreement and any alleged breach of the cooperation provisions in Section 3 of this Agreement. BCL hereby submits to the jurisdiction of the Courts of England and Wales with respect to any action brought based on any such dispute. Where there is a dispute involving Chevron, BCL and the other Burford parties, any BCL action in England and Wales should await the conclusion of proceedings in New York involving the other Burford Parties, in respect of the same dispute, and BCL agrees to be bound by any findings of fact or law made in the New York proceedings. The Parties agree that the limitation acts and the doctrine of laches shall not apply to any delay in bringing any claim against BCL pursuant to this provision where such delay is caused by awaiting the outcome of any related action in any New York court.

15. **Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall be an original as against any Party who signed it, and all of which shall constitute one and the same document.

16. **Construction**. The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement. It is understood and acknowledged that this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or its counsel has participated in the drafting of this Agreement.

17. **Severability of Agreement**. If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable for any reason, the remaining provisions not so declared shall nevertheless continue in full force and effect, but shall be construed in such a manner so as to effectuate the intent of this Agreement as a whole, notwithstanding such stricken provision or provisions. The Parties agree that in the event any part of this Agreement is rendered or declared invalid or unenforceable, they will negotiate, in good faith, to agree on a permitted replacement part that reflects their original intent.

18. **Amendment and Waiver**. Neither this Agreement, nor any of the provisions hereof, may be changed, waived, discharged, or terminated, except by an instrument in writing signed by the Party against whom enforcement of the change, waiver, discharge, or termination is sought.

19. **Attorneys' Fees, Costs, and Expenses**. Each party shall bear its own attorneys' fees, costs, and expenses incurred in connection with this Agreement, including any future costs associated with compliance with Section 3 of this Agreement. In the event of any litigation relating to this Agreement, including litigation subsequent to any breach under Section 3, the prevailing Party shall be entitled to recover its reasonable attorneys' fees, expenses, and costs.

20. **No Third Party Beneficiaries**.  Nothing contained in this Agreement, expressed or implied, is intended to confer upon any person or entity other than the Parties hereto any benefits, rights, or remedies.

21. **Notices**.  Any notice required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been given either (a) upon actual receipt or three (3) days after deposit in the United States mail, registered or certified mail, postage prepaid, return receipt requested; (b) upon actual receipt if sent via reputable overnight courier; or (c) upon actual confirmation of receipt, if by email.  All notices shall be addressed as follows:

| | |
|---|---|
| If to Chevron: | Randy M. Mastro<br>Andrea E. Neuman<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, NY 10166<br>rmastro@gibsondunn.com<br>aneuman@gibsondunn.com |
| If to Burford: | Mark C. Hansen<br>Kellogg, Huber, Hansen, Todd, Evans & Figel PLLC<br>1615 M Street NW<br>Washington, DC 20036<br>mhansen@khhte.com |
| If to Ecuadorian Ventures, LLC: | Alan Dolinko<br>Robinson Curley & Clayton, P.C.<br>300 S. Wacker Drive<br>Suite 1700<br>Chicago, IL  60606<br>adolinko@robinsoncurley.com |

[the remainder of this page is intentionally left blank]

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the date first written above.

CHEVRON CORPORATION

By: *(signature)*
Name: Kari H. Endrios
Title: Assistant Secretary

BURFORD CAPITAL LIMITED

By: _____
   Name:
   Title:

BURFORD CAPITAL LLC

By: _____
   Name:
   Title:

LITIGATION RISK SOLUTIONS

By: _____
   Name:
   Title:

NUGENT INVESTMENTS LIMITED

By: _____
   Name:
   Title:

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the date first written above.

CHEVRON CORPORATION

By:_____
   Name:
   Title:

BURFORD CAPITAL LIMITED

By:_____
   Name: MARK WOODALL
   Title: AUTHORISED SIGNATORY

BURFORD CAPITAL LLC

By:_____
   Name: MARK WOODALL
   Title: AUTHORISED SIGNATORY

LITIGATION RISK SOLUTIONS

By:_____
   Name:
   Title:

NUGENT INVESTMENTS LIMITED

By:_____
   Name: MARK WOODALL
   Title: AUTHORISED SIGNATORY

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the date first written above.

CHEVRON CORPORATION

By:_____
    Name:
    Title:

BURFORD CAPITAL LIMITED

By:_____
    Name:
    Title:

BURFORD CAPITAL LLC

By:_____
    Name:
    Title:

LITIGATION RISK SOLUTIONS

By:_____
    Name: *[signature]*
    Title: member

NUGENT INVESTMENTS LIMITED

By:_____
    Name:
    Title:

TRECA FINANCIAL SOLUTIONS

By: _____/s/ Mark Woodall_____
    Name: MARK WOODALL
    Title: AUTHORISED SIGNATORY

ECUADORIAN VENTURES LLC

By: _____
    Name:
    Title:

Page 14 of 14

TRECA FINANCIAL SOLUTIONS

By:_____
    Name:
    Title:

ECUADORIAN VENTURES LLC

By:_____/s/_____
    Name:
    Title: MANAGER OF THE MANAGING MEMBER