UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

CHEVRON CORPORATION,

                Plaintiff,

      v.

STEVEN DONZIGER, THE LAW OFFICES
OF STEVEN R. DONZIGER; et al.,

                Defendants.

Case No. 11-CV-0691 (LAK)

---

**DEFENDANTS' MEMORANDUM OF LAW CONCERNING
APPEALABILITY OF THE COURT'S APRIL 12, 2013
ORDER COMPELLING DISCOVERY FROM GARR AND
KOHN (DOC. 1012)**

# TABLE OF CONTENTS

I.     ARGUMENT ................................................................................................ 1

    A.    The Order is immediately appealable under the *Perlman* rule because the documents are in the hands of third parties who are unwilling to risk contempt to protect the attorney-client privilege. ................................................... 1

        1.    *Perlman* applies here ................................................................................. 1

        2.    Chevron's anticipated counter-arguments lack merit. ............................... 4

    B.    The Court should grant a stay pending appeal. ...................................................... 8

        1.    The Ecuadorian Plaintiffs have made a strong showing that they are likely to succeed on the merits of the appeal. ....................................... 8

        2.    The Ecuadorian Plaintiffs will suffer irreparable injury absent a stay. ........................................................................................................... 9

        3.    The stay will not substantially injure other parties interested in the proceeding. ................................................................................................ 10

        4.    The public interest favors granting the stay. ............................................. 11

II.    CONCLUSION ............................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Chevron Corp. v. Naranjo,*
  667 F.3d 232 (2d Cir. 2012), *cert. denied,* 133 S. Ct. 423 (U.S. 2012)...................................11

*Emery Air Freight Corp. v. Local Union 295,*
  786 F.2d 93 (2d Cir. 1986)..........................................................................................................10

*Holt–Orsted v. City of Dickson,*
  641 F.3d 230 (6th Cir. 2011) ........................................................................................................7

*In re Air Crash at Belle Harbor, New York on November 12, 2001,*
  490 F.3d 99 (2d Cir. 2007) [hereinafter, "*Air Crash*"] .........................................................3, 4

*In re Application of Chevron,*
  409 Fed. Appx. 393, 2010 WL 5151325 (2d Cir. Dec. 15, 2010) .............................................9

*In re Grand Jury,*
  705 F.3d 133 (3d Cir. 2012).........................................................................................................7

*In re Grand Jury Proceedings,*
  616 F.3d 1172 (10th Cir. 2010) ...................................................................................................5

*In re Grand Jury Subpoena,*
  709 F.3d 1027 (10th Cir. 2013) ...............................................................................................3, 7

*In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983,*
  731 F.2d 1032 (2d Cir. 1984)........................................................................................................3

*In re Grand Jury Subpoena for New York State Income Tax Records,*
  607 F.2d 566 (2d Cir.1979)............................................................................................................3

*In re Two Grand Jury Subpoenae Duces Tecum,*
  769 F.2d 52 (2d Cir. 1985)............................................................................................................5

*In re: Motor Fuel Temperature Sales Practices Litig.,*
  641 F.3d 470 (10th Cir. 2011) ......................................................................................................3

*Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.,*
  596 F.2d 70 (2d Cir. 1979)...........................................................................................................11

*Mohawk Industries, Inc. v. Carpenter,*
  130 S.Ct. 599 (2009)..................................................................................................6, 7, 8, 10

747932.01

*Naranjo v. Chevron Corp.*,
  No 13-772 (2d Cir. Apr. 8, 2013) ...........................................................................11

*National Super Spuds, Inc. v. N.Y. Mercantile Exch.*,
  591 F.2d 174 (2d Cir. 1979) (Friendly, J.)................................................................2

*Pennsylvania v. Ritchie*,
  480 U.S. 39 (1987)..................................................................................................2, 4

*Perlman v. United States*,
  247 U.S. 7 (1918)................................................................................................ passim

*Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*,
  415 U.S. 1 (1974)......................................................................................................10

*Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*,
  585 F.3d 58 (2d Cir. 2009)..........................................................................................7

*U.S. S.E.C. v. Citigroup Global Markets Inc.*,
  673 F.3d 158 (2d Cir. 2012)........................................................................................8

*U.S. v. Myers*,
  593 F.3d 338 (4th Cir. 2010) .....................................................................................8

*United States v. Guterma*,
  272 F.2d 344 (2d Cir. 1959)........................................................................................3

*United States v. Krane,*
  625 F.3d 568 (9th Cir. 2010) .....................................................................................8

