UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHEVRON CORPORATION,

       Plaintiff,

 v.

STEVEN DONZIGER, *et al.*,

       Defendants.

11 Civ. 0691 (LAK)

---

**PLAINTIFF CHEVRON CORPORATION'S MOTION FOR A PROTECTIVE ORDER TO STRIKE THE NOTICE OF DEPOSITION PURUSANT TO FED. R. CIV. P. 30(B)(6) TO KROLL, INC.**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Attorneys for Plaintiff Chevron Corporation

Defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje (the "LAPs") have served a notice of deposition pursuant to Federal Rule of Civil Procedure 30(b)(6), as well as an attached list of Subject Matters for deposition (collectively, the "Notice"), on Kroll, Inc. *See* Ex. 1.  Chevron attempted to meet and confer with the LAPs in good faith regarding the propriety of the Notice, but the LAPs' inadequate response confirms that the Notice is an attempt to misuse the discovery process and harass Chevron's consultants.[1]  The Notice is designed to seek privileged and protected materials, and thus is unduly burdensome and intended to cause annoyance and oppression.  Accordingly, Chevron moves for a protective order striking the Notice.

Kroll is an investigative and risk-management company that Chevron has retained to provide consulting services in connection with the various litigations between the LAPs, their associates, and Chevron.  At all times during this retention, Kroll employees have worked with—and at the direction of—Chevron's outside counsel.  Kroll has been deeply involved in the "activities which were the subject matter of the … litigation" such that its assistance is "required by [Chevron's counsel] for informed advice." *Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, 2008 WL 5231831 (E.D.N.Y. Dec. 11, 2008), quoting *In re Copper Market Antitrust Litig.*, 200 F.R.D. 213, 218 (S.D.N.Y. 2001).  Consequently, all but a few of the communications and materials that Kroll created, used, and exchanged with Chevron (and its counsel) in connection with its work on Chevron's behalf are subject to attorney-client and work-product protections.

The Notice seeks to elicit testimony from Kroll's corporate representative on these protected communications and materials, and thus will only burden and harass both Kroll and Chevron rather than lead to the disclosure of relevant evidence.  For this reason, the Court should grant Chevron's motion for a protective order by striking the Notice in its entirety.  Fed. R. Civ. P. 45(c)(3)(A)(iii), 26(b)(2)(C) & (c)(1).  In the alternative, the Court should restrict the topics on which the LAPs may seek testimony to those that are relevant to the issues properly in this case and that fall outside the scope of the attorney-client and work-product protections, if any.

---

[1] The LAPs have refused to respond to Chevron's April 12, 2013 letter discussing its concerns.  *See* Ex. 2.

**1. Chevron has standing to challenge the Notice, and this Court has authority to strike it.** This Court's broad discretion to control discovery in this action extends to the Notice. *See* Dkt. 679 (12/19/2012 Order) at 7 ("[T]he district court in which the action is pending may issue protective orders ruling that discovery not be had or that it be conducted on limited terms, as these are issues that extend beyond the details of a specific subpoena."). As this Court has previously held, it has the power "to issue a protective order at the behest of a party to exercise its broad authority over the scope of discovery." *Id.* at 8. Further, Chevron has standing to challenge the Notice because it seeks testimony for which Chevron holds a privilege, and the materials relate to consulting work done for Chevron in connection with litigation.[2]

**2. The Notice improperly seeks testimony on privileged communications and work-product.** Under Rule 45, a subpoena that "requires disclosure of privileged or other protected matter" must be quashed or modified. In addition, improperly seeking discovery of material that is protected by attorney-client privilege or the work product doctrine is a proper basis for barring a Rule 30(b)(6) deposition. *See S.E.C. v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992) (barring a proposed 30(b)(6) deposition as "constitut[ing] an impermissible attempt by defendant" to seek testimony protected as work-product); *see also Shawmut Woodworking & Supply, Inc. v. Amwest Sur. Ins. Co.*, 1999 WL 76807, at *1 (S.D.N.Y. Feb. 17, 1999) (denying motion to compel deposition because the "subpoena clearly shows that defendant seeks to depose [the deponent] on subjects … protected by the attorney-client privilege and/or the work product doctrine.").

The Second Circuit has long recognized that the attorney-client privilege extends to communications with third-party consultants, such as private investigators, for the purpose of obtaining legal advice. *See United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961); *see also Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 71 (S.D.N.Y. 2010) ("courts have frequently extended

---

[2] *See Halawani v. Wolfenberger*, 2008 WL 5188813, at *1 (E.D. Mich. Dec. 10, 2008) (party has standing to challenge third party subpoenas "based on claims of privilege, personal interest or proprietary interest relating to documents being sought"); *see also Carrion v. City of N.Y.*, No. 01CIV.02255 (LAK), 2002 WL 523398, *1 n.1 (S.D.N.Y. Apr. 8, 2002) (standing to "seek[] to protect a personal privilege with regard to the information sought.").

