UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEVRON CORPORATION,<br><br>             Plaintiff,<br><br>   v.<br><br>STEVEN DONZIGER, et al.,<br><br>             Defendants. | Case No. 11-CV-0691 (LAK) |

**DECLARATION OF JOHN W. KEKER IN SUPPORT OF KEKER & VAN NEST LLP'S MOTION BY ORDER TO SHOW CAUSE FOR AN ORDER PERMITTING IT TO WITHDRAW AS COUNSEL FOR DEFENDANTS STEVEN DONZIGER, THE LAW OFFICES OF STEVEN R. DONZIGER AND DONZIGER & ASSOCIATES, PLLC**

752937

I, JOHN W. KEKER hereby declare under penalty of perjury pursuant to 28 U.S.C. §1746, that the following is true and correct:

1.     I am a partner in the law firm of Keker & Van Nest LLP, counsel of record for Defendants Steven Donziger, The Law Offices of Steven R. Donziger, and Donziger & Associates, PLLC (collectively "Donziger") in the above-captioned matter.  I submit this Declaration in support of Keker & Van Nest's Motion by Order to Show Cause for an Order Permitting it to Withdraw as Counsel.  No prior application has been made for the relief sought herein.

2.     This action against Donziger was commenced on February 1, 2013.  Donziger retained Keker & Van Nest on February 17, 2011, and Keker & Van Nest has since that time represented Donziger in this action, 11-CV-0691 (LAK), and the *Chevron v. Salazar* "Count 9" action, 11-CV-3718 (LAK), as well as in related appellate and mandamus proceedings in the Court of Appeals for the Second Circuit.  *See Chevron v. Naranjo, et al.*, Docket Nos. 11-1150-cv(L); 11-1264-cv(CON).

3.     On March 7, 2011, this Court granted a Preliminary Injunction, Dkt. No. 181, from which Defendants appealed.  On April 15, 2011, this Court granted Chevron's Motion to Bifurcate Count 9 for a separate trial, Dkt. No. 278, and stayed discovery in the remainder of the action, Dkt. No. 279.  Five days later Chevron filed an amended complaint, Dkt. No. 283, which dropped Donziger from Count 9.  Donziger moved to intervene in the Count 9 action, and on May 31, 2011, the Court effectively denied Donziger's motion to intervene.  Dkt. No. 327.  The Court granted Donziger's motion to intervene for the limited purpose of cross examining witnesses or parties at deposition on issues relating to Donziger, and objecting to other discovery to the extent such discovery violates an evidentiary privilege personal to Donziger.  *Id*. at 15-16.

1

From late May 2011 until early 2012, Keker & Van Nest, therefore, continued to represent Donziger with respect to certain discovery proceedings in Count 9, as well as Donziger's appeal of the Court's preliminary injunction order.

4. On September 19, 2011, the Court of Appeals for the Second Circuit issued an order vacating the March 7, 2011 preliminary injunction, and staying the District Court proceeding. *Chevron v. Camacho et al.*, 11-1150 (2d Cir.), Dkt. No. 597. The Court of Appeals filed its Opinion on January 27, 2012. Dkt. No. 385. On February 16, 2012, this Court lifted the stay which had been entered on April 15, 2011, and active litigation of Claims 1-8 in this action re-commenced. Dkt. No. 389.

5. In the fourteen months since February 2012 when the stay was lifted, this case has been litigated at a feverish pace, which has increased at an exponential rate. A review of the docket sheet shows 81 entries for the first quarter of 2012; 43 entries for the second quarter of 2012; 81 entries for the third quarter of 2012; 114 entries for the fourth quarter of 2012; and 261 entries for the first quarter of 2013. April has yielded another 130 docket entries, plus a three day evidentiary hearing. Letters, discovery responses, meet and confer calls, and other non-docketed materials have all also followed the same trajectory of exponential increase. Now, with the addition of two special masters, there is the additional burden of responding to the Special Master's various letters, orders, and emails.

6. Chevron served over 210 document requests to Donziger, many with subparts, as well as dozens of pages of interrogatories and 1,228 requests for admission, many with multiple subparts. Our firm has spent thousands of hours dealing with Chevron's seemingly limitless discovery demands.

