UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEVRON CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> STEVEN DONZIGER, et al., <br><br> Defendants. | Case No. 11-CV-0691 (LAK) |

**MEMORANDUM OF LAW IN SUPPORT OF KEKER & VAN NEST LLP'S MOTION TO WITHDRAW AS COUNSEL FOR DEFENDANTS STEVEN DONZIGER, THE LAW OFFICES OF STEVEN R. DONZIGER AND DONZIGER & ASSOCIATES, PLLC**

753508

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. DONZIGER IS NOT ABLE TO PAY HIS COUNSEL ......................................................4

III. ARGUMENT..........................................................................................................................5

    A. Donziger's failure to pay Keker & Van Nest's fees and costs justifies granting leave to withdraw.................................................................................6

    B. Withdrawing at this stage of the litigation would not unduly disrupt the existing case schedule. ...........................................................................................9

    C. Donziger is prepared to represent himself and his law firms in this matter. .........10

IV. CONCLUSION....................................................................................................................11

753508

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Blue Angel Films, Ltd. v. First Look Studios, Inc.*
 No. 08 Civ. 6469 (DAB)(JCF), 2011 WL 672245 (S.D.N.Y. Feb. 17, 2011) ................... 6, 7, 9

*Centrifugal Force, Inc. v. SoftNet Commc'n, Inc.*
 No. 08 Civ. 5463(CM)(GWG), 2009 WL 969925 (S.D.N.Y. Apr. 6, 2009) ............................ 6

*Cower v. Albany Law Sch. Of Union Univ.*
 No. 04 Civ. 0643 (DAB), 2005 WL 1606057 (S.D.N.Y. Jul. 8, 2005) ................................ 7, 9

*D.E.A.R. Cinestudi S.P.A. v. Int'l Media Films, Inc.*
 No. 03 Civ. 3038 (RMB), 2006 WL 1676485 (S.D.N.Y. Jun. 16, 2006) ............................ 6, 9

*Diarama Trading Co. In. v. J. Walter Thompson U.S.A. Inc.*
 No 01 Civ. 2950 (DAB), 2005 WL 1963945 (S.D.N.Y. Aug 15, 2005) .................................. 7

*Faretta v. California*
 422 U.S. 806 (1975) ............................................................................................................. 10

*Furlow v. City of New York*
 No. 90 Civ. 3956 (PKL), 1993 WL 88260 (S.D.N.Y. Mar. 22, 1993) .................................. 10

*HCC, Inc. v. RH & M Mach. Co.*
 No. 96 Civ. 4920 (PKL), 1998 WL 411313 (S.D.N.Y. Jul. 20, 1998) .................................... 7

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*
 No 95 Civ. 2144 (JGK), 1997 WL 109511 (S.D.N.Y Mar. 11, 1997), *reversed on other grounds by* 140 F.3d 442 (2d Cir. 1998) ..................................................................... 7

*Jacobsen v. Filler*
 790 F.2d. 1362 (9th Cir. 1985) ............................................................................................. 10

*Karimian v. Time Equities, Inc.*
 No. 10 Civ. 3773 (AKH) (JCF), 2011 WL 1900092 (S.D.N.Y. May 11, 2011) ..................... 9

*Melnick v. Press*
 No. 06-cv-6686 (JFB)(ARL), 2009 WL 2824586 (E.D.N.Y. Aug. 28, 2009) ......................... 6

*Police Officers for a Proper Promotional Process v. Port Auth. of New York and New Jersey*
 No. 11 Civ. 7478 (LTS)(JCF), 2012 WL 4841849 (S.D.N.Y. Oct. 10, 2012) ......................... 6

*Promotica of America, Inc. v. Johnson Grossfield, Inc.*
 No. 98 CIV. 7414, 2000 WL 424184 (S.D.N.Y. Apr. 18, 2000) ........................................... 10

*Spadola v. New York City Trans. Auth.*
 No. 00 CIV 3262, 2002 WL 59423 (S.D.N.Y. Jan. 16, 2002) ................................................ 9

*Team Obsolete Ltd. V. A.H.R.M.A. Ltd.*
 464 F.Supp.2d 164 (E.D.N.Y. 2006) ...................................................................................... 6

