```
UNITED STATES DISTRICT COURT                    (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
CHEVRON CORPORATION,                    :   11 Civ. 0691 (LAK) (JCF)
                                        :
                Plaintiff,              :
                                        :
                                        :       MEMORANDUM
        - against -                     :       AND   ORDER
                                        :
```

| USDS SDNY |
|---|
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: 5/7/13 |

```
STEVEN DONZIGER, et al.,                :
                                        :
                Defendants.             :
- - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

This case arises out of a multi-billion dollar judgment obtained in Ecuador against Chevron Corporation ("Chevron") based on claims of environmental destruction caused by the activities of Texaco, Inc. prior to its merger into Chevron.[1]  In this action, Chevron contends that the plaintiffs in the Ecuadorian litigation, along with their attorneys and consultants, procured the judgment through fraud, including the fabrication of evidence.[2]  During the course of discovery, the defendants have noticed the depositions of

---

[1] A fuller picture of the factual and legal background of this controversy may be gleaned from the numerous opinions issued in this litigation and related cases.  See,, e.g., Chevron Corp. v. Naranjo, 667 F.3d 232 (2d Cir.), cert. denied, 133 S. Ct. 423 (2012); Chevron Corp. v. Donziger, 871 F. Supp. 2d 229 (S.D.N.Y. 2012); In re Chevron Corp., 709 F. Supp. 2d 283 (S.D.N.Y. 2010), aff'd sub nom. Chevron Corp. v. Berlinger, 629 F.3d 297 (2d Cir. 2011); In re Chevron Corp., 736 F. Supp. 2d 773 (S.D.N.Y. 2010).

[2] The defendants asserted counterclaims, and a report and recommendation recommending that the counterclaims be dismissed is currently pending before the Court.

1

John S. Watson, Chevron's Chairman and Chief Executive Officer;
Edward B. Scott II, Vice President and General Counsel of Chevron's
Global Upstream and Gas Group; and Kroll, Inc., an investigative
and risk management company that Chevron retained in connection
with the various related litigations.   Chevron has now moved to
quash the depositions.   I will address each proposed deponent in
turn.

Mr. Watson

    Because of the possibility of business disruption and the
potential for harassment, courts give special scrutiny to requests
to depose high-ranking corporate and governmental officials, who
are sometimes referred to as "apex witnesses."   See Alliance
Industries, Inc. v. Longyear Holding, Inc., No. 08CV490S, 2010 WL
4323071, at *4 (W.D.N.Y. March 10, 2010); In re Ski Train Fire of
Nov. 11, 2000 Kaprun, Austria, No. MDL 1428, 2006 WL 1328259, at
*10 (S.D.N.Y. May 16, 2006) ("Courts disfavor requiring the
depositions of senior executives unless they have personal
knowledge of relevant facts or some unique knowledge that is
relevant to the action."); Treppel v. Biovail Corp., No. 03 Civ.
3002, 2006 WL 468314, at *1-2 (S.D.N.Y. Feb. 28, 2006).   However,
senior executives are not exempt from deposition, and, because
principles relating to apex witnesses are in tension with the broad
availability of discovery, see, e.g., In re Deposition Subpoenas of

<u>David Garlock</u>, 463 F. Supp. 2d 478, 481 (S.D.N.Y. 2006) ("We begin with the proposition that plaintiffs have no burden to show that the deponents have any relevant knowledge."); <u>Naftchi v. New York University Medical Center</u>, 172 F.R.D. 130, 132 (S.D.N.Y. 1997) ("[I]t is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition. Nor, in ordinary circumstances, does it matter that the proposed witness is a busy person or professes lack of knowledge of the matters at issue, as the party seeking discovery is entitled to test the asserted lack of knowledge." (internal citations omitted)), it is important to excuse a witness from giving testimony only in compelling circumstances.

