UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

                    Plaintiff,

      -against-                                11 Civ. 0691 (LAK)

STEVEN DONZIGER, et al.,

                      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/14/13

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

       On May 9, 2013, the Court granted in part and denied in part Chevron's motion for a protective order striking certain subjects of examination from the LAP Representatives' notice of a Rule 30(b)(6) deposition of Chevron. Among the items stricken were Subjects 24-27. The Court has reconsidered that aspect of the May 9 order on its own motion. This is its decision on reconsideration.

       The LAP Representatives claim that these subjects of examination are relevant only because they are said to bear on whether (1) the Ecuadorian court properly exercised jurisdiction over Chevron,[1] and (2) "the [alleged] Chevron-Texaco merger resulted in Chevron's responsibility for Texaco's conduct in Ecuador." DI 1120, at 4.

*Personal Jurisdiction in Ecuador*

       The question whether the Ecuadorian court had personal jurisdiction over Chevron – the lack of which would foreclose in this case the defendants' collateral estoppel defenses based on the Ecuadorian judgment (the "Judgment") – appears to be out of this case. Chevron moved for partial summary judgment dismissing the collateral estoppel defenses based on the Judgment on

---

[1] The defendants' position on this point presumably rests on the fact that Texaco consented to the exercise of jurisdiction in Ecuador as a condition of the *forum non conveniens* dismissal of the *Aguinda* case, which had been commenced against Texaco in this District. *Aguinda v. Texaco, Inc.*, 142 F. Supp. 2d 534, 538 (S.D.N.Y. 2001) *aff'd as modified,* 303 F.3d 470 (2d Cir. 2002).

personal jurisdiction and other grounds. With respect to the alleged lack of personal jurisdiction in Ecuador, the Court observed that:

> "Chevron's own evidence shows that Chevron did far more before the Lago Agrio court than contest personal jurisdiction. While it 'maintained its position that the Ecuadorian courts lacked jurisdiction over it as the trial proceeded, and reiterated its objection in its final alegato,' it argued in its final alegato the merits of the case and appears also to have filed various motions and objections to evidence in the case, moved for clarification and amplification after the Judgment was entered, sought to have the Judgment reversed or nullified on various grounds, and sought further clarification after the appellate court issued its ruling on both parties' appeals."[2]

It therefore denied Chevron's motion in this respect, essentially on the basis that Chevron had waived its personal jurisdiction objection in Ecuador. *Id.*

The evidence cited by the Court last July appears conclusively to establish that the Ecuadorian court had personal jurisdiction over Chevron regardless of whether Texaco's consent to personal jurisdiction in Ecuador somehow binds Chevron. Defendants may not justify seeking discovery on Subjects 24-27 on that basis.

*Chevron's Alleged Liability for Texaco's Alleged Conduct*

The second stated basis for seeking this discovery is its supposed relevance to the question whether Chevron is liable for Texaco's alleged conduct in Ecuador or charged with certain statements previously made by Texaco. But that contention conflates two quite different questions – whether the Ecuadorian court (which held Chevron liable for Texaco's actions) was correct and whether the Judgment, right or wrong, is entitled to recognition, enforceability, or preclusive effect outside of Ecuador. The former question is not before this Court, as this case is not an occasion for retrying the merits of the Ecuadorian lawsuit. The latter question, at least thus far, is before this Court by virtue of the defendants' assertion of collateral estoppel based on the Judgment.

Subjects 24-27 go to the former question – whether the Ecuadorian court was correct or justified in holding Chevron liable for Texaco's alleged prior actions. As noted, that is not an issue in this case. The discovery cannot be justified on that basis.

Subjects 24-27 do not go to the question whether the Judgment has any issue preclusive effects here – despite the fact that recognizability and enforceability of the Judgment are prerequisites to issue preclusive effect – except to the limited extent alluded to in the May 9 order. That is whether certain statements made by Texaco as to the adequacy of the Ecuadorian courts in the context of seeking dismissal of the *Aguinda* case on the ground of *forum non conveniens* are

---

[2] *Chevron v. Donziger,* 886 F. Supp.2d 235, 280 (S.D.N.Y. 2012) (footnotes omitted).

admissible against or binding on Chevron on the question whether the Ecuadorian legal system meets the standard essential to recognition of the Judgment. But that limited possible relevance is not enough to justify inquiry into Subjects 24-27 at this late date.

