UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

                        Plaintiff,

            -against-                                        11 Civ. 0691 (LAK)


STEVEN DONZIGER et al.,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM AND OPINION

                Appearances:


Randy M. Mastro                         John W. Keker
Andrea E. Neuman                        Elliot R. Peters
William E. Thomson                      Jan Nielsen Little
GIBSON, DUNN & CRUTCHER, LLP            Matthew M. Werdegar
*Attorneys for Plaintiff*               KEKER & VAN NEST, LLP
                                        *Attorneys for the Donziger Defendants*


James K. Leader                         Julio C. Gomez
S. Alyssa Young                         GOMEZ LLC
LEADER & BERKON, LLP
*Attorneys for Patton Boggs LLP*        Craig Smyser
                                        Larry R. Veselka
                                        Tyler G. Doyle
                                        SMYSER KAPLAN & VESELKA, L.L.P.
                                        *Attorney for Defendants Hugo Gerardo*
                                        *Camacho Naranjo and Javier Piaguaje*
                                        *Payaguaje*

LEWIS A. KAPLAN, *District Judge.*

In June 2012, Chevron Corporation ("Chevron") served a subpoena *duces tecum* on Patton Boggs LLP ("PB"), which has both sued Chevron on its own behalf in other cases and represented the LAPs in other cases against Chevron, although not as a formal matter before the district court in this case.  PB moved to quash the subpoena in its entirety for alleged undue burden and on the ground that it sought only or predominantly documents protected by attorney-client privilege or the work product doctrine.  Chevron contended *inter alia* that any privilege or other protection had been overcome by the crime-fraud exception.

PB's initial motion was denied without prejudice to the privilege and burden claims, thus setting in motion a more informal process that has been described elsewhere and that included individualized consideration of 185 pages of PB objections to the subpoena, further written submissions, and extensive oral argument.[1]  That culminated on March 15, 2013, in an extensive opinion in which the Court completed a dramatic narrowing of the PB subpoena and held that Chevron had satisfied the first prong of the crime-fraud exception with respect to a few specific subjects.  But the Court did not order production of any PB documents as to which there are any unresolved claims of opinion work product or attorney-client privilege because it remains to be determined whether and to what extent the second prong of the crime-fraud exception – the "in furtherance" requirement – is satisfied.

The LAP Representatives and the Donziger Defendants (collectively, "movants") now move for reconsideration of that ruling.  They begin by asserting that "[i]n its rush to render findings that the Court plans to use to attack the recognizability of the Lago Agrio Judgment, the

_____

[1] *Chevron Corp. v. Donziger,* No. 11 Civ. 0691 (LAK), 2013 WL 1087236 (the "Opinion"), at *19-20 (S.D.N.Y. Mar. 15, 2013).

2

Court has gone outside the record in the relevant briefing."[2]  A few lines later, they assert that "the Court adopted as true the bought-and-paid-for declaration of disgraced former Ecuadorian Judge Alberto Guerra . . ."  And they contend that the Court acted prematurely in other respects.

As will appear, their arguments lack merit.  At the most basic level, they essentially ignore the fact that the question before the Court was whether there was probable cause to suspect fraudulent or criminal activity – not whether such activity had been proved.  They ignore also that it was entirely appropriate for the Court to consider the entire record before it in making that determination.  Indeed, they cite no authority to the contrary.  At the outset, however, movants' over-the-top rhetoric require that two points be made with crystal clarity.

*First*, movants' statement that the Court acted as it did "[i]n its rush to render findings that the Court plans to use to attack the recognizability of the Lago Agrio Judgment" is, to say the very least, unprofessional.  Counsel should keep in mind their responsibility under Rule 3.3(f)(2) of the Rules of Professional Conduct.[3]

*Second*, movants' assertion that "the Court adopted as true" the Guerra declaration is entirely false.  It is utterly inconsistent with the Court's clear and unmistakable statements in the prior opinion that are directly to the contrary.

