UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

Plaintiff,

-against-                                              11 Civ. 0691 (LAK)

STEVEN DONZIGER, et al.,

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM AND ORDER**

LEWIS A. KAPLAN, *District Judge.*

       Attorney John Keker and colleagues at Keker & Van Nest LLP (collectively, "Keker"), are counsel for the Donziger defendants.[1]  Attorney Craig Smyser and colleagues at Smyser, Kaplan & Veselka, LLP (collectively, "Smyser"), are among the attorneys for the defendants Camacho and Piaguaje (the "LAP Representatives").[2]  The matter is before the Court on motions by Keker and Smyser to withdraw as counsel for their clients in this action on the ground of non-payment of fees.

---

[1]      The Donziger defendants are Steven Donziger, the Law Offices of Steven R. Donziger, and Donziger & Associates, PLLC.  Mr. Donziger, an attorney, recently filed a notice of appearance on behalf of the Donziger defendants.

[2]      The LAP Representatives are two of 47 Ecuadorian individuals (collectively referred to below as the "LAPs") who, with others, have obtained a $19 billion judgment against Chevron in Ecuador.  The LAP Representatives are represented of record in this case also by Julio Gomez, Esq., whose presence in the case antedates that of Smyser.  The other LAPs, and certain other defendants, are in default for failure to answer or otherwise defend this action.

2

*The Keker-Smyser Argument*

At bottom, the basis for the motions to withdraw is the contention that Keker and Smyser each claims to be owed more than $1 million by their respective clients and that the clients are unable to pay. But they use this motion to blame others for that alleged situation. They assert that Chevron has inundated them with an "endless drumbeat of motions" aimed at "crush[ing] defendants"[3] and that defendants therefore no longer "have the resources to defend against Chevron's motion strategy."[4] They contend that Chevron's "litigation tactics, which this Court [allegedly] has endorsed and encouraged throughout these proceedings,"[5] have rendered their clients poverty-stricken and unable to mount a defense. In so arguing, they make a series of exaggerated, inaccurate, and in some cases inflammatory assertions, some of which warrant brief comment.

*First*, while there has been a great deal of motion practice in this case, the nature of the case, and the litigation choices by both sides – and by *all* of the lawyers – are responsible. Indeed, defendants have filed nearly the same number of motions as has Chevron.[6] Moreover, although movants claim that the majority of Chevron's "drumbeat of motions" was intended only to "crush defendants,"[7] the suggestion that the motions were entirely meritless simply is not so.

---

[3]  DI 1110, at 1.

[4]  *Id.*

[5]  *Id.* at 3.

[6]  By the Court's count, 85 substantive motions were filed in this case through May17, 2013 – 46 by Chevron and 39 by defendants (including three by Patton Boggs, which is a subpoenaed witness in this case but represents the LAP Representatives elsewhere, and four by the Stratus defendants, which have settled).

[7]  *Id.*

Each side has won some motions, lost some, and obtained mixed results in more than a few.  The balance – in terms of numbers of motions made and, for that matter, motions won and motions lost – is not very far from even.  Moreover, the fact that a motion is denied does not necessarily mean that there was no reasonable basis for it.  Nor has either side sought sanctions against the other on the ground that any particular motion was so devoid of merit as to warrant their imposition.

Furthermore, the Court's appropriate role with respect to motions, as a general proposition, is to decide them – not to prohibit their filing.  The law in this Circuit is abundantly clear: "[a]bsent extraordinary circumstances" that are not present here, "a court has no power to prevent a party from filing pleadings, motions or appeals authorized by the Federal Rules of Civil Procedure."[8]  Moreover, this Court has lightened the costs associated with motion practice, in this case, as it does in all, by a variety of means including a tight limit on the length of papers on discovery motions,[9] and barring letters to the Court, the volume of which was an undue burden to all concerned in this case.[10]

*Second*, movants claim that Chevron's discovery requests have been excessive and, in their words, "followed the same trajectory of relentless increase."[11]  As always, however, it is useful to look at the facts.  For one thing, the period for the service of document requests,

---

[8]  *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir. 1987).

[9]  Judge Lewis A. Kaplan, Individual Practices, at 2 *available at* http://www.nysd.uscourts.gov/cases/show.php?db=judge_info&id=121.

[10]  DI 996.

