# EXHIBIT 4

**TempUser**

---

**From:** Joe L. Silver
**Sent:** Thursday, April 22, 2010 12:13 AM
**To:** Doug Beltman
**Cc:** Martin D. Beier; Sharon A. Ingram
**Subject:** Chevron
**Attachments:** Depo; RE: David Chapman/Stratus depositions

Doug, I want to relay a pretty disturbing conversation I had with the Plaintiffs' cast just a few minutes ago (more than an hour since I began this email) in the context of how things have been unfolding.

I wrote you and David earlier (I realize you may be reading this email first) and mentioned there that the decision to proceed with the depositions as originally noticed in their subpoenas is entirely Chevron's. Their decision to proceed, arising this afternoon as it did, was probably as sudden a shift in strategy for them as it was a surprise to us.  The fact of the matter is, however, that the subpoenas were never canceled or quashed and it is Chevron's prerogative to proceed without the document production that they had, until today, insisted occur first.  We will, by the way, do our best to set it up so they have one 'crack' at each of the deponents and not be able to reconvene any deposition after production.

In the last few weeks, the Plaintiffs' team (Steven, but moreso Eric Westernberger [of Patton Boggs, who hasn't yet entered an appearance and has instructed us not to divulge his firm's involvement] and Ilann Maazel [with whom Steven has apparently worked on this case for some time and this week entered an appearance on behalf of the non-Stratus individuals]) have grown more desperate to a point where, in their disarray, they are challenging everyone around them to take positions which are implausible at best, and very possibly spurious.  When my suspicions that they would throw Stratus under the colloquial bus to serve their own interests were replaced by their expressing as much, I convened our telephone conversation a week ago last Monday to make certain you were aware of these challenges.  Since then, we have continued to coordinate efforts and been responsive to their dependence upon our procedural knowledge and maneuverings.  Culminating with a conversation tonight that I declined to participate in, the events of late have included:

They (the 'team,' who always make an effort to be on the phone together) apparently leaned so hard on Rick Kornfeld last week to represent the non-Stratus deponents that he called to alert me to their unpleasant tactics and give me heads up that that they were intending to pressure me into revisiting my representing everyone here.  Rick has an apparent conflict of interest that cannot be waived.  (He cannot provide independent counsel to the non-Stratus deponents regarding the very privilege he is asserting on Plaintiffs' behalf.  I declined because Stratus would be denied representation by this firm were any conflict to arise with the non-Stratus individuals.)  Interestingly, Ilann Maazel entered his appearance the other day for the non-Stratus deponents.  It is a serious conflict.

They insisted this week that I instruct 3TM not to produce any documents on the basis of the confidentiality provision in its agreement with Stratus.  When I said we were intending to assert Stratus' continuing reliance upon the terms of that agreement, but acknowledged that a non-dislosure agreement would not insulate production from legal compulsion, Eric and Ilann (Steven remains pretty much quiet) argued otherwise: that 3TM should be instructed to refuse to honor the subpoena and require Chevron to get an order of court compelling the production.  I told them that a subpoena issued in federal court by the clerk is legal compulsion and had to be assertive in basic procedural law in order to back them down.  They did back down, but were disappointed that I couldn't accomplish their ends in Texas and that they were going to have to assert their privilege, instead.

You should know also that several times during the last week in lengthy conversations I entertained their angst about how we could assure them a review of the production in advance of delivery to Chevron.  Each time I reassured them that we had built that into our request for a protective order.  When I said in one such conversation that we had done all we could but an opportunity to claim a blanket privilege had been lost by their not, themselves, filing a motion to quash the subpoena, they were quick to say they hadn't been advised to by us (but later corrected themselves); but ultimately acknowledged that Brownstein had declined and Rick Kornfeld suggested they needn't because privilege is specific to particular questions and documents.  Rick is correct, but a motion to quash would have been a cautious way of preserving the Plaintiffs' preview that they were complaining about.

1

STRATUS PARTIES 4154

It was in this context, also, that Eric absurdly argued that Stratus has the means to assrt the Plaintiffs' privilege just as a lawyer has the right to assert his client's privilege; and both Marty and I had to tell him that his position was at odds with express statutes which make clear the lawyer cannot assert the client's privilege. And he backed down from that notion.

With that backdrop, I was at a play tonight and arrived home to see Eric had called my cell phone twice while I was out, with Ilann and Steven in tow; their message being that they all wanted to speak to me yet tonight.  Since it was 11 their time, I didn't call, but they called me and, within a millisecond, were making clear their anger that the depositions were proceeding over my assurances that they wouldn't and demanding that I make myself and Marty or David and you unavailable in order to keep the depositions from proceeding.  If I am ever asked whether I participated in a conversation in which a plan to obstruct Chevron's subpoenas was considered, I want to be able to say no.  So while I wasn't so express with them about why I was declining to speak with them, I insisted that we not have this conversation and speak in the morning.   In their frustration, they (Eric and Ilann) insisted Stratus file another motion to for protective order on the [spurious] basis that the depositions had been cancelled, I said that wasn't going to happen and they finally hung up saying they would call Rick.

They did, and Rick generated the emails tonight explaining that he has a conflict.  That, I know, is true.  He is biking and camping in Moab with a group he joins every year.  He called me afterwards, responsive to my email suggesting that he do so, and we agreed that Eric and Ilann, and he includes Steve, are out of control; that Chevron has every right to proceed and he also declined their urging him to obstruct the depositions as they did me; that he'll have someone present at the deposition in his absence if they proceed, but that he generated the email raising the conflict in hopes that Chevron would do what others typically do, and reschedule to accommodate the parties and their counsel; and that they are surprising naïve about the extent they presume others are willing to sacrifice themselves with bogus positions.

Most disconcerting about my conversation tonight was in their angst; Eric admonished me to tell them outright if Stratus' interests had now diverged from the Plaintiffs'.  The question was tactical and in my face; and shortsighted.  All the while I was simply trying to diffuse the conversation and insist upon speaking tomorrow.  I have a 9 o'clock commitment and told them I'd call at its conclusion, at approximately 9:30.  Please call me if you think I should know anything in advance of that call.  I will, of course, keep you posted.

Finally, I think there may be more emphasis by Eric and Ilann on Stratus and others as a barricade to Chevron's reach toward Steven (who may well have problems here) than the bona fides of the relationships between the Plaintiffs and their experts.  A court will be intolerant of shenanigans and the dance Eric and Ilann are doing risks such a perception.

Joe L. Silver
Direct line:  303-953-3724
jsilver@s-d.com