UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
CHEVRON CORPORATION, :
:
                Plaintiff, :
:
   v. : 11 Civ. 0691 (LAK)
:
STEVEN DONZIGER, et al., :
:
                Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CHEVRON CORPORATION'S OPPOSITION TO HUGO GERARDO CAMACHO NARANJO AND JAVIER PIAGUAJE PAYAGUAJE'S MOTION TO STRIKING CERTAIN OF CHEVRON'S CONFIDENTIALITY DESIGNATIONS AND FOR AN ORDER REQUIRING CHEVRON TO DEMONSTRATE WHY OTHER DOCUMENTS MERIT PROTECTION**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

Defendants seek blanket de-designation of Chevron's confidential documents, though they did not meaningfully meet-and-confer, and though the Court found "good cause" to protect "the confidentiality of certain information that may be disclosed in connection with discovery." Dkt. 723 at 1.  The protective order does not restrict Defendants' ability to present their defense. It stops misuse of these documents "for the purpose of permitting a libel-proof press release to be issued" (Dkt. 977-1 at 35:22-36:5), though that is what Defendants ask the Court to allow.[1]  The documents are of limited, if any, relevance to issues in the case, and even the supposed PR benefit Defendants seek rests on mischaracterizations.[2]  The motion should be denied.

**1. Chevron's designations were limited and proper.**  Chevron designated as confidential about 4% of the documents it produced from Chevron-affiliated custodians.  It did so because those documents reflect confidential information that would assist competitors and disadvantage Chevron if publicly available.  Declaration of E. Dettmer.

Chevron's designations are proper.  Sensitive business information prepared with "substantial time and effort" and "not readily ascertainable elsewhere," is protected from disclosure based on four factors: "(1) the extent to which information is known outside the business; (2) the extent to which information is known to those inside the business; (3) the measures taken to guard the secrecy of the information; and (4) the value of the information to the business and its competitors."[3]  Chevron invested significant resources developing strategies and relationships for

---

[1]  Defendants' "public access" arguments are inapposite.  They rely on *In re Parmalat Securities Litig.*, 258 F.R.D. 236 (S.D.N.Y. 2009), but that case involved the different standard applied to documents filed with a summary judgment motion.  *S.E.C. v. TheStreet.com*, 273 F.3d 222, 231 n.9 (2d Cir. 2001) (no "presumption that discovery materials should be publicly available whenever possible").  The LAPs say "Chevron cannot overcome the public's 'presumptive right of access to discovery materials'" (Dkt. 1241 at 3, citing *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 145-46 (2d Cir. 1987)), but that is not good law.  *E.g., TheStreet.com*, 273 F.3d at 231 n.9, 233 n.11.

[2]  For example, Defendants assert that Dkt. 1241-1, Ex. 3 undermines a claim that "Cabrera secretly collected samples" (which Chevron does not assert), but ignore that Ex. 4 addresses "the balance of the sites" not subject to Tex-Pet's agreed remediation. ███████████████████████████████████████

[3]  *ABC Rug & Carpet Cleaning Serv. Inc. v. ABC Rug Cleaners, Inc.*, 2009 WL 105503, at *3-*4 (S.D.N.Y. Jan. 14,

effective government and public relations, which are crucial to Chevron's success in its regulated business environment. Strict precautions are taken to ensure the confidentiality of this information because public disclosure would jeopardize the effectiveness of Chevron's strategies.[4]

**2. Defendants failed to properly meet-and-confer.** Defendants' motion raises 16 documents and purports to put at issue all of Chevron's confidential-designated documents. But before filing, Defendants raised only four documents, never sought blanket de-designation, or even mentioned 12 of the documents they now discuss. And Chevron told Defendants it would consider and respond within 24 hours to their request regarding the four documents raised. Ex. 1. Rather than wait for a response, Defendants filed their motion.[5] *Id*.; Dkt. 723, ¶ 14.

Defendants' blanket challenge is improper. "Requiring [challenger] to bear the initial responsibility of articulating specific objections serves to ensure that the parties abide by the terms of the . . . Order and are focused on documents that may actually be used in this litigation."[6] A request for "unjustified re-review of [Chevron's] documents for the sake of [Defendants'] convenience" should be denied; "given the magnitude of" their "request and [their] unwillingness to identify a narrowed set of documents . . . blanket 'de-designation' is premature and unjustified." *Id*. "Unlimited access to every item turned up in the course of litigation" is "unthinkable."[7]

In sum, the designations are proper and do not hurt Defendants' ability to defend this action. It is "reasonable" to protect sensitive business documents produced in discovery from public disclosure "in light of the troublesome history of this litigation."[8]

---

2009); *Sullivan Mark'g, Inc. v. Valassis Comm's, Inc.*, 1994 WL 177795, at *2 (S.D.N.Y. May 5, 1994).
[4] Declaration of D. Samson, ¶¶ 2-7.
[5] Thus, Defendants' request for fees because of "Chevron's refusal to remedy meritless designations without Court intervention" (Dkt. 1241 at 4) is particularly meritless. In fact, in a good-faith effort to continue the meet and confer process despite the Defendants' premature filing, Chevron agreed to remove the confidentiality designations of five challenged documents first identified and discussed in the Defendants' motion. Ex. 1.
[6] *Bank of Montreal v. Optionable, Inc.*, 2011 WL 6259668, at *3 (S.D.N.Y. Dec. 15, 2011).
[7] *U.S. v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).
[8] *All-Tone Comm's v. Am. Info. Tech.*, 1991 WL 139863, at *1 (N.D. Ill. July 22, 1991).

