# EXHIBIT 25



# Chevron claims Patton Boggs tried to cover up a fraud



0 comments

September 25, 2012: 9:12 AM ET

Tweet 5 | Share | Email | Print

**The oil giant has subpoenaed the big DC firm concerning its role in a fraud-tainted case.**

By Roger Parloff

FORTUNE -- While everyone is entitled to a lawyer to help him pursue his legal rights, no one is entitled to a lawyer to help him complete a crime in progress.

In a hearing this morning in a federal suit in New York, oil giant Chevron Corp. is accusing the politically connected, 500-attorney law firm of Patton Boggs of having violated that basic rule by assisting crooked plaintiffs lawyers who are attempting to shake the company down. It's an extraordinary claim to level at any law firm, let alone at an AmLaw 100 firm which is one of the leading lobbying and government-relations shops in Washington, D.C. (Patton Boggs's election law expert, Ben Ginsberg, is currently acting as national counsel to Mitt Romney's presidential campaign. Ginsberg is not personally involved in the disputes that are the subject of this article, however.)



The Trans-Ecuadorian Oil Pipeline System

## Most Popular

Consumer Reports slams Fisker Karma — 40

Foxconn factory reopens after brawl — 15

Stocks: Choppy trading ahead — 5

Toys R Us ramps up holiday hiring — 9

IPhone 5 journal: LTE performance and photos — 32

## Recent Posts

Chevron claims Patton Boggs tried to cover up a fraud

*Fortune* launches new daily app for the iPad

Women as bosses (Fortune, 1956)

Chevron's gripe arises from Patton Boggs's involvement in the long-running environmental suit that was filed against Chevron in Lago Agrio, Ecuador, in 2003 on behalf of Amazon rainforest inhabitants. The suit claims that a subsidiary of Texaco, which was acquired by Chevron in 2001, contaminated the rivers and wells the plaintiffs relied on for sustenance by employing shoddy drilling practices between 1964 and 1990. In February 2011 the plaintiffs won an $18.2 billion judgment in the case from an Ecuadorian provincial court, which they are now seeking to enforce in the courts of other countries, because Chevron has no assets in Ecuador.

The big fly in the ointment is that Manhattan federal judge Lewis Kaplan ruled in July that, judging from "uncontradicted evidence," the Lago Agrio plaintiffs' case has been "unquestionably … tainted" by an elaborate fraud committed by their lead U.S. lawyer Steven Donziger and his Ecuadorian co-counsel Pablo Fajardo. (At least five other U.S. federal district judges have also found "prima facie" evidence of fraud tainting the plaintiffs' case—a more tentative finding—as has one federal appeals panel.)

**MORE: Why lawyers are still fighting over 9/11**

The tricky part for Patton Boggs is that, since 2010, Donziger's and Fajardo's co-captain on the case has been Patton Boggs partner James E. Tyrrell, Jr., the regional managing partner for its New York and New Jersey offices and a member of its executive committee.

In June, Chevron's lawyers, led by Randy M. Mastro of Gibson, Dunn & Crutcher, served a 43-page subpoena on Patton Boggs, demanding that it turn over tens of millions of pages of documents detailing its role in the case. A hearing on Patton Boggs's motion to quash the subpoena is set for this morning before Judge Kaplan.

Patton Boggs protests that it's done nothing wrong, and that Chevron (**CVX**) is trying to intimidate it out of helping worthy plaintiffs pursue a legitimate cause.

"If someone seriously suggests that the 50-year-old law firm of Patton Boggs would wreck, would risk its professional reputation for a group of Ecuadorians whose case we feel strongly about, but that we would be involved in a . . . fraud," Patton Boggs's Tyrrell told a federal judge in a related proceeding in Washington, D.C., last July, "I have a bridge in New York I might like to try to sell them as well."

In response to a 2000-word email concerning this story sent yesterday at midday to both Tyrrell and Patton Boggs's outside counsel S. Alyssa Young, of New York's Leader & Berkon, Tyrrell phoned to say he was out of the office and would not have a chance to closely review the email in time for this article. He did answer a few quick questions, however, as will be noted where relevant.

Chevron's subpoena was served in connection with a civil suit it filed in February 2011 against Donziger, Fajardo, and the team's Denver-based environmental experts, Stratus Consulting, among others, accusing them of violations of the Racketeer Influenced and Corrupt Organizations Act (RICO). Last May Judge Kaplan denied the defendants' motions to dismiss, finding that Chevron's allegations, if proven, would indeed amount to criminal extortion, mail and wire fraud, money laundering, obstruction of justice, and witness tampering. Donziger and Stratus have denied wrongdoing; Fajardo defaulted by failing to appear.

