**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHEVRON CORPORATION,

                Plaintiff,

  v.                                   11 Civ. 0691 (LAK)

STEVEN DONZIGER, *et al.*,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**PLAINTIFF CHEVRON CORPORATION'S MOTION TO COMPEL**
**PATTON BOGGS TO PRODUCE DOCUMENTS ON ITS PRIVILEGE LOGS**


GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035
*Attorneys for Plaintiff Chevron Corporation*

Chevron Corporation ("Chevron") moves to compel Patton Boggs LLP ("PB") to produce "opinion" work product created in furtherance of crimes and frauds identified in the Court's March 15, 2013 Order. Dkt. 905 at 4-5, 62-63. PB admits that it has not produced that material. And it is apparent from PB's privilege logs that it is withholding "opinion" work product relating to (1) the preparation of the misleading declaration by Pablo Fajardo filed in U.S. federal courts on and after May 5, 2010; (2) documents authored, sent, and/or received by the Ecuadorian representatives who have refused to comply discovery orders in this case; (3) the writing of the Ecuadorian judgment; and (4) documents reflecting PB's communications with Donziger. In addition, a number of vague descriptions warrant production or, at a minimum, *in camera* review.

Chevron's attempts to resolve these issues through negotiation has yielded a few hundred additional documents,[1] but the opinion work product at issue remains unproduced.[2] PB refused to produce the documents on its logs to Chevron pursuant to Rule 502(d), so that Chevron could narrow the scope of what it would press for—a procedure that has been "employed to good effect" elsewhere in this case. Dkt. 1070 at 2; *see* Dkt. 1163, 1162, 1022. PB objected that this would allow Chevron to view documents relating to ongoing litigation. PB refused Chevron's suggestion that the Court and/or the Special Masters review any claimed ongoing litigation documents *in camera*. *See* Ex. D. PB proposed that it would select and then produce, pursuant to Rule 502(d), only those documents that fall within certain narrow categories, but Chevron and

---

[1] On May 22, 2013, PB agreed to produce: (a) communications with Laura Garr and Andrew Woods pursuant to the Rule 502(d) stipulations and Court orders; (b) communications to and/or from Steven Donziger through July 2011; (c) "fact" work product falling within the Court's five crime-fraud categories without any "opinion" work product; and (d) amended descriptions in its privilege logs. *See* Exs. D, E. As a result, from about May 22, 2013 through June 10, 2013, PB produced an additional 680 documents, most of which are heavily redacted. PB has not responded to Chevron's request for amended logs that identify the unredacted documents which were produced.

[2] Chevron served its subpoena on PB a year ago. After initially attempting to evade service (Dkt. 496-1), PB served hundreds of pages of objections (Dkt. 579), filed two motions for miscellaneous relief (Dkts. 493, 508), and moved to quash twice (Dkts. 527, 665). The Court ordered production based on narrowed specifications by May 1, 2013 (Dkt. 905 at 72), and extended the production deadline to May 15 and the privilege log deadline to May 22 based on PB's representation that it would have to review nearly 300,000 documents. Dkt. 1064. But by May 15, PB produced a surprisingly small volume of the documents reviewed: They produced only 4,982 documents (of which approximately 20% were deposition transcripts and court filings that accounted for over 50% of the total page count) and, by May 22, had identified only another 2,470 documents on its privilege logs. PB produced over 60% of the documents on May 15, and identified over 30% of its log entries on May 22. In this motion, Chevron is seeking 1,176 specific documents on PB's privilege logs listed in Exhibits A and B, and additional ones within the remaining entries in Exhibit C that Chevron cannot identify from PB's ambiguous descriptions.

PB were unable to agree on how to define those categories—a critical concern, given PB's control over which documents to pick within each category—and PB insisted that Chevron forego any potential future challenge before it even saw what documents PB chose. And PB's insistence that *none* of its documents were in furtherance of any crime or fraud—an untenable position in light of the March 15 Order—made it impossible to agree upon a formula for production.

