# **Exhibit B**

Page 1

1    UNITED STATES DISTRICT COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    11 CIV 0691 (LAK)

4    _____

5    VIDEOTAPED DEPOSITION OF JOHN McDERMOTT

     May 21, 2013

6    _____

7    CHEVRON CORPORATION,

8    Plaintiff,

9    against

10   STEVEN DONZIGER, et al.,

11   Defendants.

     _____

12

13            Pursuant to Notice and Subpoena, the

14   videotaped deposition of JOHN McDERMOTT, called by

15   Defendants, was taken on Tuesday, May 21, 2013,

16   commencing at 10:05 a.m., at 1801 California Street,

17   Suite 4200, Denver, Colorado, before Kelly A.

18   Mackereth, Certified Shorthand Reporter, Registered

19   Professional Reporter, Certified Realtime Reporter

20   and Notary Public within Colorado.

21

22

23

24

25

Page 2

1 APPEARANCES:
2 GIBSON DUNN & CRUTCHER LLP
  200 Park Avenue
3 New York, New York 10166
  Attorneys for Plaintiff
4 BY: STEPHEN HENRICK, ESQ.
  (By video conference)
5 shenrick@gibsondunn.com
  RANDY MASTRO, ESQ.
6 rmastro@gibsondunn.com
  (By video conference for portion)
7 RACHEL BROOK, ESQ.
  (By video conference for portion)
8 rbrook@gibsondunn.com
  and
9 GIBSON DUNN & CRUTCHER LLP
  1801 California Street
10 Suite 4200
  Denver, Colorado 80211
11 Attorneys for Plaintiff
  BY: ROBERT BLUME, ESQ.
12 rblume@gibsondunn.com
  ALLISON KOSTECKA, ESQ.
13 akostecka@gibsondunn.com
14
15 GOMEZ LLC
  111 Quimby Street
16 Suite 8
  Westfield, New Jersey 07090
17 Attorneys for Defendants Javier
  Piaguaje Payaguaje and Hugo Gerardo
18 Camacho Naranjo
  BY: JULIO C. GOMEZ, ESQ. (For Portion)
19 (By speakerphone)
  jgomez@gomezllc.com
20
21 BROWNSTEIN HYATT FARBER SCHRECK
  410 Seventeenth Street
22 Suite 2200
  Denver, CO 80202-4432
23 Attorneys for the Deponent
  BY: LAWRENCE W. TREECE, ESQ.
24 ltreece@bhfs.com
25

Page 3

1 CONTINUED APPEARANCE:
2 ALSO PRESENT:
  HON. MAX GITTER (Ret.),
3 Special Master
4 JUSTIN ORMAND, ESQ., Assistant to the
  Special Master
5
  JOEL CORIAT, Videographer
6
7 * * * * * * *
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 4

1 * * * * * * *
2 PROCEEDINGS
3 THE VIDEOGRAPHER: Okay. We are on the
4 record at 10:05. My name is Joel Coriat representing
5 Veritext. The date today is May 21st, 2013. This
6 deposition is being held in the office of Gibson
7 Dunn & Crutcher located at 1801 California Street,
8 Suite 4200 in Denver, Colorado.
9 The caption of this case is Chevron
10 Corporation versus Steven Donziger, et al. in the
11 U.S. District Court, Southern District of New York.
12 The name of the witness is John McDermott.
13 At this time the attorneys will identify
14 themselves and the parties they represent, after
15 which our court reporter, Kelly Mackereth, from
16 Veritext will swear in the witness.
17 MR. BLUME: Your Honor, Robert Blume and
18 Allison Kostecka for Chevron.
19 MR. TREECE: Your Honor, Lawrence W.
20 Treece representing Mr. McDermott. We're both with
21 Brownstein Hyatt Farber & Schreck.
22 MR. GOMEZ: Julio Gomez on behalf of
23 defendants Hugo Gerardo and Javier Payaguaje.
24 THE SPECIAL MASTER: I'm Max Gitter, the
25 Special Master. And with me is my associate Justin

Page 5

1 Ormand.
2 Mr. Gomez, would you please confirm what
3 we know to be the case, that Mr. Donziger has chosen
4 not to be -- attend this deposition?
5 MR. GOMEZ: Yes, that is the case. My
6 understanding is he is traveling with the purpose of
7 chairing substitute counsel.
8 THE SPECIAL MASTER: Thank you, sir.
9 Go ahead.
10 JOHN McDERMOTT,
11 having been first duly sworn, was examined and
12 testified as follows:
13 THE SPECIAL MASTER: I think we're ready.
14 MR. TREECE: Your Honor, if I might,
15 before we start, I asked Mr. Blume's permission to
16 say this. Mr. McDermott is appearing today pursuant
17 to subpoena, and he is also appearing pursuant to a
18 court order issued by the Court on May 17 and an
19 agreement regarding privilege issues entered into by
20 the parties on that date.
21 We anticipate that much of the inquiry of
22 Mr. McDermott will be of material that would
23 otherwise be attorney work product, attorney-client
24 privilege, or client confidences.
25 This arises out of Mr. McDermott and

2 (Pages 2 - 5)

1 Brownstein's former representation of approximately
2 47 of the individual native Ecuadorian plaintiffs in
3 the underlying case.
4        And we interpret the Court's order as
5 requiring Mr. McDermott to testify regardless of any
6 claims of attorney-client privilege, work-product
7 privilege, or client confidences. And Mr. McDermott
8 is prepared to do so.
9        We also interpret the Court's order as
10 relieving Mr. McDermott, me, or Brownstein from
11 interposing any objections based on attorney-client
12 privilege, work product, or client confidences that
13 might otherwise be appropriate to protect the
14 interests of Mr. McDermott and Brownstein's former
15 clients. And we do not intend to interpose any
16 independent objections to protect those interests.
17        Some we understand of the plaintiffs in
18 this action are former clients, and we will answer
19 any question that is asked regardless of whether it
20 may call for protected information, unless objection
21 is made by the defendants, in which case we will not
22 answer until that is resolved and we are ordered to
23 do so.
24        And we will independent of the Court's
25 order treat any failure of defendants to object

1 independently as a waiver of any privilege objection
2 they may have.
3        THE SPECIAL MASTER: Thank you, sir.
4                EXAMINATION
5 BY MR. BLUME:
6    Q    Mr. McDermott, how are you today?
7    A    I'm fine. Thank you.
8    Q    If you could -- and I now forget whether
9 you spelled your last name for the reporter. Did we
10 go through that?
11        If you could state your first and last
12 name and spell your last name.
13        THE SPECIAL MASTER: Mr. Blume, if you
14 could move your microphone or speak up or something.
15 We're having -- at least I'm having trouble hearing
16 you.
17        MR. BLUME: Is this better, Your Honor?
18        THE SPECIAL MASTER: Yes, much better.
19        MR. BLUME: Okay.
20    Q    (BY MR. BLUME) If you could state your
21 first and last name and spell your last name for the
22 record, please?
23    A    John McDermott, M-c-D-e-r-m-o-t-t.
24    Q    And, Mr. McDermott, you're a shareholder
25 at the Brownstein Hyatt Farber & Schreck firm; is

1 that correct?
2    A    Correct.
3    Q    And just to quickly go through a little
4 bit of your background. You are a licensed attorney
5 in the state of Colorado?
6    A    Yes.
7    Q    Are you licensed to practice law in any
8 other state?
9    A    I don't -- I don't believe so.
10   Q    Have you sat for the bar in any other
11 state?
12   A    I have not sat for the bar in any other
13 state. And just going back to the previous question,
14 I have practiced -- I have been admitted for purposes
15 of practicing in certain other states, but I don't
16 think I'm formally licensed in the sense you may have
17 been asking.
18   Q    Okay. Have you ever received a pro hac
19 vice admission for practice in the state of New York,
20 as you recall?
21   A    I don't recall. I think I have, but I
22 don't -- in fact, I'm almost certain that I have, but
23 I don't recall the cases.
24   Q    Okay. You're a 1981 law graduate from the
25 University of Michigan; is that correct?

1    A    Correct.
2    Q    How long have you been at the Brownstein
3 firm, sir?
4    A    For just over five years.
5    Q    And before that you were at Holme Roberts
6 and Owen; is that correct?
7    A    Correct.
8    Q    How long were you at the Holme Roberts
9 firm?
10   A    Oh, 13 or 14 years.
11   Q    Okay. Did you join Brownstein as a
12 shareholder in that firm?
13   A    Yes. We have a two-tier shareholder. I
14 joined as an income shareholder and then was
15 subsequently made an equity shareholder.
16   Q    What was your status when you -- in
17 January of 2010 when you first got involved with some
18 of the Ecuadorian plaintiffs in this case?
19   A    I'm not certain that -- at our firm when
20 they bring a lateral in you have to be an income
21 shareholder for two years before you're considered
22 for equity. So I've been there five years so that --
23 I'm not sure how that works out.
24   Q    But you were -- by shareholder at
25 Brownstein, that's similar to a partner at other

3 (Pages 6 - 9)

**Page 10**

1 firms; is that correct?
2    A    Correct.
3    Q    Whether income or equity, suffice to say
4 in January of 2010 you were a shareholder or a
5 partner at the Brownstein firm; is that correct?
6    A    Correct.
7    Q    You understand obviously the oath you took
8 today; is that correct?
9    A    Yes.
10    Q    And that this a deposition, as Mr. Treece
11 noted, conducted with -- in connection to a federal
12 proceeding in the Southern District of New York. Are
13 you aware of that?
14    A    Yes.
15    Q    Is there anything that happened in the
16 last couple of days which would impede your ability
17 to give truthful and honest testimony today?
18    A    No.
19    Q    Are you taking any medications or
20 otherwise have anything about you which may inhibit
21 your ability to give truthful and honest testimony
22 today?
23    A    No.
24    Q    Have you ever been deposed before, sir?
25    A    Yes.

**Page 11**

1    Q    How many times?
2    A    Once.
3    Q    How long ago?
4    A    Probably 20 years ago.
5    Q    Okay. And was that in your role as an
6 attorney or as a witness or a party?
7    A    My recollection is that I represented a
8 co -- I represented a defendant in a criminal case
9 and I was deposed because of some alleged misconduct
10 by another defendant, but I don't recall the
11 circumstances.
12    Q    Okay. In the last ten years can I assume
13 by the fact that you are a commercial litigator that
14 you've been involved in depositions, taken
15 depositions and defended depositions in the course of
16 your career?
17    A    Yes.
18    Q    So you are -- you're familiar with the
19 ground rules, I imagine, but I will, if you'll
20 indulge me, just go over them briefly so that we're
21 clear today.
22        You understand, do you not, that for the
23 reporter sitting to your right you need to give a
24 verbal response and not a head nod or a shake.
25        Do you understand that?

**Page 12**

1    A    Yes.
2    Q    And I will try very hard not to interrupt
3 you because the reporter will have a difficult time
4 taking down our statements if we speak at the same
5 time. And I would ask, similarly, if you would let
6 me finish my question, then we can avoid that
7 problem.
8        Is that okay?
9    A    Yes.
10    Q    All right. As Mr. Treece noted earlier,
11 there may be objections to portions of your testimony
12 either by your attorney, Mr. Treece -- who himself is
13 a shareholder at Brownstein; is that correct?
14    A    Yes.
15    Q    Okay. -- or by Mr. Gomez, who is on the
16 phone. And if you hear an objection, sir, I would
17 ask that you delay your response to my question until
18 the special master has an opportunity to rule on that
19 objection.
20        Is that okay?
21    A    Yes.
22    Q    Okay. If at any point in time,
23 Mr. McDermott, you don't understand my question or
24 you feel as though my question is unclear, if you
25 could ask me to clarify it to make sure that my

**Page 13**

1 question -- to make sure that your answers are, in
2 fact, answering the question that I tried to
3 articulate.
4        Is that okay?
5    A    Yes.
6    Q    Okay. The special -- the order of the
7 special master number 3 indicates that we will take
8 two breaks during the morning, and that's our
9 practice.
10        If, however, you need an additional break
11 for whatever reason, so long as a question is not
12 pending, if you could just signal to me or ask for a
13 break. And with the special master's permission,
14 we'll try to accommodate that, okay?
15    A    Great.
16    Q    All right. How long, if you can estimate
17 for me, did you spend preparing for this deposition,
18 sir?
19    A    I didn't.
20    Q    Okay. And so by that answer I assume that
21 in advance of this deposition specifically you didn't
22 review any documents that might refresh your
23 recollection at all?
24    A    That's correct.
25    Q    All right. Did you participate in the

4 (Pages 10 - 13)

Page 14

1 document collection and production that your firm did
2 as a result of a subpoena to it?
3     A    Yes.
4     Q    All right. And are you familiar, sir,
5 that the production was approximately 500 pages,
6 about 75 or so documents; does that sound right?
7     A    Yeah, I'm sorry. I don't remember the
8 scope of what was produced.
9     Q    All right. During the course of that
10 collection and production, did you have occasion at
11 that point to review some of those documents?
12         And did that review refresh your memory as
13 to things that occurred in and around January and
14 February, March of 2010?
15    A    Yes, a bit. Although as I was reviewing
16 the documents, as I recall, I was reviewing for
17 purposes of privilege, I think, rather than
18 substance.
19    Q    Okay. I understand from my review of the
20 documents that you worked primarily with two other
21 attorneys at Brownstein in this matter; is that
22 correct?
23    A    Correct.
24    Q    Michael Hoke, H-o-k-e; is that right?
25    A    Yes.

Page 15

1     Q    And he's, as I understand it -- well, and
2 Ericka Englert; am I pronouncing that right?
3     A    That's right.
4     Q    And as I can put it together, Ericka
5 Englert was a more senior associate at the Brownstein
6 firm in and around the January time frame of 2010; is
7 that right?
8     A    Yes.
9     Q    And Michael was slightly more junior than
10 Ericka?
11    A    Yes.
12    Q    Prior to your deposition today, did you
13 have an occasion to speak with either Mr. Hoke or
14 Ms. Englert about your representation of the LAPs in
15 2010?
16    A    Well, I haven't spoken with Ericka for a
17 couple years since they left the firm. I
18 routinely work with Michael Hoke so I speak with him
19 numerous sometimes a day.
20         Yesterday we were talking about a matter
21 that needed some attention and I commented that I
22 would be out of the office. And then I said, I'm
23 giving a deposition in this matter. And he
24 acknowledged that, but we didn't talk substance.
25    Q    When did Ms. Englert leave the Brownstein

Page 16

1 firm; do you recall?
2     A    I would guesstimate two to three years
3 ago.
4     Q    Okay. And did she go to -- did she remain
5 in Denver and go to another firm; do you know?
6     A    I think, but I'm not certain, she's an
7 assistant attorney general for the State of Colorado.
8     Q    Okay. During the course of the document
9 collection and production, did you work with
10 Mr. Hoke -- well, let me ask you this, was
11 Ms. Englert at the Brownstein firm during the time
12 you collected documents in this matter?
13    A    No.
14    Q    Okay. Did you work with Mr. Hoke in that
15 effort of collection and production of documents in
16 response to the subpoena?
17    A    Yes.
18    Q    Before your deposition today -- and I'll
19 frame it to say more broadly let's say within the
20 last six months, have you had occasion to speak to
21 Steven Donziger about this matter or the litigation
22 in New York?
23    A    No.
24    Q    Do you recall when the last time was that
25 you spoke with Steven Donziger, approximately?

Page 17

1     A    I can't give you a date, but it would be
2 within a day or two of the -- of e-mails where we
3 talked about withdrawing.
4     Q    Okay. So 2010 is fair to -- sometime in
5 the first or second quarter of 2010; is that fair?
6     A    Yes.
7     Q    There are other lawyers involved in the
8 New York case and have been involved in the New York
9 case, one of whom is on the phone today, Julio Gomez.
10         Have you spoken with him at all?
11    A    I don't recall speaking with him. I
12 recall having one discussion with a lawyer, one,
13 maybe two discussions with a lawyer from Texas six to
14 eight weeks ago about the subpoena.
15    Q    And if I mention the Smyser law firm, does
16 that sound familiar with the lawyer from Texas?
17    A    I don't believe that's the gentleman's
18 name I spoke to.
19    Q    Larry Veselka?
20         Thank you.
21    A    That may be it.
22    Q    Okay.
23    A    I'm sorry, I just don't remember.
24    Q    And when you say about the subpoena, was
25 that the subpoena that Brownstein received for

5 (Pages 14 - 17)

| Page 18 |
|---|
| 1 documents or the subpoena to testify today? |
| 2   A   The former. |
| 3   Q   Okay. And did you receive any instruction |
| 4 from Mr. Veselka about how to respond to the document |
| 5 subpoena? |
| 6   A   Well, I got the sense that he was hoping |
| 7 to give me instructions, but I didn't take any |
| 8 instructions. I mean, he wanted to talk about |
| 9 privilege issues and a host of other things, which |
| 10 I -- I didn't know whether it was appropriate. So I |
| 11 didn't speak with him. |
| 12   Q   Okay. When you say you didn't speak with |
| 13 him, did you actually have a conversation but not |
| 14 speak of those topics or did you simply try to |
| 15 arrange an actual phone call and never set it up? |
| 16   A   My recollection is we did have a brief |
| 17 conversation where he wanted to talk, nothing |
| 18 inappropriate. I mean, I just think he was concerned |
| 19 about waiver issues and -- but I don't believe we -- |
| 20 we didn't ever have a substantive discussion about |
| 21 it. |
| 22   Q   Have you spoken with anyone from the Keker |
| 23 law firm out of Northern California, John Keker or |
| 24 any of his associates? |
| 25   A   I don't believe so. |

| Page 19 |
|---|
| 1   Q   Throughout the course of this morning, |
| 2 Mr. McDermott, I'll ask you a series of questions to |
| 3 see what it is you remember, and then I'll try to |
| 4 refresh your memory with some documents if you have a |
| 5 difficult time. |
| 6       So let me start by asking you, do you |
| 7 recall back in the January 2010 time frame how you |
| 8 first got contacted about getting involved in this |
| 9 action in Colorado? |
| 10   A   Norm Brownstein is the senior name partner |
| 11 in our law firm. And Norm -- as I recall, Norm |
| 12 summoned me to his office, as he does periodically, |
| 13 and said that he I think had received a phone call |
| 14 from a friend of his who's a lawyer in New York for |
| 15 one of the large Wall Street law firms. And I think |
| 16 he said -- I think Norm said that this lawyer |
| 17 indicated that his firm was somehow involved in |
| 18 working with Mr. Donziger on this case. |
| 19       And Norm just told me to call |
| 20 Mr. Donziger, as I recall, and I did. And that was |
| 21 really -- that's kind of how Norm operates. And he |
| 22 wasn't really in the loop anymore. So I just kind of |
| 23 took it and ran with it. |
| 24   Q   Do you recall whether Mr. Brownstein told |
| 25 you the name of that firm? |

| Page 20 |
|---|
| 1   A   Yes, I'm sure he did, but all I recall is, |
| 2 you know, one of the top law firms in New York. |
| 3   Q   Do you recall specifically when -- do you |
| 4 recall if that was in January of 2010? |
| 5   A   I don't recall. |
| 6   Q   Okay. |
| 7       MR. BLUME: Your Honor, in front of you is |
| 8 a box of documents which are identified by tabs. I |
| 9 will identify the document by tab number and then |
| 10 assign it an exhibit number beginning with |
| 11 Exhibit 4000. So I would ask that you be handed tab |
| 12 number 2, which I will label as Exhibit 4000. |
| 13       (Exhibit 4000 marked.) |
| 14       MR. BLUME: And I will hand a copy of it |
| 15 to the witness, as well as one to Mr. Treece. |
| 16       And, Mr. Gomez, I understand that there's |
| 17 an arrangement made to get you copies of these as |
| 18 well. |
| 19       MR. GOMEZ: Yes, that's correct. My |
| 20 understanding is that I will be e-mailed documents as |
| 21 they are marked. |
| 22       MR. BLUME: And Ms. Kostecka sitting to my |
| 23 right is attempting to do that now. So if you could |
| 24 indicate when you've received it. And I will proceed |
| 25 with your permission, Mr. Gomez. But if you would |

| Page 21 |
|---|
| 1 like to see the document first, I'll represent to you |
| 2 that Exhibit 4000 are the time sheets from the |
| 3 Brownstein firm. |
| 4       MR. GOMEZ: That's fine. |
| 5   Q   (BY MR. BLUME) Okay. If you could thumb |
| 6 through Exhibit 4000, Mr. McDermott, and tell me |
| 7 whether this, to the best of your knowledge, is an |
| 8 accurate reflection of the time sheets between |
| 9 January 19th, 2010 and March 24th, 2010 for the |
| 10 matter listed here as Daniel Carlos Lusitande |
| 11 Yaiguaje, I believe that's a misspelling, and Stratus |
| 12 Consulting, care of the law offices of Steven R. |
| 13 Donziger. |
| 14       Do you see that, sir? |
| 15   A   Yes. |
| 16   Q   And is this -- does this fairly and |
| 17 accurately reflect to you the form that the time |
| 18 sheets at Brownstein get printed on a matter such as |
| 19 this? |
| 20   A   Yes. And I just want to be clear. |
| 21 Obviously, these aren't the time sheets. These are |
| 22 the bills. |
| 23   Q   Right. And my mistake, you're right. |
| 24 These are the -- |
| 25       Does this reflect the form of the invoice |

6 (Pages 18 - 21)

Page 22

1 that the Brownstein firm would send to a client in
2 anticipation of payment?
3    A    Yes.
4    Q    And do you recognize this and can you
5 identify this as, in fact, the invoice the Brownstein
6 firm sent to Steven Donziger for payment in the
7 Payaguaje matter?
8    A    Yes, it is.
9    Q    Okay.  Does looking at this time sheet,
10 Exhibit 4000, refresh your memory as to when you were
11 first contacted about the engagement?
12    A    I'm sure it would have been January 18th
13 or 19th of 2010.
14    Q    Okay.  Looking through this time sheet,
15 sir, I see primarily time of Ms. Englert and Mr. Hoke
16 and your time kind of interspersed.
17       Do you as a practice always reflect all of
18 your time spent on a matter or do you on occasion
19 write off some of your time or not mark some of your
20 time to bill a client?  And was that the case in this
21 case?
22    A    Well, sometimes I don't bill my time if I,
23 you know, have a short conversation.  But I don't
24 recall that there was anything special about this
25 engagement that would have caused me to write off any

Page 23

1 significant amount of time.
2    Q    Okay.  So it's fair to say that most of
3 the efforts of your firm, at least from January to
4 March, would be reflected in the invoice billed to
5 Mr. Donziger in this matter; is that true?
6    A    Yes.
7    Q    Okay.  Before January of 2010 had your
8 firm represented or otherwise worked with Steven
9 Donziger in the past?
10    A    I had not and I have no knowledge that
11 our -- anybody at our firm knew Mr. Donziger or had
12 ever worked with him.
13    Q    Okay.  In the address box of your time
14 sheet, sir, there's a company called Stratus
15 Consulting.
16       Do you see that?
17    A    Yes.
18    Q    Do you know -- are you familiar with
19 Stratus Consulting?
20    A    Generally.
21    Q    All right.  And I will suggest to you, and
22 we'll talk more about them later, they're a
23 consulting firm out of Boulder, Colorado.
24       Is that consistent with your memory of
25 Stratus Consulting?

Page 24

1    A    Yes.
2    Q    Prior to January of 2010 had you done any
3 work or had your firm done any work for Stratus
4 Consulting?
5    A    I hadn't, and I don't recall anything
6 coming up in our conflict search.  When it was
7 originally anticipated that we might represent them,
8 I don't recall anything in conflicts coming up that
9 suggested that we had previously represented Stratus.
10    Q    Okay.  Also a part of this firm -- or I'm
11 sorry, a part of this engagement represented were 47
12 purported citizens of Ecuador.  And I will hand to
13 you tab 8 and mark it as Exhibit 4001.
14       (Exhibit 4001 marked.)
15       MR. BLUME:  And, Mr. Gomez, we are
16 e-mailing Exhibit 4001 to you.  I will suggest that
17 it is a draft engagement letter dated 26 February
18 2010 which on the top lists a series of names.
19    Q    (BY MR. BLUME)  And, Mr. McDermott, do you
20 recognize this as a draft engagement letter prepared
21 by your firm for this matter?
22    A    I don't know whether this is a draft or is
23 actually the final.
24    Q    Okay.  And I only say draft because on
25 the -- on pages 5 of 7, 6 of 7, and 7 of 7 there are

Page 25

1 signature lines that remain unsigned.
2    A    Yeah.  Yeah, again, I just don't know if
3 this is -- but this is certainly --
4    Q    This is consistent with the form that the
5 Brownstein firm uses?
6    A    Yes.
7    Q    On the top of page 1 of 7, and that's
8 Bates number DONZ 00054374, is a list of names.  And
9 I'll simply ask you to look at those names and tell
10 me whether you or your firm prior to February of 2010
11 had ever represented any of those individuals.
12    A    I don't know, but I would be surprised.
13    Q    Okay.  And do you recall at any point in
14 time up until today, sir, whether you have personally
15 met any of these individuals?
16    A    I'm quite certain that I have not.
17    Q    Okay.  You mentioned earlier,
18 Mr. McDermott, that there was a time when your firm
19 considered representing not only the Ecuadorian
20 plaintiffs from -- well, let me strike that.
21       Do you understand that the names listed
22 here are all plaintiffs in a litigation called the
23 Lago Agria litigation in Ecuador?
24    A    Yes.
25    Q    Okay.  And I will refer to them

7 (Pages 22 - 25)

Page 26

1 collectively as the LAPs, capital L, capital A,
2 capital P, for Lago Agria plaintiffs, perhaps call
3 them the LAPs. Is that okay?
4    A    Yes.
5    Q    Okay. And if at any point in my questions
6 you need to identify any particular person within
7 that group, please let me know.
8        You mentioned earlier that you had
9 considered or the firm had considered at one point
10 representing both the LAPs and Stratus Consulting.
11       Do you remember that?
12   A    Yes.
13   Q    Tell me what you recall about how the
14 discussions of that representation began.
15   A    I remember Mr. Donziger asking us if we
16 would represent Stratus. And I don't recall, one of
17 two things happened, I believe.
18       I believe that we either concluded that we
19 were uncomfortable representing Stratus and the LAPs
20 or Stratus decided that they weren't comfortable
21 having us represent everyone and they retained
22 separate counsel.
23       I don't recall which it was, but I believe
24 it was one or the other.
25   Q    Let me direct your attention -- or let me

Page 27

1 mark tab 7 as Exhibit 4002.
2        (Exhibit 4002 marked.)
3    Q    (BY MR. BLUME)  And I'm placing before you
4 what has been marked as Exhibit 4002, which on the
5 top is an e-mail dated 18 June 2010 from
6 jayhorowitz@hflit.com to Mr. Lawrence Treece copying
7 you and Tim Beyer.
8        Do you see that?
9    A    Yes.
10   Q    And we'll get into this e-mail in more
11 detail later, but let me direct your attention -- and
12 feel free to read through it. Let me direct your
13 attention to the bottom of the first page which is
14 Bates No. DONZ 00057507 and ask you, is this -- do
15 you recognize this e-mail as an e-mail that both
16 part of which was written by Mr. Treece to Jay
17 Horowitz sometime in June of 2010?
18   A    Well, I don't -- I don't recall this
19 e-mail, although I don't have any reason to believe
20 it's not what it appears to be.
21   Q    Okay. And just, if you could read the
22 last paragraph on that first page and tell me whether
23 that refreshes your recollection about why it was
24 that the Brownstein firm opted not to represent the
25 Stratus company at the time.

Page 28

1    A    Yeah, it actually does refresh my
2 recollection. And I think that's consistent with --
3 I mean, I think that's what happened.
4    Q    And when you say that's what happened, if
5 you could tell us why it was that the Brownstein firm
6 did not end up representing Stratus in this matter.
7    A    I think that Stratus --
8        MR. GOMEZ: Objection.
9        THE SPECIAL MASTER: Overruled.
10   Q    (BY MR. BLUME)  You may answer.
11   A    I believe that Stratus decided that it
12 wanted -- it did not want us to represent it.
13   Q    Okay. Let me ask you this. The e-mails
14 that I -- this e-mail, for example, which was sent to
15 Mr. Treece and to you, is it the ordinary course of
16 the law firm's business to receive e-mails like this
17 about matters in which it's engaged?
18   A    Yes.
19   Q    And is it -- and are e-mails such as this
20 received in the ordinary course of the business of
21 representing clients?
22   A    Yes.
23   Q    And does this document 4002 reflect such
24 an e-mail?
25   A    Yes.

Page 29

1    Q    At some point in time there was a
2 discussion about who would sign Brownstein's
3 engagement letter on behalf of the LAPs.
4        Do you recall that discussion?
5    A    I very generally describe -- I very
6 generally recall a discussion within the firm, I
7 believe, as to how we would go about getting
8 authorized to represent the plaintiffs. But I'm
9 sorry, I don't recall with any specificity.
10   Q    Okay. Let me direct your attention to
11 document 4001 again in front of you, that's your
12 engagement letter. On page 5 of 7 -- I'm sorry, 6 of
13 7 and 7 of 7, that's DONZ 00054374 and 54374.
14       Well, that's interesting. There's two
15 identical Bates numbers but different page numbers.
16 In fact -- all right. I see, the whole document is
17 54374 with different pages.
18       So page 6 of 7 reflects a signature line
19 for a gentleman named Pablo Fajardo on behalf of a
20 series of names.
21       Do you see that?
22   A    Yes.
23   Q    Do you know who Pablo Fajardo is?
24   A    No.
25   Q    On page 7 of 7 there's a signature line

8 (Pages 26 - 29)

Page 30

1 for Luis Yanza on behalf of another series of names.
2        Do you see that?
3    A    Yes.
4    Q    And do you know who Luis Yanza is?
5    A    No.
6    Q    By that answer, can I assume, sir, that
7 you've never spoken or corresponded directly with
8 Pablo Fajardo?
9    A    I have no recollection of that.
10   Q    And by that, can I also assume that you at
11 least have no recollection of speaking directly or
12 corresponding with Luis Yanza?
13   A    Yes.
14   Q    Sitting here today, do you have any idea
15 what role they play in any related litigation,
16 including the Lago Agria litigation?
17   A    No.
18   Q    And you can keep 4001 in front of you.
19 Who was responsible -- who did you understand to be
20 responsible for paying the law firm's fees in this
21 matter?
22   A    Mr. Donziger.
23   Q    And, in fact, was Mr. Donziger your
24 primary point of contact for your clients or with
25 your clients?

Page 31

1    A    I believe the exclusive point of contact.
2 You know, that's not true.  There was -- I believe
3 there was a lawyer in New York who was representing
4 Mr. Donziger's clients in a case on the East Coast or
5 maybe even some arbitration-type proceeding in Europe
6 who I recall speaking with on one or two occasions.
7    Q    And let me ask you, sir, do you recognize
8 the name Eric Bloom from Winston & Strawn?
9    A    I faintly recall that name.
10   Q    Okay.  And by an arbitration-type
11 proceeding, are you familiar with the bilateral
12 investment treaty arbitration, the BIT proceeding
13 that was going on in and around this time of January
14 2010?
15   A    Only familiar to the extent it came up in
16 this -- I recall now that we talked about it.
17   Q    Okay.
18   A    But I don't -- I wasn't involved in it, as
19 I recall.
20   Q    With regard to direction about your
21 activity -- well, did you understand you and your
22 firm were being hired to represent these individuals
23 in a proceeding under 28 U.S.C. 1782, Section 1782?
24   A    Yes.
25   Q    And you understand that was a discovery,

Page 32

1 that is or was a discovery proceeding for the
2 collection of certain information in the United
3 States for proceedings outside the United States; is
4 that correct?
5    A    Yes.
6    Q    Okay.  And directing your attention to the
7 second paragraph in your engagement letter where you
8 say that your role was, quote, to develop and
9 implement strategy and to defend and manage the
10 Colorado matter.
11       Do you see that?
12   A    Yes.
13   Q    And the Colorado matter, sir, is the 1782
14 petition matter; is that correct?
15   A    Yes, that's a defined term in the
16 preceding paragraph.
17   Q    All right.  And that's -- all right.
18       And when it says in the next sentence, We
19 will take direction from you on their behalf and
20 expect that you will keep the clients informed about
21 the Colorado matter, you is Steven Donziger; is that
22 correct?
23   A    Correct.
24   Q    And the clients are the 47 individuals,
25 the LAPs?

Page 33

1    A    Yes.
2    Q    And then it goes on to say, Moreover, it
3 is our understanding that the Donziger firm will pay
4 all costs and fees as discussed further below billed
5 by my firm related to the Colorado matter.
6       Was that, in fact -- you mentioned this
7 other lawyer.  Was it, in fact, your understanding
8 that Donziger and Donziger's firm would exclusively
9 pay all costs and fees?
10   A    Yes.
11   Q    And was it your understanding that with
12 regard to how you would conduct yourself in the 1782
13 and the information needed, that would come
14 exclusively from Mr. Donziger?
15   A    Yes.
16   Q    Did you have occasion, sir, at all or do
17 you know a gentleman by the name of Andrew Woods; is
18 that name familiar?
19   A    It's not.
20   Q    Okay.  What about Laura Garr?
21   A    I have no recollection of that name.
22   Q    Aaron Page?
23   A    Same answer.
24   Q    Okay.  When you were first engaged in this
25 matter, Mr. McDermott, do you recall receiving

9 (Pages 30 - 33)

Page 34

1  information, background information from Mr. Donziger
2  or an associate of Mr. Donziger?
3    A    Yes.
4    Q    And let me direct your attention to tab
5  22, please.  And it's -- 22-A is the cover e-mail and
6  22-B is the attachment.  I will identify them as
7  4003-A and 4003-B.
8        (Exhibits 4003-A and 4003-B marked.)
9        MR. BLUME:  And, Mr. Gomez, I will suggest
10 4003-A is an e-mail dated 19 January 2010 from Steven
11 Donziger to John McDermott and 4003-B is a petition,
12 a complaint -- I'm sorry, a complaint to stay
13 arbitration with a file stamp from the Southern
14 District of New York dated 14 January 2010.
15       MR. GOMEZ:  Thank you.
16    Q    (BY MR. BLUME)  Mr. McDermott, do you see
17 4003-A and do you recognize that as I've identified
18 it, an e-mail to you from Mr. Donziger dated 19
19 January 2010?
20    A    Yeah, I don't have any recollection of
21 this.  I don't have any doubt that it is what it
22 appears to be.
23    Q    Okay.  Whether you have recollection of
24 this specific e-mail, do you recall receiving this
25 petition or this complaint from the Southern District

Page 35

1  of New York to stay the BIT arbitration and -- well,
2  do you recall receiving it specifically?
3    A    After reading the first numbered paragraph
4  on page 3, it actually does refresh my recollection
5  of receiving this from somebody at sometime.
6    Q    Okay.  And 4003-A the e-mail says, the
7  last sentence from Mr. Donziger, quote, the petition
8  contains a pretty good fact section on the history of
9  the case and what happened in Ecuador.
10       Prior to January 19th, 2010, did you have
11 any background information, whatsoever, about the
12 Ecuadorian litigation involving individual plaintiffs
13 and Chevron?
14    A    I have a general recollection of the first
15 time I spoke with Mr. Donziger, first or second time,
16 and I don't recall when that was.
17       I have a general recollection that he
18 spent some time talking to me about what was going
19 on.
20    Q    And by what was going on, do you mean to
21 say in the Ecuadorian litigation or in the litigation
22 going on in the Southern District of New York?
23    A    Both.
24    Q    Okay.  Do you have a recollection today
25 even generally of the types of things he told you in

Page 36

1  describing those litigations?
2        THE DEPONENT:  Can I answer that?
3        MR. TREECE:  Yes.
4    A    Well, I mean, I remember, my recollection
5  of Mr. Donziger is that -- of the discussions is --
6  you know, he talked about the litigation in Ecuador,
7  as you would expect, as an advocate.  He felt very
8  strongly that Chevron had acted improperly.
9        And he characterized -- I would say the
10 theme of what he told me was they're losing there and
11 so they're going to try to pursue litigation in other
12 forums as a prophylactic of what was happening in
13 Ecuador.
14    Q    Okay.  And by there, you mean Ecuador?
15    A    Yes.
16    Q    Do you recall whether Mr. Donziger
17 described for you in any more detail about the
18 components of the Lago Agria litigation?
19       And I can be more specific.  Do you recall
20 him mentioning a gentleman by the name of Richard
21 Cabrera?
22    A    Yes.
23    Q    And do you recall what he said to you
24 about Mr. Cabrera?
25       MR. GOMEZ:  Objection.  Privileged.

