UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHEVRON CORPORATION,

          Plaintiff,

-against-                           11 Civ. 0691 (LAK)

STEVEN DONZIGER, et al.,

          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/28/13

## MEMORANDUM OPINION

Appearances:

    Randy M. Mastro
    Andrea E. Neuman
    William E. Thompson
    GIBSON, DUNN & CRUTCHER, LLP
    *Attorneys for Plaintiff*

    Julio C. Gomez
    GOMEZ, ATTORNEY AT LAW LLC
    *Attorney for Defendants Hugo Gerardo Camacho Naranjo
    and Javier Piaguaje Payaguaje*

LEWIS A. KAPLAN, *District Judge.*

        The LAP Representatives here seek to compel production of an undefined subset of the roughly 185,000 documents (out of a total production, according to movants, of over 6 million

2

pages[1]) with respect to which Chevron is said to have claimed work product protection, privilege, or both. They say that the documents with respect to which this motion is addressed fall into three categories although they have not specified exactly which documents are at issue.

1. *Surveillance Videos, Photos, and Documents.* The LAP Representatives complain that "Chevron refuses to produce virtually every document having to do with its many private investigators" and that "[t]hese documents are not protected to begin with."[2] In any case, they argue, Chevron waived any such protection by using certain surveillance videos and photos, and the LAP Representatives "have a substantial need for these materials."[3] Chevron, for its part, asserts that it has "produced thousands of documents gathered by its investigators, including all the documents Chevron intends to rely upon at trial."[4] It asserts work product protection and, it appears with respect to some documents, attorney-client privilege as to other "documents reflecting litigation strategy and legal advice."[5] It argues also that this scattershot attempt to overcome what it regards as protected material is inappropriate.

As an initial matter, the movants have not defined exactly what they are seeking, as

---

[1] DI 918 ¶ 11.

[2] DI 1193, at 1.

[3] *Id.*

[4] DI 1208, at 3.

[5] *Id.* at 2.

3

they have not defined what they mean by "document having to do with . . . private investigators."[6] As they say that "scores of video recordings, photographs, and other fruits of surveillance performed by investigators" are "[o]f particular importance" and confine their entire discussion of documents "having to do with . . . private investigators" to these materials and to documents "relating to [Chevron's] investigators' surveillance of lawyers, judges, and witnesses in Ecuador and the U.S.,"[7] the Court regards the motion as limited to those materials.

Second, it is important to bear in mind that the work product doctrine protects the confidentiality of documents and other materials prepared in anticipation of litigation except in limited circumstances. It rests in part on the premise that each party to a lawsuit should do its own work, including its own investigation of the facts, without intruding into and benefitting from the efforts of its adversary.[8] And it extends to work prepared by a private investigator in anticipation of litigation, at least where the investigator is working at the direction of an attorney.[9] Accordingly, in the absence of a more particular showing as to particular documents that the requisites of work product protection have not been made out by Chevron's privilege log – and there is none – the suggestion that none of the investigative materials have any protection to begin with fails. In

---

[6] DI 1208, at 1.

[7] *Id.* at 1-2.

[8] *See generally Hickman v. Taylor*, 329 U.S. 495 (1947).

[9] *E.g., Aboeid v. Saudi Arabian Airlines, Inc.*, No. CV–10–2518 (SJ)(VVP), 2012 WL 3637430, at *3 (E.D.N.Y. Aug. 22, 2012); *Gucci America, Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74 (S.D.N.Y. 2010); *Costabile v. County of Westchester*, 254 F.R.D. 160, 164 (S.D.N.Y. 2008); *United States v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007); *see also Pinkard v. Baldwin Richardson Foods Co.*, No. .09–CV–6308T, 2013 WL 1308713, at *7 (W.D.N.Y. Mar. 28, 2013).

particular, the suggestion that surveillance videos and photos taken by investigators in the context of a litigation such as this, and documents relating to such activities, "are not protected to begin with" is frivolous. They quite obviously are materials prepared in anticipation of litigation and therefore protected by Fed. R. Civ. P. 26(b)(3).[10]

Third, movants argue that Chevron has waived work product protection and privilege "by using its surveillance videos and photos."[11] But they have pointed to no specific use of any such videos and photos and suggested that they concern the same events as to which Chevron has claimed work product protection. Certainly they have provided no basis for concluding that any such use would have waived protection any more broadly than the protection enjoyed by the specific videos and photos that may have been used or, conceivably, other videos and photos dealing with the same subject matter. Accordingly, the waiver argument is baseless.

