UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

CHEVRON CORPORATION,                                :

                Plaintiff,                    :

          v.                                        :     11 Civ. 0691 (LAK)

STEVEN DONZIGER et al.,                          :

              Defendants.                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

**OPPOSITION TO CHEVRON'S MOTION TO COMPEL PATTON BOGGS TO
PRODUCE DOCUMENTS ON ITS PRIVILEGE LOGS**

This Court's March 15, 2013 Order ("Order") narrowed Chevron Corporation's subpoena to Patton Boggs LLP ("PB") to 19 specifications and required production of a privilege log in accordance with Local Civil Rule ("L.R.") 26.2 for assertions of opinion work product or attorney-client privilege.  PB complied and began producing logs and documents on a weekly basis on March 22, 2013.  Chevron did not object until days before PB's deadline.  PB substantially resolved Chevron's specified complaints save one—PB refused to voluntarily produce protected documents purportedly "furthering" the five categories in the Order and risk a broad subject matter waiver[1], but instead suggested a F.R.E. 502(d) order.[2]  Chevron prepared a 502(d) order focused on the five categories in the Order.[3]  What followed was a "negotiation" in which Chevron made the stipulation a moving target by continually changing positions, adding terms, and modifying or removing language *it* drafted.[4]  PB repeatedly acquiesced, but Chevron unilaterally declared an impasse and belatedly demanded that PB permit Chevron to review every document on PB's log—an unreasonable demand given PB's ongoing role as counsel.[5]

**PB's log descriptions comply with L.R. 26(a)(2)(A).**  PB's log entries satisfy the requirements of L.R. 26(a)(2)(A) by providing more than sufficient detail to establish the

---

[1] The Order directed PB to comply with L.R. 26 and log opinion work product and attorney-client privileged communications. Dkt. 905 at 72.

[2] *See* Exs. A-C. Chevron's first meet and confer letter objected to PB's log and production in general terms. *See* Ex. A. After several requests for detail, Chevron identified specific entries on PB's log and its objections on March 17. *See* Exs. B, C. In response, PB (1) produced communications with Donziger, Garr, and Woods identified by Chevron; (2) re-reviewed documents on its log and redacted opinion work product intertwined with ordinary work product; (3) produced or provided amended descriptions for 27 documents Chevron claimed had inadequate descriptions. Chevron admits PB produced several hundred documents as a result of these efforts. Dkt. 1259, n.1.

[3] If, as Chevron now claims, the proposed Rule 502(d) Order included only "narrow categories" (dkt. 1259 at 1-2), then Chevron has only itself to blame because it drafted the Order. *See* Ex. D.

[4] *See* Exs. A-R. PB did not insist that Chevron forego any future challenge before it saw the documents PB produced—the drafts of the stipulation expressly provided Chevron the ability to make essentially the same motion it is making now based on non-compliance with the stipulation. *See* Exs. D-K, N, O, Q. And the provision Chevron appears to now complain about was also drafted and agreed to by Chevron before it reversed course. *See* Exs. H, N. PB also did not categorically state that its log did not include any documents that could be deemed to "further" any of the five categories in the Order. *See* Ex. B. To the contrary, PB informed Chevron it was willing to produce numerous additional documents under a 502(d) order. *See* Exs. B, Q.

[5] *See* Exs. L, R. Chevron's conduct suggests it was "going through the motions" to force the Court to unnecessarily make crime-fraud rulings. *See, e.g., AIU Ins. Co. v. TIG Ins. Co.*, 2008 U.S. Dist. LEXIS 66370, 10 (S.D.N.Y. Aug. 28, 2008) (holding that "the meet-and-confer obligation requires . . . a genuine effort to resolve the dispute").

elements of the protection or privilege.[6]  Chevron makes no contrary argument.[7]  Chevron's

failure to meaningfully meet and confer regarding approximately 99% of the log entries it now

claims lack adequate descriptions is also fatal.[8]  Chevron identified just *27* log entries it claimed

lacked adequate descriptions.  *See* Ex. C.  Within days, PB provided amended descriptions for 13

of the documents and produced the rest.  Chevron neither commented on the amended entries nor

identified the more than 1,000 additional entries it now claims are "inadequate" until this motion.

