UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
CHEVRON CORPORATION,

                        Plaintiff,

        -against-                                                  11 Civ. 0691 (LAK)

STEVEN DONZIGER, et al.,

                        Defendants.
------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/10/13

## ORDER
### (Corrected)

LEWIS A. KAPLAN, *District Judge.*

        On March 1, 2013, the Court granted Chevron's motion to appoint a special master to oversee the anticipated 42 depositions of party and non-party witnesses to the extent of indicating that it would appoint one or more special masters to preside over and oversee the depositions, finding that such appointments were "essential if the matter is to proceed fairly and properly" for reasons set forth in the order. The order provided that the fees and expenses were to be advanced 50 percent by Chevron and 50 percent by the defendants (other than the Stratus defendants), jointly and severally, subject to an ultimate allocation to the parties pursuant to Rule 53(g)(3). DI 865. On March 26, 2013, the Court appointed Max Gitter, Esq., and former U.S. Magistrate Judge Theodore H. Katz as special masters. DI 942.

        The defendants objected to the appointment of special masters from the outset, claiming among other things that they could not afford to advance or pay their share of the cost. The Court overruled that objection on the March 1, 2013 order, pointing out that the claim was entirely unsubstantiated. Nevertheless, immediately upon appointment of the special masters, the defendants – without providing any evidence of inability as opposed to unwillingness to pay – made abundantly clear that they would not comply with the Court's order to advance their share of the costs, subject to an allocation pursuant to Rule 53(g)(3) later in the litigation.

        The special masters have performed yeoman service, presiding at some depositions, overseeing others without being physically present, ruling on numerous objections including the anticipated objections on the grounds of alleged privilege and work product protection, and resolving an astonishing number of disputes concerning the scheduling depositions. Former Magistrate Judge Katz presided at depositions conducted in Lima, Peru, to accommodate defendants' desire that certain witnesses not be compelled to travel to the United States, among other considerations. Moreover, it is abundantly clear now, as it was when the special masters were appointed, that their appointment was

2

necessitated by the exceptional conditions of this case, referred to in the March 1, 2013 order, and that the special masters were needed to address pretrial matters that could not be effectively and timely addressed by an available district judge or magistrate judge of the district. Nevertheless, defendants repeatedly insisted that they would not advance their share of the fees and expenses of the special masters. They continued to claim inability to do so (DI 1204), but continued also to fail to provide any evidence to support that contention.

After considering the parties' responses to the request for instructions, the Court rules as follows:

1. Chevron shall advance all of the fees and expenses of the special masters as billed subject to a determination at the conclusion of their services (or, with leave of the Court, earlier) of any objections it may have to the reasonableness of their charges.

2. Within 14 days after the later of the submission of the special masters' final billings, Chevron may move, pursuant to Fed. R. Civ. P. 53(g)(3), for an allocation of part of the fees and costs advanced by it to one or more of the defendants and may object to the reasonableness of any fees and costs charged. The motion shall include all bills and substantiation provided to Chevron by the special masters. Defendants shall file any objections to Chevron's motion and to the reasonableness of any charges within 14 days of its service.

The Court has considered the parties' responses to the request for instructions in making this determination. Two points warrant particular note.

First, the defendants once again assert that they are unable to pay any of the cost and, indeed, now contend for the first time that they have submitted "sworn statements attesting to a lack of funds to support the defense of this case," citing DI 822, DI 1111, DI 1114. The suggestion that they have submitted competent evidence of inability to pay is inaccurate. DI 822 is not a sworn statement at all but simply a memorandum containing conclusory unsworn assertions. While DI 1114 is a declaration by the LAP Representatives' former counsel, it merely confirmed that the LAP Representatives had not paid their U.S. lawyers for some time and had instead informed the lawyers that the LAP Representatives and "their representatives in Ecuador have been unable to raise sufficient funds to meet their contractual obligations" to their counsel. This hearsay statement, along with the failure to provide any sworn statements from the LAP Representatives or their Ecuadorian counsel themselves or any other evidence of the financial circumstances of the Ecuadorian plaintiffs and their allies, is insufficient to establish that the failure of the LAP Representatives to pay all of the bills of their former counsel in this action reflects anything other than a decision to focus their resources elsewhere and plead poverty here.[1] And while DI 1110 is a declaration by Mr. Donziger's former counsel, it stated only that Mr. Donziger had not kept current in fee payments since September 2012

---

[1] Indeed, the LAP Representatives' lead Ecuadorian lawyer confirmed in a statement released before their U.S. counsel withdrew that they were "scaling back in New York to focus on the main issue: enforcing the $19 billion judgment around the world . . . The New York case is a distraction, a sideshow aimed at exhausting our resources." Stavers Decl. [DI 1140], Ex. 3728.

and that counsel was "unaware of any current prospect for receiving" the overdue payments or for being paid any substantial sums going forward and made a vague allusion to what was described as Mr. Donziger's "funding limitations." But there was no contention that counsel had personal knowledge of anything relevant to this point save that he had not been paid, which is as consistent with unwillingness as with inability to pay. There was no disclosure of any details of Mr. Donziger's financial situation and no discussion of the millions of dollars raised by the defendants to fund this and other litigation with Chevron. Moreover, the Court repeatedly has made quite clear to Mr. Donziger and the other defendants that it is perfectly willing to consider competent evidence on these points. But they have failed to submit any. In any case, the Court is obliged by Rule 53(g)(3) to consider among other factors "the parties' means" in allocating payment obligations later in the litigation. It will do so if, as and when (a) Chevron seeks an order requiring that all or part of the cost it now will advance be allocated to the defendants, and (b) defendants again seek to place their means in issue.

Second, defendants complain that they are entitled to know the amount of the costs that may be imposed upon them. And so they shall – at such point as Chevron seeks an order requiring them to pay all or part of the costs it will advance pursuant to this order. But by requiring Chevron to advance all of the costs for the time being and deferring until a much later point any litigation concerning the allocation of any of those advances to the defendants, the need to know has been deferred as well.

SO ORDERED.

Dated:      July 9, 2013
Corrected:  July 10, 2013

_____
Lewis A. Kaplan
United States District Judge