UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

                    Plaintiff,

-against-                                  11 Civ. 0691 (LAK)

STEVEN DONZIGER, et al.,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

        An Ecuadorian court in Lago Agrio, Ecuador, in 2011 entered an $18.2 billion judgment (the "Judgment") against Chevron Corporation ("Chevron") in an action brought by 47 individuals referred to as the Lago Agrio Plaintiffs (the "LAPs"), and others. Chevron brought this action on February 1, 2011 against the LAPs, their lead U.S. attorney, Steven Donziger and his law offices (the "Donziger Defendants"[1]), and others involved in the Lago Agrio Litigation. It claims among other things that the Judgment was obtained by fraud and that it is a central part in a pattern of violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") that has included extortion, fraud, money laundering, and obstruction of justice, among other offenses. Two of the LAPs (the "LAP Representatives") have answered and are defending; the other LAPs and Ecuadorian defendants have defaulted.

        The matter now is before the Court on the Donziger Defendant's motion for a three

---

[1] The Donziger Defendants are Steven Donziger and his law firm, variously referred to as the Law Offices of Steven Donziger and Donziger & Associates, PLLC.

month stay of proceedings or for alternative relief. Mr. Donziger – who, since the withdrawal on May 17 of his former counsel of record, the Keker firm, is representing himself and his personal law firms, allegedly alone – contends that he needs such relief in order to find new counsel or to prepare to try the case himself.

*Discussion*

*Three Month Stay*

In ordinary circumstances, some delay to permit a litigant whose counsel suddenly had withdrawn to secure new counsel usually would be granted. But the withdrawal of the Keker firm was not sudden, and there is nothing ordinary about these circumstances. Several points need to be considered in that regard.

*The Alleged Need for a Stay to Find Other Counsel*

*The Representations By Withdrawing Counsel and Mr. Donziger's Initial Position*

First, the Keker firm and counsel for their co-defendants, Smyser, Kaplan & Veselka ("SKV"), obtained leave to withdraw on express representations that their withdrawal would not materially affect the schedule in this case.[2] The Donziger Defendants, of course, are bound by the

---

[2] Keker swore that "Donziger is prepared to represent himself and his law firms in this matter" and that "[w]ithdrawing at this stage of the litigation would not unduly disrupt the existing schedule." DI 1101, at 10, 9.

SKV represented that (1) the LAP Representatives "will continue to be represented in the case by Mr. Julio Gomez, who was their attorney before they hired SKV and who has continued to represent them during SKV's and Mr. Smyser's tenure as attorney-in-charge," (2) "[t]he case is set on the trial docket . . . more than five months after the date of this motion" and is not "on the verge of being tried," and (3) "[t]he withdrawal . . . will not prejudice any of the parties . . . nor will it adversely affect the scheduling order." DI 1102,

3

Keker firm's representations in any case.³ But it is noteworthy that neither the Donziger Defendants nor the LAP Representatives opposed the withdrawals nor disputed their attorneys' representations that they were prepared to go forward on the existing schedule – with Mr. Donziger acting as counsel for himself and his law firms and Mr. Gomez acting for the LAP Representatives. In reliance on these representations, the Court granted leave to withdraw on May 17, 2013.⁴

Following the withdrawal of the Keker firm, Mr. Donziger adhered for several days to the position the Keker firm had taken. Indeed, this request for a three-month stay is a radical shift in position by Mr. Donziger.

On May 17, 2013, immediately following the Keker firm's withdrawal, Mr. Gomez – on behalf of the Donziger Defendants and the LAP Representatives – "propose[d] that Chevron agree to a modification and a reasonable extension of the deposition schedule *into the month of June* in order to permit the [remaining depositions] to be conducted in a reasonable manner in accordance with everyone's schedule."⁵ There was no mention of any three month stay. Two days later, Mr. "Donziger request[ed] [that the special masters order] a two-week hiatus from all depositions and any meet and confers, to provide him adequate time to prepare for the remaining depositions; in

---

at 7.

3

See, e.g., Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 396-97 (1993) (party could not avoid "the consequences of the acts or omissions of [its] freely selected agent" as "[a]ny other notion would be wholly inconsistent with our system of representatives litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged to the attorney") (internal quotation omitted)..

4

DI 1164.

