UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHEVRON CORPORATION,

                   Plaintiff,

        -against-                                 11 Civ. 0691 (LAK)

STEVEN DONZIGER, et al.,

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

                   Randy M. Mastro
                   Andrea E. Neuman
                   Scott A. Edelman
                   William E. Thompson
                   GIBSON, DUNN & CRUTCHER, LLP
                   *Attorneys for Plaintiff*

                   Steven R. Donziger
                   DONZIGER & ASSOCIATES
                   *Attorney for the Donziger Defendants*

LEWIS A. KAPLAN, *District Judge.*

Defendants Steven Donziger, The Law Offices of Steven R. Donziger, and Donziger & Associates, PLLC (the "Donziger Defendants") have filed counterclaims against plaintiff Chevron Corporation ("Chevron") for attempted extortion and fraud.  Chevron moves to dismiss for failure to state a claim upon which relief may be granted.

In a report and recommendation dated April 15, 2013,[1] Magistrate Judge James C. Francis IV recommended that the motion be granted.  He concluded that the attempted extortion claim is governed by New York law and that New York recognizes no such cause of action.  He recommended dismissal of the fraud claim on the ground that the Donziger Defendants have not sufficiently alleged reasonable reliance or a misrepresentation or omission of material fact. The Donziger Defendants object.

*Attempted Extortion*

As for the first point, the parties agree that either New York or California substantive law controls with respect to the availability of a cause of action for attempted extortion.   Chevron contends that it is New York law; the Donziger Defendants that it is the law of California.

Magistrate Judge Francis plainly is correct as to New York substantive law, assuming that New York law controls.   But there is no need to engage in a choice of law analysis unless the substantive law of California is different.

The California Supreme Court has not yet determined the issue.  But there are intermediate California appellate court decisions on the point which indicate that no such cause of

---

[1] DI 1025 ("R&R").

2

action is available under California law.[2]

"In determining California law, this Court is obliged to follow the judgment of a California intermediate appellate court '"unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."'" *In re Lehman Bros. Secur. & ERISA Litig.,* 903 F. Supp.2d 152, 194 (S.D.N.Y. 2012) (quoting *Comm'r of Internal Rev. v. Estate of Bosch,* 387 U.S. 456, 465(1967) (judgment of intermediate appellate state court "'is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'") (in turn quoting *West v. Am. Tel. & Tel. Co.,* 311 U.S. 223, 237 (1940))*; see also West v. AT&T,* 311 U.S. 223, 236 (1940) (federal court sitting in diversity "is not free to reject the state rule merely because it has not received the sanction of the highest state court"). There is no persuasive data indicating that the California Supreme Court would reach a different conclusion. Accordingly, the attempted extortion claim is insufficient as a matter of law regardless of whether the issue is controlled by the law of California or New York. This Court therefore need not decide the choice of law issue. Were it to reach that question, however, it would resolve it as recommended by Magistrate Judge Francis and apply the substantive law of New York.

---

[2]

*See, e.g., Fuhrman v. California Satellite Sys.*, 179 Cal. App. 3d 408, 428 (Cal. Ct. App. 1986) *disapproved on other grounds by Silberg v. Anderson*, 50 Cal. 3d 205, 212-213 (1990) ("An action for duress is an action for the recovery of moneys received by a defendant under the influence of duress . . . . As she did not pay the money demanded by defendants, plaintiff did not sustain damages cognizable in a cause of action for duress."); *see also Hines v. Anderson*, G035690, 2006 WL 2796209, at *9 (Cal. Ct. App. Sept. 29, 2006).

*Fraud*

The Donziger Defendants allege that Chevron knowingly misrepresented or concealed material facts in various statements to courts, government officials in this country and in Ecuador, Mr. Donziger, the media, supporters, and potential supporters of the LAPs, and the public at large.[3]  These alleged misrepresentations allegedly were "reasonably and justifiably relied upon by United States courts, the Lago Agrio Court by means of its decision to recuse Judge Nuñez and not to consider or rely upon the Cabrera report" and in other respects.[4]  In consequence, Donziger allegedly has suffered "pecuniary, reputational, and other damages," including "damage to Donziger's reputation and goodwill, impairment of his professional relationship with the Ecuadorian Plaintiffs, and attorneys' fees and costs."[5]

*Reliance*

1.    *Reliance By Donziger*

The R&R recommends dismissal of the fraud claim on the ground, *inter alia,* that Mr. Donziger fails to allege that he relied, let alone relied reasonably, on the alleged misrepresentations.[6] Mr. Donziger admits that this is correct, stating that "the actionable representations are to third

---

[3]
      Counterclaims (DI 643) ¶ 200.

