UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
CHEVRON CORPORATION,                    :   11 Civ. 0691 (LAK) (JCF)
                                        :
              Plaintiff,                :
                                        :       MEMORANDUM
       - against -                      :       AND  ORDER
                                        :
                                        :
STEVEN DONZIGER, et al.,                :
                                        :
              Defendants.               :
- - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

     With apologies, plaintiff Chevron Corporation ("Chevron") has

added two more discovery motions to the already crammed docket in

this case.[1]   These motions seek production of documents that

defendants Steven R. Donziger, Hugo Gerardo Camacho Naranjo, and

Javier Piaguaje Payaguaje claim are privileged.  For the reasons

that follow, the motions are granted in part and denied in part.

_____

     [1] The plaintiff asserts that it has "taken to heart the
Court's admonitions regarding the filing of discovery motions," but
that it was "compelled" to bring these motions because the
defendants said that they were going to file similar motions, and
"if the Court is going to be put to the task of determining whether
any party's production or [privilege] log is inadequate, it should
be [the] [d]efendants'."   (Plaintiff Chevron Corporation's Motion
to Compel Defendant Steven Donziger to Produce Documents Withheld
("Pl. Memo re Donziger") at 1 n.1; Plaintiff Chevron Corporation's
Motion to Compel Defendants Hugo Gerardo Camacho Naranjo and Javier
Piaguaje Payaguaje to Produce Documents Withheld ("Pl. Memo. re
Naranjo") at 1 n.1).   This comment is curious.   Either these
motions have merit or they do not; the defendants' intention to
file their own motions is irrelevant.

Background

This case arises out of a multi-billion dollar judgment obtained in Ecuador against Chevron based on claims of environmental destruction. In this action, Chevron contends that the plaintiffs in the Ecuadorian litigation (the "LAPs"), along with their consultants and their attorneys, including Mr. Donziger, procured the judgment through fraud.[2]

In the course of the litigation, in response to a motion to quash a subpoena duces tecum issued to non-party Patton Boggs, LLP ("Patton Boggs"), the Honorable Lewis A. Kaplan, U.S.D.J., identified a number of areas for which attorney-client privilege and work product protection was inapplicable on the basis of the crime-fraud exception, which abrogates privilege "where there is probable cause to believe that a fraud or crime has been committed [by someone] and that the communications in question were in furtherance of the fraud or crime." Chevron Corp. v. Donziger, 11

_____

[2] The factual and legal background of this controversy is set out in the numerous opinions issued in this litigation and related cases. See, e.g., Chevron Corp. v. Naranjo, 667 F.3d 232 (2d Cir.), cert. denied, 133 S. Ct. 423 (2012); Chevron Corp. v. Donziger, 871 F. Supp. 2d 229 (S.D.N.Y. 2012); In re Chevron Corp., 709 F. Supp. 2d 283 (S.D.N.Y. 2010), aff'd sub nom. Chevron Corp. v. Berlinger, 629 F.3d 297 (2d Cir. 2011); In re Chevron Corp., 736 F. Supp. 2d 773 (S.D.N.Y. 2010). Familiarity with this background is presumed.

Civ. 691, 2013 WL 1087236, at *3 (S.D.N.Y. March 15, 2013) (alteration in original) (emphasis and internal quotation marks omitted) (the "March 15 Decision"); see also id. at *6-11, 13-15, 28-29. I summarized these findings in a recent order:

> [Judge Kaplan] found probable cause to believe that a crime or fraud had been committed in connection with:
>
> (1) Bribery of an Ecuadorian Judge, Nicolás Zambrano, in order to obtain a favorable outcome in the Ecuadorian litigation and allow the LAPs to compose the judgment, which was then filed in the judge's name;
>
> (2) Interference with an independent inspection of the pollution sites in Ecuador by (a) submitting an expert report that purported to be the work of Dr. Charles Calmbacher but contained views to which he did not subscribe, and (b) using duress and coercion to obtain the appointment of Richard Stalin Cabrera Vega as the "global" court-appointed expert and then submitting a report in Mr. Cabrera's name that was in fact written by lawyers and consultants retained by the LAPs; and
>
> (3) Perpetuation of a fraud on the court in a proceeding brought in the District of Colorado by Chevron pursuant to 28 U.S.C. § 1782, in which Patton Boggs was involved in the drafting and submission of an affidavit by Pablo Fajardo, one of the LAPs' attorneys, which provided false information about the appointment of Mr. Cabrera and the authorship of the report he submitted to the Ecuadorian court.

