```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
CHEVRON CORPORATION,

                              Plaintiff,

              -against-                                    11 Civ. 0691 (LAK)

STEVEN DONZIGER, et al.,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

## MEMORANDUM OPINION

L<small>EWIS</small> A. K<small>APLAN</small>, *District Judge.*

An Ecuadorian court in 2011 entered an $18.2 billion judgment (the "Judgment") against Chevron Corporation ("Chevron")[1] in an action brought by 47 individuals referred to as the Lago Agrio Plaintiffs (the "LAPs"), two of whom, referred to as the LAP Representatives, have appeared in this action.[2] Chevron brought this action against the LAPs, their lead U.S. attorney, Steven Donziger and his law offices (the "Donziger Defendants"), and others involved in the Lago Agrio Litigation.[3] It claims among other things that the Judgment is the product of fraud and that acts associated with its procurement are significant parts of a pattern of racketeering activity that violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The pattern allegedly

---

[1]  DI 168 (Lago Agrio Judgment).

[2]  The other LAPs have defaulted and are not defending this action. DI 469.

[3]  In addition, the amended complaint identifies a number of alleged "co-conspirators" who are not named as defendants.

has included extortion, wire fraud, money laundering, and obstruction of justice, among other offenses.

The case is set for trial commencing on October 15, 2013. On August 16, 2013, Chevron moved – for the third time – for partial summary judgment. The motion is narrow. Even if granted, the ruling would not dispose of the entire case or, for that matter, even a single claim against a single defendant. In addition, the defendants, who repeatedly have sought to delay a trial in this case, separately have moved for a stay of all deadlines in this case. They claim, among other things, that they cannot respond to Chevron's motion and prepare for trial on the present schedule.

As the Court indicated only last month in denying the Donziger Defendants' motion for a three month stay of all proceedings in this case, there is substantial reason to be skeptical of defendants' claims that they have had insufficient time to prepare for trial, lack adequate resources, and so on.[4] Nevertheless, the Court has reviewed the latest partial summary judgment motion carefully in order to determine whether it should be denied even absent a response because it is insufficient on its face or as a matter of sound case administration. This memorandum opinion sets forth its analysis and conclusions.

---

[4] The memorandum and order is DI 1302. This memorandum opinion assumes familiarity with that as well as with recent decisions that set forth the nature of the action, the claims and defenses asserted, and the general background of the case. *See, e.g., Chevron Corp. v. Donziger*, 886 F. Supp. 2d 235 (S.D.N.Y. 2012); *Chevron Corp. v. Donziger*, 11 Civ. 691 (LAK), 2013 WL 646399 (S.D.N.Y. Feb. 21, 2013); *Chevron Corp. v. Donziger*, 11 Civ. 691 (LAK), 2013 WL 1087236 (S.D.N.Y. Mar. 15, 2013) *adhered to on reconsideration*, 11 Civ. 691 (LAK), 2013 WL 1975439 (S.D.N.Y. May 14, 2013).

*Facts*

*This Litigation*

Chevron brought this action on February 1, 2011 against the LAPs, the Donziger Defendants,[5] and a number of other individuals and entities. Chevron alleges among other things that the Judgment is the product of fraud and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The RICO and, to some extent, the fraud claims rest on allegations that Mr. Donziger, a New York lawyer, and others based in the United States as well as Ecuador, here conceived, substantially executed, largely funded, and significantly directed a scheme to extort[6] and defraud Chevron by, among other things, (1) bringing the Lago Agrio case;[7] (2) fabricating (principally in the United States) evidence for use in that lawsuit and corrupting and intimidating the Ecuadorian judiciary in order to obtain a tainted judgment;[8] (3) exerting pressure on Chevron to coerce it to pay money not only by means of the Lago Agrio litigation and judgment, but also by subjecting Chevron to public attacks in the United States and elsewhere based on false and

---

[5] The Donziger Defendants are Steven Donziger and his law firm, variously referred to as the Law Offices of Steven Donziger and Donziger & Associates, PLLC.

