**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
CHEVRON CORPORATION,                                    :
:
Plaintiff,                     :
:
v.                                    :     11 Civ. 0691 (LAK)
:
STEVEN DONZIGER, *et al.*,                              :
:
Defendants.                    :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF CHEVRON CORPORATION'S MEMORANDUM OF LAW IN OPPOSI-
TION TO DEFENDANTS' APPLICATION BY ORDER TO SHOW CAUSE WHY ALL
DEADLINES IN THIS MATTER SHOULD NOT BE ADJOURNED 30 DAYS**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035
*Attorneys for Plaintiff Chevron Corporation*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ...........................................................................................................5

I.      Defendants Fail to the Show Good Cause Required by the Federal Rules.........................5

II.     This Court Has Already Rejected Defendants' Requests to Delay This Action, and They Offer No Persuasive Reason to Reach a Different Result Here ................................7

CONCLUSION........................................................................................................8

## TABLE OF AUTHORITIES

Page(s)

### Cases

*AMW Materials Testing, Inc. v. Town of Babylon*,
  215 F.R.D. 67 (E.D.N.Y. 2003) ......................................................................................... 7

*Bracy v. State of New York, et al.*,
  No. 98 CV 3308, 2001 U.S. Dist. LEXIS 19986 (S.D.N.Y. Nov. 28,
  2001) .................................................................................................................................. 7

*Carnrite v. Granada Hosp. Group, Inc., et al.*,
  175 F.R.D. 439, No. 95 CV 478A, 1997 U.S. Dist. LEXIS 16441
  (W.D.N.Y. June 2, 1997) ................................................................................................... 7

*Deghand v. Wal-Mart Stores, Inc.*,
  904 F. Supp. 1218 (D. Kan. 1995) .................................................................................... 6

*Oxaal v. Internet Pictures Corp.*,
  2002 U.S. Dist. LEXIS 5178 (N.D.N.Y. Mar. 27, 2002) ................................................. 6

*Robinson v. Town of Colonie*,
  1993 U.S. Dist. LEXIS 7464, 1993 WL 191166 ............................................................... 6

### Rules

Fed. R. Civ. P. 16(b)(4) ............................................................................................................. 5

Local Civil Rule 26.2(a)(2)(A) ................................................................................................ 5

## PRELIMINARY STATEMENT

Defendants' strategy of delay has a long history in this case, which is well-known to the Court. Chevron will not repeat it here. Delay is, in fact, virtually Defendants' sole defense. Because they are unable to meet the evidence against them, much of which comes from their own mouths and documents, Defendants now try, again, to put off their day of reckoning with complaints of unfairness and lack of resources to meet their legal obligations. This is part of their public relations and Second Circuit drumbeat, in which they seek to cast this Court, in the most personal and pejorative terms, as unjust and hostile and depriving them of due process. They pose as impecunious victims, benighted and without counsel adequate to the unfair task to which Chevron and the Court have subjected them. But Defendants' latest ploy is without merit. The Defendants' failure to fulfill their discovery obligations with proper productions and privilege logs should not be rewarded. Were the Court to continue all deadlines in this case by 30 days, it would result in beginning trial in mid-November, just before Thanksgiving, increasing the potential for the trial to continue through the year-end holiday period—a circumstance of considerable inconvenience if any jury has to be empanelled.[1] And given Defendants' past behavior, there is no reason to think that Defendants will not be back again, with yet another request for delay.

Furthermore, Defendants' claimed lack of resources is still undocumented, and the carbon-copy declarations they submit in connection with the present application shed no light on this circumstance. A host of prominent lawyers in numerous jurisdictions continue to litigate on

---

[1] This timing circumstance is of less salience in the event that, as Chevron has previously indicated, it determines to seek only equitable relief and attorneys' fees against these Defendants. Given Defendants' inability thus far to enforce the Ecuadorian judgment, an award of money damages is likely to be largely unrecoverable in any event, and a streamlined bench trial seeking an anti-racketeering injunctive order of divestment, disgorgement, and related relief could be a quicker and more effective remedy. *See* 18 U.S.C. § 1964. As the Court is aware, however, whether private civil litigants are able to secure injunctive relief under RICO is a question this Court has yet to decide and on which there is a split in the circuits, and thus there are potential legal impediments to an equity-only trial that Chevron seeks to have clarified before trial in its pending motion for summary judgment that is directed to Defendants' pleaded defenses. Dkt. 1349 at 34-35. Under the Court's order of yesterday, briefing on that motion now will be completed on October 6, 2013. Dkt. 1362.

