### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

CHEVRON CORPORATION,

            Plaintiff,

     v.

STEVEN DONZIGER *et al.*,

            Defendants.

11-CV-0691

The Honorable Lewis A. Kaplan, U.S.D.J.
The Honorable James C. Francis, U.S.M.J.

### DEFENDANTS' PROPOSED DRAFT
### SPECIAL VERDICT FORM

GOMEZ LLC
Attorney At Law
111 Quimby Street, Suite 8
Westfield, NJ 07090
Tel 908.789.1080
Fax 908.789.1081
Email jgomez@gomezllc.com

*Counsel for Defendants*
*Hugo Gerardo Camacho and*
*Javier Piaguaje Payaguaje*

STEVEN R. DONZIGER, *pro se*

LAW OFFICES OF
STEVEN R. DONZIGER, P.C.
245 W. 104th Street, #7D
New York, NY 10025
Tel 212.570.4499
Fax 212.409.8628
Email StevenRDonziger@gmail.com

*Counsel for Defendants*
*Law Offices of Steven R. Donziger, LLC and*
*Donziger & Associates, PLLC*

Defendants Hugo Gerardo Camacho, Javier Piaguaje Payaguaje, Steven R. Donziger, the Law Offices of Steven R. Donziger, LLC and Donziger & Associates, PLLC (collectively, "Defendants") hereby respectfully submit the following Proposed Verdict Form.  Defendants reserve the right to revise, amend and/or supplement this Proposed Verdict Form and to object to requests by the Plaintiff.

## SPECIAL VERDICT FORM (PROPOSED)

### COUNT I:

### Substantive RICO Claim Against Steven Donziger, Law Offices of Steven R. Donziger, Donziger & Associates, PLLC

1.  Was Steven Donziger an attorney licensed to practice in Ecuador?

    Yes: _____

    No: _____

2.  Was Steven Donziger an attorney of record in the Lago Agrio litigation in Equador?

    Yes: _____

    No: _____

3.  Did attorneys who were licensed to prapcte law in Ecuador make litigation decisions in the Lago Agrio ligitation that were independent of Steven Donziger?

    Yes: _____

    No: _____

4.  Did the Lago Agrio plaintiffs' have a legal right or legal claim against Chevron?

    Yes: _____

    No: _____

5.  Did Chevron file papers in the Ecuador court concerning the "independence" of Richard Cabrera before the trial court entered a judgment against Chevron?

    Yes: _____

    No: _____

6.  Did the trial court in Ecuador rely on conclusions made Richard Cabrera in reaching its judgment in favor of the Lago Agrio plaintiffs against Chevron?

3

Yes: _____

No: _____

7. Did the Richard Cabrera report cause the judgment to be entered in favor of the Lago Agrio plaintiffs and against Chevron?

Yes: _____

No: _____

8. Did the appellate court in Ecuador affirm the Lago Agrio plaintiffs' judgment against Chevron

Yes: _____

No: _____

**Has Chevron proven by a preponderance of the evidence the following:**

9. A group of people associated together for a common purpose as an "enterprise" affecting interstate or foreign commerce, as defined in the Court's Instructions?

Yes: _____

No: _____

*If you answered Question 1 "yes," proceed to the next question. If not, proceed to the section addressing Count III.*

10. Defendant Steven Donziger was associated with that enterprise?

Yes: _____

No: _____

**Act No. 1A**

11. Steven Donziger intentionally and knowingly transmitted an email on June 14, 2006 to Alejandro Ponce Villacis with the subject "Need plan" for the purpose of executing a scheme or artifice to defraud?

Yes: _____

No: _____

12. Did Chevron suffer an injury as a direct and proximate result of this email?

Yes: _____

No: _____

13. Was the email sent in connection with the Lago Agrio litigation in Ecuador?

Yes: _____

No: _____

**Act No. 1B**

14. Steven Donziger intentionally and knowingly transmitted an email on July 26, 2006 to Joseph Kohn with the subject "Potentially huge" for the purpose of executing a scheme or artifice to defraud?

Yes: _____

No: _____

15. Did Chevron suffer an injury as a direct and proximate result of this email?

Yes: _____

No: _____

16. Was the email sent in connection with the Lago Agrio litigation in Ecuador?

Yes: _____

No: _____

**Act No. 1C**

17. Steven Donziger intentionally and knowingly transmitted an email on April 3, 2007 to David Chapman with the subject "Re:  Approach for assessment" for the purpose of executing a scheme or artifice to defraud?

