UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
       :

CHEVRON CORPORATION,
       :

          Plaintiff,
       :

       :

    -against-
       :   Case No.  11 Civ.  0691 (LAK)

       :

STEVEN R.  DONZIGER, et al.,
       :

       :

          Defendants.
       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## CHEVRON CORPORATION'S RESPONSE
## TO ORDER TO SHOW CAUSE
## WHY PROCEEDINGS SHOULD NOT BE STAYED
## PENDING DISPOSITION OF PETITION FOR WRIT OF MANDAMUS
## UNDER CONSIDERATION BY THE UNITED STATES
## COURT OF APPEALS FOR THE SECOND CIRCUIT

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ....................................................................................................... 2

I.    Defendants' Petition for Mandamus Is Not Likely to Succeed .......................................... 2

II.   Defendants Face No Irreparable Injury, and Identify No Pre-Trial Tasks or Evidence That Would be Eliminated by Mandamus Relief.................................................. 3

III.  Delay Has Been Defendants' Strategy From the Outset Because it Furthers Their Corrupt Scheme, Thereby Prejudicing Chevron and Offending the Public Interest ........................................................................................................ 9

CONCLUSION...................................................................................................... 11

# TABLE OF AUTHORITIES

## Cases

*Cheney v. U.S. Dist. Court*,
   542 U.S. 367,  124 S. Ct. 2576, 2586 (2004).................................................................... 2

*Chevron Corp. v. Naranjo*,
   667 F.3d 232 (2d Cir. 2012) ...................................................................................... 11

*Chevron v. Donziger*,
   886 F. Supp. 2351 (S.D.N.Y. 2012) ........................................................................... 5

*Citibank, N.A. v. Hakim*,
   92 CIV. 6233 (MBM), 1993 WL 481335 (S.D.N.Y. Nov. 18, 1993) ...................................... 9

*Donlon Industries, Inc. v. Forte*,
   402 F. 2d 935 (2d Cir. 1968) ..................................................................................... 2

*Employers Ins. of Wausau v. News Corp.*,
   06 CIV.1602 SAS, 2008 WL 4560687 (S.D.N.Y. Oct. 6, 2008)............................................ 2

*In re Albert*,
   99-31520, 2002 WL 1432663 (Bankr. S.D.N.Y. June 20, 2002) ......................................... 9

*Mohammed v. Reno*,
   309 F.3d 95 (2d Cir. 2002) ....................................................................................... 3

*United States v. Engstrum*,
   2:08-CR-430 TS, 2009 WL 2338350 (D. Utah July 29, 2009) ................................................. 3

*United States v. Erie Cnty., NY*,
   09-CV-849S, 2010 WL 1038650 (W.D.N.Y. Mar. 19, 2010) ................................................. 2

*United States v. Fuentes*,
   No. 09-cr-143, 2012 WL 4754736 (W.D.N.Y. April 25, 2012)............................................... 5

*Wyatt ex rel. Rawlins v. Sawyer*,
   190 F.R.D. 685 (M.D. Ala. 1999)............................................................................... 3

## Statutes

N.Y. CPLR § 5303............................................................................................... 11

## PRELIMINARY STATEMENT

Defendants, who have prepared and submitted dozens of pages of briefing in repeated requests for stays and continuances over the past several weeks (*e.g.* Dkt. 1370, 1353, 1267, 1249, 1221, 1211, 1209, 1197), assert once again that they do not have the resources to meet their pretrial obligations on the current schedule, and thus, should not have to "expend their limited resources now when a forthcoming decision from the Second Circuit may require the parties to go back to the drawing board, at least in part." Dkt. 1370 at 3. But Defendants' motion for a stay based on the alleged burden of trial preparation is already fully briefed and scheduled for review at the court conference on September 3. Dkt. 1365. This latest motion adds nothing to the Court's consideration of the matter except the unsupported assertion that mandamus relief would, if issued, reduce the burden on Defendants. That assertion is incorrect.

