UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
        :

CHEVRON CORPORATION,      :

          Plaintiff,     :

    -against-     :  Case No.  11 Civ.  0691 (LAK)

        :

STEVEN R.  DONZIGER, et al.,   :

         Defendants.   :

        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## CHEVRON CORPORATION'S
## MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE #2

## TO EXCLUDE IRRELEVANT AND PREJUDICIAL STATEMENTS
## REGARDING CHEVRON'S PURPORTED LITIGATION CONDUCT

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

# TABLE OF CONTENTS

Page

RELIEF REQUESTED ........................................................................................................... 1

LEGAL STANDARD ............................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

I.     This Court Should Prohibit Defendants From Arguing That Chevron
Committed Misconduct in the Lago Agrio Litigation ....................................................... 2

     A.     Allegations Relevant Only to Equitable Defenses Should Not Be Heard
by the Jury ............................................................................................................ 3

     B.     Defendants' Unclean Hands Allegations Are Irrelevant to Any Legal
Issue ..................................................................................................................... 4

     C.     Defendants Should Be Prohibited From Arguing Their Actions Were
Justified by Chevron's Alleged Misconduct ........................................................ 6

II.     This Court Should Prohibit Defendants From Arguing That Chevron
Committed Misconduct in This or Other Related Litigation in the United
States ............................................................................................................................... 7

     A.     Argument That Chevron's Section 1782 Actions Were Improper
Should Be Precluded ............................................................................................ 8

     B.     Arguments that Chevron Acted Improperly in Seeking Data Relating to
E-Mail Accounts Should Be Precluded ................................................................ 9

     C.     Chevron's Alleged Surveillance of Defendants Should Be Precluded ................. 9

III.     This Court Should Prohibit Defendants From Making Arguments Based on
Texaco's Statements in the *Aguinda* Litigation ............................................................ 10

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Burgos v. Hopkins*,
   14 F.3d 787 (2d Cir. 1994) ........................................................................................ 9

*Chevron Corp. v. Donziger, et al.*,
   Case No. 1:12-MC-65 LAK/CFH, Dkt. 50 (N.D.N.Y. Jun 25, 2013) ....................... 8

*Chevron Corp. v. Salazar*,
   No. 1:11-cv-03718, Dkt. 229 (S.D.N.Y. Aug. 17, 2011) ................................. passim

*Christianson v. Colt Industries Operating Corp.*,
   486 U.S. 800, 108 S. Ct. 2166 (1988) ....................................................................... 8

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*,
   82 F. Supp. 2d 126 (S.D.N.Y. 1999) .......................................................................... 3

*In re Chevron Corp. (Berlinger)*,
   No. 10-mc-00001-LAK, Dkt. 15 (S.D.N.Y. Aug. 12, 2010) ...................................... 9

*In re WorldCom, Inc. Sec. Litig.*,
   No. 02 Civ. 3288DLC, 2005 WL 578109 (S.D.N.Y. Mar. 4, 2005) .......................... 2

*Luce v. United States*,
   469 U.S. 38, 105 S. Ct. 460 (1984) ............................................................................ 1

*Palmieri v. Defaria*,
   88 F.3d 136 (2d Cir. 1996) ......................................................................................... 1

*Parker v. Blauvelt Volunteer Fire Co.*,
   93 N.Y.2d 343 (1999) ................................................................................................. 8

*Patsy's Italian Restaurant v. Banas*,
   575 F. Supp. 2d 427 (E.D.N.Y. 2008) .................................................................... 3, 7

*Specialty Minerals, Inc. v. Pluess-Staufer AG*,
   395 F. Supp. 2d 109 (S.D.N.Y 2005) ........................................................................ 4

*United States v. Alfisi*,
   308 F.3d 144 (2d Cir. 2002) ....................................................................................... 7

*United States v. Botti*,
   2010 WL 745043 (D. Conn. 2010) ............................................................................ 7

**TABLE OF AUTHORITIES** (*continued*)

Page(s)

*United States v. Dwyer,*
   539 F.2d 924 (2d Cir. 1976) ................................................................................. 2

*United States v. Manton,*
   107 F.2d 834 (2d Cir. 1939) ................................................................................. 7

*United States v. Valencia,*
   826 F.2d 169 (2d Cir. 1987) ................................................................................. 2

**Rules**

Fed. R. Evid. 401 ....................................................................................... 2, 4, 9

Fed. R. Evid. 402 .......................................................................................... 2

Fed. R. Evid. 403 .......................................................................................... 2

**RELIEF REQUESTED**

Throughout this action, Defendants have sought to divert attention from their own tor-

tious conduct by levying baseless and irrelevant accusations at Chevron.  Defendants' "unclean

hands" arguments are, at most, relevant only to Chevron's entitlement to equitable relief, which

should be tried in a separate bench trial to avoid prejudice to Chevron.  Nonetheless, Chevron

anticipates that during the trial Defendants will try to make arguments, references, and implica-

tions that are irrelevant to the legal claims being tried and designed only to confuse the jury or to

create a false moral equivalence between the parties.  Chevron therefore moves the Court to enter

an order *in limine* striking and precluding the introduction of the documents identified on the at-

tached Appendix A as irrelevant during the jury trial, as well as precluding Defendants from of-

fering to the jury evidence, arguments, or questions regarding:

- Chevron's purported conduct in the Lago Agrio Litigation, including the cancellation and subsequent rescheduling of the Guanta inspection, Chevron's purported "sting" operation against an Ecuadorian judge, Chevron's use of a purported "sham laboratory" and pre-inspection protocol, Chevron's purported "procedural misconduct" in filing motions in the Lago Agrio Litigation, Chevron's purported *ex parte* contacts with Ecuadorian judges and court experts, any "harassment" supposedly suffered by Defendants or their co-conspirators, and any argument that their actions were justified by virtue of Chevron's alleged misconduct;

- Chevron's conduct in this and other litigation in the United States, including Chevron's purported misuse of Section 1782 to obtain discovery for use in the Lago Agrio Litigation, Chevron's subpoenas to email providers seeking information about Defendants and their co-conspirators, and Chevron's surveillance of Defendants and their co-conspirators; and

- Alleged promises and representations made by Texaco and/or TexPet in the *Aguinda* litigation.

**LEGAL STANDARD**

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the

practice has developed pursuant to the district court's inherent authority to manage the course of

trials."  *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 463 n.4 (1984); *see also*

*Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (approving the practice).  The district judge

1

"ha[s] discretion in deciding whether a pretrial ruling on evidence may be made in advance of trial." *United States v. Valencia*, 826 F.2d 169, 172 (2d Cir. 1987). This authority includes prohibiting irrelevant and prejudicial arguments or references at trial. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288DLC, 2005 WL 578109, at *4 (S.D.N.Y. Mar. 4, 2005).

Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note. "In the balancing of probative value against unfair prejudice required by Rule 403, the trial judge has wide discretion." *U.S. v. Dwyer*, 539 F.2d 924, 927 (2d Cir. 1976).

## ARGUMENT

I. **This Court Should Prohibit Defendants From Arguing That Chevron Committed Misconduct in the Lago Agrio Litigation**

Defendants have regularly alleged that Chevron committed misconduct in the Lago Agrio Litigation, and have asserted the affirmative defenses of unclean hands, *in pari delicto*, and fraud.[1] Dkt. 307 (Donziger's answer), defense 3; Dkt. 350 (LAPs' amended answer), defenses 28, 30, 31. These allegations are relevant only to Chevron's entitlement to equitable relief, which should be determined by this Court and not the jury. Chevron's motion for summary judgment as to these (and other) defenses is currently pending, and Chevron is concurrently

---

[1] In the Count 9 Action, this Court dismissed the *in pari delicto* and fraud defenses, and substantially narrowed the defense of unclean hands. *Chevron Corp. v. Salazar*, No. 1:11-cv-03718, Dkt. 229 (S.D.N.Y. Aug. 17, 2011).

moving to bifurcate the trial and consider these defenses in a bench proceeding after a jury trial on liability and damages.  While resolution of these motions will determine if and when these defenses are heard, Chevron moves here to limit the presentation of related material and argument to the jury, or, should the defenses be dismissed, exclude that material altogether.  As the Court indicated that it may not rule on Chevron's summary judgment motion until "before the start of the defendants' case in chief" (Dkt. 1362 at 14), it is appropriate to determine prior to trial whether Defendants should be permitted to make such arguments in their opening statement or to question Chevron's witnesses on such topics.  If such arguments are permitted prior to the Court's grant of summary judgment on these defenses, the jury will already have been impermissibly prejudiced.

### A.    Allegations Relevant Only to Equitable Defenses Should Not Be Heard by the Jury

As Chevron sets forth in its Motion to Bifurcate Trial, evidence and arguments that are relevant only to equitable defenses should not be presented to the jury because the jury will not determine whether Chevron is entitled to equitable relief.  Any arguments and evidence by Defendants regarding Chevron's supposed conduct during the Lago Agrio Litigation will be of no relevance to Chevron's legal claims, but at most only to whether Chevron should be granted equitable relief.  Dkt. 348.  *See Gidatex, S.r.L. v. Campaniello Imports, Ltd*., 82 F. Supp. 2d 126, 128 (S.D.N.Y. 1999) (bifurcating unclean hands and other equitable defenses for bench trial); *Patsy's Italian Restaurant v. Banas*, 575 F. Supp. 2d 427, 440 (E.D.N.Y. 2008) (same); *see also Chevron Corp v. Salazar*, No. 11 Civ. 3718(LAK), 2011 WL 3628843, at *10 n.75 (S.D.N.Y. Aug. 17, 2011) ("The Court leaves for later determination the question whether, assuming that any party is entitled to a jury trial of issues of fact on the declaratory judgment claim, the unclean hands issues should be tried separately to the court alone.").  Introduction of irrelevant material

would confuse the jury, improperly invite the jury to consider whether Chevron's conduct justified Defendants' misdeeds, and would be prejudicial.

### B.    Defendants' Unclean Hands Allegations Are Irrelevant to Any Legal Issue

Chevron's allegations in this case concern conduct by the Defendants and their co-conspirators.  Among other things, Defendants falsified reports filed with the Lago Agrio Court under the name of Dr. Charles Calmbacher, improperly coerced the Lago Agrio Court to cancel judicial inspections and appoint Richard Cabrera as the global expert, paid Cabrera at least tens of thousands of dollars from their "secret account," ghostwrote his report, and then bribed the judge to allow them to write the Lago Agrio Judgment.  Defendants' allegations of Chevron's purported misconduct would not make the existence of any fact that is of consequence to the determination of the action "more or less probable."  Fed. R. Evid. 401.

Defendants exhibit list confirms that they intend to continue their attacks on Chevron (*see* Appendix A), but these false allegations are put forward only to muddy the waters.  Even if they were accurate, none are relevant to Chevron's legal claims.

- 1993 *Aguinda* Case and Related Contacts with Ecuadorian Officials Regarding *Aguinda*: Defendants do not (and cannot) argue that Chevron's purported attempts to lobby the Ecuadorian government, Dkt. 732 at 104-05, had any actual effect on the Lago Agrio Litigation, or that they suffered any harm from these actions.  Chevron's efforts to obtain a *forum non conveniens* dismissal of *Aguinda* "do not have the requisite 'immediate and necessary relation to the equity that plaintiff seeks . . .'" and "many of those allegations are contradicted by U.S. court record or otherwise are demonstrably false."  *Salazar*, 2011 WL 3628843, at *9 (quoting *Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 112 (S.D.N.Y 2005)).

- Jurisdictional Arguments to the Lago Agrio Court: Defendants accuse Chevron of dishonesty in connection with the *forum non conveniens* dismissal of *Aguinda*, because Chevron later argued that the Ecuadorian court lacked jurisdiction over Chevron, and because they claim Chevron cannot complain now about the Ecuadorian judiciary it supposedly chose to hear their lawsuit.  Dkt. 732 at 106.[2]  But Defendants suffered no harm (the Ecuadorian court ig-

---

[2]  Neither Texaco nor Chevron ever conceded the Ecuadorian court's jurisdiction over Chevron.  *See  Salazar*, 2011 WL 3628843, at *9 and n.68.  Defendants do not and cannot claim that by acceding to the Ecuadorian court's per-
[Footnote continued on next page]

nored Chevron's personal jurisdiction argument for a decade and then rejected it), and Chevron's motion filed in Ecuador has no bearing on who wrote the $18 billion judgment or whether Cabrera was an "independent" court expert.

- The Cancellation of the Guanta Inspection:  Defendants accuse Chevron of colluding with the Ecuadorian military to cancel a judicial inspection held at the Guanta station.  Dkt. 350 (LAPs' amended answer) at 94-97; Dkt. 643 (Donziger's counterclaims), ¶¶ 47-52.  But the inspection was requested by Chevron, and "[t]here is no allegation that the proposed site inspection cancellation . . . had any bearing at all on the result in Ecuador or, for that matter, that the site inspection did not later take place. . . ." *Salazar*, 2011 WL 3628843, at *10.

- The Purported "Sting" Operation:  After a judge presiding over the Ecuadorian Litigation was videotaped stating that he had prejudged the case in Defendants' favor and soliciting bribes from environmental contractors in exchange for remediation contracts, Defendants sought to blame Chevron through false accusations about a corporate "sting" operation.  Dkt. 732 at 109-113.  Chevron's claims against Defendants do not rest on this bribery scandal, and Defendants' allegations are not relevant to any of their legal defenses.

