UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                         :
CHEVRON CORPORATION,                 :
                                                         :
           Plaintiff,                          :
                                                         :
    -against-                           :    Case No.  11 Civ.  0691 (LAK)
                                                         :
STEVEN R. DONZIGER, et al.,             :
                                                         :
           Defendants.                    :
                                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW IN SUPPORT OF
CHEVRON CORPORATION'S MOTION TO BIFURCATE TRIAL**


GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I.   Bifurcating the Trial Into Jury and Non-Jury Phases Promotes Efficiency, Avoids Prejudice, and Facilitates Jury Understanding ........................................................ 3

    A.   Defendants' Unclean Hands Defense Should Be Tried to the Court ....................... 4

    B.   Equitable Relief Against the LAPs Should Be Tried to the Court .......................... 6

    C.   Limiting the Issues Before the Jury Is Warranted In This Complex Case ............... 8

    D.   Bifurcation Into Jury and Non-Jury Phases Does Not Prejudice Defendants ................................................................................................................ 9

II.   Bifurcating the Jury Phase into Liability and Damages Is Proper ..................................... 9

CONCLUSION .............................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amato v. City of Saratoga Springs*,
  170 F.3d 311 (2d Cir. 1999) ................................................................................. 3, 6

*Baldor Elec. Co. v. Sungard Recovery Services, LP*,
  No. 06-cv-02135, 2006 WL 3735980 (W.D. Ark. Dec. 15, 2006) ...................... 7

*Black v. Boyd*,
  248 F.2d 156 (6th Cir. 1957) ................................................................................ 7

*Bonilla v. Jaronczyk*,
  354 Fed. Appx. 579 (2d Cir. 2009) ...................................................................... 6

*Chevron Corp. v. Donziger*,
  800 F. Supp. 2d 484 (S.D.N.Y. 2011) .................................................................. 3

*Chevron Corp. v. Salazar*,
  No. 11 Civ. 3718(LAK), 2011 WL 3628843 (S.D.N.Y. Aug. 17, 2011) ............ 4

*Conkling v. Turner*,
  18 F.3d 1285 (5th Cir. 1994) ................................................................................ 8

*Crown Cork & Seal Co. v. Credit Suisse First Boston Corp.*,
  288 F.R.D. 335 (S.D.N.Y. 2013) ............................................................... 5, 8, 10

*Dallal v. New York Times Co.*,
  352 Fed. Appx. 508 (2d Cir. 2009) ...................................................................... 6

*Getty Petroleum Corp. v. Island Transp. Corp.*,
  862 F.2d 10 (2d Cir. 1988) ................................................................................... 9

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*,
  82 F. Supp. 2d 126 (S.D.N.Y. 1999) .................................................................... 3

*Granfinanciera v. Nordberg*,
  492 U.S. 33 (U.S. 1989) ....................................................................................... 7

*In re Friedberg*,
  131 B.R. 6 (S.D.N.Y. 1991) ................................................................................. 7

*Katsaros v. Cody*,
  744 F.2d 270 (2d Cir. 1984) ................................................................................ 6

*Liberty Oil Co. v. Condon Nat'l Bank*,
  260 U.S. 235, 43 S. Ct. 118 (1922) ..................................................................... 3

*Mineo v. City of New York*,
  No. 09-CV-2261 (RRM)(MDG), 2013 WL 1334322 (E.D.N.Y. Mar. 29, 2013) ........... 6

## TABLE OF AUTHORITIES *(continued)*

Page(s)

*Monaghan v. SZS 33 ASSOCIATES, LP*,
 827 F. Supp. 233 (S.D.N.Y. 1993) .................................................................................... 5

*Morton v. Otis Elevator Co.*,
 No. 07-CV-00469(M), 2012 WL 124857 (W.D.N.Y. Jan. 17, 2012) ................................. 6

*PenneCom B.V. v. Merrill Lynch & Co.*,
 372 F.3d 488 (2d Cir. 2004) .............................................................................................. 4

*Smith v. Lightning Bolt Prods.*,
 861 F.2d 363 (2d Cir. N.Y. 1988) ................................................................................... 10

*Union Carbide Corp. v. Montell N.V.*,
 28 F. Supp. 2d 833 (S.D.N.Y. 1998) ..................................................................... 3, 8, 9, 10

