UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

                 Plaintiff,

      -against-                                      11 Civ. 0691 (LAK)

STEVEN DONZIGER, et al.,

                 Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM AND ORDER DENYING CONTINUANCE AND
## STAY OF PROCEEDINGS PENDING DISPOSITION OF MANDAMUS PETITION


LEWIS A. KAPLAN, *District Judge.*

         Defendants now move to delay the October 15, 2013 trial (which was scheduled more than ten months ago) and, in addition, stay all other proceedings in this case pending the disposition by the Second Circuit of their petition for a writ of mandamus.

         The motion to delay the trial is without merit, represents a radical change in defendants' nominal position (though it is entirely consistent with a years-old strategy of delay wherever possible), and comes far too late.

         The motion to delay the trial on the theory that it should await disposition of the mandamus petition, taken at face value, is entirely unpersuasive. The petition, even if granted, would not be case dispositive. It seeks to vacate a few interlocutory orders that relate principally to whether the defendants' affirmative defense of collateral estoppel rests in part on the Ecuadorian judgment against Chevron (the "Judgment") and, if so, whether defendants should have been permitted to withdraw it in this action without prejudice to asserting that Judgment elsewhere. A

ruling vacating those orders would not significantly affect the scope or duration of the trial or of the preparation for it.   In any event, as the collateral estoppel defense, if pressed, would be resolved either by a special jury verdict or by the Court, any error with respect to the collateral estoppel defense – which would not even be material absent a plaintiff's verdict on liability – could be cured easily on direct appeal from a final judgment.

Defendants' actions since the petition for mandamus was filed on March 5, 2013 effectively admit as much.  They subsequently asserted their desire to proceed to trial on October 15 and  initiated and participated in extensive discovery and motion practice – some within the last few weeks – without ever suggesting that a delay of the trial pending the outcome of the petition was necessary or appropriate.

Nor is there any merit to the suggestion that the trial should be delayed because defendants need more time to prepare.  They repeatedly have been granted most of the extensions they have sought despite only the most tenuous reasons for them.  Indeed, they recently moved for – and on September 4 substantially received – a thirty day extension of all outstanding deadlines, an extension they said was necessary to permit them to try the case on October 15.  Interestingly, they did not wait for a ruling on that motion before following it up with the motion now before the Court.

The request to stay all proceedings other than the trial itself would lack merit even if the trial were delayed temporarily.   There is much that should and can be done before this case is finally adjudicated and, in a few particulars, before trial commences.  There is no reason why those tasks should not proceed in any event.  To stay all proceedings – not just delay the start of the trial – pending the outcome of the mandamus petition would add needlessly to any delay that would be caused if the trial alone were deferred

Finally, this motion seeks to delay or avoid a trial of the fundamental dispute between the parties – whether the Judgment was procured by fraud.  The reason for it is evident from defendants' memorandum.  Defendants now admit fear that "any rulings adverse to Defendants" would "prejudice[]" them in proceedings to enforce the Judgment elsewhere.[1]

Defendants have brought Judgment enforcement proceedings in Argentina, Brazil and Canada, as they have been free to do since the *Naranjo* decision in January 2012.[2]  *Naranjo* made clear also, however, that Chevron is equally free to pursue this action.[3]  The risk of a result in one of two or more parallel litigations that may have adverse implications for another is inherent in such situations.[4]  Indeed, all of the nations concerned – the United States included – have interests in their own courts adjudicating the cases before them in the ordinary course absent strong reasons for a different result.

This case now is ready for its long scheduled trial.  The outcome of the mandamus petition either will not affect the trial at all or merely will eliminate the collateral estoppel defense that defendants wish to withdraw.  The possibility of an adverse result on Chevron's affirmative fraud claims that defendants fear might impair their lawsuits in other countries is not a reason to stop the trial, even briefly.

---

[1] Def. Mem. [DI 1370] at 4.

[2] *See Chevron Corp. v. Naranjo*, 667 F.3d 232 (2d Cir. 2012)*, cert. denied*, 132 S.Ct. 423 (2012).

[3] 667 F.3d at 239 n.11.

[4] *See, e.g., Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (Cardozo, J.) ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.")

*Facts*

*The Original Schedule*

A discussion of the relevant procedural history is useful to understand this motion and the context in which it is made.

The parties had nineteen months in which to conduct discovery in this case.[5]  On October 25, 2012, the Court set trial to commence on October 15, 2013.[6]  The joint pretrial order, requests to charge, and any motions for summary judgement were to have been filed no later than June 23, 2013, later extended, as will appear, at defendants' request.[7]  In addition, the Court initially required submission by June 30, 2013 of  requested jury instructions together with either an agreed proposed form of special verdict or, to the extent there was disagreement, a joint report summarizing their differences.[8]

*The Filing of the Mandamus Petition*

---

[5]

They were free to conduct discovery without limitation from its inception until the *Naranjo* case was severed from it, at which point discovery other than with respect to matters relevant to Count Nine, the declaratory judgment claim dismissed in 2012, was stayed.  (DI 279)  The claim of fraudulent procurement of the Judgment, however, was relevant to Count Nine.  The parties therefore were free to conduct discovery on that claim from February 2011 until the Court of Appeals stayed the *Naranjo* action in September 2011 and then were permitted to resume discovery in this action without limitation no later than June 25, 2012.  Discovery then continued until May 31, 2013 plus an additional month to complete certain depositions.  DI 494, ¶ 1; DI 1185.

[6]

DI 606.

[7]

DI 494 (June 25, 2012 Scheduling Order).

[8]

DI 725.

Defendants filed the mandamus petition in the Court of Appeals on March 5, 2013. They sought no stay of this action from this Court or the Court of Appeals. The proceedings in the District Court continued in this case as scheduled. As even the most cursory review of the docket sheet reveals, they have been extensive.

*The Withdrawal of Some of Defendants' Lawyers and*
*Their Representations that the Schedule Would Not be Affected*

On May 3, 2013, former counsel for the Donziger Defendants and some of the counsel for the LAP Representatives sought leave to withdraw as counsel on the ground of non-payment of fees.[9] They stated, however, that Mr. Donziger was prepared to represent himself and his law firm and that Mr. Gomez, who had been counsel of record for the LAP Representatives since virtually the commencement of the action, would continue to represent them. In addition, they represented that their withdrawal would not delay the case and that the parties were ready to proceed on the existing schedule.[10] Neither the withdrawing counsel nor any of the parties so much as hinted that the case should be stayed by reason of the withdrawal of counsel – let alone stayed pending disposition of the mandamus petition. The Court, relying on counsels' representations that the withdrawals would not cause delay, granted the motions to withdraw.[11]

*Defendants Seek and Receive Numerous Extensions*
*But Never Suggest a Delay Due to the Mandamus Petition*

---

[9] DI 1104, 1105.

