UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEVRON CORPORATION,<br><br>                    Plaintiff,<br><br>     v.<br><br>STEVEN DONZIGER *et al.*,<br><br>                    Defendants. | 11-CV-0691<br><br>The Honorable Lewis A. Kaplan, U.S.D.J.<br>The Honorable James C. Francis, U.S.M.J. |

**DONZIGER DEFENDANTS' MOTION FOR LEAVE TO FILE AMENDED
WITNESS AND EXHIBIT LISTS TO THE PRETRIAL ORDER**

Defendants Steven R. Donziger, the Law Offices of Steven R. Donziger, and Donziger & Associates, PLLC ("Donziger Defendants") hereby respectfully move the Court for leave to file the attached supplemental amended witness list and exhibit list for incorporation by reference of Sections VII and IV of the Court's Pretrial Order (DI 1421). The amendments are necessitated by omissions due to the extreme haste and burden Defendants faced in preparing their exhibit list to meet the Court's August 30, 2013, deadline for submissions of proposed pretrial orders, including an administrative error the evening of August 30 with respect to the witness list. Since August 30, Defendants have focused on attempting to complete the task of finding and fixing errors and finishing the process behind their good faith August 30 submission—the 1,100-item exhibit list in particular—to be in a position to provide Chevron and the Court with a comprehensive (albeit not exhaustive) supplemental submission. However, in light of the Court's entry of its Pretrial Order on September 12, Donziger Defendants now think it best to submit their amended lists in current form, even though they and the Ecuadorian defendants will need to submit additional subsequent amendments (in particular, providing Bates numbers for a few outstanding items on the exhibit list), which they will do as soon as possible.

## FACTUAL BACKGROUND

On August 16, 2013, defense-side counsel articulated for the Court in sworn declarations the dire situation they faced. The undersigned stated:

> I am representing myself in this matter and only getting limited help from a young human rights lawyer, Aaron Page, and a solo practitioner in San Francisco, Stuart Gross, who is very busy with other matters. Because of continuing difficulties to raise financing, Messrs. Page and Gross have been providing this assistance substantially without compensation. The assistance they have been, and are, able to provide has been very limited, making the responsibility to meet all of these obligations fall principally on me.

1

As it happened, Mr. Gross was not available to assist Donziger Defendants prepare for the August 30 pretrial order submission and Mr. Page was significantly distracted by being forced by Chevron to sit for deposition in a related matter on August 23, despite his multiple requests to postpone the deposition. *See* Declaration of Steven R. Donziger dated Sept. 13, 2013, ¶¶ 1-2 ("Donziger Decl."). Co-defense counsel Mr. Gomez, in his declaration of August 16, stated:

> Mine is a solo practice with two assistants, neither of which is a trained paralegal or has ever worked in a law office before. . . Furthermore, as I assumed my position as lead counsel for the Ecuadorian Defendants late in the proceedings, I am still engaged in a significant amount of catch-up work in this case. . . I have other cases and other clients that I am servicing; thus, it is not possible for me or my assistants to work full-time on this matter.

Since that time, Mr. Gomez has been forced to lay off the few assistants he had due to lack of resources on the defense side of this case. *See* Donziger Decl., ¶ 3.

Between August 16 and August 30, despite their dire situation and significant other litigation burdens, such as the motion to compel documents that Chevron filed against Donziger just two days before the August 30 deadline, DI 1374, Defendants struggled mightily to prepare and submit a proposed pretrial order and to engage Chevron about the possibility of a joint submission.[1] The submission filed by defendants on August 30, which included a table of over 1,100 exhibits, expressly provided:

> Defendants make these submissions in a good faith effort to comply with the deadline established by the Court. Nonetheless, for the reasons stated in the pending motion for continuance, and separate motion for a stay, these portions of the pretrial order are preliminary, as is the proposed verdict form; the Defendants have requested and continue to request additional time to amend and/or supplement the information they contain.

---

[1] Defense-side counsel also dedicated a significant amount of their available time in August 2013 to preparing and negotiating a proposed verdict form, because, as noted in Defendants' August 30 PTO, "Defendants understood from the last court conference that the Court regarded the submission of a proposed verdict form a priority and in due course focused their limited resources to that project." DI 1377 at 2.

