UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
CHEVRON CORPORATION, :
:
                Plaintiff, :
:
   -against- :
: Case No. 11 Civ. 0691 (LAK)
:
STEVEN R. DONZIGER, et al., :
:
                Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN RESPONSE TO
ORDER TO SHOW CAUSE WHY CHEVRON SHOULD NOT BE
REQUIRED TO STATE WITH FINALITY THE NATURE OF
ITS CLAIMS AND WHY ALL DEADLINES AND
THE TRIAL SHOULD NOT BE SUSPENDED IN THE INTERIM**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

**PRELIMINARY STATEMENT**

In his latest stay motion, Donziger once again claims, without substantiation, that he lacks resources and therefore should be entitled to extraordinary relief, demanding that "all deadlines in this case and the trial date itself be held in abeyance" until Chevron decides whether or not it will seek money damages against him. Dkt. 1415 at 3. Donziger apparently has enough resources to make this endless series of baseless stay motions and do anything else he can to try to delay the trial. But this motion for stay is even less meritorious than the others. Chevron has openly noted in filings over the past *several months* its consideration of not pursuing money damages against Defendants. It recently dropped its money damages claims against the LAP Representatives, and it has committed to the Court to make its decision concerning Donziger within the next two weeks, or to do so sooner if the Court believes for any reason that it is necessary for Chevron to do so.

Donziger seeks to take advantage of Chevron's candid and voluntary disclosure to obtain delay, but does not explain how Chevron's commitment to make a final decision within the next two weeks prejudices him. Contrary to Donziger's assertions, the trial will be largely the same whether this case proceeds before a jury or as a bench trial: The same facts are at issue, the same witnesses will have to testify, and the same evidence will be presented. A bench trial would be more efficient, shorter in duration, and save resources. Donziger's claim that a bench trial would require "a fundamentally different type of opposition" is absurd on its face. Chevron's commitment to inform the Court and the parties within the next two weeks—by September 30—whether it intends to continue to seek monetary damages from Donziger works no prejudice to him. Hence, his latest stay application should be denied.

**ARGUMENT**

Since February, Chevron has made it clear that it may seek only equitable relief. Dkt.

1

783 at 17–18 ("[I]t may make practical sense for Chevron to seek only equitable and declaratory relief in this action . . . Chevron's claims for equitable and declaratory relief, if tried alone, would be a bench trial capable of being conducted on a more expedited basis.").[1] Defendants have long been aware of the possibility. *See* Dkt. 873 at 1 (arguing, on March 1, 2013, that Chevron is "desperate to find any way to avoid a jury trial"); No. 13-772, Dkt. 139-24 at 9 (August 8, 2013) ("In fact, Chevron has indicated that it is considering whether to pursue *only* equitable relief, in lieu of damages."). At the September 3, 2013, hearing, counsel for Chevron raised the matter again, indicating that Chevron would advise the court in its bifurcation motion regarding "the potential of equitable relief only against the LAPs."[2] Declaration of Jason B. Stavers, Exhibit A at 12:15–18 (Sept. 3, 2013 Hr'g Tr.). Chevron did so (Dkt. 1404; Dkt. 1406 at 1–2) and at that time further informed the Court—and Defendants—that it would make a decision with respect to the remedies it sought against Donziger "before the end of September," or at any sooner time should the Court so order. Dkt. 1406 at 1.

As matters stand, in no more than two weeks Donziger will know whether he faces monetary damages, or only equitable relief, and whether or not Chevron's claims against him will be tried to a jury. Whatever prejudice Donziger purports to perceive in being relieved of claims for hundreds of millions of dollars in damages has been substantially ameliorated by Chevron's prior notice. Chevron should not be punished by delay of its long-sought trial against Donziger because it provided advance notice of its potential change in relief—something it was not obligated

---

[1] *See also* Stavers Ex. B at 21: 21-25 (July 18, 2013 Hr'g Tr.) ("There is still some consideration, your Honor, on our part, in the event the counterclaims on the other side were dismissed, of whether equitable relief would suffice in this case.").

