UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

              Plaintiff,

       -against-                               11 Civ. 0691 (LAK)

STEVEN DONZIGER, et al.,

              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/17/13

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

        Defendants Steven Donziger, Donziger & Associates, PLLC, and The Law Offices of Steven R. Donziger (the "Donziger Defendants") seek an order requiring Chevron immediately "to state with finality the nature of its claims" – i.e., whether it will drop its remaining requests for damages and thus at least arguably eliminate any right to trial by jury – and to stay not only the October 15, 2013 trial of this action, but all other proceedings as well, until it does so.

*Facts*

        This case was commenced on February 1, 2011. The complaint sought both damages and equitable relief against both the Donziger Defendants and the LAP Representatives. All parties made jury demands. The case has been headed for a jury trial on the damages claims for more than

2

two and a half years.[1] The October 15, 2013 trial date was set nearly a year ago.

At least as early as February 2013, Chevron disclosed – although it was not required to do so – that it was considering the withdrawal of its requests for money damages and seeking only equitable relief.[2] It adverted to that possibility again on July 18, 2013,[3] and then again on September 3, 2013.[4] Then, on September 8, 2013, Chevron waived its prayer for damages against the LAP Representatives and elected to pursue only equitable relief against them.[5] At the same time, it represented that it would decide by September 30, 2013 whether it will do the same with respect to the Donziger Defendants.[6]

In the present posture of the case, then, the Donziger Defendants have a right to a jury

---

[1] There are some complexities as to whether all aspects of the case would have been triable as of right before a jury. For example, Chevron contends that equitable defenses such as unclean hands bear only on its claim for equitable relief and that any factual issues with respect to such matters would be triable to the Court rather than to a jury. The defendants, at least some time ago, contended that factual issues common to both legal and equitable claims first must be tried to a jury. *See generally Chevron Corp. v. Salazar,* 800 F. Supp.2d 484, 493-95 (S.D.N.Y. 2011) (discussing *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500 (1959), and *Dairy Queen v. Wood,* 369 U.S. 469 (1962)). It is unnecessary to get into those matters now. For present purposes, it is sufficient to note that a substantial part of the case, at least, would have been triable as of right to a jury.

[2] *See* DI 783 (Chevron Mem. in Support of its Mot. for Partial Reconsid. of the May 13 2012 Order), at 17-18 ("it may make practical sense for Chevron to seek only equitable and declaratory relief in this action . . . Chevron's claims for equitable and declaratory relief, if tried alone, would be a bench trial capable of being conducted on a more expedited basis.").

[3] Tr., July 18, 2013 [DI 1318], at 21:16-25.

[4] Tr., Sept. 3, 2013 [DI 1424], at 11:13-20.

[5] DI 1404.

[6] DI 1406, at 1.

trial because Chevron seeks money damages against them. The Court assumes, as apparently do the parties, that the LAP Representatives have no such right because Chevron seeks only equitable relief against those defendants. Moreover, the Court has denied a request by Chevron to try the liability issues on the claims against the Donziger Defendants separately from those against the LAP Representatives, the former trial before a jury and the second without a jury.[7] Thus, as long as Chevron continues to seek damages against the Donziger Defendants, the case is on the same track as always – a single, joint trial of the key facts bearing on liability before a jury, albeit now subject to the qualification that the Court rather than the jury will be the trier of fact with respect to the now purely equitable claims against the LAP Representatives.[8]

Preparations for that trial are well under way. The pretrial order has been signed. Jury selection procedures have been determined. Summonses have been sent to prospective jurors, who will complete questionnaires on October 8 in preparation for the commencement of jury selection on October 15.

To be sure, the possibility remains that Chevron will withdraw its requests for damages against the Donziger Defendants. So there is a chance that it yet might transform the trial from one partly triable before a jury to a case triable entirely to the bench.[9] But Chevron has stated

---

[7] DI 1410.

[8] There is a pending motion to bifurcate the trial to the extent of (1) having compensatory and punitive damage claims against the Donziger Defendants heard by the same jury only after a verdict finding them liable, and (2) hearing any surviving equitable defenses, as to which there is no right to a jury trial, nonjury and only after completion of all jury proceedings. That motion is not yet fully submitted, but will be decided before the commencement of the trial.

[9] The Donziger Defendants state that they will oppose a non-jury trial in the event Chevron withdraws prayer for damages against them. DI 1415, at 3 n.3. They have not, however,

that it will make the determination whether to do so by the end of September.

