# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

CHEVRON CORPORATION,

                Plaintiff,

      v.

STEVEN DONZIGER *et al.*,

                Defendants.

11-CV-0691

The Honorable Lewis A. Kaplan, U.S.D.J.
The Honorable James C. Francis, U.S.M.J.

# DEFENDANTS' OMNIBUS OPPOSITION
# TO CHEVRON CORPORATION'S MOTIONS *IN LIMINE*
# NOS. 1, 11, 12, 13 (DI 1389, 1399, 1400, 1401)

On September 8, 2013, Plaintiff Chevron Corporation filed fifteen (15) motions *in limine*. DI 1388-1403.  On September 12, 2013, the Court *sua sponte* denied all but a few of these motions, leaving 1 and 11-13 to oppose.  DI 1420.

Defendants Hugo Gerardo Camacho, Javier Piaguaje Payaguaje, Steven Donziger, Donziger & Associates, PLLC, and the Law Offices of Steven R. Donziger, LLC (collectively, "Defendants") file this omnibus opposition to Chevron's remaining motions *in limine* nos. 1, 11, 12, and 13.

## I.   OPPOSITION TO MOTION IN LIMINE NO. 1 (TO EXCLUDE IRRELEVANT AND PREJUDICIAL STATEMENTS REGARDING ALLEGED ENVIRONMENTAL ISSUES IN ECUADOR)

Chevron asks this Court in wholesale fashion to exclude any and all argument, witnesses, questioning, and evidence—including roughly 250 of Defendants' proposed exhibits identified in an appendix to Chevron's motion—that would "support the notion that the findings of the Cabrera report, the Ecuadorian judgment, or their allegations in the Ecuadorian proceeding were accurate or supported by evidence and sound scientific analysis."  DI 1389 at 2.  Chevron avers that any invocation of this subject matter will be "speculative," "confusing," "wasteful," "irrelevant," and "prejudicial."   DI 1389 at 1, 3, 6.   But Chevron's very own pretrial submissions—indeed, even this very Motion—demonstrate over and again that the validity of the underlying claims against Chevron cannot be neatly extracted from this case.  For example, Chevron admittedly plans to try to convince a fact-finder that the Lago Agrio Litigation lacked merit "in broad terms as the context for Defendants' scheme" (DI 1389 at 1-2)—*i.e*., Chevron's central narrative that Defendants resorted to fraud because they did not otherwise have a leg to stand on—yet would have this Court preemptively silence Defendants on this issue.

Defendants have no desire to re-litigate the merits of their environmental claims before this Court, nor do they intend to.  But the reality of Chevron's novel action—this "litigation

about litigation"—is that it is not amenable to a blanket rule that no one shall speak of the merits of the litigation alleged to be the centerpiece of a criminal enterprise.[1]  Setting aside the fact that merits issues are plainly relevant simply by virtue of the fact that Chevron cannot help but raise them in their own presentation, the arguments and evidence that Chevron seeks to exclude are also relevant for various fundamental, independent reasons.[2]

As discussed in greater detail herein, this evidence and argument is, for starters, highly relevant to the fundamental issue of motive.  Chevron's narrative is based in substantial part on circumstantial evidence—including characterizations of ambiguous emails, spin on what is shown on videos such as the *Crude* outtakes, and "expert" analysis of writing styles—from which Chevron claims that a fact-finder should infer a conspiracy to commit acts of fraud and extortion with the aim of procuring an ill-gotten judgment.  Do Defendants not have the right to convey that the inference Chevron would like a fact-finder to draw is not logical, in part because persons with meritorious claims would not be motivated to do what Chevron says they did?  In addition to motive, the broad swath of argument and evidence that Chevron seeks to preclude will in some cases be relevant to witness credibility, causation and damages, and the elements of RICO, including the "enterprise" requirement, at a minimum.

---

[1] As this Court previously explained, the fact-finder must have "the whole story of what went on in Ecuador and elsewhere leading to the Judgment. Understanding that entire story is vital to the resolution of this case." DI 905 at 61.

[2] Defendants cannot be expected, on an individualized basis, to explain why each of the 250 documents appearing in Chevron's appendix should not be excluded.  Instead, Defendants will address categories of documents.  Still, two points must be made about Chevron's appendix.  First, it includes nearly 100 documents proposed by Defendants in support of their unclean hands defense, for which Chevron's motion to exclude such evidence already was denied. DI 1420 at 2; *see, e.g.*, Appendix A, Exhibit Nos. 360, 379, 387-394, 396, 398-406, 417, 591-596, 611, 619-622, 653, 674, 879, 951-955, 957-959, 967-977, 979, 981-991, 1008, 1060-75 (submitted to the Court with Chevron's Proposed Pretrial Order on August 30, 2013).  Second, it includes documents unrelated--or at least not solely related to--"environmental and human harms."  Apparently, Chevron hopes that a grant of this blunderbuss motion will have the side-effect of precluding Defendants from using certain, multi-faceted, evidence for *any* purpose.

Chevron's desire to "streamline" does not excuse a denial of due process.  Nor does Chevron's highly-generalized fear of what it calls undue prejudice.[3]  The Court should dismiss the motion on the grounds that it lacks merit, or at least on the basis that it is premature and far too general.  Alternatively, should the Court be inclined to grant Chevron's Motion, the Court must also block Chevron just as rigidly from suggesting to the fact-finder that "the findings of the Cabrera report, the Ecuadorian judgment, or [the Lago Agrio Plaintiffs'] allegations in the Ecuadorian proceeding were [*not*] accurate or [*not*] supported by evidence and sound scientific analysis."

