UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
CHEVRON CORPORATION,                                   :
:
                         Plaintiff,                    :
:
          -against-                                    :
:     Case No.  11 Civ.  0691 (LAK)
:
STEVEN R.  DONZIGER, et al.,                            :
:
                         Defendants.                   :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## CHEVRON CORPORATION'S OPPOSITION TO
## DEFENDANTS' JOINT FOREIGN WITNESS APPLICATION


GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 3

I.      Defendants Have Forfeited Their Opportunity to Offer Zambrano's Testimony .............. 3

II.     Reasonable Safeguards Are Necessary to Prevent Prejudice Against Chevron ................. 7

CONCLUSION ........................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

### Cases

*Blackmon v. Olney,*
2007 WL 2332328 (W.D. Mich. Aug. 13, 2007)........................................................... 11

*Condit v. Dunne,*
225 F.R.D. 100 (S.D.N.Y. 2004) ................................................................................. 11

*Doe v. Karadzic,*
1997 WL 746512 (S.D.N.Y. Dec. 3, 1997) ................................................................... 9

*Eli Lilly & Co. v. Actavis Elizabeth LLC,*
2010 WL 1849913 (D.N.J. May 7, 2010)..................................................................... 10

*Good Stewardship Christian Center v. Empire Bank,*
341 F.3d 794 (8th Cir. 2003) ..................................................................................... 12

*Hansen v. Umtech Industrieservice Und Spedition,*
1996 WL 732556 (D. Del. Dec. 9, 1996) ..................................................................... 11

*In re Messerschmitt Bolkow Blohm Gmbh,*
757 F.2d 729 (5th Cir. 1985) ..................................................................................... 10

*Marron v. HO Penn Machinery Co.,*
518 F. Supp. 1069 (D. Conn. 1981) .............................................................................. 1

*Pritchard v. County of Erie,*
2006 WL 2927852 (W.D.N.Y. Oct. 12, 2006) ............................................................. 12

*Reorganized Church of Jesus Christ of Latter Day Saints v. U.S. Gypsum Co.,*
882 F.2d 335 (8th Cir.1989) ...................................................................................... 10

*Sedie v. United States Postal Serv.,*
2009 WL 4021666 (N.D. Cal. Nov. 19, 2009) ............................................................. 12

*Semke v. Enid Auto. Dealers Assoc.,*
52 F.R.D. 518 (D. Okla. 1971) ................................................................................... 10

*United States v. 2,164,341 in US Currency,*
2013 WL 321768 (D. Ariz. Jan. 28, 2013) .................................................................... 9

*Walker v. Yellow Freight Sys.,*
1999 WL 321768 (E.D. La. Sept. 23, 1999)................................................................. 10

*World Wide Ass'n of Specialty Programs v. PURE, Inc.,*
2004 WL 5620058 (D. Utah July 20, 2004) ................................................................ 11

## PRELIMINARY STATEMENT

Four months ago, Defendants' co-conspirator Nicolás Augusto Zambrano failed to appear at his deposition. Now, Defendants ask this Court to excuse that failure and make an exception from both its own order and the normal course of litigation by permitting Zambrano to testify at trial. This, even as Defendants seek to preclude Chevron from calling as witnesses three of Defendants' former co-conspirators and another victim of their fraud. Dkt. 1422. But Zambrano has been cooperating with Defendants throughout, meeting with their counsel a year-and-a-half ago, and giving them a signed statement. This request should be denied as another instance of Defendants' disregard for this Court's orders and the Federal Rules. "[T]he liberal discovery encouraged by the Federal Rules of Civil Procedure was intended to avoid just the sort of 'trial by ambush' attempted by defendant here." *Marron v. HO Penn Machinery Co.*, 518 F. Supp. 1069, 1073 (D. Conn. 1981). Even as they seek relief by this application, Defendants provide no substantiation that Zambrano will appear or has the requisite visas to travel here, and unreasonably offer only a deposition in the middle of trial or that Zambrano be deposed in Ecuador where Chevron's U.S. attorneys have been publicly vilified and would not be safe.

