UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
: 
CHEVRON CORPORATION, :
:
            Plaintiff, :
:
  -against- :
: Case No. 11 Civ. 0691 (LAK)
:
STEVEN R. DONZIGER, et al., :
:
           Defendants. :
:
------------------------------------- x

# MEMORANDUM OF LAW IN SUPPORT OF
# CHEVRON CORPORATION'S MOTION TO SANCTION THE
# DONZIGER DEFENDANTS FOR DISOBEYING THE COURT'S
# DISCOVERY ORDERS

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND ............................................................................................................................ 2

LEGAL STANDARD .................................................................................................................... 3

ARGUMENT ................................................................................................................................. 4

I.    The Court Should Grant Chevron Leave to Serve Subpoenas on Chase Bank and the Accountant Who Prepared the Trust and Selva Viva Accountings ....................... 4

II.    The Court Should Find the Woods Documents to be Non-Privileged and Draw an Adverse Inference of Donziger's Obstruction ................................................. 6

III.    The Court Should Require Donziger to State, Under Oath, Whether His Testimony Regarding the Patton Boggs Executed Retainer Agreement Was False .................................................................................................................................. 9

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agiwal v. Mid Island Mortg. Corp.*,
   555 F.3d 298 (2d Cir. 2009) ................................................................................ 4, 6

*Daval Steel Prods. v. M/V Fakredine*,
   951 F.2d 1357 (2d Cir. 1991) ....................................................................... 3, 4, 6, 9

*First Capital Asset Mgmt. v. Brickellbush, Inc.*,
   218 F. Supp. 2d 369 (S.D.N.Y. 2002) ................................................................. 4, 5

*In re Chevron Corp.*,
   749 F. Supp. 2d 170 (S.D.N.Y. 2010) ..................................................................... 8

*Insurance Corp. of Ireland v. Compagnie des Bauxites*,
   456 U.S. 694 (1982) ................................................................................................. 9

*Kyoei Fire & Marine Ins. Co. v. M/V Maritime Antalya*,
   248 F.R.D. 126 (S.D.N.Y. 2007) ............................................................................. 9

*Lago Agrio Plaintiffs v. Chevron Corp.*,
   409 F. App'x 393 (2d Cir. 2010) .............................................................................. 8

*Leadsinger, Inc. v. Cole*,
   No. 05 Civ. 5606, 2006 WL 2266312 (S.D.N.Y. Aug. 4, 2006) .............................. 5

*Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*,
   663 F.2d 371 (2d Cir. 1981) ..................................................................................... 8

*Riddell Sports Inc. v. Brooks*,
   158 F.R.D. 555 (S.D.N.Y. 1994) ............................................................................. 7

**Statutes**

Fed. R. Civ. P. 37(b)(2)(A) ............................................................................... 3, 5, 6, 8
Fed. R. Civ. P. 37(b)(2)(A)(i) .................................................................................. 8, 10
Fed. R. Civ. P. 37(d)(2) ................................................................................................ 5

**Rules**

S.D.N.Y. L.R. 26.2 ........................................................................................................ 9

**PRELIMINARY STATEMENT**

On September 3, 2013, this Court granted Chevron's motion to compel Donziger to produce certain documents, all of which should have been produced months ago, "forthwith." Dkt. 1380. Weeks later, Donziger still has refused to produce the documents to Chevron, asserting various pretexts for his non-compliance. Sanctions for his misconduct are warranted.

Donziger now claims to Chevron that he lacks control over the documents of his former associate, Andrew Woods. Ex. 1 (9/12/13 Donziger email). But he made no such claim before the Court, and it is false. Donziger has represented to Chevron and the Court that he has control of over these documents, and Donziger and Woods had the same lawyer acting as their counsel (Stuart Gross), who has indicated that Woods will produce the documents if asked by Donziger. Ex. 2 (5/29/13 Gross email). Donziger admits that his accountant has responsive documents, but claims that Donziger has "no money in the case budget to pay [the accountant]" to release the documents. Ex. 1 (9/12/13 Donziger email). Not only has the Court rejected Donziger's supposed poverty as an unfounded excuse (*see, e.g.*, Dkt. 1302 at 5-9), but yesterday numerous lawyers affiliated with Defendants had both time and resources to attend the Second Circuit oral argument, including Donziger's purportedly former counsel, John Keker, at least seven lawyers from Patton Boggs, Aaron Marr Page, and lawyers from Winston & Strawn and Friedman Kaplan. When Chevron requested the name of the accountant to arrange for production directly, Donziger refused (Ex. 1 (9/13/13 Weitzman email). Despite the Court's order, Donziger also refuses to supply his bank records, which are in his or his bank's possession, and a signed Patton Boggs retainer agreement that he testified under oath in June he possessed, Dkt. 1374-1 (Ex. 1) at 554:19-555:3 ("Q. Do you have a copy of the one that was executed? . . . A. The answer is yes, I do have a copy.").

