**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CHEVRON CORPORATION,

                Plaintiff,

      v.

STEVEN DONZIGER *et al.*,

               Defendants.

11-CV-0691

The Honorable Lewis A. Kaplan, U.S.D.J.
The Honorable James C. Francis, U.S.M.J.

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO CHEVRON'S**
**FOURTH MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   STANDARD OF REVIEW .................................................................................... 3

III.  ARGUMENT ........................................................................................................ 4

    A.   The Court has already determined that evidence of Chevron's unclean hands may be relevant depending on how it is presented at trial, and applicable law clearly and broadly allows the unclean hands defense especially with respect to the purely equitable relief Chevron appears to be seeking in this case ............................4

    B.   The record already reflects substantial evidence of Chevron's pattern of intentional bad faith acts to corrupt the normal process of adjudication in this proceeding, effecting a fraud on the Court ......................................................7

    C.   Chevron is equitably estopped from bringing collateral actions challenging the Ecuadorian Judgment after it demanded the controversy be resolved by Ecuador's courts and Defendants justifiably relied on Chevron's promises to submit the case to Ecuador .............................................................................8

    D.   Chevron has had a full and fair opportunity to present its claims of "fraud" in the Ecuadorian forum it chose and this Court should respect the judgment and process of that forum and abstain from entertaining Chevron's opportunistic forum-shopping...........................................................................................11

    E.   The "fraud injunction" sought by Chevron improperly challenges an act of State concerning activities within the State's territory ............................................13

    F.   Chevron has not exhausted available remedies in Ecuador ...........................................15

    G.   To the degree Chevron's claims are allowed to proceed, the law applicable to conduct that occurred in Ecuador must be Ecuadorian, not New York, law .................16

    H.   Injunctive relief is not available to private litigants under RICO ...................................18

IV.   CONCLUSION.................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

*Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*,
  426 F.3d 82 (2d Cir. 2006).............................................................................................. 24

*Am. Med. Ass'n v. United Healthcare Corp.*,
  588 F. Supp. 2d 432 (S.D.N.Y. 2008)............................................................................ 24

*Apple BMW, Inc. v. BMW of North America, Inc.*,
  974 F.2d 1358 (3d Cir. 1992)........................................................................................... 8

*Ashland Oil, Inc. v. Gleave*,
  540 F. Supp. 81 (W.D.N.Y. 1982).................................................................................. 25

*Aslanidis v. United States Lines, Inc.*,
  7 F.3d 1067 (2d Cir. 1993)............................................................................................... 9

*B.F. Goodrich v. Betoski*,
  99 F.3d 505 (2d Cir. 1996)............................................................................................... 8

*Bigio v. Coca-Cola Co.*,
  675 F.3d 163 (2d Cir. 2012)........................................................................................... 22

*Carter v. Exxon Co. USA*,
  177 F.3d 197 (3d Cir. 1999)............................................................................................. 9

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
  482 F.3d 1091 (9th Cir. 2007) ....................................................................................... 12

*Courtien Commc'ns v. Aetna Life Ins. Co.*,
  193 F. Supp. 2d 563 (E.D.N.Y. 2002) ............................................................................. 9

*Cunard S.S. Co. Ltd. V. Salen Reefer Servs, AB*,
  773 F.2d 452 (2d Cir. 1985)........................................................................................... 16

*DAG Jewish Directories, Inc.  v. Y & R Media, LLC*,
  09 7802 RJH, 2010 WL 3219292 (S.D.N.Y. Aug. 12, 2010).................................... 13

*DLJ Mortg. Capital, Inc. v. Kontogiannis*,
  2009 U.S. Dist. LEXIS 46857 (E.D.N.Y. June 4, 2009) ....................................... 25

*Eastern Financing Corp. v. JSC Alchesk Iron and Steel Works*,
  2007 WL 2969109 (S.D.N.Y. 2007)............................................................................. 12

*Estate of Lennon v. Screen Creations, Ltd.*,
  939 F.Supp. 287 (S.D.N.Y. 1996)................................................................................. 10

*Facenda v. NFL Films, Inc.*,
   542 F.3d 1007 (3d Cir. 2008) ................................................................ 8

*Finova Capital Corp. v. Ryan Helicopters U.S.A, Inc.*,
   180 F.3d 896 (7th Cir. 1999) ............................................................... 17

*Gallo v. Prudential Residential Servs.*,
   22 F.3d 1219 (2d Cir. 1994) ................................................................. 8

*Garcia v. Akwesasne Hous. Auth.*,
   268 F.3d 76 (2d Cir. 2001) ................................................................. 21

*Guitard v. U.S. Sec'y of Navy*,
   967 F.2d 737 (2d Cir. 1992) ............................................................... 21

*Hilton v. Guyot*,
   159 U.S. 113 (1895) ........................................................................... 16

*Howell v. I.N.S.*,
   72 F.3d 288 (2d Cir. 1995) ................................................................. 21

*In re Fredeman Litigation*,
   843 F.2d 821 (5th Cir. 1988) ............................................................. 25

*In re Philippine Nat'l Bank*,
   397 F.3d 768 (9th Cir. 2005) ....................................................... 19, 20

*In re Refco Securities Litig.*,
   779 F. Supp. 2d 372 (S.D.N.Y. 2011) .................................................. 9

*Iowa Mut. Ins. Co. v. LaPlante*,
   480 U.S. 9 (1987) ............................................................................... 21

*Konwaloff v. Metro. Museum of Art*,
   702 F.3d 140 (2d Cir. 2012) ............................................................... 19

*Kosakow v. New Rochelle Radiology Assocs.*,
   274 F.3d 706 (2d Cir. 2001) ............................................................... 13

*Landis v. North American Co.*,
   299 U.S. 248 (1936) ........................................................................... 18

*Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians*,
   471 U.S. 845 (1985) ........................................................................... 20

*Ole Media Management, L.P. v. EMI April Music, Inc.*,
   2013 WL 2531277 (S.D.N.Y. June 10, 2013) .................................... 18

*Religious Tech. Ctr. v. Wollersheim*,
    796 F.2d 1076 (9th Cir. 1986) .......................................................................... 25

