**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :

CHEVRON CORPORATION,               :

               Plaintiff,         :

            v.                 :    11 Civ. 0691 (LAK)

                                        :

STEVEN DONZIGER, *et al.*,         :

            Defendants.      :

                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CHEVRON CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS RENEWED MOTION BY ORDER TO SHOW CAUSE FOR RE-INSTATEMENT OF CHEVRON'S UNJUST ENRICHMENT CLAIM (COUNT 6)**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

## I.    PRELIMINARY STATEMENT

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, and based on developments that just occurred in Ecuador, Chevron Corporation ("Chevron") now moves for reconsideration and reinstatement of its unjust enrichment claim against the LAPs.

On March 12, 2013, this Court denied plaintiff Chevron's motion to reinstate its unjust enrichment claim on the narrow ground that the "only enrichment of the LAP Representatives—as opposed to restraint of Chevron or subsidiaries' assets that may or may not be released—said to have occurred to date" pertained to a "*de minimus*" amount held in a TexPet account at Banco Pichincha.  Dkt. 889 at 2.  The Court explained that its decision was without prejudice to Chevron renewing its request to "reinstate the previously dismissed claim," pursuant to Fed. R. Civ. P. 54, "[i]f, as and when there is a substantial basis for a claim of unjust enrichment."  *Id.*  The attached Declaration of Chevron's Ecuadorian counsel, Adolfo Callejas, establishes that the restraint on Chevron Intellectual Property, LLC's ("Chevron IP") trademarks in Ecuador has been perfected.  Just today, September 30, 2013, pursuant to the embargo orders issued by the Ecuadorian courts enforcing the LAPs' judgment against Chevron, the Ecuadorian Institute for Intellectual Property ("IEPI") completed annotating the registrations of each trademark to show that they are now subject to the embargo orders, and, thus, to publicly state that IEPI now holds each of Chevron IP's 50 marks for the benefit of the LAPs, thereby impairing Chevron IP's ownership interest.  By operation of Ecuadorian law, the Provincial Court of Sucumbios must now auction them off to monetize them for the LAPs' benefit, and then turn over the auction proceeds to the LAPs.  By all parties' accounts, these trademarks are worth millions of dollars.  Hence, the LAPs now have beneficial ownership of the Chevron IP assets and, as a result, have without question been unjustly enriched.

Consequently, Chevron IP no longer controls the trademarks, which are held for the LAPs' benefit by IEPI, and the auctioning off of the marks to monetize them for the LAPs is now certain and imminent. The LAPs have now perfected the orders they previously procured from the Ecuadorian Court directing the embargo of Chevron IP's trademarks in Ecuador and they are on the cusp of being monetized. Chevron's unjust enrichment claim is, therefore, now ripe and should be reinstated.

Chevron moves by order to show cause rather than regular motion, which would remain pending for at least twenty-one days, so as to avoid undue burden to the Court or the parties because the trial of this case is to commence on October 15 and Chevron's unjust enrichment claim should be a part of it. Of note, this claim, factually, legally and equitably, parallels Chevron's other claims and requires the same proof that the parties already intended to adduce at trial. Therefore, its reinstatement should not affect the trial schedule in any way. But unjust enrichment affords Chevron an alternative—yet very necessary—basis for equitable relief that is unassailable, as opposed to its other claims under RICO and fraud that the defendants challenge on various legal grounds. Accordingly, Chevron requests that this Court reinstate its unjust enrichment claim and afford it that alternative basis for equitable relief in the wake of today's development in Ecuador that has now provided the LAPs with beneficial ownership of these valuable trademarks.

## II.   PROCEDURAL BACKGROUND

On February 1, 2011, injured by an ongoing corrupt scheme involving fraud and extortion, Chevron brought suit against the RICO Defendants and the LAPs. Dkt. 1. On April 20, 2011, Chevron filed its First Amended Complaint ("FAC") setting forth additional evidence of the RICO Defendants' fraud and extortion. Dkt. 283. The Donziger Defendants moved to dis-

miss the FAC on May 4, 2011.  Dkts. 302 & 303.  On October 23, 2012, the LAPs moved for judgment on the pleadings.  Dkts. 600 & 601.

