UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                  :
CHEVRON CORPORATION,                                              :
                                                                  :
               Plaintiff,                                  :
                                                                  :
  -against-                                                      :
                                                                  :  Case No. 11 Civ. 0691 (LAK)
                                                                  :
STEVEN R. DONZIGER, et al.,                                       :
                                                                  :
               Defendants.                                 :
                                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**PLAINTIFF CHEVRON CORPORATION'S MOTION FOR LEAVE TO SUPPLEMENT THE RECORD IN CONNECTION WITH PENDING MOTION FOR SANCTIONS AND TO HOLD DEFENDANTS IN CONTEMPT (DKT. 893)**


GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:   212.351.4000
Facsimile:    212.351.4035

*Attorney for Plaintiff*
*CHEVRON CORPORATION*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

LEGAL STANDARD......................................................................................................................4

ARGUMENT ..................................................................................................................................4

I.    Defendants' Exhibit List Proves False Their Assertion That They Cannot Produce Documents from Ecuador ....................................................................................4

II.   Defendants' Disclosure of Confidential Information to Correa and the Media...................6

III.  Defendants' Collusion with the Republic of Ecuador in the Ongoing Pressure Campaign and Efforts to Intimidate Chevron's Witnesses..................................................8

CONCLUSION................................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Atl. Mut. Cos. v. Home Depot U.S.A., Inc.*,
   No. 02 Civ. 2241-KHV, 2003 WL 202607 (D. Kan. Jan. 27, 2003) .................................... 4

*Pfizer Inc. v. Astra Pharm. Prods., Inc.*,
   858 F. Supp. 1305 (S.D.N.Y. 1994) ................................................................................. 4

*Tackman v. Goord*,
   No. 99 Civ. 0438A(F), 2005 WL 2347111 (W.D.N.Y. Sept. 26, 2005) ............................... 4

**PRELIMINARY STATEMENT**

In its March motion for sanctions, Chevron set forth in detail how Defendants have attacked and defied this Court's authority through the collusive *Cordova* action, in which Defendants sought and obtained an Ecuadorian court order that purports to prohibit LAP lawyer Pablo Fajardo from supplying the LAPs' U.S. lawyers and the LAPs' U.S. representative (Steven Donziger) with responsive documents from Ecuador. (Dkt. 894 at 6–7, 16–18; Dkt. 965 at 10–12; Dkt. 1075-1 at 164:19–24, 184:12–184:15, 357:22–358:10.) This Court has recognized that the *Cordova* action "obviously was collusive" and "troublesome." Dkt. 905 at 48–49. Chevron now seeks leave to supplement the record supporting its March sanctions motion with new relevant evidence.

The new evidence makes clear that Defendants' purported basis for refusing to comply with this Court's order is false. In refusing to produce documents from their Ecuadorian attorneys and agents, in violation of this Court's order, Defendants argued that they could not do so because they did not have control of the documents and because, under Ecuadorian law, they could not produce the documents absent authorization from every one of the 47 LAPs. Dkt. 947 at 16; Dkt. 950 at 12. Defendants went so far as to claim that "compliance is impossible." Dkt. 950 at 17. But Defendants have now produced meeting minutes from The Asamblea (the "Asamblea Documents") with their exhibit list. *See* Dkt. 1377-1 at 16-19 (DX 218 – DX 246). This new evidence disproves Defendants' repeated assertions to this Court that they could not comply with its orders. As a result, the new evidence provides yet another reason to impose sanctions and hold Defendants in contempt.

