UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

                Plaintiff,

      -against-                                      11 Civ. 0691 (LAK)

STEVEN DONZIGER, et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/2/13

## ORDER

LEWIS A. KAPLAN, *District Judge.*

        Defendants move for leave for former judge Nicolás Augusto Zambrano to appear as a witness at trial subject to the condition that he appear for a deposition in advance of doing so.[1] Chevron opposes the motion or, alternatively, seeks the imposition of certain additional conditions on any appearance.

### Facts

*The Agreed Procedures for Foreign Witnesses*

        By agreement of the parties and order of the Court, "no foreign witness who fails to submit to a deposition abroad . . . shall be permitted to testify at trial or other proceedings." The Donziger Defendants requested that there be a procedure for seeking leave of the court for exceptions to this rule to permit such a witness to testify after the witness submits to deposition in

---

[1] DI 1385.

2

the United States prior to trial."[2]  The Court adopted that procedure in its July 30, 2013 order, requiring applications by September 3, 2013.[3]  This motion invokes that procedure.

*The LAP Representatives' Relationship With Mr. Zambrano and the Failure to Obtain His Deposition Abroad*

Both Chevron and the LAP Representatives' counsel have contacted Mr. Zambrano apparently to inquire whether he would serve as a witness in this case.  When a lawyer for Chevron contacted Mr. Zambrano by telephone, Zambrano secretly recorded the conversation.[4]  The LAPs' Ecuadorian lawyers then announced in the press that they were in possession of such recordings, which would "leave no doubt about Chevron's corruption."[5]  When Chevron moved to compel production of the recordings, however, the LAP Representatives's former U.S. counsel informed the Court that the LAP Representatives "d[id] not have the recordings that are the subject of Chevron's motion to compel."[6]  The Court eventually denied Chevron's motion to compel on that basis.[7]

Two weeks later, however, the LAP Representatives submitted the recordings to the

---

[2] DI 882, at 2.

[3] DI 1327, at 2.

[4] *See* DI 937.

[5] DI 854, Ex. 12, at 2.

[6] DI 870.

[7] DI 937.

3

Court, along with a declaration signed by Mr. Zambrano.[8] The declaration sought to rebut some of Chevron's allegations that Mr. Zambrano had been bribed by the LAPs' lawyers.[9] The declaration stated that it was offered under penalty of perjury, but made clear that this statement "does not mean that I submit to the jurisdiction of the United States of America."[10]

As is made clear by their submissions of materials from Mr. Zambrano, the LAPs' counsel has had much more ready access to the former judge than Chevron's. Indeed, the LAPs' lawyers have had at least two in-person meetings with Mr. Zambrano.[11] Two members of the law firm Smyser, Kaplan, & Veselka, the LAPs' former U.S. counsel – the very same lawyers who claimed not to have access to Mr. Zambrano's recordings – were present at one of those meetings.[12] And Mr. Smyser has confirmed that he had "spoke[n] to Mr. Zambrano asking him for a declaration."[13]

Both Chevron and the LAP Representatives noticed Mr. Zambrano for deposition in

---

[8] DI 974 Exs. 2, 3. When questioned about the incident, the LAPs' former counsel Craig Smyser testified that he did not have the recordings when he responded to Chevron's motion to compel, but that he did not bother to ask Fajardo or the other Ecuadorian lawyers whether they had a copy of the tape recording before doing so. *See* Apr. 17, 2013 Tr. at 259:17-20.

[9] DI 974.

[10] DI 974-1, at 1.

[11] Stavers Decl. [DI 754] Exs. 3105-3108.

[12] *Id.* Ex. 3018 Ex. 3108 (photograph of Aug. 14, 2012 meeting with Zambrano, Fajardo, and former LAP counsel Jarod Stewart and Craig Smyser).

[13] April 17, 2013 Tr. [DI 1084] at 254-55.

4

this action.[14]  Pursuant to the Court's order regarding depositions of foreign witnesses, Mr. Zambrano's deposition was scheduled to take place at the U.S. Embassy in Lima, Peru on May 16 and 17, 2013.[15]  Chevron was ordered to reimburse Mr. Zambrano's reasonable expenses for his trip from Ecuador.[16]

The Special Masters who presided over certain depositions in this case "order[ed] [the LAPs' counsel] to advise counsel for Chevron and the Special Masters definitively by the close of business on Thursday, May 2 . . . whether Mr. Zambrano will appear for deposition at the Embassy as scheduled."[17]  The LAPs' counsel responded that they were not in communication with Mr. Zambrano and did not even "know how to contact him," but reported that Mr. Zambrano "ha[d] agreed to appear for deposition in Peru, subject to his being represented by a lawyer of his own choosing, and subject to his lawyer being paid by someone other than himself."[18]  The LAPs' counsel eventually assured the Special Masters that they "fully expect that Judge Zambrano will be in attendance at his upcoming deposition, but a promise of attendance 'without equivocation' is impossible, as we do no control Mr. Zambrano."[19]  The Special Masters accordingly ordered that

---

[14] Chevron noticed Mr. Zambrano on March 24, 2013 and April 8, 2013.  The LAP Representatives noticed Mr. Zambrano on April 5, 2013.  Stavers Decl [DI 1451], Ex. 4204.

[15] DI 1122, at 1.

[16] DI 910, at 1.

[17] DI 1092, at 1–2.

[18] Dkt. 1122, at 4 (May 2, 2013 Ltr. from Craig Smyser to Special Masters).

