UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEVRON CORPORATION,<br><br>                              Plaintiff,<br><br>          v.<br><br>STEVEN DONZIGER, et al.,<br><br><br>                              Defendants. | 11 Civ. 0691 (LAK) |

## PLAINTIFF CHEVRON CORPORATION'S PROPOSED PRETRIAL ORDER

Pursuant to the Federal Rules of Civil Procedure and Your Honor's Individual Rules of Practice, Plaintiff Chevron Corporation ("Chevron") respectfully submits this proposed Pretrial Order.  Over a period of weeks, Chevron made repeated attempts to meet and confer with Defendants regarding the Pretrial Order in advance of the August 30, 2013 filing deadline, but Defendants failed to engage in substantive discussions with Chevron about the Pretrial Order or provide Chevron any portion of the Defendants' Pretrial Order submission.  This failure to engage includes on such topics as the nature of the case, the estimated length of the trial, trial exhibits, stipulated facts, other stipulations, witness lists and deposition designations.  Indeed, despite Chevron's repeated attempts to schedule dates with Defendants to exchange such information and materials, Defendants have refused to set any such dates for a mutual exchange or even confirm that they will file all the components of the Pretrial Order.[1]

---

[1]    At approximately 7 p.m. this evening, counsel for Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje, in response to an email from Chevron's counsel providing additional designated testimony, stated that Defendants were working on their Pretrial Order submission and inquired about assembling the separate submissions into one document "[s]ince this is supposed to be a joint submission." Counsel suggested

Nevertheless, Chevron produced to Defendants, in advance of the Pretrial Order deadline, its proposed list of trial exhibits on August 27, 2013, its proposed verdict form on August 27, 2013,[2] its testimonial deposition designations on August 29, 2013, and its proposed list of stipulated facts on August 30, 2013. Defendants' failure has ensured that Chevron is unable to provide a Joint Pretrial Order, as required in Your Honor's Individual Rules, since Chevron has had no opportunity to review Defendants' proposed exhibit list, deposition designations, and witness list. Accordingly, Chevron reserves all of its objections thereto and the right to revise and supplement its Pretrial Order submission. Chevron hopes that Defendants will engage in a good faith meet and confer process regarding the Pretrial Order as soon as reasonably possible and, as it has repeatedly told Defendants, Chevron stands ready and willing to move forward.

## I.    NATURE OF THE CASE

The plaintiff in this case is Chevron Corporation ("Chevron"). The defendants in this case are Steven Donziger, The Law Offices of Steven R. Donziger, and Donziger & Associates, PLLC (collectively, the "Donziger Defendants"), and Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje, who are two of the plaintiffs from an action filed in their name against Chevron in a court in Ecuador and who have appeared as defendants in this case. (The other 46 Ecuadorian plaintiffs were served with the complaint but never responded.)

---

exchanging the separate submissions to be combined into one at 11 p.m. After weeks of Defendants making no effort to meet and confer regarding the Pretrial Order and refusing to indicate one way or the other whether, what, and when they would be willing to exchange information required by the Pretrial Order, Chevron declined counsel's request.

[2] On August 29, 2013, Defendants provided to Chevron edits to Chevron's proposed verdict form.

Chevron brings this action for damages and equitable relief to redress injuries caused by fraud, misconduct, and racketeering activity of Defendants and their co-conspirators.  Chevron alleges that Defendants, acting with co-conspirators including defaulted defendant Pablo Fajardo Mendoza ("Fajardo"), defaulted defendant Luis Yanza ("Yanza"), defaulted defendant Juan Pablo Saenz ("Saenz"), defaulted defendant Julio Prieto ("Prieto"), defaulted defendant Frente de Defensa de la Amazonia ("Frente" or "Amazon Defense Front"), and defaulted defendant Selva Viva Selviva CIA, Ltda. ("Selva Viva"), have, over a multi-year period, violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") and New York law by committing acts of extortion, money laundering, obstruction of justice, witness tampering, and mail, wire, and common law fraud.  Defendant Steven Donziger is alleged to operate and manage the RICO association-in-fact enterprise.

