UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CHEVRON CORPORATION,

              Plaintiff,

      -against-

STEVEN DONZIGER, et al.,

              Defendants.
------------------------------------------------------------x

11 Civ. 0691 (LAK)

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/7/13

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

      This Court's individual practices for almost two decades have required parties in bench trials to exchange, one week prior to the start of trial, declarations or affidavits containing the direct testimony of (1) parties and other witnesses who are under their control (2) whom they expect to call on their cases in chief. A similar practice is followed by a substantial proportion of other judges of this Court.

      The defendants now move to be relieved of any obligation to submit the direct testimony of any of their witnesses as required by these long-standing and quite common rules. They argue that (1) "Chevron only confirmed three days ago that" it would drop its damages claims in this case, seek only equitable relief here, and thus proceed non-jury, (2) they lack the resources to prepare the affidavits and declarations "in the given time" – i.e., by October 8, when they now are due, (3) they cannot anticipate what their witnesses will need to say until they have heard Chevron's case in chief, and (4) Mr. Donziger's testimony is likely to be so extensive as to require

the preparation of a "book-length" document. DI 1489.

## Discussion

Defendants arguments are largely unpersuasive.

First, as the Court recently pointed out, defendants have known since at least as long ago as February that Chevron was considering the withdrawal of its requests for money damages and seeking only equitable relief." DI 1436, at 2. The effect of doing so, as defendants well knew, likely would be to make this a bench trial. Thus, they have known for eight months that they might well be required to submit the direct testimony of their witnesses in written form. Moreover, the difference between (a) the outline that any careful lawyer would employ in the direct examination of a friendly witness before a jury in a case of any complexity, and (b) the affidavit or declaration required by this and many other judges in bench trials is more a matter of form than of substance although, to be sure, the latter often would be more detailed. Thus, while some allowance will be made for the fact that Chevron did not make its decision until recently, the extent of the allowance should not be what defendants seek.

Second, the defendants long have been complaining that they lack resources, that they are short-handed, and so on. As the Court has made clear before, those complaints are entirely unsubstantiated by any competent evidence, and defendants repeatedly have ignored invitations to produce any. It appears that they have access to a legal team in Ecuador and that the Patton Boggs firm, which only the week before last argued in the Second Circuit on their behalf, is playing a sizable role on defendants' side of this case, albeit without filing a notice of appearance or signing papers in the district court. DI 1407, at 18-20. Moreover, filings from actions in Florida courts reveal that Mr. Donziger, despite his unsubstantiated claims of poverty, became entitled within the

3

past year to receive nearly $2 million from family trusts. DI 1436, at 7 n.16. He has not denied that he actually received that money. It thus appears that he is in a position financially – even without regard to his other personal assets and the LAPs' contractual obligation to pay his legal expenses in this case[1] – to hire an abundance of legal talent to assist him if he wishes to do so. Moreover, the alleged lack of resources has not prevented defendants from making 26 motions since May 17, 2013.

      Third, the complaint that defendants cannot tell what their witnesses will need to say until they have seen Chevron's case in chief is entirely unpersuasive. Discovery in civil cases permits adversaries in bench trials to exchange the direct testimony of their witnesses prior to the commencement of trial because discovery makes them aware of the substances of their adversaries' cases. This is reflected in the fact that so many judges of this Court employ that procedure, allowing supplementation of the written testimony where necessitated by any unexpected developments. That procedure is entirely appropriate here. The defendants in this case have had extensive discovery, including the production of millions of documents and many depositions. Chevron has made a preliminary injunction motion and four motions for partial summary judgment in which it has laid out what appears to be all or substantially all of its case. The likelihood of any surprises is minimal. Should any occur, appropriate allowance may be made.

      Fourth, Mr. Donziger may well be right that his direct testimony, assuming he were to first appear on the stand during the defendants' case, is likely to be extensive and take a good deal of preparation. The force of that point, however, is undermined substantially by the facts that (1)

---

[1] Hendricks Decl. [DI 355] Ex. 1122 (Donziger retention agreement), at 8 ("In the event that any person or entity . . . brings a legal action against [Donziger] relating to [his] representation of the [LAPs] in connection with the [Lago Agrio Litigation] (whether in Ecuador, the United States, or elsewhere) . . . the [LAPs] shall make available to [Donziger] the funds necessary to pay the reasonable costs fo defending against such . . . [a]ction.").

this trial date was set almost a year ago, so that his testimony could and should have been in preparation for many months, and (2) the difference between the outline that inevitably would be required for Mr. Donziger to testify before a jury and the affidavit or declaration required for a bench trial is limited.

There is a final important consideration. The defendants' motion presupposes that Chevron should provide them with the written direct testimony of all of its party and controlled witnesses in advance of trial, but seeks to be excused from providing written direct testimony of any of defendants witnesses' at any point. That would be entirely unfair.

The appropriate balance here is as follows:

1. Chevron should be prepared to respond at the final pretrial conference on October 9 to the question whether it intends to call Mr. Donziger as a witness on its case in chief. The Court will address the question of written direct testimony of Mr. Donziger thereafter.

2. The written direct testimony of party and controlled witnesses (the "Written Directs") will be exchanged on a rolling basis rather than simultaneously and in advance of trial. No later than October 9, Chevron shall furnish the defendants and the Court with the Written Directs for those witnesses to be called during the first week of the trial. No later than the Wednesday of each succeeding week, any party that may call one or more party or controlled witness in the following week shall furnish the Court and the adversary(ies) the Written Direct(s) for all such witnesses. This will apply until both sides have rested their cases in chief.

3. In addition, each party shall advise the Court and the other parties no later than Wednesday of each week of the identities of all witnesses it intends to call in the following week and of the order in which it intends to call them. This will ensure that both sides have notice of the appearance of witnesses who are neither parties nor controlled by parties.

*Conclusion*

Defendants' motion [DI 1489] is granted to the extent set forth above and otherwise denied.

SO ORDERED.

Dated:     October 7, 2013

_____
Lewis A. Kaplan
United States District Judge