UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
CHEVRON CORPORATION, :
:
               Plaintiff, :
:
  -against- :
: Case No.  11 Civ.  0691 (LAK)
:
STEVEN R. DONZIGER, et al., :
:
               Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CHEVRON CORPORATION'S REPLY IN SUPPORT OF
ITS MOTION TO SANCTION THE DONZIGER DEFENDANTS FOR
DISOBEYING THE COURT'S DISCOVERY ORDERS**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

**PRELIMINARY STATEMENT**

The reasons that Donziger should be sanctioned here are effectively undisputed. The Court has now twice ordered Donziger to produce the documents in question (Dkts. 721, 1380), but Donziger has intentionally refused to do so. He has offered no valid reason for his failure beyond unsupported and incorrect attorney argument. Donziger's willful misbehavior is part of a pattern of "remarkably obstructive" discovery practices by Donziger in this Court and in related proceedings. Dkt. 865 at 1. For his past and current misconduct, the Court should impose sanctions on Donziger. Fed. R. Civ. P. 37(b)(2)(A).

Donziger's refusal to produce documents here is the product of bad faith. For example, Donziger represented to this Court in his opposition papers filed two days ago on Monday, October 7, that Woods's attorney (Stuart Gross, who has also been Donziger's attorney) "ha[d] now" produced the Woods 1782 Documents (Dkt. 1506 at 2), but that statement was false. Gross confirmed yesterday, after an inquiry from Chevron's counsel, that, contrary to Donziger's representation to this Court the day before, Woods's documents had not yet been produced; and Gross only made a belated production close to midnight last night, October 8 (which Chevron is still reviewing for completeness). *See* Exs. 2, 3. Donziger's falsehood would be sanctionable under Rule 11 even if it were not part of Donziger's continuing and willful refusal to respect this Court's orders. Donziger's bad-faith multiplication of proceedings—forcing Chevron to have to make multiple applications in this regard and this Court to have to expend resources repeatedly requiring his compliance with court orders—also warrants sanctions under 28 U.S.C. § 1927.

Donziger also claims that he cannot produce his Selva Viva accountings because "there is no money in the case budget to pay [the accountant]" (Dkt. 1467-1), but that is just one of at least eight unsupported claims of poverty that Donziger has made since September 12, 2013 (Dkts. 1431, 1432, 1442 at 4, 1449, 1459, 1489 at 2, 1506 at 2, Ex. 1 ((10/1/13 Hr'g Tr.) at 6:10-

1

16)). Donziger even went so far as to claim that he would require, but could not afford, the help of "an army of legally-trained elves or angels" to keep up with his litigation obligations in this case. Dkt. 1489 at 2. But the Court found that Donziger "is in a position financially . . . to hire an abundance of legal talent to assist him if he wishes to do so." Dkt. 1501 at 3. And now, Donziger's "elves and angels" appeared in the form of a motion to admit *pro hac vice* two prominent plaintiffs' lawyers. Dkt. 1507. In other words, Donziger evidently has the resources to comply with this Court's order to produce the accountings, but instead he has chosen to disobey the Court. Donziger's "excuses" with respect to the other documents sought by Chevron are just as invalid and just as sanctionable.

## ARGUMENT

### A.   Chase Bank Account Records

Donziger has control of the Chase Bank account records in question. Dkt. 1506 at 1 ("I did in fact locate the information promptly."). While Donziger now argues that he "should not be ordered to turn over records from this account" (*id*. at 2), the Court has already decided that issue against Donziger twice (Dkts. 721, 1380). On September 3, the Court noted that it has "previously ordered the production" of the Chase Bank account records and that Donziger "acknowledge[d] his obligation to produce these documents." Dkt. 1380 at 2. The Court then granted Chevron's motion to compel "in all respects" and again ordered "Donziger [to] produce the documents . . . forthwith."[1] *Id*. The Court was not "misled" by Chevron and the Court's order was not limited to "locat[ing] information for the specified account," as Donziger now contends. Dkt. 1506 at 1.

Given the Court's clear order and Donziger's possession of the records in question,

---

[1] The lone exception was to Donziger's passports.

2

Donziger's refusal to produce the records merits sanctions. Donziger does not get to choose whether he complies with a court order. He must comply or seek a protective order. Donziger did not do the latter, so he was required to do the former or face sanctions. Fed. R. Civ. P. 37(d)(2); *Leadsinger, Inc. v. Cole*, No. 05 Civ. 5606, 2006 WL 2255312, at *15 (S.D.N.Y Aug. 4, 2006). Accordingly, for his lack of compliance, the Court should order Donziger to produce the Chase Bank account records by October 15, and if Donziger does not do so, (i) permit Chevron to subpoena Chase, (ii) order Donziger to support the subpoena, and (iii) find that Donziger obstructed discovery in this action. Fed. R. Civ. P. 37(b)(2)(A).

Donziger's claim that he does not have to produce the records because "the Chase account in question was opened after the last discovery cut-off date" is without merit. *Id*. Even if the Chase account were opened after July 2012, Donziger waived this argument by not raising it previously. Dkt. 1466 at 4-5. Donziger claims that waiver should not attach because he was "representing [him]self" and he was thus "not aware of" the discovery cut-off argument "at the time" (Dkt. 1506 at 1-2), but those claims are false. As the Court has recognized, Donziger is far from an actual *pro se* litigant. Dkt. 1407 at 19-20 (Donziger benefits from Patton Boggs's representation of the LAPs and that Donziger himself "openly has received additional assistance in the person of at least two more lawyers"). In addition, Donziger raised the issue of the discovery cut-off date no fewer than three times at his June 2013 deposition (Dkt. 1395-1 at 157:11-158:25, 554:13-555:8, 750:19-755:21), which was more than two months prior to Chevron's August 28, 2013, motion to compel (Dkt. 1374). Donziger was "aware of" the issue "at the time." In any event, there is no creditable evidence from Donziger that the Chase account did not exist in July 2012, prior to the discovery cut-off. Donziger does not dispute that the bank account in question was used to fund Selva Viva at least as far back as September 2012. Dkt. 1466 at 5. Indeed,

3

Donziger offers no declaration or evidence of any kind.

