UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEVRON CORPORATION,<br><br>     Plaintiff,<br><br>  v.<br><br>STEVEN DONZIGER *et al.*,<br><br>     Defendants. | 11-CV-0691<br><br>The Honorable Lewis A. Kaplan, U.S.D.J.<br>The Honorable James C. Francis, U.S.M.J. |

**DONZIGER DEFENDANTS' MOTION REQUESTING A JUDICIAL
INSPECTION TO VIEW CHEVRON'S CONTAMINATION IN THE
ORIENTE REGION OF ECUADOR**

Defendants Steven R. Donziger, Donziger & Associates, PLLC, and the Law Offices of Steven R. Donziger respectfully submit this motion to request that the finder of fact in the case conduct a site visit or "view" of the sites contaminated by TexPet/Chevron in the Oriente region of the Ecuadorian Amazon.

As this Court has already recognized, the fact-finder in this case must have "the *whole story* of what went on in Ecuador and elsewhere leading to the Judgment. Understanding that *entire story* is vital to the resolution of this case." DI 905 at 61 (emphasis added). Throughout this litigation, and through the use of selective and misleading circumstantial evidence – including out-of-context video clips plucked from over 600 hours of raw *Crude* outtakes, the dubious analyses of forensic linguistic "experts," and the mischaracterization of ambiguous and sometimes inaccurately translated email exchanges – Chevron has used theatrics and spin to dance around the central issue in this case: Chevron intentionally contaminated large swaths of pristine Ecuadorian rainforest. DIs 417-01 to 417-03.

Chevron now wants to benefit from the fact that the contamination at issue simply cannot be brought into the courtroom to rebut Chevron's baseless and fanciful allegations that the LAPs and their representatives had to procure a case through fraud because they could not win on the facts. Chevron has even gone so far as to argue that any and all evidence about those true "facts" should be kept out of the courtroom altogether. DI 1389. But if something cannot be brought to the observer, the observer must go to the thing. Charles T. McCormick, McCormick on Evidence § 216, at 346 (John W. Strong ed., 5th ed. 1999). It is time for this Court to view for itself that which Chevron would keep from entering the courtroom doors: the undisputable contamination Chevron caused in the Oriente region of the Ecuadorian Amazon.

1

Throughout the seven-year Lago Agrio proceedings in Ecuador – the very proceedings which Chevron is asking this Court to second guess, DI 1492-7 – the Ecuadorian judges presiding over the litigation went out to the field to observe that which could not be brought into the courtroom: physical evidence of the contaminated waste pits, pools, and fields caused by Chevron. As the Ecuadorian Appeals Court explained, under Ecuadorian law, visits to the site of the contamination and a holistic analysis of the evidence are germane to cases such as this.

> Art. 115 of the Code of Civil Procedure states that 'Evidence must be assessed as a whole, pursuant to the rules of sound judicial judgment, in addition to the formal requirements prescribed by the substantive law for the existence or validity of certain acts'; further, the second paragraph orders moreover that 'in his ruling the judge shall be required to state the evaluation of all the evidence produced.' In the present case, the trial court has complied with the provision just mentioned, since, evaluating the evidence collectively, it refers to each item of evidence. Moreover, the method of interpretation - the interpersonal, psychic form or mechanism – is not subject to strict limits in any concrete, express legal rule that can be considered violated; it is indeed a mental form that leads to the assessment, where human elements such as experience, logical rules, and even some knowledge of ranks of human psychology play a role; this is how legal doctrine and its most distinguished exponents put it forth.

DI 417-1 at 13.

In Ecuador, judges go to the evidence; the evidence does not come to the judge.[1] If this Court intends to judge Ecuador, its legal system, its judges and its verdict - at a minimum - the Court should do what every Ecuadorian judge in the case did: see the overwhelming

---

[1] Chevron's own experts recognize this point. *See* Expert Report of Jorge Wright-Ycaza, DI 968-34 at 13, *citing* Art. 840 of the Code of Civil Procedure: "When, due to the nature of the dispute an examination or reconnaissance of the matter being litigated is required, the submission of the pertinent evidence will be verified at the location of said matter."; *also citing* Guillermo Cabanellas, in the tenth edition of his Diccionario de Derecho Usual [Dictionary of Customary Legal Terms], second volume, Heliasta S.R.L. (page 398), states, "**ocular inspection:** a means of evidence with exceptional effectiveness, such that it consists in the examination or recognition that the judge, the court or the person to whom the judge delegates, and sometimes with the company of the parties, witnesses or experts, to directly observe the place where an event took place or the state of the thing being litigated or at issue, and to render judgment with more indisputable elements."

