UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
:
:
CHEVRON CORPORATION, :
:
               Plaintiff, :
: Case No. 11 Civ. 0691 (LAK)
     v. :
:
STEVEN DONZIGER, et al., :
:
               Defendants. :
:
------------------------------------------------------------x

# PLAINTIFF CHEVRON CORPORATION'S BRIEF REGARDING PROPER SCOPE OF DAVID RUSSELL CROSS-EXAMINATION

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone:     212.351.4000
Facsimile:       212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

Pursuant to this Court's request at trial yesterday, Chevron Corporation ("Chevron") respectfully provides the following brief on the scope of cross-examination of David Russell.

The claims in this case concern the conduct of Defendants and their scheme to defraud and extort Chevron. The testimony of David Russell is directly relevant to these claims. Russell testified that, in 2003, Donziger asked him to provide a cost estimate to clean up or remediate oil contamination in the former Concession area. Donziger induced Russell to make this estimate very large, making it clear he wanted a "really big number" and that he needed a "really big number" in order to pressure Chevron to settle. Russell Direct Testimony, ¶ 9. In order to get this "really big number," Donziger provided Russell with a series of assumptions. Russell "did not analyze any soil or water samples, and [] was not provided with any environmental data." *Id.*, ¶ 5. Based largely on the assumptions provided by Donziger, and what limited information he could collect in a few days, Russell generated an estimate of $6.114 billion. *Id.*, ¶ 10. After working for Donziger for one year, however, Russell came to realize that this estimate was unreliable and inconsistent with the information he had obtained during that time. *Id.*, ¶ 11. Russell's concern led him to write letters to Donziger and Amazon Watch, who were "repeatedly cit[ing] the cost estimate on television, radio, in press releases, and to news reports as [] accurate[] [and] scientifically supported," telling them to "cease and desist" using this inaccurate and unsupported estimate. *Id.*, ¶¶ 12, 16. Donziger and Amazon Watch continued to use Russell's estimate despite his demands.

Proper cross-examination is limited to rebutting the witness's direct examination, and challenging credibility. Thus, Defendants are entitled to question Russell with respect to what he saw and did in Ecuador, and what Donziger told Russell, that led to Russell's disavowal of the estimate. They may attempt to rebut his testimony that after a year of working for Donziger,

1

Russell had developed "no scientific data to back [the estimate] up." *Id.*, ¶ 11. And they may directly challenge his credibility. But Defendants may not use their cross-examination to attempt to rehabilitate the estimate itself, or to convince Russell that he was wrong to have reached the conclusions that he ultimately reached, especially based on information not known to Russell at the time. In short, Defendants may not use their cross-examination to attempt to relitigate the supposed scientific merits of the Lago Agrio Litigation itself.

A.    **The Scope of Cross-Examination Is Determined by the Testimony Offered on Direct**

"Cross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility." Fed. R. Evid. 611(b). A witness's testimony during direct examination may "open the door" for a party to elicit testimony from the witness on cross-examination, but "[r]ebuttal evidence is admissible only to the extent necessary to combat evidence in chief . . . . The open door theory provides no basis for legitimizing [a] completely unrelated rebuttal statement." *United States v. Childs*, 598 F.2d 169, 174 (D.C. Cir. 1979) (holding that testimony that defendant told witness he would return did not open the door to testimony about the purpose of the return visit). A party "by his direct testimony must 'open the door' to impeachment; otherwise such cross-examination would be impermissible." *Otero v. Eisenschmidt*, No. 01 Civ. 2562HB AJP, 2004 WL 2504382, at *22 (S.D.N.Y. Nov. 8, 2004) (quoting *People v. Wise*, 46 N.Y.2d 321, 327 (1978)) (internal quotation marks omitted) (emphasis added). To fall within the "open door" doctrine, testimony elicited on cross-examination "must either clarify the point [raised in direct examination] or tend to directly impeach the defendant on that point." *United States v. Crawford*, 438 F.2d 441, 444-45 (8th Cir. 1971) (holding that defendant's testimony on direct that he knew informant, a confessed addict and drug dealer, and that informant had tried to purchase narcotics from him did not open the door for the prosecution to elicit testimony on cross-examination that defendant associated with drug addicts and dealers

since such testimony did not clarify or impeach the witness's direct testimony, but merely "threw a shroud of suspicion" over defendant). The door does not open simply because the latter testimony is on the same topic or shares some common quality with the initial testimony. *See, e.g., United States v. Tomaiolo*, 249 F.2d 683, 692 (2d Cir. 1957) (holding that testimony on cross-examination that witness had been sentenced for being A.W.O.L. was not relevant to witness's testimony that he had served in the Army and had received an honorable discharge).

**B.     Cross-Examination Is Limited to the Scope of Russell's Direct, and Does Not Justify a Broad Investigation of Scientific Issues in the Lago Agrio Litigation**

Cross-examination of Russell is limited to clarifying or impeaching Russell's direct testimony. *See Crawford*, 438 F.2d at 444-45. Defendants may not attempt to elicit rebuttal testimony that is neither relevant to witness's direct testimony nor "necessary to combat evidence in chief." *See Childs*, 598 F.2d at 174 (D.C. Cir. 1979), *Tomaiolo*, 249 F.2d at 692.

In his direct examination, Russell testified that Donziger urged him to "come up with the biggest possible cost estimate [he] could." Russell Direct, ¶ 9. With this instruction to come up with a "really big number," Russell generated a cost estimate of $6.114 billion based largely on assumptions provided to him by Donziger. *Id*., ¶¶ 9, 11. Russell "did not analyze any soil or water samples, and [] was not provided with any environmental data." *Id*., ¶ 5. After working for Donziger for one year, however, Russell came to realize that this estimate was "wildly inaccurate," had no scientific data to back it up, and was based on Donziger's misrepresentations. *Id*., ¶¶ 11, 15. The only possible basis for this Russell's state of mind after this year was what Russell learned during that year.

Accordingly, Defendants may challenge Russell's credibility and may attempt to rebut his testimony. They may examine him on what he knew when he made the $6 billion estimate, and on what he saw and did in Ecuador over the following year, and what Donziger told Russell,

3

that led to Russell's ultimate disavowal of the estimate.  But Defendants may not use their cross-examination of Russell to attempt to rehabilitate the estimate itself, based on information not known to Russell during this time.  They may examine him on what he learned that caused him to determine that the "assumptions" Donziger gave him were unreliable.  But Defendants may not use their cross-examination to argue with Russell over whether those assumptions were supported by evidence not known to Russell at the time.[1]

In sum, whether or not Russell's estimate is ultimately true or false is not relevant to Russell's direct testimony, nor relevant to any claim or defense.  It does not clarify a point raised in Russell's direct testimony, nor does it directly impeach Russell.  *See Crawford*, 438 F.2d at 444-45.  There mere fact that Russell mentions his estimate does not open the door to unnecessary and irrelevant testimony about the ultimate truth of the estimate.  Any such questioning should be precluded.


Dated: October 17, 2013                             Respectfully submitted,

New York, New York                                  GIBSON, DUNN & CRUTCHER LLP

                                                    By:  /s/ Randy M. Mastro
                                                    Randy M. Mastro
                                                    Andrea E. Neuman
                                                    200 Park Avenue
                                                    New York, New York 10166
                                                    Telephone: 212.351.4000
                                                    Facsimile: 212.351.4035

---

[1] Moreover, Russell is a lay witness in this proceeding.  To the extent he provides any opinion testimony, it must be limited to opinion testimony that is "rationally based on the witness's perception," "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Civ. P. 701.

4

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for Plaintiff Chevron Corporation*