UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

CHEVRON CORPORATION,

      Plaintiff,

  v.

STEVEN DONZIGER, et al.,

      Defendants.

------------------------------------- x

11-CV-0691 (LAK)

**CHEVRON CORPORATION'S RESPONSE TO DEFENDANTS' OBJECTIONS TO
THE WITNESS STATEMENT OF CHRISTOPHER BOGART**

**CHRISTOPHER BOGART DIRECT TESTIMONY – OBJECTIONS AND RESPONSES**

| TESTIMONY OF CHRISTOPHER BOGART | DEFENDANTS' OBJECTIONS | PLAINTIFF'S RESPONSE |
|---|---|---|
| All paragraphs. | Defendants object to the entirety of Mr. Bogart's testimony as being irrelevant to any of the claims against them. | Mr. Bogart's testimony is relevant to Chevron's fraud claims. As Mr. Bogart recounts, the Defendants and their agents made misrepresentations to him and others at Burford with the intent to induce Burford to rely by providing litigation financing. Burford did rely by committing investment capital, and Chevron suffered damage as a result. |
| • Burford was particularly appalled later to learn of 2010 emails – predating the Funding Agreement by many months - among the plaintiffs' counsel indicating that they could "go to jail" if the true facts came out. PX 1279. Again, the existence of that sentiment - whether or not well-founded – would clearly have been material to Burford's investment decision, was not disclosed to Burford and would have resulted in Burford declining to invest. | Objection to testimony and to PX 1279 as being hearsay, and violation of attorney client and work product privileges. | PX 1279 is admissible as a non-hearsay admission of a party-opponent pursuant to FRE 801(d)(2)(A)-(B); a non-hearsay opposing party agent or authorized speaker statement, FRE 801(d)(2)(C)-(D); a non-hearsay statement by a coconspirator in furtherance of a conspiracy, FRE 801(d)(2)(E); and because it falls within an exception to the hearsay rule as a statement against interest because Prieto is unavailable, FRE 804(b)(3). Mr. Bogart's testimony is not hearsay and is direct testimony based on personal knowledge.<br><br>Any and all privileges and work product protections over this testimony and PX 1279 have been waived by virtue of Judge Kaplan's orders in the Donziger 1782 action and multiple other orders in this and related actions. *See* Dkt. 1012 at 12 ("[T]his is not an opportunity to relitigate the merits of this Court's waiver finding in the *Donziger* 1782 case that was upheld on appeal"); *In re Chevron Corp.*, 749 F. Supp. 2d 170, 185 (S.D.N.Y. 2010), *aff'd sub nom.*, *Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010) ("Accordingly, having accepted Donziger's invitation to reconsider the waiver holding, this Court again holds—on the law, on the facts, and in the exercise of discretion—that each and every privilege claim with respect to the documents sought by the subpoenas has been waived."). Mr. Bogart's testimony and PX 1279 also come within the scope of Judge Kaplan's crime fraud rulings. *E.g.*, Dkt. 905 at 3-5 ("Chevron has established at least probable cause to believe there was fraud or other criminal |

| TESTIMONY OF CHRISTOPHER BOGART | DEFENDANTS' OBJECTIONS | PLAINTIFF'S RESPONSE |
|---|---|---|
| | | activity in the procurement of the Judgment and in other respects relating to the Lago Agrio litigation in which that Judgment was rendered and in certain litigations in the United States relating to the Ecuadorian litigation. Without alluding here to the entirety of its showing, there is probable cause to suspect, and often stronger evidence, that . . . [o]nce the improprieties surrounding Cabrera began to come to light, the LAPs or their representatives then obstructed justice and committed fraud in at least one Section 1782 proceeding in the United States by submitting to a court in Colorado a deceptive account of the LAPs' relationship with Cabrera.") |
| • Following its review of the public filings in this case in 2011, Burford determined that it had been deceived and terminated the Funding Agreement. Upon termination, Burford told the plaintiffs and their lawyers that it had been defrauded into funding the litigation: "[W]e believe that you and particularly your US representatives engaged in a multi-month scheme to deceive and defraud in order to secure desperately needed funding from Treca, all the while concealing material information and misrepresenting critical facts in the fear that we would have walked away had we known the true state of affairs." A true and correct copy of this letter is PX 1490. | Objection to testimony and PX 1490 as being hearsay, irrelevant and argumentative. | Throughout the course of this litigation, the Defendants have alleged that Mr. Bogart's testimony was fabricated in response to pressure from Chevron. *See, e.g.*, Dkt. 1255 at 2 (characterizing Mr. Bogart's April 2013 declaration, which is consistent with his testimony at trial, as "false and misleading"). Accordingly, PX 1490 and Mr. Bogart's testimony about the content of PX 1490 are admissible as prior consistent statements to rebut an express and implied charge of fabrication. FRE 801(d)(1)(B). PX 1490 is also a business record exception to the hearsay rule, FRE 803(6), and a statement of the declarant's then-existing state of mind, FRE 803(3). The remainder of Mr. Bogart's testimony is not hearsay and is direct testimony based on personal knowledge.<br><br>PX1490 and Mr. Bogart's testimony are both relevant to the credibility of Mr. Bogart's allegations concerning the Defendants' fraud. The fact that Burford made similar arguments in September 2011 bolsters Mr. Bogart's claims.<br><br>As to the "argumentative" objection, the testimony is Mr. Bogart's personal observation and provides the foundational basis for his conduct as described further in his testimony. To the extent Defendants' "argumentative" objection applies to PX 1490, it is improper and unintelligible. |
| 7. Burford thus began more significant diligence and commenced commercial negotiations over investment terms. Our contacts for both diligence and negotiation were | Hearsay, lack of foundation, lack of personal knowledge. | Donziger's statement is a non-hearsay opposing party statement, FRE 801(d)(2)(A)-(B); a non-hearsay opposing party's agent or authorized speaker statement, FRE 801(d)(2)(C)-(D); and a non-hearsay statement by a coconspirator in furtherance of a conspiracy, FRE 801(d)(2)(E). The remainder of Mr. Bogart's testimony is not hearsay but direct testimony based on personal knowledge. |

