STEVEN R. DONZIGER, ESQ.

245 WEST 104TH STREET, SUITE 7D
NEW YORK, NEW YORK 10025

212-570-4499 (O)
917-566-2526 (CELL)

OF COUNSEL

MARK S. GIMPEL
ADAM PERLMUTTER

October 23, 2013

Honorable Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

    RE:    *Chevron v. Donziger*, Case No. 11 Civ. 691 (LAK)

Dear Judge Kaplan:

I write to record objections to certain procedures being used that I believe are interfering with my ability to mount a defense and violating my fundamental right to a fair trial. These procedures also violate the court's obligations to the parties under the Federal Rules that trials "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." This situation is made no less easy by Your Honor's obvious impatience toward me when I attempt to address the court. I am putting my concerns in writing and will continue to do so as necessary so the record will be clear. I also hope these issues can be addressed in timely fashion in open court as they arise, consistent with the court's mandate to administer these proceedings expeditiously and fairly.[1]

I would respectfully direct the Court's attention to the following concerns:

**Mounting a defense based on the scientific evidence in the Lago Agrio record.** I have said this repeatedly and will say it yet again: neither I nor my clients can mount a meaningful defense to the allegation that the Ecuador judgment was procured by fraud if we are barred from presenting the extensive scientific evidence on which the Ecuador relied to find Chevron liable. Your Honor's proposal as to how the parties can use the

---

[1] The concerns outlined in this letter are not exhaustive and do not waive my ongoing objections to the court's refusal to empanel a jury such that I can be tried by an impartial fact finder and other objections made by me and my various counsel since the inception of the proceedings.

Ecuador trial and appellate records deepens my concern. Those records should come into evidence in complete form to address these concerns. In any event, the Court allowed three of the four witnesses Chevron presented last week (Veiga, Russell, McMillen) to attack the judgment using science, but is not allowing our side to defend the validity of the judgment using science. Nor is the Court letting our side use science to impeach Chevron's witnesses, such as Ms. McMillen. This is especially disturbing given that the Court in its order of January 8, 2013 defined this trial in part as a "discrete inquiry" to determine "whether the judgment's findings have any support untainted by fraud in the record that existed before the Ecuadorian court at the time the judgment was issued." DI 720. Without science and the benefit of the full record of the proceedings in Ecuador as evidence, we simply cannot adequately defend this case.

I note that the scientific evidence against Chevron exists in the Ecuador trial record independent of the Cabrera report and the expert submissions of Charles Calmbacher, the two court-appointed experts Chevron has cited in support of its RICO and fraud allegations. We can show that there is extensive, competent and reliable evidence in the Ecuador trial record *provided by Chevron's own experts*, such as John Connor, Bjorn Bjorkman, Gina Bianchi, and others, and corroborated by the technical reports of the rainforest communities and other third parties that were relied on by the Ecuador court to make its findings. This includes a total of 103 technical and evidentiary reports (apart from the those challenged by Chevron and disregarded by the Ecuador court) submitted by court-appointed experts. I fear it would be no less than a travesty of justice to allow Chevron to proceed on its claims without allowing the defense to present this extensive and critically important evidence. We do not want to re-try the Ecuador litigation. But we must submit this evidence to rebut Chevron's fundamental—and fundamentally false—allegation that the Lago Agrio judgment was procured by fraud.

**Pre-Inspection Videos**. I am asking the Court to reconsider its ruling on this issue. Three of Chevron's fact witnesses (Veiga, Russell, McMillen) made direct attacks on the credibility of the judicial inspections process. Chevron's pre-inspection videos show Chevron technicians openly discussing ways to hide evidence of the company's pollution from the court – that is, to commit fraud on the Ecuador court. They are powerful pieces of evidence corroborating my state of mind on critical fundamental questions. They demonstrate Chevron's unclean hands, which is now particularly pertinent given that the company is seeking only equitable relief. They also help prove that I made decisions without the fraudulent intent that Chevron has alleged. The decision of the Special Masters that the videos are work product cannot be supported given that there are Ecuadorian citizens from the affected area interviewed by the cameraman. I would ask that Your Honor reconsider the decision to bar use of these videos, which I consider vital to my ability to mount a defense. I would also ask that the court not use a technical reason (the failure to appeal an order from the Special Masters under a procedure against which I and Mr. Gomez had objected) as a basis to keep out this critical and highly probative evidence.

**Live direct testimony by Mr. Donziger.** Given that the court has yet to rule on my request, I want to elaborate in writing. I believe Chevron has used its RICO allegations as part of a broader intimidation strategy to try to humiliate and instill fear in me and those associated with me such that the indigenous and other victims of Chevron's deliberate contamination in Ecuador are left unrepresented. I want the right to testify on direct in open court to rebut what is left of Chevron's allegations. My constitutional and common law right to a public hearing is particularly important in the instant case given the "terrorizing" nature and "thermonuclear" impact of the RICO statute and the quasi-criminal nature of the allegations. As I have maintained repeatedly, I believe this case has been brought with this Court's encouragement and wielded by Chevron as a retaliatory weapon to exact revenge against me for holding Chevron accountable for the grave harm its reckless and criminal behavior has caused and continues to cause to indigenous and farmer communities in Ecuador. Given the stakes involved, how Chevron promotes in RICO allegations publicly with the media and on earnings calls, and my right to a public trial, I believe it is only fair that I be allowed to testify in public in addition to submitting a declaration.

**Presentation of witness testimony.** While the preference for written direct testimony in a normal case should create efficiencies, the way the court's rule is being handled by Chevron creates prejudice to the defendants. Adversary counsel repeatedly has submitted statements that, as the Court has recognized, are rife with hearsay and gratuitous opinions unsupported by personal knowledge. Chevron is still not complying with the Court's order that inadmissible evidence be stricken from the these affidavits in timely fashion, forcing our side to waste valuable time preparing cross-examinations for the entirety of the declaration. Chevron is also waiting until the last possible minutes to submit revised affidavits. For example, the revised declaration for Dr. Callejas was not sent to our side until approximately 11 p.m. on the night before he was to testify and a full five days after the Court first raised the issue. We note that Chevron employees are passing out the unedited versions of the affidavits to members of the media in the gallery. In fact, we believe the inadmissible parts of these long affidavits are intended in part to inflict maximum damage on my reputation rather than to present admissible evidence in court relevant to the actual claims. We request that Your Honor take additional remedial measures if this pattern continues.

**Secret "Doe" Proceedings.** While I will not belabor the point, I want to again protest the Court's decision to bar me from learning the identities of certain witnesses. It is possible my counsel already has raised similar objections, but since I am not allowed to see such filings, I cannot be certain. Out of an abundance of caution, I repeat my objection here with some additional information. I learned that a deposition took place over the weekend of a Doe witness that I was barred from attending. I would urge the Court to read that deposition and make a determination as to whether the basis for its decisioin to grant Chevron's request still stands. The existence of the Doe witnesses has caused me severe prejudice and in my opinion has no place in any civil trial absent the most egregious circumstances not present here. I know of no allegation against me personally that could

possibly justify such a draconian measure. The practice also drives a wedge between me and my co-counsel who cannot rely on my expertise in the case and familiarity with Ecuador to be able to ensure a proper investigation and cross-examination.

**Equitable use of court resources**. We have noticed that Chevron has been using the jury deliberation room since the beginning of the trial while we have been confined to the use of two small witness rooms that cannot comfortably fit more than three people. I wanted to request that the Court, once Chevron finishes its case, allow the defendants the same privilege of using the jury deliberation room during the presentation of its case.

Thank you for the consideration.

Sincerely,

/s _____

Steven R. Donziger