UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
:
:
CHEVRON CORPORATION,                                    :
:
              Plaintiff,                      :
:  Docket No. 11 CV 0691 (LAK)
      v.                                              :
:
STEVEN DONZIGER, et al.,                                :
:
              Defendants.                     :
:
--------------------------------------------------------x

**PLAINTIFF CHEVRON CORPORATION'S RESPONSE TO DEFENDANTS' TRIAL BRIEF RE ENTITLEMENT TO PROVE VALIDITY OF CRIMINAL CHARGES IF CRIMINAL CHARGES REMAIN AT ISSUE IN THE LAWSUIT**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone:   212.351.4000
Facsimile:    212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    A.    Defendants Procured the Criminal Charges as Part of Their Extortion Scheme ................................................................................................................... 2

    B.    The Merits of the Criminal Prosecutions Are Irrelevant, as Are Defendants' Motivations for Encouraging the Charges ......................................... 4

    C.    *Noerr-Pennington* Does Not Provide a Basis to Introduce Otherwise Inadmissible Evidence Relating to the Merits of the Criminal Charges ................ 6

        1.    The First Amendment Does Not Protect Defendants' Extortionate Conduct ................................................................................................... 7

        2.    The First Amendment Does Not Protect Petitioning Foreign Governments ........................................................................................... 9

CONCLUSION ............................................................................................................................ 11

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Astoria Entm't, Inc. v. DeBartolo*,
 12 So. 3d 956 (La. 2009) .......................................................................................................... 8

*Australia/Eastern U.S.A. v. United States*,
 537 F.Supp. 807 (D.D.C. 1982) .............................................................................................. 10

*Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.*,
 229 F.3d 1135 (2d Cir. 2000) ................................................................................................... 8

*California Motor Transport Co. v. Trucking Unlimited*,
 404 U.S. 508 (1972) .................................................................................................................. 9

*Cardtoons, L.C. v. Major League Baseball Players Assoc.*,
 208 F.3d 885 (10th Cir. 2000) ............................................................................................ 7, 10

*Coastal States Marketing, Inc. v. Hunt*,
 694 F.2d 1358 (5th Cir. 1983) ................................................................................................ 10

*Collier v. Town of Harvard*,
 No. Civ. A. 95-11652-DPW, 1997 WL 33781338 (D. Mass. Mar. 28, 1997) .......................... 9

*Estee Lauder, Inc. v. Fragrance Counter, Inc.*,
 189 F.R.D. 269 (S.D.N.Y. 1999) .............................................................................................. 8

*Flatley v. Mauro*,
 139 P.3d 2 (Cal. 2006) .............................................................................................................. 4

*Guessous v. Chrome Hearts, LLC*,
 102 Cal. Rptr. 3d 214 (Ct. App. 2009) ................................................................................... 10

*Hall Am. Ctr. Assocs. Ltd. P'ship v. Dick*,
 726 F. Supp. 1083 (E.D. Mich. 1989) ...................................................................................... 3

*In re Young*,
 371 S.C. 394 (2007) .................................................................................................................. 4

*Interstate Props. v. Pyramid of Utica*,
 586 F. Supp. 1160 (S.D.N.Y. 1984) ......................................................................................... 9

*Kottle v. N.W. Kidney Ctrs.*,
 146 F.3d 1056 (9th Cir. 1998) .................................................................................................. 9

*Matsushita Elecs. Corp. v. Loral Corp.*,
 974 F. Supp. 345 (S.D.N.Y. 1997) ........................................................................................... 8

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Matter of Yao*,
   661 N.Y.S.2d 199 (1st Dep't 1997) ................................................................................... 5

*McDonald v. Smith*,
   472 U.S. 479 (1985) ........................................................................................................ 8

*Mosdos Chofetz Chaim, Inc. v. Vill. Of Wesley Hills*,
   701 F. Supp. 2d 568 (S.D.N.Y. 2010) ............................................................................. 7

