UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
CHEVRON CORPORATION, :
:
             Plaintiff, :
:
  -against- :
: Case No.  11 Civ.  0691 (LAK)
:
STEVEN R. DONZIGER, et al., :
:
             Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# TRIAL BRIEF REGARDING THE ADMISSIBILITY OF
# CERTAIN DOCUMENTS AND TESTIMONY OF ALBERTO GUERRA
# UNDER THE HEARSAY RULES


GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

I.    Guerra's Testimony About Zambrano's Statements is Admissible For the Truth, Where Probative, and Under the Co-Conspirator Exclusion to Hearsay, Fed. R. Evid. 801(d)(2)(E). ............................................................................................ 3

II.    Certain Guerra Documents are Admissible ................................................................ 7

    A.    Guerra Bank Records: PX 1689, 1704, 1705, 1708, 1713 ...................................... 7

    B.    TAME Airlines Records: PX 1682, 1721–1726 .................................................. 12

    C.    Guerra Daily Planners ............................................................................................ 14

    D.    Guerra's September 5, 2010 email to Donziger: PX 1745 .................................. 16

    E.    Memory Aid: PX 1703 ............................................................................................ 16

CONCLUSION ............................................................................................................................. 17

**PRELIMINARY STATEMENT**

At the Court's request, Chevron herein provides the governing authorities and appropriate analysis concerning certain testimony by Alberto Guerra, and certain documents submitted by Chevron that corroborate Guerra's testimony. As a former member of Defendants' conspiracy, Guerra explains how Defendants were able first to influence the course of the Lago Agrio Litigation, and then to ultimately purchase it outright. Some of his testimony relates to statements made to him by others, including by the judge who signed the Lago Agrio judgment, former-judge Nicholas Zambrano, and Pablo Fajardo, a member of Steven Donziger's and the LAPs' Ecuadorian legal team. As statements made by Defendants' co-conspirators in furtherance of the conspiracy, these statements are not hearsay. Fed. R. Evid. 801(d)(2)(E). Moreover, the probative value of statements made by Zambrano before he made his corrupt deal with Defendants does not depend on their being taken for the truth.

Guerra's revelatory testimony is corroborated by a body of documents that is both broad and deep in its support for his assertions. These documents include admissible business records, Fed. R. Evid. 803(6), including his monthly bank statements and bank deposit slips showing a $300 deposit made by Judge Zambrano and $1,000 deposits made into his account by Ximena Centeno (PX 1713). Defendants have now stipulated that Centeno was an employee of the LAPs' organization, Selva Viva, when she made these deposits, and self-authenticating government records of her salary payments confirm this. Fed. R. Evid. 902(3). Furthermore, the signature on these deposit slips were made by Ms. Centeno herself, as is obvious by a lay comparison of the signatures to those on Ms. Centeno's self-authenticating national identity cards (PX 1740 and PX 1741). And Mr. Guerra identified the signature of Judge Zambrano, which he recognizes from his years of knowing and ghostwriting for Judge Zambrano. Thus, the signatures on the deposit slips themselves are not hearsay for multiple reasons under FRE 801(a) and

1

801(d)(2)(C)-(E).

Also admissible as business records are shipping and air travel records (PX 1689 and PX 1722-1726) confirming that Guerra travelled between Quito and Lago Agrio when he testifies that he did, and shipped packages back and forth with judges in Lago Agrio, including Zambrano, as he testified that he did.  Fed. R. Evid. 803(6).  Entries in his day planner (PX 1733 and 1734) further confirm his ghostwriting work for Zambrano and his payments for that work, and correspondence with Donziger (PX 1745) is further evidence of the relationship that these co-conspirators had—all of which are admissible as prior consistent statements to rebut Defendants' allegations in their opening statement and during trial that Guerra's testimony is a recent fabrication.  Fed. R. Evid. 801(d)(1)(B).  And finally, Guerra's testimony about the consequential week in early 2011 when he revised the draft judgment provided by Defendants is corroborated by a physical artifact from that time, the "Memory Aid" (PX 1703) that Fajardo provided him at his request, which does not raise hearsay concerns at all, because it is not offered for its truth.

Ultimately, all of this material is offered for one purpose, which it serves jointly and severally:  To prove that Defendants first bought influence, then purchased the outcome of the Lago Agrio litigation, thereby corroborating Guerra's testimony, an important insider in the Defendants' scheme.  In that purpose these documents are joined by a substantial body of material not directly related to Guerra, much of which has already been admitted in this trial, which confirms that Defendants had a long history of corrupt influence over the Lago Agrio litigation, and that their fingerprints appear throughout the judgment.

