**STEVEN R. DONZIGER, ESQ.**

245 WEST 104TH STREET, SUITE 7D
NEW YORK, NEW YORK 10025

212-570-4499 (O)
917-566-2526 (CELL)

October 31, 2013

**VIA ECF**

Honorable Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

   RE:   *Chevron v. Donziger*, Case No. 11 Civ. 691 (LAK)

Dear Judge Kaplan:

     I write again to direct your attention to concerns that the due process rights of the defendants are being violated and that we are being denied our right to a fair trial as guaranteed by the U.S. Constitution.[1] I urge immediate corrective action be taken to end the severe prejudice being suffered by the defendants, as requested below. Apart from the concerns expressed in my letter to you of October 23—most of which are still outstanding—the bulk of our latest concerns now relate to the lack of clarity resulting from the Court's failure to rule on several critical issues before we present our case in chief. The failure to rule we believe violates our due process rights. Please treat this letter as a formal objection to preserve the record.

     Our specific concerns are as follows:

     **Possible harassment of key witness:** Our team has been informed that when Judge Nicolas Zambrano arrived in New York recently, several unknown operatives met him at JFK airport and followed him around the New York area. We know of no other entity on earth other than Chevron that would have a motive and the means to engage in such behavior, as it has done consistently throughout the pendency of this proceeding. . In any event, the Court can confirm this simply by requiring Chevron's counsel to respond.

---

[1] Please note that I will not be in court on Thursday of this week due to my attendance at an appellate argument related to the Canadian enforcement proceeding. I plan to be in court on Monday of next week and will be available then, or via phone conference on Friday, should the Court desire argument or explanation on the the points contained herein.

Hon. Lewis A. Kaplan
October 31, 2013
Page 2 of 4

We recognize that the Court has thus far been entirely unreceptive to our concerns about Chevron's surveillance tactics—even insofar as they involve spying on opposing counsel—and has denied Defendants discovery on that issue. Still, what appears to be happening with respect to Judge Zambrano must be taken seriously. Judge Zambrano has traveled a long way from home to set the record straight. He is essentially "Public Enemy No. 1" in the eyes of one of the world's largest and most powerful corporations. In these hostile circumstances, one cannot shrug off what Chevron is apparently doing as harmless "information gathering"—whether or not intended (though we suspect it is), the effect is witness intimidation.

We are asking the Court to take all necessary measures to guard against intimidation and protect this witness while he is in the New York area, including ordering Chevron to cease and desist, and providing security protection.

**Role of Special Masters in upcoming Zambrano deposition:** We note our continuing objection to the use of either of the Special Masters (Max Gitter or Judge Theodore Katz) given the track record of bias as previously put on the record both in writing, *see* DI 943, and orally at the depositions themselves by both myself and Mr. Gomez. We also demand, yet again, that the Court order the Special Masters to turn over the invoices for their work thus far and disclose how much Chevron has paid them. This issue goes directly to their bias and it must be made transparent so the full record of this case can be made available to the appellate court.

**Lago Agrio trial record:** We believe it is critical that the entire record of the Ecuador trial and appellate courts be submitted as evidence. We believe Chevron has the entire record – or at least substantial parts of it – translated into English. This is not attorney work product and should have been produced in discovery. We demand that the Court require Chevron to state under oath whether a) it has the full Lago Agrio trial record translated; and b) if not, what portions it has translated, including all of its technical expert reports submitted to the Lago Agrio trial court. There is simply no good reason why that record should not be submitted as evidence in this case, if Chevron possesses all or part of it. It is Chevron that wanted to have a trial about a trial, and Defendants cannot afford to have the record translated. We will be highly prejudiced if this does not occur.

**Clarity needed for defense case:** We ask that the court rule on all outstanding testimonial and evidentiary objections and provide both sides with guidance regarding the relevance of certain categories of testimony before we finalize our witness list. This includes scientific evidence critical to my ability to mount a defense, as explained in my previous letter; the so-called "pressure campaign" through press releases, advocacy with shareholders, protests, and the like – all of which we believe is entirely appropriate and protected First Amendment activity that has no place here; and whether the reporting to authorities of legitimate evidence of criminal activity on the part of Chevron officials is in or out of the case. Just yesterday Chevron lawyer Pete Seley told us that Chevron's position is that the issue of the criminal charges is still in the case event though we

believe the court ruled otherwise.  We simply cannot effectively and efficiently put together our case in chief without rulings on these critical issues that will define the scope of what is permissible.  And if the issue of the criminal charges is still in the case, we want to re-call Chevron witnesses Reis Veiga and McMillan to cross-examine them to show that the there is a valid basis for the allegations.

