UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEVRON CORPORATION, | 11-CV-0691 |
| Plaintiff, | |
| v. | The Honorable Lewis A. Kaplan, U.S.D.J. |
| STEVEN DONZIGER *et al.*, | The Honorable James C. Francis, U.S.M.J. |
| Defendants. | |

**DEFENDANTS' MOTION TO PRECLUDE THE TESTIMONY
OF JEFFREY SHINDER**

## INTRODUCTION

Throughout this trial, the Court has admonished the parties against eliciting irrelevant and admissible testimony plainly motivated by a desire to generate favorable press coverage rather than to prove any claim or defense. *See, e.g.*, Oct. 16, 2013 Tr.at 208:7-11 ("I understand both sides are playing to an audience outside this courtroom.  But the judicial resources of the United States are a limited resource, and this is not a forum for that kind of stuff for either side."). The Court specifically warned Chevron that much of the direct testimony it has offered is improper, such as "argument by the witnesses . . . and other matter which if it were offered on the stand during direct testimony would be objected to and sustained"—a circumstance that has forced Defendants to expend time preparing for cross examination on assertions and issues that have no business being part of this trial. *Id*. at 210:19-212:7.

Chevron has not submitted a written statement executed by witness Jeffrey Shinder (a lawyer who represented the Lago Agrio Plaintiffs for "a week or ten days" in early 2010 (Ex. 1 at 27:6-12), and intends to elicit his testimony on live direct examination.  Nevertheless, Shinder's deposition testimony indicates that his trial examination will be an irrelevant sideshow, conducted to entice members of the press preoccupied with Chevron's salacious—but immaterial—"dissention in the Lago Agrio Plaintiffs' ranks" public relations theme.  As further explained below, the Court should either (a) bar Mr. Shinder's testimony entirely, or, (b) at a minimum, require Chevron's counsel to make a preliminary relevance/admissibility showing and set appropriate parameters for the examination at the outset, to avoid what will otherwise be an abuse of this Court's resources and a colossal waste of time for all involved.

**ARGUMENT**

Jeffrey Shinder's story is as follows: Shinder's law firm, Constantine Cannon LLP, was retained in March 2010 to represent the Lago Agrio Plaintiffs in connection with Chevron's 28 U.S.C. § 1782 proceedings—at the time limited to actions pending in Colorado and Georgia. Ex. 1 at 21:25-22:17; 109:11-18.  Shinder claims that he was not satisfied with Donziger's assurances that whatever transpired vis à vis the Cabrera Report was not improper through the lens of Ecuadorian law and practice, and therefore would not go full bore into the representation until he had occasion to meet with and interview employees of Stratus Consulting. *Id*. at 91:23-92:11.  Those meetings occurred several days after Shinder's retention, in the presence of Donziger and others.  (*Id*. at 39:9-13; 41:10-62-11.)  Shinder claims that, at the meetings, Douglas Beltman of Stratus (a supposed co-conspirator) gave a "forthcoming interview" during which he informed Shinder that Stratus was the principal drafter of the Cabrera Report. (*Id*. at 30:15-21; 62:19-25; 68:23.)  Almost immediately after the meetings, and apparently before his firm made any court appearance, Shinder informed Donziger that the firm was withdrawing from the representation.  *Id*. at 100:13-103:2.

Shinder's anticipated testimony, based upon his deposition, can generally be broken down into three categories, considered *seriatim* below.

***First*,** Mr. Mastro previewed in his opening statement that Chevron intends to elicit from Mr. Shinder testimony about how "he had to quit because he was sickened and disgusted by what he learned" from Stratus." Oct. 15, 2013 Tr. at 9:10-19.  Indeed, the bulk of Shinder's deposition testimony concerns his personal views, and his firm's apparent views, on the Cabrera Report, and his personal opinion about whether one could ethically (and as a sound "business proposition") continue to represent the Lago Agrio Plaintiffs after learning about the genesis of

the Cabrera Report. *See, e.g.*, Ex. 1 at 28:19-29:2 (testifying that he was disturbed by the facts both "ethically and as a business proposition in terms of the viability of the case as a business proposition"); 31:11-24 (testifying that he "believe[s] the conduct that was disclosed to me to be improper," with the caveat that this testimony was based "upon my subjective, you know, my subjective perception, because it is not for me to determine whether it was proper or not"); 32:6-15 ("I'm no expert in Ecuadorian process, but if you have an independent expert . . . [whose] independence is compromised in a way . . . I think that's per se improper. That was my own subjective view of it"); 82:20-25 ("[I]"disturbed me that something that I thought was highly improper happened in Ecuador. It was indefensible and it disturbed me in terms of what it said about [Donziger's] character, which is actually not an ethical judgment, but it is interspersed with that.").

