UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                         :

CHEVRON CORPORATION,            :

              Plaintiff,        :

                         :

       -against-                :   Case No.  11 Civ.  0691 (LAK)

                         :

STEVEN R.  DONZIGER, et al.,       :

             Defendants.      :

                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# CHEVRON CORPORATION'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO PRECLUDE OR LIMIT CERTAIN
## DEFENSE WITNESSES AT TRIAL

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 2

I.      The Court Should Preclude Defendants From Calling Humberto Piaguaje as a
        Witness, or at Least Require a Deposition and Full Document Production ...................... 2

        A.      Defendants Blocked Chevron's Discovery of Humberto Piaguaje and
                the Asamblea ................................................................................................ 3

        B.      Defendants Failed to List Humberto Piaguaje on Their Rule 26(a)(1)
                Disclosures .................................................................................................. 4

II.     The Court Should Preclude Escobar's Inadmissible Hearsay ............................................ 7

        A.      Borja is Not "Unavailable" for Trial ........................................................... 8

        B.      The Statements are Not "Statements Against Interest" ................................. 8

        C.      Borja's Statements Were Not Statements of an Agent or in Furtherance
                of Any Conspiracy ....................................................................................... 9

        D.      The Residual Exception Does Not Apply ..................................................... 11

III.    The Court Should Preclude or Limit the Testimony of Donald Moncayo ...................... 12

IV.     The Court Should Preclude Alejandro Ponce Villacís From Testifying About
        Irrelevant Topics ...................................................................................................... 15

V.      The Court Should Preclude the Testimony of Atossa Soltani Because
        Defendants and Amazon Watch Frustrated Chevron's Efforts to Obtain
        Discovery From Her ................................................................................................. 17

VI.     The Court Should Require Defendants to Make an Offer of Proof Regarding
        What Relevant, Non-Expert Testimony They Would Elicit from Juan Pablo
        Albán Allencastro ..................................................................................................... 20

VII.    The Court Should Require a Proffer Demonstrating What, if any, Admissible
        Testimony Berlinger Can Provide on Topics That Are Relevant .................................... 21

CONCLUSION ........................................................................................................ 22

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Bourjaily v. United States*,
   483 U.S. 171 (1987)..................................................................................................10

*Boyke v. Superior Credit Corp.*,
   No. 01-CV-0290, 2006 WL 3833544 (N.D.N.Y. Dec. 28, 2006) ..........................13

*Brown v. Keane*,
   355 F.3d 82 (2d Cir. 2004) .....................................................................................21

*Campbell by Campbell v. Coleman Co., Inc.*,
   786 F.2d 892 (8th Cir. 1986) ...................................................................................7

*Chevron Corp. v. Berlinger*,
   629 F.3d 297 (2d Cir. 2011) ...................................................................................20

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)................................................................................................20

*Degelman Indus. Ltd. v. Pro-Tech Welding & Fabrication, Inc.*,
   No. 06-CV-6346, 2011 WL 6754059 (W.D.N.Y. June 8, 2011)..............................6

*Design Strategy, Inc. v. Davis*,
   469 F.3d 284 (2d Cir. 2006) .....................................................................................4

*Dora Homes, Inc. v. Epperson*,
   344 F. Supp. 2d 875 (E.D.N.Y. 2004) ...................................................................10

*Evans v. Port Authority of New York and New Jersey*,
   192 F. Supp. 2d 247 (S.D.N.Y. 2002) .....................................................................9

*Ginns v. Towle*,
   361 F.2d 798 (2d Cir. 1966) ...................................................................................18

*In re Application of Chevron Corp.*,
   709 F. Supp. 2d 283 (S.D.N.Y. 2010) ...................................................................20

*In re Shulman Transp. Enters., Inc.*,
   744 F.2d 293 (2d Cir. 1984) ...................................................................................10

*Innis Arden Golf Club v. Pitney Bowes, Inc.*,
   No. 3:06 CV 1352(JBA), 2009 WL 5873112  (D. Conn. Feb. 23, 2009)..................5

TABLE OF AUTHORITIES (*cont.*)

Page(s)

*Newhouse v. Probert*,
608 F. Supp. 978 (D. Mich. 1985) ....................................................................... 12

*Pal v. New York Univ.*,
No. 06CIV.5892PACFM, 2008 WL 2627614 (S.D.N.Y. June 30, 2008) .............. 6

*Patterson v. Balsamico*,
440 F.3d 104 (2d Cir. 2006) ................................................................................. 6

*Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*,
No. 11-CV-726 CBA, 2013 WL 4409434 (E.D.N.Y. Aug. 2, 2013) ..................... 6

*Reilly v. Natwest Markets Group Inc.*,
181 F.3d 253 (2d Cir. 1999) ................................................................................. 4

*Schering Corp. v. Pfizer Inc.*,
189 F.3d 218 (2d Cir. 1999) ............................................................................... 11

*U.S. v. Katsougrakis*,
715 F.2d 769 (2d Cir. 1983) .............................................................................. 8, 9

*United States v. Cornett*,
195 F.3d 776 (5th Cir. 1999) .............................................................................. 10

*United States v. Darwich*,
337 F.3d 645 (6th Cir. 2003) .............................................................................. 10

*United States v. Desena*,
260 F.3d 150 (2d Cir. 2001) ............................................................................... 10

*United States v. Harwood*,
998 F.2d 91 (2d Cir. 1993) ................................................................................. 11

*United States v. IBM Corp.*,
66 F.R.D. 215 (S.D.N.Y. 1974) .......................................................................... 18

*United States v. Lieberman*,
637 F.2d 95 (2d Cir. 1980) ............................................................................. 9, 10

*United States v. Mejia-Valez*,
855 F. Supp. 607 (E.D.N.Y. 1994) ....................................................................... 8

*United States v. Stratton*,
779 F.2d 820 (2d Cir. 1985) ................................................................................. 8

*United States v. Urbanik*,
801 F.2d 692 (4th Cir. 1986) .............................................................................. 10

**TABLE OF AUTHORITIES (*cont.*)**

Page(s)

*United States v. Warman,*
    578 F.3d 320 (6th Cir. 2009) ................................................................ 10

*Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.,*
    373 F.3d 241 (2d Cir. 2004) ................................................................ 13

*Williamson v. U.S.,*
    512 U.S. 594 (1994) .............................................................................. 9

*World Wide Ass'n of Specialty Programs v. PURE, Inc.,*
    No. 2:02-CV-00010 (PGC), 2004 WL 5620058 (D. Utah July 20, 2004) ................. 5

*Zomber v. Vill. of Garden City,*
    No. CV 09-4637 ETB, 2011 WL 4737052 (E.D.N.Y. Oct. 6, 2011) ........................ 5

**Rules**

Fed. R. Civ. P.  26(a)(1)(A) ..................................................................... 6

Fed. R. Civ. P. 26(a) ............................................................................. 4

Fed. R. Civ. P. 26(a)(1) .................................................................. passim

Fed. R. Civ. P. 26(a)(1)(A)(i) ................................................................. 4

Fed. R. Civ. P. 26(e) ............................................................................. 4

Fed. R. Civ. P. 30(b)(6) ....................................................................... 17

Fed. R. Civ. P. 37 ................................................................................. 4

Fed. R. Civ. P. 37(c)(1) ..................................................................... 4, 5

Fed. R. Evid. 401(a) ........................................................................... 14

Fed. R. Evid. 602 .......................................................................... 16, 21

Fed. R. Evid. 702 ............................................................................... 20

Fed. R. Evid. 801(d)(2)(D) ................................................................. 10

Fed. R. Evid. 802(d)(2)(D) ................................................................. 10

Fed. R. Evid. 804(a) ............................................................................. 8

Fed. R. Evid. 804(a)(5) ......................................................................... 8

Fed. R. Evid. 804(a)(5)(B) .................................................................... 7

## TABLE OF AUTHORITIES (*cont.*)

Page(s)

Fed. R. Evid. 804(b)(3) ................................................................................................ 8, 9

Fed. R. Evid. 807 ........................................................................................................... 11

### Other Authorities

*Moore's Federal Practice*, ¶ 55.03[2] ............................................................................ 12

Weinstein's Federal Evidence § 801.32[2] (2d ed. 2004) ........................................... 10

Weinstein's Federal Evidence § 801.33[2][b] (2d ed. 2004) ....................................... 10

## PRELIMINARY STATEMENT

After long carrying a list of around 70 potential trial witnesses (Dkt. 1377), Defendants finally narrowed their list of trial witnesses down to 13.  Trial Tr. 1237–40.  Defendants' mid-trial list of witnesses is notable more for what it omits than what it contains.  Defendants do not intend to call several of the key percipient witnesses in the case who would seem to be in the best position to address Chevron Corporation's ("Chevron") allegations—including Richard Stalin Cabrera Vega, Pablo Fajardo, German Yanez, James Tyrrell (or other lawyers from Patton Boggs), attorneys for the Republic of Ecuador, or Aaron Marr Page among others.

At 11:58 pm on October 30, Chevron received the first two of Defendants' witness statements:  Karen Hinton's[1] and an untranslated version of a statement from Donald Moncayo.  These two statements, along with the balance of the "core" witnesses identified on October 25, make clear that Defendants have virtually no response to the substance of Chevron's claims against them.  Rather, Defendants' only real goal at trial is to attempt to argue that Chevron's supposed "unclean hands" precludes relief, or that their ends in Ecuador somehow justified their misguided means.  But most of their witnesses have no relevant testimony to give at this trial on these or any other subjects.

The Court should ensure a fair, efficient, and orderly trial by issuing the following relief:

- Preclude the testimony of Humberto Piaguaje because his testimony has no apparent relevance to the claims at issue; Defendants blocked Chevron's attempts to obtain discovery from him or his group; and because Defendants failed to disclose him on their Rule 26(a)(1) disclosures;
- Preclude the testimony of Santiago Ernesto Escobar Escobar ("Escobar") because he would offer inadmissible hearsay not subject to any exception;

---

[1] Now that Chevron has had the opportunity to briefly review Hinton's declaration, it is apparent that Chevron will also be filing a similar motion to limit or preclude her from testifying based on the inadmissibility of her preferred testimony.

- Preclude the testimony of Donald Moncayo because has no relevant, admissible testimony to offer on Defendants' "unclean hands" defense or otherwise, and because Defendants blocked Chevron's attempts to obtain relevant discovery;

- Preclude the testimony of Alejandro Ponce Villacís ("Ponce") because has no relevant, admissible testimony to offer on Defendants' "unclean hands" defense or otherwise, and because Defendants blocked Chevron's attempts to obtain relevant discovery;

- Preclude the testimony of Atossa Soltani because Defendants and Amazon Watch frustrated Chevron's efforts to obtain discovery from Soltani;

- Preclude Ecuadorian law expert Juan Pablo Alban Alencastro ("Alban") from testifying live at trial, as already ordered by the Court at the final Rule 16 conference, and Require Defendants to make an offer of proof regarding any additional opinions Alban would purport to offer if granted leave to do so; and

- Require an offer of proof regarding the testimony of Joseph Berlinger, who would not appear to have any relevant, admissible testimony based on personal knowledge.

For the better part of three years, Defendants have resorted to every conceivable strategy to delay this litigation, thwart discovery, and accuse this Court of bias against them. While they have had multiple opportunities to offer evidence to try to explain what they have done and why they have done it, they have never done so. They continue to hide behind their unsupported refrain of "insufficient resources," including as recently as October 25, when the LAPs' counsel representing to the Court that "I do not have the funds to bring by clients yet to testify, and we are trying to raise that money" (Trial Tr. 1238), even though there were funds enough for one of his clients (Javier Piaguaje) to be present in the courtroom for the first and second days of trial. Defendants' list of supposed "core witnesses" continues this pattern of evasion, but to no avail.[2]

## ARGUMENT

## I.    The Court Should Preclude Defendants From Calling Humberto Piaguaje as a Witness, or at Least Require a Deposition and Full Document Production

Defendants represent that Humberto Piaguaje "is the leader of the union of the affected,

---

[2] Most of Defendants' proposed witnesses have, on their face, limited, if any, admissible testimony to offer—a circumstance that will be even clearer once Defendants serve Chevron with their written direct testimony witness statements beyond the statement of Karen Hinton and the (untranslated) statement of Donald Moncayo. Chevron, accordingly, will be able to lodge its specific objections to those statements if and when Defendants provide them.

also known as assembly of the affected, and can speak to the management of the litigation and the existence of the client and their interests." Trial Tr. 1239–40. The Court should preclude Defendants from calling Humberto Piaguaje as a witness at trial because he has no relevant evidence to offer and Defendants have thwarted Chevron's discovery efforts directed at witnesses and documents in Ecuador—including, in particular, Humberto Piaguaje and his group—and because this witness was not listed on Defendants' Rule 26(a)(1) disclosures.

### A. Defendants Blocked Chevron's Discovery of Humberto Piaguaje and the Asamblea

Humberto Piaguaje should not be allowed to testify about the purported management of the litigation by the Assembly of the Affected ("Asamblea"), or any other issue. Defendants have made no showing how his anticipated testimony is relevant,[3] but Defendants have successfully thwarted Chevron's related document discovery. As this Court explained in its recent sanctions order, "documents related to the Asamblea" were "clearly responsive to Chevron's document requests" and yet Defendants made no efforts to comply with those requests during discovery. Dkt. 1529 at 91–92. Defendants then listed Asamblea meeting minutes—some of which were heavily redacted—on their exhibit list on the eve of trial, which "underscores the gamesmanship and bad faith of defendants and their Ecuadorian counsel when it comes to production of key documents from Ecuador and reveals that their strategy has always been to produce materials when it suits their purposes and is most helpful to their case, notwithstanding Court orders for full production or prejudice to the plaintiff." *Id*. at 92.

Defendants therefore should not be permitted to call the Asamblea's leader to testify at trial about that group's management of the litigation, or any other issue. Indeed, Defendants'

---

[3] Defendants' argument that Humberto Piaguaje "can speak to … the existence of the client and their interests" by virtue of his position as "leader of the affected" is particularly misleading, since neither Humberto Piaguaje nor the Asamblea are plaintiffs in the Lago Agrio action, and both lack any standing in this case.

belated designation of 29 documents that constitute Asamblea meeting minutes does not consti-
tute a full production of what Chevron requested, namely:  "ALL DOCUMENTS RELATED To
the ASSEMBLY OF THE AFFECTED."  *Id*. at 91 n. 306.  Defendants' failure to produce these
documents prejudices Chevron's ability to cross-examine Humberto Piaguaje and otherwise re-
spond to Defendants' theory of the case.  Accordingly, the Court should exercise its discretion to
prohibit Defendants from calling Humberto Piaguaje at trial.  *See Reilly v. Natwest Markets
Group Inc.*, 181 F.3d 253, 269 (2d Cir. 1999) (affirming decision to preclude witnesses' testimo-
ny where, among other things, defendant "even to this day [] has never explained why they were
not made available for deposition"); *see also* Dkt. 1529 at 104 (noting that the Court "may ex-
clude all or some such [Ecuadorian] documents as a sanction irrespective of whether they other-
wise would have been admissible").

   At a minimum, the court should condition Humberto Piaguaje's testimony on a full doc-
ument production—verified under oath by all counsel of record—and a meaningful deposition.
*Cf*. Dkt. 1486 at 6–7 (allowing Judge Zambrano to testify at trial, subject to conditions).

## B.    Defendants Failed to List Humberto Piaguaje on Their Rule 26(a)(1) Dis-closures

   Rule 26(a)(1) requires all parties to provide initial disclosures of, among other things,
"the name and, if known, the address and telephone number of each individual likely to have dis-
coverable information—along with the subjects of that information—that the disclosing party
may use to support its claims or defenses."  Fed. R. Civ. P. 26(a)(1)(A)(i).  "If a party fails to
provide information or identify a witness as required by Rule 26(a) or (e), the party is not al-
lowed to use that information or witness to supply evidence on a motion, at a hearing, or at a tri-
al, unless the failure was substantially justified or harmless."  Fed. R. Civ. P. 37(c)(1).  "This au-
tomatic sanction provides a strong inducement for disclosure of material that the disclosing party

would expect to use as evidence . . . at a trial." Advisory Comm. Notes to 1993 Amendment to Fed. R. Civ. P. 37; *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006) ("A district court has wide discretion to impose sanctions, including severe sanctions, under Federal Rule of Civil Procedure 37.").

Defendants have known of and have worked with Humberto Piaguaje for years. Yet he does not appear in their Rule 26(a)(1) disclosures. *See* Dkt. 1398-2 (Donziger Defendants' Supplemental Rule 26(a)(1) Disclosures); Dkt. 1398-3 (LAPs' Amended Rule 26(a)(1) Disclosures). In fact, Defendants did not disclose him as a potential witness until August 31, 2013, in their pre-trial submissions, along with 65 other individuals. Dkt. 1377.[4]

Defendants' failure to comply with their basic disclosure obligations is unjustified and far from harmless. There is no legitimate reason why they waited until this late stage to disclose one of their supposed "8 to 10 . . . solid core" witnesses. Trial Tr. 1237. *See World Wide Ass'n of Specialty Programs v. PURE, Inc.*, No. 2:02-CV-00010 (PGC), 2004 WL 5620058, at *5 (D. Utah July 20, 2004) (order excluding recently proposed witnesses at trial due to unfair surprise and prejudice because defendant would not be able to depose them). This unjustified delay has harmed Chevron because it has never had an opportunity to depose Humberto Piaguaje, whose documents Defendants have, moreover, withheld from discovery. *See, e.g., Zomber v. Vill. of Garden City*, No. CV 09-4637 ETB, 2011 WL 4737052, at *3 (E.D.N.Y. Oct. 6, 2011) (precluding testimony where "[t]he disclosure was not made until mere days before the beginning of this trial, well after the close of discovery, thus preventing plaintiff from deposing or otherwise seeking discovery from" the non-disclosed witness); *Innis Arden Golf Club v. Pitney Bowes, Inc.*, No.

---

[4] Chevron moved *in limine* to preclude the testimony of Humberto Piaguaje (MIL No. 10) (Dkt. 1398), and the Court denied Chevron's motion "without prejudice to plaintiff's objections in the event the evidence in question actually is offered at trial." Dkt. 1420 at 2.

3:06 CV 1352(JBA), 2009 WL 5873112 , at *4 (D. Conn. Feb. 23, 2009) (failure to disclose wit-nesses was not harmless where it would "require additional fact discovery of third parties, and accordingly, necessitates a continuance [of] fact discovery that closed over one month ago").

Moreover, the four factors the Second Circuit has instructed district courts to consider in exercising their discretion under Rule 37(c)(1) all favor preclusion here:  "(1) the party's expla-nation for the failure to comply with the [disclosure requirement]; (2) the importance of the tes-timony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance."  *Pat-terson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).  Defendants have yet to offer any expla-nation for their failure to comply with their disclosure obligations—instead, they accuse this Court of relying on "stale evidence" and "circular reasoning" in its sanctions order.  Dkt. 1631 at 1, 10.  Nor would Humberto Piaguaje be able to offer any testimony of great significance.  In fact, as explained further above, *see supra* Part I, Humberto Piaguaje's testimony appears irrele-vant and he should not be permitted to testify at all given Defendants' discovery gamesmanship. And the possibility of a continuance to allow a deposition and document discovery may be unre-alistic here in the middle of a complex trial.  *See, e.g.*, *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, No. 11-CV-726 CBA, 2013 WL 4409434, at *15 (E.D.N.Y. Aug. 2, 2013) (finding "possibility of a continuance" factor weighed in favor of preclusion where case had "been ongoing for almost two-and-one-half years").  Defendants should not be rewarded for their discovery obstruction and disregard of Rule 26(a)(1)'s disclosure obligations.[5]

---

[5] It is irrelevant that Humberto Piaguaje appeared on Chevron's Rule 26(a)(1) disclosures.  *See* Dkt. 1398-1. The "purpose of [the Rule 26(a)(1)] disclosure[s] is to alert an opposing party of the need to take discovery of the named witness."  *Pal v. New York Univ.*, No. 06 Civ. 5892(PAC)(FM), 2008 WL 2627614, at *4 (S.D.N.Y. June 30, 2008).  Thus, even if Chevron had "knowledge of the existence of a witness," that did not satisfy the Defendants' obligation to disclose that they "might call the witness in support of its claims or defenses."  *Id.*; *see also, e.g.*, *De-gelman Indus. Ltd. v. Pro-Tech Welding & Fabrication, Inc.*, No. 06-CV-6346, 2011 WL 6754059, at *2 (W.D.N.Y. [Footnote continued on next page]

6

**II.     The Court Should Preclude Escobar's Inadmissible Hearsay**

Defendants have sought to make Diego Borja the star witness of their unclean hands de-

fense, claiming that Borja has evidence about alleged Chevron misconduct and that Chevron paid

him to keep quiet.  *E.g.*, Dkt. 1422 at 7-9.  Defendants have falsely claimed that Borja engaged in

a "sting operation" on Chevron's behalf involving the presiding judge in Ecuador, and that Borja

oversaw Chevron's sampling laboratory in Ecuador and witnessed Chevron's employees replac-

ing soil samples from the official inspection sites.  Dkt. 567-1 (Donziger's proposed counter-

claims) ¶¶ 63–67, 89, 145.

Defendants obtained two full days of deposition testimony from Borja, but did not desig-

nate any of the resulting testimony for trial—███████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████     Rather than call Borja as a witness at trial, Defendants instead want to call Esco-

bar—an Ecuadorian citizen living in Canada who had no involvement in the Lago Agrio litiga-

tion beyond his conversations with Borja.  Ex. A (Escobar Dep. Tr.) at 24:1-25:1, 26:18-22.  De-

fendants thus seek to establish through Escobar's hearsay account what they cannot establish

through Borja himself.  But Escobar cannot testify as to the truth of Borja's out-of-court state-

ments because that would amount to inadmissible hearsay not subject to any exception, and the

"fact" of Borja's statements to Escobar is not probative of any issue in the case.

---

[Footnote continued from previous page]
June 8, 2011) ("Plaintiff's knowledge of the existence of a potential witness does not satisfy the Rule 26(a)(1)(A)
disclosure obligation; that obligation is fulfilled only when Defendants inform Plaintiff that they might call the wit-
ness in support of their claims or defenses.").

   [6]  Defendants did not initially designate any portions of the Borja deposition transcript, and instead only coun-
ter-designated in response to Chevron's designations.

### A.    Borja is Not "Unavailable" for Trial

The declarant, Borja, is not "unavailable" because Defendants have already deposed him.

*See* Fed. R. Evid. 804(a)(5)(B) (deeming witness "unavailable" if he is "absent from the trial or

hearing and the statement's proponent has not been able, by process or other reasonable means,

to procure . . . the declarant's attendance or testimony").  Defendants' strategic decision not to

call him as a witness at trial, live or through deposition designations, does not change this.

*Campbell by Campbell v. Coleman Co., Inc.*, 786 F.2d 892, 895-96 (8th Cir. 1986) (refusing to

admit prior hearsay statements of the declarant because he had been deposed by the Defendant

eight months before trial and was therefore not "unavailable" for the purpose of Rule 804(a)(5),

which "is concerned with the absence of testimony, rather than the physical absence of the de-

clarant").  Defendants have made no effort to seek Borja's appearance for testimony at trial or

otherwise to meet their burden to show he is unavailable.  *E.g.*, *U.S. v. Katsougrakis*, 715 F.2d

769, 775 (2d Cir. 1983).  They cannot now complain that Borja is "unavailable" merely as a pre-

text for seeking to admit his prior out-of-court statements for their truth.  *See United States v.

Mejia-Valez*, 855 F. Supp. 607, 617 (E.D.N.Y. 1994) (refusing to admit prior tape-recorded hear-

say statements of a witness who, if called, would have contradicted them on the stand because

"while defendant chose not to call [the witness] for strategic reasons, he was not 'unavailable'

under Fed. R. Evid. 804(a).").

### B.    The Statements are Not "Statements Against Interest"

Borja's alleged statements to Escobar do not qualify as statements against interest.  Rule

804(b)(3) covers statements that "a reasonable person in the declarant's position would have

made only if the person believed it to be true because, when made, it was so contrary to the de-

clarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's

claim against someone else or to expose the declarant to civil or criminal liability."  Fed. R.

Evid. 804(b)(3).  But Borja's alleged statements regarding his prior conduct in Ecuador—made in 2009 from his computer in California, ███████████████████████████ ██████████████████████████████████████████—were not against his penal or pecuniary interests "when made."

Moreover, the statements allegedly inculpating Chevron should not be admissible as statements against interest without corroborating evidence—which Defendants cannot offer through Borja or otherwise.  *See United States v. Stratton*, 779 F.2d 820, 828 n.7 (2d Cir. 1985) ("[S]ince a statement inculpating both the declarant and others may be of questionable reliability, this Court has also required corroboration of such statements."); *United States v. Katsougrakis*, 715 F.2d 769, 774-75 (2d Cir. 1983) ("The veracity of the hearsay statement may be questioned, however, when the declarant also inculpates a third party. … [T]he declarant may in that circumstance have less than honorable motives for volunteering his 'statement'").[7]

### C.    Borja's Statements Were Not Statements of an Agent or in Furtherance of Any Conspiracy

Borja's prior statements are neither vicarious admissions nor coconspirator statements because they are contrary to the nature of any association or conspiracy that allegedly existed between Borja and Chevron.  "The requirement that the statements have been in furtherance of the conspiracy is designed both to assure their reliability and to be consistent with the presumption that the coconspirator would have authorized them."  *United States v. Lieberman*, 637 F.2d 95, 103 (2d Cir. 1980).  Likewise, for the vicarious admission exception, the statement at issue must be "related to the declarant's duties."  *Evans v. Port Authority of New York and New Jersey*,

---

[7]  Borja's collateral statements do not fall under this exception.  Only those statements that are clearly inculpatory—and not any other statements that may have been made in connection with any inculpatory statements—may be admitted under Rule 804(b)(3).  *Williamson v. U.S.*, 512 U.S. 594, 600-01 (1994) (endorsing a "narrower" reading of the exception for statements against interest, under which Rule 804(b)(3) "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory").

192 F. Supp. 2d 247, 264 (S.D.N.Y. 2002).  Here, Borja's alleged statements could not reflect actions in furtherance of a conspiracy or related to an agency relationship because—as Defendants allege—they reflect Borja's desire to harm Chevron.[8]  Indeed, that Borja's statements defeat the purpose of the alleged conspiracy is *why* Defendants want them admitted.

Moreover, ███████████████████████████████████

███████████████ Borja did not have any employment or agency relationship with Chevron that would support the vicarious admission or coconspirator statement exception.  A statement may be admissible against a party if it was "made by the party's agent or employee on a matter within the scope of that relationship and while it existed."  Fed. R. Evid. 801(d)(2)(D).[9]



████████████████████████████████ Independent contractors are not agents whose acts are subject to the principal's direction and control.  *In re Shulman Transp. Enters., Inc.,* 744 F.2d 293, 295 (2d Cir. 1984).  Borja's alleged statements in Ecuador thus do not fall within the Rule 802(d)(2)(D) exception.  *See* Weinstein's Federal Evidence § 801.33[2][b] at 801–74 (2d ed. 2004) ("statements of a party's independent contractors typically do not come within Rule 802(d)(2)(D)" (citations omitted)).

██████████████████████████████████████████

██████████████████████████████████████████

---

[8]  Borja's alleged statements did not relate to any duties he had as an independent contractor.  *See* Ex. C (Escobar Recordings) at 10 ("I have to tell everything as it happened, because they say that the company knew about this and that they planned it, but that's not the way it is.").

[9]  The coconspirator exception is based on "agency principles, the underlying concept being that a conspiracy is a common undertaking where the conspirators are all agents of each other and where the acts and statements of one can be attributed to all."  *Bourjaily v. United States*, 483 U.S. 171, 188 (1987).  "Courts have historically applied agency law to determine whether the declarant was authorized by the party to make the statement at issue."  *Dora Homes, Inc. v. Epperson*, 344 F. Supp. 2d 875, 884 (E.D.N.Y. 2004), citing Weinstein's Federal Evidence § 801.32[2] at 801-68 (2d ed. 2004).

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██ .[10]

### D.    The Residual Exception Does Not Apply

The Rule 807 "residual" exception is similarly inapplicable to Borja's statements. To be

admissible under Rule 807, the hearsay statement must have "equivalent circumstantial guaran-

tees of trustworthiness" and "admitting it will best serve the purposes of these rules and the in-

terests of justice." Rule 807 is applied only "in the rarest of cases." *United States v. Harwood*,

998 F.2d 91, 98 (2d Cir. 1993); *see also Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 232 (2d Cir.

1999) ("These [Rule 807] requirements independently ensure that the rule will 'be used very

rarely, and only in exceptional circumstances.'" (internal quotation omitted)).

Here, Borja's statements are anything but trustworthy. ████████████████████

█████████████████████████████████████████████████████ . *See* Ex. A

(Escobar Dep. Tr.) at 93:7-14 (Escobar lied to Borja about having access to the LAPs to "keep[]

up the conversation"); Dkt. 370-6 at 170:3-171:6 (same); █████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████ And Borja's alleged statements

are also inconsistent with one another. *Compare* Ex. C (Escobar Recordings) at 4 (Escobar:



---

[10]    Borja's alleged statements to Escobar in 2009 were likewise, at most, "idle chatter." *United States v. Lieberman*, 637 F.2d 95, 103 (2d Cir. 1980); *id.* at 102 ("The conversation as thus described by both [alleged cocon-spirators] smacks of nothing more than casual conversation about past events. It is difficult to envision how it would have furthered the conspiracy."). Courts have recognized that mere boasting about one's conduct does not further a conspiracy. *See, e.g.*, *United States v. Desena*, 260 F.3d 150, 157–58 (2d Cir. 2001) (refusing to admit testimony describing arson attempt two years after alleged crime it was "not made in furtherance of the conspiracy, and were merely joking references to a past event" and noting "it is difficult to construe casual storytelling in a bar, more than two years after the event, as anything but "mere idle chatter"); *United States v. Warman*, 578 F.3d 320 (6th Cir. 2009); *United States v. Urbanik*, 801 F.2d 692, 698-99 (4th Cir. 1986); *United States v. Cornett*, 195 F.3d 776, 784 (5th Cir. 1999); *United States v. Darwich*, 337 F.3d 645, 657-58 (6th Cir. 2003).

"how much did they give you?"  Borja: "[a] thank you"), *with* Ex. A (Escobar Dep. Tr.) at 54:24-55:3 (Escobar testifying that when he met with Borja in May and June 2009, Borja claimed Chevron was giving him "a lot of dough").[11]  Donziger's own counsel called the conversations between Escobar and Borja "pretty sleazy," while admitting that that they "do *not* discredit Chevron itself, and in fact corroborate them in a couple important respects."  Dkt. 1240-14 (Ex. 14) (emphasis in original).

Moreover, it cannot be said that any of Borja's hearsay statements is "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."  Fed. R. Evid. 807.  To the contrary, the most probative evidence of Borja's statements—that is, Borja's deposition testimony, as well as the transcripts and tapes already submitted as proposed exhibits by both sides, none of which features Escobar—speak for themselves.

In sum, Borja's statements are the type of statement the hearsay rule was designed to exclude.  Unless Defendants make an offer of proof that Escobar will offer admissible evidence other than Borja's hearsay statements, the Court should preclude Defendants from calling Escobar as a witness.

### III. The Court Should Preclude or Limit the Testimony of Donald Moncayo

At approximately 11:58 pm ET on October 30, Defendants provided an untranslated (Spanish-language) version of Moncayo's witness statement.  Moncayo is an employee of Selva Viva who, according to counsel for the LAPs, "has personal knowledge regarding ex parte contacts between Chevron representatives and judges."  Trial Tr. 1239:21-22.  He should be exclud-

---

[11]  *Compare also* Ex. C (Escobar Recordings) at 4 (Escobar: "which of your buddies knew?"  Borja:  "Nobody, but they weren't surprised") *with* Ex. A (Escobar Dep. Tr.) at 50:18-51:7, 53:10-54:10 (Escobar testifying that while visiting Borja he met several other men who were helping Borja make the Nuñez recordings).

ed because Selva Viva has defaulted in this action and Defendants have refused to produce any documents from Selva Viva or their other Ecuadorian agents and co-conspirators. Moreover, Moncayo's testimony regarding Chevron's supposed "ex parte contacts" will not be relevant to any claims or defenses in this action, as he has previously testified that he has no knowledge of what was discussed at any ex parte meetings between Chevron representatives and judges.

Moncayo was employed by defendant Selva Viva since either 2005 or 2007 through at least the date of his deposition in the Count 9 action in September 2011. Ex. D (Moncayo Dep. Tr.) at 21:9-18. Before that, he volunteered for, and was later employed by, defendant "the Frente." *Id*. at 14:8-25, 17:8-22, 18:25-19:7. Moncayo should not be permitted to testify here, because Selva Viva (as well as the Frente) has defaulted in this case. Dkt. 206-18. "'When a party is in default . . . the party himself has lost his standing in court, cannot appear in any way, cannot adduce any evidence, and cannot be heard at the final hearing.'" *Newhouse v. Probert*, 608 F. Supp. 978, 985 (W.D. Mich. 1985) (quoting *Moore's Federal Practice*, ¶ 55.03[2]); *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) ("a default is an admission of all well-pleaded allegations against the defaulting party"). Having defaulted in this action, Selva Viva should not be permitted to send its employee here to testify. *See Boyke v. Superior Credit Corp.*, No. 01-CV-0290, 2006 WL 3833544, at *2 (N.D.N.Y. Dec. 28, 2006) ("There was a time to controvert plaintiff's claims and defendant cannot elect to default and then defend on the merits. It cannot have its cake and eat it to[o].").

Further, the Court should exclude Moncayo because of Defendants' discovery abuses and refusal to produce documents from Ecuador. While Moncayo did appear for a deposition in the Count 9 action at the LAPs' request (Ex. E (Moncayo Dep. Notice)), the LAPs have refused to produce any documents from his current employer (Selva Viva) or his former employer (the

Frente).  As Moncayo stated in his Count 9 deposition, his observations of purported "ex parte"

contacts occurred in the context of his employment by Selva Viva.  Ex. D (Moncayo Dep. Tr.) at

26:11-21, 29:12-17, 58:5-59:15 (accompanying Frente attorney).  He further testified that the

LAPs' Ecuadorian attorneys—Pablo Fajardo, Julio Prieto, and Juan Pablo Saenz—are likewise

Selva Viva employees.  *Id*. at 127:4-22.  The production of Selva Viva documents would have

been essential to demonstrate the *ex parte* contacts that its employees engaged in with judges.

*See* Dkt. 1529 at 4 (noting that "Selva Viva . . . is an entity created by the ADF to administer liti-

gation funds and which also doubtless has responsive documents").  It would be unfair and undu-

ly prejudicial to permit Selva Viva employees to testify about their purported observations of

Chevron's supposed ex parte contacts, while Defendants refuse to produce any Selva Viva doc-

uments that would reveal their own misconduct.  *See id*. at 102–03 ("[T]he Court in its discretion

may infer from defendants' failure to produce documents in the possession of their attorneys and

agents that the evidence defendants refused to provide from their Ecuadorian attorneys and

agents would have been unfavorable to them.").

It is also telling that Moncayo's lengthy Count 9 deposition did not include any testimony

about ex parte contacts that could be considered "unclean hands."  Moncayo was "really una-

ware" whether Chevron's ex parte contacts were regarding procedural or scheduling matters,

"because the times that [he] was in and [he] had listened, it was just very brief words."  Ex. D

(Moncayo Dep. Tr.) at 69:5-17.  From Moncayo's testimony, it is apparent that each ex parte

meeting he described took place with the door to the judge's office open, or at least under cir-

cumstances in which Moncayo was able to see who was participating.  And on all but one occa-

sion, Moncayo was permitted into the office to join the conversation even though he is not an

attorney.  *Id*. at 59:23-60:8, 63:24-65:22, 192:5-24; 218:8-16.  Given this record, Moncayo does

not possess any relevant information about which this Court is not already aware.

Chevron and its witnesses have already acknowledged that Chevron's attorneys engaged, from time to time, in legal and permissible ex parte contacts with Ecuadorian judges regarding procedural and scheduling matters.  Ex. F (Chevron's response to interrogatories); Trial Tr. 696:12-697:21.  Moncayo's testimony that he is "really unaware" of whether Chevron has accurately characterized those meetings means that his testimony that he observed such meetings does not have "any tendency to make a fact more or less probable than it would be without the evidence."  Fed. R. Evid. 401(a).

Finally, even a cursory review of Moncayo's (untranslated) witness statement reveals that Defendants are offering him to testify about (a) Chevron's ex parte contacts with the court in Ecuador, and (b) the so-called "toxic tours" he conducted as a Selva Viva employee.  If necessary, Chevron will lodge its specific objections to Moncayo's translated witness statement after Defendants serve it, but it is already apparent that the Court should preclude Moncayo from  testifying about Chevron's *ex parte* contacts, for the reasons explained above.  And the Court should preclude Moncayo from testifying about his toxic tours, or his other observations of environmental conditions in Ecuador, because these observations are irrelevant to the claims and permissible defenses in this case.  *See, e.g.*, Dkt. 1321 at 12 ("[T]he existence of environmental harm in Ecuador, or the lack thereof, is not relevant to this case."); *see also* Dkt. 1615 at 5–7 (explaining the irrelevance of scientific evidence based on this Court's prior rulings).

### IV.    The Court Should Preclude Alejandro Ponce Villacís From Testifying About Irrelevant Topics

Ponce is an Ecuadorian attorney and one of Donziger's co-conspirators.  At the October 9, 2013, pre-trial conference, counsel for the LAPs provided the following preview of Ponce's anticipated testimony:

MR. GOMEZ:  Your Honor, Mr. Ponce would be speaking as to his involvement as counsel for the Ecuadorian plaintiffs at a particular time when we allege that Chevron was engaging in unclean hands conduct.

THE COURT:  Specifically what conduct?

MR. GOMEZ:  Specifically *filing frivolous motions before the Ecuadorian courts* to delay the proceedings and complicate the matter beyond the control and the capacity of the Ecuadorian court to handle.

THE COURT:  Anything else?

MR. GOMEZ:  He was also present during the *sting operation*, your Honor.

THE COURT:  What is the sting operation?

MR. GOMEZ:  This is the operation that Chevron collaborated in trying to set up Judge Nu[ñ]ez to look as though he was accepting bribes or willing to accept bribes to control the outcome of the case.

Ex. G (Oct. 9, 2013, Hr'g Tr.) at 10:2–18 (emphasis added).[12]

Testimony on either of these topics would be irrelevant and inadmissible.  *See* Fed. R. Evid. 402.  This Court has found Defendants' allegation that Chevron filed "frivolous motions before the Ecuadorian courts to delay the proceedings" does not support Defendants' unclean hands defense.  *See* Dkt. 348 at 24 n.69 ("The Court does not regard the allegation of the filing of too many motions, of allegedly baseless motions, of discovery delay, and the like in the Ecuadorian case as remotely approaching a sufficient claim of unclean hands.").  There is no other ground upon which Ponce's testimony on this issue could be relevant.

In addition, the record provides no basis to suggest that Ponce has any personal knowledge about an alleged "sting operation."  *See* Fed. R. Evid. 602.  The LAPs' counsel was presumably referring to the videotaped meetings involving Borja, Judge Nuñez, and others. While the LAPs' counsel asserted that Ponce "was present during the sting operation," the record

---

[12]    In their Rule 26(a)(1) disclosures, Defendants identified Ponce as being knowledgeable about the "Ecuadorian legal system."  Dkt. 1398-3 at 29; *see also* Dkt. 1398-3 at 24.

says otherwise.  These meetings were videotaped—yet Ponce does not appear in any of the videotapes, nor has any participant in the scheme ever suggested Ponce was there, or that he participated in any other meetings.  *See* PX 2531A-34A.[13]

Therefore, the Court should preclude Defendants from calling Ponce, or at the very least the Court should allow Chevron to depose Ponce and examine all his relevant documents.  *See generally* Dkt. 1529 (sanctioning Defendants after finding that they acted in "bad faith" in blocking Chevron's discovery of Ecuadorian documents and witnesses).  *Cf.* Dkt. 1486 at 6–7 (allowing Judge Zambrano to testify at trial, subject to his submission to a deposition and production of relevant documents).

Finally, the Court should exclude Ponce because of Defendants' discovery abuses and refusal to produce documents from Ecuador, which necessarily included Ponce's documents.

## V.    The Court Should Preclude the Testimony of Atossa Soltani Because Defendants and Amazon Watch Frustrated Chevron's Efforts to Obtain Discovery From Her

Amazon Watch and its Executive Director—Soltani—were percipient witnesses to many important events in Defendants' scheme, and active participants in aspects of its operation.  *See* Dkt. 283 (Chevron's Amended Complaint) ¶¶ 18(f)–(g), 75, 105–08, 214–24, 229–30, 233, 238–41, 250–59.  Soltani acted as a co-conspirator by, among other things, "repeatedly distribut[ing] false and misleading statements about Chevron and the Lago Agrio Litigation as part of the RICO Defendants' extortionate scheme," "work[ing] with Donziger, Yanza and other RICO Defendants to coordinate the public pressure campaign against Chevron," and "develop[ing] the

---

[13]    Chevron expects to move PX2531A-34A into evidence shortly.  These videos are also available online.  *See Meeting 1, Complete Video, Judge Nunez Misconduct, Chevron Ecuador Lawsuit*, http://www.youtube.com/watch?v=A8E-M0j2o-I; Meeting 2 , (last visited Oct. 30, 2013); *Complete Video, Judge Nunez Misconduct, Chevron Ecuador Lawsuit*, http://www.youtube.com/watch?v=St2BM7Sxde4; Meeting 3 (last visited Oct. 30, 2013); *Complete Video, Judge Nunez Misconduct, Chevron Ecuador Lawsuit*, http://www.youtube.com/watch?v=lY6PcqK6eWo; Meeting 4 (last visited Oct. 30, 2013); *Complete Video, Judge Nunez Misconduct, Chevron Ecuador Lawsuit*, http://www.youtube.com/watch?v=jsoEUDoQPq8 (last visited Oct. 30, 2013).

RICO Defendants' strategy of manipulating the Lago Agrio court through intimidation and collusion with the Republic of Ecuador." *Id.* ¶ 18(g).  Moreover, Soltani and other Amazon Watch personnel appear in hours of *Crude* footage.

Yet when Chevron sought to take a deposition and obtain document discovery from Amazon Watch in the Northern District of California, Amazon Watch resisted, opposing Chevron's subpoena on the ground that "Chevron cannot show the information it seeks is relevant."  Dkt. 1398-5 at 11; *see also* Dkt. 1398-6 at 3; *id.* at 9 (asserting that discovery regarding Amazon Watch's public opposition to Chevron has "nothing to do with Chevron's core claim that the Ecuadorian judgment is fraudulent").[14]  Amazon Watch also argued that Soltani would face an undue burden in preparing to testify.  *Id.* at 2 ("Attempting to prepare would require Ms. Soltani to review potentially tens of thousands of documents, and to consult with numerous current and former staff, consultants, and partners.").  Amazon Watch went so far as to claim to the Northern District of California that Chevron's request for discovery from it and Soltani was "largely a pretext to harass . . . Chevron's most persistent gadfly."  Dkt. 1398-5 at 2; *see also* Dkt. 1398-6 at 7 (suggesting that "Chevron is more interested in harassing a political opponent . . . than it is in getting information in a timely and cooperative fashion").  And when the Northern District of California adopted Amazon Watch's arguments and quashed Chevron's subpoena, but indicated it would consider a subpoena with a narrower scope, *see* Dkt. 1000 at 1, Defendants opposed Chevron's request to this Court to permit issuance of a more limited subpoena, *see* Dkt. 1018.

Now, after Defendants and their co-conspirator succeeded in frustrating Chevron's discovery efforts concerning Amazon Watch and Soltani through disingenuous claims of irrele-

---

[14]  When Chevron sought discovery from Amazon Watch, Amazon Watch informed the district court that Soltani would be its Rule 30(b)(6) representative.  Dkt. 1398-6 at 3.  Moreover, the document subpoena to Amazon Watch would have resulted in discovery of Soltani's relevant documents as well.

vance, burden, and purported harassment, Defendants have reversed course and seek to call

Soltani at trial, and in the process benefit from the "trial by ambush" that they helped to con-

struct. *Ginns v. Towle*, 361 F.2d 798, 801 (2d Cir. 1966). Defendants should not be permitted to

offer Soltani as a witness when—as the direct result of Defendants' efforts and those of their co-

conspirator, Amazon Watch—Chevron has had neither had the opportunity to depose her nor the

ability to examine her documents, thus limiting Chevron's ability to prepare a meaningful cross-

examination. *See, e.g.*, *United States v. IBM Corp.*, 66 F.R.D. 215, 218 (S.D.N.Y. 1974) ("[O]ne

of the purposes of discovery is to obtain information for use on cross-examination and for the

impeachment of witnesses.").

Accordingly, the Court should either preclude Defendants from calling Soltani or allow

Chevron an opportunity to depose Soltani and examine all her relevant documents. *Cf.* Dkt.

1486 at 6–7 (allowing Judge Zambrano to testify at trial, subject to his submission to a deposi-

tion and production of relevant documents).

Moreover, and at a minimum, the Court should require Defendants to make an offer of

proof as to what relevant, non-duplicative testimony based on personal knowledge they will seek

to elicit from Soltani. Amazon Watch has maintained that any relevant information that it or

Soltani might have was "discoverable from other sources." Dkt. 1398-6 at 12 ("The information

most relevant to the liability of the *defendants* is discoverable from other sources. To the extent

it seeks internal AW documents, or intra-organizational campaign documents, it has not shown

that they are relevant, given that Chevron's argument is that AW was part of a conspiracy spear-

headed by others."); *id.* at 7 (asserting that discovery sought from Amazon Watch would "clearly

duplicate" discovery obtained from "the parties to the litigation and a host of non-parties"). De-

fendants should explain what testimony based on personal knowledge Soltani has to offer, why

19

Donziger and Defendants' other witnesses will not already be providing the same information, and why any such non-duplicative testimony is relevant to the claims and defenses in this action.[15]

### VI. The Court Should Require Defendants to Make an Offer of Proof Regarding What Relevant, Non-Expert Testimony They Would Elicit from Juan Pablo Albán Allencastro

Defendants also seek to call Albán, one of Defendants' Ecuadorian law experts, as a witness, to testify about an issue "that relates to the Does." Trial Tr. 1239. The Court should require Defendants to make an offer of proof (under seal) explaining in detail what non-expert testimony they intend to elicit from Albán relating to the Doe witnesses (which could not happen in open court anyway under this Court's current protections for the Doe witnesses), why that would be relevant to any claim or defense in this case, and why good cause exists to permit them to offer this evidence now for the first time.

Beyond that limited issue, the Court's instructions at the final Rule 16 conference were clear that it was not obliged to hear live testimony from the parties' experts on Ecuadorian law. Ex. G (10/9/13 Hr'g Tr.) at 16:1–3. The Court instructed the parties: "If anyone is a proponent of one of those [foreign-law expert] witnesses and thinks I should hear the witness live, I want you to let me know. . . . You have *10 days* to let me know." *Id.* at 16:18–20, 17:7 (emphasis added). Defendants did not inform Chevron or this Court until 16 days later that they would call Albán to testify and have provided no justification for it.

In addition, Chevron moved to strike Albán's testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). *See generally* Dkt. 1400 at

---

[15] To the extent Defendants seek to offer Soltani's testimony in support of their unclean hands defense, it is unclear what relevant testimony Soltani would have that could support the version of this defense that remains in this case. *See* No. 11-cv-3718, Dkt. 229 at 24–26 (limiting unclean hands defense to "allegations of misconduct in or in relation to the Lago Agrio litigation" related to "claims of thwarting a site inspection, of attempts to frame one judge and to pressure another, of the use of a sham laboratory, and of alleged harassment of expert witnesses").

7–9 (Chevron's Motion in Limine No. 12).[16]  That motion remains pending.

## VII.    The Court Should Require a Proffer Demonstrating What, if any, Admissible Testimony Berlinger Can Provide on Topics That Are Relevant

Defendants also seek to call Joe Berlinger to testify at trial.  Berlinger is the filmmaker whom Donziger solicited to create *Crude*—the outtakes of which provided compelling evidence of Defendants' misconduct in the Ecuadorian litigation.  *See generally In re Application of Chevron Corp.*, 709 F. Supp. 2d 283 (S.D.N.Y. 2010) (ordering production of Crude outtakes), *aff'd Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011).  Berlinger was a witness to various aspects of the Lago Agrio proceedings; Defendants' improper contacts with and attempts to influence court-appointed experts, judicial officers, and other representatives, governmental officials, and agencies of the Republic of Ecuador; as well as the appointment of Cabrera and the creation of the Cabrera report.[17]

The Court should make clear that Defendants cannot ask Berlinger to testify about Donziger's (or others') purported state of mind, as such testimony would be improper speculation and inadmissible lay opinion, and would also call for inadmissible hearsay.  *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *see also Brown v. Keane*, 355 F.3d 82, 90 (2d Cir. 2004) (referring to the personal-knowledge requirement as "one of the most basic requirements of the law of evidence").  Nor may Berlinger be asked to defend the contents

---

[16]  At the behest of Patton Boggs, Albán authored a declaration in February 2011 addressing questions related to the propriety of the parties' interactions with court-appointed experts.  *See* Dkt. 154-5; Dkt. 1400-4 at 18:7–23:9. He provided a second declaration in February of 2013, in which he opined in the abstract on the propriety of ex parte contacts with judges.  *See* Dkt. 918-17 ¶¶ 30–32.  In neither declaration did Alban meaningfully apply the law to the facts of this case.  Indeed, at his deposition, Alban made clear that, were he to opine on the actual facts here, he would conclude that the LAPs' team not only violated Ecuadorian law, but also committed several crimes.  *See* Dkt. 1400-4 (Alban deposition tr.) at 133:10–19, 129:3–23, 66:14–67:3, 134:22–135:16.

[17]  In their Rule 26(a)(1) disclosures, Defendants identified Berlinger as being knowledgeable about the following:  "Factual information underlying allegations made in plaintiff's complaint; information concerning the filming of 'Crude.'"  Dkt. 1398-2 at 22; *see also* Dkt. 1398-3 at 5.

of *Crude* or testify about contamination he supposedly saw in Ecuador, both of which are irrele-

vant. *See, e.g.*, Dkt. 1321 at 12 ("[T]he existence of environmental harm in Ecuador, or the lack

thereof, is not relevant to this case."); Dkt. 679 at 10–11 ("The questions whether and why there

is pollution in the Oriente region and whether Chevron's experts were aware of that simply have

nothing to do with the case. . . . [T]his case is not an occasion to relitigate the merits of the pollu-

tion claims that were involved in the Ecuadorian case."); Dkt. 1615 at 5–7 (explaining the irrele-

vance of the underlying scientific evidence based on this Court's prior rulings and applicable

case law); *see also* Ex. G (10/9/2013 Hr'g Tr.) at 27:24–28:4 ("[F]or purposes of this trial no one

is to open on that subject at all and unless I rule otherwise nobody is to offer or seek to elicit evi-

dence on that subject without first advising your adversary and me and making an offer of proof

so that both sides have an opportunity be heard and I have an opportunity to rule.").

## CONCLUSION

For the foregoing reasons, the Court should preclude Defendants from calling witnesses

at trial whose testimony would be inadmissible.  In the alternative, the Court should ensure that

Chevron has a meaningful opportunity to respond to these witnesses, including depositions and

complete document discovery sufficiently in advance of their testimony.

Dated: October 31, 2013                           Respectfully submitted,
New York, New York

                                            /s/ Randy M. Mastro
                                         Randy M.  Mastro
                                         Andrea E.  Neuman
                                         GIBSON, DUNN & CRUTCHER LLP
                                         200 Park Avenue
                                         New York, New York 10166
                                         Telephone: 212.351.4000
                                         Facsimile:  212.351.4035

                                         William E.  Thomson
                                         333 South Grand Avenue

22

Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile:  213.229.7520

*Attorneys for Chevron Corporation*