UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEVRON CORPORATION,<br><br>    Plaintiff,<br><br>   v.<br><br>STEVEN DONZIGER *et al.*,<br><br>    Defendants. | 11-CV-0691<br><br>The Honorable Lewis A. Kaplan, U.S.D.J.<br>The Honorable James C. Francis, U.S.M.J. |

**DEFENDANTS' MOTION TO STRIKE**
**TESTIMONY OF WITNESSES**

Defendants move to strike the testimony of Ms. Sandra Elena. Chevron has brought a private RICO and fraud action against the Defendants; it has alleged specific bad acts, which it must prove. Through Ms. Elena, Chevron proposes to offer the most attenuated of propensity evidence—that Ecuador has a poor judicial system, and therefore the Court should conclude that it is more likely that a bribe occurred.[1]

1. **Ms. Elena's Testimony is Impermissible Propensity Evidence, With Limited Probative Value and Should be Stricken**

Ms. Elena repeatedly makes broad and sweeping statements such as "Ecuador is the worst performer in terms of judicial impartiality among all Latin American countries." *See* Direct Testimony of Sandra Elena at ¶¶ 3, 52, 54, 101, 104, and 106. These conclusions rest largely on "international indices, recognized standards of judicial conduct, statistics, and academic studies," *id.* at ¶ 9. Ms. Elena does not catalog instances of corruption in Ecuador; and, she is far from establishing that Ecuadorian courts respond

---

[1] The vast majority of Ms. Elena's testimony discusses the independence of the Ecuadorian judicial system. Direct Testimony of Sandra Elena ¶¶ 13 – 66 (concluding that "weak institutions, the inefficient legal framework, and the manipulation of the judiciary by recent political administrations have led to a lack of independence of the judicial system in Ecuador"). The independence of Ecuadorian courts, as a general matter, has no bearing on any right that Chevron has or could raise in this action. Whether political reforms or improvements could be made is irrelevant. This wide ranging attack on Ecuador is not relevant, highly prejudicial and must be stricken.

in a uniform or even similar fashion to opportunities for corruption or impartiality. Rather, her conclusions, based largely on other people's statements and publicized reports, are that: (1) some judges in Ecuador have been prosecuted for corruption, ¶ 80; (2) perceptions of corruption are high, ¶¶ 71-79; and (3) there is political involvement with the Judiciary that might affect independence and impartiality, ¶¶ 13-66.

Ms. Elena does not discuss or analyze the Lago Agrio litigation underlying this case; it does not appear that she has any knowledge of the litigation or that she has spoken with any person regarding the case. The only relevance of her testimony, then, comes from an inference that if studies show that the Ecuadorian judiciary lacks independence, judicial conduct in the Lago Agrio litigation was less likely to be impartial.

Common sense reveals that this testimony is of very limited probative value: she has established no causal link between any of her conclusions or supposed patterns and the case in Lago Agrio. The testimony is used to tar a proceeding without presenting any direct evidence of wrongdoing. On this ground alone, the testimony should be stricken. Fed. R. Evid. 402 ("Irrelevant evidence is not admissible"); Fed. R. Evid. 403 (relevant evidence is inadmissible where "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues . . . .").

This is the type of naked propensity evidence that is consistently disallowed. Fed. R. Evid. 404 Advisory Committee Notes, 2006 Amendments ("in a civil case evidence of a person's character is never admissible to prove that the person acted in conformity with the character trait"). Here, the "bad" character of the Ecuadorian judiciary is being used to prove that the Lago Agrio court "acted in conformity with the character trait." In discussing the limited use of character evidence under FRE 404(b), the Third Circuit has advised adopting "a more searching analysis which also focuses on the chain of inferences supporting the proffered theory of logical relevance." *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 191 (3d Cir. 2000) (finding that propensity evidence could not be used against a corporation).

Ms. Elena' testimony asks the Court to conclude that because other judges may have acted badly, Judge Zambrano is more likely to have acted badly. Such an inference is unsupported by legal authority or common sense.[2]

### 2. The Testimony is Based on Unreliable Methods and Evidence, and Therefore Should be Stricken

An expert is given "testimonial latitude unavailable to other witness on the 'assumption that the expert's opinion will have a reliable basis . . . ." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148, 119 S. Ct. 1167, 1174 (1999) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993)). To be reliable, an opinion should be: (1) based upon sufficient facts or data; (2) be the product or reliable principles or methods of analysis; and (3) and involve a principled application of those methods to the facts gathered. Fed. R. Evid. 702.[3] Ms. Elena's report and her direct testimony offered by Chevron fall well short of those standards.

Instead of developing an opinion based on tested scientific methodology or even factual analysis, Ms. Elena merely relates hearsay information to form her "expert opinions." *See e.g.*, ¶ 71 (Control of Corruption Index "captures *perceptions* of the extent to which public power is exercised for private gain" (emphasis added)); ¶ 75 (Transparency International's "Barometer" "examin[ing] the extent to which people perceive that corruption affects key public sectors"); ¶ 77 (*Corporacion Latinobarmoetro* public opinion survey "ask[ing] about the probability of being able to bribe a judge"). The probative value of this data as to a conclusion about actual systemic corruption is doubtful; this generalized hearsay is, moreover, utterly irrelevant to any analysis of conduct or bribery in the Lago Agrio litigation. It might have been helpful if Ms. Elena has interviewed people with experience in the Lago Agrio courts or with experience

---

[2] Ms. Elena mentions that the indices that she relies on "do not [even] directly measure corruption." ¶ 70. In and of itself, this evidentiary failing should defeat any relevance argument.

[3] As noted in the Advisory Committee notes accompanying FRE 702, the *Daubert* Court established a non-exclusive checklist for assessing the reliability of scientific expert testimony, involving: "(1) whether the experts technique or theory can be or has been tested--that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community." Fed. R. Evid. 702 Advisory Committee Notes.

litigating before one of the judges presiding in the Lago Agrio case, but Ms. Elena has not sought to do that. It may have even been helpful if Ms. Elena had attempted to explain how wider accounts of corruption logically mapped onto the Lago Agrio case, but she has also failed to do that. Her opinion is therefore useless to the Court and once again sapping the limited time and resources of this Court and the parties to this litigation.

3. **There is no Need for the Testimony, and It Runs a Substantial Risk of Embarrassing the United States and Interfering with Foreign Relations, and Therefore it Should be Struck**

While there is no absolute bar preventing federal courts from hearing cases that "touch[ ] foreign relations," courts should be mindful of "the potentially detrimental effects of judicial action" in cases where a foreign sovereign is impugned. *See Kadic v. Karadzic*, 70 F.3 232, 249 (2d Cir. 1995) (the "preferable approach is to weigh carefully the relevant considerations on a case-by-case basis"); *see also Konwaloff v. Metro. Museum of Art*, 702 F.3d 140, 145 (2d Cir. 2012) (act-of-state doctrine prevents federal courts form "passing on the validity of foreign actions" if so doing would "hinder rather than further" the foreign policy interests of the United States). In this very case, the Second Circuit has warned that "[i]t is a particularly weighty matter for a court in one country to declare that another's country's legal system is so corrupt or unfair that its judgments are entitled to no respect from the courts of other nations." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012).

Because of those concerns, a federal court should only undertake a generalized inquiry into the adequacy of quality of a foreign judicial system if it is necessary for the resolution of the claim. *See id.* ("[t]hat inquiry may be *necessary*, however, when a party seeks to invoke the authority of our courts to enforce a foreign judgment") (emphasis added). The element of necessity is absent here. The fraud and RICO claims that Chevron brings do not require this court to determine the general adequacy, impartiality or susceptibility to corruption of Ecuadorian judges. Therefore, this court should not wade into or entertain evidence discussing those facts.

### 4. Objection to Certain Paragraphs

In the alternative, and for the reasons described herein, the Defendants request that the court strike the following paragraphs from the Direct Testimony of Ms. Elena.

- The following paragraphs of the testimony are used as a conduit to introduce impermissible hearsay and should be stricken. *See* Fed. R. Evid. 703 ("Fact or data that are otherwise inadmissible shall not be disclosed . . . by the proponent of the opinion or inference unless the court determines that their probative value in assisting [evaluation of] the expert's opinion substantially outweighs their prejudicial effect."); *Rambus, Inc. v. Infineon Technologies AG*, 222 F.R.D. 101, 111-12 (E.D.Va. 2004) (preventing an expert from testifying to initial ALJ decision because it was otherwise inadmissible and risk of prejudice was greater than probative value). In this case, Chevron fails to call the fact witnesses relied upon by Ms. Elena that "support" her "findings" and so it cannot introduce that testimony as an end-run around the Defendants' right to cross-examine those witnesses regarding their conclusions about the Ecuadorian judiciary.
    - ¶¶ 3, 22-24, 27-35, 37-43, 45, 46, 48, 49, 50, 52, 54-56, 59, 61, 63-65, 67, 70-74, 76, 78-80, 83, 84, 88-91, 93, 94, 96, 97, 99-102, and 104-106.

- The following paragraphs should be stricken because the testimony includes legal conclusions or is based on hearsay which included a legal conclusion:
    - ¶¶ 3, 13-15 (including footnote 2), 18-22, 24-26, 29-41, 44-46, 49-52, 55, 57, 59, 61, 64-74, 78-80, 83, 84, 88-91, 93, 99-102, and 104-106.

### CONCLUSION

For the reasons mentioned above, the Court should grant Mr. Donziger's motion to exclude the testimony and expert report of Ms. Elena.

Dated: November 3, 2013                                         Respectfully submitted,

New York, New York


*s/ Richard H. Friedman*                                        *s/ Steven R. Donziger*
Richard H. Friedman                                             Steven R. Donziger
Friedman | Rubin                                                245 W. 104th Street, #7D
1126 Highland Ave.                                              New York, NY 10025
Bremerton, WA  98337                                            Tel: (917) 678-3943
Tel: (360) 782-4300                                             Fax: (212) 409-8628
Fax: (360) 782-4358                                             Email: StevenRDonziger@gmail.com
Email: rfriedman@friedmanrubin.com

*Pro Se*

*s/ Zoe Littlepage*
Zoe Littlepage                                                  *s/ Julio C. Gomez*
Littlepage Booth                                                Julio C. Gomez
2043A West Main                                                 GOMEZ LLC
Houston, TX  77098                                              The Sturcke Building
Tel: (713) 529-8000                                             111 Quimby Street, Suite 8
Fax: (713) 529-8044                                             Westfield, NJ 07090
Email: zoe@littlepagebooth.com                                  Telephone:  908.789.1080
                                                                Facsimile:  908.789.1080
                                                                Email:  jgomez@gomezllc.com
*s/ Steven R. Donziger*
Steven R. Donziger
245 W. 104th Street, #7D                                        *Counsel for Defendants Hugo Gerardo*
New York, NY 10025                                              *Camacho Naranjo and Javier*
Tel: (212) 570-4499                                             *Piaguaje Payaguaje*
Fax: (212) 409-8628
Email: StevenRDonziger@gmail.com

*Attorneys for Defendants Steven R.*
*Donziger, Law Offices of Steven R.*
*Donziger and Donziger & Associates,*
*PLLC*