UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
CHEVRON CORPORATION,
:
             Plaintiff,
:
   -against-
:   Case No.  11 Civ.  0691 (LAK)
:
STEVEN R.  DONZIGER, et al.,
:
             Defendants.
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# CHEVRON CORPORATION'S MOTION TO STRIKE INADMISSIBLE PORTIONS OF THE WITNESS STATEMENT OF KAREN HINTON


GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

**PRELIMINARY STATEMENT**

Among the first witnesses Defendants plan to call at trial is Karen Hinton, who for years acted as Donziger and the LAPs' public spokesperson. In that role, Hinton publicized far and wide Defendants' baseless allegations and falsehoods, through press releases, web- and blog-postings, and personal contacts. She targeted the media, governmental officials, regulatory agencies, Chevron shareholders, stock analysts, and the general public, among others. Hinton was willing to let Defendants "continue to use my name" to push the party line even when "no one [was] willing to put their name on anything." Ex. C. And she made it her specialty to quote herself in press-releases designed to look like news articles, which then linked to and quoted her own and Defendants' prior statements and releases as though these were objective sources. It is, therefore, fitting that Hinton's self-referential "Witness Statement" resembles nothing so much as a 15-page press release, is replete with single- and double-hearsay, and purports to offer expert opinion testimony about the supposed environmental conditions in Ecuador that the Court has already ruled irrelevant and that she is not competent to give. *See* Ex. A. That such a "Witness Statement" may be fitting, however, does not make it admissible, and the Court should strike the vast majority of its provisions. *See* Ex. B.

Hinton has no personal knowledge of most of "facts" about which she purports to testify, and no expertise to opine upon the scientific topics she attempts to inject. Her "beliefs"—based on documents she "reviewed" (*id.* ¶¶ 4, 8, 40, 41), persons with whom she "spoke" (*id.* ¶ 6), experts she "interviewed" (*id.* ¶ 8), information "explained to [her]" (*id.* ¶ 19), and "discuss[ions]" she had (*id.* ¶¶ 31, 37, 47)—is not itself relevant, and is founded on hearsay. And she has no qualifications to provide expert opinion, as she purports to do, about "Chevron's sampling data" (*id.* ¶ 18), the "levels of contamination" (*id.* ¶ 20), the appropriate test to detect "hydrocarbons in" samples (*id.* ¶ 21), or the propensity of "[p]roduction water" to contain "cancer-causing

chemicals" (*id.* ¶ 22), even if her belief is based on "spen[ding] a lot of time with the Plaintiff's environmental expert team" (*id.* ¶ 19). In fact, virtually the only item in Hinton's witness statement that she is qualified to testify about is that she has "no knowledge" of Defendants' activities in Ecuador. *Id.* at ¶ 12.

In fact, Hinton's Witness Statement is so rife with inadmissible testimony and unqualified expert opinions that Defendants are now indicating that, contrary to this Court's rules, they intend to conduct a live direct examination of Hinton in court. But there can be no question that Hinton is a witness under Defendants' control and is not testifying under the compulsion of subpoena. After all, in addition to Hinton having been an essential member of Defendants' team for years, she sat in the courtroom on the first day of trial until excluded under Rule 615, *and Defendants served Chevron with her Witness Statement*. As such, absent a good cause showing Defendants have not made and cannot make, Defendants' direct examination must be submitted in writing, as they implicitly admitted when they served her Statement.

Accordingly, Chevron submits line by line objections to Hinton's witness statement (Ex. B) and requests that the Court strike Hinton's inadmissible testimony.

## ARGUMENT

I. **Under This Court's Rules, Hinton's Direct Testimony Must Be In Writing**

For several years, Hinton represented the Amazon Defense Coalition and the Amazon Defense Fund and was the primary U.S. spokesperson for the LAPs. *See* Ex. A ¶ 2.[1] Hinton, therefore, is closely affiliated with Defendants and under their control. Under this Court's Individual Practices, her direct testimony must be submitted in writing. *See* Court's Ind. R. of Prac. at p. 5 ("Submission of direct testimony in affidavit or declaration form will be required

---

[1] Ex. D (stating Amazon Defense Coalition was Hinton client); Ex. E (quoting Hinton on behalf of Amazon Defense Fund).

of the parties and other witnesses under their control.").

Although Defendants provided Chevron with Hinton's written statement, Defendants informed Chevron two days later that they also intend to call Hinton to the stand to offer her direct testimony live. *See* Ex. F. But Defendants may not do so under this Court's rules, with which Chevron has complied. Defendants have designated her as a witness since August 31, 2013 (*see* Dkt. 1377 at 4), and she was present at trial—without a subpoena—until excluded by the Court (*see* Trial Tr. 46:14–15). There is no indication that a subpoena was required to compel her testimony. *Cf.* Court's Ind. R. of Prac. at 5 ("[D]irect testimony in affidavit or declaration form . . . are not to be used for adverse parties or for persons whose attendance must be compelled by subpoena."). Indeed, the fact that Defendants were able to have Hinton prepare a written statement in advance of trial demonstrates their control.

Nor do Defendants offer any "good cause" to allow Hinton to "supplement [her] statement by additional live direct testimony." *Cf. id.* ("For good cause shown, the witness then may be allowed to supplement his or her statement by any additional live direct testimony considered necessary by counsel."). The fact that Hinton's witness statement, when stripped of its hearsay, improper opinion, and irrelevant conjecture, is left with largely irrelevant material cannot be such "good cause," lest a party circumvent the Court's rule by submitting an improper statement. Accordingly, Defendants' direct examination should be limited to the admissible portions of Hinton's Witness Statement.

## II.   Hinton's Proffered Testimony Is Nearly Entirely Inadmissible Hearsay

Hinton's proffered witness statement consists largely of hearsay. Based on her supposed "review[ of] court documents, scientific studies, sampling data, technical reports, legal briefs and news articles," (Ex. A ¶ 8), as well as what she says Douglas Beltman of Stratus "explained to [her]" (*id.* ¶ 19), Hinton purports to testify about "levels of contamination" (*id.*

3

¶ 20), the appropriate test to detect "hydrocarbons in" samples (*id.* ¶ 21), the propensity of "[p]roduction water" to contain "cancer-causing chemicals" (*id.* ¶ 22), the "toxic[ity]" of production water (*id.*), the amounts of water discharged at the production sites (*id.*), and the methodologies employed by "U.S. academic experts" (*id.* ¶ 30). She recounts "conversations she had with Mr. Donziger" from which she purports to have gleaned the intentions of the LAPs. *Id.*, ¶ 11. And based on David Russell's "contact[]" with her, Hinton also testifies about the merits of Russell's dispute with Donziger and the quality of his report. *Id.* ¶ 33. In addition, Hinton's testimony about the extent of Defendants' ghostwriting of the Cabrera report is based on her "discuss[ions] with Mr. Donziger and the entire legal team," and her conversations "with the technical team." *Id.* ¶ 37; *see also* Ex. B.[2]

Indeed, Hinton's statement time and again quotes and then discusses documents that contain and are themselves hearsay.[3] For example, Hinton references an Amazon Watch press release, which quotes an Amazon Watch letter, to support her allegations about Chevron's position regarding Ecuador's trade preferences. *See id.* ¶ 18 & n.7 (citing DX 1102B, a November 30 2005 press release discussing letter Amazon Watch sent to Representative Bill Thomas); *see also* Ex. G. To support her opinions regarding Chevron sampling, Hinton cites to one of her own blog posts. *See id.* ¶ 21 & n.12 (citing DX 1102E, an April 29, 2010 press release from

---

[2] Hinton also attempts to equate Defendants' representations to this and other courts regarding Cabrera's supposed "independence," to various statements that Chevron purportedly made about the independence of its own experts. The Court previously declared "not helpful" such "attempt[s] to compare a cart load of apples to a truckload of oranges." Trial Tr. 110:7–9. Further, Hinton is careful not to actually testify that Cabrera *was* independent, only that, at the time, she "was comfortable saying he was an independent expert." Ex. A ¶ 36.

[3] A significant number of these exhibits also do not appear on Defendants' prior exhibit lists. *See* DX 1102B-1102H, DX 1102J-K, DX 1102M-O, DX 1102R-T, DX 1501-04, DX 1506-20 and DX 1522  The use of these new exhibits does not comply with either the Court's Individual Rules of Practice or the September 12th Pretrial Order. Dkt.1421 ("As set forth in the Court's required standard form of joint pretrial order, no exhibit not listed in the parties' respective exhibit lists may be used at trial except (a) for cross-examination purposes, (b) by plaintiff on rebuttal, or (c) if good cause for its exclusion from the pretrial order is shown.") Defendants have demonstrated no good cause for why these exhibits were not previously disclosed.

4

chevrontoxico.com, quoting Hinton and Pablo Fajardo); *see also* Ex. H.  A witness's repetitions of her own out of court statements are inadmissible.  *See United States v. Check*, 582 F.2d 668, 681 (2d Cir. 1978) ("[A] witness's prior statements offered to prove the truth of the matters asserted therein are not immunized from the proscriptive effect of the hearsay rule.").  Likewise, Hinton repeats verbatim allegations made in another Amazon Defense Coalition press release, which itself relies on a quote from Hinton in support of its allegations.  *See* Ex. A ¶ 30 & n. 19 (citing DX 1102G, a December 29, 2011 Amazon Defense Coalition press release); *see also* Ex. I.

If a witness repeats another's out-of-court lie a thousand times and offers it for its truth, that does not make evidence.  It remains inadmissible hearsay.  *See* Fed. R. Evid. 805 (discussing hearsay within hearsay).[4]  Accordingly, the Court should strike those portions of Hinton's Witness Statement identified as hearsay in Ex. B.  *See* Fed. R. Evid. 602, 801; *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 763–64 (2d Cir. 1991) ("[A] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *Castro v. City of New York*, No. 09 Civ. 3754 (PAE), 2012 WL 592408, at *4 (S.D.N.Y. Feb. 24, 2012) (excluding witness from trial because testimony would be "completely based on hearsay"); *Brutus v. Silverseal Corp.*, No. 06 Civ. 15298 (LAP), 2010 WL 3155167, at *1 (S.D.N.Y. July 30, 2010) (precluding introduction of witnesses who have no "personal knowledge of any disputed facts" and counsel could not explain "why their testi-

---

[4] It is not surprising that Hinton's testimony consists of recounting what she has heard from others—this has been her role since Defendants hired her.  In addition to issuing press releases on behalf of the LAPs since at least 2008 (her name is listed as the Ecuadorian plaintiffs "contact" on press releases dating back to 2004), Hinton helped coordinate the LAPs' lobbying efforts and communications with institutional investors.  *See* Ex. J (proposal to use pressure campaign reach "wall street analysts" and "Chevron shareholders"); Ex. K (Hinton email regarding conversation with Andrew Cuomo).  Hinton parroted what Donziger told her to say, even though she recognized that he was not trustworthy.  *See* Ex. L (Hinton telling Donziger "U r not trustworthy).

5

mony would not be inadmissible hearsay").

### III. Hinton Is Not Qualified to Offer the Expert Opinions Contained in Her Statement

Hinton purports to offer a variety of expert opinions. *See, e.g.*, Ex. A ¶ 20 (testifying about "levels of contamination"); *id.* ¶ 21 (the appropriate test to detect "hydrocarbons in" samples); *id.* ¶ 22 (the propensity of "[p]roduction water" to contain "cancer-causing chemicals"); *id.* (the "toxic[ity]" of production water); *id.* (the amounts of water discharged at the production sites); *id.* ¶ 30 (the methodologies employed by "U.S. academic experts"); *see also* Ex. B. But Defendants did not notice Hinton as an expert in this case (Exs. M, N), nor did they provide a report outlining the grounds for Hinton's opinions. *Cf.* Fed. R. Civ. P. 26(a)(2)(B).[5] And Hinton's testimony discloses no professional or educational qualifications on which she could base her "scientific" opinions.

Hinton purports to be an expert in several facets of environmental science because she "spent a lot of time with Plaintiff's environmental expert team" and "reviewed court documents, scientific studies, sampling data, technical reports, legal briefs and news articles." *Id.* These activities do not constitute the sort of training or expertise sufficient to label Hinton as any type of expert qualified to provide an opinion to the Court. *See* Fed. R. Evid. 702; *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004) ("To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony."); *see also United*

---

[5] In fact, Defendants did not initially notice Hinton as an individual with relevant information at all, in violation of the Federal Rules. *See* Fed. R. Civ. P. 26(a)(1)(A); Fed. R. Civ. P. 37(c) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless); *Degelman Indus. Ltd. v. Pro-Tech Welding & Fabrication, Inc.*, No. 06-CV-6346, 2011 WL 6754059, at *2 (W.D.N.Y. June 8, 2011) ("Plaintiff's knowledge of the existence of a potential witness does not satisfy the Rule 26(a)(1)(A) disclosure obligation; that obligation is fulfilled only when Defendants inform Plaintiff that they might call the witness in support of their claims or defenses.").

*States v. Haynes*, 729 F.3d 178, 195 (2d Cir. 2013) ("If the opinion of a witness rests in any way upon scientific, technical, or other specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701."). Hinton's opinions on the truth of Chevron's statements about the environmental conditions in Ecuador, the methodologies employed by the parties in the *Lago Agrio* litigation, or the health effects on the local population are incompetent, unsupported, and inadmissible.

## IV.    Hinton's Testimony Regarding Documents Is Inadmissible

In the course of Hinton's proffered testimony, she references and describes a wide array of documents, ranging from sampling reports (Ex. A ¶¶ 18, 20), to legal filings (*id.* ¶¶ 14, 15), to tapes of Diego Borja and Santiago Escobar (*id.* ¶ 40). Hinton's description of these documents is inadmissible.

Under the best evidence rule, Defendants must offer the underlying documents as evidence, not Hinton's memory of them. *See* Fed. R. Evid. 1001–04; *New York v. Saint Francis Hosp.*, 94 F. Supp. 2d 423, 428 (S.D.N.Y. 2000) (disregarding, under best evidence rule, testimony as to the subject matter of correspondence). Moreover, there is no indication the items Hinton purports to summarize "cannot be conveniently examined in court" or that Hinton's descriptions are fair summaries of the documents. Fed. R. Evid. 1006; *see also United States v. Citron*, 783 F.2d 307, 316 (2d Cir. 1986) (summaries must "fairly represent and summarize the evidence upon which they are based").[6] Hinton's opinion on what the various documents state is not admissible. *See Chisholm v. Sloan-Kettering*, No. 09 Civ. 8211 (VM), 2011 WL 2015526, at *9 (S.D.N.Y. May 13, 2011) (excluding summary that "misrepresents" the under-

---

[6] Indeed, as the underlying environmental conditions in Ecuador are not relevant in this action, even if Hinton's misleading summaries of technical data met the requirements of Rule 1006, they should still be excluded as irrelevant. *See* Fed. R. Evid. 401.

7

lying evidence and which only summarizes evidence available to the fact finder).

## V.     Hinton's Proffered Testimony Is Irrelevant to Unclean Hands

In addition, to the extent Hinton's testimony about Chevron's own public relations efforts (of which she has no unique basis for her knowledge on that topic) is intended to support Defendants' unclean hands theories, the Court has already found that allegations of a Chevron smear campaign do not "approach making out an unclean hands defense." *See Chevron v. Salazar*, No. 11 Civ. 3718(LAK), 2011 WL 3628843, at *9–10 (S.D.N.Y. Aug. 17, 2011) (rejecting allegations that do "not even approach making out an unclean hands defense" and are "contradicted by U.S. court record or otherwise are demonstrably false"; disposing of allegations that Chevron "attempt[ed] to influence witnesses" in Section 1782 proceedings and "engaged in a smear campaign"; limiting unclean hands theory to allegations "of thwarting a site inspection, of attempts to frame one judge and to pressure another, of the use of a sham laboratory, and of alleged harassment of expert witnesses"; reserving question whether Defendants must show injury but noting their "amended answer asserts no injury from any of this alleged misconduct").

## CONCLUSION

For the foregoing reasons, the Court should preclude Defendants from conducting a live direct examination of Hinton at trial and should strike each objectionable statement in Hinton's testimony.  *See* Ex. B.

Dated: November 4, 2013
New York, New York

Respectfully submitted,

    /s/ Randy M. Mastro
Randy M. Mastro
Andrea E. Neuman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue

New York, New York 10166
Telephone: 212.351.4000
Facsimile:  212.351.4035

William E.  Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile:  213.229.7520

*Attorneys for Chevron Corporation*

9

*Chevron v. Donziger*, No. 11 Civ. 0691-LAK (S.D.N.Y)

**Index of Exhibits to Chevron Corporation's Motion to
Preclude Testimony and Strike the Witness Statement of Karen Hinton**

Exhibit A: Direct Testimony Witness Statement of Karen Hinton, dated October 30, 2013.

Exhibit B: Chevron Corporations objections to the Direct Testimony Witness Statement of Karen Hinton.

Exhibit C: Email from Karen Hinton to Steven Donziger, dated May 5, 2011 and bearing bates stamp number WOODS00038487.

Exhibit D: Copy of the webpage from Hinton Communications "about us" page from November 3, 2013, available at url http:/hintoncommunications.com/aboutus.html.

Exhibit E: Article from Courthouse News Service, titled "Lawyer Must Comply with Chevron Subpoena" and dated October 21, 2010.

Exhibit F: Email from Zoe Littlepage, counsel for Steven Donziger, to Peter Seley, counsel for Chevron, and others, dated November 1, 2013.

Exhibit G: Press release from Amazon Watch titled "Chevron Lobbying Interferes with Ecuador Lawsuit, Warn Rainforest Leaders," dated November 30, 2005 and bearing the Defendants' exhibit label DX 1102B.

Exhibit H: Press release from Amazon Defense Coalition titled "Chevron Lawyers Commit Fraud to Undercount Oil Contamination in Ecuador," dated April 29, 2010 and bearing Defendants' exhibit label DX 1102E.

Exhibit I: Press release from Amazon Defense Coalition titled "Chevron Used Two Prominent U.S. Professors to Defraud Ecuador Court, Documents Reveal," dated December 29, 2011 and bearing Defendants' exhibit label DX 1102G.

Exhibit J: Email from Karen Hinton to Steven Donziger, dated April 28, 2008 and bearing bates stamp DONZ00026240, with attachment bearing bates stamp DONZ00026241.

Exhibit K: Email from Karen Hinton to Steven Donziger, dated July 11, 2008 and bearing bates stamp DONZ00038974.

Exhibit L: Email from Steven Donziger to Karen Hinton, dated May 5, 2009 and bearing bates stamp DONZ00030903.