UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
:
CHEVRON CORPORATION, :
:
            Plaintiff, :
:
  -against- :
: Case No. 11 Civ. 0691 (LAK)
:
STEVEN R. DONZIGER, et al., :
:
           Defendants. :
:
------------------------------------- x

# CHEVRON CORPORATION'S MOTION TO STRIKE INADMISSIBLE TESTIMONY OF STEVEN DONZIGER

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 3

    A.    Donziger's Testimony About Environmental Conditions in Ecuador is Not Relevant .................................................................................................... 4

    B.    Donziger's "State of Mind" Defense Does Not Create a "Free Floating" Admissibility Exception to Relevance .................................................................... 6

    C.    Donziger Should Not Be Afforded Another Opportunity to Change His Story ........................................................................................................................ 9

CONCLUSION ..................................................................................................................... 10

**PRELIMINARY STATEMENT**

Defendant Steven Donziger's witness statement is replete with inadmissible, irrelevant, and inflammatory testimony that should be stricken.  His submission is an affront to this Court and intended for an audience other than the trier of fact determining the merits of the parties' claims and defenses here.  Indeed, in fundamental respects, Donziger offers no defense on the merits to many of the most damning claims against him.  Instead, in direct contravention of this Court's directives and basic rules of evidence, Donziger devotes the bulk of his statement to recounting the alleged environmental conditions in Ecuador—a subject that is described in demonstrably false terms, that cannot absolve him of liability on any of the claims at issue here in any event, and that, consequently, this Court has ruled on multiple occasions "is not relevant to this case." Dkt. 1321 at 12; *see also* Dkt. 679 at 10.  His recitation contains many falsehoods based on nothing but innuendo and his own imagination.  Particularly offensive are his continued accusations about the remediation that TexPet carried out under the supervision of the Republic of Ecuador in the mid-1990s, and his lies about the roles of company lawyers who had to endure bogus Ecuadorian criminal charges simply for fulfilling the company's obligations under the governing agreements.  These unfounded accusations are as irrelevant as they are baseless, and for that reason, should be stricken.

Donziger's strategic decision to attempt to recast irrelevant testimony as "state of mind" evidence changes nothing.  Whether Donziger "believed" that Chevron's predecessor, TexPet, contaminated the Oriente or was "shocked" by testing methodologies standard among real scientists, these supposed "beliefs" are not defenses to attempting to extort or defraud Chevron through a U.S. pressure campaign based on lies about supposedly "independent" court expert reports and a ghostwritten judgment.  That Donziger chooses to devote so much of his direct testimony to these legally irrelevant subjects is confirmation of how little Defendants actually have

1


to say in defense of their own conduct.  At most, such statements provide a motive, rather than an excuse, for the wrongful acts that the evidence proves Donziger perpetrated again Chevron.

These fundamental legal and evidentiary failings run throughout Donziger's statement, rendering it largely inadmissible.  As Defendants have been signaling for some time, Donziger's statement adopts as its guiding principle the notion that every suspicion, rumor, and surmise is somehow relevant and admissible as alleged evidence of his "state of mind," prefacing virtually every statement with some phrase intended to convey that Donziger "believed" or "understood" whatever text then follows.  But this is both wrong and wrongheaded.  Donziger's free-floating, generalized "state of mind" has no bearing on any claim or defense at issue here.  And in those few sentences where he attempts to link his supposed "intent" to actions where it is, in fact, at issue, he fails to set forth admissible evidence of contemporaneous communications satisfying Rule 803(3).  Donziger purports to justify his now admitted "errors" and "confus[ion]" (Ex. A ¶¶ 15, 91, 103),[1] but stops short of a full allocution; and his present assessment of the legitimacy of his past acts is not relevant.  In what little space Donziger devotes to any issue of actual substance—such as the Cabrera fraud, the bribery of Zambrano and Guerra, and the ghostwriting of the judgment—he offers only a few conclusory and implausible denials that he did anything wrong at all.

Finally, Donziger claims his witness statement is "neither comprehensive nor exhaustive," and is only a draft, which he will "supplement" in a time and manner of his own choosing. Ex. A. ¶ 126.[2]  But if Donziger's statement is not complete by now, that is nobody's fault but his

---

[1] Shaded sections contained in Exhibit A should be stricken for the reasons set forth in this motion and the supporting exhibits.

[2] At 7:53 pm on November 14, Donziger provided a "close to final version" of his witness statement.  This came more than five weeks after it was originally due, at least a day after Donziger shared it with *The New York Times* (*see* Ex. D) and one day after the deadline under this Court's generous modified procedures (Dkt. 1501; [Footnote continued on next page]

own. While Donziger has "tried to ignore" Chevron's allegations (*id*. at p.1), this is no reason to countenance further delay. Donziger has known about Chevron's allegations and the majority of its evidence for nearly three years. He has received every accommodation from this Court and has already been granted multiple extensions. The Court should afford him no further opportunities to change his story. Donziger's witness statement in its current form should stand on its own, and the Court should strike much of it for the reasons stated here and in the exhibits supporting this motion. *See* Exs. B, C.[3]

## ARGUMENT

Donziger's witness statement boils down to various "state of mind" testimony, false allegations about environmental harm in Ecuador, and unsupported assertions about Texaco's and Chevron's purported misconduct. On the "merits," Donziger's purported defense fails. For instance, Donziger claims that Texaco's "remediation supervised by Reis Veiga and Perez Pallares was an absolute fraud " (Ex. A ¶ 57), but in fact Ecuador and Petroecuador signed off on the remediation plan, and the remediation work was closely monitored and supervised by Petroecuador, the Ministries of Energy and Environment, and outside, expert auditors. Dkt. 21-17 (Ex. 46), Dkt. 26-8 (Ex. 64). Defendants' then-expert, Douglas Beltman, found no "clear instances where Texpet did not meet the conditions required in the cleanup." Dkt. 398 ¶ 168. Former LAP experts Russell and Calmbacher said the same thing. Dkt. 31-14, Dkt. 401-6 at 18 (Ex. 2156). The Republic of Ecuador ultimately withdrew its fraud defense in a related litigation in

---

[Footnote continued from previous page]
see Dkt. 1711; Ex. A; Ex. E). Beyond ignoring this Court's deadlines and procedures, Donziger disregards the Court's admonitions that his witness statement not be a "trial brief[]" (Tr. 2014:16–17) and should not include "argument, materials of which [he] has failed to demonstrate personal knowledge, and other content for which no proper foundation has been laid" (Dkt. 1713 at 1).

[3] Exhibit B lists Chevron's objections to the specific paragraphs of Donziger's statement. Shaded sections contained in Exhibit B should be stricken for the reasons set forth in this motion and the supporting exhibits. Exhibit C lists Chevron's objections to the exhibits cited in Donziger's witness statement.

3

this District because it lacked any evidence. Dkt. 28-8 at 49 of 109. And Donziger's own client and one of the appearing LAPs, Hugo Gerardo Camacho Naranjo, sent a letter on behalf of his town to Texaco's CEO praising the remediation as "fully and satisfactorily completed." Dkt. 356-12 at 234.

But there is no need or justification for an examination of the merits of Donziger's statements, as the vast majority of his witness statement is inadmissible because none of these subjects is relevant.

### A. Donziger's Testimony About Environmental Conditions in Ecuador is Not Relevant

Donziger devotes much of his statement to discussing the alleged environmental conditions in Ecuador. *See, e.g.*, Ex. A ¶ 45 ("Chemical sampling results from the first sites inspected, from both Chevron and the plaintiffs, showed extensive levels of soil contamination that exceeded both Ecuadorian norms and the very lax clean-up standard that Texaco had negotiated in its remediation agreement with Ecuador's government."). As explained at length in Chevron's motion *in limine* #1 (Dkt. 1389), Donziger's lay testimony on the matter is irrelevant, as is any other evidence on this topic, because the claims at issue this case are not about the environment in Ecuador. To the contrary, this action consists of Chevron's claims regarding the racketeering and fraud committed by Donziger and his co-conspirators—involving a scheme to defraud Chevron that Defendants conceived, substantially executed, largely funded, and significantly directed from the United States.

This Court has already held that Chevron's claims do not implicate "the environmental conditions existing in the Oriente or the relative, substantive merit of scientists' expert opinions on that subject." Dkt. 1321 at 2; *see also id*. at 12 ("[T]he existence of environmental harm in Ecuador, or the lack thereof, is not relevant to this case."). Nevertheless, from the start of this

4

case, Defendants have tried to shoehorn in irrelevant environmental evidence under a variety of theories, and Chevron has explained why each theory fails. For instance, environmental evidence was not relevant to Donziger's counterclaim based on allegedly misleading representations to this Court because there could be no reliance where "Chevron's case is not about whether there is any good-faith dispute among scientists about environmental conditions in the Oriente, but rather, about fraud, extortion, and corruption so deep that it fundamentally denied Chevron due process and a fair trial." Dkt. 697 at 31 n.18. Nor were Defendants entitled to subpoena various Chevron experts to obtain this irrelevant environmental evidence. Dkt. 667 at 3, *see also* Dkt. 679 at 10–11. And the environmental evidence was not relevant to any unclean hands defense either because "none of Chevron's alleged misconduct bears any relationship to the question before this Court—*i.e.*, whether the Ecuadorian judgment is entitled to recognition— or is alleged to have caused any injury to the LAP Representatives." Dkt. 331 at 18; *see also Chevron Corp. v. Salazar,* No. 11-3718, Dkt. 229 (S.D.N.Y. Aug. 17, 2011) at 18–19. Nor is this evidence now relevant to Defendant's new theory of "wrongfulness." *See* Dkt. 1723. Indeed, as the Court has noted, the LAPs themselves initially contended that "scientific evidence presented in the Ecuadorian proceedings or the history of Texaco's business in Ecuador" was "irrelevant." Dkt. 679 at 10–11 (quoting *Chevron Corp. v. Salazar*, No. 11-3718, Dkt. 130 (S.D.N.Y. July 21, 2011) at 2–3).

Moreover, even if Donziger's environmental testimony were relevant, it consists of either hearsay or improper expert testimony by a lay witness. Donziger is not competent to testify about the meaning of laboratory sampling results, the proper means of taking samples, or the design and operation of oil product facilities. *See United States v. Haynes*, 729 F.3d 178, 195 (2d Cir. 2013) ("If the opinion of a witness rests in any way upon scientific, technical, or other spe-

5

cialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701."). And he is not competent to testify as to what someone else told him about those things. Fed. R. Evid. 802.

    **B.**    **Donziger's "State of Mind" Defense Does Not Create a "Free Floating" Admissibility Exception to Relevance**

Donziger's main strategy is to try to introduce otherwise inadmissible evidence to demonstrate his own "state of mind." Ex. A ¶ 13. But to be admissible, Donziger's state of mind must relate to a claim brought by Chevron, or to one of Donziger's defenses. The majority of Donziger's "state of mind" evidence does neither.

First, Donziger goes on at length about the purported bases for his belief that Chevron was liable for billions of dollars' worth of environmental contamination in Ecuador. *See, e.g.*, Ex. A ¶¶ 24 ("As I understood it at the time from various independent sources and my own observations, the contamination appeared to have been the responsibility of Texaco."), 60 (explaining the basis for "[m]y state of mind with regard to the negative health impacts of Chevron's operational practices in Ecuador"). Likewise, Donziger offers his feelings about Texaco's purported actions in the 1990s and earlier. *See, e.g.*, *id*. ¶ 38 ("I found particularly tragic the fact that we will never know the extent of Texaco's pollution or its internal knowledge because in the early 1970s the company adopted an express policy of not reporting environmental incidents and destroying existing spill records . . . ."), 47 ("In my mind, the evidence that Texaco had lied to Ecuador's government was accumulating."). But Donziger's beliefs about environmental contamination and his opinions about Texaco—even if sincere or backed up with objective evidence, which they are not—do not give him license to resort to fraud, bribery, and extortion in order to obtain a payout from Chevron. The Court has time and again noted this fundamental flaw in Donziger's "Robin Hood" defense. *See, e.g.*, Tr. 2196:13–17 ("And so in your submission, it

6

would be OK to issue press releases, which hypothetically were false and misleading, to generate economic pressure to induce the payment of money, as long as the party responsible for that had a laudable motive in his mind?"); *see also, e.g.*, *United States v. Markle*, 628 F.3d 58, 62–63 (2d Cir. 2010) ("[A] reasonable belief that victims owed defendants money is not a defense to Hobbs Act extortion."); Dkt. 1723.

Second, Donziger also seeks to testify about his "belief" and "understanding" concerning Chevron's alleged litigation misconduct during the Lago Agrio case. *See, e.g.*, Ex. A ¶¶ 29 ("This discovery powerfully affected my state of mind as the case against Chevron in Ecuador began."), 55 ("The documents they [Stratus] provided me starting in 2007 profoundly impacted my state of mind . . . ."), 57 (referring to memoranda from Stratus "that in my mind had a powerful impact on my state of mind . . ."), 85 ("This entire episode impacted my perspective on the litigation. It reinforced my suspicion that Chevron's legal team in Ecuador would do anything to undermine the progress of the trial, even if meant engaging in unethical or illegal behavior."). Assuming for the sake of argument that Chevron had acted improperly in the Lago Agrio case (it did not), evidence about such conduct may or may not be relevant to Donziger's unclean hands defense, to the extent Donziger was injured as a result. *See, e.g., PenneCom B.V. v. Merrill Lynch & Co., Inc.*, 372 F.3d 488, 493 (2d Cir. 2004). But Donziger's subjective beliefs about Chevron's actions during the Lago Agrio case have no relevance whatsoever—there is no "state of mind" component to the unclean hands defense. Thus, Donziger's lack of personal knowledge is fatal to this testimony.

Third, Donziger attempts to offer some of his own prior statements into evidence to show his "state of mind," but these statements are inadmissible hearsay. For instance, Donziger's quotations from his "personal notes" about Chevron's alleged litigation misconduct (*see* Ex. A ¶ 18)

7

do not come in under Rule 803(3)'s state-of-mind exception because Donziger admits that his notes were not contemporaneous with the event he seeks to prove. *See, e.g.*, *United States v. Taubman*, 297 F.3d 161, 164–65 (2d Cir. 2002) (statement upon returning from a meeting was not admissible as then-existing state of mind because "it was a statement about a meeting that had already happened"). On the contrary, Donziger admits: "I typically wrote the notes on airplane trips to and from Ecuador." Ex. A ¶ 14; *see* Fed. R. Evid. 803(3) (state-of-mind exception does not apply to "statement of memory or belief to prove the fact remembered or believed").[4]

Fourth, some of Donziger's "state of mind" evidence is inadmissible because it goes to his *current* state of mind—which is irrelevant to his fraudulent intent at the time he was committing the various acts at issue. For instance: "Although I often have been confused about the issues involved, *I now believe* the process used to create the executive summary of the Cabrera report was fundamentally consistent with Ecuador law, custom and practice as it was occurring in the *Aguinda* case." Ex. A ¶ 91 (emphasis added); *see also id.* ¶¶ 15 ("I believe my notes reflect that I always believed in the bona fides of the underlying evidence."), 69 (stating that "I have since learned" about Chevron's investigation).

If anything, Donziger's litany of "state of mind" testimony serves as a powerful admission of his misdeeds. If Donziger believed he had acted properly, he would not attempt to rely on an "ends justify the means" defense—and he would not be offering post hoc justifications such as "Chevron's deployment of these tactics reinforced in my own mind that our similar efforts were both legitimate and critical to the advocacy on our side of the case." Ex. A ¶ 13; *see also id.* at ¶ 59 (explaining that "[t]he existence and deadly consequences of Chevron's contamination of the Ecuadorian rainforest . . . was a key motivating factor as I sought justice for the af-

---

[4] Chevron is entitled to offer Donziger's notes against him as a statement by a party-opponent under Rule 801(d)(2).

8

fected communities in the *Aguinda* case."). At this point, it is clear that Donziger has no answer to Chevron's allegations or evidence. Rather, he contends that because he thought he was attacking "one of the most powerful companies on the planet" (*id.* ¶ 7) which has pursued "the most well-funded corporate retaliation campaign in history" (*id.* ¶ 11) and has a "history of corruption in the Ecuador proceedings" (*id.* ¶ 88), and because he is "assisting persons who lack means and power to achieve accountability for wrongs done to them" (*id.* ¶ 3), that *any and all means were justified*. Donziger is wrong and his testimony is inadmissible, but the fact that he even makes this argument confirms his wrongful conduct.

      **C.**      **Donziger Should Not Be Afforded Another Opportunity to Change His Story**

Donziger complains that he has "not been able [to] dedicate sufficient time and resources to fully respond to all the issues that [he] might." Ex. A ¶ 126.[5] Nevertheless, Defendants have enjoyed an extra five weeks to draft this statement after the Court modified its rules. *See* Dkt. 1501. Rather than use that ample time to work on his statement, however, Defendants have seen fit to devote their legal resources to filing repetitive and meritless motions. *See* Dkts. 1521, 1523, 1525, 1558, 1590, 1592, 1593, 1600, 1601, 1640, 1645, 1646, 1647, 1660, 1665, 1699.[6]

Now, Donziger seeks to grant himself a further extension to come up with more irrelevant and inflammatory testimony. The Court should not countenance Donziger's delay tactics.

---

[5] He also unilaterally "respectfully reserve[s] the right to address any issues [he] may have missed in a supplemental filing of this statement or an additional statement and to address any such issues in direct testimony before . . . cross-examination." *Id.* Donziger fails to explain the source of this "right" or why additional *direct* testimony, and not redirect limited to the scope of cross, would be appropriate just as with any other witness.

[6] Donziger begins his testimony with a legal argument "challeng[ing] at the most fundamental level the legitimacy of this proceeding and the appropriateness of the Court's decision to take this case to trial," attacking the Court for imaginary "bias," and declaring that his statement is not "a waiver of any argument or position that the Donziger Defendants have with respect to Chevron's allegations" or a "waive[r] [of his] objections based on the attorney client and work product privileges." Ex. A ¶¶ 1–2. Donziger's arguments are meritless for the reasons long ago explained, and affirmed by the Second Circuit. *See Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393, 395 (2d Cir. 2010) (upholding Court's order finding waiver of Donziger's attorney client privilege); Dkt. 1630 (Second Circuit Court of Appeals' mandate disposing of Defendants' latest petition for writ of mandamus and request for reassignment).

On the contrary, the Court should prohibit Donziger from submitting any statements differing from that provided to Chevron on November 14, 2013.  *See, e.g.*, Fed. R. Evid. 611(a) ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . avoid wasting time.").

## CONCLUSION

For these reasons, the Court should strike the inadmissible portions of Donziger's witness statement identified in Exhibits A and B.  Further, the Court should exclude the inadmissible exhibits cited by Donziger for the reasons identified in Exhibit C.

Dated: November 15, 2013　　　　　　　　　　　Respectfully submitted,
New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　　　　/s/ Randy M. Mastro
　　　　　　　　　　　　　　　　　　　　　　Randy M. Mastro
　　　　　　　　　　　　　　　　　　　　　　Andrea E. Neuman
　　　　　　　　　　　　　　　　　　　　　　GIBSON, DUNN & CRUTCHER LLP
　　　　　　　　　　　　　　　　　　　　　　200 Park Avenue
　　　　　　　　　　　　　　　　　　　　　　New York, New York 10166
　　　　　　　　　　　　　　　　　　　　　　Telephone: 212.351.4000
　　　　　　　　　　　　　　　　　　　　　　Facsimile:  212.351.4035

　　　　　　　　　　　　　　　　　　　　　　William E. Thomson
　　　　　　　　　　　　　　　　　　　　　　333 South Grand Avenue
　　　　　　　　　　　　　　　　　　　　　　Los Angeles, California 90071
　　　　　　　　　　　　　　　　　　　　　　Telephone: 213.229.7000
　　　　　　　　　　　　　　　　　　　　　　Facsimile:  213.229.7520
　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Chevron Corporation*

*Chevron v. Donziger*, No. 11 Civ. 0691-LAK (S.D.N.Y)

**Index of Exhibits to Chevron Corporation's Motion to
Strike Inadmissible Testimony of Steven Donziger**

Exhibit A:   Direct Testimony of Steven Donziger with shaded portions reflecting inadmissible testimony.

Exhibit B:   Chevron's objections to the Direct Testimony of Steven Donziger.

Exhibit C:   Chevron's objections to the exhibits cited in the Direct Testimony of Steven Donziger.

Exhibit D:   Article titled "Lawyer Concedes Mistakes in Chevron Case" by Clifford Krauss, appearing in the New York Times on November 13, 2013.

Exhibit E:   Email from Steven Donziger to Randy Mastro and others, with subject line "Donziger Witness Statement" and dated November 14, 2013.