**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                        :

CHEVRON CORPORATION,          :

           Plaintiff,        :

       v.               :   11 Civ. 0691 (LAK)

STEVEN DONZIGER, *et al.*,      :

           Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CHEVRON CORPORATION'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION BY ORDER TO SHOW CAUSE FOR AN ORDER REQUIRING
THAT ANYONE CLAIMING PROTECTION OVER MATERIALS
SUBPOENAED FROM DONALD RAFAEL MONCAYO JIMENEZ COME FORTH
AND GIVE REASONS, PRIVILEGES OR OTHERWISE, WHY SUCH DOCUMENTS
SHOULD NOT BE PRODUCED TO CHEVRON IMMEDIATELY**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ......................................................................................................... 4

A.      No Work Product Protection is Available for ERI, AW, RAN, or Others With
        Respect to Mr. Moncayo's Responsive Documents ........................................ 5

        1.      ERI Fails to Identify the Basis for Any Work Product Protection ......... 5

        2.      Chevron Has a Substantial Need for the Materials at Issue .................. 5

        3.      Any Assertion of Work Product Protection Has Been Waived .............. 7

        4.      The Crime Fraud Exception Vitiates any Available Work Product
                Protection ........................................................................................ 8

B.      Chevron is Not Collaterally Estopped from Seeking Mr. Moncayo's Documents ........... 10

C.      Chevron's Subpoena to Mr. Moncayo Does Not Implicate Any Third Parties'
        Free-Association Rights .............................................................................. 12

CONCLUSION .................................................................................................... 14

## PRELIMINARY STATEMENT

Chevron Corporation ("Chevron") respectfully proceeds by order to show cause to re-solve any purported claims of privilege asserted by anyone seeking to prevent one of Defend-ants' witness, Mr. Donald Moncayo, from complying with a valid subpoena and turning over highly relevant documents and other materials to Chevron, for, among other things, possible use in Chevron's cross-examination of Steven Donziger or in the rebuttal case that Chevron must put on in a matter of days.

On November 12, this Court heard testimony from Mr. Moncayo, one of Defendants' closest collaborators and a former employee of the Amazon Defense Front, a current Selva Viva employee, and the president of the Assembly of the Affected ("Assembly"). Mr. Moncayo testi-fied that his computer contains emails and other documents relevant to this action and was locat-ed in his hotel room here in New York. Tr. at 2102:1-2103:23. Mr. Moncayo agreed that Chev-ron could review these materials, requesting only that nothing be erased: "Q. You have those documents on the computer back in your hotel room in New York, right? A. Documents? My computer is there. I have no fear that you can take a look at it. Just don't erase anything that is there." *Id.* at 2109:23-2110:2. Chevron then served Mr. Moncayo with a subpoena seeking the production and imaging of Mr. Moncayo's computer by 6 pm on November 12. Ex. 1.

Before the start of the trial day on November 14, Chevron and Mr. Moncayo agreed to the following procedure: (1) Mr. Moncayo's attorney would file a copy of Mr. Moncayo's hard drive with the Court, under seal (now Dkt. 1716); (2) Chevron would provide a list of search terms to Mr. Moncayo's attorney (which has happened); (3) Mr. Moncayo's attorney would filter the documents on Mr. Moncayo's hard drive and email account per the search terms before over-seeing a document-by-document review; (4) Mr. Moncayo's attorney would produce responsive

materials to Chevron on Monday, November 18; (5) Mr. Moncayo's attorney would produce a

log listing all responsive materials subject to claims of privilege or protection by November 18.[1]

Chevron and Moncayo's attorney later agreed that Chevron would pay for a mutually agreed

third-party vendor to run search terms on Moncayo's hard drive.

On November 15, EarthRights International ("ERI") interjected on behalf of itself, Ama-

zon Watch ("AW"), and Rainforest Action Network ("RAN"), asserting that Mr. Moncayo's

hard drive included "possible attorney work product and First Amendment Protected communi-

cations." Exs. 2-3.  ERI demanded that before Mr. Moncayo produce his responsive documents

to Chevron pursuant to the subpoena, ERI be allowed to review a subset of the documents—

those containing search terms such as "Amazon /2 Watch," "Rainforest Action Network," Earth

/3 Rights," and "Mitch"—and instructed Mr. Moncayo's counsel to withhold these documents

subject to listing them on a privilege log.  *Id*.  ERI then purported to lodge a generalized

Rule 45(d)(2)(B) objection to any such documents.  Ex. 4.

Defendants have not claimed any privilege or work product over Mr. Moncayo's docu-

ments in response to the subpoena.

ERI's demand is both procedurally and substantively deficient.  The vague and unsub-

stantiated "privileges" and "work product" issues raised by ERI are deficient on their face, and

the Court should order Mr. Moncayo to produce all of the materials immediately per the agree-

---

[1]  *See* Tr. at 2347:8-23 ("MR. MASTRO:  Three other issues for this morning.  First, I wanted to report
to the Court on Mr. Moncayo's hard drive imaging.  Mr. Moncayo's attorney I believe is here in
court.  The mirror imaging of the hard drive was accomplished and filed with the court.  There was
also an imaging of his e-mail account.  His attorney is someone known to me from past lives, both of
us having been at the U.S. Attorney's Office, so I am accepting his representations.  He has mirror
imaged Mr. Moncayo's e-mail account and represented to me that he will be reviewing the e-mail ac-
count, that the e-mail account was not separately filed with the clerk's office, but he has represented
to me that he will, with that mirror image review the e-mail account and produce any responsive doc-
uments to us and/or a privilege log on Monday.  So I am accepting that representation and we are
willing to proceed on that basis vis-a-vis Mr. Moncayo.").

2

ment with Mr. Moncayo's attorney.  This Court long ago ordered these and other materials from Ecuador produced to Chevron in discovery.  Defendants succeeded in thwarting that discovery, as the Court outlined in its sanctions order.  *See* Dkt. 1529.  But now that the materials are present in this District, there is no legitimate reason for Mr. Moncayo not to produce them.

To the extent any person or entity purports to claim a privilege with respect to any of these documents, the Court should order any such claim be made immediately and with specificity, subject to an expedited process.  As outlined in the Proposed Order to Show Cause, Chevron requests that this Court order Mr. Moncayo to produce *all* responsive materials to Chevron by 12:00 p.m. on Monday, November 18.  ERI or anyone else wishing to claim a privilege or protection over any of the documents should be ordered to show cause by noon on Tuesday, November 19 why the objected-to documents should not be released to Chevron for all purposes. All objections must be specific and done on a document-by-document basis.  Chevron shall have until noon on Wednesday November 20 to file any reply.  Chevron will sequester any documents over which a timely assertion of particularized privilege or protection is made until such time as the Court resolves the dispute.  Alternatively, the Court should order Mr. Moncayo to file with the Court, under seal, all responsive documents being withheld from Chevron on a claim of privilege or work product protection.

Chevron moves by order to show cause rather than regular motion because the materials in Mr. Moncayo's possession are relevant to the ongoing trial, which is drawing to a close.  Actions that Mr. Moncayo took in the scope of his employment or association with the Amazon Defense Front, Selva Viva, and/or the Assembly are attributable to the LAPs for purposes of determining liability.  The documents and materials on Mr. Moncayo's hard drive and in his email account should be highly relevant, and it is crucial that they be provided to Chevron immediately

so that they may be factored into Chevron's case—including its cross-examination of Donziger and its rebuttal case.[2] Immediate judicial intervention is warranted for the additional reason that late yesterday evening—long after arrangements regarding the production of Mr. Moncayo's documents had been made—Chevron was notified by the LAPs' counsel, Mr. Gomez, that Mr. Moncayo's attorney would be withdrawing "due to a lack of funds." Ex. 6. Beginning "asap" Mr. Gomez will be representing Mr. Moncayo. *Id.* Mr. Gomez indicated that he had received a draft privilege log and was "working hard to catch up on the responsiveness review, privilege review, etc…," but he did not indicate whether he would be providing the documents to Chevron under the timetable previously agreed to by Mr. Moncayo's counsel. *Id.*

## ARGUMENT

ERI demands that Mr. Moncayo's counsel not produce any responsive documents that contain search terms associated with ERI, AW, and RAN. Exs. 2-4. ERI seeks the same treatment for documents containing the search terms "Marissa OR Marisa" dated before September 1, 2013, explaining that "Attorney Marissa Vahlsing was a legal fellow with [ERI] for two years until September 2013, and worked on matters relating to the Lago Agrio litigation." Ex.3. ERI's demand is both procedurally and substantively improper. It fails to identify any plausible basis for asserting work-product protection over these documents. And in any event, any such protection has been waived, is overcome by Chevron's substantial need, and is vitiated by the crime-fraud exception. Nor is there any conceivable "collateral estoppel" argument here based on the Northern District of California's quashal of Chevron's prior subpoena to AW. Likewise, ERI

---

[2] In the meet and confer correspondence, ERI suggested that the parties here adopt the same procedure used in the context of Chevron's subpoena to Trillium Asset Management, where ERI was allegedly permitted to review several categories of documents over which Amazon Watch, RAN, and Simon Billenness asserted privilege. Ex. 4 (11/15/2013 Email from Marco Simons). While under other circumstances, this procedure might warrant further discussion, the exigent circumstances created by the impending close of the trial render it impracticable. In fact, with the Trillium Management production, this procedure delayed the production of documents to Chevron by several months.

has not articulated any viable First Amendment "privilege" that it could possibly assert with re-spect to documents on Mr. Moncayo's hard drive or in his email account.

**A.    No Work Product Protection is Available for ERI, AW, RAN, or Others With Re-spect to Mr. Moncayo's Responsive Documents**

   **1.    ERI Fails to Identify the Basis for Any Work Product Protection**

The attorneys at ERI, which is not a party to this litigation, do not purport to represent Mr. Moncayo.  On the contrary, Mr. Moncayo has his own counsel in these proceedings.  And ERI's letter does not claim that any attorneys at ERI, AW, or RAN provided legal advice to Mr. Moncayo at any point—in fact the letter does not identify any attorney at all at AW or RAN—and none of these third parties purports to invoke the attorney-client privilege.

ERI claims that Mr. Moncayo's documents contain "work product" of ERI, Aw, or RAN. But ERI fails to explain how any documents on Mr. Moncayo's hard drive possibly could have been ERI's, AW's, or RAN's work product "prepared in anticipation of litigation or for trial by or for" Donziger, the LAPs, or their "representatives."  Fed. R. Civ. P. 26(b)(3)(A).  Indeed, es-pecially with respect to AW and RAN, which do not purport to be legal organizations but claim to be concerned about protecting "attorney work product" (Ex. 2), it is unclear what "attorney's" thoughts or mental impressions could be reflected in communications with Mr. Moncayo.  *See* Fed. R. Civ. P. 45(d)(2)(B) ("If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it."); *Williams v. City of Dallas*, 178 F.R.D. 103, 115 (N.D. Tex. 1998) (discussing whether the failure to comply with Rule 45(d)(2) results in a waiver of those protections).

   **2.    Chevron Has a Substantial Need for the Materials at Issue**

Even assuming for the sake of argument that ERI, AW, or RAN could assert a plausible work product objection over Mr. Moncayo's responsive documents, Chevron has a "substantial need" for them, which overcomes the protection. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii); *see also* Dkt. 1529 (sanctions order). Mr. Moncayo is associated with three organizations integral to Defendants' fraud and extortion scheme—the Amazon Defense Front, Selva Viva, and the Assembly. Mr. Moncayo's materials are therefore "highly relevant" to establishing Defendants', particularly the LAPs', wrongdoing. *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Cv. 8144, 2008 WL 2941215 at *3 (S.D.N.Y. July 30, 2008).

In addition, Chevron has demonstrated that it has no other means of securing the discovery at issue. Despite repeated requests, the LAPs have refused to produce these very documents, all of which are under their "control" and all of which they have been ordered to produce. *See* Dkt. 1529 at 94. When Chevron propounded a subpoena to AW, AW refused to produce any materials it might have had regarding Mr. Moncayo, suggesting such materials are available through "other sources." Dkt. 1398-6 at 14. By calling Mr. Moncayo to voluntarily testify in this case and bringing his computer and emails within the jurisdiction of this Court, Defendants voluntarily provided that "other source," and what now appears to be the *only* available source, for obtaining this important discovery. It would be nearly impossible for Chevron to obtain these materials elsewhere, given that "Defendants and/or their allies have resisted discovery to an astonishing degree by tactics including by refusing to produce responsive documents located in Ecuador, bringing a secret and collusive Ecuadorian lawsuit to obtain a court order barring their Ecuadorian agents from complying with document discovery requests, refusing to appear for depositions, and invoking frivolous privilege objections to block and delay discovery." Dkt. 809 at 1–2.

6

### 3.      Any Assertion of Work Product Protection Has Been Waived

Moreover, any available work-product protection for ERI, AW, RAN, or anyone else has been waived by disclosing these materials to Mr. Moncayo in the first instance.  *See United States v. Nobles*, 422 U.S. 227, 239, 95 S.Ct. 2160, 2170 (1970) (work product protection may be waived).  It is well settled that any disclosure inconsistent with maintaining secrecy from adversaries should be deemed a waiver.  *GAF Corp. v. Eastman Kodak Co.*, 85 F.R.D. 46, 51 (S.D.N.Y. 1979); *see also Grumman Aerospace Corp. v. Titanium Metals Corp. of Am.*, 91 F.R.D. 84, 89 (E.D.N.Y. 1981) (if a disclosure of work product substantially increases the possibility that the opposing party could obtain the information, the work product loses its immunity).

Chevron sought these very same materials from Defendants in discovery in 2012.  Mr. Moncayo is long-time employee of Selva Viva; a member and president of the Assembly; and a former employee of the Amazon Defense Front.  These organizations purport to be "agents" or "representatives" of the LAPs and worked closely with Donziger throughout the Lago Agrio litigation and the RICO litigation, and they continue to work on the enforcement actions.  *See* Dkt. 1700-3 (Ex. C) ¶ 13.  On June 7, 2012, Chevron served requests for production on the LAPs and Donziger that specifically sought, among other things, documents "in the possession, custody or control of [the LAPs' and Donziger's] agents, attorneys or representatives" in Ecuador.  Dkt. 895-1 (Exs. 3504-3507).  As this Court has recognized, documents sought by Chevron were in the physical possession, custody, or control of both the LAPs' Ecuadorian Lawyers and certain non-lawyer allies, including Luis Yanza, the Amazon Defense Front ("ADF"), and Selva Viva. Dkt. 1529 at 2-3.

While responsive documents in Mr. Moncayo's possession should have been produced more than a year ago, the LAPs and Donziger time and again refused to produce any Ecuadorian

documents.  Dkt. 562 at 1 n.1.  On February 13, 2013, this Court "grant[ed] Chevron's motion [to compel] (Dkt. 562) in all respects."  Dkt. 787.  The Court ordered the LAPs and Donziger to "produce all responsive documents that are in the possession, custody or control of their Ecuadorian attorneys and agents."  *Id*.  When they failed to do so, Chevron moved for and received sanctions, with this Court finding that "defendants have practical control over the responsive documents ordered produced by the February 11 Order and that they have not produced them as required.  Indeed, they have not made a good faith effort to comply.  Instead, they have sought to evade their discovery obligations and the Court's order."  Dkt. 1529 at 95.  Needless to say, Defendants did not log any of Mr. Moncayo's documents.

Under these circumstances, ERI, AW, RAN, and anyone else would have been aware that the LAPs have long been under a court order to produce Mr. Moncayo's materials.  If anyone sent Mr. Moncayo any protected "work product" materials, such communications would have "substantially increase[d]" the opportunity for Chevron to obtain that information.  *Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211, 214 (S.D.N.Y. 2009) ("Protection is thus forfeited when work product materials are either given to an adversary or used in such a way that they may end up in the hands of an adversary." (internal quotations omitted)); *see also United States v. Massachusetts Institute of Tech.*, 129 F.3d 681 (1st Cir. 1997).  Any available protection for these materials under the work product doctrine has therefore been waived.

### 4.   The Crime Fraud Exception Vitiates any Available Work Product Protection

Further, Mr. Moncayo—along with his employer, Selva Viva, and the Assembly—is an active participant in the ongoing scheme to extort billions of dollars from Chevron.  Any claim of protection over his documents is vitiated by the crime fraud exception.  *See United States v.*

*Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997); *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 452-53 (S.D.N.Y. 2011).

This Court has already found "there is more than a little evidence that Donziger's activities . . . come within the crime-fraud exception to both the privilege and to work product protection." *In re Chevron Corp.*, 749 F. Supp. 2d 141, 167 (S.D.N.Y. Nov. 10, 2010), *aff'd* 409 Fed. Appx. 393 (2d Cir. 2010); *see also* Dkt. 571 at 4–5 ("Certainly the probable cause prong has been satisfied with respect to some subjects of inquiry." (citations omitted)); Dkt. 905 (making various crime-fraud findings in the context of the Patton Boggs subpoena). The materials that Chevron seeks from Mr. Moncayo would likely be relevant to and in furtherance of several of the crime-fraud categories at issue and would provide further evidence of the misconduct being carried out by Defendants and their co-conspirators, including Mr. Moncayo's employer Selva Viva and the Assembly.

To the extent ERI is seeking to shield the communications between former ERI attorney Marissa Vahlsing and Mr. Moncayo, his own testimony reveals probable cause to find that these communications were in furtherance of a fraud or crime. According to Mr. Moncayo, Fajardo and "[t]he lawyer Marissa from the team [in the U.S.]" called him to assist in drafting his witness statement and asked him to get in touch with Ms. Calva, another witness for Defendants, so that he may coordinate with her and share a copy of his witness statement. Tr. at 2099:19-2101:7. Mr. Moncayo did as he was asked and went to speak with Ms. Calva at her father's office. This not only violates this Court's sequestration order (Tr. at 43:21-44:14), it may amount to obstruction of justice and witness tampering. The coordination was presumably necessary to ensure consistency in Mr. Moncayo's and Ms. Calva's stories regarding whether Judge Zambrano actually authored the judgment—a key issue in this case. Tr. at 2099:11-13-2101:7. Mr. Moncayo's

testimony on this score was not credible, and the procuring of such testimony by prompting or facilitating coordination with other witnesses constitutes probable cause for witness tampering and/or obstruction.  Whether Ms. Vahlsing knowingly took any affirmative steps to further the crime or fraud is not dispositive, as it appears her assistance was sought to facilitate or conceal it. *See United States v. Kerik*, 531 F. Supp.2d 610, 617 (S.D.N.Y. 2008) (finding that statements would be "admissible under the crime-fraud exception, even where . . . the attorney was not a knowing participant in the crime or fraud in question").[3]

**B.      Chevron is Not Collaterally Estopped from Seeking Mr. Moncayo's Documents**

In the meet and confer correspondence, ERI suggested that Chevron may be collaterally estopped from seeking Mr. Moncayo's responsive documents relating to AW based on an order entered by Magistrate Judge Cousins in the Northern District of California involving Chevron's subpoena to AW.  Ex. 4.  But this is nonsense.  Collateral estoppel only applies when "a party who ha[s] had a full and fair opportunity to litigate an issue determined by a *prior judgment* was estopped from relitigating the same issue in a subsequent action against a different defendant." *Hoppe v. G.D. Searle & Co.*, 779 F. Supp. 1425, 1426-27 (S.D.N.Y. 1991) (emphasis added). The order to which ERI refers does not qualify as a "prior judgment," and it expressly contem-

---

[3]  There is further evidence of witness tampering with respect to Mr. Moncayo.  Pursuant to Defendants' counsels' request, Chevron sent two representatives to Mr. Moncayo's hotel at 6 pm on November 12 to image his computer.  Spiker Dec. ¶ 2.  Mr. Moncayo, however, did not arrive.  Chevron then agreed to meet with Mr. Moncayo's attorney at his office in White Plains, New York, on November 13.  *Id*. ¶ 3.  Mr. Moncayo's attorney arranged for a technician to be present to image Mr. Moncayo's computer, but this technician was unprepared and the process ended up lasting more than twelve hours.  *Id*. ¶ 4.  While waiting for this process to be completed, Chevron's representatives were seated in the lobby of Mr. Moncayo's attorney's office.  As they waited, they overheard the receptionist directing several calls to Mr. Moncayo—several calls came from Julio Gomez, one the receptionist indicated was from Aaron Marr Page, and another from Juan Pablo Saenz.  *Id*. ¶ 6.  Two AW representatives, Mitch Anderson and Paul Paz y Mino, also arrived at Mr. Moncayo's attorney's White Plains office.  *Id*. ¶ 7.  These representatives conferred with Mr. Moncayo outside the presence of Chevron's representatives.  Chevron does not know what was said to Mr. Moncayo, but following this discussion, Chevron's representatives were informed that Mr. Moncayo no longer planned to comply with the subpoena.  *Id*. ¶ 8.  Further discussions continued throughout the night.

plates that Chevron could seek further discovery from AW.  Further, Chevron's ability to sub-
poena documents from Mr. Moncayo is not "the same issue" raised in the Northern District of
California.  And this has no bearing at all on ERI or RAN, which were not served subpoenas or
are parties in the proceeding.

In November 2012, in support of this RICO case, Chevron subpoenaed AW in the North-
ern District of California seeking evidence of its role in Defendants' extortion scheme.  AW
moved to quash on the basis that the information was "protected by the First Amendment" and
was not "highly relevant to Chevron's RICO claims against defendants."  Ex. 5 (*Chevron v.
Donziger*, No. 13-mc-80038 CRB (NC) (N.D. Cal), Dkt. 59 ("Order") at 1).  AW also argued
that materials from it and its director, Atossa Soltani, were "irrelevant" and that the information
was "discoverable from other sources."  Dkt. 1398-6 at 12 ("The information most relevant to
the liability of the *defendants* is discoverable from other sources.  To the extent it seeks internal
AW documents, or intra-organizational campaign documents, it has not shown that they are rele-
vant, given that Chevron's argument is that AW was part of a conspiracy spearheaded by oth-
ers."); *id.* at 7 (asserting that discovery sought from Amazon Watch would "clearly duplicate"
discovery obtained from "the parties to the litigation and a host of non-parties").[4]

Magistrate Judge Cousins held that "[i]n the absence of a finding by Judge Kaplan that
Chevron has established probable cause to believe that Amazon Watch's conduct falls outside
the scope of the First Amendment because it is inciting unlawful activity or is fraudulent
speech," the terms of the subpoena were broad enough to include information that was protected.

---

[4] Defendants acknowledge that AW has relevant information, since they had Ms. Soltani on their wit-
ness list until recently, when Chevron filed a motion seeking a deposition and documents from Ms.
Soltani. In apparent response, on November 6, Defendants represented to the Court that Ms. Soltani
was "unable to attend" because "[s]he has to go to New Zealand or Australia, somewhere far." Tr. at
1860:13.  But six days later, when no longer faced with the potential prospect of a deposition or doc-
ument production order, Ms. Soltani sat in the courtroom gallery to hear Mr. Moncayo's testimony.

Ex. 5 (Order) at 7.  Judge Cousins recognized that if the information sought was "highly rele-

vant" to litigation, Chevron could overcome the First Amendment limitations.  Ex. 5 (Order) at

7.  But because this Court had yet to consider or articulate AW's specific role in the fraud and

conspiracy, Judge Cousins found that the information sought from AW was not "highly relevant"

and consequently, quashed the subpoenas.

ERI's apparent claim on behalf of AW that Judge Cousins's order collaterally estops

Chevron from pursuing documents from Mr. Moncayo is baseless and illogical.  Judge Cousins's

order did not and could not forever preclude Chevron from subpoenaing any party that may have

corresponded with or received documents from AW.  In fact, Judge Cousins specifically permit-

ted Chevron to file new subpoenas seeking discovery from AW itself, if this Court permitted and

if Chevron tailored its subpoena more narrowly.  *See* Ex. 5 (Order) at 10.  Nor did Judge Cous-

ins foreclose Chevron from re-filing its subpoenas and making a stronger showing of crime fraud

or substantial need.  In addition, the subpoena at issue here is narrowly tailored, not directed at

AW at all, and—as discussed above—any privilege or protection has been waived under both

substantial need and crime fraud analyses.

## C.    Chevron's Subpoena to Mr. Moncayo Does Not Implicate Any Free-Association Rights

ERI's letters also assert that Mr. Moncayo's responsive documents include "First

Amendment protected communications" with ERI and others.  Ex. 2.  ERI presumably means to

invoke its associational rights as discussed in the Ninth Circuit's decision in *Perry v.

Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010), on which Judge Cousins relied in quashing

Chevron's subpoena to AW.  But *Perry* has no application here, even assuming the Second Cir-

cuit were to apply a similar analysis.

Any communications with Mr. Moncayo could not have been "private, internal campaign communications concerning the formulation of campaign strategies and messages." *Perry*, 591 F.3d at 1165 n.12. The Ninth Circuit made clear that its holding "certainly d[id] not apply to documents or messages conveyed to" the public "for purposes such as persuasion, recruitment or motivation," or to "communications soliciting active support from actual or potential" donors. *Id*. There is no plausible argument that Mr. Moncayo is among ERI's, Amazon Watch's, or RAN's "core group of persons engaged in the formulation of campaign strategy and messages." *Id*.

Thus, ERI, AW, and RAN cannot assert any First Amendment privilege over documents that they voluntarily turned over to Mr. Moncayo, which are now on Mr. Moncayo's hard drive or in his email account. There is no danger that disclosure of these materials could "have a chilling effect on political association" because, among other reasons, sending them to Mr. Moncayo necessarily meant that such materials were not intended to be "internal" communications among core members of any of these organizations. *See, e.g., In re Motor Fuel Temperatures Sales Practices Litig.*, 641 F.3d 470, 489-91 (10th Cir. 2011) (rejecting First Amendment challenge to subpoena, finding that the challengers had failed to articulate how the discovery would "hinder their associational rights (e.g., lobbying efforts, ability to communicate among themselves regarding legislative policy, or maintenance of members within the . . . associations)").

In addition, even if ERI, Amazon Watch, and RAN could establish a prima facie argument under the First Amendment, Chevron still is entitled to Mr. Moncayo's documents because they are "highly relevant" to Chevron's claims and, as this Court has acknowledged in its sanctions order and elsewhere, this information is "unavailable from other sources"—Defendants

13

have undertaken extensive efforts to block discovery of documents, materials, and persons in

Ecuador. *Perry*, 591 F.3d at 1165 n.13.

## CONCLUSION

For these reasons, as outlined in the Proposed Order to Show Cause, the Court should or-

der Mr. Moncayo to produce all responsive materials to Chevron by 12:00 p.m. on Monday, No-

vember 18.  Anyone wishing to claim a privilege or protection over any of the documents should

be ordered to show cause by noon on Tuesday, November 19 why the objected-to documents

should not be released to Chevron for all purposes.  All objections must be specific and done on

a document-by-document basis.  Chevron shall have until noon on Wednesday November 20 to

file any reply.  Chevron will sequester any documents over which a timely assertion of particu-

larized privilege or protection is made until such time as the Court resolves the dispute.  Alterna-

tively, the Court should order Mr. Moncayo to file with the Court, under seal, all responsive doc-

uments being withheld from Chevron on a claim of privilege or work product protection.


Dated: November 18, 2013                        Respectfully submitted,

New York, New York                              GIBSON, DUNN & CRUTCHER LLP

                                                /s/ Randy M. Mastro

                                                Randy M. Mastro
                                                Andrea E. Neuman
                                                200 Park Avenue
                                                New York, New York 10166
                                                Telephone: 212.351.4000
                                                Facsimile: 212.351.4035

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

Attorneys for Chevron Corporation

***Chevron v. Donziger***, No. 11 Civ. 0691-LAK (S.D.N.Y)

**Index of Exhibits to Chevron Corporation's Memorandum of Law In Support of
Motion for Order to Show Cause**

Exhibit 1:     Subpoena dated November 12, 2013, and served on Donald Moncayo.

Exhibit 2:     Letter sent from Richard Herz at EarthRights International to Messrs. Russell M.
Yankwitt and James M. Sabovich, dated November 15, 2013, and regarding documents pertaining to EarthRights International.

Exhibit 3:     Letter sent from Richard Herz at EarthRights International to Messrs. Russell M.
Yankwitt and James M. Sabovich, dated November 15, 2013, and regarding documents pertaining to Amazon Watch and Rainforest Action Network.

Exhibit 4:     Email sent from Marco Simons to Reed Brodsky, Rick Herz, Russell Yankwitt,
James Sabovich, and Anne Champion, dated November 15, 2013, and regarding "Moncayo Subpoena."

Exhibit 5:     Order, *Chevron v. Donziger*, No. 13-mc-80038 CRB (NC) (N.D. Cal), Dkt. 59.

Exhibit 6:     Email sent from Julio Gomez to Reed Brodsky and Russell Yankwitt, with Richard Friedman, Zoe Littlepage, Rainey Booth, and Steven Donziger on copy, dated
November 17, 2013, and regarding "Moncayo subpoena."