UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
CHEVRON CORPORATION, :
:
                Plaintiff, :
:
  v. : 11-CV-0691 (LAK)
:
STEVEN DONZIGER, et al., :
:
                Defendants. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SUPPLEMENTAL STATEMENT IN RESPONSE TO
DEFENDANTS' SUPPLEMENTAL SUBMISSION
PURSUANT TO RULE 44.1 OF THE
FEDERAL RULES OF CIVIL PROCEDURE
REGARDING ISSUES OF FOREIGN LAW**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

      Chevron provides herein its supplemental statement responding to Defendants' additional submission, containing a declaration of their Ecuadorian-law expert Juan Pablo Alban Alencastro, pursuant to Federal Rule of Civil Procedure 44.1.[1] Alban's declaration addresses various points of judicial procedure under Ecuadorian law, but it does not advance Defendants' position as it contradicts Ecuadorian law that Alban ignores, and, in places, it supports the position of

---

[1] Defendants initially listed Alban as one of their trial witnesses, even though this Court had instructed the parties that it would not hear live testimony from foreign-law experts. *See* Dkt. 1659-7 at 16:1–3, 16:18–20, 17: 7. Alban's witness statement was titled "Rule 44.1 Statement, About Ecuadorian Law," and thus on its face constituted a supplemental submission on Ecuadorian law. Dkt. 1702-1 (hereinafter, "Alban Decl."). The parties then entered a stipulation according to which Defendants would not call Alban at trial but his declaration would be received as additional Rule 44.1 material, on the condition that Chevron would have the opportunity to respond within seven days of the stipulation being so ordered by the Court. Dkts. 1715, 1702. The Court so ordered the stipulation last Wednesday, November 13, 2013.

Chevron's Ecuadorian-law experts. The propositions of foreign law Chevron advanced in its original Rule 44.1 statement, therefore, remain unrebutted. *See* Dkt. 1411.

Alban recognizes that "[u]nder Ecuadorian law if a document has not been formally incorporated into the case . . . [it] is not part of the record." Alban Decl. ¶ 31. However, apparently in service of Defendants' attempt to explain away the clear evidence that the Ecuadorian judgment was ghostwritten, Alban opines—without citation to law or example—that "[i]t is not unusual . . . that in high-profile cases, . . . the anonymous sending of documents . . . occurs in an attempt to convince the authority responsible for the processing and decision of the case on the legitimacy or importance of a given argument." *Id.* ¶ 32.

Dr. Santiago Efraín Velázquez Coello, one of Chevron's Ecuadorian-law experts, has explained that parties can only submit materials to the court by presenting them for filing in the official record, and the court may only consider materials thus filed unless they consist of "public and well-known facts"—akin to indisputable facts that would be subject to judicial notice in U.S. courts. *See* Dkts. 1413-10 at 31–33, 1413-11 at 9–10, 1550-3 at 1–3. In a declaration in response to Alban's supplemental 44.1 submission, Dr. Velázquez reaffirms that conclusion and addresses the supposed "custom" that Alban claims exists of parties providing documents anonymously to the court. "[I]n accordance with my experience," Dr. Velázquez explains, "in Ecuador it has never been a normal practice to provide judges with information in the manner stated by Dr. Alban, as these acts are contrary to express provisions of Ecuadorian law." Declaration of Jason B. Stavers, dated November 20, 2013 and filed herewith ("Stavers Decl.") Ex. A at 2. Even if such a practice did exist, Dr. Velázquez continues, "it would have no relevance whatsoever to the present analysis" because, in Ecuador, "custom is not law unless statute expressly

2

says so." *Id*. (citing Article 2 of the Civil Code (attached as Stavers Decl. Ex. B): "A custom does not constitute law, except in those cases where the law references it.").

Nor is Alban's conclusion bolstered by his reference to Article 335 of the Organic Code of the Judicial Function, which he asserts "establishes prohibitions for lawyers in the representation of cases, [but] says nothing about these informal remissions of documentation." Alban Decl. ¶ 33. The point appears to be that because this provision does not expressly say that lawyers are not allowed to send judges documents anonymously and in secret, therefore the practice must be allowed. That counter-intuitive proposition makes little sense in the abstract, and Dr. Velázquez explains that it is wrong as a matter of Ecuadorian law. The Organic Code of the Judicial Function, which Alban cites, is "Ecuadorian public law" and "[e]very Ecuadorian attorney knows that in public law only what is authorized by the law may be done." Stavers Decl. Ex. A at 3. Therefore, the failure of Article 335 of that Code—or, indeed, any other actual source of Ecuadorian law—to mention the custom Defendants conjure of the anonymous and secret submission of materials to the court demonstrates not its legitimacy, but its illegality. In any event, Article 335 generally prohibits litigating "in an abusive, malicious, or reckless manner" and "violating the principle of good faith and loyalty through practices such as the submission of forged evidence [and the] use [of] unscrupulous practices." *Id.* (quoting the Article). Because, as Dr. Velázquez has explained in prior submissions here that Defendants have not rebutted, "any litigating attorney knows that he has to file evidence in the case record[,] . . . . sending documents to a judge anonymously without complying with the legal formalities would be a malicious action." Stavers Decl. Ex. A at 3. Moreover, "secretly providing documents which influence the judge's decision . . . violates the due process of the other party by not allowing it to challenge those facts and documents presented." *Id*.

3

Defendants have also obtained other opinions from Alban, related to the citation of legal sources, that appear to be intended to respond to Chevron's ghostwriting evidence. *See* Alban Decl. ¶¶ 16–23. But the particular questions put to Alban demonstrate the irrelevance of his answers. *See id.* ¶ 16 ("Are the judges in Ecuador required to invoke doctrinal sources, such as memoranda, legal texts and the like, that support their opinion in a particular case?"; "Does the lack of bibliographic references or of specific reference to the doctrinal sources mentioned in the previous question or similar others, could be considered [sic] plagiarism in Ecuador?"). Whether judges are required to employ "doctrinal sources" and, if so, how to cite them, do not speak to the particular evidence in this case. Chevron has not sought to prove that the LAPs' unfiled work product appears, often verbatim, in the Ecuadorian judgment because it thinks that Judge Zambrano might have improperly cited his sources or committed plagiarism. The point is that this evidence shows that the LAPs' Team ghostwrote the judgment, an act that neither Alban, nor any other expert for Defendants, has claimed is legal.[2]

Alban's declaration contains further opinions that fail to speak to Chevron's claims. For example, he spends eight paragraphs answering the question "Can the Ecuadorian judicial au-

---

[2] Alban also addressed the question whether, "[i]n developing their decision, Ecuadorian judges may base it on information outside of the record, that is found in the public domain, such as information published on the Internet, and similar doctrinal sources?" Alban Decl. ¶ 16. He responded, "it is common for Ecuadorian judges . . . to base their reasoning and conclusions of law on access to public information that is not found on the record," although he recognized that "[w]hat is forbidden . . . is to base his/her factual reasoning and conclusions on evidence not provided by the parties, unless it is dealing with information about public and notorious facts." Alban Decl. ¶ 23. In his response to Alban, Dr. Velázquez clarifies that even if facts are "publicly accessible," they still must be proved on the record like any other evidence, unless they fit within the definition of "public and notorious [or well-known] facts." Dr. Velázquez defined the latter category in his October 10, 2013 declaration as facts "known by everybody and whose existence nobody doubts." Dkt. 1550-3 at 2; *see also id.* at 2 n.3 (providing examples of public and well-known facts from Ecuadorian doctrine).

4

thorities presume to be true the events raised by one of the parties if the other does not provide evidence to distort them?" Alban Decl. ¶ 34.  He answers that "the judge will have to declare that the tested fact and not distorted [sic] is true," *id.* ¶ 41, but the relevance of this conclusion to the issues in controversy here is obscure.  Nor does Alban's general discussion of the lottery system to choose judges on Ecuadorian appellate panels speak to the particular conflicts of interest that permeated the selection process in Chevron's case or the failure of the appellate decision to address Chevron's fraud evidence.

   Finally, and as Dr. Velázquez explains, in other parts of his declaration Alban makes assertions that support Chevron's position.  For example, Alban states, "Although the judge is not obligated to base the decision on all the evidence presented by the parties in the process, he does [] have the legal obligation to explain the value attributed to each item of evidence when deciding the case. This is because the second section of the same Article 115 of the Code of Civil Procedure . . . provides that 'The judge shall have the obligation of expressing in his decision the assessment of all the evidence produced.'" Alban Decl. ¶ 28.  Dr. Velázquez similarly cited Article 115 of the Code of Civil Procedure in his October 10, 2013 declaration for the proposition that the judge must review the whole record before issuing his decision, *see* Dkt. 1550-3 at 3.  Alban implicitly accepts that proposition since, if the judge must "explain the value he assigns to each piece of evidence at the time he decides the case," he must have read the record that contains that evidence.  *See* Stavers Decl. Ex. A at 4–5.

   Alban further opines that the judge must "state the legal rules or principles which underlie the decision, and explain the relevance of its application in the particular case." Alban Decl. ¶ 21.  As Dr. Velázquez explains, this "requires analysis of the facts and evidence legally incorporated into the proceeding, together with the relevance of the legal rules applicable." Stavers

5

Decl. Ex. A at 4.  Thus, "should the judgment be based on documents outside the record, it would be null and void due to a lack of a legal basis." *Id.*  That this follows is clear given Alban's concessions that, "if a document has not been formally incorporated into the case in accordance with the provisions of the Regulation on the Settlement Process and Judicial Proceedings of June 19, 1981 . . . it is not part of the record," and that Article 27 of the Organic Code of the Judicial Function prohibits a judge from "basing his/her reasoning and factual conclusions on evidence not provided by the parties."  Alban Decl. ¶¶ 31, 23; *compare* Dkt. 1550-3 at 2 (Dr. Velázquez citing the same two articles (though the regulation is translated as "Regulations on Organization of Judicial Proceedings and Actions") for the proposition that the judge can only rely on evidence duly added to the record). Such confirmation of Chevron's experts' opinions on Ecuadorian law from Defendants' experts is a common theme in this case across various subject areas.  *See, e.g.*, Stavers Decl. Exs. C (deposition testimony in which Farith Ricardo Simon Campaña agrees with Chevron's experts), D (deposition testimony in which Alban agrees with Chevron's experts), E (deposition testimony in which Raúl Rosero Rivas agrees with Chevron's experts).

In short, Alban's supplemental declaration does not refute the propositions of foreign law set forth in Chevron's Rule 44.1 statement, *see* Dkt. 1411, which should be considered as established here.

Dated: November 20, 2013

                                              GIBSON, DUNN & CRUTCHER LLP

                                              By: /s/ Randy M. Mastro
                                              Randy M. Mastro
                                              Andrea E. Neuman
                                              200 Park Avenue
                                              New York, New York 10166
                                              Telephone: 212.351.4000
                                              Facsimile: 212.351.4035

                                              William E. Thomson
                                              333 South Grand Avenue
                                              Los Angeles, California 90071
                                              Telephone: 213.229.7000
                                              Facsimile: 213.229.7520
                                              *Attorneys for Chevron Corporation*