UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
CHEVRON CORPORATION,

                       Plaintiff,

                -against-                            11 Civ. 0691 (LAK)

STEVEN DONZIGER, et al.,

                       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

        This matter, which is in the final stages of trial, now is before the Court on Chevron's motion to compel defendants to produce unredacted copies of certain documents that purport to be minutes of meetings of the Assembly of the Affected (the "Assembly"), redacted copies of which recently were produced to Chevron. (DI 1721; *see also* Tr. 2352-53). The unredacted documents, with English translations, have been submitted to the Court for *in camera* review.[1] This brief order resolves the matter. Given the time pressure under which it issues, however, it is the Court's intention to supplement it at a later date should that appear to be desirable.

*Background*

        During discovery, Chevron requested production of 'ALL DOCUMENTS RELATED TO THE ASSEMBLY OF THE AFFECTED." DI 1529 at 91 n. 306; Champion Decl [DI 895] (Ex. 3504), ¶ 9. Defendants did not comply. The Court then ordered defendants to produce the documents, but defendants again failed to comply. *Id.* at 72, 92; DI 787. Finally, on the eve of trial, defendants produced the redacted documents now in question, which are only some of the minutes of the Assembly. DI 1529, at 91-92. They now seek to use these documents, as well as testimony of the LAP Representatives' final witness, Mr. Humberto Piaguaje, "to disprove the idea that Mr.

---

[1] The unredacted documents and their translation will be filed under seal.

Donziger is in control of all of these decisions." *See* Tr. 1852.; *id* at 1853.[2] But they object to the production of the redacted portions of the documents on the ground of attorney-client privilege. Tr. 2353.[3]

The principal point of contention is the redaction of portions of the minutes of the January 14-15, 2013 meeting of the Assembly.[4] This is not the first occasion on which the alleged events from that meeting have arisen in this case.

In the hearing on Chevron's motion for sanctions against defendants for failing to produce documents including these, defendants offered testimony concerning at least part of what allegedly transpired at the meeting. And they produced an email from Pablo Fajardo to other members of the LAPs' legal team that supposedly was an implementation of a resolution allegedly passed on that occasion. Moreover, in a motion for reconsideration of the sanctions ruling, a motion that remains pending, defendants wrote:

> "The Court disregarded the evidence that, as of February 2013, the Ecuadorian

---

[2] They previously offered some of the documents in question during the testimony of Javier Piaguaje. The Court has reserved decision on Chevron's objections to those that were offered. Tr. 2375 *et seq.*

[3] The Court notes that, despite defendants' initial refusal to produce them and subsequent failure to produce them in full, the Assembly meeting minutes always have been in the possession of the defendants and/or their attorneys and agents in Ecuador. The minutes were taken by Veronica Asimbaya, who is the secretary of Selva Viva, an entity set up for various administrative and other purposes by Mr. Donziger and others. *See* DX246, at LAP 0001676; DX 239, at LAP0001659; DX 24-, at LAP0001662; DX 241, at LAP0001663; DX 235, at LAP0001651; Tr. 2103:25-2104:1 (Moncayo). The minutes then were kept at Selva Viva's offices. Tr. 2110:17-23 (Moncayo) ("A: [The Assembly] hold[s] the meetings. We are convened at the meetings and the secretary take minutes of what is taking place at the meeting. And from there is the president of the organization, Humberto Piaguaje, who is a coordinator, he has to sign them in order for them to be legal. Q: Then they are kept at Selva Viva's offices? A: Yes."). Moreover, Mr. Javier Piaguaje testified that, in preparation for his testimony in this case, he "told Pablo [Fajardo] to give me the minutes of the meetings so that I can remember because I live far away," but that he "ha[sn't] gotten them yet," Tr. 2419:5-7 (Javier Piaguaje), thus making clear that the LAPs' counsel keeps the minutes in his possession and controls when and to whom he distributes them.

[4] The Court has reviewed the redacted portions of the remaining minutes at issue (DX 239, 240, 241, 235) and concludes that they contain material that either is not relevant to any issue in this case or cumulative of other evidence adduced by Chevron. It therefore declines to order production of the unredacted portions of these documents. FED. R. CIV. P. 26(b)(2)(C).

>Plaintiffs officially removed Donziger as their coordinator of U.S. legal strategy, by claiming that the evidence was merely an 'email' that was 'an attempt to create a facade to hide reality.' DI 1529, at 77. The Court erred. The removal of Donziger as U.S. coordinator was not accomplished through an email. Rather, as the email indicates, the Union of Afectados, a formal legal entity in Ecuador composed of representatives of the individuals and communities affected by Chevron's pollution, held meetings on January 14 and 15, 2013 and, after debate, voted to remove Donziger from his position. April 17, 2013 Hearing Ex. A. A formal vote by the legal entity through which the Ecuadorian Plaintiffs make their decisions (and have been making decisions for years) goes against Chevron's and this Court's view of Donziger as the 'field marshal' or 'cabeza' for the Lago Agrio case, but it is the reality, especially as of January 2013." DI 1631, at 10.

Thus, defendants quite plainly have put in issue what transpired at the meeting in question and seek to offer part of the purported minutes while withholding the balance.

*Discussion*

There are several problems with defendants' position.

*First*, "[a] party invoking the attorney-client privilege has the burden of showing, as to each allegedly privileged communication, that the communication was (1) between counsel and client, (2) intended to be and remained confidential, and (3) made for the purpose of providing or obtaining legal advice." *In re Chevron Corp.*, 749 F. Supp. 2d 141, 164-65 (S.D.N.Y.), *aff'd without consideration of the point sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 Fed. App'x. 393 (2nd Cir. 2010). In this case, defendants have failed to demonstrate that the communications reflected in the redactions from the minutes that were produced were "intended to be and remained confidential." Indeed, the January 15, 2013 minutes, the extensive redactions from which are a major focus of this motion, affirmatively reflect that one Mitchell Anderson was present by invitation. Yet there has been no showing that Mr. Anderson is or, more importantly, was at the date of the meeting a client of the lawyers who reportedly spoke at the meeting.[5] Thus, the confidentiality essential to the existence of privilege with respect to these lawyer-client communications has not been shown as to that meeting.

*Second*, any privilege with respect to all of these redactions has been waived for two reasons.

As noted, these documents all were called for by Chevron's request for production. Defendants' responses did not "claim privilege as required by Rule26(b)(5)(A) and S.D.N.Y. Rule

---

[5] There is evidence that Mr. Anderson is associated with Amazon Watch and refers to himself as a "corporate accountability campaigner." PX 926.

4

26.2 with respect to . . . any responsive documents in the possession, custody, or control o[f] their agents and attorneys in Ecuador."[6] DI 1529, at 23. Thus, they waived any privilege that otherwise might have attached.

Additionally, this is a classic case in which the defendants seek to use privilege both as a sword and a shield and thus implicitly have waived any privilege that might have existed in other circumstances. By producing the Fajardo email, discussing the January 15 Assembly meeting and vote at the sanctions hearing, by exploring the same subject during the trial testimony of Javier Piaguaje, by their motion for reconsideration of the sanctions ruling, and by their stated intention to offer testimony of Humberto Piaguaje and part of the minutes on the same subject, defendants have placed in issue exactly what happened on that occasion.

"[T]he attorney-client privilege cannot at once be used as a shield and a sword. A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes."[7] "In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party."[8] Such selective production of or reliance on privileged communications may result in waiver of any privilege claim.[9]

Nor is a disclosure of a privileged communication or portion thereof essential for purposes of the sword-and-shield principle. The Second Circuit has made clear that waiver is "justified by considerations of fairness to the adversary . . . . [C]ourts have ruled that it would be unfair for a party asserting contentions to an adjudicating authority to then rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contentions."[10] Privilege impliedly is waived when a party makes assertions in the litigation or "asserts a claim that in fairness requires examination of protected communications."[11] Thus, "even if a party does not attempt to make use of a privileged communication he may waive the privilege

---

[6] While defendants did object to production on alleged privilege grounds, they did so only in conclusory terms. DI 1529, at 23 n. 79. They submitted no privilege log.

[7] *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (citation omitted).

[8] *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000).

[9] *Id.*

[10] *John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003).

[11] *Bilzerian*, 926 F.2d at 1292.

if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication."[12] In *Bilzerian*, for example, the Second Circuit held that a defendant's invocation of a "good-faith" defense to securities fraud placed his knowledge of the law in issue, even though the defendant did not rely on any specific privileged communications in invoking the defense.

Courts in this Circuit often rely on the test enunciated in *Hearn v. Rhay*[13] in determining whether a party impliedly has waived a privilege claim. The *Hearn* test has three elements:

> "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through the affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense."[14]

Thus, implied waiver may be found where a party puts a claim or defense at issue that in fairness requires disclosure of privileged material, whether or not the privileged material explicitly was relied upon in making the claim or defense.

Here, defendants' actions and intended actions (the latter via Mr. Humberto Piaguaje and their proffer of the redacted January 15, 2013 minutes) satisfy all three prongs of the *Hearn* test: (1) defendants' assertion of the privilege was a result of defendants' putting in issue and arguing that Mr. Donziger's role had been altered by virtue of a decision allegedly taken at the January 15, 2013 meeting, (2) defendants have put the events that occurred at that meeting at issue by using them to bolster that claim, and (3) assertion of the privilege to shield the redactions, if permitted, would deprive Chevron access to information necessary to assess the validity of the claim.

---

12

*Bowne of N.Y. City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 488 (S.D.N.Y.1993).

13

68 F.R.D. 574 (E.D. Wash. 1975).

14

*Id.* at 581. *See also In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470-72 (S.D.N.Y. 1996). (affirmative use of report to demonstrate good faith waives attorney-client privilege as to statements made to attorney in preparation of the report); *John Doe Co.*, 350 F.3d at 302("it is well established doctrine that in certain circumstances a party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted.").

*Conclusion*

For the foregoing reasons, defendants shall produce forthwith to Chevron the January 15 minutes (DX 246) in unredacted form.

SO ORDERED.

Dated:     November 21, 2013

_____
Lewis A. Kaplan
United States District Judge