DBE8CHEF

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   CHEVRON CORPORATION,

4                Plaintiff,

5        v.                              11 Cv. 0691 (LAK)

6   STEVEN R. DONZIGER, et al.,

7                Defendants.

8   ------------------------------x
                                        November 14, 2013
9                                       9:45 a.m.

10  Before:

11                    HON. LEWIS A. KAPLAN
                                        District Judge
12                         APPEARANCES

13
    GIBSON, DUNN & CRUTCHER LLP
14       Attorneys for Plaintiff
    BY:  RANDY M. MASTRO
15       ANDREA E. NEUMAN
         REED M. BRODSKY
16       JEFFERSON E. BELL
         ANNE CHAMPION
17
    FRIEDMAN RUBIN
18       Attorneys for Donziger Defendants
    BY:  RICHARD H. FRIEDMAN
19       DEE TAYLOR

20  LITTLEPAGE BOOTH
         Attorneys for Donziger Defendants
21  BY:  ZOE LITTLEPAGE
         RAINEY BOOTH
22
    GOMEZ LLC
23       Attorneys for Defendants Hugo Camacho, Javier Piaguaje
    BY:  JULIO C. GOMEZ

24

25

DBE8CHEF

1              (Trial resumed)

2              THE COURT:  Good morning.

3              Are we ready?

4              MR. MASTRO:  Yes, your Honor.  There has been an

5    agreement just reached this morning about Mr. Lipton's

6    testimony so I am going to have my colleague Bob Blume

7    memorialize that.

8              MR. BLUME:  Good morning, your Honor.

9              We have met and conferred with defendants.  They have

10   agreed that we will put Dr. Lipton on to admit his direct exam

11   through his witness statement, as well as two exhibits and a

12   clarifying question.  We then will agree to the admission of

13   exhibits that defense would like to admit, and they will waive

14   cross-examination of Dr. Lipton.

15             THE COURT:  So that's a short morning.

16             MR. MASTRO:  After that we will have a couple of other

17   issues that we would like to address with the Court.

18             MR. BLUME:  At this time, we would like to call Dr.

19   Lipton to the stand.

20    JOSHUA LIPTON,

21        called as a witness by the plaintiff,

22        having been duly sworn, testified as follows:

23             THE DEPUTY CLERK:  State your name and spell your last

24   name for the record.

25             THE WITNESS:  Joshua Lipton, L-I-P-T-O-N.

DBE8CHEF

1                    MR. BLUME:  May I approach?

2                    THE COURT:  Yes.

3    DIRECT EXAMINATION

4    BY MR. BLUME:

5    Q.  Good morning, Dr. Lipton.

6    A.  Good morning, sir.

7    Q.  I have placed before you, sir, what has been previously

8    marked as Plaintiff's Exhibit PX 5200.  Do you see that, sir?

9    A.  Yes, I do.

10   Q.  Is that a copy of your written declaration in this matter?

11   A.  Yes, it is.

12   Q.  Directing your attention, sir, to page 11 of that exhibit,

13   is that your signature?

14   A.  Yes, sir, it is.

15   Q.  At the time you signed this declaration on October 9, 2013,

16   were the statements made therein true and accurate?

17   A.  Yes.

18   Q.  Since you signed your declaration, Dr. Lipton, were certain

19   redactions made to it?

20   A.  Yes.  That's correct.

21   Q.  And also directing your attention to paragraph 26 of that

22   declaration, did you change a word from "was" to "were"?

23   A.  Yes, I see that, and I appreciate the grammatical

24   correction.

25   Q.  With those changes, Dr. Lipton, does everything in your

1  declaration remain true and accurate?

2  A.  Yes, it does.

3  Q.  You offer that declaration as your direct testimony today?

4  A.  I do.

5          MR. BLUME:  At this point, we would offer Plaintiff's

6  Exhibit 5200 in evidence.

7          THE COURT:  Just so we are clear, I take it that the

8  portions with strike throughs reflect an agreement between the

9  parties, and that the statement is now being received exclusive

10 of the strike throughs, and there are no subsequent objections

11 to deal with on this, is that right?

12         MR. FRIEDMAN:  That is correct.

13         THE COURT:  Mr. Gomez.

14         MR. GOMEZ:  That's correct, your Honor.

15         THE COURT:  So it's received.

16         (Plaintiff's Exhibit 5200 received in evidence)

17 Q.  I have also placed before you, Dr. Lipton, two documents,

18 one is labeled PX 5208 and one is labeled PX 5210.

19         Directing your attention first to PX 5208, do you

20 recognize that as the written statement of Douglas Beltman?

21 A.  Yes, I do.  This is a witness statement of Mr. Beltman to

22 which I refer in my testimony.

23 Q.  You refer to that in paragraph 33 of your witness

24 statement, sir, PX 5200?

25 A.  Yes, that's correct.

DBE8CHEF                    Lipton - direct

1  Q.  I now direct your attention to Plaintiff's Exhibit 5210.

2  Is that a written statement of Ann Maest?

3  A.  Yes, it is.  This is the statement of Dr. Maest to which I

4  refer again in paragraph 33 of my testimony.

5          MR. BLUME:  We would offer PX 5208 and PX 5210.

6          MR. FRIEDMAN:  The agreement that we reached is that

7  these are coming in not for the truth, but because he referred

8  to them in his witness statement.  So these are the witness

9  statements he is referring to, but they are not coming in for

10  the truth.

11          THE COURT:  Mr. Blume, is that accurate?

12          MR. BLUME:  While we agree they are true, we agree

13  with that.

14          THE COURT:  Mr. Gomez.

15          MR. GOMEZ:  Yes, your Honor.

16          THE COURT:  They are received for the fact that the

17  statements were made at the time they were made and not for the

18  truth.

19          (Plaintiff's Exhibits 5208 and 5210 received in

20  evidence)

21  Q.  Dr. Lipton, in your declaration, PX 5200, you refer to a

22  number of representations made by Mr. Beltman, is that right?

23  A.  Yes, I do.

24  Q.  Regarding those representations, sir, were they or were

25  they not material to your decision to allow Mr. Beltman to

DBE8CHEF                        Lipton - direct

1   oversee the Stratus 1782 process and the defense of Stratus

2   Corporation?

3   A.  Yes, they were, in fact, highly material and fundamental to

4   that decision.

5           MR. BLUME:  At this point, we will pass the witness

6   subject to the agreement we reached.

7           THE COURT:  Which I take it there will be no

8   cross-examination.

9           MR. GOMEZ:  That's correct, other than just to move

10  the particular documents that have been agreed to into the

11  record.

12          MR. BLUME:  We have no objection.

13          MR. GOMEZ:  The particular exhibits that are subject

14  of the agreement, your Honor, are Defendants' Exhibit 78,

15  Defendants' Exhibit 80, Defendants' Exhibit 81, Defendants'

16  Exhibit 83, and Defendants' Exhibit 90.  Defendants' Exhibits

17  78, 80, 81 and 83 are correspondence.  I can go through them

18  for the record.

19          THE COURT:  May I see them?

20          MR. GOMEZ:  Yes.

21          For the record, Defendants' Exhibit 90 is the Stratus

22  settlement agreement.

23          THE COURT:  Is there any objection to any of them?

24          MR. BLUME:  No objection.

25          THE COURT:  They are received, 78, 80, 81, 83 and 90.

1          (Defendants' Exhibits 78, 80, 81, 83 and 90 received

2    in evidence)

3          THE COURT:  Anything else for this witness?

4          MR. BLUME:  That's it.

5          THE COURT:  Dr. Lipton, you are excused.

6          (Witness excused)

7          THE COURT:  What else?

8          MR. MASTRO:  Three other issues for this morning.

9          First, I wanted to report to the Court on Mr.

10   Moncayo's hard drive imaging.  Mr. Moncayo's attorney I believe

11   is here in court.  The mirror imaging of the hard drive was

12   accomplished and filed with the court.  There was also an

13   imaging of his e-mail account.  His attorney is someone known

14   to me from past lives, both of us having been at the U.S.

15   Attorney's Office, so I am accepting his representations.  He

16   has mirror imaged Mr. Moncayo's e-mail account and represented

17   to me that he will be reviewing the e-mail account, that the

18   e-mail account was not separately filed with the clerk's

19   office, but he has represented to me that he will, with that

20   mirror image, review the e-mail account and produce any

21   responsive documents to us and/or a privilege log on Monday.

22          So I am accepting that representation, and we are

23   willing to proceed on that basis vis-a-vis Mr. Moncayo.

24          THE COURT:  All right.

25          MR. MASTRO:  Now, your Honor, the second issue for

DBE8CHEF

1    this morning is that we still have not received Mr. Donziger's

2    written statement, although apparently others have.

3              THE COURT:  The New York Times has it.

4              MR. MASTRO:  I have talked to Mr. Friedman, and he has

5    made certain representations to me.  Perhaps he should make

6    those on the record.  Then I may have an additional

7    application.

8              THE COURT:  Mr. Friedman.

9              MR. FRIEDMAN:  Your Honor, my client and co-counsel

10   has authorized me to say that he will get a copy of the witness

11   statement to Mr. Mastro by 6:00 or sooner today, that there may

12   be some exhibit numbers and things that may be blank, but that

13   he will have a physical statement to Mr. Mastro by 6:00.

14             THE COURT:  Mr. Mastro.

15             MR. MASTRO:  Your Honor, I am accepting Mr. Friedman's

16   representation because it's Mr. Friedman.

17             THE COURT:  He was very clear that what he was doing

18   was repeating what he had been told to repeat.

19             MR. MASTRO:  I understand, your Honor.  If we get the

20   statement today by or before 6:00, of course we are going to be

21   ready to proceed on Monday, and I look forward to the

22   cross-examination.

23             Your Honor, I wanted to say one other thing, which is

24   regardless, it is obvious from what we all read this morning in

25   The New York Times that Mr. Donziger shared a draft or drafts

DBE8CHEF

1    of his statement with someone outside the context of any

2    privilege, and I am asking the Court to require Mr. Donziger

3    not only to produce to us by 6:00 today his final version of

4    his statement, but also his drafts, because he has clearly

5    waived privilege on his drafts, and I think that he should have

6    to produce not only what he says is his final version of his

7    statement, but he should have to produce his drafts, including

8    what he give to Cliff Krauss at the New York Times instead of

9    submitting it to this court and to us.

10             THE COURT:  Mr. Friedman.

11             MR. FRIEDMAN:  Your Honor, I don't know what was

12   submitted to The New York Times.  I have seen various drafts.

13   I guess what I would say is I don't know how helpful it would

14   be to do that.  The goal it seems to me is to get a signed

15   statement to Mr. Mastro of Mr. Donziger's statement.  The pros

16   and cons of whether there is a privilege that has been waived,

17   I am just talking practicalities, not legal positions, I can't

18   begin to think about which draft this would be and how that

19   would be verified.

20             So I guess what I am asking is that we get the

21   statement to Mr. Mastro at 6:00.  If he feels like he wants to

22   pursue this, we take it up then.  He can see the draft.

23   Everyone will know what we are working with at that point, and

24   if he really thinks that getting the draft would be helpful, he

25   can apply to the Court about that.  From what I have seen, it's

DBE8CHEF

```
 1    going to be an exercise that will create a lot of energy and
 2    not much use to anybody.  But that's my position.
 3              THE COURT:  Mr. Mastro.
 4              MR. MASTRO:  Your Honor, number one, highest priority
 5    is to get the statement, what he says is his final and full
 6    written statement of his direct testimony.  So that's obviously
 7    the objective here.
 8              I do think, at a minimum, that he should also be
 9    producing whatever he gave to Mr. Krauss.  But our highest
10    priority is to move the case forward and get his witness
11    statement.  It's just such an obvious waiver.  It seems to me
12    at a minimum he should have to produce that as well, but I just
13    want to get the statement by 6:00 and whatever other material I
14    am entitled to.
15              MR. FRIEDMAN:  If I could state more clearly, I just
16    hate to create another complication at this point, and I am not
17    saying Mr. Mastro's position is well taken or not well taken,
18    but I think when he gets the draft, I think he will be
19    satisfied -- not the draft.  When he gets the final, he will be
20    satisfied.  That's my position.
21              THE COURT:  I am not going to do anything about this
22    right now.  If the statement is produced by 6:00 and you want
23    to pursue it, Mr. Mastro, talk to Mr. Friedman, and then we can
24    deal with it in the morning if it needs to be dealt with.
25              If it does need to be dealt with, I rather imagine
```

DBE8CHEF

1     that somebody better be prepared to address the question of how

2     a lawyer handing a document to The New York Times, in

3     circumstances where at least from the article there would

4     appear to be some reason to think that the object of the

5     exercise was to get ink favorable to the lawyer in question,

6     could possibly not waive any work product protection there

7     otherwise might have been for the draft, at least for the one

8     handed to The New York Times.  But maybe we don't have to get

9     there and maybe you will educate me and I will have a different

10    view.  I haven't even formulated a view.  It just seems to me

11    confidentiality is very important to these things and The New

12    York Times is not usually the way you maintain confidentiality.

13            What else?

14            MR. MASTRO:  Your Honor, one final subject for today,

15    which is the remaining witnesses on the defense side.

16            Your Honor, Javier Piaguaje, one of the defendants,

17    was supposed to testify tomorrow morning.  We have yet to

18    receive his statement, although Mr. Gomez says it will be

19    forthcoming later today.  And Mr. Gomez is fine with under

20    those circumstances, since we have yet to receive his

21    statement, that we in fact hear from him and cross-examine him

22    on Monday morning because we still don't have his statement of

23    his written direct.

24            THE COURT:  So there is no disagreement about that.

25            MR. MASTRO:  There is no disagreement to just move him

DBE8CHEF

1    to Monday morning.

2           Now, your Honor, that raises a separate question,

3    which is that there are two other potential witnesses that Mr.

4    Gomez said that he intended to call as of Monday morning, and

5    that's defendant Camacho and a witness named Humberto Piaguaje.

6    We also don't have witness statements from them.  And in

7    Mr. Humberto Piaguaje's case, we are entitled to a deposition

8    over the weekend.  I know Mr. Gomez says that he is waiting for

9    them to arrive here and will work on their witness statements

10   then, but I just wanted to clarify to the Court we don't have

11   their statements yet and Mr. Piaguaje has to be deposed over

12   the weekend before his testimony.  I just wanted to make that

13   clear on the record.  We just want to advance this to

14   conclusion so we are willing to work on very short schedules.

15   We just wanted to clarify that for the record.

16          Then, finally, we have the situation with Ms. Calva,

17   which remains open, and no representation one way or the other

18   about whether she is going to appear.

19          On Mr. Piaguaje, Humberto Piaguaje, as well as Javier

20   Piaguaje, both of whom purport to have roles with this thing

21   called the assembly of the affected, we also, your Honor, want

22   to make an application that the versions of minutes that have

23   been provided to us, they were selectively chosen, including

24   the January 15, 2013 meeting that your Honor will recall was

25   the subject of some testimony at the sanctions hearing.  We

DBE8CHEF

```
 1    have received selective portions of minutes from the assembly,

 2    a handful of dates that they have chosen to put in, heavily

 3    redacted.  So every time Mr. Fajardo --

 4              THE COURT:  Get to the bottom line.  What is it that

 5    you want?

 6              MR. MASTRO:  I want you to order them in advance of

 7    Mr. Piaguaje's deposition to give us the unredacted versions of

 8    the assembly minutes that they are offering or otherwise.

 9              THE COURT:  What is the problem with that, if there is

10    one?

11              MR. GOMEZ:  I will address the latter point first, and

12    then I would like to be heard on the others.

13              The reason why the documents, the particular minutes

14    are redacted are to preserve communications between counsel and

15    clients.  I redacted them personally, and I only redacted when

16    the attorneys were speaking to each other and giving advice to

17    their clients.  That's why those portions are redacted.  I

18    requested all of the minutes.  I received what I received and I

19    produced everything that I received.  I have not had the

20    funding to translate everything that I received so we only have

21    Spanish language versions of these minutes.

22              I have been making efforts to try to get more because

23    I think that all parties would be served by a full and complete

24    record of these minutes, but since I don't have control over

25    them, all I can do is ask at this point.  I will continue to
```

DBE8CHEF

1       make efforts.

2                   THE COURT:  I understand that's your position, and you

3       have undoubtedly read my opinion and findings.

4                   MR. GOMEZ:  I have.

5                   So bottom line, your Honor, I am trying to continue to

6       make efforts to produce more material that plaintiffs have

7       asked for, and I will continue to do so.

8                   In terms of the appearance of my witnesses --

9                   THE COURT:  Before we move off this subject, Mr.

10      Mastro, what is your response to that, if any?

11                  MR. MASTRO:  About how they redacted?

12                  THE COURT:  Yes.

13                  MR. MASTRO:  Your Honor, one, I think there are waiver

14      issues here.  Two, it seems to me that the kind of defense

15      which they are arguing is they had these meetings where the

16      attorneys came in and made a recommendation and then it was

17      adopted.  That's not a privileged communication from the

18      attorney to them.

19                  THE COURT:  How much paper is there?

20                  MR. MASTRO:  How many minutes are there?  There are 23

21      separate days of minutes.

22                  THE COURT:  How many pages?

23                  MR. MASTRO:  Each set of minutes is two to five pages,

24      your Honor.

25                  We will take the Spanish, your Honor.  We can

DBE8CHEF

1   translate it.

2          THE COURT:  I know you can.

3          MR. MASTRO:  We will get translations to the Court

4   too.

5          THE COURT:  Mr. Gomez, there is a problem here.  They

6   are entitled to have this material reviewed, as you know.

7   You're nodding affirmatively.

8          MR. GOMEZ:  I understand that.

9          THE COURT:  That's got to be done on a very tight

10  timetable, and you're telling me they are all in Spanish, is

11  that right?

12         MR. GOMEZ:  That's correct.

13         MR. MASTRO:  I am told the ones they have produced to

14  us is English with redactions, so presumably the redactions

15  have English in them, but the ones they produced to us are in

16  English.

17         THE COURT:  Show me what they produced to you, Mr.

18  Mastro.

19         MR. MASTRO:  Here is an example.  January 15.  We have

20  English translations for everything but the portions redacted,

21  your Honor, already done.

22         MR. GOMEZ:  Just so it's clear --

23         THE COURT:  Just give me a minute.

24         MR. MASTRO:  They did produce it in Spanish.

25         THE COURT:  What I have been handed, the whole

DBE8CHEF

1    beginning of it looks like something somebody got from the

2    Freedom of Information Act from the National Security Agency.

3    It's mostly black.  But it's all in English.

4            MR. MASTRO:  The back part is Spanish.

5            THE COURT:  So there is a translation.

6            Mr. Gomez, the redacted portions, have they been

7    translated?

8            MR. GOMEZ:  No, your Honor.  Just for the record, your

9    Honor, this is the most heavily redacted of the minutes.  Most

10   of the minutes are not redacted at all.

11           THE COURT:  Then as to those, we don't have a problem.

12   So what we are talking about is the ones as to which we have a

13   problem.

14           I am just waiting to see whether I can find out

15   quickly whether -- the answer is I can't find out quickly.  I

16   was trying to see if Judge Francis spoke Spanish, but I guess

17   the answer is no, that is, no, we can't reach him.

18           MR. MASTRO:  Your Honor, we are willing to pay for a

19   translator to do this work, and then if there is going to be a

20   submission to Judge Francis on privilege claims, we will pay

21   for the translations.

22           THE COURT:  What about that, Mr. Gomez?  Suppose you

23   hire a translator, you get the redactions translated very

24   quickly into English.  Mr. Mastro has offered to pay the

25   translator.  The translator gives you the product and then you

DBE8CHEF

1   give the redaction, the full documents in English to Judge

2   Francis, if he is available, and we will find out today if he

3   is available, and he will deal with the privilege issues

4   relating to these documents.  And if he is not available on

5   this timetable, we will go to plan B, and that will be one of

6   the special masters, depending on who is available.

7           MR. GOMEZ:  I have no objection to a review of our

8   privilege objections in camera.

9           THE COURT:  You are to get these translated right

10  away.  Chevron will pay the bill.  You can check back with Andy

11  later in the day as to who is going to do it.

12          MR. GOMEZ:  Very well.

13          THE COURT:  What else?

14          MR. GOMEZ:  I just want to make sure the record is

15  complete.  With respect to our inability to have witness

16  statements as of this time, since I left court yesterday, I

17  have been dealing with the situation regarding Mr. Moncayo's

18  downloading of his hard drive, a process I understand took over

19  ten hours yesterday.  And during the course of that process,

20  Mr. Moncayo was asked to provide credentials for his e-mail.

21  His e-mail was then mirrored.

22          I am not casting aspersions on anyone who conducted

23  the process.  I am not saying that anything was done

24  improperly.  The problem that I have is the perception of Mr.

25  Moncayo, where he was not simply kept informed about all the

DBE8CHEF

1    steps that were being taken with his computer.  Various people

2    were connecting various different things to it.  I am sure that

3    was probably necessary.  But, unfortunately, the fact that all

4    of his e-mails, including personal e-mail, was imaged was of

5    great concern to him.

6         THE COURT:  I understand.  But what was imaged, there

7    are two copies, as I ordered.  One is in the hands of Mr.

8    Moncayo's lawyer and the other is in the vault of this court.

9         MR. GOMEZ:  That's correct.

10        THE COURT:  Now, I can appreciate that somebody from

11   another country might have some concerns, notwithstanding what

12   we lawyers would all understand is not a problem, but we are

13   talking here about witness statements for other people.  Could

14   we deal with that, if that's what you want to deal with?

15        MR. GOMEZ:  We are making efforts to prepare them.

16   Javier Piaguaje is in the United States.  I started to meet

17   with him last night.  I will continue to meet with him today

18   and we will have the witness statement.

19        I do not know at this point whether Hugo Camacho and

20   Humberto Piaguaje will take the stand as a result of what they

21   have heard happened with Mr. Moncayo and the imaging of his

22   personal e-mail.  They obviously have privacy concerns, your

23   Honor, and I am trying to do my best to persuade them that

24   their testimony is valuable to these proceedings and they

25   should take the stand.

DBE8CHEF

```
 1              THE COURT:  I appreciate your efforts, but in the last
 2    analysis, your problem with your witnesses are your problems,
 3    they are not my problems.  No doubt the other side could go on
 4    at vast length about their problems with their witnesses, and
 5    it's all very interesting to somebody some day.  But unless
 6    there is something I am supposed to do about it, I'm not sure
 7    what the point is.
 8              MR. GOMEZ:  We will be working with the other side as
 9    best we can, and if it turns out that there are fewer
10    witnesses, then there will just be fewer witnesses.
11              THE COURT:  I understand.
12              Anything else this morning?
13              Mr. Friedman.
14              MR. FRIEDMAN:  Just quickly.  There has actually been
15    many things that you haven't had to address.
16              THE COURT:  I am relieved to hear that.
17              MR. FRIEDMAN:  Mr. Seley and I have been talking and
18    working on exhibits, and that part of the process, despite our
19    initial and continued disorganization, is coming together.
20              Here is my request to the Court.  We have given all of
21    our defense exhibits, and they are being checked by the Chevron
22    people against the hard drive electronic copy to make sure
23    everything is fine.  They are initialing each one.  There is
24    something like 2500 Chevron exhibits.  If the Court would
25    permit me, I would like to just stipulate to whatever the
```

DBE8CHEF

number is, and we can do this on Monday.  What I am trying to

get out of is sitting for however many hours it would take to

initial each of those exhibits and just stipulate that they are

correct and accurate.

THE COURT:  Here is why I am concerned.  There is a

vast amount of paper.  There are in the case of just the

witness directs a number of different versions that have

floated around of one or another of these items.  I have only

one objective, and that is at the end of the day, there is not

a dispute or an issue about what the record actually is, which

ones came in, which ones didn't come in.  That's the goal.

It seems to me that goal is best served by there being

one definitive paper set with initials of counsel for both

sides, all three sides, on the definitive copy.  There is just

too much potential for mischief here otherwise.  I didn't mean

that in a sense suggesting moral turpitude by anybody.

Confusion, mistake, error, and I apprehend the possibility that

if, as and when there is ever an appeal, and I rather imagine

that is inevitable no matter what happens here, the parties

will be back before me 18 months from now fighting about which

of several versions of some piece of paper is the one that was

actually received.  It's crazy to open this process up to that,

and I won't.

Now, if you have got a better plan, I am all ears, but

a general stipulation that says, well, you know, they are all

DBE8CHEF

1    in, I don't understand how that solves anything.

2            MR. FRIEDMAN:  This may be totally consistent with

3    what you're saying.  As I see it, there are, just like you said

4    at the beginning of the trial, of the 2500 exhibits, only 100

5    maybe have been mentioned, maybe 200 in court by witnesses

6    beyond the transcript.  I am happy to sit and make sure those

7    are all the same.

8            Then you have got however many additional, 2300

9    exhibits, that have not been mentioned, probably never will be

10   mentioned again.  And what I am willing to stipulate, if the

11   Court will accept it, is that whatever that number is, that's

12   what it is.  I think the purpose of initialing the hard copy is

13   so that there is agreement that exhibit --

14           THE COURT:  That this is it.

15           MR. FRIEDMAN:  That this is it.  I am willing to

16   stipulate that this is it.

17           THE COURT:  The only problem is that kind of a

18   stipulation does not include an agreement as to what "it" is.

19           Look, I don't want to waste any time of mine or yours

20   doing a needless task.  And if the collective intelligence of

21   all the lawyers in this case, which is quite appreciable, can

22   figure out something better, I am entirely receptive to

23   minimizing whatever burden there is.  But it needs to be

24   definitive.  And while it is true that at one point or another

25   I may well have commented that you often get cases where there

DBE8CHEF

1    are masses of exhibits and you wind up with 12 or 14 pieces of

2    paper that really matter, that may not ultimately fit in this

3    case.  And in all my spare time during this trial, one of the

4    things I have been doing, to some degree, is scrolling through

5    the exhibits to see what is in this mound and reading them.  I

6    haven't finished.  I am making no representations.  I am

7    certainly not giving interviews about how many I have left to

8    read or anything else for that matter.  But I mention it only

9    because I imagine that we are going to have submissions and

10   arguments at the end of the trial that are going to rely in

11   some material way on exhibits that have never been mentioned in

12   testimony.

13          MR. FRIEDMAN:  That's true.

14          THE COURT:  That's obviously true.  So the "let's look

15   at the 200 that were mentioned" solution is not intuitively,

16   obviously, attractive, as sympathetic as I truly am.

17          MR. FRIEDMAN:  Then what I would ask, unless we do

18   come up with some other way to address the problem, if we could

19   do that process of initialing the exhibits after closing

20   argument so that -- it's going to take hours and hours, and I

21   won't say any more.

22          THE COURT:  Unless there is something I am

23   overlooking, I don't think I should have a problem with that.

24          Mr. Gomez, do you have a problem with that?

25          MR. GOMEZ:  No, your Honor.

DBE8CHEF

1           THE COURT:  Mr. Mastro.

2           MR. MASTRO:  No, your Honor.

3           THE COURT:  All right.  I will put you on a tight time

4    frame after, but we can do it at the end.

5           MR. FRIEDMAN:  We will do it the day after closing

6    arguments.

7           THE COURT:  That's fine.

8           MR. MASTRO:  Your Honor, Mr. Friedman raises a point

9    that I wanted to raise with the Court as well, which is, and

10   the Court just mentioned it, closing arguments.  I am not sure

11   when the Court will want to do those, how close to the end of

12   witness testimony will your Honor want to do that, and how much

13   time will your Honor want to permit the parties?  It is a bench

14   trial so the closings are for the convenience of the Court,

15   whenever the Court wants to hold them.  We would certainly like

16   an hour or so of closing time for each side.  But it's really

17   up to the Court and when the Court wants to have them.  If the

18   Court can give us any guidance on that, it will be extremely

19   helpful.

20          THE COURT:  What are the other views?

21          MR. FRIEDMAN:  Assuming that we are done with Mr.

22   Donziger sometime on Tuesday, which I think is probably a fair

23   assumption, but I don't know, assuming that were the case, we

24   would be ready to do closing arguments after a couple of hours

25   of preparation.  So if we finished him at 11:00 on Tuesday, we

DBE8CHEF

1    would be willing to start closings that afternoon.  I want to

2    go home.  That's basically what I am about here.

3              On the other hand, if Mr. Mastro wants to wait a day

4    or so, that's fine, but I'd rather not drag it out.  And an

5    hour is plenty.  We were going to ask the Court for 45 minutes.

6    If Mr. Mastro wants an hour, we don't have a problem with that.

7              The thing is Mr. Gomez and I have a lot respect for

8    each other, but we don't see eye to eye on a lot of issues, and

9    I would ask that we -- I would like 45 minutes for me.  I will

10   let him speak for how much time he wants.

11             MR. GOMEZ:  Your Honor, at least 24 hours for us to --

12             MR. MASTRO:  I object to a 24 hour closing.

13             MR. GOMEZ:  I need at least a full day to go back and

14   figure out what is in this case.  I would also ask for equal

15   time to close as opposed to splitting it between us.

16             THE COURT:  I don't have any problem at all with three

17   quarters of an hour for Mr. Friedman, three quarters of an hour

18   for Mr. Gomez, and up to equal time for Chevron, an hour and a

19   half, if you want it, and if you want to save part of that for

20   rebuttal you can.  If you don't want to save part of it for

21   rebuttal, you can have a few minutes just to answer anything

22   unexpected.  Your call.

23             I will try to give you a day in between, but I am not

24   promising now because I have scheduling issues.  Obviously, I

25   understand why you want it, and it's perfectly reasonable, and

DBE8CHEF

1    I will try to accommodate it.

2              Anything else?

3              MR. MASTRO:  Nothing further, your Honor.

4              Of course, we do have a rebuttal case, but it won't be

5    that long.

6              THE COURT:  I forgot about that.

7              MR. FRIEDMAN:  That does raise the question.  I don't

8    know what your normal procedure is in a rebuttal case.  Do we

9    get notice of who the witnesses are?  Will there be witness

10   statements?

11             THE COURT:  We resolved the second one yesterday.  I

12   think I indicated no.

13             MR. FRIEDMAN:  That's true.

14             THE COURT:  Will you get notice?  Sure.

15             MR. MASTRO:  We will.  Again, how many witnesses we

16   end up calling will depend, in part, on whether Ms. Calva is

17   going to come here to testify, and I think Mr. Gomez indicated

18   that he would let the Court and us know by tomorrow what the

19   resolution of that was.

20             MR. GOMEZ:  That's correct.

21             THE COURT:  I think that probably does it.

22             MR. GOMEZ:  The only other issue that is outstanding

23   is Humberto Piaguaje appears on the plaintiff's initial

24   disclosures.  As I understand it, he was not noticed for a

25   deposition.  Therefore, it's our position that plaintiffs are

DBE8CHEF

1    not entitled to take his deposition.

2              THE COURT:  Mr. Mastro, do you agree that he was on

3    the initial disclosure?

4              MR. MASTRO:  He was not on the defendants' initial

5    disclosures.  We listed many Ecuadorians who we thought might

6    know something about this case, that we couldn't compel to be

7    here at all, as people that we had interest in.  They didn't

8    list him at all on theirs.  And, your Honor, especially given

9    that they haven't produced any documentation --

10             THE COURT:  Mr. Mastro, stop, please.

11             Mr. Gomez, did you serve a 26(a) disclosure

12   identifying Humberto Piaguaje?

13             MR. GOMEZ:  No, your Honor.

14             THE COURT:  They get the deposition.

15             MR. GOMEZ:  Thank you, your Honor.

16             THE COURT:  Anything else?

17             MR. MASTRO:  We will resume on Monday morning?

18             THE COURT:  I guess that's right.

19             (Adjourned to November 18, 2013, at 9:30 a.m.)

20

21

22

23

24

25

```
 1                      INDEX OF EXAMINATION

 2   Examination of:                           Page

 3   JOSHUA LIPTON

 4   Direct By Mr. Blume  . . . . . . . . . . . .2343

 5                    PLAINTIFF EXHIBITS

 6   Exhibit No.                             Received

 7    5200    . . . . . . . . . . . . . . . . . .2344

 8    5208 and 5210   . . . . . . . . . . . . . .2345

 9                    DEFENDANT EXHIBITS

10   Exhibit No.                             Received

11    78, 80, 81, 83 and 90   . . . . . . . . . .2347

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```