UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                          :

CHEVRON CORPORATION,          :

            Plaintiff,      :

    -against-         :   Case No. 11 Civ. 0691 (LAK)

                          :

STEVEN R. DONZIGER, et al.,    :

           Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# CHEVRON CORPORATION'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION
## TO DISMISS (DKTS. 1861, 1862)

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

*Attorneys for Plaintiff Chevron Corporation*

## TABLE OF CONTENTS

Page

TABLE OF DEFINED TERMS AND ABBREVIATIONS ........................................................... v

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT ................................................................................................................................. 4

I.     Chevron Has Suffered, and Will Continue to Suffer, Ongoing Injuries ............................. 4

II.    These Injuries Are "Fairly Traceable" to Defendants' Ongoing Scheme .......................... 8

III.   A Favorable Decision Will Redress Chevron's Injuries by Depriving
       Defendants of the Fruits of Their Past Wrongful Acts and Reducing or
       Preventing Future Harm ................................................................................................... 9

IV.   Defendants Cannot Sidestep the Evidence Against Them With a Post-Trial
       "Standing" Challenge ...................................................................................................... 15

CONCLUSION ............................................................................................................................ 17

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Bennett v. Spear*,
520 U.S. 154, 117 S. Ct. 1154 (1997) ................................................................. 9

*Cacchillo v. Insmed, Inc.*,
638 F.3d 401 (2d Cir. 2011) ............................................................................ 2

*Chevron Corp. v. Naranjo*,
667 F.3d 232 (2d Cir. 2012) ............................................................................ 8

*Clapper v. Amnesty Int'l USA*,
133 S. Ct. 1138 (2013) ............................................................................ 3, 5, 6, 7

*Coghlan v. Starkey*,
852 F.2d 806 (5th Cir. 1988) ............................................................................ 2

*Davis v. Fed. Election Comm'n*,
554 U.S. 724, 128 S. Ct. 2759 (2008) ................................................................ 4, 5

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ............................................................................ 2, 5

*Duke Power Co. v. Carolina Envtl. Study Group, Inc.*,
438 U.S. 59, 98 S. Ct. 2620 (1978) ................................................................ 9, 13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167, 120 S. Ct. 693 (2000) ........................................................ 1, 7, 10, 15

*Hedges v. Obama*,
724 F.3d 170 (2d Cir. 2013) ............................................................................ 6

*Heldman on behalf of T.H. v. Sobol*,
962 F.2d 148 (2d Cir. 1992) ............................................................................ 3

*Hollingsworth v. Perry*,
133 S. Ct. 2652 (2013) ............................................................................ 4

*Horne v. Flores*,
557 U.S. 433, 129 S. Ct. 2579 (2009) ................................................................ 4

*Larson v. Valente*,
456 U.S. 228, 102 S. Ct. 1673 (1982) ................................................................ 3, 11

ii

*Leibovitz v. New York City Transit Auth.,*
    252 F.3d 179 (2d Cir. 2001) ............................................................. 7

*Lepelletier v. F.D.I.C.,*
    164 F.3d 37 (D.C. Cir. 1999) .......................................................... 13

*Los Angeles v. Lyons,*
    461 U.S. 95, 103 S. Ct. 1660 (1983) ............................................... 7

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555, 112 S. Ct. 2131 (1992) .................................... 4, 5, 8, 9

*Massachusetts v. E.P.A.,*
    549 U.S. 497, 127 S. Ct. 1438 (2007) ..................................... 8, 9, 12

*Massachusetts v. Mellon,*
    262 U.S. 447, 43 S. Ct. 597 (1923) ................................................ 2

*Motorola Credit Corp. v. Uzan,*
    202 F. Supp. 2d 239 (S.D.N.Y. 2002) .......................................... 13

*Nat'l Org. for Women, Inc. v. Scheidler,*
    267 F.3d 687 (7th Cir. 2001) ........................................................ 13

*Nat'l Org. for Women, Inc. v. Scheidler,*
    91 F. App'x 510 (7th Cir. 2004) ................................................... 13

*Oscar Gruss & Son v. Lumberman's Mut. Cas. Co.,*
    422 F.2d 1278 (2d Cir. 1970) ....................................................... 16

*Rothstein v. UBS, AG,*
    708 F.3d 82 (2d Cir. 2013) ................................................... 8, 9, 17

*Scheidler v. Nat'l Org. for Women, Inc.,*
    547 U.S. 9 (2006) .......................................................................... 13

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83, 118 S. Ct. 1003 (1998) ................................... 2, 3, 9, 10

*Summers v. Earth Island Inst.,*
    555 U.S. 488, 129 S. Ct. 1142 (2009) ............................................ 4

*UCFW Local 1776 v. Eli Lilly & Co.,*
    620 F.3d 121 (2d Cir. 2010) ........................................................... 8

*United States v. Manton,*
    107 F.2d 834 (2d Cir. 1938) ......................................................... 16

*Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*,
  529 U.S. 765, 120 S. Ct. 1858 (2000) ................................................................. 4, 7

*Warth v. Seldin*,
  422 U.S. 490, 95 S. Ct. 2197 (1975) ..................................................................... 10

**Statutes**

18 U.S.C. § 1964(c) .................................................................................................... 7

**Treaties**

Wright & Miller, 13A *Fed. Prac. & Proc. Juris.* § 3531 (3d ed. 2013) ........................................ 2

## TABLE OF DEFINED TERMS AND ABBREVIATIONS

| | |
|---|---|
| Chevron | Plaintiff Chevron Corporation |
| Defendants | All defendants to this action |
| Dkt. 1847 | Chevron's Post-Trial Memorandum of Law |
| Dkt. 1850 | Donziger's Post-Trial Memorandum of Law |
| Dkt. 1851 | The LAPs' Post-Trial Memorandum of Law |
| Dkt. 1855 | Chevron's Post-Trial Reply Memorandum of Law |
| Dkt. 1857 | Donziger's Post-Trial Reply Memorandum of Law |
| Dkt. 1858 | The LAPs' Post-Trial Reply Memorandum of Law |
| Donziger | Defendants Steven R. Donziger, The Law Offices of Steven R. Donziger, and Donziger & Associates PLLC |
| LAPs | The plaintiffs in the Lago Agrio litigation, including appearing Defendants Hugo Gerardo Camacho Naranjo and Javier Piaguaje Payaguaje |
| Tr. | Transcript from the trial in this action |

## PRELIMINARY STATEMENT

Chevron proved at trial that Defendants have injured it, and threaten further injury, through an ongoing scheme to extort and defraud the company by means of falsehoods and corrupt acts in the United States, Ecuador, and elsewhere.  To remedy this wrongful, indeed criminal, scheme, and prevent further harm to the company, Chevron has asked this Court to order equitable relief that would, among other things, (1) stop Defendants' extortionate scheme; (2) prevent Defendants from initiating any recognition and enforcement action in the United States, where Chevron's assets are located; and (3) require Defendants to divest all interest in the criminal enterprise and disgorge any ill-gotten gains—from whatever source—to Chevron, and thereby effectively bar them from monetizing their fraudulent judgment.  This proposed injunction will provide meaningful relief against Defendants' schemes.  Just a few months ago, Defendants complained to the Second Circuit that Chevron's proposed injunction was *too* potent, calling it "stunning" and "practically identical to the injunction vacated by this Court in *Naranjo*," because it would prevent them "from benefitting in any way from any action, foreign or domestic, to enforce the Judgment."  *In re Naranjo*, No. 13-772, Dkt. 160-1 at 2 (2d Cir. Sept. 18, 2013).  Now that trial is concluded, however, and Defendants' inability to respond to the evidence of their wrongdoing has been documented in open court, Defendants claim the opposite:  that Chevron's proposed injunction is meaningless and cannot remedy any of the injuries—past or threatened—that Chevron has proven, and therefore, Chevron lacks "standing" to maintain its lawsuit.  This is nonsense, without support in the case law, and the Court should summarily deny Defendants' frivolous motion.

Defendants conflate standing to bring a claim with the merits of the claim, exaggerate the requirements of both, and in the process underscore that they cannot evade that which they seek to avoid:  an evaluation of the evidence at trial.  *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw*

1

*Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181, 120 S. Ct. 693, 704 (2000) (rejecting attempt to

"raise the standing hurdle higher than the necessary showing for success on the merits"); Wright

& Miller, 13A *Fed. Prac. & Proc. Juris.* § 3531 (3d ed. 2013) ("[S]tanding is not defeated by

failure to prevail on the merits").[1]   The core requirements of Article III standing—an injury in

fact fairly traceable to Defendants' conduct, and one that is likely redressable by a favorable ju-

dicial decision—ensure that the judicial power is invoked only where justiciable controversies

have arisen.  *Massachusetts v. Mellon*, 262 U.S. 447, 488–89, 43 S. Ct. 597, 601 (1923).  For this

reason, successful standing challenges have "been very much tied to litigation asserting the ille-

gality of governmental action. . . .  Claims of private wrongdoing ordinarily are asserted by per-

sons obviously having the enforceable interest, if anyone has; such problems as arise commonly

are handled in terms of defining private causes of action or of identifying the real party in inter-

est."  Wright & Miller, *supra*, § 3531.  Defendants do not cite a single case in which an injured

private party was denied standing to bring a private claim against another private party.  And in

the only such cases they have cited addressing that scenario, the courts found standing to sue.

*See Cacchillo v. Insmed, Inc.*, 638 F.3d 401 (2d Cir. 2011); *Denney v. Deutsche Bank AG*, 443

F.3d 253 (2d Cir. 2006).[2]  Defendants cannot dispute that there is an ongoing controversy be-

tween them and Chevron, or that where, as here, one of the parties continues to injure the other,

the courts are empowered to resolve it.

     Defendants focus mainly on the "redressability" inquiry, arguing that because Chevron

---

[1]  Defendants' continued refusal to confront the evidence against them, but instead to present only a highly par-
tial and limited account of that evidence, confirms that they have no response to the case against them, and is im-
proper.  Defendants "'ignore[] significant issues and facts while deploying a smokescreen of irrelevant and tangen-
tial issues.'"  *Coghlan v. Starkey*, 852 F.2d 806, 810 (5th Cir. 1988) (affirming sanctions for frivolous appeal) (cita-
tion omitted).

[2]  In this regard, Defendants' reliance on *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107, 118 S. Ct.
1003, 1019 (1998), is misplaced.  There, the Court denied standing to a plaintiff who brought a citizen-suit to en-
force a public right to toxic chemical reports.  That is not the case here, where an injured private party has brought
private claims to remedy the wrongs that continue to be committed against it by other private parties.

has waived money damages against these Defendants and is not seeking to enjoin foreign en-

forcement actions, Chevron's proposed relief may not redress all of the past injuries that Chev-

ron has proven.  But "a plaintiff satisfies the redressability requirement when he shows that a fa-

vorable decision will relieve a discrete injury to himself.  He need not show that a favorable de-

cision will relieve his *every* injury."  *Larson v. Valente*, 456 U.S. 228, 243 n.15, 102 S. Ct. 1673,

1682 n.15 (1982).  Standing requires only a "likelihood that the relief requested would, in princi-

ple, redress the injury alleged."  *Heldman on behalf of T.H. v. Sobol*, 962 F.2d 148, 157 (2d Cir.

1992).  Where injunctive relief would eliminate a "substantial risk" of some of the threatened

harm, this can provide the redress necessary to confer standing.  *Clapper v. Amnesty Int'l USA*,

133 S. Ct. 1138, 1150 n.5 (2013); *Steel Co.*, 523 U.S. at 108–09, 118 S. Ct. at 1019 (where plain-

tiff alleges a "continuing violation or the imminence of a future violation, the injunctive relief

requested would remedy that alleged harm" and thus satisfy Article III).  Chevron's proof that

Defendants are actively trying to take assets and inflict reputational and other injuries to extort a

multi-billion dollar payoff justifies the invocation of judicial power to issue an order prohibiting

their further misconduct.

　　　In sum, the basis for Article III standing is simple.  Chevron proved at trial that Defend-

ants' ongoing racketeering and fraud has caused it injury, and will continue to cause it further

injury, absent judicial intervention.  *See* Dkt. 1855 at 38–44.  Defendants and their allies make no

secret of this.  Indeed, one of Defendants' witnesses testified to it.  Tr. (H. Piaguaje) 2677:5–11;

*see also* Dkt. 1847 at 198, 235, 321; Dkt. 1848 ¶¶ 127–28; Dkt. 1855 at 38–39.  Chevron seeks

an injunction that will, among other things, bar Defendants from continuing their extortionate

scheme and from threatening Chevron's assets and those of its subsidiaries.  Dkt. 1847 at 340–

41.  Such an injunction is more than sufficiently likely to deprive Defendants of the fruits of their

past injuries to Chevron and redress Chevron's future injuries.  Accordingly, Defendants' base-less motion should be denied.

## ARGUMENT

"[T]he irreducible constitutional minimum of standing contains three elements," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2131, 2136 (1992), each of which is satis-fied here.  Namely, throughout this suit and continuing to the present, Chevron has shown (1) an "injury in fact" that affects Chevron in a particularized way and is not merely hypothetical, (2) the injury is "fairly traceable" to Defendants' misconduct, and (3) the injury is likely to be redressed by a favorable judicial decision.  *Id*. at 590, 112 S. Ct. at 2152; *accord Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013) ("[F]or a federal court to have authority under the Consti-tution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm.").  In other words, "the critical question" is whether Chevron has established "a sufficient-ly personal stake in the outcome of the controversy to support standing."  *Horne v. Flores*, 557 U.S. 433, 445, 129 S. Ct. 2579, 2592 (2009) (quotation marks and citation omitted).

## I.      Chevron Has Suffered, and Will Continue to Suffer, Ongoing Injuries

An "injury in fact" is an invasion of a "legally protected interest," *Lujan*, 504 U.S. at 560, 112 S. Ct. at 2136, such as "the violation of a legally protected right."  *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 772–73, 120 S. Ct. 1858, 1862 (2000).  Where, as here, a plaintiff seeks injunctive relief, it "must show that [it] is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectur-al or hypothetical."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S. Ct. 1142, 1149 (2009); *see also Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734, 128 S. Ct. 2759, 2769 (2008) ("A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct.").

As set forth in its post-trial briefing, Chevron has suffered injury in fact in the form of le-
gal fees and further expenditures in connection with the § 1782 proceedings and enforcement
actions, as well as lost management time and goodwill.  *See* Dkt. 1855 at 40–41; *see also* Dkt.
1847 at 322–26.  Chevron is the target of Defendants' scheme and the victim of their miscon-
duct, giving Chevron a uniquely personal stake in the outcome of this litigation.  When "the
plaintiff is himself an object of the action (or forgone action) at issue[,] there is ordinarily little
question that the action or inaction has caused him injury." *Lujan*, 504 U.S. at 561–62.

Furthermore, because Defendants' scheme is ongoing, Chevron continues to be threat-
ened with a variety of "real, immediate, and direct" injuries.  *Davis*, 554 U.S. at 734; *see also*
*Denney*, 443 F.3d at 264–65 ("An injury-in-fact may simply be the fear or anxiety of future
harm.").  Chevron faces the real threat of responding to ongoing and contemplated enforcement
actions in the United States and elsewhere, as well as the threat of further reputational harms,
asset seizures, and disruption of business operations.  And the corrupt judgment with which De-
fendants continue in the present to threaten Chevron and its subsidiaries totals $9 billion.  *See*
Dkt. 1847 at 324–25; Dkt. 1855 at 42–43.

Defendants claim that Chevron lacks standing unless it can show that its future injuries
are "certainly impending" (Dkt. 1861 at 1), but this misstates the law.  The Supreme Court has
explained that its "cases do not uniformly require plaintiffs to demonstrate that it is literally cer-
tain that the harms they identify will come about.  In some instances, we have found standing
based on a 'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably
incur costs to mitigate or avoid that harm." *Clapper*, 133 S. Ct. at 1150 n.5; *see also id*. at 1160
(Breyer, J., dissenting) ("[C]ertainty is not, and never has been, the touchstone of standing.  The
future is inherently uncertain.  Yet federal courts frequently entertain actions for injunctions and

for declaratory relief aimed at preventing future activities that are reasonably likely or highly likely, but not absolutely certain, to take place.  And that degree of certainty is all that is needed to support standing here."); *Hedges v. Obama*, 724 F.3d 170, 195–96 (2d Cir. 2013) (explaining that "*Clapper* recognized that the Court has not uniformly required that it be 'literally certain that the harms [plaintiffs] identified will come about'").

Here, there is at the very least a "substantial risk" that Defendants will press forward with their ongoing scheme, as they have time and again promised to do.  Indeed, it is a virtual certainty that Defendants will continue their efforts to extort Chevron by, among other things, litigating the extant enforcement actions and bringing new ones elsewhere (including in the United States), attempting to obtain additional financing for their scheme by selling off pieces of the fraudulent judgment, and maintaining their ongoing public pressure campaign against Chevron founded on demonstrable falsehoods.

There is no comparison between the risk that Chevron is facing and the "hypothetical injury" at issue in *Clapper*.  There, the plaintiffs—who challenged a statute authorizing the Government's interception of foreign communications—lacked standing because any future injury was based on a "highly attenuated chain of possibilities," including speculation whether the Government would choose to target the challengers' foreign communications, whether the Government would rely on the challenged statute to do so, whether the Government would seek and obtain judicial approval, and whether the Government would then succeed in acquiring the foreign communications.  *Clapper*, 133 S. Ct. at 1148–50.  Defendants, by contrast, have already embargoed Chevron Intellectual Property LLC's trademarks in Ecuador (*see* PX 6000 (Anson) ¶ 9; Dkt. 1516)—including the "Chevron" logo—and have secured a right (from the biased and corrupt Ecuadorian courts) to collect Chevron's arbitration award against the Republic of Ecua-

dor (PX 454), they have already filed three foreign enforcement actions and have promised doz-ens more, and they have already unleashed a barrage of near-daily press releases, letters to gov-ernment officials and shareholders, web videos, and cartoons in an effort to extort a payoff from Chevron (*see* Dkt. 1847 at 197–98, 234–35, 321; Dkt. 1848 ¶¶ 127–28; Dkt. 1855 at 38–39; *see also* PX 8100 at 2 ("Pablo Fajardo:  let the world know that our fight continues.  That one deci-sion, issued by judge Kaplan does not stop us or the payment collection actions we have begun against the oil company.")).[3]  These "[p]ast wrongs [are] evidence bearing on whether there is a real and immediate threat of repeated injury."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S. Ct. 1660, 1665 (1983) (quotation marks omitted); *accord Laidlaw*, 528 U.S. at 184 (hold-ing that defendants' actual misconduct "occurring at the time the complaint was filed" made it sufficiently likely that it would continue).[4]

Consequently, there is nothing "conjectural or hypothetical" about Chevron's risk of fu-ture economic and non-economic injuries flowing from Defendants' ongoing extortion scheme. *Vt. Agency of Natural Res.*, 529 U.S. at 771, 120 S. Ct. at 1861; *see, e.g.*, *Laidlaw*, 528 U.S. at 181–82, 120 S. Ct. at 704 (2000) (finding a cognizable injury where a river "looked and smelled polluted; and [plaintiff] would like to fish, camp, swim, and picnic in and near the river . . . as he did when he was a teenager, but would not do so because he was concerned that the water was polluted by [defendant's] discharges"); *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 185 (2d Cir. 2001) (explaining that "noneconomic injury can satisfy Art. III's 'injury in fact' re-

---

[3]  Unlike Chevron, which has offered unrebutted (and in some cases stipulated) proof of past and ongoing harms resulting from Defendants' misconduct, the challengers in *Clapper* "fail[ed] to offer any evidence that their commu-nications had been monitored" in the past and could only "speculate" about whether they would be monitored in the future—"a failure that substantially undermines their standing theory."  133 S. Ct. at 1148.

[4]  Chevron's past injuries also are more than sufficient to establish what Donziger refers to as "RICO standing." *See* 18 U.S.C. § 1964(c) (RICO plaintiff must show that he was "injured in his business or property").

quirement," and finding that emotional trauma was a sufficient injury to support standing).[5]

## II.    These Injuries Are "Fairly Traceable" to Defendants' Ongoing Scheme

Defendants also misstate the second element of Article III standing, which requires only that "the injury is fairly traceable to the defendant." *Massachusetts v. E.P.A.*, 549 U.S. 497, 517, 127 S. Ct. 1438, 1453 (2007). This means that the injuries with which Chevron is now threatened cannot be the result of the independent action of some third party not before the Court. *Lujan*, 504 U.S. at 560. To the extent Chevron faces the loss of attorneys' fees and related costs in defending against enforcement actions, the loss of goodwill and reputational harm via Defendants' public pressure campaign, and the loss of up to $9 billion if Defendants were to succeed in their extortionate scheme, such injuries are "fairly traceable" to Defendants' ongoing misconduct. Indeed, these injuries are the very point of Defendants' scheme, which seeks to bludgeon Chevron into submission and to force a multi-billion dollar payoff.

Defendants conflate standing with proving causation on the merits. They confuse the minimal showing needed to establish a "fairly traceable" injury with proof of proximate cause. *See*, *e.g.*, Dkt. 1861 at 9 (arguing that in order to establish standing, Chevron must show that "there would be no enforceable judgment against it had the Cabrera Report . . . been prepared differently").[6] But Chevron has proved causation, and, in any event, "the 'fairly traceable' standard is lower than that of proximate cause." *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013). A fairly traceable injury is "most easily shown if there is a direct relationship between the

---

[5] Ironically, Defendants argue that injuries based on the enforcement actions are "unripe" because Defendants have not yet collected on the judgment. Dkt. 1861 at 11. But the Second Circuit rejected this very contention in *Chevron Corp. v. Naranjo*, 667 F.3d 232, 242 n.16 (2d Cir. 2012) ("Regardless of whether Chevron's theory of the laws of Latin American judgment enforcement is correct, the controversy on this very point is sufficient for a finding of ripeness under Article III.").

[6] Defendants rely on cases such as *UCFW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121 (2d Cir. 2010) (Dkt. 1861 at 16), which address "proximate causation" on the merits, and not the question of standing. 620 F.3d at 134.

plaintiff and the defendant with respect to the conduct at issue." *Id*. A "fairly traceable" injury may be shown even where the defendant's actions are not "the very last step in the chain of causation"—that is, where the ultimate injury is "produced by the [defendant's] determinative or coercive effect upon the action of someone else." *Bennett v. Spear*, 520 U.S. 154, 168–69, 117 S. Ct. 1154, 1164 (1997); *see also Rothstein*, 708 F.3d at 92 ("[T]hat there is an intervening cause of the plaintiff's injury may foreclose a finding of proximate cause but is not necessarily a basis for finding that the injury is not 'fairly traceable' to the acts of the defendant.").

Here, the injuries with which Chevron is threatened are at least "fairly traceable" to Defendants' fraud, extortion, and other misconduct. *See Massachusetts*, 549 U.S. at 525, 127 S. Ct. at 1458 (finding standing where challenged actions "make a meaningful contribution" to a plaintiff's injury); *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 76, 98 S. Ct. 2620, 2632 (1978) (finding a sufficient connection, for purposes of standing, between a law limiting liability for nuclear power plants and pollution caused by a nuclear power plant). And in any event, as set forth in Chevron's post-trial briefing, Chevron has proven "causation" on the merits because its past and future injuries are the result of Defendants' misconduct. *See, e.g.*, Dkt. 1847 at 125–36, 197, 218–46; Dkt. 1855 at 38–42.

### III.   A Favorable Decision Will Redress Chevron's Injuries by Depriving Defendants of the Fruits of Their Past Wrongful Acts and Reducing or Preventing Future Harm

The third prong of standing is that "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (quotation marks and citation omitted). While the Supreme Court has "packaged the requirements of constitutional 'case' or 'controversy' somewhat differently in the past 25 years—an era rich in three-part tests—the point has always been the same:  whether a plaintiff 'personally would benefit in a tangible way from the court's intervention.'" *Steel Co.*, 523 U.S. at 103 n.5 (quoting *Warth v.*

*Seldin*, 422 U.S. 490, 508, 95 S. Ct. 2197, 2210 (1975)).  There is no reason that, for example, an order of divestment of interest in the RICO enterprise and any profits therefrom is not proper redress to Chevron for Defendants' past harms to the company, and there is no question that prevention of future wrongs can justify invocation of judicial power.  In fact, even injunctive relief that "cannot conceivably remedy any past wrong . . . can of course be 'remedial' for Article III purposes." *Id.* at 108.  Indeed, "[i]t can scarcely be doubted that, for a plaintiff who is injured or faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress." *Laidlaw*, 528 U.S. at 185–86, 120 S. Ct. at 706 (2000); *see also Steel Co.*, 523 U.S. at 108, 118 S. Ct. at 1019 (holding that the redressability requirement was satisfied where a plaintiff "allege[s] a continuing violation or the imminence of a future violation" of law, and seeks injunctive relief "aimed at deterring a [defendant] from violating [the law] in the future").[7]

Chevron's proposed relief invokes the judicial power in just this fashion.  Among other protections, the proposed injunction (Dkt. 1847 at 340–41, 348–49) would, in the following ways, prevent Defendants from inflicting future injury on Chevron:

- Paragraph 1 will prevent Defendants from continuing the pattern of racketeering and fraud that has and continues to interfere with Chevron's operations, injure its reputation (*see* PX 5800 (Zygocki) ¶¶ 20–21), and force it to incur costs uncovering and fending off Defendants' scheme (*see* Dkt. 1657 ¶¶ 2–3).

- Paragraphs 2 and 4 bar Defendants from profiting from their fraudulent judgment, will prevent them from taking possession of any assets of Chevron or its subsidiaries by means of that fraudulent judgment, and will prevent Defendants from selling the judgment to third parties who believe themselves to be outside the reach of this Court and who themselves could try to pursue enforcement actions

---

[7]  And, of course, Chevron's proposed relief is just that—the relief proposed by a party for the Court to consider.  The Court is not bound to match the relief provided, if any, to the requests of any party, including the plaintiff, especially where, as here, there are significant public interests at issue as well.  Thus, the Court could, if it determined it was necessary or advisable, prohibit Defendants from seeking to enforce the judgment in any court, foreign or domestic, as Chevron noted in its opening post-trial brief. Dkt. 1847 at 339 n.100.  This underscores the baselessness of the purported lack of Article III standing.

against Chevron.

• Paragraph 3 bars any attempt to enforce the fraudulent judgment in the United States, will protect Chevron from incurring costs in defending against any such actions, and protect Chevron's U.S. assets from seizure through such an action.

Thus, Chevron has proven that Donziger and his co-conspirators are committing ongoing violations of law and are wrongfully causing injury to Chevron. This Court is empowered to enter relief that would stop that ongoing conduct, thus a "case or controversy" exists sufficient to sustain an exercise of judicial power.

Defendants have no answer to this simple proposition, and instead retreat into a thicket of misguided technical arguments. For example, Defendants argue that because Chevron waived money damages and is not seeking an anti-enforcement injunction outside the United States, the Court cannot redress Chevron's injuries with prospective injunctive relief. Dkt. 1861 at 2. But Defendants are mistaken. Chevron's requested relief is intended to prevent injuries that are likely to occur in the future as the natural and probable result of Defendants' ongoing pursuit of their extortionate scheme.[8] That Chevron has chosen to forgo a damages award for past injuries it has suffered—injuries to which Donziger has stipulated (*see* Dkt. 1855 at 38–40)—is irrelevant. And Chevron's proposed remedy need not redress every harm that Chevron has suffered or will suffer in the future: "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury." *Larson*, 456 U.S. at 243 n.15, 102 S. Ct. at 1682 n.15.

With respect to Chevron's request that the Court order Defendants to disgorge themselves of any ill-gotten gains, Defendants contend this is invalid because disgorgement is a "backward-

---

[8] For example, Defendants acknowledged in Invictus that "[o]btaining recognition of an Ecuadorian judgment in the United States is undoubtedly the most desirable outcome" because "[i]t clearly is the locus of a high concentration of Chevron assets" (PX 1407 at 12), and Chevron's proposed injunction specifically prohibits an enforcement action in the United States. This relief is thus likely to redress injuries that Chevron would sustain as the result of Defendants' domestic enforcement efforts.

looking remedy," and that if Chevron does not yet have an unjust enrichment claim—because Defendants have not yet been enriched—"then how can it be any different for Chevron's preemptive 'disgorgement' claim?" Dkt. 1861 at 15 nn.14 & 16. But Chevron does not have a "disgorgement claim"; it has RICO and state law claims. And Chevron is asking the Court to include in its injunction an order that Donziger is enjoined from "receiving any payment" related to the judgment, "other than in constructive trust for plaintiff Chevron Corporation." Dkt. 1847 at 347–49. The LAPs' counsel already admitted to the Second Circuit that such a remedy was proper, and the case law confirms that this Court can preclude Defendants from profiting from their illegal acts. Dkt. 1847 at 340–41, Dkt. 1855 at 81.

Defendants also posit a false choice for Chevron's requested relief: Either Chevron must seek a "global anti-enforcement injunction," or nothing at all. Dkt. 1861 at 6. But Defendants focus exclusively on the legal fees associated with foreign enforcement. *See id*. at 5 ("the costs Chevron incurs in enforcement proceedings will not be redressed by its requested relief"). They ignore the underlying purpose of the enforcement attempts—namely, to obtain Chevron's assets or those of its subsidiaries. And that is the injury Chevron's proposed injunction seeks to prevent. Though Defendants now try to downplay their chances of ever collecting on their fraudulent judgment, this is unavailing. Because "[t]hat risk would be reduced to some extent if [Chevron] received the relief [it] seek[s]," Chevron has proved redressability. *Massachusetts*, 549 U.S. at 526, 127 S. Ct. at 1458; *see also id*. at 525, 127 S. Ct. at 1458 (when a plaintiff has shown an injury, the court has "jurisdiction" so long as the requested relief may "*slow* or *reduce* it").[9]

---

[9]   In his previous unsuccessful motion to dismiss Chevron's RICO claims for supposed lack of standing, Donziger relied on a different argument—that RICO does not allow for injunctive relief. *See* Dkt. 1522. While he continue to press this argument on the merits in his post-trial briefing (*see* Dkt. 1850 at 57–59; Dkt. 1857 at 19–22), Donziger appears to have abandoned it as a basis for a jurisdictional dismissal. Nonetheless, in his reply brief, he puts forward a novel argument that injunctive relief is not available specifically because Chevron is not seeking money damages. *See* Dkt. 1857 at 20–21 ("[I]f equitable relief is ever appropriate . . . it can be awarded only in addition to money [Footnote continued on next page]

With respect to the trademarks held by a Chevron subsidiary that an Ecuadorian court has effectively awarded to the LAPs (*see* Dkt. 1847 at 321, 325), Defendants similarly ignore the relief that Chevron actually seeks.  The LAPs are slated to receive the funds generated in the auction of those trademarks.  *See* Dkt. 1471 at 4–5.  Chevron's proposed relief would bar Defendants from receiving those funds, and place them in constructive trust for Chevron.  *See, e.g.*, *Duke Power Co.*, 438 U.S. at 78, 98 S. Ct. at 2633 ("Nothing in our prior cases requires a party seeking to invoke federal jurisdiction to negate the kind of speculative and hypothetical possibilities suggested in order to demonstrate the likely effectiveness of judicial relief.").

In sum, to defeat Defendants' motion, Chevron need show only that this action and the sought-after relief are likely to prevent some future harm traceable to Defendants' misconduct.  *See, e.g.*, *Lepelletier v. F.D.I.C.*, 164 F.3d 37, 43 (D.C. Cir. 1999) (plaintiff had standing to challenge the FDIC's failure to publicly post names of people with unclaimed bank funds even though his challenge, if successful, would not necessarily require the public posting of names;

---

[Footnote continued from previous page]

damages, not in place of them.").  He offers no authority in support of this notion, nor any logical reason why it should be so—his cited authorities are statements that RICO provides for treble damages, not that it *requires* treble damages.  *See id*. at 20.  In arguing that RICO allows private parties only to "sue for *damages*" (*Id*. at 21 (emphasis added)), Donziger erroneously conflates the cause of action with the potential remedies—as he did in his opening post-trial brief (*see* Dkt. 1855 at 37–40).  It is Chevron's having suffered injuries to "its business or property" that entitle it to bring this RICO claim—the particular remedies it requests to redress those injuries do not affect the existence of the underlying cause of action.  18 U.S.C. § 1964(c).  Donziger's reliance on Judge Rakoff's RICO treatise is misplaced.  Judge Rakoff does not "concede" this position, as Donziger would have it.  Donziger quotes language in the treatise that is plainly out of date—it states that RICO permits only damages claims, a position Judge Rakoff no longer holds (*see Motorola Credit Corp. v. Uzan*, 202 F. Supp. 2d 239, 243–44 (S.D.N.Y. 2002), *rev'd on other grounds*, 322 F.3d 130 (2d Cir. 2003))—and does not support Donziger's proposition in any event, as it says nothing about a distinction between cases seeking damages and injunctive relief versus those seeking only injunctive relief.  And Donziger's assertion that *Scheidler* "involved claims for money damages" misreads the history of that case.  While it is true that the *Scheidler* plaintiffs initially sought and obtained money damages, that was not something the Seventh Circuit identified as a relevant factor in its analysis, and nothing in its reasoning relates to the damages claim.  *See Nat'l Org. for Women, Inc. v. Scheidler*, 267 F.3d 687, 695–700 (7th Cir. 2001).  Moreover, after the Supreme Court reversed the *Scheidler* ruling on other grounds, the case continued, including a third trip to the Supreme Court, on the question of whether the predicate RICO acts the Supreme Court had not addressed in its reversal were "sufficient to support the nationwide injunction[.]"  *Nat'l Org. for Women, Inc. v. Scheidler*, 91 F. App'x 510, 513 (7th Cir. 2004).  The damage claim appears to have dropped out of the case entirely, a fact that troubled none of the three levels of courts to consider the propriety of the injunction after that point.  *See Scheidler v. Nat'l Org. for Women, Inc.*, 547 U.S. 9, 15, 126 S. Ct. 1264, 1269 (2006) (noting that the jury's prior treble damages award was "a matter not at issue here").

"the possibility of public disclosure, 'though not a certainty, is sufficient to meet the redressability requirement'"). Chevron has done so in myriad ways, and nothing in Defendants' motion rebuts that showing. Indeed, the answers to Defendants' proposed rhetorical questions leave no room for debate about whether Chevron has standing here:

- *Defendants ask*: "Chevron says that it has been injured by having to defend itself in foreign proceedings seeking to hold the company accountable for its pollution of the Amazon rainforest. But how, exactly, would that injury be redressed by an injunction that, Chevron insists, would not prohibit those proceedings?" Dkt. 1861 at 1.

  *Answer*: Injunctive relief would protect Chevron subsidiary assets from seizure through success in any of the foreign enforcement actions. Chevron is incurring costs on a daily basis defending against enforcement in four countries, including Ecuador, and Defendants have nearly consummated the seizure and sale of trademarks held by a Chevron subsidiary, including the Chevron logo. Moreover, the LAPs contend the injunction would also serve as a disincentive to pursuing foreign enforcement actions, since they could not ultimately derive any benefit from enforcement. *See* Dkt. 1858 at 22. If true, this would, in turn, likely reduce the injury to Chevron by reducing the costs it would incur in defense. For standing purposes, this is more than adequate.

- *Defendants ask*: "Chevron also asks this Court to divest the defendants of their interests in the Ecuadorian judgment—relief that Chevron calls (at page 344) 'disgorgement' of 'any future gains.' But how would that relief remedy a present injury of Chevron's—or prevent a certainly impending future injury—when no court has yet enforced the judgment, and Chevron itself confidently asserts (at 340) that '[n]o tribunal with respect for the rule of law will ever enforce the Lago Agrio judgment'?" Dkt. 1861 at 1.

  *Answer*: Courts *have* taken some steps to enforce the judgment. The Ecuadorian court (which Chevron has proven does not follow the rule of law) has already awarded the LAPs some (albeit presently de minimis) hard assets in the country—a bank account used to fund litigation expenses—and embargoed for their benefit the intellectual property assets of a Chevron subsidiary that the LAPs claim are worth millions of dollars, and have secured a right to collect Chevron's arbitration award against the Republic of Ecuador. And an Argentine court, before it was reversed by a higher court, froze the assets of Chevron subsidiaries, causing harm to the operations of those subsidiaries, and ultimately to Chevron. The LAPs continue to press these proceedings, and have expressed their intent to bring numerous others. Chevron's requested relief will prevent Defendants from taking possession of any Chevron assets or those of its subsidiaries. For standing purposes, this is more than adequate.

14

**IV.     Defendants Cannot Sidestep the Evidence Against Them With a Post-Trial "Standing" Challenge**

The premise of Defendants' motion—indeed, its express purpose—is to avoid any assessment of the mountain of evidence presented during the seven-week trial, during which Chevron proved Defendants' fraud and racketeering scheme.  Defendants claim that this Court cannot "consider the merits" of Chevron's claims or make any "factual findings" before resolving the threshold standing inquiry.  Dkt. 1861 at 2–3.  But as noted above, Defendants conflate the threshold "standing" inquiry with Chevron's burden on the merits.  *See, e.g.*, *Laidlaw*, 528 U.S. at 181 (rejecting attempt to "raise the standing hurdle higher than the necessary showing for success on the merits").  And in any event, Defendants' premise is fundamentally flawed because their post-trial "standing" challenge necessarily depends on an evaluation of the evidence adduced at trial, which itself undercuts the notion that this is a true "standing" inquiry at all.  *See, e.g.*, *id.* at 181–84 (finding that plaintiffs had shown injury-in-fact based on affidavits and deposition testimony in the summary judgment record).

For instance, Defendants argue that Chevron cannot establish an "injury-in-fact" traceable to their ghostwriting of the Cabrera report because the Lago Agrio court purportedly "excluded the report and did not base its decision on the report's conclusions."  Dkt. 1857 at 10.  Even assuming this were a "standing" (as opposed to merits) inquiry, its resolution would depend on more than Defendants' *ipse dixit*.  Rather, the Court would need to review the documents and testimony from the trial to determine, at the very least, (a) whether Defendants in fact secretly paid Cabrera and ghostwrote his report contrary to the orders of the Lago Agrio court and Defendants' and Cabrera's repeated public statements disavowing such collaboration, and (b) whether the Lago Agrio judgment that Defendants ghostwrote did, in fact, rely on the Cabrera report for some of its conclusions, notwithstanding statements disclaiming such reliance.  *See,*

15

*e.g.*, Dkt. 1861 at 8 (advancing a flawed interpretation of DX 8095 and PX 400 to attempt to disprove the judgment's reliance on Cabrera). At trial, Chevron proved both of these things (and more), but post-trial, Defendants just pretend it did not happen, without even attempting to address the evidence against them. This refusal to engage the record evidence is improper, confirms that their motion is calculated only for delay, and warrants rebuke. *See Oscar Gruss & Son v. Lumberman's Mut. Cas. Co.*, 422 F.2d 1278, 1284 (2d Cir. 1970) (awarding sanctions for frivolous appeal "in view of the superfluity of issues on appeal, the frivolity of almost all of them, and the briefing of many in a manner that simply ignored the abundant evidence supporting the determination of the jury and the judge").

Similarly, Defendants argue that whatever injury Chevron might suffer from Defendants' judicial bribery and ghostwriting of the multi-billion dollar Lago Agrio judgment, such injury is not "fairly traceable" to Defendants' misconduct because, they say, "Chevron would likely have a judgment against it" anyway given that the Ecuadorian appellate courts affirmed the judgment and purported to reject some of Chevron's arguments.[10] Dkt. 1861 at 9–10. As a legal matter, this is incorrect. *See United States v. Manton*, 107 F.2d 834, 846 (2d Cir. 1938) ("[I]f the rule shall ever be accepted that the correctness of judicial action taken for a price removes the stain of corruption . . . the event will make the first step toward the abandonment of that imperative requisite of even-handed justice."). But even if this defense were legally viable, it is bound up with the evidence and expert testimony presented at trial, along with such factual questions as whether, in the determination of the finder of fact, (a) the presence of the LAPs' unfiled work product

---

[10]   Donziger also tries to buttress the findings of the judgment by claiming that Chevron does not contest those findings. *See, e.g.*, Dkt. 1861 at 10. That is untrue. Chevron has and continues to dispute Donziger's allegations about the environmental conditions in Ecuador in every appropriate venue. Indeed, even though it has no bearing on the claims or defenses in this action, Chevron has nonetheless rebutted the most glaring of Donziger's false allegations, most recently in its post-trial reply brief. *See* Dkt. 1855 at 89–95.

in the judgment by itself proves that the judgment's author(s) were improperly collaborating with the LAP team, (b) the LAP team in fact bribed Zambrano and Guerra to allow them to write a judgment in their favor, (c) Ecuador lacks impartial tribunals such that this Court cannot give collateral estoppel effect to the Ecuadorian courts' decisions here, (d) the Ecuadorian appellate courts explicitly refused to resolve Chevron's claims against the LAPs, or (e) the selection process for the Intermediate Appellate Panel was tainted by influence from Zambrano and the ROE. *See, e.g.*, Dkt. 1847 at 267–83.  Defendants, however, address none of this.  For the reasons set forth in Chevron's post-trial brief, Chevron will prevail on the merits.  But Defendants have not come close to showing a legitimate issue of standing.

In sum, the standing inquiry is *less* stringent than the merits inquiry (*Rothstein* , 708 F.3d at 91)  but this does not mean that Defendants can show lack of standing by pretending that the full spectrum of evidence in this case is less than it is.  On the contrary, it means that Defendants cannot prevail if *any* of the voluminous evidence is sufficient to show a justiciable controversy.  Consequently, Defendants are wrong to claim that this Court must resolve their standing challenge before it "may consider anything else in the case" (Dkt. 1861 at 1), as though invoking "standing" entitled them to present a challenge in a vacuum.  Their brief itself makes this clear by making numerous "factual" assertions—but without discussing the actual evidence in the record.  Defendants' strategic decision to ignore that evidence does not make it irrelevant for standing (or merits) purposes.

## CONCLUSION

For these reasons, Chevron requests that this Court deny Donziger's motion to dismiss.

Dated:  January 30, 2014
New York, New York

Respectfully submitted,

  /s/ Randy M. Mastro  
Randy M. Mastro

17

Andrea E. Neuman
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone:  212.351.4000
Facsimile:  212.351.4035

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone:  213.229.7000
Facsimile:  213.229.7520
*Attorneys for Plaintiff Chevron Corporation*