# EXHIBIT 4

SOUTHERN DISTRICT OF NEW YORK
------------------------------x

CHEVRON CORPORATION,

                Plaintiff,

        v.                              11 Cv. 0691 (LAK)

STEVEN R. DONZIGER, et al.,

                Defendants.

------------------------------x

                                        October 24, 2013
                                        9:47 a.m.

Before:

                        HON. LEWIS A. KAPLAN
                                        District Judge

                        APPEARANCES

GIBSON, DUNN & CRUTCHER LLP
        Attorneys for Plaintiff
BY:  RANDY M. MASTRO
        ANDREA E. NEUMAN
        REED M. BRODSKY
        JEFFERSON E. BELL
        ANNE CHAMPION
        GEORGIA K. WINSTON

FRIEDMAN RUBIN
        Attorneys for Donziger Defendants
BY:  RICHARD H. FRIEDMAN
        DEE TAYLOR

LITTLEPAGE BOOTH
        Attorneys for Donziger Defendants
BY:  ZOE LITTLEPAGE
        RAINEY BOOTH

GOMEZ LLC
        Attorneys for Defendants Hugo Camacho, Javier Piaguaje
BY:  JULIO C. GOMEZ

1  Q.  Mr. Guerra, when we broke yesterday you had just testified

2  about a conversation you had with Mr. Zambrano in which he told

3  you taking over the Chevron case again would be "a very good

4  opportunity."

5          Do you recall that testimony?

6          MS. LITTLEPAGE:  Same objection.  Hearsay.

7          THE COURT:  I do not think that the answer to the

8  question "do you remember that testimony" is hearsay.

9          MS. LITTLEPAGE:  I just don't want to waive the

10  objection to the testimony from yesterday.  That's the basis.

11          THE COURT:  I would be grateful, Ms. Littlepage, if

12  you would listen to the questions and make objections when you

13  think they're appropriate to the question, not when you think

14  maybe there will be some other question that you might have an

15  objection to.

16          Let's go on.

17  A.  Yes.

18  Q.  What if anything did Judge Zambrano say to you about why he

19  thought it would be a "good opportunity"?

20          MS. LITTLEPAGE:  Objection, hearsay.

21          THE COURT:  Overruled.

22  A.  Mr. Zambrano considered this an excellent opportunity to in

23  the future, in the near future, write the judgment.  Or if in

24  the near future, if time allowed it, he could remain, he could

25  remain as the judge hearing the case for a year.

SOUTHERN DISTRICT OF NEW YORK
------------------------------x

CHEVRON CORPORATION,

                Plaintiff,

            v.                          11 Cv. 0691 (LAK)

STEVEN R. DONZIGER, et al.,

                Defendants.

------------------------------x

                                    November 6, 2013
                                    9:35 a.m.

Before:

                    HON. LEWIS A. KAPLAN

                                    District Judge

                        APPEARANCES

GIBSON, DUNN & CRUTCHER LLP
        Attorneys for Plaintiff
BY:   RANDY M. MASTRO
      ANDREA E. NEUMAN
      REED M. BRODSKY
      JEFFERSON E. BELL
      ANNE CHAMPION

FRIEDMAN RUBIN
        Attorneys for Donziger Defendants
BY:   RICHARD H. FRIEDMAN
      DEE TAYLOR

LITTLEPAGE BOOTH
        Attorneys for Donziger Defendants
BY:   ZOE LITTLEPAGE
      RAINEY BOOTH

GOMEZ LLC
        Attorneys for Defendants Hugo Camacho, Javier Piaguaje
BY:   JULIO C. GOMEZ

1  Q.  Do you recall during what time frame, during what period of

2  time you would allow Mr. Guerra to remain in your office

3  without you being there?

4          MR. MASTRO:  Same objection, your Honor.

5          THE COURT:  Same ruling.  During what period did you

6  allow him to do that.

7          MR. BOOTH:  You're right, Judge.

8  Q.  During what period of time did you allow Mr. Guerra to

9  remain in your office while you were weren't there?

10 A.  At different times when by chance we would be in Lago Agrio

11 and he would ask me to as a favor to let him be there because

12 he had to do some work.  And using the opportunity that I was

13 going to a hearing, I would leave him there without any

14 problem.

15         MR. MASTRO:  Your Honor, nonresponsive.  Move to

16 strike.

17         THE COURT:  Strike everything after "at different

18 times."

19 Q.  Do you recall whether you allowed Mr. Guerra to remain in

20 your office while you weren't there during the year 2009?

21 A.  I don't recall.

22 Q.  Do you recall whether you allowed Mr. Guerra to remain in

23 your office when you weren't there during the year 2010?

24 A.  I don't recall.

25 Q.  Dr. Zambrano, do you recall being shown a deposit slip to

1  Mr. Guerra's account that bore your signature yesterday when

2  you were being questioned?

3  A.  Yes.

4  Q.  Can you explain to the Court why there is a deposit slip to

5  Mr. Guerra's account with your name on it?

6  A.  Yes.

7  Q.  And will you do that, please.

8  A.  Alberto Guerra would always tell me that he was facing a

9  very delicate financial situation and he asked me as a favor if

10  I could loan him around $300.  I had no problem with that.  He

11  gave me the account number and I deposited it.

12  Q.  Dr. Zambrano, you were asked about a case that I believe

13  had the initials OCP as or in the title of the case yesterday.

14        Do you remember those questions and your answers

15  regarding that case?

16  A.  More or less.

17  Q.  Can you explain to the Court -- well, strike that.

18        Do you recall your testimony yesterday about your

19  participation as a judge in the OCP case?

20  A.  Yes.

21  Q.  Can you explain to the judge, focusing on your

22  participation in the case, what happened in that case?

23        MR. MASTRO:  Objection, calls for a narrative.

24        THE COURT:  That's what testimony does.

25  A.  Yes.

1   Q.  Was what you just described to us the basis of your

2   decision to dismiss the case?

3   A.  That is how it's stated in the unanimous, unanimity ruling

4   that was issued, and I was a member of the appellate court.

5   Q.  How many other members of the appellate court were there on

6   this particular case, the OCP case?

7   A.  Two other people.

8   Q.  I want to ask you about Ms. Calva but first -- strike that.

9           Do you recall yesterday being asked about staff at the

10  courthouse in Lago Agrio?

11  A.  Yes.

12  Q.  Are there secretaries that work for the

13  courthouse -- strike that.

14          During the time you were a judge in Lago Agrio, were

15  there secretaries that worked at the courthouse for the

16  courthouse?

17  A.  Yes.

18  Q.  Let me focus you specifically on the period of time between

19  October 2010 and February 2011.  Was what you just said have

20  been true for that period of time as well?

21          MR. MASTRO:  Objection.  Form.

22          MR. BOOTH:  I did it again.  I will rephrase.

23  Q.  Specifically as to the time period of October 2010 to

24  February 2011, was what you said yesterday, did it apply to

25  that time period as well -- strike that.

1        MR. MASTRO:  I think you had absolutely right, and

2    that's why I made a relevance objection.  He is pointing him to

3    the document.  He is reading the document and then he is going

4    to regurgitate what is in the document.  How does that advance

5    us?  It doesn't respond to what happened yesterday and it

6    doesn't advance us one whit.

7        THE COURT:  I will try to go, at least on a

8    provisional basis, if you wish to do it, examine him with a

9    view to showing he is highly conversant on all these issues,

10   whatever description you want to put to it.  But it would not

11   be helpful to me for you to point him to a sentence in the text

12   that he wrote and say, Well, what does that really mean, in

13   effect?

14       MR. BOOTH:  Yes, your Honor.  That was not my

15   intention.  It was to get a broader discussion of the issue.

16   And I would argue it's at least disapprobative of the memory

17   test that he was put through yesterday, at least.

18       MR. MASTRO:  To do that with the document in front of

19   him, and he was obviously then reading the page and trying to

20   read around it, it's like leading him entirely to regurgitate

21   the page.  If Mr. Booth wants to read that line to him, without

22   him looking at the judgment, and then ask him what he meant by

23   that, that's a different inquiry.  But that's not what he is

24   doing.  This is a classic leading.  He is pointing him to the

25   thing he couldn't get right yesterday with the judgment in

1    front of him reading the judgment.

2         THE COURT:  Look, I understand both sides' point of

3    view on this.  I will say also that it would not be reasonable

4    to expect total recall two years after the fact of everything

5    in a 188-page, single-spaced decision even from Cardozo or

6    Hand.  That's clear.

7         I think you're entitled to go at least a little way,

8    Mr. Booth.  The question that you asked with the thing in front

9    of him I don't think is at all helpful, because I have no

10   doubt -- well, I take that back, because I assume he may very

11   well be able to skim, or read slowly, a page and then to say,

12   well, OK, I will now put it in different words, and at the end

13   of that process I don't know what we have accomplished.  So

14   maybe you ought to try it a different way.  I have an open

15   mind.  We will see.

16        MR. FRIEDMAN:  Can you just give us a minute to

17   confer.

18        THE COURT:  Absolutely.

19        (Continued on next page)

20

21

22

23

24

25