**STEVEN R. DONZIGER, ESQ.**

245 WEST 104TH STREET, SUITE 7D
NEW YORK, NEW YORK 10025

212-570-4499 (O)
917-566-2526 (CELL)

December 28, 2017

**VIA ECF**

Honorable Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

RE:   *Chevron v. Donziger*, Case No. 11 Civ. 691 (LAK)

Dear Judge Kaplan:

I write to object to the court's characterization in its Order of December 27 that "[t]here hav[e] been no objections to the Special Masters' Final Report" regarding the reasonableness and *post hoc* allocation of their outrageous fees. First, the court recently extended the time for the Special Masters to provide me with the actual bills for their services until January 12, 2018. Obviously I cannot be expected to file objections to the Special Masters' Report until I have seen all of the relevant materials (including not just the records supposedly forthcoming on January 12 but the still secret invoices related to the work of Mr. Gitter and his associate on the numerous 1782 depositions—depositions that were ultimately used by Chevron in the RICO matter). More importantly, in filings this year dated August 1, August 8, August 15, August 24, September 11, and December 6, I have robustly and unequivocally opposed and objected, on numerous grounds, to every aspect of the Special Masters' work in this case, including specifically the notion that any fees for such work should be charged to me. To be clear, I now reiterate my various objections to the work of the Special Masters as outlined in my previous submissions and in this letter.

Among the many points relevant to this issue that I have already established and argued on the record are the following:

- There is nothing remotely reasonable about the core facts of the Special Masters' work in this case. It was designed to carry out a strategically-designed effort to "taint" a historic human rights judgment and to immunize a wealthy oil company from an environmental liability owed to thousands of indigenous people and subsistence farmers. These Masters' and their junior associate, culled in part from an elite corporate law firm, each charged over $600/hour for hundreds of hours of time "supervising" depositions, flying first-class on utterly pointless international trips, enjoying expensive meals, and the like, all paid for secretly by Chevron while the Masters themselves pretended (although not very hard) to act impartially in their work.

- This kind of gross overbilling directed at a major multinational oil company is scandalous in substance although perhaps not atypical. It is consistent with the immense amount of money that Chevron "invested" in the RICO matter generally in a last-ditch attempt to bury the undersigned in litigation and thereby force him off the case. To direct the same levels of billing at a solo practitioner and/or the indigent victims of Chevron's contamination would be utterly obscene. In tacit recognition of the same, the court appears to have adopted if not designed a "bait and switch" whereby, during the time when the court's vulnerable RICO judgment was on review, it was pretended that only the $250-billion dollar oil company would pay the fees, and he gruesome details of the bills themselves (and the actual payments by Chevron to Mr. Gitter's personal account) were kept secret. Only now, years later is the court entertaining the motion of "shifting" these outrageous fees to the undersigned.

- As discussed in detail in my most recent filing (Dkt. 1940), the Special Masters were in fact rampantly biased in their work. They eagerly participated in and even took steps to intensify Chevron's attacks on and demonization of me. The evidence indicates that the Masters were regularly in private contact with Chevron, without disclosing the same.

- The substance of the Masters' work reveals the intensity of their bias—a bias now reflected in the substance of their Report, which seeks to punish me for exercising my rights to object to questioning during depositions. In addition to explicitly seeking to intensify the pressure on me during the repetitive and abusive 19 days of pre-trial depositions that this court subjected me to, the Masters "supervised" the few depositions I was allowed to take of Chevron witnesses so as to block almost all substantive lines of questioning.

- The court already implemented a regime whereby Chevron could have sought re-allocation of the Masters' fees by a date certain in the pre-trial period. Dkts. 1925, 1931, 1940. By failing to move for a re-allocation within the time allotted under the court's specific order in this regard (Dkt. 1287), Chevron forfeited any claim to allocation and cannot now seek a "do over" given that (it thinks) some of the heat is off and it can get away with again "punishing" the primary target of its avowed demonization campaign.

- No recovery of fees or costs, including and especially in the form of re-allocation of costs already paid, is available where the petitioning party engaged in misconduct in the litigation. It is now well-documented that Chevron and its lead law firm Gibson Dunn actively defrauded the court by illegally paying for and presenting the testimony of Alberto Guerra, the falsity of which has now been confirmed by forensic examination of the presiding Ecuadorian judge's hard drives and was either known by Chevron and Gibson Dunn at the time (most likely) or recklessly disregarded.

- Any order directing the payment by me of fees or costs in the amounts sought by Chevron would be abusive and improper in that it would be manifestly punitive in nature, entirely unconnected from either Chevron's need regarding such funds or my ability to pay.

- Any order directing payment by me to Chevron contravenes the substance of Chevron's relinquishment, just days before trial, of "all claims for money damages relief against the Donziger Defendants." This was the strategic maneuver Chevron was *required* to make to deny me my constitutional jury trial right in any civil case where more than a mere $20 is at stake. Clearly, this was because Chevron knew (as I knew and the court knew) that an impartial jury would never have accepted its obviously false and trumped-up claims against me, whereas this court, in its own words, "got it from the beginning" and was going to rule in Chevron's favor no matter what the evidence really showed.

The Special Masters' Report, although I have yet to see all of the actual billing that backs it up, simply regurgitates the bias and false pretenses that have accompanied their work from the beginning. The bases for the absurd allocation of 85% of their "costs" to me, a solo practitioner, over the multi-billion dollar oil company are either frivolous (e.g., scheduling disputes) or simply penalize me and my co-defendants for standing up for our rights and our "unwillingness" to accept the profound illegitimacy of the Special Masters' appointment, their work, and indeed the entire SLAPP-style RICO lawsuit brought upon us. As such, the Report and its conclusions are simply derivative of the larger record of the bias of the Special Masters, their secret receipt (in the case of Mr. Gitter) of exorbitant payments from Chevron, their ongoing refusal (in the case of Mr. Gitter) to disclose the full amounts received from Chevron either directly or to his law firm from the 1782 depositions, and the participation of Masters in Chevron's demonization campaign, all of which I have aggressively objected to in recent filings and over the last several years.

Finally, I will use the opportunity of this filing to address just a few of the many falsehoods in Chevron's unauthorized and gratuitous recent reply brief (Dkt. 1944), as follows:

- Chevron's lawyer Randy Mastro – now under a formal complaint for criminal behavior to the U.S. Department of Justice -- falsely claims that I refused demands "by [my] own clients" for evidence of how various funds raised to support the case and the defense of this lawsuit (in the early months after it was filed) were spent. In fact, all funds have been fully accounted for directly to my clients and through the democratically-controlled community organization that has operationalized the will of the larger client base for the last 25 years, the Frente de Defensa de la Amazonía. I would remind the court that Chevron paid an outlandish $5 million to the accounting firm KPMG to fully audit my finances as part of the RICO trial, and while the auditor's conclusions where biased against me in numerous respects, it is noteworthy that he presented no evidence of misappropriation of funds by me in any respect.

- Chevron continues with the blatantly false claim that "the forensic analysis of Zambrano's computers corroborate this Court's core findings." This is laughably wrong and desperate. As the filings in the BIT arbitration detail, and as I summarized for the court at pages 6-9 of my filing dated September 11, 2017 (Dkt. 1936), the hard drive evidence utterly eviscerates the Guerra's "bribery" and "ghostwriting" testimony, which was already suspect and shifting (and paid-for) from the beginning.

- Chevron's suggestion that I should be foreclosed from objecting now because I "had the billing records for *one* of the Special Masters since December 2016" and had the "hourly billing rates" for the other Special Master is comical in its desperation to avoid the plain fact that I *still to this day do not have the full billing records for which I will supposedly be charged* and which reflect the full amount of the unilateral, undisclosed, and secret payments from Chevron to Mr. Gitter and his law firm. Dkt. 1944 n.3.

- The claim that that I "conceded (by not challenging on appeal) the overwhelming evidence" against me is tired, false, and desperate. It also ignores the fact that the "evidence" against me was manufactured by way of illegal payments to a suspect witness for knowingly false testimony. In dozens of pages in my appellate briefs, I challenged every aspect of this proceeding and the fundamentally flawed "findings of fact" produced by this court. The fact my appellate counsel chose to focus on the profound legal flaws in the court's decision obviously is typical appellate strategy rather than the supposed "concession" that Chevron has been flogging, in utterly unconvincing fashion, for years.

- Ironically, Chevron itself chooses not to challenge the vast majority of arguments made in my December 6, 2017 filing, to which its reply in Dkt. 1944 supposedly responds.

**Conclusion**

Based on my objections in the aforementioned filings before this Court, and those contained herein, I reiterate my demand that none of the fees of the Special Masters—already paid in full by Chevron—should be allocated to me, a solo practitioner and human rights lawyer whose limited resources are being used to continue efforts, broadly supported by leading civil society groups all over the world, to enforce an historic environmental liability affirmed by Ecuador's Supreme Court and to hold Chevron accountable for the devastation caused its toxic practices in Ecuador.

Sincerely,

/ s /

Steven R. Donziger