# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- x
CHEVRON CORPORATION,                     :
                                         :
                    Plaintiff,           :
                                         :
            v.                           :   11-CV-0691 (LAK)
                                         :
STEVEN DONZIGER, et al.,                 :
                                         :
                    Defendants.          :
---------------------------------------- x

## DECLARATION OF LEE GRINBERG

I, LEE GRINBERG, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.  I am a portfolio manager at Elliott Management Corporation, a hedge fund located at 40 West 57th Street, New York, New York 10019 ("Elliott"). Except as indicated otherwise, I have personal knowledge of the information set forth herein.

2.  On November 3, 2017, Jesse Cohn, an equity partner of Elliott, informed me that, in an email that day, Jonathan Bush of athenahealth, Inc., had introduced him to Katie Sullivan of Streamline Family Office, Inc., who, Bush said, was "trying to help the successful plaintiffs in the Chevron Ecuador deal."

3.  We arranged to meet Ms. Sullivan at 4:00 p.m. on November 6, 2017.

4.  On November 6, less than two hours prior to the meeting, Ms. Sullivan emailed Mr. Cohn and me, advising us that Mr. Donziger, "the architect of successfully winning the judgement (sic)," would also be attending the meeting, and attaching an unexecuted form of non-disclosure agreement, which she asked us to execute prior to the meeting so that Mr. Donziger could "speak freely." A true and correct copy of Ms. Sullivan's message is attached as **Exhibit 1** to this

declaration. A true and correct copy of the attached form of non-disclosure agreement is attached as **Exhibit 2** to this declaration.

5.  Although the non-disclosure agreement was not executed, at around 4:00 p.m. Mr. Cohn and I met with Ms. Sullivan and Mr. Donziger at Elliott's offices in New York City.

6.  During that meeting, after informing us of his successful, ongoing efforts to raise millions of dollars from third-party investors to fund his efforts to enforce the judgment he had obtained against Chevron in Ecuador, Mr. Donziger inquired whether Elliott would provide him with funds for that purpose in exchange for an interest in proceeds that may result from enforcement of the Ecuadorian judgment. During the meeting, Mr. Cohn, who left the meeting after a short time, and I remained entirely non-committal on the subject. My notes from the meeting are attached as **Exhibit 3** to this declaration.

7.  The purpose of the November 6 meeting was confirmed in follow-up emails Mr. Cohn and I received from Ms. Sullivan and Mr. Donziger, in which they attempted to pursue the deal they had pitched at the November 6 meeting. Most notably:

- On November 6, Ms. Sullivan emailed me (copying Messrs. Donziger and Cohn) in pertinent part:

    > It was a pleasure to meet with you to introduce you to the Chevron case and share the opportunity for you to be a key partner in enforcing and collecting the historical $9.5B/now $12B environmental judgment.

- On November 7, Mr. Donziger emailed me and Ms. Sullivan (copying Mr. Cohn) in pertinent part:

    > It was nice to meet and talk with someone who obviously gets the situation with the Chevron matter.
    >
    > I meant to tell you that I have a packet of materials that I generally send out to those doing due diligence on the opportunity. Let me know if you want it and if so, I will forward.

- On January 19, 2018, Ms. Sullivan emailed Mr. Cohn and me (copying Mr. Donziger) in pertinent part:

    > We would like to bring you up to date on recent developments with the Ecuador case and discuss our vision for a strategic capital partnership. Are you available Tuesday 1/23 or 1/24 to meet at your office or for a breakfast or lunch meeting?

A true and correct copy of an email chain containing all the emails referenced in this paragraph is attached as **Exhibit 4** to this declaration.

8.  By reply email on January 19, 2018, I informed Ms. Sullivan (copying Messrs. Donziger and Cohn) in pertinent part that Elliott "does not intend to move forward on the Ecuador matter." My reply email is also contained in **Exhibit 4** to this declaration. Since then, neither Mr. Donziger nor his associates have contacted me or, to the best of my knowledge and information, anyone else at Elliott.

Executed on this 5th day of March 2018 at New York, New York.

_____
Lee Grinberg

Notarization:
Natalie N. Underwood

NATALIE NICOLE UNDERWOOD
Notary Public - State of New York
NO. 01UN6259946
Qualified in New York County
My Commission Expires 4-16-20

# EXHIBIT 1

| | |
|---|---|
| **From:** | Lee Grinberg |
| **To:** | Richard Zabel |
| **Subject:** | FW: Chevron Deal |
| **Date:** | Thursday, February 15, 2018 12:28:49 PM |
| **Attachments:** | NDA.FDA.2017.doc |
| | ATT00001.htm |

**From:** Katie Sullivan [mailto:Katie@Streamlinefamilyoffice.com]
**Sent:** Monday, November 06, 2017 2:05 PM
**To:** Jesse Cohn; Lee Grinberg
**Cc:** Natalie Underwood
**Subject:** Re: Chevron Deal

Jesse and Lee,
Look forward to meeting with you at 4. Steven Donziger, the architect of successfully winning the judgement, was able to change his travel plans and join me.
I have attached an NDA. Please execute prior to the meeting so he can speak freely.
With gratitude,
Katie

### Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

# EXHIBIT 2

## NON-DISCLOSURE AGREEMENT

**THIS NON-DISCLOSURE AGREEMENT**, is made and entered into as of the ___ day of October, 2017 by _____, a _____-based Corporation with its principal office address at _____ ("the counterparty"), and **the Frente de Defensa de la Amazonia ("FDA"), as represented by Steven R. Donziger, Esq., with address at 245 West 104th Street, #7D, New York, New York**.

**WHEREAS**, the above-named parties wish to engage in discussions concerning a possible financing of a judgment collection action in the *Aguinda v. ChevronTexaco* case where the FDA is the beneficiary; and

**WHEREAS**, in connection with the aforementioned discussions, the FDA shall disclose Confidential Information to the counterparty.

**NOW, THEREFORE**, in consideration of the mutual covenants and premises set forth below, and as a condition of the FDA disclosing Confidential Information, whether verbally, in writing, documentary or any other format, the parties hereto agree as follows:

1. <u>Definition of "Confidential Information"</u>. For the purposes of this Agreement, "Confidential Information" includes, without limitation: the existence of the discussions between the parties; the financial statements and financial information of the FDA; and any information that the FDA designates as "confidential" or "proprietary. The term "Confidential Information" does not include: (i) information which at the time of disclosure is in the public domain or is already possessed by the counterparty, free of any confidentiality obligation, as demonstrated by written or other tangible evidence; (ii) information which after disclosure becomes part of the public domain through no fault of the counterparty; and (iii) information disclosed to the counterparty by a third party, free of any confidentiality obligation, which third party has not acquired the information in an unlawful or questionable manner. If the counterparty is required to make a disclosure because one is required by a governmental body or a court of competent jurisdiction, the counterparty must first notify the FDA representative in writing order to give the FDA an opportunity to seek a protective order or otherwise seek to prevent such disclosure.

2. <u>Nondisclosure of Confidential Information</u>. The FDA disclosure of the Confidential Information is being made for the sole purpose of discussions concerning a possible financing engagement regarding any judgment collection actions from the aforementioned *Aguinda* matter. Neither the counterparty nor its employees, officers, affiliates, directors or agents will, without prior written consent of the FDA, disclose or distribute the Confidential Information or cause the Confidential Information to be disclosed or distributed to any third party other than representatives of the counterparty to whom such disclosure is necessary for the purpose of evaluating the Possible Engagement and who represent that they personally agree to be bound by the terms of this Agreement. The counterparty agrees to accept the FDA's Confidential Information for the sole purpose of evaluation in connection with counterparty's business discussions with the FDA, and will not use any Confidential Information disclosed to them by the FDA for their own or any third party's benefit without the prior written approval of the FDA. Counterparty agrees to use reasonable care,

but in no event less than the same degree of care that they use to protect their own confidential and proprietary information of similar importance, to prevent the unauthorized use, disclosure, publication or dissemination of Confidential Information they receive directly or indirectly from the FDA. The FDA shall, in its sole discretion, determine what Confidential Information shall be disclosed to the counterparty and any disclosure shall be subject to the terms and limitations set forth herein.

3. <u>Return of Confidential Information</u>. All Confidential Information shall remain the property of the FDA. Copies of all documents, summaries and other tangible Confidential Information of the FDA, regardless of who produced same, shall be returned to the FDA or destroyed at its option upon the earlier of an FDA request or termination of the discussions between the parties hereto. That portion of the Confidential Information consisting of oral Confidential Information will be held by the counterparty and kept subject to the terms of this Agreement.

4. <u>Acknowledgement</u>. The counterparty acknowledges: (a) that the Confidential Information is proprietary to and commercially and competitively valuable to the FDA; (b) that the unauthorized use or disclosure of the Confidential Information could cause irreparable harm to the FDA; (c) that the FDA has taken and is taking reasonable measures to protect its legitimate interests in the Confidential Information, including, but not limited to, affirmative actions to safeguard the confidentiality of such Confidential Information; and (d) that, by this Agreement, the FDA is taking reasonable steps to protect its legitimate interests in the Confidential Information.

5. <u>Remedies</u>. The rights and obligations of the parties under this Agreement may be enforced by a decree of specific performance issued by a court of competent jurisdiction without the FDA having to post a bond or other security. Such remedy shall not prohibit the FDA from pursuing any other remedy, whether in law or equity, available for a breach or threatened breach of this Agreement.

6. <u>Duty to Notify</u>. Whenever the counterparty knows or has reason to believe that this Agreement has been violated or that there has been an improper use or disclosure of the Confidential Information or any part thereof, the counterparty shall notify the FDA in writing, within five (5) business days, setting forth in detail such known or suspected violation and/or improper use or disclosure.

7. <u>Period</u>. The obligations of the counterparty and FDA under this Agreement shall remain in effect for a period of 24 months from the date hereof.

8. <u>Governing Law.</u> The formation, validity, construction and performance of this Agreement shall be governed by and interpreted in accordance with the laws of New York, excluding any rule or principle of the conflict of laws that might otherwise refer the interpretation or construction of this Agreement to the law of any other jurisdiction.

9. <u>Entire Agreement</u>. This Agreement constitutes the entire and only agreement among the parties hereto in respect to the subject matter hereof and supersedes and cancels any prior agreement, oral or written, in respect thereto. No amendment or change hereof or addition hereto

shall be effective or binding upon any of the parties hereto unless in writing and executed by the parties hereto. This Agreement shall not be assignable by any party hereto, and no party hereto may delegate its duties hereunder without the prior written consent of the other parties.

      10.    <u>Counterparts; Facsimile and Electronic Signatures</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile and electronic signatures shall be deemed originals.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed in duplicate as of the date first above written by their duly authorized representatives.

**The FDA**

By: _____
     Steven R. Donziger, U.S. Legal Representative

**Counterparty**

By: _____

Title: _____

# EXHIBIT 3

Donziger conversation    Ecuador/FDA    11-6-17
Jon's personal family office

$33mm
3rd party funders
individuals

Canada as jurisdiction → don't want to have a trial
→ subsidiary ruling → risks asset

National Indigenous - Phil Fontaine    19bn residential schools case
Aboriginal rights battle
60 minutes + Chevron

the right of the Ecuadorians to seek a judgment
validity to enforcing foreign judgments
→ judges to adopt

⊛ Prosecuting in Canada
→ have cap bal + reputation to staying power + winning
→

turnover in leadership → Jon Watson start 2010
→ leaving Feb 1 2018
→ mismanaged this case

(un money
one 1x ⑩⓪
D U S ? | 15-20% committed → 15 people [dedicated p/s]
6.3% personally of the 100%

# EXHIBIT 4

| | |
|---|---|
| **From:** | Lee Grinberg |
| **To:** | Richard Zabel |
| **Subject:** | FW: Thank you/Chevron case |
| **Date:** | Thursday, February 15, 2018 12:25:28 PM |

**From:** Lee Grinberg
**Sent:** Friday, January 19, 2018 5:13 PM
**To:** 'Katie Sullivan'; Jesse Cohn
**Cc:** Steven Donziger
**Subject:** RE: Thank you/Chevron case

Katie,
Thank you for the invitation. Unfortunately, the firm does not intend to move forward on the Ecuador matter. We wish you the best of luck as the situation progresses. Thanks again.
Regards,
Lee

**From:** Katie Sullivan [mailto:Katie@Streamlinefamilyoffice.com]
**Sent:** Friday, January 19, 2018 1:46 PM
**To:** Jesse Cohn; Lee Grinberg
**Cc:** Steven Donziger
**Subject:** Re: Thank you/Chevron case

Jesse and Lee,

I trust your 2018 has begun in good health & cheer!

We would like to bring you up to date on recent developments with the Ecuador case and discuss our vision for a strategic capital partnership. Are you available Tuesday 1/23 or 1/24 to meet at your office or for a breakfast or lunch meeting?

With gratitude,
Katie

On Nov 7, 2017, at 12:28 PM, Jesse Cohn <JCohn@elliottmgmt.com> wrote:

> Thanks much and will come back asap!
>
> Best – Jesse
>
>
> **From:** Steven Donziger [mailto:sdonziger@donzigerandassociates.com]
> **Sent:** Tuesday, November 07, 2017 12:20 PM
> **To:** Katie Sullivan <Katie@Streamlinefamilyoffice.com>; Lee Grinberg <lGrinberg@elliottmgmt.com>
> **Cc:** Jesse Cohn <JCohn@elliottmgmt.com>
> **Subject:** Re: Thank you/Chevron case

Lee,

It was nice to meet and talk with someone who obviously gets the situation with the Chevron matter.

I meant to tell you that I have a packet of materials that I generally send out to those doing due diligence on the opportunity.  Let me know if you want it and if so, I will forward.

Jesse, it was a pleasure to meet.

Thanks,

Steven

---

**From:** Katie Sullivan <Katie@Streamlinefamilyoffice.com>
**Sent:** Tuesday, November 7, 2017 9:19:40 AM
**To:** lGrinberg@elliottmgmt.com
**Cc:** Steven Donziger; Jesse Cohn
**Subject:** Re: Thank you/Chevron case

Lee, forwarding an article that was published yesterday just before our meeting : http://talkonmain.com/ecuadorean-villagers-are-fighting-chevron-in-canada-and-winning

On Nov 6, 2017, at 7:27 PM, Katie Sullivan <Katie@Streamlinefamilyoffice.com> wrote:

> Dear Jesse and Lee,
>
> Thank you for your time today. It was a pleasure to meet with you to introduce you to the Chevron case and share the opportunity for you to be a key partner in enforcing and collecting the historical $9.5B/now $12B environmental judgement.
>
> We will follow-up in a few weeks and in the meantime, happy to provide any additional information.
>
> With gratitude,
> Katie

**Disclaimer**
The information contained in this communication from the sender is confidential. It is intended

solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

---

Confidentiality Notice from Elliott Management Corporation:

The information contained in this e-mail and any attachments may be legally privileged, proprietary and/or confidential. If you are not an intended recipient, you are hereby notified that any use, copying, disclosure or distribution of all or any portions of this e-mail and any attachments is strictly prohibited. If you received this e-mail in error, please notify the sender, permanently delete the e-mail and any attachments, and destroy all hard copies immediately.

No warranty is made as to the completeness or accuracy of the information contained in this communication. Any views or opinions presented are those of only the author and do not necessarily represent those of Elliott Management Corporation or its related entities. This communication is for information purposes only and should not be regarded as an offer, solicitation or recommendation to sell or purchase any security or other financial product.

Elliott Management Corporation and its related entities reserve the right to monitor all e-mail communications through their networks.

Thank you.

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.