UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
CHEVRON CORPORATION,
:
               Plaintiff,
:
   v.
:   11 Civ. 0691 (LAK)
:
STEVEN DONZIGER, *et al.*,
:
               Defendants.
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CHEVRON CORPORATION'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS EX PARTE APPLICATION BY ORDER TO SHOW CAUSE
FOR DISCOVERY AND A PRESERVATION ORDER IN FURTHERANCE OF THIS
COURT'S MARCH 4, 2014 JUDGMENT AND TO SET A HEARING DATE
SUBSEQUENT TO THAT DISCOVERY ON CHEVRON'S
APPLICATION TO HAVE STEVEN DONZIGER HELD IN CONTEMPT**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

STERN, KILCULLEN & RUFOLO LLC
325 Columbia Tpke, Ste 110
P.O. Box 992
Florham Park, New Jersey 07932-0992
Telephone: 973.535.1900
Facsimile: 973.535.9664

*Attorneys for Plaintiff Chevron Corporation*

## TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ................................................................................... 1

II. ARGUMENT ................................................................................................................ 3

    A. Donziger Has No Legitimate Defense to His Defiance of the Judgment's Express Command Requiring Him to Turn Over His Amazonia Shares to Chevron ............................................................................................................. 3

    B. Donziger's Excuses for His Attempted Monetization of the Ecuadorian Judgment Do Not Withstand Scrutiny ..................................................................... 5

    C. Donziger's Opposition Confirms That Discovery in Support of a Judgment Enforcement and a Contempt Hearing is Necessary .............................................. 8

III. CONCLUSION ........................................................................................................... 10

Gibson, Dunn & Crutcher LLP

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Badgley v. Santacroce*,
    800 F.2d 33 (2d Cir. 1986) ................................................................................................... 5

*Canada Dry Del. Valley Bottling Co. v. Hornell Brewing Co., Inc.*,
    No. 11 Civ. 4308, 2013 WL 5434623 (S.D.N.Y. Sept. 30, 2013) ........................................ 9

*Chevron Corp. v. Donziger*,
    974 F. Supp. 2d 362 (S.D.N.Y. 2014) .................................................................................. 6

*Chevron Corp. v. Donziger*,
    833 F.3d 74 (2d Cir. 2016) ................................................................................................... 6

*Hamilton v. Kerik*,
    No. 01 CV 6934, 2002 WL 31834428 (S.D.N.Y. Dec. 17, 2002) ........................................ 9

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*,
    369 F.3d 645 (2d Cir. 2004) ................................................................................................. 3

*State of N.Y. v. Shore Realty Corp.*,
    763 F.2d 49 (2d Cir. 1985) ................................................................................................... 9

*U.S. S.E.C. v. Universal Exp., Inc.*,
    546 F. Supp. 2d 132 (S.D.N.Y. 2008) .................................................................................. 5

*U.S. v. Dist. Council of New York City*,
    No. 90 Civ. 5722, 2007 WL 2324338 (S.D.N.Y. Aug. 14, 2007) ...................................... 10

**Statutes**

CPLR Rule 5223 ......................................................................................................................... 10

CPLR Rule 5224 ......................................................................................................................... 10

**Rules**

Fed. R. Civ. P. 69(a)(2) ............................................................................................................... 10

Fed. R. Civ. P. 70 ........................................................................................................................ 10

## I. PRELIMINARY STATEMENT

Steven Donziger is in contempt of this Court's Judgment, and he offers no defense for his admitted contempt, but only obfuscation and attempts to shift blame. Indeed, his outright refusal to accept this Court's rulings against him is the literal definition of contempt. And Donziger's Opposition leaves no doubt that, absent contempt sanctions compelling him to comply, he will continue to flout this Court's orders.

Donziger admits that he has refused to transfer his shares in Amazonia to Chevron (Opp. at 2), even though this Court's Judgment ordered him to do just that. Dkt. 1875 ¶ 3 ("Donziger shall execute in favor of Chevron a stock power transferring to Chevron all of his right, title and interest in his shares of Amazonia . . . ."). Instead, Donziger offers a series of excuses that do not justify his continued refusal to take the simple step of transferring his shares to Chevron, as the Court has commanded. Donziger's position is also inconsistent: If Amazonia is "null and void," as Donziger asserts (Opp. at 1 n.1), he should have no problem transferring his Amazonia shares to Chevron. Yet, instead of performing that simple act, Donziger continues his willful defiance of the Court's Judgment. Given this intransigence, the Court should issue contempt sanctions that will ensure Donziger finally transfers his Amazonia shares to Chevron.

Donziger also admits that he continues to seek to monetize interests in the Ecuadorian judgment, despite this Court's prohibition. Dkt. 1875 ¶ 5 ("Donziger and the LAP Representatives, and each of them, is hereby further enjoined and restrained from undertaking any acts to monetize or profit from the Judgment, as modified or amended, or any New Judgment, including without limitation by selling, assigning, pledging, transferring or encumbering any interest therein."). In defending the purported "legitimacy" of his ongoing attempts to obtain "financing for enforcement efforts" (Opp. at 8), Donziger effectively concedes his contempt. Indeed, he does

1

not deny that previous "fundraising" efforts resulted in many millions of dollars flowing into Donziger's control that he could not account for. *See* Dkt. 1963 at 23 n.74 (noting $16 million unaccounted for). Having been caught red-handed seeking to sell interests in the Ecuadorian judgment to Elliott Management Corporation just months ago—a fact Donziger does not deny—he, instead, suggests that his conduct was made permissible by the Court's April 25, 2014 Order on Defendants' motion for a stay pending appeal (which, contrary to Donziger's accusations, Chevron did cite in its moving papers—*twice* (*see* Dkt. 1966 at 2 n.1, 13 n.5)).

      This Court never gave Donziger free reign to monetize and sell off pieces of the fraudulent Ecuadorian judgment, and Donziger is wrong to suggest otherwise. In addition to being divorced from the April 25, 2014 Order's context (which dealt only with a request for a stay pending appeal), Donziger's purported reading of that order would enable him to continue to conduct the very scheme that this Court's Judgment aimed to bring to an end. This Court enjoined Donziger from "undertaking any acts to monetize" the fraudulent Ecuadorian judgment, including "selling, assigning, pledging, transferring or encumbering any interest" in that judgment. Admittedly, Donziger was discussing just that during his meeting with Elliott—exchanging an "interest" in that judgment for financing from Elliott to further judgment enforcement and monetization efforts. Opp. at 8–9. Donziger also admits that neither his interest nor those of the LAP Representatives can be "offered for investment" (Opp. at 8), but he insists that he was selling some other "interest" in the Ecuadorian judgment to Elliott, without identifying what other interest that could possibly have been—a transparent and weak attempt to effectively nullify the Court's injunction against him "undertaking any acts to monetize or profit from the Judgment." Indeed, any such acts would necessarily be to his personal benefit, because, by his own account, he will receive 6.3% of the Ecuadorian judgment. And he does not deny that he attempted to ar-

range a deal from which he would profit from funds traceable to the corrupt Ecuadorian judgment. In short, Donziger effectively concedes he is violating this Court's injunction.

Donziger fares no better in arguing that Chevron should be denied discovery on his monetization efforts. He has stonewalled that discovery thus far, interposing specious objections and seeking delay upon delay. Donziger suggests that Chevron's allegations are not specific enough (Opp. at 9), but that shows his fundamental misunderstanding of the basic purpose of discovery—to obtain facts that one does not yet possess and that are uniquely in the possession of one's adversary. In any event, Donziger is wrong about the state of the current evidentiary record, as Chevron has already submitted substantial and undisputed evidence that Donziger has been attempting to monetize the Ecuadorian judgment. Only through discovery can Chevron learn the full extent of those efforts and, thus, reveal the full extent of Donziger's contempt.

In short, Donziger must be made to comply with this Court's Judgment, and it is apparent he will not do so unless the Court now imposes contempt sanctions.

## II.   ARGUMENT

### A.   Donziger Has No Legitimate Defense to His Defiance of the Judgment's Express Command Requiring Him to Turn Over His Amazonia Shares to Chevron

The Court ordered Donziger to turn over his Amazonia shares to Chevron. Dkt. 1875 ¶ 3. He has refused. Dkt. 1967 ¶ 8; Opp. at 2. Nothing more is needed to establish Donziger's contempt on this score: the Judgment was "clear and unambiguous," Chevron's "proof of noncompliance is clear and convincing," and Donziger "has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (quotation marks and citation omitted).

Donziger makes no attempt to defend his conduct under the standard applicable to contempt motions. Instead, he argues that his non-compliance with the Judgment is excused because

3

it is his "understanding" that Amazonia "either no longer exists or is entirely owned by Chevron[.]"  Opp. at 1; *see also id.* at 1 n.1 ("Assuming the entity or any part of it has been taken over by Chevron, it is now, in undersigned's view, null and void.").  Donziger also suggests that Chevron should first disclose information about Amazonia's current status so that the Court "can better understand the situation" and "satisfy any concerns [it] might have concerning Amazonia."  *Id*. at 2.  Donziger further claims he "cannot be compelled to act in a manner that would materially prejudice his clients," which he says would be the case if "the entity were functioning."  *Id.*

What does any of this have to do with Donziger's refusal to obey the Judgment by transferring his shares in Amazonia to Chevron, as the Court has ordered?  Nothing.  The current status of Amazonia is irrelevant to whether Donziger has complied with *his* obligations under the Court's Judgment.  In any event, Donziger is wrong that Amazonia is defunct.  Chevron sued Amazonia in Gibraltar for fraud relating to the pursuit of the Lago Agrio litigation and resulting judgment.  After filing a defense, Amazonia failed to participate in the Gibraltar proceedings and defaulted.  On December 9, 2015, Chevron obtained judgment against Amazonia for damages of approximately $28 million and equitable relief.  Amazonia failed to pay this judgment debt and the Gibraltar court granted Chevron's application on July 11, 2016, placing Amazonia into liquidation.  But as a matter of Gibraltar/English law, Amazonia still exists, as does its issued share capital, and Pablo Fajardo, Luis Yanza, and Ermel Chavez remain Amazonia directors.

But even if Amazonia were no longer "functioning" or was actually "null and void," that does not mean Donziger can simply retain his shares and ignore this Court's clear command.  Donziger's cursory suggestion that transferring the Amazonia shares would "prejudice his clients" is at best another belated (and waived) attack on the propriety of the relief the Court ordered more than four years ago.  That vague, unexplained prejudice in no way justifies his failure

4

to comply with the Judgment. Simply put, Donziger "is not entitled to satisfy the . . . judgment at his convenience and only insofar as it does not cause him any discomfort." *U.S. S.E.C. v. Universal Exp., Inc.*, 546 F. Supp. 2d 132, 140 (S.D.N.Y. 2008).

Donziger also references a letter he sent to Chevron's counsel in August 2014 regarding his Amazonia shares. *See* Opp. at 2 (citing Dkt. 1986-1). Nothing in this letter demonstrates compliance with the Judgment. To the contrary, Donziger's letter made clear that he would *not* comply with this Court's order that he transfer the Amazonia shares to the Clerk (and Donziger never made such a transfer). And, of course, Donziger has still not transferred his Amazonia shares to Chevron—even though all of Donziger's appellate options have been exhausted. Donziger's self-serving attempts to shift the burden onto Chevron for his own knowing failure to comply are unavailing.[1] Donziger does not claim he does not know how to or cannot comply with this Court's Judgment. He just refuses to do so.

In short, Donziger continues to defy the Judgment and keep his Amazonia shares. In light of his refusal to comply, contempt sanctions are necessary to coerce Donziger into satisfying the Court's commands. *See Badgley v. Santacroce*, 800 F.2d 33, 36 (2d Cir. 1986) ("The purpose of civil contempt . . . is to compel a reluctant party to do what a court requires of him.").

### B. Donziger's Excuses for His Attempted Monetization of the Ecuadorian Judgment Do Not Withstand Scrutiny

As with Amazonia, Donziger does not deny, so much as try to obscure, the fact that he has attempted to monetize the Ecuadorian judgment. Nor could he, given the evidence that

---

[1] Donziger's August 2014 letter suggested that the "onus" was on Chevron to "propose and request the form of the stock power and any other transactional documents deemed necessary to ensure compliance." Dkt. 1986-1 at 1. But the Judgment did not make Donziger's obligation contingent on any act by Chevron. To the contrary, the Court required Donziger to affirmatively "execute in favor of Chevron a stock power transferring to Chevron all of his right, title and interest in his shares of Amazonia." Dkt. 1875 ¶ 3. While the Judgment also required Donziger to "execute such other and further documents" requested by Chevron or ordered by the Court, that was a separate obligation that in no way eliminated Donziger's affirmative obligation to transfer the Amazonia shares in the first instance. *Id.*

Chevron has adduced, which proves that Donziger was attempting to sell interests in the Ecuadorian judgment to Elliott Management Corporation as recently as January 2018. *See* Dkt. 1967-2.

Donziger's response hinges on language in the Court's April 25, 2014 Order on Defendants' motion for a stay pending appeal. Under its express terms, that Order centered on whether a stay was appropriate *pending appeal* of the Judgment, and the Court did not license Donziger to profit from funds traceable to the corrupt Ecuadorian judgment, much less purport to decide conclusively what would or would not constitute a violation of the Judgment's prohibition on attempts to monetize it. *See, e.g.*, Dkt. 1901 at 3 (describing the "principal focus" of the motion subject to decision as "necessarily . . . on the question [of] whether movants will be harmed irreparably if the NY Judgment remains in effect until this appeal is decided"). The appeal has since concluded, Chevron has prevailed, and Donziger must now comply with all aspects of the Judgment. It is now beyond dispute that the Ecuadorian judgment, in the words of the Second Circuit, is a "wrongful debt." *Chevron Corp. v. Donziger*, 833 F.3d 74, 135 (2d Cir. 2016). And under this Court's Judgment, it is likewise beyond dispute that neither Donziger nor the LAP Representatives can monetize or profit from that wrongful debt. Dkt. 1875 ¶¶ 1, 5; *see also Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 644 (S.D.N.Y. 2014) ("The decision in the Lago Agrio case was obtained by corrupt means. The defendants here may not be allowed to benefit from that in any way. The order entered today will prevent them from doing so.").[2]

Nothing in the April 25, 2014 Order permitted Donziger's attempts to monetize the Ecuadorian judgment. That Order confirmed that Donziger was prohibited from "benefitting personally, at Chevron's expense, from property traceable to [the] fraudulent Judgment" (Dkt. 1901 at 11), and money raised in exchange for pieces of a potential recovery is certainly "traceable" to

---

[2] In light of the Court's recent entry of default judgment against Fajardo, the ADF, the non-appearing LAPs, and the other defaulting Defendants (Dkt. 1985), they, too, are now subject to the same restrictions on monetization of the Ecuadorian judgment.

the "fraudulent Judgment."  Moreover, while the Court explained that the March 2014 Judgment did not restrict the LAPs who defaulted in this action "from continuing to raise money in the same fashion" they did before (i.e., by obtaining funding from "investors in exchange for shares of any eventual recovery"), it did restrict the "two LAP Representatives who are named in the NY Judgment" from doing so.  Dkt. 1901 at 11–12 ; *see also id.* at 20 ("[T]he LAPs (*other than the two LAP Representatives*) and most of their entourage are virtually unconstrained by the NY Judgment in their ability to attempt to fund their litigation efforts against Chevron by continuing to sell shares in anything that may be recovered for whatever investors are willing to pay.") (emphasis added).  In other words, the Judgment prohibits Donziger and the LAP Representatives from attempting to monetize their interests in the Ecuadorian judgment.

Thus, there is every reason to believe that Donziger has been selling an undifferentiated interest in the Ecuadorian judgment that constitutes selling (at least in part) an interest held by the LAP Representatives and his own.  *Any* possibility of a recovery, or monetization of that recovery, is sufficient to trigger the Court's injunction.  As the Court observed in its April 25, 2014 Order, the Judgment "prohibited Donziger and the LAP Representatives from *attempting* to 'monetize or profit from the [Lago Agrio] Judgment, . . . including . . . by selling, assigning, pledging, transferring or encumbering any interest therein.'" *Id*. at 3 (quoting Dkt. 1875) (emphasis added) (alterations in original).  And any actual receipt by Donziger of such a recovery, even in respect of another party's interest in the Ecuadorian judgment, would automatically fall within the constructive trust created by paragraph 1 of the Judgment.  *See* Dkt. 1901 at 7 (noting that "collections . . . in respect of the Lago Agrio Judgment" may not be "funneled to Donziger as retainer payments"); Dkt. 1875 ¶ 1.

7

In his solicitations to Elliott, Donziger and his co-conspirators repeatedly pitched an investment in enforcement of the corrupt Ecuadorian judgment as a whole. Dkt. 1967-2 ¶ 6 ("Mr. Donziger inquired whether Elliott would provide him with funds for that purpose in exchange for an interest in proceeds that may result from enforcement of the Ecuadorian judgment."); *id.*, Ex. 4 at 2 ("It was a pleasure to meet with you to introduce you to the Chevron case and share the opportunity for you to be a key partner in enforcing and collecting the historical $9.5B/now $12B environmental judgement."). There is no indication that Donziger separated out for sale any particular interest in the judgment during his solicitation. Dkt. 1967-3 (J. Bush email to Elliott) ("Here is Katie who is trying to help the successful plaintiffs in the Chevron Ecuador deal."). And Donziger's Opposition is silent on what specific interests he was pitching to Elliott.

The April 25, 2014 Order also stated that the Judgment prevented Donziger from attempting to monetize *his* own interest in the Ecuadorian judgment. Dkt. 1901 at 10. While Donziger says that "there is nothing in the Lee Grin[berg] affidavit to back up" the contention that Donziger was attempting to sell his own interest to Elliott (Opp. at 8–9), that is wrong. In his contemporaneous notes, Mr. Grinberg wrote down a "6.3% personally of the 100%" (Dkt. 1967-2, Ex. 3), which corresponds exactly to Donziger's "equity interest in any proceeds of the Lago Agrio Judgment." Dkt. 1901 at 16. Even if this reference to Donziger's interest did not alone establish that Donziger was attempting to cash in his personal stake in the Ecuadorian judgment, at a minimum it justifies the discovery Chevron seeks into Donziger's monetization efforts.

**C.   Donziger's Opposition Confirms That Discovery in Support of a Judgment Enforcement and a Contempt Hearing is Necessary**

Donziger does not challenge the Court's power to order discovery as part of an inquiry into whether its injunctions are being obeyed or as part of a contempt proceeding. *See State of N.Y. v. Shore Realty Corp.,* 763 F.2d 49, 53 (2d Cir. 1985) ("The District Court had ample au-

8

thority to issue [discovery] orders necessary for the enforcement of its [injunction] order. Discovery may occur in connection with a pending contempt proceeding[.]") (citations omitted). Instead, Donziger argues that Chevron is not entitled to discovery because it has not already alleged specific facts to prove a forbidden monetization of the corrupt Ecuadorian judgment. This is wrong on both the law and the facts.

As a legal matter, Chevron is entitled to seek and receive proof of Donziger's compliance with the Judgment. *See, e.g.*, *Canada Dry Del. Valley Bottling Co. v. Hornell Brewing Co., Inc.*, No. 11 Civ. 4308, 2013 WL 5434623, at *11–12 (S.D.N.Y. Sept. 30, 2013) (requiring defendant to "produce proof of compliance with the Judgment previously issued by" the court and to submit to discovery concerning its "compliance with [its] Judgment . . . .") (citation omitted). Donziger argues that discovery should be closed to Chevron because it does not already know what specific facts that discovery may reveal. But this is baseless. *See, e.g.*, *Hamilton v. Kerik*, No. 01 CV 6934, 2002 WL 31834428, at *1 n.2 (S.D.N.Y. Dec. 17, 2002) ("[D]efendants['] objection that the request 'assumes facts not established' is frivolous since the purpose of discovery is to learn facts."). That is especially so here, as the record shows that Donziger endeavors to keep his attempts to monetize the Ecuadorian judgment secret through the use of non-disclosure agreements. *See* Dkt. 1967-2, Ex. 2; *see also id.*, Ex. 1 ("Please execute [the NDA] prior to the meeting so [Donziger] can speak freely."); *id.*, Ex. 4 at 2 ("I have a packet of materials that I generally send out to those doing due diligence on the opportunity.").

On the facts, Donziger is wrong to suggest that Chevron has not put forward sufficient allegations of his monetization of the Ecuadorian judgment—as the evidence discussed in Chevron's moving papers and in the previous section confirms. While Donziger denies he has violated the Judgment, Chevron is entitled to explore through discovery and test through fact-finding

9

the veracity of that denial. *See, e.g.*, *U.S. v. Dist. Council of New York City*, No. 90 Civ. 5722, 2007 WL 2324338, at *8 (S.D.N.Y. Aug. 14, 2007) ("[T]here is no substance to the [defendants'] suggestion that the government is not entitled to discovery because their officers submitted 'sworn' statements. . . . [T]he discovery rules do not recognize litigation by *ipse dixit*.").[3]

Accordingly, the Court should authorize Chevron's discovery under either Federal Rule of Civil Procedure 70 or through its authority to ensure compliance with its injunctive orders.[4]

### III.  CONCLUSION

For the foregoing reasons, Chevron requests that the Court (1) authorize Chevron to serve post-judgment discovery requests on Donziger and any other person or entity reasonably calculated to possess information relevant to any attempts by Donziger to monetize or profit from, or obtain property traceable to, the Ecuadorian judgment; (2) find Donziger to be in contempt for established violations of the Judgment and; (3) determine the appropriate remedy to compel Donziger's compliance with the Judgment. Chevron also requests any other relief the Court deems just and proper.

---

[3] There is already reason to believe that Donziger is enriching himself from funds raised to pursue enforcement of the corrupt Ecuadorian judgment. The UDAPT has publicly denounced Donziger, stating that he is "driven by [his] greed," is characterized by a "lack of transparency in managing the resources of the people affected," and has "taken advantage" of the Ecuadorian plaintiffs' lawsuit for his own benefit. Dkt. 1945-2 (Sept. 12, 2017 UDAPT letter). And he apparently continues to refuse a demand by the UDAPT to account for missing litigation funds. Dkt. 1945-1 (Aug. 20, 2016 UDAPT resolution).

[4] Separate from discovery related to Donziger's injunction violations, Chevron is currently conducting discovery of Donziger and various third parties in support of enforcing the Court's February 28, 2018 supplemental judgment awarding $813,602.71 in taxed costs. Dkt. 1962. Donziger does not address this discovery in his Opposition other than a vague reference to a potential motion to quash. Opp. at 8. During attempted meet and confer efforts, however, it became clear that counsel for some third parties colluded to respond—in nearly verbatim terms—with blanket refusals to comply with any aspect of Chevron's subpoenas, notwithstanding Chevron's right to seek such discovery under Federal Rule of Civil Procedure 69(a)(2) and CPLR Rules 5223 and 5224. *See* Dkt. 1968 at 4. Donziger himself has refused to provide *any* information to Chevron, has interposed objections to virtually all of Chevron's discovery requests, and has informed Chevron that he will refuse to appear for a deposition unless ordered by the Court. *See* Declaration of Randy M. Mastro ¶ 4; *id.*, Ex. 8 (Chevron's discovery requests); Ex. 9 (Donziger's objections). This is yet another example of Donziger's continued intransigence and refusal to obey this Court's judgments. Chevron intends to move to compel Donziger to comply with Chevron's discovery requests related to the supplemental judgment.

| | |
|---|---|
| Dated: May 4, 2018 | Respectfully submitted, |
| New York, New York | GIBSON, DUNN & CRUTCHER LLP |

/s/ Randy M. Mastro

Randy M. Mastro
Andrea E. Neuman
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035
Email: RMastro@gibsondunn.com

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520


STERN, KILCULLEN & RUFOLO LLC
Herbert J. Stern
Joel M. Silverstein
325 Columbia Tpke, Ste 110
P.O. Box 992
Florham Park, New Jersey 07932-0992
Telephone:  973.535.1900
Facsimile:  973.535.9664

*Attorneys for Plaintiff Chevron Corporation*