UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHEVRON CORPORATION,

                Plaintiff,

     -against-

                            Case No.  11 Civ.  0691 (LAK)

STEVEN R. DONZIGER, et al.,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# CHEVRON CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AS TO THE DEFAULTED RICO DEFENDANTS


GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

STERN, KILCULLEN & RUFOLO LLC
325 Columbia Tpke, Ste 110
P.O. Box 992
Florham Park, New Jersey 07932-0992
Telephone: 973.535.1900
Facsimile: 973.535.9664

*Attorneys for Plaintiff Chevron Corporation*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 2

I.    A Prevailing Plaintiff in a RICO Action Is Entitled to an Attorneys' Fee Award Equal to a Reasonable Number of Hours Multiplied by a Reasonable Hourly Rate ......... 2

II.    Chevron Is Entitled to an Attorneys' Fees Award Based on the Court's Entry of Default Judgment as to the Defaulted RICO Defendants .................................................. 6

III.    The Attorneys' Fees Requested by Chevron Are Reasonable ........................................... 8

    A.  The Hourly Rates Claimed by Chevron's Counsel Are Reasonable Within the Relevant Market and Considering the Nature of the Litigation................................... 9

        1.  The Requested Rates Are Reasonable in the Southern District of New York ............................................................................................................... 10

        2.  The Requested Rates Reflect the Difficulty of the Matter and the Results Achieved ................................................................................................ 10

    B.  The Hours Expended Related to the Complaints Were Reasonably Necessary to Obtain a Successful Outcome for Chevron............................................................ 11

    CONCLUSION.................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re "Agent Orange" Prod. Liab. Litig.*,
  818 F.2d 226 (2d Cir. 1987)..................................................................................10

*Amerisource Corp. v. Rx USA Int'l, Inc.*,
  02-CV-2514 (JMA), 2010 WL 2160017 (E.D.N.Y. May 26, 2010) .........................................4

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
  522 F.3d 182 (2d Cir. 2008)..........................................................................2, 3, 4, 9

*Barfield v. New York City Health and Hospitals Corp.*,
  537 F.3d 132 (2d Cir. 2008)..................................................................................4, 8

*Bergerson v. New York State Office of Mental Health*,
  652 F.3d 277 (2d Cir. 2011)......................................................................................2

*Chevron Corp. v. Donziger*,
  833 F.3d 74 (2d Cir. 2016), *reh'g denied* (Oct. 27, 2016), *cert. denied*, 137 S.
  Ct. 2268 (U.S. June 19, 2017)....................................................................................1

*Christiansburg Garment Co. v. EEOC*,
  434 U.S. 412 (1978)................................................................................................7

*City of New York v. Mickalis Pawn Shop, LLC*,
  645 F.3d 114 (2d Cir. 2011)......................................................................................6

*Copeland v. Marshall*,
  641 F.2d 880 (D.C. Cir. 1980)...................................................................................5

*Ebbert v. Nassau County*,
  No. CV 05-5445 (AKT), 2011 WL 6826121 (E.D.N.Y. Dec. 22, 2011) ..............................11

*Farrar v. Hobby*,
  506 U.S. 103 (1992)............................................................................................4, 8

*Grant v. Martinez*,
  973 F.2d 96 (2d Cir. 1992)........................................................................................5

*Gucci Am., Inc. v. Rebecca Gold Enterprises, Inc.*,
  89 CIV. 4736 (BN), 1993 WL 88270 (S.D.N.Y. Mar. 23, 1993)............................................5

*Gusman v. Unisys Corp.*,
  986 F.2d 1146 (7th Cir. 1993) ...................................................................................4

*Gutman v. Klein*,
515 F. App'x 8 (2d Cir. 2013) .................................................................................6

*Harvey v. Home Savers Consulting Corp.*,
No. 07-CV-2645 JG, 2011 WL 4377839 (E.D.N.Y. Aug. 12, 2011) ........................6

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)...........................................................................................5, 7

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ................................................................................4

*Khalil v. Original Old Homestead Rest., Inc.*,
657 F. Supp. 2d 470 (S.D.N.Y. 2009)....................................................................7

*Khanna v. Am. Exp. Co.*,
No. 11 CIV. 6245 JSR, 2011 WL 6382603 (S.D.N.Y. Dec. 14, 2011) ....................7

*Lenihan v. City of New York*,
640 F. Supp. 822 (S.D.N.Y. 1986).........................................................................6

*Lilly v. County of Orange*,
910 F. Supp. 945 (S.D.N.Y. 1996).......................................................................10

*Lochren v. Cnty. of Suffolk*,
344 F. App'x 706 (2d Cir. 2009) ...........................................................................4

*Loop Prod. v. Capital Connections LLC*,
797 F. Supp. 2d 338 (S.D.N.Y. 2011)....................................................................6

*Luciano v. Olsten Corp.*,
109 F.3d 111 (2d Cir. 1997)..................................................................................5

*Lunday v. City of Albany*,
42 F.3d 131 (2d Cir. 1994)...........................................................................1, 5, 6

*MDO Dev. v. Kelly*,
726 F. Supp. 79 (S.D.N.Y. 1989)..........................................................................2

*Millea v. Metro-North R.R. Co.*,
658 F.3d 154 (2d Cir. 2011)..............................................................................7, 8

*Miroglio S.P.A. v. Conway Stores, Inc.*,
629 F. Supp. 2d 307 (S.D.N.Y. 2009)....................................................................5

*Mostly Memories, Inc. v. For Your Ease Only, Inc.*,
594 F. Supp. 2d 931 (N.D. Ill. 2009) ....................................................................4

*New York State Assoc. for Retarded Children, Inc. v. Carey*,
　711 F.2d 1136 (2d Cir. 1983) ................................................................................5

*Niles v. Palmer*,
　No. 97 Civ. 7573, 1999 WL 1419042 (S.D.N.Y. Oct. 22, 1999) ...........................9

*People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*,
　90 F.3d 1307 (7th Cir. 1996) ................................................................................4

*Perkins v. Standard Oil Co.*,
　399 U.S. 222 (1970) ..............................................................................................9

*Rodriguez v. McLoughlin*,
　84 F. Supp. 2d 417 (S.D.N.Y. 1999) ...................................................................10

*Sciambra v. Graham News*,
　892 F.2d 411 (5th Cir. 1990) ................................................................................8

*Simmons v. New York City Transit Auth.*,
　575 F.3d 170 (2d Cir. 2009) ..................................................................................3

*Stochastic Decisions, Inc. v. DiDomenico*,
　995 F.2d 1158 (2d Cir. 1993) ............................................................................1, 2

*Tran v. Tran*
　166 F. Supp. 2d 793 (S.D.N.Y. 2001) ...................................................................9

*U.S. Football League v. Nat'l Football League*,
　887 F.2d 408 (2d Cir. 1989) ..................................................................................8

**Statutes**

15 U.S.C. § 15(a) ........................................................................................................8

18 U.S.C. § 1964(c) ..............................................................................................1, 2, 6

Pub. L. 91-452, 84 Stat. 947, § 904(a) ......................................................................7

**Other Authorities**

The Hon. Jed S. Rakoff & Howard W. Goldstein, RICO Civil and Criminal Law
　and Strategy § 7.08 (Law Journal Press, 2005) ...................................................9

**Treatises**

10-54 Moore's Federal Practice – Civil § 54.190 "Lodestar Method of Fee
　Calculation." ..........................................................................................................2

## PRELIMINARY STATEMENT

On March 4, 2014, following a seven-week trial, this Court issued an opinion and judgment finding Steven Donziger and his law firms liable for violating RICO through a scheme to extort billions of dollars from Chevron Corporation ("Chevron"), which included the corrupt procurement of a multi-billion dollar Ecuadorian judgment.  The Second Circuit has since unanimously affirmed this Court's judgment in all respects, and the Supreme Court has denied certiorari.  *Chevron Corp. v. Donziger*, 833 F.3d 74 (2d Cir. 2016), *reh'g denied* (Oct. 27, 2016), *cert. denied*, 137 S. Ct. 2268 (U.S. June 19, 2017).  But several Defendants against whom Chevron asserted the same RICO claim—Pablo Fajardo Mendoza, Luis Yanza, Frente de Defensa de la Amazonia (the "Frente"), Selva Viva Selviva Cia, Ltda. ("Selva Viva") (collectively, the "Defaulted RICO Defendants")—failed to appear in this action, and the Court has entered a default judgment against them.  *See* Dkt. 1985.  Chevron now seeks an award of a "reasonable attorney's fee" for the legal costs it incurred in prosecuting this action against the Defaulted RICO Defendants—an award mandated by the RICO statute.  18 U.S.C. § 1964(c); *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1168 (2d Cir. 1993).[1]

Chevron is entitled to an award compensating it for the cost of attorney time that was "usefully and reasonably expended."  *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994).  As to the Defaulted RICO Defendants, Chevron seeks only those fees related to the preparation, filing, and service of the complaints filed against them, and does not seek any fees in connection with its efforts to obtain entry of a default judgment or for fees expended litigating the same RICO claim against Donziger and his law firms.  In other words, as with Donziger and his law

---

[1]  Chevron moved for attorneys' fees as to Donziger and his law firms on March 18, 2014.  Dkt. 1889.  The Court deferred resolving that motion until after the conclusion of the appellate proceedings, but reactivated the motion on July 17, 2017.  Dkt. 1923 at 2.  The attorneys' fees motion as to Donziger and his law firms has been fully briefed and is under submission.

firms, Chevron does not seek attorneys' fees for all of the work it performed.

In total, Chevron seeks an award of $395,138 in attorneys' fees as to the Defaulted RICO Defendants, reflecting 728.60 hours billed by Chevron's outside counsel at Gibson, Dunn & Crutcher LLP.  This amount is based on reasonable hourly rates—commensurate with the rates charged by comparable firms in the Southern District of New York, and appropriate for the complexity and importance of this litigation.

## ARGUMENT

### I.       A Prevailing Plaintiff in a RICO Action Is Entitled to an Attorneys' Fee Award Equal to a Reasonable Number of Hours Multiplied by a Reasonable Hourly Rate

When a plaintiff prevails in a civil RICO action, the award of reasonable attorneys' fees is mandatory.  18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter . . . shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . ."); *see also Stochastic Decisions, Inc.*, 995 F.2d at 1168; *MDO Dev. v. Kelly*, 726 F. Supp. 79, 86 (S.D.N.Y. 1989).

Second Circuit case law on the proper means of determining an attorneys' fee award is extensive, but the essential rule is that "[a]ttorneys' fees are awarded by determining a *presumptively reasonable fee*, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours."  *Bergerson v. New York State Office of Mental Health*, 652 F.3d 277, 289 (2d Cir. 2011) (emphasis added).  The Second Circuit adopted this "presumptively reasonable fee" approach in *Arbor Hill*, after undertaking a detailed analysis of the history of attorneys' fee jurisprudence.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186–93 (2d Cir. 2008); *see also* 10-54 Moore's Federal Practice – Civil § 54.190 "Lodestar Method of Fee Calculation."

Focusing on the "reasonable hourly rate" half of the fee equation, the court in *Arbor Hill*

2

instructed a district court evaluating a fee request, "in exercising its considerable discretion, to bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." 522 F.3d. at 190 (emphasis in original).  Because *Arbor Hill* arose in the context of a pro bono representation under the Voting Rights Act, the court's analysis expressly addressed factors a district court must consider where market factors may not have "disciplin[ed]" the rate structure agreed to by the plaintiff.[2]  *Id*. at 184.  But at the outset of the analysis, the court explained that its fee-setting jurisprudence is meant to "approximate" the "free market."  *Id*. at 184 ("Our fee-setting jurisprudence has become needlessly confused—it has come untethered from the free market it is meant to approximate.").

As the Second Circuit subsequently held, "[t]he presumptively reasonable fee boils down to 'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'"  *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quoting *Arbor Hill*, 522 F.3d at 185, 190).  Indeed, it has long been the rule in the Seventh Circuit that where the party seeking an attorneys' fee award actually paid the requested fees based on an hourly rate, *that* rate is "presumptively appropriate," and departure from that rate by the district court without basis is an abuse of discretion.  *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150–51 (7th Cir. 1993) (holding that "lawyers

---

[2]   The fees in question in *Arbor Hill* were those of Chevron's counsel in this action, Gibson, Dunn & Crutcher LLP, and the court affirmed an award of attorneys' fees.  The particular question on appeal, which prompted the court to undertake a broader analysis of fee determination doctrine, was how to determine a reasonable hourly rate where counsel resident in one district (the Southern District of New York) appeared in an action in another (the Northern District of New York) where prevailing rates for legal services were substantially lower than in the counsel's resident district—the so-called "forum rule."  That particular issue is not implicated here, because Chevron relies on the prevailing rates for legal services in the Southern District of New York, where this action proceeded.

who fetch above-average rates are presumptively entitled to them, rather than to some rate devised by the court"); *see also Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 594 F. Supp. 2d 931, 934 (N.D. Ill. 2009) ("the attorney's actual billing rate paid by his client is 'presumptively appropriate' to use as the market rate) (quoting *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1311 (7th Cir. 1996)).  Although the Second Circuit has not squarely addressed the question, the Seventh Circuit's presumption that rates actually paid in a lawsuit are reasonable is consistent with the reasoning of *Arbor Hill*.

Beyond evidence of what the party seeking fees actually paid to counsel, a district court is to consider all relevant factors, including those identified in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  *Arbor Hill*, 522 F.3d at 190.[3]  The district court is afforded considerable discretion, and "*Arbor Hill* did not hold that district courts must recite and make separate findings as to all twelve *Johnson* factors."  *Lochren v. Cnty. of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009).  In general, "district courts look to the facts and complexity of the case and take into account their own experience with the case."  *Amerisource Corp. v. Rx USA Int'l, Inc.*, 02-CV-2514 (JMA), 2010 WL 2160017, at *11 (E.D.N.Y. May 26, 2010).  "The most critical factor" in determining the presumptively reasonable fee "is 'the degree of success obtained' by the plaintiff."  *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

*Arbor Hill* does not address the appropriate number of hours—the other half of the "pre-

---

[3]  "The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."  522 F.3d at 186 n.3 (citing *Johnson*, 488 F.2d at 717–19).

sumptively reasonable fee" calculation—but before and since *Arbor Hill*, the Second Circuit has held that "[i]n reviewing a fee application, the district court examines the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case." *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997).

Hours which are "excessive, redundant, or otherwise unnecessary" are not compensable because "'[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc)) (emphases in original). But the district court's inquiry should not hinge on what appears necessary in hindsight, and should not "second guess experienced counsel in deciding whether the hours devoted to research [and] drafting . . . were necessary [or] substitute[e] [its] after-the-fact judgment for that of counsel who engaged in whatever research and other activities they felt necessary." *Lunday*, 42 F.3d at 134. "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 312 (S.D.N.Y. 2009) (quoting *Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir. 1992)).

In support of a request for attorneys' fees, the party seeking fees "must document the application with contemporaneous time records . . . specifying, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Assoc. for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). "[W]here the record is substantial, it is permissible to file an application in the form of an affidavit, appending in computer printout form a copy of the relevant portions of the contemporaneous time records." *Gucci Am., Inc. v. Rebecca Gold Enterprises, Inc.*, 89 CIV. 4736 (BN), 1993 WL 88270, at *3 (S.D.N.Y. Mar. 23,

1993).  A party seeking fees may transfer information from "contemporaneous records [to] a form convenient for the Court"—submission of the actual physical records is not required.  *Lenihan v. City of New York*, 640 F. Supp. 822, 824 (S.D.N.Y. 1986).  The ultimate purpose of any submission is to permit the district court to evaluate whether the hours were "usefully and reasonably expended."  *Lunday*, 42 F.3d at 134.

## II.  Chevron Is Entitled to an Attorneys' Fees Award Based on the Court's Entry of Default Judgment as to the Defaulted RICO Defendants

Reasonable attorneys' fees are available to any party "injured in its business or property" by a RICO violation.  *See* 18 U.S.C. § 1964(c).  By failing to appear, the Defaulted RICO Defendants have admitted that they violated RICO and injured Chevron in its business or property.  *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (defaulting defendants admit a complaint's factual allegations); Dkt. 1–2 ¶¶ 303–51 (alleging RICO violations and injury to Chevron in its business or property); Dkt. 283 ¶¶ 339–79 (same).  And based on those admissions, the Court entered a default judgment as to the Defaulted RICO Defendants, and awarded Chevron the same equitable relief that it awarded to the appearing Defendants.  *See* Dkt. 1985.

Courts routinely award attorneys' fees under 18 U.S.C. § 1964(c) against defaulted defendants.  *See, e.g.*, *Gutman v. Klein*, 515 F. App'x 8, 10 (2d Cir. 2013); *Loop Prod. v. Capital Connections LLC*, 797 F. Supp. 2d 338, 353 (S.D.N.Y. 2011); *Harvey v. Home Savers Consulting Corp.*, No. 07-CV-2645 JG, 2011 WL 4377839, at *2 (E.D.N.Y. Aug. 12, 2011).  And the RICO statute does not require that a plaintiff seek or obtain monetary damages for an award of attorneys' fees, and attorneys' fee awards generally are not required to be proportionate or tied to monetary damages awards.  Courts do consider the degree of success obtained when weighing the amount of an attorney fee award, but success is not measured exclusively in terms of mone-

tary damages awards.

In general, "a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *Hensley*, 461 U.S. at 435 n.11. Disproportion between a plaintiff's recovery and the fee applied for is not "a proper basis for a reduction in an otherwise reasonable fee." *Khalil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 478 (S.D.N.Y. 2009). Indeed, a degree of disproportion is to be expected when attorneys' fees are awarded pursuant to a fee-shifting statute. *See Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011) ("The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery.") (emphasis in original). That is because fee-shifting provisions, like the one in the RICO statute, are designed "precisely to encourage individual plaintiffs to bring such suits." *Khanna v. Am. Exp. Co.*, No. 11 CIV. 6245 JSR, 2011 WL 6382603, at *4 (S.D.N.Y. Dec. 14, 2011).

Furthermore, the provision of costs and attorneys' fees under RICO should be construed liberally to "effectuate [the statute's] remedial purposes." Pub. L. 91-452, 84 Stat. 947, § 904(a); *see also Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 415–17 (1978) (noting fee-shifting provisions in general should be construed liberally); *Khanna*, 2011 WL 6382603, at *4 ("RICO awards victorious parties mandatory treble damages and attorneys' fees . . . precisely to encourage individual plaintiffs to bring such suits.").

Interpreting the similar fee provision in the Clayton Act,[4] the Second Circuit has expressly held that proving injury is all that is required to obtain attorneys' fees. In *U.S. Football*

---

4   Section 4 of the Clayton Act states, in relevant part, that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15(a).

*League v. Nat'l Football League*, a jury had found that the National Football League had injured the upstart USFL through its monopoly power, but awarded the USFL only a nominal $1.00 in damages, and the district court subsequently denied the USFL's request for injunctive relief. 887 F.2d 408, 410 (2d Cir. 1989). Nonetheless, the Second Circuit held that the USFL was entitled to attorneys' fees, "because the USFL was successful in proving an antitrust injury, all that is required under section 4 of the Clayton Act[.]" *Id*. at 414; *see also Sciambra v. Graham News*, 892 F.2d 411, 415 (5th Cir. 1990).

"The most critical factor in determining the presumptively reasonable fee is 'the degree of success obtained' by the plaintiff." *Barfield*, 537 F.3d at 152 (quoting *Farrar*, 506 U.S. at 114). Success does not require a large monetary award. *Millea*, 658 F.3d at 168 (holding it to be an abuse of discretion where "[t]he district court conflated a small damages award with a de minimis victory"). The equitable relief awarded to Chevron is a significant victory for Chevron, as it will help protect Chevron's assets or those of its subsidiaries from attempts by the Defaulted RICO Defendants to profit from the fraudulent Ecuadorian judgment.

## III.   The Attorneys' Fees Requested by Chevron Are Reasonable

This action represented a major component of Chevron's defense against a multi-billion dollar extortionate scheme. Given the stakes, it was reasonable, indeed necessary, for Chevron to retain experienced, capable counsel, and for that counsel to devote many hours in crafting the detailed complaints filed in this action. The result—a default judgment that has provided Chevron with significant equitable relief—is an important victory for Chevron.

The fees sought here are not based on a hypothetical calculation, but are actual fees incurred and paid by Chevron. Chevron is a sophisticated buyer of legal services. The company's general counsel is a former partner at a leading large law firm, and it routinely retains outside

counsel to handle litigation and other matters.  Dkt. 1891 ¶ 13.[5]  It requires detailed invoices in support of bills for legal fees, and monitors the work done by its outside counsel to ensure that its legal work is being carried out in an efficient manner.  *Id*.  Consequently, this Court need not "bear[] the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively."  *Arbor Hill*, 522 F.3d at 184.  Those shoes are already filled, and the fees paid by Chevron in this case define what "a reasonable, paying client would be willing to pay[.]"  *Id*.  Chevron's requested fees of $395,138, which represents only the fees incurred for the preparation, filing, and service of the complaints filed against the Defaulted RICO Defendants, is more than reasonable.

## A.  The Hourly Rates Claimed by Chevron's Counsel Are Reasonable Within the Relevant Market and Considering the Nature of the Litigation

"When fixing a reasonable rate for attorneys' fees, it is appropriate for a court to consider and to apply the prevailing market rates in the relevant community for similar legal work of lawyers of reasonably comparable skill, experience and reputation."  *Niles v. Palmer,* No. 97 Civ. 7573, 1999 WL 1419042, at *17 (S.D.N.Y. Oct. 22, 1999); *see also Tran v. Tran* 166 F. Supp. 2d 793, 803 (S.D.N.Y. 2001).  The Court should also take into account, among other things, the time expended, the skilled lawyering, the difficulty of the matter and the results achieved.  The Hon. Jed S. Rakoff & Howard W. Goldstein, RICO Civil and Criminal Law and Strategy § 7.08 (Law Journal Press, 2005) (citing *Perkins v. Standard Oil Co.,* 399 U.S. 222, 223 (1970)).  The rates and expenditures claimed by Chevron are reasonable.

---

[5]  As evidentiary support for this motion, Chevron is relying on the Declaration of Christopher M. Joralemon (and accompanying exhibits) that was filed in support of the attorneys' fee motion as to Donziger and his law firms.  *See* Dkt. 1891.

## 1. The Requested Rates Are Reasonable in the Southern District of New York

This case was filed in the federal district court for the Southern District of New York. New York City market rates therefore should apply to this Court's determination of the reasonableness of the hourly rates underlying Chevron's requested fees. *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987) (the relevant community for determining rates is the "district in which the reviewing court sits").

The rates paid by Chevron accord with the prevailing market rates in the Southern District of New York. *See Rodriguez v. McLoughlin*, 84 F. Supp. 2d 417, 423 (S.D.N.Y. 1999)*; see also* Dkt. 1891-7 (Latham Watkins average $990; Frank average $1,000; Skadden average $1035; Paul Weiss average $1040; Debevoise average $1,055). The rates claimed in Chevron's fee application are well within the range of reasonableness established by the New York City market. Moreover, the rates paid by Chevron are similar to those regularly charged to and paid by Gibson Dunn's clients—including Chevron. Dkt. 1891 ¶ 14; *see also Lilly v. County of Orange*, 910 F. Supp. 945, 949 (S.D.N.Y. 1996) ("The actual rate that counsel can command in the market place is evidence of the prevailing market rate.").[6]

## 2. The Requested Rates Reflect the Difficulty of the Matter and the Results Achieved

Chevron's RICO claims were complex and required developing evidence that Defendants operated a multinational criminal enterprise over several years in order to defraud and extort Chevron. This lawsuit involved exposing Defendants' fraud in Ecuador and demonstrating that

---

[6] In *Rodriguez*, the court stated "part of the reason attorneys at prominent New York law firms are entitled to charge higher rates is that higher overhead and higher costs are associated with such practice." 84 F. Supp. 2d at 426. The court further found that were it to ignore the higher costs and overhead associated with major law firms, counsel at such firms, "for whom [civil rights litigants] are not typical clients, would be dissuaded in engaging in civil rights litigation on behalf of clients of modest means." *Id*. at 422.

their baseless U.S. pressure campaign was part of a concerted and organized effort to extort one of the best-known companies in the world. The requested rates are appropriate given the experience and special expertise Chevron's counsel brought to the litigation. *See Ebbert v. Nassau County*, No. CV 05-5445 (AKT), 2011 WL 6826121, at \*18 (E.D.N.Y. Dec. 22, 2011) (approving rates based in part on the attorneys' "special expertise" they brought to the case).

Gibson Dunn was well suited to represent Chevron in this litigation. Gibson Dunn is a leading international law firm with more than 1200 attorneys in 20 offices worldwide. Its largest office is in New York, where it has more than 300 attorneys. It was awarded "Litigation Department of the Year" for two-year periods in 2010, 2012, and 2016 by The American Lawyer magazine, in significant part because of its representation of U.S. companies engaged in high-stakes, transnational litigation, including the Chevron matter. Dkt. 1891 ¶ 16. The firm has a Transnational Litigation practice group that focuses on these types of cases, and two of the group's co-chairs, Andrea Neuman and William Thomson, represented Chevron in this action. Lead counsel Randy Mastro and other Gibson Dunn attorneys representing Chevron have served as Assistant United States Attorneys in the Southern District of New York, with extensive and specialized experience prosecuting criminal enterprises and organized crime. This case's complexity and importance require the services of highly experienced legal counsel, which Gibson Dunn provided—at rates similar to those charged by its peer firms in this District.

### B. The Hours Expended Related to the Complaints Were Reasonably Necessary to Obtain a Successful Outcome for Chevron

On February 2, 2011, Chevron filed its original complaint in this action. Dkt. 1. The 230-page complaint centered on Defendants' RICO violations and included a 52-page chart detailing 172 instances of mail and wire fraud—predicate acts under RICO. *See id.* at 179–206, App. B. It also set forth detailed factual allegations establishing that Donziger had engaged in

extortion, obstruction of justice, and other RICO predicate acts.  Chevron's detailed pleading was reasonable in order to protect the complaint from anticipated attack on numerous grounds.  In April 2011, Chevron filed an amended complaint consisting of 432 numbered paragraphs and an appendix listing 184 specific instances of mail and wire fraud.  *See* Dkts. 283, 283-1, 283-2.

Because many of the defendants to Chevron's claims resided in Ecuador (including the Defaulted RICO Defendants), and in anticipation that some or all of the Ecuadorians would default (as most did), Chevron was required to incur additional legal fees analyzing and executing a plan for service of the complaint and amended complaint.  *See* Dkts. 69–71, 75, 92, 93, 95.

Accordingly, Chevron seeks $395,138 in attorneys' fees related to the complaint and amended complaint in this action.  *See* Dkt. 1891-1, Ex. A-1.[7]

## CONCLUSION

For the foregoing reasons, Chevron respectfully requests that this Court order the Defaulting RICO Defendants pay, within fourteen days of this Court's order, Chevron's attorneys' fees in the total amount of $395,138.

Dated: May 7, 2018                             Respectfully submitted,
New York, New York

                                       /s/ Randy M. Mastro
                                       Randy M. Mastro
                                       Andrea E. Neuman
                                        GIBSON, DUNN & CRUTCHER LLP
                                        200 Park Avenue
                                        New York, New York 10166
                                        Telephone: 212.351.4000
                                        Facsimile:  212.351.4035

---

[7]  Chevron has requested these same fees as part of the attorneys' fees motion as to Donziger and his law firms, *see* Dkt. 1890 at 16–17, and as an item of damages in the Gibraltar proceedings.  Chevron will not seek to recover these fees more than once.

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile:  213.229.7520


STERN, KILCULLEN & RUFOLO LLC
Herbert J. Stern
Joel M. Silverstein
325 Columbia Tpke, Ste 110
P.O. Box 992
Florham Park, New Jersey 07932-0992
Telephone: 973.535.1900
Facsimile: 973.535.9664

*Attorneys for Plaintiff Chevron Corporation*