# Exhibit D

# In The Matter Of:

*CHEVRON CORPORATION v*
*STEVEN R. DONZIGER, et al.*

*November 18, 2013*

*SOUTHERN DISTRICT REPORTERS*
*500 PEARL STREET*
*NEW YORK, NY 10007*
*212 805-0330*

Original File DBILCHEF.txt
**Min-U-Script® with Word Index**

Case 1:11-cv-00691-LAK-RWL   Document 2003-4   Filed 05/11/18   Page 3 of 5
**CHEVRON CORPORATION v**
**STEVEN R. DONZIGER, et al.**
November 18, 2013

| DBI8CHE5 | Donziger - cross | Page 2462 |

1  day before or earlier before you gave it to us or to the Court?
2  A. I gave an earlier version to The New York Times.
3  Q. Thank you for that clarification. I appreciate it.
4       Am I correct that you yourself describe yourself as
5  someone who could have been a propagandist?
6  A. I don't know.
7  Q. You recall saying that on the Crude outtakes, sir, that you
8  could have been a propagandist?
9  A. No.
10 Q. We will refresh your recollection later.
11      Mr. Donziger, this is not the first time you have
12 testified, is it, sir, in this case?
13 A. No.
14 Q. You also gave a deposition in your 1782 proceeding,
15 correct?
16 A. Many days, yes.
17 Q. Sir, you prepared yourself to give that testimony in your
18 1782 proceeding, correct?
19 A. I don't understand your question.
20 Q. You prepared yourself to give testimony at your deposition
21 in your 1782 proceeding, correct? You didn't just go in cold,
22 you prepared, correct?
23 A. I prepared with my then counsel.
24 Q. And you prepared responses to give to questions in your
25 1782 proceeding, correct, sir?

| DBI8CHE5 | Donziger - direct | Page 2461 |

9  **CROSS-EXAMINATION**
10 **BY MR. MASTRO:**
11 Q. We meet again, Mr. Donziger. Good afternoon.
12      Sir, am I correct that you only served on us last
13 night around 6:30 a final version of your witness statement,
14 the declaration that was just offered into evidence, correct,
15 sir?
16 A. Yes.
17 Q. And that you served on us a draft of that statement on
18 Thursday evening, around 8:00, correct, sir?
19 A. That's correct.
20 Q. In the evening, correct?
21 A. Yes.
22 Q. But you had already given it out, that draft, to the press
23 before you ever gave it to us or to the Court, correct, sir?
24 A. No.
25 Q. Did you not give your statement to The New York Times the

| DBI8CHE5 | Donziger - cross | Page 2463 |

1  A. Well, I did a preparation where I tried to think of
2  truthful responses to questions that I expected to be posed.
3  Q. Isn't it a fact, sir, that one of the responses you
4  prepared for yourself to give when you were about to give
5  testimony then was to respond to questions, "It's possible, but
6  I don't think so"?
7  A. If that were to be an accurate response, yes, I would give
8  that response.
9  Q. Didn't you also prepare yourself to give the response, "I
10 guess it's possible, but to the best of my recollection I
11 didn't"?
12 A. If that would be accurate, yes, I would give that response.
13 Q. I am going to show you, sir, what has been marked as
14 Plaintiff's Exhibit 2457.
15      MR. MASTRO: May I approach, your Honor?
16      THE COURT: Yes.
17 Q. I am referring you, Mr. Donziger, to the very top part of
18 the page where it says, "Comments: It's possible, but I don't
19 think so. I guess it's possible, but to the best of my
20 recollection I didn't." Do you see that, sir?
21 A. Yes.
22 Q. You wrote this document yourself to prepare yourself to
23 give testimony in a courtroom, correct, sir?
24 A. I did write the document myself.
25 Q. And you didn't write that paragraph in response to any

Case 1:11-cv-00691-LAK-RWL   Document 2003-4   Filed 05/11/18   Page 4 of 5
CHEVRON CORPORATION v
STEVEN R. DONZIGER, et al.
November 18, 2013

| DBILCHE6 | Donziger - cross | Page 2488 |
|---|---|---|

1  there about your case, didn't you say that?
2  A. It's possible. I don't know if I said it.
3  Q. We'll come back to it, sir.
4      Am I correct that between 2003 and 2009, Joseph Kohn
5  was funding the litigation?
6  A. During those years he was the primary funder, but not the
7  only funder.
8  Q. And am I also correct, sir, that over that period of time,
9  2003 to 2009, Mr. Kohn paid you over $1 million in connection
10  with this case, the Lago Agrio Chevron case?
11  A. It sounds about right. I don't know exactly.
12  Q. And, sir, isn't it also the case that in 2007 and 2008 --
13  strike that.
14      Isn't it also the case that in late aughts Russ DeLeon
15  also became a funder on the Lago Agrio Chevron case?
16  A. That is correct, yes.
17  Q. And Mr. DeLeon is someone you know from school days?
18  A. Yes.
19  Q. And Mr. DeLeon now lives on Gibraltar, correct?
20  A. No.
21  Q. He's a fugitive from U.S. justice, isn't he, sir?
22  A. No.
23  Q. Isn't it a fact, sir, that in 2007 and 2008, Mr. DeLeon
24  also paid you over $800,000?
25  A. For --

| DBILCHE6 | Donziger - cross | Page 2489 |
|---|---|---|

1  Q. Yes or no.
2  A. For a different matter.
3  Q. Yes or no, sir.
4  A. I don't know the exact amount.
5  Q. And isn't it a fact that you also received $10,000 for
6  appearing in the movie Crude?
7  A. I think Mr. Berlinger bought my rights for documentary film
8  purposes and that might have been the amount of money he paid
9  me.
10  Q. And that's money you put in your pocket, correct, sir?
11  A. I don't recall.
12  Q. And am I also correct, sir, that you have by far the
13  largest contingency fee interest of any lawyer or law firm in
14  the Lago Agrio Chevron case?
15  A. No, it's not correct.
16  Q. Isn't it a fact, sir, that you have the largest contingency
17  fee interest of any lawyer in the Lago Agrio Chevron case?
18  A. No.
19  Q. Now, sir, let's break it down.
20      Is there somebody else, some other lawyer or law firm,
21  that has a larger contingency fee interest in the Lago Agrio
22  Chevron case than you?
23  A. I don't know.
24  Q. So as you sit here today, you're not aware of any other
25  lawyer or law firm that has a larger contingency fee interest

| DBILCHE6 | Donziger - cross | Page 2490 |
|---|---|---|

1  in the Lago Agrio Chevron case than you, correct, sir?
2  A. I don't know. I know what I have and I can estimate what
3  some others have and it's --
4  Q. Let's ask you about what you have, sir, all right.
5      Again, under your retention agreement, the total
6  contingency fee payment to go to lawyers on the Lago Agrio
7  Chevron case is 20 percent, correct, sir?
8  A. Yes.
9  Q. And under your retention agreement, you are entitled to
10  31.5 percent of that 20 percent, correct, sir?
11  A. Yes.
12  Q. So when the judgment was over $19 billion, if the Lago
13  Agrio plaintiffs had been able to collect the entirety of the
14  judgment, you would have made approximately $1.2 billion,
15  correct?
16  A. More or less, subtracting what I would owe other people.
17  Q. And, sir, am I also correct that even today, after last
18  week's decision eliminating the punitive damage award, you
19  still stand to make approximately $600 million on the Lago
20  Agrio Chevron judgment if the Lago Agrio plaintiffs are able to
21  collect on the entirety of the judgment as it now stands?
22  A. That's correct.
23  Q. Mr. Donziger, I want to ask you a few questions about
24  Amazonia Recovery Limited. That's a Gibraltar company,
25  correct, sir?

| DBILCHE6 | Donziger - cross | Page 2491 |
|---|---|---|

1  A. Yes.
2  Q. And you're a shareholder in that company, correct?
3  A. That's correct.
4  Q. That's because of your contingency fee interest, correct?
5  A. Yes.
6  Q. Can you tell me what percentage of the shares of Amazonia
7  Recovery Limited you have, sir?
8  A. The structure of the case was designed -- I mean the
9  structure of that entity was designed to reflect the
10  contingency fee equity in the lawsuit, so it's roughly the
11  equivalent.
12  Q. And you own shares in Amazonia Recovery Limited because the
13  expectation is that amounts collected on the judgment will be
14  kept there and then able to be distributed to the lawyers based
15  on their different contingency fee interests, correct, sir?
16  A. Not really.
17  Q. Well, sir, I want to break it down because I want to
18  understand it.
19      You own shares in Amazonia Recovery Limited, correct?
20  A. Yes.
21  Q. You can't tell the Court what number of shares you own in
22  Amazonia Recovery Limited?
23  A. I don't know the number. It's the equivalent of what the
24  contingency fee interest was before it was created.
25  Q. So --

Case 1:11-cv-00691-LAK-RWL   Document 2003-4   Filed 05/11/18   Page 5 of 5
**CHEVRON CORPORATION v**
**STEVEN R. DONZIGER, et al.**                                                                                     **November 18, 2013**

| DBILCHE6 | Donziger - cross | Page 2508 |
|---|---|---|

1  copy machine and how we had to do it versus what's --
2          THE COURT: I have a feeling nobody is interested in
3  your copy machine.
4          MR. MASTRO: Not going to ask about that, your Honor.
5          MR. FRIEDMAN: My point, your Honor, is if we get into
6  this and for whatever relevance it has, which I would suggest
7  is relatively minor in the big scheme of things, if we get into
8  this, then what it requires is no resources means compared to
9  what.  It's not an absolute.  Obviously, he has the resources
10 to buy a suit of clothes and come to court and to feed himself
11 and to make some copies.  Obviously he has some resources.  The
12 question is compared to what and that's the point I'm saying
13 under 403.  I think we're getting pretty far afield.  That's my
14 point.
15         THE COURT: I'll sleep on this one.  And if anybody
16 wants to submit anything on it, I'll be happy to receive it.
17         We'll break with the witness now.