# EXHIBIT 7

```
    i582che1
```

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   CHEVRON CORPORATION,

 4                  Plaintiff,             New York, N.Y.

 5              v.                         11 Civ. 691(LAK)

 6   STEVEN DONZIGER, et al.,

 7                  Defendants.

 8   ------------------------------x       Argument

 9                                         May 8, 2018
                                           4:40 p.m.
10
     Before:
11
                     HON. LEWIS A. KAPLAN,
12
                                           District Judge
13

14
                            APPEARANCES
15

16
     GIBSON, DUNN & CRUTCHER, LLP
17        Attorneys for Plaintiff
     BY:  RANDY M. MASTRO
18        ANDREA E. NEUMAN
          ANNE CHAMPION
19        ALEJANDRO A. HERRERA

20
     STERN & KILCULLEN, LLC
21        Attorneys for Plaintiff
     BY:  HERBERT J. STERN
22

23   STEVEN R. DONZIGER
          Pro Se Defendant
24

25
```

1            MR. MASTRO:  Thank you.

2            Thank you, Mr. Donziger.  Sorry.

3            MR. DONZIGER:  Your Honor, good afternoon.  Mr. Mastro
4    could not be more wrong, and I'm going to tell you why.

5            Chevron exhibited tremendous bad faith in its initial
6    motion to hold me in contempt by citing the wrong order.  They
7    cited your originally RICO judgment rather than the
8    clarification order that you issued on my motion on April 25,
9    2014.

10           THE COURT:  Mr. Donziger, that was not a clarification
11   order.  That was a ruling on a motion for a stay pending
12   appeal.

13           MR. DONZIGER:  Be that as it may, in that order you
14   made it explicit that my clients in Ecuador were allowed to
15   sell their shares in the judgment to finance litigation
16   expenses, that is, to sell shares to investors in anticipation
17   of some sort of future collection, and you distinguished
18   between doing that and actually selling shares that I owned
19   myself to profit personally.

20           And they have not met their burden.  They haven't
21   presented one iota of evidence.  And the Greenwald -- Lee
22   Grinberg affidavit does not make this out.  It describes me
23   going to a meeting, trying to sell shares of my clients, not my
24   own shares.  There is no evidence.  And I promise you if you
25   got Mr. Grimwald in here to testify, he could provide no

1    evidence, or Ms. Sullivan, that I ever have attempted or ever

2    have sold my shares.  ==I am allowed, if I sell the shares of my==

3    ==clients, to get paid for my work on this case==.  You yourself

4    said that in the April 25 order and I can quote that right

5    here.

6               You said:  "Thus as long as no collections are made in

7    respect to the Lago Agrio judgment," which has never happened,

8    "the New York judgment could not prevent Donziger from being

9    paid just as he has been paid" -- you put an amount of money in

10   there -- "over the last nine or ten years."  I'm going on your

11   guidance from April 25.

12              Further, I feel like I have been acting in full

13   compliance with the order as explained in docket 1801.  His

14   little booklet is almost all citing docket 1875.  But in 1801,

15   your Honor explicitly said we could sell shares to fund the

16   litigation.  You said it in multiple ways.

17              In terms of monetization -- let me just cite one other

18   quote.  You said on page 3 of the judgment, 1801:

19   "Significantly, the New York judgment did not restrict the

20   other LAPs, who remain free to sell, assign, or transfer their

21   interests, if any, in the Lago Agrio judgment and to seek to

22   enforce it anywhere in the world."

23              I'm selling, as an intermediary, the points or the

24   aspects of the judgment that are held by my clients.  I am not

25   selling my own shares, because that obviously is prohibited by

1   bordered on the irresponsible by me.  How can I take away from
2   that anything other than that we are allowed to continue
3   financing?  ==I'm not selling my shares; I'm selling my clients'==
4   ==shares.==
5           ==And by the way, the agreements for these deals are==
6   ==between people in Ecuador who own the judgment and the==
7   ==investors.==
8           As regards Amazonia --
9           THE COURT:  Who owns the judgment?
10          MR. DONZIGER:  What's that?
11          THE COURT:  Who owns the judgment?
12          MR. DONZIGER:  Well, the Amazon Defense Fund is the
13  beneficiary of the judgment as part of the collective interest
14  of all those affected.  So if there is a collection, the fund
15  would flow to the Amazon Defense Coalition, which is known as
16  the FDA in Ecuador, and they would be obligated to use those
17  funds consistent with the Ecuador judgment -- I mean the
18  Ecuador judgment, which would be for cleanup purposes.
19          THE COURT:  I'm not exactly sure that was an answer to
20  my question.  I don't know whether you meant it to be or not.
21          MR. DONZIGER:  Well, when you say who owns the
22  judgment, it's a class action Ecuador style, and it's owned by
23  all the people affected, with the FDA being the nonprofit
24  entity designated by the court to receive the funds.  I don't
25  know if that answers your question or not.

1    really would urge you, please, not to do that.
2            If there is a narrow concern based on 1901 -- they
3    don't believe me.  They think I'm up here lying perhaps.  So
4    they're like, Oh, he's probably telling not telling the truth.
5    How do we know he hasn't sold his shares?  Well, I'm a lawyer
6    and I'm representing to you as an officer of the court right
7    now I have not sold my own shares.  And if you don't believe
8    me, if you need more than that, please fashion a narrow
9    solution for me to give you materials in camera to prove that
10   to you, and I can.  I can do that if you're willing.
11           And if you come away satisfied that that's consistent
12   with docket 1901, which explicitly allows the LAPs to sell
13   shares in the case to finance litigation expenses -- again, I'm
14   not selling my shares, I'm selling their shares.  And I have a
15   fiduciary duty to them, and they understand what's happening
16   with the money.  ==And, by the way, this issue of my clients==
17   ==being concerned about this and that, that's a whole other==
18   ==group, UDAPT, that's not my client==.  That's a footnote in their
19   reply.
20           I am happy, would be happy -- well, not happy, but I
21   would be more than willing to work with you and to see if that
22   would satisfy your Honor before we go through this incredibly
23   cumbersome process of sitting for depositions, turning over
24   documents.  It's expensive; it's time-consuming.  And with all
25   due respect, you might not like this, but I'm heavily, heavily