UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

                Plaintiff,

        -against-                                   11 Civ. 0691 (LAK)

STEVEN DONZIGER, et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

                Randy M. Mastro
                Andrea E. Neuman
                GIBSON, DUNN & CRUTCHER, LLP

                Herbert J. Stern
                Joel M. Silverstein
                STERN, KILCULLEN & RUFALO, LLC

                *Attorneys for Plaintiff Chevron Corporation*

                Steven R. Donziger
                Defendant *Pro Se* and *Attorney for Defendants Law Offices*
                *of Steven R. Donziger and Donziger & Associates, PLLC*

LEWIS A. KAPLAN, *District Judge.*

        This post judgment application arises out of the long-running battle between Steven Donziger and Chevron Corporation ("Chevron") that has filled hundreds and by now perhaps

thousands of pages of the federal reports. The Court assumes familiarity with its decision on the merits and that of the Court of Appeals affirming it.[1] For present purposes, it suffices to note that Donziger and others were found to have engaged in fraud in the procurement of a multibillion Ecuadorian judgment against Chevron, to have carried on a years-long scheme to extort money from Chevron, and much else. He now is subject to a permanent injunction that, among other things, (1) enjoins him and others from seeking to enforce the Ecuadorian judgment in the United States, (2) requires him to convey to Chevron all of his right, title and interest in shares of Amazonia Recovery Limited ("Amazonia"), a Gibraltar company formed to collect and distribute any proceeds of the Ecuadorian judgment, and (3) forbids him from taking any action to monetize or profit from the Ecuadorian judgment, including by selling, assigning, pledging, transferring or encumbering any interest it. There also is an outstanding and unpaid supplemental judgment against him and in favor of Chevron for more than $800,000 in costs.

## I. Background

This Court found after trial that Donziger and others have been engaged in a years-long fraudulent and extortionate scheme to obtain money from Chevron. A key – but by no means the only — part of that scheme is a multibillion dollar Ecuadorian judgment that they obtained by fraud and bribery, among other misconduct.[2] The judgment, since affirmed by the Court of Appeals, prevents Donziger and the two other defendants who appeared at trial (the "LAP Representatives," who were

---

[1] *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362 (2014), *aff'd*, 833 F.3d 74 (2d Cir. 2016), *cert. denied*, 137 S.Ct. 2268 (2017).

[2] *Chevron Corp.*, 974 F. Supp. 2d 362 *passim*.

two of 47 plaintiffs in the Ecuadorian litigation) from enforcing the Ecuadorian judgment in the United States or profiting from it in any way. In addition to the anti-enforcement injunction, it contains three other provisions pertinent here:

- Paragraph 1 imposes a constructive trust on all property that Donziger has received, or hereafter may receive, or to which Donziger now has, or hereafter obtains, any right, title or interest that is traceable to the Ecuadorian judgment or its enforcement anywhere in the world, *"including, without limitation, all rights to any contingent fee under [his] Retainer Agreement and all stock in Amazonia [Recovery Limited]"* and required him to *"transfer and forthwith assign to Chevron all such property that he now has or hereafter may obtain."*[3]

- Paragraph 3 directed "Donziger [to] *execute in favor of Chevron a stock power transferring to Chevron all of his right, title and interest in his shares of Amazonia,* and" both "Donziger and the LAP Representatives . . . [to] *execute such other and further documents as Chevron reasonably may request or as the Court hereafter may order to effectuate the foregoing provisions of this Judgment.*"[4]

- Paragraph 5 enjoined both Donziger and the LAP Representatives *"from undertaking any acts to monetize or profit from the [Ecuadorian] Judgment . . . including without limitation by selling, assigning, pledging, transferring or*

---

[3] DI 1875, ¶ 1 (emphasis added).

[4] *Id.* ¶ 3 (emphasis added).

*encumbering any interest therein.*"[5]

## I. *The Motion*

On March 19, 2018, Chevron moved for an order (1) adjudicating Donziger in civil contempt of court for failure to comply with paragraphs 3 and 5 of the judgment as to the Donziger Defendants[6] (the latter paragraph insofar as Chevron alleges in its memorandum of law[7] and in the Grinberg declaration), and (2) granting Chevron leave to conduct post-judgment discovery of Donziger and any other person, including without limitation Katie Sullivan, Streamline Family Office, Inc., Jonathan Bush, and athenahealth, inc., as to all matters relevant to the enforcement of paragraphs 3 and 5.

Thus, the contempt application – as originally filed – related to two distinct matters. The first is Donziger's alleged failure to comply with paragraph 3 of the judgment, which requires him to execute in favor of Chevron a stock power transferring to Chevron all of his right, title and interest in his shares of Amazonia. The second is Donziger's alleged violation of paragraph 5, which enjoins him from, *inter alia,* undertaking any acts to monetize or profit from the Ecuadorian judgment that formed a significant part of this case, including by selling, assigning, pledging, transferring or encumbering any interest therein. Chevron has offered evidence which, in its view, supports its contention that Donziger violated paragraph 5 on one specific occasion involving Elliott Management

---

[5] *Id.* ¶ 5.

[6] The term is defined as in the judgment in this case, DI 1875.

[7] DI 1866, at 15.

Corporation ("Elliott"). In addition, however, it seeks discovery in an effort to determine whether he has engaged in similar alleged violations of paragraph 5 in other instances and, should it discover such evidence, to expand the scope of its contempt application to include them.

The motion was briefed in the ordinary course. The Court held argument on May 8, 2018.

## II. Contempt – Amazonia

Following the entry of the Ecuadorian judgment, Donziger and others formed Amazonia for the purposes of collecting and distributing any proceeds of that judgment or any settlement.[8] Donziger owns, directly or through a nominee, Amazonia shares through which money is to be funneled to him if any is obtained.[9] The Court imposed a constructive trust on those shares and directed Donziger, in paragraph 3 of the Judgment, to convey them to Chevron.[10]

Donziger does not deny that he did not comply with paragraph 3 of the Judgment before the conclusion of the May 8, 2018 argument. He instead offered a series of excuses. But his

---

[8] *Chevron Corp. v. Donziger*, 974 F. Supp. 2d at 528 n.1110.

[9] *Id.* at 641.

[10] Donziger did not comply with paragraph 3 upon entry of the judgment or at any time during the pendency of appellate proceedings. Some time after the entry of the judgment, he sought a stay pending appeal. The Court granted that application but only to the extent that it temporarily modified paragraph 3 so that it required Donziger during the pendency of the appeal to convey the Amazonia shares to the Clerk of this Court for appropriate disposition at the conclusion of the appeal rather than to Chevron. DI 1901, at 32. Donziger never complied with that direction. The Supreme Court denied certiorari on June 19, 2017. The appellate process thus was concluded no later than that date and, perhaps, earlier. In any case, the temporary modification of paragraph 3 lapsed no later June 19, 2017, whereupon the original paragraph 3 of the judgment came back into effect.

excuses lack even a semblance of merit.

First, he says that he wrote Chevron a letter seeking what Donziger calls "a common sense resolution" of that part of the injunction and that Chevron never responded.[11] But the injunction was a judgment of this Court that Chevron obtained after trial and that now has been affirmed on appeal. It had no obligation to parley with Donziger about its terms and was fully entitled to stand on its rights. No attempt to work out some alternate arrangement, let alone an attempt spurned by the adversary, altered Donziger's obligation to comply with this Court's judgment.

Second, Donziger asserted – albeit not under oath – that he "is uncertain whether Amazonia still exists and in what form."[12] But it is impossible to see what difference that would make even if one were to credit Donziger's entirely unsubstantiated speculation. He is obliged to convey all of his right, title and interest in the shares – whatever that right, title and interest may be and regardless of whether it has any economic value. If the company no longer exists, then the conveyance by Donziger of all of his right, title and interest in shares perhaps would be of no practical significance. But that is not for Donziger to decide, and it does not appear to be the case.

Chevron asserts that Amazonia – and its share capital – remain very much in existence:

> "Donziger is wrong that Amazonia is defunct. Chevron sued Amazonia in Gibraltar for fraud relating to the pursuit of the Lago Agrio litigation and resulting judgment. After filing a defense, Amazonia failed to participate in the Gibraltar proceedings and defaulted. On December 9, 2015, Chevron obtained judgment against Amazonia for damages of approximately $28 million and equitable relief. Amazonia failed to pay

---

[11] DI 1986, at 1-2.

[12] *Id.* at 1.

this judgment debt and the Gibraltar court granted Chevron's application on July 11, 2016, placing Amazonia into liquidation. But as a matter of Gibraltar/English law, Amazonia still exists, as does its issued share capital . . ."[13]

Finally, Donziger contended that the onus was on Chevron to propose a form of stock power and that it had not done so. But he was wrong. Paragraph 3 of the Judgment unambiguously required Donziger to execute and deliver the stock power. It did not require Chevron to do anything at all. Moreover, Donziger made abundantly clear to Chevron in his August 2014 letter that he would

---

[13] DI 1987, at 4.

Were the current status of Amazonia material the Court would require proof beyond unsworn statements in a memorandum. But it is not for reasons explained in the text. Nevertheless, the Court notes the following:

First, Chevron in 2015 obtained a judgment against Amazonia for more than $28 million in the Supreme Court of Gibraltar. *Chevron Corp. v. Amazonia Recovery Ltd.*, No. 2014-C-110 (Gib. Sup. Ct. Dec. 9, 2015) (available at http://www.gcs.gov.gi/images/judgments/supremecourt/2015/chevron_corporation_v_amazonia_recovery_ltd_and_ors.pdf) (last visited May 15, 2018).

Second, assuming *arguendo* that a liquidator subsequently was appointed for Amazonia, the liquidator appears to be obliged to take possession of and realize the assets of the company and to distribute the assets and proceeds of realization. Gib. Insolvency Act 2011 § 176(1) (available at http://www.gibraltarlaws.gov.gi/articles/2011-26o.pdf) (last visited May 15, 2018). That apparently would include realizing upon any rights Amazonia may have to any proceeds of enforcing the Ecuadorian judgment. Thus, while Amazonia may have been insolvent if and when it was placed in liquidation, and may be today (Gib. Insolvency Act 2011 § 10(1)(b)(1) [company is insolvent if unable to pay its debts as they fall due]), a liquidator perhaps could realize more on Amazonia's assets, which appear to include the right to receive any collections on the Ecuadorian judgment, than the total of Amazonia's present liabilities. Thus, it is possible that Donziger's Amazonia shares have substantial economic value. Indeed, as will appear, Donziger asserts that transfer of his Amazonia shares to Chevron would result in his sustaining an "irretrievable loss," obviously by depriving him of the contingent fee he hopes to obtain by virtue of his ownership of the Amazonia shares, notwithstanding this Court's judgment.

not comply with paragraph 3 of the Judgment.[14] And he made his reason very clear:

> "My clients have informed me, via the Directors of Amazonia, that if any transfer of stock is effectuated by me to any entity, those shares will be divested immediately under the by-laws of the entity that holds the shares. * * * The upshot is that *a simple transfer . . . of my Amazonia shares would in practice mean the complete divestiture—and potentially irretrievable loss—of more than two decades of labor on the part of me and some of my colleagues . . .*"[15]

In other words, it appears that Amazonia, whether it is in liquidation or not, still exists. Donziger's shares are the vehicle through which he seeks to be compensated in the millions or hundreds of millions of dollars in the event that the Ecuadorian judgment ever is enforced anywhere or the matter settled. He refused to part with his shares – the judgment of this Court notwithstanding – because he believes that doing so "would . . . mean the complete divestiture – and potentially irretrievable loss" – of the massive contingent fee he hopes to collect. The fact, however, is that the judgment in this case forbids him from benefitting in any way from the Ecuadorian judgment that he obtained by fraud. His surrender of his right, title and interest in the Amazonia shares is but one of several specific means by which the judgment seeks to ensure that result. Donziger simply may not defy this Court's judgment, affirmed by the Court of Appeals, by holding on to the Amazonia shares in the hope, however faint, of a rich pay day down the road.

"A party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of

---

[14] DI 1986-1.

[15] *Id.* at 3 (emphasis added).

noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner."[16]

Paragraph 3 of the Judgment is clear and unambiguous. Noncompliance with it was admitted. In any case, the evidence of noncompliance is clear and convincing. From the date the judgment was entered, March 4, 2014, to and including the date of the argument of this motion, May 8, 2018, Donziger made no effort to comply. Indeed, his defiance has been brazen and deliberate.

Accordingly, the Court finds that Donziger was in civil contempt of this Court based on his noncompliance with paragraph 3 of the Judgment. But subsequent developments require further consideration inasmuch as the motion charges civil, not criminal, contempt.[17]

During the argument on May 8, 2018, the following occurred:

MR. DONZIGER: This is a fake issue. *And if they want me to sign my shares over, which they already have because this would be a public relations exercise for them, I'm happy to do it.* I am not going to sit here and be held in contempt over something that's completely meaningless, when I'm here today ready to do that.

So tell me what you want me to do. He says he has something for me to sign. Well, why hasn't he presented that to me? Where is it? I'm sitting here. He sent me an email this morning looking for discovery. Why is he playing possum with me? To

---

[16] *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (internal quotation marks and citation omitted).

[17] This would not be so in a prosecution for criminal contempt, as criminal contempt "is completed when contumacious conduct has taken place . . . That is, once the subject of an order willfully refuses to meet the court's order." *United States v. Marquando*, 149 F.3d 36, 39-40 (1st Cir. 1998).

make me look foolish? Just give me the document you want me to sign."[18] Shortly thereafter, Chevron's counsel presented Donziger with what Chevron's counsel described as two share transfer forms relating "to the different shares of stock."[19] The Court indicated that it would not decide the motion for at least 24 hours and asked that the parties advise it whether the Amazonia aspect of the pending motion had become moot.[20]

Following the argument, Donziger claimed in a court filing that he executed and notarized a Share Transfer Form.[21] But that turned out to have been less than the whole truth. While Chevron concedes that Donziger did execute one of the forms that Chevron had provided to him,[22] Donziger added to the document a so-called Addendum of Understandings that states:

> "Transferor executes the instant Share Transfer Form subject to the following Understandings:
>
> 1.   This Share Transfer form is being executed pursuant to an express

---

[18] Tr., May 8, 2018, at 29.

[19] *Id.* at 36-37.

[20] *Id.*

[21] DI 2000.

[22] He did so on behalf of Donziger & Associates PLLC rather than on his own behalf. Although Chevron has not commented on the discrepancy, Donziger previously testified that the Amazonia shares were granted to him. Donziger Dep. Tr., June 25, 2013, at 632:3-9. Thus, it is possible that the stock power was not executed on behalf of the owner of the shares. Any such a determination, however, would require additional proof should it be material.

The Court notes in this regard that paragraph 3 of the judgment imposes the duty to execute a stock power on "Donziger." Paragraph 7.5 defines "Donziger" for purposes of the judgment as "the Donziger Defendants, and each of them, unless the text hereof otherwise provides." "Donziger Defendants" is defined as Donziger, his PLLC, and The Law Offices of Steven R. Donziger. Thus, Donziger and the PLLC both are obliged to comply with paragraph 3.

order of judgment of the U.S. District Court for the Southern District of New York in the *Chevron Corp. v. Donziger 'civil RICO' case,* Case No. 1:11-cv-0691 (Dkt. 1875) (Kaplan, J.), and furthermore under the specific threat of imposition of 'contempt of court' sanctions if Transferor fails to execute this Form.

2. Chevron Corp. has previously represented to Transferor that the AMAZONIA RECOVERY LIMITED entity has been 'plac[ed] into liquidation' in Gibraltar after the entity 'failed to participate in the Gibraltar' [*sic*] and subsequently 'failed to pay' a default judgment entered by the Gibraltar court against it.

3. Transferor acknowledges that this Form is being executed notwithstanding the terms and restrictions of paragraphs 37-38 of the Articles of Association of AMAZONIA RECOVERY LIMITED, which provide, inter alia, that 'No transfer of any Shares shall be made or registered without the prior consent of a majority of the Directors (each acting in his or her absolute discretion)' and that 'Any purported transfer in violation of these Articles shall be null and void.'

4. Transferor continues to take the position, which has been communicated in writing to Chevron Corp. and to the U.S. District Court, that the AMAZONIA RECOVERY LIMITED entity is null and void for several reasons, including the fact that it has been taken over and is now being manipulated by an adverse party to serve purposes

(frustration of prompt relief to the affected peoples of Ecuador) that are wholly contrary and opposite to the entity's fundamental purposes as express in its Memorandum of Association and other foundational documents."[23]

Two things are readily apparent from Donziger's addendum.

First, its obvious purpose is to seek to negate the transfer of Donziger's Amazonia shares to Chevron, either on the ground that the transfer was made under duress or is a nullity by reason of Amazonia's Articles of Association, or both. Thus, rather than simply signing an unequivocal stock transfer form conveying all of his right, title and interest in the Amazonia shares as required by the judgment in this case – and putting the lie to his May 8, 2018 representation to this Court that "if they want me to sign my shares over, . . . I'm happy to do it" – he still seeks to retain the shares by inviting Amazonia to reject the transfer document on at least two grounds.[24]

Second, his position is internally inconsistent. If, as Donziger claims, Amazonia somehow is "null and void for several reasons," then his shares could be of no present or future value and there would be no coherent reason for declining to transfer unconditionally whatever interest, if any, he retains in them. Nevertheless, Donziger's execution of the stock power, albeit with the attached addendum does have one effect.

---

[23] DI 2003-3.

[24] It is not clear that this attempt would succeed, especially if Amazonia in fact is in liquidation. The appointment of a liquidator appears to have terminated all or most of the powers of the directors of the company and to vest in the liquidator "[p]ower to do all acts and execute, in the name and on behalf of the company, any deeds, receipts or other document." Gib. Insolvency Act 2011 §§ 165(1)(b), 177(2) & Sched. 2, ¶ 7. Thus, the liquidator, if there is one, may well have the power to consent to or ratify the transfer of Donziger's Amazonia shares to Chevron, even assuming that the purported transfer restriction were valid.

Paragraph 3 of the judgment required him to execute a stock power. It did not prescribe a particular form. He now has executed a purported stock power, albeit in a form to which Chevron understandably objects. In consequence, although there is no doubt whatever that Donziger was in contempt of paragraph 3 from the date the judgment was entered on March 4, 2014 until May 9, 2018, the date on which he executed the form with the addendum, at this moment he arguably no longer is in civil contempt based on the failure to comply with paragraph 3 because he ultimately signed a stock power. As the purpose of civil contempt is to coerce compliance with a judgment of order, imposition of civil contempt sanctions on the basis of the complete and absolute failure to comply with paragraph 3 from March 4, 2014 until May 9, 2018 would be inappropriate.[25]

That of course is not to say that Chevron is without recourse. It is free to request that Donziger execute a specific form of stock power without amendment or qualification and, should he fail promptly to do so, to seek an order of this Court requiring that he comply. Any failure to comply with any such order would be an appropriate subject of a new civil contempt motion.

### III. Contempt – Alleged Monetization of the Ecuadorian Judgment

Paragraph 5 of the Judgment enjoined Donziger from, *inter alia,* undertaking any acts to monetize or profit from the Ecuadorian judgment that formed a significant part of this case, including by selling, assigning, pledging, transferring or encumbering any interest therein. Chevron contends that Donziger violated paragraph 5 by seeking to induce Elliott to purchase a share of any proceeds ultimately obtained through enforcement in foreign courts of the fraudulent Ecuadorian

---

[25] The Court does not now express any view as to whether Donziger should be prosecuted for criminal contempt of paragraph 3 of the judgment based on his failure to comply with that provision from March 4, 2014 until May 9, 2018.

judgment. Its application is supported by a declaration of an Elliott portfolio manager that attests to personal knowledge of relevant events.

Having reviewed the submissions, the Court has concluded that an evidentiary hearing is appropriate with respect to this branch of the contempt motion. The hearing will commence on May 22, 2018 at 9:30 a.m. in Courtroom 21B.

## IV. Discovery

This Court plainly has "ample authority to issue [discovery] orders necessary for the enforcement of its order. Discovery may occur in connection with a pending contempt proceeding[.]"[26] In all of the circumstances, Chevron's application, insofar as it seeks leave to conduct discovery with respect to Donziger's compliance with the Judgment is granted. The timing of that portion of the discovery sought by Chevron will be resolved in connection with Chevron's subsequently filed and now pending motion to compel compliance with its discovery requests.

## V. Additional Contempt Claim

In a letter dated May 11, 2018,[27] prompted in part by Donziger's actions with respect to the required transfer of his Amazonia shares, Chevron asserts that Donziger is in contempt also of paragraph 1 of the judgment, which requires him to transfer and assign to Chevron all right, title and interest that he now or hereafter obtains that is traceable to the Ecuadorian judgment "including,

---

[26] *State of New York v. Shore Realty Corp.*, 763 F.2d 49, 53 (2d Cir. 1985); 28 U.S.C. § 1651.

[27] DI 2003.

without limitation, all rights to any contingent fee under" his retainer agreement.[28]

The claim that Donziger is in contempt of paragraph 1 of the judgment was not made in the motion that now is before the Court. The Court therefore will not address it unless and until Chevron files an appropriate motion.

## *VI. Conclusion*

Chevron's motion [DI 1968] is disposed of in part as follows:

1.  So much of the motion as seeks a civil contempt adjudication based on violation of paragraph 3 of the judgment is denied without prejudice to further proceedings as indicated above.

2.  So much of the motion as seeks leave to conduct discovery with respect to Donziger's compliance with the Judgment is granted save that the timing of such discovery will be resolved by subsequent order.

3.  Decision on so much of the motion as seeks a civil contempt adjudication based on alleged violation of paragraph 5 of the judgment relating to the Elliott events is reserved pending a hearing. The hearing will commence on May 22, 2018 at 9:30 a.m.

SO ORDERED.

Dated: May 16, 2018

Lewis A. Kaplan
United States District Judge

---

[28] DI 1875,, ¶ 1.