UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEVRON CORPORATION,<br><br>    Plaintiff,<br><br>  v.<br><br>STEVEN DONZIGER *et al.*,<br><br>    Defendants. | 11 Civ. 0691 (LAK) |

**DEFENDANT DONZIGER'S MOTION FOR DECLARATORY RELIEF
AND MOTION TO DISMISS PLAINTIFF'S APPLICATION TO HOLD
DONZIGER IN CONTEMPT FOR "PROFITING" FROM THE
ECUADORIAN ENVIRONMENTAL JUDGMENT**

Defendant Steven Donziger hereby moves the Court pursuant to 28 U.S.C. § 2201 and FRCP Rule 57 for declaratory relief confirming that the Court's March 4, 2014 judgment (Dkt. 1875) ("NY Judgment"), as interpreted and limited in the Court's subsequent order dated April 25, 2014 (Dkt. 1901) ("Clarification Order") (together the "NY Judgment"), does not prevent the beneficiaries of the Ecuadorian environmental judgment affirmed by Ecuador's Supreme Court (the "Lago Agrio Judgment" or "Ecuador Judgment") from raising funds to cover litigation fees and expenses, at minimum so long as the specific legal interests of the three individual defendants named in the NY Judgment are not pledged or collateralized as part of any such fund-raising. In light of this already-established understanding of the scope, which was relied on by the Second Circuit in its affirmance of this Court's final opinion in the case (Dkt. 1874) ("RICO Opinion"), Mr. Donziger also hereby moves pursuant to Rule 12(b)(6) and (f) to dismiss those claims in plaintiff Chevron's Motion for Contempt ("Contempt Motion") which seek to hold Mr. Donziger

in contempt for alleged non-compliance with the NY Judgment.

The foundational legal basis for the Court to grant the relief requested in the Contempt Motion are the limits imposed on Mr. Donziger (and Mssrs. Camacho and Piaguaje) by the NY Judgment. The NY Judgment, however, does not prevent Mr. Donziger from providing legal representation and other services to the beneficiaries of the Ecuadorian Judgment, who are prosecuting its enforcement in non-U.S. jurisdictions. To that end, the NY Judgment expressly does not prevent Mr. Donziger from assisting the beneficiaries of the Ecuador Judgment in their efforts to raise funds to cover legal expenses, debts, and fees (including Mr. Donziger's own fees) by means including but not limited to arranging third-party litigation financing predicated on the grant of an interest in any recovery in such non-U.S. jurisdiction. This is so, first, because any such financing for expenses is not a "profit" on, nor involves "proceeds" of, the Ecuador Judgment, and thus is not property "traceable" to the Ecuador Judgment, as this Court has established. *See* Clarification Order at 7-8 (distinguishing between contingency fee payments made after a "collection" on the Ecuador Judgment, which would be subject to the NY Judgment "constructive trust" and profit/monetization injunction, and retainer fee payments, which would not); *infra* at Section I.A. Second, even if the NY Judgment did apply to litigation finance funds, it only would apply to funds "traceable" or otherwise based on Mr. Donziger's (or Camacho/Piaguaje's) specific interests, in Mr. Donziger's case his extant contingency interest. So long as the litigation finance agreements do not involve Mr. Donziger pledging, assigning, committing, or otherwise collateralizing his specific contingency interest—and Chevron *has not even alleged* that they do— the NY Judgment does not have any impact.

The Contempt Motion not only denies *sub silentio* Mr. Donziger's legal rights, but asserts claims without a plausible factual showing that Mr. Donziger has violated the NY Judgment by

acting with respect to any "proceeds" on a collection or other recovery, or by profiting or monetizing *his* interest in the Ecuador Judgment as part of any third-party litigation funding arrangement. There is no evidence, suggestion, or even allegation that Mr. Donziger's specific legal interest impacted by the NY Judgment has been part of any past or proposed financing arrangement, nor any common sense reason to think that it would be when that interest is subject to the NY Judgment while all other interests in the Ecuador judgment (except those of Mr. Camacho and Mr. Piaguaje) are not. The burden of proof on the Contempt Motion is squarely on Chevron, and has clearly not been met. Mr. Donziger thus respectfully requests that the Court grant this motion for declaratory relief and dismissal of the related claims in the Contempt Motion.

## I. <u>Declaratory Relief</u>

In light of the chilling effect on potential funders and Chevron's continuous overbearing and harassing efforts to thwart Mr. Donziger's exercise of his right to provide effective legal representation for the beneficiaries of the Ecuador Judgment, it is imperative that the Court grant the requested declaratory relief. In particular, it is necessary for the Court to declare that the NY Judgment in no way prevents:

1. Mr. Donziger or third-parties from exercising their legal rights in non-U.S. jurisdictions to obtain enforcement and related recovery on the Ecuador Judgment, consistent with the NY Judgment and the Second Circuit's affirmance thereof;

2. Mr. Donziger from providing legal and other services including assistance in raising funds to cover litigation expenses, debts, and fees, from third-party litigation finance investors predicated on an interest in any recovery other than his specific contingency interest (or any specific interest that Mssrs. Camacho and Piaguaje may have);

3. Mr. Donziger from receiving payments out of such third-party litigation finance funds

3

to cover his legal expenses and fees for providing legal and other services, consistent with the terms of any such agreement and any applicable law.

Under 28 U.S.C. § 2201(a), a court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." In this Circuit, "federal district courts must entertain declaratory judgment actions when the judgment 'will serve a useful purpose in clarifying and settling the legal relations in issue' or 'when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Gonzalez v. J.P. Morgan Chase Bank*, N.A., 228 F. Supp. 3d 277, 286 (S.D.N.Y. 2017) (quoting *Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992)).

In light of the Court's treatment of the Contempt Motion in its order dated May 16, 2018 on the "first branch" of the Contempt Motion (Dkt. 2006) (First Branch Order), Mr. Donziger currently faces profound insecurity—and the actual burden of preparing for an evidentiary hearing which he must litigate *pro se* and at which he has been called to testify—on the question of whether the NY Judgment allows for the execution of third-party litigation finance agreements to cover litigation expenses, including Mr. Donziger's own fees. Critically, this is a pure question of law, determinable by interpretation of the language of the NY Judgment itself. An evidentiary hearing is entirely unnecessary and inappropriate.

That the scope of the NY Judgment is a pure question of law already been decided and is law of the case. *Infra* Section I.A. This limited scope completely resolves the relevant claims in the Contempt Motion, rendering them subject to dismissal for failure to state a claim. *Infra* at Section II. To remove the "uncertainty, insecurity, and controversy" the Court created by failing to acknowledge the limited scope of the NY Judgment in its First Branch Order, the Court should articulately address that scope as a matter of law, and should issue declaratory relief sufficient to

confirm the interpretation established by the Clarification Order, and relied on by the Second Circuit, *viz.* that the NY Judgment does "not prevent Donziger from being paid [non-contingency fees for legal and other work], just as he has been paid . . . over the past nine or ten years," nor "prevent[] the [Lago Agrio Plaintiffs] (other than the two LAP Representatives who are named in the NY Judgment) and their allies from continuing to raise money in the same fashion" as prior litigation finance efforts well-known to the Court. Clarification Order at 7-8, 12.

      Because the scope of the NY Judgment was carefully articulated by the Court in the Clarification Order, that limited scope is law of the case. *See, e.g.*, *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) ("when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case" unless "cogent and compelling reasons militate otherwise"); *see also Tomasino v. Estee Lauder Companies, Inc.*, 2015 WL 1470177, at *1 (E.D.N.Y. Mar. 31, 2015) ("The law of the case doctrine is usually considered to have two branches. The first—the so-called mandate rule—requires trial courts to follow an appellate court's ruling on an issue in the same case. The second branch is more flexible but generally holds that a court should adhere to its earlier decisions in subsequent stages of litigation unless compelling reasons counsel otherwise.") (internal citations omitted; citing *Quintieri*). In fact, the Court's interpretations as set out in the Clarification Order are now law of the case under both "branches" of the doctrine, because the Second Circuit expressly relied on the limited scope of the NY Judgment in its affirmance of the Court's RICO Opinion. *See infra* Section I.B. The Clarification Order is thus part of the Circuit's mandate of affirmance and cannot now be disturbed. *See, e.g.*, *In re FCC*, 217 F.3d 125, 133 (2d Cir. 2000) ("the terms of the mandate [must be] scrupulously and fully carried out and [] the inferior court's actions on remand [must] not [be] inconsistent with either the express terms or the spirit of the mandate."); *cf. In re MidAmerican*

*Energy Co.*, 286 F.3d 483, 487 (8th Cir. 2002) (an appellate court's mandate "encompasses everything decided, either expressly or by necessary implication" on appeal).

    A. *The Court already has unambiguously concluded that the NY Judgment does not preclude pre-collection arrangements to finance litigation expenses, or arrangements that do not involve the specific interests of Mr. Donziger, Mr. Camacho, or Mr. Piaguaje*

In the NY Judgment, the Court imposed a constructive trust over all property "that Donziger has received, or hereafter may receive," or "that [Camacho or Piaguaje], or each of them, has received, or hereafter may receive," "that is traceable to the [Environmental] Judgment or the enforcement of the Judgment." NY Judgment at ¶¶ 1-2 (emphasis added). In the Clarification Order, the Court interpreted the scope of what property would be considered "traceable" in the context of Mr. Donziger's concern that the NY Judgment arguably prevented him from getting paid for his work on the case out of funds provided by litigation finance agreements. The Court concluded that while

> payments of a Contingent Fee would be 'traceable to the [Lago Agrio] Judgment,' and thus subject to the constructive trust imposed by paragraph 1, the same would not be true of Monthly Retainer payments unless those payments were traceable to the Lago Agrio Judgment. Thus, at least *as long as no collections are made in respect of the Lago Agrio Judgment* and funneled to Donziger as retainer payments, the NY Judgment would not prevent Donziger from being paid, just as he has been paid at least $958,000 and likely considerably more over the past nine or ten years.

Clarification Order at 7-8 (emphasis added). As indicated, the Court was very familiar with the litigation finance agreements that had been used in prior years to cover litigation expenses, including Mr. Donziger's legal fees, and which it endorsed in the foregoing paragraph. The Court similarly addressed Mr. Donziger's concern that Paragraph 5 of the NY Judgment, which enjoins "any acts to monetize or profit from the [Lago Agrio] Judgment," could be interpreted as preventing him from getting paid out of litigation finance arrangements, and unequivocally held

6

that any such interpretation was "wrong." Clarification Order at 10. In response, the Court explained, "[t]he point of paragraph 5 . . . was to prevent Donziger and the LAP Representatives from avoiding the effect of the constructive trust imposed on assets in their hands that otherwise would have been direct proceeds of the Judgment by selling, assigning, or borrowing on ***their*** interests in the Lago Agrio Judgment and thus at least confusing the issue of traceability." *Id.* **(emphasis original)**. With this clarification, the Court limited the scope of Paragraph 5 on two levels. First, it only applies as a backup or support provision to effectuate the constructive trust, and thus is correspondingly limited by the limited scope of the constructive trust, *i.e.* to property received as "proceeds" on a "collection" on the Lago Agrio Judgment. Second, with its emphasis, the Court noted that the injunction would only apply to enjoin the treatment of interests specific to the three individual defendants—"***their*** interests"—leaving any and all other interests on the Lago Agrio Judgment free to be leveraged for litigation finance purposes.

Indeed, beyond payments of fees, defendants had more broadly expressed concern that the NY Judgment would prevent the execution of financing arrangements necessary to fund their appeal and pursue enforcement of the Lago Agrio Judgment in Canada and elsewhere, noting that Chevron had even "boast[ed]" that the NY Judgment would have precisely such an effect. *See, e.g.*, Dkts. 1898 at 2, 6, and 1893 at 20-21; Dkt. 1988 at 10 n.5. The Court dismissed such concerns as so unfounded as to "border on the irresponsible." Clarification Order at 11. Rather, the Court held that there was "no[] show[ing] that the provision of the NY Judgment preventing [defendants] from monetizing any interest they may have in the Lago Agrio Judgment threatens them with irreparable injury, either by preventing them from appealing here or in any other way." *Id.* at 14.

On the basis of this unambiguous language, Mr. Donziger and others have proceeded to raise funds from investors to cover litigation expenses and fees, in return for grants of interests in

7

any recovery in a non-U.S. jurisdiction. There is no basis to support even the supposition—and Chevron makes no evidentiary showing whatsoever—that these agreements have been supported or collateralized in any way by interests specific to Mr. Donziger (or Camacho or Piaguaje). The NY Judgment itself renders such a proposition impracticable. And the evidentiary burden on Chevron's Contempt Motion is entirely Chevron's. Despite its attempt to dress the Contempt Motion in evidence such as the Declaration of Lee Grinburg, Chevron (and Grinburg) have failed to even allege, let alone substantiate with evidence, that the specific interests of Mr. Donziger, and Mssrs. Piaguaje and Camachohave played any role in any actual or proposed litigation finance agreements. Accordingly, the conjoined motion to dismiss the relevant allegations in Chevron's Contempt Motion is appropriate. *Infra* at Section II.

> B. The Second Circuit relied on the limited scope and effect of the NY Judgment in its affirmance of the Court's RICO Decision such that modification of that scope now would disturb the Circuit's mandate

It is important to note that the Court's conclusions regarding the scope and application of Paragraphs 1-2 and 5 of the NY Judgment, as set out in the Clarification Order, are also subject to the "mandate rule" of the law of the case doctrine. *See Tomasino*, *supra*. The Second Circuit's affirmance of this Court's RICO Opinion was expressly and repeatedly predicated on the fact that "[t]he relief tailored by [this Court] . . . does not invalidate the Ecuadorian judgment and does not prohibit any of the LAPs from seeking enforcement of that judgment anywhere outside of the United States." *Chevron Corporation v. Donziger*, 833 F.3d 74, 151 (2016). *See also id.* at 81 ("For the reasons that follow, including . . . the district court's **confinement of its injunction to a grant of in personam relief against the three defendants-appellants without disturbing the Ecuadorian judgment**, we find no basis for dismissal or reversal, and we affirm the judgment of the district court.) (emphasis added); *id.* at 119 ("The district court pointed out that its final

8

judgment would merely 'prevent Donziger and the LAP Representatives from profiting from the [Lago Agrio] Judgment or seeking to enforce it in this country,' *i.e.*, the judgment '***prevents the three defendants who appeared at trial***—over whom [the district court] has personal jurisdiction—from profiting from their fraud'") (internal citations omitted) (**emphasis original to the Second Circuit**); *id.* at 143 ("the injunction in the District Court Judgment is directed at *only three persons*") (emphasis added); *id.* at 144 (the district court granted only "limited, non-global equitable relief"); *id.* at 145 (the district court only "granted equitable *in personam* relief *that does not invalidate the Ecuadorian judgment*") (emphasis added); *id.* at 151 ("we see no abuse of discretion in the equitable *in personam* relief granted by the district court").

In their post-judgment emergency relief, the three defendants articulated the concern that the language swept far beyond this "confined" interpretation, specifically that by shutting down the ability to raise funds to cover litigation expenses, the NY Judgment would indeed "disturb[]" and effectively "invalidate" the Ecuadorian Judgment. *See* Dkts. 1888 at 10, 1898 at 2, 6. Had they not received the Court's ruling that the NY Judgment did no such thing, Mr. Donziger and the Ecuadorian defendants would have advanced these arguments about the sweeping practical effect of the NY Judgment on appeal, and the Second Circuit would not have been able to rely on "confine[d]" nature of the NY Judgment as it did. Were this Court to reverse course on its interpretation of the NY Judgment now, in post-judgment proceedings on remand, it would undermine a premise foundational to the decision preserved in the Second Circuit's mandate of affirmance, and thus run flagrantly afoul of the standing rule that a district court's "actions on remand [must] not [be] inconsistent with either the express terms or the spirit of the mandate." *In re FCC*, *supra*, 217 F.3d at 133; *cf. In re MidAmerican Energy Co.*, *supra*, 286 F.3d at 487 (an appellate court's mandate "encompasses everything decided, either expressly or by necessary

9

implication" on appeal).

The Court cannot and should not alter the law of the case and upset the appellate mandate. Were it to do so, appellate response on a writ of mandamus would be necessary. *See, e.g.*, *In re Cont'l Ill. Sec. Litig.*, 985 F.2d 867, 869 (7th Cir. 1993) ("One of the less controversial functions of mandamus is to assure that a lower court complies with the spirit as well as the letter of the mandate issued to that court by a higher court.").

## II. Motion to Dismiss

Under the familiar pleading standards, a party asserting a claim for relief in federal court must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court will "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007), this principle is this "inapplicable to legal conclusions" and "mere conclusory statements." *Iqbal*, 556 U.S. at 678. The facts accepted as true are only those facts "asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy*, *supra* at 191. Moreover, where the claim sounds in fraud or deception, it must meet the heightened pleading standards of Fed. R. Civ. P. 9(b) requiring the plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (quoting *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

With reference to the proper scope of the RICO Judgment as described in the Clarification Order, *supra*, Chevron's non-compliance contempt claims should be dismissed because they fail to allege the existence of any collection or other recovery from the Ecuadorian judgment (and of course, there has been no such collection as yet), and thus cannot legitimately claim that either the constructive trust provisions of Paragraphs 1-2 or the monetization provisions of Paragraph 5 of the RICO Judgment even apply. (In its First Branch Order, the Court appears to have recognized the insufficiency of any claim of non-compliance with Paragraphs 1-2 and simply ignored that part of the Contempt Motion.) The Contempt Motion is also devoid of any allegation of fund-raising designed to "avoid[] the effect of the constructive trust imposed on assets in their hands that otherwise would have been direct proceeds of the Judgment," *i.e.* on funds from a "collections . . . made in respect of the Lago Agrio Judgment," which is what Paragraph 5 of the NY Judgment was drafted to enjoin. *See supra.*

To the extent there exists a question as to whether Paragraph 5 potentially applies to investment funds for litigation expenses received prior to any collection or other recovery, Paragraph 5 nonetheless can only apply to the specific interests of Mr. Donziger, Mr. Camacho, or Mr.Piaguaje. *Supra*. As long as any expense funding does not specifically assign, commit, or otherwise leverage interests specific to those three individuals, there is no violation of Paragraph 5. *Supra*. Both the Contempt Motion and the attached Declaration of Lee Grinburg fail entirely to allege the critical fact that any interest specific to these three individuals was ever even suggested as part of any proposed funding arrangement. And there is no factual allegation that any prior agreements involved interests specific to the three. The Court does not need a hearing to confirm that Chevron did not just somehow overlook this critical fact. In light of the Clarification Order, it is the only critical fact. If Grinburg could provide even a hint or suggestion that Mr. Donziger's

11

particular interest was being monetized, that obviously would have been showcased in both his declaration and the larger contempt motion. Indeed, Chevron does not even bother to make a "conclusory statement," *Iqbal*, 556 U.S. at 678, in this regard; rather, the Contempt Motion relies entirely on the false presumption that any monetization of any interest is in violation of the RICO Judgment. Because that assertion is contrary to the law of the case and the Contempt Motion lacks any factual content suggesting the involvement of the specific interests of Mr. Donziger, Mr. Camacho, or Mr. Piaguaje in any funding arrangement, Chevron's claims for non-compliance with Paragraph 5 are frivolous and must be dismissed.

## Conclusion

For the foregoing reasons, Mr. Donziger requests that this Court issue declaratory relief sufficient to confirm the interpretations of NY Judgment established by the Clarification Order, and relied on by the Second Circuit, specifically that the constructive trust articulated in the NY Judgment does not apply to funds obtained to cover litigation expenses and fees prior to a "collection" or other recovery of "proceeds" on the Ecuadorian Judgment, and further that the Court dismiss the remainder of the Contempt Motion as a matter of law.

DATED:     May 31, 2018                  Respectfully submitted,

*s/ Steven R. Donziger*
Steven R. Donziger
245 W. 104th Street, #7D
New York, NY 10025
Tel: (917) 678-3943
Fax: (212) 409-8628
Email: sdonziger@donzigerandassociates.com

*Pro se*
*Counsel to Donziger & Associates, PLLC, and the Law Offices of Steven R. Donziger*