UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHEVRON CORPORATION,

                Plaintiff,

    v.

STEVEN DONZIGER *et al.*,

                Defendants.

11 Civ. 0691 (LAK)

---

**REPLY IN SUPPORT OF MOTION FOR DECLARATORY RELIEF
AND MOTION TO DISMISS**

Chevron has opposed Defendant Steven Donziger's motion for declaratory relief and to dismiss ("Motion") almost entirely on various technical grounds that do not prevent the Court from addressing and providing the relief requested in the Motion.[1] The requested relief is simple and

---

[1] Federal courts have "unique and substantial discretion" concerning claims for declaratory relief. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Where the court already has jurisdiction, 28 U.S.C.A. § 2201 requires only "the filing of an appropriate pleading." That determination that lies within the "unique breadth" of the Court's discretion. *Wilton*, *supra*. The authority cited by Chevron is belied to some extent by the fact that "[d]eclaratory judgments and injunctions are remedies, not causes of action," *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010), and in any event reaffirm the power of the court to construe Mr. Donziger's declaratory relief claim as action for a declaratory judgment or as a motion for summary judgment on the contempt claim. *Int'l Bhd. of Teamsters v. E. Conference of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995). Chevron's technical complaint that the Motion cannot seek 12(b)(6) relief against its contempt application because that application is not a "pleading" is similarly strained and unnecessary in light of the court's discretion. The language of Rule 12(b) cherry-picked and italicized by Chevron comes from a sentence stating an entirely inapposite requirement ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required."). Nothing else in the language of Rule 12(b) provides an express limit that Chevron reads into the rule. Chevron's authority (an unpublished decision from Michigan) is unconvincing. In any event, the Court has discretion to construe the Motion as a general "request for a court order" under Rule 7(b) with reference to the obviously relevant standards of Rule 12(b)(6) practice.

fundamental: clarify the basic parameters of the injunctive terms of the Court's March 4, 2014 judgment (Dkt. 1875) ("NY Judgment"), and, if they are the Court described them in its subsequent order dated April 25, 2014 (Dkt. 1901) ("Clarification Order"), as they must be, dismiss Chevrons' claim of non-compliance contempt because they are supported by *no* evidence that the meeting with Elliott Management Corporation or any other fundraising efforts were in violation of the NY Judgment as understood by the Clarification Order.

There have now been *two months* of litigation on Chevron's contempt claims. Yet the Court continues to refuse, despite pleas from *both* parties, to provide even the most simple, baseline guidance on the status of the Clarification Order and what the NY Judgment does and does not allow. This is extremely disturbing, especially in that the refusal to provide guidance appears to be calculated. Chevron's opposition papers are correct that Mr. Donziger indeed made a similar request that Chevron's contempt claims be dismissed for insufficient evidence in light of the scope of the NY Judgment, Dkt. 1986 ("Chevron's application is entirely devoid of any allegation that the fund-raising at issue is an attempt to 'avoid[] the effect of the constructive trust imposed on assets in their hands that otherwise would have been direct proceeds of the Judgment,' . . . [and] further devoid of any allegation that the interests supposedly being 'monetized' were specifically Donziger's or Mssrs. Camacho or Piaguaje's ('their') interests"), and Mr. Donziger extensively argued the point orally at the May 8, 2018 hearing. Chevron has articulated its opposing, incorrect view both at the hearing and in multiple filings. *See, e.g.*, Dkt. 1987 at 6-7, Dkt. 2019 at 1, Dkt. 2024 at 5-6. In its first decision on the contempt application, the Court considered the parties' arguments and analyzed the first "branch" of the application regarding the Amazonia shares for 13 pages. Dkt. 2006. Yet the Court was utterly inscrutable on the second "branch" regarding alleged improper monetization, stating only that "[h]aving reviewed the

2

submissions, the Court has concluded that an evidentiary hearing is appropriate with respect to this branch of the contempt motion." *Id.* at 14.

This is not a "decision" from which Mr. Donziger could even seek reconsideration (or appellate review) if he wished. It is a non-decision. But critically, it is a non-decision that intentionally withholds parametric information about the applicable law while directing Mr. Donziger to proceed with discovery and sworn testimony—all while holding the sword of criminal contempt over Mr. Donziger's head. *See, e.g.*, Dkt. 2006 at 13 n.25. The underlying sentiment is: "Just tell us what you did, under oath, and *then* we'll tell you what law applies—and apply it to you *ex post facto*." This sounds repugnant to the Constitution and the rule of law, yet it is a genuinely fair description of what is happening here. It is shocking that, mere days away from a deposition and a court-ordered hearing, Mr. Donziger is still left begging for some indication from the Court as to what the law governing this proceeding is. As such, the Court's refusal to rule on this issue is not only erroneous and an abuse of discretion under Fed. R. Civ. P. 12(b), but also a serious violation of procedural due process.

## Conclusion

For the foregoing reasons, Mr. Donziger requests that this Court issue declaratory relief sufficient to confirm the interpretations of NY Judgment established by the Clarification Order, and relied on by the Second Circuit,[2] specifically that the constructive trust articulated in the NY

---

[2] Chevron blankly asserts that "[t]he Second Circuit's affirmance did not turn on Donziger's artificially narrow reading of the Judgment." Opp. at 6. First, the Clarification Order sets out ***the Court's*** "narrow reading" of the relevant terms of the NY Judgment, not Mr. Donziger's. Second, Chevron entirely fails to address the numerous portions of the Second Circuit's affirmance that show that it did, in fact, rely on "the district court's confinement of its injunction," *Chevron Corporation v. Donziger*, 833 F.3d 74, 81 (2016). The same portions of the Second Circuit's affirmance also show how profoundly this Court's default judgment, Dkt. 1985, which purports to enjoin various foreign persons who have never appeared before the court, potentially stands in violation of the mandate rule. The default judgment essentially

Judgment does not apply to funds obtained to cover litigation expenses and fees prior to a "collection" or other recovery of "proceeds" on the Ecuadorian Judgment, and further that the Court dismiss the remainder of Chevron's contempt claims as a matter of law.

DATED:      June 21, 2018                    Respectfully submitted,

*s/ Steven R. Donziger*
Steven R. Donziger
245 W. 104th Street, #7D
New York, NY 10025
Tel: (917) 678-3943
Fax: (212) 409-8628
Email: sdonziger@donzigerandassociates.com

*Pro se*
*Counsel to Donziger & Associates, PLLC, and*
*the Law Offices of Steven R. Donziger*

---

transforms the Court's RICO Judgment—which was affirmed because it imposed only "limited, non-global equitable relief," "directed at only three persons," and thus "d[id] not invalidate the Ecuadorian judgment," *id.* at 143, 144, 145)—into its opposite. While the default judgment "is not at issue on this motion," Tr. 5/8/2018 at 9 (remarks of the Court), any departure from the limiting interpretations of the NY Judgment language provided by the Clarification Order would threaten to apply equally to the default judgment, and thus ripen the default judgment's attack on the Second Circuit's mandate in this case.