**STEVEN R. DONZIGER, ESQ.**

245 WEST 104TH STREET, SUITE 7D
NEW YORK, NEW YORK 10025

212-570-4499 (O)
917-566-2526 (CELL)

July 9, 2018

**VIA ECF**

Honorable Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

    RE:    *Chevron v. Donziger*, Case No. 11 Civ. 691 (LAK)

Dear Judge Kaplan:

Mr. Mastro's letter dated July 5, 2018, illustrates yet again how Chevron and its counsel will mechanically generate new rounds of baseless attacks as part of the company's avowed "demonization" strategy against me until this Court makes clear the game is up. Chevron's latest theory of wrongdoing (or something) based on my more recent retainer agreement is pure speculation and distortion, and the company's hyped-up theatrical claims of prejudice regarding the "timing" of my production of the document are nonsensical in the extreme.

The Court's "Order with Respect to Discovery for the Scheduled Hearing" established the scope of discovery for the June 28, 2018 hearing. Dkt. 2020. It required "only . . . documents and . . . information bearing on the attempt to obtain funds from Elliott." *Id.* at 2. My retainer agreement is clearly not within that narrow scope. Chevron cannot claim that it was denied "an opportunity to brief the significance of the agreement, or question [me] about it" due to the timing of production. Mr. Mastro tries to circumvent this fact by announcing that the retainer is "obviously" related to the Elliott meeting merely because the date of the agreement is close in time to the meeting. This is absurd. As I testified under oath at the June 28 hearing, there have been numerous actual and potential funders and benefactors with whom I have met in the past few years, and my authority on the *Aguinda* case has long included responsibility for meeting and managing litigation expenses, including through fund-raising. There was nothing special or relevant about either the date of the most recent agreement or the timing of the Elliott meeting.[1]

Nor is there anything relevant or problematic about the content of the most recent retainer agreement. It does seek to maintain the status quo on my client's obligations to me following an organizational adjustment involving the FDA and the UDAPT where the groups decided to not

---

[1] Without waiving any privilege or confidentiality, I observe that a more relevant factual backdrop for the renewed retainer agreement would be the recent dissension between the UDAPT and the FDA that Chevron itself has made repeated reference to in these proceedings.

work together. The terms reflect the existing uncertainty about the exact operation and significance of this Court's Judgment in light of an ongoing litigation effort that has encompassed four jurisdictions outside the United States. Holding the status quo seeks to prevent forfeiture (dissipation) of my interest entirely—a result that Chevron itself should be wary of, given that it claims ownership of my interest through this Court's judgment.

Given Chevron's rigid litigation posture and the indefatigable determination of the affected Indigenous groups and farmer communities in Ecuador, there is very likely a long road ahead for this case. Even the Second Circuit implicitly acknowledged this when it endorsed judgment enforcement actions in other jurisdictions as part of its affirmance of Your Honor's RICO decision. Among many other scenarios, this Court's judgment could be set aside by a foreign tribunal or by the Court itself in light of new evidence that may further come to light in proceedings where the Ecuadorians and their counsel finally are allowed to fully explore the corruption at the heart of Chevron's various fraud claims (*cf.* Alberto Guerra). It is also at least conceivable that Chevron might finally see the limitations of its strategy of spending huge sums on Mr. Mastro and other U.S. lawyers to attack me rather than directing those funds to a clean-up of the open ponds of oil waste in Ecuador's rainforest, the existence of which not even Chevron disputes. As part of a potential settlement, Chevron might well need to agree to relinquish its claim to my interest under the Court's judgment, or join a motion to set aside the terms of the RICO judgment entirely (perhaps by acknowledging some of the falsehoods and distortions it presented to the Court to secure that judgment). In any of these scenarios, regardless of how remote they might seem to Your Honor, it would be important for the obligations of my clients to me to be reaffirmed. There is no basis to infer from this that I intend to disobey the Court's RICO judgment, much less evidence that I have done so. The relevant evidence is that I have respected the Court's judgment and have stated under oath that I intend to keep doing so.

Finally, Chevron bewilderingly cites the Court's April 2014 Order which expressly authorized me to continue "being paid, just as [I] ha[ve] been paid . . . over the past nine or ten years," so long as no "'collections . . . made in respect of the Lago Agrio Judgment' [] are 'funneled to [me] as retainer payments.'" Dkt. 2050 (quoting Dkt. 1901 at 7). Apparently stymied by the facts adduced at the June 28 hearing, Chevron appears to now be brazenly claiming that contingency financing counts as "collection" on the Lago Agrio Judgment. Chevron does not deserve an opportunity to waste the Court's time with briefing on such a patently baseless new theory which suddenly appeared when the facts did not support its original theory that I was selling my own interest in the judgment.

It remains that Chevron has not presented even a scintilla of evidence that I have sold any of my interests in the Ecuador judgment—the *only operative factual question* at issue that could provide a basis for a contempt finding on the judgment compliance issue. This was confirmed not only by Mr. Grinberg in his original affidavit submitted several weeks ago, but by three witnesses who testified as such under oath: Mr. Donziger and Mr. Grinburg on June 28, and Ms. Katie Sullivan in her deposition on June 25. Given the Court's clarification order of April 25, 2014, it is now clear

Hon. Lewis A. Kaplan
July 9, 2018
Page 3 of 3

and indisputable there is no factual basis to hold me in contempt of court for helping my clients obtain resources to pay their litigation expenses, as was expressly allowed by this court and relied on by the Second Circuit in its affirmance and his been elaborated on in my previous briefing.

Indeed, the entire foundation of civil contempt is lacking at this point in time, given that (1) as the Court has held, "the purpose of civil contempt is to coerce compliance with a judgment o[r] order," making it an "inappropriate sanction for alleged past-but-rectified non-compliance," Dkt. 2006 at 13, and (2) I have repeatedly assured the Court that I want to be in compliance with the Court's judgment, that I acted in good faith in light of the contours of that judgment as explained in the April 2014 clarification order, and that I am unable at this time to obtain financing in exchange for future interests in the judgment until the Court clarifies what is permissible in this regard. Tr. 6/28/2018 at 70-71.

I understand the Court's comments at the June 28 hearing that the foregoing arguments may concern "the days of yore" and that after this Court's issuance of a default judgment we are facing "a different set of facts." Tr. 6/28/2018 at 71. But the fact remains that this proceeding is under the auspices of Chevron's existing civil contempt motion. That is the sword hanging over my head that also directly threatens the interest of my clients. I have a right to a speedy determination of that claim, which I believe is meritless.

It is my view that the Court's issuance of what amounts to a multi-billion dollar default judgment against foreign parties who never appeared or defended (on claims purportedly so factually complex as to require a nearly 500-page opinion) is obviously improper. Therefore, I fully expect that the default judgment will be set aside with nary a second thought in any enforcement jurisdiction. But I accept that its existence, until set aside, may impact my actions as determined by this Court. I am "seriously . . . consider[ing]" these implications, as the Court suggested, Tr. 6/28/2018 at 71, as well as considering how best to protect my First Amendment rights which have been so egregiously abused in these post-judgment proceedings given that fundraising to pay litigation expenses has effectively been frozen by the pendency of Chevron's contempt motion and the company's abusive issuance of overbroad subpoenas to third parties which had the effect of intimidating financial supporters of the Ecuadorian plaintiffs such as Ms. Sullivan. That said, the issue of the default judgment at this point remains a separate matter from Chevron's pending contempt application, which I reiterate must be immediately dismissed for the reasons provided in prior submissions and argument.

                                      Sincerely,

                                      _____/ s /_____

                                      Steven R. Donziger