UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHEVRON CORPORATION,

           Plaintiff,

    v.

STEVEN DONZIGER *et al.*,

           Defendants.

11 Civ. 0691 (LAK)

**OPPOSITION TO MOTION TO COMPEL (DKT. 2047)**

The undersigned hereby opposes Chevron's motion to compel. Dkt. 2047. While Chevron claims its motion is to "compel Donziger to execute an unqualified transfer of Amazonia shares," the fact remains that the undersigned already executed a transfer of these "shares" that was without any legal reservation. Dkt. 2003-3.[1] What seems to perturb Chevron (and the Court) is the expression of my views and background understanding of certain facts simultaneously with the transfer in an "accompanying Addendum of Understandings." *Id.* These understandings, which did not constrain the transfer or reserve any legal rights, are expressions of my views, positions, mental impressions, opinions, and awareness of certain objective facts. As such, they cannot be forcibly changed or suppressed by Court order without directly violating the First Amendment. The few background facts they articulate cannot be "disappeared" by Court order. One of those facts is that I did, in fact, execute the transfer form pursuant to a Court order and under threat of contempt. Even if the Court is successful in forcing me to be silent about it (in violation of the

---

[1] The shares are utterly obsolete and meaningless, as already explained in prior briefing, only deepening the absurdity of the continued litigation on this point. 1986 at 1 n.1.

First Amendment), this would not make the fact go away. Whether this fact ultimately affects the validity of the transfer is not for me to say. I already have articulated the fact that I am not "seeking to negate the transfer," Order of May 16, 2018, Dkt. 2006 at 12, nor has the Court laid any foundation as to how any such negation would come about and how my expression of my understandings would be involved. A Court order barring me from acknowledging the existence of the Court-ordered nature of the execution of the transfer form would be a pure gag order directing me not to speak inconvenient truths. It would truly be repugnant to the First Amendment.

The same analysis applies with respect to my purely factual description of paragraphs 37-38 of the Amazonia Articles of Association. Dkt. 2003-3. The description is factual: I simply acknowledge the existence of, and quote from, the relevant articles. I do not even interpose any particular interpretation of the language. Again, a Court order barring me from merely acknowledging the existence of these paragraphs (which arguably forbid me from making the Court-ordered transfer) would be a pure gag order against speaking the truth about facts that Chevron apparently finds to be inconvenient.[2]

Finally, Chevron uses its motion to advance a whole new demand on me that is

---

[2] In addition to the unsupported and unexplained claim that my expression of background understanding is an attempt to "negate the transfer," the Court claimed that my "position" in the understanding was "internally inconsistent," because if I truly believed that the Amazonia shares were meaningless, "there would be no coherent reason for declining to transfer unconditionally whatever interest if any, [I] retain in them." Dkt. 2006 at 12. But once again, I *have* transferred my interest unconditionally—without legal reservation. My expression of my understandings was and is motivated by a First Amendment-protected interest in speaking the truth of the situation as I see it, not blindly adhering to the background narrative the Court would prefer. There is also a concrete interest in acknowledging that my action in executing the form appears to violate terms of the Articles of Association that I agreed to be legally bound by, instructing that "[n]o transfer of any Shares shall be made or registered without the prior consent of a majority of the Directors." Thus my interest in mitigating exposure to possible liability for violating the terms of the Agreement by acknowledging relevant explanatory facts is another justification or motivation for the understandings.

unconnected from the specific instruction from the Court regarding the Amazonia shares that I have been attempting to comply with. In the second part of its motion, Chevron demands execution (presumably in gag-order fashion as well) of a "general Transfer and Assignment of Judgment Interests form," based on language in the original RICO judgment that directed me to transfer to Chevron "all property" in my possession "that is traceable to the Lago Agrio Judgment." Dkt. 1875. The language in the original judgment is wildly uncertain in scope, and for that reason it was more carefully interpreted by the Court itself in what I have taken as the "clarification" order at Dkt 1901, where the Court made clear that property was "traceable to the Lago Agrio Judgment" if it flowed from a *collection of proceeds* on the Lago Agrio Judgment. *See, e.g.*, Dkt. 2018 at 6-8. Because there has been no such collection, there is no property to be assigned to Chevron at this time. Should any property subject to the terms of the RICO Judgment come into my possession or control, I will comply with the terms of the Judgment, as I have repeatedly assured the Court.

DATED: July 12, 2018        Respectfully submitted,

*s/ Steven R. Donziger*
Steven R. Donziger
245 W. 104th Street, #7D
New York, NY 10025
Tel: (917) 678-3943
Fax: (212) 409-8628
Email: sdonziger@donzigerandassociates.com

*Pro se*

3