# EXHIBIT 1

| | |
|---|---|
| **From:** | Nicol, Ash [anicol@torys.com] |
| **Sent:** | Tuesday, November 09, 2010 7:53 PM |
| **To:** | 'Lee Hamilton'; William Carmody; sdonziger@gmail.com; Westenberger; Steven Donziger; Nicolas Economou; Tyrrell, James |
| **Cc:** | Christopher P. Bogart; cbogart@glenavycapital.com; 'Bernardo Tobar'; Balfour, Richard; Cameron, John; Terry, John; Miller, James |
| **Subject:** | Ecuador - Funding Agreement and Intercreditor Agreement |
| **Attachments:** | Executed Funding Agreement.pdf; Executed Intercreditor Agreement.pdf |

Attached are compiled executed copies of the funding agreement and intercreditor agreement which are effective as of October 31, 2010, free from escrow conditions.

We confirm that all Stage 1 documentary requirements have been fulfilled and the funds are available in the trust account for disbursement subject to the requirements in Clause 3.1 of the funding agreement.

We understand that progress has been made towards execution of powers of attorney and implementing the trust structure in Ecuador which we greatly appreciate and will continue to foster through the support of our Ecuadorian counsel. John Cameron and I will continue to work with you and Ecuadorian counsel to ensure that the establishment and transfer of rights to the trust and security is implemented in an effective and expedient manner in order to achieve Stage 2.

We look forward to working with you in the coming weeks. Please let me know if you require anything further at this time.

Ash Nicol
**Torys LLP**
Tel: 416.865.7675

**From:** Lee Hamilton [mailto:lhamilton@Purringtonmoody.com]
**Sent:** November 8, 2010 3:22 PM
**To:** William Carmody; sdonziger@gmail.com; Christopher P. Bogart; cbogart@glenavycapital.com
**Cc:** Westenberger; Steven Donziger; Nicolas Economou; Nicol, Ash; Miller, James; Balfour, Richard; Tyrrell, James
**Subject:** RE: Ecuador funding

Ash:

Attached please see the following executed pages to the Funding Agreement and the Intercreditor:

1. the documents signed by Steve Donziger, being held by Patton Boggs, which may now be released from escrow;
2. the signature pages of the Ecuadorean team to the funding agreement and the intercreditor;
3. the signatures from ECBA, Erik Moe, and H5 to the intercreditor agreement; and
4. the signature of Torvia to the Intercreditor, which may be released from escrow simultaneously with the release of Burford's pages and the effectiveness of the Burford Funding Agreement.



**PLAINTIFF'S EXHIBIT**
**552**
11 Civ. 0691 (LAK)

**DONZS00015669 Page 1 of 4**

Please send through Burford's pages and confirmation that the funds in the PB Trust Account may now be released.

Best regards
Lee

Lee D. Hamilton
Purrington Moody Weil LLP
(336) 235 4298 (office)
(336) 392 7643 (mobile)

---

**From:** William Carmody
**Sent:** Monday, November 08, 2010 1:47 PM
**To:** 'sdonziger@gmail.com'; Christopher P. Bogart; cbogart@glenavycapital.com
**Cc:** Westenberger; Steven Donziger; Nicolas Economou; Nicol, Ash; Miller, James; Balfour, Richard; Tyrrell, James; Lee Hamilton
**Subject:** RE: Ecuador funding

I just received the email from Luis releasing the signatures from escrow.  Lee will be in touch with Ash shortly to coordinate.

Bill Carmody
336/235-4288

**From:** sdonziger@gmail.com [mailto:sdonziger@gmail.com]
**Sent:** Friday, November 05, 2010 12:46 PM
**To:** Christopher P. Bogart; cbogart@glenavycapital.com
**Cc:** Westenberger; Steven Donziger; Nicolas Economou; William Carmody; Nicol, Ash; Miller, James; Balfour, Richard; Tyrrell, James
**Subject:** Re: Ecuador funding

I understand all is approved; appropriate emails being sent to Carmody.

Sent via BlackBerry by AT&T

---

**From:** "Christopher P. Bogart" <cbogart@burfordgroupltd.com>
**Sender:** cbogart@glenavycapital.com
**Date:** Fri, 5 Nov 2010 07:54:49 -0400
**To:** <sdonziger@gmail.com>
**Cc:** Westenberger<ewestenberger@pattonboggs.com>; Steven Donziger<sdonziger@donzigerandassociates.com>; Nicolas Economou<neconomou@h5.com>; William Carmody<wcarmody@purringtonmoody.com>; Nicol, Ash<anicol@torys.com>; Miller, James<jmiller@torys.com>; Balfour, Richard<rbalfour@torys.com>; Tyrrell, James<JTyrrell@pattonboggs.com>
**Subject:** Re: Ecuador funding

Where are we on this? We are well past the timing we discussed.

On Thu, Nov 4, 2010 at 9:58 AM, Christopher P. Bogart <cbogart@burfordgroupltd.com> wrote:
Can someone please confirm release from escrow?

On Wed, Nov 3, 2010 at 4:55 PM, <sdonziger@gmail.com> wrote:
Meeting happening today. Should have news soon.

DONZS00015669 Page 2 of 4

Sent via BlackBerry by AT&T

---

**From:** "Christopher P. Bogart" <cbogart@burfordgroupltd.com>
**Sender:** cbogart@glenavycapital.com
**Date:** Wed, 3 Nov 2010 15:12:53 -0400
**To:** Westenberger, Eric<ewestenberger@pattonboggs.com>
**Cc:** Steven Donziger<sdonziger@donzigerandassociates.com>; Nicolas
Economou<neconomou@h5.com>; William Carmody<wcarmody@purringtonmoody.com>; Nicol,
Ash<anicol@torys.com>; Miller, James<jmiller@torys.com>; Balfour, Richard<rbalfour@torys.com>;
Tyrrell, James<JTyrrell@pattonboggs.com>
**Subject:** Re: Ecuador funding

Could I have an update on this? I assume we can look for the release from escrow today?

The funds are already in Patton Boggs' London account.

Thanks.

On Tue, Nov 2, 2010 at 4:41 PM, Westenberger, Eric <ewestenberger@pattonboggs.com> wrote:
Chris:

I understand that the clients' lawyers are meeting with Pablo and Luis tomorrow in Ecuador to go over the
Spanish translations of the agreements. I understand that oncePablo and Luisconfirm that the Spanish
translations conform to what was read to them from the English versions, their signature pages will be released
from escrow.
Eric

---

**From:** cbogart@glenavycapital.com [mailto:cbogart@glenavycapital.com] **On Behalf Of** Christopher P. Bogart
**Sent:** Tuesday, November 02, 2010 2:39 PM
**To:** Steven Donziger; Nicolas Economou; William Carmody
**Cc:** Nicol, Ash; Miller, James; Balfour, Richard; Tyrrell, James; Westenberger, Eric
**Subject:** Ecuador funding

I confirm that we have funded Patton Boggs' London account.

Please advise re releasing signature pages from escrow.


--
Christopher P. Bogart
Chief Executive Officer
Burford Group Limited
www.burfordgroupltd.com

DISCLAIMER:
This e-mail message contains confidential, privileged information intended solely for the addressee.
Please do not read, copy, or disseminate it unless you are the addressee. If you have received it in error,
please call us (collect) at (202) 457-6000 and ask to speak with the message sender. Also, we would
appreciate your forwarding the message back to us and deleting it from your system. Thank you.

This e-mail and all other electronic (including voice) communications from the sender's firm are for
informational purposes only. No such communication is intended by the sender to constitute either an
electronic record or an electronic signature, or to constitute any agreement by the sender to conduct a

transaction by electronic means. Any such intention or agreement is hereby expressly disclaimed unless otherwise specifically indicated. To learn more about our firm, please visit our website at http://www.pattonboggs.com.

```
--------------------
This email may contain material that is confidential, privileged and/or attorney
work product for the sole use of the intended recipient.  Any review, reliance or
distribution by others or forwarding without express permission is strictly
prohibited.  If you are not the intended recipient, please contact the sender and
delete all copies.  Burford Group is an investment business focused on dispute
finance; it is not a law firm, does not have or establish attorney-client
relationships and does not provide legal advice.
--------------------
```

--
Christopher P. Bogart
Chief Executive Officer
Burford Group Limited
www.burfordgroupltd.com

--
Christopher P. Bogart
Chief Executive Officer
Burford Group Limited
www.burfordgroupltd.com

--
Christopher P. Bogart
Chief Executive Officer
Burford Group Limited
www.burfordgroupltd.com

This email and any attachments are for the sole use of the intended recipients and may be privileged or confidential. Any distribution, printing or other use by anyone else is prohibited. If you are not an intended recipient, please contact the sender immediately, and permanently delete this email and attachments.

DONZS00015669 Page 4 of 4

Private and Confidential

EXECUTION VERSION

**TRECA FINANCIAL SOLUTIONS**
(as the Funder)

and

**CLAIMANTS**

---

**FUNDING AGREEMENT**

---

11301582.20
35805-2001

TABLE OF CONTENTS

PAGE

1.  DEFINITIONS AND REFERENCES ................................................................ 2
2.  FUNDING ARRANGEMENTS ..................................................................... 3
3.  PAYMENT OF THE EXPENSES .................................................................. 5
4.  POWER TO SETTLE THE CLAIM TO ACHIEVE COMMON PURPOSE ................. 6
5.  CLAIMANTS' DUTY TO CO-OPERATE ......................................................... 6
6.  LEGAL ADVICE ................................................................................... 7
7.  DISTRIBUTION OF PROCEEDS ................................................................. 7
8.  PROVISION OF SECURITY AND RELATED RIGHTS ...................................... 10
9.  POST-CLOSING COVENANTS REGARDING LEGAL OPINIONS .......................... 14
10. REPRESENTATIONS AND WARRANTIES ..................................................... 15
11. TERMINATION AND CONSEQUENCES OF BREACH BY THE
    CLAIMANTS ....................................................................................... 18
12. CONFIDENTIALITY .............................................................................. 18
13. INFORMATION AND PRIVILEGE .............................................................. 20
14. NOTICES ........................................................................................... 22
15. NON-CIRCUMVENTION .......................................................................... 22
16. PARTIES' RELATIONSHIP AND SERVICES .................................................. 22
17. LIMITATION OF LIABILITY .................................................................... 23
18. INDEMNIFICATION .............................................................................. 23
19. POST-COMMITMENT FUNDING ............................................................... 24
20. TAX MATTERS .................................................................................... 24
21. EXECUTION AND OBLIGATIONS OF FDA .................................................. 25
22. MISCELLANEOUS ................................................................................ 26
23. GOVERNING LAW AND ARBITRATION ..................................................... 27
24. COUNTERPARTS ................................................................................. 28
SCHEDULE 1  TRANSACTION DETAILS ......................................................... 1
SCHEDULE 2  CALCULATION OF RECOVERY AMOUNT ...................................... 6
SCHEDULE 3  DEFINITIONS ....................................................................... 7
SCHEDULE 4  FORM OF INTERCREDITOR AGREEMENT .................................... 14

1

DONZS00015670 Page 2 of 75

Private and Confidential

EXECUTION VERSION

AGREEMENT dated as of the Effective Date between:

**BETWEEN**:

(1)     **TRECA FINANCIAL SOLUTIONS**, a company organized under the laws of the Cayman Islands (the **"Funder"**);

(2)     **EL FRENTE DE DEFENSA DE LA AMAZONIA ("FDA")**; and

(3)     **THE CLAIMANTS** whose names are set out in Schedule 1 (**"Claimants"** and together with the Funder, the **"Parties"**).

NOW THEREFORE, in consideration of the mutual agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:

1.     **DEFINITIONS AND REFERENCES**

1.1     In this Agreement, unless the context otherwise requires, terms shall have the meanings set out in Schedule 3.

1.2     References to the Parties hereto include their assignees, transferees and successors-in-title and shall include both corporate and unincorporated associations, partnerships and individuals.

1.3     References to "obligations of the Claimants" refers to, where the context requires, obligations expressed to be performed by the Claimants, whether or not those Claimants are signatories to this Agreement.

1.4     Headings to clauses are for information only and shall not form part of the operative provisions of this Agreement.

1.5     References to Recitals, Clauses and Schedules are to recitals to, clauses of, and schedules to this Agreement. References to this Agreement shall, unless otherwise expressly stated, include references to the Recitals and the Schedules.

1.6     Except where the context otherwise requires:

(a)     words denoting the singular include the plural and vice versa;

(b)     words denoting any gender include all genders; and

(c)     words denoting persons include firms, partnerships, unincorporated associations and corporations and vice versa.

1.7     References in this Agreement to any agreement, deed or document shall be deemed to include references to such agreement, deed or document as varied, amended,

DONZS00015670 Page 3 of 75

Private and Confidential

EXECUTION VERSION

modified, novated, supplemented or replaced by any other documents, deeds, instruments or agreements from time to time whether as part of an insolvency or bankruptcy proceedings or otherwise.

## 2.    FUNDING ARRANGEMENTS

2.1    Subject to the provisions of this Agreement and any other arrangements expressly agreed in writing from time to time between the Funder and the Claimants, the Funder and the Claimants shall fund the Expenses as follows, and the Claimants shall obtain funding for the Expenses and other expenses of the Claim only as set forth below and in Clause 19:

(a)    The Capital Commitment shall be funded in accordance with this Clause 2 in the following Tranches:

   (i)    An initial Tranche in the amount of $4,000,000 (the "**Initial Tranche Amount**");

   (ii)    A second Tranche in the amount of $5,500,000 (the "**Second Tranche Amount**"); and

   (iii)    A third Tranche in the amount of $5,500,000 (the "**Third Tranche Amount**").

(b)    The Funder shall pay the full amount of the Initial Tranche Amount on the Initial Funding Date by wire transfer to the Trust Account.

(c)    On or after the date that is sixty (60) days after the Initial Funding Date, the Claimants shall have the right to call two additional Tranches in the amounts of the Second Tranche Amount and the Third Tranche Amount, respectively, by giving written notice (each, a "**Funding Notice**") to the Funder, provided that no Funding Notice shall be issued unless and until such date that is thirty (30) days prior to the date in which the Nominated Lawyers reasonably believe that the balance of the Trust Account will fall below $1,000,000 (in the case of the Third Tranche Amount, after giving effect to the Second Tranche Amount). Notwithstanding the foregoing, the Claimants shall not have the right to call the Second Tranche Amount until the Funder has received evidence that (i) (A) at least a majority of the individual Claimants have executed and delivered a power of attorney in a form reasonably satisfactory to the Funder authorizing Pablo Estenio Fajardo Mendoza, Esq. ("**Fajardo**") to execute this Agreement, (B) all individual Claimants who have executed a specific power of attorney authorizing Fajardo to execute the engagement agreements between the Claimants and any of Patton Boggs LLP, Donziger and Associates, PLLC and Emery, Celli, Brinckerhoff & Abady LLP or any confirmatory execution thereof have executed such power of attorney referred to in (A) above and (C) the Lead Claimant shall have executed and delivered the

Plaintiff's Exhibit 552   p. 8 of 79

Private and Confidential

EXECUTION VERSION

power of attorney referred to in (A) above; and Fajardo has duly executed and delivered this Agreement on behalf of such Claimants as a confirmation of their rights and obligations hereunder, (ii) the Trust has been established as set forth in Clause 8.1, and (iii) the same Persons referred to in (i) above have executed and delivered an Assignment Agreement in accordance with Clause 8.2. For purposes hereof, **"Lead Claimant"** means the only person among the Claimants who, in the past ten (10) years, has exercised a continuing leadership role in respect of the Claim. The Claimants represent that the Lead Claimant is the sole Person that has exercised a representative or leadership role in relation to the Claim and such representation shall be deemed to be repeated upon the confirmatory execution by Fajardo provided above. For the avoidance of doubt, the Claimants shall only have the right to call one Tranche at a time pursuant to a Funding Notice delivered pursuant to this Clause 2.1(c), subject to the foregoing.

(d)  The Funder shall have a period of fifteen (15) days from the date of the Funding Notice to notify the Claimants in writing that it agrees to fund such additional Tranche as set forth in the applicable Funding Notice.

(e)  If the Funder agrees to fund such additional Tranche in accordance with Clause 2.1(d), the Funder shall pay the amount of such additional Tranche by wire transfer to the Trust Account within two (2) Business Days following the notice described in Clause 2.1(d).

(f)  If the Funder declines to fund a Tranche or fails to deliver notice of its agreement to fund such additional Tranche within the fifteen (15) day period described in Clause 2.1(d), then the Claimants may negotiate and enter into agreements with one or more third parties to provide additional funding for the Claim on a basis that is consistent with the Intercreditor Agreement (it being understood that there shall be no limit on the amount of additional funding that may be sought); provided that the Funder shall have an opportunity to compete in all respects in a fair and equitable manner, and within the same time periods, with all third parties participating in the process to provide funding of such additional Tranche on new terms.

2.2  If the Claimants require additional funds to pay for the Expenses and the Capital Commitment has not been fully funded and has not expired, then the Claimants shall seek additional funding in accordance with Clauses 2.1(c) to 2.1(f) above. Notwithstanding the foregoing, nothing in this Agreement or otherwise shall prohibit any lawyer or law firm that hereafter is retained by the Claimants (or the Trust once established) from paying or agreeing to pay, pursuant to its respective engagement agreement, for any costs or expenses related to the Claim.

2.3  The Claimants shall instruct the Nominated Lawyers to hold any amounts funded by the Funder hereunder to pay for the Expenses in the Trust Account. The Claimants

DONZS00015670 Page 5 of 75

Private and Confidential

EXECUTION VERSION

shall not (i) make any amendment to the Claim which results in the FDA no longer being designated as the sole beneficiary to the proceeds of the Award; (ii) make an assignment of any Claimant's rights in the Claim, the Award or the proceeds of the Award (other than making grants of contingent interests in the Award and the proceeds thereof, but only if the grantee of such contingent interest agrees to execute the Intercreditor Agreement or a written accession agreement thereto); or (iii) take or refrain from taking any other act that has a prejudicial effect on the FDA's interest in the Claim, on a basis that adversely affects the effectiveness of this Agreement for the Funder. In the event any of the Claimants does any of the foregoing, all amounts in the Trust Account shall forthwith, at the option of the Funder, be paid to the Funder, whereupon this Agreement shall terminate. To give effect to the foregoing, the Claimants shall instruct the Nominated Lawyers to make such payment and the Funder may enter into an agreement with the Nominated Lawyers to that effect (which agreement shall be without recourse to the Claimants).

2.4   Except for the Expenses, the Funder shall have no obligation to fund, and the Trust Account shall not be used to pay, any other fees, expenses or other sums in relation to the Claim, and all such other fees, expenses or other sums shall be the sole responsibility of the Claimants. In particular, and without implying limitation, the Funder shall have no obligation to pay any sums awarded against the Claimants, including any costs orders or awards against the Claimants.

2.5   Notwithstanding anything to the contrary set forth in this Agreement, the Claimants have the absolute right to raise and procure up to an additional $2,000,000 in funding for the Claim from the Minority Funders, on such terms as the Claimants may agree in their sole discretion, provided that such terms are consistent with the Intercreditor Agreement. The Funder shall have no rights under this Agreement (including, without limitation, Clauses 2 or 19) or otherwise to match or participate in any such funding from Minority Funders.

2.6   Notwithstanding anything to the contrary set forth in this Agreement, the Funder shall have the option, in its sole discretion, to fund at any time the full amount of the Capital Commitment that has not previously been funded.

## 3.   PAYMENT OF THE EXPENSES

3.1   The Claimants shall instruct the Nominated Lawyers to disburse the funds held in the Trust Account in order to pay Expenses as may be approved from time to time by the Nominated Lawyers and the Claimants' U.S. Representative.

3.2   The Claimants hereby instruct the Nominated Lawyers to disburse such portion of the Initial Tranche Amount as is required for payment in full of the outstanding invoices existing as of the date hereof in respect of Expenses as approved by the Nominated Lawyers and the Claimants' U.S. Representative.



Private and Confidential

EXECUTION VERSION

## 4. POWER TO SETTLE THE CLAIM TO ACHIEVE COMMON PURPOSE

4.1   The Parties acknowledge and mutually represent to each other that it is their common purpose in concluding this Agreement to enable the Claimants to pursue their Claim. The Parties further agree that this common purpose and all steps and actions required to achieve this common purpose, including but not limited to any and all steps and actions required in accordance with the Claimants' obligation to cooperate with the Funder as set forth herein, are of the essence of this Agreement.

4.2   The Parties acknowledge that their common interest is served by settling the Claim for a commercially reasonable amount in the context of the extensive environmental damage that has occurred in Ecuador, the significant damage to the health and welfare of the residents of the affected area, and the significant monetary amounts that would be required to remediate the contamination that resulted from the acts that are the subject of the Claim. In that regard, notwithstanding Schedule 2 or anything to the contrary contained in this Agreement, the Claimants may at any time without the consent of the Funder either settle or refuse to settle the Claim for any amount.

## 5. CLAIMANTS' DUTY TO CO-OPERATE

5.1   The Claimants hereby irrevocably instruct the Nominated Lawyers to keep the Funder fully and continually informed of all material developments (including the matters set out below) and to provide the Funder with copies of all material documents. The Claimants and the Funder agree that the Nominated Lawyers may not disclose information or documents that the Nominated Lawyers reasonably believe could or would jeopardize any privilege (including, but not limited to, the attorney-client privilege) of the Claimants. In furtherance of the foregoing, the Claimants shall, as requested by the Nominated Lawyers or the Claimants' U.S. Representative:

   (a)   cooperate with the Active Lawyers and the Funder in all material matters pertaining to the Claim and devote sufficient time and attention as is reasonably necessary to conclude the Claim;

   (b)   provide to the Active Lawyers all material Documentation and Confidential Information and comply with Clauses 13.1 and 13.4 herein;

   (c)   submit to examination by the Active Lawyers for the preparation of written statements, subscribe to the same under oath if required, consult with the Active Lawyers and their designees as they reasonably require for purposes of pursuing the Claim or enforcing or settling the Award and appear at any proceeding or hearings (including hearings located abroad) reasonably required in connection with such statements or the Claim generally; and

   (d)   using the Claimants' reasonable efforts and subject to any relevant legal rules, cause all persons related to the Claim, including the Claimants' lawyers, to submit to examination by the Active Lawyers for the

6

DONZS00015670 Page 7 of 75

Private and Confidential

EXECUTION VERSION

preparation of statements, to subscribe to the same under oath if required, to consult with the Active Lawyers as they reasonably require for purposes of pursuing the Claim or enforcing or settling the Award and to appear at any hearings (including hearings located abroad) reasonably required in connection with such statements or the Claim generally.

5.2     The Claimants shall, as reasonably requested by the Active Lawyers giving consideration to the location and the financial means of the Claimants, lend their name to all required actions and steps in relation to the Claim, and shall execute all papers and render assistance to the Nominated Lawyers so as to secure to the Funder the benefits, rights and causes of action provided for herein. The Claimants shall: (i) do nothing that is reasonably likely to prejudice such benefits, rights or causes of action, and (ii) engage in no conduct or commercial arrangements that are reasonably likely to have a material adverse impact in any way on the Claim and the value of the Recovery Amount.

5.3     The Claimants agree and undertake that neither they nor any of their Affiliates shall institute any action, suit or arbitration separate from the Claim against any Defendant or take any other step that is reasonably likely to have a materially adverse impact on the Claim and the value of the Recovery Amount.

5.4     The Claimants shall authorise and instruct the Nominated Lawyers to respond fully and promptly to any reasonable request by the Funder or its Representatives for information regarding the Claim.

5.5     The Parties acknowledge and agree that the Claimants' obligation to cooperate as set out in this Clause 5 and Clauses 13.1 and 13.4 below is of the essence of this Agreement and is a condition thereof and a continuing obligation and that any material breach thereof that has a material adverse impact on the value of the Claim and the Recovery Amount shall entitle the Funder to terminate this Agreement pursuant to Clause 11.1.

## 6.     LEGAL ADVICE

6.1     The Claimants have taken legal advice in relation to this Agreement and all other arrangements between themselves, the Funder and the Nominated Lawyers, including with respect to the engagement agreement to be entered into between the Claimants and the Nominated Lawyers.

## 7.     DISTRIBUTION OF PROCEEDS

7.1     The Claimants (a) shall use their commercially reasonable efforts to cause each Person who or which now holds a contingent interest in the Award or the proceeds thereof to execute the Intercreditor Agreement or an accession agreement by which it becomes bound by the Intercreditor Agreement, and (b) shall not hereafter enter into any engagement agreement providing for or otherwise granting a contingent interest in the Award or the proceeds thereof with any Person who or which has not executed (or is not then concurrently executing) the Intercreditor Agreement or an accession agreement

DONZS00015670 Page 8 of 75

Plaintiff's Exhibit 552   p. 12 of 79

Private and Confidential

EXECUTION VERSION

thereto. To the extent that any such Person has not executed the Intercreditor Agreement or an accession agreement by which it becomes bound to the Intercreditor Agreement, the Claimants agree to indemnify the Funder to the extent necessary to ensure that the amount actually received by the Funder in respect of the payment due from the Claimants equals the amount which the Funder would have received if all of the Persons with a contingent interest in the Award or the proceeds had executed; provided that with respect to each instance of an engagement agreement hereafter entered into by the Claimants with a Person with a contingent interest in the Award or the proceeds thereof, the foregoing indemnification obligation on the part of the Claimants shall not exceed the total amount of proceeds attributable to the contingency grant actually paid to such Person; provided further, that the foregoing indemnification obligation on the part of the Claimants shall automatically terminate and be of no further force or effect with respect to any engagement agreement hereunder entered into by the Claimants with a Person with a contingent interest in the Award or the proceeds thereof at such time that such Person executes the Intercreditor Agreement or an accession agreement by which they become bound by the Intercreditor Agreement. The amount payable pursuant to such indemnity is referred to as the "**Intercreditor Indemnity Amount**".

7.2     The Claimants hereby agree to act, and to cause their Representatives to act, at all times in a manner consistent in all material respects with, and to give full effect to, the Intercreditor Agreement.

7.3     In consideration of the Funder's obligations under this Agreement, the Claimants agree to pay or cause to be paid to the Funder the Recovery Amount, subject to the Intercreditor Agreement.

7.4     Each Claimant agrees to use its best efforts to cause all cash proceeds of the Award to be paid or delivered to the Escrow Account for distribution in accordance with the Intercreditor Agreement, this Agreement and applicable law. In that regard, the Claimants hereby specifically authorize and permit, notwithstanding any other provision of this Agreement, at the time of any settlement or Award the Funder to direct the Nominated Lawyers to instruct any Defendant or other party related in any way to the Award on the Claimants' behalf that any proceeds of the Award be paid to the Escrow Account; provided that the Funder, prior to so directing the Nominated Lawyers, gives notice to the Claimants of its intention to do so and affords the Claimants reasonable opportunity to discuss the advisability of doing so. Following the receipt of the Funder of the amounts due to it under the terms of this Agreement and the Intercreditor Agreement, the Claimants shall have no further obligations to pay any amounts (including, without limitation, any portion of the Award) to the Funder.

7.5     If any Claimant or any Representative thereof receives all or any part of the proceeds of the Award, that Claimant will hold those proceeds in trust (or the local law equivalent in Ecuador or elsewhere in the world where those proceeds are received) and shall cause the proceeds to be paid or delivered to the Escrow Account for distribution in accordance with the Intercreditor Agreement; and each Claimant will instruct each of its

8

DONZS00015670 Page 9 of 75

Plaintiff's Exhibit 552   p. 13 of 79

Representatives to hold all cash proceeds received by such Representatives in trust and to make that payment or delivery to the Escrow Account.

7.6     Without limiting Clause 7.1, each Claimant hereby irrevocably directs the Nominated Lawyers and authorizes the Funder to direct the Nominated Lawyers to take all steps necessary to ensure that any and all proceeds of the Award are paid or delivered into the Escrow Account.

7.7     The Claimants and the Funder both direct and authorize the Nominated Lawyers to cause the payment of the Recovery Amount and any other amount owing to the Funder under Clause 18 or any other provision of this Agreement from the Escrow Account as soon as practicable in accordance with the Intercreditor Agreement.

7.8     The Parties agree to be bound by any award made by a tribunal appointed in accordance with the arbitration provisions of the Intercreditor Agreement to resolve a dispute over the distribution of any portion of the proceeds of the Award. The Claimants shall be entitled to participate in any dispute over the distribution of the proceeds of the Award exclusively through the Claimants' Representatives, forthwith after the Claimants' Representatives have been given notice of the dispute, by causing the Claimants' Representatives to make an application to that Tribunal. Any attempt by a Party to seek relief or remedies in any other forum with respect to such dispute will constitute a breach of this Agreement and entitle the other Party to damages, equitable relief and full indemnification against all costs and expenses incurred in connection therewith. In the event of a dispute over the distribution of any proceeds of the Award, that portion of the proceeds will remain in the Escrow Account pending outcome of the arbitration proceedings provided for herein or in the Intercreditor Agreement. For the avoidance of doubt, that dispute will not affect the payment of other amounts under the Intercreditor Agreement not in dispute.

7.9     The Claimants undertake to grant to the Nominated Lawyers a full power of attorney (or local law equivalent in Ecuador or elsewhere in the world where any proceeds of the Award are received) to cause and allow any and all Award proceeds to be paid or delivered forthwith as set out above. The Parties acknowledge and agree that such power of attorney (or local law equivalent in Ecuador or elsewhere in the world where any proceeds of the Award are received) is of the essence of this Agreement and is a condition thereof and that any material variation or termination of such power of attorney by the Claimants will entitle the Funder to terminate this Agreement pursuant to Clause 11.1.

7.10    The Claimants undertake to grant to one or more of the Claimants' Representatives a full power of attorney (or local law equivalent in Ecuador or elsewhere in the world where any proceeds of the Award are received) to execute and do all deeds, documents and things which may be reasonably necessary or advisable to give full effect to the intent of this Agreement.

7.11    The Claimants acknowledge and agree that their obligation to pay the Recovery Amount and any other amount owing to the Funder, as and when due and owing to the

9

DONZS00015670 Page 10 of 75

Plaintiff's Exhibit 552   p. 14 of 79

Private and Confidential

EXECUTION VERSION

Funder under Clause 18 or any other provision of this Agreement, shall apply if the Claim is decided in whole or in part in the Claimant's favour. The Funder acknowledges and agrees that the Claimants shall have no obligation to pay all or any part of the Recovery Amount to the Funder if there is no Award.

## 8.   PROVISION OF SECURITY AND RELATED RIGHTS

8.1    The Claimants hereby agree to establish, and the Funder hereby irrevocably agrees to the establishment by the Claimants of, a trust under Ecuadoran law (the "**Trust**"). The terms of the Trust shall be set forth in a trust deed or other instrument in compliance with applicable Ecuadoran laws (the "**Trust Deed**"), which shall provide, among other things, as follows:

(a)     the trustee of the Trust (the "**Trustee**") shall (i) be a leading trust company registered and licensed under Ecuadorian Law to administer trusts, which is satisfactory to the Funder acting reasonably, (ii) hold as the corpus of the Trust all of the litigious rights as well as any and all interest in the Claim, the Award, any proceedings of the enforcement enforce the Award, and any proceeds (including, without limitation, the Escrow Account) of any of the foregoing held by the Claimants as of the date of the assignment described below (collectively, the "**Litigation Rights**"), such that the Trustee is the sole and only Person entitled to, among other things, pursue the Claim and enforce and collect the Award, and (iii) have the authority and obligation to apply and distribute any proceeds of the Award (including, without limitation, the Escrow Account) in compliance with the provisions of this Agreement and the Intercreditor Agreement;

(b)     the Claimants' Representatives, or a board of managers constituted under the Trust Deed, shall have the right to direct and control the Trustee with respect to the pursuit of the Claim and any and all matters ancillary thereto (including, without limitation, the litigation strategy, any and all actions within the litigation proceedings, the appointment and direction of counsel and approval of any settlement that the Claimants' Representatives or such board may authorize or approve);

(c)     all proceeds of the Award that are paid to the Trust shall be distributed in accordance with the Intercreditor Agreement; and

(d)     the Trustee may establish a second trust (the "**Second Trust**") for the sole purpose of receiving and subsequently distributing the Award or the proceeds thereof in accordance with the terms of this Agreement and the Intercreditor Agreement, to the extent that such second trust is, on the advice of the Claimants' advisors, necessary or advisable to provide for more efficient structuring of the Award or the proceeds thereof (including as contemplated pursuant to Clause 20 below); provided the trustee of the

DONZS00015670 Page 11 of 75

Plaintiff's Exhibit 552   p. 15 of 79

Private and Confidential

EXECUTION VERSION

Second Trust (Trustee No. 2) is a recognized registered trust company satisfactory to the Funder acting reasonably.

The Trust Deed shall be drafted by counsel to the Claimants consistent with the foregoing. The Funder shall have the right, at no cost or expense to the Claimants, to participate in the drafting of the Trust Deed and to make recommendations with respect to the terms and provisions thereof. At such time as the Claimants have finalized a draft of the Trust Deed that FDA is willing to execute (the **"Proposed Trust Deed"**), the Claimants shall deliver a copy of the same to the Funder. If any of the terms or provisions of the Proposed Trust Deed are either directly in conflict with any of the terms of this Agreement or the Intercreditor Agreement or would be in violation of Ecuadoran law, then the Funder shall have the right to deliver written notice to the Claimants (the **"Objection Notice"**) objecting to the Proposed Trust Deed to the extent of such conflicts and/or violations. To be valid, an Objection Notice shall list, with specificity, each instance of alleged conflict and/or violation and provide the suggested language for eliminating each such alleged conflict and/or violation. If the Claimants have not received an Objection Notice by 5:00 p.m. (New York time) on the date that is ten (10) days after delivery of the Proposed Trust Deed to the Funder, then the terms and provisions of the Proposed Trust Deed shall irrevocably be deemed to have been approved by the Funder, and the Claimants may proceed to establish the Trust in accordance therewith. If the Claimants receive a valid Objection Notice prior to 5:00 p.m. (New York time) on the date that is ten (10) days after delivery of the Proposed Trust Deed to the Funder, then the Funder and the Claimants shall thereafter attempt, in good faith, to promptly (and in any event within six (6) days) resolve such objections as may be required such that the terms with respect to which the Funder objected are no longer in conflict with this Agreement or the Intercreditor Agreement and would not be in violation of Ecuadoran law. If the Funder and the Claimants have not resolved such objections within such 6-day period, then a Representative of the Claimants and a Representative of the Funder shall meet within four (4) days (which may be via telephone), and shall appoint a neutral, third party arbiter to resolve such dispute by determining, as to each objection raised in the Objection Notice, whether such objection actually conflicts with this Agreement or the Intercreditor Agreement or is in violation of Ecuadoran law. If, with respect to each such objection, such arbiter determines that (i) no conflict or violation exists, then the objection shall be overruled (in which event the objected provision may remain in the final Trust Deed), and (ii) a conflict or violation exists, then the objection shall be sustained (in which event the curative clause(s) proposed by the Funder shall be incorporated into the final Trust Deed). Once all such objections have been resolved (either by agreement of the Parties or by the arbiter as described above), the Proposed Trust Deed shall irrevocably be deemed to have been approved by the Funder, and the Claimants may proceed to establish the Trust in accordance therewith.

11

DONZS00015670 Page 12 of 75

Plaintiff's Exhibit 552   p. 16 of 79

Private and Confidential

EXECUTION VERSION

The final Trust Deed shall be drafted in both English and Spanish (with the Spanish version prevailing in the event of any inconsistencies between the English version and the Spanish version).

8.2    Following the establishment of the Trust, FDA shall, and shall use its commercially reasonable efforts to cause each Claimant to, assign all of its or his Litigation Rights to the Trust, in exchange for which FDA or such Claimant, as applicable, shall obtain and acquire an equivalent beneficial interest in the Trust. Such assignment shall be undertaken by means of a standard Spanish-language assignment agreement (each, an "**Assignment Agreement**"). It is the intent of the Parties that (and the Assignment Agreement shall be drafted to so provide) that any Claimant who or which executes an Assignment Agreement shall have exactly the same rights, obligations and expectations with respect to the Claim and the Award (including any proceeds thereof) as such Claimant had immediately prior to executing such Assignment Agreement.

8.3    Upon establishment of the Trust, each Claimant shall irrevocably assign to the Trust all of his or its rights under this Agreement, the Intercreditor Agreement and each engagement or advisory agreement previously executed by the Claimants with its lawyers or other advisors in respect of the Litigation (to the extent the same are still then in force and effect). Following such assignment, each Claimant shall be released from any and all monetary obligations, if any, arising under this Agreement.

8.4    Upon establishment of the Trust, the Trustee, on behalf of the Trust, shall execute and deliver to the Funder a joinder agreement by which it assumes the obligations expressed to be performed by the Claimants, whether or not those Claimants are signatories to this Agreement, and agrees to perform the obligations specified for the Trustee under this Agreement, including without limitation applying and distributing any proceeds of the Award (including, without limitation, the Escrow Account) in compliance with the provisions of this Agreement and the Intercreditor Agreement.

8.5    The Trustee (following the establishment of the Trust) and FDA:

(a)    hereby grants to the Funder a first ranking fixed charge and security interest over FDA's and the Trustee's interest in (i) any account into which the Award or any proceeds thereof (including without limitation the Escrow Account) are paid and (ii) to the maximum extent permitted under laws of the United States and England, the Claim, any Award, any proceedings to enforce the Award and any proceeds of any of the foregoing, to secure the obligations expressed to be performed by the Claimants, whether or not those Claimants are bound by this Agreement, and the obligations of FDA and the Trustee, under this Agreement and the Intercreditor Agreement, including without limitation the payment of any proceeds of the Award in accordance with the Intercreditor Agreement, with all of the rights and remedies of a secured creditor under Article 9 of the Uniform Commercial Code; provided, that FDA's and the Trustee's

DONZS00015670 Page 13 of 75

Private and Confidential

EXECUTION VERSION

rights may be transferred or assigned in their entirety to the Trust or the Second Trust as contemplated hereby;

(b)     if the security interest created in Clause 8.1(a) is not a valid, perfected and first ranking security interest under the laws of the United States and England to the maximum extent permitted under those laws, deliver (or cause to be delivered) a simple form or forms of security agreement, and such financing statements, control agreements and subordination agreements, as are necessary for the Funder to obtain that valid, perfected and first ranking security interest under those laws as required by this Agreement;

(c)     shall use commercially reasonable efforts to cause any Person (including, without limitation, the Nominated Lawyers and any other law firm, advisor, trustee or agent acting on behalf of one or more of the Claimants) to agree that, following an Award, such Person will act on the instructions of the Funder to pay or deliver all or such portion of the Award, or the proceeds (including, without limitation, the Escrow Account) thereof, to the Funder in payment of the Recovery Amount and any other obligations payable to the Funder under this Agreement, and will not act on the instructions of any Person in relation to the payment or delivery of any portion of the Award or the proceeds (including, without limitation, the Escrow Account) thereof, without the consent of the Funder;

(d)     in connection with any proceeding to enforce an Award, agrees to make an application to any court in Ecuador, the United States, the United Kingdom and another jurisdiction where the Award is being enforced, to seek recognition of the Funder's interest in the Award, those proceedings, and any proceeds (including without limitation the Escrow Account) of any of the foregoing, including the priority of the Funder's rights under the terms of the Intercreditor Agreement;

(e)     cause each Person who or which is hereafter granted a contingent interest in, or granted a right to payment determined by reference to, the Award or the proceeds thereof by the Claimants or the Trust to execute the Intercreditor Agreement and to act in accordance with its terms; and

(f)     hereby irrevocably appoints the Funder (such appointment being coupled with an interest) as each of the Trustee's and FDA's attorney-in-fact, with full authority in the place and stead, and in the name, of each of the Trustee, FDA, the Funder or otherwise, from time to time in the Funder's discretion, to take any action and to execute any financing statement, control agreement or other document, as the Funder may deem reasonably necessary or advisable to obtain a valid, perfected and first ranking security interest as described in Clause 8.1(a) and to enforce or realize upon that security interest.

13

DONZS00015670 Page 14 of 75

Private and Confidential

EXECUTION VERSION

8.6     The obligation of the Claimants to comply with Clause 8.1 constitutes a continuing obligation on the part of each Claimant, and the Claimants' right to request the Second Tranche Amount is subject to the Claimants' satisfaction of the provisions set forth in the second sentence of Clause 2.1(c) above.

8.7     From the Effective Date onwards, and except for (i) any security interests created in favour of the Funder pursuant to this Agreement, (ii) the Intercreditor Agreement, (iii) the establishment of the Trust (and the Second Trust, if applicable), and (iv) the payment of any proceeds of an Award to the Trustee for deposit into the Escrow Account and payment of any such amounts out of the Escrow Account in accordance with the terms of the Intercreditor Agreement, each of the Claimants, FDA, the Trustee and the trustee of Second Trust shall not create, or permit to exist, any mortgage, pledge, lien, charge, hypothecation, right of set-off or security interest, trust or other encumbrance of any kind, or any subordination agreement, priority agreement or arrangement of any kind having a similar effect to any of the foregoing, in respect of the   Claim, any Award, any proceedings to enforce the Award, and the proceeds (including, without limitation, the Escrow Account) of any of the foregoing; provided, the foregoing negative pledge shall not prohibit, preclude, restrict or impair in any manner or to any extent the right or ability of the Claimants, FDA or the Trustee to grant any contingent interests in, or grant any right to payment determined by reference to, the Award or the proceeds thereof, ranking subordinate in all respects to the interests of the Funder under this Agreement and the Intercreditor Agreement.

8.8     All obligations of each Claimant under the Transaction Documents, including this Agreement and any documents provided by way of security and related rights under Clause 8.1, are intended to survive the insolvency of that Claimant, subject to the operation of applicable law.

8.9     The Funder hereby agrees that, immediately following the receipt by the Funder of all amounts due to the Funder under this Agreement and the Intercreditor Agreement, FDA and the Trustee shall be fully released and discharged from any and all security interests and/or liens granted to or in favour of the Funder under this Agreement or under any other Transaction Document (including, without limitation, any document required under Section 8.5(b)), and the Funder shall file or cause to be filed such termination statements or similar documents necessary or advisable to record the release of any security interest in the jurisdiction where such security interests may have been created as may be reasonably requested by the Claimants' U.S. Representative.

## 9.    POST-CLOSING COVENANTS REGARDING LEGAL OPINIONS

9.1     The Funder may seek to obtain Ecuador, United Kingdom, United States and other legal opinions addressed to the Funder to confirm that this Agreement has been duly executed and delivered and that the obligations in this Agreement are binding on and enforceable against them and in particular, that the powers of attorney described at Clauses 7.9 and 8, and the forms of security described in Clause 8 or any other security required by the Funder pursuant to Clause 8 are legally perfected and legally valid and binding obligations of the Claimants enforceable by the Funder against the Claimants in

DONZS00015670 Page 15 of 75

Plaintiff's Exhibit 552   p. 19 of 79

accordance with their priority and other terms and may not be invalidated or otherwise be made inoperative in the event of any of the Claimants' bankruptcy or insolvency. It is understood and agreed that Funder shall arrange for and pay for the legal opinions referenced in this Clause 8.1. For the avoidance of doubt, the Funder acknowledges and agrees that its receipt of any such opinions will not hold up or otherwise result in any delay in the funding of any Tranche.

## 10.   REPRESENTATIONS AND WARRANTIES

10.1   Representations and Warranties of the Funder

The Funder hereby represents and warrants to the Claimants that at the execution of this Agreement:

(a)   it has full power and authority to enter into, has authorised and has obtained all necessary consents for the execution by it of, and performance by it under, the Transaction Documents, and that its obligations hereunder and thereunder are legal, valid and binding upon it; and

(b)   the execution, delivery and performance of the Transaction Documents has not resulted in and will not result in a breach of any provision of, or constitute a default under the Funder's:

(i)   constitutional or governing documents;

(ii)   any statute, law, order, rule or regulation of any relevant Governmental Authority; or

(iii)   any agreement to which it is a party or by which it is bound or to which any of its assets are subject.

10.2   Representations and Warranties of the Claimants

Each of the Claimants hereby jointly and severally represents and warrants to the Funder that at the execution of this Agreement:

(a)   it has full power and authority to enter into, has authorised and has obtained all necessary consents for the execution by it of, and performance by it under, the Transaction Documents, and that its obligations hereunder and thereunder are legal, valid and binding upon it in accordance with its terms;

(b)   the execution, delivery and performance of the Transaction Documents has not resulted in and will not result in a breach of any provision of, or constitute a default under:

(i)   in the case of Claimants other than individuals, their constitutional or governing documents;



DONZS00015670 Page 16 of 75

Plaintiff's Exhibit 552   p. 20 of 79

Private and Confidential

EXECUTION VERSION

(ii)     any statute, law, order, rule or regulation of any relevant Governmental Authority; or

(iii)    any material agreement to which it is a party or by which it is bound or to which any of its assets are subject.

(c)     no registration with, or consent or approval of, or any other action by any Governmental Authority or other Person is required in connection with the execution, delivery and performance of any of the Transaction Documents by it;

(d)     such Claimant has received independent legal advice on the terms and effect of the Transaction Documents;

(e)     the Claimants are the sole legal and beneficial owners of, and have good title to, the Claim free and clear of any (a) mortgage, pledge, lien, charge, hypothecation, right of set-off or counterclaim, security interest or other encumbrance, security agreement or trust securing any obligation of any person or arrangement of any kind; (b) purchase or option agreement or arrangement; (c) subordination agreement or arrangement; (d) agreements to create or effect any of the foregoing or which have a similar or analogous nature or effect, in each case other than as set forth in the Intercreditor Agreement or as previously disclosed to the Funder and/or the Nominated Lawyers;

(f)     such Claimant has not made or entered into any prior assignment, trust arrangement, security, sale, transfer or sub-participation or local law equivalent of its right, title or interest in the Claim and/or the Award, other than as set forth in the Intercreditor Agreement other than as previously disclosed to the Funder and/or the Nominated Lawyers;

(g)     such Claimant has not taken any steps or executed any documents which would materially or adversely affect the Claim or the recoverability of the Award other than as previously disclosed to the Funder and/or the Nominated Lawyers;

(h)     such Claimant has not engaged in any acts or conduct or made any material omissions, agreements or arrangements, that would result in the Funder receiving proportionately less payments or less favourable treatment in respect of the Claim or the Award than any other Claimants or litigant (including the Claimants) pursuing or enforcing such Claim or Award other than as previously disclosed to the Funder and/or the Nominated Lawyers;

(i)     such Claimant has not set off or agreed to set off any amounts against the Claim or the Award and no rights of set-off of, or similar rights against the Claimants exist which will permit any set-off of or counterclaim against

DONZS00015670 Page 17 of 75

Plaintiff's Exhibit 552   p. 21 of 79

Private and Confidential

EXECUTION VERSION

the Claim and/or the Award other than as set forth in the Intercreditor Agreement or as previously disclosed to the Funder and/or the Nominated Lawyers;

(j)    such Claimant has not received any written notice and is not otherwise to the best of its knowledge aware that the Claim or the Award or any portion thereof are subject to any Claim Impairment or is otherwise invalid or void, other than as previously disclosed to the Funder and/or the Nominated Lawyers;

(k)    such Claimant has no insolvency proceedings outstanding or to his, her or its knowledge, threatened in writing against it;

(l)    to the knowledge of such Claimant, such Claimant has disclosed to the Funder all documentation and other information in its possession or control relevant to the Claim and there is no information in the knowledge, possession or control of the Claimants or (in the case of Claimants other than individuals) any of its Affiliates or Representatives, that is or is reasonably likely to be material to the Funder's assessment of the Claim that has not been disclosed to the Funder, and the Claimant believes (and does not have, and has not been informed by any of its Representatives of, any belief to the contrary) that the Claim is meritorious and likely to prevail;

(m)    except for the actions relating to the Claim that have been brought by or against Chevron Corporation or its consultants or advisors, by or against Claimants or their lawyers, advisors, experts, consultants, representatives, or others pursuant to 28 U.S. Co. 1782 ("**1782 Actions**"), no proceedings of or before any Governmental Authority have been commenced by or against or, to the best of its' knowledge, are threatened against such Claimant, or to its knowledge any other Claimant, which is reasonably likely to materially adversely affect the Claim or the recoverability of the Award other than as previously disclosed to the Funder and/or the Nominated Lawyers;

(n)    there are no agreements (whether in writing or oral) between the Claimants and another Person to grant a contingent interest in, or to grant a right to payment determined by reference to, the Award or the proceeds thereof in favour of any Person, except for Persons who are Parties to, and have executed, the Intercreditor Agreement;

(o)    such Claimant has the full power and authority to bring this Claim and to instruct the Nominated Lawyers; and

(p)    such Claimant has not failed to disclose to the Funder any fact or facts of which he, she or it is aware that would, if the Funder had been so advised,

DONZS00015670 Page 18 of 75

Private and Confidential

EXECUTION VERSION

be reasonably expected, individually or in the aggregate, to have led the Funder not to enter into this Agreement.

10.3    If any of the representations and warranties given herein by the Claimants are untrue in any material respect as of the date of this Agreement, the Funder's remedies include but are not limited to the termination of this Agreement pursuant to Clause 11.1 and the right to claim damages against the Claimants.

## 11.    TERMINATION AND CONSEQUENCES OF BREACH BY THE CLAIMANTS

11.1    This Agreement may, at the option of the Funder, terminate upon five (5) Business Days' written notice to the Claimants by the Funder of the occurrence of any of the following events:

   (a)    any breach of a material condition of this Agreement, including but not limited to any material non-compliance with Clauses 5.1, 7.9, 10.3, and 13.1 herein; or

   (b)    any material breach or non-compliance with any of the representations and warranties granted by any of the Claimants in Clause 10.2;

in each case, that has a material adverse impact on the value of the Claim and the Recovery Amount.

11.2    This Agreement may be terminated at the option of the Claimants on five (5) Business Days' written notice to the Funder if the Funder fails to fund the Initial Tranche Amount on or prior to the Initial Funding Date.

11.3    Any termination of this Agreement shall be without prejudice to the right of either Party to claim damages in relation to this Agreement. Clauses 7 and 12 of this Agreement shall survive its termination.

11.4    The Parties agree that in the event of termination of this Agreement pursuant to Clause 11.1, the assessment of damages shall be referred to and finally determined by arbitration administered in accordance with Clause 23.

11.5    Following termination of this Agreement, the Funder shall be entitled, in order to protect its own interest in relation to the Funding Agreement, to keep copies of the Documentation, including Confidential Information provided to it by the Nominated Lawyers pursuant to instructions given to the Nominated Lawyers under Clause 13.1, provided that it adheres to the confidentiality requirements under Clause 12.

## 12.    CONFIDENTIALITY

12.1    Exclusive Ownership of Information by Disclosing Party. The Recipient agrees and acknowledges that all Confidential Information provided to it is and shall remain at all times the exclusive property of and owned by the Disclosing Party (or its Affiliates or contract counterparties, as the case may be), and that the Recipient's use or awareness of

DONZS00015670 Page 19 of 75

Plaintiff's Exhibit 552   p. 23 of 79

Private and Confidential

EXECUTION VERSION

such Confidential Information shall create no rights, at law or in equity, in the Recipient in or to such Information, or any aspect or embodiment thereof. Neither the execution of this Agreement, nor the furnishing of any Confidential Information hereunder, shall be construed as granting, whether expressly or by implication, estoppel or otherwise, any license to distribute or title to any patent, trademark, service mark, business and trade secret or other proprietary right to such Confidential Information, or to use such Confidential Information for any purpose other than as specified in this Agreement or to constitute a waiver of any attorney-client privilege or work product protection or any other applicable or available similar privilege or protection.

12.2   Non-Disclosure of Information. The Recipient shall not for any reason, during the term of this Agreement and for a period of seven (7) years following termination of this Agreement, disclose, use, reveal, report, publish, transfer, or make available, directly or indirectly, to any Person other than its Representatives, any Confidential Information or Common Interest Material provided to it except in connection with the performance of its obligations under this Agreement or as permitted by the Disclosing Party; provided, that it is agreed and understood that, when the Claimants are the Recipients, the Claimants may disclose Confidential Information and/or Common Interest Material to (i) Torvia Limited, the Minority Funders or any potential Minority Funders or (ii) any other sources of financing if the Funder declines to fund a Tranche pursuant to Clause 2.1(d) or if the Funder has fully funded hereunder and the Claimants are seeking additional financing through potential sources of financing pursuant to Clause 19; provided further, that Torvia Limited, any such Minority Funders, potential Minority Funders or sources of financing shall have entered into an agreement with the Claimants to treat such Confidential Information and/or Common Interest Material confidentially on terms no less restrictive than as set forth in this Agreement.

12.3   Public Notices. For the avoidance of doubt, no press release or other announcement concerning the existence of this Agreement, the funding of the Claim under this Agreement, or the identity of the Funder or its Affiliates, shall be made by the Claimants or the Funder without the prior written consent of the other.

12.4   Non-Disclosure of Funder Information. Without limiting the generality of Clause 12.2, the Claimants agree that they and their Representatives shall keep confidential all Funder Information that they receive and they shall not disclose such information to third parties without the prior written consent of the Funder.

12.5   Confidentiality Procedures. The Recipient shall ensure that the Confidential Information it receives is not divulged or disclosed to any Person except its Representatives who have a "need to know" such information. The Recipient shall be solely responsible for its and its Representatives' failure to comply with, and shall ensure its Representatives' compliance with, the provisions of this Agreement.

12.6   Covenants/Severability. The Recipient recognizes and agrees that (i) the covenants and agreements contained in this Agreement are reasonable and necessary to protect and preserve the interests and properties of the Disclosing Party, (ii) irreparable loss and damage will be suffered by the Disclosing Party should the Recipient breach any

DONZS00015670 Page 20 of 75

Plaintiff's Exhibit 552   p. 24 of 79

Private and Confidential

EXECUTION VERSION

such covenants and agreements, (iii) each of such covenants and agreements is separate, distinct and severable from the other and remaining provisions of this Agreement, (iv) if any such covenant is found by a court of competent jurisdiction to be overly broad in any respect, the Recipient desires and directs that such covenant be amended by such court to a reasonable breadth, and (v) in addition to other remedies available to it, the Disclosing Party shall be entitled to both temporary and permanent injunctions to prevent a breach or contemplated breach by the Recipient or any of its Representatives of any of such covenants or agreements.

12.7   No Reproduction. The Recipient further agrees not to reproduce or in any manner copy the Confidential Information, in whole or in part, except for its or any of its Representatives' own internal use for the purpose of this Agreement and then only under circumstances designed to ensure the full and complete protection of the Confidential Information as contemplated hereby.

12.8   Return of Confidential Information. The Claimants agree that, within thirty (30) days following the termination of this Agreement, they shall destroy or return all Funder Information to the Funder, and the Claimants shall not for any reason retain or use any such Funder Information or any copies thereof.

12.9   Judicial and Official Disclosure Requests. In the event one of the Parties receives a request, including without limitation a subpoena, civil investigative demand or similar process, for the production of Confidential Information (a "**Request**"), that Party, before complying with such Request, will first promptly provide written notification, including a copy of the Request, to the other Party. If, upon such notice, any Party elects to contest the requested disclosure (all such contests being at the contesting Party's expense and under its control), no Party shall make any disclosure until such time as a final, non-appealable or non-stayed order has been entered compelling such disclosure. Should the Disclosing Party not contest the required disclosure, the Recipient shall not have any obligation to do so; the Recipient may, however, contest the required disclosure even if the Disclosing Party elects not to do so. If notice to the Disclosing Party is prohibited by law, the Recipient will make a good faith effort to contest the disclosure if appropriate and to obtain agreement for confidential treatment of the Confidential Information prior to Recipient's disclosure.

## 13.   INFORMATION AND PRIVILEGE

13.1   The Claimants hereby instruct and, to the extent further instructions are needed, undertake to instruct, as part of the conditions precedent to this Agreement, the Nominated Lawyers (and will direct any future attorneys representing them) to, among other things:

(a)   provide to the Funder copies of any and all material Documentation together with all material Confidential Information, that the Nominated Lawyers may receive at any time while engaged by the Claimants, from the Claimants, the Defendant or from any other third party in relation to

DONZS00015670 Page 21 of 75

Plaintiff's Exhibit 552   p. 25 of 79

Private and Confidential

EXECUTION VERSION

the Claim save insofar as such Documentation is already in the possession or control of the Funder;

(b)     provide to the Funder any material document or material written advice which the Nominated Lawyer provides to the Claimants;

(c)     notify the Funder of any material verdict, award, settlement, discontinuance or ending with respect to the Claim;

(d)     respond to reasonable requests for material information from the Funder; and

(e)     call the Funder prior to any delivery or payment to verify the amount due to the Funder under this Agreement.

13.2    The Parties agree that they have a "common legal interest" in the Claim, this Agreement, and any discussion, evaluation and negotiation and other communications and exchanges of information relating thereto.

13.3    Notwithstanding any other contrary provision of this Agreement, the Parties agree that any Common Interest Material shall at all times remain subject to all applicable privileges and protections from disclosure, including the attorney-client privilege or any similar privilege in any jurisdiction including, for the avoidance of doubt, legal professional privilege and/or litigation privilege, common interest privilege, work-product immunity doctrine, and any applicable rules of professional secrecy in any jurisdiction, it being the express intent of the Parties and their Affiliates to preserve intact to the fullest extent applicable, and not to waive, by virtue of this Agreement, any action contemplated under this Agreement, or otherwise, in whole or in part, any and all privileges and immunities to which Common Interest Material, or any part of it, are, may be subject or may become subject in the future. It is the good faith belief of the Disclosing Party that common interest privilege attaches to the Common Interest Material; no disclosure of the Common Interest Material would occur without the protection of that privilege.

13.4    The Parties further acknowledge and agree that the Claimants' undertakings set out in Clause 13.1 are continuing and are part of their duty to cooperate and are of the essence of the Agreement and a condition thereof and that any material breach of that obligation to cooperate shall entitle the Funder to terminate this Agreement pursuant to Clause 11.1.

13.5    Notwithstanding any other contrary provision of this Agreement or otherwise, the Parties agree that the Claimants shall have no obligations to make, and the Nominated Lawyers may not make, any disclosure or deliveries under or in respect of this Clause 13 or otherwise unless such disclosure or delivery, as applicable, is made in furtherance of the common interest and does not adversely affect in any way the confidentiality of such privileged information.

11301582.20
35805-2001

DONZS00015670 Page 22 of 75

Plaintiff's Exhibit 552   p. 26 of 79

Private and Confidential

EXECUTION VERSION

13.6    For the avoidance of doubt, nothing in this Agreement shall create any obligation on the Claimants or the Nominated Lawyers to translate any Documentation or any other materials.

## 14.    NOTICES

14.1    All notices, reports, legal service and other communications ("**notices**") required or permitted under this Agreement shall be in writing. Notices shall be delivered by hand or sent by internationally recognized courier, fax, email or other reliable means of electronic communication to: (i) the Funder, at the address of the Funder set out in Schedule 1, or (ii) to the Claimants, at the address of each Claimants' Representative set out in Schedule 1, or at such other address as may be specified hereafter in writing by a Party to the other Parties in accordance with this Clause 14.1.

14.2    Any notice hereunder shall be deemed to have been delivered and received (i) on the date delivered, if delivered personally by hand or sent by courier, (ii) on the date sent if sent by fax, email or other form of electronic communication, and (iii) two (2) Business Days (or five (5) Business Days if sent internationally) after mailing, if placed in the custody of an internationally recognized courier service, prepaid, with a request for a confirmation of delivery.

14.3    Any notice sent under this Clause 14 that is sent by fax, email or other electronic communication must be confirmed by sending a hard paper copy thereof to the recipient by hand delivery or by courier, provided, the effective date of such notice shall be as specified in Clause 14.2 above. If the recipient actually received the fax, email or other electronic form of a notice, then the notice shall be deemed to have been given and delivered even if recipient never receives a hard copy as called for in this clause.

14.4    Any notice required to be provided to the Claimants pursuant to the Intercreditor Agreement shall be provided in accordance with Clause 8 therein.

## 15.    NON-CIRCUMVENTION

15.1    Non-Circumvention. The Recipient agrees that it shall not directly or indirectly interfere with, circumvent, or attempt to circumvent, avoid, by-pass, or obviate the interest of the Disclosing Party in the businesses or relationships provided in the disclosures contemplated hereby that constitute Confidential Information of the Disclosing Party.

## 16.    PARTIES' RELATIONSHIP AND SERVICES

16.1    Independent Actors. The Claimants and the Funder are independent actors. This Agreement does not create any joint venture, partnership or any other type of affiliation, nor create a joint ownership of the Claim, for any purposes, including for U.S. federal, state and local income tax purposes.

DONZS00015670 Page 23 of 75

Private and Confidential

EXECUTION VERSION

16.2     No Practice of Law. The Funder is engaged in an investment business that has as its principal focus assets that are connected to litigation, arbitration or mediation. The Funder is not a law firm and neither it nor its Affiliates are engaged in the practice of law or any other professional activity such as accounting with respect to Claim or otherwise. The Claimants agree that they will not rely on the Funder or its Affiliates for legal, accounting or other professional advice.

16.3     Independent Decisions. The Funder agrees that it will not seek to give or interfere with counsel's giving of legal advice. Further, Funder commits that it will not constrain, coerce or otherwise pressure Claimants to take any action which they believe is adverse to their interests including negotiating or settling the Claim for an amount less than or in a manner other than Claimant's believe to be in their best interests.

16.4     No Other Relationship. The Parties agree that nothing in this Agreement shall give rise to or be construed to create a fiduciary, lawyer-client, agency or other relationship between the Parties or between their counsel, notwithstanding the information or observations or opinions that may be shared between them.

## 17.     LIMITATION OF LIABILITY

17.1     Subject to Clause 17.2, the liability of the Funder under this Agreement is limited to payment of the Expenses pursuant to the provisions herein.

17.2     There shall be no other liability of the Funder under this Agreement or related to it, or related to its activities in connection with this Agreement, except for (i) gross negligence, wilful misconduct, fraud or reckless activity amounting to fraud and/or (ii) any breach of the provisions of Clause 12 by the Funder or its Representatives that has a material adverse effect on the Claim or the Claimants. This limitation of liability is absolute and excludes liability, by way of illustration and not limitation, for negligence, and for any damages that may constitute compensatory damages, lost profit, or punitive damages. This limitation of liability extends to the Funder and its Representatives and their successors and assigns.

17.3     Any claim by the Claimants in breach of the limitation of liability provided by this Clause 17.3 shall constitute a breach of contract entitling the Funder to recovery of damages and its costs and expenses incurred in relation thereto.

## 18.     INDEMNIFICATION

18.1     The Claimants and the Funder (in the case of the Funder, with respect to Clauses 18.1(i), 18.1(iii) and 18.1(v) below only) each agree to indemnify, defend and hold each other and their respective Representatives ("**Indemnitees**") free and harmless from and against any and all actions, losses, costs, charges, damages, claims, sanctions, penalties and expenses (including attorneys' fees and costs of experts and advisors) which any Indemnitee has sustained or may sustain at any time for reason of: (i) the breach of, inaccuracy of, or failure to comply with, or the existence of any facts resulting in the inaccuracy of, any of the warranties, representations, or covenants of such party

23

DONZS00015670 Page 24 of 75

Plaintiff's Exhibit 552   p. 28 of 79

Private and Confidential

EXECUTION VERSION

contained in this Agreement or in any exhibits or documents, delivered by such party pursuant hereto or in connection with this Agreement or the Claim; and/or (ii) any costs, sanctions, awards or penalties assessed or awarded against the Funder in connection with the Claim other than those relating to a breach of warranty or representation of the Funder or caused by an act of the Funder that constitutes fraud, negligence or misconduct; and/or (iii) any claim by any agent or broker for compensation on account of the transactions contemplated by this Agreement, unless otherwise agreed in writing by the Parties; and/or (iv) any legal proceedings connected with the Claim; and/or (v) any other activity reasonably necessary to address claims, charges or actions concerning the Funder's activities, conduct or business either generally or in connection with the Claim.

18.2   Any Party who receives notice of a claim for which it will seek indemnification ("**Indemnified Party**") hereunder shall promptly notify the Party from which the Indemnified Party will seek indemnification ("**Indemnifying Party**") of such claim in writing.   The Indemnifying Party shall have the right to assume the defence of such action at its cost with counsel reasonably satisfactory to the Indemnified Party but shall not have the right to settle or compromise any claim or action for anything other than monetary payments without consent of the Indemnified Party.   The Indemnified Party shall have the right to participate in such defence with its own counsel at its cost.

## 19.   POST-COMMITMENT FUNDING

19.1   If the Claimants require additional funds to pay for the Expenses or otherwise require funds for the pursuit of the Claim after the Capital Commitment has been fully funded by the Funder on the terms set forth in this Agreement and the balance of the Trust Account is equal to or less than $2,000,000, the Claimants hereby agree that they will notify and discuss with the Funder in good faith the Funder's participation in the future funding of the Claim and the proposed terms and conditions of such funding, for a period of thirty (30) days prior to discussing the same with other third parties.

19.2   Where the Funder has not agreed to the terms and conditions of the funding arrangements discussed with the Claimants in accordance with Clause 19.1, then the Claimants shall have the right to seek funding from one or more third parties to pay for the Expenses or otherwise provide funding for the Claim provided that the Funder shall have the opportunity to compete in all respects in a fair and equitable manner, and within the same time constraints, with each third party to provide funding and that such additional funding is on a basis that is consistent with the Intercreditor Agreement.

## 20.   TAX MATTERS

20.1   The Claimants shall attempt, in good faith, to structure the Award in the most tax-efficient manner practicable so that there are no unnecessary deductions or withholdings (a "**Tax Efficient Structure**"), and will consider, in good faith, reasonable Tax Efficient Structures for payment of the Award recommended by tax counsel or advisors to the Claimants in that regard, and will consider, in good faith, commercially reasonable methods (including a trust) to effect the foregoing. The Claimants and the Funder hereby agree that their respective tax counsel and/or advisors shall consult with each other in

DONZS00015670 Page 25 of 75

order to implement a Tax Efficient Structure and that all reasonable fees and expenses incurred in the implementation of a Tax Efficient Structure shall be paid by the Funder. For greater certainty, any actions by the Defendants or a failure of the Defendants to cooperate in the implementation by the Claimants' of a Tax Efficient Structure shall not constitute a breach of the Claimants' obligations hereunder. In the event that the Claimants breach this Clause 20.1, the Funder shall be entitled to bring a suit against the Claimants for damages caused by such breach. In the event that the Funder has actually funded the full $15,000,000 Capital Commitment, then and only then shall Clauses 20.1 and 20.3 apply.

20.2    Except for Jurisdiction Specific Exit Taxes, the Claimants shall make all payments under or in connection with this Agreement without any deduction or withholding for or on account of any Tax, save only as may be required by applicable law. If any such deduction or withholding is required by law to be made, the Claimants shall (a) promptly notify the Funder upon becoming aware that it must make such a deduction or withholding; (b) pay to the relevant authorities (within the time allowed) the full amount required to be deducted or withheld (including the full amount required to be deducted or withheld from any additional amount paid by the Claimants to the Funder under this clause; (c) promptly provide an official receipt (or a certified copy or such other evidence reasonably acceptable to the Funder), evidencing the relevant withholding and payment to such authorities; and (d) except for Jurisdiction Specific Exit Taxes, pay to the Funder such additional amounts as are necessary to ensure that (after making any such withholdings or deductions) the net amount actually received by the Funder in respect of the payment due from the Claimants equals the amount which the Funder would have received if no such withholdings or deductions had been required.

20.3    Except with respect to any Tax assessed on the Funder under the laws of the jurisdiction in which it is incorporated and any Tax which has already been the subject of a gross up pursuant to Clause 20.1, if the Funder is or will be subject to any liability or required to make any payment, or receives a lesser amount as a result of any withholdings or deductions for or on account of Tax in relation to a sum received or receivable (or any sum deemed for the purposes of Tax to be received or receivable) under this Agreement, the Claimants shall, within fifteen (15) Business Days of demand by the Funder, pay to the Funder an amount equal to the loss, liability, reduction in amounts paid to Funder or cost which the Funder determines will be or has been (directly or indirectly) suffered for or on account of Tax by the Funder in respect of any payment made (or deemed made) by the Claimants under or in connection with this Agreement (the "**Additional Amount**"), which amount will be sufficient to ensure that the total amount received by the Funder, after deducting for Taxes (including Taxes on the Additional Amount), will be the same as if no such Taxes had been imposed.

## 21.    EXECUTION AND OBLIGATIONS OF FDA

The FDA, the sole beneficiary of the Claim as a result of the designation by the Claimants, is executing this Agreement to bind the Claimants hereto. The FDA agrees that it shall take all actions legally available to it to perform the obligations of the

25

DONZS00015670 Page 26 of 75

Private and Confidential

EXECUTION VERSION

Claimants hereunder and shall take no actions inconsistent with such obligations. For the avoidance of doubt, the FDA will (i) pay to the Funder the Recovery Amount in accordance with this Agreement and the Intercreditor Agreement (provided that such obligation shall terminate and expire and be of no force or effect immediately upon establishment of the Trust and assignment thereto of the entire interest of the FDA in the Claim) and (ii) perform the obligations under Clauses 7.5 and 8. The FDA hereby represents and warrants to the Funder that (i) it has full power and authority to enter into, has authorised and has obtained all necessary consents for the execution by it of, and performance by it under, this Agreement, and that its obligations hereunder and thereunder are legal, valid and binding upon it in accordance with its terms and (ii) the execution, delivery and performance of this Agreement has not resulted in and will not result in a breach of any provision of, or constitute a default under the FDA's (A) constitutional or governing documents; (B) any statute, law, order, rule or regulation of any relevant Governmental Authority; or (C) any agreement to which it is a party or by which it is bound or to which any of its assets are subject.

## 22. MISCELLANEOUS

22.1    Entire Agreement; Binding Effect; Assignment; Participation. This Agreement shall constitute the entire agreement between the Parties, and shall supersede all prior agreements, understandings and negotiations between the Parties with respect the subject matter hereof. To the extent that the Parties entered into any earlier agreements (other than confidentiality agreements), those agreements are hereby terminated and this Agreement and the Intercreditor Agreement shall be the sole agreements governing the Parties' relationship. With respect to prior confidentiality agreements, those agreements continue to apply except that to the extent there is a conflict between this Agreement and prior confidentiality agreement, this Agreement will control. This Agreement shall inure to the benefit of, and shall be binding upon, the Parties hereto and their respective successors, assigns, and legal representatives. All representations, warranties, covenants and indemnities made herein shall survive the execution and delivery of this Agreement. Neither this Agreement, nor any rights, interests, obligations and duties arising hereunder, may be assigned or otherwise conveyed (a) by the Claimants except as expressly provided herein without the express consent in writing of the Funder or (b) by the Funder except as expressly provided herein without the express consent in writing of the Claimants; provided that the Funder may (i) assign its rights and obligations under this Agreement to an Affiliate without the express consent of the Claimants and (ii) provide participations in or to all or a portion of its rights and obligations under this Agreement.

22.2    Amendments; Waivers. Any amendment or modification of any provision of this Agreement must be in writing and bear the signature of a duly authorized representative of each of the Funder and the Claimants' U.S. Representative. No term or provision of this Agreement may be waived except in a written instrument that bears the signature of a duly authorized representative of each of the Funder and the Claimants' U.S. Representative. No delay on the part of either Party in exercising any right, power or remedy under this Agreement shall operate as a waiver thereof, and no single or partial

26

DONZS00015670 Page 27 of 75

Private and Confidential

EXECUTION VERSION

exercise of any right, power or remedy by any Party hereunder shall preclude any further exercise thereof.

22.3  Severability. If any term, provision, covenant or condition of this Agreement, or the application thereof to any person, place or circumstance, shall be held to be invalid, unenforceable or void, the remainder of this Agreement and such term, provision, covenant or condition as applied to other persons, places and circumstances shall remain in full force and effect.

22.4  Further Assurance. The Parties will forthwith, and from time to time, execute and do all deeds, documents and things which may be necessary or advisable to give full effect to the intent of this Agreement.

22.5  Spanish Translation. The Parties will execute English and Spanish versions of this Agreement. In the event of a conflict between the English version of this Agreement and the Spanish version, the English version shall control.

## 23.  GOVERNING LAW AND ARBITRATION

23.1  Apart from Clause 8.5, this Agreement is governed by and shall be construed in accordance with the laws of England without giving effect to its conflict of laws rules. Clause 8.5 of this Agreement is governed by and shall be construed in accordance with the laws of the State of New York without giving effect to its conflict of laws rules.

23.2  Any dispute, controversy or claim arising out of or in connection with this Agreement, including any question regarding its formation, existence, validity, interpretation, performance, breach or termination and including any dispute about the value of the Award, shall (to the exclusion of any other forum) be referred to and finally resolved by arbitration administered by the International Centre for Dispute Resolution in accordance with its International Arbitration Rules, if such parties have been unable to resolve the dispute through negotiation, mediation or otherwise within thirty (30) days after one party has received written notice of a dispute from the other party in accordance with Clause 14.

23.3  The arbitration shall be conducted before a panel of three arbitrators, each of whom is a fluent speaker and reader of both English and Spanish.

23.4  Despite any other provision of this Clause 23, if a dispute is with respect to the value of a non-cash Award and the Parties have been unable to resolve such dispute within fifteen (15) days after one Party has received written notice of the dispute from another Party, the arbitration shall be conducted by one arbitrator agreed to by the Parties, acting reasonably, who is an accountant at an internationally recognized accounting firm or a professional valuator, or, failing agreement, an accountant chosen by the International Centre for Dispute Resolution at an internationally recognized accounting firm (other than Ernst & Young) or a professional valuator chosen by the International Centre for Dispute Resolution. The arbitration shall be administered by the International Centre for Dispute Resolution in accordance with its International Arbitration Rules,

DONZS00015670 Page 28 of 75

Plaintiff's Exhibit 552   p. 32 of 79

except that the arbitrator shall conduct the arbitration in an expedited manner and render a decision within ninety (90) days after the arbitrator is appointed.

23.5    The seat, or legal place, of arbitration shall be London, England, but the arbitration proceedings shall physically occur in George Town, Cayman Islands.

23.6    Each Party to this Agreement shall, upon the written request of the other Party, promptly provide the other Party with copies of all documents on which the producing Party may rely in support of or in opposition to any claim or defense and a report of any expert whom the producing Party may call as a witness in the arbitration hearing. At the request of a Party to this Agreement, and upon the showing of good cause, the arbitrators shall have the discretion to order production by any other Party or by a third party of other documents relevant to any claim or defense. Each Party shall be entitled to depose a maximum of three witnesses (which number may not be increased by the arbitral tribunal), plus all experts designated to be witnesses at the arbitration. The depositions shall be held within thirty (30) days of the making of a request and shall be limited to a maximum of six hours per deposition. All objections are reserved for the arbitration hearing, except for objections based on privilege and proprietary or confidential information.

23.7    In addition to the requirement to arbitrate set forth above as the Parties' exclusive remedy for disputes, the Parties expressly agree and covenant not to take the position that any Party is subject to personal jurisdiction or venue in the United States.

23.8    Any attempt by either Party to seek relief or remedies in any other forum shall constitute a breach of this Agreement and entitle the other Party to damages, equitable relief and full indemnification against all costs and expenses incurred in connection therewith.

## 24.   COUNTERPARTS

24.1    This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and both of which, taken together, shall constitute one agreement binding on the Parties. Copies of executed counterparts may be exchanged by facsimile, email or other electronic transmission, and such an exchange shall constitute effective delivery by the Parties of their respective executed counterparts.

**[Remainder of Page Intentionally Left Blank]**

DONZS00015670 Page 29 of 75

Plaintiff's Exhibit 552   p. 33 of 79

## SCHEDULE 1

### TRANSACTION DETAILS

1.    **CLAIMANTS**

Listed below is a list of the plaintiffs in the matter *Maria Aguinda y Otros v. Chevron Corporation* and their beneficiaries with claims in a popular action against the Defendants, initiated under Ecuadorian law, and currently pending in the Superior Court of Nueva Loja, Ecuador or otherwise in the courts of the Republic of Ecuador.

| El Frente de Defensa de la Amazonia (the "**Amazon Defense Coalition**") | **Claimants** |
|---|---|
| | Daniel Carlos Lusitande Yaiguaje; |
| | Venancio Freddy Chimbo Grefa; |
| | Miguel Mario Payaguaje Payaguaje; |
| | Teodoro Gonzalo Piaguaje Payaguaje; |
| | Simón Lusitande Yaiguaje; |
| | Armando Wilmer Piaguaje Payaguaje; |
| | Javier Piaguaje Payaguaje; |
| | Fermín Piaguaje; |
| | Luis Agustín Payaguaje Piaguaje; |
| | Emilio Martín Lusitande Yaiguaje; |
| | Reinaldo Lusitande Yaiguaje; |
| | María Victoria Aguinda Salazar; |
| | Carlos Grega Huatatoca; |
| | Catalina Antonia Aguinda Salazar; |
| | Lidia Alexandra Aguinda Aguinda; |
| | Clide Ramiro Aguinda Aguinda; |
| | Luis Armando Chimbo Yumbo; |
| | Beatriz Mercedes Grefa Tanguila; |
| | Lucio Enrique Grefa Tanguila; |
| | Patricio Wilson Aguinda Aguinda; |
| | Patricio Alberto Chimbo Yumbo; |
| | Segundo Ángel Amanta Milán; |
| | Francisco Matías Alvarado Yumbo; |
| | Olga Gloria Grefa Cerda; |
| | Narcisa Tanguila Narváez; |
| | Bertha Yumbo Tanguila; |
| | Lucrecia Tanguila Grefa; |
| | Francisco Víctor Tanguila Grefa; |
| | Rosa Teresa Chimbo Tanguila; |
| | María Clelia Reascos Revelo; |
| | Heleodoro Pataron Guaraca; |
| | María Viveros Cusangua; |

1

Plaintiff's Exhibit 552   p. 34 of 79

|  | Lorenzo José Alvarado Yumbo;<br>Francisco Alvarado Yumbo;<br>José Gabriel Revelo Llore;<br>Luisa Delia Tanguila Narváez; and<br>José Miguel Ipiales Chicaiza. |
|---|---|

## 2.   FUNDING OBLIGATIONS

2.1   The following fees, disbursements, charges and costs (the "**Expenses**") related to pursuing the Claim or the settlement or enforcement of any Award shall be funded from the Capital Commitment:

   (a)   fees and out-of-pocket expenses of lawyers (including, without limitation, the Nominated Lawyers and the other Active Lawyers), advisors, experts, witnesses and others (and, if necessary for the case and ethically permissible, fact witnesses) in accordance with their respective engagement agreements, in each case if and to the extent that such fees and expenses are approved by James Tyrrell (the lead partner at Patton Boggs LLP) (or if Patton Boggs LLP is no longer the Nominated Lawyers or James Tyrrell is no longer able to serve in such capacity, then the Nominated Lawyers Representative) and the Claimants' U.S. Representative, and paid through the Nominated Lawyers;

   (c)   costs associated with any court proceeding or arbitral tribunal, including tribunal filing fee and arbitrators' fees and expenses, in each case if and to the extent that such fees and expenses are approved by James Tyrrell (or if Patton Boggs LLP is no longer the Nominated Lawyers or James Tyrrell is no longer able to serve in such capacity, then the Nominated Lawyers Representative) and the Claimants' U.S. Representative, and paid through the Nominated Lawyers;

   (d)   reasonable fees and expenses of Torys LLP (and its Ecuador agent counsel) as Funder's counsel and of Ernst & Young as Funder's tax advisors;

   (e)   fees and expenses relating to counterclaims or other claims (including 1782 Actions) by or against the Claimants or any of their lawyers, advisors, experts, consultants or representatives, in each case if and to the extent that such fees and expenses are approved by James Tyrrell (or if Patton Boggs LLP is no longer the Nominated Lawyers or James Tyrrell is no longer able to serve in such capacity, then the Nominated Lawyers Representative) and the Claimants' U.S. Representative, and paid through the Nominated Lawyers; and

   (f)   fees and expenses of Claimants' counsel and Claimants Representatives' counsel in connection with entry into this Agreement or the post-execution operation thereof, in each case if and to the extent that such fees and expenses are approved by James Tyrrell (or if Patton Boggs LLP is no longer the Nominated Lawyers or James Tyrrell is no longer able to serve in such capacity, then the Nominated Lawyers Representative).

2

DONZS00015670 Page 31 of 75

Plaintiff's Exhibit 552   p. 35 of 79

Private and Confidential

EXECUTION VERSION

2.2  Without prejudice to any other provision of this Agreement and for the avoidance of doubt, Expenses shall not include:

   (a)  any expenses of the Claimants themselves not referred to in 2.1(a) through 2.1(e) above;

   (b)  investment banking and advisory fees not referred to in 2.1(a) through 2.1(e) above;

   (c)  taxes (other than value added tax (VAT) or other taxes that are required to be paid to service providers under the laws of the applicable jurisdiction); and

   (d)  fees or expenses relating to costs or damages awards against the Claimants.

## 3.  TERMS

   (a)  Effective Date: October 31, 2010

   (b)  Nominated Lawyers: Patton Boggs LLP

   (c)  Active Lawyers: (1) Patton Boggs LLP, (2) Motley Rice LLP, (3) Emery, Celli, Brinckerhoff & Abady, LLP, (4) Donziger & Associates, (5) Pablo Estenio Fajardo Mendoza, Esq.

   (c)  Capital Commitment: US$15,000,000

   (d)  Initial Funding Date: November 1, 2010

   (e)  Initial Tranche Amount: US$4,000,000

   (f)  Second Tranche Amount: US$5,500,000

   (g)  Third Tranche Amount: US$5,500,000

   (h)  Funding Compensation Percentage: 5.545%, unless the Funder does not agree to fund a Tranche requested pursuant to a Funding Notice in accordance with Clause 2.1(d), in which case Funding Compensation Percentage means the rate equal to the product of (a) 5.545%; and (b) a fraction, (i) the numerator of which is the total amount of the Capital Commitment actually funded by the Funder in accordance with Clause 2 and (ii) the denominator of which is the total amount of the Capital Commitment

   (i)  Settlement Amount: US$1,000,000,000

   (j)  Priority of Payments if Net Recoveries are less than US$1,000,000,000:  if Net Recoveries are less than US$1,000,000,000, then the Funder shall be entitled to (1) 0% of the initial US$2,500,000 of Net Recoveries available for payment under the Intercreditor Agreement; (2) 98.25% of each dollar of Net Recoveries



DONZS00015670 Page 32 of 75

Plaintiff's Exhibit 552   p. 36 of 79

Private and Confidential

EXECUTION VERSION

available for payment under the Intercreditor Agreement in excess of US$2,500,000, until the Funder shall have received an amount equal to the total amount of the Capital Commitment actually funded by the Funder in accordance with Clause 2; and (3) 78.25% of each dollar of Net Recoveries available for payment under the Intercreditor Agreement thereafter, until the Funder has received the Recovery Amount.

**4.     DESCRIPTION OF CLAIM**

4.1     Anticipated and unanticipated activities related to the Maria Aguinda y Otros v. Chevron Corporation proceeding, any appeals from the judgement of the Superior Court of Nueva Loja, Ecuador, enforcement proceedings, settlement initiatives and related matters, counterclaims or claims (including the 1782 Actions) by or against the Claimants, their lawyers, experts, advisors, consultants or Representatives.

**5.     NOTICE ADDRESSES FOR CLAIMANTS' REPRESENTATIVES**

5.1     Notice Address for Steven R. Donziger:

> c/o 245 West 104th Street, #7D
> New York, New York 10025

5.2     Notice Address for Pablo Estenio Fajardo Mendoza, Esq.:

> _____

> _____

> _____

5.3     Notice Address for Luis Francisco Yanza Angamraca:

> _____

> _____

> _____

5.4     Notice Address for El Frente de Defensa de la Amazonia:

> _____

> _____

> _____

5.5     Notice Address for Funder:

11301582.20
35805-2001

4

DONZS00015670 Page 33 of 75

Private and Confidential

EXECUTION VERSION

4th Floor, Century Yard, Cricket Square, Elgin Avenue
P.O. Box 32322
Grand Cayman KY1-1209
Cayman Islands

5

DONZS00015670 Page 34 of 75

Private and Confidential

EXECUTION VERSION

## SCHEDULE 2

### CALCULATION OF RECOVERY AMOUNT

1.1     The Funder shall be entitled to receive the portion of the total proceeds of the Award (the **"Recovery Amount"**) that is equal to the product of the Funding Compensation Percentage and the Net Recoveries; provided that, if the Claimants settle the Claim for an amount that is less than Settlement Amount without the Funder's consent, the Net Recoveries shall be deemed to be the Settlement Amount; and provided further that, if an Intercreditor Indemnity Amount is payable pursuant to Clause 7.1, Net Recoveries shall include the full amount of such Intercreditor Indemnity Amount.

DONZS00015670 Page 35 of 75

Plaintiff's Exhibit 552   p. 39 of 79

Private and Confidential

EXECUTION VERSION

## SCHEDULE 3

### DEFINITIONS

"**1782 Actions**" shall have the meaning set out in Clause 10.2(m).

"**Active Lawyers**" shall mean the lawyers conducting the Claim on behalf of the Claimants being specified as such in Schedule 1 or other firms selected by the Claimants.

"**Affiliate**" shall mean an associate within the meaning of section 435 of the Insolvency Act 1986.

"**Agreement**" shall mean this Funding Agreement, as amended, modified or supplemented from time to time.

"**Assignment Agreement**" shall have the meaning set out in Clause 8.2.

"**Award**" shall mean (A) any and all gross, monetary awards, damages, recoveries, judgments or other property or value awarded, paid or otherwise recovered or reduced to a debt owed on account or as a result, by virtue (directly or indirectly) of, or in any other way related to, the Claim, whether by negotiation, arbitration, mediation, diplomatic efforts, lawsuit, settlement, or otherwise, and includes legal and/or equitable rights, title and interest in and/or to any of the foregoing, whether in the nature of ownership, lien, security interest or otherwise, plus (B) any recovered interest, penalties, attorneys' fees and costs in connection with any of the foregoing, plus (C) any consequential, actual, punitive, exemplary or treble damages awarded or recovered on account thereof, plus (D) any interest awarded or later accruing on any of the foregoing, plus (E) any recoveries against attorneys, accountants, experts or officers in connection with any of the foregoing or the pursuit of the Claim, whether any of (A) through (E) are received (i) from the Defendants; or (ii) from any third party, including, but not limited to, the Republic of Ecuador on a basis that is equivalent to or a substitute for receipt of such amounts from the Defendant (as proven by the Funder) and net of costs incurred in relation to enforcement proceedings in respect of the Claim (other than fees of the Active Lawyers incurred in connection with the enforcement proceedings or any amounts previously paid which were funded from the Capital Commitment, by the Minority Funders or any third party funders). For the avoidance of doubt, "**Award**" shall include amounts on account of any Tax to the extent required in accordance with Clause 20 hereof. For the avoidance of doubt, "**Award**" shall not include the amount by which the gross amount awarded by the courts of the Republic of Ecuador is reduced by final order of a court having jurisdiction by setoff or equivalent means as a result of a counterclaim in respect of the Claim or the BIT Arbitration. For the avoidance of doubt, "**Award**" shall include (without limitation) cash, real estate, negotiable instruments, choses in action, contract rights, membership rights, subrogation rights, annuities, claims, refunds, and any other rights to payment of cash and/or transfer(s) of things of value or other property (including property substituted therefor), whether delivered or to be delivered in a lump sum or in installments, in relation to any claim or negotiation with any person in relation to the Claim, and shall include any award of rescissionary, punitive, consequential, treble or exemplary damages or penalties assessed against any adverse party from time to time. For the avoidance of doubt, "**Award**" shall include (without limitation) any cash or non-cash value or benefit conveyed to, or

11301582.20
35805-2001

7

Plaintiff's Exhibit 552   p. 40 of 79

Private and Confidential

EXECUTION VERSION

any cash or non-cash obligation imposed on or accepted by, any person or entity in connection with the Claim or the resolution or termination thereof, including (without limitation) the value of, or any obligation to perform or conduct, any investigation or other assessment (including (without limitation) to assess risk to any human or the environment), clean-up, remediation, or mitigation or prevention or measures arising from or relating to the Claim (including (without limitation) any adverse impacts underlying the Claim). For the avoidance of doubt, "**Award**" shall include any of (A) through (E) above awarded by the courts of the Republic of Ecuador otherwise than to the Claimants as a result of the application of Section 43, paragraph third of the Republic of Ecuador's *Environmental Management Act*, Law No. 37, RO/245 of July 30, 1999 (the "**Act**") and any award in favour of any of the Claimants in respect of Section 43, paragraph second of the Act. For the avoidance of doubt, proceeds of the Award includes all of the above.

"**BIT Arbitration**" means any arbitral proceeding arising out of the Notice of Arbitration filed by the Defendants on September 23, 2009 alleging that the Republic of Ecuador is in violation of the U.S. Ecuador Bilateral Investment Treaty.

"**Business Day**" means any day other than a Saturday, a Sunday, or a holiday on which commercial banks in the State of New York or London, England or Quito, Ecuador are authorized or required by applicable law to close.

"**Capital Commitment**" means the total amount of funds set out in Schedule 1 to be funded by the Funder to pay the Expenses under this Agreement.

"**Claim**" means the proceeding in any jurisdiction of which particulars appear in section 4 of Schedule 1, as the same may be varied or enlarged by the addition of claims and/or additional parties from time to time, and shall include, but not by way of limitation:

(i)   any and all court or arbitral proceedings or processes in or connection with the Claim, including defending actions that may be brought by or at the direction of the Defendant against the Claimants or any of their advisors and any and all threats to the Claim;

(ii)   all appellate, annulment or similar proceedings and proceedings on remand, as well as enforcement, ancillary, parallel or alternative dispute resolution proceedings and processes arising out of or related to the acts or occurrences alleged in the Claim (including arbitration, conciliation or mediation);

(iii)   re-filings or parallel filings of the Claim and any other legal, diplomatic or administrative proceedings or processes founded on the underlying facts giving rise to or forming a basis for the Claim and involving one or more adverse parties, in which any Defendant or any Defendants' successor(s) in interest or assigns or Affiliates is a party;

(iv)   ancillary or enforcement proceedings related to the facts or claims alleged from time to time or that could have been alleged in the Claim at any time; and

(v)   all arrangements, settlements, negotiations, or compromises made between the Claimants and any adverse party having the effect of resolving any the Claimants' claims against any adverse party that are or could be or could have been brought in the Claim.

DONZS00015670 Page 37 of 75

**"Claim Impairment"** means (a) any right or interest of any person or authority in respect of the Claim and/or the Award or any part thereof, the effect of which is or would be to reduce, impair or otherwise materially or prejudicially affect the Claim and/or the Award or any part thereof; (b) any claim or action of any person or authority whatsoever in respect of the Claim and/or the Award or any part thereof, the effect of which, if determined adversely, is or would be to reduce, impair or otherwise materially and prejudicially affect the Claim and/or the Award or any part thereof; or (c) any right of set-off, counterclaim, cross claim or impairment of any person in respect of the claim and/or the Award, but excluding, for avoidance of doubt, the BIT Arbitration, and any and all claims and counterclaims asserted by the Defendants prior to the date hereof or asserted by the Defendants after the date hereof but relating to actions that occurred (or are alleged to have occurred) prior to the date hereof.

**"Claimants' Representatives"** means the Claimants' U.S. Representative, Pablo Estenio Fajardo Mendoza, Esq. and Luis Francisco Yanza Angamraca, or any successor(s) appointed by the Claimants.

**"Claimants' U.S. Representative"** means Steven R. Donziger, or any successor appointed by the Claimants.

**"Common Interest Material"** shall mean any Confidential Information or Funder Information that is the work product of qualified legal advisers and/or attorney work product, protected by the attorney-client privilege or any similar privilege in any jurisdiction including, for the avoidance of doubt, legal professional privilege and/or litigation privilege, or that is protected by any rules of professional secrecy in any jurisdiction, including, but not limited to: (i) information prepared by a party to the Claim or their Affiliates or their counsel, advisors, consultants or agents; or (ii) information that is prepared by the Funder or their Affiliates in connection with the Claim or this Agreement and includes, but is not limited to, legal and factual memoranda, case analyses and evaluations.

**"Confidential Information"** shall mean and shall include any information relating to (i) the Transaction Documents including any discussions and negotiations related thereto, the existence of the Transaction Documents or the funding of the Claim, or the identity of the Funder or its Affiliates; the Claim including the names of the parties and potential other parties to the Claim; the factual, legal, technical, economic and financial background of the Claim; the procedural status of the Claim; the planned legal and procedural strategies and tactics for the pursuing of the Claim or settlement or enforcement of the Award; the expected recoveries from the Claim; and other relevant information, and any attorney-client privileged, attorney work product or other information exchange related thereto; (ii) factual information, evidentiary information, legal theories, procedures, decision trees, attorney or other professional work product; (iii) billing arrangements, billing rates, financial arrangements, contingent fee agreements, contingent fee percentages, costs, finances, investments, investors, price lists, pricing, profit margins, profitability, and quotations; (iv) any litigation risk product or information on litigation risk markets (including, without limitation, any derivative, hedging or monetization structure, premium financing structure, pricing, litigation or credit risk analysis, risk modeling, marketing information, advertising methodology, business processes, products and valuation models); (v) any financial statements and information, data, documents, form or draft agreements and

DONZS00015670 Page 38 of 75

Private and Confidential

EXECUTION VERSION

materials; (vi) information concerning accountants, agents, clients, customers, law firms, lawyers, advisors and suppliers; (vii) business activities or operations, business plans, business relationships, commercial relationships, current or proposed products or services, marketing nature, market opportunities, marketing plans, and transactions; (viii) algorithms, computer data bases, computer programs, computer software, network configurations, and systems; (ix) contracts, lists, manuals, and reports; (x) intellectual property, copyrights, data, designs, drawings, flow charts, formulae, ideas, information, inventions, know-how, knowledge, methods, operations, patents, procedures, processes; (xi) research, scientific data, specifications, technical data, techniques, technology, trade secrets, and trademarks; and (xii) other proprietary or non-public information, data or material, in all cases all cases regardless of whether such information is (A) written or oral, irrespective of the form or storage medium, and (B) specifically identified as "Confidential." The term **"Confidential Information"** includes Funder Information but does not include information that (a) was or becomes generally available to the public other than as a result of a disclosure by the Recipient; (b) was available to the Recipient on a non-confidential basis prior to its disclosure; or (c) was developed independent of the information derived from the Confidential Information.

**"Defendants"** means individually and collectively, the parties listed as defendants in the Claim including their Affiliates, and any other person or entity added or joined to the Claim from time to time as a defendant or indemnitor or against whom proceedings are asserted or threatened even if such person or entity is not named or served.

**"Disclosing Party"** shall mean the Party disclosing or providing Confidential Information.

**"Documentation"** means any and all material information relating to the Claim, including any and all Confidential Information and Common Interest Material, in the possession or control of the Claimants in whatever form, and includes any document including copies, records, electronic files (including without limitation any correspondence) or any other way of representing or recording information which contains or is derived or copied from such, but excludes information given orally unless committed to writing.

**"Effective Date"** means the effective date of this Agreement specified in Schedule 1 hereto.

**"Escrow Account"** means an escrow account (whether a bank account, securities account or other similar account) in the sole control (other than control for the purposes of perfection under the laws of the United States) of the Nominated Lawyers or a trustee in a common law jurisdiction (excluding the United States) selected by the Claimants with the approval of the Funder and Torvia (as defined in the Intercreditor Agreement), such approval not to be unreasonably withheld (**"Trustee No. 2"**), and established by the Nominated Lawyers or Trustee No. 2, and used solely to hold in trust the proceeds of an Award for distribution in accordance with the Intercreditor Agreement; provided that the security interest in favour of the Funder created by Clause 8.5(a), or pursuant to Clause 8.5(b), is a valid, perfected and first-ranking security interest in that escrow account under the laws of that jurisdiction as required by this Agreement.

**"Expenses"** means the fees, disbursements, charges and costs set out in Schedule 1 hereto incurred in the pursuit of the Claim or the enforcement or settlement of the Award.

DONZS00015670 Page 39 of 75

Plaintiff's Exhibit 552   p. 43 of 79

Private and Confidential

EXECUTION VERSION

"**Funder Information**" shall mean and shall include any Confidential Information relating to the current, historical and/or future business, organization, management, control and ownership of the Funder and its Affiliates, any trade secrets, know-how, research, ideas, processes, procedures, methods, technology, techniques, designs, specifications, drawings, systems, network configurations, strategies, flow charts, business, sales or marketing plans, customer lists, pricing information, financial information, data or material relating to the customers, clients, agents, suppliers, investors, investments, finances, operations, contracts, pricing, transactions, current or proposed products or services or the current or future business or operations concerning or relating to the business, accounts, customers, employees and affairs of the Funder or their Affiliates obtained by or furnished, disclosed or disseminated to the Recipient, or obtained, assembled or compiled by the Recipient during the term of this Agreement, and all physical embodiments of the foregoing.

"**Funding Compensation Percentage**" shall have the meaning set out in Schedule 1.

"**Funding Notice**" shall have the meaning set out in Clause 2.1(c).

"**Governmental Authority**" means any international, multinational, federal, state or other governmental department, agency, institution, authority, regulatory body, court or tribunal, foreign or domestic, and includes arbitration bodies, whether governmental, private or otherwise.

"**Initial Funding Date**" means the date set out in Schedule 1.

"**Initial Tranche Amount**" means the amount set out in Schedule 1 that will be paid by the Funder to the Trust Account on the Initial Funding Date.

"**Intercreditor Agreement**" means the agreement between the Funder, the Nominated Lawyers and the other creditors listed thereto to be dated as of the date hereof in the form attached as Schedule 4 to this Agreement, with such amendments and variations, if any, as the Funder may approve.

"**Jurisdiction Specific Exit Tax**" means any Tax levied on the Award in connection with an enforcement proceeding in a jurisdiction other than Ecuador and the United States but shall not include taxes in the nature of income or "doing business" taxes in any jurisdiction.

"**Lead Claimants**" shall have the meaning set out in Clause 2.1(c).

"**Litigation Rights**" shall have the meaning set out in Clause 8.1(a).

"**Minority Funders**" means one or more third parties that may fund up to $2,000,000 in funding of the Claim.

"**Net Recoveries**" means the difference between: (a) the total proceeds of the Award; and (b) the total of (i) up to $2,500,000 in reimbursements of amounts advanced to fund costs incurred by the Claimants since the inception of the Claim, to the extent the Nominated Lawyers have received sufficient details about those reimbursements, (ii) any Jurisdiction Specific Exit Tax payable on the Award and (iii) if the Funder has not actually funded the entire $15,000,000

11301582.20
35805-2001

11

DONZS00015670 Page 40 of 75

Private and Confidential

EXECUTION VERSION

Capital Commitment, all other Taxes and other withholdings imposed upon or against all or any portion of the Award (including, for the avoidance of doubt, any amounts not paid to the Claimants by virtue of the application of the Act in respect of which the Claimants would have been required to make a payment to the Funder if it had funded the entire $15,000,000 Capital Commitment).

"**Nominated Lawyers**" means shall mean the lawyers specified as such in Schedule 1 or another law firm selected by the Claimants with the Funder's approval (which shall not be unreasonably withheld).

"**Nominated Lawyers Representative**" means James E. Tyrrell, Jr., in his capacity as representative of the Nominated Lawyers, however if James E. Tyrrell, Jr. ceases to act in such capacity, then another lawyer prominently and actively involved in the Claim selected by the Claimants with the Major Funder's approval (which shall not be unreasonably withheld).

"**Objection Notice**" shall have the meaning set out in Clause 8.1.

"**Person**" means any natural person, corporation, partnership, limited liability company, joint stock company, joint venture, association, company, estate, trust or other organization whether or not a legal entity, custodian, trustee-executor, administrator, nominee or entity in a representative capacity and any government or agency or political subdivision thereof.

"**POA**" means the Special Power of Attorney dated March 1, 2010 granted by Ermel Gabriel Chávez Parra, Ernesto Germán Maniguaje Piaguaje, Ángel Justino Piaguage Lucitante, Toribio Aguinda Lucitante and Pedro Bienvenido Galarza Bravo.

"**Proposed Trust Deed**" shall have the meaning set out in Clause 8.1.

"**Recipient**" shall mean the Party receiving Confidential Information.

"**Recovery Amount**" means the amount calculated in accordance with Schedule 2.

"**Representatives**" means, with respect to any Person (other than an individual) such Person's directors, officers, managers, members, partners, principals, employees, shareholders, Affiliates, related entities, agents, reinsurers, lawyers, accountants, consultants, advisors and independent contractors.

"**Request**" means a request, including without limitation a subpoena, civil investigative demand or similar process, for the production of Confidential Information.

"**Second Tranche Amount**" shall have the meaning set out in Schedule 1.

"**Second Trust**" shall have the meaning set out in Clause 8.1(d).

"**Settlement Amount**" shall mean the amount specified as such in Schedule 1.

DONZS00015670 Page 41 of 75

Plaintiff's Exhibit 552   p. 45 of 79

Private and Confidential

EXECUTION VERSION

"**Tax**" shall mean any tax, duty, contribution, impost, withholding, levy or other charge or withholding of a similar nature, whether domestic or foreign, and any fine, penalty, surcharge or interest in connection therewith.

"**Third Tranche Amount**" shall have the meaning set out in Schedule 1.

"**Tranche**" means an advancement of a portion of the Capital Commitment to pay the Expenses.

"**Transaction Documents**" means this Agreement, the Intercreditor Agreement and any other agreement, deed, letter or other document entered into or produced in relation to, or in furtherance of the rights and obligations of the Parties contemplated by this Agreement.

"**Trust**" shall have the meaning set out in Clause 8.1.

"**Trust Account**" means the interest-bearing trust account established and maintained by the Nominated Lawyers and used solely to hold funds requested by the Claimants to pay for the Expenses.

"**Trust Deed**" shall have the meaning set out in Clause 8.1.

"**Trustee**" shall have the meaning set out in Clause 8.1(a).

"**Trustee No. 2**" shall have the meaning set out in the definition of Escrow Account.

DONZS00015670 Page 42 of 75

Plaintiff's Exhibit 552   p. 46 of 79

Private and Confidential

EXECUTION VERSION

## SCHEDULE 4

### FORM OF INTERCREDITOR AGREEMENT

**See Attached.**

DONZS00015670 Page 43 of 75

EXECUTION VERSION

## INTERCREDITOR AGREEMENT

**THIS INTERCREDITOR AGREEMENT** is made as of the 31st day of October, 2010

**B E T W E E N:**

**TRECA FINANCIAL SOLUTIONS**, a company incorporated under the laws of the Cayman Islands (the "**Major Funder**");

**TORVIA LIMITED**, a company incorporated under the laws of Gibraltar ("**Torvia**");

**PATTON BOGGS LLP**, a Washington, D.C. limited liability partnership (the "**Nominated Lawyers**");

**DONZIGER & ASSOCIATES, PLLC**, a New York professional limited liability company ("**Donziger**");

**EMERY, CELLI, BRINCKERHOFF & ABADY LLP**, a New York limited liability partnership ("**ECBA**");

**PABLO ESTENIO FAJARDO MENDOZA, ESQ.**, an individual residing in Ecuador (the "**Ecuador Attorney**");

**ERIK T. MOE**, an individual ("**Moe**");

**H5**, a California corporation ("**H5**" and, collectively with Moe, the "**Advisors**"); and

**EL FRENTE DE DEFENSA DE LA AMAZONIA** ("**FDA**").

For purposes of this Agreement, the Major Funder, Torvia, the Nominated Lawyers, Donziger, ECBA, the Ecuador Attorney, Moe, H5 and FDA each hereinafter may be referred to individually as a "**Party**" and collectively as the "**Parties**" and references thereto shall include any Person who from time to time becomes a party hereto. Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in Clause 1.

**RECITALS:**

A.    Two or more of the Parties wish to enter into this Agreement on the terms set forth below.

B.    Some or all of the Claimants may assign their interests in the Claim to a trust company established under the laws of Ecuador ("**Trustee No. 1**") to be held in trust pursuant to a trust established under Ecuadorian law, as described in the Major Funder Funding Agreement.  Trustee No.1 shall hold each Award and any proceeds of each Award in trust for distribution in accordance with this Agreement or, if the Second Trust (as defined in the Major Funder Funding Agreement) is established, for payment or delivery to a trustee of such Second Trust to be held in trust for distribution in accordance with

DONZS00015670 Page 44 of 75

this Agreement, acting upon the advice and direction of the Claimants' Representatives and the Nominated Lawyers.

**NOW THEREFORE** in consideration of the mutual covenants and agreements herein contained and other good and valuable consideration (the receipt and sufficiency of which are hereby acknowledged), the Parties hereto agree as follows:

1. **INTERPRETATION**

In this Agreement, the following terms have the following meanings:

1.1 **"1782 Actions"** means actions relating to the Claim that have been brought by or against Chevron Corporation or its consultants or advisors by or against Claimants or their lawyers, advisors, experts, consultants, representatives or others pursuant to 28 USC § 1782, including appeals.

1.2 **"Active Lawyer Engagement Agreement"** means, as to any Active Lawyer, the engagement agreement between the Claimants and such Active Lawyer pursuant to which the Claimants have engaged such Active Lawyer and that sets out, among other things, the terms and conditions (including compensation) for such engagement, as supplemented, amended or restated from time to time.

1.3 **"Active Lawyers"** means, the lawyers conducting the Claim on behalf of the Claimants, namely, as of the date hereof, (i) Patton Boggs LLP, (ii) ECBA, (iii) Donziger and (iv) the Ecuador Attorney (and includes, for the avoidance of doubt, any successor(s) thereto engaged by the Claimants and any additional lawyers and/or law firms who or which become Active Lawyers, provided that such additional lawyers and/or law firms has executed an accession agreement stating that it agrees to be bound by this Agreement in accordance with Clause 12 of this Agreement).

1.4 **"Advisor"** means each Person who or which has been engaged by or is hereafter engaged by the Claimants, other than in an attorney/client relationship, to provide services or advice to the Claimants in connection with the Claim.

1.5 **"Advisor Engagement Agreement"** means, as to any Advisor, the engagement agreement between the Claimants and such Advisor pursuant to which the Claimants have engaged such Advisor and that sets out, among other things, the terms and conditions (including compensation) for such engagement, as supplemented, amended or restated from time to time.

1.6 **"Affiliate"** shall mean an associate within the meaning of section 435 of the *Insolvency Act 1986*.

1.7 **"Agreement"** means this Intercreditor Agreement, as supplemented, amended or restated from time to time.

1.8 **"Award"** shall mean (A) any and all gross, monetary awards, damages,

- 2 -

Plaintiff's Exhibit 552   p. 49 of 79

recoveries, judgments or other property or value awarded, paid or otherwise recovered or reduced to a debt owed on account or as a result, by virtue (directly or indirectly) of, or in any other way related to, the Claim, whether by negotiation, arbitration, mediation, diplomatic efforts, lawsuit, settlement, or otherwise, and includes legal and/or equitable rights, title and interest in and/or to any of the foregoing, whether in the nature of ownership, lien, security interest or otherwise, plus (B) any recovered interest, penalties, attorneys' fees and costs in connection with any of the foregoing, plus (C) any consequential, actual, punitive, exemplary or treble damages awarded or recovered on account thereof, plus (D) any interest awarded or later accruing on any of the foregoing, plus (E) any recoveries against attorneys, accountants, experts or officers in connection with any of the foregoing or the pursuit of the Claim, whether any of (A) through (E) are received (i) from the Defendants; or (ii) from any third party, including, but not limited to, the Republic of Ecuador on a basis that is equivalent to or a substitute for receipt of such amounts from the Defendant (as proven by the Funder) and net of costs incurred in relation to enforcement proceedings in respect of the Claim (other than fees of the Active Lawyers incurred in connection with the enforcement proceedings or any amounts previously paid which were funded from the Capital Commitment (as defined in the Major Funder Funding Agreement), by the Minority Funders or any third party funders). For the avoidance of doubt, "**Award**" shall include amounts on account of any Tax (as defined in the Major Funder Funding Agreement) to the extent required in accordance with the Major Funder Funding Agreement. For the avoidance of doubt, "**Award**" shall not include the amount by which the gross amount awarded by the courts of the Republic of Ecuador is reduced by final order of a court having jurisdiction by setoff or equivalent means as a result of a counterclaim in respect of the Claim or the BIT Arbitration. For the avoidance of doubt, "**Award**" shall include (without limitation) cash, real estate, negotiable instruments, choses in action, contract rights, membership rights, subrogation rights, annuities, claims, refunds, and any other rights to payment of cash and/or transfer(s) of things of value or other property (including property substituted therefor), whether delivered or to be delivered in a lump sum or in installments, in relation to any claim or negotiation with any person in relation to the Claim, and shall include any award of rescissionary, punitive, consequential, treble or exemplary damages or penalties assessed against any adverse party from time to time. For the avoidance of doubt, "**Award**" shall include (without limitation) any cash or non-cash value or benefit conveyed to, or any cash or non-cash obligation imposed on or accepted by, any person or entity in connection with the Claim or the resolution or termination thereof, including (without limitation) the value of, or any obligation to perform or conduct, any investigation or other assessment (including (without limitation) to assess risk to any human or the environment), clean-up, remediation, or mitigation or prevention or measures arising from or relating to the Claim (including (without limitation) any adverse impacts underlying the Claim). For the avoidance of doubt, "**Award**" shall include any of (A) through (E) above awarded by the courts of the Republic of Ecuador otherwise than to the Claimants as a result of the application of Section 43, paragraph third of the Republic of Ecuador's *Environmental Management Act*, Law No. 37, RO/245 of July 30, 1999 (the "**Act**") and any award in favour of any of the Claimants in respect of Section 43, paragraph second of the Act. For the avoidance of doubt, proceeds of the Award includes all of the above.

- 3 -

DONZS00015670 Page 46 of 75

1.9    **"BIT Arbitration"** means any arbitral proceeding arising out of the Notice of Arbitration filed by the Defendants on September 23, 2009 alleging that the Republic of Ecuador is in violation of the U.S. Ecuador Bilateral Investment Treaty.

1.10    **"Business Day"** means any day other than a Saturday, a Sunday, or a holiday on which commercial banks in the State of New York or London, England or Quito, Ecuador are authorized or required by applicable law to close.

1.11    **"Claim"** means all anticipated and unanticipated activities related to the Maria Aguinda y Otros v. Chevron Corporation proceeding, any appeals from the judgement of the Superior Court of Nueva Loja, Ecuador, enforcement proceedings, settlement initiatives and related matters, counterclaims or claims (including the 1782 Actions) by or against the Claimants, their lawyers, experts, advisors, consultants or Representatives, and shall include, but not by way of limitation:

(i)    any and all court or arbitral proceedings or processes in or connection with the Claim, including defending actions that may be brought by or at the direction of the Defendant against the Claimants or any of their advisors and any and all threats to the Claim;

(ii)    all appellate, annulment or similar proceedings and proceedings on remand, as well as enforcement, ancillary, parallel or alternative dispute resolution proceedings and processes arising out of or related to the acts or occurrences alleged in the Claim (including arbitration, conciliation or mediation);

(iii)    re-filings or parallel filings of the Claim and any other legal, diplomatic or administrative proceedings or processes founded on the underlying facts giving rise to or forming a basis for the Claim and involving one or more adverse parties, in which any Defendant or any Defendants' successor(s) in interest or assigns or Affiliates is a party;

(iv)    ancillary or enforcement proceedings related to the facts or claims alleged from time to time or that could have been alleged in the Claim at any time; and

(v)    all arrangements, settlements, negotiations, or compromises made between the Claimants and any adverse party having the effect of resolving any the Claimants' claims against any adverse party that are or could be or could have been brought in the Claim.

1.12    **"Claimants"** means the Claimants whose names are set out in Schedule 1 attached hereto.

1.13    **"Claimants' Representatives"** means the Claimants' U.S. Representative, Ecuador Attorney and Yanza, and includes any successor(s) appointed by the Claimants.

1.14    **"Claimants' U.S. Representative"** means Steven R. Donziger, Esq., and includes

- 4 -

DONZS00015670 Page 47 of 75

any successor appointed by the Claimants.

1.15    **"Defendants"** means individually and collectively, the parties listed as defendants in the *Aguinda v. ChevronTexaco* proceeding including their Affiliates, successors and assigns, and any other Person added or joined to such proceeding from time to time as a defendant or indemnitor or against whom proceedings are asserted or threatened even if such Person is not named or served.

1.16    **"Donziger"** has the meaning given to such term in the forepart of this Agreement.

1.17    **"ECBA"** has the meaning given to such term in the forepart of this Agreement.

1.18    **"Ecuador Attorney"** has the meaning given to such term in the forepart of this Agreement.

1.19    **"Engagement Agreement"** means (i) as to each Active Lawyer, his or its Active Lawyer Engagement Agreement; and (ii) as to each Advisor, his or its Advisor Engagement Agreement.

1.20    **"Escrow Account"** means an escrow account (whether a bank account, securities account or other similar account) in the sole control (other than control for the purposes of perfection under the laws of the United States) of the Nominated Lawyers or a trustee in a common law jurisdiction (excluding the United States) selected by the Claimants with the approval of the Major Funder and Torvia, such approval not to be unreasonably withheld (**"Trustee No. 2"**), and established by the Nominated Lawyers or Trustee No. 2, and used solely to hold in trust the proceeds of an Award for distribution in accordance with this Agreement.

1.21    **"FDA"** has the meaning given to such term in the forepart of this Agreement.

1.22    **"Funders"** means, collectively, the Major Funder and the Minority Funders.

1.23    **"Funding Agreements"** means, collectively, the Major Funder Funding Agreement and the Minority Funders Funding Agreement.

1.24    **"Governmental Authority"** means any international, multinational, federal, state or other governmental department, agency, institution, authority, regulatory body, court or tribunal, foreign or domestic, and includes arbitration bodies, whether governmental, private or otherwise.

1.25    **"H5"** has the meaning given to such term in the forepart of this Agreement.

1.26    **"Major Funder"** has the meaning given to such term in the forepart of this Agreement.

1.27    **"Major Funder Funding Agreement"** means that certain Funding Agreement of even date herewith between the Major Funder and the Claimants, pursuant to which the

- 5 -

DONZS00015670 Page 48 of 75

Major Funder has agreed, among other things, to provide funding to the Claimants for the pursuit and defense of the Claim (including, without limitation, in defense of any and all threats to the Claim) and the enforcement and settlement of any Award, as supplemented, amended or restated from time to time.

1.28    "**Minority Funders**" means, Torvia and any other Person who or which from time to time funds Expenses or other expenses related to the Claim other than the Major Funder, and "**Minority Funder**" means any one of them.

1.29    "**Minority Funders Funding Agreement**" means each funding agreement between the Claimants and a Minority Funder (including the Torvia Funding Agreement), whether now existing or hereafter entered into, pursuant to which such Minority Funder agrees or has agreed to, among other things, provide funding to the Claimants for the pursuit and defense of the Claim (including, without limitation, in defense of any and all threats to the Claim) and the enforcement and settlement of any Award, as supplemented, amended or restated from time to time.

1.30    "**Moe**" has the meaning given to such term in the forepart of this Agreement.

1.31    "**Net Funder Payments**" has the meaning given to such term in Clause 3.2.

1.32    "**Nominated Lawyers**" has the meaning given to such term in the forepart of this Agreement, and includes any successor(s) appointed by the Claimants.

1.33    "**Nominated Lawyers Representative**" means James E. Tyrrell, Jr., in his capacity as representative of the Nominated Lawyers, however if James E. Tyrrell, Jr. ceases to act in such capacity, then another lawyer prominently and actively involved in the Claim selected by the Claimants with the Major Funder's approval (which shall not be unreasonably withheld).

1.34    "**notices**" has the meaning given to such term in Clause 8.1.

1.35    "**Party**" has the meaning given to such term in the forepart of this Agreement, and shall include any other Person who executes a joinder to this Agreement after the date hereof.

1.36    "**Person**" means any natural person, corporation, partnership, limited liability company, joint stock company, joint venture, association, company, estate, trust or other organization whether or not a legal entity, custodian, trustee-executor, administrator, nominee or entity in a representative capacity and any government or agency or political subdivision thereof.

1.37    "**Representatives**" means, with respect to any Person (other than an individual) such Person's directors, officers, managers, members, partners, principals, employees, shareholders, Affiliates, related entities, agents, reinsurers, lawyers, accountants, consultants, advisors and independent contractors.

- 6 -

DONZS00015670 Page 49 of 75

1.38    "**Torvia**" has the meaning given to such term in the forepart of this Agreement.

1.39    "**Torvia Funding Agreement**" means the Confidential Investment Agreement for Chevron/Ecuador Project between the Claimants and Torvia executed on October 31, 2010 with effect from August 17, 2010.

1.40    "**Trustee**" means either of Trustee No. 1, Trustee No. 2, or both Trustee No. 1 and Trustee No. 2, as applicable.

1.41    "**Trustee No. 1**" has the meaning to such term in the Recitals to this Agreement.

1.42    "**Trustee No. 2**" has the meaning given to such term in the definition of Escrow Account.

1.43    "**Yanza**" means Luis Francisco Yanza Angamraca.

2.    **PAYMENT OR DELIVERY OF PROCEEDS TO ESCROW ACCOUNT**

2.1    **Proceeds to be Paid to Nominated Lawyers or Trustee.**    Each Party acknowledges that the Claimants have agreed to use their best efforts to cause all proceeds of the Award to be paid or delivered to the Nominated Lawyers or Trustee, in either case in trust for deposit into the Escrow Account for distribution in accordance with this Agreement and in accordance with applicable law.    Each Party further acknowledges and agrees that, following the receipt by such Party of the amounts due to it under the terms of this Agreement and its respective Funding Agreement or Engagement Agreement, the Claimants shall have no further obligations to pay any amounts (including, without limitation, any portion of the Award) to such Party.

2.2    **Hold Proceeds in Trust and Pay to Nominated Lawyers or Trustee.**    If any Party or any of its Representatives receives all or any part of the proceeds of the Award, that Party will hold those proceeds in trust (or the local law equivalent in Ecuador or elsewhere in the world where those proceeds are received) to be paid or delivered to the Nominated Lawyers or Trustee, in either case in trust for deposit into the Escrow Account and distribution in accordance with this Agreement; and each Party will instruct its Representative to hold all proceeds received by that Representative in trust and to make that payment or delivery to the Nominated Lawyers or Trustee, in either case in trust for deposit to the Escrow Account and distribution in accordance with this Agreement.

2.3    **Direction to Nominated Lawyers and Trustee.**    Without limiting Clause 2.1, each Party hereby irrevocably directs the Nominated Lawyers and the Trustee to take all steps necessary to ensure that any and all proceeds of the Award are paid or delivered into the Escrow Account in trust for distribution in accordance with this Agreement.

2.4    **Power of Attorney.**    Each Party hereby grants to the Nominated Lawyers and the Trustee a full power of attorney (or local law equivalent in Ecuador or elsewhere in the world where any proceeds of the Award are received) to cause and allow any and all

- 7 -

DONZS00015670 Page 50 of 75

Award proceeds to be paid or delivered forthwith as set out above.

3.    **PAYMENT FROM ESCROW ACCOUNT**

3.1    **Notice of Receipt of Proceeds and Amount of Claims**.  Upon receipt of any proceeds of an Award by the Nominated Lawyers or the Trustee, the Nominated Lawyers Representative or the Trustee, as applicable, will confer with the Claimants' U.S. Representative and thereafter shall deliver written notice to the Parties (a) informing the Parties of such Award and specifying the amount of such proceeds actually received by the Claimants, the Nominated Lawyers or the Trustee and (b) setting forth in reasonable detail (including back-up and calculations) the amount of such proceeds that the Nominated Lawyers Representative or the Trustee believes each Party is entitled to receive pursuant to the terms of its Funding Agreement or Engagement Agreement, as applicable (each, an **"Award Notice"**).  Each Party shall have the right, to be exercised, if at all, no later than 5:00 p.m. (New York time) on the 10th Business Day following delivery of each Award Notice, to deliver written notice to the Claimants' U.S. Representative, the Nominated Lawyers Representative and the Trustee, if existing, stating that (i) such Party disagrees with the calculations in such Award Notice; and (ii) setting forth in reasonable detail (including back-up and calculations) the amount of such proceeds that such Party believes it is entitled to receive pursuant to the terms of its Funding Agreement or Engagement Agreement, as applicable (each, an **"Objection Notice"**).  If a Party fails to deliver an Objection Notice to the Claimants' U.S. Representative, the Nominated Lawyers Representative and the Trustee, if existing, prior to 5:00 p.m. (New York time) on the 10th Business Day following delivery of the underlying Award Notice, then such Party shall be irrevocably deemed to have agreed that the calculations in such Award Notice are correct.  If one or more Parties deliver an Objection Notice to the Claimants' U.S Representative, the Nominated Lawyers Representative and the Trustee, if existing, prior to 5:00 p.m. (New York time) on the 10th Business Day following delivery of the underlying Award Notice, then the Parties who or which are adversely affected (or reasonably could be anticipated to be adversely affected) thereby, the Claimants' U.S. Representative, the Nominated Lawyers Representative and the Trustee, if existing, (collectively, the **"Affected Parties"**) thereafter shall attempt, in good faith, for a period of at least 10 Business Days, to resolve any and all disagreements reflected in such Objection Notices to the mutual satisfaction of all such Affected Parties.   If the Affected Parties are unable to resolve all disagreements reflected in such Objection Notices to the mutual satisfaction of all such Affected Parties on or before such 10th Business Day, then any Affected Party thereafter shall have the right to initiate an arbitration proceeding in accordance with Clause 10 below.  The Nominated Lawyers or the Trustee (as applicable) shall release any such proceeds that are not the subject of such a dispute from the Escrow Account and promptly pay the same in accordance with Clause 3.2 below.  The Nominated Lawyers or the Trustee shall retain the higher of any such proceeds that are the subject of such a dispute in the Escrow Account, and shall release and pay the same in accordance with Clause 3.2 below upon the earlier of the mutual resolution of such dispute by all Affected Parties or as directed by the arbitration panel.  For the avoidance of doubt, (x) in the event of any such dispute over the distribution of any portion of the proceeds of any

- 8 -

DONZS00015670 Page 51 of 75

1

Award, the higher of the disputed portion of the proceeds will remain in the Escrow Account pending the mutual resolution of such dispute by all Affected Parties as aforesaid or outcome of any arbitration proceeding, and (y) such dispute will not affect the payment of other amounts not in dispute. The Parties acknowledge and agree that the Claimants shall have no obligation to pay any amount to the Parties if there is no Award.

3.2    **Distribution Waterfall**.  As soon as practicable following the receipt of any proceeds (but subject in any event to the provisions of Clause 3.1 above), the proceeds related to an Award Notice that have been deposited in the Escrow Account shall be distributed by the Nominated Lawyers or the Trustee, if existing, to the Parties in the following order of priority:

3.2.1    first, such proceeds shall be applied by the Nominated Lawyers in satisfaction of any taxes or similar government claims ranking in priority to the claims of the Parties hereto;

3.2.2    second, any remaining proceeds, in payment of the reasonable expenses of the Nominated Lawyers, Trustee No. 1 and Trustee No. 2 in carrying out their obligations under this Agreement, excluding any expenses relating to the payment of contingent fees or other similar fees of any Person;

3.2.3    third, any remaining proceeds up to an aggregate amount equal to US$2,360,000 shall be paid to Torvia, and US$140,000 shall be paid to Torvia or other Minority Funders (as directed by the Claimants) pursuant to the terms of the Minority Funder Funding Agreements;

3.2.4    fourth, any remaining proceeds shall be paid to the Major Funder in satisfaction of the amounts that are due to the Major Funder pursuant to the terms of the Major Funder Funding Agreement;

3.2.5    fifth, any remaining proceeds shall be paid to the Minority Funders in satisfaction of the amounts that are due to the Minority Funders pursuant to the terms of the Minority Funders Funding Agreements;

3.2.6    sixth, any remaining proceeds shall be paid to the Active Lawyers and Advisors in satisfaction of the unreimbursed fees and expenses (not including any contingency-based fees) of the Active Lawyers and Advisors earned or incurred pursuant to their respective Engagement Agreements and unpaid at the time of the payments hereunder;

3.2.7    seventh, any remaining proceeds shall be paid to the Active Lawyers and the Advisors (pari passu, and pro rata based upon the amount to which such Active Lawyers and the Advisor is entitled) in satisfaction of the amounts that are due to the Active Lawyers and the Advisors pursuant to the terms of their respective Engagement Agreements and any other agreements among themselves governing the distribution of such proceeds;

- 9 -

DONZS00015670 Page 52 of 75

3.2.8   eighth, any remaining proceeds shall be paid to any successor(s) of an Active Lawyer and any additional lawyers and/or law firms engaged by the Claimants but who or which has not executed this Agreement, to the extent the Claimants' Representative, the Nominated Lawyers Representative and the Trustee No. 2, if existing, have received sufficient details about those claims and no applicable law or court order requires those claims to be paid equally with the claims of the Parties described in Clause 3.2.7; and

3.2.9   last, the balance (if any) shall be paid to the Claimants or as otherwise required by applicable law.

For the avoidance of doubt, if the proceeds of the Award remaining after payments of amounts required to be paid under Clause 3.2.2 above (such amounts, the "**Net Funder Payments**") are less than US$1,000,000,000, then the payments to the Major Funder under Clause 3.2.4 above and the payments to the Minority Funders under Clauses 3.2.3 and 3.2.5 above shall be made as follows:

(a)   each dollar of the Net Funder Payments shall be paid to the Minority Funders until Torvia has received US$2,360,000 of such Net Funder Payments and Torvia and the other Minority Funders (as directed by the Claimants) have received up to US$140,000 of such Net Funder Payments, in accordance with the terms of the Minority Funders Funding Agreements; and

(b)   thereafter, each dollar of the Net Funder Payments shall be paid to the Major Funder under section 3.2.4 and to the Minority Funders under 3.2.5, pari passu in the following ratios: (i) 98.25% to the Majority Funder, and (ii) 1.75% to Torvia, until such time as the Major Funder has received the total amount of capital actually funded by the Major Funder in accordance with the Major Funder Funding Agreement; and

(c)   thereafter, each dollar of the Net Funder Payments shall be paid to the Major Funder under section 3.2.4 and to the Minority Funders under 3.2.5, pari passu in the following ratios: (i) 78.25% to the Majority Funder, and (ii) up to 21.75% in accordance with the terms of the Minority Funders Funding Agreements, until such time as the Major Funder has received the Recovery Amount (as defined in the Major Funder Funding Agreement); and

(d)   thereafter, each dollar of the Net Funder Payments shall be paid to the Minority Funders under 3.2.5, until each Minority Funder shall have received all amounts owing to such Minority Funder pursuant to the terms of its respective Minority Funders Funding Agreement.

3.3   **Waterfall Prevails Over Other Priorities; Negative Pledge**.   The claims

- 10 -

DONZS00015670 Page 53 of 75

described in Clause 3.2 will be paid in the priority described in Clause 3.2 regardless of the security or other interests held by, or any other rights and remedies available to, the Parties by contract, applicable law or otherwise. Except as described in the Major Funder Funding Agreement or with the prior written consent of the Major Funder, no Party or its Representative, and neither of Trustee No. 1 and Trustee No. 2, may hold any mortgage, pledge, lien, charge, hypothecation, right of set-off, counterclaim, security interest, trust (other than a trust for the distribution of any Award and the proceeds of any Award in accordance with this Agreement) or other encumbrance of any kind, or any rights under any subordination agreement, priority agreement or arrangement of any kind having have a similar or analogous nature or effect to any of the foregoing, in respect of the Claimant's interest in the Claim, any Award and the proceeds of the Claim and any Award (including for greater certainty its interest in the Escrow Account and any proceeds of the Escrow Account), other than the rights created under this Agreement or the security interests contemplated to secure any indebtedness, liabilities or other obligations to the Major Funder. Except as described in the Major Funder Funding Agreement or with the prior written consent of the Major Funder, each of the Claimants, FDA, Trustee No. 1 and Trustee No. 2 shall not create, or permit to exist, any mortgage, pledge, lien, charge, hypothecation, right of set-off or security interest, trust or other encumbrance of any kind, or any subordination agreement, priority agreement or arrangement of any kind having a similar effect to any of the foregoing, in respect of the Claim, any Award, any proceedings to enforce the Award, and the proceeds (including, without limitation, the Escrow Account) of any of the foregoing; provided, the foregoing negative pledge shall not prohibit, preclude, restrict or impair in any manner or to any extent the right or ability of the Claimants, FDA, Trustee No. 1 or Trustee No. 2 to grant any contingent interests in, or grant any right to payment determined by reference to, the Award or the proceeds thereof, ranking subordinate in all respects to the interests of the Major Funder under this Agreement.

3.4    **Other Persons Who Provide Funding**. Subject only to Clause 3.2, all amounts now or hereafter payable to the Major Funder in relation to the proceeds of any Award will be paid in priority to any amounts now or hereafter payable to any other Person (whether or not a Party) who or which has provided, or may hereafter provide, any funding to the Claimants to obtain, pursue or enforce any Award.

3.5    **Disputes About Proceeds**. In the event of a dispute over the distribution of any portion of the proceeds of any Award, the higher of the disputed portion of the proceeds will remain in the Escrow Account pending outcome of the arbitration proceedings provided for herein. For greater certainty, that dispute will not affect the payment of other amounts not in dispute. The Parties agree (i) to be bound by any award made by a tribunal appointed in accordance with the arbitration provisions of this Agreement to resolve a dispute over the distribution of any portion of the proceeds of the Award; and (ii) that the Claimants shall be entitled to participate in any dispute over the distribution of the proceeds of the Award exclusively through the Claimants' Representatives, forthwith after the Claimants' Representatives have been given notice of the dispute, by causing the Claimants' Representatives to make an application to that tribunal.

4.    **NOMINATED LAWYERS AND TRUSTEE**

- 11 -

Plaintiff's Exhibit 552    p. 58 of 79

The Nominated Lawyers and the Trustee, if existing, shall perform the duties set forth in this Agreement. If the Nominated Lawyers or the Trustee, if existing, are unable or unwilling to act, they shall transfer the Escrow Account to such law firm or trustee as the Major Funder and a majority (determined on the basis of the amounts payable by one or more Claimants to it) of the other Parties hereto (other than the Nominated Lawyers and the Trustee, if existing) consider acceptable; provided, that such law firm has accepted the obligations of the Nominated Lawyers or the Trustee, as applicable, hereunder and in the case of the Nominated Lawyers, under the Major Funder Funding Agreement. Subject to Clause 3.1, the Trustee shall be entitled to act upon the advice and direction of the Nominated Lawyers.

## 5. REPRESENTATIONS AND WARRANTIES

Each Party hereby represents and warrants to each of the other Parties hereto that, to the best of its knowledge, the Claimants have no material creditors (including without limitation each law firm) other than (i) those creditors which are Parties to this Agreement; and (ii) as otherwise has been previously disclosed to the other Parties hereto.

## 6. INDEMNITY IN FAVOUR OF NOMINATED LAWYERS

Each Party hereto (other than the Nominated Lawyers and the Trustee, if existing) severally (and not jointly and severally) agrees to indemnify the Nominated Lawyers and the Trustee, if existing, and hold them harmless against:

6.1     Any losses suffered by the Nominated Lawyers and the Trustee, if existing, in performing its obligations under this Agreement which were caused by that Party failing to provide accurate information as to the amount of its claims or otherwise in relation to its rights under this Agreement.

6.2     To the extent that Party receives payments under the waterfall in Clause 3.2 which are contrary to the priority established by applicable law, any losses suffered by the Nominated Lawyers and the Trustee, if existing, as a result of payments made according to the waterfall set forth in Clause 3.2 being contrary to applicable law. For greater certainty, the liability of each Party under this Clause 6.2 is limited to the amounts received by it under Clause 3.2 which it ought not to have received under applicable law.

6.3     Its pro rata share (determined on the basis of the amounts payable by one or more Claimants to it) of any losses suffered by the Nominated Lawyers and the Trustee, if existing, in performing its obligations under this Agreement which are not recovered under Clause 6.1 and Clause 6.2, to the extent not caused by the gross negligence or intentional misconduct of the Nominated Lawyers or the Trustee as applicable.

## 7. FDA

FDA will not take any action to cause or allow any payment of the Award or any proceeds thereof other than in accordance with this Agreement, and FDA will use its commercially reasonable efforts to cause or influence others to act consistently with this

- 12 -

DONZS00015670 Page 55 of 75

Agreement.

## 8.   **NOTICES**

8.1     **Form of Notices**.  All notices, reports, legal service and other communications ("**notices**") required or permitted under this Agreement shall be in writing.  Notices shall be delivered by hand or sent by internationally recognized courier, fax, email or other reliable means of electronic communication to (i) the Parties, at their respective addresses set out in the attached <u>Schedule 2</u>, (ii) the Claimants, at the address of the Claimants' U.S. Representative set out in the attached <u>Schedule 2,</u> (iii) the Trustee at such address as it, or failing notice from it, as the Nominated Lawyers, may specify to the other Parties by a notice sent in accordance with this Clause 8.1, or (iv) at such other address as may be specified hereafter by a Party to the other Parties by a notice sent in accordance with this Clause 8.1.

8.2     **Deemed Receipt**.  Any notice hereunder will be deemed to have been delivered and received (i) on the date delivered, if delivered personally by hand or sent by courier; (ii) on the date sent if sent by fax, email or other form of electronic communication; and (iii) 5 Business Days after mailing, if placed in the sender's country's official postal service by registered or certified mail, first class (airmail) postage prepaid, with a request for a confirmation of delivery.

8.3     **Confirmation**.  Any notice sent under this Clause 8.3 that is sent by fax, email or other electronic communication must be confirmed by sending a hard paper copy thereof to the recipient by hand delivery, by courier or by registered or certified air mail, postage prepaid, with a request for a confirmation of delivery, provided, the effective date of such notice will be as specified in Clause 8.2(ii) above.  If the recipient actually received the fax, email or other electronic form of a notice, then the notice will be deemed to have been given and delivered even if recipient never receives a hard copy as called for in this clause.

## 9.   **MISCELLANEOUS**

9.1     **Entire Agreement; Binding Effect; Assignment**.  This Agreement constitutes the entire agreement between the Parties with respect the subject matter hereof, and supersedes all prior agreements, understandings and negotiations between the Parties with respect the subject matter hereof.  It is understood and agreed that each Party hereto has entered into one or more separate agreements with the Claimants regarding its interest in the Claim, any Award and the proceeds of the Claim and any Award (including for greater certainty its interest in the Escrow Account and any proceeds of the Escrow Account), which such other agreements shall remain in full force and effect in accordance with their terms except to the extent of a conflict with this Agreement (in which case the terms of this Agreement shall prevail with respect to such conflict).  This Agreement will inure to the benefit of, and will be binding upon, the Parties hereto and their respective successors, assigns, and legal representatives.  All representations, warranties, covenants and indemnities made herein will survive the execution and delivery of this Agreement.  Neither this Agreement, nor any rights, interests, obligations and duties arising

- 13 -

DONZS00015670 Page 56 of 75

hereunder, may be assigned or otherwise conveyed (a) by any Party (other than the Major Funder) except as expressly provided herein without the express consent in writing of the other Parties or (b) by the Major Funder except as expressly provided herein or in the Major Funder Funding Agreement without the express consent in writing of the other Parties; provided, that the Major Funder may (i) assign its rights and obligations under this Agreement to an Affiliate without the express consent of the other Parties and (ii) provide participations in or to all or a portion of its rights and obligations under this Agreement.

9.2     **Amendments; Waivers**.  Any amendment or modification of any provision of this Agreement must be in writing and bear the signature of a duly authorized representative of each Party.  No term or provision of this Agreement may be waived except in a written instrument that bears the signature of a duly authorized representative of each Party.  No delay on the part of any Party in exercising any right, power or remedy under this Agreement will operate as a waiver thereof, and no single or partial exercise of any right, power or remedy by any Party hereunder will preclude any further exercise thereof.

9.3     **Severability**.  If any term, provision, covenant or condition of this Agreement, or the application thereof to any Person, place or circumstance, is held to be invalid, unenforceable or void, the remainder of this Agreement and such term, provision, covenant or condition as applied to other Persons, places and circumstances will remain in full force and effect.

9.4     **Further Assurances**.  The Parties hereto will forthwith, and from time to time, execute and do all deeds, documents and things which may be necessary or advisable to give full effect to the intent of this Agreement.  Without limiting the foregoing, this may include making or supporting an application to court in any jurisdiction that a portion of any Award, or any order in connection with proceedings to enforce any Award, or any proceeds thereof, be paid directly to the Nominated Lawyers in trust for deposit into the Escrow Account.  Each Party will ensure that its arrangements with each Claimant are consistent with this Agreement

9.5     **No Third Party Beneficiaries**.  This Agreement does not create any rights in favour of, and is not enforceable by or on behalf of, anyone who is not a Party to this Agreement or who has not executed and delivered this Agreement.

9.6     **Spanish Translation**.  The Parties will execute English and Spanish versions of this Agreement.  In the event of a conflict between the English version of this Agreement and the Spanish version, the English version shall control.

## 10.     GOVERNING LAW AND ARBITRATION

10.1    This Agreement is governed by and shall be construed in accordance with the laws of England without giving effect to its conflict of laws rules.

10.2    Any dispute, controversy or claim arising out of or in connection with this

- 14 -

Plaintiff's Exhibit 552   p. 61 of 79

Agreement, including any question regarding its formation, existence, validity, interpretation, performance, breach or termination and including any dispute about the value of the Award, shall (to the exclusion of any other forum) be referred to and finally resolved by arbitration administered by the International Centre for Dispute Resolution in accordance with its International Arbitration Rules, if such parties have been unable to resolve the dispute through negotiation, mediation or otherwise within thirty (30) days after one party has received written notice of a dispute from the other party in accordance with Clause 8.

10.3    The arbitration shall be conducted before a panel of three arbitrators, each of whom shall be a fluent speaker and reader of both English and Spanish.

10.4    Despite any other provision of this Clause 10, if a dispute is with respect to the value of a non-cash Award and the Parties have been unable to resolve such dispute within fifteen (15) days after one Party has received written notice of the dispute from another Party, the arbitration shall be conducted by one arbitrator agreed to by the Parties, acting reasonably, who is an accountant at an internationally recognized accounting firm or a professional valuator, or, failing agreement, an accountant chosen by the International Centre for Dispute Resolution at an internationally recognized accounting firm (other than Ernst & Young) or a professional valuator chosen by the International Centre for Dispute Resolution. The arbitration shall be administered by the International Centre for Dispute Resolution in accordance with its International Arbitration Rules, except that the arbitrator shall conduct the arbitration in an expedited manner and render a decision within 90 days after the arbitrator is appointed.

10.5    The seat, or legal place, of arbitration shall be London, England, but the arbitration proceedings shall physically occur in George Town, Cayman Islands.

10.6    Each Party to this Agreement shall, upon the written request of the other Party, promptly provide the other Party with copies of all documents on which the producing Party may rely in support of or in opposition to any claim or defense and a report of any expert whom the producing Party may call as a witness in the arbitration hearing. At the request of a party to this Agreement, and upon the showing of good cause, the arbitrators shall have the discretion to order production by any other Party or by a third party of other documents relevant to any claim or defense. Each Party shall be entitled to depose a maximum of three witnesses (which number may not be increased by the arbitral tribunal), plus all experts designated to be witnesses at the arbitration. The depositions shall be held within thirty (30) days of the making of a request and shall be limited to a maximum of six hours per deposition. All objections are reserved for the arbitration hearing, except for objections based on privilege and proprietary or confidential information.

10.7    In addition to the requirement to arbitrate set forth above as the Parties' exclusive remedy for disputes, the Parties expressly agree and covenant not to take the position that any Party is subject to personal jurisdiction or venue in the United States.

10.8    Any attempt by any Party to seek relief or remedies in any other forum shall

- 15 -

Plaintiff's Exhibit 552   p. 62 of 79

constitute a breach of this Agreement and entitle the other Parties to damages, equitable relief and full indemnification against all costs and expenses incurred in connection therewith.

## 11.    COUNTERPARTS

This Agreement may be executed in counterparts, each of which will be deemed to be an original, and all of which, taken together, will constitute one agreement binding on all Parties who have executed this Agreement.  Copies of executed counterparts may be exchanged by facsimile, email or other electronic transmission, and such an exchange will constitute effective delivery by the Parties of their respective executed counterparts.  Once this Agreement has been executed by the Major Funder, the Nominated Lawyers and at least one other Party, this Agreement is enforceable by and against each Party that has executed this Agreement despite any failure of any other Person named as party to execute this Agreement; but this Agreement will be enforceable by and against each of those other Persons upon execution of this Agreement by it.

## 12.    ADDITIONAL PARTIES

Any Person not named above as a Party may become bound by, and entitled to enforce, this Agreement by executing a written accession agreement stating that it agrees to be bound by this Agreement and delivering it to the Parties hereto; provided, that unless otherwise agreed, such accession shall require the prior written consent of each Party adversely affected by the addition of such new party to this Agreement.  For the avoidance of doubt, the priority of that Person's claims will, if a Minority Funder, rank equally with the claims set forth in Clause 3.2.5 or, if an Active Lawyer or Advisor, rank equally with the claims set forth in Clause 3.2.7.

[signatures on following pages]

- 16 -

DONZS00015670 Page 59 of 75

IN WITNESS WHEREOF, the Parties hereto have executed this agreement.

MAJOR FUNDER:

TRECA FINANCIAL SOLUTIONS

By: _____

Name: DARRYL WILLIS

Title: AUTHORISED SIGNATORY

[Intercreditor Agreement]

S-1

DONZS00015670 Page 60 of 75

**MINORITY FUNDERS:**

**TORVIA LIMITED**

By: ~~_S. Marsden signature_~~

Name: S. MARSDEN

Title: DIRECTOR

[Intercreditor Agreement]

S-2

DONZS00015670 Page 61 of 75

**NOMINATED LAWYERS**:

PATTON BOGGS LLP

By: _James E. Tyrrill, Jr._

    Name: James E. Tyrrill, Jr.

    Title: Regional Managing Partner

    New York and New Jersey Offices

**DONZIGER**:

DONZIGER & ASSOCIATES, LLC

By: _____

    Name:

    Title:

**ECBA**:

EMERY, CELLI, BRINCKERHOFF &
ABADY, LLP

By: _____

    Name:

    Title:

[Intercreditor Agreement]

S-3

DONZS00015670 Page 62 of 75

<u>NOMINATED LAWYERS</u>:

PATTON BOGGS LLP

By: _____
         Name:
         Title:

<u>DONZIGER</u>:

DONZIGER & ASSOCIATES, PLLC

By: _____
         Name:
         Title:

<u>ECBA</u>:

EMERY, CELLI, BRINCKERHOFF &
ABADY, LLP

By: _____
         Name:
         Title:

[Intercreditor Agreement]

S-3

DONZS00015670 Page 63 of 75

**NOMINATED LAWYERS:**

**PATTON BOGGS LLP**

By: _____
    Name:
    Title:

**DONZIGER:**

**DONZIGER & ASSOCIATES, PLLC**

By: _____
    Name:
    Title:

**ECBA:**

**EMERY, CELLI, BRINCKERHOFF & ABADY, LLP**

By: _Jonathan J Abady_____
    Name: JONATHAN S. ABADY
    Title: PARTNER

**[Intercreditor Agreement]**

S-3

DONZS00015670 Page 64 of 75

**ECUADOR ATTORNEY:**



21-10-10

Witness: _____          Pablo Estenio Fajardo Mendoza, Esq.

[Intercreditor Agreement]

S-4

DONZS00015670 Page 65 of 75

**MOE:**

Witness:

Daniel Tobias

Erik T. Moe

[Intercreditor Agreement]

S-5

DONZS00015670 Page 66 of 75

**H5**:

**H5**

By:

_____

Name: Nicolas Economou
Title:  CEO

[Intercreditor Agreement]

S-6

DONZS00015670 Page 67 of 75



On behalf of El Frente de Defensa de la
Amazonia

By: _____

Name: ERUIG CHAVEZ
Title: PRESIDENTE — FDA

[Intercreditor Agreement]

S-7

DONZS00015670 Page 68 of 75

## SCHEDULE 1

## CLAIMANTS

| Frente de Defensa de la Amazonia (the "**Amazon Defense Coalition**") | **Claimants:** |
|---|---|
| | Daniel Carlos Lusitande Yaiguaje;<br>Venancio Freddy Chimbo Grefa;<br>Miguel Mario Payaguaje Payaguaje;<br>Teodoro Gonzalo Piaguaje Payaguaje;<br>Simón Lusitande Yaiguaje;<br>Armando Wilmer Piaguaje Payaguaje;<br>Javier Piaguaje Payaguaje;<br>Fermín Piaguaje;<br>Luis Agustín Payaguaje Piaguaje;<br>Emilio Martin Lusitande Yaiguaje;<br>Reinaldo Lusitande Yaiguaje;<br>María Victoria Aguinda Salazar;<br>Carlos Grega Huatatoca;<br>Catalina Antonia Aguinda Salazar;<br>Lidia Alexandra Aguinda Aguinda;<br>Clide Ramiro Aguinda Aguinda;<br>Luis Armando Chimbo Yumbo;<br>Beatriz Mercedes Grefa Tanguila;<br>Lucio Enrique Grefa Tanguila;<br>Patricio Wilson Aguinda Aguinda;<br>Patricio Alberto Chimbo Yumbo;<br>Segundo Ángel Amanta Milán;<br>Francisco Matías Alvarado Yumbo;<br>Olga Gloria Grefa Cerda;<br>Narcisa Tanguila Narváez;<br>Bertha Yumbo Tanguila;<br>Lucrecia Tanguila Grefa;<br>Francisco Víctor Tanguila Grefa;<br>Rosa Teresa Chimbo Tanguila;<br>María Clelia Reascos Revelo;<br>Heleodoro Pataron Guaraca;<br>María Viveros Cusangua;<br>Lorenzo José Alvarado Yumbo;<br>Francisco Alvarado Yumbo;<br>José Gabriel Revelo Llore;<br>Luisa Delia Tanguila Narváez; and<br>José Miguel Ipiales Chicaiza. |

DONZS00015670 Page 69 of 75

## SCHEDULE 2

### NOTICE ADDRESSES

A.    Notice address for the Major Funder:

        4th Floor, Century Yard,
        Cricket Square, Elgin Avenue
        P.O. Box 32322
        Grand Cayman  KY1-1209
        Cayman Islands
        Facsimile: _____
        Email: _____

B.    Notice address for Torvia:

        PO Box 1300
        Leisure Island Business Centre
        23 Ocean Village Promenade, Suite 2-1C,
        Ocean Village, Gibraltar Attn: Steve Marsden
        Facsimile: _____
        Email: _____

C.    Notice address for the Nominated Lawyers:

        Patton Boggs LLP
        1185 Avenue of the Americas, 30th Floor,
        New York, New York 10036
        Facsimile: (646) 557-5101
        Email: jtyrrell@pattonboggs.com

D.    Notice address for Donziger and for the Claimants' U.S. Representative:

        c/o 245 West 104th Street, #7D
        New York, New York 10025
        Facsimile: (212) 409-8628
        Email: sdonziger@donzigerandassociates.com

E.    Notice address for ECBA:

        c/o 75 Rockefeller Plaza
        20th Floor, New York, NY 10019
        Attn: Ilann M. Maazel, Esq.
        Facsimile: (212) 763-5001
        Email: imaazel@ecbalaw.com

DONZS00015670 Page 70 of 75

- 2 -

F.  Notice address for the Ecuador Attorney:

      Pablo Estenio Fajardo Mendoza, Esq.

      _____

      _____

      Facsimile: _____

      Email: _____

G.  Notice address for Moe:

      572 1st Street
      Brooklyn, New York 11215
      Email: eriktmoe66@yahoo.com

H.  Notice address for H5

      340 Madison Avenue, Suite 12B
      New York, New York 10173
      Attn: Nicolas Economou, Chief Executive Officer and Julia Brickell, General
          Counsel
      Facsimile: (212) 818-1604
      Email: neconomou@h5.com and jbrickell@h5.com

DONZS00015670 Page 71 of 75

IN WITNESS whereof the Parties hereto have caused this Agreement to be duly executed as of the Effective Date.

**FUNDER**

TRECA FINANCIAL SOLUTIONS

By: _____

Name: DARRYL  WILLIS

Title: AUTHORISED  SIGNATORY

S-1
[Funding Agreement]

DONZS00015670 Page 72 of 75

**CLAIMANTS**

On behalf of El Frente de Defensa de la Amazonia

By: _____
Name: ERMEL CHAVEZ
Title: PRESIDENTE - FDA

Witness: _____

Witness: _____

Steven R. Donziger, in his capacity as Claimants' U.S. Representative

Witness: _____

Pablo Estenio Fajardo Mendoza, Esq., in his capacity as lead Ecuador counsel for, and legal representative of, the Claimants

S-2
[Funding Agreement]

DONZS00015670 Page 73 of 75

Plaintiff's Exhibit 552   p. 77 of 79

## CLAIMANTS

**On behalf of El Frente de Defensa de la Amazonia**

Witness: _____

By: _____
    Name:
    Title:

Witness: _____
         *Gon Belene*

_____
Steven R. Donziger, in his capacity as Claimants' U.S. Representative

Witness: _____

_____
Pablo Estenio Fajardo Mendoza, Esq., in his capacity as lead Ecuador counsel for, and legal representative of, the Claimants

S-2
[Funding Agreement]

DONZS00015670 Page 74 of 75



On behalf of the Asamblea de Afectados por
Texaco

By: _____ 31-10-2010

Name: Luis Yanza, under the POA
Title: Special attorney under the POA

Witness: _____

S-3
[Funding Agreement]

DONZS00015670 Page 75 of 75