# EXHIBIT 2

RETAINER AGREEMENT

THIS RETAINER AGREEMENT (as from time to time may be amended in accordance with the terms hereof, this "Agreement"), dated as of January ⊆ , 2011, is made between and among (i) each of the individual plaintiffs in the matter *Maria Aguinda y Otros v. Chevron Corporation* (as listed on the attached Exhibit A, and together with their respective successors and assigns, the "Plaintiffs"), by Pablo Estenio Fajardo Mendoza, Esq., as lead counsel for and Ecuadorian legal representative of the Plaintiffs, (ii) EL FRENTE DE DEFENSA DE LA AMAZONIA (as listed on the attached Exhibit A, and together with its successors and assigns, the "Amazon Defense Front"), duly represented by Ermel Gabriel Chávez Parra, who is authorized by the Board of Directors and as beneficiary of any judicial or settlement award granted to the Plaintiffs, (iii) ASAMBLEA DE AFECTADOS POR TEXACO (as listed on the attached Exhibit A, and together with its successors and assigns, the "Assembly of Communities Affected by Texaco" and, collectively with the Amazon Defense Front, the "Plaintiffs' Coordinators") by Luis Yanza under that certain Special Power of Attorney dated March 1, 2010 (the "POA") granted by Ermel Gabriel Chávez Parra, Ernesto Germán Maniguaje Piaguaje, Ángel Justino Piaguage Lucitante, Toribio Aguinda Lucitante and Pedro Bienvenido Galarza Bravo, and (iv) DONZIGER & ASSOCIATES, PLLC, a New York professional limited liability company having offices at 245 W. 104th St., #7D, New York, New York 10025 (the "Firm").

WITNESSETH:

WHEREAS, the case *MariaAguinda y Otros v. Chevron Corporation* [No. 002-2003] is pending in the Provincial Court of Justice of Sucumbios to recover clean-up costs and other damages and relief from defendant Chevron Corporation (a/k/a Texaco; ChevronTexaco; Chevron) for Texaco's role as drilling operator in Ecuador and/or consortium partner; and

WHEREAS, a number of actions pursuant to 28 U.S.C. § 1782 have been filed by Chevron and Chevron lawyers Rodrigo Perez Pallares and Ricardo Reis Veiga in various United States District Courts against various of the Plaintiffs' advisors, including two of their former and current lawyers; and

WHEREAS, additional related litigation and associated activities are occurring and anticipated, including, without limitation,initiating actions pursuant to 28 U.S.C. § 1782 and as necessary to enforce a judgment against Chevron or its subsidiaries in Ecuador, the United States and/or other countries and pursue or defend any appeals therefromand conducting possible settlement negotiationswith Chevron and its representatives (all of the above, collectively, the "Litigation"); and

WHEREAS, the Plaintiffs previously engaged the Firm to provide legal services to pursue and defend, as the case may be, the Litigation to its conclusion, and desire to more particularly set forth the terms of the attorney-client relationship between the Plaintiffs and the Firm, and to document and define the economic compensation to which the Firm is entitled to receive for its representation of the Plaintiffs in connection with the Litigation; and

WHEREAS, by virtue of having acted as the primary United States attorney on behalf of

DEPOSITION EXHIBIT

**Camacho 3611**

PLAINTIFF'S EXHIBIT

558

11 Civ. 0691 (LAK)

the Plaintiffs to date, the Plaintiffs desire to appoint Steven R. Donziger, Esq. to act as Plaintiffs' U.S. Representative (defined below) with such responsibilities as are set forth below, and to cooperate in such capacity with Pablo Fajardo Mendoza, Esq. and Luis Yanza (the foregoing, collectively with any successors thereto, the "Other Plaintiffs' Representatives"); and

WHEREAS, the Plaintiffs and the Firm desire to enter into this Agreement after careful and extended consideration on terms that each party considers commercially reasonable (taking into account, among other things, all relevant facts and circumstances related to the Litigation).

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the Plaintiffs and the Firm, intending to be legally bound, hereby agree as follows:

(1)     Scope of Representation.

The Plaintiffspreviously engaged the services of the Firm to serve as legal counsel to the Plaintiffs in connection with the Litigation, which such engagement is hereby continued as set forth herein, with Steven R. Donziger, Esq. as the Firm's lead partner on the engagement.The Firm will cooperate and coordinate its efforts as requested by the Plaintiffs with any other lawyers or law firms retained by the Plaintiffs in connection with the Litigation (whether such efforts are to occur in the United States, Ecuador or elsewhere).

(2)     Devotion of Resources.

(a)     The Firm agrees that it shall zealously represent the Plaintiffs in connection with the Litigation and shall commit substantial resources to the Litigation as may be required in order to zealously prosecute and defend the Litigation whether foreseen or unforeseen.The Firm shall devote significant and sufficient time, attention and effort to the Litigation as may be necessary or desirable to advance and significantly further the interests of the Plaintiffs in the Litigation (including, without limitation, in developing and executing defensive and offensive litigation strategy, including actions under 28 USC § 1782 and all related Litigation now occurring or which may arise in the future, including, without limitation, claims Chevron may assert against active or inactive lawyers, experts, advisors, consultants or others, litigation relating to the Chevron's claims under the Bilateral Investment Treaty between the United States and Ecuador, claims asserted by the Plaintiffs and/or Chevron related to the underlying environmental case in Lago Agrio, Ecuador and enforcement of any judgment in favor of the Plaintiffs in the Litigation).

(b)     In addition, the Plaintiffs hereby appoint Steven R. Donziger, Esq. to act as their United States representative ("Plaintiffs' U.S. Representative") to exercise overall responsibility for the strategic direction of the Litigation and the day-to-day management of the Litigation.  Without limiting the generality of the foregoing, the Plaintiffs' U.S. Representative shall have primary responsibility for the following:

(i)     coordinating the overall legal strategy of the Plaintiffs to pursue and defend all aspects of the Litigation, as applicable, in such a manner as to advance and

2

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER                          WOODS00045391

further the interests of the Plaintiffs in the Litigation to the maximum extent (including, without limitation, coordinating the United States legal strategy with the Ecuadoran legal strategy);

(ii) assembling and organizing the various United States lawyers and law firms who or which from time to time will represent the Plaintiffs in connection with the Litigation (including, without limitation, preparing and negotiating engagement agreements with such lawyers and law firms on behalf of the Plaintiffs; and coordinating the efforts and undertakings of such lawyers and law firms);

(iii) coordinating the efforts to procure funding or financing for the Litigation from one or more third parties (including, without limitation, from time to time obtaining and evaluating bids from third parties in respect of such funding or financing, making recommendations to the Plaintiffs in respect of such bids and preparing and negotiating on behalf of the Plaintiffs the definitive transactional documents and agreements with each funder or financer selected by the Plaintiffs to provide any such funding or financing);

(iv) assembling and organizing the various non-legal advisors, experts, service providers and others who or which from time to time will assist the Plaintiffs in pursuing and/or defending various aspects of the Litigation, and coordinating the efforts and undertakings of such advisors, experts, service providers and others; and

(v) coordinating the media, public affairs and public relations activities on behalf of the Plaintiffs (including, without limitation, retaining lobbyists, public affairs advisors and public relations advisors on behalf of the Plaintiffs).

The Plaintiffs' U.S. Representative hereby acknowledges that, in carrying out the foregoing responsibilities, he will be required to provide his efforts in the United States, Ecuador and elsewhere. The Plaintiffs' U.S. Representative may not enter into agreements, settlements or negotiations with representatives, agents, lobbyists or any other person associated with Chevron without authorization and direction from the Plaintiffs. This authorization and direction may be given by the Other Plaintiffs' Representative in the Republic of Ecuador.

(3)     Fees and Expenses; Budget and Billing.

(a)     Contingent Fee. As compensation for its services hereunder, the Firm shall be entitled to an Active Lawyer Percentage of thirty one and one-half percent (31.5%) of the Total Contingency Fee Payment. The "Total Contingency Fee Payment" means an amount equal to twenty percent (20%) of all Plaintiff Collection Monies. "Plaintiff Collection Monies" means any amounts paid, whether in lump sum or installments, whether from Chevron Corporation (a/k/a Texaco; ChevronTexaco; Chevron), any other party listed as a defendant in respect of the Litigation (including, without limitation, his or its respective affiliates and successors in interest), or any other party added or joined to the Litigation from time to time as a defendant or indemnitor or against whom proceedings are asserted or threatened. Funds are considered "paid" when the monies are disbursed to the Plaintiffs or are available to be so disbursed. For the

3

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER

WOODS00045392

avoidance of doubt, the Plaintiff Collection Monies shall be reduced for taxes and similar assessments required to be paid in the United States or Ecuador but not the application of the 100/10 Law. If it is determined that the 100/10 Law prevents the Plaintiffs from paying the entire amount of their contingency fee obligations from the Plaintiff Collection Monies, the term "Total Contingency Fee Payment" means an amount equal to one hundred percent (100%) of all portions of the Plaintiff Collection Monies that may be paid by the Plaintiffs in satisfaction of their contingency fee obligations. The "100/10 Law" means Article 43 of Ecuador's Environmental Management Act, Law No. 37, RO/245 of July 30, 1999.

   (b) Monthly Retainer.As further compensation for its services hereunder,for each month during the term of this Agreement, the Plaintiffs shall pay to the Firm a monthly retainer in accordance with a budget to be provided by the Firm to the Chairman from time to time (the "Monthly Retainer"). The Monthly Retainer that is due and payable for each month during the term of this Agreement shall be paid by the Plaintiffs on or before the 10<sup>th</sup>day of the calendar month to whichthe Monthly Retainer applies.

   (c) Other Amounts. The parties acknowledge that, from time to time,the Plaintiffs or one of the Other Plaintiffs' Representativeswill submit requests to the Plaintiffs' U.S. Representative for funds to pay or reimburse, as applicable, certain case expenses and fees and expenses of Ecuadoran counsel, advisorsand/or service providers who or which have provided legal or other services to the Plaintiffs in connection with the Litigation. In such event, the Plaintiffs' U.S. Representative shall promptly present such requests (in the form of an invoice) to the Chairman (defined below) for approval and payment in accordance with Clause 3(f) below.

   (d) Expenses. In addition to payment of the Monthly Retainer, the Firm shall, subject to Clause 3(e) and Clause 3(f)below, be entitled to reimbursement for anyreasonable out-of pocket expenses or other costs incurred by the Firm in connection with its representation of the Plaintiffs in the Litigation (the "Expenses").

   (e) Budget. The Plaintiffs, the Firm and the other attorneys actively involved in the Litigation are preparing a preliminary budget (to be broken down on a monthly basis) of fees, costs and expenses of the Litigation and related activities that may be billed to the Plaintiffs by the Firm and others, which such budget will be attached to the Master Agreement (defined below) as an exhibit thereto (the "Budget"). The parties (i) acknowledge that the preliminary budget is not yet final, and is still being finalized by the Plaintiffs, the Firm and such other attorneys and (ii) agree that the monthly allocation for the Firm that will be included in the Budget, when finalized, shall be an amount equal to the Monthly Retainer Fee. The parties hereto acknowledge that the Budget may change from time to time as may be set forth in the Master Agreement.

   (f) Billing and Payment. As soon as practicable after the end of a calendar month, the Firm shall submit a bill to the Plaintiffs for reimbursement of its Expenses for such month setting forth in reasonable detail the Expenses that it incurred during the preceding month in connection with its representation of the Plaintiffs in the Litigation.If requested by the Plaintiffs, the Firm will also provide a written description to the Plaintiffs setting forth in

4

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER

Plaintiff's Exhibit 558 p. 4 of 13

reasonable detail the legal services that the Firm provided during the preceding month in connection with its representation of the Plaintiffs in the Litigation and time spent by the Firm's attorneys and other professionals during the preceding month on the Litigation; provided, that, and for the avoidance of doubt, any such written description of legal services and time provided by the Firm upon any such request shall not affect the obligation of the Plaintiffs to pay the Monthly Retainer to the Firm in accordance with Section 3(b) above. Billsfor Expenses shall be sent for approval to (i) the Plaintiffs'U.S. Representative and (ii) once designated, the chairman of the management committee (to be discussed in the Master Agreement) (the "Chairman").No amount will be paid with respect to a bill for Expenses absent the approval of each of the Chairman and the Plaintiffs' U.S. Representative.

(g)     Payments to Other Attorneys.  The Firm acknowledges that other law firms, advisors and service providers retained by the Plaintiffs in connection with the Litigation and related activities have been instructed to submit their respective monthly invoices to (x) the Chairman and (y) the Plaintiffs' U.S. Representative.  The Firm further acknowledges that the Chairman's law firm is not authorized to make any payment in respect of any such invoice unless and until it has received the written authorization to pay such invoice from (i) the Chairman and (ii) the Plaintiffs' U.S. Representative.  The Plaintiffs' U.S. Representative shall coordinate with the Chairman for the review and approval or disapproval (in whole or in part) of each such invoice in accordance with the terms of the underlying engagement agreement, the Budget, the Master Agreement and this Agreement.  So long as the fees and expenses on such invoice do not exceed the applicable monthly allocation for the presenting law firm, advisor or service provider set forth in the Budget, and are approved by the Chairman and the Plaintiffs' U.S. Representative, the Plaintiffs' U.S. Representative shall sign whatever written authorization(s) may be reasonably required in order to release the funds necessary to pay such invoice from the Trust Accounts(as defined below) or accounts in which the Plaintiffs' funds are then being held.

(h)     Trust Accounts.   If requested by the Plaintiffs or one of the Other Plaintiffs' Representatives, the Firm agrees to maintain one or more segregated trust accounts (the "Trust Accounts"), and to hold and maintain in such Trust Accounts the proceeds of one or more third party fundings or financings pending the disbursement and payment of such proceeds in accordance with the provisions of this Agreement, the Budget and the Master Agreement.  In such event, the Firm shall maintain accurate records of all deposits and withdrawals from each Trust Account, and provide true and correct copies of those records to the Other Plaintiffs' Representatives promptly upon a written request for the same.

(i)     Acknowledgement of Payment Terms; Intercreditor Agreement.  The Firm acknowledges and agrees that (a) there will be no payment of the contingent fee described in Section 3(a) in the event no award is granted and/or actually paid to the Plaintiffs in respect of the Litigation and (b) the terms of the engagement set forth in this Agreement (including the payment of the success fee described in Section 3(a)) are subject to the priorities, terms and provisions set forth in the Intercreditor Agreement dated as of October 31, 2010 by and among the Plaintiffs, the Plaintiffs' Coordinators, certain parties providing funding for the Litigation and the Plaintiffs' lawyers and other advisors (the "Intercreditor Agreement").  The Firm shall, as a condition to the engagement, execute and deliver the Intercreditor Agreement and agrees to comply with the terms thereof.

5

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER                                    WOODS00045394

(j)     The Firm hereby acknowledges and agrees as follows:

(i)     If, from time to time, the Plaintiffs reasonably determine that (i) one or more additional lawyers and/or law firms should be retained by the Plaintiffs in order to assist with the pursuit or defense of the Litigation ("Additional Lawyers") and/or (ii) there are insufficient funds currently available to the Plaintiffs to pay the reasonably anticipated costs and expenses of the Litigation as shown on the then current Budget and, as a result, the Plaintiffs should seek additional funding for the Litigation from one or more additional funders ("Additional Funders"), then the Plaintiffs shall deliver notice of that fact to the Chairman and the Plaintiffs' U.S. Representative setting forth such determination and requesting that the Chairman and the Plaintiffs' U.S. Representative agree to reduce the Active Lawyer Percentages of each lawyer engaged by the Plaintiffs on a contingency fee basis in respect of the Litigation (each, an "Active Lawyer") on a pro rata basis (based upon their then existing Active Lawyer Percentages under each Active Lawyer's respective retainer agreement with the Plaintiffs) in order to allow for the Plaintiffs to engage such Additional Lawyers or enter into a funding arrangement with such Additional Funders, as applicable (such notice, a "Request Notice"). Each Request Notice shall describe the proposed economic terms and conditions for any agreement with Additional Lawyers and/or Additional Funders, including, without limitation, as applicable, the Active Lawyer Percentage proposed to be allocated to any Additional Lawyers (the "Additional Lawyer Percentage") and the percentage of Plaintiff Collection Monies proposed to be paid to any Additional Funder (the "Additional Funder Percentage"). Immediately upon receipt of any Request Notice, the Chairman and the Plaintiffs' U.S. Representative shall deliver a copy thereof to the Firm and each other Active Lawyer, for notification purposes only.

(ii)    No later than 10 days after the delivery of a Request Notice by the Plaintiffs, the Chairman and the Plaintiffs' U.S. Representative shall discuss and decide jointly to either approve or reject the requested actions set forth in such Request Notice. If both the Chairman and the Plaintiffs' U.S. Representative agree to approve the requested actions set forth in such Request Notice, then the requested actions set forth in such Request Notice shall be deemed approved, and the Plaintiffs thereafter may engage the Additional Lawyers or enter into a funding agreement with Additional Funders, as applicable, upon economic terms no more favorable to the Additional Lawyers or Additional Funders, as applicable, than as set forth in the approved Request Notice.

(iii)   Immediately upon the engagement of any Additional Lawyers or the entry into a funding agreement with any Additional Funders which, in each case, has been approved in accordance with this Section 3(j), the Active Lawyer Percentage of the Firm shall be reduced by the Firm's pro rata share (based upon the Firm's then existing Active Lawyer Percentage) of the amount required to enable the Plaintiffs to grant, as applicable, (a) the Additional Lawyer Percentage to such Additional Lawyer or (b) the Additional Funder Percentage to such Additional Funder, in each case, taking into account any reductions made to the portion of the Plaintiff Collection Moines which are or may be paid to any non-lawyer advisors to the Plaintiffs in accordance with the terms

6

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER                                    WOODS00045395

of the agreement then in place between the Plaintiffs and such non-lawyer advisor. For avoidance of doubt, no Active Lawyer shall bear any more or any less than its pro rata share of the reductions referred to in this Section 3(j).

(4)     Reporting Obligations.

The Firm shall provide timely updates to the Other Plaintiffs' Representatives on the status of its legal efforts on behalf of the Plaintiffs, and shall promptly respond to any reasonable request for information received from any of the Other Plaintiffs' Representative.

(5)     Other Attorneys.

The Plaintiffs have entered into, and expect to enter into, agreements with other attorneys to work on the Litigation.  These agreements are expected to differ from this Agreement in various ways.  For example, some of those attorneys will be compensated through a combination of hourly or monthly fees (with various degrees of discount or no discount) and contingent fee payments, or exclusively on a contingent basis.  Other attorneys may be retained to work without any contingent fees.  Any attorneys who the Plaintiffs agree to compensate, in whole or part, on a contingent basis shall be required to become parties to a master agreement to be agreed to by all firms representing the Plaintiffs on a contingency basis (the "Master Agreement").

(6)     Confidentiality of Client Information.

The Firm shall not disclose anyconfidential information of the Plaintiffs to any third parties, including otherclients, unless (a) specifically authorized by the Plaintiffsor theOther Plaintiffs' Representativesto do so or (b)legally required to do so.

(7)     Client Files.

In the course of the representation of the Plaintiffs, the Firm shallmaintain and safeguard the Plaintiffs' files to the same extent and in the same manner as the Firmmaintains its client files generally.  The Plaintiffs' files shall consist of all correspondence, pleadings,deposition transcripts, exhibits, physical evidence, experts' reports, attorney work product and other items related to the Firm's representation of the Plaintiffs.  The Plaintiffs' filesshall be and remain the property of the Plaintiffs.The Firm will provide the Other Plaintiffs' Representativeswith access to the Plaintiffs'files at such reasonable times as may be requested by the Other Plaintiffs' Representatives.   The Firm will dispose of the Plaintiffs' files after the conclusion of the Litigation in accordance with the Firm's document retention policies.

(8)     Conflicts of Interest.

The Firm confirms that it has performed a conflicts check on the known parties and is unaware of any conflict (either waivable or non-waivable) that would prevent or preclude the Firm's representation of the Plaintiffs.   Furthermore, the Firm represents that it has no preexisting attorney-client relationship with any party in the Litigation (other than the Plaintiffs).

7

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER                                    WOODS00045396

(9)    Individual Actions.

In the event that any person or entity (whether a party to the Litigation or otherwise), other than any Plaintiff, brings a legal action against the Firm or any attorney thereof relating to the Firm's or such attorney's representation of the Plaintiffs in connection with the Litigation(whether in Ecuador, the United States or elsewhere) (including, for avoidance of doubt, actions brought pursuant to pursuant to 28 U.S.C. § 1782) (each, an "Individual Action"), the Plaintiffs shall make available to the Firm and/or each such attorney the funds necessary to pay the reasonable costs of defending against such Individual Action (the "Defense Funds"). The Defense Fundsshall be paid out of and to the extent of the monies then available to fund the general expenses of the case.  Following a final, non-appealable order of a court of competent jurisdiction in respect of such Individual Action that the Firm or such attorney has committed actual fraud, professional malpractice or willful misconduct (or following the entry of a guilty plea or settlement agreement admitting the same), then the Plaintiffs may require that the Firm or such attorney pay to the Plaintiffs the amount of the Defense Funds actually paid by the Plaintiffs to or for the benefit of the Firm or such attorney, as applicable.

(10)    Arbitration of Disputes.

(a)    Any controversy or claim arising out of or relating to this Agreement, the relationship among the Plaintiffs' Representatives, the Plaintiffs, other attorneys involved in the Litigation or any of their affiliates or successors (the "Arbitration Parties") and the Firm,its attorneys and staff or any of their successors (the "Firm Arbitration Parties") or theservices provided by the Firm Arbitration Parties pursuant to this Agreement orotherwise shall be submitted to binding arbitration, in accordance with this Section 10, if the parties have been unable to resolve the dispute through negotiation, mediation or otherwise within thirty (30) days after one party has provided written notice of a dispute to the other party.  The Firm shall send any such notice to all three of the Plaintiffs' Representatives by registered overnight delivery service such as Federal Express or DHL at the last-known address of each such person in the Firm's records.By agreeing to arbitrate, the parties are agreeing to waive any right to a jury trial.The arbitration shall be conducted and administered by the International Centre for Dispute Resolution in accordance with its International Arbitration Rules (the "ICDR Rules"), this Agreement and the Federal Arbitration Act. In the event of a conflict, the provisions of the ICDR Rules shall control, except wherethe ICDR Rules conflict with this Agreement, in which case this Agreement shall control. Thearbitration shall be conducted before a panel of three arbitrators (all of whom shall be formerstate or federal judges, with at least five years judicial experience and each of whom shall be fluent speakers and readers of both English and Spanish), regardless of the size of thedispute, to be selected as provided in the ICDR Rules. The arbitration shall be commenced andheld in Miami, Florida, unless otherwise required by a person or entity who or which has provided funding to the Plaintiffs in respect of the Litigation. Any issue concerning the location of the arbitration, the extent towhich any dispute is subject to arbitration, the applicability, interpretation, or enforceability ofthese procedures, including any contention that all or part of these procedures are invalid orunenforceable, and any discovery disputes, shall be resolved by all of the arbitrators. No potential arbitrator may serve on the panel unless he or she has agreed in writing to be bound by these procedures.  To the extent state law is applicable, the arbitrators shall apply the substantivelaw of the State of New York. Each party shall, upon the

8

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER    WOODS00045397

written request of the other party,promptly provide the other with copies of all documents on which the producing party may relyin support of or in opposition to any claim or defense and a report of any expert whom theproducing party may call as a witness in the arbitration hearing. At the request of a party, andupon the showing of good cause, the arbitrators shall have the discretion to order production bythe other party or by a third party of other documents relevant to any claim or defense. Eachparty shall be entitled to depose a maximum of three witnesses (which number may not be increased by the arbitral tribunal), plus all experts designated to bewitnesses at the arbitration. The depositions shall be held within thirty (30) days of the makingof a request and shall be limited to a maximum of six hours per deposition. All objections arereserved for the arbitration hearing, except for objections based on privilege and proprietary orconfidential information.

(b)     All aspects of the arbitration shall be treated asconfidential and neither the parties nor the arbitrators may disclose the existence, content orresults of the arbitration, except as necessary to comply with legal or regulatory requirements.Before making any such disclosure, a party shall give written notice to all other parties and shallafford such parties a reasonable opportunity to protect their interests. The result of thearbitration shall be binding on the parties, and judgment on the arbitrators' award may be enteredin any court having jurisdiction. In no event shall the arbitrators have any authority to award punitive damages.

(c)     The parties acknowledge that the Plaintiffs intend to enter into agreements with other attorneys on or after the date of this Agreement and that all such agreements will contain provisions obligating the parties thereto to submit any disputes to binding arbitration substantially similar to the provisions of this Section10.  In the event of any dispute between the Plaintiffs and an attorney (whether active or inactive) or any other person or entity with a legitimate or alleged claim to Plaintiff Collection Monies (any such person, a "Claimant"), the Plaintiffs desire to resolve such dispute in a single arbitration proceeding involving all such Claimants.  In view of the foregoing, in the event of an arbitration proceeding involving the Plaintiffs and a Claimant, the Firm agrees to participate in such proceeding if it is joined by the Plaintiffs or any Claimant and agrees not to oppose joinder of other attorneys or the Claimants if sought by the Plaintiffs or a Claimant who or which is a party to the arbitration proceedings. Furthermore, the Firm agrees that under no circumstances shall it demand, claim or seek to obtain a greater amountor increased percentage of Plaintiff Collection Monies than it has agreed to in this Agreement and in the Master Agreement, and hereby unconditionally and irrevocably waives any right to make such a demand or claim in any arbitral, judicial or other proceeding anywhere in the world.

(d)     In the event of any dispute between a party hereto and any provider of funding or financing for the Litigation, the parties hereto agree to be bound by and comply with any arbitration provisions in the definitive documentation with such provider of funding or financing.

(11)   Controlling Law.

This Agreement shall be governed by and construed and interpreted in accordance with the laws of New York without reference to principles of conflict of laws.

9

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER

WOODS00045398

(12)    Privilege.

In the course of representing the Plaintiffs, the parties understand that therewill be a need for the Firm to communicate with the Other Plaintiffs' Representatives and the Plaintiffs and other counsel retained by the Plaintiffs. The partiesagree that all such communications are to be treated as confidential and protected to themaximum extent permitted under applicable law by the attorney/client, work product, jointprosecution, common interest, and all other applicable privileges and doctrines.

(13)    Modification in Writing.

No modification, amendment, waiver or release of any provisions of this Agreement or ofany right, obligation, claim or course of action arising hereunder shall be valid or binding for anypurpose unless in writing and duly executed by the party against whom same is asserted.

(14)    Entire Agreement.

This Agreement contains all the agreements between the parties hereto regarding thesubject matter of this Agreement and all prior and contemporaneous agreements and understandings between the parties with respect to the subject matter hereof are deemed mergedherein, including, without limitation, the letter agreements dated as of January 2, 2006 and April 27, 2006.  In the event of a conflict between the terms of this Agreement and the Master Agreement (once executed), the terms of the Master Agreement will prevail.

(15)    Termination of Agreement.

Either party may terminate this Agreement upon thirty (30) days notice in writing to theother party. The provisions of Clauses6,7,9-12, and14-19 shall survive the termination of thisAgreement.Upon the termination of this Agreement, the Firm shall no longer be a party to, or have any rights under, the Master Agreement or the Intercreditor Agreement.  If either party terminates this Agreement prior to the recovery by the Plaintiffs of amounts otherwise payable to the Firm under the Master Agreement(if applicable) or the Intercreditor Agreement, then in the event of a recoveryby Plaintiffs of any amounts otherwise so payable, the parties will negotiate in good faith a payment to the Firm on an equitable basis taking into account all relevant circumstances.

(16)    Confidentiality of Agreement.

The partieshereby acknowledge and agree that the information contained in thisAgreement is not known to thepublic, is confidential and proprietary, and is not to be disclosed by either party to any otherperson without the prior written approval of the other party except (a) to the extent necessary to comply with any applicable law, rule or regulation or thevalid order of any governmental agency or any court of competent jurisdiction and (b) as necessary to enforce its rights under, and perform its agreements and obligationsunder, this Agreement.

10

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER

WOODS00045399

(17)   Severability.

If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws effective during the term of this Agreement, such provision shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part of this Agreement; and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Agreement. Furthermore, in lieu of each such illegal, invalid or unenforceable provision, there shall be added automatically as a part of this Agreement a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

(18)   Language.

This Agreement has been drafted in English and Spanish, and the Parties will execute both versions. In the event of a conflict between the English version of this Agreement and the Spanish version, the English version shall control.

(19)   Assignment by Plaintiffs.

It is understood and agreed that the Plaintiffs and the Plaintiffs' Coordinators may establish a trust for the purpose of, among other things, more efficiently carrying out the Litigation (such trust, the "Litigation Trust"). In the event that the Litigation Trust is established, the Plaintiffs covenant and agree that they will (a) assign all of their respective rights and obligations under this Agreement to the Litigation Trust and (b) within ten (10) days of such assignment, one of the Other Plaintiffs' Representatives will provide notice thereof to the Firm at the address listed in the forepart to this Agreement

[Remainder of page intentionally left blank]

11

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER

WOODS00045400

IN WITNESS WHEREOF, the Plaintiffs, through their duly authorized representatives, and the Firm have executed this Agreement as of the date first written above.

PLAINTIFFS:

On behalf of each of the plaintiffs in the matter *Maria Aguinda y Otros v. Chevron Corporation*

By: _____ 06-01-11

Pablo Estenio Fajardo Mendoza, Esq., as Lead Counsel For and Ecuadorian Legal Representative of the Plaintiffs

El Frente de Defensa de la Amazonia

By: _____ 05/01/2011

Ermel Gabriel Chávez Parra, President

On behalf of the Asamblea de Afectados por Texaco

By: _____ 05-01-2011

Luis Yanza, as Coordinator under the POA

FIRM:

Donziger & Associates, PLLC

By: _____

Steven R. Donziger, Partner

Witness: _____

Witness: _____

Witness: _____

Witness: _____

12

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER

WOODS00045401

EXHIBIT A

| Plaintiffs' Coordinators: | Maria Clelia Reascos Revelo; |
|---|---|
| | Maria Magdalena Rodriguez Barcenes; |
| Asamblea de Afectados por Texaco (Assembly of Communities Affected by Texaco) comprising the Frente de Defensa de la Amazonia; Organization of the Indigenous Nationality Siona of Ecuador (ONISE); the Organization of the Indigenous Nationality Secoya of Ecuador; the Indigenous Federation of the Cofan Nationality of Ecuador (FEINCE); Los Kichwas Firmantes de la Demanda; and Los Colonos Afectados | Hugo Gerardo Camacho Naranjo; |
| | Jose Miguel Ipiales Chicaiza; |
| | Heleodoro Pataron Guaraca; |
| | Luiza Delia Tanguila Narvaez; |
| | Lourdes Beatriz Chimbo Tanguila; |
| | Maria Hortencia Viveros Cusangua; |
| | Segundo Angel Amanta Milan; |
| | Octavio Ismael Cordova Huanca; |
| | Elias Roberto Piyahuaje Payahuaje; |
| | Javier Piaguaje Payaguaje; |
| | Daniel Carlos Lusitande Yaiguaje; |
| El Frente de Defensa de la Amazonia | Benacio Fredy Cimbo Grefa; |
| | Guillermo Vincentepayaguaje Lusitante; |
| Plaintiffs: | Delfin Leonidas Payaguaje Payaguaje; |
| | Alfredo Donaldo Payaguaje Payaguaje; |
| | Teodoro Gonzalo Piaguaje Payaguaje; |
| Maria Victoria Aguinda Salazar; | Miguel Mario Payaguaje Payaguaje; |
| Carlos Grega Huatatoca; | Fermin Piaguaje Payaguaje; |
| Catalina Antonia Aguinda Salazar; | Reinaldo Lusitande Yaiguaje; |
| Lidia Alexandra Aguinda Aguinda; | Luis Agustin Payaguaje Piaguaje; |
| Patricio Alberto Chimbo Yumbo; | Emilio Martin Lusitande Yaiguaje; |
| Clide Ramiro Aguinda Aguinda; | Simon Lusitande Yaiguaje; |
| Luis Armando Chimbo Yumbo; | Armando Wilfrido Piaguaje Payaguaje; and |
| Beatriz Mercedes Grefa Tanguila; | Angel Justino Piaguaje Lucitante. |
| Lucio Enrique Grefa Tanguila; | |
| Patricio Wilson Aguinda Aguinda; | |
| Celia Irene Viveros Cusangua; | |
| Fransisco Matias Alvarado Yumbo; | |
| Fransisco Alvardo Yumbo; | |
| Olga Gloria Grefa Creda; | |
| Lorenzo Jose Alvardo Yumbo; | |
| Narcisa Aida Tanguila Narvaez; | |
| Berta Antonia Yumbo Tanguila; | |
| Gloria Lucrecia Tanquila Grefa; | |
| Fransisco Victor Tanguila Grefa; | |
| Rosa Teresa Chimbo Tanguila; | |
| Jose Gabriel Revelo Llore; | |

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER

WOODS00045402