# EXHIBIT 3



THE COMPANIES ACT OF GIBRALTAR

PRIVATE COMPANY LIMITED BY SHARES

MEMORANDUM OF ASSOCIATION

OF

AMAZONIA RECOVERY LIMITED



1.    The name of the company is Amazonia Recovery Limited (the "Company").

2.    The registered office of the Company will be situated in Gibraltar.

3.    The Company may do all such things as are lawful to be done by a company registered under the Companies Act subject only to any specified restriction on that power contained in this Memorandum of Association (this "Memorandum"). The purpose of the Company shall be (a) to hold and distribute monies in order to satisfy the expenses of the Claim (as defined in the Articles of Association of the Company (the "Articles")), (b) to receive the proceeds of the Award (as defined in the Articles), (c) to remit the Remediation Proceeds (as defined in the Articles) to the Remediation Trust (as defined in the Articles), (d) to remit all portions of the Award that are not part of the Assigned Proceeds (as defined in the Articles), other than Remediation Proceeds, to the party or parties entitled thereto, (e) to distribute the Available Proceeds in accordance with the Articles and (f) to engage in any other lawful activity which is ancillary to the foregoing as the Directors of the Company shall determine from time to time.

4.    The liability of the shareholders is limited.

5.    The authorised share capital of the Company is US$5,870 divided into:

    a)    200,000 Class A1 Participation Shares ("Class A1 Shares") having a par value of USD $0.001 per share;

    b)    200,000 Class A2 Participation Shares ("Class A2 Shares") having a par value of USD $0.001 per share;

    c)    200,000 Class A3 Participation Shares ("Class A3 Shares") having a par value of USD $0.001 per share;

    d)    200,000 Class A4 Participation Shares ("Class A4 Shares") having a par value of USD $0.001 per share;

    e)    200,000 Class A5 Participation Shares ("Class A5 Shares") having a par value of USD $0.001 per share;

Co-107788-1844378
Amazonia Recovery Limited
Document 033 (10)
AMENDED MEMORANDUM OF
ASSOCIATION

DEPOSITION EXHIBIT
Donziger 5056

PLAINTIFF'S
EXHIBIT
657
11 Civ. 0691 (LAK)

f)   200,000 Class A6 Participation Shares ("Class A6 Shares") having a par value of USD $0.001 per share;

g)   250,000 Class B1 Participation Shares ("Class B1 Shares") having a par value of USD $0.001 per share;

h)   250,000 Class B2 Participation Shares ("Class B2 Shares") having a par value of USD $0.001 per share;

i)   710,000 Class C Participation Shares ("Class C Shares") having a par value of USD $0.001 per share;

j)   25,000 Class D Participation Shares ("Class D Shares") having a par value of USD $0.001 per share;

k)   2,435,000 nominal shares ("Nominal Shares") having a nominal value of USD $0.001 per share; and

l)   1,000 special voting shares ("Special Voting Shares") having a nominal value of USD $1.00 per share.

6.   The Participation Shares shall be issued as redeemable preference shares.

We, the several Persons whose names, addresses and descriptions are subscribed wish to be formed into a company under the Memorandum and we agree to take the number of shares in the capital of that company set opposite our respective names.

We, the several persons whose names, addresses and descriptions are hereunto subscribed are desirous of being formed into a company in pursuance of this memorandum of association, and we respectively agree to take the number of shares in the capital of the company set opposite our respective names.

| Names, Addresses & Descriptions of Subscribers | Number of Shares Taken by Each Subscriber |
|---|---|
| GT Nominees Limited, 6A Queensway, Gibraltar. | 100 |
| Occupation: Limited Company | |
| Total number of shares taken: | 100 |

Dated the 4th day of May, 2012

James P. Byrne
For and on behalf of
GT Nominees Limited

Witness to the above signatures:

Adrian Jeffrey Hogg
6A Queensway
Gibraltar



THE COMPANIES ACT OF GIBRALTAR

—————————————

PRIVATE COMPANY LIMITED BY SHARES

—————————————

ARTICLES OF ASSOCIATION

OF

AMAZONIA RECOVERY LIMITED

Co-107788-1844379
Amazonia Recovery Limited
Document 034 (10)
AMENDED ARTICLES OF
ASSOCIATION

---

**DEFINITIONS**

1.    The following words have these meanings in these Articles of Association (these "<u>Articles</u>") unless the contrary intention appears:

| Words | Meaning |
|---|---|
| 1782 Actions | Actions relating to the Claim that have been brought by or against Chevron Corporation and/or its lawyers, advisors, experts, consultants, representatives or others by or against the Claimants and/or their lawyers, advisors, experts, consultants, representatives or others pursuant to 28 USC § 1782, including appeals. |
| Additional Class A Share | Any additional Class A Shares (other than Class A1 Shares through Class A6 Shares, inclusive) that are authorized and issued after the date of these Articles in accordance with the terms of these Articles. |
| Additional Class A Shareholder | A Shareholder who or which is a holder of Additional Class A Shares. |
| Administrator | The administrator of the Company appointed by the Directors in accordance with the provisions of these Articles, which, inter alia, shall provide administrative services to the Company. |
| Assigned Proceeds | The total proceeds of the Award, excluding (a) any portion of the Award consisting of or attributable to Remediation Proceeds, (b) any portion of the Award attributable to amounts that, under applicable law, may not be paid to the Company, (c) any portion of the Award which consists of the |

Costs and Interest Award, (d) any portion of the Award that consists of the Ecuadorian Proceeds, and (e) any portion of the Award that consists of the the Ecuadorian Legal Cost Award. For the avoidance of doubt, the Company has no right, title or interest in or to any part of the Award that does not constitute part of the Assigned Proceeds.

**Available Proceeds**

The total proceeds of the Award, reduced by (a) any portion of the Award consisting of or attributable to Remediation Proceeds, (b) any portion of the Award attributable to amounts that, under applicable law, may not be paid to the Company and/or thereafter distributed to the Shareholders, (c) any portion of the Award which consists of the Costs and Interest Award, (d) an amount equal to the then outstanding Senior Indebtedness of the Company in respect of the Claim, (e) any portion of the Award that consists of the Ecuadorian Proceeds (f) any portion of the Award that consists of the the Ecuadorian Legal Cost Award and (g) any other matter that reduces the proceeds available for distribution (such as, for example, fees payable to the Directors and the Secretary).

**Auditor**

The auditor of the Company appointed pursuant to Article 122 or Article 123.

**Award**

Any and all amounts paid in respect of the Claim, whether in lump sum or instalments, by the Defendants (including pursuant to an enforcement action against the Defendants and/or their assets and/or by way of settlement) to or on behalf of the Claimants and/or the Company (including, but not limited to, cash and/or assets received by or on behalf of the Claimants from or at the direction of the Defendants). The Award shall include Remediation Proceeds, punitive damages, amounts in respect of costs and expenses and/or sums received in connection with a settlement of the Claim. For the avoidance of doubt, the Award shall be reduced by and for, and shall not include, the following: (a) an amount equal to any taxes and similar assessments required to be paid by the Claimants or the Company, in respect of any portion of the Award received in any jurisdiction prior to the payment of such portion of the Award to the Claimants or the Company; and (b) the amount of any counterclaims or similar judgments which may be made against the Claimants and/or

the Company and which in the opinion of the Directors, having taken legal advice, are not frivolous or vexatious (but, any overprovision in respect of such counterclaims or similar judgments shall thereafter be released by the Directors and form part of the Award). Monies are considered to be "paid" when the monies are received by or on behalf of the Claimants and/or the Company.

Board                    The Board of Directors of the Company.

Board Observer           As defined in Article 76.

Business Day             Any day, other than a Saturday or Sunday, which is not a public holiday or a day on which banks are generally authorised or obliged by law or regulation to close in Gibraltar.

Claim                    All anticipated and unanticipated activities related to the *Maria Aguinda y Otros v. Chevron Corporation* proceeding, appeals from the judgment of the Provincial Court of Justice of Sucumbíos, Ecuador, enforcement proceedings, settlement initiatives and related matters, counterclaims or claims (including the 1782 Actions and any civil actions or proceedings under the Racketeer Influenced and Corrupt Organizations Act) by or against the Claimants and/or their lawyers, experts, advisors, consultants, representatives or others, and shall include, but not by way of limitation:

(a)     any and all court or arbitral proceedings or processes in connection with the Claim, including defending actions that may be brought by or at the direction of the Defendants against the Claimants or any of their advisors and any and all threats to the Claim;

(b)     all appellate, annulment or similar proceedings and proceedings on remand, as well as enforcement, ancillary, parallel or alternative dispute resolution proceedings and processes arising out of or related to the acts or occurrences alleged in the Claim (including arbitration, conciliation or mediation);

(c)     all re-filings or parallel filings of the Claim and any other legal, diplomatic or

administrative proceedings or processes founded on the underlying facts giving rise to or forming a basis for the Claim and involving one or more adverse parties, in which any Defendant or any Defendants' successor(s) in interest or assigns or affiliates is a party;

(d)   all ancillary or enforcement proceedings related to the facts or claims alleged from time to time or that could have been alleged in the Claim at any time; and

(e)   all arrangements, settlements, negotiations, or compromises made between the Claimants and any adverse party having the effect of resolving any the Claimants' claims against any adverse party that are or could be or could have been brought in the Claim.

| | |
|---|---|
| Claimants | The Plaintiffs, the FDA and the Union. |
| Class A Share | As applicable, a Class A1 Share, Class A2 Share, Class A3 Share, Class A4 Share, Class A5 Share, Class A6 Share or Additional Class A Share. |
| Class A Shareholder | As applicable, a Class A1 Shareholder, a Class A2 Shareholder, a Class A3 Shareholder, a Class A4 Shareholder, Class A5 Shareholder, a Class A6 Shareholder or any Additional Class A Shareholder. |
| Class A Minimum Return | In respect of each Class A Share, an amount equal to (i) the amount expressly stated in the Subscription Deed for such Class A Share to be the Funding Amount for such Class A Share multiplied by (ii) the number, if any, that is expressly stated in the Subscription Deed for such Class A Share to be the Class A Minimum Return for such Class A Share. |
| Class A1 Share | A Class A1 Participation Share of US$0.001 in the capital of the Company. |
| Class A1 Shareholder | A Shareholder who or which is a holder of Class A1 Shares. |
| Class A2 Share | A Class A2 Participation Share of US$0.001 in the capital of the Company. |
| Class A2 Shareholder | A Shareholder who or which is a holder of Class |

A2 Shares.

| | |
|---|---|
| Class A3 Share | A Class A3 Participation Share of US$0.001 in the capital of the Company. |
| Class A3 Shareholder | A Shareholder who or which is a holder of Class A3 Shares. |
| Class A4 Share | A Class A4 Participation Share of US$0.001 in the capital of the Company. |
| Class A4 Shareholder | A Shareholder who or which is a holder of Class A4 Shares. |
| Class A5 Share | A Class A5 Participation Share of US$0.001 in the capital of the Company. |
| Class A5 Shareholder | A Shareholder who or which is a holder of Class A5 Shares. |
| Class A6 Share | A Class A6 Participation Share of US$0.001 in the capital of the Company. |
| Class A6 Shareholder | A Shareholder who or which is a holder of Class A6 Shares. |
| Class B Share | As applicable, a Class B1 Share and/or a Class B2 Share. |
| Class B Shareholder | A Class B1 Shareholder and/or a Class B2 Shareholder. |
| Class B1 Share | A Class B1 Participation Share of US$0.001 in the capital of the Company. |
| Class B1 Shareholder | A Shareholder who or which is a holder of Class B1 Shares. |
| Class B2 Share | A Class B2 Participation Share of US$0.001 in the capital of the Company. |
| Class B2 Shareholder | A Shareholder who or which is a holder of Class B2 Shares. |
| Class C Share | A Class C Participation Share of US$0.001 in the capital of the Company. |
| Class C Shareholder | A Shareholder who or which is a holder of Class C Shares. |
| Class D Minimum Return | An amount equal to the greater of (a) USD |

| | |
|---|---|
| | $25,000,000 and (b) 2.5% of the Total Proceeds. |
| Class D Share | A Class D Participation Share of US$0.001 in the capital of the Company. |
| Class D Shareholder | A Shareholder who or which is a holder of Class D Shares. |
| Companies Act | The Companies Act of Gibraltar 1930, as amended. |
| Connected Persons | As defined in sections 1122 and 1123 of the UK Corporation Taxes Act 2010. |
| Costs and Interest Award | That portion of the Award which is made up of amounts that the Defendants from time to time are ordered to pay to reimburse the Claimants for the costs of enforcement of the Claim or interest on the Judgment, but excluding, for avoidance of doubt, any portion of the Award made up of the amounts set forth in points Thirteen and Fourteen of the Judgment or the ten percent (10%) additional amount payable by operation of law to the FDA under the Judgment. |
| Defendants | Collectively, Chevron Corporation (a/k/a Texaco; ChevronTexaco; Chevron), any other party listed as a defendant in respect of the *Maria Aguinda y Otros v. Chevron Corporation* [No. 002-2003] litigation or any related litigation, recognition and/or enforcement proceedings (including, without limitation, any subsidiaries, affiliates and successors in interest of any of the foregoing), or any other Person added or joined to such litigation from time to time as a defendant or indemnitor or against whom proceedings are asserted or threatened in respect of the Claim. |
| Directors | The directors of the Company from time to time. |
| Ecuadorian Legal Cost Award | The part of the Award that consists of the additional one-tenth of one percent (0.1%) of the Judgment awarded to the Claimants to cover legal fees and disbursements for the attorneys who represented the Claimants in Ecuador pursuant to the appellate order dated January 3, 2012. |
| Ecuadorian Proceeds | Any part of the Award obtained pursuant to the enforcement of the Judgment in Ecuador. |
| Engagement Agreement | An agreement between any Class B Shareholder and one or more of the Claimants pursuant to |

| | |
|---|---|
| | which such Class B Shareholder has undertaken to provide services to one or more of the Claimants in respect of the Claim. |
| FDA | El Frente de Defensa de la Amazonia. |
| Funding Amount | With respect to any Class A Shareholder, the aggregate amount of funding actually paid by such Class A Shareholder to the Company, as set forth in such Class A Shareholder's Subscription Deed(s). |
| Inactive Lawyers | Any lawyer(s) and/or law firm(s) who or which previously represented any of the Claimants in respect of the Claim but who or which are no longer active in the Claim. |
| Investor Director | A Director appointed by the Class A1 Shareholder in accordance with Article 71 or Article 72. |
| Judgment | The judgment rendered by the Provincial Court of Sucumbíos on February 14, 2011 in the *Maria Aguinda y Otros v. Chevron Corporation* [No. 002-2003] litigation. |
| Majority Consent | For any matter as to which a Majority Consent is expressly required by these Articles, the approval of such matter by the holders of a majority of the Class A Shares in issue (as if they were voting as a single class), plus the holders of a majority of the Class B Shares in issue *(as if they were voting as a single class)* plus the holders of a majority of the Special Voting Shares in issue. For avoidance of doubt, any Majority Consent for any matter shall be valid if it is contained in a written document signed (in one or more counterparts) by a sufficient number of Shareholders to evidence the approval of such matter in accordance with the prior requirements, or if it is voted on at duly called meetings of each of the Class A Shareholders, the Class B Shareholders and the Special Voting Shareholders. |
| Memorandum | The Memorandum of Association of the Company, as amended from time to time. |
| Participation Shareholder | A Shareholder who or which is a holder of Participation Shares. |
| Participation Shares | Shares in the Company which are entitled to participate in distributions in accordance with the provisions of Article 114 and which, at the date of |

the adoption of these Articles, consists of the Class A Shares, Class B Shares, Class C Shares and Class D Shares.

Person

Means an individual, a firm, a body corporate, a partnership, a joint venture, an unincorporated body or association, a trust or an authority.

Plaintiffs

The individual plaintiffs in the *Maria Aguinda y Otros v. Chevron Corporation* [No. 002-2003] litigation.

Pro-Rata Share

For any Participation Shareholder, the percentage obtained by dividing (a) the number of Participation Shares held by such Participation Shareholder by (b) the number of issued and outstanding Participation Shares.

Punitive Damages Trust

The trust established under the laws of Gibraltar which will receive the portion of the Award specifically for punitive damages in accordance with the Judgement.

Remediation Proceeds

All proceeds of the Award attributable to amounts paid or collected pursuant to, or in respect of amounts described in, Section Thirteen of the Judgment. For the avoidance of doubt, the Company has no right, title or interest in or to any Remediation Proceeds. In the event that any such Remediation Proceeds are paid to the Company, the Company shall hold such Remediation Proceeds on trust for the Remediation Trust, and immediately remit the same to the Remediation Trust.

Remediation Trust

The trust established under the laws of Ecuador, as required by Section Fifteen of the Judgment, to administer the costs needed to carry out the remediation measures contemplated in Section Thirteen of the Judgment.

Secretary

The secretary of the Company as appointed by the Directors.

Senior Indebtedness

Outstanding senior indebtedness of the Company or the Claimants which consists of the following: (a) unpaid non-non-contingent fees and expenses of the lawyers and non-legal advisors and consultants engaged by the Claimants in respect of the Claim; (b) indebtedness for any indemnity obligations of the Company owed to the Claimants and/or any

Class B1 Shareholder relating to claims raised against the Claimants or any Class B1 Shareholder by any Inactive Lawyers; and/or (c) additional indebtedness incurred by the Company to support the resolution of the Claim as quickly as possible and in the best interests of the Claimants.

| | |
|---|---|
| Settlement | An agreed settlement of the Claim between the Defendants and the Claimants which fully and finally resolves the Claim. |
| Shareholder | A holder of Shares. |
| Shares | The shares (Participation Shares or otherwise) from time to time in the capital of the Company. |
| Special Voting Shareholder | A Shareholder who or which is a holder of Special Voting Shares. |
| Special Voting Shares | Non-redeemable, non-participating voting Shares in the Company held by the FDA. |
| Subordinated Indebtedness | Outstanding indebtedness of the Company or the Claimants (as to which the Company has agreed to pay) that: |

(a)  has been contractually subordinated to the rights of the Class A Shareholders to be paid all Class A Minimum Returns due to the Class A Shareholders pursuant to Article 114; and

(b)  has been contractually agreed by the holders of such Subordinated Indebtedness to be paid to them either (i) after the Class A Shareholders have been paid all the amounts due to them pursuant to these Articles or (ii) at the same time as the Class A Shareholders are paid the amounts due to them pursuant to Article 114(i), such amounts being paid as between the Class A Shareholders and in respect of Subordinated Indebtedness in accordance with Article 114(i),

and which, in any such case, is subordinated and/or to payment of which is to be deferred in accordance with subordination and deferral provisions which have previously been approved for use for this purpose by the Company's Gibraltar legal advisers.

| | |
|---|---|
| Subscription Deed | An agreement in the form approved by the |

|  | Directors pursuant to which any Person subscribes for Shares (and which, for the avoidance of doubt, may be entered into by a Person who or which is to be the beneficiary of the Shares to be issued pursuant thereto, with such Shares being registered in the name of such Person or of a nominee to hold them on behalf of such Person). |
|---|---|
| Total Proceeds | The sum of (a) the Available Proceeds, (b) the Remediation Proceeds and (c) any other amount excluded from Available Proceeds under sub paragraphs (b) to (f) of that definition that the Directors determine are subsequently available for distribution (which, for example, may include unspent monies that were received in respect of the Costs and Interest Award). |
| Union | Unión de Afectados y Afectadas por las Operaciones Petroleras de Texaco (formerly the Asamblea de Afectados por Texaco). |

2.   In these Articles, unless there be something in the subject or context inconsistent with such construction, the following rules of interpretation shall be applied:

(a)   a reference to these Articles or another instrument or to any article or clause or schedule to any of them includes any variation or replacement of any of them;

(b)   a reference to a statute, ordinance, code or other law, unless stated otherwise, is to a statute, ordinance, code or other law of Gibraltar and includes regulations and other instruments under it and consolidations, amendments, re-enactments or replacements of any of them;

(c)   the singular includes the plural and vice versa;

(d)   a reference to a Person includes a reference to such Person's executors, administrators, successors, substitutes (including, without limitation, any Persons taking by novation) and assigns;

(e)   a reference to any thing (including any amount) is a reference to the whole and each part of it and a reference to a group of Persons is a reference to all of them collectively, to any two or more of them collectively and to each of them individually;

(f)   the words "including", "for example" or "such as" do not limit the meaning of the words to which the example relates to that example or examples of a similar kind;

(g)   law means common law, principles of equity, and laws made by parliament (and laws made by parliament include laws and regulations and other instruments under them, and consolidations, amendments, re-enactments or replacements of any of them); and

    (h)    the words:

        (i)    "may" shall be construed as permissive; and

        (ii)    "shall" shall be construed as imperative.

3.    The regulations in Table "A", being the first schedule in the Companies Act, shall not apply to the Company.

4.    The Company does not keep, and is prohibited from keeping, its register of shares outside Gibraltar.

5.    The Company is a private company within the meaning of the Companies Act and accordingly these provisions apply:

    (a)    the right to transfer and transmit Shares is restricted in the manner provided in these Articles;

    (b)    the number of Shareholders (exclusive of the Persons who are in the employment of the Company and the Persons who have been formerly in the employment of the Company who were, while in such employment and have continued after the determination of such employment to be, Shareholders) is limited to fifty (50); provided, that where two or more Persons hold one or more Shares jointly, such Persons shall for the purpose of these Articles be treated as a single Shareholder; and

    (c)    any invitation to the public to subscribe for any shares or debentures or debenture stock of the Company is prohibited.

## SHARE CAPITAL

6.    The authorised share capital of the Company is specified in the Memorandum.

7.    On or before the issue or allotment of a Share, the Directors shall determine to which class it shall be attributable, and each Share shall be issued as a Share of the class so designated. Once a Share has been designated as being of a particular class, it may not subsequently be re-designated as being of some other class.

8.    Participation Shares shall have no voting rights attached thereto (except in relation to the giving of a Majority Consent and at class meetings of the holders of Participation Shares held under Article 19 and Article 68). Participation Shareholders shall be entitled to attend general meetings but shall not, unless otherwise provided in these Articles, be entitled to vote at such meetings or have any fees or expenses incurred or associated with attending general meetings be reimbursed by the Company.

9.    Nominal Shares shall have no voting rights and shall not participate in any general meeting of the Shareholders nor in any profit or distribution of the Company (except the repayment of the amount paid up on the Nominal Shares in the event of liquidation or winding up of the Company).

10.    The Directors are authorised to issue fractions of a Share in a manner that they may resolve,

and each fractional Share shall have the corresponding fractional rights, obligations, designations, powers, preferences, qualifications, limitations and liabilities of a whole share of the same class. Fractional Shares shall be issued to four (4) decimal places. If the fifth (5th) decimal is a number equal to or greater than five (5), the forth decimal place shall be rounded up to the nearest whole number. If the fifth (5th) decimal is a number less than five (5), the forth decimal place shall be rounded down to the nearest whole number.

11. The Shares have no pre-emptive, conversion, exchange or other rights or privileges except as set out in these Articles.

12. Subject to the Companies Act and these Articles (including, without limitation, Article 16), any Shares for the time being unissued shall be under the control of the Directors who may allot and dispose of or grant options over it or fractions of it to any Persons, on any terms and in any manner as the Directors think fit.

13. No Shareholder may dispose of all or any of his or its Shares at any time except in accordance with these Articles.

14. The Participation Shares shall confer on the holders of the issued Participation Shares in a liquidation or winding-up of the Company the rights to receive payments of the amounts set forth in Article 128.

15. No Shares issued by the Company shall be issued in bearer form.

**VARIATION OF SHARE CAPITAL AND MODIFICATION OF RIGHTS**

16. If the Directors determine that (a) one or more additional lawyers and/or law firms should be retained by any of the Claimants and/or the Company in order to assist with the pursuit or defence of the Claim ("Additional Lawyers"), (b) one or more additional advisors should be retained by any of the Claimants and/or the Company in order to assist with the pursuit or defence of the Claim ("Additional Advisors") and/or (c) there are insufficient funds currently available to the Claimants and/or the Company to pay the reasonably anticipated costs and expenses of the Claim and, as a result, the Claimants and the Company should seek additional funding for the Claim from one or more current or additional funders ("Additional Funders"), the Company may from time to time (i) issue additional Class B1 Shares to such Additional Lawyers, (ii) issue additional Class B2 Shares to such Additional Advisors and/or (iii) issue additional further Class A Shares to such Additional Funders, in each case on such terms as the Directors may determine in their sole discretion; provided, the Directors may not, without a Majority Consent for such action, issue any such additional Shares pursuant to this Article 16 if (w) such issuance would cause the total number of issued and outstanding Participation Shares to exceed one million one hundred thousand (1,100,000) or (x) as of the date of such proposed issuance, a total of one million one hundred thousand (1,100,000) or more Participation Shares are then outstanding; provided further, the Directors may not, without the prior written consent of the holders of a majority of the Class A2 Shares in issue, issue any such additional Shares pursuant to this Article 16 if (y) such issuance would cause the total number of issued and outstanding Participation Shares to exceed one million two hundred fifty thousand (1,250,000) or (z) as of the date of such proposed issuance, a total of one million two hundred fifty thousand (1,250,000) or more Participation Shares are then outstanding. Solely for purposes of determining whether any consent is required under this Article 16 for the issuance of additional Participation Shares, any Participation Share which has previously been repurchased or redeemed (other

than a Participation Share repurchased or redeemed for an amount not exceeding its par value) shall be deemed still to be in issue.

All such new Shares issued pursuant to this Article 16 shall be subject to the provisions of the Memorandum and these Articles.

17.   Subject to the provisions of the Companies Act, the Company may in the discretion of the Directors from time to time reduce its share capital in any way and may if and so far as is necessary alter its Memorandum and these Articles by reducing the amount of its share capital and Shares accordingly.

18.   Subject to the provisions of the Companies Act, the Company may also from time to time in the discretion of the Directors cancel any Shares that, as of the date of the Director's decision to do so, have not been taken or agreed to be taken by any Person and may diminish the amount of its share capital by the same amount of the Shares so cancelled.

19.   Subject to the provisions of the Companies Act, all or any of the special rights and privileges attached to any class of Shares as enumerated in Article 20 may only (whether or not the Company is being wound up) be varied with the consent in writing of the holders of not less than three-fourths of the issued Shares of that class or with the sanction of a resolution passed at a meeting of the holders of the Shares of that class by not less than three-fourths of the votes cast at such meeting. For such purposes, the Directors may treat all the classes of Shares as forming one class if they consider that all such classes would be affected in the same way by the proposal(s) under consideration, but in any other case shall treat them as separate classes. Nothing in this Article 19 shall impair the ability of the Company to issue any authorised Shares in the manner described in Article 16.

20.   The special rights and privileges attached to any class of Shares shall be deemed to be varied by:

(a)   any amendment to the Memorandum or these Articles affecting the rights or obligations of such class including, in the case of Class A Shareholders only, the creation of a new class of Shares which has rights to distribution of Available Proceeds in priority to or pari passu with such existing class pursuant to Article 114;

(b)   any amendment to the final sentence of Article 94;

(c)   any reduction in the Company's issued share capital (excluding any redemption of Participation Shares and excluding any reduction of share capital of any class of Shares other than the class of Shares the capital of which is proposed to be reduced);

(d)   any variation, waiver or release by the Company of any obligation or liability of any of the Claimants, the trustees of the Punitive Damages Trust and/or any Shareholder and/or any other Person (whether made in a Subscription Deed or otherwise) regarding (i) the assignment, transfer or other grant of rights to the Company of or over the right to receive the proceeds of any part of the Award and/or (ii) any trust conferred in favour of the Company over the right to receive the proceeds of any part of the Award or of any settlement in respect of the Award; and/or

(e)     any merger, reconstruction or amalgamation affecting the Company or its share capital or any resolution proposed to approve the winding up of the Company.

The special rights and privileges attached to the Class A1 Shares and the Class A2 Shares shall be deemed to be varied by (i) any amendment to the definitions of "Assigned Proceeds", "Award", "Claim", "Participation Shares", "Pro-Rata Share" "Remediation Proceeds" "Senior Indebtedness", "Subordinated Indebtedness" and "Total Proceeds" in Article 1, (ii) any amendment to the definition of "Majority Consent" in Article 1 that directly affects the special rights and privileges of the Class A1 Shares and the Class A2 Shares, or (iii) any amendment to the provisions of Articles 2(b), 16, 71, 72, 90, 91, 94, 96, 98(a), 107, 109 and 114.

## ISSUE OF SHARES

### Nominal Shares

21.     Nominal Shares shall be issued following a resolution of the Directors with respect thereto only at par and only for the purpose of providing funds for the redemption of Participation Shares.

22.     Subject to the provisions of the Companies Act, the Company may from time to time redeem at par all or any of the Nominal Shares for the time being issued and outstanding out of any money that may lawfully be applied for such purpose; provided, the Company shall give notice to the holders of the Nominal Shares to be redeemed not less than one month's notice (unless such holder has waived such notice requirement).

### Participation Shares

23.     The terms on which and the price per Share at which the issue of Participation Shares shall be effected and the time of such issue shall be as set out in the relevant Subscription Deed. Notwithstanding the foregoing, when issuing Class A Shares, each Class A Share issued must have the same Class A Minimum Return as each other share of that class (i.e., each Class A1 Share must have the same Class A Minimum Return as each other Class A1 Share, each Class A2 Share must have the same Class A Minimum Return as each other Class A2 Share, etc.), and the Company may not issue a Class A Share on any other basis.

24.     The Participation Shares shall only be issued by the Company where a Subscription Deed has been entered into by the prospective Shareholder whose identity has been approved by the Directors; provided, that the Directors may, in their discretion, enter into a Subscription Deed with a Person who or which is to be the beneficial owner of Participation Shares but which are to be registered in the name of a nominee. Notwithstanding the forgoing, no Class B Shareholder or Class C Shareholder (or Connected Persons of any such Persons) may be issued with or otherwise acquire or own any Class A Shares; provided, that:

24.1    the provisions of this sentence shall not prevent or prohibit a nominee of a Shareholder from holding different classes of Shares on behalf of different beneficial owners (provided that the provisions of this Article are satisfied by reference to the different beneficial owners and their Connected Persons); and

24.2    a Class B Shareholder may be issued or allotted Class A Shares so long as he or it

has subscribed for such Class A Shares in cash on bona fide, arms-length terms.

25. The amount payable (in cash or other assets) by the holder of any Participation Shares on the first allotment of such Shares to such holder shall be the amount set forth in such Shareholder's Subscription Deed with respect to such Participation Shares.

26. The amount payable by the holder of any Participation Shares on any subsequent allotment of such Shares shall be equal to the amount set forth in such Shareholder's Subscription Deed for the Participation Shares issued to such Shareholder in such subsequent allotment.

27. The Directors reserve the right to request such information from prospective Shareholders as they in their absolute discretion deem necessary. In the event of delay or failure by the applicant to produce any such information, the Directors may refuse to accept the application and the related subscription money.

28. Without assigning any reason for their decision, the Directors may reject subscriptions in their absolute discretion by majority vote.

29. The Directors may at any time and from time to time call on any holder of Participation Shares by notice in writing to provide the Directors with such information and evidence as they shall require on any matter connected with or in relation to such holder of Participation Shares in order to satisfy themselves on any matter concerning in their opinion the status, standing, or tax residence of the Company.

## REDEMPTION OF PARTICIPATION SHARES

30. The Participation Shares may only be repurchased or redeemed under extraordinary circumstances (such as, but not limited to, protecting the interests of all of the holders of Participation Shares in the equity of the Company), and such repurchase or redemption must be approved by (a) all of the Directors (each acting in his or her absolute discretion) and (b) the holder of the Participation Shares which are to be repurchased or redeemed; provided, that if Participation Shares are to be repurchased or redeemed for an amount not exceeding their par value, the Investor Director's consent to any such repurchase or redemption shall not be required.

31. In the event of redemption of Shares, the amount to be paid on the redemption of such Shares shall be such amount as would be paid in respect of such Shares out of the assets then available for distribution as if the Company were to be wound up at such time and such assets were to be distributed among the Shareholders at such time as if such assets were Available Proceeds subject to distribution requirements of Article 114.

32. The Company and the relevant Shareholder shall agree upon the time and place for redemption.

33. At the date fixed for redemption of any of the Participation Shares, dividends shall cease to accrue on such Participation Shares.

34. At the time and place so fixed, the registered holders of the Participation Shares to be redeemed must deliver up to the Company the relevant share certificates, if any have been issued, or contract notes for cancellation or the proffering of such other evidence as to title as the Directors may require, and the Company shall pay them the redemption money in

Plaintiff's Exhibit 657   p. 18 of 38

respect of such Participation Shares. If any holder of Participation Shares shall fail or refuse to surrender the relevant evidence as to title for such Participation Shares (including relevant share certificates, if any have been issued) or shall fail or refuse to accept the redemption money payable in respect of them, such money shall be retained and held by the Company in trust for such holder but without interest or further obligation whatever.

35.   Notwithstanding anything to the contrary contained herein, if any Class B1 Shareholder withdraws from its representation of the Claimants or is terminated by the Claimants, then all of the Class B1 Shares held by such Class B1 Shareholder shall be automatically redeemed or repurchased by the Company for a price equal to the par value of such Class B1 Shares. For the avoidance of doubt, the Investor Director's consent to any such redemption shall not be required for any such redemption or repurchase.

36.   If any Participation Share is redeemed or otherwise retired, such Participation Share shall return to the status of an authorised but unissued Participation Share.

**TRANSFER AND TRANSMISSION OF SHARES**

37.   No transfer of any Shares shall be made or registered without the prior written consent of a majority of the Directors (each acting in his or her absolute discretion). Save to the extent otherwise expressly agreed in any Subscription Deed, without assigning any reason for his or her decision, the Directors may decline to allow and/or register any transfer of any Share proposed or purported to be transferred whether or not it is a fully paid Share. Any purported transfer in violation of these Articles shall be null and void. In the event of a proposed or purported transfer to a third party, the transferor shall be obligated to provide to the Company such information concerning the transferee as the Company may request. Notwithstanding the foregoing, the Directors shall register any transfer of Shares which is expressly provided for in the Subscription Deed relating to those Shares, but only if such transfer of such Shares complies in every respect with each and every term and provision of such Subscription Deed.

38.   *The Company shall not be obliged to register any transfer made in breach of these Articles and the Shares comprised in any transfer so made shall carry no rights whatsoever, unless and until, in each case, the breach is rectified to the absolute satisfaction of the Directors.*

39.   Subject to the receipt of the prior written consent of the Directors as set forth in Article 37, all approved transfers of Shares shall be effected by transfer in writing in any form as the Directors may accept (in their absolute discretion). Any instrument of transfer shall be signed by or on behalf of the transferor who or which shall be deemed to remain the holder until the name of the transferee is entered in the Register.

40.   Every instrument of transfer shall be left at the Company's registered office (or such other place as the Directors may prescribe) with the certificate, if such has been issued, of every Share to be transferred and such other evidence as the Directors may reasonably require to prove the title of the transferor or his or its right to transfer the Shares, and the instrument of transfer and any such certificate shall remain in the custody of the Directors but shall be at all reasonable times produced at the request and expense of the transferor or transferee or their respective attorneys. In the event such transfer is approved in accordance with Article 37, a new certificate may be delivered to the transferee (or held in custody on his or its behalf) after the transfer is completed and registered on his or its application and when necessary a balance certificate shall be delivered if required by him or it in writing. A

reasonable fee (for the purpose of paying all costs and expenses (including legal fees) incurred by the Company in the transfer process) determined by the Directors may be charged for each transfer and also for the registration of every probate notice power of attorney or document tendered for registration and shall be paid before registration.

41.   Subject to these Articles and any requirements from time to time imposed by the Directors, the Company may issue Shares to a nominee or trustee for any Person or Persons.

42.   The Company shall keep the register of Shares in accordance with the Companies Act.

43.   On the death of a Shareholder, the survivors of the deceased (where the deceased was a joint holder) and the executors of the deceased (where the deceased was a sole holder) shall be the only Persons recognised by the Company as having any title to or interest in his shares; but nothing herein shall release the estate of a deceased joint holder from any liability in respect of any share jointly held.

44.   A Person entitled to any Shares in consequence of death, disability or insolvency shall not be entitled to receive notice of or attend or to vote at any meeting or (except as regards the receipt of such dividends as the Directors shall not elect to retain) to exercise any of the rights of a holder unless and until he shall have been registered as holder.

**RIGHTS PERSONAL TO SHAREHOLDERS**

45.   The rights granted to a holder of Participation Shares in terms hereof and as a Shareholder shall at all times be personal to it and shall not be capable of cession or assignment without the prior written consent of the Directors in accordance with Article 37.

**LIEN**

46.   Without prejudice to any provisions of these Articles, the Company shall have a first and paramount lien on all Shares registered in the name of a Shareholder (whether solely or jointly with others) for the debts and liabilities of such Shareholder (either alone or jointly with any other Person and whether a Shareholder or not) to or with the Company whether the period for payment or discharge of those debts and liabilities shall have actually arrived or not. Such lien shall extend to all dividends from time to time declared in respect of such Shares. Unless otherwise agreed, the registration of a transfer of Shares shall operate as a waiver of the Company's lien (if any) on such Shares. In the case of any Class A Shares, any such lien shall only relate to any Funding Amount due but not paid on those Class A Shares.

47.   For the purpose of enforcing such lien, the Company may sell (in such manner as the Directors think fit) any Shares on which the Company has a lien; provided, that no such sale shall be made unless some sum in respect of which the lien exists is presently payable or until the expiration of fourteen (14) days after a notice in writing stating and demanding payment of the sum then payable and giving notice of intention to sell in default shall have been served on the holder for the time being of the Shares or the Person entitled by reason of his death or bankruptcy to the Shares. For purposes of giving effect to any such sale, the Directors may authorise any Director or other Person to transfer the Shares to the purchaser of those Shares so sold.

48.   The net proceeds of such sale after payment of the cost of such sale shall be applied in or

Plaintiff's Exhibit 657   p. 20 of 38

towards payment or satisfaction of the debt or liability in respect whereof the lien exists so far as the same is presently payable and any residue shall (subject to a like lien for debts or liabilities not presently payable as existed on the Shares prior to the sale) be paid to the Person entitled to the Shares at the time of the sale. The purchaser shall be registered as the holder of the Share transferred and he shall not be bound to see to the application of the purchase money nor shall his title to the Shares be affected by any irregularity or invalidity in the proceedings in reference to the sale.

## GENERAL MEETINGS

49.   Subject to the Companies Act, the Company shall in each year hold a general meeting as its annual general meeting in addition to any other meeting in that year. General meetings (a) shall be held at such time and place as may be determined by the Directors and (b) may be held by teleconference, videoconference or similar technology which allows all attendees of such meeting to speak to and to hear one another.

50.   Notices of every general meeting shall be given in any manner authorised by these Articles to every Shareholder and to:

   (a)   each Director;

   (b)   the Board Observer;

   (c)   the Auditor, and

   (d)   such other Person(s) as the Directors shall at any time and from time to time determine.

51.   Any Shareholder present either personally or by proxy at any meeting of the Company shall for all purposes be deemed to have received due notice of such meetings and where requisite of the purposes for which such meeting was convened.

52.   All general meetings (other than annual general meetings) shall be called extraordinary general meetings, may be convened whenever the Directors think fit and may be held at any place whether in Gibraltar or elsewhere.

53.   Such meeting shall also be convened by such requisitionists as provided by Section 159 of the Companies Act.

54.   All business shall be deemed special if such business is either (a) transacted at an extraordinary general meeting or (b) transacted at an annual general meeting (with the exception of declaring or approving the payment of dividends, the consideration of the accounts and reports of the Directors and Auditor(s), the election of Directors and Auditors in place of those retiring, and the appointment and the fixing of the remuneration of the Directors and the Auditors).

55.   At any general meeting, a resolution put to the vote of the meeting shall be decided on a show of hands of those Shareholders entitled to vote unless a poll is demanded (before or on the declaration of the result of the show of hands) by one Shareholder present or by proxy and entitled to vote in which case it shall be taken in such a manner and at such place as the chairman of the meeting may direct (including the use of ballot or voting papers or tickets)

and the result of a poll shall be deemed to be a resolution of the meeting at which the poll was demanded.

56. The chairman of the meeting may in the event of a poll appoint scrutineers and may adjourn the meeting to some place and time fixed by him for the purpose of declaring the result of the poll.

57. A poll demanded on any question other than the election of a chairman of the meeting or an adjournment shall be taken at such time and place as the chairman of the meeting directs not being more than 30 days from the day of the meeting or adjourned meeting at which the poll was demanded.

58. The demand for a poll shall not prevent the continuance of a meeting for the transaction of any business other than the question on which the poll was demanded.

59. A demand for a poll may be withdrawn and no notice need be given of a poll not taken immediately.

60. All resolutions of the Shareholders passed at a duly called meeting of the Shareholders shall be validly passed if passed in accordance with these Articles at a meeting attended by the holders of a majority of the Special Voting Shares in person or by proxy.

61. A memorandum in writing signed by all Shareholders for the time being entitled to so vote and pasted in or attached to the minute book shall be as effective for all purposes as a resolution of the Company passed in general meeting duly convened and constituted, and may consist of several instruments in the like form each executed by one or more of the Shareholders. If any such memorandum is executed, a copy of such memorandum must forthwith be delivered to each Participation Shareholder.

**VOTES OF MEMBERS**

62. In the case of joint holders of Shares, such Persons shall not have the right of voting individually but shall elect one of their number to represent them and vote in their names in default of which the vote of the first-named who tenders a vote whether in Person or by proxy shall be accepted to the exclusion of the votes of the other joint holders and for this purpose "first-named" shall be determined by the order in which the names stand in the register in respect of the Shares.

63. No Shareholder shall, unless the Directors otherwise determine, be entitled to vote at any general meeting either personally or by proxy or to exercise any privileges as a Shareholder unless all calls and other sums presently payable by him in respect of Shares in the Company of which he is the holder or one of the joint holders have been paid.

64. No objection shall be raised to the qualification of any voter except at the meeting or adjourned meeting at which the vote objected to is given or tendered, and every vote not disallowed at such meeting shall be valid for all purposes. Any such objection made in due time shall be referred to the chairman of the meeting whose decision shall be final and conclusive.

65. Any instrument appointing a proxy shall be in writing in a form reasonably acceptable to the Directors, signed under the hand of the appointer or of his attorney duly authorised in

writing or if the appointer is a corporation either under its common seal or under the hand of an officer or attorney so authorised.

66. Any Person (whether a Shareholder or not) may be appointed to act as proxy, if approved in writing by a majority of the Directors, acting reasonably. A Shareholder may appoint more than one proxy to attend on the same occasion, but where a Shareholder appoints more than one proxy only one such proxy may vote on a show of hands.

67. Any corporation that is a Shareholder may by resolution of its directors or other governing body or officers authorised by such body authorise such Person as it thinks fit to act as its representative at any meeting of the Company and the Person so authorised shall be entitled to exercise the same power on behalf of the corporation that he represents as that corporation could exercise if it were an individual member of the Company.

## SEPARATE MEETING OF MEMBERS OF A CLASS

68. The Directors may at any time convene a separate meeting of any class of holders of Shares to address all or any of the special rights and privileges attached to the class of Shares in accordance with Article 20.

69. A separate meeting of any class may also be convened by such requisition as is provided in the Companies Act.

70. All the provisions of these Articles relating to general meetings of the Company shall, the necessary changes having been made, apply to every separate meeting except that:

    (a)    not less than fourteen (14) days' notice of any such meeting shall be required other than a meeting for the passing of a special resolution; and

    (b)    if at any adjourned meeting a quorum is not present, then those Shareholders of the class who are present or by proxy shall be a quorum.

## DIRECTORS

71. Unless otherwise determined by the Company in a general meeting, the number of Directors shall not be less than four (4) and shall not be more than seven (7). One Director shall be appointed in writing by a majority of the Class A1 Shareholders after consultation with duly appointed representatives of the Special Voting Shareholders (the "Investor Director"). All other Directors shall be appointed in writing by the holders of a majority of the Special Voting Shares. Each Director shall hold office until s/he resigns or is disqualified in accordance with Article 83 or is removed in accordance with Article 72.

72. Subject to the provisions of these Articles, the Special Voting Shareholders shall have power at any time and from time to time to appoint, by majority vote thereof, any Person to be a Director either to fill a vacancy on the Board or as an addition to the existing Directors. Any Director so appointed shall hold office only until the next following annual general meeting and shall then be eligible for re-election by the holders of a majority of the Special Voting Shares. The Company may by ordinary resolution of the Special Voting Shareholders appoint additional Directors, but may only remove any Directors (other than the Investor Director) from office by extraordinary resolution of the Special Voting Shareholders. The Investor Director may be removed from time to time by written notice

given to the Company by the holders of a majority of the Class A1 Shares after consultation with duly appointed representatives of the Special Voting Shareholders.

73.     Each Director shall be entitled to such remuneration for the work performed by him on behalf of the Company as the Special Voting Shareholders from time to time may resolve; provided, in no event shall such remuneration exceed USD $40,000 per annum.  Such remuneration shall be deemed to accrue monthly and shall be payable on a quarterly basis (to the extent of available cash).  Each Director shall also be entitled to reimbursement for all reasonable travel expenses properly and actually incurred by him in attending and returning from meetings of the Directors or any committee of the Directors or general meetings of the Company or, if approved in writing by the Board, in connection with the business of the Company.

74.     In addition to the remuneration determined pursuant to Article 73, the Directors may, after consultation with representatives of the Special Voting Shareholders, grant special bona fide remuneration to any Director who, being so called on, shall be willing to render any special or extra services to the Company. Such special bona fide remuneration may be made payable to such Director in addition to or in substitution for his ordinary remuneration as a Director determined pursuant to Article 73, and may be made payable by a lump sum or by way of salary or commission or by any or all of those modes or otherwise.

75.     A Director need not be a Shareholder.

**BOARD OBSERVER**

76.     The holders of a majority of the Class B1 Shares shall have the right to designate and appoint one (1) non-voting observer on the Board (the "Board Observer"), who will be entitled to be present at all meetings of the Board and receive all notices, communications and information otherwise received by the voting members of the Board.  The Board Observer may not be removed or replaced unless such removal or replacement is directed or consented to by the holders of a majority of the Class B1 Shares.

**ALTERNATE DIRECTORS**

77.     Each Director shall, after consultation with representatives of the Special Voting Shareholders, have the power to nominate another Director or any other Person to act as an alternate director and at his discretion to remove such alternate director and on such appointment being made the alternate director may in the absence or incapacity of the Director he represents attend any meeting of Directors and exercise and discharge all the functions powers and duties of a director of the Company.

78.     Any Director who is appointed as alternate director pursuant to Article 77 shall be entitled at a meeting of the Directors to cast a vote of his appointer in addition to the vote to which he is entitled in his own capacity as a Director of the Company and for quorum purposes shall count as a separate and additional Director present but not so less than one individual shall be capable of constituting a quorum.

79.     Any Person appointed as an alternate director shall vacate that office as an alternate director if and when the Director for whom he has been appointed vacates his office as Director.

80.     The remuneration of an alternate director shall be payable out of the remuneration payable

to the Director appointing him and the proportion of that remuneration shall be agreed between them.

81. Every instrument appointing an alternate director shall be in such form as the Directors may determine.

82. The appointment of an alternate director and any revocation of that appointment shall take effect when lodged at the registered office of the Company.

## DISQUALIFICATION AND RETIREMENT OF DIRECTORS

83. The office of a Director shall be vacated if:

   (a) he resigns his office by notice in writing by him and left at the registered office of the Company;

   (b) he becomes bankrupt or makes any arrangements or composition with his creditors *generally*;

   (c) he becomes of unsound mind (as legally determined by a court or competent authority);

   (d) he is absent from meetings of the Directors for four successive meetings without leave expressed by a resolution of the board and the Directors resolve that he vacate his office; or

   (e) he is removed from office by extraordinary resolution of the Special Voting Shareholders (other than the Investor Director who may be replaced from time to time by written notice given to the Company by the holders of a majority of the Class A1 Shares after consultation with representatives of the Special Voting Shareholders).

84. At least seven (7) days' prior notice in writing shall be given to the Company of the intention of any Shareholder with the right to vote for a Director to propose any Person other than a retiring Director for election to the office of Director and the willingness of such Person to be so elected; provided, that if the Shareholders who or which are present at a general meeting unanimously consent, the chairman of such meeting may waive the said notice and submit to the meeting the name of any Person so nominated. The provisions of this Article 84 shall not apply with respect to the appointment of the Investor Director.

## TRANSACTIONS WITH DIRECTORS AND RELATED PARTIES

85. A Director may hold any other office of the Company (other than the office of Auditor) in conjunction with his office of Director on such terms as to tenure of office or otherwise as the Directors may determine.

86. No Director shall be disqualified by his office from contracting with the Company as vendor, purchaser or otherwise nor shall any such contract or any contract or arrangement entered into by or on behalf of the Company in which any Director is in any way interested render the Director liable to account to the Company for any profit realised by any such contract or arrangement by reason of such Director holding that office or of the fiduciary

relationship established by that office but the nature of his interest must be declared by him at the meeting of the Directors at which the question of entering into the contract or agreement is first taken into consideration, or if the Director was not at the date of that meeting interested in the proposed contract or arrangement, then at the next meeting of the Directors held after he becomes so interested. A general notice in writing given to the Directors by any Director to the effect that he is a shareholder of any specified company or firm and is to be regarded as interested in any contract or arrangement that may thereafter be made with that company or firm shall (if the Director shall give the same at a meeting of the Directors or shall take reasonable steps to procure that the same is brought up and read at the next meeting of the Directors after it is given) be deemed a sufficient declaration of interest in relation to any contract or arrangement so made.

87.   Except as otherwise expressly set forth in these Articles, a Director shall be entitled to vote and be counted in the quorum in respect of any resolution concerning any contract or arrangement or any other proposal whatsoever in which he has any material interest.

88.   Any Director may act by himself or his firm in a professional capacity for the Company and he or his firm shall be entitled to remuneration for professional services as if he were not a Director; provided, nothing in these Articles shall authorise a Director or his firm to act as Auditor to the Company.

89.   Any Director may continue to be or become director, managing director, manager or other officer or shareholder of any company in which the Company may be interested and (unless otherwise agreed) no such Director shall be accountable for any remuneration or other benefits received by him as a director, managing director, manager, or other officer or shareholder of any such other company.

90.   Subject to the provisions of Article 91, the Company may not enter into any agreement or arrangement with any Person who or which is:

(a)   a Director; and/or

(b)   a Shareholder; and/or

(c)   a Claimant (whether an individual and/or the FDA and/or the Union); and/or

(d)   any Connected Persons with any of the above;

without the prior written approval of the Investor Director (acting reasonably).

91.   The provisions of Article 90 shall not apply to (a) the entry into by the Company of any agreement(s) and/or arrangement(s) in the ordinary course of its business (including, without limitation, subscription agreements or deeds for the issue of Class B Shares) with lawyers who are engaged in connection with the Claim (including enforcement of the Award), (b) upon terms and conditions that are similar in all material respects to those that would apply to an agreement or arrangement entered into on an arm's length basis with an unrelated third party.

**POWERS OF DIRECTORS**

92.   The business of the Company shall be managed by the Directors who may exercise all the powers of the Company that are not by the Companies Act or these Articles required to be exercised by the Company in general meeting, subject nevertheless to any relevant provisions of the Companies Act and these Articles.

93.   The Directors may, after consultation with representatives of the Special Voting Shareholders, from time to time and at any time by power of attorney, appoint any Person or any fluctuating body of Persons (whether nominated directly or indirectly by the Directors) as the attorney or attorneys of the Company for such purposes and with such powers authorities and discretion (not exceeding those vested in or exercisable by the Directors under these Articles) and for such period and subject to such conditions as they may think fit and any such other power of attorney may contain such provisions for the protection and convenience of Persons dealing with any such attorneys as the Directors may think fit and may also authorise any such attorney to sub-delegate all or any of the powers authorities and discretions vested in him.

94.   *All cheques, promissory notes, drafts, bills of exchange and other negotiable or transferable instruments and all receipts for money paid to the Company shall be signed, drawn, accepted, endorsed or otherwise executed as the case may be in such manner as the Directors shall from time to time by resolution determine.* Notwithstanding the forgoing, with respect to a given Person in any given calendar month, the Company may not make any payments in excess of USD $250,000.00, either individually or in the aggregate over such calendar month to such Person (including the Connected Persons of such Person) unless the Company has given the Investor Director at least five (5) days prior notice of such payment.

95.   The Directors shall at all times be advised by an advisory steering committee that will be appointed by the Claimants to advise and assist the Claimants in respect of the Claim (including, without limitation, with respect to remediation efforts).

## ACHIEVEMENT OF THE PURPOSE

96.   The Directors shall do all that is reasonably within their power and control to:

   (a)   achieve the purpose of the Company as set forth in the Memorandum (including, without limitation, distributing Available Proceeds once received in accordance with <u>Article 114</u>); and

   (b)   limit the business of the Company to the achievement of the purpose as set forth in the Memorandum (and activities ancillary thereto).

## PROCEEDINGS OF DIRECTORS

97.   The Directors may meet together for the dispatch of business, adjourn and otherwise regulate their meetings as they see fit. Questions arising at any meeting shall be determined by a majority of votes. In case of an equality of votes, the chairman shall have a second or casting vote. A Director may and the Secretary on the requisition of a Director shall at any time summon a meeting of the Directors. No meeting of the Directors may take place unless all Directors and the Board Observer are given sufficient notice to attend said meeting either in person or via teleconference.

98.     The quorum for the Directors is as follows:

    (a)    No business may be transacted at any meeting of the Board unless a quorum is present (either in person or by telephone or other audio device). The quorum for the transaction of the business of the Board shall be three Directors (including the Investor Director while one remains in office, but in all events subject to the following provisions). If within one hour from the time appointed for a meeting of the Board a quorum is not present as a result of the Investor Director not being present for any reason, such meeting shall be adjourned until the second (2nd) Business Day following the date of the adjourned meeting (or such later date as may be determined by a majority of the Directors present at such adjourned meeting), and email notice of such rescheduled meeting (including date, time and place) shall be given to each Director, such email notice to be valid notice of such rescheduled meeting notwithstanding anything to the contrary contained in these Articles. If within one hour from the time appointed for the rescheduled meeting of the Board a quorum is not present as a result of the Investor Director not being present for any reason, any three Directors present at such rescheduled meeting shall constitute a quorum; and

    (b)    No business may be transacted at any meeting of any committee of the Directors unless a quorum is present (either in person or by telephone or other audio device). The quorum for the transaction of the business of any committee of the Directors shall be a simple majority of the Directors appointed to said committee.

99.     The continuing Directors or a sole continuing Director may act despite any vacancies in their number but if and so long as the number of Directors is reduced below the minimum number fixed by or in accordance with these Articles the continuing Directors or Director may act for the purpose of filling up vacancies in their number or of summoning general meetings of the Company, but not for any other purpose. If there be no Directors or Director able or willing to act, then any Special Voting Shareholder may summon a general meeting of the Special Voting Shareholders for the purposes of appointing additional Directors.

100.   The Directors may from time to time elect and remove a chairman and, if they think fit, a deputy chairman of the Board and determine the period for which they respectively are to hold office. The chairman or failing him the deputy chairman shall preside at all meetings of the Directors but if there be no chairman or deputy chairman or if at any meeting the chairman or deputy chairman be not present within five minutes after the time appointed for holding the same the Directors present may choose one of their number to be chairman of the meeting. Notwithstanding anything to the contrary in the Memorandum or these Articles, the Investor Director may not be elected, appointed or otherwise act as chairman or deputy chairman of the Board or at any meeting of the Company or the Shareholders, and has no right to cast a deciding vote on or in respect of any matter or decisions to be taken by the Board.

101.   A resolution in writing signed by all the Directors for the time being entitled to receive a notice of a meeting of the Directors shall be as valid and effectual as a resolution passed at a meeting of the Directors duly convened and held and may consist of several documents in the like form each signed by one or more of the Directors.

102.   A meeting of Directors or of a committee may be validly held even though Directors may

not be in the same place provided that they are in constant communication with each other throughout by telephone, television or other form of communication.

103.   A meeting of the Directors for the time being at which a quorum is present shall be competent to exercise all powers and discretions for the time being exercisable by the Directors.

104.   The Directors may, after consultation with representatives of the Special Voting Shareholders, delegate any of their powers to committees consisting of such of their body as they think fit. Any committee so formed shall in the exercise of the powers so delegated conform to any regulations that may be imposed on them by the Directors.

105.   The meetings and proceedings of any such committee consisting of one or more Directors shall be governed by the quorum and other provisions of these Articles regulating the meetings and proceedings of the Directors so far as the same are applicable and are not superseded by any regulations made by the Directors under the last preceding article.

106.   All acts approved or undertaken by or at any meeting of Directors or committee of Directors or by any Person acting as a Director (other than the Investor Director) shall, even though it be afterwards discovered that there was some defect in the appointment of any such Director or Person acting as aforesaid or that they or any of them were disqualified or had vacated office or were not entitled to vote, be as valid as if every such Person had been duly appointed and was qualified and had continued to be a Director and had been entitled to vote if such acts are ratified by the Directors at a later date.

## BORROWING POWERS

107.   Subject to these Articles, the Directors may exercise all the powers of the Company to borrow or raise money and incur or secure any debt or obligation of or binding on the Company in any manner (including by the issue of debentures (perpetual or otherwise)) and to secure the repayment of any money borrowed, raised or owing by mortgage, charge, pledge or lien on the whole or any part of the property or assets (whether present or future) of the Company and also by a similar mortgage, charge, pledge or lien to secure and guarantee the performance of any obligation or liability undertaken by the Company or any third party. The Directors may pass a resolution that limits the amount of such borrowings or indebtedness that the Directors cause the Company to incur, and such resolution may not be amended, revised or rescinded without the prior written consent of the holders of (a) a majority of each class of Class A Shares then in issue, (b) a majority of the Class B Shares then in issue and (c) the Special Voting Shares then in issue.

## SECRETARY

108.   The Directors shall appoint a Secretary and may also appoint an assistant secretary. Anything required or authorised to be done by or in the presence of the Secretary may if the office is vacant or the Secretary is absent or incapable of acting be done by or in the presence of any assistant secretary or if there is no assistant secretary present or capable of acting by or in the presence of any officer of the Company authorised generally or specially in that behalf by the Directors and any such assistant secretary or officer shall in such circumstances be a Secretary of the Company for the purposes of the Companies Act; provided, that any provisions of these Articles requiring or authorising a thing to be done by or to a Director and the Secretary shall not be satisfied by its being done by or to the same

Person acting both as Director and as or in the place of the Secretary.

## ADMINISTRATOR

109. With the prior consent of the Investor Director (if there is any such Investor Director then in office), such consent not to be unreasonably withheld, delayed or conditioned, the Directors shall appoint the Administrator. Without the prior consent of the Investor Director (if there is any such Investor Director then in office), such consent not to be unreasonably withheld, delayed or conditioned, the Directors shall not remove and/or replace any Administrator.

## SEAL

110. The Directors shall provide for the safe custody of the Seal and the Seal shall never be used except by the authority of a resolution of the Directors or of a committee of the Directors authorised by the Directors in that behalf. The Directors may from time to time make such regulations as they see fit (subject to the provisions of these Articles relating to share certificates) determining the Persons and the number of such Persons in whose presence the Seal shall be used and (subject as aforesaid) until otherwise determined the Seal shall be affixed in the presence of two Directors or of one Director and the Secretary or some other Persons duly authorised by the Directors.

## DIVIDENDS

111. No dividends shall be paid on Nominal Shares or Special Voting Shares.

112. The Company may by resolution of the Directors declare and pay dividends in money, shares or other property but dividends shall only be declared and paid out of Available Proceeds. If dividends are paid in specie, the Directors shall have responsibility for establishing and recording (in the resolution of the Directors authorising the dividend) a fair and proper value for the assets to be so distributed.

113. Subject to the provisions of Article 114, the Directors may from time to time pay to the Shareholders such interim dividends as appear to the Directors to be justified by the profits of the Company.

114. Subject only to the provisions of Article 115, the Directors shall declare and pay dividends within thirty (30) Business Days of the end of each calendar quarter in which Available Proceeds are received by the Company, as follows:

   (a) First, if and to the extent that any Class D Shareholder has not received dividends or other distributions in an aggregate amount equal to the Class D Minimum Return times the quotient of (A) the number of Class D Shares held by such Class D Shareholder divided by (B) the number of authorised Class D Shares (such amount for each Class D Shareholder, such Class D Shareholder's "Class D Portion"), then such Class D Shareholder shall receive a portion of the Available Proceeds equal to the lesser of (X) the unpaid portion of such Class D Shareholder's Class D Portion and (Y) the Available Proceeds *times* the quotient of (1) the number of Class D Shares held by such Shareholder *divided by* (2) the aggregate amount of the Class D Shares held by all Class D Shareholders; and thereafter

   (b) Second, if and to the extent that any Class A1 Shareholder has not received

dividends or other distributions in an aggregate amount equal to its Class A Minimum Return, then such Class A1 Shareholder shall receive a portion of the Available Proceeds equal to the unpaid portion of its Class A Minimum Return; provided, that if the Available Proceeds are insufficient to pay all Class A1 Shareholders the unpaid portion of their respective Class A Minimum Returns, such Class A1 Shareholder shall receive a portion of the Available Proceeds equal to the Available Proceeds *times* the quotient of (i) the number of Class A1 Shares held by such Class A1 Shareholder *divided by* (ii) the aggregate amount of Class A1 Shares held by all Class A1 Shareholders who or which have not received dividends in aggregate amount equal to such Class A1 Shareholder's Class A Minimum Return; and thereafter

(c)     Third, if and to the extent that any Class A2 Shareholder has not received dividends or other distributions in an aggregate amount equal to its Class A Minimum Return, then such Class A2 Shareholder shall receive a portion of the Available Proceeds equal to the unpaid portion of its Class A Minimum Return; provided, that if the Available Proceeds are insufficient to pay all Class A2 Shareholders the unpaid portion of their respective Class A Minimum Returns, such Class A2 Shareholder shall receive a portion of the Available Proceeds equal to the Available Proceeds *times* the quotient of (i) the number of Class A2 Shares held by such Class A2 Shareholder *divided by* (ii) the aggregate amount of Class A2 Shares held by all Class A2 Shareholders who or which have not received dividends in aggregate amount equal to such Class A2 Shareholder's Class A Minimum Return; and thereafter

(d)     Fourth, if and to the extent that any Class A3 Shareholder has not received dividends or other distributions in an aggregate amount equal to its Class A Minimum Return, then such Class A3 Shareholder shall receive a portion of the Available Proceeds equal to the unpaid portion of its Class A Minimum Return; provided, that if the Available Proceeds are insufficient to pay all Class A3 Shareholders the unpaid portion of their respective Class A Minimum Returns, such Class A3 Shareholder shall receive a portion of the Available Proceeds equal to the Available Proceeds *times* the quotient of (i) the number of Class A3 Shares held by such Class A3 Shareholder *divided by* (ii) the aggregate amount of Class A3 Shares held by all Class A3 Shareholders who or which have not received dividends in aggregate amount equal to such Class A3 Shareholder's Class A Minimum Return; and thereafter

(e)     Fifth, if and to the extent that any Class A4 Shareholder has not received dividends or other distributions in an aggregate amount equal to its Class A Minimum Return, then such Class A4 Shareholder shall receive a portion of the Available Proceeds equal to the unpaid portion of its Class A Minimum Return; provided, that if the Available Proceeds are insufficient to pay all Class A4 Shareholders the unpaid portion of their respective Class A Minimum Returns, such Class A4 Shareholder shall receive a portion of the Available Proceeds equal to the Available Proceeds *times* the quotient of (i) the number of Class A4 Shares held by such Class A4 Shareholder *divided by* (ii) the aggregate amount of Class A4 Shares held by all Class A4 Shareholders who or which have not received dividends in aggregate amount equal to such Class A4 Shareholder's Class A Minimum Return; and thereafter

(f)   Sixth, if and to the extent that any Class A5 Shareholder has not received dividends or other distributions in an aggregate amount equal to its Class A Minimum Return, then such Class A5 Shareholder shall receive a portion of the Available Proceeds equal to the unpaid portion of its Class A Minimum Return; provided, that if the Available Proceeds are insufficient to pay all Class A5 Shareholders the unpaid portion of their respective Class A Minimum Returns, such Class A5 Shareholder shall receive a portion of the Available Proceeds equal to the Available Proceeds *times* the quotient of (i) the number of Class A5 Shares held by such Class A5 Shareholder *divided by* (ii) the aggregate amount of Class A5 Shares held by all Class A5 Shareholders who or which have not received dividends in aggregate amount equal to such Class A5 Shareholder's Class A Minimum Return; and thereafter

(g)   Seventh, if and to the extent that any Class A6 Shareholder has not received dividends or other distributions in an aggregate amount equal to its Class A Minimum Return, then such Class A6 Shareholder shall receive a portion of the Available Proceeds equal to the unpaid portion of its Class A Minimum Return; provided, that if the Available Proceeds are insufficient to pay all Class A6 Shareholder the unpaid portion of their respective Class A Minimum Returns, such Class A6 Shareholder shall receive a portion of the Available Proceeds equal to the Available Proceeds *times* the quotient of (i) the number of Class A6 Shares held by such Class A6 Shareholder *divided by* (ii) the aggregate amount of Class A6 Shares held by all Class A6 Shareholders who or which have not received dividends in aggregate amount equal to such Class A6 Shareholder's Class A Minimum Return; and thereafter

(h)   Eighth, if and to the extent that any Additional Class A Shareholder has not received dividends or other distributions in an aggregate amount equal to its Class A Minimum Return, then such Additional Class A Shareholder shall receive a portion of the Available Proceeds equal to the unpaid portion of its Class A Minimum Return; provided, that if the Available Proceeds are insufficient to pay all Additional Class A Shareholders the unpaid portion of their respective Class A Minimum Returns, such Additional Class A Shareholder shall receive a portion of the Available Proceeds equal to the Available Proceeds *times the* quotient of (i) the number of Additional Class A Shares held by such Additional Class A Shareholder *divided by* (ii) the aggregate amount of Additional Class A Shares held by all Additional Class A Shareholders who or which have not received dividends in aggregate amount equal to such Additional Class A Shareholder's Class A Minimum Return; and thereafter

(i)   Ninth, the remaining amount of Available Proceeds shall be distributed to the Class A Shareholders and the Class B Shareholders until each such Shareholder has received (when taken together with all previous dividends and other distributions received by such Shareholder in respect of its Class A Shares and/or Class B Shares, as applicable, including any sums received in respect of any Class A Minimum Returns) an amount equal to such Shareholder's Pro-Rata Share of the Total Proceeds; provided, that

(A)   if there are insufficient amounts available to satisfy the entitlements of the Class A Shareholders and the Class B Shareholders in full, the Company shall pay to the Class A Shareholders and the Class B Shareholders the

maximum amount capable of being paid by way of dividend or other distribution, such amount to be paid as between such Shareholders, pari passu and proportionately, on a pro rata basis based on the amount due to each under this Article 114(i)

(B)     in accordance with the provisions of Article 115(a), the Directors may elect that, rather than paying all or some of the amounts then due to the Class B Shareholders on their Class B Shares pursuant to this Article 114(i), the Company instead may repay all or some of the Subordinated Indebtedness (not exceeding an amount that would otherwise then have been payable to the Class B Shareholders on their Class B Shares pursuant to this Article 114(i)), in which event (i) the Company shall pay to the Class B Shareholders under this Article 114(i) such amount as is due to them less the amount of any Subordinated Indebtedness paid by the Company pursuant to Article 115(a), and (ii) the Company shall pay the amount of such Subordinated Indebtedness (but only at such time as it would otherwise have paid amounts on the Class B Shares which the Directors have elected are not to be paid); and thereafter

(j)     Tenth, in the event that the Directors have withheld and not distributed any amounts due to a Class B Shareholder pursuant to pursuant to Article 115(a) below, and instead have used and applied such withheld amounts in satisfaction of outstanding Subordinated Indebtedness, such Class B Shareholder shall receive a portion of the Available Proceeds in an amount equal to his or its proportionate share of such withheld amounts until such Class B Shareholder has received the full amount of dividends or distributions that it would otherwise have been entitled to receive had such amounts not been withheld by the Directors; and thereafter

(k)     any remaining Available Proceeds shall be paid to the Class C Shareholders.

For the avoidance of doubt, if a Participation Share is transferred, amounts previously paid to a prior holder of that Participation Share shall be regarded as having been paid to the then current holder of that Participation Share for the purposes of determining entitlements pursuant to this Article 114.

115.   Notwithstanding anything to the contrary contained in Article 114 above:

(a)     the Directors may elect to withhold and not distribute any amounts due to the Class B Shareholders pursuant to Article 114(i) above, and instead use and apply such amounts in satisfaction of any outstanding Subordinated Indebtedness, in which event, such amounts shall not be deemed to have been paid or distributed to the Class B Shareholders for purposes of calculating their respective Pro-Rata Share of the Total Proceeds; and

(b)     the Company may become the subject of legal claims and, in certain circumstances, may be prevented from distributing sums to the Participating Shareholders pending resolution of such claims.  In either of such circumstances, the failure of the Company to declare, make or pay any dividends or distributions pursuant to Article 114 while the Company is the subject of or is subject to such restrictions shall not, of itself, give rise to any claim by any Participating Shareholder for damages.  For the avoidance of doubt, nothing in this Article 115(b) shall prevent any

Participating Shareholder from bringing and enforcing claims in respect of allegations that the Company has improperly paid money to any Person.

116. It is acknowledged that (a) from time to time, one or more Persons may pay sums or amounts to the Company that constitute part of the Award but that do not constitute Assigned Proceeds, and (b) the Company does not own, and has no right, title or interest in or to, any part of the Award that does not constitute Assigned Proceeds. In the event that any sums or amounts that constitute part of the Award but that do not constitute Assigned Proceeds are paid to the Company, then notwithstanding anything to the contrary contained elsewhere in these Articles:

(a) if such sums or amounts constitute Remediation Proceeds, such Remediation Proceeds shall not be distributed or distributable to any Participation Shareholder, but instead shall be held on trust by the Company for the Remediation Trust and immediately remitted and delivered to the Remediation Trust;

(b) if such sums or amounts do not constitute Remediation Proceeds, such sums or amounts shall not be distributed or distributable to any Participation Shareholder, but instead shall be held on trust by the Company for the benefit of the FDA and immediately remitted and delivered as directed by the FDA;

(c) nothwithstanding sub-clause (b) above, if such sums or amounts constitute the Ecuadorian Legal Cost Award, such sums shall not be distributed or distributable to any Participation Shareholder, but instead shall be held on trust by the Company for the benefit of the attorneys who represented the Claimants in Ecuador and remitted and delivered to the attorneys who represented the Claimants in Ecuador after any dividends in Article (114)(a)-(i) have been declared and issued; and

(d) neither the Company nor any Shareholder (by virtue of its capacity as a Shareholder) shall have any right in or claim to any portion of the Award consisting of or attributable to Remediation Proceeds or any other part of the Award that does not constitute Assigned Proceeds.

117. Unclaimed dividends may be invested or otherwise made use of by the Directors for the benefit of the Company until claimed. The counterparty risk in respect of any such unclaimed dividends will be borne by those entitled to receive the dividends and shall not be the responsibility of the Company and/or the Claimants. No dividends shall bear interest against the Company. Any dividend unclaimed after a period of three years from the date of declaration shall be forfeited and shall revert to the Company.

118. Any resolution declaring a dividend on any Share, or any resolution of the Directors for the payment of a fixed dividend on the date prescribed for the payment of that dividend, may specify that the same shall be payable to the Persons registered as the holders of such Shares at the close of business on a particular date, even though it may be a date prior to that on which the resolution is passed (or, as the case may be, that prescribed for payment of a fixed dividend), and thereon the dividend shall be payable to them in accordance with their respective holdings so registered, but without prejudice to the rights inter se in respect of such dividend of transferors and transferees of any Shares.

## ACCOUNTS

119.  The Directors shall cause to be kept proper books of accounts with respect to:

    (a)   all sums of money received and expended by the Company and the matters in respect of which such receipts and expenditure take place; and

    (b)   all sales and purchases by the Company; and

    (c)   the assets and liabilities of the Company, and in the absence of fraud, the decision of the Directors as to the value of the assets shall be conclusive, unless a question of law is involved.

120.  The books of account shall be kept at the Company's registered office or at such other place as the Directors think fit and shall always be open to inspection by the Directors.

121.  Shareholders may inspect such accounts or book or document of the Company as authorised by the Directors from time to time or by the Company in general meeting.

## AUDITOR

122.  The Directors shall at each annual general meeting appoint an Auditor or Auditors to hold office from the conclusion of that meeting until the conclusion of the next annual general meeting.

123.  The first Auditor(s) may be appointed by the Directors at any time before the first annual general meeting of the Company and the Auditor(s) so appointed shall hold office until the conclusion of that meeting.

124.  The Directors may fill any casual vacancy in the office of Auditor(s) but while any such vacancy continues the surviving or continuing auditors, if any, may act.

125.  The remuneration of any Auditor(s) shall be fixed by the Directors.

## NOTICES

126.  Any notice or document may be served by the Company on any Shareholder either personally or by sending it through the post as a prepaid letter addressed to such Shareholder at his address as appearing in the register. In the case of joint holders of Shares notice shall only be given to that one of the joint holders whose name stands first in the register in respect of the joint holding and notice so given shall be sufficient notice to all the joint holders.

127.  Any notice or document delivered or sent by post to or left at the registered address of any Shareholder shall even though that such Shareholder be then dead or insolvent and whether or not the Company has notice of his death or insolvency be deemed to have been duly served in respect of any Shares registered in the name of such Shareholder as sole or joint holder unless his name at the time of the service of the notice or document shall have been removed from the Register as the holder of the Shares in question and such service shall for all purposes be deemed a sufficient service of such notice or document on all Persons interested (whether jointly with or as claiming through or under him) in the Share.

## WINDING UP

128.    In the event of any voluntary or involuntary liquidation, dissolution or winding up of the affairs of the Company, after payment of all liabilities of the Company and subject to the Companies Act, the assets available for distribution among the Shareholders shall then be applied as though such funds were Available Proceeds subject to the distribution requirements of Article 114 provided that, before any sums are paid pursuant to Article 114(k) an amount equal to the nominal value of each Special Voting Share and each Nominal Share shall be paid on those Shares.

129.    If the Company shall be wound up a liquidator appointed by the Directors may with the authority of a special resolution of the Company and any other sanction required by the Companies Act divide among the Shareholders (who would be entitled to such distribution) in specie or kind the whole or any part of the assets of the Company and whether or not the assets shall consist of property of a single kind and may for such purposes set such value as he deems fair on any asset to be divided as aforesaid and may determine how such division shall be carried out as between such Shareholders. The liquidator may with the like authority vest any part of the assets in trustees on such trusts for the benefit of Shareholders as the liquidator with the like authority shall think fit and the liquidation of the Company may be closed and the Company dissolved but so that no Shareholder shall be compelled to accept any Shares in respect of which there is any liability.

## INDEMNITY

130.    Every Director, Secretary and other officer or servant of the Company shall be indemnified by the Company against and it shall be the duty of the Directors to pay all costs losses and expenses that any such officer or servant may incur or become liable to by reason of any contract entered into or in any way in discharge of his duties including legal expenses and the amount for which such indemnity is provided shall immediately attach as a lien on the property of the Company and have priority as between the Shareholders over all other claims.

131.    No Director, Secretary or other officer or servant of the Company shall be liable for:

    (a)    the acts, receipt, neglects or defaults of any other Person; or

    (b)    joining in any receipt or other act for conformity; or

    (c)    any loss or expense happening to the Company through the insufficiency or deficiency of title to any property acquired by order of the Directors for or on behalf of the Company; or

    (d)    the insufficiency or deficiency of any security in or on which any of the money of the Company shall be invested; or

    (e)    any loss or damage arising from the bankruptcy, insolvency or tortious act of any Person with whom any money, securities or effects shall be deposited; or

    (f)    any loss damage or misfortune whatsoever that shall happen in the execution of the duties of his respective office or in relation to that office,

unless the same happen through his own wilful breach of duty.

## GOVERNING LAW

132.   These Articles are made under, in accordance with and shall be governed by the Laws of Gibraltar.

| Names, Addresses of Subscribers |
| --- |

GT Nominees Limited
6A Queensway
Gibraltar

Occupation: Limited Company

Dated the 4th day of May, 2012

James P. Byrne
For and on behalf of
GT Nominees Limited

Witness to the above signatures:

Adrian Jeffrey Hogg
6A Queensway
Gibraltar