# EXHIBIT 7

# SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") is made and entered into as of 1 May 2015 by and among Chevron Corporation ("**Chevron**"), Woodsford Litigation Funding Limited ("**Woodsford**"), and Temeraire Limited ("**Temeraire**"). Woodsford and Temeraire are referred to collectively as "**the Woodsford Parties**". Chevron and the Woodsford Parties are referred to collectively as the **"Parties"**, or each, a **"Party"**.

**Recitals**

I.   WHEREAS, a suit styled Maria Aguinda y Otros v. Chevron Corporation, Case No. 002-2003 ("**Lago Agrio Litigation**"), was filed against Chevron in the Provincial Court of Justice of Sucumbios, Ecuador on 7 May 2003, alleging that Chevron was liable for purported environmental harms due to oil production activities conducted in Ecuador;

II.   WHEREAS, the Lago Agrio Litigation resulted in a judgment against Chevron in Ecuador ("**Lago Agrio Judgment**");

III.   WHEREAS, on 7 and 20 March 2013, the Woodsford Parties entered into agreements ("**Funding Agreements**"), whereby the Woodsford Parties acquired the right to shares in Amazonia Recovery Limited ("**Amazonia**") through Temeraire;

IV.   WHEREAS, Woodsford's interest in the Lago Agrio Judgment is held through Temeraire, and Temeraire is wholly beneficially owned by Woodsford pursuant to a trust and nominee agreement (under which Grant Thornton Nominees Limited is the sole legal owner of Temeraire and Woodsford's nominee and trustee);

V.   WHEREAS, Temeraire's interest in the Lago Agrio Judgment comprises the beneficial interest in 5,000 Class A2 Shares in Amazonia ("**the Woodsford Amazonia Shares**");

VI.   WHEREAS, the legal title to the Woodsford Amazonia Shares is held by Torvia Limited ("**Torvia**");

VII.   WHEREAS, Temeraire's interest in the Woodsford Amazonia Shares is held pursuant to the terms of: (i) a Put and Call Option Agreement dated 7 March 2013 ("**the Temeraire Option Agreement**") between Temeraire and Torvia; (ii) a deed of assignment from Torvia to Temeraire dated 19 March 2013 ("**the Temeraire Assignment**") by which Torvia assigned to Temeraire the benefit of Torvia's subscription agreement for the

Woodsford Amazonia Shares; (iii) a declaration of trust dated 19 March 2013 pursuant to which Torvia holds the Woodsford Amazonia Shares and any sums paid to Torvia in relation to those shares on bare trust for Temeraire ("**the Torvia Temeraire Trust**"); (iv) an irrevocable letter of instruction addressed but not delivered to Patton Boggs LLP and any trustee under the Intercreditor Agreement directing those parties to pay any returns due to Torvia in respect of the Woodsford Amazonia Shares to Temeraire ("**the Intercreditor Agreement Instruction**"); and (v) an executed but undelivered stock transfer form transferring the Woodsford Amazonia Shares from Torvia to Temeraire ("**the Torvia Temeraire Stock Transfer**"). The documents referred to in this Recital are collectively referred to in this Agreement as "**the Temeraire Investment Documents**";

VIII.   WHEREAS, on 17 December 2012, Chevron filed a claim in the Supreme Court of Gibraltar entitled IN THE SUPREME COURT OF GIBRALTAR 2012 - C - 232 BETWEEN: CHEVRON CORPORATION, Claimant and (1) JAMES RUSSELL DELEON and (2) TORVIA LIMITED, Defendants, for money damages and equitable relief, including an injunction ("**the DeLeon/Torvia Claim**"). The DeLeon/Torvia Claim was settled pursuant to the terms of a Settlement Agreement dated 13 February 2015 ("**the DeLeon/Torvia Settlement Agreement**");

IX.   WHEREAS, Chevron has filed a claim in the Supreme Court of Gibraltar entitled IN THE SUPREME COURT OF GIBRALTAR 2014 - C - 110 BETWEEN: CHEVRON CORPORATION, Claimant and (1) AMAZONIA RECOVERY LIMITED (2) WOODSFORD LITIGATION FUNDING LIMITED (3) PABLO ESTENIO FAJARDO MENDOZA (4) LUIS FRANCISCO YANZA ANGAMARCA (5) ERMEL GABRIEL CHAVEZ PARRA and (6) JULIAN ROSS JARVIS, Defendants, for money damages and equitable relief, including an injunction ("**the Amazonia/Woodsford Claim**"). The claim against Julian Ross Jarvis, the Sixth Defendant to the Amazonia/Woodsford Claim, was settled on 13 February 2015 pursuant to the terms of the DeLeon/Torvia Settlement Agreement;

X.   WHEREAS, Chevron and the Woodsford Parties have agreed to settle, release and waive any and all claims arising between or among them upon the terms set forth herein, including claims arising from (a) the Funding Agreements, including all documents and agreements entered into in connection with the Funding Agreements or related to the Funding Agreements; and (b) the Woodsford Parties' interests in the proceeds of the Lago Agrio Judgment, including, in each case, any and all disputes or claims or potential disputes or claims related thereto; and

XI.   WHEREAS, for the avoidance of doubt, Chevron does not waive or compromise its claims against any other person or entity not named as one of the "**Woodsford**

**Releasees**" as defined in clause 17.2 of this Agreement and nothing in this Agreement shall be construed as a release, limitation, waiver or compromise of those claims or any part thereof.

## AGREEMENT

1.     NOW, THEREFORE, the Parties hereto hereby incorporate the foregoing Recitals as part of this Agreement and further agree as follows:

## Obligations of the Woodsford Parties

*Cessation of involvement in the Lago Agrio Litigation*

2.     The Woodsford Parties, and their respective employees, officers, directors, legal and beneficial shareholders, and any of the Woodsford Releasees (as defined below), will forthwith irrevocably and forever cease funding or in any way deliberately aiding or abetting, either directly or indirectly, the Lago Agrio Plaintiffs and any representatives and consultants (legal or otherwise) thereof in connection with the Lago Agrio Litigation or (i) the Lago Agrio Judgment; (ii) the Global Pressure Campaign (as defined in the Amended Particulars of Claim in the Amazonia/Woodsford Claim); or (iii) any current or future related legal proceedings in any jurisdiction, (collectively, "**Related Action**" or "**Related Actions**"). In the event that any of the Woodsford Parties are required by law to provide any evidence, disclosure or assistance to any party or tribunal in relation to any Related Action, such evidence, disclosure or assistance will not amount to a breach of this clause or any other term of this Agreement.

3.     Save as required by law, and provided that nothing in this clause is in contravention of the Woodsford Parties' legal obligations, the Woodsford Parties agree not to disburse, sell, transfer, assign, alienate, pledge, encumber or impair their legal and/or beneficial interest in Amazonia and/or the Woodsford Amazonia Shares in any way, unless Chevron expressly consents in writing.

4.     The Woodsford Parties will comply, to the extent that they are legally able, with any reasonable request from Chevron in relation to their legal, beneficial or financial interest in the Lago Agrio Litigation, the Lago Agrio Judgment (including, for the avoidance of doubt, in relation to the Woodsford Parties' rights under the Temeraire Investment Documents), any Related Actions, and any proceeds they receive or are entitled to receive as a consequence of their interest in the Lago Agrio Judgment or in Amazonia ("**Proceeds**"). This clause is subject to the express proviso that no action will be sought by Chevron or taken by the Woodsford Parties that is finally adjudicated to be in

contravention of the Woodsford Parties' legal obligations. For the avoidance of doubt, the Woodsford Parties will be under no liability or obligation to remit proceeds that they have not actually received or are not able to effect the transfer of, so long as they take all steps to comply with Chevron's reasonable and lawful requests as provided in this Agreement.

5.    The Woodsford Parties undertake to take all reasonable steps to comply with any request by Chevron under clause 4 above within 14 days of receipt of the same.

6.    In any event, the Woodsford Parties shall at Chevron's request transfer all Proceeds they may receive to Chevron or Chevron's designee.

7.    The Woodsford Parties shall, as soon as practicable and in any event within 5 business days of receiving any notices, documents, or other information from any counterparty (i) to any Funding Agreements; and/or (ii) from or in relation to Amazonia; and/or (iii) in relation to the Temeraire Investment Documents, provide full and complete copies of such notices, documents, or other information to Chevron; provided that if the provision of such documents or other information would, according to the Woodsford Parties, be in clear breach of the Woodsford Parties' confidentiality obligations (which obligations and any actual or prospective breaches thereof are not admitted, recognized, or accepted by Chevron) under the Funding Agreements, the Woodsford Parties shall:

7.1    Notify Chevron of the nature of such information or other document received;

7.2    To the extent they are able to do so without breaching their confidentiality obligations, provide a summary of such materials to Chevron; and

7.3    Consent to (or, if unable legally to consent, not oppose) any action by Chevron under clauses 11 to 12 of this Agreement for an Order for disclosure of any documents said to be subject to confidentiality provisions.

8.    The Woodsford Parties shall promptly (and in any event not fewer than 14 days before the relevant time) inform Chevron of any pending action or decision that they are permitted or obliged to take in relation to their interest in Amazonia (including, but not limited to, pursuant to any Funding Agreements or the Temeraire Investment Documents), and will not, save as required by Court order, take any such action or decision unless Chevron so consents in writing.

9.    The Woodsford Parties will promptly (and in any event within 5 business days of them becoming aware) inform Chevron of any action taken by third parties of which they become aware in relation to Amazonia and their interests therein.

**Obligations of Chevron**

10.  Subject to the terms of this Agreement, Chevron will not pursue the Amazonia/Woodsford Claim against Woodsford and agrees to enter a Consent Order and Notice of Discontinuance (in the form attached to this Agreement at Schedule A) providing for the discontinuance of the Amazonia/Woodsford Claim in relation to Woodsford with no order as to costs ("**the Consent Order**"), and will release and indemnify the Woodsford Releasees (including Temeraire) in accordance with clauses 17 to 25 below.

**Disposition of the Amazonia/Woodsford Claim against Woodsford**

11.  The Parties hereby agree that they will enter into the Consent Order, which, in relation to Woodsford (the Second Defendant) alone will discontinue the Amazonia/Woodsford Claim with no order as to costs. The Parties to this Agreement expressly acknowledge that they may bring new actions for the purposes of enforcing or resolving any disputes about the terms of this Agreement or any Party's compliance with its obligations, warranties, representations, or conditions (an "**Enforcement Action**"). Each party irrevocably consents to any process in any Enforcement Action being served on it in accordance with the provisions of this Agreement relating to service of notices. Nothing contained in this Agreement shall affect the right to serve process in any other manner permitted by law.

12.  The Parties hereby agree that:

     12.1   Any Enforcement Action in relation to this Agreement will be issued in the Supreme Court of Gibraltar; and

     12.2   They will seek to have any Enforcement Action listed before Mr Justice Jack.

13.  The Parties further agree that there will be no order as to costs in respect of the Amazonia/Woodsford Claim, and that neither party shall seek to enforce any costs order obtained against the other in the DeLeon/Torvia Claim or in the Amazonia/Woodsford Claim.

**Representations and Warranties**

14.     Each of the Woodsford Parties represents and warrants to Chevron as follows:

   14.1     As at the date of execution of the Agreement, the Woodsford Parties are permitted to pay over to Chevron amounts they may receive in respect of their interests in the Proceeds.

   14.2     The execution and delivery by the Woodsford Parties of this Agreement and the other documents to be delivered hereunder are within each of the Woodsford Parties' powers, have been duly authorized by the Woodsford Parties, require no government approval, and do not contravene any law or regulation applicable to or binding upon the Woodsford Parties. This Agreement is the legal, valid, and binding obligation of the Woodsford Parties, enforceable against each in accordance with its terms.

   14.3     The Woodsford Parties each have the power, right, and authority to settle, release and waive fully and completely all claims to be settled and released in this Agreement on the terms contained herein.

   14.4     Woodsford and Temeraire are duly organized, incorporated, validly existing, and in good standing under the laws of the jurisdiction of their respective incorporation or organization.

   14.5     That if a director (or other person or entity in control) of Woodsford or Temeraire is appointed after the execution of this Agreement, there will be no effect on Woodsford's or Temeraire's obligations under this Agreement, and any such director or controller will co-operate with the terms of this Agreement.

   14.6     The structure and nature of Woodsford's and Temeraire's interests in the Lago Agrio Judgment is accurately set out in Recitals IV-VII above, and neither Woodsford nor Temeraire (nor any individual or entity connected to them, including but not limited to the Woodsford Releasees) have (or will acquire) any other direct or indirect interest in or relating to the Lago Agrio Litigation or the Lago Agrio Judgment.

   14.7     The Funding Agreements referred to in Recital III above, and the funding provided pursuant to the documents and matters set out in Recitals IV-VII above, is the only funding provided (or that will be provided) by the Woodsford Parties

(and any individual or entity connected to them, including but not limited to any of the Woodsford Releasees) in relation to the Lago Agrio Litigation, the Lago Agrio Judgment, the Global Pressure Campaign, or any Related Action.

14.8    That the Public Statement referenced in clause 26 of this Agreement is true and accurate in all respects.

15.    Woodsford further represents and warrants to Chevron:

15.1    That it voluntarily shall make the Public Statement referenced in clause 26 of this Agreement and that the statement has received all necessary approvals from Woodsford's management and Board of Directors.

15.2    That it has the power and authority (and will exercise that) to comply with and to cause or procure Temeraire (and any other relevant person or entity) to comply with the provisions of this Agreement.

16.    Chevron hereby represents and warrants to the Woodsford Parties as follows:

16.1    The execution, delivery, and performance by Chevron of this Agreement and the other documents to be delivered hereunder are within Chevron's powers, have been duly authorized by Chevron, require no government approval, and do not contravene any law or regulation or any contractual·restriction applicable to or binding upon Chevron. This Agreement and the other documents to be delivered by Chevron hereunder are the legal, valid, and binding obligations of Chevron, enforceable against Chevron in accordance with their respective terms.

16.2    Chevron has the power, right, and authority to settle, release and waive fully and completely all claims to be settled and released in this Agreement. Chevron is a corporation duly organized, validly existing, and in good standing under the laws of the state of Delaware. Chevron has all the requisite power and authority to execute and deliver this Agreement and to perform its obligations hereunder.

**Mutual Releases**

17.    Defined Terms:

17.1    "**Chevron Releasees**" shall refer to Chevron, and to all of its past and present, direct and indirect, parents, subsidiaries, and affiliates; the predecessors, successors and assigns of Chevron; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, representatives,

insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing.

17.2 **"Woodsford Releasees"** shall refer to Woodsford, Temeraire, and the individuals and entities as separately agreed between the Parties and set out at Schedule B to this Agreement.

17.3 **"Released Parties"** shall mean and refer to the Chevron Releasees and the Woodsford Releasees.

18. Subject to clauses 21 to 22 in respect of Material Breaches of this Agreement, and clause 23 in relation to Further Involvement by any Defaulting Woodsford Releasee, with the execution and delivery of this Agreement, Chevron and the Woodsford Parties do hereby forever mutually release, waive, discharge, and acquit any and all claims, demands, rights, objections, complaints, reports and/or obligations of any kind, known or unknown, against the other's Released Parties relating to:

18.1 the Funding Agreements;

18.2 the Lago Agrio Litigation, the Lago Agrio Judgment, the Global Pressure Campaign;

18.3 the Amazonia/Woodsford Claim and any Related Actions;

18.4 the DeLeon/Torvia Claim and the DeLeon/Torvia Settlement Agreement and the performance thereof; and

18.5 any further liability between Chevron and the Woodsford Releasees in relation to the Amazonia/Woodsford Claim, including the liability for any outstanding costs orders (save that any interim payments made by any Parties in relation to such costs orders remain valid and shall not be claimed back by the paying Party).

19. The Woodsford Parties, on behalf of themselves and their direct and indirect, parents, subsidiaries, and affiliates, and Chevron, irrevocably covenant and agree never to institute or cause to be instituted or continued prosecution of any suit or other form of action or proceeding of any kind or nature whatsoever against the other's Released Parties, by reason of or in connection with any of the matters referred to in the preceding clause 18, other than for breach of this Agreement. Chevron irrevocably covenants and agrees to indemnify, and keep indemnified, and hold harmless, the Woodsford Releasees in respect of any liability, damages, costs and expenses arising from any suit or other

form of action or proceeding of any kind or nature whatsoever, brought or made by any of Chevron's direct and indirect, parents, subsidiaries, and affiliates, against any of the Woodsford Releasees, by reason of or in connection with any of the matters referred to in the preceding clause 18, other than for breach of this Agreement.

20. Save that nothing in the preceding clauses 17 to 19 shall prevent Chevron from calling the Woodsford Releasees (or any of them) to give evidence or cross-examining the Woodsford Releasees in the event that any of the Woodsford Releasees give evidence (at the instance of a party other than Chevron) in proceedings involving Chevron.

21. If any of the Woodsford Parties commit or have committed a Material Breach as defined in clause 22 below, the aforesaid release is of no effect in relation to the defaulting party concerned ("**the Defaulting Party**") and Chevron is entitled to all such remedies and rights of action against the Defaulting Party as exist immediately prior to the execution of this Agreement. In particular, but without prejudice to the generality of the foregoing, the discontinued claims against the Defaulting Party can be re-instituted by Chevron and the Defaulting Party hereby irrevocably agrees that they will not oppose the re-institution of any claims (or otherwise seek to dismiss or defend any claim or counterclaim) on the basis of the release provided to the Defaulting Party in this Agreement or the discontinuance effected by the Consent Orders, provided however that the Defaulting Party may otherwise fully defend any claim brought or reinstituted against that Defaulting Party by Chevron. Each party irrevocably consents to any process in any legal action or proceedings under this clause being served on it in accordance with the provisions of this Agreement relating to service of notices. Nothing contained in this Agreement shall affect the right to serve process in any other manner permitted by law. Further, in the event of a Material Breach, Chevron shall retain its full rights provided in this Agreement.

22. A Material Breach shall be a breach of any of the following clauses of this Agreement which is either: (i) adjudged by the Supreme Court of Gibraltar to be sufficiently serious as to be incapable of cure; or (ii) adjudged by the Supreme Court of Gibraltar to be curable, and the Woodsford Parties do not cure it within 28 days of such adjudication:

    22.1   Clause 2;

    22.2   Clause 3;

    22.3   Clause 4;

    22.4   Clause 6;

22.5    The representations and warranties set out in Clauses 14.6 and 14.7;

22.6    Clause 26;

22.7    Clause 27.

23.     If any of the Woodsford Releasees ("**the Defaulting Woodsford Releasee**") funds or in any way deliberately aids or abets, either directly or indirectly, the Lago Agrio Plaintiffs and any representatives and consultants (legal or otherwise) thereof in connection with the Lago Agrio Litigation or (i) the Lago Agrio Judgment, (ii) the Global Pressure Campaign (as defined in the Amended Particulars of Claim in the Amazonia/Woodsford Claim), or (iii) any Related Action ("**Further Involvement**"), Woodsford irrevocably agrees that the provisions of this Agreement, and in particular the releases in clauses 17 to 19 above, are of no effect and are void in relation to the Woodsford Parties and the Defaulting Woodsford Releasee. Woodsford further irrevocably agrees that Chevron is entitled to all such remedies and rights of action against the Woodsford Parties and the Defaulting Woodsford Releasee as exist immediately prior to the execution of this Agreement, and all such remedies and rights of action against the Woodsford Parties and the Defaulting Woodsford Releasee as arise on or after the date of this Agreement. Nothing contained in this Agreement shall affect the right to serve process in any other manner permitted by law.   For the avoidance of doubt, in the event of any Further Involvement by the Defaulting Woodsford Releasee, Chevron shall retain its full rights provided in this Agreement.

24.     It is hereby further understood and agreed that the acceptance or delivery of this Agreement by the Released Parties shall not be deemed or construed as an admission of liability by any Party released by the terms hereof.

25.     It is hereby further understood and agreed that nothing in the acceptance or delivery of this Agreement shall prevent Chevron from maintaining legal actions or seeking damages against any other party involved in, or related to, the Lago Agrio Litigation or any Related Actions (including, without any limitation whatsoever, the other Defendants in the Amazonia/Woodsford Claim), except for the Woodsford Releasees, and that Chevron is not by this Agreement expressly or impliedly releasing or waiving any claims against any individual or entity except for the Woodsford Releasees.

**Public Statement**

26.     At around 8.00 a.m. EST on Monday 4 May 2015, Woodsford will issue a statement to a media outlet of Chevron's choosing, such choice to be communicated in writing to the Woodford Parties by 12 noon EST on 1 May 2015, that provides as follows:

*"It is, and always has been, Woodsford Litigation Funding Limited's position that, in March 2013, it acted in good faith and in the normal course of its business in providing funding to support the Lago Agrio plaintiffs in their litigation against Chevron Corporation. In light of the 4 March 2014 opinion by Judge Kaplan of the United States District Court for the Southern District of New York, and having become deeply concerned about the ethical standards of attorney Steven Donziger, Woodsford has decided to forego any financial benefit from this matter and to relinquish its entire interest in the proceeds of the litigation to Chevron."*

27.     The Woodsford Parties will not make any further public statement in relation to these proceedings or the Lago Agrio Litigation unless compelled by law, or as required to correct any falsehood that may cause them damage provided that any such statement will not disparage Chevron or any Chevron Releasee and will be consistent with the statement at clause 26 above.

28.     Chevron agrees that it will not issue, or intentionally cause to be issued or made, any statement disparaging the Woodsford Parties, or any Woodsford Releasee, provided that Chevron reserves the right to respond to any additional statement made by the Woodsford Parties beyond the Public Statement described herein.

**Successors in Interest**

29.     The Parties agree that this Agreement shall be binding upon the Parties and, as applicable, to the extent they remain under the Parties' control, their heirs, executors, administrators, dependents, predecessors, successors, subsidiaries, divisions, alter egos, affiliated corporations, and related entities, and their present officers, directors, partners, employees, attorneys, assigns, agents, representatives, and any or all of them, and any past officers, directors, partners, employees, attorneys, assigns, agents, or representatives.

**No Assignment**

30.     Each Party warrants and represents that it has not assigned or transferred to any other person any of the claims, causes of action, or other matters that are released by this Agreement.

**Independent Legal Advice**

31.   Each Party represents that it has been represented, or has had the opportunity to seek and obtain independent legal advice and representation of its own choice, throughout all of the negotiations that preceded the execution of this Agreement and that it has executed this Agreement with the consent and upon the advice of those providing such legal advice or that it has had the opportunity to seek such consent and advice. Each Party acknowledges that it has read this Agreement and assents to all the terms and conditions contained in this Agreement without any reservations and that it has had, or has had the opportunity to have had, the same explained to it by its own legal advisers, who have answered any and all questions which have been asked of them, or which could have been asked of them, with regard to the meaning of any of the provisions of this Agreement.

**No Admissions or Waiver of Rights**

32.   By entering into this Agreement, no Party intends to make, nor shall be deemed to have made, any admission of liability of any kind. The Parties agree that they are entering into this Agreement to avoid the costs of further litigation and to settle potential disputes between the Parties. This Agreement is the product of informed negotiations and compromises of previously stated legal positions. Nothing contained in this Agreement shall be construed as an admission of liability by any Party as to the merit or lack of merit of any particular claim or defence. Any statements made in the course of negotiations have been and shall be without prejudice to the rights of the Parties in any disputes or transactions with any other person or entity not party to this Agreement.

33.   By entering into this Agreement, Chevron is not releasing, waiving or compromising any of its existing or future claims or rights against any entity or individual (including, for the avoidance of doubt, the other Defendants to the Amazonia/Woodsford Claim), other than the Woodsford Parties.

**Governing Law**

34.   This Agreement and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by and construed in accordance with the laws of Gibraltar, save that clauses 17 to 19 and 41 are governed by and construed in accordance with the laws of England and Wales, such that the Released Parties (or any one of them) shall have the right to enforce against the Parties to this Agreement the benefit of the release conferred by those terms.

**Exclusive Jurisdiction**

35.   The Parties agree that any and all disputes arising out of or relating to this Agreement shall be submitted for final and binding resolution to the Supreme Court of Gibraltar and that the Supreme Court of Gibraltar shall retain exclusive jurisdiction over the Parties for the purposes of enforcing this Agreement.

**Counterparts**

36.   This Agreement may be executed in one or more counterparts, each of which shall be an original as against any Party who signed it, and all of which shall constitute one and the same document.

**Construction**

37.   The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement. It is understood and acknowledged that this Agreement shall not be construed in favour of or against any Party by reason of the extent to which any Party or its legal representative has participated in the drafting of this Agreement.

**Severability of Agreement**

38.   If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable for any reason, the remaining provisions not so declared shall nevertheless continue in full force and effect, but shall be construed in such a manner so as to effectuate the intent of this Agreement as a whole, notwithstanding such stricken provision or provisions. The Parties agree that in the event any part of this Agreement is rendered or declared invalid or unenforceable, they will negotiate, in good faith, to agree on a permitted replacement part that reflects their original intent.

**Amendment and Waiver**

39.   Neither this Agreement, nor any of the provisions hereof, may be changed, waived, discharged, or terminated, except by an instrument in writing signed by the Party against whom enforcement of the change, waiver, discharge, or termination is sought.

**Legal Fees, Costs, and Expenses**

40.    Each Party shall bear its own legal fees, costs, and expenses incurred in connection with this Agreement, including any future costs associated with compliance with this Agreement. In the event of any litigation relating to this Agreement, including litigation subsequent to any breach, the prevailing Party shall be entitled to recover its reasonable legal fees, expenses, and costs.

**Third Party Beneficiaries**

41.    Subject expressly to the provisions of clause 23 above, the Released Parties may enforce any benefit conferred upon them by this Agreement. Save as aforesaid, nothing else contained in this Agreement, express or implied, is intended to confer upon any person or entity other than the Parties hereto any benefits, rights, or remedies.

**Notices**

42.    Any notice required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been given either (a) upon actual receipt or three (3) days after deposit in the United States mail (registered or certified mail) postage prepaid, return receipt requested; (b) upon actual receipt if sent via reputable overnight courier; or (c) upon actual confirmation of receipt, if by email. All notices shall be addressed as follows:

If to Chevron:    Kobre & Kim (UK) LLP
Tower 42
25 Old Broad Street
London
EC2N 1HQ

Attention: Simon Cullingworth
simon.cullingworth@kobrekim.com
Phone: +44 7818 038631

and

Stern & Kilcullen LLC
325 Columbia Turnpike, Suite 110
P.O. Box 992
Florham Park, NJ 07932-0992

Attention: Hon. Herbert J. Stern
Email: hstern@sgklaw.com
Phone: (973) 535-1900

If to the Woodsford Parties:    Woodsford Litigation Funding Ltd
Monmouth House
87-93 Westbourne Gove
London W2 4UL
UK
Attention Jonathan Barnes
Email: jbarnes@woodsfordlf.com
Phone: +44 20 7313 8070

and

Isolas
Barristers & Solicitors
Portland House
Glacis Road
PO Box 204
GX11 1AA
Gibraltar

Attention: Elliott Phillips/James Montado
Email: elliott.phillips@isolas.gi; james.montado@isolas.gi
Phone: +350 2000 1892

[The rest of this page has been left blank intentionally - Signatures appear on the following page]

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

CHEVRON CORPORATION

By:
Name: Karl H Endrias
Title: Assistant Secretary

WOODSFORD LITIGATION FUNDING LIMITED

By:
Name:   Yves J. M. BONAVERO
Title:    DIRECTOR

TEMERAIRE LIMITED

By:
Name:   JONATHAN BARNES
Title:

For and on behalf of
Woodsford Litigation Funding Limited
Director

Schedule A

IN THE SUPREME COURT OF GIBRALTAR

CLAIM NO: 2014-C-110

BETWEEN:

## CHEVRON CORPORATION

Claimant

- and -

## (1) AMAZONIA RECOVERY LIMITED

## (2) WOODSFORD LITIGATION FUNDING LIMITED

## (3) PABLO ESTENIO FAJARDO MENDOZA

## (4) LUIS FRANCISCO YANZA ANGAMARCA

## (5) ERMEL GABRIEL CHAVEZ PARRA

Defendants

---

## CONSENT ORDER

---

[UPON HEARING Leading Counsel for the Claimant and Leading Counsel for the Second Defendant]

AND UPON the Claimant having served a Notice of Discontinuance

AND UPON the Claimant and the Second Defendant having agreed the terms set out below

IT IS ORDERED BY CONSENT THAT:

1   There shall be no order as to costs on discontinuance.

2   All existing costs orders made in these proceedings between the Claimant and the Second Defendant shall stand as fully satisfied and there shall be no further proceedings for the assessment of costs or for the enforcement of any costs order between the Claimant and the Second Defendant.

Dated this          day of                    2015

..................................................        .................................................

**Attias & Levy**                                         **Isolas**

Solicitors for the Claimant                               Solicitors for the Second Defendant

CLAIM NO. 2014-C-110

IN THE SUPREME COURTOF GIBRALTAR

CIVIL DIVISION

BETWEEN:

CHEVRON CORPORATION

Claimant

-and-

(1) AMAZONIA RECOVERY LIMITED

(2) WOODSFORD LITIGATION FUNDING LIMITED

(3) PABLO ESTENIO FAJARDO MENDOZA

(4) LUIS FRANCISCO YANZA ANGAMARCA

(5) ERMEL GABRIEL CHAVEZ PARRA

Defendants

_____

CONSENT ORDER

_____

**Schedule B**

Woodsford Consulting Limited

Tarlatantic Financial Services Limited

SCOP 2003 Investments Limited

Sapphire Trading Limited

Westcote Holdings Limited

Charles Manduca

Jonathan Barnes

Mark Spiteri

Yves Bonavero

Olivier Bonavero

John Potts

Tim Mayer

Nick Moore

Adam Silvester

Lynda Aziz

Sanja Mavsar

Thomas Porter

John Gledhill

Margaret Braksal

Marios Ioannides

Vere Wheatley

Sir Roger Buckley

Peter Horrocks

Terry O'Neill

John Beechey

Don Lindsay

Howard Pilley

Dewald Joubert