# EXHIBIT 8

## SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") is made and entered into as of 13 February 2015 by and among Chevron Corporation ("**Chevron**"), James Russell DeLeon ("**DeLeon**"), Torvia Limited ("**Torvia**") and Julian Ross Jarvis ("**Jarvis**"), and DeLeon, Torvia and Jarvis are referred to collectively as the "**DeLeon Parties**".  Chevron and the DeLeon Parties are referred to collectively as the "**Parties**", or each, a "**Party**".

**Recitals**

WHEREAS, a suit styled María Aguinda y Otros v. Chevron Corporation, Case No. 002-2003 ("**Lago Agrio Litigation**"), was filed against Chevron in the Provincial Court of Justice of Sucumbíos, Ecuador on 7 May 2003, alleging that Chevron was liable for purported environmental harms due to oil production activities conducted in Ecuador;

WHEREAS, the Lago Agrio Litigation resulted in a judgment against Chevron in Ecuador ("**Lago Agrio Judgment**");

WHEREAS, between March 2007 and the present, DeLeon and Torvia entered into funding agreements, either express or implied, ("**Funding Agreements**"), whereby DeLeon and Torvia would provide (directly or indirectly) the parties identified in the Funding Agreements with funding for expenses related to the pursuit, settlement, or enforcement of the Lago Agrio Judgment;

WHEREAS, Chevron has filed a claim in the Supreme Court of Gibraltar entitled IN THE SUPREME COURT OF GIBRALTAR 2012 - C - 232 BETWEEN: CHEVRON CORPORATION, Claimant and (1) JAMES RUSSELL DELEON and (2) TORVIA LIMITED, Defendants for money damages and equitable relief, including an injunction ("**the DeLeon/Torvia Claim**");

WHEREAS, Chevron has filed a claim in the Supreme Court of Gibraltar entitled IN THE SUPREME COURT OF GIBRALTAR 2014 - C - 110 BETWEEN: CHEVRON CORPORATION, Claimant and (1) AMAZONIA RECOVERY LIMITED (2) WOODSFORD LITIGATION FUNDING LIMITED (3) PABLO ESTENIO FAJARDO MENDOZA (4) LUIS FRANCISCO YANZA ANGAMARCA (5) ERMEL GABRIEL CHAVEZ PARRA and (6)

JULIAN ROSS JARVIS, Defendants for money damages and equitable relief, including an injunction ("**the Amazonia/Woodsford Claim**");

WHEREAS, Chevron and the DeLeon Parties have agreed to settle, release and waive any and all claims arising between or among them upon the terms set forth herein, including claims arising from (a) the Funding Agreements, including all documents and agreements entered into in connection with the Funding Agreements or related to the Funding Agreements; and (b) the DeLeon Parties' interests in the proceeds of the Lago Agrio Judgment, including, in each case, any and all disputes or claims or potential disputes or claims related thereto; and

WHEREAS, for the avoidance of doubt, Chevron does not waive or compromise its claims against any other person or entity not named as one of the "**DeLeon Releasees**" as defined in clause 24.2 of this Agreement and nothing in this Agreement shall be construed as a release, limitation, waiver or compromise of those claims or any part thereof.

**AGREEMENT**

1.      NOW, THEREFORE, the Parties hereto hereby incorporate the foregoing Recitals as part of this Agreement and further agree as follows:

**Obligations of the DeLeon Parties**

*Cessation of involvement in the Lago Agrio Litigation*

2.      The DeLeon Parties will forthwith irrevocably and forever cease funding or in any way deliberately aiding or abetting, either directly or indirectly, the Lago Agrio Plaintiffs and all representatives and consultants (legal or otherwise) thereof in connection with the Lago Agrio Litigation, or (i) the Lago Agrio Judgment; (ii) the Global Pressure Campaign (as defined in the Amended Particulars of Claim in the DeLeon/Torvia Claim and the Amazonia/Woodsford Claim); or (iii) any current or future related legal proceedings in any jurisdiction, (collectively, "**Related Action**" or "**Related Actions**"). In the event that any of the DeLeon Parties are required by law to provide any evidence, disclosure or assistance to any party or tribunal in relation to any Related Action, such evidence, disclosure or assistance will not amount to a breach of this clause or any other term of this Agreement.

3.      Save as required by law, and provided that nothing in this clause is in contravention of the DeLeon Parties' legal obligations, including their obligations under the Memorandum and Articles of Association of Amazonia, the Subscription Agreement dated 1 March 2013 (the "**SA**"), or the Shareholders' Agreement dated on or about 1 March 2013 (the

"**SHA**"), and subject to the interest held by Torvia on bare trust for Temeraire Limited, the DeLeon Parties agree not to disburse, sell, transfer, assign, alienate, pledge, encumber or impair their legal and/or beneficial interest in Amazonia Recovery Limited ("**Amazonia**") in any way, unless Chevron expressly consents in writing.

4. Subject to the interest held by Torvia on bare trust for Temeraire Limited, the DeLeon Parties will comply, to the extent that they are legally able, with any request from Chevron in relation to their legal, beneficial or financial interest in the Lago Agrio Litigation, the Lago Agrio Judgment, any Related Actions, and any proceeds they receive as a consequence of their interest in the Lago Agrio Judgment or in Amazonia ("**Proceeds**"). This clause is subject to the express proviso that no action will be sought by Chevron or taken by the DeLeon Parties that is finally adjudicated to be in contravention of the DeLeon Parties' legal obligations, including their obligations under the Memorandum and Articles of Association of Amazonia, the SA, or the SHA.

5. The DeLeon Parties undertake to take all steps to comply with any request by Chevron under clause 4 above within 14 days of receipt of the same.

6. In any event, the DeLeon Parties shall at Chevron's request transfer all Proceeds they may receive to Chevron or Chevron's designee.

7. The DeLeon Parties shall, as soon as practicable and in any event within 5 business days of receiving any notices, documents, or other information from any counterparty to any Funding Agreement and/or from or in relation to Amazonia, provide full and complete copies of such notices, documents, or other information to Chevron; provided that if the provision of such documents or other information would, according to the DeLeon Parties, be in clear breach of the DeLeon Parties' confidentiality obligations (which obligations and any actual or prospective breaches thereof are not admitted, recognized, or accepted by Chevron) under the Funding Agreements, the SA, the SHA or otherwise, the DeLeon Parties shall:

   7.1 Notify Chevron of the nature of such information or other document received;

   7.2 To the extent they are able to do so without breaching their confidentiality obligations, provide a summary of such materials to Chevron; and

   7.3 Consent to (or, if unable legally to consent, not oppose) any action by Chevron under clauses 15 and 16 of this Agreement for an Order for disclosure of any documents said to be subject to confidentiality provisions.

8.      The DeLeon Parties shall promptly (and in any event not fewer than 14 days before the relevant time) inform Chevron of any pending action or decision that they are permitted or obliged to take in relation to their interest in Amazonia, and will not, save as required by Court order, take any such action or decision unless Chevron so consents in writing.

9.      The DeLeon Parties will promptly (and in any event within 5 business days of them becoming aware) inform Chevron of any action taken by third parties of which they become aware in relation to Amazonia and their interests therein.

10.     Upon request, the DeLeon Parties will take all steps necessary to assign or transfer to Chevron or Chevron's designee their interest in or relating to the documentary film entitled *Crude: The Real Price of Oil*, provided that nothing in this clause is in contravention of the DeLeon Parties' legal obligations.

*Provision of documents*

11.     The DeLeon Parties will provide standard disclosure to Chevron within the meaning given in Part 31.6 of the English Civil Procedure Rules in relation to the DeLeon/Torvia Claim and the Amazonia/Woodsford Claim (the "**Standard Disclosure Obligations**"). For the avoidance of doubt, the Standard Disclosure Obligations shall apply as if each of the DeLeon Parties was a party to both the DeLeon/Torvia Claim and the Amazonia/Woodsford Claim and shall also include all such documents upon which the DeLeon Parties would have sought to rely at the trial of the DeLeon/Torvia Claim and the Amazonia/Woodsford Claim, had those actions proceeded to trial. The DeLeon Parties agree that Chevron shall have the right to use documents and information provided under the Standard Disclosure Obligations for any purpose in the Amazonia/Woodsford Claim, or any Related Action.

12.     The DeLeon Parties shall provide inspection of all documents other than those they object to providing on the grounds of legal advice and/or litigation privilege in defence of the DeLeon/Torvia Claim and the Amazonia/Woodsford Claim. The Parties hereby agree that the following categories of documents are privileged:

12.1    All communications, correspondence and other communications passing between the DeLeon Parties and the legal advisors (as agreed by the Parties) for the purpose of obtaining, or giving legal advice or assistance in connection with the DeLeon/Torvia Claim and the Amazonia/Woodsford Claim;

12.2    Correspondence and other communications passing between the DeLeon Parties and their agents and legal advisors (as agreed by the Parties) and third parties after September 2012 and which came into existence or have been obtained after this

litigation was contemplated or commenced with a view to the conduct of the DeLeon/Torvia Claim and the Amazonia/Woodsford Claim;

12.3   Correspondence and other communications passing between the DeLeon Parties' agents and their advisors for the purposes of obtaining and giving legal advice and assistance in connection with legal proceedings other than the DeLeon/Torvia Claim and the Amazonia/Woodsford Claim which have no relevance to the subject matter of the dispute between the parties to this agreement;

12.4   Instructions to legal advisors (as agreed by the Parties) and notes of Counsel's advice relating to the DeLeon/Torvia Claim and the Amazonia/Woodsford Claim;

12.5   Draft Statements of Case, Reply, Instructions to Counsel, statements, notes, memoranda and other documents prepared by the DeLeon Parties' legal advisors (as agreed by the Parties) in connection with the DeLeon/Torvia Claim and the Amazonia/Woodsford Claim; and

12.6   Any other written documents and drafts prepared as part of the DeLeon Parties' legal advisors' (as agreed by the Parties) litigation work product in relation to the DeLeon/Torvia Claim and the Amazonia/Woodsford Claim.

13.   The procedure and terms upon which the DeLeon Parties shall perform the Standard Disclosure Obligations have been agreed between the Parties.

**Obligations of Chevron**

14.   Subject to the terms of this Agreement, Chevron will not pursue the DeLeon/Torvia Claim or the claim against Jarvis in the Amazonia/Woodsford Claim and agrees to enter Consent Orders and Notices of Discontinuance (in the form attached to this Agreement at Schedules A and B) providing for the discontinuance of the DeLeon/Torvia Claim and the claim against Jarvis in the Amazonia/Woodsford Claim with no order as to costs ("**the Consent Orders**"), and will release the DeLeon Releasees in accordance with clauses 24 to 31 below.

**Disposition of the DeLeon/Torvia Claim, the claim against Jarvis in the Amazonia/Woodsford Claim, and Torvia's costs of intervening in Claim No. 2014 – C – 111**

15.   The Parties hereby agree that they will enter into the Consent Orders, which will discontinue the DeLeon/Torvia Claim (and DeLeon and Torvia's Counterclaim against Chevron in the DeLeon/Torvia Claim) and the Amazonia/Woodsford Claim against

Jarvis alone, with no order as to costs. The Parties to this Agreement expressly acknowledge that they may bring new actions for the purposes of enforcing or resolving any disputes about the terms of this Agreement or any Party's compliance with its obligations, warranties, representations, or conditions (including, without prejudice to the generality of the foregoing, the DeLeon Parties' compliance with the Standard Disclosure Obligations) (an "**Enforcement Action**"). Each party irrevocably consents to any process in any Enforcement Action being served on it in accordance with the provisions of this Agreement relating to service of notices. Nothing contained in this Agreement shall affect the right to serve process in any other manner permitted by law.

16.    The Parties hereby agree that:

16.1    Any Enforcement Action in relation to this Agreement will be issued in the Supreme Court of Gibraltar; and

16.2    They will seek to have any Enforcement Action listed before Mr Justice Jack.

17.    The parties further agree that, subject to clause 46 below, there will be no order as to costs (i) in respect of the DeLeon/Torvia Claim and in respect of the claim against Jarvis in the Amazonia/Woodsford Claim; and (ii) that neither party shall seek to enforce any costs order obtained against the other in the DeLeon/Torvia Claim or in the Amazonia/Woodsford Claim.

18.    The Parties further agree that Chevron and Torvia will enter into a Consent Order in relation to Claim No. 2014 – C – 111, being Chevron's claim for *Norwich Pharmacal* and other relief against GT Nominees Limited. The Consent Order (in the form attached as Schedule C to this Agreement) will provide that the costs order in Torvia's favour is satisfied by the interim payment previously made by Chevron, and that there will be no further proceedings for the assessment of costs in that action.

**Representations and Warranties**

19.    Each of the DeLeon Parties represents and warrants to Chevron as follows:

19.1    Subject to the interest held on bare trust for Temeraire Limited, as at the date of execution of the Agreement, the DeLeon Parties are permitted to pay over to Chevron amounts they may receive in respect of their interests in the Proceeds.

19.2    The execution and delivery by the DeLeon Parties of this Agreement and the other documents to be delivered hereunder are within each of the DeLeon Parties'

powers, have been duly authorized by the DeLeon Parties, require no government approval, and do not contravene any law or regulation applicable to or binding upon the DeLeon Parties. This Agreement is the legal, valid, and binding obligation of the DeLeon Parties, enforceable against each in accordance with its terms.

19.3   The DeLeon Parties each have the power, right, and authority to settle, release and waive fully and completely all claims to be settled and released in this Agreement on the terms contained herein.

19.4   Torvia is duly organized, incorporated, and validly existing under the laws of the jurisdiction of its incorporation or organization. The DeLeon Parties shall: (i) take all such steps as necessary to restore Torvia to good standing after the conclusion of this Agreement; (ii) pay the costs of any such necessary steps; and (iii) ensure that Torvia is in good standing within 90 days of the execution of this Agreement, subject to an extension as agreed by Chevron.

19.5   That if a director (or other person or entity in control) of Torvia is appointed after the execution of this Agreement, there will be no effect on Torvia's obligations under this Agreement, and any such director or controller will co-operate with the terms of this Agreement.

20.   DeLeon further represents and warrants to Chevron as follows:

20.1   That the Public Statement referenced in clause 32 of this Agreement is true and accurate in all respects and that he voluntarily shall make that statement on behalf of himself and is duly authorized to make it on behalf of Torvia.

20.2   That he will not take any steps to prevent the DeLeon Parties' compliance with clauses 2 to 13 of this Agreement.

21.   Jarvis further represents and warrants to Chevron as follows:

21.1   That the Public Statement referenced in clause 32 of this Agreement is true and accurate to the best of Jarvis's personal knowledge; and

21.2   That he will not take any steps to prevent the DeLeon Parties' compliance with clauses 2 to 13 of this Agreement.

22.   Torvia further represents and warrants to Chevron as follows:

22.1   That the Public Statement referenced in clause 32 of this Agreement is true and accurate to the best of Torvia's knowledge.

22.2   That no steps will be taken by or on behalf of Torvia to prevent the DeLeon Parties' compliance with clauses 2 to 13 of this Agreement.

22.3   That Jarvis and Torvia have the power and authority (and will exercise that) to comply with and to cause or procure Torvia (and any other relevant person or entity) to comply with clauses 2 to 13 of this Agreement (insofar as Jarvis remains a director of Torvia).

23.   Chevron hereby represents and warrants to the DeLeon Parties as follows:

23.1   The execution, delivery, and performance by Chevron of this Agreement and the other documents to be delivered hereunder are within Chevron's powers, have been duly authorized by Chevron, require no government approval, and do not contravene any law or regulation or any contractual restriction applicable to or binding upon Chevron. This Agreement and the other documents to be delivered by Chevron hereunder are the legal, valid, and binding obligations of Chevron, enforceable against Chevron in accordance with their respective terms.

23.2   Chevron has the power, right, and authority to settle, release and waive fully and completely all claims to be settled and released in this Agreement. Chevron is a corporation duly organized, validly existing, and in good standing under the laws of the state of Delaware. Chevron has all the requisite power and authority to execute and deliver this Agreement and to perform its obligations hereunder.

**Mutual Releases**

24.   Defined Terms:

24.1   "**Chevron Releasees**" shall refer to Chevron, and to all of its past and present, direct and indirect, parents, subsidiaries, and affiliates; the predecessors, successors and assigns of Chevron; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing.

24.2   "**DeLeon Releasees**" shall refer to DeLeon, Jarvis, and Torvia, and the individuals and entities as separately agreed between the Parties.

24.3   "**Released Parties**" shall mean and refer to the Chevron Releasees and DeLeon Releasees.

25.   Subject to clauses 28 and 29 in respect of Material Breaches of this Agreement, with the execution and delivery of this Agreement, Chevron and the DeLeon Parties do hereby forever mutually release, waive, discharge, and acquit any claims, demands, and/or obligations against the other's Released Parties relating to:

25.1   the Funding Agreements;

25.2   the Lago Agrio Litigation, the Lago Agrio Judgment, the Global Pressure Campaign;

25.3   the DeLeon/Torvia Claim, the Amazonia/Woodsford Claim and any Related Actions; and

25.4   any further liability between Chevron and the DeLeon Releasees in relation to the DeLeon/Torvia Claim and the Amazonia/Woodsford Claim, including the liability for any outstanding costs orders (save that any interim payments made by any Parties in relation to such costs orders remain valid and shall not be claimed back by the paying Party).

26.   Chevron and the DeLeon Parties irrevocably covenant and agree never to institute or cause to be instituted or continued prosecution of any suit or other form of action or proceeding of any kind or nature whatsoever against the other's Released Parties, by reason of or in connection with any of the matters referred to in the preceding clause 25, other than for breach of this Agreement.

27.   Save that nothing in the preceding clauses 25 and 26 shall prevent Chevron from calling the DeLeon Releasees (or any of them) to give evidence or cross-examining the DeLeon Releasees in the event that any of the DeLeon Releasees give evidence (at the instance of a party other than Chevron) in proceedings involving Chevron.

28.   If any of the DeLeon Parties commit or have committed a Material Breach as defined in clause 29 below, the aforesaid release is of no effect in relation to the defaulting party concerned ("**the Defaulting Party**") and Chevron is entitled to all such remedies and rights of action against the Defaulting Party as exist immediately prior to the execution of this Agreement. In particular, but without prejudice to the generality of the foregoing, the discontinued claims against the Defaulting Party can be re-instituted by Chevron and the

Defaulting Party hereby irrevocably agrees that they will not oppose the re-institution of any claims (or otherwise seek to dismiss or defend any claim or counterclaim) on the basis of the release provided to the Defaulting Party in this Agreement or the discontinuance effected by the Consent Orders, provided however that the Defaulting Party may otherwise fully defend any claim brought or reinstituted against that Defaulting Party by Chevron. Each party irrevocably consents to any process in any legal action or proceedings under this clause being served on it in accordance with the provisions of this Agreement relating to service of notices. Nothing contained in this agreement shall affect the right to serve process in any other manner permitted by law. Further, in the event of a Material Breach, Chevron shall retain its full rights provided in this Agreement.

29. A Material Breach shall be a breach of any of the following clauses of this Agreement which is either: (i) adjudged by the Supreme Court of Gibraltar to be sufficiently serious as to be incapable of cure; or (ii) adjudged by the Supreme Court of Gibraltar to be curable, and the DeLeon Parties do not cure it within 28 days of such adjudication:

29.1   Clause 2;

29.2   Clause 3;

29.3   Clause 4;

29.4   Clause 6;

29.5   Clause 32;

29.6   Clause 33.

30. It is hereby further understood and agreed that the acceptance or delivery of this Agreement by the Released Parties shall not be deemed or construed as an admission of liability by any Party released by the terms hereof.

31. It is hereby further understood and agreed that nothing in the acceptance or delivery of this Agreement shall prevent Chevron from maintaining legal actions or seeking damages against any other party involved in, or related to, the Lago Agrio Litigation or any Related Actions (including, without any limitation whatsoever, the other Defendants in the Amazonia/Woodsford Claim), except for the DeLeon Releasees, and Chevron is not by this Agreement expressly or impliedly releasing or waiving any claims against any individual or entity except for the DeLeon Releasees.

**Public Statement**

32.     Upon Chevron's request, DeLeon and Torvia will issue a statement that provides as follows:

"*Commencing in March 2007, I provided funding to support the litigation in Ecuador against Chevron Corporation, in the good faith belief that I was supporting a worthy cause.*

*However, I have since reviewed the March 4, 2014 opinion by Judge Kaplan of the United States District Court for the Southern District of New York setting out the Court's findings and I have also considered the evidence presented during the trial. As a result, I have concluded that representatives of the Lago Agrio plaintiffs, including Steven Donziger, misled me about important facts. If I had known these facts, I would not have funded the litigation.*

*I no longer seek or wish to receive any financial benefit from this matter and I have therefore decided to relinquish my entire interest in the litigation to Chevron.*"

33.     The DeLeon Parties will not make any further public statement in relation to these proceedings or the Lago Agrio Litigation unless compelled by law, or as required to correct any falsehood that may cause them damage provided that any such statement will not disparage Chevron and will be consistent with the statement at clause 32 above.

34.     Chevron agrees that it will not issue any statement disparaging the DeLeon Parties, provided that Chevron reserves the right to respond to any additional statement made by the DeLeon Parties beyond the Public Statement described herein.

**Successors in Interest**

35.     The Parties agree that this Agreement shall be binding upon the Parties and, as applicable, to the extent they remain under the Parties' control, their heirs, executors, administrators, dependents, predecessors, successors, subsidiaries, divisions, alter egos, affiliated corporations, and related entities, and their present officers, directors, partners, employees, attorneys, assigns, agents, representatives, and any or all of them, and any past officers, directors, partners, employees, attorneys, assigns, agents, or representatives.

**No Assignment**

36.    Each Party warrants and represents that it has not assigned or transferred to any other person any of the claims, causes of action, or other matters that are released by this Agreement.

**Independent Legal Advice**

37.    Each Party represents that it has been represented, or has had the opportunity to seek and obtain independent legal advice and representation of its own choice, throughout all of the negotiations that preceded the execution of this Agreement and that it has executed this Agreement with the consent and upon the advice of those providing such legal advice or that it has had the opportunity to seek such consent and advice. Each Party acknowledges that it has read this Agreement and assents to all the terms and conditions contained in this Agreement without any reservations and that it has had, or has had the opportunity to have had, the same explained to it by its own legal advisers, who have answered any and all questions which have been asked of them, or which could have been asked of them, with regard to the meaning of any of the provisions of this Agreement.

**No Admissions or Waiver of Rights**

38.    By entering into this Agreement, no Party intends to make, nor shall be deemed to have made, any admission of liability of any kind. The Parties agree that they are entering into this Agreement to avoid the costs of further litigation and to settle potential disputes between the Parties. This Agreement is the product of informed negotiations and compromises of previously stated legal positions. Nothing contained in this Agreement shall be construed as an admission of liability by any Party as to the merit or lack of merit of any particular claim or defence. Any statements made in the course of negotiations have been and shall be without prejudice to the rights of the Parties in any disputes or transactions with any other person or entity not party to this Agreement.

39.    By entering into this Agreement, Chevron is not releasing, waiving or compromising any of its existing or future claims or rights against any entity or individual (including, for the avoidance of doubt, the other Defendants to the Amazonia/Woodsford Claim), other than the DeLeon Parties.

**Governing Law**

40.    This agreement and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by and construed in accordance with the laws of Gibraltar, save that clauses 24 to 26 and 47 are governed by and construed in accordance with the laws of England & and Wales, such that the Released Parties (or any one of them) shall have the right to enforce against the Parties to this Agreement the benefit of the release conferred by those terms.

**Exclusive Jurisdiction**

41.    The Parties agree that any and all disputes arising out of or relating to this Agreement shall be submitted for final and binding resolution to the Supreme Court of Gibraltar and that the Supreme Court of Gibraltar shall retain exclusive jurisdiction over the Parties for the purposes of enforcing this Agreement.

**Counterparts**

42.    This Agreement may be executed in one or more counterparts, each of which shall be an original as against any Party who signed it, and all of which shall constitute one and the same document.

**Construction**

43.    The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement. It is understood and acknowledged that this Agreement shall not be construed in favour of or against any Party by reason of the extent to which any Party or its legal representative has participated in the drafting of this Agreement.

**Severability of Agreement**

44.    If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable for any reason, the remaining provisions not so declared shall nevertheless continue in full force and effect, but shall be construed in such a manner so as to effectuate the intent of this Agreement as a whole, notwithstanding such stricken provision or provisions. The Parties agree that in the event any part of this Agreement is rendered or declared invalid or unenforceable, they will negotiate, in good faith, to agree on a permitted replacement part that reflects their original intent.

**Amendment and Waiver**

45.   Neither this Agreement, nor any of the provisions hereof, may be changed, waived, discharged, or terminated, except by an instrument in writing signed by the Party against whom enforcement of the change, waiver, discharge, or termination is sought.

**Legal Fees, Costs, and Expenses**

46.   Each Party shall bear its own legal fees, costs, and expenses incurred in connection with this Agreement, including any future costs associated with compliance with this Agreement. In the event of any litigation relating to this Agreement, including litigation subsequent to any breach, the prevailing Party shall be entitled to recover its reasonable legal fees, expenses, and costs.

**Third Party Beneficiaries**

47.   The Released Parties may enforce any benefit conferred upon them by this Agreement. Save as aforesaid, nothing else contained in this Agreement, express or implied, is intended to confer upon any person or entity other than the Parties hereto any benefits, rights, or remedies.

**Notices**

48.   Any notice required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been given either (a) upon actual receipt or three (3) days after deposit in the United States mail (registered or certified mail) postage prepaid, return receipt requested; (b) upon actual receipt if sent via reputable overnight courier; or (c) upon actual confirmation of receipt, if by email. All notices shall be addressed as follows:

If to Chevron:          Kobre & Kim (UK) LLP
                        Tower 42
                        25 Old Broad Street
                        London
                        EC2N 1HQ

                        Attention: Simon Cullingworth
                        simon.cullingworth@kobrekim.com
                        Phone: +44 7818 038631

and

Stern & Kilcullen LLC
325 Columbia Turnpike, Suite 110
P.O. Box 992
Florham Park, NJ 07932-0992

Attention: Hon. Herbert J. Stern
Email: hstern@sgklaw.com
Phone: (973) 535-1900

If to DeLeon:    Spears & Imes LLP
         51 Madison Avenue
         New York, NY 10010

         Attention: David Spears, Esq.
         E-mail:dspears@spearsimes.com
         Phone: (212) 213-6996

         and

         Triay & Triay
         28 Irish Town
         Gibraltar
         Attention: Charles Simpson, Esq.
         E-mail:  charles.simpson@triay.com
         Phone:  +350 200 72020

If to Torvia:    Spears & Imes LLP
         51 Madison Avenue
         New York, NY 10010

         Attention: David Spears, Esq.
         E-mail: dspears@spearsimes.com
         Phone:  (212) 213-6996

         and

         Triay & Triay
         28 Irish Town

Gibraltar

Attention: Charles Simpson, Esq.
E-mail: charles.simpson@triay.com
Phone: +350 200 72020

If to Jarvis:                    Spears & Imes LLP
                                 51 Madison Avenue
                                 New York, NY 10010

                                 Attention: David Spears, Esq.
                                 E-mail: dspears@spearsimes.com
                                 Phone: (212) 213-6996

                                 and

                                 Triay & Triay
                                 28 Irish Town
                                 Gibraltar

                                 Attention: Charles Simpson, Esq.
                                 E-mail: charles.simpson@triay.com
                                 Phone: +350 200 72020


[the remainder of this page is intentionally left blank]

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the date first written above.

CHEVRON CORPORATION

By:

Name: Kari H. Endries
Title: Assistant Secretary


JAMES RUSSELL DELEON

By:_____


TORVIA LIMITED

By: _____
Name:
Title:


JULIAN ROSS JARVIS

By: _____

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the date first written above.

CHEVRON CORPORATION

By:_____
Name:
Title:


JAMES RUSSELL DELEON

By:_____


TORVIA LIMITED

By: _____
Name:
Title:


JULIAN ROSS JARVIS

By: _____


Sandrine Giroud
Sandrine Giroud
Counsel
LALIVE
35, rue de la Mairie
1207 Geneva

Geneva, 13 February 2015

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement as of the date first written above.

CHEVRON CORPORATION

By:_____
Name:
Title:

JAMES RUSSELL DELEON

By:_____

TORVIA LIMITED

By:_____
Name: JULIAN JARVIS
Title: DIRECTOR TORVIA.

MATTHEW ARMITAGE
SOPHUS BALDITZ VEJ 28
2920 CHARLOTTENLUND
DENMARK

JULIAN ROSS JARVIS

By:_____

# Schedule A

<u>IN THE SUPREME COURT OF GIBRALTAR</u>

**CLAIM NO: 2012-C-232**

**BETWEEN:**

### CHEVRON CORPORATION

**Claimant**

**- and –**

### (1) JAMES RUSSELL DELEON

### (2) TORVIA LIMITED

**Defendants**

———————————————————

### CONSENT ORDER

———————————————————

 [**UPON HEARING** Leading Counsel for the Claimant and Counsel for the Defendants]

**AND UPON** the Claimant having served a Notice of Discontinuance

**AND UPON** the Defendants having served a Notice of Discontinuance in relation to their Counterclaim

**AND UPON** the Parties having agreed the terms set out below

**IT IS ORDERED BY CONSENT THAT:**

    1   There shall be no order as to costs on discontinuance.

    2   All existing costs orders made in these proceedings (including the costs order of Mr Justice Butler dated 2 July 2014) shall stand as fully satisfied and there shall be no further proceedings

for the assessment of costs or for the enforcement of any costs order.

Dated this            day of February 2015

.............................................................          .............................................................

**Attias & Levy**                                    **Triay & Triay**

Solicitors for the Claimant                  Solicitors for the Defendants

<u>CLAIM NO. 2012-C-232</u>

<u>IN THE SUPREME COURT</u>
<u>OF GIBRALTAR</u>

<u>CIVIL DIVISION</u>

**BETWEEN:**


**CHEVRON CORPORATION**

<u>**Claimant**</u>

**-and-**

**(1) JAMES RUSSELL DELEON**

**(2) TORVIA LIMITED**

<u>**Defendants**</u>


--------------------------------------------

## CONSENT ORDER

--------------------------------------------

## IN THE SUPREME COURT OF GIBRALTAR

**Claim No. 2014-C-110**

**BETWEEN:**

**CHEVRON CORPORATION**

**Claimant**

**-and-**

**(1) AMAZONIA RECOVERY LIMITED**
**(2) WOODSFORD LITIGATION FUNDING LIMITED**
**(3) PABLO ESTENIO FAJARDO MENDOZA**
**(4) LUIS FRANCISCO YANZA ANGAMARCA**
**(5) ERMEL GABRIEL CHAVEZ PARRA**
**(6) JULIAN ROSS JARVIS**

**Defendants**

_____

## CONSENT ORDER
_____

[**UPON HEARING** Leading Counsel for the Claimant and Counsel for the Defendants]

**AND UPON** the Claimant having served a Notice of Discontinuance in respect of the Sixth Defendant

**AND UPON** the Claimant and the Sixth Defendant having agreed the terms set out below

**IT IS ORDERED BY CONSENT THAT:**

1    There shall be no order as to costs on the discontinuance of the claim against the Sixth Defendant.

2    All existing costs orders made in these proceedings between the Claimant and the Sixth Defendant shall stand as fully satisfied

and there shall be no further proceedings for the assessment of costs or for the enforcement of any costs order.

Dated this               day of February 2015

..............................................................         ..............................................................
**Attias & Levy**                                              **Triay & Triay**
Solicitors for the Claimant                                    Solicitors for the Sixth Defendant

<u>**CLAIM NO. 2014-C-110**</u>

<u>**IN THE SUPREME COURT OF GIBRALTAR**</u>

<u>**CIVIL DIVISION**</u>

**BETWEEN:**


**CHEVRON CORPORATION**

<u>**Claimant**</u>

**-and-**

**(1) AMAZONIA RECOVERY LIMITED**
**(2) WOODSFORD LITIGATION FUNDING LIMITED**
**(3) PABLO ESTENIO FAJARDO MENDOZA**
**(4) LUIS FRANCISCO YANZA ANGAMARCA**
**(5) ERMEL GABRIEL CHAVEZ PARRA**
**(6) JULIAN ROSS JARVIS**

<u>**Defendants**</u>

_____

**CONSENT ORDER**

_____

# Schedule B

# Notice of discontinuance

Note: Where another party must consent to the proceedings being discontinued, a copy of their consent must be attached to, and served with, this form.

| In the | |
|---|---|
| Supreme Court of Gibraltar | |
| **Claim No.** | 2012-C-232 |
| **Claimant**<br>(including ref.) | Chevron Corporation |
| **Defendant**<br>(including ref.) | (1) James Russell DeLeon<br>(2) Torvia Limited |

**To the court**

The claimant ~~(defendant)~~

*(tick only one box)*

[X]     discontinues all of this claim ~~(counterclaim)~~

[ ]     discontinues that part of this claim (counterclaim) relating to: *(specify which part)*

against the defendants ~~(following defendants) (claimant) (following claimants)~~

~~(............................................................... *(enter name of Judge)* granted permission for the claimant to~~

~~discontinue (all) (part) of this (claim)(counterclaim) by order dated ........................................................)~~

I certify that I have served a copy of this notice on every other party to the proceedings

| Signed | | **Position or office held** | |
|---|---|---|---|
| | (Claimant)~~(Defendant)~~('s solicitor)~~(Litigation friend)~~ | | (if signing on behalf of firm or company) |
| **Date** | | | |

---

The court office at

is open between 10 am and 4 pm Monday to Friday. When corresponding with the court, please address forms or letters to the Court Manager and quote the claim number.

**N279 - w3** Notice of discontinuance (6.99)                                                       *Printed on behalf of The Court Service*
This form is reproduced from *http://hmctsformfinder.justice.gov.uk/HMCTS/FormFinder.do* and is subject to Crown copyright protection.  Contains public sector information licensed under the Open Government Licence v1.0

# Notice of discontinuance

Note: Where another party must consent to the proceedings being discontinued, a copy of their consent must be attached to, and served with, this form.

| In the | |
|---|---|
| Supreme Court of Gibraltar | |
| **Claim No.** | 2012-C-232 |
| **Claimant** (including ref.) | Chevron Corporation |
| **Defendant** (including ref.) | (1) James Russell DeLeon (2) Torvia Limited |

**To the court**

The ~~claimant~~ (defendants~~)~~ and each of them

*(tick only one box)*

[X]     Discontinue(s) all of their respective ~~(claim)~~ counterclaims

[ ]     discontinues that part of this claim (counterclaim) relating to: *(specify which part)*

against the ~~(defendants) (following defendants)~~ claimant ~~(following claimants)~~

~~(................................................................. *(enter name of Judge)* granted permission for the claimant to~~

~~discontinue (all) (part) of this (claim)(counterclaim) by order dated ........................................................)~~

I certify that I have served a copy of this notice on every other party to the proceedings

**Signed**

~~(Claimant)~~(Defendants' solicitor)~~(Litigation friend)~~

**Date**

**Position or office held**

(if signing on behalf of firm or company)

The court office at

is open between 10 am and 4 pm Monday to Friday. When corresponding with the court, please address forms or letters to the Court Manager and quote the claim number.

**N279 - w3** Notice of discontinuance (6.99)                                                                    *Printed on behalf of The Court Service*
This form is reproduced from *http://hmctsformfinder.justice.gov.uk/HMCTS/FormFinder.do* and is subject to Crown copyright protection.  Contains public sector information licensed under the Open Government Licence v1.0

# Notice of discontinuance

Note: Where another party must consent to the proceedings being discontinued, a copy of their consent must be attached to, and served with, this form.

| In the | |
|---|---|
| Supreme Court of Gibraltar | |
| **Claim No.** | 2014-C-110 |
| **Claimant** (including ref.) | Chevron Corporation |
| **Defendant** (including ref.) | Julian Ross Jarvis (& Ors) |

**To the court**

The claimant ~~(defendant)~~

*(tick only one box)*

[X]     discontinues all of this claim ~~(counterclaim)~~

[ ]     discontinues that part of this claim (counterclaim) relating to: *(specify which part)*

against the ~~(defendant)~~ following defendant ~~(claimant)~~ ~~(following claimants)~~: JULIAN ROSS JARVIS, the sixth Defendant.

~~(....................................................... *(enter name of Judge)* granted permission for the claimant to~~

~~discontinue (all) (part) of this (claim)(counterclaim) by order dated ........................................................)~~

I certify that I have served a copy of this notice on every other party to the proceedings

| **Signed** | | **Position or office held** | |
|---|---|---|---|
| | (Claimant)~~(Defendant)~~('s solicitor)~~(Litigation friend)~~ | | (if signing on behalf of firm or company) |
| **Date** | | | |

The court office at

is open between 10 am and 4 pm Monday to Friday. When corresponding with the court, please address forms or letters to the Court Manager and quote the claim number.

**N279 - w3** Notice of discontinuance (6.99)                                                                 *Printed on behalf of The Court Service*

This form is reproduced from *http://hmctsformfinder.justice.gov.uk/HMCTS/FormFinder.do* and is subject to Crown copyright protection.  Contains public sector information licensed under the Open Government Licence v1.0

# Schedule C

IN THE SUPREME COURT OF GIBRALTAR

CLAIM NO. 2014-C-111

BETWEEN:

## CHEVRON CORPORATION

<u>Claimant</u>

-and-

**(1)    GT NOMINEES LIMITED**
**(2)    GT MANAGEMENT LIMITED**
**(3)    GT FIDUCIARY SERVICES LIMITED**
**(4)    GRANT THORNTON FUND ADMINISTRATION LIMITED**
**(5)    TORVIA LIMITED**
**(6)    WOODSFORD LITIGATION FUNDING LIMITED**

<u>Defendants</u>

―――――――――――――――――――――――――――――

## ORDER

―――――――――――――――――――――――――――――

Dated the [ ] day of [ ] 2015

Before the Honourable Mr Justice Jack, Puisne Judge

**UPON [**the Court sealing] [the Claimant and the Fifth Defendant submitting] an Order dated [ ] requiring the Claimant to pay the Fifth Defendant's costs of and incidental to its Application Notice dated 22 September 2014 ('**the Costs Order**') with an interim payment of £25,000

**AND UPON** the Claimant satifying the order for an interim payment by offsetting it against other costs orders made against the Fifth Defendant in the Claimant's favour ('**the Interim Payment**')

**AND UPON** the Claimant and the Fifth Defendant agreeing a settlement of Claim No. 2012-C-232

**BY CONSENT IT IS ORDERED** that:

1. The Costs Order shall stand as fully satisfied by the Interim Payment.

2. There shall be no further proceedings for the assessment of costs.

Dated this [ ] day of February 2015

We hereby consent to the terms of the order contained herein.


..............................................................          ..............................................................

Attias & Levy                                                          Triay & Triay

Solicitors for the Claimant                                            Solicitors for the Defendants