# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Randy M. Mastro
Direct: +1 212.351.3825
Fax: +1 212.351.5219
RMastro@gibsondunn.com

Client: 19624-00020

August 13, 2018

VIA ECF – FILED UNDER SEAL PURSUANT TO PROTECTIVE
ORDER (DKT. 723) – REDACTED PUBLIC VERSION

The Honorable Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *Chevron Corp. v. Donziger, et al.*, Case No. 11 Civ. 0691 (LAK)

Dear Judge Kaplan:

      I respectfully write as counsel for Chevron Corporation ("Chevron") in response to the August 9, 2018 letter application of Frank Libby,[1] counsel to Katie Sullivan, seeking a protective order to limit the scope of her document production and deposition. This attempt to restrict Chevron's discovery is baseless and should be rejected.

      Sullivan's counsel asks the Court to limit discovery "(1) . . . to Paragraph 5 Compliance Discovery with respect to matter and entities other than the attempt to obtain funding from the Elliott Group, and (2) excluding any further questioning as to those subjects (Donziger's 'financial situation'; any payment to Donziger), identified by the Court in its June 19 Order as matters as to which Ms. Sullivan was directed to appear and testify." Ex. 1 at 6. Sullivan's counsel further requests that "Chevron be precluded from questioning Ms. Sullivan" as to her "state of mind, not shared with Donziger." Ex. 1 at 6-7. Counsel does not identify the document requests he views as "Paragraph 5 Compliance Discovery," and he has yet to produce any of the documents that he does not dispute Sullivan must produce under the July 23 Order.[2] Chevron is thus forced to address this misguided request for a protective order having been largely stonewalled thus far and denied any of this probative information.

      As an initial matter, Sullivan has conceded that she acted in concert with Donziger to solicit funding based on the corrupt Ecuadorian judgment, arranged for the deposit of funder monies into an account she opened, and then arranged for the distribution of tens of thousands of those funds to Donziger. *Infra* p. 3. And *after* receiving Chevron's subpoena, she transferred the funder monies remaining in the account she controlled to persons or entities she refused to identify. *Infra* p. 3. She also took possession of several boxes of Donziger's documents from Josh Rizack, which she continues to

---

[1]  As counsel's letter was not filed via ECF, Chevron attaches a copy of it as Exhibit 1.

[2]  *See* Ex. 2.

hold. Ex. 3 (Tr. at 168:18-169:12) (███████████████████████████████
███); Ex. 9 (Tr. at 19:18-21:23) (Rizack testifying Sullivan picked up 3-5 boxes of material).[3] Given these actions, any discovery "burdens" Sullivan faces are of her own making. Nor does Sullivan identify any actual burden that the proposed protective order eliminates. Sullivan's original deposition was less than five hours long (including breaks) and she accepts that she must sit for additional questioning. She originally produced only a few hundred pages of documents and admits she has additional responsive documents. Nonetheless, she makes no effort to identify for the Court or Chevron the categories of *responsive* documents she is proposing to withhold if the requested protective order is granted. For these reasons alone, the protective order should be denied. *See Chevron Corp. v. Donziger*, No. 11 Civ 0691 (LAK), 2018 WL 3146719 at *11 (S.D.N.Y. June 27, 2018) (quoting *Huthnance v. District of Columbia*, 255 F.R.D. 285, 296 (D.D.C. 2008)) (denying protective order and noting that "[a] court will not grant a [protective order] request that relies on 'conclusory or speculative statements about the need for a protective order and the harm that will be suffered without one'").

Chevron's counsel has been meeting and conferring with Sullivan's counsel since this Court issued its July 23 Order (Dkt. 2056). The August 9 letter of Sullivan's counsel to the Court, however, is the first time Chevron received a specific, written proposal to limit the scope of discovery.[4] While Chevron has no intention of engaging in duplicative discovery, the limits proposed by Sullivan's counsel are unjustified, unworkable, and unwarranted. In particular, due to her counsel's repeated and improper limiting instructions at her June 21 deposition, (*infra* pp. 4-5), Chevron was not able to meaningfully question her regarding all judgment enforcement topics, Donziger's finances, or payments to Donziger. Moreover, Donziger's "financial situation" and "payments" to Donziger are intertwined with and flow from his "acts to monetize or profit from the Judgment," in violation of Paragraph 5 of the RICO injunction. Dkt. 1875 ¶ 5. Sullivan and others will have produced additional documents on these topics by the time of the second Sullivan deposition. Questioning regarding these topics should thus not be artificially curtailed or obstructed. Nor should Sullivan be relieved of the obligation to produce all responsive documents in her possession, custody and control not previously produced. Indeed, Donziger admitted at his deposition that Sullivan had produced documents he himself should have produced, purportedly because she "is better organized." Ex. 4 (Tr. at 238:14-22).

---

[3] Chevron has filed this letter and Exhibits 3 and 7 under seal pursuant to the Protective Order in this action. Dkt. 723. Sullivan's counsel has indicated its non-opposition to de-designating much of the deposition transcript, however, the meet and confer process to finalize the de-designations is not yet complete. Accordingly, Chevron has filed the materials under seal out of an abundance of caution pending the resolution of the meet and confer process and counsel's response pursuant to the Protective Order. *See* Dkt. 723 at ¶ 19. Chevron intends to file a motion to strike Sullivan's confidentiality designations shortly.

[4] The last time counsel for Chevron spoke with Sullivan's counsel, he indicated he would be sending Chevron a proposal—instead, he sent his letter to the Court.

**GIBSON DUNN**

The Honorable Lewis A. Kaplan
August 13, 2018
Page 3

**Sullivan's Request to Preclude Questioning on Her State of Mind Should Be Denied.** Sullivan's request to exclude questioning regarding her "state of mind" is likewise improper and should be rejected. The discovery Chevron has obtained thus far, including Sullivan's own notes and correspondence with Donziger regarding the Elliott meeting, demonstrates that Sullivan had actual notice of the RICO injunction, and its effects on funders. *See* Ex. 5 (Gr-4); Ex. 6 (noting "injunction in the U.S.," and referencing "Rule 65 – participating violation in some court order"). Indeed, she admitted at her deposition that it was her understanding that because of the RICO judgment, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 3 (Tr. at 38:17-39:12). Yet she enthusiastically pursued the solicitation of Elliott Management (and apparently others about which she refused to testify) with full knowledge that the contemplated investment would involve selling Elliott Management a percentage of the judgment—in other words, monetizing it, in violation of the injunction, which "enjoined and restrained" Donziger—and his agents—"from undertaking any acts to monetize or profit from the Judgment . . . by selling, assigning, pledging, transferring or encumbering *any* interest therein." Dkt. 1875 ¶ 5 (emphasis added). Moreover, in response to questioning regarding an email instructing recipients to delete emails regarding the Elliott solicitation to avoid disclosure to Chevron, (Ex. 8 (PX-9006)), Sullivan admitted that she ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Ex. 3 (Tr. at 74:8-75:20).

Sullivan's state of mind is also relevant because her involvement did not begin or end with the Elliott solicitation. Following the Elliott meeting, she became more involved, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 3 (Tr. at 181:1-5). Sullivan ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ from this account to Donziger in early 2018. Ex. 3 (Tr. at 86:2-13). She admitted that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, (Ex. 3 (Tr. at 86:2-87:2)), in violation of both Paragraph 1[5] and Paragraph 5[6] of the RICO injunction. Dkt. 1875 ¶¶ 1, 5. Moreover, she did this purely on ▇▇▇▇▇▇▇▇—admitting that she did not know ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 3 (Tr. at 125:7-14). She testified that Donziger was ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 3 (Tr. at 176:20-177:13; 184:16-185:25). And although $50,000 of this $125,000 paid to Donziger from the CWP account in early 2018 ▇▇▇▇▇▇▇▇▇▇▇▇

---

[5] Imposing a "constructive trust for the benefit of Chevron on all property. . . that Donziger has received, or hereafter may receive . . . or to which Donziger now has, or hereafter obtains, any right, title or interest . . . that is traceable to the Judgment," and requires Donziger to "transfer and forthwith assign to Chevron all such property."

[6] Enjoining Donziger "from undertaking any acts to monetize or profit from the Judgment . . . including, without limitation by selling, assigning, pledging, transferring, or encumbering any interest therein."

████ Ex. 3 (Tr. at 189:12-190:11). Then, after receiving the preservation order issued by the Court on March 19, 2018 in connection with Chevron's motion for contempt, Sullivan ████ Ex. 3 (Tr. at 179:22-182:3); Ex. 4 (Tr. at 233:20-234:11). In addition, Donziger may have attempted to transfer an interest in the judgment to Sullivan herself, another potential violation of the RICO injunction. Sullivan admitted that ████, (Ex. 3 (Tr. at 173:1-9)), which Donziger corroborated, testifying that there was "a draft of an agreement" with Sullivan, though he was not sure whether it had been executed, (Ex. 4 (Tr. at 68:18-22)). Neither Sullivan nor Donziger has produced a copy of this draft agreement.

Accordingly, Sullivan's state of mind—not just as communicated to Donziger—is relevant to Donziger's compliance or non-compliance with the Court's injunction, and Chevron should be permitted to explore this topic fully at her deposition. Dkt. 1875 ¶¶ 8 (noting that the injunction "is binding upon the parties; their officers, agents, servants, employees, and attorneys; and other persons who are in active concert and participation with any of the foregoing"); Fed. R. Civ. P. 65(d)(2) (injunctions bind the parties and their agents with notice); *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010) (noting that "third parties 'who are in active concert or participation' with the parties, their officers, agents, servants, employees or attorneys," may be subject to the enjoining court's jurisdiction for aiding and abetting violations by a party); *Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 465 (S.D.N.Y. 2017) (a nonparty may be bound by an injunction where the nonparty "either aid[s] and abet[s] the defend-ant or [is] legally identified with it").

**Sullivan's Request to Preclude Further Discovery Regarding Topics Authorized by the Court's June 19 Order (Dkt. 2027) Should Be Denied.** Sullivan's request to preclude further discovery regarding the Elliott Management solicitation, and "further questioning as to" "Donziger's 'financial situation'," and any payment to Donziger," should also be rejected. Ex. 1 at 6. Sullivan was repeatedly instructed not to testify fully as to these topics at her June 21 deposition,[7] based on an obstructive and unduly restrictive application of the Court's June 19 Order.[8] For example, counsel prevented basic background questioning, taking the position that Chevron could not ask questions ████ Ex. 3 (Tr. at 15:4-

---

[7] Contrary to counsel's claim that it was a "full day" deposition, Sullivan's deposition began shortly after 10 and ended by 3:30, including a lunch break and several shorter breaks.

[8] The June 19, 2018 Order provides: "Ms. Sullivan and her company . . . shall produce all requested documents and information concerning: (a) the attempt to obtain funds from Elliott Management Company ('Elliott'), any affiliates of Elliott, and/or any funds managed by Elliott or its affiliates, (b) Donziger's assets, liabilities and financial situation, and (c) any payments to Donziger, past or anticipated, out of proceeds of financing granted in whole or in part in exchange for any portion of any future collections on the Ecuadorian judgment." Dkt. 2027.

**GIBSON DUNN**

The Honorable Lewis A. Kaplan
August 13, 2018
Page 5

15). He instructed her not to answer how ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *id.* at 17:9-18:8; and for what ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *id.* at 20:14-21:11. Counsel also repeatedly obstructed questioning aimed at understanding the very documents Sullivan produced, including an email reflecting her disagreement with Donziger on whether Elliott would be deterred by the RICO judgment. For example, in one email, Donziger expressed the view that "w RICO judgment it would be too problematic" for Elliott to invest, and Sullivan responded that Elliott would be interested in the transaction because it could "short Chevron, invest a ton of money in the case, and make money on both ends," but counsel repeatedly instructed Sullivan not to respond to questions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 5 (Gr. 4); *see, e.g.*, Ex. 3 (Tr. at 36:6-37:21; 38:9-39:12; 40:19-42:24; 43:16-49:19).

Moreover, Donziger's "financial situation," and payments made to him, are relevant to both judgment enforcement and his compliance with Paragraphs 1 and 5 of the RICO injunctions. Yet counsel repeatedly instructed Sullivan not to respond to questions regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "proceeds of financing granted in whole or in part in exchange for any portion of any future collections on the Ecuadorian judgment," as set forth in the June 19 Order. Dkt. 2027 at 2. He instructed her not to answer, for example, questions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, taking the position that this was "Paragraph 5" compliance discovery, even though it also relates to Donziger's assets and sources of funds. *See, e.g.*, Ex. 3 (Tr. at 88:9-89:10; 90:4-14; 91:19-92:10; 225:9-226:8). She has produced no funding agreements and has redacted the documents she did produce to conceal the identities of funders and the amount of money in the CWP account. Ex. 7.

**Conclusion.** Accordingly, Chevron is entitled to receive all of the documents and question Sullivan about all of the subject matters put at issue in this misguided application. Specifically, it will be impossible for Chevron to conduct a meaningful Paragraph 5 Compliance deposition of Sullivan without reference to documents previously produced and related subject matter. Moreover, Chevron should be entitled to ask questions regarding any new documents that Sullivan or anyone else produces that may be relevant to any topic on which Chevron is permitted by right to seek discovery or on which the Court has approved discovery. Thus, Chevron respectfully submits that Sullivan's application for a protective order should be denied in its entirety.

As always, we appreciate the Court's consideration.

Respectfully,

/s/ Randy M. Mastro
Randy M. Mastro