UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

                              Plaintiff,

            -against-                                         11 Civ. 0691 (LAK)

STEVEN DONZIGER, et al.,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

        This controversy, the litigation of which has taken years and contributed hundreds of pages of decisions by this and others to the law reports, is before the Court again, this time on a motion by Chevron Corporation ("Chevron") to compel Steven Donziger, The Law Offices of Steven R. Donziger and Donziger Associates, PLLC (collectively, "Donziger") to Execute [1] an Unqualified Transfer and Assignment of Amazonia Shares and [2] a Transfer and Assignment of Judgment Interests, dated June 27, 2018, in the forms attached to the moving declaration of Anne Champion.[1] The Court assumes familiarity with previous decisions in this case – including the decisions after trial

---

[1] DI 2046.

and on appeal from the final judgment[2] – and this Court's opinion of May 16, 2018,[3] which sets forth the factual circumstances leading to the present motion. The Court refers only to those facts essential to disposition of this application.

*Facts*

*The Judgment*

    *Paragraph 1*

Paragraph 1 of the final judgment in this case[4] imposed a constructive trust for the benefit of Chevron on all property that Donziger has received, or hereafter may receive, that is traceable to the Ecuadorian judgment or its enforcement. It required him to "transfer and forthwith assign to Chevron all such property that he now has or hereafter may obtain including, without limitation, all rights to any contingent fee under the Retainer Agreement and all stock in Amazonia.."

Donziger from the date of the judgment until now has failed and refused to transfer or assign any such property.

    *Paragraph 3*

Paragraph 3 directed Donziger to "execute in favor of Chevron a stock power

---

[2] *Chevron Corp. v. Donziger,* 974 F. Supp.2d 362 (S.D.N.Y. 2014), *aff'd,* 833 F.3d 74 (2d Cir. 2016), *cert. denied,* ___ S.Ct. ___ (2017).

[3] *Chevron Corp. v Donziger,* 11-cv-0691 (LAK), 2018 WL 2247202 (S.D.N.Y. May 16, 2018).

[4] DI 1875.

3

transferring to Chevron all of his right, title and interest in his shares of Amazonia" and to "execute such other and further documents as Chevron reasonably may request or as the Court hereafter may order to effectuate the foregoing provisions of this Judgment."[5]

*Prior Motion Practice Regarding Paragraph 3*

On March 19, 2018, Chevron moved to hold Donziger in civil contempt based, *inter alia,* on his non-compliance with paragraph 3, viz. the assignment of his right, title and interest in Amazonia shares.

The filing of that motion failed to elicit compliance.

The Court heard oral argument on the contempt motion on May 8, 2018, at which time Donziger appeared to relent and assured Chevron and the Court that he would sign the stock power. Ultimately, as set out in the May 16, 2018 opinion, he executed a form of stock power but added to it an addendum, the object of which appeared to be to undermine the legal effectiveness of the power he executed. Nevertheless, inasmuch as the final judgment did not specify the precise form of the required stock power, the Court denied the civil contempt motion. It observed, however, that Chevron was "free to request that Donziger execute a specific form of stock power without amendment or qualification and, should he fail promptly to do so, to seek an order of this Court requiring that he comply."[6] Chevron thereupon filed this motion, which seeks also ro require that Donziger comply with paragraph 1 to the extent described below.

---

[5] DI 1875 ¶ 3.

[6] *Chevron Corp. v Donziger,* 2018 WL 2247202, at *6.

4

*Discussion*

A.  *The Unqualified Amazonia Transfer*

Donziger resists Chevron's request for an order requiring him to signed an unqualified stock power transferring and assigning all of his right, title and interest in the Amazonia sharers in the form sought by Chevron (an "Unqualified Amazonia Transfer") essentially on a single ground. He contends that the addenda that he added to the stock power he previously executed[7] "are expressions of [his] views, positions, mental impressions, opinions, and awareness of certain objective facts. As such, they cannot be forcibly changed or suppressed by Court order without directly violating the First Amendment."[8] An order requiring him to execute a specific form of stock power without amendment or qualification," he asserts, "would be a pure gag order directing me not to speak inconvenient truths" and therefore would "be repugnant to the First Amendment."[9] Unsurprisingly, he cites no legal authority for this argument, which is entirely without merit.

The order that Chevron requests would not force Donziger to change his views or to utter any words at all, whether "inconvenient truths" or anything else. It would require him only to execute and deliver a simple form of stock power, without any qualification or addition of anything beyond the necessary signatures, to carry out a provision of a judgment. And Donziger is grievously mistaken in thinking that the Court cannot constitutionally require him to do so. Among other

---

[7] The power previously executed was made on behalf of only one of the three persons subject to the obligation to execute such a power. *Id.* at 5 n.22. Among those on behalf of whom it was not executed was Steven Donziger himself.

[8] DI 2054, at *1.

[9] *Id.* at *2.

5

considerations, the requested order would not limit Donziger in expressing himself when, as and where (save for the stock power) he wishes. The prohibition on adding anything other than his signature to this legal instrument would be entirely content neutral – it would prohibit any and all additions or commentary, regardless of context. The requested order would not violate the First Amendment.

### B. The "Judgment Interests" Assignment

Chevron seeks also to require Donziger to execute an instrument that would "irrevocably assign, set over and transfer to Assignee [Chevron] any and all Judgment Interests." The form of assignment defines "Judgment Interests" as:

> "all property, whether personal or real, tangible or intangible, vested or contingent, that Assignor has received, or hereafter may receive, directly or indirectly, or to which Assignor now has, or hereafter obtains, any right, title or interest, directly or indirectly, that is traceable to the Judgment or the enforcement of the Judgment anywhere in the world including, without limitation, all stock in Amazonia Recovery Limited and all rights to any contingent fee under that certain Retainer Agreement, dated as of January 5, 2011 . . ."

Thus, it tracks the wording of paragraph 1 of the judgment in this case, which (a) imposed a constructive trust on and (b) requires Donziger to "transfer and forthwith assign to Chevron" all such property.[10]

Donziger resists this also. He asserts that "[t]he language in the original judgment is wildly uncertain in scope" though he points to no particular uncertainty. And he goes on to claim that the Court, in its opinion largely denying Donziger's motion for a stay of that judgment pending appeal,[11] therefore subsequently limited its scope to money or other property collected on the

---

10 DI 1874, ¶ 1.

11 DI 2018.

6

Ecuadorian judgment.

As an initial matter, there is no uncertainty in the language of paragraph 1 of the judgment or, consequently, in the language of the form of assignment that Chevron seeks to require Donziger to execute. The phrase "property, whether personal or real, tangible or intangible, vested or contingent" is perfectly clear. Nor is there any uncertainty inherent in the limitation of the operation of paragraph 1 to property "traceable to the [Ecuadorian] Judgment or the enforcement of the Judgment." The concept of traceability of property to particular sources, events, or activity is extremely well established in the law. Money or other property is "traceable" to a given source, event, or activity if its "acquisition is attributable to" that source, event, or activity.[12] To put it another way, "proof that the proceeds of the" event or activity, in the quoted case money laundering, "enabled the defendant to acquire the property" makes that property "traceable to the" event or activity.[13] So any property (1) that Donziger (a) had as of the date of the judgment in this case, or (b) acquired from the date of the judgment until now, or (c) hereafter may acquire *and* (2) that Donziger was "enabled to acquire" by the Ecuadorian Judgment or its enforcement is traceable to that Judgment. It therefore is or, upon acquisition subsequent to the date of the judgment, became or will become (depending upon the timing of the acquisition) subject to the constructive trust imposed by the judgment in this case. Paragraph 1 of that judgment requires Donziger to transfer and assign such property to Chevron "forthwith." But that does not necessarily require that Chevron's motion in this respect be granted in

---

12

    *E.g., United States v. Gordon,* 710 F.3d 1124, 1135 n.13 (10th Cir. 2013); *United States v. Bornfield,* 145 F.3d 1123, 1135 n.13 (10th Cir. 1998); *see United States v. Torres,* 703 F.3d 194, 196 (2d Cir. 2012); *United States v. Marimon,* 507 Fed. App'x. 5, 7 (2d Cir. 2012).

13

    *United States v. Hawkey,* 148 F.3d 920, 928 (8th Cir. 1998) (quoting *Bornfield,* 145 F.3d at 1135 (internal quotation marks omitted)).

every detail.

Donziger, as of the date of the judgment in this case, owned certain property that he clearly and indisputably had obtained that is traceable to the Ecuadorian judgment. His professional limited liability company, Donziger Associates, PLLC, a defendant in this case and one of the parties to the judgment here, pursuant to its January 5, 2011 retainer agreement, owned a contract right to a contingency fee and other monies.[14] As this Court previously held, in a ruling that Donziger did not challenge on appeal, that "right to a contingent fee and the fee itself are property."[15] They are "subject to execution and attachment "[16] And they were and remain immediately assignable:

> "Prior to the entry of the [Ecuadorian] Judgment, Donziger's retainer agreement was 'an executory contract' for the payment of his retainer and reimbursement of his expenses plus a 'transfer of a future fund [*i.e.*, his share of the collections on the Judgment] upon which specific performance [would] be granted when the fund [came] into existence.' *Brandes v. North Shore University Hosp.*, 18 Misc.3d 1112(A), 856 N.Y.S.2d 496, 2008 WL 80629, at *3 (Sup. Ct. Queens Co. Jan. 8, 2008) (citing *Williams v. Ingersoll*, 89 N.Y. 508 (1882)). The fund came into existence 'when there [wa]s a judgment,' *i.e.*, on February 14, 2011. *Aponte v. Maritime Overseas Corp.*, 300 F.Supp. 1075, 1077 (S.D.N.Y.1969). His rights to payments when the fund came into existence, *i.e.*, when judgment was entered, as well as his rights against that fund once it came into being, were and are, respectively, assignable. *Id.* at 1077; N.Y. GEN. OBLIG. L.§ 13–101; David D. Siegel, *Practice Commentaries,* 7B MCKINNEY'S CONSOLIDATED LAWS OF N.Y. — CPLR 5501 TO 5500 C5201:9, at 66–67 (McKinney 1997). Accordingly, his claims to the contingent fee, to his monthly retainer, and to expense reimbursements at all relevant times were and remain property subject to execution and attachment under New York law. N.Y. CPLR § 5201(b) ('A money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment.'); § 6202 ('Any. . . property against

---

[14] *Chevron Corp. v. Donziger,* 974 F. Supp.2d at 640.

[15] *Id.*

[16] *Id.*

which a money judgment may be enforced as provided in section 5201 is subject to attachment.')."[17]

Accordingly, it is entirely plain that this particular set of contract rights has been subject since March 4, 2014 to Donziger's express obligation to transfer and assign them forthwith to Chevron, an obligation that he has disregarded for over four years.[18] The Court will order Donziger to execute an unqualified, unsupplemented document that conforms in substance to the requested document insofar is it relates to Donziger's rights to a contingent fee.

The situation stands somewhat differently to the extent that the form of assignment Chevron seeks, if executed, would transfer not only Donziger's existing, identified, and contractual rights to a contingent fee, but also unspecified property said to be traceable to the Ecuadorian judgment or to its collection. To be sure, the Court assumes without now deciding that any such property interests owned by Donziger as of the date of the judgment in this case or acquired by him from that date on into the future are or will become subject to the constructive trust and to Donziger's obligation to transfer and assign it to Chevron. To the extent that such property can be

---

[17] *Id.* n. 1820.

[18] Nor is there anything in the Court's April 25, 2014 order largely denying Donziger's motion for a stay pending appeal that even remotely excused Donziger, either pending appeal or otherwise, from complying with that direction. Donziger's contention with respect to the stay decision is that the stay decision limited the judgment's impact on property "traceable to the Lago Agrio Judgment" to property that "flowed from *a collection of proceeds* on the Lago Agrio Judgment." DI 2054. Whatever the merit of that contention with respect to other property, which the Court will address in due course in connection with another pending motion, it has none at all with respect to paragraph 1's specific requirement that Donziger "transfer and forthwith assign to Chevron . . . all rights to any contingent fee under the Retainer Agreement and all stock in Amazonia.." DI 1874, ¶ 1. Indeed, the fact that Donziger acknowledges that he is obliged to assign to Chevron the Amazonia stock (though he quibbles with the form of the stock power) evidences precisely that fact, as the rights under the Retainer Agreement to a contingent fee and the Amazonia stock are treated in precisely in the same way.

identified and specifically described, Donziger will be compelled, if necessary, to comply with the obligation. But the Court does not see what purpose would be served by now requiring Donziger to execute a form of transfer and assignment with respect to unidentified, undescribed property, as such an instrument would leave entirely unclear what had been transferred and assigned.[19] Accordingly, in the exercise of discretion, it declines now to require the execution of an instrument so broad.[20]

## Conclusion

Accordingly, Chevron's motion [DI 2046] is granted to the extent that Steven Donziger shall execute, acknowledge before a notary public, and deliver to Chevron's counsel of record in this case, on or before August 21, 2018, the following documents:

1. A transfer document for the Amazonia shares in the form annexed as Exhibit 2 to the declaration of Anne Champion [DI 2048-2] (save that the correct date shall be included in the executed document rather than "__ June 2018").

2. A transfer and assignment in the form annexed to this order as Exhibit 1. Donziger shall not qualify, affix or add anything to either document except that he shall (a) sign his name where his signature is required and (b) procure certificates of notaries public to Donziger's acknowledgements as required.

---

[19] *See, e.g.,*

[20] *See, e.g., CNA Fin. Corp. v. Brown,* 162 F.3d 1334, 1337 (11th Cir. 1998); *Elec. Steel Foundry v. Huntley,* 32 F.2d 892, 893 (9th Cir. 1929); 11A CHARLES ALLAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 2942 (2018).

10

Chevron's motion is denied in all other respects.

SO ORDERED.

Dated:      August 14, 2018

_____
Lewis A. Kaplan
United States District Judge

# EXHIBIT 1

This **TRANSFER AND ASSIGNMENT** (this *"Agreement"*) is made effective as of August 14, 2018 by and among Steven Donziger, The Law Offices of Steven R. Donziger, and Donziger & Associates, PLLC also known as Donziger Associates, PLLC (collectively *"Assignor"*), on the one hand, and Chevron Corporation (*"Assignee"*), on the other hand (*Assignor* and *Assignee* collectively referred to as the *"Parties"*).

IT IS HEREBY AGREED, between and among the *Parties*, as follows:

1. Assignment. *Assignor* (including each person and entity included within that collective term) does hereby irrevocably assign, set over, and transfer to *Assignee* all right, title, and interest *Assignor* has, directly or indirectly, to any contingent fee under that certain Retainer Agreement, dated as of January 5, 2011, between and among (a) each of the individual plaintiffs in Lawsuit No. 2003-2002, entitled *Maria Aguinda y Otros v. Chevron Corporation,* in the Sucumbios Provincial Court of Justice of the Republic of Ecuador (including all appeals or subsequent proceedings with respect to any judgment, order or decree), (b) El Frente de Defense de la Amazonia also known as the Amazon Defense Front, the ADF, and the FDA, (c) Asamblea de Afectados Por Texaco, and (d) Donziger Associates, PLLC (the *"Retainer Agreement"*), together with its successors and assigns and all successors to and predecessors of the *Retainer Agreement*, and *Assignee* hereby accepts such assignment.

2. Counterparts. This *Agreement* may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same document.

IN WITNESS WHEREOF, the *Parties* have executed this Transfer and Assignment as of August 14, 2018.

_____
Steven Donziger
in his individual capacity and in his capacities as authorized representative of The Law Offices of Steven R. Donziger and Donziger Associates PLLC

STATE OF NEW YORK  )
                   ) ss.:
COUNTY OF NEW YORK)

On the _____ day of August 2018, before me, the undersigned notary public, personally appeared Steven Donziger, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his individual capacity and as his capacities as authorized representative of The Law Offices of Steven R. Donziger and Donziger Associates PLLC, and by

his signature on the instrument, the individual and the persons upon behalf of which he acted, executed the instrument.

_____ Notary Public

_____
(Name and Title)
CHEVRON CORPORATION

STATE OF _____ )
                    ) ss.:
COUNTY OF _____ )

On the _____ day of August 2018, before me, the undersigned notary public, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity as _____ of Chevron Corporation, and by his signature on the instrument, the corporation upon behalf of which he/she acted, executed the instrument.

_____ Notary Public