USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/21/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- x

CHEVRON CORPORATION,

Plaintiff,

-against-

11 Civ. 0691 (LAK)

STEVEN DONZIGER, et al.,

Defendants.

---------------------------------------- x

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO EXTEND TIME**

LEWIS A. KAPLAN, *District Judge.*

The judgment in this case, entered March 4, 2014, required Donziger to execute instruments transferring and assigning certain property to Chevron. Donziger failed to comply. Finally, on August 15, 2018, after extensive prior proceedings, the Court ordered Steven Donziger to execute, acknowledge before a notary public and deliver to Chevron's counsel of record on or before August 21, 2018 two particular legal instruments giving partial effect those aspects of the 2014 judgment. DI 2072.

Donziger still has not complied. Waiting until the last moment, as he often has done, Donziger late yesterday filed a letter motion [DI 2075] seeking an extension of time until September 7, 2018. He says that he is out of the country and that he might not be able to get a notary wherever he is. He rehashes, moreover, an argument previously made and rejected. And he does not even say that he will comply with the order with the benefit of the extension he seeks. Indeed, he at least arguably implies that he has no intention of doing so.

Donziger has obfuscated and delayed at every step. The circumstances suggest that this request for an extension is almost entirely unnecessary and part of a plan to benefit from further delay. Apart from making a small allowance assuming that he in fact is outside the United States, the application is denied.

*Discussion*

Donziger's first argument for an extension is that he is out of this country, has no way to access a U.S. notary, and is unsure that a foreign notary would meet the Court's requirements. That asserted problem is readily solved. According to the U.S. State Department, U.S. consular officers at U.S. Embassies and Consulates abroad provide notarial services, including acknowledgments, for U.S. citizens.[1] Accordingly, Donziger may sign the required documents, take them to any U.S. Embassy or consulate, and have the requisite acknowledgments affixed. If he is in Ecuador, as perhaps is the case, that can be accomplished in Quito, where he regularly has had an office in the past, or in Guayaquil. Indeed, the web site of the U.S. Embassy in Ecuador states: "Notarial services are available to U.S. citizens and foreign nationals for documents to be used in the United States. Notary services are executed by Consular Officers and may include documents to be signed before them, statements made under oath, powers of attorney, certified translations, affidavits, acknowledgments, among others."[2]

Donziger next contends that his "clients have forbidden me to make such a transfer and made it clear that, despite the Court's order, a transfer would be considered an act of cooperation with and enrichment of Chevron in violation of my fiduciary duties toward them, that could result in [his] termination." He claims that he therefore is seeking counsel to advise him in this situation. But this ship sailed long ago and, in any case, the assertion that his "clients" "could" terminate him if he complies with the Court's order is of extremely dubious veracity.

1. The judgment in this case (DI 1874) required Donziger to make the two transfers that are the subject of the Court's recent order. (Indeed, the recent order was occasioned primarily by Donziger's long defiance of the relevant provisions of the judgment.) Donziger had every opportunity to challenge those provisions of the judgment on appeal, but he did not. Under established law, "a [district court] legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time."[3] Accordingly, Donziger is obliged to comply with the judgment and the

---

1 https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/authentications-and-apostilles/Notarial-Authentication-Services-Consular.html (last visited Aug. 21, 2018).

2 https://ec.usembassy.gov/u-s-citizen-services/notarials/ (last visited Aug. 21, 2018).

3 *North River Ins. Co. v. Philadelphia Reins. Corp.*, 63 F.3d 160, 164 (2d Cir. 1995) (quoting *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C. Cir. 1987) (internal quotation marks omitted)); *accord, e.g., United States v. Philip Morris USA Inc.*, 801 F.3d 250, 257-58 (D.C. Cir. 2015) (litigant waives issue that could have been, but was not, raised on prior appeal); *Lindquist v. City of Pasadena Texas*, 669 F.3d 225, 239-40

Court's order even if doing so would be objectionable to Donziger's "clients" and even if they would terminate him for doing so which, for reasons discussed below, is highly unlikely.

2. Moreover, all of this relates back to events during the course of and following Chevron's motion to hold Donziger in contempt by reason, in part, of his failure to transfer his Amazonia shares[4] (the vehicle through which he hopes to be paid a contingent fee based on any recovery in the Ecuadorian litigation). Those events would be highly instructive in considering whether there would be any genuine need for further consultation even if Donziger's obligation to comply with the order were open to debate. The fact of the matter is that he intermittently has made substantially this argument, which the Court has rejected, while he intermittently has claimed also that he would sign whatever the Court required or that there is no point in order the transfer of the Amazonia shares either because the company is defunct, because Chevron already owns the shares, or because the transfer of the shares would causes him grave and irreparable loss. To wit:

- August 14, 2014. In response to Chevron letter demanding transfer, Donziger wrote: "My clients have informed me, via the Directors of Amazonia, that if any transfer of stock is effectuated by me to any entity, those shares will be divested immediately under the by-laws of the entity that holds the shares. As you know, my clients do not recognize Judge Kaplan's assertion of jurisdiction in this matter. The upshot is that a simple transfer to the clerk's office of my Amazonia shares would in practice mean the complete divestiture — and potentially irretrievable loss — of more than two decades of labor on the part of me and some of my colleagues .

---

(5th Cir. 2012) (litigant waives issue that could have been, but was not, raised on prior appeal); *Med. Ctr. Pharmacy v. Holder,* 634 F.3d 830, 834-36 (5th Cir. 2011) (issue that could have been but was not raised on appeal is forfeited and may not be revisited by the district court on remand); *Empagran S.A. v. Hoffman-LaRoche, Ltd.,* 388 F.3d 337, 344 (D.C. Cir. 2004) (argument made in second appeal waived by failure to raise it in district court or on prior appeal); 18 MOORE'S FEDERAL PRACTICE § 134.20[3], at 134-54.1 (3d ed. 2017); *see Phil-Insul Corp. v. Airlite Plastics Co.,* 854 F.3d 1344, 1357 (Fed. Cir. 2017) (issue within scope of the judgment appealed from and not raised by the appellant in its opening brief on appeal is necessarily waived); *Myers v. Central Fla. Invests., Inc.,* 592 F.3d 1201, 1227 (11th Cir. 2010) (appellate court declined to consider issue that should have been raised on prior appeal); *Ward v. Santa Fe Ind. Sch. Dist.,* 393 F.3d 599, 607 (5th Cir. 2004) ("A party cannot raise an issue on appeal that could have been raised in an earlier appeal in the same case."); *Nat'l Home Equity Mtg. Assn. v. Face,* 283 F.3d 220, 225 (4th Cir. 2002), vacated on other grounds, 123 S. Ct. 69 (inappropriate on second appeal to consider argument that could have been raised on prior appeal in same case); 18B CHARLES ALLAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS § 4478.6 (2d ed. 2017).

4 DI 1968.

. ."[5] Thus, at that writing, Donziger was taking the position that the required share transfer would have catastrophic consequences for him.

- March 25, 2018. Donziger asserted what he claimed was his understanding"that the 'Amazonia' entity in Gibraltar either no longer exists or is entirely owned by Chevron after Chevron forced it into receivership . . ." and then added that a transfer of his shares "a transfer of shares, were the entity functioning and/or before Chevron took it over." DI 2186, at 1-2. His point at that time thus was that he could not be found in contempt for failing to transfer the shares because the company in question had passed out of existence or entirely into Chevron's hands.[6]

- May 8, 2018. Argument on contempt motion. Donziger asserted that Chevron "ha[s] my shares already" and that "[h]owever, I will be more than happy to do whatever the Court instructs, because I think this is a completely ridiculous issue."[7] Note that there was no mention of the by-law transfer restrictions or of his clients' supposed views.

Of course, as is clear from the Court's August 15, 2018 memorandum and order (DI 2072), Donziger was not happy to do as instructed. It became necessary to issue the order that is the subject of his present application for an extension.

The point, for present purposes, is that Donziger has asserted for over four years, albeit on and off, that there is a transfer restriction in the corporate documents that might have an effect on the required transfer of Amazonia shares[8] and suggested that his clients would not be happy with such a transfer. So he knew when Chevron moved on June 27, 2018 to compel him to execute unqualified transfers that the by-law restriction and his clients reported views could be issues, in his eyes. He had plenty of time to consult (and does not denying having consulted) other counsel in that connection in responding to Chevron's motion to compel execution of the transfer documents. Presumably his opposing papers said whatever he had to say on that subject. And the Court ruled on Chevron's motion. Donziger now is under a clear, definitive, and unequivocal obligation to execute certain documents. He may do so and thereby comply with the order or disobey the order

---

5 DI 1986-1, at ECF 3 of 3.

6 Information concerning the status of Amazonia is contained in DI 2006, at 7 n.15.

7 DI 2010, at 27, 28.

8 Whether it would have any effect at all is far from clear for a variety of reasons that need not be discussed here. *See, e.g.*, DI 2006, at 12 n.24.

and deal with any consequences.

3. Finally, the Court notes in passing there is no realistic chance that Donziger would be terminated if he complied with the Court's order. Donziger has been at pains recently to say that he has only one client at this point – the Amazon Defense Front ("ADF").[9] As the Court found at trial, the ADF is an entity formed by Donziger with his best friend in Ecuador, Luis Yanza, and perhaps others. Yanza is the executive director and is intimately involved with Donziger in this on-going saga. As far as the record discloses, they control the ADF.[10] In the circumstances, and bearing in mind Donziger's lack of credibility in the past and failure to submit affidavits or declarations substantiating his factual contentions here, I decline to credit his contention that the ADF actually would fire him if he complies with the Court's order,[11] not that it would alter the result if that really were likely.

*Conclusion*

Donziger's letter motion for an extension of time [DI 2075] is granted only to the following extent:

Donziger shall execute two sets of originals of the required forms on or before August 22, 2018. He shall send one set, which need not have notarized acknowledgments, to Chevron's lead counsel no later than August 22, 2018 by overnight courier. In order to facilitate obtaining notarized acknowledgments at a U.S. Embassy or consulate, the Court will extend his time within which to do that and to deliver fully executed documents to Chevron. Donziger shall acknowledge his signatures on the two documents constituting the second set of originals before a consular official at a U.S. Embassy or consulate no later than August 28, 2018. No later than August 29, 2018, he shall place that fully executed, acknowledged, and notarized set of originals in the hands of an

9 Tr., June 28, 2018 [DI 2062] at 50-51, 54-55.

10 *Chevron Corp. v. Donziger,* 974 F. Supp.2d 362, 391-92, 398-99 (S.D.N.Y. 2014), *aff'd,* 833 F.3d 74 (2d Cir. 2016), *cert. denied,* 137 S. Ct. 2268 (2017).

11 Donziger unsuccessfully attempted such a gambit prior to trial of this case, claiming – in an effort to avoid sanctions for non-production of requested documents located in Ecuador – that he had been removed from this position of overall supervision of the case and thus lacked the ability to access the documents. The Court rejected that contention after a hearing. *Chevron Corp. v. Donziger,* 296 F.R.D. 168, 210-12 (S.D.N.Y. 2013). It concluded that, "[i]n all the circumstances, it is more likely than not that Fajardo's email—an email by a long time subordinate purporting to displace his long time supervisor and 'cabeza'—reflected an effort to create a false impression in order to avoid the entry of or defeat the purpose of the February 11 [discovery] Order . . . ").

overnight courier for the speediest available delivery to Chevron's lead counsel.

SO ORDERED.

Dated: August 21, 2018

/s/ Lewis A. Kaplan

Lewis A. Kaplan
United States District Judge