**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
CHEVRON CORPORATION, :
:
Plaintiff, :
:
:
v. :                11 Civ. 0691 (LAK)
:
STEVEN DONZIGER, *et al.*, :
:
Defendants. :
:
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CHEVRON CORPORATION'S REPLY IN SUPPORT OF ITS SUPPLEMENTAL
BRIEF REGARDING THE CONTEMPT IMPLICATIONS OF DONZIGER'S
RETENTION AGREEMENTS AND OTHER AGREEMENTS AMONG ENTITIES
WITH INTEREST IN THE ECUADORIAN JUDGMENT**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

STERN, KILCULLEN & RUFOLO LLC
325 Columbia Take, Ste. 110
P.O. Box 992
Florham Park, New Jersey 07932-0992
Telephone: 973.535.1900
Facsimile: 973.535.9664

*Attorneys for Plaintiff Chevron Corporation*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ...................................................................................................... 2

I.    Because Donziger's "Declaration" Fails to Conform to 28 U.S.C. § 1746,
      The Court Should Disregard the Factual Assertions in His Brief ................... 2

II.   Donziger Does Not Dispute That the 2017 Retainer Agreement Undermines
      His Pretextual Explanation That He Was Offering the FDA's Interest to Elliott ........... 4

III.  Donziger Fails to Respond in Any Meaningful Way to Chevron's Argument
      That His Solicitation of Funders in Exchange for an Interest in His Shares,
      Was an Impermissible Attempt to Monetize the Judgment ........................................... 6

CONCLUSION ...................................................................................................... 8

i

## TABLE OF AUTHORITIES

Page

**Cases**

*Chevron Corp. v. Donziger*,
    833 F.3d 74 (2d Cir. 2016)............................................................................1

*Corona v. Quad Graphics Printing Corp.*,
    218 F. Supp. 3d 1068 (C.D. Cal. 2016) ......................................................3

*Flanagan v. Stone Commercial Spraying Co.*,
    No. CV 05-4527 ADS AKT, 2012 WL 4364506 (E.D.N.Y. July 20, 2012)............................4

*Sterling Fifth Assocs. v. Carpentile Corp.*,
    No. 03 CIV.6569(HB), 2003 WL 22227960 (S.D.N.Y. Sept. 26, 2003) ..................................3

**Statutes**

28 U.S.C. § 1746.....................................................................................................2, 3

## PRELIMINARY STATEMENT

Donziger's response to Chevron's supplemental brief in support of its contempt motion misrepresents the facts and reflects his open defiance of this Court's authority.  It is silent on key issues raised in Chevron's supplemental brief, thereby effectively conceding critical points that confirm Donziger has violated Paragraph 5 of the RICO Judgment.  And while continuing to make factual allegations, Donziger once again fails to submit any sufficient affidavit or declaration substantiating them—also in violation of this Court's orders.  *See* Dkt. 2052; Dkt. 2064.  Instead, Donziger has tacked on to the end of his brief a conclusory assertion stating that *all* of the various factual assertions in the brief are "true and correct," at least so far as Donziger's "present recollection and understanding" goes.  Dkt. 2068 at 8.  This is insufficient.  Thus, as it previously decided, this Court should "not consider any of the factual assertions" in Donziger's latest response.  Dkt. 2064 at 2.

Even if, however, the Court were to overlook Donziger's procedural violation, and consider his response in full, that should have no impact on the Court's resolution of this contempt motion.  Donziger dwells on irrelevancies having nothing to do with the merits of the contempt motion.[1]  Donziger fails to respond in any meaningful way to Chevron's argument that Donziger's proposal to Elliott carried the dilution of his shares in the judgment *in exchange for cash in his own pocket*.  Indeed, his only response to that argument is to mischaracterize it and mock his distorted version of the argument.  Finally, Donziger fails to rebut the argument that he

---

[1] Donziger begins his response by referring to the recently issued Ecuadorian appellate decision, but that decision has nothing to do with Chevron's contempt motion.  Moreover, Donziger's continued focus on the Ecuadorian appellate process is foreclosed under the law of the case, as the Second Circuit has already held that nothing about the Ecuadorian appellate process impacts the RICO Judgment.  *See Chevron Corp. v. Donziger*, 833 F.3d 74, 124–26 (2d Cir. 2016).

has complete control over all judgment-related financing, and that the record shows he has en-

gaged in a pattern of using funders' money—including Elliott's money if it had agreed to pro-

vide funding—to enrich himself and effectively monetize his interest in the Ecuadorian judg-

ment.

In short, Donziger's meager response confirms that he violated Paragraph 5 of the RICO

Judgment and that the Court should hold him in contempt.[2]

## ARGUMENT

I.   **Because Donziger's "Declaration" Fails to Conform to 28 U.S.C. § 1746, The Court Should Disregard the Factual Assertions in His Brief**

This Court ordered Donziger to file an affidavit or declaration to support any factual as-

sertions in his response brief before it was filed (Dkt. 2052), and although Donziger ignored that

order, the Court gave Donziger another chance to comply (Dkt. 2064).  But Donziger flouts the

Court's order and admonition, as he has still failed to include a proper declaration in his re-

sponse.  As such, the Court should not consider any of the factual assertions in his brief.

On July 10, 2018, this Court granted Chevron's letter motion to file further briefing on

the issue of the 2017 retainer agreement, and required that "[a]ny further evidentiary material

shall be submitted in the form of double spaced affidavits or declarations to which appropriate

exhibits may be attached."  Dkt. 2051.  The Court reiterated this requirement in an order issued

on August 7, 2018, when it held:

> As far as Donziger is concerned, this is not the first time that he has disregarded
> specific admonitions of the Court to conform to local rules, orders, and otherwise

---

[2] Late last week Katie Sullivan produced to Chevron over a dozen funding agreements that post-date the RICO Judgment confirming Donziger's ongoing profiteering based on the fraudulent judgment.  As a result of this and other recent discovery, Chevron intends to file a broader contempt motion soon that will address these funding agreements, as well as Donziger's other violations of the RICO Judgment in accordance with the Court's August 7, 2018 order (Dkt. 2064).

to submit papers in proper form. In this instance, he specifically was told that "[a]ny further evidentiary material shall be submitted in the form of double spaced affidavits or declarations to which appropriate exhibits may be attached" and that "[t]he Court will reject any papers that do not conform to these requirements." Accordingly, the Court will not consider any of the factual assertions in his most recent filing. Should he wish to file an affidavit or declaration, he may do so provided it is filed on or before August 14, 2018.

Dkt. 2064.

Donziger's amended response fails to comply with the Court's directions. Instead, Donziger filed a nearly identical brief and simply added a few lines of language to give the appearance that his response contains a declaration that supports his factual assertions. But this purported "declaration" falls far short of the statutory requirements for declarations in federal courts under 28 U.S.C. § 1746. Section 1746 states that unsworn declarations under penalty of perjury, if executed in the United States, must state "in substantially the following form … 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)'." 28 U.S.C. § 1746(2). But Donziger's language is not "in substantially" the same form as the statute requires. Instead of declaring that "the foregoing is true and correct," Donziger inserts caveats and limitations into his statement, declaring only that the "*statements of facts* are true and correct *to the best of my present recollection and understanding*." Dkt. 2068 at 8 (emphases added). This language fails to meet the requirements for a Section 1746 declaration.

Several courts have held that the "true and correct" language is a key requirement of a declaration under Section 1746 and have disregarded such deficient declarations for that very reason. *See, e.g.*, *Sterling Fifth Assocs. v. Carpentile Corp.*, No. 03 CIV.6569(HB), 2003 WL 22227960, at *5 (S.D.N.Y. Sept. 26, 2003) ("Section 1746 permits an unsworn declaration made under penalty of perjury to substitute for a sworn affidavit, but only if the claimant states that its contents are true and correct."); *Corona v. Quad Graphics Printing Corp.*, 218 F. Supp. 3d 1068,

3

1071 (C.D. Cal. 2016) ("Substantial compliance requires the declarant to make two assertions in the declaration: (1) that the statements in the declaration were made 'under penalty of perjury,' and (2) 'that the contents were true and correct . . . . The Gallagher Declaration fails to make either assertion, and thus will be disregarded.'"); *Flanagan v. Stone Commercial Spraying Co.*, No. CV 05-4527 ADS AKT, 2012 WL 4364506, at *4 (E.D.N.Y. July 20, 2012), report and recommendation adopted, No. 05-CV-4527 ADS AKT, 2012 WL 4364563 (E.D.N.Y. Sept. 24, 2012) (finding affidavit unacceptable because it did not contain "true and correct" language).

But Donziger attested only that his statements "are true and correct *to the best of my present recollection and understanding*." Dkt. 2068 at 8 (emphasis added). That is not the attestation that Section 1746 requires, and is reason enough to reject his factual assertions. But there is more: Donziger also inserts the phrase "statement of facts" into the declaration, rendering the declaration inoperable as it is impossible to parse out to which language Donziger refers by the phrase "statement of facts." The factual assertions in Donziger's brief are intertwined with legal arguments and opinion and cannot be separated. As a result, Donziger's "declaration" prevents Chevron from knowing to which specific factual statements he is declaring and frustrates Chevron's ability to interpose objections. Indeed, that is probably its intention.

Because Donziger has failed to comply with the Court's orders, Donziger's response should be rejected and any factual allegations therein disregarded.

## II.      Donziger Does Not Dispute That the 2017 Retainer Agreement Undermines His Pretextual Explanation That He Was Offering the FDA's Interest to Elliott

Donziger's argument that he can sell his client's interest in the Judgment (Dkt. 1986 at 6) is wrong as a matter of law, as Chevron has explained in prior filings. *See* Dkt. 2057 at 8. But

even if his legal argument were correct, the 2017 retainer agreement undermines Donziger's position that he was attempting to offer only the FDA's interest in the Ecuadorian judgment to Elliott.

The 2017 retainer agreement states that the FDA is only entitled to 10% of the judgment's environmental award. *See* Dkt. 2057 at 8–9.  Thus, even if that interest could be sold, it was capped at 10%.  As such, given that Donziger has not disputed that 15–20% of the judgment has already been committed to third parties (a figure in excess of the FDA's share per the 2017 retainer agreement), Donziger's explanation that he was offering Elliott the FDA's interest in the judgment falls apart.  As Chevron noted in its opening brief: "[B]y the time Donziger solicited funds from Elliott, the FDA appears to have already sold well more than its purported 10% reward."  Dkt. 2057 at 9.  Donziger's claims he was selling the FDA's interest must fail as there was nothing left to sell.  The only reasonable explanation of what Donziger was selling to Elliott was a piece of his own 6.3% interest in the Ecuadorian judgment, which was specifically mentioned at the Elliott meeting.  Dkt. 2058-10 at 21:12-14 (Elliott's Lee Grinberg's testimony from June 28, 2018 hearing, stating that Donziger mentioned his personal 6.3% interest during the Elliott meeting); Dkt. 2058-11 (Lee Grinberg's handwritten notes from Elliott meeting reflecting discussion of Donziger's personal 6.3% interest); Dkt. 2058-12 at 3 (Katie Sullivan's handwritten notes from Elliott meeting reflecting discussion of Donziger's personal 6.3% interest).

Donziger's response ignores this argument.  Indeed, Donziger does not provide any explanation or evidence to support his claim that he was offering the FDA's interest and not his own.  Instead, Donziger makes the unsupported assertion that that the 2017 retainer agreement had "nothing to do with the Elliott meeting" and that "[a]s other materials Chevron relies on demonstrate . . . I and the others recognized [the Elliott meeting] as an early stage meeting that

could go either way," but not only does Donziger provide no actual evidence to support these statements, his rationale does not in any event rebut Chevron's argument that the FDA had a 10% award and that Donziger's overtures to Elliott went above that 10%. The only reasonable conclusion, as Chevron noted in its supplemental brief, is that the 2017 retainer agreement was prepared because the meeting with Elliott—at which Donziger hoped to obtain more funds—was imminent and that Donziger planned to offer his own shares to Elliott. Dkt. 2057 at 2.

### III.    Donziger Fails to Respond in Any Meaningful Way to Chevron's Argument That His Solicitation of Funders in Exchange for an Interest in His Shares Was an Impermissible Attempt to Monetize the Judgment

As Chevron noted in its brief, "Donziger's meeting with Elliot was an attempt to monetize his own interest by trading Donziger's rights to judgment recovery and priority of payment in exchange for cash in hand." Dkt. 2057 at 10. Donziger makes no meaningful attempt to respond to this argument. Instead, he focuses on the Amazonia and Intercreditor Agreements and the shares reflected therein—by stating in conclusory fashion and without any specific support—that those documents "were drafted by investors who have long since relinquished and abandoned their interest in the case" and that "those agreements are obsolete, defunct, and void." Dkt. 2068 at 5. Even taking Donziger's unsupported assertions as true, his 2011 Retainer agreement alone would result in dilution of Donziger's shares in exchange for cash if he had been successful in arranging a new funding agreement with Elliott.[3] Further, Donziger does not dispute

---

[3] Focusing on the Amazonia Articles of Association, Donziger contends the Amazonia documents do not "authorize a recovery to investors of 54.5455% of the entirety of a recovery." Dkt. 2068 at 5. Donziger ignores that the Shareholder Agreement does exactly that. *See, e.g.*, Dkt. 2058-13 ¶ 4(a)(ii) (requiring each party to the Shareholder Agreement do everything possible "to ensure that . . . [Amazonia] receives all proceeds of the award"); ¶ 4(a)(ii) (requiring each party to do everything possible "to ensure that . . . the Available Proceeds comprise 54.5455% of the Total Proceeds"). In any event, Donziger misses the critical point: that under the Amazonia documents, a successful solicitation of funds from Elliott would have resulted in a dilution of Donziger's shares in exchange for cash.

that he has previously received money obtained from funders.  If he had been successful with El-liott, that meeting too would have resulted in Donziger further monetizing his interest.

Donziger's only other response to this argument is his mocking rhetoric:

What a joke. Hundreds of pages of briefing, exhibits, and an expert report all serve to establish the "key" fact that if my efforts to raise funds for my clients had been successful, the extent of my own contingent recovery in the case would be somewhat *diminished*.  This somehow incriminates me?

Dkt. 2068 at 2 (emphasis in original).  But Donziger's flippant statement mischaracterizes Chev-ron's argument.  The point is not that dilution of his shares results in monetization of the judg-ment, but, rather, that dilution *resulting from his obtaining funds* is monetization of the judg-ment.  Donziger thus misses the point entirely.

Donziger also claims that his clients are merely paying him a permissible retainer, but the Court was clear that Paragraph 5 is intended to prevent him from "benefitting personally, at Chevron's expense, from property traceable to that fraudulent judgment."  The dilution of his own shares in exchange for cash, and the continued solicitation of funders through this vehicle provide Donziger a personal benefit in violation of Paragraph 5, regardless of whether he called the funds a recovery or a retainer.  This exchange of cash—i.e., this benefit to Donziger—consti-tutes monetization of the Ecuadorian judgment.  Donziger is not being reimbursed for the work he is doing; he is *enriching* himself in violation of Paragraph 5.

Finally, even if Donziger were correct that his funding is not coming from funds obtained in exchange for his interest in the judgment, Donziger provides no evidence to support his con-tention that he is entitled to the retainer he claims to have received or to the "expenses" he has been paid.  Despite claiming to have a right to such monies, Donziger has never produced time-sheets, detailed invoices, or even general descriptions of work that would amount to sixty-hour weeks, as he claims. Dkt. 2068 at 7 n.4.  He does not write the briefs or make court appearances

in the Canadian proceeding.  It is difficult to understand what would keep Donziger so busy that he would be entitled to the amount of money he has received.

Donziger, however, never denies the essential point:  he is taking hundreds of thousands of dollars that flow directly from the Ecuadorian judgment.

## CONCLUSION

For the foregoing reasons and those articulated at the June 28, 2018 hearing and in Chevron's prior submissions (Dkt. 2057; Dkt. 1966 at 5–9; 14–16; Dkt. 1987 at 1–3, 5–8), Chevron respectfully requests that this Court hold Donziger in contempt of the Court's RICO Judgment (Dkt. 1875) and enter coercive sanctions to prevent further contempt of that Judgment.

Dated:  August 21, 2018

New York, New York

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

/s/ Randy M. Mastro

Randy M. Mastro, Esq.
Andrea E. Neuman, Esq.
Anne M. Champion, Esq.
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile:  212.351.4035
rmastro@gibsondunn.com

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile:  213.229.7520

STERN, KILCULLEN & RUFOLO LLC
Herbert J. Stern, Esq.
Joel M. Silverstein, Esq.
325 Columbia Turnpike
Florham Park, New Jersey 07932
Telephone:  973.535.1900
Facsimile: 973.535.9664

*Attorneys for Chevron Corporation*