# EXHIBIT 12

| | |
|---|---|
| **From:** | John van Merkensteijn <jhvm@rossteq.com> |
| **Sent:** | Saturday, October 22, 2016 3:24 PM |
| **To:** | 'John van Merkensteijn' |
| **Subject:** | FW: Deal terms attached |
| **Attachments:** | INVESTOR.Summary.July2016.docx |
| **Categories:** | KF2 |

John H. van Merkensteijn lll
Managing Director
Rossi Technologies LLC
60 Riverside Boulevard
Suite 2101
New York, NY. 10069
Phone (212) 769-4055

jhvm@rossteq.com

**From:** Steven Donziger
**Date:** Sunday, July 10, 2016 at 6:58 PM
**To:** Bill Twist
**Cc:** "John H. van Merkensteijn III"
**Subject:** Re: Deal terms attached
**Resent-From:**

There are no priority shares. Shares are a percentage of the total claim owed which is now a little over $11b with statutory interest in Canada. Expenses come off the top upon recovery. There are approximately $10 million in expenses plus some outstanding fees we owe various law firms; this number could rise modestly in coming years as most costs at behind us. On a $10b recovery, the amount of funds available to pay expenses, investors, and lawyers will be approximately $1.5b and could be as high as $3b depending on how many shares we issue to sustain the case going forward.

I can explain the economics in more detail on Tuesday or feel free to follow up with questions in the meantime.

The larger point is that absent some unforseen event, there will be plenty of funds to pay investors should there be a recovery. Payments to investors are also securitized by a commitment from our Canadian lawyer (who will be collecting the funds in Canada and holding them in escrow until distributed) in addition to the authorized client representatives. Several sophisticated individuals have performed due diligence and invested, including two just in the last few weeks.

I am also attaching an updated investor summary (dated July 2016) that includes the recent U.S. Supreme Court decision restricting the use of the RICO statute. Please use this summary, rather than the one I sent you yesterday.

Again, please reach out with any more questions.

Thanks!

Best, Steven

---

**From:** Bill Twist
**Sent:** Sunday, July 10, 2016 6:36:26 PM
**To:** Steven Donziger
**Cc:** John H. van Merkensteijn III
**Subject:** Fwd: Deal terms attached

Steven,
Are there any priority shares in the mix or are everyone's shares treated the same? The shares are expressed as a percentage of what? — total recovery less debts and expenses???
Bill


> Begin forwarded message:
>
> **From:** Steven Donziger <sdonziger@donzigerandassociates.com>
> **Subject: Deal terms attached**
> **Date:** July 10, 2016 at 3:25:31 PM PDT
> **To:** "btwist@pachamama.org" <btwist@pachamama.org>
>
> Confirmed for Tuesday at 1. Thanks for setting it up.
>
> Also, here is the analysis of the U.S. Supreme Court decision on the RICO matter (going to incorporate it into the investment summary I sent you):
>
> http://www.csrwire.com/press_releases/39075-U-S-Supreme-Court-Deals-Blow-to-Chevron-on-Ecuador-Pollution-Case-In-Latest-RICO-Decision
>
> ### U.S. Supreme Court Deals Blow to Chevron on Ecuador ...
>
> www.csrwire.com
>
> NEW YORK , Jun. 27 /CSRwire/ - Chevron last week suffered a major setback when a U.S. Supreme Court decision s

**CONFIDENTIAL MEMORANDUM**

1. <u>INVESTMENT OPPORTUNITY</u>.

This is an opportunity to support a landmark case for justice for the thousands of people in Ecuador who have suffered as a result of the Chevron Corporation's deliberate actions in contaminating the Ecuadoran rainforest.

As detailed below, the Claimants hold an enforceable judgment from Ecuador's highest court in an amount in excess of $9,500,000,000 against Chevron (the "<u>Judgment</u>").  Because of statutory interest, that judgment has grown to roughly $10,500,000,000 in Canada.  Further funds are currently being sought by the Claimants to, among other things, finance an international enforcement strategy in Canada to ensure that Chevron meets its legal obligations under the Judgment.  In exchange for providing funding in support of the Claim, Investors will receive the right to an agreed upon share of the proceeds received by the Claimants in respect of the Claim. Further details are available for qualifying investors.

The Claimants have put together a world-class team to manage the enforcement of the Judgment. In Canada, they are represented by Alan Lenczner of Lenczner Slaght in Toronto.  In Brasil, they are represented by Sergio Bermudes Advogados en Rio de Janiero. Other best of breed law firms and service-providers will be engaged in other jurisdictions, as appropriate. International enforcement is necessary because Chevron, in anticipation of losing the Ecuador case, stripped its remaining assets from the country during the proceeding and now refuses to pay the judgment.

**Copies of significant court decisions and media coverage can be accessed via the links at the end of this document.  Chevron's relevant court filings can be found at www.Chevron.com or via the contact below.**

2. <u>BACKGROUND</u>.

From 1964 to 1992, Chevron[1] built and operated more than 350 well sites and oil production facilities in an approximately 1,500 square mile concession area in Ecuador's rainforest.  This concession area is home to five indigenous groups and approximately 80 farmer communities. Throughout the course of its operations in Ecuador, Chevron committed multiple acts of environmental contamination that left a legacy of environmental contamination and degradation from which the local population continues to suffer today. The amount of oil and contaminated water discharged into the Amazonian rainforest by Chevron is several orders of magnitude greater than the BP Deepwater Horizon spill. Moreover, the trial court found that Chevron's contamination was intentional, not accidental, and resulted from, among other things, Chevron's grossly substandard practices carried out over decades of its drilling operations in Ecuador.  The litigation was held in Ecuador at Chevron's request after the company agreed to accept jurisdiction there and to abide by any judgment, subject only to enforcement defenses available under New York state law.

The Ecuadorian trial court and the appellate court (in its affirmation such Judgment) found that, during its operations of this concession, Chevron deliberately:

o   dumped many billion of gallons of production water (containing BTEX, TPH and polycyclic hydrocarbons) directly into the Ecuadoran rainforest floor and the nearby rivers and streams used by residents for drinking and bathing;

o   gouged more than 900 unlined open waste pits out of the jungle floor – pits that to

---

[1] Texaco Petroleum Company was a wholly-owned subsidiary of Texaco, Inc. at all times during its operations in Ecuador until Chevron and Texaco, Inc. merged in 2001.

  this day continue to leach toxic waste into soils, groundwater and streams;

- burned hundreds of millions of cubic feet of gas and waste oil into the atmosphere, poisoning the air and creating "black rain" that inundated the area during tropical thunderstorms; and

- violated then-current U.S. industry standards, Ecuadoran environmental law, Chevron's own contract with the Ecuadoran government (which prohibited Chevron from using production methods that contaminated the environment) and international law.

Even Chevron's own internal audits of the environmental impacts found extensive contamination at Chevron's oil production facilities. The Ecuadorian trial court also took note of evidence that cancer rates in the concession area where Chevron operated are significantly higher than the norm, according to independent health evaluations. Several indigenous groups have seen their cultures decimated, largely because of Chevron's intentional contamination.

3. <u>JUDGMENT AGAINST CHEVRON IN ECUADOR.</u>

On February 14, 2011, the Lago Agrio trial court entered the Judgment against Chevron, which was subsequently affirmed by the Sucumbíos intermediate appellate court on January 3, 2012. The Judgment and affirmation collectively awarded the following amounts to or for the benefit of the Claimants:

- USD $8,646,000,000.00 in basic damages (the "<u>Remediation Award</u>");

- an additional USD $8,646,000,000.00 in punitive damages (the "<u>Punitive Damages Award</u>"); and

- an additional amount equal to ten percent (10%) of the Remediation Award (the "<u>10% Award</u>")

On January 3, 2012, the intermediate appellate court issued its order affirming the Judgment in its entirety. On November 13, 2013, Ecuador's National Court of Justice unanimously affirmed the liability portion of the judgment, but removed the punitive damages award. Chevron has one further and limited appeal pending before Ecuador's Constitutional Court that does not stop the enforceability of the Judgment <u>now</u>, since Chevron failed to request for and post a bond – the only way that such enforceability can be suspended.

4. <u>ENFORCEMENT OF ECUADOR JUDGMENT IN CANADA.</u>

On May 30, 2012, the Ecuadorian claimants filed an action to seize Chevron's assets in Canada (estimated to be worth roughly $15 billion) to satisfy the entirety of the Ecuador judgment. Chevron tried to block the action, largely by claiming the Ecuadorians could not establish jurisdiction given that Chevron's assets in Canada were held by a wholly-owned subsidiary. On December 17, 2013, the Ontario Court of Appeal unanimously rejected Chevron's arguments and ruled in a 3-0 decision that the villagers could proceed with their enforcement action. Chevron appealed to Canada's Supreme Court. On September 4, 2015, Canada's Supreme Court ruled unanimously in favor of the Ecuadorians in a 7-0 decision. In all, the Ecuadorians have swept each of the ten appellate judges in Canada to rule on the jurisdictional aspects of the case; the same holds for all eight Ecuadorian appellate judges to rule on the merits of the case. The villagers now have an 18-0 record in Ecuador and Canada among appellate judges.

Armed with the unanimous Supreme Court ruling on jurisdiction, the Ecuadorians forced Chevron in October 2015 to file a written defense in the trial court in the Ontario Superior Court of Justice in Toronto. The villagers subsequently filed a motion to strike Chevron's defenses to

2

the enforcement action on the grounds they were already litigated and resolved in the company's preferred forum of Ecuador, where the underlying trial was held. Chevron filed a motion again raising its largely repetitive jurisdictional arguments. A hearing on the motions is scheduled for September 12, 2016. If the Canada trial court rules in favor of the villagers and strikes most or all of Chevron's defenses, the enforcement action will be scaled back considerably and the time frame to a final resolution likely will accelerate.

If there is no settlement and the villagers prevail in their recognition action in Canada, Chevron will have a right to appeal the decision the Ontario Court of Appeal and ultimately to Canada's Supreme Court. Interest on the Ecuadorian judgment in Canada is running at 3% per annum, or approximately $275 million annually.

5.   RELATED LITIGATION – U.S.

On February 1, 2011, Chevron filed a civil action in the SDNY against the Claimants, certain of Ecuadoran and U.S. counsel, and other advisors to the Claimants. In its complaint, Chevron alleged, among other things, that the defendants named in this civil action violated the Racketeer Influenced and Corrupt Organizations Act (RICO), by committing what Chevron tried to characterize as "fraud" and "extortion" (e.g. "fraudulently" pursuing claims the defendants "knew" to be meritless and "extorting" Chevron though public pressure into paying a settlement). Count 9 of Chevron's RICO complaint requested a declaratory judgment that any judgment from the Ecuadorian trial court be rendered unenforceable because of inherent fraud in the Ecuadorian judicial system. In February 2011, Judge Kaplan of the Southern District of New York, without any supporting precedent, granted Chevron's request for a preliminary injunction (the "Preliminary Injunction") that purported to bar enforcement of the Judgment anywhere in the world, pending the outcome of the RICO proceeding. Information later emerged that Judge Kaplan held undisclosed investments in Chevron while making this and other rulings in the case.

The defendants appealed and on September 19, 2011 – the first day after oral argument -- the Second Circuit issued a summary order vacating the Preliminary Injunction in its entirety. On January 26, 2012, the Second Circuit issued its written opinion dismissing the Preliminary Injunction and the claim for declaratory relief under Count 9 in its entirety on grounds that a court's power to determine the enforceability of a foreign judgment could only be exercised when a plaintiff-creditor had sought enforcement under its recognition laws and not as an affirmative lever to bar recognition actions in its courts and, much less, around the world. Notably, the Second Circuit ruling stated that the "[Claimants] hold a judgment from an Ecuadorian court. They may seek to enforce that judgment in any country in the world where Chevron has assets." In addition, it should be noted that the Ecuadorian appellate court specifically confirmed that it had considered and rejected all of Chevron's claims regarding fraud by the Claimants.

After the Preliminary Injunction was reversed on appeal, Judge Kaplan allowed Chevron to continue to pursue its civil RICO claims. During a trial in late 2013, Judge Kaplan openly disparaged the Ecuadorians and their counsel, denied the villagers and their counsel a jury, and refused to consider any of the voluminous evidence of environmental contamination relied on by Ecuador's courts to find Chevron liable. He also allowed Chevron to pay $2 million to a fact witness who claimed, without any credible corroborating evidence and after 53 days of coaching by Chevron's lawyers, that certain of the defendants offered a bribe to the Ecuador trial judge in exchange for ghostwriting a favorable judgment. (The allegations already had been rejected by Ecuador's Supreme Court.) On March 4, 2014, Judge Kaplan found the defendants liable for the RICO violations and imposed an order prohibiting them from enforcing their judgment in the United States or collecting it anywhere in the world. That decision is currently under appeal to the same court that previously reversed Judge Kaplan's preliminary injunction ruling. The Kaplan decision has no dispositive impact on any enforcement action in Canada or other jurisdictions, as affirmed by the actions of the appellate

3

courts (including the country's Supreme Court) as explained above.

Subsequent to the RICO decision, and while the appeal was pending, Chevron suffered two significant setbacks that we believe have caused the factual predicate of its claims to unravel. First, Chevron's main witness in the RICO case (Alberto Guerra) to whom it had paid $2 million recanted key portions of his testimony related to the bribery allegation and admitted he had lied on the stand. Second, a computer forensic analysis ordered by a separate international arbitration panel hearing a dispute between Chevron and Ecuador's government (described below) concluded that the trial court judgment had in fact been authored by the trial judge, and had not been ghostwritten as Chevron had alleged and Judge Kaplan had concluded. In fact, this analysis found that the trial judge opened and saved a draft document on his office computer that became the judgment at least 480 times. These developments have been brought to the attention of the appellate court hearing the appeal of Judge Kaplan's decision.

The U.S. Supreme Court also dealt a severe blow to Chevron's prospects in the RICO matter when it ruled in June 2016 to severely restrict the application of the law. This is another factor that we believe has a negative impact on Chevron's prospects in this aspect of the litigation. (See here for background on this court decision.)

6.      RELATED LITIGATION – INTERNATIONAL ARBITRATION.

In September 2009, Chevron sued the Republic of Ecuador ("ROE") under Ecuador's Bilateral Investment Treaty (BIT) with the United States, which permits private, commercial arbitration between investors and host country governments. Chevron's claims revolve primarily around a series of settlement and release agreements with Ecuador, which Chevron argues relieve it from liability for environmental impact arising out of its activities in Ecuador, including liability for any judgment rendered in the Lago Agrio case. Alternatively, Chevron asserts that the releases require the ROE to indemnify it for any sums collected against Chevron in any Lago Agrio judgment.

During the BIT proceedings, the arbitration panel has issued "interim orders" and "interim awards" purporting to order the ROE to use all measures necessary to enjoin all enforcement of any judgment against Chevron in the Lago Agrio case. The ROE has argued that Ecuadoran constitutional separation of powers principles prevent the executive branch of government from interfering in any way with the judicial process, in particular on behalf of any particular litigant, and that, accordingly, the ROE has very few measures "at its disposal." Accordingly, the ROE has taken the position that it has complied with the interim orders and award, while simultaneously arguing that such ruling are inappropriate, unnecessary and beyond the scope of the BIT arbitrators' power and, as such, should be vacated.

In addition, the Ecuadorian appellate court has ruled on more than one occoasion that neither it nor any Ecuadoran court can give effect to any act by the BIT tribunal or by any international tribunal that would have the effect of undermining fundamental human rights guaranteed by Ecuador's Constitution and by international law. Ecuador's courts also have noted that the Lago Agrio case involved citizens exercising their fundamental rights to judicial access and protection, and that any pro-investment principle of commercial rights could not trump those rights and was inapplicable in the context of this case.

The Claimants agree with the ROE and more broadly assert that the BIT proceedings themselves have no application to their claims against Chevron and that any orders emanating from the BIT proceedings will have no binding effect on Claimants or their right to enforcement of the Judgment in or outside Ecuador. The Claimants are not allowed under the BIT system to participate in the state-investor private arbitration, and the ROE is not a party to the Lago Agrio litigation. A recent legal brief on the arbitration is here and an article on this issue is here.

4

## KEY LEGAL DECISIONS, LEGAL BRIEFS

Ecuador Supreme Court decision affirming judgment against Chevron:
http://chevrontoxico.com/assets/docs/2013-11-12-supreme-court-ecuador-decision-english.pdf

Canada Supreme Court decision affirming right to enforcement:
http://chevrontoxico.com/assets/docs/2015-09-04-chevron-v-yaiguaje-canada-decision.pdf

Ontario Court of Appeal decision affirming right to enforcement:
http://stevendonziger.com/wp-content/uploads/2013/12/Ontario-appeals-reversal-121713.pdf

Motion by Villagers to Strike Chevron Defenses in Canada:
http://chevrontoxico.com/assets/docs/2016-01-20-factum-of-the-respondents-plaintiffs.pdf

Arbitration proceeding – key legal brief of Ecuador government:
http://chevrontoxico.com/assets/docs/2015-03-17-roe-3rd-supp-rejoinder.pdf

Appeal of Judge Kaplan's Decision in RICO Case by Counsel:
http://guptawessler.com/wp-content/uploads/2012/05/CA2-brief-corrections-RC4.pdf

Appeal of RICO decision by Ecuadorian villagers:
http://guptawessler.com/wp-content/uploads/2014/01/LAP-Brief.pdf


## KEY MEDIA ON LITIGATION

Further general background, videos and materials related to the case can be found at www.chevrontoxico.com and in numerous media articles, including:

*60 Minutes* segment, 2009: https://www.youtube.com/watch?v=UGG1nIwxNhs

*Vanity Fair*: http://www.vanityfair.com/news/2007/05/texaco200705

Video of Chevron defrauding Ecuador court:
http://amazonwatch.org/news/2015/0408-the-chevron-tapes

New York Times on Canada enforcement action:
http://www.nytimes.com/2015/09/05/business/international/court-says-chevron-can-be-pursued-in-canada-over-ecuadorean-damage.html

Chevron Faces Major Difficulties in Canada:
http://www.csrwire.com/press_releases/38268-Chevron-Facing-Major-New-Difficulties-In-Ecuador-Pollution-Case-After-Losing-Before-Canada-Supreme-Court

Chevron Faces Potential "Litigation Catastrophe" in 2016:
http://www.csrwire.com/press_releases/38590-In-2016-Chevron-Faces-Potential-Litigation-Catastrophe-Over-Ecuador-Pollution-Liability

Profile of Alan Lenczner, Canadian counsel:
http://business.financialpost.com/legal-post/meet-alan-lenczner-the-man-fighting-for-ecuadorean-villagers-in-their-canadian-case-against-chevron

##

JVM 002167

July 2016
INQUIRIES:
Steven Donziger and Joshua Rizack
sdonziger@donzigerandassociates.com/9175662526
jrizack@therisinggroup.com/203-246-2639

6

JVM 002168