# EXHIBIT 22

PMW Draft
December 6, 2010

<u>MASTER AGREEMENT</u>

THIS MASTER AGREEMENT (as from time to time may be amended in accordance with the terms hereof, this "<u>Agreement</u>"), dated as of December ___, 2010, is made between and among (i) each of the individual plaintiffs in the matter *Maria Aguinda y Otros v. Chevron Corporation* (as listed on the attached <u>Exhibit A</u>, and together with their respective successors and assigns, the "<u>Plaintiffs</u>"), by Pablo Estenio Fajardo Mendoza, Esq., as lead counsel for and Ecuadorian legal representative of the Plaintiffs, (ii) EL FRENTE DE DEFENSA DE LA AMAZONIA (as listed on the attached <u>Exhibit A</u>, and together with its successors and assigns, the "<u>Amazon Defense Front</u>"), duly represented by Ermel Chavez Parra, who is authorized by the Board of Directors and as beneficiary of any judicial or settlement award granted to the Plaintiffs, (iii) ASAMBLEA DE AFECTADOS POR TEXACO (as listed on the attached <u>Exhibit A</u>, and together with its successors and assigns, the "<u>Assembly of Communities Affected by Texaco</u>" and, collectively with the Amazon Defense Front, the "<u>Plaintiffs' Coordinators</u>") by Luis Yanza under that certain Special and Judicial Power of Attorney dated March 1, 2010 (the "<u>POA</u>") granted by Ermel Gabriel Chávez Parra, Ernesto Germán Maniguaje Piaguaje, Ángel Justino Piaguage Lucitante, Toribio Aguinda Lucitante and Pedro Bienvenido Galarza Bravo, (iv) DONZIGER & ASSOCIATES, PLLC, a New York professional limited liability company having its main office at 245 W. 104th St., #7D, New York, New York 10025 ("<u>Donziger</u>"), (v) MOTLEY RICE LLC, a South Carolina limited liability company having its main office at 28 Bridgeside Boulevard, Mt. Pleasant, South Carolina 29464 ("<u>Motley Rice</u>"), (vi) PATTON BOGGS LLP, a District of Columbia limited liability partnership having offices at 1185 Avenue of the Americas, 30th Floor, New York, New York 10036 and at One Riverfront Plaza, 6th Floor, 1037 Raymond Boulevard, Newark, New Jersey 07102 ("<u>Patton Boggs</u>"), (vii) EMERY, CELLI, BRINCKERHOFF & ABADY LLP, a New York limited liability partnership having offices at 75 Rockefeller Plaza, 20th Floor, New York, NY 10019 ("<u>ECBA</u>"), (viii) PABLO ESTENIO FAJARDO MENDOZA, ESQ., an individual residing in Ecuador ("<u>Fajardo</u>"), and (ix) each Person who hereafter executes an Accession Agreement.  For purposes of this Agreement, the Plaintiffs, the Plaintiffs' Coordinators, Donziger, Motley Rice, Patton Boggs, ECBA, Fajardo and each Person who hereafter executes an Accession Agreement hereinafter may be referred to individually as a "<u>Party</u>" and collectively as the "<u>Parties</u>".  Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in <u>Section 1</u>.

<u>WITNESSETH</u>:

WHEREAS, the case *Maria Aguinda y Otros v. Chevron Corporation* [No. 002-2003] is pending in the Provincial Court of Justice of Sucumbios, Ecuador to recover clean-up costs and other damages and relief from defendant Chevron Corporation (a/k/a Texaco; ChevronTexaco; Chevron) for Texaco's role as drilling operator in Ecuador and/or consortium partner; and

WHEREAS, a number of actions pursuant to 28 U.S.C. § 1782 have been filed by Chevron and Chevron lawyers (including, without limitation, Rodrigo Perez Pallares and



DEPOSITION EXHIBIT
**Donziger 5049**

PLAINTIFF'S EXHIBIT
**556**
11 Civ. 0691 (LAK)

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER

WOODS00045342

Ricardo Reis Veiga) in various United States District Courts against various of the Plaintiffs' advisors, including several of their former and current lawyers; and

WHEREAS, additional related litigation and associated activities is occurring and is anticipated, including, without limitation, initiating actions pursuant to 28 U.S.C. § 1782, and as necessary to enforce a judgment against Chevron or its subsidiaries in Ecuador, the United States and/or other countries and to pursue or defend any appeals therefrom and conducting possible settlement negotiations with Chevron and its representatives (all of the above, collectively, the "Litigation"); and

WHEREAS, the Plaintiffs are represented by Pablo Estenio Fajardo Mendoza, Steven R. Donziger, Esq. (the "Plaintiffs' U.S. Representative") (the foregoing, collectively with any successors thereto, the "Plaintiffs' Representatives"), and the Active Lawyers; and

WHEREAS, the Plaintiffs have engaged the Active Lawyers to pursue and defend, as applicable, the Litigation to its conclusion, which may take several months or many years and which may or may not be successful; and

WHEREAS, each of the Active Lawyers has agreed to commit substantial resources to the Litigation as may be required in order to prosecute and defend the Litigation, as applicable; and

WHEREAS, each Party desires to enter into this Agreement after careful and extended consideration on terms that such Party considers commercially reasonable (taking into account, among other things, all relevant facts and circumstances related to the Litigation).

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the Parties, intending to be legally bound, hereby agree as follows:

1.      Definitions.

"100/10 Law" means Section 43, paragraph third of the Republic of Ecuador's *Environmental Management Act*, Law No. 37, RO/245 of July 30, 1999, as may be amended from time to time.

"Accession Agreement" means an accession agreement substantially in the form attached hereto as Exhibit D.

"Active Lawyers" means each law firm and/or lawyer representing the Plaintiffs in the Litigation who or which are working, either in whole or in part, in consideration for a contingency fee.  As of the date of this Agreement, each Active Lawyer is listed on the attached Exhibit B.  If, subsequent to the date of this Agreement, (a) the Plaintiffs retain or engage one or more law firms and/or lawyers to represent the Plaintiffs in the Litigation on a partial or total contingency fee basis and (b) such engagement is undertaken in compliance with the terms of this Agreement (including Section 4(c) hereof), then such law firm or lawyer, as applicable, shall, upon execution of an Accession Agreement, be deemed to be an Active Lawyer, the Active

- 2 -

Lawyer Percentages of each of the other Active Lawyers shall be reduced on a pro rata basis (unless such new law firm or lawyer is compensated completely out of the Bonus Pool or other unallocated portions of the Total Contingency Fee Payment) and the attached Exhibit B shall be updated accordingly by the Plaintiffs' U.S. Representative.

"Active Lawyer Percentage" means, with respect to each Active Lawyer, the percentage of the Total Contingency Fee Payment set forth opposite such Active Lawyer's name on the attached Exhibit B under the heading "Active Lawyer Percentage" (as such exhibit may be revised in accordance with the terms of this Agreement).

"Additional Funder Percentage" has the meaning given to such term in Section 2(f)(i) below.

"Additional Funders" has the meaning given to such term in Section 2(f)(i) below.

"Additional Lawyer Percentage" has the meaning given to such term in Section 2(f)(i) below.

"Additional Lawyers" has the meaning given to such term in Section 2(f)(i) below.

"Agreement" has the meaning given to such term in the forepart of this Agreement.

"Allegation" and "Allegations" have the respective meanings given to such terms in Section 6(b) below.

"Amazon Defense Front" has the meaning given to such term in the forepart of this Agreement.

"Arbitration Party" has the meaning given to such term in Section 8(a) below.

"Assembly of Communities Affected by Texaco" has the meaning given to such term in the forepart of this Agreement.

"Bonus Pool" means (a) the Initial Bonus Pool plus (b) any amounts in addition to the Initial Bonus Pool that are made available for allocation to Active Lawyers as a bonus pool pursuant to this Agreement.

"Budget" has the meaning given to such term in Section 4(d) below.

"Business Day" means any day other than a Saturday, a Sunday, or a holiday on which commercial banks in the State of New York or London, England or Quito, Ecuador are authorized or required by applicable law to close.

"Chairman" has the meaning given to such term in Section 4(c) below.

- 3 -

"Claimant" has the meaning given to such term in Section 8(c) below.

"Claims" has the meaning given to such term in Section 5 below.

"Complaint" means the complaint filed by or on behalf of the Plaintiffs in the case *Maria Aguinda y Otros v. Chevron Corporation* [No. 002-2003] that, as of the date of this Agreement, is pending in the Provincial Court of Justice of Sucumbios, Ecuador.

"Covered Expenses" has the meaning given to such term in Section 5 below.

"Donziger" has the meaning given to such term in the forepart of this Agreement.

"ECBA" has the meaning given to such term in the forepart of this Agreement.

"Engagement Agreement" means, with respect to each Active Lawyer, the retainer or engagement letter or agreement pursuant to which the Plaintiffs have engaged such Active Lawyer to represent them in the Litigation.

"Excess Expense Register" means a register maintained by the Plaintiffs' U.S. Representative showing the amount of expenses paid or incurred by each Active Lawyer which may be reimbursed in accordance with the terms hereof, but which have not been paid to such Active Lawyer.

"Fajardo" has the meaning given to such term in the forepart of this Agreement.

"Funder" means any Person who or which (a) has previously entered, or hereafter enters, into a binding written agreement with the Plaintiffs to provide funding to the Plaintiffs to finance the costs of the Litigation and which agreement is and remains, as of the time in question, in full force and effect, and (b) is not an Active Lawyer, an Inactive Lawyer or a Non-Lawyer Advisor.  For the avoidance of doubt, Torvia is a Funder.

"Funding Agreement" has the meaning given to such term in Section 2(c) below.

"ICDR Rules" has the meaning given to such term in Section 8(a) below.

"Inactive Lawyers" means any lawyers or law firms who or which previously represented Plaintiffs in the Litigation but who or which are no longer active in the Litigation (including, without limitation, the lawyers or law firms listed on Exhibit C).

"Indemnified Party" has the meaning given to such term in Section 5 below.

"Initial Bonus Pool" means an amount equal to five percent (5%) of the Total Contingency Fee Payment, which shall be available for allocation to certain Active Lawyers and others as a bonus pool in accordance with Section 2(e) below.

- 4 -

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER
WOODS00045345

"Initial Budget" has the meaning given to such term in Section 4(d) below.

"Litigation" has the meaning given to such term in the Recitals to this Agreement.

"Litigation Trust" has the meaning given to such term in Section 4(f) below.

"Motley Rice" has the meaning given to such term in the forepart of this Agreement.

"Non-Lawyer Advisor" means each Person who or which has been engaged by the Plaintiffs, other than in an attorney/client relationship, to provide services or advice to the Plaintiffs in connection with the Litigation (not including any business advisors).

"Party" and "Parties" have the respective meanings given to such terms in the forepart of this Agreement.

"Patton Boggs" has the meaning given to such term in the forepart of this Agreement.

"Person" means any natural person, corporation, partnership, limited liability company, joint stock company, joint venture, association, company, estate, trust, or other organization whether or not a legal entity, custodian, trustee-executor, administrator, nominee or entity in a representative capacity and any government or agency or political subdivision thereof.

"Plaintiff Collection Monies" means any amounts paid, whether in lump sum or installments, whether from Chevron Corporation (a/k/a Texaco; ChevronTexaco; Chevron), any other party listed as a defendant in respect of the Litigation (including, without limitation, his or its respective affiliates and successors in interest), or any other party added or joined to the Litigation from time to time as a defendant or indemnitor or against whom proceedings are asserted or threatened.  Funds are considered "paid" when the monies are disbursed to the Plaintiffs or are available to be so disbursed.  For the avoidance of doubt, the Plaintiff Collection Monies shall be reduced for taxes and similar assessments required to be paid in the United States or Ecuador and by the amount of any counterclaims or similar judgments which may be made against the Plaintiffs but not the application of the 100/10 Law.

"Plaintiffs" has the meaning given to such term in the forepart of this Agreement.

"Plaintiffs' Coordinators" has the meaning given to such term in the forepart of this Agreement.

"POA" has the meaning given to such term in the forepart of this Agreement.

"Released Party" has the meaning given to such term in Section 6(a) below.

"Releasing Party" has the meaning given to such term in Section 6(a) below.

- 5 -

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER

"Request Notice" has the meaning given to such term in Section 2(f)(i) below.

"Torvia" means Torvia Limited, a Gibraltar company.

"Total Contingency Fee Payment" means an amount equal to twenty percent (20%) of all Plaintiff Collection Monies. If it is determined that the 100/10 Law prevents the Plaintiffs from paying the entire amount of their contingency fee obligations from the Plaintiff Collection Monies, the term "Total Contingency Fee Payment" means an amount equal to one hundred percent (100%) of all portions of the Plaintiff Collection Monies that may be paid by the Plaintiffs in satisfaction of their contingency fee obligations (less any amounts that the Plaintiffs are obligated to pay for unreimbursed case expenses and to the Funders, Inactive Lawyers, Non-Lawyer Advisors and/or other business advisors).

2.    Agreements Regarding Total Contingency Fee Payment.

(a)    Upon and subject to each of the other terms and conditions set forth in this Agreement and the terms of the separate Engagement Agreement with each Active Lawyer, the Plaintiffs hereby covenant and agree to pay to the Active Lawyers, as compensation to the Active Lawyers, a portion of the Total Contingency Fee Payment as set forth in Section 3 below.

(b)    Each Active Lawyer hereby acknowledges and agrees that (i) the Total Contingency Fee Payment will include any amounts owed by the Plaintiffs or any Active Lawyers to Inactive Lawyers, and (ii) if any Inactive Lawyer is entitled to receive any Plaintiff Collection Monies, directly or indirectly, by decision of a court of competent jurisdiction, arbitration decision, settlement agreement or otherwise, such Inactive Lawyers will be paid from the Total Contingency Fee Payment and that the portion of the Total Contingency Fee Payment due each of the Active Lawyers may be reduced by an amount equal to its pro rata share of the amounts required to be paid to Inactive Lawyers (provided that such amounts shall first reduce any unallocated share of the Bonus Pool).

(c)    Each Active Lawyer hereby acknowledges and agrees that the Plaintiffs have entered into, and hereafter will enter into, one or more agreements with Funders to finance the costs of the Litigation (each, a "Funding Agreement"), which may, and in some cases do, include terms that entitle such Funder to receive payment from the Plaintiff Collection Monies in preference and/or priority to the Plaintiffs and the Active Lawyers. If the Plaintiffs ultimately pay the Funders and any business advisors less than 10% of the Plaintiff Collection Monies, then the amount by which 10% of the Plaintiff Collection Monies exceeds the amount actually paid to the Funders and business advisors shall be paid to the Active Lawyers in proportion to their Active Lawyer Percentages.

(d)    In connection with any Funding Agreement (whether now in place or hereafter entered into), each Active Lawyer agrees to execute any documents and/or agreements (including, without limitation, any intercreditor agreements) that may be required or requested by a Funder to evidence the preferential financial rights to which such Funder is entitled under its respective Funding Agreement.

- 6 -

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER                                                    WOODS00045347

(e)     The Active Lawyers hereby acknowledge the existence of the Bonus Pool, and agree that Plaintiffs' U.S. Representative shall have the right to allocate the proceeds of the Bonus Pool among the Active Lawyers and others in his sole discretion; provided, that the Initial Bonus Pool may not be allocated to Donziger or the Ecuador Attorney. To the extent that any additional portion of the Bonus Pool is not specifically allocated pursuant to the immediately preceding sentence, it shall be allocated among all Active Lawyers in proportion to their Active Lawyer Percentages.   In connection with any allocation of the Bonus Pool pursuant to this Section 2(e), the attached Exhibit B shall be updated accordingly by the Plaintiffs' U.S. Representative.

(f)     Each Active Lawyer hereby acknowledges and agrees as follows:

(i)     If, from time to time, the Plaintiffs reasonably determine that (A) one or more additional lawyers and/or law firms should be retained by the Plaintiffs in order to assist with the pursuit or defense of the Litigation ("Additional Lawyers") and/or (B) there are insufficient funds currently available to the Plaintiffs to pay the reasonably anticipated costs and expenses of the Litigation as shown on the then current Budget and, as a result, the Plaintiffs should seek additional funding for the Litigation from one or more additional funders ("Additional Funders"), then the Plaintiffs shall deliver notice of that fact to the Chairman and the Plaintiffs' U.S. Representative setting forth such determination and requesting that the Chairman and the Plaintiffs' U.S. Representative agree to reduce the Active Lawyer Percentages of each Active Lawyer on a pro rata basis (based upon their then existing Active Lawyer Percentages) in order to allow for the Plaintiffs to engage such Additional Lawyers or enter into a funding arrangement with such Additional Funders, as applicable (such notice, a "Request Notice"). Each Request Notice shall describe the proposed economic terms and conditions for any agreement with Additional Lawyers and/or Additional Funders, including, without limitation, as applicable, the Active Lawyer Percentage proposed to be allocated to any Additional Lawyers (the "Additional Lawyer Percentage") and the percentage of Plaintiff Collection Monies proposed to be paid to any Additional Funder (the "Additional Funder Percentage").  Immediately upon receipt of any Request Notice, the Chairman and the Plaintiffs' U.S. Representative shall deliver a copy thereof to each Active Lawyer, for notification purposes only.

(ii)     No later than 10 days after the delivery of a Request Notice by the Plaintiffs, the Chairman and the Plaintiffs' U.S. Representative shall discuss and decide jointly to either approve or reject the requested actions set forth in such Request Notice. If both the Chairman and the Plaintiffs' U.S. Representative agree to approve the requested actions set forth in such Request Notice, then the requested actions set forth in such Request Notice shall be deemed approved, and the Plaintiffs thereafter may engage the Additional Lawyers or enter into a funding agreement with Additional Funders, as applicable, upon economic terms no more favorable to the Additional Lawyers or Additional Funders, as applicable, than as set forth in the approved Request Notice.

(iii)     Immediately upon the engagement of any Additional Lawyers or

- 7 -

WOODS00045348

the entry into a funding agreement with any Additional Funders which, in each case, has been approved in accordance with this Section 2(f), the Active Lawyer Percentage of each Active Lawyer shall be reduced by such Active Lawyer's pro rata share (based upon their then existing Active Lawyer Percentages) of the amount required to enable the Plaintiffs to grant, as applicable, the Additional Lawyer Percentage to such Additional Lawyer or (b) the Additional Funder Percentage to such Additional Funder, in each case, [taking into account any reductions made to the portion of the Plaintiff Collection Moines which are paid to any Non-Lawyer Advisors in accordance with the terms of the agreement then in place between the Plaintiffs and such Non-Lawyer Advisor.  For avoidance of doubt, no Active Lawyer shall bear any more or any less than its pro rata share of the reductions referred to in this Section 2(f).

3.    Application of Plaintiff Collection Monies; Disbursement of Total Contingency Fee Payment.  Following receipt of any Plaintiff Collection Monies, 100% of such Plaintiff Collection Monies shall be deposited in one or more escrow accounts for further disbursement to the Parties hereto, the Funders, any Inactive Lawyers, the Non-Lawyer Advisors and/or other business advisors or Persons.  Amounts shall be released from escrow upon the signature of the Plaintiffs' U.S. Representative and the Chairman, as representative of the Active Lawyers.  It is understood and agreed that, to the extent that there are any amounts owing as shown on the Excess Expense Register, such amounts shall be paid out of such escrow to the relevant Active Lawyer in preference to the payments of any other amounts owing to the Active Lawyers and otherwise in accordance with any applicable intercreditor agreement(s).  It is understood and agreed that, to the extent that there is any dispute with respect to the amounts proposed to be disbursed, the Plaintiffs' U.S. Representative and the Chairman may elect to retain such amounts in escrow pending resolution of any such dispute.  Subject to payments required to be made to the Funders, any Inactive Attorneys, the Non-Lawyer Advisors and/or other business advisors or Persons, and after reimbursement of any unreimbursed fees and/or expenses that an Active Lawyer is expressly entitled to receive under its respective Engagement Agreement, each Active Lawyer shall be entitled to an amount equal to the Total Contingency Fee Payment, if any, multiplied by its Active Lawyer Percentage.

4.    Further Acknowledgments and Agreements.

(a)    By entering into this Agreement, each Party acknowledges that the unusual length of the litigation and inherent risk of litigating in a foreign jurisdiction in which the defendant has no assets create circumstances frequently not seen in typical contingency-fee cases in the United States.  Each Party further acknowledges that:

(i)    the outcome and course of the Litigation is uncertain and cannot be predicted;

(ii)    the duration of the Litigation is uncertain, cannot be predicted and may last several months or many years;

(iii)    if the Plaintiffs recover a significant amount of Plaintiff Collections Monies, the disbursement of the Total Contingency Fee Payment may

- 8 -

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER

produce a large financial result to the Active Lawyers in a short period of time;

> (iv)   the Plaintiffs have agreed to pay and disburse the Total Contingency Fee Payment in full as set forth in this Agreement despite the fact that the Litigation has been ongoing for many years, in large part in consideration for the agreement of each Active Lawyer to dedicate all necessary resources to vigorously prosecute and defend the Litigation, as applicable, until conclusion (including the exhaustion of all appeals), however long that may take;

> (v)   the Plaintiffs may be unable to obtain any Plaintiff Collection Monies, in which event there would be no Total Contingency Fee Payment available for payment and disbursement to the Active Lawyers;

> (vi)   the needs of the Litigation are uncertain and may include initiating legal actions as well as defending legal actions in judicial and/or arbitration proceedings in the United States, Ecuador and other countries; and

> (vii)   the Plaintiffs may need to hire or retain other law firms and/or attorneys, who or which may be entitled to be paid on an hourly basis or on a contingent basis or both.

(b)   In view of the foregoing, each Party hereby agrees that this Agreement, and the disbursement of the Total Contingency Fee Payment, is fair and equitable, considering the risks of the Litigation and the financial and other benefits that each Active Lawyer and the Plaintiffs would receive from a successful conclusion of the Litigation. Each Party further agrees that he or it shall not seek to increase or decrease his or its Active Lawyer Percentage or the amount of the Bonus Pool, notwithstanding (i) the amount of the Plaintiff Collection Monies, (ii) the duration of the Litigation or (iii) the amount or type of work involved and/or undertaken.

(c)   Each Party hereby acknowledges and agrees that the Litigation shall be coordinated and managed by a management committee comprised of one individual designated by each Party to this Agreement and one individual designated by the Plaintiff's U.S. Representative.   The Plaintiffs' U.S. Representative shall appoint a chairman of the management committee (the "Chairman"), who, along with the Plaintiffs' U.S. Representative, will exercise overall responsibility for the strategic direction of the Litigation and the day-to-day management of the Litigation (subject, however, to the other provisions of this Section 4(c)).   The management committee shall ensure that the work related to the Litigation shall be divided among the Active Lawyers in accordance with their respective responsibilities and expertise.   Except for amounts to be paid out of Plaintiff Collection Monies as specifically contemplated in an Engagement Agreement, each Active Lawyer agrees that, for any particular month during the term of this Agreement, (i) it shall not charge Plaintiffs for any legal fees in connection with the Litigation in excess of the amount set forth under such Active Lawyer's name on the then current Budget for such month and (ii) it shall not charge Plaintiffs for expenses incurred in connection with the Litigation except to the extent such expenses (A) are in the amount

- 9 -

set forth under such Active Lawyer's name on the then current Budget for such month or (B) such expenses were incurred with the prior approval of the Chairman and the Plaintiffs' U.S. Representative or were incurred with concurrent notice to the Chairman and the Plaintiffs' U.S. Representative in order to meet an urgent need with respect to the Litigation.  The management committee shall have regular telephonic meetings or special meetings, if necessary, at which any material matters related to the Litigation (including, without limitation, the addition of any new Active Lawyers, the addition of any Non-Lawyer Advisors and any settlement discussions) will be discussed.  It is understood and agreed that the Plaintiffs shall take into consideration the views of all members of the management committee, and shall use good faith efforts to arrive at a consensus agreement as to how to proceed in respect of any material matter related to the Litigation that has been presented (or should have been presented) to the management committee for discussion (including, without limitation, any decision to add one or more Additional Lawyers or Non-Lawyer Advisors and/or to settle the Litigation).

(d)     The Parties shall negotiate in good faith to agree upon a six-month budget (to be broken down on a monthly basis) of fees, costs and expenses of the Litigation and related activities that may be billed to the Plaintiffs by the Active Attorneys and others.  The Parties agree to finalize such budget in a reasonable period of time following the execution of this Agreement, whereupon such agreed initial budget shall be incorporated into and added to this Agreement as Exhibit E by means of an amendment to this Agreement (the "Initial Budget").  Each Active Lawyer shall, from time to time as requested by the Plaintiffs (but in any event no less frequently than twice a year), prepare and submit proposed revisions to the Budget based on the anticipated activity with respect to the Litigation or related activities to the Plaintiffs' U.S. Representative and the other members of the management committee.  The management committee shall review such proposed revisions, and shall submit a recommended revised budget to the Plaintiffs no later than 5 Business Days before commencement of the next succeeding six-month budgetary period.  The Plaintiffs shall either (i) approve such recommended revised budget or (ii) make revisions to such recommended revised budget and approve the same, as so revised.  The Initial Budget and any such revised budget approved by the Plaintiffs as set forth above shall be referred to in this Agreement as the "Budget".

(e)     Each Active Lawyer shall be entitled to rely and act upon written and oral instructions of the Plaintiffs' Representatives.  Each Party shall extend all reasonable assistance and cooperation to the other Parties and to other Persons (including Non-Lawyer Advisors) retained or engaged by the Plaintiffs in connection with the Litigation.

(f)     The Plaintiffs and the Plaintiffs' Coordinators hereby covenant and agree not to amend the Complaint in any way to remove or replace the Amazon Defense Front as beneficiary under or in respect of the Complaint, or to appoint or designate one or more additional beneficiaries thereof (in addition to the Amazon Defense Front).  The Plaintiffs and the Plaintiffs' Coordinators hereby covenant and agree not to assign, transfer, delegate or encumber all or any part of their respective rights, title and interest in and to any Plaintiff Collection Monies, except as otherwise set forth in this Agreement.  Notwithstanding anything to the contrary contained herein or in any Engagement

- 10 -

Agreement, the Plaintiffs and the Plaintiffs' Coordinators may establish a trust for the purpose of, among other things, more efficiently carrying out the Litigation (such trust, the "Litigation Trust"). In the event the Litigation Trust is established, the Plaintiffs have the absolute right to, and shall promptly, (i) assign to the Litigation Trust (A) all of their respective rights and obligations under this Agreement and each Engagement Agreement and (B) all of their respective rights and interest in and to the Plaintiff Collection Monies and (ii) provide notice thereof to the members of the management committee.

(g)     To the extent possible, the Plaintiffs and the Active Lawyers shall arrange to have third party costs and expenses payable in respect of expert services, deposition fees, transcription and court reporter services, translation services, filing fees and similar third party costs and expenses incurred in respect of the Litigation paid directly out of the funds maintained by the Plaintiffs to finance the Litigation (which may include funds contributed by Funders). To the extent that (i) an Active Lawyer incurs such third party costs and expenses that are allowed to be reimbursed by the Plaintiffs under this Agreement and (ii) there are insufficient funds to pay such third party costs and expenses to such Active Lawyer, then the amount of such third party costs and expenses shall be added to the Excess Expense Register to be paid on the earlier to occur of (x) the date on which additional funds become available to the Plaintiffs for the financing of the Litigation which may be used to pay such third party costs and expenses and (y) the date on which the Plaintiff Collection Monies are disbursed otherwise available to be disbursed to the Active Lawyers in accordance with the terms hereof and otherwise in accordance with any applicable intercreditor agreement(s). For the avoidance of doubt, any amounts listed on the Excess Expense Register shall be paid to the Active Lawyers to whom or which such amounts are owed in preference to any other payment to the Active Lawyers, on a pro rata basis (based upon the total amounts owed to each Active Lawyer to whom or which such amounts are owed).

5.     Indemnification of Plaintiffs' Representatives and Active Attorneys.   The Plaintiffs hereby agree to (a) indemnify and hold harmless each Plaintiffs' Representative and each Active Lawyer and each of his or its respective heirs, successors, assigns, personal or legal representatives and anyone claiming through or under any of the foregoing (each, an "Indemnified Party") from and against any and all losses, costs, liabilities, damages, awards and expenses (including, without limitation, legal fees and expenses and costs of suit, and out-of-pocket expenses, such as travel) (collectively, "Covered Expenses") actually incurred by such Indemnified Party in connection with the Litigation (including, without limitation, the defense and/or pursuit, as applicable, of appealing any judgments or decisions or other appellate proceedings) and/or arising out of his activities on behalf of Plaintiffs in connection with the Litigation (collectively, "Claims") to the fullest extent provided by law, and (b) advance any Covered Expenses as may be necessary or reasonable to defend any Claim or Claims brought against such Indemnified Party, which advances are intended to be made from Plaintiffs' monies received from certain Funders, which amounts may be deposited in a trust account with an Active Lawyer selected by the Plaintiffs' U.S. Representative. It is further understood and agreed that to the extent that any Plaintiffs' Representative is no longer able to render legal services to the Plaintiffs or where any Plaintiffs' Representative withdraws from the Litigation as a legal advisor and agrees to continue to provide other services to the Plaintiffs, such Plaintiffs'

- 11 -

Representative may be engaged by the Plaintiffs as a Non-Lawyer Advisor, in which case (i) his or its Active Lawyer Percentage shall not be added to the Bonus Pool, but rather shall be added to the amounts required to be disbursed to Non-Lawyer Advisors as described above, and (ii) he or it shall continue to be an Indemnified Party for purposes of the foregoing indemnity.

      6.    <u>Agreement Regarding Exculpation</u>.

      (a)    By signing this Agreement below, each Active Lawyer (for itself and each of his or its heirs, successors, assigns, personal or legal representatives and anyone claiming through or under any of the foregoing, a "<u>Releasing Party</u>") acknowledges and agrees that Chevron, either directly or by and though its affiliates and its or their respective advisors and counsel, has made, and in the future may continue to make, Allegations (defined below) against certain of the Active Lawyers, Plaintiffs' Representatives and Non-Lawyer Advisors (each, together with its heirs, successors, assigns, personal or legal representatives and anyone claiming through or under any of the foregoing, the "<u>Released Party</u>"). Each Releasing Party further acknowledges and agrees that he or it (a) has had a full and complete opportunity to conduct, and has conducted, its own independent investigations with respect to the Allegations, (b) has sufficient knowledge, experience, sophistication and expertise in legal and business matters so as to be capable of evaluating the Allegations (including, without limitation, the possibility or probability of future Allegations) and (c) has in fact carefully evaluated the Allegations. Accordingly, each Releasing Party hereby fully releases and discharges forever each Released Party of and from any and all manner of actions, suits, complaints, charges, liability, rights, claims, demands, damages, loss, costs, expenses, and causes of action of any type or nature whatsoever, in law or in equity, which such Releasing Party ever had, now has, or hereafter may have, whether known or unknown, existing or potential, now existing or hereafter arising, contingent or certain, against each and every Released Party for, upon or by reasons of any matter, cause, damages or thing whatsoever, relating to or arising out of the conduct of such Released Party or Released Parties in the Litigation (including in any Allegations).

      (b)    For purposes of the foregoing, "<u>Allegation</u>" means each, and "<u>Allegations</u>" means all, allegations or assertions of misconduct, fraud or any other nature or basis, whether now existing or asserted or hereafter brought or asserted, in any way relating to or arising out of the conduct of such Released Party or Released Parties in the Litigation (including, without limitation, (i) those alleged by Chevron, either directly or by and though its affiliates and its or their respective advisors and counsel, in its various filings made under 28 U.S.C. § 1782 and related proceedings, (ii) any civil, criminal or professional or ethical proceedings and (iii) any damages, convictions, professional sanctions or other action that may be taken against a Person arising from his or its representation of the Plaintiffs in the Litigation).

      7.    <u>Representations and Warranties</u>. Each Party hereby represents to the other Parties as follows: (a) such Party has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder, and the execution, delivery; (b) performance by such Party of this Agreement have been duly authorized by all necessary action; and (c) this Agreement has been duly and validly executed and delivered by such Party and constitutes the binding obligation of such Party, enforceable against such Party in accordance with its terms.

- 12 -

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER

8.    Arbitration of Disputes.

(a)    Any controversy or claim arising out of or relating to the relationship among the Parties or any of their affiliates or successors (the "Arbitration Parties") arising under or in connection with this Agreement or otherwise shall be submitted to binding arbitration if such Parties have been unable to resolve the dispute through negotiation, mediation or otherwise within thirty (30) days after one Party has provided written notice of a dispute to each other Party and to all three of the Plaintiffs' Representatives by registered overnight delivery service such as Federal Express or DHL at the last-known address of such Persons.  By agreeing to arbitrate, the Parties are agreeing to waive any right to a jury trial.  The arbitration shall be conducted and administered by the International Centre for Dispute Resolution in accordance with its International Arbitration Rules (the "ICDR Rules"), this Agreement and the Federal Arbitration Act.  In the event of a conflict, the provisions of the ICDR Rules shall control, except where the ICDR Rules conflict with this Agreement, in which case this Agreement shall control.  The arbitration shall be conducted before a panel of three arbitrators (all of whom shall be former state or federal judges, with at least five years judicial experience and each of whom shall be fluent speakers and readers of both Spanish and English), regardless of the size of the dispute, to be selected as provided in the ICDR Rules.  The arbitration shall be commenced and held in Miami, Florida, unless otherwise required by a Funder.  Any issue concerning the location of the arbitration, the extent to which any dispute is subject to arbitration, the applicability, interpretation, or enforceability of these procedures (including, without limitation, any contention that all or part of these procedures are invalid or unenforceable and any discovery disputes) shall be resolved by all of the arbitrators.  No potential arbitrator may serve on the panel unless he or she has agreed in writing to be bound by these procedures and is a fluent speaker and reader of both English and Spanish.  To the extent state law is applicable, the arbitrators shall apply the substantive laws of the State of New York.  Each Party shall, upon the written request of any other Party, promptly provide the other Party with copies of all documents on which the producing Party may rely in support of or in opposition to any claim or defense and a report of any expert whom the producing party may call as a witness in the arbitration hearing.  At the request of a Party, and upon the showing of good cause, the arbitrators shall have the discretion to order production by any other Party or by a third party of other documents relevant to any claim or defense.  Each Party shall be entitled to depose a maximum of three witnesses (which number may not be increased by the arbitral tribunal), plus all experts designated to be witnesses at the arbitration.  The depositions shall be held within thirty (30) days of the making of a request and shall be limited to a maximum of six hours per deposition.  All objections are reserved for the arbitration hearing, except for objections based on privilege and proprietary or confidential information.

(b)    All aspects of the arbitration shall be treated as confidential and neither the Parties nor the arbitrators may disclose the existence, content or results of the arbitration, except as necessary to comply with legal or regulatory requirements.  Before making any such disclosure, a Party shall give written notice to all other Parties and shall afford such Parties a reasonable opportunity to protect their interests.  The result of the arbitration shall be binding on the Parties and judgment on the arbitrators' award may be entered in any court having jurisdiction.  In no event shall the arbitrators have any authority to award punitive damages.

- 13 -

(c)     The Parties acknowledge that the Plaintiffs intend to enter into agreements with other attorneys on or after the date of this Agreement and that all such agreements will contain provisions obliging the parties thereto to submit any disputes to binding arbitration substantially similar to the provisions of this Section 8.  In the event of any dispute between the Plaintiffs and an attorney (whether active or inactive) or any other person or entity with a legitimate or alleged claim to Plaintiff Collection Monies (any such person, a "Claimant"), the Plaintiffs desire to resolve such dispute in a single arbitration proceeding involving all Claimants.  In view of the foregoing, in the event of an arbitration proceeding involving the Plaintiffs and a Claimant, each Active Lawyer hereby agrees to participate in such proceeding if he or it is joined by the Plaintiffs or any Claimant and agrees not to oppose joinder of other attorneys if sought by the Plaintiffs or a Claimant who is a party to the arbitration proceedings. Furthermore, each Active Lawyer hereby agrees that under no circumstances shall it seek a greater amount or increased percentage of Plaintiff Collection Monies than it is entitled to under, and has agreed to in, this Agreement and hereby unconditionally and irrevocably waives any right to make such a demand or claim in any arbitral, judicial or other proceeding anywhere in the world.

(d)     In the event of any dispute between a Party and any Funder, the Parties agree to be bound by and comply with any arbitration provisions in the definitive documentation with such Funder.

9.     Controlling Law.   This Agreement shall be governed by and construed and interpreted in accordance with the laws of New York (without reference to principles of conflicts of laws).

10.     Privilege.   In the course of representing the Plaintiffs, the Active Lawyers understand that there will be a need for the Active Lawyers to communicate with the Plaintiffs, the Plaintiffs' Representatives and other counsel retained by the Plaintiffs.  The Parties agree that all such communications are to be treated as confidential and protected to the maximum extent permitted under applicable law by the attorney/client, work product, joint defense, common interest, and all other applicable privileges and doctrines.

11.     Amendments.   Except for amendments to the schedules by the Plaintiffs' U.S. Representative permitted hereby, this Agreement (including, without limitation, any exhibit or schedule hereto) may not be amended, modified, supplemented or restated, nor may any provisions of this Agreement be waived, without a written instrument adopted, executed and agreed to by each Party.

12.     Entire Agreement.   Except for any Engagement Agreements and any agreements (such as intercreditor agreements) hereafter signed by the Parties and any Funder(s), this Agreement (including exhibits and schedules hereto which are integral parts hereof) contains all the agreements between the parties hereto regarding the subject matter of this Agreement, and all prior and contemporaneous agreements and understandings between the Parties with respect to the subject matter hereof are deemed merged herein.  For the avoidance of doubt, each Party hereby agrees that (a) in the event of any direct conflict between the terms of this Agreement and

- 14 -

the terms of any Engagement Agreement, the terms of this Agreement will prevail, and (b) in the event of any direct conflict between the terms of this Agreement and the terms of any intercreditor or similar agreement hereafter signed by the Parties and any Funder(s), the terms of such intercreditor or similar agreement will prevail.

13.   <u>Confidentiality</u>.  The Parties hereby acknowledge and agree that the information contained in this Agreement is not known to the public, is confidential and proprietary, and is not to be disclosed by any Party to any other Person (including, without limitation, any Non-Lawyer Advisor or any Inactive Lawyer) without the prior written approval of each of the other Parties except (a) to the extent necessary to comply with any applicable law, rule or regulation or the valid order of any governmental agency or any court of competent jurisdiction, and (b) as may be necessary to enforce its rights under, and perform its agreements and obligations under, this Agreement.

14.   <u>Severability</u>.  If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws effective during the term of this Agreement, such provision shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part of this Agreement; and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Agreement.  Furthermore, in lieu of each such illegal, invalid or unenforceable provision, there shall be added automatically as a part of this Agreement a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

15.   <u>Binding Effect</u>.  This Agreement shall be binding upon and shall inure to the benefit of each Party and its respective heirs, permitted successors, permitted assigns, permitted distributees and legal representatives, upon the execution of this Agreement by such Party (notwithstanding that one or more other of the named Parties shall not have then executed this Agreement).  By their signatures hereto, each Party intends to and does hereby become bound hereby.  Nothing expressed or mentioned in this Agreement is intended or shall be construed to give any Person other than the Parties any legal or equitable right, remedy or claim under, in or in respect of this Agreement or any provision herein contained.  The rights under this Agreement may be not assigned by any Party.

16.   <u>Further Assurances</u>.  In connection with this Agreement and the transactions contemplated hereby, each Party hereby agrees to execute and deliver all such future instruments and take such other and further action as may be reasonably necessary or appropriate to carry out the provisions of this Agreement and the intention of the Parties as expressed herein.

17.   <u>Counterparts; Electronic or Facsimile Signatures</u>.  This Agreement (a) may be executed in any number of counterparts, all of which together shall constitute a single instrument, and (b) may be executed and/or delivered by means of electronic transmission (email) or facsimile.

18.   <u>Specific Performance</u>.  Each Party acknowledges that it shall be impossible to

- 15 -

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER

measure in money the damage to itself and the other Parties, if any of them fails to comply with any of the restrictions or obligations imposed by this Agreement, that every such restriction and obligation is material, and that in the event of any such failure, the Parties shall not have an adequate remedy at law or in damages.  Therefore, each Party consents to the issuance of an injunction or the enforcement of other equitable remedies against such Party (unless such Party is a Plaintiff) at the suit of an aggrieved Party without the posting of any bond or other security, to compel specific performance of all of the terms hereof, and waives any defenses thereto, including, without limitation, the defenses of (a) failure of consideration, (b) breach of any other provision of this Agreement and (c) availability of relief in damages.

19.    <u>No Third Party Beneficiaries</u>.  Except as set forth below in this <u>Section 19</u>, (a) the provisions of this Agreement are solely for the benefit of the Parties, (b) this Agreement does not and is not intended to confer any rights or remedies upon any Person other than the Parties, and (c) no Person other than a Party shall have any rights as a third party beneficiary of any of the provisions hereof.  Notwithstanding the foregoing, the Parties hereby agree that (i) each Indemnified Party shall be entitled to the benefits of, and shall have the right to enforce as necessary, the indemnification provisions set forth in <u>Section 5</u> above, and (ii) each Released Party shall be entitled to the benefits of, and shall have the right to enforce as necessary, the release and discharge provisions set forth in <u>Section 6</u> above.

20.    <u>Language</u>.  This Agreement has been drafted in English and in Spanish, each of which version shall be execute by the parties hereto.  In the event of a conflict between the English version and Spanish version of this Agreement, the Spanish version shall control.

[signatures on following pages]

- 16 -

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER     WOODS00045357

IN WITNESS WHEREOF, Plaintiffs, through their duly authorized representatives, and each of the Active Lawyers have executed this Agreement as of the date first written above.

PLAINTIFFS

On behalf of each of the plaintiffs in the matter
*Maria Aguinda y Otros v. Chevron Corporation*


By: _____
_____
Witness:                            Pablo Estenio Fajardo Mendoza, Esq., as
Lead Counsel For and Ecuadorian Legal
Representative of the Plaintiffs

PLAINTIFFS' COORDINATORS

El Frente de Defensa de la Amazonia


By: _____
_____
Witness:                            Name: Ermel Chavez Parra
Title: President


On behalf of the Asamblea de Afectados por
Texaco


By: _____
_____
Witness:                            Luis Yanza, as Coordinator under the POA


[signatures continue on following pages]

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER

WOODS00045358

<u>DONZIGER</u>

Donziger & Associates, PLLC

By: _____

Witness: _____        Steven R. Donziger, Partner


<u>MOTLEY RICE</u>

Motley Rice LLC

By: _____

Witness: _____        Name: _____
                                        Title: _____


<u>PATTON BOGGS</u>

Patton Boggs LLP

By: _____

Witness: _____        Name: _____
                                        Title: _____


<u>ECBA</u>

Emery, Celli, Brinckerhoff & Abady LLP

By: _____

Witness: _____        Name: _____
                                        Title: _____

[signatures continue on following pages]

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER
WOODS00045359

**FAJARDO**

_____           _____
Witness:                          Pablo Estenio Fajardo Mendoza, Esq.

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER

WOODS00045360

EXHIBIT A

Individual Plaintiffs

Daniel Carlos Lusitande Yaiguaje;
Venancio Freddy Chimbo Grefa;
Miguel Mario Payaguaje Payaguaje;
Teodoro Gonzalo Piaguaje Payaguaje;
Simón Lusitande Yaiguaje;
Armando Wilmer Piaguaje Payaguaje;
Javier Piaguaje Payaguaje;
Fermín Piaguaje;
Luis Agustín Payaguaje Piaguaje;
Emilio Martin Lusitande Yaiguaje;
Reinaldo Lusitande Yaiguaje;
María Victoria Aguinda Salazar;
Carlos Grega Huatatoca;
Catalina Antonia Aguinda Salazar;
Lidia Alexandra Aguinda Aguinda;
Clide Ramiro Aguinda Aguinda;
Luis Armando Chimbo Yumbo;
Beatriz Mercedes Grefa Tanguila;
Lucio Enrique Grefa Tanguila;
Patricio Wilson Aguinda Aguinda;
Patricio Alberto Chimbo Yumbo;
Segundo Ángel Amanta Milán;
Francisco Matías Alvarado Yumbo;
Olga Gloria Grefa Cerda;
Narcisa Tanguila Narváez;
Bertha Yumbo Tanguila;
Lucrecia Tanguila Grefa;
Francisco Víctor Tanguila Grefa;
Rosa Teresa Chimbo Tanguila;
María Clelia Reascos Revelo;
Heleodoro Pataron Guaraca;
María Viveros Cusangua;
Lorenzo José Alvarado Yumbo;
Francisco Alvarado Yumbo;
José Gabriel Revelo Llore;
Luisa Delia Tanguila Narváez; and
José Miguel Ipiales Chicaiza.

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER

## EXHIBIT B

### Active Lawyers

| Name: | Active Lawyer Percentage:** |
|---|---|
| | |
| Donziger | 31.5% |
| Motley Rice | 16.5% |
| Patton Boggs | 12% |
| ECBA | 10% |
| Fajardo | 10% |

** -- The Parties acknowledge that the allocations set forth above do not add up to 100%, and do not include any bonus pools amounts or any other amounts that the Plaintiffs' and/or the Plaintiffs' U.S. Representative, in their respective sole discretion, may allocate to one or more Active Lawyers, Inactive Lawyers, Non-Lawyer Advisors and/or other business advisors or Persons.

- 21 -

EXHIBIT C

Inactive Lawyers

Kohn, Swift & Graf, P.C.
Cristobal Bonifaz
Beldock, Levine & Hoffman

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER

WOODS00045363

Plaintiff's Exhibit 556   p. 22 of 24

<u>EXHIBIT D</u>

Form of Accession Agreement


To:     Each of the Parties to the Master Agreement (defined below)

From:   _____


     The undersigned, _____, a _____, hereby joins in the execution of that certain Master Agreement dated as of _____, 2010 (as amended, supplemented or otherwise modified from time to time, the "<u>Master Agreement</u>"), between and among the (i) Plaintiffs, (ii) the Amazon Defense Front, (iii) the Assembly of Communities Affected by Texaco, (iv) Donziger, (v) Motley Rice, (vi) Patton Boggs, (vii) ECBA, (viii) Fajardo and (ix) each Person who or which from time to time shall execute and deliver an accession agreement providing that such Person agrees to be bound by the Master Agreement.

     By executing this Accession Agreement, the undersigned hereby agrees as follows: (i) the undersigned is an Active Lawyer for all purposes of and under the Master Agreement; (ii) the undersigned has an Active Lawyer Percentage of _____%; and (iii) the undersigned shall be bound by, comply with and otherwise be entitled to enforce each of the terms and provisions of the Master Agreement as if the undersigned were an original signatory thereto.  The undersigned hereby represents and warrants to the other Parties to the Master Agreement that the representations set forth in <u>Section 7</u> of the Master Agreement are, with respect to the undersigned, true, complete and correct as of the date hereof as if made on and as of the date hereof.  From and after the date of this Accession Agreement, each reference to an Active Lawyer in the Master Agreement shall be deemed to include the undersigned.  Each capitalized term that is used but not otherwise defined herein shall have the meaning given to such term in the Master Agreement.

     IN WITNESS WHEREOF, the undersigned has executed this Accession Agreement as of the _____ day of _____, 20____.


               [Name]



          By:     _____
                Name:
                Title:
                Address for Notices: [Insert Address]

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER
WOODS00045364

<u>EXHIBIT E</u>

Initial Budget

[To Be Finalized and Then Attached By Means of Amendment]

CONFIDENTIAL - ACCESS LIMITED BY PROTECTIVE ORDER

WOODS00045365