# EXHIBIT 26

i582che1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

CHEVRON CORPORATION,

             Plaintiff,              New York, N.Y.

        v.                           11 Civ. 691(LAK)

STEVEN DONZIGER, et al.,

             Defendants.

------------------------------x      Argument

                                     May 8, 2018
                                     4:40 p.m.

Before:

              HON. LEWIS A. KAPLAN,

                                     District Judge


                        APPEARANCES


GIBSON, DUNN & CRUTCHER, LLP
     Attorneys for Plaintiff
BY:  RANDY M. MASTRO
     ANDREA E. NEUMAN
     ANNE CHAMPION
     ALEJANDRO A. HERRERA


STERN & KILCULLEN, LLC
     Attorneys for Plaintiff
BY:  HERBERT J. STERN


STEVEN R. DONZIGER
     Pro Se Defendant
```

1            MR. MASTRO:  Thank you.

2            Thank you, Mr. Donzinger.  Sorry.

3            MR. DONZINGER:  Your Honor, good afternoon.
4   Mr. Mastro could not be more wrong, and I'm going to tell you
5   why.

6            Chevron exhibited tremendous bad faith in its initial
7   motion to hold me in contempt by citing the wrong order.  They
8   cited your originally RICO judgment rather than the
9   clarification order that you issued on my motion on April 25,
10  2014.

11           THE COURT:  Mr. Donzinger, that was not a
12  clarification order.  That was a ruling on a motion for a stay
13  pending appeal.

14           MR. DONZINGER:  Be that as it may, in that order you
15  made it explicit that my clients in Ecuador were allowed to
16  sell their shares in the judgment to finance litigation
17  expenses, that is, to sell shares to investors in anticipation
18  of some sort of future collection, and you distinguished
19  between doing that and actually selling shares that I owned
20  myself to profit personally.

21           And they have not met their burden.  They haven't
22  presented one iota of evidence.  And the Greenwald -- Lee
23  Grinberg affidavit does not make this out.  It describes me
24  going to a meeting, trying to sell shares of my clients, not my
25  own shares.  There is no evidence.  And I promise you if you

1   got Mr. Grimwald in here to testify, he could provide no
2   evidence, or Ms. Sullivan, that I ever have attempted or ever
3   have sold my shares.  I am allowed, if I sell the shares of my
4   clients, to get paid for my work on this case.  You yourself
5   said that in the April 25 order and I can quote that right
6   here.
7           You said:  "Thus as long as no collections are made in
8   respect to the Lago Agrio judgment," which has never happened,
9   "the New York judgment could not prevent Donzinger from being
10  paid just as he has been paid" -- you put an amount of money in
11  there -- "over the last nine or ten years."  I'm going on your
12  guidance from April 25.
13          Further, I feel like I have been acting in full
14  compliance with the order as explained in docket 1801.  His
15  little booklet is almost all citing docket 1875.  But in 1801,
16  your Honor explicitly said we could sell shares to fund the
17  litigation.  You said it in multiple ways.
18          In terms of monetization -- let me just cite one other
19  quote.  You said on page 3 of the judgment, 1801:
20  "Significantly, the New York judgment did not restrict the
21  other LAPs, who remain free to sell, assign, or transfer their
22  interests, if any, in the Lago Agrio judgment and to seek to
23  enforce it anywhere in the world."
24          I'm selling, as an intermediary, the points or the
25  aspects of the judgment that are held by my clients.  I am not

1  decision carefully, got comfortable with it precisely because
2  your Honor tailored the relief very narrowly and made it
3  explicit that the Second Circuit's decision that this judgment
4  could be enforced by the Ecuadorians anywhere in the world
5  really prevented exactly what Mr. Mastro and Chevron are
6  seeking here, which is a complete shutdown of the ability of
7  the Ecuadorians -- and I am still their lawyer, OK.  I have a
8  right to help my clients fund their own litigation.  I have a
9  right, with my client's permission, to be paid for my work.
10 And none of this money violates the RICO judgment.  And
11 Mr. Mastro is just wrong.  And I really fear for this case,
12 which is making, by the way, tremendous progress in another
13 jurisdiction, but I fear for this case if your Honor grants
14 what Mr. Mastro is seeking.  Because at that point this case,
15 which is exactly what they want because they cannot win, in my
16 opinion, on the merits, they want to shut this down through the
17 back door by drying up financing.
18          I have been in full compliance with your Honor's
19 order.  I really urge you not to grant their motion to hold me
20 in contempt.  This is the sixth time they've tried to do that.
21 They want to wave around that Donzinger was held in contempt.
22 I've had to live with a RICO judgment on me now for many years,
23 sir.  It has not been easy.  Now they want a contempt citation.
24          This case is playing out around the world, in Canada
25 right now.  Your judgment stands on its own.  You found fraud,

1    OK.  The evidence is what it is.  This ultimately will be
2    reviewed by Canadian courts, and I would urge you to please let
3    this process play out without denying the ability of my clients
4    to continue to fund this action, because I can tell you, and I
5    will represent right here, that I am the lifeline for people in
6    Ecuador to raise money.  And I don't want intimidation to the
7    funders that I have had to solicit from this camp, which they
8    have done repeatedly and they did, as you know, during the RICO
9    case with Burford and Russ DeLeon and many others.  If that
10   goes down again, which is what they really want to do by
11   getting this discovery, it will be virtually impossible for the
12   indigenous peoples of Ecuador and the farmer communities of
13   Ecuador to raise money to fund this litigation.
14           It's not fair, and that's why I say it's SLAAP,
15   because it really is designed -- I have a right to advocate, no
16   matter what you think of me, and I know you don't have a very
17   high opinion of me.  I have a right to continue advocating for
18   my clients, and I have a right to sell their shares to raise
19   money for perfectly legal action in Canada that is progressing,
20   as you know, with three straight appellate court victories in
21   our favor.
22           So I don't get what's happening here.  This is an
23   attack on the First Amendment and the ability of me to be a
24   lawyer or an advocate because, as you know, I might not be a
25   lawyer because there's a Bar complaint against me based on your