# EXHIBIT 84

Court File No.: C63309 and C63310
Court File No.: CV-12-9808-00CL

## COURT OF APPEAL FOR ONTARIO

B E T W E E N:

DANIEL CARLOS LUSITANDE YAIGUAJE, BENACIO FREDY CIMBO
GREFA, MIGUEL MARIO PAYAGUAJE PAYAGUAJE, TEODORO
GONZALO PIAGUAJE PAYAGUAJE, SIMON LUSITANDE YAIGUAJE,
ARMANDO WILMER PIAGUAJE PAYAGUAJE, ANGEL JUSTINO
PIAGUAJE LUCITANTE, JAVIER PIAGUAJE PAYAGUAJE, FERMIN
PIAGUAJE, LUIS AGUSTIN PAYAGUAJE PIAGUAJE, EMILIO MARTIN
LUSITANDE YAIGUAJE, REINALDO LUSITANDE YAIGUAJE, MARIA
VICTORIA AGUINDA SALAZAR, CARLOS GREGA HUATATOCA,
CATALINA ANTONIA AGUINDA SALAZAR, LIDIA ALEXANDRIA
AGUINDA AGUINDA, CLIDE RAMIRO AGUINDA AGUINDA, LUIS
ARMANDO CHIMBO YUMBO, BEATRIZ MERCEDES GREFA TANGUILA,
LUCIO ENRIQUE GREFA TANGUILA, PATRICIO WILSON AGUINDA
AGUINDA, PATRICIO ALBERTO CHIMBO YUMBO, SEGUNDO ANGEL
AMANTA MILAN, FRANCISCO MATIAS ALVARADO YUMBO, OLGA
GLORIA GREFA CERDA, NARCISA AIDA TANGUILA NARVAEZ,
BERTHA ANTONIA YUMBO TANGUILA, GLORIA LUCRECIA TANGUILA
GREFA, FRANCISCO VICTOR TANGUILA GREFA, ROSA TERESA
CHIMBO TANGUILA, MARIA CLELIA REASCOS REVELO, HELEODORO
PATARON GUARACA, CELIA IRENE VIVEROS CUSANGUA, LORENZO
JOSE ALVARADO YUMBO, FRANCISCO ALVARADO YUMBO, JOSE
GABRIEL REVELO LLORE, LUISA DELIA TANGUILA NARVAEZ, JOSE
MIGUEL IPIALES CHICAIZA, HUGO GERARDO CAMACHO NARANJO,
MARIA MAGDALENA RODRIGUEZ BARCENES, ELIAS ROBERTO
PIYAHUAJE PAYAHUAJE, LOURDES BEATRIZ CHIMBO TANGUILA,
OCTAVIO ISMAEL CORDOVA HUANCA, MARIA HORTENCIA VIVEROS
CUSANGUA, GUILLERMO VINCENTE PAYAGUAJE LUSITANDE,
ALFREDO DONALDO PAYAGUAJE PAYAGUAJE and DELFIN LEONIDAS
PAYAGUAJE PAYAGUAJE

Plaintiffs
(Appellants)

and

CHEVRON CORPORATION, CHEVRON CANADA LIMITED and CHEVRON
CANADA FINANCE LIMITED

Defendants
(Respondents)

## FACTUM OF THE RESPONDENTS
## ON THE MOTION FOR SECURITY OF COSTS

June 19, 2017

**LENCZNER SLAGHT ROYCE
SMITH GRIFFIN LLP**

Barristers
Suite 2600
130 Adelaide Street West
Toronto ON  M5H 3P5

Alan J. Lenczner, Q.C. (11387E)
Tel:      (416) 865-3090
Fax:      (416) 865-2844
Email:    alenczner@litigate.com
Brendan F. Morrison (61635B)
Tel:      (416) 865-3559
Fax:      (416) 865-3731
Email:    bmorrison@litigate.com


**KOSKIE MINSKY LLP**

900-20 Queen Street West
Toronto, ON  M5H 3R3

Kirk M. Baert  (30942O)
Tel: (416) 595-2092
Fax: (416) 204-2889
Email: kmbaert@kmlaw.ca

Celeste Poltak  (46207A)
Tel: (416) 595-2701
Fax: (416) 204-2909
Email: cpoltak@kmlaw.ca

Garth Myers (62307G)
Tel: (416) 595-2102
Fax: (416) 977-3316
Email: gmyers@kmlaw.ca

Lawyers for the Appellants/Plaintiffs

TO: **NORTON ROSE FULBRIGHT CANADA LLP**

   Barristers and Solicitors
   Suite 3800
   Royal Bank Plaza, South Tower
   200 Bay Street
   P.O. Box 84
   Toronto, ON
   M5J 2Z4

   Robert Frank (35456F)
   Tel: (416) 202-6741
   Clarke Hunter, Q.C.
   Tel: 1 (403) 267-8292
   Fax: 1 (403) 264-5973
   Anne Kirker, Q.C.
   Tel: 1 (403) 267-9564

   Lawyers for the Defendant,
   Chevron Corporation

AND TO: **GOODMANS LLP**

   Barristers and Solicitors
   Bay Adelaide Centre
   333 Bay Street
   Suite 3400
   Toronto, ON
   M5H 2S7

   Benjamin Zarnett (17247M)
   Tel: (416) 597-4204
   Suzy Kauffman (41703D)
   Tel: (416) 597-6281
   Peter Kolla
   Tel: (416) 597-6279

   Lawyers for the Defendant,
   Chevron Canada Limited

AND TO:    **OSLER, HOSKIN & HARCOURT LLP**
Barristers & Solicitors
100 King Street West
1 First Canadian Place
Suite 6200, P.O. Box 50
Toronto ON  M5X 1B8

Larry Lowenstein
Tel:     (416) 862-6454
Laura Fric
Tel: (416) 862-6454
Eric Morgan
Tel:     (416) 862-5871

Lawyers for the Defendant,
Chevron Corporation

# INDEX

**Page**

Recognition and Enforcement Actions ............................................................................1

The Supreme Court of Canada.....................................................................................2

Class Action ..............................................................................................................5

First Instance Case .....................................................................................................6

Unfettered Discretion .................................................................................................7

Meritorious and Just Appeal .......................................................................................8

Undue Delay ..............................................................................................................9

Tactical Motion .........................................................................................................11

The Proceedings........................................................................................................14

The Appeal ...............................................................................................................16

Meritorious Appeal ...................................................................................................17

The Execution Act .....................................................................................................20

Costs Appeal .............................................................................................................23

## RECOGNITION AND ENFORCEMENT ACTIONS

*Security for Costs*

1.      In this very case the Supreme Court of Canada, in September 2015, made it crystal clear that it mandated a new approach that courts must employ with respect to all aspects of an action for recognition and enforcement of a foreign judgment.  Over and over the Court explained that "distinct principles" and a "crucial difference" exist between an action at first instance and an action to recognize and enforce a foreign judgment.  This recognition and enforcement action is not to be equated with an action at first instance.  The cases relied on by the Respondents are all actions at first instance.

2.      The Court stated strongly that the principles of comity and reciprocity for judgments of foreign courts were fundamental to recognition and enforcement actions.   These principles require that the court facilitate prosecution of the recognition and enforcement actions, not raise any barriers to impede it.

3.      The principle of facilitation makes logical sense because, in almost every such action, the Plaintiff will be a foreigner, an out of province or country resident, seeking to collect on a judgment of debt ordered by a foreign court.  To require such a Creditor Plaintiff to post security raises barriers particularly after the Plaintiffs, in this case, have endured an eight year trial and two appeals and have succeeded at all levels.  The imposition of a security for costs order victimizes the Plaintiffs a second time.

4.      Chevron, many years ago, withdrew all of its assets from Ecuador.  As a consequence the Plaintiffs had no choice but to pursue recognition and enforcement of their Judgment in a

foreign jurisdiction and, whichever one they chose, they would be presenting themselves as a non-resident.   A judgment creditor who must seek enforcement of his judgment because of the actions of the judgment debtor withdrawing its assets from the jurisdiction ought not, for fairness and, in equity, face a security for costs motion.   It becomes a barrier and contravenes the principle of "facilitation" articulated by the Supreme Court.   What should Plaintiffs do if they cannot post security for costs?   Let their judgment languish?   That cannot be a just result for a claim to remediate environmental damages, a claim under which the individual 30,000 indigenous persons obtain no direct compensable remuneration.

## THE SUPREME COURT OF CANADA[1]

5.      The Supreme Court of Canada has, in September 2015, detailed the manner in which recognition and enforcement actions are to be approached, an approach which markedly differs from a first instance action:

> (a)      *"In a world in which businesses, assets, and people cross borders with ease, courts are increasingly called upon to recognize and enforce judgments from other jurisdictions.   Sometimes, successful recognition and enforcement in another forum is the only means by which a foreign judgment creditor can obtain its due.", para. 1*

> (b)      *"The dispute underlying the appeal originated in the Lago Agrio region of Ecuador.   The oil-rich area has long attracted the*

---

[1] *Chevron Corp. v. Yaiguaje*, 2015 S.C.C., Brief of Authorities, ("BOA"), Tab 1

exploration and extraction activities of global oil companies, including Texaco, Inc. ("Texaco"). As a result of those activities, the region is said to have suffered extensive environmental pollution that has, in turn, disrupted the lives and jeopardized the futures of its residents. The 47 respondents (the "plaintiffs") represent approximately 30,000 indigenous Ecuadorian villagers. For over 20 years, they have been seeking legal accountability as well as financial and environmental reparation for harms they allegedly have suffered due to Texaco's former operations, in the region, Texaco has since merged with Chevron.", para. 4

(c)     "As this review of the Court's statements on comity shows, the need to acknowledge and show respect for the legal acts of other states has consistently remained one of the principle's core components. Comity, in this regard, militates in favour of recognition and enforcement. Legitimate judicial acts should be respected and enforced, not sidetracked or ignored.", para. 53

(d)     "Canadian courts, like many others, have adopted a generous and liberal approach to the recognition and enforcement of foreign judgments.", para. 27

(e)     "Facilitating comity and reciprocity, two of the backbones of private international law, calls for assistance, not barriers.", para. 69

4

(f)  *"Chevron, a U.S. corporation incorporated in Delaware, was served at its head office in San Ramon, California.  Chevron Canada, a Canadian corporation governed by the Canadian Business Corporations Act, R.S.C. 1985, c. C-44, with its head office in Alberta, is a seventh-level indirect subsidiary of Chevron, which has 100 per cent ownership of every company in the chain between itself and Chevron Canada.", para. 9*

(g)  *"Two considerations of principle support the view that the real and substantial connection test should not be extended to an enforcing court in an action for recognition and enforcement.  First, the <u>crucial</u> difference between an action at first instance and an action for recognition and enforcement is that, in the latter case, the only purpose of the action is to allow a pre-existing obligation to be fulfilled.  Second, the notion of comity, which has consistently underlain actions for recognition and enforcement, militates in favour of generous rules.", para. 42 [Emphasis added]*

6.   The Supreme Court of Canada also stated, repeatedly, that in recognition and enforcement actions, the role of the domestic court is to facilitate collection of the judgment debt and not to raise barriers.  Seeking security for costs of a meritorious appeal is Chevron's attempt to impose an insuperable barrier.

> [43] The following comment made by McLachlin C.J. in *Pro Swing* (although in dissent) also reflects this logic: "Barring exceptional concerns, a court's focus when enforcing a foreign judgment is not on

substantive and procedural law on which the judgment is based, but instead on the obligation created by the judgment itself" (para.77)."

Important consequences flow from this observation.  First, the purpose of an action for recognition and enforcement is not to evaluate the underlying claim that gave rise to the original dispute, but rather to assist in enforcing an already-adjudicated obligation.  **In other words, the enforcing court's role is not of substance, but is instead one of facilitation:** *Pro Swing*, at para. 11. The court merely offers an enforcement mechanism to facilitate the collection of a debt within the jurisdiction.  This entails that the enforcing court does not exercise jurisdiction in the same way as it does in action at first instance. In a first instance case like Van Breda, the focus is on whether the court has jurisdiction to determine merits of a substantive legal claim; in a recognition and enforcement case, the court does not create a new substantive obligation, but instead assists with the fulfillment of an existing one.

### This Case is a Class Action

7.    This case is, in pith and substance a class action.  In form it cannot, and indeed no recognition and enforcement action can, be a class action in Ontario.  But the Court should recognize the underlying claim for its substance, a class action of 47 Plaintiffs representing 30,000 indigenous people.

8.    Class actions, at first instance, were permitted precisely to enhance access to justice and to allow many persons to collectively advance claims arising out of a common occurrence, be it factual or legal.  Environmental claims are a prime example of the quintessential class action.  Having succeeded in Ecuador in obtaining a judgment, and having also, in addition, impliedly succeeded in Ontario in a obtaining judgment for recognition and enforcement of the Ecuadorian judgment, it would be contrary to the Supreme Court of Canada's mandated principle to erect the barrier of security for costs.

9.    Class action claims, even at first instance, benefit from a much wider exercise of discretion where the judge can take into account whether the action is in public interest, is a test case or raises a novel point of law in diminishing or eliminating a costs order against

6

a class. This case encompasses all three criteria. And when viewed in the context of a successful judgment in Ecuador and impliedly, a successful judgment in Ontario, no barrier to the appeals should be imposed by the Court.[2]

## APPLICABLE PRINCIPLES IN FIRST INSTANCE CASES

10.   In any event, and in the alternative, principles applicable to actions at first instance always permit a meritorious appeal to proceed.

11.   Rule 63.01 provides that there is an automatic stay, pending disposition of the appeal of any provision of an order for the payment of money:

> 63.01(1) The delivery of a notice of appeal from an interlocutory of final order stays, until the disposition of the appeal, any provision of the order for the payment of money, except a provision that awards support or enforces a support order.

12.   This includes any Order for the payments of costs. Were it not for the mere fact that the Appellants reside outside Ontario, the only circumstance relied upon by the Respondents, there could not be a request for an order for security for costs pending appeal.

13.   A most important fact to remember is that the monies owed by Chevron Corp. are not to be paid to the 30,000 indigenous people represented by the 47 Appellants but to a Trustee who is required to remediate the lands and waters damaged by Chevron Corp.'s drilling and oil exploitation activities. The benefit to the Appellants is a return to a healthy living standard, clean water, safe food and improved health.

---

[2] S. 12 and 31(1) of the *Class Proceeding Act*

14.   The following principles apply to the determination whether security for costs will be granted.  The application of these principles to the facts and circumstances of the pending appeals should lead to the conclusion that no security for costs be granted.

## BROAD DISCRETION – JUST AND MERITORIOUS PROCEEDING

15.   The Court retains a broad discretion whether or not to grant security for costs.  A Respondent is not entitled as of right to an Order for security for costs of an appeal.  The overarching principle to be applied to all the circumstances is the fairness of the Order sought.  Where a claim involves the issue of exigibility of assets, after the Plaintiffs, Appellants succeeded in an 8 year trial in Ecuador and implicitly obtaining a Judgment in Ontario enforcing the Ecuadorian judgment it is just and right that the matter proceed to appeal without restriction or impediment.

> [16] Rule 61.06(1) affords three discrete bases upon which a judge may order an appellant to provide security for costs of an appeal:
>
> i.   there is good reason to believe that the appeal is frivolous and vexatious and that the appellant has insufficient Ontario assets to pay the appeal costs;
>
> ii.   an order for security for costs could be made again the appellant under Rule 56.01; or
>
> iii.   there is some other good reason to order security for costs.
>
> [17] The language of Rule 61.06 is permissive, not mandatory.  A respondent is not entitled as of right to an order for security for costs for the appeal.  The permissive "may" and not the imperative or mandatory "shall" frames the authority to make the order.  Even if the respondent meets the requirements in the applicable paragraph of Rule 61.06(1), the permissive "may" would seem to reserve to the motion judge a vestige of discretion to refuse the order.  The overarching principle to be applied to all the circumstances is the justness of the order sought.[3]

---

[3] *Scott Pickard and London Police Services Board*, 2010 ONCA 643 at paras. 16 and 17, BOA, Tab 2

16.     The enforcement of the Ecuadorian Judgment from the National Court of Cassation is a just proceeding.  The collection of a judgment debt to remediate lands and waters is on all fours with the Supreme Court's statements on comity:

> [53] As this review of the Court's statements on comity shows, the need to acknowledge and show respect for the legal acts of other states has consistently remained one of the principle's core components. Comity, in this regard, militates in favour of recognition and enforcement. Legitimate judicial acts should be respected and enforced, not sidetracked or ignored.
>
> [1] In a world in which business, assets, and people can cross borders with ease, courts are increasingly called upon to recognize and enforce judgments from other jurisdictions.  Sometimes, successful recognition and enforcement in another forum is the only means by which a foreign judgment creditor can obtain its due.

17.     This Court should exercise its discretion in favour of allowing these appeals to proceed and to be disposed on its merits.

## A MERITORIOUS APPEAL TRUMPS ALL OTHER CONSIDERATIONS

18.     There is ample authority for the proposition that Courts are reluctant to deprive a worthy litigant of the opportunity to have his or her claim adjudicated when it is not plainly devoid of merit:

> [18]  Despite the value that the law places on finality, there will be situations in which other legitimate interests outweigh finality concerns.  In *Larabie v. Montfils* (2004), 44 C.P.C. (5th) 66 (Ont. C.A.), Blair J.A. refused to order security for costs despite the fact that the respondent was impecunious and had failed to pay previous costs awards.  He refused because a "worthy but impecunious litigant" should not be deprived of the opportunity to have his claim adjudicated "when it is not plainly devoid of merit".  Blair J.A. was satisfied that ordering security for costs would

prevent the appellant from continuing with the appeal. I am satisfied that this case presents a similar situation.[4]

19.     The issues in these summary judgment appeals are neither frivolous nor vexatious. They are meritorious, indeed likely to succeed. The collection of a debt owed by the Parent Chevron Corp. ("Chevron Parent") can be collected from the shares and assets of its 100% wholly owned subsidiary Chevron Canada. As the Supreme Court of Canada stated in this very case regarding Chevron Canada, at paragraphs 92 and 93:

> "The subject matter of recognition and enforcement proceedings is the collection of a debt. A debt is enforceable against any and all assets of a given debtor, not merely those that may have a relationship to the claim."

> "In this respect, the subject matter of the claim is not the Ecuadorian events that led to the foreign judgment to which Chevron Canada is a stranger, but rather, at least arguably, the collection of a debt using shares and assets that are alleged to be available for enforcement purposes. In an enforcement process like this for the collection of a debt against a third party, assets in the jurisdiction through the carrying on of business activities are undoubtedly tied to the subject matter of the claim. From that standpoint, seizeable assets are not merely the subject matter of the dispute, they are its core. In this regard the third party is the direct object of the proceedings." [emphasis added]

**UNDUE DELAY**

20.     Security for costs will not be awarded where there has been delay on behalf of the moving party. The appeals in this matter have been fixed to be heard on October 10 and 11, 2017. The appeals have been perfected by the Appellants; Facta and all other materials have been served and filed.

> [37] I decline to award security for costs for the appeal, again because GM's delay and prejudice it has caused.
>
> …

---

[4] *Royal Bank of Canada v. Korman*, 2009 ONCA 590 at para. 18, BOA, Tab 3; *J.L v. Monfils*, [2004] O.J. No. 179 (C.A.) at para. 17, BOA, Tab 4

> [42] GM has, by its actions, allowed Trillium to perfect its appeal at great
> expense. This is no small matter. The complicated nature of the appeal is
> evidenced by the length of the factum filed by Trillium, which runs over
> 90 pages and the supporting materials that have been prepared and filed, it
> would not be just to make an order for security for costs at this late stage.[5]

21.    Chevron Parent is a sophisticated litigant with the benefit of a vast and highly
sophisticated legal team. It therefore ought to have been well aware of the possibility of
bringing a motion for security for costs in Canada for many years. This Honourable Court
should view its motion now with a high degree of suspicion and circumspection. Security
for costs motions may not be granted in favour of defendants who bring them as veiled
summary judgment motions to bar meritorious claims.[6]

22.    Chevron Corp. has known for more than 20 years that the Plaintiffs reside solely in
Ecuador. Chevron Parent has never sought costs in the eight years of litigation in the
U.S.A. (1993 – 2002), in nine years of litigation in Ecuador (2003 – 2012) nor has it or
Chevron Canada sought security for costs in five years of litigation in Canada (2012 –
2017). If a regime for security for costs was available in Ecuador it can be inferred that,
Chevron has intentionally delayed or has known that the Plaintiffs were impecunious and
unable to post security for costs. If such a regime was not available, then it ought not to be
imposed in an action for recognition and enforcement where the principle is facilitation of
the judgment of a foreign court.

23.    Most notably Chevron Parent and Chevron Canada served and filed their Statements of
Defence in September 2015 after the Supreme Court of Canada ruled that the Ontario

---

[5] *Trillium Motor World Ltd. and General Motors of Canada Limited and Cassels Brock & Blackwell LLP*, 2016
ONCA 702 at paras. 37 and 42, BOA, Tab 5
[6] *Intellibox Concepts Inc. v. Intermec Technologies et al.*, [2005] O.J. No. 1087 (S.C.J.) at para. 6, BOA, Tab 6

Court had jurisdiction over those two companies.  From then until November 2016 there was voluminous production of documents (7,000 pages), cross examinations on Affidavits, interlocutory motions and then four days of motions before Justice Hainey in September and November, 2016.  No motion for security for costs was brought during this entire period:

> [10] In this case 137 did not move for security before trial and only moved on the eve of the date set for oral argument of these appeals.  While this might not always be fatal to a claim for security for the trial costs, it is a factor to be taken into account in relation to the delay point I will consider later in this endorsement.
>
> [12] The claim for security for costs was brought on the eve of the date set for oral argument of these appeals.  All of the information relied upon by 137 in support of its contention that Ravenda has no assets has been available to it for a considerable period of time.  Ravenda had made substantial disclosure through the discovery process of its financial statements.  137 proceeded in these actions for several years without requesting security for costs.  I do not accept the submission that 137 had to wait until after the two appeals are joined together to be argued in this Court.  While there are cases in which security costs has been ordered after perfection of an appeal, it remains within the discretion of the judge of this Court to refuse an order on grounds of delay:  see *Trillium Motor World Ltd. v. General Motors of Canada Ltd.* 2015 ONCA 702 at para. 43.[7]

## A TACTICAL NOT BONA FIDE MOTION

24.     The motions now brought on the eve of the appeal are tactical and aimed at avoiding the appeal.  This Court has stated:

> [67] Once the Ecuadorian courts made their decision, Chevron chose not to abide by them.
>
> Indeed, Chevron sought and obtained a global injunction from a New York federal district court barring the enforcement of the Ecuadorian judgment in any court in any country in the world:  Chevron Corp. v. Donziger, 768 F. Supp. 2d 581 (S.D.N.Y. 2011). The United States Court

---

[7] Endorsement of Sharpe J.A., *Ravenda Homes Ltd. v. 1372708 Ontario Inc.*, M47591, BOA, Tab 7

of Appeals for the Second Circuit reversed this decision and remitted the case to the district court with instructions to dismiss Chevron's declaratory judgment claim in its entirety: Chevron Corporation v. Naranjo, 667 F. 3d 232 (2d Cir. 2012).

[68] Now the Ecuadorian plaintiffs have decided to try to have the Ecuadorian judgment enforced in Ontario. Chevron's response is to contest the jurisdiction of the Ontario court; it has not attorned to its jurisdiction.

[69] The picture from the above history is an obvious one. For 20 years, Chevron has contested the legal proceedings of every court involved in this litigation – in the United States, Ecuador and Canada. Chevron even sought and briefly obtained, a global injunction against enforcement of the Ecuadorian judgment.

[71] In the end, I agree with what Pepall J. said in BNP Paribas (Canada), at para. 12:

As set out in Morguard v. De Savoye Investments Ltd. [1990] 3 S.C.R. 1077, the purpose of comity is to secure the ends of justice and contemplated the recognition of judgments in multiple jurisdictions. The court should grant its assistance in enforcing an outstanding judgment, not raise barriers.

[72] This case cries out for assistance, not unsolicited and premature barriers.[8]

25.    Although the Chevron companies brought these motions on non-residency they have, disingenuously, raised the issue of impecuniosity. Chevron knows from 20 years of litigation that neither the remediation trustee nor the indigenous appellants can fund the litigation. Chevron has known about past third party funding and has impeded any future funding:

(a)    In December 2012 Chevron Corp. brought a claim against Russell DeLeon, a funder of the Ecuadorian litigation seeking damages and an injunction against further funding of any prosecution of the action or any enforcement proceedings. The claim was settled by Settlement Agreement of February 13, 2015. The DeLeon parties agreed "irrevocably and forever to cease funding or in any way deliberately aiding or abetting…" the Plaintiffs.[9]

---

[8] *Yaiguaje v. Chevron Corporation*, 2013 ONCA 758, BOA, Tab 8
[9] Responding Motion Record, Tab 1

(b)    In June 2014 it brought a claim against a funder, Woodsford Litigation Funding Limited, in the Supreme Court of Gibraltar claiming an injunction against it from any further funding of the case or its enforcement efforts. That claim was settled by Settlement Agreement on May 1, 2015 whereby the Woodsford parties agreed to cease funding or aiding directly or indirectly the plaintiffs in the matter.[10]

(c)    By Settlement and Release Agreement dated May 7, 2014, Chevron Corp. agreed with Patton Boggs, a U.S. law firm that had "represented or advised" the Appellants with respect to the Ecuadorian proceedings "including in connection with efforts to enforce the Lago Agrio Judgment" (the Ecuadorian Judgment) that Patton Boggs would immediately cease and desist from all further assistance to the Appellants and that Patton Boggs would pay USD 15 million to Chevron's attorneys and that Patton Boggs' partners would make themselves available for deposition by Chevron including producing its work product documents.[11]

26.    Lastly, as Nordheimer J. concluded in *Intellibox Concepts Inc. v. Intermec Technologies et al.*, security for costs should not be ordered where counsel is working on a contingency fee basis, as is the case here:

> [12]    As I have noted, the logical extension of ordering security for costs to be posted by an impecunious corporate plaintiff by reason of the fact that its solicitors are operating on a contingency fee basis is, in effect to require those solicitors to provide the security. Solicitors who make legal services available based on contingency fee arrangements with clients, who could not otherwise afford to litigate a claim, assume the risk that they may not be paid for their work unless a favourable result is achieved. To require those solicitors to assume the additional burden of posting security for costs, with the concomitant risk of losing those funds (in additional to going unpaid for their own services), would impose a significant disincentive to contingency fee arrangements would run contrary to the very rationale by which they are permitted. In my view, it wold be incongruous to interpret the Rules of Civil Procedure in such a fashion.[12]

---

[10] Responding Motion Record, Tab 2
[11] Responding Motion Record, Tab 3
[12] *Intellibox Concepts Inc. v. Intermec Technologies et al.*, [2005] O.J. No. 1087 (S.J.C.) at para. 12, BOA, Tab 6

14

## THE PROCEEDINGS

27.     The core of this case is about Chevron Parent's refusal to pay $9.51 billion to remediate 1,500 square kilometres of toxic contamination that is deposited, from 1972 to 1990, on the lands, rivers, streams and ponds in the Ecuadorian Amazon.  The Appellants represent 30,000 indigenous people who drink and bathe in polluted waters, eat crops grown on contaminated lands, and continue to suffer illness, disease, and premature deaths.  This case is not about preventing potential damage.  It is about paying for the remediation of massive environmental contamination.  The Appellants will not receive any monetary proceeds.  Their struggle is to once again eat healthy food, drink clean water, breathe unpolluted air and stop health deterioration.

28.     In 1993, the Appellants filed a class action against Texaco, Inc., the predecessor to Chevron, in the U.S.A.  Chevron argued that the class action properly belonged in Ecuador as it had everything to do with Ecuador and nothing to do with the U.S.A.  The United States' 2nd Circuit Court of Appeals granted Chevron its wish based on promises and undertakings given to the Court which included:

   a) a promise to accept service of process in Ecuador and not to object to the civil jurisdiction of a court of competent jurisdiction in Ecuador;

   b) a recognition of the binding nature of any judgment issued in Ecuador; and

   c) "Texaco also offered to satisfy any judgments in Plaintiffs' favor, reserving its right to contest their validity only in the limited circumstances permitted by New York's Recognition of Foreign Country Money Judgment Act."

Chevron now resiles from those undertakings and states:

> We're going to fight this until hell freezes over.  And then we'll fight it out
> on the ice.[13]

29.     From 2003 to February 2011, Chevron defended itself vigorously in an eight year trial that

featured 216,000 pages of evidence, examinations and cross-examinations, more than 100

expert reports, 50 well-site visits and approximately 1,000 in-trial motions.     A

Remediation Judgment was issued on February 14, 2011.   Chevron appealed to the

Intermediate Court of Appeal, which undertook a *de novo* review of the evidentiary record

and legal submissions.  Chevron fully participated by filing significant, comprehensive

briefs.    The Intermediate Court of Appeal rendered its Judgment in January 2012

upholding the Remediation Award.  Chevron then further appealed to Ecuador's National

Court of Cassation which upheld the Remediation Award of $9.51 billion to be paid to a

trustee to remediate the contaminated lands and water and to provide health clinics to treat

the thousands of ill and diseased indigenous people.

30.     In 2012 in response to an Amended Statement of Claim, Chevron Parent and Chevron

Canada each filed jurisdiction motions contesting the jurisdiction of the Superior Court of

Justice to hear the recognition and enforcement action.  The Chevron companies lost the

jurisdiction arguments before Brown J., as he then was, before an unanimous Court of

Appeal and before a unanimous SCC, which rendered its judgment in September 2015.

---

[13] *Yaiguaje v. Chevron Corporation*, 2013 ONCA 758 at para. 74, BOA, Tab 8

## SUMMARY JUDGMENT BEING APPEALED ON OCTOBER 10 AND 11, 2017

31.     Chevron Canada and Chevron Parent brought motions for summary judgment to strike the action against the Chevron Canada, Chevron Parent's subsidiary, on the premise that there could only be an enforceable judgment in Ontario against the assets of Chevron Parent.

32.     The Supreme Court of Canada determined that Chevron Canada, not a party to the Ecuadorian judgment and a 7th level wholly-owned subsidiary of Chevron Parent, was a proper defendant in Ontario where there was a claim for execution of its shares and assets. The SCC stated that all assets of a judgment debtor were exigible and that Chevron Canada was, arguably, an exigible asset.

> [92] In the recognition and enforcement context, it would hardly make sense to require that the carrying on of business in the province relate to the subject matter of the dispute.  The subject matter of recognition and enforcement proceedings is the collection of a debt.  A debt is enforceable against any and all assets of a given debtor, not merely those that may have a relationship to the claim.
>
> [93] Second, one aspect of the plaintiffs' claim in this case is for enforcement of Chevron's obligation to pay the foreign judgment using shares and assets of Chevron Canada to satisfy its parent corporation's debt obligation.  In this respect, the subject matter of the claim is not the Ecuadorian events that led to the foreign judgment to which Chevron Canada is a stranger, but rather, at least arguably, the collection of a debt using shares and assets that alleged to be available for enforcement purposed.  In an enforcement process like this for the collection of a debt against a third party, assets in the jurisdiction through the carrying on of business activities are undoubtedly tied to the subject matter of the claim. From that standpoint, <u>seizable assets are not merely the subject matter of the dispute, they are its core.</u> [emphasis added]

33.    The Supreme Court of Canada also stated, repeatedly, that in a recognition and enforcement action of a foreign judgment, the role of the domestic court is to facilitate collection of the judgment debt and not to raise barriers.  Seeking security for costs of a meritorious appeal is Chevron's attempt to impose an insuperable barrier.

[43] The following comment made by McLachlin C.J. in *Pro Swing* (although in dissent) also reflects this logic: "Barring exceptional concerns, a court's focus when enforcing a foreign judgment is not on substantive and procedural law on which the judgment is based, but instead on the obligation created by the judgment itself" (para.77)."

Important consequences flow from this observation. First, the purpose of an action for recognition and enforcement is not to evaluate the underlying claim that gave rise to the original dispute, but rather to assist in enforcing an already-adjudicated obligation. **In other words, the enforcing court's role is not of substance, but is instead one of facilitation:** *Pro Swing*, at para. 11. The court merely offers an enforcement mechanism to facilitate the collection of a debt within the jurisdiction. This entails that the enforcing court does not exercise jurisdiction in the same way as it does in action at first instance. In a first instance case like Van Breda, the focus is on whether the court has jurisdiction to determine merits of a substantive legal claim; in a recognition and enforcement case, the court does not create a new substantive obligation, but instead assists with the fulfillment of an existing one. [emphasis added]

## A MERITORIOUS APPEAL

34.     Whose asset is Chevron Canada? It must be someone's. The motion judge is incorrect when he characterizes it as an orphan.

35.     At paragraph 23 the motions judge identifies the issue:

> [23]   The parties agree that this is an appropriate case for summary judgment. Therefore, the only issues that I must decide on this motion are the following:
>
> (a)     Are the shares and assets of Chevron Canada exigible and available for execution and seizure pursuant to the Execution Act to satisfy the Ecuadorian judgment against Chevron?
>
> (b)     If they are not, should Chevron Canada's corporate veil be pierced so that its shares and assets are available to satisfy the Ecuadorian judgment against its indirect parent, Chevron?

36.     Hainey J. answered the first question at paragraph 36 with the astonishing conclusion that Chevron Canada is not an asset of anyone, not even of its direct parent Chevron Canada Capital

Corporation ("**CCCC**"). In error, the motion judge, at the very outset of his analysis, embarked on

a wrong principle which coloured the remainder of his analysis:

> Chevron Canada is not an asset of Chevron. It is a separate legal person. It
> is not an asset of any other person including its own parent, CCCC. The
> Supreme Court of Canada confirmed this in *BCE Inc. v. 1976
> Debentureholders*, where the court stated, "While the corporation is
> ongoing, shares confer no right to its underlying assets.[14]

37.     The action in Ontario is simply one for the collection of a judgment debt, and not one to

establish liability. "Different principles" and "a crucial difference" underlie "actions for

recognition and enforcement as opposed to actions at first instance." Hainey J failed to follow the

mandate of the Supreme Court of Canada and approached the central issue as though this were an

action at first instance.

> [42] Two considerations of principle support the view that the real and
> substantial connection test should not be extended to an enforcing court in
> an action for recognition and enforcement. First, the crucial difference
> between an action at the first instance and an action for recognition and
> enforcement is that, in the latter case, the only purpose of the action is to
> allow a pre-existing obligation to be fulfilled. Second, the notion of
> comity, which has consistently underlain actions for recognition and
> enforcement, militates in favour of generous enforcement rules.[15]

38.     Hainey J. also misunderstood and misapplied *BCE Inc. v. 1976 Debentureholders*. It does

not hold that, after judgment, shareholders cannot seize assets. Quite the contrary.

39.     The only relevant facts are those that follow:

- Chevron Canada is a 7th level wholly-owned subsidiary of Chevron
  Parent.

---

[14] Reasons of Hainey J. at para. 36, Motion Record of Chevron Canada Limited (Security for Costs), Tab 2G

[15] *Chevron Corp. v. Yaiguaje* at para. 42, BOA, Tab 1

- All intervening subsidiaries are 100% wholly-owned by Chevron Parent.

- All intervening subsidiaries are all holding companies only – holding title to all the shares of each subsidiary in the line below it.

- None of the intervening wholly-owned subsidiaries are engaged in Chevron Parent's business activities, the exploration for, production of and distribution and sale of oil and gas.

- Chevron Parent itself is a merely a holding company. As the motion judge found "Chevron does not itself engage in the exploring, producing, refining or marketing petroleum products; those activities are carried on by its indirect subsidiaries."

- Every single director and officer of Chevron Parent's wholly-owned subsidiaries is a direct employee of Chevron Parent or employees of a direct or indirect subsidiary of Chevron Parent. There is not one outside, independent person in the chain of officers and directors. For example, Frank Soler and Karl Endries, who are directors of four of the subsidiaries, are employees of Chevron Parent in the corporate governance and secretary's office.

- As this Court stated at paragraph 38 of its Reasons on the jurisdiction motion: "Furthermore Chevron's [Parent] income is wholly derived from dividends from indirect subsidiaries that carry out its actual business functions, which include Chevron Canada."[16]

40.     None of these facts are in dispute. Chevron Parent owns a subsidiary that in turn owns a subsidiary, all the way down the line to Chevron Canada. Chevron Parent is a holding company that does not itself engage in the extraction or production activities of the business. All revenue obtained by it flows up from its operating subsidiaries including Chevron Canada.

41.     Does Chevron Parent own Chevron Canada? Yes. Can Chevron Parent sell Chevron Canada? Yes. Can Chevron Parent replace the directors of Chevron Canada? Yes. Can Chevron Parent wind up or dissolve Chevron Canada and distribute its assets? Yes. Who else owns Chevron Canada? No one.

---

[16] *Yaiguaje v. Chevron Corp.*, 2013 ONCA 758 at para. 38, BOA, Tab 8

42.     The above criteria are the essential hallmarks of ownership.  100% ownership by Chevron Parent of all the shares of every company in the chain means ownership of the shares and assets of Chevron Canada.

## THE EXECUTION ACT

43.     To conclude otherwise, as the motion judge did, means that a polluter who has been adjudged liable in Ontario to pay USD $9.51 billion for remediation costs can escape its obligations because all its assets are held by a subsidiary. Such a proposition is illogical, makes a mockery of what ownership means, is contrary to justice, and is an escape into fiction.  As a matter of law, such an outcome is in direct violation of the *Execution Act*, which intended to use the broadest definition of "interest" or "right" as possible.[17]

44.     The motion judge erroneously interpreted and misapplied the *Execution Act*. In fact, he never addressed or analyzed the words of the *Execution Act*. He never offered any explanation for the plain language of its provisions.

45.     The sections of the *Execution Act* that state what may be seized in respect of a judgment debt contain words of the widest import and reach, including "the interest ... in a security or a security entitlement", "dividends", "distributions", "interest" and "other rights to payment in respect of a security", any "equitable right" or "**other right**":

> **Seizure of execution debtor's interest in security, security entitlement**
> 14. (1) The interest of an execution debtor in a security or security entitlement may be seized by the sheriff in accordance with sections 47 to 51 of the *Securities Transfer Act, 2006*.
> Seizure includes dividends, other rights to payment

---

[17] *Execution Act*, R.S.O. 1990, c. E.24, s. 18, Respondent's Factum, Schedule "B"

> 14(3)   Every seizure and sale made by the sheriff shall include all dividends, distributions, interest and other rights to payment in respect of the security, if issued by an issuer incorporated or otherwise organized under Ontario law, or in respect of the security entitlement and, after the seizure becomes effective, the issuer or securities intermediary shall not pay the dividends, distributions or interest or give effect to other rights to payment to or on behalf of anyone except the sheriff or a person who acquires or takes the security or security entitlement from the sheriff.
>
> 18(1)   <u>The sheriff may seize and sell any equitable or other right, property, interest or equity of redemption in or in respect of any goods, chattels or personal property</u>, including leasehold interests in any land of
> ...[18]

46.     The language of the *Execution Act* extends far beyond the confines of legal title. The *Act* would not be necessary if it only addressed assets directly held by a judgment debtor. By including broad statutory language indicating that it covers not only legal assets of the judgment debtor but "**equitable**" rights or even more broadly any "**other right**", "**property**", "**interest**", the Legislature clearly intended that a judgment debtor should pay its obligations; and that technical arguments based on direct ownership should not allow any escape from payment of a judgment debt. Courts are required to facilitate the collection of a judgment debt, not raise technical arguments as barriers.

47.     As this Court found, millions of dollars of dividends flow annually from Chevron Canada to Chevron Parent.[19] The motion judge did not address the ability to seize those dividends. Section 14(3) of the *Act* makes it clear that dividends can be seized. The motion judge completely ignored the finding of this Court regarding dividends and the Act's authorization for their seizure. And it makes no logical sense that if dividends can be seized, that the assets that generate those dividends cannot.

---

[18] *Execution Act*, R.S.O. 1990, c. E.24, ss. 14(1) and (3), Respondents' Factum, Schedule "B"

[19] *Yaiguaje v. Chevron Corporation, 2013 ONCA 758* at para. 38, BOA, Tab 8

48.     Likewise, as the Supreme Court of Canada found in *BCE*, on a wind-up, shareholders have a right to a proportionate share of the assets. Shareholders therefore have a conditional right to the company's assets – a "right" within the meaning of the *Execution Act*.

49.     The full Factum is included at Tab 4 of the Responding Motion Record to demonstrate the meritorious arguments being advanced, regarding corporate separateness and piercing the corporate veil.[20]

## QUANTUM – IN THE ALTERNATIVE

50.     If security for costs is ordered, the quantum for both Respondents should not exceed $50,000 in the aggregate.

51.     The legal arguments to be advanced in the Court of Appeal will be the fourth time they have been canvassed.  A review of the excerpts from the Facta before the Supreme Court of Canada and before Hainey J. plainly demonstrate identical and recycled arguments regarding corporate separateness and veil piercing.  Little preparation will be necessary to press those arguments for the fourth time.  These excerpts are included in the Supplementary Appeal Book and Compendium to the Costs Appeal which has been perfected.  They are also included in the Responding Motion Record.[21]

52.     The positions of Chevron Canada and of Chevron Parent on the factual and legal arguments are identical.  Both seek only one remedy , the removal of Chevron Canada as a

---

[20] Factum of the Appellants on the Appeal, Responding Motion Record, Tab 4

[21] Excerpts of Factum of Chevron Corporations, Responding Motion Record, Tab 5

Defendant in the action.  Counsel for Chevron Canada will carry the argument and counsel for Chevron Parent will adopt those arguments with little addition.

## APPEAL OF THE COSTS BELOW

53.     If the appeals are allowed, as is probable, the Respondents will be deprived on their costs and, instead Costs, will be awarded to the Appellants both of the motions below and the appeals.

54.     If the appeals are dismissed, then the Appellants have challenged the excessive quantum of costs awarded by Hainey J.  Hainey J.'s costs award was issued on May 26, 2017 after the main appeals were perfected.  As a consequence the Appellants have filed a supplementary appeal regarding the quantum of costs and have perfected that appeal.  The Factum is included at Tab 6.[22]

55.     A few of the errors of law and of principle are:

    (a)     The motions judge allowed form to trump substance.  He failed to appreciate that the underlying action was a class action and that the recognition and enforcement of a foreign judgment could never be presented as a class action;

    (b)     As a result he failed to apply the principles of novel point of law, test case and public interest which apply not only to class actions but more generally.  Had he done so he not have awarded costs to the Respondents or would have done so in a very modest amount pursuant to the principles expounded in *Edward v. Law Society of Upper Canada*, [1998] O.J. No. 6192, *Brown v. Canada (Attorney General)*, [2013] O.J. No. 174 at para. 59, *McCracken v. Canadian National*

---

[22] Factum of the Appellants on Costs Appeal, Responding Motion Record, Tab 6

*Railway Co.*, [2012] O.J. No. 5716 at para. 82 and *Moyes v. Fortune Financial Corp.*, [2002] O.J. No. 4298.

**RELIEF REQUESTED**

56.    It is respectfully submitted that the motions be dismissed with costs.

**ALL OF WHICH IS RESPECTFULLY SUBMITTED** this 19th day of June, 2017.

Alan J. Lenczner, Q.C.

Brendan F. Morrison

Kirk M. Baert

Celeste Poltak

Garth Myers

**LENCZNER SLAGHT ROYCE
SMITH GRIFFIN LLP**
Barristers
Suite 2600
130 Adelaide Street West
Toronto ON  M5H 3P5

Alan J. Lenczner, Q.C. (11387E)
Tel:      (416) 865-3090
Fax:      (416) 865-2844
Email:   alenczner@litigate.com
Brendan F. Morrison (61635B)
Tel:      (416) 865-3559
Fax:      (416) 865-3731
Email:   bmorrison@litigate.com

**KOSKIE MINSKY LLP**

900-20 Queen Street West
Toronto, ON  M5H 3R3

Kirk M. Baert  (30942O)
Tel: (416) 595-2092
Fax: (416) 204-2889
Email: kmbaert@kmlaw.ca

Celeste Poltak  (46207A)
Tel: (416) 595-2701
Fax: (416) 204-2909
Email: cpoltak@kmlaw.ca

Garth Myers (62307G)
Tel: (416) 595-2102
Fax: (416) 977-3316
Email: gmyers@kmlaw.ca

Lawyers for the Plaintiffs (Appellants)

## SCHEDULE "A"

## LIST OF AUTHORITIES

1.   *Chevron Corp. v. Yaiguaje*, 2015 SCC 42

2.   *Scott Pickard and London Police Services Board*, 2010 ONCA 643

3.   *Royal Bank of Canada v. Korman*, 2009 ONCA 590

4.   *J.L v. Monfils*, [2004] O.J. No. 179 (C.A.)

5.   *Trillium Motor World Ltd. and General Motors of Canada Limited and Cassels Brock & Blackwell LLP*, 2016 ONCA 702

6.   *Intellibox Concepts Inc. v. Intermec Technologies et al.*, [2005] O.J. No. 1087 (S.J.C.)

7.   Endorsement of Sharpe J.A., Ravenda Homes Ltd. v. 1372708 Ontario Inc., M47591

8.   *Yaiguaje v. Chevron Corporation*, 2013 ONCA 758

## SCHEDULE "B"

## TEXT OF STATUTES, REGULATIONS & BY-LAWS

### *Class Proceedings Act, 1992, S.O. 1992, c. 6*

12   The court, on the motion of a party or class member, may make any order it considers appropriate respecting the conduct of a class proceeding to ensure its fair and expeditious determination and, for the purpose, may impose such terms on the parties as it considers appropriate. 1992, c. 6, s. 12.

31(1)   In exercising its discretion with respect to costs under subsection 131 (1) of the Courts of Justice Act, the court may consider whether the class proceeding was a test case, raised a novel point of law or involved a matter of public interest. 1992, c. 6, s. 31 (1).

### *Execution Act, R.S.O. 1990, c. E.243*

14(1) The interest of an execution debtor in a security or security entitlement may be seized by the sheriff in accordance with sections 47 to 51 of the Securities Transfer Act, 2006. 2006, c. 8, s. 143 (1).

14(3) Every seizure and sale made by the sheriff shall include all dividends, distributions, interest and other rights to payment in respect of the security, if issued by an issuer incorporated or otherwise organized under Ontario law, or in respect of the security entitlement and, after the seizure becomes effective, the issuer or securities intermediary shall not pay the dividends, distributions or interest or give effect to other rights to payment to or on behalf of anyone except the sheriff or a person who acquires or takes the security or security entitlement from the sheriff. 2006, c. 8, s. 143 (1).

18. (1) The sheriff may seize and sell any equitable or other right, property, interest or equity of redemption in or in respect of any goods, chattels or personal property, including leasehold interests in any land of the execution debtor, and, except where the sale is under an execution against goods issued out of the Small Claims Court, the sale conveys whatever equitable or other right, property, interest or equity of redemption the debtor had or was entitled to in or in respect of the goods, chattels or personal property at the time of the delivery of the execution to the sheriff for execution, and, where the sale is under an execution against goods issued out of the Small Claims Court, the sale conveys whatever equitable or other right, property, interest or equity of redemption the debtor had or was entitled to in or in respect of the goods, chattels or personal property at the time of the seizure. R.S.O. 1990, c. E.24, s. 18; 2010, c. 16, Sched. 2, s. 3 (26).

DANIEL CARLOS LUSITANDE YAIGUAJE et al.                    -and-        CHEVRON CORPORATION et al.
Plaintiffs                                                                              Defendants
(Appellants)                                                                          (Respondents)

Court File No.: C63309 and C63310
Court File No.:  CV-12-9808-00CL

| | |
|---|---|
| | **COURT OF APPEAL FOR ONTARIO**<br><br>PROCEEDING COMMENCED AT TORONTO |
| | **FACTUM OF THE RESPONDENTS**<br>**ON THE MOTION FOR SECURITY OF COSTS** |
| | **LENCZNER SLAGHT ROYCE**<br>**SMITH GRIFFIN LLP**<br>Barristers<br>Suite 2600<br>130 Adelaide Street West<br>Toronto ON  M5H 3P5<br><br>Alan J. Lenczner, Q.C. (11387E)<br>Tel:      (416) 865-3090<br>Fax:      (416) 865-2844<br>Email:   alenczner@litigate.com<br>Brendan F. Morrison (61635B)<br>Tel:      (416) 865-3559<br>Fax       (416) 865-3731<br>Email:   bmorrison@litigate.com<br><br>Lawyers for the Plaintiffs (Appellants) |