# EXHIBIT 86

# COURT OF APPEAL FOR ONTARIO

CITATION: Yaiguaje v. Chevron Corporation, 2017 ONCA 741
DATE: 20170921
DOCKET: M47811 & M47813 (C63309 & C63310)

Epstein J.A. (In Chambers)

BETWEEN

Daniel Carlos Lusitande Yaiguaje, Benancio Fredy Chimbo Grefa, Miguel Mario Payaguaje Payaguaje, Teodoro Gonzalo Piaguaje Payaguaje, Simon Lusitande Yaiguaje, Armando Wilmer Piaguaje Payaguaje, Angel Justino Piaguaje Lucitante, Javier Piaguaje Payaguaje, Fermin Piaguaje, Luis Agustin Payaguaje Piaguaje, Emilio Martin Lusitande Yaiguaje, Reinaldo Lusitande Yaiguaje, Maria Victoria Aguinda Salazar, Carlos Grefa Huatatoca, Catalina Antonia Aguinda Salazar, Lidia Alexandria Aguinda Aguinda, Clide Ramiro Aguinda Aguinda, Luis Armando Chimbo Yumbo, Beatriz Mercedes Grefa Tanguila, Lucio Enrique Grefa Tanguila, Patricio Wilson Aguinda Aguinda, Patricio Alberto Chimbo Yumbo, Segundo Angel Amanta Milan, Francisco Matias Alvarado Yumbo, Olga Gloria Grefa Cerda, Narcisa Aida Tanguila Narvaez, Bertha Antonia Yumbo Tanguila, Gloria Lucrecia Tanguila Grefa, Francisco Victor Tanguila Grefa, Rosa Teresa Chimbo Tanguila, Maria Clelia Reascos Revelo, Heleodoro Pataron Guaraca, Celia Irene Viveros Cusangua, Lorenzo Jose Alvarado Yumbo, Francisco Alvarado Yumbo, Jose Gabriel Revelo Llore, Luisa Delia Tanguila Narvaez, Jose Miguel Ipiales Chicaiza, Hugo Gerardo Camacho Naranjo, Maria Magdalena Rodriguez Barcenes, Elias Roberto Piyahuaje Payahuaje, Lourdes Beatriz Chimbo Tanguila, Octavio Ismael Cordova Huanca, Maria Hortencia Viveros Cusangua, Guillermo Vincente Payaguaje Lusitande, Alfredo Donaldo Payaguaje Payaguaje and Delfin Leonidas Payaguaje Payaguaje

Plaintiffs (Appellants)

(Responding Parties)

and

Chevron Corporation, Chevron Canada Limited and Chevron Canada Finance Limited

Defendants (Respondents)

(Moving Parties)

Suzy Kauffman, for the moving party Chevron Canada Limited on M47811

Larry P. Lowenstein and Laura Fric, for the moving party Chevron Corporation on M47813

Paul M. Michell, for Chevron Canada Capital Company

Alan J. Lenczner, Q.C., Brendan F. Morrison, Kirk M. Baert, Celeste Poltak and Garth Myers, for the responding parties

Heard: June 27, 2017

**Epstein J.A.:**

[1]     The appeal underlying this motion for security for costs has its genesis in Ecuador. The appellants (the "Ecuadorian plaintiffs") hold a judgment of approximately 9.5 billion dollars from an Ecuadorian court (the "Ecuadorian judgment") against the respondent, Chevron Corporation.[1] The Ecuadorian plaintiffs seek to enforce that judgment in Ontario against Chevron and its seventh level, indirect subsidiary, Chevron Canada.

[2]     Chevron and Chevron Canada initially contested the jurisdiction of Ontario courts to enforce the Ecuadorian judgment. The matter reached the Supreme Court of Canada, which affirmed Ontario's jurisdiction over the Ecuadorian plaintiffs' action: *Chevron Corp v. Yaiguaje*, 2015 SCC 42, [2015] 3 S.C.R. 69.

---

[1] The judgment was originally in the amount of approximately US $18 billion before being reduced to approximately US $9.5 billion by the National Court of Justice of Ecuador in November 2013.

[3]     Following the Supreme Court's ruling, Chevron and Chevron Canada brought motions for summary judgment before the Ontario Superior Court. Both motions sought the dismissal of the Ecuadorian plaintiffs' claims against Chevron Canada, on the basis of its separate corporate personality from Chevron. The Ecuadorian plaintiffs brought a cross-motion for summary judgment, seeking a declaration that Chevron Canada's assets were exigible to satisfy Chevron Corp.'s judgment debt. The Ecuadorian plaintiffs also brought a motion to add Chevron Canada Capital Company ("CCCC") as a defendant to their action, and to strike the defences in Chevron Corp.'s statement of defence.

[4]     The motion judge granted the respondents' motion for summary judgment. He dismissed the Ecuadorian plaintiffs' cross-motion and motion to add CCCC as a defendant, and partially granted their motion to strike. The Ecuadorian plaintiffs appealed all four decisions to this court.[2]

[5]     The respondents now seek an order for security for costs totalling $1,022,951.47: $160,000 for the appeal and the rest for the proceedings below. They submit that such an order is appropriate as the Ecuadorian plaintiffs are not ordinarily resident in Ontario, have not provided evidence of impecuniosity, and have not established a good chance of success in the pending appeal. The Ecuadorian plaintiffs submit that security for costs should not be awarded given

---

[2] The motion to strike is no longer relevant, as in a decision dated April 11, Nordheimer J. (as he then was) refused leave to appeal that aspect of the order. I will make no further reference to it in these reasons.

the merits of their appeal and Chevron's delay in bringing this motion. They also urge this court to adopt a new approach to the law of security for costs, one that displays sensitivity to the principle of international comity and the similarity of this proceeding to a class action.

[6]    For the reasons that follow, I have determined to order security for costs in the amount of $591,335.14 for Chevron Canada, and $351,616.33 for Chevron.

## BACKGROUND

[7]    The judicial history in this case dates back to 1993, and the facts underlying the litigation as far back as 1964. I will provide only those facts relevant to the security for costs motions.

[8]    The Ecuadorian plaintiffs represent approximately 30,000 indigenous villagers from Ecuador's Oriente region. Chevron is a public company, incorporated in Delaware and headquartered in California. Its principal business involves holding shares in subsidiary corporations and managing those investments.

[9]    The Ecuadorian judgment relates to oil extraction activities in the Oriente region between 1964 to 1992 by Texaco Inc., a corporation that merged with Chevron prior to 2003. These extraction activities allegedly caused extensive environmental damage.

5

[10]   Chevron, which has no assets in Ecuador, refused to acknowledge the Ecuadorian judgment following its release in February 2011. The Ecuadorian plaintiffs therefore sought to enforce the judgment in various jurisdictions around the world.

[11]   In lengthy reasons delivered in 2014, Judge Kaplan of the District Court for the Southern District of New York found that the Ecuadorian judgment had been obtained by fraud (the "New York decision") and prohibited the judgment from being enforced in the United States. His decision was upheld by the United States Court of Appeal for the Second Circuit, and the Supreme Court declined to grant *certiorari* for a further appeal.

[12]   In 2012, the Ecuadorian plaintiffs commenced an action in Ontario, seeking to enforce the Ecuadorian judgment against Chevron and Chevron Canada.

[13]   Chevron and Chevron Canada initially disputed whether Ontario courts had *jurisdiction simpliciter* to recognize and enforce the Ecuadorian judgment. This dispute ultimately reached the Supreme Court, which concluded in a decision released in September 2015 (the "*Chevron* decision") that Ontario courts had jurisdiction over the enforcement action.

[14]   However, the Supreme Court was clear that the finding of jurisdiction simply afforded the Ecuadorian plaintiffs the opportunity to seek to enforce the Ecuadorian judgment in Ontario. Success was not guaranteed – Chevron and Chevron

Canada remained free to argue against enforcement based on their separate corporate personality, and any other applicable defences.

[15]    The matter proceeded to the Ontario Superior Court. Chevron and Chevron Canada brought motions for summary judgment to dismiss the Ecuadorian plaintiffs' claim against Chevron Canada. The principal basis for the motions was that Chevron Canada had a separate legal personality from Chevron, and was therefore not liable for Chevron's judgment debts.

[16]    The Ecuadorian plaintiffs brought a cross-motion for summary judgment, seeking a declaration that the assets of Chevron Canada are exigible to satisfy Chevron's judgment debt. They did not allege wrongdoing on the part of Chevron Canada, but instead submitted that Chevron Canada was an asset of Chevron available for execution and seizure pursuant to the *Execution Act*, R.S.O. 1990, c. E.24 to satisfy the Ecuadorian judgment. In the alternative, they argued that the court should pierce the corporate veil between Chevron and Chevron Canada, based on Chevron's effective control over Chevron Canada and the injustice that would otherwise result. The Ecuadorian plaintiffs also brought a motion to add Chevron Canada Capital Company ("CCCC"), a sixth-level subsidiary of Chevron that owns all the shares of Chevron Canada, as a defendant to their action.

[17]    In reasons dated January 20, 2017, the motion judge granted Chevron and Chevron Canada's summary judgment motions and dismissed the Ecuadorian plaintiffs' cross-motion. In separate reasons, dated January 25, 2017, the motion

judge refused to allow the Ecuadorian plaintiffs to amend their statement of claim by adding CCCC.

[18]   As to the summary judgment motions, the motion judge concluded that Chevron Canada was not an asset of Chevron, but rather a separate legal person. Chevron Canada was therefore not exigible and available for execution and seizure pursuant to the *Execution Act*. The motion judge rejected the Ecuadorian plaintiffs' submission that Chevron enjoyed an indirect beneficial interest in Chevron Canada, thereby allowing application of s. 18(1) of the *Act*, which states that "the sheriff may seize and sell any equitable or other right, property, interest or equity of redemption in or in respect of any goods, chattels or personal property, including leasehold interests in any land of the execution debtor." The motion judge found that Chevron, as an indirect shareholder, did not have any legal or equitable interest in the assets of Chevron Canada. As the *Execution Act* was a "procedural statute" which did not create any new rights in property, its provisions were of no assistance to the Ecuadorian plaintiffs.

[19]   The motion judge also declined to pierce the corporate veil separating Chevron and Chevron Canada. He noted the long-standing case-law holding that the separate legal personality of a corporate entity would only be disregarded where it was completely dominated and controlled, and being used as a shield for fraudulent or improper conduct. The motion judge found that the Ecuadorian plaintiffs had not made out either part of the test. The evidence showed that

8

Chevron and Chevron Canada had a typical parent/subsidiary relationship, and the Ecuadorian plaintiffs had not alleged that Chevron's corporate structure was designed or used as an instrument or fraud or wrongdoing. The motion judge further concluded that there was no independent "just and equitable" or "group enterprise" exception allowing the corporate veil to be lifted even where the established test was not satisfied.

[20]   As to the motion to add CCCC as a defendant, the motion judge declined to grant the Ecuadorian plaintiffs the relief sought. He noted that the Ecuadorian plaintiffs did not allege a cause of action against CCCC, but rather sought the same relief against it as against Chevron Canada. Accordingly, the motion judge concluded that the Ecuadorian plaintiffs' claim against CCCC could not succeed for the same reasons that their claim against Chevron Canada had failed.

[21]   The Ecuadorian plaintiffs have appealed both of the motions judge's decisions, prompting this motion for security for costs. Chevron Canada seeks security for costs for the appeal in the amount of $100,000, and for the proceedings below in the amount of $541,335.14 (being Chevron Canada's portion of the costs awarded below). Chevron seeks security for costs for the appeal, in the amount of $60,000, and for the proceeding below in the amount of $321,616.33 (being Chevron's portion of the costs awarded below). The total amount of security sought is $1,022,951.47

## SECURITY FOR COSTS

### (1) General Principles

[22]   Chevron and Chevron Canada rely on rr. 61.06(1)(b) and 56.01(1)(a) of the

*Rules of Civil Procedure.* Rule 61.06(1)(b) reads as follows:

> In an appeal where it appears that,
>
>> (b) an order for security for costs could be
>> made against the appellant under rule 56.01
>> a judge of the appellate court, on motion by
>> the respondent, may make such order for
>> security for costs of the proceeding and of
>> the appeal as is just

[23]   While r. 56.01(1)(a) reads:

> The court, on motion by the defendant or respondent in
> a proceeding, may make such order for security for costs
> as is just where it appears that
>
>> (a) the plaintiff or applicant is ordinarily
>> resident outside Ontario;

[24]   Here, there is no dispute that the Ecuadorian plaintiffs reside outside of

Ontario. They have pleaded that they are residents of Ecuador.

[25]   This means that Chevron and Chevron Canada have met their initial onus

of showing that the Ecuadorian plaintiffs fit within r. 61.06(1)(b). Thus, they have

successfully "triggered the enquiry" into security for costs, requiring me to take into

account a number of factors and make such order as is just: *Zeitoun v. Economical*

*Insurance Group* (2008), 91 O.R. (3d) 131 (Div. Ct.), aff'd 2009 ONCA 415, 96

O.R. (3d) 639, at para. 44. Relevant considerations include the merits of the claim

and the possible effect of an order for security preventing a bona fide claim from proceeding. Courts enjoy broad discretion to make such order as is just: *Novak v. St. Demetrius (Ukranian Catholic) Development Corporation*, 2017 ONCA 693, at para. 9; *Stojanovic v. Bulut*, 2011 ONSC 874 (Master), at para. 5.

[26]   As per *Zeitoun*, at paras. 49-50, if the Ecuadorian plaintiffs demonstrate impecuniosity on a balance of probabilities, they can resist the motion by showing that their claim is not plainly devoid of merit – a low evidentiary threshold. Conversely, where impecuniosity is not shown, a closer scrutiny of the merits is called for and it will be legitimate to require the Ecuadorian plaintiffs to demonstrate a good chance of success on the main appeal in order to resist the motion. The Ecuadorian plaintiffs submit that test is satisfied given the merits of their pending appeal.

[27]   The Ecuadorian plaintiffs also advance a novel submission, one that Mr. Lenczner, their counsel, says should become part of the law pertaining to security for costs. The Ecuadorian plaintiffs submit that this motion should be approached differently because of the combination of two factors – it is part of an action for recognition and enforcement of a foreign judgment, and the original Ecuadorian action essentially amounts to a class action. In oral argument, Mr. Lenczner suggested that security for costs should never be ordered against an appellant in such circumstances.

[28]   Chevron and Chevron Canada submit that security for costs is warranted because the Ecuadorian plaintiffs have not provided evidence of impecuniosity, and have not established a good chance of success in the pending appeal. They also reject the appellant's proposed new approach to the law of security for costs, contending that the principle of comity does not require the Ecuadorian plaintiffs to be treated more favourably than domestic litigants.

[29]   I have structured my analysis of the parties' submissions in two parts. I begin by outlining why security for costs should be ordered under the usual analysis. I then explain why the appellants' proposed change to the law of security for costs does not warrant a different conclusion.

**Impecuniosity**

[30]   A party who seeks to establish impecuniosity must lead evidence of "robust particularity", with full and frank disclosure, and supporting documentation as to income, expenses and liability: *T.S. v. Publishing Group Inc. v. Shokar*, 2013 ONSC 1755 (Master); *Mapara v. Canada (Attorney General)*, 2016 FCA 305, at para. 8. Doherty J. (as he was then) explained the rationale for this evidentiary rule in *Hallum v. Canadian Memorial Chiropractic College* (1989), 70 O.R. (2d) 119 (Ont. H.C.), at pp. 9-10:

> A litigant who falls within one of the categories created by rule 56.01(a) to (f), and who relies on his impecuniosity to avoid an order requiring that he post security, must do more than adduce some evidence of impecuniosity. The onus rests on him to satisfy the court

> that he is impecunious…The onus rests on the party
> relying on impecuniosity, not by virtue of the language of
> rule 56.01, but because his financial capabilities are
> within his knowledge and are not known to his opponent;
> and because he asserts his impecuniosity as a shield
> against an order as to security for costs.

[31]   In my view, the Ecuadorian plaintiffs have failed to demonstrate that they are

impecunious. The only relevant evidence filed in their responding motion record

consists of three settlement agreements between Chevron and third parties who

had previously funded the Ecuadorian plaintiffs in this litigation. These third party

funders have disavowed their financial interest in the Ecuadorian judgment, in the

light of the New York decision.

[32]   Chevron and Chevron Canada object that these settlement agreements are

not properly in evidence. They are not proven by affidavit and were filed after the

Ecuadorian plaintiffs advised that they would not be tendering any responding

evidence on the motion, thus preventing cross-examination and reply evidence. I

need not address this evidentiary dispute, as I agree with Chevron and Chevron

Canada that these settlement agreements do not assist the Ecuadorian plaintiffs

in demonstrating impecuniosity. What the settlement agreements demonstrate is

that the Ecuadorian plaintiffs have received a significant amount of funding for this

litigation in the past. They leave unanswered the question of whether the

Ecuadorian plaintiffs have other funding available to them – a question that the

Ecuadorian plaintiffs declined to answer.

[33]   The Ecuadorian plaintiffs have filed no other evidence as to their finances beyond these three settlement agreements. There is no supporting evidence as to their income, expenses and liability. This can hardly be called "robust particularity". We know nothing about the individual circumstances of any of the 47 Ecuadorian plaintiffs – and perhaps more importantly, their financial backers.

[34]   Accordingly, I conclude that the Ecuadorian plaintiffs cannot demonstrate impecuniosity. I must assume that ordering security for costs will not end this litigation.

**Merits**

[35]   Where the moving party has met its initial onus under r. 56.01, and where the responding party is not impecunious, security for costs will generally be appropriate unless the responding party can demonstrate that their appeal has a good chance of success. I agree with the statement of Code J. in *Cigar500.com Inc. v. Ashton Distributors Inc.* (2009), 99 O.R. (3d) 55, at para. 69, that "the burden in *Zeitoun* for a Plaintiff who is not "impecunious" is a high one." If the responding party is not impecunious, the standard is higher than "not devoid of merit, but is not as high as proving the claim on a balance of probabilities at trial, or establishing that there is no triable issue on a summary judgment motion": *Bruno Appliances and Furniture Inc. v. Cassels Brock & Blackwell LLP*, 2013 ONSC 4501 (Div Ct.), at para. 19.

[36]   In my view, the Ecuadorian plaintiffs have not demonstrated that their appeal has a good chance of success. [3] The motion judge held that, absent a piercing of the corporate veil, the shares and assets of Chevron Canada are not available for execution and seizure to satisfy the Ecuadorian judgment against Chevron. That conclusion is unlikely to be overturned.

[37]   The separate legal personality of corporations is a fundamental principle of corporate law, recognized in *Salomon v. Salomon & Co.,* [1897] A.C. 22 (U.K. H.L.) and endorsed by Canadian courts many times. The principle applies equally to groups of companies – such as the Chevron group – absent a compelling reason to pierce the corporate veil. As the English Court of Appeal made clear in *Adams v. Cape Industries Plc*, [1991] 1 All E.R. 929, [1990] B.C.C. 786, at pp. 817, 820: :

> There is no general principle that all companies in a group of companies are to be regarded as one. On the contrary, the fundamental principle is that "each company in a group of companies ... is a separate legal entity possessed of separate legal rights and liabilities."
>
> . . .
>
> Our law, for better or worse, recognizes the creation of subsidiary companies, which though in one sense the creatures of their parent companies, will nevertheless under the general law fall to be treated as separate legal entities with all the rights and liabilities which would normally attach to separate legal entities.

---

[3] In what follows, I will only consider the appeal in respect of Chevron Canada. CCCC is essentially in the exact same position as Chevron Canada vis-à-vis Chevron. Accordingly, if the motion judge correctly concluded that summary judgment should be granted in respect of the appellants' claim for relief against Chevron Canada, he was also correct in concluding that there was no basis upon which to add CCCC as a defendant.

[38]   Brown J. (as he then was) expressed support for the principles in *Adams* in an earlier decision in this litigation, when the matter of jurisdiction was before the courts. He cited *Adams* in noting that "the fact that a parent corporation operates a number of world-wide companies as an integrated economic unit does not mean that separate legal entities will be ignored, absent some compelling reason for lifting the corporate veil." Other Canadian courts have reached similar conclusions: see *Cunnigham v. Hamilton* (1995), 169 A.R. 132 (C.A.), at para. 4; *Bow Valley Husky (Bermuda) Ltd. v. St. John Shipbuilding*, 126 D.L.R. (4th) 1 (Nfld C.A.), at paras. 48-49, rev'd on other grounds, [1997] 3 S.C.R. 1210; *Martin v. Astrazeneca Pharmaceuticals PLC*, 2012 ONSC 2744, at paras. 120-121, aff'd 2013 ONSC 1169 (Div. Ct.); *First Gulf Bank v. Collavino Inc.*, 2013 ONSC 4630, at paras. 107-113.

[39]   The question is, therefore, whether the Ecuadorian plaintiffs can show they are entitled to execute Chevron's judgment-debt against Chevron Canada, despite their separate legal personalities. To do so, the Ecuadorian plaintiffs must either establish a proper basis for execution against Chevron Canada under the *Execution Act*, or provide "some compelling reason for lifting the corporate veil". In my view, the appellants have not demonstrated a good chance of success on either front.

### *Enforcing against Chevron Canada under the Execution Act*

[40]   The central difficulty with the Ecuadorian plaintiffs' submissions on this issue is that absent a piercing of the corporate veil, they lack an existing right or interest in Chevron Canada. I do not see how they can avail themselves of the *Execution Act* in such circumstances.

[41]   I agree with the motion judge that the *Execution Act*, notwithstanding the broad language found in s. 18(1), is only engaged when the judgment debtor has an existing right or interest in the property over which execution is sought. As noted by the motion judge, Conway J. adopted this position in *Belokon v. Kyrgz Republic*, 2016 ONSC 4506, stating at para. 31, that "The Execution Act is a procedural statute. It does not create new rights — it only provides a process for the enforcement of otherwise existing rights." I find it unlikely that this court will reach a different conclusion on the proper interpretation of the *Act*, having recently upheld Conway J.'s decision in its entirety: 2016 ONCA 981, leave to appeal to S.C.C. refused, [2017] S.C.C.A. No. 74, and [2017] S.C.C.A. No. 75.

[42]   The Ecuadorian plaintiffs submit that they nonetheless fall within the ambit of the *Act* as they enjoy a beneficial interest in Chevron Canada's assets and shares. At the motion, they relied on *Sistem Muhendislik Insaat Sanayi Ve Ticaret Anonim Sirketi v. Kyrgyz Republic,* 2014 ONSC 2407, where Thorburn J., in their view, came to a different conclusion than *Belokon* on roughly the same facts. However, her decision was reversed by this court, on the basis that the Republic

was not properly served in accordance with the *State Immunity Act*: 2015 ONCA 447, 126 O.R. (3d) 545, leave to appeal to S.C.C. refused, [2015] S.C.C.A. 354.

[43]    Regardless, I do not read Thorburn J. as finding that the *Act* creates rights in property where there were none before. Rather, her finding that the Kyrgyz Republic enjoyed a beneficial interest in shares issued by "Kyrgyzaltryn" (a wholly owned subsidiary of the Republic), turned on several factors not present in this appeal (set out at paras. 53-61):

> (a) the Republic provided all the consideration for the issuance of the shares,

> (b) the relevant agreement referred to the "Kyrgyz side", which was defined to include the Republic,

> (c) various different parties stated at different times that the Republic was the owner of the shares; and

> (d) special laws were enacted to confirm the Republic's interest in the shares and control of their use.

[44]    I also disagree with the Ecuadorian plaintiffs' submission that, since the dividends flowing between Chevron Canada and Chevron can be seized under the *Execution Act*, the *assets* that generate those dividends should also be seizable. I do not see the existence of dividends as detracting from the conclusion that Chevron has no exigible interest in Chevron Canada. I concur with the motion judge and Brown J. that "the distribution of profits from sub to parent via dividends

is a standard fact of inter-corporate life." It does not provide a sound basis for a right or interest in Chevron Corp.'s assets.

### Piercing the Corporate Veil

[45]   Accordingly, the remaining question in terms of merits is whether the motion judge erred in refusing to pierce the corporate veil between Chevron and Chevron Canada. In my view, the Ecuadorian plaintiffs are also unlikely to be successful here. This court, in *Shoppers Drug Mart Inc. v. 6470360,* 2014 ONCA 85, leave to appeal to S.C.C. refused, [2014] S.C.C.A. No. 119, confirmed that the appropriate test to apply in determining whether the corporate veil should be pierced remains that stated by Laskin J.A. in *642947 Ontario Ltd. v. Fleischer* (2001), 56 O.R. (3d) 417 (C.A.), at para. 68:

> Typically, the corporate veil is pierced when the company is incorporated for an illegal, fraudulent or improper purpose. But it can also be pierced if when incorporated "those in control expressly direct a wrongful thing to be done": *Clarkson Co. v. Zhelka*, [1967] O.J. No. 1054 at p. 578. Sharpe J. set out a useful statement of the guiding principle in *Transamerica Life Insurance Co. of Canada v. Canada Life Assurance Co.* (1996), 28 O.R. (3d) 423 at pp. 433-34 (Gen. Div.), affd [1997] O.J. No. 3754 (C.A.): "the courts will disregard the separate legal personality of a corporate entity where it is completely dominated and controlled and being used as a shield for fraudulent or improper conduct."[4]

---

[4] The corporate veil can also be pierced where "the corporation has acted as the authorized agent of its controllers, corporate or human", or "where a statute or contract requires it". I see nothing to indicate the appellants relied on either of these bases, and the motion judge states at para. 16 that "the plaintiffs do not allege that Chevron Canada… is an agent of Chevron".

[46]   As stated by Sharpe J. (as he then was) in *Transamerica* at para. 22, the first part of the test, "complete control", requires more than ownership. It requires "complete domination, and that the subsidiary company does not, in fact, function independently." The second part of the test relates to the nature of the corporations' conduct. There must be "conduct akin to fraud that would otherwise unjustly deprive claimants of their rights."

[47]   On the first branch, the motion judge concluded that Chevron Canada was not completely dominated and controlled by Chevron, but rather that they had a typical parent/subsidiary relationship. This determination is a finding of mixed fact and law, and will not be easy for the Ecuadorian plaintiffs to overcome on appeal. Moreover, in coming to this conclusion, the motion judge reasonably relied upon and adopted the findings of Brown J. These findings include that Chevron Canada initiates its own plans and budgets, funds its day to day operations and some recent capital expenditures, and files its own tax returns and corporate statements. Brown J. also noted that the relevant corporate structure has been in place since 1966, and was clearly not instituted in order to avoid the Ecuadorian judgment.

[48]   In terms of the second branch, and as the motion judge noted, the Ecuadorian plaintiffs expressly do not plead that the corporate structure of which Chevron Canada is a part was designed or used as an instrument of fraud or wrongdoing. At para. 24 of their pleadings, the Ecuadorian plaintiffs state that "the plaintiffs do not allege any wrongdoing against Chevron Canada". Nor have the

Ecuadorian plaintiffs provided convincing proof that Chevron's corporate structure is being used "as a shield for fraudulent or improper conduct."

[49]   It follows that the Ecuadorian plaintiffs do not have a good chance of satisfying the well-established test for piercing the corporate veil. Instead, they take the position that corporate separateness should not be applied in situations where it will yield a result "too flagrantly opposed to justice".

[50]   The motion judge correctly refused to accept that submission. As he noted, Sharpe J. rejected the notion that the corporate veil could be pierced based on what is "just and equitable" in *Transamerica* (a submission based off a solitary dictum to that effect found in *Kosmopoulos v. Constitution Insurance Co. of Canada*, [1987] 1 S.C.R. 2, also relied upon by the Ecuadorian plaintiffs) This court has also rejected that position on several occasions: *Parkland Plumbing & Heating Ltd. v. Minaki Lodge Resort 2002 Inc.,* 2009 ONCA 256, 305 D.L.R. (4th) 577 (Ont. C.A.), at para. 50; *A-C-H International Inc. v. Royal Bank*, 254 D.L.R. (4th) 327 (Ont. C.A.), at para. 28; and *Boyd v. Wright Environmental Management Inc.*, 2008 ONCA 779, 303 D.L.R. (4th) 747, at para. 44, where Juriansz J.A. noted that "the "just and equitable" ground for piercing the corporate veil, suggested in earlier cases, was firmly rejected by Sharpe J. in *Transamerica*, and upheld on appeal to this court" This submission has also been rejected in numerous other cases, which have found that mere injustice to one party is not sufficient to pierce the corporate veil, without wrongdoing or conduct akin to fraud (see *B.G. Preeco I (Pacific Coast)*

*Ltd. v. Bon Street Holdings Ltd.* (1989), 43 B.L.R. 67 (C.A.), at para. 37; *Edington*

*v. Mulek Estate*, 2008 BCCA 505, 54 B.L.R. (4th) 165, at paras. 24-26, *Nevsun*

*Resources Ltd. v. Delizia Ltd.,* 2016 FC 393, at paras. 49-50).

[51]   Although I have concluded that the Ecuadorian plaintiffs do not have a good

chance of success in this appeal, I do not say that they face an impossible task.

Thorburn J.'s analysis in *Kyrgz Republic* shows that in certain situations, for the

purposes of the *Execution Act*, a party may be taken to have an exigible beneficial

interest in shares that it does not own legally – albeit on very different facts from

these, and on the basis of reasoning not adopted by this court.

[52]   As well, it is worthy of note that the Supreme Court, in its decision in this

action, observed at para. 95 that "this is not a case in which the Court is called

upon to alter the fundamental principle of corporate separateness, as reiterated in

*BCE Inc., Re,* 2008 SCC 69, [2008] 3 S.C.R. 560 (S.C.C.) at least not at this

juncture." The Court, while stating that its decision "should not be understood to

prejudice further arguments with respect to the distinct corporate personalities of

Chevron and Chevron Canada", seemingly left open the possibility of rethinking

the doctrines of corporate separateness and presumably the principles behind

piercing the corporate veil as well. However, even considering these points, I do

not see the Ecuadorian plaintiffs as having a "good chance of success" on this

appeal. In my view, applying the usual security for costs analysis, the just order in

this case would require the Ecuadorian plaintiffs to post security for costs.

## (2) Does the Context of this Case Change the Analysis?

[53]   With his signature vigour, Mr. Lenczner argues that the Supreme Court, in its *Chevron* decision, adopted a "new approach" to enforcement and recognition actions. In his view, the Supreme Court instructed the courts to approach such cases in a different manner than first instance actions. He urges this court to heed the Supreme Court's call for a "generous and liberal approach to the recognition and enforcement of foreign judgments." The Ecuadorian plaintiffs also submit that the need for a generous approach to recognition and enforcement is further buttressed in this case by the fact that the underlying litigation is essentially a class action, with the 47 appellants representing 30,000 indigenous people in Ecuador. Accordingly, they submit that this Court should be particularly hesitant to impose a barrier to the appeal.

[54]   Chevron and Chevron Canada dispute that the Supreme Court was calling for a "new approach" to enforcement and recognition actions. They submit that the *Rules* clearly contemplate that an appellant who is ordinarily resident outside of Ontario may be ordered to pay security for costs. There is, in their view, no exception for recognition and enforcement actions – and certainly such an exception cannot be inferred from the Supreme Court's *Chevron* decision, which dealt with jurisdiction.

[55]   Dealing briefly first with the class action point, the motion judge, in his costs endorsement, stated the following "I do not accept the plaintiffs' submission that

23

their claim against Chevron Canada is analogous to a class proceeding and that s. 31(1) of the *Class Proceedings Act* therefore applies." I agree with him on that point.

[56]   Regardless, even if I were to accept the class action analogy, this would not prevent security for costs being ordered where the justice of the case warrants it. The Ecuadorian plaintiffs cite no case-law suggesting that a class action that results in the claim being dismissed against a defendant would insulate non-resident plaintiffs from having to post security for costs if they sought to bring an appeal.  Although I was unable to find any analogous cases involving r. 61.06(1), in *2038724 Ontario Ltd. v. Quizno's Canada Restaurant Corp.* (2007), 45 C.P.C. (6th) 375, Hoy J. (as she then was) ordered the intended representative plaintiffs in a proposed class action to pay security for costs pursuant to r. 56.01.

[57]   Turning now to the "new approach" argument, I find myself largely in agreement with the positions of Chevron and Chevron Canada. I see no basis in Ontario case law, or the Supreme Court's decision in *Chevron*, to suggest that an otherwise meritorious motion for security for costs should be denied because the action to which it relates concerns recognition and enforcement of a foreign judgment.

[58]   *Brown v. Raymond Jones Ltd* (2007), 51 C.P.C. (6th) 76 (Ont. Master), a case cited by Chevron and Chevron Canada, is apposite on this issue. In that case, the applicants sought orders giving effect to Letters of Request from the United

States, and the moving parties sought security for costs. The moving parties relied on *Four Embarcadero Center Venture v. Mr. Greenjeans Corp* (1986), 10 C.P.C. (2d) 105 (Ont. Master), which cited the English Court of Appeal case *Crozat v. Brogden*, [1894] 2 Q.B. 30 (Eng. C.A.), for the proposition that "there is no difference between an action on a foreign judgment and any other action". The applicants in *Raymond Jones* sought to distinguish *Four Embarcadero Center*, on the basis that it predated the Supreme Court's private international law decisions of *Morguard Investments Ltd. v. De Savoye,* [1990] 3 S.C.R. 1077, and *Beals v. Saldanha,* [2003] 3 S.C.R. 416. Master Graham rejected this argument, holding that:

> In cases both of judgments from other provinces and of foreign judgments, it is open to the defendant to challenge the basis on which the court rendering the judgment assumed jurisdiction over the matter, and a defendant doing so successfully would presumably be entitled to costs in the Ontario proceeding to enforce the judgment. The principle of comity does not mean that a litigant from a foreign jurisdiction should be in a more advantageous position than a domestic litigant with respect to the costs exposure arising out of a proceeding in the domestic court. Four Embarcadero Center Venture was therefore not overruled by Morguard or Beals and is still good law in Ontario.

[59]   I appreciate that *Brown* predates the Supreme Court's recent *Chevron* decision, upon which the Ecuadorian plaintiffs rely. Thus, in a sense, this is a matter of first impression. However, the principles underlying *Chevron* have been present in the Supreme Court's jurisprudence on private international law for some time. *Brown* post-dates and specifically considers *Morguard* and *Beals*, earlier

cases that also stressed the importance of comity and spoke of a new approach to recognition and enforcement of foreign judgments in the modern world. Moreover, the post-*Morguard* and *Beals* case law the Ecuadorian plaintiffs rely upon specifically recognized the principle that a litigant seeking to enforce a foreign judgment should not be put in a more advantageous position than domestic litigants: *Pro Swing Inc. v. Elta Golf Inc.*, 2006 SCC 52, [2006] S.C.R. 612, at para. 31

[60]   In my view, the Supreme Court's *Chevron* decision did not change this principle. *Chevron* stands for the proposition that Canadian courts should take a generous approach in finding jurisdiction to allow litigants holding foreign judgments to bring enforcement actions in Canada. I do not read the decision as saying that, when such enforcement actions are brought before Canadian courts, they should be treated differently than cases involving domestic litigants. As I explained above, I am of the view that if the Ecuadorian plaintiffs were domestic litigants, an order security for costs would be appropriate. I do not see why the result should be different because the Ecuadorian plaintiffs hold a foreign judgment.

[61]   I find support for this conclusion in the Supreme Court of Canada's decision in *Pro Swing*. Addressing the recognition and enforcement of equitable orders issued by foreign courts, Deschamps J. clarified at para. 31 that "comity does not require receiving courts to extend greater judicial assistance to foreign litigants

26

than it does to its own litigants." I also point to a comment made by Strathy C.J.O.

in *Independence Plaza 1 Associates L.L.C. v. Figliolini*, 2017 ONCA 44, albeit in a

different context:

> I would remark that, despite their undoubted importance,
> the principles of comity expressed in Morguard, Beals,
> Chevron do not require the absence of any limitation
> period for a proceeding on a foreign judgment… it is one
> thing to remove barriers to the extraterritorial recognition
> of foreign judgments. But it is quite another to grant them
> more generous status than any other debt obligation or
> to give them the same status as a domestic judgment for
> limitations purposes.

[62]   The purposes underlying security for costs orders also suggest that a party

seeking to enforce a foreign judgment should not be treated differently than a

domestic litigant. While courts may award security for costs for a range of reasons,

the core aim of such an order under r. 61.06 is to provide respondents with a

"measure of protection for costs incurred and to be incurred in the proceeding,

which is now on appeal.": *Henderson v. Wright*, 2016 ONCA 89, 345 O.A.C. 231,

at para. 24; *Combined Air Mechanical Services Inc. v. Flesch*, 2010 ONCA 633,

268 O.A.C. 172, at para. 8; *York University v. Markicevic*, 2017 ONCA 651, at para.

53. That aim is no less important when the main appeal concerns enforcement of

a foreign judgment, particularly when the respondent is "exposed to the risk of

being forced to go to a foreign jurisdiction to enforce an order for costs": Linda S.

Abrams and Kevin P. McGuinness, *Canadian Civil Procedure Law, 2nd Ed.* (2010,

LexisNexis: Markham), at p. 1476.

[63]    Finally, I can find passages in the Supreme Court's Chevron decision that undercut the reading the Ecuadorian plaintiffs urge. I refer, in particular, to para. 46, in which Gascon J. states that "enforcement is limited to measures — like seizures, garnishments or execution — that can be taken only within the confines of the jurisdiction, and in accordance with its rules", and that "Whether recognition and enforcement should proceed depends entirely on the enforcing forum's laws" (emphasis added). Further, at para. 51, Gascon J. cited the definition of comity as "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and the rights of its own citizens or of other persons who are under the protection of its laws". Further, Gascon J. was clear at para. 95 that his decision merely addressed jurisdiction, and "should not be understood to prejudice further arguments with respect to the distinct corporate personalities of Chevron and Chevron Canada."

[64]    I am therefore unable to accept, as a general rule, that courts should approach security for costs differently in an appeal involving enforcement of a foreign judgment. To be sure, there will be cases involving recognition and enforcement of foreign judgments where security for costs will not be appropriate. Plaintiffs may establish impecuniosity. That did not happen here. They may demonstrate that they have assets within Ontario, or in a jurisdiction with which Ontario has a reciprocal enforcement of judgments agreement. There is no such

evidence in this case. Plaintiffs may also demonstrate a good chance of success on their appeal, and will often benefit from the fact that Canadian courts rarely re-examine the merits of a foreign judgment in an enforcement action. This appeal, however, does not involve a typical enforcement proceeding. On the contrary, it challenges long-standing and well-established corporate law principles - and, in my view, is unlikely to do so successfully. In these circumstances, I find that an order for security for costs is entirely appropriate.

### (3) Conclusion

[65]   There is no question that the Ecuadorian plaintiffs are normally resident outside of Ontario, thus "triggering the enquiry" into security for costs. The Ecuadorian plaintiffs have put forward no evidence to demonstrate that they are impecunious. Since the Ecuadorian plaintiffs cannot be deemed impecunious, they must demonstrate that their appeal has something akin to a "good chance of success" to resist the motion. This, in my view, they cannot do – the appeal challenges well established corporate law doctrines, as well as a finding of mixed fact and law that there is no basis to pierce the corporate veil. The *Execution Act* does not create rights in property where there were none before. Finally, the Ecuadorian plaintiffs seek to resist the motion by relying on an alleged "new approach" endorsed by the Supreme Court for recognition and enforcement actions. I do not read the *Chevron* decision as establishing any such new approach. The case dealt only with jurisdiction. It does not hold that plaintiffs

seeking to enforce a foreign judgment should be treated differently than any other litigant in our courts. The just order in this case is one for security for costs.

**(4) Quantum**

[66]  Having concluded that security for costs is warranted, I now turn to determining the appropriate quantum. The Ecuadorian plaintiffs submit that the quantum for both Chevron and Chevron Canada should not exceed $50,000 in the aggregate. They contend that the arguments to be advanced in the main appeal have already been canvassed several times, and thus little additional preparation will be necessary. Further, the positions of Chevron Canada and Chevron are identical, with both seeking the same remedy (the removal of Chevron Canada as a defendant).

[67]  Chevron and Chevron Canada submit that the quantum they seek is reasonable. The bulk of it is made up of the costs already awarded during this action, which remains unpaid. The quantum sought for security for costs falls within the range of costs awards that have been made recently by this Court for appeals of similar length.

[68]  In my view, while it may be true that the arguments to be advanced on this appeal have already been canvassed several times, it must be noted that the large majority of the security sought relates to the awards of costs already made. Having said, that, I am of the view that the amounts claimed for security for the costs of the appeal are high having regard to the history of this matter. They should be

30

reduced to take into account the reasonable Ecuadorian plaintiffs' argument that the issues advanced will be much the same as have been advanced before.

[69]   The total amount sought might seem like a large quantum of security. However, it pales in comparison to the over $9.5 billion that the Ecuadorian plaintiffs are seeking to enforce. In awarding costs for the motion, the motion judge noted the following in relation to Chevron (and made similar comments in regards to Chevron Canada):

> The plaintiffs attempt to enforce an over $9 billion judgment, which is known to be and has been found to be fraudulent. As Judge Kaplan of the SDNY found, the plaintiffs have been supported by millions of dollars from a sophisticated financing network involving "numerous investors", including litigation financers and law firms. The Plaintiffs have enjoyed a large team of experienced counsel internationally. They are similarly represented by a large team of experienced counsel in Canada. In the circumstances, Chevron Corp.'s efforts in Canada, including on the motions for summary judgment motions (and the motion to strike) are proportionate, reasonable and to have been expected.

[70]   Considering that the Ecuadorian plaintiffs have not demonstrated impecuniosity, or that their appeal has a strong chance of success, $50,000 in security for costs would not be a just order. I have concluded that significant security for costs should be ordered, albeit less than what the moving parties have requested.

**DISPOSITION**

[71]   I therefore order the Ecuadorian plaintiffs to post security for costs. Chevron Canada is entitled to security for costs of the appeal in the amount of $50,000 and for the proceedings below in the amount of $541,335.14. Chevron is entitled to security for costs of the appeal in the amount of $30,000 and for the proceedings below in the amount of $321, 616.33.

[72]   Chevron and Chevron Canada have been entirely successful. They are entitled to their costs of this motion fixed in the amount agreed upon by counsel of $4,000, including interest and costs, to each of the moving parties.

Released:*gl.*   SEP 2 1 2017

*J.A.*