# EXHIBIT 92

| | |
|---|---|
| **From:** | Steven Donziger <sdonziger@donzigerandassociates.com> on behalf of Steven Donziger |
| **Sent:** | Thursday, August 4, 2016 12:30 PM |
| **To:** | John van Merkensteijn; Bill Twist |
| **Subject:** | Re: issue |
| | |
| **Categories:** | KFLaw |

My partner Aaron Page prepared the response below to Greg's flagging of that Kaplan quote.  I would be interested to see what Greg says after reading this.  Best, Steven

From Aaron:

In reality we explained this issue dozens of times before Kaplan; like the rest of our case, he ignored it. We don't dispute that the judgment reflects reliance on certain documents, but calling those documents "plaintiffs' internal work product" is all part of Chevron's packaging. In reality these were advocacy documents that were designed to get before the court. There is a good chance they were submitted to the court (and Chevron) and just weren't included in the hand-marked, hand-sewn record for some reason. For example, with respect to the so-called "fusion memo", the Republic of Ecuador for its arbitration briefing did a massive amount of work cross-referencing all the record documents, team emails, and site inspection records, ultimately finding that:

> On June 9, three days before the Aquarico inspection, Plaintiffs prepared a final version of the Fusion Memo20 and a list of accompanying exhibits to be submitted.21 At the June 12 judicial inspection, both parties discussed with the Judge the Chevron-Texaco merger and its legal implications for the case.22 The court docket notes submission by Pablo Fajardo at the inspection site of all of the Fusion Memo's accompanying exhibits.23 In fact, each of these exhibits referenced in the Fusion Memo was docketed in the record, even though the memo itself apparently was not, thereby at the worst suggesting some administrative hiccup.24 The Fusion Memo exhibits submitted at the Aquarico 2 judicial inspection are the very exhibits cited in the Lago Agrio Judgment in the legal discussion of "lifting the corporate veil" — the same discussion that Claimants allege was copied from the unfiled Fusion Memo.

See para. 16 of the attached annex on the "ghostwriting" issue submitted by the ROE in Feb. 2013. This is consistent with the recollections of our team. Note that this was around for almost a year before the trial and it (and the arguments in it) were submitted to Kaplan – he completely ignored them. Another thing on this point the ROE did for the annex was go through old Crude outtakes of site inspections and noted several instances where they could see both Chevron and Plaintiffs' lawyers submitting documents openly to the court, but then noted that those documents didn't show up in the record. So it was not a very well-organized system and what is in the record, as well as what was or was not properly submitted to the court, is not at all clear.

Additionally, it appears that there is a practice in Ecuador in this case and others of submitting briefing documents to the court *ex parte*. Until mid 2009, it was legal to meet with judges *ex parte* and both sides did so (Chevron finally admitted to this only after a long series of denials). *Ex parte* briefing were apparently part of this process, and may even have outlived the prohibition on *ex parte* meetings. It does not appear to have been extensive, but it did exist, and the judge who authored the trial judgment has said he received *ex parte* briefing from both sides. Admittedly this is a not a great practice to defend, but it is what it is, Chevron knew about it when it chose Ecuador as its preferred forum, and even if it

1

JVM 004865

raised due process concerns (ignoring the fact that both parties engaged in it) at the trial level, such concerns were extinguished when the judgment was fully re-affirmed twice on appeal. It is certainly a far cry from "fraud."

As for dear Judge Kaplan's quote, it is a typical masterwork of false and misleading information:

"The Judgment copied extensively from eight LAP internal work product documents –
documents which were not in the record [not proven], which Zambrano denied having used [false: Z testified he received ex parte briefing and that he recognized the fusion memo and others as documents he used in drafting the judgment], and the presence of
which in the Judgment defendants could not explain. [we and the ROE explained this ad nauseum – it was ignored]"

---

**From:** John van Merkensteijn <jhvm@rossteq.com>
**Sent:** Wednesday, August 3, 2016 10:57:16 PM
**To:** Steven Donziger; Bill Twist
**Subject:** issue


Steven

Just so we are clear on this issue—and sorry to belabor
the issue—here is what Kaye Scholer pointed out

John H. van Merkensteijn lll
Managing Director
Rossi Technology LLC
60 Riverside Boulevard
Suite 2101
New York, NY. 10069
Phone (212) 769-4055
jhvm@rossteq.com

---

**From:** Gregory Wallance <Gregory.Wallance@kayescholer.com>
**Date:** Wednesday, August 3, 2016 at 1:43 PM
**To:** John van Merkensteijn <jhvm@rossteq.com>
**Cc:** Derek Stoldt <Derek.Stoldt@kayescholer.com>, Michael Ben-Jacob <Michael.Ben-Jacob@kayescholer.com>
**Subject:** RE: New draft agreement

I read the summary below and do need to point out that Steven has not properly explained the issue in #3, where he says that in Ecuador "judges use parts of submissions of both parties in writing their opinion."   What Judge Kaplan found was that documents in the plaintiffs' internal files that had never been produced in discovery to Chevron or made part of the record showed up in the Zambrano judgement. That is much different than a judge using a parties' brief in writing an opinion.

Here is what Judge Kaplan found:

"The Judgment copied extensively from eight LAP internal work product documents –

2

JVM 004866

documents which were not in the record, which Zambrano denied having used, and the presence of which in the Judgment defendants could not explain."

(Chevron v. Donziger, p. 218).

I wasn't copied on the email below so I leave it to you whether to forward this.

JVM 004867