# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

---

## 11-CV-0691 (LAK)

## CHEVRON CORPORATION,
## PLAINTIFF,

## v.

## STEVEN DONZIGER *et al.*,
## DEFENDANTS.

---

## DECLARATION OF DR. SANTIAGO VELÁZQUEZ COELLO

---

# DECLARATION OF DR. SANTIAGO VELÁZQUEZ COELLO

I, Santiago Velázquez Coello, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

## I. PERSONAL BACKGROUND

I was born in the city of Babahoyo, Province of Los Ríos, Republic of Ecuador, on January 21, 1943. I live in the city of Guayaquil, Ecuador.

My professional career has been dedicated to the practice of procedural, civil, and constitutional law. In addition to having held academic positions and been engaged in the private practice of law, I have served as a judge in various courts in the country, including having served as President of the Constitutional Court of Ecuador.

I am an attorney authorized to practice in Ecuador and hold a Doctorate in Jurisprudence. I have worked as an attorney or judge for the last 50 years.

This declaration was written in Spanish and will be translated into English. This declaration reflects my professional knowledge and experience.

I attach my *curriculum vitae* to this document as Exhibit 1.

## II. DOCUMENTS REVIEWED TO WRITE THIS DECLARATION

Chevron Corporation ("Chevron") requested that I address some issues of the application of Ecuadorian law to certain fund raising activities and agreements in connection with the matter known as Chevron Corporation v. Steven Donziger, et al., Case No. CV-11-0690 (LAK), pending before the United States District Court for the Southern District of New York. My responses are based on my review and analysis of the documents listed below that were provided to me by Chevron's attorneys, my analysis of applicable law, my professional experience and knowledge of Ecuadorian law.

The documents provided by Chevron are the following:

1. A copy of the complaint filed by 48 individuals before the President of the Court of Justice of Loja on May 7, 2003.

2. A copy of the judgment rendered by the President of the Provincial Court of Sucumbios on February 14, 2011. Case No. 2003-0002.

3. A copy of the clarification issued by the President of the Provincial Court of Justice of Sucumbios, March 4, 2011.

4. A copy of the appellate decision issued by the Provincial Court of Justice of Sucumbíos, dated January 3, 2012. Case No. 2011-0106.

[initials]

5. A copy of the clarification issued by the Provincial Court of Justice of Sucumbíos, dated January 13, 2012. Case No. 2011-0106.

6. A copy of the cassation decision issued by the Civil and Commercial Division of the National Court of Justice, dated November 12, 2013. Case No. 174-2012.

7. A copy of the clarification issued by the National Court of Justice on November 22, 2013. Case No. 174-2012.

8. A copy of the decision of the Constitutional Court of Ecuador, dated June 27, 2018. In Case No. 0105-EP.

9. A copy of the Durable International Power of Attorney and Agreement for the Continuous Investment of Professional Services, dated November 1, 2007.

10. A copy of the Commercial Trust for the Administration of ADAT Monies, dated March 1, 2012.



[initials]

I want to make clear that when I refer to the "Lago Agrio Plaintiffs" or the "Plaintiffs," I am referring to the 47 (formerly 48) individuals who are the plaintiffs in the Case No. 2003-002 that Maria Aguinda, *et al.* filed against Chevron in Ecuador.

## III. QUESTIONS AND RESPONSES

In the documents that I reviewed, the Amazon Defense Front is attempting to sell the money rights awarded in the Lago Agrio judgment.  As one example,, the power of attorney and fee arrangement with Mr. Donziger specifically states that, "the FDA hereby acknowledges, confirms, and undertakes to support Mr. DONZIGER's existing contractual **INTEREST** or, alternatively, to the extent it is necessary or useful, hereby grants Mr. DONZIGER an **INTEREST** in his own right equal to  Mr. DONZIGER's existing contractual **INTEREST**. Such INTEREST, in any case, shall be understood to entitle Mr. DONZIGER to 6.3% of any FUNDS RECOVERED, which are defined as any funds recovered in connection with the AGUINDA CASE or the AGUINDA JUDGMENT, whether by court order or private out-of-court settlement, in Canada or in any other country, including, without limitation, any FUNDS RECOVERED as actual/environmental damages to the extent permitted by law; the FUNDS RECOVERED out of the 10% AWARDED to the FDA; the FUNDS RECOVERED in post-judgment interest or any other award of legal interest; or the FUNDS RECOVERED as part of any additional right for professional fees or costs awarded by a court in Ecuador, Canada, the U.S., or any other country." Documents 11 through 14 above also evidence attempts by the FDA to sell interests in the Lago Agrio Judgment in exchange for cash "investments."

**If, according to Ecuadorian law, the FDA can sell or promise to sell financial interests or rights resulting from the Lago Agrio Judgment?**

**Answer:**

In general, the sale of financial rights derived from the referenced judgment that the FDA is attempting is not possible under Ecuadorian law.

1. The FDA cannot sell or promise to sell financial interests or rights connected to the award for remediation that is part of the damages because any such sales are prohibited by both the terms of the Lago Agrio Judgment as issued pursuant to Art. 43 of the Environmental Management Act and by the provisions of the subsequently created judgment trust.  Let me explain:

[initials]

According to Art. 43 of the Environmental Management Act, compensation for redress of damages has a specific objective and the FDA does not have ownership thereof; the beneficiary of the award is the community in general. That article states as follows: "The persons or entities or human groups linked by a common interest and affected directly by the harmful act or omission may file with the court of competent jurisdiction actions for damages and for deterioration caused to health or the environment, including biodiversity and its constituent elements.

Without prejudice to any other legal actions that might be available, the judge shall order the party responsible for the damage to pay compensation to the community directly affected and to repair the harm and damage caused. The judge shall also order the responsible party to pay ten percent (10%) of the value of the compensation to the plaintiff. (…)"

Accordingly, the trial court judgment issued by the President of the Provincial Court of Sucumbios provides, on page 179, as it must, that the compensation granted to the FDA is to be used by the FDA, with the assistance and advice of specialized international institutions, "exclusively" for the purposes specified in the judgment, i.e., the measures to remediate the environmental harm set forth in section 13 of the ruling.

In section 15, the trial court judgment provides that, for implementation of the environmental remediation measures, a Commercial Trust be established whose beneficiary is to be the FDA or the person or persons designated by it, taking into consideration that "'those affected' by the environmental harm, are undetermined, but determinable, persons united by a collective right, with the measures of reparation being the way to benefit them." The judgment also states that the judgment trust must contain the following provision: "**The entire endowment shall have** as its purpose to cover the necessary costs for the contracting of the persons in charge of carrying out the measures of reparation contemplated in part Thirteenth of the Findings, and the legal and administrative expenses of the trust." (Emphasis added.)

The trust referenced in the trial court judgment was established on March 1, 2012, according to the Commercial Trust for the Administration of ADAT Monies (the "Trust"). It names as the trustee FIDUCIARIA ECUADOR FIDUECUADOR S.A. ADMINISTRADORA DE FONDOS Y FIDEICOMISOS. In keeping with the foregoing, Clause 14 of the Trust contains the obligation of the beneficiary, FDA, not to assign those rights derived from the Trust.

In fact, Clause 14 states as follows, "THE BENEFICIARY'S OBLIGATION NOT TO ASSIGN ITS RIGHTS.- **The BENEFICIARY of this TRUST is subject to a negative covenant consisting of the commitment not to assign its rights as BENEFICIARY under any title**. Since it knows of the negative covenant imposed on the BENEFICIARY, the TRUSTEE will not record any assignment made by the BENEFICIARY, with the sole exception of cases of assignment arising from a court order in which the BENEFICIARY's will is not involved." (Emphasis added.)

[initials]



2. The FDA cannot sell or promise to sell financial interests or rights connected to the 10% in compensation described in Art. 43 of the Environmental Management Act for the following reasons:

The Act provides that the beneficiaries of the award are the plaintiffs.

The complaint which initiated the proceeding lists 48 individuals, the Lago Agrio Plaintiffs. The FDA was not a plaintiff.

When articulating their claim in the complaint, the plaintiffs authorized only the FDA to receive the money awarded. The claim for the payment of the 10% that was made in the complaint was not an assignment of the title to the right to that 10%. It is in this context that the judgment must be understood. That is why the appellate decision states, on page 16, that "the additional 10% [was] awarded in favor of the plaintiffs."

For the same reasons, to the extent the Agreements for Investment in the Ecuador Judgment listed in Section II(11-14) purport to assign to the Financiers an interest in the 10% referenced above, those Agreements also are invalid under Ecuadorian law, as I have stated. ▮

3. Lastly, the contract through which the FDA attempts to sell to Mr. Donziger the financial rights awarded in the judgment also fails to comply with Ecuadorian law for the following, additional reasons:

It grants Mr. Donziger the power to appear before judges, courts and administration of justice bodies in Ecuador, which constitutes a power of attorney for legal representation.

The granting of a power of attorney for legal representation requires certain formalities pursuant to Art. 42 of the General Organic Code of Procedure,[1] which have not been observed in the case.

[initials]

---

[1] "Art. 42. Constitution of counsel of record. Only an individual who is not in violation of any of the prohibitions established by law may serve as counsel of record.
The following means may be used to make an individual counsel of record:
1. Official letter, in the case of public entities, or by motion recognized by law filed with the presiding court.
2. Power of attorney executed in Ecuador or abroad before the competent authority.
3. Orally at the respective hearing.

"Art. 41. Counsel of record. An agent who has a power of attorney to appear in court in representation of a plaintiff or defendant. (…)"

Mr. Donziger has not validated his degree to practice law in Ecuador under Art. 332 of the Organic Code of the Judicial Branch,[2] therefore, a power of attorney for legal representation cannot be granted in his favor to act in Ecuador.


[signature]

_____

Dr. Santiago Velázquez Coello

September 27, 2018

Guayaquil, Ecuador

---

[2] "Art. 332. ATTORNEYS WHO HAVE GRADUATED ABROAD. Those who have obtained their degree abroad may practice law in the country, provided they meet the requirements set forth in international treaties and agreements signed by Ecuador, they obtain revalidation or recognition of their degree as prescribed by law, and in accordance with the principle of reciprocity. Prior to joining the Bar, they shall complete the one-year internship described in this Code."

"Art. 327. PARTICIPATION OF ATTORNEYS AS COUNSEL OF RECORD. In all legal proceedings, an attorney must appear as counsel of record for the parties except in constitutional cases and in those that are heard by justices of the peace, without prejudice to the right to appear *pro se* granted in the Code of Criminal Procedure. Those who are financially unable to retain the services of an attorney will have the right to be represented by public defenders. (...)"

Art. 49. Only practicing attorneys may appear in court as counsel of record and attend meetings, hearings and other proceedings, on behalf of the parties, when they cannot attend personally. (Federation of Lawyers Law).

# EXHIBIT 1

# DR. SANTIAGO VELÁZQUEZ COELLO

**Office: Manuel Rendón Seminario 1003 A and Ilanes, Urdesa**

042-610660 - 2610778 - 0994888532
sanvelcoe@santiagovelazquezabogados.com
Guayaquil – Ecuador

**Personal information:**

**Place and Date of Birth:**     Babahoyo, January 21, 1943

**Age:**                         75

**Marital status:**     Married

**ID#:**                090081056-5

**Education:**

Bachelor's degree in Modern Humanities – San José La Salle High School.

B.A. in Political and Social Sciences – University of Guayaquil.

- Attorney before the Tribunals and Courts of the Republic of Ecuador – University of Guayaquil.

- Doctor of Jurisprudence – University of Guayaquil.

# Experience:

## ADMINISTRATION OF CONSTITUTIONAL JUSTICE
- President of the Constitutional Court of Ecuador, 2006-2007.
- Member of the Constitutional Court of Ecuador, 2006.

## POSITIONS RELATED TO THE ADMINISTRATION OF JUSTICE
- Alternate Justice of the Supreme Court of Justice, 1990 – 1991 and 1998 – 1999 (highest ordinary justice body at the time).
- Founding arbitrator of the Arbitration and Conciliation Center of the Chamber of Commerce of Guayaquil, current arbitrator.
- Interim Judge of the Superior Court of Justice of Guayaquil – 1997 - 1998.
- Permanent Alternate Judge of the Superior Court of Justice of Guayaquil several times, from 1979 to 1990, from 1992 to 1996, and from 2005 to 2006.
- Tenth Provincial Judge of Guayas, 1977 – 1978 (civil judge at the time).
- Recorder for Special Commercial Pledges of Guayaquil, 1970 – 1977.
- Substitute First Notary for the Canton of Guayaquil, 1970.
- Substitute Second Notary for the Canton of Quevedo, 1969.
- Public Defender for the Province of Los Rios, 1968.

CERT. ULG VER: JD

- National Fourth Commissioner for Guayaquil, 1966 (Investigations judge for criminal matters and violations at the time).
- Clerk at the Third Provincial Court of Guayas, 1963 – 1966.
- Clerk at the Second Landlord-Tenant Court of Guayaquil, 1963.

## OTHER PUBLIC POSITIONS

- Advisor to the Judiciary Committee of the National Congress, 1992-1993.
- Permanent Delegate of the National Institute of Fisheries to the Board of the Fishing School of Manta, 1979.
- Legal Advisor to the National Institute of Fisheries, 1978-1979.
- Secretary of the School of Medical Sciences of the University of Guayaquil, 1975.
- Secretary Attorney for the Medical Department of the Ecuadorian Institute of Social Security, 1973.
- Collection Attorney for the Municipality of Guayaquil, 1973 and 1977.
- Collection Attorney for Collection Office of Guayas., 1969.

## ACADEMIC POSITIONS

- Professor of Constitutional Law I and II at Ecotec University.
- Visiting Professor of Constitutional Law, Master's Program in Fundamental Rights and Constitutional Law at the University of Guayaquil.
- Professor of Civil Jurisprudence and Practice in the Long-Distance Learning System of the Catholic University of Santiago de Guayaquil.
- Professor of Civil Procedure at the University of Guayaquil School of Law, 1975-1977.
- Professor of Civil and Agricultural Law at the *Vicente Rocafuerte* Secular University*, 1970 -1972.
- High School teacher in Ecuadorian History, Civics, Public Administration, Psychology, Economics, Geography.

## PRIVATE SECTOR PROFESSIONAL ACTIVITIES

- Legal Advisor to Solca in administrative law matters.
- Legal Advisor to the Civic Association of Guayaquil, 2007-2009.
- Member of the Board of the Civic Association of Guayaquil.
- First Member of the Editorial Board of *El Administrativista* [The Administrative Lawyer] law journal.
- Member of the National Committee of Creditors of Filanbanco S.A. (in liquidation).
- Outside Counsel for Banco Continental S.A., 1996-1998.
- Counsel of Record for Banco del Pichincha C.A., 1996-1998.
- Counsel of Record for Mastercard del Ecuador, 1988-1991.
- Counsel of Record for Banco de la Producción S.A., 1977-1987.
- Chief Executive Officer of the Construction Chamber of Guayaquil, 1977-1979.
- Advisor and attorney for several companies in the city of Guayaquil.
- Founding member of Velázquez & Velázquez law firm from 1968 to June 2012.
- Founding member of Santiago Velázquez Abogados Law Firm since July 2012.

CERT. ULG VER: JD

## MEMBERSHIPS

- Member of the Scientific Committee appointed at the IV Congress of Galician Law and the I International Congress of Procedural Law. La Coruña, Spain.
- Member of the Inter-American Bar Association.
- President of the Ibero-American Association of Public and Administrative Law Professionals, Jesús González Pérez Chapter – Ecuador.
- Member of the Ibero-American Association of Public and Administrative Law, Jesús González Pérez Chapter – Ecuador.
- Member of Guayas Bar Association.
- Member of the Ibero-American Institute of Aeronautics, Space and Commercial Aviation Law.

## PARTICIPATION IN INTERNATIONAL EVENTS

- I International Workshop on International Property, Ecuador 2007.
- IV Ibero-American Congress on Administrative and Public Law, Towards a New Era in Public Contracting, Ecuador 2007.
- I Ibero-American Workshop on Constitutional Law, Ecuador 2006.
- Symposium of Presiding Judges of Tribunals, Courts and Constitutional Courts on the XV anniversary of the New Colombian Constitution. Lectured on "The Enforcement of Social Rights: The Ecuadorian Case," Colombia 2006.
- International Seminar on "Administrative Justice in the Andean Region." Franco-Andean House, Constitutional Court, Supreme Court of Justice, Embassy of France and Projusticia, Ecuador 2006.
- XIII Symposium of Presiding Judges and Justices of the Constitutional Courts of Latin America, Spain and Portugal. Lectured on "Current Trends in Constitutional Oversight," Mexico 2006.
- V Ibero-American Conference on Constitutional Justice. Lectured on "The Constitutional Judge," Chile 2006.

## PUBLISHED ARTICLES

- "Democracia y Tribunales Constitucionales" [Democracy and Constitutional Tribunals]. <u>La Ciencia del Derecho Procesal Constitucional</u> [Science of Constitutional Procedural Law] Encyclopedia, edited in honor of Professor Héctor Fix – Zamudio, published by UNAM, Mexico 2008.
- "El Control Constitucional en la Actualidad" [Current Constitutional Oversight]. *Temas Constitucionales* [Constitutional Topics] Journal, 1st Trimester 2007.
- "Fundamentos Nacionales e Internacionales: La Exigencia de los Derechos Sociales" [International and National Grounds: The Enforcement of Social Rights]. *Temas Constitucionales* [Constitutional Topics] Journal, 3rd Trimester 2006.
- "El Tribunal Constitucional ha llegado al ideal de poseer carácter jurisdiccional y no político" [The Constitutional Tribunal Has Reached the Ideal Goal of Being Judicial and Not Political] *Temas Constitucionales* [Constitutional Topics] Journal, 3rd Trimester 2006.

## AWARDS AND HONORS RECEIVED

- University of Guayaquil, School of Law and Social Sciences confers an award in recognition of 50 years as a "Lawyer of the Courts and Tribunals of Justice of the Republic of Ecuador and for his enduring dedication to the practice of law," 2018

CERT. ULG VER: JD

- Guayas Bar Association, award for "50 Years in the Practice of Law," 2018.
- Ibero-American Association of Public and Administrative Law Professionals, Jesús González Pérez Chapter - Ecuador, as the MOST DISTINGUISHED JURIST IN 2015.
- Guayas Bar Association, for Contributions to the Community, 2014.
- Guayas Bar Association, for 40 years of professional practice, 2008.
- Constitutional Court of Chile, for contributions to the topic of "The Constitutional Judge," 2006.



**United Language Group**
433 Broadway
New York, NY 10013
+1 888.601.9814
legaltranslations@ulgroup.com

| | | |
|---|---|---|
| State of New York | ) | |
| Estado de Nueva York | | |
| | ) | ss: |
| | ) | a saber: |
| County of New York | ) | |
| Condado de Nueva York | | |

### Certificate of Accuracy
### Certificado de Exactitud

This is to certify that the attached translation is, to the best of our knowledge and belief, a true and accurate translation of the attached document, carried out by translators competent to translate from Spanish into English.

Por el presente certifico que la traducción adjunta es, según mi leal saber y entender, traducción fiel y precisa del documento adjunto, realizada por traductores competentes para traducir del español al inglés.

Dated: September 27, 2018
Fecha: 27 de septiembre de 2018

_____
Yasushi Sasaki
Senior Project Manager – Legal Translations
United Language Group

_____[firmado]_____
Yasushi Sasaki
Gerente de Proyeto Senior – Traducciones Legales
United Language Group

Sworn to and signed before
Jurado y firmado ante
me, this _____27th_____day of
mí, a los _____27_____días del
_____September_____2018
mes de ____septiembre____de 2018

_____
Notary Public
Notario Público

GINA MARIE STLAURENT          [firmado]
Notary Public, State of New York   [sello]
No. 01ST6148442
Qualified in New York County
Commission Expires May 15, 2022

CORTE DISTRITAL DE LOS ESTADOS UNIDOS DE AMÉRICA

DISTRITO SUR DE NUEVA YORK

---

—

11-CV-0691 (LAK)

**CHEVRON CORPORATION,
DEMANDANTE,**

v.

**STEVEN DONZIGER** y otros,
**DEMANDADOS.**

---

—

**DECLARACIÓN DEL DOCTOR SANTIAGO VELÁZQUEZ COELLO**

---

—

## DECLARACIÓN DEL DOCTOR SANTIAGO VELÁZQUEZ COELLO

Yo, Santiago Velázquez Coello, declaro bajo pena de perjurio según las leyes de los Estados Unidos de América que lo siguiente es verdadero y correcto:

### I. ANTECEDENTES PERSONALES

Nací en la ciudad de Babahoyo, provincia de Los Ríos, República del Ecuador, el 21 de enero del 1943. Mi domicilio está en la ciudad de Guayaquil, Ecuador.

Mi carrera profesional ha estado dedicada a la práctica del Derecho Procesal, Derecho Civil y el Derecho Constitucional. Además de haber tenido cargos académicos, y haber practicado la profesión privadamente, he servido como juez en diferentes tribunales del país, incluyendo el haber sido presidente del Tribunal Constitucional del Ecuador.

Soy abogado autorizado para litigar en Ecuador y Doctor en Jurisprudencia. He trabajado en la profesión como abogado o como juez por los pasados 50 años.

Esta declaración está redactada en español y estará traducida al inglés. Esta declaración es acorde a mis conocimientos y experiencia profesional.

Adjunto a este documento mi currículum vitae como Anexo 1.

### II. DOCUMENTOS REVISADOS PARA LA ELABORACIÓN DE ESTA DECLARACIÓN

Chevron Corporation ("Chevron") me solicitó que tratara algunos temas sobre la aplicación del Derecho ecuatoriano a determinadas actividades y acuerdos de recaudación de fondos con relación a la causa caratulada Chevron Corporation v. Donziger y otros, Caso No. CV-11-0690 (LAK), que tramita ante la Corte Distrital de los Estados Unidos para el Distrito Sur de Nueva York. Fundamento mis respuestas en mi revisión y análisis de los documentos que se detallan a continuación y que me fueron proporcionados por los abogados de Chevron, mi análisis del derecho aplicable, mi experiencia profesional y conocimiento del derecho ecuatoriano.

Los documentos proporcionados por Chevron son los siguientes:



1. Copia de la demanda presentada por 48 individuos ante el señor Presidente de la Corte de Justicia de Loja el 7 de mayo del 2003.
2. Copia de la sentencia dictada por el Presidente de la Corte Provincial de Sucumbíos del 14 febrero del 2011. Caso No. 2003-0002.
3. Copia de la Aclaración dictada por el Presidente de la Corte Provincial de Justicia de Sucumbíos, 4 de marzo del 2011.
4. Copia de la sentencia dictada por la Corte Provincial de Justicia de Sucumbíos de fecha 3 de enero del 2012. Caso No. 2011-0106.

1

5. Copia de la Aclaración dictada por la Corte Provincial de Justicia de Sucumbíos de fecha 13 de enero 2012. Caso No. 2011-0106

6. Copia de la sentencia de Casación dictada por la Sala de lo Civil y Mercantil de la Corte Nacional de Justicia de fecha 12 de noviembre del 2013. Juicio No. 174-2012.

7. Copia de la Aclaración dictada por la Corte Nacional de Justicia, el 22 de noviembre del 2013. Juicio 174-2012.

8. Copia de sentencia de la Corte Constitucional de Ecuador de fecha 27 de junio de 2018. En el Caso No. 0105-EP.

9. Copia del Poder Legal Internacional Duradero y Acuerdo para Inversión continua de los Servicios Profesionales, de fecha 1 de noviembre del 2007.

10. Copia del Fideicomiso Mercantil de Administración de Flujos ADAT, de fecha 1 de marzo del 2012.



Deseo aclarar que cuando me referiré a los "Demandantes de Lago Agrio" o "Accionantes" son los 47 (antes 48) individuos que forman la parte actora en el proceso en que Maria Aguinda y otros, Juicio No. 2003-002 iniciaron en contra de Chevron en Ecuador.

### III. PREGUNTAS Y RESPUESTAS

En los documentos que revisé, el Frente de Defensa de la Amazonía está intentando vender los derechos monetarios concedidos en la sentencia de Lago Agrio. Para dar un ejemplo, el Poder y Acuerdo de Honorarios con el señor Donziger, específicamente señala que "el FDA por este medio reconoce, afirma y se obliga a apoyar el **INTERÉS** existente por contrato de DR. DONZIGER, o, alternativamente en la medida en que sea necesario o útil, otorgan por la presente a DR. DONZIGER un **INTERÉS** en sus propios derechos equivalente al **INTERÉS** de DR. DONZIGER existente por contrato. Dicho INTERÉS, en cualquier caso, se entenderá dar derecho a DR. DONZIGER al 6,3% de cualquier FONDOS RECAUDADOS, que se define como cualquier colección de fondos relacionados con el CASO *AGUINDA* o la SENTENCIA *AGUINDA*, ya sea por orden judicial o acuerdo privado extrajudicial, en Canadá o en cualquier país, incluyendo, sin limitación, los FONDOS RECAUDADOS como daños reales/ ambientales a la medida permitida por la ley; los FONDOS RECAUDADOS del 10% CONCEDIDO del FDA; los FONDOS RECAUDADOS como interés post- juicio o cualquier otro concedido basado en los intereses legales; o los FONDOS RECAUDADOS como parte de cualquier derecho concedido adicional de honorarios o gastos adjudicados por un corte de Ecuador, Canadá, EE. UU. o cualquier otro país." Los documentos del 11 al 14 identificados anteriormente también demuestran que el FDA ha tratado de vender intereses en la Sentencia de la Lago Agrio a cambio de "inversiones" en efectivo.

**¿Si de acuerdo al derecho ecuatoriano, el FDA puede vender o prometer vender intereses o derechos financieros consecuencia de la sentencia de Lago Agrio, es esto posible?**

**Respuesta:**



En términos generales, la venta de derechos financieros derivados de la sentencia referida en la pregunta que pretende hacer el FDA no es posible conforme al ordenamiento jurídico ecuatoriano.

1. El FDA no puede vender ni prometer vender intereses o derechos financieros relativos a la condena para la remediación correspondiente a los daños y perjuicios porque dicha venta está prohibida, tanto por los términos de la Sentencia de Lago Agrio tal como esta fue dictada conforme al Art. 43 de la Ley de Gestión Ambiental, como por las disposiciones del fideicomiso resultante de la sentencia que fue creado posteriormente. Me permito elaborar:

3

Conforme al Art. 43 de la Ley de Gestión Ambiental la indemnización para la reparación de daños y perjuicios tiene un objetivo específico y su titularidad no corresponde al FDA, las reparaciones tienen como beneficiario a la colectividad en general. Dicho artículo señala lo siguiente: "Las personas naturales, jurídicas o grupos humanos, vinculados por un interés común y afectados directamente por la acción u omisión dañosa podrán interponer ante el Juez competente, acciones por daños y perjuicios y por el deterioro causado a la salud o al medio ambiente incluyendo la biodiversidad con sus elementos constitutivos.

Sin perjuicio de las demás acciones legales a que hubiere lugar, el juez condenará al responsable de los daños al pago de indemnizaciones a favor de la colectividad directamente afectada y a la reparación de los daños y perjuicios ocasionados. Además condenará al responsable al pago del diez por ciento (10%) del valor que represente la indemnización a favor del accionante. (…)"

Por consiguiente, la sentencia de primera instancia dictada por el Presidente de la Corte Provincial de Sucumbíos (en su página 179) establece, tal como le corresponde, que la entrega al FDA es para que, con el concurso y asesoramiento de instituciones internacionales especializadas, el FDA lo aplique "exclusivamente" a los fines especificados en la sentencia que son las medidas de reparación del daño ambiental citadas en el considerando décimo tercero de dicho fallo.

La sentencia de primera instancia dispone, en su considerando décimo quinto, que para la implementación de las medidas de reparación constituya un Fideicomiso Mercantil cuyo beneficiario sea el FDA, o la persona o personas que éste designe, considerando que ""los afectados" por los daños ambientales, son personas indeterminadas, pero determinables, unidas por un derecho colectivo, siendo las medidas de reparación la forma de beneficiarlos". Señala la misma sentencia que el fideicomiso resultante de la sentencia deberá contener la siguiente disposición: "**Todo el patrimonio tendrá** como destino cubrir los costos necesarios para la contratación de las personas encargadas de ejecutar las medidas de reparación previstas en el considerando Décimo Tercero, y los gastos legales y de administración del fideicomiso". (Lo resaltado es mío.)

El fideicomiso mencionado en la sentencia de primera instancia fue establecido el 1 de marzo de 2012, según el Fideicomiso Mercantil de Administración de Flujos ADAT (el "Fideicomiso"). Designa como fideicomisario a FIDUCIARIA ECUADOR FIDUECUADOR S.A. ADMINISTRADORA DE FONDOS Y FIDEICOMISOS. En concordancia con lo anterior, la Cláusula 14 del Fideicomiso contiene la obligación del beneficiario, el FDA, de no ceder los derechos provenientes del Fideicomiso.



De hecho la cláusula décimo cuarta señala lo siguiente: "OBLIGACIÓN DE NO CEDER LOS DERECHOS DE BENEFICIARIO.- **EL BENEFICIARIO del presente FIDEICOMISO adquiere una obligación de no hacer, consistente en el compromiso de no ceder sus derechos de BENEFICIARIO, a ningún título.** El FIDUCIARIO al conocer de esta obligación de no hacer, adquirida por el BENEFICIARIO, no registrará cesión alguna efectuada por el BENEFICIARIO. Se exceptúa de lo anterior, únicamente los casos de cesión derivados de orden judicial, en los que no intervenga la voluntad del BENEFICIARIO". (Lo resaltado es mío.)

4



2. El FDA no puede vender ni prometer vender intereses o derechos financieros relativos a la indemnización equivalente al 10% señalada en el Art. 43 de la Ley de Gestión Ambiental, por los siguientes motivos:

La norma legal indicada establece que los beneficiarios de la indemnización son los accionantes.

La demanda que da inicio al proceso tiene 48 accionantes personas naturales, los Demandantes de Lago Agrio. El FDA no fue accionante.

Los accionantes en su demanda, al formular la pretensión procesal, únicamente facultaron al FDA para recibir el dinero producto de la indemnización. La solicitud de entrega de los montos correspondientes al 10%, consignada en la demanda, no constituyó una cesión de la titularidad de los derechos sobre ese 10%. En este contexto debe entenderse la sentencia. Por ello es que la sentencia de apelación señala en (su página 16) que "el 10% adicional (fue) otorgado a favor de los accionantes".

Por las mismas razones, en la medida en que los Acuerdos para Inversión en la Sentencia Ecuatoriana que se detallan en la Sección II (11-14) pretenden ceder a los Financistas un interés en el 10% mencionado anteriormente, dichos Acuerdos también son inválidos en virtud del Derecho ecuatoriano, como lo he indicado. ▮▮▮▮▮▮▮

3. Por último, el contrato por medio del cual el FDA trata de vender al señor Donziger los derechos económicos de la sentencia, también inobserva el ordenamiento jurídico ecuatoriano por las siguientes razones adicionales:

Otorga al Dr. Donziger la facultad de comparecer ante jueces, tribunales y órganos de administración de justicia en el Ecuador, lo que constituye una procuración judicial.

La procuración judicial requiere ciertas formalidades para su otorgamiento conforme al Art. 42 del Código Orgánico General de Procesos[1], las que no se han cumplido en el caso.

---

[1] "Art. 42.- Constitución de la procuración judicial. La procuración judicial se constituirá únicamente a favor de una o un defensor que no se encuentre inserto en alguna de las prohibiciones previstas en la ley.
La procuración judicial podrá conferirse:
1. Por oficio, en el caso de entidades públicas o mediante escrito reconocido conforme con la ley, ante la o el juzgador del proceso.

El señor Donziger no tiene validado el título para ejercer la abogacía en el Ecuador conforme al Art. 332 del Código Orgánico de la Función Judicial[2], por tanto no puede recibir una procuración judicial en su favor para actuar en el Ecuador.

Dr. Santiago Velázquez Coello

27 de septiembre del 2018

Guayaquil, Ecuador

---

2. Por poder otorgado en el Ecuador o en el extranjero ante autoridad competente.
3. De manera verbal en la audiencia respectiva.

"Art. 41.- Procuradoras y procuradores judiciales. Son las o los mandatarios que tienen poder para comparecer al proceso por la o el actor o la o el demandado. (…)"

[2] "Art. 332.- ABOGADOS GRADUADOS EN EL EXTRANJERO.- Podrán ejercer la abogacía en el país, quienes hubieren obtenido su título en el extranjero, siempre que cumplan los requisitos previstos en los tratados y convenios internacionales suscritos por el Ecuador, que obtengan la revalidación o el reconocimiento de su título en la forma y bajo las condiciones que prescriba la ley, y con observancia del principio de reciprocidad.
Previamente a su incorporación al Foro realizarán el año de práctica pre procesal al que se refiere este Código."

"Art. 327.- INTERVENCIÓN DE LOS ABOGADOS EN EL PATROCINIO DE LAS CAUSAS.- En todo proceso judicial necesariamente intervendrá un abogado en patrocinio de las partes excepto en los procesos constitucionales y en los que se sustancien ante las juezas y jueces de paz, sin perjuicio del derecho a la autodefensa contemplado en el Código de Procedimiento Penal. Quienes se hallen en incapacidad económica para contratar los servicios de un abogado tendrán derecho a ser patrocinado por los defensores públicos. (…)"

Art. 49.- Solo los abogados en el ejercicio de su profesión podrán comparecer en juicio como procuradores judiciales y asistir a las juntas, audiencias y otras diligencias, en representación de las partes, cuando éstas no puedan concurrir personalmente. (Ley de Federación de Abogados).

# ANEXO 1.

# DR. SANTIAGO VELÁZQUEZ COELLO

**Oficina: Manuel Rendón Seminario 1003 A e Ilanes, Urdesa.**

042-610660 - 2610778 - 0994888532
sanvelcoe@santiagovelazquezabogados.com
Guayaquil – Ecuador.

## Datos Personales:

| | |
|---|---|
| **Lugar y Fecha de Nacimiento:** | Babahoyo, Enero 21/1943 |
| **Edad:** | 75 años |
| **Estado civil:** | Casado |
| **C.I. #:** | 090081056-5 |

## Títulos obtenidos:

Bachiller en Humanidades Modernas – Colegio San José La Salle.

Licenciado en Ciencias Políticas y Sociales – Universidad de Guayaquil.

-Abogado de los Tribunales y Juzgados de la República del Ecuador – Universidad de Guayaquil.

-Doctor en Jurisprudencia - Universidad de Guayaquil.

# Experiencia:

## ADMINISTRACIÓN DE JUSTICIA CONSTITUCIONAL

- Presidente del Tribunal Constitucional de la República del Ecuador, 2006-2007.
- Vocal del Tribunal Constitucional del Ecuador, 2006.

## CARGOS RELACIONADOS CON LA ADMINISTRACIÓN DE JUSTICIA

- Conjuez de la Excelentísima Corte Suprema de Justicia en 1990 – 1991 y 1998 – 1999 (en esos años máximo órgano de justicia ordinaria)
- Árbitro fundador del Centro de Arbitraje y Conciliación de la Cámara de Comercio de Guayaquil, actualmente en funciones.
- Ministro Interino de la Corte Superior de Justicia de Guayaquil – 1997 - 1998.
- Conjuez Permanente de la Corte Superior de Justicia de Guayaquil en varias ocasiones, desde 1979 hasta 1990, desde 1992 hasta 1996, y desde el 2005 al 2006.
Juez Provincial Décimo del Guayas 1977 – 1978 (en esa época Juez con competencia en asuntos civiles).
- Registrador de Prenda Especial de Comercio de       Guayaquil, 1970 – 1977.
- Notario Primero Suplente del Cantón Guayaquil - 1970.
- Notario Segundo Suplente del Cantón Quevedo – 1969.
- Defensor de Pobres de la Provincia de Los Ríos- 1968.

- Comisario Cuarto Nacional de Guayaquil – 1966 (en esa época Juez de Instrucción Penal y de Contravenciones).

- Ayudante del Juzgado Provincial Tercero del Guayas 1963 - 1966.

- Auxiliar del Juzgado Segundo de Inquilinato de Guayaquil - 1963.

## OTRAS FUNCIONES PÚBLICAS DESEMPEÑADAS

- Asesor de la Comisión de Asuntos Judiciales del Congreso Nacional, 1992-1993.

- Delegado permanente del Instituto Nacional de Pesca al Directorio de la Escuela de Pesca de Manta, 1979.

- Asesor Jurídico del Instituto Nacional de Pesca, 1978-1979.

- Secretario de la Facultad de Ciencias Médicas de la Universidad de Guayaquil - 1975.

- Secretario Abogado del Departamento Médico del Instituto Ecuatoriano de Seguridad Social. 1973.

- Abogado de Coactiva de la Municipalidad de Guayaquil, en 1973 y 1977.

- Abogado de Coactiva de la Jefatura de Recaudaciones del Guayas 1969.

## ACTIVIDADES DOCENTES DESEMPEÑADAS

- Profesor de Derecho Constitucional I y II en la Universidad Ecotec.

- Profesor invitado en la Especialidad en Procedimientos Constitucionales y Maestría en Derechos Fundamentales y Justicia Constitucional de la Universidad de Guayaquil.

- Profesor de la materia Práctica y Jurisprudencia Civil en el Sistema de Educación a Distancia de la Universidad Católica de Santiago de Guayaquil.

- Profesor de Código de Procedimiento Civil en la Facultad de Jurisprudencia de la Universidad de Guayaquil, 1975-1977.

- Profesor de Derecho Civil y Agrario de la Universidad Laica *Vicente Rocafuerte*, 1970 -1972.

- Profesor de Educación Secundaria en las materias de Historia del Ecuador, Cívica, Administración Pública, Psicología, Economía, Geografía.

## ACTIVIDADES PROFESIONALES PRIVADAS

- Asesor Jurídico de Solca en la rama de Derecho Administrativo

- Asesor Jurídico de la Junta Cívica de Guayaquil, 2007-2009.

- Vocal del Directorio de la Junta Cívica de Guayaquil.

- Primer Miembro del Consejo Editorial de la Revista Jurídica "El Administrativista".

- Miembro del Comité Nacional de Crédito de Filanbanco S.A. "En Liquidación".

- Abogado Externo del Banco Continental S.A., 1996-1998.

- Procurador Judicial del Banco del Pichincha C.A., 1996-1998.

- Procurador Judicial de Mastercard del Ecuador, 1988-1991.

- Procurador Judicial del Banco de la Producción S.A., 1977-1987.

- Gerente de la Cámara de la Construcción de Guayaquil, 1977-1979.

- Asesor y Abogado de varias empresas de la ciudad de Guayaquil.

- Socio fundador del Estudio Jurídico Velázquez & Velázquez desde el año 1968 hasta Junio del 2012.

- Socio fundador del Estudio Santiago Velázquez Abogados desde Julio del 2012.

## MEMBRESÍAS

- Miembro del Comité Científico designado en el IV Congreso de Derecho Gallego, y I Congreso Internacional de Derecho Procesal. La Coruña, España.

- Miembro de la Federación Interamericana de Abogados.

- Presidente de la Asociación Iberoamericana de Profesionales en Derecho Público y Administrativo "Jesús González Pérez" Capítulo - Ecuador

- Miembro de la Asociación Iberoamericana de Derecho Público y Administrativo "Jesús González Pérez" Capítulo-Ecuador.

- Miembro del Colegio de Abogados del Guayas.

- Miembro del Instituto Iberoamericano de Derecho Aeronáutico y del Espacio y de la Aviación Comercial.

## PARTICIPACIÓN EN EVENTOS INTERNACIONALES

- I Jornada Internacional de Propiedad Intelectual, Ecuador 2007.

- IV Congreso Iberoamericano de Derecho Administrativo y Público "Hacia una Nueva Era en la Contratación Pública", Ecuador 2007.

- I Jornadas Iberoamericanas de Derecho Constitucional, Ecuador 2006.

- Encuentro de Presidentes de Tribunales, Cortes y Salas Constitucionales con ocasión del XV Aniversario de la Nueva Constitución Colombiana. Ponente del Tema: La Exigibilidad de los Derechos Sociales. El Caso del Ecuador, Colombia 2006.

- Seminario Internacional "Justicia Administrativa en la Región Andina". Casa Franco-Andina, Tribunal Constitucional, Corte Suprema de Justicia, Embajada de Francia y Projusticia, Ecuador 2006.

- XIII Encuentro de Presidentes y Magistrados de los Tribunales Constitucionales y Salas Constitucionales de América Latina, España y Portugal. Ponente del Tema: Tendencias Actuales del Control Constitucional, México 2006.

- V Conferencia Iberoamericana de Justicia Constitucional. Ponente del Tema: El Juez Constitucional, Chile 2006.

## ARTÍCULOS PUBLICADOS

- "Democracia y Tribunales Constitucionales". Enciclopedia "La Ciencia del Derecho Procesal Constitucional" que se editó como homenaje al Profesor Héctor Fix – Zamudio, publicado por la UNAM, México 2008.

- "El Control Constitucional en la Actualidad", Revista Temas Constitucionales, I Trimestre 2007.

- "Fundamentos Nacionales e Internacionales: La Exigencia de los Derechos Sociales", Revista Temas Constitucionales, III Trimestre 2006.

- "El Tribunal Constitucional ha llegado al ideal de poseer carácter jurisdiccional y no político" Revista Temas Constitucionales, II Trimestre 2006.

## CONDECORACIONES Y DISTINCIONES RECIBIDAS
- Universidad de Guayaquil, Facultad de Jurisprudencia y Ciencias Sociales confiere "Diploma" en mérito de haber cumplido 50 años de incorporación como "Abogado de los Juzgados y Tribunales de Justicia de la República del Ecuador y por su permanente entrega al ejercicio Profesional", 2018

- Colegio de Abogados del Guayas, conmemoración de "Bodas de Oro en el ejercicio de la Abogacía", 2018.
- Asociación Iberoamericana de Profesionales en Derecho Público y Administrativo "Jesús González Pérez Capítulo – Ecuador, como JURISTA MAS DESTACADO DEL AÑO, 2015.
- Colegio de Abogados del Guayas, por Aporte a la Comunidad, 2014.
- Colegio de Abogados del Guayas, por haber cumplido 40 años de Ejercicio Profesional 2008.
- Tribunal Constitucional de Chile, por la Sustentación del tema "El Juez Constitucional" 2006.