**STEVEN R. DONZIGER**

245 WEST 104TH STREET, SUITE 7D
NEW YORK, NEW YORK 10025

212-570-4499 (O)
917-566-2526 (CELL)

October 23, 2018

**VIA ECF**

Honorable Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

   RE:   *Chevron v. Donziger*, Case No. 11 Civ. 691 (LAK)

Dear Judge Kaplan:

The grounds for my assertion of confidentiality over Ms. Sullivan's documents are patently obvious: these are internal documents reflecting deliberations, strategy, and operational practices not just of myself but of the broader overlapping teams of advocates and affiliates seeking to hold Chevron accountable for its contamination in Ecuador.

In the motion for a protective order over Ms. Sullivan's and other documents that I filed over four months ago, I explained what was happening and the factual basis to justify the imposition of confidentiality:

> [D]iscovery in this case [is] turning into a private "blank warrant" allowing Chevron to intrude and infiltrate itself into the First Amendment-protected political activities, associations, speech, operational practices, and strategic deliberations of Mr. Donziger and others [who] are part of a distinct interest and advocacy group focused on achieving environmental justice for the pollution left at Chevron's former operations sites in Ecuador. . . .
>
> Members of [this group] are "pursu[ing] [a] collective effort to foster beliefs which they admittedly have the right to advocate," *NAACP v. Alabama* at 463. These beliefs in include not just the funders' and supports' belief in the importance of remediating the extant contamination at

> Chevron's former operations sites in the Ecuadorian Amazon, but their belief in the necessity of confronting certain root causes—national, cultural, and racial double standards, a restrictive view of corporate obligations, and a general lack of accountability within larger political, legal, and economic structures and ideologies—that allowed the contamination to happen in the first place. Chevron has responded to this exercise of associational rights with a vicious campaign of reprisals in the form of collateral litigation, public relations pressure including outright "demonization," and other judicial and extrajudicial retaliation and harassment aimed directly at suppressing the protected associational speech of funding, organizing, and spending. These reprisals were plainly aimed at "drying up" support for the [Ecuador environmental judgment] from specific funders, potential future funders, and other types of supporters in the public discourse generally.

Dkt. 2026. The truth of my arguments in that motion could not be better illustrated than by the rhetorical direction and excess of Chevron's recent motion to strike. Chevron now openly broadens its attacks to not just me but *all* the "environmental, indigenous and shareholder activists, academics, and others who [also engage in] efforts to force Chevron into a settlement" of its environmental liability in Ecuador. Dkt. 2107 at 1.

Just as I described in my motion, Chevron is using the access provided by the Court's "blank warrant" to intrude on the internal strategic deliberations of advocates and to use the information so obtained to craft a much broader "demonization" campaign in violation of the First Amendment, aimed at inflicting reprisals on a group of citizens for "pursu[ing] their collective effort to foster beliefs which they admittedly have the right to advocate." *NAACP v. Alabama* at 463.

The actual constitutional harm in what has happened with Ms. Sullivan's documents flowed from when they were given, under this Court's orders, ***to Chevron***—the avowed adversary of the conscience communities seeking to hold it accountable. Once the material has arrived in Chevron's hands, whether it now become available to attention the broader public is of subsidiary importance.

In fact, now that it is in Chevron's hands, and in light of the Chevron's avowed strategy of cherry-picking snippets of material to create a false and distorted picture of events for demonization purposes, it is important that I and others have full use of the material as necessary to correct and contextualize Chevron's attacks.

Hon. Lewis A. Kaplan
October 23, 2018
Page 3 of 3

Accordingly, I do not oppose lifting the confidentiality designation, although Chevron and its lawyers remain accountable to only use such private material as is necessary to support whatever claims for relief they may be making. I add that the lifting of confidentiality must apply across the board, including to the content of Ms. Sullivan's declaration dated September 28, 2018, and the depositions at which she revealed that that declaration was not only drafted by Gibson Dunn lawyers, but that those lawyers refused to implement a variety of changes that Ms. Sullivan sought to "her" declaration.

          Sincerely,

          /s

          Steven R. Donziger