# EXHIBIT 85

Court of Appeal Motion Nos. M47811 and M47813
Court of Appeal File Nos. C63309 and C63310

# COURT OF APPEAL FOR ONTARIO

B E T W E E N:

DANIEL CARLOS LUSITANDE YAIGUAJE, BENANCIO FREDY CHIMBO GREFA,
MIGUEL MARIO PAYAGUAJE PAYAGUAJE, TEODORO GONZALO PIAGUAJE
PAYAGUAJE, SIMON LUSITANDE YAIGUAJE, ARMANDO WILMER PIAGUAJE
PAYAGUAJE, ANGEL JUSTINO PIAGUAJE LUCITANTE, JAVIER PIAGUAJE
PAYAGUAJE, FERMIN PIAGUAJE, LUIS AGUSTIN PAYAGUAJE PIAGUAJE, EMILIO
MARTIN LUSITANDE YAIGUAJE, REINALDO LUSITANDE YAIGUAJE, MARIA
VICTORIA AGUINDA SALAZAR, CARLOS GREFA HUATATOCA, CATALINA ANTONIA
AGUINDA SALAZAR, LIDIA ALEXANDRIA AGUINDA AGUINDA, CLIDE RAMIRO
AGUINDA AGUINDA, LUIS ARMANDO CHIMBO YUMBO, BEATRIZ MERCEDES
GREFA TANGUILA, LUCIO ENRIQUE GREFA TANGUILA, PATRICIO WILSON
AGUINDA AGUINDA, PATRICIO ALBERTO CHIMBO YUMBO, SEGUNDO ANGEL
AMANTA MILAN, FRANCISCO MATIAS ALVARADO YUMBO, OLGA GLORIA GREFA
CERDA, NARCISA AIDA TANGUILA NARVAEZ, BERTHA ANTONIA YUMBO
TANGUILA, GLORIA LUCRECIA TANGUILA GREFA, FRANCISCO VICTOR TANGUILA
GREFA, ROSA TERESA CHIMBO TANGUILA, MARIA CLELIA REASCOS REVELO,
HELEODORO PATARON GUARACA, CELIA IRENE VIVEROS CUSANGUA, LORENZO
JOSE ALVARADO YUMBO, FRANCISCO ALVARADO YUMBO, JOSE GABRIEL REVELO
LLORE, LUISA DELIA TANGUILA NARVAEZ, JOSE MIGUEL IPIALES CHICAIZA, HUGO
GERARDO CAMACHO NARANJO, MARIA MAGDALENA RODRIGUEZ BARCENES,
ELIAS ROBERTO PIYAHUAJE PAYAHUAJE, LOURDES BEATRIZ CHIMBO TANGUILA,
OCTAVIO ISMAEL CORDOVA HUANCA, MARIA HORTENCIA VIVEROS CUSANGUA,
GUILLERMO VINCENTE PAYAGUAJE LUSITANTE, ALFREDO DONALDO PAYAGUAJE
PAYAGUAJE and DELFIN LEONIDAS PAYAGUAJE PAYAGUAJE

Plaintiffs
(Appellants)

- and -

CHEVRON CORPORATION, CHEVRON CANADA LIMITED and
CHEVRON CANADA FINANCE LIMITED

Defendants
(Respondents)

# FURTHER SUPPLEMENTARY JOINT MOTION RECORD OF
# CHEVRON CANADA LIMITED AND CHEVRON CORPORATION
**(Motion for Security for Costs returnable June 27, 2017)**

June 23, 2017

**GOODMANS LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

**Benjamin Zarnett**  LSUC#: 17247M
bzarnett@goodmans.ca
Tel:     416-597-4204
Fax:     416-979-1234
**Suzy Kauffman**  LSUC#: 41703D
skauffman@goodmans.ca
Tel:     416-597-6281
Fax:     416-979-1234

Lawyers for the Defendant (Respondent in
Appeals), Chevron Canada Limited

**OSLER, HOSKIN & HARCOURT LLP**
Barristers & Solicitors
100 King Street West
1 First Canadian Place
Suite 6200, P.O. Box 50
Toronto, Ontario  M5X 1B8

**Larry Lowenstein**  LSUC#: 23120C
llowenstein@osler.com
Tel:     416-862-6454
Fax:     416-862-6666
**Laura Fric**  LSUC#: 36545Q
lfric@osler.com
Tel:     416-862-5899
Fax:     416-862-6666

Lawyers for the Defendant (Respondent in
Appeals), Chevron Corporation

**NORTON  ROSE  FULBRIGHT  CANADA
LLP**
Barristers & Solicitors
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, ON  M5J 2Z4

**Clarke Hunter, Q.C.**
clarke.hunter@nortonrosefulbright.com
Tel:     403-267-8292

Fax:     403-264-5973
**Anne Kirker, Q.C.**
anne.kirker@nortonrosefulbright.com
Tel:     403-267-9564
Fax:     403-264-5973
**Robert Frank**  LSUC#: 35456F
robert.frank@nortonrosefulbright.com
Tel:     416-202-6741
Fax:     416-360-8277

Lawyers for the Defendant (Respondent in Appeals), Chevron Corporation


TO:  **LENCZNER SLAGHT ROYCE SMITH GRIFFIN LLP**
Barristers
130 Adelaide Street West, Suite 2600
Toronto, ON  M5H 3P5

**Alan J. Lenczner, Q.C.**  LSUC#: 11387E
alenczner@litigate.com
Tel:     416-865-3090
Fax:     416-865-9010
**Brendan Morrison**  LSUC#: 61635B
bmorrison@litigate.com
Tel:     416-865-2842
Fax:     416-865-9010

Lawyers for the Plaintiffs (Appellants in Appeals)


AND TO:  **KOSKIE MINSKY LLP**
Barristers & Solicitors
900 - 20 Queen Street West
Toronto, Ontario  M5H 3R3

**Kirk Baert**  LSUC#: 30942O
kbaert@kmlaw.ca
Tel:     416-595-2117
Fax:     416-977-3316
**Celeste Poltak**  LSUC#: 46207A
cpoltak@kmlaw.ca
Tel:     416-595-2701
Fax:     416-977-3316

Co-counsel for the Plaintiffs (Appellants in Appeals)

AND TO:     **LAX O'SULLIVAN LISUS GOTTLIEB LLP**
Barristers
145 King St. West, Suite 2750
Toronto, ON  M5H 1J8

**Terrence J. O'Sullivan**  LSUC#: 13354K
tosullivan@counsel-toronto.com
Tel:    416-598-3556
Fax:    416-598-3730
**Paul Michell**  LSUC#: 39196J
pmichell@counsel-toronto.com
Tel:    416-644-5359
Fax:    416-598-3730

Lawyers for Chevron Canada Capital Company

**INDEX**

| TAB | DESCRIPTION | PAGE |
|---|---|---|
| 1. | Letter from lawyers for Chevron Canada Limited and Chevron Corporation dated June 21, 2017 | 1 |
| 2. | Letter from lawyers for the Appellants dated June 22, 2017 | 12 |



1

**OSLER**

**Osler, Hoskin & Harcourt LLP**
Box 50, 1 First Canadian Place
Toronto, Ontario M5X 1B8
416.362.2111 MAIN
416.862.6666 FACSIMILE

**Goodmans** LLP

Barristers & Solicitors

Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, Ontario M5H 2S7

Telephone: 416.979.2211
Facsimile: 416.979.1234
goodmans.ca

June 21, 2017

Alan J. Lenczner, Q.C.
Lenczner Slaght LLP
Suite 2600, 130 Adelaide Street West
Toronto, ON M5H 3P5

Kirk M. Baert
Koskie Minsky LLP
20 Queen Street West
Suite 900, Box 52
Toronto ON M5H 3R3

**SENT BY E-MAIL**

Dear Messrs. Lenczner and Baert:

**Yaiguaje *et al.* v. Chevron Corporation ("Chevron Corp.") and Chevron Canada Limited ("Chevron Canada")**
**Court File No. CV-12-9808-00CL; Court of Appeal Files Nos. C63309 and C63310**

We are writing jointly on behalf of the defendants Chevron Corp. and Chevron Canada with regard to the June 27 security for costs motions brought by Chevron Corp. and Chevron Canada.

The defendants' motion records for the security for costs motions were served on May 2, 2017. On May 9, 2017, Mr. Lenczner advised Mr. Kolla, counsel for Chevron Canada, that the plaintiffs (responding parties) would not be filing any responding evidence on the security for costs motions and would not be cross-examining on the affidavits filed by the defendants. On this basis, the parties agreed upon a schedule, confirmed by email on May 12, 2017, to exchange factums on the security for costs motion, which schedule did not contemplate any evidence being filed by the plaintiffs.

The defendants delivered their factums on June 5, 2017, under the agreed upon schedule. The defendants noted in their moving factums that claims of impecuniosity must be supported by evidence, which the plaintiffs had failed to provide.

On June 19, 2017, we received the plaintiffs' factum and purported responding motion record that includes documents (in particular three settlement agreements with third party funders) that are not proven by affidavit. The responding motion record was delivered despite your advice that the plaintiffs would not be filing responding evidence and after Chevron Corp. and Chevron Canada had delivered their factums. The record is improper and the documents are not properly in evidence on these motions.

In the plaintiffs' factum there are a number of assertions that are made without any supporting evidence and which Chevron Corp. and Chevron Canada have reason to question. If the plaintiffs

Page 2

had properly introduced evidence to support its assertions, Chevron Corp. and Chevron Canada would have had the opportunity to test that evidence in cross-examination and provide reply evidence. Having been deprived that opportunity, and without prejudice to taking the position that the security for costs motions should proceed with the judge ignoring all such assertions in your factum, Chevron Corp. and Chevron Canada seek answers to the following questions for the purpose of the motion:

1.      In respect of paragraph 25 of the plaintiffs' factum where it is asserted that "… neither the remediation trustee nor the indigenous appellants can fund the litigation. Chevron has known about past third party funding and has impeded any future funding.", please confirm:

    (a)     details of all current agreements, understandings or arrangements, between the plaintiffs, their counsel, their agents and any other party in any jurisdiction, whereby money or support of any kind is provided directly or indirectly in respect of the plaintiffs' litigation against the defendants or any other affiliate of Chevron Corp., including enforcement proceedings ("Funding") and supporting documentation;

    (b)     the identities and contact information of all entities providing Funding;

    (c)     details of all efforts by the plaintiffs to obtain Funding, whether successful or not, including all fundraising efforts (crowd sourcing etc.). Please see attached at Tab 1 screenshots of crowdfunding efforts in support of the plaintiffs' litigation;

    (d)     whether all previously received Funding has been exhausted on case-related expenditures; and

    (e)     the identities of all persons or entities with a current financial interest in these proceedings and the persons' or entities' current financial status.

2.      In paragraph 26 of the respondents' factum, it is asserted that counsel for the plaintiffs are working on contingency. Please provide the following confirmation:

    (a)     details of the contingency arrangements between the plaintiffs and all Canadian counsel and/or other third parties, and supporting documentation including all retainer agreements;

    (b)     details of all payments made by the plaintiffs, their counsel, their agents or by any other party to all Canadian counsel since the commencement of this litigation in Canada, in respect of the plaintiffs' litigation against the defendants.   The confirmation should reconcile to the information at Tab 2, which we are informed are documents produced by Josh Rizack during the RICO proceedings. Mr. Rizack

was an accountant for the plaintiffs and their agents. Steven Donziger, counsel who acted for the plaintiffs, identified these as documents that Mr. Rizack prepared for Mr. Donziger to assist with tracking expenses related to the plaintiffs' litigation. You will see that significant payments to Lenczner Slaght are disclosed in these documents, as are funds paid to other Canadian counsel.

(c)     Details regarding how the $118,498.19 received from the defendants (as payment for costs in respect of the appeals before the Ontario Court of Appeal and the Supreme Court of Canada arising from the motions challenging jurisdiction) was disbursed by counsel and plaintiffs (or others).

3.     In paragraph 50 of the plaintiffs' factum, it is stated that if security for costs is awarded, that no more than $50,000 should be ordered to be paid as security for costs. Please advise as to the identity (or identities) of the source of such funds, which we understand would be available to be posted as security. Please also confirm the source of the funds used to pay the costs award made by Nordheimer J. at Tab O of Chevron Corp.'s responding record.

Given that the hearing is fast approaching, please provide the answers by no later than 5 pm on Thursday, June 22, 2017. We reserve the right to rely on any responses, or the lack of a response, at the motion, or depending upon the responses, to insist upon the production of a witness with knowledge of the circumstances to be cross-examined.

**OSLER, HOSKIN & HARCOURT LLP**                    **GOODMANS LLP**

Per:                                                Per:

————————————————                                    ————————————————
Larry Lowenstein                                    Benjamin Zarnett

c:     Brendan Morrison (*Lenczner Slaght Royce Smith Griffin LLP*)
       Celeste Poltak, Garth Myers (*Koskie Minsky LLP*)
       Terrence O'Sullivan, Paul Michell (*Lax O'Sullivan Lisus Gottlieb LLP*)
       Clarke Hunter, Anne Kirker, Robert Frank (*Norton Rose Fulbright Canada LLP*)
       Laura Fric, Eric Morgan (*Osler Hoskin & Harcourt LLP*)
       Suzy Kauffman, Peter Kolla (*Goodmans LLP*)

# TAB 1

# ⚬⚬⚬ THE CROWD vs.

CASES   NEWS   ABOUT



The Crowd vs. **Chevron Oil Spill**



**€9,320** of €25,000

37% Funded, 153 Donors, 9 Days left.

EUR   USD

○ 5
○ 10
◉ 25
○ 50
○ 100

€ 25.00

**DONATE NOW**

---

WHATS THE CASE ABOUT    CASE NEWS    THE CROWD    PARTICIPATE

**The Crowd Claims**

Chevron must clean up its mess in Ecuador.

**Next legal action of the crowd**

Seize the assets of Chevron in Canada, in order to collect the legitimate compensation of 9.5 billion US dollars, needed to clean up the contamination of 400,000 hectare Amazon rainforest and to set up a large health program. To cover the ongoing costs for preparation of this upcoming legal step, scheduled in 2017, the crowd needs US $28,000 (25.000 euro) by the end of 2017.

**Summary**

In 2011, the Ecuador National Court ordered Chevron to pay 9,5 billion US dollars to clean up 400,000 hectare of polluted Amazon rainforest and to set up a large health program. The contamination was arising due to inappropriate and outdated oil extraction methods between 1964 and 1995. Until now Chevron refuses to pay and has meantime stripped all its assets in Ecuador.

**Legal progress**

The Supreme Court decision in Canada allowed the victims to proceed with the enforcement in that country.

**Case background and who The Crowd supports**

Chevron left Ecuador years ago, but it 'forgot' to take home the 16 billion gallons of toxic waste that contaminates streams and rivers relied on by local inhabitants for their drinking water, bathing, and fishing. After that, Chevron ignored the Ecuadorian National Court and refused to pay the 9,5 billion US dollars to clean the contamination of 400,000 hectare Amazon rainforest.

**Legal Updates**

**2017-03-09**

The Toronto Court judge who heard the case in Canada accepted a request by UDAPT (Unión de Afectados por Texaco), the Ecuadorian plaintiffs, in which they asked he deny Chevron the possibility of re-litigating all the arguments previously resolved by the Ecuadorian Courts. The judge ruled in favor of those affected. With this pronouncement the UDAPT, members of indigenous communities of Ecuador, advance with their iconic case, already enduring over 23 years of litigation. The Canadian Court decision may be interpreted, says Pablo Fajardo, the attorney of the Ecuadorian affected people, as "an acceptance by the judge of the validity of the sentence issued by the Ecuadorian Courts". This decision also stops Chevron from causing unnecessary delays. Fajardo acknowledged that the judge did accept the argument presented by the oil company's lawyers that Chevron Canada and Chevron Corporation are different companies. However, Fajardo expects this decision to be appealed and thinks "it will surely be reversed."

**2017-01-18**

The judge in Canada is deciding upon whether Chevron is only allowed to bring in their arguments that were allowed by the Ecuadorian Court, or that Chevron is able to bring in all new arguments, that were earlier withheld by the Equadorian Court . We are positive about the chance that it will be the former, but we are waiting for the decision.

**2016-09-29**





**The Crowd Versus**
@TheCrowdVersus

🔲➕ **Follow**

Ecuador Case: Focus Shifts to Canada Where Enforcement Hrg Targeting Chevron Assets Begins MONDAY go.shr.lc/2cWmO3T #ChevronCleanUp

6:49 PM - 14 Sep 2016

Reply to @TheCrowdVersus

Trends

#FatTuesday   Amazon S3   #Oscars 🏆   Jamaal Charles   Adrian Peterson   Bengie Gonzalez
Scott Kingery   #openbadges   Cody Sedlock   Lauren London

© 2017 Twitter   About   Help Center   Terms   Privacy policy   Cookies   Ads info

**The Crowd Versus**
@TheCrowdVersus

♣+ Follow

And here's how you can help: @Grrrowd you can donate to stand for #ClimateJustice #ChevronCleanUp



**EnvironmentalJustice** @EnvJustice

Here's why we need an #antichevron day ejolt.org/2016/05/chevro ... and here's how we mapped them ejatlas.org/company/chevro...

RETWEET
1

4:21 PM - 21 May 2016

# TAB 2

# Total Case Expenditures by Entity
# 2007-2013

| Category | Entity | TOTAL |
|---|---|---|
| US Legal | Keker Van Nest LLP | 3,700,000.00 |
| US Legal | Smyser Kaplan Veselka | 2,900,000.00 |
| US Legal | Patton Boggs | 2,158,143.85 |
| US Legal | Kohn Swift | 1,500,000.00 |
| Enforcement | Nextant LLC | 1,332,715.47 |
| Ecuador Legal | Selva Viva Cia.Ltda | 1,213,000.00 |
| Misc. | Payments to Others and Case Expenses (Donziger) | 1,151,580.81 |
| Legal for Case Support | Purrington Moody Wells (Carmody) | 909,100.00 |
| US Legal | Freidman Kaplan Seiler | 771,525.98 |
| US Legal | Gerald B Lefcourt | 749,188.71 |
| Enforcement | Enrique (Blaker Brooks) | 450,000.00 |
| US Legal | Emery Celli Brinckerhoff & ABANEW | 395,972.89 |
| Fund Raising | Julian Jarvis | 390,627.79 |
| Admin/Legal/Support | Andrew M Woods (includes ADP payroll fees/Taxes) | 359,317.44 |
| Advocacy/PR | Karen Hinton | 358,211.78 |
| Ecuador Legal | Pablo Estenio Fajardo Mendoza | 294,661.30 |
| Advocacy/PR | Amazon Watch | 272,400.00 |
| Enforcement | Lenczner Slaght | 234,361.96 |
| Enforcement | Miranda y Amado | 195,000.00 |
| Admin/Legal/Support | Aaron M Page | 194,762.36 |
| Fund Raising | Hassans Gibraltar | 160,114.95 |
| Fundraising/Case Support | Rizack/Rising Group | 156,636.99 |
| US Legal | David Sherman (Keker) | 125,000.00 |
| Admin/Legal/Support | Erion Graham | 119,390.21 |
| US Litigation Support | Stratus Consulting | 108,567.38 |
| US Litigation Support | Lexolution | 100,000.00 |
| Advocacy/PR | Digitalis Media | 97,086.07 |
| Enforcement | Tinoco | 78,958.82 |
| US Litigation Support | Rhino Imagining | 75,461.91 |
| US Legal | Jay Horowitz | 65,812.62 |
| Advocacy/PR | Shimmerlik Corp | 60,152.66 |
| Enforcement | Neal & Harwell | 60,000.00 |
| Advocacy/PR | Kerry Kennedy | 50,000.00 |
| US Legal | The Weinberg Group | 50,000.00 |
| Advocacy/PR | Oil Change International | 49,500.00 |
| US Legal/Investigation | Grant Fine/Fine & Assoc | 42,500.00 |
| Advocacy/PR | Lou Dematteis | 41,000.00 |
| Enforcement | Sergio Bermudes (Brazil) | 40,353.43 |
| Enforcement | Cardenas & Cardenas (Colombia) | 40,242.17 |

JRIZACK0000043

Acctive AP

As of 7/16/12

| | Payment Request | | 12/14/12 | | | | | |
|---|---|---|---|---|---|---|---|---|
| Page # | PAYEE | AMOUNT £ | AMOUNT $ | INVOICE REF (ATTACHED) | WITHIN APPROVED BUDGET CAPS. | ENGAGEMENT FEE (ATTACHED UNLESS PREVIOUSLY PROPOSED) | APPROVED BY STEERING COMMITTEE | Comments |
| | Sasha Vujacic | | $ 45,000.00 | | Yes | Previously Provided | Steven Donziger | |
| | Loweller Local Counsel | | $ 25,000.00 | | Yes | Previously Provided | Steven Donziger | |
| | Amazon Watch (Han Persson, London) | | $ 25,000.00 | | Yes | Previously Provided | Steven Donziger | |
| | Jim Gross | | $ 71,200.00 | | Yes | Previously Provided | Steven Donziger | |
| | Law firm Bought, Bryce Dean Boffito LLP | | $ 10,000.00 | | Yes | Previously Provided | Steven Donziger | |
| | Motley & Tom Mora LLP | | $ 112,388.53 | | Yes | Previously Provided | Steven Donziger | |
| | Law Offices of Steven Donziger | | $ 100,000.00 | | Yes | Previously Provided | Steven Donziger | |
| | Karen Hinton | | $ 75,000.00 | | Yes | Previously Provided | Steven Donziger | |
| | Karen Hinton | | $ 34,500.00 | | Yes | Previously Provided | Steven Donziger | |
| | Aaron Marr Page | | $ 28,124.00 | | Yes | Previously Provided | Steven Donziger | |
| | Graham Erion | | $ 11,000.00 | | Yes | Previously Provided | Steven Donziger | |
| | Intisarct LLC | | $ 100,000.00 | | Yes | Previously Provided | Steven Donziger | |
| | The Weinberg Group Consulting, Inc. | | $ 5,000.00 | | Yes | Previously Provided | Steven Donziger | |
| | Boulton, Fernandez Madero & Lombard | | $ 95,140.00 | | Yes | Previously Provided | Steven Donziger | |
| | Production scenes | | $ 15,000.00 | | Yes | Previously Provided | Steven Donziger | |
| | | | $ 666,466.53 | | | | | |





**Lenczner Slaght**

130 Adelaide St W          T 416-865-9500
Suite 2600                 F 416-865-9010
Toronto, ON               www.litigate.com
Canada M5H 3P5

12

June 22, 2017

Alan J. Lenczner, Q.C.
Direct line:    416-865-3090
Direct fax:     416-865-2844
Email:          alenczner@litigate.com

**VIA E-MAIL**

Benjamin Zarnett
Goodmans LLP
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

Larry Lowenstein
Osler, Hoskin & Harcourt
1 First Canadian Place
P.O. Box 50, Stn. 1st Can. Place
Toronto, ON  M5X 1B8

Dear Counsel:

**RE:   Aguinda et al v. Chevron Corporation et al
         Our File No.: 43222**

I acknowledge receipt of your letter of June 21, 2017.

I disagree that the Settlement Agreements are new evidence. The appellants are complete
strangers to those Agreements. The appellants could not have filed a meaningful
Affidavit. The appellants learned of them by the wide publicity given to them by
Chevron Corp. through its press releases and by other means. The Settlement
Agreements are signed on behalf of Chevron Corp. by its Assistant Secretary Kari
Endries or by its counsel. The Settlement Agreements are documents unchallengeable by
Chevron Corp. Chevron Corp. widely publicized these Agreements obviously to warn
any prospective funder to be aware of the litigation that would ensue if a funder engaged
in funding.

The fee contingency arrangements that Lenczner Slaght and Koskie Minsky have is to
reimburse these firms at the rate of $1,000 per docketed hour.

The $118,000 that the appellants received as costs for their successful appeals before the
Ontario Court of Appeal and before the Supreme Court of Canada has been utilized for
disbursements, including, paying:

(a)   HST;

(b)   the costs awarded by Nordheimer, J to Chevron Corp.;

June 22, 2017

(c)     Very significant printing and photocopying costs for the prior Court of Appeal and Supreme Court of Canada proceedings, the proceedings before Hainey, J and before the Court of Appeal;

(d)     courier charges for serving materials and court fees; and

(e)     expenses for the travel and hotel bills for a trip to the Supreme Court of Canada and a trip to Ecuador.

Yours very truly,

*Alan J. Lenczner*

Alan J. Lenczner, Q.C.

AL/ej

cc.     Kirk Baert / Celeste Poltak / Garth Myers
        Robert Frank
        Brendan Morrison

DANIEL CARLOS LUSITANDE   - and -   CHEVRON CORPORATION *et al.*
YAIGUAJE *et al.*
Plaintiffs (Appellants)                                    Defendants (Respondents)

Court of Appeal Motion Nos. M47811 & M47813
Court of Appeal File Nos. C63309 & C63310

## COURT OF APPEAL FOR ONTARIO

Proceeding commenced at Toronto

## FURTHER SUPPLEMENTARY JOINT MOTION RECORD OF CHEVRON CANADA LIMITED AND CHEVRON CORPORATION
### (Motion for Security for Costs)

**GOODMANS LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

**Benjamin Zarnett** LSUC#: 17247M
bzarnett@goodmans.ca
**Suzy Kauffman** LSUC#: 41703D
skauffman@goodmans.ca

Tel:    416.979.2211
Fax:    416.979.1234

Lawyers for the Defendant (Respondent in Appeals),
Chevron Canada Limited

6709580

# EXHIBIT 86

# COURT OF APPEAL FOR ONTARIO

CITATION: Yaiguaje v. Chevron Corporation, 2017 ONCA 741
DATE: 20170921
DOCKET: M47811 & M47813 (C63309 & C63310)

Epstein J.A. (In Chambers)

BETWEEN

Daniel Carlos Lusitande Yaiguaje, Benancio Fredy Chimbo Grefa, Miguel Mario Payaguaje Payaguaje, Teodoro Gonzalo Piaguaje Payaguaje, Simon Lusitande Yaiguaje, Armando Wilmer Piaguaje Payaguaje, Angel Justino Piaguaje Lucitante, Javier Piaguaje Payaguaje, Fermin Piaguaje, Luis Agustin Payaguaje Piaguaje, Emilio Martin Lusitande Yaiguaje, Reinaldo Lusitande Yaiguaje, Maria Victoria Aguinda Salazar, Carlos Grefa Huatatoca, Catalina Antonia Aguinda Salazar, Lidia Alexandria Aguinda Aguinda, Clide Ramiro Aguinda Aguinda, Luis Armando Chimbo Yumbo, Beatriz Mercedes Grefa Tanguila, Lucio Enrique Grefa Tanguila, Patricio Wilson Aguinda Aguinda, Patricio Alberto Chimbo Yumbo, Segundo Angel Amanta Milan, Francisco Matias Alvarado Yumbo, Olga Gloria Grefa Cerda, Narcisa Aida Tanguila Narvaez, Bertha Antonia Yumbo Tanguila, Gloria Lucrecia Tanguila Grefa, Francisco Victor Tanguila Grefa, Rosa Teresa Chimbo Tanguila, Maria Clelia Reascos Revelo, Heleodoro Pataron Guaraca, Celia Irene Viveros Cusangua, Lorenzo Jose Alvarado Yumbo, Francisco Alvarado Yumbo, Jose Gabriel Revelo Llore, Luisa Delia Tanguila Narvaez, Jose Miguel Ipiales Chicaiza, Hugo Gerardo Camacho Naranjo, Maria Magdalena Rodriguez Barcenes, Elias Roberto Piyahuaje Payahuaje, Lourdes Beatriz Chimbo Tanguila, Octavio Ismael Cordova Huanca, Maria Hortencia Viveros Cusangua, Guillermo Vincente Payaguaje Lusitande, Alfredo Donaldo Payaguaje Payaguaje and Delfin Leonidas Payaguaje Payaguaje

Plaintiffs (Appellants)

(Responding Parties)

and

Chevron Corporation, Chevron Canada Limited and Chevron Canada Finance Limited

Defendants (Respondents)

(Moving Parties)

Suzy Kauffman, for the moving party Chevron Canada Limited on M47811

Larry P. Lowenstein and Laura Fric, for the moving party Chevron Corporation on M47813

Paul M. Michell, for Chevron Canada Capital Company

Alan J. Lenczner, Q.C., Brendan F. Morrison, Kirk M. Baert, Celeste Poltak and Garth Myers, for the responding parties

Heard: June 27, 2017


**Epstein J.A.:**

[1]     The appeal underlying this motion for security for costs has its genesis in Ecuador. The appellants (the "Ecuadorian plaintiffs") hold a judgment of approximately 9.5 billion dollars from an Ecuadorian court (the "Ecuadorian judgment") against the respondent, Chevron Corporation.[1] The Ecuadorian plaintiffs seek to enforce that judgment in Ontario against Chevron and its seventh level, indirect subsidiary, Chevron Canada.

[2]     Chevron and Chevron Canada initially contested the jurisdiction of Ontario courts to enforce the Ecuadorian judgment. The matter reached the Supreme Court of Canada, which affirmed Ontario's jurisdiction over the Ecuadorian plaintiffs' action: *Chevron Corp v. Yaiguaje*, 2015 SCC 42, [2015] 3 S.C.R. 69.

---

[1] The judgment was originally in the amount of approximately US $18 billion before being reduced to approximately US $9.5 billion by the National Court of Justice of Ecuador in November 2013.

3

[3]    Following the Supreme Court's ruling, Chevron and Chevron Canada brought motions for summary judgment before the Ontario Superior Court. Both motions sought the dismissal of the Ecuadorian plaintiffs' claims against Chevron Canada, on the basis of its separate corporate personality from Chevron. The Ecuadorian plaintiffs brought a cross-motion for summary judgment, seeking a declaration that Chevron Canada's assets were exigible to satisfy Chevron Corp.'s judgment debt. The Ecuadorian plaintiffs also brought a motion to add Chevron Canada Capital Company ("CCCC") as a defendant to their action, and to strike the defences in Chevron Corp.'s statement of defence.

[4]    The motion judge granted the respondents' motion for summary judgment. He dismissed the Ecuadorian plaintiffs' cross-motion and motion to add CCCC as a defendant, and partially granted their motion to strike. The Ecuadorian plaintiffs appealed all four decisions to this court.[2]

[5]    The respondents now seek an order for security for costs totalling $1,022,951.47: $160,000 for the appeal and the rest for the proceedings below. They submit that such an order is appropriate as the Ecuadorian plaintiffs are not ordinarily resident in Ontario, have not provided evidence of impecuniosity, and have not established a good chance of success in the pending appeal. The Ecuadorian plaintiffs submit that security for costs should not be awarded given

---

[2] The motion to strike is no longer relevant, as in a decision dated April 11, Nordheimer J. (as he then was) refused leave to appeal that aspect of the order. I will make no further reference to it in these reasons.

4

the merits of their appeal and Chevron's delay in bringing this motion. They also urge this court to adopt a new approach to the law of security for costs, one that displays sensitivity to the principle of international comity and the similarity of this proceeding to a class action.

[6]    For the reasons that follow, I have determined to order security for costs in the amount of $591,335.14 for Chevron Canada, and $351,616.33 for Chevron.

**BACKGROUND**

[7]    The judicial history in this case dates back to 1993, and the facts underlying the litigation as far back as 1964. I will provide only those facts relevant to the security for costs motions.

[8]    The Ecuadorian plaintiffs represent approximately 30,000 indigenous villagers from Ecuador's Oriente region. Chevron is a public company, incorporated in Delaware and headquartered in California. Its principal business involves holding shares in subsidiary corporations and managing those investments.

[9]    The Ecuadorian judgment relates to oil extraction activities in the Oriente region between 1964 to 1992 by Texaco Inc., a corporation that merged with Chevron prior to 2003. These extraction activities allegedly caused extensive environmental damage.

5

[10]   Chevron, which has no assets in Ecuador, refused to acknowledge the Ecuadorian judgment following its release in February 2011. The Ecuadorian plaintiffs therefore sought to enforce the judgment in various jurisdictions around the world.

[11]   In lengthy reasons delivered in 2014, Judge Kaplan of the District Court for the Southern District of New York found that the Ecuadorian judgment had been obtained by fraud (the "New York decision") and prohibited the judgment from being enforced in the United States. His decision was upheld by the United States Court of Appeal for the Second Circuit, and the Supreme Court declined to grant *certiorari* for a further appeal.

[12]   In 2012, the Ecuadorian plaintiffs commenced an action in Ontario, seeking to enforce the Ecuadorian judgment against Chevron and Chevron Canada.

[13]   Chevron and Chevron Canada initially disputed whether Ontario courts had *jurisdiction simpliciter* to recognize and enforce the Ecuadorian judgment. This dispute ultimately reached the Supreme Court, which concluded in a decision released in September 2015 (the "*Chevron* decision") that Ontario courts had jurisdiction over the enforcement action.

[14]   However, the Supreme Court was clear that the finding of jurisdiction simply afforded the Ecuadorian plaintiffs the opportunity to seek to enforce the Ecuadorian judgment in Ontario. Success was not guaranteed – Chevron and Chevron

Canada remained free to argue against enforcement based on their separate corporate personality, and any other applicable defences.

[15]   The matter proceeded to the Ontario Superior Court. Chevron and Chevron Canada brought motions for summary judgment to dismiss the Ecuadorian plaintiffs' claim against Chevron Canada. The principal basis for the motions was that Chevron Canada had a separate legal personality from Chevron, and was therefore not liable for Chevron's judgment debts.

[16]   The Ecuadorian plaintiffs brought a cross-motion for summary judgment, seeking a declaration that the assets of Chevron Canada are exigible to satisfy Chevron's judgment debt. They did not allege wrongdoing on the part of Chevron Canada, but instead submitted that Chevron Canada was an asset of Chevron available for execution and seizure pursuant to the *Execution Act*, R.S.O. 1990, c. E.24 to satisfy the Ecuadorian judgment. In the alternative, they argued that the court should pierce the corporate veil between Chevron and Chevron Canada, based on Chevron's effective control over Chevron Canada and the injustice that would otherwise result. The Ecuadorian plaintiffs also brought a motion to add Chevron Canada Capital Company ("CCCC"), a sixth-level subsidiary of Chevron that owns all the shares of Chevron Canada, as a defendant to their action.

[17]   In reasons dated January 20, 2017, the motion judge granted Chevron and Chevron Canada's summary judgment motions and dismissed the Ecuadorian plaintiffs' cross-motion. In separate reasons, dated January 25, 2017, the motion

judge refused to allow the Ecuadorian plaintiffs to amend their statement of claim by adding CCCC.

[18]   As to the summary judgment motions, the motion judge concluded that Chevron Canada was not an asset of Chevron, but rather a separate legal person. Chevron Canada was therefore not exigible and available for execution and seizure pursuant to the *Execution Act*. The motion judge rejected the Ecuadorian plaintiffs' submission that Chevron enjoyed an indirect beneficial interest in Chevron Canada, thereby allowing application of s. 18(1) of the *Act*, which states that "the sheriff may seize and sell any equitable or other right, property, interest or equity of redemption in or in respect of any goods, chattels or personal property, including leasehold interests in any land of the execution debtor." The motion judge found that Chevron, as an indirect shareholder, did not have any legal or equitable interest in the assets of Chevron Canada. As the *Execution Act* was a "procedural statute" which did not create any new rights in property, its provisions were of no assistance to the Ecuadorian plaintiffs.

[19]   The motion judge also declined to pierce the corporate veil separating Chevron and Chevron Canada. He noted the long-standing case-law holding that the separate legal personality of a corporate entity would only be disregarded where it was completely dominated and controlled, and being used as a shield for fraudulent or improper conduct. The motion judge found that the Ecuadorian plaintiffs had not made out either part of the test. The evidence showed that

8

Chevron and Chevron Canada had a typical parent/subsidiary relationship, and the Ecuadorian plaintiffs had not alleged that Chevron's corporate structure was designed or used as an instrument or fraud or wrongdoing. The motion judge further concluded that there was no independent "just and equitable" or "group enterprise" exception allowing the corporate veil to be lifted even where the established test was not satisfied.

[20]  As to the motion to add CCCC as a defendant, the motion judge declined to grant the Ecuadorian plaintiffs the relief sought. He noted that the Ecuadorian plaintiffs did not allege a cause of action against CCCC, but rather sought the same relief against it as against Chevron Canada. Accordingly, the motion judge concluded that the Ecuadorian plaintiffs' claim against CCCC could not succeed for the same reasons that their claim against Chevron Canada had failed.

[21]  The Ecuadorian plaintiffs have appealed both of the motions judge's decisions, prompting this motion for security for costs. Chevron Canada seeks security for costs for the appeal in the amount of $100,000, and for the proceedings below in the amount of $541,335.14 (being Chevron Canada's portion of the costs awarded below). Chevron seeks security for costs for the appeal, in the amount of $60,000, and for the proceeding below in the amount of $321,616.33 (being Chevron's portion of the costs awarded below). The total amount of security sought is $1,022,951.47

## SECURITY FOR COSTS

### (1) General Principles

[22]   Chevron and Chevron Canada rely on rr. 61.06(1)(b) and 56.01(1)(a) of the

*Rules of Civil Procedure.* Rule 61.06(1)(b) reads as follows:

> In an appeal where it appears that,
>
>> (b) an order for security for costs could be made against the appellant under rule 56.01 a judge of the appellate court, on motion by the respondent, may make such order for security for costs of the proceeding and of the appeal as is just

[23]   While r. 56.01(1)(a) reads:

> The court, on motion by the defendant or respondent in a proceeding, may make such order for security for costs as is just where it appears that
>
>> (a) the plaintiff or applicant is ordinarily resident outside Ontario;

[24]   Here, there is no dispute that the Ecuadorian plaintiffs reside outside of

Ontario. They have pleaded that they are residents of Ecuador.

[25]   This means that Chevron and Chevron Canada have met their initial onus

of showing that the Ecuadorian plaintiffs fit within r. 61.06(1)(b). Thus, they have

successfully "triggered the enquiry" into security for costs, requiring me to take into

account a number of factors and make such order as is just: *Zeitoun v. Economical*

*Insurance Group* (2008), 91 O.R. (3d) 131 (Div. Ct.), aff'd 2009 ONCA 415, 96

O.R. (3d) 639, at para. 44. Relevant considerations include the merits of the claim

and the possible effect of an order for security preventing a bona fide claim from proceeding. Courts enjoy broad discretion to make such order as is just: *Novak v. St. Demetrius (Ukranian Catholic) Development Corporation*, 2017 ONCA 693, at para. 9; *Stojanovic v. Bulut*, 2011 ONSC 874 (Master), at para. 5.

[26]   As per *Zeitoun*, at paras. 49-50, if the Ecuadorian plaintiffs demonstrate impecuniosity on a balance of probabilities, they can resist the motion by showing that their claim is not plainly devoid of merit – a low evidentiary threshold. Conversely, where impecuniosity is not shown, a closer scrutiny of the merits is called for and it will be legitimate to require the Ecuadorian plaintiffs to demonstrate a good chance of success on the main appeal in order to resist the motion. The Ecuadorian plaintiffs submit that test is satisfied given the merits of their pending appeal.

[27]   The Ecuadorian plaintiffs also advance a novel submission, one that Mr. Lenczner, their counsel, says should become part of the law pertaining to security for costs. The Ecuadorian plaintiffs submit that this motion should be approached differently because of the combination of two factors – it is part of an action for recognition and enforcement of a foreign judgment, and the original Ecuadorian action essentially amounts to a class action. In oral argument, Mr. Lenczner suggested that security for costs should never be ordered against an appellant in such circumstances.

[28]   Chevron and Chevron Canada submit that security for costs is warranted because the Ecuadorian plaintiffs have not provided evidence of impecuniosity, and have not established a good chance of success in the pending appeal. They also reject the appellant's proposed new approach to the law of security for costs, contending that the principle of comity does not require the Ecuadorian plaintiffs to be treated more favourably than domestic litigants.

[29]   I have structured my analysis of the parties' submissions in two parts. I begin by outlining why security for costs should be ordered under the usual analysis. I then explain why the appellants' proposed change to the law of security for costs does not warrant a different conclusion.

**Impecuniosity**

[30]   A party who seeks to establish impecuniosity must lead evidence of "robust particularity", with full and frank disclosure, and supporting documentation as to income, expenses and liability: *T.S. v. Publishing Group Inc. v. Shokar*, 2013 ONSC 1755 (Master); *Mapara v. Canada (Attorney General)*, 2016 FCA 305, at para. 8. Doherty J. (as he was then) explained the rationale for this evidentiary rule in *Hallum v. Canadian Memorial Chiropractic College* (1989), 70 O.R. (2d) 119 (Ont. H.C.), at pp. 9-10:

> A litigant who falls within one of the categories created by rule 56.01(a) to (f), and who relies on his impecuniosity to avoid an order requiring that he post security, must do more than adduce some evidence of impecuniosity. The onus rests on him to satisfy the court

12

> that he is impecunious...The onus rests on the party
> relying on impecuniosity, not by virtue of the language of
> rule 56.01, but because his financial capabilities are
> within his knowledge and are not known to his opponent;
> and because he asserts his impecuniosity as a shield
> against an order as to security for costs.

[31]   In my view, the Ecuadorian plaintiffs have failed to demonstrate that they are

impecunious. The only relevant evidence filed in their responding motion record

consists of three settlement agreements between Chevron and third parties who

had previously funded the Ecuadorian plaintiffs in this litigation. These third party

funders have disavowed their financial interest in the Ecuadorian judgment, in the

light of the New York decision.

[32]   Chevron and Chevron Canada object that these settlement agreements are

not properly in evidence. They are not proven by affidavit and were filed after the

Ecuadorian plaintiffs advised that they would not be tendering any responding

evidence on the motion, thus preventing cross-examination and reply evidence. I

need not address this evidentiary dispute, as I agree with Chevron and Chevron

Canada that these settlement agreements do not assist the Ecuadorian plaintiffs

in demonstrating impecuniosity. What the settlement agreements demonstrate is

that the Ecuadorian plaintiffs have received a significant amount of funding for this

litigation in the past. They leave unanswered the question of whether the

Ecuadorian plaintiffs have other funding available to them – a question that the

Ecuadorian plaintiffs declined to answer.

13

[33]   The Ecuadorian plaintiffs have filed no other evidence as to their finances beyond these three settlement agreements. There is no supporting evidence as to their income, expenses and liability. This can hardly be called "robust particularity". We know nothing about the individual circumstances of any of the 47 Ecuadorian plaintiffs – and perhaps more importantly, their financial backers.

[34]   Accordingly, I conclude that the Ecuadorian plaintiffs cannot demonstrate impecuniosity. I must assume that ordering security for costs will not end this litigation.

**Merits**

[35]   Where the moving party has met its initial onus under r. 56.01, and where the responding party is not impecunious, security for costs will generally be appropriate unless the responding party can demonstrate that their appeal has a good chance of success. I agree with the statement of Code J. in *Cigar500.com Inc. v. Ashton Distributors Inc.* (2009), 99 O.R. (3d) 55, at para. 69, that "the burden in *Zeitoun* for a Plaintiff who is not "impecunious" is a high one." If the responding party is not impecunious, the standard is higher than "not devoid of merit, but is not as high as proving the claim on a balance of probabilities at trial, or establishing that there is no triable issue on a summary judgment motion": *Bruno Appliances and Furniture Inc. v. Cassels Brock & Blackwell LLP,* 2013 ONSC 4501 (Div Ct.), at para. 19.

14

[36]   In my view, the Ecuadorian plaintiffs have not demonstrated that their appeal has a good chance of success. [3] The motion judge held that, absent a piercing of the corporate veil, the shares and assets of Chevron Canada are not available for execution and seizure to satisfy the Ecuadorian judgment against Chevron. That conclusion is unlikely to be overturned.

[37]   The separate legal personality of corporations is a fundamental principle of corporate law, recognized in *Salomon v. Salomon & Co.,* [1897] A.C. 22 (U.K. H.L.) and endorsed by Canadian courts many times. The principle applies equally to groups of companies – such as the Chevron group – absent a compelling reason to pierce the corporate veil. As the English Court of Appeal made clear in *Adams v. Cape Industries Plc*, [1991] 1 All E.R. 929, [1990] B.C.C. 786, at pp. 817, 820: :

> There is no general principle that all companies in a group of companies are to be regarded as one. On the contrary, the fundamental principle is that "each company in a group of companies ... is a separate legal entity possessed of separate legal rights and liabilities."
>
> . . .
>
> Our law, for better or worse, recognizes the creation of subsidiary companies, which though in one sense the creatures of their parent companies, will nevertheless under the general law fall to be treated as separate legal entities with all the rights and liabilities which would normally attach to separate legal entities.

---

[3] In what follows, I will only consider the appeal in respect of Chevron Canada. CCCC is essentially in the exact same position as Chevron Canada vis-à-vis Chevron. Accordingly, if the motion judge correctly concluded that summary judgment should be granted in respect of the appellants' claim for relief against Chevron Canada, he was also correct in concluding that there was no basis upon which to add CCCC as a defendant.

[38]   Brown J. (as he then was) expressed support for the principles in *Adams* in an earlier decision in this litigation, when the matter of jurisdiction was before the courts. He cited *Adams* in noting that "the fact that a parent corporation operates a number of world-wide companies as an integrated economic unit does not mean that separate legal entities will be ignored, absent some compelling reason for lifting the corporate veil." Other Canadian courts have reached similar conclusions: see *Cunnigham v. Hamilton* (1995), 169 A.R. 132 (C.A.), at para. 4; *Bow Valley Husky (Bermuda) Ltd. v. St. John Shipbuilding*, 126 D.L.R. (4th) 1 (Nfld C.A.), at paras. 48-49, rev'd on other grounds, [1997] 3 S.C.R. 1210; *Martin v. Astrazeneca Pharmaceuticals PLC*, 2012 ONSC 2744, at paras. 120-121, aff'd 2013 ONSC 1169 (Div. Ct.); *First Gulf Bank v. Collavino Inc.*, 2013 ONSC 4630, at paras. 107-113.

[39]   The question is, therefore, whether the Ecuadorian plaintiffs can show they are entitled to execute Chevron's judgment-debt against Chevron Canada, despite their separate legal personalities. To do so, the Ecuadorian plaintiffs must either establish a proper basis for execution against Chevron Canada under the *Execution Act*, or provide "some compelling reason for lifting the corporate veil". In my view, the appellants have not demonstrated a good chance of success on either front.

### *Enforcing against Chevron Canada under the Execution Act*

[40]   The central difficulty with the Ecuadorian plaintiffs' submissions on this issue is that absent a piercing of the corporate veil, they lack an existing right or interest in Chevron Canada. I do not see how they can avail themselves of the *Execution Act* in such circumstances.

[41]   I agree with the motion judge that the *Execution Act*, notwithstanding the broad language found in s. 18(1), is only engaged when the judgment debtor has an existing right or interest in the property over which execution is sought. As noted by the motion judge, Conway J. adopted this position in *Belokon v. Kyrgz Republic*, 2016 ONSC 4506, stating at para. 31, that "The Execution Act is a procedural statute. It does not create new rights — it only provides a process for the enforcement of otherwise existing rights." I find it unlikely that this court will reach a different conclusion on the proper interpretation of the *Act*, having recently upheld Conway J.'s decision in its entirety: 2016 ONCA 981, leave to appeal to S.C.C. refused, [2017] S.C.C.A. No. 74, and [2017] S.C.C.A. No. 75.

[42]   The Ecuadorian plaintiffs submit that they nonetheless fall within the ambit of the *Act* as they enjoy a beneficial interest in Chevron Canada's assets and shares. At the motion, they relied on *Sistem Muhendislik Insaat Sanayi Ve Ticaret Anonim Sirketi v. Kyrgyz Republic,* 2014 ONSC 2407, where Thorburn J., in their view, came to a different conclusion than *Belokon* on roughly the same facts. However, her decision was reversed by this court, on the basis that the Republic

17

was not properly served in accordance with the *State Immunity Act*: 2015 ONCA 447, 126 O.R. (3d) 545, leave to appeal to S.C.C. refused, [2015] S.C.C.A. 354.

[43]   Regardless, I do not read Thorburn J. as finding that the *Act* creates rights in property where there were none before. Rather, her finding that the Kyrgyz Republic enjoyed a beneficial interest in shares issued by "Kyrgyzaltryn" (a wholly owned subsidiary of the Republic), turned on several factors not present in this appeal (set out at paras. 53-61):

> (a) the Republic provided all the consideration for the issuance of the shares,
>
> (b) the relevant agreement referred to the "Kyrgyz side", which was defined to include the Republic,
>
> (c) various different parties stated at different times that the Republic was the owner of the shares; and
>
> (d) special laws were enacted to confirm the Republic's interest in the shares and control of their use.

[44]   I also disagree with the Ecuadorian plaintiffs' submission that, since the dividends flowing between Chevron Canada and Chevron can be seized under the *Execution Act*, the *assets* that generate those dividends should also be seizable. I do not see the existence of dividends as detracting from the conclusion that Chevron has no exigible interest in Chevron Canada. I concur with the motion judge and Brown J. that "the distribution of profits from sub to parent via dividends

18

is a standard fact of inter-corporate life." It does not provide a sound basis for a right or interest in Chevron Corp.'s assets.

### Piercing the Corporate Veil

[45]   Accordingly, the remaining question in terms of merits is whether the motion judge erred in refusing to pierce the corporate veil between Chevron and Chevron Canada. In my view, the Ecuadorian plaintiffs are also unlikely to be successful here. This court, in *Shoppers Drug Mart Inc. v. 6470360,* 2014 ONCA 85, leave to appeal to S.C.C. refused, [2014] S.C.C.A. No. 119, confirmed that the appropriate test to apply in determining whether the corporate veil should be pierced remains that stated by Laskin J.A. in *642947 Ontario Ltd. v. Fleischer* (2001), 56 O.R. (3d) 417 (C.A.), at para. 68:

> Typically, the corporate veil is pierced when the company is incorporated for an illegal, fraudulent or improper purpose. But it can also be pierced if when incorporated "those in control expressly direct a wrongful thing to be done": *Clarkson Co. v. Zhelka*, [1967] O.J. No. 1054 at p. 578. Sharpe J. set out a useful statement of the guiding principle in *Transamerica Life Insurance Co. of Canada v. Canada Life Assurance Co.* (1996), 28 O.R. (3d) 423 at pp. 433-34 (Gen. Div.), affd [1997] O.J. No. 3754 (C.A.): "the courts will disregard the separate legal personality of a corporate entity where it is completely dominated and controlled and being used as a shield for fraudulent or improper conduct."[4]

---

[4] The corporate veil can also be pierced where "the corporation has acted as the authorized agent of its controllers, corporate or human", or "where a statute or contract requires it". I see nothing to indicate the appellants relied on either of these bases, and the motion judge states at para. 16 that "the plaintiffs do not allege that Chevron Canada… is an agent of Chevron".

[46]   As stated by Sharpe J. (as he then was) in *Transamerica* at para. 22, the first part of the test, "complete control", requires more than ownership. It requires "complete domination, and that the subsidiary company does not, in fact, function independently." The second part of the test relates to the nature of the corporations' conduct. There must be "conduct akin to fraud that would otherwise unjustly deprive claimants of their rights."

[47]   On the first branch, the motion judge concluded that Chevron Canada was not completely dominated and controlled by Chevron, but rather that they had a typical parent/subsidiary relationship. This determination is a finding of mixed fact and law, and will not be easy for the Ecuadorian plaintiffs to overcome on appeal. Moreover, in coming to this conclusion, the motion judge reasonably relied upon and adopted the findings of Brown J. These findings include that Chevron Canada initiates its own plans and budgets, funds its day to day operations and some recent capital expenditures, and files its own tax returns and corporate statements. Brown J. also noted that the relevant corporate structure has been in place since 1966, and was clearly not instituted in order to avoid the Ecuadorian judgment.

[48]   In terms of the second branch, and as the motion judge noted, the Ecuadorian plaintiffs expressly do not plead that the corporate structure of which Chevron Canada is a part was designed or used as an instrument of fraud or wrongdoing. At para. 24 of their pleadings, the Ecuadorian plaintiffs state that "the plaintiffs do not allege any wrongdoing against Chevron Canada". Nor have the

Ecuadorian plaintiffs provided convincing proof that Chevron's corporate structure is being used "as a shield for fraudulent or improper conduct."

[49]   It follows that the Ecuadorian plaintiffs do not have a good chance of satisfying the well-established test for piercing the corporate veil. Instead, they take the position that corporate separateness should not be applied in situations where it will yield a result "too flagrantly opposed to justice".

[50]   The motion judge correctly refused to accept that submission. As he noted, Sharpe J. rejected the notion that the corporate veil could be pierced based on what is "just and equitable" in *Transamerica* (a submission based off a solitary dictum to that effect found in *Kosmopoulos v. Constitution Insurance Co. of Canada*, [1987] 1 S.C.R. 2, also relied upon by the Ecuadorian plaintiffs) This court has also rejected that position on several occasions: *Parkland Plumbing & Heating Ltd. v. Minaki Lodge Resort 2002 Inc.,* 2009 ONCA 256, 305 D.L.R. (4th) 577 (Ont. C.A.), at para. 50; *A-C-H International Inc. v. Royal Bank*, 254 D.L.R. (4th) 327 (Ont. C.A.), at para. 28; and *Boyd v. Wright Environmental Management Inc.*, 2008 ONCA 779, 303 D.L.R. (4th) 747, at para. 44, where Juriansz J.A. noted that "the "just and equitable" ground for piercing the corporate veil, suggested in earlier cases, was firmly rejected by Sharpe J. in *Transamerica*, and upheld on appeal to this court" This submission has also been rejected in numerous other cases, which have found that mere injustice to one party is not sufficient to pierce the corporate veil, without wrongdoing or conduct akin to fraud (see *B.G. Preeco I (Pacific Coast)*

21

*Ltd. v. Bon Street Holdings Ltd.* (1989)*, 43 B.L.R. 67 (C.A.), at para. 37; *Edington*

*v. Mulek Estate*, 2008 BCCA 505, 54 B.L.R. (4th) 165, at paras. 24-26, *Nevsun*

*Resources Ltd. v. Delizia Ltd.,* 2016 FC 393, at paras. 49-50).

[51]   Although I have concluded that the Ecuadorian plaintiffs do not have a good

chance of success in this appeal, I do not say that they face an impossible task.

Thorburn J.'s analysis in *Kyrgz Republic* shows that in certain situations, for the

purposes of the *Execution Act*, a party may be taken to have an exigible beneficial

interest in shares that it does not own legally – albeit on very different facts from

these, and on the basis of reasoning not adopted by this court.

[52]   As well, it is worthy of note that the Supreme Court, in its decision in this

action, observed at para. 95 that "this is not a case in which the Court is called

upon to alter the fundamental principle of corporate separateness, as reiterated in

*BCE Inc., Re,* 2008 SCC 69, [2008] 3 S.C.R. 560 (S.C.C.) at least not at this

juncture." The Court, while stating that its decision "should not be understood to

prejudice further arguments with respect to the distinct corporate personalities of

Chevron and Chevron Canada", seemingly left open the possibility of rethinking

the doctrines of corporate separateness and presumably the principles behind

piercing the corporate veil as well. However, even considering these points, I do

not see the Ecuadorian plaintiffs as having a "good chance of success" on this

appeal. In my view, applying the usual security for costs analysis, the just order in

this case would require the Ecuadorian plaintiffs to post security for costs.

## (2) Does the Context of this Case Change the Analysis?

[53]   With his signature vigour, Mr. Lenczner argues that the Supreme Court, in its *Chevron* decision, adopted a "new approach" to enforcement and recognition actions. In his view, the Supreme Court instructed the courts to approach such cases in a different manner than first instance actions. He urges this court to heed the Supreme Court's call for a "generous and liberal approach to the recognition and enforcement of foreign judgments." The Ecuadorian plaintiffs also submit that the need for a generous approach to recognition and enforcement is further buttressed in this case by the fact that the underlying litigation is essentially a class action, with the 47 appellants representing 30,000 indigenous people in Ecuador. Accordingly, they submit that this Court should be particularly hesitant to impose a barrier to the appeal.

[54]   Chevron and Chevron Canada dispute that the Supreme Court was calling for a "new approach" to enforcement and recognition actions. They submit that the *Rules* clearly contemplate that an appellant who is ordinarily resident outside of Ontario may be ordered to pay security for costs. There is, in their view, no exception for recognition and enforcement actions – and certainly such an exception cannot be inferred from the Supreme Court's *Chevron* decision, which dealt with jurisdiction.

[55]   Dealing briefly first with the class action point, the motion judge, in his costs endorsement, stated the following "I do not accept the plaintiffs' submission that

their claim against Chevron Canada is analogous to a class proceeding and that s. 31(1) of the *Class Proceedings Act* therefore applies." I agree with him on that point.

[56]    Regardless, even if I were to accept the class action analogy, this would not prevent security for costs being ordered where the justice of the case warrants it. The Ecuadorian plaintiffs cite no case-law suggesting that a class action that results in the claim being dismissed against a defendant would insulate non-resident plaintiffs from having to post security for costs if they sought to bring an appeal.  Although I was unable to find any analogous cases involving r. 61.06(1), in *2038724 Ontario Ltd. v. Quizno's Canada Restaurant Corp.* (2007), 45 C.P.C. (6th) 375, Hoy J. (as she then was) ordered the intended representative plaintiffs in a proposed class action to pay security for costs pursuant to r. 56.01.

[57]    Turning now to the "new approach" argument, I find myself largely in agreement with the positions of Chevron and Chevron Canada. I see no basis in Ontario case law, or the Supreme Court's decision in *Chevron*, to suggest that an otherwise meritorious motion for security for costs should be denied because the action to which it relates concerns recognition and enforcement of a foreign judgment.

[58]    *Brown v. Raymond Jones Ltd* (2007), 51 C.P.C. (6th) 76 (Ont. Master), a case cited by Chevron and Chevron Canada, is apposite on this issue. In that case, the applicants sought orders giving effect to Letters of Request from the United

24

States, and the moving parties sought security for costs. The moving parties relied

on *Four Embarcadero Center Venture v. Mr. Greenjeans Corp* (1986), 10 C.P.C.

(2d) 105 (Ont. Master), which cited the English Court of Appeal case *Crozat v.*

*Brogden*, [1894] 2 Q.B. 30 (Eng. C.A.), for the proposition that "there is no

difference between an action on a foreign judgment and any other action". The

applicants in *Raymond Jones* sought to distinguish *Four Embarcadero Center*, on

the basis that it predated the Supreme Court's private international law decisions

of *Morguard Investments Ltd. v. De Savoye,* [1990] 3 S.C.R. 1077, and *Beals v.*

*Saldanha,* [2003] 3 S.C.R. 416. Master Graham rejected this argument, holding

that:

> In cases both of judgments from other provinces and of
> foreign judgments, it is open to the defendant to
> challenge the basis on which the court rendering the
> judgment assumed jurisdiction over the matter, and a
> defendant doing so successfully would presumably be
> entitled to costs in the Ontario proceeding to enforce the
> judgment. The principle of comity does not mean that a
> litigant from a foreign jurisdiction should be in a more
> advantageous position than a domestic litigant with
> respect to the costs exposure arising out of a proceeding
> in the domestic court. Four Embarcadero Center Venture
> was therefore not overruled by Morguard or Beals and is
> still good law in Ontario.

[59]   I appreciate that *Brown* predates the Supreme Court's recent *Chevron*

decision, upon which the Ecuadorian plaintiffs rely. Thus, in a sense, this is a

matter of first impression. However, the principles underlying *Chevron* have been

present in the Supreme Court's jurisprudence on private international law for some

time. *Brown* post-dates and specifically considers *Morguard* and *Beals*, earlier

cases that also stressed the importance of comity and spoke of a new approach to recognition and enforcement of foreign judgments in the modern world. Moreover, the post-*Morguard* and *Beals* case law the Ecuadorian plaintiffs rely upon specifically recognized the principle that a litigant seeking to enforce a foreign judgment should not be put in a more advantageous position than domestic litigants: *Pro Swing Inc. v. Elta Golf Inc.*, 2006 SCC 52, [2006] S.C.R. 612, at para. 31

[60]   In my view, the Supreme Court's *Chevron* decision did not change this principle. *Chevron* stands for the proposition that Canadian courts should take a generous approach in finding jurisdiction to allow litigants holding foreign judgments to bring enforcement actions in Canada. I do not read the decision as saying that, when such enforcement actions are brought before Canadian courts, they should be treated differently than cases involving domestic litigants. As I explained above, I am of the view that if the Ecuadorian plaintiffs were domestic litigants, an order security for costs would be appropriate. I do not see why the result should be different because the Ecuadorian plaintiffs hold a foreign judgment.

[61]   I find support for this conclusion in the Supreme Court of Canada's decision in *Pro Swing*. Addressing the recognition and enforcement of equitable orders issued by foreign courts, Deschamps J. clarified at para. 31 that "comity does not require receiving courts to extend greater judicial assistance to foreign litigants

than it does to its own litigants." I also point to a comment made by Strathy C.J.O.

in *Independence Plaza 1 Associates L.L.C. v. Figliolini*, 2017 ONCA 44, albeit in a

different context:

> I would remark that, despite their undoubted importance,
> the principles of comity expressed in Morguard, Beals,
> Chevron do not require the absence of any limitation
> period for a proceeding on a foreign judgment… it is one
> thing to remove barriers to the extraterritorial recognition
> of foreign judgments. But it is quite another to grant them
> more generous status than any other debt obligation or
> to give them the same status as a domestic judgment for
> limitations purposes.

[62]   The purposes underlying security for costs orders also suggest that a party

seeking to enforce a foreign judgment should not be treated differently than a

domestic litigant. While courts may award security for costs for a range of reasons,

the core aim of such an order under r. 61.06 is to provide respondents with a

"measure of protection for costs incurred and to be incurred in the proceeding,

which is now on appeal.": *Henderson v. Wright*, 2016 ONCA 89, 345 O.A.C. 231,

at para. 24; *Combined Air Mechanical Services Inc. v. Flesch*, 2010 ONCA 633,

268 O.A.C. 172, at para. 8; *York University v. Markicevic*, 2017 ONCA 651, at para.

53. That aim is no less important when the main appeal concerns enforcement of

a foreign judgment, particularly when the respondent is "exposed to the risk of

being forced to go to a foreign jurisdiction to enforce an order for costs": Linda S.

Abrams and Kevin P. McGuinness, *Canadian Civil Procedure Law, 2nd Ed.* (2010,

LexisNexis: Markham), at p. 1476.

[63]   Finally, I can find passages in the Supreme Court's Chevron decision that undercut the reading the Ecuadorian plaintiffs urge. I refer, in particular, to para. 46, in which Gascon J. states that "enforcement is limited to measures — like seizures, garnishments or execution — that can be taken only within the confines of the jurisdiction, and in accordance with its rules", and that "Whether recognition and enforcement should proceed depends entirely on the enforcing forum's laws" (emphasis added). Further, at para. 51, Gascon J. cited the definition of comity as "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and the rights of its own citizens or of other persons who are under the protection of its laws". Further, Gascon J. was clear at para. 95 that his decision merely addressed jurisdiction, and "should not be understood to prejudice further arguments with respect to the distinct corporate personalities of Chevron and Chevron Canada."

[64]   I am therefore unable to accept, as a general rule, that courts should approach security for costs differently in an appeal involving enforcement of a foreign judgment. To be sure, there will be cases involving recognition and enforcement of foreign judgments where security for costs will not be appropriate. Plaintiffs may establish impecuniosity. That did not happen here. They may demonstrate that they have assets within Ontario, or in a jurisdiction with which Ontario has a reciprocal enforcement of judgments agreement. There is no such

evidence in this case. Plaintiffs may also demonstrate a good chance of success on their appeal, and will often benefit from the fact that Canadian courts rarely re-examine the merits of a foreign judgment in an enforcement action. This appeal, however, does not involve a typical enforcement proceeding. On the contrary, it challenges long-standing and well-established corporate law principles - and, in my view, is unlikely to do so successfully. In these circumstances, I find that an order for security for costs is entirely appropriate.

**(3) Conclusion**

[65]   There is no question that the Ecuadorian plaintiffs are normally resident outside of Ontario, thus "triggering the enquiry" into security for costs. The Ecuadorian plaintiffs have put forward no evidence to demonstrate that they are impecunious. Since the Ecuadorian plaintiffs cannot be deemed impecunious, they must demonstrate that their appeal has something akin to a "good chance of success" to resist the motion. This, in my view, they cannot do – the appeal challenges well established corporate law doctrines, as well as a finding of mixed fact and law that there is no basis to pierce the corporate veil. The *Execution Act* does not create rights in property where there were none before. Finally, the Ecuadorian plaintiffs seek to resist the motion by relying on an alleged "new approach" endorsed by the Supreme Court for recognition and enforcement actions. I do not read the *Chevron* decision as establishing any such new approach. The case dealt only with jurisdiction. It does not hold that plaintiffs

seeking to enforce a foreign judgment should be treated differently than any other litigant in our courts. The just order in this case is one for security for costs.

**(4) Quantum**

[66]   Having concluded that security for costs is warranted, I now turn to determining the appropriate quantum. The Ecuadorian plaintiffs submit that the quantum for both Chevron and Chevron Canada should not exceed $50,000 in the aggregate. They contend that the arguments to be advanced in the main appeal have already been canvassed several times, and thus little additional preparation will be necessary. Further, the positions of Chevron Canada and Chevron are identical, with both seeking the same remedy (the removal of Chevron Canada as a defendant).

[67]   Chevron and Chevron Canada submit that the quantum they seek is reasonable. The bulk of it is made up of the costs already awarded during this action, which remains unpaid. The quantum sought for security for costs falls within the range of costs awards that have been made recently by this Court for appeals of similar length.

[68]   In my view, while it may be true that the arguments to be advanced on this appeal have already been canvassed several times, it must be noted that the large majority of the security sought relates to the awards of costs already made. Having said, that, I am of the view that the amounts claimed for security for the costs of the appeal are high having regard to the history of this matter. They should be

reduced to take into account the reasonable Ecuadorian plaintiffs' argument that the issues advanced will be much the same as have been advanced before.

[69]   The total amount sought might seem like a large quantum of security. However, it pales in comparison to the over $9.5 billion that the Ecuadorian plaintiffs are seeking to enforce. In awarding costs for the motion, the motion judge noted the following in relation to Chevron (and made similar comments in regards to Chevron Canada):

> The plaintiffs attempt to enforce an over $9 billion judgment, which is known to be and has been found to be fraudulent. As Judge Kaplan of the SDNY found, the plaintiffs have been supported by millions of dollars from a sophisticated financing network involving "numerous investors", including litigation financers and law firms. The Plaintiffs have enjoyed a large team of experienced counsel internationally. They are similarly represented by a large team of experienced counsel in Canada. In the circumstances, Chevron Corp.'s efforts in Canada, including on the motions for summary judgment motions (and the motion to strike) are proportionate, reasonable and to have been expected.

[70]   Considering that the Ecuadorian plaintiffs have not demonstrated impecuniosity, or that their appeal has a strong chance of success, $50,000 in security for costs would not be a just order. I have concluded that significant security for costs should be ordered, albeit less than what the moving parties have requested.

**DISPOSITION**

[71]   I therefore order the Ecuadorian plaintiffs to post security for costs. Chevron Canada is entitled to security for costs of the appeal in the amount of $50,000 and for the proceedings below in the amount of $541,335.14. Chevron is entitled to security for costs of the appeal in the amount of $30,000 and for the proceedings below in the amount of $321, 616.33.

[72]   Chevron and Chevron Canada have been entirely successful. They are entitled to their costs of this motion fixed in the amount agreed upon by counsel of $4,000, including interest and costs, to each of the moving parties.

Released: *ob* ·   SEP 2 1 2017

# EXHIBIT 87

# COURT OF APPEAL FOR ONTARIO

CITATION: Yaiguaje v. Chevron Corporation, 2017 ONCA 827
DATE: 20171031
DOCKET: M48342 (C63309 and C63310)

Hoy A.C.J.O., Cronk and Hourigan JJ.A.

BETWEEN

Daniel Carlos Lusitande Yaiguaje, Benancio Fredy Chimbo Grefa,
Miguel Mario Payaguaje Payaguaje, Teodoro Gonzalo Piaguaje
Payaguaje, Simon Lusitande Yaiguaje, Armando Wilmer Piaguaje
Payaguaje, Angel Justino Piaguaje Lucitante, Javier Piaguaje
Payaguaje, Fermin Piaguaje, Luis Agustin Payaguaje Piaguaje,
Emilio Martin Lusitande Yaiguaje, Reinaldo Lusitande Yaiguaje,
Maria Victoria Aguinda Salazar, Carlos Grefa Huatatoca, Catalina
Antonia Aguinda Salazar, Lidia Alexandria Aguinda Aguinda, Clide
Ramiro Aguinda Aguinda, Luis Armando Chimbo Yumbo, Beatriz
Mercedes Grefa Tanguila, Lucio Enrique Grefa Tanguila, Patricio
Wilson Aguinda Aguinda, Patricio Alberto Chimbo Yumbo, Segundo
Angel Amanta Milan, Francisco Matias Alvarado Yumbo, Olga Gloria
Grefa Cerda, Narcisa Aida Tanguila Narvaez, Bertha Antonia Yumbo
Tanguila, Gloria Lucrecia Tanguila Grefa, Francisco Victor Tanguila
Grefa, Rosa Teresa Chimbo Tanguila, Maria Clelia Reascos Revelo,
Heleodoro Pataron Guaraca, Celia Irene Viveros Cusangua,
Lorenzo Jose Alvarado Yumbo, Francisco Alvarado Yumbo, Jose
Gabriel Revelo Llore, Luisa Delia Tanguila Narvaez, Jose Miguel
Ipiales Chicaiza, Hugo Gerardo Camacho Naranjo, Maria
Magdalena Rodriguez Barcenes, Elias Roberto Piyahuaje
Payahuaje, Lourdes Beatriz Chimbo Tanguila, Octavio Ismael
Cordova Huanca, Maria Hortencia Viveros Cusangua, Guillermo
Vincente Payaguaje Lusitande, Alfredo Donaldo Payaguaje
Payaguaje and Delfin Leonidas Payaguaje Payaguaje

Plaintiffs (Appellants)

and

Chevron Corporation, Chevron Canada Limited and Chevron
Canada Finance Limited

Defendants (Respondents)

Page: 2

Alan Lenczner, Brendan Morrison, Kirk Baert and Celeste Poltak, for the appellants (see Schedule I)

Peter Grant, for the appellants (see Schedule II)[1]

Benjamin Zarnett, for the respondent Chevron Canada

Larry Lowenstein, for the respondent Chevron Corporation

Heard: October 11, 2017

On motion to vary the security for costs order of the motion judge, dated September 21, 2017, with reasons reported at 2017 ONCA 741.

## REASONS FOR DECISION

**Introduction**

[1]     The appellants bring a motion to vary the order of the motion judge requiring them to post $942,951 as security for costs of the proceeding and the appeals in *Yaiguaje v. Chevron Corporation* (C63309 and C63310), both now pending in this court, prior to the hearing of the appeals.

[2]     For the reasons that follow, we grant the motion and vacate the order of the motion judge.

---

[1] Mr. Grant filed a Notice of Change of Lawyers on October 5, 2017. He purported to represent 10 of the 47 representative plaintiffs and sought to make brief oral submissions to supplement those of Mr. Lenczner. As an indulgence, the court permitted him to do so, without determining that a sub-group of representative plaintiffs, all of who advance the same claim, can be represented by different counsel.

Page:  3

## Facts

[3]    The dispute among the parties has a long and complex history.  For present purposes, the following brief factual summary provides sufficient context.

[4]    The appellants are residents of Ecuador who hold a judgment of US$9.5 billion against Chevron Corporation obtained in 2011.  The judgment was the result of a claim for environmental damage that the appellants allege was caused by Texaco Inc., a company that later merged with Chevron Corporation. The appellants are representative plaintiffs for approximately 30,000 indigenous Ecuadorian villagers who have been affected by the environmental pollution.

[5]    The appellants first commenced proceedings against Texaco Inc. in 1993 in New York. That proceeding was eventually dismissed on *forum non conveniens* and international comity grounds. The decision was upheld on appeal, in part, because Texaco Inc. had agreed to submit to the jurisdiction of the Ecuadorian courts.

[6]    The appellants commenced proceedings against Chevron Corporation in Ecuador in 2003. By then, Texaco Inc. had merged with Chevron Corporation.  It was in that proceeding that the appellants obtained their judgment. Chevron Corporation has resisted enforcement of the judgment in courts around the world on the basis of the assertion, among others, that the judgment was obtained by fraud.

Page: 4

[7]    In 2012, the appellants commenced an action in the Ontario Superior Court of Justice for the recognition and enforcement of the Ecuadorian judgment against Chevron Corporation and Chevron Canada, a seventh level, indirect subsidiary of Chevron Corporation.

[8]    In the Ontario proceeding, Chevron Corporation and Chevron Canada challenged the jurisdiction of the Superior Court of Justice to recognize and enforce the Ecuadorian judgment.   Justice David Brown (as he then was) dismissed that motion and concluded that the Ontario court had jurisdiction to recognize and enforce the judgment against these defendants. However, Brown J. also concluded that this was an appropriate case in which to exercise the court's power to stay the proceedings pursuant to s. 106 of the *Courts of Justice Act,* R.S.O. 1990, c. C.43.

[9]    This court overruled the imposition of the stay and upheld the decision on the jurisdictional issue: *Yaiguaje v. Chevron Corporation,* 2013 ONCA 758. The Supreme Court of Canada affirmed this court's decision with respect to the Ontario court's jurisdiction: *Chevron Corporation v. Yaiguaje,* 2015 SCC 42.

[10]   Following the Supreme Court's decision, Chevron Corporation and Chevron Canada filed defences in the action. The defences raised by Chevron Corporation include that the Ecuadorian judgment cannot be recognized or enforced in Ontario

Page:  5

because, as the United States District Court for the Southern District of New York found in 2014, it was obtained by fraudulent means. [2]

[11]   Chevron Corporation and Chevron Canada then moved for summary judgment, submitting that the shares and assets of Chevron Canada are not exigible pursuant to the *Execution Act,* R.S.O. 1990, c. E.24 and that there is no basis to pierce the corporate veils between Chevron Canada and its indirect parent Chevron Corporation so that Chevron Canada's shares and assets become available to satisfy the Ecuadorian judgment against Chevron Corporation. Justice Glenn Hainey accepted these submissions, granted summary judgment in favour of Chevron Corporation and Chevron Canada, and dismissed the plaintiffs' claim against Chevron Canada: *Yaiguaje v. Chevron Corporation*, 2015 ONSC 135.

[12]   The appellants have appealed the order of Hainey J. to this court, and Chevron Corporation and Chevron Canada brought a motion for security for costs of the proceeding and the appeals.

[13]   Whether the Ecuadorian judgment can or should be recognized or enforced in Ontario remains to be determined.

---

[2] As the motion judge noted, the decision f the United States District Court for the Southern District of New York was upheld by the United States Court of Appeal for the Second Circuit, and the Supreme Court declined to grant *certiorari* for a further appeal.

Page: 6

**Decision of the Motion Judge**

[14]   The motion judge granted the motion and ordered security for costs be posted before the appeals could be heard.

[15]   In so ruling, the motion judge found that the appellants had not established that they were impecunious or that third party litigation funding was unavailable. Because she found that impecuniosity had not been established, the motion judge ruled that the appellants had to demonstrate that their claim has a good chance of success. On a review of the merits of the claim, she found that the appellants had not met that onus.

[16]   The motion judge went on to reject the appellants' other submissions, including that the order should not be made on the basis that this is an action for the enforcement of a foreign judgment or because it is essentially a class proceeding.

**Analysis**

**(i)     Standard of Review**

[17]   Chevron Corporation and Chevron Canada relied on rules 61.06(1)(b) and 56.01(1)(a) of the *Rules of Civil Procedure*, R.R.O 1990, Reg. 194, in support of their motion for security for costs. In an appeal, rule 61.06(1)(b) authorizes this court to make such an order for security for costs of the proceeding and the appeal "as is just" where an order for costs could be made under r. 56.01.

Page: 7

[18]   Rule 61.06 is permissive, not mandatory. In an appeal, there is no entitlement as of right to an order for security for costs. Even where the requirements of the rule have been met, a motion judge has discretion to refuse to make the order: *Pickard v. London Police Services Board*, 2010 ONCA 643, 268 O.A.C. 153, at para. 17.

[19]   In determining whether an order should be made for security for costs, the "overarching principle to be applied to all the circumstances is the justness of the order sought": *Pickard,* at para. 17 and *Ravenda Homes Ltd. v. 1372708 Ontario Inc.,* 2017 ONCA 556, at para. 4.

[20]   The appellants move pursuant to s. 7(5) of *Courts of Justice Act* to review and vary the motion judge's order. In fact, although the motion uses the term "vary", they ask the court to set aside the order. No evidence of change in circumstances was tendered. The appellants acknowledge that the impugned order was discretionary. Therefore, the motion judge's decision is afforded deference: *DeMarco v. Nicoletti,* 2017 ONCA 417, at para. 3.

[21]   The appellants raise numerous grounds in support of their motion. For present purposes, it is only necessary to consider one: whether the motion judge erred in principle in determining the justness of the order sought. An error in principle is one of the bases on which this court may interfere with a discretionary order: *DeMarco*, at para.3.

[22]   In deciding motions for security for costs judges are obliged to first consider the specific provisions of the Rules governing those motions and then effectively to take a step back and consider the justness of the order sought in all the circumstances of the case, with the interests of justice at the forefront. While the motion judge concluded that an order for security for costs would be just, with respect, she failed to undertake the second part of that analysis. The failure to consider all the circumstances of the case and conduct a holistic analysis of the critical overarching principle on the motion before her constitutes an error in principle. It therefore falls to this panel to conduct the necessary analysis of the justness of the order sought.

**(ii)    Justness of the Order**

[23]   The Rules explicitly provide that an order for security for costs should only be made where the justness of the case demands it. Courts must be vigilant to ensure an order that is designed to be protective in nature is not used as a litigation tactic to prevent a case from being heard on its merits, even in circumstances where the other provisions of rr. 56 or 61 have been met.

[24]   Courts in Ontario have attempted to articulate the factors to be considered in determining the justness of security for costs orders. They have identified such factors as the merits of the claim, delay in bringing the motion, the impact of actionable conduct by the defendants on the available assets of the plaintiffs,

Page: 9

access to justice concerns, and the public importance of the litigation.  See: *Hallum v. Canadian Memorial Chiropractic College* (1989), 70 O.R. (2d) 119 (H.C.); *Morton v. Canada (Attorney General)* (2005), 75 O.R. (3d) 63 (S.C.); *Cigar500.com Inc. v. Ashton Distributors Inc.* (2009), 99 O.R. (3d) 55 (S.C.); *Wang v. Li*, 2011 ONSC 4477 (S.C.); and *Brown v. Hudson's Bay Co.,* 2014 ONSC 1065, 318 O.A.C. 12 (Div. Ct.).

[25]   While this case law is of some assistance, each case must be considered on its own facts. It is neither helpful nor just to compose a static list of factors to be used in all cases in determining the justness of a security for costs order. There is no utility in imposing rigid criteria on top of the criteria already provided for in the Rules. The correct approach is for the court to consider the justness of the order holistically, examining all the circumstances of the case and guided by the overriding interests of justice to determine whether it is just that the order be made.

[26]   Having undertaken that analysis, we conclude that the unique factual circumstances of this case compel the conclusion that the interests of justice require that no order for security for costs be made.  To conclude otherwise, in our view, would result in an unjust order for security for costs. The pertinent circumstances include the following:

(a) The appellants are seeking to enforce a judgment in which they have no direct economic interest. Funds collected on the judgment will be paid into a

trust and net funds are to be used for environmental rehabilitation or health care purposes. This is public interest litigation.

(b) Although there was no direct evidence of impecuniosity before the motion judge, it would be highly impractical to obtain this evidence from the representative plaintiffs, let alone the 30,000 people who would indirectly benefit from the enforcement of the judgment. There can be no doubt that the environmental devastation to the appellants' lands has severely hampered their ability to earn a livelihood. If we accept the findings that underlie the Ecuadorian judgment – findings that have not yet been undermined in our courts – Texaco Inc. contributed to the appellants' misfortune.

(c) In contrast to the position of the appellants, Chevron Corporation and Chevron Canada have annual gross revenues in the billions of dollars. It is difficult to believe that either of these two corporations, which form part of a global conglomerate with approximately 1,500 subsidiaries, require protection for cost awards that amount or could amount to a miniscule fraction of their annual revenues.

(d) While the question whether the Ecuadorian plaintiffs have third party litigation funding available to them was left unanswered, there should be no bright line rule that a litigant must establish that such funding is unavailable to successfully resist a motion in an appeal for security for costs. This is especially

so in this case, where counsel for the appellants has advised the court he is operating under a contingency arrangement and where there is evidence that Chevron Corporation has sued some of the appellants' former third party funders, and the funders withdrew their financial support.

(e) It cannot be said, at this stage, that this is a case that is wholly devoid of merit. The motion judge herself acknowledged, at para. 51 of her reasons, that it might be possible to establish that Chevron Canada's shares are exigible under the *Execution Act*.

(f) There is no doubt that the legal arguments asserted by the appellants are innovative and untested, especially with regard to piercing the corporate veil. But this does not foreclose the possibility that one or more of them may eventually prevail. That is how the common law evolves. Innovative or novel arguments are made and the law develops, either gradually or in leaps and bounds. For obvious reasons, substantive changes in the law usually take place in our intermediate appeal courts and at the Supreme Court. Lower courts are often bound by precedent that restrains them from changing the common law. It is hardly just that potential advancements in or restatements of the law be thwarted for procedural or tactical reasons.

(g) The history of this litigation, which has been ongoing for almost twenty-five years, makes clear that Chevron Corporation has and, it may be anticipated,

Page:  12

will employ all available means to resist enforcement of the Ecuadorian judgment. This, of course, is within its rights. However, this reality makes it difficult to accept that the motion for security for costs was anything more than a measure intended to bring an end to the litigation.

**Disposition**

[27]   For all these reasons, the motion is granted and the order of the motion judge requiring the appellants to post security for costs and pay costs of the motion for security for costs is set aside.

[28]   The appellants are entitled to their costs of the motion for security for costs and this motion in the agreed all-inclusive sums of \$4,000 and \$7,500, respectively, payable by Chevron Corporation and Chevron Canada.

## SCHEDULE I
LENCZNER SLAGHT ROYCE SMITH GRIFFIN LLP/ KOSKIE MINSKY LLP
37 plaintiffs

Daniel Carlos Lusitande Yaiguaje
Benancio Fredy Chimbo Grefa
Miguel Mario Payaguaje Payaguaje
Teodoro Gonzalo Piaguaje Payaguaje
Simon Lusitande Yaiguaje
Armando Wilmer Piaguaje Payaguaje
Angel Justino Piaguaje Lucitante
Javier Piaguaje Payaguaje
Fermin Piaguaje
Luis Agustin Payaguaje Piaguaje
Emilio Martin Lusitande Yaiguaje
Reinaldo Lusitande Yaiguaje
Maria Victoria Aguinda Salazar
Carlos Grefa Huatatoca
Catalina Antonia Aguinda Salazar
Lidia Alexandria Aguinda Aguinda
Clide Ramiro Aguinda Aguinda
Luis Armando Chimbo Yumbo
Beatriz Mercedes Grefa Tanguila
Lucio Enrique Grefa Tanguila
Patricio Wilson Aguinda Aguinda
Patricio Alberto Chimbo Yumbo
Francisco matias Alvarado Yumbo
Olga Gloria Grefa Cerda
Narcisa Aida Tanguila Narvaez
Bertha Antonia Yumbo Tanguila
Gloria Lucrecia Tanguila Grefa
Celia Irene Viveros Cusangua
Lorenzo Jose Alvarado Yumbo
Francisco Alvarado Yumbo
Luisa Delia Tanguila Narvaez
Elias Roberto Piyahuaje Payahuaje
Lourdes Beatriz Chimbo Tanguila
Octavio Ismael Cordova Huanca
Guillermo Vincente Payaguaje Lusitande
Alfredo Donaldo Payaguaje Payaguaje
Delfin Leonidas Payaguaje Payaguaje

Page:  14

## SCHEDULE II
### GRANT HUBERMAN BARRISTERS & SOLICITORS
10 plaintiffs (as per Notice of Change of October 4, 2017)

Segundo Angel Amanta Milan
Heleodoro Pataron Guaraca
Hugo Gerardo Camacho Naranjo
Maria Clelia Reascos Revelo
Maria Magdalena Rodriguez Barcenes
Francisco Victor Tanguila Grefa
Rosa Teressa Chimbo Tanguila
Maria Hortencia Viveros Cusangua
Jose Gabriel Revelo Llore
Jose Miguel Ipiales Chicaiza

# EXHIBIT 88

This **TRANSFER AND ASSIGNMENT** (this *"Agreement"*) is made effective as of _____ __, 2018 by and among Steven Donziger, The Law Offices of Steven R. Donziger, and Donziger & Associates, PLLC also known as Donziger Associates, PLLC (collectively *"Assignor"*), on the one hand, and Chevron Corporation (*"Assignee"*), on the other hand (*Assignor* and *Assignee* collectively referred to as the *"Parties"*).

IT IS HEREBY AGREED, between and among the Parties, as follows:

1.      <u>Assignment</u>.  *Assignor* (including each person and entity included within that collective term) does hereby irrevocably assign, set over, and transfer to *Assignee* all right, title, and interest *Assignor* has, directly or indirectly, under the Durable International Power of Attorney and Agreement for the Continuous Investment of Professional Services (also known as "Poder Legal Internacional Duradero y Acuerdo Para Inversión Continua De Los Servicios Profesionales"), dated November 1, 2017, between and among the Amazon Defense Front (also known as "the FDA" and "el Frente de Defensa de la Amazonía") and Steven R. Donziger, Esq., together with their successors and assigns and all successors to and predecessors of that agreement, including (a) any contingent fee and (b) any interest in any judgment or funds related to or arising out of the enforcement, collection, or settlement of any judgment, and *Assignee* hereby accepts such assignment.

2.      <u>Counterparts</u>.  This *Agreement* may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same document.

IN WITNESS WHEREOF, the Parties have executed this Transfer and Assignment as of _____ __, 2018.

_____
Steven Donziger
in his individual capacity and in his capacities as
authorized representative of The Law Offices of
Steven R. Donziger and Donziger Associates PLLC

STATE OF _____ )
                                                      ) ss.:
COUNTY OF _____ )

On the _____ day of _____, before me, the undersigned notary public, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his individual capacity and in his capacities as authorized representative of The Law Offices of Steven R. Donziger and Donzgier Associates PLLC, and by his signature on the instrument, the individual and the persons upon behalf of which he acted, executed the instrument.

_____ Notary Public

_____
(Name and Title)
CHEVRON CORPORATION


STATE OF _____)
                                                    ) ss.:
COUNTY OF _____)

On the _____ day of _____, before me, the undersigned notary public, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity as _____ of Chevron Corporation, and by his/her signature, the corporation upon behalf of which he/she acted, executed the instrument.


_____ Notary Public

# EXHIBIT 89

| | |
|---|---|
| **From:** | Bill Twist <brtwist@gmail.com> on behalf of Bill Twist |
| **Sent:** | Wednesday, August 3, 2016 4:15 AM |
| **To:** | John van Merkensteijn |
| **Subject:** | Re: New draft agreement |
| | |
| **Categories:** | KFLaw |

A.  Steven says to use the new document if we want. Put our terms and MFN clause in. He says there is some push back on the MFN clause because it requires a lot of admin work if they have to go back to investors and get amendments signed and distribute to us and the other two investors all of the documentation for the new deal. But he said for us to put it in and then his lawyers will comment.

B.  I talked to him about the three points and more:

1. timing - 5 to 10 years vs 3 to 4. He gets the point about it has already taken nearly three years and he says it is just a good conservative analysis by Gregory. He says look it could be even less than three years if settlement talks arise and it could be never. Obviously no one knows.

2. The corporate/wholly owned sub issue - he is aware that the Canadian court specifically did not rule on the issue. He also knows there are no prior rulings on point. He feels that from the standpoint of equity and public sympathy for the plight of the victims Chevron will not be able to hide behind this defense in Canada. Alan thinks the same. Who knows. I know what I think the right answer is here.

3. Forensic evidence of fraud. He says yes there were passages in some work papers that were identical to ruling in Ecuador. He said that was not unusual and in Ecuador maybe more than in US courts, judges use parts of submissions of both parties in writing their opinion. And this didn't appear to present a problem to the Ecuadorian courts. (I know this is contradictory to Gregory's statement that in the US if this happened there would be an immediate rejection of the ruling and criminal charges filed). He feels confident in Canada when all of the evidence can be submitted and Guerra testimony is challenged that there will not be a finding of corruption and fraud.

4. Arbitration hearing - he thinks isn't going to make any difference. If there is a ruling that the arbitration panel says that Chevron is not liable on the diffuse versus personal claims, Canada won't care. It's an arbitration panel ruling and the claimants aren't even parties to the arbitration. What it will mean is that Chevron will then sue Ecuador for recovery of its loss. Steven thought that would be ironic. It would amount to a tax payer bailout of Chevron. Also he imagined the populist outrage at another  example of how NAFTA, the TPP and other trade agreements are rigged in favor of corporations and against people every where.  Here would be an appointed panel of three anonymous people can make a ruling that trumps the laws of some foreign country to the disadvantage of its citizens and to the advantage of increasingly unaccountable corporations. Doesn't mean it won't happen but Steven thinks it won't affect Canadian courts.

   This still obviously isn't conclusive. I will only be with Steven for a little while in the morning. I'd like to call at 8:30am when you are in the car. We can talk just for a moment. There may be another time tomorrow night at around 10pm your time.

Bill

JVM 004911

On Aug 2, 2016, at 5:01 PM, John van Merkensteijn <jhvm@rossteq.com> wrote:

I think you and I are in the same place
best thing might be to have him proceed to get approval
and then use the trip to have some time to talk about the issues
and see what you feel when you come back
I will do this if you do but if you decide not to do this
I will not either

if you call me in the morning I doubt I will have any new insights

I want to do this and am concerned about the issues tagged by Kaye Scholer's
preliminary review


John H. van Merkensteijn III
Managing Director
Rossi Technology LLC
60 Riverside Boulevard
Suite 2101
New York, NY. 10069
Phone (212) 769-4055
jhvm@rossteq.com


**From:** Bill Twist <brtwist@gmail.com>
**Date:** Tuesday, August 2, 2016 at 7:29 PM
**To:** John van Merkensteijn <jhvm@rossteq.com>
**Subject:** Re: New draft agreement

I haven't seen Steven yet and might not see him tonight. We are scheduled to meet at 7am
tomorrow for breakfast. I saw that he wanted to check in with you tonight or in the morning. He
won't be meeting with his clients until later in the morning so maybe he and I talk first and then
we try to call you. I suggest that we call you at 7:30 our time, 8:30am your time.
Bill

>       On Aug 2, 2016, at 2:48 PM, John van Merkensteijn <jhvm@rossteq.com> wrote:
>
>       THANKS
>
>       Tried to call
>
>       I am at 212 769 4055
>
>       Just to be clear -----

JVM 004912

the insertion of the Canadian Law Firm and the effort to not be visible has nothing to do with money laundering

it is taking some precaution against the possibility that Chevron would attempt to continue its scorched earth

policy against investors—so better to not be visible to them.  For the same reason I thnk it best of we each

invest in the financing from an LLC to be formed

best

JHvMIll

John H. van Merkensteijn lll
Managing Director
Rossi Technology LLC
60 Riverside Boulevard
Suite 2101
New York, NY. 10069
Phone (212) 769-4055
jhvm@rossteq.com

---

**From:** Derek Stoldt <Derek.Stoldt@kayescholer.com>
**Date:** Tuesday, August 2, 2016 at 4:46 PM
**To:** John van Merkensteijn <jhvm@rossteq.com>
**Cc:** Gregory Wallance <Gregory.Wallance@kayescholer.com>, Michael Ben-Jacob <Michael.Ben-Jacob@kayescholer.com>
**Subject:** New draft agreement

John,

As we discussed this morning, I've used the draft agreement you provided to me last evening as a new base and included provisions such as the MFN and Follow-on Investment Right from the prior draft, as we as some drafting improvements from my prior draft.

This draft does include the escrow/confidentiality arrangements from the prior agreement.  They seem to be those used with George Crossman from the prior investor.  Is that your understand?  As discussed with George, these provisions are of very little utility since he immediately turns over the funds once received.  According to George, the only benefit to this arrangement was an effort to hide the identity of the Funder from Chevron.  All in all, it is a very odd arrangement and gives me some pause, especially in light of the discussion with Greg this morning.  There is some part of this that feels like the steps people may take when they are laundering money.  It does give me some pause.

Following up on our conversation with Greg, I am not sure there is much we can do in this agreement to mitigate any fraud that might be involved.  If Steve Donziger is as bad as Judge Kaplan and the Forbes opinion article say he is, you

3

JVM 004913

simply may never see this money again.  I am not sure I can write a provision to stop that.

Please review the attached (there are a number of questions for you in footnotes) and let's please discuss once you have done so.

Thanks,
Derek


Derek Stoldt
Kaye Scholer LLP
250 West 55th Street | New York, New York 10019-9710
T: (212) 836-8032 | F: (212) 836-6532
Derek.Stoldt@kayescholer.com | www.kayescholer.com

This message may contain confidential and/or legally privileged information from the law firm Kaye Scholer LLP. If delivered to anyone other than the intended recipient, please notify the sender immediately by return email or by telephone (212) 836-8032 and delete the message, along with any attachments, from your computer. Thank you.

JVM 004914

# EXHIBIT 90





# Thank you!

Your confirmation number is **W3940**.

Your payment of $1,115.86 has been received for your Business Platinum Card® -11005 on **Mon. Apr. 02, 2018**

from **BANK OF AMERICA, NA Business Checking** -9158. Your balance will be updated in 24-36 hours.

Check Spending Power

*Categorize expenses*



MKS-0006507

**STEVEN R DONZIGER**
Card Ending 6-11013

| Date | Description | | Location | State | Amount |
|---|---|---|---|---|---|
| 02/26/18 | CHARLES FRANTZ-4C91 TAXICAB & LIMOUSINE | | ELMONT | NY | $16.30 |
| 02/26/18 | THE RED CAT 0000000000000 RESTAURANT | | NEW YORK | NY | $130.88 |
| 02/26/18 | THE RED CAT 0000000000000 RESTAURANT | | NEW YORK | NY | $21.42 |
| 02/28/18 | WALKERS RESTAURANT | | NEW YORK | NY | $51.46 |
| 03/02/18 | SQUARESPACE INC. ███████456 | | NEW YORK | NY | $216.00 |
| 03/05/18 | CHARLES HOTEL Arrival Date 03/05/18 00000000 | Departure Date 03/06/18 | CAMBRIDGE | MA | $387.20 |
| 03/06/18 | CHARLES HOTEL Arrival Date 03/05/18 00000000 | Departure Date 03/06/18 | CAMBRIDGE | MA | $29.88 |
| 03/06/18 | EXXONMOBIL 9742 AUTO FUEL DISPENSER | | ORANGE | CT | $30.05 |
| 03/07/18 | SFOGLIA 212-831-1402 | | NEW YORK | NY | $81.41 |
| 03/07/18 | NYCTAXI2L76 09004720017 000-0000000 | | BROOKLYN | NY | $16.55 |
| 03/07/18 | WALKERS RESTAURANT | | NEW YORK | NY | $69.79 |
| 03/08/18 | NYCTAXI9X20 09000220012 000-0000000 | | BROOKLYN | NY | $13.55 |
| 03/08/18 | WALKERS RESTAURANT | | NEW YORK | NY | $51.37 |

*(handwritten: Van-Used / receipt attached)*

Continued on next page

MKS-0006508

*id*
*uador*
*neeting*

16
N
21

Date:
Card Typ 'M
Acct #:
Card Ent
Trans Ty
Auth Code
Check:
Check ID:
Server:

Subtotal: 4 8

TIP_____

TOTAL_____

SIGNATURE___

Thank you fo us!

Custome

MKS-0006509

*Reimburse SRD*

**RECIBO DE PAGO**

RECIBÍ DEL ABOGADO STEVEN DONZIGER LA CANTIDAD DE 500 DÓLARES (500 USD) POR CONCEPTO DE GASTOS REALIZADOS DURANTE EL MES DE DICIEMBRE DE 2017, CONFORME SE DETALLA A CONTINUACIÓN:

| CONCEPTO | CANTIDAD |
|---|---|
| Gastos de viajes a comunidades afectadas en Orellana y Sucumbíos. | 250,00 |
| Gastos por reuniones con dirigentes de asociaciones de afectados. | 100,00 |
| Viajes a Quito para varias actividades relacionadas con el caso. | 100,00 |
| Materiales (copias de documentos) | 50,00 |
| TOTAL | **500,00** |

QUITO, 12 DE MARZO DE 2018

Luis Yanza A.

MKS-0006510

# AppealTech

7 West 36th Street, 10th Floor
New York, NY 10018

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/6/2018 | 18-03-011 |

**PAID 03/14/2018**

**Bill To**

Steven Donziger, Esq.
245 West 104th, #7D
New York, New York 10025

| P.O. No. | Terms | Due Date | FED.TAX ID | REP | CASE NAME |
|----------|-------|----------|------------|-----|-----------|
| 33272 | Due on receipt | 3/6/2018 | ████5416 | JLM | IMO Steven R. Donziger |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| Service Date: 3/5/18 | | | |
| DECLARATIONS | | | |
| 1 Copy - 206 Pages @ $.30 | 206 | 0.30 | 61.80T |
| Binding and Printing of Covers - 1 Book @ $12.50 | 1 | 12.50 | 12.50T |
| | | | |
| EXHIBITS (2 VOLUMES) | | | |
| 1 Copy - 779 Pages @ $.30 | 779 | 0.30 | 233.70T |
| Binding and Printing of Covers - 2 Books @ $12.50 | 2 | 12.50 | 25.00T |
| | | | |
| OPPOSITION TO MOTION | | | |
| 1 Copy - 58 Pages, Stapled @ $.30 | 58 | 0.30 | 17.40T |
| | | | |
| Service by Mail - 1 Party @ $35.00 | 1 | 35.00 | 35.00T |
| | | | |
| Postage for Service Copies | | 18.75 | 18.75T |
| | | | |
| Sub-Total | | | 404.15 |
| Sales Tax - NYC @ 8.875% | | 8.875% | 35.87 |

| | |
|---|---|
| **Total** | $440.02 |
| **Payments/Credits** | -$440.02 |
| **Balance Due** | $0.00 |

Payable to  Z & J LLC dba APPEALTECH TIN#20-2475416
TO ASSIST YOU AND YOUR CLIENT, WE NOW ACCEPT MAJOR CREDIT CARDS.
Tel: 212-213-3222 Fax: 212-213-4133 e-mail: mail@appealtech.com

# AppealTech

7 West 36th Street, 10th Floor
New York, NY 10018

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/19/2018 | 18-03-085 |

**PAID 03/14/2018**

**Bill To**

Steven Donziger, Esq.
245 West 104th, #7D
New York, New York 10025

| P.O. No. | Terms | Due Date | FED.TAX ID | REP | CASE NAME |
|----------|-------|----------|------------|-----|-----------|
| 33272 | Due on receipt | 3/19/2018 | ▓5416 | JLM | IMO Steven R. Donziger |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| Filing Date: 3/19/18 | | | |
| DECLARATIONS | | | |
| 5 Copies - 206 Pages @ $.30 | 1,030 | 0.30 | 309.00T |
| Binding and Printing of Covers - 5 Books @ $12.50 | 5 | 12.50 | 62.50T |
| | | | |
| EXHIBITS (2 VOLUMES) | | | |
| 5 Copies - 779 Pages @ $.30 | 3,895 | 0.30 | 1,168.50T |
| Binding and Printing of Covers - 10 Books @ $12.50 | 10 | 12.50 | 125.00T |
| | | | |
| OPPOSITION TO MOTION | | | |
| 5 Copies - 58 Pages, Stapled @ $.30 | 290 | 0.30 | 87.00T |
| | | | |
| LESS COURTESY DISCOUNT | | -305.75 | -305.75 |
| | | | |
| Filing of Documents at AD1 | | 65.00 | 65.00T |
| | | | |
| Sub-Total | | | 1,511.25 |
| Sales Tax - NYC @ 8.875% | | 8.875% | 134.12 |

| | | |
|---|---|---|
| **Total** | | $1,645.37 |
| **Payments/Credits** | | -$1,645.37 |
| **Balance Due** | | $0.00 |

Payable to Z & J LLC dba APPEALTECH TIN#20-2475416
TO ASSIST YOU AND YOUR CLIENT, WE NOW ACCEPT MAJOR CREDIT CARDS.
Tel: 212-213-3222 Fax: 212-213-4133 e-mail: mail@appealtech.com

MKS-0006512

# AppealTech

7 West 36th Street, 10th Floor
New York, NY 10018

# Invoice

PAID 02/16/2018

| Date | Invoice # |
|------|-----------|
| 2/21/2018 | 18-02-084 |

**Bill To**

Steven Donziger, Esq.
245 West 104th, #7D
New York, New York 10025

| P.O. No. | Terms | Due Date | FED.TAX ID | REP | CASE NAME |
|----------|-------|----------|------------|-----|-----------|
| 33171 | Net 30 | 3/23/2018 | ▮5416 | JLM | IMO Steven R. Donziger |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| Service & Filing Date: 2/16/18 | | | |
| EXHIBITS | | | |
| 3 Copies of 779 Pages (Perfect Binding Included) | | 1,498.50 | 1,498.50T |
| | | | |
| OPPOSITION TO MOTION | | | |
| 3 Copies of 58 Pages, Stapled @$.30 | 174 | 0.30 | 52.20T |
| | | | |
| Service and Filing of Documents at AD1 | | 95.00 | 95.00T |
| E-Filing of Documents | | 75.00 | 75.00T |
| Premium Charge for Expedited Service | | 300.00 | 300.00T |
| | | | |
| Sub-Total | | | 2,020.70 |
| Sales Tax - NYC @ 8.875% | | 8.875% | 179.34 |

| Accounts forwarded to collections will be assessed a 25% processing fee. | **Total** | $2,200.04 |
|---|---|---|
| | **Payments/Credits** | -$2,200.04 |
| | **Balance Due** | $0.00 |

Payable to Z & J LLC dba APPEALTECH TIN#20-2475416
TO ASSIST YOU AND YOUR CLIENT, WE NOW ACCEPT MAJOR CREDIT CARDS.
Tel: 212-213-3222 Fax: 212-213-4133 e-mail: mail@appealtech.com

MKS-0006513

The Westin Ottawa
11 Colonel By Drive
Ottawa, ON  K1N 9H4
Canada
Tel: 613-560-7000 Fax: 613-234-5396

# WESTIN®
## HOTELS & RESORTS

Steven Donziger
ASSEMBLY OF FIRST NATIONS
AK30AD - Sub Block

| Page Number | : | 1 | | Invoice Nbr | : | 366870 |
|---|---|---|---|---|---|---|
| Guest Number | : | 1355722 | | | | |
| Folio ID | : | A | | | | |
| Arrive Date | : | 05-DEC-17 | 16:43 | | | |
| Depart Date | : | 07-DEC-17 | 11:13 | | | |
| No. Of Guest | : | 1 | | | | |
| Room Number | : | 1517 | | | | |
| Club Account | : | | | | | |

Tax Invoice

Tax ID :          0001
The Westin Ottawa  DEC-07-2017 11:13 A0058671

| Date | Reference | Description | Charges (CAD) | Credits (CAD) |
|---|---|---|---|---|
| 05-DEC-17 | 7252 | The Shore Club | 90.79 | |
| 05-DEC-17 | RT1517 | Room | 199.00 | |
| 05-DEC-17 | RT1517 | Tax-HST Rooms | 25.87 | |
| 05-DEC-17 | RT1517 | Destination Marketing Program | 5.97 | |
| 05-DEC-17 | RT1517 | Dest Marketing Program HST | 0.78 | |
| 06-DEC-17 | 7381 | The Shore Club | 100.09 | |
| 06-DEC-17 | RT1517 | Room | 199.00 | |
| 06-DEC-17 | RT1517 | Tax-HST Rooms | 25.87 | |
| 06-DEC-17 | RT1517 | Destination Marketing Program | 5.97 | |
| 06-DEC-17 | RT1517 | Dest Marketing Program HST | 0.78 | |
| 07-DEC-17 | 12/7 | Early Departure Fee | 100.00 | |
| 07-DEC-17 | 12/7 | Tax-HST Rooms | 13.00 | |
| 07-DEC-17 | 12/7 | Destination Marketing Program | 3.00 | |
| 07-DEC-17 | 12/7 | Dest Marketing Program HST | 0.39 | |
| 07-DEC-17 | VI | Visa-8490 | | |

-770.51

S.R.D Ottawa

Continued on the next page

The Westin Ottawa
11 Colonel By Drive
Ottawa, ON  K1N 9H4
Canada
Tel: 613-560-7000 Fax: 613-234-5396

# WESTIN®
## HOTELS & RESORTS

Steven Donzinger
ASSEMBLY OF FIRST NATIONS
AK30AD - Sub Block

| | | | | |
|---|---|---|---|---|
| Page Number | : | 2 | Invoice Nbr | :  366870 |
| Guest Number | : | 1355722 | | |
| Folio ID | : | A | | |
| Arrive Date | : | 05-DEC-17 | 16:43 | |
| Depart Date | : | 07-DEC-17 | 11:13 | |
| No. Of Guest | : | 1 | | |
| Room Number | : | 1517 | | |
| Club Account | : | | | |

Approve EMV Receipt for VI - 8490: no CVM
TC:5877F18DBED907D0  TVR:8080008000  AID:A0000000031010
Application Label:VISA CREDIT

|  | | | |
|---|---|---|---|
| ** Total | | 770.51 | -770.51 |
| *** Balance | | 0.00 | |

I agreed to pay all room & incidental charges.

Amount (CAD)

0.00
0.00
0.00
0.00
0.00

FIND CLARITY, BOOST HAPPINESS - Like a gym membership for your mind, Headspace gives you simple tools to feel happier, work smarter and sleep
better. Get some Headspace at westin.com/headspace

Continued on the next page

MKS-0006515

SRD
Ottawa



## CHÂTEAU LAURIER

1 Rideau Street
Ottawa, ON, Canada  K1N 8S7
T (613) 241-1414   F (613) 562-7030
G.S.T. / H.S.T Registration #843511775

| | |
|---|---|
| Room/Chambre | : 0265 |
| Folio # | : |
| Invoice # | : |
| Cashier/Cassier # | : 3857 |
| Page # | : 1 of 1 |

Reference No.

Mr Steven Donziger
245 West 104
7D
New York NY

| | |
|---|---|
| Arrival/Arrivée | : 12-06-17 |
| Departure/Départ | : 12-07-17 |

**Fairmont President's Club**
3240920790

| Date | Description | Additional Information/Supplémentaire | Charges | Credits |
|---|---|---|---|---|
| 12-06-17 | Zoe's Lounge | CHECK# 3435 | 25.91 | |
| 12-06-17 | Refreshment Centre Mineral | Room# 0265 : CHECK# 32432 Eska Spring Water 1 | 10.17 | |
| 12-06-17 | Room Charge | | 409.00 | |
| 12-06-17 | Destination Marketing Fee | | 12.27 | |
| 12-06-17 | Room HST (13%) | | 54.77 | |

| | | | |
|---|---|---|---|
| Total | | 512.12 | 0.00 |
| Balance Due/Solde | | 512.12 | |

| GST Summary / Sommaire | | HST Summary / Sommaire | |
|---|---|---|---|
| Room/Chambre | 0.00 | Room/Chambre | 54.77 |
| F&B/Restauration | 0.00 | F&B/Restauration | 3.58 |
| Other/Autres | 0.00 | Other/Autres | 0.00 |
| Total | 0.00 | Total | 58.35 |

Thank you for choosing Fairmont Hotels & Resorts.
To provide feedback about your stay, please contact Mr. Claude Sauvé, General Manager, at Claude.Sauve@fairmont.com.
We also invite you to share memories of your experience on our community forum - visit www.everyonesanoriginal.com.

Merci d'avoir choisi les Hôtels Fairmont.
Pour donner votre opinion sur votre séjour, veuillez contacter M. Claude Sauvé, Directeur général, à Claude.Sauve@fairmont.com.
Nous vous invitons également à partager les souvenirs de votre expérience sur notre forum -  www.everyonesanoriginal.com.

---

For information or reservations, visit us at
**www.fairmont.com** or call Fairmont Hotels & Resorts from:
United States or Canada  1 800 441 1414
Pour information et réservations visitez notre web au
**www.fairmont.com** ou téléphoner au Hôtels Fairmont de:
États-Unis ou Canada  1 800 441 1414

I agree that my liability for this bill is not waived and I agree to be held personally liable in the event that the indicated person, company or association fails to pay for any part or the full amount of these charges. Overdue balance subject to a surcharge at the rate of 1.5% per month after one month . (18.00% per annum.)
I have accepted delivery of The Globe and Mail. Had I refused, I would have been eligible for a $1.00 (Mon-Fri) and $2.00 (Sat.) credit to my account. (At participating hotels.)

Je me porte personnellement responsable du règlement total de cette note au cas où la compagnie, l'association ou son représentant désigné en refuserait le paiement. Les comptes en souffrance sont sujets à un intérêt de 1.5% par mois après un mois. (18.00% par année)
J'ai accepté la livraison du journal The Globe and Mail. Si j'avais refusé, j'aurais pu obtenir un crédit à mon compte de 1.00$ par jour (du Lundi au Vendredi) et de 2.00$ le Samedi. (Dans les hôtels participants.)

**Thank you for choosing to stay with Fairmont Hotels & Resorts**
**Merci d'avoir choisi les Hôtels Fairmont**

MKS-0006516

*Fairmont*

#FAIRMONTMOMENTS

## OPTIONS DE DÉPART SIMPLIFIÉ

Afin de mieux vous servir, Fairmont vous offre des options de départ simplifié.

### Départ express

Si vous souhaitez profiter de notre option Départ express, veuillez remplir tous les champs à droite et déposer le formulaire dans la boîte située au comptoir de la réception.

### Autres options de départ

Communiquez avec le service Royal pour obtenir les options suivantes :
· départ par téléphone;
· vérification de la facture à l'avance
· services par courriel.

## EASY DEPARTURE OPTIONS

For your convenience, Fairmont offers you easy departure options.

### Express checkout

To take advantage of our Express Checkout option, please complete all information in the form at right and return to the drop-off box located at the Front Desk.

### Other departure options

Contact Royal Service for:
· telephone checkout
· advance folio review
· e-mail services

Nom (en caractères d'imprimerie) | Name (please print)

Chambre | Room

_26S_

○ J'autorise l'utilisation de ma carte de crédit pour payer le montant total de mon compte. | I authorize my entire account be processed through my credit card.

Signature | Signature

Date | Date

Veuillez envoyer un exemplaire de mon relevé de compte à l'adresse de courriel ci-dessous : | Please send a copy of my account to the e-mail address below:

Adresse de courriel | E-mail address

MKS-0006517

1/11/2017
Payments due

| Paid | Payable | Category | Description | Amount | conversion USD | conversion CAD | Notes: |
|---|---|---|---|---|---|---|---|
| yes | Independet Media Institute | Media | | $5,000.00 | | | |
| yes | Peter Grant | Legal | Retainer | $101,849.59 | $101,849.59 | $125,000.00 | wire transfer |
| yes | FDA | FDA support | | $13,100.00 | | | ACH transfer |
| yes | Forum Nobis | Legal | | $10,000.00 | | | check |
| yes | Simon Billeness | Shareholder advocacy | reimbursements plus consulting services | $3,622.21 | | | check |
| yes | Patricio Salazar | Ecuador travel reimbursement | | $4,398.00 | | | need wire instructions or address |
| yes | Juan Aulestia | Ecuador management | | $15,286.75 | | | need wire instructions or address |
| yes | Rex Weyler | CA management | | $9,381.39 | | | need wire instructions or address |
| yes | Ed John | CAD travel reimbursement | trip to Ecuador | $3,586.93 | $3,586.93 | $4,510.01 | conversion per notes |
| yes | Peter Grant | CAD travel reimbursement | John and Peter | $4,519.51 | $4,519.51 | $5,662.93 | conversion per notes |
| | John Phillips | CAD travel reimbursement | Ottawa meeting, Ecuador travel | $2,646.10 | $2,646.10 | $1,645.27 | conversion per notes |
| | 3BL Media | Media | | $4,095.00 | | | check |
| yes | Domingo Peas | Ecuador travel | leading meeting on Ottawa | $1,365.00 | | | need mailing address to set up wire |
| | Total | | | $178,850.48 | | | |

*(handwritten notes)*

paid SRD $125 L 1/24/18

No

Jan 24, 2017

A. John Phillips   accounting instrs

B. need Phil Fontaine

MKS-0006518

**3BL Media, LLC**
136 West Street
Suite 104
Northampton, MA 01060 US
(866) 508-0993 x187
accounting@3blmedia.com
www.3blmedia.com



CSRwire
ReportAlert
Justmeans

# INVOICE

**BILL TO**

Steven Donziger
Donziger & Associates
245 West 104th Street
Suite 7D
New York, NY 10025 USA

**INVOICE #** 29863
**DATE** 12/08/2017
**DUE DATE** 12/12/2017
**TERMS** Due on receipt

| ACTIVITY | AMOUNT |
|---|---|
| **Featured Placement**<br>Guaranteed Placement of one press release as Editor's Pick on CSRwire.com | 275.00 |

Contact: Steven Donziger  (sdonziger@donzigerandassociates.com)

THANK YOU FOR YOUR BUSINESS!          **BALANCE DUE**          **USD 275.00**

PLEASE NOTE 3BL Media BANKING INSTRUCTIONS:
Payment by ACH transfer in US$ is requested and may be made to:

Wells Fargo Bank NA
San Francisco, CA
ABA/Routing #:   ████0248
Account #:   ████0109
SWIFT Code:   WFBIUS6S
Account Name: 3BL MEDIA, LLC
        2222 Sedwick Road
        Durham, NC 27713
TIN#:        35-2553958

*[handwritten note:]* 1/17/18 Per SRD do not send anything

*[handwritten note:]*
Verify total due
3 invoices attached
#4,095

$3,410 due 12/15/17 for package pmt
410 due from 9/15/17 for unpaid balance
275 due 12/12/17 guaranteed placement
$4,095 total

MKS-0006519

**3BL Media, LLC**
136 West Street
Suite 104
Northampton, MA 01060 US
(866) 508-0993 x187
accounting@3blmedia.com
www.3blmedia.com



## INVOICE

**BILL TO**

Steven Donziger
Donziger & Associates
245 West 104th Street
Suite 7D
New York, NY 10025 USA

**INVOICE #** 29411
**DATE** 05/31/2017
**DUE DATE** 12/15/2017

| ACTIVITY | AMOUNT |
|---|---|
| **Featured Press Release**<br>Package of 24 Featured Press Releases<br>- 24 @ $775 less: 45% discount | 3,410.00 |

- one Featured Press Release is guaranteed to be the Editor's Pick on CSRwire.com
- one Featured Press Release is guaranteed to be a CSRlive Story

Total Featured Press Release Package cost is $10,230, to be paid as follows:
    #29409   $3,410 - due June 6, 2017
    #29410   $3,410 - due September 15, 2017
    #29411   $3,410 - due December 15, 2017

Contact: Steven Donziger  (sdonziger@donzigerandassociates.com)

Please Note Our New Payment Details and TIN. For your convenience attached
is our updated Form W-9:
   2222 Sedwick Road
   Durham, NC 27713

THANK YOU FOR YOUR BUSINESS!          BALANCE DUE      **USD 3,410.00**

PLEASE NOTE 3BL Media BANKING INSTRUCTIONS:
Payment by ACH transfer in US$ is requested and may be made to:
  Wells Fargo Bank NA
  San Francisco, CA
  ABA/Routing #:      248
  Account #:      0109

MKS-0006520

**3BL Media, LLC**
136 West Street
Suite 104
Northampton, MA  01060 US
(866) 508-0993 x187
accounting@3blmedia.com
www.3blmedia.com





**BILL TO**

Steven Donziger
Donziger & Associates
245 West 104th Street
Suite 7D
New York, NY  10025 USA

**INVOICE #** 29410
**DATE** 05/31/2017
**DUE DATE** 09/15/2017

| ACTIVITY | AMOUNT |
|---|---|
| **Featured Press Release**<br>Package of 24 Featured Press Releases<br>- 24 @ $775 less: 45% discount | 3,410.00 |

- one Featured Press Release is guaranteed to be the Editor's Pick on CSRwire.com
- one Featured Press Release is guaranteed to be a CSRlive Story

Total Featured Press Release Package cost is $10,230, to be paid as follows:
  #29409    $3,410  -  due June 6, 2017
  #29410    $3,410  -  due September 15, 2017
  #29411    $3,410  -  due December 15, 2017

Contact:  Steven Donziger  (sdonziger@donzigerandassociates.com)

Please Note Our New Payment Details and TIN.  For your convenience attached
is our updated Form W-9:
  2222 Sedwick Road
  Durham, NC  27713

THANK YOU FOR YOUR BUSINESS!

PLEASE NOTE 3BL Media BANKING INSTRUCTIONS:
Payment by ACH transfer in US$ is requested and may be made to:
  Wells Fargo Bank NA
  San Francisco, CA
  ABA/Routing #: ████0248
  Account #: ████0109

**PAYMENT** 3,000.00
**BALANCE DUE**

**USD 410.00**

MKS-0006521

SWIFT Code:    WFBIUS6S
Account Name: 3BL MEDIA, LLC
               2222 Sedwick Road
               Durham, NC  27713
TIN#:          35-2553958

MKS-0006522



Peter R. Grant*

Jeffrey Huberman**

Krystle Tan

Karenna Williams

1620-1075 W. Georgia Street

Vancouver, BC  V6E 3C9

TEL 604 685 1229

TOLL FREE 1 800 428 5665

FAX 604 685 0244

WEB grantnativelaw.com

*TO BE PAID ?*

October 26, 2017

Our File No. 1074-2

**By Email**

Waddell Phillips Professional Corporation
Suite 1120
36 Toronto Street
Toronto, ON  M5C 2C5

**Attention: John Phillips**

Dear John:

Re:    **Statements of Account**

Please now find enclosed our invoice no. 10486 for services rendered and disbursements incurred up to and
including September 30, 2017 in the amount of $17,364.11 with respect to our file 1074-2 – Yaiguaje v. Chevron. I
wish to confirm that I have only billed on this file up until I was retained and will not be billing you further on
this file.

Please note that the following invoices remain outstanding:

Invoice 10459 dated August 31, 2017 in the amount of $3,325.59 for file 1074-1 – Consulting Work.

We trust that you will find the above and enclosed to be in order and look forward to your early remittance.

Sincerely yours,

**GRANT HUBERMAN**

Peter R. Grant

/ana

Enclosures

M:\Office\Account letters\2017\October\1074-2.docx

*Personal Law Corporation dba Grant Huberman
**Personal Law Corporation

MKS-0006523

In Account With:



Peter R. Grant∗
Jeffrey Huberman∗∗
1620-1075 W. Georgia Street
Vancouver, British Columbia  V6E 3C9
TEL 604 685 1229  FAX 604 685 0244

Waddell Phillips Professional Corporation
Suite 1120
36 Toronto Street
Toronto, Ontario M5C 2C5

September 30, 2017

| | |
|---|---|
| File #: | 1074-2 |
| Inv #: | 10486 |

**Attention:**   John Phillips

Band or Individual #:

**RE:**       Yaiguaje v. Chevron

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|---|---|---|---|---|
| Sep-12-17 | | 0.25 | 125.00 | PRG |
| Sep-13-17 | | 0.40 | 200.00 | PRG |
| Sep-14-17 | | 0.50 | 250.00 | PRG |
| Sep-18-17 | | 0.40 | 200.00 | PRG |
| Sep-19-17 | | 0.80 | 100.00 | ANA |
| Sep-20-17 | Redacted | 0.40 | 200.00 | PRG |
| Sep-22-17 | | 0.60 | 300.00 | PRG |
| Sep-23-17 | | 14.00 | 0.00 | PRG |
| Sep-25-17 | | 14.00 | 7,000.00 | PRG |
| Sep-26-17 | | 6.00 | 3,000.00 | PRG |
| Sep-28-17 | | 16.00 | 4,000.00 | PRG |

Grant Huberman is not a Partnership

∗Personal Law Corporation dba Grant Huberman
∗∗Personal Law Corporation

MKS-0006524

Invoice #:    10486                                              Page:    3

**Balance Due Now**                                             $25,198.07

NB: Other disbursements for this period may be billed at a later date.

Total GST    $826.86

GST No.:    13382 5596 RT0001

* tax-exempt

**GRANT HUBERMAN**

PER:_____

Peter R. Grant

E & EO

Due and Payable Upon Receipt
Interest Charged After Sixty Days,
1.00% Per Month , 12.68% Per Year

Please make all cheques payable to
Peter R. Grant Law Corporation

MKS-0006525

Invoice #:    10486                                          Page:    2

|          |          |       |           |     |
|----------|----------|-------|-----------|-----|
|          |          | 0.50  | 250.00    | PRG |
|          |          | 0.10  | 12.50     | ANA |
| Sep-29-17 | Redacted | 1.00  | 500.00    | PRG |
|          |          | 0.10  | 12.50     | ANA |
| Sep-30-17 |          | 0.75  | 375.00    | PRG |

|        |       |             |
|--------|-------|-------------|
| Totals | 55.80 | $16,525.00  |

GST Charged on Fees          $826.25
PST Charged on Fees          $0.00

**DISBURSEMENTS**                          **Disbursements**

Sep-30-17    Print Copies - Black  25 @ 0.40          10.00
             Print Copies - Colour  3 @ 0.75           2.25

Totals                                       $12.25
             GST on Disbursements             $0.61
             PST on Disbursements             $0.00

**Total Fees and Disbursements**            **$17,364.11**
Previous Balance                             7,833.96

MKS-0006526


*already paid?*

# Rex Weyler

### INVOICE

Date: Aug. 31, 2017
Invoice # 2017048LA

To: Lago Agrio Legal Team
   Attention: Steven Donziger

RE: Public Relations, media, meetings July, August, 2017
   research and article, **"Chevron's Amazon Chernobyl Case moves to Canada"**

| | |
|---|---:|
| July: case research, article draft . . . . . . . . . . . . . . . . . . . | $ 2,000.00 |
| August: legal revisions, consultations . . . . . . . . . . . . . . . | 1,000.00 |
| Travel, Air fare, Vancouver - Ecuador, return . . . . . . . . . | 1,905.44 |
| Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4,905.44 |

**payments are wired to**:

Beneficiary Name:    Rex Weyler
Beneficiary Address:  822 Austin Drive, Mansons Landing, BC, Canada, V0P 1K0

Transit (Branch):           07600
Bank code (Institution):    003
Account number:             ▮5753

12 digit account number:    ▮5753

SWIFT code:        ROYCCAT2

Bank Name:         RBC Royal Bank of Canada
Bank Address:      Royal Bank of Canada
                   10th and Sasamat
                   4501 W 10th Ave
                   Vancouver, BC, Canada, V6R 2J2

Rex Weyler    Box 446, Mansons Landing, BC, V0P 1K0   Canada
rexweyler1@gmail.com      250-935-0005    www.rexweyler.com

Travel details:

Orbitz Travel

Booking ID: PKT2FO
Ticket #s:
  0018693315245 (Lisa Marie Gibbons)
  0018693315246 (Rex Alan Weyler)

Traveler 1:  Adult      $894.72
Traveler 2:  Adult      $894.72
Total Protection Plan $116.00

Total              $1,905.44 USD.

Paid, Credit Card: Lisa Marie Gibbons

MKS-0006528

 Gmail

Laura Miller <lbmiller104@gmail.com>

## Rex Weyler, Ecuador travel expenses

2 messages

**Rex Weyler** <rexweyler1@gmail.com>                    Tue, Oct 3, 2017 at 12:35 PM
To: Laura Miller <lbmiller104@gmail.com>

Laura, thank you so much. My air travel was covered in my previous Invoice # 2017048LA, and paid. I'm invoicing you here for my travel from home to the Vancouver Airport and back home:

Rex Weyler, Invoice # 2017051LA, travel, Ecuador

Ferry, Vancouver Island - Airport    ...  $  89.70
gas          ...  $  48.48
Parking Vancouver Airport    ...  $ 188.00
Ferry, return, Vancouver Island      ...  $  78.25
Ferry, Quadra to Cortes Island       ...  $  62.15

Total:         ...  $ 466.58 Canadian   **US$: 372.92**
=======      ===========

Thank you so much. **Payments are wired to:**

Beneficiary Name:     Rex Weyler
Beneficiary Address:   822 Austin Drive, Mansons Landing, BC, Canada, V0P 1K0

Transit (Branch):        07600
Bank code (Institution):   003
Account number:         5753
12 digit account number:      5753
SWIFT code:            ROYCCAT2

Bank Name:             RBC Royal Bank of Canada
Bank Address:          Royal Bank of Canada
10th and Sasamat
4501 W 10th Ave
Vancouver, BC, Canada, V6R 2J2

================================================================

Rex Weyler      Box 446, Mansons Landing, BC, V0P 1K0     Canada

rexweyler1@gmail.com       250-935-0005       www.rexweyler.com

===============

On Oct 3, 2017, at 7:42 AM, Laura Miller <lbmiller104@gmail.com> wrote:

MKS-0006529



2868-MTD29000092517001722-000000



DONZIGER AND ASSOCIATES PLLC
245 W 104TH ST
NEW YORK , NY, 10025-0000

To: DONZIGER AND ASSOCIATES PLLC

    In accordance with your instructions, we have DEBITED your
account #:                    ***********8783 for USD $4905.44 on 09/25
                              /2017.
If you have any questions, please contact your nearest TD Bank Branch
or call 1-888 751-9000.

    The Wire transfer equivalent of CAD 5,864.95
Exchange rate:                0.8364
    A wire transfer fee in the amount of $40.00 has been deducted from you
    r account.
Sender Reference:             09221705444855LN
    * * *
Beneficiary:                  Rex Weyler
Address:                      822 Austin Dr
                              Mansons Landing Canada
Beneficiary Bank:             Royal Bank Of Canada
Address:                      10Th Street And Sasamat
                              Vancouver Canada
    * * *
Originator Bank Info:
Bank to Bank info fields:     {6500}Pay Invoice*

THANK YOU FOR CHOOSING TD BANK



Page 01

Member FDIC  TD Bank N A

MKS-0006530

# Invoice

Law Offices of Steven R. Donziger
245 West 104th Street, #7D
New York, NY 10025

*2/5/2018*
*Do not pay until*
*SRD approval.*

**Partial reimbursement for legal and consultative services and expenses/Ecuador environmental case**

**2013-2017**

Due: $200,000.00

**Wire $150,000:**

**Steven Donziger**
TD Bank
2831 Broadway, New York, NY
Account # ████ 8783
RTN ████ 3673
Swift Code NRTHUS33XXX

**Wire $50,000:**

Laura B. Miller
Citibank
Account # ████ 6374
RTN: ████ 008-9
Swift Code CITI US 33



Business Online Banking

Streamline Family Office Inc    Profile & Settings    **Sign Out**

How can we help you?

Accounts | Bill Pay | Transfer | Send | Business Services | Special Offers & Deals | Tools & Investing | Open an Account | Help & Support

### Send money to/from other banks, or to someone else using an account number

**Make Transfer**    **Transfer Activity**    **Add Account/Recipient**    **Manage Accounts/Recipients**

**Your transfer is on the way.**

Once the transfer is processed, you'll receive an email with a confirmation number.

**From:** xxxxxxxx9158
**To:** xxxx1505
**Description:**

**Transfer Amount**

**Sender**
- -
30 SPRINGDALE AVE
DOVER, MA 02030

**Confirmation Code:** 226568868

**Recipient**
Shuyana Natalia Alluaca
Calle Gonzalo Pizarro N 3-88
Tumbaco, ECUADOR EC

| | |
|---|---|
| Transfer Amount | $1,000.00 |
| Transfer Fees | $45.00 |
| **Total:** | **$1,045.00** |
| **Total to recipient** | **$1,000.00 USD** |

**Make Another Transfer**

**Secure Area**                                                      Sign Out

Locations | Contact Us | Browse with Specialist | Privacy & Security | Online Banking Service Agreement | Advertising Practices

**Quick Help**

Use this screen to obtain your confirmation number.

What can I do?

Obtain your confirmation number and print a copy.

Make another transfer.

More information about transfers

Investment and insurance products:

| Are Not FDIC Insured | Are Not Bank Guaranteed | May Lose Value |
|---|---|---|
| Are Not Deposits | Are Not Insured By Any Federal Government Agency | Are Not a Condition to Any Banking Service or Activity |

Banking, credit card, automobile loans, mortgage and home equity products are provided by Bank of America, N.A. and affiliated banks, Members FDIC and wholly owned subsidiaries of Bank of America Corporation. Credit and collateral are subject to approval. Terms and conditions apply. This is not a commitment to lend. Programs, rates, terms and conditions are subject to change without notice.

Investing in securities involves risks, and there is always the potential of losing money when you invest in securities. You should review any planned financial transactions that may have tax or legal implications with your personal tax or legal advisor.

Merrill Lynch is the marketing name for Merrill Lynch and Merrill Edge® which are made available through Merrill Lynch, Pierce, Fenner & Smith Incorporated (MLPF&S).

Merrill Lynch Wealth Management makes available products and services offered by MLPF&S and other subsidiaries of Bank of America Corporation. Merrill Edge is available through Merrill Lynch, Pierce, Fenner & Smith Incorporated (MLPF&S) and consists of the Merrill Edge Advisory Center (investment guidance) and self-directed online investing.

https://transfers.bankofamerica.com/jsp/bofa/receive_transfer_dfie_gen3.jsp?processActio...    3/19/2018

MKS-0006532

RECIBO DE PAGO POR 1.000 USD

RECIBÍ LA CANTIDAD DE MIL DÓLARES (1.000USD) POR CONCEPTO DE PAGO DE SERVICIOS DE COORDINACIÓN Y EJECUCIÓN DE ACTIVIDADES RELACIONADAS AL CASO CHEVRON EN LAS COMUNIDADES AFECTADAS, EN ECUADOR, DURANTE EL MES DE DICIEMBRE DE 2017.

QUITO, 12 DE MARZO DE 2018

Luis Yanza A.

1707271217

MKS-0006533

Cuenta No. ███ 1505
Banco de Guayaquil
Nombre: Shuyana Natalia Yanza Allauca
Dirección: Calle Gonzalo Pizarro N 3-88, Barrio San Blas, Tumbaco, provincia de
Pichincha.
Teléfono 593 2 2372910
Código Swift (para transferencias desde afuera): GUAYECEG
Dirección del banco: Centro Comercial Río Centro Sur, suite 122, 123. Avenida 25 de
Julio, Guayaquil. Telefono 593 42 3730100.

MKS-0006534

 **FUNDACIÓN ÑAUPA DE SABERES ANDINOS**

## INVOICE Nro. 000111

Invoice Date: March 14, 2018
My Reference: Research Activities

| Quantly | Description | Unit Price | Total |
|---------|-------------|-----------|-------|
| | Conference expences for April 2018 | | 2.000,00 |
| | | Subtotal | 2.000,00 |
| | | Tax | |
| | | Total Due | 2.000,00 |

I declare all the information contained in this invoice to be true and correct

SEND PAYMENT TO:      Fundación Ñaupa de Saberes Andinos

BANK:                 PRODUBANCO

CHECK ACCOUNT:        ▮▮▮▮9591

SWIFT CODE:           PRODEQ

BANK ADDRESS:         Avenida Amazonas 211 y Japón. Quito, Ecuador

Signature of responsabiliad

Juan Aulestia
Director Ejecutivo
Fundación Ñaupa



Camino de Orellana N27-234 y Rafael León Larrea (Guápulo) E-mail: fundnaupa@gmail.com / Telf.: (593) 2 252 1262
Quito - Ecuador

MKS-0006535

# EXHIBIT 91

| | |
|---|---|
| **From:** | Ben-Jacob, Michael <Michael.Ben-Jacob@kayescholer.com> |
| **Sent:** | Wednesday, December 7, 2016 11:48 PM |
| **To:** | 'alenczner@litigate.com' |
| **Cc:** | 'John van Merkensteijn'; 'Steven Donziger' |
| **Subject:** | Instructions for Canadian counsel/Ecuador matter |
| | |
| **Categories:** | KF2 |

Alan,

This confirms that Steven is authorized to give instructions to you regarding the allocation and disbursement of funds to counsel to pay legal fees.

Regards.

mbj

Michael Ben-Jacob
Kaye Scholer LLP
250 West 55th Street | New York, New York 10019-9710
T: (212) 836-8310 | F: (212) 836-6310
michael.ben-jacob@kayescholer.com | www.kayescholer.com

Any U.S. federal tax advice contained in this message (including any attachments) may not be able to be used for purposes of avoiding tax-related penalties imposed under U.S. federal tax laws. This message may contain confidential and/or legally privileged information from the law firm Kaye Scholer LLP. If delivered to anyone other than the intended recipient, please notify the sender immediately by return email or by telephone (212) 836-8310 and delete the message, along with any attachments, from your computer. Thank you.

JVM 002498

# EXHIBIT 92

| | |
|---|---|
| **From:** | Steven Donziger <sdonziger@donzigerandassociates.com> on behalf of Steven Donziger |
| **Sent:** | Thursday, August 4, 2016 12:30 PM |
| **To:** | John van Merkensteijn; Bill Twist |
| **Subject:** | Re: issue |
| | |
| **Categories:** | KFLaw |

My partner Aaron Page prepared the response below to Greg's flagging of that Kaplan quote.  I would be interested to see what Greg says after reading this.  Best, Steven

From Aaron:

In reality we explained this issue dozens of times before Kaplan; like the rest of our case, he ignored it. We don't dispute that the judgment reflects reliance on certain documents, but calling those documents "plaintiffs' internal work product" is all part of Chevron's packaging. In reality these were advocacy documents that were designed to get before the court. There is a good chance they were submitted to the court (and Chevron) and just weren't included in the hand-marked, hand-sewn record for some reason. For example, with respect to the so-called "fusion memo", the Republic of Ecuador for its arbitration briefing did a massive amount of work cross-referencing all the record documents, team emails, and site inspection records, ultimately finding that:

> On June 9, three days before the Aquarico inspection, Plaintiffs prepared a final version of the Fusion Memo20 and a list of accompanying exhibits to be submitted.21 At the June 12 judicial inspection, both parties discussed with the Judge the Chevron-Texaco merger and its legal implications for the case.22 The court docket notes submission by Pablo Fajardo at the inspection site of all of the Fusion Memo's accompanying exhibits.23 In fact, each of these exhibits referenced in the Fusion Memo was docketed in the record, even though the memo itself apparently was not, thereby at the worst suggesting some administrative hiccup.24 The Fusion Memo exhibits submitted at the Aquarico 2 judicial inspection are the very exhibits cited in the Lago Agrio Judgment in the legal discussion of "lifting the corporate veil" — the same discussion that Claimants allege was copied from the unfiled Fusion Memo.

See para. 16 of the attached annex on the "ghostwriting" issue submitted by the ROE in Feb. 2013. This is consistent with the recollections of our team. Note that this was around for almost a year before the trial and it (and the arguments in it) were submitted to Kaplan – he completely ignored them. Another thing on this point the ROE did for the annex was go through old Crude outtakes of site inspections and noted several instances where they could see both Chevron and Plaintiffs' lawyers submitting documents openly to the court, but then noted that those documents didn't show up in the record. So it was not a very well-organized system and what is in the record, as well as what was or was not properly submitted to the court, is not at all clear.

Additionally, it appears that there is a practice in Ecuador in this case and others of submitting briefing documents to the court *ex parte*. Until mid 2009, it was legal to meet with judges *ex parte* and both sides did so (Chevron finally admitted to this only after a long series of denials). *Ex parte* briefing were apparently part of this process, and may even have outlived the prohibition on *ex parte* meetings. It does not appear to have been extensive, but it did exist, and the judge who authored the trial judgment has said he received *ex parte* briefing from both sides. Admittedly this is a not a great practice to defend, but it is what it is, Chevron knew about it when it chose Ecuador as its preferred forum, and even if it

JVM 004865

raised due process concerns (ignoring the fact that both parties engaged in it) at the trial level, such concerns were extinguished when the judgment was fully re-affirmed twice on appeal. It is certainly a far cry from "fraud."

As for dear Judge Kaplan's quote, it is a typical masterwork of false and misleading information:

"The Judgment copied extensively from eight LAP internal work product documents –
documents which were not in the record [not proven], which Zambrano denied having used [false: Z testified he received ex parte briefing and that he recognized the fusion memo and others as documents he used in drafting the judgment], and the presence of
which in the Judgment defendants could not explain. [we and the ROE explained this ad nauseum – it was ignored]"

---

**From:** John van Merkensteijn <jhvm@rossteq.com>
**Sent:** Wednesday, August 3, 2016 10:57:16 PM
**To:** Steven Donziger; Bill Twist
**Subject:** issue

Steven

Just so we are clear on this issue—and sorry to belabor
the issue—here is what Kaye Scholer pointed out

John H. van Merkensteijn lll
Managing Director
Rossi Technology LLC
60 Riverside Boulevard
Suite 2101
New York, NY. 10069
Phone (212) 769-4055
jhvm@rossteq.com

---

**From:** Gregory Wallance <Gregory.Wallance@kayescholer.com>
**Date:** Wednesday, August 3, 2016 at 1:43 PM
**To:** John van Merkensteijn <jhvm@rossteq.com>
**Cc:** Derek Stoldt <Derek.Stoldt@kayescholer.com>, Michael Ben-Jacob <Michael.Ben-Jacob@kayescholer.com>
**Subject:** RE: New draft agreement

I read the summary below and do need to point out that Steven has not properly explained the issue in #3, where he says that in Ecuador "judges use parts of submissions of both parties in writing their opinion." What Judge Kaplan found was that documents in the plaintiffs' internal files that had never been produced in discovery to Chevron or made part of the record showed up in the Zambrano judgement. That is much different than a judge using a parties' brief in writing an opinion.

Here is what Judge Kaplan found:

"The Judgment copied extensively from eight LAP internal work product documents –

JVM 004866

documents which were not in the record, which Zambrano denied having used, and the presence of which in the Judgment defendants could not explain."

(Chevron v. Donziger, p. 218).

I wasn't copied on the email below so I leave it to you whether to forward this.

JVM 004867