# EXHIBIT 1

| | |
|---|---|
| **From:** | John van Merkensteijn <jhvm@rossteq.com> |
| **Sent:** | Thursday, January 18, 2018 6:30 PM |
| **To:** | Katie Sullivan <Katie@Streamlinefamilyoffice.com>; Steven Donziger <sdonziger@donzigerandassociates.com> |
| **Cc:** | Ian Watson <iw@watsonassetmanagement.com> |
| **Subject:** | Re: note the below -- Ecuador |

I agree

She has created a great possibility for creating a resolution process

John H. van Merkensteijn lll
Phone (212) 769-4055
jhvm@rossteq.com

**From:** Katie Sullivan <Katie@Streamlinefamilyoffice.com>
**Date:** Thursday, January 18, 2018 at 7:18 PM
**To:** Steven Donziger <sdonziger@donzigerandassociates.com>
**Cc:** John van Merkensteijn <jhvm@rossteq.com>, Ian Watson - London <iw@watsonassetmanagement.com>
**Subject:** Re: note the below -- Ecuador

Agenda looks like a great start! I look forward to seeing the budget so I can help secure funders and possible sponsors.

On Jan 18, 2018, at 4:57 PM, Steven Donziger <sdonziger@donzigerandassociates.com> wrote:

> The below is a key part of our out-of-court strategy.  Want to make sure you guys understand the plan.  Being organized by Kathleen Mahoney, Phil's wife and a prominent law professor.  I have high hopes for this.  We need to raise more funds for it but it is getting off the ground.  Let's talk soon.

> **From:** Kathleen Elizabeth Mahoney <kmahoney@ucalgary.ca>
> **Sent:** Thursday, January 18, 2018 12:16 AM
> **To:** Steven Donziger; Sharon Mascher; Robert Hamilton; Kristen van de Biezenbos; Phil Fontaine
> **Subject:** first draft of a conference program

> Hi everyone,
> I am taking this opportunity to E-Introduce Steven Donziger and Phil Fontaine to Sharon Mascher, Robert Hamilton and Kristen van de Biezenbos, my colleagues at the University of Calgary who have volunteered to be in the "core" organizing group for the conference. Steven has been the long standing (long suffering) lawyer representing the Ecuadorian claimants and I think you all know who Phil is. Both Steven and Phil are very interested in the conference and will continue to play an active role going forward.
> I have done a first draft outline of a conference program which is attached. Please bear in mind this is a FIRST DRAFT so please go at it with sharp pencils with your suggestions, comments, deletions, additions etc., or even don't hesitate to say we have to start over of you think that is necessary.
> I have tried to incorporate the initial conference proposal  document  into the goals and objectives of the conference. From there I tried to reflect those goals and objectives into panels that may be of interest to an audience that would include indigenous persons and a wide variety of interdisciplinary participants in addition to the legal community. If we are successful is getting either Roger Waters or Margaret Atwood or both, we will have a sell out for sure. I have also tried  to incorporate Sharon's suggestions for panels  and speakers. I am attaching

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

her  suggestions FYI to this email.

In addition to the program we are working on venue options and clarifying availability at the Banff Springs. I am attaching a link if you want to have a look. So far they have quoted the best rates.

http://www.fairmont.com/banff-springs/?cmpid=google_bsh_search-brand-canada_branded-e-revsh&gclid=EAIaIQobChMIp7CQ1NXg2AIVkmF-Ch3ScgCsEAAYASAAEgI3OvD_BwE



## Luxury Banff Hotel & Resort - Fairmont Banff Springs Hotel

www.fairmont.com

Experience our luxurious Banff Springs hotel and golf resort located in the Rocky Mountains of Banff National Park, Alberta, Canada. Enjoy our world-class golf course ...

I am also trying to get clarification from the Kinnear Centre for Creativity and Innovation about rates and availability. Here is ta link to their website. It would also be a good choice as they have a well developed Indigenous presence on faculty and in their programs.

https://www.banffcentre.ca/kinnear-centre-creativity-and-innovation



## Kinnear Centre for Creativity and Innovation | Banff Centre

www.banffcentre.ca

Banff Centre's newest meeting facility, the LEED Certified Kinnear Centre for Creativity and Innovation, includes 17 fully-equipped meeting rooms of varying sizes and ...

The McEwan Hall venue located on the campus of the University of Calgary is attached here. We are trying to get their info as well but they don't return phone calls (bad sign).

https://www.macewancentre.com/

I think we should have another meeting soon to talk about this. Next week is not on for me but perhaps the week of the 29th. I am wide open except for Friday.

Please let me know your availability. If you have comments on the FIRST DRAFT please provide them ahead of the meeting.

Thanks !! I am now putting together a rough budget which we will need to discuss. Look forward to seeing or hearing from you soon.

Best,

K.

Kathleen Mahoney FRSC, QC

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

Fellow of the Royal Society of Canada
Trudeau Fellow
Fulbright Fellow
Sir Allen Sewell Fellow
Barrister and Solicitor
Professor of Law
Website: http://www3.telus.net/kmahoney
Tel: (403) 239-8982
Fax: (403) 208-1714

CONFIDENTIALITY NOTICE: This e-mail and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed and may contain confidential and privileged information protected by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of the e-mail is strictly prohibited. Please notify the sender immediately by return e-mail and delete all copies from your system.

<Sharon's Conference PanelSpeaker suggestions[3].docx>

<Outline for Conference on Aquinda v Chevron case and related indigenous issues.docx>

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more **Click Here**.

# EXHIBIT 2

| | |
|---|---|
| **From:** | Katie Sullivan <Katie@Streamlinefamilyoffice.com> |
| **Sent:** | Monday, March 26, 2018 9:20 PM |
| **To:** | Steven Donziger <sdonziger@donzigerandassociates.com> |
| **Subject:** | Re: Ecuador Case Update -- Important/Confidential |
| **Attach:** | image001.gif; image002.jpg |

Great!!

On Mar 26, 2018, at 2:43 PM, Steven Donziger <sdonziger@donzigerandassociates.com> wrote:

> FYI
>
> **From:** Steven Donziger
> **Sent:** Monday, March 26, 2018 2:43 PM
> **To:** Abbiati, Tony
> **Subject:** Re: Ecuador Case Update -- Important/Confidential
>
> Great.
>
> Look forward to catching up on the call and thanks again for believing.
>
> Best, Steven
>
> **From:** Abbiati, Tony <tabbiati@scsfinancial.com>
> **Sent:** Monday, March 26, 2018 2:34:43 PM
> **To:** Steven Donziger
> **Subject:** RE: Ecuador Case Update -- Important/Confidential
>
> Hi Steven,
>
> Thanks for the update – sounds promising. I am pretty sure I can join you for a call on 4/6 at 4:00 pm and have penciled it in.
>
> Keep up the good fight and I'll look forward to touching base then.
>
> Tony
>
> **Tony Abbiati | *Managing Director***
> **SCS Financial Services, LLC**
> 888 Boylston Street, Suite 1010 | Boston, MA | 02199
> Direct: 617-204-6445 | Mobile: 617-306-7142
> tabbiati@scsfinancial.com
> www.scsfinancial.com
> <image001.gif>

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

**From:** Steven Donziger [mailto:sdonziger@donzigerandassociates.com]
**Sent:** Monday, March 26, 2018 2:23 PM
**To:** Steven Donziger <sdonziger@donzigerandassociates.com>
**Subject:** Ecuador Case Update -- Important/Confidential

Supporters:

I wanted to quickly touch base to our investors on behalf of the rainforest communities of Ecuador to share some new and exciting information (link below) that summarizes the state of play in the environmental case against Chevron. Although there is still much work to do, the dynamics for asset collection seem to be moving in favor of the communities and against Chevron.

Chevron continues to face real risk in the lead-up to a critical court argument in Toronto before the Ontario Court of Appeal on April 17. If the Ecuadorians win the argument, Chevron's risk will increase dramatically and its technical defenses to asset seizure will be virtually exhausted. The specific legal issue concerns whether the Ecuadorians can seize assets held by Chevron's wholly-owned subsidiary, Chevron Canada. Several community leaders are traveling from the rainforest to attend the hearing. They are expected to be joined by Canadian indigenous leaders in a cross-border display of solidarity. If anybody wants to attend what is certain to be an extraordinary event, please let me know.

Chevron is also under renewed pressure from institutional shareholders over the Ecuador litigation. Two resolutions presented by company shareholders (Zevin Asset Management and Newground Investment) will be voted on at the annual meeting in May. Both call into question management's "material mishandling" of the Ecuador litigation. Other shareholders, including Vermont's pension fund, are backing the resolutions. It is our view that Chevron continues to downplay the risks it faces to the markets in its public disclosures.

**Please note that we are planning an update call for our small group of investors for Friday, April 6 at 4 p.m. EST.**

Please confirm availability as soon as you can. A call-in number will be circulated after confirmation. As always, feel free to contact me at anytime via this email or at 9175662526. If you cannot make the scheduled call, I will be happy to arrange a direct call.

Best,

Steven Donziger

Here is our latest blog from the legal team summarizing the state of play:

http://thechevronpit.blogspot.com/2018/03/chevron-hurting-again-as-shareholders.html

<image002.jpg>

Chevron Hurting Again As Shareholders Show Renewed Anxiety Over $12B Ecuador Pollution Judgment

thechevronpit.blogspot.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

R. Hewitt Pate Michael Wirth Chevron's management team, led
by new CEO Michael Wirth and longtime General Counsel R.
Hewitt Pate,...

**Here is a recent press release about the increased risk Chevron faces in Canada:**

http://www.csrwire.com/press_releases/40874-In-Canada-Chevron-Faces-New-Risks-From-12b-
Ecuador-Pollution-Judgment-As-Shareholders-Step-up-Pressure

## In Canada, Chevron Faces New Risks From $12b Ecuador Pollution Judgment As Shareholders Step up Pressure – Press Releases on CSRwire.com

www.csrwire.com

Press Releases get your corporate social responsibility news and information out to journalists, investors,
and industry professionals utilizing CSRwire's targeted reach.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

| | |
|---|---|
| **From:** | Steven Donziger <sdonziger@donzigerandassociates.com> |
| **Sent:** | Monday, May 15, 2017 5:41 PM |
| **To:** | Katie Sullivan <Katie@Streamlinefamilyoffice.com> |
| **Subject:** | Fw: Follow up -- Ecuador case opportunity |

FYI -- this is how i spend a lot of my time -- fun! if u have any feedback let me know

---

**From:** Steven Donziger
**Sent:** Monday, May 15, 2017 5:38 PM
**To:** David Friedman
**Cc:** John Van Merk
**Subject:** Follow up -- Ecuador case opportunity

David,

We met in New York in early April in New York City with John Van Merkensteijn (copied here) to discuss a possible opportunity with the Ecuador litigation against Chevron. I believe Ian Watson referred us to you. Thank you again for that meeting.

John indicated that you decided to take a pass on the opportunity, but I wanted to ask your indulgence as we are still actively campaigning to obtain a monetary recovery for the indigenous groups and to enlist investors to help provide the support needed to compress the time frame for that to happen. I want to give you a quick update on recent developments in the event you know others who might be interested in hearing our story and possibly joining forces with the villagers in what has become a truly epic campaign for justice.

With this context in mind, I am sending an article from Earth Rights International (or ERI, a prominent environmental group) that was published after we met that addresses the issue of Chevron's retaliatory civil RICO case that you raised in our meeting.  The decision in the RICO case, which we believe is deeply flawed, is currently being appealed to the U.S. Supreme Court on the grounds that Chevron fabricated much of the evidence relied on by the U.S. trial court. We also have received new support (in the form of amicus briefs submitted to the U.S. Supreme Court) in recent days from international law scholars, environmental groups, and other civil society organizations.

Here is the link to the summary article that urges the Supreme Court to grant review after Chevron made illegal witness payments:

https://www.earthrights.org/blog/chevrons-illegal-payments-witnesses-should-prompt-supreme-court-reconsider-case

Here is a link to a press release regarding the legal brief of the 19 law scholars that asserts the RICO case puts the entire U.S. government in violation of international law:

http://www.csrwire.com/press_releases/39978-19-Scholars-Urge-U-S-Supreme-Court-to-Condemn-Chevron-for-Violating-International-Law-In-Amazon-Pollution-Case

Here is a link to news about the support from the civil society groups:

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

http://www.csrwire.com/press_releases/39958-Environmental-Groups-Condemn-Chevron-Before-U-S-Supreme-Court-for-Faking-Evidence-in-Pollution-Case

Although I mentioned to you that U.S. courts have no legal authority to block enforcement of the Ecuador judgment in Canada, where our case is proceeding along the lines mentioned in our meeting, the reality is such that if the Supreme Court were to reverse Chevron's RICO decision it would be a huge setback for the company from a public relations standpoint and would also weaken the company's narrative in legal fora. That said, the chances of obtaining review are somewhat remote given that the Court agrees to hear only about 75 cases per term, out of thousands of requests for review.

Again, we really appreciate any interest and if you have any thoughts or ideas on how we can be more effective, please let us know. Thank you kindly for your time.

Best to you,

Steven Donziger

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

# EXHIBIT 3

Equity Holders

**JOINT APPENDIX 3**

This Joint Appendix identifies the <u>Existing Equity Holders</u> referenced in the Agreement and entitled under the Agreement to parity treatment corresponding to the Holder's interest. This Appendix may be amended to add additional interest-holders. It may not otherwise be altered, amended, modified, or superseded in a way that would dilute the interest of any interest holder without the express written

| Name | Agreement Type | Agreement Date | Consideration Received | % Interest |
|------|----------------|----------------|------------------------|------------|
| Funder I | Investment | May 2, 2016 | $250,000 | 0.1250% |
| Funder I | Investment | July 11, 2016 | $100,000 | 0.0500% |
| Funder II | Investment | July 11, 2016 | $250,000 | 0.1375% |
| Funder III | Investment | August 24, 2016 | $200,000 | 0.1100% |
| Funder IV | Investment | August 24, 2016 | $300,000 | 0.1815% |
| Funder IV | Investment | November 1, 2016 | $100,000 | 0.0605% |
| Funder V | Investment | November 14, 2016 | $250,000 | 0.1375% |
| Funder VI | Investment | February 3, 2017 | $152,000 | 0.0760% |
| Funder VII | Investment | *Dec 2017* | $250,000 | 0.2500% |
| Lawyer - SRD | Services | November 1, 2017 | | 6.3000% |
| Lawyer – AMP | Services | January 11, 2017 | | 0.2500% |
| Lawyer - PS | Services | September 28, 2016 | | 0.2500% |
| Lawyer - AS | Services | September 28, 2016 | | 0.2500% |
| Lawyer - PG | Services | | | 0.0000% |
| Lawyer - JP | Services | | | 0.0000% |
| Lawyer - EG | Services | | | 0.1250% |
| Services – KH | Services | January 11, 2017 | | 0.1250% |
| Consulting - BB | Services | | | 0.6000% |
| Consulting - DM | Services | | | 0.2000% |
| Consulting - TRG | Services | | | 0.2500% |
| Consulting - PF | Services | | | 0.2500% |
| Consulting - KS | Services | | | 0.1250% |
| **TOTAL** | | | <u>**$1,852,000**</u> | <u>**9.8530%**</u> |

**\*Special Disclosure**

*The table in Appendix 3 does not reflect all potential claims that may be brought against the FDA in the event of a recovery of judgment proceeds. Any purported prior existing interests not reflected in the chart will be considered after the presentation of a claim by the purported interest-holder. Claimants might include, for example, law firms that worked on the matter on a contingency basis in prior years that then abandoned the litigation under pressure from Chevron or for any business reason. The FDA generally maintains the position that any interests once held by particular claimants who abandoned the litigation, or who signed agreements with Chevron, have been forfeited in their entirety. If necessary, and independent of the interests reflected in the table, funds might be set aside from the judgment proceeds to handle potential claims from prior existing interests. Some of the potential claims of prior existing interests might be negotiated to resolution to avoid litigation. The FDA expects that the handling of all such actions related to prior existing interests will occur after the interests on the chart have been paid subsequent to any recovery.*

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED. R. EVID. 502(d)

Krevlin
Krevlin
Eisler

JVM
JVM
IW
RW
TA

MKS-0016125

Forfeited/Disputed

| Name | Agreement Type | Agreement Date | Fixed | % | Disputed | Forfeited |
|------|----------------|----------------|-------|---|----------|-----------|
| Treca | | | | | | 1.47% |
| Torvia | | | | | | 7.48% |
| DeLeon | | | | | | 1.40% |
| Woodsford | | | | | | 0.66% |
| Temeaire | | | | | | 0.50% |
| Patton Boggs | | | | | | 5.00% |
| Nextant | | | | | | 0.30% |
| H5 | | | | | | 1.25% |
| Motley Rice | | | | | 3.30% | |
| ECBA | | | | | 2.00% | |
| Maples | | | | | 2.00% | |
| Kohn, Swift & Graf | | | | | 0.00% | |
| Oren Kramer | | | | | 0.06% | |
| Fromboliere | | | | | 2.00% | |
| SKV (Smyser) | | | | | 1.00% | |
| | | | | | | |
| **TOTAL** | | | | | **10.36%** | **18.06%** |

**Shares attached to SRD interest**

| | | | | |
|---|---|---|---|---|
| Rich Friedman | | | 0.32% | |
| Zoe Littlepage | | | 0.32% | |
| Glen Krevlin | Loan Conversion‡ | February 7, 2011 | $ 250,000 | |
| David Sherman | Loan Conversion‡ | February 17, 2011 | $ 125,000 | |
| **TOTAL** | | | **0.63%** | |

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

# EXHIBIT 4

PRIVILEGED AND CONFIDENTIAL

**Equity Contract status: 3/10/18**

*Information sourced from files provided to date*

---

3/10/2018

A) **Priorities highlighted in yellow**

**STEPS TO FINALIZE – 12 DOCUMENTS TO FINALIZE:**
1. AMP to share word files with KS for the following DRAFTS already created: 1) Golinger 2)Phillips 3) Barnes 4) CSL Strategies
2. AMP to share word files with KS for the current legal DRAFT TEMPLATES: 1) Grant 2) Ford
3. AMP to share word file with K for the current advisory DRAFT TEMPLATE: 1) Billeness 2) Sullivan
4. KS will keep track and create new contracts from original templates (w/ tracked changes for all)
   a. Approval from AMP/SRD & final versions for execution with be PDF only
5. AMP/SRD to CREATE the following: 1) GK & 2) Sherman converted notes, 3) Friedman and 4) Littlepage new equity.

B) **All other contracts are missing certain signatures:** FDA – 4, Aland – 3, SRD – 2, Individuals – 4

---

**Investors**

- GK
  - Need countersignatures by FDA
- CE
  - Need Alan signature on 10% increase complete? Verify with AMP
- GK & Sherman – convert from SRD share to direct equity                **CREATE**

**Lawyers**

- SRD
  - Need SRD signature (Spanish version only)
- AMP
  - Need AMP signature on (Eng & Span versions)
- AS
  - Need FDA & AS (Spanish version only)
- PS
  - Need FDA & PS (Spanish version only)
- Golinger                                                **WORD DOC & FINALIZE**
  - Drafts only
- Phillips                                                **WORD DOC & FINALIZE**
  - Drafts only SRD thought this was complete. Verify with AMP/JP
- Grant                                                **CREATE FROM TEMPLATE**
  - Need to be drafted, retainer agreement on file only

MKS-0006498

PRIVILEGED AND CONFIDENTIAL

- Lenczer
  - Need AL on Superseding Retainer Agreement
- Friedman & Littlepages ................................................................... **CREATE**
  - Convert contract from 2013 tied to SRD equity to direct percentages
- Campbell Ford ................................................................... **CREATE FROM TEMPLATE**
  - Need to be drafted, $100k services

**Advisory**

- Hinton
  - Need Karen & Alan signature (Eng & Span versions)
- Rising Group
  - Need Alan signature (Eng & Span versions)
- Fontaine
  - Need SRD & FDA (Eng & Span versions)
- Barnes ................................................................... **WORD DOC & FINALIZE X 2**
  - Draft from 2011 only, needs to be finalized & executed
  - create one contract for three (Barnes/Sharpe/Gibbons) and one for Barnes individually
- Billenness ................................................................... **CREATE FROM TEMPLATE**
  - Needs to be drafted & executed - $100k investment equivalent
- Sullivan ................................................................... **CREATE FROM TEMPLATE**
  - Needs to be drafted & executed
- CSL Strategies LLC ................................................................... **WORD DOC & FINALIZE**
  - Draft from 2011 only, needs to be finalized & executed

MKS-0006499

# EXHIBIT 5

| | |
|---|---|
| **From:** | Simon Billenness <simon.billenness@gmail.com> |
| **Sent:** | Sunday, February 4, 2018 5:15 PM |
| **To:** | Steven Donziger <sdonziger@donzigerandassociates.com> |
| **Cc:** | Rex Weyler <rexweyler1@gmail.com>; Katie Sullivan <Katie@Streamlinefamilyoffice.com>; tabuns@gmail.com |
| **Subject:** | Re: important project/Canada fund world |

Thanks, Steve.

We already have a strong foothold in Canada with the addition this year of NEI, the Vancouver mutual fund manager, as a co-sponsor of the Independent Chair resolution.

We can build on that but it had to be in coordination with NEI and Zevin. It's very bad optics - possibly even counterproductive - for legal team to be seen doing it. That's is what you have me for.

That said, Katie and I just figured out how to use her excellent contacts with investors in Boston. I could do similar work with Rex in Canada.

I'm very happy to work with Anton again!

Simon

On Feb 4, 2018, at 5:47 PM, Steven Donziger <sdonziger@donzigerandassociates.com> wrote:

Friends,

Let's discuss a way we can do research on the Canadian fund scene to mobilize support for the resolutions and against Chevron in Canada. Anybody have any thoughts? Thanks, SRD

p.s. Please note that Anton is a Canadian lawyer who will be joining our team at the end of February and he can help with this project, potentially.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

# EXHIBIT 6

| | |
|---|---|
| **From:** | Steven Donziger <sdonziger@donzigerandassociates.com> |
| **Sent:** | Monday, March 12, 2018 6:17 PM |
| **To:** | Katie Sullivan <Katie@Streamlinefamilyoffice.com> |
| **Subject:** | Fw: CVX independent chair proposal |
| **Attach:** | CVX_2018 Chair CEO Opposition Statement.pdf |

see below.  keep confidential

---

**From:** Simon Billenness <simon.billenness@gmail.com>
**Sent:** Monday, March 12, 2018 5:34 PM
**To:** Steven Donziger
**Subject:** Fwd: CVX independent chair proposal

FYI.

Begin forwarded message:

**From:** Pat Tomaino <Pat@zevin.com>
**Date:** March 12, 2018 at 4:18:28 PM EDT
**To:** 'Jamie Bonham' <JBonham@neiinvestments.com>, "'Green, Katie'" <Katie.Green@vermont.gov>, 'Carina Lundberg Markow' <carina.lundberg.markow@folksam.se>, 'Emilie Westholm' <emilie.westholm@folksam.se>, 'Emily Schweitzer' <eschweitzer@freshpondcapital.com>, 'Maria Egan' <maria@reyndersmcveigh.com>, Jacob Johansson <jacob.johansson@folksam.se>
**Cc:** 'Simon Billenness' <simon.billenness@csrstrategygroup.com>
**Subject: RE: CVX independent chair proposal**

Hello colleagues,

I wanted to share Chevron's statement of opposition to our independent chair policy proposal (attached). Just like last year, CVX has not challenged the proposal at the SEC. The proposal will appear on the ballot at the annual meeting (likely to take place at the very end of May).

The opposition statement contains repeat arguments and a big dose of bravado that management's legal strategy will handily prevail against Ecuador plaintiff's attempts to collect on landmark oil pollution settlement. By way of quick update on the Ecuador litigation in Canada, we are aware that there will be a hearing in April to determine the viability of those claims in Canada going forward. A victory for the plaintiffs would send the case on a path toward the Supreme Court of Canada, extending the uncertainty by a year and marking an important defeat for Chevron. Stay tuned.

As we mentioned in January, we want to build support for the vote at the annual meeting. Actions ongoing:

1. I have briefed both proxy advisory firms (ISS and Glass Lewis) on the arguments in favor of the proposal. I will be circulating a memo to them by the end of April. In my meetings with ISS and GL, each firm advised me that they recommended votes FOR our proposal last year.

2. **Once we have a proxy memo, would someone on this chain be willing to circulate the document on the UN PRI list-serv? Please let me know. Many thanks.**

3. Simon Billenness has been working on an investor letter which highlights the risks of the Ecuador legal strategy

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

and emphasizes case for independent board oversight, as well as the other shareholder proposals being submitted by peers.

4.  We are continuing to reach out to reporters as well as the proxy voting teams of the major large asset management firms

Feel free to reach out with any questions or clarification.

My best,
Pat Tomaino


Pat Miguel Tomaino
*Director of Socially Responsible Investing*
Zevin Asset Management, LLC
11 Beacon Street, Suite 1125 │ Boston, MA 02108
617.742.6666 x310 │ pat@zevin.com
www.zevin.com

**From:** Pat Tomaino
**Sent:** Monday, January 22, 2018 12:52 PM
**To:** 'Jamie Bonham'; 'Green, Katie'; 'Carina Lundberg Markow'; 'Emilie Westholm'; 'Emily Schweitzer'; 'Maria Egan'; Jacob Johansson
**Cc:** 'Simon Billenness'
**Subject:** RE: CVX independent chair proposal

Hi folks,

Thank you very much for your time today to prep for tomorrow's meeting with Chevron.

**Call with Chris Butner is tomorrow 1/23 at 10aPT/1pmET:**
**Meeting number: 965 735 471**
**Password: 53839532**

We previewed bit of our plan for outreach. Grateful to Simon for offering some time to help get out the vote for our proposal and pitch the press.

Everyone please click into this Planning Doc to help coordinate questions and notes for tomorrow. The document will also help us coordinate outreach to reporters, proxy advisers, big investors, et al. https://docs.google.com/document/d/1YJDzKy-FVvsTinono5e2_1JEki0sTEkN1zTGAa7bDaM/edit?usp=sharing

The Planning Doc is saved to this folder, go ahead and save down any relevant news/resources here: https://drive.google.com/drive/folders/1mhOSESiviMI1ec40kUhMhINVuRGcb76B?usp=sharing

Many thanks, and please feel free to call on +1 617 742 6666 any time with questions.

My best,
Pat

Pat Miguel Tomaino
*Director of Socially Responsible Investing* │ Zevin Asset Management, LLC
11 Beacon Street, Suite 1125 │ Boston, MA 02108
617.742.6666 x310 │ pat@zevin.com
www.zevin.com

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

**Pioneers in Socially Responsible Investing**

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

**From:** Pat Tomaino
**Sent:** Friday, January 19, 2018 11:05 AM
**To:** 'Jamie Bonham' <JBonham@neiinvestments.com>; 'Green, Katie' <Katie.Green@vermont.gov>; 'Carina Lundberg Markow' <carina.lundberg.markow@folksam.se>; 'Emilie Westholm' <emilie.westholm@folksam.se>; 'Emily Schweitzer' <eschweitzer@freshpondcapital.com>; 'Maria Egan' <maria@reyndersmcveigh.com>; Jacob Johansson <jacob.johansson@folksam.se>
**Cc:** 'Simon Billenness' <simon.billenness@csrstrategygroup.com>
**Subject:** RE: CVX independent chair proposal

Hi folks – I confirmed **January 23 at 10 am PST** with Chevron.

Does anyone have time for a planning call before 12 pm Eastern Time on Monday? Please respond today and I'll set that up.

My best,
Pat T.


Pat Miguel Tomaino
*Director of Socially Responsible Investing* | Zevin Asset Management, LLC
11 Beacon Street, Suite 1125 | Boston, MA 02108
617.742.6666 x310 | pat@zevin.com
www.zevin.com

**Pioneers in Socially Responsible Investing**

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

**From:** Pat Tomaino
**Sent:** Tuesday, January 16, 2018 5:13 PM
**To:** 'Jamie Bonham' <JBonham@neiinvestments.com>; Green, Katie <Katie.Green@vermont.gov>; Carina Lundberg Markow <carina.lundberg.markow@folksam.se>; Emilie Westholm <emilie.westholm@folksam.se>; Emily Schweitzer <eschweitzer@freshpondcapital.com>; Maria Egan <maria@reyndersmcveigh.com>
**Cc:** 'Simon Billenness' <simon.billenness@csrstrategygroup.com>
**Subject:** CVX independent chair proposal

Dear colleagues,

Chevron would like to discuss our proposal for an independent chair policy.

Would you rely with your availability for following slots which work for corporate governance officials Chris Butner and William Hsu:

    Jan 22:  9:00am – 10:30am; 1:00pm – 2:00pm PT
    Jan 23:  9:00am – 11:00am; 12:30pm – 2:00pm PT

Jan 25:  9:00am – 11:00am PT

Parallel with this, please stay tuned for more from me on effort to "get out the vote" for this proposal – presenting to proxy advisors and big investors, etc.

Many thanks for your support and reply.

My best,
Pat Tomaino

Pat Miguel Tomaino
*Director of Socially Responsible Investing* │ Zevin Asset Management, LLC
11 Beacon Street, Suite 1125 │ Boston, MA 02108
617.742.6666 x310 │ pat@zevin.com
www.zevin.com

**Pioneers in Socially Responsible Investing**

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

MKS-0005824

# EXHIBIT 7

| | |
|---|---|
| **From:** | Steven Donziger <sdonziger@donzigerandassociates.com> |
| **Sent:** | Wednesday, January 10, 2018 4:49 PM |
| **To:** | Katie Sullivan <Katie@Streamlinefamilyoffice.com> |
| **Subject:** | Fw: resolutions filed at Chevron on Ecuador case likely to win 30%+ of vote this yea. |
| **Attach:** | Zevin CVX 2018 Independent Chair Proposal FINAL.pdf; CVX 2018 Newground Resolution Special-Meeting.pdf |

---

**From:** simon.billenness@gmail.com <simon.billenness@gmail.com> on behalf of Simon Billenness <simon.billenness@csrstrategygroup.com>
**Sent:** Wednesday, January 10, 2018 4:08:13 PM
**To:** Tony Chapelle
**Cc:** Steven Donziger
**Subject:** resolutions filed at Chevron on Ecuador case likely to win 30%+ of vote this yea.

Dear Tony:

You are in luck. Last month, shareholders filed two separate shareholder resolutions fcused on the Ecuador liability that are likely to receive upwards of 40% of the vote.

1. Resolution to lower threshold of percentage of shareholders required to call a special shareholder meeting (filed by Newground Social Investment). Last year, this resolution won 32% of the vote.

2. Resolution to separate the position of CEO and Chair (filed by Zevin Asset Management). Last year, this resolution won 39% of the vote.

I've attached the text of both resolutions.

Let me know of a good time this week or next when we could talk on the phone.

Best Regards,
Simon

--
Simon Billenness
CSR Strategy Group
(617) 596-6158
simon.billenness@csrstrategygroup.com
LinkedIn: http://www.linkedin.com/in/simonbillenness

On Wed, Jan 10, 2018 at 3:43 PM, Tony Chapelle <tchapelle@agendaweek.com> wrote:
Steve, Simon,

Good update. Thanks for that.

As you know, I've written twice about the Chevron-Amazon dispute. At this point, for my publication's format, to report a new story I probably would need to hear that:
- the board is responding to your legal actions,
- that the Canadian court has made a definitive decision in response to your demands,
- that the SEC, or DOJ will take action on your requests, or
- that a shareholder has filed a new proxy resolution that seems likely to garner at least 30% or 40%

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

support. (By the way, there's been one of these already, no?)

If you want to elaborate on any of those points, I'm glad to discuss. I'd recommend a ten-minute info interview, which may or may not lead to me reporting the story. Typically hold those on Fridays between 11am and 1pm Eastern. Could talk with one or both of you on the 19th, if you'd like.

All the best,

Tony


**From:** Steven Donziger [mailto:sdonziger@donzigerandassociates.com]
**Sent:** Wednesday, January 10, 2018 6:46 AM
**To:** Tony Chapelle <tchapelle@agendaweek.com>
**Cc:** simon.billenness@gmail.com
**Subject:** Re: Breaking News: Canada's National Indigenous Chiefs Announce Support of Ecuadorian Amazon Communities

Hey Tony,

Good to hear from you. There's lots of activity developing around the Chevron issue regarding the Board and the annual meeting.  Simon Billness (copied) is working with the communities in Ecuador to press their work in this area which includes a major resolution.  One thing that I understand is in the works is a formal SEC complaint about Chevron's failure to disclose.  Another is a shareholder investor letter to the new CEO regarding the mishandling of the litigation and other things. There's also a formal criminal complaint filed by the communities (through me as their lawyer) to the DOJ against Chevron and its law firm for fabricating evidence in the RICO matter.  Simon can give you an update on the shareholder-related activities and I can give you an update on the case which is moving forward nicely in Canada.  The next court hearing is scheduled for Toronto for April 17. Chevron has been losing serious ground lately in Canada -- we have obtained three straight unanimous appellate court victories. I am at 9175662526; we can set up a time to talk if u want details. I know of no recent statement by Chevron's BOD.

Best, Steven

**From:** Tony Chapelle <tchapelle@agendaweek.com>
**Sent:** Tuesday, January 9, 2018 7:25:42 PM
**To:** Steven Donziger
**Subject:** RE: Breaking News: Canada's National Indigenous Chiefs Announce Support of Ecuadorian Amazon Communities

Steve,
Hi, there. Tony Chapelle here from Agenda Newsletter, the U.S. publication for corporate board directors. Wondering if there have been any developments or statements from the Chevron board lately.
Also, what's the timeline for a decision by the Canadian courts on whether they will allow your clients to attach Chevron's Canada assets or not.
All the best,
Tony

**From:** Steven Donziger [mailto:sdonziger=donzigerandassociates.com@mail157.sea22.mcdlv.net] **On Behalf Of** Steven Donziger
**Sent:** Friday, December 8, 2017 2:06 PM
**To:** Tony Chapelle <tchapelle@agendaweek.com>

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED. R. EVID. 502(d)

**Subject:** Breaking News: Canada's National Indigenous Chiefs Announce Support of Ecuadorian Amazon Communities

Journalists and colleagues,

I write to inform you about two developments in the campaign by indigenous and farmer communities in Ecuador to hold Chevron accountable for its toxic dumping in the Amazon.

First, this week in Ottawa the Canada Assembly of First Nations (AFN) -- which represents 634 nationalities in Canada and is probably the most influential organization of indigenous leaders in the world -- signed a joint protocol with Ecuador's national indigenous federation (CONAIE) and the Front for the Defense of the Amazon (FDA) to hold Chevron accountable for violations of First Nations rights in both countries. The AFN also passed a resolution to support the judgment enforcement litigation brought by the affected communities to seize Chevron assets in Canada. The agreement represents the first time in history that the AFN has signed a bilateral cooperation agreement with the national indigenous federation of a Latin American country.

When signing the protocol, AFN National Chief Perry said:

*"Any violation of Indigenous rights is a violation against all Indigenous peoples. This protocol puts Chevron and all corporations on notice that we are watching and we will be vigilant in protecting our rights and our territories. We stand with our brothers and sisters in Ecuador in calling for full respect for our rights, our peoples and our traditional territories."*

Here is a video from the Canada ceremony of comments by Ecuadorian indigenous leader Domingo Paes and Bellegarde. Chief Bellegarde has expressed interest in visiting Ecuador in the coming weeks prior to the next court argument in the enforcement case, scheduled for April 17 in Toronto.

Second, on behalf of my clients in Ecuador, I recently sent evidence to the U.S. Department of Justice that Chevron and some of its lawyers engaged in a criminal conspiracy to present false evidence in the RICO matter to try to taint the Ecuador judgment. The letter documenting that evidence can be read here.

I also am re-sending this article by Greenpeace Co-founder Rex Weyler. Weyler writes that Chevron's toxic dumping in Ecuador reveals "almost unthinkable corporate irresponsibility, intimidation, and arrogance."

On behalf of the affected communities, I thank you again for the interest and support.

Best, Steven

# Contact:

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

Steven Donziger, sdonziger@donzigerandassociates.com
212-570-4499 (land) / 917-566-2526 (cell)

Our mailing address is:
Law Offices of Steven R. Donziger
245 W. 104th Street
New York, NY 10025

You are on this list to receive updates about the Ecuador environmental case because you
provided your contact information to an authorized person for that purpose. You can
update your preferences or unsubscribe from this list at any time.

Copyright © 2015 Law Offices of Steven R. Donziger, All rights reserved.

## Contact:

Steven Donziger, sdonziger@donzigerandassociates.com
212-570-4499 (land) / 917-566-2526 (cell)

Our mailing address is:
Law Offices of Steven R. Donziger
245 W. 104th Street
New York, NY 10025

You are on this list to receive updates about the Ecuador environmental case because you
provided your contact information to an authorized person for that purpose. You can
update your preferences or unsubscribe from this list at any time.

Copyright © 2015 Law Offices of Steven R. Donziger, All rights reserved.

---

This email was sent to tchapelle@money-media.com
*why did I get this?*   unsubscribe from this list   update subscription preferences
Law Offices of Steven R. Donziger · 245 W. 104th Street · New York, NY 10025 · USA



---

This email was sent by a company owned by Financial Times Group Limited ("FT Group"), registered office at Number One Southwark Bridge, London SE1 9HL
Registered in England and Wales with company number 879531.This e-mail may contain confidential information. If you are not the intended recipient, please
notify the sender immediately, delete all copies and do not distribute it further. It could also contain personal views which are not necessarily those of the FT
Group. We may monitor outgoing or incoming emails as permitted by law.

--

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

Simon Billenness
CSR Strategy Group
(617) 596-6158
simon.billenness@csrstrategygroup.com
LinkedIn: http://www.linkedin.com/in/simonbillenness

Read my blog on corporate accountability: http://www.csrstrategygroup.com/blog

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

MKS-0016330

# EXHIBIT 8

| | |
|---|---|
| **From:** | Katie Sullivan <Katie@Streamlinefamilyoffice.com> |
| **Sent:** | Monday, November 6, 2017 7:00 AM |
| **To:** | lfontaine <lfontaine@ishkonigan.com>; edjohn@fns.bc.ca; John Phillips <john.phillips@legaladvocates.ca>; Peter Grant <pgrant@grantnativelaw.com>; Ian Watson <iw@genagro.net>; Victoria Watson <victoriawatson@me.com>; Rex Weyler <rexweyler1@gmail.com>; Lisa Gibbons <lisaweylergibbons@gmail.com>; lbmiller104@gmail.com; Luis Yanza <lfya62@gmail.com>; Aaron Marr Page <aaron@forumnobis.org>; Karen Hinton <karen@fenton.com>; Howard Glaser <hglaser1@gmail.com>; juanaulestia01@gmail.com; lupitadeheredia@gmail.com; cristina muñoz <crisamunoz@gmail.com>; patriciosalazarcordova@gmail.com; agustin.salazar@salazarcordova.com |
| **Cc:** | Steven Donziger <sdonziger@donzigerandassociates.com> |
| **Subject:** | Chevron case: Meeting today FYI |

Hi all,

I hope this email finds you all in great health and spirits. It was such an honor to spend time with you in Ecuador at the end of September and to witness the powerful momentum since then has been amazing.

I've been helping Steven strategize how to connect financial capital with the case. I wanted to share with you that late on Friday through one of my clients, we coordinated a meeting with Elliott Management in NYC for today at 4pm with Jesse Cohn and Lee Grinberg. Jesse is a partner and leads the US equity activist investments and Lee led the team in the Argentina bond deal. Elliott is a hedge fund with approx. $34B under management. We are hopeful that their tenacity, courage, influence and power in the financial markets will be a complement to this case and allow Steven & team to supercharge their efforts.

Please send along any positive thoughts & vibes to keep this momentum moving in the right direction!

With gratitude,
Katie

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

# EXHIBIT 9

| | |
|---|---|
| **From:** | Katie Sullivan <Katie@Streamlinefamilyoffice.com> |
| **Sent:** | Monday, October 2, 2017 10:30 AM |
| **To:** | Steven Donziger <sdonziger@donzigerandassociates.com> |
| **Subject:** | RE: Ecuador follow-up/important |

Or an iron man......that's your new nickname! ☺

**From:** Steven Donziger [mailto:sdonziger@donzigerandassociates.com]
**Sent:** Monday, October 2, 2017 10:22 AM
**To:** Katie Sullivan <Katie@Streamlinefamilyoffice.com>
**Subject:** Re: Ecuador follow-up/important

I hope so much

like running a marathon on top of marathon

crazy

**From:** Katie Sullivan <Katie@Streamlinefamilyoffice.com>
**Sent:** Monday, October 2, 2017 10:19:18 AM
**To:** Steven Donziger
**Subject:** RE: Ecuador follow-up/important

Awesome! Praying it all comes together perfectly for you all.

**From:** Steven Donziger [mailto:sdonziger@donzigerandassociates.com]
**Sent:** Sunday, October 1, 2017 6:35 PM
**To:** Katie Sullivan <Katie@Streamlinefamilyoffice.com>
**Subject:** Fw: Ecuador follow-up/important


FYI

**From:** Steven Donziger
**Sent:** Sunday, October 1, 2017 6:34 PM
**To:** lfontaine; edjohn@fns.bc.ca; 'Willie Littlechild'
**Cc:** Dean Fontaine; John Phillips; Peter Grant; lbmiller104@gmail.com; aaron@forumnobis.org; Penny Jacko; Val Teichroeb; Rex Weyler
**Subject:** Ecuador follow-up/important

**CONFIDENTIAL -- DO NOT DISTRIBUTE**

Phil, Ed, Dean, and Willie and others:

I wanted to give you a quick update on events following the Ecuador trip.

First, thank you again for coming. It was a breakthrough moment for the affected indigenous communities in Ecuador and I hope for international collaboration around indigenous rights and environmental protection. It

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

also was a pleasure meeting and getting to know one another on a personal level and having Dean Fontaine on the trip was an added treat. Grand Chief Littlechild, even though you were not able to make it this time, I hope you can help us going forward and be part of this critically important effort.

To quickly deal with a housekeeping issue, please send me and Laura Miller (copied here) any final invoices and receipts with instructions on how to reimburse you.

The most immediate post-trip issue is whether either or all of you can make it to Toronto for the court hearing on Oct. 10 and a dinner the night before. Rogers Waters, the noted rocker from Pink Floyd and a personal friend as well as a supporter of the campaign to hold Chevron accountable, wants to meet you guys at the dinner and participate in whatever press event we want to do on the morning of Oct. 10 in Toronto, assuming we want to move in that direction. He also made noises about taking us to his concert in Ottawa on Oct. 11 (it is an amazing show) but I need to know who is in and who is not to make proper plans. It is possible Roger will fly us to Ottawa on his plane on Oct. 11 to see the concert that night but the details need to be worked out with his team once we determine if folks are coming and how many.

The other key development is that noted Canadian Attorney Peter Grant is very likely to enter the Canada enforcement action against Chevron this week on behalf of the indigenous communities of Ecuador. He will be backed by John Phillips who might enter his appearance at a future date, but in any event will continue to offer his extremely valuable advice and support. We are still working out the details, but this potentially is a huge and very positive development that will allow us to better align our legal strategy with our public campaign and to be more effective in court.

Each of you also should know that Chevron succeeded recently in imposing a $1 million security for costs order on the indigenous communities of Ecuador as a tactical maneuver to block the enforcement action. If allowed to stand, this unjust order might seriously obstruct the indigenous groups unless the amount can be posted OR Peter and our other counsel (Alan Lenczner) can get it overturned. In my view, we MUST focus on this issue in the near term as it is likely to be front and center at the court hearing on Oct. 10 and is a vivid example of the nefarious way a corporate polluter continues to try to evade justice. It is also a great opportunity for us to reframe the issue in our favor so that Canadian judges understand this type of "costs" order disrespects the rights of indigenous groups and is unacceptable in the modern world.

I also am copying Rex Weyler of Greenpeace as he also is invited to participate in whatever we decide to do in Toronto. I believe Rex could bring most of the environmental community in Toronto into court in support of the Ecuadorians; I am hoping we can pack the court with supporters and that indigenous representatives in Ontario will be part of the courtroom proceeding.

I recognize that this might be a lot of work and travel on top of the rather grueling trip to Ecuador so let me know if this is too much, too soon. No offense will be taken if you can't come as there are many opportunities going forward. But I think it could be awesome to follow up quickly so as to quickly try to change the courtroom dynamic in our favor.

If each of you could respond by email as to whether you think you can come, that would be great and I will have my assistant (or John's) set up a conference call for Monday to try to nail this down. I also need to get back to Roger about the dinner and concert opportunity. John, please circulate a number and a time for late in the day Monday. I promise I will try to limit the call to 15 minutes although we can make it longer if needed.

I always am available at this email or at 917-566-2526 if you want to talk. I look forward to hearing back, and thanks again for your help thus far.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

MKS-0003326

In solidarity,

Steven

**Disclaimer**
The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

# EXHIBIT 10

| | |
|---|---|
| **From:** | Steven Donziger <sdonziger=donzigerandassociates.com@mail200.sea22.mcdlv.net> |
| **Sent:** | Friday, September 22, 2017 6:50 AM |
| **To:** | Katie Sullivan <Katie@Streamlinefamilyoffice.com> |
| **Subject:** | Canadian Indigenous Leaders Wallop Chevron Over Ecuador Pollution Judgment |

Journalists and colleagues,

There's important news in the Ecuador pollution case against Chevron in Canada, where the company faces a historic $12 billion environmental liability for dumping toxic waste into the Amazon.

Three major Canadian indigenous leaders and a co-founder of Greenpeace have joined forces with rainforest villagers in Ecuador to force Chevron to pay the pollution judgment. For details, see this press release. All of these leaders -- including Phil Fontaine, the former National Chief of the Assembly of First Nations (which includes 633 indigenous nationalities in Canada) -- are planning to visit Ecuador next week to bear witness to the environmental destruction and humanitarian catastrophe in the affected region.

We earlier sent this fabulous article on the battle of indigenous groups against Chevron by Greenpeace Founder Rex Weyler. Rex says that Chevron's toxic dumping in Ecuador reveals "almost unthinkable corporate irresponsibility, intimidation, and arrogance."

If you have any questions, I can be reached at sdonziger@donzigerandassociates.com.

Best,

Steven

## Contact:

Steven Donziger, sdonziger@donzigerandassociates.com
212-570-4499 (land) / 917-566-2526 (cell)

Our mailing address is:
Law Offices of Steven R. Donziger
245 W. 104th Street
New York, NY 10025

You are on this list to receive updates about the Ecuador environmental case because you provided your contact information to an authorized person for that purpose. You can update your preferences or unsubscribe from this list at any time.

Copyright © 2015 Law Offices of Steven R. Donziger, All rights reserved.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

This email was sent to katie@streamlinefamilyoffice.com
*why did I get this?*   unsubscribe from this list   update subscription preferences
Law Offices of Steven R. Donziger · 245 W. 104th Street · New York, NY 10025 · USA

MailChimp

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

# EXHIBIT 11

| **From:** | Katie Sullivan <Katie@Streamlinefamilyoffice.com> |
| **Sent:** | Thursday, December 14, 2017 5:51 PM |
| **To:** | Steven Donziger <sdonziger@donzigerandassociates.com> |
| **Cc:** | Aaron Marr Page <aaron@forumnobis.org> |
| **Subject:** | Re: urgent -- contracts for trip to Ecuador |

My niece can translate. She was a Spanish major and lived in Spain for 4 years and is a Spanish teacher. She's really bright but not sure about her ability to translate a full legal document.

On Dec 14, 2017, at 6:33 PM, Steven Donziger <sdonziger@donzigerandassociates.com> wrote:

> aaron,
>
> call me about translations.  we need to find somebody it is a waste of your skills to do that
>
> thanks
>
> ---
>
> **From:** Katie Sullivan <Katie@Streamlinefamilyoffice.com>
> **Sent:** Thursday, December 14, 2017 6:32:06 PM
> **To:** Steven Donziger
> **Cc:** aaron@forumnobis.org
> **Subject:** Re: urgent -- contracts for trip to Ecuador
>
> I'll be in meetings until 12. Happy to help pull the agreements together though translation skills are not available! I can follow up in the afternoon.
>
> Aaron put drafts in the DropBox so I will look through them and start new drafts for those listed below.
>
> Thanks!
> Katie
>
> On Dec 14, 2017, at 5:57 PM, Steven Donziger <sdonziger@donzigerandassociates.com> wrote:
>
>> Katie and Aaron,
>>
>> I need to get contracts ready for execution next week in Ecuador with translations, etc. Let's talk about this first thing Friday morning to see what is feasible to accomplish in next 3 days or so.   Most important are the investment contracts and the translations.  Can we talk tomorrow at 10 am EST?  Best, Steven
>>
>> TA investment contract
>> MF new contract
>> GK new contract
>> Eva Golinger
>> Ben Barnes
>> Simon Billiness for equivalent of $100k
>> KS (now or later)

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

MKS-0001080

<u>Canada</u>

John Phillips
Peter Grant
Phil Fontaine
Kathleen Mahoney (later)
Ed John: (later)
Rex Weyler (later)

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more <u>Click Here</u>.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

MKS-0001081

# EXHIBIT 12

# AGREEMENT
## *for*
## COMPENSATION
## *and*
## INVESTMENT OF PROFESSIONAL SERVICES

This **AGREEMENT** is made on the undersigned dates of May 2017, by and between the *Frente de Defensa de la Amazonía* (the **FDA**) and Mr. Phil Fontaine (**MR. FONTAINE**) (together, the **PARTIES**). In consideration for political, communications, and strategic services to be provided by MR. FONTAINE.

WHEREAS the FDA is the prevailing party behind the claim in the *María Aguinda Salazar v. Chevron Corporation* case in the Provincial Court of Justice of Sucumbíos (Case No. 2003-0002), as affirmed on appeal by the Sole Chamber of the Provincial Court of Justice of Sucumbíos (Case No. 2011-0106) and by the National Court of Justice (Ecuador) (Case No. 174-2012), and as the subject of enforcement proceedings in the Ontario Court of Justice (Canada) (File No. CV-12-9808-00CL) (collectively, the *AGUINDA* **CASE**), which judgments hold Chevron Corporation and its subsidiaries and agents (**CHEVRON**) liable for approximately $8.6 billion in clean-up costs and other damages related to company's role as operator of oil fields in Ecuador in past decades (the *AGUINDA* **JUDGMENT**);

WHEREAS the FDA is the recipient of 10% of the environmental award in the *AGUINDA* JUDGMENT (the **10% AWARD**), to be paid by Chevron;

WHEREAS the FDA is the exclusive beneficiary of *Fideicomiso Mercantil de Administración de Flujos ADAT* (the **ECUADOR TRUST**), which was created on instructions from the Ecuadorian courts to receive, hold, and disburse all funds paid on the *AGUINDA* JUDGMENT by CHEVRON, in order to implement and achieve environmental remediation and pay legal and administrative expenses as deemed necessary by the ECUADOR TRUST's Administrative Board;

NOW, THEREFORE, the PARTIES agree as follows:

1. **COMMITMENT OF EFFORT**: MR. FONTAINE commits to provide professional services to the FDA, the details of which will be agreed upon between Mr. Fontaine and the FDA. The FDA will be represented in its dealings with MR. FONTAINE by its legal advisor, Steven Donziger, or his designated representative; and the President of the FDA, whomever may occupy that position during the course of this agreement.

2. **DESCRIPTION OF WORK**: Mr. Fontaine's work shall include representing, assisting, and advocating on behalf of the FDA with regard to *(a)* the Assembly of First Nations and its constituent peoples and their leaders; *(b)* Canadian civil society; *(c)* Canadian government officials; *(d)* Canadian business leaders; (e) international indigenous leadership, human rights leadership, and others in the

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

MKS-0000796

United Nations and other international forums; and, (f) general advice as needed. MR. FONTAINE shall make himself available to consult with the legal advisor of the FDA on a reasonable basis and shall provide his services to the extent he is reasonably able to do so.

3. **AUTHORIZATION**: The FDA hereby authorizes MR. FONTAINE to act to advise, serve, advance, advocate, defend, and otherwise represent the FDA, as MR. FONTAINE sees fit after due consultation with the legal advisor of the FDA or its representatives in connection with any significant strategic or tactical decision. This authorization is unlimited in term but may be terminated by the FDA at any time.

4. **GRANT OF INTEREST AND TERM**: In consideration of past and future professional services as set forth above, such services lasting a minimum of 12 months from the date of the signing of this agreement, the FDA hereby grants to MR. FONTAINE an **INTEREST** constituting **0.125%** of any **RECOVERY**, defined as any collection of funds related to the *AGUINDA* JUDGMENT or the *AGUINDA* CASE. For the avoidance of doubt, if no RECOVERY is achieved related to the *AGUINDA* JUDGMENT or the *AGUINDA* CASE, no amount is owed by the FDA under this AGREEMENT.

5. **REIMBURSEMENT OF EXPENSES**: The FDA will reimburse all reasonable expenses incurred by MR. FONTAINE in the execution of services called for in this agreement. Significant expenses, such as travel, must be approved in advance by the legal advisor to the FDA.

6. **DISPUTES**: Any dispute, controversy or claim arising out of or relating to this AGREEMENT (**DISPUTE**) shall be resolved by means of good-faith negotiation. MR. FONTAINE and the FDA agree that if either of them reaches the conclusion, after due consultation, that no compromise is likely to be reached, either of them may submit the DISPUTE, first, to mediation with the Canadian Arbitration Association (**CAA**). If the DISPUTE is still not resolved, the parties agree to submit their dispute to binding arbitration with the CAA under the CAA Arbitration Rules. The tribunal shall consist of a single arbitrator and the seat of arbitration shall be Toronto, Ontario, Canada.

7. **LANGUAGES**: This AGREEMENT is being executed in both English and Spanish. To the extent there is a conflict between the versions of this Agreement, the English version shall prevail.

8. **COUNTERPARTS**: This AGREEMENT may be executed in counterparts, each of which will be deemed an original for all purposes and will collectively constitute one AGREEMENT.

IN WITNESS WHEREOF, the FDA and MR. FONTAINE have executed and provided INITIAL and FINAL RATIFICATIONS of this AGREEMENT on the days and years indicated below.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

MKS-0000797

INITIAL DATE: _____

FINAL DATE: _____

_____

_____
Carlos Guaman Gaibor
FDA PRESIDENT


INITIAL DATE: _____

FINAL DATE: _____

_____

_____
Phil Fontaine
ISHKONIGAN


INITIAL DATE: _____

FINAL DATE: _____

_____

_____
Steven Donziger
Legal Advisor, FDA


3 / 3

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

MKS-0000798

# EXHIBIT 13

**From:**          Katie Sullivan <Katie@Streamlinefamilyoffice.com>
**Sent:**          Tuesday, November 14, 2017 12:09 PM
**To:**            Steven Donziger <sdonziger@donzigerandassociates.com>
**Subject:**       Dear Cliff,

---

I am so grateful for your continued support in the Chevron/Ecuador case. We have amazing momentum and are in the process of aligning with partners, like you, who will bring both capital and strategic leadership to put pressure on Chevron in and out of court. This will also allow me to focus all my time and energy on the strategy and strengthening our alliances.
One critical need is to coordinate and pay for the upcoming AFN meeting in Canada. Would you be open to a conversation to discuss how you can support this effort at the $50k level?

Let me know a convenient time to discuss.

With gratitude,
Steven

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

# EXHIBIT 14

# COOPERATION AGREEMENT

## PARTIES:

## COORDINATORS OF THE INDIGENOUS PEOPLES OF ECUADOR

Represented by:

### the Confederation of Indigenous Nationalities of Ecuador (CONAIE);

### the Confederation of Indigenous Nationalities of the Ecuadorian Amazon Region (CONFENIAE);

and

### The Amazon Defense Front (FDA)

as representative of the interests of the indigenous and settler communities of the Amazon region harmed by the destructive environmental practices of Chevron, who won a historic decision against the company;

and

### THE ASSEMBLY OF FIRST NATIONS
(herein referred to by its English initials "AFN")

**Background**

**Whereas**, the representatives of the Indigenous Peoples of Ecuador is a group of indigenous organizations that coordinates the efforts, dreams, and ideals of the indigenous nationalities, individuals and organizations of Ecuador for the purpose of: promoting, defending, and exercising the rights to life as an integral part of nature and the universe;

**Whereas**, the objectives of CONAIE are to join the indigenous peoples of Ecuador; protect the earth and land; exercise its authority over education and culture; eliminate civil and ecclesiastical oppression; oppose colonialism and defend the ideals of the indigenous peoples of Ecuador;

**Whereas**, CONFENIAE seeks to improve the quality of life of the indigenous people who live in the Amazon region by strengthening the organizations and fostering community development projects, protecting the

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                    MKS-0005889
PROTECTED BY FED R. EVID. 502(d)

CERT. ULG VER: JD

environment, and reclaiming its authority over the management of Ecuador's natural resources.

**Whereas**, the FDA is a community-based nongovernmental organization that focuses on the protection of the environment and the collective rights of all individuals from the Ecuadorian Oriente, including the locations where Chevron operated and including the ancestral lands of the 5 nationalities: Cofan, Huarani, Kichwa, Secoya, and Siona that were severely contaminated by Chevron's extractive practices;

**Whereas**, the AFN is a national organization of first nations that represents the first nations and all of its citizens in Canada, which in turn is represented by a duly elected National Chief;

**Whereas**, the AFN and the indigenous peoples of Ecuador and the FDA share common interests and objectives about the right to self-determination of the peoples, including the recognition of their authority over their ancestral territories, environmental protection, economic development, survival of their cultures, and the promotion of collective and indigenous human rights;

**Whereas**, the AFN and the indigenous peoples of Ecuador and the FDA seek to work together to compel the observance of corporate social responsibility and respect for collective and indigenous human rights and for peasant communities as their allies against the extractive activities of companies that operate in Canada and Ecuador:

**NOW THEREFORE**, the AFN and the representatives of the indigenous peoples of Ecuador and the FDA hereby sign this agreement to: collaborate, provide reciprocal political assistance, and form a coalition as described below:

**General Objectives**

1. The parties agree to cooperate and work together to ensure that the extractive operations of companies in Canada and Ecuador respect the human rights of the indigenous peoples and cease to engage in practices that are harmful to the culture, safety, ecosystems, and traditional way of life of the indigenous peoples.

2. The parties will work together to ensure that

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                    MKS-0005890
PROTECTED BY FED R. EVID. 502(d)

CERT. ULG VER: JD

multinationals and other companies are held responsible for their bad practices and made to pay for all of the damage they cause, whether as recognized through a court judgment or arbitration award in favor of the indigenous peoples and peasant communities working as their allies.

3.  The parties also agree to incentivize and facilitate joint research, to share information, and to prepare joint positions in international negotiations.

**Areas of Collaboration**

4.  The parties seek to form a strategic alliance between their organizations and together they will consider common interests in the following areas:

    a.  Self-determination and standards to recover the jurisdictions of indigenous peoples;
    b.  Support for allied indigenous peoples and peasant communities in litigation;
    c.  The environment and energy;
    d.  Human rights;
    e.  Access to healthcare;
    f.  Education, language and culture;
    g.  Economic development;
    h.  Housing and community infrastructure;
    i.  Access to water, food and traditional medicine;
    j.  Intellectual property rights and the protection of ancestral knowledge, genetic resources and folklore;
    k.  Access to justice, social security, and an alternative dispute resolution system; and
    l.  Standards for extractive activities.

5.  The parties will work together on matters of the international indigenous agenda, and when it is possible they will share their respective participations and positions, on topics negotiated with the United Nations and its affiliated bodies; the Permanent Forum on Indigenous Peoples; the Climate Change Convention; the Biodiversity Convention; the World Bank; the Inter-American Development Bank; the World Intellectual Property Organization; the Organization of American States; and the Inter-American Commission on Human Rights.

6.  The parties will jointly develop: positions, strategies, and

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                    MKS-0005891
PROTECTED BY FED R. EVID. 502(d)

CERT. ULG VER: JD

standards associated with the environmental impact of extractive industries and defend to achieve changes in national legislation in their respective countries to implement positions or standards to which they have jointly agreed.

7. The parties will share their experiences in obtaining treaties; indigenous policies on governance; recovery of territories, self-government negotiations, land use and planning, administration of natural resources, and the impact and benefits of agreements and the bolstering of institutions.

8. When appropriate the parties will jointly develop strategies on the rights of education, access to healthcare, community development, economic development, and the protection and maintenance of culture, language, customs and traditions in the American context.

9. The Parties will monitor the observance of international conventions on the rights of indigenous peoples, such as: the U.N. Declaration on the Rights of Indigenous Peoples; ILO Convention 169; and the declarations of the OAS; the Inter-American Court, etc., and they will collaborate to maintain in the future positions to prepare international laws and regulations.

**Process**

10. The Parties shall hold a high-level meeting between the executive committee, the representatives of the indigenous peoples and the leaders of the FDA at least once every two years.

11. The AFN, the representatives of the indigenous peoples of Ecuador, and the FDA shall remain in contact among each other through their designated representatives to exchange certain material and to participate in activities to promote and expand interests, understanding, and appreciation of common goals and objectives.

12. While they attend international meetings and conferences, the AFN, the representatives of the indigenous peoples of Ecuador, and the FDA shall meet to discuss their participation and positions, as well as to elaborate and define strategies for obtaining state support through joint positions.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                    MKS-0005892
PROTECTED BY FED R. EVID. 502(d)

CERT. ULG VER: JD

13. When appropriate, the parties shall promote and facilitate commitments and agreements between governments and the communities they represent through possible exchange between north and south.

14. None of the parties may issue a declaration or material that implicitly or explicitly appears to represent the opinions or points of view of the other parties without a written agreement that both parties agree to the content of that material.

**Exclusion**

15. Nothing in this agreement will be understood as creating a partnership, association, or business jointly between the parties. Nor does any party acquire any commitment or obligation to any of the other parties.

**Duration**

16. This Collaboration Agreement will take effect on the date it is signed and it will remain in effect for 4 years. It may be extended by mutual agreement in writing.

17. This Cooperation Agreement may be terminated by any party at any time by sending written notice 90 days in advance addressed to the other party at the address established below:

**Miscellaneous**

18. The parties are aware that this instrument is not binding on them and that therefore it is the manifestation of the desire to cooperate among themselves on matters of mutual interest.

19. This instrument may be modified at any time by mutual agreement between the parties.

20. Nothing in this instrument is intended to avoid the production of bilateral conversations or agreements between the AFN, the indigenous peoples of Ecuador or the FDA on areas of common interest.

21. Any notice communicated between the parties should be in writing and

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                    MKS-0005893
PROTECTED BY FED R. EVID. 502(d)

CERT. ULG VER: JD

delivered to each of the Parties or to their offices by hand or by email or sent by certified mail with prepaid postage or by fax to the following addresses:

> AFN to:
> 55 Metcalf Street, Suite 1600
> Ottawa, Ontario, Canada K1P 6L5
> Fax (613) 241-5808
> Attention: Chief Executive Officer
>
> Representatives of the Indigenous Peoples of Ecuador to:
> CONAIE and CONFENAIE to:
> Av. Los Granados E10-275 and 6 de Diciembre
> Casilla 17-17-1235
> Telephone: 593-22-453-3392
> Email: secretaria@conaie.org
> Attention: President
>
> FDA to:
> Carmen Cartuche, President
> filomenacl@hotmail.com
> Luis Yanza, Advisor
> Lfya62@gmail.com
> Attention: Juan Aulestia
> Tel: 593-99-982-0931

**This Cooperation Agreement has been signed by the representatives of the indigenous peoples of Ecuador, the FDA, and the AFN on December _____, 2017.**

**ASSEMBLY OF FIRST NATIONS**

[signature]

_____
National Chief Perry Bellegarde

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                    MKS-0005894
PROTECTED BY FED R. EVID. 502(d)

CERT. ULG VER: JD

**COORDINATORS OF THE INDIGENOUS
PEOPLES OF ECUADOR AND THE FDA**

[stamp] Confederation of Indigenous Nationalities
[remainder illegible]

[signature]

_____
**Confederation of Indigenous Nationalities of Ecuador, CONAIE**
Jaime Vargas, President

_____
**Confederation of Indigenous Nationalities
of the Ecuadorian Amazon Region, CONFENIAE**
Marlon Vargas, President

[signature]

_____
**Amazon Defense Front, FDA**
Carmen Cartuche, President

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER                MKS-0005895
PROTECTED BY FED R. EVID. 502(d)

CERT. ULG VER: JD



**United Language Group**

433 Broadway

New York, NY 10013

+1 888.601.9814

legaltranslations@ulgroup.com

| | | |
|---|---|---|
| State of New York | ) | |
| Estado de Nueva York | | |
| | ) | ss: |
| | ) | a saber: |
| County of New York | ) | |
| Condado de Nueva York | | |

**Certificate of Accuracy**

**Certificado de Exactitud**

This is to certify that the attached translation is, to the best of our knowledge and belief, a true and accurate translation from Spanish into English of the attached document.

Por el presente certifico que la traducción adjunta es, según mi leal saber y entender, traducción fiel y completa del idioma español al idioma inglés del documento adjunto.

Dated: September 28, 2018

Fecha: 28 de septiembre 2018

Yasushi Sasaki

Senior Project Manager– Legal Translations

United Language Group

_____[firmado]_____

Yasushi Sasaki

Gerente de Proyeto Senior – Traducciones Legales

United Language Group

Sworn to and signed before

Jurado y firmado ante

Me, this _____28th_____ day of

mí, a los _____28_____ días del

_____September_____ 2018

mes de ____septiembre____ de 2018

Notary Public

Notario Público

[firmado]

[sello]

GINA MARIE ST.LAURENT

Notary Public, State of New York

No. 01ST6148442

Qualified in New York County

Commission Expires May 15, 2022

## ACUERDO DE COOPERACION

### OTORGANTES:

### COORDINADORES DE LOS PUEBLOS INDIGENAS DEL ECUADOR

Representada por:

### la Confederación de Nacionalidades Indigenas del Ecuador (CONAIE);

### la Confederación de Nacionalidades Indigenas de la Amazonia Ecuatoriana (CONFENIAE);

y

### El Frente de Defensa de la Amazonía (FDA)

como representante de los intereses de las comunidades de indígenas y campesinos de la Amazonia afectados por las prácticas destructivas ambientales de Chevron, quienes ganaron un fallo histórico en contra de la mencionada compañia;

- y -

### LA ASAMBLEA DE NACIONES ORIGINARIAS
(en adelante a aludirse por sus siglas en inglés como "AFN")

**Antecedentes**

**Considerando**, que los representantes de los Pueblos Indigenas del Ecuador es un grupo de organizaciones indígenas que coordina los esfuerzos, sueños e ideales de las nacionalidades indígenas, personas y organizaciones del Ecuador con el objetivo de: promover, defender y ejercer los derechos a la vida como una parte integral de la naturaleza y del universo;

**Considerando**, que los objetivos de la CONAIE son el aglutinar a los pueblos indígenas del Ecuador; proteger la tierra y los territorios; ejercer su autoridad sobre la educación y la cultura; erradicar la opresión civil y eclesial; oponerse al colonialismo y defender los ideales de los pueblos indígenas del Ecuador;

**Considerando**, que la CONFENIAE busca mejorar la calidad de vida de los pueblos indígenas de la Amazonia a través del fortalecimiento de las organizaciones impulsando proyectos de desarrollo comunitario, protegiendo el

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

MKS-0005889

ambiente y reivindicando su autoridad sobre el manejo delos recursos naturales del Ecuador;

**Considerando**, que el FDA es una organización no gubernamental de base comunitaria que se centra en la protección del ambiente y los derechos colectivos de todas las personas del oriente ecuatoriano incluyendo los lugares en donde Chevron operó, incluyendo las tierras ancestrales de las 5 nacionalidades: Cofán, Huaorani, Kichwa, Secoya y Siona que fueron severamente contaminadas por las prácticas extractivas de Chevron;

**Considerando**, que la AFN es una organización nacional de nacionalidades originarias que representa a las nacionalidades originarias y a todos sus ciudadanos en Canadá, la misma que es representada por un Jefe Nacional debidamente elegido;

**Considerando**, que la AFN y los pueblos indígenas del Ecuador y el FDA comparten intereses y objetivos comunes en lo referente al derecho a la autodeterminación de los pueblos, incluyendo el reconocimiento de su autoridad sobre sus territorios ancestrales, protección ambiental, desarrollo económico, sobrevivencia de sus culturas y la promoción de los derechos humanos colectivos e indígenas;

**Considerando**, que la AFN y los pueblos indígenas del Ecuador y el FDA buscan trabajar conjuntamente para compelir la observancia de la responsabilidad social corporativa y el respeto de los derechos humanos colectivos e indígenas y el de las comunidades de campesinos como sus aliados frente a las actividades extractivas de compañías que operan en Canadá y Ecuador;

**En consecuencia**, la AFN y los representantes de los pueblos indígenas del Ecuador y el FDA través del presente suscriben el presente acuerdo para: colaborar, brindar asistencia política recíprocamente y para formar una coalición de conformidad con lo que a continuación se menciona:

## Objetivos General

1.  Las partes acuerdan cooperar y trabajar conjuntamente para asegurar que las operaciones extractivas de compañías en Canadá y en Ecuador respeten los derechos humanos de los pueblos indígenas y cesen el ejercicio de prácticas nocivas para la cultura, la seguridad, el ecosistema, y la forma tradicional de vida de los pueblos indígenas.

2.  Las partes trabajarán conjuntamente para asegurar que las

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

multinacionales y otras compañías se hagan responsables de sus malas prácticas y paguen por todos los daños causados que hayan sido reconocidos a través de una sentencia judicial o un laudo arbitral en favor de los pueblos indígenas y las comunidades de campesinos como sus aliados.

3. Las partes también acuerda el incentivar y facilitar la investigación conjunta, compartir información y el desarrollo de posiciones conjuntas en negociaciones internacionales.

## Áreas de Colaboración

4. Las partes buscan formar una alianza estratégica entre sus organizaciones y conjuntamente considerarán intereses comunes en las siguientes áreas:

   a) Autodeterminación y los estándares para la recuperación de las jurisdicciones de los pueblos indígenas;
   b) Apoyo a los pueblos indígenas y a las comunidades de campesinos aliadas del Ecuador en litigación;
   c) El ambiente y la energía;
   d) Derechos Humanos;
   e) Acceso a la salud;
   f) Educación, lenguaje y cultura;
   g) Desarrollo económico;
   h) Vivienda e infraestructura comunitaria;
   i) Acceso al agua, alimentos y medicinas tradicionales;
   j) Derechos de Propiedad Intelectual y protección de conocimientos ancestrales, recursos genéticos y folklore;
   k) Acceso a la Justicia, seguridad social, y un sistema alternativo de resolución de conflictos; y
   l) Estándares para actividades extractivas.

5. Las Partes trabajarán conjuntamente en los temas de la agenda indígena internacional y cuando sea posible compartirán sus respectivas intervenciones y posiciones, en asuntos negociados ante las Naciones Unidas y sus órganos afiliados: el Foro Permanente de los Pueblos Indígenas; la Convención de Cambio Climático; la Convención de Biodiversidad; el Banco Mundial; el Banco Interamericano de Desarrollo; la Organización Mundial de Propiedad Intelectual; la Organización de Estados Americanos y la Comisión Interamericana de Derechos Humanos.

6. Las Partes Conjuntamente desarrollaran: posiciones, estrategias, y

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

estándares relacionadas al impacto ambiental en relación a las industrias extractivas y defender para lograr cambios en las legislaciones nacionales de sus respectivos países para implementar las posiciones o estándares que se han acordado conjuntamente.

7. Las Partes compartirán sus experiencias en la obtención de tratados; políticas indígenas en gobernancia, recuperación de territorios, negociaciones de auto gobierno, uso de la tierra y planificación de su uso, administración de recursos naturales, y el impacto y los beneficios de los acuerdos y el fortalecimiento de las instituciones.

8. Las Partes cuando sea apropiado, desarrollarán conjuntamente estrategias respecto de los derechos a la educación, del acceso a la salud, desarrollo comunitario, desarrollo económico y la protección y mantenimiento de la cultura, idioma, costumbres y tradiciones en el contexto americano.

9. Las Partes vigilarán la observancia de las convenciones internacionales de los derechos de los pueblos indígenas, como: la Declaración de los Derechos de los Pueblos Indígenas de la ONU; por sus siglas en inglés ILO – Convención 169; por sus siglas en inglés las declaraciones de la OAS: La Corte Interamericana, etc., y colaborarán para mantener en el futuro posiciones para el desarrollo de leyes y normativa internacional

Proceso

10. Las Partes deberán tener una reunión de alto nivel entre el comité ejecutivo, los representantes de los pueblos indígenas y los líderes del FDA por lo menos una vez cada dos años.

11. La AFN los representantes de los pueblos indígenas del Ecuador y el FDA deberán mantenerse en contacto entre sí a través de sus representantes designados para intercambiar cierto material y participar en actividades con el fin de promover y ampliar intereses, comprensión y apreciación de las metas y objetivos comunes.

12. Mientras asistan a reuniones y conferencias internacionales, la AFN, los representantes de los pueblos indígenas del Ecuador y el FDA deberán reunirse para tratar las intervenciones y posiciones, así como elaborar y definir estrategias para obtener el apoyo estatal a través de posiciones conjuntas.

13. Las Partes deberán, cuando sea apropiado, promover y facilitar compromisos y acuerdos entre los gobiernos y las comunidades que representan a través del posible intercambio entre norte y sur.

14. Ninguna de las Partes podrá emitir una declaración o material que pretenda implícita o explícitamente las opiniones o puntos de vista de las otras partes sin existir un acuerdo por escrito de que ambas partes están de acuerdo con el contenido de dicho material.

## Exclusión

15. Nada de este acuerdo se podrá entenderse como creador de una sociedad asociación o empresa conjunta entre las partes. Tampoco se adquiere un compromiso u obligación alguna frente a cualquiera de las otras partes

## Plazo

16. Este Acuerdo de Colaboración será efectivo desde la fecha de la firma y se mantendrá vigente por 4 años, pudiendo prorrogarse de mutuo acuerdo y por escrito.

17. Este Acuerdo de Cooperación podrá dares por terminado por cualquiera de las partes y en cualquier momento con una notificación escrita dirigida con 90 días de anticipación a la parte contraria a la dirección establecida a continuación:

## Varios

18. Las Partes están conscientes de que el presente instrumento no es vinculante para ellas y que por lo tanto es la manifestación de la voluntad de cooperar entre ellas respecto de asuntos de mutuo interés.

19. Este instrumento puede ser modificado en cualquier momento por mutuo acuerdo de las Partes.

20. Nada en este instrumento tiene la intención de evitar que se produzcan conversaciones bilaterales o acuerdos de interés común entre la AFN, los pueblos indígenas del Ecuador o el FDA.

21. Cualquier notificación entre las Partes se la debe hacer por escrito y

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

MKS-0005893

entregado personalmente o por correo electrónico a cada una de las Partes o a sus oficinas o enviado por correo certificado con estampilla pre pagada o por fax a las siguientes direcciones:

AFN a:
55 Metcalfe Street, Suite 1600
Ottawa, Ontario, Canadá K1P 6L5
Fax (613) 241-5808
Attention: Chief Executive Officer

Representantes de los Pueblos Indígenas del Ecuador a:
CONAIE y CONFENAIE a:
Av. Los Granados E10-275 y 6 de Diciembre
Casilla 17-17-1235
Teléfono: 593-22-453-3392
Email: secretaria@conaie.org
Atención: Presidente

FDA a:
Carmen Cartuche, Presidente
filomenacl@hotmail.com
Luis Yanza, Asesor
lfya62@gmail.com
Atención: Juan Aulestia
Tel: 593-99-982-0931

**Este Acuerdo de Cooperación ha sido suscrito por los representantes de los pueblos indígenas del Ecuador, el FDA y la AFN el____ de Diciembre de 2017.**

ASAMBLEA DE NACIONES ORIGINARIAS

Jefe Nacional Perry Bellegarde

MKS-0005894

**COORDINADORES DE LOS PUEBLOS
INDIGENAS DEL ECUADOR
Y EL FDA**

**Confederación de Nacionalidades Indígenas del Ecuador, CONAIE**
Jaime Vargas, Presidente

**Confederación de Nacionalidades Indígenas
De la Amazonía Ecuatoriana, CONFENAIE**
Marlon Vargas, Presidente

**Frente de Defensa de la Amazonía, FDA**
Carmen Cartuche, Presidente

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

MKS-0005895

# EXHIBIT 15

| | |
|---|---|
| **From:** | Katie Sullivan <Katie@Streamlinefamilyoffice.com> |
| **Sent:** | Thursday, January 18, 2018 6:19 PM |
| **To:** | Steven Donziger <sdonziger@donzigerandassociates.com> |
| **Cc:** | John Van Merk <jhvm@rossteq.com>; Ian Watson <iw@watsonassetmanagement.com> |
| **Subject:** | Re: note the below -- Ecuador |

Agenda looks like a great start! I look forward to seeing the budget so I can help secure funders and possible sponsors.

On Jan 18, 2018, at 4:57 PM, Steven Donziger <sdonziger@donzigerandassociates.com> wrote:

> The below is a key part of our out-of-court strategy. Want to make sure you guys understand the plan. Being organized by Kathleen Mahoney, Phil's wife and a prominent law professor. I have high hopes for this. We need to raise more funds for it but it is getting off the ground. Let's talk soon.

**From:** Kathleen Elizabeth Mahoney <kmahoney@ucalgary.ca>
**Sent:** Thursday, January 18, 2018 12:16 AM
**To:** Steven Donziger; Sharon Mascher; Robert Hamilton; Kristen van de Biezenbos; Phil Fontaine
**Subject:** first draft of a conference program

Hi everyone,
I am taking this opportunity to E-Introduce Steven Donziger and Phil Fontaine to Sharon Mascher, Robert Hamilton and Kristen van de Biezenbos, my colleagues at the University of Calgary who have volunteered to be in the "core" organizing group for the conference. Steven has been the long standing (long suffering) lawyer representing the Ecuadorian claimants and I think you all know who Phil is. Both Steven and Phil are very interested in the conference and will continue to play an active role going forward.
 I have done a first draft outline of a conference program which is attached. Please bear in mind this is a FIRST DRAFT so please go at it with sharp pencils with your suggestions, comments, deletions, additions etc., or even don't hesitate to say we have to start over of you think that is necessary.
I have tried to incorporate the initial conference proposal  document into the goals and objectives of the conference. From there I tried to reflect those goals and objectives into panels that may be of interest to an audience that would include indigenous persons and a wide variety of interdisciplinary participants in addition to the legal community. If we are successful is getting either Roger Waters or Margaret Atwood or both, we will have a sell out for sure. I have also tried  to incorporate Sharon's suggestions for panels  and speakers. I am attaching her  suggestions FYI to this email.
In addition to the program we are working on venue options and clarifying availability at the Banff Springs. I am attaching a link if you want to have a look. So far they have quoted the best rates.
http://www.fairmont.com/banff-springs/?cmpid=google_bsh_search-brand-canada_branded-e-revsh&gclid=EAIaIQobChMIp7CQ1NXg2AIVkmF-Ch3ScgCsEAAYASAAEgI3OvD_BwE



## Luxury Banff Hotel & Resort - Fairmont Banff Springs Hotel

www.fairmont.com

Experience our luxurious Banff Springs hotel and golf resort located in the Rocky Mountains of Banff National Park, Alberta, Canada. Enjoy our world-class golf course ...

I am also trying to get clarification from the Kinnear Centre for Creativity and Innovation about rates and availability. Here is ta link to their website. It would also be a good choice as they have a well developed Indigenous presence on faculty and in their programs.

https://www.banffcentre.ca/kinnear-centre-creativity-and-innovation



## Kinnear Centre for Creativity and Innovation | Banff Centre

www.banffcentre.ca

Banff Centre's newest meeting facility, the LEED Certified Kinnear Centre for Creativity and Innovation, includes 17 fully-equipped meeting rooms of varying sizes and ...

The McEwan Hall venue located on the campus of the University of Calgary is attached here. We are trying to get their info as well but they don't return phone calls (bad sign).

https://www.macewancentre.com/

I
 think we should have another meeting soon to talk about this. Next week is not on for me but perhaps the week of the 29th. I am wide open except for Friday. Please let me know your availability. If you have comments on the FIRST DRAFT please provide them ahead of the meeting.
Thanks !! I am now putting together a rough budget which we will need to discuss. Look forward to seeing or hearing from you soon.
Best,
K.

Kathleen Mahoney FRSC, QC
Fellow of the Royal Society of Canada

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

Trudeau Fellow
Fulbright Fellow
Sir Allen Sewell Fellow
Barrister and Solicitor
Professor of Law
Website: http://www3.telus.net/kmahoney
Tel: (403) 239-8982
Fax: (403) 208-1714

CONFIDENTIALITY NOTICE: This e-mail and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed and may contain confidential and privileged information protected by law. If you received this e-mail in error, any review, use, dissemination, distribution, or copying of the e-mail is strictly prohibited. Please notify the sender immediately by return e-mail and delete all copies from your system.

<Sharon's Conference PanelSpeaker suggestions[3].docx>

<Outline for Conference on Aquinda v Chevron case and related indigenous issues.docx>

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

# EXHIBIT 16

| From: | Katie Sullivan <Katie@Streamlinefamilyoffice.com> |
| Sent: | Saturday, December 10, 2016 4:30 PM |
| To: | Steven Haley <steven@snowshill.org> |
| Bcc: | Steven Donziger <sdonziger@donzigerandassociates.com> |
| Subject: | thank you |
| Attach: | INVESTMENT.Summary.Short.Dec2016[1].pdf; INVESTOR.Summary.December2016[3].pdf |

Steven,

It was great to catch up with you today and thanks for sharing all your insights. Glad I've given you some material to discuss at your cocktail party tonight!

As I referenced, Steven Donziger, the GP of the new litigation finance fund was the mastermind that engineered a judgement against Chevron for $9.5B, which they are in the process of collecting. He has strategically funded the case with private investors and wanted to share the attached summaries with you because (1) it's super interesting and inspiring and (2) a $250k investment gets an investor one-eight of a point of the almost $12B judgement or 50x multiple, and (3) I know two crazy smart Stevens! If you want to know more, I'm happy to connect you both or just reach out directly via contact info included in summary.

Enjoy the rest of the weekend and say 'hi' to Kathy from me.

Cheers!
Katie

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

# EXHIBIT 17

**Ecuador/Chevron Capital Raise Plan driven by KS - DRAFT**
**February 2018**

There are many ways to source capital to support the Ecuadorian efforts to collect the judgement from Chevron. The following is framework that helps achieve this goal driven by KS.

Will it happen? Yes.

Is there anything in the way? Yes, any conversations connected to fear, stress or the struggle of raising capital will make this process more difficult than it needs to be!

Summary

- Capital raise goal: $5M – March to Dec 2018
- Entity: Light Up Capital One LLC
- Managers: Katie Sullivan, Manager II/JVM? (financial), Manager III (attorney or member/manager)
- Purpose: to fund the efforts managed by SRD to collected the $12B judgement – legal expenses, shareholder activists, public relations, strategic. To separate the fundraising/financial support from the management of the case so time/energy is used wisely.
- Equity: TBD and negotiated. 2016/2017 value is $250k for 0.125% of the settlement

Capital History (need to fill in and validate)

- Over the past X years there has been $X raised to support the Ecuadorian
  - Majority of funding came from traditional litigation finance funders as well at law firms working on a contingency basis
- There is X% that has been contracted to funders to date:
  - Pre 2016:
  - 2016 to date:
- There is X% that has been contracted to advisors to date:
  - Over the course of the litigation, there have been advisors who have supported the work in return for a % of the recovery.
- Total % = X that is legitimate
- Total % = X that is considered dispute/forfeited due to defendant's pressure and either testifying or providing damning information agains the plaintiffs.
  - Approx. X% will be reserved to anticipate litigation/claims that contract are valid
- Total % = X that remains to be distributed
- SRD has been given authority by the FDA to use up to 30% of the recovery to support its collection
- Post 2014/RICO ruling, funding has come from individual investors and has taken a considerable amount of time and effort by SRD to secure. To date, he has been responsible for coordinating, negotiating and finalizing all funding.

Opportunity

- Through the efforts of the power of the Ecuadorian people, rich in history and protecting the earth's resources and the legal teams in the US and Ecuador, an unprecedented judgment of

$8.6B was awarded in Ecuador in 2011. For the past 7 years, the team has been enforcing the judgement and is currently in Canada where it has had success in the courts.

- The judgement is now valued at $12B.
- While this case is approx 25 years in the making, it is only 7 years since the judgement and getting closer to settlement with effective strategies inside and outside the court system.
- With the momentum in Canada, there has never a more ideal time to invest in the litigation strategy. If you relate this to a venture or private equity investment that takes 7-10 years to realize a 2X investment, this investment has the potential to yield 25-40x in 5 years.
- The case was historically funded by litigation financiers and litigation law firms. There was considerable pressure by Chevron post award and they were successful in using unprecedented force and coercion to market this case as a fraud, which is completely untrue. They never imagined they would be ordered to pay one dollar, let alone $8.5B so their only option was to put $1.5B+ to attack those responsible for its success.
- The case is currently funded by individual investors and the goal is to share this opportunity with sophisticate investors who are aligned with a triple bottom line investment: people, planet & profit. They will also understand the risk associated with this investment as it is binary though the management team is confident there will be a recovery.
- Investment is uncorrelated to the equity and bond markets. It is akin to a private equity or venture commitment with illiquidity and with far greater possibility for very high returns.

<u>Target</u>

The following is a summary of a target LLC member (investor):

- Individuals with a net worth of approximately $25M net worth (1% of their investment). Members may also be LLC's
- They are share a passion for one or more of the following: corporate accountability, indigenous peoples rights, human rights, climate change, high risk/high reward investment opportunities,
- Trusts and knows the managers of the LLC or the case manager.
- Feisty people who will find fulfillment putting their dollars to work towards a resolution of the largest environmental case in history.
- Women investors who can connect more deeply to the work and mission.
- Investors who want to participate in the SRI (socially responsible investing) space and not convinced that traditional avenues will yield the profits they desire.
- Want to make an impact with their dollars outside of charitable giving AND may want to counterbalance some of their current investing activities out of alignment with their values.
- Investment managers currently managing SRI or Impact portfolios so they have a personal opportunity to up-ride the work they are doing professionally (as long as it passes their compliance departments): Zevin, Calvert, managers of ESG funds or hedge fund managers
- 15-20 members with a minimum investment of $250k

<u>How will the investment dollars be used?</u>

- Need to determine a budget based on how the allocation of dollars will be deployed for efforts in and outside the courts and for what purpose? SRD drives this process and informs and recommends payments to the LLC.
- Direct funding of legal expenses and reimbursements for lawyers, PR, strategic conference (such as Univ of Calgary), case management in Canada, Ecuador and other jurisdictions, shareholder advocacy, exploring strategies for settlement

- Reimbursement to SRD (see below) or buyout of SRD equity
- 1% for administrative, tax and legal expenses related to LLC

<u>What needs to be done to prepare for this effort?</u>

- Cap chart to determine, as exact as possible, what percent of the judgement has been allocated as well as what percent is as risk.
- Finalize ALL contracts that are not 100% complete.
  - Finalize amount due to SRD for expenses un-reimbursed and salary forgone during times of limited cash flow.
- What is the current valuation? To determine this, we will look as historical valuations. Should it be less that $250k @ 0.125%? Does the valuation change based on what the Canadian courts determine in April.
- Determine if there is a more beneficial structure to investors so there is more assurance of payment when the settlement occurs.
- Clear understanding of risk – will what occurred in the past with funders be repeated? How can we best protect against this.
- Formation of the LLC and operating agreement so it is very clear of the purpose, authority of managers and protection that dollars will be used only to fund the efforts of the enforcement including oversight of how dollars will be used based on information provided by case manager.
- Negotiate and formalize contract between FDA and LLC.
- Create an investment deck to inform conversations with investors.
- Networking to strategically plant the seed for a future 'ask'. 99.9999% of people do not know this opportunity exists.

MKS-0006030

# EXHIBIT 18

**CONFIDENTIAL MEMORANDUM**

1.  <u>INVESTMENT OPPORTUNITY</u>.

This is a unique opportunity for qualified investors to support the most significant corporate accountability and environmental justice legal case in history. It concerns the grave harm caused to thousands of indigenous and farmer peoples in Ecuador's rainforest who have suffered as a result of the Chevron Corporation's deliberate actions in dumping toxic waste and contaminating the ecosystem.

As detailed below, the Claimants hold an enforceable judgment from Ecuador's highest court in an amount in excess of $9,500,000,000 against Chevron (the "<u>Judgment</u>"). Because of statutory interest, that judgment has grown to roughly $11,500,000,000. Further funds are currently being sought by the Claimants to, among other things, continue to finance an international enforcement strategy in Canada to ensure that Chevron meets its legal obligations under the Judgment. In exchange for providing funding in support of the Claim, Investors will receive the right to an agreed upon share of the proceeds received by the Claimants in respect of the Claim.

The investment is non-recourse, meaning if there is no recovery of funds the investor loses the entirety of his or her investment. If there is a recovery, the investor is likely to receive a substantial return. Further details are available for qualifying investors.

The Claimants have put together a world-class team to manage the enforcement of the Judgment. In Canada, they are represented by Alan Lenczner of Lenczner Slaght in Toronto. Lenczner Slaght is considered the leading boutique litigation law firm in Canada. Other best of breed law firms and service-providers are engaged in other jurisdictions, as appropriate. International enforcement is necessary because Chevron, in anticipation of losing the Ecuador case, stripped its remaining assets from the country during the proceeding and now refuses to pay the judgment.

Canada's Supreme Court already has ruled unanimously and resoundingly in favor of the claimants in rejecting Chevron's jurisdictional challenges to the enforcement action. An enforcement trial to determine whether the villagers can seize Chevron's substantial assets in Canada (worth an estimated $20 billion) is expected to begin in Toronto in mid-2017.

In an age of global warming and crisis over climate change, this is a rare opportunity for qualified investors to both "do good" and "do well" and help save the lives of thousands of vulnerable indigenous people while protecting the rainforest.

**Copies of significant court decisions and media coverage can be accessed via the links at the end of this document. Chevron's relevant court filings can be found at www.Chevron.com or via the contacts below.**

2.  <u>BACKGROUND</u>.

From 1964 to 1992, Chevron[1] built and operated more than 350 well sites and oil production facilities in an approximately 1,500 square mile concession area in Ecuador's rainforest. This concession area is home to five indigenous groups and approximately 80 farmer communities. Throughout the course of its operations in Ecuador, Chevron committed multiple acts of environmental contamination that left a legacy of environmental contamination and degradation from which the local population continues to suffer today. The amount of oil and contaminated water discharged into the Amazonian rainforest by Chevron is several orders of magnitude greater than the BP Deepwater Horizon spill. Moreover, the trial court found that

---

[1] Texaco Petroleum Company was a wholly-owned subsidiary of Texaco, Inc. at all times during its operations in Ecuador until Chevron and Texaco, Inc. merged in 2001.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

Chevron's contamination was intentional, not accidental, and resulted from, among other things, Chevron's grossly substandard practices carried out over decades of its drilling operations in Ecuador. The litigation was held in Ecuador at Chevron's request after the company agreed to accept jurisdiction there and to abide by any judgment, subject only to enforcement defenses available under New York state law.

The Ecuadorian trial court and the appellate court (in its affirmation such Judgment) found that, during its operations of this concession, Chevron deliberately:

o   dumped many billion of gallons of production water (containing BTEX, TPH and polycyclic hydrocarbons) directly into the Ecuadoran rainforest floor and the nearby rivers and streams used by residents for drinking and bathing;

o   gouged more than 900 unlined open waste pits out of the jungle floor – pits that to this day continue to leach toxic waste into soils, groundwater and streams;

o   burned hundreds of millions of cubic feet of gas and waste oil into the atmosphere, poisoning the air and creating "black rain" that inundated the area during tropical thunderstorms; and

o   violated then-current U.S. industry standards, Ecuadoran environmental law, Chevron's own contract with the Ecuadoran government (which prohibited Chevron from using production methods that contaminated the environment) and international law.

Even Chevron's own internal audits of the environmental impacts found extensive contamination at Chevron's oil production facilities. The Ecuadorian trial court also took note of evidence that cancer rates in the concession area where Chevron operated are significantly higher than the norm, according to independent health evaluations. Several indigenous groups have seen their cultures decimated, largely because of Chevron's intentional contamination.

3.   JUDGMENT AGAINST CHEVRON IN ECUADOR.

On February 14, 2011, the Lago Agrio trial court entered the Judgment against Chevron, which was subsequently affirmed by the Sucumbíos intermediate appellate court on January 3, 2012. The Judgment and affirmation collectively awarded the following amounts to or for the benefit of the Claimants:

➢   USD $8,646,000,000.00 in basic damages (the "Remediation Award");

➢   an additional USD $8,646,000,000.00 in punitive damages (the "Punitive Damages Award"); and

➢   an additional amount equal to ten percent (10%) of the Remediation Award (the "10% Award")

On January 3, 2012, the intermediate appellate court issued its order affirming the Judgment in its entirety. On November 13, 2013, Ecuador's National Court of Justice unanimously affirmed the liability portion of the judgment, but removed the punitive damages award. Chevron has one further and limited appeal pending before Ecuador's Constitutional Court that does not stop the enforceability of the Judgment now, since Chevron failed to request for and post a bond – the only way that such enforceability can be suspended.

4.   ENFORCEMENT OF ECUADOR JUDGMENT IN CANADA.

2

On May 30, 2012, the Ecuadorian claimants filed an action to seize Chevron's assets in Canada (estimated to be worth roughly $15 billion) to satisfy the entirety of the Ecuador judgment. Chevron tried to block the action, largely by claiming the Ecuadorians could not establish jurisdiction given that Chevron's assets in Canada were held by a wholly-owned subsidiary. On December 17, 2013, the Ontario Court of Appeal unanimously rejected Chevron's arguments and ruled in a 3-0 decision that the villagers could proceed with their enforcement action. Chevron appealed to Canada's Supreme Court. On September 4, 2015, Canada's Supreme Court ruled unanimously in favor of the Ecuadorians in a 7-0 decision. In all, the Ecuadorians have swept each of the ten appellate judges in Canada to rule on the jurisdictional aspects of the case; the same holds for all eight Ecuadorian appellate judges to rule on the merits of the case. The villagers now have an 18-0 record in Ecuador and Canada among appellate judges.

Armed with the unanimous Supreme Court ruling on jurisdiction, the Ecuadorians forced Chevron in October 2015 to file a written defense in the trial court in the Ontario Superior Court of Justice in Toronto. The villagers subsequently filed a motion to strike Chevron's defenses to the enforcement action on the grounds they were already litigated and resolved in the company's preferred forum of Ecuador, where the underlying trial was held. Chevron filed a motion again raising its largely repetitive jurisdictional arguments. A four-day hearing on the motions took place the week of September 12, 2016. At the hearing, the trial judge expressly told Chevron's lawyers that he would not be bound by the factual "findings" of Judge Kaplan in the U.S. RICO case (the evidence behind said findings has largely collapsed, as explained below). If the Canada trial court rules in favor of the villagers and strikes most or all of Chevron's defenses, the enforcement action will be scaled back considerably and the time frame to a final resolution likely will accelerate. In any event, an asset enforcement trial in Canada is likely to take place in 2017, putting enormous pressure on Chevron.

If there is no settlement and the villagers prevail in their action in Canada, Chevron will have a right to appeal the decision the Ontario Court of Appeal and ultimately to Canada's Supreme Court. Interest on the Ecuadorian judgment in Canada is running at 3% per annum, or approximately $275 million annually.

5.   RELATED LITIGATION – U.S.

On February 1, 2011, Chevron filed a civil action in the SDNY against the Claimants, certain of Ecuadoran and U.S. counsel, and other advisors to the Claimants.  In its complaint, Chevron alleged, among other things, that the defendants named in this civil action violated the Racketeer Influenced and Corrupt Organizations Act (RICO), by committing what Chevron tried to characterize as "fraud" and "extortion" (e.g. "fraudulently" pursuing claims the defendants "knew" to be meritless and "extorting" Chevron though public pressure into paying a settlement). Count 9 of Chevron's RICO complaint requested a declaratory judgment that any judgment from the Ecuadorian trial court be rendered unenforceable because of inherent fraud in the Ecuadorian judicial system. In February 2011, Judge Kaplan of the Southern District of New York, without any supporting precedent, granted Chevron's request for a preliminary injunction (the "Preliminary Injunction") that purported to bar enforcement of the Judgment anywhere in the world, pending the outcome of the RICO proceeding. Information later emerged that Judge Kaplan held undisclosed investments in Chevron while making this and other rulings in the case.

The defendants appealed and on September 19, 2011 – the first day after oral argument -- the Second Circuit issued a summary order vacating the Preliminary Injunction in its entirety. On January 26, 2012, the Second Circuit issued its written opinion dismissing the Preliminary Injunction and the claim for declaratory relief under Count 9 in its entirety on grounds that a court's power to determine the enforceability of a foreign judgment could only be exercised when a plaintiff-creditor had sought enforcement under its recognition laws and not as an affirmative lever to bar recognition actions in its courts and, much less, around the world.

3

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

Notably, the Second Circuit ruling stated that the "[Claimants] hold a judgment from an Ecuadorian court. They may seek to enforce that judgment in any country in the world where Chevron has assets." In addition, it should be noted that the Ecuadorian appellate court specifically confirmed that it had considered and rejected all of Chevron's claims regarding fraud by the Claimants.

After the Preliminary Injunction was reversed on appeal, Judge Kaplan allowed Chevron to continue to pursue its civil RICO claims. During a trial in late 2013, Judge Kaplan openly disparaged the Ecuadorians and their counsel, denied the villagers and their counsel a jury, and refused to consider any of the voluminous evidence of environmental contamination relied on by Ecuador's courts to find Chevron liable. He also allowed Chevron to pay $2 million to a fact witness who claimed, without any credible corroborating evidence and after 53 days of coaching by Chevron's lawyers, that certain of the defendants offered a bribe to the Ecuador trial judge in exchange for ghostwriting a favorable judgment. (The allegations already had been rejected by Ecuador's Supreme Court.) On March 4, 2014, Judge Kaplan found the defendants liable for the RICO violations and imposed an order prohibiting them from enforcing their judgment in the United States or collecting it anywhere in the world. That decision was affirmed in August, 2016 by the same court that previously reversed Judge Kaplan's preliminary injunction ruling; the three-judge panel did not independently review Judge Kaplan's "findings" and instead accepted them as true for purposes of the appeal. Neither the Kaplan decision nor the appellate decision affirming it has a dispositive impact on any enforcement action in Canada or other jurisdictions, as affirmed by the actions of the appellate courts (including Canada's Supreme Court) as explained above. In any event, the RICO defendants are planning an appeal of the Kaplan decision to the U.S. Supreme Court.

Subsequent to the RICO decision, and while the first-level appeal was pending, Chevron suffered two significant setbacks that we believe have caused the factual predicate of its claims to unravel. First, Chevron's main witness in the RICO case (Alberto Guerra) to whom it had paid $2 million recanted key portions of his testimony related to the bribery allegation and admitted he had lied on the stand. Second, a computer forensic analysis ordered by a separate international arbitration panel hearing a dispute between Chevron and Ecuador's government (described below) concluded that the trial court judgment had in fact been authored by the trial judge, and had not been ghostwritten as Chevron had alleged and Judge Kaplan had concluded. In fact, this analysis found that the trial judge opened and saved a draft document on his office computer that became the judgment at least 480 times. These developments were brought to the attention of the appellate court hearing the appeal of Judge Kaplan's decision, but the court ignored them.

The U.S. Supreme Court also dealt a severe blow to Chevron's prospects in the RICO matter when it ruled in June 2016 to severely restrict the application of the law. This is another factor that we believe has a negative impact on Chevron's prospects in this aspect of the litigation. (See here for background on this court decision.)

6.    RELATED LITIGATION – INTERNATIONAL ARBITRATION.

In September 2009, Chevron sued the Republic of Ecuador ("ROE") under Ecuador's Bilateral Investment Treaty (BIT) with the United States, which permits private, commercial arbitration between investors and host country governments. Chevron's claims revolve primarily around a series of settlement and release agreements with Ecuador, which Chevron argues relieve it from liability for environmental impact arising out of its activities in Ecuador, including liability for any judgment rendered in the Lago Agrio case. Alternatively, Chevron asserts that the releases require the ROE to indemnify it for any sums collected against Chevron in any Lago Agrio judgment.

During the BIT proceedings, the arbitration panel has issued "interim orders" and "interim awards" purporting to order the ROE to use all measures necessary to enjoin all enforcement

4

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

of any judgment against Chevron in the Lago Agrio case. The ROE has argued that Ecuadoran constitutional separation of powers principles prevent the executive branch of government from interfering in any way with the judicial process, in particular on behalf of any particular litigant, and that, accordingly, the ROE has very few measures "at its disposal." Accordingly, the ROE has taken the position that it has complied with the interim orders and award, while simultaneously arguing that such ruling are inappropriate, unnecessary and beyond the scope of the BIT arbitrators' power and, as such, should be vacated.

In addition, the Ecuadorian appellate court has ruled on more than one occoasion that neither it nor any Ecuadoran court can give effect to any act by the BIT tribunal or by any international tribunal that would have the effect of undermining fundamental human rights guaranteed by Ecuador's Constitution and by international law. Ecuador's courts also have noted that the Lago Agrio case involved citizens exercising their fundamental rights to judicial access and protection, and that any pro-investment principle of commercial rights could not trump those rights and was inapplicable in the context of this case.

The Claimants agree with the ROE and more broadly assert that the BIT proceedings themselves have no application to their claims against Chevron and that any orders emanating from the BIT proceedings will have no binding effect on Claimants or their right to enforcement of the Judgment in or outside Ecuador. The Claimants are not allowed under the BIT system to participate in the state-investor private arbitration, and the ROE is not a party to the Lago Agrio litigation. A recent legal brief on the arbitration is here and an article on this issue is here.

## KEY LEGAL DECISIONS, LEGAL BRIEFS

Ecuador Supreme Court decision affirming judgment against Chevron:
http://chevrontoxico.com/assets/docs/2013-11-12-supreme-court-ecuador-decision-english.pdf

Canada Supreme Court decision affirming right to enforcement:
http://chevrontoxico.com/assets/docs/2015-09-04-chevron-v-yaiguaje-canada-decision.pdf

Ontario Court of Appeal decision affirming right to enforcement:
http://stevendonziger.com/wp-content/uploads/2013/12/Ontario-appeals-reversal-121713.pdf

Motion by Villagers to Strike Chevron Defenses in Canada:
http://chevrontoxico.com/assets/docs/2016-01-20-factum-of-the-respondents-plaintiffs.pdf

Arbitration proceeding – key legal brief of Ecuador government:
http://chevrontoxico.com/assets/docs/2015-03-17-roe-3rd-supp-rejoinder.pdf

Appeal of Judge Kaplan's Decision in RICO Case by Counsel:
http://guptawessler.com/wp-content/uploads/2012/05/CA2-brief-corrections-RC4.pdf

Appeal of RICO decision by Ecuadorian villagers:
http://guptawessler.com/wp-content/uploads/2014/01/LAP-Brief.pdf

## KEY MEDIA ON LITIGATION

Further general background, videos and materials related to the case can be found at www.chevrontoxico.com and in numerous media articles, including:

*60 Minutes* segment, 2009: https://www.youtube.com/watch?v=UGG1nIwxNhs

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

MKS-0001527

*Vanity Fair*: http://www.vanityfair.com/news/2007/05/texaco200705

Video of Chevron defrauding Ecuador court:
http://amazonwatch.org/news/2015/0408-the-chevron-tapes

New York Times on Canada enforcement action:
http://www.nytimes.com/2015/09/05/business/international/court-says-chevron-can-be-pursue
d-in-canada-over-ecuadorean-damage.html

Chevron Faces Major Difficulties in Canada:
http://www.csrwire.com/press_releases/38268-Chevron-Facing-Major-New-Difficulties-In-E
cuador-Pollution-Case-After-Losing-Before-Canada-Supreme-Court

Chevron Faces Potential "Litigation Catastrophe" in 2016:
http://www.csrwire.com/press_releases/38590-In-2016-Chevron-Faces-Potential-Litigation-C
atastrophe-Over-Ecuador-Pollution-Liability

Profile of Alan Lenczner, Canadian counsel:
http://business.financialpost.com/legal-post/meet-alan-lenczner-the-man-fighting-for-ecuador
an-villagers-in-their-canadian-case-against-chevron

\#\#

December 2016
INQUIRIES:
Steven Donziger and Joshua Rizack
sdonziger@donzigerandassociates.com/9175662526
jrizack@therisinggroup.com/203-246-2639

6

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

MKS-0001528

# EXHIBIT 19

| | |
|---|---|
| **From:** | Steven Donziger <sdonziger@donzigerandassociates.com> |
| **Sent:** | Thursday, October 19, 2017 11:01 AM |
| **To:** | Katie Sullivan <Katie@Streamlinefamilyoffice.com> |
| **Subject:** | Re: Here's the NDA |

thanks!!

**From:** Katie Sullivan <Katie@Streamlinefamilyoffice.com>
**Sent:** Thursday, October 19, 2017 10:35:49 AM
**To:** Steven Donziger
**Subject:** Re: Here's the NDA

Asked him to give me some dates to meet in NYC. Will send the NDA along as well.

Ordered Led Zepplin book & sound thing/toy that plays Stairway to Heaven to send to Paul Singer....asking him for a meeting. They invest in the case, short Chevron stock as you near collection = they make $ on both ends plus he becomes part of the legend of corporate accountability which is his whole shtick at Elliott. Seems obvious! :)

On Oct 19, 2017, at 10:24 AM, Steven Donziger <sdonziger@donzigerandassociates.com> wrote:

> Let me know next steps. Can't thank you enuf.
>
>
> Abrazos, SRD
>
> <NDA.FDA.2017.doc>

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

# EXHIBIT 20

| | |
|---|---|
| **From:** | Steven Donziger <sdonziger@donzigerandassociates.com> |
| **Sent:** | Friday, November 3, 2017 7:22 PM |
| **To:** | Katie Sullivan <Katie@Streamlinefamilyoffice.com> |
| **Subject:** | Re: Chevron Deal |

Huh?

Sent from my iPhone

On Nov 3, 2017, at 6:51 PM, Katie Sullivan <Katie@Streamlinefamilyoffice.com> wrote:

> This is so AWESOME.
> You must join!
>
>
> Begin forwarded message:
>
> > **From:** Natalie Underwood <nUnderwood@elliottmgmt.com>
> > **Date:** November 3, 2017 at 4:05:17 PM EDT
> > **To:** 'Katie Sullivan' <Katie@Streamlinefamilyoffice.com>
> > **Subject: RE: Chevron Deal**
> >
> >
> > Hi Katie,
> >
> > I hope you are doing well.  Would a meeting at 4pm at our office – 40 W. 57th Street – work for you?
> >
> > Thanks so much!
> >
> > Best,
> > Natalie

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

**From:** Katie Sullivan [mailto:Katie@Streamlinefamilyoffice.com]
**Sent:** Friday, November 03, 2017 3:43 PM
**To:** Natalie Underwood
**Cc:** Lee Grinberg; Jesse Cohn
**Subject:** Re: Chevron Deal


Natalie,


Thank you for helping to coordinate. I'll be in the city on Monday thru Tuesday until noon. If something in that time frame works, that would be ideal.


Otherwise, I will accommodate Jesse and Lee's calendars. Let me know what is best.


With gratitude,

Katie

617-817-3512

On Nov 3, 2017, at 1:25 PM, Jesse Cohn <JCohn@elliottmgmt.com> wrote:

Thanks Jonathan (moving to BCC).


Katie – pls let us know when works to chat.  I'm copying Natalie who will schedule for me and Lee.


Much appreciated.


Jesse

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

**From:** Jonathan Bush [mailto:jbush@athenahealth.com]
**Sent:** Friday, November 03, 2017 1:22 PM
**To:** Jesse Cohn <JCohn@elliottmgmt.com>; Katie Sullivan <Katie@Streamlinefamilyoffice.com>
**Subject:** Chevron Deal


Jesse

Here is Katie who is trying to help the successful plaintiffs in the Chevron Ecuador deal.


Looking forward to hearing what you think.

Sent from my iPhone

---

Confidentiality Notice from Elliott Management Corporation:

The information contained in this e-mail and any attachments may be legally privileged, proprietary and/or confidential. If you are not an intended recipient, you are hereby notified that any use, copying, disclosure or distribution of all or any portions of this e-mail and any attachments is strictly prohibited. If you received this e-mail in error, please notify the sender, permanently delete the e-mail and any attachments, and destroy all hard copies immediately.

No warranty is made as to the completeness or accuracy of the information contained in this communication. Any views or opinions presented are those of only the author and do not necessarily represent those of Elliott Management Corporation or its related entities. This communication is for information purposes only and should not be regarded as an offer, solicitation or recommendation to sell or purchase any security or other financial product.

Elliott Management Corporation and its related entities reserve the right to monitor all e-mail communications through their networks.

Thank you.


**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more**

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

**useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
PROTECTED BY FED R. EVID. 502(d)

MKS-0000133

617-817-3512

On Nov 3, 2017, at 1:25 PM, Jesse Cohn <JCohn@elliottmgmt.com> wrote:

> Thanks Jonathan (moving to BCC).
>
> Katie – pls let us know when works to chat.  I'm copying Natalie who will
> schedule for me and Lee.
>
> Much appreciated.
>
> Jesse
>
> ---
>
> **From:** Jonathan Bush [mailto:jbush@athenahealth.com]
> **Sent:** Friday, November 03, 2017 1:22 PM
> **To:** Jesse Cohn <JCohn@elliottmgmt.com>; Katie Sullivan
> <Katie@Streamlinefamilyoffice.com>
> **Subject:** Chevron Deal
>
> Jesse
> Here is Katie who is trying to help the successful plaintiffs in the Chevron
> Ecuador deal.
>
> Looking forward to hearing what you think.
>
> Sent from my iPhone
>
> ---
>
> Confidentiality Notice from Elliott Management Corporation:
>
> The information contained in this e-mail and any attachments may be legally privileged, proprietary and/or confidential. If you are not an intended recipient, you are hereby notified that any use, copying, disclosure or distribution of all or any portions of this e-mail and any attachments is strictly prohibited. If you received this e-mail in error, please notify the sender, permanently delete the e-mail and any attachments, and destroy all hard copies immediately.
>
> No warranty is made as to the completeness or accuracy of the information contained in this communication. Any views or opinions presented are those of only the author and do not necessarily represent those of Elliott Management Corporation or its related entities. This communication is for information purposes only and should not be regarded as an offer, solicitation or recommendation to sell or purchase any security or other financial product.
>
> Elliott Management Corporation and its related entities reserve the right to monitor all e-mail communications through their networks.
>
> Thank you.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.