**STEVEN R. DONZIGER**

245 WEST 104TH STREET, SUITE 7D
NEW YORK, NEW YORK 10025

212-570-4499 (O)
917-566-2526 (CELL)

October 25, 2018

**VIA ECF**

Honorable Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

RE:   *Chevron v. Donziger*, Case No. 11 Civ. 691 (LAK)

Dear Judge Kaplan:

I write to respectfully inform the Court that I will be unable to comply with the order dated October 18, 2018 directing me to produce a potentially massive quantity of confidential and privileged documents and communications to Chevron.

I note that I have firmly asserted privilege over these documents in a manner consistent with the context of the proceedings and my abilities as a sole practitioner facing an onslaught of litigation in multiple fora. Many of Chevron's requests are ridiculously overbroad. For example, Request No. 21: "All DOCUMENTS evidencing or relating to any communication between YOU and any PERSON or ENTITY since March 4, 2014 concerning the ECUADOR JUDGMENT." As the Court knows, largely the entirety of my professional life revolves around the Ecuador case, which in turns revolves around the Ecuador Judgment. This one request sweeps in unknown thousands or tens of thousands of documents and communications, many of which are obviously likely to reflect highly protected attorney opinion work product and attorney-client communications or confidential information derived from such communications. Chevron has repeatedly refused to narrow this Request or any other Request. The Court cannot with a straight face suggest that I should be required to fully log, describe, and individually assert privilege regarding each of these documents and communications in order to maintain the privilege, especially when key preliminary legal questions remain unresolved (see below). If Chevron wishes to proceed with discovery, it should work with me to narrowly target its requests to information relevant to its claims regarding the litigation finance efforts and the existence

Hon. Lewis A. Kaplan
October 25, 2018
Page 2 of 3

of my assets, and this Court should resolve my long-outstanding objections to the basic foundation of these post-judgment proceedings.

This brings us to the real issue—the elephant in the room that I have been trying to draw attention to for over six months. I have repeatedly pleaded with the Court to explain to me how it can even pretend that it was "contemptuous" of me to continue to raise funds through pre-collection litigation finance when the Court itself acknowledged in its April 2014 Opinion on my stay motion that "[t]his case *always has been financed* on the movants' side by outside investors" and assured me that the RICO Judgment "*would not prevent Donziger from being paid*, just as he has been paid at least $958,000 and likely considerably more over the past nine or ten years." Dkt. 1901. In the same Opinion, the Court explained that the RICO Judgment's constructive trust and monetization provisions only impacted "proceeds" of a "collection" on the Ecuadorian Judgment. *Id.* And when I worried that the RICO Judgment would freeze up financing for my appeal and for ongoing Canadian litigation, the Court dismissed my concerns as so "fanciful" and "far fetched" as to "border on the irresponsible." *Id.*

The Court now appears to have changed its mind regarding what the word "traceable" means. I don't think that is proper as a matter of the law of the case, but even that is a separate issue. Even if the Court has improperly changed its position and now regards "traceable" as that described in its August 15, 2018 Order, and even if the Court's Default Judgment has changed the scope of allowable financing efforts in the United States, the Court cannot pretend that it has the ability to travel back in time and make "traceable" mean something different than what was described the April 2014 Opinion. As the Court knows, a finding of contempt against me is only possible if I knowingly and willfully disobeyed a clear and unambiguous order of the Court. In light of the Court's own words to me in its April 2014, it is impossible to maintain that a prohibition against litigation financing was so clear between April 2014 and August 2018 that I might lawfully be found in contempt. As such, the Court should have long ago ruled against Chevron on its original contempt motion filed in March 2018—thus eliminating the main basis to proceed with Chevron's massive post-judgment discovery which now has resulted in a wholly unjustified waiver of all of my privileges and a blank warrant for the company and its lawyers to target supporters of my clients in an effort to dry up funding for the case and the corporate accountability campaign.

Instead, apparently trapped by its own words, the Court has responded to this grave violation of my Constitutional rights and those of my clients with a transparently abusive strategy of silence and non-action. It has refused to address the key issue underlying Chevron's original contempt motion for over six months now. Meanwhile, the Court has greenlighted Chevron's outrageously intrusive discovery, intimidation, and demonization campaign—all of which, again, has zero basis to proceed if there is no colorable contempt

case against me.[1] Were I to comply with the Court's October 18 Order (including without any assurances as to the scope of the individual requests, because the Court has refused to rule on my individual scope and burden objections), Chevron would succeed in gaining near wholesale access to my confidential, privileged, and protected documents, without any legitimate basis.

The Court's refusal to rule on the core issue in Chevron's original contempt motion has also strategically denied me an uncomplicated avenue of appellate relief—even though I do maintain that I have legitimate grounds for both a direct and interlocutory appeal and am pursuing those appeals in the Second Circuit. If the Court really thinks that a prohibition on litigation finance was so clear after April 2014 that I can be held in contempt thereof, it should make such a finding directly, which would allow me to seek appellate review. Because the Court refuses to do this, I apparently must take a contempt sanction in this second-layer discovery context, try to consolidate it with the pending appeals, and trust that the Second Circuit will be able to appreciate it all in totality and in the larger and deeply disturbing context of these post-judgment proceedings generally. I would urge the Court to rule on these critical issues or hold me in contempt and thereby allow me to appeal to the Second Circuit.

Sincerely,

/s

Steven R. Donziger

---

[1] Chevron's massive and growing discovery campaign against me and third-parties (including most recently public media outlets) is also illegitimate for the reason that it seeks to intrude on confidential internal deliberations and strategies of the loose team of advocates seeking to hold Chevron accountable for its contamination in Ecuador, and thus works a clear violation of the First Amendment right to association as protected by Second Circuit and Supreme Court precedent. Chevron is establishing the foundations of this constitutional violation day by day as it expands its vitriolic attacks on the "environmental, indigenous and shareholder activists, academics, and others who partake in [] efforts to force Chevron into a settlement" for its Ecuador liability. Dkt. 2107 at 1 (Chevron motion).