# EXHIBIT 2

Page 1

```
 1
 2   UNITED STATES DISTRICT COURT
 3   SOUTHERN DISTRICT OF NEW YORK
 4    C.A. No. 11 Civ. 0691 (LAK)
 5   ------------------------------------x
     CHEVRON CORPORATION,
 6
              Plaintiff,
 7
 8
         - against -
 9
10
     STEVEN DONZIGER, et al.,
11
              Defendants.
12   ------------------------------------x
                    June 25, 2018
13                  10:07 a.m.
14
15       Videotaped Deposition of STEVEN
16   DONZIGER, taken by Plaintiff, pursuant to
17   Order, held at the offices of Gibson Dunn &
18   Crutcher LLP, 200 Park Avenue, New York,
19   New York, before Todd DeSimone, a
20   Registered Professional Reporter and Notary
21   Public of the State of New York.
22
23
24
25
```

```
                                              Page 29
 1                    DONZIGER
 2        Q.     Is this agreement still
 3   operative?
 4        A.     I think there has been a
 5   subsequent agreement.
 6        Q.     What is the date of the
 7   subsequent agreement?
 8        A.     I don't know, but it was after
 9   this date.
10        Q.     Do you have a copy of the
11   subsequent agreement?
12        A.     I do.
13        Q.     And who are the parties to the
14   subsequent agreement?
15        A.     I believe it is the FDA and
16   myself.
17        Q.     Has Exhibit 558 been
18   terminated?
19        A.     I think it's been superseded by
20   the subsequent agreement.
21        Q.     Now, in Exhibit 558, your
22   clients consist of the individual Lago
23   Agrio plaintiffs, the FDA, and the UDAPT.
24   Do you see that?
25        A.     Yes.
```

Page 58

1            DONZIGER
2  exclusively with the FDA?
3       A.    In terms of compensation, legal
4  fees?
5       Q.    In terms of your compensation.
6       A.    My legal fees, my fees for
7  service, is that what you are talking
8  about?
9       Q.    I don't know what the terms
10 are.  I'm asking you.
11      A.    Well, you've got to be
12 specific.  You want the terms of my legal
13 fee?  My contingency fee interest, is that
14 what you are asking about?
15      Q.    Okay, let's try this:  You have
16 entered into an agreement with the FDA?
17      A.    Yes.
18      Q.    Several years ago, correct?
19      A.    Well, two, three years ago, to
20 my best recollection.
21      Q.    And you can't narrow it down
22 any more than that?
23      A.    Not as I sit here today.  I
24 mean, it has happened relatively in that --
25 I believe in that time frame.

```
                                              Page 59
 1                 DONZIGER
 2      Q.     Does this agreement -- is it a
 3   retainer agreement?
 4      A.     Yes.
 5      Q.     Is it governed by New York law?
 6      A.     I can't answer that as I sit
 7   here today.  Obviously if I signed it, New
 8   York would be governed by New York ethical
 9   rules and what have you, but I don't know
10   what the retainer agreement says.  I don't
11   have it in front of me right now.
12      Q.     Does the agreement that you
13   signed with the FDA in the last couple of
14   years, the retainer agreement, give you a
15   percentage interest in the judgment, the
16   Ecuadorian judgment?
17      A.     Yes.
18      Q.     What is that percentage
19   interest in the FDA retainer?
20      A.     It's the same percentage
21   interest that I have always had, to the
22   best of my knowledge, 6.3 percent.
23      Q.     And is that 6.3 percent of the
24   total amount recovered or some other --
25   what is it 6.3 percent of?
```

Page 60

1           DONZIGER
2       A.    It is a contingent fee interest
3  in the recovery, any recovery.
4       Q.    The total recovery?
5       A.    Yeah, obviously subject to
6  court orders, like the constructive trust.
7  So right now, for all practical purposes,
8  it is a nullity.  But that is my interest
9  according to my contract.
10      Q.    The contract you signed with
11 the FDA, in addition to granting you the
12 contingency fee interest of 6.3 percent,
13 does it provide for any other types of
14 payments to you?
15      A.    I don't know.  To be clear,
16 though, I have an agreement with my
17 clients, that is the FDA, to be paid a
18 monthly retainer.
19      Q.    When did you enter into that
20 agreement?
21      A.    We have always had that
22 agreement for years.  I rarely got paid
23 because there wasn't enough money, and I
24 occasionally got paid.
25              THE VIDEOGRAPHER:  Excuse me, I

Page 62

1         DONZIGER
2  agreement, an oral agreement.
3        Q.     And is this agreement that you
4  receive a retainer for working for the FDA
5  reflected in your new FDA retainer?
6        A.     I don't know an answer to that
7  because I haven't looked at that retainer
8  in preparation for this deposition.
9        Q.     In this agreement that you have
10 with the FDA to receive a retainer, what is
11 the amount of the retainer?
12       A.     It varies.  Right now, or the
13 most recent iteration, was $25,000 a month.
14       Q.     And is there any document
15 confirming that that's your current
16 retainer amount that is signed by the FDA?
17       A.     I don't know, but there is a
18 definite agreement with the FDA.  But I
19 will say this:  I generally don't get paid
20 that amount or get paid anything at all.
21 It all depends on what's available,
22 especially given the rather burdensome, for
23 my client base, demands of the litigation
24 in different jurisdictions, you know, not
25 just this, but Canada and other countries.

```
                                                   Page 73
 1                     DONZIGER
 2    organized person when it comes to this, but
 3    it is possible that that has happened in
 4    all of these accounts at one time or
 5    another.  And the Ecuador case account was
 6    just opened relatively recently because of
 7    a situation with Ms. Sullivan.
 8         Q.     What does that mean?
 9         A.     That she didn't want to handle
10    the funds anymore.
11         Q.     So you have taken money raised
12    in connection with the Ecuador judgment
13    that is intended to pay case expenses to
14    persons other than yourself and deposited
15    it into the accounts shown on the first
16    page of Exhibit 5309?
17         A.     Yes, from time to time, I have
18    done that, because that's where the money
19    was held to be able to fund the case.
20         Q.     And you have deposited these
21    case monies into these accounts which also
22    contained personal money of yours; is that
23    right?
24         A.     Sometimes I have used the
25    accounts, again, because I'm not very
```

```
                                              Page 74
 1                 DONZIGER
 2   organized, as accounts to hold funds that
 3   have been subsequently transferred out to
 4   other people to pay case expenses, yes.
 5        Q.      So am I understanding you that
 6   you have commingled case funds with your
 7   personal funds?
 8        A.      No.  Commingle is your word.
 9        Q.      Well, you have put them in the
10   same account, the money, yes?
11        A.      It's not commingling as far as
12   I'm concerned.  That's an opinion that
13   you're expressing.
14                You know, the money comes in.
15   We almost never have enough money to meet
16   the need and all the bills, and it has to
17   be then sent out in a way to keep the case
18   going.  I have done that through the years
19   from time to time.
20        Q.      And you keep accurate records
21   of all the case money that comes in and all
22   the case money that flows out, is that
23   right, of your accounts?
24        A.      The records are all electronic
25   and easily retrievable.  I had brought in
```

```
                                              Page 245
 1
 2            CERTIFICATION
 3
 4     I,  TODD DeSIMONE, a Notary Public for
 5  and within the State of New York, do hereby
 6  certify:
 7     That the witness whose testimony as
 8  herein set forth, was duly sworn by me; and
 9  that the within transcript is a true record
10  of the testimony given by said witness.
11     I further certify that I am not related
12  to any of the parties to this action by
13  blood or marriage, and that I am in no way
14  interested in the outcome of this matter.
15     IN WITNESS WHEREOF, I have hereunto set
16  my hand this 26th day of June, 2018.
17
18           [signature: Todd DeSimone]
             _____
19              TODD DESIMONE
20
21            *     *     *
22
23
24
25
```