UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHEVRON CORPORATION,

           Plaintiff,

   v.

STEVEN DONZIGER *et al.*,

           Defendants.

11 Civ. 0691 (LAK)

**MOTION TO COMPEL**

    Undersigned *pro se* defendant Steven Donziger hereby moves the Court to order plaintiff Chevron Corporation to produce any and all drafts and related correspondence related to the Declaration of Ms. Mary K. Sullivan signed Sept. 28, 2018 ("Declaration") and submitted to this Court in support of Chevron's latest motion to hold me in contempt. *See* Dkt. 2116. As I described at length in my recent opposition to the motion, Ms. Sullivan admitted at deposition not only that "her" declaration was ghost-drafted in its entirety by Gibson Dunn partner Robert Blume and his colleagues, but that certain changes she had sought prior to signing the affidavit were rejected by its true Gibson Dunn authors. Deposition of Katie Sullivan. Sept. 28, 2018 ("Deposition"), at 258-59.

    I requested the drafts of the Declaration and related communications from Chevron on October 15, 2018. *See* Ex. 1. Chevron's lawyers at Gibson Dunn refused to provide the drafts by letter dated October 27, 2018. *See* Ex. 2. Incredibly, Chevron has taken the position that the drafts of the Sullivan Declaration, which Gibson Dunn attorneys authored with only minor changes by Ms. Sullivan herself, is protected from disclosure on the theory that it is Gibson Dunn's attorney

work product. *Id.* Chevron only makes a claim for "fact" work product. Yet fact work product *must be produced* where I can show a "substantial need for the materials to prepare [my] case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Chevron makes no claim of "opinion" work product that would be protected under Fed. R. Civ. P. 26(b)(3)(B).

I have no other means to obtain the drafts and communications in question without undue hardship.[1] My substantial need for the drafts is fully set out at pages 2-8 of my recent Opposition. Dkt. 2122. Chevron wields Ms. Sullivan's Declaration prominently and aggressively in its pending contempt motion. Chevron also uses the Declaration's myriad sideways attacks and smears to try to undermine my credibility and defame me in service of its larger "demonization" project designed to "chill" advocacy against it. Chevron's efforts in this regard already have met with some success.[2]

The fact that the Sullivan Declaration was ghostwritten in its entirety by the Gibson Dunn lawyers, and that Ms. Sullivan knew nothing about many assertions in her own declaration, is directly and devastatingly relevant as to the credibility of the witness for purposes of the pending motion. In light of the obviously gruesome pressure tactics used on Ms. Sullivan, such as requiring her to run up $170,000 in legal bills and starting to go after clients essential to her family's

---

[1] To the extent Chevron claims I could obtain them from Ms. Sullivan, it is noteworthy that this Court appears to have dictated the requirements of Ms. Sullivan's discovery obligations from New York for several months now, apparently at her consent and upon the initiative of her former counsel. However, there is no need to further involve Ms. Sullivan, who has been tortured enough by Chevron in this process, when the Gibson Dunn attorneys can turn over the drafts at this Court's direction in scant minutes. No amount of hardship by either me or Ms. Sullivan is "due" in light of the utter ease with which Gibson Dunn can comply with my single limited discovery request.

[2] *See, e.g.*, Ted Folkman, *Lago Agrio: Another Turncoat*, Letters Blogatory, Oct. 3. 2018, at https://lettersblogatory.com/2018/10/03/lago-agrio-another-turncoat/.

livelihood, there is major room to doubt the credibility of the Declaration. Ms. Sullivan's pro forma protestations that it represents her own words are surely part of the overall deal of signing the Declaration in exchange for "this to be over as quickly as possible." Deposition at 282.

To provide just one example of the extent to which the ghost-written nature of the language in the Declaration fundamentally undermines the substance of the testimony, I asked Ms. Sullivan at her deposition about the thinly-veiled attacks on me in her Declaration concerning my advocacy efforts against Chevron:

> Q. In the first sentence, it says, 'Steven spent the majority of his time coordinating 'out-of-court' 'nonlegal' strategies to put 'pressure' on Chevron. Do you see that?
>
> A. Yes.
>
> Q. You didn't write that, did you?
>
> A. I did not write that sentence. . . .
>
> Q. Why do you think they put quotes around the word 'pressure'?
>
> A. I do not know.

*Id.* at 295, 298. In stark contrast to the Declaration language noted above, which she "did not write," Ms. Sullivan was actually supportive of my advocacy efforts to put pressure on Chevron to settle its Ecuador liability:

> Q. And the next sentence, "The goal of [Steven's] pressure campaign was twofold," those are Chevron's words from the draft, correct?
>
> A. "Pressure campaign," yes, that was in the draft.
>
> Q. You don't see anything wrong with people in the position of my clients in Ecuador wanting to put pressure on Chevron to settle the case, do you?
>
> A. No. I think -- from my perspective, there was legal stuff going on in court in Canada, and then there's other strategies that were in place to put pressure on them. "Pressure" is not a -- I would say that's not a new word.
>
> Q. It's not a bad thing, is it, in this context?
>
> A. No. I think -- no, I don't think it's a bad word. You just have to

work many angles in whatever you're -- whatever you're doing. Deposition at 298-99. It is patently obvious that it will be impossible to fully assess the credibility of the statements in the Sullivan Declaration without fully understanding the extent of Gibson Dunn's authorship of the document *and* the full extent of Ms. Sullivan's requested changes that the Gibson Dunn lawyers refused to make.

Beyond the pending motion, the drafts revealing the exact extent of the ghostwriting are essential to my ability to defend myself from the out-of-court harm intentionally caused by Gibson Dunn via its preparation and submission of the Declaration. Moreover, as I argued in my recent opposition, Gibson Dunn's tactics with respect to Ms. Sullivan are an important "window" to understand the nature of the evidence as it is being manufactured by Chevron with similarly aggressive discovery requests directed at other individuals, as well as the evidence it has manufactured against me in the RICO case generally. Dkt. 2122 at 8 ("The "truth" of these six years' of litigation against me in this Court is largely built on carefully constructed 'truths' just like those in the Sullivan declaration, *i.e.* [little more than] the rhetorical machinations of Gibson Dunn.").

The Court should immediately order Chevron to produce the Declaration drafts and related materials as requested from Chevron in my Oct. 15, 2018 correspondence. Ex. 1.

DATED: November 2, 2018                Respectfully submitted,

                                       *s/ Steven R. Donziger*
                                       Steven R. Donziger
                                       245 W. 104th Street, #7D
                                       New York, NY 10025
                                       Tel: (917) 566-2526
                                       Email: sdonziger@donzigerandassociates.com

                                       *Pro se*

**Exhibit 1**

**From:** Steven Donziger
**Sent:** Monday, October 15, 2018 1:05 PM
**To:** Champion, Anne; Blume, Robert C.
**Cc:** Charles Rankin
**Subject:** Correspondence from Steven Donziger/request for Sullivan documents

Anne and Rob,

Ms. Sullivan's lawyer, Charles Rankin, has refused to provide the requested documents outlined below and has ignored my recent email asking for a justification for his refusal. This is not acceptable.

I therefore reiterate my request to you for production of all drafts of the document that became Ms. Sullivan's declaration dated September 28, 2018 (hereinafter, "the document"), along with related communications. I request specifically:

(1) a copy of the native MS word file of the original draft provided by you (or anyone working in coordination with you, hereinafter "you") to Ms. Sullivan ("the first draft") and her attorneys, along with a copy of the cover email from you to Ms. Sullivan (and/or her attorney, hereinafter "Ms. Sullivan") attaching the draft ;
(2) a copy of the native MS word file of Ms. Sullivan's version containing "track changes" she subsequently provided to you on Sept 26, along with a copy of the cover email attaching the draft;
(3) a copy of the native MS word file of the subsequent draft containing your firm's track changes that you provided to Ms. Sullivan on Sept. 27 ("second draft");
(4) a copy of any subsequent draft containing comments by Ms. Sullivan on her attorneys on the second draft or any communications from Ms. Sullivan or her attorneys relating to the second draft;
(5) a copy of the native MS word file of the "third draft" provided by you to Ms. Sullivan on the morning of Sept. 28;
(6) a copy of the hand-marked copy of the third draft provided by Ms. Sullivan or her attorneys to you on the morning of Sept. 28;
(7) a copy of the "fourth draft" provided by you to Ms. Sullivan later in the morning of Sept. 28;
(8) a copy of the "fifth draft" provided by you to Ms. Sullivan later in the morning of Sept. 28;
(9) any and all other drafts of the document not identified specifically above that were provided at any time to Ms. Sullivan or her attorneys;
(10) all written communications between you and Ms. Sullivan and/or her attorneys relating to the document.

I note that the production of documents I hereby request is specific and highly limited in scope. It imposes almost no burden on your client given that your firm has the requested electronic copies of the documents in your immediate possession. I further note that I require the documents on an urgent basis to prepare my opposition to the motion in support of which the declaration was prepared. The relevance of the drafts and communications was laid out in the course of the deposition of Ms. Sullivan on Sept. 28, 2018. During that deposition, it was suggested under oath by Ms. Sullivan that your law firm effectively put words in Ms. Sullivan's mouth by drafting the declaration with extensive extraneous allegedly first-person statements, and also by your firm's refusal to adopt changes to the text sought by Ms. Sullivan.

In light of the impending deadline on my opposition to your motion, I request production of the requested documents by email to me within the next 48 hours, if not sooner.

Steven Donziger

**Exhibit 2**

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Anne Champion
Direct: +1 212.351.5361
Fax: +1 212.351.5281
AChampion@gibsondunn.com

October 17, 2018

<u>VIA ELECTRONIC MAIL</u>

Steven Donziger
245 W. 104th Street, Apt. #7D
New York, NY 10025
sdonziger@donzigerandassociates.com

Re:     *Chevron Corp. v. Donziger*, No. 11 Civ. 691 (S.D.N.Y.)

Dear Steven:

I write as counsel for Chevron Corporation ("Chevron"). We received your email of October 15, 2018, requesting production of unexecuted drafts of Katie Sullivan's September 28, 2018 witness declaration, and communications between counsel for Chevron and counsel for Ms. Sullivan regarding same. We will not be producing these documents because they are protected work product.

Ms. Sullivan is a nonparty witness in the underlying matter. Drafts of nonparty witness declarations are protected from disclosure by the attorney work product doctrine. *See, e.g.*, *Inst. for Dev. of Earth Awareness v. PETA*, 272 F.R.D. 124, 125 (S.D.N.Y. 2011) ("lawyer's drafts, which have not been adopted or executed by the non-party witness, do not lose their character as work product because a final executed version has been affirmatively used in the litigation"); *Preuss v. Kolmar Labs., Inc.*, 970 F. Supp. 2d 171, 178 n.7 (S.D.N.Y. 2013) ("drafts of the affidavits—exchanged between the defendant's counsel and the affiants" are "a classic example of work product"); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 08-01789 (SMB), 2017 WL 4685525, at *5 (Bankr. S.D.N.Y. Oct. 17, 2017) ("the drafts of the [nonparty declaration] and [the party's] edits to the drafts are work product"). Moreover, neither your letter nor the facts support a "substantial need" for these materials. *See PETA*, 272 F.R.D. at 125 (finding that "no showing of substantial need for drafts [of non-party witness declaration]" was made "because the witnesses have been available to be examined at deposition and no other special circumstance exist"). Accordingly, we will not produce prior drafts of Ms. Sullivan's declaration to you. The same work product protection discussed above also applies to the communications between Gibson Dunn and Ms. Sullivan's counsel, which we also decline to produce. *See Sec. Inv'r*, 2017 WL 4685525, at *5 ("[T]he work product protection generally extends to an attorney's communications with a third party witness relating to the party's completion of the affidavit.").

Ms. Sullivan's declaration was executed under the penalty of perjury, and she confirmed, both at the beginning and end of her deposition, that the statements in the declaration were true and correct (Dkt. No. 2091-42 at 255:19–22; 375:23–376:9). She also testified at length about the process used to prepare the declaration—Gibson Dunn lawyers interviewed Ms. Sullivan in the presence of her counsel, prepared a draft declaration based on that interview,

GIBSON DUNN

October 17, 2018
Page 2

and edited the draft with her lawyer before executing it.  (*E.g.*, *id.* at 245:9–271:8).  During her deposition, you cross-examined Ms. Sullivan about this process and questioned her repeatedly about whether the declaration was truthful.  (*Id.*)  She repeatedly confirmed that it was (Dkt. No. 2091-42).

Accordingly, we decline your demand to produce these documents.  Moreover, Chevron reserves all rights, and does not concede the accuracy of any assertion in your email.

Sincerely,

*/s/ Anne Champion*
Anne Champion