UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
: 
CHEVRON CORPORATION, :
:
Plaintiff, :
:
v. : 11 Civ. 0691 (LAK)
:
STEVEN DONZIGER, et al., :
:
Defendants. :
:
------------------------------------- x

**CHEVRON CORPORATION'S OPPOSITION TO
STEVEN DONZIGER'S MOTION TO COMPEL**


GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

STERN, KILCULLEN & RUFOLO LLC
325 Columbia Tpke, Ste 110
P.O. Box 992
Florham Park, New Jersey 07932-0992
Telephone: 973.535.1900
Facsimile: 973.535.9664

*Attorneys for Plaintiff Chevron Corporation*

Donziger's actions demonstrate that he has no legitimate need for drafts of Katie Sullivan's declaration, and that instead he seeks to invade protected work product in order to further attack Ms. Sullivan and gin up additional grist for his ghostwritten press releases claiming that Sullivan submitted a "false affidavit" and was "intimidated" by Chevron. *See, e.g.*, Ex. 1.[1] Well-settled case law holds that the drafts of Ms. Sullivan's declaration are immune from disclosure because they reflect the mental impressions and opinions of counsel. And even if they did not, Donziger has failed to show a substantial need their production, among other things having waited to seek them only *after* he filed his opposition to Chevron's motion to hold him in contempt. Accordingly, the Court should deny Donziger's motion.[2]

**1. Sullivan's declaration is her proper, sworn testimony in this matter.** Much of Donziger's motion is spent mischaracterizing Ms. Sullivan's declaration in an effort to insinuate that she was pressured into providing false testimony. But the record squarely contradicts Donziger's suggestion that Ms. Sullivan's declaration does not reflect her own testimony.

As Ms. Sullivan testified, the process of drafting her declaration began with attorneys for Chevron interviewing her over several hours, with her own separate counsel present. Dkt. 2091-42 at 245:9–248:24. Only *after* that interview was a draft of Ms. Sullivan's declaration prepared. *Id.* at 248:25–249:8. Ms. Sullivan then edited that draft declaration to ensure that it accurately

---

[1] During her deposition, Ms. Sullivan specifically expressed a fear that her involvement in the Ecuador litigation would be publicized in the media by either party. Dkt. 2091-42 at 312:2–17. Despite this, following the deposition, Donziger repeatedly publicized Ms. Sullivan's role. *See* Exs. 2, 3. Donziger's publication of Ms. Sullivan's name and personal and business information (including the name of her business and the town where she lives) appears to be his way of retaliating against her for providing truthful testimony and discouraging her from providing further testimony.

[2] The Court can and should deny Donziger's motion as a sanction for his repeated refusal to comply with this Court's discovery orders. *See* Dkt. 2108; 2119. Federal Rule of Civil Procedure 37 provides this Court with broad power to sanction Donziger's deliberate non-compliance with discovery orders, including denial this motion. *See* F.R.C.P. 37(b)(2); *In re Rogers*, 583 B.R. 604, 621–25 (Bankr. D. Mass. 2018) (denying contempt motion as a sanction under Rule 37 for movant's prior failure to comply with discovery orders).

1

reflected not just her personal knowledge, but also her preferred tone and vernacular. *See id.* at 267:3–6 ("I wanted to make sure . . . it would be my words and my voice."); *id.* at 252:6–270:7.

At her deposition, Ms. Sullivan adopted her declaration as her sworn direct testimony under penalty of perjury and testified that it accurately reflected her knowledge. *Id.* at 243:7–244:9. Donziger then cross-examined Ms. Sullivan regarding both her declaration's substance and its drafting process. *See, e.g.*, *id.* at 245:9–271:8. Donziger claims that Ms. Sullivan testified that some of her proposed edits to the declaration were not incorporated, but she repeatedly testified that the declaration was true and correct when the editing process was complete, and at the end of her deposition she reaffirmed the declaration's accuracy under penalty of perjury. *Id.* at 255:19–22; 375:23–376:9. Ms. Sullivan also denied that her declaration was part of any "deal" with Chevron, and testified that Chevron had made no promises or guarantees to her. *Id.* at 291:24–293:16.

That Ms. Sullivan did not prepare the initial draft of the declaration is of no moment. "[M]ost declarations submitted in connection with civil litigation in state and federal courts are prepared by attorneys for clients and witnesses, and thereafter executed by the clients and/or witnesses under penalty of perjury." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 959 (C.D. Cal. 2015); *see also, e.g.*, *In re Somerset Reg'l Water Res., LLC*, No. BR 15-70766-JAD, 2018 WL 4587868, at *15 (Bankr. W.D. Pa. Sept. 24, 2018) ("[I]t is a common and acceptable practice for counsel to draft witness affidavits."); *Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, No. 16-CV-05314, 2016 WL 6092636, at *4 (N.D. Ill. Oct. 19, 2016) ("There is nothing unusual or improper about an attorney drafting a witness's declaration, so long as the witness reviews the declaration, agrees with its contents, and has a basis for his or her agreement . . . ."). What matters is Ms. Sullivan's steadfast commitment to the truthfulness and accuracy of her final declaration, which is supported by ample documentary evidence, *see* Dkts. 2116–1 to 2116–3.

**2. Drafts of Ms. Sullivan's declaration are protected work product.**  Donziger claims Chevron cannot assert work product protections over drafts of Ms. Sullivan's declaration, but he cites no authority for this.  Courts in the Southern District and elsewhere have routinely held that drafts of non-party witness declarations prepared by counsel for a party are protected work product. *See, e.g.*, *Inst. for Dev. of Earth Awareness v. People for Ethical Treatment of Animals*, 272 F.R.D. 124, 125 (S.D.N.Y. 2011) ("lawyer's draft[ ] [affidavits], which have not been adopted or executed by the non-party witness, do not lose their character as work product because a final executed version has been affirmatively used in the litigation"); *Kyoei Fire & Marine Ins. Co. v. M/V Mar. Antalya*, 248 F.R.D. 126, 155 (S.D.N.Y. 2007) ("creation of a [third party witness's] [a]ffidavit is at least subject to the attorney work product privilege. . . .  [T]he drafting of the [affidavit] reflected, *inter alia*, the mental processes and opinion of counsel."); *Securities Inv'r Protec. Corp. v. Bernard L. Madoff Inv. Securities LLC*, AP 08-01789 (SMB), 2017 WL 4685525, at *4 (Bankr. S.D.N.Y. Oct. 17, 2017); *cf. Preuss v. Kolmar Labs., Inc.*, 970 F. Supp. 2d 171, 178 n.7 (S.D.N.Y. 2013) ("drafts of . . . affidavits" are "a classic example of work product").  A non-party witness's changes to draft declarations prepared by counsel are also protected work product because they are "intertwined with the drafts prepared by" counsel.  *Securities Inv'r Protec. Corp.*, 2017 WL 4685525, at *4.

**3. The drafts are immune from discovery, but even if they were not, Donziger has not demonstrated a substantial need.**  Contrary to Donziger's assertion that the drafts contain merely "fact" work product, there is no question that the drafts of Ms. Sullivan's declaration reflect the mental impressions and opinions of counsel for Chevron and Ms. Sullivan.  *See Kyoei Fire & Marine Ins. Co.*, 248 F.R.D. at 155 (concluding that drafts of a non-party witness affidavit "reflected . . . the mental processes and opinion of counsel").  Because Rule 26(b)(3)(B) protects these

3

mental impressions and opinions from disclosure, the drafts are "immune" from production, even if Donziger could show he has a substantial need for the drafts. *PETA*, 272 F.R.D. at 125.

While the Second Circuit has not expressly determined whether Rule 26(b)(3)(B) affords an absolute privilege against discovery, it has held that even if Rule 26(b)(3)(B) were not an absolute bar to discovery, the party seeking discovery would "at a minimum" need to make a "highly persuasive showing." *United States v. Adlman*, 134 F.3d 1194, 1204 (2d Cir. 1998). Donziger's showing of need is in no respect persuasive, much less "highly persuasive."

Donziger was afforded an opportunity to question Ms. Sullivan for more than three hours regarding her declaration and the process through which it was drafted. There is no substantial need for drafts of declarations where, as here, "the witnesses have been available to be examined at deposition and no other special circumstance exist." *PETA*, 272 F.R.D. at 125. Ms. Sullivan was available to testify regarding her declaration and Donziger used that opportunity to obtain information regarding the drafting process. There is no need—let alone a substantial one—for the underlying drafts, and Donziger identifies no probative value from draft declarations that Ms. Sullivan has *not* adopted. Moreover, Donziger's own behavior also confirms that he has no substantial need. Donziger has already filed his opposition to Chevron's motion to hold him in contempt in which he made the same arguments regarding her credibility that he now claims he cannot make without the drafts of her declaration. *See* Dkt. 2122 at 2–8. Ultimately, he has very little dispute with the declaration's substance, which confirms that his true motive is to generate press releases embarrassing and intimidating Ms. Sullivan while falsely accusing Chevron of doing just that.[3]

---

[3] Donziger singles out two negative statements in the declaration for particular attack, but as Ms. Sullivan testified, these statements are true, and she testified at her deposition to the same effect. *See* Dkt. 2091-42 at 273:11–16 (testifying that Donziger did not disclose to Ms. Sullivan that he had created and controlled the FDA); *id.* at 280:7–281:5 (testifying that Ms. Sullivan was not aware whether Prof. Mahoney disclosed her common law husband's interest in the Ecuador judgment to the University of Calgary).

Dated: November 6, 2018

New York, New York

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

        /s/    Randy M.  Mastro          
Randy M. Mastro
Andrea E. Neuman
Anne M. Champion
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035
Email: RMastro@gibsondunn.com
Email: ANeuman@gibsondunn.com
Email: AChampion@gibsondunn.com

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520
Email: WThomson@gibsondunn.com

STERN, KILCULLEN & RUFOLO LLC
Herbert J. Stern
Joel M. Silverstein
325 Columbia Tpke, Ste 110
P.O. Box 992
Florham Park, New Jersey 07932-0992
Telephone:  973.535.1900
Facsimile:  973.535.9664
Email: hstern@sgklaw.com
Email: jsilverstein@sgklaw.com

*Attorneys for Chevron Corporation*

*Chevron Corp. v. Donziger*, No. 11 Civ. 0691 (LAK)

**Index of Exhibits to Chevron's Opposition to Donziger's Motion to Compel**

Exhibit 1: Amazon Defense Coalition – FDA, *Chevron Intimidation Led Boston Mother to Sign False Affidavit Attacking Landmark Ecuador Pollution Judgment*, CSR Wire, (Oct. 25, 2018), http://www.csrwire.com/press_releases/41480-Chevron-Intimidation-Led-Boston-Mother-to-Sign-False-Affidavit-Attacking-Landmark-Ecuador-Pollution-Judgment.

Exhibit 2: Steven Donziger (@SDonziger), Twitter (Nov. 1, 2018, 7:32 AM), https://twitter.com/SDonziger/status/1058003895035801601.

Exhibit 3: Steven Donziger (@SDonziger), Twitter (Oct. 25, 2018, 2:55 PM), https://twitter.com/SDonziger/status/1055578744084152321.