UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHEVRON CORPORATION,

        Plaintiff,

   v.

STEVEN DONZIGER, *et al.*,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11 Civ. 0691 (LAK)

**CHEVRON CORPORATION'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO HOLD STEVEN DONZIGER, THE LAW OFFICES OF STEVEN R. DONZIGER, AND DONZIGER ASSOCIATES, PLLC IN CONTEMPT OF COURT FOR THEIR FAILURE TO COMPLY WITH THE RICO AND DEFAULT JUDGMENTS AND THE APRIL 16, 2018 RESTRAINING NOTICE**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193 Telephone: 212.351.4000
Facsimile: 212.351.4035

STERN, KILCULLEN & RUFOLO LLC
325 Columbia Tpke, Ste 110
P.O. Box 992
Florham Park, New Jersey 07932-0992 Telephone: 973.535.1900
Facsimile: 973.535.9664

*Attorneys for Plaintiff Chevron Corporation*

**TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. ARGUMENT .............................................................................................................................. 2

    A. The Facts Establishing Donziger's Contempt Are Undisputed .............................. 2

    B. Donziger's Excuses for Non-Compliance with the RICO Judgment Are Baseless .................................................................................................................... 4

        1. The April 25, 2014 Order Has Never Excused Donziger's Conduct .......... 4

        2. Donziger Is In Contempt Even If His Own Interpretation of the Scope of the RICO Judgment Were Accurate ........................................... 5

    C. Chevron's Ongoing Discovery Continues to Uncover Additional Acts of Contempt ................................................................................................................. 8

    D. Donziger's Attacks on Ms. Sullivan's Declaration Have No Merit ....................... 9

    E. Contempt Sanctions Are Necessary to Coerce Compliance and Stop Donziger From Profiting from His Racketeering and Fraud ................................ 10

III. CONCLUSION ......................................................................................................................... 10

i

## TABLE OF AUTHORITIES

**Cases**

*Chevron Corp. v. Donziger*,
  974 F. Supp. 2d 362 (S.D.N.Y. 2014)..................................................................................10

*In re ConAgra Foods, Inc.*,
  90 F. Supp. 3d 919 (C.D. Cal. 2015) ......................................................................................9

*Jonas v. Estate of Leven*,
  116 F. Supp. 3d 314 (S.D.N.Y. 2015).....................................................................................7

*Lattanzio v. COMTA*,
  481 F.3d 137 (2d Cir. 2007)....................................................................................................2

*Luxottica Grp. S.p.A. v. Light in the Box Ltd.*,
  No. 16-CV-05314, 2016 WL 6092636 (N.D. Ill. Oct. 19, 2016) ............................................9

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
  624 F.3d 123 (2d Cir. 2010)....................................................................................................5

*United States v. Estate of Oxarango*,
  No. CIV. 97-0085-S-BLW, 2008 WL 5411719 (D. Idaho Dec. 24, 2008) .............................9

*United States v. Hawkey*,
  148 F.3d 920 (8th Cir. 1998) ..................................................................................................5

*United States v. Bornfield*,
  145 F.3d 1123 (10th Cir. 1998) ..............................................................................................5

*United States v. Gordon*,
  710 F.3d 1124 (10th Cir. 2013) ..............................................................................................5

*United States v. Marimon*,
  507 Fed. App'x 5 (2d Cir. 2012).............................................................................................5

*United States v. Torres*,
  703 F.3d 194 (2d Cir. 2012)....................................................................................................5

**Rules**

CPLR § 5222....................................................................................................................................4

**Constitutional Provisions**

U.S. Const., Amend. I.....................................................................................................................9

## I. PRELIMINARY STATEMENT

Donziger is an adjudicated racketeer, and the *evidence* Chevron has recently obtained lays bare the many ways Donziger continues to flout this Court's judgments. On this, Donziger has no real defense. While his opposition brims with baseless attacks on this Court, Chevron, and its counsel, Donziger never disputes the essential facts establishing his contempt. He does not deny—and in many cases admits—these dispositive facts, all of which are supported by record evidence:

- Donziger says he is "proud" that he has raised at least $2.4 million by selling interests in the Ecuadorian judgment since March 2014. Opp. at 15–16; Dkt. 2115-1, Ex. 2.

- Donziger admits that he often transferred investor funds to and from his personal accounts (Opp. at 17) and does not dispute Chevron's accounting expert John Slavek's calculations that he and his wife personally retained at least $695,000 of investor funds. Slavek Decl. (Nov. 7, 2018) at ¶ 10.

- Donziger does not dispute he used investor funds to pay credit card bills, a bar tab, gym memberships and for extensive travel to Paris, London, Portugal, Punta Cana, Morocco, and elsewhere. *Id.* ¶¶ 46, 52; Dkt. 2115-1, Ex. 7-A; Ex. 114, 115.

- Donziger does not dispute that he converted two personal loans to equity in the Ecuadorian judgment, and repeatedly used shares in the judgment to pay multiple personal creditors. Dkt. 2116 (Sullivan Decl.) ¶¶ 36–40; Dkt. 2116-1, Ex. 4; Dkt. 2116-2, Ex. 28; Dkt. 2114-7, Ex. 49; Dkt. 2114-8, Ex 66; Slavek Decl. (Nov. 7) and Exs. 10, 10.1 and 10.2 thereto.

- Donziger does not dispute that despite having raised in excess of $39 million (Dkt. 2115-1, Ex. 9), the LAPs have repeatedly claimed to foreign enforcement courts that they lack funds. Dkt. 2114-4, Exs. 32, 33, 34.

- Donziger does not dispute, and in fact recently "stipulated," that he used investor funds and shares in the Ecuadorian judgment to further his pressure campaign against Chevron, including to compensate public supporters such as Greenpeace co-founder Rex Weyler and Pink Floyd's Roger Waters (Dkt. 2116-1, Ex. 3; Dkt. 2114-7, Exs. 43, 45, 48, 49, 53), and to fund a conference to "put enormous pressure on Chevron." Dkt. 2114-6, Ex. 41; Dkt. 2114-8, Exs. 64–65; Ex. 93 at 175:24–176:4.

- Donziger does not dispute he had investors route funds originating from New York through Canada before reaching Donziger back in New York at his own direction in an attempt to obscure the provenance of the funds. Dkt. 2115-1, Ex. 3-A.

This *evidence*—and much more—is why Donziger is so desperate to shut down Chevron's

discovery—because it shows that for the past four years Donziger has acted as if the RICO Judgment did not exist. But this is a conceit that Donziger indulged at his peril. This Court should hold Donziger in contempt and issue tough measures to end his defiance.

## II.   ARGUMENT

### A. The Facts Establishing Donziger's Contempt Are Undisputed

As Chevron's motion explained, Donziger violated Paragraph 1 of the RICO Judgment by raising $2.4 million in investor funds by selling interests in the Ecuadorian judgment and failing to "transfer and forthwith assign" these funds, which are traceable to the Ecuadorian judgment, to Chevron, and by failing to assign his personal 6.3% interest under his 2017 retainer agreement to Chevron. Mot. at 23–24. Donziger also violated Paragraph 5 by selling interests in the Ecuadorian judgment and profiting personally from those funds, using "shares" in the Ecuadorian judgment as a form of currency to pay personal creditors, as well as by entering into the 2017 FDA retainer agreement. *Id.* at 26–27. Donziger's opposition confirms that the facts establishing these violations of the RICO Judgment are not in dispute.

Donziger admits that, since the RICO Judgment was issued in March 2014, he has engaged in "fund-raising efforts" with a goal to "just get as much as [he] can get." Opp. at 14–15. He does not dispute that he made a concerted effort to recruit investors, offering a going rate of $250,000 for 1/8 of a percentage point in the Ecuador judgment. Mot. at 5 (citing Dkt. 2114-2, Ex. 13); *see also* Ex. 94. Donziger also does not dispute that he has received $1,525,940 traceable to the Ecuadorian judgment and that he has failed to transfer any of those funds to Chevron.

Donziger does not dispute that he has profited from the Ecuadorian judgment by using it to pay personal debts, including most recently to obtain $14,000 in services from a psychotherapist and executive coach. Ex. 95; *see also* Ex. 93 at 180:13–184:16. As Chevron noted in its motion, Donziger used or attempted to use interests in the Ecuadorian judgment or investor funds derived

2

therefrom to pay off personal debts, including a $250,000 personal loan from Glenn Krevlin, a second personal loan by a different creditor (David Sherman), and his personal counsel. Mot. at 18–19; *see also* Ex. 96. Donziger fails to dispute that he used funds traceable to the Ecuadorian judgment to pay for many personal expenses (a $14,040 gym membership, a $5,225.72 bar tab, a $2,578 bill to Acme Fine Wines, his bar counsel, and his wife's $54,037.01 credit card bill), and he does not deny that he transferred $297,000 in investor monies to his wife. Mot. at 7; Dkt. 2115 (Slavek Decl.) ¶¶ 46, 52; Dkt. 2115-1, Ex. 7-A. While Donziger asserts that his payments to himself were "appropriate" because he was "authorized to draw down funds to satisfy certain debts and arrears" (Opp. at 17), no document evidences any authorization to pay vaguely referenced "debts" or "arrears." Donziger's retainer agreements do not authorize these payments or any "monthly" payment. Mot. at 8–9.

Donziger also does not dispute that he used investment proceeds to fund his extortionate pressure campaign against Chevron. *See* Mot. at 14–18. He does not dispute that he used shares in the Ecuadorian judgment to compensate (among others) his associate Aaron Page (who works for Donziger on this matter and multiple other personal matters[1]), his spokesperson Karen Hinton, and public supporters such as Canadian activist Phil Fontaine, Venezuelan-American activist Eva Golinger, and Roger Waters, and used investor monies traceable to the judgment to pay shareholder activist Simon Billenness and Greenpeace co-founder Rex Weyler. *Id.* at 16–17. Donziger also does not dispute that he used investment proceeds to fund a conference in Alberta, Canada organized by Kathleen Mahoney, which is, as Donziger says, designed to "put enormous pressure on Chevron." Mot. at 17–18; Dkt. 2114-6, Ex. 41; Dkt. 2114-8, Exs. 64–65.

Nor does Donziger dispute that he has failed to transfer to Chevron the interest granted to

---

[1] *See, e.g.*, Ex. 97 (Aaron Marr Page email: "I have a retainer agreement to provide legal advice to Mr. Donziger"); Ex. 98 (IACHR petition filed by Aaron Marr Page on Donziger's behalf).

3

him under his 2017 FDA retainer agreement, except to claim that the interest is not separable from the Amazonia shares that Donziger transferred in October 2018. Donziger Decl. ¶ 10.[2] But the agreement on its face grants Donziger a new interest in the Ecuadorian judgment (Dkt. 2114-2, Ex. 23), and the Court should compel Donziger to transfer that new interest to Chevron.

Finally, Donziger makes no attempt to address his violation of the restraining notice Chevron served under CPLR § 5222. Mot. at 32–33. Donziger's opposition does not mention the notice at all, nor does he rebut any of the facts that show he has violated the notice, including that he "has continued to transfer funds from four of his five open TD Bank accounts and the CWP Account" and that he transferred "$50,000 to Page on May 10, 2018." *Id.* at 33.

### B. Donziger's Excuses for Non-Compliance with the RICO Judgment Are Baseless

Donziger claims that this Court's April 25, 2014 Order excused his activities, until a "sweeping understanding" of the meaning of "traceable" supposedly "emerged" in August 2018. Opp. at 8–9. But the April 25, 2014 Order never excused Donziger's conduct, and the August 15, 2018 Order merely confirmed what has been the case since March 2014: Donziger is required to transfer all property "traceable" to the Ecuadorian judgment to Chevron. In any event, Donziger's conduct fails to comply with even his flawed interpretation of the RICO Judgment.

#### 1. The April 25, 2014 Order Has Never Excused Donziger's Conduct

As Chevron has already explained, nothing in the April 25, 2014 Order (Dkt. 1901) authorized Donziger to retain funds traceable to the Ecuadorian judgment, nor to "monetize or profit from" it. *See* Mot. at 27–31. That order confirmed that Donziger could receive retainer payments pursuant to his then-existing retainer agreements provided the funds used to make those payments were not "traceable to the [Lago Agrio] Judgment." Dkt. 1901 at 7. But Donziger has not received

---

[2] Chevron objects to Donziger's Declaration in its entirety on the basis that it relates almost exclusively to topics about which Donziger refused to answer questions at his June 25, 2018 deposition. *See* Champion Decl. at ¶ 23.

4

authorized retainer payments—he has hawked the Ecuadorian judgment by offering 5000% returns and then helped himself to investor funds at will. His use of the Ecuadorian judgment as a personal piggy bank is not the receipt of a "retainer payment" and, even if it were, the monies Donziger paid himself are directly traceable to the Ecuadorian judgment—violating both the plain text of the RICO Judgment and the Court's discussion of it in the April 25, 2014 Order.

This can come as no surprise to Donziger. As the Court explained in its August 15, 2018 Order, Paragraph 1's reference to "property, whether personal or real, tangible or intangible, vested or contingent" is "perfectly clear," particularly since the concept of traceability is "extremely well established in the law." Dkt. 2072 at 6. The Court then cited numerous cases holding that money is "traceable to a given source, event or activity if its acquisition is attributable to that source, event, or activity," or if the activity "enabled defendant to acquire the property." *Id.* (citing *United States v. Gordon*, 710 F.3d 1124, 1135 n.13 (10th Cir. 2013); *United States v. Bornfield*, 145 F.3d 1123, 1135 n.13 (10th Cir. 1998); *United States v. Torres*, 703 F.3d 194, 196 (2d Cir. 2012); *United States v. Marimon*, 507 Fed. App'x 5, 7 (2d Cir. 2012); *United States v. Hawkey*, 148 F.3d 920, 929 (8th Cir. 1998)). The RICO Judgment was thus clear and unambiguous from the outset, and Donziger's attempt to "read an ambiguity into" an order to justify his contemptuous behavior is unavailing. *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 145 (2d Cir. 2010). If Donziger believed his conduct to be aboveboard, he would not have gone to such lengths to mask his role by, among other things, routing funds through Canadian counsel (Mot. at 6), hiding his identity as the "U.S. representative" (Ex. 99), and destroying evidence (Dkt. 2116-2, Ex. 21).[3]

**2. Donziger Is In Contempt Even If His Own Interpretation of the Scope of the RICO Judgment Were Accurate**

---

[3] Newly discovered evidence reveals that the LAPs' Canadian counsel, Alan Lenczner, reportedly described as "irregular" Donziger's structuring of investments such that they were first sent to the Lenczner firm, and then transferred to Donziger. Ex. 101.

5

Even if Donziger were correct that the April 25, 2014 Order permitted him to receive funds traceable to the Ecuadorian judgment and sell interests in the judgment purportedly held by the FDA, Donziger would still be in contempt of the RICO Judgment for multiple reasons.

First, Donziger asserts that the April 25, 2014 Order authorized him to receive retainer payments so long as they did not stem from "collections" on the Ecuadorian judgment. Opp. at 9. But Donziger's attempt to narrow the RICO Judgment to collections received from enforcement of the Ecuadorian judgment is inconsistent with the plain language of Paragraph 1, which encompasses "all property . . . *traceable to the Judgment* or the enforcement of the Judgment," not only property traceable to "collections" via "enforcement of the Judgment" (Dkt. 1985 ¶ 1 (emphasis added)), and with Donziger's own admission that a "collection" can occur by means other than enforcement (Ex. 100 at 20). The investor funds that Donziger raised are functionally collections on Donziger's own share of the Ecuadorian judgment, as they resulted in dilution of his interest in the Ecuadorian judgment in exchange for money that he received and used for his own personal benefit. Mot. at 29. Donziger responds that there is no evidence of any "bargaining related to the dilution of his interest" (Opp. at 11), but the dilution is the inherent result under the terms of the Intercreditor Agreement and the 2011 retainer agreement, because the new interest would take priority over Donziger's, and because the 2011 retainer agreement requires a pro rata reduction in Donziger's share to accommodate a new funder. Mot. at 29; Dkt. 2057 at 10.

Second, even if the April 25, 2014 Order permitted Donziger to receive payments for legal services from funds traceable to the Ecuadorian judgment, there is no evidence that he has provided any bona fide legal services to anyone in exchange for the monies he has paid himself since 2014. Donziger is not counsel of record in any proceeding to enforce the Ecuadorian judgment, ample evidence shows that he has no right to represent the LAPs, and the only entity he purports to

6

represent—the FDA—is not and has never been a party to any enforcement proceeding anywhere in the world. In fact, the LAPs and UDAPT have stated that they have not authorized Donziger's use of funds, and the LAPs have claimed indigent status in the enforcement actions—even as hundreds of thousands of dollars passed through the accounts of Donziger and the Lenczner firm. Mot. at 12–14. Nor is there any evidence of Donziger's claimed outstanding "arrears" to justify his money grab. In addition to having no authorization for a monthly salary, Donziger was already paid approximately $200,000/year by Kohn from 2004 to 2009 and from 2010 to 2014 took over $3.5 million in investor funds. Dkt. 2115 (Slavek Decl.) ¶ 24; Ex. 102 at 2488:8–11).

There is also no evidence that the FDA has authorized Donziger's payments to himself. In approving investment agreements in 2016, the FDA purported to approve "expenses incurred to enforce the 'Aguinda v. Chevron' judgment in Canada," not payments to Donziger.[4] Exs. 103–105. Numerous investors have now testified their funds were intended for Canadian enforcement costs only. Ex. 107 at 63:15–65:5. Moreover, in 2017, when Donziger needed to prove his authority to act on behalf of the FDA for an investor "hot on our tail," Donziger did not know his authority or how to document it. Ex. 108 ("Aaron, we need to do a deep dive into my authority from the FDA.").

Third, Donziger's claim that he has sold only the FDA's shares in the Ecuadorian judgment is false. As Chevron's Ecuadorian law expert Dr. Santiago Velázquez explained (Dkt. 2117), the

---

[4] Just as investments authorized for Canada went to New York, the FDA's approval of Donziger-recommended judgment interests to his service providers was based on false representations. *See* Ex. 113 at 269:6-17. *See also* Slavek Decl. ¶¶ 4–9 and Exhibits 10, 10.1 and 10.2 thereto; *United States v. Hansen*, 277 F. App'x 692, 693 (9th Cir. 2008) (unpublished) (holding that the district court did not abuse its discretion by striking a declaration when the declarant refused to answer questions regarding the subject matter of the declaration at his deposition and failed to appear for a subsequent deposition); *United States v. Parcels of Land*, 903 F.2d 36, 43 (1st Cir. 1990) (holding that the district court did not err by striking a declaration when the declarant invoked the Fifth Amendment and refused to answer questions at his deposition).

FDA had no right to sell interests in the judgment. Donziger fails to offer responsive expert testimony, which "remains the basic mode of proving foreign law," *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 330 (S.D.N.Y. 2015) (citations omitted). And Donziger's lay interpretation of Ecuadorian law—that selling interests in the Ecuadorian judgment is a "necessary cost" of remediating the alleged environmental damage—is absurd on its face. Opp. at 12. The FDA's role as an administer of third-party funds does not permit it to "pay or promise to pay trust monies to third parties that have financed the litigation," which is exactly what the investment agreements did. Velazquez Reply Decl. at 1-2. Those costs are limited to "contracting of the persons in charge of carrying out the measures of reparation" (Dkt. 2117 at 4 (quoting Ecuadorian judgment))—i.e., payment for the costs of actual remediation. *Id.* In any event, Donziger has sold nearly 40% of the judgment, far beyond the 10% share Donziger appears to claim, falsely and without citing any authority, the FDA could sell. Mot. at 31.

Finally, even Donziger concedes that after entry of the Default Judgment on April 23, 2018, he could not sell any purported FDA interests in the Ecuadorian judgment. *See* Dkt. 1985 ¶¶ 1, 4, 7; Mot. at 31 n.11; Ex. 109 at 71:5–21). Yet newly-obtained evidence shows that Donziger has continued to solicit investors since entry of the Default Judgment. Exs. 110, 111.

### C. Chevron's Ongoing Discovery Continues to Uncover Additional Acts of Contempt

While Donziger argues that the purpose of Chevron's third-party discovery efforts are to "intimidat[e]" third parties (Opp. at 2), the results of those efforts put the lie to that claim. In fact, the more discovery Chevron conducts, the more evidence of Donziger's violations of the RICO Judgment emerges. *See* Dkt. 2115 (Slavek Decl.). For example, Ms. Sullivan's depositions, document production and declaration provided significant insight into Donziger's contemptuous activity. And as discussed above, Chevron has obtained additional probative information from other

8

third parties since the filing of its motion for contempt on October 1, 2018.[5] Chevron is entitled to this discovery, which is bearing fruit.

Donziger's contention that he has "long since offered Chevron" all pertinent financial information (Opp. at 2) is false. In fact, Donziger has ignored Chevron's discovery requests and refused to comply with this Court's post-judgment discovery orders. His obstruction is well-documented, including his recent statement to the Court that he is prepared to "take a contempt sanction in this second-layer discovery context" rather than comply with the Court's discovery orders. *See* Dkt. 2118 at 3; *see also* Ex. 112 at 47:11–13, 48:3–5.[6]

### D. Donziger's Attacks on Ms. Sullivan's Declaration Have No Merit

Donziger spends nearly a third of his opposition attacking the drafting of Ms. Sullivan's declaration—ignoring that there was nothing improper about Chevron's attorneys working with Ms. Sullivan to put her testimony on paper. In fact, "most declarations submitted in connection with civil litigation in state and federal courts are prepared by attorneys for clients and witnesses[.]" *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 959 (C.D. Cal. 2015).[7] *See* Dkt. 2216.

---

[5] For example, Chevron has learned that Donziger has continued to solicit investors since entry of the Default Judgment, Exs. 110, 111; Donziger has used his personal interest in the Ecuadorian judgment to pay for $14,000 in consulting services from a psychotherapist, Ex. 95 (JVM 011236–37); and Alan Lenczner reportedly described as "irregular" the transfer of investor funds first to Lenczner's firm and then to Donziger, Ex. 101.

[6] Donziger continues to argue that Chevron's discovery requests comprise a "SLAPP-style attack" meant to suppress the FDA's purported First Amendment rights. Opp. at 2 n.1. This Court has already rejected this argument, noting that stopping Chevron's discovery efforts would "prevent or interfere substantially with" "extremely substantial interests in seeing to it that the money judgment of this federal court is satisfied and the equitable remedies contained in its judgment [are] complied with." Dkt. 2045 at 32–35. The Court has also previously recognized that the "First Amendment right[] to petition the United States, state and local government . . . . does not apply where . . . a party"—such as the FDA here, whose interests Donziger purports to represent—"petitions a *foreign* government." Dkt. 1706 at 3; *see also* Dkt. 2045 at 22–23 n.52.

[7] *See also Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, No. 16-CV-05314, 2016 WL 6092636, at *4 (N.D. Ill. Oct. 19, 2016) ("[t]here is nothing unusual or improper about an attorney drafting a witness's declaration, so long as the witness reviews the declaration, agrees with its contents, and has a basis for his or her agreement"); *United v. Estate of Oxarango*, No. CIV. 97-0085-S-BLW, 2008 WL 5411719, at *5 (D. Idaho Dec. 24, 2008) ("it is widely recognized that affidavits and declarations are often written by attorneys and not the declarant or affiant.").

9

Donziger's criticisms also ignore that Ms. Sullivan's declaration is corroborated by numerous documents attached to it, which show, among other things, that Donziger solicited investors in exchange for an interest in the Ecuadorian judgment (Dkt. 2116-1, Ex. 18); destroyed evidence of his misconduct and encouraged others to do the same (Dkt. 2116-2, Ex. 21); paid off personal loans by granting creditors an interest in the Ecuadorian judgment (Dkt. 2116-2, Ex. 28); and pocketed investors' funds as payment for bogus invoices (Dkt. 2116-3, Ex. 34). The documentary evidence alone establishes Donziger's contempt.

### E. Contempt Sanctions Are Necessary to Coerce Compliance and Stop Donziger From Profiting from His Racketeering and Fraud

Donziger has demonstrated time and again that absent significant sanctions, he will continue to act as if the RICO Judgment does not exist. Indeed, the same racketeering conduct that the Court's injunction was designed to remedy continues today unabated. Donziger has destroyed evidence (Dkt. 2058-14), and has continued the "pressure campaign" that this Court has conclusively found extortionate. Mot. at 14–18, 34; *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 577–80 (S.D.N.Y. 2014). Donziger's only response is hollow cries that his pressure campaign to extort Chevron to satisfy a judgement obtained through bribery is tantamount to "advocacy."

As for the remedies Chevron has requested, Donziger does not dispute that the sanctions that Chevron seeks are appropriate. He does not contest that Chevron has been injured and that he is required to transfer $1,525,940 in funds traceable to the Ecuadorian judgment to Chevron, as well as his new interest in the judgment, nor challenge submitting quarterly reports.

### III.   CONCLUSION

The Court should find that Donziger is in contempt of the RICO and Default Judgments and the April 16, 2018 Restraining Notice, impose coercive sanctions to compel Donziger's compliance, and award compensatory relief.

| | |
|---|---|
| Dated: November 7, 2018 | Respectfully submitted, |
| New York, New York | GIBSON, DUNN & CRUTCHER LLP |

/s/ Randy M. Mastro

Randy M. Mastro
Andrea E. Neuman
Anne M. Champion
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035
Email: RMastro@gibsondunn.com
Email: ANeuman@gibsondunn.com

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520
Email: WThomson@gibsondunn.com

STERN, KILCULLEN & RUFOLO LLC

Herbert J. Stern
Joel M. Silverstein
325 Columbia Tpke, Ste 110
P.O. Box 992
Florham Park, New Jersey 07932-0992
Telephone:  973.535.1900
Facsimile:  973.535.9664
Email: hstern@sgklaw.com
Email: jsilverstein@sgklaw.com

*Attorneys for Chevron Corporation*