**STEVEN R. DONZIGER, ESQ.**

245 WEST 104TH STREET, SUITE 7D
NEW YORK, NEW YORK 10025

212-570-4499 (O)
917-566-2526 (CELL)

February 15, 2019

**VIA ECF**

Honorable Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

    RE:    *Chevron v. Donziger*, Case No. 11 Civ. 691 (LAK)

Dear Judge Kaplan:

Without withdrawing any of my foundational objections to what I believe is the harassing and SLAPP-style nature of Chevron's discovery spree targeting me and others who support the victorious Ecuadorian rainforest plaintiffs, nor prejudicing my position that the scope of the injunction under which Chevron seeks to hold me in contempt must be articulated and reviewed on appeal (in a civil contempt posture, if necessary) before sensitive and constitutionally harmful discovery is allowed, I write to express my concerns about the possible appointment of Ondrej Krehel as Special Master in this matter.[1]

It seems that Your Honor might wish to use the appointment of Mr. Krehel to address my concerns about the possible ethical failings and resulting conflicts of interest regarding Mr. Spencer Lynch and the Stroz Friedberg firm, in light of Lynch's conspicuous failure to identify or produce any evidence in tension with Alberto Guerra's invented testimony and despite the massive scrutiny of Guerra's records and coaching of Guerra by adversary counsel that Lynch and Stroz Friedberg were involved in. But Mr. Krehel *also* worked at Stroz Friedberg, including, it appears, during a critical period in late 2012 when Stroz Friedberg was engaged in the core work of investigating Guerra's digital records for corroborating evidence. I understand that Mr. Mastro has flatly asserted with no supporting evidence that Mr. Krehel's firm "has cleared conflicts in this matter," but given the flagrant ethical failings of the Gibson Dunn firm and Stroz Friedberg already mixed up in this issue, I don't understand why more assurance hasn't been provided—such as a

---

[1] The law license of the undersigned was suspended on an interim basis without a hearing in July 2018 based on Your Honor's still-disputed findings from 2014 which have been rejected by 16 separate appellate judges in Ecuador, including by the country's entire Constitutional Court in a decision issued last year. I am currently challenging the decision to suspend my license on various grounds, including the fact Your Honor's findings are erroneous, decontextualized, or have been rendered not credible by new evidence.

Hon. Lewis A. Kaplan
February 15, 2019
Page 2 of 3

declaration from Mr. Krehel himself—to clearly establish that Mr. Krehel was not been involved with prior Stroz Friedberg work in this case.[2]

Even if Mr. Krehel was not individually involved in Stroz Friedberg's prior work with Chevron, his sense of loyalty to his former firm—and perhaps specifically to Mr. Lynch as a former colleague—could still raise serious conflict of interest issues. Mr. Krehel should thus not only be required to establish that he did not personally work on the Chevron matter, but he should also describe the extent of his personal relationship with Mr. Lynch, whether or not he has taken referrals from Stroz Friedberg in the past, and how exactly he was referred to Gibson Dunn in this case. If Mr. Krehel lacks information on the last point, it ought to be provided in a declaration by Mr. Mastro. If, as is likely, Stroz Friedberg itself referred Gibson Dunn to Mr. Krehel, its former employee, then I think the idea that Mr. Krehel could legitimately act as a "neutral" in this context is spurious. A Special Master cannot be a "fig leaf" neutral. There are literally dozens of qualified neutrals who could be appointed by the Court who have no connection to this case, to the Gibson Dunn firm, or to any other entity (such as Kroll) connected to the problematic Guerra testimony.

On another issue relating to costs to pay for any Special Master, I remind the Court that I am proceeding *pro se*. To be clear, as a human rights advocate with limited means, I am not in a position to pay for what surely will be substantial new fees for any Special Master, particularly in light of the exorbitant (and in my view entirely unjust) $813,000 costs order already imposed on me by the Court after a non-jury "criminal" trial where I was denied my Seventh Amendment rights, among other procedural infirmities outlined in my appeal and in other public documents. The earlier costs order was based on the work of a Special Master, Max Gitter, who received still-undisclosed secret payments from Chevron into his private bank account totaling more than $1 million.[3] Before appointing a new Special Master, it is absolutely critical that this Court order Chevron and Mr. Gitter to disclose all such payments made in this case or any related matter, including the discovery matters that Chevron used to target supporters of the Ecuadorians and to generate evidence used in the RICO proceeding.

---

[2] More details of some of the ethical failings of Chevron and the Gibson Dunn firm as regards the company's paid witness Guerra are explained in a referral letter sent by the undersigned to the Department of Justice and the offices of three U.S. Attorneys, dated November 17, 2017, and available at https://chevroninecuador.org/assets/docs/2017-11-09-adc-doj-letter.pdf.

[3] I note that the Court previously failed to act on the undersigned's requests to take discovery of Mr. Gitter to determine the source, extent, and amount of the secret payments he received from Chevron for his work as a court official on this matter. As the Court knows, Mr. Gitter has been criticized in various filings for his pattern of making pro-Chevron rulings and his nasty attitude toward the undersigned during depositions prior to trial. Given that the Court put forth Mr. Gitter as Special Master based on his qualifications as an experienced lawyer practicing out of a major corporate law firm, his subsequent receipt of substantial and undisclosed payments from Chevron not into his law firm but into a *personal* bank account raises serious and very disturbing questions. The Court should stop stonewalling requests for information about these highly suspicious payments and order disclosure about *all circumstances* surrounding payments to its first Special Master *before* appointing a second Special Master who also has several unanswered questions regarding potential conflicts and his possible connections to the Chevron litigation team.

Hon. Lewis A. Kaplan
February 15, 2019
Page 3 of 3

In light of this context, I request that the Court make clear in any order appointing a new Special Master that Chevron will pay 100% of the fees for the work of this individual and her staff. Any claim that any portion of the fees for a Special Master should be allocated to me personally would be most inappropriate given that I have made principled and Constitutionally-grounded foundational objections based on the protection of my privacy rights and the need to prevent the invasion of various privileges held by me and my clients in Ecuador. As you know, Chevron's earlier costs order as regards Mr. Gitter's work resulted in the freezing of my bank accounts. I also face a pending Chevron motion to impose roughly $32 million in additional costs related to reimbursement of legal fees even though such a motion appears barred by squarely-held precedent in this Circuit.

It would in my view be most unseemly for this Court to use is administrative power to end-run my First Amendment and Seventh Amendment rights by imposing costs or *threatening* to impose costs – especially at a time when the legal dispute between the Ecuadorians and Chevron continues in Canadian courts in the context of a judgment enforcement action. In that action, the findings of this court are being challenged with compelling evidence that was either excluded by Your Honor during the RICO trial or emerged after it ended and therefore was never considered.[4]

                                                            Sincerely,

                                                            _____/ s /_____

                                                            Steven R. Donziger

---

[4] I remind the Court that the Second Circuit's 2016 decision in this matter makes clear that enforcement actions in Canada and elsewhere are entirely permissible. *Chevron Corp. v. Donziger*, 833 F.3d 74, 151 (2d Cir. 2016) (affirming on the basis that "[t]he relief tailored by the district court, while prohibiting Donziger and the LAP Representatives from seeking enforcement of the Ecuadorian judgment in the United States, does not invalidate the Ecuadorian judgment and does not prohibit any of the LAPs from seeking enforcement of that judgment anywhere outside of the United States.").The Canada Supreme Court also ruled in 2015 that it was entirely permissible. *Chevron Corp. v. Yaiguaje*, 2015 SCC 42 (allowing case to go forward because "[c]omity . . . militates in favour of recognition and enforcement," "[l]egitimate judicial acts should be respected and enforced, not sidetracked or ignored," and "no unfairness results to judgment debtors from having to defend against recognition and enforcement proceedings [because] through their own behaviour and legal noncompliance, the debtors have made themselves the subject of outstanding obligations.").