UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHEVRON CORPORATION,

                       Plaintiff,

            -against-

STEVEN DONZIGER, et al.,

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11-cv-0691 (LAK)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3|5|2019

## MEMORANDUM RE FORENSIC INSPECTION PROTOCOL

LEWIS A. KAPLAN, *District Judge.*

        The background of this case is well known and detailed in scores of opinions and orders so the Court will not begin at Square One. In a nutshell, Steven Donziger, a now suspended New York lawyer,[1] procured a $8.6 billion Ecuadorian judgment against Chevron Corporation ("Chevron"). This Court concluded that Donziger and others procured the Ecuadorian judgment by fraud.[2] It granted equitable relief and ultimately taxed costs in excess of $800,000 and entered a

---

[1]     *Matter of Donziger*, 163 A.D.3d 123, 80 N.Y.S.3d 269 (1st Dept. 2018).

[2]     *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362 (S.D.N.Y. 2014), *aff'd*, 833 F.3d 74 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2268 (2017).

    An arbitration panel under the auspices of the Permanent Court of Arbitration at the Hague and constituted under the Bilateral Investment Treaty between the United States and Ecuador reached the same conclusion in a lengthy award rendered after extensive hearings. *Matter of Chevron Corp. v. Republic of Ecuador*, PCA Case No. 2009-23, Second Partial Award on Track II (Aug. 30, 2018) [DI 2082-1] at ¶¶ 5.85, 5.164, 5.229, 5.231. The courts of Brazil and Argentina dismissed claims for enforcement. *Aguinda v. Chevron Corp.*, No. 97260/2012 (Arg. Ct. Civ. App. July 3, 2018); Ted Folkman, *Lago Agrio Court: STJ*

supplemental money judgment.

Chevron now is attempting to conduct post-judgment discovery both to locate Donziger assets that it may reach to satisfy the money judgment and to determine whether Donziger has violated the terms of the permanent injunction entered against him in 2014. Donziger in virtually all respects has refused to cooperate. The matter now is before the Court on one of the matters relating to that refusal.[3]

The Court today issued a protocol for the imaging and examination of Donziger's electronic devices, storage media and other materials. That protocol has been developed after careful consideration. It is far less intrusive than Chevron first proposed.

The Court writes to provide the background of this step and to respond to some of the points Donziger has made. Above all, however, it is necessary to bear in mind that the imaging and examination of Donziger's electronic devices has been necessitated only by his obdurate refusal to make any serious, good faith effort to produce the documents he has been ordered to produce. He has brought this on himself.

---

*Rejects Ecuadoran Judgment*, LETTERS BLOGATORY (Dec. 1, 2017), https://lettersblogatory.com/2017/12/01/lago-agrio-court-stj-rejects-ecuadoran-judgment /#more-25727); *see also* Ted Folkman, *Lago Agrio: LAPs Abandon Recognition and Enforcement Action in Brazil*, LETTERS BLOGATORY (Sept. 25, 2017), https://lettersblogatory.com/2017/09/25/lago-agrio-laps-abandon-recognition-and-enforc ement-effort-in-brazil/. In Canada, the only other country in which enforcement of the judgment has been sought, the Ontario Superior Court of Justice granted summary judgment dismissing claims against both Chevron and its indirectly held, seventh tier subsidiary, Chevron Canada, and appeals from that decision have been dismissed by the Ontario Court of Appeal. *Yiaguaje v. Chevron Corp.*, 2017 ONSC 135, 2017 CarswellOnt 868 (2017), *appeals dismissed*, 141 O.R. (3d) 1, 2018 ONCA 472, CarswellOnt 14968, *app. for leave to appeal filed*, 2018 CarswellOnt 14968 (S.C.C. June 25, 2018).

[3]

Two contempt applications are *sub judice* as well.

*The Current Posture of the Case*

Many months ago, Chevron served Donziger with a request for the production of documents.  After motion practice, the Court modified it in some respects and otherwise narrowed several of the document requests.

On August 16, 2018, Chevron filed its second motion to compel Donziger to comply *inter alia,* with the narrowed document requests.[4]  It pointed out, among other things, that Donziger had not complied, or even sought to comply, in any material way.  Indeed, it asserted that Donziger had not even made the most rudimentary search for responsive documents and that he had admitted that he deliberately had withheld many.[5]  The motion asked that Donziger be required to produce his electronic devices for forensic imaging thus permitting a proper search for responsive documents.[6]

Donziger's opposition to Chevron's motion did not deny Chevron's assertions regarding his non-compliance.  Its only response to the request to image his devices was one conclusory sentence.[7]  The Court granted Chevron's motion on October 18, 2018, stating:

> "Given Donziger's stonewalling of post-judgment discovery and the other circumstances described in Chevron's memorandum, it is appropriate that Donziger's electronic devices be imaged and examined for any responsive documents that Donziger has not thus far produced under appropriate safeguards of the interests of all parties. The parties, on or before October 26, 2018, shall agree upon or, in default

---

[4]

DI 2073.

[5]

*Id.* at 3.

[6]

*Id.* at 3-4.

[7]

DI 2077 at 4 ("Chevron's request that forensic images be taken of my electronic devices is drastically intrusive and unreasonable, supported by no evidence whatsoever, and must be denied.")

4

of an agreement, notice for settlement an order providing for the selection,
compensation and precise duties of a third party to whom Donziger will be obliged
to produce for forensic imaging all computers and electronic, optical and magnetic
storage devices and media within his possession, custody or control (a 'Third Party').
Any such Third Party, at a minimum, will be obliged to retain any forensic images
in confidence pending further order of the Court."[8]

*The Development of the Forensic Protocol*

On October 26, 2018, Chevron reported to the Court that it had met with Donziger

as the Court contemplated, but that Donziger had "refused to engage in any substantive discussion

regarding either issue during the scheduled meet and confer teleconference (which was delayed twice

at his request).  Instead, he insisted that he was going to send Chevron's counsel an email."[9]

Donziger's subsequent email stated that he refused to cooperate and that he would go into contempt

in an effort to obtain a ruling on his contention, previously rejected by the Court, that Chevron was

engaged in a "constitutionally infirm discovery rampage targeting financial supporters and others of

the Ecuadorians that is clearly designed to dry up funding for the case and to intimidate those who

support both the litigation and the broader corporate accountability campaign . . . ."[10]  Chevron

accordingly submitted its own proposal for the conduct of the forensic imaging and examination of

Donziger's materials.

The Court held a conference on Chevron's proposed protocol on January 8, 2019 at

---

[8]     DI 2108 ¶3.

[9]     DI 2119 at 1.

[10]    DI 2119-2 at 3.

which it raised several questions and urged Chevron to reconsider its proposal. Donziger was afforded the opportunity to address the details of Chevron's proposal, but insisted on repeating his contention that he did not violate the injunction, a question *sub judice*, that the Court should so rule, and that Chevron's efforts to obtain post-judgment discovery of any kind are illegitimate, a position the Court already had rejected.[11] The Court made clear that it would decide the contempt motions in due course and that it would not stay the post-judgment discovery.[12] When Donziger finally got to the specifics of the Chevron proposal, he contended that the search terms were too broad,[13] that the discovery was too intrusive (an argument the Court had accepted in part and rejected in part in its May 17, 2018 ruling on Chevron's first motion to compel, where it compelled responses to only some of Chevron's requests, some of which it revised to narrow them[14]), and sought privileged material (an argument the Court rejected in its ruling on Chevron's second motion to compel[15]).

Following the January 8, 2019 conference, Chevron submitted a revised proposal

---

[11]

     *See* Tr. 9-12 Jan. 8, 2019 [DI 2149].

[12]

     *Id.* at 10-14.

[13]

     Donziger does not understand, or mischaracterizes, the role of the search terms under any version of the protocol. Contrary to his suggestion, Chevron would not obtain each and every document containing any of the search terms. Rather, the presence of one or more search terms in any document in the electronically stored information ("ESI") would result only in that document being subjected to further analysis to identify documents potentially responsive to those portions of Chevron's document requests in respect of which the Court has ordered production. Documents so identified would be further screened to determine whether they in fact are responsive and thus subject to production.

[14]

     DI 2009.

[15]

     DI 2108 ¶ 1.

6

which responded to some of the Court's comments.[16]  Donziger replied essentially with a rehash of his previous arguments, all based on distortions or mischaracterizations or previously ruled upon by the Court, and an unjustified *ad hominem* attack on Chevron's proposed forensic expert.[17]  Chevron effectively and persuasively responded to that attack.[18]

*The Final Forensic Protocol*

The Court today is filing the final product of this deliberate process, which has been modified in important respects from both Chevron's initial and most recent proposals.  The modifications all are intended to protect any legitimate interests in privacy that Donziger may have to the extent they can be reconciled with Chevron's legitimate interest in discovering information to assist in collecting its money judgment and determining whether Donziger has complied with the injunction.  And the Court will not unduly prolong this memorandum.  But several points bear brief mention.

A.    *Some Background Informing the Formulation of the Protocol*

This is the second occasion on which the Court has felt obliged to require forensic imaging of Donziger materials containing electronically stored information ("ESI").  The first occurred in Chevron's Section 1782 discovery proceeding against Donziger, which overlapped the

---

[16]    DI 2145-1.

[17]    DI 2151.

[18]    DI 2156.

commencement of this action.  The circumstances of that prior instance are informative here.

Donziger there was served with a subpoena requiring the production of documents and a deposition.  This Court denied his motion to quash and the Court of Appeals affirmed.[19]

It swiftly became apparent that there was reason to question Donziger's compliance with the subpoena.[20]  Chevron moved to compel Donziger to produce all responsive documents forthwith and, in addition, to produce his hard drives for forensic imaging.[21]

The Court initially reserved decision on the request to image Donziger's media, instead directing *Donziger and his counsel* to conduct a search of all ESI using a list of search terms provided by Chevron "and thereupon forthwith [to] produce any documents responsive to the subpoenas located by such search . . . ."[22]  Thus, the Court in the first instance trusted Donziger to do an appropriate search of his own materials using the search terms and then to produce the responsive documents as opposed to involving Chevron or a third party.  The Court did not require that he produce all documents containing the search terms, leaving to Donziger the separation of documents responsive and unresponsive to the subpoena.[23]

---

19

   *In re Application of Chevron Corp.*, 749 F. Supp. 2d 135 (S.D.N.Y.), *issuing full opinion,* 749 F. Supp. 2d 141 (S.D.N.Y.), *adhering on reconsideration,* 749 F. Supp. 2d 170 (S.D.N.Y.), *aff'd sub nom., Lago Agrio Plaintiffs v. Chevron Corp.,* 409 Fed. App'x 393 (2d Cir. 2010).

20

   *See, e.g.,* 10-mc-0002 (LAK) (hereinafter *"Donziger 1782"*), DI 108.

21

   *Donziger 1782*, DI  135, DI 145.

22

   *Donziger 1782*, DI 161 ¶ 3.

23

   *Id.; accord*, Tr. 3-5, 17-20 Jan. 13, 2011.

Donziger then produced some 90,000 documents that had been turned up by the search terms, approximately 80 percent of which were responsive to the subpoena.[24]  Nevertheless, there remained indications that Donziger had erased or withheld other responsive documents.[25]  The Court on January 21, 2011 therefore directed that his hard drives be imaged and turned over to Chevron for examination.[26]  Forensic examination of the imaged hard drives revealed the following:

- The imaged hard drives held more than 151,000 documents containing the prescribed search terms in addition to the 90,000 documents that Donziger had claimed were the products of his search using the same terms.[27]

- Over 77,000 of those additional documents related to the Lago Agrio litigation,[28] at least a significant number (and probably most) of which should have been produced earlier.

Given this history, and Donziger's refusal to make any good faith effort to comply with this Court's orders to produce documents in this post-judgment proceeding, outside examination of his ESI is an entirely reasonable, and perhaps the only, way to obtain compliance without imposing sanctions that would be far more onerous.

---

24

*Donziger 1782*, Hendricks Decl., DI 175 ¶ 4.

25

*Donziger 1782*, DI 171 ¶ 2.

26

*Id.* at 2.

27

*Donziger 1782*, Hendricks Decl., DI 194 ¶ 3.

28

*Id.*

9

*B.*      *The Structure of the Protocol*

Notwithstanding Donziger's noncompliance with his document production obligations in this case, his misbehavior in the Section 1782 proceedings, and his previously demonstrated misconduct and lack of credibility in many respects,[29] the Court has modified Chevron's proposals substantially in order to limit to a bare minimum the extent to which Chevron or even its forensic expert (as distinguished from the neutral) would be exposed to materials on Donziger's media that are not responsive to the document requests with which he is obliged to comply.

The protocol contemplates four principal steps:

- Forensic imaging (i.e., copying) of the devices and media;

- Generation of reports indexing persons and entities named on the images from which the experts and parties can assess whether to exclude or include documents in the subsequent analysis;

- Forensic analysis of the devices and media for evidence of spoliation and recovery of any destroyed files, to the extent possible; and

- Searching the documents for responsive documents.

This protocol requires that the first, second, and third steps be carried out solely by a court appointed neutral expert. The Chevron forensic expert and counsel for Chevron will be involved only in the fourth step. The Chevron forensic expert's limited involvement in the search process, to the extent that it is permitted by the protocol, is intended to give the neutral expert the benefit of the Chevron

---

[29]      *See, e.g., Chevron Corp. v. Donziger*, 296 F.R.D. 168 (S.D.N.Y. 2013).

forensic expert's understanding of the case to identify more accurately and efficiently documents responsive to the document requests. The involvement of counsel for Chevron likewise is intended to ensure that responsive documents are identified and produced. However, the protocol limits counsel's involvement in this process to the greatest degree possible in light of Donziger's legitimate privacy interests. Accordingly, the search process has been designed, and will unfold, as follows.

First, the neutral expert will isolate the documents that are responsive to the search terms and potentially relevant to the document requests. Second, the neutral expert will provide the Chevron forensic expert with the greater of 100 or 10 percent of those documents for review by counsel for Chevron. Counsel will code this sample set of documents as "relevant" or "not relevant" to the document requests. Third, Chevron's forensic expert, under the supervision of the neutral expert, will create, refine, and use technical search tools, including but not limited to predictive coding[30] and concept clustering, to search the documents that are responsive to the search terms and

---

[30]   In *Moore v. Publicis Groupe*, 287 F.R.D. 182, 183-84 (S.D.N.Y. 2012), the Court explained predictive coding as follows:

"[Computer-assisted coding refers to a set of tools] that use sophisticated algorithms to enable the computer to determine relevance[] based on interaction with (i.e., training by) a human reviewer.

Unlike manual review . . . computer-assisted coding involves a [small team] who review and code a 'seed set' of documents. The computer identifies properties of those documents that it uses to code other documents. As the [team] continues to code more sample documents, the computer predicts the reviewer's coding . . . .

When the system's predictions and the reviewer's coding sufficiently coincide, the system has learned enough to make confident predictions for the remaining documents."

Predictive coding is a widely used e-discovery tool that credible sources say produce more accurate results while saving time and expense as compared to manual review.

potentially relevant and to identify those that indeed are relevant to the document requests.

Thus, the process limits the roles of Chevron's forensic expert and counsel for Chevron to protect Donziger's privacy interests without hamstringing Chevron's efforts to obtain the discovery to which it is entitled.

*Donziger's* Pot Pourri *of Rehashed Arguments*

As indicated previously, the Court ordered forensic imaging of Donziger's media, pursuant to a specific protocol to be determined, last October. At the January 8, 2019 conference called to discuss Chevron's initial proposed protocol, Donziger confined himself principally to attempting to reargue the ruling that he already had lost. Then, when Chevron submitted a revised proposed protocol and afforded Donziger an opportunity to respond to that proposal too, he did it again. He filed an 18-page memorandum that in substance attempts to reargue not only the Court's forensic imaging ruling, but also its prior determination that Chevron is entitled to post-judgment discovery and aspects of the pending contempt motions that have been fully submitted and are *sub judice.*[31] The Court merely notes the following.

*First.* Donziger again contends that Chevron's post-judgment discovery, including forensic imaging of his devices, violates the First Amendment. But, as this Court has pointed out previously, Donziger lacks standing to raise all or most of these claims and forfeited any such claims

---

*Chevron Corp. v. Donziger*, 11 Civ. 691 (LAK), 2013 WL 1087236, at *32 n.255 (S.D.N.Y. Mar. 15, 2013); *see also How to Make the E-Discovery Process More Efficient with Predictive Coding*, T H O M S O N   R E U T E R S , https://legal.thomsonreuters.com/en/insights/articles/how-predictive-coding-makes-e-disc overy-more-efficient (last visited Feb. 19, 2019).

[31] DI 2151.

by failing to assert them in a timely fashion.  Even more important, they would be entirely without merit even if he were a proper person to assert, and had not forfeited, them.[32]

*Second.*  Donziger insists that "Chevron's sole basis for this extraordinary post-judgment discovery campaign is the allegation that [he] was in contempt of this Court's March 4, 2014 injunction for assisting [his] Ecuadorian clients . . . in [their] modestly successful efforts to finance ongoing litigation and advocacy against Chevron . . . ."[33]  That assertion simply is false.  It ignores the facts that Chevron (a) holds a substantial unpaid money judgment against Donziger, (b) enforcement of that money judgment is not stayed, and (c) Chevron therefore has the right to seek information concerning Donziger's assets, sources of income, and other such information.[34]  And it ignores also the fact, as the Circuit has made clear, that district courts have:

> "ample authority to issue all orders necessary for the enforcement of [their] order[s]. 28 U.S.C. § 1651. Discovery may occur in connection with a pending contempt proceeding [citation omitted], and we see no reason why a court must await the formal initiation of contempt proceedings to order discovery concerning a party's

---

[32]

*Chevron v. Donziger*, 325 F. Supp. 3d 371, 385-87, 391-93 (S.D.N.Y. 2018).

[33]

DI 2151 at 2.

[34]

Fed. R. Civ. P. 69(a)(2) ("the judgment creditor . . . may obtain discovery from any person – including the judgment debtor – as provided in these rules or by the procedure of the state where the court is located"); N.Y. CPLR § 5223 ("the judgment creditor may compel disclosure of all matter relevant to the satisfaction of the judgment [from] . . . any person"); 11 WINSTEIN, KORN & MILLER, NEW YORK CIVIL PRACTICE: CPLR ¶ 5233.05 (2d ed.); *see also Jack London Prods., Inc. v. Samuel Bronston Prods., Inc.*, 22 A.D.2d 870, 254 N.Y.S.2d 397 (1st Dept. 1964) (disclosure proper as to judgment debtor's "borrowings, the sources thereof, and the disposition of the proceeds"); *Gorea v. Pinsky*, 80 M.2d 139, 140, 362 N.Y.S.2d 771 (Sup. Ct. Oneida Co. 1974) (disclosure proper as to possible fraudulent conveyances of debtor's assets).

ability to comply with orders issued but not carried out . . . ."[35]

It necessarily follows that a court may order discovery concerning a party's compliance with orders already issued.

*Third.* Donziger repeats his contention that Chevron would intimidate and abuse anyone whom it discovered to be supplying him with funds or otherwise supporting his efforts and that discovery of such information therefore should be precluded. Of course, discovery of the sources of his money is directly relevant to collection of the money judgment against him. The precise nature and structure of his fund raising efforts is extremely pertinent to the question whether he is in compliance with the equitable relief granted by this Court and also to collection of the money judgment. Moreover, as this Court previously has made clear, Donziger's concern that identification of his sources of funds and the identities of his funders might permit Chevron to pursue discovery or legal remedies against them is not a basis for foreclosing such discovery. Chevron has every right – indeed, a First Amendment protected right – to use any legal processes available to it should the facts so warrant.[36] Further, Donziger's claims of misconduct by Chevron all are unsupported by evidence, based on factual distortions or misrepresentations, or otherwise deficient.[37] And his attempt to resuscitate his claim that "Guerra[, a trial witness who implicated Donziger in the bribery

---

[35]

*State of New York v. Shore Realty Corp.*, 763 F.2d 49, 53 (2d Cir. 1985); *see also Ermenegildo Zegna Corp. v. Lanificio Mario Zegna, S.p.A.*, No. 02 Civ. 3511 (HB), 2003 WL 21709424, at *2 (S.D.N.Y. July 22, 2003) (stating that "the Second Circuit . . . has rejected respondent's argument that federal courts lack the power to order discovery before the initiation of a contempt proceeding to verify compliance with the court's order").

[36]

*Chevron v. Donziger*, 325 F. Supp. 3d at 388-89.

[37]

*Id.* at 385-91.

of the Ecuadorian judge,] completely fabricated his bribery story"[38] carries no water. He made that

argument at trial. This Court found to the contrary. Donziger did not challenge that finding on

appeal. He will not be heard to attempt a second bite at the apple, particularly as a premise of his

specious *ad hominem* attack on Chevron's forensic expert.

*Fourth.* Donziger contends that disclosure of the responsive documents that the Court

already has ordered produced would "give [Chevron] permission to rifle through the privileged and

confidential files of its key opponent (and adversarial counsel)."[39] This contention ignores the fact

that the Court previously has ruled, for at least the second time in his litigation with Chevron, that

Donziger has forfeited any privilege he otherwise might have had.[40] The Court so ruled

---

[38]

DI 2151 at 9.

[39]

*Id.* at 1.

[40]

DI 2108 ¶ 1 (stating that any otherwise applicable privileges were forfeited by failure to comply with Fed. R. Civ. P. 26(b)(5) and S.D.N.Y. Civ. R. 26.2). The relevant court rules and principles are laid out in *In re Chevron Corp.*, 749 F. Supp. 2d at 164-69.

The Court naturally understands that the Circuit upheld the Court's earlier waiver ruling based on Donziger's failure to produce a privilege log "almost entirely [in view of] the urgency of petitioners' need for the discovery in light of impending criminal proceedings in Ecuador." *Lago Agrio Plaintiffs*, 403 Fed. App'x at 395. The circumstances here differ. But they too are egregious for several reasons and warrant a like result.

First, Donziger knew full well that a failure to comply with the rules requiring submission of a privilege log could result in forfeiture of any otherwise applicable privilege. He knew that by virtue of the prior litigation in which his failure to comply with the same rules by failing to submit a privilege log resulted in a waiver/forfeiture ruling. Additionally, Donziger was warned of a potential waiver/forfeiture ruling in this case when Chevron submitted motion papers urging such a ruling based on Donziger's similar failings here. Nevertheless, he failed to comply with the rules, failed to seek an extension of time within which to do so, and failed to seek any dispensation from the rules. Indeed, in this case he failed to make even a colorable attempt to comply with the Court's orders even with respect to documents as to which no claim of privilege was or responsibly could have been asserted.

on October 18, 2018.[41]

\* \* \*

In short, the issue now before the Court has arisen only because Donziger
unjustifiably has refused to comply with his discovery obligations. Had he done so – i.e., had he
produced responsive documents as to which there was no colorable claim of privilege, submitted a
privilege log as to responsive documents as to which there was such a colorable claim, and submitted

---

Second, Donziger's responses to Chevron's discovery requests were due in late April or
early May. He in fact served purported responses, which contained no meaningful
information and no privilege log, on or about April 30, 2018. DI 1989-2. There is no
evidence or even claim that Donziger tried to prepare, much less serve, a privilege log in
the six months between being served with the document requests and the Court's eventual
ruling, on October 18, 2018, that Donziger had waived any applicable privilege.

Third, Donziger disregards the fact that when he belatedly produced a "privilege log" in the
prior litigation it was about 2,000 pages long and scheduled over 8,652 supposedly
privileged documents. The "privilege log," however, contained *not even one
communication between Donziger and his putative clients.* It claimed privilege as to more
than 2,500 documents "sent or disclosed to a public relations person, the founder of the
Amazon Defense Front . . . , Amazon Watch, and a host of newspapers and magazines"
none of which could have been privileged if only because they were not confidential
lawyer-client communications. *In re Chevron Corp.*, 749 F. Supp. 2d at 184. Thus, the
privilege log tardily submitted in the prior case was not a good faith attempt to make only
colorable claims of privilege as distinguished from an attempt to stall discovery. *See id.* at
184-85. So too here in the sense that Donziger has made no good faith effort to comply
with his obligations concerning claims of privilege.

Fourth, Donziger's behavior here regarding privilege claims, just as in the related prior
case, has been undertaken for tactical advantage. He never posted a supersedeas bond,
which would have stayed enforcement of the money judgment as of right, nor sought a stay
of its enforcement on any other basis. And while he did seek a stay from this Court of
certain discovery from a non-party witness and a broader protective order and has appealed
from the order denying his motion, *see* DI 2045, he never has sought a stay or injunction
pending appeal from the Circuit in the more than three months since this Court ruled. It
appears that his obdurate refusal to comply with discovery obligations and court orders is
an attempt to obtain by self help the stay of discovery that this Court denied and that he has
not sought from the Circuit.

41

DI 2108 ¶ 1.

16

any disputes for judicial resolution -- there would be no need to examine his ESI.  But he has not. And the Court thus must take appropriate action.  His arguments to the contrary are meritless.

*Conclusion*

For the foregoing reasons, the Court has entered the protocol for imaging and forensic examination of Donziger's electronic devices and media.

SO ORDERED.

Dated:        March 5, 2019

_____
Lewis A. Kaplan
United States District Judge