USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/5/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- x

CHEVRON CORPORATION,

Plaintiff,

-against-

11-cv-0691 (LAK)

STEVEN DONZIGER, et al.,

Defendants.

---------------------------------------- x

**FORENSIC INSPECTION PROTOCOL**

LEWIS A. KAPLAN, *District Judge.*

1. **Appointment of a Neutral Forensic Expert:** By order of March 5, 2019, the Court has appointed a Neutral Forensic Expert for the purposes of this Forensic Inspection Protocol. The Neutral Forensic Expert shall send his invoices to both parties and Chevron initially will bear the cost of the Neutral Forensic Expert's work as described herein, without prejudice to Chevron's right to seek reimbursement of said costs in these proceedings or otherwise.

2. **Chevron's Designation of Its Forensic Expert:** Chevron has designated as its computer forensic expert for the purposes of this protocol Spencer Lynch of Stroz Friedberg ("Chevron's Forensic Expert").

3. **Confidentiality/Protective Order:** Before any work on this matter is undertaken, including but not limited to any search, collection, or other analysis, all agents and representatives of both the Neutral and Chevron's Forensic Expert who will work on this matter will sign the Certification required by the Protective Order entered in this matter on January 11, 2013 ("Protective Order"), if not previously executed. To that end, all information received or located by either the Neutral or Chevron's Forensic Expert shall be treated as confidential except as otherwise provided in this Protocol and shall not be disclosed to anyone except in compliance with the Protective Order and this Protocol. Once materials are produced to Chevron, they shall no longer be treated as confidential unless so designated as provided in Paragraph 8(a).

4. **Donziger Identification of His Devices and Media:** Within three (3) business days of entry of this Protocol, defendant Steven Donziger ("Donziger") shall provide to both the Neutral and Chevron's Forensic Experts via email a representation listing under penalty of perjury all devices he has used to access or store information or for communication since March 4, 2012 – including, but

not limited to, personal computers, tablets, phones, and external storage devices, such as external hard drives and thumb drives – (the "Devices"), indicating for each of the Devices whether he has possession, custody, or control of the Devices and, if not, stating the reasons why that is so, i.e., whether they were destroyed, lost, etc. and the present location of the Devices.  Additionally, Donziger shall produce under penalty of perjury a list of all accounts – including, but not limited to, email accounts (including web-based email accounts); accounts (including web- or cloud-based) related to any document management services, such as Dropbox; and accounts related to any messaging services, such as WhatsApp, Facebook Messenger, instant messages, etc. – Donziger has used since March 4, 2012 (the "Media"), indicating whether he presently has the ability to access those accounts and, if not, stating the reasons why that is so.  At this time, prior discovery has revealed that Donziger used the following types of accounts to conduct business related to the Ecuadorian judgment:

     a) Email addresses, including, but not limited to, sdonziger@donzigerandassociates.com, stevenrdonziger@gmail.com, steven.donziger@donfordcapital.com, and gringograndote@gmail.com;

     b) A Dropbox account; and

     c) A WhatsApp account.

5. **Imaging of Donziger's Devices and Media by the Neutral Forensic Expert:** The Neutral Forensic Expert shall take possession of Donziger's Devices and have access to his Media for the purposes of making a mirror image of those Devices and Media.  The Devices shall be surrendered to the Neutral Forensic Expert at Donziger's address at 245 West 104th Street, #7D, New York, NY 10025.  The Neutral Forensic Expert shall take possession, custody, and control of the Devices and transport them directly to its offices for the imaging described herein.   The devices shall be surrendered to the Neutral Forensic Expert at 12:00 pm at 245 West 104th Street, #7D, New York, NY 10025 on March 18, 2019.  At no time shall Chevron's Forensic Expert have access to the original Devices or to live Media accounts absent further Court order.

     a) On the date and time specified per the above, Donziger shall turn over all Devices in his possession, custody, or control to the Neutral Forensic Expert. Additionally, to the extent information contained in any of Donziger's accounts/media is not stored on any of Donziger's available Devices, Donziger shall provide the Neutral Forensic Expert with the information and/or things necessary to access and image his accounts and media. The Devices shall be returned to Donziger without unnecessary delay after the completion of the imaging required herein by the Neutral Forensic Expert.

     b) If any usernames, passwords, or other information is required to access any of the electronically stored information on any of the produced Devices or Media, Donziger shall provide such usernames, passwords, and other information to the Neutral Forensic Expert at the time of the imaging.  Such information shall be kept strictly confidential by the Neutral Forensic Expert.

c) Before beginning any work on the Devices and Media, the Neutral Forensic Expert will utilize a hardware write block device on the Devices and Media in order to protect the integrity of the existing data (or other techniques standard in the industry to protect the integrity of data).

d) The Neutral Forensic Expert will create full forensic images of each Device and Media/Account. The forensic images of each shall include, to the extent possible, allocated, unallocated, and host protected areas. As part of the creation of the forensic images, the Neutral Forensic Expert will record on a log, where applicable: (1) the date and time at which the Device or Media was provided for forensic imaging and the date and time at which the Device or Media was imaged; (2) the time set in the BIOS or system clock at the time of imaging; (3) the "boot order" recorded in the BIOS of the Device or Media at the time of imaging; (4) the make, model, and serial number of the Device; (5) the username associated with any Media; (6) any identifying marks or labels on any Device or Media; (7) the tool and/or method used to create the forensic images; and (8) MD5 and SHA1 hash values of the data collected from the Device or Media.

e) Upon completion of the imaging, the Neutral Forensic Expert will verify the resulting forensic images by executing the form attached hereto as Exhibit A and return the Devices and Media to Donziger.

f) The Neutral Forensic Expert then will create four (4) identical copies of the images of Donziger's Devices and Media, which shall be written to encrypted drives for security purposes. Within two (2) calendar days of the imaging of Donziger's Devices and Media, one copy shall be provided to Donziger, two copies shall be lodged with the Clerk of Court in a sealed envelope, and one copy shall be retained by the Neutral Forensic Expert. The Neutral Forensic Expert shall maintain the set of images created from Donziger's original Devices and Media unexamined and unaltered until further order from the Court. The Neutral Forensic Expert shall use the copy of the images that it retains for searches and analysis as proscribed by this Protocol.

6. **Neutral Forensic Expert's Creation of a Person/Entity Report and Donziger's Designation of "Highly Confidential and Personal" Persons/Entities:** The Neutral Forensic Expert shall create a "Person/Entity Report" listing in the first column in alphabetical order the persons or entities identified by the Neutral Forensic Expert on the Donziger Images as authors, recipients, senders or persons who last modified, saved or printed any document (as reflected in the metadata of those documents or communications). The Neutral Forensic Expert shall delete from the list any person or entity whose name or email address appears as a Search Term on Exhibit B. After these deletions, the Neutral Forensic Expert then shall provide the report to Donziger. Donziger shall have five (5) calendar days from receipt of the Person/Entity Report to designate any person or entity appearing on the Person/Entity Report as "Highly Confidential and Personal" consistent with the criteria below and under penalty of perjury and to provide the Person/Entity Report with his "Highly Confidential and Personal" designations and an executed Exhibit C to the Neutral Forensic Expert and to the

Court.

This designation process is intended to provide Donziger with appropriate privacy protections without limiting Chevron's right to relevant discovery. Accordingly, Donziger may designate for potential exclusion from productions pursuant to this Paragraph 6 only Persons/Entities who are wholly unrelated to the discovery ordered by the Court and any contempt or judgment collections issues in this matter (such as a treating physician or relative without an interest in the judgment or information concerning Donziger assets) and these designations should not be used for any other purpose. Highly Confidential and Personal Designations cannot be made under this provision on the basis of privilege as "Donziger has waived or forfeited any claim of privilege to responsive documents and information that otherwise might have applied" as determined in the Court's October 18, 2018 order. Nor can Highly Confidential and Personal Designations be made as to persons whose names or emails appear on the Search Term List, Exhibit B hereto.

7. **Provision of Donziger Images to Chevron's Forensic Expert and Chevron:** The Neutral Forensic Expert shall make available to Chevron's Forensic Expert and Chevron the Donziger Images according to the following procedures.

    a) First, the Neutral Forensic Expert will run the Search Terms in Exhibit B on the Donziger Images.

    b) Second, the Neutral Forensic Expert will compare Donziger's "Highly Confidential and Personal" Designations to the metadata and content of any materials that contain responsive search terms. To the extent that any "Highly Confidential and Personal" entity appears on any document responsive to the search terms, those documents will be logged on a three-column report which shows the name of the "Highly Confidential and Personal" person or entity in the first column, the search terms that the document was responsive to in the second column, and in the third column all sender(s) and recipient(s) of the document if any and the author and person who last modified, saved, or printed the document per the available metadata. The Neutral Forensic Expert shall provide this log to Chevron and Donziger.

    Upon review of this information, Donziger will have five (5) calendar days either to consent to the documents being subject to further review and potential production or to object. If Donziger objects, concurrently with his objection he must provide Chevron with a description of each designated individual/entity at issue, such as a "treating physician," and a copy of his executed Exhibit C via email. Chevron then will have five (5) calendar days either to consent to the documents being excluded from further review and potential production or to object.

    If Donziger objects to further review and potential production and Chevron opposes exclusion from further review, the parties will submit double spaced papers of no more than ten (10) pages outlining their respective positions – and the Neutral Forensic Expert will submit the document(s) at issue – either to the Court or a Special Master or

Magistrate Judge, as the Court directs at the time, for a determination of whether the documents at issue will be subject to further review and potential production.

If Donziger does not object, or if the Court, Special Master, or Magistrate Judge determines that the documents at issue shall be subject to further review and potential production, then the Neutral Forensic Expert will include the documents in the universe of those that are responsive to the search terms and subject to production pending further review. If Donziger objects and Chevron does not oppose the objection, or if the Court, Special Master, or Magistrate Judge determines that the documents may not be produced, then the Neutral Forensic Expert will exclude the documents from the universe of those that are responsive to the search terms and subject to production pending further review.

c) Third, Chevron's Forensic Expert will provide the Neutral Forensic Expert with copies of or access to the post-judgment third party productions made to Chevron in this matter. The Neutral Forensic Expert will remove any duplicates from the universe of documents from the Devices and Media that are responsive to the search terms and subject to production pending further review. The Neutral Forensic Expert then will return or cease to have access to the post-judgment third party productions.

d) Fourth, the Neutral Forensic Expert will analyze the documents that are responsive to the search terms and subject to possible production pending further review to determine if there are any significant categories of irrelevant materials that properly can be excluded. This would include, for example, correspondence from online merchants that responds to the Search Terms "account" or "amazon" but is not necessary to determine payment methods or Donziger's assets. The Neutral Forensic Expert will separate out these potentially irrelevant materials from the universe of documents that are responsive to the search terms and subject to possible production pending further review and provide 25 percent of these potentially irrelevant materials to Chevron's Forensic Expert to review. Chevron's Forensic Expert then will confirm whether the sample set is irrelevant or identify any documents that are relevant. If any document is identified as relevant, and the Court, Special Master, or Magistrate Judge, as the Court directs at the time, confirms its relevance, then Chevron's Forensic Expert may review the remaining 75 percent of the materials for relevance under the supervision of the Neutral Forensic Expert. The Neutral Forensic Expert will include any materials identified by Chevron's Forensic Expert as relevant in the universe of documents that are responsive to the search terms and subject to possible production pending further review. If no document in the sample set is relevant, the entire set of materials deemed potentially irrelevant by the Neutral Forensic Expert shall be excluded from the universe of documents that are responsive to the search terms and subject to possible production pending further review.

    i) Supervision for purposes of this task and others in this Protocol that call for the same requires the following. First, Chevron's Forensic Expert shall not access or search the Donziger Images at any time in any manner without the Neutral Forensic Expert's oversight. This oversight may take place either

locally or on an electronic discovery platform.  The methodology of the review or searches conducted by Chevron's Forensic Expert shall be recorded in a detailed log (the "Search Log") along with a description of what files were reviewed or searched and when that review or search occurred.  A copy of the Search Log shall be provided to Donziger.  The Neutral Forensic Expert and Chevron's Forensic Expert shall retain their own copies of the Search Log.

e)   Fifth, the Neutral Forensic Expert will provide Chevron's Forensic Expert with the greater of 100 documents or 10 percent of the universe of documents that are responsive to the search terms and subject to production pending further review.  To the extent that Chevron's Forensic Expert identifies any password protected or encrypted files, Chevron's Forensic Expert can identify those files to the Neutral Forensic Expert, who then will promptly use the passwords obtained pursuant to Paragraph 5(b) of this Protocol to allow Chevron's Forensic Expert access to the relevant files.  If Donziger has failed to provide any and all passwords required to access any of the information stored on any of the Devices and/or Media, Donziger must provide the passwords to any files upon request from the Neutral Forensic Expert.  Chevron's Forensic Expert then will provide the sample set of documents and communications to Chevron's counsel for coding as "relevant" or "not relevant" and additional coding as appropriate to identify documents responsive to requests 1 through 14 and 16 through 30 of Chevron's request for production of documents, attached hereto as Exhibit D, as amended by order of this Court [DI 2009] on May 17, 2018.  This coding will be conducted on an "attorneys' eyes only" basis.  Once the initial set of documents is coded, Chevron's Forensic Expert, under the supervision of the Neutral Forensic Expert, will utilize assistive technology, including but not limited to predictive coding and concept clustering, to run iterative searches of the remainder of the documents that are responsive to the search terms and subject to production pending further review.  Chevron's Forensic Expert may have Chevron's counsel code additional batches of documents in order to refine the search parameters and use of predictive coding and concept clustering if the Neutral Forensic Expert agrees that the additional coding would be beneficial to that process.  This iterative search process will be used to cull the documents that are responsive to the document requests from those that are responsive to the search terms more broadly.  Once this iterative coding and search process is completed and all documents likely responsive to the document requests specified above have been located, the Neutral Forensic Expert shall compile and assign unique numbers to each file, document or communication (cumulatively "files") to be produced, and make a copy of all files, along with a report identifying any metadata the Neutral Forensic Expert deems relevant for those files, documents and communications based on the terms in Exhibit B and after consultation with Chevron's Forensic Expert.  The Neutral Forensic Expert then will provide that information (the files, documents and communications and the accompanying report) to Donziger and counsel for Chevron simultaneously (the "Document Production").  The Document Production(s) will be treated as "confidential" pursuant to the Protective Order for a period of fourteen (14) calendar days.

f) Sixth, if, after receiving the Document Production, Chevron's counsel determines within fourteen (14) calendar days that additional key words should be utilized for searches, Chevron may make an application to the Court for leave to conduct additional searches. Donziger shall file any response to Chevron's request within seven (7) calendar days. Each party's submission shall not exceed ten (10) double-spaced pages.

8. **Post-Production Procedures:**

a) **Donziger's Designation of Produced Documents as Confidential:** Within fourteen (14) calendar days of the date that the Neutral Forensic Expert makes any Document Production to the parties, Donziger shall notify Chevron via email using production numbers of any information or document contained in the Document Production that should be designated as "confidential" pursuant to the Protective Order and provide the basis for his contention. If Donziger does not designate particular information or documents as confidential pursuant to the Protective Order within fourteen (14) calendar days of the date that the Neutral Forensic Expert makes any Document Production, then that Document Production or any portion thereof shall be treated as non-confidential. Donziger cannot designate documents as confidential en mass pursuant to this provision.

b) **Donziger's Ability to Clawback Irrelevant Documents:** If Donziger believes that any information or document contained in any Document Production was produced in error or is not responsive to requests 1 through 14 and 16 through 30 of Chevron's request for production of documents, attached hereto as Exhibit D, as amended by order of this Court [DI 2009] on May 17, 2018, he must object to the production of that information or document in writing by production number and request that the information or document be returned or destroyed. Any such objection to production and request for the return or destruction of information or document(s) must be served on Chevron no later than fourteen (14) calendar days after the date the Document Production is provided to Donziger and counsel for Chevron. If the parties cannot reach agreement on any of Donziger's clawback requests, those requests shall be submitted to the Court, Special Master, or Magistrate Judge as the Court directs at that time. Donziger cannot demand the clawback of documents en mass pursuant to this provision.

9. **Destruction/Recovery Investigation:** The Neutral Forensic Expert shall perform also forensic analysis of the Donziger Images to identify any evidence that relates to the integrity, authenticity, and completeness of the data held on the Donziger Images. The Neutral Expert will also conduct a forensic examination of the contents of the Donziger Images to review activity involving the creation, downloading, transfer, deletion, obfuscation, or destruction of any files from March 4, 2012 forward. The Neutral Forensic Expert shall attempt to recover any and all files that were transferred, deleted, obfuscated, or destroyed since March 4, 2012, and examine those files for responsiveness per the procedures set forth herein in Paragraph 7 and with the involvement of Chevron's Forensic Expert and Chevron to the extent permitted by Paragraph 7. This means that any Donziger Image that was transferred, deleted, obfuscated, or destroyed since March 4, 2012 that is responsive to one

or more search terms either via content or metadata shall be considered responsive to the search terms and subject to production pending further review. The Neutral Forensic Expert shall provide a sample set of 10 percent of these documents, but not the greater of 10 percent or 100 documents, to the Chevron Forensic Expert. The Chevron Forensic Expert will provide the sample set to Chevron for coding as "relevant" or "not relevant" and other coding as appropriate. The iterative search process will continue as described in Paragraph 7 and any documents responsive to the document requests identified through this deletion and recovery analysis shall be produced to Chevron following the procedures set forth above in Paragraph 7. If the Chevron Forensic Expert determines in conjunction with the Neutral Forensic Expert that the iterative search process described in Paragraph 7 is incompatible with the set of documents that the Neutral Forensic Expert identifies as those that have been transferred, deleted, obfuscated, or destroyed since March 4, 2012, then the parties shall submit their proposed procedures for reviewing the documents for responsiveness to the document requests specified above to the Court, Special Master, or Magistrate Judge as the Court shall direct at the time.

10. **Neutral Forensic Expert's Reports on File Information:** The Neutral Forensic Expert shall generate the following additional reports (the "Reports") for the period of March 4, 2012 to the present:

a) **Active File Spreadsheet** – A report detailing the metadata for, but not the content of, the active files on the Donziger Images, including the name of all folders and subfolders. To the extent permitted by the available data, the report will include for each file: the filename; the creation, last modified, and last accessed dates; the folder path to the file; the file size; the MD5 hash value (a kind of digital fingerprint for a file); which Device or Media the file resided on; and, for Microsoft Office Documents, the embedded Author Name, the embedded Last Saved by Name, the embedded creation date, and the embedded last modified time.

b) **Deleted and Tampered Files Spreadsheet** – A report detailing the metadata for, but not the content of, the deleted files on the Donziger Images and files identified through the Neutral Forensic Expert's investigation described in Paragraph 9 related to the integrity, authenticity, or completeness of any files on the Donziger Images. To the extent permitted by the available data, the report will include for each file: the filename; the creation, last modified, and last accessed dates; the folder path to the file; the file size; the MD5 hash value (a kind of digital fingerprint for a file); which Device or Media the file resided on; and, for Microsoft Office Documents, the embedded Author Name, the embedded Last Saved by Name, the embedded creation date, and the embedded last modified time.

c) **Recent File Activity** – A report detailing the records maintained by Donziger's Devices and Media about the recent file usage. To the extent that Donziger's Devices and/or Media use the Windows operating system, these reports may include information in the recent link files, jump lists, and similar locations.

The Neutral Forensic Expert shall indicate the following in its Active Files Report and Deleted and Tampered Files Report: (1) the total number of active or deleted/tampered files; (2) the number of active or deleted/tampered files that were included in the Document Production(s); and (3) the number of active or deleted/tampered files that were not included in the Document Production(s). The Neutral Forensic Expert shall provide copies of the three reports described above to Chevron's Forensic Expert, Donziger, and counsel for Chevron. Counsel for Chevron shall have five (5) calendar days to identify from the Active Files and Deleted and Tampered Files Reports files that counsel believes may contain materials responsive to the discovery requests. Donziger then will have five (5) calendar days to object. If there are no objections, the files will be produced to Chevron. If there are objections, then the parties will submit their request or objections and the Neutral Forensic Expert will submit the relevant files to the Court, Special Master, or Magistrate Judge, as the Court shall direct at the time, to determine whether the documents may be produced.

11. **Destruction of the Donziger Images Upon Termination of this Litigation:** Upon agreement of the parties or order of the Court that this litigation is terminated, the Neutral Forensic Expert and Chevron's Forensic Expert shall erase any data derived from the Donziger Images, including any reports, and certify to Donziger or his counsel that any such data have been irretrievably deleted. Notwithstanding the foregoing, the Court shall retain its copy of the Donziger images sealed in an envelope for a period of five (5) years. The Court shall destroy this copy after the five (5) years have passed. Prior to the mandated destruction described above, the parties jointly shall submit to the Court in a sealed envelope a copy of any reports generated and served on the parties pursuant to this Protocol. The Court shall retain these reports also for a period of five (5) years.

12. **Donziger's Representations:** Any statement or representations Donziger is required or permitted to make pursuant to the terms of this Protocol, including the disclosure of any and all information required under Paragraph 4 and any designation under Paragraphs 6, 7, or 8 must be made under penalty of perjury pursuant to 28 U.S.C. § 1746 and include the following language: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)."

SO ORDERED.

Dated:       March 5, 2019

Lewis A. Kaplan
United States District Judge

**Exhibit A**

**Neutral Forensic Expert Certification**

1. My name is ___________ and I am employed by _____________ as a ____________.

2. On ____________, 201__, Steven Donziger provided me with access to the following electronic devices and accounts:

3. On _____________[date], I created full forensic images of each electronic device and account to which I was provided access. The forensic images of each electronic device and account included allocated, unallocated, and host protected areas. As part of the creation of the forensic images, I recorded on a log, where applicable: (1) the date and time at which the electronic device or account was provided for forensic imaging and the date and time at which the electronic device or account was imaged; (2) the time set in the BIOS or system clock at the time of imaging; (3) the "boot order" recorded in the BIOS of the electronic device or account at the time of imaging; (4) the make, model, and serial number of the electronic device; (5) the username associated with any account; (6) any identifying marks or labels on any electronic device or account; (7) the tool and/or method used to create the forensic images; and (8) MD5 and SHA1 hash values of the data collected from the electronic device or account.

4. Before beginning any work on the electronic devices and accounts, I utilized a hardware write block device (or comparable techniques standard in the industry) on the electronic devices and accounts in order to protect the integrity of the existing data.

4. I have returned to Mr. Donziger's custody each electronic device to which Mr. Donziger provided me access.

4. I have made four identical copies of the forensic images of the electronic devices and accounts to which Mr. Donziger provided me access. I have provided one copy to Mr. Donziger, one copy to Chevron's designated Forensic Expert, retained one copy for my records, and provided one copy to the Court in a sealed envelope.

5. I will maintain my copy of the forensic images of the electronic devices and accounts Mr. Donziger provided me access to in an unaltered state until otherwise directed by the Court.

Date: __________ ________________________________

**Exhibit B**

**(Iterations to be included in all search term categories)**

**Search Terms Related to the Ecuador Judgment and RICO Injunction**

"Ecuador" w/20 "Judgment or "Judgement"

"Ecuadorian" w/30 "plaintiff/s"

"Lago,"

"Agrio,"

"Lago Agrio"

"Chevron"

"CVX"

"Texaco"

"Aguinda"

"LAP"

"Frente"

"Amazonía"

"Amazonia"

"Amazon"

"Gibraltar"

"Environmental" w/20 "Judgment" or "Judgement"

"UDAPT"

"Gibson Dunn"

"Gibson"

"GDC"

"RICO"

"Kaplan"

"SDNY"

"Mastro"

"Recognition" w/30 "Canada" or "Argentina" or "Argentine" or "Brazil"

"Enforcement" w/30 "Canada" or "Argentina" or "Argentine" or "Brazil"

"Recognition" w/20 "Judgment" or "Judgement"

"Enforcement" w/20 "Judgment" or "Judgement"

"Recognition and Enforcement"

"R&E"

"18 b" OR "18b"

"9.5 b" OR "9.5b"

"12 b" OR "12b"

"6 b" OR "6b"

"14 b" OR "14b"

"Billion"

"Pressure"

"Press release"

"Investment"

"Invest"

"Investor"

"Share" w/20 "Judgment" OR "Judgement"

"Interest" w/20 "Judgment" OR "Judgement"

"Shareholder"

"Calgary"

"Indigenous"

"Solicit"

"Game"

"Game Changer"

"Force"

"Settle"

"Confidential"

"Court"

"Sell"

"Assign"

"Transfer"

"Collect"

"Profit"

"Monetize"

"Retainer"

"Reimburse"

"Expense"

"Percentage"

"10%"

"Table"

**Search Terms Related to Enforcement of the Money Judgment and RICO Injunction**

"Bank"

"Account"

"Acct"

"Capital"

"Loan"

"Statement" w/10 "Financial"

"Trust"

"Tax"

"Accountant"

"Broker"

"Brokerage"

"Certificate"

"Securities"

"Bonds"

"Shares"

"IRA"

"Interests"

"Percent" w/20 "Interest"

"Membership Interests"

"Stock"

"Deposit"

"Withdrawal"

"Withdraw"

"Withdrew"

"Checking"

"Check"

"Checkbook"

"Money order"

"Savings"

"Bitcoin"

"Blockchain"

"Crypto"

"Cryptocurrency"

"Gold"

"Cash"

"Credit card"

"Money market"

"Balance Sheet"

"Income Statement"

"Wire" w/10 of "Transfer" or "Instruction"

"Escrow"

"Payment"

"Pay"

"Paying"

"Payee"

"Payer"

"Paid"

"Invoice"

"Receipt"

"Collateral"

"Security"

"Lien"

| | | | |
|---|---|---|---|
| "Guarantor" | "Debtor" | "Contacto" | "8132" |
| "Guarantee" | "Creditor" | "Contrato" | "4318633420" |
| "Leasehold" | "Safe Deposit" | "Acuerdo" | "3420" |
| "Lease" | "Loan" | "Inversion" | "3287489857" |
| "Lessor" | "Note" | "Honorarios" | "9857" |
| "Lessee" | "Lender" | "Appendix" | "4273938783" |
| "Tenant" | "Borrower" | "Appendices" | "8783" |
| "Landlord" | "Letter of Credit" | "Annex" | "6749166418" |
| "Real" w/10 "Estate" | "Mortgage" | "Paragraph" | "6418" |
| "Real" w/10 "Property" | "Asset" | "Assignment" | "4277302265" |
| "Title" | "Fund" | "Advisory" | "2265" |
| "Deed" | "Round" | "Signature" | "4782142388" |
| "Coop" | "Chart" | "(English)" | "2388" |
| "Cooperative" | "Cap" | "(Spanish)" | "Bank of America" |
| "Debt" | "Budget" | "TD Bank" | "466001799158" |
| "Indebtedness" | "Gastos" | "4311018174" | "9158" |
| "Indebted" | "Ejecución" | "8174" | "BBVA Compass" |
| "Secret" | "Recursos" | "4311018132" | "6707239997" |

"9997"

"Chase" OR "JPMorgan" OR "JPM"

"000151112225365"

"5365"

"000000742190218"

"0218"

"000000742189822"

"9822"

"000002745715678"

"5678"

"000000828422758"

"2758"

"000000773420989"

"0989"

"000002907099890"

"9890"

"Citibank"

"33346374"

"US Bank"

"Wells Fargo"

"PNC"

"State Street"

"Sun Trust"

"HSBC"

"Capital One"

"Ally Bank"

"Morgan Stanley Smith Barney" OR "Morgan Stanley"

"CWP"

"Offshore"

"Rainy day"

"Code"

"Contempt"

"Hide"

"Hidden"

**<u>Team Members and Consultants Related to the LAPs and the Ecuadorian Judgment</u>**

Aaron Marr Page <aaron@forumnobis.org>

Acros Communications

Adolfo Maldonado

Agustin Salazar <agustin.salazar@salazarcordova.com>

Alan Lenczner

Alberto Guerra

Alberto Zuleta

Alejandro Ponce Villacis

Alfonso Paz

Amy Johnston <amy@Streamlinefamilyoffice.com>

Amy O'Meara

Angel Cajo

Anton Tabuns <tabuns@gmail.com>

Benjamin Goldstein

Big House Inc.

Bruchou, Fernandez, Madero & Lombardi

Bryce <Bryce@metalrabbit.com>

Cara Parks

Carlos Guaman

Carmen Aguilar

Carmen Armijos

Carmen Cartuche

Charles Nesson

Chris Lavageth

Christine Fiore <pinnacle40@msn.com>

Clare Cole <Clare@Streamlinefamilyoffice.com>

Cohen Strategic

Cristina Muñoz <crisamunoz@gmail.com>

Cristina Munoz Egas

Cristobal Bonifaz

Cynthia Zapata Solís

Dan Firger

Dan Orlow

Daniel Saavedra

Daniela Vergel

Daria M. Fisher

Deborah Moore

Deepak Gupta <deepak@guptawessler.com>

Derek Snowdy

Diego Larrea

Digitalis Media

Domingo Peas

Donald Moncayo

DonPat Gate Parkway LLC

DTI Skyline

Edwin Vasquez

Eiggan Business Alliance

Enrique Bruchou

Ermel Chavez

Eva Golinger

Farihah Zaman

Fecheimer

Fernando Villavicencio

Fideicomiso Mercanrtil de Administracion de Flujos ADAT

Fine and Associates

Fromboliere

Gabriela Espinoza

Gary Greenberg <tax_com@msn.com>

Graham Erion

Grant Fine

Grant Fine and Associates

Guadalupe De Heredia <lupitadeheredia@gmail.com>

Guadalupe Marisol Asimbaya Jarrin

Guillermo Grefa

Hinton Communications

Howard Glaser <hglaser1@gmail.com>

Humberto Piaguaje

Jamie Vargas

Jeanine Moss

Jennifer Friesen <Jennifer@Streamlinefamilyoffice.com>

John McDermott

John Phillips <john.phillips@legaladvocates.ca>, <john@waddellphillips.ca>

Jorge Herrera

Jose Fajardo

Jose Medardo Shingre

Joshua Lipton

Joshua Rizack <jrizack@therisinggroup.com>

Juan Aulestia <juanaulestia01@gmail.com>

Juan Cristobal Villao Yepez

Juan Pablo Saenz

Juan Yiyocuro

Julie Claire

Julio Prieto

Julio Prieto Mendez

Justin Marceau

Karen Hinton

Katie Sullivan <Katie@Streamlinefamilyoffice.com>

Laura Belanger

Laura Garr

Laura Miller

Lauren Schrero

Leila Salazar-Lopez

Lenczner Slaght

Lexolution

Lidia Alexandra Aguinda

Lisa Gibbons

Louis Berger Group

Luis Macas

Luis Miguez Garcia Aragon

Luis Moreno

Luis Yanza <lfya62@gmail.com>

Lupita De Heredia

Manuel Remache

Manuel Salazar

Marcos Ajila

Maria Belen Paez

Maria Eugenia Garces

Maria Eugenia Yepez

Maria Garafalo

Maria Guadalupe De Heredia

Maria Ramos

Marin Interfaith Task Force on the Americas

Marlon Vargas

Medardo Zhingre

Metal Rabbit

Meyers, Saxon & Cole

Mike Carney

Mirandao y Amado

Monica Pareja

Neal & Harwell

Neidl & Associates

Nextant LLC

Nicholas & Lence

Nidia Arrobo

Nivaldo Yiyoguaje Quenama

Oil Change International

Orin Kramer

Orlando Guarnizo

Oscar Herrera

Pablo Iturralde

Pablo Balarezo

Pablo Fajardo

Pablo Fajardo Mendoza

Pablo Yepez

Paliare Roland Rosenberg Rothstein LLP

Paola Delgado

Paola Romero

Patricio Salazar

Patricio Salazar Cordova <patriciosalazarcordova@gmail.com>

Paul Cheng

Peter Fairley

Peter Grant

Peter Grant <pgrant@grantnativelaw.com>

Phil Fontaine

Producciones Nuevas

Rex Weyler <rexweyler1@gmail.com>

Robert Collier

Robert Rawson

Roberto Aguinda

Roy Cosme

Santos Arrobo

Sergio Bermudes

Shimmerlik Corporate Communications Inc.

Shuyana Natalia Yanza Allauca

Siona

Steve Cohen

Streamline Family Office OR SFO

Terry Collingsworth

The Rising Group

Tinoco

Veronica Asimbaya

Warren Shimmerlik

Weiser Group

William Baue

Wilson Naranjo

Yolanda Leon Trujillo

Zoe Cina-Sklar

Jason Glaser

Diplomat Security International

Derrick Snowdy

Perry Bellegarde

Michael S. Frisch

**Individuals and Entities Involved in the Pressure Campaign**

A Cancer in the Amazon

Alan Hevesi

Alex Goff

Alexandra Almeida

Amazon Watch

Amy Goodman

Andrew Cuomo

Andrew Miller

Arcos Communications

Assembly of First Nations OR AFN

As You Sow Foundation

Atossa Soltani <atossa@amazonwatch.org>

Ben Barnes <ben@benbarnesgroup.com>

Ben Barnes Group

Bill Fenton

Bill Twist <billtwist@pachamama.org>, <brtwist@gmail.com>, t <btwist@pachamama.org>

Bruce Herbert

Business Wire Inc.

Carina Lundberg Markow

Cassie Stiftl <cassie@pachamama.org>

Catherine Walsh

Celia Alario

Charles Nesson <nesson@gmail.com>, <nesson@law.harvard.edu>

Christopher Lehane

Conrad McKearon

Courtney Taylor Eckel

Cristina Santa Cruz

CSL Strategies LLC

Daniel Cunningham <DCunningham@afn.ca>

Daniel Pedrotty

Downey McGrath Group, Inc.

Earth Rights International

Ebergeldo Criollo

Ed John, <edjohn@fns.bc.ca>

ELAW

Elisabeth Holm

Emilie Westholm

Emma Korpi <emma@pachamama.org>

Environmental Law Alliance Worldwide

ESG

Fabiani & Lehane

Fadel Gheit

Francesca Rheannon

Friends of the Earth

Gabriela Jaramillo

Glass Lewis & Co.

Global Witness

Han Shan

Heather Williams <HLW04747@pomona.edu
>

Hugh Whelan

Ian Quigley

Investor Voice

ISS

Jack Ucciferri

Jacob Johansson

James Boneham

James Sharp

Jan Schakowsky

Jean Paul Borja Jácome

Jen Atwood <jenatwood@me.com>

Jeremy Kolodziej <JKolodziej@afn.ca>

Jessica Kwan <Jessica@pachamama.org>

Jim McGovern

Joan Kruckewitt

John Hardman

John Kenney

Josefine Ekros

Joseph Berlinger

Joseph Mutti

Julie Gresham

Karen Hinton <karen@fenton.com>, <karen@hintoncommunicat ions.com>

Kathleen Mahoney <kmahoney@ucalgary.ca>

Katie Green

Ken Sunshine

Ken Sunshine Consulting

Kerry Kennedy

Kevin Koenig

Larry Dohrs

Larry Fahn

Leslie Lowe

Leslie Samuelrich

Lisa Copland

Lisa Gibbons <lisaweylergibbons@gmail .com>

Liza Sabater

lofrias@princeton.edu

Louis Dematteis

Maisa Arias <maisa@pachamama.org>

Marco Simons

Maria del Carmen Garay Calero

Maria Egan

Maria Garay

MARIO TRIGUEROS <mario@pachamama.org>

Mark Diab

Mark Fabiani

Mark Fabiani LLC

Martin Garbus <MGarbus@evw.com>

MC2PR

MCSquared

Media Alliance

Michael <mmaruca@jd18.law.harva rd.edu>

Michael Bonfiglio

Michael Connelly

Michael Maruca <maruca.michael@gmail.com>

Michaela D'Amico

Mila Rosenthal

Mitch Anderson

Moira Birss

MSCI Inc.

New York Common Pension Funds

New York State Common Retirement Fund

Newground Social Investment

Nora Nash

<Oksana.isi@gmail.com>

Pat Jackson <pat.jackson@pachamama.org>

Pat Tomaino

Patrick Alley

Patrick Doherty

Patsy Thomasson

Paul Neuhauser

Paul Orzulak

Paul Paz y Mino

Paul Paz y Miño <paz@amazonwatch.org>

Paulette Tremblay <PTremblay@afn.ca>

Penny Jacko <pjacko@ishkonigan.com>

Peter Franchot

Pocho Alvarez

Qube Investment Management Inc.

Radical Media

Rainforest Action Network

Regina Toulouse <RToulouse@afn.ca>

Rex Weyler

Richard Stratton

Richard Trumka

Risk Metrics

Rob McGarrah

Robert Zevin

Robert Brooke Zevin Associates, Inc.

Robert Friedman

Robert Kropp

Robert Rosoff

Robin Weissman

Sanford Lewis

Sarah Aird

Scott Moorhead

Selva Viva

Sergey Pustelnik <spustelnik@jd18.law.harvard.edu>

Shannon Wright

Shelley Alpern

Simeon Tegel

Simon Billenness <simon.billenness@gmail.com>, <simon.billenness@csrstrategygroup.com>

Simon Taylor

smartin@benbarnesgroup.com

Sonia Kowal

Spring Water Asset Management

Steve Westly

Steven Heim

Stuart Wuttke <swuttke@afn.ca>

Susan Goldman

Suzanne Parish <suzannemparrish@gmail.com>

Teddy Downey

Terra Matter

The Crowd Versus

Third Eye Motion Picture Company

Thomas Cavanagh

Thomas DiNapoli

Thomas Kostigen

Timothy Smith

Toni Symonds

Tony Chapelle

Tony Cruz

Tracy Apple <tracy@pachamama.org>

Trillium Asset Management

Tyson Slocum

Universidad Andina Simon Bolivar (UASB)

Veronica Havilo <v.havilo@avalonfundaktiv.com>

Walden Asset Management

West Wing Writers

Will Thomas

Willie Littlechild <Wilton.Littlechild@Xplornet.ca>

Yancy Craig <YCraig@afn.ca>

zap@amazonwatch.org

Zevin Asset Management

**<u>Individuals and Entities Related to Interests in the Ecuadorian Judgment</u>**

Pachamama Foundation

The Pachamama Alliance

Fundacion Naupa

Fundacion Pachamama

Zoe Littlepage

Smyser, Kaplan & Veselka LLP

Richard Henry Friedman

Larry Veselka

Howard Glaser

Forum Nobis

Deepak Gupta

Craig Smyser

Bruce Stephen Kaplan

Adam Krevlin

Amazon Defense Coalition OR ADC

Amazon Defense Front OR ADF

Amazonia Recovery Limited

Andres Snaider

Asamblea de Afectados por Texaco

Ben OR Benjamin Eisler <ben.eisler@donfordcapital.com>, <ben.eisler@jpdsllc.com>

Burford Capital

Burford Capital Limited

Burford Capital LLC

Burford Group LLC

Campbell Ford <campbell@fordmiller.com>

Christopher Bogart

CHV LLC

Cliff Eisler <Cliff.Eisler@Atlasfinancialpartners.com>, <cliff.eisler@analectfinance.com>, <cliff.eisler@donfordcapital.com>, <cliff.eisler@jpdsllc.com>

Cofan

Compañía Fiduciaria Ecuador FIDUECUADOR

CONAIE

CONFENAIE

David Marshall <david.marshall@atlasfinancialpartners.com>

David Sherman

Derek Stoldt

Donford Capital

Elizabeth van Merkensteijn <ehvm@rossteq.com>

Erik T. Moe

Excend

Frank Hirth

Frente de Defensa de la Amazonia OR FDA

George Crossman

Glenn Krevlin

Glenn Krevlin <gkrevlin@glenhillcap.com>

GT Fiduciary

H5

Hassans Gibraltar

Ian Watson

Ian Watson <iw@genagro.net>, <iw@watsonassetmanagement.com>

Indigenous People Limited

James McCaffrey

Jay Goldstein

Jeff Kahn

John Van Merkensteijn <jhvm@donfordcapital.com>, <jhvm@rossacq.com>

Jonathan Molot

Joseph Kohn

Julian Jarvis

Kate Watkins

Kaye Scholer LLP

Kichwa

Kofan

Kohn Swift &. Graf, P.C.

Magister Law

Mark Fenwick

Michael Ben-Jacob

Newcorp

Nicholas Economou

Olswang LLP

ONISE

Polaris Consulting Ltd.

Rakhi Kumar

Roger Waters

Rossi Technologies LLC

Russell DeLeon

Sam Krevlin

Secoya

Selvyn Seidel

Siekopai

Stephanie Furr <pa.steph.nyc@gmail.com>, <steph@rossteq.com>

Stephen Culhane

Susan Donziger Sherman

TC Payment Services International

Tony Abbiati <tabbiati@scsfinancial.com>

Torvia Limited

Treca Financial Solutions

UDAPT

Victoria Watson <victoriawatson@me.com>

Waorani

WDIS Finance LLC

Wellbeck Partners LLC

Willie Lewis Brown

Woodsford

**Individuals and Entities Related to Potential Investors in the Ecuadorian Judgment**

88 Capital LLC

athenahealth

Anthony Gordon
<ag@genagro.net>

Bill Twist

Bryce Tom

Cathy Patterson

David Zelman
<david@dzelman.com>,
<dzelman@transitionsinstit
ute.com>

Ecuadorian Ventures LLC

Emily Schweitzer

Equitable Outcomes

Erin Ly Roman
<ely@opalgroup.net>

Jeffrey Kahn
<kahnadvisorsllc@gmail.co
m>

Jesse Cohn
<JCohn@elliottmgmt.com>

John Coleman
<jack.coleman@donfordca
pital.com>

John Perkins

John Shue
<shuej@hmc.harvard.edu>

Jonaks Limited

Jonathan Bush

kahnadvisorsllc@gmail.co
m

Kathy Lemay
<kathylemay@me.com>,
<kathylemay@raisingchan
ge.com>

Ken Foraste
<kforaste@coylecompany.c
om>

klentz@gmail.com

Lee Grinberg
<lGrinberg@elliottmgmt.co
m>

Lynne Twist
<lynne.twist@gmail.com>,
<LynneTwist@soulofmone
y.org>

Michael Delgass

Michael Donziger

Nicholas
<nicholas.martell@stifel.co
m>

Paul Schreiber

Peter & Nancy Mortifee
<peter@somersetfoundatio
n.org>

Rod Walkey
<twalkey71@comcast.net>

Russell Wiese

Sarah Rumph
<srumph@bbrpartners.com
>

Satee GMBH

SCS Financial Services,
LLC

Stephen Weeks

Steven Haley
<steven@snowshill.org>

Steve Saltzstein

Tammy White
<twhite@elliot.com>

Terrence Y
<terrenceyang@gmail.com
>

Tim Howard
<tim@howardjustice.com>

Timothy A. Haluszczak
<thaluszczak@steelbridgec
onsulting.com>,
<tim@steelbridgelabs.com
>

virginie.tardieu@pargesy.c
om

wschindler@sailcapital.co
m

**Lago Agrio Plaintiffs**

Alejandro Soto

Alfredo Donaldo Payaguaje

Armando Wilfrido Piaguaje

Beatriz Mercedes Grefa
Tanguila

Benancio Freddy Chimbo
Grefa

Bertha Antonia Yumbo Tanguila

Carlos Grefa Huatatoca

Catalina Antonia Aguinda

Celia Irene Viveros Cusangua

Clide Ramiro Aguinda

Daniel Carlos Lusitande Yaiguaje

Delfin Leonidas Payaguaje

Elias Roberto Piyaguaje Payaguaje

Emilio Martin Lusitande Yaiguaje

Esteban Lusitante Yaiguaje

Felipe Lucitante

Fermin Piaguaje Payaguaje

Francisco Alvarado Yumbo

Francisco Victor Tanguila

Gloria Lucrecia Tanguila Grefa

Guillermo Vicente Payaguaje Lusitande

Heleodoro Pataron Guaraca

Hugo Gerardo Camacho Naranjo

Janeth Cuji

Javier Piaguaje

Javier Piyaguaje Payaguaje

Jose Gabriel Revelo

Jose Gabriel Revello

Justino Piaguaje

Lorenzo Jose Alvarado Yumbo

Lourdes Beatriz Chimbo Tanguila

Lucio Enrique Grefa Tanguila

Luis Armando Chimbo Yumbo

Luisa Delia Tanguila Narvaez

Luz Cusangua

Maria Clelia Reascos

Maria Clelia Reascos Revelo

Maria Hortencia Viveros

Maria Magdalena Rodriguez

Maria Victoria Aguinda Salazar

Mariana Jimenez

Miguel Mario Payaguaje

Nancy Pambabay

Narcisa Aida Tanguila Narvaez

Octavio Ismael Cordova Huanca

Olga Gloria Grefa Cerda

Patricio Alberto Chimbo Yumbo

Patricio Wilson Aguinda

Reinaldo Lusitande Yaiguaje

Rosa Moreno

Rosa Teresa Chimbo

Servio Curipoma

Simon Lusitande Yaiguaje

Teodoro Gonzalo Piaguaje

William Lucitante

Yolanda Omaca

**Individuals and Entities Paid from LAP Accounts**

Benjamin Klein

Bolivar-Godofredo Noblecilla Alvarado

Carlos Antonio Paredes Sandoval

Carlos Efrain Manjarres Arevalo

Cesar-Belisario Cruz

Cristobal-Mauricio Acuna Alban

Diego-Alipio Cueva Ochoa

Elvia Rosario Morales Villarroel

Galo Fernando Paredes Jacome

Galo-Vicente Gonzalez Granda

Groupideas S.A.

Jaime Arturo Robles Pillco

John E. Long

Juanito-Franklin Hernandez Chamorro

Julio Cesar Valencia Ordonez

Julio Eduardo Apunte Romero

Julio-Floresmilo Granda Herrera

Long Tuminello LLP

PROVEEDORA ERAZO SÁNCHEZ S. A

Radio Sucumbios

Ricardo Lara Mello

ROMÁN HERMANOS CÍA. LTDA.

Servulo Isaias Monar Camacho

TRADEPLAST CÍA. LTDA.

Vinicio Nicolas Mancheno Carrillo

WETECH CÍA. LTDA.

Wilmer Abel Menses Paredes

**Individuals Related to the Republic of Ecuador**

Alfredo Ruiz

Carlos Viteri

Charles McNeil Mitchell

Consejo de Participación Ciudadana y Control Social (CPCCS)

Corte Constitucional del Ecuador

Daniel Mendoza

Diego Garcia

Eduardo Mangas

Eduardo Mendoza

Eric Bloom

Fernando Alvarado

German Yanez

Gregory Longstreet Ewing

Gustavo Larrea

Iñigo Salvador

Jaime Candell

Johana Pesantez

Jorge Glas

Jose Ignacio Yepez

Juan Sebastian Roldan

Julio Cesar Trujillo

Lenin Moreno

Leonardo Isaac Ordonez Pina

Liliana Suarez

Luis Hernandez

Luis Legna

Manuel Viteri

Marco Antonio Yaguache Mora

Maria Avila

Maria Alejandra Vicuna Munoz

Maria Fernada Espinosa

Maria Fernanda Espinoza

Maria Jose Carrion

Marien Segura

Milton Toral

Miryam Felix

Nicolas Zambrano

Orlando Guarnizo

Pablo Davila

Pamela Martinez

Rafael Correa

Alexis Mera

Roxana Silva

Ruth Seni

SENAIN

Tatiana Ordeñana

Victor Butina

Victor Lopez Montero

Washington Pesantez

Wendy Molina

Wilfrido Erazo

Xavier Zavala

Fander Falconí

Marcelo Larrea

Alvaro Galindo

Rafael Parreño Navas

Blanca Gómez de la Torre

Tomás Leonard

Álvaro Galindo

Paolo Di Rosa

Raul Herrera

**Exhibit C**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHEVRON CORPORATION, Plaintiff, v. STEVEN DONZIGER, et al., Defendants. | 11 Civ. 0691 (LAK) |

**DECLARATION OF INFORMATION CONCERNING PERSONS/ENTITIES DESIGNATED AS "HIGHLY CONFIDENTIAL AND PERSONAL" PURSUANT TO PARAGRAPH 6 OF THE FORENSIC INSPECTION PROTOCOL**

I, STEVEN R. DONZIGER, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. Pursuant to Paragraph 6 of the Forensic Inspection Protocol, I have attached to this Declaration, as Exhibit A, a highlighted version of the Person/Entity Report, which highlighted persons or entities I hereby designate as "Highly Confidential and Personal."

2. No person or entity appearing on Exhibit A has ever had any involvement of any kind in any of the below-listed actions or in any action related to or consolidated with any of the below-listed actions or in any appeal thereof:

- *Chevron v. Stratus Consulting, Inc.*, No. 10-cv-47 (D. Colo)
- *In re Application of Chevron Corporatio*n, No. 10-mi-76 (N.D. Ga.)
- *In re Application of Chevron Corporatio*n, No. 10-mc-134 (S.D. Tex.)
- *In re Application of Chevron Corporation for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings*, No. 10-cv-2675 (D.N.J.)
- *In re Application of Chevron Corporation*, No. 10-cv-1146 (S.D. Cal.)

- *In re Application to Issue a Subpoena for the Taking of a Deposition and the Production of Documents*, No. 10-mc-371 (D.D.C.)
- *Chevron Corporation v. Quarles*, No. 10-cv-686 (M.D. Tenn.)
- *In re Application of Chevron Corporation*, No. 10-mc-1 (S.D.N.Y.)
- *In re Application of Chevron Corp.*, No. 10-mc-2 (S.D.N.Y.)
- *Chevron Corporation v. Charles Champ*, No. 10-mc-27 (W.D.N.C.)
- *Chevron Corporation*, No. 10-mc-21 (D.N.M.)
- *In re Chevron Corp.*, No. 10-mc-10352 (D. Mass.)
- *Chevron Corporation*, No. 10-mc-53 (S. D. Ohio)
- *Chevron Corporation v. Rourke*, No. 10-cv-2989 (D. Md.)
- *Chevron Corp. v. Allen*, No. 10-mc-91 (D. Vt.)
- *Chevron Corporation v. Picone*, No. 10-cv-2990 (D. Md.)
- *Chevron Corp.*, No. 10-cv-549 (W.D. Va.)
- *In re Application of Chevron Corp.*, No. 10-mc-208 (E.D. Pa.)
- *Chevron Corp: In re Application for Order Enforcing a Subpoena*, No. 10-mc-30022 (D. Mass.)
- *Chevron Corp. v. Weinberg Group, Inc.*, No. 11-mc-30 (D.D.C.)
- *Chevron Corp. v. Page*, No. 11-cv-395 (D. Md.)
- *Chevron Corp. v. ELAW*, No. 11-mc-7003 (D. Ore.)
- *Chevron Corp. v. Banco Pichinca*, No. 11-cv-24599 (S.D. Fla.)
- *In re the Application of the Republic of Ecuador,* No. 10-mc-80225 (N.D. Cal.)
- *In re the Republic of Ecuador,* No. 10-mc-40 (E.D. Cal.)
- *In re Application of Carlos Lusitand Yaiguaje,* No. 10-mc-80324 (N.D. Cal.)
- *In re Application of Daniel Carlos Lusitand Yaiguaje, et al.,* No. 11-mc-80087 (N.D. Cal.)
- *In re Application of the Republic of Ecuador,* No. 11-mc-80110 (N.D. Cal.)
- *In re Application of the Republic of Ecuador,* No. 11-mc-8 (E.D. Cal.)
- *Republic of Ecuador v. Bjorkman,* No. 11-cv-1470 (D. Colo.)
- *In re Application of The Republic of Ecuador,* No. 11-mc-73 (N.D. Fla.)
- *The Republic of Ecuador v. Kelsh,* No. 11-mc-80171 (N.D. Cal.)
- *The Republic of Ecuador v. Exponent, Inc.*, No. 11-mc-80172 (N.D. Cal.)
- *The Republic of Ecuador v. TestAmerica Labs., Inc.*, No. 11-mc-88 (N.D. Fla.)
- *The Republic of Ecuador v. Gregory S. Douglas*, No. 11-mc-91287 (D. Mass.)
- *The Republic of Ecuador v. John A. Connor*, No. 11-mc-516 (S.D. Tex.)
- *The Republic of Ecuador v. GSI Environmental, Inc.*, No. 11-mc-517 (S.D. Tex.)
- *The Republic of Ecuador and Dr. Diego Garcia Carrion*, No. 13-cv-1112 (D. Colo.)
- *Chevron Corp. v. Donziger*, No. 11-cv-691 (S.D.N.Y.)
- *Chevron Corp. v. Salazar*, No. 11-cv-3718 (S.D.N.Y.)
- *In re Application of Chevron Corp.*, No. 11-cv-1942 (D. Md.)
- *Chevron Corp. v. Douglas Allen*, No. 11-mc-57 (D. Vt.)
- *Chevron Corp. v. Salazar*, No. 11-mc-409 (D.D.C.)
- *Chevron Corp. v. Salazar*, No. 11-mc-8 (S.D. Tx.)
- *Chevron Corp. v. Banco Pichincha*, No. 11-cv-23049 (S.D. Fla.)
- *Chevron Corp. v. Salazar*, No. 11-mc-80217 (N.D. Cal.)

- *Uhl & Associates, Inc. v. Chevron Corp.*, No. 11-cv-5292 (D.N.J.)
- *Chevron Corp. v. Donziger*, No. 12-mc-80237 (N.D. Cal.)
- *Chevron Corp. v. Donziger*, No. 12-mc-80238 (N.D. Cal.)
- *Chevron Corp. v. Donziger*, No. 12-mc-65 (S.D.N.Y.)
- *Chevron Corp. v. Donziger*, No. 12-mc-673 (D.D.C.)
- *Chevron Corp. v. Donziger*, No. 13-mc-80038 (N.D. Cal.)
- *Chevron Corp. v. Salazar*, No. 11-cv-2426 (D. Colo.)
- *Chevron Corporation v. H5 et al.*, 14-mc-144 (S.D.N.Y.)
- *Chevron Corporation v. MCSquared PR, Inc.*, No. 14-mc-392 (S.D.N.Y.)
- *Patton Boggs, LLP v. Chevron Corporation*, No. 10-cv-1975 (D.D.C.)
- *Patton Boggs, LLP v. Chevron Corporation*, No. 11-cv-799 (D.D.C.)
- *Patton Boggs, LLP v. Chevron Corporation*, No. 12-cv-901 (D.N.J.)
- *Dessarrollos Punta Alta, Despunta, C.A. v. Chevron Corporation*, 16-cv-21385 (S.D. Fla.)
- *Maria Aguinda Salazar y Otros v. ChevronTexaco Corporation*, No. 002-2003-P-CSJNL (Superior Court Nueva Loja)
- *Chevron Corporation and Texaco Petroleum Company v. The Republic of Ecuador*, PCA No. 2009-23 (Permanent Court of Arbitration, The Hague, The Netherlands)
- *Yaiguaje v. Chevron Corporation*, No. cv-12-454778 (Ontario Superior Court of Justice)
- *Daniel Carlos Lusitande Yaiguaje, et al. v. Chevron Corporation, Chevron Canada Limited and Chevron Canada Finance Limited*, File No. C57019, M43289 (Court of Appeal for Ontario)
- *Daniel Carlos Lusitande Yaiguaje, et al. v. Chevron Corporation, Chevron Canada Limited and Chevron Canada Finance Limited*, File No. C63309, C63310 (Court of Appeal for Ontario)
- *Daniel Carlos Lusitande Yaiguaje, et al. v. Chevron Corporation, Chevron Canada Limited and Chevron Canada Finance Limited*, File No. CV-12-9808-00CL (Ontario Superior Court of Justice)
- *Chevron Corporation and Chevron Canada Limited v. Daniel Carlos Lusitande Yaiguaje, et al.*, File No. 35682 (Supreme Court of Canada)
- *Maria Aguinda Salazar, et al. v. Chevron Corporation* (Superior Court of Justice, Brazil)
- *Aguinda Salazar, Maria et al. v. Chevron Corporation on Exequatur and Recognition of Foreign Judgment*, Case No. 97,260/12 (Civil Court, Judiciary of Argentina)
- *Chevron Corp. v. Amazonia Recovery Ltd.*, Claim No. 2014-C-110 (Supreme Court of Gibraltar)
- *Chevron Corp. v. DeLeon*, Claim No. 2012-C-232 (Supreme Court of Gibraltar)
- *Chevron Corp. v. GT Nominees Ltd.*, Claim No. 2014-C-111 (Supreme Court of Gibraltar)
- *Chevron Corp. v. Julian Jarvis*, Claim No. 2014-C-112 (Supreme Court of Gibraltar)
- *Chevron Corp. v. TC Payment Servs Ltd.*, Claim No. 2014-C-113 (Supreme Court of Gibraltar)

3. No person or entity highlighted on Exhibit A hereto has ever had any involvement of any kind in the enforcement of the Ecuadorian Judgment or any attempts to monetize or profit from the Ecuadorian Judgment, including by selling, assigning, pledging, transferring or encumbering any interest therein.

4. No person or entity highlighted on Exhibit A hereto owns or has ever been offered or discussed obtaining any right, title or interest of any kind in the Ecuadorian Judgement or any right, title or interest directly or indirectly traceable to the Ecuadorian Judgement or enforcement of the judgment anywhere in the world, including any right, title or interest in Amazonia.

5. No person or entity highlighted on Exhibit A hereto has any knowledge regarding my assets or of any transfer of my assets since March 2012.

Executed on this ____ day of ______, 2019 at ___________________.

___________________________
Steven R. Donziger

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| CHEVRON CORPORATION, Plaintiff, v. STEVEN DONZIGER, et al., Defendants. | x : : : : : : : : x | 11 Civ. 0691 (LAK) |

**CHEVRON CORPORATION'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS IN AID OF THE SUPPLEMENTAL JUDGMENT TO DEFENDANTS STEVEN DONZIGER, THE LAW OFFICES OF STEVEN R. DONZIGER, AND DONZIGER & ASSOCIATES, PLLC**

In the above entitled action in the United States District Court for the Southern District of New York,[1] a supplemental judgment was entered on February 28, 2018 in favor of Chevron Corporation against Steven Donziger, The Law Offices of Steven R. Donziger, Donziger & Associates, PLLC, and others, for the sum of $813,602.71, which remains due and unpaid.

**YOU ARE HEREBY COMMANDED**, pursuant to Rule 69 of the Federal Rules of Civil Procedure and CPLR Sections 5223 and 5224, to produce on or before April 27, 2018

[1] The parties to this action are Chevron Corporation (Plaintiff) and Defendants Steven Donziger, The Law Offices of Steven R. Donziger, Donziger & Associates, PLLC, Hugo Gerardo Camacho Naranjo, Javier Piaguaje Payaguaje, Stratus Consulting, Inc. Douglas Beltman, Anne Maest, Pablo Fajardo Mendoza, Luis Yanza, Frente de Defensa de la Amazonia A/K/A Amazon Defense Front, Selva Viva Selviva Cia, Ltda, Maria Aguinda Salazar, Carlos Grefa Huatatoca, Catalina Antonia Aguinda Salazar, Lidia Alexandra Aguinda Aguinda, Patricio Alberto Chimbo Yumbo, Clide Ramiro Aguinda Aguinda, Luis Armando Chimbo Yumbo, Beatriz Mercedes Grefa Tanguila, Lucio Enrique Grefa Tanguila, Patricio Wilson Aguinda Aguinda, Celia Irene Viveros Cusangua, Francisco Matias Alvarado Yumbo, Francisco Alvarado Yumbo, Olga Gloria Grefa Cerda, Lorenzo Jose Alvarado Yumbo, Narcisa Aida Tanguila Narvaez, Bertha Antonia Yumbo Tanguila, Gloria Lucrecia Tanguila Grefa, Francisco Victor Tanguilla Grefa, Rosa Teresa Chimbo Tanguila, Jose Gabriel Revelo Liore, Maria Clelia Reascos Revelo, Maria Magdalena Rodriguez Barcenes, Jose Miguel Ipiales Chicaiza, Heleodoro Pataron Guaraca, Luisa Delia Tanguila Narvaez, Lourdes Beatriz Chimbo Tanguila, Maria Hortencia Viveros Cusangua, Segundo Angel Amanta Milan, Octavio Ismael Cordova Huanca, Elias Roberto Piyahuaje Payahuaje, Daniel Carlos Lusitande Yaiguaje, Benancio Fredy Chimbo Grefa, Guillermo Vicente Payaguaje Lusitante, Delfin Leonidas Payaguaje Payaguaje, Alfredo Donaldo Payaguaje Payaguaje, Teodoro Gonzalo Piaguaje Payaguaje, Miguel Mario Payaguaje Payaguaje, Fermin Piaguaje Payaguaje, Reinaldo Lusitande Yaiguaje, Luis Agustin Payaguaje Piaguaje, Emilio Martin Lusitande Yaiguaje, Simon Lusitande Yaiguaje, Armando Wilfrido Piaguaje Payaguaje, and Angel Justino Piaguage Lucitante.

responses and/or objections to each document request to counsel at Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166-0193.

**INSTRUCTIONS**

1. The definitions and rules of construction set forth in Rule 26.3 of the Local Rules for the Southern and Eastern Districts of New York are incorporated herein.

2. This First Set of Requests for the Production of Documents ("REQUEST" or "REQUESTS") calls for the production of all DOCUMENTS ("documents" INCLUDES electronically stored information) in YOUR possession, or subject to YOUR custody or CONTROL, INCLUDING DOCUMENTS in the possession, custody, or CONTROL of YOUR agents, attorneys, or representatives (INCLUDING to attorneys in this action, attorneys in the ECUADOR LITIGATION, Pablo Fajardo Mendoza, Servicios Fromboliere Compania Limitada, Luis Yanza, Julio Prieto Méndez, Juan Pablo Sáenz, Andrew Woods, Aaron Marr Page, Laura Garr, Brian Parker, Joseph Kohn, Patricio Salazar Cordova, Agustin Salazar, Serafin Angel Cajo, and SELVA VIVA). Possession, custody, or CONTROL INCLUDES DOCUMENTS stored in electronic form by third-party service providers but accessible to YOU or YOUR agents, attorneys, representatives, or others acting on YOUR behalf, INCLUDING email accounts, FTP servers, instant messaging applications, texts, WhatsApp, portable storage media such as USB drives, cloud storage services such as Dropbox, iCloud, Google Drive, or OneDrive, and online workspaces such as WebEx.

3. Each REQUEST herein constitutes a request for DOCUMENTS in their entirety, with all enclosures and attachments, and without abbreviation, redaction, or expurgation. DOCUMENTS attached to each other, INCLUDING by staple, clip, tape, email attachment, or "Post-It" note, shall not be separated, although any page on which a Post-It note covers or

obscures text on the DOCUMENT shall be produced both with and without the Post-It note. The production must also INCLUDE, where applicable, any index tabs, file dividers, designations, binder spine labels, or other similar information as to the source and/or location of the DOCUMENTS.

      4.     YOU shall produce any and all drafts and copies of each DOCUMENT that are responsive to any REQUEST, INCLUDING copies containing handwritten notes, markings, stamps, or interlineations. The author(s) of all handwritten notes shall be identified.

      5.     Responsive DOCUMENTS that exist only in paper form shall be organized as they have been kept in the ordinary course of business.

      6.     If with respect to any REQUEST there are no responsive DOCUMENTS, so state in writing.

      7.     Chevron will meet and confer with YOU to discuss the logistics of production, but absent an alternative agreement with Chevron, responsive DOCUMENTS shall be produced in TIFF format with the accompanying text of the DOCUMENTS in a load file that also INCLUDES the metadata, subject to the following:

            a.   responsive DOCUMENTS that cannot be produced in TIFF format due to technical reasons shall be produced in a computer-readable and text searchable format to be mutually determined by the parties;

            b.   Microsoft Excel files, PowerPoint files, and other responsive DOCUMENTS that can be meaningfully viewed only in their native electronic format shall be produced in their native electronic format; and

c.   to the extent data maintained in a database is responsive and not privileged or otherwise subject to protection, the parties shall meet and confer over the scope and format of production.

8.   YOU shall produce the following metadata and production information associated with responsive DOCUMENTS (INCLUDING Microsoft Word DOCUMENTS that preserve and reveal any hidden notations, creation or alteration records) and make it reasonably accessible to Chevron: BEG_PROD_NUM, END_PROD_NUM, BEGATTACH, ENDATTACH, FROM, RECIPIENT, CC, BCC, DATE (sent date for email, create date for files), SUBJECT (subject line for email, filename for file, title for hard copy), UNREAD (unread status of email messages) DOCTYPE, FILENAME, ALL CUSTODIANS FILE PATHS, MD5 HASH, REVISION (revision number of DOCUMENT), AUTHOR, MODIFY DATE, MODIFIED BY, TOTAL EDIT TIME, LAST PRINTED, and ALL CUSTODIANS. This INCLUDES metadata that is stored as part of the responsive document, and metadata stored by the file system in which the responsive DOCUMENT is stored. YOU shall preserve all metadata associated with all responsive DOCUMENTS, INCLUDING metadata that is not produced pursuant to this instruction, and Chevron reserves the right to request the production of native copies of responsive DOCUMENTS for which the produced metadata is incomplete to the extent native copies are not already called for by these REQUESTS. This instruction shall be read in accordance with the requirements and limitations imposed by Rules 26(b) and 34 of the Federal Rules of Civil Procedure. Chevron will meet and confer with YOU to discuss metadata and expects to generally follow the guidance provided by the United States District Court for the Southern District of New York in *Nat'l Day Laborer Organizing Network v. U.S. Immigration and Customs Enforcement Agency*, 2011 WL 381625 (S.D.N.Y. Feb 7, 2011) (Scheindlin, J.).

9.      If YOU object to a portion or an aspect of a REQUEST, state the grounds for
YOUR objection with specificity and respond to the remainder of the REQUEST.  If any
DOCUMENTS, or portion thereof, are withheld because YOU claim that such information is
protected under the attorney-client privilege, work product doctrine, or other privilege or
doctrine, YOU are required to PROVIDE a privilege log, specifying for each such DOCUMENT
or withheld information:  (1) the type of DOCUMENT, e.g., letter or memorandum; (2) the
general subject matter of the DOCUMENT; (3) the date of the DOCUMENT; and (4) the author
of the DOCUMENT, the addressees of the DOCUMENT, and any other recipients, and, where
not apparent, the relationship of the author, addressees, and recipients to each other.

10.     If YOU claim that a portion of a DOCUMENT is protected from disclosure for
any reason, produce such DOCUMENT with redaction of only the portion claimed to be
protected.  Any DOCUMENT produced in redacted form shall clearly indicate on its face that it
has been redacted.

11.     If YOU object that a REQUEST is vague or ambiguous, identify the objectionable
aspect of the REQUEST, state YOUR interpretation of the REQUEST and respond to that
interpretation.

12.     If any DOCUMENT called for by the REQUESTS has been destroyed, lost,
discarded, or is otherwise no longer in your possession, custody, or CONTROL, identify such
DOCUMENT as completely as possible, and specify the date of disposal of the DOCUMENT,
the manner of disposal, the reason for disposal, the PERSON authorizing disposal, and the
PERSON disposing of the DOCUMENT.

13.     Defined terms may be capitalized for the convenience of the parties; the
definitions herein apply whether or not the term is capitalized.

**DEFINITIONS**

1. The term "ACCOUNT" as used herein means and INCLUDES savings accounts, checking accounts, money market accounts, brokerage accounts, certificates of deposit, lines of credit, and any other credits or debits.

2. The term "ACCOUNTING" means and refers to any record of financial information. This INCLUDES accountings, financial statements, bank statements, ledgers, books, audits, registers, financial reconciliations, summaries of financial information, and reports of financial information.

3. The term "ASSET" means any tangible or intangible PROPERTY, INCLUDING real PROPERTY, personal PROPERTY, intellectual PROPERTY, chattels, cash, securities, derivative products, ACCOUNTS, debts, contract rights, security interests, claims, and causes of action, anywhere in the world.

4. The term "PROPERTY" means anything that may be the subject of OWNERSHIP.

5. The terms "OWN" and "OWNERSHIP" mean owned directly or indirectly, in whole or in part, as sole owner or jointly with others, either of record or beneficially, including without limitation as a partner, general or limited, limited liability member, fiduciary, and as an equity or debt holder, or demand deposit holder.

6. The term "CONTROL" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as used with respect to any PERSON or ENTITY, shall mean the possession, directly or indirectly, of the power to direct or cause the actions, direction of the management, or policies of such PERSON or ENTITY, whether through the OWNERSHIP of voting securities, by contract or otherwise.

7. The terms "ENTITY" and "ENTITIES" shall INCLUDE all corporations, associations, partnerships, joint ventures, companies, funds, trusts, limited liability companies, limited liability partnerships, any government or regulatory authority, and all other forms of incorporated and unincorporated organizations that are not natural persons.

8. The terms "INCLUDE" and "INCLUDING" mean including, but not limited to. When the word "INCLUDE" or "INCLUDING" is followed by one or more specific examples, those examples are illustrative only and do not limit in any way the information requested.

9. "AMAZONIA RECOVERY LIMITED" means and refers to Amazonia Recovery Limited, an organization registered and/or incorporated under the Companies Act of Gibraltar on or around May 4, 2012, and any current and former subsidiaries, affiliates, partners, officers, directors, employees, representatives, agents, and any other PERSON acting, or purporting to act, on their behalf, and any predecessors or successors of the foregoing and any parent, subsidiary, division, or successor ENTITY.

10. "AMAZON DEFENSE FRONT" means and refers to the Frente de Defensa de la Amazonía a/k/a Amazon Defense Front and INCLUDES the Front's officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

11. "AMAZONIA RECOVERY LIMITED STEERING COMMITTEE" means and refers to the "advisory steering committee [to Amazonia Recovery Limited] that will be appointed by the Claimants to advise and assist the Claimants in respect of the Claim (INCLUDING with respect to remediation efforts)" as defined in paragraph 95 of Amazonia Recovery Limited's February 27, 2013 amended Memorandum of Association.

12. "ECUADOR ENFORCEMENT ACTIONS" means and refers to any proceeding seeking recognition and/or enforcement of the ECUADOR JUDGMENT anywhere in the world.

13. "ECUADOR JUDGMENT TRUST" means and refers to the trust discussed in the March 30 filing of Pablo Fajardo Mendoza to the Provincial Court of Justice of Sucumbiós regarding the "Commercial Trust for the Administration of Funds ADAT, granted by Maria Victoria Aguinda Salazar, Lidia Alexandra Aguinda Aguinda, et al., the AMAZON DEFENSE FRONT and Compañia Fiduciaria Ecuador FIDUECUADOR S.A. funds and trusts administrator" executed on March 1, 2012 by Dr. Sandra Veronica Barrazueta Molina.

14. "ECUADOR JUDGMENT" means and refers to the judgment entered in the ECUADOR LITIGATION on February 14, 2011, as modified by subsequent proceedings.

15. "ECUADOR LITIGATION" means and refers to the proceeding *Maria Aguinda y Otros v. Chevron Corporation*, in the Provincial Court of Justice of Sucumbíos in Ecuador, and all appellate proceedings and subsequent proceedings stemming therefrom.

16. "LAGO AGRIO PLAINTIFFS" means and refers to Defendants Alfredo Donaldo Payaguaje Payaguaje; Ángel Justino Piaguaje Lucitante; Armando Wilfrido Piaguaje Payaguaje; Beatriz Mercedes Grefa Tanguila; Benancio Freddy Chimbo Grefa; Bertha Antonia Yumbo Tanguila; Carlos Grega Huatatoca; Catalina Antonia Aguinda Salazar; Celia Irene Viveros Cusangua; Clide Ramiro Aguinda Aguinda; Daniel Carlos Lusitande Yaiguaje; Delfín Leonidas Payaguaje Payaguaje; Elias Roberto Piyahuaje Payahuaje; Emilio Martín Lusitande Yaiguaje; Fermin Piaguaje Payaguaje; Francisco Alvarado Yumbo; Francisco Matias Alvarado Yumbo; Francisco Victor Tanguila Grefa; Gloria Lucrecia Tanguila Grefa; Guillermo Vicente Payaguaje Lusitante; Heleodoro Pataron Guaraca; Hugo Gerardo Camacho Naranjo; Javier Piaguaje Payaguaje; José Gabriel Revelo Llore; José Miguel Ipiales Chicaiza; Lidia Alexandra Aguinda Aguinda; Lorenzo José Alvarado Yumbo; Lourdes Beatriz Chimbo Tanguila; Lucio Enrique Grefa Tanguila; Luis Agustín Payaguaje Piaguaje; Luis Armando Chimbo Yumbo; Luisa Delia

Tanguila Narvaez; Maria Aguinda Salazar; María Clelia Reascos Revelo; María Hortencia Viveros Cusangua; Maria Magdalena Rodriguez Barcenes; Miguel Mario Payaguaje Payaguaje; Narcisa Aida Tanguila Narváez; Octavio Ismael Córdova Huanca; Olga Gloria Grefa Cerda; Patricio Alberto Chimbo Yumbo; Patricio Wuilson Aguinda Aguinda; Reinaldo Lusitande Yaiguaje; Rosa Teresa Chimbo Tanguila; Segundo Ángel Amanta Milán; Simon Lusitande Yaiguaje; and Teodoro Gonzalo Piaguaje Payaguaje.

17. "PERSON" means and refers to any natural person or any business, legal or governmental ENTITY, or association.

18. "REPUBLIC OF ECUADOR" means and refers to the governing political body in Ecuador, INCLUDING all branches of government and political subdivisions, its current and former presidents, attorneys general, judges, prosecutors, other officials, politicians, partners, contractors, employees, representatives, agents, agencies, officers, attorneys, accountants, assigns, or any other person acting, or purporting to act, on the REPUBLIC OF ECUADOR's behalf, either directly or indirectly, INCLUDING: Lenin Moreno; Rafael Correa; Martha Escobar; Patricio Garcia; Alexis Mera; Alberto Acosta; Ana Alban; Galo Chiriboga; Rene Vargas Pazos; Mauricio Montalvo Samaniego; Judge Alberto Guerra Bastidas; Judge Efrain Novillo Guzmán; Judge Germán Yánez Ricardo Ruiz; Judge Juan Evangelista Núñez Sanabria; Judge Leonardo Ordóñez Pina; Judge Nicolás Augusto Zambrano Lozada; Judge Juan Carlos Encarnación Sanchez; Judge Cruz María Ávila Delgado; Judge Marco Antonio Yaguache Mora; Judge Milton David Rafael Toral Zevallos; Judge Alejandro Kleber Orellana Pineda; Judge Lilia Marlene Ortiz Vásquez; José María Borja; Washington Pesántez; Cecilia Armas Erazo de Tobar; Jorge German; Diego Borja (former Economic Policy Minister); Esperanza Martinez; Diego

García Carrión; Alianza Pais; the National Intelligence Secretariat; and any current or former official at the offices of the Fiscal, Prosecutor General, or Attorney General.

19. "SELVA VIVA" means and refers to Defendant Selva Viva Selviva Cia. Ltda., and its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

20. "YOU" and "YOUR" mean and refer to Steven Donziger, The Law Offices of Steven R. Donziger, and Donziger & Associates, PLLC, and where applicable, their officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

**DOCUMENTS REQUESTED**

1. All DOCUMENTS evidencing or relating to any domestic or foreign ASSET that YOU OWN or CONTROL.

2. All DOCUMENTS evidencing or relating to any information concerning the identity, location and/or value of YOUR domestic or foreign PROPERTY, domestic or foreign income, and/or domestic or foreign ASSETS.

3. All DOCUMENTS evidencing or relating to YOUR OWNERSHIP or other interest in, and value of, any domestic or foreign real estate.

4. All DOCUMENTS evidencing or relating to any OWNERSHIP interest, direct or beneficial, that YOU have in any real or personal PROPERTY, whether domestic or foreign, INCLUDING cooperative corporation shares, automobiles, trucks, other motor vehicles, boats, artwork, jewelry, aircraft, stocks, bonds, commodities, securities, partnership interests, patents, inventions, trade names, copyrights, royalty agreements, promissory notes, drafts or other commercial paper, or causes of action.

5. All DOCUMENTS evidencing or relating to YOUR current OWNERSHIP of any inherited PROPERTY, INCLUDING those ASSETS YOU received or are entitled to future

receipt of, from any estates in which YOU may have or have had an interest, as well as the current value of such PROPERTY.

      6.     All DOCUMENTS evidencing or relating to YOUR current OWNERSHIP interest in any domestic or foreign ENTITIES or ACCOUNTS, as well as the current value of such PROPERTY and, if the PROPERTY was sold or transferred since the issuance of the Court's March 4, 2014 Judgment (Dkt. 1875), as modified, the date of such transfer, the identity of the purchaser, and the value received for such transfer.

      7.     All originals or copies of all financial statements, checks (fronts and backs of all checks) and/or wire transfers for bank, brokerage or trust ACCOUNTS, whether active or inactive, open or closed, relating to YOUR ASSETS, dated on or after the issuance of the Court's March 4, 2014 Judgment (Dkt. 1875), as modified.

      8.     All DOCUMENTS evidencing or relating to any balance sheets, income statements, inventories, profit and loss statements, and any other documents or information showing YOUR ASSETS, PROPERTY, expenses, and/or liabilities, dated on or after the issuance of the Court's March 4, 2014 Judgment (Dkt. 1875), as modified.

      9.     All DOCUMENTS evidencing or relating to any claims, lawsuits, proceedings, liens or demands that have been threatened and/or filed against YOU since the issuance of the Court's March 4, 2014 Judgment (Dkt. 1875), as modified.

      10.    All DOCUMENTS evidencing or relating to any domestic or foreign savings ACCOUNTS, checking ACCOUNTS, money market ACCOUNTS, investment ACCOUNTS, certificates of deposit, or any other ACCOUNTS in which YOU have or have had an interest since March 4, 2014, wherever found.

11.     All DOCUMENTS evidencing or relating to any means by which YOU, since March 4, 2014, have transferred, paid, received, or conducted any financial transactions or any other transaction involving an exchange of value.

12.     All DOCUMENTS evidencing or relating to any interest in any ASSET that YOU have transferred, sold, assigned, pledged, gifted, encumbered, or otherwise disposed of since the issuance of the Court's March 4, 2014 Judgment (Dkt. 1875), as modified.

13.     All DOCUMENTS evidencing or relating to any debts or credits due, owing, or which will become due or owing to YOU, wherever found, including documents relating to any terms on which such debts may be, have been, are, or will be forgiven or not enforced.

14.     YOUR filed federal tax returns from 2014 until the present.

15.     YOUR filed state tax returns from 2014 until the present.

16.     All DOCUMENTS evidencing or relating to filed federal corporate tax returns from 2014 until the present that relate to YOUR ASSETS.

17.     All DOCUMENTS evidencing or relating to filed state corporate tax returns from 2014 until the present that relate to YOUR ASSETS.

18.     All DOCUMENTS evidencing or relating to any financing provided to YOU, INCLUDING all promissory notes, security agreements, and UCC-1 financing statements. This REQUEST INCLUDES documents sufficient to show the original amount of the financing, the PERSON or ENTITY to whom due, balance owing, payments, maturity and collateral, and any other DOCUMENTS relating to any such debt.

19.     All DOCUMENTS evidencing or relating to all PROPERTY, whether personal or real, tangible or intangible, vested or contingent that YOU have received, or hereafter may receive, directly or indirectly, or to which YOU have or hereafter obtain any right, title or

interest, directly or indirectly, that is traceable to the ECUADOR JUDGMENT or the enforcement of the ECUADOR JUDGMENT anywhere in the world.

20. All DOCUMENTS evidencing or relating to any acts taken by YOU or the LAGO AGRIO PLAINTIFFS to monetize or profit from the ECUADOR JUDGMENT since March 4, 2014, INCLUDING by selling, assigning, pledging, promising, transferring, borrowing against, or encumbering any interest therein.

21. All DOCUMENTS evidencing or relating to any communication between YOU and any PERSON or ENTITY since March 4, 2014 concerning the ECUADOR JUDGMENT or any attempts by anyone, successful or not, to monetize or profit from it.

22. All DOCUMENTS evidencing or relating to any PERSON or ENTITY who financially supported or invested in, was asked to financially support or invest in, or who offered to financially support or invest in any aspect of the ECUADOR JUDGMENT or the enforcement thereof.

23. All DOCUMENTS related to the ECUADOR JUDGMENT TRUST.

24. All DOCUMENTS related to AMAZONIA RECOVERY LIMITED, INCLUDING:

a. All DOCUMENTS using or discussing the creation of any code names, alternate names, pseudonyms, nicknames or other naming conventions ("alternate names"), other than the legal name for AMAZONIA RECOVERY LIMITED;

b. All DOCUMENTS related to the appointment of any PERSON, INCLUDING Julian Jarvis, Ermel Gabriel Chavez Parra, Luis Francisco Yanza Angamarca, and Pablo Fajardo Mendoza to the board of directors of AMAZONIA RECOVERY LIMITED;

c. All DOCUMENTS related to the membership, responsibilities and operations of the AMAZONIA RECOVERY LIMITED STEERING COMMITTEE;

d. All ACCOUNTINGS related to AMAZONIA RECOVERY LIMITED;

e. All DOCUMENTS related to any shares, rights, title, or interest in AMAZONIA RECOVERY LIMITED held directly or indirectly by YOU at any time;

f. All DOCUMENTS related to GT Nominees Limited, Torvia Limited, or any other shareholder in AMAZONIA RECOVERY LIMITED;

g. All DOCUMENTS related to the true beneficial OWNERS of the shares of AMAZONIA RECOVERY LIMITED;

h. All DOCUMENTS, INCLUDING ACCOUNT opening documents and periodic statements, related to all savings, checking, money market, brokerage or any other credit or debit ACCOUNTS belonging to AMAZONIA RECOVERY LIMITED, operated by AMAZONIA RECOVERY LIMITED, CONTROLLED by AMAZONIA RECOVERY LIMITED or for which AMAZONIA RECOVERY LIMITED is a signatory; and

i. All DOCUMENTS related to any PERSON or ENTITY, who financially supported or invested in, was asked to financially support or invest in, or who offered to financially support or invest in AMAZONIA RECOVERY LIMITED.

25.  All DOCUMENTS evidencing or relating to any past or present trust, corporation, or other ENTITY created to hold, distribute, administer, or otherwise affect any proceeds of the ECUADOR JUDGMENT.

26.  All DOCUMENTS evidencing or relating to any payment, proceeds, compensation, revenue, or any other thing of value YOU have received, contracted to receive, or

have been promised related to any aspect of YOUR involvement in the ECUADOR LITIGATION, ECUADOR JUDGMENT, and/or ECUADOR ENFORCEMENT ACTIONS.

27.     All DOCUMENTS evidencing or relating to any attempted or completed sale or transfer of any license, copyright, life rights, trademark, media rights, or other right to exploit, market or publicize any aspect of the ECUADOR LITIGATION, the ECUADOR JUDGMENT, and/or the ECUADOR ENFORCEMENT ACTIONS, and YOUR involvement or the involvement of any other PERSON or ENTITY therein.

28.     All DOCUMENTS evidencing or relating to any actual, contemplated, anticipated, or potential movie, documentary, book, television program, podcast, or other media project relating in any way to the ECUADOR LITIGATION, the ECUADOR JUDGMENT, or the ECUADOR ENFORCEMENT ACTIONS, INCLUDING YOUR role and any value YOU might receive in connection therewith.

29.     All DOCUMENTS evidencing or relating to any payment, compensation, revenue, or any other thing of value YOU have delivered, contracted to deliver, or have promised to any PERSON or ENTITY from any proceeds that may be received from the ECUADOR JUDGMENT or the ECUADOR ENFORCEMENT ACTIONS.

30.     All DOCUMENTS evidencing or relating to any attempted or completed sale, assignment, or transfer of rights, title, claims, or interest of any proceeds or other interest held by YOU, whether directly or indirectly, in the ECUADOR JUDGMENT or the ECUADOR ENFORCEMENT ACTIONS, whether or not such attempt was successful.

31.     All DOCUMENTS evidencing or relating to any distribution of the proceeds from enforcement of the ECUADOR JUDGMENT.

32. All DOCUMENTS evidencing or relating to any dispute concerning or relating to any monies raised in connection with the ECUADOR LITIGATION, the ECUADOR JUDGMENT, the ECUADOR ENFORCEMENT ACTIONS, and/or the ECUADOR JUDGMENT TRUST, INCLUDING any dispute regarding the beneficiary or beneficiaries of the ECUADOR JUDGMENT and ECUADOR JUDGMENT TRUST.

33. All DOCUMENTS evidencing or relating to funding commitments in support of the ECUADOR LITIGATION or ECUADOR ENFORCEMENT ACTIONS from any PERSON or ENTITY, INCLUDING from the following:

    a. Kohn Swift & Graf, P.C.

    b. Russell DeLeon

    c. Orin Kramer

    d. Torvia Limited

    e. Burford

    f. 88 Capital

    g. Equitable Outcomes

    h. Jonaks Limited

    i. Satee GMBH

    j. David Sherman III

    k. Glenn Krevlin

    l. Michael Donziger

    m. Russell O. Wiese

    n. TC Payment Services International

    o. AMAZONIA RECOVERY LIMITED

p. Woodsford Litigation Funding Limited

34. All DOCUMENTS evidencing or relating to how monies (totaling $32,360,647) shown in the below chart as "commitments" from investors in the ECUADOR LITIGATION were expended, the identification of any ACCOUNTS into which any portion of said monies were deposited, or any specific amounts received or expended by YOU at any time:

**Funding for the Enterprise**

| Investor | Investments Contributed | Commitment Amounts[1] |
|---|---|---|
| Kohn Swift & Graf, P.C. | $ 6,360,647 | $ 6,360,647 |
| Russell DeLeon | $ 1,500,000 | $ 2,000,000 |
| Orin Kramer | $ 150,000 | $ 150,000 |
| Torvia Limited | $ 3,413,367 | $ 7,250,000 |
| Burford | $ 4,000,000 | $ 15,000,000 |
| 88 Capital | | $ 250,000 |
| Equitable Outcomes | | $ 150,000 |
| Jonaks Limited | | $ 200,000 |
| Satee GMBH | | $ 300,000 |
| David Sherman III | | $ 250,000 |
| Glenn Krevlin | | $ 250,000 |
| Michael Donziger | | $ 150,000 |
| Russell O. Wiese | | $ 50,000 |
| TC Payment Services International | $ 424,948 | |
| Amazonia Recovery Limited | $ 149,000 | |
| TOTAL | $ 15,997,963 | $ 32,360,647 |

PX 2143 *Confidential*

[1] [illegible]

PLAINTIFF'S EXHIBIT 2143

Plaintiff's Exhibit 2143 p. 1 of 1

Plaintiff's Exhibit 4900 p. 114 of 144

35. All DOCUMENTS evidencing or relating to any ACCOUNTINGS, reports, summaries, analyses, statements, ledgers, or any other kind of record relating to how funds received in support of the ECUADOR LITIGATION, ECUADOR JUDGMENT, and/or ECUADOR ENFORCEMENT ACTIONS have been received or expended, INCLUDING

anything prepared in response to a demand by the Union of People Affected by Texaco (aka UDAPT) and their agents and representatives.

36. All DOCUMENTS evidencing or relating to any and all ASSETS, benefits, payments, or things of value that have been or will be conferred, offered, or promised to YOU or any agent, attorney, or representative of YOU or the LAGO AGRIO PLAINTIFFS (INCLUDING attorneys in this action, attorneys in the ECUADOR LITIGATION, Pablo Fajardo Mendoza, Servicios Fromboliere Compania Limitada, Luis Yanza, Julio Prieto Méndez, Juan Pablo Sáenz, Andrew Woods, Aaron Marr Page, Laura Garr, Brian Parker, Joseph Kohn, Patricio Salazar Cordova, Agustin Salazar, Serafin Angel Cajo, and SELVA VIVA), by the REPUBLIC OF ECUADOR, INCLUDING the date, description, medium and purpose of such benefits, payments, or things of value and the identification of all PERSONS and/or ENTITIES involved in, and documents concerning such ASSETS, benefits, payments, or things of value.

37. All DOCUMENTS evidencing or relating to the current ASSETS or liabilities of the AMAZON DEFENSE FRONT.

38. All DOCUMENTS evidencing or relating to YOUR current OWNERSHIP interest in AMAZONIA RECOVERY LIMITED.

Dated: April 16, 2018
New York, New York

GIBSON, DUNN & CRUTCHER LLP

By: ______________________

Randy M. Mastro
Andrea E. Neuman
200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

William E. Thomson

333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7891
Facsimile: 213.229.6891

STERN, KILCULLEN & RUFOLO LLC
Herbert J. Stern
Joel M. Silverstein
325 Columbia Tpke, Ste 110
P.O. Box 992
Florham Park, New Jersey 07932-0992
Telephone: 973.535.1900
Facsimile: 973.535.9664

*Attorneys for Chevron Corporation*