UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHEVRON CORPORATION,

               Plaintiff,

       v.

STEVEN DONZIGER, *et al.*,

               Defendants.

11 Civ. 0691 (LAK)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF CHEVRON CORPORATION'S
MOTION TO HOLD STEVEN DONZIGER IN CONTEMPT OF COURT FOR HIS
FAILURE TO COMPLY WITH THE COURT'S MARCH 5, 2019 ORDER**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

STERN, KILCULLEN & RUFOLO LLC
325 Columbia Tpke, Ste 110
P.O. Box 992
Florham Park, New Jersey 07932-0992
Telephone: 973.535.1900
Facsimile: 973.535.9664

*Attorneys for Chevron Corporation*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................... 1

BACKGROUND .................................................................................................... 2

ARGUMENT ......................................................................................................... 5

I.   The Court Should Find That Donziger Is in Civil Contempt of the Forensic
     Inspection Protocol Order ............................................................................ 5

II.  Donziger Must Obey the Court's Forensic Inspection Protocol Order Even If He
     Intends to Appeal an Order Holding Him in Contempt ................................... 7

III. To Coerce Donziger's Compliance, the Court Should Impose Monetary Sanctions,
     and Then Imprisonment If Donziger Continues to Refuse to Comply ................ 8

CONCLUSION ...................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cascade Capital, LLC v. DRS Processing LLC*,
   No. 3:17-cv-00470-RJC-DSC, 2018 WL 4705559 (W.D.N.C. Oct. 1, 2018) ........................10

*CBS Broad. Inc. v. FilmOn.com, Inc.*,
   814 F.3d 91 (2d Cir. 2016) ................................................................................................9

*Chevron Corp. v. Donziger*,
   296 F.R.D. 168 (S.D.N.Y. 2013) ......................................................................................8

*Chevron Corp. v. Donziger*,
   974 F. Supp. 2d 362 (S.D.N.Y. 2014) ............................................................................11

*Cook v. Rockwell Int'l Corp.*,
   935 F. Supp. 1452 (D. Colo. 1996) ...........................................................................10, 11

*Cordius Trust v. Kummerfeld Assocs., Inc.*,
   658 F. Supp. 2d 512 (S.D.N.Y. 2009) .............................................................................10

*F.T.C. v. Verity Int'l., Ltd.*,
   140 F. Supp. 2d 313 (S.D.N.Y. 2001) ..............................................................................9

*In re de Kleinman*,
   906 F. Supp. 170 (S.D.N.Y. 1995) .................................................................................12

*Herbstein v. Bruetman*,
   241 F.3d 586 (7th Cir. 2001) .........................................................................................11

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*,
   No. 03 CIV.5562 JGK AJP, 2005 WL 1983905 (S.D.N.Y. Aug. 18, 2005) ........................10

*Maness v. Meyers*,
   419 U.S. 449 (1975) ........................................................................................................8

*McDonald v. Head Criminal Court Supervisor Officer*,
   850 F.2d 121 (2d Cir. 1988) .............................................................................................8

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
   369 F.3d 645 (2d Cir. 2004) ...........................................................................................5, 7

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
   624 F.3d 123 (2d Cir. 2010) .............................................................................................8

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*S.E.C. v. Princeton Econ. Int'l Ltd.*,
  152 F. Supp. 2d 456 (S.D.N.Y. 2001) ...................................................................................10

*Sistem Muhendislik Insaat Sanayi Ve Ticaret, A.S. v. Kyrgyz Rep.*,
  12-CV-4502 (ALC), 2018 WL 5629900 (S.D.N.Y. Oct. 31, 2018) .........................................9

*United States v. City of Yonkers*,
  856 F.2d 444 (2d Cir. 1988), *rev'd on other grounds sub nom. Spallone v.*
  *United States*, 493 U.S. 265 (1990) .........................................................................................9

*United States v. Lundwall*,
  1 F. Supp. 2d 249 (S.D.N.Y. 1998) ..........................................................................................7

*United States v. Miller*,
  626 F.3d 682 (2d Cir. 2010)...............................................................................................1, 8

*United States v. Pescatore*,
  637 F.3d 128 (2d Cir. 2011)....................................................................................................8

*In re Van Vleet*,
  No. 08-CV-01645-WYD, 2009 WL 3162212 (D. Colo. Sept. 30, 2009)...............................11

## PRELIMINARY STATEMENT

Steven Donziger has yet again refused to obey this Court's clear commands, continuing his pattern of intentional obstruction of discovery in these post-judgment proceedings.  In light of Donziger's "obdurate refusal to make any serious, good faith effort to produce the documents" pursuant to Chevron Corporation's ("Chevron") subpoenas and the Court's orders of March 19, 2018, July 23, 2018, and October 18, 2018, the Court on March 5, 2019 found that "outside examination of his ESI is an entirely reasonable, and perhaps the only, way to obtain compliance without imposing sanctions that would be far more onerous."  Dkt. 2171 at 2, 8.  The Court then entered a Forensic Inspection Protocol as an order of the Court, requiring Donziger to complete two simple tasks: (1) identify his communication devices and communication media within three business days (i.e., by March 8, 2019), and (2) surrender those devices and media to a neutral forensic expert on March 18, 2019.  Donziger refused to comply with these unambiguous directives, and it is clear he will not comply absent the imposition of contempt sanctions.

Indeed, in recent days Donziger has expressly stated his intention to "voluntarily go into civil contempt," rather than comply.  Dkt. 2173-1 at 1.  Donziger suggests he can flout this Court's Forensic Inspection Protocol order and would be relieved of his obligation to comply with the order if he files a notice of appeal after being held in contempt.  Donziger is wrong: "[A]ll orders and judgments of courts must be complied with promptly and . . . while a party has a right to appeal . . . , absent a stay, he must comply promptly with the order pending appeal." *United States v. Miller*, 626 F.3d 682, 689 (2d Cir. 2010) (citation and quotation marks omitted). Thus, absent a stay of the order—which Donziger has neither sought nor received—Donziger *must* obey it pending any appeal.

1

Donziger's disregard for this Court's authority and his legal obligations must end. Donziger has asked the Court to hold him in contempt, and, given Donziger's continued flouting of this Court's unambiguous orders, the Court should now oblige.   Accordingly, Chevron respectfully requests that the Court find that Donziger is in civil contempt of the Forensic Protocol Order (Dkt. 2172), and impose sanctions sufficient to compel compliance.   Under the circumstances here, Chevron submits that, while the Court has a number of potential options, significant monetary sanctions, followed promptly by ordering Donziger's imprisonment if his intransigence continues, are warranted.

## BACKGROUND

One year ago, on March 19, 2018, Chevron filed an application by order to show cause seeking leave to, among other things, conduct post-judgment discovery.  Dkts. 1965, 1966.  On that same day, the Court issued a modified version of Chevron's proposed order to show cause and held that "leave of court [was] not required" for Chevron to conduct post-judgment discovery in aid of enforcement of the monetary portions of the Judgment.  Dkt. 1968 at 3.  It further ordered that Donziger and those acting "at his direction" who had notice of the order "preserve and maintain within the United States any and all documents relating to the Judgment or compliance therewith."   *Id.* at 2.  Chevron then served Donziger with a restraining notice, information subpoena, requests for production of documents, and a deposition notice on April 16, 2018.  *See* Dkt. 1989 at 1.  Donziger's response was to "obdurate[ly] refus[e] to make any serious good faith effort to produce the documents" requested.  Dkt. 2171 at 2; *see also id.* at 3–16 (discussing Donziger's pattern of non-cooperation and defiance).

On May 4, 2018, after Donziger informed Chevron that he would not appear for a deposition and would not commit to providing responses to the discovery requests, Chevron filed

its first motion to compel Donziger to respond.  Dkt. 1989.  Donziger attempted to justify his withholding of documents on the ground that "the supplemental judgment supposedly justifying discovery is currently on appeal."  Dkt. 2073-5 at 1, 4–5.  After making some modifications to Chevron's discovery requests, the Court granted Chevron's first motion to compel on July 23, 2018, and ordered Donziger to comply with his discovery obligations. Dkt. 2056 at 1–2. Donziger, however, continued to withhold and conceal responsive documents (producing only twenty-two pages in response to more than thirty requests), refused to answer questions at his deposition, and refused to conduct a reasonable search for responsive materials.  *See* Dkt. 2073 at 3; Dkt. 2108 at 2.  This necessitated the filing of Chevron's second motion to compel.  Dkt. 2073.

On October 18, 2018, the Court granted Chevron's second motion to compel in its entirety and, once again, ordered Donziger to comply with the discovery requests forthwith and sit for a further deposition.  Dkt. 2108 at 2.  In addition, due to Donziger's blatant "stonewalling of post-judgment discovery," the Court ordered a forensic inspection of Donziger's electronic devices and media.  *Id.*  The Court asked the parties to confer and propose to the Court a process for the forensic examination.  *Id.* at 2–3.

On October 25, 2018, Donziger filed a letter with the Court, stating that he would be "unable to comply with the order dated October 18, 2018."  Dkt. 2118 at 1.  In an attempt to justify his refusal to comply, Donziger repeated arguments that the Court previously considered and rejected, taking the position that his disagreement with and appeal of prior orders somehow stayed his obligation to comply.  *See id.* at 3.  That same day, he notified counsel for Chevron of his decision to "go into contempt" and refused to engage in any substantive discussion regarding the forensic examination, which led Chevron to submit its own proposal.  *See* Dkt. 2119-2 at 3;

3

Dkt. 2119 at 1; Dkt. 2171 at 4–6.  He has since refused to produce any documents or sit for deposition.

After holding a conference on the proposed protocol, and hearing argument on the protocol submitted by Chevron, the Court entered the Forensic Inspection Protocol.  *See* Dkt. 2171 at 1–11, 15 (explaining that forensic inspection was necessary "only because Donziger unjustifiably has refused to comply with his discovery obligations").  The Forensic Inspection Protocol, entered on March 5, 2019, ordered Donziger to do two things: (1) provide the neutral forensic expert and Chevron's forensic expert with a "representation listing under penalty of perjury [of] all devices" he has used to "access or store information or for communication since March 4, 2012," and "a list of all accounts" he has used for communication and document storage since March 4, 2012; and (2) permit the neutral forensic expert to "take possession" of his devices and give the neutral forensic expert "access" to his accounts.  *See* Dkt. 2172 ¶¶ 4–5.

Donziger was required to furnish the list of his devices and accounts by March 8, 2019.  He failed to do so.  Instead, on March 11, 2019, Donziger sent an email to the neutral forensic expert and Chevron's counsel that stated his intent to defy the Court's orders:

> I clearly have stated that I will voluntarily go into civil contempt of the legally unfounded orders in order to obtain proper appellate review.  Judge Kaplan and Chevron have known this <u>long before</u> starting the pointless process of having you appointed and crafting a review protocol, etc.  So I hope you have not cleared your schedule to work on this matter, because, as Chevron knows, I will not be producing documents . . . .

Dkt. 2173-1 at 1 (original emphasis).[1]  And, as promised in his March 11, 2019 correspondence, Donziger refused to surrender his devices and account information to the neutral forensic expert, who, as ordered by the Court, went to Donziger's address at noon on March 18, 2019 to collect

---

[1]  In a letter filed on March 12, 2019, Chevron notified the Court of this correspondence and its intent to file a contempt motion if Donziger failed to comply with his obligations to turn over his devices to the neutral forensic expert on March 18, 2019.  Dkt. 2173 at 1.

them.  *See* Exhibit 1 to the Declaration of Anne Champion ("Exhibit 1") (neutral forensic expert Krehel noting that Donziger refused to turn over devices, including iPhone and Macbook Air system).

## ARGUMENT

Donziger has intentionally disobeyed the Court's Forensic Inspection Protocol order.  For this defiance he has no excuse.  On the contrary, he has proclaimed that he *wants* this Court to hold him in contempt.  Donziger apparently believes that such a contempt finding, once appealed, will eliminate his obligation to comply with the Court's order.  Donziger is mistaken: Whether under appeal or not, all orders of this Court, unless stayed, must be obeyed.

The Court should find Donziger in civil contempt and, given his stubborn refusal to comply with his discovery obligations, impose significant monetary sanctions to compel his compliance with the Forensic Inspection Protocol order, followed by imprisonment if Donziger continues to defy the Court's order.

**I.     The Court Should Find That Donziger Is in Civil Contempt of the Forensic Inspection Protocol Order**

"A party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner."  *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (citation and quotation marks omitted). All three criteria are satisfied here.

This Court's Forensic Inspection Protocol order directed Donziger to take two clear, concrete steps in the two weeks following its issuance.  Donziger has never expressed any uncertainty regarding what was required.  First, on or before March 8, 2019, Donziger was

5

required to provide to the neutral forensic expert and Chevron's forensic expert a list of "all devices he has used to access or store information or for communication since March 4, 2012," and a list of all accounts (such as email accounts, accounts for document management services, and messaging accounts) Donziger has used since March 4, 2012.  Dkt. 2172 ¶ 4.  The Court provided precise guidance on what information each list was to include:  "[F]or each of the Devices whether he has possession, custody, or control of the Devices and, if not, stating the reason why that is so, . . . and the present location of the Devices," and for the accounts, "whether he presently has the ability to access those accounts, and if not, stating the reasons why that is so."  *Id.*  In addition, to ensure that its directive was abundantly clear, the Court provided illustrative examples of the types of devices and accounts that Donziger was to include.  *Id.*

Second, on March 18, 2019 at 12 p.m., Donziger was to "turn over all Devices in his possession, custody or control to the Neutral Forensic Expert" and, "to the extent information contained in any of Donziger's accounts/media is not stored on any of Donziger's available Devices," to "provide the Neutral Forensic Expert with the information and/or things necessary to access and image his accounts and media."  *Id.* ¶ 5(a).  Donziger was also to provide the Neutral Forensic Expert with "any usernames, passwords, or other information . . . required to access any of the electronically stored information on any of the produced Devices or Media."  *Id.* ¶ 5(b).  The Court's order was clear with respect to what devices and information Donziger was to produce, when, where, and to whom.  *Id.* ¶¶ 5(a)–(b).

Donziger's failure to comply with these unambiguous obligations is equally clear. Donziger, in fact, has openly stated his intent not to comply.  Dkt. 2173-1 at 1.  Instead of providing the required list of devices and accounts on March 8, 2019, Donziger sent a letter to the neutral forensic expert on March 11, 2019 stating that he will not comply with the Court's

order unless and until his forthcoming appeal is resolved:  "[I]f the appellate court ultimately affirms Judge Kaplan's merits ruling on the authorizing motion and his overall handling of the post-judgment proceedings, then I will cooperate with the order of the court . . . .  Until such time, you should not expect to hear more from me."  *Id*.  On March 18, 2019, Donziger made good on his "promise"—he failed to surrender his devices to the neutral forensic expert and withheld his account information.  *See* Exhibit 1.

That Donziger "has not diligently attempted to comply [with the Court's discovery orders] in a reasonable manner," *Paramedics*, 369 F.3d at 655, is clear from both his words and deeds.  Donziger stated that he does not intend to comply with the Court's Forensic Inspection Protocol order, he did not timely and under the penalty of perjury provide a list of devices nor did he provide any list of accounts (as required by Paragraph 4 of the Forensic Inspection Protocol), and he did not provide access to any of the devices or accounts (as required by Paragraphs 5(a) and 5(b) of the Forensic Inspection Protocol).

Donziger's contempt of the Forensic Inspection Protocol order could not be clearer.  The Court should hold Donziger in contempt of that order.[2]

## II.     Donziger Must Obey the Court's Forensic Inspection Protocol Order Even If He Intends to Appeal an Order Holding Him in Contempt

In stating his intention to defy the Court's Forensic Inspection Protocol order, Donziger asserted that he need only "cooperate with the order of the [C]ourt" if the Second Circuit "affirms [Your Honor's] merits ruling on the authorizing motion."  Dkt. 2173-1 at 1.  Donziger is wrong.

---

[2]  In addition to constituting clear acts of contempt, Donziger's pattern of refusing to follow this Court's discovery orders, including the Forensic Inspection Protocol order, may also constitute obstruction of justice in violation of 18 U.S.C. § 1503.  *See, e.g.*, *United States v. Lundwall*, 1 F. Supp. 2d 249, 251–54 (S.D.N.Y. 1998) (refusing to dismiss indictment alleging violations of § 1503 based on "concealment of documents during civil discovery").

7

It is well established that "all orders and judgments of courts must be complied with promptly." *Maness v. Meyers*, 419 U.S. 449, 458 (1975).  Absent a stay of the Forensic Inspection Protocol order—and none has been sought or issued here—Donziger "must comply promptly with" that order, even "pending appeal." *United States v. Miller*, 626 F.3d 682, 689 (2d Cir. 2010) (quoting *Maness*, 419 U.S. at 458).  Donziger's disagreement with the Forensic Inspection Protocol order neither operates as a stay of that order nor "negate[s] the existence of [Chevron's] . . . rights while the order [is] still in effect." *Id.*

Even if the Forensic Inspection Protocol order were "legally unfounded," as Donziger erroneously claims (Dkt. 2173-1 at 1), Donziger would nonetheless be obligated to comply with it.  As the Second Circuit has held, "[i]t is axiomatic that a court order must be obeyed, even assuming its invalidity, until it is properly set aside." *United States v. Pescatore*, 637 F.3d 128, 144 (2d Cir. 2011) (citation and quotation marks omitted); *see also, e.g.*, *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988) ("[A]ll litigants, including pro ses, have an obligation to comply with court orders.").  Because this Court "ordered [Donziger] to furnish discovery," and Donziger has not obtained a stay of that order, he "must comply with that order," full stop. *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 209 (S.D.N.Y. 2013) (Kaplan, J.) (citing *Maness*, 419 U.S. at 458).

## III.    To Coerce Donziger's Compliance, the Court Should Impose Monetary Sanctions, and Then Imprisonment If Donziger Continues to Refuse to Comply

This Court has multiple options to ensure that Donziger complies with the Forensic Inspection Protocol order.  A court is "free to consider the full record in the case in order to choose the appropriate sanction." *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (citation and quotation marks omitted).  On this record, Chevron believes that substantial monetary sanctions, followed promptly by ordering Donziger's imprisonment if he

still does not comply with the Forensic Inspection Protocol order, would be appropriate remedies.

Imposing substantial monetary sanctions that increase each day until Donziger is in full compliance with the Forensic Inspection Protocol order could be a first step. *See, e.g.*, *United States v. City of Yonkers*, 856 F.2d 444, 459–60 (2d Cir. 1988) (coercive fine of $100 per day, doubling each day to a maximum of $1 million per day), *rev'd on other grounds sub nom. Spallone v. United States*, 493 U.S. 265 (1990); *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98–100, 102–03 (2d Cir. 2016) (affirming district court's sanction of $10,000 per day imposed for nine days, where court's order was clear, proof of non-compliance was unequivocal, and defendant was not diligent in complying); *F.T.C. v. Verity Int'l., Ltd.*, 140 F. Supp. 2d 313, 317–19 (S.D.N.Y. 2001) (Kaplan, J.) (civil contempt sanction of $5,000 per day, increasing to $10,000 per day beyond stated deadline); *Sistem Muhendislik Insaat Sanayi Ve Ticaret, A.S. v. Kyrgyz Rep.*, 12-CV-4502 (ALC), 2018 WL 5629900, at *3 (S.D.N.Y. Oct. 31, 2018) (imposing contempt sanctions on defendant of "$5,000 per day commencing thirty days of this order" for "impeding post-judgment discovery").  But given Donziger's brazen refusal to comply with the Forensic Inspection Protocol order, his refusal to satisfy the costs judgment against him and Chevron's inability to date to collect on the full amount of that costs judgment, it is possible that even significant monetary sanctions may be ineffective in bringing Donziger into compliance.  In fact, it is foreseeable and indeed likely that Donziger will refuse to satisfy the civil fines in the same manner in which he has refused to satisfy this Court's costs judgment or comply with this Court's orders of March 19, 2018, July 23, 2018, October 18, 2018, and March 5, 2019.  Instead, he may use any additional time to conceal or destroy his electronic devices and data.

If monetary sanctions prove to be ineffective, the Court should order that Donziger be imprisoned until he has fully complied with the Forensic Inspection Protocol order.  *See, e.g.*, *S.E.C. v. Princeton Econ. Int'l Ltd.*, 152 F. Supp. 2d 456, 463 (S.D.N.Y. 2001) (ordering continued "confinement [of contemnor] in the Metropolitan Correctional Center on an order of civil contempt" until he turned over assets in compliance with court's order); *Cordius Trust v. Kummerfeld Assocs., Inc.*, 658 F. Supp. 2d 512, 525 (S.D.N.Y. 2009) ("Arrest is an appropriate coercive sanction for civil contempt, so long as its purpose is not punitive but is instead to compel the contemnor to perform the required act." (citation and quotation marks omitted)).

The Court also has at least two additional options that may remedy in part Donziger's noncompliance with the Forensic Inspection Protocol order.  First, the Court could order the U.S. Marshals to go to Donziger's address and seize any devices falling within the definition of Paragraph 4 of the Forensic Inspection Protocol (or permit the neutral forensic expert to do so with the assistance of the U.S. Marshals).  *See, e.g.*, *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, No. 03 CIV.5562 JGK AJP, 2005 WL 1983905, at *2 (S.D.N.Y. Aug. 18, 2005) (noting that because defendants failed to comply with an attachment order, "Judge Koeltl granted [the plaintiffs'] request for an order directing the United States Marshals to seize certain property in [the defendants'] residences"); *Cascade Capital, LLC v. DRS Processing LLC*, No. 3:17-cv-00470-RJC-DSC, 2018 WL 4705559, at *4 (W.D.N.C. Oct. 1, 2018) (ordering, as a civil contempt sanction, the "United States Marshal . . . to secure the [Defendant's] premises and to enable Plaintiff to enter the premises and recover any pertinent information located therein, including digital devices on which [any relevant] information may be stored"); *Cook v. Rockwell Int'l Corp.*, 935 F. Supp. 1452, 1464 (D. Colo. 1996) (noting, in

considering civil contempt sanctions, that the court was "empowered to order the impoundment of documents by the United States Marshals").

Second, the Court could order Donziger to surrender any passports he has until he complies with the Forensic Inspection Protocol order, so as to ensure that he does not take his electronic devices beyond the jurisdiction of the United States.  As the Seventh Circuit has explained, because a court has "the power to imprison a recalcitrant litigant for contempt," that "impl[ies] the lesser power to set conditions on freedom," including ordering the "[s]urrender[] [of] one's passport." *Herbstein v. Bruetman*, 241 F.3d 586, 589 (7th Cir. 2001); *see also, e.g.*, *In re Van Vleet*, No. 08-CV-01645-WYD, 2009 WL 3162212, at *16 (D. Colo. Sept. 30, 2009) (ordering seizure of a passport where party in contempt had "continuously flouted the Court's authority and defied numerous court orders").  Donziger has significant connections to Ecuador, where he has frequently traveled.  *See, e.g.*, *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 617 n.1662 (S.D.N.Y. 2014) (noting that Donziger spent approximately 187 out of 1,460 days in Ecuador between 2007 and 2011); Dkt. 2128-2 at 49–65 (documenting Donziger's travel from October 2015 to November 2018).  Now that the "heat is turned up," *Herbstein*, 241 F.3d at 588, there is a risk that Donziger may decide to flee the country with his devices, and seizing any passports he has would eliminate that risk.[3]  In that scenario, Donziger could "get his passport back whenever he pleases" if he complies with the Forensic Inspection Protocol order.  *Id.* at 589.

---

[3] Based on his testimony in this action, Donziger may have multiple passports, and thus the Court should order him to surrender any passports he may have if it is inclined to impose this remedy.  *See* Dkt. 1395-1 at 62–68 (Donziger admitting that he had two passports and had traveled to Ecuador using a passport he had reported as having been lost).

In view of Donziger's obdurate refusal to comply with this Court's orders, strong measures are required to vindicate this Court's authority and ensure compliance with its orders. To do so, it almost certainly will be necessary for this Court to order Donziger's imprisonment, given his knowing and intentional refusals to comply. Yet even in that scenario, Donziger would have the "keys to [his] freedom in [his] pocket and [could] walk out by simply complying with the court order." *In re de Kleinman*, 906 F. Supp. 170, 172–73 (S.D.N.Y. 1995). If Donziger does end up being arrested and imprisoned, he will have no one to blame but himself.

## CONCLUSION

This Court's order regarding the Forensic Inspection Protocol is clear and unambiguous, and Donziger has never claimed the contrary, even as he has broadcast his refusal to comply. The proof of Donziger's intentional noncompliance with that order is equally clear and convincing—indeed, without question, wholly beyond dispute. As a consequence, the Court should find that Donziger is in civil contempt of the Forensic Protocol Order (Dkt. 2172) and impose sanctions sufficient to compel compliance.

Dated:  March 20, 2019                                     Respectfully submitted,

New York, New York                                        GIBSON, DUNN & CRUTCHER LLP

                                                          */s/ Randy M. Mastro*

                                                          Randy M. Mastro
                                                          Andrea E. Neuman
                                                          200 Park Avenue
                                                          New York, New York 10166
                                                          Telephone: 212.351.4000
                                                          Facsimile: 212.351.4035

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

STERN, KILCULLEN & RUFOLO LLC
Herbert J. Stern
Joel M. Silverstein
325 Columbia Tpke, Ste 110
P.O. Box 992
Florham Park, New Jersey 07932-0992
Telephone: 973.535.1900
Facsimile: 973.535.9664

*Attorneys for Chevron Corporation*