# ANNEX A



**1 Mark Square
London EC2A 4EG
United Kingdom**

Robert Zink
Acting Chief, Fraud Section,
& Daniel Kahn, Chief FCPA Unit
Criminal Division, Washington DC 20530
**Via Email to**
Criminal.division@usdoj.gov
Fcpa.fraud@usdoj.gov

David L Anderson, US Attorney
Stephanie Hinds, Deputy US Attorney
Criminal Division
US Attorney for Northern District of California
Heritage Bank Building
150 Almaden Blvd, Suite 90
San Jose, CA 95113

Robert Khuzami, Deputy US Attorney
& Laura Grossfield Birger
Chief Criminal Division
US Attorney for the Southern District
of New York, Criminal Division
One, St Andrew's Plaza
New York, NY 10007

John R. Lausch, Jr
US Attorney for the Northern District of
Illinois, 219 S Dearborn Street,
5th Floor
Chicago, Il 60604

15th March 2019

**Re:  Abuse of due process and breaches of US laws; denial of justice for victims of severe pollution in Ecuador and persecution of their legal representatives**

Dear Sirs/Madams,

I am a co-founder and director of Global Witness, an International NGO focussed on addressing the links between environmental exploitation and human rights abuses.[1] Global Witness' mission has led us to investigate the situation faced by US lawyer Steven Donziger and his Ecuadorian attorney colleagues and clients, most of them Indigenous peoples and poor farmers in the Amazon rainforest. For decades, these peoples have suffered from massive pollution, a legacy from US oil firm Texaco's operations in that country.  The US oil company Chevron assumed the liabilities of Texaco when it took over the company in 2001 so from hereon, this document will refer to Chevron.

In 2011, Mr Donziger and his colleagues, as legal representatives for the Ecuadorian communities, won a sizeable judgement in Ecuadorian courts against Chevron. That judgment has been affirmed by three appellate courts in Ecuador, including last July by the country's Constitutional Court – the highest court in the land - in a unanimous decision.  The communities had initially sought justice and compensation in US Federal Court in New York.  But, following years of litigation in the United States, Chevron's argument that Ecuador was the appropriate jurisdiction prevailed. The litigation

---

[1] For more about Global Witness and our work, see here:  https://www.globalwitness.org/en-gb/about-us/, and here: https://www.globalwitness.org.

thus moved to Ecuador, where the victims of the pollution won their judgement in a case where Chevron had accepted jurisdiction.

Sadly, instead of paying compensation to the victims, Chevron decided to go on the offensive, seemingly aiming to "demonise" the victims together with their legal team. Mr Donziger and others became the target of a civil "racketeering" lawsuit, brought before a US court, where the case was conducted without a jury, and where the judge refused to consider critical evidence. The judge, Lewis A. Kaplan, relied heavily on testimony of a supposed "fact" witness – one whom Chevron has acknowledged paying substantial sums – possibly, by now, up to at least $2 million in cash and benefits. This person had admitted being corrupt and was coached for 53 days by Chevron lawyers before testifying. I have to say that over the past two decades of my own investigations into corruption throughout the world, not to mention those of my colleagues, I cannot think of a better example of a major conflict of interest. The circumstances of these payments and the need for such extensive coaching of a witness by a major corporation to testify in its favour, should surely be considered as major red flags for possible corruption – and as such, there is an urgent need for these circumstances to be investigated.

As part of the racketeering case, Chevron aggressively issued dozens of subpoenas to environmentalists, journalists, filmmakers, attorneys, financial benefactors, and others who had expressed some support for the Ecuadorians. As Mr. Donziger and other lawyers pursued a judgment enforcement action in Canada (where Chevron maintains substantial assets), the company won an exorbitant costs order from Judge Kaplan that has resulted in the freezing of Mr. Donziger's bank accounts. This has severely impacted his ability to live, support his family (which includes a young child) and continue to serve as an advocate for his clients. Chevron is now using a post-trial motion to try to seize all of Mr. Donziger's electronic devices and online accounts, or hold him in contempt of court.

There is much that we find disturbing from our investigations into the very large and complex facts of this case. As previously mentioned, one of our major concerns relates to the undisputed fact of the payment of large sums of money to the aforementioned fact witness - an individual named Alberto Guerra. We have also reviewed a letter from Mr. Donziger to your offices dated 9th November 2017,[2] which requests an investigation into the legality of these payments, and into other apparently disturbing or irregular elements of the case. The basis of the request seems uncontroversial: U.S. federal law clearly prohibits **all** payments to fact witnesses *"for or because of the [witness'] testimony under oath,"* except for payments for travel and similar expenses related to testifying. It would seem clear that the large payments to Mr. Guerra go well beyond such basic expenses. Indeed, Chevron acknowledged putting Mr. Guerra on a monthly "salary" at a rate some **50 times** higher than his prior earnings. It even appears that Chevron may **still** be paying this salary, five years after the conclusion of the RICO case.

If any of this is true—and the claim is that Chevron acknowledges it—then it is hard to see how this is not a case of extraordinary corruption of U.S. judicial procedure by a wealthy and well-connected oil company doing anything to protect itself from a sizeable foreign judgment, as Mr. Donziger has alleged.

Mr. Donziger's letter of the 9th November 2017 details a number of other shocking irregularities regarding the quasi-criminal, but non-jury, "racketeering procedure" he was subjected to. Notable, amongst other serious matters, is the fact that Mr Guerra, while under oath during a separate international arbitration procedure, admitted that he had lied substantially when he testified in the

---

[2] See here: https://chevroninecuador.org/assets/docs/2017-11-09-adc-doj-letter.pdf

RICO case before Judge Kaplan.  Further, forensic analysis would appear to destroy a central claim Guerra had made during the RICO case: That he had introduced a "ghostwritten" judgement to the original trial judge's computer in Ecuador.  This post-trial digital analysis of the hard drive of the presiding judge in the Ecuador case, demonstrates instead that the judge himself wrote his judgment, rather than receiving it from the plaintiffs, as Mr. Guerra had alleged.  This was a claim relied on as a key fact by Judge Kaplan, but which now appears to be thoroughly discredited.  Neither of these key elements have been heard by any court in the US.  It appears there is substantial evidence regarding the falsity of the Guerra testimony - and so it would appear to be entirely reasonable to conclude that any judicial decision resting to any significant extent on the truth of Mr. Guerra's word can only be considered highly suspect at a minimum.

Mr Donziger's letter is forceful, to say the least.  We do not find this surprising.  If even half of the details Mr. Donziger provides are true as he describes them, he has truly suffered a grave injustice.  Disturbingly, if that were to be the case, it would in effect, surely mean that the American judicial system had been corrupted.  Given the well-documented global phenomenon of corruption of our democratic political space by corrupt vested-interests – that such corruption could now be reaching into the checks and balances provided by the judicial system, I am sure you would agree, would be an appalling conclusion.

We now understand that the nature of the threat against Mr. Donziger has also escalated in the last year. Based on the highly flawed decision in the "racketeering" case, described above, attorney disciplinary authorities in New York, where Mr. Donziger was licensed to practice law, have temporarily stripped him of his law license - his very livelihood - on a pure "collateral estoppel" theory, without even affording him a hearing.  It is difficult to understand how such an argument has credibility, given that no court has considered the above-mentioned evidence that would appear to destroy the central plank of the civil Rico judgement - which to repeat, has been rejected by four layers of courts in Ecuador.

The summary removal of Mr. Donziger's law license, in a court process in which Mr Donziger was denied his rights to defend himself, was justified on the basis that he had been designated an "*immediate threat to the public order.*" Given that Mr Donziger has continued to practice law for almost half a decade since the end of the civil Rico case, and has not had a single client complaint throughout his 25 years practicing law, such a designation would appear to be inconsistent with reality, not to mention unjust - even, I would suggest, perhaps Kafkaesque.  In our view, in the interests of justice not to mention judicial credibility, there is an urgent need for the authorities to document and explain how this designation came about, including naming those who commenced and carried out this process.

As a result, there has been no possibility to hear more evidence and arguments about the payments to Mr. Guerra, or any of the other compelling evidence of the falsity of Mr. Guerra's testimony that have come to light after the close of the racketeering case, or any other argument related to the serious irregularities of the racketeering case itself.  The existence of this imminent prejudice to Mr. Donziger (the permanent deprivation of his law license) should add urgency to his request for an investigation by your offices.

I have written separately to relevant authorities in the New York Bar about this apparent effort to deny Mr Donziger his rights, and indeed justice and compensation for his clients – thus far with no response.  The effort to deny Mr Donziger an opportunity to present evidence in his defence continues.

Another issue of serious concern relates to the apparent bias in favour of Chevron, of the judge in the civil racketeering case.  Prominent U.S. Appellate Attorney Deepak Gupta (who represented Mr. Donziger) provides an account with shocking detail about the conduct of the trial judge in this declaration: http://stevendonziger.com/wp-content/uploads/2018/02/20180216-Opposition-to-Motion-Decls-All.pdf.

Paragraphs 11 and 12 from Mr Gupta's declaration are cause of particular concern. We understand that concern amongst the legal profession is not confined to attorney Gupta, and includes a number of legal scholars who have written both about the conduct of the RICO case, and now more recently, about the manner in which Mr. Donziger's licence has been removed. Such is our concern about this issue that I think it is appropriate to cite some key elements from Mr Gupta's declaration:

In Paragraph 11, Mr Gupta states:
*"For purposes of this declaration, I will simply state that I was shocked by many aspects of the RICO proceeding, including the acceptance of paid "fact" witness testimony, the unjustified use of secret "John Doe" witnesses, the trial judge's categorical bar on any use of evidence of Chevron's environmental contamination and other bad acts by Chevron, and the trial judge's failure to allow Mr. Donziger a fair opportunity to defend himself."*

I would note our amazement that the judge refused to allow the plaintiffs to produce evidence about the environmental contamination – this was the entire basis for their nearly (by that stage) two decades long litigation effort.  In the absence of a better explanation – and all the more so, given the irregularities and indications of bias raised in Mr Gupta's declaration - such a decision could be cynically viewed as an effort to leave Chevron's "position" as the only argument left to consider.

And then in Para 12, Mr Gupta continues:
*"What I personally witnessed while observing the trial proceedings and scrutinizing the trial transcripts also led me to make a request I have never made in my legal career, before or since: that the case needed to be reassigned to a different judge on remand. See Second Circuit Reply at 58–60. As a former law clerk to a federal district judge and as a practitioner who concentrates his work in the federal courts, I did not make this request lightly, and I did so only after extensive consultation with colleagues. But the particular "firmness" of the trial judge's determinations, the lack of correspondence between his findings and the actual record, and the way in which the findings were made (including the gratuitous comments that often accompanied them) created a significant concern in my mind that he would "have substantial difficulty in putting out of his … mind previously-expressed views or findings." Id. In such cases, Second Circuit precedent makes clear that reassignment is advisable, and I felt it was necessary to request it here in light of the judicial conduct and demeanor that I observed in this case."*

From Global Witness' perspective,  this case is not just about the fate of Mr. Donziger—though to be clear, his fate is important to us.  A lasting injustice to him would surely act to "chill" the important work of other environmental and corporate accountability advocates engaged in similar legal battles against powerful corporations.  This is of particular concern, given our work on the escalating threats, and indeed in many parts of the world, escalating killings and judicial harassment of environmental defenders.  In our view, such a development would be unconscionable – perhaps all the more so, because the US has traditionally been a champion of human rights.

Disturbingly, the questionable litigation against Mr Donziger and colleagues would appear to have provided Chevron with leverage, which it has been using to deny enforcement of the underlying environmental judgement against its assets in other countries – most notably in Canada – where the

Supreme Court unanimously endorsed the right of the Ecuadorians to pursue the company's assets. Such enforcement proceedings are usually streamlined, whereas Chevron has used the racketeering claims—based on the corrupt witness testimony Mr. Donziger seeks investigation of—to forestall any merits hearing in Canada for over six years.  Thus it seems to us that the tens of thousands of Ecuadorians who should be benefitting from the Ecuadorian environmental judgment (many of whom annually die, we understand, from contamination-related health issues) are also suffering from the existence of the racketeering judgment based on apparently corrupt evidence.

For the avoidance of doubt, I must emphasise that we fully acknowledge the US' generally excellent leadership record in the global fight against corruption.  These are achievements that the US should be proud of, which we at Global Witness celebrate.  This is why, over the years, we have frequently sought collaboration with various US law enforcement agencies.  But the questionable circumstances around the manner in which the Civil Racketeering case seems to have been conducted, if true, would appear to stand out as a kind of "festering sore" - one that we fear is leaving a stain on the generally strong reputation of the US judiciary and judicial system.  With each new effort, seemingly aimed at "destroying" Mr. Donziger's professional reputation and ability to practice law, not to mention also to deny justice for his clients in Ecuador, that stain appears ever-more ugly.  Indeed, the conduct of this case increasingly looks like "money and might" are all one needs to prevail over vulnerable Indigenous peoples, regardless of the facts.  Such behaviour, not to mention the associated outcome to date, I have to say in the absence of a better explanation, appears more akin to the kind of corruption that we have documented in a myriad "Banana Republics" over the past two plus decades of our investigations.

**The reasons to justify an investigation by your offices, as requested in Mr Donziger's letter, are many and urgent.  We thus urge your offices as a matter of the highest priority to act on the letter from November 2017, and to investigate the serious matters therein described.**

Such an investigation should get to the bottom of the underlying evidence, and generate a public response to these extraordinary facts, consistent with justice and accountability.  Right now, the current situation would appear to be quite the opposite.  It would appear, based on material in the public domain that a statute designed to take on and prosecute the mafia, may well instead have been used by a large corporation that was found liable for massive pollution, to bully the victims of that pollution, who are some of the most impoverished people on the planet.

This request is all the more urgent given the extraordinary efforts by Chevron and its hundreds of lawyers to target Mr. Donziger, which are taking place as I write – efforts that in the absence of a better explanation, as we have described above, would appear to be based on corrupt and fraudulent claims.

I look forward to hearing from you at your earliest convenience. Please acknowledge receipt of this letter – I can be contacted at: staylor@globalwitness.org

Yours sincerely,

*[signature]*

Simon Taylor

Simon Taylor
Director
Global Witness

www.globalwitness.org

Tel: +44 7957 142 121

**Further details about Global Witness and my work:**
A key priority of my work over the past two decades has been investigation into corruption in the extractive industries – oil, gas and mining.[3] Global Witness' investigations and exposés during this time have illustrated both the scale and nature of corruption in the sector. Our analysis has also informed our international policy work, where we have sought changes to laws and standards aimed at shining a "spotlight" on the otherwise opaque, and frequently corrupt financial and business operations of the sector. I am a co-founder of the international Publish What You Pay campaign (PWYP)[4], which seeks transparency and accountability for the extractives industries.

cc :
Senator Lindsey Graham, Chair US Senate Judiciary Committee
Senator Patrick Leahy, Senior-most Member, US Senate Judiciary Committee
Rep. Jerry Nadler, Chair, US House of Representatives, Judiciary Committee
Rep. Doug Collins, Ranking Member, US House of Representatives, Judiciary Committee

**Note: I will also be forwarding this letter to the Ecuadorian community**

---

[3] For context, see conclusions of a study of key international corruption cases conducted by the OECD (of which the US is a prominent member), which found that of the sectors studied, the extractives sector was responsible for the most cases of major corruption - See OECD study here: http://www.oecd.org/daf/anti-bribery/scale-of-international-bribery-laid-bare-by-new-oecd-report.htm

[4] See here: https://www.pwyp.org