UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                           :
CHEVRON CORPORATION,                       :
                                           :
              Plaintiff,                   :
                                           :
       v.                                  :   11 Civ. 0691 (LAK)
                                           :
STEVEN DONZIGER, et al.,                   :
                                           :
              Defendants.                  :
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**CHEVRON CORPORATION'S REPLY IN SUPPORT
OF ITS CONTEMPT MOTIONS (DKTS. 2175, 2178)**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

STERN, KILCULLEN & RUFOLO LLC
325 Columbia Tpke, Ste 110
P.O. Box 992
Florham Park, New Jersey 07932-0992
Telephone: 973.535.1900
Facsimile: 973.535.9664

*Attorneys for Chevron Corporation*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I.     Donziger Does Not Contest He Is in Contempt of Court ...................................................... 2

        A.     Donziger Has Violated the Forensic Protocol Order ............................................. 2

        B.     Donziger Has Violated the RICO Judgment............................................................. 3

        C.     The Court Should Impose Coercive Sanctions to End Donziger's Contempt..................................................................................................................... 5

II.    Donziger's Attempts to Re-litigate Previously Adjudicated Issues Are Improper................. 6

CONCLUSION............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Chevron Corp. v. Donziger*,
   974 F. Supp. 2d 362 (S.D.N.Y. 2014) ............................................................................ 8, 10

*Cordius Trust v. Kummerfeld Assocs., Inc.*,
   658 F. Supp. 2d 512 (S.D.N.Y. 2009) .................................................................................. 5

*EM Ltd. v. Republic of Argentina*,
   695 F.3d 201 (2d Cir. 2012) ................................................................................................ 7

*Galella v. Onassis*,
   533 F. Supp. 1076 (S.D.N.Y. 1982) .................................................................................... 6

*Huber v. Marine Midland Bank*,
   51 F.3d 5 (2d Cir. 1995) .................................................................................................. 1, 6

*Lago Agrio Plaintiffs v. Chevron Corp.*,
   409 F. App'x 393 (2d Cir. 2010) .................................................................................... 9, 10

*Maggio v. Zeitz*,
   333 U.S. 56 (1948) .............................................................................................................. 6

*Maness v. Meyers*,
   419 U.S. 449 (1975) ............................................................................................................ 5

*Maresco v. Evans Chemetics*,
   964 F.2d 106 (2d Cir. 1992) ................................................................................................ 8

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
   369 F.3d 645 (2d Cir. 2004) ............................................................................................ 2, 4

**Rules**

Fed. R. Civ. P. 26(b)(1) .............................................................................................................. 7

## PRELIMINARY STATEMENT

Donziger claims he is refusing to obey this Court's orders "as a matter of principle," but there is nothing principled about it. Dkt. 2184 at 4. Indeed, in his 12 pages of excuse-making and finger-pointing, he proves only that he is in contempt of this Court. Donziger concedes that monetizing his own shares in the Ecuadorian judgment proceeds by using them to procure services from David Zelman "can be seen" as being "in conflict with" the RICO Judgment (*id.* at 7)—as he must concede because he has repeatedly told this Court that any such monetizing would, in fact, violate this Court's judgment. *E.g.*, Dkt. 2051 at 2. In the face of this contempt, the best that Donziger can come up with is to claim he "do[es] not specifically recall" the "reasons" why he could possibly have considered this conduct to have been permissible. Dkt. 2184 at 7. But Donziger does not even attempt to address his express admission to Zelman that, "[j]ust to be clear, I am barred by court order in the U.S. from collecting fees on the matter." Dkt. 2180-4 at 2.

As for this Court's order that Donziger turn over his electronic devices to the neutral forensic expert, Donziger has "made [his] position . . . very clear" that he is refusing to comply and is "seeking a contempt finding." Dkt. 2184 at 1, 8 n.3. Donziger concedes he chose not to "articulat[e] challenges" to the Forensic Protocol Order he has decided to flout, and instead treats his contempt as an opportunity to launch another laundry-list of complaints about matters that have no relevance to the narrow questions before the Court. *Id.* at 5. But it is well established that a "'contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy.'" *Huber v. Marine Midland Bank*, 51 F.3d 5, 8 (2d Cir. 1995) (affirming imprisonment contempt sanction for lawyer who, *inter alia*, "testified that, 'as a matter of principle,' he will not pay the Court-imposed fines") (citation omitted).

Accordingly, it is now beyond doubt that Donziger's refusal to comply with this Court's clear and unambiguous orders is willful, that he is in contempt of this Court's orders, and that strong measures are required to compel his compliance.

## ARGUMENT

### I. Donziger Does Not Contest He Is in Contempt of Court

Donziger has no answer to the merits of Chevron Corporation's ("Chevron") contempt motions. Instead, he admits his contempt of the Court's Forensic Protocol Order and the RICO Judgment. And he says almost nothing about the consequences of that contempt, other than to erroneously suggest that, because he plans to appeal any contempt finding, he should not face any sanctions at this stage.

#### A. Donziger Has Violated the Forensic Protocol Order

Donziger invites the Court to find him in contempt for refusing to comply with the Forensic Protocol Order, and the Court should accept his invitation. As Donziger admits, he has decided to go into "contempt as a matter of principle rather than submit to the review process" mandated by this Court. Dkt. 2184 at 4–5. Donziger likewise admits that he is "refusing to produce" his "devices and online passwords." *Id.* at 8 n.3. While Donziger sometimes says he "will be unable to comply," he has presented no evidence of an *inability* to comply, but rather a willful refusal, dressed up as a matter of "principle." *Id.* at 1, 5. In fact, he expressly states that he does possess at least a "computer, phone, and online account passwords," which he is refusing—not unable—to "hand[] over . . . as the Court has demanded." *Id.* at 4. And the evidence itself confirms that Donziger has refused to comply with the Forensic Protocol Order. Dkt. 2177-1. Nothing more is required to hold him in contempt. *See, e.g.*, *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655–56 (2d Cir. 2004).

2

## B. Donziger Has Violated the RICO Judgment

Donziger concedes that his agreement with Zelman "can be seen" as violating the RICO Judgment. *See* Dkt. 2184 at 7. Donziger does not dispute that he granted an interest to Zelman out of his own shares in the Ecuadorian judgment in exchange for valuable personal services. He is therefore in contempt of Paragraphs 1 and 5 of the RICO Judgment, which imposed a constructive trust on all property, including contingency fees, traceable to the Ecuadorian judgment, and prohibited Donziger from monetizing the Ecuadorian judgment. *See* Dkt. 1875 ¶¶ 1, 5; Dkt. 2179 at 9–10. While Donziger again claims Paragraph 1 does not cover his contingency fee interest in the Ecuadorian judgment, the Court has already held that the "right to a contingent fee and the fee itself are property" and "were and remain immediately assignable." Dkt. 2072 at 7. Indeed, the RICO Judgment expressly imposed a constructive trust on "***all*** property . . . traceable to the [Ecuadorian] Judgment, . . . ***including, without limitation, all rights to any contingent fee*** under the Retainer Agreement and all stock in Amazonia." Dkt. 1875 ¶ 1 (emphasis added). The fact that Zelman's personal services have no litigation financing connection (*see* Dkt. 2184 at 7) is beside the point given the clear command of the RICO Judgment.[1]

Donziger's admitted conduct regarding his deal with Zelman to trade a part of his interest in the Ecuadorian judgment for thousands of dollars of life coaching services violates the RICO Judgment even under Donziger's flawed view of its prohibitions. In fact, Donziger himself has previously admitted that it "could provide a basis for a contempt finding" if he "sold any of [his] interests in the Ecuador judgment." Dkt. 2051 at 2. That is exactly what Donziger admits he did. Donziger's claim that he "did not fully appreciate this at the time these services were provided"

---

[1] Previously, Donziger sought to block Zelman's document production and to disrupt his deposition on the baseless grounds that Zelman's services were somehow "privilege[d]" and could reveal "litigation strategies." Dkt. 2180-8 at 20:19–21:12.

3

and does "not specifically recall" why he entered into this agreement is neither plausible nor relevant. Dkt. 2184 at 7. The RICO Judgment was clear, and actively entering into an agreement to do the opposite of what the RICO Judgment ordered cannot be said to be "'diligently attempt[ing] to comply in a reasonable manner.'" *Paramedics*, 369 F.3d at 655 (citation omitted). Donziger's claim also contradicts his acknowledgment to Zelman that Donziger was "barred by court order in the U.S. from collecting fees on the matter." Dkt. 2180-4 at 2.

Donziger also argues that "his recollection and understanding is that neither Mr. Zelman nor [Donziger] ever understood the agreement to be legally binding," but the evidence contradicts that, too. Dkt. 2184 at 7. Donziger wrote to Zelman, "I write to confirm our agreement . . . . If this is acceptable to you, please send me back an email confirming." Dkt. 2180-2 at 74. Zelman replied, "Thank you for this agreement. I confirm that it is acceptable to me." *Id.* Donziger and Zelman thus formally "confirm[ed]" in writing their "agreement"—without any indication that it was a gratuitous gesture from Donziger that could not be enforced. Under this agreement, Zelman calculated that he would receive, for example, $700,000 for $14,000 in services if $10 billion were collected. Dkt. 2180-3 at 2. This is hardly "an expression of the sentiment of his generosity in providing services to [Donziger] pro bono," as Donziger now asserts. Dkt. 2184 at 7. Zelman's sworn deposition testimony is consistent with the deal's binding character, not Donziger's new story. *See* Dkt. 2180-8 at 58:13–62:10, 76:13–77:24, 78:15–81:11 (Zelman agreeing that "pursuant to th[e] written agreement," he "provided [Donziger] with [Zelman's] Transitions program" and received a portion of "the Ecuador judgment from Mr. Donziger's personal interest"). But even if Donziger was only providing a gift to Zelman, doing so would have violated the RICO Judgment, as Donziger had no right to transfer that interest to anyone other than Chevron.

4

**C.   The Court Should Impose Coercive Sanctions to End Donziger's Contempt**

Chevron's contempt motions outlined the many options available to the Court to remedy Donziger's refusal to comply with the RICO Judgment and the Forensic Protocol Order. *See* Dkt. 2176 at 8–12; Dkt. 2179 at 15–17. Donziger has almost nothing to say about these potential sanctions. Donziger does not dispute that the Court has the power to impose any or all of the sanctions that Chevron has proposed. Donziger notes that Chevron has sought that he "be imprisoned," Dkt. 2184 at 1, but does not contest that imprisonment is a valid civil contempt sanction here—nor could he. *See, e.g.*, *Cordius Trust v. Kummerfeld Assocs., Inc.*, 658 F. Supp. 2d 512, 525 (S.D.N.Y. 2009). In fact, Donziger's response shows that imprisonment is likely the only effective sanction, given his brazen defiance and his assertion that he is "unable to pay" the existing money judgment against him, meaning he would not pay any contempt fine. Dkt. 2184 at 8 n.3.

Instead of challenging the propriety of any of the potential contempt sanctions, Donziger instead suggests that he is somehow exempt from such sanctions because he intends to appeal from any order finding him in contempt. In Donziger's flawed view, he can "resist simply handing over my computer, phone, and online account passwords, as the Court has demanded, until such time as [he] can obtain appellate review." Dkt. 2184 at 4; *see also id.* at 11 (Donziger claiming he will "ultimately comply with the Court's orders if [his] objections are rejected on appeal"). But this Court's orders do not have effect only after appellate review has concluded. To the contrary, "all orders and judgments of courts must be complied with promptly." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). If Donziger wishes to pursue an appeal, that is his prerogative, but it does not mean that he is exempt from compliance with this Court's orders, including any contempt orders.[2]

---

[2] Donziger's past conduct shows that his appeals are just a stalling tactic and an excuse for his press releases. While Donziger says he has "relentlessly sought appellate review," Dkt. 2184 at 11, in his pending appeal, 2d Cir. No. 18-855-cv, he failed to file a reply brief or request argument.

5

Donziger also suggests that there is no need for contempt sanctions with respect to the Zelman motion because he says he will file "an agreement with Mr. Zelman that will make clear that he never had, and/or forfeits and relinquishes, any right, interest, or entitlement he might have, in the Ecuador Judgment," and further states he "will[] . . . negotiate with Chevron to have [the] amount [of Mr. Zelman's services] added to the quantum of the outstanding money judgment they have against me." Dkt. 2184 at 8 & n.3. Given his history, there is no reason for the Court to credit these empty promises. *See, e.g.*, Dkt. 2047 at 1–4 (explaining Donziger's refusals to execute an unqualified, notarized transfer of his Amazonia shares). The Court should instead impose contempt sanctions to remedy Donziger's noncompliance with the RICO Judgment.

## II. Donziger's Attempts to Re-litigate Previously Adjudicated Issues Are Improper

Instead of addressing the merits of Chevron's contempt motions, Donziger's response consists almost entirely of the same "[p]ot [p]ourri of [r]ehashed [a]rguments" that this Court has already considered and rejected on multiple occasions. Dkt. 2171 at 11 (emphasis omitted). This is improper. An opposition to a contempt motion is not the place to seek reconsideration of prior rulings. As the Supreme Court has explained, "when [an order] has become final, disobedience cannot be justified by re-trying the issues as to whether the order should have been issued in the first place." *Maggio v. Zeitz*, 333 U.S. 56, 68–69 (1948); *see also, e.g.*, *Galella v. Onassis*, 533 F. Supp. 1076, 1096 (S.D.N.Y. 1982) ("[A] contempt hearing for violation of a prior court order is not an avenue of attack, collateral or otherwise, of that order."). Even if Donziger's attacks on the Court's prior orders did actually reflect "matter[s] of principle" (they do not), that would not justify his defiance of those orders. *Huber*, 51 F.3d at 8. Donziger's attempts to re-litigate the past therefore has no bearing on Chevron's contempt motions, and the Court should ignore them.

Even if Donziger's approach were a proper response to Chevron's contempt motions, his excuses for his misconduct are false and are based on a willful ignorance of the law and the facts.

6

Donziger argues that "there is no basis to allow discovery" prior to a ruling on the proper interpretation of the RICO Judgment because, under *his* disingenuous interpretation of the law and facts, there is supposedly "zero evidence" of a violation. Dkt. 2184 at 1–3 (emphasis omitted). According to Donziger, post-judgment discovery is permissible only *after* a party has established contempt. But this disregards the basic premise of discovery, which is to obtain facts that one does not yet possess. As the Court has explained, Chevron is conducting post-judgment discovery "to locate Donziger['s] assets that it may reach to satisfy the money judgment and to determine whether Donziger has violated the terms of the permanent injunction." Dkt. 2171 at 2. Seeking post-judgment discovery is appropriate for both purposes. *See, e.g.*, *id.* at 12–13 & n.35; *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) (holding that "broad post-judgment discovery in aid of execution is the norm in federal and New York state courts"); Fed. R. Civ. P. 26(b)(1). And while Donziger inaccurately claims that Chevron's post-judgment discovery efforts directed to third parties have only revealed *de minimis* evidence of his contempt (an assertion that Chevron's October 2018 contempt motion proves is false, *see* Dkt. 2113 at 3–19), even if true that would make getting documents directly from Donziger of even greater importance.

As is his custom, Donziger plays the victim, blaming Chevron and the Court for "patently abusive" post-judgment proceedings. Dkt. 2184 at 1. But Donziger "has brought this on himself." Dkt. 2171 at 2. *Donziger* repeatedly refused to comply with his obligations in responding to Chevron's post-judgment discovery requests, which prompted an order compelling him to do so. *Donziger* failed to comply with that order, which resulted in a waiver of privilege and an order requiring the forensic examination of his devices. Dkt. 2108 at 2–3. *Donziger* failed to raise his "First Amendment" objections (which were baseless anyway) in response to Chevron's subpoena or in opposition to Chevron's two motions to compel, which waived or forfeited them. Dkt. 2045

at 21. And *Donziger* refused to meaningfully participate in drafting the proposed forensic imaging protocol, which resulted in entry of a protocol with which Donziger disagrees. Dkt. 2171 at 5–6.

Donziger complains that "Chevron never agreed to simply sit down and narrow the requests" (Dkt. 2184 at 10), but that is false and beside the point. In response to Chevron's discovery requests, Donziger had an obligation to produce discovery or meaningfully object. He chose to assert only meritless blanket objections that, among other things, omitted any First Amendment objections. When an agreement on Donziger's blanket objections could not be reached, Chevron moved to compel. Dkt. 1989. Donziger had an opportunity to present his arguments regarding Chevron's requests to the Court; the Court narrowed some of Chevron's requests, but rejected most of Donziger's arguments and ordered Donziger to comply. Dkt. 2009 at 3. Yet Donziger still failed to comply, refusing to search for, and by his own admission withholding, responsive documents. Dkt. 2073 at 3–4. After making his arguments and (for the most part) losing, Donziger was required to comply with the Court's orders or not comply and face the associated consequences. Donziger's non-compliance cannot be excused by repeated re-litigation.[3]

Donziger characterizes his contempt of the Forensic Protocol Order as "principled" and designed to "obtain appellate review . . . before critical associational rights are eviscerated." Dkt. 2184 at 4, 8. But as the Court previously determined, Donziger failed to timely raise his alleged "associational rights" arguments, thereby forfeiting them. Dkt. 2045 at 21. And even if they had

---

[3] Donziger's arguments regarding the scope of discovery also ignore that discovery under the Federal Rules is "very broad." *Maresco v. Evans Chemetics*, 964 F.2d 106, 114 (2d Cir. 1992). If Donziger's "entire case file" is responsive to the subpoena as he claims, Dkt. 2184 at 5, then Donziger—having waived all privileges and protections, Dkt. 2108—has an obligation to produce it. Donziger knows this, as he served hundreds of discovery requests on Chevron, costing Chevron more than $17 million to respond. Dkt. 1890 at 18. Despite imposing those costs, Donziger "offered only a handful" of exhibits through witnesses and in post-trial briefing "made little effort to show the relevance or significance" of the remaining exhibits "tendered in a mass submission on the last day of trial." *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 547 (S.D.N.Y. 2014).

not been waived, Donziger's First Amendment arguments are meritless. As the Court has ruled, Donziger lacks standing to assert the alleged First Amendment interests of any and all individuals and organizations assisting Donziger in his unlawful pressure campaign. *Id.* at 33–35. Donziger provides no reason for why the Second Circuit would reverse this Court's discovery orders.

Donziger also criticizes the Forensic Protocol Order, but fails to mention that the Court offered him an opportunity to participate in proposing a protocol which he refused. Dkt. 2171 at 4. In any event, the Forensic Protocol Order was the "final product of [a] deliberate process" through which the Court "modified in important respects" Chevron's proposals to "protect any legitimate interests in privacy that Donziger may have." *Id.* at 6. For example, the Forensic Protocol Order permits Donziger to designate documents as "Highly Confidential and Personal" and the opportunity for review by the Court or a special master of challenges to those designations. *See* Dkt. 2172 at 3–4. And far from being "bewilderingly and unnecessarily complex" (Dkt. 2184 at 5), the Forensic Protocol Order is straightforward. After the neutral expert images Donziger's devices, generates reports, and conducts a forensic analysis of the media, Chevron's counsel is involved *only* to code a small sample of the documents that hit on search terms for responsive documents to be used for further predictive coding and technical search tools. Dkt. 2171 at 9–11. Chevron's forensic expert's involvement is also limited to a narrow subset of potentially responsive documents and is to be carried out "under the supervision of the neutral expert." *Id*. at 10.

Finally, nearly a decade later, Donziger attempts to re-litigate this Court's finding that he waived any privilege objections in the Section 1782 proceeding, which he calls an "outrageous order." Dkt. 2184 at 10. There was nothing outrageous about it, as evidenced by the Second Circuit's affirmance, which "note[d] the exemplary manner in which the able District Judge has discharged his duties." *Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393, 396 (2d Cir.

2010). Moreover, as the Court has explained, Donziger's belated "'privilege log' . . . contained *not even one communication between Donziger and his putative clients*." Dkt. 2171 at 14 n.40.

In this respect, Donziger's gratuitous smears against the Court, Chevron, and its counsel are especially reprehensible. Donziger asserts that "Chevron's top-flight Ecuadorian defense attorneys surely knew[] the 'prosecution'" against Ricardo Reis Veiga and Rodrigo Pérez Pallares "was effectively a routine request for information that could not have been expected to lead to any action in months or years," and was "another falsehood, manufactured by Chevron and cunningly put to use by the Court." Dkt. 2184 at 10. This ignores the evidence—including Donziger's own emails—demonstrating that Donziger and his co-conspirators were colluding with the Ecuadorian government "to ask for the head of Pérez Pallares" and, once the government agreed to their request to open a sham criminal case, "urgent[ly]" sought to feed the government "evidence" while gloating "[i]f things work out, our buddy Ricardo could go to jail." *Donziger*, 974 F. Supp. 2d at 450–51. Donziger's "[i]dea" was to use the criminal case "to pressure" Chevron and force it "to the table for a possible settlement." *Id.* at 448. Worse still, Donziger's pursuit of baseless criminal charges against Reis Veiga and Pérez Pallares was born out of greed and animosity. As he candidly admitted in his book proposal, Donziger "fantasize[d] about putting [his] strong hands around Reis Veiga's neck and squeezing until he begs for mercy" because Donziger "want[ed] him to know how it feels to suffer." Dkt. 1553-1 ¶ 122. And, as Donziger intended, these bogus charges took a heavy toll on Reis Veiga, Pérez Pallares and their families. *See id.* ¶¶ 68–80, 126–29. Pérez Pallares, in fact, was forced to live in exile while the charges were pending and died just weeks after returning home to Ecuador. *Id.* ¶¶ 127–29.

## CONCLUSION

The Court should hold Donziger in contempt and impose coercive sanctions.

| | |
|---|---|
| Dated:  April 15, 2019 | Respectfully submitted, |
| New York, New York | GIBSON, DUNN & CRUTCHER LLP |

/s/ Randy M. Mastro

Randy M. Mastro
Andrea E. Neuman
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

STERN, KILCULLEN & RUFOLO LLC
Herbert J. Stern
Joel M. Silverstein
325 Columbia Tpke, Ste 110
P.O. Box 992
Florham Park, New Jersey 07932-0992
Telephone: 973.535.1900
Facsimile: 973.535.9664

*Attorneys for Chevron Corporation*