UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
:
CHEVRON CORPORATION,    :
:
Plaintiff,    :
:
v.    :  11 Civ. 0691 (LAK)
:
STEVEN DONZIGER, *et al.*,    :
:
Defendants.    :
:
------------------------------------- x

**CHEVRON CORPORATION'S MOTION TO COMPEL LAURA MILLER
TO RESPOND TO POST-JUDGMENT DISCOVERY REQUESTS**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

STERN, KILCULLEN & RUFOLO LLC
325 Columbia Tpke, Ste 110
P.O. Box 992
Florham Park, New Jersey 07932-0992
Telephone: 973.535.1900
Facsimile: 973.535.9664

*Attorneys for Plaintiff Chevron Corporation*

Chevron Corporation ("Chevron") hereby moves the Court to compel Laura Miller to comply with Chevron's First Information Subpoena, Subpoena Duces Tecum, and Subpoena Ad Testificandum (dated Oct. 9, 2018) and produce documents, a privilege log, and answers to its information requests, by 12:00 p.m. on April 27, 2019. Twelve of Chevron's discovery requests match requests made to Donziger that this Court has already approved. *See* Dkts. 2009, 2056.[1]

Ms. Miller, who is married to Steven Donziger, has—like Donziger—refused to participate in discovery. Despite Donziger and Miller's stonewalling, third-party productions have revealed Ms. Miller's deep involvement in Donziger's contempt and in his attempts to avoid paying Chevron's money judgment. Since May 2012, Donziger has redirected over $440,000 of his income into Ms. Miller's accounts. *See* Declaration of John Slavek ¶ 5.[2] In addition, shortly after Donziger's accounts were frozen, bank records show a suspicious "change in patterns of financial transaction activity" that "reduc[ed] . . . available funds in the Donziger bank accounts and increas[ed] available funds in Miller's bank accounts." *See id.* ¶¶ 19–25. In November 2018 longstanding investor Roger Waters transferred $100,000 directly into Ms. Miller's accounts. *See id.* ¶¶ 11–12, 24. Previously, Waters had always deposited investments with Donziger. And Ms. Miller—who previously made at most one transfer per year—then made three separate transfers to unknown accounts. *See id.* ¶¶ 13, 23. Further, Ms. Miller has also deposited third-party checks that Donziger previously had routinely deposited in his own accounts but began signing over to Miller after his accounts were frozen. *Id.* ¶¶ 6–7, 22. She was also included in Donziger's communications with investors and helped organize an Ecuador trip for Donziger supporters. *See* Exs. 3, 4. In fact, Ms. Miller charged to her personal credit card various

---

[1] *Compare* Dkt. 1989-1 (RFPs 1, 10, 19, 20–21, 29 and Information Requests 1, 5, 20–22, 25), with Ex. 1 (RFPs 10, 13, 16, 19, 20–21 and Information Requests 9, 13, 15, 18–20).
[2] Chevron is simultaneously filing a request for leave to file the Declaration of John Slavek.

1

Ecuador-related expenses, including travel to and from Ecuador. *See* Slavek Decl. ¶¶ 14–18.

This behavior was possible only with Ms. Miller's consent and active participation. She possesses information relevant to Donziger's ongoing contempt of the RICO Judgment (Dkt. 1875) and to executing on the Supplemental Judgment (Dkt. 1985). But in the six months since Chevron served its subpoena, Ms. Miller has produced a total of seven pages—claiming all other requested documents are protected by the marital privilege. Yet Ms. Miller has not produced a privilege log, and the requested documents and information are not privileged anyway because they were disclosed to third parties or pertain to financial matters. Of course, Donziger has waived any privilege he might have asserted over Ms. Miller's documents. *See* Dkt. 2108 ¶ 1.

Ms. Miller has not answered Chevron's information requests and failed to appear at a deposition noticed weeks in advance for April 10, 2019. She only recently agreed to appear on April 29, 2019, but she asserts "spousal privilege . . . likely will prevent . . . [her] from answering anything but a few questions," Ex. 5. As a result, this Court's intervention is required.

**Background.** On October 17, 2018, Chevron served its subpoena on Ms. Miller. *See* Exs. 1, 2. Rather than comply, on October 31, 2018 (the production deadline), Ms. Miller responded that a deposition would not be "fair" and that nothing "beyond handing over documents [wa]s necessary." *See* Ex. 6. Ms. Miller also invoked "the spousal privilege," and said she was collecting "financial information" and "should be able to give [Chevron] some initial documents by the end of the week. *Id.* But Ms. Miller did not produce any documents that week.

Chevron then wrote to request that Ms. Miller produce documents, a privilege log, and answers to its information requests by November 15. Ex. 7 at 2. Instead, on November 16, Ms. Miller again wrote to invoke "spousal privilege." Ex. 8. She represented that, if Chevron would "agree in writing that [she would] not be waiving any privilege," then she would "try to make

2

available a limited number of relevant documents" by an unspecified date. *Id.* To accommodate this request, Chevron proposed an agreement under Federal Rule of Evidence 502(e) but, in the absence of an agreement, Ms. Miller "w[ould] need to prepare a log of withheld documents." Ex. 9 at 2 & First Attachment. Chevron extended the deadline, again, to December 17. *Id.* at 2. Ms. Miller never signed any Rule 502(e) agreement.

After additional correspondence, on December 26 Ms. Miller produced seven pages of documents, consisting of two emails from Donziger regarding Ecuador-related press and two emails with Donziger's associates regarding a September 2017 trip to Ecuador. Ex. 10. This miniscule production did not include the financial information that Ms. Miller said she would produce. *See* Ex. 6. Chevron wrote to Ms. Miller, observing that such a small production "appear[ed] [to be] incomplete," and requested any additional documents and a privilege log by January 7, 2019. Ex. 11 at 1. On January 7, Ms. Miller did not produce any documents but replied that the "few" responsive documents she had withheld were entitled to spousal privilege. Ex. 5. She did not produce a privilege log or move to quash. *See id.*

**Legal Standard.** "Where, as here, the objecting party has not made (much less won) a motion to quash or for a protective order, the subpoena, if otherwise enforceable, remains so, and the non-party ignores its dictates at some peril, including a risk of contempt . . . ." *U.S. ex rel. Ortiz v. Mt Sinai Hosp.*, 169 F. Supp. 3d 538, 544 (S.D.N.Y. 2016).

**Analysis.** The Court should compel Ms. Miller to comply with Chevron's document and information requests. Her meager production of seven pages can only be explained by an affirmative decision not to comply. Ms. Miller has produced no financial information despite the facts that she (1) received at least $440,043.65 in investor funds from Donziger since May 2012, Slavek Decl. ¶ 5; (2) deposited checks from third parties that Donziger had routinely deposited in

3

his own accounts but began signing over to Miller after his accounts were frozen, *id.* ¶¶ 6–7, 22; (3) received a direct transfer of $100,000 from investor Roger Waters—who previously had always deposited funds directly with Donziger—and then made three separate transfers to unknown accounts, *id.* ¶¶ 12–13, 23–24; (4) personally paid for expenditures to further Donziger's extortionate campaign, *id.* ¶¶ 14–18, and (5) represented to Chevron that she was collecting financial documents for production. Miller and Donziger's "changes in patterns of financial transactions activity" are highly suspicious and had the "certain effect [of] reduc[ing] . . . available funds in the Donziger bank accounts and increasing available funds in Miller's bank accounts." *Id.* ¶¶ 19–25. Business or financial documents such as "bank accounts, real estate transactions, credit cards, car registration, and payment of insurance premiums" are not protected by the marital privilege. *In re Witness Before Grand Jury*, 791 F.2d 234, 239 (2d Cir. 1986).

Ms. Miller's production omits documents that third parties have produced, such as documents related to her coordinating a trip to Ecuador, *see* Ex. 3; emails between Donziger and investors, *see* Ex. 4; and an email chain in which Katie Sullivan reported to supporters that Sullivan and Donziger would be meeting with Elliott Management Corporation to solicit an investment, *see* Dkt. 2058-14; Dkt. 2113 at 37.[3] These documents are not privileged because they were disclosed to third parties. *See United States v. Taylor*, 92 F.3d 1313, 1331 (2d Cir. 1996).

**Relief Requested.** Chevron respectfully requests that the Court order Ms. Miller to comply with its document and information requests, and to produce a privilege log, by 12:00 p.m. on April 27, 2019. Further, a Court ruling on the spousal privilege as it relates to Ms. Miller's obligation to produce documents will result in a more efficient and productive deposition.

---

[3] Donziger encouraged recipients of that email to delete it. *See* Dkt. 2058-14 at MKS-0000090. It is unclear whether Ms. Miller has destroyed this email or merely withheld it.

5

Dated: April 19, 2019

New York, New York

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

/s/ *Randy M. Mastro*

Randy M. Mastro
Andrea E. Neuman
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035
Email: RMastro@gibsondunn.com

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520


STERN, KILCULLEN & RUFOLO LLC
Herbert J. Stern
Joel M. Silverstein
325 Columbia Tpke, Ste 110
P.O. Box 992
Florham Park, New Jersey 07932-0992
Telephone:  973.535.1900
Facsimile:  973.535.9664

*Attorneys for Plaintiff Chevron Corporation*

## INDEX OF EXHIBITS

| Ex. No. | Date | Document |
|---|---|---|
| 1 | 10/9/2018 | Subpoena to Laura Miller |
| 2 | 10/29/2018 | Affidavit of Service of Subpoena |
| 3 | Various | Third-Party Productions of Emails Regarding Trip to Ecuador |
| 4 | Various | Third-Party Productions of Investor Emails Copying Laura Miller |
| 5 | 1/7/2019 | Email from Laura Miller to Chevron |
| 6 | 10/31/2018 | Email from Laura Miller to Chevron |
| 7 | 11/12/2018 | Letter from Chevron to Laura Miller |
| 8 | 11/16/2018 | Email from Laura Miller to Chevron |
| 9 | 12/12/2018 | Letter from Chevron to Laura Miller |
| 10 | 12/26/2018 | Laura Miller Production (LBMiller_000001-7) |
| 11 | 1/4/2019 | Email from Chevron to Laura Miller |