UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

CHEVRON CORPORATION,

          Plaintiff,

   v.

STEVEN DONZIGER, *et al*.,

          Defendants.

11 Civ. 0691 (LAK)

---

**CHEVRON CORPORATION'S OPPOSITION TO DONZIGER'S MOTION TO QUASH**

STERN, KILCULLEN & RUFOLO LLC
325 Columbia Tpke, Ste 110
P.O. Box 992
Florham Park, New Jersey 07932-0992
Telephone: 973.535.1900
Facsimile: 973.535.9664

*Attorneys for Plaintiff Chevron Corporation*

Although AT&T has interposed no objection to a subpoena Chevron served on April 8, 2019 (the "Subpoena," Dkt 2203-1), Donziger now moves to quash the Subpoena on the grounds that it is supposedly "wildly overbroad" and that "[p]roduction under it without modification would severely violate [his] privacy and [his] constitutional associational rights under the cases and principles set forth in [his] prior briefing." Dkt. 2203 at 2.  As is usual with Donziger, however, his "constitutional" objections are meritless, and his other complaints are intended principally for delay.  Donziger has repeatedly misrepresented or concealed the facts about his assets and non-compliance with the RICO Judgment, and the Subpoena is designed to obtain information necessary to discover those facts.  Indeed, Donziger's failure to meet his own discovery obligations and refusal to comply with the forensic protocol order (Dkt. 2172) underscore the Subpoena's importance.  Donziger cannot now bootstrap his own stonewalling into reasons to further delay third-party responses.  The motion should be denied.

**1.     The Court has already held that Donziger cannot avoid discovery based on the claimed "privacy and constitutional associational rights" reasserted here.**  In reasserting his prior arguments that compliance by a non-party (here AT&T) with Chevron's subpoenas would violate his purported privacy and associational rights, Donziger appears to argue the subpoena "requires disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(A)(iii).  *See* Dkt. 2203 at 1 (citing Dkt. 2026 at 16-18); *id*. at 2-3.  But this Court has already rejected these claims, which are no more persuasive by dint of Donziger's repetition.  *See Chevron Corp. v. Donziger*, 325 F.Supp.3d 371, 285-87, 391-93 (S.D.N.Y. 2018) (holding that (1) Donziger has waived and forfeited the right, and also lacks standing, to object to subpoenas to non-parties in this case based on constitutional associational rights; and (2) even if Donziger had standing, the "extremely substantial interests" of "Chevron (and, for that matter, the United States) ... in seeing to

it that the money judgment of this federal court is satisfied and the equitable remedies contained in its judgment complied with … would be more than sufficient to warrant this Court's denial of the protective order."). Nor is the motion supported by competent evidence. *See id*. at 389.

    **2.** **The Subpoena is relevant and proportional.** The Subpoena contains a single document request: "All documents concerning accounts OWNED by DONZIGER, INCLUDING" account statements and documents reflecting payments by Donziger to AT&T; the date, time, duration, and transmitting and receiving telephone numbers for Donziger's calls and text messages; and Donziger's "@att.net" and "@att.com" email addresses. Dkt. 2023-1, ECF p. 10.

    Here again, this Court's prior rulings largely dispose of the issues. The Court has already ruled that Chevron is entitled to propound discovery to non-party witnesses both (i) to allow Chevron to locate and by appropriate means obtain property or its proceeds in satisfaction of the money judgment (*Chevron Corporation v. Donziger*, 325 F.Supp.3d at 382-83) and (ii) with respect to Donziger's compliance or non-compliance with the RICO Judgment (Dkt. 2056 at 2).

    The Subpoena is relevant to both purposes. As Chevron informed Donziger during the May 13 meet and confer, it is, for example, reasonably calculated to (i) identify bank accounts or other financial resources that Donziger owns that Chevron does not know about, but that he used to pay AT&T; (ii) identify potential investors in the Ecuadorian judgment that Donziger telephoned or texted, and test Donziger's claim that he has not spoken to any in the last year; (iii) identify banks Donziger has called regarding money transfers, as he may, unbeknownst to Chevron, have accounts there; and (iv) ascertain the frequency and duration of Donziger's calls with witnesses before their depositions, and test those witnesses' testimony that those calls were brief.

    Donziger's frequent misrepresentations about material facts regarding these topics necessitate a broader subpoena than might otherwise have been necessary. Donziger has concealed bank

accounts and other assets from Chevron, some of which have been discovered through other third-party discovery. *See* Ex. 1 (Donziger Depo. Tr.) at 52:22–23. Chevron may be able to identify other concealed accounts and assets by using Donziger's phone records to identify banks he has contacted or received texts from about, for example, balances, transfers, or other transactions. Donziger has also misrepresented the extent of his fundraising campaign and the transferring of his personal interest in the Ecuador judgment to others in exchange for services. *See* Dkt. 2179 at 1, 5–8. Chevron can use his phone records to identify potential investors in the judgment that Donziger telephoned or texted, including any whom he contacted during the last year, when he claims not to have done so. Finally, witnesses have given varying accounts about the frequency and length of their discussions with Donziger prior to their depositions, which the records will test. *See* Ex. 2 (Rizack Depo. Tr.) at 194:13–195:5; Ex. 3 (Ford Depo. Tr.) at 45:25–46:9.

To the extent Donziger argues that his scope objections could be resolved through the redaction of documents before they are produced to Chevron, Donziger has yet to articulate any remotely practicable plan for doing so. As counsel explained to Donziger during the meet-and-confer: (i) documents often contain relevant, responsive material commingled with material that, standing alone, might not be; (ii) as a stranger to this massive litigation, AT&T would have no practicable means of redacting the documents based on relevancy, proportionality, or the privacy and associational interests Donziger asserts, and, in any event, would doubtlessly object to shouldering the burden of doing so; and (iii) on this record—which is replete with Donziger's concealment of assets and information from Chevron and this Court, and his contumacious defiance of Court orders to that end—neither Chevron nor the Court could or should trust Donziger to make such redactions. On the other hand, the Subpoena as drafted is straightforward for AT&T to respond to, which may be why AT&T has interposed no objection. Donziger's failure to identify in

3

his motion a viable way to narrow the request suggests that his pleas for delay are just that—tactics to once again delay production of documents he (undoubtedly rightly) fears will be damaging.

Donziger also claims the Subpoena "contains no limitation whatsoever regarding time frame." Dkt. 2203 at 1. But it specifies "the relevant time period for these requests is January 1, 2010 through the present." Dkt. 2203-1, ECF p. 9. While this date range could conceivably be narrowed to begin on, for example, March 4, 2012 (*cf.* Dkt. 2172 at 2–3 (ordering forensic imaging of all electronic devices Donziger has used since March 4, 2012)), the longer period currently specified will provide Chevron with important information regarding Donziger's assets—information that he has sought to conceal in the past—including any fraudulent conveyances prior to this Court's issuance of the RICO Judgment. *See* N.Y. CPLR 213(8) (six-year statute of limitations for fraudulent conveyances). After Donziger's Chase bank accounts were identified during discovery, prior to the entry of the RICO Judgment, he quietly closed his Chase accounts and opened new ones at TD Bank without informing Chevron. *See* Ex. 1 at 110:14-111:9. Donziger's phone records from prior years will assist Chevron in identifying presently concealed financial assets or bank accounts that Donziger owns.

Finally, to the extent Donziger has properly asserted his concerns about privacy or other rights, those rights should yield to Chevron's discovery needs in this instance. As this Court has held, "Chevron (and, for that matter, the United States) have extremely substantial interests in seeing to it that the money judgment of this federal court is satisfied and the equitable remedies contained in its judgment complied with." *Chevron Corp. v. Donziger*, 325 F. Supp. 3d at 392-93. Those interests are "more than sufficient" to overcome Donziger's concerns. *See id.*

## CONCLUSION

Donziger has flouted his discovery duties and has nobody to blame for this third-party discovery but himself. For the foregoing reasons, his motion should be denied in its entirety.

Dated: May 16, 2019

                                            Respectfully submitted,

                                            STERN, KILCULLEN & RUFOLO LLC

                                            /s/ *Joel M. Silverstein*

                                            Herbert J. Stern (*pro hac vice*)
                                            Joel M. Silverstein
                                            325 Columbia Tpke, Ste 110
                                            P.O. Box 992
                                            Florham Park, New Jersey 07932-0992
                                            Telephone:  973.535.1900
                                            Facsimile:  973.535.9664

                                            *Attorneys for Plaintiff Chevron Corporation*

## INDEX OF EXHIBITS

| Ex. No. | Date | Document |
|---|---|---|
| 1 | 6/25/18 | Excerpts from the transcript of Steven Donziger's deposition |
| 2 | 10/5/18 | Excerpts from the transcript of Josh Rizack's deposition |
| 3 | 2/11/19 | Excerpts from the transcript of P. Campbell Ford's deposition |