# EXHIBIT 1

```
                                                        Page 1
 1
 2   UNITED STATES DISTRICT COURT
 3   SOUTHERN DISTRICT OF NEW YORK
 4    C.A. No. 11 Civ. 0691 (LAK)
 5   ------------------------------------x
     CHEVRON CORPORATION,
 6
             Plaintiff,
 7
 8
         - against -
 9
10
     STEVEN DONZIGER, et al.,
11
             Defendants.
12   ------------------------------------x
                 June 25, 2018
13               10:07 a.m.
14
15      Videotaped Deposition of STEVEN
16   DONZIGER, taken by Plaintiff, pursuant to
17   Order, held at the offices of Gibson Dunn &
18   Crutcher LLP, 200 Park Avenue, New York,
19   New York, before Todd DeSimone, a
20   Registered Professional Reporter and Notary
21   Public of the State of New York.
22
23
24
25
```

Page 50

1          DONZIGER
2    Q.   Grinberg?
3    A.   Grinberg.
4         For bank stuff -- well, that's
5 not your question.
6    Q.   My question was how did you
7 search for responsive documents?
8    A.   Well, that's one thing I did.
9 I don't really recall -- I don't really
10 recall -- in e-mail?
11   Q.   No, electronically.
12   A.   You are talking about e-mail?
13   Q.   I'm talking about
14 electronically.
15   A.   I don't know.  I put in various
16 search terms.
17   Q.   Do you recall the search terms
18 you used other than "Sullivan" and
19 "Elliott"?
20   A.   Not really, but I want to be
21 very, very clear.
22   Q.   You need to let me finish my
23 question because the court reporter can't
24 get us talking over one another.  Go ahead.
25   A.   Well, I thought I was talking

Page 51

1          DONZIGER
2 over you.
3    Q.   You were.
4    A.   Can you read the question back
5 or say it again, please?
6         MS. NEUMAN:  What was the last
7 question or part thereof?
8         (The record was read.)
9    A.   Well, I was searching for the
10 Elliott meeting e-mails that I might have
11 had.  You know, I don't recall any other
12 search terms at this point.
13   Q.   Can we turn to Exhibit 5307,
14 page 3, in response to RFP No. 1 you state
15 "I do not, to my knowledge, own or control
16 any foreign assets."
17        Do you see that?
18   A.   Yes.
19   Q.   Do you have any reason to
20 believe you would own foreign assets that
21 you wouldn't be aware of?
22   A.   No.
23   Q.   You don't have any foreign bank
24 accounts?
25   A.   No.

Page 52

1          DONZIGER
2    Q.   You don't own property in any
3 foreign country?
4    A.   No.
5    Q.   You state in the next paragraph
6 "My bank accounts as follows," and then you
7 list five TD Bank accounts.  Do you see
8 that?
9    A.   Yes.
10   Q.   You go on to say "A printout
11 from the TD website reflecting the current
12 status of these accounts is attached.  I
13 hereby attest that these are the only bank
14 accounts I presently use and the only bank
15 accounts I have used since March 4, 2014."
16        Is that an accurate statement?
17   A.   Well, they are the only bank
18 accounts I presently use.  As I read this
19 now, I will sort of modify it slightly,
20 because it is possible that other bank
21 accounts at TD were opened and maybe closed
22 during that period of time.  So maybe there
23 is another bank account or two, but they
24 were all sort of part of the same group of
25 accounts.

Page 53

1          DONZIGER
2    Q.   Well, before stating and
3 underlining "The only bank accounts I have
4 used since March 14th, 2014," what
5 diligence did you do to confirm that
6 statement?
7    A.   Well, I went to my bank and
8 talked to the person at the bank and said I
9 need all my accounts since 2014.  So I
10 think that's accurate, but I'm not 100
11 percent sure.
12   Q.   Did you do anything else other
13 than ask someone at the bank?  Did you look
14 at your own documents, for example?
15   A.   Well, I count on the bank to
16 keep my documents.  Just to be clear, and
17 this is a general matter, if you will allow
18 me, I work alone, I have no assistant, I
19 have no associates and I have no secretary,
20 okay?  So a lot of my reliance for document
21 preservation is on the institutions that I
22 do business with.
23   Q.   Do you do -- you don't work
24 with Mr. Page?
25   A.   We are colleagues, but he

Page 106

1	DONZIGER
2	Q.	You indicate on --
3	A.	I'm going to say this for the
4	record, okay, I'm here in good faith. You
5	have yet -- it is now, I don't know, 12:30,
6	you have yet to ask me about what happened
7	at the Elliott meeting. I am not going to
8	sit here all day while you go through this
9	little game you are playing and try to ask
10	me questions that are beyond the scope of
11	this very limited deposition. So if you
12	want to get information about the Elliott
13	meeting, you should start asking questions
14	now, because I'm telling you and I'm
15	warning you, I'm not going to sit here all
16	day and go through this. You are wasting
17	time.
18	Q.	Mr. Donziger --
19	A.	You are wasting time, Andrea.
20	Q.	This is a discovery deposition.
21	A.	No, it doesn't give you --
22	Q.	Are you going to even let me
23	finish? I didn't interrupt you.
24	A.	Go ahead.
25	Q.	This is a discovery deposition.

Page 107

1	DONZIGER
2	All of my questions are appropriate. I
3	don't agree with your refusals to answer,
4	but they are what they are. We will make a
5	record of your refusals, then we will make
6	an appropriate motion to compel. That's
7	how the process works if you are going to
8	refuse to answer. So don't threaten me or
9	claim that you are being harassed when I
10	have been absolutely 100 percent polite to
11	you, which the video will show.
12	A.	Well, I didn't accuse you of
13	being impolite. I'm simply saying that the
14	questions you are asking go beyond the
15	scope of the deposition as ordered by Judge
16	Kaplan. So why don't you --
17	Q.	We disagree about that, sir.
18	So I'm going to ask my questions.
19	A.	Well, let me tell you what we
20	do agree about. We agree that the Elliott
21	meeting is something that Judge Kaplan
22	ordered, so why don't we focus on what we
23	agree on and get that information out.
24	Q.	I will take the deposition as I
25	believe it is appropriate.

Page 108

1	DONZIGER
2		Now, returning your attention
3	to Exhibit 5313, you indicate that funds
4	are to be wired both to yourself and to
5	Laura B. Miller at a Citibank account. Do
6	you see that?
7	A.	Yes.
8	Q.	Do you have funds that are due
9	and payable to you wired to Ms. Miller's
10	account on a regular basis?
11	A.	No. That wire never happened.
12	Q.	Why is part of this money being
13	directed to Ms. Miller?
14	A.	Because I periodically give my
15	wife money to pay living expenses.
16	Q.	Have any other funds that were
17	raised in connection with the Ecuador
18	judgment been paid to Ms. Miller at your
19	direction?
20	A.	No.
21	Q.	Have any funds --
22	A.	No funds have been paid to
23	Ms. Miller from the Ecuador judgment as far
24	as I know.
25	Q.	Have any funds that are --

Page 109

1	DONZIGER
2	A.	I'm sorry, from funds raised
3	for the case have been paid to Ms. Miller,
4	my wife.
5	Q.	Have any funds raised in
6	connection with the Ecuador judgment since
7	March of 2014 been paid to anybody other
8	than yourself for your benefit?
9	A.	Not that I'm aware of.
10	Q.	I'm going to mark as Exhibit
11	5314 a compilation prepared from documents
12	produced by Ms. Sullivan.
13		(Plaintiff's Exhibit 5314
14	marked for identification.)
15	A.	Is this a Gibson Dunn document?
16	Q.	Yes, sir. But it has Bates
17	numbers from Ms. Sullivan's production. It
18	is a summary document.
19		Looking at page 1 of Exhibit
20	5314, there's a $50,000 deposit to your
21	Relationship Checking 2265 on January 25th,
22	2016. Do you see that?
23	A.	Yes.
24	Q.	Are those funds that were
25	raised in connection with the Ecuador case?

Page 110

1  DONZIGER
2  A. This is beyond the scope.
3  Q. You did not identify account
4  2265 as one of the accounts you have used
5  since 2014. Is there a reason you didn't
6  disclose that account?
7  A. No. I mentioned there might
8  have been other accounts and maybe there
9  was. I don't know. I already said that I
10 gave you the current universe, which is
11 what you are entitled to know, and I said
12 that there might have been other accounts
13 that have been opened and closed.
14 Q. Have you, since March of 2014,
15 have you banked anywhere other than TD?
16 A. I had sort of a complicated
17 history, because during RICO I got asked to
18 leave my prior bank where I banked for
19 many, many years.
20 Q. Chase?
21 A. Chase. I don't remember
22 exactly when that happened. I think it was
23 during the trial or sometime before or
24 after. I don't remember. That's why I'm
25 at TD Bank because Chase asked me to leave.

Page 111

1  DONZIGER
2  So I then went to TD Bank and started
3  banking at TD. I don't remember exactly
4  the date I started, I think it was prior to
5  the RICO judgment, and I opened accounts.
6  Q. Did you bank anywhere between
7  Chase and TD or you went --
8  A. I don't believe I did. I went
9  to TD.
10 Q. And other than having other TD
11 accounts that you may not have identified,
12 do you have accounts at any other financial
13 institutions that you haven't identified?
14 A. Well, I put it in my responses.
15 I had an account at Schwab.
16 Q. Anywhere else?
17 A. I don't believe so.
18 Q. Returning your attention to
19 Exhibit 5314, there are a total of $488,450
20 worth of payments from the Lenczner Slaght
21 Royce & Smith firm, that's the Canadian
22 counsel for the plaintiffs, made to you in
23 2016. What are the origin of these funds?
24 A. Beyond the scope.
25 Q. The $488,450 paid to you by

Page 112

1  DONZIGER
2  Mr. Lenczner's firm, do you still have
3  those funds?
4  A. Beyond the scope.
5  Q. Were the monies that were paid
6  to you by Mr. Lenczner's firm, did they
7  originate with a funder of the litigation?
8  A. It is beyond the scope.
9  Q. Do you have any e-mails or
10 other documents relating to your receipt of
11 these funds?
12 A. Beyond the scope.
13 Q. Did you direct these monies to
14 be paid first to Mr. Lenczner and then have
15 Mr. Lenczner transfer them to you?
16 A. Beyond the scope.
17 Q. You have indicated in your
18 discovery responses that since 2014 your
19 only income has been from working on this
20 case and two rental properties.
21 A. Yes.
22 Q. Do all of the deposits shown on
23 Exhibit 5314 relate to your work on the
24 Ecuador matter?
25 A. Andrea, there is a lot of

Page 113

1  DONZIGER
2  deposits here. You just gave me the
3  document. I have no way of answering that
4  question without studying this document.
5  But, in any event, it is beyond the scope
6  of the deposition. There is dozens of
7  transactions.
8  Q. Well, these are all deposits.
9  You have signed discovery responses
10 indicating that you have a very limited
11 number of sources of income.
12 A. I do. I do.
13 Q. So of these two pages of
14 deposits, and for clarification --
15 A. I mean, it looks like there is
16 more than two pages of deposits, first of
17 all.
18 Q. There is not. I will clarify
19 it for you.
20 A. Okay.
21 Q. The first two pages put the
22 transactions, organize them by source. The
23 second two pages organize them by your
24 different bank accounts. So there is only
25 two pages of transactions.