**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHEVRON CORPORATION,

                Plaintiff,

    v.

STEVEN DONZIGER *et al.*,

                Defendants.

11 Civ. 0691 (LAK)

**MOTION FOR RECONSIDERATION**

The Court denied my motion to quash the Chevron subpoena served on AT&T before I had a chance to respond to Chevron's opposition, which is replete with falsehoods and distortions. Dkts. 2205, 2204, 2203. In its denial, moreover, the Court completely fails to address my overbreadth argument, at best making a single reference to "the reasons set forth in Chevron's memorandum." Because the subpoena is indeed wildly and ominously overbroad—seeking no less than <u>all</u> my call and text messaging records from AT&T for nearly a decade period—Chevron must provide at least some legitimate basis for its demand. Its opposition fails to do so. I respectfully ask the Court to reconsider its denial of my motion to quash.

Chevron provides four purported grounds for its sweeping subpoena. Opp. at 2. Each is either unconvincing or could be easily met with a far narrower subpoena, as follows:

    i.    *Bank account used to pay AT&T bills.* The subpoena could simply ask for a list of accounts used to pay phone bills.

    ii.    *"[T]est Donziger's claim that he has not spoken to any [potential investors] in the last year."* Conspicuously, Chevron provides no record citation for this "claim" by

me. On Friday, I contacted Chevron counsel (Mr. Silverstein) asking for the record location of this erroneous claim and have not received any reply. To whom I *speak* is my business and at the heart of the First Amendment right to associate protected in circumstances such as these, as set out in *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) and subsequent cases. With the AT&T subpoena, Chevron effectively seeks the power to monitor all my communications activity on an ongoing basis. Nothing in our law can justify giving a self-interested party in an ongoing civil litigation this kind of power.[1]

   iii.   *"[I]dentify banks Donziger has called regarding money transfers, as he may, unbeknownst to Chevron, have accounts there."* There is no factual basis for this request. Chevron claims that I have made "frequent misrepresentations about material facts regarding these topics"—yet it provides only one citation. Let's examine that citation. During my June 25, 2018 deposition, I testified as follows regarding a list of five TD Bank accounts that I provided to Chevron as a complete list of my bank accounts responsive to their subpoena:

> As I read this now, I will sort of modify it slightly, because it is possible that other bank accounts at TD were opened and maybe closed during that period of time. So maybe there is another bank account or two, but they were all sort of part of the same group of accounts.

There is no hint of hidden accounts or any other misrepresentation in this testimony.

First of all, my testimony is straightforward and cooperative. Second, it clearly

---

[1] This Court's RICO Judgment has been rejected by courts in Ecuador (most recently in a decision by the Ecuador's Constitutional Court in July 2018) and is still being challenged in Canada, before the Inter-American Commission of Human Rights, and collaterally in proceedings before the Grievance Committee of the First Department in New York, where I have a post-suspension hearing scheduled for September 2019.

       refers to accounts "opened and maybe closed" during a decade-long period of time, merely acknowledging the possibility of now-closed accounts about which I have no data. I immediately followed this testimony by explaining that "I went to [TD Bank] bank and talked to the person at the bank and said I need all my accounts since 2014." I provided to Chevron all the accounts that the TD bank representative gave me in response to my request. It is that simple. Chevron has <u>no basis</u> to suggest the existence of hidden bank accounts, so it tries to manufacture one through a blatantly false and misleading record citation. This conduct is sanctionable.[2]

    iv. *"Ascertain the frequency and duration of Donziger's calls with witnesses before their depositions."* Chevron does its best to dress this claim up with innuendo of impropriety, but of course it does not and cannot claim that any such calls were unlawful or improper. I would add only that the irony of Chevron complaining about conversations with witnesses prior to testimony could not get any richer. I will represent that I did not talk with any deponent for 4-6 hours a day for 53 days, as Chevron did before knowingly and/or recklessly presenting Alberto Guerra and his undeniably false "bribery" testimony to the Court in the RICO trial.

As Chevron almost certainly knows from its analysis of the detailed bank account information it

---

[2] Later in its Opposition, Chevron makes reference to my old Chase accounts. It conspicuously fails to even mention that I acknowledged those accounts in my initial objections to the subpoena (while noting that they were "closed by those entities prior to March 4, 2013" and thus outside the relevant scope) and that I discussed the same in a filing with the Court over a year ago, again noting that "the Chase bank accounts referenced in [Chevron's] reply were closed ***on instruction from Chase*** as a result, I believe, of the allegations in the RICO action." Dkt. 2005 at 1. The fact that Chevron finds it necessary to lard this point with absurd innuendo—describing that I "quietly closed" the Chase accounts in 2012 "without informing Chevron," as if a party in active litigation has any obligation to apprise his adversary of his private finances—only further reveals how intentionally misleading and sanctionable Stern Kilcullen's briefing is.

has already obtained regarding my accounts (and those of my wife), it already has a complete picture of my finances—a picture that I accurately represented in my responses over one year ago. The AT&T subpoena has nothing to do with finding out more information about my finances. It is entirely about digging into confidential associational activity as I and many others continue to seek to hold Chevron accountable for its massive pollution in the Ecuadorian Amazon, pollution that in turn continues to threaten and destroy Ecuadorian lives. This associational activity is deeply protected by the First Amendment.

  The Court should reconsider its denial of my motion and either quash the subpoena or narrow it significantly consistent with my objections.

DATED: May 20, 2019   Respectfully submitted,

            *s/ Steven R. Donziger*
            Steven R. Donziger
            245 W. 104th Street, #7D
            New York, NY 10025
            Tel: (917) 678-3943
            Fax: (212) 409-8628
            Email: sdonziger@donzigerandassociates.com

            *Pro se*