## STEVEN R. DONZIGER, ESQ.

245 WEST 104TH STREET, SUITE 7D
NEW YORK, NEW YORK 10025

212-570-4499 (O)
917-566-2526 (CELL)

*Not presently admitted to practice*

May 27, 2019

**VIA ECF**

Honorable Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

   RE:   *Chevron v. Donziger*, Case No. 11 Civ. 691 (LAK)

Dear Judge Kaplan:

I am gratified to have received the Court's opinion (Dkt. 2209) finally resolving Chevron's March 18, 2018 contempt motion (Dkt. 1966). As Your Honor knows, I repeatedly have requested the Court over the last year to decide the motion and explain the plausibility of Chevron's contempt claims in light of the Court last interpretation of the RICO Injunction in its April 25, 2014 opinion, which expressly authorized me (or explained that it was authorized for me) to continue working on the Ecuador case and "be[] paid, just as [I] ha[d] been paid . . . over the past nine or ten years." Dkt. 1901 at 7-8. Now that I have the Court's recent opinion that radically and I believe illegally expands the scope of its original RICO injunction, I have filed a Notice of Appeal and will prosecute that appeal as expeditiously as possible.

The Court's recent opinion is 74 pages and addresses a wide range of interlinked claims and defenses emerging from a byzantine post-judgment procedural history. Some of the legal issues involved are familiar; many are new. The Court purports to rely on factual claims from the numerous "expert" analyses of my finances.[1] In the end, the Court establishes a series of coercive fines that appear to rise exponentially such that they will escalate to over $1 million per day in a week's time, and reach over $1 billion per day in under three weeks. The fines start accumulating on May 28, 2019—that is, *one* business day after the issuance of the recent opinion.

As the Court knows, I am representing myself *pro se*. I barely have begun to grasp the nuances of the Court's lengthy and complex opinion. I respectfully request a 10-day extension of time in

---

[1] It is worth noting that the Court appears to rest its main contempt finding exclusively on the fact that I received monies it now considers "traceable" to the Ecuador environmental judgment. I never contested the utterly uncontroversial fact that I received some of the funds raised from investors—just as the Court authorized under the terms RICO Inunction in its April 2014 Opinion. Thus no discovery was necessary for the Court to either adhere to its April 204 interpretation or hold me in contempt based on its new understanding of "traceability."

Hon. Lewis A. Kaplan
May 27, 2019
Page 2 of 2

which to fully digest the opinion. At that point, I either will comply with the Court's directives or fully explain why I cannot comply as part of a comprehensive motion to stay pending my appeal.

I will note that I expect to be able to comply with that part of the opinion addressing my 2017 retainer, and to clarify the non-contemptuous status of the purported Zelman agreement. However, as regards the turnover of all of my devices for forensic imaging, and the provision of passwords for all my online accounts, the intrusion into privacy and the constitutional harm would be instantaneous and irremediable, even under the Court's forensic protocol—which, as I have explained, is designed to allow Chevron to access virtually any of my documents it wishes, including core privileged information such my preparation for the bar proceedings set to begin in September. As the Court knows—because I informed Your Honor well in advance and have articulated my position repeatedly along the way—I find myself in necessary contempt of the turnover order for reasons of principle, ethics, and respect for the associational rights of myself and others. I will be making these arguments in short order to the appellate court, which I expect will provide me at least some degree of protection. I note that I repeatedly have assured the Court that I intend to comply fully with its orders if I fail to receive any relief on appeal.

I do not presently see a way that I can comply with the Court's directives on the devices/passwords without extinguishing my legitimate claims for protection and other relief on appeal. However, it might be possible for me to turn over the devices and passwords to a third-party, not controlled by Chevron, under the condition that materials be kept in complete confidence pending resolution of my efforts to seek relief from the appellate court. Such an agreement could preserve my appellate rights while also guaranteeing Chevron satisfaction in the event that appellate relief is denied. I intend to use the extended period of time, if granted, to explore the possibility of such an agreement with Chevron that the parties could jointly submit to the Court for consideration.

                                            Sincerely,

                                            ____/ s /_____

                                            Steven R. Donziger