# EXHIBIT 3-03

# **Index**

| Page(s) | Transcript Citation |
|---|---|
| | *Mary Katherine Sullivan – September 28, 2018* |
| 4 | Tr. at 342:19–25 |
| | *Cliff Eisler  - November 5, 2018* |
| 7–9 | Tr. at 208:9–210:11 |
| | *P. Campbell Ford  - February 11, 2019* |
| 12–14 | Tr. at 88:5–90:10 |
| 15 | Tr. at 113:14–23 |
| | *Glenn Krevlin – December 18, 2018* |
| 19 | Tr. at 134:4–24 |
| 20–22 | Tr. at 145:16–147:4 |
| | *John van Merkensteijn – October 31, 2018* |
| 25–26 | Tr. at 213:24–214:6 |

CONFIDENTIAL

Page 232

1                UNITED STATES DISTRICT COURT

2                SOUTHERN DISTRICT OF NEW YORK

3                 C.A. No. 11 Civ. 0691 (LAK)

4

5    - - - - - - - - - - - - - - - - - X

6    CHEVRON CORPORATION,

7                          Plaintiff,

8         v.

9    STEVEN DONZIGER, et al.,

10                         Defendants.

11   - - - - - - - - - - - - - - - - - X

12    VOLUME II

13

14        CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

15          VIDEO DEPOSITION OF MARY K. SULLIVAN

16          Friday, September 28, 2018, 1:20 p.m.

17                 Cornerstone Research

18                 699 Boylston Street

19             Boston, Massachusetts 02116

20

21

22

23     --- Reporter: Kimberly A. Smith, CRR, CRC, RDR ---

24             Realtime Systems Administrator

25

CONFIDENTIAL

Page 342

1    A.  I guess I'm a little confused because I

2  wasn't asking questions.  Questions were being asked

3  of me.

4    Q.  Well, you certainly never questioned my

5  integrity prior to the time that Chevron subpoenaed

6  you in March of this year, correct?

7    A.  I did without sharing it to you

8  specifically.  I was questioning that there was a

9  lot of contracts that hadn't been finalized.  And I

10  was confused by that.

11      So I would put that into a category of

12  not following through on promises.  And then I

13  learned through the nature of this work that there

14  is not a lot of transparency, probably for really

15  good reasons, and then for reasons that people are

16  just conditioned to not have.  And that was very

17  hard for me to work in.  It was becoming hard for me

18  to work in.

19    Q.  You understand that I told you that Chevron

20  had paid people to follow me around Manhattan at one

21  point, correct?

22      MS. CHAMPION:  Objection.  Outside the

23  scope.  Where are you going with this?  Are you

24  testifying or is she?

25      MR. DONZIGER:  Anne, chill, babe.

4

CONFIDENTIAL

Page 385

1          C E R T I F I C A T E

2       I, Kimberly A. Smith, a Certified Realtime

3    Reporter, Certified Realtime Captioner, Registered

4    Diplomate Reporter, Realtime Systems Administrator,

5    and Notary Public in and for the Commonwealth of

6    Massachusetts, do hereby certify that the foregoing

7    deposition of MARY K. SULLIVAN, who was first duly

8    sworn, taken at the place and on the date previously

9    set forth, was stenographically reported by me and

10    later reduced to print through computer-aided

11    transcription, and the foregoing is a full and true

12    record of the testimony given by the deponent.

13       Before completion of the deposition, review of

14    the transcript was not requested.  Any changes made

15    by the deponent (and provided to the reporter)

16    during the period allowed are appended hereto.

17       I further certify that I am a disinterested

18    person in the outcome of this cause of action.

19       THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT

20    DOES NOT APPLY TO ANY REPRODUCTION OF THE SAME BY

21    ANY MEANS UNLESS UNDER THE DIRECT CONTROL AND/OR

22    DIRECTION OF THE CERTIFYING COURT REPORTER.

23       Signed this 1st day of October, 2018.

24    

25          KIMBERLY A. SMITH, CRR, CRC, RDR

Page 1

```
 1
 2    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 3    Case No. 11 Civ. 0691 (LAK)
      ---------------------------------------x
 4    CHEVRON CORPORATION,
 5                          Plaintiff,
 6          - against -
 7    STEVEN DONZIGER, et al.,
 8                          Defendants.
 9    ---------------------------------------x
10                     November 5, 2018
                       10:22 a.m.
11
12
13        DEPOSITION of CLIFF EISLER, held at
14    the offices of Gibson, Dunn & Crutcher LLP,
15    located at 200 Park Avenue, New York, New
16    York 10166, before Anthony Giarro, a
17    Registered Professional Reporter and a
18    Notary Public of the State of New York.
19
20
21
22
23
24
25
```

Page 208

1                      CLIFF EISLER

2          judgment against me.  This is

3          badgering and harassing a witness.

4          Please move on.  I have questions I

5          need to ask myself.

6                      MS. CHAMPION:  I'm going to

7          introduce a document marked as

8          PX5600.

9          Q        So Mr. Donziger never

10   disclosed to you that he had -- he had a

11   co-counsel on the Ecuador case in the

12   United States, Joseph Kohn, who funded

13   the case for a number of years?  He never

14   disclosed that to you?

15       A        I don't recall.  Maybe he

16   did very early on.  But I don't remember.

17       Q        And did he disclose to you

18   that Mr. Kohn withdrew from representing

19   the Ecuadorian plaintiffs and working

20   with Mr. Donziger after the evidence of

21   fraud started emerging in U.S.

22   proceedings?

23                   MR. DONZIGER:  Excuse me.

24       Excuse me.  Objection.

25                   MR. FERGUSON:  Objection to

Page 209

1                   CLIFF EISLER

2        form.

3                  MR. DONZIGER:  It's totally

4        irrelevant.  This all took place

5        before the RICO trial even happened

6        and the RICO judgment was issued.  I

7        mean this is just an attempt to

8        harass the witness.  Anne, move on.

9        I mean this is ridiculous.

10        Q      I'd like to refer you to

11   paragraph 9 which is on page 3.

12                  MR. DONZIGER:  Objection.

13        And by the way, if you want this

14        witness to testify about Joe Kohn's

15        testimony, let him read the entire

16        testimony.  Let's take an hour break

17        and let him read it.  Total waste of

18        time.

19                  MS. CHAMPION:  I'm happy to

20        give him an extra copy if he wants to

21        take it home.

22                  MR. DONZIGER:  Actually,

23        that wasn't my objection.  That's

24        really cute, take it home.

25                  MS. CHAMPION:  That copy has

Page 210

CLIFF EISLER

1                    CLIFF EISLER
2          to stay with the court reporter,
3          though.
4          Q        So you'll see in that
5     paragraph 9, it says, "From May 2003
6     until November 2009, KSG -- that's Kohn
7     Swift Graf, Mr. Kohn's firm -- was the
8     primary funder of the litigation and
9     related U.S. public relations and other
10    activities."  Do you see that?
11         A        Yes.
12         Q        "During those nearly seven
13    years, the firm paid over $6 million in
14    expenses."  Do you see that?
15         A        Yes.
16         Q        "This included the
17    1.1 million that we provided to
18    Mr. Donziger for legal services and
19    expenses."  Do you see that?
20         A        Yes.
21         Q        When you invested in the
22    Ecuador litigation, did you ever ask to
23    see a list of everyone who had an equity
24    interest?
25         A        No.

Page 259

1

2                C E R T I F I C A T I O N

3

4

5        I, ANTHONY GIARRO, a Shorthand

6    Reporter and a Notary Public, do hereby

7    certify that the foregoing witness, CLIFF

8    EISLER, was duly sworn on the date

9    indicated, and that the foregoing, to the

10    best of my ability, is a true and accurate

11    transcription of my stenographic notes.

12        I further certify that I am not

13    employed by nor related to any party to

14    this action.

15

16

17

    _____

18        ANTHONY GIARRO

19

20

21

22

23

24

25

Page 1

1             UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF NEW YORK
2                CASE NO. 11 Civ. 0691 (LAK)

3

4    CHEVRON CORP.,

5             Plaintiff,

6    -vs-

7    STEVEN DONZIGER, et al.,

8             Defendants.
                                    /

9

10

     * * * * * * * * * * * * * * * * * * * * * * *
11

12   VIDEOTAPED
     DEPOSITION OF:      P. CAMPBELL FORD
13

     DATE TAKEN:         MONDAY, FEBRUARY 11, 2019
14

     TIME:               9:10 A.M. - 12:13 P.M.
15

     PLACE:              1835 NORTH THIRD STREET
16                       JACKSONVILLE, FLORIDA
17   REPORTED BY:        CARMEN THOMAS, REGISTERED
                         PROFESSIONAL REPORTER AND
18                       NOTARY PUBLIC
19

     * * * * * * * * * * * * * * * * * * * * * * *
20

21

22

23

24

25

1            And so this draft agreement proposes that the

2      -- that the FDA would assign you a percentage interest

3      in the proceeds of the Ecuadorian judgment, correct?

4            A     I don't know.

5            Q     Do you want to just read -- I think if you

6      read the third paragraph there, the second "whereas"

7      clause and then -- just take a minute to review the

8      agreement, it's pretty short.

9                 MR. DONZIGER:  Objection.  I mean, there's no

10               testimony he ever looked at the agreement during

11               the relevant time frame.

12                MS. CHAMPION:  Mr. Donziger, this exhibit is

13               attached to a cover letter where -- that clearly

14               refle -- reflects that he did review it, so.

15                THE WITNESS:  I don't read that one that way

16               that you did.  So what's your question?

17     BY MS. CHAMPION:

18           Q     Well, how do you read it?  You tell me how

19     you understood it.  You were the one that was discussing

20     it with him.  So I'm more interested in your views than

21     mine.

22                MR. DONZIGER:  Well, I mean, first of all

23               objection --

24                THE WITNESS:  I don't have a view.

25     BY MS. CHAMPION:

```
                                                    Page 89
 1        Q      Okay.
 2              MR. DONZIGER:  -- lack of foundation.
 3              Why don't you ask him what his understanding
 4        was at the time he read it or if he even has one
 5        that he remembers.
 6              MS. CHAMPION:  That's exactly what I asked
 7        him, Mr. Donziger.
 8              THE WITNESS:  You said that --
 9              MR. DONZIGER:  No, you didn't.  You said what
10        was your understanding.  Ask him if he even has a
11        recollection of what it might have been.
12              There's no evidence he even read it at the
13        time.
14              MS. CHAMPION:  Mr. Donziger, I need to ask
15        you to please refrain from making speaking
16        objections.  If you have an objection to a
17        question, state it shortly and succinctly for the
18        record.  Please stop making speeches and speaking
19        objections.
20              THE WITNESS:  My --
21              MR. DONZIGER:  I'll stop making speaking
22        objections when you stop harassing witnesses from
23        trying to help the people of Ecuador.  Okay?
24              We have a fundamental disagreement about the
25        purpose of these depositions.  I've been enormously
```

Page 90

```
 1            tolerant of this.  Okay?  You've harassed everyone

 2            who's tried to help me and my clients in Ecuador,

 3            20 people.  You flew all the way to Jacksonville,

 4            Florida, for this ridiculousness when he would have

 5            given you the information on the phone anyway.

 6            You're wasting my time, his time.  Even though I

 7            know you and your colleague from Miami are making

 8            huge sums of money billing for this charade.

 9                 Just get to the questions and let's finish

10            this thing, please.

11                 THE WITNESS:  I don't read the second

12            "whereas" clause like you did.  It doesn't say what

13            you said it said in terms of that assignment in the

14            second "whereas" clause.

15   BY MS. CHAMPION:

16       Q    I understand.  I -- I agree with you that it

17   doesn't say all of that in that whereas clause.  But

18   let's just talk about that whereas clause.

19                 "Whereas the FDA is the exclusive beneficiary

20   of Fideicomiso Mercantil de Administracion de Flujos

21   ADAT, the Ecuador trust."

22                 Do you see that?

23       A    Yes.

24       Q    "Which was created on instructions from the

25   Ecuadorian courts to receive, hold and disburse all
```

1      judgment.

2                Do you see that?

3           A      Yes.

4           Q      And it goes on to quote the RICO judgment on

5      page two.  "It imposed a constructive trust for the

6      benefit of Chevron on all property whether personal" --

7           A      Let's please not read all this.  This is

8      exactly what Steven said you were going to do, which is

9      a waste of my time.

10               What is your question to me?

11          Q      Did you read this at the time?

12          A      I would have honestly glanced over it.  My

13     concern would have been --

14               MR. DONZIGER:  Objection.  Objection to this

15          crap.  Okay?  I've had it.  I've had it.  This is

16          so misleading.

17               Why don't you read from the April 25th

18          clarification order that specifically authorizes me

19          and anyone else in the case to raise money and be

20          paid from the money raised.

21               I mean, you're just -- it's just terrible.

22          You're -- you're so unethical the way you ask

23          questions.

24               And it doesn't even matter.  There was never

25          an agreement between Mr. Ford and myself.  That's

Page 173

1                    CERTIFICATE OF REPORTER

2

3     STATE OF FLORIDA)

4     COUNTY OF BROWARD)

5

         I, Carmen J. Thomas, Registered Professional
6     Reporter, and Notary Public, do hereby certify that I
      was authorized to and did stenographically report the
7     foregoing deposition of P. CAMPBELL FORD; that a review
      of the transcript was requested; and that the foregoing
8     transcript, pages 1 through 172 is a true record of my
      stenographic notes.

9

         I FURTHER CERTIFY that I am not a relative,
10    employee, or attorney, or counsel of any of the parties'
      attorneys or counsel connected with the action, nor am I
11    financially interested in the action.

12       DATED this 14th day of February, 2019 at Fort
      Lauderdale, Broward County, Florida.

13

14

15

16

                    Carmen J. Thomas
17                  Registered Professional Reporter

18

19

20

21

22

23

24

25

Page 174

1                        CERTIFICATE OF OATH

2

3     STATE OF FLORIDA

4     COUNTY OF BROWARD

5          I, Carmen J. Thomas, Registered Professional
      Reporter, Notary Public, State of Florida, certify that
6     witness, P. CAMPBELL FORD, personally appeared before me
      on the 11th day of February, 2019 and was duly sworn.

7

           WITNESS my hand and official seal this 14th day of
8     February, 2019.

9

10

11

12

13

14                     Carmen J. Thomas,
                       Registered Professional Reporter
15                     Notary Public, State of Florida
                       MY COMMISSION #GG 125902
16                     EXPIRES November 16, 2021

17

18

19

20

21

22

23

24

25

```
                                              Page 1
 1

 2     UNITED STATES DISTRICT COURT

       SOUTHERN DISTRICT OF NEW YORK

 3     Case No. 11 Civ. 0691 (LAK)

       ----------------------------------------x

 4     CHEVRON CORPORATION,

 5                         Plaintiff,

 6          - against -

 7     STEVEN DONZIGER, et al.,

 8                         Defendants.

 9     ----------------------------------------x

10                     December 18, 2018

                       9:07 a.m.

11

12

13          DEPOSITION of GLENN KREVLIN, held at

14     the offices of Gibson, Dunn & Crutcher LLP,

15     located at 200 Park Avenue, New York, New

16     York 10166, before Anthony Giarro, a

17     Registered Professional Reporter and a

18     Notary Public of the State of New York.

19

20

21

22

23

24

25
```

Page 134

```
 1                GLENN  KREVLIN
 2   what did you write?
 3       A        "Interest in Chevron."
 4                MR.  DONZIGER:  Hold on.  I'm
 5        going to object to this whole line of
 6        questioning on these grounds.  This
 7        has nothing to do with whether I
 8        violated the RICO judgment.  You're
 9        just trying to find out stuff that
10        our Canadian counsel was thinking or
11        told people which you already have
12        this information anyway.  But there's
13        no reason to keep the witness here a
14        minute longer than you need to by
15        asking stuff that has nothing to do
16        with the scope of the subpoena and
17        what Judge Kaplan authorized you to
18        do.  I mean can you advance a theory
19        as to what this line of questioning
20        has to do with whether I violated the
21        RICO judgment?
22                MS.  NEUMAN:  I'm not going
23        to debate issues with you in front of
24        the witness, Mr. Donziger.
25        Q        What did you write next to
```

Page 145

1                    GLENN KREVLIN

2    Amazonia."  Do you see that?

3         A        Yes.

4         Q        Do you have any knowledge

5    about that transfer?

6         A        No.

7                    MR. DONZIGER:  Objection.

8         Relevance.

9         Q        At paragraph 5,

10   Exhibit 5302, it states, "Donziger and

11   the representatives and each of them is

12   further enjoined and restrained from

13   taking any acts to monetize or profit

14   from the judgment as modified or any new

15   judgment including without limitation --

16                    MR. DONZIGER:  Objection.

17                    MS. NEUMAN:  Mr. Donziger,

18        stop interrupting me.

19                    MR. DONZIGER:  You're not

20        the witness.  You can't just testify

21        by reading court documents.  You're

22        not the witness.  He's the witness.

23        Ask him a question if he knows

24        something.  You are not the witness.

25        This is a complete waste of time.

Page 146

```
 1                    GLENN KREVLIN
 2        And I know what you're trying to do.
 3        You're trying to basically read
 4        Kaplan's order and convince him about
 5        something that's not true.  Show him
 6        the April 25th clarification order.
 7                MS. NEUMAN:  First of all,
 8        stop raising your voice.
 9                MR. DONZIGER:  Show him the
10        April 25th clarification order.
11        Don't tell me not to raise my voice.
12                MS. NEUMAN:  And stop making
13        speaking objections.  In a
14        professional setting, Mr. Donziger,
15        raising your voice is inappropriate.
16                MR. DONZIGER:  A
17        professional setting requires a
18        lawyer to ask relevant questions.
19        You're not doing that.  So I don't
20        need lectures on your
21        professionalism.  Ask a relevant
22        question.  Don't waste all day where
23        he's racking up his legal fees while
24        you ask irrelevant questions.  And
25        read Judge Kaplan's order.  Is that
```

Page 147

GLENN KREVLIN

```
 1          what you're here to do?  Give him the
 2          order.  He can take it home and read
 3          it on his own time.
 4     Q        Mr. Krevlin, looking at
 5     paragraph 5, do you see where it states
 6     that Mr. Donziger and the lab
 7     representatives are enjoined from taking
 8     any acts to monetize or profit from the
 9     judgment?
10               MR. HORGAN:  Objection.  The
11          document speaks for itself.  If
12          you're asking him whether you read
13          that correctly, the witness can
14          answer.
15               MR. DONZIGER:  I'll join in
16          the objection.
17     A        Do you want me to answer?
18               MR. HORGAN:  The document
19          speaks for itself.  The examining
20          attorney has read a portion of it.
21          To the extent the question is, has
22          she read that portion correctly, you
23          can answer.
24     A        I have read it.  And you've
```


Page 299

1

2                C E R T I F I C A T I O N

3

4

5          I, ANTHONY GIARRO, a Shorthand

6     Reporter and a Notary Public, do hereby

7     certify that the foregoing witness, GLENN

8     KREVLIN, was duly sworn on the date

9     indicated, and that the foregoing, to the

10    best of my ability, is a true and accurate

11    transcription of my stenographic notes.

12          I further certify that I am not

13    employed by nor related to any party to

14    this action.

15

16

17

                      _____

18                      ANTHONY  GIARRO

19

20

21

22

23

24

25

Page 1

```
 1
 2    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 3    Case No. 11 Civ. 0691 (LAK)
      ----------------------------------------x
 4    CHEVRON CORPORATION,
 5                        Plaintiff,
 6         - against -
 7    STEVEN DONZIGER, et al.,
 8                        Defendants.
 9    ----------------------------------------x
10                     October 31, 2018
                       9:13 a.m.
11
12
13        DEPOSITION of JOHN VAN MERKENSTEIJN,
14    held at the offices of Gibson, Dunn &
15    Crutcher LLP, located at 200 Park Avenue,
16    New York, New York 10166, before Anthony
17    Giarro, a Registered Professional Reporter
18    and a Notary Public of the State of New
19    York.
20
21
22
23
24
25
```

Page 213

1                    JOHN VAN MERKENSTEIJN

2    me?

3         A        No.  I mean, it's not an

4    issue that I focused on or I can remember

5    focusing on.

6         Q        Do you know whether, if at

7    all, anyone communicates with the

8    48-named plaintiffs?

9         A        I don't know that.

10        Q        Have you ever been involved

11   in any discussions to make a specific

12   settlement demand on Chevron?

13        A        A specific settlement

14   demand, no.  There were discussions about

15   at some point, most likely, this case

16   would end up settling.

17        Q        But no discussion about we

18   should call Chevron and offer to settle

19   for X amount?

20        A        There was a discussion about

21   how do you get to move the settlement

22   possibility forward.  I don't remember

23   anything about a specific number.

24                 MS. NEUMAN:  I don't think I

25     have any further questions at this

Page 214

```
 1              JOHN VAN MERKENSTEIJN
 2     time.
 3              THE WITNESS:  Okay.
 4              MR. DONZIGER:  I'm stunned.
 5     You're done with your questions.  I
 6     have some questions.  Can we take a
 7     five-minute break so I can get
 8     organized?
 9              THE WITNESS:  Yes.  I'll
10     take a walk.
11              THE VIDEOGRAPHER:  Going off
12     the record.  The time is 3:39 p.m.
13              (A short recess was taken.)
14              THE VIDEOGRAPHER:  We are
15     back on the record.  The time is
16     3:54 p.m.
17              MS. NEUMAN:  I actually
18     realized I had a couple of questions.
19     So I let Mr. Donziger know that while
20     you were gone.
21              I'm going to show the
22     witness a document that we've marked
23     as Plaintiff's Exhibit 5421.
24              (The above-referred-to
25     document was marked as Plaintiff's
```

Page 252

1

2                    C E R T I F I C A T I O N

3

4

5        I, ANTHONY GIARRO, a Shorthand

6   Reporter and a Notary Public, do hereby

7   certify that the foregoing witness, JOHN

8   VAN MERKENSTEIJN, was duly sworn on the

9   date indicated, and that the foregoing, to

10   the best of my ability, is a true and

11   accurate transcription of my stenographic

12   notes.

13        I further certify that I am not

14   employed by nor related to any party to

15   this action.

16

17

18

    _____

19           ANTHONY GIARRO

20

21

22

23

24

25