UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHEVRON CORPORATION,

        Plaintiff,

  v.

STEVEN DONZIGER, *et al.*,

        Defendants.

11 Civ. 0691 (LAK)

---

**CHEVRON CORPORATION'S MOTION TO STRIKE CONFIDENTIALITY
DESIGNATIONS OVER DOCUMENTS PRODUCED BY AARON MARR PAGE**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

STERN, KILCULLEN & RUFOLO LLC
325 Columbia Turnpike, Suite 110
P.O. Box 992
Florham Park, New Jersey 07932-0992
Telephone:  973.535.1900
Facsimile:  973.535.9664

*Attorneys for Plaintiff Chevron Corporation*

Aaron Marr Page, "Donziger's partner," Dkt. 2209 at 20, designated his entire post-judgment production "Confidential" without any basis for doing so. The Court should reject this improper attempt to shield Page's dealings from public view and strike the designations.

Page has been a critical co-conspirator who has actively assisted Donziger with violating the RICO Judgment and then concealing their misconduct. Page created one of the centerpieces of Donziger's fundraising efforts—"an investment opportunity memorandum . . . that directed all inquiries regarding potential investments to Donziger's attention." *Id.* He enabled Donziger to evade the RICO Judgment's constructive trust provisions by demanding that Katie Sullivan transfer $342,015.16 in investor funds to Page's own account, *id.* at 27–28, which he then transferred to Donziger—pocketing a $50,000 kickback for himself. *Id.* at 32–33. Page also drafted, revised, and translated many of the agreements Donziger used to raise "over $2.4 million from investors in exchange for interests in the Ecuador Judgment," and devised ways to keep the effort secret. *Id.* at 53; *see also* Ex. 1 ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. *See* Ex. 2 at 3.

Given Page's extensive participation in Donziger's fraud and his stake in the Ecuadorian judgment, it will come as no surprise that, to try to perpetuate the fraud and conceal the true nature of his actions, Page has engaged in discovery abuse in connection with the production of his own documents. He has engineered the sorts of discovery delays and obstruction that are now commonplace with Donziger and his cohorts, and has gone so far as to urge others with relevant materials to destroy them. Ex. 3. In addition, Page has tried to limit Chevron's ability to use what documents he has produced by invoking the Protective Order in this case to designate every document "confidential" with no legal basis for doing so. Ex. 4 ("Again everything is confidential"). This type of wholesale blocking maneuver is improper and the Court should now strike these designations.

*Background.*  After Page designated his entire production "confidential," Chevron promptly objected to this blanket designation and requested that Page comply with the Protective Order.  *See* Dkt. 723 ¶¶ 2, 4 (defining "Confidential Information" and how to designate "Confidential Information").  Page responded that he was in the process of reviewing the production for confidentiality and would "have the set of documents [he] consider[s] confidential ready by [April 10]." Ex. 5; *see also* Ex. 6 ("I have set aside tomorrow afternoon and most of Wednesday . . . to re-reviewing for confidentiality").  Subsequently, and despite the fact that the Protective Order requires the producing party to make his own confidentiality designations (Dkt. 723 ¶ 4, Dkt. 2111 ¶ 2), Page claimed Donziger would review the confidentiality designations.  Ex. 7 ("Steven says he will be able to review the documents for confidentiality this week.").  Since those representations months ago, however, Page has failed to follow the process in the Protective Order, and de-designated only three documents after Chevron showed him they had been produced by another third party non-confidentially.  Ex. 8.

*Argument.*  Page has shown no good cause to support his wholesale confidentiality designations.  The documents Page produced are not privileged and do not merit confidential treatment.  They are ███████████████████████████████████████████████

███████████████████████  ██████ Page has helped Donziger circumvent the RICO and Default judgments in order to profit from the Ecuadorian judgment, and Page's documents show in detail ██████████ ██████████████████████████████████████████  *E.g.*, Exs. 9–14.

    1.    **Page has not invoked the Protective Order in good faith.**  The Protective Order in this case allows the producing party to designate as confidential information that the producing party "in good faith believes reflects [] sensitive personal information . . . ; confidential business information . . . ; or information the Producing Party is contractually or legally obligated to

2

keep confidential." Dkt. 723 ¶ 2. Once Chevron objects to a confidentiality designation, Page as the designating party "bears the burden of persuading the Court that the Information is in fact Confidential." *Id.* ¶ 14; *see also Koch v. Greenberg*, Civ. No. 07-8600, 2012 WL 1449186, at *5 (S.D.N.Y. Apr. 13, 2012). Chevron objected to Page's blanket designation in writing. *See, e.g.*, Ex. 15. But Page has not even *attempted* to meet his burden of showing that the documents merit confidential treatment. He has not shown that they contain "sensitive personal information," "confidential business information" or "information [Page] is contractually or legally obligated to keep confidential." Dkt. 723 ¶ 2. That should be the end of the matter, and the designations should be stricken for this reason alone.

2.  **Page's documents pertain to Donziger and his agents' contempt of the RICO Judgment, not any legitimate business warranting confidential treatment.** Page's documents evidence ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See, e.g.*, Ex. 10; Ex. 16. Thus, Page could not establish confidentiality even if he tried.

The documents Page produced largely fall into two categories: (1) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and (2) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Neither category contains sensitive personal information, such as social security numbers, confidential business information such as trade secrets, or information that Page is contractually bound to keep confidential. Page's documents are also not privileged as they were often shared with third-parties. And this Court has already made a waiver ruling as to Donziger's documents, which extends to Page as Donziger's attorney and agent. Dkt. 2108 at 1; *see In re Naranjo*, 768 F.3d 332, 350 (4th Cir. 2014) (affirming "the application of the Donziger Waiver . . . to the documents in Page's possession").

3

None of these documents warrants confidential treatment. For instance, attempts to solicit investor money and to avoid detection by Chevron (and this Court) are directly linked to Donziger and his agents' illicit profiting from the Ecuadorian judgment and frustrating the constructive trust that this Court established for Chevron's benefit. Documents also reflect that Donziger "act[ed] to monetize or profit from the Judgment," (*e.g.*, Ex. 17) in violation of Paragraph 5 of the RICO Judgment (Dkt. 1875 ¶ 5), and others overlap with the records produced by third-parties already in the public record, (*e.g.*, Ex. 18 is the same document as Dkt. 2116-3 at ECF pp. 34–36 (Sullivan Decl., Ex. 38)). Because these documents pertain directly to Donziger's and his agent's contempt of this Court's injunction, they should not be hidden from public scrutiny as they "directly affect an adjudication . . . or are used to determine litigants' substantive legal rights," and thus "the presumption of access is at its zenith." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 141–42 (2d Cir. 2016) (internal citation and quotation marks omitted). "Absent a . . . convincing showing of potential harm to [producing party], the obvious public interest in such scrutiny outweighs any interest that [the producing party] may have in maintaining its . . . information private." *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 254 (S.D.N.Y. 2009). Page's blanket confidentiality designation cannot overcome "the presumption of public access." *Bernstein*, 814 F.3d at 141–42.

**Conclusion.** The Court should strike Page's blanket "confidential" designations. Dated:

August 28, 2019  
New York, New York

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

*/s/ Randy M. Mastro*

Randy M. Mastro  
Andrea E. Neuman  
200 Park Avenue  
New York, New York 10166  
Telephone: 212.351.4000  
Facsimile: 212.351.4035

4

Email: rmastro@gibsondunn.com
Email: aneuman@gibsondunn.com

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520
Email: wthomson@gibsondunn.com

STERN, KILCULLEN & RUFOLO LLC
Herbert J. Stern
Joel M. Silverstein
325 Columbia Turnpike, Suite 110
P.O. Box 992
Florham Park, New Jersey 07932-0992
Telephone:  973.535.1900
Facsimile:  973.535.9664
E-mail: hstern@sgklaw.com
E-mail: jsilverstein@sgklaw.com

*Attorneys for Plaintiff Chevron Corporation*