UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHEVRON CORPORATION,

                Plaintiff,

v.

STEVEN DONZIGER, et al.,

                Defendants.

11 Civ. 0691 (LAK)

**DECLARATION OF PATRICIO SALAZAR CORDOVA IN SUPPORT OF HIS MOTION TO QUASH CHEVRON CORPORATION'S SUBPOENA DUCES TECUM AND SUBPOENA AD TESTIFICANDUM**

Patricio Salazar Cordova hereby declares:

1. I am a non-party to the above-captioned action. I submit this declaration in support of my motion to quash the subpoenas served on me by Chevron Corporation, attached hereto as Exhibit A.

2. I reside outside of Quito, Ecuador, at Via Santa Ines E-3-116 y Barbara Esparaza, Conjunto Residencial Mijas, Casa 2, in Cumbayá, Ecuador.

3. I am an attorney, a solo practitioner. I am licensed to practice law in Ecuador and nowhere else. I am not licensed to practice law in New York or anywhere in the United States. By definition, I do not and cannot transact any legal business in New York or within 100 miles of the Southern District of New York. I do not transact any non-legal business in New York or within 100 miles of the Southern District of New York. I work out of my home in Cumbayá, Ecuador.

4. I have been practicing law in Ecuador for approximately 20 years. I first began working with the indigenous people of the Lago Agrio region in Ecuador in April 2015, when I was retained by the Union de Afectados por las Operaciones Petroleras de Texaco ("UDAPT"). This

1

engagement ended in January 2016, at which point I entered into a representation agreement with El Frente de Defensa de la Amazonia ("FDA"), sometimes known in this case as the ADF. FDA, an Ecuadorian non-profit organization, is the sole beneficiary of the judgment of the Ecaudorian court in *Aguinda v. Chevron*.

5. Having been engaged by the FDA in January 2016, I was not involved in the *Aguinda* trial in Ecuador and played no role in obtaining the judgment on behalf of the plaintiffs in that case. I did intervene as a lawyer at the hearing at the Ecuador Constitutional Court in a Constitutional proceeding related to the Ecuadorian Judgment, and have represented the FDA in connection with the efforts of the Lago Agrio Indigenous people to receive justice since that time. Similarly, until now, I had no involvement in this case in New York.

6. I was engaged by the FDA as part of an effort to create a legal team for the FDA that has a reputation of honesty and integrity, and that would not be susceptible to corruption. To that end, as part of my engagement agreement with the FDA, I required the FDA to include a written representation that neither it, nor its lawyers or representatives, had engaged in any unlawful conduct in connection with the *Aguinda* case in Ecuador or elsewhere. I would not have taken the representation without receiving this representation from my client.

7. As outside counsel to the FDA, my role, among others is to oversee the enforcement of the judgment in Ecuador and other jurisdictions and provide support for those activities from Ecuador.

8. I was in New York on September 17, 2019, to provide testimony on Ecuadorian law at the disbarment proceedings of Stephen Donziger at the Attorney Grievance Committee offices of the New York Supreme Court, Appellate Division, First Department, at 61 Broadway. I was served with the attached subpoenas outside the building. The subpoena originally set a response

date of September 19, less than 48 hours after I was served.  On September 18, 2019, I retained New York counsel, who negotiated an extension of time to respond to the subpoena.  Other than for the purposes of responding to the present subpoena, I had never personally engaged New York legal counsel.

9.   Including the above-referenced trip to provide testimony in Mr. Donziger's disbarment proceedings, I have been to the New York area (i.e., within 100 miles of the Southern District of New York) only four times in the last three years.  In May 2019, I came to New York for vacation.  I stayed for four days.  While there, I travelled to Millbrook, NY to help two clients reach an agreement about a business they have together in Ecuador.  In April 2018, I stopped in New York for two days on my way to Canada to be interviewed by a Human Rights lawyer at John Jay College about the *Aguinda* case.  In that instance, I also only stayed in New York for a couple of days.  Finally, in September 2016, I travelled to New York for four days to attend the Concordia Summit.

10. As one of the FDA's lawyers, an attorney-client privilege attaches to my dealings with the FDA.  Under Ecuadorian law, the privilege is broad.  The privilege is not limited to protecting communications; it precludes the disclosure by the attorneys of facts, information and communications with or learned from the client.  The privilege is absolute and survives despite any internal or external action that might expose the information belonging to the client.  When asked to reveal a client secret, information or communication, the representing attorney is required to refuse.

11.  Article 20 of the Ecuadorian Constitution sets forth the existence of the attorney client privilege.  A true and correct copy of that Article, with a translation, is attached as Exhibit B.

12. The disciplinary code for Ecuadorian attorneys, called Enrique Avellan Ferres, at Article 12, requires professional secrecy and mandates explicitly that an attorney refuse disclosure when sought to be compelled in a legal proceeding.  A true and correct copy of the relevant article from the disciplinary code, with translation, is attached as Exhibit C.

13. Under Article 269 of the Ecuadorian Criminal Code, a true and correct copy of which is attached as Exhibit D, with translation, an attorney who reveals privileged information of a client can be sentenced to one to three years in prison.

14. Article 335(1) of the Organic Code of the Judiciary forbids lawyers from revealing the secrets of clients, including their documents and instructions given by them. A true and correct copy of that article with translation is attached as Exhibit E.

15. Moreover, under my contract with the FDA, I am required to preserve the secrecy of my communications with the FDA and any information obtained from them.

16. The first document request issued in connection with the Chevron subpoena seeks documents related to the proceeds of the enforcement of the Ecuadorian Judgment.  My client, the FDA, is the sole beneficiary of that Judgment.  My role as outside counsel to the FDA is to provide support and advice with respect to the Ecuadorian Judgment and to assist the Lago Agrio Indigenous people in obtaining justice.  To the extent I have any documents responsive to the subpoena, they are all likely to be protected by the attorney-client privilege.

17.  Similarly, while the second and third document requests seek documents only related to Steven Donziger's attempts (if any) to profit from the Ecuadorian Judgment, these requests also necessarily seek documents covered by the attorney-client privilege.  As set forth above, under Ecuadorian law, the privilege requires continued preservation of client secrets or confidential information even if the information has previously been disclosed to third-parties.  Moreover,

Mr. Donziger is the FDA's New York lawyer, and any communications between me, the FDA and Mr. Donziger, or simply between me and Mr. Donziger, would also be subject to the privilege. It is necessary to bear in mind that all my work for the FDA relates to the issues involving the Lago Agrio trial.  Because the privilege in Ecuador is not limited to communications between attorney and client, but provides for a general protection of an attorney's work on behalf of a client, my interaction with anyone in connection with the case on behalf of my client are subject to the Ecuadorian attorney-client privilege.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  Cumbayá, Ecaudor
            October 2, 2019

_____
Patricio Salazar Cordova