UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEVRON CORPORATION,<br><br>                    Plaintiff,<br>v.<br><br>STEVEN DONZIGER, et al.,<br><br>                    Defendants. | 11 Civ. 0691 (LAK) |

### Memorandum of Law in Support of Non-Party Patricio Salazar Cordova's Motion to Quash

Non-Party Patricio Salazar Cordova, by and through his undersigned counsel, respectfully submits this memorandum of law in support of his motion to quash subpoenas served on him by Plaintiff Chevron Corporation ("Chevron").

**PRELIMINARY STATEMENT**

The geographical limitations of Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 45(c) are unambiguous: a non-party subpoena may only command appearance at a deposition within 100-miles of where a person resides, is employed, or transacts business. *See* Fed. R. Civ. P. 45(c)(1)(A). The same geographic limitations apply to a non-party subpoena seeking the production of documents. Fed. R. Civ. P. 45(c)(2)(A). Here, Chevron's subpoenas to Mr. Salazar command him to appear for deposition in New York City and produce documents in New York City. *See* Declaration of Patricio Salazar Cordova dated October 1, 2019 (hereinafter "Salazar Decl."), Ex. A. As Chevron is likely aware, however, Mr. Salazar is an Ecuadorian attorney who lives, works and transacts business in Quito, Ecuador, thousands of miles from New York City. Salazar Decl., ¶¶ 2-3. Pursuant to Fed. R. Civ. P. 45(d)(3)(A)(ii), the Court is required to quash the Chevron subpoenas for non-compliance with the 100-mile limitation.

1

Fed. R. Civ. P 45(d)(3)(A)(iii) also mandates that the subpoenas be quashed. Mr. Salazar is an attorney, and Chevron's document requests (and presumably its inquiries at any deposition) seek information related to his client's efforts to monetize or enforce a foreign judgment. A substantial amount – if not all – of the documents and information sought by Chevron is protected by attorney-client privileges.

## STATEMENT OF FACTS

Mr. Salazar is one of the Ecuadorian attorney for El Frente de Defensa de la Amazonia ("FDA"). Salazar Decl., ¶ 4. The FDA is the sole beneficiary of a judgment of the Ecuadorian courts (in *Aguinda v. Chevron*) (the "Ecuadorian Judgment"), the enforceability of which is in dispute here. *Id.* Mr. Salazar was retained by the FDA in 2016, well after the trial against Chevron in Ecuador, and well after the trial against the defendants in this case. *Id.*, ¶¶ 4-5. He was hired by the FDA to provide advice on Ecuadorian law as the FDA seeks to enforce the Ecuadorian Judgment in Ecuador and countries other than the United States. *Id.*, ¶ 7.

Mr. Salazar has never had to travel to New York for this case, except that on September 17, 2019, he was in New York to provide testimony on Ecuadorian law in the disbarment proceedings of Steven Donziger. *Id.*, ¶¶ 8-9. While at the disbarment proceedings, he was served with the Chevron subpoenas. *Id.*, ¶ 8. The Chevron subpoenas commanded that he produce documents and appear for deposition at the offices of Gibson, Dunn & Crutcher, LLP, just two days later, on September 29, 2019.[1] Salazar Decl., Ex. A.

Mr. Salazar lives in a neighborhood of Quito, Ecuador called Cumbayá. *Id.*, ¶ 2. He works out of his home. *Id.*, ¶ 3. He is licensed to practice law only in Ecuador. *Id.* By definition, he cannot practice law in New York or in any other State of the United States. *Id.* Similarly, he does not transact any non-legal business in New York or within 100-miles of the

---

[1] Chevron counsel agreed to adjourn the deposition date until October 2, 2019.

Southern District of New York. *Id.* Prior to engaging the undersigned attorneys to quash the Chevron subpoenas, he had never personally engaged New York legal counsel. *Id.*, ¶ 8. He has only been to the New York area four times in the last three years: once for vacation, though while on vacation he met with clients in Millbrook, NY, about a business they had in Ecuador; once to testify in Steven Donziger's disbarment hearing; once to be interviewed by a professor at John Jay College; and once to attend the Concordia Summit, a conference. *Id.*, ¶ 9.

## ARGUMENT

### I. The Subpoenas Violate the Mandatory Geographic Limitations of Rule 45

To resolve this motion, the Court need look no further than the subpoenas themselves, which set forth the plain, dispositive provisions of Rule 45 of the Federal Rules of Civil Procedure. *See* Salazar Decl., Ex. A. Per Rule 45, a subpoena may command a person to attend a deposition or produce documents, electronically stored information, or tangible things "<u>only</u> . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed R. Civ. P. 45(c)(1)(A) and (2)(A) (emphasis added). The Chevron subpoenas were returnable in New York City, but Mr. Salazar lives and works in Quito, Ecuador, and does not transact business anywhere within 100-miles of the Southern District of New York. *See* Salazar Decl., ¶¶ 2-3, 9. As such, the Court must quash the subpoenas.

Our courts recognize the mandatory 100-mile limitation of Rule 45(c) and routinely quash non-compliant subpoenas. *See, e.g., Hermitage Glob. Partners LP v. Prevezon Holdings Ltd.*, 2015 WL 728463, at *4 (S.D.N.Y. Feb. 19, 2015) ("[T]he plain language of Rule 45(c) indicates that the court cannot compel a witness . . . to travel more than 100 miles from a place of residence, employment, or regular business to testify at a deposition."); *M'Baye v. New Jersey Sports Prod., Inc.*, 246 F.R.D. 205, 207 (S.D.N.Y. 2007) ("The plain language of Rule 45(c)(3)(A)(ii) is clear that unless a person is a party to the litigation or an officer of a party, he

3

cannot be compelled to travel more than 100 miles from where he resides, is employed, or regularly transacts business in person."); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 293, 302 (S.D.N.Y. 2009) ("[S]ubpoenas served on individual employees who are not corporate officers, and who reside outside the geographic scope of Rule 45, must be quashed"); *In re Malyugin*, 310 F. Supp. 3d 3, 6 (D.D.C. 2018) (quashing subpoena and noting that modification would be ineffectual to bring it into conformance with Rule 45); *Europlay Capital Advisors, LLC, v. Does*, 323 F.R.D. 628, 630 (C.D. Cal. 2018) ("Rule 45 clearly requires that the 'production of documents [or] electronically stored information' must be 'at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person.'").[2]

Notably, Chevron successfully invoked the mandatory 100-mile rule when it was subject to deposition and trial subpoenas calling for its representatives to travel more than 100 miles. *See Ponson v. BellSouth Telecomm., Inc.*, 2010 WL 1552802 (E.D. La. Apr. 16, 2010). The 100-mile rule is so clear that a party's disregard of it has been held to be a *per se*, sanctionable violation of the serving party's obligation under Rule 45(c)(1) to take "reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." *Matthias Jans & Assocs., Ltd. v. Dropic*, 2001 WL 1661473, at *3 (W.D. Mich. Apr. 9, 2001).

---

[2] *See also Dennis v. Progressive Northern Ins. Co.*, 2017 WL 10379584, at *1 (W.D. Okla. Dec. 1. 2017) ("[P]lace of compliance with a deposition subpoena must be within 100 miles of where the person resides, is employed, or regularly conducts business in person."); *Agincourt Gaming LLC v. Zynga, Inc.*, 2014 WL 4079555, at *4 (D. Nev. Aug. 15, 2014) (for document subpoena, the place of compliance must be "within 100 miles of where the person resides, is employed, or regularly transacts business in person."); *Krueger Invs., LLC v. Cardinal Health 110, Inc.*, 2012 WL 3264524, at *3 (D. Ariz. Aug. 9, 2012) (Rule 45 "explicitly prohibits a subpoena requiring a non-party to travel more than 100 miles from its place of business to testify"); *Johnson v. Koch Foods, Inc.*, 2010 WL 11520157, at *2 (E.D. Tenn. Jan. 19, 2010) ("The district judge must [quash a subpoena] if the subpoena ... requires a *nonparty* to travel to a place more than 100 miles from the place where that person resides, is employed, or regularly transacts business in person....") (quoting Wright & Miller, Federal Practice and Procedure, Civ. 3d § 2461); *Miller v. Holzmann*, 471 F. Supp. 2d 119, 121 (D.D.C. 2007) ("[T]he limitation in Rule 45 unequivocally applies both to attending a deposition to testify and to being required to produce documents at a distance more than 100 miles from one's home."); *Nieman v. LinkedIn Corp.*, 2013 WL 685203, at *2 (N.D. Cal. Feb. 25, 2013) ("[N]onparties cannot be required to produce documents at a location more than 100 miles from their home or business.").

## II. A Subpoena Served on a Foreign Non-Party in Violation of the 100 Mile Rule Cannot be Modified

Rule 45(d)(3) provides the mechanism for seeking mandatory relief from various categories of overreaching or defective subpoenas. While the rule refers to a Court "quashing or modifying" a subpoena, a subpoena in violation of the 100-mile rule cannot be saved by modification. The Advisory Committee Notes to the Rule's 2013 amendments state: "*Rule 45(d)(3)(A)(ii) directs the court to quash any subpoena that purports to compel compliance beyond the geographical limits specified in Rule 45(c)*" (emphasis added).

Consistent with the Advisory Committee Notes and the express, mandatory language of Section 45(c), the vast majority of courts have interpreted Rule 45(d)(3)(A)(ii) to require the quashing of subpoenas violating the 100-mile rule. *See, e.g., Wakefield v. ViSalus, Inc.*, 2019 WL 1309682, at *3 (D. Or. Mar. 22, 2019) ("under Rule 45(d)(3)(A)(ii) the Court is required to quash the subpoena" that violates 100-mile rule); *Merlin Petroleum Co. Inc. v. Sarabia*, 2016 WL 9244728, at *1 (M.D. Fla. Aug. 4, 2016) (subpoena that called for production more than 100 miles from non-party's "must" be quashed); *Schulman v. Saloon Beverage, Inc.*, 2014 WL 3353254, at *11 n.6 (D. Vt. Jul. 9, 2014) ("Rule 45(d)(3)(A)(ii) obligates a court to quash a subpoena that 'requires a person to comply beyond the geographical limits specified in Rule 45(c).'"); *Murray v. Nationwide Better Health*, 2011 WL 2461334, at *1 (C.D. Ill. Jun. 17, 2011) ("[M]ust quash a subpoena that requires a deponent to travel more than 100 miles from where they reside, are employed or transact business to attend the deposition."); *S.E.C. v. White*, 2011 WL 1544202, at *2 (D.S.C., Apr. 22, 2011) (discussing conditions under which a court must or may quash a subpoena under Fed. R. Civ. P. 45(C)(3)(A)(iv) and emphasizing that court *must* quash a subpoena that violates 100 mile rule); *Lyman v. St. Jude Medical S.C. Inc.*, 580 F. Supp. 2d 719, 733 (E.D. Wis. 2008) ("Rule 45(c)(3)(A)(ii) provides specific circumstances under

5

which a court must quash a subpoena."); *Mazloum v. Dist. of Columbia Metro. Police Dep't.*, 248 F.R.D. 725, 728 (D.D.C. 2008) ("Rule 45(c)(3)(A)(ii) . . . 'mandates' that a court quash any subpoena served upon a non-party . . . that would require that witness to travel more than 100 miles 'from where that person resides, is employed, or regularly transacts business in person.'").

A few decisions, including this Court's decision in *Probulk Carriers Ltd. v. Marvel Int'l Mgmt. and Transp.*, 180 F. Supp. 3d 290 (S.D.N.Y. 2016), have modified geographically defective subpoenas to allow compliance to take place in the subpoenaed person's country. We respectfully believe these decisions are incorrect or distinguishable and should not be followed here.

In *Probulk*, the Court was faced with a subpoena served on a non-party, a Turkish citizen attending a film festival in New York. The subpoena was served in connection with a judgment creditor's attempt to enforce a judgment against a business owned by the non-party's father. Notably, the Court's discussion of the issues was prefaced by its skepticism about whether the subpoenaed individual was truly an arm's length third party. *Probulk*, 180 F. Supp. 3d at 293. The Court assumed, without discussion, that modification was an option under Rule 45(c)(3)(A)(ii), and directed the parties to stipulate to a date and location for compliance in Turkey, failing which the Court would set the terms of compliance in Turkey. *Id.*, at 294. Although not apparent from the decision or subsequent history, the Pacer docket shows that the parties did stipulate to compliance in Turkey. There was no further challenge to the Court's ruling.

Based on the Advisory Committee notes, the express limitations set forth in Rule 45(c) and the above-cited case law, we respectfully submit that modification is never a remedial option for a subpoena that violates the 100-mile rule. Even if such a subpoena can somehow be fixed, it

6

cannot be done by directing discovery in a foreign country because the Court has no power to order discovery in a foreign country. The lone case that has cited *Probulk* refused to follow it for that reason. *See In re Malyugin*, 310 F. Supp. at 6 ("It is not immediately clear to the Court that a deposition in Russia is either acceptable to the Defendants or lawful....").

Decisions that preceded *Probulk* elaborate on the impropriety of a U.S. court ordering discovery in a foreign country. *See In re Application for Order Quashing Deposition Subpoenas, dated July 16, 2002,* 2002 WL 1870084, at *5-6 (S.D.N.Y., Aug. 14, 2002) (doubtful that court had legal authority to require deposition in Japan and, even if it did, prudential and international comity-based considerations weigh against it); *see also NML Capital Ltd. v. Republic of Argentina*, 2011 WL 3897828, at *3 (S.D.N.Y. Sep. 2, 2011) (rejecting modification that would require compliance in non-party's country because "Rule 45 is not a device for having discovery rendered in a foreign country....").

Finally, even if modification is an option, a court should decline the option where, as here, the serving party had no reasonable belief that the person served regularly conducted business within 100 miles of the return location of the subpoena. *See DRFP, LLC v. The Republica Bolivariana De Venezuela*, 2015 WL 13034991, at *3 (S.D. Ohio Jun. 30, 2015) (even if subpoena was not void *ab initio*, court would not aid party who violated 100-mile rule in bad faith). As set forth in his Declaration, Mr. Salazar has only been within 100-miles of the New York area four times in the last three years and, at most, only one day in those four trips was for actual client work. *See* Salazar Decl., ¶ 9.[3] In *Probulk*, this Court had reason to believe that the

---

[3] "Rule 45(c)(3) (A)(ii) specifies that one must be doing business 'in person' in a given location. Therefore, business transactions . . . conducted via telephone, email and fax" do not constitute the transaction of business in New York for the purposes of Rule 45. *M'Baye v. New Jersey Sports Prod., Inc.*, 246 F.R.D. 205, 207 (S.D.N.Y. 2007). Moreover, "traveling to an area within a 100–mile radius for fourteen to eighteen days in two years is insufficient to render a person amenable to a subpoena." *Id.; see also In re Application for Order Quashing Deposition*

subpoenaed person was active in or an insider of the judgment debtor. *Probulk*, 180 F. Supp. 3d at 293. In contrast, in this case, the subpoenaed person is outside counsel to a party to the case, and he was hired after judgment was rendered in the case. Salazar Decl., ¶¶ 4-5.[4]

In sum, Mr. Salazar does not live within 100 miles of New York City, is not employed within 100 miles of New York City, and does not transact business within 100 miles of New York City. Consequently, the Court must quash the subpoenas.

### III. The Subpoenas Must be Quashed Because They Call for the Production of Privileged Information

As set forth in the accompanying Declaration of Mr. Salazar, the document subpoena calls for him to produce information that is privileged under the laws of Ecuador – and presumably Chevron would seek similar information in any deposition. The subpoenas must therefore be quashed under Rule 45(d)(3)(A)(iii). *See, e.g., Sea Tow Intern., Inc. v. Pontin*, 246 F.R.D. 421, 427 (E.D.N.Y. 2007) (quashing subpoena where "it follows that most, if not all, testimony that Stein could provide would be subject to the attorney-client privilege and the work product doctrine."); *Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380 (D.D.C. 2011) (quashing subpoena of counsel because discovery sought "may be obtained from other more appropriate sources, and any benefit from deposing the petitioner is outweighed by the burdens it will impose.")[5] Even if depositions of counsel are limited to

---

*Subpoenas, dated July 16, 2002,* 2002 WL 1870084, at *2 (four times in five years not sufficient for transaction of business under Rule 45).

[4] We understand from a meet and confer that Chevron intends to argue that Salazar transacts business in New York as the agent of FDA, a party to this case and (according to Chevron) subject to the jurisdiction of the Court. But, of course, Salazar is FDA's agent *in Ecuador*.

[5] We are aware of the Court's decision in *In re Chevron Corp.*, 749 F. Supp. 2d 170, 183 (S.D.N.Y. 2010), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp*., 409 Fed. Appx. 393 (2d Cir. 2010) (unpublished), to the effect that a privilege log must be submitted at the time of the filing a motion to quash. In light of the subpoenas' clear violation of the 100-mile rule, we submit it would place an undue burden on a foreign non-party to produce a privilege log when it is doubtful that the subpoena is even lawful to begin with. Rule 45 is structured to avoid undue burden to witnesses; requiring a privilege log for a facially improper subpoena would place an undue burden on Mr. Salazar.

8

relevant and non-privileged information, they "are likely to have a disruptive effect on the attorney-client relationship and on the litigation of the case." *U.S. Fidelity & Guar. Co. v. Braspetro Oil Servs. Co.*, 2000 WL 1253262, at *2 (S.D.N.Y. Sept. 1, 2000).

Because the relevant privilege here is between an Ecuadorian lawyer and his Ecuadorian client, Ecuadorian law will apply to define the scope of the attorney-client privilege. The attorney-client privilege in Ecuador is broad, arguably broader than similar privileges under New York law. Salazar Decl., ¶ 10. The Ecuadorian attorney-client privilege has several statutory sources. *Id.*, ¶¶ 11-14. The privilege requires an attorney not just to protect attorney-client communications, but any information or facts relevant to a client's case or matter. *Id.*, ¶ 10.

The first document request in the Chevron subpoena seeks documents related to the proceeds of the enforcement of the Ecuadorian Judgment. *See* Salazar Decl., Ex. A. Mr. Salazar's client, the FDA, is the sole beneficiary of that Judgment. His role as outside counsel to the FDA is to provide support and advice with respect to the Ecuadorian Judgment. In other words, the document request goes to the heart of his representation of his client. To the extent he has any documents responsive to the subpoena, they are likely to all be protected by the broad Ecuadorian attorney-client privilege.

The second and third document requests seem more narrowly tailored, seeking documents only related to Steven Donziger's attempts (if any) to profit from the Ecuadorian Judgment. But these documents are also subject to the attorney-client privilege. In the first place, Mr. Donziger was (while he remained a member of the New York bar), the FDA's New

---

At the same time, we are cognizant of the Court's admonishment in that case that it is the Court's preference that parties resolve all objections at once, and so we raise the attorney-client privilege issue raised by Fed. R. Civ. P. 45(d)(3)(A)(iii) here. We respectfully request that, should the Court enforce the subpoenas and require production from Mr. Salazar, that he be permitted to provide a privilege log at the future deadline for responding to the subpoena.

York counsel. Communications involving Salazar, the FDA and Donziger at this time would clearly be privileged. But the privilege endures to communications that post-date Donziger's disbarment, because, under Ecuadorian law, the inclusion of a non-client in the communications would not vitiate the privilege and, in any event, Mr. Salazar has an ethical duty to continue to protect those confidences. Salazar Decl., ¶ 10.

## CONCLUSION

For the foregoing reasons, Patricio Salazar Cordova respectfully requests that this Court quash the third-party subpoenas issued to him by Chevron Corporation.

Dated: New York, New York
      October 2, 2019

BAILEY DUQUETTE P.C.

By: /s/ James Bailey_____

James D. Bailey
Eric Wertheim
104 Charlton St., Suite 1W
New York, NY 10014
Tel: (212) 658-1946
Fax: (866) 233-5869
james@baileyduquette.com

*Attorneys for Non-Party Patricio Salazar Cordova*