J6AACHEOps

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   CHEVRON CORPORATION,

4                Plaintiff,

5        v.                              11 Civ. 691 (LAK)

6   STEVEN DONZIGER, et al.,

7                Defendants.             Oral Argument

8   ------------------------------x

9                                        New York, N.Y.
                                         June 10, 2019
10                                       10:10 a.m.

11

12  Before:

13                    HON. LEWIS A. KAPLAN,

14                                       District Judge

15                      APPEARANCES

16
    GIBSON, DUNN & CRUTCHER, LLP
17       Attorneys for plaintiff
    BY:  RANDY M. MASTRO, ESQ.
18       ANDREA NEUMAN, ESQ.
         WILLIAM E. THOMSON, ESQ.
19       ANNE MARIE CHAMPION, ESQ.
         HERBERT J. STERN, ESQ.
20
    STEVEN R. DONZIGER
21       Defendant Pro Se

22
    Also Present:  Andrew R. Romero-Delmastro, Esq.
23                 Supervising Counsel
                   Chevron Corporation
24

25

J6AACHEOps

```
 1            (Case called)
 2            THE CLERK:  Plaintiff, are you ready?
 3            MR. MASTRO:  Yes, your Honor.
 4            THE COURT:  Mr. Mastro.
 5            MR. MASTRO:  Good to see you, your Honor.
 6            THE CLERK:  Defendant, are you ready?
 7            MR. DONZIGER:  I am.
 8            THE COURT:  Thank you.  Please be seated.
 9            Good morning.
10            The purpose of this hearing is to resolve any disputes
11   there may be concerning whether Mr. Donziger has purged any of
12   the contempts for which coercive fines have been imposed.
13   Where do we stand as far as Chevron is concerned?
14            MR. MASTRO:  Your Honor, Mr. Donziger has not complied
15   with either the contempt issues relating to paragraph 4 or
16   paragraph 5.  While there has been some measure of response on
17   paragraph 4 compliance, my colleague/partner Andrea Neuman will
18   address the ways in which Mr. Donziger has failed to purge
19   himself of the contempt on paragraph 4.  And then, your Honor,
20   as your Honor knows, there are certain procedural issues
21   relating to paragraph 5 and Mr. Donziger's pending motion to,
22   quote/unquote, vacate.  But I would be prepared to address some
23   of those questions after Ms. Neuman addresses the outstanding
24   issues on paragraph 4.
25            THE COURT:  Well, I think the appropriate course is
```

J6AACHEOps

1  probably, since Mr. Donziger claims he has at least in some

2  respects purged himself of contempt, for him to go forward and

3  present evidence to that effect.

4          MR. MASTRO:  Certainly, your Honor.  And, again, your

5  Honor, we're not saying that there's been no response by

6  Mr. Donziger in connection with paragraph 4 compliance, but

7  we're prepared to explain the ways in which we believe he has

8  not fully complied.

9          THE COURT:  I understand.

10         MR. MASTRO:  Thank you, your Honor.

11         THE COURT:  All right.  Mr. Donziger.

12         MR. DONZIGER:  May I step over to the lectern?

13         THE COURT:  Yes.

14         MR. DONZIGER:  Your Honor, just to note at the outset,

15  I got a pretty hefty motion and affidavit from Chevron's

16  counsel late Friday.  It raises issues --

17         THE COURT:  I don't believe I did.

18         MR. DONZIGER:  You didn't?

19         THE COURT:  What are you talking about?

20         MR. DONZIGER:  They filed a, I guess a statement to

21  help you or assist you during this hearing on late Friday, with

22  new information.

23         THE COURT:  Of course.  I have that.  But that's not a

24  motion.

25         MR. DONZIGER:  I mean, whatever it is.  A statement.

1            That included a lot of exhibits, affidavit.  The

2     bottom line is, I'm here Monday morning.  I have not even had a

3     business day to sort of process that or do work based on that.

4            I'll say this about my compliance.  I believe I am in

5     compliance of your Honor's wishes with regard to contempt.

6     There's no dispute over the assignment.  I have now executed

7     three assignments to Chevron.

8            With regard to paragraph 4, I stand by my declaration,

9     that I've sent to Chevron.  I sent an original declaration.

10    Chevron raised issues about that declaration.  I then revised

11    the declaration, sent it to Chevron as a draft, to work with

12    Chevron to try to figure out how to get that declaration

13    complete.  And I feel very ambushed by this massive amount of

14    information that they obviously have gathered through the

15    subpoena process with regard to my devices I didn't know about.

16            THE COURT:  Mr. Donziger, there is no massive amount

17    of information.  You got it several days before I did.  I got

18    it this morning.

19            MR. DONZIGER:  I got it on Friday afternoon.

20            THE COURT:  Yes.  That's what I'm referring to.  And

21    it has three, six, nine, eleven exhibits.  The first two are

22    the two affidavits that you wrote, with which you are

23    presumably familiar.  The third is a letter to you from

24    Chevron, or from Gibson Dunn, dated June 5th, with which you

25    are presumably familiar.  The fourth is a letter by you to

Mr. Krehel dated June 5th, with which you are presumably

familiar.  The fifth is something from Apple.  It's a massive

document of about four pages.  The sixth is a couple of pages

of a transcript from a deposition at which you were present on

June 6th.  Exhibit G is a few pages of listings from AT&T.

Exhibit H are 12- and 14-year-old e-mails to and from you,

which, if memory serves me, were exhibits at trial five years

ago.  Exhibit I seems to be a copy of your listing on some

website.  It's about three pages.  Exhibit J is essentially the

same sort of thing.  And Exhibit A is a listing of the dates

and times of something like eight or nine chat messages that

occurred 12 years ago.  This is not massive information.

OK.  Let's go from there.

MR. DONZIGER:  I respectfully disagree for this

reason:  If you look at their statements, they claim that they

have records from AT&T saying I have -- there's up to 18

devices.

THE COURT:  Look, Mr. Donziger, this is very simple.

I am here to take evidence.  You have a position on the facts.

They have a position on the facts.  I've read what they've

said.  I have the documents in front of me.  I think if your

position is that you have complied fully with paragraph 4, or

anything else, though I understand there is no dispute about

the assignments, you should get on the witness stand and give

such testimony under oath as you care to give and be

J6AACHEOps

1    cross-examined about it.

2            MR. DONZIGER:  I'm happy to do that, once I have a

3    chance to do due diligence based on what they filed on Friday.

4    I mean, it's very unfair to me, sir, to call me into court on

5    Monday morning based on this massive amount of information.

6    They're a major law firm backed by a big oil company.  I work

7    alone out of my apartment.  OK.  I don't have resources to hire

8    tech people to go investigate all the evidence they put forth.

9    I'm happy to be as cooperative as I can.  I will restate here,

10   today, right now, that, for years, I have used two devices.

11   And I identified those in my affidavit.

12           THE COURT:  Mr. Donziger, I am not interested in

13   rhetorical statements from the lectern.  If you have facts to

14   put forward, you're welcome to put them forward, under oath,

15   now, on the witness stand.

16           MR. DONZIGER:  I don't -- I'm not ready to do that,

17   sir.  I would ask for time to develop information.  This is my

18   question to you, and I would respectfully ask you to

19   accommodate me.

20           THE COURT:  Denied.

21           MR. DONZIGER:  I'll make my record.  I was going to

22   ask you for a few days to work with Chevron to revise my

23   declaration such that I would not be in compliance.  But the

24   real issue --

25           THE COURT:  You asked me for that last week and I

J6AACHEOps

1   denied it last week.

2           MR. DONZIGER:  I didn't get this information, sir,

3   until Friday.

4           THE COURT:  Mr. Donziger, do you understand what the

5   word "denied" means?

6           MR. DONZIGER:  OK.  So what do you want me to do at

7   this point?  I'm not prepared to put in evidence saying I have

8   no evidence.  I need to revise my declaration to make sure I

9   know the information I can present to the Court.

10          THE COURT:  Anything that you want to present that is

11  within your ken you are welcome to present now, from the

12  witness stand.

13          MR. DONZIGER:  I just told you, I am not prepared to

14  do that today.  That's, to me, that's very unfair, sir.  Can I

15  have a few days to develop evidence and then we can -- I can

16  put it under oath, put it in a declaration.  If it's necessary

17  to be cross-examined, I'll come back.

18          THE COURT:  In other words, what you say from the

19  lectern you are not prepared to say on the witness stand.  Is

20  that right?

21          MR. DONZIGER:  That's not true.  I have a draft

22  affidavit that I sent in good faith to Chevron to work with

23  them to get in compliance.  I intend to get in compliance on

24  paragraph 4.

25          THE COURT:  What about paragraph 5?

1          MR. DONZIGER:  That's a separate issue.  My position

2     on that, as I've stated for months now, is, it implicates core

3     constitutional rights for me and many people associated with

4     this case.  If you really look at what would happen under your

5     protocol, which I've expressed deep problems with in the letter

6     to Mr. Krehel, Chevron will get access to all sorts of

7     privileged information, including my conversations with

8     counsel, for example, from my bar proceeding, conversations

9     with counsel in Canada who is enforcing the equitable judgment

10    against Chevron in Canada.  And I don't feel like I, as a

11    private citizen -- obviously I'm no longer a lawyer because

12    I've been suspended, and I'm contesting that, as you know --

13    but as a private citizen, I retain constitutional rights.  And

14    if I were to do that, it would completely moot out my ability

15    to vindicate my constitutional rights, would essentially for

16    all intents and purposes moot the appeal.

17          So what I would ask is, when you resolve the motion --

18    I'm filing something tomorrow morning, as you know -- if you

19    deny the motion to vacate, I intend to move for a stay before

20    your Honor to block the imposition of whatever coercive fines

21    would apply to paragraph 5.  You know, I believe that I'm in

22    compliance with paragraph 4, or can get in compliance, and I

23    intend to.  With regard to paragraph 5, I believe the Court,

24    given the motion to vacate and given my briefing, does not have

25    jurisdiction to impose any sort of fine on that, or any sort of

J6AACHEOps

1    sanction on that, given there's been no contempt finding on the

2    additional order, and my appeal was already filed prior to its

3    issuance.

4           THE COURT:  I know what your position is.  You've

5    repeated it any number of times.  And I'll await your reply to

6    Chevron's brief tomorrow, and I'll rule on it.  I don't think

7    you'll have to wait long, although you may surprise me.

8           MR. DONZIGER:  Can I raise another issue?

9           THE COURT:  What?

10          MR. DONZIGER:  I'm concerned about a broader thing

11   going on here, which is this.  If you sort of look at the

12   discovery that you, this Court, have authorized Chevron to

13   engage in, which has now gone on for many months -- it's

14   implicated a lot people, including just last week my wife, my

15   brother-in-law, bank accounts associated with my son -- and you

16   combine that with the order to turn over my devices, I believe

17   I will no longer have any minimal space in which to conduct my

18   affairs as an advocate or a lawyer on this case.  Obviously I'm

19   not a lawyer at this moment, but I have been up until July of

20   last year.

21          And you say in your contempt findings of May 23rd that

22   I have a right to work on the Lago Agrio case.  You've always

23   said that, back from the RICO judgment and beyond.  I don't

24   know anymore what, in your mind, is permissible for me to do or

25   not do on this case.  It's very confusing to me and I feel

J6AACHEOps

1 really switched up.  The judgment you imposed on me of

2 $666,000, I felt like I was acting that entire period of time

3 with compliance with your --

4          THE COURT:  Mr. Donziger, I'm sorry.  This hearing was

5 convened for a particular purpose.  It is not an opportunity

6 for you to make, all over again, every complaint you've been --

7

8          What is that sound, ma'am?  Is that your phone?

9          MR. ROMERO-DELMASTRO:  I apologize.  I didn't realize

10 my watch is --

11          THE COURT:  Your watch.  OK.

12          This is not an opportunity for you to make all your

13 complaints all over again, for the benefit of whoever came in

14 here.  We're done.  You're either going to take the stand or

15 you're not going to take the stand.  And whatever flows from

16 that flows from that.

17          MR. DONZIGER:  OK.  I just want to be clear I'm

18 willing to take the stand once I have a chance to get

19 information that would be useful to the Court.

20          THE COURT:  This was called for this date.  You asked

21 for an adjournment previously.  I am convinced, in part, what

22 is going on here is simply stalling.  And I'm not going to put

23 up with it anymore.

24          MR. DONZIGER:  Sir, respectfully, I'm not stalling.

25 OK.

J6AACHEOps

1          THE COURT:  Well --

2          MR. DONZIGER:  I want to mention this point because

3     it's important.

4          THE COURT:  Well, you may want to mention it, but I'm

5     not interested in hearing it.

6          MR. DONZIGER:  May I please speak?  It will take all

7     of 15 seconds.

8          THE COURT:  You have 15 seconds.

9          MR. DONZIGER:  All right.  I really feel like this

10    issue was ripe for decision by your Honor over a year ago when

11    I filed my motion to dismiss their original contempt findings.

12    They found nothing in discovery related to me selling my own

13    shares for money.  Zero, after 13 months.

14         THE COURT:  I've heard this over and over again.  I'm

15    not listening anymore.

16         MR. DONZIGER:  So to be accused of stalling, when I

17    have asked --

18         THE COURT:  Mr. Donziger --

19         MR. DONZIGER:  -- for a decision I don't think is

20    fair.

21         THE COURT:  Mr. Donziger, that's the way it goes.  We

22    have a court of appeals.  Maybe you'll do just as well there as

23    you hope, and maybe you won't.  There we are.  That's it.

24         MR. DONZIGER:  May I ask the Court a question.

25         THE COURT:  You can ask, but I don't sit here to

J6AACHEOps

1     answer questions.

2              MR. DONZIGER:  As you know, there's a pending action

3     to enforce the equitable judgment in Canada.  You say in your

4     decision that I'm allowed to work on the Lago Agrio case.  In

5     your mind, does that include being able to assist counsel in

6     Canada with my pretty vast institutional knowledge about this

7     case?

8              THE COURT:  I don't give advisory opinions,

9     Mr. Donziger.

10             MR. DONZIGER:  Thank you.

11             THE COURT:  Ms. Neuman.

12             MS. NEUMAN:  Thank you, your Honor.  We prepared a

13    small handful of slides that we thought would be helpful to the

14    Court to discuss the deficiencies.

15             THE COURT:  Slides that are different from what you

16    put in, than what I received this morning?

17             MS. NEUMAN:  The slides are based Ms. Champion's

18    declaration Exhibits E and G and one additional exhibit that's

19    six pages that we brought with us that we found in the AT&T

20    records that was marked at Ms. Miller's deposition on Wednesday

21    as Exhibit 5969.

22             THE COURT:  I don't think I need any of that.

23             Your memorandum of, I think it's June 7th --

24             MS. NEUMAN:  Yes, your Honor.

25             THE COURT:  -- urges, in view of Mr. Donziger's

J6AACHEOps

1    failure to purge himself of contempt, that I should grant

2    additional relief, such as the surrender of any passports he

3    has, perhaps among other things.  Do I have authority to do

4    that?

5            MS. NEUMAN:  Yes, your Honor.

6            THE COURT:  And where does that come from?

7            MS. NEUMAN:  I believe we cite the authorities in our

8    papers and then in our original motion for contempt, the *JSC*

9    case.

10            THE COURT:  I'm sorry.  I couldn't hear what you just

11    said.

12            MS. NEUMAN:  I'm sorry, your Honor.  The *JSC* case.

13            THE COURT:  I didn't get that.

14            MS. NEUMAN:  *JSC*.

15            THE COURT:  *JSC*?

16            MS. NEUMAN:  Yes, your Honor.

17            THE COURT:  And that refers to what?

18            MS. NEUMAN:  *JSC Foreign Economic Association Techno*

19    *Export v. International Development*, 2005 WL 1983905.  That

20    says the defendants failed to comply with the attachment order,

21    and Judge Koeltl granted plaintiff's request for an order

22    directing United States Marshals to seize certain property in

23    the defendant's residences.  Under *Cascade Capital LLC v. DRS*

24    *Processing LLC*, 218 WL 4705559 at --

25            THE COURT:  218 Westlaw?  That doesn't sound right.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J6AACHEOps

1          MS. NEUMAN:  2018.  I'm sorry, your Honor.

2          THE COURT:  OK.

3          MS. NEUMAN:  -- Westlaw, WL, 4705559 at 4 (October 1,

4     2018), ordering as a civil contempt sanction the "U.S. Marshal

5     to secure the defendant's premises and to enable plaintiff to

6     enter the premises and recover any pertinent information

7     located therein, including digital devices on which any

8     relevant information may be stored and for the order of seizure

9     of passports, *Herbstein v. Bruetman*, B-r-u-e-t-m-a-n, 241 F.3d

10    586-589 (7th Cir. 2001) holding that "the power to imprison a

11    recalcitrant litigant for contempt implies the lesser power to

12    set conditions on freedom, including ordering the surrender of

13    one's passport."

14         THE COURT:  All right.  Mr. Donziger, do you want to

15    be heard about any of that?

16         I take it you have not paid any of the fines.  Right?

17         MR. DONZIGER:  I wasn't certain the fines were even

18    running.  I feel like I'm in compliance.  Are they running?

19         THE COURT:  Of course they're running.

20         MR. DONZIGER:  Sir, no.  I don't have resources, sir,

21    to pay fines.  My bank accounts are frozen by them.

22         THE COURT:  Well, I have no other --

23         MR. DONZIGER:  Don't pretend like we're operating in a

24    world where I have a lot of resources.

25         THE COURT:  Don't accuse me of pretending anything.

J6AACHEOps

1          MR. DONZIGER:  I don't have resources to pay the

2    fines.  And it really raises the larger issue, given that I

3    don't have resources to pay the fines or the judgment, what's

4    really going on here is there's an effort by Chevron to block

5    me from being an advocate in terms of what's going on with

6    enforcement of the judgment in other jurisdictions.  And that

7    violates the Second Circuit mandate.  And if they're arguing my

8    passport should be taken, which is coming sua sponte from the

9    bench today --

10          THE COURT:  Mr. Donziger, you well know that the

11    statement you just made is false, because it's been requested

12    in their papers at least once in the past.

13          MR. DONZIGER:  I never said --

14          THE COURT:  "Sua sponte" means on the court's own

15    motion.  That suggestion didn't come from me, and you know it.

16          MR. DONZIGER:  I apologize.  I misspoke.  I didn't

17    understand what that meant exactly.  All I'm saying is it came

18    up today when they hadn't asked for it.

19          THE COURT:  Well, they did ask for it.  They asked for

20    it in the papers you were served.

21          MR. DONZIGER:  In any event, the issue with the

22    passport -- look, I can't function, not being in compliance.

23    OK.  I've been coming here for ten years now.  I've shown up

24    for the RICO trial.  I've shown up for every court hearing.  I

25    have been very clear about what I do with my time, which

J6AACHEOps

1   includes trying to help my clients enforce their judgment

2   consistent with the Second Circuit's mandate and your Honor's

3   own decision.  To deprive me of my ability to travel out of the

4   country would essentially render me a nullity as an advocate,

5   would render the Second Circuit decision a nullity in terms of

6   my rights to be an advocate.  And if you're going to do that --

7   listen, if you do order that, you don't have to send marshals

8   to my house.  I will voluntarily surrender my passport until I

9   can deal with it at the Second Circuit.  But I just don't

10  believe that would be an appropriate move.  I believe it would

11  be improper.  I get your thinking with it.  But it would

12  essentially prevent me from carrying out what I believe I have

13  a right to do under your Honor's own order and under the Second

14  Circuit affirmance of the RICO judgment, my advocacy

15  activities.  So I would ask that you please not do that.

16          With regard to the devices, my position is clear.

17  After you rule on the motion to vacate, please allow me a few

18  days to file for a stay.  You know, this is not unusual in

19  post-judgment proceedings.

20          THE COURT:  If you want nine months to file before me

21  for a stay, welcome to it.  But the fines are running.  And any

22  other penalties I impose will be running.

23          MR. DONZIGER:  Look, I --

24          THE COURT:  You have the ability to get yourself out

25  of whatever box you're in by complying with my orders.  And the

J6AACHEOps

1    United States Supreme Court says, absent a stay, you have an

2    obligation to do that, and if you do not discharge that

3    obligation, you do it at your own risk.  And that's been clear

4    to you for a very long time.  And you disregard order after

5    order.

6          MR. DONZIGER:  And that would come at the stripping of

7    my constitutional rights, sir.  And that is why --

8          THE COURT:  You have a fancy idea of your

9    constitutional rights which this Judge has rejected in an

10   opinion a long time ago, on grounds of waiver and on grounds of

11   substance.

12         MR. DONZIGER:  I understand that.  But you would

13   acknowledge that a trial judge is subject to review by an

14   appellate court.

15         THE COURT:  Sometimes.

16         MR. DONZIGER:  And that's what I intend to do.  And I

17   say that respectfully.

18          And also I have done research on this and, granted, I

19   don't have resources even close to the resources they do.  But

20   my research -- and I can give you a couple cases on this --

21   indicates that in post-judgment proceedings when the decision

22   is already over -- there's been an appellate decision affirming

23   your Honor's RICO judgment -- the litigant has a right to take

24   a contempt finding up as a final appeal.  It is really the only

25   way to appeal it without being -- you know, without -- the only

J6AACHEOps

1   way to really get review is to go into contempt, which is why,

2   based on that law, I have asked for you to hold me in contempt

3   for several months.  You know, I didn't expect you to impose

4   these enormous fines on me.  But I really feel like the fines

5   and judgment debtor proceeding are just another way to render

6   me useless as an advocate.

7          And I think the big problem with Chevron is they're

8   furious after all these years that the case is still going on

9   in Canada.  And I have something to do with that.

10          THE COURT:  You're furious that they're pursuing their

11   legal rights against you.  I understand that.  Both sides are

12   furious.

13          MR. DONZIGER:  Well, I'm not furious.

14          THE COURT:  That's not news to me.

15          MR. DONZIGER:  I'm not furious.  I'm trying to deal

16   with it professionally.  OK.  I'm trying to focus on what's

17   important, which is, my clients are hurting and I would like

18   them to get some sort of relief.  It's way beyond me at this

19   point, for me personally, way beyond me.  And this case is not

20   going to go away, in my opinion.  It's going to continue to be

21   enforced whether I'm involved or not.  And I just think that to

22   render me a nullity, which is what I think they're trying to

23   do, and disable my advocacy, implicates core First Amendment

24   rights, and to turn over those devices --

25          THE COURT:  So you keep saying.  I've heard that

J6AACHEOps

1    record played many times before.  Now, let's end it.  I'm not

2    going to listen to it anymore.  You've been fully heard on it.

3    You have briefed it.  I have issued an opinion on it.  You

4    appealed from that opinion.  You filed a brief in the Second

5    Circuit.  It hasn't been calendared for argument.  You never

6    sought a stay of it.  There it is.

7              You're welcome to go on to the Second Circuit and see

8    what happens.  But you take your chances in doing so.

9              All right.  Anything else this morning?

10             MR. MASTRO:  No, your Honor.  The only thing that I

11   wanted to say, because I know Mr. Donziger has been responding

12   on the paragraph 5 issue, is that it is apparent what

13   Mr. Donziger intends to do and to argue.  It's apparent that he

14   intends not to comply with paragraph 5 regardless and to argue

15   on the most unfounded basis that -- the fact that there is a

16   subsequent order of this Court actually deciding that issue and

17   imposing a sanction is -- he's going to try and use the same

18   technicality or a, quote/unquote, get-out-of-jail-free card on

19   that contempt.

20             There are procedures with the circuit, limited remands

21   and the like, that could eliminate --

22             THE COURT:  I read your brief too.  I don't have to

23   hear that all over again.

24             MR. MASTRO:  No problem, your Honor.

25             And I just want to add one last thing in response to

J6AACHEOps

what Mr. Donziger said.  He keeps talking about his advocacy

and his right to represent clients in Canada.  He's been

suspended from the practice of law.  So things he's talking

about are things that actually he's been suspended from doing

here in New York.

          THE COURT:  Well, there are different kinds of

advocacy.

          Look, Mr. Donziger, just so it's entirely clear, these

coercive fines that I have imposed I have made clear will

evaporate if, as, and when you are in full compliance.  They

will be gone.  I'm not sure I had to do that, but I have made

that commitment.  But every day that goes by -- and indeed your

statements here this morning suggest to me that they're a waste

of time and that if these orders are to be enforced it's going

to take more than I've done up to now.

          Now, you would be well advised, so far as paragraph 4

is concerned, to work out your problems with Chevron and take

care of at least that part of it, which you don't seem to be as

upset about as the rest.  And you did manage to finally comply

with an order that's been outstanding for five years in respect

of the assignment.  We may come to a very hard place on

paragraph 5 for you.  But that's where we are.  And I'm being

totally straight with you.

          MR. DONZIGER:  May I just ask a very quick question

about something you just said.  On what basis are the fines

J6AACHEOps

1   running?  Under lack of compliance with paragraph 4 or under

2   lack of compliance with paragraph 5 or both?

3           THE COURT:  Both.

4           MR. DONZIGER:  So there are simultaneous fines running

5   in your mind?

6           THE COURT:  Simultaneous and cumulative.

7           OK.  Thank you, folks.

8           MR. MASTRO:  Thank you, your Honor.

9           MS. NEUMAN:  Thank you, your Honor.

10          (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25