UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHEVRON CORPORATION,

                Plaintiff,

    v.

STEVEN DONZIGER *et al.*,

                Defendants.

11 Civ. 0691 (LAK)

**RESPONSE IN OPPOSITION TO MOTION FOR CONTEMPT**

Chevron's motion to hold me in contempt ("Motion," "Mot.") is most striking for the combined ferocity and irrelevance of its range of personal attacks. While I certainly have worked closely with Steven Donziger over the years, the aiding and abetting claims in the Motion plainly have nothing to do with what I did as an intern working for the Ecuadorian plaintiffs 15 years ago. As set out below, Chevron does not have the facts it needs for its actual contempt claim, so instead we get "shock and awe." To preserve the Court's and my own time and resources, I am not going to dedicate time or space to chasing down most of the random falsehoods in the Motion.

To the extent the Court has jurisdiction to resolve the Motion,[1] it fails because it flagrantly and deliberately misconstrues the underlying contempt against Mr. Donziger in the Court's May 23, 2019 Opinion ("Contempt Opinion") that it now seeks to apply vicariously to me. The Court quite intentionally grounded the Contempt Opinion specifically on its finding of Mr. Donziger's

---

[1] Section II argues that the Court lacks jurisdiction to decide Chevron's contempt claim because it is involved in an aspect of the case now on appeal. If the Court agrees with this argument, it may be that it should deny the Motion on the jurisdictional basis rather than engage the merits of the arguments in Section I or III.

receipt and use of certain funds as "profit" in violation of paragraph 1 of the RICO Injunction, DI 1875. The Motion pretends, rather, that the Contempt Opinion found *all* of Mr. Donziger's litigation finance efforts to be in contempt of the RICO Injunction, and builds its entire case for vicarious liability against me on my involvement in such efforts. Because the pretense is false—while the Court objected to the litigation finance efforts, it chose not to base its civil contempt finding on them—the Motion collapses at its foundation. *Infra* Section I.

Indeed, the Motion's focus on vicarious liability through the conduct of Mr. Donziger is so strong that Chevron fails to even cite the direct legal standard for civil contempt and nowhere in the Motion argues it. Chevron avoids the issue because the evidence simply does not reveal me as someone acting in knowing violation of a court order. While the role of knowledge in civil contempt remains a difficult issue, *see infra* at 12-14 (arguing that some degree of knowledge or awareness is implicitly required by the "clear and unambiguous" and "reasonable diligence" factors), the inconvenient fact for Chevron is that the documentary evidence strongly corroborates my unequivocal accompanying statement under oath, see Declaration of Aaron Marr Page dated Oct. 3, 2019 ("Decl.") at ¶¶ 6-8, that I did not understand the RICO Injunction to prohibit litigation financing based on the separate and seemingly non-enjoined interest of the *Frente de Defensa de la Amazonía* (FDA). In other words, I acted in good faith and diligently sought at all times to remain within the bounds of the law as I reasonably understood it. Thankfully, from a due process and fundamental fairness perspective, the cases do not show courts typically entering civil contempt orders against parties in such circumstance. *Infra* Section III.

## Relevant Facts

The relevant facts are set out under oath in the Declaration accompanying this Response and are addressed in the context of the argument in the sections that follow.

**Argument**

I.   **The Motion Should Be Dismissed as a Matter of Law Because It Relies on a Profound Misconstruction of This Court's Contempt Opinion**

Chevron's Motion is grounded on a fundamental misconstruction of the nature of the contempt and related compensatory sanction found by the Court with respect to Mr. Donziger's litigation finance work. The Court in the Contempt Opinion was very careful *not* to rest its ultimate contempt finding on its "view" of Mr. Donziger's violation of the anti-monetization injunction in paragraph 5 of the RICO Injunction. That is, while the Court discussed the paragraph 5 contentions at length and ultimately came to the "view" that Mr. Donziger "violated paragraph 5 via his sales and efforts to sell interests in the Ecuador Judgment," DI 2209 at 52, the Court expressly disclaimed any reliance on this view in its subsequent finding and sanction of contempt:

> In the last analysis, however, it is unnecessary to decide these motions on [the described "violat[ion] [of] paragraph 5"]. The fact of the matter is that Donziger, in consequence of his sales, has profited extensively from the Ecuador Judgment in violation of the RICO Judgment. . . . [T]he Court elects to rest its decision on that ground.

*Id.* at 52-53. The Contempt Opinion then proceeded to narrow its contempt finding even further, explaining that while Mr. Donziger received $1,242,985 in litigation finance funds traceable to the Ecuador Judgment, it was only his receipt of some of those funds pursuant to "a personal right to or interest in" the funds that counted as "profit" sufficient to trigger the obligation to transfer the funds to Chevron and/or to establish contempt. *Id.* at 55-56 (while "it may be that Donziger had a right to or an interest in the entire $1,242,985 . . . it is unnecessary to decide the issue in order to resolve these motions"). The conclusion or operative part of the Contempt Opinion emphasizes, again, the discrete foundation of the contempt finding:

> Donziger is in wilful contempt *of paragraph 1* of the RICO Judgment by virtue of his profiting in the amount of $666,476.34 from the sale of interests in the Ecuador Judgment and his failure to

3

assign and transfer to Chevron that profit.

*Id.* at 69-70, ¶ 1(c) (emphasis added).[2] In the scope of this finding, the Court made clear that funds raised even in processes that involved Mr. Donziger are not subject to the paragraph 1 constructive trust, or at least subject to contempt for violation of paragraph 1, unless they are received by Mr. Donziger as personal profit (and not transferred). The reasons why the Court chose this limited approach are properly with the Court. It may be that even though the Court rejected the reasonableness of Mr. Donziger's claimed reliance on the Stay/Clarification Opinion, the Court nonetheless recognized that the Opinion's analysis of paragraph 5 made a formal contempt finding based litigation finance efforts generally less than ideal. There may also have been a consideration of appellate review: I have to imagine that Chevron will soon argue in opposition to Mr. Donziger's pending appeal that the Court's careful grounding of the Contempt Opinion on paragraph 1 renders Mr. Donziger's many complaints about paragraph 5 analysis irrelevant. In any event, the Court's decision *not* to hold Mr. Donziger's fund-raising activity itself in contempt of paragraph 5, but rather to only hold his receipt and non-transfer of "profit" as contemptuous, is clear.

The problem for Chevron is that it has (necessarily, as we will see) built its entire Motion on the allegations of my involvement in Mr. Donziger's fund-raising activity, not his receipt and non-transfer of certain funds considered as profit (which I was not and really could not have been

---

[2] No contempt finding in the conclusion or operative part of the Contempt Opinion is based on paragraph 5. *Id.* at 69, ¶ 1(a) (contempt of RICO Injunction paragraph 1 for failure to transfer contingency fee interest); *id.* at 70, ¶ 2(a) and 3(a) (contempt of the Court's March 5, 2018 order). However, in its earlier analysis, the opinion states that Mr. Donziger's receipt and non-transfer of funds to which he had "a personal right to or an interest in" counted as "profiting from and failing to assign" and thus "in contempt of paragraphs 1 ***and* 5** of the RICO Judgment." *Id.* at 58 (emphasis added). Paragraph 5 thus appears to be involved in the analysis at most as a predicate injunction specifically against the act of "profiting." As noted elsewhere in this Section and Section III, there is no basis in fact to infer either that I similarly "profited" or that I knew or had any reason to know that Mr. Donziger would receive funds as "profit" under the Court's complication analysis and application of that concept.

4

involved in). I make no secret of my relatively limited involvement in that activity (a more sober description of which is set out under oath at paragraph 5 of my Declaration). But as just established, that activity was *not* the basis for the Court's contempt finding. To hold me in contempt vicariously for a claimed paragraph 5 contempt that was not established against the principal would be erroneous, *see, e.g.*, *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) ("The district court erroneously held that Tiber aided and abetted a violation of the court order without reaching the predicate question of whether Ardra itself committed contempt."), and just as importantly would jettison the Court's carefully-considered exercise of discretion *not* to push its contempt finding in the unique circumstances of this case as far as Chevron wishes.

It is noteworthy that Chevron could not have built its Motion on alleged agency of aiding and abetting of the actual paragraph 1 contempt both because of the nature of that contempt and because there are no facts that would support such an approach. Paragraph 1 is not primarily an injunction respecting action, like paragraph 5, but a constructive trust defined in by scope of the property subject to the trust. That property in turn in defined by reference to receipt **by Mr. Donziger**. Unlike, perhaps, the injunction against acts of monetization in paragraph 5, there is no viable way to simply substitute me (or other agents) for Mr. Donziger in paragraph 1 without radically expanding the constructive trust to suddenly enjoin all property traceable to the Ecuador Judgment received by any and all persons the Court might find to be working in concert or actively participating with Mr. Donziger (with no apparent limitation on the topical scope of that participation). Such an expanded constructive trust would be in plain tension with other parts of the RICO Injunction itself (*see, e.g.*, paragraph 6), as well as the Contempt Opinion (*see, e.g.*, DI 2209 at 53 (assuming that FDA funds are *not* subject to the Donziger constructive trust), the Stay/Clarification Opinion (*see, e.g.*, DI 1901 at 19 ("The idea that anyone would decline to

associate with Donziger by reason of paragraph 8 [applying the RICO Injunction terms to agents] is fanciful"[3]), and of course the Second Circuit's affirmance of the RICO Opinion (*see, e.g.*, 833 F.3d 74 at 119 (the RICO Injunction "merely . . . '<u>prevents the three defendants who appeared at trial . . . from profiting [from the Ecuador Judgment]</u>'") (emphasis applied by the Second Circuit)). If this was really the injunction the Court issued, Chevron starting March 5, 2014 could have gone after everything that I and countless others on the Ecuador side of the case have ever been paid for our work on the case. There is no basis to suggest that this is what the Court intended on March 4, 2014.

Moreover, while I was involved in a financing process that resulted in the intake of funds, there is no indication of any involvement in the specified contemptuous acts of receipt of funds by Mr. Donziger as "profit" and non-transfer thereof. Of course, there is no evidence that I knew Mr. Donziger was not going to transfer his "profits" (as the Court found them) to Chevron, or that I had any ability to "participate" in any such non-transfer. More pointedly, there is no evidence that I knew of or participated in the allocation of funds received by Mr. Donziger to uses that were ultimately deemed to constitute "profit" and those that were not. Because I did not participate in the actual contemptuous act as the Court found it, and because that act was wholly the product of Mr. Donziger's own conduct and discretion, *see* Decl. at ¶ 10, there is simply no logical or legal basis to hold me vicariously liable for it. *See* Section III (citing the requirements of contempt and aiding and abetting liability, which the Motion ignores).

Chevron's attempt to hold me vicariously liable (or directly or vicariously liable under the default judgment) for the $342,045.16 in funds held by Ms. Sullivan when she decided to stop

---

[3] And, of course, DI 1901 at 7-8 (the RICO Injunction "[does] not prevent Donziger from being paid, just as he has been paid at least $958,000 and likely considerably more over the past nine or ten years").

working on the case, and where were transferred to me and then immediately forwarded to Mr. Donziger as the FDA's lead U.S. representative (a full description is provided in my Declaration at ¶¶ 11-12), is also foreclosed by an accurate appreciation of the actual contempt found in the Contempt Opinion. Quite obviously, the Court did *not* hold Mr. Donziger liable in contempt merely for *his* receipt from me of the $342,045.34, even though he was also an agent of the FDA identically subject to the default judgment. Rather, it engaged in the analysis already explained, looking at what amount was ultimately retrained or treated as "profit" pursuant to "a personal right [] or interest," as evidenced by his subsequent use of the funds. As such, there is again no vicarious contempt liability because the Donziger conduct allegedly being aided or abetted was not the basis for the contempt that the Court found.

Chevron fudges the basis of its claim on the Sullivan transfer, suggesting at times that it sounds in direct contempt liability under the default judgment. But as noted in Section III, it never even cites the standard for direct contempt liability, much less argues or establish the relevant factors. The direct liability claim is thus not actually presented in the Motion. Even if it were, it would not prevail, because applying the same Contempt Opinion analysis to me, it is obvious that I did not receive the funds from Ms. Sullivan as "profit" pursuant to "a personal right [] or interest." I received them as an agent for the FDA (as did Mr. Donziger) and I disbursed them entirely pursuant to client instructions.[4] The $50,000 that I subsequently received from Mr. Donziger was

---

[4] Because there is no basis, following the Contempt Opinion approach, to find me in contempt either vicariously or directly under the default judgment, I need not reach the many problems raised by any application of the contempt judgment to hold me in contempt in the unique circumstances here. The default judgment was issued against a range of non-U.S. defendants based on a jurisdictional analysis set out in a brief footnote in the judgment itself. DI 1985 at 1. While the footnote referenced a Chevron motion and the Court's jurisdictional analysis in the RICO Opinion regarding the two appearing Lago Agrio Plaintiffs or "LAPs," noting that "[t]he same reasoning applies to the other LAPs . . . who are *most* of the Defaulted Defendants," *id.* (emphasis added), it provided no explanation of its basis for jurisdiction over

not a "kickback," in Chevron's puerile characterization, but a payment on invoices for professional services already due as well as partial funding for a long-discussed retainer for future services. *See* Decl. at ¶ 12, Ex. A.[5]

---

numerous non-LAP defendants, such as the FDA. Moreover, the Court in the footnote expressly relied on a jurisdictional theory that the Second Circuit in affirming the RICO Opinion expressly chose *not* to rely on. 833 F.3d 74 at 145.

A default judgment of course is "an extreme sanction" that "should only be imposed upon a serious showing of willful default." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). While "motions to vacate default judgments are to be granted liberally," *Int'l Cargo & Sur. Ins. v. Mora Textiles Corp.,* 1991 WL 120359, at *2 (S.D.N.Y. 1991), a default judgment against foreign national will often be left in limbo, precisely because the foreign defendant may not subject to the jurisdiction of U.S. courts and has no incentive—or legal obligation—to appear to contest a judgment it considers void for lack of personal jurisdiction. *See Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) ("A default judgment is 'void' if it is rendered by a court that lacks jurisdiction over the parties."); *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004) ("A default judgment may be considered void if the judgment has been entered in a manner inconsistent with due process of law."); *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982) ("A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding.").

This state of play (which is why default judgments are "disfavored," *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001)) gets yet more complicated where, as here, the judgment imposes drastic injunctive relief and an agency theory would seem to make a U.S. non-party subject to the injunction, all while the judgment debtor who could properly challenge the judgment is absent. While the regular rule is that invalid or unconstitutional orders must be obeyed until set aside, the rule "presupposes the existence of at least three conditions: *(i)* the court issuing the injunction must enjoy subject matter and personal jurisdiction over the controversy; *(ii)* adequate and effective remedies must be available for orderly review of the challenged ruling, and *(iii)* the order must not require an irretrievable surrender of constitutional guarantees." *United States v. Dickinson*, 465 F.2d 496, 511 (5th Cir. 1972). Thus there are exceptions to the rule, especially in the contempt context, where the relevant order is void for lack of jurisdiction or otherwise "transparently invalid." *United States v. Hendrickson*, 822 F.3d 812, 819 (6th Cir. 2016). Again, because the Court's default judgment does not lead to any cognizable claim of contempt liability on me following the Court's approach in the Contempt Opinion, it does not seem necessary to more fully engage much less resolve this obviously difficult issue.

[5] As to whether my own receipt of fees for work performed and properly invoiced can be maintained as "profit" subject to the RICO Injunction constructive trust applied to me on an agency theory, I would first submit that any such finding would have to be made on the basis of a direct claim of contempt under that judgment (or the default judgment), which Chevron

8

In sum, an accurate appreciation of the Contempt Opinion leaves Chevron's Motion without any foundation and it should be denied in its entirety.

## II. In the Alternative, the Motion Should Be Dismissed for Lack Of Jurisdiction in Light of Mr. Donziger's Pending Appeal, or Held in Abeyance

The Motion plainly seeks to rely on and apply the Court's litigation finance-based civil contempt finding against Mr. Donziger to me under an agency and/or aiding and abetting theory. Mot. at 22. Indeed, in many respects the Motion seeks to expand the finding, ignoring the Court's intentionally narrow grounding and re-characterizing it as a sweeping prohibition on all efforts to finance interests in the Ecuador Judgment by all persons, all subject to contempt. *Supra* at 5-6. But the civil contempt finding which Chevron seeks to apply and expand is now on appeal. DI 2211. The appeal "divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).

When Mr. Donziger sought to rely on this authority on his own behalf, the Court held that it retained jurisdiction, citing *Webb v. GAF Corp.*, 78 F.3d 53, 55 (2d Cir. 1996) for the proposition that a notice only divests the district court of jurisdiction over "*issues decided* in the order being appealed." DI 2233 (emphasis added). But this quote is *dicta* from a decision that turned on the principle that "jurisdiction is retained where . . . the appeal is from an order granting or denying a

---

has not made and certainly not established. *Infra* at 10. I would further note that the Court appears to have deliberately set aside from its "profit" analysis those funds, traceable to the judgment in the Court's view, that were raised but dedicated to Canadian counsel legal fees ($791,500), disbursed by Ms. Sullivan ($282,955), and received by Mr. Donziger but not disbursed to his credit cards, mortgage company, or household expenses ($576,508). My fees were paid in part out of the latter two amounts. They were typically paid in response to specific due (typically long overdue) law firm invoices, and disbursed to me pursuant to the regular financial management of my solo practice. They were not profit, but modest compensation for work performed, and entirely separate from the contingency interest that I was granted by the FDA in January 2017. Mot., Ex. 103.

9

preliminary injunction," not based on the relationship between the issue retained below and the issue on appeal. 78 F.3d at 55. In fact, the Second Circuit has repeatedly held that the scope of divestment of jurisdiction is broader than the concrete set of issues in the order on appeal. The more typical description of the scope of divestment is drawn from *Griggs*—divestment extends to all "*aspects* of the case *involved in* the appeal"—the effect of which is to preclude the district court from ruling "on *any motion* affecting an aspect of the case that [is] before [the appellate court]." *Hom Sui Ching v. United States*, 298 F.3d 174, 180 n.5 (2d Cir. 2002) (emphasis added); *Lipin v. Sawyer*, 395 F. App'x 800, 802 (2d Cir. 2010) (affirming district court refusal to consider disqualification motion filed after a notice of appeal because the notice "removed the case from the district court's jurisdiction"); *Drywall Tapers & Pointers of Greater New York, Local Union 1974 of I.U.P.A.T., AFL-CIO v. Nastasi & Assocs. Inc.*, 488 F.3d 88, 94 (2d Cir. 2007) (affirming district court refusal to consider non-party motion to intervene following notice of appeal). Because the Motion relies directly on the contempt finding now on appeal and expressly and implicitly seeks to expand it, and because resolution of the Motion could require the Court to re-engage and re-analyze issues and aspects of the case now on appeal (such as the effect of the Stay/Clarification Opinion on the clarity and ambiguity of the RICO Injunction), the Motion sits squarely in the "aspect of the case involved in the appeal."

Indeed, the scope of divestiture is a practical consideration "guided by concerns of efficiency," *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996), and designed "to avoid confusion or waste of time resulting from having the same issues before two courts at the same time." *United States v. Salerno*, 868 F.2d 524, 540 (2d Cir. 1989). Consistent with his filings in this Court, Mr. Donziger's appeal sets forth his arguments as to why the RICO Injunction was not a "clear and unambiguous" order sufficient for a civil contempt finding in light of the Court's

Stay/Clarification Opinion, and why his diligence in seeking to comply with the RICO Injunction was indeed reasonable in light of that Opinion. A contempt finding against me—either vicariously through the Donziger contempt finding or pursuant to an independent analysis of the ambiguity of the order as applied to me and my own reasonable diligence—requires the Court to re-engage precisely the same issues that are not pending before the Second Circuit. This generates precisely the confusion and wastefulness that the divestiture rule aims to avoid, and for no good reason, since Chevron can simply decide to pursue me on a contempt theory following the conclusions of Mr. Donziger's appeal, if the Second Circuit's determination of the issues opens the door for that.

For the same reasons of efficiency and in the interests of justice, even if the Court determines that it has jurisdiction to proceed on the Motion, it should exercise its discretion to hold the Motion in abeyance until the Second Circuit has resolved Mr. Donziger's appeal and brought clarity and finality to the shared underlying issues. *See, e.g.*, *RLS Assocs., LLC v. United Bank of Kuwait PLC*, 2003 WL 22801918, at *1 (S.D.N.Y. Nov. 24, 2003) (holding fee petition in abeyance); *Gabarczyk v. Bd. of Educ. of City Sch. Dist. of Poughkeepsie*, 738 F. Supp. 118, 121 (S.D.N.Y. 1990) (declining to hold in abeyance in light of uncertain timeline re legislative action).

**III.    The Motion Fails on the Merits Because the Court Cannot Mechanically Apply Its Donziger Contempt Findings to Me and the Facts Do Not Independently Support a Finding of Civil Contempt**

In the last alternative, Chevron's Motion fails on the merits. Chevron itself predicates the success of its Motion on satisfaction of an inquiry that, it suggests, obviates the need for distinct findings on the underlying civil contempt factors and the aiding and abetting liability factors . But this inquiry appears to be a Chevron invention and none of the cases cited by Chevron address a situation like that here. Resolving the Motion as Chevron requests would end run the substantive elements of contempt (and aiding and abetting liability) which must be established for the particular contemnor. This would be erroneous and unjust.

Chevron asserts that the Court can hold me in contempt vicariously on an agency or aiding and abetting theory without establishing the underlying contempt or aiding and abetting liability factors. Its proposed inquiry, set out at the bottom of page 22 of its Motion, appears to be a Chevron invention cobbled together from a number of cases. The Motion never cites the underlying elements of civil contempt and dedicates the entirety of its argument to emphasizing the extent of my work with Mr. Donziger and the simple facts of my involvement in the litigation finance efforts (which I describe at ¶ 5 of my Declaration). But again, none of the cases cited by Chevron stand for the proposition that contempt can be found against a non-party (or anyone) without fully satisfying the underlying civil contempt elements. In fact, each of the three cases used in Chevron's composite did consider the particular alleged contemnor's conduct under the factors. *United States v. Paccione*, 964 F.2d 1269, 1276 (2d Cir. 1992) ("Michael Vulpis argues that the government did not prove all the elements of criminal contempt. We disagree."); *Aviv v. Brainard*, 2018 WL 4927912, at *2-3 [¶¶ 12-14] (S.D.N.Y. Oct. 11, 2018); *Bear U.S.A., Inc. v. Kim*, 71 F. Supp. 2d 237, 246-47 (S.D.N.Y. 1999); see also *id.* at 248 ("having heard the witnesses at two hearings, the Court finds that any suggestion that Bing Chuan did not understand that its conduct was forbidden by the judgment is not credible").

Moreover, Chevron's reliance on aiding and abetting liability appears to *increase* its burden on contempt, and rightly so. An aiding and abetting contemnor is at least one step (and perhaps more) removed from the core assertion of authority by the court over the enjoined party, such that an enhanced degree of assurance that the alleged abettor was genuinely acting contemptuously is appropriate. "[A]ctual knowledge is the standard for imposing liability for aiding and abetting." *Liu Yao-Yi v. Wilmington Tr. Co.*, 301 F. Supp. 3d 403, 419 (W.D.N.Y. 2017); *id.* ("To prove a claim of aiding and abetting, a plaintiff must demonstrate that (1) a wrongful act was committed;

(2) the defendant had knowledge of the act; and (3) the defendant knowingly and substantially participated in or provided substantial assistance for the wrongful act.") (quoting *Brug v. Enstar Grp., Inc.,* 755 F.Supp. 1247, 1256 (D. Del. 1991)). *See also In re Agape Litig.*, 773 F. Supp. 2d 298, 308 (E.D.N.Y. 2011) ("The actual knowledge element of a claim for aiding and abetting is a distinct requirement from the scienter required to allege the underlying fraud.")

> As the Court stated in the Contempt Opinion:
>
>> In order to prevail on a civil contempt motion, the moving party must establish that (1) the court order with which the alleged contemnor failed to comply was clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the alleged contemnor has not diligently attempted to comply in a reasonable manner.

DI 2209 at 35. In the Contempt Opinion, the Court made specific findings with respect to Mr. Donziger's conduct as to all three elements—and as already noted, the analysis was not open-and-shut. While the Court ultimately concluded that a prohibition on litigation finance in the RICO Injunction was "clear and unambiguous" notwithstanding the Stay/Clarification Opinion and that Mr. Donziger's reliance on the latter was not reasonable (findings subject to Mr. Donziger's pending appeal), it did so pursuant to an analysis of Mr. Donziger's particular situation, it apparently found the question sufficiently close that it chose *not* to rest its ultimate contempt finding on the same financing activity that Chevron now claims I should be liable for participating in. Indeed, if it is the case that the Contempt Opinion does not flatly prohibit litigation financing but only the receipt of certain funds by certain actors as "profit," leaving other funds unencumbered, then the Motion is plainly deficient as it makes no showing that my participation in litigation finance efforts was designed to (or did) raise funds to be used as "profit" rather than for unencumbered purposes. *See* Section I.

Chevron apparently just assumes that the Court's findings regarding Mr. Donziger in light

13

of the contempt factors can mechanically be applied to me. But this is not the case. In particular, the Court's finding of non-diligence might well have been impacted by facts not applicable to my situation, such as Mr. Donziger's agreement with Mr. Zelman, which Chevron never claims I was aware of (and in fact I was not). I also maintain that the Court's conclusion that the RICO Injunction was "clear and unambiguous" should come out differently when considered in the context of my role. While the conclusion is an objective one, it necessarily involves at least some subjective component as well; no order can be "clear and unambiguous" to all persons in all circumstances. The subjective component intersects with the "actual notice" component that the Chevron acknowledges, Mot. at 22, and the actual knowledge required for aiding and abetting liability, which Chevron ignores.[6] Chevron must establish that I was on actual notice ***of the fact that the RICO Injunction flatly prohibited litigation financing***, both to establish that the prohibition was clear and unambiguous and that I had the opportunity to diligently comply but failed to so, and that my assistance to Mr. Donziger in violating the prohibition was indeed "knowing" as required for aiding and abetting liability.

As my Declaration under oath, corroborated by Chevron's own exhibits, makes clear: I did *not* know or appreciate that the financing of FDA interests was prohibited by the RICO Injunction. Decl. at ¶¶ 6-7. I was taken completely by surprise by Chevron's initial March 2018 motion to hold Mr. Donziger in contempt, which both Mr. Donziger and I both initially perceived as a baseless strategic maneuver that was destined to collapse as soon as it became clear that only FDA interests were being using for financing purposes. *See* Mot., Ex. 8 (email memorandum dated May 7, 2018, articulating my understanding of the nature and merits of Chevron's contempt claim). The

---

[6] Chevron also fails to establish that the assistance I gate to Mr. Donziger was sufficiently substantial. *See* Decl. at ¶ 5.

14

documents evidencing my involvement in the litigation financing efforts, which mostly involved legal draftsmanship and administrative tasks later in the process after the terms of the investment had been worked out, *id.* at ¶ 5, show me carrying out my work without any awareness of a concern of the overall lawfulness of the project. *Id.* at ¶ 7 (citing examples of my open communications with outside law firms brought in by investors to perform due diligence, including sending lawyers from these firms underlying documents for their research, including this Court's RICO Opinion and the Second Circuit affirmance thereof, both of which discuss the RICO Injunction in detail).

I recognize that willfulness and intent are not typically required in pure form to establish civil contempt. In light of the truth of my experience, as just stated, this is a difficult fact for me. Nonetheless, while the civil contempt jurisprudence may have elected to proceed without a high bar of specific intent in most cases, it does not seem deaf to concerns of mistake and, ultimately, good faith. The cases I have seen invariably include or seem to rely on findings or assumptions of knowing violation, woven into the "clear and unambiguous" requirement (presuming no possibility of mistake or misunderstanding) and the reasonable diligence requirement (which means nothing if the contemnor is genuinely unaware of the unlawfulness of his conduct).

"Contempt" is a strong word and opens the door to serious consequences. In order for the sanction to mean anything, it must keep its distance from its opposite, which is good faith. A finding of contempt notwithstanding evidence of good faith is not in the interests of justice. The record on this Motion and in these proceedings generally does not support any finding, much less a clear and convincing one, that I understood that the RICO Injunction prohibited financing off of FDA interests, that I had the opportunity to comply with this prohibition after understanding it, and that I elected to participate by assisting the financing notwithstanding and/or in contempt or

15

other bad faith regarding the prohibition.[7]

I respectfully request that the Court deny Chevron's Motion.

I hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that all the foregoing statements of fact are true and correct

DATED:     October 3, 2019            Respectfully submitted,

                                                               /s/

Aaron M. Page
512 Clark Street
Iowa City, IA 52240
Tel: (202) 618-2218
Email: aaron@forumnobis.org

*Pro se*

---

[7] The lack of knowledge of the prohibition and any intent to violate the RICO Injunction is at minimum a lack of the willfulness required, as Chevron acknowledges, Mot. at 33, to sustain an award of attorneys fees.