UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
:
CHEVRON CORPORATION,                                        :
                                                            :
                        Plaintiff,                          :
                                                            :
        v.                                                  :   Case No. 11 Civ. 0691 (LAK)
                                                            :
STEVEN DONZIGER, *et al.*,                                  :
                                                            :
                        Defendants.                         :
                                                            :
-----------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
CHEVRON CORPORATION'S MOTION TO HOLD AARON MARR PAGE
AND FORUM NOBIS PLLC IN CONTEMPT OF COURT FOR
THEIR VIOLATION OF THE RICO AND DEFAULT JUDGMENTS**

## TABLE OF CONTENTS

                                                                                                                   Page

I. Preliminary Statement ................................................................................................... 1

II. Argument ....................................................................................................................... 2

        A. The Court Should Disregard Page's Untimely Opposition Brief ......................... 2

        B. Even If Considered, Page's Opposition Fails in All Respects .............................. 2

               1. Page Does Not Dispute Most of Chevron's Motion .................................. 2

               2. Chevron's Motion Is Properly Grounded in Both Paragraphs 1 and 5 of the RICO Judgment and Paragraph 1 of the Default Judgment .......... 7

        C. This Court Has Jurisdiction Over Page and Forum Nobis ..................................... 8

        D. Chevron' Motion for Contempt Against Forum Nobis PLLC Is Unopposed ......... 9

        E. Page Does Not Dispute—or Even Address—the Appropriateness of the Remedies Chevron Has Requested ....................................................................... 10

III. Conclusion ................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Chevron Corp. v. Donziger*,
  974 F. Supp. 2d 362 (S.D.N.Y. 2014) ................................................................................... 2

*City of N.Y. v. Venkataram*,
  No. 06 Civ 6578 (NRB), 2012 WL 2921876 (S.D.N.Y. July 18, 2012) .................................. 9

*Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*,
  527 F.2d 966 (2d Cir. 1975) ................................................................................................... 8

*Davidson v. Scully*,
  No. 83 CIV. 2025 (MJL), 1995 WL 104020 (S.D.N.Y. Mar. 8, 1995) .................................. 7

*Distefano v. L. Offices of Barbara H. Katsos, P.C.*,
  No. 10-MC-0564 JS, 2011 WL 2446318 (E.D.N.Y. June 15, 2011) ...................................... 2

*Morisseau v. DLA Piper*,
  707 F. Supp. 2d 460 (S.D.N.Y. 2010) ................................................................................... 9

*New York State Nat'l Org. for Women v. Terry*,
  886 F.2d 1339 (2d Cir. 1989) ................................................................................................. 8

*New York v. U.S. Capital Funding, LLC*,
  No. 09-CV-0004 JFB ETB, 2011 WL 3489914 (E.D.N.Y. Aug. 9, 2011) ............................ 10

*Red Ball Interior Demolition Corp. v. Palmadessa*,
  947 F. Supp. 116 (S.D.N.Y. 1996) ......................................................................................... 9

*Solis v. Current Dev. Corp.*,
  557 F.3d 772 (7th Cir. 2009) ................................................................................................. 9

*Tracy v. Freshwater*,
  623 F.3d 90 (2d Cir. 2010) .................................................................................................... 2

*United States v. Miller*
  626 F.3d 682 (2d Cir. 2010); ................................................................................................. 9

*Waterkeeper All. Inc. v. Spirit of Utah Wilderness, Inc.*,
  No. 10-CV-1136 (NSR), 2017 WL 4386376 (S.D.N.Y. Oct. 2, 2017) ................................. 10

*Webb v. GAF Corp.*
  78 F.3d 53 (2d Cir. 1996) ....................................................................................................... 8

## TABLE OF AUTHORITIES
## (continued)

Page(s)

**Rules**

Fed. R. Civ. P. 65(d)(2).................................................................................................................4

## I. PRELIMINARY STATEMENT

Aaron Marr Page cannot dispute the key facts showing that he has committed contempt: Page does not deny that he was fully aware of this Court's RICO and Default Judgments, nor does he contest that he assisted Donziger with his fundraising efforts centered on selling off interests in the Ecuadorian judgment. And Page concedes that if he knowingly helped Donziger to profit from the Ecuadorian judgment, then contempt would be proper. The clear and convincing evidence shows that Page did just that.

Page's only proffered (and untimely) defenses are that (a) he supposedly did not understand the RICO Judgment to prohibit what he was doing, and (b) he claims he did not know Donziger would profit from these acts. But the first point is irrelevant, because the RICO and Default Judgments were clear and unambiguous, and the second is not credible, being contradicted by communications showing Page was fully aware—and *intended*—that Donziger would profit from the investor funds Page actively assisted Donziger to raise. Page also claims this Court lacks jurisdiction to resolve Chevron's motion because Donziger appealed the Court's *separate* contempt ruling as to him, but there is no support for that proposition. Page's logic would frustrate this Court's ability to enforce its orders and judgments by effectively staying them due to Donziger's appeal.

In light of the substantial evidence showing that Page enabled and substantially assisted Donziger to violate the RICO Judgment, the Court should hold Page and his firm, Forum Nobis PLLC (which filed no opposition), in contempt. Page does not challenge the relief Chevron requested, and thus the Court should hold him and his firm jointly and severally liable for the money judgments entered against Donziger, enter a money judgment against them for the $342,045.16 transferred to Donziger (to the extent those monies are not part of the $666,476.34 judgment), and order them to assign their interests in the Ecuadorian judgment to Chevron. Further, the Court should award Chevron the attorneys' fees it incurred in bringing this motion.

## II.  ARGUMENT

A.  **The Court Should Disregard Page's Untimely Opposition Brief**

Page signed a stipulation granting him a two-and-a-half week extension to October 2, 2019 to file his opposition brief, but he did not file his opposition until October 3, 2019.  *See* Dkts. 2328, 2354, 2355.  Page offered no explanation for his late filing, and Forum Nobis PLLC filed no response at all.  Page's failure to meet the deadline justifies the Court in disregarding his opposition.  *See, e.g.*, *Distefano v. L. Offices of Barbara H. Katsos, P.C.*, No. 10-MC-0564 JS, 2011 WL 2446318, at *2 (E.D.N.Y. June 15, 2011) ("The Court has the discretion to disregard late-filed papers," and failure to "provide any excuse or explanation for the delay" weighs in favor of exercising this discretion).  And as Page is an attorney, he is not entitled to any "special solicitude" from this Court.  *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010).

B.  **Even If Considered, Page's Opposition Fails in All Respects**

  1.  **Page Does Not Dispute Most of Chevron's Motion**

Page makes no real effort to dispute the facts and arguments in Chevron's motion.  In particular, Page does not attempt to controvert Chevron's evidence of his participation in the fundraising that forms the basis for this contempt motion, stating instead that he will not respond to it.  Dkt. 2354 at 1.[1]  Page admits working on what he terms "informal financing arrangements" but in reality were fully executed 2016–2018 funding agreements.  Page also does not deny receiving

---

[1]  The only fact that Page attempts to dispute is his assistance in drafting the misleading Fajardo Declaration.  Page claims that a separate email shows he was editing a different Fajardo declaration.  Dkt. 2355 at 2–3 n.1 (quoting PX 1254).  At best, the email he cites raises the *possibility* that the reference in Exhibit 31 of Chevron's motion was to a separate "Ecuadorian law declaration on the privilege issue" for Fajardo, but it does not foreclose the reasonable conclusion that Page was involved in the preparation of the misleading Fajardo Declaration, given his key role in the case and his knowledge of the ghostwriting of the Cabrera report.  *See Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 457–58 & n.559 (S.D.N.Y. 2014) (noting evidence of Page's presence at meeting where Stratus revealed it ghostwrote the Cabrera report at Donziger's direction).

2

cash payments as well as a percentage interest in the Ecuadorian judgment that investors executing the agreements he drafted were paying $250,000 to acquire. Page ignores the wrongdoing at issue and instead provides only self-serving statements that contort the facts and lack credibility. But the basic facts are simple, undisputed, and warrant the sanction of contempt.

*First*, Page does not dispute that he had actual notice of the RICO and Default Judgments or that he committed the acts by which he violated those judgments. Instead, he characterizes his involvement as peripheral and consisting "mostly" of "legal draftsmanship and administrative tasks." Dkt. 2354. At 15; Dkt. 2355 at ¶¶ 5, 6. But this attempted minimizing of his misconduct is misguided. As the record shows, Page was an integral player in the RICO scheme and has been Donziger's partner and right-hand man for years. Dkt. 2209 at 20; Dkt. 2317-4. He was, among many other things, a literal witness to the Cabrera fraud. Dkt. 2317-1. In addition, Page recently admitted under oath at Donziger's New York state bar attorney disciplinary hearing that he worked with Donziger on fundraising and that Donziger could choose to use these funds as his income. Champion Decl., Ex. 114 at 133, 139. Page drafted the investment opportunity memorandum that Donziger used to raise funds. Dkt. 2316 at 3. And Page answered questions from investors regarding the RICO Judgment, often in misleading ways,[2] advised Donziger on Donziger's purported authority to receive and use investor funds, and received and transferred hundreds of thousands of dollars in investor funds in violation of the RICO and Default Judgments. Dkt. 2316 at 3–4.

Page does not dispute any of this, but claims only that he should not be held in contempt because of his alleged personal understanding that the Court "retreated" from language in the

---

[2] For example, in his declaration, Page claims that Chevron's Exhibit 5 (Dkt. 2317-5) shows his candor with investors because it attached the RICO and Second Circuit opinions (Dkt. 2355 at ¶ 7). But in this February 20, 2018 email from Page to a potential investor's attorney, Page falsely derides the RICO Opinion, calling it "deeply corrupt, biased, and distorted," and included links to several misleading articles as well as to documents and websites created by Donziger and his allies.

3

RICO Judgment that even Page admits "could have been interpreted broadly to restrain litigation finance efforts." Dkt. 2354 at 14-15; Dkt. 2355 at ¶ 6. But Page's contrived personal "understanding" of the RICO Judgment is irrelevant. As this Court has held—a fact Page acknowledges (Dkt. 2354 at 13)—the RICO Judgment is clear and unambiguous. Dkt. 2209 at 35. As such, Page's argument that he should not be held to its clear language has no merit. Indeed, when Donziger made the same argument in connection with the contempt motion Chevron brought against him, this Court rejected it, noting "[t]he RICO Judgment stands unmodified." Dkt. 2209 at 52. The Court also explained that the Stay Opinion that Donziger—and now Page—invoked did not alter the language of the RICO Judgment: "There is not a single word in the Stay Opinion that even suggests that the Court intended to modify the RICO Judgment." Dkt. 2209 at 43.

*Second*, Page does not dispute that he is bound by both the RICO and Default Judgments,[3] under their plain terms and by virtue of Federal Rule of Civil Procedure 65, which provides that injunctions bind the parties to the injunction and "the parties' officers, agents, servants, employees, and attorneys" and "other persons who are in active concert or participation" with those persons or with the parties. Fed. R. Civ. P. 65(d)(2). The RICO and Default Judgments both contain this language. Dkt. 1875 at ¶ 8 ("In accordance with … Rule … 65(d)(2), this Judgment is binding upon the parties… agents… and attorneys; and other persons who are in active concert and participation with any of the foregoing"); Dkt. 1985 at ¶ 7 (same). Page had actual knowledge of both Judgments, and as an agent and attorney for Donziger and the FDA, he acted in concert with them to violate them. For this, Page is in contempt. Page is thus wrong in claiming Chevron is trying

---

[3] Page suggests that the Default Judgment against his "client," the Amazon Defense Front ("FDA"), is invalid because the Court supposedly lacked personal jurisdiction over the FDA and the other Ecuadorian defendants who defaulted. Dkt. 2354 at 7 n.4. This Court has found otherwise. *See* Dkt. 1985 at 1 n.1 ("It holds also that it has personal jurisdiction over all of the Defaulted Defendants, substantially for the reasons stated in DI 1977, at 15–18.").

to hold him vicariously liable for what Donziger has done. Rather, Page's contempt arises from *his* own actions assisting Donziger and the FDA.

**Third**, Page concedes that contempt would be proper if he knowingly helped Donziger to profit from the Ecuadorian judgment. That concession is fatal to Page's position, because the evidence shows that Page not only helped Donziger, but both knew and intended that Donziger would profit. Page does not dispute this evidence. For example, in 2016, while revising an investment contract in connection with a potential investment, Page told Donziger that his (Page's) fee should come out of Josh Rizack's share because Page did not want to reduce Donziger's profit, and Page even *encouraged* Donziger to take some of the funds for his own personal gain: "I would be loath to take anything from *your* portion, … I think apart from the transaction fee, you would be justified in paying yourself a percentage of your arrears?" Dkt. 2316 at 14-15 (emphasis added); Ex. 47. In December 2017, Page helped Donziger cancel a personal debt that Donziger owed to Roger Waters, in exchange for an interest in the Ecuadorian judgment. Dkt. 2316 at 18. Page also drafted a contract granting an interest in the Ecuadorian judgment to Donziger's personal counsel, Deepak Gupta, which provides clear evidence of Page's knowing involvement in Donziger personally "profiting" from the Ecuadorian judgment as Mr. Gupta only represented Donziger in a personal capacity. Dkt. 2316 at 19, Ex. 99. And in May 2018, Page threatened Katie Sullivan into transferring $342,045.16 in investor funds to Page, who then wired the funds to Donziger's *personal* account. Dkt. 2316. at 20-21; Dkt. 2354 at 6–7. Thus, even if, as he claims, the funds belonged to the FDA, Page facilitated Donziger's "unfettered control over the funds" enabling him to profit from them (*see* Dkt. 2209 at 55–56). Throughout Page's work with Donziger, Donziger used the funds for his personal benefit while accounting to no one. *See* Slavek Decl., filed concurrently herewith (detailing Donziger's personal use and profiting from investor/client funds).

5

Further, Page's testimony at the recent state bar hearing about Donziger's New York law license shows that Page knew Donziger was profiting from the fundraising activities in which Page participated. On September 16, 2019, Page testified that Donziger kept investor funds for his own profit. Champion Decl., Ex. 114 at 133:17-21 (Q: "And in a number of instances, monies from those investments came back to Mr. Donziger?; Page: "Yeah, that's my understanding."); *id.* at 138:5-11 (Sept. 16, 2019) (Page: "Well he's a paid attorney on the case… so [the investor funding] was to pay his fees which he … then may choose to use his income to pay his mortgage and his child's school fees."). Page knew that Donziger profited from investor funding, which all derived from the Ecuadorian judgment, retaining funds and using them for his personal gain.

*Fourth*, Page does not dispute that *he himself* profited from investor funds. As Chevron's motion shows, in May 2018 Page was paid from investor funds obtained in contravention of the RICO Judgment. After the Default Judgment issued, Page received two cashiers' checks totaling $342,015.16 payable to "Aaron M. Page." Dkt. 2209 at 27–29. Five days later, Page wired the same amount to Donziger's personal account and two days after that, Donziger transferred $50,000 back to Forum Nobis, which Page controls. *Id.* at 29–30, 32–33; Slavek Decl. ¶ 15 (confirming the $50,000 payment to Page was made from monies he transferred to Donziger and other funds were not available). Page admits these funds were for his benefit, arguing that the $50,000 transfer was for past work and "partially funded a retainer for expected future work." Dkt. 2355 at ¶ 12. Page submitted what he seems to imply are contemporaneous "account status" sheets and invoices that he claims prove that his profiting from funds traceable to the Ecuadorian judgment was proper. But several of these he never produced to Chevron despite being responsive to Chevron's subpoena, casting doubt on their provenance. In any event, these documents are not exculpatory. These invoices list charges without any detail or support whatsoever, and are therefore probative

6

of nothing. Moreover, it is unclear whether these invoices are for services rendered to Donziger, the FDA, or some or all of the LAPs, or a combination. Dkt. 2355-1. At least three appear to be for Donziger alone (*id.*), further proving Page knew Donziger was using funds raised from the Ecuadorian judgment—Donziger's primary source of income—for his own personal benefit (here, Page's legal services). Page also drafted an agreement granting himself a 0.25% interest in the Ecuadorian judgment, with a potential payout value of over $27 million. Dkt. 2316 at 19–20; Champion Decl. Ex. 114 at 122.

Page's opposition rests on the unsupported and unpersuasive assertion that Page did not know that Donziger was profiting from the fundraising to which Page was a party. But in light of the record, Page's assertions are not credible. To the extent there is any doubt, the Court should require Page to sit for cross examination so the Court may assess his credibility. *See, e.g.*, Dkt. 2006 (ordering evidentiary hearing on Chevron's contempt motion against Donziger) and Dkt. 2062 (transcript of same); *see also, e.g.*, *Davidson v. Scully*, No. 83 CIV. 2025 (MJL), 1995 WL 104020, at *11 (S.D.N.Y. Mar. 8, 1995) (holding evidentiary hearing where "an evidentiary hearing on these matters would aid its determination of Defendants' alleged contempt").

2. **Chevron's Motion Is Properly Grounded in Both Paragraphs 1 and 5 of the RICO Judgment and Paragraph 1 of the Default Judgment**

Page's claim that Chevron grounded its motion solely on Paragraph 5 of the RICO Injunction is wrong. At every step, Chevron argued that Page should be held in contempt for violating both Paragraphs 1 and 5. *See* Dkt. 2316 at 4, 21, 24–27, 35. Page claims that Chevron's motion "is grounded on a fundamental misconstruction of the nature of the contempt" against Donziger because, he says, the contempt opinion did not hold Donziger in contempt of Paragraph 5 of the RICO Judgment and thus Page cannot be liable for contempt. Dkt. 2354 at 3. Not so.

Page dismisses the Court's findings as to Paragraph 5 of the RICO Judgment that Donziger

7

"monetized his own interest in the Ecuador Judgment by pledging or selling part of his contingent fee interest to someone else in exchange for services" and that "the evidence clearly and convincingly establishes that Donziger violated the RICO Judgment by profiting from the Ecuador Judgment." Dkt. 2209 at 42. But Page's argument does not excuse his conduct—much of which is conceded. Even assuming Paragraph 5 does not come into play, Page is still liable for contempt under Paragraph 1 of the RICO Judgment because he helped Donziger transfer investor funds to Donziger. And to the extent the funds were FDA funds, then Page's fund transfers constitute contempt of the Default Judgment as well as of the RICO Judgment. Page stated in writing that the $342,045.16 were funds raised by the FDA by selling interests in the Ecuadorian judgment (Dkt. 2317-107), which made them traceable to the Ecuadorian judgment; as such, Page was bound, as the FDA's agent, to transfer those funds to the constructive trust when he had possession of them. His failure to do so violated Paragraph 1 of the RICO and Default Judgments.

C. **This Court Has Jurisdiction Over Page and Forum Nobis**

Page does not assert any personal jurisdiction defense, thus conceding personal jurisdiction, but if there were any doubt, the fact is that Page and Forum Nobis were both personally served while Page was recently in New York. Dkts. 2340, 2341. Page nonetheless claims that Donziger's appeal of the Court's contempt order (Dkt. 2209) divests this Court of jurisdiction over the motion to hold Page in contempt. Dkt. 2354 at 10. But this is incorrect, because "the filing of a notice of appeal only divests the district court of jurisdiction respecting the questions raised and decided in the order that is on appeal." *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989); *see also Webb v. GAF Corp.*, 78 F.3d 53, 55 (2d Cir. 1996) (similar).

With respect to Chevron's motion to hold Page in contempt, no order is on appeal—because there is none, and the issues to be decided in the motion are in that key respect distinct from those at issue in Donziger's appeal. *See, e.g.*, *Compania Espanola de Petroleos, S.A. v. Nereus*

8

*Shipping, S.A.*, 527 F.2d 966, 972–73 (2d Cir. 1975) (holding that rule depriving district court of jurisdiction during appeal was inapplicable where two independent inquiries were involved).  That is particularly true in this context, as courts "treat each postjudgment proceeding like a freestanding lawsuit."  *Solis v. Current Dev. Corp.*, 557 F.3d 772, 775 (7th Cir. 2009); *see also Morisseau v. DLA Piper*, 707 F. Supp. 2d 460, 462 (S.D.N.Y. 2010) (Kaplan, J.) (relying on *Solis*).

Further, if Page's position were adopted, it would result in a de facto stay of this Court's judgments and orders to the extent violations of those judgments and orders by other persons (here, Donziger) have been appealed.  But as this Court has already recognized, such a de facto stay is contrary to established precedent.  *See* Dkt. 2233 at 2 & n.2 (adopting Chevron's arguments in paras. 2 & 3 of Dkt. 2228).  Any contrary rule would contradict the established principle that a "district court remains vested with the ability to enforce an order, even while the order is *sub judice* before the reviewing court."  *Red Ball Interior Demolition Corp. v. Palmadessa*, 947 F. Supp. 116, 120 (S.D.N.Y. 1996); *see also United States v. Miller*, 626 F.3d 682, 689 (2d Cir. 2010); *City of N.Y. v. Venkataram*, No. 06 Civ 6578 (NRB), 2012 WL 2921876, at *3 (S.D.N.Y. July 18, 2012).  For his part, Page cites no authority finding a lack of jurisdiction in similar circumstances, perhaps because the practical consequences of his argument—a de facto stay of enforcement whenever anyone appeals a violation—would be absurd.

**D.    Chevron' Motion for Contempt Against Forum Nobis PLLC Is Unopposed**

Despite the Court's instruction that "Forum Nobis may not appear in this action except by an attorney already admitted to practice in this Court[,] [and] [that] Mr. Page is not such an attorney and has not sought leave to appear pro hac vice" (Dkt. 2328), Forum Nobis filed no opposition and no attorney admitted in this Court appeared on the firm's behalf.  As a result, Chevron's contempt motion against Forum Nobis is unopposed, and as Chevron has established that Page's contempt should also be attributed to his firm (Dkt. 2316 at 29-30), Forum Nobis should also be found to be

9

in contempt. *See Waterkeeper All. Inc. v. Spirit of Utah Wilderness, Inc.*, No. 10-CV-1136 (NSR), 2017 WL 4386376, at *2 (S.D.N.Y. Oct. 2, 2017) (granting unopposed contempt motion where "[d]efendant has repeatedly been instructed by the Court that a corporation must be represented by counsel, and cannot appear pro se"). Where, as here, a contempt motion is unopposed, the Court's sole remaining responsibility is to ensure that "the sanctions imposed by the Court are legally and factually supported." *See New York v. U.S. Capital Funding, LLC*, No. 09-CV-0004 (JFB) (ETB), 2011 WL 3489914, at *7 (E.D.N.Y. Aug. 9, 2011). Chevron's motion demonstrates why the sanctions it requested against Forum Nobis—sanctions this Court found to be appropriate as to Donziger (Dkt. 2209 at 69–71)—are legally and factually supported. Dkt. 2316 at 30–31.

### E. Page Does Not Dispute—or Even Address—the Appropriateness of the Remedies Chevron Has Requested

Page's opposition does not contest any of the remedies Chevron requested. Dkt. 2316 (requesting "compensatory damages and attorneys' fees" and "an order directing Page to assign any and all interests he has in the Ecuadorian judgment to Chevron"). And Forum Nobis has not submitted any opposition at all. In light of this silence, the Court should hold Page and Forum Nobis jointly and severally liable with Donziger for the judgments against Donziger in the amounts of $666,476.34 and $3,433,384.30, enter a judgment against them for the $342,045.16 they transferred to Donziger (after deducting $31,554.71 already included in the judgment for $666,476.34 (Dkt. 2316 at 35)), order them to assign any and all interest in the Ecuadorian judgment to Chevron, and award Chevron its attorneys' fees.

### III. CONCLUSION

The Court should hold Page and Forum Nobis PLLC in contempt of Paragraphs 1 and 5 of the RICO Judgment and Paragraph 1 of the Default Judgment and order the remedies sought in Chevron's motion.

Dated: October 16, 2019									Respectfully submitted,

                                                */s/ Randy M. Mastro*
Randy M. Mastro
Andrea E. Neuman
Anne Champion
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY  10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520
Email: WThomson@gibsondunn.com

Stern, Kilcullen & Rufolo LLC
Herbert J. Stern
Joel M. Silverstein
325 Columbia Tpke, Ste 110
P.O. Box 992
Florham Park, New Jersey 07932-0992
Telephone:  973.535.1900
Facsimile:  973.535.9664
Email: hstern@sgklaw.com
Email: jsilverstein@sgklaw.com

*Attorneys for Chevron Corporation*