UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------
CHEVRON CORPORATION,

        Plaintiff,

v.

STEVEN DONZIGER, et al.,

        Defendants.
------------------------------------

11 Civ. 0691 (LAK)

### DECLARATION OF JOHN A. SLAVEK IN SUPPORT OF CHEVRON CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO HOLD AARON MARR PAGE AND FORUM NOBIS IN CONTEMPT

I, JOHN A. SLAVEK, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following is true and correct:

**Background**

1. I am a Managing Director of Business Intelligence and Investigations at Kroll. I have been a Certified Public Accountant for approximately 23 years. I make this declaration in support of Chevron Corporation's ("Chevron") Motion to Hold Aaron Marr Page and Forum Nobis in Contempt.

2. I have been asked to address the following issues regarding Mr. Donziger's use of client/investor funds for each year from 2010 through 2018 and the claim that he has personally invested in the Ecuador case: (1) What were the amounts of client/investor funds that Mr. Donziger retained for personal use each year?; and (2) Is there any evidence that Mr. Donziger personally invested his own funds in the Ecuador litigation? I have also been asked to address the issue of whether $342,000 Mr. Page transferred to Mr. Donziger on May 8, 2018 was the source of the $50,000 received by Mr. Page from Mr. Donziger on May 10, 2018.

3. As detailed in my prior declarations, the draft accountings produced by Mr. Donziger are neither complete nor accurate. *See* Dkt. 2115 at 19–21. I have seen no final invoices that were sent to any clients during the relevant timeframe setting forth fees or expenses. There were however five 2017/2018 invoices sent by Mr. Donziger to Ms. Sullivan requesting payment of $25,000 for the months of December 2017, January 2018, and February 2018 and two additional invoices totaling $250,000 for "partial reimbursement" with no detail or back-up provided. *See* Dkt. 2116-3. Sullivan paid the first four invoices totaling $125,000, but did not pay the fifth invoice for $200,000. *See* Dkt. 2116 ¶ 52. Per his 2011 retainer (Dkt. 2267-34 ("2011 Donziger Retainer")), only monthly retainers and expenses meeting certain criteria were permitted and I have seen no evidence indicating that those criteria were met by Mr. Donziger for any claimed monthly retainer or expense post-dating the execution of that retainer.

4. To address the first question above regarding what amounts of client/investor funds Mr. Donziger retained for personal use, I made two different sets of assumptions regarding the treatment of Mr. Donziger's expenditures given Mr. Donziger's lack of accurate or final accountings, invoices, and/or expense reports for the relevant timeframe.

5. First, applying the 2011 Donziger Retainer as written from January 2011, attached hereto as Exhibit A-1 is a schedule showing annually, from 2010 through 2018, Mr. Donziger's receipt of client/investor funds into his known bank accounts, less amounts paid to other case-related vendors based on currently available information. Due to Mr. Donziger's failure to submit any expenses for reimbursement consistent with the terms of his retainer, only his expenditures that were paid to vendors who are known to have worked in connection with the Ecuador litigation were treated as litigation expenses in this analysis. Legal counsel who represented Mr. Donziger personally are treated 100% as personal expenses of Mr. Donziger, with two exceptions. Aaron

2

Marr Page asserts that he and his law firm, Forum Nobis, represented both Mr. Donziger personally as well as the Ecuador clients, but did not distinguish those representations for billing purposes and his invoices do not provide any detail regarding work performed. Accordingly, the payments to Aaron Marr Page/Forum Nobis have been split 50/50 between the Ecuador litigation expenses and Donziger personal expenses. In addition, fees paid to Mr. Donziger's Section 1782 counsel have been treated as Ecuador litigation related expenses per the 2011 Donziger Retainer. *See* Dkt. 2267-34 at ¶9.

6. As set forth in Exhibit A-1, from 2010 through 2018, Mr. Donziger received a total of $6,491,426 in client/investor funds, he paid out $2,857,847 to other vendors in connection with the Ecuador litigation, and retained $3,633,579, which he used for personal expenditures as detailed on Exhibit B-6. *See also* Exs. B-3; B-4; B-5; B-6; B-6.1; and B-6.2 (providing additional detail regarding the amounts shown on Schedule A-1).

7. Second, ignoring Mr. Donziger's failure to submit expenses for reimbursement or otherwise account for his use of client funds over these nine years, I have reviewed his flight, hotel, and meal costs that appeared to be connected to case-related travel based on location and timing. For purposes of this analysis, I assumed trips to Ecuador and other jurisdictions where enforcement actions were pending were case related and treated transportation, lodging, and meal charges accordingly. In addition, Mr. Donziger hired assistants and I have seen no documentation regarding the scope of their duties or whether these employees were to be paid by him and/or his firm or separately charged to his clients. The costs of these employees are thus treated in the same manner as Mr. Donziger's travel and other expenses that appear to be case related, but were not accounted for by Mr. Donziger.

8.     As set forth in Exhibit B-1 attached hereto, even making these assumptions, from 2010 through 2008, Mr. Donziger received $6,491,426 in client/investor funds, paid out $2,857,847 to other vendors in connection with the Ecuador litigation, paid out an additional $422,475 to cover his own arguably litigation related expenses, and retained $3,211,104, which he used for personal expenditures as detailed on Exhibit B-6. *See also* Exs. B-3; B-4; B-5; B-6; B-6.1; and B-6.2 (providing additional detail regarding the amounts shown on Schedule B-1).

9.     Addressing the second question above regarding whether there is any evidence that Mr. Donziger personally invested his own funds in the Ecuador litigation, Mr. Donziger's commingling and client/investor and personal funds throughout the relevant timeframe makes any analysis of this issue more complicated. Taking this into account, I have seen no evidence that Mr. Donziger invested his personal funds in the Ecuador litigation.

10.    Prior to 2010, Mr. Donziger received monthly fees in amounts ranging from $5,000 to $15,000 from the Kohn firm. He also submitted expense requests to and received expense reimbursement from that firm. In total, Mr. Donziger received $1,387,812 in payments from the Kohn firm from 1999 through the end of 2009. After the Kohn firm terminated its funding of the Ecuador litigation, funds were handled by multiple entities including Mr. Donziger. In total, there is known to have been at least $38,165,347 in funding from outside sources for the Ecuador litigation, $7,879,238 of which flowed through Mr. Donziger's known bank accounts, as shown below.

| Investors | Amount |
|---|---|
| Kohn, Swift & Graf | $ 1,387,812 |
| Torvia/Magister/DeLeon | 3,988,486 |
| Three Investors through CWP Associates | 750,000 |
| Five Investors through Lenczner Slaght | 625,940 |
| Burford (via Patton Boggs) | 430,000 |
| George R Waters | 202,000 |
| Olswang LLP (Woodsford) | 200,000 |
| Orin Kramer | 150,000 |
| Michael Donziger | 100,000 |
| Temeraire Limited | 45,000 |
| **Total Investor Funds Deposited to Mr. Donziger's Accounts** | **$7,879,238** |

11. From 2010 through year end 2018, pre-expenses, Mr. Donziger received $6,491,426 in client/investor funds in the Ecuador matter. *See* Exs. A-1 and B-1. He also received $1,744,898 total in funds from other sources, as shown on Exhibits A-2 and B-2. As shown on Schedule A-2, under the first set of assumptions regarding Mr. Donziger's Ecuador litigation related expenses, from 2010 through 2018, Mr. Donziger had $5,639,183 in personal expenditures versus $1,744,898 in total funds from sources other than Ecuador litigation related client/investor funds. As shown on Schedule B-2, under the second set of assumptions regarding Mr. Donziger's Ecuador litigation related expenses, from 2010 through 2018, Mr. Donziger had $5,216,708 in personal expenditures versus $1,744,898 in total funds from sources other than Ecuador litigation related client/investor funds. As Mr. Donziger's personal expenditures exceeded his non-Ecuador litigation related income under both sets of assumptions, none of his personal funds were available for investment.

12. Mr. Donziger has testified that he was entitled to a monthly retainer in addition to his former contingency interest in the Ecuadorian judgment. *See* Dkt. 2114-1 at 97. He has also

stated, however, that he did not know if there was a written agreement providing for his receipt of a $25,000 monthly retainer which he has asserted he is entitled to for any timeframe, and I have not seen any such written document. *See id.* As previously noted, the only retainer agreement which references, but does not provide for a monthly retainer absent further conditions being met, is dated January 5, 2011. Assuming solely for the purposes of this analysis that Mr. Donziger was entitled to a monthly retainer in the amount of $25,000 starting at the time of the execution of the 2011 Donziger Retainer, he would have been entitled to a total of $2,400,000 in monthly payments through December 2018.

13. Per the analyses on Exhibits A-1 and B-1 attached hereto, Mr. Donziger received in excess of this amount after other Ecuador litigation expenses during the relevant timeframe. Pursuant to Exhibit A-1, Mr. Donziger received a net amount of $3,633,579 during the relevant timeframe, $1,233,579 in excess of the $2,400,000. Pursuant to Exhibit B-1, Mr. Donziger received a net amount of $3,211,104 during the relevant timeframe, $811,104 in excess of the $2,400,000. Accordingly, to the extent that Mr. Donziger is claiming he invested in the Ecuador litigation by foregoing his claimed $25,000 monthly retainer, that claim is not supported and is inconsistent with the available evidence.

14. Addressing the issue of the $50,000 payment to Aaron Marr Page, Mr. Page sent a $342,045.16 wire transfer from his Forum Nobis PLLC CitiEscrow account (ending in 1194) to Mr. Donziger's personal TD Bank account (ending in 8132) on May 8, 2018. Two days later on May 10, 2018, Mr. Donziger transferred the full $342,045.16 as the opening deposit to a new TD Bank business account (ending in 8174). The first transfer out shown on the initial statement for this new TD Bank account is a $50,000.00 wire transfer to Forum Nobis PLLC, also on May 10, 2018. Mr. Donziger had four additional personal and business TD Bank accounts in May 2018.

The combined balances in Mr. Donziger's accounts prior to the incoming $342,045.16 wire transfer was approximately $51,077.45. Accordingly, absent the $342,045.16 deposit, a $50,000.00 payment to Forum Nobis, if made, would have resulted in a combined approximate remaining balance across all of Mr. Donziger's TD Bank accounts of $1,077.45. The $342,045.16 transfer to Mr. Donziger from Mr. Page was thus the source of the $50,000 payment to Mr. Page made two days later by Mr. Donziger.

Executed on this 16th day of October, 2019 at New York, New York.

_____
John A. Slavek