*United States v. Philip Morris Inc.*,
  314 F.3d 612 (D.C. Cir. 2003) .................................................................................10

*United States v. Ryan*,
  402 U.S. 530 (1971)....................................................................................................2

*Wilson v. O'Brien*,
  621 F.3d 641 (7th Cir. 2010) .....................................................................................7

**OTHER AUTHORITIES**

Circuit's pre-*Mohawk* .....................................................................................................6

Fifth Amendment ............................................................................................................2

Fourth Amendment .........................................................................................................2

In its Memorandum and Order (Doc. 1012) compelling the production of documents by third-party respondents Garr and Kohn,[1] this Court reserved decision on the defendants' request for a stay pending appeal.  Relatedly, the Court stated that the defendants could submit a brief addressing the Order's appealability, which the Court called an "essential element" in determining the first ("likely to succeed on the merits") prong of the four-part test for granting a stay pending appeal.[2]

As demonstrated below, the Order is immediately appealable.  For that reason and others discussed below, the Court should enter a stay pending appeal.

## I.      ARGUMENT

**A.      The Order is immediately appealable under the *Perlman* rule because the documents are in the hands of third parties who are unwilling to risk contempt to protect the attorney-client privilege.**

The Order is immediately appealable under the rule in *Perlman v. United States*, 247 U.S. 7 (1918).  *Perlman* created an exception to the general rule that a party resisting discovery on the basis of privilege must defy the discovery order and incur a contempt citation before he can take an interlocutory appeal.  The *Perlman* exception applies where a discovery order compels production of documents that are in the hands of a third party who is unwilling to risk a contempt citation in order to facilitate an interlocutory appeal.  That is the situation here.

### 1.      *Perlman* applies here.

In the leading case on point, Perlman sought to appeal from an order by then-District Judge Learned Hand requiring the clerk of court to turn over trial exhibits from a prior civil case that were being maintained in court under seal, pursuant to a settlement of that case.  *Id*. at 8-9.

---

[1] "Garr" refers to Laura Garr and "Kohn" refers collectively to Joseph Kohn and the Kohn, Swift & Graf, P.C. law firm.

[2] Order at 19-21.

Perlman claimed that he owned the exhibits.  Prosecutors believed that the exhibits would furnish evidence that Perelman had perjured himself during the trial of the civil case.  *Id*. at 11. But Perlman asserted that the district court's order violated his Fourth Amendment right against unreasonable search and seizure and his Fifth Amendment right against self-incrimination.  *Id*. at 13.

The prosecutor filed a motion to dismiss Perlman's appeal, arguing in part that the order was not appealable because it was "not final as to Perlman but interlocutory in a [criminal] proceeding not yet brought and depending upon [the government] to be brought."  *Id*. at 12-13. But the Supreme Court found it "somewhat strange" for the government to assert that Perlman was "powerless to avert the mischief of the order but must accept its incidence and seek a remedy at some other time and in some other way."  *Id*. at 13.  The court found itself "unable to concur" with the government's restrictive view of its jurisdiction, and therefore proceeded to address the appeal on its merits.  *Id*.

The Supreme Court's interpretation of this "delphic" holding has evolved over time. *National Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 591 F.2d 174, 178-79 (2d Cir. 1979) (Friendly, J.).  The Supreme Court later explained that "[t]o have denied review would have left Perlman 'powerless to avert the mischief of the order,' for the custodian [the court clerk] could hardly have been expected to risk a citation for contempt in order to secure Perlman an opportunity for judicial review."  *United States v. Ryan*, 402 U.S. 530, 533 (1971) (citation omitted).  Thus, *Perlman* applies where the sought-after documents "are in the hands of a third party who has no independent interest in preserving their confidentiality."  *Pennsylvania v. Ritchie*, 480 U.S. 39, 77 n.3 (1987).  *Perlman* has "come to stand for the principle that the holder of an asserted privilege may immediately appeal the enforcement of a subpoena when the

subpoena is directed at another person who does not object to providing the testimony or documents at issue." *In re Air Crash at Belle Harbor, New York on November 12, 2001*, 490 F.3d 99, 106 (2d Cir. 2007) [hereinafter, "*Air Crash*"].

The Second Circuit has long adhered to the *Perlman* rule,[3] holding repeatedly that "a client whose attorney has been ordered to produce documents as to which the client has a privilege . . . may appeal the order as a final order under the [*Perlman*] doctrine." *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1036 n.3 (2d Cir. 1984) (concerning subpoena to appellant's former attorney) (citing *In re Katz,* 623 F.2d 122, 124 (2d Cir.1980); *In re Grand Jury Subpoena for New York State Income Tax Records,* 607 F.2d 566, 570 (2d Cir.1979)).   In this Circuit, the *Perlman* rule "applies to appeals both from orders denying motions to quash, and orders granting motions to compel.   It also applies to appeals from orders issued in both grand jury proceedings, and [in] criminal and civil actions." *Air Crash*, 490 F.3d at 106 (citations omitted).[4]

The *Perlman* rule "is relevant only to appeals brought by the holder of a privilege where the disputed subpoena is directed at someone else.   It is impossible for such an appellant to pursue the normal avenue of review—submission to contempt—because, like Perlman, that appellant has not been required to do anything by the district court." *Air Crash*, 490 F.3d at 106.[5]   Thus, the *Perlman* rule renders the Order immediately appealable by the Ecuadorian

---

[3] *See, e.g., United States v. Guterma*, 272 F.2d 344, 345 n.1 (2d Cir. 1959).

[4] The Tenth Circuit's statement that "[w]e are aware of no case ... that extends *Perlman* beyond criminal grand jury proceedings" must refer only to the Tenth Circuit's precedents.  *In re: Motor Fuel Temperature Sales Practices Litig.,* 641 F.3d 470, 485 (10th Cir. 2011).   That court has acknowledged that it "reads *Perlman* more narrowly than the great majority of the other circuits." *In re Grand Jury Subpoena*, 709 F.3d 1027, 1030 (10th Cir. 2013).

[5] *See also id.* at 106-07 & n.7 (refusing to apply *Perlman* to allow appeal by an attorney who was, himself, the subject of the subpoena); *In re Grand Jury Subpoena for New York State Income Tax Records*, 607 F.2d 566, 570 (2d Cir. 1979).

Plaintiffs, who hold the attorney-client privilege at issue here.[6]

To invoke *Perlman* successfully, the Ecuadorian Plaintiffs must show that (1) their former attorneys have been ordered to produce documents as to which they have claimed privilege; and (2) those former attorneys are unwilling to risk a contempt citation to defend the privilege and facilitate interlocutory review.  *See Ritchie*, 480 U.S. at 77 n.3; *Air Crash*, 490 F.3d at 106.

The first element is undisputed.  As to the second:  Ms. Garr's declaration (submitted herewith) states that she is unwilling to risk a contempt citation by defying the Order and that, if the Order is stayed and the Second Circuit subsequently upholds the Order in the defendants' interlocutory appeal, she will produce all previously unproduced documents within the Order's scope.  No declaration is needed from Kohn, as this Court already has found that he "has been willing from the start to turn [the documents] over at the direction of the Court"[7] and "has offered to turn over [his] records to Chevron or to an appropriate court on multiple occasions."[8]

Accordingly, the Order is immediately appealable under *Perlman*.

### 2. Chevron's anticipated counter-arguments lack merit.

Because the Order does not authorize a reply brief on appealability, we now anticipate and answer two arguments that Chevron may raise to defeat appellate jurisdiction under *Perlman*.

***First***, Chevron may argue that *Perlman* does not apply because Donziger can simply obtain the documents from Garr and Kohn, refuse to produce the documents, incur a contempt citation, and then take an immediate appeal from the contempt ruling.  This argument would be

---

[6] Steven Donziger, The Law Offices of Steven R. Donziger, and Donziger & Associates, PLLC join in this brief, and will join in the appeal, to the extent necessary to preserve any work-product objections  not available to the Ecuadorian Plaintiffs.

[7] Order at 16.

[8] Order at 16.

founded on the Court's finding that Donziger had "possession, custody, or control" over the documents because he retained "the practical ability to obtain documents from" Garr and Kohn.[9]

But the argument fails, because the Court only found that Donziger had the practical ability to obtain the documents from Garr and Kohn "***at the time the privilege log should have been filed***."[10]  That finding has no bearing on Garr's and Kohn's present willingness to risk a contempt citation by turning the documents over—not to Chevron as ordered, but to Donziger, who (according to this scenario) must then defy the Order in order to facilitate an interlocutory appeal.  Indeed, intervening events have made this Court's "practical control" finding quite irrelevant because Garr and Kohn ceased representing the Ecuadorian Plaintiffs years ago.[11] There is, if anything, an even stronger basis to apply *Perlman* to a case involving a subpoena to the privilege-holder's ***former*** attorney; for "[a] court may, but is not required to, draw an inference that a current attorney is more likely to risk contempt in order to protect a client's privilege than a former attorney . . . ."  *In re Grand Jury Proceedings*, 616 F.3d 1172, 1180 n.11 (10th Cir. 2010).

Assuming, however, that this Court's "possession, custody, and control" finding does bear on the *Perlman* inquiry, Chevron's argument still would backfire because the argument effectively asks the Second Circuit to decide part of the appeal's ***merits*** as a predicate for determining ***appellate jurisdiction*** under *Perlman*.  In the Second Circuit, when determining appellate jurisdiction under *Perlman* requires that the Court first reach the merits of the privilege appeal, "there is no point in saving a holding on the merits . . . until a later and separate appeal," and the appeal therefore goes forward.  *In re Two Grand Jury Subpoenae Duces Tecum*, 769

---

[9] *See* Order at 13-16.

[10] Order at 13 (emphasis added).

[11] Garr stopped working for Donziger no later than October 8, 2010, *see* Doc. 58, ¶ 5, and Kohn withdrew from representing the Ecuadorian Plaintiffs on November 19, 2009.  *See* Doc. 88 at 3.

F.2d 52, 56 (2d Cir. 1985). Here, there can be no doubt that "possession, custody, and control" will be a "merits" issue in the appeal: the issue was briefed to this Court;[12] this Court deemed the issue critical to determining the scope of the waiver that purportedly resulted from Donziger's failure to serve a privilege log;[13] and the Court specifically addressed and resolved the issue on the merits in the Order from which the appeal will be taken.[14] Accordingly, Chevron cannot avoid *Perlman* jurisdiction by relying on the Court's "possession, custody, and control" finding.

**Second**, Chevron may argue that the Supreme Court's ruling in *Mohawk Industries, Inc. v. Carpenter*, 130 S.Ct. 599 (2009), implicitly narrowed *Perlman* so as to render it inapplicable here. *Mohawk* established that "the collateral order doctrine does not extend to disclosure orders adverse to the attorney-client privilege." *Id.* at 609. The Supreme Court observed that litigants faced with such orders have other, adequate avenues of appellate relief, including (1) appealing from final judgment, (2) petitioning for a writ of mandamus, and (3) defying the production order, incurring a contempt citation, and then taking an immediate appeal from the contempt ruling. *See id.* at 606-08. Notably, *Mohawk* made no reference to the *Perlman* rule.

Chevron's theory could be that, under the logic (if not the letter) of *Mohawk*, the availability of alternative means of appellate relief also should foreclose appellate jurisdiction under *Perlman* where the privilege-holder is a party to the litigation and therefore eventually will be able to pursue a postjudgment appeal. But the Second Circuit has not opined on whether *Mohawk* affected *Perlman*'s vitality or scope. Accordingly, the Circuit's pre-*Mohawk* cases applying *Perlman* remain binding "until such time as they are overruled either by an *en banc*

---

[12] See Doc. 26 at 4-6; Doc. 60 at 5; Doc. 58, ¶¶ 2-5; Doc. 190 at 11-16.

[13] *See* Order at 12-13.

[14] *See* Order at 12-16.

panel of [the Second Circuit] or by the Supreme Court."  *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 67 (2d Cir. 2009); *see also id.* at 67 n.9 (explaining the Circuit's "mini-*en banc*" procedure).  Accordingly, the Order is immediately appealable under Second Circuit *Perlman* precedents that remain good and binding law.

Even if this Court could ignore existing Second Circuit precedents, it should not assume that the Second Circuit eventually will hold that *Mohawk* implicitly narrowed *Perlman* (absent a new Supreme Court decision to that effect).  It is true that one federal court of appeals has held (and another has suggested in *dicta*) that *Mohawk* implicitly limits *Perlman* to situations in which the privilege-holder is a non-litigant with no right to appeal after final judgment.[15]  But the better view—already adopted by the Third, the Ninth, and apparently the Fourth Circuits—is that *Mohawk* had no impact on *Perlman* because it made no mention of *Perlman* and because the two cases describe distinct and independent doctrines of interlocutory appealability.  As the Third Circuit has observed:  "[T]he *Mohawk* Court . . . did not discuss, mention, or even cite *Perlman,* a fact that is not that surprising given that the *Perlman* doctrine and the collateral order doctrine recognize separate exceptions to the general rule of finality under [28 U.S.C.] § 1291."  *In re Grand Jury*, 705 F.3d 133, 145-46 (3d Cir. 2012) (declining to hold that *Mohawk* narrowed the *Perlman* doctrine *sub silentio* in the grand-jury context).  The Ninth Circuit likewise has observed that "*Perlman* and *Mohawk* are not in tension" because they are "distinct doctrines."

---

[15] *See Holt–Orsted v. City of Dickson,* 641 F.3d 230, 236-40 (6th Cir. 2011) ("Going forward, application of the *Perlman* doctrine will likely be limited to such [non-party privilege-holder] situations."); *Wilson v. O'Brien*, 621 F.3d 641, 643 (7th Cir. 2010) (opining in *dicta* that "*Mohawk Industries* calls *Perlman* and its successors into question, because, whether the order is directed against a litigant or a third party, an appeal from the final decision will allow review of the district court's ruling.  Only when the person who asserts a privilege is a non-litigant will an appeal from the final decision be inadequate.").  Another Circuit recently punted on the issue.  *See In re Grand Jury Subpoena*, 709 F.3d 1027, 1029 n.1 (10th Cir. 2013) ("We discern some tension between *Perlman* and *Mohawk,* but need not address the matter.").

*United States v. Krane,* 625 F.3d 568, 572-73 (9th Cir. 2010);[16] *see also U.S. v. Myers*, 593 F.3d 338, 345 & n.11 (4th Cir. 2010) (discussing *Perlman* and *Mohawk* separately).

Accordingly, Chevron's anticipated arguments against *Perlman* jurisdiction are meritless and the Court should reject them. Because Chevron may raise other arguments or make misstatements that require correction, defendants request permission to file a reply brief on or before May 20, 2013.

### B. The Court should grant a stay pending appeal.

Courts consider four factors when determining whether to issue a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *U.S. S.E.C. v. Citigroup Global Markets Inc.*, 673 F.3d 158, 162 (2d Cir. 2012).

Because the Order asserts that defendants have thus far "failed adequately to address any of these factors,"[17] we address them briefly below.

### 1. The Ecuadorian Plaintiffs have made a strong showing that they are likely to succeed on the merits of the appeal.

The Ecuadorian Plaintiffs have established in this brief that the Order is immediately appealable under the *Perlman* rule, thereby satisfying what this Court has called "an essential element in determining whether they are likely to succeed on appeal."[18]

In addition, the papers previously filed by Garr, Kohn, and the Ecuadorian Plaintiffs

---

[16] The Ninth Circuit in *Krane* "[f]urther" observed, as an additional factor supporting jurisdiction, that the privilege-holder in the case before it was a nonparty, *id*. at 573; but other language in the opinion, quoted above, demonstrates that this was not essential to the court's finding of *Perlman* jurisdiction.

[17] Order at 20.

[18] Order at 20.

made a "strong showing" that the Ecuadorian plaintiffs are likely to succeed on the appeal's merits (although this Court—like any district court in this circumstance—obviously disagreed in the first instance).  The Ecuadorian Plaintiffs therefore incorporate Documents 58, 60, 88, 112, 136, 186, and 190 by reference herein.

As Garr and Kohn pointed out,[19] the Second Circuit only affirmed this Court's waiver ruling in the § 1782 proceedings on the narrow ground that "the severity of the consequences imposed by the District Court . . . are justified almost entirely by the urgency of [Chevron's] need for the discovery in light of impending criminal proceedings in Ecuador."  *In re Application of Chevron*, 409 Fed. Appx. 393, 2010 WL 5151325, at *2 (2d Cir. Dec. 15, 2010).  The charges in those criminal proceedings were dropped in mid-2010, and the exigency that provided nearly the "entire" justification for this Court's Draconian waiver rulings has long since subsided.  Yet Chevron continues to press for more privileged documents, expanding the waiver far beyond anything the Second Circuit intended or anticipated.  Given the Second Circuit's prior ruling, and given the arguments summarized above, we respectfully submit that the issues presented here are deeply and legitimately contested, and that there is a strong likelihood that defendants' appeal will succeed.

**2.    The Ecuadorian Plaintiffs will suffer irreparable injury absent a stay.**

To the extent that the subpoenas call for the production of documents not previously disclosed, complying with them will result in an obviously irreparable injury:  those documents no longer will enjoy the protection of the attorney-client privilege in this proceeding.  "[T]he general injury caused by the breach of the attorney-client privilege and the harm resulting from the disclosure of privileged documents to an adverse party is clear enough" to satisfy the

---

[19] *See* Doc. 60 at 3-4.

irreparable-harm factor of the stay analysis.  *United States v. Philip Morris Inc.*, 314 F.3d 612, 621-22 (D.C. Cir. 2003) (granting emergency stay pending appeal), *abrogated on jurisdictional grounds by Mohawk*, 130 S. Ct. at 604 n.1.

### 3.    The stay will not substantially injure other parties interested in the proceeding.

Chevron has made no showing that a stay pending appeal will cause it to sustain substantial injury.  Chevron's subpoenas to Garr and Kohn seek the very same documents that it already has sought and largely obtained from Donziger.[20]  Discovery does not close until May 31; and trial is set for October 15.  Chevron will suffer no substantial injury from a modest delay in obtaining the remaining documents that were demanded but not yet produced.  Given the timetable, a modest delay to ensure a correct resolution of the privilege issue is unobjectionable.

Indeed, Chevron's motions cited only two reasons why its need for the documents should be deemed urgent.  Neither reason is compelling.

*First*, Chevron cites the possibility that the Ecuadorian plaintiffs will attempt to enforce the Ecuadorian court's money judgment in foreign courts.[21]  That argument equates the cost of litigating in foreign courts with substantial injury.  But "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."  *Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24 (1974); *cf. Emery Air Freight Corp. v. Local Union 295*, 786 F.2d 93, 100 (2d Cir. 1986) ("The monetary cost of arbitration certainly does not impose such legally recognized irreparable harm.").  Nor is such harm "substantial" for a corporate behemoth like Chevron, which has demonstrated a proclivity for scorched-earth, spare-no-expense litigation.

---

[20] *See* Doc. 60 at 15.
[21] Doc. 104 at 14-15.

10

**Second**, Chevron speculates that Ecuadorian prosecutors may revive, as against Chevron employees, charges that were dropped in 2010.[22]  But cases interpreting "irreparable harm" require that it be "'not remote or speculative but actual and imminent.'"  *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (citation and ellipses omitted).  Chevron has no factual basis for asserting that granting a stay pending appeal will somehow result in the resurrection of charges that Ecuadorian officials dropped almost three years ago.  Indeed, one of the targets of that investigation—a co-applicant in Chevron's § 1782 action—has passed away.

### 4.    The public interest favors granting the stay.

The more than 30,000 Ecuadorians affected by Chevron's conduct **are** the most significantly affected "public" here; and no other "public" will be harmed by a few extra weeks or months delay in Chevron's obtaining the documents in question.  Moreover, no public interest is served by rushing to enforce invasive, privilege-destroying discovery orders.

Defendants also note that the Second Circuit has now granted the Ecuadorian Plaintiffs' motion to expedite their petition for a writ of mandamus, which will be submitted to a panel next month.[23]  If granted, the writ may terminate these proceedings on the ground that they violate the appellate mandate in *Chevron Corp. v. Naranjo*, 667 F.3d 232 (2d Cir. 2012), *cert. denied,* 133 S. Ct. 423 (U.S. 2012).  If no stay is granted and the writ is then granted, the privilege will have been sacrificed for no reason.

---

[22] Doc. 104 at 14-15.

[23] *See Naranjo v. Chevron Corp.*, No 13-772 (2d Cir. Apr. 8, 2013) (Doc. 65) (order granting motion to expedite).

## II.   CONCLUSION

Because the Ecuadorian plaintiffs have made a strong showing of appealability and of other factors favoring a stay, the Court should stay the Order pending the Second Circuit's disposition of the Ecuadorian Plaintiffs' imminent appeal from that Order.

Dated:  April 22, 2013
Houston, Texas                                      Respectfully submitted,


_____/s/  Tyler G. Doyle_____
CRAIG SMYSER (*pro hac vice*)
LARRY R. VESELKA (*pro hac vice*)
TYLER G. DOYLE
SMYSER KAPLAN & VESELKA, L.L.P.
700 Louisiana, Suite 2300
Houston, TX 77002
Telephone:     (713) 221-2330
Facsimile:      (713) 221-2320
Email:     tydoyle@skv.com
Email:     csmyser@skv.com
Email:     lveselka@skv.com

Julio C. Gomez
GOMEZ LLC
The Trump Building
40 Wall Street, 28th Floor
New York, NY  10005
Telephone:     (212) 400-7150
Facsimile      (212) 400-7151
Email:     jgomez@gomezllc.com

*Attorneys for Defendants Hugo Gerardo Camacho
Naranjo and Javier Piaguaje Payaguaje*

12