2

the attorney-client privilege communications made to investigators who have provided necessary assistance to attorneys"); *In re Grand Jury Proceedings*, 79 F. App'x 476, 477 (2d Cir. 2003). Application of this privilege to communications with a consultant is appropriate where "the consultant was involved in the activities which were the subject matter of the ensuing litigation and … the consultant possessed the information required by the attorney for informed advice." *Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, 2008 WL 5231831 (E.D.N.Y. Dec. 11, 2008). "[A]ttorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial," *U.S. v. Nobles*, 422 U.S. 225, 238 (1975), and work-product immunity extends to material prepared by such agents on the attorney's behalf. *E.g.*, *id.*; *U.S. v. Dist. Council of N.Y. City*, 1992 WL 208284, at *9 (S.D.N.Y. Aug. 18, 1992).

Here, the Notice impermissibly seeks to elicit testimony from Kroll on subjects that are protected by the attorney-client and work-product privileges. For example, Subject No. 3 demands that Kroll reveal any litigation-related investigative strategy by CHEVRON, a defined term that includes Chevron's "advisors, … representatives, [and] attorneys."[3] Ex. 1 at 6. Subjects Nos. 1 and 6 seek testimony related to Kroll's investigative work on specific projects arising from this litigation and its communications with other consultants working at the direction of Chevron and its counsel. *See id*. Assuming Kroll worked on these issues or had contact with these consultants, these designations would require Kroll to testify to all attorney-client privileged communications and work-product generated by, for example, Kroll, other outside investigators, as well as Chevron's in-house and outside counsel. And, leaving no doubt that the Notice seeks privileged testimony, Subject No. 4, with the broadest language possible, requires Kroll to testify to all "[c]ommunications and dealings" with Chevron (including its attorneys) related to virtually every aspect of this litigation, regardless of privilege. Because the Notice improperly requires Kroll's corporate representative to testify to nearly every privileged communication or

---

[3]  Subject No. 3 also seeks information regarding any surveillance conducted by Kroll. As the Court ruled at the recent sanctions hearing, the issue of surveillance is irrelevant. *See* 4/16/13 Tr. at 94.

3

document ever received or created by Kroll related to its work on Chevron's behalf, it must be quashed.  *See* Ex. 3 (Chart of Improper Subjects).

**3.  The Notice is overbroad, unduly burdensome and designed to harass Kroll and Chevron.**  Courts "may prevent [a] proposed deposition when the facts and circumstances are such that it creates an inappropriate burden or hardship" that "outweighs its likely benefit."  *In re Subpoena Issued to Dennis Friedman,* 350 F.3d 65, 70 (2d Cir. 2003); Fed. R. Civ. P. 26(b)(2)(c)(iii).  The subjects listed in the Notice have no possible legitimate purpose, but instead use vague and overbroad descriptions designed to harass or annoy Kroll and Chevron by seeking testimony on patently privileged or irrelevant communications and matters.  *See* Ex. 1 at No. 3 (demanding Kroll prepare its representative for testimony regarding "[a]ll INVESTIGATION conducted by or on behalf of CHEVRON."), No. 7 (demanding information about compensation to Kroll), and No. 9 (demanding the location of all "electronically stored data" collected by Chevron or its contractors as part of any investigation by Kroll).[4]

"[F]ederal judges have not hesitated to issue protective orders when corporations are asked to respond to overly broad or unfocused Rule 30(b)(6) Notices."  *Krasney v. Nationwide Mut. Ins. Co.*, 2007 WL 4365677, at *3 (D. Conn. Dec. 11, 2007).  Given the significant burden on Kroll and Chevron and the negligible benefit or relevance of the sought-after testimony, particularly given that the deponent will properly assert privilege in response to the vast majority–if not all–of the questions posed, a protective order is appropriate.  *See In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir. 2003); *see also Herbert v. Lando*, 441 U.S. 153, 177 (1979) ("[T]he district courts should not neglect their power to restrict discovery" under Rule 26(c) and "should not hesitate to exercise appropriate control over the discovery process.").

For these reasons, the Court should issue a protective order striking the Notice in its entirety, or, in the alternative, limiting its scope to relevant, non-privileged topics.

---

[4]   Subject No. 3 does not appear to be restricted to the investigations in which Kroll was involved, but to all investigations conducted by or on behalf of Chevron.

| | |
|---|---|
| Dated: April 24, 2013<br>New York, New York | Respectfully submitted,<br>GIBSON, DUNN & CRUTCHER LLP<br><br>/s/ Randy M. Mastro<br>Randy M. Mastro<br>Andrea E. Neuman<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: 212.351.4000<br>Facsimile: 212.351.4035<br><br>William E. Thomson<br>333 South Grand Avenue<br>Los Angeles, California 90071<br>Telephone: 213.229.7000<br>Facsimile: 213.229.7520<br>Attorneys for Chevron Corporation |

### Index of Exhibits

Exhibit 1:   Defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje's Notice of Deposition of Kroll, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6)

Exhibit 2:   April 12, 2013 Letter from A. Neuman to L. Veselka

Exhibit 3:   Chart of Improper Subjects

5