7. On March 1, 2013, counsel for Defendants Camacho and Payaguaje and Donziger sent the Court a letter, attached as **Exhibit A**, asking the Court to control and manage this litigation. The Court never responded. On March 28, 2013, defense counsel sent a letter to Court advising that our clients could not pay the Special Masters. A copy of this letter, and the Court's response to it as Dkt. No. 999, is attached as **Exhibit B**. On April 9, my partner Jan Little advised Judge Katz's assistant that defendants would not be able to pay any bills submitted by the Special Masters. A copy of this email is attached as **Exhibit C**. On April 23, I wrote to Judge Katz and advised him that Mr. Donziger would not be able to pay his bills. A copy of my letter and the cover email is attached as **Exhibit D**.

8. Without waiving any attorney-client privilege, I advise that Keker & Van Nest's retainer agreement with Donziger imposes a straight hourly rate billing structure. There is no contingency or bonus feature.

9. Without waiving any attorney client privilege or attorney work product protections, I advise that Donziger kept largely current with paying fees for the first eighteen months of Keker & Van Nest's representation of him. However, by September 2012, he was no longer able to keep current. Since September 2012, Keker & Van Nest has had an outstanding receivable from Donziger. Notwithstanding some partial payments made during the last six months, our firm's receivable has grown steadily since the fall of 2012, and now exceeds $1.4 million dollars. This is so despite a contractual fee agreement calling for payment of all invoices with 15 days of receipt, and despite repeated requests by Keker & Van Nest to Donziger for payment of fees and costs. Furthermore, this is despite the fact that Keker & Van Nest has made numerous attempts to obtain payment from Donziger, and has made clear to Donziger that his

failure to make the requested payment could result in the firm making a motion to withdraw as attorney to him in this case.

10. I estimate that to litigate against Chevron through discovery, motions, pretrial proceedings and trial will cost between six and ten million dollars in attorney time for lawyers in this firm, and for costs. That estimate is conservative, based on billing rates Mr. Donziger is contractually obligated to pay. It is a small portion of what Chevron will pay its lawyers at Gibson Dunn & Crutcher during the same period, which I estimate to be $5-10 million a month. That estimate is based on the number of Gibson Dunn & Crutcher lawyers working full time on this case, and the fact that at last week's hearing before Judge Kaplan there were always 25-30 Chevron or Gibson Dunn & Crutcher lawyers or paralegals in the courtroom.

11. Without waiving any attorney client privilege, I advise that I am unaware of any current prospect for recovering this outstanding receivable of over one million dollars, including for work presently being conducted, nor for receiving substantial payment of any future fees and costs that would be incurred if Keker & Van Nest were to continue on as counsel.

12. Written discovery has been completed, but few depositions have yet been taken in this case. Depositions are in the process of beginning now. Discovery is set to close on May 31, 2013. Dkt. 494. Trial is set for October 15, 2013.

13. Pursuant to this Court's March 15, 2013 Rule 16 Order, the parties can depose up to 42 fact witnesses, and these depositions will take place all over the United States and abroad, including several in Lima, Peru. Dkt. No. 910. Chevron's recent correspondence to Defendants and Special Masters Judge Katz and Max Gitter demonstrates that it intends to engage in extensive motion practice regarding many of these depositions. *See* Parties' April 5, 2013 joint submission to Special Masters, at 2. (Attached hereto as **Exhibit E** is a true and correct copy of

752937

the parties' April 5, 2013 Joint Submission to Special Masters). Furthermore, the parties have the right to appeal any rulings made by the Special Master at the deposition to the Court within forty-eight hours after the deposition, which will likely result in substantial additional motion practice. Dkt. No. 942, at 2-3.

14. Without waiving any attorney client privilege or attorney work product protection, I advise that I have discussed the motion to withdraw with Mr. Donziger. He does not at this time have substitute counsel and, given his funding limitations, is not optimistic about being able to engage substitute counsel. He will represent himself and his law firms during the remainder of the pretrial stage of this case, with the hopes of either securing new outside counsel or re-engaging our firm to participate in the October trial.

15. On February 1, 2013, Chevron announced that its profits for 2012 were $26.2 billion, and it ended the year with $21.9 billion in cash. A copy of Chevron's press release is attached as **Exhibit F**.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 3rd day of May in San Francisco, California.

*/s/ John W. Keker*
JOHN W. KEKER

5

752937