*Winkfield v. Kirschenbaum & Phillips, P.C.*
   No. 12 Civ. 7424 (JMF), 2013 WL 371673 (S.D.N.Y. Jan. 29, 2013) ...................................... 9

**Federal Statutes**

28 U.S.C. § 1654 ............................................................................................................................ 10

**Federal Rules**

Fed. R. Civ. Proc. § 1 ..................................................................................................................... 4

**Other Authorities**

Chevron's Expensive Problems, *Forbes Magazine*, March 4, 2013 ............................................... 8

Cynthia Gray, *Judicial Ethics and Self Represented Litigants*, American Judicature
   Society (2005) ........................................................................................................................ 10

Reversal of Fortune, *New Yorker*, January 9, 2012 ....................................................................... 8

Pursuant to Southern District of New York Local Civil Rule 1.4, Keker & Van Nest LLP ("Keker & Van Nest") submits this memorandum of law in support of its Motion to Withdraw as Counsel for Defendants Steven Donziger, The Law Offices of Steven R. Donziger, and Donziger & Associates, PLLC (collectively, "Donziger"), on the grounds of non-payment of fees.

## I.     INTRODUCTION

It is with regret that undersigned counsel is forced to make this motion to withdraw. This is an extraordinary case, which has degenerated into a Dickensian farce. Through scorched-earth litigation, executed by its army of hundreds of lawyers, Chevron is using its limitless resources to crush defendants and win this case through might rather than merit. There is no sign that Chevron wants a trial on the merits. Instead, it will continue its endless drumbeat of motions—for summary judgment,[1] for attachment,[2] to reinstate long-dismissed claims,[3] for penetration of the attorney client privilege,[4] for contempt and case-ending sanctions,[5] to compel discovery already denied or deemed moot,[6] etc., etc.—to have the case resolved in its favor without a trial. Encouraged by this Court's implacable hostility to Donziger, Chevron will file any motion, however meritless, in the hope that the Court will use it to hurt Donziger. Donziger does not have the resources to defend against Chevron's motion strategy, and his counsel should not be made to work for free to resist it.

In the fourteen months since the stay was lifted in February 2012, this case has been litigated at a feverish pace, which has increased at an exponential rate. The docket sheet shows

---

[1] *See, e.g.,* Dkt. Nos. 396, 483, 583, 744.
[2] *See, e.g.,* Dkt. Nos. 353, 404.
[3] *See* Dkt. No. 782.
[4] *See, e.g.,* Dkt. Nos. 475, 562, 656, 850, 1031.
[5] *See* Dkt. No. 893
[6] *See, e.g.,* Dkt. Nos. 1018, 1074.

753508

81 entries for the first quarter of 2012; 43 entries for the second quarter of 2012; 81 entries for the third quarter of 2012; 114 entries for the fourth quarter of 2012; and 261 entries for the first quarter of 2013.  April has yielded another 130 docket entries, plus a three day evidentiary hearing.  Letters, emails, discovery responses, meet and confer calls, and other non-docketed materials have all followed the same trajectory of relentless increase.  Chevron served over 210 document requests to Donziger, many with subparts, as well as dozens of pages of interrogatories, and 1,228 requests for admissions, many with multiple subparts.  Donziger's counsel has spent thousands of hours in recent months dealing with Chevron's seemingly limitless discovery demands.  Now, with the addition of two special masters and their associate and assistants, there is the additional burden of responding to their various letters, orders and emails.  Keker Decl. ¶¶ 5 & 6.[7]

     Defense counsel has sought the Court's intervention to control and manage what has become unmanageable.  *See* Keker Decl., Ex. A (March 1, 2013 letter to Judge Kaplan).  The Court did not respond to this letter and indeed, in the weeks since March 1, has made matters worse by consistently and cumulatively increasing the litigation burden on defendants:  allowing dozens of fact depositions to occur from Park Avenue to Peru;[8] ordering over objection the appointment of two very expensive special masters with burdensome procedural requirements;[9] ordering a three-day evidentiary hearing in New York on a Chevron motion seeking sanctions because an Ecuadorian went to court in Ecuador to clarify his Ecuadorian attorneys' responsibilities under Ecuadorian law;[10] threatening defense counsel that they were to "proceed

---

[7] "Keker Decl." refers to the Declaration of John W. Keker, filed concurrently herewith.
[8] Dkt. Nos, 882, 910, 941.
[9] Dkt. No. 942.
[10] Dkt. No. 997.

at their own risk" and "at their peril" when they wrote to the court and special masters that Donziger could not pay his lawyers, much less the exorbitant fees of the special masters;[11] forcing Donziger's counsel to spend hundreds of thousands of dollars on attorney time responding to a motion for summary judgment, which counsel begged to be put off until after discovery closed,[12] only to rule on the motion by announcing that it was denied without prejudice until after discovery closed, and could be reinstated later;[13] and ordering not one seven-hour day, but three days of depositions (on top of 16 previous days of deposition) of Donziger.[14]

      This Court's hostility towards Donziger, already the subject of a motion to recuse and currently the subject of a pending mandamus proceeding, has in recent weeks become even more pronounced. When Chevron complains about defense counsel's possible role in an Ecuadorian lawyer seeking an order from an Ecuadorian court, the Court responded by ordering a three-day evidentiary hearing in New York, but when defense counsel complained about Chevron making blatantly false statements, the Court responded by accusing defense counsel of "bickering" and "venting of [counsel's] spleen."[15] During the recent evidentiary hearing, and in its order demanding Donziger's presence at a deposition for three days, the Court has made plain that its mind is made up, and its hostility toward Donziger is implacable.

      Chevron's litigation tactics, which this Court has endorsed and encouraged throughout these proceedings, notwithstanding the dictates of Federal Rule of Civil Procedure 1, have made the costs of this litigation unsustainable to Donziger. Simply put, Donziger cannot afford to pay

---

[11] Dkt. No. 999, 1055.
[12] Dkt. No. 780.
[13] Dkt. No. 1063.
[14] Dkt. No. 1060.
[15] *See* Dkt. No. 1055.

753508

what is required to litigate effectively against a hostile wealthy corporation in a hostile court. As set forth in the accompanying Declaration of John W. Keker, Donziger has since September 2012 fallen into significant payment arrears such that Keker & Van Nest is now owed more than $1.4 million in unpaid fees and costs, including for work presently being conducted. Keker Decl. ¶ 9. More significantly, to even stay alive in this case, without appearing at depositions or other frills, through discovery and trial will cost another six to ten million dollars in attorney time and costs—an amount about equal to what we estimate Chevron is paying its lawyers each month. *See id.* ¶ 10. There is no reasonable prospect of payment of the current receivable, nor of payment of the future fees and costs anticipated to be incurred through trial. *See id.* ¶ 11.

Keker & Van Nest therefore seeks to withdraw as counsel. Mr. Donziger will represent himself and his law firms for the remainder of the pretrial phase of this case. If he is able to hire (or re-hire) outside counsel for trial, he will do so. But for now, his counsel is unwilling to continue on a *pro bono* basis under the current conditions, and should not be made a slave to this impossible situation.

## II.     DONZIGER IS NOT ABLE TO PAY HIS COUNSEL

Keker & Van Nest's retainer agreement with Donziger imposes a straight hourly rate billing structure. There is no contingency or bonus feature. Keker Decl. ¶ 8. During the course of Keker & Van Nest's representation of Donziger in this litigation, Keker & Van Nest has performed a substantial amount of work in connection with the pleading and discovery phases of this action. Donziger kept largely current with paying Keker & Van Nest's billed fees and costs for the first year and a half of Keker & Van Nest's representation of him. However, by September 2012, Donziger was no longer able to keep current. *See id.* ¶ 9.

Since September 2012, Donziger has owed Keker & Van Nest for fees and costs. Keker Decl. ¶ 9. Notwithstanding some partial payments made during the last six months, Keker &

4

Van Nest's receivable has grown steadily since last Fall, and now exceeds $1.4 million dollars, including for work being performed currently. *Id*. This is so despite a contractual fee agreement calling for payment of all invoices within 15 days of receipt, and despite repeated requests by Keker & Van Nest to Donziger for payment of its fees and costs. *Id*.

There is no reasonable prospect of Keker & Van Nest's recovery of its current outstanding receivable of over one million dollars, nor of receiving substantial payment for future fees and costs that would be incurred if Keker & Van Nest were to continue on as counsel. Keker Decl. ¶ 11.

As the Court is aware, written discovery has been completed, but few depositions have yet been taken in this case. Keker Decl. ¶ 12. Depositions are in the process of beginning now. *Id*. Discovery currently is set to close on May 31, 2013. Dkt. No. 494. Trial is set for October 15, 2013. Dkt. No. 606

## III. ARGUMENT

Under Local Civil Rule 1.4 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York:

> An attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the court and may not withdraw from a case without leave of the Court granted by order. Such an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar.

Accordingly, "[w]hen considering whether to grant a motion to dismiss, district courts must thus analyze two factors: the reasons for withdrawal and the impact of the withdrawal on the timing of the proceeding." *Blue Angel Films, Ltd. v. First Look Studios, Inc.*, No. 08 Civ. 6469 (DAB)(JCF), 2011 WL 672245, at *1 (S.D.N.Y. Feb. 17, 2011).

5

753508

### A. Donziger's failure to pay Keker & Van Nest's fees and costs justifies granting leave to withdraw.

Donziger's failure to pay legal fees in accordance with contractual arrangements warrants an order from this Court granting Keker & Van Nest leave to withdraw as counsel. *See* Local Civil Rule 1.4; *Police Officers for a Proper Promotional Process v. Port Auth. of New York and New Jersey*, No. 11 Civ. 7478 (LTS)(JCF), 2012 WL 4841849, at *1 (S.D.N.Y. Oct. 10, 2012) (citation omitted) ("it is well-settled in the Eastern and Southern Districts of New York that non-payment of legal fees is a valid basis for granting a motion to withdraw pursuant to Local Civil Rule 1.4."); *Centrifugal Force, Inc. v. SoftNet Commc'n, Inc.*, No. 08 Civ. 5463(CM)(GWG), 2009 WL 969925, at *2 (S.D.N.Y. Apr. 6, 2009) ("Attorneys are not required to represent clients without remuneration, and the failure to pay invoices over an extended period is widely recognized as grounds for leave to withdraw."). "It is well-settled in the Eastern and Southern Districts of New York that non-payment of legal fees is a valid basis for granting a motion to withdraw pursuant to Local Civil Rule 1.4." *Melnick v. Press*, No. 06-cv-6686 (JFB)(ARL), 2009 WL 2824586, at *3 (E.D.N.Y. Aug. 28, 2009); *Team Obsolete Ltd. V. A.H.R.M.A. Ltd.*, 464 F.Supp.2d 164, 166 (E.D.N.Y. 2006) ("Courts have long recognized that a client's continued refusal to pay legal fees constitutes a 'satisfactory reason' for withdrawal under Local Rule 1.4"); *D.E.A.R. Cinestudi S.P.A. v. Int'l Media Films, Inc.*, No. 03 Civ. 3038 (RMB), 2006 WL 1676485, at *1 (S.D.N.Y. Jun. 16, 2006) ("It is well-settled that nonpayment of fees is a valid basis for the Court to grant counsel's motion to withdraw." (citation omitted)).

More specifically, applying Second Circuit law, courts in the Southern and Eastern districts have reiterated that non-payment of fees constitutes a "satisfactory reason" under Local Civil Rule 1.4 supporting an order granting withdrawal. According to these courts, "[a]lthough there is no clear standard for what may be considered a 'satisfactory reason' for allowing a

withdrawal, it seems evident that the non-payment of legal fees constitutes such a reason." *Blue Angel Films,* 2011 WL 672245, at *1 (citation omitted); *Diarama Trading Co. In. v. J. Walter Thompson U.S.A. Inc.*, No 01 Civ. 2950 (DAB), 2005 WL 1963945 at *1 (S.D.N.Y. Aug 15, 2005) ("'Satisfactory reasons' include failure to pay legal fees."); *Cower v. Albany Law Sch. Of Union Univ.*, No. 04 Civ. 0643 (DAB), 2005 WL 1606057, at *5 (S.D.N.Y. Jul. 8, 2005) ("It is well settled that nonpayment of fees is a legitimate ground for granting counsel's motion to withdraw").  Accordingly, these courts conclude that "[c]ourts have uniformly granted motions to withdraw when attorneys allege non-payment of fees by their clients." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, No 95 Civ. 2144 (JGK), 1997 WL 109511, at *2 (S.D.N.Y Mar. 11, 1997), *reversed on other grounds by* 140 F.3d 442 (2d Cir. 1998).

In addition, courts in this district repeatedly have held that counsel should not be compelled to represent a client *pro bono*.  *See, e.g., Cower*, 2005 WL 1606057, at *5 ("The Court cannot force Plaintiff's counsel to proceed *pro bono*."); *HCC, Inc. v. RH & M Mach. Co.*, No. 96 Civ. 4920 (PKL), 1998 WL 411313, at *1 (S.D.N.Y. Jul. 20, 1998) (granting withdrawal and stating that it would not "impose on counsel an obligation to continue representing [corporate] defendants pro bono").

Donziger currently owes over $1.4 million dollars in fees and costs to Keker & Van Nest for work performed in this case.  Keker Decl. ¶ 9.  Although Donziger has made minimal partial payments during the last six months, they are far below the amount billed for fees and costs, causing Keker & Van Nest's account receivable to balloon.  *Id*.  Despite extensive efforts to work with Donziger to resolve this situation, there is no workable plan to pay Keker & Van Nest the fees that Donziger already owes, or fees that will be incurred in the future.  *Id*. ¶11.  And given the recent pace of this litigation, Keker & Van Nest anticipates that it will cost millions of

7

dollars to finish discovery, to prepare the case for trial, and to defend Donziger at trial. *Id*. ¶ 10.

Regarding discovery, deposition costs alone will be substantial, if Donziger could afford to have his attorneys participate. Pursuant to this Court's March 15, 2013 Rule 16 Order, the parties can depose up to 42 fact witnesses, and these depositions will take place all over the United States and abroad, including in New York, San Francisco, Denver, Houston, Washington, DC, and Lima, Peru. Keker Decl. ¶ 13; Dkt. No. 910. We expect extensive motion practice regarding these depositions, including briefing concerning unresolved privilege issues and to preclude Defendants from deposing certain of Chevron's employees and agents. Keker Decl. ¶13; Ex. E at 2; *see also, e.g.,* Dkt. Nos. 1065, 1067, 1069. Furthermore, the parties have the right to appeal any rulings made by the Special Master at the deposition to the Court within forty-eight hours after the deposition, which will likely result in substantial additional motion practice. Dkt. No. 942, at 2-3. Expert discovery and depositions will impose grievous additional costs, especially given that Chevron has disclosed more than three dozen experts, and the Court so far has declined to require Chevron to reduce the number of experts . Dkt. No. 1052.

There is no reason to think that Chevron's fusillade of motions, correspondence, and various other demands will diminish as the case approaches trial; Chevron made clear years ago that it intends to "fight until hell freezes over" and then "fight it out on ice[.]"[16] Its CEO John Watson said in February 2013, when asked when the litigation will end, "the short answer is it will end when the … lawyers give up."[17] Before depositions even began, Chevron already filed three separate partial summary judgment motions, two motions for attachment, and a motion for terminating sanctions, and innumerable discovery and procedural motions. Keker & Van Nest

---

[16] January 9, 2012, Reversal of Fortune, *New Yorker*, available at: http://www.newyorker.com/reporting/2012/01/09/120109fa_fact_keefe

[17] Chevron's Expensive Problems, *Forbes Magazine*, March 4, 2013 issue, http://www.forbes.com/sites/christopherhelman/2013/02/13/chevrons-expensive-problems/.

estimates that it will cost between six and ten million dollars to litigate this case through trial. This estimate is probably conservative given the litigation tactics that Chevron (and its counsel Gibson Dunn) has employed to date. Keker Decl. ¶ 10.

With revenues in the billions of dollars,[18] Chevron can afford to litigate this case "until hell freezes over." But Donziger can't, and his counsel cannot continue to defend him going forward with no realistic prospect of payment for its efforts. "The Court cannot force [Keker & Van Nest] to proceed *pro bono*." *Cower*, 2005 WL 1606057, at *5.

### B. Withdrawing at this stage of the litigation would not unduly disrupt the existing case schedule.

Where discovery has not yet closed and a case is not "on the verge of trial readiness," withdrawal of counsel is unlikely to cause either prejudice to the client or such substantial disruption to the proceedings as to warrant a denial of leave to withdraw. *Winkfield v. Kirschenbaum & Phillips, P.C.*, No. 12 Civ. 7424 (JMF), 2013 WL 371673, at *1 (S.D.N.Y. Jan. 29, 2013) (quoting *Blue Angel Films*, 2011 WL 672245, at *2); *accord Karimian v. Time Equities, Inc.*, No. 10 Civ. 3773 (AKH) (JCF), 2011 WL 1900092, at *3 (S.D.N.Y. May 11, 2011).

Indeed, courts frequently grant motions to withdraw as counsel at equivalent, or even later, stages of litigation. *See, e.g., D.E.A.R. Cinestudi*, 2006 WL 1676485, at *1-2 (granting counsel's motion to withdraw due to lack of payment of fees where discovery was complete and trial was months away); *Spadola v. New York City Trans. Auth.*, No. 00 CIV 3262, 2002 WL 59423, at *1 (S.D.N.Y. Jan. 16, 2002) (allowing counsel to withdraw where discovery had been completed and client had not paid outstanding legal fees because client "would not be unduly

---

[18] Chevron's profits for 2012 exceeded $26 billion, and they ended the year with $21.9 billion cash on hand. Keker Decl. ¶ 15; Ex. F.

9

753508

prejudiced by his counsel's withdrawal at this stage of litigation."); *Promotica of America, Inc. v. Johnson Grossfield, Inc.*, No. 98 CIV. 7414, 2000 WL 424184, at *1-2 (S.D.N.Y. Apr. 18, 2000) (granting motion to withdraw where discovery was closed and case was ready for trial); *Cf. Furlow v. City of New York*, No. 90 Civ. 3956 (PKL), 1993 WL 88260, at *2 (S.D.N.Y. Mar. 22, 1993) (where document discovery was complete but depositions had not been taken, withdrawal permissible because "this action is not trial ready and resolution of this matter will not be delayed substantially by counsel's withdrawal at this juncture").

        **C.**      **Donziger is prepared to represent himself and his law firms in this matter.**

At the present time, Donziger does not have substitute outside counsel. And, given his inability to fund his current counsel, he is not likely to be successful in finding substitute outside counsel. Accordingly, Donziger intends to represent himself and his law firms during the remainder of the pretrial stage of this case, with hopes of either securing new counsel, or re-engaging his present counsel, for the trial.

As courts have recognized, "[a] litigant's unrepresented status is often 'not the product of choice,' but 'the result of necessity and economic reality'." Cynthia Gray, *Judicial Ethics and Self Represented Litigants*, American Judicature Society (2005), at p. 11 (quoting *Jacobsen v. Filler*, 790 F.2d. 1362, 1367-68 (9th Cir. 1985) (Reinhardt, dissenting)). The right of self-representation is as old as the Judiciary Act of 1789, is codified in the United States Code at 28 U.S.C. § 1654, and has been affirmed by the Supreme Court, *Faretta v. California*, 422 U.S. 806, 812-13 (1975). For Donziger, it is not only a right but a necessity.

If Donziger is able to secure outside counsel to represent him at trial he will do so, whether by re-engaging Keker & Van Nest, or by hiring other trial counsel. But for now, he is not paying his current counsel, his contractual obligations to counsel are being disregarded, and his counsel Keker & Van Nest is no longer willing or able to represent him under these

10

circumstances.

## IV.     CONCLUSION

For all the foregoing reasons, Keker & Van Nest respectfully requests that the Court enter an order permitting Keker & Van Nest to withdraw from its representation of Donziger in this action, and allowing him represent himself and his law firms in this action.

Respectfully submitted,

KEKER & VAN NEST LLP

Dated:  May 6, 2013

By:     */s/ John W. Keker*
          JOHN W. KEKER (*pro hac vice*)
          ELLIOT R. PETERS
          JAN NIELSEN LITTLE (*pro hac vice*)
          MATTHEW M. WERDEGAR (*pro hac vice*)
          633 Battery Street
          San Francisco, CA  94111-1809
          Telephone: (415) 391-5400
          Facsimile:    (415) 397-7188
          Email:         jkeker@kvn.com
          Email:         epeters@kvn.com
          Email:         jlittle@kvn.com
          Email:         mwerdegar@kvn.com

          Attorneys for STEVEN DONZIGER, THE LAW
          OFFICES OF STEVEN R. DONZIGER AND
          DONZIGER & ASSOCIATES, PLLC