On balance, the relevant considerations here do not favor precluding the deposition of Mr. Watson. To be sure, the rancorous history of this litigation lends credibility to Chevron's concern that the deposition has been noticed for purposes of harassment. On the other hand, there is little doubt that Mr. Watson has relevant knowledge. As Chief Executive Officer, he has, of course, monitored litigation that creates potential liability for Chevron in the tens of billions of dollars. (Declaration of John S. Watson dated April 24, 2013, ¶ 6). Furthermore, according to his corporate biography, Mr. Watson previously "led the company's integration effort following the Chevron-Texaco merger," experience

likely to have given him personal knowledge of the environmental issues underlying the Ecuador litigation. (Corporate Biography of John S. Watson, attached as Exh. A to Defendants' Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje's Opposition to Chevron's Motions for Protective Orders and to Quash Defendants' Notices of Depositions of John Watson and Edward Scott, Dkts. 1065, 1067). The extent to which Mr. Watson's knowledge of relevant matters is unique is not clear, and the defendants have yet to take the deposition of Chevron pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. Under other circumstance, it might be prudent to defer Mr. Watson's deposition until it could be determined whether his testimony would likely be redundant to that of other witnesses. See Treppel, 2006 WL 468314, at *2. Here, however, we do not have that luxury, as discovery is to be completed by the end of this month. Finally, this is far from a trivial case. Enough is at stake to justify the deposition of an apex witness like Mr. Watson. Chevron's motion to quash his deposition is therefore denied.

Mr. Scott

Chevron seeks to preclude the deposition of Mr. Scott on the basis that he, like Mr. Watson, is an apex witness who lacks information that is both relevant and unique. Chevron also argues that a deposition of Mr. Scott would necessarily invade the

4

attorney-client privilege and the protection afforded attorney work product.    I need not decide whether Mr. Scott's position in Chevron's hierarchy qualifies him as an apex witness; even if it does, the defendants would be entitled to take his deposition for the reasons discussed with respect to Mr. Waters.

Of course, the defendants may not pursue information that is privileged or is subject to work product protection.  It cannot be assumed, however, that the only relevant information Mr. Scott possesses is privileged.  The defendants have the right to develop the record by seeking Mr. Scott's knowledge and, where an objection is lodged, asking the questions that will help determine whether the privilege is properly asserted.  <u>See New York v. National Railroad Passenger Corp.</u>, 04-CV-962, 2007 WL 4377721, at *3 (N.D.N.Y. Dec. 12, 2007); <u>New York v. Oneida Indian Nation of New York</u>, No. 95-CV-554, 2001 WL 1708804, at *5 (N.D.N.Y. Nov. 9, 2001); <u>Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.</u>, No. 95 Civ. 8833, 1998 WL 2829, at *5 (S.D.N.Y. Jan. 6, 1998) ("[A party] may not preclude entire areas from deposition questioning on the basis of generalized assertions of privilege.").  Chevron's motion to preclude Mr. Scott's deposition is also denied.

<u>Kroll</u>

Finally, Chevron argues that the deposition of Kroll, an investigative agency working with counsel, should be quashed.  "But

there is no private-investigator's privilege," <u>United States</u>
<u>Department of Education v. National Collegiate Athletic</u>
<u>Association</u>, 481 F.3d 936, 938 (7th Cir. 2007), and a determination
of the applicability of the attorney-client privilege and the work
product doctrine requires analysis of specific disputed materials
and communications.  Indeed, Chevron itself acknowledges that not
all of Kroll's work may be exempt from disclosure.  (Plaintiff
Chevron Corporation's Motion for a Protective Order to Strike the
Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) to Kroll,
Inc. at 1 ("<u>[A]ll but a few</u> of the communications and materials
that Kroll created, used, and exchanged with Chevron (and its
counsel) in connection with its work on Chevron's behalf are
subject to attorney-client and work-product protections." (emphasis
added)).

Under some circumstances, communications to or from a lawyer's
agent may be privileged just as if they were communications with
the lawyer.  <u>United States v. Kovel</u>, 296 F.2d 918, 921-22 (2d Cir.
1961).  This is commonly the case where the agent acts as a
"translator," analyzing and interpreting technical information in
order to facilitate the attorney's provision of legal advice.  <u>Id.</u>
at 921; <u>accord</u> <u>Federal Trade Commission v. TRW, Inc.</u>, 628 F.2d 207,
212 (D.C. Cir. 1980); <u>AVX Corp. v. Horry Land Co.</u>, No. 4:07-cv-
3299, 2010 WL 4884903, at *8 (D.S.C. Nov. 24, 2010).  Some courts

6

have construed <u>Kovel</u> broadly, applying it to factual investigations
conducted by an attorney's agent.  <u>See, e.g. Gucci America, Inc. v.
Guess?, Inc.</u>, 271 F.R.D. 58, 71 (S.D.N.Y. 2010).  Others have
limited its application to circumstances where communications with
the agent were necessary to improve the comprehension of the
communications between attorney and client.  <u>United States v.
Ackert</u>, 169 F.3d 136, 139 (2d Cir. 1999) ("[T]he privilege protects
communications between a client and an attorney, not communications
that prove important to an attorney's legal advice to a client.");
<u>E.I. du Pont de Nemours & Co. v. MacDermid, Inc.</u>, Civ. A. No. 06-
3383, 2009 WL 3048421, at *3 (D.N.J. Sept. 17, 2009); <u>United States
v. ChevronTexaco Corp.</u>, 241 F. Supp. 2d 1065, 1071-72 (N.D. Cal.
2002).  Indeed, in <u>Kovel</u> itself, the court stated that

> [n]othing in the policy of the privilege suggests that
> attorneys, simply by placing accountants, scientists or
> investigators on their payrolls and maintaining them in
> their offices, should be able to invest all
> communications by clients to such persons with a
> privilege the law has not seen fit to extend when the
> latter are operating under their own steam.

296 F.2d at 921.  The precise contours of the privilege as it
applies to Kroll need not now be decided.  Indeed, it cannot be
until the record is developed to illuminate the role that Kroll
played for Chevron and the communications and materials that may be
at issue.

      Of course, even if Kroll's work is not covered by the

attorney-client privilege, it may be protected by the work product doctrine. See Evergreen Trading, LLC ex rel. Nussdorf v. United States, 80 Fed. Cl. 122, 142 (Ct. Cl. 2007); Cottillion v. United Refining Co., 279 F.R.D. 290, 306 (W.D. Pa. 2011). But that doctrine provides only qualified protection, and may be overcome by a showing of substantial need. See Chevron Corp. v. Donziger, No. 11 Civ. 691, 2013 WL 1087236, at *3 (S.D.N.Y. March 15, 2013); United States v. Ghavami, 882 F. Supp. 2d 532, 540 (S.D.N.Y. 2012). Furthermore, work product immunity can be forfeited by disclosure that materially increases the opportunity that the adversary will obtain the information. See Egiazaryan v. Zalmayyev, __ F.R.D. __, __, 2013 WL 945462, at *13 (S.D.N.Y. 2013); Ghavami, 882 F. Supp. 2d at 540; NXIVM Corp. v. O'Hara, 241 F.R.D. 109, 142 (N.D.N.Y. 2007) (finding waiver of work product based on disclosure to public relations firm). The current record provides an insufficient basis for finding that the work product doctrine applies to all information that might be elicited in Kroll's deposition, that the protection has not been forfeited, and that the defendants do not have a substantial need for information that would otherwise be protected. The motion to relieve Kroll from being deposed is therefore denied.

Conclusion

    For the reasons discussed above, Chevron's motions to quash

the depositions of Mr. Watson (Docket no. 1067), Mr. Scott (Docket

no. 1065), and Kroll (Docket no. 1069) are each denied.

                    SO ORDERED.

                    James C. Francis IV
                    ───────────────────────────
                    JAMES C. FRANCIS IV
                    UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          May 7, 2013

Copies mailed this date:

Randy M. Mastro, Esq.
Kristen L. Hendricks, Esq.
Anne Champion, Esq.
Gibson, Dunn & Crutcher, LLP
200 Park Avenue, 47th Floor
New York, New York  10166

Andrea E. Neuman, Esq.
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive
Irvine, CA  92612

William E. Thomson, Esq.
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA  90071

Carlos A. Zelaya, II, Esq.
F. Gerald Maples, Esq.
F. Gerald Maples, PA
365 Canal Street, Suite 2650
New Orleans, LA  70130

Julio Gomez, Esq.
Gomez LLC Attorney At Law
40 Wall Street, 28th Floor
New York, New York  10005

9

Larry R. Veselka, Esq.
Tyler G. Doyle, Esq.
Smyser Kaplan & Veselka, L.L.P.
Bank of America Building
700 Louisiana, Suite 2300
Houston, TX  77002