First, as this Court previously has noted:

"the issue in *Aguinda* was whether Ecuador could provide an adequate forum for purposes of the forum non conveniens argument at the time the issue was argued in that case. While Texaco certainly argued throughout much of the 1990s and arguably as late as 2001 that it could, the issue here is different. The issue here is whether the Ecuadorian legal system – *in the period 2003 through 2011, that in which the Lago Agrio was commenced and litigated* – provided impartial tribunals and procedures compatible with due process of law."[3]

For reasons previously explained, these issues differ.[4]

Second, to the extent that these defendants previously have sought to attribute to Chevron Texaco's statements of many years ago about the Ecuadorian legal system, they have done so only on the ground of judicial estoppel.[5] They have not sought to do so by piercing the corporate veil, which is the focus of Subjects 24-27. They have not pleaded such a theory nor alleged any facts in its support. They have failed to do so despite the fact that the Court, as early as March 2011, pointed out their failure to offer any evidence "that the LAPs are entitled to pierce Texaco's corporate veil or otherwise impute its previous positions to Chevron in these proceedings."[6] The Court made that point even clearer, if clearer it could be, in August 2011.[7] Moreover, in spite of those clear statements, so far as the Court is aware, defendants' document requests, requests for admissions, and interrogatories have been devoid of any inquiry relating to any such theories. Their 30(b)(6) notice thus seeks to inject such a theory less than a month before the close of the discovery period without any justification for the delay.

---

[3] *Chevron Corp. v. Salazar,* 807 F. Supp. 2d 189, 196 (S.D.N.Y. 2011) (emphasis in original).

[4] *Id.*; *Chevron Corp. v. Donziger,* 768 F. Supp. 2d 581, 616-20, 633-36 (S.D.N.Y. 2011), *rev'd and remanded on other grounds sub nom. Chevron Corp. v. Naranjo,* 667 F.3d 232 (2d Cir. 2012), *cert. denied,* 133 S.Ct. 423 (2012).

[5] The Court previously rejected that theory. *Chevron Corp. v .Salazar,* 807 F. Supp. 2d 189.

[6] *Chevron Corp. v. Donziger,* 768 F. Supp. 2d at 649.

[7] *Chevron Corp. v. Salazar,* 807 F. Supp. 2d at 195-96.

In the last analysis, then, Subjects 24-27, even if they seek evidence as to matters which, on certain hypotheses, possibly might have been relevant in some degree, are an attempt to take a bridge too far. These defendants have had ample opportunities for more than two years to assert a veil piercing theory and to seek discovery in its support for purposes of attempting to impute to Chevron Texaco's statements in the 1990s about the Ecuadorian legal system. Moreover, the discovery sought by the Rule 30(b)(6) deposition readily could have been obtained from sources more convenient, less burdensome, and less expensive than attempting to shift to plaintiff the burden of attempting to prepare a corporate representative to testify on behalf of, and potentially bind, the company in response to a series of questions that in ordinary circumstances should and would be answered by the collective input of a significant number of corporate employees and documents. Finally, while the stakes in this case doubtless are high, this information is of quite tangential, if any, relevance because of the dramatic changes affecting the Ecuadorian legal system between the times as of which Texaco spoke in the 1990s and the period from 2004 to date. Accordingly, relief is warranted as to these subjects under Fed. R. Civ. P. 26(b)(2)(C).

*Conclusion*

Accordingly, the Court *sua sponte* has reconsidered so much of its May 9, 2013 order as struck Subjects 24-27 from the LAP Representatives' Rule 30(b)(6) notice of deposition. On reconsideration, it adheres to its original conclusion.

SO ORDERED.

Dated:   May 14, 2013

_____
Lewis A. Kaplan
United States District Judge