That said, this motion is baseless, largely for the reasons stated in plaintiff's

---

[2]    DI 959, at 1.

[3]    That rule, like its predecessor in the Code of Professional Responsibility, prohibits lawyers from engaging "in undignified or discourteous conduct."  Statements akin to this have resulted in disciplinary action.  *See, e.g., In re Hayes,* 7 A.D. 3d 108, 109, 777 N.Y.S.2d 120, 121 (1st Dept. 2004) (lawyer disciplined for insolent and disrespectful remarks to judge following unfavorable ruling); *In re Dinhofer,* 257 A.D.2d 326, 690 N.Y.S.2d 245 (1st Dept. 1999) (lawyer disciplined for accusing judge before whom he was appearing of corruption and bias).

3

opposition.[4]  The Court, however, writes briefly to emphasize a few points.

*Discussion*

Movants make three principal contentions in seeking reconsideration: (1) the Court improperly went "outside the record in the relevant briefing" on this motion; (2) if the Court was going to go beyond the "relevant briefing," it should have considered and did not "consider *all* of the record,[5] and (3) the Court erred in its "characterization of the facts."[6]  All of these contentions are erroneous.

*1.     The Court Was Entitled to Consider Any Evidence in the Entire Record*

Movants argue that the Court erred in considering evidence "outside the record in the relevant briefing."[7]  Specifically, they complain that the Court relied upon evidence in support of Chevron's most recent motion for partial summary judgment, since denied,  and its pending motion for sanctions, both of which were filed after the submission of the last briefs on the PB subpoena issue and neither of which had been fully briefed by the time the Court issued the Opinion.[8]  This argument is without merit.  Indeed, it rests significantly on an incorrect factual premise.

---

[4]
  *See* DI 1032.

[5]
  DI 959, at 4.

[6]
  *Id.* n.1.

[7]
  DI 959, at 1-2

[8]
  *Id.*

4

The Court notes at the outset that, notwithstanding movants' arguments about what was and was not considered, this aspect of the present motion for reconsideration is moot. The briefing on Chevron's motion for summary judgment and motion for sanctions is now complete. Indeed, the former motion has been decided. In the interest of utter clarity, the Court will grant the motion for reconsideration as a matter of discretion rather than of right. Upon consideration of everything in the record through May 14, 2013, the Court now reaches exactly the same conclusions it reached in the Opinion. Accordingly, movants' argument about the Court's consideration of the "new evidence," irrespective of the merit or lack of merit of those arguments, is entirely immaterial. Nonetheless, in the interest of completeness, the Court will address them.

*First*, the suggestion that the Court was bound to consider only the briefs and exhibits referred to thereon in deciding this motion – and required to ignore all the other evidence in the record – is wrong.

Even in deciding a motion for summary judgment, which can result in a final decision on the merits, a district court is not limited to consideration of evidence specifically brought to its attention by the parties in the briefing on the summary judgment motion. Rule 56(c) and its local counterpart, S.D.N.Y. Civ. R. 56.1, require parties supporting or opposing summary judgment motions to cite to particular materials in the record, and a court *may* confine its review to those materials.[9] But Rule 56(c)(3) makes clear that while, "[t]he court need consider only the cited materials, . . . it may consider other materials in the record." Indeed, the Advisory Committee Note states that this "rule . . . recognizes that a court may consider record materials not called to its

---

[9] FED. R. CIV. P. 56(c)(1); S.D.N.Y. Civ. R. 56.1( ); *e.g., Amnesty Int'l v. Town of West Hartford,* 288 F.3d 467, 470-71 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.").

5

attention by the parties."[10]  As a court in deciding a motion for summary judgment may consider record materials not called to its attention by the parties, which may result in a definitive and final determination of the lawsuit, it necessarily follows that it may do so in deciding a discovery motion like this one.  Indeed, movants cite no case, statute, or rule that says otherwise.

*Second*, the argument that movants did not have an opportunity to respond to the evidence submitted after the briefing on the PB subpoena closed – which is moot now in any case in view of the Court's subsequent reconsideration based on their recent responses – is not accurate.

The Court did consider the Guerra declaration – which alleges *inter alia* the existence of an agreement to bribe the Ecuadorian trial judge and which first was filed on January 28, 2013 in support of Chevron's motion for partial summary judgment.  It is true also that the Opinion on the PB subpoena was rendered before the movants' papers in opposition to the Chevron summary judgment motion were filed.  But the suggestion that the movants were not heard on the subject of the Guerra declaration before the Opinion was rendered is not correct.

On January 30, 2013, two days after the filing of Guerra's declaration and the filing also, and under seal, of two additional declarations, Chevron moved for a protective order in order to prevent disclosure of the names or identifying information of the two additional declarants.[11]  In responding to that motion, defendants attacked Guerra's credibility, making arguments substantially similar to the arguments they later made in their papers in opposition to Chevron's partial summary

---

[10]

FED. R. CIV. P. 56 advisory committee's note to 2010 amendments.

[11]

DI 760, DI 761.

judgment motion.[12]  The Court considered those arguments in connection with Chevron's motion for a protective order and considered them again for purposes of the Opinion.

Moreover, the issue before the Court in considering the PB subpoena motion was whether there  was "[p]robable cause . . . to suspect the perpetration or attempted perpetration of a crime or fraud."[13]  "[A] finding of probable cause is not negated by 'an innocent explanation which may be consistent with the facts alleged.'"[14] The Court was aware then, as it is aware now, that there are issues of credibility with respect to Guerra.[15]  But it held in the Opinion, and it holds again with the benefit, as noted, of movants' subsequent filings,[16] that Guerra's declaration alone is sufficient basis to suspect that the LAPs bribed the Ecuadorian judge and wrote the decision issued in his name.  That is not to say Guerra's declaration is the only evidence that the Ecuadorian Judgment was written by the LAPs and not by the Ecuadorian judge whose name is on it.[17]  But the

---

[12]

Compare DI 766, at 7-9 with DI 917, at 15-24, DI 920, at 18-23.  And, to the extent movants advanced new arguments in their opposition to Chevron's motion for partial summary judgment, the Court has now considered them.

[13]

Opinion, at *25 (quoting In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d at 1039 (2d Cir.1984)).

[14]

Id. (quoting United States v. McDonald, 01–CR–1168JSWDW, 2002 WL 31956106, at *5 (E.D.N.Y. May 9, 2002) (quoting A.I.A. Holdings, S .A. v. Lehman Bros. Inc., 97 Civ. 4978(LMM) HBP, 1999 WL 61442, at *5 (S.D.N.Y. Feb. 3, 1999) (citing United States v. Farma, 758 F .2d 834, 838 (2d. Cir.1985)).

[15]

Indeed, it explicitly so recognized in ruling on the protective order motion.

[16]

Including the Declaration of Nicolás Augusto Zambrano Lozada (the "Zambrano Declaration"), which defendants recently attached to their motion to supplement the record on summary judgment.  See Smyser Decl [DI 974], Ex. 1.

[17]

As will be seen, there is an abundance of such evidence – more than a sufficient basis for the finding of probable cause.

7

fact that Guerra's account doubtless will be challenged does not negate the declaration's sufficiency on the issue of probable cause.

      *Third*, movants' contention that the Court inappropriately "relied on information submitted by Chevron in its Motion for Sanctions for Contempt, filed . . . more than two months after Patton Boggs briefing closed . . . [and] *more than two weeks* before Defendants' briefing in opposition was due" is incorrect, not that it would matter if it were accurate.[18]  Movants point to no "information" from Chevron's motion for sanctions on which the Court relied in the Opinion. Indeed, the only "information" common to the motion for sanctions and the Opinion that was not in the record before briefing on the PB subpoena closed was the recent Ecuadorian court ruling, which *defendants* submitted to the Court on January 23, 2013,[19] and which will be discussed below.

      Thus, when stripped of the rhetoric, movants' complaints of "later-submitted evidence"[20] boil down only to the Guerra declaration, to which defendants responded before the Opinion was rendered.  Moreover, the Court now has considered their more recent responses to the partial summary judgment and sanctions motions and has reached the identical result.

II.     *The Guerra Declaration*

     A.    *The Court Did Not Adopt the Guerra Declaration as True*

      Movants contend further that the Court's ruling was flawed because it not only considered, but also "adopted as true the bought-and-paid for declaration of disgraced former

---

[18]     DI 959, at 2.

[19]     *See* DI 734.

[20]     DI 959, at 2.

Ecuadorian Judge Alberto Guerra."[21] That contention is false.

> The Opinion, referring to the Guerra declaration, stated in relevant part the following:
>
> "Most recently, Chevron has come forward with evidence that, *if credited,* would establish that the Judgment was written by the LAPs, who bribed the Lago Agrio judge to submit it under his name.
>
> "A.    *Alleged* Bribing of the Judge"[22]

It then continued in a similar vein for some pages.

> Quite obviously, the Court did not "adopt as true" anything that Guerra said. It recognized that it had before it a sworn declaration asserting certain facts and that the declaration, in some respects alone and in all respects together with other evidence, established in particular respects the requisite probable cause to suspect fraud or criminality. Whether the testimony of the declarant eventually is credited by the trier of fact remains to be seen – as the Court repeatedly has written.[23]

B.    *In Any Event, There was Probable Cause Even Without Regard to the Guerra Declaration*

> Finally, the Opinion made clear that there was probable cause to suspect a crime or fraud had been committed with respect to various aspects of the Ecuadorian and U.S. litigations even without the Guerra declaration.

---

[21]
> *Id*.

[22]
> Opinion, at *6.

[23]
> *E.g.*, *Chevron Corp v. Donziger*, 11 Civ. 0691 (LAK), 2013 WL 646399, at *6 ("[w]hile the question whether Guerra's account is accurate will be decided on another day . . . ."), *11("[w]ithout passing on the question whether Guerra will prove a credible witness at trial") (S.D.N.Y. Feb. 21, 2013).

9

In March 2012, Chevron made an earlier motion for partial summary judgment on its fraud claims.  The Court concluded on that motion – after exhaustive briefing by both sides – that the record as it stood eight months before the ruling now at issue showed that there was no genuine issue of fact that the Ecuadorian proceedings were tainted by fraud in several key respects:  the Calmbacher report, the termination of the judicial inspections, and Cabrera's appointment and report.[24]  While summary judgment was inappropriate in almost all respects given the high standard applicable to such motions, the probable cause standard applicable here is much more relaxed.  The evidence underlying the conclusions reached on the summary judgment motion, without consideration of any additional evidence, was more than sufficient to establish probable cause for purposes of the PB subpoena on three of the five subjects on which the Opinion found probable cause.

With respect to the remaining two subjects – the authorship of the Judgment and obstruction of the Stratus Section 1782 proceeding – the Opinion found that probable cause was warranted even without consideration of evidence submitted after the "relevant briefing" on the PB subpoena had closed.[25]  Indeed, the Court held that "[e]ven before the Guerra affidavit was filed .

---

[24]

*Chevron Corp. v. Donziger,* 886 F. Supp. 2d 235, 286-290 (S.D.N.Y. 2012).

[25]

The Court concluded that Chevron had presented evidence in connection with its March 2012 motion for partial summary judgment and its briefing on the PB subpoena which was "sufficient to . . . support the existence of probable cause to suspect that the LAPs, not the judge, wrote the relevant part of the Judgment."  Opinion, at *9.

The Opinion made clear also – based entirely on evidence submitted in connection with the PB subpoena motion (*i.e.*, in movants' terms, evidence inside the "record on the relevant briefing") – that there was "probable cause to suspect that at least some of those involved . . . committed mail and/or wire fraud and obstructed justice in at least the Stratus 1782 proceeding in Colorado by formulating and filing the Fajardo declaration, which was a seriously misleading account of what had happened."  *Id.* at *15.  Movants do not contend otherwise.

. . Chevron had presented substantial evidence of fraud in the procurement of the Judgment," and that evidence was sufficient for a finding of probable cause.[26]

Thus, the evidence previously submitted – to which defendants had responded – as well as evidence submitted in connection with the "relevant briefing" on the PB subpoena – was sufficient to establish probable cause to suspect a crime or fraud had been committed with respect to: the Calmbacher report, the decision to terminate the judicial inspection process, Cabrera's appointment and the submission of his report, the procurement of the Judgment, and the Stratus Section 1782 proceeding in Colorado. The Guerra declaration further confirmed that conclusion.

III.        The Court Did Not Make Material Errors of Fact

The Opinion found that Chevron needed documents from PB in part because it has been largely unable to get them from the defendants. In particular, the Court noted that "[i]n both this action and the Count 9 action, defendants have refused to produce any documents in the possession, custody, or control of their attorneys and agents in Ecuador despite orders by this Court compelling them to do so."[27] Although defendants have offered varying justifications for their refusal to produce these documents, their latest is that they are unable to do so because their Ecuadorian attorneys are prohibited by Ecuadorian law from turning them over. The Opinion noted

---

[26]

> *Id.* at *9. Chevron's evidence consisted in part of reports by experts who analyzed the documents and compared them to the language in the Judgment. Movants contend that the Court should not have considered these experts' reports because the experts have not been deposed. DI 959, at 2, 3. But the PB subpoena matter was a discovery issue, not a motion for summary judgment. There is no basis whatever for supposing that a party opposed to discovery on some particular point is entitled to finish depositions before the discovery dispute may be ruled upon. Movants cite no authority for supposing that there is.

[27]

> Opinion, at *20.

that, most recently:

> "While Chevron's motion [to compel documents from Ecuador] was pending and unbeknownst to the Court or to Chevron . . . a lawsuit was filed in Ecuador in October 2012 in the name of one of the non-appearing LAPs, Octavio Ismael Cordova Huanca, against Cordova's attorneys—Fajardo, Saenz, and Prieto as well as the head of the Amazon Defense Front, Luis Yanza—to bar them from turning over any information in discovery in this case."[28]

The Court concluded that "[t]he case obviously was collusive in the sense that, as the judgment recites, the ostensible defendants agreed with the ostensible plaintiff."[29]  In the course of doing so, the Opinion noted that "the only attorney appearance listed on the decision is that of Fajardo."[30]

Movants contend that the Court made "made multiple errors of fact" in suggesting that the "Protection Order issued in Ecuador was the result of 'collusive' proceedings."[31] They take exception in particular to what they inaccurately describe as the Court's conclusion that Fajardo "appear[ed] on behalf of Mr. Cordova."[32]  This is erroneous.[33]

---

[28]   *Id.* at *21 (footnote omitted).

[29]   *Id.*

[30]   Opinion, at *21.

[31]   DI 959, at 4.

[32]   DI 950, at 14.

[33]   Movants "take exception" also to the Court's characterization of (1) an email sent by a PB lawyer in which he discussed "cleans[ing] any perceived impropriety related to the Cabrera Report," and (2) the Fajardo submission to the Lago Agrio court.

With respect to the first point, movants contend that the PB lawyer was referring to "cleansing" the Cabrera report in a filing to the *Ecuadorian* court, not, as the Opinion suggests, to the District of Colorado in the Stratus Section 1782 proceeding.  But Chevron

12

   *First*, there is no dispute that the suit was collusive in the sense that the purported plaintiff (even if he was represented by an attorney other than Fajardo) and the purported defendant (Fajardo) both sought the same outcome: a declaration that Fajardo was barred from producing the documents sought by Chevron. Indeed, movants' attorneys readily admit this.[34]

   *Second*, the Opinion did not conclude that Fajardo appeared on behalf of Cordova. It stated, correctly, that movants had provided no evidence that the two parties – Fajardo and Cordova – were represented by separate counsel.[35] And this is not surprising, given that Fajardo was indeed the only attorney appearance listed on the copy of the decision *defendants* submitted to the

---

is correct that this "is a distinction without a difference." DI 1032, at 11. PB was involved in drafting the submissions made to the Colorado court and to the Ecuadorian court, both of which were intended to "g[ive] a bland [and misleading] description of the process by which the judicial inspections had been terminated, the global expert proposal adopted, and Cabrera in particular selected." *Opinion*, at *14. Thus, regardless of whether the email referred to the submission made in Colorado or the submission made in Ecuador, it is clear that both were intended to "cleanse" the Cabrera report, and both were drafted by PB.

With respect to the second, movants take issue with the Court's labeling of the submission to the Ecuadorian court as a "declaration," when, they say, it actually was a brief. But movants do not explain why this distinction is material, nor do they take issue with the Court's conclusion that the submission – regardless of its label – omitted material facts and was intentionally deceptive.

[34]

Movants' attorneys readily admit this. *See, e.g.*, Apr. 18, 2013 Tr. at 380: 10-18 (LAPs' counsel explaining that "there was no chance [Ecuadorian attorney Fajardo] would turn over the documents," and that, even if the LAP Representatives had been represented in the Ecuadorian protective order action, "Mr. Fajardo wasn't going to turn over the documents anyway."); *id.* at 362: 15-23 (LAPs' counsel agreeing that "Mr. Cordova was the plaintiff in the case. . . [a]nd he was against the production of documents . . . . And . . . Mr. Fajardo [w]as the defendant[,] who always told [the LAPs' counsel] he would never produce the documents" ).

[35]

*Opinion*, at *21 n.202.

13

Court (on which the Court relied).[36]


IV.     *The Prieto Email*

There is one aspect of the Opinion the Court finds it appropriate to revisit in more

detail.  For reasons that will become readily apparent, it is not one about which movants complain.

In its discussion of the Stratus Section 1782 proceeding, the Court noted that, after

the "District of Colorado granted Chevron's Section 1782 application on March 4, 2010 . . . [t]he

LAPs, realizing that production from Stratus was virtually inevitable, were anxious to 'minimize the

effects' of the court-ordered production of Stratus' documents.  In an email to Donziger, Fajardo,

and others, Julio Prieto, one of the LAPs' Ecuadorian lawyers wrote:

> 'Today Pablo [Fajardo] and Luis [Yanza] were kind enough to tell us what was going
> on in Denver, and the fact that ALL will be made public, including correspondence
> .... Apparently this is normal in the U.S. and there is no risk there, but *the problem,*
> *my friend, is that the* <u>*effects are potentially devastating in Ecuador (apart from*</u>
> <u>*destroying the proceeding, all of us, your attorneys, might go to jail*</u>*), and we are not*
> *willing to minimize our concern and to sit to wait for whatever happens. For us it is*
> *NOT acceptable for the correspondence, the e-mails, between Stratus and Juanpa*
> *[Saenz] and myself to be divulged.*'"[37]

This email plainly seems to betray consciousness of wrongdoing in Ecuador and a

motive to obstruct justice in Colorado on order to cover it up.  The email certainly supports probable

_____

[36]

     *See* DI 734.  Chevron, in connection with its motion for sanctions, submitted what appears
to be a complete copy of the decision and the other relevant pleadings, which do in fact note
that the plaintiff in the case was represented by one Dr. Nicolás Samaniego Agila.  DI 895,
Ex. 3508.  Movants therefore are correct that the full decision – provided to the Court by
Chevron – does not list Fajardo as representing the plaintiff.  But that does not undermine
the Court's conclusion that the suit was collusive, nor does it merit reconsideration of the
determination that discovery from PB is necessary in part because Chevron cannot obtain
these critical documents from the defendants.

[37]

     Opinion at *13 (footnotes omitted).

14

cause.  Movants nevertheless argued that "a close[ ] reading of Prieto's email suggest[ed] that the email betrayed concern that disclosure of the emails between Stratus, on the one hand, and Prieto and Saenz, on the other was not acceptable *because it would have violated duties they owed to their clients as Ecuadorian lawyers*, *not, as Chevron maintain[ed] that [Prieto] was concerned that disclosure of what had occurred vis-a-vis Cabrera amounted to misconduct such that the lawyers might go to jail*."[38]  The Court noted that movants' interpretation of the document was "[p]erhaps plausible, but that "whatever impact [defendants' contention] someday may have before a trier of fact, is neither material at this stage nor, in all circumstances, persuasive."[39]

But the Court mistakenly was far too charitable, as it overlooked evidence long of record.  That evidence shows that movants' recently advanced interpretation of the email is entirely inconsistent with Donziger's prior sworn testimony.

In his January 2011 deposition in Chevron's Section 1782 proceeding, Donziger was asked about this email.  He testified as follows:

"Q:    [Prieto] says he is concerned about the e-mails between Stratus and Juan Pablo Saenz . . . and himself being divulged, correct?

A:    Yes.

Q:    So Mr. Prieto was concerned that all of the local Ecuadorian lawyers for the Lago Agrio plaintiffs might end up in jail *because of the role they played in drafting the Cabrera report*, correct?

A:    *The role they played related to Stratus, Mr. Cabrera, yes.*"[40]

---

[38]    *Id.* at *15 n.132 (quoting DI 712, at 10-11) (emphasis added).

[39]    *Id.*

[40]    DI 287-15 (Jan. 19, 2011 Donziger Dep.) at 3381:14-20 (emphasis added).

Donziger then was asked whether this concern was relayed to the LAPs' U.S. counsel:

> "Q:    And did you share with the Patton Boggs lawyers in or about April 2010
> [Prieto's] concern that all of them might end up in jail if there were full
> disclosure of the plaintiffs' team's role in Cabrera's work?
>
> A:    That was shared, yes."[41]

It thus is clear from Donziger's 2011 testimony that he understood Prieto's email to express concern that the LAPs' lawyers could go to jail "because of the role they played in drafting the Cabrera report" and not, as he and the LAPs argued in their brief on the PB subpoena, that production of the documents would violate Ecuadorian laws with respect to attorney client confidentiality.  And it is clear also that Donziger shared Prieto's true concern with PB.[42]

---

[41]

    *Id.* at 3387:22- 3388:4

> ("Q:    . . . . The e-mail says that the effects of full disclosure of plaintiffs' team's
> role in Cabrera's work are potentially devastating in Ecuador, is that
> something you discussed with the Patton Boggs lawyers in or about April
> 2010?
>
> A:    The impact of this information on the case in Ecuador was a topic I did
> discuss with Patton Boggs and the other law firms.").

[42]

    Donziger testified that he shared Prieto's concern with the lawyers at Emery Celli Brinckerhoff & Abady, LLC, which was representing the LAPs at the time, as well.  *Id.* at 3382:5-8.

16

*Conclusion*

For the foregoing reasons, defendants' motion for reconsideration [DI 959] is granted.  On reconsideration, the Court adheres to the result previously reached.  The discussion of the Prieto e-mail in the Opinion will be amended to reflect the final point made above.

SO ORDERED.

Dated:        May14, 2013

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)