[11]  DI 1110, at 2.

interrogatories, and requests for admissions expired on December 1, 2012,[12] so there has been no increase, much less a "trajectory of relentless increase," in written discovery.   Furthermore, defendants' requests for discovery from Chevron have exceeded Chevron's requests from defendants both in number and in scope.[13]   Yet Chevron has produced over 300 times as many documents to defendants as defendants have to Chevron.[14]   Indeed, many of Chevron's recent motions have sought discovery that defendants have refused to produce or production they otherwise sought to block. In addition, the 21 depositions permitted to each side was a figure agreed to by Chevron and the LAP Representatives as recently as March 2013.[15]   In sum, until these motions to withdraw were filed less than two weeks ago, these defendants – and these lawyers – pursued discovery at least as aggressively as Chevron did and obtained far more of it.

   *Third*, although the Court does not doubt that Keker and Smyser have issued substantial bills that remain unpaid, there is no competent evidence that the non-payment is a result of inability to pay[16] as distinguished from a decision not to pay by whomever controls resources on

---

[12]

DI 494, ¶ 2(b).

Keker agrees that "[written] discovery has been completed."  Keker Decl. [DI 1101], ¶ 1.

[13]

Chevron has served approximately 402 document requests on defendants – 221 on Donziger and 181 on the LAP Representatives.  DI 617, Ex. 3; 616, Ex. 2.  Defendants have served 600 document requests on Chevron.  DI 140, at 8.

[14]

Chevron has produced over 6 million pages of documents.  Donziger has produced 19,038 pages of documents in this action and the LAPs have produced 958 pages.  DI 1158 (Joint Status Report), at 5.

[15]

Tr., Mar. 5, 2013 [DI 953], at 3:25-5:22.

[16]

It is not clear who was paying the defendants' legal bills when they were being paid although it is unlikely that the LAP Representatives – whom their counsel have described

the defendants' side.

Fourth, it is noted that Chevron moved on March 12, 2013 for sanctions against the Donziger defendants and the LAP Representatives. The Court held an evidentiary hearing on April 16-18, 2013 which focused in part on the actions of some of the lawyers at the Smyser firm. The sanctions motion remains *sub judice.* The motions for leave to withdraw were filed 15 days after the close of the hearing.

Finally, it bears mention that Keker and Smyser continue to represent Donziger and the LAP Representatives in two matters in the Second Circuit, including one that was filed on May 9, 2013 – one week *after* movants filed their motions to withdraw in this case. For that matter,

---

as "a *campesino* and canoe operator living in the remote Ecuadorian jungle" (DI 518, at 1) – ever did so. It is known, however, that Donziger and the LAPs raised millions of dollars from various outside sources to fund their litigation. *See* DI 44-19 (Treca Funding Agreement); DI 370-9 (Michael Donziger Funding Agreement); DI 355-36 (Sherman Funding Agreement); DI 355-32 (Torvia Limited Funding Agreement); DI 355-36 (Wiese Funding Agreement). *See also* No. 11 Civ. 3718, Champion Decl. [DI 37], Exs. 13-14 (Jan. 2007 emails between Donziger and Joseph Kohn discussing Kohn's transfers of money "to Quito" used to fund the litigation and "pay off some debts"), Exs. 15-18, 24-29 (documents reflecting payments made by Kohn to LAPs' scientific consultants).

At least as far as the record discloses, Smyser is unaware of the source of the money used to pay those of its bills that were paid. One attorney submitted an affidavit in connection with her clients' unsuccessful motion to intervene in this case that stated that she had been approached by Smyser to serve as a paid expert for the LAPs and that Smyser's Mr. Doyle "explained that his firm has become involved through a 'series of referrals;' that they had been interviewed by Pablo Fajardo [the LAPs' principal Ecuadorian lawyer] and a 'community representative from Ecuador;'" and that the firm was getting paid and was not working on a contingency fee basis, but that he did not know who was paying the bills." Kimerling Decl. [DI 710], at ¶ 32.

Keker for its part states that it received payment from Donziger but there is not much evidence about the source of the funds that Donziger used to "ke[ep] largely current with paying fees for the first eighteen months of Keker & Van Nests's representation of him." Keker Aff. [DI 1111] at ¶ 9. It is clear, however, that, at least initially, Donziger controlled to some degree how the funds the LAPs received from the litigation funding firms were spent. Moreover, at least one of the outside funding agreements explicitly stated that it was permissible to use the funds received from the investor in defense of this action. *E.g.*, DI 355-32, at 3.

Keker's moving declaration alludes to the possibility of his reappearing in this case at trial after first withdrawing for the balance of pretrial proceedings.[17]  And the LAPs – represented by a plethora of law firms,[18]  continue to litigate aggressively in other jurisdictions.

In short, the claims of impoverishment and inability to pay are unsupported, as are the claims that any lack of funds that may exist is attributable to any abuse by Chevron or anyone else.  This is a high stakes lawsuit that conceivably may affect as much as $19 billion.  It is expensive.  That may or may not be a desirable situation, but it is the legal system we have.  This has been compounded by the fact that counsel on both sides have been uncooperative with each other.

*Discussion*

With that said, the Court proceeds to the merits of the motions, stripped of the rhetoric that bedevils this motion.

S.D.N.Y. Civil Rule 1.4 provides:

"An attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the court and may not withdraw from a case without leave of the Court granted by order.  Such an order may be granted only upon a showing by affidavit or otherwise satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar."

---

[17]  Keker Decl. [DI 1101] ¶ 14.

[18]  Including Patton Boggs which, although it has not entered an appearance in this Court in this case, has acted for the LAPs since early 2010, has prosecuted nearly every appeal in this and related cases in the Second Circuit, and has been heavily involved behind the scenes both in Ecuador and in various Section 1782 proceedings across the United States. *Chevron Corp. v. Donziger*, 11 CIV. 0691 LAK, 2013 WL 1087236, at *13-19 (Mar. 15, 2013) *adhered to on reconsideration*, 11 CIV. 0691 LAK, 2013 WL 1975439 (S.D.N.Y. May 14, 2013).

Moreover, the Second Circuit has articulated the applicable standard, which is as follows:

> "'A client's refusal to pay attorney's fees *may* constitute 'good cause' to withdraw.' *See, e.g., McGuire v. Wilson,* 735 F. Supp. 83, 84 (S.D.N.Y.1990) (collecting cases). In most cases, however, courts have permitted counsel to withdraw for lack of payment only where the client either 'deliberately disregarded' financial obligations or failed to cooperate with counsel. *Id.* 'Non-payment of legal fees, without more, is not usually a sufficient basis to permit an attorney to withdraw from representation.' *In re Albert,* 277 B.R. 38, 50 (Bankr.S.D.N.Y.2002) (quoting *In re Revere Armored, Inc.,* 131 F.3d 132, 1997 WL 794460, at *3 (2d Cir. Dec. 30, 1997) (unpublished decision))."[19]

There is no claim on this motion that the clients have not cooperated with Keker and Smyser.  The motions are based solely on non-payment.  The claims of inability to pay are unsubstantiated.  Moreover, the LAPs' aggressive litigation efforts before other courts permits an inference, which the Court draws, that this is a case in which those who control whatever money is available to finance litigation efforts have decided not to pay these lawyers.  Thus, this is more likely than not a case of deliberate disregard of financial obligations.  In these circumstances, and given the lack of any objection to the withdrawal, the motions will be granted to the extent set forth below.

---

[19]
    *United States v. Parker,* 439 F.3d 81, 104 (2d Cir. 2006) (emphasis added).

8

*Conclusion*

The motions of Keker and Smyser (as those terms are defined above) to withdraw as attorneys for the Donziger defendants and the LAP Representatives [DI 1109, 1112] are granted although the Court retains jurisdiction over each of the withdrawing attorneys.[20]  The *pro hac vice* admissions of John Keker [DI 192], Jan Nielsen Little [DI 197], Matthew Werdegar [DI 270], Craig Smyser [DI 393], and Larry Veselka [DI 437] lapse with this order.  Unless otherwise ordered, the information concerning Doe 1 and Doe 2 that is covered by the protective order in this case shall not be disclosed to Donziger.[21]

SO ORDERED.

Dated:          May 17, 2013

Lewis A. Kaplan
United States District Judge

---

[20]

See DI 888.

[21]

See *Chevron Corp. v. Donziger,* 11 CIV. 0691 LAK, 2013 WL 646399 (S.D.N.Y. Feb. 21, 2013).