Date:  June 17, 2013

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

<u>/s/ Randy M. Mastro</u>
Randy M. Mastro
Andrea E. Neuman
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for Chevron Corporation*

I, David A. Samson, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am the general manager of public affairs for Chevron Corporation ("Chevron"). I have held this position since 2004. I work in Chevron's Policy, Government and Public Affairs Department ("PGPA") and am responsible for creating, developing, implementing, and managing Chevron's strategies with respect to public affairs and corporate communications.

2. Public policy decisions often have significant implications for Chevron's current operations and future direction. As stated on page 3 of Chevron's Form 10-K filed on February 22, 2013, "[l]aws and governmental policies, particularly in the areas of taxation, energy and the environment affect where and how companies [within the petroleum industry] conduct their operations and formulate their products and, in some cases, limit their profits directly." Accordingly, Chevron exercises its fundamental right to participate in the political process.

3. For that reason, Chevron has invested significant time and resources to develop strategies and relationships essential for effective government and public relations. While it is impossible to quantify precisely the amount of money Chevron has spent in developing the expertise necessary to carry out an effective government and public relations strategy, Chevron has expended significant sums in hiring highly skilled and expert employees and consultants and developing strategies and relationships not shared by Chevron's competitors. The details of these strategies and relationships are not shared beyond the limited group of Chevron employees and consultants who direct them and carry them out. Strict precautions are taken, both internally and externally, to ensure their confidentiality, including requiring that confidentiality/non-disclosure agreements be signed by employees and consultants, limiting the distribution of information to select individuals, and only allowing persons within this group access to government and public relations strategies and deliberations. Disclosure of these strategies and relationships to the public at large and to Chevron's competitors would give an unfair advantage to Chevron's competitors and to those who oppose Chevron's legislative and regulatory priorities, as they would gain access to knowledge that Chevron has developed over time and at significant expense, and has taken extensive steps to keep confidential. This would harm Chevron's ability to participate in the political process and disadvantage Chevron in protecting and enhancing its reputation.

4. I have reviewed the specific documents whose confidentiality designations Defendants have challenged in their motion to strike certain confidentiality designations (filed on June 13, 2013). Several of these documents (Exhibits 5, 9, 10, 11, 12, 13, 14, 15, and 16) [REDACTED] Public disclosure of these documents would benefit Chevron's competitors, and those opposing Chevron's legislative and regulatory agenda, by providing them insight into Chevron's strategies and relationships with these individuals and groups. Competitors and others could use this confidential information to unfairly take advantage of Chevron's investments in its strategies, which would set back the significant sums of dollars that Chevron has already spent to develop and implement its messaging. Disclosure could also be used to undermine Chevron's relationships with these individuals and groups, as well as other organizations with which Chevron has cultivated close relationships over the years.

3

5. Exhibits 10-13 ▮▮▮▮▮▮▮▮▮▮▮▮ If competitors, or those opposed to Chevron's priorities, obtained this information, they could use this otherwise confidential information about Chevron's strategies and relationships to Chevron's detriment, and thus unfairly undermine Chevron's government relations investments and efforts.

6. Other documents (Exhibits 1 and 8) ▮▮▮▮▮▮▮▮▮▮▮▮ Public disclosure of this document would reveal Chevron's strategic approach to responding to negative or opposition media, and give competitors a significant advantage by providing insight they can use to undermine Chevron's strategies in similar situations.

7. Exhibit 8 ▮▮▮▮▮▮▮▮▮▮▮▮ Disclosure of this list would provide competitors, and those opposed to Chevron's priorities, ▮▮▮▮▮▮▮▮▮▮▮▮ Competitors would greatly value this information and use it to contact the same people to undermine Chevron's messaging efforts and undo years of cultivating ▮▮▮▮▮▮▮▮▮▮▮▮.

Executed on the 17th day of June in San Ramon, California.

_____
David A. Samson

I, Ethan Dettmer, a partner at Gibson Dunn & Crutcher LLP, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that about 4% of documents produced from Chevron-affiliated custodians in this matter (including experts and investigators) were marked confidential under the Court's protective order. Lawyers performing the review were instructed to mark those documents confidential where those documents reflect sensitive, non-public commercial information or strategies, including government relations strategies.

Executed on the 17th day of June in San Francisco, California.

_____
Ethan D. Dettmer

*Chevron v. Donziger,* **No. 11 Civ. 0691-LAK (S.D.N.Y.)**

**Index of Exhibits to Chevron Corporation's Opposition to Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje's Motion to Striking Certain of Chevron's Confidentiality Designations and for an Order Requiring Chevron to Demonstrate Why Other Documents Merit Protection**

Exhibit 1:   Letter, dated June 15, 2013, from E. Dettmer to J. Gomez and S. Donziger with the subject line, "Re: *Chevron Corp. v. Donziger, et al.*, 11 Civ. 0691 (LAK)."