Street crimes on Wall Street

The Fast and Furious gun walking scandal

**Search This Column**

[Search]

View all entries from this: Week, Month

**Sponsored Links**

**Microsoft® Windows Azure**
Discover Microsoft® Windows Azure. Sign Up for a Free 90-Day Trial!

**International Travel**
Travel Guard Travel Insurance. Protect Yourself - Get A Quote.

**MSSD - Hot Apple Tech**
New stock offering taking off with hot Apple technology innovations.

**BlackBerry® Bold™ 9900**
Get more of the speed, style and performance you love. Learn more.

Buy a link here

**Current Issue**



**Most Powerful Women**

- Give the gift of Fortune
- Get the Fortune app
- Subscribe


Follow

MORE: **Bad to the bone: A medical horror story**

Though Patton Boggs is not a defendant in the RICO case, Chevron has labeled it a "co-conspirator" in its complaint. And while Patton Boggs is not implicated in any of the frauds that Judge Kaplan has already found to have occurred, which predate its involvement, Chevron alleges that the firm has wrongfully "perpetuated" its co-counsel's earlier frauds by helping resist their exposure, trying to conceal the scope of their taint, and generally aiding the plaintiffs' attempts to enforce the fraud-tainted judgment in various courts around the world. (The plaintiffs have, so far, brought enforcement actions in Brazil and Canada. They have, on the other hand, fought hard to keep Judge Kaplan from ruling on the enforceability of the judgment in the United States, evidently fearful of an adverse ruling.)

Chevron is also peeved that Patton Boggs has taken this assignment on a partial contingency basis, meaning that the firm has a direct financial stake—about 3.6 percent, according to court documents—in the $18.2 billion judgment that Judge Kaplan found in July to be tainted to at least "some extent" by the frauds.

The most pressing question posed by the subpoena is whether the "uncontradicted evidence" of fraud by Patton Boggs's co-counsel might strip Patton Boggs of the privileges that ordinarily shield a legal team's confidential strategizing memos and emails from inspection by its adversaries. Under the so-called "crime-fraud" exception, both the "attorney-client" and "work product" privileges give way when there is probable cause to believe that a fraud or crime has been committed and that the communications in question were "in furtherance" of the fraud or crime. Since Judge Kaplan has already ruled that "there are no genuine issues of material fact with respect to the existence of fraud tainting at least some aspects of the Ecuadorian litigation," the key question will be how broadly he interprets the words "in furtherance."

"If Chevron were able to extend the crime-fraud exception to Patton Boggs under these theories," Patton Boggs's outside counsel S. Alyssa Young, of New York's Leader & Berkon, has argued in a brief opposing the subpoena, "the [plaintiffs] will effectively have been stripped of their right to legal representation going forward. No confidential discussion could be had regarding how best to address Chevron's allegations of misconduct, or how best to enforce the Ecuadorian judgment. Assuming there might ever be a set of facts on which a court should deem a plaintiff's case so meritless as to justify awarding a defendant unfettered access to plaintiff's litigation strategy in an ongoing matter, this exceedingly complex dispute is not it."

Looming just behind the knotty privilege question is a more ominous one: Whether Chevron will ever elevate Patton Boggs to the status of a defendant, either in the existing RICO case or in a separate action. Like most law firms, Patton Boggs is a partnership, meaning that every partner is ordinarily on the hook financially for the legal missteps of any one of them.

MORE: **The baffling claim against Facebook**

Patton Boggs's Tyrrell began representing the Lago Agrio plaintiffs in early 2010, not long after an investment fund that specializes in litigation finance, called Burford Capital, became interested in investing in the plaintiffs case. (See "**Have you got a piece of this lawsuit?**") (Later that year, in November, a Burford subsidiary did sink $4 million into the plaintiffs case in exchange for a 1.5 percent stake in any recovery, with the right to increase its investment to $15 million, entitling it a 5.5 percent stake. Burford later decided not to exercise the option, though, and sold

its interest in the case.)

In early 2010, Burford introduced the plaintiffs team to Tyrrell, and maintained that Burford had a "special relationship" with Patton Boggs, according to a June 2010 Powerpoint presentation Burford made to the plaintiffs team. Tyrrell and Burford's then chairman (who has since left Burford) were former colleagues at a different law firm, and Burford was then subletting space in Patton Boggs's New York office. Burford was also a client of Tyrrell's.

Evidently not wanting to hand over funds to Donziger with no strings attached, Burford specified in its funding contract—which became public through the litigation—that all moneys dedicated to the case would be distributed to Tyrrell, who would be Donziger's co-counsel and would have veto power over how Donziger spent the money.

When Patton Boggs first became involved in the case, Donziger, Fajardo, and their other U.S. co-counsel were deciding how to respond to a document subpoena Chevron had served on the plaintiffs' Denver-based environmental firm, Stratus, in December 2009. (Chevron had filed a special federal lawsuit in Denver for that purpose, known as a Section 1782 action, which enables a party to seek evidence in the U.S. that is relevant to litigation it is engaged in abroad.)

In Spring 2010, with Patton Boggs advising behind the scenes—the firm did not enter a formal appearance in any of the Lago Agrio-related litigations until the end of that year—Stratus and the Lago Agrio Plaintiffs each filed motions resisting compliance with the Denver subpoena on a number of grounds. (Two American law firms retained by Donziger in February to handle this effort abruptly withdrew from the assignment in March, after interviewing a Stratus official about the facts of the case. "I'm sorry it has come to this," one attorney explained to Donziger in an email, "but I feel if we proceed I may be compromising this firm's reputation and ethical stature and I cannot do that.")

**MORE: Baltimore: The city that sues the banks**

The efforts to resist the subpoena failed, and Stratus finally began turning over its troubling materials in October 2010. But by then Chevron had already filed other 1782 actions around the country—as of today, they've brought 23 of them—and had started gathering additional evidence of the alleged fraud, which we'll lay out below, including videotapes of the plaintiffs team's legal strategy sessions shot by a documentary filmmaker Donziger had invited to do so. (See "**Evidence of fraud mounts in Ecuadorian suit against Chevron**.")

In the two years since this damaging evidence began to emerge, Donziger has never submitted any sworn statement attempting to propound any benign narrative accounting for what the evidence shows. Donziger's attorney—criminal defense attorney John Keker of Keker & Van Nest—has promised at points in the past that Donziger will eventually tell his story, but only to a jury.

In March 2012, Chevron moved for a partial summary judgment in the RICO case, seeking, among other things, a ruling that the Lago Agrio judgment was unenforceable in the United States. Its lawyers submitted a 103-page list of 254 facts about which they said there could no longer be any honest dispute and which they said proved fraud. Each numbered assertion was backed by exhibits filed in the court record—many hundreds in all.

Under the Federal Rules of Civil Procedure, the party opposing summary judgment must dispute

each such claimed fact, item by item, citing its own exhibits in the record, or else the claimed facts will be deemed "admitted." Donziger and the other RICO defendants all defied this rule, and submitted nothing in response. Instead, they took the risky approach of arguing, on procedural grounds, that Chevron had no basis for filing its summary judgment motion in the first place, while offering no rebuttal of Chevron's factual assertions as a backup in the event that its procedural claim was rejected.

It was in fact rejected—as an "unworthy pretense," in Judge Kaplan's words—and the judge then went on to find that the "uncontradicted evidence" established that the following had occurred.

In late 2006, Donziger and Fajardo applied "duress and coercion" to the Ecuadorian trial judge by threatening to file an ethics complaint against him accusing him of "trading jobs for sex." Using this leverage, they prevailed upon him to abandon a previously agreed upon course for gathering evidence in the case (a series of judicial inspections of alleged contamination sites) in favor of having a single court-appointed expert make a global assessment of both the evidence and damages. They also persuaded the judge to appoint their favored candidate to become that global expert: an engineer named Richard Cabrera.

**MORE:** **The next major patent skirmish is already here**

"There is no genuine issue," Kaplan continued, "with respect to the facts that the [Lago Agrio plaintiffs team then] secretly prepared [Cabrera's] work plan, worked closely with him in carrying it out, and drafted most of the report and its annexes." Throughout this period, Cabrera and Fajardo repeatedly avowed to the Ecuadorian court that no such contacts were occurring, and that Cabrera was neutral and independent. According to evidence presented by Chevron, most of Cabrera's report was written in English by Stratus employees, then translated into Spanish by interpreters who had been sworn to secrecy.

The so-called Cabrera report was filed with the Ecuadorian court in early April 2008. It recommended an award for the plaintiffs of $16 billion.

The plaintiffs team then pretended to be disappointed with Cabrera's recommendation, asserting that it was too low. They "publicly objected to the very report that they, in large part, secretly had drafted," Judge Kaplan wrote.

Cabrera then purported to file answers to the plaintiffs' objections in November 2008, in which he raised his recommended award to $27 billion. But these answers, "like the report itself, were drafted at least in substantial part by the LAP team and written to read as if Cabrera had written them," Kaplan wrote. "This uncontradicted evidence demonstrates that the report and subsequent responses filed in Cabrera's name were tainted by fraud."

Finally, Kaplan also ruled that the Lago Agrio court's opinion rendering the $18.2 billion judgment in February 2011 "relied to some extent" on Cabrera's report, though Kaplan did not determine to what degree. Accordingly, Judge Kaplan denied that portion of Chevron's summary judgment motion that sought a ruling declaring the Ecuadorian judgment unenforceable, putting off that determination until a full trial can be held.

In his short telephone call with *Fortune* yesterday, Patton Boggs's Tyrrell noted that, because Judge Kaplan denied the partial summary judgment motion in that respect, the defendants would

still have an opportunity to fully contest all the facts Judge Kaplan characterized as "uncontradicted."

While the frauds described above allegedly occurred before Patton Boggs's arrival on the scene, there is some evidence of wrongdoing since then as well.

In the months since the $18.2 billion judgment came down in February 2011—close to a year after Patton Boggs entered the case—Chevron presented "mounds of evidence," in the words of a federal magistrate judge in Florida last June, that the Ecuadorian court's 188-page opinion containing that judgment *also* reflects clandestine assistance from, and possible ghostwriting by, the plaintiffs legal team. (See "**New Fraud Allegations in the Lago Agrio Case**.") That opinion incorporates, for instance—and this Judge Kaplan also found to be uncontradicted—large verbatim passages from one of the plaintiff team's internal legal memoranda that had never been introduced into the court record, and it cites erroneous scientific data that was, again, nowhere to be found in the official court record, but which matched erroneous data in the plaintiff team's internal databases. This is the judgment which Patton Boggs is now assisting the plaintiffs to enforce in other countries, and in which Patton Boggs now has a financial stake under its contingent fee arrangements.

Judge Kaplan called the evidence that the judgment itself may have been at least partially ghostwritten by the plaintiffs team "troublesome." Nevertheless, he declined to reach further conclusions until after more evidence could be presented.

**MORE: Google and Facebook's new tactic in the tech wars**

A plaintiffs spokesperson and Donziger's attorneys have made general denials of wrongdoing on his and the plaintiff team's behalf, but unsworn. In general they have argued that American observers don't understand Ecuadorian law and procedure. They have also alleged that Judge Kaplan is biased against them, though appeals judges have so far rejected their arguments. Finally, they have accused Chevron of a wide range of unrelated wrongdoing, but no U.S. judge has yet credited any of those claims.

One curiosity about Patton Boggs's strategy so far has been that, up to this point, both Tyrrell and Patton Boggs has managed to avoid ever stepping inside Judge Kaplan'scourtroom. Though Patton Boggs has openly represented the Lago Agrio plaintiffs in other 1782 actions around the country, and has openly handled multiple appeals on their behalf from Judge Kaplan's rulings, neither Tyrrell nor his firm has formally entered any appearance before Judge Kaplan, who has handled two 1782 actions and the RICO case. At the first court hearing in the RICO case, in fact, in February 2011, the attorney then representing the Lago Agrio plaintiffs admitted that the 67-page brief he had submitted in the matter, under his name, had been written by Patton Boggs.

In his short interview with *Fortune* yesterday Tyrrell argued that nothing could or should be read into that fact, other than that the "responsibilities were divided up," the cases before Kaplan are being handled by other firms, and "I can't be in all of the places at one time."

He also said he will not be attending today's hearing, because Patton Boggs will be represented by its outside counsel on the matter.





| Small Business | Conferences | News Alerts | Tumblr |
| Video | | | Google+ |

Market indexes are shown in real time, except for the DJIA, which is delayed by two minutes. All times are ET. **Disclaimer** LIBOR Warning: Neither BBA Enterprises Limited, nor the BBA LIBOR Contributor Banks, nor Reuters, can be held liable for any irregularity or inaccuracy of BBA LIBOR. **Disclaimer**. Morningstar: © 2012 Morningstar, Inc. All Rights Reserved. **Disclaimer** The Dow Jones IndexesSM are proprietary to and distributed by Dow Jones & Company, Inc. and have been licensed for use. All content of the Dow Jones IndexesSM © 2012 is proprietary to Dow Jones & Company, Inc. Chicago Mercantile Association. The market data is the property of Chicago Mercantile Exchange Inc. and its licensors. All rights reserved. FactSet Research Systems Inc. 2012. All rights reserved. Most stock quote data provided by BATS.

© 2012 Cable News Network. A Time Warner Company. All Rights Reserved. Terms under which this service is provided to you. Privacy Policy. Ad choices

Powered by WordPress.com VIP.