**1. PB should produce documents on its privilege logs relating to the Fajardo declaration, communications with Ecuadorian representatives, the writing of the judgment, and PB's documents reflecting communications with Donziger.** See **Exhibit A.** In its March 15 Order, this Court held that Chevron had established probable cause sufficient to satisfy the first prong of the crime-fraud exception as to five categories of documents. *See* Dkt. 905 at 65-66, 72. The Court further held that no privilege attached to "opinion" work product prepared in furtherance of those crimes and frauds. *See* Dkt. 905 at 64-65. The Court's rulings apply to "in furtherance" communications regardless of PB's role or knowledge.[3] Nonetheless, PB has asserted privilege over all "opinion" work product related to the categories of crimes and frauds identified by the Court, insisting that *none* of its documents were in furtherance of any crime or fraud. PB will not produce "opinion" work product without a specific court order compelling it to do so, no matter how apparent it is that the privilege claim is vitiated by the March 15 Order.[4] However, there are approximately 334 documents for which PB's own descriptions leave no serious doubt

---

[3] "[C]ommunications in furtherance of contemplated or ongoing criminal or fraudulent conduct 'are properly excluded from the scope of the privilege even if the attorney is unaware that his advice is sought in furtherance of an improper purpose.'" Dkt. 1012 at 18 (quoting *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997)).

[4] PB has argued against the application of crime-fraud regardless of the facts. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

they were prepared in furtherance of an identified area of crime-fraud.

Foremost among these documents are those relating to the preparation and submission of the "deceptive" Fajardo declaration. This Court found evidence that this declaration "was a seriously misleading account" (Dkt. 905 at 35), and that its submission to courts in Section 1782 proceedings "establishes probable cause to suspect that the LAPs committed wire fraud and obstructed justice in that respect." *Id.* at 62. PB's logs list 99 entries relating to the Fajardo declaration with descriptions like "regarding draft declaration of Pablo Fajardo" and "discussing revisions to draft affidavit of Pablo Fajardo." *E.g.*, Ex. A at 3-4 (entries 757, 1015-1020). These descriptions show that the documents described were created in furtherance of a crime-fraud.

Second, PB's privilege logs contain documents related to the crime-fraud categories and authored by the LAPs' Ecuadorian agents. This Court has found that Chevron has a substantial need for such documents, as the LAPs' agents have refused to provide their documents to the LAPs for production to Chevron. Dkt. 905 at 59–61. Examples include: (1) a memorandum from Saenz "regarding Ecuadorian plaintiffs' counsel's research in connection with privilege claims," dated March 30, 2010 (Ex. A at 1 (entry 471)), the same day his co-counsel Julio Prieto wrote that if the truth about Cabrera was disclosed, "all of us, your attorneys, might go to jail" (Dkt. 9, Ex. 11); (2) an undated memorandum from Saenz "regarding Chevron's 'ghostwriting' allegations" (Ex. A at 1 (entry 76)); and (3) a May 31, 2010 Prieto-authored "draft submission to the Ecuadorian court regarding request to submit supplemental damage assessment" (*id.* at 36 (entry 1661))—which misled on Cabrera's relationship with the LAP representatives.

Third, documents on PB's privilege logs likely were made in furtherance of the writing of the Ecuadorian judgment. For example, several entries dated late in September 2010 concern "review and production of documents in Stratus 1782" (Ex. A at 59-60 (entries 1357, 1363-65)) at about the same time PB was pressuring Stratus to withhold documents reflecting revisions to the LAPs' final Ecuadorian briefs. Ex. G. PB's attempt to conceal these drafts furthered the LAPs' ghostwriting because material PB cut from the LAPs' final brief appeared verbatim in the

3

judgment. *See* Dkt. 764, ¶¶ 148-51.[5] *See also* Ex. A at 69-70 (entries 1602-1607).

Finally, Donziger's testimony regarding his communications with others, including PB, resulted in a waiver of any privileges to those communications. *See* Ex. H at 3-7 {2583:13-2587:22}; Ex. I. ███████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████ Thus, PB should produce the portions of documents on its privilege logs reflecting communications with Donziger relating to the Lago Agrio litigation, including Cabrera, the Fajardo affidavit, the submission to the Lago Agrio court for permission to file new reports, the preparation of "cleansing" reports, Section 1782 proceedings, and the judgment, through July 19, 2011, the end of Donziger's1782 testimony. *See*, *e.g.*, Ex. A at 1, 45 (entries 123 & 1670).

**2. Inadequate log descriptions warrant production or, at a minimum, *in camera* review.** *See* **Exhibit B.** There are numerous vague descriptions on PB's privilege logs.[6] For example, the description of a May 5, 2010 email string—"preparation for draft filings in 3TM and Stratus 1782 actions" (Ex. B at 31 (entry 1626))—provides no basis to claim privilege apart from (i) the false Fajardo declaration, filed that same day in the Stratus 1782, or (ii) a brief the LAPs subsequently submitted referring to Cabrera falsely as "an independent, court-appointed expert." *See Chevron Corp. v. 3TM Consulting,* 10-mc-00134 (S.D. Tex.), Dkt. 38.

---

[5] PB also took the position that it would never permit Chevron to view, pursuant to Rule 502(d), its claimed "opinion" work product relating to its analysis of the judgment after its issuance because that supposedly could never be in furtherance of the fraudulent writing of the judgment. *See*, *e.g.*, Ex. B at 108 (entries 2270-2273). But PB's post-judgment analysis could very well be in furtherance of that fraud. It could show that the judgment was ghostwritten by the LAPs' team or, at a minimum, contained the LAPs' internal work product nowhere to be found in the court record—something PB denied to the Second Circuit in late 2011 in arguing falsely that the Fajardo trust email quoted a stock Ecuadorian Supreme Court case, when, in reality, Fajardo's misquotations and miscitations show up in the judgment. *See* Dkt. 400-20, Ex. 2127 (at 11 n.6). Covering up that the judgment was ghostwritten or had the fingerprints of the LAPs' team on it, and then seeking to enforce such a judgment around the world and mislead courts about it, would be in furtherance of writing the fraudulent judgment. *See United States v. Royer*, 549 F.3d 886, 896 (2d Cir. 2008) (acts in furtherance of conspiracy include post-criminal conduct designed to cover up the crime, obstruct discovery of the crime, or cause others to take actions to further the ends of the conspiracy).

[6] *See U.S v. Zolin*, 491 U.S. 554, 572, 109 S. Ct. 2619, 2631 (1989) ("[A] lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the privilege."); *U.S. v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (privilege assertion that "does not provide sufficient detail . . . will be rejected."); *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 455 (S.D.N.Y. 2011) (ordering *in camera* review for crime-fraud).

4

Dated: June 20, 2013                           Respectfully submitted,

New York, New York                             GIBSON, DUNN & CRUTCHER LLP

                                          /s Randy M. Mastro
Randy M. Mastro
Andrea E. Neuman
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035


William E. Thomson
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile 213.229-7520

*Attorneys for Plaintiff Chevron Corporation*

## List of Exhibits

**Exhibit A:**  Table of PB Privilege Log Entries Reflecting Documents in Furtherance of Crime-Fraud

**Exhibit B:**  Table of PB Privilege Log Entries With Inadequate Descriptions Warranting *In Camera* Review

**Exhibit C:**  Table of Remaining PB Privilege Log Entries

**Exhibit D:**  June 8, 2013 Email from R. Brodsky to Special Masters

**Exhibit E:**  June 10, 2013 Email from R. Brodsky to A. Young

**Exhibit F:**  Marked as Confidential and has been filed Under Seal Pursuant to the Protective Order in this Action (Dkt. 723).

**Exhibit G:**  October 4-5, 2010 Email Chain Among PB Attorneys, Counsel for Stratus, and Others, Produced as DONZ00031666

**Exhibit H:**  Excerpts from the Deposition Transcript of Steven Donziger

**Exhibit I:**  January 19, 2011 Letter from B. Kaplan to M. Gitter