Page 37

1        THE SPECIAL MASTER:  Overruled.
2    A    As I sit here today, all I can recall
3  is -- I mean, I know there was extensive discussion
4  about Mr. Cabrera.  But as I sit here today, all I
5  recall him saying is that Mr. Cabrera was either a
6  court appointed expert or maybe an expert for the
7  plaintiffs and that Cabrera was doing some, writing
8  some report on the Court's behalf or somebody's
9  behalf.  But I recall that Cabrera was a focus of our
10 discussions.
11    Q    (BY MR. BLUME)  Let me direct your
12 attention in Exhibit 4003-B to page 14 of 22,
13 paragraph 29 and ask you if you would just take a
14 moment to peruse paragraphs 29, 30, and 31.
15    A    Through 31?
16    Q    Yes, sir.
17    A    I've reviewed those three paragraphs.
18    Q    These are three paragraphs from the
19 documents sent to you, that is the complaint to stay
20 the arbitration.
21       Do reading those three paragraphs refresh
22 your recollection more specifically about the things
23 Mr. Donziger was telling you about Richard Cabrera?
24    A    Yes.
25    Q    And let me ask you this, are these three

10 (Pages 34 - 37)

Page 38

1  paragraphs consistent with what Mr. Donziger told you
2  about Mr. Cabrera in January of 2010?
3      A    Well, generally speaking. I don't
4  recall --
5          MR. BLUME: I'm sorry?
6          THE SPECIAL MASTER: Mr. Gomez.
7          MR. GOMEZ: Privilege.
8          THE SPECIAL MASTER: Why don't we ask the
9  witness to leave the room.
10         (The deponent left the room.)
11         MR. TREECE: He's gone, Your Honor.
12         THE SPECIAL MASTER: Okay. Mr. Gomez,
13  what privilege are you asserting? And I'm raising it
14  now because I'm going to make some comment that I
15  hope will avoid an awful lot more privilege rulings
16  because my comments are going to apply to a great
17  deal of what goes on here today.
18         So what privilege are you asserting?
19         MR. GOMEZ: Understood. I'm asserting the
20  privilege of my client based on the witness'
21  testimony Mr. Donziger was acting on behalf of the
22  Lago Agria plaintiffs, including my clients Hugo and
23  Javier.
24         The question goes to communication between
25  Mr. Donziger and the witness. It is attorney-client

Page 39

1  communication and it's protected.
2          THE SPECIAL MASTER: I'm overruling the
3  objection, and I'll explain why first.
4          First of all, there was a total waiver, as
5  I think I mentioned to you before. During the
6  deposition of Mr. Donziger in the 1782 action, he
7  testified for literally scores of pages about the
8  proceeding in Colorado, his relationship with the
9  Brownstein firm, and every other aspect of the
10  proceeding in Colorado at tremendous length,
11  literally scores of pages without the slightest
12  objection made on privilege grounds by anybody
13  representing the LAPs.
14         The Emery Celli firm was there for some of
15  that testimony and the Motley Rice firm was there for
16  some of that testimony representing the LAPs. And as
17  I say, not one privilege objection was made.
18         Now, so that's the waiver. So I am
19  overruling it on grounds of a waiver by dint of the
20  testimony allowed -- subject matter waiver by dint of
21  the testimony allowed to be given without objection
22  for many hours in the 1782.
23         Now, I can turn to the subject of the
24  crime fraud exemption, if you want me to, Mr. Gomez.
25  And I'm certainly ready to do so. But if you are

Page 40

1  prepared to accept the ruling on the grounds of
2  waiver, I do not need to reach, and as I told you
3  before, I try very hard not to reach the subject of
4  crime fraud. And I successfully did that throughout
5  the 1782 and I have successfully so far done it in
6  this case. But if you want me to reach it, I will.
7  But if you don't want me to reach it, then please
8  accept my threshold ruling for why the privilege
9  neither this -- neither the attorney-client
10  privilege, nor the work-product privilege apply.
11         MR. GOMEZ: Thank you, Mr. Gitter. My
12  position is that while I reserve the right to appeal
13  your ruling, I understand it, and I do not believe
14  that there is a need to reach the crime fraud.
15         THE SPECIAL MASTER: Well, I'm going to
16  instruct the witness to answer the question.
17         MR. GOMEZ: I understand.
18         THE SPECIAL MASTER: And I actually have a
19  problem with your reserving here. If this were a
20  witness in New York and readily subject to the
21  jurisdiction of the court, I would -- you know, I
22  would go along with you.
23         But we have here a witness who was hard to
24  schedule in the first place. He is not subject to
25  the subpoena power of the court. As you well know,

Page 41

1  the time available for fact discovery is very
2  limited. And I think it extraordinarily unlikely
3  that we'll ever be able to come back to this witness
4  for additional testimony within, you know, the time
5  available.
6          So if you don't accept my waiver ruling, I
7  fear I may have to go to the crime fraud exemption.
8  If you like, as I think I've told you -- I know I've
9  told you before, that we can identify for you the
10  pages.
11         In fact, we are able because of the magic
12  of electronics to actually send you some of those
13  pages or Mr. Ormand, who has just read this stuff
14  again, can give you a couple of choice examples from
15  the transcript and give you a bunch of page
16  references, whichever you want.
17         But I fear, Mr. Gomez, in this instance
18  where we have a none New York witness and where we're
19  so pressed for time in meeting the discovery deadline
20  that I cannot take a chance of, you know, not
21  reaching the crime fraud exception if you're not
22  prepared to accept a waiver.
23         MR. GOMEZ: Mr. Gitter, so I understand
24  the situation, are you asking me to waive my client's
25  right to appeal?

11 (Pages 38 - 41)

1 THE SPECIAL MASTER: No. If -- no, I'm
2 not asking you to waive your client's right to
3 appeal. However, if you are not prepared to accept
4 the waiver ground, the antecedent waiver ground for
5 my ruling, I fear I may have to go to the crime fraud
6 ground as well. And then you can appeal whatever you
7 like.
8     I mean, the witness is going to answer the
9 question anyway because I can instruct you to
10 instruct them to answer it. And, indeed, I have
11 under my power of appointment the right in paragraph
12 2A to direct witnesses to answer questions for making
13 rulings on questions of privilege.
14     And, furthermore --
15     MR. GOMEZ: And I don't --
16     THE SPECIAL MASTER: Wait a minute.
17     MR. GOMEZ: I'm sorry.
18     THE SPECIAL MASTER: Just a minute. And,
19 furthermore, the Brownstein letter to Judge Kaplan on
20 Friday, which I reread this morning, states that if
21 an objection is made on privilege grounds by somebody
22 representing the LAPs, they will withhold testifying
23 or whatever until the matter is resolved by the
24 special master or the Court.
25     So once I resolve the matter, then the

1 testimony will be given.
2     MR. GOMEZ: And I understand that and I
3 understand you have that authority and I understand
4 that the witness will be instructed to answer and
5 will give an answer. And I don't have a problem
6 proceeding that way.
7     I simply want to reserve my right, my
8 client's right to be able to assess the citations
9 that were put on the record at the beginning of the
10 deposition and to assess whether that waiver is as
11 broad and should apply in this case. That requires
12 some time and legal research. I don't want to delay
13 the deposition. I would like it to go forward.
14     I don't want to give up the opportunity to
15 review and at a later time if I come to a conclusion
16 that the waiver does not apply as broadly as it is
17 going to be applied, I would like an opportunity to
18 present that for an appeal.
19     THE SPECIAL MASTER: Then I need the
20 following from you. I need a representation that if
21 you do that, I may -- and if you ask me not to now
22 rule on the crime fraud exception, that if you take
23 an appeal, that I may present my ruling on crime
24 fraud to Judge Kaplan.
25     MR. GOMEZ: As long as I have an

1 opportunity to then address that ruling during the
2 briefing anticipated in the future, sure, I have no
3 problem with that.
4     THE SPECIAL MASTER: I think we'll go
5 ahead on that basis. Let's move on. I think you
6 will find that the waiver is ample and you will not
7 need for me to go into the crime fraud exception.
8     Okay.
9     MR. TREECE: Your Honor, let me --
10     THE SPECIAL MASTER: And you should
11 assume -- you should assume, therefore, that in each
12 instance, unless I say to the contrary, that in each
13 instance the bases for my overruling an objection
14 based on privilege are going to be the waiver I
15 described and the crime fraud exception, okay?
16     MR. GOMEZ: Very well. Mr. Gitter, just
17 so I don't -- just so I understand about preserving
18 the record, do you still want to -- should we just
19 assume that those objections are preserved going
20 forward with your ruling or do I need to actually say
21 objection, privilege as we go forward?
22     THE SPECIAL MASTER: I think you need to
23 say objection, privilege as we go forward. You're
24 not going to get -- that doesn't interrupt very
25 much --

1     MR. GOMEZ: Okay, that's fine.
2     THE SPECIAL MASTER: -- because it's going
3 to be overruled. For both of those reasons I don't
4 think we have to have another conference about it.
5     MR. GOMEZ: I think that's right. That's
6 fine.
7     THE SPECIAL MASTER: Unless I come up with
8 yet another ground or unless another ground presents
9 itself, more precisely, for my overruling privilege
10 objection, okay?
11     MR. GOMEZ: Understood, yes.
12     THE SPECIAL MASTER: Understood? Thank
13 you, Mr. Gomez.
14     MR. BLUME: If I may, Your Honor, just to
15 be clear, while Your Honor is reserving an
16 articulation of the rationale of the crime fraud, it
17 is Your Honor's ruling on these privilege objections
18 that both waiver and crime fraud apply to overrule
19 the objection; is that correct?
20     THE SPECIAL MASTER: That is -- well, just
21 a second. Certainly on this one. I mean, this one
22 is clear as a bell. It applies to this one. The
23 crime fraud exception, as you know, has two
24 components.
25     The first component is is there a

Page 46

1 reasonable ground to believe or suspect that a crime
2 or a fraud has been committed?
3        And the second prong is is the specific
4 communication that is the subject of the rule, quote,
5 in furtherance of the fraud?
6        So the second prong requires an analysis
7 of a communication by communication or memo by memo,
8 whatever, analysis.
9        I guess I have to as a matter of just good
10 procedure and practice utter the words -- utter the
11 two grounds or more precisely, more precisely, I will
12 utter all of them are going to be based on the
13 antecedent ground of waiver, okay?
14        MR. BLUME: Understood.
15        THE SPECIAL MASTER: Every time I overrule
16 a privilege objection, the first ground is waiver.
17 And if I add crime fraud, then you then know that I've
18 determined that the communication is in furtherance
19 of that.
20        MR. BLUME: Understood, Your Honor. And
21 with regard to specific objections for work product,
22 I would simply add to that formula an articulation of
23 waiver which doesn't -- or an articulation to
24 overrule that doesn't necessarily have to go even as
25 far as crime fraud, although I think it applies. And

Page 47

1 that is simply that because this witness, as Your
2 Honor pointed out, is unavailable at trial, that
3 helps demonstrate the substantial need for the
4 information.
5        And the actions of Mr. Donziger are
6 relevant to the issues in dispute. And, therefore,
7 the reliable information that this witness can
8 provide as to Mr. Donziger's conduct as it relates to
9 the causative action brought in the Southern District
10 of New York go directly to this Court's ability to
11 order the disclosure, even mental -- of work product,
12 even mental impression attorney work product.
13        So I would add that to kind of the litany
14 of reasons why this testimony should go forward.
15        MR. GOMEZ: Mr. Gitter, may I be heard?
16        THE SPECIAL MASTER: Wait, you may not
17 need to be heard.
18        Go ahead, Mr. Gomez.
19        MR. GOMEZ: Well, my understanding of
20 crime fraud that you need to -- you need to assess
21 whether the matter in question is in furtherance.
22 And we don't have an answer from the witness yet so
23 the matter is still unknown.
24        THE SPECIAL MASTER: That's not true.
25        MR. GOMEZ: My point is --

Page 48

1        THE SPECIAL MASTER: That's not true.
2 That's not true.
3        The reason I focused on this one in
4 furtherance of it is clear as a bell on the piece of
5 paper in front of you. That is to say Mr. Donziger
6 was transmitting by e-mail, vouching for the quality
7 of the recitation of the history of the case as set
8 forth in that complaint.
9        The history of the case that's set forth
10 in that complaint, including the three paragraphs the
11 witness was just asked to focus on are -- include,
12 you know, some of the major elements of the fraud
13 that Judge Kaplan found as it relates to the 1782
14 proceeding in Colorado.
15        For example, the word neutral and
16 independent appears many times in this recitation to
17 describe Mr. Cabrera.
18        For example, the best and most recent
19 independent -- quote, I'm quoting now from paragraph
20 29. The best and most recent independent estimate
21 available of the human health impact of this
22 contamination is provided by the neutral special
23 master appointed by the Court to provide advice on
24 damages.
25        The special master, Ecuadorian

Page 49

1 environmental engineer and geologist Dr. Richard
2 Cabrera has conducted numerous environmental
3 assessments for oil companies, et cetera, et cetera.
4 And then it goes on and on and on to make statements
5 that Judge Kaplan has already found to be fraudulent.
6        And so of necessity, this communication
7 urging upon -- by Mr. Donziger urging upon
8 Mr. McDermott a view of what Mr. Cabrera did and who
9 he was is in furtherance of the fraud because the
10 idea -- the particulars of the fraud in Colorado
11 were, as Judge Kaplan found, a scheme to hide from
12 the Court the actual work or non work of Dr. Cabrera.
13        So the answer is certainly as to this
14 communication it needs the second prong, namely in
15 furtherance of prong. And any testimony related to
16 this is going to do the same.
17        Now, anything more, Mr. Gomez? Because I
18 want to say something in response to what Mr. Blume
19 said.
20        MR. GOMEZ: No, Mr. Gitter.
21        THE SPECIAL MASTER: Okay. Mr. Blume, I
22 accept your statement of need. I am extremely
23 skeptical about the rest of what you said and I am
24 not prepared to accept that as a ground for
25 overruling privilege. And it certainly doesn't --

13 (Pages 46 - 49)

Page 50

1  you know, I'm certainly not prepared to accept it as
2  an integral part of any ruling I make overruling a
3  privilege objection.
4       MR. BLUME: Very well.
5       THE SPECIAL MASTER: I think the record is
6  now fairly lucid on this whole subject and we can
7  move on.
8       Does that meet with your approval,
9  Mr. Gomez, to move on?
10      MR. GOMEZ: Yes, let's move on.
11      MR. TREECE: Your Honor, let me go get
12 Mr. McDermott, who stepped out.
13      THE SPECIAL MASTER: Great.
14      MR. TREECE: And I would ask for the
15 record that you specifically instruct him to answer
16 the question pending.
17      THE SPECIAL MASTER: That was my
18 intention.
19      MR. TREECE: And then it's up to you, Your
20 Honor, but to avoid you having to say -- instruct your
21 witness to answer the question every time you
22 overrule an objection, we're willing to understand
23 that if you overrule the objection, the witness is
24 instructed to answer without a specific
25 instruction --

Page 51

1       THE SPECIAL MASTER: That's correct.
2       MR. TREECE: -- or you may specifically
3  instruct him, as you choose.
4       THE SPECIAL MASTER: No, I don't think --
5  I think we're all agreed we're going to try to move
6  this along and do it the way you've just described.
7       MR. TREECE: Thank you, Your Honor.
8       THE SPECIAL MASTER: Mr. Gomez, are you
9  comfortable with that?
10      MR. GOMEZ: I am comfortable with that,
11 yes.
12      THE SPECIAL MASTER: Thank you.
13      If I utter the words crime fraud, folks,
14 it means I am again finding both prongs of the crime
15 fraud exception, as well as the waiver, okay?
16      MR. BLUME: Very well.
17      THE SPECIAL MASTER: Okay. Bring in the
18 witness.
19      (The deponent entered the room.)
20      MR. TREECE: He is here, Your Honor, as
21 you can see.
22      THE SPECIAL MASTER: Is there a pending
23 question?
24      MR. BLUME: I'm trying to locate that,
25 Your Honor.

Page 52

1       THE SPECIAL MASTER: That's the problem
2  with these LiveNotes. I think there is.
3       MR. TREECE: I think there is, too, Your
4  Honor.
5       THE SPECIAL MASTER: I think the objection
6  was made before the witness answered whatever the
7  question was. She'll have just as much trouble
8  finding it as we will.
9       MR. BLUME: Well, with Your Honor's
10 permission, rather than try to search and take time
11 through the transcript if I can simply withdraw
12 whatever pending question and reask it in a similar
13 way.
14      THE SPECIAL MASTER: Reask it, right,
15 please.
16      MR. BLUME: Very well.
17      THE SPECIAL MASTER: Try to make it very
18 similar because it was -- the form was fine before.
19      MR. BLUME: I will try.
20      THE SPECIAL MASTER: Otherwise, Mr. Gomez
21 would have let us know, right, Mr. Gomez?
22      MR. GOMEZ: Yes.
23 Q   (BY MR. BLUME) Mr. McDermott, you were
24 looking at paragraphs 29, 30, and 31 of
25 Exhibit 4003-B, I believe; is that correct?

Page 53

1  A   Yes.
2  Q   And I believe my question was are the
3  facts set forth in paragraphs 29, 30, and 31
4  consistent with what Mr. Donziger told you about the
5  role of Mr. Cabrera in the Lago Agria litigation?
6  A   Yes, the exception being things like 14
7  technical officials, some of the nuances I don't
8  recall. But generally speaking, yes.
9  Q   Do you recall whether Mr. Donziger told
10 you any fact which you believed at the time to be
11 directly inconsistent with anything set forth in
12 paragraphs 29, 30, and 31?
13      MR. GOMEZ: Objection. Privilege.
14      THE SPECIAL MASTER: Overruled. Waiver,
15 crime fraud, two crime fraud, the Cabrera fraud and
16 the Colorado 1782 fraud.
17 A   I -- if I understand correctly, did
18 Mr. Donziger tell me --
19      THE SPECIAL MASTER: And this is part of
20 the prior communication that I found to meet the
21 furtherance prong.
22      Go ahead.
23 A   I had --
24      THE DEPONENT: I'm sorry, Your Honor.
25 A   I don't recall Mr. Donziger telling me

14 (Pages 50 - 53)

Page 54

1 anything that is inconsistent with what's alleged in
2 29 through 31.
3     Q     (BY MR. BLUME)  In and around January
4 2010, Mr. McDermott, were you aware of Chevron's
5 allegations that Stratus Consulting had improperly
6 ghostwritten substantial portions of the Cabrera
7 report in Ecuador?
8     A     I think so, but I'm not sure.  I just
9 don't -- I just don't remember.  I mean, I -- I just
10 don't -- I think so.
11    Q     Okay.
12    A     But I'm not certain.
13    Q     And let me direct your attention, sir, to
14 tab 59, which will be Exhibit 4004-A, which is
15 WOODS-HDD-0216302, and 4004-B, which is
16 WOODS-HDD-0216303 through 327.
17           (Exhibits 4004-A and 40004-B marked.)
18           MR. BLUME:  And, Mr. Treece, I'm going to
19 give you my copy.
20           THE SPECIAL MASTER:  While we're doing
21 this -- while we're doing this, Mr. Gomez, I just
22 wanted to say something very quickly.
23           The references that were sent to you by
24 Mr. Ormand I think on Sunday night, or whenever he
25 sent them to you, are only a tiny portion of the

Page 55

1 references that we have, and we will send you a great
2 many more, okay?
3           MR. GOMEZ:  Thank you.
4           THE SPECIAL MASTER:  Thank you.
5           MR. GOMEZ:  Yes, thank you.
6     Q     (BY MR. BLUME)  Mr. McDermott, do you
7 recognize this e-mail as an e-mail dated
8 January 19th, 2010 from a gentleman by the name of
9 Andrew Woods to you with a copy to Steven Donziger?
10    A     Yes.  Again, I don't recall specifically
11 getting this, but I'm sure I did.
12    Q     And attached to it as is reflected in the
13 e-mail is Chevron's 1782 petition that was filed in
14 the District of Colorado.
15           Do you see that?
16    A     Yes.
17    Q     If I could direct your attention -- do you
18 recall or do you have some recollection of receiving
19 and reviewing that attachment as well?
20    A     A general recollection.
21    Q     Okay.  If I could direct your attention to
22 the bottom of page 7 of the 2004(sic)-B, which is the
23 petition itself, it's the paragraph I believe that
24 begins, Despite?
25    A     Yes.

Page 56

1     Q     If you could peruse that paragraph kind of
2 into the next page 8 to yourself.
3     A     All right, I have read that paragraph.
4     Q     And does that refresh your recollection,
5 sir, as to whether or not in and around January 2010
6 you were aware of Chevron's allegations of
7 ghostwriting of the Cabrera report --
8     A     Yes.
9     Q     -- in Ecuador?
10           And do you recall during the conversation
11 you had with Mr. Donziger about the background of the
12 Lago Agria litigation whether or not he told you that
13 Stratus had, in fact, improperly ghostwritten
14 substantial portions of the Cabrera report?
15           MR. GOMEZ:  Objection.  Privilege.
16           THE SPECIAL MASTER:  Overruled.  And I
17 will wait to hear the answer before I state whether
18 this is also a communication that meets both prongs
19 of the crime fraud exception.
20           Go ahead, please answer the question.
21    A     I don't recall that Mr. Donziger told me
22 that.
23    Q     (BY MR. BLUME)  Well, just to put that in
24 context, is that a fact, sir, that you ultimately
25 learned come March of 2010 through other means that

Page 57

1 we'll talk about?
2           MR. GOMEZ:  Objection to the extent that
3 the witness' knowledge would be derived from
4 attorney-client communication, privilege.
5     A     The answer to that --
6           THE SPECIAL MASTER:  Overruled.
7     A     The answer to that question is no.  I
8 don't believe -- I mean, I guess another way to say
9 that is that why we withdrew from the case.
10           I mean, I don't recall that we ever were
11 told that Stratus ghostwrote a portion of the Cabrera
12 report.  I could be mistaken, but I don't recall.
13 That's not why -- that's not why we withdrew.
14    Q     (BY MR. BLUME)  Okay.  And we'll get to
15 that.  But suffice to say based on your answer,
16 certainly in January 2010 you had no reason to
17 believe based on your conversations with Mr. Donziger
18 that Stratus had improperly ghostwritten substantial
19 portions of the Cabrera report; is that true?
20    A     That's absolutely true.
21           MR. GOMEZ:  Objection.  Privilege.
22           THE SPECIAL MASTER:  Overruled.
23    Q     (BY MR. BLUME)  Is it fair to say,
24 Mr. McDermott, that Mr. --
25           THE SPECIAL MASTER:  And crime fraud --

15 (Pages 54 - 57)

Page 58

1 and crime fraud on the last one, same set of
2 communications with Donziger.
3    Q   (BY MR. BLUME)  Is it fair to say,
4 Mr. McDermott, that Mr. Donziger set the general
5 strategy on how your firm would go about opposing
6 Chevron's effort in the 1782 petition?
7         MR. GOMEZ: Objection.  Privilege.
8    A   I'm not sure --
9         THE SPECIAL MASTER: Overruled.
10   A   I'm not sure I understand that question.
11   Q   (BY MR. BLUME)  Did you consult -- or
12 how -- withdraw that.
13        Did you consult with Mr. Donziger on the
14 strategy for opposing Chevron's 1782 petition?
15   A   Yes.
16   Q   What role, if any, did Stratus' lawyers
17 play in setting that strategy?
18        MR. GOMEZ: Objection.  Privilege.
19   A   My rec --
20        MR. TREECE: Don't --
21        THE SPECIAL MASTER: Wait, wait, wait.
22        THE DEPONENT: Sorry.
23        THE SPECIAL MASTER: What's the privilege?
24        MR. GOMEZ: Attorney work product.
25        THE SPECIAL MASTER: What is it?

Page 59

1         MR. GOMEZ: Attorney work product,
2 Mr. Gitter, the role played by counsel to the extent
3 it would reveal attorney work product.
4         THE SPECIAL MASTER: The role played by
5 Stratus counsel is what he was asking.
6         MR. GOMEZ: Yes.
7         THE SPECIAL MASTER: Stratus has waived,
8 specifically no work product applies.  So in addition
9 to the other waivers, I rule on that basis as well.
10        And there was no common interest as I have
11 ruled in the Beier deposition which they have
12 accepted and not appealed, and indeed that ruling is
13 the law of the case.
14        MR. BLUME: May the witness answer, Your
15 Honor?
16        THE SPECIAL MASTER: Yes.
17   A   I don't recall that Stratus' counsel
18 played any role in the strategy.  I don't even
19 recall -- I don't recall ever talking to a lawyer
20 from Stratus.  I may very well have, but I don't
21 recall.
22   Q   (BY MR. BLUME)  Do you remember speaking
23 to a gentleman by the name of Mr. Shinder?
24   A   That name is very familiar.
25   Q   Okay.  And we'll get back to him.  Jeffrey

Page 60

1 Shinder?
2    A   Yes, that name is very familiar.
3    Q   Okay.  Did you understand through your
4 conversations with Mr. Donziger about the strategy in
5 opposing Chevron's 1782 petition that Mr. Donziger
6 was seeking to delay that action?
7         MR. GOMEZ: Objection.  Privilege.
8         THE SPECIAL MASTER: Overruled.  Crime
9 fraud, two.
10   A   Actually, my recollection is that he
11 wanted them to prevent them from taking place.  Maybe
12 it was just delayed, but my recollection is he did
13 not want the depos to go forward.
14   Q   (BY MR. BLUME)  And you disagreed with
15 that, did you not?
16        THE SPECIAL MASTER: Double crime fraud
17 exception.
18   Q   (BY MR. BLUME)  And you disagreed with
19 that approach?
20   A   I don't remember.  I remember disagreeing
21 with -- I remember not getting a lot of the
22 information we felt we needed to make representations
23 to the Court.  I may -- I may have.  I just don't
24 remember.
25   Q   Sure.

Page 61

1         MR. BLUME: If I could have tab 41,
2 please.  And this will be marked as Exhibit 4005.
3         (Exhibit 4005 marked.)
4         MR. BLUME: Mr. Gomez, this is an e-mail
5 chain ending on 17 February 2010 from Mr. McDermott
6 to Mr. Donziger and Ericka Englert beginning with an
7 e-mail from Mr. Donziger to Mr. McDermott and
8 Ms. Englert on 16 February 2010.
9         THE SPECIAL MASTER: Will you give me a
10 chance to read this, please?
11        MR. BLUME: Sure.
12        (Pause.)
13        MR. BLUME: May I proceed, Your Honor?
14        THE SPECIAL MASTER: I've finished.  Go
15 ahead, Mr. Blume, I've finished.
16   Q   (BY MR. BLUME)  Okay.  The bottom, the
17 first e-mail from Mr. Donziger to you, sir, of 16
18 February reflects discussions about terms reflected
19 in your engagement letter; is that correct?
20   A   Yes.
21   Q   And let me, just curiously, on the bottom
22 of that first page 4005 referencing page 2, third
23 paragraph, third sentence of your engagement letter,
24 do you see that?
25   A   Yes.

16 (Pages 58 - 61)

Page 62

1    Q    And it talks about a request that
2  Brownstein -- that it says, quote, Although bills
3  will be based on the time actually incurred, they
4  will be subject to adjustment by our firm based on
5  relevant factors.
6        Do you see that?
7    A    Yes.
8    Q    And Mr. Donziger replied to that
9  complaining or commenting that it provided the firm
10 with discretion.  And he recommended, did he not,
11 that either take it out or subject -- make it subject
12 to Donziger's approval.
13       Do you recall that?
14   A    Yes.
15   Q    Do you recall having any discussion other
16 than what is revealed in this e-mail about Donziger's
17 request to approve any -- any -- approve any of that
18 discretion on the relevant factors?
19   A    No, Mr. Donziger had the same reaction
20 that 99 percent of my clients do when I send them
21 that provision.
22   Q    And you opted, as in all caps, just simply
23 take it out?
24   A    Yeah.  I usually take it out now before I
25 even send it to clients.

Page 63

1    Q    More related to what we were just talking
2  about, the top part is your response to Mr. Donziger,
3  referencing your thoughts on the engagement letter,
4  but then noting, quote, On a related point, my view
5  on the delay issue does differ from yours, albeit
6  respectfully so.
7        In reading that paragraph, does that
8  refresh your recollection as to whether your strategy
9  for proceeding in front of Judge Kane in Colorado
10 differed from the strategy that Mr. Donziger was
11 promoting in proceeding with the 1782?
12   A    What I'm struggling with is your use of
13 the term strategy.  I mean, my concern -- one of my
14 concerns was that --
15       MR. GOMEZ:  I'm sorry, I'm sorry.  This is
16 Mr. Gomez.  My phone was on mute.  I meant to object
17 on privilege and work product grounds.
18       THE SPECIAL MASTER:  This is -- there is
19 no privilege here.  This was waived by Donziger in
20 this production.  And for the reasons that I've said
21 before, the -- this is -- this is basically a fee
22 negotiation letter.
23       In any event, the specific question I --
24 after I hear the answer, I may add crime fraud.
25       So, A, there is no privilege to this here

Page 64

1  at all.  B, it's been waived both by Donziger and by
2  the testimony that I referred to earlier.
3        Go ahead, Mr. Blume, and the witness.  I
4  would like to hear the answer to this question.
5    A    My recollection is that Mr. Donziger had
6  repeatedly told us that he would be providing us
7  material, factual material and legal arguments from
8  folks in Ecuador that we could then use in whatever
9  we filed before Judge Kane.  And we didn't get it.
10 And we kept having discussions about, we need that
11 information, we need that information.  And we didn't
12 get it.
13       And I think the sense that I had was the
14 argument that he thought might be persuasive to Judge
15 Kane was, as I say in this e-mail, it's just -- it's
16 Chevron's fault.
17       And Judge Kane is a wonderful judge, and
18 he's an old war horse.  And he was going to focus on
19 relevant, factual and legal arguments.  And we
20 weren't getting that information -- I didn't feel
21 like we were getting that information from
22 Mr. Donziger.
23   Q    (BY MR. BLUME)  And just for the record,
24 this, like the other, this e-mail is of the type
25 that's kept in the ordinary course of the business of

Page 65

1  the Brownstein firm?
2    A    Yes.
3    Q    And it's the ordinary course of the
4  Brownstein firm to keep such e-mails such as this as
5  they relate to client matters?
6    A    Yes.
7        MR. BLUME:  If we could get tab 42,
8  please.  Label this Exhibit 4006.
9        (Exhibit 4006 marked.)
10       MR. BLUME:  Mr. Gomez, this is an e-mail
11 on the top from Mr. McDermott to Mr. Donziger and
12 Ericka Englert, with copy to Michael Hoke dated
13 3 March 2010, responding to an e-mail from
14 Mr. Donziger dated 2 March 2010, responding back to
15 an e-mail dated 2 March 2010 from Ericka Englert to
16 Steven Donziger.
17   Q    (BY MR. BLUME)  If I could ask you just to
18 review that and first tell me whether this, as well,
19 is an e-mail kept in the ordinary course of the
20 business of the Brownstein firm?
21   A    Yes, it is.
22   Q    And whether it is in the ordinary course
23 of the Brownstein firm to keep such e-mail related to
24 client matters?
25   A    Yes.

17 (Pages 62 - 65)

Page 66

1  Q   I direct your attention to the e-mail
2  first from Ericka Englert to Mr. Donziger at the
3  bottom of that chain, asking specifically for an
4  affidavit to support the basis for seeking leave to
5  oppose a petition.
6      Is this consistent with your firm's
7  request to Mr. Donziger for information, both factual
8  and legal, to support your position in Colorado?
9  A   Yes.
10  Q   And then Mr. Donziger responds, Yes, but,
11  in the middle there, he says, I'm thinking maybe we
12  should wait to file this until we file in Ecuador,
13  which we can do by Monday.
14      Do you know, sitting here today, to what
15  he was referring when he mentioned filing in Ecuador?
16  A   Not as I sit here today.
17  Q   Okay. You then go on to say that to
18  impress upon Mr. Donziger, quote, We should file
19  today -- this being in the top e-mail.
20      Our delay is conveying to the Court and
21  our opponents that we are disorganized and the
22  equities are shifting to Chevron.
23      Do you see that?
24  A   Yes.
25  Q   And is that consistent with your testimony

Page 67

1  earlier, this is now March of 2010?
2      THE SPECIAL MASTER: Objection sustained,
3  argumentative. Speaks for itself.
4      MR. BLUME: Okay.
5  Q   (BY MR. BLUME) Did Mr. Donziger ever tell
6  you why it was that he was -- why he didn't want to
7  move more quickly in the Colorado action, or as you
8  mentioned, move at all?
9      MR. GOMEZ: Objection. Privilege.
10      THE SPECIAL MASTER: Overruled.
11  A   I'm sorry, I don't recall.
12  Q   (BY MR. BLUME) You mentioned earlier,
13  Mr. McDermott, that you had occasion to speak with --
14  you or your team had occasion to speak with a lawyer
15  that had some involvement in an international
16  arbitration, I think you mentioned.
17      Do you recall that testimony?
18  A   Yes.
19  Q   And I mentioned the name Eric Bloom from
20  Winston & Strawn. And remind me, does that refresh
21  your recollection as to the lawyer with whom you
22  spoke about that matter?
23  A   That sounds -- I can't say with
24  100 percent certainty but that sounds very familiar.
25  Q   Okay. Let me --

Page 68

1      MR. BLUME: If we could turn to tab 45,
2  please. And I'll mark this as Exhibit 4007.
3      (Exhibit 4007 marked.)
4      MR. BLUME: It's Bates No.
5  DONZ 00053751.
6  Q   (BY MR. BLUME) It's a two-page e-mail.
7  First, dated 27 January, first from Michael Hoke's
8  you and Ericka Englert, and then a forwarding of that
9  e-mail from Ericka Englert on the same date to
10  Mr. Donziger.
11      Do you see that?
12  A   Yes.
13  Q   And is this too an e-mail that's kept in
14  the ordinary course of Brownstein's business?
15  A   Yes.
16  Q   And it's the ordinary course to keep such
17  an e-mail?
18  A   Yes.
19  Q   Directing your attention to Mr. Hoke's
20  e-mail at 4:01 p.m. on 27 January. Subject being
21  Chevron v. Stratus, issues to discuss with Mr. Bloom,
22  B-l-o-o-m. Do you recall having a discussion with
23  your team about the relevance of the BIT proceeding
24  and questions you had for Eric Bloom at Winston &
25  Strawn?

Page 69

1  A   I recall having discussions with my team
2  about the subject matter of Michael's e-mail, but
3  beyond that I don't recall the specifics.
4  Q   Okay. So it's -- and we don't have to go
5  to it, but the invoice reflects on 27 January a
6  telephone conference with Mr. Bloom, Mr. Donziger,
7  and you regarding the 1782 petition. Is that --
8  would that be consistent with your, whatever memory
9  you have about this time period, 27 January, and
10  discussions with Mr. Bloom?
11  A   Yes.
12  Q   Okay. Let me show you tab 4, if I might.
13  Tab 4 is from your production Bates labeled
14  BHFS 18 through 23, and it's 4006 -- 8, 4008.
15      (Exhibit 4008 marked.)
16  Q   (BY MR. BLUME) If I could ask you just to
17  look through those pages. Tell me if you recognize
18  the handwriting in these notes.
19  A   The handwriting is not mine. I don't
20  believe it's Michael Hoke's. So that I don't -- I
21  don't know that this -- that these -- that Ericka
22  Englert wrote these notes. I suspect she did.
23  Q   And as a way of -- if perhaps we could
24  turn to Exhibit 4000, which is your invoice -- I'm
25  sorry, 4001, perhaps.

18 (Pages 66 - 69)

Page 70

1    A    I think it's -- you're right.
2    Q    So if I could just to help your memory,
3 the first entry of the handwritten notes is
4 January 28. And it says, Greg, from Winston &
5 Strawn.
6        Do you see that?
7    A    Yes.
8    Q    If I could direct your attention to the
9 time entry for January 28th for Ericka Englert where
10 it says in Exhibit 4000, telephone conference with G
11 Ewing re standards for opposing 1782 request.
12        Do you see that?
13    A    Yes.
14    Q    I'll represent to you G Ewing is Greg
15 Ewing from Winston & Strawn. Does that in any way
16 help you identify these handwritten notes as those
17 belonging to Ericka Englert?
18    A    Well, it's consistent. The entry on 4000
19 is consistent with these being Ericka Englert's
20 notes.
21    Q    Okay. Do you know, in your discussions
22 with Mr. Donziger, did he say anything to you which
23 suggested that he had a previous relationship with
24 Eric Bloom or Winston & Strawn? And by previous I
25 mean before January of 2010.

Page 71

1        MR. GOMEZ: Objection. Form.
2        THE SPECIAL MASTER: You may answer.
3    Q    (BY MR. BLUME) If you understand. It was
4 not a very good question.
5    A    I'm not sure I do understand it.
6    Q    In January of 2010, did Mr. Donziger say
7 anything to you to suggest that he had a previous
8 relationship or had worked before that time with the
9 Winston & Strawn firm or with Eric Bloom
10 specifically?
11    A    I don't recall him saying that.
12    Q    Okay. Let me turn to exhibit -- or
13 tab 51, if I might.
14        THE SPECIAL MASTER: Excuse me, can we go
15 back to Exhibit 4008?
16        MR. BLUME: Yes, sir.
17        THE SPECIAL MASTER: Does somebody have
18 the original? Because my copy has the bottom line
19 cut off and it looks like a line I would be
20 interested in for purposes of ruling.
21        MR. BLUME: We will check, Your Honor,
22 whether -- it may be that that's how the copy
23 came to us, or it may be the copy we made. Yeah,
24 looking at the receipt from the Brownstein firm, and
25 I know this happens often, the copy we received

Page 72

1 actually has the bottom of Bates BHFS 18 cut off as
2 well.
3        THE DEPONENT: Your Honor, we can
4 certainly -- we can do a better job of copying this
5 document and get it to whomever you tell us to get it
6 to.
7        THE SPECIAL MASTER: Get it to counsel,
8 examining counsel, who will circulate it to us and to
9 Mr. Gomez, please.
10        And just for safety sake, for my purposes,
11 because we're not going to have you again, I don't
12 believe, is it fair to say that these handwritten
13 notes were kept by the Brownstein firm in the
14 ordinary course of business?
15        THE DEPONENT: Yes.
16        THE SPECIAL MASTER: Is it fair to say
17 that it is part of the business of the Brownstein
18 firm to have its lawyer taking notes of
19 conversations?
20        THE DEPONENT: Yes, Your Honor.
21        THE SPECIAL MASTER: Okay.
22    Q    (BY MR. BLUME) And part of the business
23 for those lawyers to then keep them in files related
24 to client activities?
25    A    Yes.

Page 73

1    Q    Thank you.
2        MR. BLUME: Thank you, Your Honor.
3        (Exhibit 4009 marked.)
4    Q    (BY MR. BLUME) Let me hand you what's now
5 marked as Exhibit 4009. This is an e-mail dated
6 21 March 2010 from you to Mr. Donziger, copy
7 Ms. Englert and Mr. Hoke.
8        I would ask you to take a moment to review
9 it. And just so you understand the chronology of
10 what I would like to do today, this is a
11 21 March 2010 e-mail reflecting, as I understand it,
12 and I'll ask you specifically, your decision to
13 withdraw.
14        I would like to talk about this e-mail and
15 then we'll backtrack to the events that may have led
16 up to this.
17        But I wanted to start here and have you
18 tell me, to the best of your recollection, why was it
19 that the Brownstein firm withdrew from representing
20 the LAPs in the 1782 proceedings in Colorado?
21        MR. GOMEZ: Objection. Privilege, to the
22 extent it would reveal attorney-client communications
23 or attorney work product.
24        THE SPECIAL MASTER: Overruled. This very
25 question, to my recollection, was asked without

19 (Pages 70 - 73)

Page 74

1 objection of Mr. Donziger in his 1782, almost in
2 these words. And anything, anything that
3 Mr. Donziger said that led up to this e-mail and to
4 the statements in this e-mail, is likely, I'm not
5 ruling yet because I haven't heard it, is likely to
6 be subject to crime fraud exception.
7     A     Well, as I recall, we were facing a couple
8 of deadlines. I believe we had a filing in court to
9 make. And, secondly, and 4009 refreshes my
10 recollection on this now, we had a meet and confer
11 responsibility with Chevron's counsel, you folks.
12          And we had been, as I stated earlier,
13 Mr. Donziger had told us over some time period that
14 we were going to be getting factual support for the
15 representations that we might make in front of Judge
16 Kane and in front of your partners during the meet
17 and confer.
18          And with respect to the legal issues that
19 I referenced earlier, 4009 refreshes my recollection
20 that we were waiting to get maybe even an affidavit
21 from one of their Ecuadorian lawyers, which stated
22 certain privilege and confidentiality provisions
23 under Ecuadorian law that, as I recall, we were
24 talking to Steven about, might have some persuasive
25 impact in front of Judge Kane.

Page 75

1     But as I sit here today, I don't recall
2 what that is. And we didn't get that information.
3 We kept being promised we were going to get it, and
4 there was a woman from Gibson Dunn who was
5 representing Chevron, who I was dealing with, and who
6 I had a number of discussions with, as I recall, and
7 who was quite patient, when, as I recall, I kept
8 delaying the meet and confer. And I think she gave
9 me a couple of extensions.
10          And then, as I recall, she said, you know,
11 something to the effect that we need to fish or cut
12 bait here. And we kept waiting for the information
13 and we didn't get it. And -- I've talked so much
14 I've forgot what the question is.
15     Q     (BY MR. BLUME) If you recall why it was
16 you withdrew from your representation of the LAPs.
17     A     Yeah, so that's one reason. And a second
18 reason is or was that I think Mr. Donziger's view was
19 that it would be persuasive to Judge Kane to focus on
20 Chevron's alleged misconduct. And I don't recall
21 thinking that was persuasive or relevant as we
22 understood the law.
23          And then a third development and probably
24 the clincher was I recall a non -- a lawyer from out
25 of state who may have been representing Stratus, but

Page 76

1 I'm not sure. But some lawyer from out of state who
2 was under the -- I don't want to say the team because
3 I'm not sure who he was representing, but he came out
4 and met with Stratus.
5          And as I recall, learned some disturbing
6 information that may have even caused him to
7 withdraw. And I don't recall whether I was told or I
8 concluded from what we did learn that perhaps there
9 was conduct by Stratus that was inconsistent with
10 what we understood, which was that there was no
11 misconduct. And so things kind of came to a head.
12 And I just concluded that I was not comfortable
13 proceeding.
14     Q     And just so I'm clear --
15          THE SPECIAL MASTER: Okay. I think --
16          MR. BLUME: Sorry, go ahead, Your Honor.
17          THE SPECIAL MASTER: Go ahead.
18          MR. BLUME: No, go ahead.
19          THE SPECIAL MASTER: I was going to --
20 we've been going two hours and I, for one, need a
21 break, but if you have one more question.
22          MR. BLUME: One more question.
23          THE SPECIAL MASTER: That's fine.
24          MR. BLUME: Yeah, one more question and
25 then we can break.

Page 77

1          Thank you, Your Honor.
2     Q     (BY MR. BLUME) You indicated that, you
3 said you don't recall whether you were told or
4 concluded from what we did learn that perhaps there
5 was conduct by Stratus that was inconsistent with
6 what we understood, which was that there was no
7 misconduct.
8          From whom did you gain your understanding
9 in and around March of 2010 about Stratus's role in
10 whether there was or was not any misconduct?
11          In other words, from whom did you gain
12 your understanding that led you to balance it against
13 what you had learned from this other lawyer?
14          THE SPECIAL MASTER: Wait a second.
15 First -- wait a second. I'm going to object -- I'm
16 going to sustain the objection. You have now
17 confused me, therefore, almost by definition, you're
18 confusing the witness.
19          MR. BLUME: Understood.
20          THE SPECIAL MASTER: I take it -- let
21 me --
22          MR. BLUME: Please.
23          THE SPECIAL MASTER: I take it, Mr. Blume,
24 what you're trying to ask is, who was it, from whom
25 did you get your prior understanding that there had

20 (Pages 74 - 77)

Page 78

1  been no misconduct?
2      MR. BLUME: Correct.
3      THE SPECIAL MASTER: Let's start with
4  that.
5      THE DEPONENT: Mr. Donziger.
6      THE SPECIAL MASTER: And from whom do you
7  believe you got the understanding as reflected in
8  this March 21st e-mail that, in fact, there had been
9  misconduct? This out of town lawyer?
10      THE DEPONENT: Yes, Your Honor. But my
11  recollection is that as a result of our failure to
12  get the information that we had been seeking, we
13  started to have suspicions and started to feel
14  uncomfortable.
15      And then when we got the information from
16  the out of town lawyer, it was, Okay, I'm concerned
17  about our ethical responsibilities.
18      THE SPECIAL MASTER: All right. Let's
19  take our break.
20      MR. BLUME: We'll break. Thank you.
21      THE VIDEOGRAPHER: We're going off the
22  record at 11:55.
23      (Recess taken from 11:55 a.m. to 12:08
24  p.m.)
25      THE VIDEOGRAPHER: And we are back on the

Page 79

1  record at 12:08.
2   Q   (BY MR. BLUME) Exhibit 400 -- sorry.
3   A   9.
4   Q   -- 9, this is a true and accurate copy of
5  an e-mail that you sent to Mr. Donziger on 21 March?
6   A   I believe so.
7      THE VIDEOGRAPHER: Mr. Blume, I'm sorry,
8  do you have your microphone on?
9      MR. BLUME: No, I don't.
10      THE VIDEOGRAPHER: Thank you.
11   Q   (BY MR. BLUME) And this is an e-mail that
12  was kept in the ordinary course of the business of
13  the Brownstein firm?
14   A   Yes.
15   Q   And it's the ordinary course of the
16  Brownstein firm to keep such an e-mail as it relates
17  to client matters?
18   A   Yes.
19   Q   Okay.
20   A   Could I add something to the --
21   Q   Yes, please.
22   A   -- answer because 4009 refreshed my
23  recollection about, I guess, one other issue that as
24  I now recall also played some role in our decision to
25  withdraw.

Page 80

1      I see a reference in the second paragraph
2  to our having been left out of the fact gathering
3  efforts in Boulder. And I do now recall that we had
4  told Mr. Donziger that we wanted to meet with
5  Stratus, and we wanted to attend the meeting.
6      And we were left out of that meeting and
7  therefore denied access to -- denied the opportunity
8  to get what we thought was relevant information. And
9  so that concerned us, as well, as I recall.
10   Q   And when you say denied access, were you
11  specifically told not to attend or did the meeting
12  happen without your knowledge, or both?
13   A   Well, I don't recall, but I distinctly
14  recall that it wasn't an accident.
15   Q   If I could turn to tab 55, please.
16      MR. BLUME: And 55, Your Honor, has
17  already been marked as part of the proceedings and is
18  Exhibit 1633.
19      THE SPECIAL MASTER: Okay. Just give me
20  an opportunity to read it, please.
21      MR. BLUME: Sure. And I will simply tell
22  Mr. Gomez that it is an e-mail and an attached
23  memorandum from Mr. McDermott to Mr. Donziger, dated
24  24 May 2010.
25      THE SPECIAL MASTER: Hold on. We're

Page 81

1  getting the attachment now.
2      (Pause.)
3      THE SPECIAL MASTER: Okay. I've read it.
4   Q   (BY MR. BLUME) Mr. McDermott, attached as
5  Exhibit 1633, which is a cover e-mail and attached
6  memorandum, I would ask you first, are both the
7  e-mail and the attached memorandum documents which
8  the Brownstein firm kept in the ordinary course of
9  its business?
10   A   Yes.
11   Q   And was it the ordinary course of the
12  Brownstein firm to keep e-mails such as the cover and
13  memos, memorandum, such as that attached in 1633?
14   A   Yes.
15   Q   Turning to the memorandum attached --
16      THE SPECIAL MASTER: Wait. I think --
17  wait a minute, wait a minute. Wait, whoa, whoa,
18  whoa. First, you've got to ask him if this is a true
19  copy of what is in their files.
20      MR. BLUME: Fair enough. You're correct.
21   Q   (BY MR. BLUME) Mr. McDermott, is the
22  e-mail cover and the attached memorandum a true and
23  accurate copy of the cover e-mail and memorandum as
24  kept in the files of Brownstein Hyatt Farber &
25  Schreck?

21 (Pages 78 - 81)

Page 82

1   A   And 1633 is something that we produced?
2   Q   Yes. No, I'm sorry. 1633 is something
3   produced by Mr. Donziger, Bates No. DONZ 00056917
4   through 56918.
5   A   Well, I remember this document, and I'm
6   sure this is an accurate copy. It didn't come from
7   our files, but I distinctly recall preparing this
8   information.
9   Q   And I'm not saying it wasn't in your
10  files. It's been marked as an exhibit so the version
11  we're using is from the Donziger production.
12  A   Sure. So the answer is yes.
13  Q   Okay. Directing your attention, sir, to
14  the memorandum itself dated 24 May 2010 to Steven
15  Donziger from you, do you recall why you wrote this
16  memorandum to Mr. Donziger in May, which was a few
17  months after your official withdrawal from the
18  Colorado action?
19  A   Yes.
20  Q   Why was that?
21  A   Mr. Donziger had retained a lawyer at
22  least once removed from me. There was me and then he
23  retained somebody else and then he retained a lawyer
24  in Denver by the name of Jay Horowitz.
25      And as I recall, I think Mr. Donziger had

Page 83

1   given us, I don't know, 25, a nominal retainer, 25 or
2   $50,000. And at the time we withdrew, I mean, we
3   paid our bill out of the retainer, as I recall.
4       And Mr. Horowitz was sending nasty letters
5   and e-mails to our firm grousing about my conduct and
6   demanding, I think demanding that we give some or all
7   of the money back.
8       And at some point, Mr. Horowitz asked me
9   why we withdrew. And I think -- I think at that
10  point -- actually, maybe by this point he hadn't sent
11  me any nasty e-mails. He had just talked to me and
12  asked me why. And I said, well, Mr. Donziger knows
13  why.
14      And then somehow or another, we agreed
15  that I would draft a memorandum and send it to
16  Mr. Donziger. And I think the reason I sent it to
17  Mr. Donziger and not Mr. Horowitz is there was some
18  question as to who was representing Mr. Donziger. So
19  that's why I drafted the memo.
20  Q   And the memorandum, excluding the
21  introduction paragraph, contains kind of four
22  substantive paragraphs reflecting what you just
23  described as reasons for your withdrawal.
24      The first paragraph is, it says in the
25  second sentence, Despite our repeated request to you,

Page 84

1   we have not received the pertinent documents and
2   information that were necessary to support the
3   arguments we had discussed as being the main reasons
4   to oppose the subpoenas and that would support the
5   arguments we deem to be compelling based on our legal
6   research.
7       Is that consistent with what you told me
8   earlier about the lack of factual legal support that
9   you had received from Mr. Donziger in the course of
10  your representing the LAPs?
11  A   Yes.
12  Q   And the second paragraph talks about this
13  gentleman, Jeff Shinder.
14      And the last sentence says, Mr. Shinder
15  traveled to Boulder to meet with witnesses. BHFS did
16  not participate in the interviews.
17      BHFS is Brownstein Hyatt Farber & Schreck;
18  is that correct?
19  A   Yes.
20  Q   And your statement that you didn't
21  participate in the interviews, is that consistent
22  with what you told me is another reason for your
23  withdrawal is that you had asked to participate in
24  the meetings with Stratus, but were refused access to
25  that, to Stratus?

Page 85

1   A   Yes, that's my recollection.
2   Q   Okay. And then the third paragraph says
3   that, Shinder told us that after meetings with the
4   witnesses, he was concerned that despite your
5   representations to us that Stratus's work with the
6   Ecuadorian expert comply with Ecuadorian procedure
7   and was proper, he understood the opposite to be
8   true.
9       Is that consistent with what we were
10  talking about right immediately before the break,
11  about that your understanding, from what Mr. Donziger
12  had told you was inconsistent with what Mr. Shinder
13  learned from his discussion of Stratus's role in the
14  Ecuadorian case?
15  A   Yes. I think I was a bit uncertain as to
16  whether Shinder expressly told us that he had learned
17  that something was amiss, or whether we, based upon
18  what Shinder told us, we concluded that that was
19  probably what Shinder had learned.
20      This refreshes my recollection that
21  apparently Shinder told us that, based upon what he
22  learned, he, in fact, concluded that there was a
23  discrepancy.
24  Q   And the last paragraph talks about the
25  meet and confer with Gibson Dunn. And it says, the

22 (Pages 82 - 85)

Page 86

1  last sentence, quote, We were not given timely
2  information or direction as to what our position
3  would be at the meet and confer.
4       Is that consistent with what you told me
5  about your inability to meet and confer responsibly,
6  given the lack of information from Donziger to you?
7    A    Yes.
8    Q    Since we're talking about Mr. Shinder,
9  let's turn to tab 50. And while we're doing that, do
10  you know a gentleman by the name of Doug Beltman?
11   A    The name is not familiar.
12   Q    Okay. Do you know any of the principals
13  of Stratus Consulting? Have you ever talked with
14  them or met them?
15   A    I have the faintest of recollections that
16  at some point I spoke with somebody, one of the
17  principals at Stratus, when we were -- when we were
18  trying to decide whether we would represent them.
19       And all I recall the principal telling me
20  is that they were thinking about it or they had
21  turned it over to their counsel for consideration.
22  But Beltman's name isn't familiar.
23   Q    -- okay. And that conversation on the
24  engagement was before this discussion about meeting
25  Stratus in Boulder came about; is that correct?

Page 87

1    A    I'm pretty sure.
2    Q    All right. And let me direct your
3  attention to what has been marked 4010.
4       (Exhibit 4010 marked.)
5       MR. BLUME: Mr. Gomez, these are
6  handwritten notes with the date in the upper
7  right-hand corner 3/19/2010.
8    Q    (BY MR. BLUME) And after you've had a
9  chance to review it, I would ask you first,
10  Mr. McDermott, whether you recognize the handwriting
11  of these notes?
12   A    I don't, unless they're Ericka's. Again,
13  I don't think they're Michael Hoke's. They're not
14  mine. And if they came from our files, as it appears
15  that they did, then I assume they're Ericka's. But I
16  don't know that.
17   Q    Okay. And is it the -- this was produced
18  with a Bates No. BHFS 56, coming from your files.
19       Would it be the ordinary course of lawyers
20  in your firm to take notes of substantive meetings?
21   A    Yes.
22   Q    And would it be the ordinary course of
23  lawyers of the firm to maintain those notes in your
24  files?
25   A    Yes.

Page 88

1    Q    Let me direct your attention to what is
2  written in it. It says up top left, the date as I
3  mentioned is 3/19/2010. And does that refresh your
4  recollection about in or around the time that someone
5  from your firm had that conversation to which you
6  referred with Jeff Shinder, after his meeting in
7  Boulder?
8       MR. GOMEZ: Objection. Form.
9       THE SPECIAL MASTER: I'm sorry? What was
10  the objection?
11      MR. GOMEZ: Form.
12      THE SPECIAL MASTER: What was the form?
13  Let me -- hold on a second, Mr. Gomez. I want to
14  look at it.
15      I'm going to sustain that form.
16      Break it down, Mr. Blume.
17      MR. BLUME: Sure.
18   Q    (BY MR. BLUME) Do you recall --
19      THE SPECIAL MASTER: That is, I'm going to
20  sustain the objection to form. I'm not sustaining
21  the form.
22      MR. BLUME: Very well.
23   Q    (BY MR. BLUME) Mr. McDermott, do you
24  recall approximately when Mr. Shinder met with the
25  Stratus people in Boulder?

Page 89

1    A    Yeah. It appears to be on or about
2  March 19th.
3    Q    Okay.
4    A    Or March 18th.
5    Q    And I think you testified earlier that you
6  learned of the substance of Mr. Shinder's meeting
7  with Stratus by way of you, being the firm, learned
8  by way of a phone call with Mr. Shinder; is that
9  correct?
10   A    Yes.
11   Q    And do you recall whether you participated
12  personally in that call or members of your team did
13  only?
14   A    I don't -- I don't remember. What I do
15  remember is sitting in the parking lot of a back
16  doctor, learning of this one way or another in the
17  parking lot. And literally telling Michael or
18  Ericka, having a discussion about my discomfort.
19      And we talked it through. And then we
20  concluded, although it was my responsibility, I was a
21  partner in the case, that we had to get out.
22   Q    And looking at some of the writings in
23  these notes, the third line down, it says, Beltman,
24  underlined, told was retained to do environmental
25  evaluation, but then morphed into him writing.

23 (Pages 86 - 89)

Page 90

1        Do you recall, in learning about the call
2 with Mr. Shinder, that your firm learned that, in
3 fact, Mr. Beltman -- that this is consistent with
4 what you learned, that Mr. Beltman had been retained
5 to do an evaluation, but then ultimately ended up
6 writing significant portions of the Cabrera report?
7        A    I don't know about significant portions,
8 but I do -- but 4010 does refresh my recollection
9 that I did learn that Beltman or Stratus had written
10 some portion of the Cabrera report.
11        I don't recall how significant it was.
12        Q    Sure.  There's a comment in here that's
13 right after that in small --
14        THE SPECIAL MASTER:  Excuse me.  Are you
15 looking at -- are you looking at 4010?
16        THE DEPONENT:  Yes, Your Honor.
17        THE SPECIAL MASTER:  Mr. Blume?
18        THE DEPONENT:  Yes, Your Honor.
19        MR. BLUME:  Yes, Your Honor.
20        THE SPECIAL MASTER:  You know, you have to
21 think of transcript.  Just imagine what the reader of
22 the transcript just heard from you.  Hasn't the
23 faintest clue what you're talking about.  So if you
24 say, to do this right, you have to say, Mr. Witness,
25 would you please take a look again at 4010?

Page 91

1        That way the reader of the transcript who
2 doesn't necessarily have the video, and I wouldn't if
3 I weren't reading the transcript, would know what
4 document he needs to have or she needs to have in
5 front of her.
6        And while I'm on the subject, this is not
7 adding work, this is reducing work, what I'm about to
8 do.
9        Would you take a look, Mr. Witness, at
10 Exhibit 4000.
11        THE DEPONENT:  I have it in front of me,
12 Your Honor.
13        THE SPECIAL MASTER:  And would you look at
14 page 16.
15        THE DEPONENT:  Yes, Your Honor.
16        THE SPECIAL MASTER:  And would you look at
17 the two entries, the fourth from the bottom and the
18 third from the bottom.  Do you see those?
19        THE DEPONENT:  Yes.
20        THE SPECIAL MASTER:  And do those two
21 entries indicate to you that the person who had the
22 conversation, these seem to show two conversations,
23 is that the person who had the conversation with
24 Mr. Shinder was Michael Hoke?
25        THE DEPONENT:  Yes, Your Honor.

Page 92

1        THE SPECIAL MASTER:  Now looking at 4010,
2 the handwritten notes, having now seen Exhibit 4000
3 and your testimony about that, does this help you
4 recall or does this help you tell us whose notes
5 these are, 4010?
6        THE DEPONENT:  Yes, Your Honor.
7        MR. GOMEZ:  With due respect, objection to
8 form.
9        THE SPECIAL MASTER:  What did I do now?
10        Hold on a second, Mr. Gomez, let me just look.
11        MR. TREECE:  Your Honor, may I interject
12 something?
13        THE SPECIAL MASTER:  Yes, sir.
14        MR. TREECE:  Your Honor might look at the
15 first entry on that page, which is the 3/19/10 entry
16 of Ericka Englert, as you work through these lines of
17 questions.
18        THE SPECIAL MASTER:  I really have only
19 one more question, which is, you know, counsel tried
20 to identify these notes before.  I think the way to
21 try to identify these notes is to look at the
22 document and that's what I'm asking the witness.
23        Does this help you help us as to who the
24 author of these notes was?
25        THE DEPONENT:  Yes, Your Honor.  I think

Page 93

1 they are Mr. Hoke's.  And I misspoke earlier when I
2 said I didn't think they were Mr. Hoke's.  But I do
3 think they're Mr. Hoke's notes.
4        THE SPECIAL MASTER:  And in fact, you see,
5 do you not, a telephone number for Ericka there,
6 right?
7        THE DEPONENT:  Yes.
8        THE SPECIAL MASTER:  See that?
9        THE DEPONENT:  Yes.
10        THE SPECIAL MASTER:  Well, she's not going
11 to write her own telephone number on her own notes,
12 is she?
13        THE DEPONENT:  Associates do odd things.
14        THE SPECIAL MASTER:  That's true.
15        MR. GOMEZ:  Excuse me, Mr. Gitter, excuse
16 me.  This is Mr. Gomez.  I just need to state for the
17 record that I object to the form.  I think there's
18 some leading here.  I think there's some speculation
19 involved in the questions.  I think the witness -- I
20 don't want to be accused of violating the rules on
21 speaking objections, and I'll just leave it at that.
22        THE SPECIAL MASTER:  Okay.  I disagree
23 with you.  This is, you know, just trying to identify
24 something.  And this is usually how I do it and many
25 others that I know do it.  I don't think it's

24 (Pages 90 - 93)

Page 94

1 objectionable.

2      In any event, now, Mr. Blume, try to speed
3 it up.

4      Q      (BY MR. BLUME) If you could describe for
5 us -- well, do you recall the conversation you had
6 with Mr. Hoke about his call with Mr. Shinder and
7 what he told you specifically about that call?

8      A      Yes, but I'm not -- I don't recall whether
9 I first learned of the contents of the call in
10 writing or in a discussion with Mr. Hoke. I know at
11 some point I probably had multiple -- I know I had
12 multiple -- I know I had discussions with Mr. Hoke.

13      Q      Okay.

14      A      So, yeah, I recall that Mr. Hoke was
15 troubled by what he had learned. And he -- and he
16 conveyed to me what is generally, what is represented
17 in 4010.

18      Q      Was part of that discussion that Mr. Hoke
19 had with you, did he mention this comment he makes
20 about halfway into the page where it says, Be leery
21 about information we're getting.

22      Do you recall having that conversation
23 about that with Mr. Hoke, about his conversation with
24 Mr. Shinder?

25      A      I actually don't recall that part of it.

Page 95

1      Q      Okay. What about the next line where he
2 says, Like criminal defense lawyer with guilty client
3 making procedural objections.

4      Does that refresh your memory about that
5 portion of the conversation?

6      A      No.

7      Q      And what about the next line? It says,
8 Physically ill - fraud on foreign court.

9      Do you recall having a conversation with
10 Mr. Hoke about that portion of his call?

11      A      Generally, in the sense that Michael Hoke,
12 who is a rather deliberate individual, and does not
13 get exercised (sic) about much, was troubled by what
14 he had learned. And we were all troubled by what we
15 had learned.

16      Q      Is it fair to say that one of the things
17 that troubled you about what you had learned is the
18 fact that it was inconsistent with what you had
19 learned previously from Mr. Donziger about Stratus's
20 role in the Ecuadorian litigation?

21      A      Yes.

22      Q      If I could turn to tab 52, please.

23      (Exhibit 4011 marked.)

24      Q      (BY MR. BLUME) I place before you
25 Document 4011.

Page 96

1      MR. BLUME:  And Mr. Gomez, these are
2 handwritten notes, upper right-hand corner dated
3 3/19/2010. Upper left-hand corner, it says in
4 handwriting, Call with Steven Donziger.

5      Q      (BY MR. BLUME) And I would ask you,
6 Mr. McDermott, if you recognize the handwriting on
7 Exhibit 4011, which is Bates No. BHFS 55.

8      A      Well, I think it's Mr. Hoke's handwriting.

9      Q      Okay. And just so I'm clear, there's a
10 middle number on the top 13920.1. Is that, in fact,
11 a client and matter number that the Brownstein firm
12 assigned to this matter?

13      And I could direct your attention to
14 Exhibit 4000 to refresh your recollection.

15      A      Well, you're not refreshing my
16 recollection because as any lawyer at Brownstein will
17 tell you, I never know what the client numbers are.

18      Q      Okay. Is the client number on the invoice
19 that is Exhibit 4000 consistent with that number in
20 the handwritten notes?

21      A      Yes.

22      Q      And was it the ordinary course of
23 Brownstein lawyers to keep notes such as what we have
24 in Exhibit 4011?

25      A      Yes.

Page 97

1      Q      And was it the ordinary course of the firm
2 to maintain those notes in its client files?

3      A      Yes.

4      Q      These handwritten notes purport to reflect
5 a call with Mr. Donziger on March 19th, 2010.

6      Do you recall whether you personally
7 participated in a call with Mr. Donziger on or around
8 March 19th, 2010?

9      A      I believe I did. I would hope that I
10 wouldn't have asked an associate to do that. But I'm
11 pretty sure that I did, but I guess I'm not positive.

12      Q      Okay. And I only ask because I didn't see
13 it reflected in your time sheets. Is it possible
14 that you would have had that call and not recorded
15 the time, or perhaps you weren't on that call?

16      A      Well, actually, I think probably what
17 happened is that I, again, was in this parking lot of
18 the physician, and so I probably didn't
19 contemporaneously write it on my time sheet, which is
20 not good.

21      But my guess is that's what happened, but
22 maybe not. Maybe I wasn't on the call.

23      Q      Well, if I could direct your attention to
24 the bottom quarter of the notes where it says, JBM's
25 cell. Is that a number that you would have provided

25 (Pages 94 - 97)

Page 98

1 to Mr. Donziger for -- in this circumstance, or would
2 it be the practice of Mr. Hoke to give out your cell
3 without your permission?
4    A    Well, that was and is my cell number. I
5 think I was interpreting this that there was a call
6 with Mr. Donziger, and then I probably told Michael
7 to call me and he called me on my cell phone. But --
8    Q    Okay. And let me -- I'm sorry, my error.
9 Direct your attention -- in fact, there is a notation
10 in the time sheet, Exhibit 4000, on March 19th, 2010.
11         While your time is not recorded,
12 Ms. Englert's time says, telephone conference with S.
13 Donziger, John McDermott and Michael Hoke.
14         Does that refresh your recollection more
15 specifically whether you actually participated in
16 this call with Mr. Donziger?
17    A    And Steven Donziger, right?
18    Q    Right.
19    A    On March 19th. Yes, it does refresh my
20 recollection. And it appears that I did participate.
21    Q    And what do you recall would be the
22 purpose with Mr. Donziger, and what do you recall was
23 discussed?
24         THE SPECIAL MASTER: Hello?. This is --
25 this is the New York conference room and we have lost

Page 99

1 you for about ten minutes or five minutes.
2         Mr. Gomez, are you on?
3         MR. GOMEZ: Yes, I am.
4         THE SPECIAL MASTER: Have you been on the
5 whole time?
6         MR. GOMEZ: Yes, I can hear everything
7 that is going on.
8         THE SPECIAL MASTER: Oh, we've been off
9 both video and audio for maybe five minutes. We have
10 no video right now, so we'll just listen.
11         MR. BLUME: Okay. We will make efforts,
12 Your Honor, my apologies, to get that video link back
13 up.
14         THE SPECIAL MASTER: That's all right. We
15 have LiveNote is, however, working, so we didn't miss
16 very much.
17         MR. BLUME: Okay. Great.
18    Q    (BY MR. BLUME) If you could tell us,
19 Mr. McDermott, what your recollection was of the call
20 with Mr. Donziger on March 19th, 2010?
21         MR. GOMEZ: Objection. Privilege.
22         THE SPECIAL MASTER: Well, it's overruled
23 for a start. It's been waived. And once I hear the
24 testimony about it, I may also add the crime fraud
25 exception.

Page 100

1    A    Well, my recollection is that we were
2 calling --
3    Q    (BY MR. BLUME) Sorry.
4    A    My recollection is that we were
5 telephoning Mr. Donziger to tell him what we had
6 learned and advise him of our concerns with
7 proceeding in the case. And maybe to get his
8 reaction.
9    Q    And there's a statement in the top of the
10 notes which says, Clear Stratus was working with
11 local counsel to prepare materials to submit to
12 Cabrera.
13         In the sub bullet 11 of 17, Annexes
14 prepared by Stratus almost whole cloth, also exec
15 summary.
16         Do you recall speaking to that level of
17 specificity with Mr. Donziger about Stratus's role in
18 the Cabrera report?
19    A    No, I don't.
20         MR. GOMEZ: Objection.
21         THE SPECIAL MASTER: I'm sorry, what was
22 that, Mr. Gomez?
23         MR. GOMEZ: Objection. Privilege.
24         THE SPECIAL MASTER: Overruled for the
25 waiver, but I need to know something at this point.

Page 101

1         Mr. McDermott, who was speaking? Was it
2 you or someone on your team, or was it Mr. Donziger
3 in the first two lines, as reflected in the first two
4 lines that Mr. Blume just read?
5         Clear Stratus was working with local
6 counsel to prepare materials to submit to Cabrera.
7 Bullet point 11 of 17, Annexes prepared by Stratus
8 almost whole cloth, also exec summary.
9         Who was speaking those words or the
10 substance of those words?
11         THE DEPONENT: Your Honor, my best
12 recollection is it was somebody from our team,
13 either -- I believe it was someone from our team. I
14 would think it would be -- have been me because I
15 think the nature of this call was such that I would
16 have taken the lead. But I can't be certain.
17    Q    (BY MR. BLUME) Do you recall what
18 Mr. Donziger's reaction was to your describing for
19 him your call with Mr. Shinder?
20         MR. GOMEZ: Objection. Privilege.
21         THE SPECIAL MASTER: Overruled. Waived.
22    A    What did he say, waived?
23    Q    (BY MR. BLUME) You can answer. He said
24 waived.
25    A    Well, my recollection --

26 (Pages 98 - 101)

Page 102

1    THE SPECIAL MASTER: Mr. McDermott --
2    THE DEPONENT: Yes, Your Honor.
3    THE SPECIAL MASTER: I'm sorry. If you're
4 waiting on me, just please answer the question.
5    THE DEPONENT: Thank you.
6    A    My recollection is, what is referenced
7 behind SD on 4011, which is that Mr. Donziger said
8 that -- acknowledged that it had occurred, but said
9 he didn't think it was inappropriate under Ecuadorian
10 law.
11   Q    (BY MR. BLUME) There's a reference down
12 on the bottom of, in a sub bullet 1 --
13   THE SPECIAL MASTER: I add -- excuse me
14 I add the crime fraud exception now, as to the
15 portion uttered by Mr. Donziger.
16   Q    (BY MR. BLUME) There's a bullet point
17 number 1 down below that says, Paramount issue,
18 ethical, check all filings and correspondence for
19 misrepresentations.
20       Do you recall that part of the discussion?
21   A    Yes.
22   Q    Okay. What do you recall about that?
23   A    Well, my recollection is that Donziger,
24 Mr. Donziger, was not on that part of the call. That
25 although I believe I raised those same issues in the

Page 103

1 call with Mr. Donziger and I think they're reflected
2 in the upper half of 4011.
3    But then when Michael and I or Michael,
4 Ericka and I talked, I believe immediately after our
5 call with Mr. Donziger, I raised those three issues
6 with Mr. Hoke and Ms. Englert.
7    Q    Let me direct your attention back to
8 Exhibit 4000, if I might, which is the invoice. And
9 I just want to -- this may -- I think maybe the
10 record is a little unclear based on my poor
11 questioning.
12       If I could direct your attention to
13 page 15 of 18. There's a time entry for Ericka
14 Englert on March 18th reflecting a telephone
15 conversation with Mr. Schindler -- Shinder misspelled
16 -- leading to the next page of a conversation with
17 Mr. Donziger on 19 March, leading to another
18 conversation with Mr. Shinder on 19 March.
19       Do you recall that there were, in fact,
20 two conversations with Mr. Shinder, one before this
21 conversation with Mr. Donziger, and one after?
22   A    I think -- I think that's accurate because
23 I recall for some reason -- for some reason, I felt
24 like we had to get Donziger's, Mr. Donziger's
25 approval to talk to Mr. Shinder because of some of

Page 104

1 the concerns that were developing.
2    Q    Okay. So just so the record is clear, did
3 you begin to develop, you mentioned earlier,
4 suspicions and concerns even before you had a deep,
5 substantive conversation with Mr. Shinder?
6    A    Yes.
7    MR. GOMEZ: Objection.
8    Q    (BY MR. BLUME) And are those the concerns
9 that were raised with Mr. Donziger in this call on
10 Exhibit 4011?
11   MR. GOMEZ: I'm sorry, could you repeat
12 that, please?
13   Q    (BY MR. BLUME) Yes, did -- was it those
14 initial concerns and suspicions that led you to have
15 the conversation with Mr. Donziger as reflected in
16 Exhibit 4011, as well as this earlier call with
17 Mr. Shinder, first call with Mr. Shinder?
18   MR. GOMEZ: Objection.
19   THE SPECIAL MASTER: I'm sorry, I'm
20 confused by the question. The question --
21   (Audio feedback.)
22   MR. BLUME: Your Honor, yeah, if you could
23 disconnect the teleconference. Okay. Are we back,
24 Your Honor?
25   THE SPECIAL MASTER: We were off for a

Page 105

1 bit. But I still was confused by the questioning
2 there.
3    MR. BLUME: And I'll try to be clear.
4    THE SPECIAL MASTER: Break it up.
5    MR. BLUME: Sure.
6    Q    (BY MR. BLUME) According to your time
7 sheets, there was an initial call with Mr. Shinder
8 and then a call with Mr. Donziger and then another
9 call with Mr. Shinder. Is that how you recall it
10 happening?
11   A    That's my recollection now after reviewing
12 this material.
13   Q    Okay.
14   A    Material being 4000, 4011.
15   Q    Because at the bottom of 4011 it reflects
16 a note that says, Anything untoward? Need to talk to
17 Shinder. E-mail to Steven to get okay to talk to
18 Shinder. Let Steven know will forward to Jeff.
19       Do you see that?
20   A    Yes.
21   Q    And that reflects your requesting of
22 Mr. Donziger permission to speak to Mr. Shinder about
23 his concerns, again; isn't that right?
24   A    Yes.
25   Q    Okay. And then you had that conversation

27 (Pages 102 - 105)

Page 106

1 on March 19th with Mr. Shinder in which he revealed
2 in more detail his concerns; isn't that right?
3    A    That's my recollection.
4    Q    And it was in that conversation on
5 March 19th, was it not, that you learned that
6 Mr. Shinder was actually withdrawing from his
7 representation; is that correct?
8    A    I'm not sure whether that was the first or
9 second call.
10   Q    Okay.
11   A    There's a part of me that thinks the
12 reason we felt like we had to ask Mr. Donziger for
13 permission is that maybe Shinder had already
14 withdrawn. And therefore, there might be a concern
15 with a privilege waiver if I spoke to Shinder after
16 he had withdrawn.
17        And so maybe I felt like I had to get
18 Donziger's permission.
19   Q    Okay. But suffice to say during the
20 period in and around March 18th and 19th, 2010, you
21 had conversations with Mr. Shinder in which you
22 learned information which was inconsistent with what
23 you had previously learned from Mr. Donziger about
24 Stratus's role in Ecuador; is that correct?
25   A    Yes.

Page 107

1    Q    Okay. Prior to March of 2010, do you
2 recall how many times you had actually met with
3 Mr. Donziger about your efforts in Colorado?
4    A    You know, I was thinking about this last
5 night. I don't know if I ever met with Mr. Donziger.
6 If I did, it was, you know, once, maybe. I just
7 don't -- once or twice. I honestly, I can't even
8 visualize him.
9    Q    Okay. Let me just show you something,
10 perhaps refresh your recollection, tab 14.
11        (Exhibit 4012 marked.)
12        MR. BLUME: And I'll mark this as
13 Exhibit 4012. Which comes out of -- which has a
14 Bates number of Woods-HDD-0007981 and purports to be
15 an e-mail from Mr. Donziger, dated
16 4 February 2010, reflecting Miami, Florida and
17 Boulder, Colorado trip expenses from January 27
18 to 30, 2010.
19        I show that to you because your name is
20 mentioned and ask you only if it refreshes your
21 recollection as to whether you may have met with
22 Mr. Donziger in or around the end of January of 2010.
23   A    It doesn't. I'm not saying I didn't meet
24 with him, but I don't have any recollection of ever
25 meeting with him.

Page 108

1    Q    Okay. Is it possible -- well, do you know
2 whether or not either Ms. Englert or Mr. Hoke met
3 with Mr. Donziger?
4    A    I don't.
5    Q    Is it fair to say that if those meetings
6 occurred, they would be most likely reflected in the
7 invoice that is Exhibit 4000 in this case?
8    A    Yes.
9    Q    Okay. And if I could get tab 17, please.
10        (Exhibit 4013 marked.)
11   Q    (BY MR. BLUME) And while we're doing
12 that, if I could direct your attention on
13 Exhibit 4000 to an entry on page 8 of 18, which is a
14 time entry for February 24th in which Mr. Hoke
15 indicates a conference with Ericka Englert and
16 S. Donziger re case strategy and issues.
17        Do you recall learning about a conference
18 in and around February 24th, 2010 between
19 Mr. Donziger and your team?
20   A    I'm sorry, I just don't remember that.
21   Q    Okay. And let me place before you
22 Exhibit 4013. And that's without -- you're free to
23 look through the substance, but ask whether or not
24 you recognize the handwriting on that exhibit?
25   A    No.

Page 109

1    Q    Okay. It's dated February 24, 2010, with
2 the case number in the upper left-hand corner.
3        Would it be reasonable to assume that
4 this -- and it says meeting with S. Donziger and
5 Ericka Englert.
6        Is it fair to assume from the time entries
7 that these are Mr. Hoke's notes from that meeting as
8 reflected in Exhibit 4000?
9    A    Yes.
10   Q    And these are notes that Mr. Hoke and your
11 firm kept in the ordinary course of business?
12   A    Yes.
13   Q    And it would be the ordinary course of the
14 business at the Brownstein firm to keep such notes?
15   A    Yes.
16   Q    There is at the bottom of Bates No. BHFS
17 49, there's a note that says, One meeting between
18 Stratus and Cabrera. It goes on to say, Can we
19 allege Chevron's experts also had such contact?
20        Do you remember -- do you have any
21 recollection of a discussion with either Mr. Hoke,
22 Ms. Englert or Mr. Donziger about that specific point
23 in and around the end of February 2010?
24   A    No.
25   Q    Okay. Direct your attention to Bates No.

28 (Pages 106 - 109)

Page 110

1 BHFS 51. There is initials, EHE.
2      Do you see that?
3   A   Yes.
4   Q   And do you recognize that, those initials
5 to be -- I'm sorry, EH -- I'm sorry, EFE, I think.
6 Do you recognize that to be Ericka Englert?
7   A   I suspect it is.
8   Q   And it says, Does Cabrera use Chevron
9 info? SD: Yes.
10      Do you see that?
11   A   Yes.
12   Q   Do you recall looking at that, those
13 series of notes, do you recall having a discussion
14 with Ms. Englert or Mr. Hoke or Mr. Donziger about
15 anything reflected in those notes?
16   A   What I remember is, as I recall,
17 Mr. Donziger was making an argument that to the
18 extent that there were -- to the extent that there
19 were communications between Cabrera and our
20 Ecuadorian clients, there were similar contacts
21 between Mr. Cabrera and Chevron or Chevron's experts.
22 And that was permissible.
23   Q   Okay.
24   A   So qualitatively, the context didn't
25 differ.

Page 111

1   Q   All right.
2   A   I assume that's what they were talking
3 about here.
4   Q   And do you recall in and around the end of
5 February 2010 whether or not Mr. Donziger told you or
6 any member of your team about Stratus's efforts to
7 write any portion of the Cabrera report?
8      MR. GOMEZ: Objection. Privilege.
9      THE SPECIAL MASTER: Overruled. Let's
10 hear the substance of it and then I may add crime
11 fraud.
12   A   I don't recall -- I don't recall
13 Mr. Donziger telling us that Stratus wrote a portion
14 of the Cabrera report.
15      THE SPECIAL MASTER: I add crime fraud.
16   Q   (BY MR. BLUME) Is it fair to say,
17 Mr. McDermott, that both you and your associates
18 relied on Mr. Donziger to provide you the factual
19 information about the proceedings in Ecuador?
20   A   Yes, either from he, Mr. Donziger, or as I
21 have testified previously, he indicated that he was
22 arranging for us to get affidavits or other factual
23 support from Ecuador.
24   Q   Okay.
25      MR. BLUME: If I could have tabs 18 and

Page 112

1 19, please.
2      (Exhibits 4014 and 4015 marked.)
3   Q   (BY MR. BLUME) I'll place before you what
4 is marked as Exhibit 4011 -- I'm sorry, 4014. And
5 that is Bates No. DONZ 00053758, a two-page e-mail,
6 the most recent of which is January 28th, 2010, in
7 which, during this chain Mr. Donziger provides to you
8 a provision of Ecuadorian civil code.
9      Let me just ask you, is this e-mail -- was
10 this e-mail such that was it was kept in the ordinary
11 course of the Brownstein firm's business?
12   A   Yes.
13   Q   And would it be the ordinary course of
14 business at the Brownstein firm to keep such an
15 e-mail?
16   A   Yes.
17   Q   And is this -- do you remember receiving
18 this e-mail?
19   A   No.
20   Q   Okay. Do you remember asking Mr. Donziger
21 for specific provisions of Ecuadorian civil code?
22   A   Yes.
23   Q   And this is about a topic about the
24 closing of the evidentiary period in Lago. Do you
25 remember that being a point of discussion between you

Page 113

1 and Mr. Donziger?
2   A   Yes.
3   Q   Okay. Do you recall whether Mr. Donziger
4 ever sent to you any provision of the Ecuadorian code
5 regarding contact with court-appointed experts?
6   A   I don't recall one way or another.
7   Q   Okay. Let me place before you what is
8 marked as 4015. This is an e-mail from Mr. Donziger
9 to you, Mr. Hoke and Ms. Englert, dated 22 February
10 Donziger production 114910. It's a two-page e-mail.
11      And in all caps up top, Mr. -- and is this
12 an e-mail that would be kept by the Brownstein firm
13 in the ordinary course of its business?
14   A   Yes.
15   Q   And would it be the ordinary course of the
16 Brownstein firm to keep such an e-mail related to
17 client matters?
18   A   Yes.
19   Q   On the top there is an all bolded
20 paragraph addressed to you, Ericka and Michael.
21      Do you see that?
22   A   Yes.
23   Q   And it says, Below is the beginning of our
24 memo that outlines possible legal arguments to block
25 Chevron's 1782 application.

29 (Pages 110 - 113)

Page 114

1   Do you see that?
2   A   Yes.
3   Q   It goes on to say, Will send full memo
4   with factual and other issues by tomorrow.
5      Did you rely on Mr. Donziger to provide
6   you the sum and substance of the memorandum that he
7   wanted to file in opposition to Chevron's 1782 letter
8   petition?
9      MR. GOMEZ: Object. Privileged.
10     THE SPECIAL MASTER: Let me look at that
11  again.
12     Overruled. Waiver. Yeah.
13  A   Well, let me answer --
14     THE SPECIAL MASTER: Please answer the
15  question.
16     THE DEPONENT: All right. Thank you, Your
17  Honor.
18  A   Let me answer it this way. We, Brownstein
19  lawyers, had our responsibilities to the Court,
20  Rule 11 and otherwise.
21     So ultimately if we signed a document with
22  the Court, it's our responsibility. But Mr. Donziger
23  was our principal support -- was our principal source
24  for what we anticipated we would ultimately put in
25  whatever we filed with the Court.

Page 115

1   Q   (BY MR. BLUME) And at any point in time,
2   did you -- well, strike that.
3      MR. BLUME: If I could have tab 20,
4   please.
5      (Exhibit 4016 marked.)
6   Q   (BY MR. BLUME) I place before you,
7   Mr. McDermott, Exhibit No. 4016. This is a
8   memorandum on Brownstein Hyatt Farber & Schreck
9   letterhead, dated 26 February 2010 to Steven
10  Donziger, copied to Ericka Englert, from Michael
11  Hoke.
12     Do you see that?
13  A   Yes.
14  Q   Is this a memorandum that was kept in the
15  ordinary course of business at the Brownstein firm?
16  A   Yes.
17  Q   And would it be the ordinary course of
18  business of the Brownstein firm to keep such a
19  record?
20  A   Yes.
21  Q   Do you recognize this document?
22  A   Yes.
23  Q   What do you recognize it to be?
24  A   Well, I just -- I recall that -- I mean,
25  we were on -- we knew Mr. Donziger didn't have a lot

Page 116

1   of money. And we knew that we had to be efficient
2   and that he made it clear, understandably, that he
3   wanted to know precisely what was going on and what
4   we were going to be doing, all understandable.
5      It did not seem odd to me. And so we
6   prepared this work plan, we being primarily Michael
7   and Ericka, prepared this work plan and sent it to
8   Mr. Donziger.
9   Q   Let me direct your attention to page 2 of
10  that memo under the heading from Donziger's team.
11  The sixth bullet down it says, Documents that could
12  be ultimate source for materials Chevron alleges show
13  improper contact between Cabrera and Stratus.
14     Do you see that sub bullet?
15  A   Yes.
16  Q   Example, court filings or other public
17  cost documents containing the same figures regarding
18  the use of lower TPH standards such as that found in
19  mediation materials.
20     Do you recall ever receiving information
21  from Mr. Donziger that --
22     (Mr. Mastro joined the video conference
23  from New York office.)
24     THE SPECIAL MASTER: Mr. Blume, I'm going
25  to interrupt to state for the record that Randy

Page 117

1   Mastro has just walked into the room. If you look
2   this way, you'll see him.
3      MR. BLUME: Mr. Mastro, Mr. Treece,
4   counsel for John McDermott, the Brownstein firm, and
5   John McDermott, the witness.
6      MR. MASTRO: Mr. McDermott.
7      MR. BLUME: Mr. Mastro is my partner from
8   New York.
9   Q   (BY MR. BLUME) Do you recall at any point
10  in time, referring to bullet 6 on page 2 of the
11  memorandum you prepared, the work plan, do you have
12  any recollection of receiving any documents that
13  satisfied you that there was an alternate source for
14  materials Chevron alleged showed improper contact
15  between Cabrera and Stratus?
16  A   No.
17  Q   Directing your attention down to the next
18  section, B, draft opposition brief. It says, Fact
19  section and it has a bracket, A. Woods, S. Donziger,
20  E. Englert, M. Hoke.
21     Michael Hoke and Ericka Englert work for
22  the Brownstein firm, that's correct, right?
23  A   They did. At the time Mr. Hoke still
24  does, Mrs. Englert does not.
25  Q   Right. Did you rely, and did you and your

30 (Pages 114 - 117)

Page 118

1 team rely exclusively on Mr. Donziger and Mr. Woods
2 to provide the facts necessary to support the
3 opposition brief in the 1782 action?
4    A    Well, I --
5        MR. GOMEZ: Objection. Privilege.
6        THE SPECIAL MASTER: Overruled.
7    A    I mean, I don't want to quibble. You used
8 the word exclusive. We certainly relied primarily to
9 an overwhelming extent on them. But presumably we
10 would have documents that would permit us to play
11 some role in the fact section of the brief.
12       But, yes, Mr. Donziger and his office
13 were, were our principal source of information,
14    Q    (BY MR. BLUME) Okay. And then under
15 other tasks, C, the second bullet says, Draft and
16 prepare affidavit of Peter Jones.
17       Do you recall who Peter Jones is?
18    A    No.
19    Q    In the parenthetical, it says, Narrow -
20 just established no contact with Cabrera prior to
21 report, scope of work with Stratus, et cetera.
22       Do you recall ever receiving an affidavit
23 from anyone detailing the actual, true scope of work
24 that Stratus did in Ecuador?
25    A    I can't be certain, but I don't believe we

Page 119

1 ever received that. But I'm not certain.
2    Q    Okay. Is it fair to say, Mr. McDermott,
3 that any information you would have received
4 consistent with your work plan dated February 26,
5 2010 regarding Stratus's role in Ecuador was
6 inconsistent with what you heard from Mr. Shinder
7 during your March 2010 telephone conversation?
8    A    Could you repeat that or read it back?
9    Q    Sure.
10    A    Please.
11    Q    Is it fair to say that any information you
12 would have received consistent with your work --
13       THE SPECIAL MASTER: Hold on, that makes
14 it -- the form is bad. I just noticed it.
15       MR. BLUME: Okay.
16       THE SPECIAL MASTER: Any information you
17 would have received.
18       MR. BLUME: Very good. Fair enough, thank
19 you, Your Honor.
20       THE SPECIAL MASTER: It's a hypothetical
21 question.
22    Q    (BY MR. BLUME) Is it fair to say that --
23 did you receive any information in response to your
24 request as set forth in your work plan dated
25 February 26, 2010?

Page 120

1        MR. GOMEZ: Objection. Form.
2        THE SPECIAL MASTER: Hold on a second.
3 The form is fine.
4        THE DEPONENT: Could somebody repeat it to
5 me?
6    Q    (BY MR. BLUME) Sure.
7    A    I'm sorry.
8    Q    Do you recall receiving any information in
9 response to your work plan -- and let me be more
10 specific.
11       Do you recall receiving from Mr. Donziger
12 any facts in response to requests for such facts as
13 set forth in your work plan?
14    A    I can't be certain about that.
15       MR. GOMEZ: Objection. Form.
16    A    I would be -- I guess I would be
17 surprised --
18       THE SPECIAL MASTER: Hold on. Objection
19 overruled. Come on, wait a second. One person at a
20 time.
21       THE DEPONENT: I apologize.
22       THE SPECIAL MASTER: No, no, not you,
23 Mr. McDermott.
24       Without the preamble, Mr. Blume, ask your
25 question.

Page 121

1    Q    (BY MR. BLUME) Do you recall receiving --
2        THE SPECIAL MASTER: You can just read it
3 off of the LiveNote.
4        MR. BLUME: As I am.
5    Q    (BY MR. BLUME) Do you recall receiving
6 from Mr. Donziger any facts in response to requests
7 for such facts that were set forth in your
8 February 26 work plan?
9    A    I don't know. I guess I would be
10 surprised if he didn't send us something, but he
11 didn't send us much. And he didn't send us anything
12 that would permit us -- that gave me any comfort that
13 I could make any representations to Judge Kane.
14    Q    Okay.
15       MR. BLUME: If I could turn -- if I could
16 get tab 25, please.
17       (Exhibits 4017-A and 4017-B marked.)
18    Q    (BY MR. BLUME) I place before you first
19 what is marked as Exhibit 4017-A and also 4017-B.
20 And I'll spare you reading 4017-B. You're obviously
21 free to do so.
22       4017-A purports to be an e-mail from
23 Mr. Donziger to you, Mr. Hoke and Ms. Englert, dated
24 20 February 2010, subject, article on Chevron case.
25       Do you see that?

31 (Pages 118 - 121)

| Page 122 |
|---|
| 1   A   Yes. |
| 2   Q   Do you recall receiving from Mr. Donziger |
| 3   in and around February 20th, 2010 a near final draft |
| 4   of an academic essay on the Lago case? |
| 5   A   I have a faint recollection of receiving |
| 6   an article from Mr. Donziger. |
| 7   Q   And in his cover e-mail to you -- and this |
| 8   is an e-mail to you which would have been kept in the |
| 9   ordinary course at the Brownstein firm? |
| 10   A   Yes. |
| 11   Q   And it would have been in the ordinary |
| 12   course of business at the Brownstein firm to keep |
| 13   such an e-mail? |
| 14   A   Yes. |
| 15   Q   The e-mail received from Mr. Donziger |
| 16   suggests that this essay, quote, in the first line, |
| 17   Provides some of the background of the 17 years of |
| 18   litigation and does a moderately decent job of |
| 19   documenting Chevron's abusive litigation tactics of |
| 20   which the action you are handling is a component in |
| 21   our view. |
| 22        Do you see that? |
| 23   A   Yes. |
| 24   Q   Do you recall why -- well, do you recall |
| 25   having conversations -- whether Mr. Donziger told you |

| Page 123 |
|---|
| 1   whether or not, or explained to you the reasons for |
| 2   providing this essay, among other materials? |
| 3        MR. GOMEZ: Objection. Form. |
| 4        THE SPECIAL MASTER: It's not great, but |
| 5   I'll let it go, so we can leave early enough. |
| 6   A   I don't recall specifically what he said |
| 7   about this article. I mean, it was clear to me from |
| 8   Googling Mr. Donziger that there was a public |
| 9   relations aspect to his efforts, which, you know, is |
| 10   not necessarily a bad thing. And I suspect I |
| 11   viewed -- I suspect I viewed this as part of his |
| 12   public relations, certainly nothing I could rely |
| 13   upon. |
| 14   Q   (BY MR. BLUME) Do you -- did Mr. Donziger |
| 15   tell you whether he wanted you to rely on the facts |
| 16   as set forth in this article? |
| 17   A   Oh, well -- |
| 18        MR. GOMEZ: Objection. Privilege. |
| 19        THE SPECIAL MASTER: Oh, no, overruled. |
| 20   A   Well, I interpret 4017-A as him telling us |
| 21   that. |
| 22   Q   (BY MR. BLUME) And if I could direct your |
| 23   attention to page -- to the Exhibit 2017-B (sic), |
| 24   page 2 of 20, which is the article itself? |
| 25   A   4017-B. |

| Page 124 |
|---|
| 1   Q   I'm sorry, 4017-B. |
| 2   A   I'm sorry, what page? |
| 3   Q   Page 2 of 20. Bates No. DONZ 00019558, |
| 4   page 2 of 20. |
| 5   A   Yes. |
| 6   Q   If I can direct your attention to the |
| 7   second full paragraph, the last sentence, which says, |
| 8   quote, The communities operate under a more |
| 9   terrifying calculus: More than 1,400 cancer deaths |
| 10   due to oil contamination and near constant exposure |
| 11   to cancer causing oil hydrocarbons, resulting in |
| 12   damages of up to U.S. $27.3 billion, according to a |
| 13   neutral court appointed special master. |
| 14        Do you see that? |
| 15   A   Yes. |
| 16   Q   And did you understand from your |
| 17   conversation with Mr. Donziger that that so-called |
| 18   neutral court-appointed special master was Richard |
| 19   Cabrera? |
| 20   A   I'm sorry, I don't recall discussing this |
| 21   particular sentence or the topic in that sentence. |
| 22   Q   Do you recall any conversation with |
| 23   Mr. Donziger in and around this time about the |
| 24   neutral court-appointed special master being Richard |
| 25   Cabrera? |

| Page 125 |
|---|
| 1   A   Yes -- well, I remember -- I remember a |
| 2   number of discussions with Mr. Donziger where he |
| 3   talked about Cabrera as the court-appointed special |
| 4   master. |
| 5        I don't recall a specific discussion with |
| 6   Mr. Donziger where he talked about Cabrera as the |
| 7   court-appointed special master, in the context of |
| 8   this sentence. |
| 9   Q   Okay. And at any point in time, in and |
| 10   around -- |
| 11        THE SPECIAL MASTER: Hold on a second. |
| 12   Hold on a second. Mr. Blume, stop. |
| 13        I'm adding to the grounds for the |
| 14   overruling of the privilege objection a little while |
| 15   ago, the crime fraud ground. This is very similar, |
| 16   that is the portion that you just read from this |
| 17   document that was sent by Mr. Donziger, the cover of |
| 18   4017-A, is very similar to the document we looked at |
| 19   earlier as to which I said satisfied furtherance of |
| 20   the fraud prong of the crime fraud exception. |
| 21        So I now add crime fraud exception to the |
| 22   reasons for overruling the privilege objection. |
| 23        MR. BLUME: Thank you, Your Honor. |
| 24   Q   (BY MR. BLUME) If I could turn to tab 27, |
| 25   please. |

32 (Pages 122 - 125)

Page 126

1    (Exhibits 4018-A and 4018-B marked.)
2    Q    (BY MR. BLUME) I'm handing you two
3  documents, one Bates labeled WOODS-HDD-0213656
4  labeled Exhibit 4018-A, and WOODS-HDD-0213657 to 62,
5  labeled 4018-B.
6        A being an e-mail from Mr. Woods dated
7  1 March 2010 to Ericka Englert, copy Steven Donziger.
8  Subject, Road map memo.
9        And B being a memo from Steven Donziger
10  regarding litigation relating to Chevron
11  contamination in Ecuador.
12        Do you see those?
13   A    Yes.
14   Q    And were these e-mails and the attachment
15  sent to Ms. Englert, would it be the ordinary course
16  of business of the Brownstein firm to maintain these
17  e-mails and attachments in its files?
18   A    Yes.
19   Q    And was this in fact maintained in the
20  ordinary course of business at the Brownstein firm?
21   A    Yes.
22   Q    Do you recall reviewing this memo 4018-B
23  sent by Mr. Donziger about the litigations related to
24  the Chevron contamination in Ecuador?
25   A    Yes, I do remember reviewing this. As I

Page 127

1  sit here today, I don't recall much about it, but I
2  do recall reviewing it.
3    Q    And do you recall whether Mr. Donziger --
4  do you recall what use Mr. Donziger told you to make
5  of this memorandum?
6        MR. GOMEZ: Objection. Privilege.
7        THE SPECIAL MASTER: Hold on a second.
8        Overruled.  So far only the waiver.
9    A    Well, for one if not two purposes. Number
10  one, my recollection is that we were going to use
11  4018-B for our court filings.  And second, I have a
12  recollection that I appeared in court once in this
13  case.
14        I don't remember what it was for, but I
15  just -- I thought we appeared in front of Judge Kane.
16  And I can remember asking for information from
17  Mr. Donziger so I could get prepared for that
18  conference.
19        THE SPECIAL MASTER: Okay.  It's clear
20  from the very first page of 4018-B and the witness'
21  testimony as to the use that was supposed to be --
22  for which this 4018-B was to be put, that it was to
23  be used for purposes of court filings or court
24  appearances.  Therefore, it's furtherance of the
25  fraud to that extent, as well as the ground I stated

Page 128

1  before for overruling the privilege objection.
2    Q    (BY MR. BLUME) Do you recall whether or
3  not Mr. Donziger --
4        THE SPECIAL MASTER: Excuse me, I left
5  something out.  The reference on the first page of
6  that document, again, is to Mr. Cabrera and his
7  alleged work to reach the conclusions he reached.
8        Go on. I'm sorry, Mr. Blume.
9        MR. BLUME: Sure.
10   Q    (BY MR. BLUME) In and around March 1st,
11  2010 when Mr. Woods sent this document on behalf of
12  Mr. Donziger, do you recall Mr. Donziger ever telling
13  you separately that the Stratus firm ghostwrote
14  portions of the special master Cabrera's report as
15  referenced in page 1 of the memo?
16        MR. GOMEZ: Objection. Asked and
17  answered.
18        THE SPECIAL MASTER: It was. He's right.
19  Objection is sustained.
20        MR. BLUME: Tab 20 --
21        THE DEPONENT: You're saying on page 1 --
22        MR. BLUME: No, he sustained the
23  objection.
24        THE DEPONENT: Okay.
25        MR. BLUME: So you're fine.

Page 129

1        Tab 28, please.
2        (Exhibits 4019-A and 4019-B marked.)
3    Q    (BY MR. BLUME) I'll hand you what has
4  been marked as Exhibit 4019-A and 4019-B, which are
5  Donziger production 0005448 and 5449.
6        4019-A is an e-mail from the next day,
7  March 2nd, 2010, in which Ericka Englert writes to
8  Steven Donziger and Andrew Woods copying Michael Hoke
9  and attaching a fact outline for Chevron briefing.
10        Do you see that?
11   A    Yes.
12   Q    And do you recall -- do you recall this
13  e-mail or the attached outline for fact section of
14  brief in opposition to Chevron's 1782 petition?
15   A    I'm sorry, I would be surprised if I
16  didn't see this, but I don't have any recollection as
17  we sit here.
18   Q    Okay.  And were e-mails like this and
19  outlines for fact sections of brief like the one
20  attached in this Exhibit 4019-B, kept in the ordinary
21  course of Brownstein's business?
22   A    Yes.
23   Q    And was it the ordinary course of the
24  business at Brownstein to keep such documents?
25   A    Yes.

33 (Pages 126 - 129)

Page 130

1    Q   Directing your attention to 4019-B, the
2 outline for the fact section, section b talks about
3 rules governing ex parte contact, okay.
4        Do you see that?
5    A   2 small b?
6    Q   Yes.
7    A   Yes.
8    Q   Was that part of the information that you
9 were expecting to receive from Mr. Donziger?
10   A   Yes.
11   Q   Did you ever receive that information?
12   A   I don't believe so.
13   Q   Towards the bottom of Section 2F sub 3, it
14 says, Explain how the standard of cleanup info ended
15 up in Cabrera report.
16       Do you see that?
17   A   I'm sorry, I don't.
18   Q   2F sublet 3, very last sentence on the
19 first page?
20   A   Got it.
21   Q   Do you see that?
22   A   Yes.
23   Q   Was that explanation one that you expected
24 to receive from Mr. Donziger?
25   A   I'm sorry, I don't remember F3.

Page 131

1    Q   You don't remember that topic?
2    A   I just don't remember that topic.
3    Q   Okay. Do you recall at any point in time
4 during your representation from January to March
5 receiving an explanation from Mr. Donziger about how
6 the standard of cleanup information ended up in
7 Cabrera's report?
8    A   No, I just don't remember the topic.
9        MR. GOMEZ: Objection --
10   Q   (BY MR. BLUME) Okay. Do you recall --
11       THE SPECIAL MASTER: Over -- the objection
12 is overruled.
13   Q   (BY MR. BLUME) Did your conversation
14 with -- ultimately, with Mr. Shinder, shed some light
15 on that topic, as you recall?
16   A   The standard --
17       MR. GOMEZ: Objection. Asked and
18 answered.
19       MR. BLUME: No, I'm sorry. Is there an
20 objection?
21       THE SPECIAL MASTER: Let me hear the
22 answer first. The question -- the objection is
23 overruled on the waiver ground, for sure. It's a
24 form objection. Oh, I thought I heard a privilege
25 objection.

Page 132

1        MR. BLUME: The question is --
2        THE SPECIAL MASTER: It would be good
3 if -- I was about to say something. It would be good
4 if the objections preceded the answer as opposed to
5 following the answer or being uttered at the same
6 time as the answer. I'm not sure how to -- and I'm
7 laughing because I'm not sure how to accomplish that
8 and get us out of here today at a reasonable hour.
9        Okay.
10   Q   (BY MR. BLUME) On the question of how --
11       THE SPECIAL MASTER: So just ignore my
12 remark.
13       Go ahead.
14   Q   (BY MR. BLUME) On the question of how the
15 standard of cleanup info ended up in the Cabrera
16 report, did your meeting with Mr. Shinder eventually
17 shed some light as to how that standard ended up in
18 the report?
19   A   I don't recall talking -- I don't recall
20 talking to Shinder about the standard of cleanup. My
21 takeaway from Shinder was as referenced in previous
22 exhibits. It was more general.
23   Q   Okay. Let me turn to tab 29. And when
24 you say more general, more general in the sense of a
25 more general discussion as you mentioned of Stratus's

Page 133

1 role in -- or involvement in the Cabrera report.
2        Is that what you mean?
3    A   Yes.
4    Q   Okay.
5        MR. BLUME: Your Honor, we actually just
6 have a few more documents to get through. So I
7 appreciate your indulgence.
8        (Exhibits 4020-A and 4020-B marked.)
9    Q   (BY MR. BLUME) I'll hand you what's again
10 in two parts, 4020-A and 4020-B, the first of which
11 is an e-mail from Aaron Page to you, Ms. Englert and
12 Mr. Hoke, copying Laura Garr and Steven Donziger,
13 which attaches, purports to attach a memorandum on
14 our current thinking on the matter we have discussed.
15       Do you see that e-mail?
16   A   Yes.
17   Q   And it attaches a memorandum. Would it
18 be -- did Brownstein and your team keep an e-mail
19 like this and its memorandum in their ordinary course
20 of its business?
21   A   Yes.
22   Q   And would it be the ordinary course of the
23 Brownstein firm to maintain these in its client
24 files?
25   A   Yes.

34 (Pages 130 - 133)

1    Q    I think I asked you earlier, but let me
2  ask you if this somehow refreshes your recollection
3  as to who Laura Garr was or Aaron Marr Page?
4    A    Those names don't ring a bell with me.
5    Q    Let me direct your attention to the
6  subsection B of the exhibit, Bates labeled
7  DONZ 00054732, which is a three-page memorandum
8  addressed to you, Ericka Englert and Michael Hoke.
9        Do you see that?
10   A    I'm sorry, what am I looking at?
11   Q    It should be that right there.  Dated
12 March 9th, 2010.
13   A    Right.  And I'm sorry, did you direct me
14 to something --
15   Q    I actually direct your attention to it and
16 ask you if you recall receiving and reviewing this
17 memo on Denver section 1782 litigation strategy
18 thoughts?
19   A    I have a faint recollection of getting
20 4020-B.
21   Q    Okay.
22   A    Because I -- and what triggers it is that
23 first paragraph.  I remember a communication with
24 these folks after they were either in Ecuador or they
25 had significant communications with people in

1  Ecuador.  Because I know -- I know there was a time
2  where we were waiting that Mr. Donziger, I believe,
3  said he was in Ecuador gathering information, or
4  somebody was in Ecuador gathering information.
5    Q    Did Mr. Donziger or someone working with
6  Mr. Donziger tell you why they sent you this
7  litigation strategy thoughts memo?
8    A    Well, yes, because we had been --
9        MR. GOMEZ: Objection.  Privilege.
10       THE SPECIAL MASTER: Hold it, what?
11       MR. GOMEZ: Objection.  Privilege.
12       THE SPECIAL MASTER: Overruled.  And the
13 grounds for the objection are waiver as well as the
14 substance of what was conveyed by the Page e-mail.
15 It clearly meets the furtherance of the crime of the
16 fraud prong as well as the fourth prong of the crime
17 fraud exception.
18   Q    (BY MR. BLUME) The question was, did
19 Mr. Donziger or someone working with Mr. Donziger
20 tell you why they sent you this litigation strategy
21 thoughts memo?
22   A    I don't recall any specific discussion
23 about 4020-B, but they had repeatedly told us -- we
24 had repeatedly told them that we needed information
25 to permit us to make filings with the court and to

1  meet and confer with the Gibson attorneys.
2        And they kept telling us they were going
3  to give us the information, they were going to give
4  us the information.  I distinctly recall a point in
5  time where they said, Mr. Donziger said they were
6  going to Ecuador.  They were going to gather
7  information there and get back to us.
8        And I believe that 4020-B is a part of
9  that process, a product of that process.
10   Q    Let me direct your attention to page 2 of
11 that memo, the third full paragraph beginning, In
12 sum.
13       Do you see that?
14   A    Yes.
15   Q    If I could ask you just to read that to
16 yourself.
17   A    Okay.  I've read it.
18   Q    It begins, In sum, there are key points
19 regarding the Cabrera report as we now understand it:
20 And then it goes on to list --
21       THE SPECIAL MASTER: These, these are the
22 key points.
23       MR. BLUME: Thank you, Your Honor.
24   Q    (BY MR. BLUME) These are the key points
25 regarding the Cabrera report as we now understand it,

1  colon.
2        Number one right away says, or A says, It
3  was based on the evidence submitted at trial by both
4  parties, and, in fact, was based largely on Chevron's
5  evidence since they submitted the vast majority of
6  chemical sampling results.
7        Do you see that?
8    A    Yes.
9    Q    Is that consistent or inconsistent with
10 what you learned during your conversation on
11 March 19th with Mr. Shinder?
12   A    Well, let me answer it, I think it's
13 inconsistent.  Whatever Mr. Shinder told us was
14 sufficiently inconsistent with what we had previously
15 been told that I concluded we had an ethical
16 obligation to withdraw from the case.
17   Q    And this memorandum that you're holding,
18 Exhibit 201 --
19   A    4020-B.
20   Q    Sorry, sorry.  4020-B.  That's part and
21 parcel of the information to which you referred when
22 you said had previously been told; is that correct?
23   A    Correct.
24   Q    And again, this is -- the information that
25 you had previously been told, is it fair to say that

35 (Pages 134 - 137)

Page 138

1 virtually all of the substance of the information
2 that you had previously been told came directly from
3 Mr. Donziger or someone working with Mr. Donziger?
4    A    Yes.
5        MR. GOMEZ:  This is Mr. Gomez.  Could we
6 get a reading of the time, please?
7        THE SPECIAL MASTER:  Sure.
8 Mr. Videographer, can you please give us a reading of
9 the time?
10       THE VIDEOGRAPHER:  Yeah, we've been
11 3 hours 18 minutes on the record.  And that's
12 including when he wasn't here.
13       MR. BLUME:  Okay.  And so we minus
14 15 minutes from that, Your Honor.
15       THE VIDEOGRAPHER:  Three hours.
16       THE SPECIAL MASTER:  So 3 hours and
17 3 minutes have been used up.  You have 27 minutes to
18 go, Mr. Blume.
19       MR. BLUME:  I'm right on --
20       THE SPECIAL MASTER:  Use them wisely.
21       MR. BLUME:  I'm right on schedule, Your
22 Honor.
23    Q    (BY MR. BLUME)  Do you recall that you
24 actually made a -- or submitted a filing in this
25 case?

Page 139

1    A    I was afraid you were going to say that.
2    Q    Well, let's go to tab 32.
3    A    No, I actually don't remember, but I'm not
4 surprised.
5        (Exhibit 4021 marked.)
6    Q    (BY MR. BLUME)  I'll hand you what's
7 marked as Exhibit 4021, which is a file stamped or
8 docketed Motion for 30 Day Leave to File Brief in
9 Opposition to Chevron's 28 U.S.C. Section 1782
10 Petition in Case Number 1:10-CV-0047-JLK.
11       Do you see that?
12    A    Yes.
13    Q    And that is -- that is a motion filed on
14 behalf of the Lago Agrio plaintiffs by your firm
15 requesting for an extension to file an opposition to
16 Chevron's petition; is that correct?
17    A    Correct.
18    Q    And to prepare this motion, did you -- in
19 preparing this motion, did you rely, as you mentioned
20 earlier, on the facts and law that Mr. Donziger had
21 provided you, up until and including March 3rd, 2010
22 when this was filed?
23    A    Well, in part, but we would have done --
24 we would have certainly done legal analysis as to --
25 as to the basis for a 1782 petition.

Page 140

1        Frankly, I don't know that I had ever been
2 involved in a 1782 petition.  So it is, as I recall, it
3 was just a procedure that I was not familiar with.
4 And so I'm certain that we did some legal analysis as
5 to elements, et cetera.
6        I mean, certainly, we relied upon the
7 fact -- we relied upon Mr. Donziger for the facts.
8 We relied upon him to the extent there was any
9 discussion of Ecuadorian law.  But I would -- I would
10 doubt that we relied upon Mr. Donziger for any
11 discussion of relevant Tenth Circuit or District of
12 Colorado law.
13    Q    Okay.  Let's turn to tab 33.
14       (Exhibit 4022-A marked.)
15    Q    (BY MR. BLUME)  I'll hand you what is
16 marked as 4022-A, which is a cover e-mail dated
17 March 4th, 2010.  And the attachment to which, which
18 is labeled 4022-B.
19       (Exhibit 4022-B marked.)
20    Q    (BY MR. BLUME)  And ask you, this is --
21 the cover e-mail dated 4 March, 2010, Bates numbered
22 DONZ 00031039.  It's an e-mail from Mr. Donziger to
23 you, Mr. Hoke and Ms. Englert, subject memo on
24 Chevron matter.
25       Do you recognize -- do you remember

Page 141

1 receiving this e-mail?
2    A    Vaguely.  And what triggers -- the reason
3 I say that is that I recall his comment that he wants
4 to make sure I know what we are doing.  I just
5 remember, I remember that comment by him.
6    Q    And just for the record, to what are you
7 specifically referring?
8    A    That's in the first paragraph of 4022-A.
9    Q    What is it about that phrase that triggers
10 a memory in your mind?
11    A    Well, I just remember getting -- I just
12 remember getting a communication from Mr. Donziger
13 where he says he wanted to make sure that I was in
14 the loop.  And I don't -- I don't know why I remember
15 that.  I don't know, but I do.
16    Q    And this, you referred earlier to
17 Mr. Donziger's trip to Ecuador.
18       Does this refresh your recollection that
19 that trip to Ecuador took place sometime in the
20 beginning of March 2010?
21    A    Yes.
22    Q    Okay.  And was it the ordinary course of
23 business at the Brownstein firm to maintain e-mails
24 such as this and the attached memoranda?
25    A    Yes.

36 (Pages 138 - 141)

Page 142

1   Q   And were e-mails such as this and the
2   attached memoranda kept in the ordinary course of
3   business?
4   A   Yes.
5   Q   And was it your understanding that
6   Mr. Donziger was sending you this memo on March 4th
7   to provide you factual background and information to
8   help you oppose Chevron's 1782 petition?
9   A   Yes.
10  Q   Do you recall the date of your court
11  appearance before Judge Kane?
12  A   No.
13  Q   All right.  Let me -- tab 34, please.
14      (Exhibit 4023 marked.)
15  Q   (BY MR. BLUME)  I'm placing before you
16  what is marked as Exhibit 4023.  It's an e-mail from
17  you to Mr. Donziger, Mr. Hoke and Ms. Englert, dated
18  4 March 2010, subject, summary of points for this
19  morning's hearing.
20      Take -- ask you a moment to just take a
21  look at that and tell me if you recognize that as an
22  e-mail you sent on that date.
23      Do you recall sending that e-mail on
24  March 4th, 2010?
25  A   If I could just have one more minute.

Page 143

1   Q   Oh, I'm sorry.
2   A   I'm almost finished reading it.  My
3   apologies.  I do remember.
4   Q   And does this refresh your recollection
5   that you appeared before Judge Kane on
6   March 4th, 2010?
7   A   Yes.
8   Q   Directing your attention to the very last
9   bullet point where you note in all bold, quote, I
10  must rely upon Andrew and Steven to confirm the
11  accuracy of these statements.  If I make them and
12  then Judge Kane later concludes they are wrong, he
13  will be one pissed off federal judge.
14      Do you recall why you wrote that?
15      MR. GOMEZ:  Objection.  Work product.
16      THE SPECIAL MASTER:  Waived.  Overruled.
17  A   Well, as to the first sentence, I was
18  having to rely upon Andrew and Steven because we
19  didn't have an independent source for the facts I was
20  proposing to represent to Judge Kane.  And I made the
21  second comment because Judge Kane, like every other
22  judge, wants people to be honest with him.
23  Q   (BY MR. BLUME)  Was this e-mail kept in
24  the ordinary course of business of the Brownstein
25  firm?

Page 144

1   A   Yes.
2   Q   And was it the ordinary course of the
3   Brownstein firm to keep such an e-mail?
4   A   Yes.
5       MR. BLUME:  If I could have tabs 36, 37,
6   38 and 39, please.
7       (Exhibit 4024 marked.)
8   Q   (BY MR. BLUME)  I'm handing you what is
9   marked as Exhibit 4024, which is an e-mail Bates
10  labeled BHFS 276 on its cover.
11      (Exhibit 4025 marked.)
12  Q   (BY MR. BLUME)  2025 (sic) is a Bates
13  label DONZ 00054304.
14      (Exhibit 4026 marked.)
15  Q   (BY MR. BLUME)  20 -- I'm sorry, 4026 is
16  an e-mail chain Bates labeled DONZ 00054324.
17      (Exhibit 4027 marked.)
18  Q   (BY MR. BLUME)  Finally, Exhibit 4027 is
19  an e-mail Bates labeled DONZ 00054331.
20      MR. TREECE:  Did I get 4026?  Thanks.
21  Q   (BY MR. BLUME)  Just for purposes of
22  getting the documents in line, Mr. McDermott, on
23  4024, it's an e-mail chain dated 22 February 2010
24  from Ericka Englert to Mike Crimmins at Gibson Dunn.
25  Do you see that?

Page 145

1   A   The top e-mail on 4024?
2   Q   Yes.
3   A   Yes.
4   Q   And do you recognize these as being part
5   of the meet and confer process you referred to
6   earlier?
7   A   Yes.
8   Q   And was it the ordinary course of business
9   of the Brownstein firm to maintain e-mails such as
10  this in the ordinary course of its business?
11  A   Yes.
12  Q   And was it the ordinary course of its
13  business to maintain these e-mails?
14  A   Yes.
15  Q   I didn't ask that right.  My first
16  question was, was this e-mail maintained in the
17  ordinary course of business of Brownstein Hyatt?
18  A   Yes.
19  Q   And it was the ordinary course to keep
20  such documents?
21  A   Yes.
22  Q   2025 (sic), which is --
23  A   4025.
24  Q   I'm sorry.  4025, which is an e-mail
25  exchange from Ericka Englert to Steven Donziger dated

37 (Pages 142 - 145)

Page 146

1 the same day, February 22nd.
2       Do you see that?
3     A    Yes.
4     Q    And it seems that Ms. Englert is
5 forwarding to Mr. Donziger the e-mail from
6 Mr. Crimmins.
7       Do you see that?
8     A    Yes.
9     Q    And was this e-mail kept in the ordinary
10 course of Brownstein's business?
11    A    Yes.
12    Q    And was it the ordinary course of business
13 for the Brownstein firm to maintain these e-mails?
14    A    Yes.
15    Q    She references in the third sentence, As
16 soon as you get a chance, will you let me know the
17 background of these documents?
18       Was it consistent with the practice of
19 your team to check with Mr. Donziger on facts such as
20 this, background of documents and the like?
21    A    Yes.
22    Q    Direct your attention to 4026, which is
23 another e-mail of the same date from Ericka Englert
24 to Steven Donziger.
25       Do you see that?

Page 147

1     A    Yes.
2     Q    Was this an e-mail that was kept in the
3 ordinary course of the Brownstein firm's business?
4     A    Yes.
5     Q    Was it the ordinary course of business to
6 maintain such a document?
7     A    Yes.
8     Q    Ms. Englert notes -- references
9 Mr. Crimmins's discussion of Stratus's reports as
10 being similar to Mr. Cabrera's.  And in the third
11 sentence says, Do we have a good explanation as to
12 how this happened or is it our position that the
13 sections are not actually that similar or that
14 Stratus's report takes sections from Cabrera's
15 report?
16       Do you see that?
17    A    Yes.
18    Q    Do you know whether or not you or your
19 team ever got an answer to any of those questions?
20    A    I don't recall.  I don't recall.  I don't
21 recall getting an answer, but --
22    Q    Let me be more specific.  Do you recall
23 whether Mr. Donziger provided to you a good
24 explanation as to how this happened?  That is, why
25 the Stratus report is very similar to Cabrera's?

Page 148

1       MR. GOMEZ: Objection. Form.
2       THE SPECIAL MASTER: I think I agree. The
3 form is bad. Rephrase.
4     Q    (BY MR. BLUME)  Do you recall whether --
5       Do you see that Ms. Englert asked whether
6 there -- whether we have a good explanation as to how
7 this happened.
8       Do you understand that this happened,
9 being sections of the Stratus report is very similar
10 to Cabrera's?
11    A    Yes.
12    Q    And do you recall whether --
13       MR. GOMEZ: Objection. Form.
14       THE SPECIAL MASTER: What was the nature
15 of the objection?
16       MR. GOMEZ: Form.
17       THE SPECIAL MASTER: And I just said
18 overruled.
19    Q    (BY MR. BLUME)  And do you recall
20 specifically whether Mr. Donziger ever explained to
21 you or anyone on your team why sections of Stratus's
22 report are similar to Cabrera's?
23       MR. GOMEZ: Objection. Privilege.
24       THE SPECIAL MASTER: Overruled.
25    A    Yes, I do recall.

Page 149

1     Q    (BY MR. BLUME)  What do you recall?
2     A    Well, I recall two things. Number one, I
3 recall that when they got back from -- when
4 Mr. Donziger and maybe others got back from Ecuador,
5 they provided us an explanation in that memorandum
6 that we talked about a bit earlier.
7       And the second thing I recall is that when
8 Mr. Donziger talked about this issue, he talked about
9 it in a way that conveyed to us that it was proper
10 under Ecuadorian law.
11       And so whatever he told us was contrary to
12 what Mr. Shinder told us, which in part is why we
13 withdrew.
14       THE SPECIAL MASTER: I'm adding to the
15 overruling, the grounds for overruling the objection,
16 crime fraud exception. Communications from
17 Mr. Donziger to this witness that he just described
18 meet the furtherance of the fraud prong of the crime
19 fraud exception.
20    Q    (BY MR. BLUME)  Finally, 4027 before you
21 is an e-mail from Ericka Englert to Steven Donziger,
22 dated 22 February 2010, copying you and Mr. Hoke.
23       The first portion of which is a -- well,
24 do you recognize this e-mail?
25    A    I do not recall this -- I do not recall

38 (Pages 146 - 149)

1 4027.

2    Q    Okay. Being that it's an e-mail from
3 Ms. Englert, was an e-mail such as this kept in the
4 ordinary course of business at the Brownstein firm?

5    A    Assuming 4027 came from our files, yes.

6    Q    Well, the production came from
7 Mr. Donziger's file, DONZ 000 54321. Would it be --
8 would e-mails similar to this be kept in the ordinary
9 course of Brownstein's business, as it related to
10 client matters?

11    A    Yes. And I don't have any reason to
12 believe these aren't e-mails from and to our firm.

13    Q    Okay. And it was the ordinary course of
14 the Brownstein firm to keep such e-mails?

15    A    Yes.

16    Q    Do you recall --

17        THE SPECIAL MASTER: Five-minute warning,
18 Mr. Blume.

19        MR. BLUME: I'm sorry?

20        THE SPECIAL MASTER: Five-minute warning.

21        MR. BLUME: Perfect. Thank you, Your
22 Honor.

23    Q    (BY MR. BLUME) This e-mail suggests or
24 Mr. Donziger writes to Ms. Englert below and signs
25 her name. Was it -- were you surprised to learn when

1 you saw this e-mail that Mr. Donziger had drafted an
2 e-mail for Ericka to send during the meet and confer
3 process?

4    A    No, because my understanding is that
5 Mr. Donziger proposed this e-mail as one that Ericka
6 send (sic) to Mr. Crimmins, I believe, if that's the
7 name of your partner.

8        So, no, it didn't surprise me.

9    Q    Okay. Was that consistent with your
10 relationship that you would take instruction to this
11 detail from Mr. Donziger?

12    A    No. I mean, I typically would not -- I
13 don't know whether we asked him to do this or not.
14 But that's not my practice.

15    Q    In this instance was -- well, strike that.

16        (Exhibit 4028 marked.)

17    Q    (BY MR. BLUME) Let me place before you
18 what is marked as 4028. 4028 is a package of
19 attachments in a cover e-mail from Lawrence Treece,
20 the top part of which is Mr. Treece sending to
21 Mr. Beyer, to you, to Ms. Englert --

22        THE SPECIAL MASTER: We don't have the
23 document. What are you talking about?

24        MR. BLUME: My apologies, Your Honor.
25 tab 56. Sorry.

1    Q    (BY MR. BLUME) This is Mr. Treece on
2 22 June 2010. It's forwarding to you an e-mail that
3 he sent to Jay Horowitz. And this is production
4 BHFS 126 through BHFS 142.

5        Do you see that?

6    A    Yes.

7    Q    And is this a document that was prepared
8 in the ordinary course of the Brownstein firm's
9 business?

10    A    Yes.

11    Q    And was it the ordinary course of the
12 Brownstein firm to maintain this document?

13    A    Yes.

14    Q    And is the time frame of June 2010
15 consistent with what you'd mentioned earlier, around
16 the time when there was a dispute about your fees in
17 this matter?

18    A    Well, it was a dispute from Mr. Donziger's
19 perspective. We didn't consider it a dispute.

20    Q    And Mr. Treece suggests in his e-mail
21 below that he's being asked about the work product.

22        And do you understand this e-mail to
23 submit to Mr. Horowitz some of that work product?

24    A    Yes.

25        THE SPECIAL MASTER: Two-minute warning.

1        (Exhibit 4029 marked.)

2    Q    (BY MR. BLUME) And then let me place
3 before you what is marked as 4029. That's tab 57.
4 And that's a letter from the Brownstein firm to Jay
5 Horowitz, dated 29 June.

6        Do you see that?

7    A    Yes.

8    Q    And is this a record that was kept in the
9 ordinary course of business of the Brownstein firm?

10    A    Yes.

11    Q    And one that the Brownstein firm keeps in
12 its ordinary course?

13    A    Yes.

14    Q    And this is Mr. Treece discussing this fee
15 dispute that you mentioned?

16    A    Yes.

17    Q    Okay. And then one more, Mr. McDermott.

18        (Exhibit 4030 marked.)

19    Q    (BY MR. BLUME) 4030, and that's tab 53.
20 And this is an e-mail from you, sir, on
21 March 19th, 2010 to Michael Hoke, copy Ericka
22 Englert. And a series of e-mails below Bates labeled
23 BHFS 179 to 180.

24        Do you see these?

25    A    Yes.

Page 154

1   Q   Do you remember or recollect this e-mail?
2   A   Yes.
3   Q   What do you remember about it?
4   A   Well, I just remember that, you know,
5 Michael was corresponding --
6       THE SPECIAL MASTER: Are you going to make
7 it a business record path, because your time is going
8 to run.
9   Q   (BY MR. BLUME) Was this e-mail kept in
10 the ordinary course of the business of the Brownstein
11 firm?
12   A   Yes.
13   Q   And was it the ordinary course of business
14 to maintain such an e-mail record?
15   A   Yes.
16   Q   And if you could tell us briefly what do
17 you recall about the conversation you were having
18 with your team on March 19th, 2010?
19   A   Well, I just recall that there were
20 additional discussions with the Gibson Dunn lawyers
21 during the meet and confer process.
22   Q   Okay.
23       THE SPECIAL MASTER: Your time is up,
24 Mr. Blume.
25       MR. BLUME: That's all I have.

Page 155

1       THE SPECIAL MASTER: Mr. Blume, your time
2 is up.
3       MR. BLUME: That's all I have, Your Honor.
4       THE SPECIAL MASTER: Okay. Thank you,
5 everyone. Thank you, Mr. McDermott, thank you,
6 Mr. Gomez.
7       MR. GOMEZ: Excuse me, Mr. Gitter, this is
8 Mr. Gomez. May I ask three questions?
9       THE SPECIAL MASTER: Of course.
10          EXAMINATION
11 BY MR. GOMEZ:
12   Q   Good afternoon, Mr. McDermott.
13   A   Good afternoon.
14   Q   Mr. McDermott, is it fair to say that you
15 and your law firm received little or no information
16 regarding Ecuadorian law as it pertains to the
17 contact with Mr. Cabrera in the Lago Agrio
18 litigation?
19       MR. BLUME: Objection. Form.
20   A   The only thing that --
21       THE SPECIAL MASTER: Overruled. You can
22 answer it.
23       THE DEPONENT: I'm sorry, Your Honor.
24       THE SPECIAL MASTER: The question is
25 unclear. Received in any fashion, Mr. Gomez?

Page 156

1       MR. GOMEZ: Yes.
2   A   All that I recall receiving is what we
3 reviewed today. There were one or two items. There
4 was the provision of Ecuadorian law. I don't recall
5 what that dealt with specifically. And then I
6 believe there was the memo that Mr. Donziger sent
7 upon his return from Ecuador, where I thought he
8 generally described some Ecuadorian law principles or
9 said he was going to follow up.
10   Q   (BY MR. GOMEZ) Did you ever feel that you
11 received sufficient information, that that was
12 sufficient information for you to make an assessment
13 regarding Ecuadorian law as it pertained to Cabrera?
14       MR. BLUME: Objection. Form.
15   A   I never felt I had any information that
16 would permit me to make any judgments about
17 Ecuadorian law, as I recall.
18   Q   (BY MR. GOMEZ) Is it fair to say that you
19 received inconsistent information regarding Stratus's
20 contact with Cabrera?
21   A   Yes.
22   Q   And finally, is it fair to say that you
23 never had sufficient information either regarding the
24 Ecuadorian law or Stratus's contact to make your own
25 assessment whether the conduct in Ecuador was proper

Page 157

1 or not?
2       MR. BLUME: Objection. Form.
3       THE SPECIAL MASTER: Is there an
4 objection? Mr. Blume, what is the nature of your
5 objection?
6       MR. BLUME: Just the form of the question.
7       THE SPECIAL MASTER: Hold on a second.
8 Let's see. Hold on.
9       MR. BLUME: Compound, Your Honor.
10       THE SPECIAL MASTER: I'm looking at the
11 LiveNote. Yes, it's compound.
12       Rephrase.
13   Q   (BY MR. GOMEZ) Mr. McDermott, is it fair
14 to say that you never received sufficient information
15 regarding Ecuadorian law in order to make your own
16 assessment, your own independent assessment whether
17 the actions relating to Cabrera were proper?
18       MR. BLUME: Objection. Form.
19       THE SPECIAL MASTER: I'll allow it. I'll
20 allow it.
21   A   If I understand your question, it's do I
22 have -- did I ever get sufficient information about
23 Ecuadorian law to know whether there was misconduct
24 under Ecuadorian law regarding Stratus and Cabrera.
25   Q   (BY MR. GOMEZ) Yes.

40 (Pages 154 - 157)

Page 158

1    A    Is that the question?
2    Q    Yes.
3    A    Well, I think the answer is -- I mean, I
4  can't cite any Ecuadorian statute or case law as a
5  basis for saying it was right or wrong. You know --
6         MR. GOMEZ: Thank you, Mr. McDermott.
7         THE SPECIAL MASTER: Wait a minute. He's
8  in the middle of his answer, Mr. Gomez.
9         MR. GOMEZ: I'm sorry.
10   Q    (BY MR. GOMEZ) Please finish.
11   A    I can only say that based upon what was
12  then 28 years of experience, things appeared very
13  fishy to me. I don't know that I've -- I don't know
14  how many cases I've withdrawn from for ethical
15  reasons.
16       I can probably count them on two or three
17  fingers. So it's not a decision that I made lightly.
18  But I was deeply troubled.
19       THE SPECIAL MASTER: Thank you,
20  Mr. McDermott. Thank you, Mr. Gomez. The deposition
21  is now concluded.
22       THE VIDEOGRAPHER: We're off the record at
23  2:09.
24       (Proceedings concluded at 2:09 p.m.)
25       * * * * * * *

Page 159

1         ACKNOWLEDGMENT OF DEPONENT
2         I, JOHN McDERMOTT, do hereby certify
3  that I have read the foregoing transcript of my
4  testimony, and further certify that it is a true
5  and accurate record of my testimony (with the
6  exception of the corrections listed below):
7  Page   Line        Correction
8  ___|_____|_____|_____
9  ___|_____|_____|_____
10 ___|_____|_____|_____
11 ___|_____|_____|_____
12 ___|_____|_____|_____
13 ___|_____|_____|_____
14 ___|_____|_____|_____
15 ___|_____|_____|_____
16 ___|_____|_____|_____
17 ___|_____|_____|_____
18 ___|_____|_____|_____
19 ___|_____|_____|_____
20
21
         _____
         JOHN McDERMOTT
22
   SUBSCRIBED AND SWORN TO BEFORE ME
23 THIS _____ DAY OF _____, 20___.
24
   _____        _____
25 (NOTARY PUBLIC)     MY COMMISSION EXPIRES:

Page 160

1  STATE OF COLORADO)
2                    ) ss.  REPORTER'S CERTIFICATE
3  COUNTY OF DENVER )
4         I, Kelly A. Mackereth, do hereby certify
5  that I am a Registered Professional Reporter and
6  Notary Public within the State of Colorado; that
7  previous to the commencement of the examination, the
8  deponent was duly sworn to testify to the truth.
9         I further certify that this deposition was
10  taken in shorthand by me at the time and place herein
11  set forth, that it was thereafter reduced to
12  typewritten form, and that the foregoing constitutes
13  a true and correct transcript.
14        I further certify that I am not related to,
15  employed by, nor of counsel for any of the parties or
16  attorneys herein, nor otherwise interested in the
17  result of the within action.
18        In witness whereof, I have affixed my
19  signature this 22nd day of May, 2013.
20        My commission expires April 21, 2015.
21
22
          _____
          Kelly A. Mackereth, CRR, RPR, CLT
23        216 - 16th Street, Suite 600
          Denver, Colorado 80202
24
25

Page 161

1              I N D E X
2
   EXAMINATION                    PAGE
3
   MR. BLUME                       7
4  MR. GOMEZ                     155
5
   PRODUCTION REQUEST(S):
6
                  72
7
8         INDEX OF EXHIBITS
9
                        INITIAL
10 DESCRIPTION              REFERENCE
11
   Exhibit 4000  Brownstein Hyatt Farber    20
12         Schreck, LLP billing
13 Exhibit 4001  2/26/10 letter to Dozinger  24
           from McDermott
14
   Exhibit 4002  6/18/10 e-mail from Horowitz 27
15         to Treece
16 Exhibit 4003A  E-mail string between       34
           McDermott and Donziger
17
   Exhibit 4003B  Yaiguaje, et al. V. Chevron 34
18         Complaint to Stay
           Arbitration
19
   Exhibit 4004A  1/19/10 e-mail from Woods to 54
20         McDermott
21 Exhibit 4004B  Chevron 28U.S.C. 1782       54
           Petition
22
   Exhibit 4005  E-mail string between        61
23         McDermott and Donziger
24
25

41 (Pages 158 - 161)

Page 162

|  | INITIAL |  |
|---|---|---|
| DESCRIPTION | | REFERENCE |

Exhibit 4006  E-mail string re Motion for   65
Leave to File Brief in
Opposition

Exhibit 4007  E-mail string re Chevron v   68
Stratus:  Issues to discuss
with Mr. Bloom

Exhibit 4008  Handwritten notes   69

Exhibit 4009  3/21/10 e-mail from   73
McDermott to Donziger
Exhibit 4010  Handwritten notes dated   87
3/19/2010

Exhibit 4011  Handwritten notes dated   95
3/19/10
Exhibit 4012  2/4/10 e-mail from Donziger  107
to File

Exhibit 4013  Handwritten notes dated   108
2/24/10
Exhibit 4014  E-mail string re Nueva   112
Prueba

Exhibit 4015  2/22/10 e-mail from Donziger  112
to Englert, McDermott, and
Hoke

Exhibit 4016  2/26/10 Memorandum to   115
Donziger from Hoke
Exhibit 4017A  2/20/10 e-mail from Donziger  121
to Englert, McDermott and
Hoke
Exhibit 4017B  Donziger, Garr & Page   121
article titled Rainforest
Chernobyl Revisited

---

Page 163

|  | INITIAL |  |
|---|---|---|
| DESCRIPTION | | REFERENCE |

Exhibit 4018A  3/1/10 e-mail from Woods to  126
Englert
Exhibit 4018B  Donziger memo re Chevron  126
contamination in Ecuador

Exhibit 4019A  3/2/10 e-mail from Englert  129
to Donziger and Woods
Exhibit 4019B  Outline for Fact Section of  129
Brief in Opposition to
Chevron's 1782 Petition
Exhibit 4020A  3/9/10 e-mail from Page to  133
McDermott, Englert and Hoke

Exhibit 4020B  3/9/10 e-mail to McDermott,  133
Englert and Hoke from Page,
Donziger and Garr

Exhibit 4021  Motion for 30-Day Leave to  139
File Brief In Opposition to
Chevron's 28 U.S.C. 1782
Petition
Exhibit 4022A  3/4/10 e-mail from Donziger  140
to Englert, McDermott, and
Hoke
Exhibit 4022B  3/4/10 e-mail to McDermott,  140
Englert and Hoke from
Donziger
Exhibit 4023  3/4/10 e-mail from McDermott  142
to Donziger, Hoke, and
Englert
Exhibit 4024  E-mail string re Attached   144
letter re Chevron Petition

Exhibit 4025  E-mail string re Attached   144
letter re Chevron Petition

---

Page 164

|  | INITIAL |  |
|---|---|---|
| DESCRIPTION | | REFERENCE |

Exhibit 4026  E-mail string re Attached   144
letter re Chevron Petition
Exhibit 4027  E-mail string re how does   144
the below sound to you...

Exhibit 4028  E-mail string re Chevron   151
Works Product
Exhibit 4029  6/29/10 letter to Horowitz   153
from Treece

Exhibit 4030  E-mail string re Chevron   153

PREVIOUSLY MARKED EXHIBITS

Exhibit 1633  5/24/10 e-mail from McDermott  80
to Donziger, w/attachment

42 (Pages 162 - 164)

[& - 28u.s.c.]                                    Page 1

| & |
| --- |

**&**  2:2,9 4:7,21 7:25
   31:8 67:20 68:24
   70:4,15,24 71:9
   81:24 84:17 115:8
   162:23

| 0 |
| --- |

**000**  150:7
**00019558**  124:3
**00031039**  140:22
**00053751**  68:5
**00053758**  112:5
**00054304**  144:13
**00054324**  144:16
**00054331**  144:19
**00054374**  25:8
   29:13
**0005448**  129:5
**00054732**  134:7
**00056917**  82:3
**00057507**  27:14
**0007981**  107:14
**0047**  139:10
**0213656**  126:3
**0213657**  126:4
**0216302**  54:15
**0216303**  54:16
**0691**  1:3
**07090**  2:16

| 1 |
| --- |

**1**  25:7 102:12,17
   126:7 128:15,21
**1,400**  124:9
**1/19/10**  161:19
**100**  67:24
**10166**  2:3
**107**  162:13
**108**  162:14
**10:05**  1:16 4:4
**11**  1:3 100:13 101:7
   114:20
**111**  2:15

**112**  162:16,17
**114910**  113:10
**115**  162:19
**11:55**  78:22,23
**121**  162:21,23
**126**  152:4 163:3,5
**129**  163:6,8
**12:08**  78:23 79:1
**13**  9:10
**133**  163:10,11
**139**  163:13
**13920.1.**  96:10
**14**  9:10 34:14 37:12
   53:6 107:10
**140**  163:16,18
**142**  152:4 163:20
**144**  163:22,23 164:3
   164:5
**15**  103:13 138:14
**151**  164:6
**153**  164:8,9
**155**  161:4
**16**  61:8,17 91:14
**1633**  80:18 81:5,13
   82:1,2 164:13
**16th**  160:23
**17**  5:18 61:5 100:13
   101:7 108:9 122:17
**1782**  31:23,23 32:13
   33:12 39:6,22 40:5
   48:13 53:16 55:13
   58:6,14 60:5 63:11
   69:7 70:11 73:20
   74:1 113:25 114:7
   118:3 129:14
   134:17 139:9,25
   140:2 142:8 161:21
   163:9,14
**179**  153:23
**18**  27:5 69:14 72:1
   103:13 108:13
   111:25 138:11
**180**  153:23
**1801**  1:16 2:9 4:7

**18th**  22:12 89:4
   103:14 106:20
**19**  34:10,18 103:17
   103:18 112:1
**1981**  8:24
**19th**  21:9 22:13
   35:10 55:8 89:2
   97:5,8 98:10,19
   99:20 106:1,5,20
   137:11 153:21
   154:18
**1:10**  139:10
**1st**  128:10

| 2 |
| --- |

**2**  20:12 61:22 65:14
   65:15 116:9 117:10
   123:24 124:3,4
   130:5 136:10
**2/20/10**  162:21
**2/22/10**  162:17
**2/24/10**  162:15
**2/26/10**  161:13
   162:19
**2/4/10**  162:13
**20**  11:4 115:3
   121:24 123:24
   124:3,4 128:20
   144:15 159:23
   161:11
**200**  2:2
**2004**  55:22
**201**  137:18
**2010**  9:17 10:4
   14:14 15:6,15 17:4
   17:5 19:7 20:4 21:9
   21:9 22:13 23:7
   24:2,18 25:10 27:5
   27:17 31:14 34:10
   34:14,19 35:10 38:2
   54:4 55:8 56:5,25
   57:16 61:5,8 65:13
   65:14,15 67:1 70:25
   71:6 73:6,11 77:9
   80:24 82:14 97:5,8

**98:10 99:20 106:20
   107:1,16,18,22
   108:18 109:1,23
   111:5 112:6 115:9
   119:5,7,25 121:24
   122:3 126:7 128:11
   129:7 134:12
   139:21 140:17,21
   141:20 142:18,24
   143:6 144:23
   149:22 152:2,14
   153:21 154:18
2013**  1:5,15 4:5
   160:19
**2015**  160:20
**2017**  123:23
**2025**  144:12 145:22
**20th**  122:3
**21**  1:5,15 73:6,11
   79:5 160:20
**216**  160:23
**21st**  4:5 78:8
**22**  34:5,5,6 37:12
   113:9 144:23
   149:22 152:2
**2200**  2:22
**22nd**  146:1 160:19
**23**  69:14
**24**  80:24 82:14
   109:1 161:13
**24th**  21:9 108:14,18
**25**  83:1,1 121:16
**26**  24:17 115:9
   119:4,25 121:8
**27**  68:7,20 69:5,9
   107:17 125:24
   138:17 161:14
**27.3**  124:12
**276**  144:10
**28**  31:23 70:4 129:1
   139:9 158:12
   163:14
**28th**  70:9 112:6
**28u.s.c.**  161:21

**29**  37:13,14 48:20
  52:24 53:3,12 54:2
  132:23 153:5
**2:09**  158:23,24
**2a**  42:12
**2f**  130:13,18
**2nd**  129:7

**3**

**3**  13:7 35:4 65:13
  130:13,18 138:11
  138:16,17
**3/1/10**  163:3
**3/19/10**  92:15
  162:12
**3/19/2010**  87:7 88:3
  96:3 162:10
**3/2/10**  163:6
**3/21/10**  162:8
**3/4/10**  163:16,18,20
**3/9/10**  163:10,11
**30**  37:14 52:24 53:3
  53:12 107:18 139:8
  163:13
**31**  37:14,15 52:24
  53:3,12 54:2
**32**  139:2
**327**  54:16
**33**  140:13
**34**  142:13 161:16,17
**36**  144:5
**37**  144:5
**38**  144:6
**39**  144:6
**3rd**  139:21

**4**

**4**  69:12,13 107:16
  140:21 142:18
**400**  79:2
**4000**  20:11,12,13
  21:2,6 22:10 69:24
  70:10,18 91:10 92:2
  96:14,19 98:10
  103:8 105:14 108:7
  108:13 109:8

161:11
**40004**  54:17
**4001**  24:13,14,16
  29:11 30:18 69:25
  161:13
**4002**  27:1,2,4 28:23
  161:14
**4003**  34:7,7,8,8,10
  34:11,17 35:6 37:12
  52:25
**4003a**  161:16
**4003b**  161:17
**4004**  54:14,15,17
**4004a**  161:19
**4004b**  161:21
**4005**  61:2,3,22
  161:22
**4006**  65:8,9 69:14
  162:3
**4007**  68:2,3 162:5
**4008**  69:14,15 71:15
  162:7
**4009**  73:3,5 74:9,19
  79:22 162:8
**4010**  87:3,4 90:8,15
  90:25 92:1,5 94:17
  162:10
**4011**  95:23,25 96:7
  96:24 102:7 103:2
  104:10,16 105:14
  105:15 112:4
  162:11
**4012**  107:11,13
  162:13
**4013**  108:10,22
  162:14
**4014**  112:2,4 162:16
**4015**  112:2 113:8
  162:17
**4016**  115:5,7 162:19
**4017**  121:17,17,19
  121:19,20,22
  123:20,25 124:1
  125:18

**4017a**  162:21
**4017b**  162:23
**4018**  126:1,1,4,5,22
  127:11,20,22
**4018a**  163:3
**4018b**  163:5
**4019**  129:2,2,4,4,6
  129:20 130:1
**4019a**  163:6
**4019b**  163:8
**4020**  133:8,8,10,10
  134:20 135:23
  136:8 137:19,20
**4020a**  163:10
**4020b**  163:11
**4021**  139:5,7 163:13
**4022**  140:14,16,18
  140:19 141:8
**4022a**  163:16
**4022b**  163:18
**4023**  142:14,16
  163:20
**4024**  144:7,9,23
  145:1 163:22
**4025**  144:11 145:23
  145:24 163:23
**4026**  144:14,15,20
  146:22 164:3
**4027**  144:17,18
  149:20 150:1,5
  164:5
**4028**  151:16,18,18
  164:6
**4029**  153:1,3 164:8
**4030**  153:18,19
  164:9
**41**  61:1
**410**  2:21
**42**  65:7
**4200**  1:17 2:10 4:8
**45**  68:1
**47**  6:2 24:11 32:24
**49**  109:17
**4:01**  68:20

**4th**  140:17 142:6,24
  143:6

**5**

**5**  24:25 29:12
**5/24/10**  164:13
**50**  86:9
**50,000**  83:2
**500**  14:5
**51**  71:13 110:1
**52**  95:22
**53**  153:19
**54**  161:19,21
**54321**  150:7
**54374**  29:13,17
**5449**  129:5
**55**  80:15,16 96:7
**56**  87:18 151:25
**56918**  82:4
**57**  153:3
**59**  54:14

**6**

**6**  24:25 29:12,18
  117:10
**6/18/10**  161:14
**6/29/10**  164:8
**600**  160:23
**61**  161:22
**62**  126:4
**65**  162:3
**68**  162:5
**69**  162:7

**7**

**7**  24:25,25,25,25
  25:7 27:1 29:12,13
  29:13,13,18,25,25
  55:22 161:3
**72**  161:6
**73**  162:8
**75**  14:6

**8**

**8**  2:16 24:13 56:2
  69:14 108:13

**80**  164:13
**80202**  160:23
**80202-4432**  2:22
**80211**  2:10
**87**  162:10

**9**

**9**  79:3,4
**95**  162:11
**99**  62:20
**9th**  134:12

**a**

**a.m.**  1:16 78:23
**aaron**  33:22 133:11
  134:3
**ability**  10:16,21
  47:10
**able**  41:3,11 43:8
**absolutely**  57:20
**abusive**  122:19
**academic**  122:4
**accept**  40:1,8 41:6
  41:22 42:3 49:22,24
  50:1
**accepted**  59:12
**access**  80:7,10 84:24
**accident**  80:14
**accommodate**  13:14
**accomplish**  132:7
**accuracy**  143:11
**accurate**  21:8 79:4
  81:23 82:6 103:22
  159:5
**accurately**  21:17
**accused**  93:20
**acknowledged**
  15:24 102:8
**acknowledgment**
  159:1
**acted**  36:8
**acting**  38:21
**action**  6:18 19:9
  39:6 47:9 60:6 67:7
  82:18 118:3 122:20
  160:17

**actions**  47:5 157:17
**activities**  72:24
**activity**  31:21
**actual**  18:15 49:12
  118:23
**add**  46:17,22 47:13
  63:24 79:20 99:24
  102:13,14 111:10
  111:15 125:21
**adding**  91:7 125:13
  149:14
**addition**  59:8
**additional**  13:10
  41:4 154:20
**address**  23:13 44:1
**addressed**  113:20
  134:8
**adjustment**  62:4
**admission**  8:19
**admitted**  8:14
**advance**  13:21
**advice**  48:23
**advise**  100:6
**advocate**  36:7
**affidavit**  66:4 74:20
  118:16,22
**affidavits**  111:22
**affixed**  160:18
**afraid**  139:1
**afternoon**  155:12,13
**ago**  11:3,4 16:3
  17:14 125:15
**agree**  148:2
**agreed**  51:5 83:14
**agreement**  5:19
**agria**  25:23 26:2
  30:16 36:18 38:22
  53:5 56:12
**agrio**  139:14 155:17
**ahead**  5:9 44:5
  47:18 53:22 56:20
  61:15 64:3 76:16,17
  76:18 132:13
**akostecka**  2:13

**al**  1:10 4:10 161:17
**albeit**  63:5
**allegations**  54:5
  56:6
**allege**  109:19
**alleged**  11:9 54:1
  75:20 117:14 128:7
**alleges**  116:12
**allison**  2:12 4:18
**allow**  157:19,20
**allowed**  39:20,21
**alternate**  117:13
**amiss**  85:17
**amount**  23:1
**ample**  44:6
**analysis**  46:6,8
  139:24 140:4
**andrew**  33:17 55:9
  129:8 143:10,18
**annexes**  100:13
  101:7
**answer**  6:18,22
  13:20 28:10 30:6
  33:23 36:2 40:16
  42:8,10,12 43:4,5
  47:22 49:13 50:15
  50:21,24 56:17,20
  57:5,7,15 59:14
  63:24 64:4 71:2
  79:22 82:12 101:23
  102:4 114:13,14,18
  131:22 132:4,5,6
  137:12 147:19,21
  155:22 158:3,8
**answered**  52:6
  128:17 131:18
**answering**  13:2
**answers**  13:1
**antecedent**  42:4
  46:13
**anticipate**  5:21
**anticipated**  24:7
  44:2 114:24
**anticipation**  22:2

**anybody**  23:11
  39:12
**anymore**  19:22
**anyway**  42:9
**apologies**  99:12
  143:3 151:24
**apologize**  120:21
**apparently**  85:21
**appeal**  40:12 41:25
  42:3,6 43:18,23
**appealed**  59:12
**appearance**  3:1
  142:11
**appearances**  2:1
  127:24
**appeared**  127:12,15
  143:5 158:12
**appearing**  5:16,17
**appears**  27:20 34:22
  48:16 87:14 89:1
  98:20
**application**  113:25
**applied**  43:17
**applies**  45:22 46:25
  59:8
**apply**  38:16 40:10
  43:11,16 45:18
**appointed**  37:6
  48:23 113:5 124:13
  124:18,24 125:3,7
**appointment**  42:11
**appreciate**  133:7
**approach**  60:19
**appropriate**  6:13
  18:10
**approval**  50:8 62:12
  103:25
**approve**  62:17,17
**approximately**  6:1
  14:5 16:25 88:24
**april**  160:20
**arbitration**  31:5,10
  31:12 34:13 35:1
  37:20 67:16 161:18

| | | | |
|---|---|---|---|
| **argument** 64:14 | 141:24 142:2 | **b** | 153:22 |
| 110:17 | 163:22,23 164:3 | **b** .34:6,7,8,11 37:12 | **began** 26:14 |
| **argumentative** 67:3 | **attaches** 133:13,17 | 52:25 54:15,17 | **beginning** 20:10 |
| **arguments** 64:7,19 | **attaching** 129:9 | 55:22 64:1 68:22 | 43:9 61:6 113:23 |
| 84:3,5 113:24 | **attachment** 34:6 | 117:18 121:17,19 | 136:11 141:20 |
| **arises** 5:25 | 55:19 81:1 126:14 | 121:20 123:23,25 | **begins** 55:24 136:18 |
| **arrange** 18:15 | 140:17 164:13 | 124:1 126:1,5,9,22 | **behalf** 4:22 29:3,19 |
| **arrangement** 20:17 | **attachments** 126:17 | 127:11,20,22 129:2 | 30:1 32:19 37:8,9 |
| **arranging** 111:22 | 151:19 | 129:4,20 130:1,2,5 | 38:21 128:11 |
| **article** 121:24 122:6 | **attempting** 20:23 | 133:8,10 134:6,20 | 139:14 |
| 123:7,16,24 162:23 | **attend** 5:4 80:5,11 | 135:23 136:8 | **beier** 59:11 |
| **articulate** 13:3 | **attention** 15:21 | 137:19,20 140:18 | **believe** 8:9 17:17 |
| **articulation** 45:16 | 26:25 27:11,13 | 140:19 | 18:19,25 21:11 |
| 46:22,23 | 29:10 32:6 34:4 | **back** 8:13 19:7 41:3 | 26:17,18,23 27:19 |
| **asked** 5:15 6:19 | 37:12 54:13 55:17 | 59:25 65:14 71:15 | 28:11 29:7 31:1,2 |
| 48:11 73:25 83:8,12 | 55:21 66:1 68:19 | 78:25 83:7 89:15 | 40:13 46:1 52:25 |
| 84:23 97:10 128:16 | 70:8 82:13 87:3 | 99:12 103:7 104:23 | 53:2 55:23 57:8,17 |
| 131:17 134:1 148:5 | 88:1 96:13 97:23 | 119:8 136:7 149:3,4 | 69:20 72:12 74:8 |
| 151:13 152:21 | 98:9 103:7,12 | **background** 8:4 | 78:7 79:6 97:9 |
| **asking** 8:17 19:6 | 108:12 109:25 | 34:1 35:11 56:11 | 101:13 102:25 |
| 26:15 41:24 42:2 | 116:9 117:17 | 122:17 142:7 | 103:4 118:25 |
| 59:5 66:3 92:22 | 123:23, 124:6 130:1 | 146:17,20 | 130:12 135:2 136:8 |
| 112:20 127:16 | 134:5,15 136:10 | **backtrack** 73:15 | 150:12 151:6 156:6 |
| **aspect** 39:9 123:9 | 143:8 146:22 | **bad** 119:14 123:10 | **believed** 53:10 |
| **asserting** 38:13,18 | **attorney** 5:23,23 6:6 | 148:3 | **bell** 45:22 48:4 |
| 38:19 | 6:11 8:4 11:6 12:12 | **bait** 75:12 | 134:4 |
| **assess** 43:8,10 47:20 | 16:7 38:25 40:9 | **balance** 77:12 | **belonging** 70:17 |
| **assessment** 156:12 | 47:12 57:4 58:24 | **bar** 8:10,12 | **beltman** 86:10 |
| 156:25 157:16,16 | 59:1,3 73:22,23 | **based** 6:11 38:20 | 89:23 90:3,4,9 |
| **assessments** 49:3 | **attorneys** 2:3,11,17 | 44:14 46:12 57:15 | **beltman's** 86:22 |
| **assign** 20:10 | 2:23 4:13 14:21 | 57:17 62:3,4 84:5 | **best** 21:7 48:18,20 |
| **assigned** 96:12 | 136:1 160:16 | 85:17,21 103:10 | 73:18 101:11 |
| **assistant** 3:4 16:7 | **audio** 99:9 104:21 | 137:3,4 158:11 | **better** 7:17,18 72:4 |
| **associate** 4:25 15:5 | **author** 92:24 | **bases** 44:13 | **beyer** 27:7 151:21 |
| 34:2 97:10 | **authority** 43:3 | **basically** 63:21 | **beyond** 69:3 |
| **associates** 18:24 | **authorized** 29:8 | **basis** 44:5 59:9 66:4 | **bhfs** 69:14 72:1 |
| 93:13 111:17 | **available** 41:1,5 | 139:25 158:5 | 84:15,17 87:18 96:7 |
| **assume** 11:12 13:20 | 48:21 | **bates** 25:8 27:14 | 109:16 110:1 |
| 30:6,10 44:11,11,19 | **avenue** 2:2 | 29:15 68:4 69:13 | 144:10 152:4,4 |
| 87:15 109:3,6 111:2 | **avoid** 12:6 38:15 | 72:1 82:3 87:18 | 153:23 |
| **assuming** 150:5 | 50:20 | 96:7 107:14 109:16 | **bhfs.com** 2:24 |
| **attach** 133:13 | **aware** 10:13 54:4 | 109:25 112:5 124:3 | **bilateral** 31:11 |
| **attached** 55:12 | 56:6 | 126:3 134:6 140:21 | **bill** 22:20,22 83:3 |
| 80:22 81:4,5,7,13 | **awful** 38:15 | 144:9,12,16,19 | **billed** 23:4 33:4 |
| 81:15,22 129:13,20 | | | |

[billing - care]                                                          Page 5

**billing** 161:12
**billion** 124:12
**bills** 21:22 62:2
**bit** 8:4 14:15 31:12
  35:1 68:23 85:15
  105:1 149:6
**block** 113:24
**bloom** 31:8 67:19
  68:21,24 69:6,10
  70:24 71:9 162:6
**blume** 2:11 4:17,17
  7:5,13,17,19,20
  20:7,14,22 21:5
  24:15,19 27:3 28:10
  34:9,16 37:11 38:5
  45:14 46:14,20
  49:18,21 50:4 51:16
  51:24 52:9,16,19,23
  54:3,18 55:6 56:23
  57:14,23 58:3,11
  59:14,22 60:14,18
  61:1,4,11,13,15,16
  64:3,23 65:7,10,17
  67:4,5,12 68:1,4,6
  69:16 71:3,16,21
  72:22 73:2,4 75:15
  76:16,18,22,24 77:2
  77:19,22,23 78:2,20
  79:2,7,9,11 80:16
  80:21 81:4,20,21
  87:5,8 88:16,17,18
  88:22,23 90:17,19
  94:2,4 95:24 96:1,5
  99:11,17,18 100:3
  101:4,17,23 102:11
  102:16 104:8,13,22
  105:3,5,6 107:12
  108:11 111:16,25
  112:3 115:1,3,6
  116:24 117:3,7,9
  118:14 119:15,18
  119:22 120:6,24
  121:1,4,5,15,18
  123:14,22 125:12
  125:23,24 126:2

128:2,8,9,10,20,22
128:25 129:3
131:10,13,19 132:1
132:10,14 133:5,9
135:18 136:23,24
138:13,18,19,21,23
139:6 140:15,20
142:15,143;23
144:5,8,12,15,18,21
148:4,19 149:1,20
150:18,19,21,23
151:17,24 152:1
153:2,19 154:9,24
154:25 155:1,3,19
156:14 157:2,4,6,9
157:18 161:3
**blume's** 5:15
**bold** 143:9
**bolded** 113:19
**bottom** 27:13,15
  55:22 61:16,21 66:3
  71:18 72:1 91:17,18
  97:24 102:12
  105:15 109:16
  130:13
**boulder** 23:23 80:3
  84:15 86:25 88:7,25
  107:17
**box** 20:8 23:13
**bracket** 117:19
**break** 13:10,13
  76:21,25 78:19,20
  85:10 88:16 105:4
**breaks** 13:8
**brief** 18:16 117:18
  118:3,11 129:14,19
  139:8 162:4 163:8
  163:14
**briefing** 44:2 129:9
**briefly** 11:20 154:16
**bring** 9:20 51:17
**broad** 43:11
**broadly** 16:19 43:16
**brook** 2:7

**brought** 47:9
**brownstein** 2:21
  4:21 6:10 7:25 9:2
  9:11,25 10:5 12:13
  14:21 15:5,25 16:11
  17:25 19:10,24 21:3
  21:18 22:1,5 25:5
  27:24 28:5 39:9
  42:19 62:2 65:1,4
  65:20,23 71:24
  72:13,17 73:19
  79:13,16 81:8,12,24
  84:17 96:11,16,23
  109:14 112:11,14
  113:12,16 114:18
  115:8,15,18 117:4
  117:22 122:9,12
  126:16,20 129:24
  133:18,23 141:23
  143:24 144:3 145:9
  145:17 146:13
  147:3 150:4,14
  152:8,12 153:4,9,11
  154:10 161:11
**brownstein's** 6:1,14
  29:2 68:14 129:21
  146:10 150:9
**bullet** 100:13 101:7
  102:12,16 116:11
  116:14 117:10
  118:15 143:9
**bunch** 41:15
**business** 28:16,20
  64:25 65:20 68:14
  72:14,17,22 79:12
  81:9 109:11,14
  112:11,14 113:13
  115:15,18 122:12
  126:16,20 129:21
  129:24 133:20
  141:23 142:3
  143:24 145:8,10,13
  145:17 146:10,12
  147:3,5 150:4,9
  152:9 153:9 154:7

154:10,13

**c**

**c** 2:18 4:2 7:23
  118:15
**cabrera** 36:21,24
  37:4,5,7,9,23 38:2
  48:17 49:2,8,12
  53:5,15 54:6 56:7
  56:14 57:11,19 90:6
  90:10 100:12,18
  101:6 109:18 110:8
  110:19,21 111:7,14
  116:13 117:15
  118:20 124:19,25
  125:3,6 128:6
  130:15 132:15
  133:1 136:19,25
  155:17 156:13,20
  157:17,24
**cabrera's** 128:14
  131:7 147:10,14,25
  148:10,22
**calculus** 124:9
**california** 1:16 2:9
  4:7 18:23
**call** 6:20 18:15
  19:13,19 26:2 89:8
  89:12 90:1 94:6,7,9
  95:10 96:4 97:5,7
  97:14,15,22 98:5,7
  98:16 99:19 101:15
  101:19 102:24
  103:1,5 104:9,16,17
  105:7,8,9 106:9
**called** 1:14 23:14
  25:22 98:7 124:17
**calling** 100:2
**camacho** 2:18
**cancer** 124:9,11
**capital** 26:1,1,2
**caps** 62:22 113:11
**caption** 4:9
**care** 21:12

[career - concluded]

career  11:16
carlos  21:10
case  4:9 5:3,5 6:3,21
  9:18 11:8 17:8,9
  19:18 22:20,21 31:4
  35:9 40:6 43:11
  48:7,9 57:9 59:13
  85:14 89:21 100:7
  108:7,16 109:2
  121:24 122:4
  127:13 137:16
  138:25 139:10
  158:4
cases  8:23 158:14
causative  47:9
caused  22:25 76:6
causing  124:11
cell  97:25 98:2,4,7
celli  39:14
certain  8:15,22 9:19
  16:6 25:16 32:2
  54:12 74:22 101:16
  118:25 119:1
  120:14 140:4
certainly  25:3 39:25
  45:21 49:13,25 50:1
  57:16 72:4 118:8
  123:12 139:24
  140:6
certainty  67:24
certificate  160:2
certified  1:18,19
certify  159:2,4
  160:4,9,14
cetera  49:3,3 118:21
  140:5
chain  61:5 66:3
  112:7 144:16,23
chairing  5:7
chance  41:20 61:10
  87:9 146:16
characterized  36:9
check  71:21 102:18
  146:19

chemical  137:6
chernobyl  162:24
chevron  1:7 4:9,18
  35:13 36:8 66:22
  68:21 75:5 110:8,21
  116:12 117:14
  121:24 126:10,24
  129:9 140:24
  161:17,21 162:5
  163:5,22,24 164:4,6
  164:9
chevron's  54:4
  55:13 56:6 58:6,14
  60:5 64:16 74:11
  75:20 109:19
  110:21 113:25
  114:7 122:19
  129:14 137:4 139:9
  139:16 142:8 163:9
  163:14
choice  41:14
choose  51:3
chosen  5:3
chronology  73:9
circuit  140:11
circulate  72:8
circumstance  98:1
circumstances
  11:11
citations  43:8
cite  158:4
citizens  24:12
civ  1:3
civil  112:8,21
claims  6:6
clarify  12:25
cleanup  130:14
  131:6 132:15,20
clear  11:21 21:20
  45:15,22 48:4 76:14
  96:9 100:10 101:5
  104:2 105:3 116:2
  123:7 127:19
clearly  135:15

client  5:23,24 6:6,7
  6:11,12 22:1,20
  38:20,25 40:9 57:4
  65:5,24 72:24 73:22
  79:17 95:2 96:11,17
  96:18 97:2 113:17
  133:23 150:10
client's  41:24 42:2
  43:8
clients  6:15,18 28:21
  30:24,25 31:4 32:20
  32:24 38:22 62:20
  62:25 110:20
clincher  75:24
closing  112:24
cloth  100:14 101:8
clt  160:22
clue  90:23
coast  31:4
code  112:8,21 113:4
collected  16:12
collection  14:1,10
  16:9,15 32:2
collectively  26:1
colon  137:1
colorado  1:17,20
  2:10 4:8 8:5 16:7
  19:9 23:23 32:10,13
  32:21 33:5 39:8,10
  48:14 49:10 53:16
  55:14 63:9 66:8
  67:7 73:20 82:18
  107:3,17 140:12
  160:1,6,23
come  33:13 41:3
  43:15 45:7 56:25
  82:6 120:19
comes  107:13
comfort  121:12
comfortable  26:20
  51:9,10 76:12
coming  24:6,8 87:18
commencement
  160:7

commencing  1:16
comment  38:14
  90:12 94:19 141:3,5
  143:21
commented  15:21
commenting  62:9
comments  38:16
commercial  11:13
commission  159:25
  160:20
committed  46:2
common  59:10
communication
  38:24 39:1 46:4,7,7
  46:18 49:6,14 53:20
  56:18 57:4 134:23
  141:12
communications
  58:2 73:22 110:19
  134:25 149:16
communities  124:8
companies  49:3
company  23:14
  27:25
compelling  84:5
complaining  62:9
complaint  34:12,12
  34:25 37:19 48:8,10
  161:18
comply  85:6
component  45:25
  122:20
components  36:18
  45:24
compound  157:9,11
concern  63:13
  106:14
concerned  18:18
  78:16 80:9 85:4
concerns  63:14
  100:6 104:1,4,8,14
  105:23 106:2
concluded  26:18
  76:8,12 77:4 85:18
  85:22 89:20 137:15

[concluded - crutcher]

158:21,24
concludes 143:12
conclusion 43:15
conclusions 128:7
conduct 33:12 47:8
  76:9 77:5 83:5
  156:25
conducted 10:11
  49:2
confer 74:10,17 75:8
  85:25 86:3,5 136:11
  145:5 151:2 154:21
conference 2:4,6,7
  45:4 69:6 70:10
  98:12,25 108:15,17
  116:22 127:18
confidences 5:24 6:7
  6:12
confidentiality
  74:22
confirm 5:2 143:10
conflict 24:6
conflicts 24:8
confused 77:17
  104:20 105:1
confusing 77:18
connection 10:11
consider 152:19
consideration 86:21
considered 9:21
  25:19 26:9,9
consistent 23:24
  25:4 28:2 38:1 53:4
  66:6,25 69:8 70:18
  70:19 84:7,21 85:9
  86:4 90:3 96:19
  119:4,12 137:9
  146:18 151:9
  152:15
constant 124:10
constitutes 160:12
consult 58:11,13
consulting 21:12
  23:15,19,23,25 24:4
  26:10 54:5 86:13

contact 30:24 31:1
  109:19 113:5
  116:13 117:14
  118:20 130:3
  155:17 156:20,24
contacted 19:8
  22:11
contacts 110:20
containing 116:17
contains 35:8 83:21
contamination
  48:22 124:10
  126:11,24 163:5
contemporaneously
  97:19
contents 94:9
context 56:24
  110:24 125:7
continued 3:1
contrary 44:12
  149:11
conversation 18:13
  18:17 22:23 56:10
  86:23 88:5 91:22,23
  94:5,22,23 95:5,9
  103:15,16,18,21
  104:5,15 105:25
  106:4 119:7 124:17
  124:22 131:13
  137:10 154:17
conversations 57:17
  60:4 72:19 91:22
  103:20 106:21
  122:25
conveyed 94:16
  135:14 149:9
conveying 66:20
copied 115:10
copies 20:17
copy 20:14 54:19
  55:9 65:12 71:18,22
  71:23,25 73:6 79:4
  81:19,23 82:6 126:7
  153:21

copying 27:6 72:4
  129:8 133:12
  149:22
coriat 3:5 4:4
corner 87:7 96:2,3
  109:2
corporation 1:7
  4:10
correct 8:1,2,25 9:1
  9:6,7 10:1,2,5,6,8
  12:13 13:24 14:22
  14:23 20:19 32:4,14
  32:22,23 45:19 51:1
  52:25 61:19 78:2
  81:20 84:18 86:25
  89:9 106:7,24
  117:22 137:22,23
  139:16,17 160:13
correction 159:7
corrections 159:6
correctly 53:17
corresponded 30:7
correspondence
  102:18
corresponding
  30:12 154:5
cost 116:17
costs 33:4,9
counsel 5:7 26:22
  59:2,5,17 72:7,8
  74:11 86:21 92:19
  100:11 101:6 117:4
  160:15
count 158:16
county 160:3
couple 10:16 15:17
  41:14 74:7 75:9
course 11:15 14:9
  16:8 19:1 28:15,20
  64:25 65:3,19,22
  68:14,16 72:14
  79:12,15 81:8,11
  84:9 87:19,22 96:22
  97:1 109:11,13
  112:11,13 113:13

113:15 115:15,17
  122:9,12 126:15,20
  129:21,23 133:19
  133:22 141:22
  142:13 143:24 144:2
  145:8,10,12,17,19
  146:10,12 147:3,5
  150:4,9,13 152:8,11
  153:9,12 154:10,13
  155:9
court 1:1 4:11,15
  5:18,18 37:6 40:21
  40:25 42:24 48:23
  49:12 60:23 66:20
  74:8 95:8 113:5
  114:19,22,25
  116:16 124:13,18
  124:24 125:3,7
  127:11,12,23,23
  135:25 142:10
court's 6:4,9,24 37:8
  47:10
cover 34:5 81:5,12
  81:22,23 122:7
  125:17 140:16,21
  144:10 151:19
crime 39:24 40:4,14
  41:7,21 42:5 43:22
  43:23 44:7,15 45:16
  45:18,23 46:1,17,25
  47:20 51:13,14
  53:15,15 56:19
  57:25 58:1 60:8,16
  63:24 74:6 99:24
  102:14 111:10,15
  125:15,20,21
  135:15,16 149:16
  149:18
criminal 11:8 95:2
crimmins 144:24
  146:6 151:6
crimmins's 147:9
err 160:22
crutcher 2:2,9 4:7

**curiously** 61:21
**current** 133:14
**cut** 71:19 72:1 75:11
**cv** 139:10

**d**

**d** 4:2 7:23 161:1
**damages** 48:24
  124:12
**daniel** 21:10
**date** 4:5 5:20 17:1
  68:9 87:6 88:2
  142:10,22 146:23
**dated** 24:17 27:5
  34:10,14,18 55:7
  65:12,14,15 68:7
  73:5 80:23 82:14
  96:2 107:15 109:1
  113:9 115:9 119:4
  119:24 121:23
  126:6 134:11
  140:16,21 142:17
  144:23 145:25
  149:22 153:5
  162:10,11,14
**day** 15:19 17:2
  129:6 139:8 146:1
  159:23 160:19
  163:13
**days** 10:16
**deadline** 41:19
**deadlines** 74:8
**deal** 38:17
**dealing** 75:5
**dealt** 156:5
**deaths** 124:9
**decent** 122:18
**decide** 86:18
**decided** 26:20 28:11
**decision** 73:12 79:24
  158:17
**deem** 84:5
**deep** 104:4
**deeply** 158:18

**defend** 32:9
**defendant** 11:8,10
**defendants** 1:11,15
  2:17 4:23 6:21,25
**defended** 11:15
**defense** 95:2
**defined** 32:15
**definition** 77:17
**delay** 12:17 43:12
  60:6 63:5 66:20
**delayed** 60:12
**delaying** 75:8
**deliberate** 95:12
**demanding** 83:6,6
**demonstrate** 47:3
**denied** 80:7,7,10
**denver** 1:17 2:10,22
  4:8 16:5 82:24
  134:17 160:3,23
**deponent** 2:23 36:2
  38:10 51:19 53:24
  58:22 72:3,15,20
  78:5,10 90:16,18
  91:11,15,19,25 92:6
  92:25 93:7,9,13
  101:11 102:2,5
  114:16 120:4,21
  128:21,24 155:23
  159:1 160:8
**depos** 60:13
**deposed** 10:24 11:9
**deposition** 1:5,14
  4:6 5:4 10:10 13:17
  13:21 15:12,23
  16:18 39:6 43:10,13
  59:11 158:20 160:9
**depositions** 11:14
  11:15,15
**derived** 57:3
**describe** 29:5 48:17
  94:4
**described** 36:17
  44:15 51:6 83:23
  149:17 156:8

**describing** 36:1
  101:18
**description** 161:10
  162:2 163:2 164:2
**despite** 55:24 83:25
  85:4
**detail** 27:11 36:17
  106:2 151:11
**detailing** 118:23
**determined** 46:18
**develop** 32:8 104:3
**developing** 104:1
**development** 75:23
**differ** 63:5 110:25
**differed** 63:10
**different** 29:15,17
**difficult** 12:3 19:5
**dint** 39:19,20
**direct** 26:25 27:11
  27:12 29:10 34:4
  37:11 42:12 54:13
  55:17,21 66:1 70:8
  87:2 88:1 96:13
  97:23 98:9 103:7,12
  108:12 109:25
  116:9 123:22 124:6
  134:5,13,15 136:10
  146:22
**directing** 32:6 68:19
  82:13 117:17 130:1
  143:8
**direction** 31:20
  32:19 86:2
**directly** 30:7,11
  47:10 53:11 138:2
**disagree** 93:22
**disagreed** 60:14,18
**disagreeing** 60:20
**disclosure** 47:11
**discomfort** 89:18
**disconnect** 104:23
**discovery** 31:25
  32:1 41:1,19
**discrepancy** 85:23

**discretion** 62:10,18
**discuss** 68:21 162:6
**discussed** 33:4 84:3
  98:23 133:14
**discussing** 124:20
  153:14
**discussion** 17:12
  18:20 29:2,4,6 37:3
  62:15 68:22 85:13
  86:24 89:18 94:10
  94:18 102:20
  109:21 110:13
  112:25 125:5
  132:25 135:22
  140:9,11 147:9
**discussions** 17:13
  26:14 36:5 37:10
  61:18 64:10 69:1,10
  70:21 75:6 94:12
  125:2 154:20
**disorganized** 66:21
**dispute** 47:6 152:16
  152:18,19 153:15
**distinctly** 80:13 82:7
  136:4
**district** 1:1,2 4:11
  4:11 10:12 34:14,25
  35:22 47:9 55:14
  140:11
**disturbing** 76:5
**docketed** 139:8
**doctor** 89:16
**document** 14:1 16:8
  18:4 20:9 21:1
  28:23 29:11,16 72:5
  82:5 91:4 92:22
  95:25 114:21
  115:21 125:17,18
  128:6,11 147:6
  151:23 152:7,12
**documenting**
  122:19
**documents** 13:22
  14:6,11,16,20 16:12
  16:15 18:1 19:4

20:8,20 37:19 81:7
84:1 116:11,17
117:12 118:10
126:3 129:24 133:6
144:22 145:20
146:17,20
doing 37:7 54:20,21
86:9 108:11 116:4
141:4
donz 25:8 27:14
29:13 68:5 82:3
112:5 124:3 134:7
140:22 144:13,16
144:19 150:7
donziger 1:10 4:10
5:3 16:21,25 19:18
19:20 21:13 22:6
23:5,9,11 26:15
30:22,23 32:21 33:3
33:8,14 34:1,2,11
34:18 35:7,15 36:5
36:16 37:23 38:1,21
38:25 39:6 47:5
48:5 49:7 53:4,9,18
53:25 55:9 56:11,21
57:17 58:2,4,13
60:4,5 61:6,7,17
62:8,19 63:2,10,19
64:1,5,22 65:11,14
65:16 66:2,7,10,18
67:5 68:10 69:6
70:22 71:6 73:6
74:1,3,11,16 78:5 79:5
80:4,23 82:3,11,15
82:16,21,25 83:12
83:16,17,18 84:9
85:11 86:6 95:19
96:4 97:5,7 98:1,6
98:13,16,17,22
99:20 100:5,17
101:2 102:7,15,23
102:24 103:1,5,17
103:21 104:9,15
105:8,22 106:12,23
107:3,5,15,22 108:3

108:16,19 109:4,22
110:14,17 111:5,13
111:18,20 112:7,20
113:1,3,8,10 114:5
114:22 115:10,25
116:8,21 117:19
118:1,12 120:11
121:6,23 122:2,6,15
122:25 123:8,14
124:17,23 125:2,6
125:17 126:7,9,23
127:3,4,17 128:3,12
128:12 129:5,8
130:9,24 131:5
133:12 135:2,5,6,19
135:19 136:5 138:3
138:3 139:20 140:7
140:10,22 141:12
142:6,17 145:25
146:5,19,24 147:23
148:20 149:4,8,17
149:21 150:24
151:1,5,11 156:6
161:16,23 162:9,13
162:17,20,21,23
163:5,7,12,16,19,20
164:13
donziger's 31:4 33:8
47:8 62:12,16 75:18
101:18 103:24,24
106:18 116:10
141:17 150:7
152:18
double 60:16
doubt 34:21 140:10
doug 86:10
dozinger 161:13
dr 49:1,12
draft 24:17,20,22,24
83:15 117:18
118:15 122:3
drafted 83:19 151:1
due 92:7 124:10
duly 5:11 160:8

dunn 2:2,9 4:7 75:4
85:25 144:24
154:20

e

e 4:2,2 7:23 14:24
17:2 20:20 24:16
27:5,10,15,15,19
28:13,14,16,19,24
34:5,10,18,24 35:6
48:6 55:7,7,13 61:4
61:7,17 62:16 64:15
64:24 65:4,10,13,15
65:19,23 66:1,19
68:6,9,13,17,20
69:2 73:5,11,14
74:3,4 78:8 79:5,11
79:16 80:22 81:5,7
81:12,22,23 83:5,11
105:17 107:15
112:5,9,10,15,18
113:8,10,12,16
117:20 121:22
122:7,8,13,15 126:6
126:14,17 129:6,13
129:18 133:11,15
133:18 135:14
140:16,21,22 141:1
141:23 142:1,16,22
142:23 143:23
144:3,9,16,19,23
145:1,9,13,16,24
146:5,9,13,23 147:2
149:21,24 150:2,3,8
150:12,14,23 151:1
151:2,5,19 152:2,20
152:22 153:20,22
154:1,9,14 161:1,14
161:16,19,22 162:3
162:5,8,13,16,17,21
163:3,6,10,11,16,18
163:20,22,23 164:3
164:5,6,9,13
earlier 12:10 25:17
26:8 64:2 67:1,12

74:12,19 84:8 89:5
93:1 104:3,16
125:19 134:1
139:20 141:16
145:6 149:6 152:15
early 123:5
east 31:4
ecuador 24:12 25:23
35:9 36:6,13,14
54:7 56:9 64:8
66:12,15 106:24
111:19,23 118:24
119:5 126:11,24
134:24 135:1,3,4
136:6 141:17,19
149:4 156:7,25
163:5
ecuadorian 6:2 9:18
25:19 35:12,21
48:25 74:21,23 85:6
85:6,14 95:20 102:9
110:20 112:8,21
113:4 140:9 149:10
155:16 156:4,8,13
156:17,24 157:15
157:23,24 158:4
efe 110:5
effect 75:11
efficient 116:1
effort 16:15 58:6
efforts 23:3 80:3
99:11 107:3 111:6
123:9
eh 110:5
ehe 110:1
eight 17:14
either 12:12 15:13
26:18 37:5 62:11
101:13 108:2
109:21 111:20
134:24 156:23
electronics 41:12
elements 48:12
140:5

emery 39:14
employed 160:15
ended 90:5 130:14
  131:6 132:15,17
engaged 28:17
  33:24
engagement 22:11
  22:25 24:11,17,20
  29:3,12 32:7 61:19
  61:23 63:3 86:24
engineer 49:1
englert 15:2,5,14,25
  16:11 22:15 61:6,8
  65:12,15 66:2 68:8
  68:9 69:22 70:9,17
  73:7 92:16 103:6,14
  108:2,15 109:5,22
  110:6,14 113:9
  115:10 117:20,21
  117:24 121:23
  126:7,15 129:7
  133:11 134:8
  140:23 142:17
  144:24 145:25
  146:4,23 147:8
  148:5 149:21 150:3
  150:24 151:21
  153:22 162:18,21
  163:4,6,10,12,16,18
  163:21
englert's 70:19
  98:12
entered 5:19 51:19
entries 91:17,21
  109:6
entry 70:3,9,18
  92:15,15 103:13
  108:13,14
environmental 49:1
  49:2 89:24
equities 66:22
equity 9:15,22 10:3
eric 31:8 67:19
  68:24 70:24 71:9

ericka 15:2,4,10,16
  61:6 65:12,15 66:2
  68:8,9 69:21 70:9
  70:17,19 89:18
  92:16 93:5 103:4,13
  108:15 109:5 110:6
  113:20 115:10
  116:7 117:21 126:7
  129:7 134:8 144:24
  145:25 146:23
  149:21 151:2,5
  153:21
ericka's 87:12,15
error 98:8
esq 2:4,5,7,11,12,18
  2:23 3:4
essay 122:4,16 123:2
established 118:20
estimate 13:16
  48:20
et 1:10 4:10 49:3,3
  118:21 140:5
  161:17
ethical 78:17 102:18
  137:15 158:14
europe 31:5
evaluation 89:25
  90:5
event 63:23 94:2
events 73:15
eventually 132:16
evidence 137:3,5
evidentiary 112:24
ewing 70:11,14,15
ex 130:3
examination 7:4
  155:10 160:7 161:2
examined 5:11
examining 72:8
example 28:14
  48:15,18 116:16
examples 41:14
exception 41:21
  43:22 44:7,15 45:23
  51:15 53:6 56:19

60:17 74:6 99:25
  102:14 125:20,21
  135:17 149:16,19
  159:6
exchange 145:25
excluding 83:20
exclusive 31:1 118:8
exclusively 33:8,14
  118:1
excuse 71:14 90:14
  93:15,15 102:13
  128:4 155:7
exec 100:14 101:8
exemption 39:24
  41:7
exercised 95:13
exhibit 20:10,11,12
  20:13 21:2,6 22:10
  24:13,14,16 27:1,2
  27:4 37:12 52:25
  54:14 61:2,3 65:8,9
  68:2,3 69:15,24
  70:10 71:12,15 73:3
  73:5 79:2 80:18
  81:5 82:10 87:4
  91:10 92:2 95:23
  96:7,14,19,24 98:10
  103:8 104:10,16
  107:11,13 108:7,10
  108:13,22,24 109:8
  112:4 115:5,7
  121:19 123:23
  126:4 129:4,20
  134:6 137:18 139:5
  139:7 140:14,19
  142:14,16 144:7,9
  144:11,14,17,18
  151:16 153:1,18
  161:11,13,14,16,17
  161:19,21,22 162:3
  162:5,7,8,10,11,13
  162:14,16,17,19,21
  162:23 163:3,5,6,8
  163:10,11,13,16,18
  163:20,22,23 164:3

164:5,6,8,9,13
exhibits 34:8 54:17
  112:2 121:17 126:1
  129:2 132:22 133:8
  161:8 164:11
expect 32:20 36:7
expected 130:23
expecting 130:9
expenses 107:17
experience 158:12
expert 37:6,6 85:6
experts 109:19
  110:21 113:5
expires 159:25
  160:20
explain 39:3 130:14
explained 123:1
  148:20
explanation 130:23
  131:5 147:11,24
  148:6 149:5
exposure 124:10
expressly 85:16
extension 139:15
extensions 75:9
extensive 37:3
extent 31:15 57:2
  59:2 73:22 110:18
  110:18 118:9
  127:25 140:8
extraordinarily
  41:2
extremely 49:22

                    f

f3 130:25
facing 74:7
fact 8:22 11:13 13:2
  22:5 29:16 30:23
  33:6,7 35:8 41:1,11
  53:10 56:13,24 78:8
  80:2 85:22 90:3
  93:4 95:18 96:10
  98:9 103:19 117:18
  118:11 126:19

129:9,13,19 130:2
137:4 140:7 163:8
**factors**  62:5,18
**facts**  53:3 118:2
120:12,12 121:6,7
123:15 139:20
140:7 143:19
146:19
**factual**  64:7,19 66:7
74:14 84:8 111:18
111:22 114:4 142:7
**failure**  6:25 78:11
**faint**  122:5 134:19
**faintest**  86:15 90:23
**faintly**  31:9
**fair**  17:4,5 23:2
57:23 58:3 72:12,16
81:20 95:16 108:5
109:6 111:16 119:2
119:11,18,22
137:25 155:14
156:18,22 157:13
**fairly**  21:16 50:6
**fajardo**  29:19,23
30:8
**familiar**  11:18 14:4
17:16 23:18 31:11
31:15 33:18 59:24
60:2 67:24 86:11,22
140:3
**far**  40:5 46:25 127:8
**farber**  2:21 4:21
7:25 81:24 84:17
115:8 161:11
**fashion**  155:25
**fault**  64:16
**fear**  41:7,17 42:5
**february**  14:14
24:17 25:10 61:5,8
61:18 107:16
108:14,18 109:1,23
111:5 113:9 115:9
119:4,25 121:8,24
122:3 144:23 146:1
149:22

**federal**  10:11
143:13
**fee**  63:21 153:14
**feedback**  104:21
**feel**  12:24 27:12
64:20 78:13 156:10
**fees**  30:20 33:4,9
152:16
**felt**  36:7 60:22
103:23 106:12,17
156:15
**figures**  116:17
**file**  34:13 66:12,12
66:18 107:15 114:7
139:7,8,15 150:7
162:4,13 163:14
**filed**  55:13 64:9
114:25 139:13,22
**files**  72:23 81:19,24
82:7,10 87:14,18,24
97:2 126:17 133:24
150:5
**filing**  66:15 74:8
138:24
**filings**  102:18
116:16 127:11,23
135:25
**final**  24:23 122:3
**finally**  144:18
149:20 156:22
**find**  44:6
**finding**  51:14 52:8
**fine**  7:7 21:4 45:1,6
52:18 76:23 120:3
128:25
**fingers**  158:17
**finish**  12:6 158:10
**finished**  61:14,15
143:2
**firm**  7:25 9:3,9,12
9:19 10:5 14:1 15:6
15:17 16:1,5,11
17:15 18:23 19:11
19:17,25 21:3 22:1
22:6 23:3,8,11,23

24:3,10,21 25:5,10
25:18 26:9 27:24
28:5 29:6 31:22
33:3,5,8 39:9,14,15
58:5 62:4,9 65:1,4
65:20,23 71:9,24
72:13,18 73:19
79:13,16 81:8,12
83:5 87:20,23 88:5
89:7 90:2 96:11
97:1 109:11,14
112:14 113:12,16
115:15,18 117:4,22
122:9,12 126:16,20
128:13 133:23
139:14 141:23
143:25 144:3 145:9
146:13 150:4,12,14
152:12 153:4,9,11
154:11 155:15
**firm's**  28:16 30:20
66:6 112:11 147:3
152:8
**firms**  10:1 19:15
20:2
**first**  5:11 7:11,21
9:17 17:5 19:8 21:1
22:11 27:13,22
33:24 35:3,14,15
39:3,4 40:24 45:25
46:16 61:17,22
65:18 66:2 68:7,7
70:3 77:15 81:6,18
83:24 87:9 92:15
94:9 101:3,3 104:17
106:8 121:18
122:16 127:20
128:5 130:19
131:22 133:10
134:23 141:8
143:17 145:15
149:23
**fish**  75:11
**fishy**  158:13

**five**  9:4,22 99:1,9
150:17,20
**florida**  107:16
**focus**  37:9 48:11
64:18 75:19
**focused**  48:3
**folks**  51:13 64:8
74:11 134:24
**follow**  156:9
**following**  43:20
132:5
**follows**  5:12
**foregoing**  159:3
160:12
**foreign**  95:8
**forget**  7:8
**forgot**  75:14
**form**  21:17,25 25:4
52:18 71:1 88:8,11
88:12,15,20,21 92:8
93:17 119:14 120:1
120:3,15 123:3
131:24 148:1,3,13
148:16 155:19
156:14 157:2,6,18
160:12
**formally**  8:16
**former**  6:1,14,18
18:2
**formula**  46:22
**forth**  48:8,9 53:3,11
119:24 120:13
121:7 123:16
160:11
**forums**  36:12
**forward**  43:13
44:20,21,23 47:14
60:13 105:18
**forwarding**  68:8
146:5 152:2
**found**  48:13 49:5,11
53:20 116:18
**four**  83:21
**fourth**  91:17 135:16

frame  15:6 16:19
  19:7 152:14
frankly  140:1
fraud  39:24 40:4,14
  41:7,21 42:5 43:22
  43:24 44:7,15 45:16
  45:18,23 46:2,5,17
  46:25 47:20 48:12
  49:9,10 51:13,15
  53:15,15,15,16
  56:19 57:25 58:1
  60:9,16 63:24 74:6
  95:8 99:24 102:14
  111:11,15 125:15
  125:20,20,21
  127:25 135:16,17
  149:16,18,19
fraudulent  49:5
free  27:12 108:22
  121:21
friday  42:20
friend  19:14
front  20:7 29:11
  30:18 48:5 63:9
  74:15,16,25 91:5,11
  127:15
full  114:3 124:7
  136:11
further  33:4 159:4
  160:9,14
furtherance  46:5,18
  47:21 48:4 49:9,15
  53:21 125:19
  127:24 135:15
  149:18
furthermore  42:14
  42:19
future  44:2

**g**

g  4:2 70:10,14
gain  77:8,11
garr  33:20 133:12
  134:3 162:23
  163:12

gather  136:6
gathering  80:2
  135:3,4
general  16:7 35:14
  35:17 55:20 58:4
  132:22,24,24,25
generally  23:20 29:5
  29:6 35:25 38:3
  53:8 94:16 95:11
  156:8
gentleman  29:19
  33:17 36:20 55:8
  59:23 84:13 86:10
gentleman's  17:17
geologist  49:1
gerardo  2:17 4:23
getting  19:8 29:7
  55:11 60:21 64:20
  64:21 74:14 81:1
  94:21 134:19
  141:11,12 144:22
  147:21
ghostwriting  56:7
ghostwritten  54:6
  56:13 57:18
ghostwrote  57:11
  128:13
gibson  2:2,9 4:6
  75:4 85:25 136:1
  144:24 154:20
gibsondunn.com
  2:5,6,8,12,13
gitter  3:2 4:24 40:11
  41:23 44:16 47:15
  49:20 59:2 93:15
  155:7
give  10:17,21 11:23
  17:1 18:7 41:14,15
  43:5,14 54:19 61:9
  80:19 83:6 98:2
  136:3,3 138:8
given  39:21 43:1
  83:1 86:1,6
giving  15:23

go  5:9 7:10 8:3
  11:20 16:4,5 29:7
  40:22 41:7 42:5
  43:13 44:4,7,21,23
  46:24 47:10,14,18
  50:11 53:22 56:20
  58:5 60:13 61:14
  64:3 66:17 69:4
  71:14 76:16,17,18
  123:5 128:8 132:13
  138:18 139:2
goes  33:2 38:17,24
  49:4 109:18 114:3
  136:20
going  8:13 31:13
  35:18,20,22 36:11
  38:14,16 40:15 42:8
  43:17 44:14,19,24
  45:2 46:12 49:16
  51:5 54:18 64:18
  72:11 74:14 75:3
  76:19,20 77:15,16
  78:21 88:15,19
  93:10 99:7 116:3,4
  116:24 127:10
  136:2,3,6,6 139:1
  154:6,7 156:9
gomez  2:15,18 4:22
  4:22 5:2,5 12:15
  17:9 20:16,19,25
  21:4 24:15 28:8
  34:9,15 36:25 38:6
  38:7,12,19 39:24
  40:11,17 41:17,23
  42:15,17 43:2,25
  44:16 45:1,5,11,13
  47:15,18,19,25
  49:17,20 50:9,10
  51:8,10 52:20,21,22
  53:13 54:21 55:3,5
  56:15 57:2,21 58:7
  58:18,24 59:1,6
  60:7 61:4 63:15,16
  65:10 67:9 71:1
  72:9 73:21 80:22

87:5 88:8,11,13
  92:7,10 93:15,16
  96:1 99:2,3,6,21
  100:20,22,23
  101:20 104:7,11,18
  111:8 114:9 118:5
  120:1,15 123:3,18
  127:6 128:16 131:9
  131:17 135:9,11
  138:5,5 143:15
  148:1,13,16,23
  155:6,7,8,11,25
  156:1,10,18 157:13
  157:25 158:6,8,9,10
  158:20 161:4
gomezllc.com  2:19
good  35:8 46:9 71:4
  97:20 119:18 132:2
  132:3 147:11,23
  148:6 155:12,13
googling  123:8
governing  130:3
graduate  8:24
great  13:15 38:16
  50:13 55:1 99:17
  123:4
greg  70:4,14
ground  11:19 42:4,4
  42:6 45:8,8 46:1,13
  46:16 49:24 125:15
  127:25 131:23
grounds  39:12,19
  40:1 42:21 46:11
  63:17 125:13
  135:13 149:15
group  26:7
grousing  83:5
guess  46:9 57:8
  79:23 97:11,21
  120:16 121:9
guesstimate  16:2
guilty  95:2

| h | | | |
|---|---|---|---|

**h**

**h** 14:24
**hac** 8:18
**half** 103:2
**halfway** 94:20
**hand** 20:14 24:12
  73:4 87:7 96:2,3
  109:2 129:3 133:9
  139:6 140:15
**handed** 20:11
**handing** 126:2
  144:8
**handling** 122:20
**handwriting** 69:18
  69:19 87:10 96:4,6
  96:8 108:24
**handwritten** 70:3
  70:16 72:12 87:6
  92:2 96:2,20 97:4
  162:7,10,11,14
**happen** 80:12
**happened** 10:15
  26:17 28:3,4 35:9
  97:17,21 147:12,24
  148:7,8
**happening** 36:12
  105:10
**happens** 71:25
**hard** 12:2 40:3,23
**hdd** 54:15,16 107:14
  126:3,4
**head** 11:24 76:11
**heading** 116:10
**health** 48:21
**hear** 12:16 56:17
  63:24 64:4 99:6,23
  111:10 131:21
**heard** 47:15,17 74:5
  90:22 119:6 131:24
**hearing** 7:15 142:19
**held** 4:6
**hello** 98:24
**help** 70:2,16 92:3,4
  92:23,23 142:8

**helps** 47:3
**henrick** 2:4
**hflit.com** 27:6
**hide** 49:11
**hired** 31:22
**history** 35:8 48:7,9
**hoke** 14:24 15:13,18
  16:10,14 22:15
  65:12 68:7 73:7
  91:24 94:6,10,12,14
  94:18,23 95:10,11
  98:2,13 103:6 108:2
  108:14 109:10,21
  110:14 113:9
  115:11 117:20,21
  117:23 121:23
  129:8 133:12 134:8
  140:23 142:17
  149:22 153:21
  162:18,20,22
  163:10,12,17,18,20
**hoke's** 68:19 69:20
  87:13 93:1,2,3 96:8
  109:7
**hold** 80:25 88:13
  92:10 119:13 120:2
  120:18 125:11,12
  127:7 135:10 157:7
  157:8
**holding** 137:17
**holme** 9:5,8
**hon** 3:2
**honest** 10:17,21
  143:22
**honestly** 107:7
**honor** 4:17,19 5:14
  7:17 20:7 38:11
  44:9 45:14,15 46:20
  47:2 50:11,20 51:7
  51:20,25 52:4 53:24
  59:15 61:13 71:21
  72:3,20 73:2 76:16
  77:1 78:10 80:16
  90:16,18,19 91:12
  91:15,25 92:6,11,14

  92:25 99:12 101:11
  102:2 104:22,24
  114:17 119:19
  125:23 133:5
  136:23 138:14,22
  150:22 151:24
  155:3,23 157:9
**honor's** 45:17 52:9
**hope** 38:15 97:9
**hoping** 18:6
**horowitz** 27:17
  82:24 83:4,8,17
  152:3,23 153:5
  161:14 164:8
**horse** 64:18
**host** 18:9
**hour** 132:8
**hours** 39:22 76:20
  138:11,15,16
**hugo** 2:17 4:23
  38:22
**human** 48:21
**hyatt** 2:21 4:21 7:25
  81:24 84:17 115:8
  145:17 161:11
**hydrocarbons**
  124:11
**hypothetical** 119:20

**i**

**idea** 30:14 49:10
**identical** 29:15
**identified** 20:8
  34:17
**identify** 4:13 20:9
  22:5 26:6 34:6 41:9
  70:16 92:20,21
  93:23
**ignore** 132:11
**imagine** 11:19 90:21
**immediately** 85:10
  103:4
**impact** 48:21 74:25
**impede** 10:16

**implement** 32:9
**impress** 66:18
**impression** 47:12
**improper** 116:13
  117:14
**improperly** 36:8
  54:5 56:13 57:18
**inability** 86:5
**inappropriate** 18:18
  102:9
**include** 48:11
**including** 30:16
  38:22 48:10 138:12
  139:21
**income** 9:14,20 10:3
**inconsistent** 53:11
  54:1 76:9 77:5
  85:12 95:18 106:22
  119:6 137:9,13,14
  156:19
**incurred** 62:3
**independent** 6:16
  6:24 48:16,19,20
  143:19 157:16
**independently** 7:1
**index** 161:8
**indicate** 20:24 91:21
**indicated** 19:17 77:2
  111:21
**indicates** 13:7
  108:15
**individual** 6:2 35:12
  95:12
**individuals** 25:11,15
  31:22 32:24
**indulge** 11:20
**indulgence** 133:7
**info** 110:9 130:14
  132:15
**information** 6:20
  32:2 33:13 34:1,1
  35:11 47:4,7 60:22
  64:11,11,20,21 66:7
  75:2,12 76:6 78:12
  78:15 80:8 82:8

84:2 86:2,6 94:21
106:22 111:19
116:20 118:13
119:3,11,16,23
120:8 127:16 130:8
130:11 131:6 135:3
135:4,24 136:3,4,7
137:21,24 138:1
142:7 155:15
156:11,12,15,19,23
157:14,22
**informed** 32:20
**inhibit** 10:20
**initial** 104:14 105:7
161:9 162:1 163:1
164:1
**initials** 110:1,4
**inquiry** 5:21
**instance** 41:17
44:12,13 151:15
**instruct** 40:16 42:9
42:10 50:15,20 51:3
**instructed** 43:4
50:24
**instruction** 18:3
50:25 151:10
**instructions** 18:7,8
**integral** 50:2
**intend** 6:15
**intention** 50:18
**interest** 59:10
**interested** 71:20
160:16
**interesting** 29:14
**interests** 6:14,16
**interject** 92:11
**international** 67:15
**interpose** 6:15
**interposing** 6:11
**interpret** 6:4,9
123:20
**interpreting** 98:5
**interrupt** 12:2 44:24
116:25

**interspersed** 22:16
**interviews** 84:16,21
**introduction** 83:21
**investment** 31:12
**invoice** 21:25 22:5
23:4 69:5,24 96:18
103:8 108:7
**involved** 9:17 11:14
17:7,8 19:8,17
31:18 93:19 140:2
**involvement** 67:15
133:1
**involving** 35:12
**issue** 63:5 79:23
102:17 149:8
**issued** 5:18
**issues** 5:19 18:9,19
47:6 68:21 74:18
102:25 103:5
108:16 114:4 162:6
**items** 156:3

**j**

**january** 9:17 10:4
14:13 15:6 19:7
20:4 21:9 22:12
23:3,7 24:2 31:13
34:10,14,19 35:10
38:2 54:3 55:8 56:5
57:16 68:7,20 69:5
69:9 70:4,9,25 71:6
107:17,22 112:6
131:4
**javier** 2:17 4:23
38:23
**jay** 27:16 82:24
152:3 153:4
**jayhorowitz** 27:6
**jbm's** 97:24
**jeff** 84:13 88:6
105:18
**jeffrey** 59:25
**jersey** 2:16
**jgomez** 2:19

**jlk** 139:10
**job** 72:4 122:18
**joel** 3:5 4:4
**john** 1:5,14 4:12
5:10 7:23 18:23
34:11 98:13 117:4,5
159:2,21
**join** 9:11
**joined** 9:14 116:22
**jones** 118:16,17
**judge** 42:19 43:24
48:13 49:5,11 63:9
64:9,14,17,17 74:15
74:25 75:19 121:13
127:15 142:11
143:5,12,13,20,21
143:22
**judgments** 156:16
**julio** 2:18 4:22 17:9
**june** 27:5,17 152:2
152:14 153:5
**junior** 15:9
**jurisdiction** 40:21
**justin** 3:4 4:25

**k**

**k** 14:24
**kane** 63:9 64:9,15
64:17 74:16,25
75:19 121:13
127:15 142:11
143:5,12,20,21
**kaplan** 42:19 43:24
48:13 49:5,11
**keep** 30:18 32:20
65:4,23 68:16 72:23
79:16 81:12 96:23
109:14 112:14
113:16 115:18
122:12 129:24
133:18 144:3
145:19 150:14
**keeps** 153:11
**keker** 18:22,23

**kelly** 1:17 4:15
160:4,22
**kept** 64:10,25 65:19
68:13 72:13 75:3,7
75:12 79:12 81:8,24
109:11 112:10
113:12 115:14
122:8 129:20 136:2
142:2 143:23 146:9
147:2 150:3,8 153:8
154:9
**key** 136:18,22,24
**kind** 19:21,22 22:16
47:13 56:1 76:11
83:21
**knew** 23:11 115:25
116:1
**know** 5:3 16:5 18:10
20:2 22:23 23:18
24:22 25:2,12 26:7
29:23 30:4 31:2
33:17 36:6 37:3
40:21,25 41:4,8,20
45:23 46:17 48:12
50:1 52:21 66:14
69:21 70:21 71:25
75:10 83:1 86:10,12
87:16 90:7,20 91:3
92:19 93:23,25
94:10,11,12 96:17
100:25 105:18
107:4,5,6 108:1
116:3 121:9 123:9
135:1,1 140:1 141:4
141:14,15 146:16
147:18 151:13
154:4 157:23 158:5
158:13,13
**knowledge** 21:7
23:10 57:3 80:12
**knows** 83:12
**kostecka** 2:12 4:18
20:22

| l | | | |
|---|---|---|---|
| **l**  26:1 68:22 | **lawyers**  17:7 58:16 | 122:16 144:22 | 157:10 |
| **label**  20:12 65:8 | 72:23 74:21 87:19 | 159:7 | **looks**  71:19 |
| 144:13 | 87:23 96:23 114:19 | **lines**  25:1 92:16 | **loop**  19:22 141:14 |
| **labeled**  69:13 126:3 | 154:20 | 101:3,4 | **losing**  36:10 |
| 126:4,5 134:6 | **lead**  101:16 | **link**  99:12 | **lost**  98:25 |
| 140:18 144:10,16 | **leading**  93:18 | **list**  25:8 136:20 | **lot**  38:15 60:21 |
| 144:19 153:22 | 103:16,17 | **listed**  21:10 25:21 | 89:15,17 97:17 |
| **lack**  84:8 86:6 | **learn**  76:8 77:4 90:9 | 159:6 | 115:25 |
| **lago**  25:23 26:2 | 150:25 | **listen**  99:10 | **lower**  116:18 |
| 30:16 36:18 38:22 | **learned**  56:25 76:5 | **lists**  24:18 | **ltreece**  2:24 |
| 53:5 56:12 112:24 | 77:13 85:13,16,19 | **litany**  47:13 | **lucid**  50:6 |
| 122:4 139:14 | 85:22 89:6,7 90:2,4 | **literally**  39:7,11 | **luis**  30:1,4,12 |
| 155:17 | 94:9,15 95:14,15,17 | 89:17 | **lusitande**  21:10 |
| **lak**  1:3 | 95:19 100:6 106:5 | **litigation**  16:21 | |
| **laps**  15:14 26:1,3,10 | 106:22,23 137:10 | 25:22,23 30:15,16 | m |
| 26:19 29:3 32:25 | **learning**  89:16 90:1 | 35:12,21,21 36:6,11 | **m**  7:23,23 68:22 |
| 39:13,16 42:22 | 108:17 | 36:18 53:5 56:12 | 117:20 |
| 73:20 75:16 84:10 | **leave**  15:25 38:9 | 95:20 122:18,19 | **mackereth**  1:18 |
| **large**  19:15 | 66:4 93:21 123:5 | 126:10 134:17 | 4:15 160:4,22 |
| **largely**  137:4 | 139:8 162:4 163:13 | 135:7,20 155:18 | **magic**  41:11 |
| **larry**  17:19 | **led**  73:15 74:3 77:12 | **litigations**  36:1 | **mail**  27:5,10,15,15 |
| **lateral**  9:20 | 104:14 | 126:23 | 27:19 28:14,24 34:5 |
| **laughing**  132:7 | **leery**  94:20 | **litigator**  11:13 | 34:10,18,24 35:6 |
| **laura**  33:20 133:12 | **left**  15:17 38:10 80:2 | **little**  8:3 103:10 | 48:6 55:7,7,13 61:4 |
| 134:3 | 80:6 88:2 96:3 | 125:14 155:15 | 61:7,17 62:16 64:15 |
| **law**  8:7,24 17:15 | 109:2 128:4 | **livenote**  99:15 121:3 | 64:24 65:10,13,15 |
| 18:23 19:11,15 20:2 | **legal**  43:12 64:7,19 | 157:11 | 65:19,23 66:1,19 |
| 21:12 28:16 30:20 | 66:8 74:18 84:5,8 | **livenotes**  52:2 | 68:6,9,13,17,20 |
| 59:13 74:23 75:22 | 113:24 139:24 | **llc**  2:15 | 69:2 73:5,11,14 |
| 102:10 139:20 | 140:4 | **llp**  2:2,9 161:12 | 74:3,4 78:8 79:5,11 |
| 140:9,12 149:10 | **length**  39:10 | **local**  100:11 101:5 | 79:16 80:22 81:5,7 |
| 155:15,16 156:4,8 | **letter**  24:17,20 29:3 | **locate**  51:24 | 81:22,23 105:17 |
| 156:13,17,24 | 29:12 32:7 42:19 | **located**  4:7 | 107:15 112:5,9,10 |
| 157:15,23,24 158:4 | 61:19,23 63:3,22 | **long**  9:2,8 11:3 | 112:15,18 113:8,10 |
| **lawrence**  2:23 4:19 | 153:4 161:13 | 13:11,16 43:25 | 113:12,16 121:22 |
| 27:6 151:19 | 163:22,24 164:4,8 | **look**  25:9 69:17 | 122:7,8,13,15 126:6 |
| **lawyer**  17:12,13,16 | **letterhead**  115:9 | 88:14 90:25 91:9,13 | 129:6,13 133:11,15 |
| 19:14,16 31:3 33:7 | **letters**  83:4 | 91:16 92:10,14,21 | 133:18 135:14 |
| 59:19 67:14,21 | **level**  100:16 | 108:23 114:10 | 140:16,21,22 141:1 |
| 72:18 75:24 76:1 | **licensed**  8:4,7,16 | 117:1 142:21 | 142:16,22,23 |
| 77:13 78:9,16 82:21 | **light**  131:14 132:17 | **looked**  125:18 | 143:23 144:3,9,16 |
| 82:23 95:2 96:16 | **lightly**  158:17 | **looking**  22:9,14 | 144:19,23 145:1,16 |
| | **limited**  41:2 | 52:24 71:24 89:22 | 145:24 146:5,9,23 |
| | **line**  29:18,25 71:18 | 90:15,15 92:1 | 147:2 149:21,24 |
| | 71:19 89:23 95:1,7 | 110:2 134:10 | 150:2,3,23 151:1,2 |

151:5,19 152:2,20
152:22 153:20
154:1,9,14 161:14
161:16,19,22 162:3
162:5,8,13,16,17,21
163:3,6,10,11,16,18
163:20,22,23 164:3
164:5,6,9,13
**mailed** 20:20
**mailing** 24:16
**mails** 17:2 28:13,16
28:19 65:4 81:12
83:5,11 126:14,17
129:18 141:23
142:1 145:9,13
146:13 150:8,12,14
153:22
**main** 84:3
**maintain** 87:23 97:2
126:16 133:23
141:23 145:9,13
146:13 147:6
152:12 154:14
**maintained** 126:19
145:16
**major** 48:12
**majority** 137:5
**making** 42:12 95:3
110:17
**manage** 32:9
**map** 126:8
**march** 14:14 21:9
23:4 56:25 65:13,14
65:15 67:1 73:6,11
77:9 78:8 79:5 89:2
89:4 97:5,8 98:10
98:19 99:20 103:14
103:17,18 106:1,5
106:20 107:1 119:7
126:7 128:10 129:7
131:4 134:12
137:11 139:21
140:17,21 141:20
142:6,18,24 143:6
153:21 154:18

**mark** 22:19 24:13
27:1 68:2 107:12
**marked** 20:13,21
24:14 27:2,4 34:8
54:17 61:2,3 65:9
68:3 69:15 73:3,5
80:17 82:10 87:3,4
95:23 107:11
108:10 112:2,4
113:8 115:5 121:17
121:19 126:1 129:2
129:4 133:8 139:5,7
140:14,16,19
142:14,16 144:7,9
144:11,14,17
151:16,18 153:1,3
153:18 164:11
**marr** 134:3
**master** 3:3,4 4:24,25
5:8,13 7:3,13,18
12:18 13:7 28:9
37:1 38:6,8,12 39:2
40:15,18 42:1,16,18
42:24 43:19 44:4,10
44:22 45:2,7,12,20
46:15 47:16,24 48:1
48:23,25 49:21 50:5
50:13,17 51:1,4,8
51:12,17,22 52:1,5
52:14,17,20 53:14
53:19 54:20 55:4
56:16 57:6,22,25
58:9,21,23,25 59:4
59:7,16 60:8,16
61:9,14 63:18 67:2
67:10 71:2,14,17
72:7,16,21 73:24
76:15,17,19,23
77:14,20,23 78:3,6
78:18 80:19,25 81:3
81:16 88:9,12,19
90:14,17,20 91:13
91:16,20 92:1,9,13
92:18 93:4,8,10,14
93:22 98:24 99:4,8

99:14,22 100:21,24
101:21 102:1,3,13
104:19,25 105:4
111:9,15 114:10,14
116:24 118:6
119:13,16,20 120:2
120:18,22 121:2
123:4,19 124:13,18
124:24 125:4,7,11
127:7,19 128:4,14
128:18 131:11,21
132:2,11 135:10,12
136:21 138:7,16,20
143:16 148:2,14,17
148:24 149:14
150:17,20 151:22
152:25 154:6,23
155:1,4,9,21,24
157:3,7,10,19 158:7
158:19
**master's** 13:13
**mastro** 2:5 116:22
117:1,3,6,7
**material** 5:22 64:7,7
105:12,14
**materials** 100:11
101:6 116:12,19
117:14 123:2
**matter** 14:21 15:20
15:23 16:12,21
21:10,18 22:7,18
23:5 24:21 28:6
30:21 32:10,13,14
32:21 33:5,25 39:20
42:23,25 46:9 47:21
47:23 67:22 69:2
96:11,12 133:14
140:24 152:17
**matters** 28:17 65:5
65:24 79:17 113:17
150:10
**max** 3:2 4:24
**mcdermott** 1:5,14
4:12,20 5:10,16,22
5:25 6:5,7,10,14 7:6

7:23,24 12:23 19:2
21:6 24:19 25:18
33:25 34:11,16 49:8
50:12 52:23 54:4
55:6 57:24 58:4
61:5,7 65:11 67:13
80:23 81:4,21 87:10
88:23 96:6 98:13
99:19 101:1 102:1
111:17 115:7 117:4
117:5,6 119:2
120:23 144:22
153:17 155:5,12,14
157:13 158:6,20
159:2,21 161:13,16
161:20,23 162:9,18
162:21 163:10,11
163:16,18,20
164:13
**mean** 18:8,18 28:3
35:20 36:4,14 37:3
42:8 45:21 54:9
57:8,10 63:13 70:25
83:2 115:24 118:7
123:7 133:2 140:6
151:12 158:3
**means** 51:14 56:25
**meant** 63:16
**mediation** 116:19
**medications** 10:19
**meet** 50:8 53:20
74:10,16 75:8 80:4
84:15 85:25 86:3,5
107:23 136:1 145:5
149:18 151:2
154:21
**meeting** 41:19 80:5
80:6,11 86:24 88:6
89:6 107:25 109:4,7
109:17 132:16
**meetings** 84:24 85:3
87:20 108:5
**meets** 56:18 135:15
**member** 111:6

members  89:12
memo  46:7,7 83:19
  113:24 114:3
  116:10 126:8,9,22
  128:15 134:17
  135:7,21 136:11
  140:23 142:6 156:6
  163:5
memoranda  141:24
  142:2
memorandum
  80:23 81:6,7,13,15
  81:22,23 82:14,16
  83:15,20 114:6
  115:8,14 117:11
  127:5 133:13,17,19
  134:7 137:17 149:5
  162:19
memory  14:12 19:4
  22:10 23:24 69:8
  70:2 95:4 141:10
memos  81:13
mental  47:11,12
mention  17:15
  94:19
mentioned  25:17
  26:8 33:6 39:5
  66:15 67:8,12,16,19
  88:3 104:3 107:20
  132:25 139:19
  152:15 153:15
mentioning  36:20
met  25:15 76:4
  86:14 88:24 107:2,5
  107:21 108:2
miami  107:16
michael  14:24 15:9
  15:18 65:12 68:7
  69:20 87:13 89:17
  91:24 95:11 98:6,13
  103:3,3 113:20
  115:10 116:6
  117:21 129:8 134:8
  153:21 154:5

michael's  69:2
michigan  8:25
microphone  7:14
  79:8
middle  66:11 96:10
  158:8
mike  144:24
mind  141:10
mine  69:19 87:14
minus  138:13
minute  42:16,18
  81:17,17 142:25
  150:17,20 152:25
  158:7
minutes  99:1,1,9
  138:11,14,17,17
misconduct  11:9
  75:20 76:11 77:7,10
  78:1,9 157:23
misrepresentations
  102:19
misspelled  103:15
misspelling  21:11
misspoke  93:1
mistake  21:23
mistaken  57:12
moderately  122:18
moment  37:14 73:8
  142:20
monday  66:13
money  83:7 116:1
months  16:20 82:17
morning  13:8 19:1
  42:20
morning's  142:19
morphed  89:25
motion  139:8,13,18
  139:19 162:3
  163:13
motley  39:15
move  7:14 44:5 50:7
  50:9,10 51:5 67:7,8
multiple  94:11,12
mute  63:16

**n**

n  4:2 161:1
name  4:4,12 7:9,12
  7:12,21,21 17:18
  19:10,25 31:8,9
  33:17,18,21 36:20
  55:8 59:23,24 60:2
  67:19 82:24 86:10
  86:11,22 107:19
  150:25 151:7
named  29:19
names  24:18 25:8,9
  25:21 29:20 30:1
  134:4
naranjo  2:18
narrow  118:19
nasty  83:4,11
native  6:2
nature  101:15
  148:14 157:4
near  122:3 124:10
necessarily  46:24
  91:2 123:10
necessary  84:2
  118:2
necessity  49:6
need  11:23 13:10
  26:6 40:2,14 43:19
  43:20 44:7,20,22
  47:3,17,20,20 49:22
  64:10,11 75:11
  76:20 93:16 100:25
  105:16
needed  15:21 33:13
  60:22 135:24
needs  49:14 91:4,4
negotiation  63:22
neither  40:9,9
neutral  48:15,22
  124:13,18,24
never  18:15 30:7
  96:17 156:15,23
  157:14

new  1:2 2:3,3,16
  4:11 8:19 10:12
  16:22 17:8,8 19:14
  20:2 31:3 34:14
  35:1,22 40:20 41:18
  47:10 98:25 116:23
  117:8
night  54:24 107:5
nod  11:24
nominal  83:1
non  49:12 75:24
norm  19:10,11,11
  19:16,19,21
northern  18:23
notary  1:20 159:25
  160:6
notation  98:9
note  105:16 109:17
  143:9
noted  10:11 12:10
notes  69:18,22 70:3
  70:16,20 72:13,18
  87:6,11,20,23 89:23
  92:2,4,20,21,24
  93:3,11 96:2,20,23
  97:2,4,24 100:10
  109:7,10,14 110:13
  110:15 147:8 162:7
  162:10,11,14
notice  1:13
noticed  119:14
noting  63:4
nuances  53:7
nueva  162:16
number  13:7 20:9
  20:10,12 25:8 75:6
  93:5,11 96:10,11,18
  96:19 97:25 98:4
  102:17 107:14
  109:2 125:2 127:9
  137:2 139:10 149:2
numbered  35:3
  140:21
numbers  29:15,15
  96:17

**numerous** 15:19
  49:2

**o**

**o** 4:2 7:23 14:24
  68:22,22
**oath** 10:7
**object** 6:25 63:16
  77:15 93:17 114:9
**objection** 6:20 7:1
  12:16,19 28:8 36:25
  39:3,12,17,21 42:21
  44:13,21,23 45:10
  45:19 46:16 50:3,22
  50:23 52:5 53:13
  56:15 57:2,21 58:7
  58:18 60:7 67:2,9
  71:1 73:21 74:1
  77:16 88:8,10,20
  92:7 99:21 100:20
  100:23 101:20
  104:7,18 111:8
  118:5 120:1,15,18
  123:18 125:14,22
  127:6 128:1,16,19
  128:23 131:9,11,17
  131:20,22,24,25
  135:9,11,13 143:15
  148:1,13,15,23
  149:15 155:19
  156:14 157:2,4,5,18
**objectionable** 94:1
**objections** 6:11,16
  12:11 44:19 45:17
  46:21 93:21 95:3
  132:4
**obligation** 137:16
**obviously** 10:7
  21:21 121:20
**occasion** 14:10
  15:13 16:20 22:18
  33:16 67:13,14
**occasions** 31:6
**occurred** 14:13
  102:8 108:6

**odd** 93:13 116:5
**office** 4:6 15:22
  19:12 116:23
  118:12
**offices** 21:12
**official** 82:17
**officials** 53:7
**oh** 9:10 99:8 123:17
  123:19 131:24
  143:1
**oil** 49:3 124:10,11
**okay** 4:3 7:19 8:18
  8:24 9:11 11:5,12
  12:8,15,20,22 13:4
  13:6,14,20 14:19
  16:4,8,14 17:4,22
  18:3,12 20:6 21:5
  22:9,14 23:2,7,13
  24:10,24 25:13,17
  25:25 26:3,5 27:21
  28:13 29:10 31:10
  31:17 32:6 33:20,24
  34:23 35:6,24 36:14
  38:12 44:8,15 45:1
  45:10 46:13 49:21
  51:15,17 54:11 55:2
  55:21 57:14 59:25
  60:3 61:16 66:17
  67:4,25 69:4,12
  70:21 71:12 72:21
  76:15 78:16 79:19
  80:19 81:3 82:13
  85:2 86:12,23 87:17
  89:3 93:22 94:13
  95:1 96:9,18 97:12
  98:8 99:11,17
  102:22 104:2,23
  105:13,17,25
  106:10,19 107:1,9
  108:1,9,21 109:1,25
  110:23 111:24
  112:20 113:3,7
  118:14 119:2,15
  121:14 125:9
  127:19 128:24

**129**:18 130:3 131:3
  131:10 132:9,23
  133:4 134:21
  136:17 138:13
  140:13 141:22
  150:2,13 151:9
  153:17 154:22
  155:4
**old** 64:18
**once** 11:2 42:25
  82:22 99:23 107:6,7
  127:12
**operate** 124:8
**operates** 19:21
**opponents** 66:21
**opportunity** 12:18
  43:14,17 44:1 80:7
  80:20
**oppose** 66:5 84:4
  142:8
**opposed** 132:4
**opposing** 58:5,14
  60:5 70:11
**opposite** 85:7
**opposition** 114:7
  117:18 118:3
  129:14 139:9,15
  162:4 163:8,14
**opted** 27:24 62:22
**order** 5:18 6:4,9,25
  13:6 47:11 157:15
**ordered** 6:22
**ordinary** 28:15,20
  64:25 65:3,19,22
  68:14,16 72:14
  79:12,15 81:8,11
  87:19,22 96:22 97:1
  109:11,13 112:10
  112:13 113:13,15
  115:15,17 122:9,11
  126:15,20 129:20
  129:23 133:19,22
  141:22 142:2
  143:24 144:2 145:8
  145:10,12,17,19

**146**:9,12 147:3,5
  150:4,8,13 152:8,11
  153:9,12 154:10,13
**original** 71:18
**originally** 24:7
**ormand** 3:4 5:1
  41:13 54:24
**outline** 129:9,13
  130:2 163:8
**outlines** 113:24
  129:19
**outside** 32:3
**overrule** 45:18
  46:15,24 50:22,23
**overruled** 28:9 37:1
  45:3 53:14 56:16
  57:6,22 58:9 60:8
  67:10 73:24 99:22
  100:24 101:21
  111:9 114:12 118:6
  120:19 123:19
  127:8 131:12,23
  135:12 143:16
  148:18,24 155:21
**overruling** 39:2,19
  44:13 45:9 49:25
  50:2 125:14,22
  128:1 149:15,15
**overwhelming**
  118:9
**owen** 9:6

**p**

**p** 4:2 26:2
**p.m.** 68:20 78:24
  158:24
**pablo** 29:19,23 30:8
**package** 151:18
**page** 25:7 27:13,22
  29:12,15,18,25
  33:22 35:4 37:12
  41:15 55:22 56:2
  61:22,22 68:6 91:14
  92:15 94:20 103:13
  103:16 108:13

112:5 113:10 116:9
117:10 123:23,24
124:2,3,4 127:20
128:5,15,21 130:19
133:11 134:3,7
135:14 136:10
159:7 161:2 162:23
163:10,12
**pages** 14:5 24:25
29:17 39:7,11 41:10
41:13 69:17
**paid** 83:3
**paper** 48:5
**paragraph** 27:22
32:7,16 35:3 37:13
42:11 48:19 55:23
56:1,3 61:23 63:7
80:1 83:21,24 84:12
85:2,24 113:20
124:7 134:23
136:11 141:8
**paragraphs** 37:14
37:17,18,21 38:1
48:10 52:24 53:3,12
83:22
**paramount** 102:17
**parcel** 137:21
**parenthetical**
118:19
**park** 2:2
**parking** 89:15,17
97:17
**part** 24:10,11 27:16
50:2 53:19 63:2
72:17,22 80:17
94:18,25 102:20,24
106:11 123:11
130:8 136:8 137:20
139:23 145:4
149:12 151:20
**parte** 130:3
**participate** 13:25
84:16,21,23 98:20
**participated** 89:11
97:7 98:15

**particular** 26:6
124:21
**particulars** 49:10
**parties** 4:14 5:20
137:4 160:15
**partner** 9:25 10:5
19:10 89:21 117:7
151:7
**partners** 74:16
**parts** 133:10
**party** 11:6
**path** 154:7
**patient** 75:7
**pause** 61:12 81:2
**pay** 33:3,9
**payaguaje** 2:17 4:23
22:7
**paying** 30:20
**payment** 22:2,6
**pending** 13:12 50:16
51:22 52:12
**people** 88:25 134:25
143:22
**percent** 62:20 67:24
**perfect** 150:21
**period** 69:9 74:13
106:20 112:24
**periodically** 19:12
**permissible** 110:22
**permission** 5:15
13:13 20:25 52:10
98:3 105:22 106:13
106:18
**permit** 118:10
121:12 135:25
156:16
**person** 26:6 91:21
91:23 120:19
**personally** 25:14
89:12 97:6
**perspective** 152:19
**persuasive** 64:14
74:24 75:19,21
**pertained** 156:13

**pertains** 155:16
**pertinent** 84:1
**peruse** 37:14 56:1
**peter** 118:16,17
**petition** 32:14 34:11
34:25 35:7 55:13,23
58:6,14 60:5 66:5
69:7 114:8 129:14
139:10,16,25 140:2
142:8 161:21 163:9
163:15,22,24 164:4
**phone** 12:16 17:9
18:15 19:13 63:16
89:8 98:7
**phrase** 141:9
**physically** 95:8
**physician** 97:18
**piaguaje** 2:17
**piece** 48:4
**pissed** 143:13
**place** 40:24 60:11
95:24 108:21 112:3
113:7 115:6 121:18
141:19 151:17
153:2 160:10
**placing** 27:3 142:15
**plaintiff** 1:8 2:3,11
**plaintiffs** 6:2,17
9:18 25:20,22 26:2
29:8 35:12 37:7
38:22 139:14
**plan** 116:6,7 117:11
119:4,24 120:9,13
121:8
**play** 30:15 58:17
118:10
**played** 59:2,4,18
79:24
**please** 5:2 7:22 26:7
34:5 40:7 52:15
56:20 61:2,10 65:8
68:2 72:9 77:22
79:21 80:15,20
90:25 95:22 102:4
104:12 108:9 112:1

114:14 115:4
119:10 121:16
125:25 129:1 138:6
138:8 142:13 144:6
158:10
**point** 12:22 14:11
25:13 26:5,9 29:1
30:24 31:1 47:25
63:4 83:8,10,10
86:16 94:11 100:25
101:7 102:16
109:22 112:25
115:1 117:9 125:9
131:3 136:4 143:9
**pointed** 47:2
**points** 136:18,22,24
142:18
**poor** 103:10
**portion** 2:6,7,18
54:25 57:11 90:10
95:5,10 102:15
111:7,13 125:16
149:23
**portions** 12:11 54:6
56:14 57:19 90:6,7
128:14
**position** 40:12 66:8
86:2 147:12
**positive** 97:11
**possible** 97:13 108:1
113:24
**power** 40:25 42:11
**practice** 8:7,19 13:9
22:17 46:10 98:2
146:18 151:14
**practiced** 8:14
**practicing** 8:15
**preamble** 120:24
**preceded** 132:4
**preceding** 32:16
**precisely** 45:9 46:11
46:11 116:3
**prepare** 100:11
101:6 118:16
139:18

| | |
|---|---|

**prepared** 6:8 24:20
40:1 41:22 42:3
49:24 50:1 100:14
101:7 116:6,7
117:11 127:17
152:7
**preparing** 13:17
82:7 139:19
**present** 3:2 43:18,23
**presents** 45:8
**preserved** 44:19
**preserving** 44:17
**pressed** 41:19
**presumably** 118:9
**pretty** 35:8 87:1
97:11
**prevent** 60:11
**previous** 8:13 70:23
70:24 71:7 132:21
160:7
**previously** 24:9
95:19 106:23
111:21 137:14,22
137:25 138:2
164:11
**primarily** 14:20
22:15 116:6 118:8
**primary** 30:24
**principal** 86:19
114:23,23 118:13
**principals** 86:12,17
**principles** 156:8
**printed** 21:18
**prior** 15:12 24:2
25:10 35:10 53:20
77:25 107:1 118:20
**privilege** 5:19,24 6:6
6:7,12 7:1 14:17
18:9 38:7,13,15,18
38:20 39:12,17 40:8
40:10,10 42:13,21
44:14,21,23 45:9,17
46:16 49:25 50:3
53:13 56:15 57:4,21
58:7,18,23 60:7

63:17,19,25 67:9
73:21 74:22 99:21
100:23 101:20
106:15 111:8 118:5
123:18 125:14,22
127:6 128:1 131:24
135:9,11 148:23
**privileged** 36:25
114:9
**pro** 8:18
**probably** 11:4 75:23
85:19 94:11 97:16
97:18 98:6 158:16
**problem** 12:7 40:19
43:5 44:3 52:1
**procedural** 95:3
**procedure** 46:10
85:6 140:3
**proceed** 20:24 61:13
**proceeding** 10:12
31:5,11,12,23 32:1
39:8,10 43:6 48:14
63:9,11 68:23 76:13
100:7
**proceedings** 32:3
73:20 80:17 111:19
158:24
**process** 136:9,9
145:5 151:3 154:21
**produced** 14:8 82:1
82:3 87:17
**product** 5:23 6:6,12
40:10 46:21 47:11
47:12 58:24 59:1,3
59:8 63:17 73:23
136:9 143:15
152:21,23 164:7
**production** 14:1,5
14:10 16:9,15 63:20
69:13 82:11 113:10
129:5 150:6 152:3
161:5
**professional** 1:19
160:5

**promised** 75:3
**promoting** 63:11
**prong** 46:3,6 49:14
49:15 53:21 125:20
135:16,16 149:18
**prongs** 51:14 56:18
**pronouncing** 15:2
**proper** 85:7 149:9
156:25 157:17
**prophylactic** 36:12
**proposed** 151:5
**proposing** 143:20
**protect** 6:13,16
**protected** 6:20 39:1
**provide** 47:8 48:23
111:8 114:5 118:2
142:7
**provided** 48:22 62:9
97:25 139:21
147:23 149:5
**provides** 112:7
122:17
**providing** 64:6
123:2
**provision** 62:21
112:8 113:4 156:4
**provisions** 74:22
112:21
**prueba** 162:16
**public** 1:20 116:16
123:8,12 159:25
160:6
**purport** 97:4
**purported** 24:12
**purports** 107:14
121:22 133:13
**purpose** 5:6 98:22
**purposes** 8:14 14:17
71:20 72:10 127:9
127:23 144:21
**pursuant** 1:13 5:16
5:17
**pursue** 36:11
**put** 15:4 43:9 56:23
114:24 127:22

| **q** |
|---|

**qualitatively** 110:24
**quality** 48:6
**quarter** 17:5 97:24
**question** 6:19 8:13
12:6,17,23,24 13:1
13:2,11 38:24 40:16
42:9 47:21 50:16,21
51:23 52:7,12 53:2
56:20 57:7 58:10
63:23 64:4 71:4
73:25 75:14 76:21
76:22,24 83:18
92:19 102:4 104:20
104:20 114:15
119:21 120:25
131:22 132:1,10,14
135:18 145:16
155:24 157:6,21
158:1
**questioning** 103:11
105:1
**questions** 19:2 26:5
42:12,13 68:24
92:17 93:19 147:19
155:8
**quibble** 118:7
**quickly** 8:3 54:22
67:7
**quimby** 2:15
**quite** 25:16 75:7
**quote** 32:8 35:7 46:4
48:19 62:2 63:4
66:18 86:1 122:16
124:8 143:9
**quoting** 48:19

| **r** |
|---|

**r** 4:2 7:23 21:12
**rachel** 2:7
**rainforest** 162:23
**raised** 102:25 103:5
104:9
**raising** 38:13

ran  19:23
randy  2:5 116:25
rationale  45:16
rblume  2:12
rbrook  2:8
reach  40:2,3,6,7,14
  128:7
reached  128:7
reaching  41:21
reaction  62:19
  100:8 101:18
read  27:12,21 41:13
  56:3 61:10 80:20
  81:3 101:4 119:8
  121:2 125:16
  136:15,17 159:3
reader  90:21 91:1
readily  40:20
reading  35:3 37:21
  63:7 91:3 121:20
  138:6,8 143:2
ready  5:13 39:25
really  19:21,22
  92:18
realtime  1:19
reask  52:12,14
reason  13:11 27:19
  48:3 57:16 75:17,18
  83:16 84:22 103:23
  103:23 106:12
  141:2 150:11
reasonable  46:1
  109:3 132:8
reasons  45:3 47:14
  63:20 83:23 84:3
  123:1 125:22
  158:15
rec  58:19
recall  8:20,21,23
  11:10 14:16 16:1,24
  17:11,12 19:7,11,20
  19:24 20:1,3,4,5
  22:24 24:5,8 25:13
  26:13,16,23 27:18
  29:4,6,9 31:6,9,16

31:19 33:25 34:24
35:2,16 36:16,19,23
37:2,5,9 38:4 53:8,9
53:25,55:10,18
56:10,21 57:10,12
59:17,19,19,21
62:13,15 67:11,17
68:22 69:1,3 71:11
74:7,23 75:1,6,7,10
75:15,20,24 76:5,7
77:3 79:24 80:3,9
80:13,14 82:7,15,25
83:3 86:19 88:18,24
89:11 90:1,11 92:4
94:5,8,14,22,25
95:9 97:6 98:21,22
100:16 101:17
102:20,22 103:19
103:23 105:9 107:2
108:17 110:12,13
110:16 111:4,12,12
113:3,6 115:24
116:20 117:9
118:17,22 120:8,11
121:1,5 122:2,24,24
123:6 124:20,22
125:5 126:22 127:1
127:2,3,4 128:2,12
129:12,12 131:3,10
131:15 132:19,19
134:16 135:22
136:4 138:23 140:2
141:3 142:10,23
143:14 147:20,20
147:21,22 148:4,12
148:19,25 149:1,2,3
149:7,25,25 150:16
154:17,19 156:2,4
156:17
receipt  71:24
receive  18:3 28:16
  119:23 130:9,11,24
received  8:18 17:25
  19:13 20:24 28:20
  71:25 84:1,9 119:4

119:3,12,17 122:15
155:15,25 156:11
156:19 157:14
receiving  33:25
  34:24 35:2,5 55:18
  112:17 116:20
  117:12 118:22
  120:8,11 121:1,5
  122:2,5 131:5
  134:16 141:1 156:2
recess  78:23
recitation  48:7,16
recognize  22:4
  24:20 27:15 31:7
  34:17 55:7 69:17
  87:10 96:6 108:24
  110:4,6 115:21,23
  140:25 142:21
  145:4 149:24
recollect  154:1
recollection  11:7
  13:23 18:16 27:23
  28:2 30:9,11 33:21
  34:20,23 35:4,14,17
  35:24 36:4 37:22
  55:18,20 56:4 60:10
  60:12 63:8 64:5
  67:21 73:18,25
  74:10,19 78:11
  79:23 85:1,20 88:4
  90:8 96:14,16 98:14
  98:20 99:19 100:1,4
  101:12,25 102:6,23
  105:11 106:3
  107:10,21,24
  109:21 117:12
  122:5 127:10,12
  129:16 134:2,19
  141:18 143:4
recollections  86:15
recommended
  62:10
record  4:4 7:22 43:9
  44:18 50:5,15 64:23
  78:22 79:1 93:17

103:10 104:2
115:19 116:25
138:11 141:6 153:8
154:7,14 158:22
159:5
recorded  97:14
  98:11
reduced  160:11
reducing  91:7
refer  25:25
reference  80:1
  102:11 128:5
  161:10 162:2 163:2
  164:2
referenced  74:19
  102:6 128:15
  132:21
references  41:16
  54:23 55:1 146:15
  147:8
referencing  61:22
  63:3
referred  64:2 88:6
  137:21 141:16
  145:5
referring  66:15
  117:10 141:7
reflect  21:17,25
  22:17 28:23 97:4
reflected  23:4 55:12
  61:18 78:7 97:13
  101:3 103:1 104:15
  108:6 109:8 110:15
reflecting  73:11
  83:22 103:14
  107:16
reflection  21:8
reflects  29:18 61:18
  69:5 105:15,21
refresh  13:22 14:12
  19:4 22:10 28:1
  35:4 37:21 56:4
  63:8 67:20 88:3
  90:8 95:4 96:14
  98:14,19 107:10

141:18 143:4
**refreshed** 79:22
**refreshes** 27:23 74:9
  74:19 85:20 107:20
  134:2
**refreshing** 96:15
**refused** 84:24
**regard** 31:20 33:12
  46:21
**regarding** 5:19 69:7
  113:5 116:17 119:5
  126:10 136:19,25
  155:16 156:13,19
  156:23 157:15,24
**regardless** 6:5,19
**registered** 1:18
  160:5
**relate** 65:5
**related** 30:15 33:5
  49:15 63:1,4 65:23
  72:23 113:16
  126:23 150:9
  160:14
**relates** 47:8 48:13
  79:16
**relating** 126:10
  157:17
**relations** 123:9,12
**relationship** 39:8
  70:23 71:8 151:10
**relevance** 68:23
**relevant** 47:6 62:5
  62:18 64:19 75:21
  80:8 140:11
**reliable** 47:7
**relied** 111:18 118:8
  140:6,7,8,10
**relieving** 6:10
**rely** 114:5 117:25
  118:1 123:12,15
  139:19 143:10,18
**remain** 16:4 25:1
**remark** 132:12
**remember** 14:7
  17:23 19:3 26:11,15

36:4 54:9 59:22
60:20,20,21,24 82:5
89:14,15 108:20
109:20 110:16
112:17,20,25 125:1
125:1 126:25
127:14,16 130:25
131:1,2,8 134:23
139:3 140:25 141:5
141:5,11,12,14
143:3 154:1,3,4
**remind** 67:20
**removed** 82:22
**repeat** 104:11 119:8
  120:4
**repeated** 83:25
**repeatedly** 64:6
  135:23,24
**rephrase** 148:3
  157:12
**replied** 62:8
**report** 37:8 54:7
  56:7,14 57:12,19
  90:6,10 100:18
  111:7,14 118:21
  128:14 130:15
  131:7 132:16,18
  133:1 136:19,25
  147:14,15,25 148:9
  148:22
**reporter** 1:18,19,19
  4:15 7:9 11:23 12:3
  160:5
**reporter's** 160:2
**reports** 147:9
**represent** 4:14 21:1
  24:7 26:16,21 27:24
  28:12 29:8 31:22
  70:14 86:18 143:20
**representation** 6:1
  15:14 26:14 43:20
  75:16 106:7 131:4
**representations**
  60:22 74:15 85:5
  121:13

**represented** 11:7,8
  23:8 24:9,11 25:11
  94:16
**representing** 4:4,20
  25:19 26:10,19 28:6
  28:21 31:3 39:13,16
  42:22 73:19 75:5,25
  76:3 83:18 84:10
**request** 62:1,17 66:7
  70:11 83:25 119:24
  161:5
**requesting** 105:21
  139:15
**requests** 120:12
  121:6
**requires** 43:11 46:6
**requiring** 6:5
**reread** 42:20
**research** 43:12 84:6
**reserve** 40:12 43:7
**reserving** 40:19
  45:15
**resolve** 42:25
**resolved** 6:22 42:23
**respect** 74:18 92:7
**respectfully** 63:6
**respond** 18:4
**responding** 65:13
  65:14
**responds** 66:10
**response** 11:24
  12:17 16:16 49:18
  63:2 119:23 120:9
  120:12 121:6
**responsibilities**
  78:17 114:19
**responsibility** 74:11
  89:20 114:22
**responsible** 30:19
  30:20
**responsibly** 86:5
**rest** 49:23
**result** 14:2 78:11
  160:17

**resulting** 124:11
**results** 137:6
**ret** 3:2
**retained** 26:21
  82:21,23,23 89:24
  90:4
**retainer** 83:1,3
**return** 156:7
**reveal** 59:3 73:22
**revealed** 62:16
  106:1
**review** 13:22 14:11
  14:12,19 43:15
  65:18 73:8 87:9
**reviewed** 37:17
  156:3
**reviewing** 14:15,16
  55:19 105:11
  126:22,25 127:2
  134:16
**revisited** 162:24
**rice** 39:15
**richard** 36:20 37:23
  49:1 124:18,24
**right** 11:23 12:10
  13:16,25 14:4,6,9
  14:24 15:2,3,7
  20:23 21:23,23
  23:21 29:16 32:17
  32:17 40:12 41:25
  42:2,11 43:7,8 45:5
  52:14,21 56:3 70:1
  78:18 85:10 87:2,7
  90:13,24 93:6 96:2
  98:17,18 99:10,14
  105:23 106:2 111:1
  114:16 117:22,25
  128:18 134:11,13
  137:2 138:19,21
  142:13 145:15
  158:5
**ring** 134:4
**rmastro** 2:6
**road** 126:8

**robert** 2:11 4:17
**roberts** 9:5,8
**role** 11:5 30:15 32:8
  53:5 58:16 59:2,4
  59:18 77:9 79:24
  85:13 95:20 100:17
  106:24 118:11
  119:5 133:1
**room** 38:9,10 51:19
  98:25 117:1
**routinely** 15:18
**rpr** 160:22
**rule** 12:18 43:22
  46:4 59:9 114:20
**ruled** 59:11
**rules** 11:19 93:20
  130:3
**ruling** 40:1,8,13
  41:6 42:5 43:23
  44:1,20 45:17 50:2
  59:12 71:20 74:5
**rulings** 38:15 42:13
**run** 154:8

**s**

**s** 4:2 98:12 108:16
  109:4 117:19 161:5
**safety** 72:10
**sake** 72:10
**sampling** 137:6
**sat** 8:10,12
**satisfied** 117:13
  125:19
**saw** 151:1
**saying** 37:5 71:11
  82:9 107:23 128:21
  158:5
**says** 32:18 35:6 62:2
  66:11 70:4,10 83:24
  84:14 85:2,25 88:2
  89:23 94:20 95:2,7
  96:3 97:24 98:12
  100:10 102:17
  105:16 109:4,17
  110:8 113:23

116:11 117:18
118:15,19 124:7
130:14 137:2,2
141:13 147:11
**schedule** 40:24
  138:21
**scheme** 49:11
**schindler** 103:15
**schreck** 2:21 4:21
  7:25 81:25 84:17
  115:8 161:12
**scope** 14:8 118:21
  118:23
**scores** 39:7,11
**sd** 102:7 110:9
**search** 24:6 52:10
**second** 17:5 32:7
  35:15 45:21 46:3,6
  49:14 75:17 77:14
  77:15 80:1 83:25
  84:12 88:13 92:10
  106:9 118:15 120:2
  120:19 124:7
  125:11,12 127:7,11
  143:21 149:7 157:7
**secondly** 74:9
**section** 31:23 35:8
  117:18,19 118:11
  129:13 130:2,2,13
  134:17 139:9 163:8
**sections** 129:19
  147:13,14 148:9,21
**see** 19:3 21:1,14
  22:15 23:16 27:8
  29:16,21 30:2 32:11
  34:16 51:21 55:15
  61:24 62:6 66:23
  68:11 70:6,12 80:1
  91:18 93:4,8 97:12
  105:19 110:2,10
  113:21 114:1
  115:12 116:14
  117:2 121:25
  122:22 124:14
  126:12 129:10,16

130:4,16,21 133:15
134:9 136:13 137:7
139:11 144:25
146:2,7,25 147:16
148:5 152:5 153:6
153:24 157:8
**seeking** 60:6 66:4
  78:12
**seen** 92:2
**send** 22:1 41:12
  55:1 62:20,25 83:15
  114:3 121:10,11,11
  151:2,6
**sending** 83:4 142:6
  142:23 151:20
**senior** 15:5 19:10
**sense** 8:16 18:6
  64:13 95:11 132:24
**sent** 22:6 28:14
  37:19 54:23,25 79:5
  83:10,16 113:4
  116:7 125:17
  126:15,23 128:11
  135:6,20 142:22
  152:3 156:6
**sentence** 32:18 35:7
  61:23 83:25 84:14
  86:1 124:7,21,21
  125:8 130:18
  143:17 146:15
  147:11
**separate** 26:22
**separately** 128:13
**series** 19:2 24:18
  29:20 30:1 110:13
  153:22
**set** 18:15 48:7,9 53:3
  53:11 58:1,4 119:24
  120:13 121:7
  123:16 160:11
**setting** 58:17
**seventeenth** 2:21
**shake** 11:24
**shareholder** 7:24
  9:12,13,14,15,21,24

10:4 12:13
**she'll** 52:7
**shed** 131:14 132:17
**sheet** 22:9,14 23:14
  97:19 98:10
**sheets** 21:2,8,18,21
  97:13 105:7
**shenrick** 2:5
**shifting** 66:22
**shinder** 59:23 60:1
  84:13,14 85:3,12,16
  85:18,19,21 86:8
  88:6,24 89:8 90:2
  91:24 94:6,24
  101:19 103:15,18
  103:20,25 104:5,17
  104:17 105:7,9,17
  105:18,22 106:1,6
  106:13,15,21 119:6
  131:14 132:16,20
  132:21 137:11,13
  149:12
**shinder's** 89:6
**short** 22:23
**shorthand** 1:18
  160:10
**show** 69:12 91:22
  107:9,19 116:12
**showed** 117:14
**sic** 55:22 95:13
  123:23 144:12
  145:22 151:6
**sign** 29:2
**signal** 13:12
**signature** 25:1
  29:18,25 160:19
**signed** 114:21
**significant** 23:1 90:6
  90:7,11 134:25
**signs** 150:24
**similar** 9:25 52:12
  52:18 110:20
  125:15,18 147:10
  147:13,25 148:9,22
  150:8

similarly 12:5
simply 18:14 25:9
  43:7 46:22 47:1
  52:11 62:22 80:21
sir 5:8 7:3 9:3 10:24
  12:16 13:18 14:4
  21:14 22:15 23:14
  25:14 30:6 31:7
  32:13 33:16 37:16
  54:13 56:5,24 61:17
  71:16 82:13 92:13
  153:20
sit 37:2,4 66:16 75:1
  127:1 129:17
sitting 11:23 20:22
  30:14 66:14 89:15
situation 41:24
six 16:20 17:13
sixth 116:11
skeptical 49:23
slightest 39:11
slightly 15:9
small 90:13 130:5
smyser 17:15
somebody 35:5
  42:21 71:17 82:23
  86:16 101:12 120:4
  135:4
somebody's 37:8
soon 146:16
sorry 14:7 17:23
  24:11 29:9,12 34:12
  38:5 42:17 53:24
  58:22 63:15,15
  67:11 69:25 76:16
  79:2,7 82:2 88:9
  98:8 100:3,21 102:3
  104:11,19 108:20
  110:5,5 112:4 120:7
  124:1,2,20 128:8
  129:15 130:17,25
  131:19 134:10,13
  137:20,20 143:1
  144:15 145:24
  150:19 151:25

155:23 158:9
sound 14:6 17:16
  164:5 of
sounds 67:23,24 1
source 114:23
  116:12 117:13
  118:13 143:19
southern 1:2 4:11
  10:12 34:13,25
  35:22 47:9
spare 121:20
speak 7:14 12:4
  15:13,18 16:20
  18:11,12,14 67:13
  67:14 105:22
speakerphone 2:19
speaking 17:11
  30:11 31:6 38:3
  53:8 59:22 93:21
  100:16 101:1,9
speaks 67:3
special 3:3,4 4:24,25
  5:8,13 7:3,13,18
  12:18 13:6,7,13
  22:24 28:9 37:1
  38:6,8,12 39:2
  40:15,18 42:1,16,18
  42:24 43:19 44:4,10
  44:22 45:2,7,12,20
  46:15 47:16,24 48:1
  48:22,25 49:21 50:5
  50:13,17 51:1,4,8
  51:12,17,22 52:1,5
  52:14,17,20 53:14
  53:19 54:20 55:4
  56:16 57:6,22,25
  58:9,21,23,25 59:4
  59:7,16 60:8,16
  61:9,14 63:18 67:2
  67:10 71:2,14,17
  72:7,16,21 73:24
  76:15,17,19,23
  77:14,20,23 78:3,6
  78:18 80:19,25 81:3
  81:16 88:9,12,19

90:14,17,20 91:13
  91:16,20 92:1,9,13
  92:18 93:4,8,10,14
  93:22 98:24 99:4,8
  99:14,22 100:21,24
  101:21 102:1,3,13
  104:19,25 105:4
  111:9,15 114:10,14
  116:24 118:6
  119:13,16,20 120:2
  120:18,22 121:2
  123:4,19 124:13,18
  124:24 125:3,7,11
  127:7,19 128:4,14
  128:18 131:11,21
  132:2,11 135:10,12
  136:21 138:7,16,20
  143:16 148:2,14,17
  148:24 149:14
  150:17,20 151:22
  152:25 154:6,23
  155:1,4,9,21,24
  157:3,7,10,19 158:7
  158:19
specific 34:24 36:19
  46:3,21 50:24 63:23
  109:22 112:21
  120:10 125:5
  135:22 147:22
specifically 13:21
  20:3 35:2 37:22
  50:15 51:2 55:10
  59:8 66:3 71:10
  73:12 80:11 94:7
  98:15 123:6 141:7
  148:20 156:5
specificity 29:9
  100:17
specifics 69:3
speculation 93:18
speed 94:2
spell 7:12,21
spelled 7:9
spend 13:17

spent 22:18 35:18
spoke 16:25 17:18
  35:15 67:22 86:16
  106:15
spoken 15:16 17:10
  18:22 30:7
ss 160:2
stamp 34:13
stamped 139:7
standard 130:14
  131:6,16 132:15,17
  132:20
standards 70:11
  116:18
start 5:15 19:6
  73:17 78:3 99:23
started 78:13,13
state 7:11,20 8:5,8
  8:11,13,19 16:7
  56:17 75:25 76:1
  93:16 116:25 160:1
  160:6
stated 74:12,21
  127:25
statement 49:22
  84:20 100:9
statements 12:4
  49:4 74:4 143:11
states 1:1 8:15 32:3
  32:3 42:20
status 9:16
statute 158:4
stay 34:12 35:1
  37:19 161:18
stephen 2:4
stepped 50:12
steven 1:10 4:10
  16:21,25 21:12 22:6
  23:8 32:21 34:10
  55:9 65:16 74:24
  82:14 96:4 98:17
  105:17,18 115:9
  126:7,9 129:8
  133:12 143:10,18
  145:25 146:24

149:21
stop  125:12
strategy  32:9 58:5
  58:14,17 59:18 60:4
  63:8,10,13 108:16
  134:17 135:7,20
stratus  21:11 23:14
  23:19,25 24:3,9
  26:10,16,19,20
  27:25 28:6,7,11
  54:5 56:13 57:11,18
  58:16 59:5,7,17,20
  68:21 75:25 76:4,9
  77:5 80:5 84:24,25
  86:13,17,25 88:25
  89:7 90:9 100:10,14
  101:5,7 109:18
  111:13 116:13
  117:15 118:21,24
  128:13 147:25
  148:9 157:24 162:6
stratus's  77:9 85:5
  85:13 95:19 100:17
  106:24 111:6 119:5
  132:25 147:9,14
  148:21 156:19,24
strawn  31:8 67:20
  68:25 70:5,15,24
  71:9
street  1:16 2:9,15,21
  4:7 19:15 160:23
strike  25:20 115:2
  151:15
string  161:16,22
  162:3,5,16 163:22
  163:23 164:3,5,6,9
strongly  36:8
struggling  63:12
stuff  41:13
sub  100:13 102:12
  116:14 130:13
subject  39:20,23
  40:3,20,24 46:4
  50:6 62:4,11,11
  68:20 69:2 74:6

91:6 121:24 126:8
  140:23 142:18
sublet  130:18
submit  100:11 101:6
  152:23
submitted  137:3,5
  138:24
subpoena  1:13 5:17
  14:2 16:16 17:14,24
  17:25 18:1,5 40:25
subpoenas  84:4
subscribed  159:22
subsection  134:6
subsequently  9:15
substance  14:18
  15:24 89:6 101:10
  108:23 111:10
  114:6 135:14 138:1
substantial  47:3
  54:6 56:14 57:18
substantive  18:20
  83:22 87:20 104:5
substitute  5:7
successfully  40:4,5
suffice  10:3 57:15
  106:19
sufficient  156:11,12
  156:23 157:14,22
sufficiently  137:14
suggest  23:21 24:16
  34:9 71:7
suggested  24:9
  70:23
suggests  122:16
  150:23 152:20
suite  1:17 2:10,16
  2:22 4:8 160:23
sum  114:6 136:12
  136:18
summary  100:15
  101:8 142:18
summoned  19:12
sunday  54:24
support  66:4,8
  74:14 84:2,4,8

111:23 114:23
  118:2
supposed  127:21
sure  9:23 12:25 13:1
  20:1 22:12 44:2
  54:8 55:11 58:8,10
  60:25 61:11 71:5
  76:1,3 80:21 82:6
  82:12 87:1 88:17
  90:12 97:11 105:5
  106:8 119:9 120:6
  128:9 131:23 132:6
  132:7 138:7 141:4
  141:13
surprise  151:8
surprised  25:12
  120:17 121:10
  129:15 139:4
  150:25
suspect  46:1 69:22
  110:7 123:10,11
suspicions  78:13
  104:4,14
sustain  77:16 88:15
  88:20
sustained  67:2
  128:19,22
sustaining  88:20
swear  4:16
sworn  5:11 159:22
  160:8

**t**

t  7:23,23
tab  20:9,11 24:13
  27:1 34:4 54:14
  61:1 65:7 68:1
  69:12,13 71:13
  80:15 86:9 95:22
  107:10 108:9 115:3
  121:16 125:24
  128:20 129:1
  132:23 139:2
  140:13 142:13
  151:25 153:3,19

tabs  20:8 111:25
  144:5
tactics  122:19
take  13:7 18:7 32:19
  37:13 41:20 43:22
  52:10 62:11,23,24
  73:8 77:20,23 78:19
  87:20 90:25 91:9
  142:20,20 151:10
takeaway  132:21
taken  1:15 11:14
  78:23 101:16
  160:10
takes  147:14
talk  15:24 18:8,17
  23:22 57:1 73:14
  103:25 105:16,17
talked  17:3 31:16
  36:6 75:13 83:11
  86:13 89:19 103:4
  125:3,6 149:6,8,8
talking  15:20 35:18
  59:19 63:1 74:24
  85:10 86:8 90:23
  111:2 132:19,20
  151:23
talks  62:1 84:12
  85:24 130:2
tasks  118:15
team  67:14 68:23
  69:1 76:2 89:12
  101:2,12,13 108:19
  111:6 116:10 118:1
  133:18 146:19
  147:19 148:21
  154:18
technical  53:7
teleconference
  104:23
telephone  69:6
  70:10 93:5,11 98:12
  103:14 119:7
telephoning  100:5
tell  21:6 25:9 26:13
  27:22 28:5 53:18

[tell - try]

65:18 67:5 69:17
72:5 73:18 80:21
92:4 96:17 99:18
100:5 123:15 135:6
135:20 142:21
154:16
**telling** 37:23 53:25
86:19 89:17 111:13
123:20 128:12
136:2
**ten** 11:12 99:1
**tenth** 140:11
**term** 32:15 63:13
**terms** 61:18
**terrifying** 124:9
**testified** 5:12 39:7
89:5 111:21
**testify** 6:5 18:1
160:8
**testifying** 42:22
**testimony** 10:17,21
12:11 38:21 39:15
39:16,20,21 41:4
43:1 47:14 49:15
64:2 66:25 67:17
92:3 99:24 127:21
159:4,5
**texas** 17:13,16
**thank** 5:8 7:3,7
17:20 34:15 40:11
45:12 51:7,12 55:3
55:4,5 73:1,2 77:1
78:20 79:10 102:5
114:16 119:18
125:23 136:23
150:21 155:4,5,5
158:6,19,20
**thanks** 144:20
**theme** 36:10
**thing** 123:10 149:7
155:20
**things** 14:13 18:9
26:17 35:25 37:22
53:6 76:11 93:13
95:16 149:2 158:12

**think** 5:13 8:16,21
14:17 16:6 18:18
19:13,15,16 28:2,3
28:7 39:5 41:2,8
44:4,5,22 45:4,5
46:25 50:5 51:4,5
52:2,3,5 54:8,10,24
64:13 67:16 70:1
75:8,18 76:15 81:16
82:25 83:6,9,9,16
85:15 87:13 89:5
90:21 92:20,25 93:2
93:3,17,18,19,25
96:8 97:16 98:5
101:14,15 102:9
103:1,9,22,22 110:5
134:1 137:12 148:2
158:3
**thinking** 66:11
75:21 86:20 107:4
133:14
**thinks** 106:11
**third** 61:22,23 75:23
85:2 89:23 91:18
136:11 146:15
147:10
**thought** 64:14 80:8
127:15 131:24
156:7
**thoughts** 63:3
134:18 135:7,21
**three** 16:2 37:17,18
37:21,25 48:10
103:5 134:7,138:15
155:8 158:16
**threshold** 40:8
**thumb** 21:5
**tier** 9:13
**tim** 27:7
**time** 4:13 12:3,5,22
15:6 16:11,24 19:5
19:7 21:2,8,17,21
22:9,14,15,16,18,19
22:20,22 23:1,13
25:14,18 27:25 29:1

31:13 35:15,15,18
41:1,4,19 43:12,15
46:15 50:21 52:10
53:10 62:3 69:9
70:9 71:8 74:13
83:2 88:4 97:13,15
97:19 98:10,11,12
99:5 103:13 105:6
108:14 109:6 115:1
117:10,23 120:20
124:23 125:9 131:3
132:6 135:1 136:5
138:6,9 152:14,16
154:7,23 155:1
160:10
**timely** 86:1
**times** 11:1 48:16
107:2
**tiny** 54:25
**titled** 162:23
**today** 4:5 5:16 7:6
10:8,17,22 11:21
15:12 16:18 17:9
18:1 25:14 30:14
35:24 37:2,4 38:17
66:14,16,19 73:10
75:1 127:1 132:8
156:3
**told** 19:19,24 35:25
36:10 38:1 40:2
41:8,9 53:4,9 56:12
56:21 57:11 64:6
74:13 76:7 77:3
80:4,11 84:7,22
85:3,12,16,18,21
86:4 89:24 94:7
98:6 111:5 122:25
127:4 135:23,24
137:13,15,22,25
138:2 149:11,12
**tomorrow** 114:4
**top** 20:2 24:18 25:7
27:5 63:2 65:11
66:19 88:2 96:10
100:9 113:11,19

145:1 151:20
**topic** 112:23 124:21
131:1,2,8,15
**topics** 18:14
**total** 39:4
**town** 78:9,16
**tph** 116:18
**transcript** 41:15
52:11 90:21,22 91:1
91:3 159:3 160:13
**transmitting** 48:6
**traveled** 84:15
**traveling** 5:6
**treat** 6:25
**treaty** 31:12
**treece** 2:23 4:19,20
5:14 10:10 12:10,12
20:15 27:6,16 28:15
36:3 38:11 44:9
50:11,14,19 51:2,7
51:20 52:3 54:18
58:20 92:11,14
117:3 144:20
151:19,20 152:1,20
153:14 161:15
164:8
**tremendous** 39:10
**trial** 47:2 137:3
**tried** 13:2 92:19
**triggers** 134:22
141:2,9
**trip** 107:17 141:17
141:19
**trouble** 7:15 52:7
**troubled** 94:15
95:13,14,17 158:18
**true** 23:5 31:2 47:24
48:1,2 57:19,20
79:4 81:18,22 85:8
93:14 118:23 159:4
160:13
**truth** 160:8
**truthful** 10:17,21
**try** 12:2 13:14 18:14
19:3 36:11 40:3

51:5 52:10,17,19
92:21 94:2 105:3
**trying**  51:24 77:24
86:18 93:23
**tuesday**  1:15
**turn**  39:23 68:1
69:24 71:12 80:15
86:9 95:22 121:15
125:24 132:23
140:13
**turned**  86:21
**turning**  81:15
**twice**  107:7
**two**  9:13,21 13:8
14:20 16:2 17:2,13
26:17 29:14 31:6
45:23 46:11 53:15
60:9 68:6 76:20
91:17,20,22 101:3,3
103:20 112:5
113:10 126:2 127:9
133:10 149:2
152:25 156:3
158:16
**type**  31:5,10 64:24
**types**  35:25
**typewritten**  160:12
**typically**  151:12

**u**

**u.s.**  4:11 124:12
**u.s.c.**  31:23 139:9
163:14
**ultimate**  116:12
**ultimately**  56:24
90:5 114:21,24
131:14
**unavailable**  47:2
**uncertain**  85:15
**unclear**  12:24
103:10 155:25
**uncomfortable**
26:19 78:14
**underlined**  89:24

**underlying**  6:3
**understand**  6:17
10:7 11:22,25 12:23
14:19 15:1 20:16
25:21 30:19 31:21
31:25 40:13,17
41:23 43:2,3,3
44:17 50:22 53:17
58:10 60:3 71:3,5
73:9,11 124:16
136:19,25 148:8
152:22 157:21
**understandable**
116:4
**understandably**
116:2
**understanding**  5:6
20:20 33:3,7,11
47:19 77:8,12,25
78:7 85:11 142:5
151:4
**understood**  38:19
45:11,12 46:14,20
75:22 76:10 77:6,19
85:7
**united**  1:1 32:2,3
**university**  8:25
**unknown**  47:23
**unsigned**  25:1
**untoward**  105:16
**upper**  87:6 96:2,3
103:2 109:2
**urging**  49:7,7
**use**  63:12 64:8 110:8
116:18 127:4,10,21
138:20
**uses**  25:5
**usually**  62:24 93:24
**utter**  46:10,10,12
51:13
**uttered**  102:15
132:5

**v**

**v**  68:21 161:17
162:5
**vaguely**  141:2
**vast**  137:5
**verbal**  11:24
**veritext**  4:5,16
**version**  82:10
**versus**  4:10
**veselka**  17:19 18:4
**vice**  8:19
**video**  2:4,6,7 91:2
99:9,10,12 116:22
**videographer**  3:5
4:3 78:21,25 79:7
79:10 138:8,10,15
158:22
**videotaped**  1:5,14
**view**  49:8 63:4
75:18 122:21
**viewed**  123:11,11
**violating**  93:20
**virtually**  138:1
**visualize**  107:8
**vouching**  48:6

**w**

**w**  2:23 4:19 164:13
**wait**  42:16 47:16
56:17 58:21,21,21
66:12 77:14,15
81:16,17,17,17
120:19 158:7
**waiting**  74:20 75:12
102:4 135:2
**waive**  41:24 42:2
**waived**  59:7 63:19
64:1 99:23 101:21
101:22,24 143:16
**waiver**  7:1 18:19
39:4,18,19,20 40:2
41:6,22 42:4,4
43:10,16 44:6,14
45:18 46:13,16,23
51:15 53:14 100:25

106:15 114:12
127:8 131:23
135:13
**waivers**  59:9
**walked**  117:1
**wall**  19:15
**want**  21:20 28:12
39:24 40:6,7 41:16
43:7,12,14 44:18
49:18 60:13 67:6
76:2 88:13 93:20
103:9 118:7
**wanted**  18:8,17
28:12 54:22 60:11
73:17 80:4,5 114:7
116:3 123:15
141:13
**wants**  141:3 143:22
**war**  64:18
**warning**  150:17,20
152:25
**way**  43:6 51:6 52:13
57:8 69:23 70:15
89:7,8,16 91:1
92:20 113:6 114:18
117:2 149:9
**we've**  76:20 99:8
138:10
**weeks**  17:14
**westfield**  2:16
**whatsoever**  35:11
**whereof**  160:18
**whichever**  41:16
**whoa**  81:17,17,18
**willing**  50:22
**winston**  31:8 67:20
68:24 70:4,15,24
71:9
**wisely**  138:20
**withdraw**  52:11
58:12 73:13 76:7
79:25 137:16
**withdrawal**  82:17
83:23 84:23

[withdrawing - york]

withdrawing 17:3
106:6
withdrawn 106:14
106:16 158:14
withdrew 57:9,13
73:19 75:16 83:2,9
149:13
withhold 42:22
witness 4:12,16 11:6
20:15 38:9,20,25
40:16,20,23 41:3,18
42:8 43:4 47:1,7,22
48:11 50:21,23
51:18 52:6 57:3
59:14 64:3 77:18
90:24 91:9 92:22
93:19 117:5 127:20
149:17 160:18
witnesses 42:12
84:15 85:4
woman 75:4
wonderful 64:17
woods 33:17 54:15
54:16 55:9 107:14
117:19 118:1 126:3
126:4,6 128:11
129:8 161:19 163:3
163:7
word 48:15 118:8
words 46:10 51:13
74:2 77:11 101:9,10
work 5:23 6:6,12
15:18 16:9,14 24:3
24:3 40:10 46:21
47:11,12 49:12,12
58:24 59:1,3,8
63:17 73:23 85:5
91:7,7 92:16 116:6
116:7 117:11,21
118:21,23 119:4,12
119:24 120:9,13
121:8 128:7 143:15
152:21,23
worked 14:20 23:8
23:12 71:8

working 19:18
99:15 100:10 101:5
135:5,19 138:3
works 9:23 164:7
write 22:19,25 93:11
97:19 111:7
writes 129:7 150:24
writing 37:7 89:25
90:6 94:10
writings 89:22
written 27:16 88:2
90:9
wrong 143:12 158:5
wrote 69:22 82:15
111:13 143:14

x

x 161:1

y

yaiguaje 21:11
161:17
yanza 30:1,4,12
yeah 14:7 25:2,2
28:1 34:20 62:24
71:23 75:17 76:24
89:1 94:14 104:22
114:12 138:10
years 9:4,10,21,22
11:4,12 15:17 16:2
122:17 158:12
yesterday 15:20
york 1:2 2:3,3 4:11
8:19 10:12 16:22
17:8,8 19:14 20:2
31:3 34:14 35:1,22
40:20 41:18 47:10
98:25 116:23 117:8