That leaves only the question whether movants have established substantial need for, and undue hardship in the absence of, any of these materials that would be discoverable upon such a showing.[12]

Movants attempt such a showing only with respect to "ordinary" work product

---

[10] *E.g., Marchello v. Chase Manhattan Auto Fin. Corp.,* 219 F.R.D. 217, 219 (D. Conn. 2004) ("surveillance tapes generally are considered work product"); *Harrington v. Atl. Sounding Co.,* No. CV–06–2900 (NG), 2011 WL 6945185, at *1 (E.D.N.Y. Dec. 30, 2011) ("the surveillance materials at issue here fall within the scope of word product").

[11] DI 1193, at 1.

[12] *See* FED. R. CIV. P. 26(b)(3)(A)(ii).

In view of the Court's conclusion that no such showing has been made, it is unnecessary to consider whether and to what extent any of this material constitutes "opinion" work product that is discoverable, if at all, only on a more demanding standard, or is protected by attorney-client privilege.

"documents relating to [Chevron's] investigators' surveillance of lawyers, judges, and witnesses in Ecuador and the U.S., including video- and audio-recordings and photographs, and any other documents demonstrating its investigators' involvement in securing the cooperation of witnesses such as Fernando Reyes."[13]  Their entire argument on this point is this:

> "Chevron charges that Judge Nicolas Zambrano received 'secret assistance' in writing the Lago Agrio Judgment. Its star witness, Alberto Guerra claims that Pablo Fajardo gave him a laptop with which to work on the Judgment, and that he traveled to Judge Zambrano's residence in Quito on multiple occasions to do his drafting. (Dkt. 746-03 at 6-7.) Knowing what we already do about the extent that Chevron's investigators 'tail lawyers (especially Fajardo) and key witnesses, including Judge Zambrano, in this case, it is virtually inconceivable that Chevron would not have observed at least some of these activities occurring, had they actually occurred. Any fact-finder assessing the plausibility of Chevron's 'ghostwriting' allegations must be made fully aware of the magnitude of Chevron's surveillance efforts—particularly the details of that surveillance during the period in which the Judgment would have been drafted.  In sum, Chevron must produce all documents relating to its investigators' surveillance of lawyers, judges, and witnesses in Ecuador and the U.S., including video- and audio-recordings and photographs, and any other documents demonstrating its investigators' involvement in securing the cooperation of witnesses such as Fernando Reyes, who Chevron's investigators apparently were tracking for quite some time."[14]

While this argument is largely baseless, one point – on certain factual assumptions that have not been made out, at least thus far – theoretically might have a grain of merit.

Movants' argument is best understood in the context of the declaration filed in this action by Alberto Guerra, a former Ecuadorian judge who at one point presided over the Ecuadorian lawsuit.  Guerra there claims that there were corrupt bargains between the LAPs and former Judge Zambrano in each of the two separate periods during which Zambrano presided over

---

[13] DI 1193, at 2.

[14] Id. at 1-2.

the Chevron case, which were October 2009 until March 12, 2010 and October 2010 through the entry of the judgment on February 14, 2011.[15] During the first period, Guerra asserts principally that (a) Zambrano told Guerra that he had reached an agreement with the LAPs to quickly move the case in the plaintiffs' favor, (b) Guerra then met with Fajardo, the LAPs' lawyer, in Quito where the two agreed that Guerra would write Zambrano's decisions and favor Chevron, and (c) Guerra later met in Quito with Fajardo, Donziger, and Yanza on which occasion Donziger thanked him for ghostwriting Zambrano's decisions and for "helping steer the case in favor of the Plaintiffs'."[16] During the second period, after former Judge Zambrano began presiding over the case for the second time, (a) Zambrano suggested that Guerra meet with the LAPs' representatives to work out a deal to fix the case, (b) Guerra then made such a proposal to Fajardo, subsequent to which (c) Guerra met with Fajardo, Yanza, and Donziger at a restaurant in Quito where they discussed the proposal, (d) Zambrano later told Guerra that he had spoken to Fajardo, who had agreed to the deal, and (e) Guerra had subsequent meetings with Zambrano both in Lago Agrio and in Quito in furtherance of the arrangement.[17]

Against this background, the suggestion is that Chevron presumably was surveilling Zambrano, Fajardo, Donziger, and Yanza constantly throughout these periods. On that assumption, the lack of any observations of meetings referred to in Guerra's declaration would be powerful evidence that Guerra's account is not credible. The Court therefore understands the

---

[15] As to the time periods, *see Chevron Corp. v. Donziger*, 11 Civ. 0691 (LAK), 2013 WL 1087236, at *6 n. 50 (S.D.N.Y. Mar. 15, 2013).

[16] DI 746, Ex. A, ¶¶ 11-20.

[17] *Id.* ¶¶ 21-25.

argument to be that there is substantial need of the surveillance information, absent which the LAP Representatives would suffer undue hardship, and that this is sufficient to overcome the work product protection accorded to records of any such surveillance.

This line of attack is subject to a most fundamental flaw. There is no evidence to support a conclusion that any, let alone all, of these individuals was under constant surveillance, or anything remotely approaching it, throughout either of these periods. That is critical because a failure of investigators to have observed the meetings alleged by Guerra would be meaningless if they were not conducting surveillance when the meetings allegedly occurred. Moreover, Guerra's declaration does not fix the dates of the alleged meetings. Hence, unless Chevron investigators were conducting physical surveillance of the relevant individuals during all or at least a very large part of the entire time periods in which Guerra says the meetings occurred, any evidence of the surveillance that did occur would be useless for the purpose of impeaching Guerra. Absent any impeachment value, there is no substantial need for the evidence and no undue hardship in their absence.

The difficulty, of course, is that the LAP Representatives – at least judging from the lack of evidence submitted in support of their argument – do not know whether and to what extent any such surveillance took place. Moreover, absent the showing of substantial need and undue hardship, they have no right to know. Nevertheless, Guerra will be a very important witness in this case. If his story is substantially accurate, it necessarily follows that the Ecuadorian judgment is the product of a corrupt bargain. In such circumstances, the Court will not ignore the possibility that sufficient surveillance took place to satisfy the LAP Representatives' burden. It therefore will conduct an *in camera* inspection of documents sufficient to show the dates and hours, if any, during which Chevron, its attorneys, or any contractors employed by Chevron or its attorneys, had any of

8

Messrs. Zambrano, Fajardo, Donziger, Yanza, and Guerra under physical surveillance in Ecuador during each of the two periods referred to above (*i.e.*, October 1, 2009 through March 12, 2010 and October 1, 2010 through February 14, 2011) and the general locations at which any such instances occurred. Upon review of those materials, which are to be submitted under seal on or before July 12, 2013, the Court will determine whether and to what extent movants have a substantial need for this category of "ordinary" work product absent which they would suffer undue hardship.

Two final points may be disposed of briefly.

First, movants claim that all of these materials should be produced because "[a]ny fact-finder assessing the plausibility of Chevron's 'ghostwriting' allegations must be made fully aware of the magnitude of Chevron's surveillance efforts—particularly the details of that surveillance during the period in which the Judgment would have been drafted."[18] But the fact that a fact-finder might be interested in, or even find persuasive, documents protected by work product is not a showing of substantial need or undue hardship. Moreover, the movants have access to whatever they need to address what they describe as "Chevron's 'ghost writing" allegations." They have access to former Judge Zambrano, whose declaration they submitted in opposition to Chevron's most recent partial summary judgment motion.[19] They certainly must know how portions of their internal work product found their way into the judgment of the Ecuadorian court. This argument falls well short of establishing either substantial need for nor undue hardship without this material.

Finally, movants' claim that they have a substantial need for "documents

---

[18] DI 1193, at 2.

[19] DI 973, DI 974 & Ex. 1.

demonstrating [Chevron's] investigators' involvement in securing the cooperation of . . . Fernando Reyes"[20] fails. Movants– since the filing of this motion – have taken Mr. Reyes' deposition. They have made no showing of either substantial need for or of undue hardship without materials concerning the manner by which Chevron obtained his cooperation.

        2.      *Materials Relating to Sampling and Testing Methodologies in Connection with Lago Agrio Litigation.* Movants claim that "Chevron is withholding non-privileged documents that will shed light on the sampling and testing methodologies it employed in connection with the Lago Agrio Litigation."[21] Their argument, however, seems to go to the question of relevancy, which is not the point, as the documents scheduled on the privilege log are said to be protected work product. Moreover, to whatever extent the issue is the propriety of the work product claims, it is impossible to determine without knowing exactly which documents movants claim are not protected and why. Finally, as Chevron points out, this Court repeatedly has held that "the work of Chevron's testifying experts in [the Lago Agrio Litigation] concerning the underlying environmental claims"[22] is "not relevant."[23]

---

[20] *Id.*

[21] DI 1193, at 2.

[22] DI 1208, at 1

[23] DI 1130; *see* 901, 902, 720, 679.

10

3. *Public Relations Documents.* Movants finally contend that they should be given access to "communications between PR firms and non-attorney Chevron employees," which they claim do not qualify as work product.[24]

As an initial matter, there is not the slightest reason why communications between Chevron employees and PR firms cannot qualify at least as ordinary work product. If a document is prepared in anticipation of litigation, it qualifies.[25] The questions that then matter are whether the document is responsive to a proper request and whether the showing necessary to overcome "ordinary" work product protection has been made.

The movants do not even seriously argue that the necessary showing has been made. They say only that the PR-related documents that Chevron already has produced[26] are "extraordinarily telling," that they "expose Chevron[] misrepresentations to this very Court," and that the documents withheld on work product ground are "especially critical in light of its apparent us [*sic*] of media tactics to 'flip witnesses.'"[27] But they give no hint as to what they have found to be extraordinarily telling. They specify no alleged misrepresentations exposed. And they offer no

---

[24] DI 1193, at 4.

[25] Movants' citation of this Court's opinion in *In re Chevron Corp.,* 749 F. Supp.2d 141, 165 n.142 (S.D.N.Y. 2010), for the proposition that "[a] media campaign is not a litigation strategy" is especially inapt. The phrase appears in a parenthetical description of another case, which the Court cited for the proposition that "the attorney-client privilege does not apply to communications with respect to many of the activities in which Donziger has engaged." *Id.* at 165. That, of course, is a very different matter than whether communications between corporate employees and a PR firm may constitute material prepared in anticipation of litigation.

[26] Chevron has represented that it has produced tens of thousands of documents from custodians in its Policy, Government and Public Affairs Group. DI 1208, at 2.

[27] DI 1193, at 4.

reason to suppose that any of these documents would even be helpful, let alone critical, in light of alleged use of the media to "flip witnesses." Movants have the same access to the media as everyone else and can see what appeared there. They are perfectly capable of examining and cross-examining allegedly "flipped" witnesses as to the reasons for any shifts in position. There has been no showing of substantial need or undue hardship.

For the foregoing reasons, the motion [DI 1193] is granted to the extent that Chevron shall make the production for *in camera* inspection described above. It is denied in all other respects.

SO ORDERED.

Dated:      June 28, 2013

_____
Lewis A. Kaplan
United States District Judge