**Chevron has not met its burden of establishing that the crime-fraud exception**

**applies.**  Chevron argues that the crime-fraud exception applies to documents on its log "relating

to" (1) communications with Ecuadorian attorneys, (2) communications with Donziger, (3) the

writing of the judgment, and (4) the Fajardo declaration.[9]  Dkt. 1259 at 1, 2.  Whether these

documents are "related to" one of the five categories specified in the Order is irrelevant—

Chevron must establish that these documents "further" one of the categories in the Order.[10]

Because Chevron fails to meet that burden, Chevron's request should be denied.[11]

First, "communications with" the Afectados' Ecuadorian counsel is not even one of the

crime-fraud categories delineated in the Order.[12]  Dkt. 905 at 66-67.  Chevron's demand for all

---

[6] PB's log entries include what L.R. 26.2 requires—the document type, author and recipients (and affiliations), date, subject matter, and the applicable protection or privilege.  What PB did not do, what it was not required to do, was provide so much information that it disclosed the privileged information it is duty-bound to protect.  *See, e.g., Gucci Am., Inc. v. Guess?, Inc.*, No. 09 Civ. 4373, 2010 WL 2720015 (S.D.N.Y. June 29, 2010); *Safeco Ins. Co. of Am. V. M.E.S., Inc.*, 289 F.R.D. 41, 47 (E.D.N.Y. 2011).

[7] Chevron appears to argue that PB must provide a description so detailed that Chevron can determine that it falls into one of the five categories in the Order.  Chevron cites no case to support this heightened standard.

[8] *See, e.g., Myers v. Andzel*, No. 06 Civ. 14420 (RWS), 2007 U.S. Dist. LEXIS 79157, 1-3 (S.D.N.Y. Oct. 11, 2007).

[9] Chevron's Exhibit A only identifies 136 documents falling into these four groups.  As to the remaining 197 documents, Chevron has failed to make any argument and, thus, cannot have met its burden.  *See, infra*, n.10

[10] *See, e.g., United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997).

[11] To the extent the Court is inclined to seriously entertain application of the crime-fraud exception on such a wide swath of documents even though Chevron has not remotely met its burden, the Court should, at a minimum, review the disputed documents *in camera* and provide PB an opportunity to be heard.

[12] To the extent Chevron now seeks to argue that these documents should themselves constitute a new category of documents potentially subject to the crime-fraud exception, it has made no argument to support such a finding and failed to meet its burden.  And Chevron has made no effort to establish that any of these "communications" could be deemed to "further" one of the five categories specified in the Order.

*opinion* work product "relating to" such communications misinterprets this Court's "substantial need" finding—a conclusion unrelated and immaterial to the Court's rulings relating to the crime-fraud exception. The Order required production of *fact* work product due to Chevron's perceived substantial need. Dkt. 905 at 59-61. The Court never required production of *opinion* work product and Chevron has provided no basis to do so now.[13]

Similarly, "documents reflecting communications with Donziger" is also not one of the Order's five crime-fraud categories. Chevron appears to acknowledge as much, arguing instead for a further extension of the "Donziger 1782 waiver" to reach documents such as PB attorneys' notes and internal communications relating to strategy discussions with co-counsel involving Donziger.[14] Chevron has not shown that Donziger testified in detail about the content of each of the confidential discussions associated with these particular documents without objection. Moreover, these notes and internal communications include co-counsel's strategy discussions intertwined with the mental impressions, opinions, and thought processes of PB attorneys. Chevron already received a bounty by obtaining testimony from Donziger and others about certain strategy discussions—it is not entitled to PB attorneys' opinion work product as well.[15]

Next, Chevron identifies 22 documents it claims "furthered" the alleged writing of the Judgment. The vast majority post-date the Judgment and their descriptions make clear that these documents involve analysis of and defense against Chevron's claims, such as communications

---

[13] Substantial need and undue hardship are not sufficient to warrant disclosure of opinion work product. *See, e.g.,* *Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981); *In re Grand Jury Proceedings*, 219 F.3d 175, 191 (2d Cir. 2000); *United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998).

[14] As Chevron acknowledges, PB produced direct communications with Donziger pre-dating July 2011 from its log identified by Chevron.

[15] Chevron has cited no case permitting such an expansive application of waiver to opinion work product. Chevron cannot establish that any disclosure through Donziger's testimony was selective or intended by the Afectados to derive some advantage such that fairness requires an even further disclosure of protected information. *See F.R.E. 502*, Advisory Committee's Note; *see also Seyler v. T-Systems N. Am., Inc.*, 771 F. Supp. 2d 284, 287-88 (S.D.N.Y. 2011); *Shinnecock Indian Nation v. Kempthorne*, 652 F. Supp. 2d 345 (E.D.N.Y. 2009). This action has already seen a tremendous erosion of work product protection that to extend a broad subject matter waiver to PB attorneys' notes due to Donziger's 1782 testimony would be an almost certain abuse of discretion.

with Smyser, Kaplan and Keker Van Nest relating to rebuttal expert opinions and attorney analyses of Chevron's allegations. *See* Dkt. 1259-1. Such after-the-fact attorney work product is not a "cover-up" as Chevron claims, but what counsel do to represent their clients. A contrary finding would eviscerate the privilege and leave Defendants' powerless to mount a defense.[16]

Finally, Chevron's claim that 99 entries on PB's log must be produced because they "relate to" the drafting and submission of the Fajardo declaration should also be denied. Again, Chevron misstates the narrow standard—it is not "relate to" but "in furtherance of." Approximately 55 of the 99 entries Chevron references post-date the submission of Fajardo declaration and have nothing to do with its contents.[17] *See* Dkt. 1259-1. Thus, Chevron cannot meet its burden as to these documents. As to the remainder, what Chevron neglects to inform the Court is that PB was (and remains) willing to produce these limited documents subject to a 502(d) order protecting against subject matter waiver. This Court should consider such a limited 502(d) order as to these documents before unnecessarily applying the crime-fraud exception.[18]

---

[16] Nor has Chevron established that the seven documents it has identified that pre-date the Judgment and involve discovery in the Stratus 1782 action were intended to further the alleged Judgment writing. Chevron represented to the District of Colorado that its application was narrowly tailored to obtain documents relating to the Cabrera Report. *See, e.g.*, *In re Chevron*, 10-cv-00047-JLK, Dkt.2 at 3 (D. Colo. Dec. 18, 2009). Documents evidencing Stratus' assistance with the Alegato Final did not relate to the Cabrera Report, but were nevertheless within Stratus' intended production. It is neither surprising nor untoward for counsel to attempt to prevent their clients' litigation adversary from obtaining such non-responsive work product from their clients' consulting expert. Chevron also argues that PB must produce Priv Log Ids. 2270-2273 (which are not even listed on Chevron's Exhibit A) containing PB attorneys' summary and discussion of the Judgment because these documents *could* reveal or acknowledge the alleged writing of the Judgment. Dkt. 1259 at 2. In truth, PB informed Chevron that PB's summaries and analyses of the Judgment do not in fact include what Chevron speculates they *could* include and did not "further" the writing of the Judgment. Chevron's hypotheticals, without evidence, fail to meet its burden to establish that the crime-fraud exception applies to these documents.

[17] These emails relate to Chevron's complaint, made first on May 6, 2010, that the Fajardo declaration did not expressly state that the declaration had been read and explained to him in Spanish. PB produced nearly all of these emails with opinion work product redacted. Unredacted portions of these emails confirm that the declaration was read to and translated for Fajardo before he signed it. The redactions predominantly reflect counsels' legal research relating to Chevron's allegation and their discussions in light of the research. Ultimately, Fajardo executed a translation of the declaration in Spanish, as well as a declaration stating that the original English version had been read and translated to him before signing. None of these post-submission emails even relate to, let alone "furthered" the content of the declaration.

[18] Entry of an overbroad "free look" 502(d) order providing Chevron with access to the entirety of PB's logged documents, however, is not only unwarranted, but would greatly prejudice both PB and its clients.

Dated:  July 1, 2013

                       _s/ *James K. Leader*_____
                       James K. Leader, Esq.
                       S. Alyssa Young, Esq.
                       LEADER & BERKON LLP
                       630 Third Avenue
                       New York, New York 10017
                       Telephone:  (212) 486-2400
                       Facsimile:  (212) 486-3099

                       *Counsel for Non-Party Patton Boggs LLP*