5

DI 1183, at 2 (emphasis supplied).

effect, a two-week stay of this case."[6] And he followed that up with a motion, on May 20, 2013, for "[a] two week delay of all depositions, 'meet and confer' discussions, and other deadlines (*while maintaining the current trial schedule*), to allow for an orderly transition period."[7] There was no mention of any substantial stay. Moreover, while the special masters directed that depositions previously scheduled for May 21-24 go forward, the Donziger Defendants ultimately obtained a four week extension of the period for completion of the remaining depositions, and gaps were built into the schedule. In other words, Mr. Donziger got substantially what he asked for.

There is no evidence of any change of circumstances since Mr. Donziger made clear, after the withdrawal of the Keker firm, that what he wanted was merely a two-week hiatus in the deposition schedule – which in substantial measure he received.

*Donziger Already Has Had Months in Which to Find Other Counsel*

The Keker firm was permitted to withdraw because, it said, it was no longer being paid. And the Court was persuaded that the non-payment was a deliberate breach of the clients' obligation to pay. Nor was there anything sudden about the non-payment. Keker's bills had not been paid currently at least since September 2012.[8] The Keker firm began complaining publicly at least as early as March that the Donziger Defendants could not afford to participate in all of the

---

[6] *Id.* at 3.

[7] DI 1168 (emphasis added).

[8] Keker Decl. [DI 1111] ¶ 9.

depositions in this case.[9] And there were discussions between Mr. Donziger and the Keker firm for some time before the firm's withdrawal motion actually was made on May 3, 2013 about the possibility of the firm seeking to withdraw unless the bills were paid.[10]

Given those discussions and statements, as well as the arrearages that had been mounting for eight months before the Keker firm actually moved to withdraw, Mr. Donziger knew that the Keker firm's withdrawal was possible and, no doubt, increasingly likely. He had ample time in which to find substitute counsel before the Keker firm sought to withdraw and has had six weeks in which to do so since it filed the motion.

*Financial Resources*

To whatever extent Mr. Donziger is understood as suggesting a lack of resources with which to re-retain the Keker firm[11] or to find substitute counsel, the facts warrant careful scrutiny.

As an initial matter, Mr. Donziger – despite repeated invitations to do so[12] – has

---

[9] Tr., Mar. 5, 2013, at 4:13-16.

[10] Keker Decl. [DI 1101] ¶ 9 ("Since September 2012, Keker & Van Nest has had an outstanding receivable from Donziger . . . . [T]his is despite the fact that Keker & Van Nest has made numerous attempts to obtain payments from Donziger, and has made clear to Donziger that his failure to make the requested payment could result in the firm making a motion to withdraw as attorney to him in this case.").

[11] The Keker firm has held open the possibility that it will seek to return to try this case if new financial arrangements are made. Keker Decl. (DI 1101) ¶ 14 (Donziger " will represent himself and his law firms during the remainder of the pretrial stage of this case, with the hopes of either securing new outside counsel *or re-engaging our firm to participate in the October trial*.") (emphasis added).

[12] *E.g.*, Tr., May 23, 2013, at 13:25-14:6; DI 1185, at 3 ("The Court . . . is willing to consider [Mr. Donziger's] concerns in the event a well supported motion is filed.").

offered no competent evidence of his financial situation. It is unclear whether he has money to pay counsel but chooses not to spend it, or whether he in fact does not have any. Moreover, this uncertainty leads to another.

Under the terms of their agreement, the LAPs are obliged to pay for Mr. Donziger's defense in this action.[13] They did so – presumably from funds raised from investors in the lawsuit that Mr. Donziger and Mr. Tyrell of Patton Boggs control[14] – apparently until Mr. Donziger stopped paying his lawyers. There is no evidence that Mr. Donziger or, if someone else now controls the money, that person or persons, has not simply decided to stop spending the LAPs' investor money and other resources to defend Mr. Donziger in this case – whether because he or they prefer to spend the money elsewhere, because the Donziger Defendants wish to portray Mr. Donziger as an impoverished individual fighting Chevron, or for some combination of these and perhaps other reasons. Nor is there any evidence that Mr. Donziger has taken any steps to enforce his contractual right to have the LAPs pay for his defense here.

To be sure, Mr. Donziger and the LAP Representatives have claimed that the LAPs are out of money. But they have provided no sworn statements, at least from anyone with personal knowledge, let alone other evidence, to support that assertion. To the contrary, the record establishes that have they raised millions of dollars in exchange for shares of any recovery on the

---

[13]   Hendricks Decl. [DI 355] Ex. 1122 (Donziger retention agreement), § 9, at 8 ("In the event that any person or entity . . . brings a legal action against the Firm [Donziger & Associates, PLLC] or any attorney thereof relating to the Firm's or such attorney's representation of the [Ecuadorian] Plaintiffs . . . the Plaintiffs shall make available to the Firm and/or each such attorney the funds necessary to pay the reasonable costs of defending against such Individual Action (the 'Defense Funds'). The Defense Funds shall be paid out of and to the extent of the monies then available to fund the general expenses of the case.")

[14]   *See, e.g.*, 11 Civ. 3718, DI 44-9 (Treca Funding Agreement), at 2.

Judgment and supplemented that cash by obtaining legal services through contingent fee arrangements with lawyers. They have stated publicly that they have decided to spend their resources elsewhere because they regard this case as a "sideshow."[15] Moreover, the fact that the LAPs currently are represented by counsel and litigating aggressively in Ecuador, Canada, Argentina, and Brazil as well as the Second Circuit suggests that they are not without funds. If those who control the money – and as far as the record discloses, they include Mr. Donziger – choose to spend it elsewhere or to regard this case as an unimportant sideshow, that is their prerogative. But they are not entitled to delay this case on the basis of that self serving decision.

Nor is a delay likely to result in any change in Mr. Donziger's circumstances. Mr. Keker asserted the following in support of his motion to withdraw as counsel for the Donziger Defendants:

> "I am unaware of any current prospect for recovering this outstanding receivable of over one million dollars, including for work presently being conducted, nor for receiving substantial payment of any future fees and costs that would be incurred if Keker & Van Nest were to continue on as counsel.
>
> * * *
>
> "I have discussed the motion to withdraw with Mr. Donziger. *He does not at this time have substitute counsel and, given his [alleged] funding limitations, is not optimistic about being able to engage substitute counsel.*"[16]

Mr. Donziger has offered no reason to be any more optimistic now about his ability to engage substitute counsel if they were given a three month stay than he was when he discussed the motion

---

[15] DI 1141, Ex. 3728 (Mr. Fajardo, the LAPs' lead Ecuadorian counsel, stated recently that "we are scaling back in New York to focus on the main issue: enforcing the $19 billion judgment around the world . . . . The New York case is a distraction, a sideshow aimed at exhausting our resources.").

[16] Keker Decl. [DI 1102], ¶¶ 11, 14 (emphasis added).

8

to withdraw with Mr. Keker.

Finally, it bears mention that Mr. Donziger has a contingent fee agreement with the LAPs which entitles him to 31.5 percent of the total contingency fee recovered on the Judgment, which is 20 percent of any total collections.[17] Thus, he would stand to receive over $1 billion if the Judgment were collected in its entirety. That, at least in theory, is a monetizable asset. Indeed, the LAPs concededly have raised some millions of dollars from investors in exchange for contingent interests in any recovery they may realize. If Mr. Donziger has failed to find counsel willing to represent him on a contingent fee basis, perhaps it is because his prospects of success are not viewed favorably by others, perhaps it is attributable to his driving too hard a bargain, or perhaps it is a result of some combination of these and other factors.[18] Mr. Donziger has offered no evidence suggesting that a delay of three months would alter this situation.

In the last analysis, Mr. Donziger did not obtain substitute counsel in the months during which he knew that the Keker firm was increasingly likely to withdraw if it were not paid. He has not done so in the weeks since Keker moved to withdraw. And there is reason to believe that there would not be much likelihood that he would succeed in doing so even if he were given the three month stay he asks. Moreover, it would be an utter abuse if Mr. Donziger's alleged plight in fact is a contrived refusal by those controlling the LAPs' funds (who appear to include Mr. Donziger) to decline to spend those funds for the defense of this action in order to obtain a tactical

---

[17] Hendricks Decl. [DI 355] Ex. 1122 (Donziger retention agreement), at 3.

[18] The suggestion that prospective counsel have been scared off because Chevron has sued lawyers in this case (DI 1211, at 3) is risible. Chevron has sued no lawyers in this case save PB and it did that only after PB brought three separate actions, in its individual capacity, against Chevron or its attorneys.

advantage, a subject to which the Court will turn below after dealing with the claim that Mr. Donziger needs three more months – in addition to the three that already lie before him before trial begins – to prepare.

*The Alleged Need for Additional Preparation Time*

There is not sufficient reason to stay the matter for three months to afford Donziger more time to prepare for trial.

First, as noted above, the withdrawing lawyers represented to the Court that their clients, including the Donziger Defendants, were prepared to go forward on at least substantially the existing schedule. Neither the Donziger Defendants nor the LAP Representatives dissented from those representations. Indeed, in the days after the Court granted leave to withdraw, they adhered to that position and to the October 15 trial date. Only more recently has Mr. Donziger suddenly and radically changed his position.

Second, and quite apart from the fact that counsel and the litigants should be held to their representations to the Court, the Donziger Defendants have not persuaded the Court that the three-month stay they seek is necessary or appropriate.

As an initial matter, Mr. Donziger has at least two quite considerable advantages that are not enjoyed by his adversary notwithstanding Chevron's superior resources.

- He has lived the facts that are at the heart of this lawsuit in real time for two decades.
- He has access to the LAPs' Ecuadorian lawyers and their documents but have failed to produce either for deposition or inspection in this action.

Thus, he knows or readily can find out exactly what happened at every stage of this long saga. His

10

adversary, on the other hand, must attempt to piece much of the story together through discovery and investigation. Moreover, it must do so without access to key Ecuadorian witnesses and documents, as the defendants have not complied with a Court order compelling production of responsive documents from the defendants' Ecuadorian lawyers and allies. Nor have they made available for deposition many of the key Ecuadorian witnesses, some of whom are defendants in this action.

Given the intense litigation of this action, the Count Nine Action,[19] the Section 1782 proceedings, and the case in Ecuador – and especially Chevron's preliminary injunction motion and its two partial summary judgment motions in this case – Mr. Donziger knows Chevron's case to an unusual degree. He will gain even greater knowledge when Chevron identifies its witnesses and exhibits by July 30, 2013, as required by the current schedule.

Nor is there so much left to do other than prepare for the October 15 trial. The depositions have been completed. Document production was completed months ago subject to the resolution of a small number of disputes relating to the completeness of production by the defendants and the LAPs' counsel, Patton Boggs, LLP ("PB"). While there may be some additional motion practice, that would only be normal in the context of any substantial case.

In addition, Mr. Donziger is not David facing Goliath alone, notwithstanding his attempt so to portray himself. His co-defendants, the LAP Representatives, are said to be liable here only or primarily on a vicarious liability theory based on alleged misconduct by Mr. Donziger and the Ecuadorian counsel and allies whom Mr. Donziger has supervised and, at least in part, paid. It

---

[19]   The Count Nine Action, 11 Civ. 3718, was created by the severance of count nine of the complaint in this action, which sought a declaration that the Judgment was neither recognizable nor enforceable.

is very much in their interests to defend Mr. Donziger. The LAP Representatives' defense is being substantially assisted by PB, a firm of hundreds of lawyers with professional standing comparable to that of Chevron's counsel. Moreover, both the Donziger Defendants and the LAP Representatives have enjoyed at least some services rendered by their former counsel of record, the Keker and Smyser firms, even after those firms withdrew.[20]

Thus, Mr. Donziger has approximately three months in which to prepare for trial. This Court sees no reason why – with his extensive personal knowledge of the facts and the evidence, his clear understanding of the nature of Chevron's case against him and the theories upon which it rests, and the assistance available to him from his LAP clients and their counsel – he can not be as ready to try this case on October 15 as he would be a month or three months later.

*A Tactical Ploy?*

The Court denies the motion for a three month stay purely on the basis of what has been said already. But it is relevant to note also that Chevron contends that the withdrawal of the Keker and SKV firms and the Donziger Defendants' claims of lack of resources, need for more time, and the like have been carefully orchestrated, that they rest on at least some factual premises that are untrue, and that all are designed to gain public relations and tactical advantages in the battle relating to the Judgment, which includes far more than this lawsuit. In view of the grounds upon which this application is decided, the Court need not address the substance of that contention.

---

[20] In addition, Mr. Donziger has retained attorney Aaron Marr Page, who has worked with him previously, "to assist [him] with [his] defense" following the Keker firm's withdrawal. DI 1206, Ex. 1, at 3. Mr. Page has participated in conference calls with Chevron (although he refused to disclose his identity), DI 1206-1 (Ex. 1), and appeared on Donziger's behalf at a deposition (DI 1187 [Stavers Decl] Ex. 2 (Kroll Dep. Tr.)).

*Alternative Relief*

The Donziger Defendants' motion sought various forms of alternative relief in the event the three month stay were denied. The Court previously denied that alternative relief to the extent that it was sought pending the decision on this motion.[21] It now denies it for the same reasons.

*Conclusion*

For the foregoing reasons, the Donziger Defendants' motion for a stay of proceedings in this case or, alternatively, other relief [DI 1211] is denied in all respects.

SO ORDERED.

Dated:   July 16, 2013

_____
Lewis A. Kaplan
United States District Judge

---

[21] DI 1268.