[4]
      *Id.* ¶ 204.

[5]
      *Id.* ¶ 205.

[6]
      R&R at 25.

4

parties, not to Donziger."[7]   Accordingly, the recommendation of the R&R that the fraud claim be dismissed to the extent it rests on any assertion of reliance by Mr. Donziger on the alleged misrepresentations and omissions, is adopted.

2.    *Third Party Reliance*

This Court previously held, on the defendants' motions to dismiss Chevron's fraud claim, that New York recognizes a cause of action for fraud based on third party reliance.[8]   That indeed is Mr. Donziger's claim.   But the R&R nevertheless recommended dismissal of the third party reliance fraud claim.   It began from the proposition that Mr. Donziger alleges only two types of harm – (1) reputational injury, and (2) legal fees and costs allegedly incurred in defending himself against Chevron's allegedly fraudulent claims.[9]   The claim for damage to reputation, it concluded, ran afoul of the principle that New York does not permit recovery on a fraud theory for reputational injury, leaving Mr. Donziger with legal fees and costs as the only potentially compensable injury.[10]   The R&R then recommended dismissal of that claim on the grounds that (a) there could have been no reasonable reliance by third parties on the alleged fraudulent misrepresentations and omissions because "the allegedly omitted information was publicly available,"[11] and (b) "Chevron did not have

---

[7]
DI 1088, at 8.

[8]
*Chevron Corp. v. Donziger,* 871 F. Supp.2d 229, 256-57 (S.D.N.Y. 2012); *id.* 2013 WL 98013, at *3 (S.D.N.Y. Jan. 7, 2013).

[9]
R&R at 22-24.

[10]
*Id.*

[11]
*Id.* at 26-28.

5

a duty to disclose all public information that would shed a negative light on its arguments" and  the
Donziger Defendants therefore failed adequately to allege a misrepresentation of fact.[12]

*Alleged Reputational and Similar Injury*

"New York law awards only 'out-of-pocket' expenses in fraud cases, entitling
plaintiffs to damages solely for their actual pecuniary losses."[13]  Accordingly, Chevron contends,
Mr. Donziger's allegations of reputational injury and "'impairment of his professional relationship
with the Ecuadorian Plaintiffs' are not properly pleaded cognizable fraud damages."[14]

As a general proposition, Chevron is correct that recovery in a fraud action is limited
to out of pocket expenses and that reputational injury is not compensable in such a case.[15]  Mr.
Donziger nevertheless argues that *Stewart v. Jackson &Nash*[16] and *Hyman v. IBM Corp.*[17] stand for

---

[12]

   *Id.* at 29-31.

[13]

   *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993).

[14]

   DI 697, at 21-22. (quoting *Kregos*, 3 F.3d at 665).

[15]

   *E.g., Kregos*, 3 F.3d at 665 (2d Cir. 1992) (out-of-pocket measure); *Spithogianis v. Haj-
   Darwish,* No. 07 Civ. 4609 (PAC), 2008 WL 82188, at *7 (S.D.N.Y. Jan. 27, 2008)
   ("Damages for injury to a plaintiff's business reputation or lost profits that would have been realized
   but for the fraud are generally not recoverable");  *Saleemi v. Pencom Systems Inc.,* No. 99 Civ.
   667 (DLC), 2000 WL 640647, at *6 (S.D.N.Y. May 17, 2000) (same); *Kulas v. Adachi,* No.
   96 Civ. 6674 (MBM), 1997 WL 256957, at *10 (S.D.N.Y. May 16, 1997) (same) (citing
   *Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 80 (1996));
   *Cable v. Hechler,* 532 F. Supp. 239, 245 (S.D.N.Y.) (same), *aff'd mem.,* 685 F.2d 423 (2d
   Cir. 1981) (same).

[16]

   976 F.2d 86 (2d Cir. 1992)

[17]

   No. 98 Civ. 1371 (JSM), 2000 WL 1538161 (S.D.N.Y. Oct. 17, 2000).

6

the contrary proposition.  The Court disagrees.

Insofar as is relevant, *Jackson* was a suit by a lawyer against a law firm claiming that the law firm fraudulently induced her to become and remain its employee by false statements and promises.  The Court of Appeals reversed the district court's dismissal of the fraud claim –  which had been based upon the premise that employees at will may not "challenge their termination nor 'bootstrap' themselves around this bar by alleging that the firing was in some way tortious"[18] – where plaintiffs' alleged injuries "commenced well before her termination and were, in several important respects, unrelated to it."[19]  While the appellate opinion mentioned that the complaint alleged reputational injury among other kinds of damage, it said nothing about whether reputational injury is recoverable in a fraud action.  *Hyman* is to exactly the same effect.  These cases therefore did not affect the traditional rule that reputational injury is not compensable in a fraud action.

Accordingly, the R&R correctly concluded that the claims for reputational injury should be dismissed.


*Legal Fees and Costs Allegedly Suffered as Result of Third Party Reliance*

That leaves the Donziger Defendants' claim that they suffered out-of-pocket loss in the form of legal fees and costs paid as a proximate consequence of alleged third party reliance on Chevron's allegedly fraudulent misrepresentations and omissions.

It is useful at the outset to quote Chevron's summary of the nature of the alleged statements and omissions, a summary which the Donziger Defendants have not questioned:

---

[18]

*Stewart*, 976 F.2d at 88.

[19]

*Id.*

7

> "Donziger describes six general categories of misstatements. [1] First, he alleges misrepresentations related to videotapes, made public in 2009, that show meetings between two men claiming to be remediation contractors, Diego Borja and Wayne Hansen, with the judge then presiding over the Lago Agrio action, Judge Juan Evangelista Nuñez, and between Borja and officials of Ecuadorian President Rafael Correa's political party, *Allianza Pais*. Donziger claims Chevron misrepresented the contents of the tapes and the facts of how the videotapes were made, insinuating that Chevron was somehow involved. *See* Dkt. 643 ¶¶ 62-114. Donziger cites five other categories of supposed misstatements: that Chevron [2] misrepresented the scientific evidence in Lago Agrio (*id.* ¶¶ 115–45); [3] quoted out of context a few statements of RICO defendants Maest, Beltman, and Fajardo (*id.* ¶¶ 146-53); [4] misrepresented the propriety of the LAPs' contacts with Cabrera and other governmental officials (*id.* ¶¶ 154–77); [5] quoted out of context footage from *Crude* (*id.* ¶¶ 178–90); and asserted that Donziger participated in the authorship of the Ecuadorian judgment (*id.* ¶¶ 191–98).  [6] Finally, Donziger prefaces these alleged misrepresentations by dredging up claims that Chevron committed misconduct in Ecuador, including in connection with a cancelled judicial inspection at the Guanta station. *Id.* ¶¶ 47–52."[20]

The only allegation of reliance on any of these alleged misrepresentations or omissions, however, is the Donziger Defendants' assertion that:

> "[t]hese material misrepresentations have been reasonably and justifiably relied upon by United States courts, the Lago Agrio Court by means of its decision to recuse Judge Nuñez and not to consider or rely upon the Cabrera report, U.S. state and federal government agencies and officials, Ecuadorian government officials, the media, potential supporters and funders of the Ecuadorian Plaintiffs, and others."[21]

Moreover, the only allegation of pecuniary loss, putting aside the insufficient claim of reputational injury, is that

> "Donziger has incurred [attorneys' fees and costs] defending against Chevron's misrepresentations and the baseless, improperly motivated litigation *that Chevron has pursued against Donziger* based, in significant part, upon its material misrepresentations and/or omissions, and that he has incurred in investigating and

---

[20]

DI 697, at 16-17.

[21]

DI 643 ¶ 204.

8

exposing Chevron's fraud."[22]

Thus, the remaining part of the Donziger Defendants' fraud claim based on the alleged misrepresentations and omissions to third parties is the legal costs allegedly incurred in defending "litigation that Chevron has pursued against Donziger."

This allegation of injury caused by the alleged fraud is curious in view of Mr. Donziger's concession that he does not complain of any "actionable representations . . . to" him.[23] The assertion here is that the alleged misrepresentations and omissions caused pecuniary, out-of-pocket injury to Mr. Donziger in that he has incurred legal costs in defending allegedly baseless litigation brought against him by Chevron.  But the counterclaim does not allege that Mr. Donziger was deceived by any of the alleged misrepresentations or omissions, let alone that he suffered out-of-pocket loss by reason of such deception.  Rather, the allegation is that Chevron made false allegations against Mr. Donziger in the lawsuits it brought against him, allegations that he knew were false or misleading, and that he defended himself against those allegations.

In order to state a sufficient claim for fraud, a plaintiff must allege "'a material, false representation, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff.'"[24]  "[T]he essence of  . . . fraud is deliberate deception or concealment"

---

22

     *Id.* ¶ 205 (emphasis added).

23

     DI 1088, at 8.

24

     *Chanayil v. Gulati,* 169 F.3d 168, 171 (2d Cir.1999) (quoting *Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 970–71 (2d Cir.1987)).

9

which proximately injures the plaintiff.[25]   Thus, the allegations that Chevron made misrepresentations in lawsuits it brought against Mr. Donziger and that Mr. Donziger, though aware of their alleged falsity, incurred expenses defending those lawsuits does not state a legally sufficient fraud claim.  Mr. Donziger does not allege that the defense costs he seeks to recover were incurred because he was deceived by and relied upon Chevron's alleged falsehoods.

To be sure, the counterclaim alleges also, in an earlier paragraph, that "material misrepresentations have been reasonably and justifiably relied upon by United States courts."[26]  But putting aside for one moment whether that allegation is part of a legally sufficient fraud claim, the counterclaim nowhere alleges that reliance by such courts proximately caused compensable out-of-pocket damage to Mr. Donziger.  The only pertinent allegation of injury is set forth in paragraph 205, quoted above, and it is limited to expenses allegedly incurred by Mr. Donziger to defend against Chevron's allegations, which is a different matter.  Thus, so much of the counterclaim as seeks to allege a claim for fraud based on reliance by courts in actions brought against Mr. Donziger by Chevron fails on this ground.  But the Court does not rely upon this ground alone.  Examination of the alleged frauds on the courts in those actions demonstrates that there is no actionable claim here.

The only "litigation that Chevron has pursued against Donziger" that is alleged in the complaint is the Section 1782 proceeding in this Court, in which Chevron sought and obtained

---

[25]

*Green v. Santa Fe Indus., Inc.,* 533 F.2d 1283, 1301 (2d Cir. 1976), *rev'd on other grounds,* 430 U.S. 462 (1977).

[26]

DI 643, ¶ 204.

10

documents and testimony from Mr. Donziger[27] in aid of the Ecuadorian litigation and the international arbitration between Chevron and Ecuador, and this case. Accordingly, we focus on the alleged misrepresentations and omissions as they relate (or do not relate) to these two matters.[28]

1.      *The Nuñez Bribery Scandal*

We start with the first of the Donziger Defendants' six categories – alleged misrepresentations regarding what the Donziger Defendants call the Nuñez bribery scandal.

The counterclaim alleges broadly that Chevron in 2009 released four video tapes of Ecuadorian Judge Nuñez which it misdescribed to the press and various courts for the purpose of undermining the Lago Agrio Litigation. But the only litigations to which Donziger was a party – and therefore the only litigations in which he allegedly incurred legal fees "defending against Chevron[]" – were the Section 1782 proceeding and this one.

The record in the Section 1782 proceeding against Mr. Donziger contains no mention of the Nuñez episode. In consequence, there is no plausible basis for any claim that Mr. Donziger expended legal fees to defend against any misrepresentation the Section 1782 case with respect to the Nuñez episode.

The amended complaint in this case does allege that "Judge Nuñez ultimately was

---

[27]

*See id.* ¶ 161 (§ 1782 proceeding).

[28]

The Court takes judicial notice of records in both cases, not for the truth of the matters asserted, but for the contents of the records themselves. For such limited purpose, such matters appropriately are considered on a Rule 12(b)(6) motion addressed to a pleading. *E.g., Roth v. Jennings,* 489 F.3d 499, 508-09 (2d Cir., 2007); *Global Network Communications, Inc,. v. City of New York,* 458 F.3d 150, 154-57 (2d Cir. 2006).

forced to recuse himself from the [Lago Agrio] case, not because of apparent bias, but because of a bribery solicitation scandal where he was caught on video expressing his prejudgment against Chevron."[29]   Chevron contended also in its motion for partial summary judgment on all claims, counterclaims, and defenses that "Judge Nuñez . . . was forced to recuse himself after he was caught up in another bribery solicitation scandal related to the case."[30]   And Mr. Donziger does argue that the videos do not support the contention that the judge solicited a bribe.  So the Donziger Defendants arguably allege that Chevron's allegations in the complaint and its motion for summary judgment were inaccurate.  But that is only part of their burden in order to make out their fraud claim.

The Donziger Defendants' only allegation of reliance by any court on Chevron's alleged misstatements with respect to the Judge Nuñez matter is that the "*Lago Agrio Court[]* reli[ed] upon Chevron's misrepresentations regarding Borja, Hansen, and Judge Nuñez, which resulted in Judge Nuñez's recusal from the Lago Agrio Litigation," which in some way purportedly harmed the LAPs.[31]   But any reliance by the Lago Agrio court in the Ecuadorian litigation – to which Mr. Donziger was not a party – is not at issue here.   There is no plausible allegation that the Donziger Defendants incurred legal costs in any "litigation that Chevron has pursued against Donziger" as a proximate consequence of any misrepresentations concerning this subject to the Court in which either of the actions against Mr. Donziger was brought.[32]

---

[29]    Am Cpt ¶ 91.

[30]    DI 745, at 14.

[31]    DI 733, at 23 (emphasis added) (citing DI 643, at ¶¶ 68-69, 72).

[32]    Moreover, a review of the record, as far as possible given its enormous size and technical limitations,  demonstrates that the Court has not mentioned the alleged Nuñez incident or the

### 2.    *Scientific Evidence Presented to Ecuadorian Court*

The second of the categories of alleged misrepresentations concerns the scientific evidence in Lago Agrio.  The Donziger Defendants contend that Chevron issued a series of misleading press releases denying or minimizing the alleged extent of the environmental harm in Ecuador and made similar statements to this Court.

The difficulties with this category are two.

*First*, the counterclaim does not allege that reliance by third parties on the press releases that proximately caused the Donziger Defendants to incur legal costs in defending litigation that Chevron brought against him.

*Second,* while Mr. Donziger does allege that similar statements were made to this Court, there is no allegation that there was any reliance on any of them, let alone that any such reliance caused out-of-pocket loss to the Donziger Defendants.  Moreover, the record establishes as much, as this Court repeatedly has held that the existence of environmental harm in Ecuador, or the lack thereof, is not relevant to this case.[33]

---

videos connected to it at any point during this case.  A word search of all of the Court's opinions in this case published on Westlaw reveals no mention of Judge Nuñez, Diego Borja or Wayne Hansen, the three protagonists in the alleged incident.  A similar search for all of the Court's opinions and orders, including unpublished ones, yielded a similar result.  Nor has the Court so much as mentioned any of these individuals in any of the transcripts in this case.  Thus, there is no plausible basis for concluding that the Court relied on Chevron's allegation regarding the Nuñez incident.

Indeed, Magistrate Judge Francis recognized this when he held that "Donziger's allegations of misrepresentation" "such as evidence pertaining to the YouTube videos regarding Judge Nuñez" "concern representations unrelated to this action. . . . These allegations did not cause Mr. Donziger to incur legal fees and costs related to defending the § 1782 action" or this action.  R&R at 26, n. 4.  The Donziger Defendants do not dispute this in their objections to the magistrate's report.

[33]    *E.g.*, *Chevron Corp. v. Donziger*, 11 CIV. 0691 (LAK), 2012 WL 6634680, at *4 (S.D.N.Y. Dec. 19, 2012) ("this case is not an occasion to relitigate the merits of the pollution claims

    *3.*     *Alleged Misrepresentation of Statements Made by Fajardo and Stratus*

The alleged misrepresentations in the third category – alleged misrepresentations concerning statements made by Fajardo and two Stratus employees – all allegedly were made in web site postings or press releases. There is no plausible allegation that these web site postings proximately caused Mr. Donziger to incur legal costs defending against the litigation that Chevron has pursued against him.

    *4.*     *Contact With Court-Appointed Experts*

The fourth category includes alleged misrepresentations

> "to the effect that the Ecuadorian Plaintiffs' legal team's meetings with the 'court-appointed' damages expert Richard Cabrera were improper, that the submission of materials for his review and possible adoption was 'ghostwriting,' [and] that payments made to him were 'bribes.'"[34]

It contains also the contention that Chevron failed to disclose that all court-appointed experts in Ecuador were paid by whichever party requested their appointment, that Chevron's "own technical team had *ex parte* meetings with and collaborated with other court-appointed global experts," or that "such meetings were consistent with court rules and practice."[35]

In the main, these alleged misstatements and omissions allegedly were made in press

---

that were involved in the Ecuadorian case"); DI 720; DI 901; DI 902.

[34] DI 643 ¶ 154.

[35] *Id.* ¶¶ 166-67.

releases[36] or on a web site, which does not permit a plausible inference that the recipients' alleged reliance proximately caused Mr. Donziger to incur legal fees in either of the actions brought against him by Chevron.   So this category comes down to the allegation that these asserted misrepresentations and omissions were made and that Mr. Donziger incurred legal costs as a result of reliance by this Court.[37]   Once again, this allegation falls short.

There is, to be sure, no doubt that Chevron claims that the LAPs' lawyers and experts met with Cabrera, secretly planned his report, and then in fact wrote all or most of it and assisted in passing it off as his independent work.[38]   That is not in dispute.   Mr. Donziger has admitted that Stratus Consulting, the LAPs' environmental consultant, wrote much of the Cabrera report,[39] which was filed with the Ecuadorian court with the representation that the report had been "prepared by the Expert Richard Stalin Cabrera Vega" with the help of "[his] technical team, which consists of impartial professionals."[40]   He testified also as follows:

> "Q      Was it agreed that Stratus would draft the report in a form that could be submitted directly to the Ecuadorian court by Mr. Cabrera?
>
> "A      I don't have a specific recollection, but I think that was the general

---

[36]

  *Id.* ¶ 155-59.

[37]

  *Id.* ¶ 161.

[38]

  Amended Compl. ¶¶ 126- 198; DI 745, at 7-11; DI 397, at 7-11.

[39]

  Gomez Decl. [DI 287] Ex. 15 (Donziger Dep. Transcript), at 3367:3-12; *id.* at 3400:3-9; *id.* at 3437:10-20.

[40]

  Hendricks Decl. [DI 33] ¶ 256 & Ex. 178 (Cabrera report), at 1–2.

idea."[41]

Thus, the only possibly actionable misrepresentations or omissions were Chevron's alleged failure to disclose to this Court that *ex parte* meetings with and submissions to court-appointed experts were consistent with Ecuadorian law and practice and that Chevron had engaged in similar activities. Indeed, the Donziger Defendants allege that "Chevron repeatedly has led U.S. courts, including this Court, and others erroneously to believe that it was improper for a party to meet *ex parte* with a "court-appointed" expert and assist in the drafting of his technical work."[42] But these allegations fail also.

*First*, it must be noted that it is not the fact of *ex parte* meetings and submissions in and of themselves that Chevron has relied upon. Rather, it is the alleged substitution of work planned and prepared by a litigant for work by the supposedly independent, court-appointed expert and the deceitful passing off of that work as the independent product of study and analysis of that ostensibly independent expert and his independent team.[43]

---

[41]

    Hendricks Decl. [DI 8] Ex. 6, at 2253:5-11.

[42]

    DI 643 ¶ 161.

[43]

    As noted, the defendants in this case have maintained almost from the outset that the *ex parte* meetings that occurred among their Ecuadorian lawyers, in some instances Donziger, and Ecuadorian judges did not violate specific provisions of Ecuadorian law. They submitted evidence to that effect at an early stage in this case. *See infra* nn.40-41. And the Court explicitly did not rule that such meetings were improper *per se*. It wrote:

    "The relevance of this and other *ex parte* meetings with the Lago Agrio judges is not whether they were violations of Ecuadorian law or professional standards. Nor does the Court assume that Chevron did not participate in similar *ex parte* meetings. Rather, the question on this motion is whether the LAP team's actions—including these *ex parte* meetings and advocacy—prevented Chevron from fully and fairly presenting its case such that the Judgment is not entitled to recognition or enforcement under U.S. law. *See, e.g., Ackermann v. Levine,* 788 F.2d 830, 845 (2d Cir.1986) ('"[I]nternationalization of

*Second*, to the extent Chevron ever has alleged that *ex parte* meetings and submissions in and of themselves were impermissible under Ecuadorian law, defendants have maintained the opposite from the very outset of this litigation. Indeed, they repeatedly have told this Court and others that such meetings and submissions were appropriate and that Chevron had engaged in similar activity.[44] They submitted a declaration to this Court on the point as early as February 8, 2011.[45] Thus, defendants' view that certain *ex parte* contacts with and payments to court appointed experts was permissible under Ecuadorian law has been a matter of record in this case from the outset. To the extent the parties disagree on the issue – and the extent of any disagreement is unclear – the disagreement has not been resolved.

*Third*, Chevron's failure to present defendants' view of Ecuadorian law – which defendants themselves presented on multiple occasions – did not constitute fraud. Nor would

---

commerce requires 'that American courts recognize and respect the judgments entered by foreign courts to the greatest extent consistent with our own ideals of justice and fair play.'" (quoting *Tahan v. Hodgson,* 662 F.2d 862, 868 (D.C.Cir.1981) (emphasis added))); *Allstate Ins. Co. v. Administratia Asigurarilor de Stat,* 962 F.Supp. 420, 425 (S.D.N.Y.1997) ('[In New York,] courts "generally will accord recognition to the judgments rendered in a foreign country under the doctrine of comity absent a showing of fraud in the procurement of the foreign judgment or unless recognition of the [foreign] judgment would offend a strong policy of New York. '" (quoting *Lasry v. Lasry,* 180 A.D.2d 488, 579 N.Y.S.2d 393, 393–94 (1st Dep't 1992)))." *Chevron Corp. v. Donziger,* 886 F. Supp. 2d at 256 n.130.

[44]    *See, e.g.*, DI 137 (Donziger Defs.' Opposition to Chevron's Mot. For Prelim. Injunction and Object. to Court's Closure of the Record), at 31 ("Donziger submits that the *Aguind[a]* plaintiffs' conduct with respect to Mr. Cabrera was not unlawful and was consistent with custom and practice in Ecuador regarding experts appointed by the courts. . . . Chevron similarly hired and interacted with numerous experts in connection with the *Aguinda* litigation in Ecuador."); Saenz Decl., Feb. 25, 2011 [DI 152] ¶¶ 56-62.

[45]    Elsen Aff. [DI 66] Ex. BB (Fajardo Decl.) 13, ¶ 7 ("Consistent with Ecuadorian law, the fees and costs associated with these experts were ordinarily split evenly between the parties if both parties requested a particular study. If one party requested the study, that party was obligated to pay 100% of the fees and costs associated with the study.").

Chevron's presentation of the view that *ex parte* contacts were illegal under Ecuadorian law, assuming it ever did so, have been fraudulent. It is not fraud for a party – openly and with notice to its adversary – to argue one interpretation of foreign law to the court adjudicating its claims.  It is advocacy.  And it is not improper for a party to fail to present facts and arguments already known to the Court that are not helpful to its own position.[46]

Chevron and the defendants have submitted to this Court conflicting interpretations of and arguments concerning various provisions of Ecuadorian law on a number of issues throughout this litigation.  That one party does not present the others' argument or disclose all public information that may not be helpful to its own does not mean it has committed fraud.  Nor does the fact that one party ultimately may prevail mean that those that do not fraudulently have deceived the court by presenting their own positions

5.    Crude *Footage*

The Donziger defendants next allege that Chevron mischaracterized various *Crude* outtake clips in its complaint and in the press.[47]  They excerpt portions of Chevron's complaint in which *Crude* outtakes are quoted, claiming that "Chevron . . . cite[s them] in misleading ways . . . and often omit[s] a sentence or phrase immediate preceding or following the excerpt which reveals the true meaning of the quote statement."[48]  This mischaracterization and selective quoting, they

---

[46]
      *Missouri Portland Cement Co. v. Cargill, Inc.*, 498 F.2d 851, 873 (2d Cir. 1974) ("Courts should tread lightly in imposing a duty of self-flagellation . . . with respect to matters that are known as well, or almost as well, to the [opposing party]").

[47]
      DI 643, ¶¶ 178-190.

[48]
      *Id.* ¶ 178.

claim, fraudulently deceived the Court concerning the true content of the clips and meaning of the statements made in them.  Defendants' argument is well wide of the mark.

Two days after filing its complaint, Chevron moved for a preliminary injunction in this action.  It filed the entirety of each of the *Crude* clips referred to in its motion as well as a transcript of each one.[49]  The Court thus was presented with all of the *Crude* material referred to in the complaint – not just the excerpts Chevron quoted – and therefore had available all of the context the Donziger Defendants allege Chevron failed to disclose. Moreover, Chevron's selective quotation in its complaint from the more than 600 hours of outtakes from the film is not fraud – it is a common form of advocacy practiced by parties in all forms of civil litigation.[50]  Each side presents the evidence that it thinks favors its position and, where appropriate, attacks the completeness of its adversaries' contrasting selection.

6.    *Donziger's Alleged Involvement in Ghostwriting the Judgment*

Finally, the Donziger Defendants contend that Chevron has falsely alleged that the Ecuadorian Judgment was "'ghostwritten' by the Ecuadorian Plaintiffs' lawyers, including Donziger,"[51] when "[i]n fact, Donziger did not ghostwrite the judgment or have any knowledge that

---

[49]
    Indeed, the Donziger Defendants concede this point.  *Id.* ¶ 180 n.10.

[50]
    And in most cases, plaintiffs do not file with their complaints all of the materials they reference.  To the extent a complaint quotes a document out of context, it is generally *defendants* who provide the fuller quotation or missing context on their motion to dismiss.

[51]
    *Id.* ¶ 191.

anyone else did.  Chevron has no evidence to the contrary and no basis to accuse him."[52]  They support this statement by pointing out that "this Court recently concluded, after reviewing all of the evidence that Chevron could muster" in its first motion for summary judgment, that Chevron had presented no admissible evidence proving the identity of the author or authors of the Judgment.[53]  This argument plainly fails.

Chevron has presented a plethora of evidence supporting its ghostwriting allegations.  Indeed, in its first motion for summary judgment, Chevron submitted evidence showing that portions of the Judgment "were virtually identical—character-for-character—with" one of the LAPs' internal documents, and substantially similar to others.[54]  The fact that the Court did not find Chevron's evidence sufficient to grant summary judgment on this point does not mean that Chevron's ghostwriting allegations are baseless or fraudulent.

Moreover, since the Court's opinion on Chevron's first motion for partial summary judgment, Chevron has come forward with still more evidence that suggests that the Judgment was written by someone other than the judge.[55]  Most significantly, Chevron submitted the declaration of a former Ecuadorian judge in the Lago Agrio case who attested to having worked out an arrangement with the other LAP lawyers in which the LAPs' lawyers would pay $1 million to

---

[52]

   *Id.* ¶ 197.

[53]

   *Id.* ¶ 198.

[54]

   *Chevron Corp. v. Donziger*, 886 F. Supp. 2d 235, 286 (S.D.N.Y. 2012).

[55]

   The Court summarized this evidence most recently in *Chevron Corp. v. Donziger*, 11 Civ. 0691 (LAK), 2013 WL 1087236, at *6-9 (S.D.N.Y. Mar. 15, 2013).

20

ghostwrite the judgment under the judge's name.[56]  While it has not been determined whether the declaration ultimately is to be credited (and Mr. Donziger – at least in part – disputes it), it further belies Mr. Donziger's contention that Chevron has "no evidence" of ghostwriting and "no basis" on which to accuse Mr. Donziger.[57]  That Mr. Donziger may dispute the evidence Chevron has presented does not mean that Chevron's allegations against him amount to fraud.

\*   \*   \*

The foregoing discussion has assumed that a litigant, on proper allegations, could state a legally sufficient claim to the court in which the case is pending.  In view of the basis upon which the counterclaim is dismissed, it is unnecessary to consider the validity and limits on that assumption.

*Leave to Amend*

Finally, the Donziger Defendants ask that, "if the Court concludes that either of Donziger's Counterclaims is inadequately pleaded," the Court should grant them leave to amend.[58]  This request is premature in the absence of a motion for leave accompanied by the proposed amended complaint.  Any such motion shall be filed on or before August 15, 2013.

---

[56]

    Mastro Decl [DI 746], Ex. C (Guerra Decl.).

[57]

    DI 643 ¶ 197.

[58]

    DI 722, at 31.

21

*Conclusion*

For the foregoing reasons, Chevron's motion do dismiss the Donziger Defendants'
counterclaims [DI 696] is granted.


SO ORDERED.

Dated:         July 29, 2013



Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)