Chevron Corp. v. Donziger, No. 11 Civ. 691, 2013 WL 3805140, at *1-2 (S.D.N.Y. July 19, 2013) (internal citations omitted)).

As noted above, there are two motions concerning privilege logs at issue here. The first asserts that Mr. Donziger has waived claimed privileges because (1) his privilege log is inadequate (Pl.

Memo. re Donziger at 1-2); (2) crime-fraud rulings "vitiate any privilege" (Pl. Memo. re Donziger at 2-3); (3) communications with third parties such as Stratus Consulting ("Stratus"), Public Citizen, Amazon Watch, and Rainforest Action Network are not privileged (Pl. Memo. re Donziger at 3-4); and (4) communications with media strategists are not privileged (Pl. Memo. re Donziger at 4).[3]

The second motion addresses the privilege log of Mr. Naranjo and Mr. Payaguaje, contending that they have waived their claims of privilege because they have failed to log communications between counsel of record for the defendants and (1) "any other law firm that has represented anyone affiliated with the LAPs in any other action," including Patton Boggs, Emery Celli Brinckerhoff & Abady, LLC, and Silver & DeBoskey, P.C.; (2) "any individual or entity with whom the LAPs claim a common interest"; and (3) "any other individuals or entities within the ambit" of the March 15 Decision

---

[3] Chevron also states that its need for the documents outweighs any claims of protection. (Pl. Memo. re Donziger at 4). However, Chevron has waived this argument by failing to develop it. See United States v. Fuentes, No. 09-cr-143, 2012 WL 4754736, at *3 (W.D.N.Y. April 25, 2012) (considering arguments that are "largely conclusory, boilerplate, undeveloped and bereft of any supporting case authority" waived); Lyn v. Incorporated Village of Hempstead, No. 03 CV 5041, 2007 WL 1879502, at *16 n.13 (E.D.N.Y. June 28, 2007) ("Issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived . . . ." (alteration in original) (internal quotation marks omitted)).

regarding the crime-fraud exception. (Pl. Memo. re Naranjo at 2, 3). In addition, Chevron asserts that the log improperly claims privilege for documents produced in other related litigation (Pl. Memo. re Naranjo at 3), and that the log's descriptions are so deficient that these defendants should be found to have waived any privilege (Pl. Memo. re Naranjo at 4).

    A.   <u>Donziger</u>

        1.   <u>Sufficiency of the Privilege Log and the Crime-Fraud Exception</u>

Pursuant to Local Civil Rule 26.2(a)(2)(A), a party asserting the attorney-client privilege or work product protection with respect to any document must provide:

> (i) the type of document, <u>e.g.</u>, letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other.

Moreover, the log must "provide[] information about the nature of the withheld documents sufficient to enable the receiving party to make an intelligent determination about the validity of the assertion of the privilege." <u>Automobile Club of New York, Inc. v. Port Authority of New York and New Jersey</u>, __ F.R.D. __, __, 2013 WL 1903782, at *4 (S.D.N.Y. 2013); <u>accord</u> <u>In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation</u>, 274 F.R.D. 106, 112 (S.D.N.Y. 2011); <u>Orbit One Communications, Inc. v. Numerex</u>

<u>Corp.</u>, 255 F.R.D. 98, 109 (S.D.N.Y. 2008).

Mr. Donziger's privilege log does not meet these standards. It is rife with vague descriptions, such as "Email concerning litigation status and strategy," "Email concerning litigation status and strategy re Lago Agrio litigation," "Email concerning litigation status and strategy re Donziger 1782," and "Email concerning draft memo." (Donziger Defendants' April 11, 2013 Privilege Log, attached as Exh. A to Pl. Memo. re Donziger at 1, 50). These entries and similar ones give little guidance to the plaintiff as to whether a privilege is properly asserted. The insufficiency is particularly problematic in this case, given the applicability of the crime-fraud exception.

Chevron asks that I hold that Mr. Donziger has waived his claims of privilege.

> While failure to properly identify privileged documents in a privilege log can lead to waiver of the privilege, usually the attorney-client privilege is only waived when the party either failed to give any clear indication that the documents were privileged, or provided an inadequate privilege log where documents were not properly specified.

<u>Pem-America, Inc. v. Sunham Home Fashions, LLC</u>, No. 03 Civ. 1377, 2007 WL 3226156, at *2 (S.D.N.Y. Oct, 31, 2007); see <u>Aurora Loan Services, Inc. v. Posner, Posner & Associates, P.C.</u>, 499 F. Supp. 2d 475, 479 (S.D.N.Y. 2007) (finding privilege waived where "log does not identify which privilege is being asserted (attorney-

client or work product), and often does not identify the parties to the communication"); Carte Blanche (Singapore) PTE., Ltd. v. Diners Club International, Inc., 130 F.R.D. 28, 32 (1990) (finding waiver of work product protection where privilege log failed to "specify work product as the particular privilege protecting its various documents"). Indeed, "only flagrant violations of [discovery] rules should result in a waiver of privilege." Dey, L.P. v. Sepracor, Inc., No. 07 Civ. 2353, 2010 WL 5094406, at *2 (S.D.N.Y. Dec. 8, 2010) (internal quotation marks omitted). The inadequacies of Mr. Donziger's privilege log are "not flagrant enough to warrant full production of documents that likely contain some [privileged material]." In re In-Store Advertising Securities Litigation, 163 F.R.D. 452, 457 (S.D.N.Y. 1995) (footnote omitted). He has specified the documents with sufficient identifying information as well as specified the privilege claimed; it is only the descriptions supporting the assertion of the privilege that are insufficiently detailed. In such a situation, Mr. Donziger should be given an opportunity to supplement his privilege log with descriptions of communications adequate to allow Chevron to assess whether the privilege is properly asserted. Mr. Donziger should perform this task with an eye to the fact that the descriptions should allow Chevron to determine whether the logged documents might fall into the areas subject to the crime-fraud exception

pursuant to Judge Kaplan's March 15 Decision.   In addition, I
caution Mr. Donziger that failure to sufficiently supplement the
log will expose him to the "risk [of] a broad finding of waiver."
Favors v. Cuomo, 285 F.R.D. 187, 224 (E.D.N.Y. 2012) (citing Davis
v. City of New York, No. 10 Civ. 0699, 2011 WL 1742748, at *4
(S.D.N.Y. May 5, 2011)).

        2.    Communications with Third Parties, including Media
            Strategists

    Chevron argues that "communications with third parties, such
as Stratus Consulting [], Public Citizen, Amazon Watch [], and
Rainforest Action Network" are not entitled to work product
protection.   (Pl. Memo. re Donziger at 3).   As to communications
with Stratus, Chevron relies on an opinion from the U.S. District
Court for the District of Colorado finding that privilege over many
documents reflecting communications between Stratus and Donziger
had been waived.   See Chevron Corp. v. Stratus Consulting, Inc.,
No. 10-cv-47, 2010 WL 3923092, at *3-4, 9-10 (D. Colo. Oct. 1,
2010).   Chevron also argues that the privilege has been waived with
regard to other third-parties, presumably because disclosure
"substantially increase[d] the opportunity for potential
adversaries to obtain the information." Merrill Lynch & Co. v.
Allegheny Energy, Inc., 229 F.R.D. 441, 445-46 (S.D.N.Y. 2004)
(internal quotation marks omitted).   Finally, it contends that

certain communications are not subject to the privilege because they are not legal documents but rather public relations materials.

In the Colorado proceeding, filed pursuant to 28 U.S.C. § 1782, the court found that work product protection had been waived for documents provided by Stratus or the LAPs to Mr. Cabrera, a testifying expert in the Ecuadorian litigation. <u>Stratus Consulting</u>, 2010 WL 3923092, at *9. In addition, "communications between [the LAPs], through their counsel, [] Stratus [], and Mr. Cabrera and his team go directly to [the LAPs'] claims of damages against [Chevron] arising out of the facts of the underlying litigation," and thus were subject to production "pursuant to the sword-shield doctrine," which prohibits a litigant from using "the work product doctrine as a sword and a shield by selectively using [] privileged documents to prove a point but then invoking [] privilege to prevent an opponent from challenging the assertion." <u>Id.</u> at *10 (internal quotation marks omitted).

Mr. Donziger does not respond to Chevron's argument on this point. Moreover, I find the Colorado court's reasoning persuasive. Therefore, Mr. Donziger must produce documents reflecting communications with Stratus relating to the Cabrera report or to any work provided to Mr. Cabrera.[4]

---

[4] Chevron overstates the holding of the Colorado court, asserting that it found privilege waived for "[c]ommunications with

I have already found that the interests of Amazon Watch and the Rainforest Action Network are sufficiently "closely aligned with the defendants that disclosure to them did not create a substantial risk of further dissemination." (Memorandum and Order dated Aug. 16, 2011, <u>Chevron v. Salazar</u>, No. 11 Civ. 3718, at 5-6).[5]  I adhere to that determination here.[6]

Finally, Chevron charges that certain withheld documents are not legal communications, but rather public relations advice. "[P]ublic relations advice, even if it bears on anticipated litigation, [generally] falls outside the ambit of the work product

_____

Stratus." (Pl. Memo. re Donziger at 3).  In reality, however, the court's holding is as I have described it above.  Because Chevron relies exclusively on the Colorado court's opinion on this issue, I assume that it seeks a ruling of waiver coextensive with that opinion.

[5] The <u>Salazar</u> case comprised the severed "Count 9" from the complaint in this case.  <u>See</u> <u>Naranjo</u>, 667 F.3d at 238; (Order dated June 1, 2011, <u>Salazar</u>, No. 11 Civ. 3718, at 1-2).

[6] Chevron asserts that, since my August 16, 2011 finding, "Donziger's [former] counsel has . . . disavowed the factual predicate for any work product protection over documents shared with A[mazon] W[atch]," and cites "Dkt. No. 021-13 (stating that 'Kevin [Koenig] and the A[mazon] W[atch] people' are not part of the legal team; 'Kevin is a collaborator, he is not part of the legal team, and he is not subject to privilege and he does not know everything we are doing.')." (Pl. Memo. re Donziger at 3 (fifth through seventh alterations in original)).  There are two problems with this assertion: (1) the document referred to <u>pre-dates</u> my August 16, 2011 order and (2) no such statement appears in the document.  Even if such a statement existed and post-dated August 16, 2011 -- and I presume that the plaintiff does not expect me to search through the 1,332 documents currently docketed in this action to find it -- it would not change my opinion on this issue.

doctrine." <u>Eqiazaryan v. Zalmayev</u>, __ F.R.D. __, __, 2013 WL 945462, at *12 (S.D.N.Y. 2013) (internal quotation marks omitted) (second alteration in original).  Indeed,

> the work product doctrine does not extend to public relations activities even if they bear on litigation strategy because the purpose of the rule is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or the public generally.

<u>Id.</u> (internal quotation marks omitted); <u>see also</u> <u>Chevron Corp. v. Salazar</u>, No. 11 Civ. 3718, 2011 WL 3880896, at *1 (S.D.N.Y. Sept. 1, 2011).  However, Chevron has not identified those documents that it believes constitute unprotected public relations advice.  If it seeks production of such documents, it must identify them by document number so that they can be produced by the defendant or submitted for <u>in camera</u> review.

B.  <u>Naranjo and Payaguaje</u>

1. <u>Common Interest</u>

Chevron complains that Mr. Naranjo and Mr. Payaguaje have produced a privilege log that excludes communications between the LAPs and common-interest counsel, clients, or defendants.  (Pl. Memo. re Naranjo at 1-2).  Mr. Naranjo and Mr. Payaguaje counter that the parties have an agreement that exempted common interest materials from logging.  (Javier Piaguaje Payaguaje's and Hugo Gerardo Camacho Naranjo's Opposition to Chevron Corporation's

11

Motion to Compel Defendants Javier Piaguaje Payaguaje[] and Hugo Gerardo Camacho Naranjo to Produce Documents Withheld ("Naranjo Memo.") at 3). In addition, they contend that I have "consistently ordered that such communications and documents need not be produced or logged, particularly as they relate to the present action or the related § 1782 Actions." (Naranjo Memo. at 2-3).

The exhibits submitted in connection with this motion do not demonstrate that the parties had an agreement not to log common interest materials. Rather, they show a difference of opinion about whether there was such an agreement. (Letter of G. Charles Nierlich dated March 1, 2013, attached as Exh. 5 to Pl. Memo. re Naranjo, at 1; Letter of Hector R. Chavez dated March 12, 2013, attached as Exh. 6 to Pl. Memo. re Naranjo, at 1). Therefore, this is not a basis on which to excuse the failure to log such communications. It is likewise not a basis to find waiver of the privilege. See Dey, 2010 WL 5094406, at *2.

However, Mr. Naranjo and Mr. Payaguaje are correct that in the related Salazar case, I found that communications among counsel created in that litigation or in related Section 1782 proceedings were not subject to production or logging. (Order dated Sept. 7, 2011, Salazar, No. 11 Civ. 3718, at 1; Order dated Sept. 2, 2011, Salazar, No. 11 Civ. 3718, at 2). Although the logic of those decisions also applies to documents created in connection with this

12

litigation, Judge Kaplan's crime-fraud findings undermine it with respect to the Colorado Section 1782 proceeding. Therefore, Mr. Naranjo and Mr. Payaguaje must supplement their privilege log to include documents reflecting communications with common interest counsel, clients, or defendants created in connection with that Section 1782 proceeding.

2. <u>Sufficiency of the Privilege Log</u>

a. <u>Documents Produced in Other Actions</u>

Where a party voluntarily discloses privileged documents to an adversary in one proceeding, it cannot withhold the same documents on the basis of privilege in a subsequent proceeding, even if that subsequent proceeding involves a different adversary. <u>See</u> <u>In re Steinhardt Partners, L.P.</u>, 9 F.3d 230, 235 (2d Cir. 1993) ("The waiver doctrine provides that voluntary disclosure of work product to an adversary waives the privilege as to other parties [in a subsequent proceeding]."); <u>Urban Box Office Network, Inc. v. Interfase Managers, L.P.</u>, No. 01 Civ. 8854, 2004 WL 2375819, at *3 (S.D.N.Y. Oct. 21, 2004) (applying same principle to attorney-client privilege). Chevron asserts that the privilege log contains listings for documents produced in other actions. (Pl. Memo. re Naranjo at 3-4). It characterizes this as "padd[ing]" the log and "flouting" discovery obligations. (Pl. Memo. re Naranjo at 4).

There is no evidence that Mr. Naranjo and Mr. Payaguaje

produced their privilege log in bad faith or with flagrant disregard for the rules.  It bears repeating that this litigation has spawned "dozens of discovery proceedings pursuant to 28 U.S.C. § 1782 throughout the United States," making it "'unique in the annals of American judicial history.'" <u>Naranjo</u>, 667 F.3d at 236 (quoting <u>In re Chevron Corp.</u>, 650 F.3d 276, 282 n.7 (3d Cir. 2011)).  The fact that Chevron found 33 documents on the privilege log of Mr. Naranjo and Mr. Payaguaje that "seem to have been previously produced" (Pl. Memo. re Naranjo at 4) does not support Chevron's hyperbole, and I do not find that Mr. Naranjo and Mr. Payaguaje have broadly waived protection over the documents on their log, <u>see</u> <u>Dey</u>, 2010 WL 5094406, at *2.[7]

b.  <u>Document Descriptions</u>

As with Mr. Donziger's privilege log, the document descriptions in the privilege log of Mr. Naranjo and Mr. Payaguaje are inadequate.  Their log contains a significant number of entries with descriptions such as "[w]orking draft of legal pleading concerning Maria Aguinda et al. v. Chevron re: experts," "[w]orking draft of legal pleading concerning Maria Aguinda et al. v. Chevron re: judicial inspection report," and "[c]onfidential legal

---

[7] Chevron does not ask that the documents disclosed in other actions be produced, presumably because it is already in possession of them.

memorandum with exhibits reflecting legal analysis of witness testimony." (Amended Privilege Log Pertaining to Defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje dated April 11, 2013, attached as part of Exh. 2 to Pl. Memo. re Naranjo, at 1, 9, 24). As with Mr. Donziger's log, the log of Mr. Naranjo and Mr. Payaguaje must be similarly supplemented. I do not now find that Mr. Naranjo and Mr. Payaguaje have waived the protections of privilege over these document, see Dey, 2010 WL 5094406, at *2; however, failure to supplement sufficiently may also expose them to a broad finding of waiver, see Favors, 285 F.R.D. at 224.

## Conclusion

For the foregoing reasons, Chevron's motion to compel as against Mr. Donziger (Docket no. 1194) and its motion to compel as against Mr. Naranjo and Mr. Payaguaje (Docket no. 1195) are each granted in part and denied in part as discussed above. These defendants shall produce amended privilege logs within two weeks of the date of this order. In addition, within that same time Mr. Donziger shall produce all documents identified as having been improperly withheld.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

15

Dated:     New York, New York
           August 9, 2013

Copies mailed this date:

Randy M. Mastro, Esq.
Andrea E. Neuman, Esq.
Gibson, Dunn & Crutcher, LLP
200 Park Avenue, 47th Floor
New York, New York  10166

William E. Thomson, Esq.
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA  90071

Steven R. Donziger, Esq.
Law Offices of Steven R. Donziger, P.C.
245 W. 104th St., #7D
New York, NY 10025

Julio C. Gomez, Esq.
Gomez LLC
111 Quimby St., Suite 8
Westfield, NJ 07090