[6] Amended complaint ("Cpt.") ¶ 1 (alleging that defendants "sought to extort, defraud, and otherwise tortiously injure plaintiff Chevron by means of a plan they conceived and substantially executed in the United States"); *id.* ¶ 2 ("The enterprise's ultimate aim is to create enough pressure on Chevron in the United States to extort it into paying to stop the campaign against it.").

[7] *Id.* ¶ 3.

[8] *E.g.*, *id.* ¶ 145 ("Back in the United States, preparations were well underway for drafting Cabrera's report [the report of a supposedly independent, court-appointed expert]."); *id.* ¶ 151 ("While Stratus [LAP environmental consultant] was the primary coordinator of the . . . Cabrera Report, other members of the [LAP's] U.S.-based team of experts . . . also contributed to the report without attribution in the report or disclosure to Chevron."); *id.* ¶¶ 353–56; Mastro Decl. [DI 746] Ex. C.

misleading statements;[9] (4) inducing U.S. public officials by false representations to investigate Chevron;[10] and (5) making false statements to U.S. courts and intimidating and tampering with witnesses in U.S. court proceedings to cover up their improper activities.[11]

Chevron's claim that the Judgment was procured by fraud rests in significant part on allegations that (1) the LAPs coerced the Ecuadorian judge to appoint a supposedly independent expert, Richard Stalin Cabrera Vega, as a global expert to prepare a damages assessment, (2) then colluded with Cabrera to the end that the LAPs and their consultants actually wrote Cabrera's report and passed it off as his independent work, and (3) ultimately bribed the Ecuadorian judge to rule in their favor and to sign a decision written by the LAPs.  Chevron contends that the Judgment in any event incorporates extensive internal work product prepared by the LAPs that is not part of the record in the Ecuadorian case and was provided improperly to the judge *ex parte*.  The voluminous evidence bearing on these and related contentions is discussed in detail in prior rulings, familiarity with which is assumed.[12]

Several counts of Chevron's complaint have been dismissed by this Court on motions

---

[9] Cpt. ¶ 214.

[10] *Id.* ("And they have taken this pressure campaign to U.S. state and federal agencies, seeking their falsely induced assistance in this racketeering scheme."); *id.* ¶ 216.

[11] *Id.* ¶¶ 273-77, 291-300, 311-16.

[12] *See, e.g.*, *Chevron Corp. v. Donziger*, 886 F. Supp. 2d 235 (denying almost entirely first motion for partial summary judgment); *Chevron Corp. v. Donziger*, 2013 WL 646399; *Chevron Corp. v. Donziger*, 2013 WL 1087236 (ruling, for purposes of ruling on attorney-client privilege and work product claims, that probable cause to suspect the commission of crimes or frauds in certain respects).

5

by the defendants.[13] One count, which had been severed and became a separate action, was dismissed at the direction of the Court of Appeals (the "Count 9 Action").[14] The principal counts remaining are the RICO claims, which are asserted only against the Donziger Defendants, and the state law fraud count.[15]

*Previous Partial Summary Judgment Motions*

Chevron first moved for partial summary judgment in 2012. That motion sought dismissal of the affirmative defenses of *res judicata* and collateral estoppel on the grounds that (1) the Judgment may not be afforded any preclusive effect unless it may be recognized and enforced here, and (2) recognition and enforcement would be impermissible or inappropriate because (a) the Ecuadorian courts lacked personal jurisdiction over it, (b) the Judgment is penal in whole or in part, and (c) there was fraud in the procurement of the Judgment. The motion was denied in substantial

---

[13] *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229 (S.D.N.Y. 2012); DI 472 (May 24, 2012 decision on Stratus Defendants' motion to dismiss).

[14] Count 9 of Chevron's complaint sought a declaration that the Judgment was unenforceable and unrecognizable because it was tainted by fraud in a judicial system (Ecuador's) which could not afford a fair and impartial proceeding. The Court issued a preliminary injunction barring enforcement of the Judgment *pendente lite* in March 2011. *Chevron Corp. v. Donziger*, 768 F. Supp. 2d 581 (S.D.N.Y. 2011). The Second Circuit vacated the preliminary injunction and remanded with instructions to dismiss Count 9 entirely on the ground that, in its view, "the procedural device [Chevron] has chosen to present those claims [in Count 9] is simply unavailable: The [New York Recognition of Foreign Country Money Judgments Act] nowhere authorizes a court to declare a foreign judgment unenforceable on the preemptive suit of a putative judgment creditor." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 240 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 423 (2012).

[15] Also remaining are claims (1) against all defendants for conspiracy (2) against the Donziger Defendants for alleged violation of Section 487 of the New York Judiciary Law.

part.[16]

Earlier this year, Chevron moved for partial summary judgment for a second time. That motion again sought dismissal of the collateral estoppel affirmative defense on the ground that the Judgment was procured by fraud, and submitted for the first time direct (albeit later partly controverted) evidence of the alleged bribery conspiracy. In the alternative, Chevron sought rulings under Fed. R. Civ. P. 56(g)[17] that there is no genuine issue as to a number of factual propositions ("56(g) Rulings"). Among other such rulings, it requested determinations concerning the Cabrera report and its procurement, the textual overlap between the Judgment and LAP work product documents that do not appear in the Ecuadorian court record, and that the Donziger Defendants had committed certain RICO predicate acts, proof of which would be an element of Chevron's substantive RICO claim, in addition to limited other relief.[18]

These defendants responded to the motion. The Court denied partial summary judgment without prejudice to renewal of that application after conclusion of the discovery period. The order provided also, however, that the alternative request for Rule 56(g) Rulings "remain[ed] under advisement."[19] It remains so today.

---

[16] *Chevron Corp. v. Donziger,* 886 F. Supp.2d 235 (S.D.N.Y. 2012).

[17] Rule 56(g) provides that "[i]f the court does not grant all the relief requested by the motion [for summary judgment], it may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case."

[18] DI 745.

[19] DI 1063.

*The Present Motion*

The present motion first seeks 56(g) Rulings (1) with respect to a number of (mainly) factual propositions concerning (a) the Cabrera report and (b) the incorporation in the text of the Judgment of the text of internal LAP work product documents that are not in the Ecuadorian court record, and (2) that the sending by Mr. Donziger of eleven particular emails each constituted wire fraud.[20]  As is apparent, the 56(g) Rulings sought here overlap in important respects with some of those sought as alternative relief on Chevron's second motion for partial summary judgment.  To that extent, therefore, this motion serves only to attempt to expand the record with respect to 56(g) Rulings sought by both motions.  In any case, neither the 56(g) Rulings sought by the prior motion nor those sought by this one would dispose entirely of any claim against any party.  At best, they would eliminate the need for proving the factual propositions thus determined at trial.

The motion requests also that many of defendants' pleaded affirmative defenses – collateral estoppel, the act of state doctrine, comity, *in pari delicto,* fraud, unclean hands, judicial or equitable estoppel, waiver, laches, and the statute of limitations – be dismissed.   Generally speaking, these defenses may be divided into two categories for purposes of this motion.

The motion to strike the collateral estoppel defense based on the Judgment rests on Chevron's affirmative claim that the Ecuadorian litigation and the Judgment were permeated by these defendants' alleged fraud.  It argues that the Judgment can have no collateral estoppel effect here because the defendants' fraud deprived Chevron of a full and fair opportunity to defend in

---

[20]  Such determinations would establish that the emails each were predicate acts of racketeering activity for purposes of Chevron's RICO claims. *See* 18 U.S.C. §§ 1961(1)(B) (defining racketeering activity" to include "any act which is indictable under" the wire fraud statute); *id.* § 1961(5) (defining "pattern of racketeering activity" to require "at least two acts of racketeering activity"); *id.* § 1962(c) (proscribing conduct or participation in the conduct of an enterprise's affairs through a pattern of racketeering activity).

Ecuador.[21]  That branch of the motion thus is thoroughly intertwined with Chevron's case on the merits.

So much of the motion as seeks to strike most of the other alleged affirmative defenses – which typically are pleaded only in conclusory terms that the LAP Representatives' appellate counsel has characterized as "boilerplate"[22] – invokes the principle that the defendants, as the parties having the burden of proof of these defenses at trial, now must come forward with admissible evidence which, if accepted, would preclude Chevron's affirmative claims.[23]  In substance, the motion seeks to compel defendants to specify the factual bases for these alleged defenses[24] and to put them to their proof.

In the last analysis, then, this motion, even if it were granted in all respects, would not end or come close to ending this case. From Chevron's perspective, it at best would (1) permit more expeditious proof at trial of some of its allegations with respect to the Ecuadorian litigation and Judgment and (2) clear away a number of alleged affirmative defenses which, at least to this point, have not been shown to have any real substance.[25]  But the basic claim that the defendants

---

[21] DI 1349, at 22-23.

[22] *See* LAP Representatives' petition for writ of mandamus at 2-3, *In re Camacho,* No. 13-772 (2d Cir. filed Mar. 5, 2013) (describing their collateral estoppel defense, which is pleaded in the same conclusory terms as most of their other defenses, as "boilerplate").

[23] DI 1349, at 7 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *FDIC v. Great Am. Ins. Co.,* 607 F.3d 288, 292 (2d Cir. 2010)).

[24] Chevron unsuccessfully sought to elicit from defendants which of these pleaded affirmative defenses they actually intend to rely upon and, as to those, the alleged bases for them.

[25] For example, no one has suggested any possible basis for the defenses based on the act of state doctrine, the statute of limitations, waiver, or laches.  The Court dismissed the *in pari*

9

engaged in a scheme to extort money from Chevron, that they pressured Chevron by the persistent dissemination of false and misleading statements in the United States and elsewhere, and that they coerced, deceived, compromised, and ultimately bribed the Ecuadorian court to achieve their desired result would remain to be tried in any event. In addition, the extent to which the Rule 56(g) Rulings sought here (and before) would shorten the trial is unclear. Finally, it is not at all evident that any benefit to be gained from expanding the record, via this third motion for partial summary judgment, with respect to proposed 56(g) Rulings that already are under consideration on the fully submitted second motion would be commensurate with the labor and distraction from trial preparation that expansion of the record would require – defendants, after all, would be entitled to respond to new material added by the present motion.

*Discussion*

As Professors Wright and Miller have written:

"in most situations in which the moving party seems to have discharged his burden of demonstrating that no genuine issue of fact exists, the court has discretion to deny a Rule 56 motion. This is appropriate since even though the summary judgment standard appears to have been met, the court should have the freedom to allow the case to continue when it has any doubt as to the wisdom of termination the action prior to a full trial."[26]

---

*delicto* and fraud affirmative defenses insofar as they were asserted in the Count 9 Action, *Chevron Corp. v. Salazar,* No. 11 Civ. 3718 (LAK), 2011 WL 3628843 (S.D.N.Y. 2011). The reasoning of that decision may well control here, though the Court does not now decide that question.

[26] 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2728, at 525-26 (3d ed. 1998) (footnotes omitted).

Those circuits to have considered the matter all are in accord, including our own.[27]

In exercising that discretion, the Court finds guidance in the words of the late Judge Edward Weinfeld. In *United States v. Bethlehem Steel Co.*,[28] an action by the government to enjoin the merger of Bethlehem Steel and Youngstown Sheet and Tube, then two of the largest companies in an industry of great importance to the nation, the government moved for summary judgment. Judge Weinfeld denied the motion, writing:

> "The Court does not reach the classical summary judgment question of whether there is a genuine issue as to any material fact. Upon further close study of the record, briefs and argument of counsel and considering the size of the industry, the vast amount of factual material to be analyzed and reviewed in reaching a decision, the multitude of problems in the case, the likely impact of a decision upon the iron and steel industry in particular, and upon the economy of the country in general, and the admitted significance of a ruling under the amended Section 7 in view of differing contentions as to its construction, I am persuaded that a decision after trial will be the more desirable procedure in the matter. It will serve to bring into sharper focus certain issues of importance which have been obscured by the voluminous affidavits with their statements, counterstatements and alternative positions, and the conflicting conclusions which the parties contend are to be drawn from the multitude of facts and statistics presented.
>
> "Under all the circumstances the application of the summary judgment rule is questionable and the Court deems it sound judicial administration to permit a trial for such additional evidence and clarification as may be relevant. In doing so, it is guided by the judgment of the Supreme Court in a somewhat parallel matter, *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 256-257, 68 S.Ct. 1031, 1034, 92 L.Ed. 1347, where it said:

---

[27] *E.g., Andrew v. Clark,* 561 F.3d 261, 271 (4th Cir. 2009); *Lind v. United Parcel Serv.,* 254 F.3d 1281, 1285 (11th Cir. 2001); *Marcus v. St. Paul Fire & Marine Ins. Co.,* 651 F.2d 379, 382 (5th Cir. 1981); *Luckett v. Bethlehem Steel Corp.,* 618 F.2d 1373, 1382-83 (10th Cir. 1980); *McLain v. Meier,* 612 F.2d 349, 356 (8th Cir. 1979); *Western Chain Co. v. American Mut. Liab. Ins. Co.,* 527 F.2d 986, 990 n.5 (7th Cir. 1975); *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.,* 388 F.2d 272, 280 (2d Cir. 1967); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986) ("Neither do we suggest that . . . the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.").

[28] 157 F. Supp. 877 (S.D.N.Y. 1958).

> "'We do not hold that in the form the controversy took in the District Court that tribunal lacked power or justification for applying the summary judgment procedure. But summary procedures, however salutary where issues are clear-cut and simple, present a treacherous record for deciding issues of far-flung import, on which this Court should draw inferences with caution from complicated courses of legislation, contracting and practice.
>
> "'We consider it the part of good judicial administration to withhold decision of the ultimate questions involved in this case until this or another record shall present a more solid basis of findings based on litigation or on a comprehensive statement of agreed facts. While we might be able, on the present record, to reach a conclusion that would decide the case, it might well be found later to be lacking in the thoroughness that should precede judgment of this importance and which it is the purpose of the judicial process to provide.'"[29]

As noted, moreover, the Second Circuit more recently approved the principle espoused by Judge Weinfeld.[30]

In this case, there is nothing questionable about the application of the summary judgment rule. But other considerations counsel the exercise of discretion against considering the merits of this motion at this moment of the litigation.

First, this motion for partial summary judgment – Chevron's third – in significant part seeks no more than Rule 56(g) findings as to some parts of its far broader claims with respect to the Ecuadorian litigation and Judgment, which in turn are alleged to be only parts of a still broader extortionate scheme. Even if the motion were granted, the case, with its many complexities of fact and law, would remain to be tried. Moreover, the trial – over two years in preparation – is set to begin on October 15, 2013, about eight weeks from today, and should be concluded within this calendar year. There is a great deal to be said for getting on with it rather than becoming involved

---

[29] *Id.* at 879-80.

[30] *American Mfrs. Mut. Ins. Co.,* 388 F.2d at 280.

Case 1:11-cv-00691-LAK-JCF   Document 1362   Filed 08/22/13   Page 12 of 14

12

in litigation and consideration of another summary judgment motion.[31]

Second, defendants persistently have sought to delay any trial in this case. Even before this motion was filed, and just a short time after their request for a three month stay of proceedings was denied, they moved to extend all remaining deadlines by thirty days. They claimed among other things that they cannot both respond to this motion (then only anticipated, not a reality) and prepare adequately for trial. For reasons previously expressed, their claims of lack of resources and adequate counsel are, at best, unproven and, at worst, dubious.[32] Moreover, even if defendants' situation is what they contend, the assertion that they cannot both finish trial preparation and respond to this motion – given its narrow scope – is not persuasive. Nevertheless, there is a case for sparing the defendants the effort of responding to that part of the motion that (a) goes to facts integral to the essential fraud claims and (b) would have to be tried regardless of the outcome of the motion.

Accordingly, the Court is persuaded that considerations of sound judicial administration warrant the denial of so much of Chevron's present motion as seeks 56(g) Rulings (1) with respect to a certain factual propositions concerning (a) the Cabrera report and (b) the overlap between the text of the Judgment and the text of internal LAP work product documents that allegedly are not part of the Ecuadorian court record, and (2) that the sending by Mr. Donziger of

---

[31] None of the parties has any justified complaint of inattention by the Court to the demands of this litigation. The Court has disposed of scores of motions made by both sides. Moreover, Chevron already has had two bites at the summary judgment apple. Both involved very large factual records. The first resulted in a detailed, lengthy decision. And while the second was disposed of without another opinion, it required no less intensive a review of an even larger record.

[32] DI 1302.

eleven particular emails each constituted wire fraud.[33]  "A decision after trial will be the more desirable procedure in the matter," given the present posture of this case.[34]

This conclusion does not dispose of the entire motion, as it does not speak to the affirmative defenses.  With the exception of the defense of collateral estoppel based on the Judgment, which as noted is intertwined with Chevron's claim of fraud and other misconduct in relation to the Ecuadorian litigation and Judgment, there does not appear to be any reason why the sufficiency of the alleged defenses in question should not be litigated on this summary judgment motion. It should impose no burden, as Chevron has submitted no evidence in support of the dismissal of these affirmative defenses,[35] and defendants were obliged by law to have known the bases for these alleged defenses when they filed their answers.[36]  Nevertheless, the question whether and to what extent those defenses survive the motion, will not affect the trial at least until the taking

---

[33] Moreover, any efficiencies in the trial of this matter that could be achieved by making Rule 56(g) Rulings on this motion likely could be achieved as well by doing so, if they are appropriate, on Chevron's second motion for partial summary judgment.  That motion seeks 56(g) Rulings that are substantially the same as those Chevron seeks on the instant motion.  Both sides have made voluminous submissions on that motion.  Thus, defendants have had a full and complete opportunity to be heard on Chevron's request for such rulings based on the record as it stood when that motion was submitted for decision. The marginal utility of using the present third motion for partial summary judgment – in the present circumstances – to submit additional evidence in support of the same or similar rulings that particular facts are not genuinely disputed is questionable..  The Court emphasizes, however, that it has not yet determined whether to make any such rulings.

[34] *Bethlehem Steel Co.,* 157 F. Supp. at 879.

[35] As noted, it simply relies upon the principle that defendants have the burden of proof on their affirmative defenses and must come forward with admissible evidence sufficient to go to the jury on them in order to withstand a motion for summary judgment. *Supra* at 8 & n.23.

[36] Fed. R. Civ. P. 11(b)(2), 11(b)(3).

14

of evidence begins and probably until the start of the defendants' case in chief. Accordingly, the Court will extend defendants' time to respond to the motion insofar as it seeks dismissal of affirmative defenses (other than collateral estoppel based on the Judgment). The extension will give them six full weeks in which to respond to that very limited branch of the motion and the entire thirty day extension sought by their motion of August 15, 2013. This will afford the defendants plenty of time to respond and hopefully permit the Court to rule before the start of the defendants' case in chief, if not earlier.

*Conclusion*

Plaintiffs' motion for partial summary judgment [DI 1348] is denied insofar as it seeks "(1) an order finding that the facts set forth in Chevron's accompanying Rule 56.1 Statement of Facts have been 'established in this case' (Rule 56(g)); (2) partial summary judgment on Chevron's claim under 18 U.S.C. § 1962(1) to the effect that Defendant Stephen R. Donziger committed predicate acts of wire fraud (18 U.S.C. § 1343);" and (3) partial summary judgment dismissing defendants' defenses of collateral estoppel based on the Judgment. The Court does not now decide the balance of the motion. Answering and reply papers with respect thereto shall be served and filed no later than September 29, 2013, and October 6, 2013, respectively.

SO ORDERED.

Dated:    August 22, 2013

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)