their behalf to secure a payday from the fraudulent Ecuadorian judgment (Dkts. 570-1 (Canadian enforcement claim); 570-2 (Brazilian enforcement claim)), and Defendant Donziger has counsel representing him in three other litigations ongoing in the United States, so seems capable of re-taining counsel when it suits him.[2]  As this Court stated last month:

> [T]he fact that the LAPs currently are represented by counsel and litigating ag-gressively in Ecuador, Canada, Argentina, and Brazil as well as the Second Cir-cuit suggests that they are not without funds.  If those who control the money – and as far as the record discloses, they include Mr. Donziger – choose to spend it elsewhere or to regard this case as an unimportant sideshow, that is their preroga-tive.  But they are not entitled to delay this case on the basis of that self-serving decision. . . .  [I]t would be an utter abuse if Mr. Donziger's alleged plight in fact is a contrived refusal by those controlling the LAPs' funds (who appear to include Mr. Donziger) to decline to spend those funds for the defense of this action in or-der to obtain a tactical advantage . . . ."

Dkt. 1302 at 7-9 (July 16, 2013).

In addition, the near-identical declarations submitted by Mr. Donziger and LAP counsel Mr. Gomez are notable for their silence on what steps they have taken to date to comply with Judge Francis's order.  Both speak only in general terms to the steps that they will have to take in the future to comply.  Dkt. 1345, ¶ 3; Dkt. 1346, ¶ 4.  This, despite the fact that they filed their application for an Order To Show Cause only a week before their responses to Judge Francis's order were due.

Defendants' failure to comply with their pre-trial obligations has created a difficult situa-tion from the standpoint of trial management.  Both Mr. Donziger and Mr. Gomez have thus far failed to agree to exchange even a single piece of the pre-trial submissions required in the Joint Pre-Trial Order.  *See* Weitzman Declaration, ¶¶ 2-9.  When Chevron proposed a schedule for the

---

[2]    In addition to Donziger's active litigation of matters here in New York (Ex. 9) and in Louisiana (Ex. 10), he is pursuing two actions in Florida—and is represented by counsel in all of them.  Exs. 9, 10, 11.  This evidence bolsters this Court's previous finding that the decision not to hire counsel here—and thus to create a situation where a routine discovery order purportedly makes compliance with the schedule impossible—is part of a self-serving strategy.  Dkt. 1302 at 7.

exchange of materials, Defendants initially failed to respond. *Id.*, ¶ 3. When they finally did, Defendants proposed a schedule by which the parties would exchange the bulk of the materials on August 27, just three days before the deadline for the joint submission. *Id.*, ¶ 4. Donziger himself, notably absent from the process, responded only once to Chevron's communications, noting that he had authorized Stuart Gross to represent him in the discussions, and requesting that the parties agree to seek an extension of the Joint Pre-Trial Order deadline. *Id.* ¶ 5. Defendants then asserted that, in light of the Francis Order, they could not meet the court-ordered deadline for the Joint Pre-Trial Order. *Id.*, ¶ 6. Even after this Court stayed the requirements of the Francis Order, and Chevron again proposed a schedule for the exchange of materials, Donziger's counsel Gross expressed an inability to meet the deadline and reiterated Donziger's request for an extension. *Id.*, ¶¶ 7-8. While Gross indicated that Donziger was willing to provide only a draft proposed Verdict Form by August 23, he noted that it would not be "close to final" and that Donziger refuses to be bound by its contents. *Id.*, ¶ 8. Gross further requested that Chevron provide the remaining portions of the Pre-Trial Order (including witness list, exhibit list, and deposition designations) for Defendants' review, without a mutual exchange. When Chevron rejected his conditions and requests, Gross responded with invective and false accusations and then withdrew from assisting Donziger further. Most recently, counsel for the LAPs claimed that they were unable to provide a proposed Verdict Form by August 23 due to the previously scheduled deposition of Aaron Page. *Id.*, ¶ 9.

As things now stand, Chevron will be ready to submit its portions of the documents at the required time, but they will not reflect the input or positions of Defendants. This refusal or inability to cooperate will necessarily increase the number of motions in limine and other applications Chevron will be forced to file and have resolved before trial, just as it increased the number

of affirmative defenses upon which Chevron needed to move for summary judgment because Defendants would not specify those that they intended to pursue at trial and those they intended to abandon.  This refusal has effectively deprived the Court of the expected benefits of the *joint* submissions foreseen by the Federal Rules and the orderly narrowing of issues and facts for which trial is required.  In short, Defendants cannot demonstrate the required good cause to continue the deadlines set forth in the Court's scheduling order—many of which have already been continued at their request.  *See, e.g.*, Dkt. 1185 at 2 (granting two week extension of deposition schedule).

At bottom, however, Defendants' strategy is less about obtaining more time than it is about creating something Defendants think they can complain about to other audiences.  As the Court well knows, Defendants' strategy has included relentless public attacks on this Court.  Defendants seek more grist for this mill by generating a record of unsuccessful motions.  As Donziger once noted with respect to other litigation in this District before Judge Sand, "This backs up my litigation strategy of filing losing motions to create leverage."  Dkt. 28-8 (Exhibit 76) (2006.11.07 Entry in Composite of S. Donziger Personal Notes) (DONZ00027256) at 38 of 109.  If this Court denies, as unfounded, Defendants' latest request for further delay, then Defendants will no doubt attempt to spin the decision and claim that they have been denied due process and that Chevron "is using its limitless resources to crush defendants and win this case through might rather than merit."  Dkt. 1110 at 1.  This, despite the mountain of undisputed evidence proving Defendants' unlawful scheme to extort Chevron, the two-and-a-half years they have had to litigate this case (having been represented by experienced counsel for almost that entire period), or the fact that this Court already has granted relief that Defendants did not even request, by staying Defendants' obligation to comply with the Francis Order.  Dkt. 1350.

-4-

Accordingly, Defendants' application is meritless; but if the Court is inclined to grant Defendants some additional relief, the Court should order—at the very most—a finite extension and establish a pre-trial and trial schedule that does not reward Defendants for their dilatory tactics by depriving Chevron and the Court of the benefits of an orderly pre-trial process and, at the same time, require Defendants to commit that they will meet-and-confer on all outstanding issues in a prompt, good-faith fashion, and that they will seek no further delays.

## ARGUMENT

### I.      Defendants Fail to the Show Good Cause Required by the Federal Rules

On August 9, 2013, Magistrate Judge Francis issued an order requiring Defendants to comply with their duties under Local Civil Rule 26.2(a)(2)(A).  Dkt. 1333 (the "Francis Order"). Judge Francis found that Defendants' privilege logs were insufficiently detailed and ordered that Defendants provide supplemental logs correcting such deficiencies by August 23, 2013.  *Id.*  Defendants did not appeal or object to this order; instead, they now invoke the Francis Order as a basis to request a 30-day adjournment of *all* deadlines in the case.  Dkt. 1344.  Defendants argue that the Francis Order was "clearly erroneous" because Defendants are unable to comply within the time allotted for providing supplemental privilege logs.  *Id.* at 8.  Defendants do not question the merits of the Francis Order.  *See id.*

The Federal Rules provide that a "schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Defendants devote just four sentences to attempting to set forth a legal justification for the relief they seek.  Dkt. 1344 at 8-9.  Defendants attempt to tie their request to Rule 16(b)(4)'s "good cause" standard by arguing that the Francis Order imposes "unforeseen obligations."  Dkt. 1344 at 8-9.  But Chevron had pointed out to Defendants for months that their logs did not comply with their discovery obligations, and Defendants do not contend that Judge Francis erred in finding their logs and productions insufficient.

Dkts. 1194-4, 1194-5, 1195-6. 1195-7.  Accordingly, Judge Francis's order requiring Defendants to comply with their basic discovery obligations cannot constitute an "unforeseen obligation" sufficient to modify a scheduling order.

The single case Defendants offer in apparent support of the "unforeseen obligations" standard does not advance their argument.  There, the court found good cause and granted a motion for leave to amend after the deadline passed where a "significant" intervening decision changed the legal landscape as to a potential defense:  "[I]t appears that the *Symbol Technologies* decision provided a legal basis for [defendant] to assert the defense of prosecution laches, it was reasonable for [defendant] to conclude that this defense did not previously exist, and [defendant] acted promptly to assert the defense upon learning of its availability of the defense."  *Oxaal v. Internet Pictures Corp.*, 2002 U.S. Dist. LEXIS 5178, at *3-5, 2002 WL 485704, at *1-2 (N.D.N.Y. Mar. 27, 2002).  This reasoning has no application here.  And the decisions cited in *Oxaal* have no bearing either.  *See, e.g.*, *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1220-21 (D. Kan. 1995) (discovery of ground for additional claim ten weeks after deadline had passed for amendment of pleadings established good cause for extension); *Robinson v. Town of Colonie*, 1993 U.S. Dist. LEXIS 7464, 1993 WL 191166, at *3 (good cause to extend deadline to amend pleadings found one year after deadline had passed where party learned of basis for amendment during discovery)."

The Francis Order is not the type of event—such as an intervening change in law that makes available a previously unavailable defense—that could support a finding of good cause to modify a scheduling order.  Defendants have known of Chevron's objections to their privilege logs for several months; and Chevron moved to compel almost three months ago.  Document requests were due by December 1, 2012.  Dkt. 494.  Defendants thus had nearly three months to

prepare their privilege logs, which they provided on February 22, 2013. Dkt. 1195-1. Chevron fulfilled its discovery obligations; Defendants did not. Defendants' inability to meet Judge Francis's deadline is a result of their own (and their prior counsel's) failure to abide by their discovery obligations. Courts within the Second Circuit have consistently held that "[c]ounsel's inadvertence or oversight is not good cause for the purposes of Rule 16." *AMW Materials Testing, Inc. v. Town of Babylon*, 215 F.R.D. 67, 71 (E.D.N.Y. 2003) (citing *Bracy v. State of New York, et al.*, 2001 U.S. Dist. LEXIS 19986, at *3, 2001 WL 1550666, at *1 (S.D.N.Y. Nov. 28, 2001); *Carnrite v. Granada Hosp. Group, Inc., et al.*, 175 F.R.D. 439, 448 (W.D.N.Y. 1997)). "Indeed, if oversight or inadvertence constituted good cause, all scheduling orders would become meaningless." *AMW Materials Testing, Inc.*, 215 F.R.D. at 71.

## II. This Court Has Already Rejected Defendants' Requests to Delay This Action, and They Offer No Persuasive Reason to Reach a Different Result Here

Putting Defendants' stay request in context, they have time and again sought to delay this action on the same basis they raise here, namely a purported inability to meet the demands of the case due to an alleged lack of resources. Dkts. 1168, 1197, 1211. This Court has been diligent in addressing Defendants' requests, giving them all due consideration. *See, e.g.*, Dkt. 1176 (addressing Donziger's request for transitional procedural safeguards: "This matter should be taken up promptly. The Court requests a report from the Special Masters, as promptly as is feasible, with respect to the deposition schedule and other matters pending before them that are implicated by Mr. Donziger's procedural requests.").

And the Court has bent over backwards to accommodate similar requests from Defendants, even where they were lacking in merit. *See* Dkt. 1185 at 2 ("The Court is unpersuaded on the present record that there is sufficient reason for extending the completion of depositions (with the two noted exceptions) beyond June 14. Nevertheless, it hereby affords Mr. Donziger

the two weeks he requested only three days ago and therefore modifies the date for completion of

the remaining depositions to June 28, 2013."). The Court, moreover, invited Donziger to submit

requests for further extension, provided such requests were supported by evidence, noting that it

"remain[ed] willing to consider any further request that Mr. Donziger may make on the basis of

affidavits and other competent evidence addressing all of the pertinent issues." *Id.* But Defend-

ants refused to file any such affidavits attesting to their financial situation in any detail at all or

provide any evidence that they cannot afford to hire counsel. At the same time, Defendants con-

tinue to pursue foreign enforcement actions and litigate in the Second Circuit. Their active pur-

suit of those actions, combined with their refusal to submit a sworn affidavit detailing their fi-

nancial situation, makes it clear that Defendants have money and have strategically declined to

spend it here. They may "choose to spend it elsewhere or to regard this case as an unimportant

sideshow [as] that is their prerogative. But they are not entitled to delay this case on the basis of

that self-serving decision." Dkt. 1302 at 7.

Despite this Court's rejection of previous requests for a continuance and its demand that

future requests be supported by evidence of Defendants' financial situation, Defendants here pre-

sent the same arguments and, again, fail to present any evidence supporting their position. *See*

Dkt. 1302 (rejecting Donziger's request for a three month stay). As this Court has found with

respect to Donziger's retention agreement, "[u]nder the terms of their agreement, the LAPs are

obliged to pay for Mr. Donziger's defense in this action." Dkt. 1302 at 6 (citing Ex. 1122).

Donziger provides no evidence any attempts to have the LAPs pay for his defense in this action,

and he has been able to retain counsel for the multiple other litigations in which he is presently

involved. *See* Exs. 9, 10, & 11.

## CONCLUSION

For these reasons, Chevron respectfully requests the Court deny Defendants' application.

-8-

Dated: August 23, 2013

New York, New York

Respectfully submitted,

*/s/ Randy M. Mastro*
Randy M. Mastro
Andrea E. Neuman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile:  212.351.4035

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile:  213.229.7520

*Attorneys for Chevron Corporation*