5

Yes: _____

No: _____

18. Did Chevron suffer an injury as a direct and proximate result of this email?

Yes: _____

No: _____

19. Was the email sent in connection with the Lago Agrio litigation in Ecuador?

Yes: _____

No: _____

**Act No. 1D**

20. Steven Donziger intentionally and knowingly transmitted an email on May 7, 2007 to Luis Yanza with the subject "Re: JK" for the purpose of executing a scheme or artifice to defraud?

Yes: _____

No: _____

21. Did Chevron suffer an injury as a direct and proximate result of this email?

Yes: _____

No: _____

22. Was the email sent in connection with the Lago Agrio litigation in Ecuador?

Yes: _____

No: _____

**Act No. 1E**

23. Steven Donziger intentionally and knowingly transmitted an email on May 10, 2007 to Pablo Fajardo and Luis Yanza with the subject "Re:  CONCERN CONFIDENTIAL" for the purpose of executing a scheme or artifice to defraud?

6

Yes: _____

No: _____

24. Did Chevron suffer an injury as a direct and proximate result of this email?

Yes: _____

No: _____

25. Was the email sent in connection with the Lago Agrio litigation in Ecuador?

Yes: _____

No: _____

**Act No. 1F**

26. Steven Donziger intentionally and knowingly transmitted an email on July 17, 2007 to Pablo Fajardo and Luis Yanza with the subject "Ideas for meeting with Richard" for the purpose of executing a scheme or artifice to defraud?

Yes: _____

No: _____

27. Did Chevron suffer an injury as a direct and proximate result of this email?

Yes: _____

No: _____

28. Was the email sent in connection with the Lago Agrio litigation in Ecuador?

Yes: _____

No: _____

**Act No. 1G**

29. Steven Donziger intentionally and knowingly transmitted an email on November 17, 2007 to Doug Beltman with the subject "Re:  Unjust enrichment" for the purpose of executing a scheme or artifice to defraud?

Yes: _____

No: _____

30. Did Chevron suffer an injury as a direct and proximate result of this email?

Yes: _____

No: _____

31. Was the email sent in connection with the Lago Agrio litigation in Ecuador?

Yes: _____

No: _____

**Act No. 1H**

32. Steven Donziger intentionally and knowingly transmitted an email on February 27, 2008 to Doug Beltman with the subject "Re:  Start on report text; human tox annex" for the purpose of executing a scheme or artifice to defraud?

Yes: _____

No: _____

33. Did Chevron suffer an injury as a direct and proximate result of this email?

Yes: _____

No: _____

34. Was the email sent in connection with the Lago Agrio litigation in Ecuador?

Yes: _____

No: _____

**Act No. 1I**

35. Steven Donziger intentionally and knowingly transmitted an email on March 6, 2008 to Doug Beltman with the subject "Re:  we have Spanish translation of Uhl report already" for the purpose of executing a scheme or artifice to defraud?

Yes: _____

No: _____

36. Did Chevron suffer an injury as a direct and proximate result of this email?

Yes: _____

No: _____

37. Was the email sent in connection with the Lago Agrio litigation in Ecuador?

Yes: _____

No: _____

**Act No. 1J**

38. Steven Donziger intentionally and knowingly transmitted an email on March 30, 2008 to Douglas Beltman with the subject "what do u think of this" for the purpose of executing a scheme or artifice to defraud?

Yes: _____

No: _____

39. Did Chevron suffer an injury as a direct and proximate result of this email?

Yes: _____

No: _____

40. Was the email sent in connection with the Lago Agrio litigation in Ecuador?

Yes: _____

No: _____

**Act No. 1K**

41. Steven Donziger intentionally and knowingly transmitted an email on December 1, 2008 to Felicity Harrison with the subject "Re:  Request for comment on Chevon press release re dispute in Ecuador" for the purpose of executing a scheme or artifice to defraud?

9

Yes: _____

No: _____

42. Did Chevron suffer an injury as a direct and proximate result of this email?

Yes: _____

No: _____

43. Was the email sent in connection with the Lago Agrio litigation in Ecuador?

Yes: _____

No: _____

SIMILAR QUESTIONS ANY OTHER PREDICATE ACT

ON WHICH CHEVRON INTENDS TO PRESENT TO THE JURY

*If you answered "yes" to all  questions associated with two or more of the Acts listed above, proceed to the next question.  If not, proceed to the section addressing Count III.*

44. Defendant Steven Donziger knowingly engaged in a pattern of racketeering activity by committing at least two "predicate acts," listed above, , that related to each other and that amounted to, or threatened the likelihood of, continued criminal activity?

Yes: _____

No: _____

*If you answered "yes" to the above question, proceed to the next question.  If not, proceed to the section addressing Count III.*

45. Defendant Steven Donziger conducted or participated in, either directly or indirectly, the conduct of the enterprise through that pattern of racketeering activity?

Yes: _____

No: _____

10

*If you answered "yes" to the above question, proceed to the next question.  If not, proceed to the section addressing Count III.*

46. Chevron suffered injury to its business or property as a direct and proximate result of that pattern of racketeering activity?

Yes: _____

No:  _____

*If you answered "yes" to the above question, proceed to the next question.  If not, proceed to the section addressing Count III..*

47. In engaging in a pattern of racketeering activity, Defendant Steven Donziger had the authority to act in the name or on behalf of both Defendants the Law Offices of Steven R. Donziger and Donziger & Associates, PLLC?

Yes: _____

No:  _____

*Complete the following only if you answered "yes" all of the above questions (and to all questions associated with two or more of the Acts listed in Question 3)*

We find that Chevron should be awarded compensatory damages as follows:

Attorney's fees: $_____

Other damages (specify)

- [_____]: $_____

- [_____]: $_____

- [_____]: $_____

## COUNT II:

### RICO Conspiracy Claim Against Steven Donziger, Law Offices of Steven R. Donziger, Donziger & Associates, PLLC

*Only answer this question if you have found in favor of Chevron on Count I.*

**Has Chevron proven by a preponderance of the evidence the following:**

48. Defendant Steven Donziger knowingly and willfully agreed with the other Defendants to commit the predicate acts found in Count I? ?

Yes: _____

No: _____

*If you answered Question 7 "yes," proceed to the next question.  If you answered Question 7 "no," leave Questions 8 and 9 blank and proceed to Question 10.*

49. Chevron suffered injury to its business or property as a result of these predicate acts?

Yes: _____

No: _____

*If you answered Question 8 "yes," proceed to the next question.  If you answered Question 8 "no," leave Question 9 blank and proceed to Question 10.*

50. In agreeing to facilitate the enterprise's pattern of racketeering activity, Defendant Steven Donziger had the authority to act in the name or on behalf of both Defendants the Law Offices of Steven R. Donziger and Donziger & Associates, PLLC?

Yes: _____

No: _____

*Complete the following only if you answered Questions 7 and 8 "yes."*

We find that Chevron should be awarded compensatory damages as follows:

Attorney's fees: $_____

Other damages (specify)

- [_____]: $_____

- [_____]: $_____

12

- [_____]: $_____

$ _____
//

<u>**COUNT THREE**</u>
**(Fraud)**
**(Against All Defendants)**

**A.     ALLEGED FRAUDULENT REPRESENTATIONS[1]**

1.      Did Steven Donziger, the Law Offices of Steven R. Donziger, LLC, Donziger & Associates, PLLC, Hugo Camacho, and/or Javier Piaguaje make the following representation to [INSERT NAME OF RECIPIENT OF REPRESENTATION] (referred to below as the "Recipient")?[2]

"[IDENTIFY STATEMENT]" (referred to below as the alleged "Representation")

*No ____ / Yes ____ (as to Steven Donziger)*
*No ____ / Yes ____ (as to the Law Offices of Steven R. Donziger)*
*No ____ / Yes ____ (as to Donziger & Associates)*
*No ____ / Yes ____ (as to Hugo Camacho)*
*No ____ / Yes ____ (at to Javier Piaguaje)*

*If "No" as to all Defendants proceed no further and report to the Court.*
*If "Yes" as to any Defendants proceed to the following question.*

2.      Was the Representation such that the Recipient, in consideration of his or her particular level of sophistication and experience, could *reasonably* have perceived the Representation as a statement of *present fact*, as opposed to the expression of an opinion or a belief, and as opposed to a prediction or statement of expectation regarding future events?

*If "No" proceed no further and report to the Court.*
*If "Yes" proceed to the following question.*

3.      Did the Recipient perceive the Representation as one of *present fact*, as opposed to the expression of an opinion or the expression of expectation of future events?

*If "No" proceed no further and report to the Court.*
*If "Yes" proceed to the following question.*

---

[1] DRAFTER'S NOTE:  The jury must be presented separately with the below set of questions for *each* alleged misrepresentation.

[2] DRAFTER'S NOTE: By virtue of proposing a verdict form to accommodate Chevron's "third-party fraud" claims, the Lago Agrio Plaintiffs have no intention of waiving their argument that such claims are improper as a matter of New York and Second Circuit law.

4.      Was the Representation was false?

*If "No" proceed no further and report to the Court.*
*If "Yes" proceed to the following question.*

5.      Was the Representation made either: (a) with actual knowledge that the representation was false at the time it was made; or (b) with reckless disregard for whether the representation was true or false?

*No ___ / Yes ___ (as to Steven Donziger)*
*No ___ / Yes ___ (as to the Law Offices of Steven R. Donziger)*
*No ___ / Yes ___ (as to Donziger & Associates)*
*No ___ / Yes ___ (as to Hugo Camacho)*
*No ___ / Yes ___ (at to Javier Piaguaje)*

*If "No" as to all Defendants proceed no further and report to the Court.*
*If "Yes" as to any Defendants proceed to the following question.*

6.      Did the individual or entity that made the Representation make it with the intent to induce the Recipient to [IDENTIFY ACTION(S) OR INACTION(S) OF RECIPIENT THAT ALLEGEDLY CAUSED HARM TO CHEVRON] (referred to below as the alleged "Adverse Action(s)")?[3]

*No ___ / Yes ___ (as to Steven Donziger)*
*No ___ / Yes ___ (as to the Law Offices of Steven R. Donziger)*
*No ___ / Yes ___ (as to Donziger & Associates)*
*No ___ / Yes ___ (as to Hugo Camacho)*
*No ___ / Yes ___ (at to Javier Piaguaje)*

*If "No" as to all Defendants proceed no further and report to the Court.*
*If "Yes" as to any Defendants proceed to the following question.*

7.      Did Recipient take the Adverse Action(s)?[4]

*If "No" to all proceed no further and report to the Court.*
*If "Yes" to any proceed to the following question.*

---

[3] DRAFTER'S NOTE: To the extent that any of Chevron's common-law fraud theories entail multiple, alleged Adverse Actions taken by the recipient, certain follow-up questions will need to be posed separately as to each alleged Adverse Action.

[4] DRAFTER'S NOTE: Substitute "Adverse Inaction(s)" where it is alleged that the alleged misrepresentation caused a third party to refrain from taking action in a way that injured Chevron.

8.   Was the Representation material—i.e., something that a reasonable person would consider important in the broader context of all of the information already known to him/her?

> *If "No" proceed no further and report to the Court.*
> *If "Yes" proceed to the following question.*

9.   Was the Representation a substantial factor in causing the Recipient to take the Adverse Action(s)?

> *If "No" proceed no further and report to the Court.*
> *If "Yes" proceed to the following question.*

10.   Was Chevron aware of information raising questions as to the truth of the Representation prior to the time that the Recipient took the Adverse Action(s)?

> *If "No" proceed to question #12.*
> *If "Yes" proceed to the following question.*

11.   Did Chevron have an opportunity, whether or not taken, to inform the Recipient of information raising questions as to the truth of the Representation prior to the time that the Recipient took the Adverse Action(s)?

> *If "No" proceed to the following question.*
> *If "Yes" proceed no further and report to the Court.*

12.   Prior to the time that the Recipient took the Adverse Action(s), was Chevron aware that the Representation was made to the Recipient?

> *If "No" proceed to question #15.*
> *If "Yes" proceed to the next question.*

13.   Did Chevron perform a reasonably diligent investigation of whether the Representation was truthful, as one would expect relative to: Chevron's level of sophistication; its resources; its interest in testing the truthfulness of the Representation; and the amount of time within which Chevron could have performed such an investigation prior to the Recipient's taking of the Adverse Action(s)?

> *If "No" proceed to the following question.*
> *If "Yes" proceed to question #15.*

14.   Prior to the Recipient's taking of the Adverse Actions, could Chevron have discovered—through a reasonably diligent investigation as described at question #13—information raising questions as to the truthfulness of the Representation?

> *If "No" proceed to the following question.*

16

*If "Yes" proceed no further and report to the Court.*

15.    Was the Recipient aware of information raising questions as to the truth of the Representation prior to the time that the Recipient took the Adverse Action(s)?

*If "No" proceed to the following question.*
*If "Yes" proceed no further and report to the Court.*

16.    Did Recipient perform a reasonably diligent investigation of whether the Representation was truthful, as one would expect relative to: Recipient's level of sophistication; its level of expertise; its resources; and its interest in testing the truth of the Representation?

*If "No" proceed to the following question.*
*If "Yes" proceed to question #18.*

17.    Could Recipient have discovered, through a reasonably diligent investigation as described at question #16, information raising questions as to the truthfulness of the Representation?

*If "No" proceed to the following question.*
*If "Yes" proceed no further and report to the Court.*

18.    Did Chevron suffer pecuniary losses as the direct and proximate cause of the Adverse Action, *other than* any pecuniary losses resulting from injury to Chevron's reputation?

*If "No" proceed no further and report to the Court.*
*If "Yes" proceed to the following question.*

19.    Which of the following categories of pecuniary loss did Chevron suffer as the direct and proximate cause of the Adverse Action?

[SPECIFICALLY LIST CATEGORIES OF LOSS; ALLOW JURY TO FILL IN $ AMOUNTS NEXT TO EACH]

**B.    ALLEGED FRAUDULENT OMISSIONS[5]**

1.    Is it true that [INSERT CONTENT OF ALLEGED OMISSION]?

*If "No" proceed no further and report to the Court.*
*If "Yes" proceed to the following question.*

---

[5] DRAFTER'S NOTE:  The jury must be presented separately with the below set of questions for *each* alleged misrepresentation.

2.    Were Steven Donziger, the Law Offices of Steven R. Donziger, LLC, Donziger & Associates, PLLC, Hugo Camacho, and/or Javier Piaguaje aware on [DATE OF ALLEGED OMISSION] that [INSERT CONTENT OF ALLEGED OMISSION]?

*No ___ / Yes ___ (as to Steven Donziger)*
*No ___ / Yes ___ (as to the Law Offices of Steven R. Donziger)*
*No ___ / Yes ___ (as to Donziger & Associates)*
*No ___ / Yes ___ (as to Hugo Camacho)*
*No ___ / Yes ___ (at to Javier Piaguaje)*

*If "No" at to all proceed no further and report to the Court.*
*If "Yes" as to any proceed to the following question.*

3.    Did Steven Donziger, the Law Offices of Steven R. Donziger, LLC, Donziger & Associates, PLLC, Hugo Camacho, and/or Javier Piaguaje (referred to below as the alleged "Omitting Parties") disclose to [IDENTIFY THIRD PARTY TO WHOM DEFENDANTS ALLEGEDLY SHOULD HAVE DISCLOSED OMMITTED INFORMATION] that [INSERT CONTENT OF ALLEGED OMISSION] (referred to below as the alleged "Omitted Information")?

*No ___ / Yes ___ (as to Steven Donziger)*
*No ___ / Yes ___ (as to the Law Offices of Steven R. Donziger)*
*No ___ / Yes ___ (as to Donziger & Associates)*
*No ___ / Yes ___ (as to Hugo Camacho)*
*No ___ / Yes ___ (at to Javier Piaguaje)*

*If "No" as to any proceed to the following question.*
*If "Yes" as to all proceed no further and report to the Court.*

4.    Did the Omitting Parties owe a duty to [IDENTIFY THIRD PARTY TO WHOM DEFENDANTS ALLEGEDLY SHOULD HAVE DISCLOSED OMMITTED INFORMATION] to disclose the "Omitted Information."

*If "No" as to all proceed no further and report to the Court.*
*If "Yes" as to any proceed to the following question.*

5.    Did the Omitting Parties *actively conceal* the Omitted Information from [IDENTIFY THIRD PARTY TO WHOM DEFENDANTS ALLEGEDLY SHOULD HAVE DISCLOSED OMMITTED INFORMATION] by thwarting its/his/her efforts to learn the truth.

*If "No" proceed to the following question*
*If "Yes" proceed to question #8.*

6.    Did the Omitting Parties make affirmative representations to [IDENTIFY THIRD PARTY TO WHOM DEFENDANTS ALLEGEDLY SHOULD HAVE DISCLOSED

OMMITTED INFORMATION] concerning the same general subject matter as the Omitted Information (referred to as the "Affirmative Representations")?

*If "No" proceed no further and report to the Court*
*If "Yes" proceed to the following question.*

7.     Was the Omitted Information material—i.e., something that a reasonable person would consider important in the broader context of all of the information already known to him/her?

*If "No" proceed no further and report to the Court.*
*If "Yes" proceed to the following question.*

8.     Were the Affirmative Representations presented such that a reasonably prudent person would conclude that the Affirmative Representations were *exhaustive* as to their subject matter—*i.e.*, a reasonably prudent person would interpret the Affirmative Representations as a tacit assertion that no other material facts exist?

*If "No" proceed no further and report to the Court*
*If "Yes" proceed to the following question.*

9.     Did the Omitting Parties withhold the Omitted Information with the intent to induce the Recipient to [IDENTIFY ACTION(S) OR INACTION(S) OF THIRD PARTY THAT ALLEGEDLY CAUSED HARM TO CHEVRON] (referred to below as the "Adverse Action(s)")?[6]

*No ___ / Yes ___ (as to Steven Donziger)*
*No ___ / Yes ___ (as to the Law Offices of Steven R. Donziger)*
*No ___ / Yes ___ (as to Donziger & Associates)*
*No ___ / Yes ___ (as to Hugo Camacho)*
*No ___ / Yes ___ (at to Javier Piaguaje)*

*If "No" as to all Defendants proceed no further and report to the Court.*
*If "Yes" as to any Defendants proceed to the following question.*

10.    Did [IDENTIFY THIRD PARTY TO WHOM DEFENDANTS ALLEGEDLY SHOULD HAVE DISCLOSED OMMITTED INFORMATION] take the Adverse Action(s)?[7]

*If "No" to all proceed no further and report to the Court.*
*If "Yes" to any proceed to the following question.*

---

[6] DRAFTER'S NOTE: To the extent that any of Chevron's common-law fraud theories entail multiple, alleged Adverse Actions taken by the recipient, certain follow-up questions will need to be posed separately as to each alleged Adverse Action.

[7] DRAFTER'S NOTE: Substitute "Adverse Inaction(s)" where it is alleged that the alleged misrepresentation caused a third party to refrain from taking action in a way that injured Chevron.

11.    Was a lack of knowledge of the Omitted Information a substantial factor in causing [IDENTIFY THIRD PARTY TO WHOM DEFENDANTS ALLEGEDLY SHOULD HAVE DISCLOSED OMMITTED INFORMATION] to take the Adverse Action(s)?

*If "No" proceed no further and report to the Court.*
*If "Yes" proceed to the following question.*

12.    Was Chevron aware of the Omitted Information, or substantially similar information, prior to the time that [IDENTIFY THIRD PARTY TO WHOM DEFENDANTS ALLEGEDLY SHOULD HAVE DISCLOSED OMMITTED INFORMATION] took the Adverse Action(s)?

*If "No" proceed to question #14.*
*If "Yes" proceed to the following question.*

13.    Did Chevron have an opportunity, whether or not taken, to inform the [IDENTIFY THIRD PARTY TO WHOM DEFENDANTS ALLEGEDLY SHOULD HAVE DISCLOSED OMMITTED INFORMATION] of the Omitted Information or substantially similar information prior to the time that he/she/it took the Adverse Action(s)?

*If "No" proceed to the following question.*
*If "Yes" proceed no further and report to the Court.*

14.    To learn the true facts, including the Omitted Information, did Chevron perform a reasonably diligent investigation relative to: Chevron's level of sophistication; its resources; its interest in testing the truthfulness of the Representation; and the amount of time within which Chevron could have performed such an investigation prior to the Adverse Action(s)?

*If "No" proceed to the following question.*
*If "Yes" proceed to question #16.*

15.    Prior to the Adverse Action(s), could Chevron have discovered—through a reasonably diligent investigation as described at question #14—the Omitted Information or substantially similar information?

*If "No" proceed to the following question.*
*If "Yes" proceed no further and report to the Court.*

16.    To learn the true facts, including the Omitted Information, did [IDENTIFY THIRD PARTY TO WHOM DEFENDANTS ALLEGEDLY SHOULD HAVE DISCLOSED OMMITTED INFORMATION] perform a reasonably diligent investigation, as one

20

would expect relative to his/her/its level of sophistication, level of expertise, available resources, and interest in ascertaining the truth?

*If "No" proceed to the following question.*
*If "Yes" proceed to question #18.*

17.    Could [IDENTIFY THIRD PARTY TO WHOM DEFENDANTS ALLEGEDLY SHOULD HAVE DISCLOSED OMMITTED INFORMATION] have discovered, through ordinary intelligence and/or a reasonably diligent investigation as described at question #16, the Omitted Information or substantially similar information?

*If "No" proceed to the following question.*
*If "Yes" proceed no further and report to the Court.*

18.    Did Chevron suffer pecuniary losses as the direct and proximate cause of the Adverse Action, *other than* any pecuniary losses resulting from injury to Chevron's reputation?

*If "No" proceed no further and report to the Court.*
*If "Yes" proceed to the following question.*

19.    Which of the following categories of pecuniary loss did Chevron suffer as the direct and proximate cause of the Adverse Action?

[SPECIFICALLY LIST CATEGORIES OF LOSS; ALLOW JURY TO FILL IN $ AMOUNTS NEXT TO EACH]

**COUNT SEVEN**
(Civil Conspiracy)
(Against All Defendants)

*Proceed to answer the following questions only if you have decided in favor of Chevron on Counts 1, 2 or 3.*

*If you have decided in favor of Chevron on Counts 1, 2 or 3, then the following questions may only be answered as to defendants you found liable in Counts 1, 2 or 3.*

*Otherwise, proceed to Question ___.*

**HAS CHEVRON PROVEN BY A PREPONDERANCE OF THE EVIDENCE EACH OF THE FOLLOWING?**

**1.     Did defendants Steven Donziger, the Law Offices of Steven R. Donziger, LLC, Donziger & Associates, PLLC, Hugo Camacho and/or Javier Piaguaje enter into an agreement with at least one other individual to obtain property from Chevron through tortious acts?**

No ___ / Yes ___ (as to Steven Donziger)

No ___ / Yes ___ (as to the Law Offices of Steven R. Donziger)

No ___ / Yes ___ (as to Donziger & Associates)

No ___ / Yes ___ (as to Hugo Camacho)

No ___ / Yes ___ (at to Javier Piaguaje)

If "No" as to all proceed no further and report to the Court.

If "Yes" as to any proceed to the following question.

**2.     Did defendants Steven Donziger, the Law Offices of Steven R. Donziger, LLC, Donziger & Associates, PLLC, Hugo Camacho and/or Javier Piaguaje commit an "overt act," as defined in the Court's Instructions, in furtherance of the agreement to obtain property from Chevron through tortious acts?**

No ___ / Yes ___ (as to Steven Donziger)

No ___ / Yes ___ (as to the Law Offices of Steven R. Donziger)

No ___ / Yes ___ (as to Donziger & Associates)

No ___ / Yes ___ (as to Hugo Camacho)

No ___ / Yes ___ (at to Javier Piaguaje)

If "No" as to all proceed no further and report to the Court.

If "Yes" as to any proceed to the following question.

**3.     Did defendants Steven Donziger, the Law Offices of Steven R. Donziger, LLC, Donziger & Associates, PLLC, Hugo Camacho and/or Javier Piaguaje participate in the**

22

conspiracy with the intent to further its plan or purpose to obtain property from Chevron through tortious acts?

No ___ / Yes ___ (as to Steven Donziger)
No ___ / Yes ___ (as to the Law Offices of Steven R. Donziger)
No ___ / Yes ___ (as to Donziger & Associates)
No ___ / Yes ___ (as to Hugo Camacho)
No ___ / Yes ___ (at to Javier Piaguaje)

If "No" as to all proceed no further and report to the Court.
If "Yes" as to any proceed to the following question.

**4.      Did Chevron suffer injury to its business or property as a result of the conspiracy to obtain property from Chevron through tortious acts?**

No ___ / Yes ___ (as to Steven Donziger)
No ___ / Yes ___ (as to the Law Offices of Steven R. Donziger)
No ___ / Yes ___ (as to Donziger & Associates)
No ___ / Yes ___ (as to Hugo Camacho)
No ___ / Yes ___ (at to Javier Piaguaje)

If "No" as to all proceed no further and report to the Court.
If "Yes" as to any proceed to the following question.

23