Nearly six months ago, Defendants petitioned the Second Circuit to exercise its "extraordinary" power of mandamus and permit Defendants to withdraw their affirmative defense of collateral estoppel. Now, they claim that should such relief issue, it would "alter substantially" the scope of trial. Dkt. 1370 at 3. But the role of the collateral estoppel defense in this case has virtually no bearing on the scope of the relevant evidence or the disputed issues in this case. The defense in question—that the Ecuadorian judgment bars Chevron's claims—turns on whether or not the judgment was procured by fraud or was issued by a judge who was corrupt or biased or who did not provide due process. And these issues are of similar relevance to Chevron's affirmative claims. Defendants' bribery of the presiding judge and their submission to him of their ghostwritten judgment for his signature are key events in Defendants' pattern of racketeering activity, and underpin their fraud. The rampant corruption of the Ecuadorian judiciary, to which the United States Department of State attests (Dkt. 754-14 (Ex. 3127)), and Defendants' knowledge of and express intent to capitalize on that corruption, is relevant context for Chev-

ron's specific allegations.

It has long been apparent that Defendants do not want their judgment examined by any impartial tribunal.  That was evident as far back as the 2010 Invictus memorandum, which emphasized pre-judgment attachment of Chevron assets "largely as a means of attaining a favorable settlement at an early stage" and identifying friendly, non-U.S. jurisdictions.  Dkt. 49-5 (Ex. 341) at 14.  This motion continues Defendants' unbroken and intensifying series of maneuvers in courts across the country to delay the day of reckoning for their crimes, while they hope to profit from them abroad.  It should be denied.

## ARGUMENT

### I.   Defendants' Petition for Mandamus Is Not Likely to Succeed

In their pending petition for mandamus, Defendants hope not only that the Second Circuit will employ a "drastic and extraordinary" remedy (*Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380, 124 S. Ct. 2576, 2586 (2004)), but that it will do so "with respect to orders resting in the district court's discretion"—something done only in the "most extraordinary circumstances." *Donlon Industries, Inc. v. Forte*, 402 F. 2d 935, 937 (2d Cir. 1968).  Such a request, almost by definition, does not have "a substantial possibility" of success.  *See* Dkt. 1370 at 1–2 (acknowledging that first prong of requirement for stay pending resolution of appeal is "a substantial possibility" of success).  Indeed, Defendants cite no cases of stays pending resolutions of petitions for mandamus, and such requests are routinely denied.  *See, e.g.*, *Employers Ins. of Wausau v. News Corp.*, 06 CIV.1602 SAS, 2008 WL 4560687 (S.D.N.Y. Oct. 6, 2008) (denying a motion to stay because "plaintiffs [] made no showing that their mandamus petition ha[d] a likely chance of success"); *United States v. Erie Cnty., NY*, 09-CV-849S, 2010 WL 1038650 (W.D.N.Y. Mar. 19, 2010) (denying a stay pending mandamus review because this was not "an exceptional case presenting an 'extreme need for reversal'" and defendants did not establish "a substantial possi-

bility that their application for Writ of Mandamus will be successful."); *United States v. Engstrum*, 2:08-CR-430 TS, 2009 WL 2338350 (D. Utah July 29, 2009) ("[G]iven the extremely high standard for obtaining a writ of mandamus . . . the second factor [of the stay analysis] weighs against granting the stay.").

Rather than substantiate any likelihood of success for their mandamus petition, Defendants fall back on the suggestion that their risk of irreparable harm is so great as to overcome their inability to show a substantial possibility of success. Dkt. 1370 at 2 (citing *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002)). *Mohammed*, however, offers Defendants no support. In fact, in that case, the Second Circuit *vacated* a stay entered by the district court on the grounds that the defendant had an insufficient likelihood of prevailing on appeal, notwithstanding the fact that lifting the stay would result in the defendants' deportation, which the court acknowledged was a substantial injury, especially when "compared to the lesser 'injury' to the Government if one alien is permitted to remain while an appeal is decided[.]" 309 F.3d at 102. Defendants point to no injury as remotely serious as potentially permanent removal from the United States, and cannot carry the heightened burden they set for themselves. Indeed, they establish no potential injury at all.

## II.   Defendants Face No Irreparable Injury, and Identify No Pre-Trial Tasks or Evidence That Would be Eliminated by Mandamus Relief

Defendants' motion asserts only that they would have to prepare material for trial that might become irrelevant if the Second Circuit issues a writ of mandamus. Dkt. 1370 at 3. Even if true, this showing is insufficient to justify a stay, let alone sufficient to carry the heightened burden of irreparable harm Defendants have proposed to carry in the absence of any demonstrated likelihood of success. *See Wyatt ex rel. Rawlins v. Sawyer*, 190 F.R.D. 685, 691 (M.D. Ala. 1999) (finding no irreparable injury when party was forced to "expend substantial additional

time and expense" because "[t]he financial burdens of litigation on their own do not necessarily amount to 'irreparable harm' favoring a stay").

Moreover, the Court has already made significant accommodations for Defendants.  In addition to various extensions of time that the Court has granted Defendants throughout this litigation, even when they were formally represented by large law firms willing to make appearances here, since the withdrawal of those firms, the Court has extended the time for depositions (Dkt. 1185), twice extended the time for pre-trial submissions (Dkt. 1268 at 3, Dkt. 1310), *sua sponte* denied in part Chevron's motion for summary judgment and given Defendants a substantial enlargement of time to oppose the remaining portion (Dkt. 1362), and stayed Magistrate Judge Francis' order requiring Defendants to supplement their privilege logs with proper document descriptions (Dkt. 1350).  It is currently considering Defendants' request for an adjournment of all dates for 30 days in light of the purported burden imposed on Defendants by trial preparation and by Magistrate Judge Francis's order.  Dkt. 1347.

Now Defendants claim that their burden would be reduced by mandamus relief from the Second Circuit, but the Court need not—indeed it cannot—weigh Defendants' showing against any standard, because Defendants put nothing on the scale.  They do not identify what preparation would be eliminated by mandamus relief from the Second Circuit, offering only the conclusory assertion that "the outcome holds the potential to alter substantially the nature of the looming pre-trial submissions, not to mention the trial itself."  Dkt. 1370 at 3.  They do not identify a single revision that they would make to their pre-trial submissions, or any change that they would make to their trial presentation—let alone changes so radical that to be forced to proceed without a result from the Second Circuit would be irreparable injury justifying an indefinite stay.  Defendants' complete failure to identify any basis for this essential assertion is by itself basis to

deny the motion.  *United States v. Fuentes*, No. 09-cr-143, 2012 WL 4754736, at *3 (W.D.N.Y. April 25, 2012) (considering arguments that are "largely conclusory, boilerplate, undeveloped and bereft of any supporting case authority" waived); *Chevron v. Donziger*, 886 F. Supp. 235, 281 (S.D.N.Y. 2012) (finding argument of "two paragraphs . . . is so cursory as to fail to persuade.").

Defendants do not support this assertion because they cannot.  The essential relief Defendants seek from the Second Circuit is to prevent this Court from adjudicating the recognizability of the Ecuadorian judgment in this action.[1]  No. 13-772, Dkt. 1-1 (2d Cir. 2013) at 4–5. But whether or not that question is before the Court has little or no bearing on the scope of relevant evidence or the anticipated presentation of the parties.  At most, it implicates a single jury instruction, an entry on the special verdict form, and perhaps a few minutes of argument in the parties' summations.

The existence of the recognition question (currently in the case on the basis of Defendants' collateral estoppel defense) does not affect the scope of relevant evidence because the same evidence which shows that the Ecuadorian judgment is not entitled to recognition in New York is relevant to Chevron's affirmative claims that Defendants sought to defraud and extort Chevron to obtain property from Chevron by means of a U.S.-based campaign that invoked a threatened future or actual Ecuadorian judgment.  Chevron has based its non-recognition arguments primarily on two grounds in addition to federal principles of comity: Section 5304(a)(1) (lack of

---

[1]  Defendants' request concerning the purported "set aside" claim can itself be easily set aside.  As Chevron already told the Second Circuit, the language Defendants challenge "was a hypothetical example" (No. 13-772, Dkt. 111 (2d Cir. 2013) at 5) proposed in dicta quoting the Second Circuit (*id.* at 41–42).  Chevron is not pursuing a set-aside claim under Rule 60(d), so Defendants cannot credibly claim that they are preparing a defense to this non-existent claim, and no relief "vacating" it will have any effect on trial in this action.  Defendants do not rely on their request for reassignment, which of course would have no direct impact on the issues to be resolved at trial, whatever its implications for the trial schedule.

impartial tribunals or due process) and section 5304(b)(3) (judgment obtained by fraud).[2]  *See* Dkt. 5 at 58–62.  The evidence supporting each ground is highly probative of disputed facts in this case.

A central feature of Chevron's affirmative claims against Defendants is the extensive evidentiary record demonstrating that Defendants and their co-conspirators bribed Ecuadorian court officials and colluded with them to issue purportedly independent court documents that were in fact ghostwritten by Defendants.  The most important of these court documents is the $18 billion judgment itself.  Multiple, independent bodies of evidence reveal Defendants' corrupt control over that judgment.

First, Judge Zambrano, the judge who issued the judgment, had been assigned to the case just months before, and could not possibly have reviewed the full record and drafted the 188-page opinion himself in that time, as Ecuadorian law required him to do.  Dkt. 764 ¶¶ 114–119.

Second, 51 pages of the judgment contain text lifted verbatim from the LAPs' unfiled work product, including whole paragraphs of case-specific analysis.  These materials appear nowhere in the public record of the case, and neither Defendants nor the court has ever offered a legal means by which the court could have relied upon unfiled LAPs material in drafting the judgment.  Moreover, another 9 pages of the judgment contain material found nowhere but in the report of the "global expert," Richard Cabrera, which Defendants admit they wrote, and which the judgment asserts it does not rely upon.  *Id*. ¶¶ 106–08.

Third, an eyewitness has now come forward and testified that he was a participant in a

---

[2] In its March 1, 2012 motion for summary judgment, Chevron also raised section 5304(a)(2), lack of personal jurisdiction and the federal law grounds that the judgment constitutes an unenforceable penalty.  Dkt. 397 at 30–32.  The Court made clear its skepticism of the first ground (886 F. Supp. 2d at 280).  Evidence that the judgment is a penalty is also relevant to Chevron's fraud claims—the judgment's imposition of what it describes as a "punitive" penalty, even though punitive damages are illegal in Ecuador, is further evidence that the judgment was not the product of a fair, impartial court, but rather a ghostwritten tool of Defendants' pressure campaign against Chevron.

$500,000 bribery scheme whereby Defendants provided Judge Zambrano with the full text of the judgment they wanted issued, and which he duly signed and entered as the judgment of the court—the same judgment Defendants are now trying to enforce against Chevron around the world. *Id.* ¶¶ 182–206. That eyewitness, himself a former judge in the same court who had presided over the Chevron case in earlier years, provided extensive evidence corroborating his testimony regarding a long-standing ghostwriting relationship between him, Judge Zambrano, and Defendants here—including bank records showing two $1,000 deposits into his account by an employee of Defendants, and draft orders and judgment from the Chevron case and other cases subsequently issued by Judge Zambrano.

This evidence establishes beyond reasonable dispute that the $18 billion judgment was procured by fraud, rendering it unenforceable under New York and federal law. If that question remains in the case at trial, by virtue of Defendants' affirmative defense of collateral estoppel, Chevron will certainly seek adjudication on this basis. But if the recognition question is not before the Court, Chevron would still submit every piece of this evidence of fraud, because it goes directly to Chevron's affirmative claims. Among other bases for relevance, Defendants made extensive use of the wires in procuring this fraudulent judgment, and thus engaged in wire fraud, a RICO predicate felony. Defendants have wrongfully sought to use this fraudulent judgment to cause Chevron to have a fear of economic harm, and have sought to use that fear to obtain property from Chevron, and thus engaged in extortion, another RICO predicate felony. Moreover, Defendants have solicited others to take action detrimental to Chevron on the basis of their fraudulent judgment, thus committing acts of common law fraud against Chevron.

And that is not all. There is also abundant evidence that the Ecuadorian judiciary generally, and the Lago Agrio court specifically, are corrupt, subject to bribery and intimidation, and

unduly influence by the executive branch—which under current President Correa has been an avowed supporter of the LAPs.  The U.S. Department of State, for example, has regularly report-ed on "the susceptibility of the judiciary to bribes for favorable judicial decisions and resolution of legal cases and on judges parceling out cases to outside lawyers who wrote judicial sentences on cases before the court and sent them back to the presiding judge for signature."  Dkt.30-30.  Moreover, there is also substantial evidence that Defendants knew about this corruption and sought to take advantage of it to obtain their judgment based on pressure and corruption rather than merit.  For example (and there are many such examples), when Defendant Donziger's scien-tific consultants told him that there was no evidence that the groundwater in the region was con-taminated, Donziger told them, "Hold on a second, you know, this is Ecuador, okay. You can say whatever you want and at the end of the day, there's a thousand people around the courthouse, you're going to get what you want. Sorry, but it's true. Okay. . . .  We can do it. And we can get money for it. And if we had no more money to do more work, we would do that. You know what I'm saying? And it wouldn't really matter that much. Because at the end of the day, this is all for the Court just a bunch of smoke and mirrors and bullshit."  Dkt. 6-2 (Ex. 1) at CRS-196-00-CLIP-01; Dkt. 7-6 (Ex. 2) (transcript) at 258–60.  All of this goes to show that the Ecuadorian judgment cannot be recognized under New York and federal law, of course, but it is also relevant to the question of whether Donziger and his co-defendants and conspirators could have bribed Ecuadorian court officials and ghostwritten Ecuadorian documents—which, as explained above, are critical factual components of Chevron's affirmative claims, regardless of whether or not De-fendants' collateral estoppel defense remains at issue in this action.

It is also grounds to deny the motion that Defendants failed to meet and confer, as has be-come their practice.  *See*, *e.g.*, Dkt. 1226 at 1 (LAPs filing motion to compel without meet-and-

confer); Dkt. 1239 at 21 (citing Donziger's refusal to respond to communications and meaning-fully meet-and-confer).  And in this instance, a discussion might have exposed the fact that De-fendants have no basis for their assertions of burden, as Chevron could have pointed out that the relief Defendants seek in the Second Circuit has no significant bearing on the scope of trial.

### III.   Delay Has Been Defendants' Strategy From the Outset Because it Furthers Their Corrupt Scheme, Thereby Prejudicing Chevron and Offending the Public Interest

Whether or not Defendants continue to receive behind-the-scenes support from Patton Boggs—a question on which counsel remains cagey (July 18, 2013 Hr'gTr. at 6:9–7:5)—this motion is yet another manifestation of Patton Boggs partner Jim Tyrrell's strategy for this dis-pute:  to "fight hard on all fronts all the time and concede nothing, buy as much time as possi-ble." Dkt. 496-5.  The prejudice to Chevron caused by delay is precisely the same as the value of delay to Defendants—it gives them more time to continue their extortionate scheme without a reckoning for their illegal conduct.  In Ecuador, Defendants are in the process of seizing assets held by Chevron subsidiaries, and recent events in Argentina demonstrate that Defendants can cause Chevron substantial economic harm on the basis of their fraudulent judgment without ex-posing that judgment to examination.  Dkt. 783 at 6–9.  Defendants have no response to this—they assert without authority or argument only that such prejudice is "not a proper considera-tion."  Dkt. 1370 at 4.  In any event, Chevron is entitled to a prompt trial on the merits of its claims, and further delay prejudices Chevron.  *See Citibank, N.A. v. Hakim*, 92 CIV. 6233 (MBM), 1993 WL 481335 (S.D.N.Y. Nov. 18, 1993) (denying motion to stay because plaintiff "may face substantial prejudice from a stay because it will be denied its right to speedy . . . reso-lution of this dispute"); *In re Albert*, 99-31520, 2002 WL 1432663 (Bankr. S.D.N.Y. June 20, 2002) (denying motion for stay because "substantial prejudice and harm will occur to the plain-tiffs if the case does not progress toward trial").

Even as Defendants assert that the outcome of parallel litigations cannot serve as a basis for Chevron's prejudice, they rely on those litigations for their own purported injury. They claim that, were a judgment to be entered in this Court prior to disposition of the mandamus proceeding, Chevron would "place any rulings adverse to Defendants before the courts in which Lago Agrio Plaintiffs have sought recognition of their judgment." Dkt. 1370 at 4. If that is even an "injury," it is not irreparable. If Chevron cites a ruling by this Court to a foreign court, and that ruling is subsequently vacated, whether through mandamus, appeal, or some future collateral attack, Defendants could present this changed circumstance to an applicable foreign court for consideration—just as any litigant would where an appellate court modified any ruling. Defendants' argument rests on the insulting assumption about foreign courts that Defendants unfairly ascribe to Chevron—that courts outside the United States are incapable of deciding issues for themselves.

In any event, this argument is speculative and premature. Chevron's hypothetical presentation of a hypothetical ruling to a foreign court will only come about if trial in this action concludes, and the Court enters judgment, before the Second Circuit rules on Defendants' petition. But the Second Circuit is aware of the pending trial date, still six weeks away, and presumably will rule on the petition before trial.

Nor is there any risk to undefined "notions of international comity" with proceeding in advance of a ruling from the Second Circuit, because Defendants' petition raises issues that are purely domestic in nature—the capabilities of this Court and the propriety of its decision denying Defendants' requests to withdraw a defense. "Notions of international comity" have no bearing on these technical matters of judicial process. Even if it is assumed, contrary to the facts, that this Court abused its discretion in declining to permit Defendants to withdraw their collateral es-

toppel defense, it is *Defendants* who pleaded it initially, and who sought to rely on their fraudulent Ecuadorian judgment in this action, and in related actions around the country. *See* Dkt. 462-1 (Ex. 2361). There is nothing offensive to "notions of international comity" about adjudicating a properly pleaded defense—indeed, the Second Circuit has already noted the contrary. *See Chevron Corp. v. Naranjo*, 667 F.3d 232, 241 (2d Cir. 2012) (noting that judgment debtor may challenge the recognizability of a foreign judgment if a judgment creditor invokes the judgment "in a pending action . . . by affirmative defense" (quoting N.Y. CPLR § 5303)).

## CONCLUSION

For the foregoing reasons, Chevron respectfully requests that the Court deny Defendants' request for an indefinite stay pending resolution of Defendants' mandamus petition.

Dated:  September 2, 2013          Respectfully submitted,
New York, New York

                                        /s/ Randy M. Mastro
                                        Randy M.  Mastro
                                        Andrea E.  Neuman
                                        GIBSON, DUNN & CRUTCHER LLP
                                        200 Park Avenue
                                        New York, New York 10166
                                        Telephone: 212.351.4000
                                        Facsimile:  212.351.4035

                                        William E.  Thomson
                                        333 South Grand Avenue
                                        Los Angeles, California 90071
                                        Telephone: 213.229.7000
                                        Facsimile:  213.229.7520

                                        *Attorneys for Chevron Corporation*