- Chevron's Purported "Sham Laboratory" and Pre-Inspection Protocol:  Defendants suggest that a laboratory that analyzed certain samples was actually controlled by Chevron.[3]  These false allegations are irrelevant, as Chevron's claims do not rest on the relative independence of one of the laboratories it used to test samples for contamination.  Defendants also allege that Chevron pre-inspected locations to steer inspectors to test at clean sites, when, in reality, both sides conducted pre-inspections and Chevron's testing was necessary to determine the perimeter of any contaminated area—to find where any contamination ends and clean soil begins.  Dkts. 366-6; 370 ¶¶ 17-30.  "[T]his Court repeatedly has held that 'the work of Chevron's testifying experts in [the Lago Agrio Litigation] concerning the underlying environmental claims' is 'not relevant.'"  Dkt. 1276 at 9 (quoting Dkts. 1208 at 1, and Dkt. 1130).

- Chevron's Motions and Discovery Practice in the Lago Agrio Litigation:  Defendants accuse Chevron of filing too many motions requesting similar relief, purportedly threatening a judge in court filings, delaying the inspection process, and delaying payments to court-appointed experts for pretextual reasons.  Dkt. 732 at 113-16.  None of these issues is relevant to the claims in this litigation.[4]  While Defendants allege that Chevron's conduct violated Ecuado-

---

[Footnote continued from previous page]
sonal jurisdiction over Texaco, Texaco or Chevron agreed to submit itself to the fraudulent manipulation of that court by Defendants which subsequently transpired.

[3]  Defendants' allegations are based on a vague and confusing hearsay statement by Diego Borja, a former Chevron contractor, which Defendants' counsel described as "bombast from a trash-talker being prodded into making increasingly grandiose claims."  Dkt. 356-10 at 131-32 (Ex. AU).  Defendants' allegations are without merit.  *See id.* (Borja's recorded conversations "do not discredit Chevron itself, and in fact corroborate them in a couple important respects").

[4]  These allegations are not even relevant to equitable defenses, as "the allegation of the filing of too many motions, of allegedly baseless motions, of discovery delay, and the like in the Ecuadorian case [do not] remotely approach[] a sufficient claim of unclean hands."  *Salazar*, 2011 WL 3628843, at *10 n.69.

rian law, none of Defendants' three Ecuadorian law expert witnesses have even opined on whether Chevron's conduct was improper. Dkt. 154-6; Dkts. 918-17 – 918-18; Dkt. 918-27.

- Chevron's Ex Parte Contacts with Judges and Experts: The parties' experts agree that certain *ex parte* contacts with Ecuadorian judges and court-appointed experts are permissible. Dkt. 154-5 (Albán affidavit), ¶¶ 7, 9, 12, 17, 19; Dkt. 154-6 (Simon affidavit), ¶ 4. The relevant issue in this case is whether Defendants' bribes, threats, ghostwriting of expert reports, and ghostwriting of judicial opinions are permissible. Defendants have not alleged that Chevron's *ex parte* contacts with judges (which involved ministerial items such as scheduling, Dkt. 370-9 (Ex. 1231) at 85:24-87:2) and experts (which were openly disclosed to the Lago Agrio Court, *see* Dkt. 732 at 102-03) were improper, but have merely attempted to draw a false equivalence between Chevron's permissible actions and their own malfeasance. Chevron's contacts are irrelevant to any legal issue in this case.

- Purported Harassment of LAPs' Allies and Cabrera: Defendants imply, without any evidence, that Chevron was behind purported "death threats, robberies, and home invasions" suffered by the LAPs' "representatives." Dkt. 732 at 109; *see also* Dkt. 283 ¶¶ 260-65 (false allegations that Chevron murdered Pablo Fajardo's brother); Dkt. 400-3 (Ex. 2035) (Cabrera alleging harassment to Lago Agrio Court). Defendants have never put forward any evidence that Chevron was responsible for any such actions—and it was not. *See* Dkt. 356-9 (Exhibit D) (2011.01.18 Donziger Dep.) at 3125:3-8 (Donziger testifying that his only evidence of any threat to Cabrera was the letter Cabrera submitted to the court); Dkt. 400-16 (Ex. 2105) ¶¶ 3, 9(c)(iii), Ex. F (2011.06.30 Expert Report of Gerald McMenamin concluding Fajardo drafted the letter from Cabrera regarding alleged threats); Dkt. 400-3 (Ex. 2036) (2007.12.17 email from Fajardo to Donziger attaching draft of the letter from Cabrera alleging threats); Dkt. 400-3 (Ex. 2037) (draft of Cabrera threat letter sent by Fajardo to Donziger with the metadata showing the author as "Pablo" and that the document was last modified six days before the threat letter was filed in Cabrera's name).

- Chevron's Purported Breach of Ecuadorian Law By "Transferring" Judge Guerra to the U.S.: Defendants' expert Raul Rosero Rivas concludes (based on incorrect facts and assumptions) that Chevron is an accessory for any crimes committed by Judge Guerra, because it aided his travel to the United States. While there are many reasons to exclude Rosero's opinion, as explained in Chevron's concurrently filed motion in limine, the argument itself is irrelevant. Even if Chevron's actions in 2012 and 2013 to assist Guerra in seeking asylum were improper, which they were not, they are irrelevant as to whether Defendants bribed experts and judges and then ghostwrote their opinions.

### C. Defendants Should Be Prohibited From Arguing Their Actions Were Justified by Chevron's Alleged Misconduct

Chevron anticipates that Defendants will argue they were required to undertake their improper actions as a result of Chevron's purported misconduct. This has been a constant refrain

from Donziger.[5]  Defendants cannot claim that their bribery and intimidation of judges was justi-
fied by a need to reach the right result.  "Judicial action, whether just or unjust, right or wrong, is
not for sale."  *United States v. Manton*, 107 F.2d 834, 846 (2d Cir. 1939) ("[I]f the rule shall ever
be accepted that the correctness of judicial action taken for a price removes the stain of corrup-
tion and exonerates the judge, the event will mark the first step toward the abandonment of that
imperative requisite of even-handed justice.").

The Second Circuit considered a similar issue where a defendant claimed that "he should
not be found guilty of bribery if he paid money to [a food inspector] solely to induce him to per-
form his job faithfully."  *United States v. Alfisi*, 308 F.3d 144, 150 (2d Cir. 2002).  The court
found that "[i]t cannot be seriously argued" that such payments were not made with a "corrupt
intent," and noted that "if a party to litigation were to pay a judge money in exchange for a fa-
vorable decision, that conduct would-and should-constitute bribery, even if a trier of fact might
conclude *ex post* that the judgment was on the merits legally proper."  *Id*. at 151.  As a result, a
motion *in limine* is appropriate to prohibit any argument that such misconduct is justified.  *Unit-
ed States v. Botti*, 2010 WL 745043, at *8 (D. Conn. 2010) (prohibiting testimony regarding de-
fendant's entitlement to benefit obtained through bribery).

Furthermore, this is but a variant on an equitable unclean hands defense which, as this
Court has held, applies only to Chevron's request for an injunction.  Dkt. 348.  As an equitable
defense, it should not be presented to the jury.  *See Patsy's Italian Rest.*, 575 F. Supp. at 440.

## II.   This Court Should Prohibit Defendants From Arguing That Chevron Committed Misconduct in This or Other Related Litigation in the United States

Defendants have contended that Chevron's conduct in Section 1782 actions and this liti-

---

[5]  *See* Dkt. 6-2 at CRS-052-02 ("[W]e're gonna confront the judge, who we believe is paid by Texaco; we believe he
is corrupt . . . And, you know, they're playing dirty; we're honest, they're dirty. They play dirty, we have to occa-
sionally use . . . pressure tactics to neutralize their corruption.").

gation was improper.  For example, Defendants contend that Chevron committed "fraud" by

seeking evidence of Defendants' ghostwriting of the Cabrera Report in its Section 1782 actions,

Dkt. 732 at 100-03, subpoenaing electronic data, *see*, *e.g.*, The Chevron Pit, "Chevron: The NSA

of the Corporate World?"[6]; *Chevron Corp. v. Donziger, et al.*, Case No. 1:12-MC-65 LAK/CFH,

Dkt. 50 (N.D.N.Y. Jun 25, 2013) (denying motion to quash), and by allegedly surveilling

Donziger (Dkt. 1276; Dkt. 1321).

If Defendants disagree with rulings made in this or other cases granting Chevron's appli-

cations or motions or dismissing Donziger's counterclaims, they are free to appeal; they are col-

laterally estopped from relitigating them to the jury.  This Court's rulings in this case are law of

the case, and "should continue to govern the same issues in subsequent stages of the same case."

*Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 815-16, 108 S. Ct. 2166, 2177

(1988).  Defendants should not be permitted to ask the jury to sit as an appellate body reviewing

this Court's legal conclusions.  And these arguments are irrelevant to the claims at issue.

### A.    Argument That Chevron's Section 1782 Actions Were Improper Should Be Precluded

Defendants claim Chevron committed fraud when it sought Section 1782 discovery from

numerous courts regarding Defendants' ghostwriting of the Cabrera Report by not disclosing that

Chevron had also had *ex parte* contact with Ecuadorian court-appointed experts.  Dkt. 732 at

100-03.  This Court has previously rejected these allegations as (1) lacking the necessary relation

to the equitable relief that Chevron sought, (2) being demonstrably false, and (3) being insuffi-

ciently pleaded.  *Salazar*, 2011 WL 3628843, at *8-9, 12-14.  Furthermore, Defendants had "a

full and fair opportunity to litigate the issue" before those courts, *Parker v. Blauvelt Volunteer

Fire Co.*, 93 N.Y.2d 343, 349 (1999) and, in some cases, did so argue—without success.  *See,*

---

[6]  Available at http://thechevronpit.blogspot.com/2013/08/chevron-nsa-of-corporate-world.html.

*e.g.*, *In re Chevron Corp. (Berlinger)*, No. 10-mc-00001-LAK, Dkt. 15 (S.D.N.Y. Aug. 12, 2010), at 5.  Whether Chevron was properly entitled to that discovery was determined by those courts, and Defendants are collaterally estopped from seeking a jury determination that those courts were defrauded by Chevron.  *Burgos v. Hopkins*, 14 F.3d 787, 792 (2d Cir. 1994).  Permitting Defendants to reargue those decisions would amount to asking the jury to perform an appellate review of the decisions made by numerous trial courts around the country.  This is prejudicial and improper.[7]

### B.     Arguments that Chevron Acted Improperly in Seeking Data Relating to E-Mail Accounts Should Be Precluded

Chevron anticipates that Defendants will argue that Chevron's subpoenas seeking email subscriber information were improper.  But this is a legal issue to be determined by judges, not a factual issue to be determined by the jury.  Both the Northern District of New York (Judge Kaplan sitting by designation) and the Northern District of California have denied, in part, motions to quash Chevron's subpoenas.  If Defendants disagree with those decisions, they may appeal.  They should not be permitted to prejudice the jury with arguments that Chevron is "the NSA of the corporate world."[8]  Arguments or evidence regarding Chevron's legally permissible discovery efforts in this case do not have any tendency to make the existence of any fact that is of consequence to the determination of the action "more or less probable."   Fed. R. Evid. 401

### C.     Chevron's Alleged Surveillance of Defendants Should Be Precluded

Defendants will likely argue that Chevron has "harassed" them by surveilling Donziger and other co-conspirators.  In his counterclaims, Donziger argued that this constituted attempted

---

[7]  Defendants have asserted the defense of collateral estoppel in this case, and will likely argue that the jury should similarly not be permitted to second-guess the decisions of the Ecuadorian courts in the Lago Agrio Litigation.  But Chevron did not have a "full and fair opportunity" to litigate the issues in the Ecuadorian Litigation due to, *inter alia*, Defendants' intimidation of the court, bribery of the court expert, and ghostwriting of the judgment.
[8]  The Chevron Pit, "Chevron: The NSA of the Corporate World?", available at http://thechevronpit.blogspot.com/2013/08/chevron-nsa-of-corporate-world.html.

extortion.  Dkt. 643, ¶ 210.  But this Court dismissed Donziger's counterclaim because New York law does not permit a cause of action for attempted extortion.[9]  Thus, the propriety of Chevron's surveillance is not relevant to any claim in this case.  Defendants' arguments on this point serve no purpose but to inflame the jury, would be prejudicial, and should be prohibited.

### III.   This Court Should Prohibit Defendants From Making Arguments Based on Texaco's Statements in the *Aguinda* Litigation

Defendants may attempt to argue that Chevron should be bound by statements made by Texaco in the *Aguinda* litigation, including statements that the Ecuadorian judiciary was fair and impartial and that Texaco would consent to jurisdiction in Ecuador.  As this Court has already ruled, statements made by Texaco cannot be attributed to Chevron because Chevron did not take on the obligations of Texaco.  *Chevron Corp. v. Salazar*, No. 1:11-cv-03718, Dkt. 261 (S.D.N.Y. Aug. 31, 2011) at 10-14.  As a result, statements made by Texaco are irrelevant to Chevron's claims in this action.   While Defendants may disagree with this Court's decision, the decision is based on a determination of law, not fact, and thus Defendants may not question it to the jury. Statements made by Texaco are prejudicial and irrelevant, and should be precluded.

### CONCLUSION

For the foregoing reasons, the Court should prohibit Defendants from offering at trial evidence, arguments, or interrogation regarding Chevron's conduct in the Lago Agrio Litigation, their purported justification for engaging in their actions based on Chevron's conduct, the litigation of this case and the parallel Section 1782 actions, or Texaco's statements in *Aguinda*.


Dated:  September 8, 2013                          Respectfully submitted,
New York, New York

---

[9]  This Court also has recognized that Chevron's investigators, when conducting surveillance, were acting under the direction of Chevron's attorneys and that their materials are protected work product.   Dkt. 1276 at 2-5.

/s/ Randy M. Mastro
Randy M.  Mastro
Andrea E.  Neuman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile:  212.351.4035

William E.  Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile:  213.229.7520

*Attorneys for Chevron Corporation*

**Appendix A**

| Defendants' Exhibit Number | Date | Description | Bates range |
|---|---|---|---|
| 4 | 3/3/2001 | Vanity Fair Magazine Article Re Big Oil Jungle Law by William Langewiesche | LAP0000448- LAP0000471 |
| 6 | 4/28/2005 | Letter of approval from Superintendencia de Companias | LAP0000569 |
| 7 | 6/24/2005 | Letter from Interintelg S.A. naming Marino Fernandez president of the company. | LAP0000567 |
| 8 | 6/24/2005 | Letter from Interintelg S.A. naming Diego Fernando Borja Sanchez General Manager of the company | LAP0000570 |
| 9 | 6/27/2005 | Notarized document from Registro Mercantil de Quito by Dr. Raul Gaybor Secaira | LAP0000571 |
| 10 | 11/1/2005 | Letter from the Ministry of National Defence to Julio Gonzalez | LAP0000721 – LAP0000722 |
| 11 | 11/5/2005 | Letter from the National Congress of Ecuador(Congreso Nacional) to Oswaldo Jarrin | LAP0000719 -LAP0000720 |
| 14 | | Chain of Custody Record by Severn Trent Laboratories | LAP0000481 -LAP0000489 |
| 31 | 8/31/2009 | Letter from T. Cullen (Jones Day) to Dr. Washington Pesantez Munoz | TO BE SUPPLIED |
| 32 | 10/1/2009 | Transcript 1 – Recorded conversation between Diego Borja & Santiago Escobar | LAP 0000073 – LAP0000088 |

| 33 | 10/1/2009 | Transcript 2 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000089 – LAP0000104 |
|---|---|---|---|
| 34 | 10/1/2009 | Transcript 3 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000105 – LAP0000119 |
| 35 | 10/1/2009 | Transcript 4 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000120 – LAP0000135 |
| 36 | 10/1/2009 | Transcript 5 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000136 – LAP0000148 |
| 37 | 10/1/2009 | Transcript 6 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000149 – LAP0000163 |
| 38 | 10/1/2009 | Transcript 7 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000164 – LAP0000178 |
| 39 | 10/1/2009 | Transcript 8 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000179 – LAP0000192 |
| 40 | 10/1/2009 | Transcript 9 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000193 – LAP0000194 |
| 41 | 10/1/2009 | Transcript 10 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000195 – LAP0000212 |
| 42 | 10/1/2009 | Transcript 11 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000213 – LAP0000226 |

| 43 | 10/1/2009 | Transcript 12 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000227 – LAP0000236 |
| 44 | 10/1/2009 | Transcript 13 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000237 – LAP0000238 |
| 45 | 10/1/2009 | Transcript 14 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000239 |
| 46 | 10/1/2009 | Transcript 15 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000240 – LAP0000241 |
| 47 | 10/1/2009 | Transcript 16 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000242 – LAP0000243 |
| 48 | 10/1/2009 | Transcript 17 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000244 – LAP0000245 |
| 49 | 10/1/2009 | Transcript 18 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000246 – LAP0000257 |
| 50 | 10/1/2009 | Transcript 19 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000258 – LAP0000269 |
| 51 | 10/5/2009 | Transcript 20 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000270 – LAP0000280 |
| 52 | 10/7/2009 | Transcript 21 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000281 – LAP0000293 |

| 53 | 10/7/2009 | Transcript 22 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000294 – LAP0000305 |
|----|-----------|------------------------------------------------------------------------------|------------------------|
| 54 | 10/13/2009 | Transcript 23 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000306 – LAP0000314 |
| 55 | 10/15/2009 | Transcript 24 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000315 – LAP0000365 |
| 56 | 10/18/2009 | Transcript 25 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000366 – LAP0000403 |
| 57 | 10/31/2009 | Transcript 26 – Recorded conversation between Diego Borja & Santiago Escobar | LAP0000404 – LAP0000443 |
| 59 | 10/26/2009 | Letter from T. Cullen (Jones Day) to Dr. Diego Garcia Carrion re request for information | TO BE SUPPLIED |
| 61 | 4/5/2010 | Report of Investigation by Grant W. Fine, Esq. re recorded conversations & 25 pages of printouts of online chats between Diego Borja & Santiago Escobar | LAP0000008 – LAP0000015 |
| 62 | 4/5/2010 | Informe de Investigacion por Grant W. Fine, Esq. Re conversaciones grabadas y 25 paginas de copias impresasde los chats en linea entre Diego Borja y Santiago Escobar. | LAP0000026 – LAP0000034 |
| 63 | 5/25/2010 | Email from Kent S. Robertson to Jim Craig Re Info | CVX – RICO – 4755869 |

| 64 | 8/2/2010 | The Atlantic magazine article Re A spy in the jungle by Mary Cuddehe | LAP0000472- LAP0000480 |
|---|---|---|---|
| 75 | 2/10/2012 | Letter to Secretary-General Ban Ki-Moon from Enrique Bemales Ballesteros Re explain how Chevron's efforts to distort the BIT system to interfere with the rights of dozens of indigenous & farmer communities | LAP0000854 – LAP0000857 |
| 78 | 10/23/2012 | Letter from Richard DeSanti (Chevron) to Erin Madden (Portland Harbor Trustee Council) Re Stratus & Portland Harbor Superfund Site | Dkt 768-2 |
| 80 | 11/5/2012 | Letter from Richard DeSanti (Chevron) to Erin Madden (Portland Harbor Trustee Council) Re Stratus & Superfund Site | Dkt 768-3 |
| 81 | 11/12/2012 | Letter from Richard DeSanti (Chevron) to Erin Madden (Portland Harbor Trustee Council) Re Stratus & Portland Harbor Superfund Site | Dkt 694-6 |

| 83 | 11/29/2012 | Letter from Richard DeSanti (Chevron) to Erin Madden (Portland Harbor Trustee Council) Re Stratus & Portland Harbor Superfund | Dkt 768-6 |
|---|---|---|---|
| 90 | 3/22/2013 | Settlement Agreement & Mutual Release filed by Chevron & the Stratus Parties | Dkt 934-1 |
| 103 | 5/10/2013 | Witness Adolfo Callejas Ribadeneira Declaration of Donald Rafael Moncayo Jimenez Exhibit 6 # 19 | CVX – RICO – 2495010 |
| 118 | Undated | Message log of Diego & Canada | LAP0000041 – LAP0000071 |
| 357 | Undated | CD of Excerpts from Audio Recordings of Diego Borja Sanchez filed with the court | Dkt. 152-1 |
| 358 | Undated | Transcript of recorded conversation between Diego Borja & Santiago Escobar | Dkt. 152-2 |
| 359 | 9/10/2010 | Memorandum for the issuance of a subpoena to Diego Borja for a deposition and production of documents | Dkt. 152-3 |
| 399 | 3/23/2010 | Provincial Court of Justice of Sucumbios Order in Spanish with English translation | Dkt 153-11 |
| 401 | 3/30/2010 | Filing by expert Jose Lopez with Provincial Court of Justice of Sucumbios in Spanish with English translation | Dkt. 153-13 |

| 402 | 4/7/2010 | Filing by expert Jose Lopez with Provincial Court of Justice of Sucumbios in Spanish with English translation | Dkt. 153-14 |
|---|---|---|---|
| 403 | 4/14/2010 | Filing by expert Jose Lopez with Provincial Court of Justice of Sucumbios in Spanish with relevant portions translated to English | Dkt. 153-15 |
| 404 | 6/3/2010 | Filing by expert Marcelo Munoz with Provincial Court of Justice of Sucumbios in Spanish with English translation | Dkt. 153-16 |
| 405 | 10/29/2010 | Filing by expert Marcelo Munoz with Provincial court of Justice of Sucumbios in Spanish with English translation | Dkt. 153-17 |
| 406 | 10/11/2010 | Provincial Court of Justice of Sucumbios Order in Spanish with relevant portions translated to English | Dkt. 153-18 |
| 407 | 2010 | The Atlantic article "A Spy in the Jungle" by Mary Cuddehe | Dkt. 153-19 |
| 514 | Undated | CV of Diego Borja | ACH-DB000775- ACH-DB000780 |
| 515 | Sept.07 - Aug. 09 | Interintelg invoices | ACH-DB000517- ACH-DB000561 |
| 516 | 8/11/09- 1/26/11 | Chevron Invoices | ACH-DB000642- ACH-DB000666 |
| 517 | Jan 3-13, 2011 | Email chain between Babak Nikravesh, Jeffrey Bernstein, and Bob McGrath re Final 2010 Borja amounts with attachment, "Borja Tax Calculation 1 13 11.xlsx" | BORJA00054- BORJA00064 |

| 518 | 8/23/2004 | Texaco Invoice | Exhibit 5-Borja-3/15/11 |
|---|---|---|---|
| 519 | 8/17/2004 | Shipping label | Exhibit 6-Borja-3/15/11 |
| 520 | Nov. 04-Dec 06 | STL Chain of custody records | Exhibit 7-Borja-3/15/11 |
| 521 | Nov 05-Apr 06 | Analytical report cover pages prepared for Groundwater Services; project manager Sara Portilla | Exhibit 8-Borja-3/15/11 |
| 522 | 6/29/2010 | Arguedas, Cassman & Headley, LLP invoice, (partially redacted) | ACH-DB000867- ACH-DB000869 |
| 523 | 6/27/2009 | Statement by Diego Borja | ACH-DB000009- ACH-DB000013 |
| 524 | 10/1/2009 | Transcript 4 – Recorded conversation between Diego Borja & Santiago Escobar | ACH-D B000396-ACH-DB000411 |
| 525 | 10/31/2009 | Transcript 26 – Recorded conversation between Diego Borja & Santiago Escobar | ACH-DB000094- ACH-DB000133 |
| 526 | 10/18/2009 | Transcript 25 – Recorded conversation between Diego Borja & Santiago Escobar | ACH-DB000134- ACH-DB000171 |
| 527 | 5/11/2009 | Recording 1 – Spanish Transcription and English Translation | Exhibit 14-Borja-3/15/11 |
| 528 | 5/15/2009 | Recording 2 – Spanish transcription and English translation | Exhibit 15-Borja-3/15/11 |
| 529 | 6/5/2009 | Recording 3 – Spanish transcription and English translation | Exhibit 16-Borja-3/15/11 |
| 530 | 6/22/2009 | Recording 4 - Spanish transcription and English translation | Exhibit 17- Borja-3/15/11 |
| 531 | 10/16/2009 | Statement by Diego Borja | Exhibit 18-Borja-3/15/11 |

| 532 | 6/12/2009 | Financial Times article, "Chevron fights Ecuador pollution lawsuit" By Naomi Mapstone | Exhibit 19-Borja-3/15/11 |
|---|---|---|---|
| 533 | 5/23/2009 | The Economist article "Ecuador and Chevron: The Hounding of an American Oil Company" | Exhibit 20-Borja-3/15/11 |
| 534 | 7/17/2009 | Email to Diego Borja, subject Telefono with attachment "Detalle de Llamadas" (phone record) | ACH-AEO 00000001- ACH-AEO 00000008 |
| 535 | 7/17/2009 | Email to Diego Borja, subject Telefono with attachment "Detalle de Llamadas" | ACH-AEO 00000009- ACH-AEO 00000029 |
| 536 | 7/25/2009 | Email to Diego Borja, subject Patricio? with one attachment, photo | ACH-AEO 00000032- ACH-AEO_00000033 |
| 537 | 7/17/2009 | Email to Diego Borja, subject Memoria with one attachment, photo | ACH-AEO 00000030- ACH-AE0_00000031 |
| 538 | 8/23/2009 | Email to Diego Borja, subject Mas Fotos with five attachments, photos | ACH-AEO 00000082- ACH-AEO_00000100 |
| 539 | 8/24/2009 | Email to Diego Borja, subject Mas Fotos with one attachment, photos | ACH-AEO 00000101- ACH-AEO_00000103 |
| 540 | 8/26/2009 | Email to Diego Borja, copying Carlos Colorado, subject Vehiculo y otras fotos, with two attachments (photos) | ACH-AEO 00000107- ACH-AE0_00000111 |
| 541 | 10/1/2009 | Transcript 6 – Recorded conversation between Diego Borja & Santiago Escobar | ACH-DB000368- ACH-DB000382 |
| 542 | 10/15/2009 | Transcript 24 – Recorded conversation between Diego Borja & Santiago Escobar | ACH-DB000172- ACH-DB000222 |

9

| 543 | 10/1/2009 | Transcript 11 - Recorded conversation between Diego Borja & Santiago Escobar | ACH-DB000305- ACH-DB000318 |
|---|---|---|---|
| 544 | 10/1/2009 | Transcript 2 - Recorded conversation between Diego Borja & Santiago Escobar | ACH-DB000427- ACH-DB000442 |
| 545 | 10/1/2009 | Transcript 3 - Recorded conversation between Diego Borja & Santiago Escobar | ACH-DB000412- ACH-DB000426 |
| 546 | 10/7/2009 | Transcript 21 - Recorded conversation between Diego Borja & Santiago Escobar | ACH-DB000244- ACH-DB000256 |
| 547 | 10/1/2009 | Transcript 5 – Recorded conversation between Diego Borja & Santiago Escobar | ACH-DB000383- ACH-DB000395 |
| 548 | 10/1/2009 | Transcript 1 - Recorded conversation between Diego Borja & Santiago Escobar | ACH-DB000443- ACH-DB000458 |
| 549 | 10/1/2009 | Transcript 19 - Recorded conversation between Diego Borja & Santiago Escobar | ACH-DB000268- ACH-DB000279 |
| 550 | Undated | CV of Sara Regina Portilla Wanderley | ACHDB000926-ACHDB000930 |
| 551 | 8/20/2009 | Email from Pablo E Meneses to borja@ctceq.com, copying Allen Verstuyft, Subject Contract for Lab Disposal; with attachment Contract between Texaco and Interintelg S.A. | PRIV-DB000939- PRIV-DB000980 |

| 552 | 7/13/09-8/11/2009 | Email chain beginning with email from Mark Sigler, to Sara McMillen, Alejandro DeJesus, CC'ing Rick Green, Allen Verstuyft, subject "Re: Close out of Sample management" | PRIV-DB000992-- PRIV-DB001262 |
|---|---|---|---|
| 553 | 8/7/09-8/20/09 | Email between Pablo Menses, Sara Portilla, eduardo.borja@ctceq.com, Allen Verstuyft and borjad@ctceq.com , subject Incineration, with two attachments | PRIV-DB000981- PRIV-DB000982 |
| 554 | 8/26/2009 | Email from David B Moyer to Laurel Headley, Susan Bierbenbaum; CC'ing Mike Anderson, and John Cline, Subject Sara & Diego US entries, with one attachment, handwritten notes | PRIV-DB000257- PRIV-DB000258 |
| 555 | 9/15/2009 | Email from John Cline to Cris Arguedas, CC'ing Mike Anderson and Laurel Headley (partially redacted) | ACHDB000939-ACHDB000940 |
| 556 | 8/11/2009 | Borja employment application for Chevron | ACHDB000912-ACHDB000925 |
| 557 | 8/11/2009 | Sara Portilla employment application for Chevron | ACHDB000898-ACHDB000911 |
| 558 | 8/27/09-9/7/10 | Email from Diego Borja to Allen Verstuyft, eduardo.borja@ctceq.com and uioec@me.com; subject Interintelg Incoices August 2009 | ACHDB000001-ACHDB000002 |

| | | | |
|---|---|---|---|
| 559 | 8/11/09-<br>9/16/09 | Email chain between Al Verstuyft, Pablo Meneses, Diego Borja, Alejandro DeJesus, Eduardo Borja and Sara McMillen, subject Revised Scope of Work | ACHDB000095-<br>ACHDB000100 |
| 560 | 6/16/2010 | Email from Mike Anderson to Caroline N. Mitchell, subject Names of persons | PRIV-DB000038-<br>PRIVDB000039 |
| 561 | 10/7/2009 | Email from John Cline to Cris Arguedas, Laurel Headley and Mike Anderson | PRIV-DB000142- PRIV-DB000143 |
| 562 | 10/1/2009 | Transcript of recorded conversation between Diego Borja & Santiago Escobar; Spanish with English translation | Exhibit 49-Borja-3/15/11 |
| 563 | 8/30/2009 | Email chain between Mike Anderson, Cris Arguedas, Laurel Headley, and John Cline, re Diego's phone, security, tomorrow | PRIV-DB000204- PRIV-DB000205 |
| 564 | 7/5/2009 | Email from Wayne Hansen (glbltrdrwn@yahoo.com) to Diego Borja, subject "payment for services" | ACHDB000005-<br>ACHDB000006 |
| 565 | 7/14/2009 | Email from glbltrdrwn@yahoo.com to iri.pi@sbcgobal.net , CC'ing diegoborja@hotmail.com , subject "dooped?????" | ACHDB000007 |
| 566 | 12/3/2010 | Email from Wayne Hansen to eric@mason-ig.com, Cc'ing Charles Willson Harris | ACHDB000207 |

| 567 | 5/11/2009 | Recording 1 Spanish Transcription and English Translation | Exhibit 54 – Borja3/17/11 |
|---|---|---|---|
| 568 | 5/15/2009 | Recording 2, Spanish Transcription and English Translation | Exhibit 55 – Borja3/17/11 |
| 569 | Apr-08 | CIASA Corporate Position Statement | Exhibit 56 – Borja -3/17/11 |
| 570 | 5/22/2009 | Email exchange between Pablo Fajardo and Steven Donziger, CC'ing Juan Pablo Saenz, Julio Prieto, Luis Yana and Luis Villacreces, subject Re: Confidential but necessary | Exhibit 57 – Borja -3/17/11 |
| 571 | 6/5/2009 | Recording 3, Spanish Transcription and English Translation | Exhibit 58 -Borja -3/17/11 |
| 572 | 6/22/2009 | Recording 4, Spanish Transcription and English Translation | Exhibit 59 Borja -3/17/11 |
| 573 | 6/22/2009 | Email from Ruben Miranda to Diego Borja re account information | PGE00000172 Exhibit 60 Borja-3/17/11 |
| 574 | 6/22/2009 | Email from Ruben Miranda to Diego Borja re account information | PGE00000173 Exhibit 61 Borja-3/17/11 |
| 575 | 6/23/2009 | Email from Ruben Miranda to Diego Borja re more account information | PGE00000174 Exhibit 62 Borja-3/17/11 |
| 576 | 7/6/2009 | Email from Ruben Miranda to Diego Borja, subject "asunto pendiente" | ACHDB000003 |
| 577 | 7/20/2009 | Email from Ruben Miranda to Diego Borja, subject "muy preocupados" | ACHDB000004 |

| 578 | 8/20/2009 | Email from Carlos Patricio Garcia to Diego Borja, subject "hola" | ACHDB000008 |
|---|---|---|---|
| 579 | 10/1/2009 | Transcript 10-Recorded conversation between Diego Borja & Santiago Escobar | Exhibit 66 Borja 3/17/11 |
| 580 | 3/3/2010 | Email exchange between Karen Hinton, Steven Donziger, Andrew Woods, and Laura Garr, subject Photographer, attachments photos | DONZ00029708-DONZ00029710 |
| 581 | 2011 | "Photos of the House that Chevron Is Paying $6,000 a Month to Hide Diego Borja" on website, Amazon Watch, Frente de Defensa de la Amazonia | Exhibit 68 Borja 3/17/11 |
| 582 | Undated | Wanted photo of Diego Borja | Exhibit 69 Borja 3/17/11 |
| 585 | 2010 | "A Spy in the Jungle" article by Mary Cuddehe | CVX-RIC0-5549371- CVX-RICO-5549374 |
| 586 | 5/31/2013 | Declaration of Denis Collins | Dkt 1197-2 |
| 597 | Undated | Photograph | Defendant's exhibit Moncayo 1-9/13/11 |
| 598 | Undated | Photograph | Defendant's exhibit Moncayo 2-9/13/11 |
| 599 | Undated | Photograph | Defendant's exhibit Moncayo 3-9/13/11 |
| 600 | Undated | Photograph | Defendant's exhibit Moncayo 4-9/13/11 |
| 601 | Undated | Photograph | Defendant's exhibit Moncayo 5-9/13/11 |
| 603 | 8/27/2010 | Declaration of Robinson Yumbo Salazar | Dkt. 153-3, pages 36-40 |

| | | | |
|---|---|---|---|
| 604 | 8/27/2010 | Declaration of Donald Rafael Moncayo Jimenez | Dkt. 153-3, pages 41-45 |
| 605 | 3/22/2013 | Settlement Agreement and Mutual Release among Chevron, Stratus, Beltman and Maest | Dkt 934-1 |
| 623 | 5/26/2010 | Anson Email | CVX-RICO-5592872 |
| 624 | 9/3/2010 | Investigator 6 Email | CVX-RICO-5576943 |
| 625 | 9/3/2010 | Fernando Reyes email | CVX-RICO-5576944 |
| 626 | 11/26/2010 | Anson Email | CVX-RICO-5583251 |
| 627 | 11/26/2010 | Investigator 6 Email | CVX-RICO-5583251 |
| 628 | 12/22/2010 | Robertson email | CVX-RICO-4759981 |
| 629 | 2/15/2011 | Fernando Reyes email | CVX-RICO-5575474 |
| 630 | 2/15/2011 | Fernando Reyes email | CVX-RICO-5575474 |
| 631 | 3/3/2011 | Fernando Reyes email | CVX-RICO-5577172 |
| 687 | 3/28/2006 | Email from Ben Ortiz, Subject:  Donzinger and Sacha Sur Video | CVX-RICO-4565128 |
| 696 | 2/12/2010 | Anson search results re:  Zambrano | CVX-RICO-5524194 - CVX-RICO-5524264 |
| 701 | 6/4/2010 | Anson report on Plaintiff's protest of CVX | CVX-RICO-5592733 |
| 702 | 8/2/2010 | Anson email to Neuman re:  M. Cuddehe article (email redacted) | CVX-RICO-5549371-CVX-RICO-5549374 |
| 703 | 8/17/2010 | Redacted email w/ Amy Goodman inter-view w/Cuddehe | CVX-RICO-5516189-CVX-RICO-5516208 |

15

| 707 | 8/15/2011 | The Red Line:  Chevron's secret wars | CVX-RICO-5493266 |
| 708 | 3/17/2011 | Kroll LexisNexis search for Donziger | CVX-RICO-5918345-CVX-RICO-5918390 |
| 709 | 5/1/2012 | Kroll email re:  phone call tracking | CVX-RICO-5566501-CVX_RICO_5566503 |
| 756 | 2/22/2006 | Email from S. Donziger Subject:  Russell report messaging | CVX-RICO-2369384-CVX-RICO-2369385 |
| 815 | 3/28/2006 | Email from B. Ortiz Subject:  Donziger and Sacha Sur Video | CVX-RICO-4565126-CVX-RICO-4565128 |
| 921 | 2/18/2013 | Transcript of Proceedings (Nov. 10, 2010), In re Application of the Republic of Ecuador re Diego Borja, No. C 10-00112 (N.D. Cal.) | Ex R-197 to Track 2 Counter-Memorial |
| 927 | 2/8/2013 | Chevron Paid $2.2 Million To Man Who Threatened To Expose Company's Corruption in Ecuador, BCLC | Ex R-471 to Track 2 Counter-Memorial |
| 967 | 2/18/2013 | Excerpt from Lago Agrio Record (Chevron's letter to the Court (Oct. 18, 2005) requesting the suspension of the judicial inspection in El Guanta). | Ex R-475 to Track 2 Counter-Memorial |
| 968 | 2/18/2013 | Excerpt from Lago Agrio Record (Intelligence Report signed by Major Arturo Velasco (Oct. 18, 2005)) | Ex R-477 to Track 2 Counter-Memorial |
| 969 | 2/18/2013 | Excerpt from Lago Agrio Record (Court Order (Oct. 18, 2005)) | Ex R-478 to Track 2 Counter-Memorial |

| 970 | 2/18/2013 | Excerpt from Lago Agrio Record (Report signed by Sr. Coronel Miguel Fuertes Ruiz (Feb. 8, 2006)) | Ex R-479 to Track 2 Counter-Memorial |
|---|---|---|---|
| 971 | 2/18/2013 | Chevron PI Results from Guanta Production Station (Sept. 28, 2005) | Ex R-541 to Track 2 Counter-Memorial |
| 972 | 2/18/2013 | Excerpt from Guanta 7 JI (April 5, 2006) | Ex R-824 to Track 2 Counter-Memorial |
| 973 | 2/18/2013 | Excerpt from Guanta 6 JI (April 6, 2006). | Ex R-825 to Track 2 Counter-Memorial |
| 1034 | 2/18/2013 | Email chain between Borja and Verstuft regarding August 2009 Interintelg invoices | Ex R-320 to Track 2 Counter-Memorial |
| 1052 | 9/3/2009 | Kent Robertson Email | CVX-RICO-4369595 |
| 1053 | 9/7/2009 | Chris Gidez Email | CVX-RICO-4865687 |
| 1054 | 6/9/2010 | Transcript of Escobar Briefing at Ciespal | CVX-RICO-4364224 |
| 1055 | 11/24/2010 | Nunez Interview | CVX-RICO-4381143 |
| 1056 | 8/13/2009 | Borja Chevron Payments to Borja | CVX-RICO-000642 |
| 1057 | 8/31/2009 | Borja Attorney Bills | CVX-RICO-0000343 |
| 1058 | | Borja Travel and Living Expenses | CVX-RICO-6014666 |
| 1059 | 28-Aug | Borja Travel Expenses | CVX-RICO-0000476 |
| 1077 | 10/29/2010 | Letter to Lago Agrio Court filed by Marcelo Munoz | |