*United States v. Stein*,
 452 F. Supp. 2d 276 (S.D.N.Y. 2006) ............................................................................... 7

*Value Line Fund v. Marcus*,
 161 F. Supp. 533 (S.D.N.Y. 1958) .................................................................................... 6

*Vichare v. AMBAC, Inc.*,
 106 F.3d 457 (2d Cir. 1966) ............................................................................................ 10

### Other Authorities

C. Wright and A. Miller, Federal Practice and Procedure § 2311 (1971) ..................................... 7

C. Wright and A. Miller, Federal Practice and Procedure § 2398 (2008) ..................................... 3

**PRELIMINARY STATEMENT**

Chevron's path to unwinding the fraudulent conspiracy conducted by Donziger and his allies has been lengthy and complex, and the trial on the evidence Chevron has uncovered will be no different. That trial will likely involve dozens of witnesses and more than a thousand documents. The fraudulent scheme itself has extended more than a decade, and involved conspirators and conduct on multiple continents. Because of the many defaults in this action, the remaining Defendants are Steven Donziger, the U.S. lawyer who has masterminded and directed this criminal scheme against Chevron, and his two law firms (collectively, "Donziger"), and two of the Ecuadorians who front as the nominal plaintiff parties to the Ecuadorian judgment ("the LAPs Representatives" or "LAPs"), whose liability derives from the misconduct of their agents (such as Donziger). In light of the complexity and length of the anticipated trial, Chevron brings this bifurcation motion to request an efficient and just trial structure.

At the outset, Chevron apprises the Court that it is no longer seeking money damages against the LAP Representatives on the remaining claims against them for fraud and conspiracy, and instead, will be seeking only equitable relief against them on those claims. *See* Dkt. 1404. (This waiver covers only damages for the claims included in this lawsuit.) As for Donziger, while Chevron continues to retain its money damage claims against him requiring a jury trial, Chevron commits that it will apprise the Court before the end of September whether it will seek only equitable relief against him at a bench trial, as unfolding events and resolution of outstanding issues may potentially bear on that decision. If the Court directs Chevron to make that commitment one way or the other sooner than the end of September, Chevron will do so. In the interim, Chevron reserves its right to pursue money damages against Donziger.

Chevron proposes the following trial structure:

1. A two-phased jury trial, with the jury first adjudicating Donziger's liability; if

Donziger is found liable, the jury would then hear evidence and decide monetary damages—with compensatory and punitive damages addressed sequentially. In the interest of efficiency and avoiding confusion or prejudice, those questions should be treated in separate proceedings before the same jury; they largely rely on distinct and non-overlapping evidence.

2. The Court would then conduct a bench trial adjudicating: (a) equitable relief against both Donziger and the LAP Representatives, and affirmative defenses to such relief, such as unclean hands; (b) the vicarious or derivative liability of the LAP Representatives subjecting them to equitable relief for the misconduct of their agents (such as Donziger); and (c) other, remaining issues triable to the Court, such as collateral estoppel and personal jurisdiction. Defendants have no Seventh Amendment right to jury adjudication of any of these issues, and all of them are matters best suited for judicial resolution. Moreover, each relies primarily on evidence that is not relevant to any of the questions to be decided by the jury, and which would only confuse and prejudice the jury.

In particular, Defendants apparently intend to rely on supposed "evidence" of Chevron's "unclean hands" in connection with the Ecuadorian litigation. But those allegations are not probative of whether Donziger has violated RICO or committed fraud, and they have no legal relevance to Chevron's claims for money damages against Donziger. They are relevant, if at all, only to Chevron's entitlement to equitable relief against these defendants. But they have substantial potential to confuse or prejudice the jury.

Accordingly, dividing the non-jury issues from the jury trial enables the jury to focus exclusively on the evidence and argument relevant to those questions that it must decide, without being confused or prejudiced by extraneous issues.

## ARGUMENT

Pursuant to Federal Rule of Civil Procedure 42(b), this Court has discretion "to order

separate trials where such an order will further convenience, avoid prejudice, or promote efficiency." *Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999).  As this Court previously noted, "'Rule 42(b) is sweeping in its terms and allows the district court, in its discretion, to grant a separate trial of any kind of issue in any kind of case.'"  *Chevron Corp. v. Donziger*, 800 F. Supp. 2d 484, 491 (S.D.N.Y. 2011) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 2398, at 126 (2008)).

Courts have identified multiple factors relevant to the Court's exercise of this discretion, including whether separating proceedings "might enhance juror comprehension," *Union Carbide Corp. v. Montell N.V.*, 28 F. Supp. 2d 833, 837 (S.D.N.Y. 1998), or where "the litigation of the first issue might eliminate the need to litigate the second issue, or where one party will be prejudiced by evidence presented against another party," *Amato*, 170 F.3d at 316.  *See also Chevron*, 800 F. Supp. 2d at 491 ("Among the pertinent considerations are the degree of difference between the issues to be tried separately, the overlap or lack thereof in the proof, and any prejudice to either side by the district court's failure to adopt its view of the matter.").  Each of these factors favors Chevron's proposed trial structure in this case.

I. **Bifurcating the Trial Into Jury and Non-Jury Phases Promotes Efficiency, Avoids Prejudice, and Facilitates Jury Understanding**

As in many trials, not every issue in this trial must go to the jury.  Claims for monetary relief—e.g., Chevron's claim for damages against Donziger under RICO—implicate the Seventh Amendment right to a jury trial.  But equitable defenses to that liability and claims for equitable relief do not.  *See Liberty Oil Co. v. Condon Nat'l Bank*, 260 U.S. 235, 242-43, 43 S. Ct. 118, 121 (1922); *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 126, 128 (S.D.N.Y. 1999) (bifurcating unclean hands and other equitable defenses for bench trial).

Thus, this case involves both issues properly put before a jury—Donziger's liability un-

3

der RICO and for fraud, and Chevron's money damages from Donziger—and issues that do not require a jury, such as the LAPs' liability for fraud, Chevron's right to equitable relief and defenses, and Defendants' collateral estoppel defense. For efficiency, and to avoid prejudice, the latter issues should be bifurcated and tried separately to the Court. This approach will facilitate the jury's understanding of the issues and protect all parties from jury confusion and prejudice.

### A.     Defendants' Unclean Hands Defense Should Be Tried to the Court

Defendants' primary equitable defense rests on an array of facts that the Court has already held are not relevant to Donziger's liability or the monetary damages he should be assessed. The core of Defendants' unclean hands defense is that Chevron is not entitled to relief for Defendants' use of fraud to obtain a judgment because Chevron supposedly "also was guilty of misconduct in relation to the Ecuadorian litigation." *Chevron Corp. v. Salazar*, No. 11 Civ. 3718(LAK), 2011 WL 3628843, at *1 (S.D.N.Y. Aug. 17, 2011). As the Court previously held, Defendants' allegations are relevant, at most, to whether Chevron is "entitled to the equitable remedy of an injunction." *Id.* at *40-41. Indeed, the defense was otherwise stricken in the "Count 9" action. *Id*. Because unclean hands is not a valid defense against Donziger's monetary liability, it need not—and should not—be put before the jury.[1]

The details of Defendants' unclean hands argument confirm that it has no bearing on whether Donziger engaged in fraud or violated RICO, or the measure of Chevron's damages flowing therefrom. Defendants allege that Chevron "us[ed] its influence over the Ecuadorian military to block the collection of scientific evidence at a site [Guanta] where Chevron anticipated particularly damaging results." Dkt. 350 at 94-95. Defendants further claim Chevron "orchestrated a 'sting' operation against the presiding Ecuadorian judge, attempting to entrap the

---

[1] Defendants' collateral estoppel defense is equitable as well, and thus is not a jury question, regardless of the nature of Chevron's damages claims. *See PenneCom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004).

4

judge in misconduct while surreptitiously videotaping it." *Id*. at 97. And Defendants allege that Chevron sought to obtain "clean" samples in the Ecuadorian litigation by performing "pre-inspections" (in fact a standard procedure that the LAPs team used as well), and engaged in improper contacts with and bribes and intimidation of court officials and experts. None of this has anything to do with whether, for example, Donziger and his team fraudulently wrote Cabrera's supposedly neutral expert report or the judgment itself, or how they leveraged those frauds into their fund-raising campaigns and their direct and proxy attacks on Chevron in the United States.

Defendants will insist that they be permitted to present their unclean hands attacks to the jury, but the *only* purpose for introducing this material during the trial on Donziger's liability would be an improper one—to unfairly prejudice the jury against Chevron.[2] In fact, that purpose is the logical extension of Defendants' long running scheme to divert attention from their own conduct and attack Chevron and those who speak on its behalf, as discussed further in Chevron's concurrently filed motions *in limine*. *See* also Dkt. 843 at 14–25. Defendants have no right to have equitable defenses heard by a jury, but they would doubtlessly take every opportunity to raise their allegations in front of that jury, hoping to poison the well against Chevron as they do in their public communications and in their briefs.

Accordingly, Defendants' unclean hands defense should not be tried to a jury, nor the material they offer in support presented in the jury phase. *See Crown Cork & Seal Co. v. Credit Suisse First Boston Corp.,* 288 F.R.D. 335, 338 (S.D.N.Y. 2013) (bifurcating trial and saving evidence of "alleged misconduct" by settling parties for second phase so as not to "cloud the jury's judgment as to whether plaintiffs have prove[n] their claims against" the defendant); *Monaghan v. SZS 33* ASSOCIATES*, LP*, 827 F. Supp. 233, 244 (S.D.N.Y. 1993) ("A district court may or-

---

[2] To the extent Defendants assert that any of this "evidence" does bear on Chevron's claims or their non-equitable defenses, they should be required to make a proffer of the specific evidence and an explanation of its relevance.

der separate trials to prevent the factfinder from being exposed to evidence . . . that would contaminate his mind[.]"); *Value Line Fund v. Marcus*, 161 F. Supp. 533, 537 (S.D.N.Y. 1958). Indeed, the Second Circuit has recognized the risk of prejudice from the admission of evidence that would likely be inadmissible if a claim were tried alone. *See Amato*, 170 F.3d at 316.

Bifurcation along these lines is also efficient. Although overwhelming evidence supports Chevron's claims, in the unlikely event that Donziger prevailed at the first stage, it would likely eliminate the need to consider the non-jury issues, or any of the evidence offered in support thereof. *See Bonilla v. Jaronczyk*, 354 Fed. Appx. 579, 581-82 (2d Cir. 2009) (affirming bifurcation where "'litigation of the first issue might eliminate the need to litigate the second issue'") (quoting *Amato*, 170 F.3d at 316); *Morton v. Otis Elevator Co.*, No. 07-CV-00469(M), 2012 WL 124857, at *2 (W.D.N.Y. Jan. 17, 2012) ("The potential for saving the parties' and court's time in the event of a defense verdict on liability is a significant consideration.").

Proceeding in phases will not require "redundant presentation of evidence . . . because the same jury" will hear the first phase, and the Court will have presided over the jury phase and will hear the last. *Dallal v. New York Times Co.*, 352 Fed. Appx. 508, 512 (2d Cir. 2009). And because the evidence regarding, for example, Borja, Guanta, and pre-inspections has no bearing on whether Donziger masterminded a fraudulent scheme, each phase "involve[s] different types of evidence," thus supporting bifurcation by enabling efficient consideration of the issues. *Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir. 1984). *See also Mineo v. City of New York*, No. 09-CV-2261 (RRM)(MDG), 2013 WL 1334322, at *2 (E.D.N.Y. Mar. 29, 2013) (bifurcating where "there is likely little overlap between witnesses on liability and those necessary to prove the complicated, expert-based claims relating to post-traumatic stress and other damages issues").

### B.  Equitable Relief Against the LAPs Should Be Tried to the Court

Because Chevron is pursuing only fraud and conspiracy claims for equitable relief against

the LAPs, they have no Seventh Amendment right to a jury trial.  The Seventh Amendment preserves the right to jury trials in "suits at common law," which refers to "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered."  *Granfinanciera v. Nordberg*, 492 U.S. 33, 41 (U.S. 1989) (citation omitted).  In general, the nature of the relief sought is the "more important" aspect of the two-part test for determining a jury trial right.  *Id*. at 42.  Moreover, "claims grounded in fraud are not distinctively legal or equitable, and thus 'the jury right turns on the remedy sought and the context in which the claim of fraud arises.'"  *In re Friedberg*, 131 B.R. 6, 12 (S.D.N.Y. 1991) (quoting C. Wright & A. Miller, Federal Practice and Proc. § 2311 (1971)).  Here, Chevron seeks prospective and defensive equitable relief—an injunction preventing the LAPs from further harming Chevron and equitable remedies safeguarding Chevron's assets should the LAPs proceed nonetheless.  *See* Chevron's August 30, 2013 Proposed Pre-Trial Order, Exhibit D.  This is "relief of a kind historically available only in equity [therefore] there is no right to a jury."  Wright, § 2311.  *See, e.g.*, *Black v. Boyd*, 248 F.2d 156, 162 (6th Cir. 1957) (finding no jury right attached to fraud claim seeking only equitable relief); *Baldor Elec. Co. v. Sungard Recovery Services, LP*, No. 06-cv-02135, 2006 WL 3735980, at *15 (W.D. Ark. Dec. 15, 2006) ("if the claimant can only be made whole by some equitable remedy such as rescission and no legal damages are sought, as in the instant case, there is no right to a jury trial"); *see also U.S. v. Stein*, 452 F. Supp. 2d 276, 279 (S.D.N.Y. 2006) (Kaplan, J.) ("Actions for specific performance and for injunctions always have been equitable in nature.  The Seventh Amendment therefore affords [defendant] no right to a jury trial.").[3]

---

[3]  Because the jury will not be asked to make findings with respect to the LAPs, what role the LAPs should play in the jury phase of the trial should be addressed once the Court defines the specific structure for this trial.  Although the LAPs are nominally the plaintiffs in the Ecuadorian litigation, the primary players in the fraudulent scheme are
[Footnote continued on next page]

7

### C.     Limiting the Issues Before the Jury Is Warranted In This Complex Case

Limiting the issues before the jury to those necessary for its understanding of the case assists the jury in comprehending what is already a complex case. Indeed, the complexity of RICO cases makes them "specially suited for trial limitation," and "numerous trial courts have ordered separate trials on RICO claims to facilitate their resolution and simplify jury presentation." *Conkling v. Turner*, 18 F.3d 1285, 1293 (5th Cir. 1994) (gathering cases). This case is no exception. Defendants long-running, international racketeering scheme is recorded in many hours of video, hundreds of emails, and thousands of pages of bank and phone records, and court filings. All of this material will be presented at trial by witnesses testifying in English and Spanish, and numerous experts will offer their opinions on finance, forensics, linguistics, and other matters.

This Court's analysis in *Crown Cork & Seal Co. v. Credit Suisse First Boston Corp.*, 288 F.R.D. 335 (S.D.N.Y. 2013), a complex securities case, applies here. In *Crown Cork*, "eliminating the likelihood of juror confusion" was, in the Court's view, "the foremost factor in support of bifurcating the trial." *Id*. at 337. The Court anticipated "80 to 100 witnesses and hundreds, if not thousands, of documents," as well as "numerous experts." *Id*. As a result, the Court concluded that separating "the primary issues of Credit Suisse's liability," on the one hand, "and the issue of apportionment of liability" to other parties, on the other, would "likely aid the jury's comprehension of this case." *Id*. *See also Union Carbide*, 28 F. Supp. 2d at 837 ("Segmenting difficult issues of liability and damages might enhance juror comprehension. Confronting one complex set of issues at a time is likely to reduce the possibility of jury frustration and confusion."). The

---

[Footnote continued from previous page]
their lawyers and consultants, including Donziger. It is apparent that the LAPs have been used by Donziger and his allies, in court and in the press, in furtherance of an attempt to paint this case as a battle between a multinational corporation and Ecuadorian villagers, when Chevron's real dispute is with the perpetrators of the multinational, multi-million dollar fraud—who stand to make billions of dollars if they succeed. And while the LAPs' continued willingness to lend their names to Donziger's scheme undermines their posture as innocents, they may nonetheless cloud the jury's perspective of Donziger and his illegal acts.

8

same conclusion applies here, particularly because the issues do not substantially overlap.

### D. Bifurcation Into Jury and Non-Jury Phases Does Not Prejudice Defendants

The Defendants would suffer no prejudice from this division, and indeed will be the primary beneficiaries of the efficiencies it offers. Defendants have consistently claimed to need a postponement of the trial date so that they can better prepare for the trial with their supposedly limited resources. *See, e.g.*, Dkts. 1211, 1370. Defendants should thus prefer to narrow the issues in the initial trial, rather than preparing to resolve *all* issues in a single jury trial. And this structure will greatly reduce the amount of preparation Defendants must do prior to trial, because they can delay preparation of their presentation on the LAPs' vicarious or derivative liability and their unclean hands defense, since those components will not come up, if they do at all, until the final phase of the proceeding, which will be a more procedurally flexible bench proceeding.

## II. Bifurcating the Jury Phase into Liability and Damages Is Proper

To most expeditiously and clearly resolve the jury phase of this case, further bifurcation is appropriate between issues of Donziger's primary liability and monetary damages. *See Getty Petroleum Corp. v. Island Transp. Corp.*, 862 F.2d 10, 14-15 (2d Cir. 1988) ("[W]hether to bifurcate a trial into liability and damages phases is a matter within the sound discretion of the trial court."). As with the primary bifurcation between jury and non-jury phases, this would serve efficiency; in the unlikely event that Donziger prevails on liability, there will be no need to undertake the also substantial task of litigating Chevron's harm from his fraudulent conduct. *Union Carbide*, 28 F. Supp. 2d at 837. Chevron's damages will largely include its costs of defense, including attorneys' fees, and the costs imposed on it by Defendants' attempts to extort it and enforce their fraudulent judgment. The fact and expert testimony that pertains to these damages is irrelevant to whether Donziger has engaged in fraud or violated RICO. Accordingly, it need not ever be presented if Donziger prevails on liability. *See Union Carbide*, 28 F. Supp. 2d at 837

("There is little likelihood of repetition or waste of resources because the damages issues do not appear to be inextricably interwoven with the liability issues or to require repetition of the evidence presented during the liability phase."). *Cf. Vichare v. AMBAC, Inc.*, 106 F.3d 457, 466 (2d Cir. 1966) (bifurcation improper where "issues of liability and damages are intertwined"). Within this phase, compensatory damages would be tried first, followed by punitive damages. *See Smith v. Lightning Bolt Prods.*, 861 F.2d 363, 374 (2d Cir. N.Y. 1988) ("the preferred method of accommodating the various interests is to delay trial as to the amount of an award of punitive damages until the usual issues of liability and compensatory damages have been tried").

Trying liability and damages separately will not cause prejudice to any party, while trying them together risks prejudice to Chevron. Bifurcating damages from liability avoids the risk that the evidence of Chevron's damages prejudices the jury by emphasizing Chevron's necessary but still quite substantial expenditures in response to Defendants' fraud. This would play to Defendants' hand—emphasizing Chevron's legal spending is among their most frequently played suits.[4] Moreover, segregating liability from damages would "likely aid the jury's comprehension of this case," given its complexity, by allowing the jury to "confront[] one complex set of issues at a time." *Crown Cork & Seal*, 288 F.R.D. at 337; *Union Carbide*, 28 F. Supp. 2d at 838.

## CONCLUSION

For the foregoing reasons, the Court should order that the case be tried in two phases: (1) a jury phase, deciding Donziger's liability and monetary damages; and (2) a non-jury phase, deciding Chevron's entitlement to equitable relief, including the LAPs' vicarious or derivative liability, equitable defenses, and collateral estoppel.

---

[4] *See, e.g.*, June 4, 2013 Chevron Pit blog post, "Federal Judge Asked To Stay Case Over $19 Billion Ecuador Judgment" *available at* http://thechevronpit.blogspot.com/2013/06/federal-judge-asked-to-stay-case-over.html.("Donziger outlined for Judge Kaplan how he is now litigating alone (pro se) against at least 114 lawyers from Chevron's lead outside firm").

Dated: September 8, 2013  
New York, New York

Respectfully submitted,

/s/ Randy M. Mastro
---
Randy M. Mastro  
Andrea E. Neuman  
GIBSON, DUNN & CRUTCHER LLP  
200 Park Avenue  
New York, New York 10166  
Telephone: 212.351.4000  
Facsimile: 212.351.4035

William E. Thomson  
333 South Grand Avenue  
Los Angeles, California 90071  
Telephone: 213.229.7000  
Facsimile: 213.229.7520

*Attorneys for Chevron Corporation*

11

# APPENDIX A

## Chevron's Proposed Trial Structure

<u>Jury Phase</u>

Stage One: Donziger Defendants' liability under RICO, N. Y. Jud. Law § 487, and for fraud

Stage Two: Compensatory damages followed by punitive damages

<u>Bench Phase</u>

The LAPs' vicarious/derivative or conspiracy liability

Personal jurisdiction over the LAPs in New York

Equitable relief and defenses

Collateral estoppel defense