[10] DI 1101, at 9, 10; DI 1102, at 7.

[11] DI 1164.

6

Immediately after those motions to withdraw were granted, Messrs. Gomez and Donziger began requesting that the special masters delay depositions and discovery deadlines. But they sought no any delay of the trial.[12] Mr. Donziger then moved this Court for – in his words – a "two week delay of all depositions, 'meet and confer' discussions, and other deadlines *(while maintaining the current trial schedule*) to allow for an orderly transition period."[13] Both Messrs. Donziger and Gomez confirmed that they were committed to the trial schedule.[14]

Three days later, Mr. Donziger reversed course. He contended that his request for a two week stay of depositions (made just three days before) had been insufficient and asked that the Court stay all proceedings for at least three months.[15] Mr. Gomez requested that the Court extend the June 25, 2013 deadline for submission of any summary judgment motions, jury instructions, and the joint pretrial order.[16] Messrs. Donziger and Gomez predicated their requests on their alleged need to catch up, prepare adequately for the upcoming depositions, and, in Mr.

---

[12]
Mr. Gomez – on behalf of the LAP Representatives and Donziger Defendants – "propose[d] that Chevron agree to a modification and a reasonable extension of the deposition schedule into the month of June in order to permit the [remaining depositions] to be conducted in a reasonable manner in accordance with everyone's schedule." Special Masters Interim Report No. 2 [DI 1183], at 2. Two days later, Mr. "Donziger request[ed] that the special masters order] a two week hiatus from all depositions and any meet and confers, to provide him adequate time to prepare for the remaining depositions, in effect, a two-week stay of the case." *Id.* at 3.

[13]
DI 1168 (emphasis added).

[14]
*See* DI 1183; DI 1168.

[15]
Tr., May 23, 2013 [DI 1214], at 3:25-4:4. Mr. Donziger's first request for a three month stay was made informally at a conference on May 23, 2013. On June 5, 2013, he requested the stay by motion. DI 1121.

[16]
*Id.* at 19:25-20:11.

7

Donziger's case, secure substitute counsel.  They did not mention the mandamus petition – which had been filed two months earlier – or request that the trial be stayed pending its disposition.

    The Court granted Mr. Gomez's request for an extension of the deadline for the pretrial submissions until July 30, 2013 – an extension of about five weeks – and indicated that it might "make further adjustment[s]" to that schedule[17] (as it has done).  And the Court in substantial part granted Mr. Donziger's request for a two week deposition hiatus, extending the date by which the remaining depositions were to be completed to June 28, 2013.[18]  It ultimately denied Mr. Donziger's request for a three month stay of deadlines, however, holding, *inter alia*, that (1) Mr. Donziger had failed to provide any competent evidence or sworn affidavits demonstrating his need for such a stay, and (2) he was bound by the representations he and his former counsel made, which had assured the Court that Mr. Donziger was prepared to proceed with the existing schedule.[19]

    On July 12, 2013, the LAP Representatives requested by letter that "due to the extraordinary size of discovery and pleadings in this case, not to mention defendants' [alleged] lack of personnel and resources . . . all pretrial submissions," be adjourned until September 30, 2013.[20]  The Court extended the deadline for submission of the proposed jury instructions to September 1,

---

[17]
    *Id.* at 21:4-9.

[18]
    DI 1185.  The Court made clear that it was willing to consider any further requests for extensions from Mr. Donziger, but only on the basis of "affidavits and other competent evidence addressing all of the pertinent issues," including his purported inability to fund his defense and secure substitute counsel. DI 1185, at 1. Moreover, the special masters substantially modified the previously agreed to deposition schedule to accommodate Mr. Donziger's schedule and permit him "rest days" in which to prepare.  DI 1183.

[19]
    DI 1302.

[20]
    DI 1307, at 2.

8

2013.[21]

A week later, at a scheduling conference, Mr. Donziger and Mr. Gomez contended that they would be unable to meet the July 30, 2013 deadline for submission of motions for summary judgment, the joint pretrial order, and the proposed verdict forms.[22] The Court extended the deadline for submission of any motions for summary judgment until August 16, 2013,[23] for the proposed verdict forms as well as the joint pretrial order until August 30, 2013, and for the proposed jury instructions until September 23, 2013.[24]

*Defendants' August 16 Motion for Further*
*Extensions for Pretrial Submissions – Largely*
*Granted – Did Not Suggest a Delay of the Trial, Let Alone*
*Any Delay Pending the Outcome of the Mandamus Petition*

On August 16, 2013 – the day motions for summary judgment were due – defendants moved by order to show cause for "adjournment of all dates in this action for thirty days," including those set in an order by Magistrate Judge Francis, in which he granted in part and denied in part Chevron's motion to compel production of certain documents from defendants.[25] But the motion did not seek adjournment of the trial date. It was premised instead on the assertion that it was impossible for them to comply *both* with Judge Francis' order *and* to fulfill the "numerous pretrial

---

[21]

*Id.*

[22]

*See* Tr., July 18, 2013 [DI 598] .

[23]

In any event, defendants filed no summary judgment motions.

[24]

DI 1310.

[25]

DI 1344.

obligations" required for the October 15 trial date.[26]

Chevron later that day moved for partial summary judgment on certain of its claims and certain of defendants' affirmative defenses.[27]  The Court denied most of the motion on August 22, 2013 without requiring a response from defendants,[28] thus sparing defendants the need to respond to a heavily fact intensive motion while also preparing for trial.  The only remaining part of the motion is limited to the sufficiency of and basis for some of defendants' affirmative defenses.

On August 23, 2013, the Court scheduled a conference for September 3 in order to take up defendants' motion for a 30 day extension.[29]

*Defendants Move for Stay of All Proceedings Pending Disposition of the Mandamus.*

On August 27, 2013 – while defendants' motion for a 30 day adjournment of pretrial deadlines was pending – defendants made this motion for a continuance of the trial and a stay of all other proceedings, in each case pending the Second Circuit's disposition of the mandamus petition. This was the first time in the more than five months since they filed the petition – despite the ten

---

[26]

Id. at 2.   The "pretrial obligations" to which they referred included  the required filing of the joint pretrial order, their need to respond to what was then only an anticipated motion for summary judgment by Chevron, and a few other possible pretrial submissions.

Although defendants had not so requested, the Court stayed the deadline set by the magistrate's order in order to permit it to consider that deadline in the context of the trial schedule.  DI 1350.

[27]

DI 1348.

[28]

DI 1362, *Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), 2013 WL 4482691 (S.D.N.Y. Aug. 22, 2013).

[29]

DI 1365.

requests they made to this Court or the special masters for stays or adjournment of various deadlines and scheduled dates – that they advanced the mandamus petition as a basis for delay or suggested that the outcome of the mandamus petition might affect the scope of the trial in any meaningful way. Moreover, they filed this motion without awaiting the imminent decision on their August 16 motion to extend all deadlines in the case for pretrial submissions and supplementing their privilege logs as permitted by Judge Francis's August 9 order.

*The Decision on the August 16 Motion to Extend Deadlines*

On September 4, 2013, the Court granted substantially all of the relief defendants sought, in some instances more than they sought, with respect to the dates on which various pretrial submissions were required.[30]   Moreover, defendants now have complied with many of the requirements as to which they sought thirty day extensions.[31]

*Discussion*

Defendants contend that a delay of the trial and a stay of other proceedings now are necessary because "the outcome [of the petition] holds the potential to alter substantially the nature of the looming pre-trial submissions, not to mention trial itself" and because any effort and resources they expend preparing for trial therefore may be wasted.[32]   Defendants' contentions, as discussed

---

[30]   DI 1384.

[31]   They have filed witness and exhibit lists and moved for leave to present testimony from a foreign witness who previously declined to appear for a deposition abroad.

[32]   DI 1370, at 3.

below, are without merit.  Moreover, they are belied by defendants' failure to request a stay on this basis in the five plus months after they filed their mandamus petition.

## I.    *The Legal Standard*

"The decision to grant or deny a continuance [i.e., a postponement or stay of a trial] is within the discretion of the trial judge."[33]   So too is the decision whether to stay other proceedings.[34]

That discretion is very broad.  "The person seeking a stay 'bears the burden of establishing its need.' [citation omitted]  '[A]bsent a showing of undue prejudice upon defendant or interference with his constitutional rights, there is no reason why plaintiff should be delayed in its efforts to diligently proceed to sustain its claim.'"[35]   The burden is so demanding that the Second Circuit wrote only last year, in refusing to upset a district court's denial of a stay, that "the defendants ha[d] pointed to only one case in which a district court's decision to deny a stay was

---

[33]
    *Michaelson v. Moore-McCormack Lines, Inc.*, 429 F.2d 394, 395 (2d Cir. 1970).  *Accord, e.g., Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 673 F.3d 83, 96 (2d Cir. 2012);  *Farias v. Instructional Systems, Inc.,* 251 F.3d 91, 99-100 (2d Cir. 2001); *Chemical Bank v. Dana,* 4 Fed. Appx. 1, 6 (2d Cir. 2001); *El-Tawaslimy v. United States*, 125 F.3d 843 (table), 1997 WL 615958 (2d Cir. 1997); *United States v. Beverly*, 5 F.3d 633, 641 (2d Cir 1993); *Davis v. United Fruit Co.,* 402 F.2d 328, 330 (2d Cir. 1968); *United States v. Ellenbogen*, 365 F.2d 982 (2d Cir. 1966), *cert. denied,* 386 U.S. 923 (1967).

[34]
    *E.g., Louis Vuitton Malletier S.A.*, 676 F.3d at 96 (""[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.") (quoting *Landis,* 299 U.S. at 254 (internal quotation marks omitted);  *Clinton v. Jones,* 520 U.S. 681, 706–08 (1997).

[35]
    *Louis Vuitton Malletier S.A.*, 673 F.3d at 96 (quoting *Clinton,* 520 U.S. at 708, and *Hicks v. City of N.Y.*, 268 F. Supp.2d 238, 241 (E.D.N.Y.2003), respectively) (internal quotation marks omitted).

reversed on appeal, and that case was decided more than thirty years ago."[36]

Defendants have not sustained that burden.   Their requests will be denied.


II.     *No Delay of the Trial Is Warranted Because the Outcome of the Petition Cannot Be Case Dispositive or Significantly Alter the Scope or Duration of the Trial*

Defendants seek a writ of mandamus "ordering the district court to (1) vacate its July 31, 2012, November 27, 2012, and February 20, 2013 Orders, . . . (2) vacate its January 7, 2013, Order,"  . . . and (3) refrain, *in any context,* from considering whether the Judgment is entitled to recognition."[37]   They claim that the first three of those orders "allow Chevron to seek the same declaration of non-recognition of the Judgment" that the Second Circuit directed in *Naranjo* be dismissed (and that this Court dutifully dismissed).[38] They object to the fourth, which merely denied a motion to certify for interlocutory review under 28 U.S.C. § 1292(b) of an order largely denying defendants' motion to dismiss the complaint, because they wrongly assert that it read into the complaint an unpled claim to "set aside" the Judgment.[39]

For the reasons set forth in the orders and opinions that the mandamus petition seeks

---

[36]

*Louis Vuitton Malletier S.A.*, 673 F.3d at 100.

[37]

Petition, *In re Naranjo*, No. 13-772 (2d Cir. filed Mar. 5, 2013, at 4-5 (emphasis in original).

[38]

*Id.* at 5.

[39]

In other words, they seek mandamus review of an alleged reason for denying certification, not of the denial of certification itself, which is unreviewable even on mandamus.  *See D'Ippolito v. v. Cities Serv. Co.*, 374 F.2d 643, 648 (2d Cir. 1967) ("we cannot conceive that we would ever mandamus a district judge to certify an appeal under 28 U.S.C. § 1292(b) in plain violation of the Congressional purpose that such appeals should be heard only when both the courts concerned so desire").

to have vacated, as well as in Chevron's opposition to the petition before the Second Circuit, these contentions lack merit, and defendants are unlikely to prevail in the Court of Appeals. Even if they were to prevail, however, the relief they seek would not be dispositive of this case or significantly alter the scope or duration of the trial. In order to understand why that is so, it is useful to appreciate the very limited part the case that could be affected by the outcome of the mandamus petition.

Chevron's complaint alleges fraud and RICO claims. The RICO and, to some extent, the fraud claims rest on allegations that Steven Donziger, a New York lawyer, and others based in the United States, here conceived, substantially executed, largely funded, and significantly directed a scheme to extort[40] and defraud Chevron by, among other things, (1) bringing the Lago Agrio case;[41] (2) fabricating (principally in the United States) evidence for use in that lawsuit and corrupting and intimidating the Ecuadorian judiciary in order to obtain a tainted judgment;[42] (3) exerting pressure on Chevron to coerce it to pay money not only by means of the Lago Agrio litigation and judgment, but also by subjecting Chevron to public attacks in the United States and elsewhere based on false and misleading statements;[43] (4) similarly inducing U.S. public officials to investigate Chevron;[44] and (5) making false statements to U.S. courts and intimidating and

---

[40]
  *E.g.*, Amended Complaint ("Cpt.") ¶¶ 1-2.

[41]
  *Id.* ¶ 3.

[42]
  *E.g.*, *id.* ¶¶ 145, 151, 353-56;  Mastro Decl. [DI 746] Ex. C (hereinafter "Guerra Decl.").

[43]
  Cpt. ¶ 214.

[44]
  *Id.* ("And they have taken this pressure campaign to U.S. state and federal agencies, seeking their falsely induced assistance in this racketeering scheme."); *id.* ¶ 216.

tampering with witnesses in U.S. court proceedings to cover up their improper activities.[45]

The complaint seeks damages and equitable relief.      It does not seek a declaration that the Judgment is not entitled to recognition or enforcement in New York or anywhere else.[46]  It does not seek to have this Court "set aside" the Judgment.

To be sure, the question of the recognizability and enforceability of the Ecuadorian judgment has arisen in this case.  But that is so only because defendants injected it by asserting their *res judicata*-collateral estoppel affirmative defense.  For reasons explained elsewhere, this Court held that (1) defendants intended that defense to include a claim of preclusion based, at least in part, on the Judgment and (2) their answer sufficiently did so.[47]  Moreover, defendants *conceded* that an essential element of *their* preclusion defense is that the Judgment be entitled to recognition and enforcement under state law.[48]  Thus, the issue of recognizability and enforceability of the Judgment is in this case *only* because (1) defendants asserted it defensively, and (2) *Naranjo* specifically recognized that the recognizability-enforceability issue is properly litigated where a foreign judgment is raised as an affirmative defense.[49]  Whether the Judgment is or is not recognizable or

---

[45]

    *Id.* ¶¶ 273-77, 291-300, 311-16.

[46]

    Of course, Count 9 of the complaint sought that relief.  But Count 9 was severed from what now is before this Court and ultimately was dismissed pursuant to *Naranjo.*

[47]

    *Chevron Corp. v. Donziger*, 886 F. Supp.2d 235, 264-77 (S.D.N.Y. 2012).

[48]

    Defs.' Opp. to Chevron Corp.'s Mot. for Summary Judgment or Partial Summary Judgment on Defs.' Affirmative Defenses of Res Judicata and Collateral Estoppel [DI 450], at 1 ("New York law would require Defendants to show that the Judgment is entitled to recognition under the New York Recognition Act in order to invoke res judicata or collateral estoppel").

[49]

    667 F.3d at 241  ("[c]hallenges to the validity of foreign judgments under the Recognition Act can occur 'in a pending action by . . . affirmative defense'" asserted by a judgment creditor) (quoting N.Y. CPLR § 5303)).

enforceable under the relevant statute simply is not a part of Chevron's case.

In these circumstances, the scope and duration of the forthcoming trial would not be affected substantially even if the orders of which defendants claim were vacated entirely. The effect of such an outcome would be that the collateral estoppel defense would be out of the case.[50]  But Chevron's claims for damages and other relief based on the alleged extortionate and fraudulent scheme would remain.[51]

The fact that Chevron's claims might result in a determination of fraud in the procurement of the Judgment does not alter this conclusion.  Such a finding would not be equivalent to a determination that the Judgment is not recognizable or enforceable.  Defendants no doubt would dispute any contention that such a finding would have preclusive effect in an enforcement action. And even if such a finding were made and were preclusive of the issue, fraud in the procurement of a judgment is merely a discretionary – not a mandatory – ground for non-recognition of a foreign country money judgment under the Uniform Foreign Country Money-Judgments Recognition Act.[52] Moreover, *Naranjo* – the mandate in which is the ostensible basis for defendants' petition to the Circuit – "expressly limited [its] opinion[] to the declaratory judgment action[]" and disclaimed any effect on "the continuation of separate proceedings between these parties on other causes of action

---

[50]

    It would be effectively out of the case as well if defendants simply elected not to press it at trial, which of course is their option.

[51]

    This of course demonstrates also the baseless nature of defendants' claim that further efforts to prepare for trial could be wasted if they were to prevail on the mandamus petition.  They are going to have to try substantially the same case regardless of the outcome in the Court of Appeals.

[52]

    *E.g.,* N.Y. CPLR §§ 5304(a), 5304(b), subd. 3.

before the same district court judge."[53]

## II.    *No Stay of Other Proceedings Would Be Warranted Even if the Trial Were Delayed*

As any stay must be "tailor[ed] . . . so as not to prejudice the non-moving litigant unduly,"[54] there would be no sound reason to stay other proceedings in this case even if the start of the trial were delayed pending the outcome of the mandamus petition.

*First*, while defendants have fully completed their discovery, a number of matters remain with respect to Chevron's efforts to obtain discovery from defendants and their allies.[55] Although Chevron has voiced no objection to proceeding to trial as scheduled on October 15, and thus to the possibility that it will try the case without these materials, there is no reason that its efforts to obtain the materials should be halted during any period in which the start of the trial is postponed.

---

[53]

    *Naranjo,* 667 F.3d at 239 n.11.

[54]

    *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991).

[55]

    One is resolution of claims that Mr. Donziger has not fully complied with orders to produce documents. This is the subject of a recent motion to compel (DI 1374) as well as Magistrate Francis's August 9, 2013 holding that defendants' privilege logs in some respects were deficient and permitting their supplementation, absent which the documents must be ordered produced (DI 1333).

    Another concerns Chevron's challenges to claims by defendants of attorney-client privilege and work product with respect to production of documents in the possession of Patton Boggs that fall within the crime-fraud exception to the privilege and to work product protection. *See Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK), 2013 WL 1087236 (S.D.N.Y. Mar. 15, 2013) (holding there is probable cause to believe that crimes or frauds were committed in respect of certain enumerated subjects, that any privilege or work product otherwise protecting Patton Boggs documents relating to those subjects that were in furtherance of those alleged crimes or frauds has been vitiated, and deferring pending further proceedings the determination whether particular documents were in furtherance); DI 1312 (pending Chevron motion to expand subjects as to which probable cause exists).

*Second*, a number of routine pretrial matters remain to be concluded.[56]  None of these could be affected materially by the outcome of the mandamus petition.  Any delay in the start of the trial could and should be used to deal with these open items so that the case can proceed promptly when any such postponement ends.

*Third*, Chevron only recently moved for partial summary judgment.  To the extent not already denied, that motion seeks dismissal of a number of affirmative defenses that are entirely unrelated to the pending mandamus petition.  Defendants' time to respond has just been extended.  There is no reasonable basis to delay resolution of that motion either.

The foregoing illustrate[57] the fact that the blanket stay of all proceedings that defendants seek would be unwarranted, even assuming there were merit to putting off the start of the trial, and would prejudice Chevron by creating entirely unnecessary delay on top of any delay awaiting the outcome of the mandamus petition.

No stay of anything is warranted here.  Even if a delay of the trial were warranted, however, a stay of proceedings other than the trial would serve only to delay for no good reason.

IV.    *Defendants Have Had Ample Time to Prepare*

Defendants have had ample time in which to prepare for trial.

*First*, depositions were completed two months ago.  Document production was

---

56

These include the completion of the joint pretrial order (which requires from defendants only their deposition designations), defendants' responses to Chevron's motions *in limine* and other pretrial motions, and a handful of other items  enumerated in the Court's order of September 4.  That order largely granted defendants' motion for additional time to deal with these matters within the context of the existing trial date.

57

There are other pending matters that likewise should proceed.

completed months before some of defendants' lawyers withdrew, subject to resolution of a few issues relating to Chevron's efforts to obtain discovery that it claims should have been provided long ago, but that it apparently is prepared to abandon if the trial goes forward.  Defendants now have served their lists of trial witnesses and trial exhibits.

*Second*, the Court repeatedly has granted defendants' requests for adjournments of deadlines[58] – sometimes even allowing them more time than they requested.  Indeed, on September 4, the Court in large part granted defendants' motion to adjourn for thirty days the few remaining deadlines for pretrial submissions, in some cases for periods longer than defendants' requested.[59] The Court afforded defendants this time – although they did not provide much if any real justification for it – in the interest of giving them the benefit of any conceivable doubt and permitting this case to proceed to trial as scheduled.

*Third*, notwithstanding their attempts to portray themselves as Davids, each alone facing Goliath, the reality is quite different.

The Court already has addressed the unsubstantiated and dubious claim that the defendants are constrained by limited resources in a previous opinion to which the readers attention is invited.[60]  To this should be added only two points:

From the outset , the LAP Representatives have been assisted substantially by Patton Boggs, a firm of hundreds of lawyers with professional standing comparable to that of Chevron's

---

[58]       *See infra* pp. 6-10.

[59]       DI 1384.

[60]       DI 1302, at 5-7.  (A copy of that decision is annexed.)

counsel and a huge contingent fee that hinges on the collection of the Judgment.[61]   In some

instances, including this case, it has kept its involvement secret.[62]   It has written papers submitted

to this Court under the names of other lawyers.[63]   It openly has represented and continues to

represent the LAPs in numerous appellate and other proceedings in this and other cases, including

both *Naranjo* and the mandamus petition here.   There is no evidence warranting a conclusion it will

not assist Mr. Gomez, the LAP Representatives' counsel of record, through the trial here in view of

Patton Boggs' responsibilities to its Ecuadorian clients and its own economic interest in avoiding

a result here that Mr. Gomez says would "prejudice[]" proceedings to enforce the Judgment

elsewhere.[64]

   Nor is Mr. Donziger the only lawyer involved in his defense.   He benefits from the

efforts of Mr. Gomez and Patton Boggs, as the interests of Mr. Donziger and the LAPs are closely

---

[61]

   *See generally Chevron Corp. v. Donziger*, 2013 WL 1082736.

[62]

   For example, a lawyer from Stratus once wrote in an email that ("In the law few weeks, the Plaintiffs' team (Steven [Donziger], but moreso Eric Westenberger [of Patton Boggs, who hasn't yet entered an appearance and has instructed us not to divulge his firm's involvement] . . . ) have grown more desperate to a point where, in their disarray, they are challenging everyone around them to take positions which are implausible at best, and very possibly spurious."   Special Master's Order No. 6 [DI 1093], at 6-7 (quoting email from lawyer for Stratus) (brackets in original).

[63]

   Tr., Feb. 8, 2011 [DI 232], at 21:10-21 (Sheldon Elsen, Esq., who is not affiliated with Patton Boggs and who appeared for the LAP Representatives, admitted that Patton Boggs wrote the brief filed over his signature).   Moreover, Mr. Gomez admitted only recently that Patton Boggs has been assisting him in his nominally solo representation of the LAP Representatives.   *See* Tr., May 23, 2013 [DI 1214], at 20:12-21.

[64]

   Mr. Gomez last month asserted that Patton Boggs had not "committed to assist [him] . . . on the summary judgment burden . . . and the pretrial order."   Tr., July 18, 2013 [DI 598], at 6:16-20.   No affidavit or declaration has been submitted to the effect that Patton Boggs will not continue to assist in the defense of this case.

20

aligned.  In addition to what has been said already, he openly has received additional assistance in the person of at least two more lawyers – Aaron Marr Page, whom Mr. Donziger described in June as having "deep factual knowledge of the case,"[65] and attorney Stuart Gross.[66]  Moreover, Mr. Donziger is a litigant in at least four other cases – one as a defendant in New York state court, another as a defendant in the Eastern District of Louisiana, and two as plaintiff in Florida.[67]  He is represented by counsel in all of them including, in Louisiana, the prominent Phelps Dunbar firm.[68]  In the absence of evidence to the contrary, there is no reason to assume that Mr. Donziger's decision to proceed here, nominally represented only by himself and Messrs. Page and Gross, reflects an inability to do otherwise.  Further, Mr. Donziger repeatedly has spurned invitations to provide evidence to support his claims of financial inability and other alleged difficulties in obtaining other or additional counsel.

V.    *This Motion Is A Last Minute Ploy that Comes Too Late*

As noted, the mandamus petition was filed on March 5, 2013.  To whatever extent that petition held the potential substantially to affect the scope of this case, that was as true on March 5 as it is today.

Despite this inescapable fact, during the nearly six months between March 5 and the

---

[65]    DI 1206, Ex. 1, at 4 of 5.

[66]    *See* Weitzman Decl [DI 1367] ¶¶ 5, 8, 9 & Exs. 3, 6, 7.

[67]    *See id.* Exs. 9, 10, 11.

[68]    *Id.*

late August filing of this motion, the parties began and completed depositions, including depositions in New York, California, Texas, and Peru; litigated extensive discovery and other motions; and otherwise contested this case most vigorously. Indeed, as seen, the defendants repeatedly sought extensions of time, interim stays of discovery, and the like. Yet defendants never once during that period suggested that the trial (or anything else) should be delayed until the Court of Appeals ruled, much less that such a delay was warranted because the outcome of the petition could affect the scope of the case in any substantial way.

If there were any real substance to that assertion, defendants would have made the argument long ago. Having proceeded as they have for so many months, and thus imposed such substantial burdens and costs on their adversary and the Court in the efforts of both to proceed in good faith on the long-standing schedule, defendants have no equitable claim to a last minute delay based on that newly articulated theory, a theory which – if accurate – would have counseled delaying far more than the start of the trial.

It bears mention also that any delay in the start of the trial would threaten severe disruption of this Court's trial calendar that could have been avoided had this belated argument, assuming it had any merit to begin with, been made promptly after the filing of the petition. Defendants, who are well aware of the difficulties a delay at this late date could cause, should not be permitted to benefit, intentionally or otherwise, from this circumstance.[69]

---

[69]    The trials of *United States v. Abu Ghayth*, S13 98 Crim. 1023 (LAK), and *United States v. al Fawwaz and Abdel Bary*, S7 98 Crim. 1023 (LAK), both alleged terrorism cases expected to be of substantial duration, are scheduled to begin on January 7 and April 7, 2014 respectively. Defendants are specifically aware of the *al Fawwaz* case, as it was brought to their attention when this case was set for trial. Tr., Oct. 18, 2012 [DI 598], at 15-16; Minute entry, Oct. 18, 2012. The scheduling of the *Abu Ghayth* case has received a good deal of media attention. *E.g.*, Benjamin Weiser, *Citing Cuts, Lawyers Seek Relief in Terrorism Case*, N.Y. TIMES, at A24 (Apr. 9, 2013); Editorial, *Sequestering Justice,* N.Y.

*Conclusion*

For the foregoing reasons, defendants' motion to for a continuance of the trial and a stay of all other proceedings pending the disposition by the Second Circuit of their petition for a writ of mandamus [DI 1369] is denied.

SO ORDERED.

Dated:        September 9, 2013

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

TIMES, at A26 (Apr. 11, 2013).

# ANNEX

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHEVRON CORPORATION,

                        Plaintiff,

         -against-

                                                     11 Civ. 0691 (LAK)

STEVEN DONZIGER, et al.,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/4/13

**MEMORANDUM AND ORDER**

L<small>EWIS</small> A. K<small>APLAN</small>, *District Judge*.

         An Ecuadorian court in Lago Agrio, Ecuador, in 2011 entered an $18.2 billion judgment (the "Judgment") against Chevron Corporation ("Chevron") in an action brought by 47 individuals referred to as the Lago Agrio Plaintiffs (the "LAPs"), and others. Chevron brought this action on February 1, 2011 against the LAPs, their lead U.S. attorney, Steven Donziger and his law offices (the "Donziger Defendants"[1]), and others involved in the Lago Agrio Litigation. It claims among other things that the Judgment was obtained by fraud and that it is a central part in a pattern of violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") that has included extortion, fraud, money laundering, and obstruction of justice, among other offenses. Two of the LAPs (the "LAP Representatives") have answered and are defending; the other LAPs and Ecuadorian defendants have defaulted.

         The matter now is before the Court on the Donziger Defendant's motion for a three

---

[1]     The Donziger Defendants are Steven Donziger and his law firm, variously referred to as the Law Offices of Steven Donziger and Donziger & Associates, PLLC.

2

month stay of proceedings or for alternative relief. Mr. Donziger – who, since the withdrawal on May 17 of his former counsel of record, the Keker firm, is representing himself and his personal law firms, allegedly alone – contends that he needs such relief in order to find new counsel or to prepare to try the case himself.

*Discussion*

*Three Month Stay*

In ordinary circumstances, some delay to permit a litigant whose counsel suddenly had withdrawn to secure new counsel usually would be granted. But the withdrawal of the Keker firm was not sudden, and there is nothing ordinary about these circumstances. Several points need to be considered in that regard.

*The Alleged Need for a Stay to Find Other Counsel*

*The Representations By Withdrawing Counsel and Mr. Donziger's Initial Position*

First, the Keker firm and counsel for their co-defendants, Smyser, Kaplan & Veselka ("SKV"), obtained leave to withdraw on express representations that their withdrawal would not materially affect the schedule in this case.[2] The Donziger Defendants, of course, are bound by the

---

[2]

Keker swore that "Donziger is prepared to represent himself and his law firms in this matter" and that "[w]ithdrawing at this stage of the litigation would not unduly disrupt the existing schedule." DI 1101, at 10, 9.

SKV represented that (1) the LAP Representatives "will continue to be represented in the case by Mr. Julio Gomez, who was their attorney before they hired SKV and who has continued to represent them during SKV's and Mr. Smyser's tenure as attorney-in-charge," (2) "[t]he case is set on the trial docket . . . more than five months after the date of this motion" and is not "on the verge of being tried," and (3) "[t]he withdrawal . . . will not prejudice any of the parties . . . nor will it adversely affect the scheduling order." DI 1102,

3

Keker firm's representations in any case.[3]  But it is noteworthy that neither the Donziger Defendants

nor the LAP Representatives opposed the withdrawals nor disputed their attorneys' representations

that they were prepared to go forward on the existing schedule – with Mr. Donziger acting as

counsel for himself and his law firms and Mr. Gomez acting for the LAP Representatives.   In

reliance on these representations, the Court granted leave to withdraw on May 17, 2013.[4]

   Following the withdrawal of the Keker firm, Mr. Donziger adhered for several days

to the position the Keker firm had taken.  Indeed, this request for a three-month stay is a radical shift

in position by Mr. Donziger.

   On May 17, 2013, immediately following the Keker firm's withdrawal, Mr. Gomez

– on behalf of the Donziger Defendants and the LAP Representatives – "propose[d] that Chevron

agree to a modification and a reasonable extension of the deposition schedule *into the month of June*

in order to permit the [remaining depositions] to be conducted in a reasonable manner in accordance

with everyone's schedule."[5]  There was no mention of any three month stay. Two days later, Mr.

"Donziger request[ed] [that the special masters order] a two-week hiatus from all depositions and

any meet and confers, to provide him adequate time to prepare for the remaining depositions; in

---

at 7.

3

 *See, e.g., Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 396-97
(1993) (party could not avoid "the consequences of the acts or omissions of [its] freely
selected agent" as "[a]ny other notion would be wholly inconsistent with our system of
representatives litigation, in which each party is deemed bound by the acts of his lawyer-
agent and is considered to have notice of all facts, notice of which can be charged to the
attorney") (internal quotation omitted)..

4

 DI 1164.

5

 DI 1183, at 2 (emphasis supplied).

4

effect, a two-week stay of this case."[6]  And he followed that up with a motion, on May 20, 2013, for "[a] two week delay of all depositions, 'meet and confer' discussions, and other deadlines (*while maintaining the current trial schedule*), to allow for an orderly transition period."[7]  There was no mention of any substantial stay.  Moreover, while the special masters directed that depositions previously scheduled for May 21-24 go forward, the Donziger Defendants ultimately obtained a four week extension of the period for completion of the remaining depositions, and gaps were built into the schedule.  In other words, Mr. Donziger got substantially what he asked for.

There is no evidence of any change of circumstances since Mr. Donziger made clear, after the withdrawal of the Keker firm, that what he wanted was merely a two-week hiatus in the deposition schedule – which in substantial measure he received.

### *Donziger Already Has Had Months in Which to Find Other Counsel*

The Keker firm was permitted to withdraw because, it said, it was no longer being paid.  And the Court was persuaded that the non-payment was a deliberate breach of the clients' obligation to pay.  Nor was there anything sudden about the non-payment.  Keker's bills had not been paid currently at least since September 2012.[8]  The Keker firm began complaining publicly at least as early as March that the Donziger Defendants could not afford to participate in all of the

---

[6]  *Id.* at 3.

[7]  DI 1168 (emphasis added).

[8]  Keker Decl. [DI 1111] ¶ 9.

5

depositions in this case.[9]  And there were discussions between Mr. Donziger and the Keker firm for
some time before the firm's withdrawal motion actually was made on May 3, 2013 about the
possibility of the firm seeking to withdraw unless the bills were paid.[10]

Given those discussions and statements, as well as the arrearages that had been
mounting for eight months before the Keker firm actually moved to withdraw, Mr. Donziger knew
that the Keker firm's withdrawal was possible and, no doubt, increasingly likely. He had ample time
in which to find substitute counsel before the Keker firm sought to withdraw and has had six weeks
in which to do so since it filed the motion.

*Financial Resources*

To whatever extent Mr. Donziger is understood as suggesting a lack of resources with
which to re-retain the Keker firm[11] or to find substitute counsel, the facts warrant careful scrutiny.

As an initial matter, Mr. Donziger – despite repeated invitations to do so[12] – has

---

[9]   Tr., Mar. 5, 2013, at 4:13-16.

[10]  Keker Decl. [DI 1101] ¶ 9 ("Since September 2012, Keker & Van Nest has had an outstanding receivable from Donziger . . . . [T]his is despite the fact that Keker & Van Nest has made numerous attempts to obtain payments from Donziger, and has made clear to Donziger that his failure to make the requested payment could result in the firm making a motion to withdraw as attorney to him in this case.").

[11]  The Keker firm has held open the possibility that it will seek to return to try this case if new financial arrangements are made.  Keker Decl. (DI 1101) ¶ 14 (Donziger " will represent himself and his law firms during the remainder of the pretrial stage of this case, with the hopes of either securing new outside counsel *or re-engaging our firm to participate in the October trial*.") (emphasis added).

[12]  *E.g.*, Tr., May 23, 2013, at 13:25-14:6; DI 1185, at 3 ("The Court . . . is willing to consider [Mr. Donziger's] concerns in the event a well supported motion is filed.").

6

offered no competent evidence of his financial situation. It is unclear whether he has money to pay counsel but chooses not to spend it, or whether he in fact does not have any. Moreover, this uncertainty leads to another.

Under the terms of their agreement, the LAPs are obliged to pay for Mr. Donziger's defense in this action.[13] They did so – presumably from funds raised from investors in the lawsuit that Mr. Donziger and Mr. Tyrell of Patton Boggs control[14] – apparently until Mr. Donziger stopped paying his lawyers. There is no evidence that Mr. Donziger or, if someone else now controls the money, that person or persons, has not simply decided to stop spending the LAPs' investor money and other resources to defend Mr. Donziger in this case – whether because he or they prefer to spend the money elsewhere, because the Donziger Defendants wish to portray Mr. Donziger as an impoverished individual fighting Chevron, or for some combination of these and perhaps other reasons. Nor is there any evidence that Mr. Donziger has taken any steps to enforce his contractual right to have the LAPs pay for his defense here.

To be sure, Mr. Donziger and the LAP Representatives have claimed that the LAPs are out of money. But they have provided no sworn statements, at least from anyone with personal knowledge, let alone other evidence, to support that assertion. To the contrary, the record establishes that have they raised millions of dollars in exchange for shares of any recovery on the

---

[13]  Hendricks Decl. [DI 355] Ex. 1122 (Donziger retention agreement), § 9, at 8 ("In the event that any person or entity . . . brings a legal action against the Firm [Donziger & Associates, PLLC] or any attorney thereof relating to the Firm's or such attorney's representation of the [Ecuadorian] Plaintiffs . . . the Plaintiffs shall make available to the Firm and/or each such attorney the funds necessary to pay the reasonable costs of defending against such Individual Action (the 'Defense Funds'). The Defense Funds shall be paid out of and to the extent of the monies then available to fund the general expenses of the case.")

[14]  See, e.g., 11 Civ. 3718, DI 44-9 (Treca Funding Agreement), at 2.

Judgment and supplemented that cash by obtaining legal services through contingent fee arrangements with lawyers. They have stated publicly that they have decided to spend their resources elsewhere because they regard this case as a "sideshow."[15]  Moreover, the fact that the LAPs currently are represented by counsel and litigating aggressively in Ecuador, Canada, Argentina, and Brazil as well as the Second Circuit suggests that they are not without funds.   If those who control the money – and as far as the record discloses, they include Mr. Donziger – choose to spend it elsewhere or to regard this case as an unimportant sideshow, that is their prerogative.  But they are not entitled to delay this case on the basis of that self serving decision.

Nor is a delay likely to result in any change in Mr. Donziger's circumstances.  Mr. Keker asserted the following in support of his motion to withdraw as counsel for the Donziger Defendants:

> "I am unaware of any current prospect for recovering this outstanding receivable of over one million dollars, including for work presently being conducted, nor for receiving substantial payment of any future fees and costs that would be incurred if Keker & Van Nest were to continue on as counsel.

> \* \* \*

> "I have discussed the motion to withdraw with Mr. Donziger.  *He does not at this time have substitute counsel and, given his [alleged] funding limitations, is not optimistic about being able to engage substitute counsel.*"[16]

Mr. Donziger has offered no reason to be any more optimistic now about his ability to engage substitute counsel if they were given a three month stay than he was when he discussed the motion

---

15

DI 1141, Ex. 3728 (Mr. Fajardo, the LAPs' lead Ecuadorian counsel, stated recently that "we are scaling back in New York to focus on the main issue: enforcing the $19 billion judgment around the world . . . . The New York case is a distraction, a sideshow aimed at exhausting our resources.").

16

Keker Decl. [DI 1102], ¶¶ 11, 14 (emphasis added).

to withdraw with Mr. Keker.

Finally, it bears mention that Mr. Donziger has a contingent fee agreement with the LAPs which entitles him to 31.5 percent of the total contingency fee recovered on the Judgment, which is 20 percent of any total collections.[17]  Thus, he would stand to receive over $1 billion if the Judgment were collected in its entirety.  That, at least in theory, is a monetizable asset.  Indeed, the LAPs concededly have raised some millions of dollars from investors in exchange for contingent interests in any recovery they may realize.  If Mr. Donziger has failed to find counsel willing to represent him on a contingent fee basis, perhaps it is because his prospects of success are not viewed favorably by others, perhaps it is attributable to his driving too hard a bargain, or perhaps it is a result of some combination of these and other factors.[18]  Mr. Donziger has offered no evidence suggesting that a delay of three months would alter this situation.

In the last analysis, Mr. Donziger did not obtain substitute counsel in the months during which he knew that the Keker firm was increasingly likely to withdraw if it were not paid.  He has not done so in the weeks since Keker moved to withdraw.  And there is reason to believe that there would not be much likelihood that he would succeed in doing so even if he were given the three month stay he asks.  Moreover, it would be an utter abuse if Mr. Donziger's alleged plight in fact is a contrived refusal by those controlling the LAPs' funds (who appear to include Mr. Donziger) to decline to spend those funds for the defense of this action in order to obtain a tactical

---

[17]  Hendricks Decl. [DI 355] Ex. 1122 (Donziger retention agreement), at 3.

[18]  The suggestion that prospective counsel have been scared off because Chevron has sued lawyers in this case (DI 1211, at 3) is risible.  Chevron has sued no lawyers in this case save PB and it did that only after PB brought three separate actions, in its individual capacity, against Chevron or its attorneys.

advantage, a subject to which the Court will turn below after dealing with the claim that Mr. Donziger needs three more months – in addition to the three that already lie before him before trial begins – to prepare.

### *The Alleged Need for Additional Preparation Time*

There is not sufficient reason to stay the matter for three months to afford Donziger more time to prepare for trial.

First, as noted above, the withdrawing lawyers represented to the Court that their clients, including the Donziger Defendants, were prepared to go forward on at least substantially the existing schedule. Neither the Donziger Defendants nor the LAP Representatives dissented from those representations. Indeed, in the days after the Court granted leave to withdraw, they adhered to that position and to the October 15 trial date. Only more recently has Mr. Donziger suddenly and radically changed his position.

Second, and quite apart from the fact that counsel and the litigants should be held to their representations to the Court, the Donziger Defendants have not persuaded the Court that the three-month stay they seek is necessary or appropriate.

As an initial matter, Mr. Donziger has at least two quite considerable advantages that are not enjoyed by his adversary notwithstanding Chevron's superior resources.

- He has lived the facts that are at the heart of this lawsuit in real time for two decades.

- He has access to the LAPs' Ecuadorian lawyers and their documents but have failed to produce either for deposition or inspection in this action.

Thus, he knows or readily can find out exactly what happened at every stage of this long saga. His

10

adversary, on the other hand, must attempt to piece much of the story together through discovery and investigation.   Moreover, it must do so without access to key Ecuadorian witnesses and documents, as the defendants have not complied with a Court order compelling production of responsive documents from the defendants' Ecuadorian lawyers and allies.   Nor have they made available for deposition many of the key Ecuadorian witnesses, some of whom are defendants in this action.

Given the intense litigation of this action, the Count Nine Action,[19] the Section 1782 proceedings, and the case in Ecuador – and especially Chevron's preliminary injunction motion and its two partial summary judgment motions in this case – Mr. Donziger knows Chevron's case to an unusual degree.   He will gain even greater knowledge when Chevron identifies its witnesses and exhibits by July 30, 2013, as required by the current schedule.

Nor is there so much left to do other than prepare for the October 15 trial.   The depositions have been completed.   Document production was completed months ago subject to the resolution of a small number of disputes relating to the completeness of production by the defendants and the LAPs' counsel, Patton Boggs, LLP ("PB").   While there may be some additional motion practice, that would only be normal in the context of any substantial case.

In addition, Mr. Donziger is not David facing Goliath alone, notwithstanding his attempt so to portray himself.   His co-defendants, the LAP Representatives, are said to be liable here only or primarily on a vicarious liability theory based on alleged misconduct by Mr. Donziger and the Ecuadorian counsel and allies whom Mr. Donziger has supervised and, at least in part, paid.   It

---

[19]   The Count Nine Action, 11 Civ. 3718, was created by the severance of count nine of the complaint in this action, which sought a declaration that the Judgment was neither recognizable nor enforceable.

11

is very much in their interests to defend Mr. Donziger. The LAP Representatives' defense is being substantially assisted by PB, a firm of hundreds of lawyers with professional standing comparable to that of Chevron's counsel. Moreover, both the Donziger Defendants and the LAP Representatives have enjoyed at least some services rendered by their former counsel of record, the Keker and Smyser firms, even after those firms withdrew.[20]

Thus, Mr. Donziger has approximately three months in which to prepare for trial. This Court sees no reason why – with his extensive personal knowledge of the facts and the evidence, his clear understanding of the nature of Chevron's case against him and the theories upon which it rests, and the assistance available to him from his LAP clients and their counsel – he can not be as ready to try this case on October 15 as he would be a month or three months later.

*A Tactical Ploy?*

The Court denies the motion for a three month stay purely on the basis of what has been said already. But it is relevant to note also that Chevron contends that the withdrawal of the Keker and SKV firms and the Donziger Defendants' claims of lack of resources, need for more time, and the like have been carefully orchestrated, that they rest on at least some factual premises that are untrue, and that all are designed to gain public relations and tactical advantages in the battle relating to the Judgment, which includes far more than this lawsuit. In view of the grounds upon which this application is decided, the Court need not address the substance of that contention.

---

[20]   In addition, Mr. Donziger has retained attorney Aaron Marr Page, who has worked with him previously, "to assist [him] with [his] defense" following the Keker firm's withdrawal. DI 1206, Ex. 1, at 3. Mr. Page has participated in conference calls with Chevron (although he refused to disclose his identity), DI 1206-1 (Ex. 1), and appeared on Donziger's behalf at a deposition (DI 1187 [Stavers Decl] Ex. 2 (Kroll Dep. Tr.)).

12

*Alternative Relief*

       The Donziger Defendants' motion sought various forms of alternative relief in the event the three month stay were denied.  The Court previously denied that alternative relief to the extent that it was sought pending the decision on this motion.[21]  It now denies it for the same reasons.

*Conclusion*

       For the foregoing reasons, the Donziger Defendants' motion for a stay of proceedings in this case or, alternatively, other relief [DI 1211] is denied in all respects.

       SO ORDERED.

Dated:     July 16, 2013

                                Lewis A. Kaplan
                           United States District Judge

---

[21]    DI 1268.