2

DI 1377 at 3.  Unfortunately but not unexpectedly, the referenced filing contained a number of errors and omissions.  Principal among these was the inadvertent use of an earlier draft that omitted numerous witnesses the Defendants may wish to call for trial.  See Donziger Decl., ¶ 4.  The correct witness list is attached hereto as Annex 1.  Donziger Decl., ¶ 5, Annex 1.  The exhibit list also contained dozens of entries for which Bates numbers could not be located.  Since August 30, Defendants have successfully located Bates numbers for many entries and have updated the exhibit list, Part II of which is attached hereto as Annex B.  Donziger Decl., ¶ 6, Annex 2.  They also have gathered, Bates numbered, listed, and produced to Chevron copies of many background documents which Defendants have thus far been unable to locate in the discovery record but which they would like to use and believe they are entitled to use at trial.  Many additional documents still need to be Bates numbered, listed, and produced.  Defendants have also continued to search for documents necessary to their defense in this case and have added a small number of additional entries to the exhibit list, primarily (due to the time and resource constraints) in the form of specified categorical entries as discussed below.

## LEGAL STANDARD

"[A] trial court will typically amend the pretrial order when 'no substantial injury will be occasioned to the opposing party, the refusal to allow the amendment might result in injustice to the movant, and the inconvenience to the court is slight.'" *Mhany Management Inc. v. Incorporated Village of Garden City*, 2013 WL 1821113, at *4 (E.D.N.Y. Apr. 29, 2013) (quoting *SEC v. U.S. Envtl., Inc.*, 2002 U.S. Dist. LEXIS 19839, at *4 (S.D.N.Y. Oct. 17, 2002) and extensively reviewing applicable standard).  "The principal consideration is the degree of prejudice faced by the respective parties," *Encyclopedia Brown Prods. V. Home Box Office*, Inc., 1999 WL 126460, at *2 (S.D.N.Y. March 10, 1999), and "a court should balance 'the need for

3

doing justice on the merits between the parties (in spite of the errors and oversights of their attorneys) against the need for maintaining orderly and efficient procedural arrangements.'" *Mhany Management*, 2013 WL 1821113, at *3 (quoting *Laguna v. Am. Export Isbrandsten Lines, Inc.*, 439 F.2d 97, 101 (2d Cir.1971) (quoting 3 J. Moore, Federal Practice & Procedure ¶ 16.20 at 1136 (3d ed.1968))). The concern with respect to prejudice typically arises where "amendment is sought in the midst of trial or on the eve of trial." *Finnish Fur Sales Co. Ltd. v. Furs Unlimited, Inc.*, 1992 U.S. Dist. LEXIS 2390, at *3 (S.D.N.Y. Mar. 4, 1992). Where a court requires a showing of good cause for adjustments to or relief from pretrial order provisions, a finding of good cause "turns on the 'diligence of the moving party.'" *Holmes v. Grubman*, 568 F.3d 329 (2d Cir. 2009) (quoting *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2003). However, even an amendment "due to the movant's lack of diligence may be allowed if it does not significantly prejudice the opposing party." *Helena Assocs., LLC v. EFCO Corp.*, 2009 WL 2355811, at *3 (S.D.N.Y. July 29, 2009).

**ARGUMENT**

As discussed above, Defendants have been diligent under extremely difficult circumstances to meet the deadlines imposed by the Court. A handful of attorneys and assistants have faced the task of assessing a universe of literally millions of documents and hundreds of possible witnesses to assist in their opposition to Chevron's case in chief, the contours of which remain significantly unclear as of this late date. *See, e.g.*, DI 1415 (asking the Court to order Chevron to "get off the dime" on the basic question of whether it will follow through on its promise to seek a jury in this matter). The fact that administrative and communication errors between defense-side counsel (who do not live or work in the same city) occurred is regrettable but understandable in light of the situation. Indeed, while Defendants believe it is necessary to

4

provide the Court with the current amended witness and exhibit lists promptly in light of the Court's entry of its Pretrial Order, Defendants again emphasize that even this submission cannot be considered entirely final. Defendants continue to reserve the right to amend or supplement this submission as they develop their defense and better understand the nature of Chevron's still-sprawling and unbounded case in chief.

Most importantly, the Court's acceptance of the amended witness and exhibits lists would not result in any prejudice to Chevron, which still has several weeks to prepare for trial with a veritable army of attorneys at its disposal. With respect to witnesses, none of the additional names on Defendants' amended list at Annex A will count as anything of a "surprise" to Chevron. The same applies to the limited number of additional "new" exhibits on Defendants' amended list at Annex B and material that has been or will soon be served on Chevron. The material is either already in Chevron's possession, is consistent with the information Chevron has, or goes to largely undisputed background issues such as the nature and operation of the Ecuadorians' representative organizations in Ecuador.

The only potentially remaining issue with respect to exhibits concerns Defendants' citation to a few specified categorical (or so-called "omnibus") ranges of well-known material, in particular the Lago Agrio Record, the extant collection of *Crude* outtakes, Steven Donziger's email and document production to Chevron, material on certain specified websites, and a few others, all specified by Bates range or publicly available. Chevron challenged Defendants' citation to these materials in a motion in limine (DI 1396) that the Court recently denied without prejudice to "objections in the event the evidence in question actually is offered at trial." DI 1420. As a general matter, the idea that Chevron would suffer any prejudice by the use by Defendants of items from the "omnibus" materials is ludicrous: Chevron's large team of lawyers

and consultants have scoured and indexed and analyzed these materials backwards and forwards for multiple purposes, such that Chevron's comprehension of them far surpasses that of the Defendants. The far more likely reality is that Chevron's objections are motivated by its knowledge that much of the material in fact undermines its own case and it is desperately hoping that Defendants will continue to be unable to dedicate sufficient resources to analyzing and identifying useful items from the material under the compressed time frame set by the court for trial.

In addition to the categorical entries specified in the August 30 exhibit list, Defendants amended list includes entries referencing a series of noteworthy annexes (and exhibits thereto) prepared by the legal team for the Republic of Ecuador (ROE) in the related BIT arbitration. These annexes, attached as Annexes A-K to the amended exhibit list at Annex 2, address in methodical detail Chevron's most significant allegations of wrongdoing in this case, which it has also used to attack the ROE in the arbitration. In particular:

- **Annex A** addresses Chevron's allegations that Ecuador's judiciary lacks independence, demonstrating, inter alia, that judicial reforms in the past two decades, including reforms to the Supreme Court, have strengthened the independence of Ecuador's courts, that Ecuador's approval of a new Constitution in 2008 enhanced judicial independence and the separation of powers, Chevron's own success in Ecuadorian courts undermines its claims that the judiciary lack independence, and that Chevron's claims that Ecuador's Executive has interfered with the judiciary are unfounded. Donziger Decl., ¶ 7, Annex 2-A.

- **Annex B** addresses Chevron's claims that the Chevron lawyers facing criminal charges for their actions in Texaco's faulty remediation were denied due process, demonstrating, inter alia, that not only was the criminal investigation procedurally sound and carried out fairly and properly, but that the dismissal of the charges, based on procedural grounds, demonstrated the independence and impartiality of the Ecuadorian judiciary. Donziger Decl., ¶ 8, Annex 2-B.

- **Annex C** addresses Chevron's allegations that Judge Nuñez was involved in a bribery scheme, demonstrating, inter alia, that Chevron operatives Borja and Hansen engaged in criminal conduct in their attempts to aid the company, that Chevron has financially supported Borja since 2004 and that Borja participated in the scheme in pursuit of financial rewards from the company, that Hansen is a convicted criminal who fled the

U.S. rather than be deposed under oath, and that Chevron's own evidence establishes that Judge Nuñez did not participate in any form of bribery. Donziger Decl., ¶ 9, Annex 2-C.

- **Annex D** addresses Chevron's "ghostwriting" allegations, demonstrating, inter alia, that the so-called Fusion Memo was almost certainly submitted to the Court in the presence of Chevron's attorneys even though it may have been inadvertently omitted from the formal record, that Chevron's "stylistic analysis," if credited, reaches the absurd result that Chevron's own attorney ghostwrote the judgment, and that each of Chevron's other pieces of "ghostwriting" evidence are unavailing. Donziger Decl., ¶ 10, Annex 2-D.

- **Annex E** addresses Chevron's allegations with respect to Charles Calmbacher and Richard Cabrera, demonstrating, inter alia, that Calmbacher's allegations of altered reports are contradicted by documentary evidence, that the Ecuadorian Plaintiffs clearly had the right to request cancellation of the judicial inspections they had requested, that the Lago Agrio court's appointment of Cabrera was proper under Ecuadorian law, that both parties held ex parte meetings with multiple judges in the case, that Judge Zambrano dealt with Chevron's motions regarding Cabrera's alleged lack of independence in an appropriate manner, and that the Court based its damages assessment on sources other than Cabrera. Donziger Decl., ¶ 11, Annex 2-E

- **Annex F** addresses Chevron's allegations of "collusion" between the Ecuadorian Plaintiffs and the Republic of Ecuador, demonstrating, inter alia, that the allegations are based on innuendo rather than any actual evidence of impropriety or malfeasance, that Chevron itself has enjoyed continued access to almost all levels of the Ecuadorian government (including several meetings at which Chevron officials attempted to persuade the government to interfere on Chevron's behalf in the *Aguinda* case), and that the Republic's entry into a common interest defense agreement with Ecuadorian Plaintiffs' representatives with respect to litigation outside Ecuador was entirely appropriate. Donziger Decl., ¶ 12, Annex 2-F.

- **Annex G** addresses individually each of Chevron's allegations of legal error committed by the Lago Agrio trial court, showing that each is either demonstrably false or that it was corrected in subsequent clarification opinions or on appeal. Donziger Decl., ¶ 13, Annex 2-G.

- **Annex H** provides a comprehensive and detailed summary and roadmap of the Lago Agrio trial court's February 14, 2011, final judgment and May 4, 2011, clarification decision, and the appellate court's January 3, 2012, appellate opinion. Donziger Decl., ¶ 14, Annex 2-H.

- **Expert Report of Kenneth J. Goldstein and Jeffrey W. Short** addresses a number of Chevron's allegations related to the Lago Agrio trial process and underlying claims, concluding, inter alia, that Chevron/Texaco/Texpet's operation of the Napo Concession caused widespread contamination of severe hazardous characteristics, that Chevron's remediation in the 1990s failed to properly identify, much less

7

remediate, significant environmental and human health risks; that Chevron's "intrinsic bioattentuation / biodegradation" claims are not supported by the results of the judicial inspections or the other evidence adduced at trial; that Chevron's sampling programs and testing procedures during the trial did not adequately characterize the extent of contamination; that Chevron's own evidence nonetheless demonstrated significant contamination not within Ecuadorian legal norms; and that the Lago Agrio trial court's assessment of damages is reasonable based on the authors' education, training, experience, and information and data available in the scientific literature. Donziger Decl., ¶ 15, Annex 2-I.

- **The Expert Report of Harlee Strauss** addresses the human health related assertions in Chevron's technical reports in the BIT proceeding and related proceedings, concluding that toxic contaminants released into the environment during Chevron/Texaco/Texpet's time as legal operator of the Napo Concession resulted in immediate and delayed adverse health effects in children and adults in the region. Donziger Decl., ¶ 16, Annex 2-J.

- **Expert Report of Edwin Theriot** addresses the issue of contemporaneous and existing ecological impacts of Chevron/Texaco/Texpet's oil operations, concluding, inter alia, that those operations caused widespread ecological impacts, that the remediation in the 1990s was inadequate, that the contamination released prior to 1992 continues to impact flora and fauna, and that evidence in the Lago Agrio trial record shows extensive residual loss of diversity due to the operations. Donziger Decl., ¶ 17, Annex 2-K.

## CONCLUSION

For the foregoing reasons, the Court should grant leave and accept Annexes 1 and 2 as Defendants' witness and exhibit lists as referenced in the Court's Pretrial Order, DI 1426.

                                            Respectfully submitted,

Dated: September 13, 2013        By:    */s/ Steven R. Donziger*
                                                         Steven R. Donziger
                                                           245 W. 104th Street, #7D
                                                           New York, NY 10025
                                                           Telephone: (917) 678-3943
                                                           Facsimile: (212) 409-8628
                                                           StevenRDonziger@gmail.com

                                                           *Pro Se*


Dated: September 13, 2013

                                          By:    */s/ Steven R. Donziger*
                                                           Steven R. Donziger
                                                           245 W. 104th Street, #7D
                                                          New York, NY 10025
                                                          Telephone: (212) 570-4499
                                                          Facsimile: (212) 409-8628
                                                          StevenRDonziger@gmail.com

                                                           *Attorney for Defendants Law Offices of*
                                                           *Steven R. Donziger and Donziger &*
                                                           *Associates, PLLC*