[2] Donziger alleges Chevron told the Court it would include a decision regarding monetary damages against Donziger in its bifurcation motion. Dkt. 1415 at 1–2. This is false—Chevron's representation was expressly limited to relief against the LAPs—and Donziger's claim that he should not be held accountable for inaccurate citations to the hearing transcript on account of his inability to pay for transcripts is, as discussed, without foundation.

to do.[3]

Nor does Donziger articulate how he would be prejudiced were Chevron to decide two weeks from now whether or not to drop its sizeable monetary claims against him. Indeed, his claim that a bench trial "would require a fundamentally different type of opposition" than a jury trial is wrong. Dkt. 1415 at 2. There are limited procedural differences—primarily the substitution of written statements in place of direct testimony, but nothing supporting Donziger's claim that "jury-related tasks Defendants are facing now are legion[.]" *Id*. Indeed, the most significant difference between the two proceedings, is Chevron's evidence of monetary damages, and Donziger did not depose and has given no indication he has done any work to rebut Chevron's disclosed experts on that issue—whose reports Donziger has had since March. Moreover, Donziger ignores this Court's efforts to substantially reduce whatever actual burden is imposed on him by pre-trial obligations. In addition to numerous deadline extensions—nearly every ex-

---

[3] Donziger cites only one unpublished, out-of-jurisdiction case in support of his request for relief, *Jackson v. Diversified Collection Servs., Inc.*, 485 Fed. Appx. 311 (10th Cir. 2012). This case is inapposite and Donziger's parenthetical inaccurate. Contrary to Donziger's description, the Tenth Circuit in *Jackson* did *not* affirm the district court's determination that a last-minute withdrawal "warranted an application for sanctions." Dkt. 1415 at 3 (citing *Jackson*, 485 Fed. Appx. 311). To the contrary, the Court of Appeals affirmed the district court's denial of an attorneys' fees sanction for the withdrawal, on the grounds that the party seeking the sanction had failed to present sufficient evidence to permit the district court to make findings as to the amount of any fees incurred as a result of improper conduct. The Court of Appeals did not reach the question of whether the withdrawal merited sanctions. *See Jackson*, 485 Fed. Appx. at 312. Nor is the underlying district opinion relevant to the facts here. *See Jackson v. Diversified Collection Servs. Inc.*, 2011 WL 1235553 (D. Colo. March 31, 2011). There, the district court found that an application for attorneys' fees sanction was merited under 28 U.S.C. § 1927, which provides for such a sanction where an attorney "multiplies the proceedings in a case unreasonably and vexatiously." *Id*. at *5 (quoting § 1927). Donziger is not seeking relief under § 1927, but even if he were, the facts of *Jackson* render it unpersuasive here. The plaintiff in that case dropped several entire claims, a defendant, and all claims for money damages months after submission of its pre-trial order, including some withdrawals literally on the morning of trial. *Id*. at *6. And the court further concluded that the plaintiff had "suffered no recognizable damages in this matter" despite carrying his money damages claims right up to the morning of trial. *Id.* Chevron, on the other hand, has signaled that it may drop one aspect of its sought-after relief, within a month of the pre-trial order, after indicating that it might do so for nearly a year, and has disclosed detailed, and unrebutted, expert reports detailing the tens of millions of dollars it has incurred in actual damages, whether it seeks a damage award for them or not. Moreover, the district court in *Jackson* recognized that the obligation not to "unreasonably and vexatiously" multiply the proceedings requires counsel to "regularly re-evaluate the merits of their claims." *Id.* at *5. The merits of Chevron's claims and its requests for both legal and equitable relief are substantial, and supported by extensive evidence, but Chevron regularly re-evaluates all aspects of its claims, and does not intend to bring any claim or seek any relief that is not necessary to remedy the ongoing racketeering being committed against it.

3

tension Donziger has sought—the Court *sua sponte* denied substantial portions of Chevron's summary judgment motion and motion *in limine* and trimmed Chevron's motion to bifurcate the trial. Dkt. 1362, 1410, 1420.

In fact, Donziger's rhetoric about a "fundamentally different type of opposition" is meaningful only because it reveals Donziger's real intent here. While litigants can be expected to refine their arguments differently depending on whether they are addressing a lay jury with no prior exposure to the matter or an experienced federal judge with deep knowledge of the case, the facts in dispute and the relevant evidence do not change. A litigant proceeding in good faith does not "fundamentally" change its presentation when a jury is empaneled. As described in Chevron's pending motion *in limine*, Donziger intends "a strategy for jury nullification, not a proper response to the claims asserted[.]" Dkt. 1389 at 4. While it may be true that a bench trial would require *Donziger* to prepare "a fundamentally different type of opposition," foiling these bad faith litigation tactics is not prejudice requiring relief.[4]

On the other hand, delaying these proceedings does prejudice Chevron. Donziger and his

---

[4] Donziger also attempts to buttress his prejudice argument by suggesting that a waiver of money damages by Chevron would inject a new issue into the proceedings, because he intends to "vigorously oppose" the shift to a bench proceeding that would result. Dkt. 1415 at 3 n.3. He argues that if Chevron makes this decision at the end of September, "Defendants would be forced to oppose the issue at a time of maximum intensity in trial preparation [and] the issue would likely remain unresolved until just days before the start of the trial[.]" *Id.* at 2. But there is no "issue" that would result from Chevron's contemplated waiver. If Chevron waives its money damages against Donziger, Donziger has no right to a jury trial. *See* Dkt. 1410 at 4 (finding that, in light of Chevron's waiver of money damages against the LAPs, "the Court rather than the jury would be obliged to make the findings necessary to decide the case") (citing Fed. R. Civ. P. 39(c)(2)); *Stonewall Ins. Co. v. Nat'l Gypsum Co.*, 86 CIV. 9671 (JSM), 1992 WL 281401, at *1 (S.D.N.Y. Sept. 25, 1992) ("It is well settled that when a party withdraws its damages claims and pursues only equitable relief, a jury trial is no longer available and issues must be tried by the court."). *See also Katchen v. Landy*, 382 U.S. 323, 337, 86 S. Ct. 467, 477 (1966) ("[T]he right of trial by jury . . . does not extend to cases of equity jurisdiction. If it be conceded or clearly shown that a case belongs to this class, the trial of questions involved in it belongs to the court itself, no matter what may be its importance or complexity."); *Heyman v. Kline*, 456 F.2d 123, 130 (2d Cir. 1972) ("The constitutional guarantee of jury trial extends, of course, only to claims for legal relief; equitable claims are properly tried only to a judge."); *Rosenman Colin Freund Lewis & Cohen v. Richard*, 656 F. Supp. 196, 196 (S.D.N.Y. 1987) (granting motion to strike jury demand because "the instant petition is equitable in nature and therefore must be tried to the court"); *Garcia v. Ecotech, Inc.*, 786 F. Supp. 571, 573 (M.D. La. 1992) (holding that the Veteran's Re-Employment Rights Act grants equitable relief, "which cannot be tried to a jury"); *In re 222 Liberty Associates*, 99 B.R. 639, 645 (Bankr. E.D. Pa. 1989) ("[T]here can be no dispute that an action which is equitable in nature . . . cannot be tried by jury.").

4

co-conspirators continue to pressure the company through a campaign of lies to shareholders and regulatory agencies, and continue their scheme to steal billions of dollars in assets and disrupt the operations of Chevron's subsidiaries in Argentina, Brazil, Canada, and Ecuador, as well as other threatened foreign enforcement venues, which is of paramount important to the company and its shareholders. Unfolding developments in those proceedings, and in other fora such as the ongoing treaty arbitration with the Republic of Ecuador, where further interim relief has just been requested, continue in parallel with this proceeding, and influence Chevron's interests and decisions here. Indeed, it is Chevron's success to date in those proceedings that has brought about the possibility that it might forego money damages against Donziger—a development any defendant who was proceeding in good faith would welcome—as equitable relief may prove far more important to protect Chevron in the future. Developments on all these fronts continue, but Chevron has committed to the Court that it will decide this issue within the next two weeks—by no later than September 30, or whenever the Court requires it to do so.

Donziger has not even been candid with the Court concerning his constant refrain of "limited resources." Notwithstanding this Court's repeated observation that Donziger's "claim of poverty" is "unsubstantiated," he has never offered any evidence of his supposed "insolvency" or his inability to retain counsel in this action. Disclosures made in court filings in Florida reveal that Donziger has in fact received nearly $2 million from family trusts within the last year. On or about October 31, 2012, Donziger received over $600,000 from a trust established for his benefit by his grandmother, Fanny Donziger. Dkt. 1393-1 (October 31, 2012, order terminating Fanny Donziger trust and ordering distribution to Steven Donziger); Stavers Ex. C at ¶ 30 (Donziger complaint alleging that Fanny Donziger trust contained $600,000). Then, on or about November 29, 2012, Donziger received nearly $1.3 million from a trust established for his bene-

5

fit by his grandfather, Leon S. Donziger. Dkt. 1393-2 at ¶ 16 (Donziger motion asserting that Leon Donziger trust was terminated on November 29, 2012); *id.* at 25 (acknowledging that "the Trust has already been terminated and the majority of the corpus of the Trust distributed to Steven Donziger"); Stavers Ex. D (November 29, 2012, order terminating Leon Donziger trust and awarding assets of $1.3 million, less fees of $35,000, to Steven Donziger). Donziger stopped regular payments to his counsel in this action in September, 2012, to the point that his prior counsel was permitted to withdraw on that basis in May, 2013. Dkt. 1164.[5]

If Chevron decides to pursue only equitable relief going forward, a bench trial would present the possibility of greater scheduling flexibility and a more efficient presentation for all concerned. The substitution of written statements for direct examination alone should be a significant savings, and the Court can otherwise handle matters more expeditiously without the added burden of managing a jury.[6] This will lead to a substantially shorter trial, which would reduce

---

[5] And of course, it is a fiction that Donziger is not supported by counsel in this action. He has admitted that Aaron Page continues to represent him and Stuart Gross has at times represented him here, Dkt. 1346 ¶ 2, and Donziger even has an outside lawyer issuing press releases concerning this matter. *See* August 29, 2013, Gowen Group Law Office press release, entitled "Appeals Court to Consider Removing Key U.S. Judge in Chevron Ecuador Case," *available at* http://www.csrwire.com/press_releases/36046-Appeals-Court-to-Consider-Removing-Key-U-S-Judge-in-Chevron-Ecuador-Case; September 10, 2013 Gowen Group Law Office press release, entitled "Bombshell Retreat: Chevron Seeks to Drop $60 Billion in Damages In Ecuador Case," *available at* http://www.csrwire.com/press_releases/36091-Bombshell-Retreat-Chevron-Seeks-to-Drop-60-Billion-in-Damages-In-Ecuador-Case; September 13, 2013 Gowen Group Law Office press release, entitled "Chevron Tried to Bribe Ecuador Judge with $1 Million Payment on Eve of RICO Trial," *available at* http://www.csrwire.com/press_releases/36107-Chevron-Tried-to-Bribe-Ecuador-Judge-with-1-Million-Payment-on-Eve-of-RICO-Trial. And it is obvious that Patton Boggs continues to provide significant support, handling numerous matters in the Second Circuit related to this action, and it is most likely the author of the 35-page sanctions motion against Chevron Donziger filed last week. *See* Dkt. 1422. *See also* Dkt. 1407 at 18–20 (describing the involvement of Page, Patton Boggs and others in Donziger's defense). The motion for sanctions is a particularly egregious example of Donziger's gamesmanship. Barely a month from the start of trial and on the eve of the Second Circuit's mandamus petition argument, he files a bad-faith sanctions motion rehashing stale allegations against Chevron about why Guerra came forward in January 2013 and why Stratus and Burford came forward in April 2013. Defendants already raised these same, unsustainable allegations with the Court many months ago. He apparently raises them now for other purposes and other audiences. But it is telling about his resources and tactics. When he perceives a strategic advantage, he somehow has the resources to get it done.

[6] Because a bench trial on all claims would be a shorter proceeding (by our estimate, three to four weeks, instead of the six to eight weeks necessary for a jury trial), in the event Chevron pursued only equitable relief against Donziger, the Court would have more scheduling flexibility, both in terms of the start of the trial and during the trial itself, such that it could address concerns of the Defendants as they arise (such as this two-week issue) and still fin-
[Footnote continued on next page]

the cost and burden of trial. But none of this provides any basis for the stay Donziger seeks.

## CONCLUSION

For the aforementioned reasons, the Court should deny the Donziger Defendants' request for a "suspension of all deadlines."

Dated: September 16, 2013  
New York, New York

Respectfully submitted,

/s/ Randy M. Mastro
Randy M. Mastro
Andrea E. Neuman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for Chevron Corporation*

---

[Footnote continued from previous page]
ish a bench trial sooner than it could a jury trial.