The defendants have known at least since February of the possibility that Chevron would waive all of its requests for damages – and thus arguably eliminate any right of any party to a jury trial. But only last week did they suddenly move to compel Chevron to make a binding commitment – earlier than the end of September – as to whether it will withdraw those requests against the Donziger Defendants. At the same time – and despite the fact that this application came only two days after the Court denied a prior motion to stay not only the start of the trial, but also all other proceedings in the case – they now seek that relief again, this time pending the election they seek to force Chevron to make. Their latest motion presents these issues: (1) whether Chevron should be forced to make the binding election the Donziger Defendants seek to impose on it right now, as opposed to by the end of September as it has offered, and, if so, (2) whether the trial itself and all other proceedings in this case should be stayed until Chevron makes that election.

## Discussion

*The Request to Compel and Immediate Election by Chevron*

The Donziger Defendants seek to force Chevron to decide immediately whether it will drop its request for damages, a decision that Chevron has undertaken to make by the end of September. But the Donziger Defendants cite no legal basis for requiring their adversary to make any such decision on any particular timetable, let alone a timetable of the Donziger Defendants'

---

shared the basis on which they contemplate doing so. It appears doubtful that any such opposition could succeed given the authorities Chevron has cited in response to the Donziger Defendants' statement. DI 1433, at 4 n.4. Nevertheless, the Court does not now decide the issue. It therefore refers in this memorandum to the "arguable" elimination of any right to a jury trial in the event Chevron were to waive its prayer for damages.

5

choosing.

They begin their argument with an inaccurate description of an exchange between Chevron's counsel and the Court at the September 3, 2013 court appearance, which the Donziger Defendants incorrectly claim included a direction by the Court that Chevron make its decision.[10] They assert also that Chevron has not complied with the Court's "direction."[11] But the Court did not "direct" Chevron to make its decision by any particular time. What happened was this:

In the course of a discussion of trial preparations, Chevron's counsel stated: "Your Honor, we are trying to do everything we can to streamline the case, make it as short a trial as possible, whether it's a jury trial or a bench trial." The Court responded that "You are going to have to get off the dime on that latter issue," which simply acknowledged the fact that a decision presumably will have to be made on that issue because the trial is to begin on October 15.[12] Counsel then referred to anticipated motions, resolution of which would advance Chevron's ability to make that decision.[13] No direction was given and certainly no timetable was established.

The Donziger Defendants next argue that "Chevron is not at this stage entitled to hold its position on this critical issue secret to the tactical disadvantage of the Defendants and the

---

[10] DI 1415, at 1-2 ("the Court has already 'direct[ed] Chevron to make that commitment one way or the other'"). In fact, as will appear, there was no such direction.

[11] Id.

[12] In suggesting even that much, the Court overlooked the possibility that a plaintiff asserting both common law and equitable claims perhaps could try all or most of its case before a jury, drop any prayer for damages late in the proceedings (perhaps even while a jury was deliberating), and properly insist upon a decision by the trial judge rather than the jury.

[13] Tr., Sept. 3, 2013 [DI 1424], at 11:17-12:19.

inconvenience of the Court," citing *Jackson v. Diversified Collection Services, Inc.*, 485 Fed. App'x. 311 (10th Cir. 2012). DI 1415, at 3. But *Jackson* stands for no such proposition.

The plaintiff's lawyer in *Jackson* waited until four months after entry of the final pretrial order to withdraw four claims on the eve of trial. The defendant moved for sanctions pursuant to 28 U.S.C. § 1927 – which permits an award of excess costs incurred in consequence of unreasonable and vexatious multiplication of proceedings – on the theory that the delay in withdrawing the claims had been unreasonable and vexatious and had damaged the defendant. While the district court agreed that the delay in withdrawing the claims had been "objectively unreasonable," it denied sanctions on the ground that the plaintiff had failed to identify any excess costs attributable to the delay.

Here, Chevron has not yet withdrawn its prayer for damages against the Donziger Defendants and, indeed, may not do so. If it should withdraw that prayer, and if the Donziger Defendants feel that they improperly were put to excess costs by Chevron's delay in doing so, they may seek sanctions, as did the defendant in *Jackson*. But there certainly is nothing in *Jackson* that requires a litigant to determine by any particular date or point in a lawsuit whether it will withdraw particular requests for relief. It simply makes the obvious point that an unreasonable and vexatious delay that causes injury to an adversary may be sanctionable.

To be sure, the Court assumes it has the authority, as a matter of case management, to require Chevron to decide whether it will withdraw the request for damages. But it is not convinced that there is any persuasive reason to require that it do so immediately as opposed to its doing so in any event by the end of September, as it has said it will do.

As an initial matter, Chevron has referred to various contingencies concerning this

7

case that it ideally would like to have resolved before it comes to a conclusion on this issue.[14] There does not appear to be anything unreasonable or vexatious about its desire to have as much relevant information as possible before it makes such an important decision.

Naturally, in deciding whether the Court should set an earlier deadline for a decision, any legitimate competing interests on the Donziger Defendants' side would have to be balanced against Chevron's legitimate concerns. And the Donziger Defendants do argue that they are faced with 15 *in limine* motions, most of which, they say, would be "entirely irrelevant" and all of which allegedly would require a different type of response if the case were tried non-jury.[15] In essence, they say that forcing an earlier decision, depending upon what that decision would be, might spare them work that otherwise perhaps would not have to be done.[16] But this argument is at best overstated and at worst entirely specious.

Contrary to the Donziger Defendants' assertion, almost all of the *in limine* motions relate to matters that would be unaffected by whether the case is tried to a jury or to the Court. The only exceptions are two requests for rulings that the defendants may not make particular

---

[14] Tr., Sept. 3, 2013 [DI 1424], at 11:17-12:19.

[15] DI 1415, at 2.

[16] The Donziger Defendants contend that "Chevron's offer to make up its mind by the end of September is worthless [because] Defendants would be forced to . . . waste even more of their precious resources . . . engaging other [sic] jury-related work for a jury that may never be empane[]led." DI 1415, at 2-3. But Mr. Donziger yet again has failed to submit any competent evidence or affidavits supporting his claim of "limited resources," despite the Court's repeated invitations that he do so. In fact, filings from actions in Florida courts reveal that Mr. Donziger was entitled to receive nearly $2 million from family trusts within the last year. DI 1393-1; DI 1393-2; Stavers Decl [DI 1434], Exs. C, D.

8

inflammatory, prejudicial and confusing arguments, or submit such evidence, before a jury.[17] The Court, moreover, has deferred consideration of those matters until shortly before opening statements and excused defendants from responding to them in writing.[18] Thus, the few *in limine* motions to which defendants will have to respond will address only matters that would be just as significant if the case were tried non-jury as they would be if it were tried to a jury.

Next, the possibility that Chevron might drop its prayer for damages against the Donziger Defendants and thus eliminate a jury will not significantly affect the Donziger Defendants' trial preparation. As of now, their trial will be to a jury. Preparation for a jury trial necessarily is preparation for a bench trial. As Chevron argues, "[t]he same facts are at issue, the same witnesses will have to testify, and the same evidence will be presented."[19] Even an eve-of-trial shift from jury to non-jury seldom requires more than an adjustment in the opening statement to take account for the fact that the trial judge, unlike jurors, usually is quite familiar with the case as a result of pretrial proceedings. Moreover, even this modest possibility would be offset by the fact that a waiver of damages and a shift from a jury to a non-jury trial would have two enormous benefits for the Donziger Defendants. They would be relieved of the need to prepare to meet the damages claim and of the possibility of a nine figure damage award against them.

In the end, then, we are talking about a difference of less than two weeks in eliminating the uncertainty – always present but heightened by Chevron's voluntary, forthcoming, unnecessary, and repeated disclosures beginning *months ago* that it is considering dropping its

---

[17] DI 1388, Requests 3 and 5.

[18] DI 1420.

[19] DI 1433, at 1.

prayer for damages – as to whether Chevron will drop its prayer for damages against the Donziger Defendants. Will it be today or will it be some time on or before September 30?

The Donziger Defendants have not shown that Chevron's desire to have whatever relevant information it can have by September 30 before making that decision is either unreasonable or vexatious. Nor have the Donziger Defendants shown that they would be prejudiced in any significant way by waiting no more than twelve more days for Chevron to come to a decision. Moreover, if they ultimately feel that such a brief delay proved prejudicial, they could seek sanctions under Section 1927 provided they have a legitimate argument that Chevron's actions were unreasonable and vexatious and that they resulted in the Donziger Defendants incurring excess costs.

*Stay of Trial*

Chevron has represented that it will advise the Court and counsel of its decision on or before September 30, 2013. The trial is set to begin on October 15, 2013. Accordingly, the Donziger Defendants' motion to stay the trial until Chevron makes its decision makes no sense, at least now. The decision, it has represented, will be made before the trial date.

*Stay of Other Proceedings*

The Court already has explained in some detail why no stay of other proceedings would be warranted even if the start of the trial were delayed.[20] Any stay of other proceedings would serve only to create additional and entirely unnecessary delay.

---

[20] DI 1407, at 16-17.

*Conclusion*

For the foregoing reasons, the Donziger Defendants' motion [DI1417] is denied in all respects.[21]

SO ORDERED.

Dated:   September 17, 2013

_____
Lewis A. Kaplan
United States District Judge

---

[21] The Court has decided this motion without awaiting reply papers from the movants. It has done so because it concluded from the facts that (1) movants' proposed order to show cause made no reference to the possibility of submitting any reply papers, and (2) movants claimed that a virtually immediate ruling was necessary, that movants did not intend to file a reply. Should the Court have been mistaken in so concluding, movants may move for reconsideration of this ruling and submit any proposed reply with that motion. The Court then will consider their proposed reply.