### A.  Chevron Continues to Raise Merits Issues to Which Defendants Must Respond.

Chevron's arguments and pretrial submissions demonstrate the hopelessness of attempting to exclude all evidence or argument concerning the merits of the underlying claims.[4]  For example, a key part of Chevron's narrative is that, because the judicial site inspections were going poorly for the Lago Agrio Plaintiffs—*i.e.*, not producing evidence of contamination—they "abandoned" the inspection process in favor of the allegedly fraudulent global damages assessment, and ultimately, ghostwriting the Judgment themselves.[5]  DI 745 at 14-16; DI 1349 at

---

[3] In determining whether to admit relevant, but potentially prejudicial, evidence, courts employ a balancing test, considering whether evidence might be so relevant that it nevertheless must be admitted.  *See United States v. Brennan*, 798 F.2d 581, 589 (2d Cir. 1986); *see also* F.R.E. 403.  Moreover, even if this Court accepts the possibility that certain evidence relating to the merits of the underlying claims against Chevron might prove unduly prejudicial relative to its relevance, granting this wholesale Motion is not the answer.  *See*, *e.g.*, *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) ("In assessing the risk of prejudice . . . , the trial court should carefully consider the likely effectiveness of a cautionary instruction that tries to limit the jury's consideration of the evidence to the purpose for which it is admissible."); *Delker v. Blaker*, No. 09-710, 2012 U.S. Dist. LEXIS 26857, at *13 (W.D. Pa. Mar. 1, 2012) (denying plaintiff's motion to exclude testimony, despite possible prejudice because the evidence was relevant, it would "clarif[y] certain issues for the jury," and "any potential prejudice . . . may be limited by an appropriate jury instruction"), *aff'd*, 488 F. App'x 650 (3d Cir. Nov. 6, 2012).

[4] In support of its argument to exclude evidence, Chevron cites a number of cases in which courts found that evidence of environmental harm was irrelevant and prejudicial.  DI 1389 at 6.  Those cases are inapposite.  All of those cases concern the attempted introduction of evidence related to entirely distinct, earlier environmental actions and damages not at issue in the cited cases.  The same cannot be said here.

[5] In fact, in support of its most recent partial summary judgment motion, Chevron explained that even if the Court granted it summary judgment, "Chevron would still have to otherwise establish the rest of its factual and legal claims" only with "less detail required about the judicial inspections, the LAP team's decision to push the court to

18.  It would be fundamentally unjust to allow Chevron even to infer such a thing, yet to preclude Defendants from presenting evidence showing that scientific evidence gathered in the inspections favored the Lago Agrio Plaintiffs.

Further, Chevron's proposed jury verdict form would require a jury to decide whether Defendants fraudulently "caus[ed] the Republic of Ecuador to file criminal charges against [Chevron] attorneys Rodrigo Perez Pallares and Ricardo Reis-Veiga" stemming from their role in a "remediation" that occurred in the late 1990s.  But the basis for those now-dropped criminal charges was that the remediation was a fraud on multiple levels—including the fact that supposedly remediated sites are contaminated today despite the fact that no other company has used them since Texaco left.  How can Chevron be permitted to argue that Defendants' alleged encouragement of the criminal proceedings was "fraudulent" and "extortionate," if Defendants are barred from proving that the remediation over which these two Chevron attorneys presided was indeed at least arguably fraudulent?[6]

Moreover, as this Court observed just days ago, Chevron's "claims rest on allegations that Steven Donziger . . . and others conceived . . . a scheme to extort and defraud Chevron, a U.S. company, by, among other things, (1) bringing the Lago Agrio case[.]"  DI 1407 at 13; *see also* DI 679 at 9.  In a similar vein, Chevron avers in this very Motion that "[t]he Ecuadorian rainforest and its residents served as props" in Defendants' alleged scheme to extort.  DI 1389 at 4.  Chevron's argument that "bringing the lawsuit" was itself culpable, and that the rainforest and

---

abandon them[.]"  DI 1349 at 18.  In the same vein, Chevron also continues to assert that Defendants "establish[ed] a fake 'monitorship' program to pressure certain court-appointed experts to reach favorable conclusions."  *See* Chevron Proposed Pretrial Order at 5; DI 745 at 14-16.  How can Chevron be permitted to claim that Defendants culpably steered experts to reach scientific conclusions, if Defendants cannot respond that the conclusions they wanted experts to reach were the right ones?  There is nothing "fraudulent" or otherwise culpable about telling an expert that you would really like him to find "x," if, in fact, "x" is the truth.

[6] Indeed, several exhibits listed on Chevron's Appendix A, for example, are relevant to Chevron's claims concerning TexPet's remediation of the Oriente.  *See, e.g.*, Appendix A, Exhibit Nos. 123, 710.

its residents were but convenient "props" for a lawyer's plan to extort, will be defeated by showing that the genesis of the Lago Agrio Litigation was not as Chevron describes it. Yet Chevron's Motion would have this Court exclude testimony from these supposed "props"—the community representatives who are the true driving force behind the litigation, notwithstanding Chevron's efforts to make it all about Donziger. DI 1389 at 4. That cannot be allowed. Nor can Chevron convey to a fact finder that the rainforest itself was but a prop in an extortionate scheme without invoking Defendants' right to show that the basis for the lawsuit was and is very real.

Chevron's pretrial submissions are, in fact, laden with the same type of evidence and argument that it seeks to exclude. Take, for example, Chevron's expert witnesses. Expert Pedro J.J. Alvarez will opine that the Judgment's soil remediation award of $5.4B is exaggerated, relies on overly-stringent standards, and is inconsistent with Ecuadorian practice. Ex. A (Excerpts from Alvarez Rpt.) Expert Edward Leamer will opine that certain other awards in the Judgment are unwarranted and inflated. Ex. B (Leamer Rpt.) Chevron cannot be permitted to attack the damages awards in this manner without triggering the quasi-re-litigation that the Court and Defendants—and supposedly, Chevron—wish to avoid.

Chevron's fact witnesses pose a similar problem. For example, Chevron plans to call David Russell, a former member of Defendant's scientific team. *See* Chevron Pretrial Order at 14. Chevron alleges that Defendants effected a "fraudulent scheme to publish David Russell's $6 billion remediation cost estimate after Dr. Russell had disavowed [its] validity." DI 1378 at 4. And the ultimate conclusion of Russell's declaration submitted in this action—and, presumably, the subject matter of his trial testimony—is that, "[b]ased on all of the scientific information I have seen, I am certain that Donziger and the plaintiffs are *lying about the environmental conditions in Ecuador*." DI 1141-02 at 62-73 (emphasis added). It is impossible

to see how Chevron could be permitted to prove any "fraud" relating to Russell without invoking Defendants' right to disprove Russell's contention that the damage in Ecuador is less than what Defendants have alleged.  Similarly, Douglas Beltman and Ann Maest also appear on Chevron's witness list.  *See* Chevron Pretrial Order at 13, 14.  These two witnesses have "[d]isavow[ed] any and all findings and conclusions in all of [their] reports and testimony on the Ecuador project," and have made such sworn claims as: "I am not aware of any credible scientific evidence that supports the statement that TexPet's operation of the concession ravaged thousands of square miles of once-pristine rainforest . . . ."  *See* DI 1007-01 at 43, 45, 60, 62.  If these witnesses are going to testify regarding the content of their sworn statements, Defendants must be permitted to disprove these allegations.  And even if these witnesses are called for some other, narrower, purpose, evidence showing that they have lied in sworn declarations submitted to this Court— *i.e.*, showing their *awareness* of credible scientific evidence supporting the Lago Agrio Plaintiffs' claims—goes to their credibility.[7]

Exhibit "A" to Chevron's proposed pretrial order also lists nearly 100 proposed exhibits whose descriptions make clear that they relate to "environmental and human harms" in Ecuador. For example, a number of exhibits relate to TexPet's remediation of well sites and the attendant settlement and release agreement.  *See* Chevron Proposed Exhibit List at PX211-232, PX237-238, PX 239-240, PX 242-243, PX 245-247, and PX2248-2304.  Others exhibits appear to be judicial inspection reports (*id*. at PX249-250), reports on disease (*id*. at PX241), and demonstratives concerning soil remediation costs and TPH clean-up standards required by the Judgment (*id*. at PX2130-2131).

---

[7] *See, e.g.*, *Conte v. AGF Assocs.*, No. 3:96CV177, 1999 U.S. Dist. LEXIS 21482, at *7-8 (D. Conn. Sept. 3, 1999) (admission of expert report that "contradicted [plaintiff's] testimony" and "undermined her credibility" not improper and "any prejudicial effect on the plaintiff's credibility . . . did not constitute unfair prejudice").

**B.  What Chevron Seeks to Exclude Is Relevant for a Host of Independent Reasons.**

Even if Chevron never presents any evidence or argument at trial suggesting that the case against it lacked merit—a near, if not total, impossibility—this subject matter cannot wholesale be deemed irrelevant for a number of additional, independent reasons.

**Motive.**  Chevron's claim that "the environmental conditions in Ecuador, whatever they may be, have no tendency to make any fact of consequence in determining this action 'more or less probable'" is false.  In fact, the merits of the underlying claims bear directly on the plausibility of Chevron's factual allegations to begin with—never mind their legal consequence.  Indeed, RICO claims routinely fail for lack of an established motive.[8]  In determining whether to believe Chevron's narrative or Defendants' counter-narrative of alleged "fraudulent" events, a fact-finder must be permitted to consider whether it makes sense that persons in Defendants' shoes would behave the way that Chevron has alleged.  For example, presented with Chevron's evidence of "overlapping word strings" and other such circumstantial evidence, as well as the testimony of a dubious witness paid hundreds of thousands of dollars by Chevron, the fact-finder will ask, "do I believe that these defendants would have actually risked it all by conspiring with someone like Judge Guerra to ghostwrite the judgment?"  The answer to that question is much more likely to be "no"—and rightly so—if it is the case that the merits were squarely in Defendants' favor.  This Court cannot preclude Defendants from showing a fact-finder that they had no reason to do what Chevron claims they did.

**Causation and Damages.**  Chevron argues that the merits of the Lago Agrio Plaintiffs'

---

[8] *See, e.g., Turkish v. Kasenetz*, 27 F.3d 23, 28 (2d Cir. 1994) (discussing relevance of defendants' motive to commit fraud for predicate RICO violation); *Harrell v. Primedia, Inc.*, No. 02-cv-2893 (JSM), 2003 U.S. Dist. LEXIS 13595, at *8-9 (S.D.N.Y. Aug. 5, 2003) (dismissing complaint that did not "allege any facts suggesting that the Defendants had any motive to commit the massive fraud alleged.  The mere fact that Defendants had a desire to see the company succeed does not provide a motive to engage in serious fraud."); *De Jesus v. Sears, Roebuck & Co.*, No. 93-cv-2605 (MBM), 1995 U.S. Dist. LEXIS 3556, at *15-17 (S.D.N.Y. Mar. 22, 1995) (dismissing RICO claims where evidence showed that defendant had no motive to commit the alleged fraud).

claims are not relevant to "causation" and "damages" because, supposedly, Chevron only seeks recompense for losses "incurred in exposing Defendants' ghostwriting and bribery of Ecuadorian court officials, and their subsequent use of that material to pressure Chevron."  DI 1389 at 8.  But this is simply not true.  Chevron also seeks damages flowing directly from entry of the Judgment. For example, Chevron seeks damages "not less than $111.6 million to compensate it for injury caused by actual enforcement of the fraudulent judgment in Ecuador . . . ."  *See* Chevron Pretrial Order at 18.  Chevron also seeks to attach, and to impose a constructive trust upon, Defendants' interest in the Judgment.  *Id.* at 19.  As such, the merits of Lago Agrio Plaintiffs' claims are highly relevant to causation and damages—*i.e.*, are Chevron's Judgment-related losses the proximate result of alleged fraud, or would some or all of those losses in fact be the same absent fraud, on the strength of the evidence?

To circumvent this problem, Chevron beats up a straw-man, suggesting that inherent in Defendants' position is a belief that the "correctness of judicial action taken for a price removes the stain of corruption and exonerates the judge[.]"  DI 1389 at 8.  Defendants are not talking about whether the judge alleged to have engaged in corrupt acts should be exonerated. Defendants are talking about whether that alleged corruption is the legal cause of Chevron's damages—a legal question that has nothing to do with the morality of what is alleged to have occurred.

**Enterprise.**   As noted above, Chevron contends that "eight witnesses identified as 'Afectados representative' can have no purpose other than to inject irrelevant environmental issues," into the case.[9]  DI 1389 at 5.  That is false.  A RICO plaintiff must demonstrate the

---

[9] The anticipated testimony of the Afectados' representatives also forms part of Chevron's tenth *in limine* motion seeking to exclude certain witnesses at trial, which this Court denied *sua sponte* without prejudice to Chevron's objection "in the event the evidence in question actually is offered at trial. None of these matters is sufficiently complex as to require determination in advance of trial."  *See* DI 1398; 1420 at 2.

existence of an "enterprise," whose members engaged in its conduct through a pattern of racketeering activity.[10]   The composition and nature of the "enterprise" is crucial to the analysis of whether a particular RICO action constitutes an impermissible extraterritorial application of the statute.  Plainly, Chevron wishes to block any testimony tending to show that the Lago Agrio Litigation is *not* the tool of a supposed enterprise controlled by Steven Donziger in the United States.  Rather, what is claimed to be a criminal "enterprise" driven by U.S. lawyers is actually a meritorious legal campaign driven by the Ecuadorians injured by the conduct of Chevron's predecessor.  The testimony of the Afectados' representatives will establish that they and the devastation they have suffered at the hand of Chevron are the driving force behind what Chevron calls an "extortion" campaign—what any rational person presented with all of the evidence would conclude is an effort to redress Chevron's destruction of their homeland and way of life. Not even Chevron could muster an argument that this testimony is irrelevant.  Chevron has thus far enjoyed litigating in the U.S. with the advantage of portraying the Afectados as "phantom" plaintiffs to suit its anti-Donziger narrative.  The fact that Chevron might be deprived of this illusion at trial does not constitute cognizable "prejudice."

### C.   If the Court Grants Chevron's Motion, it Must Similarly Bind Chevron.

If the Court is inclined to grant this Motion, it must likewise bar Chevron from introducing evidence or argument that might suggest to the fact-finder that the Lago Agrio Plaintiffs' claims lacked merit.  (*See supra* at Section 1.)  Chevron cannot have its cake and eat it too.

For all the foregoing reasons, Chevron's motion *in limine* #1 should be denied.

---

[10] "Enterprise," is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  And a RICO plaintiff must prove that a "person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  *See* 18 U.S.C. § 1961, 1962(c).

Alternatively, if the Court grants Chevron's motion in whole or in part, the Court's order must likewise preclude Chevron from presenting any evidence or argument tending to show the inverse of that which Defendants are barred from proving.

## II.   OPPOSITION TO MOTION IN LIMNE NO. 11 (TO PRECLUDE EXPERT TESTIMONY FROM ANY WITNESS NOT PROPERLY DESIGNATED UNDER RULE 26)

Chevron asks this Court to enter an order precluding expert testimony from any witness not properly and fully disclosed as an expert.[11]  DI 1399, at 1-2.  Defendants are opposed to this request for the following reasons.

First, Chevron's motion proceeds on the flawed assumption that defendants intend to call persons listed as fact witnesses to testify as retained expert witnesses without satisfying the requirements of Rule 26.  That is not the case.  Defendants have clearly identified their retained experts in their pretrial submissions, and disclosures pursuant to Rule 26(a)(2)(B) have been properly made as to each of them.

To the extent that people with expertise in a particular subject matter appear listed as fact witnesses on defendants' pretrial submissions, such persons are certainly qualified to testify as to facts regarding their involvement and are listed to give factual testimony on the work they performed and the nature of their findings.  Additionally, to the extent that they may be called upon to give an expert opinion during their fact testimony, they may be so qualified under Rule 702 and the scope or permissibility of such testimony should be determined on a case by case basis following a specific objection to a particular question.  *See* Fed. R. Civ. P. 26(a)(2)(C)

---

[11] Chevron's motion *in limine* no. 11 includes but is not limited to Douglas Beltman, Ann Maest, Mark Quarles, David Chapman, Charles Champ, William Powers, Richard Kamp, John Connor, GSI Environmental, Richard Cabrera, Lawrence Barnthouse, Jonathan Shefftz, Douglas Allen, Robert Scardina and Carlos Emilio Picone.  DI 1399, at 1-2.

(permitting witnesses who do not provide a written report to give expert opinions at the discretion of the Court); *see e.g. U.S. v. Daccarett*, 6 F.3d 37, 58 (2d Cir. 1993) (permitting qualified agents who testify as fact witnesses to give expert opinion testimony without providing expert testimony in writing to opposing counsel in advance); *see e.g. Reilly v. Revlon, Inc.,* 2009 WL 2900252, at *3 (S.D.N.Y. Sept.9, 2009) ("Treating physicians do not need to be designated as experts in order to testify.  Furthermore, treating physicians, like all other fact witnesses, may give opinion testimony about plaintiff's condition and emotional damages pursuant to Fed. R. Ev. 702.").

In this case, Chevron has full knowledge of the work performed by certain fact witnesses with expertise listed in Defendants' witness lists by virtue of those witness's writings, reports and analyses generated and produced throughout the course of the underlying litigation in Ecuador.  Chevron can hardly claim surprise regarding the work performed and opinions possessed by persons such as Douglas Beltman and Ann Maest, among others.  Thus, to the extent that such witnesses' knowledge "will help the trier of fact understand the evidence or determine an issue; the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has readily applied the principles and methods to the facts of the case, the Court may allow such a witness to testify as an expert.  Fed. R. Evid. 702.[12]  *See also Bank of China, New York Branch v. NBM, LLC,* 359 F.3d 171, 181-82 (2d Cir. 2004) (holding in a RICO case that the lay opinion testimony of fact witness assigned to conduct an investigation was admissible to the extent it was based on the witness's observations and reflected his investigatory findings and conclusions and was not rooted exclusively in his expertise).  "Such opinion testimony is admitted not because of experience, training or

---

[12] Additionally, there is no dispute that fact witnesses may also give opinion testimony under limited certain circumstances, pursuant to Rule 701.

specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his [ ] position in the business." *Id.* at 181 (quoting Fed. R. Evid. 701 advisory committee's note) (internal quotation marks omitted).  Depending on the resolution of Chevron's other motions *in limine* and the course of Chevron's case-in-chief, defendants may seek to qualify fact witnesses to give opinion testimony pursuant to these precedents.

Bottom line, this is a matter best left to the Court's discretion when and if any such witness is called to testify in this manner and there is no need to resolve the scope of any questioning here on this motion before trial in the abstract.

For these reasons, Chevron's motion *in limine* no. 11 should be denied.


**III.   OPPOSITION TO MOTION IN LIMINE NO. 12** (TO EXCLUDE THE EXPERT TESTIMONY OF RAUL ROSERO RIVAS, FARITH RICARDO SIMON AND JUAN PABLO ALBAN ALENCASTRO)

Chevron asks this Court enter an order precluding Defendants from presenting at trial the testimony of Raúl Rosero Rivas, Farith Ricardo Simon Campana, and Juan Pablo Alban Alencastro as experts on Ecuadorian law.  DI 1400.  Defendants are opposed to this request for the following reasons.

**A.  Rosero – a Former Assistant Prosecutor with Experience Investigating Crimes by Government Officials – Is Qualified to Testify as a Legal Expert on Criminal Law.**

"To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin,* 371 F.3d 31, 40 (2d Cir.2004).  In this instance, Raúl Rosero Rivas is offered to opine whether (1) acts admitted by Judge Alberto Guerra Bastidas in his sworn declaration of November 17, 2012 constitute a breach of

Ecuadorian law; (2) whether Chevron violated Ecuadorian law by transferring Judge Guerra from Ecuador to the United States and keeping him in this country beyond the reach of competent Ecuadorian criminal authorities; and (3) whether Judge Guerra's testimony would be considered valid under Ecuadorian law in light of his receipt of $12,000 monthly payments and other economic benefits from Chevron.  Ex. C (Rosero Rpt.).  It is beyond dispute that Mr. Rivas possesses superior knowledge, education and experience in the interpretation of Ecuadorian criminal law.  First, Mr. Rivas has been licensed as an Ecuadorian attorney since 1998 and possesses a Doctor of Jurisprudence degree.  Ex. D at 18 (Rosero Depo.).  Following his degree, he took courses and seminars in criminal law in Ecuador, Colombia and Peru between 2001 and 2002.  Ex.D at 20 (Rosero Depo.).  He received "continuous training on issues related to litigation and criminal" law as an officer of the Attorney General's office.  Ex. D at 21 (Rosero Depo.)..  He was a prosecutor at the Office of the Attorney General from 2002 until August of 2008.  Ex. D at 15 (Rosero Depo.).  As a prosecutor he was assigned to the "accusatory and preliminary investigations office."  Ex. D at 55-56 (Rosero Depo.).  His was primarily involved with criminal investigations of officials, ranging from traffic accidents, attempted murder, misappropriation, malfeasance, and crimes against public administration.  Ex. D at 57 (Rosero Depo.).  As one of two assistant attorneys general, Mr. Rivera's role was to help the Attorney General carry out the preliminary investigation.  Ex. D at 58 (Rosero Depo.).  Based on the investigations Mr. Rivera conducted the Attorney General would make an ultimate decision whether to bring charges or to dismiss charges.  Ex. D at 61 (Rosero Depo.).

"Courts must consider the totality of a witness's background when evaluating the witness's qualifications to testify as an expert."  *Argonaut Insurance Co. v. Samsung Heavy Industries, Co. Ltd.*, 2013 WL 936538, at *10 (N.D.N.Y. 2013) (citing *Keenan v. Mine Safety*

*Appliances Co.,* 2006 WL 2546551, at *2–3 (E.D.N.Y.2006) (internal quotation marks omitted). In this case, although Chevron has omitted discussion of Mr Rivera's practical experience as a prosecutor, this Court cannot.  "Witnesses can qualify as experts under Rule 702 on the basis of practical experience alone, and a formal degree, title, or educational speciality is not required." *Id.*  Indeed, "[i]n assessing expert qualifications, [l]iberality and flexibility in evaluating qualifications should be the rule; the proposed expert should not be required to satisfy an overly narrow test of his own qualifications."  *Id.* (quoting *Lappe v. American Honda Motor, Co., Inc.,* 857 F.Supp.222, 227 *aff'd* 101 F.3d 682, 1996 WL 170209 (2d Cir.1996) (expert qualified to testify on automobile design even though he did not design automobiles for a living). Furthermore, "[a] person knowledgeable about a particular subject need not be precisely informed about all the details of the issue raised in order to offer an opinion." *Id.* (quoting *King v. Brandtjen & Kluge, Inc.,* 2001 WL 1804345, at *2–7 (W.D.N.Y.2001) (citing *Thomas J. Kline, Inc. v. Lorillard, Inc.,* 878 F.2d 791, 799 (4th Cir.1989)).  Thus, on the basis of his education and practical experience as a prosecutor, Mr. Rivera is clearly qualified to render the opinions proffered.

### B.  Defendants' Ecuadorian Law Experts Proffer Opinions that Are Relevant to the Facts at Issue in this Case.

Chevron argues that the opinions of defendants' Ecuadorian law experts – Farith Ricardo Simon Campana, Juan Pablo Alban Alencastro and Raul Rosero Rivas – are unrelated to the facts, irrelevant or both.  Not so.

Federal Evidence Rule 702 requires that "the evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue.  This condition goes primarily to relevance." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993) (internal quotation marks omitted).  Only "expert testimony which does not relate to any issue in the case

is not relevant and, ergo, non-helpful." *Id.* (quoting 3 Weinstein & Berger ¶ 702[02], p. 702–18)

**Farith Ricardo Simon.**  He opines on the following questions: (1) whether there is any provision in Ecuadorian law prohibiting one of the parties in a civil suit from meeting a person, before he is appointed an expert in a trial, without the presence of the opposing party; (2) whether there is any provision in Ecuadorian law prohibiting one of the parties in a civil suit from meeting the expert appointed to his case, to discuss a work plan or organize the way the studies or the investigations will be conducted to comply with the duties assigned to him in the trial, without the presence of the opposing party.  Ex. E (Simon Rpt.)

Since day one Chevron has alleged that *ex parte* meetings with court appointed global damages expert Richard Cabrera were improper.  *See* DI 283, at 51-52, 63-64, and have retained two experts to opine on the impropriety of *ex parte* contacts with Cabrera or whether conduct with Cabrera violates Ecuadorian law, Messrs. Gustavo Romero Ponce and Jorge Wright-Ycaza. In light of these allegations (not to mention Chevron's own retention of experts on this subject) Mr. Simon's opinions are clearly relevant to the issues in this case and will be helpful to the trier of fact.

**Juan Pablo Alban Alencastro.**  He opines on the following questions: (1) whether under Ecuadorian law a client can be held liable for the acts of a client's attorney; (2) whether defendants Camacho and Piaguaje can be held liable for the alleged fraudulent or criminal acts committed by their common representative, Pablo Fajardo, or other attorneys who have represented them, including Juan Pablo Saenz and Julio Prieto in the Ecuadorian litigation at issue; and (3) whether Ecuadorian law prohibits *ex parte* contact between an attorney or representative of a party and presiding judge.  Ex. F (Alban Rpt.).

For reasons already discussed *supra*, legal opinions regarding the propriety or

impropriety of *ex parte* contacts under Ecuadorian law are central to Chevron's allegations.

As for Mr. Alban's opinion regarding the liability of a party for the acts of his agent, Chevron is clearly seeking a determination that Defendant Steven Donziger was acting as an agent of Defendants Camacho and Piaguaje when false statements or omissions were made, or that they ratified such conduct. *See* Plaintiff Chevron Corporation's Proposed Special Verdict Form, DI 1378 at 11, 14. Chevron claims that "the most telling confirmation of Camacho and Piaguaje's knowledge and participation is their continued participation in this ongoing conspiracy, and their failure to disavow the misconduct committed by their agents, in their names." Chevron's Response to Interrogatory No. 3 Propounded by Defendants Camacho and Piaguaje. Since the conduct in question occurred in Ecuador, in relation to an Ecuadorian legal proceeding under the responsibility of Ecuadorian attorneys as counsel of record, then Ecuadorian agency law must control the question of defendants' ratification. *Cf. Genger v. Sharon*, 2012 WL 3854883 at * 4 (S.D.N.Y. 2012) (holding "New York choice of law principles require a court to "apply the [agency] law of the state with the most significant relationship with the particular issue in conflict"). Though this Court is not sitting in diversity as the Court in *Genger* did, to the extent that this Court is applying Ecuadorian law to assess the propriety of *ex parte* conduct within the context of the Ecuadorian litigation, it must also apply to Ecuadorian law to govern the contractual relationships between parties in Ecuador – otherwise, its choice of law is arbitrary. To the extent that clients are not liable for the actions of their attorneys under Ecuadorian agency law – the subject of Mr. Alban's proferred opinion – defendants Camacho and Piaguaje were not obligated to disavow the acts of their clients to avoid liability and may not be held liable for their agents' alleged conduct.

**Raul Rosero Rivas.**  As detailed *supra,* he opines on the Ecuadorian legality of Judge Guerra's conduct and Chevron's interaction with him.  Ex. C (Rosero Rpt.).  His opinions are relevant to Guerra's and Chevron's credibility.  To the extent that Judge Guerra's admitted conduct violates Ecuadorian law, he has motive to escape criminal liability in Ecuador by cooperating with Chevron to secure financial assistance to escape prosecution.  Defendants are entitled to present Mr. Rosero's opinions to demonstrate that Guerra has ulterior motives for the story he tells.  Thus, the opinions set forth by Mr. Rosero are essential to place Judge Guerra's testimony and conduct in proper context and helpful to assess the credibility of his testimony.

For all of these reasons, Chevron's motion *in limine* no. 12 should be denied.

## IV.     OPPOSITION TO MOTION IN LIMINE NO. 13 (TO SAFEGUARD TESTIFYING WITNESSES DOE 3 AND DOE 4)

Chevron requests that this Court enter an order providing that witnesses identified publicly as "Doe 3" and "Doe 4" testify <u>before</u> trial in a closed setting outside the presence of the defendant parties; and submit their transcribed testimony to the Jury outside of public view; while maintaining any trial exhibits describing or containing Doe 3's and Doe 4's identities secret.  DI 1401.  Defendants oppose this request for the following reasons.

### A.     Chevron Cannot Justify the Use of Secret Witnesses.

Secret witnesses are repugnant to American legal principles.  *See e.g California v. Green,* 399 U.S. 149, 179 (1970) (Harlan, concurring) ("[T]he Confrontation Clause was meant to constitutionalize a barrier against flagrant abuses, trials by anonymous accusers and absentee witnesses."); *see also Coy v. Iowa,* 487 U.S. 1012, 1016 (1988) ("We have never doubted, therefore, that the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact").  The right to confront an accuser can be traced

17

back to "the beginnings of Western legal culture," it existed in England before the right to a jury trial, and even under Roman Law.  *See Coy* at 1015-16.  Although the Confrontation Clause is not applicable in civil cases, its safeguards should be treated with considerable weight here since this is a quasi-criminal proceeding.  *See Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990) ("A civil RICO suit is in effect quasi criminal in nature.")

In light of these principles, Chevron must meet a significant burden to justify the use of anonymous witnesses at trial and this Court has the obligation to protect the integrity of these proceedings, the due process rights of the accused and the right of public access.  Chevron cannot meet this high burden.

First, Chevron bears the burden of demonstrating that the threat to its witnesses is "actual and not the result of conjecture."  *U.S. v. Ramos-Cruz* , 667 F.3d 487, 501 (4th Cir. 2012).  Second, in every case cited by Chevron, an actual threat of physical harm or acute emotional distress provided the basis for maintaining the identity of a testifying witness secret.  *See e.g. Ramos-Cruz, supra* (involving member of subgroup with ties to notorious international gang called MS-13 and potential physical to harm to witnesses); *Carhart v. Ashcroft*, 300 F. Supp. 2d. 921 (D. Neb. 2004) (finding that witness's life would truly be endangered should his or her identity be disclosed); *Doe v. Meacham*, 126 F.R.D. 452, 455 (D. Conn. 1989) (permitting pseudonyms for AIDS infected prisoners challenging discriminatory prison policies where disclosure of identity risked harassment, psychological pressure, discrimination, and the loss of dignity and individuality in prison).  Additionally, defendants have found no case permitting the identity of testifying witnesses or the substance of their testimony to be kept wholly secret from counsel.  In this case Chevron cannot satisfy these requirements to justify the use of the specific procedures it requests on behalf of Doe 3 and Doe 4.

18

To begin with neither Doe 3 nor Doe 4 have provided this Court with any evidence of any actual threat of physical harm if their identities are disclosed, or even any potential threat of physical harm. Their sealed declarations are devoid of any claim of direct threats to them or their families whatsoever, much less the required threat of physical harm. Their sealed declarations contain no example of physical harm befalling any other witness who has testified in the long history of this case, or their families. Outside of the sealed declarations there is no claim whatsoever by either of these witnesses that they have been directly threatened with physical harm or face any actual threat of such harm. There is no evidence whatsoever that defendants have caused or threatened anyone with physical harm, especially any witness or prospective witness. Chevron has argued publicly that defendants or their legal representatives have threatened legal action against witnesses who defame or commit perjury in proceedings related to the Ecuadorian litigation, however, the promise to assert legal rights or justiciable claims does not constitute a threat. *See U.S. v. Twenty Miljam 350 IED Jammers*, 669 F.3d 78, 89 (2d Cir. 2011) (citing New York law for the proposition that "the threatened exercise of a legal right cannot constitute duress"). As a result, the alleged fears of harm claimed by Chevron are conclusory, speculative and insufficient to justify the use of secret witnesses in this case.

Furthermore, *pro se* defendant Steven Donziger, is also legal counsel in this case to his defendant law firms. As counsel he is entitled to know the identities of witnesses, the substance of their testimony, and possesses the right to cross-examine them on behalf of his client defendant parties. No case cited by Chevron (or found by defendants) permits the complete anonymity of a witness's identity and testimony from legal counsel as Chevron proposes. Such a request is too extreme for any court and would eviscerate the Donziger defendants' right to due process entirely.

19

For these reasons, Chevron cannot meet its heavy burden to demonstrate a genuine need for secret witnesses at trial and this Court must deny Chevron its request to employ secret witnesses.

**B.      Chevron Cannot Justify Closing these Proceedings to the Public.**

Similarly, Chevron cannot meet the requirements for closed proceedings vis-à-vis the Doe witnesses.

"A trial is a public event.  What transpires in the court room is public property." *Craig v. Harney*, 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546 (1947) (Douglas, J.).  "One of the demands of a democratic society is that the public should know what goes on in courts by being told by the press what happens there, to the end that the public may judge whether our system of criminal justice is fair and right."  *Maryland v. Baltimore Radio Show, Inc.*, 338 U.S. 912, 920, 70 S.Ct. 252, 255-256, 94 L.Ed. 562 (1950) (Frankfurter, J., dissenting from denial of certiorari).  "It is true that the public has the right to be informed as to what occurs in its courts, . . . reporters of all media, including television, are always present if they wish to be and are plainly free to report whatever occurs in open court . . . " *Estes v. Texas*, 381 U.S. 532, 541-542, (1965); *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n. 17 (1980) (noting that "historically both civil and criminal trials have been presumptively open").  In view of these principles, a party seeking closure of a public trial bears a heavy burden.

To secure closure of the trial to the public Chevron must demonstrate (1) a substantial probability of prejudice to a compelling interest of the Doe witnesses; (2) demonstrate that reasonable alternatives to closure cannot adequately protect the interest; and (3) that the compelling interest overrides the qualified First Amendment right of access to these proceedings. *U.S. v. Doe*, 63 F.3d 121, 128 (2d Cir. 1995).  Even if Chevron were capable of meeting these

requirements – which it does not – this Court must devise a narrowly tailored means of closing the proceedings. *Id.* at 130.

In this case, as stated, the so-called compelling interest of the Doe witnesses in support of closing these proceedings to the public is a conclusory and implausible allegation of danger. On that basis alone this Court must deny Chevron's motion *in limine* no. 13. But even if the Court were to permit Doe 3 and Doe 4 to keep their identities secret, it cannot deprive the jury of the opportunity to gauge their demeanor during testimony and cross-examination. *See California v. Green*, 399 U.S. 149, 158 (1970) (recognizing that confrontation of a witness in open court is crucial because it "(1) insures that the witness will give his statements under oath-thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness making his statement, thus aiding the jury in assessing his credibility.") (internal quotation marks omitted). Indeed, "[c]ases emphasizing the importance of demeanor as an aid to the determination of credibility are too numerous and well-known to require extended citation." *U.S. ex rel. Graham v. Mancusi*, 457 F.2d 463, 469 (2d Cir. 1972). In light of these precedents, and the fact that dispositive issues in this case (i.e., the ghostwriting of the Judgment) hinge on the credibility of key witnesses, Chevron is not entitled to shield the credibility of its witnesses from jurors' scrutiny.

For these reasons, Chevron's motion *in limine* no. 13 should be denied entirely. It is time for Chevron's secret witness to come out of the shadows once and for all.

Respectfully submitted,

Date: September 19, 2013                         GOMEZ LLC
                                                Attorney At Law

                                    By:    _s/ Julio C. Gomez_____
                                           Julio C. Gomez

                                           The Sturcke Building
                                           111 Quimby Street, Suite 8
                                           Westfield, NJ
                                           Telephone: 908.789.1080
                                           Facsimile: 908.789.1081
                                           Email: jgomez@gomezllc.com

                                           *Attorney for Defendants*
                                           *Hugo Gerardo Camacho Naranjo and*
                                           *Javier Piaguaje Payaguaje*


Date: September 19, 2013             By:    _s/ Steven R. Donziger_____
                                           Steven R. Donziger
                                           245 W. 104th Street, #7D
                                           New York, NY 10025
                                           Telephone: 917.678.3943
                                           Facsimile: 212.409.8628
                                           Email: StevenRDonziger@gmail.com

                                           *Pro Se*


                                           LAW OFFICES OF
                                           STEVEN R. DONZIGER, P.C.

Date: September 19, 2013             By:    _s/ Steven R. Donziger_____
                                           Steven R. Donziger
                                           245 W. 104th Street, #7D
                                           New York, NY 10025
                                           Telephone: 212.570.4499
                                           Facsimile: 212.409.8628
                                           Email: StevenRDonziger@gmail.com

                                           *Attorney for Defendants Law Offices of*
                                           *Steven R. Donziger LLC and Donziger &*
                                           *Associates, PLLC*

22