Should the Court nevertheless permit Defendants to attempt to offer Zambrano's testimony at trial, Chevron is entitled to reasonable protections from further manipulation of the discovery process by Defendants: Zambrano's judicially supervised deposition should be conducted in New York well in advance of trial as a seven-hour discovery deposition by Chevron; Defendants should be required to produce well in advance of the deposition any relevant documents, which they have so far refused to do; Zambrano should be required to commit that he will return to New York for the trial at either party's behest, and if he fails to honor the request, his deposition should not be permitted to be offered by the LAPs at trial; and the Court should impose other incidental protections.

1

Defendants' corrupt relationship with Zambrano is long-standing, and it is consistent with his disregard for the law.  As a prosecutor and then as a judge in Ecuador, Zambrano was notorious for taking bribes and otherwise illicitly profiting from the authority of his office.  As a judge, his illegal reliance on a former colleague, Alberto Guerra, to write judgments and orders is demonstrated by unrebutted physical evidence—drafts of those rulings on Guerra's hard drive, shipping records between Guerra and Zambrano, and other evidence.  Shortly after Zambrano consummated his $500,000 bargain with Defendants by issuing the judgment they ghostwrote, he was dismissed from the bench for releasing without explanation or justification a major drug trafficking suspect.  But where corruption closed one door, it opened another:  The largest beneficiary of the judgment against Chevron, Petroecuador, recently hired Zambrano as in-house counsel for its $12.5 billion joint venture with Venezuelan and Chinese oil companies, Refineria del Pacifico.  Declaration of Jason B. Stavers, Ex. 4200, 4201, 4202.

Since Guerra came forward and testified about Zambrano's illicit relationship with Defendants—testimony that was supported by a full production of relevant documents and appearance at deposition—Zambrano has been cooperating with Defendants to undermine that testimony and suppress the truth about his ghostwritten judgment.  After several meetings with various lawyers for the LAPs, Zambrano secretly recorded a phone conversation with counsel for Chevron, and then provided the recording to Pablo Fajardo, who released excerpts to the Ecuadorian press in furtherance of Defendants' attacks and threats on those who would speak out against them.  And Zambrano purportedly provided Defendants with a detailed—although demonstrably false—declaration for submission in this action when they needed it, but failed to appear for his deposition when Chevron sought his testimony.  Now, with trial pending, Defendants suddenly claim to be able to produce him after all, on their timing and their terms.

Zambrano's veracity is an issue for the finder of fact, but that evaluation cannot be made unless Zambrano's testimony is presented as part of a fair discovery process. Unlike Defendants, who ask this Court to bar witnesses instead of challenging them on cross examination, Dkt. 1422, Chevron seeks only the protections it is due under the Federal Rules and that are appropriate given the exceptional circumstances here. Chevron's requested requirements are reasonable. In fact, they are substantially the same as what Zambrano and Defendants would have been subjected to in the normal course of this litigation, but for their failure to abide by their obligations. Chevron requests that the Court require as follows:

- Defendants must promptly provide evidence that Zambrano will be permitted to travel to the United States, including evidence that he holds a current Ecuadorian passport and a visa permitting him to enter the United States for the deposition and trial dates.

- Zambrano must be made available to testify at least one week before the trial begins.

- Zambrano's pre-trial deposition should take place in New York, in the Southern District of New York courthouse under the supervision of the Court or a special master.

- Chevron must be allowed to question Zambrano first at his deposition, and he must agree to appear if called to testify by Chevron in its own case-in-chief.

- Well in advance of Zambrano's deposition, Defendants must produce all documents that are responsive to the Court's February 13, 2013 order granting Chevron's motion to compel (Dkt. 787) regarding topics related to the Ecuadorian judgment.

Defendants should not be heard to complain about these requirements. They are for the most part steps that would have been taken months ago, had Defendants and Zambrano complied with their obligations. That they must now be accomplished on an accelerated timeline is no reason to set them aside.

## ARGUMENT

### I.   Defendants Have Forfeited Their Opportunity to Offer Zambrano's Testimony

Defendants' application to present Zambrano at trial arises out of the procedures established in this action for foreign witnesses, and is the result of Zambrano's willful failure to ap-

pear at his scheduled deposition.  By agreement of the parties and order of the Court, "no foreign witness who fails to submit to a deposition abroad . . . shall be permitted to testify at trial or other proceedings.  The Donziger Defendants requested that there be a procedure for seeking leave of the court for exceptions to this rule to permit such a witness to testify after the witness submits to deposition in the United States prior to trial."  Dkt. 882 at 2.  The Court adopted that procedure in its July 30, 2013 order, requiring applications by September 3, 2013.  Dkt. 1327 at 2.  Nonetheless, Defendants' application should be denied.  Defendants and Zambrano have a long history of collusion with one another, and Defendants' failure to produce not only Zambrano for his deposition, but their related documents and witnesses from Ecuador—despite specific orders from this Court that they do so—invalidates their application for relief.

In 2012 and 2013, attorneys for both Chevron and the LAPs reached out to Zambrano, a percipient witness to critical events in this action.  When a lawyer for Chevron called Zambrano, Zambrano secretly recorded the conversation and turned the recording over to the LAPs' counsel.  *See* Dkt. 854.  With the LAPs' counsel, on the other hand, he has had at least two in-person meetings, Dkt. 754 ¶¶ 7–12, and likely many more.

On April 4, 2013, the LAPs submitted a declaration to this Court, purportedly signed by Zambrano, addressing some of the allegations—although virtually none of the evidence— regarding his relationship with the LAPs and with former judge Alberto Guerra, and the $18.2 billion judgment he issued against Chevron.  Dkt. 973.  The declaration stated that although it was offered under penalty of perjury, that "does not mean that I [Zambrano] submit to the jurisdiction of the United States of America."  Dkt. 874-1 at 1.  Defendants submitted the declaration in opposition to Chevron's motion for summary judgment, and specifically as a purported rebuttal to the declaration of Alberto Guerra.  The contrast in how discovery proceeded with respect to

these dueling declarations, however, could not be starker.

Along with the Guerra declaration, Chevron produced extensive documentary evidence corroborating Guerra's story, including draft orders found on Guerra's personal computer later issued in final form by Zambrano, records of payments to Guerra made by a LAPs employee, and shipping records showing numerous deliveries from Guerra to Zambrano, made close in time to the issuance of orders by Zambrano found in draft form on Guerra's computer.  Dkt. 764 ¶¶ 197-199, 206.  Chevron also provided to Defendants ethics opinions and expert analyses of the security risks faced by Guerra in Ecuador for speaking out, and the reasonable costs of relocating Guerra in the face of those threats.  And Chevron produced its own records of communications with Guerra, including transcribed tape recordings its counsel made of his conversation with Guerra.  Guerra himself appeared for deposition and testified under oath and on videotape for a full day. Stavers Ex. 4203.

Defendants have done the opposite.  Along with the Zambrano declaration, Defendants provided a portion of a recording Zambrano made of his phone conversation with Chevron's counsel.  *See* Dkt. 974.  They produced no corroborating documents and no records of their meetings or communications with Zambrano.  And when asked to produce the original, complete recording of the phone call recording they had produced, and allow inspection of the recording devices, Defendants asserted that they had no control over Zambrano—despite obtaining a declaration from him and the recordings at issue.  Dkt. 1015-1.  Defendants asserted that they "do not have the original recordings" and "cannot produce the recordings," and provided no information about how the recordings were made.  *Id.*  Defendants have also refused to produce other important Ecuadorian witnesses, including their nominal lead counsel, Pablo Fajardo, as well as their documents held in Ecuador—including those that relate directly to their relationship with

5

Zambrano.  Indeed, they concocted a collusive lawsuit in Ecuador in order to block that discovery.  *See* Dkt. 1151 at 10–13; Dkt. 894 at 6–7.

Both Chevron and the LAPs noticed Zambrano for deposition; Chevron on March 24, 2013 and again on April 8, 2013, and the LAPs on April 5, 2013.  Stavers Ex. 4204.  Based on the parties' negotiations and this Court's order, Zambrano's deposition, like all depositions involving Ecuadorians who would not appear in the US, was scheduled to be held at the U.S. Embassy in Lima, Peru—with Chevron to reimburse Zambrano's reasonable expenses for the trip.  *See* Dkt. 910 at 1.  Through the Special Masters, this Court ordered his deposition to be held on May 16 and May 17, 2013.  Dkt. 1122 at 1.

During the days leading up to Zambrano's scheduled deposition, both Chevron and the Special Masters sought assurances from the LAPs' counsel that Zambrano would appear.  *See* Dkt. 1092 at 1–2 ("[W]e hereby order [LAPs' counsel] to advise counsel for Chevron and the Special masters *definitively* by the close of business on Thursday, May 2 . . . whether Mr. Zambrano will appear for deposition at the Embassy as scheduled.").  In response, the LAPs' counsel claimed that they were not in communication with Zambrano or even "kn[e]w how to contact him."  Dkt. 1122 at 4.  This despite LAPs' counsel having personally met Zambrano to procure his declaration (*see* April 17, 2013 Tr. at 254-55 (testimony by Mr. Smyser that the LAPs' counsel "spoke to Mr. Zambrano asking him for a declaration")), having received recordings purportedly made by Zambrano (*see* Dkt. 974), and, in the very letter disclaiming access to Zambrano, relaying Zambrano's requirements that he be "represented by a lawyer of his own choosing . . . paid by someone other than himself" at his deposition.  Dkt. 1122 at 4.  Ultimately, LAPs' counsel stated that they "fully expect that Judge Zambrano will be in attendance at his upcoming deposition . . . ."  *Id.* at 9.  With such assurances, the Special Masters ordered that the deposition

proceed.  *Id.* at 3; *see also* Dkt. 1146 at 2 (May 10, 2013 Special Masters Interim Report No. 1).

On May 15, 2013, the literal eve before the scheduled deposition, LAPs' counsel informed the parties and Special Masters that he would meet with Zambrano that night and would "make every effort to persuade Judge Zambrano to appear for a deposition."  Stavers Ex. 4205. Zambrano refused to appear.  *Id.*  LAPs' counsel has never explained why this meeting was not held weeks earlier or why LAPs' counsel went from "fully expect[ing]" Zambrano to appear, Dkt. 1122 at 9, to suddenly needing to  "make every effort to persuade" Zambrano, Stavers Ex. 4205.

On September 4, 2013, Defendants informed the Court that Zambrano supposedly had once again changed positions, and was now willing to come to the United States for deposition and trial testimony. Dkt. 1385 at 2.  Defendants offered no explanation for Zambrano's latest change of heart, or any proof.  This track record of noncompliance with the Court's discovery process, and the prejudicial advantage it gives Defendants—who have had access to Zambrano throughout this period—should preclude them from offering Zambrano at trial.

## II.        Reasonable Safeguards Are Necessary to Prevent Prejudice Against Chevron

Should this Court permit Zambrano to appear at trial, Chevron requests that the Court impose reasonable safeguards to mitigate the potential for prejudice.  These safeguards will ensure that Chevron has a fair chance to depose Zambrano in time for trial, preserving Chevron's right to itself call Zambrano in its case-in-chief.  Defendants should not be allowed to spring him—or not—as they please.

Zambrano's collusion with the LAPs and his reliance on Guerra as an illegal ghostwriter are far from the only examples of Zambrano's corrupt conduct.  First as a prosecutor and then as a judge, Zambrano was known for taking bribes and abusing his office.  *See* Dkt. 549-6, 549-9, 754-18, 754-19, 754-48, 754-54, 754-55, 754-57, 754-58, 754-78, 754-79.  He was eventually

dismissed from the bench for improper and illegal rulings in a large drug trafficking case involving FARC members, known colloquially as the *Caso Aniversario*.  Dkt. 431-5.  Zambrano reduced the sentence of two defendants escorting 500 kilograms of cocaine to 20 months, compared to the 10 years sought by the prosecution, and then backdated the decision to prevent appeal.  Dkt. 754-7.  This led to an investigation and a recommendation that he be sanctioned.  Dkt. 754-12.  Zambrano then released one of the chief defendants on his own recognizance, who failed to appear for his trial.  Dkt. 755-28.  Because of the defendant's major involvement in the drug trafficking case, a report by the Judicial Disciplinary Control Unit found Zambrano's actions to be contrary to law and worthy of dismissal, and he was subsequently dismissed.  Dkt. 754-33; 431-5.

Notwithstanding Zambrano's record of corruption, however, Zambrano was recently hired to an in-house counsel position at Refineria del Pacifico (RDP), a subsidiary of Petroecuador.  Stavers Ex. 4200, 4201, 4202.  The Ecuadorian state oil company's willingness to hire a judge fired for collusion with drug traffickers is explained by the fact that it was Petroecuador that benefited the most from the LAPs' actions in Ecuador, and Zambrano's issuance of the judgment against Chevron.  The LAPs committed not to sue the state oil company years ago, Dkt. 29-8, and of the many deficiencies in the judgment Zambrano signed, perhaps the most glaring is that it ascribes to Chevron liability for 20 years of substandard operation by Petroecuador, the sole operator in the region since 1990.  Donziger promised Fernando Reyes a "job the rest of his life" if he would serve as the global expert and find for the LAPs in that capacity (Dkt. 356-9 at 993:12-19)—but it appears that such a position has gone to Zambrano.

Zambrano's long record of corrupt and illegal behavior, combined with Defendants' gamesmanship and abuse of the discovery process with regard not just to Zambrano, but all of

their Ecuadorian co-conspirators, establishes a significant risk that Defendants will further ma-
nipulate any deposition and trial testimony to their improper advantage.  Should the Court permit
Zambrano to testify, Chevron requests that the Court impose the following reasonable safe-
guards:

     *First*, as a threshold matter, Defendants should be required to provide evidence that Zam-
brano will be permitted to travel to the United States, including evidence that he holds a current
Ecuadorian passport and a visa permitting him to enter the United States for the deposition and
trial dates.  This evidence should be required immediately.  Presumably Defendants' counsel has
already obtained this information before burdening Chevron and the Court with this motion.  In
light of Zambrano's prior last-minute cancellation, Chevron should not be required to prepare for
Zambrano's deposition and arrange its own lawyers' schedule around it if defendants cannot es-
tablish the most basic prerequisites for Zambrano's attendance.  *See, e.g.*, *Doe v. Karadzic*, 1997
WL 746512, at *1 (S.D.N.Y. Dec. 3, 1997) (affirming magistrate order requiring defendant to
apply for a visa to enter the United States for purposes of having his deposition taken); *United
States v. 2,164,341 in US Currency*, 2013 WL 321768, at *2-3 (D. Ariz. Jan. 28, 2013) (granting
discovery sanctions against defendants when their foreign witness had been ordered to obtain
visa and appear for deposition in the United States and failed to do so.)

     *Second*, Zambrano must be made available to testify at least one week before the trial be-
gins.  Defendants' offer to make Zambrano available for deposition in the middle of an ongoing
trial—"the weekend before his scheduled testimony"—is unfair and unworkable.  Among other
problems, it would require counsel for all parties to devote scarce time and resources during what
will be a complex and hard fought trial to take an important deposition—something Defendants,
who are supposedly represented by a single lawyer between them, cannot possibly want to do.

Moreover, it will force the parties to proceed through opening statements, perhaps all of Chevron's case-in-chief (in which Chevron may want to call Zambrano), and even some portion of Defendants' case, all without knowing what this important witness will say or how he will respond to cross examination. *See, e.g.*, *In re Messerschmitt Bolkow Blohm Gmbh*, 757 F.2d 729, 733 (5th Cir. 1985) (affirming pre-trial deposition to "permit adequate pretrial preparation."); *Semke v. Enid Auto. Dealers Assoc.*, 52 F.R.D. 518, 520 (D. Okla. 1971) ("The Court is convinced that it is diligent and highly desirable for many obvious reasons to take the depositions of opposing parties and key witnesses prior to trial."); *Walker v. Yellow Freight Sys.*, 1999 WL 321768, at *2-3 (E.D. La. Sept. 23, 1999) (Where plaintiff revealed new witness in an on the eve of trial the court ordered plaintiff to bear the costs of the deposition and held that "[i]f this deposition cannot be conducted within a reasonable time before trial to allow [defendant] to prepare its case, the Court shall grant a continuance of the trial if requested.").

In light of the long history of cooperation between Zambrano and Defendants—cooperation that enabled the filing of this application—it would be deeply prejudicial to require Chevron to try the bulk of this case without knowing what, if anything, Defendants' star witness was going to say. *See, e.g.*, *Reorganized Church of Jesus Christ of Latter Day Saints v. U.S. Gypsum Co.*, 882 F.2d 335, 337 (8th Cir.1989) (affirming trial court ruling to exclude expert testimony because allowing an expert to testify on an unnoticed topic at trial would cause unfair prejudice to defendant who had not deposed him on that topic); *Eli Lilly & Co. v. Actavis Elizabeth LLC*, 2010 WL 1849913, at *9 (D.N.J. May 7, 2010) (to avoid prejudice caused by Plaintiff's offering a witness only a month before trial in a long-running case, the court ordered the immediate deposition of the witness so as to minimize interference with defendant's trial preparation); *Hansen v. Umtech Industrieservice Und Spedition*, 1996 WL 732556, at *4 (D. Del. Dec.

9, 1996) (ordering deposition of recently discovered witness prior to trial to prevent "manifest injustice"); *World Wide Ass'n of Specialty Programs v. PURE, Inc.*, 2004 WL 5620058, at *5 (D. Utah July 20, 2004) (order excluding recently proposed witnesses at trial due to unfair surprise and prejudice because defendant would not be able to depose them).  A deposition scheduled immediately before Zambrano's trial testimony may be little better than no deposition at all.

*Third*, Zambrano's pre-trial deposition should take place in New York, in the Southern District of New York courthouse under the supervision of the Court.  A deposition in Ecuador is precluded by security concerns long recognized by this Court,[1] and by the impracticality of travel by counsel so close to trial—travel that would have been unnecessary had Zambrano appeared as scheduled for his deposition in May.  Zambrano is supposedly willing to come to New York for trial and Chevron will reimburse Zambrano for his reasonable expenses as ordered by the Court. Dkt. 882.  And, in light of Zambrano's history of manipulation of the judicial process, holding the deposition in the courtroom and before a federal judge will provide the appropriate decorum and gravitas to reduce the probability of the witness being uncooperative or bearing false testimony.  *See, e.g.*, *Blackmon v. Olney*, 2007 WL 2332328, at *5 (W.D. Mich. Aug. 13, 2007) (ordering court-supervised deposition of a witness who had failed to follow court orders); *Condit v. Dunne*, 225 F.R.D. 100, 112 (S.D.N.Y. 2004) (holding that "on-hand Court supervision" was justified because of witness's refusal to answer questions); *Pritchard v. County of Erie*, 2006 WL 2927852, at * 2 (W.D.N.Y. Oct. 12, 2006) ("Courts do have the discretion to order depositions to occur in the courthouse under judicial supervision, *see* 8A Federal Practice and Procedure, supra,

---

[1]  The Court has found that the "safety and well-being of witnesses and of lawyers and ancillary personnel is best served by the depositions taking place outside the Republic of Ecuador."  Dkt. 910; *see also* Dkt. 884.  In recent weeks, President Correa has only increased the risk, launching a near daily campaign of attacks on Chevron and those affiliated with Chevron, calling them an "enemy of the country," Stavers Ex. 4206, 4207 and a newspaper associated with the administration, El Telegrafo, recently published the names of Chevron attorneys and experts—taken from Chevron's privilege log in the Count 9 action—as part of an inflammatory cover article, and asserted they were "collaborators" with whom Chevron intended to "suffocate Ecuador."  Ex. 4208.

§ 2112, at 89-90"); *Sedie v. United States Postal Serv.*, 2009 WL 4021666, at *2 (N.D. Cal. Nov. 19, 2009) (granting request to have depositions conducted in courtroom); *Good Stewardship Christian Center v. Empire Bank*, 341 F.3d 794, 796 (8th Cir. 2003) (affirming the District Court's appointment of a Special Master because of witnesses' "refus[al] to answer simple and straightforward questions, [and] engaged in non-responsive speeches. [The witness's] attorney also acted inappropriately, by "failing to advise his client of his responsibility to cooperate in discovery.").

*Fourth*, Chevron should be allowed to question Zambrano first at his deposition, for a full seven hours if necessary, and he must agree to appear at trial if called to testify in Chevron's case-in-chief. Given Zambrano's reticence to be questioned, Chevron should not have to risk prejudice by Zambrano leaving his deposition before answering all of Chevron's questions. Allowing Chevron to go first guarantees that Zambrano does not appear merely to mouth more of Defendants' ghostwritten falsehoods, and then disappear. Furthermore, Zambrano must agree that he will appear at trial when called by *either* party. If he fails to so appear, his deposition cannot be used at trial.

*Fifth*, well in advance of Zambrano's deposition, Defendants' must produce all documents subject to the Court's February 13, 2013 order granting Chevron's motion to compel (Dkt. 787) relating to Zambrano, Guerra, the LAPs unfiled work product,[2] the drafting and issuance of the judgment and the clarification order, and the constitution of the Ecuadorian appellate panel. These documents are necessary to the preparation of Zambrano's deposition and Chevron would be prejudiced if forced to depose Zambrano without them, let alone if Defendants are permitted

---

[2]  Specifically, the Fusion Memo (DONZ-HDD-0142504-25), the Clapp Report (DONZ00025296), the Index Summaries (DONZ00048820; GARR-HDD-0003243-3446), the Draft Alegato (DONZS00002439), the Fajardo Trust Email (DONZ00051504), the Selva Viva Data Compilation (DA00000040-42), and the Moodie Memo (WOODS-HDD-0012793).

to offer Zambrano's trial testimony without providing these documents to Chevron.

This Court has previously ordered Defendants to produce all responsive documents in the possession of Defendants' Ecuadorian agents.  Dkt. 787.  Instead of complying, "[t]he LAP Representative[s], the Donziger Defendants, and their Ecuadorian allies have been remarkably obstructive in this case.  They have utterly refused to comply with court orders directing them to provide discovery of documents and information in the possession of their Ecuadorian counsel, claiming that they do not control their counsel."  Dkt. 865. at 1.  But when it suits them, Defendants produce such documents with regularity—and now they claim to be able to produce the previously unavailable Zambrano.  Notwithstanding their protests, Defendants have selectively provided a string of documents from their Ecuadorian agents: recordings between Zambrano and others, a declaration from Zambrano, and numerous minutes from meetings of the Asemblea. *See* Dkt. 1377-1, 1377-2.  Defendants' document games have been highly prejudicial.  *See* Dkt. 894, 965, 1031, 1180.  The sudden inclusion of Zambrano as a trial witness despite his earlier refusal to attend his deposition is another example.  If Defendants wish to call Zambrano at trial, they must first cure their prior misconduct.

## CONCLUSION

For the aforementioned reasons, Chevron opposes Defendants' application to call Zambrano at trial, and, in the alternative, requests that the Court enforce the above safeguards relating to Zambrano's deposition and trial testimony.

Dated:  September 20, 2013                          Respectfully submitted,
New York, New York

                                                   /s/ Randy M. Mastro
                                                Randy M.  Mastro
                                                Andrea E.  Neuman
                                                GIBSON, DUNN & CRUTCHER LLP
                                                200 Park Avenue

New York, New York 10166
Telephone: 212.351.4000
Facsimile:  212.351.4035

William E.  Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile:  213.229.7520

*Attorneys for Chevron Corporation*