In short, Donziger has refused without reason to comply with this Court's order to pro-

1

duce the documents. Targeted sanctions, and court-authorized subpoenas to Donziger's bank and accountant, are warranted under Rule 37 and this Court's inherent authority.

## BACKGROUND

Chevron's motion (Dkt. 1374), Donziger's opposition (Dkt. 1375), and the Court's September 3, 2013, memorandum endorsement ordering production (Dkt. 1380) set forth much of the relevant background for this motion. In the order, the Court noted that "the question whether [Donziger] has made the necessary efforts to comply with the order is appropriately considered when, as and if a motion for sanctions is made." Dkt. 1380 at 2. Subsequent events have confirmed that Donziger has not made the necessary effort to locate and produce the documents in question, and that sanctions are warranted.

On September 9, 2013, six days after this Court ordered Donziger to produce documents "forthwith" and after hearing nothing from Donziger, counsel for Chevron reached out to Donziger to remind him of his production obligations. Ex. 1 (9/9/13 Weitzman email). Chevron specifically requested that Donziger produce the documents subject to the Court's order: "a copy of the Patton Boggs retainer; the Executed Master Agreement, Assignment of Rights, and Fajardo equity interest; an accounting of the trust account and the Selva Viva account; your Chase bank account records; and documents not previously produced by Andrew Woods." *Id.*

On September 12, 2013, Donziger responded that he would produce none of the documents in question. Donziger set forth a variety of pretexts for non-production:

- With regard to the Chase bank account, Donziger claimed for the first time that it was "opened after the discovery deadline, and thus will not be produced." Ex. 1 (9/12/13 Donziger email).

- With respect to the Woods documents, Donziger claimed for the first time that "I do not have possession or control over them." Ex. 1 (9/12/13 Donziger email). Donziger then suggested that Chevron instead "contact counsel for Mr. Woods," *i.e.*, Stuart Gross, who is also Donziger's counsel. *Id.*

2

- With respect to the accounting documents, Donziger asserted that they were in the possession of his accountant, and that the accountant "refused to provide them to [Donziger] . . . because there is no money in the case budget to pay him." Ex. 1 (9/12/13 Donziger email).

- With respect to the remaining documents, including the Patton Boggs retainer agreement, Donziger claimed that Chevron "misled the Court by asserting that [Donziger] had admitted possession of the documents." Ex. 1 (9/12/13 Donziger email). Donziger did not cite to any supporting testimony or lack thereof.

In response, Chevron again requested production of the materials at issue, and explained to Donziger that he had already been ordered to do so. Chevron also described how Donziger's excuses were groundless: (i) Donziger had not raised his argument about timeliness of production of his bank account to the Court, and his after-the-fact *ipse dixit* is not a valid basis on which to disobey the Court's order; (ii) Donziger's purported lack of control over Woods was belied by his and Woods's prior statements; (iii) Donziger's supposed "poverty" has been repeatedly rejected as an excuse for want of support; and (iv) Donziger testified that he possessed certain documents—such as the Patton Boggs retainer—and his testimony on possession of these documents was considered by the Court. Dkt. 1380. Chevron also put Donziger on notice that "Chevron believes [his] conduct is sanctionable." Ex. 1 (9/13/13 Weitzman email).

Donziger did not respond to Chevron, forcing Chevron to seek sanctions.

## LEGAL STANDARD

Under Federal Rule 37(b)(2)(A) and its own inherent power, where a party "fails to obey an order to provide or permit discovery" this Court may issue "further just orders" Fed. R. Civ. P. 37(b)(2)(A). While the Rule enumerates certain available sanctions, *id.*, the Court is not limited to those remedies. "A district court has wide discretion in imposing sanctions, including severe sanctions, under Rule 37(b)(2), and will only be reversed if its decision constitutes an abuse of discretion." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991) (citing cases). "There are two basic limitations upon a district court's discretion in imposing sanctions

3

pursuant to Rule 37(b)(2). The rule requires that the sanctions must be 'just'; and the sanction must relate to the particular claim to which the discovery order was addressed." *Id.* at 1366 (citing *Insurance Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 707 (1982)).

## ARGUMENT

I. **The Court Should Grant Chevron Leave to Serve Subpoenas on Chase Bank and the Accountant Who Prepared the Trust and Selva Viva Accountings**

There is no question that Donziger possesses or has control over the relevant Chase Bank account documents or that his accountant possesses the accountings at issue. Ex. 1 (9/12/13 Donziger email). Nor is there any question that the Court ordered Donziger to produce these documents. Dkt. 1380. Donziger's willful failure to obey the Court's order is, therefore, clear, and sanctions should lie. Nonetheless, Donziger refuses to produce these documents based on newfound excuses that he never raised with the Court. Donziger's excuses are baseless, and Chevron should be permitted as a sanction to subpoena Chase and Donziger's accountant to obtain the documents in question, notwithstanding the Court's December 1, 2012, subpoena deadline. Indeed, even stronger sanctions would be warranted. *See Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302-03 (2d Cir. 2009) (affirming dismissal as Rule 37(b)(2)(A) sanction where *pro se* plaintiff willfully failed to appear at court-ordered deposition).

Donziger's excuses for not producing the Chase Bank account documents and accountings are without merit. With respect to the Chase Bank account, Donziger now argues that "the account was opened after the [unnamed] discovery deadline, and thus will not be produced." Ex. 1. Donziger did not raise this issue with the Court, and this argument has been waived. *First Capital Asset Mgmt. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 392-93 (S.D.N.Y. 2002) (finding party waived argument by failing to address the issue in its memorandum of law). In any event, if Donziger wished to challenge the Court's order or Chevron's request, he was obligated to seek

4

a protective order or move for reconsideration. *See* Fed. R. Civ. P. 37(d)(2) (" A failure [to produce] is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)."). Disagreeing with the Court's decision is not grounds for disobeying the Court's clear order. *See Leadsinger, Inc. v. Cole*, No. 05 Civ. 5606, 2006 WL 2266312, at *15 (S.D.N.Y. Aug. 4, 2006) ("It is axiomatic that a court order must be obeyed, even assuming its invalidity, until it is properly set aside."); Fed. R. Civ. P. 37(b)(2)(A). Moreover, there is no evidence that what Donziger said is true. Donziger has merely asserted it to Chevron without any substantiation. On the other hand, Chevron has evidence that the account was used to fund Selva Viva at least as far back as September 2012. *See* Dkt. 1374-2 (Ex. 2).

Donziger has also willfully failed to provide the accountings. Donziger attempts to excuse his conduct on the supposed grounds that "there is no money in the case budget to pay [the accountant]" to release the documents to Donziger. Ex. 1 (9/12/13 Donziger email). This argument is also waived for failure to present it to the Court in his opposition. *First Capital Asset Mgmt.*, 218 F. Supp. 2d at 392-93. Moreover, Donziger's artfully drafted statement does not state that he does not have sufficient funds, just that the "case budget" does not allow for paying his accountant. In any event, Donziger's cry of penury has been rejected by this Court for lack of evidence again and again. Dkt. 1302 at 5-9; Dkt. 1436 at 7 n.16; Dkt. 1164 at 4-5; Dkt. 1407 at 20; Dkt. 1293 at 3. Indeed, Chevron put forth compelling evidence that Donziger has ample resources should he wish to direct them to this case. Dkt. 1434-3; Dkt. 1434-4; Dkt. 1393-1; Dkt. 1393-2; Dkt. 1436 at 7 n.16 ("In fact, filings from actions in Florida courts reveal that Mr. Donziger was entitled to receive nearly $2 million from family trusts within the last year."). And there is every indication that Donziger has a formidable legal team at his service in this case,

5

even if those attorneys choose not to appear before this Court. As noted above, no shortage of funds kept Defendants from being well represented yesterday at the Second Circuit. That Donziger and his Ecuadorian co-conspirators choose to funnel funding to enforcement efforts and other forums is their choice, but it provides no grounds for Donziger to disobey the Court's order here. Indeed, Chevron even requested the accountant's contact information to seek the documents independently from Donziger, but Donziger refused. Ex. 1 (9/13/13 Weitzman email).

Donziger's willful refusal to obey this Court's order merits sanctions. Fed. R. Civ. P. 37(b)(2)(A). Under these circumstances, the Court would be justified in imposing monetary or issue sanctions, or even dispositive sanctions. *Agiwal*, 555 F.3d at 302-03. But Chevron requests only leave to serve subpoenas on Chase Bank and Donziger's accountant for the records in question, and an order precluding Donziger from objecting to or interfering with the subpoenas.[1] This remedy is related to the violation as Chevron seeks the precise records that Donziger wrongfully has withheld. And it is "just" as it imposes no greater burden than necessary, and indeed no burden at all on Donziger, to obtain the documents. Accordingly, this is an appropriate sanction to remedy Donziger's clear violation of this Court's orders. *Daval Steel Prods.*, 951 F.2d at 1366.

## II. The Court Should Find the Woods Documents to be Non-Privileged and Draw an Adverse Inference of Donziger's Obstruction

The Court ordered Donziger to produce the Woods 1782 Documents[2] "promptly" following a privilege review that Donziger explicitly requested. Dkt. 1380 at 3. Donziger now claims that he is unable to produce the 1782 Documents belonging to his former associate, Andrew

---

[1] Donziger should also be directed to provide the name and contact information for his accountant and sign an authorization for the Chase subpoena to help effectuate the subpoenas.

[2] For the purposes of this motion, Chevron defines terms consistent with its motion to compel. Dkt. 1374.

6

Woods, because Donziger supposedly does not have "possession or control over them." Ex. 1 (9/12/13 Donziger email). That is untrue. As a sanction, any privilege asserted by Donziger over the documents should be held waived and the Court should direct an adverse inference or finding of fact that Donziger has willfully obstructed Chevron's discovery in this litigation with respect to the more than 160 Woods 1782 Documents. *See* Dkt. 1374-8 (Ex. 8) at 6-7 (describing the entries on Woods's privilege logs that appear to be missing); Exs. 6 & 7 (Woods's privilege logs with missing documents highlighted) (provided to the Court under seal with Chevron's motion to compel).

Donziger's newfound lack of "control" over Woods is baseless. As an initial matter, Donziger's representation to this Court that he needed to conduct a "privilege review" of the documents implies "control" as defined by New York law—Donziger can practically obtain the documents. *Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 558 (S.D.N.Y. 1994) ("If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have 'control,' even if the documents are actually in the possession of a non-party."). Woods's counsel, Stuart Gross (who is also Donziger's counsel), has also stated that Donziger has control over production of the Woods 1782 Documents: Woods is "fine producing [the documents] . . . I just need sign-off from Donziger and the LAPs to do so." Ex. 2 (5/29/13 Gross email). Moreover, in the Woods 502(d) stipulation that was ordered by the Court, Donziger acknowledged that he would "instruct Woods to produce the 1782 Documents within two (2) days of entry of this order." Dkt. 1201 at 2. Donziger could make no such commitment if he did not control the documents at issue. Indeed, at no time during the 502(d) negotiations did Donziger disclaim a lack of control of the Woods documents. Finally, on July 9, 2013, in response to Chevron's inquiry regarding the Woods documents, Donziger represented: "We are *presently reviewing* the privi-

7

lege logs and *the documents in question* to get a better handle on the matter." Dkt. 1374-8 (Ex. 8) at 3 (emphases added). But it would have been impossible for Donziger to conduct such a review of the Woods 1782 documents without having control of those documents. In short, it beggars belief that Donziger now claims a lack of control over his former associate. Count 9, Dkt. 27-5 (Ex. 5) (Donziger Dep. 23:24-24:3, Nov. 29, 2010).

Given Donziger's willful refusal to produce the Woods documents or conduct a "prompt" privilege review in accordance with the Court's order, sanctions are warranted. Fed. R. Civ. P. 37(b)(2)(A). First, the Court should issue an order that Donziger has waived any privilege he might otherwise have in the 160 Woods 1782 Documents.[3] The Court ordered Donziger to conduct a privilege review "promptly," and he chose instead to assert a legal position that has no merit whatsoever. Such a sanction would be just and suit the misconduct here. *See* S.D.N.Y. L.R. 26.2; *In re Chevron Corp.*, 749 F. Supp. 2d 170, 180-82 (S.D.N.Y. 2010) *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010). Second, the Court should make a record of Donziger's game-playing. The Court should find as established the fact that Donziger has obstructed discovery in this RICO action to avoid the production of documents that are presumably harmful to his defense. Fed. R. Civ. P. 37(b)(2)(A)(i). Indeed, this Court already has found probable cause that Donziger obstructed justice in the Stratus 1782 proceeding. Dkt. 905 at 35. And Donziger has been found by this Court to "have been remarkably obstructive in this case." Dkt. 865 at 1. The Court should consider this pattern of obstruction in determining whether sanctions are appropriate. *Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 388 (2d Cir. 1981) ("Sanctions must be weighed in light of the full record in the

---

[3] Though Chevron's motion to compel was also directed at the LAPs for the Woods 1782 Documents, they failed to respond. The Court should find the LAPs have waived any privilege to these documents as well.

8

case."). In these circumstances, such a finding of fact would be an appropriate sanction.[4]

### III. The Court Should Require Donziger to State, Under Oath, Whether His Testimony Regarding the Patton Boggs Executed Retainer Agreement Was False

Donziger unequivocally testified at deposition that he possesses a copy of the executed Patton Boggs retainer agreement. Dkt. 1374-1 at 554:14–555:3 ("Q. Was a retainer agreement executed with Patton Boggs? A. I think there was one . . . Q. Do you have a copy of the one that was executed? . . . A. The answer is yes, I do have a copy."). The Court ordered Donziger to produce the executed Patton Boggs retainer agreement, and noted the prospect of sanctions if Donziger could not demonstrate "the necessary efforts" to find the retainer agreement and comply with the order. Dkt. 1380 at 2.

Donziger has made minimal, if any, effort, and has instead claimed that Chevron "misled" the Court into ordering him to produce the retainer agreement, which he believes (along with other documents) he testified only that he "might" possess. Ex. 1 (9/12/13 Donziger email). That is false. Chevron provided the testimony in question to the Court (Dkt. 1374-1 (Ex. 1)), and the Court found that "Donziger testified at his deposition that he has a copy of the executed Patton Boggs retainer agreement" (Dkt. 1380 at 2). Donziger's claims to the Court and Chevron that he cannot find the agreement are unsworn—unlike his deposition testimony—and should be disregarded. *See* Dkt. 1380 at 1 (noting that Donziger's statement that "he has been unable to locate" the agreement is "not under oath"). The Court should order Donziger to provide a sworn declaration setting forth in detail the search he undertook in response to the Court's order,[5] and if

---

[4] *See Insurance Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 707 (1982) (upholding order deeming the facts as to personal jurisdiction to be established on a record which indicated that the defendant had engaged in repeated delay and refused to comply with court-ordered discovery); *Daval Steel Prods.*, 951 F.2d at 1366 (affirming decision finding the facts as to alter ego liability to be established as Rule 37 sanction for violation of court order); *Kyoei Fire & Marine Ins. Co. v. M/V Maritime Antalya*, 248 F.R.D. 126, 152-53 (S.D.N.Y. 2007) (finding fact established as Rule 37 sanction where witness was unprepared for 30(b)(6) deposition).

[5] Donziger should specifically be ordered to provide the specific details of the locations he searched (*e.g.*, names [Footnote continued on next page]

that search is insufficiently diligent, find as established the fact that Donziger has obstructed discovery in this RICO action to avoid the production of documents that are presumably harmful to his defense. Fed. R. Civ. P. 37(b)(2)(A)(i). In the declaration, Donziger should also be ordered to explain whether his testimony at deposition about his possession of the Patton Boggs agreement was false.

## CONCLUSION

For the foregoing reasons, Chevron respectfully requests that the Court sanction the Donziger Defendants for disobeying the Court's discovery orders.

Dated: September 27, 2013  
New York, New York

Respectfully submitted,

*/s/ Randy M. Mastro*
Randy M. Mastro
Andrea E. Neuman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for Chevron Corporation*

---

[Footnote continued from previous page]
of email accounts, physical locations, "cloud" storage accounts) and the dates on which he performed the searches.