*Republic of Ecuador v. Chevron Corp.*,
    638 F.3d 384 (2d Cir. 2011)................................................................... 13, 15, 16

*Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc.*,
    466 F.3d 88 (2d Cir. 2006)............................................................................... 18

*Schlesinger v. Councilman*,
    420 U.S. 738 (1975)....................................................................................... 21

*Schneider Nat'l Carriers, Inc. v. Carr*,
    903 F.2d 1154 (7th Cir. 1990) ....................................................................... 17

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
    741 F.2d 482 (2d Cir. 1984).......................................................................... 25

*Shangold v. Walt Disney Co.*,
    275 App'x 73 (2d Cir. 2008)........................................................................... 13

*Smithfield Foods, Inc. v. United Food and Com. Workers Intern. Union*,
    593 F. Supp. 2d 840 (E.D. Va. 2008) ............................................................ 10

*Specialty Minerals, Inc. v. Pluess-Staufer AG*
    395 F. Supp. 2d 109 (S.D.N.Y. 2005)......................................................... 7, 9

*Steel Co v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)........................................................................................ 24

*Tarazi v. Truehope Inc.*,
    2013 U.S. Dist. LEXIS 103691 (S.D.N.Y. July 24, 2013) ............................. 18

*Trane Co. v. O'Connor Secs.*,
    718 F.2d 26 (2d Cir. 1983)............................................................................ 25

*Tripodi v. Local Union No. 38*,
    120 F. Supp. 2d 318 (S.D.N.Y. 2000)............................................................ 23

*W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp.*,
    493 U.S. 400 (1990)................................................................................. 18, 20

*West Hartford v. Operation Rescue*,
    726 F. Supp. 371 (D. Conn. 1989)................................................................. 25

*WorldCom, Inc. v. Boyne*,
    68 Fed. Appx. 447 (4th Cir. 2003) ................................................................. 10

*Yahoo! Inc v. La Ligue Contre Le Raciscme Et L'Antisemitisme,*
    433 F.3d 1199 (9th Cir. 2006) ................................................................................... 19

## I.   PRELIMINARY STATEMENT

Defendants Hugo Gerardo Camacho, Javier Piaguaje Payaguaje, Steven R. Donziger, Donziger & Associates, PLLC, and the Law Offices of Steven R. Donziger ("Defendants") hereby respond in opposition to the remainder of Chevron's fourth motion for partial summary judgment left open by the Court's Memorandum Opinion of August 22, 2013 (DI 1362).

In the next 24 hours, Chevron will apparently "inform" Defendants and the Court of whether or not it will seek to radically shift the nature and substance of the trial scheduled to begin 16 days from now by withdrawing its only remaining money damages claims against any Defendant, potentially allowing Chevron, over Defendants' strenuous objections, , to seek a bench trial before the Court as opposed to the jury trial Chevron "demanded" in its complaint two and a half years ago.  The contemplated tactic would shift the nature of this proceeding far more than just the question of a judge or jury fact-finder, as important as that question is. Because equitable relief is entirely unavailable to private litigants under RICO, *see infra* at Section H, any Chevron decision to drop money damages claims would take RICO entirely out of the case.  After two and a half years of smoke and mirrors and you know what about Defendants' alleged "racketeering," we would be left holding the lonely bag (in federal court) of an attempt to apply New York State common law fraud to conduct that primarily (or exclusively, depending on what Chevron's case actually looks like without the smoke and mirrors) occurred in Ecuador.  Chevron has already previewed this sur-reality by providing the Court with a proposed "fraud injunction" it suggests the Court could enter, entirely apart from RICO, that would accomplish the global freeze on efforts to achieve justice and a clean-up for the Ecuadorian plaintiffs who have suffering the environmental harm of Chevron's massive open-air toxic waste ponds for over 30 years, wondering when any court, anywhere, is going to allow

1

them to achieve any relief.

If this "fraud injunction" is truly the denouement of this case at the district court level, Defendants have and will continue to object, *see* DI 1442 at 5 (discussing the availability of a jury even where a plaintiff has dropped money damages claims), but what will be will be.  If the new reality comes to pass, it will only highlight the critical importance of Defendants' largely equitable affirmative defenses.  With only equitable relief left in the Chevron's case, there is no longer any basis for concern that Defendants' equitable defenses align with equitable claims; and regardless, it is obvious that for an injunction-based claim grounded on alleged "fraudulent procurement" of a foreign judgment, evidence of the plaintiff's unclean hands in attempting to procure the same judgment in its own favor is unquestionably "relative to the matter in which [plaintiff] seeks relief."  *Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 112 (S.D.N.Y. 2005).  More broadly, if this case were to proceed purely on equitable relief, Defendants' fraud, equitable estoppel, comity, act of State, exhaustion, and waiver of application of New York law defenses would become all the more relevant and critical.[1]  It is now abundantly clear that Chevron's case is not a truly separate action for damages, but rather an effort in equity by a frustrated litigant to collaterally attack an adverse judgment, and as such is offensive to Chevron's earlier promises to this Court and to the principles of respect for competent foreign judicial decisions generally.  At the very minimum, there is no justification for the Court to preclude the availability of defenses now, as opposed to reserving decision to trial as it has with other admissibility issues.  DIs 1362, 1420.  At trial and with the benefit of the

---

[1]  While contesting that these issues are properly presented in the context of a motion for summary judgment on affirmative defenses, Defendants' herein brief the choice of law issue of the appropriate "fraud" law that should be applied to Chevron's allegations, *see infra* at Section G, and the largely indisputable issue that injunctive relief is not available to private litigants under RICO, *see infra* at Section H.

2

specific context in which, for example, Defendants' offer evidence of Chevron' unclean hands, the Court will be far better able to assess the evidence's relation to Chevron's relief and other factors. *See* DI 348 ("the better course of action is not to attempt to decide [the unclean hands question in a vacuum"). And if the trial does devolve into a wide-ranging attack on the Ecuadorian judgment and indeed the entire Ecuadorian judiciary, as Defendants suspect it will, the relevance of many other of Defendants' affirmative defenses will be manifest from the circumstances.

## II.    STANDARD OF REVIEW

"Summary judgment may only be granted upon a showing that there is an absence of a genuine issue of material fact" for trial. *B.F. Goodrich v. Betoski*, 99 F.3d 505, 521-22 (2d Cir. 1996). The court must find that "no rational jury could finding favor of the nonmoving party because the evidence in support of the case is so slight." *Id.* at 521-22 (quoting *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994)). "[W]hen deciding a motion for summary judgment . . . a court's role remains circumscribed in that it is inappropriate for a court to resolve factual disputes and to make credibility determinations." *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert denied*, 507 U.S. 912 (1993). In short, "[o]n a motion for summary judgment a District Court must not find facts." *Facenda v. NFL Films, Inc.*, 542 F.3d 1007, 1013-14 (3d Cir. 2008); *see also B.F. Goodrich*, 99 F.3d at 521 ("credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge") (quoting *Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The non-moving party's burden is minimal; the non-moving party must only demonstrate something more than "metaphysical"—"more than a mere scintilla"—as to material facts in dispute. *Aslanidis v. United States Lines, Inc.*, 7 F.3d

1067, 1072 (2d Cir. 1993); *Courtien Commc'ns v. Aetna Life Ins. Co.*, 193 F. Supp. 2d 563, 570

(E.D.N.Y. 2002). "[W]here the non-moving party's evidence contradicts the movant's, then the

non-movant's must be taken as true." *Carter v. Exxon Co. USA*, 177 F.3d 197, 203 (3d Cir.

1999); *Big Apple BMW, Inc.*, 974 F.2d at 1363 (3d Cir. 1992) ("In practical terms, if the

opponent has exceeded the 'mere scintilla' threshold and has offered a genuine issue of material

fact, then the court cannot credit the movant's version of events against the opponent, even if the

quantity of the movant's evidence far outweighs that of its opponent. It thus remains the

province of the factfinder to ascertain the believability and weight of the evidence.").

## III.   ARGUMENT

### A.   The Court has already determined that evidence of Chevron's unclean hands may be relevant depending on how it is presented at trial, and applicable law clearly and broadly allows the unclean hands defense especially with respect to the purely equitable relief Chevron appears to be seeking in this case

In the Count 9 case, the Court correctly recognized that as a matter of law, the equitable

defense of unclean hands is available against a party seeking equitable relief for "[a]ny willful

act concerning the cause of action which rightfully can be said to transgress equitable standards

of conduct." DI 348 at 20-21 (quoting *Specialty Minerals*, 395 F. Supp. 2d at 112; *see also id.*

("[H]e who comes into equity must come with clean hands. It is a self-imposed ordinance that

closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to

the matter in which he seeks relief, however improper may have been the behavior of the

defendant."); *In re Refco Securities Litig.*, 779 F. Supp. 2d 372, 374 (S.D.N.Y. 2011) (unclean

hands is a "hoary principle of equity jurisprudence that one who seeks relief must have clean

hands, i.e., must not himself have contributed to the wrongdoing for which relief is sought");

*Smithfield Foods, Inc. v. United Food and Com. Workers Intern. Union*, 593 F. Supp. 2d 840,

847 (E.D. Va. 2008) ("The well-recognized doctrine of unclean hands prevents a plaintiff from

obtaining equitable relief if the plaintiff has been 'guilty of any inequitable or wrongful conduct

with respect to the transaction or subject matter sued on.'") (quoting *WorldCom, Inc. v. Boyne*,

68 Fed. Appx. 447, 451 (4th Cir. 2003).[2]  In its prior opinion, the Court specifically held that

"The Unclean Hands Defense Applies to the Prayer for an Injunction," *id.* at 19, and "decline[d]

to dismiss the defense  of unclean hands to the extent it is (1) based only on the allegations of

misconduct in or in relation to the Lago Agrio litigation that are enumerated above and (2)

asserted with respect only to the issue whether Chevron, if it otherwise prevails, would be

entitled to the equitable remedy of an injunction."  *Id.* at 26.  In so deciding, the Court reviewed

some of the mountains of evidence of unclean hands Defendants have put into the record, DI 348

at 21-22, and as noted allowed the defense to proceed to the anticipated trial at that time.  *See

also* DI 365, at 26-28 (Chevron deceived the Ecuadorian Court by arranging for inspection

results that could not show contamination by limiting their testing to areas predetermined to be

"clean" and by falsely representing its testing protocol to the Ecuadorian court); DI 152, ¶¶ 16-

23 (Chevron used its ties to the Ecuadorian military to improperly postpone a judicial site

inspection that had drawn the interest of the public and international media); *id.* at ¶¶ 23, 41

(Chevron employed operatives to intimidate and spy on the Ecuadorian Plaintiffs' legal team in

Ecuador);  *id.* at ¶¶ 42-48 (Chevron flooded the trial court with hundreds of duplicative and

frivolous motions in an attempt to delay the case and force recusal of the Ecuadorian judges, in

particular for not meeting the impossible task of timely responding to duplicative and impossibly

burdensome requests in the formal time frame required by Ecuadorian law); *id.* at ¶ 49 (Chevron

threatened the Ecuadorian trial court judge with imprisonment if he did not rule in the company's

---

[2]   Unclean hands appropriately applies wherever a party enters into litigation in bad faith.  *See
Estate of Lennon v. Screen Creations, Ltd.,* 939 F.Supp. 287, 293 (S.D.N.Y. 1996).

favor); DI 365 at 28-31 (Chevron orchestrated an illegal scheme to entrap an Ecuadorian judge); *id.* at 31-32 (Chevron had *ex parte* contacts with Ecuadorian judges despite its sworn interrogatory answers to the contrary); DI 445-11 (Chevron attempted to persuade and pressure Ecuadorian officials to end the Lago Agrio case by "quietly explor[ing] with senior GOE [Government of Ecuador] officials whether it could implement a series of social projects in the concession area in exchange for GOE support for ending the case," quoting U.S. Dept. of State memoranda).

The one category of unclean hands evidence the Court purported to exclude in the August 17 opinion related to Chevron's/Texaco's promises to this Court in the 1990s-era *forum non conveniens* litigation of this case in New York, and the Court's conclusion is based entirely on the Court's *sua sponte* and *in camera* "determination" that apparently it thinks sufficient legal corporate separateness exists between Chevron Corp. the shell company "Texaco Inc." that Chevron asserts survived its highly publicized 2001 "merger," in which the two companies' respective and overlapping upstream and downstream asset portfolios were entirely integrated and the new board and management consisted of half "Chevron" and half "Texaco" individuals, so as to deprive the Ecuadorians of core legal defenses in this case. The Second Circuit subsequently flatly rejected this approach. *See infra*, Section C. In any event, just as the Court has rejected Chevron's request for an order "[p]rohibiting Defendants from using the names Chevron, Texaco, and TexPet interchangeably," DIs 1393, 1420, and held any determination of such issues over for trial, the Court need not now engage this issue on a pretrial basis so as to preclude unclean hands or other affirmative defenses. Defendants' unclean hands and other arguments based on Chevron/Texaco's prior promises to this Court are compelling and should be considered by the Court at the time of Defendants' presentation of them at trial.

**B.      The record already reflects substantial evidence of Chevron's pattern of intentional bad faith acts to corrupt the normal process of adjudication in this proceeding, effecting a fraud on the Court**

As described in the foregoing section, Defendants have already introduced mountains of evidence of instances of Chevron's deceptive and unlawful conduct, both the Lago Agrio litigation and in this and related cases in the United States. Defendants have also recently briefed at length how some parts of that evidence, in particular Chevron's efforts at paying cash to witnesses and/or coercing witness to achieve favorable testimony , effected a fraud on the Court sufficient to justify terminating the entire action as a sanction because there can no longer be any "assurance of proceeding on the true facts" in light of Chevron's conduct.  See DI 1422 (quoting *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096–97 (9th Cir. 2007)).  The reality is that in prosecuting its claim under a statute designed to go after mobsters, Chevron has played the thug: paying hundreds of thousands of dollars for Alberto Guerra's ridiculously tainted and false testimony, DI 1422 at 4-7; trying to bribe Judge Zambrano, DI 974-1 at ¶ 19; sending an agent to secretly record efforts to (unsuccessfully) corrupt the Lago Agrio case, entrap a sitting judge, and posting the video in a false light on YouTube, DI 1422 at 7-9, DI 154 at ¶¶ 33-38; ruthlessly attempting to bankrupt Stratus Consulting until two of the Ecuadorians' former environmental consultants "flipped" and recanted parts of their prior work, DI 1422, DIs 768-02, 768-03, 768-05; and more, *see, e.g.,* DIs 1422, 1329. As briefed in Defendants' recent motion, these and other tactics have so "seriously affect[ed] the integrity of the normal process of adjudication" as to amount to a fraud on the Court—and on Defendants.  *Eastern Financing Corp. v. JSC Alchesk Iron and Steel Works*, 2007 WL 2969109 (S.D.N.Y. 2007); *see also Chambers v. NASO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 2132 (1991) (a court has inherent power to dismiss a case "upon proof that a fraud has been perpetrated upon the court"); *Shangold v. Walt Disney Co.*, 275 App'x 73, 73-74 (2d Cir.

7

2008) (upholding dismissal upon showing of the submission of fraudulent evidence); *DAG Jewish Directories, Inc.  v. Y & R Media, LLC*, 09 7802 RJH, 2010 WL 3219292 (S.D.N.Y. Aug. 12, 2010) (dismissing case on finding of forged evidence, relying upon a five part analysis in its dismissal, including: (1) the offending party's bad faith, (2) the prejudice, (3) the pattern of misconduct, (4) whether the party sought to correct the misconduct and (5) whether the conduct is likely to continue).  As described in DI 1422, Chevron's conduct has been (1) intentional and in flagrant bad faith; (2) resulted in significant prejudice both to Defendants and to this Court's normal process of adjudication; (3), (5) was part of a consistent pattern to manufacture evidence in favor of its baseless claims that is likely continue as long as this action is allowed to continue; and (4) Chevron has not only not sought to correct its obvious misconduct, it defends it to this day.   Defendants' affirmative defense of fraud should stand.

      **C.**    **Chevron is equitably estopped from bringing collateral actions challenging the Ecuadorian Judgment after it demanded the controversy be resolved by Ecuador's courts and Defendants justifiably relied on Chevron's promises to submit the case to Ecuador**

In the context of this controversy, the Second Circuit has already held that equitable estoppel "is properly invoked 'where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct.'"  *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384 (2d Cir. 2011) (quoting *Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 725 (2d Cir. 2001)).  A clearer claim for equitable estoppel could hardly be imagined.  At the tail end of the 1990s-era litigation of this controversy in New York, Chevron, then representing itself as "ChevronTexaco" and represented by the same counsel that had litigated the case for "Texaco, Inc." for nearly a decade, represented that the entire controversy should be heard in Ecuador, promised that it would

consent to the jurisdiction of Ecuadorian courts, and, in response to concerns by the Ecuadorian

plaintiffs that they would be prejudiced because Chevron would be able to resist enforcement of

an Ecuadorian judgment in a thousand ways (such as attacking the quality of the Ecuadorian

judiciary) that would be far less effective with respect to a U.S. court judgment, Chevron further

promised that it would contest the judgment of the Ecuadorian courts "only" by recourse to the

New York Recognition Act, if the plaintiffs sought enforcement in New York.  The Second

Circuit, reviewing this record, makes this plain:

> On appeal, we held that the district court erred by dismissing Plaintiffs'
> complaint without first securing "a commitment by Texaco to submit to
> the jurisdiction of the Ecuadoran courts" and remanded for further
> proceedings. [*Jota v. Texaco, Inc.*, 157 F.3d 153, 159-161, 163 (2d
> Cir.1998)]. . . . On remand, Texaco provided that commitment by
> "unambiguously agree[ing] in writing to be[ ] sued ... in Ecuador, to
> accept service of process in Ecuador, and to waive ... any statute of
> limitations-based defenses that may have matured since the filing of the
> [complaint]." [*Aguinda v. Texaco, Inc.*, 142 F. Supp. 2d 534, 539
> (S.D.N.Y. 2001)].  Texaco also offered to satisfy any judgments in
> Plaintiffs' favor, reserving its right to contest their validity ***only*** in the
> limited circumstances permitted by New York's Recognition of Foreign
> Country Money Judgments Act. *See* N.Y. C.P.L.R. 5301 *et seq.* With
> those concessions in mind, the district court again dismissed Plaintiffs'
> complaint. *Aguinda*, 142 F. Supp. 2d at 554.
>
>  . . .
>
> While the district court did not include Texaco's promise to satisfy any
> Ecuadorian judgment in its stipulation and order, an express adoption of
> the prior inconsistent position is not required. The court need only adopt
> the position "in some manner, such as by rendering a favorable judgment."
> *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir.1999)
> (internal citation omitted); *see also Maharaj v. Bankamerica Corp.*, 128
> F.3d 94, 98 (2d Cir.1997). Here, Texaco had been trying to convince the
> district court that Ecuador would serve as an adequate alternative forum
> for resolution of its dispute with Plaintiffs. As part of those efforts, Texaco
> assured the district court that it would recognize the binding nature of any
> judgment issued in Ecuador. Doing so displayed Texaco's well-founded
> belief that such a promise would make the district court more likely to
> grant its motion to dismiss. Had Texaco taken a different approach and
> agreed to participate in the Ecuadorian litigation, but announced an
> intention to disregard any judgment the Ecuadorian courts might issue,

> dismissal would have been (to say the least) less likely. We therefore
> conclude that the district court adopted Texaco's promise to satisfy any
> judgment issued by the Ecuadorian courts, subject to its rights under New
> York's Recognition of Foreign Country Money Judgments Act, in
> awarding Texaco the relief it sought in its motion to dismiss. ***As a result,
> that promise, along with Texaco's more general promises to submit to
> Ecuadorian jurisdiction, is enforceable against Chevron in this action
> and any future proceedings between the parties, including enforcement
> actions, contempt proceedings, and attempts to confirm arbitral awards.***

*Republic of Ecuador*, 638 F.3d at 389-390.  The facts are unavoidable that Defendants justifiably

relied upon the same promises found to be compelling by the Second Circuit, and thus incurred

significant expense and engaged in difficult efforts to litigate to judgment the case in Ecuador.

In this case, Chevron presents a classic collateral attack that initially, until the Count 9 case was

dismissed, sought directly to undermine and extinguish the judgment of Ecuadorian courts, and

now seeks do to the same in slightly different form, through an injunction that Chevron will seek

to have to all Ecuadorian environmental plaintiffs "from undertaking any acts to, among other

things, monetize or profit from the judgment"—*i.e.* to recover money to clean-up the

contamination as ordered by Ecuador's courts.  Chevron should plainly be estopped from success

on this deeply inequitable tactic.

Of course, the Court has already indicated its eagerness to excuse Chevron from these

promises because Chevron's 2001 "merger" with Texaco (as it was described by Chevron and

Texaco at the time) was technically a "reverse triangular merger" with a shell company called

"Keepep" that existed at most for a juridical instant and that purportedly left "Texaco Inc." as a

surviving shell company located at Chevron's headquarters in California.  Chevron's argument

that it was only Texaco, not Chevron, that made promises in the FNC action—citing this Court's

endorsement—was flatly rejected by the Second Circuit:

> Chevron Corporation claims, without citation to relevant case law, that it
> is not bound by the promises made by its predecessors in interest Texaco
> and ChevronTexaco, Inc. However, in seeking affirmance of the district

> court's forum non conveniens dismissal, lawyers from ChevronTexaco
> appeared in this Court and reaffirmed the concessions that Texaco had
> made in order to secure dismissal of Plaintiffs' complaint. In so doing,
> ChevronTexaco bound itself to those concessions. In 2005,
> ChevronTexaco dropped the name "Texaco" and reverted to its original
> name, Chevron Corporation. There is no indication in the record before us
> that shortening its name had any effect on ChevronTexaco's legal
> obligations. ***Chevron Corporation therefore remains accountable for the***
> ***promises upon which we and the district court relied in dismissing***
> ***Plaintiffs' action***.

*Republic of Ecuador*, 638 F.3d at 389.  Equitable estoppel remains a critical defense in this case

and should certainly not be precluded by this Court's *in camera* decision on a matter of corporate

law that has already been rejected by the Second Circuit and is incorrect as a matter of law.

### D.    Chevron has had a full and fair opportunity to present its claims of "fraud" in the Ecuadorian forum it chose and this Court should respect the judgment and process of that forum and abstain from entertaining Chevron's opportunistic forum-shopping

In *Hilton v. Guyot*, 159 U.S. 113, 164 (1895), the Supreme Court defined comity as:

> the recognition which one nation allows within its territory to the
> legislative, executive, or judicial acts of another nation, having due regard
> both to international duty and convenience, and to the rights of its own
> citizens or of other persons who are under the protection of its laws.

"Comity will be granted to the decision or judgment of a foreign court if it is shown that

the foreign court is a court of competent jurisdiction, and that the laws and public policy of the

forum state and the rights of its residents will not be violated."  *Cunard S.S. Co. Ltd. V. Salen

Reefer Servs, AB,* 773 F.2d 452, 456-57 (2d Cir. 1985).  "The rationale underlying the granting

of comity to a final foreign judgment is that litigation should end after the parties have had an

opportunity to present their cases fully and fairly to a court of competent jurisdiction."  *Id.* at

457.

As the record in this case amply reflects, Chevron consented to jurisdiction in Ecuador.

Accepting that a U.S. corporation may suffer being held to account for its illegal acts in a foreign

country is certainly not a problem with respect to the public policy of either New York or the United States.  And there is no evidence to demonstrate that Chevron did have an opportunity to present its case fully and fairly in Ecuador—it presented all of its "fraud" allegations to Ecuador courts and indeed continues to present its case to Supreme Court of Ecuador to this day.  That fact alone disputes Chevron's claim that it was prevented from fully and fairly presenting its claims or defenses in Ecuador.  *See* DI 550 at 84.  Thus, Chevron must be required to prove at trial by clear and convincing evidence that such was not the case, and that it was diligent in discovering the fraud and attacking the judgment.  DI 550 at 84.  Failure to do so would provide grounds to dismiss the action on the basis of comity, and accordingly Chevron's motion to dismiss the affirmative defense of comity should be denied.

For similar reasons, this Court should abstain from any further proceedings in this matter until all appeals in Ecuador are exhausted.  *See Finova Capital Corp. v. Ryan Helicopters U.S.A, Inc*., 180 F.3d 896, 898 (7th Cir. 1999) (applying "the same general principles with respect to parallel proceedings in a foreign court.").  "Suits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora" *Id. (*citing *Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir. 1990)).  Factors considered regarding abstention include: "(1) the identity of the court that first assumed jurisdiction over the property; (2) the relative inconvenience of the federal forum; (3) the need to avoid piecemeal litigation; (4) the order in which the respective proceedings were filed; (5) whether federal or foreign law provides the rule of decision; (6) whether the foreign action protects the federal plaintiff's rights; (7) the relative progress of the federal and foreign proceedings; and (8) the vexatious or contrived nature of the federal claim." *Id.; see also Royal & Sun Alliance Ins. Co. of Can. v. Century Int'l Arms, Inc.,* 466 F.3d 88 (2d Cir. 2006) (recognizing that abstention principles can

be applied to foreign proceedings, but overturning decision to dismiss a case when special circumstances outweighing the district court's "general obligation to exercise its jurisdiction" did not exist.); *Tarazi v. Truehope Inc.*, 2013 U.S. Dist. LEXIS 103691 (S.D.N.Y. July 24, 2013) (granting requested stay of proceedings under the application of the abstention considerations.). In this case, the fact that Chevron has raised on appeal substantially the same issues that it is raising here—fraudulent procurement of a judgment—and against the same parties, weighs strongly in favor of abstention.  On the basis of international comity, a court may "dismiss or stay an action based on the pendency of a related proceeding in a foreign jurisdiction."  *Ole Media Management, L.P. v. EMI April Music, Inc.*, 2013 WL 2531277 at *2 (S.D.N.Y. June 10, 2013) (collecting cases including *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)).

> **E.    The "fraud injunction" sought by Chevron improperly challenges an act of State concerning activities within the State's territory**

Chevron's claims for relief here are also clearly barred by the act-of-state doctrine, under which a U.S. court must dismiss a case concerning "an official act of a foreign sovereign performed within its own territory" where "the relief sought . . . [would require] a court in the United States to declare invalid the [foreign sovereign's] official act."  *See W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp.*, 493 U.S. 400, 404 (1990).  Chevron's increasingly clear emphasis on injunctive relief, in particular in connection with its non-RICO fraud claim, unabashedly seeks to overturn and/or invalidate the Ecuadorian judgment (an act of state) that relates to conduct solely undertaken in Ecuador.  Chevron would have this court determine that a judgment rendered and upheld by the Ecuadorian judicial system—for acts that took place wholly in Ecuador and which intimately involve the Republic of Ecuador (ROE)—was fraudulent and invalid, and in so doing attempts to call into disrepute the entire Ecuadorian legal

system.  The ROE's many statements regarding the importance of the underlying Ecuadorian

judgment and litigation, as well as the ROE's involvement in arbitration and other proceedings

addressed to the underlying facts of this case and the underlying Ecuadorian litigation,

demonstrate that the proceedings in Ecuador were unlike other vanilla civil law suits and directly

address the "public interest" of Ecuador.   That being so, the issuance of an injunction declaring

the verdict invalid runs the of severely "hinder[ing]" relations between the United States and

Ecuador.  *See Konwaloff v. Metro. Museum of Art*, 702 F.3d 140, 145 (2d Cir. 2012) (the act-of-

state doctrine prevents the Judicial Branch from "passing on the validity of foreign acts" that

"may hinder rather than further" US foreign policy interests).

Chevron claims, summarily, that the judgment of a foreign court is not a "state act" and

that therefore the doctrine is inapplicable.  DI 1349 at 23.  But in fact "there is no inflexible rule

preventing a judgment sought by a foreign judgment from qualifying an as an act of state."  *In re

Philippine Nat'l Bank*, 397 F.3d 768, 773 (9th Cir. 2005); *Yahoo! Inc v. La Ligue Contre Le

Raciscme Et L'Antisemitisme*, 433 F.3d 1199, 1226 (9th Cir. 2006) (a "foreign court judgment

. . . can be [an act of state] when it gives effect to the public interest of the foreign government");

Restatement (Second) of Foreign Relations of the United States § 41 cmt. d (1965) ("A judgment

of a court may be an act of state").  In *In re Philippine Nat'l Bank*, the 9th Circuit found the act-

of-state doctrine to bar a district court order—requiring the Philippine National Bank to freeze

the assets of former Philippine President Marcos and purporting to hold the Bank in contempt for

forfeiting those assets (pursuant to a Philippine court order)—precluded by the act-of-state

doctrine because it "necessarily (and expressly) held invalid the forfeiture judgment of the

Philippine Supreme Court."  397 F.3d at 772.

By seeking invalidation of the Ecuadorian judgment—a judgment that was de novo

reviewed and upheld by an Ecuadorian appellate court upon which Chevron has levied no accusations of corruption or fraud—Chevron has effectively elevated what it might otherwise try to characterize as a private dispute into an one of obvious "public" concern, indeed one that was of obvious public salience for decades.  *W.S. Kirkpatrick & Co.*, *supra*, is instructive.  That case involved money damages, and while Justice Scalia avoided the act of state doctrine because he was not forced to "determine[ ] that Nigeria's contract with Kirkpatrick International was, or was not, effective," the Court permitted only probing on the issue of "the legality of the Nigerian contract," not allowing the court  to be the ultimate finder.  493 U.S. at 406.  Here, Chevron has taken just that step too far, and seeks to render the Ecuadorian judgment, an act of state, ineffective and invalid.

### F.     Chevron has not exhausted available remedies in Ecuador

The affirmative defense of exhaustion is also entirely appropriate and necessary in this case.  Chevron continues to submit "evidence" (fraudulently procured though it might be) to Ecuador's National Court of Justice, which could issue a decision at any moment juridically resolving the issues of Defendants' alleged misconduct (with the benefit of being a court with competent  jurisdiction over the alleged conduct and competent experience with respect to the facts therein).  In short, remedies remain to Chevron per its alleged victimization, *see infra*, and Chevron should not be heard here simply because it prefers a different system than the system to which it earlier, intentionally, submitted this controversy, or a different judge.  *See, e.g.*, *Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845, 857 (1985) ("Until petitioners have exhausted the remedies available to them in the Tribal Court system . . . it would be premature for a federal court to consider any relief."); *Garcia v. Akwesasne Hous. Auth.*, 268 F.3d 76, 80 (2d Cir. 2001); *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 17 (1987).  *See also*

*Howell v. I.N.S.*, 72 F.3d 288 (2d Cir. 1995) (administrative remedies must be exhausted prior to seeking review in district court); *Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 740 (2d Cir. 1992) ("Under the exhaustion rule, a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself."); *Schlesinger v. Councilman,* 420 U.S. 738, 95 (1975) (exhaustion allows the competent jurisdiction "to develop the facts, to apply the law in which they are peculiarly expert, and to correct their own errors").

G.    **To the degree Chevron's claims are allowed to proceed, the law applicable to conduct that occurred in Ecuador must be Ecuadorian, not New York, law**

The Court ordered Defendants to respond to Chevron's motion "insofar as it seeks dismissal of affirmative defenses." DI 1362 at 14.  Admittedly Chevron's motion raises issues going to applicable law under the affirmative defenses section of its brief, and Messrs. Camacho and Piaguaje's answer avers that "Chevron's claims are not cognizable under the laws of Ecuador, which govern the relevant conduct of the parties," under the heading of an "separate defense." DI 307.  However, it would be strange and inappropriate to resolve core choice of law questions on this motion, and the Court should either hold the question over for trial, as it has indicated it intends to do with respect to the applicability of RICO to the conduct of the parties in Ecuador, or if it chooses to resolve the issue now, recognize that under New York's choice of law principles it is clear that Ecuadorian law should apply to all aspects of this dispute.

The parties' and the Court's attention have been focused—per Chevron's strategy—on RICO for the last two and half years.  The main "choice of law" issue in that context is whether RICO can be applied extraterritorially to conduct that largely occurred in Ecuador—an issue that was briefed, recognized by the Court, and held over by the Court to trial and fuller development

16

of facts as to what occurred where and the "nerve center" of this case is appropriately located.
DI 468 at 16; *id.* at 23 ("[W]hether and to what extent that Chevron, if it prevails, would be
entitled to relief with respect to alleged injuries caused only by foreign acts . . . must await
further factual development."). To the degree Chevron's seeks to resolve that issue now before
trial and without pointing to any facts, this would obviously be unwarranted. The facts at trial
will make clear that all the alleged conduct that Chevron relies on for its claims occurred
largely—almost exclusively—in Ecuador and are appropriately governed and judged , if
necessary, by Ecuadorian law, not U.S. statutes that should not be presumed to apply
extraterritorially.

The same inquiry and approach applies with respect to the law applicable to Chevron's
fraud claim ostensibly under New York law. Chevron's own briefing choice of law briefing in
the the context of Donziger's counterclaims is worth quoting at length:

> New York courts look to which jurisdiction has the greatest interest in the
> dispute—and that determination is governed by the "place of the tort." *See
> Bass v. World Wrestling Fed'n Entm't, Inc.*, 129 F. Supp. 2d 491, 504
> (E.D.N.Y. 2001). "[T]he law of the jurisdiction where the tort occurred
> will generally apply because that jurisdiction has the greatest interest in
> regulating behavior within its borders." *Cooney v. Osgood Mach., Inc.*, 81
> N.Y.2d 66, 72 (1993). "[W]here as here, the parties are domiciled in
> different states, the locus of the tort will almost always be determinative . .
> . ." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 339 (S.D.N.Y.
> 2010) (Kaplan, J., adopting report and recommendation of magistrate
> judge).

These cases and principles apply *a fortiori* to common-law torts such as fraud allegedly
committed abroad. *Bigio v. Coca-Cola Co.*, 675 F.3d 163 (2d Cir. 2012) (appropriateness of
applying Egyptian law to claims of trespass, conversion, and unjust enrichment allegedly commit
ted in Egypt); *Garcia,* 268 F.3d 76 at 80 ("Adjudication of the affirmative defense by a non-
tribal court would infringe 'upon tribal law-making authority, because tribal courts are best
qualified to interpret and apply tribal law.'"). Moreover, with respect to any claim based on

alleged abuse or misconduct in judicial proceedings, the law is particularly clear that "the paramount interest . . . is that of the [S]tate whose courts were allegedly abused." *Tripodi v. Local Union No. 38*, 120 F. Supp. 2d 318, 321 (S.D.N.Y. 2000).  The question of where Chevron's alleged tort of fraud occurred overlaps, to the degree it remains relevant, to the analysis regarding the extraterritorial application of RICO that the Court has held over to trial. *See* DI 468.  Indeed, the question is currently largely unanswerable because of Chevron's studied refusal to clarify its claims: not only do we not know whether Chevron still intends money damages claims, we consequentially do not know if any claims remain sounding in RICO, and if we are left only with a "fraud" claim, it is not at all clear precisely what representations Chevron alleges were false, material, and relied upon to the effect of proximately caused damages to Chevron.  While the Court should affirm the principle the law of the place of the tort will apply to any fraud claim, the Court should reserve further choice of law decisions to a fuller record on exactly what acts Chevron bases its claims at trial, and where and when they occurred.

Chevron's throwaway comment at the end of its section addressing this issue in its motion—that the "purported legality of Defendants' conduct under Ecuadorian law is no defense here"—is not only contradicted by its own (failing) efforts in its brief and throughout this case to establish that Defendants' conduct was illegal under Ecuadorian law, but is frankly absurd, or if taken seriously, repulsive.  Let us hope that no court anywhere in the world feels comfortable endorsing the principle that the legality of one's conduct under the laws of the place of that conduct constitutes "no defense."

### H.    Injunctive relief is not available to private litigants under RICO

Similar to the situation regarding choice of law, it seems awkward and inappropriate to address the issue (as clear as it is) of the unavailability of injunctive relief under RICO in this

context, despite the fact that the issue was listed in the affirmative or "separate" defenses

sections of Defendants answers.  Recently the Court indicated to Chevron that it was "going to

help [Chevron] out a great deal" by noting that the availability of injunctive relief, no matter how

pleaded, was "not an affirmative defense."  DI 1434-1.  However, the importance of resolving

this issue in order to establish the fundamental nature of what remains of Chevron's case is

paramount.  If Chevron drops its money damages claims, and no equitable claims under RICO

are possible, nothing sounding in RICO remains in this case.  *See, e.g., Steel Co v. Citizens for a

Better Env't*, 523 U.S. 83, 102-104 (1998) (per Article III requirements plaintiff must plead and

prove injury and "a likelihood that the requested relief will redress the alleged injury"); *Alliance

for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 426 F.3d 82, 85 (2d Cir. 2006) (Article III

requires allegations of injury "fairly traceable to the defendant's allegedly unlawful conduct and

likely to be redressed by the requested relief").

It is clear that equitable relief is not available to private litigants under RICO.  Indeed,

when another judge of this Court methodically examined the "the weight of Second Circuit

authority" on this question, the conclusion was as follows:

> As it now stands, no Court controlling within this jurisdiction has
> recognized a right to injunctive relief for private litigants under Section
> 1964(a) of RICO—with one exception: *Motorola Credit Corp. v. Uzan*,
> 202 F.Supp.2d 239, 242 (S.D.N.Y.2002) (Rakoff, J.), *rev'd. on other
> grounds*, 322 F.3d 130 (2d Cir. 2003). Significantly, however, this case (as
> well as *NOW, Inc. v. Scheidler*, 267 F.3d 687 (7th Cir.2001), *rev'd. on
> other grounds*, 537 U.S. 393, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003), the
> 7th Circuit precedent upon which it was based) was reversed on other
> grounds and is no longer considered good law.

*Am. Med. Ass'n v. United Healthcare Corp.*, 588 F. Supp. 2d 432, 446 (S.D.N.Y. 2008); *see also

DLJ Mortg. Capital, Inc. v. Kontogiannis*, 2009 U.S. Dist. LEXIS 46857, 19 (E.D.N.Y. June 4,

2009); *West Hartford v. Operation Rescue*, 726 F. Supp. 371, 378 (D. Conn. 1989); *Ashland Oil,

Inc. v. Gleave*, 540 F. Supp. 81, 85 (W.D.N.Y. 1982).  This conclusion was and is not news: the

RICO civil action statute "was not intended to provide private parties injunctive relief." *Sedima,*
*S.P.R.L. v. Imrex Co., Inc.*, 741 F.2d 482, 490 (2d Cir. 1984), *rev'd, on other grounds,* 473 U.S.
479 (1985) (citations omitted) ; *Trane Co. v. O'Connor Secs.*, 718 F.2d 26, 28-29 (2d Cir. 1983);
*Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1085-86 (9th Cir. 1986) ("[I]n considering
civil RICO, Congress was repeatedly presented with the opportunity expressly to include a
provision permitting private pplaintiffs to secure injunctive relief.  On each occasion, Congress
rejected the addition of any such provision."); *In re Fredeman Litigation*, 843 F.2d 821, 830 (5th
Cir. 1988) ("Congress indeed had several opportunities to give express authorization to private
injunctive actions but chose not to do so, apparently because it hesitated in the face of the
ramifications of that remedy.").

There is no injunctive relief available to private litigants under RICO.  Apologies to
Chevron if this undercuts its tactical approach in this case, but it is indisputable.  As noted, if
Chevron does indeed drop its money damages against the Donziger Defendants and moves for a
bench trial on all claims and all Defendants, there is no conceivable basis for RICO to even be
mentioned in this action going forward.  While Chevron and its proxies have preemptively tried
to publicize this move as a "victory" for Chevron and the shrewdness of its legal team, *see, e.g.*,
DI 1433; Roger Parloff, "Chevron weighs a surprising—and savvy—legal maneuver," Sept. 10,
2013, *at* http://finance.fortune.cnn.com/2013/09/10/chevron-weighs-a-surprising-and-savvy-
legal-maneuver/, in fact it would be a tactical move of truly unmatched cowardice.  If Chevron
genuinely believes Defendants are guilty of racketeering, it has spent three years putting itself in
the position to bring its claim to the true finder of fact: a jury of ordinary Americans.  Any
decision to now jackknife the case, which the Court seems to consider "of great importance to
the nation," DI 1362 at 10, and try to dispose of it on a bench trial before the Court whose views

on the fundamental facts are abundantly clear, *see, e.g.*, DIs 468, 550, 905, would be obviously abusive and violative of Defendants' due process and other constitutional rights.

**IV.    CONCLUSION**

For the foregoing reasons, the Court should deny all remaining parts of Chevron's fourth motion for partial summary judgment

Respectfully submitted,

Date: September 29, 2013                By:     *s/ Steven R. Donziger*
                                                Steven R. Donziger
                                                245 W. 104th Street, #7D
                                                New York, NY 10025
                                                Telephone: 917.678.3943
                                                Facsimile: 212.409.8628
                                                Email: StevenRDonziger@gmail.com

                                                *Pro Se*


                                                LAW OFFICES OF
                                                STEVEN R. DONZIGER, P.C.

Date: September 29, 2013                By:     *s/ Steven R. Donziger*
                                                Steven R. Donziger
                                                245 W. 104th Street, #7D
                                                New York, NY 10025
                                                Telephone: 212.570.4499
                                                Facsimile: 212.409.8628
                                                Email: StevenRDonziger@gmail.com

                                                *Attorney for Defendants Law Offices of*
                                                *Steven R. Donziger and Donziger &*
                                                *Associates, PLLC*

Date: September 29, 2013                        GOMEZ LLC
                                                Attorney At Law

                                        By:     *s/ Julio C. Gomez*
                                                Julio C. Gomez

                                                The Sturcke Building
                                                111 Quimby Street, Suite 8
                                                Westfield, NJ
                                                Telephone: 908.789.1080
                                                Facsimile: 908.789.1081
                                                Email: jgomez@gomezllc.com

                                                *Attorney for Defendants*
                                                *Hugo  Gerardo  Camacho  Naranjo  and*
                                                *Javier Piaguaje Payaguaje*

22