On May 14, 2012, this Court granted in part and denied in part the Donziger Defendants' Motion to Dismiss, dismissing a portion of the third claim for relief and all of the fourth through sixth claims.  Dkt. 468 at 53.  On May 24, 2011, this Court granted essentially the same relief to the Stratus Defendants (Dkt. 472 at 10) and on November 27, 2012, this Court resolved the LAPs' motion consistent with its previous orders on the motions to dismiss.  Dkt. 634 at 2.

Regarding unjust enrichment, the Court dismissed that claim for relief "only as premature" (Dkt. 468 at 53; Dkt. 634 at 2) because, as of that date, "none of Chevron's assets have been seized to satisfy the Judgment."  Dkt. 468 at 48.  On February 12, 2013, Chevron moved for partial reconsideration of those orders.  Dkt. 782.  On March 12, 2013, the Court "without prejudice" denied Chevron's motion "on the same basis that the unjust enrichment claim was previously dismissed."  Dkt. 889 at 2.

## III.    ARGUMENT

Since this Court provisionally dismissed Chevron's unjust enrichment claim without prejudice to reinstatement later, circumstances have materially changed.  The LAPs have perfected the embargo of Chevron IP's trademarks, and there is now no possibility that the "restraint" of Chevron's assets "may or may not be released."  Dkt. 889 at 2.  To the contrary, with this interest in hand, the LAPs are now poised to monetize the embargoed trademarks in partial satisfaction of the fraudulent Ecuadorian judgment against Chevron.  The LAPs' successful completion of the unjust taking of property for their benefit, based on the fraudulent Lago Agrio judgment, supplies the element necessary for an unjust enrichment claim that the Court previously found lacking.

**A.      The Unjust Enrichment Claim Is Now Ripe for Reconsideration and Reinstatement**

In October 2012, the LAPs obtained sweeping Ecuadorian court orders that deemed the property of a list of approximately 70 indirect subsidiaries and affiliates of Chevron Corporation from around the world to be the equivalent of Chevron Corporation property ("Ecuadorian Embargo Orders").  *See* Dkt. 785-2 at 2–3; 785-3.  Among the subsidiaries deemed by the Ecuadorian Embargo Orders to be held by Chevron Corporation is Chevron Corporation's Delaware subsidiary, Chevron Intellectual Property, LLC.  Dkt. 785-2 at 4–5.  As part of the Ecuadorian Embargo Orders, Judge Wilfrido Erazo Araujo ("Judge Erazo"), identified the Chevron IP trademarks subject to embargo.  *See* Dkt. 785-3.   Although the embargoed trademarks were identified last year, the IEPI did not perfect the embargo by annotating the marks until today.  *See* Callejas Decl. at ¶ 7.

On September 5, 2013, the LAPs requested that Judge Erazo issue an order clarifying the status of the trademarks.  Callejas Decl. ¶ 4, Ex. A.  Just four days later, on September 9, 2013, Judge Erazo issued an order:  1) to clarify the trademarks subject to the October 2012 Ecuadorian Court Orders; 2) to direct the IEPI to note via a stamp on the registration of each trademark that they are now subject to the October 2012 Ecuadorian Court Orders; and 3) to direct the IEPI to hold the trademarks in trust for the benefit of the LAPs.  Callejas Decl. ¶ 4, Ex. B.[1]

Today the IEPI completed annotating the 50 trademarks previously held by Chevron IP

---

[1] This is not the first time Judge Erazo has moved quickly for the benefit of the LAPs.  As explained previously, on October 11, 2012, just four days before the embargo order was issued, Judge Luis Alberto Legña Zambrano, who had been presiding on the matter, was removed and replaced by Judge Erazo.  The embargo order, purportedly as the work of Judge Erazo, was issued on October 15, 2012, just one working day after he took responsibility for the case.  *See* Dkt. 783 at 7, citing Dkt. 784-6 and Dkt. 785-2.  Judge Erazo is also the same judge who issued the appellate order remanding the case with instructions to allow the collusive *Cordova* matter to go forward, leading the original trial judge who had rejected such a ruling to recuse himself rather than comply with the decision.  *See* Dkt. 894 at 17.

such that the embargo of the marks is now complete.  Callejas Decl., ¶ 7.  The trademarks are thus no longer within Chevron's control but are instead now held by IEPI for the benefit of the LAPs.  Callejas Decl. ¶¶ 8–9.  Having now completed the annotation process, the Provincial Court of Sucumbíos will set the date for the auction of the trademarks, allowing the LAPs to further benefit by monetizing their interest in the marks.  *Id.* at ¶¶ 10–11.

**B.     The Chevron IP Trademarks Are Now Held for the LAPs' Benefit**

Chevron's Count 6 alleges that "Defendants have been and will continue to be unjustly enriched by benefits obtained due to the judgment itself."  Dkt. 356-1, ¶ 411.  Now that the IEPI has completed its annotation of the trademarks to remove them from Chevron's control such that they are presently held for the benefit of the LAPs, the allegation that the LAPs "have been" unjustly enriched is no longer "premature" or "hypothetical."  *See* Dkt. 634 at 2; Dkt. 468 at n.182 (citing *Axel Johnson, Inc. v. Arthur Andersen & Co.*, 830 F. Supp. 204, 211–12 (S.D.N.Y. 1993) ("[N]o cause of action for unjust enrichment lies for hypothetical future liabilities.").  While the LAPs have not yet monetized the value of the trademarks, they enjoy a "specific and direct benefit," today that is based on their successful enforcement of the fraudulent Lago Agrio Judgment. *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000); *see also Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 361 (2d Cir.1999) ("Unjust enrichment results when a person retains a benefit which, under the circumstances of the transfer and considering the relationship of the parties, it would be inequitable to retain."); Restatement Restitution § 1 (Unjust Enrichment), comment *b* (1937) ("The word 'benefit,' therefore, denotes any form of advantage.  The advantage for which a person ordinarily must pay is pecuniary advantage; it is not, however, necessarily so limited[.]").

This Court has previously declined to reinstate Chevron's unjust enrichment claim where the "seizure" of property was not complete (s*ee* Dkt. 468 at 47-48) or the benefit was "*de mini-*

*mus*" (Dkt. 889 at 2).  To explain why Chevron's unjust enrichment claim was previously unripe the Court noted that a "'judgment does not create any vested property interest.'"  Dkt. 468, n. 181 (citing *In re Calloway*, 423 B.R. 627, 629–30 (Bankr. W.D.N.Y. 2010)).  At the time, although the Ecuadorian Embargo Orders had been entered, Defendants had not successfully collected on the Lago Agrio Judgment.  The Court noted, however, that certain property interests collected by a defendant at a plaintiff's expense could trigger a ripe unjust enrichment claim.  *See id.* (citing *Prudential Ins. Co. of Am. v. Dukoff*, 674 F. Supp.2d 401, 413 (E.D.N.Y. 2009) ("an unjust enrichment claim on an unpaid insurance benefit was ripe because 'courts have held that a party may hold a property interest in an insurance policy'")).

Having now perfected the embargo of the trademarks, the LAPs presently hold a benefit at Chevron's expense sufficient to justify reinstatement of its unjust enrichment claim.  As Chevron has previously argued and the LAPs have never disputed, trademarks, like an uncollected insurance policy, are a property interest.  *See* Dkt. 783 at 10–11 (citing *Frederick Warne & Co., Inc. v. Book Sales Inc.*, 481 F. Supp. 1191, 1196 (S.D.N.Y. 1979) ("the owner of a mark acquires a protectable [sic] property interest in his mark through registration and use") and citing Margarita Zambrano, EFFECT OF REGISTRATION, 1 TRADEMARKS THROUGHOUT THE WORLD § 47:19 (2012) (explaining that the effect of registering a trademark under Ecuadorian law also confers the right to "exclusive use of the trademark" and "the right to prevent third parties from using it")).  Having now revised the registration of the trademarks to reflect the Ecuadorian Embargo Orders entered in favor the LAPs, Chevron IP has been stripped of control of the marks and its ownership interest impaired, and the LAPs have now been provided with beneficial ownership of these valuable trademarks.  *See* Callejas Decl., ¶¶ 8, 9.  The LAPs now enjoy

a property interest in the marks at issue—an interest protected by IEPI until such time as the marks are monetized by a court-approved auction. *See Id.* at ¶¶ 10–11.

Once monetized, as Chevron has previously shown and the LAPs have not disputed, the trademarks embargoed in Ecuador will have significant monetary value. *See* Dkt. 783. The LAPs' filing in support of the Ecuadorian Embargo Orders estimated they could reap in excess of $300 million from the auction sale of those marks. Dkt. 785-11 at 21–30.

## C.     Equitable Relief for the LAPs' Unjust Enrichment Should Be Reinstated

Reconsideration of the dismissal of Chevron's unjust enrichment claim and reinstatement of the claim will prevent a "manifest injustice." *Mikol v. Barnhart*, 554 F. Supp. 2d 498, 503 (S.D.N.Y. 2008). Without reinstatement of the claim, the LAPs will unjustly benefit from the fraudulent Ecuadorian judgment at Chevron's expense. Recent events in Ecuador have resulted in fulfillment of all of the conditions for an unjust enrichment claim, and this issue warrants re-consideration: (i) Chevron has proceeded in good faith; (ii) Chevron has proceeded without un-due delay—Chevron was informed that the stamping was completed *today*; and (iii) reinstate-ment of the claim would not be prejudicial to its adversaries. *See Virgin Atl. Airways v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992); *see also* Dkt. 783 at 15 (collecting cases on reconsideration and reinstatement). Indeed, this claim was dismissed twice without prejudice as "premature" because until now the LAPs had received no benefit from the fraudulent Lago Agrio Judgment. Dkt. 468 at 53; Dkt. 889 at 2. Now the LAPs have benefitted at Chevron's expense, and that makes this unjust enrichment claim ripe for adjudication and imposition of a construc-tive trust on any proceeds the LAPs receive from the auction.

Reinstatement of Chevron's unjust enrichment claim will allow it to pursue equitable re-lief without disturbing the schedule or upcoming trial date. This claim is an alternative basis for

imposing equitable relief based on the same factual predicates as its RICO and third-party fraud

claims.  The availability of equitable relief for unjust enrichment is also unassailable, whereas

Defendants have claimed equitable relief is unavailable for Chevron's RICO claim and have

challenged Chevron's third-party fraud claims.  *See, e.g.,* Dkt. 1442 at 2-3; Petition For Writ Of

Mandate, Case 13-772, Dkt. 1-1 at 22-23.

## IV.   CONCLUSION

For the foregoing reasons, Chevron requests that the Court reconsider it prior order and

reinstate Chevron's claim for Unjust Enrichment against the LAPs.

Dated: September 30, 2013                      Respectfully submitted,

New York, New York                            GIBSON, DUNN & CRUTCHER LLP

                                              /s/ Randy M. Mastro

                                              Randy M. Mastro
                                              Andrea E. Neuman
                                              200 Park Avenue
                                              New York, New York 10166
                                              Telephone: 212.351.4000
                                              Facsimile: 212.351.4035

                                              William E. Thomson
                                              333 South Grand Avenue
                                              Los Angeles, California 90071
                                              Telephone: 213.229.7000
                                              Facsimile: 213.229.7520

                                              Attorneys for Chevron Corporation