Moreover, additional new evidence further demonstrates that the Ecuadorian court order in *Cordova* that Defendants claim prevents compliance with the order in this Court is not entitled

1

to deference. The new evidence confirms that the *Cordova* order is not the product of a judiciary independent from influence by Defendants and their allies, but instead, one directed by an executive branch that is actively seeking to undermine Chevron's ability to litigate in this Court. Defendants have intensified their collusion with other branches of the Ecuadorian government, including President Correa and the state-controlled Ecuadorian media, to further thwart this Court's authority and obstruct Chevron's ability to prosecute its case at trial. Just as Defendants colluded with the Ecuadorian court in the *Cordova* action to intentionally interfere with discovery proceedings in this case, the highest levels of the Ecuadorian government are now conducting an open campaign to interfere with other aspects of this proceeding, including by intimidating witnesses from testifying or otherwise cooperating with Chevron, its lawyers, and witnesses. The new evidence shows that Defendants have supplied the Ecuadorian government and its state-controlled media with confidential Chevron documents in clear violation of this Court's Protective Order (Dkt. 723), so that President Correa and his media mouthpieces can use them to put public pressure on Chevron. When Chevron brought this violation to Defendants' attention—and the fact that their Ecuadorian government allies could only have obtained these confidential documents from Defendants, who obtained them in discovery here, subject to this Court's Protective Order—Defendants did not even respond.

President Correa and the state-run media are engaging in a concerted campaign to intimidate Chevron's witnesses and to create a climate of fear in Ecuador against aiding Chevron in this (and other) litigation. Correa and his collaborators call Chevron, and anyone who would aid it in exposing this fraud, "traitors," "criminals" and "enem[ies] of the country" who are "conspir[ing] against the Government," "giving ammunition to [Ecuador's] international enemies," and waging a "criminal campaign" against Ecuador (Dkt. 1451-8 (Ex. 4207); Ex. 4401;

2

Dkt. 1451-7 (Ex. 4206)). There is now a website dedicated to attacking those who have "cooperated" with Chevron as a "long list of traitors" who "have filled their pockets in exchange for harming their own people." Ex. 4402 (Los vende patria, http://www.losvendepatria.com/ (last visited Sept. 27, 2013)).

These actions represent a whole new level of overt interference with this Court's authority. With Defendants' support, Ecuador's government is attempting to intimidate witnesses and obstruct the course of the proceedings before this Court. While this is a new level of activity, these tactics are of a piece with President Correa's well-known penchant for "attacking judges who rule in ways he finds unfavorable, while ordering judges to rule in specific ways in cases in which he is interested. These constant attacks and [executive] meddling have created an environment of significant intimidation, self censorship and judicial pliancy in which dissent is penalized and criminalized and the president routinely gets his way through bullying, threats and reprisals." Dkt. 1475-11 (Ex. 4310) at 17 (Expert Report of Douglas Farah). It is no secret who President Correa wants to win in the dispute with Chevron, and it is not lost on Ecuadorian judges considering related cases. This is the environment that enabled Defendants to successfully obtain the *Cordova* order that furthers their interest (and Correa's) in the lawsuit before this Court, by thwarting discovery into their wrongdoing. As the Court will recall, the requested *Cordova* order was rejected by the first trial judge, who then denied Defendants' motion to reconsider. When Defendants appealed, it just happened that the appeal was heard by the same "permanent substitute" appellate judge who—when siting as a substitute trial judge—had just issued an *ex parte* embargo order against Chevron. That judge then overturned the decision and instructed the trial judge to allow the action. Rather than comply, the trial judge recused himself and the case was reassigned. The replacement judge then issued the order Defendants sought,

prohibiting them from complying with this Court's orders. *See* Dkt. 894 at 6-7 and exhibits cited therein.

Accordingly, this new evidence is relevant to Chevron's motion seeking sanctions for that misconduct, and Chevron respectfully requests that the Court permit Chevron to supplement the record supporting its sanctions motion with Exhibits 4401-4416 to the Declaration of Jefferson E. Bell, filed herewith, and the following recently-filed documents: Dkt. 1377-1 (DX 218 – DX 246); Dkt. 1451-7 (Ex. 4206); Dkt. 1451-8 (Ex. 4207); Dkt. 1451-9 (Ex. 4208); and Dkts. 1475-10 & 11 (Ex. 4310).

## LEGAL STANDARD

This Court has broad discretion to grant leave to supplement the record in connection with a pending motion. *See, e.g.*, *Tackman v. Goord*, No. 99 Civ. 0438A(F), 2005 WL 2347111, at *12 (W.D.N.Y. Sept. 26, 2005); *Pfizer Inc. v. Astra Pharm. Prods., Inc.*, 858 F. Supp. 1305, 1308 n.1 (S.D.N.Y. 1994); *see also Atl. Mut. Cos. v. Home Depot U.S.A., Inc.*, No. 02 Civ. 2241-KHV, 2003 WL 202607, at *6 n.9 (D. Kan. Jan. 27, 2003) (granting leave where new evidence becomes available after the parties' briefing); Dkt. 1151 at 4–5. The Court should grant Chevron leave to supplement the record here because the evidence described below was unavailable at the time of the sanctions proceedings and is relevant to determination of the sanctions motion.

## ARGUMENT

**I.     Defendants' Exhibit List Proves False Their Assertion That They Cannot Produce Documents from Ecuador**

Defendants have repeatedly told this Court that they could not produce documents from Ecuador. Dkt. 836; Dkt. 841; Dkt. 947 at 2; Dkt. 950 at 1. New evidence shows that this assertion, their primary defense throughout, is false. Defendants can and do produce documents from

4

Ecuador when they wish to do so. The Court should impose the requested sanctions and hold Defendants in contempt for their failure to comply.

In the sanctions proceedings, Donziger asserted that he "lacks the ability to obtain the documents at issue." Dkt. 947 at 2. The LAPs offered the same assertion and that "[i]t is thus impossible for Camacho and Piaguaje to comply with the Court's February 13, 2013 Order. There is thus no basis for contempt or sanctions." Dkt. 950 at 1. However, Chevron demonstrated that Donziger and the LAPs in fact do produce documents from Ecuador when it serves their interests or when they wish to do so. *See* Dkt. 1075-1 at 164:12-24 (counsel for the LAPs testifying at the sanctions hearing that the firm received the Zambrano declaration from Fajardo). For example, Donziger directed and reviewed Ecuadorian court filings (Dkts. 966-1 – 966-2 (Exs. 3605-10)); discussed draft reports with LAPs' experts (Dkt. 966-3 (Exs. 3611-13)); told Ecuadorian attorneys when to file (Dkts. 966-3 – 966-4 (Exs. 3614-17)); and berated Fajardo and others not to "fuck up" his instructions (Dkt. 966-4 (Ex. 3618)).

The new evidence shows that Donziger and the LAPs continue to flout this Court's orders and obtain evidence from Ecuador when it servers their interests. On the Defendants' exhibit list filed with this Court, Defendants disclosed 29 documents, never produced before then to Chevron, concerning the "Asamblea." As reflected in Donziger's retainer agreement, which the parties discussed at the sanctions hearing, the Asamblea is a collection of Ecuadorian indigenous organizations affiliated with the plaintiffs. Dkt. 355-37 (Ex. 1122), Exhibit A (listing under "Plaintiffs' Coordinators" "Asamblea de Afectados por Texaco (Assembly of Communities Affected by Texaco) comprising the Frente de Defensa de la Amazonia; Organization of the Indigenous Nationality Siona of Ecuador (ONISE); the Organization of the Indigenous Nationality Secoya of Ecuador; the Indigenous Federation of the Cofan Nationality of Ecuador (FEINCE);

5

Los Kichwas Firmantes de la Demanda; and Los Colonos Afectados." These documents purport to be "minutes" from meetings of the Asamblea, which could thus have only come from Ecuador. These documents are responsive to Chevron's Request for Production ("RFP") 149, and Defendants have offered no acceptable explanation for why these documents were not produced in response to Chevron's request.[1] In short, now that trial is imminent, Defendants are able to produce documents from Ecuador for use on their exhibit list and defense in this Court. This is willful misconduct that violates this Court's order, and merits sanctions.

## II.     Defendants' Disclosure of Confidential Information to Correa and the Media

As the Court is well aware, documents designated "Confidential" in this action are restricted for use "solely in connection with the legal pursuit or defense of this Action" and related proceedings. Dkt. 723 ¶ 6. The Protective Order further provides that "Confidential Information, except with the prior consent of the Producing Party or upon prior order of this Court, shall not be disclosed by any party to any person [with limited and enumerated exceptions inapplicable here]." *Id.* ¶ 8. Defendants and their Ecuadorian allies have willfully violated these provisions of the Protective Order by providing Chevron's confidential information to the Ecuadorian government for use in attacking Chevron. This continued lack of respect for this Court's discovery orders—and continued collusion with the Ecuadorian government in doing so—further supports the imposition of sanctions against Defendants.

There is no question the protective order has been violated. On September 16, state-owned newspaper *El Telégrafo* published an article entitled, "Chevron intentó cercar a Correa negociando con la Casa Blanca" ("Chevron tried to approach Correa, negotiating with the White House"). Ex. 4403; *see also* Ex. 4404 (*Freedom of the Press 2013*, Freedom House,

---

[1]   RFP 149 requests "All DOCUMENTS RELATED TO the ASSEMBLY OF THE AFFECTED" which is defined to encompass the Asamblea. Dkt. 895-1 (Ex. 3504), ¶ 9 & RFP 149.

http://www.freedomhouse.org/report/freedom-press/2013/ecuador (last visited Sept. 22, 2013) (noting state ownership of *El Telégrafo*)).  The article quotes at length from a confidential memo Chevron produced in this action and designated "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER."  *See* Ex. 4403 ("A 2010 confidential document from the petroleum company reveals . . ."); Ex. 4405 (CVX-RICO-4888873 through CVX-RICO-4888876).  On September 28, *El Telégrafo* published a second article regarding the confidential document, in which it stated that Correa "confirmed the revelation" and quoted the President as accusing Chevron of misconduct: "This is very serious because it shows that they are the ones who wanted to interfere in the lawsuit, and not us. They were the ones who went to the US government to pressure them to unlawfully intervene in the Lago Agrio lawsuit."  Ex. 4416 (*El Telégrafo*, *The President Claims the Oil Company's Meetings Reveal Its Intention to Intervene in the Lawsuit* (Sept. 28, 2013)).

  Defendants and their allies almost certainly provided this confidential document to *El Telégrafo* in violation of the Protective Order.  The article admits that it is quoting from a "confidential document," which means that the copy used was the version stamped "CONFIDENTIAL" and produced to Defendants in this litigation.  Other than the stamp, the document nowhere else indicates that it is "confidential."  Moreover, upon learning of the article, Chevron requested that Defendants' current and former counsel explain how the newspaper received the confidential document.  Ex. 4406.  Defendants refused to respond.  As described further below, the article was used as part of a renewed effort by the Ecuadorian government to coordinate with Defendants to attack Chevron.  Thus, Defendants are supplying the government with information so that the Court can then act in the Defendants' interest and interfere with the litigation in this Court.

7

The Court has previously warned Defendants of the consequences of disclosing confidential information in violation of the Protective Order. In May 2013, Defendants disclosed documents Chevron had marked confidential to the Amazon Defense Coalition. After Defendants failed to answer Chevron's repeated requests for an explanation for the unauthorized disclosures, Chevron moved for remedial measures to ensure such future violations did not occur. Dkt. 1222. The Court denied the motion without prejudice and subject to renewal in the event of any future violation. The Court also "reminded [Defendants] of their obligations under the Protective Order which was agreed to on behalf of all of them and is an order of the Court." Dkt. 1236. The Court further cautioned that "[f]uture violations, if any, may result in the imposition of sanctions, whether in this action or in other appropriate proceedings." *Id.* That day has now come. Defendants have not heeded the Court's warning, and the Court should consider this evidence of a pattern of misconduct in sanctioning and holding Defendants in contempt. Indeed, Donziger apparently violated two additional protective orders from other federal courts by filing in this action material from the ongoing BIT arbitration, which required Chevron to move by Order to Show Cause to seal the confidential materials. *See* Dkt. 1453.

### III. Defendants' Collusion with the Republic of Ecuador in the Ongoing Pressure Campaign and Efforts to Intimidate Chevron's Witnesses

Now that the case in this Court is approaching trial, the Republic of Ecuador has increased its efforts to aid Defendants and derail this litigation. Ecuador and the state-run media are making overt attempts to intimidate Chevron's witnesses. President Correa and his allies have also embarked on a public pressure campaign to stir up a climate of fear such that Ecuadorian residents, of which Chevron lists nine on its witness list, will not feel safe testifying on behalf of Chevron. In fact, Correa is calling Chevron's witnesses "traitors" to their country (Dkt. 1451-8 (Ex. 4207)). The evidence of these new efforts shows that Defendants are once more us-

8

ing their relationship with the Ecuadorian government to interfere with this Court's authority. This is further compelling evidence for the need for sanctions against Defendants, and the Court should grant Chevron leave to supplement the record for the March sanctions motion with this material.

The attempts to intimidate Chevron's witnesses are unmistakable. Dr. Vladimiro Xavier Álvarez Grau is a prominent Ecuadorian legal scholar, who was disclosed to Defendants as a potential trial witness on August 30, 2013, in Chevron's proposed Pretrial Order. Dr. Alvarez has taken a firm stance against Ecuadorian judicial corruption. On September 16, 2013, an unidentified individual purporting to be a reporter with state-owned and -controlled Ecuadorian newspaper *El Telégrafo* contacted Dr. Alvarez regarding one of his reports. Ex. 4408 (*El Telégrafo*, *Three US Law Firms Have Contacted Him to Issue Reports* (Sept. 18, 2013). The individual pushed Dr. Alvarez to acknowledge that he was a collaborator with Chevron, and that Dr. Alvarez was acting against the interests of his country for pay. *Id.* Indeed, the caller pressed Dr. Alvarez on any payments he received for providing his expert opinion, asking about compensation no fewer than five times, as Dr. Alvarez refused to offer the information: "Have you been paid anything by the three separate law firms that approached you from the United States? . . .But is there a price or not? . . . And can we know how much you have received as payment for those professional opinions? . . . But if everything is so up front, so transparent, can't you say how much you charged? . . . But a journalist is not a judge to issue you with a summons, so I ask again, how much income did you declare to the relevant authority, the Internal Revenue Service?" *Id.* The "interview" was published the next day and lists no author, under the byline of the "Investigative Unit." *Id.* That the newspapers are acting under the direction of President Correa is clear. In a recent interview, President Correa tore up a copy of a newspaper as a threat

9

to media that do not conform to his vision for press coverage, such as the papers *Hoy*, *El Comercio*, and *La Hora*. He claims that they have not sufficiently supported his *Mano Sucia de Chevron* ("dirty hand of Chevron") campaign and warned that they "could face sanctions under the country's Communications Law, under which they are required to 'publish public interest articles.'" Ex. 4407 (Silvia Higuera, *Correa warns 3 newspapers about possible sanctions for insufficient coverage of Chevron lawsuit*, Knight Center for Journalism (Sept. 26, 2013)).

This was not the first "use . . . of [Ecuadorian] state power to intimidate persons assisting Chevron." Dkt. 843 at 25. Nor is Dr. Alvarez alone. On September 17, *El Telégrafo* published a graphic based on Chevron's Count 9 privilege log appendix. The article highlights certain Chevron lawyers and experts on the list and asserts they are "collaborators" with whom Chevron intended to "suffocate Ecuador." Dkt. 1451-9 at 1-2 (Ex. 4208). It lists nine categories of "collaborators," and names specific individuals, including Dr. Alvarez and Chevron's former expert Walter Spurrier. *Id.* at 5. The article cites Fajardo repeatedly, quoting his attacks on Dr. Alvarez's report and Chevron's efforts to counter Defendants' fraud. *Id.* at 4–5. Fajardo may be personally involved in the efforts to intimidate Dr. Alvarez given Fajardo's involvement in the article and his past threats against Chevron's potential witnesses, including Guerra and Reyes. Dkt. 843 at 28.

In addition, a special website has been created in order to brand—by name—those Ecuadorians who have worked with Chevron as doing "harm [to] their Amazon brothers and their country." The site is called "Los vende patria," which translates roughly to "The Sellers of the Fatherland" or "The Traitors." Ex. 4402. The website shows pictures of individuals accused of assisting Chevron, along with their titles, places of work, and Ecuadorian identification numbers. *Id*. The website also describes how each of the "traitors" has betrayed the country and how they

"have filled their pockets in exchange for harming their own people," noting their respective roles. *Id.* The individuals include attorneys who have assisted Chevron as well as journalists who have written articles perceived as favorable to the company. *Id.* While Chevron has managed to provide for the security of certain witnesses, including Alberto Guerra, who has relocated to the United States with his family, others remain in Ecuador. These witnesses are at risk of the threat of retribution that this Court identified in its earlier opinion granting protection to Does 1 and 2. Dkt. 843.

President Correa has also increased his public attacks on Chevron, which makes clear to Chevron's nine witnesses who reside in Ecuador that they are effectively considered enemies of the state. The following are only a few recent examples:

- In a recent interview, Correa focused on the "traitors" aiding Chevron: "How much did the traitors collaborate in this, how much did the media collaborate, who conspired against the Government, right? They're giving ammunition to those international enemies our country has." Dkt. 1451-8 (Ex. 4207). And Correa has left no doubt that he counts Chevron among those enemies, terming the company an "enemy of the country" and accusing Chevron of waging a "criminal campaign" against Ecuador. Dkt. 1451-7 (Ex. 4206).

- In another recent interview, Correa referred to Chevron's employees and agents as "these immoral people, these criminals . . . They can buy the Arbitration Tribunals, they can buy the corrupt press that sells out in exchange for some lentil soup here in Ecuador, but they can't cover up the truth. . . . If they don't have a court-ordered sanction for their millions, they'll have a moral sanction and hopefully an economic sanction by the conscientious citizens around the globe. No buying products from these Chevron criminals, from these delinquents who devastated our Amazonia . . . we must react against such impunity, against such abuse, against such exploitation." Ex. 4401.

- In his weekly national address, Correa threatened Chevron's Ecuadorian attorneys: "We will not let this go unpunished. We will not let this be forgotten. We will show the country, the Ecuadorian lawyers, that they are lawyers for Chevron against their own Country, against their own countrymen." Ex. 4415 at 1 (*Cadena Presidencial Rafael Correa* (Sept. 28, 2013)). Correa further threatened those involved in the 1998 Release with criminal prosecution: "how sad it is that 'Chevron's Dirty Hand' is extended to Ecuador itself. There are accomplices of Chevron here, people who help that oil company out. They are the ones who signed in '98 that everything had been remediated. I hope they can be brought to

11

justice." *Id.* at 1. Correa specifically named Benjamín Ortiz, a former minister involved in the 1998 Release who has consulted for Texaco, accusing him at length of "scandalous" conduct and "corruptly lying" regarding the remediation, and asserting that, as a shareholder and director of the newspaper *Hoy*, he was responsible for alleged media bias from "the [newspaper] that has defended Chevron the most." *Id.* at 1-3. Correa presented the case as a national struggle urging the Ecuadorian people to fight Chevron and its accomplices within Ecuador: "this conflict that is of interest to the entire Country. The right, left, poor, rich, against a multinational company that wants to crush us with its hundreds of millions of dollars. But we must not only fight abroad, we must also fight against "Chevron's Dirty Hand" inside the country. . . . You must understand those who we have been confronting and their plots . . ." *Id.* at 3. And in a final call to arms, Correa asserted that Chevron and its "accomplices" could not escape a "moral penalty" for its purported actions: "since 'Chevron's Dirty Hand' is coming to light, they won't be able to hide the truth. No matter how black, dirty, and obscure their hand may be, regardless of the media accomplices they have, the truth is all too clear. Chevron is guilty of having contaminated and destroyed our Amazonia. Ultimately, with all their millions and their accomplices, they will end up going unpunished. But they won't get away from the moral penalty that the country, Latin America and humankind as a whole will impose on this corrupt and corrupting multinational. The truth is all too clear, and not even Chevron's dirty hand will be able to hide it, my countrymen." *Id.* at 5.

- State-owned newspaper *El Telégrafo* reported on the privilege log Chevron filed in the RICO action, focusing on Vladimiro Álvarez Grau's appearance therein. The article claims that data provided by the United States and independent NGOs show that the Ecuadorian judiciary ranks among the top third of Latin American countries and is "better" than 55% of court systems worldwide, whereas Álvarez maintains, in filings made in U.S. legal proceedings, that Ecuador in fact has a corrupt and politicized judiciary. The article also lambasts Álvarez for having held a position in the Mahuad administration when the agreement releasing Texaco from liability was signed. Ex. 4409 (*El Telégrafo*, *The objective: to undermine the country* (Sept. 18, 2013)).

- In an interview, President Correa's legal adviser, Alexis Mera, announced that the three government employees who signed the settlement and release with Texaco would be prosecuted for embezzlement in relation to that agreement. Ex. 4410 (*Ecuadorinmediato*, *Alexis Mera: Three former public officials under Mahuad will be charged with Embezzlement of public funds after favoring Chevron* (Sept. 24, 2013)).

- State-owned online newspaper *El Ciudadano* accused other publications, including *El Comercio* and *Expreso*, of publishing "false information that Chevron gave them," which related to the partial judgment of the BIT tribunal. *El Ciudadano* further wrote that Correa "criticized the lack of ethics and objectivity" by the media outlets publishing this information. Ex. 4411 (*El Ciudadano*, *Commercialized*

12

> *press repeats false information that Chevron delivered about The Hague interim award* (Sept. 21, 2013)).

- Correa recently urged Chevron shareholders to divest: "The shareholders, there are people of good will, good faith, who are Chevron shareholders. They don't even know about these things, aren't aware they are indirect accomplices in the greatest or one of the greatest environmental disasters in the history of humanity." Ex. 4412 at 3-4 (*Cadena Nacional* (Ecuador TV (Sept. 17, 2013)).

- Correa has recently embarked on a new campaign against Chevron called "La mano sucia de Chevron" ("Chevron's dirty hand"). Ex. 4413 (*El Telégrafo*, *This is Chevron's dirty campaign* (Sept. 18, 2013)). Visiting the former concession area, Correa had himself photographed putting his hand in oil, declaring that this was "Chevron's dirty hand," and calling for a boycott of Chevron. *Id.* Shortly after the event, *The Economist* reported that the "pit into which Mr. Correa dipped his hand earlier this month is the responsibility of Petroecuador." Ex. 4414 (*The Economist*, *Oil in Ecuador: It's hard to be green* (Sept. 28, 2013)). In response, Correa attacked the respected publication, accusing it of corruption: "Chevron surely pays them for ads or something. But how they lie, how those people can lie." Ex. 4415 at 1 (*Cadena Presidencial Rafael Correa* (Sept. 28, 2013)). Consistent with Correa's view that the state bears no responsibility, the Government has launched a webpage for the "dirty hand" campaign, detailing Chevron's purported crimes. *See* La Mano Sucia, http://lamanosucia.com/ (last visited Sept. 30, 2013).

The Ecuadorian government's ongoing attempts to interfere with the litigation in this Court through public campaigns and witness intimidation form the instructive context within which Defendants' sought and obtained the collusive *Cordova* order. It further supports a finding that the *Cordova* action and order was the product of bad-faith and likely political manipulation, and that sanctions against Defendants are warranted for their refusal to produce documents held by their Ecuadorian agents.

13

## CONCLUSION

Chevron respectfully requests that the Court supplement the sanctions record with the evidence attached.

Dated: October 1, 2013  
New York, New York

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

   /s/ Randy M. Mastro

Randy M. Mastro  
Andrea E. Neuman  
200 Park Avenue  
New York, New York 10166  
Telephone: 212.351.4000  
Facsimile: 212.351.4035

William E. Thomson  
333 South Grand Avenue  
Los Angeles, California 90071  
Telephone: 213.229.7000  
Facsimile: 213.229.7520

*Attorneys for Chevron Corporation*