[19] Id. at 9 (May 3, 2013 Ltr. from Craig Smyser to Randy Mastro).

the deposition proceed.[20]

The day before Mr. Zambrano's scheduled deposition, Julio Gomez, another of the LAPs' U.S. attorneys, emailed the Special Masters and counsel for Chevron, informing them that he "anticipat[ed] meeting with Mr. Zambrano in the next few hours."[21] He assured them that he was "going to make every effort to persuade Judge Zambrano to appear for deposition," and "urg[ed] the parties, the service providers and the [Special Master] to please not leave Lima until [he] had an opportunity to speak to Judge Zambrano personally" that night.[22] At 9:54 that evening, Mr. Gomez sent another email informing Chevron and the Special Masters that "Judge Zambrano ha[d] not agreed to appear."[23]

On September 4, 2013, defendants made this motion. They claim that "Judge Zambrano has finally confirmed . . . that he will appear for deposition and give testimony at trial of this case subject to an order of the Court granting him leave to do so," and that "Judge Zambrano's preference is to submit to a deposition in New York the weekend before his scheduled testimony at trial. . . ."[24]

---

[20] *Id.* at 3.

[21] Stavers Decl. [DI 1451], Ex. 4205 (May 16, 2013 email from Julio Gomez).

[22] *Id.*

[23] *Id.*

[24] DI 1385, at 2.

*Discussion*

Mr. Zambrano is the former Ecuadorian judge who purportedly rendered the multibillion dollar judgment against Chevron. There is evidence before the Court which, if credited, would establish that he was bribed to decide the case in the LAPs' favor and to permit their personnel actually to write the decision. In addition, there is evidence which, if credited, would establish that material parts of the decision were copied from internal papers of the Ecuadorian plaintiffs that never were parts of the court record in Ecuador. He therefore is potentially an important percipient witness in this case.

Chevron argues that the defendant LAP Representatives in this case have at least a substantial working relationship with Mr. Zambrano. He gave them a declaration for use in opposing a motion for partial summary judgment by Chevron. He met with their representatives. He apparently provided them with a purported recording of an alleged conversation with a Chevron lawyer. And the LAP Representatives' attorney conveyed supposed demands by Mr. Zambrano in relation to the proposed deposition in Lima to the special masters. The bottom line, according to Chevron, is that Mr. Zambrano should be precluded as a trial witness because he refused to comply with discovery at an earlier stage in this case and has given the LAP Representatives a prejudicial advantage by making himself available to, and cooperating with, them while avoiding a deposition in the regular course of this case.

The Court does not see the foregoing as justifying the preclusion of this important witness, subject to meaningful compliance with the procedure agreed upon by the parties and ordered by the Court. Mr. Zambrano's behavior in relation to prior attempts to procure his testimony caused considerable inconvenience to many, and perhaps additional harm, and perhaps will be advanced on cross-examination as evidencing bias in favor of the defendants. Nevertheless,

7

his important part of this story should be heard if that can be accomplished without undue prejudice to Chevron or undue advantage to the defendants. The conditions include a serious and well prepared deposition before Mr. Zambrano is permitted to testify at trial, reliable advance notice so that Chevron is not again forced to prepare to take his deposition only to have the witness fail to appear, and production of documents pertinent to the deposition sufficiently in advance to permit their intelligent and informed use.

Accordingly, defendants' joint motion is granted to the extent that Mr. Zambrano may be called as a witness at trial provided all of the following conditions are satisfied:

1. Defendants shall have provided plaintiff's counsel, no later than fourteen days prior to the start of the deposition, with evidence that Mr. Zambrano holds a current passport and a visa permitting him to enter the United States both for his deposition as hereinafter provided and for trial.

2. Mr. Zambrano shall have agreed in writing that he will appear as a witness and testify at trial if so requested by any party and shall have accepted service of a subpoena requiring his presence.

3. Mr. Zambrano shall have testified at a deposition as hereinafter provided, which shall have been completed no later than October 30, 2013.[25]

The Court makes the following additional directions with respect to the deposition

---

[25] The LAP Representatives state that Mr. "Zambrano has already offered to be deposed in advance of trial albeit in Ecuador. However, if Chevron is prepared to pay the expenses of his travel to the United States for a deposition in advance of trial, and the deposition can be scheduled on a weekend to avoid time off from work on short notice, then defendants have no objection." DI 1458, at 3. This demand will not be countenanced. Mr. Zambrano is defendants' witness. Chevron previously was ordered to pay his expenses for travel to his scheduled deposition in Lima. It will not now be held accountable for Mr. Zambrano's failure to appear there.

8

of Mr. Zambrano. The deposition of Mr. Zambrano shall take place in the Daniel Patrick Moynihan Courthouse and shall be presided over by a special master previously appointed by the Court. Subject to paragraph 3, the date(s) for the deposition shall be as agreed in writing by all parties or, in default of such agreement, fixed by the special master designated to preside. Chevron shall be entitled to question the witness first for a period not to exceed seven hours. Defendants then may examine Mr. Zambrano for a period not to exceed seven hours. In the event defendants elect to examine Mr. Zambrano, Chevron may reexamine Mr. Zambrano for a period not to exceed half the time used by defendants to examine Mr. Zambrano. These time limits, however, may be varied by the special master presiding for appropriate cause.

SO ORDERED.

Dated: October 2, 2013

Lewis A. Kaplan
United States District Judge