Chevron alleges that the primary goal and purpose of the alleged wrongful conduct was to induce Chevron to pay the Defendants billions of dollars by the wrongful use of fear of economic harm and through fraud, including by obtaining, through fraud and corruption, an $18 billion judgment against Chevron from the Ecuadorian court. Chevron alleges that Donziger, a New York lawyer trained at Harvard Law School, and others based in the United States, conceived, executed, funded, and directed a scheme to extort and defraud Chevron, a U.S. company, by, among other things:  (1) taking over control of a case filed against Chevron in an Ecuadorian court; (2) fabricating (principally in the United States) evidence for use in that lawsuit and corrupting and intimidating the Ecuadorian judiciary to obtain by that influence interim court orders and expert reports, and then ultimately a judgment tainted by corruption; (3) exerting pressure on Chevron to coerce it to pay money not only by means of the Ecuadorian litigation and judgment, but

also by subjecting Chevron to public attacks in the United States and elsewhere based on false and misleading statements, and by pursuing a scheme to enforce the fraudulent Ecuadorian judgment; (4) using false statements to induce U.S. public officials to investigate Chevron; and (5) making false statements to U.S. courts and intimidating and tampering with witnesses in U.S. court proceedings to further their illegal scheme.

Regarding the fabrication of evidence and acquisition of tainted court orders and reports, Chevron alleges that Donziger and persons acting in concert with him, or at his direction, secretly planned and wrote in the United States an expert report for an Ecuadorian court-expert to submit to the Ecuadorian court.  Chevron alleges that Donziger and persons acting in concert with him, or at his direction, bribed the court-expert to ensure the expert's complicity, and that the expert then signed and filed what was given to him under the false pretense that it was an independent, fair, and impartial report that he prepared himself.  Chevron further alleges that Donziger and persons acting in concert with him, or at his direction, participated in an elaborate scheme in Ecuador and the United States to create the false impression that the expert's report was independent, fair, and impartial.  This scheme included the submission of fraudulent objections to the Ecuadorian court and a subsequent "supplemental" report, also written at Donziger's direction in the United States; the release of a fraudulent "review" of the report written by the report's actual, but undisclosed, authors; publication of statements generally in the United States, and to government officials in the U.S., touting the independence of the expert's report; and efforts (including witness intimidation in United States judicial proceedings and filing false statements in United States courts) to prevent disclosure of the facts concerning the expert report.  Chevron further alleges that Donziger and persons acting in concert with him, or at his direction, submitted two other

expert reports to the Ecuadorian court, after changing the conclusions reached in those reports from those that their own experts had actually reached. Donziger and persons acting in concert with him, or at his direction, also engaged in various other acts which were intended to and did corrupt the Ecuadorian proceedings, including threats and political interference directed at presiding judges, bribing the author of court orders to rule in their favor, and establishing a fake "monitorship" program to pressure certain court-appointed experts to reach favorable conclusions. Donziger and persons acting in concert with him, or at his direction, solicited and obtained, by fraud, funds from United States and foreign backers that they then used to support their unlawful activities.

Chevron further alleges that material parts of the Ecuadorian judgment were ghost-written by Donziger and persons acting in concert with him or at his direction, and not by the judge over whose name the Ecuadorian judgment was issued. Chevron alleges that Donziger and persons acting in concert with him, or at his direction, used secret payments and bribery to obtain the Ecuadorian judgment against Chevron.

Chevron further alleges that the Donziger Defendants have acted in violation of New York Judiciary Law Section 487 by engaging in acts of deceit, or consenting to acts of deceit committed by the legal team Donziger assembled and oversaw, including in multiple proceedings before courts in New York, forcing Chevron to combat a legal strategy premised on falsehoods.

Chevron further alleges that Defendants have used the Ecuadorian judgment to unjustly enrich themselves by embargoing Chevron's property. Chevron seeks money damages and equitable relief.

Defendants have refused to engage in any meaningful discussions with Chevron regarding the Pretrial Order.   Throughout the proceeding, Defendants have denied Chevron's allegations of wrongdoing.

## II.    JURY / NON-JURY

All parties demanded jury trial of all claims triable as of right to a jury.  Chevron intends to move pursuant to Fed. R. Civ. P. 42(b) to bifurcate liability from money damages, to be tried to the jury consecutively.

Chevron also intends to move pursuant to Fed. R. Civ. P. 42(b) to bifurcate the adjudication of equitable claims and defenses, including Defendants' "unclean hands" defenses, should they survive summary judgment, in a subsequent phase.  To the extent Chevron seeks equitable relief on any pending claim, or on any claim that the Court may, upon motion, reinstate, such claims would be tried to the Court, not to the jury.  As previously noted in recent filings, Chevron is considering seeking only equitable relief on its pending claims, in which event the case would be tried to the Court, not a jury.  Relevant to Chevron's consideration in this regard will be the resolution of outstanding motion practice bearing on remedies available to private parties under RICO.  In the interim, Chevron apprises the Court that it continues to consider seeking only equitable relief on its pending claim, and believes this would have the potential to streamline and shorten the trial.  Chevron is also considering seeking equitable relief only against the LAPs, which also has the potential to streamline the trial.  If Chevron proceeds in this fashion, it will be addressed in the bifurcation motion that Chevron is to file by September 8, 2013.

Chevron respectfully submits that the Court need not reach questions of foreign law should it determine that United States law applies.  Even if the Court decided it was

necessary to decide questions of foreign law, pursuant to Fed. R. Civ. P. 44.1, such questions are to be decided by the Court, not by the jury. Given the testimonial admissions by Defendants' own experts, Chevron submits that there are significant undisputed points regarding the application of Ecuadorian law, and that the Court should resolve disputed foreign law issues raised by the parties in a separate hearing pursuant to Fed. R. Evid. 104, in accordance with the filing schedule set by the Court's Order of July 30, 2013. [DI 1327 at 2.]

Plaintiff estimates six to eight weeks for the length of a jury trial.[3] Plaintiff estimates three to four weeks for the length of a bench trial.

Despite Chevron's repeated efforts to engage Defendants in a meaningful meet and confer, Defendants have declined to participate and have not provided their estimate for the length of trial.

### III.    STIPULATED FACTS

Chevron repeatedly attempted to schedule dates with Defendants to meet and confer regarding stipulated facts and/or exchange proposed stipulated facts but, despite these repeated attempts, Defendants refused to schedule any dates or engage in any meaningful discussion about doing so. Accordingly, Chevron is unable to provide the Court with any stipulated facts at this point, and respectfully requests that the Court direct Defendants to meet and confer with Chevron on its proposed stipulated facts, which Chevron provided to Defendants on August 30, 2013. Chevron reserves the right to

---

[3]  Pursuant to Fed. R. Civ. P. 48, and in light of the expected length of trial and accompanying risk of juror withdrawal during the proceedings, Chevron proposes empaneling fifteen jurors, consisting of a six juror deliberating panel with nine alternate jurors.

amend and revise its proposed list of stipulated facts if and when Defendants agree to meet and confer with Chevron to discuss them.

## IV.   EXHIBITS

Pursuant to this Court's Individual Rules of Practice, exhibits which are not listed herein may not be used at trial except (a) for cross-examination purposes, (b) by plaintiff on rebuttal, or (c) if good cause for its exclusion from the pretrial order is shown. Unfortunately, despite Chevron's repeated requests to Defendants to meet and confer regarding trial exhibits for purposes of preparing the Pretrial Order, Defendants refused to do so contrary to common practice, fundamental fairness, the Federal Rules of Civil Procedure, and this Court's Individual Rules.  Instead, Defendants told Chevron that they plan to provide a draft exhibit list to Chevron and the Court on August 30, 2013.  Despite Defendants' refusal to meet and confer with Chevron regarding exhibits, on August 27, 2013, Chevron produced a draft of its exhibit list to Defendants, reserving the right to supplement and amend given that Defendants refused to meet and confer regarding trial exhibits.  Defendants have not responded to Chevron's productions of its exhibit list.

### A.   CHEVRON'S EXHIBITS

Chevron's Exhibit List is attached hereto as Exhibit A.  Chevron reserves the right to revise and supplement its Exhibit List.

Pursuant to Federal Rules of Evidence 1006, Chevron lists certain exhibits summarizing voluminous documents or information.  By listing these summary exhibits, Chevron does not give up, and fully reserves, the right to add to the Exhibit List and introduce at trial any of the documents underlying the identified summary exhibits.

Chevron reserves the right to add to the Exhibit List and introduce at trial any documents necessary for purposes of document authentication and admissibility.

Chevron lists certain exhibits for purposes of identification only, denoted by "#" after the exhibit number. The portions of those exhibits that Chevron seeks to admit into evidence are listed with an "R" following the exhibit number.

Demonstratives exhibits that Chevron intends to use at trial only for the purpose of aiding the jury are not listed on Chevron's Exhibit List.

## B.    DEFENDANTS' EXHIBITS

As described above, Defendants have refused to meet and confer with Chevron regarding exhibits, and then and then at the eleventh hour on August 30, 2013, indicated that they will submit a draft exhibit list.

## V.    GENERAL PROVISIONS, STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS

### A.    General Provisions and Stipulations

Defendants have refused to meet and confer with Chevron regarding any stipulations for purposes of preparing this Pretrial Order. Accordingly:

1. Chevron respectfully submits that the following previously stipulated agreements and admissions between the parties regarding the authenticity of documents remain applicable to the trial:

   a. Stipulation and Order of Authenticity between Applicant Chevron Corp., Respondent Steven R. Donziger, and Interested Parties the Lago Agrio Plaintiffs dated July 25, 2011, and attached Affidavit of Steven R. Donziger and Exhibit C to the Affidavit of Steven R. Donziger authenticating

documents obtained from the hard drives of Steven Donziger and Andrew Woods, see In re: Applic. of Chevron Corp., 10-MC-00002-LAK, Dkt. 197;

b.  Stipulation and Order Regarding CRUDE Materials between Plaintiff Chevron Corp., Defendants Steven R. Donziger, the Law Offices of Steven Donziger, Donziger & Associates PLLC, and Defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje, dated December 5, 2012, see Dkt. 652;

c.  Stipulation and Order Regarding Kohn and Garr documents between Plaintiff Chevron Corp., Defendants Steven R. Donziger, the Law Offices of Steven Donziger, Donziger & Associates PLLC, and Defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje, dated May 22, 2013, see Dkt. 1179;

2.  Chevron hereby incorporates the following discovery responses and admissions regarding the authenticity of documents:

a.  Responses and Supplemental Responses to the Second Set of Requests for Admissions propounded by Plaintiff Chevron Corp. to Defendants Steven Donziger, the Law Offices of Steven Donziger, and Donziger & Associates PLLD;

b.  Responses to Second Set of Request for Admission propounded by Plaintiff Chevron Corp. to Defendant Douglas Beltman;

c.  Responses to Second Set of Request for Admission propounded by Plaintiff Chevron Corp. to Defendant Ann Maest;

d.  Responses to Second Set of Request for Admission propounded by Plaintiff Chevron Corp. to Defendant Stratus Consulting;

3. Chevron has proposed to Defendants and respectfully requests that the Court require that each party will provide the other side with 48-hours advance notice of any witness(es) that the party intends to call at trial.

4. Chevron has proposed to Defendants and respectfully requests that the Court require that each party will provide the other side with 24-hours advance notice of any demonstrative exhibit(s) that the party intends to use at trial.

5. Chevron has proposed to Defendants and respectfully requests that the Court require that each party will provide the other side with 72-hours advance notice of any summary charts that the party intends to use at trial, and any objections to such summary charts will be stated within 24-hours of receipt of the summary chart.

6. Given the complexity and likely length of trial, Chevron has proposed to Defendants and respectfully requests that the Court will allow that each side be permitted up to two hours to present interim summations to the jury during the course of the trial. Such interim summations would be used at any point during trial by each side to assist the jury in putting the testimony, evidence, and proceedings into perspective. The Second Circuit has permitted interim summations in complex and/or lengthy civil trials. *See, e.g.*, *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 836 (2d Cir. 1992) (as part of handling the consolidated trial of 79 asbestos-related personal injury and wrongful death actions "to ensure that the jurors could assimilate the vast amounts of information necessary to assess the claims," the district court employed an interim summation procedure); *In re New York Asbestos Litig.*, 149 F.R.D. 490, 499 (S.D.N.Y. 1993), *judgment vacated on other grounds by*

*Consorti v. Owens-Corning Fiberglas Corp.*, 518 U.S. 1031 (1996) (interim summations "considered and adopted where appropriate during the consolidated trial" of tort actions based on asbestos exposure); *see also In re Asbestos Litig.*, 1998 WL 230950, at *1 (S.D.N.Y. May 8, 1998) ("interim summations . . . can make for a trial that is not only fair but more efficient").

**B.     Objections to Defendants' Exhibit List**

Despite Chevron's repeated efforts to secure a mutual exchange of Exhibit Lists well in advance of the August 30th deadline for the Joint Pretrial Order, and contrary to common practice and fundamental fairness, the Defendants refused to commit to any proposed mutual exchange date. Nevertheless, Chevron unilaterally provided its Exhibit List to the Defendants on August 27, 2013, while Defendants have not provided anything to Chevron. Accordingly, Chevron has had no opportunity to review Defendants' exhibit list and hereby reserves all of its objections thereto.

## VI.     PLAINTIFF'S WITNESS LIST

The witnesses listed below may be called at trial. No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown. Because Defendants have refused to exchange or meet and confer with Chevron regarding witness lists, Chevron reserves its right to revise and supplement its Witness List.

| No. | Witness |
|-----|---------|
| 1. | Allen, Douglas |
| 2. | Alvarez Grau, Vladimiro |
| 3. | Alvarez, Pedro |
| 4. | Anson, Weston |

| 5.  | Arsuaga, Cristina (witness providing summary testimony pursuant to FRE Rule 1006) |
|-----|------------------------------------------------------------------------------------|
| 6.  | Beier, Martin |
| 7.  | Beltman, Douglas |
| 8.  | Bogart, Christopher |
| 9.  | Bonifaz, Cristobal |
| 10. | Callejas, Adolfo |
| 11. | Calmbacher, Charles |
| 12. | Campuzano, Patricio |
| 13. | Carney, Michael |
| 14. | Carvajal, Enrique |
| 15. | Cooperman, Daniel |
| 16. | Dahlberg, Troy |
| 17. | Doe 3 |
| 18. | Doe 4 |
| 19. | Donziger, Steven (live and by designation) |
| 20. | Dunkelberger, Ted |
| 21. | Elena, Sandra |
| 22. | Garfinkel, Steven |
| 23. | Garr, Laura |
| 24. | Green, Michael |
| 25. | Guerra, Alberto Bastidas |
| 26. | Hernandez, Samuel |
| 27. | Herrick, Chuck |
| 28. | Juola, Patrick |
| 29. | Kim, Yerim (witness providing summary testimony pursuant to FRE Rule 1006) |

| | |
|---|---|
| 30. | Kohn, Joseph |
| 31. | Kornfeld, Rick |
| 32. | Leamer, Edward |
| 33. | Leonard, Robert |
| 34. | Lipton, Joshua |
| 35. | Lynch, Spencer |
| 36. | Maest, Ann |
| 37. | McDermott, John |
| 38. | McMenamin, Gerald |
| 39. | McMillen, Sara |
| 40. | Meacham, Gregory |
| 41. | Moore, Nancy |
| 42. | Parker, Brian |
| 43. | Peers, Jennifer |
| 44. | Representative of Rodrigo Perez Pallares |
| 45. | Picone, Carlos |
| 46. | Quarles, Mark |
| 47. | Racines, Alberto |
| 48. | Rayner, Keith |
| 49. | Reis-Veiga, Ricardo |
| 50. | Reyes, Ramiro Fernando |
| 51. | Russell, David |
| 52. | Ryan, Joseph |
| 53. | Samson, David |
| 54. | Scardina, Paolo |

| 55. | Shinder, Jeffrey |
|---|---|
| 56. | Shivdasani, Anil |
| 57. | Silver, Joe |
| 58. | Spiegelman, Arthur |
| 59. | Stowell, David |
| 60. | Torres, Adam |
| 61. | Uhl, Vincent |
| 62. | Velazquez Coello, Santiago Efraín |
| 63. | Woods, Andrew |
| 64. | Wray, Alberto |
| 65. | Wright-Ycaza, Jorge |
| 66. | Zygocki, Rhonda |
| 67. | Any witness required to authenticate documents. |
| 68. | Any witness required to certify the accuracy of transcribed or translated documents or materials. |
| 69. | Any other witness offered to summarize voluminous documents or materials pursuant to Federal Rules of Evidence 1006. |

Despite Chevron's repeated efforts to secure a mutual exchange of deposition designations well in advance of the August 30th deadline for filing the Joint Pretrial Order and contrary to common practice and fundamental fairness, Defendants refused to commit to any proposed mutual exchange date. Chevron, however, has unilaterally provided its Deposition Designations to Defendants on August 29, 2013 and provided supplemental Deposition Designations to Defendants on August 30, 2013. A chart setting forth Chevron's deposition designations for use at trial, for the following witnesses, is attached hereto as Exhibit B. Chevron reserves its rights to revise and

15

supplement these deposition designations and to designate testimony from other depositions.

| No. | Testimony offered by Deposition Designation |
|-----|---------------------------------------------|
| 1.  | Allen, Douglas |
| 2.  | Beier, Martin |
| 3.  | Bonifaz, Cristobal |
| 4.  | Calmbacher, Charles |
| 5.  | Donziger, Steven |
| 6.  | Dunkelberger, Ted |
| 7.  | McDermott, John |
| 8.  | Parker, Brian |
| 9.  | Picone, Carlos |
| 10. | Quarles, Mark |
| 11. | Reyes, Ramiro Fernando |
| 12. | Scardina, Paolo |
| 13. | Silver, Joe |
| 14. | Woods, Andrew |
| 15. | Wray, Alberto |

A chart setting forth Chevron's testimony designations from the Sanctions Hearing held in this matter on April 16 to 18, 2013, for the following witnesses, is attached hereto as Exhibit C:

| No. | Testimony offered by Deposition Designation |
|-----|---------------------------------------------|
| 1.  | Donziger, Steven |
| 2.  | Piaguaje, Javier |
| 3.  | Smyser, Craig |
| 4.  | Stewart, Jarod |

In addition, in the event that the Court determines that questions of Ecuadorian law would be presented to the jury, Chevron submits that it intends to designate testimony from the depositions of Defendants' experts, including Farith Ricardo Simon Campaňa; Raúl Rosero Rivas; and Juan Pablo Albán Alencastro, as these experts made significant admissions agreeing with Chevron's experts on the application of Ecuadorian law.

## VII.   DEFENDANTS' WITNESS LIST

Despite Chevron's repeated efforts to secure a mutual exchange of witness lists and deposition designations in advance of the August 30th deadline, and contrary to common practice and fundamental fairness, Defendants have refused to commit to any proposed mutual exchange date and Defendants have not provided Chevron with any deposition designations.  Because Chevron has had no opportunity to review Defendants' deposition designations, it hereby reserves its right to amend its deposition designations, designate testimony from other depositions, and object to Defendants' designations.  In addition, in the event that the Court determines that questions of Ecuadorian law would be presented to the jury, Chevron submits that it intends to designate testimony from the depositions of Defendants' experts, including Farith Ricardo Simon Campana, Raul Rosero Rivas, and Juan Pablo Alban Alencastro, as these experts made significant admissions agreeing with Chevron's experts on the application of Ecuadorian law.

## VIII.   RELIEF SOUGHT

Plaintiff seeks monetary and equitable relief.[4]  Plaintiff seeks money damages, the precise amount to be determined at trial, but not less than $125.8 million for injury to its business and property, consisting of the following:

(1) Plaintiff seeks not less than $12 million to compensate it for legal fees and costs incurred in connection with uncovering Defendants' wrongful conduct and fraudulent scheme through U.S. court proceedings; and

(2) Plaintiff further seeks not less than $113.8 million to compensate it for injury caused by Defendants efforts to enforce the fraudulent judgment including:

> (a) not less than $1 million to compensate it for attorneys' fees associated with defending against attempted enforcement of the fraudulent judgment in Canada;

> (b) not less than $1.2 million to compensate it for attempted enforcement of the fraudulent judgment in Argentina; and

> (c) not less than $111.6 million to compensate it for injury caused by actual enforcement of the fraudulent judgment in Ecuador and Defendants' interference with assets and intellectual property owned by Chevron's subsidiaries, including:

>> (i) the seizure of Chevron IP trademarks subject to embargo in Ecuador (valued at not less than $15.6 million); and

>> (ii) the attachment of a $96 million judgment entered against the Republic of Ecuador in favor of Chevron.

(3) Against Defendant Donziger Plaintiff seeks not less than $8.8 million to compensate it for legal fees and costs incurred in connection with uncovering and responding to Donziger's acts to deceive New York courts.

---

[4] Chevron intends to move pursuant to Fed. R. Civ. P. 42(b) to bifurcate liability from money damages, to be tried to the jury consecutively.  Chevron also intends to move pursuant to Fed. R. Civ. P. 42(b) to bifurcate the adjudication of equitable claims and defenses, including Defendants' "unclean hand" defenses, should they survive summary judgment, in a subsequent phase tried to the bench.

Plaintiff further seeks treble damages on the amount of monetary damages awarded, as well as its reasonable attorneys' fees and costs incurred in litigating the instant RICO claims.

The precise nature of the appropriate equitable relief will depend on the record developed at trial, and on developments in Defendants' ongoing extortion and enforcement campaign.  Chevron anticipates that it will seek an anti-racketeering injunction, prohibiting Defendants and their co-conspirators from continuing or attempting to profit from their pattern of racketeering activity.  *U.S. v. Carson*, 52 F.3d 1173, 1183–85 (2d Cir. 1995).  Chevron also anticipates that it will seek an injunction prohibiting Defendants and their co-conspirators from continuing acts of fraud or in furtherance of fraud.  It may further seek an order attaching Defendants' assets, including their interest in any recovery based on the Ecuadorian judgment, and the imposition of a constructive trust on, or disgorgement of any compensation or recovery flowing from their racketeering activity.

Chevron reserves the right to amend, revise, and supplement the relief sought, including equitable relief and the form of the proposed injunctions attached hereto as Exhibit D.

DATED: September ____, 2013

_____
                                                              U.S.D.J.

DATED:  August 30, 2013

Randy M. Mastro
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone:      (212) 351-4000
Facsimile:       (212) 351-4035
Email:            RMastro@gibsondunn.com

*Counsel for Plaintiff Chevron Corporation*