### B. Accountings

Donziger continues to claim a lack of "control" over Selva Viva accountings because of a supposed lack of funds to pay his accountant to release the documents. Dkt. 1506 at 2. Donziger's "excuse" is invalid. As the Court has repeatedly found, including as recently as October 7, Donziger's claims of penury are "entirely unsubstantiated by any competent evidence, and defendants repeatedly have ignored invitations to produce any." Dkt. 1501 at 2. Moreover, his accountant's supposed refusal to turn over documents for lack of payment is contrary to New York law. In New York, "there is no such thing as an 'accountant's lien,' which would allow an accountant to retain documents of its clients until payment has been made." *SFDS Development Corp. v. Fecci*, No. 103543/09, 2009 WL 1905139 (N.Y. Sup. Ct. June 16, 2009). In any event, Donziger has not provided any creditable evidence that he ever asked his accountant for the documents or that his requests were ever refused.

In short, Donziger has no basis whatsoever to refuse to produce the accountings. The Court should accordingly order Donziger to produce the accountings by October 15 so that they can be used at trial. While Chevron requested leave to subpoena Donziger's accountant, that process is unnecessary given Donziger's apparent ability to effect immediate compliance. If Donziger does not do so, the Court should grant Chevron leave to subpoena Donziger's (still unnamed) accountant and instruct Donziger to cooperate, and the Court should find Donziger to have obstructed discovery in this action.

### C. Woods 1782 Documents

Donziger has willfully failed to comply with this Court's order to produce the Woods 1782 Documents. Donziger claimed on October 7 that Woods's attorney "has now" produced the documents in question (Dkt. 1506 at 2), but that statement was false. Chevron only received

4

a production from Woods near midnight on October 8—a production that Chevron is still reviewing and that may be materially incomplete—and only after Chevron inquired of Gross about Donziger's misrepresentation. Exs. 2, 3. Regardless of the belated production, the Court should sanction Donziger by finding that he has obstructed discovery into these documents.

Donziger's arguments for why he should not be sanctioned have no merit. First, despite Donziger's claims that Chevron is "distort[ing]" the record, the Court found that Donziger "acknowledge[d] his obligation to produce [the Woods] documents" and ordered Donziger to produce the documents "forthwith." Dkt. 1380 at 2. Donziger was not just obligated to perform a privilege review as he now contends (Dkt. 1506 at 2); that was but the first step in complying with the Court's order. Second, Donziger claims that he "do[es] not have control over the production of the [Woods 1782] documents." Dkt. 1506 at 2. But this is false. Donziger does not dispute the conclusive evidence of control put forth by Chevron, including Donziger's acknowledgement of control in the Woods 502(d) stipulation and Gross's acknowledgement of Donziger's control over production. Dkt. 1466 at 7. Indeed, Donziger effectively admits control in that he (purportedly) had the "practical ability" to obtain the documents for a privilege review and to cause Woods to produce them (Dkt. 1506 at 2). *Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 558 (S.D.N.Y. 1994).

### D.   Patton Boggs Retainer

Donziger unequivocally testified at deposition that he possesses a copy of the Patton Boggs retainer agreement. Dkt. 1374-1 (Ex. 1) at 554:13-555:3. Donziger has failed to produce the document in the face of multiple court orders. *See* Dkts. 721, 1380. Sanctions should, therefore, lie. Dkt. 1466 at 9 n.4 (citing cases).

Donziger's only argument in response is an unsworn assertion that he is "confident" that he does not have a copy of the retainer agreement because he supposedly "searched [his] com-

5

puter, email account, and [his] limited paper files." Dkt. 1506 at 3. But Donziger's assertion is neither credible nor creditable given his contradictory sworn testimony and his history of discovery abuses and obstruction in this litigation, *see, e.g.*, Dkt. 865 at 1. Indeed, the Court has already rejected Donziger's "not under oath" arguments in ordering the production of the very Patton Boggs retainer agreement at issue. Dkt. 1380 at 2.

Accordingly, the Court should order Donziger to provide a sworn statement concerning the extent of his search for the agreement, including specific details of the locations searched (*e.g.*, "cloud" storage, specific email accounts), the individuals involved, and the dates of the searches. Dkt. 1466 at 9 n.5. Donziger could have forestalled the need for such an order by providing a detailed sworn statement in opposition, but he chose instead to argue about word choice—his testimony "was not 'false,'" it was "mistaken" (Dkt. 1506 at 3)—without any evidentiary support. If Donziger's sworn statement is found lacking in any respect, the Court should find that Donziger has obstructed discovery in this action. Fed. R. Civ. P. 37(b)(2)(A)(i).

## CONCLUSION

For the foregoing reasons, Chevron respectfully requests that the Court sanction the Donziger Defendants for disobeying the Court's discovery orders.

Dated:  October 9, 2013  
New York, New York

Respectfully submitted,

/s/ Randy M. Mastro  
Randy M.  Mastro  
Andrea E.  Neuman  
GIBSON, DUNN & CRUTCHER LLP  
200 Park Avenue  
New York, New York 10166  
Telephone: 212.351.4000  
Facsimile:  212.351.4035

William E.  Thomson  
333 South Grand Avenue

6

Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile:  213.229.7520

*Attorneys for Chevron Corporation*