2

contamination with your own eyes.[2]  Site visits of the sort carried out by the judges presiding over the Lago Agrio litigation are also firmly established in the American legal system. "Views," as they are termed in our judicial system, have been regarded as playing an important role in the determination of fact in certain circumstance.  Charles T. McCormick, McCormick on Evidence § 216, at 346 (John W. Strong ed., 5th ed. 1999) ("Venturing forth to observe places or objects which are material to litigation but which cannot feasibly be brought, or satisfactorily reproduced, within the courtroom, is termed a 'view.'"). 4 Wigmore, supra note 4, § 1162; see also T. W. Hughes, An Illustrated Treatise on the Law of Evidence, pt. 3, ch. 1, § 4, at 166 (1907).  This is so whether the trier of fact is judge or jury. *See, e.g.*, 4 John Henry Wigmore, Evidence in Trials at Common Law §§ 1163, 1169 (Chadbourn rev. 1972 & Supp. 1989) (in a bench trial, the "judge may have a view, just as the jury might"); *United States v. Walls*, 443 F.2d 1220, 1223 (6th Cir. 1971) (principles of judge view and jury view are the same). The decision of whether to conduct a view is left to the informed discretion of the trial judge. *United States v. Harris*, 141 F. Supp. 418, 419 n.1 (S.D. Cal. 1955) (collecting cases).

Views are especially appropriate in cases such as this, where selected videos, audio, power points and other aids are inadequate or misleading. *See, e.g., Clarke v. Bruckner*, 93 F.R.D. 666, 671 (D.V.I. 1982) ("No number of photographs or drawings could give the jury as truthful a picture of the scene as a visit to the site."); *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1266-7(9th Cir. 2001) ("If a picture is worth a thousand words, then the real thing is worth a thousand pictures."); *United States v. Skinner*, 425 F.2d 552, 555 (D.C. Cir.

---

[2]     This Court has already felt itself "obliged" to pass judgment on Ecuador and the Ecuadorian judiciary in conclusory fashion. DI 181 at 81. If the Court feels itself so obliged, then visiting the sovereign country it purports to have the authority to pass judgment on is the least it could do.

1970) (same). Chevron has already made clear that its seeks to convince this Court –through a carefully controlled selection and arrangement of video clips and ambiguous emails – that the Lago Agrio judgment was the product of fraud and not based upon established and irrefutable fact. But Chevron's selective evidence is calculated to mislead and to prevent this Court from learning the "the whole story of what went on in Ecuador and elsewhere leading to the Judgment." DI 905 at 61.  For the foregoing reasons, Donziger Defendants ask this Court to travel to the contaminated sites at the heart of this case, as other judges on the case have, and see with its own eyes that there is not just some evidence but strong evidence wholly untainted by fraud, to support the Ecuadorian verdict.

Dated: October 10, 2013

                                                                                                     Respectfully submitted,

                                                                                                    /s/ Steven R. Donziger  
                                                Steven R. Donziger  
                                                245 W. 104th Street, #7D  
                                                New York, NY 10025  
                                                Tel: (917) 678-3943  
                                                Fax: (212) 409-8628  
                                                StevenRDonziger@gmail.com

*Pro Se*

                                                           /s/ Steven R. Donziger  
                                                Steven R. Donziger  
                                                245 W. 104th Street, #7D  
                                                New York, NY 10025  
                                                Tel: (212) 570-4499  
                                                Fax: (212) 409-8628  
                                                StevenRDonziger@gmail.com

*Attorney for Defendants Law Offices of Steven R. Donziger and Donziger & Associates, PLLC*

4