| TESTIMONY OF CHRISTOPHER BOGART | DEFENDANTS' OBJECTIONS | PLAINTIFF'S RESPONSE |
|---|---|---|
| generally with Donziger and/or Patton Boggs. The magnitude, complexity and uniqueness of the Litigation and the duration and complexity of the economic negotiations meant that there were substantial contacts extending over a number of months. I personally attended several meetings with Donziger at Patton Boggs' offices, and my colleagues attended yet more. Donziger made it clear that he had broad authority from the LAPs to negotiate financing arrangements and to be the primary interface with Burford, although we did meet once, in mid-2010, with Ecuadorian counsel for the LAPs, Pablo Fajardo, and their Ecuadorian representative, Luis Yanza, in New York, at the offices of Patton Boggs. | | Mr. Bogart has a foundation for and personal knowledge of this testimony because CEO of Burford Capital, he personally attended meetings where Mr. Donziger made these representations. |
| 8. While Burford conducts extensive due diligence in connection with each possible investment it reviews, it adapts its diligence to each situation at hand. In the Lago Agrio Litigation, it was not feasible for Burford to, for example, review the massive record amassed in the Ecuadorean proceeding, or to travel to Ecuador to conduct its own on-site diligence. Because Patton Boggs needed to do that work in connection with its own entry into the case in any | Objection to PX 2382 as hearsay and hearsay within hearsay. Also violates work product and attorney client privileges. Objection to sentence beginning "It was clear to Donziger and Patton Boggs | The portions of PX 2382 in which the Defendants make misrepresentations to Burford Capital about their contacts with Cabrera, the *Crude* outtakes, and other issues are not offered for truth, but rather to show that the statements were made. FRE 801(c)(2).<br><br>As to other portions of PX 2382, hearsay within hearsay is not excluded if each part of the combined statements conforms with an exception to the rule. FRE 805. PX 2382 is a non-hearsay opposing party's agent or authorized speaker statement, FRE 801(d)(2)(C)-(D), and a non-hearsay statement by coconspirator in furtherance of a conspiracy, FRE 801(d)(2)(E). The Defendants have not pointed to any statements within PX 2382 that are offered for truth, but any such statements would similarly fall within non-hearsay exclusions from the hearsay rule.<br><br>PX 2382 is not protected by work product or the attorney-client privilege. Conveying |

3

| TESTIMONY OF CHRISTOPHER BOGART | DEFENDANTS' OBJECTIONS | PLAINTIFF'S RESPONSE |
|---|---|---|
| event, it was agreed that Patton Boggs would provide its analysis on those issues as well as its judgment enforcement strategy to Burford, and that Burford would not try independently to perform that work, although Burford remained in close and active contact with Tyrrell and his partner Eric Westenberger about their work. That work was ultimately memorialized in the Invictus memo provided by Patton Boggs to Burford which was then presented to the Burford investment committee in September 2010, which approved the investment. PX 2382. It was clear to Donziger and Patton Boggs that Burford was relying on that work; Burford had made clear that it could not proceed to its investment committee for consideration of the investment without the memo and the committee's consideration was delayed during the summer of 2010 because of delays in the production of the memo, and at one point it was even proposed that Tyrrell appear by video link before the investment committee. Separately, Burford and its outside counsel conducted its own diligence on other aspects of the potential investment that were more amenable to direct diligence, such as the enforceability of a potential funding contract under | . . .as speculation, no personal knowledge, no foundation. | PX 2382 and multiple drafts of it to a third party (Burford) destroyed any applicable privilege. Mr. Donziger's production of this document or other versions of it during the 1782 action also vitiates any privilege. *See In re Chevron Corp.*, 749 F. Supp. 2d 170, 185 (S.D.N.Y. 2010), *aff'd sub nom.*, *Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010) ("Accordingly, having accepted Donziger's invitation to reconsider the waiver holding, this Court again holds—on the law, on the facts, and in the exercise of discretion—that each and every privilege claim with respect to the documents sought by the subpoenas has been waived."). Even if it were otherwise privileged, it would fall within the crime-fraud exception.<br><br>Mr. Bogart is testifying to his personal knowledge and not speculating in the sentence beginning, "It was clear to Donziger and Patton Boggs . . ." As Mr. Bogart explains, Burford made it clear that it could not proceed to its investment committee for consideration of the investment without the Invictus memo and the committee's consideration was delayed during the summer of 2010 because of delays in the production of the memo. |

4

| TESTIMONY OF CHRISTOPHER BOGART | DEFENDANTS' OBJECTIONS | PLAINTIFF'S RESPONSE |
|---|---|---|
| Ecuadorian law, the documentation required to bind the LAPs, and how to ensure Burford's investment was appropriately secured. Burford also conducted diligence on the possible effect of ongoing investment treaty arbitration between Chevron and the Republic of Ecuador on any potential judgment. | | |
| 9.      Burford was concerned about the allegations being made regarding Cabrera during the diligence process. As set forth in our internal analysis to the Burford investment committee, we understood that Chevron was likely to argue that any judgment against it in the Lago Agrio Litigation was unenforceable based "on communications between plaintiffs and the neutral, court-appointed expert Cabrera that, in Chevron's view, render Cabrera's report tainted and undermine the soundness of any court judgment." We were candid that these allegations "gave us some pause," and we shared with Donziger and Patton Boggs our concerns. A true and correct copy of a memorandum we wrote to our Investment Committee documenting these concerns is included in PX 2382. | Hearsay regarding "…internal analysis to the Burford investment committee…" | Throughout the course of this litigation, the Defendants have alleged that Mr. Bogart's testimony was fabricated in response to pressure from Chevron. *See, e.g.*, Dkt. 1255 at 2 (characterizing Mr. Bogart's April 2013 declaration, which is consistent with his testimony at trial, as "false and misleading"). Accordingly, this statement is admissible as a prior consistent statement to rebut an express and implied charge of fabrication. FRE 801(d)(1)(B). The analysis is also contained within a business record exception to the hearsay rule, FRE 803(6). |
| 13.    As we later learned, the representations that Patton Boggs made | Argumentative, speculation, lack | Mr. Bogart is testifying to his personal knowledge about Burford's practices and investment strategies, not speculating. |

5

| TESTIMONY OF CHRISTOPHER BOGART | DEFENDANTS' OBJECTIONS | PLAINTIFF'S RESPONSE |
|---|---|---|
| to us in Invictus and otherwise during our diligence process were false and misleading in several respects. There is absolutely no question that Burford would not have invested in the Litigation – which we described as having "greater uncertainty" than our usual investment and "significant" risks that were "not capable of complete evaluation" had we known the whole truth about Cabrera. Indeed, Donziger knew as much: when debating how much to conceal, he wrote his colleagues (including Patton Boggs) in June 2010, during a period of active negotiations with Burford, that they "need to probe" what admitting the truth would mean "at a time we are trying to raise money" because there would be "negative fallout" and it "might be better to be general". PX 1364. Of course, we were unaware of this behind the scenes debate about their deception until after we invested. | of personal knowledge. | As to the "argumentative" objection, the statement is Mr. Bogart's personal observation and provides the foundational basis for his conduct as described further in his testimony. |
| 14.   To begin with, it became clear from evidence that came to light in this case that the contacts between the LAPs' representatives and Cabrera were not "permissible" at all, but instead were illegal and violated Ecuadorian law. This was bluntly acknowledged in an email in which the | Improper legal opinion and expert testimony, hearsay as to PX 1279, as well as violation of work product and attorney client | Mr. Bogart is allowed to testify to matters he observed as a lay witness. FRE 701. His testimony regarding the legality of the Defendants' contacts with Cabrera is not expert testimony, but rather based on what he observed unfold during the course of this litigation, and based on the Defendants' own words that they would "go to jail."<br><br>PX 1279 is admissible as a non-hearsay admission of a party-opponent pursuant to FRE 801(d)(2)(A)-(B); a non-hearsay opposing party agent or authorized speaker statement, FRE 801(d)(2)(C)-(D); a non-hearsay statement by a coconspirator in furtherance of a |

6

| TESTIMONY OF CHRISTOPHER BOGART | DEFENDANTS' OBJECTIONS | PLAINTIFF'S RESPONSE |
|---|---|---|
| LAPs' Ecuadorian attorneys observed that if the full scope of their interaction with Cabrera came out, they could all "go to jail." PX 1279. Burford did not see this email until early 2011-after it had invested in the Lago Agrio Litigation-and even then, it was not provided to Burford by Donziger or Patton Boggs, but rather obtained from Chevron's filings in this case. | privileges. | conspiracy, FRE 801(d)(2)(E); and because it falls within an exception to the hearsay rule as a statement against interest because Prieto is unavailable, FRE 804(b)(3).<br><br>Any and all privileges and work product protections over this testimony and PX 1279 have been waived by virtue of Judge Kaplan's orders in the Donziger 1782 action and multiple other orders in this and related actions. *See* Dkt. 1012 at 12 ("[T]his is not an opportunity to relitigate the merits of this Court's waiver finding in the *Donziger* 1782 case that was upheld on appeal"); *In re Chevron Corp.*, 749 F. Supp. 2d 170, 185 (S.D.N.Y. 2010), *aff'd sub nom.*, *Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010) ("Accordingly, having accepted Donziger's invitation to reconsider the waiver holding, this Court again holds—on the law, on the facts, and in the exercise of discretion—that each and every privilege claim with respect to the documents sought by the subpoenas has been waived. It declines to exercise its discretion in their favor."). PX 1279 also comes within the scope of Judge Kaplan's crime fraud rulings. *E.g.*, Dkt. 905 at 3-5 ("Chevron has established at least probable cause to believe there was fraud or other criminal activity in the procurement of the Judgment and in other respects relating to the Lago Agrio litigation in which that Judgment was rendered and in certain litigations in the United States relating to the Ecuadorian litigation. Without alluding here to the entirety of its showing, there is probable cause to suspect, and often stronger evidence, that . . . [o]nce the improprieties surrounding Cabrera began to come to light, the LAPs or their representatives then obstructed justice and committed fraud in at least one Section 1782 proceeding in the United States by submitting to a court in Colorado a deceptive account of the LAPs' relationship with Cabrera.") |
| 15.    Then, it became clear that the contacts between the LAPs and Cabrera were not "limited" either - and indeed that the issue was not even the scope and propriety of ex parte contacts but rather the wholesale ghostwriting of the Cabrera report. For example, in an email dated June 14, 2010, in the midst of negotiations over the Funding Agreement and long | Argumentative, speculation, lack of personal knowledge. As to PX 1371, and PX 2380, hearsay, violation of work product and attorney client privileges. | As to the "argumentative" objection, the statement is Mr. Bogart's personal observation and provides the foundational basis for his conduct as described further in his testimony.<br><br>Mr. Bogart is testifying to his personal knowledge and not speculating. Based on the evidence that has come out in this case, he knows the content of the Defendants' emails.<br><br>As to PX 1371 and 2380, the statements are non-hearsay opposing party statements, FRE 801(d)(2)(A)-(B); non-hearsay opposing party agent or authorized speaker statements, FRE 801(d)(2)(C)-(D); and non-hearsay statements by a coconspirator in furtherance of a conspiracy, FRE 801(d)(2)(E). |

| **TESTIMONY OF CHRISTOPHER BOGART** | **DEFENDANTS' OBJECTIONS** | **PLAINTIFF'S RESPONSE** |
|---|---|---|
| before delivery of the Invictus memo, one of the LAPs' US lawyers wrote to a number of other lawyers, including a number of Patton Boggs lawyers, a lengthy discussion weighing the pros and cons of what would happen if "we cop to having written portions of the report". PX 1371. The next day, the email scheming continued, with multiple emails among the lawyers debating the issue, with choice passages such as "we will still be denying what is already apparent (that we authored portions of the report)" and including the succinct view of one lawyer: "which is why we're not admitting everything – only what we have to". PX 2380. Again, all of this was occurring outside Burford's view. | | Any and all privileges and work product protections over PX 1371 and PX 2380 have been waived by virtue of Judge Kaplan's orders in the Donziger 1782 action and multiple other orders in this and related actions. *See* Dkt. 1012 at 12 ("[T]his is not an opportunity to relitigate the merits of this Court's waiver finding in the *Donziger* 1782 case that was upheld on appeal"); *In re Chevron Corp.*, 749 F. Supp. 2d 170, 185 (S.D.N.Y. 2010), *aff'd sub nom.*, *Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010) ("Accordingly, having accepted Donziger's invitation to reconsider the waiver holding, this Court again holds—on the law, on the facts, and in the exercise of discretion—that each and every privilege claim with respect to the documents sought by the subpoenas has been waived. It declines to exercise its discretion in their favor."). PX 1371 and PX 2380 also come within the scope of Judge Kaplan's crime fraud rulings. *E.g.*, Dkt. 905 at 3-5 ("Chevron has established at least probable cause to believe there was fraud or other criminal activity in the procurement of the Judgment and in other respects relating to the Lago Agrio litigation in which that Judgment was rendered and in certain litigations in the United States relating to the Ecuadorian litigation. Without alluding here to the entirety of its showing, there is probable cause to suspect, and often stronger evidence, that . . . [o]nce the improprieties surrounding Cabrera began to come to light, the LAPs or their representatives then obstructed justice and committed fraud in at least one Section 1782 proceeding in the United States by submitting to a court in Colorado a deceptive account of the LAPs' relationship with Cabrera.") |
| 16.   Indeed, Patton Boggs represented to us that it had a plan to address concerns regarding the Cabrera Report raised by Chevron. As Patton Boggs described in its Invictus memo, the LAPs petitioned the Ecuadorian court to allow the parties to make supplemental damages submissions from other experts separate from the Cabrera report. Patton Boggs referred to these submissions as the "cleansing | Argumentative, speculation, lack of personal knowledge, hearsay, violation of work product and attorney client privileges. As to PX 2382, hearsay, violation of work product | As to the "argumentative" objection, the statement is Mr. Bogart's personal observation and provides the foundational basis for his conduct as described further in his testimony.

Mr. Bogart is testifying to his personal knowledge and not speculating. Rather, he is articulating what Patton Boggs told him and Burford about the cleansing experts and explaining how that information impacted Burford's investment calculus. Chevron is not offering Patton Boggs' statements for truth, but to show they were made.

The portion of PX 2382 concerning the Defendants' representations about the cleansing experts and Mr. Bogart's testimony quoting that portion are not offered for truth, but rather to show that the statements were made. FRE 801(c)(2). The portion of Mr. |

8

| TESTIMONY OF CHRISTOPHER BOGART | DEFENDANTS' OBJECTIONS | PLAINTIFF'S RESPONSE |
|---|---|---|
| expert" reports. Patton Boggs considered the Ecuadorian court's decision allowing these supplemental reports to be submitted to be a "significant tactical victory for the Plaintiffs, insofar as it substantially weakens Chevron's argument" about the Cabrera report's infirmities. PX 2382. Burford relied on Patton Boggs's representations in regard to these "cleansing expert" reports, and they were material to Burford's funding decision. If Burford had been aware of information indicating that the underlying bases of the Cabrera report were tainted (as opposed to the Cabrera issue being solely around impermissible contacts and influence on his report) and thus that the reports of these "cleansing experts" would be relying on those tainted bases as well (which would not solve the problem), Burford would not have entered into the Funding Agreement. | and attorney client privileges. | Bogart's testimony that does not quote PX 2382 is not hearsay but direct testimony based on personal knowledge.<br><br>Neither PX 2382 nor Mr. Bogart's testimony about it are not protected by work product or the attorney-client privilege. Conveying PX 2382 and multiple drafts of it to a third party (Burford) destroyed any applicable privilege. Mr. Donziger's production of this document or other versions of it during the 1782 action also vitiates any privilege. *See In re Chevron Corp.*, 749 F. Supp. 2d 170, 185 (S.D.N.Y. 2010), *aff'd sub nom.*, *Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010) ("Accordingly, having accepted Donziger's invitation to reconsider the waiver holding, this Court again holds—on the law, on the facts, and in the exercise of discretion—that each and every privilege claim with respect to the documents sought by the subpoenas has been waived. It declines to exercise its discretion in their favor."). Even if it were otherwise privileged, it would fall within the crime-fraud exception. |
| 17. Burford was entitled under the Funding Agreement to be informed of any facts known to the lawyers "reasonably likely to be material to the Funder's assessment of the Claim". PX 552. Burford did not just wait to be told: we asked specifically about the Cabrera report. How any New York lawyer could believe that the fact that | Argumentative | As to the "argumentative" objection, the statement is Mr. Bogart's personal observation and provides the foundational basis for his conduct as described further in his testimony. |

| TESTIMONY OF CHRISTOPHER BOGART | DEFENDANTS' OBJECTIONS | PLAINTIFF'S RESPONSE |
|---|---|---|
| portions of the Cabrera report had been written by the LAPs would not be "reasonably likely to be material" to Burford's assessment is utterly unfathomable to me. | | |
| 18.     The reality, of course, is what Donziger presciently forecast: there would indeed have been "negative fallout" if Burford had been told the complete truth.  Indeed, Burford would have walked away immediately. Instead, Burford relied upon the representations made by Patton Boggs and Donziger that the contacts between the LAPs' representatives and Cabrera were limited and permissible under Ecuadorian law, and that Chevron's fraud allegations were exaggerated and unfounded.  These representations by Patton Boggs and Donziger were material to Burford's decision to enter into the Funding Agreement. | Argumentative, speculation, lack of personal knowledge. | As to the "argumentative" objection, the statement is Mr. Bogart's personal observation and provides the foundational basis for his conduct as described further in his testimony.

Mr. Bogart is testifying to his personal knowledge and not speculating.  He is articulating how the information Burford Capital received during the diligence process impacted Burford's investment calculus. |
| 20.     In the Invictus memo, Patton Boggs assured us that Chevron's allegations regarding the outtakes were exaggerated: "Chevron claims that the outtakes show unlawful collusion between Plaintiffs, their experts, and Mr. Cabrera, and that they contain admissions by Plaintiffs' counsel and experts that there is no factual basis for damages.  But as with virtually any | Hearsay, violation of work product and attorney client privileges | The portion of PX 2382 detailed the Defendants' representations about the *Crude* outtakes is not offered for truth, but rather to show that the statements were made to Burford Capital.  FRE 801(c)(2).

PX 2382 is not protected by work product or the attorney-client privilege.  Conveying PX 2382 and multiple drafts of it to a third party (Burford) destroyed any applicable privilege.  Mr. Donziger's production of this document or other versions of it during the 1782 action also vitiates any privilege. *See In re Chevron Corp.*, 749 F. Supp. 2d 170, 185 (S.D.N.Y. 2010), *aff'd sub nom.*, *Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010) ("Accordingly, having accepted Donziger's invitation to |

10

| TESTIMONY OF CHRISTOPHER BOGART | DEFENDANTS' OBJECTIONS | PLAINTIFF'S RESPONSE |
|---|---|---|
| other claim by Chevron in this litigation, reality is being distorted here." Patton Boggs also reassured us that there were no new bombshells in the remaining footage, and that it was, in fact, positive for the Plaintiffs: "The collection of outtakes submitted to the various Section 1782 courts by Chevron represents less than 0.1 % of the total footage produced. The remainder of the footage vindicates Plaintiffs' position, and indeed, evidences Chevron's own misconduct." PX 2382. | | reconsider the waiver holding, this Court again holds—on the law, on the facts, and in the exercise of discretion—that each and every privilege claim with respect to the documents sought by the subpoenas has been waived. It declines to exercise its discretion in their favor."). Even if it were otherwise privileged, it would fall within the crime-fraud exception. |
| 23.    Burford later learned through documents in this case that Donziger failed to disclose facts regarding Kohn's termination which would have been material to Burford, including, among other things, that Kohn wrote in an August 2010 letter that he was (1) "shocked by recent disclosures concerning potentially improper and unethical, if not illegal, contacts with the court-appointed expert, Mr. Cabrera," and that (2) Kohn was not only unaware of these contacts, he found them to be "contrary to assurances that Donziger and [Ecuadorian counsel] made to [Kohn] on numerous occasions." PX 1406. | As to PX 1406, hearsay, violation of work product and attorney client privileges. | PX 1406 is a business record exception to the hearsay rule. FRE 803(6).<br><br>Any and all privileges and work product protections over PX 1406 have been waived by virtue of Judge Kaplan's orders in the Donziger 1782 action and multiple other orders in this and related actions. *See* Dkt. 1012 at 12 ("[T]his is not an opportunity to relitigate the merits of this Court's waiver finding in the *Donziger* 1782 case that was upheld on appeal"); *In re Chevron Corp.*, 749 F. Supp. 2d 170, 185 (S.D.N.Y. 2010), *aff'd sub nom.*, *Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010) ("Accordingly, having accepted Donziger's invitation to reconsider the waiver holding, this Court again holds—on the law, on the facts, and in the exercise of discretion—that each and every privilege claim with respect to the documents sought by the subpoenas has been waived. It declines to exercise its discretion in their favor."). |
| 24.    Burford relied on Donziger's | As to PX 1490, | PX 2382 is not mentioned in this paragraph, and so without waiving its rights, Chevron |

11

| TESTIMONY OF CHRISTOPHER BOGART | DEFENDANTS' OBJECTIONS | PLAINTIFF'S RESPONSE |
|---|---|---|
| representations regarding the position with Kohn. As we stated in our September 23, 2011 letter to Donziger, Pablo Fajardo, Luis Yanza, and others, "it is now clear that you were willing to do and say anything to attract new funding. You misled us about Kohn's relationship with you and the current status of that relationship, and the reasons you would not be able to deliver Kohn as a signatory to the intercreditor agreement. Those too were material misrepresentations." PX 1490. In other words, had Burford known Donziger's representations regarding Kohn were false, it would not have entered into the Funding Agreement. | As to PX 2382, hearsay, argumentative, speculation, no personal knowledge. | will not address it. As to PX 1490, throughout the course of this litigation, the Defendants have alleged that Mr. Bogart's testimony was fabricated in response to pressure from Chevron. *See, e.g.*, Dkt. 1255 at 2 (characterizing Mr. Bogart's April 2013 declaration, which is consistent with his testimony at trial, as "false and misleading"). Accordingly, this statement is admissible as a prior consistent statement to rebut an express and implied charge of fabrication. FRE 801(d)(1)(B). PX 1490 is also a business record exception to the hearsay rule, FRE 803(6), and a statement of the declarant's then-existing state of mind, FRE 803(3).<br><br>To the extent Defendants' "argumentative" objection applies to PX 1490, it is improper and unintelligible.<br><br>To the extent Defendants' "speculation" objection applies to PX 1490, it is improper and unintelligible.<br><br>To the extent Defendants' "no personal knowledge" objection applies to PX 1490, it is improper and unintelligible. |
| 29. During the December 2010 to January 2011 period, Burford became increasingly concerned about new information that was developed during discovery in the Section 1782 action (particularly from the deposition testimony of Steven Donziger). That concern was heightened still further in a telephone call with Tyrrell on January 27, 2011. While I do not always take detailed notes of conversations, this call was such that I did so. A true and correct copy of my notes is PX 1473. Tyrrell told me that Donziger had "not told the truth to new | As to PX 1473, hearsay. As to purported recitation of conversation with Tyrrell, hearsay. | PX 1473 is not hearsay because it is a statement by a coconspirator in furtherance of a conspiracy, FRE 801(d)(2)(E). PX 1473 is also a business record exception to the hearsay rule, FRE 803(6), and a statement of the declarant's then-existing state of mind, FRE 803(3). Furthermore, the Defendants have alleged that Mr. Bogart's testimony was fabricated in response to pressure from Chevron. *See, e.g.*, Dkt. 1255 at 2 (characterizing Mr. Bogart's April 2013 declaration, which is consistent with his testimony at trial, as "false and misleading"). Accordingly, this statement is admissible as a prior consistent statement to rebut an express and implied charge of fabrication. FRE 801(d)(1)(B).<br><br>Tyrrell's statements are non-hearsay opposing party agent or authorized speaker statements, FRE 801(d)(2)(C)-(D); and non-hearsay statements by a coconspirator in furtherance of a conspiracy, FRE 801(d)(2)(E). |

| TESTIMONY OF CHRISTOPHER BOGART | DEFENDANTS' OBJECTIONS | PLAINTIFF'S RESPONSE |
|---|---|---|
| counsel of [the] extent of his prior contacts with Cabrera," that they were told previously by Donziger "that contacts were quite limited" when there were "voluminous contacts, in fact." He told me that "Donziger never disclosed the vast majority of contacts [with Cabrera] despite being asked specifically about them." He said that "law firms" representing the LAPs were "discussing their ethical obligations." Tyrrell told me this information "only has come out in Donziger's NY deposition [in the Section 1782 action]" and that he was "not at peace" with the extent to which Donziger's testimony varied from what Donziger told Patton Boggs earlier and what Patton Boggs told Burford, but he was not willing at that point to discuss Donziger's testimony with him. Tyrrell and Patton Boggs had been involved in various court filings in mid- 2010 and he said that he was concerned about those filings because they had been made without "proper facts", but he attempted to assuage Burford's concern about any substantive impact on the Litigation by discussing the Ecuadorean legal principle that clients would not be caused to suffer for wrongdoing by their lawyers. He said that Patton Boggs was "evaluating what to do - | | |

13

| TESTIMONY OF CHRISTOPHER BOGART | DEFENDANTS' OBJECTIONS | PLAINTIFF'S RESPONSE |
|---|---|---|
| and procedurally what to do about it." PX 1473.  He said that "Donziger was a fool." He also said that there was "enormous financial pressure at Patton Boggs." Based on what Tyrrell said to me in that call, I thought it was entirely possible that Patton Boggs would withdraw from the representation. | | |
| 36.    By the time the U.S. Court of Appeals for the Second Circuit lifted the preliminary injunction on September 19, 2011, Treca had determined that the LAPs were in breach of the Funding Agreement and decided to terminate it.  On September 23, 2011, Burford informed the LAPs of that termination by letter and stated: "It is clear from the evidence that has come to light subsequent to our discussions with you and Treca's entry into the Funding Agreement that Claimants, the FDA, their affiliates and their attorneys (collectively, 'you') have engaged in conduct and activity that gives rise to numerous material breaches of the Funding Agreement.  In addition to breaching the Funding Agreement - through misrepresentations and other material failures - the conduct discovered amounts to fraud." PX 1490. | As to PX 1490, hearsay, argumentative, speculation, no personal knowledge. | The Defendants have alleged that Mr. Bogart's testimony was fabricated in response to pressure from Chevron. *See, e.g.*, Dkt. 1255 at 2 (characterizing Mr. Bogart's April 2013 declaration, which is consistent with his testimony at trial, as "false and misleading"). Accordingly, this statement is admissible as a prior consistent statement to rebut an express and implied charge of fabrication.  FRE 801(d)(1)(B).  PX 1490 is also a business record exception to the hearsay rule, FRE 803(6), and a statement of the declarant's then-existing state of mind, FRE 803(3).<br><br>To the extent Defendants' "argumentative" objection applies to PX 1490, it is improper and unintelligible.<br><br>To the extent Defendants' "no personal knowledge" objection applies to PX 1490, it is improper and unintelligible.<br><br>To the extent Defendants' "speculation" objection applies to PX 1490, it is improper and unintelligible. |
| 38.    Specifically, as the termination | Hearsay, | The Defendants have alleged that Mr. Bogart's testimony was fabricated in response to |

| **TESTIMONY OF CHRISTOPHER BOGART** | **DEFENDANTS' OBJECTIONS** | **PLAINTIFF'S RESPONSE** |
|---|---|---|
| letter explained, the LAPs' representatives, including their counsel, Steven Donziger and Patton Boggs, misled Burford by making at least the following specific misrepresentations: "(1) that your ex parte communications with Cabrera were limited, (2) that they were lawful under Ecuadorian law, and (3) that Chevron's suggestions to the contrary were false." PX 1490. Burford also noted the misrepresentations from Patton Boggs in the Invictus memo, in particular, on these topics:<br><br>In the Invictus report, we were told: 'Chevron claims that the outtakes show unlawful collusion between Plaintiffs, their experts, and Mr. Cabrera …. But as with virtually any other claim by Chevron in this litigation, reality is being distorted here.' (Page 4). The Invictus report also said that 'Chevron has cited in its submissions no Ecuadorian law or rule that prevents ex parte communication' (page 5) and that Chevron is '[c]leverly using the lens of U.S. norms to distort what transpired in Ecuador' and 'us[ing] its findings regarding Plaintiffs' involvement with the Cabrera Report to create the impression that it is the victim of an injustice in | argumentative, speculation, no personal knowledge. | pressure from Chevron. *See, e.g.*, Dkt. 1255 at 2 (characterizing Mr. Bogart's April 2013 declaration, which is consistent with his testimony at trial, as "false and misleading"). Accordingly, this statement is admissible as a prior consistent statement to rebut an express and implied charge of fabrication. FRE 801(d)(1)(B).<br><br>As to the "argumentative" objection, the statement is Mr. Bogart's personal observation and provides the foundational basis for his conduct as described further in his testimony.<br><br>"No personal knowledge" is an improper objection to a document. |

| TESTIMONY OF CHRISTOPHER BOGART | DEFENDANTS' OBJECTIONS | PLAINTIFF'S RESPONSE |
|---|---|---|
| Ecuador.' (Page 4) Throughout, you characterize Chevron's 'arguments concerning Mr. Cabrera' as 'misleading.' (Page 4) Separately from the Invictus Report, you assured us that your contacts with Cabrera were limited and entirely permissible. PX 1490. | | |
| 39.    In addition, Burford highlighted Donziger's admissions in his deposition taken by Chevron pursuant to its Section 1782 discovery proceeding against Donziger that the LAPs' team had ghostwritten the entire Cabrera Report and then engaged in an extensive cover up of that fact. As explained in the letter, Burford would not have agreed to enter into the Funding Agreement had it been informed of the truth about the Cabrera Report. | Hearsay, argumentative, speculation, no personal knowledge | The Defendants have alleged that Mr. Bogart's testimony was fabricated in response to pressure from Chevron. *See, e.g.*, Dkt. 1255 at 2 (characterizing Mr. Bogart's April 2013 declaration, which is consistent with his testimony at trial, as "false and misleading"). Accordingly, this statement is admissible as a prior consistent statement to rebut an express and implied charge of fabrication. FRE 801(d)(1)(B).<br><br>As to the "argumentative" objection, the statement is Mr. Bogart's personal observation and provides the foundational basis for his conduct as described further in his testimony.<br><br>Mr. Bogart as CEO of Burford Capital has personal knowledge of the company's investment practices. This testimony is based on Mr. Bogart's personal knowledge of the company's investment practices and his observations of events occurring at the time. It is not speculation because the testimony forms the foundation for facts testified about and conduct described in his testimony. |

| | |
|---|---|
| Dated: October 20, 2013 | Respectfully submitted, |
| New York, New York | GIBSON, DUNN & CRUTCHER LLP |
| | /s/ Randy M. Mastro |
| | Randy M. Mastro<br>Andrea E. Neuman<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: 212.351.4000<br>Facsimile: 212.351.4035 |
| | William E. Thomson<br>333 South Grand Avenue<br>Los Angeles, California 90071<br>Telephone: 213.229.7000<br>Facsimile: 213.229.7520 |
| | *Attorneys for Chevron Corporation* |