*Motorola Credit Corp. v. Uzan*,
   202 F. Supp. 2d 239 (S.D.N.Y. 2002) ............................................................................. 3

*Novo Nordisk of N. Am., Inc. v. Genentech, Inc.*,
   885 F. Supp. 522 (S.D.N.Y. 1995) .................................................................................. 8

*Occidental Petroleum Corp. v. Buttes Gas & Oil Co.*,
   331 F. Supp. 92 (C.D. Cal. 1971) ................................................................................. 10

*People v. Eichler*,
   26 N.Y.S. 998 (Gen. Term 1st Dep't 1894) ................................................................... 6

*People v. Fichtner*,
   118 N.Y.S.2d 392 (2d Dep't 1952) ................................................................................. 6

*People v. Wickes*,
   112 A.D. 39 (1st Dep't 1906) ......................................................................................... 3

*People v. Wightman*,
   104 N.Y. 598 (1887) ....................................................................................................... 4

*Pergamensch v. Novato Police Dept.*,
   No. C 06-6659 PJH, 2007 WL 2177678 (N.D. Cal. July 27, 2007) ............................. 10

*Primetime 24 Joint Venture v. Nat'l Broad., Co.*,
   219 F.3d 92 (2d Cir. 2000) .................................................................................... 7, 8, 9

*Prof. Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) ..................................................................................................... 1, 8

*R.A.V. v. City of St. Paul, Minn.*,
   505 U.S. 377 (1992) ........................................................................................................ 7

*Sexual Minorities Uganda v. Lively*,
   No. 12-cv-300510MAP, --- F. Supp. 2d ----,
   2013 WL 4130756 (D. Mass. Aug. 14, 2013) ...................................................... 2, 9, 10

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Sinapsis Trading USA, LLC v. Secure Wrap of Miami, Inc.*,
  No. 11-24309-CV, 2013 WL 1455824 (S.D. Fla. Apr. 9, 2013) ............................................... 3

*Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union*,
  585 F. Supp. 2d 789 (E.D. Va. 2008) ................................................................................. 2, 7

*Sosa v. DIRECTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006) ................................................................................................. 8

*St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*,
  795 F.2d 948 (11th Cir. 1986) ............................................................................................... 6

*TPTCC NY, Inc. v. Radiation Therapy Services, Inc.*,
  784 F. Supp. 2d 485 (S.D.N.Y. 2011) .................................................................................... 9

*United States v. Abelis*,
  146 F.3d 73 (2d Cir. 1998) .................................................................................................... 6

*United States v. Boyd*,
  231 F. App'x 314 (5th Cir. 2007) ........................................................................................... 7

*United States v. Coppola*,
  671 F.3d 220 (2d Cir. 2012) .................................................................................................. 6

*United States v. Coss*,
  677 F.3d 278 (6th Cir. 2012) ................................................................................................. 4

*United States v. Eisen*,
  974 F.2d 246 (2d Cir. 1992) .................................................................................................. 3

*United States v. Fazio*,
  No. 11 Cr. 873 (KBF), 2012 WL 1203943 (S.D.N.Y. Apr. 11, 2012) .................................... 4

*United States v. Jackson*,
  180 F.3d 55 (2d Cir. 1999) ................................................................................................ 1, 4

*United States v. Jackson*,
  986 F. Supp. 829 (S.D.N.Y. 1997) ........................................................................................ 5

*United States v. Petrovic*,
  701 F.3d 849 (8th Cir. 2012) ................................................................................................. 7

*United States v. Quinn*,
  514 F.2d 1250 (5th Cir. 1975) ............................................................................................... 8

## TABLE OF AUTHORITIES
(continued)

Page(s)

*United States v. Zappola,*
  677 F.2d 264 (2d Cir. 1982) .................................................................................................. 5

*Vodrey v. Golden,*
  864 F.2d 28 (4th Cir. 1988) .................................................................................................... 5

**Statutes**

N.Y. Penal Law § 155.05(2)(e) .................................................................................................. 3

**Rules**

Fed. R. Evid. 401 ....................................................................................................................... 2

Fed. R. Evid. 402 ....................................................................................................................... 2

## PRELIMINARY STATEMENT

Defendants' efforts to initiate and then leverage criminal charges against Ricardo Reis Veiga and Rodrigo Perez Pallares, as part of Defendants' broader campaign to pressure Chevron Corporation ("Chevron") to settle the Lago Agrio litigation, amounts to the predicate act of extortion as defined by the Hobbs Act and by N.Y. Penal Law section 110.  This Court properly rejected Defendants' efforts to inquire at trial into the underlying validity of those criminal charges because that topic is irrelevant.  *See* Trial Tr. at 82.  In particular, Defendants are wrong in their assertion that "the validity of the criminal allegations is a defense," Dkt. 1590 at 1, because even if Messrs. Reis Veiga and Perez Pallares had committed fraud (they did not), using the threat of criminal charges to pressure a party to settle a civil case would be extortion.  *See United States v. Jackson*, 180 F.3d 55, 66 (2d Cir. 1999) (when a party threatens to injure the reputation of another, "the truth of the damaging allegations underlying the threat is not a defense to a charge of extortion").

Defendants now offer a new theory of relevance.  They seek to introduce evidence and argument as to the "substance and validity of the criminal charges against M[e]ssrs. Reis Veiga and Perez Pallares" because, Defendants claim, Chevron relies on the so-called "sham" exception to the *Noerr-Pennington* doctrine, under which Chevron must prove that the criminal charges were "objectively baseless."  Dkt. 1590 at 1–2 (relying on *Prof. Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993) and similar "sham" exception cases).  Under Defendants' theory, they could defend against Chevron's claims by showing that the criminal charges had merit and that their subjective motivations for spurring the charges were legitimate.  Dkt. 1590 at 4.  But Defendants are mistaken.  *Noerr-Pennington* has no application to Chevron's allegations concerning the criminal charges, and thus whether the "sham" exception has been satisfied is irrelevant.

1

There can be no dispute that to the extent *Noerr-Pennington* applies at all outside the antitrust context, it is only through the extension of First Amendment principles, and the First Amendment does not immunize extortion. *See, e.g.*, *Smithfield Foods, Inc. v. United Food & Commercial Workers Int'l Union*, 585 F. Supp. 2d 789, 806 (E.D. Va. 2008) ("[T]he law seems quite settled that the First Amendment provides no refuge for extortion."). Moreover, even if the First Amendment did apply to extortion, it cannot apply here, where the Defendants allegedly "petitioned" a *foreign* government. *Sexual Minorities Uganda v. Lively*, No. 12-cv-300510-MAP, --- F. Supp. 2d ----, 2013 WL 4130756, at *21 (D. Mass. Aug. 14, 2013) ("[T]he Petition Clause does not immunize a defendant's interactions with foreign governments.")

Thus, Defendants' evidence and argument concerning what they claim to be the objective merit of the criminal charges in Ecuador based on the alleged facts of the remediation, or Defendants' subjective motivation for pursuing those charges, are not relevant to any claim or defense in this action. *See* Fed. R. Evid. 401, 402 ("Irrelevant evidence is not admissible.").

## ARGUMENT

### A. Defendants Procured the Criminal Charges as Part of Their Extortion Scheme

Defendants set out to extort Chevron through a series of actions designed to "pressure" it into paying them off to end the Lago Agrio case on their terms. With respect to the criminal prosecutions—which are one aspect of the pressure campaign—Donziger wrote in his personal notes: "The key issue is criminal case. Can we get that going? What does it mean? I really want to consolidate control with contract before going down a road that I think could force them to the table for a possible settlement." Dkt. 29-2 (Ex. 76) at 26. In a 2005 email, Donziger wrote, "if this penal case is brought, this will be on the wires all over the world and it will really raise the cost to CVX." Dkt. 36-16 (Ex. 223). And in late 2005, he had his press agent prepare a three-page outline of how Defendants would "fully leverage the criminal investigation of the

2

Chevron executives." Dkt. 36-15 (Ex. 222) at 2. In that plan, he proposed aggressively publicizing the investigation, including taking out advertisements in newspapers to "apply shareholder pressure on Chevron," "keep imposing tremendous pressure on Chevron," and then engage in "several targeted specific mini-campaigns all designed to create pressure points on Chevron's economics," including a "[s]hareholder lawsuit." *Id.* at 3–4.

Defendants' conduct with respect to the criminal prosecutions amounts to extortion, which New York law defines as follows:

> A person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will . . . Accuse some person of a crime or cause criminal charges to be instituted against him.

N.Y. Penal Law § 155.05(2)(e); *see, e.g.*, *People v. Wickes*, 112 A.D. 39, 46, 49 (1st Dep't 1906) (extortionate threat to accuse someone of perjury). Federal law is in accord. *See, e.g.*, *Motorola Credit Corp. v. Uzan*, 202 F. Supp. 2d 239, 247 n.3 (S.D.N.Y. 2002) (describing the "obtaining of a criminal charge in order to induce physical fear immediately used to try to extort economic concessions" as "a classic extortion scheme in clear violation of the Hobbs Act"), *rev'd on other grounds*, 322 F.3d 130 (2d Cir. 2003); *Hall Am. Ctr. Assocs. Ltd. P'ship v. Dick*, 726 F. Supp. 1083, 1093–97 (E.D. Mich. 1989) (finding that, where it was part of an extensive scheme of other extortionate activity, the threat of litigation may constitute extortion under Hobbs Act); *see also United States v. Eisen*, 974 F.2d 246, 251 (2d Cir. 1992) (finding a valid RICO predicate act where a law firm attempted to deprive civil defendants and their insurers of money via fraudulent lawsuits, bribery, witness intimidation, and the creation of false evidence); *Sinapsis Trading USA, LLC v. Secure Wrap of Miami, Inc.*, No. 11-24309-CV, 2013 WL 1455824, at *4 (S.D. Fla. Apr. 9, 2013) (Hobbs Act case involving allegations of extortionate "threat[s] to file false criminal charges").

3

B.   **The Merits of the Criminal Prosecutions Are Irrelevant, as Are Defendants' Motivations for Encouraging the Charges**

As this Court has recognized, Defendants are not entitled to argue or introduce evidence that the underlying criminal charges had objective merit—or that Defendants subjectively believed that Chevron had committed fraud in the remediation—because such evidence is irrelevant here. Trial Tr. at 82.[1]  Even if Defendants could prove that there was a legitimate basis for the charges under the evidence the prosecutors had before them at the time, or that they genuinely believed in the validity of the charges, that would in no way rebut or undermine Chevron's extortion-based RICO claims.

"[T]he hallmark of extortion, and its attendant complexities, is that it often criminalizes conduct that is otherwise lawful." *United States v. Coss*, 677 F.3d 278, 287 (6th Cir. 2012); *see also Flatley v. Mauro*, 139 P.3d 2, 19–20 (Cal. 2006) ("In many blackmail cases the threat is to do something in itself perfectly legal, but that threat nevertheless becomes illegal when coupled with a demand for money." (citation and quotation marks omitted)).  As the Second Circuit has recognized, when a party threatens to injure the reputation of another, "the truth . . . is not a defense to a charge of extortion." *Jackson*, 180 F.3d at 66; *accord People v. Wightman*, 104 N.Y. 598, 601 (1887) ("The mere form in which the threat is made is not decisive."); *In re Young*, 371 S.C. 394, 401 n.10 (2007) ("'[T]ruth' is generally not a defense to blackmail charges based upon extortionate threats [in a RICO case]."); *United States v. Fazio*, No. 11 Cr. 873 (KBF), 2012 WL 1203943, at *3 (S.D.N.Y. Apr. 11, 2012) (finding that, despite significant evidence connecting defendants to the mafia, "the truth of whether the Fazios were connected to organized crime

---

[1] "[I]f you go to your neighbor, who you saw out with a woman other than his wife, and say, pay me money or else I am going to tell your wife you were out with this other lady," such conduct would constitute extortion, even though, absent the threat, there would nothing impermissible about telling your neighbor's wife about what you saw.  Trial Tr. at 82.  And in any trial of this hypothetical case, the defendant would not be entitled to introduce evidence or argue that either (a) the defendant subjectively thought the neighbor was out with another lady, or (b) the neighbor was actually out with another lady.  Neither of these things would be relevant.

4

[wa]s not at issue" and therefore "irrelevant" because it "[was] enough that the Fazios had a reputation that they were").

Extortion is thus similar in nature to claims of abuse of process, as both are concerned with preventing the misuse of otherwise legitimate conduct to further an ulterior purpose. As Justice Lewis Powell, sitting by designation, explained in *Vodrey v. Golden*, 864 F.2d 28 (4th Cir. 1988), abuse of process is aimed "at preventing use of legal process for collateral purposes," unlike malicious prosecution, which is specifically focused on "insuring the regularity of legal proceedings." *Id.* at 31. Accordingly, in "actions for abuse of process it is 'immaterial that the process used was properly issued, that it was obtained in the course of proceedings that were brought with probable cause and for a proper purpose, or even that the proceedings terminated in favor of the person instituting or initiating them." *Id.* (quoting Restatement (Second) of Torts § 682, comment a (1977)). The same holds true for Chevron's extortion claim here. The "truth" or "validity" of the criminal charges is beside the point. What matters is whether Defendants "use[d] the legal process for collateral purposes"—i.e., to further their wrongful campaign to pressure Chevron into an unjustified "settlement."

Moreover, Defendants' purported subjective belief that their cause was just is likewise irrelevant, as both New York's extortion law and the Hobbs Act do not recognize "a good-faith claim to the property as a defense to extortion." *United States v. Zappola*, 677 F.2d 264, 267 (2d Cir. 1982); *see also United States v. Jackson*, 986 F. Supp. 829, 832–35 & n.6 (S.D.N.Y. 1997), *vacated on other grounds*, 180 F.3d 55 (2d Cir.1999); *Matter of Yao*, 661 N.Y.S.2d 199, 200–01 (1st Dep't 1997).[2] Indeed, even if Donziger had evidence that a crime had been committed

---

[2] It does not matter whether or not Defendants expressly blackmailed Chevron based on the criminal charges alone, or rather sought to achieve the criminal prosecutions as part of a broader "pressure" and "fear" campaign. Defendants' wrongful use of fear constitutes extortion, not any particular threat. The Hobbs Act "does not limit the definition of extortion to those circumstances in which property is obtained through the wrongful use of fear

5

(which he did—and does—not), it nonetheless constitutes extortion for him to seek to compel Chevron to pay money by inducing the fear of criminal prosecution. For example, if one threatens to accuse a customer of stealing unless the customer pays the shopkeeper a sum greater than the value of the merchandise, that is extortion—even if the customer actually stole from the shopkeeper. *See People v. Fichtner*, 118 N.Y.S.2d 392, 398 (2d Dep't 1952) ("The law does not authorize the collection of just debts by threatening to accuse the debtor of crime, even though the complainant is in fact guilty of the crime."); *see also People v. Eichler*, 26 N.Y.S. 998, 998–99 (Gen. Term 1st Dep't 1894) (upholding extortion conviction for threats to accuse plaintiff of a crime: "The fact that the person who . . . makes such a threat for such a purpose believes, or even knows, that the person threatened has committed the crime of which his is threatened to be accused, does not make the act less criminal.").

### C. *Noerr-Pennington* Does Not Provide a Basis to Introduce Otherwise Inadmissible Evidence Relating to the Merits of the Criminal Charges

Defendants invoke the *Noerr-Pennington* doctrine in an attempt to back-door the evidence concerning the underlying merits of the criminal charges. They argue that "[i]f the issue of criminal charges remains in the case," then Chevron must rely on so-called "sham" exception to *Noerr-Pennington*, which would give Defendants the "ability to re-examine Mr. Veiga and to fully explore the substance underlying the criminal charges as necessary with any remaining witnesses." Dkt. 1590 at 4. But Defendants' argument is based on a flawed premise because *Noerr-Pennington* and its "sham" exception have no application here. "In order to find that a situation falls within an exception to a general rule, it must first be clear that the general rule itself is applicable." *St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 955 (11th Cir. 1986)

---

created by implicit or explicit threats, but instead *leaves open the cause of the fear.*" *United States v. Abelis*, 146 F.3d 73, 83 (2d Cir. 1998) (emphasis added); *see also United States v. Coppola*, 671 F.3d 220, 241 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 843 (2013).

(reversing dismissal for failure to come within the sham exception because *Noerr-Pennington* itself did not apply).

The *Noerr-Pennington* doctrine is "a body of caselaw constituting a limitation upon the scope of the Sherman Act." *Primetime 24 Joint Venture v. Nat'l Broad., Co.*, 219 F.3d 92, 99 (2d Cir. 2000). To the extent this doctrine has any application outside the antitrust context to cases not involving the Sherman Act, it is only because the doctrine is premised, in part, on "First Amendment principles." *Id.*; *see also Cardtoons, L.C. v. Major League Baseball Players Assoc.*, 208 F.3d 885, 889 (10th Cir. 2000) (en banc) ("To the extent that Supreme Court precedent can be read to extend *Noerr-Pennington* outside of the antitrust context, it does so solely on the basis of the right to petition.").³ But the First Amendment (and thus *Noerr-Pennington*) provide no immunity for Defendants' extortion or their petitioning of a foreign government.

### 1. The First Amendment Does Not Protect Defendants' Extortionate Conduct

"The First Amendment does not protect extortion." *United States v. Boyd*, 231 F. App'x 314, 316 (5th Cir. 2007); *see also R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 420 (1992) (Stevens, J., concurring) ("Although the First Amendment broadly protects 'speech,' it does not protect the right to 'fix prices, breach contracts, make false warranties, place bets with bookies, threaten, [or] extort.'" (citation omitted)); *United States v. Petrovic*, 701 F.3d 849, 855 n.3 (8th Cir. 2012) ("[I]t is well established that extortionate threats may be proscribed consistent with the First Amendment."); *Smithfield Foods*, 585 F. Supp. 2d at 806 ("[T]he law seems quite settled that the First Amendment provides no refuge for extortion.").

The various cases recognizing that the First Amendment has no application to extortion claims have typically involved alleged burdens on the right to free speech, rather than the right to

---

³ "[T]he Second Circuit has yet to decide whether 'the *Noerr–Pennington* doctrine . . . must be applied mechanically in cases outside the antitrust area.'" *Mosdos Chofetz Chaim, Inc. v. Vill. Of Wesley Hills*, 701 F. Supp. 2d 568, 594 (S.D.N.Y. 2010) (citation omitted).

7

petition. *See, e.g.*, *United States v. Quinn*, 514 F.2d 1250, 1268 (5th Cir. 1975) ("It may categorically be stated that extortionate speech has no more constitutional protection than that uttered by a robber while ordering his victim to hand over the money, which is no protection at all."). Nonetheless, the Supreme Court has rejected that the notion that the "Petition Clause [has] special First Amendment status" and it has made clear that "there is no sound basis for granting greater constitutional protection to statements made in a petition to the President than other First Amendment expressions." *McDonald v. Smith*, 472 U.S. 479, 485 (1985); *see also Astoria Entm't, Inc. v. DeBartolo*, 12 So. 3d 956, 966–67 (La. 2009) (declining to extend *Noerr-Pennington* to state-law claims of bribery and corruption because such activities are not protected by the First Amendment).

Moreover, none of Defendants' cited "sham" exception cases—all of which presume the applicability of *Noerr-Pennington* in the first instance—involved claims against a defendant who pursued the underlying litigation as part of a broader extortion campaign. Rather, in those cases, the litigation or petitioning activity itself was the *exclusive* basis of the claims. *See Prof. Real Estate Investors*, 508 U.S. at 49 (claim based on the filing of a copyright infringement action).[4] Here, by contrast, Chevron is not attempting to prove the predicate act of extortion based on the mere fact that Defendants engaged in allegedly baseless, "sham" petitioning activity; the spurring of criminal charges is not an independent basis of liability. Instead, as set forth above, Chevron's claims are focused on an extortionate scheme that involves, in part, the use of procuring litigation as of means of creating fear. The First Amendment does not immunize such mis-

---

[4] *See also Primetime 24 Joint Venture*, 219 F.3d at 92 (claim based on alleged abuse of a complaint system created by federal statute); *Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.*, 229 F.3d 1135 (2d Cir. 2000) (unpublished) (claim based on statements to administrative bodies); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) (claim based on pre-suit settlement demand letters related to potential litigation); *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269 (S.D.N.Y. 1999) (defense based on the filing of a trademark infringement lawsuit); *Matsushita Elecs. Corp. v. Loral Corp.*, 974 F. Supp. 345 (S.D.N.Y. 1997) (claim based on the filing of a patent infringement lawsuit); *Novo Nordisk of N. Am., Inc. v. Genentech, Inc.*, 885 F. Supp. 522 (S.D.N.Y. 1995) (claim based on the filing of a patent infringement lawsuit).

8

conduct. *See, e.g.*, *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 514–15 (1972) ("It is well settled that First Amendment rights are not immunized from regulation when they are used as an integral part of conduct which violates a valid statute."); *Collier v. Town of Harvard*, No. Civ. A. 95-11652-DPW, 1997 WL 33781338, at *8 (D. Mass. Mar. 28, 1997) (noting that "extortion" is "not the sort of legitimate political conduct that was contemplated by the Supreme Court in developing the *Noerr–Pennington* doctrine").[5]

### 2. The First Amendment Does Not Protect Petitioning Foreign Governments

Even assuming that extortion claims based in part on litigation or petitioning activity might in some circumstances be protected by the First Amendment and *Noerr-Pennington*, no protection applies here because "[i]t is well-established . . . that the Petition Clause does not immunize a defendant's interactions with foreign governments." *Lively*, 2013 WL 4130756, at *21.

---

[5] Even assuming for the sake of argument that *Noerr-Pennington* immunity were at issue here and that Chevron was seeking to rely on the "sham" exception, the test set forth in *Professional Real Estate Investors* (objective merits / subjective motivation) still may not apply. Following *Professional Real Estate Investors*, the Second Circuit clarified that where a claim involves a "whole series of legal proceedings"—such a "pattern or practice of successive filings undertaken essentially for purposes of harassment," which is what Defendants have done here via their pressure campaign—then the relevant inquiry is whether the defendant took those actions pursuant to "a policy of starting legal proceedings *without regard to the merits*" to injure the plaintiff. *Primetime 24 Joint Venture*, 219 F.3d at 101 (emphasis added) (quotation marks and citation omitted); *see also Kottle v. N.W. Kidney Ctrs.*, 146 F.3d 1056, 1060 (9th Cir. 1998) (noting that "the scope of the sham exception depends on the type of governmental entity involved"). And "in the context of a judicial proceeding, if the alleged anticompetitive behavior consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy." *Kottle*, 146 F.3d at 1060 (quotation marks and citation omitted). Here, where Defendants directed their petitioning activity to corrupt government agencies, and employed false representations such as the use of the Cabrera Report, they "deprive[d] the litigation of its legitimacy." *See TPTCC NY, Inc. v. Radiation Therapy Services, Inc.*, 784 F. Supp. 2d 485, 496–97 (S.D.N.Y. 2011) (explaining that the "sham" exception could apply to activities that "'subverted the integrity of the . . . [decision making] process or impaired the fair and impartial functioning of [the] agency" (quoting *Interstate Props. v. Pyramid of Utica*, 586 F. Supp. 1160, 1162 (S.D.N.Y. 1984)), *aff'd in part, rev'd in part on other grounds*, 453 F. App'x 105 (2d Cir. 2011). Thus, if the Court required Chevron to do so, Chevron could prove under any applicable test that Defendants' use of the Cabrera report and improper collusion with Ecuadorian officials to procure the criminal charges came within the "sham" exception to *Noerr-Pennington*. And any defense against charges of "sham" litigation necessarily would have to be limited to materials that existed in the prosecutors' record, not materials created or selected, post hoc, based on Defendants' current claims about alleged environmental conditions. Again, however, this should not be necessary, as *Noerr-Pennington* itself does not apply with respect to the criminal prosecutions.

9

In *Lively*, the defendant had allegedly lobbied the Ugandan government to repress people in that country based on their sexual orientation. The court rejected the defendant's *Noerr-Pennington* arguments because "the Petition Clause protects the right of Americans to seek legislation by the United States government, not by governments of foreign countries." *Id.*; *see also Pergamensch v. Novato Police Dept.*, No. C 06-6659 PJH, 2007 WL 2177678, at *8 n.3 (N.D. Cal. July 27, 2007) ("[T]he 'Government' referenced in the First Amendment does not include the governments of foreign countries."); *Australia/Eastern U.S.A. v. United States*, 537 F.Supp. 807, 812 (D.D.C. 1982) ("[T]he first amendment was not intended to protect the right to petition foreign governments. Nor does the corollary interest in having government receive information from citizens have application to foreign governments."), *vacated as moot*, 1986 WL 1165605 (D.C. Cir. Aug. 27, 1986); *Occidental Petroleum Corp. v. Buttes Gas & Oil Co.*, 331 F. Supp. 92, 108 (C.D. Cal. 1971) ("The persuasion of Middle Eastern states alleged in the present case is a far cry from the political process with which *Noerr* was concerned."), *aff'd on other grounds*, 461 F.2d 1261 (9th Cir. 1972); *Guessous v. Chrome Hearts, LLC*, 102 Cal. Rptr. 3d 214, 219 (Ct. App. 2009) (explaining that the United States Constitution does not "grant[] a United States citizen the right to petition a foreign government").

As the court recognized in *Lively*, some decisions have applied *Noerr-Pennington* to the petitioning of foreign governments, but "those cases rest their conclusions on the scope of the Sherman Act itself and not on the First Amendment petition clause." *Lively*, 2013 WL 4130756, at *21 n.11. For example, in *Coastal States Marketing, Inc. v. Hunt*, 694 F.2d 1358 (5th Cir. 1983), the Fifth Circuit emphasized that its application of *Noerr-Pennington* doctrine to the petitioning of a foreign government was *not* premised on "first amendment concerns" but rather on "a limitation on the scope of the Sherman Act." *Id.* at 1364; *see also Cardtoons*, 208 F.3d at 891

("*Coastal States*' grant of immunity to prelitigation threats was not based on the right to petition and, therefore, does not inform our decision in the present non-antitrust case.").

Accordingly, *Noerr-Pennington* does not apply to Defendants' extortionate activities relating to their spurring of criminal charges in Ecuador.

## CONCLUSION

For these reasons, the issue of the criminal charges in Ecuador remains in the case to prove the predicate act of extortion, but the underlying merit of those charges and Defendants' subjective motivations for pursuing them are not at issue, under *Noerr-Pennington* or otherwise.

Dated: October 23, 2013  
New York, New York

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Randy M. Mastro  
Randy M. Mastro  
Andrea E. Neuman  
200 Park Avenue  
New York, New York 10166  
Telephone: 212.351.4000  
Facsimile: 212.351.4035

William E. Thomson  
333 South Grand Avenue  
Los Angeles, California 90071  
Telephone: 213.229.7000  
Facsimile: 213.229.7520

*Attorneys for Plaintiff Chevron Corporation*

11