Accordingly, their relevance, in this context, is beyond dispute.  Each document confirms a relevant aspect of Guerra's testimony—his ghostwriting relationship with Zambrano; the payments made to him by Defendants; or his own role in the ghostwriting of the judgment itself.

"The standard for determining relevance is a liberal one." *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 419 (S.D.N.Y. 2011). "The fact to be proved may be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence in the determination of the action." Fed. R. Evid. 402, Advisory Committee's Note.

The individual exhibits directly corroborating Guerra's testimony ("Certain Guerra Documents") are listed on the table appearing at the end of this brief, along with Defendants' objections and each of the enumerated Federal Rules of Evidence that provide authority for the admission of these documents here. This Court has already held that any objections to documents not made by Defendants in their written objections are waived. Oct. 23, 2013, Hr'g Tr. at 940:3–24. Defendants have not objected on authenticity grounds to any of the documents at issue here. As the Court also noted yesterday, admissibility determinations are made pursuant to Fed. R. Evid. 104(a), which provides that the Court is *not* bound by the rules of evidence, except for privilege, when making the preliminary determination of admissibility.

The admissibility of Certain Guerra Documents should be considered in light of their probative purpose here, as they form an interlocking, reinforcing source of corroboration for the sworn statements of fact offered by Guerra.

## ARGUMENT

I.  **Guerra's Testimony About Zambrano's Statements is Admissible For the Truth, Where Probative, and Under the Co-Conspirator Exclusion to Hearsay, Fed. R. Evid. 801(d)(2)(E).**

The majority of Guerra's testimony is from personal knowledge. He testifies about his role as a ghostwriter for Zambrano and his personal participation in a conspiracy to corrupt the Lago Agrio proceedings by Defendants. In conference with the Court yesterday, however, counsel for Donziger identified portions of Guerra's testimony that counsel argued constituted hearsay. "On two occasions Mr. Guerra says, Judge Zambrano told me that he had reached a deal

3

with the plaintiffs to get money for writing orders in their favor in the first instance, and then for delivering a verdict to them in the second instance. I think those two specific comments, where Judge Zambrano says them to Mr. Guerra, are rank hearsay." Oct. 23, 2013, Trial Tr. at 843:2–7.  But these statements are not hearsay, because they are statements by a co-conspirator made in furtherance of the conspiracy.[1]

As this Court observed yesterday at trial, "an out-of-court statement by a co-conspirator made during the course and in furtherance of a conspiracy with the defendant is not hearsay and is admissible for the truth of the matters."  Oct. 23 Hr'g Tr. at 978.  This is the "co-conspirator" exclusion, codified at Fed. R. Evid. 801(d)(2)(E).[2]

To rely on the co-conspirator exclusion, the party offering the statement must establish by a preponderance of the evidence that "a conspiracy existed that included the defendant and the declarant[.]" *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999).  "The conspiracy between the declarant and the defendant need not be identical to any conspiracy that is specifically charged in the indictment," and "the hearsay statement itself may be considered in establishing the existence of the conspiracy," although there must be corroborating evidence of the defendant's participation.  *Id.*  Moreover, co-conspirator statements are admissible even if they are made by a party's coconspirator *before* the party joins the conspiracy.  "Where statements are made in the course of an existing conspiracy in which the defendant later joins, those statements

---

[1]  Guerra's recounting of statements made to him by Donziger is admissible as party statements.  Fed. R. Evid. 801(d)(2)(A).
[2]  Zambrano should also be considered unavailable to Chevron unless and until he actually testifies, and any testimony admitted on the basis of exceptions requiring the unavailability of the declarant—such as the exception for statements against interest, Fed. R. Evid. 804(b)(3).  *See United States v. Johnson*, 354 F. Supp. 2d 939, 964 (N.D. Iowa 2005) aff'd in part, 495 F.3d 951 (8th Cir. 2007) (conditionally admitting hearsay statements on the theory that the defendant had procured the unavailability of the witness pending establishment of the foundation for an unavailability determination).  To date, the Defendants have yet to produce a copy of his visa or a single document responsive to Chevron's subpoena.  The record is abundantly clear that Zambrano is unavailable to Chevron, but not to Defendants, and .

4

may be admitted against him, even though he was not a member of the conspiracy at the time the statements were made." *United States v. Farhane*, 634 F.3d 127, 161 n.35 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 833, (2011).

The Second Circuit broadly construes Rule 801(d)(2)(E)'s requirement that a statement of a co-conspirator be made "in furtherance of" a conspiracy. *See United States v. James*, 712 F.3d 79, 106 (2d Cir. 2013) ("the statements must in some way have been designed to promote or facilitate achievement of the goals of the ongoing conspiracy.") (citations omitted). Statements which apprise coconspirators of the progress of the conspiracy, foster cohesiveness among co-conspirators, or provide reassurance as to the organization's status all meet the "in furtherance" requirement. *See United States v. Diaz*, 176 F.3d 52, 85 (2d Cir. 1999) (holding that confessions to committing murder and selling the murder weapon were in furtherance of a conspiracy because they "showed that Antuna attempted to apprise D. Soto of the progress or status of the conspiracy, to facilitate and encourage his assistance, and to foster the cohesiveness of the conspiracy."); *United States v. Maldonado-Rivera*, 922 F.2d 934, 959 (2d Cir. 1990) (holding that a communique was in furtherance of a conspiracy because "the communiqué provided coconspirators with reassurance as to the organization's status and solvency, new information as to the membership of the conspiracy, and encouragement for future organizational activities.").

Here, the relevant conspiracy is involves Zambrano, Guerra, Donziger, Fajardo, and other co-conspirators of Defendants. Guerra testifies, from personal knowledge, that he and Zambrano formed a conspiracy first to sell influence over the Lago Agrio proceedings, and then to sell the judgment itself. This is independent, non-hearsay evidence sufficient to establish the existence of the conspiracy. The existence of that conspiracy is further corroborated by Certain Guerra Documents, by the appearance of the LAPs' unfiled work product, by Defendants' contempora-

5

neous emails referring to paying the "puppeteer," and by the testimony of Ricardo Reis Veiga and Adolfo Callejas. Dkt. 922 ¶ 5. And the statements at issue are in furtherance of the conspiracy because in both cases, Zambrano is apprising Guerra about the status of the conspiracy's progress, and giving Guerra information he needs in order to carry out his role—as ghostwriter—in the conspiracy.

The co-conspirator exclusion also applies to Guerra's testimony about what Zambrano told him when Zambrano learned that he might be taking over the case for a second time—that this represented an "opportunity." *See* Trial Tr. at 976:7–978:3. In this conversation Zambrano and Guerra are continuing their conspiracy to sell the Lago Agiro Judgment to the highest bidder—indeed, that is the opportunity of which Zambrano speaks. Donziger and the other defendants here had already been conspiring with Zambrano and Guerra in 2009 and, while they had not yet consummated their judgment ghostwriting bribery agreement by this point in 2010, the evidence shows that they ultimately did, thus inheriting their co-conspirators' prior statements. *Farhane*, 634 F.3d at 161 n.35. Furthermore, as Guerra testifies, the $1,000 payments from the Ecuadorian Plaintiffs' team were supposed to continue throughout the period of time that Zambrano presides over the case. The statement that Zambrano and Guerra now have an "opportunity" is in furtherance of a conspiracy that the Defendants had already joined.

The probative value of these statements, however, exists, irrespective of the truth of the matters asserted, because of their ability to illuminate Zambrano's state of mind, and explain the actions he and Guerra take over the next few months—first to take over the case from the prior judge, and then to solicit, once again, to Chevron and to Donziger and Fajardo. Whether Zambrano was correct that the case represented an opportunity, his belief that it was, and what kind of opportunity he foresaw, is probative as to whether he ultimately sold the judgment to Defend-

6

ants here. It is also offered to explain why Mr. Guerra took the actions he did, approaching Chevron and then Fajardo and Donziger with Zambrano's offer to sell the judgment.

## II. Certain Guerra Documents are Admissible

### A. Guerra Bank Records: PX 1689, 1704, 1705, 1708, 1713

Guerra's bank records corroborate his testimony that he was being paid by the Ecuadorian Plaintiffs' team in 2009 and 2010 while he was ghostwriting orders in the Lago Agrio Litigation. They show that a Selva Viva employee, Ximena Centeno, made at least two $1,000 deposits into his account, and that he received other such payments during that period. In particular, two deposit slips bearing her name show this—and were the subject of considerable discussion at trial yesterday. Trial Tr. at 933–54. The Court admitted them into evidence, subject to this further briefing on the question of whether they were hearsay as to Centeno's identity as the depositor. Guerra's bank records further reflect a $300 deposit by Judge Zambrano into Mr. Guerra's account, further proof that Guerra was indeed Zambrano's ghostwriter.

As an initial matter, Guerra's bank statements are admissible as business records. Fed. R. Civ. P. 803(6). Guerra's testimony yesterday established that he obtained these bank records from Banco Pichincha and that they reflect his bank account records properly lays a business records foundation for the admission of the bank statements at issue. *See generally United States v. Johnson*, 971 F.2d 562, 571 (10th Cir. 1992). In *Johnson,* the Tenth Circuit upheld the admission of bank statements authenticated by the account-holders as business records, reasoning:

> The record as a whole in this case establishes a sufficient foundation for the admission of the records under Rule 803(6). The record is replete with circumstances demonstrating the trustworthiness of the documents. There is simply no dispute that the transactions shown by the receipts took place as recorded. As noted above, bank records are particularly suitable for admission under Rule 803(6) in light of the fastidious nature of record keeping in financial institutions, which is often required by governmental regulation. The nature of the documents themselves as bank statements together with the testimony of the

7

investors established that the records were made at the time of the transactions in question and were made in the course of a regularly conducted business activity.

*Id. See also United States v. Mendel*, 746 F.2d 155, 166 (2d Cir. 1984) (admitting completed USDA forms as business records and reasoning "[a]lthough an employee of the preparing business normally lays the foundation required by Rule 803(6), no such employee need testify when circumstances otherwise demonstrate trustworthiness. Here, the circumstances manifestly demonstrate trustworthiness"); *United States v. Flom*, 558 F.2d 1179, 1182 (5th Cir. 1977) (admitting invoices received by one company but prepared by another company as business records and reasoning); *Schachtman Fagan, Inc. v. Winthrop Laboratories, Inc.*, 1985 WL 3126, at *1 (S.D.N.Y. Oct. 15, 1985) ("the case law indicates that it is not necessary for a person in charge of preparation of a record to testify in order for that record to fall within the ambit of Rule 803(6)."). These documents are also admissible under the residual exception, for the same reasons as the signatures, as discussed *infra*, at 11.

The cedula number and signature of Ximena Centeno on the deposit slips is evidence that Ximena Centeno made those deposits.[3] That information is not a "statement offered for its

---

[3] Defendants stipulated to the fact that Centeno's cedula number is the same as the one appearing on the deposit slip. Trial Tr. 953:1–2. In an abundance of caution—and because LAPs counsel did not offer the same stipulation, Chevron submits Centeno's national identity cards, PX 1740 and 1741. Defendants object to the admissibility of copies of these Ecuadorian government-issued identification cards for Ms. Centeno, solely on the grounds of relevance and best evidence. Despite their objections, the Identification Cards are admissible. Relevance is established because they connect her with the $1,000 deposits. And color photocopies of Ms. Centeno's identification cards should be admitted pursuant to Fed. R. Evid. 1003, notwithstanding Defendants' best evidence objection. Rule 1003 provides that "A duplicate is admissible to the same extent as the original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." The documents appear, in all respects, to be true and accurate records, and Defendants do not raise any basis to suspect that they are not authentic. "'[S]imply speculat[ing] that there is no assurance that the proffered document is actually a duplicate of the original' does not raise a genuine question under Rule 1003." *United States v. Grimmer*, 199 F.3d 1324, 1999 WL 1012571 (Table) *2 (2d Cir. 1999) (quoting *See United States v. Chang An-Lo*, 851 F.2d 547, 557 (2d Cir.1988)) (alterations in original). Defendants posit no reason that admitting copies of the identity cards would be unfair or prejudicial, and it would not be. Ms. Centeno worked for Defendants as a Selva Viva employee, where her sister still works. Defendants have thus had far more interactions with, and influence over, Ms. Centeno; they cannot claim that they are prejudiced by Chevron's introduction of copies of her identity cards when they could easily obtain the originals from Ms. Centeno herself.

truth," but rather direct evidence, just as if Chevron submitted Centeno's fingerprints on the deposit slips, or surveillance video of her at the bank. In *United States v. Tin Yat Chin*, 371 F.3d 31, 38-39 (2d Cir. 2004), the Second Circuit explained this principle in detail:

> When a category of writings does not trigger the traditional reliability concerns of hearsay—defects in memory, perception, narration, or sincerity—we have sanctioned their admissibility as "non-hearsay." *See United States v. Saint Prix*, 672 F.2d 1077, 1083-84 (2d Cir. 1982)(affirming admissibility of sales receipts for vans "to prove that someone using [defendant's] name bought the vans, from which the jury could infer that the person using [defendant's] name was [defendant] himself"); *United States v. Lieberman*, 637 F.2d 95, 101 (2d Cir. 1980) (finding a hotel registration card signed by guests admissible "to show that someone calling himself Robert D'Ambra registered in the hotel laying a foundation for further evidence that from his room a call was made to [defendant's] unpublished telephone number" (internal citation omitted)); *United States v. Mejias*, 552 F.2d 435, 446 (2d Cir. 1977) (affirming admissibility of motel receipt, luggage store invoice, and travel agency business card, all of which were in the defendant's possession when he was arrested, as circumstantial evidence of his presence at a motel).
>
> In all of these cases, the writings were admitted as non-hearsay to prove a fact against the defendant. The same principle applies in the reverse situation, where the writings are favorable to the accused. The jury has only to decide the genuineness of the receipts from which it may then infer that Tin Yat Chin was not in China. Put another way, a person who was not named "Tin Yat Chin" would be less likely to possess a receipt with that name upon it than a person having that name.
>
> The Government and the district court all but concede that, had the receipts been authenticated, they would have been admissible as non-hearsay. They tended to show that a person referring to himself as "Tin Yat Chin" signed receipts on the dates and times in question, laying a foundation for the testimony of Tin Yat Chin's wife, store managers, and a handwriting expert to support Tin Yat Chin's alibi.

Here, Chevron offers the deposit slips in support of its assertion that Centeno made these two $1,000 deposits in Guerra's account. There is no question that *someone* made those deposits—that is the truth of the matter asserted by the deposit slips, and is admissible as a business record, as explained *infra*. But the presence of Centeno's signature and cedula number is not a statement by the bank or by Centeno being offered for its truth, but rather evidence that "tended to show that a person referring to," herself as Ximena Centeno and using Centeno's cedula number, signed those slips in connection with making those deposits. *See Chin*, 171 F.3d at 39.

9

Even as out-of-court statements offered for their truth, however, the signatures and the cedula number are admissible as non-hearsay or under a hearsay exception. First, the signature is a non-hearsay statement of a party agent or employee, or someone authorized to speak for a party. Fed. R. Evid. 801(d)(2)(C)-(D). To admit a statement as a vicarious admission under Rule 801(d)(2)(D), the proponent must demonstrate: "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir.1992). "The authority granted in the agency relationship . . . [is] the authority to take action about which the statements relate." *Id*. at 538.

There is no dispute that Ximena Centeno was an agent of Donziger and the Ecuadorian plaintiffs when she signed the deposit slips—Donziger's counsel stipulated that she was a Selva Viva employee at trial when this issue arose yesterday. Trial Tr. 953:1–2. The Court found that this stipulation was sufficient to render further evidence unnecessarily cumulative.[4] Trial Tr. 959:21–22. Thus, to the extent the signature of Ximena Centeno is an out-of-court statement offered for the truth, the statement was made within the scope of Ms. Centeno's employment at Selva Viva, as an agent of Donziger and the Ecuadorian plaintiffs. *Cf. United States v. Grogg*, 312 Fed. App'x 889, 890 (9th Cir. 2009) ("The requisite foundation was sufficiently established: the document was from a 'Douglas E. Grogg,' had a signature identical to Grogg's, displayed his social security number, and was mailed from the office to which Grogg had been assigned. Indeed, Grogg's brief concedes that the document 'contained a wealth of indicia that it was of

---

[4] Should the Court reconsider that view, there is abundant evidence on this point. Donziger has testified extensively about his leadership roles at Selva Viva, including his role as President and founding board member. Donziger Depo. Tr. 1824:6-25 (Donziger served as President of Selva Viva and on the board with Luis Yanza), 3091:6-3097:21 (Frente controlled Selva Viva and "created Selva Viva simply as a pass-through mechanism to administer funds for the litigation") (quoting PX 896). Ecuadorian public records confirm that Ximena Centeno worked for Selva Viva from September 2009 to May 2010. *See* PX 1739. These are self-authenticating government documents. Fed. R. Evid. 902(3).

10

[Grogg's] making.' We are satisfied that the document was properly admitted as an admission of a party-opponent.").

Second, the signatures are admissible as a statement by a coconspirator in furtherance of a conspiracy. Fed. R. Evid. 801(d)(2)(E). Guerra's testimony establishes that the deposits were made in furtherance of Defendants' conspiracy to corruptly obtain favorable orders in the Lago Agrio Litigation.

Finally, the signatures of Ximena Centeno should be admitted under the residual hearsay exception. Fed. R. Evid. 807; *United States v. Bryce*, 208 F.3d 346, 350-51 (2d Cir. 1999) (hearsay is admissible if "(i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party."); *accord United States v. Morgan*, 385 F.3d 196, 208 (2d Cir. 2004).

As a threshold matter, the Defendants have been on notice of this fact because these deposit slips were first filed as corroborating evidence to Mr. Guerra's declaration submitted in support of Chevron's motion for summary judgment in January of this year. *See* Dkt. 745 at 16 ("Over the next few months, two additional deposits of $1,000 each were made into Guerra's bank account by a LAP employee."); Dkt. 764 ¶ 206 ("On December 23, 2009 and February 5, 2010, two deposits of $1,000 each were made into Guerra's bank account by Selva Viva employee Ximena Centeno.").

The signatures also satisfy the remaining foundational requirements for the residual exception. As part of bank records produced to Judge Guerra, the signatures are particularly trustworthy. *United States v. Wilson*, 249 F.3d 366, 375–76 (5th Cir. 2001) ("bank documents, like other business records, provide circumstantial guarantees of trustworthiness because the banks

11

and their customers rely on their accuracy in the course of business"), *abrogated on other grounds by Whitfield v. United States*, 543 U.S. 209 (2005). *See Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 233-34 (2d Cir. 1999) (where a document avoids the "classic hearsay dangers" of "insincerity," "faulty memory," "faulty perception," and "faulty narration," it is more likely that the document is "trustworthy" under Rule 807). There is no question that these signatures bear on a material fact that is the most probative evidence of that fact. These signatures are key corroborating evidence that an employee of Selva Viva, Ximena Centeno, deposited cash in the bank account of Mr. Guerra in the amount of $1,000 on certain dates specific. To the extent the signature is an out of court statement by Ms. Centeno that she deposited the funds into Mr. Guerra's account, the signature is the best evidence of her role in the transaction—short of Centeno's own testimony. But notwithstanding notice by both parties, she failed to appear at a deposition.

Finally, admission of documents under Rule 807 is appropriate where, as here, signatures provide evidence that "will serve the general purposes of the rules and the interests of justice"—particularly when it is clear that the authenticity of the document is not questioned. *See, e.g.*, *United States v. Marmolejas*, 112 Fed. App'x 779, 782-83 (2d Cir. 2004) (affirming Judge Chin's ruling that a faxed copy of DMV records containing a co-conspirator's signature was admissible under Rule 807); *see also United States v. Munoz*, 16 F.3d 1116, 1121-22 (11th Cir. 1994) (admitting bank deposit slips under the residual hearsay exception).

### B.  TAME Airlines Records:  PX 1682, 1721–1726

Chevron has also moved for the admission of certified records from TAME Airlines—the state-run national airline of Ecuador. These records record the shipments Mr. Guerra sent or received from November 2009 through December 2012 (Pages 7 and 9 of PX 1682) and the flights that Mr. Guerra took from July 2009 through December 2010 (PX 1722-1726). In their October 21 objections (Dkt. 1586), Defendants objected to the admission of PX 1682 solely on the

grounds of relevance and "doctrine of completeness," and to the admission of PX 1722 through PX 1726 solely on the grounds of relevance and hearsay.[5]

The TAME records are relevant. The shipping records (PX 1682) corroborate Mr. Guerra's testimony that Judge Zambrano shipped case files to Mr. Guerra, directly and through intermediaries, and that Mr. Guerra returned those case files along with his ghostwritten orders and rulings, including in the Chevron case, through TAME shipping. Similarly, the flight records (PX 1722-1726) corroborate Mr. Guerra's testimony that he traveled to Lago Agrio to ghostwrite rulings in Mr. Zambrano's civil cases, including the Chevron case.[6] (Guerra Witness Statement ¶¶ 44-47, 56). Such corroborating records are admissible under FRE 401 as they make it more probable that Mr. Guerra, just as he testified, ghostwrote orders for Judge Zambrano in the Chevron case in exchange for payments from Judge Zambrano and the Ecuadorian Plaintiffs' team.

Nor can there be any doubt that the TAME records are business records admissible under Fed. R. Evid. 803(6), and otherwise admissible under Fed. R. Evid. 807, the residual exception to the hearsay rule. Shipping and travel records are routinely admitted as business records, even where no custodian has attested to the process by which the records are kept, maintained, and created, "so long as there is evidence that the document is otherwise trustworthy" and the recipient of the records testifies about them. *Dauenhauer v. Columbia River Bank*, 2012 WL 1432610, at *5 & n.2 (D. Or. Feb. 22, 2012) ("Delivery confirmation receipts from businesses . . . such as FedEx or UPS . . . should be sufficiently trustworthy to be admissible" even without the testimo-

---

[5] There is and can be no dispute that these TAME records are authentic. Not only have the defendants waived any such objection, but each TAME document has been certified with an official stamp and signature of a TAME custodian. (PX 1682 at 9; PX 1722 at 3, PX 1723-1726). In addition, the TAME shipping records were accompanied by a certification letter confirming that the record was provided by the Office of Information Management of TAME. (PX 1721).

[6] Defendants' objection to PX 1682 on the ground of rule of completeness is baseless. Chevron is offering the entirety of the business records without redaction, and the defendants have not requested or identified any other document that ought in fairness be considered at the same time.

ny of a custodian of records).  *See also United States v. Pfeiffer*, 539 F.2d 668, 670–71 (8th Cir. 1976) (hearsay objection to admission of delivery invoices "has no merit"; trial judge has discretion to admit delivery invoices even without testimony from a business records custodian); *John Paul Mitchell Sys. v. Quality King Dist., Inc.*, 106 F. Supp.2d 462, 472-73 (SDNY 2000) (admitting shipping records that appear on corporate letterhead as authentic business records and under the residual hearsay exception). Finally, given the records' circumstantial guarantees of trustworthiness, particularly given that each document bears an official TAME stamp and signed by a TAME custodian, PX 1682 and PX 1722-1726 are admissible in the interests of justice under the residual hearsay exception, pursuant to FRE 807.  *See Dauenhauer* at *6 ("Even if the UPS receipt cannot be admitted under the business record or public agency record exception, it is admissible under the residual exception to the hearsay rule"); *John Paul Mitchell Sys.*, 106 F. Supp.2d at 472-73.

    C.    **Guerra Daily Planners**

Guerra's Daily Planners (PX 1733 and PX 1734) are admissible as prior consistent statements during Guerra's direct testimony because Defendants challenged Guerra's credibility during the opening statements.  Specifically, Defendants attacked Guerra's character by stating:

- "The story keeps changing."  Trial Tr 35:1-2.

- "We have gotten Guerra out, we can get you out, land of milk and honey, lots of money."  Trial Tr. 35:4-6.

- "I would suggest to the Court that Guerra conned Chevron, and he is going to try to con you.  Con men know that the easiest way to con people is by telling them things they want them to believe.  This Court may want to believe that Steven Donziger and his associates bribed a judge."  Trial Tr. 36:11-16.

Doubtlessly Defendants will pursue this attack further, *see* Dkt. 1422 at 6, and their attack on Guerra's testimony as fabricated based on Chevron's payments permits the admission of the consistent statements made prior to his recent contacts with Chevron and contained in PX

1733 and PX 1734 during Guerra's direct testimony. Fed. R. Evid. 801(d)(1)(B); *see also United States v. Burrell*, 43 Fed. Appx. 403, 406 (2d Cir. 2002) ("a prior consistent statement at the time of his arrest . . . was admissible because Miles argued in her opening statement that the cooperating witnesses had a motive to lie."); *United States. v. Santiago*, 199 F. Supp. 2d 101, 107 (S.D.N.Y. 2002) ("The question is not whether the defense introduces a specific statement, but rather whether it has made a specific attack on a witness's credibility").

Finally, PX 1733 and PX 1734 are admissible under the residual hearsay exception. Fed. R. Evid. 807. The Defendants have been aware of the daily planner since January 28, 2013. *See* Dkt. 764 ¶ 200. The daily planners further satisfy the remaining criteria for admissibility. The daily planners contain circumstantial guarantees of trustworthiness because they were created at or near the time of the events reflected in individual entries; the daily planner was kept with sufficient regularity; and Guerra did not have any interest in fabricating the entries. *See United States v. Wright*, 826 F.2d 938, 946 (10th Cir. 1987) ("In this case, the trial court was satisfied that the diary was kept with sufficient regularity. There was no apparent reason for falsification of the entries. Additionally, the diary was self-incriminatory and the entries introduced were corroborated by other testimony."); *United States v. Treff,* 924 F.2d 975, 982-83 (8th Cir. 1991) ("admission of a diary against a federal criminal defendant was not an abuse of discretion under the residual hearsay exception now codified at Federal Rule of Evidence 807; even though the declarant's attorney had advised the declarant to begin keeping the diary in anticipation of litigation, the diary contained "circumstantial guarantees of trustworthiness"); *United States v. Sheets*, 125 F.R.D. 172, 177 (D. Utah 1989) ("Applying the above criteria it must be concluded the diary entries are reliable and trustworthy and meet objective standards that support admission. Also, the evidence in this case is akin to other recognized exceptions to the hearsay rule expressly pro-

vided for in the F.R.E. Rule 803(1) (present sense impression), Rule 803(3) (then existing mental state of mind), 803(5) (past recollection recorded), 803(6) (regularly conducted activity), 803(13) (statements of fact concerning personal or family history), 803(19) (reputation concerning family history), 803(21) (reputation as to character among associates) and 804(b)(4) (a statement of family history). The standard of reliability of the diary evidence in this case is equivalent to the reliability of the evidence offered under the enumerated exception.").

### D. Guerra's September 5, 2010 email to Donziger: PX 1745

On September 5, 2010, after Chevron sought to recuse Judge Ordonez, which gave Zambrano his "opportunity" to take over the case and sell it to the highest bidder, Guerra reached out to Donziger and asked for his assistance in connection with his daughter's immigration and personal issues. PX 1745. And he included a non-too subtle quid pro quo: "I will support the matter of Pablo Fajardo so it will come out soon and well." This email is admissible for its truth, because it is Guerra, already conspiring with Zambrano to profit from the Lago Agrio Litigation, looking to get a down payment from Donziger. Fed. R. Evid. 801(d)(2)(E). Donziger may or may not yet have joined the conspiracy to ghostwrite the judgment in exchange for bribes at that time, but he would later do so, thus inheriting the admissibility of this statement. *United States v. Farhane*, 634 F.3d 127, 161 n.35 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 833, (2011). Moreover, it is a prior consistent statement, rebutting Donziger's counsel's attacks on Guerra's credibility thus far in this proceeding. *See* Section II.C. *supra.* Finally, it is in all events admissible not for its truth, but as evidence that Guerra was wooing Donziger's participation in his scheme to sell the Lago Agrio Litigation.

### E. Memory Aid: PX 1703

As Guerra will testify, the Memory Aid is a remarkable piece of corroborating evidence—an actual artifact of the consequently weeks when Guerra worked directly on the LAPs'

16

draft that would become the $18 billion judgment. It presents no hearsay concerns, however, because it is not offered for its truth, but as direct evidence itself corroborating Guerra's testimony.

## CONCLUSION

For the foregoing reasons, Chevron requests that the Court Guerra's testimony and Certain Guerra Documents.

Dated:  October 24, 2013  
New York, New York

Respectfully submitted,

/s/ Randy M. Mastro  
Randy M. Mastro  
Andrea E. Neuman  
GIBSON, DUNN & CRUTCHER LLP  
200 Park Avenue  
New York, New York 10166  
Telephone: 212.351.4000  
Facsimile:  212.351.4035

William E. Thomson  
333 South Grand Avenue  
Los Angeles, California 90071  
Telephone: 213.229.7000  
Facsimile:  213.229.7520

*Attorneys for Chevron Corporation*

17

Chevron v. Donziger
Basis For Admissibility of Corroborating Guerra Documents

| Evidence | PX | Defendant Objections | Admissibility Basis |
|---|---|---|---|
| **Bank Records** | | | |
| Deposit Slips (for deposits of $1,000 and $300 into A. Guerra account) | 1713 | Relevance; hearsay | 803(6) (business records); 807 (residual exception) |
| Deposit Slips (for signatures of X. Centeno and N. Zambrano) | 1713 | Relevance; hearsay | 801(a) (not a statement); 801(d)(2)(C)-(E) (party authorized speaker, employee or agent, co-conspirator); 807 (residual); 901(b)(2) (handwriting opinion) |
| Monthly statements | 1689 | Relevance; completeness | 803(6) (business records); 807 (residual exception) |
| Monthly statements | 1704 | Relevance; hearsay | 803(6) (business records); 807 (residual exception) |
| Monthly statements | 1705 | Relevance; hearsay | 803(6) (business records); 807 (residual exception) |
| Monthly statements | 1708 | Relevance; hearsay | 803(6) (business records); 807 (residual exception) |
| *IESS Records (foundational only)* | *1739* | Relevance; hearsay | 902(3) (self-authenticating foreign public records); 803(6) (business records); 807 (residual exception) |
| **TAME** | | | |
| Shipping record | 1682 | Relevance; completeness | 803(6) (business records); 807 (residual exception) |
| Travel record | 1722 | Relevance; hearsay | 803(6) (business records); 807 (residual exception) |
| Travel record | 1723 | Relevance; hearsay | 803(6) (business records); 807 (residual exception) |
| Travel record | 1724 | Relevance; hearsay | 803(6) (business records); 807 (residual exception) |
| Travel record | 1725 | Relevance; hearsay | 803(6) (business records); 807 (residual exception) |
| Travel record | 1726 | Relevance; hearsay | 803(6) (business records); 807 (residual exception) |
| *Letter (foundational only)* | *1721* | Relevance; hearsay | 803(6) (business records); 807 (residual exception) |
| **Identity Card** | | | |
| Identity card | 1740 | Relevance; best evidence | 902(3) (self-authenticating foreign public records) |
| Identity card | 1741 | Relevance; best evidence | 902(3) (self-authenticating foreign public records) |
| **Day Planner** | | | |
| Day planner pages | 1733 | Relevance; hearsay | 801(d)(1)(B) (prior consistent statement); 807 (residual exception) |
| Day planner pages | 1734 | Relevance; hearsay | 801(d)(1)(B) (prior consistent statement); 807 (residual exception) |
| **Correspondence** | | | |
| Sept. 5, 2010 email to S. Donziger | 1745 | Relevance; hearsay; personal knowledge | 801(d)(2)(E) (co-conspirator); 801(d)(1)(B) (prior consistent statement); (in the alternative) Not offered for the truth |
| **Memory Aid** | | | |
| Memory Aid | 1703 | Relevance; hearsay | Not offered for truth |