**Testimonial and evidentiary objections:**  Chevron has submitted numerous witness declarations based largely on hearsay and other inadmissible evidence over which Your Honor has expressed considerable distress.  We ask that Your Honor rule on all of the defendant's objections to these declarations before we are forced to present our case in chief so we know precisely what factual issues are still in play.  We believe these rulings, once made, will allow us to trim our witness list and focus our extremely limited resources on those witnesses who are most relevant and probative.  It will also allow me to write a more focused declaration rather than the "book" that I feared I would have to write given the sheer quantity of Chevron's allegations over conduct stretching over many years.

**Chevron exhibit list:** The Court's failure to rule on objections to the roughly 2,000 exhibits Chevron has submitted is also causing us prejudice.  We have argued that close to 90% if not more of those exhibits are irrelevant to the remaining issues in the case.  We need to know what exhibits are in and out to be able to effectively mount our defense.  As an alternative, the Court should reject Chevron's tactical effort to move all its exhibits into evidence on the first day of trial and let the record consist of those exhibits properly moved into evidence at trial or through written direct statements as trimmed by Chevron and subject to Defendants' objections.

**Chevron's Motion In Limine #1.**  Chevron filed 15 motions *in limine* on September 8, 2013.  Four days later, this Court relieved Defendants of their obligation to respond to nine of these motions, finding that "[n]one of these matters is sufficiently complex as to require determination in advance of trial."  DI 1420 at 2.  On the flipside, then, the Court obviously deemed the remaining motions "sufficiently complex as to require determination in advance of trial." One of these motions was Motion in Limine #1, in which Chevron argued that Defendants should be broadly prohibited from offering any argument, witnesses, questioning, and evidence that would "support the notion that the findings of the Cabrera report, the Ecuadorian judgment, or their allegations in the Ecuadorian proceeding were accurate or supported by evidence and sound scientific analysis."  DI 1389 at 2.  Defendants submitted a robust opposition to this motion.  DI 1446 at 2-11.

The Court was correct in determining that this particular motion was "sufficiently complex as to require determination in advance of trial."  Nevertheless, the Court did not rule on the motion in advance of trial, and still has not ruled on it.  Instead, the Court has attempted to deal with these issues in a piecemeal fashion—e.g., Ricardo Reis Veiga's testimony regarding "bogus" criminal charges relating to Texaco's supposed remediation; David Russell's testimony concerning an allegedly groundless damages estimate—

leaving the record confused and the Defendants puzzled about the scope of the trial and where the Court's boundaries truly lie on this issue.  To be sure, the Court has made verbal statements throughout the case discouraging and deterring Defendants from raising the types of issues identified in Motion in Limine #1, and cut Defendants off from discovery on these issues earlier in the proceedings.  But the Court's refusal to simply make a definitive ruling on this fully-briefed motion creates a mixed message.  We are in the middle of trial and we do not know where we stand, and that is unfair.  The Court must rule on Chevron's motion so that we understand how to proceed.

**General prejudice:** We believe that in addition to granting the foregoing requests for relief, the Court must remain attuned to the reality of the severe prejudice the defendants have faced ever since Chevron high-tailed from its jury demand.  Chevron's earlier efforts to make light of the difference between bench and jury trials are disingenuous, as revealed by the actual experience of this case.  This includes Chevron's preposterous attempt to introduce over 2,500 exhibits on the first day of trial and its insistence that defendants prepare objections to each within a matter of days.  The bench trial process as run by this Court may indeed be efficient on one view, but given the mismatch of resources between the parties it is grossly unfair.  The prejudice concerns are particularly salient in light of the fact that it is now established that Chevron began preparing its written witnesses statements – only useful in a bench trial – long before it actually dropped its money damages claims.  Waiting until the very last minute was a clear act of bad faith and has led to significant delays, unnecessary confusion, and generally hampered our ability to prepare effective cross-examinations and our own witness statements.  Accordingly, we ask that the Court take this prejudice into account going forward and allow us a three-day break on business days between the end of Chevron's case and the beginning of our case in chief.

**Other outstanding motions:**  For similar reasons, we further ask that Your Honor rule on the following outstanding motions: whether the issue of the so-called "bogus" criminal charges are in or out of the case; whether the bank deposit slips presented by Mr. Guerra are inadmissible (an issue tied closely to the Court's resolution of Chevron's Motion in Limine #1); our motion for terminating sanctions (or in the alternative, the striking of witness testimony) against Chevron for presenting false and misleading testimony; and the myriad requests in my letter of Oct. 23, including the equitable use of the court's jury deliberation room during the presentation of our case in chief.

Thank you for your consideration.

Sincerely,

/s

Steven R. Donziger