The proposition that one lawyer "would never have taken the engagement had [he] known what [he] was going to learn" (*id.* at 36:14-16) has no bearing on any claim in this litigation. As Shinder himself admitted during his deposition, his opinion on the propriety of Stratus's role in drafting the Cabrera Report, whether as a legal or ethical matter, is of no moment. The facts are what they are and the law is what it is; the Court's assessment of the Defendants' alleged conduct will not be aided by hearing Mr. Shinder's personal reaction to these facts. Shinder is not being offered as an expert in legal ethics, and, even if her were, his testimony would be irrelevant. For that reason, Chevron already dropped (at the Court's urging) Nancy Moore, a purported legal ethics expert, from its witness list. Mr. Mastro's opening statement made clear that Chevron is putting Shinder on the stand primarily, if not entirely, to generate headlines about how apparently "sickened" he felt. Consistent with its prior admonishments, the Court should prohibit this irrelevant spectacle.

3

***Second*,** a good portion of Shinder's testimony simply describes what various Stratus employees told him about the Cabrera Report when Shinder interviewed them. (*See, e.g*., Ex. 1 at 41:10-62-11.)  That is rank hearsay.  And the "co-conspirator exception" does not apply: insofar as the "conspiracy" is the supposed concealment of the alleged "Cabrera fraud," a co-conspirator's admittedly "forthcoming" explanation of the facts concerning that alleged fraud to a third party certainly do not "further the conspiracy" as required by Rule 801(d)(2)(E) of the Federal Rules of Evidence.  By virtue of its settlement agreement with Stratus, Chevron has the right to call Mr. Beltman (and other Stratus employees) to testify first-hand regarding what was said to Shinder.  *See* DI 934-1 at 3.  Perhaps wishing to avoid cross-examination concerning the extra-judicial pressure that Chevron applied to Stratus, among other uncomfortable topics, Chevron apparently has elected not to call Beltman, who was for months trumpeted as Chevron's key witness.  Chevron cannot squeeze Mr. Beltman's purported statements into the record through Shinder.

***Third*,** Shinder testified that Donziger did not initially inform him of the facts that he learned from the Stratus personnel several days into the representation.  The relevance of this testimony is not apparent.  Chevron cannot seriously be suggesting that Defendants are liable under a "third-party fraud" theory based on alleged misrepresentations or omissions directed to Shinder.  As an initial matter, Shinder testified that he was not prepared to get fully onboard based on conversations with Donziger, and always intended to reserve judgment until he was given access to Stratus:

> Q: [W]hen you were being retained to represent him and the LAPs in the Stratus 1782, is it fair to say that you were looking to Mr. Donziger in the initial phase to provide you with the relevant facts?
>
> A: Not necessarily. . . . I said to [Donziger] I will do this only if you give me complete access to Stratus. And so in a direct response to your question, I

4

> actually didn't want the details from Mr. Donziger, I wanted them from Stratus.

(*Id*. at 91:13-92:11.) Shinder received this access to Stratus, and the account he was looking for, just a few days after his engagement. (*Id*. at 41:10-62:11.) Most importantly, even if one could say that Shinder was "defrauded" under these circumstances, he took no action to Chevron's detriment in reliance on that "fraud." Shinder was engaged for "a week or ten days" (*Id*. at 27:6-12), and apparently never even appeared in court. Chevron cannot possibly argue otherwise.

## CONCLUSION

For the foregoing reasons, the Court should either (a) bar Mr. Shinder's testimony entirely, or, (b) at a minimum, require Chevron's counsel to make a preliminary relevance/admissibility showing and set appropriate parameters for the examination at the outset.

DATED: October 31, 2013

Respectfully submitted,

*s/ Julio C. Gomez*
Julio C. Gomez
GOMEZ LLC
The Sturcke Building
111 Quimby Street, Suite 8
Westfield, NJ 07090
Telephone:  908.789.1080
Facsimile:  908.789.1080
Email:  jgomez@gomezllc.com

*Counsel for Defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje*