# EXHIBIT 16

 

Factura: 002-004-000015521



20171701041P01658

PROTOCOLIZACIÓN 20171701041P01658

PROTOCOLIZACIÓN DE DOCUMENTOS PÚBLICOS O PRIVADOS

FECHA DE OTORGAMIENTO: 27 DE DICIEMBRE DEL 2017, (13:29)

OTORGA: NOTARÍA CUADRAGÉSIMA PRIMERA DEL CANTON QUITO

DESCRIPCIÓN DE DOCUMENTO PROTOCOLIZADO: LA DECLARACIÓN JURAMENTADA NÚMERO 2 DEL DOCTOR PATRICIO S... Y UN BORRADOR DE ALEGATO DENTRO DEL PROCESO C633309, C633010 AMBOS ANTE LA CORTE DE APELACIÓN DE ONTARIO CANA...

NÚMERO DE HOJAS DEL DOCUMENTO: 13

CUANTÍA: INDETERMINADA

| A PETICIÓN DE: | | | |
|---|---|---|---|
| NOMBRES/RAZÓN SOCIAL | TIPO INTERVINIENTE | DOCUMENTO DE IDENTIDAD | No. IDENTIFICACIÓN |
| SALAZAR CORDOVA PATRICIO | POR SUS PROPIOS DERECHOS | CÉDULA | 1707814354 |

| OBSERVACIONES: | LA DECLARACIÓN JURAMENTADA NÚMERO 2 DEL DOCTOR PATRICIO SALAZAR CÓRDOVA Y UN BORRADOR DE ALEGATO DENTRO DEL PROCESO C633309, C633010 AMBOS ANTE LA CORTE DE APELACIÓN DE ONTARIO CANADA. |
|---|---|

NOTARIO(A) DOBRI MIGUEL ALBORNOZ DONOSO
NOTARÍA CUADRAGÉSIMA PRIMERA DEL CANTÓN QUITO

9

Quito, 27 de Diciembre de 2017

| Escritura No:20171701041P01658 | Factura: 002-004-000015521 |
|---|---|

### PROTOCOLIZACION

**PROTOCOLIZACION DE LA DECLARACIÓN JURAMENTADA NÚMERO 2 DEL DOCTOR PATRICIO SALAZAR CÓRDOVA Y UN BORRADOR DE ALEGATO DENTRO DEL PROCESO C633309, C633010 AMBOS ANTE LA CORTE DE APELACIÓN DE ONTARIO CANADA.**

### CUANTIA: INDETERMINADA

(DI 2ª;                    COPIAS)

m.n.m.



10

SEÑOR NOTARIO:

De conformidad con lo dispuesto en el artículo 18 de la Ley Notarial, agradeceré protocolizar en el Registro de la Notaria Cuadragesima Primera a su cargo **LA DECLARACIÓN JURAMENTADA NÚMERO 2 DEL DOCTOR PATRICIO SALAZAR CÓRDOVA Y UN BORRADOR DE ALEGATO DENTRO DEL PROCESO C633309, C633010 AMBOS ANTE LA CORTE DE APELACIÓN DE ONTARIO CANADA.**

Me conferirá dos copias certificadas de la protocolización.

Dr. Patricio Salazar Córdova
**ABOGADO Matrícula 5498 CAP**

Court File No. C63309, C63310

# COURT OF APPEAL FOR ONTARIO

BETWEEN:

DANIEL CARLOS LUSITANDE YAIGUAJE, BENANCIO FREDY
CHIMBO GREFA, MIGUEL MARIO PAYAGUAJE PAYAGUAJE,
TEODORO GONZALO PIAGUAJE PAYAGUAJE, SIMON LUSITANDE
YAIGUAJE, ARMANDO WILMER PIAGUAJE PAYAGUAJE, ANGEL
JUSTINO PIAGUAJE LUCITANTE, JAVIER PIAGUAJE PAYAGUAJE,
FERMIN PIAGUAJE, LUIS AGUSTIN PAYAGUAJE PIAGUAJE, EMILIO
MARTIN LUSITANDE YAIGUAJE, REINALDO LUSITANDE YAIGUAJE,
MARIA VICTORIA AGUINDA SALAZAR, CARLOS GREFA
HUATATOCA, CATALINA ANTONIA AGUINDA SALAZAR, LIDIA
ALEXANDRIA AGUINDA AGUINDA, CLIDE RAMIRO AGUINDA
AGUINDA, LUIS ARMANDO CHIMBO YUMBO, BEATRIZ MERCEDES
GREFA TANGUILA,
LUCIO ENRIQUE GREFA TANGUILA, PATRICIO WILSON AGUINDA
AGUINDA, PATRICIO ALBERTO CHIMBO YUMBO, SEGUNDO ANGEL
AMANTA MILAN, FRANCISCO MATIAS ALVARADO YUMBO, OLGA
GLORIA GREFA CERDA, NARCISA AIDA TANGUILA NARVAEZ,
BERTHA ANTONIA YUMBO TANGUILA, GLORIA LUCRECIA
TANGUILA GREFA, FRANCISCO VICTOR TANGUILA GREFA, ROSA
TERESA CHIMBO TANGUILA, MARIA CLELIA REASCOS REVELO,
HELEODORO PATARON GUARACA, CELIA IRENE VIVEROS
CUSANGUA, LORENZO JOSE ALVARADO YUMBO, FRANCISCO
ALVARADO YUMBO, JOSE GABRIEL REVELO LLORE, LUISA DELIA
TANGUILA NARVAEZ, JOSE MIGUEL IPIALES CHICAIZA, HUGO
GERARDO CAMACHO NARANJO, MARIA MAGDALENA RODRIGUEZ
BARCENES, ELIAS ROBERTO
PIYAHUAJE PAYAHUAJE, LOURDES BEATRIZ CHIMBO TANGUILA,
OCTAVIO ISMAEL CORDOVA HUANCA, MARIA HORTENCIA VIVEROS
CUSANGUA, GUILLERMO VINCENTE PAYAGUAJE LUSITANDE,
ALFREDO DONALDO PAYAGUAJE
PAYAGUAJE and DELFIN LEONIDAS
PAYAGUAJE PAYAGUAJE

Plaintiffs/Appellants

and

CHEVRON CORPORATION, CHEVRON CANADA LIMITED and CHEVRON
CANADA FINANCE LIMITED

Defendants/Respondents

AFFIDAVIT #2 OF PATRICIO SALAZAR CÓRDOVA



2

I, Doctor Patricio Salazar Córdova, of the City of Cumbayá, Ecuador, MAKE OATH AND SAY:

1. I am a lawyer, licenced to practice law in Ecuador. I am fluently bilingual in English and Spanish.

2. I have been directly involved in this case since early 2015.

3. I am not authorized nor permitted to waive solicitor-client privilege, and nothing in the affidavit can be taken to constitute such a waiver.

4. I obtained my law degree from SEK International University, in Quito, Ecuador in July 1999.

5. I obtained my Doctor of Jurisprudence from SEK International University, in Quito, Ecuador in July 2000.

6. I also attended The University of Birmingham, UK, where I obtained an MBA in Public Service in December 2005.

7. I am counsel for the Amazon Defence Front ("FDA") and the ten plaintiffs who have retained Peter Grant as counsel in Canada. Their other legal counsel, in Ecuador, are Angel Cajo, Agustin Salazar, and I work closely with them.

8. Mr. Grant met with myself and several of our clients in Quito Ecuador and in the Amazon on September 25th through 27th, 2017.

9. After Justice Epstein of the Ontario Court of Appeal made the Order for security for costs I met with my clients and we determined that if the order was upheld we would be unable to proceed with this litigation. For that reason, we focused on the appeal of the costs order. We instructed Mr. Grant to address the issue of security for costs on the appeal of Justice

Epstein's order when we met with him as counsel alongside Mr. Lenzener.

10.     I attended the October 11 hearing and reviewed the October 31 Decision setting aside the order for costs with my clients. The Ecuadoran clients as well as legal counsel were very pleased to see the Court recognized that this matter is public interest litigation.

11.     After the October 31 decision of this Court, my clients knew that our appeal could be heard. They are concerned that in the Appeal and Reply Factum, there was no reflection of the Indigenous peoples' dependence on lands and resources in any of the arguments made. Neither I nor my clients had an opportunity to comment on those facta before they were filed.

12.     During our September meeting in Quito with Mr. Grant, we raised the concerns about the fact that the Indigenous law element to this case which makes it a 'special public interest" case in Canada had not been addressed. I met with the other Ecuadoran legal counsel and Peter Grant, I was asked by 10 of the plaintiffs to retain Peter Grant as counsel in Canada because of his extensive background advancing Indigenous issues in Canada.

13.     I understand that the appeal is scheduled for April 17 and 18, 2017. As this case has been in the Canadian courts for several years, I have instructed Mr. Grant and Mr. Lenzener to co-operate in seeking leave to file a supplementary factum to address the issues of concern regarding the relevance of the UN Declaration on the Rights of Indigenous People and the context of Canadian indigenous law.

4

14.   I am appending to this my affidavit Exhibit "A", a form of draft Factum that the Appellants

seek to file in support of the Appeal. I understand that Mr. Grant seeks to act as co-counsel

with Mr. Lenzener at the hearing of this appeal and this affidavit is filed in support of that

application.

SWORN BEFORE ME at the City of        )
Quito, in the Country of              )
Ecuador, this _____ day of            )
December, 2017.                       )
                                      )
                                      )
                                      )
                                      )
_____     _____
A lawyer qualified in Ecuador to swear affidavits        PATRICIO SALAZAR CÓRDOVA

SWORN BEFORE ME AT _____

THIS _____ DAY OF _____

15

_____

A Commissioner for taking Affidavits within
British Columbia

Court File No. C63309, C63310

## COURT OF APPEAL FOR ONTARIO

B E T W E E N:

DANIEL CARLOS LUSITANDE YAIGUAJE, BENANCIO FREDY CHIMBO
GREFA, MIGUEL MARIO PAYAGUAJE PAYAGUAJE, TEODORO
GONZALO PIAGUAJE PAYAGUAJE, SIMON LUSITANDE YAIGUAJE,
ARMANDO WILMER PIAGUAJE PAYAGUAJE, ANGEL JUSTINO
PIAGUAJE LUCITANTE, JAVIER PIAGUAJE PAYAGUAJE, FERMIN
PIAGUAJE, LUIS AGUSTIN PAYAGUAJE PIAGUAJE, EMILIO MARTIN
LUSITANDE YAIGUAJE, REINALDO LUSITANDE YAIGUAJE, MARIA
VICTORIA AGUINDA SALAZAR, CARLOS GREFA HUATATOCA,
CATALINA ANTONIA AGUINDA SALAZAR, LIDIA ALEXANDRIA
AGUINDA AGUINDA, CLIDE RAMIRO AGUINDA AGUINDA, LUIS
ARMANDO CHIMBO YUMBO, BEATRIZ MERCEDES GREFA TANGUILA,
LUCIO ENRIQUE GREFA TANGUILA, PATRICIO WILSON AGUINDA AGUINDA,
PATRICIO ALBERTO CHIMBO YUMBO, SEGUNDO ANGEL AMANTA MILAN,
FRANCISCO MATIAS ALVARADO YUMBO, OLGA
GLORIA GREFA CERDA, NARCISA AIDA TANGUILA NARVAEZ,
BERTHA ANTONIA YUMBO TANGUILA, GLORIA LUCRECIA TANGUILA
GREFA, FRANCISCO VICTOR TANGUILA GREFA, ROSA TERESA
CHIMBO TANGUILA, MARIA CLELIA REASCOS REVELO, HELEODORO
PATARON GUARACA, CELIA IRENE VIVEROS CUSANGUA, LORENZO
JOSE ALVARADO YUMBO, FRANCISCO ALVARADO YUMBO, JOSE
GABRIEL REVELO LLORE, LUISA DELIA TANGUILA NARVAEZ, JOSE
MIGUEL IPIALES CHICAIZA, HUGO GERARDO CAMACHO NARANJO,
MARIA MAGDALENA RODRIGUEZ BARCENES, ELIAS ROBERTO
PIYAHUAJE PAYAHUAJE, LOURDES BEATRIZ CHIMBO TANGUILA, OCTAVIO
ISMAEL CORDOVA HUANCA, MARIA HORTENCIA VIVEROS CUSANGUA,
GUILLERMO VINCENTE PAYAGUAJE LUSITANDE,
ALFREDO DONALDO PAYAGUAJE PAYAGUAJE
and DELFIN LEONIDAS PAYAGUAJE PAYAGUAJE

Plaintiffs/Appellants

and

CHEVRON CORPORATION, CHEVRON CANADA LIMITED and CHEVRON
CANADA FINANCE LIMITED

Defendants/Respondents

## SUPPLEMENTARY REPLY FACTUM OF THE APPELLANTS

December 20, 2017

**GRANT HUBERMAN**
Barristers and Solicitors
1620-1075 West Georgia St
Vancouver, BC  V6E 3C9

Peter R. Grant (LSBC #4513)
E: pgrant@grantnativelaw.com
Tel: 604-685-1229
Fax: 604-685-0244

**Diane Soroka Avocate inc.**
Diane Soroka (BQ 176544-2)
E: dhs@soroka.com
Tel: 514-939-3384
Fax: 514-939-4014

Lawyers for the Appellants/Plaintiffs, José
Miguel Ipiales Chicaiza, Segundo Angel
Amanta Milán, Francisco Victor Tanguila Grefa,
Hugo Gerardo Camacho Naranjo, Heleódoro
Patarón Guaraca, José Gabriel Revelo Llore,
Maria Celia Reascos Revelo, Rosa Teresa
Chimbo Tanguila, Maria Magdaldena Rodriguez
Bárcenas and Maria Hortencia Viveros
Cusangua

TO: LENCZNER SLAGHT ROYCE SMITH GRIFFIN LLP
Barristers Suite 2600
130 Adelaide Street West
Toronto ON  M5H 3P5

Alan J. Lenczner, Q.C. (11387E)
Tel: (416) 865-3090
Fax: (416) 865-2844
Email: alenczner@litigate.com

Brendan F. Morrison (61635B)
Tel: (416) 865-3559
Fax: (416) 865-3731
Email: bmorrison@litigate.com

KOSKIE MINSKY LLP
900-20 Queen Street West
Toronto, ON M5H 3R3

Kirk M. Baert  (30942O)
Tel: (416) 595-2092
Fax: (416) 204-2889

Email: kmbaert@kmlaw.ca

**Celeste Poltak (46207A)**
Tel: (416) 595-2701
Fax: (416) 204-2909
Email: cpoltak@kmlaw.ca

**Garth Myers (62307G)**
Tel: (416) 595-2102
Fax: (416) 977-3316
Email: gmyers@kmlaw.ca

Lawyers for the Plaintiffs/Appellants
Daniel Carlos Lusitande Yaiguaje, Benancio Fredy Chimbo Grefa,
Miguel Mario Payaguaje Payaguaje, Teodoro Gonzalo Piaguaje Payaguaje,
Simon Lusitande Yaiguaje, Armando Wilmer Paiguaje, Payaguaje,
Angel Justino Piaguaje Lucitante, Javier Piaguaje Payaguaje, Fermin Paiguaje,
Luis Agustin Payajuaje Piaguaje, Emilio Martin Lusitande Yaiguaje,
Reinaldo Lusitande Yaiguaje, Maria Victoria Aguinda Salazar,
Lidia Alexandria Aguinda Aguinda, Clide Ramiro Aguinda Aguinda,
Luis Armando Chimbo Yumbo, Beatriz Mercedes Grefa Tanguila,
Lucio Enrique Grefa Tanguila, Patricio Wilson Aguinda Aguinda,
Patricio Alberto Chimbo Yumbo, Francisco Matias Alvarado Yumbo,
Olga Gloria Grefa Cerda, Narcisa Aida Tanguila Narvaez,
Bertha Antonia Yumbo Tanguila, Gloria Lucrecia Tanguila Grefa,
Celia Irene Viveros Cusangua, Lorenzo Jose Alvarado Yumbo,
Francisco Alvarado Yumbo, Luisa Delia Tanguila Narvaez,
Elias Roberto Piyahuaje Payahuaje, Lourdes Beatriz Chimbo Tanguila,
Octavio Ismael Cordova Huanca, Guillermo Vincente Payaguaje Lustitande,
Alfredo Donaldo Payaguaje Payaguaje and Delfin Leonidas Payaguaje Payaguaje

AND TO:      **NORTON ROSE FULBRIGHT CANADA LLP**
Barristers and Solicitors Suite
3800
Royal Bank Plaza, South Tower 200
Bay Street
P.O. Box 84
Toronto, ON   M5J 2Z4

**Robert Frank**
Tel:    (416) 202-6741

**Clarke Hunter, Q.C.**
Tel:    1 (403) 267-8292
Fax:    1 (403) 264-5973



Anne Kirker, Q.C.
Tel:    1 (403) 267-9564

Lawyers for the Defendant/Respondent,
Chevron Canada Finance Limited

**AND TO:**   **GOODMANS LLP**
Barristers and Solicitors Bay
Adelaide Centre 333 Bay Street
Suite 3400 Toronto,
ON M5H 2S7

Benjamin Zarnett
Tel:    (416) 597-4204

Suzy Kauffman
Tel:    (416) 597-6281

Peter Kolla
Tel:    (416) 597-6279

Lawyers for the
Defendant/Respondent, Chevron
Canada Limited

**AND TO:**   **OSLER, HOSKIN & HARCOURT LLP**
Barristers & Solicitors 100
King Street West 1 First
Canadian Place
Suite 6200, P.O. Box 50
Toronto ON  M5X 1B8

Larry Lowenstein
Tel:    (416) 862-6454

Laura Fric
Tel: (416) 862-6454

Eric Morgan
Tel:    (416) 862-5871

Lawyers for the
Defendant/Respondent, Chevron
Corporation

## TABLE OF CONTENTS

Page

I.   Introduction ........................................................................................................... 1

II.  Facts .................................................................................................................... 2

III. Issues .................................................................................................................. 3

IV.  Legal Argument ..................................................................................................... 3

    A.   The Context of this Case as "Public Interest Litigation"          3

    B.   The "Special Public Interest" Applies due to the Impact of Decision on Aboriginal
Peoples                                                                                                           5



I.     Introduction

1.     On October 31, 2017, in setting aside an order for security for costs in this case, this Court held:

> The appellants are seeking to enforce a judgment in which they have no direct
> economic interest. Funds collected on the judgment will be paid into a trust and
> net funds are to be used for environmental rehabilitation or health care
> purposes. This is public interest litigation. [1]

2.     Public interest litigation has been considered on many occasions by the Supreme Court of Canada.
Most recently, the Court considered 'public interest' in the context of environmental impacts on
Aboriginal peoples. The Court held:

> As this Court explained in *Carrier Sekani*, the duty to consult, being a
> constitutional imperative, gives rise to a special public interest that
> supersedes other concerns typically considered by tribunals tasked with
> assessing the public interest (para. 70). A project authorization that breaches
> the constitutionally protected rights of Indigenous peoples cannot serve
> the public interest (*ibid.*). [2]

3.     Although this is not a case addressing the violations in Canada of constitutionally protected rights
of Canadian Indigenous peoples, determining the appropriate means of enforcing the Ecuadoran
judgment requires consideration of the public interest within the parameters set out in the *Clyde River*
case.

4.     In reply to the whole of the Facta of the two Respondents, the context of this 'public interest
litigation' is relevant and has been ignored and downplayed by the Respondents Chevron Canada and
Chevron Parent. Indeed, it is significant that they rely on the 1896 principles of *Salomon*, developed for

---

*Yaiguaje et al v. Chevron Corp et al* 2017 ONCA 827 at para. 26(a) (emphasis added)
*Clyde River (Hamlet) v. Petroleum Geo-Services Inc.*, 2017 SCC 40 at para. 40

1

other purposes, in support of their ability to immunize themselves from paying a judgment into trust to rehabilitate the lands and resources of the Indigenous Appellants. In the same year as *Saloman* decision, the leaders of Canada made the decision to 'remove the Indian from the child' by the creation of Indian Residential Schools.[3] Nineteenth century decisions are not the appropriate lens through which to view the rights of indigenous peoples.

## II.   Facts

1.      These Appellants rely on the Facts as set out by the Appellants in the Factum filed on May 16, 2017 and the Reply Factum filed on August 28, 2017. The Appellants also rely on the following legislative actions which have occurred since the Appellant's Reply Factum dated August 29, 2017.

2.      Subsequent to the filing of the Appellants' Factum, the Government of Ontario with Canada's support has announced legislation to remediate the damage in northern Ontario on the English and Wabigoon Rivers:

> ENGLISH AND WABIGOON RIVERS REMEDIATION FUNDING ACT, 2017
> The Schedule enacts the English and Wabigoon Rivers Remediation Funding Act, 2017.
> The Minister of Environment and Climate Change is required to establish a Trust to fund the remediation of contaminants in the English and Wabigoon Rivers. Funding for the Trust, including an appropriation of $85,000,000, is provided for.
> The Minister is required to establish a panel to advise the Minister on issues about the Trust and give directions to the Trustee about payments out of the Trust. The panel will have representatives appointed by Grassy Narrows First Nation and Wabaseemoong Independent Nations, as well as representatives appointed by the Minister to represent Ontario.[4]

3.      Since the Appellants' Reply Factum was filed, the Department of Indigenous and Northern Affairs Canada has announced a year-over-year increase of $23.4 million in Grants and Contribution

---

[3] *Fontaine v. Canada* 2016 ONCA 241, Introduction and para. 1
[4] Stronger, Fairer Ontario Act, S.O. 2017 c. 34, Schedule 14



costs and of $33.6 million in Operating Authority costs for the remediation of Federal contaminated sites

for which this department is responsible (i.e. those in Yukon, Northwest Territories, Nunavut and those

on Indian reserves.)[5] These are examples of the ultimate cost to Canadians of corporate conduct of the

type which occurred in Ecuador in this case as found by the three court levels in Ecuador.

## III.   Issues

4.       These Appellants adopt the issues as set out in the Appellants' factum dated May 16, 2017.

## IV.   Legal Argument

5.       These Appellants make the following submissions in addition to the Arguments in the

Appellant's Facta in addressing the "Public Interest" at stake in this case.

## A.   The Context of this Case as "Public Interest Litigation"

6.       The issue here is whether these Respondents can, in the face of international recognition of the

obligation to protect Indigenous lands and resources, rely on a 19th century legal fiction to immunize

Chevron Parent from a valid judgment to ensure the rehabilitation of Indigenous lands.

7.       As the Supreme Court of Canada stated in *Kosmopoulos*:

> There is a persuasive argument that "those who have chosen the benefits of
> incorporation must bear the corresponding burdens, so that if the veil is to be
> lifted at all that should only be done in the interests of third parties who

---

[5] Indigenous and Northern Affairs Canada Quarterly Financial Report for the Quarter ended September
30, 2017

3

would otherwise suffer as a result of that choice".[6] (emphasis added)

8.    In reply to the Respondents' facta, Chevron Parent turns this *dicta* on its head and argues that its choice of corporate structure with multiple subsidiaries wholly owned by it, should serve to shield the assets of its subsidiaries from its debtors, and that it is the third parties – the Appellants - who should suffer as a result of Chevron's choice.

9.    This is a case in which the enforcement of the judgment against Chevron Parent through execution against its shares in Chevron Canada is justified, not only for the obvious reason that the Appellants and the 30,000 Ecuadorian Indigenous people they represent otherwise have no redress for the illness, deaths and loss of resources they have suffered as a result of the poisoning of their lands, waters and bodies by the activities of Chevron Parent, if its assets in Chevron Canada cannot be attached, or the corporate veil is not lifted, but also because public interest requires that the corporate veil be lifted in these circumstances.

10.    In its judgment in this case, the Supreme Court of Canada remarked upon the ease with which business, assets and people cross borders.[7] Multinational corporations such as Chevron carry on activities in dozens of countries, including Canada, and their assets and profits flow freely across borders from multiple subsidiaries to and for the benefit of the parent corporation.

11.    Resource companies like Chevron carry out their activities, whether in Canada or Ecuador, in the hinterland where the lands and resources sustain Indigenous peoples and are integral to the survival

---

[6] *Kosmopoulos v. Constitution Insurance Co. of Canada*, [1987] 1 S.C.R. 2, para. 13, Appellants' BOA, Vol. I, p. 188
[7] *Chevron Corp. v. Yaiguaje*, 2015 SCC 42, para. 1, Appellants' BOA, Vol. I, p. 45



of Indigenous peoples.

B.    The "Special Public Interest"[8] Applies due to the Impact of Decision on Aboriginal Peoples

12.    Aboriginal rights and title and treaties with aboriginal peoples are so important in Canada, they

have been given constitutional protection.[9] The special relationship of Indigenous peoples to their lands

and environment has been recognized repeatedly by Canadian Courts.

13.    In discussing the impact of environmental measures on the rights of aboriginal peoples, the

Supreme Court of Canada stated:

> The aboriginal peoples, with their history of conservation-consciousness and
> interdependence with natural resources, would surely be expected, at the least,
> to be informed regarding the determination of an appropriate scheme for the
> regulation of the fisheries.[10] (emphasis added)

14.    In the context of aboriginal occupancy of, and title to, land the Supreme Court has emphasized

the special bond between aboriginal peoples and their lands:

> [...] Implicit in the protection of historic patterns of occupation is a recognition of
> the importance of the continuity of the relationship of an aboriginal community to
> its land over time.
>
>     I develop this point below with respect to the test for aboriginal title. The
> relevance of the continuity of the relationship of an aboriginal community with its
> land here is that it applies not only to the past, but to the future as well. That
> relationship should not be prevented from continuing into the future. As a result,
> uses of the lands that would threaten that future relationship are, by their very
> nature, excluded from the content of aboriginal title.
> ...
> [...] If lands are so occupied, there will exist a special bond between the group and

---

[8] *Clyde River (Hamlet) v. Petroleum Geo -Services Inc.*, (supra) at para. 40
[9] *Constitution Act, 1982, s.* 35
[10] *R. v. Sparrow*, [1990] S.C.J. No. 49, para 82; repeated in *R. v. Van der Peet*, [1996] S.C.J. No 77,
para. 138

the land in question such that **the land will be part of the definition of the group's distinctive culture.[11]** [...] (emphasis added)

15.     Indigenous peoples in Canada suffer the same risks to their health and their livelihoods as do the Indigenous Ecuadorians, and indeed as do Indigenous peoples around the world. This has been acknowledged, for example, by the latest efforts of Ontario to remediate the English and Wabigoon Rivers.[12]

16.     In reply to para. 46 of Chevron Canada's Factum, the respondent relies on Parliament not amending the CBCA. However, more significantly in the context of this case, Parliament has recently recognized the objective of applying the principles of the *UN Declaration on the Rights of Indigenous Peoples* to all of its laws.

17.     The challenges faced by Indigenous peoples around the world in trying to protect their lands and resources and the cultures which depend upon them have been recognized by all nations who have adopted the *United Nations Declaration on the Rights of Indigenous Peoples* ("U.N. Declaration") adopted on September 13, 2007.[13] Although Canada was originally one of only four nations objecting to the U.N. Declaration (along with Australia, New Zealand and the United States), it dropped its objector status on May 10, 2016 and pledged to implement it by legislation in Parliament on December 5, 2017.[14]

---

[11] *Delgamuukw v. British Columbia,* [1997] S.C.J. No. 108, paras. 126-127,128
[12] *Stronger, Fairer Ontario Act,* S.O. 2017 c. 34, Schedule 14 (Appendix A)
[13] *United Nations Declaration on the Rights of Indigenous Peoples,* Resolution 61/295 Adopted by The General Assembly of the United Nations, September 13, 2007
[14] *Hansard,* December 5, 2017, pp. 16074-16081 (Appendix B)

18.   The U.N. Declaration which both Canada and Ecuador have adopted requires timely access to justice and redress and effective remedies for lands taken or damaged.

> *Article 20*
>
> 1. Indigenous peoples have the right to maintain and develop their political, economic and social systems or institutions, to be secure in the enjoyment of their own means of subsistence and development, and to engage freely in all their traditional and other economic activities.
>
> 2. Indigenous peoples deprived of their means of subsistence and development are entitled to just and fair redress. (emphasis added)
>
> *Article 28*
>
> 1. Indigenous peoples have the right to redress, by means that can include restitution or, when this is not possible, just, fair and equitable compensation, for the lands, territories and resources which they have traditionally owned or otherwise occupied or used, and which have been confiscated, taken, occupied, used or damaged without their free, prior and informed consent. (emphasis added)
>
> 2. Unless otherwise freely agreed upon by the peoples concerned, compensation shall take the form of lands, territories and resources equal in quality, size and legal status or of monetary compensation or other appropriate redress. (emphasis added)
>
> *Article 40*
>
> Indigenous peoples have the right to access to and prompt decision through just and fair procedures for the resolution of conflicts and disputes with States or other parties, as well as to effective remedies for all infringements of their individual and collective rights. Such a decision shall give due consideration to the customs, traditions, rules and legal systems of the Indigenous peoples concerned and international human rights.[15] (emphasis added)

19.   Twenty years ago, the Supreme Court of Canada mandated a role for the Courts in aiding

---

[15] *U.N. Declaration, supra,* paras. 20, 28, 40

27

reconciliation between the Crown and Aboriginal peoples.[16] The Supreme Court of Canada, as recently as November, 2017, has recognized the relevance of International Conventions when considering Canadian law. [17]As Canada and Ecuador have both committed to the U.N. Declaration, the goal of reconciliation in this case can be accomplished by allowing the Appellants a "...prompt decision through just and fair procedures..., as well as to effective remedies for [the] infringements of their individual and collective rights."

20.    In reply to the Respondents' Facta, and this court's determination that this is 'public interest litigation', the actual context of who are the victims, and the recognition in Canada and by Canadian Courts of the need to address the adverse impacts on Indigenous peoples of past exploitation of their lands and resources, is the context which this Court should have before it when considering this particular case. The remedy found by the Ecuadoran Court in this case is precisely the form of remedy anticipated by the signatories to the *UN Declaration* at Article 28 (2).

21.    The Respondents, in their facta, exemplify the virtually insurmountable hurdles faced by Indigenous peoples who attempt to obtain "timely redress" for damages caused to them by multinational resource extraction companies whose financial capabilities allow them to exploit every possible legal avenue, including legal constructs created in a time when concern over the rights of Indigenous peoples and their resources was virtually non-existent, to delay and obstruct effective remedies for damages they cause to Indigenous peoples.

22.    This Court, in light of the public interest nature of this litigation, the acknowledged duty of

---

[16] *Delgamuukw v. The Queen* 1997 S.C.J. No. 108, para.186
[17] *Ktunaxa v. Minister of Forests* 2017 SCC 54, para. 65

8

reconciliation with aboriginal peoples "aided by the Courts" and the recognition of the U.N. Declaration as a guide for the interpretation of Canadian law, has a role to play to assist Indigenous peoples to obtain timely redress in these cases and to ensure that corporations cannot be allowed to hide behind a veil of complex corporate structures in order to avoid judgments for the environmental damages they cause to Indigenous peoples' lands and resources.

23.     In this particular public interest litigation, the choice for this Court is clear: allow corporations to hide behind 19th century legal precedent, developed for another purpose, to avoid liability for environmental devastation to Indigenous lands; or consider the proper interpretation of the law, what is just and equitable in the public interest and what is required to avoid further harm to Appellants in this case taking into account the guiding principles of the UN Declaration. Taking the former position will ultimately endorse the continued destruction of Indigenous societies' lands and resources both outside and inside Canada through such conduct.

24.     If Chevron Parent and Chevron Canada succeed in their arguments, the ultimate result will be that aboriginal people (as well as other Canadian citizens) will have a difficult time recovering for environmental damages caused by corporations who will be allowed to continue their "shell game" with their assets to avoid the consequences of their actions.

25.     In that case, either the damages – especially large scale environmental damages - will either go unrepaired causing incalculable losses to Indigenous societies and to Canadian society as a whole, or taxpayers[18] will have to bear the costs of redressing the harms, in effect providing indemnity protection

---

[18] See, for example, *Stronger, Fairer Ontario Act*, S.O. 2017 c. 34, Schedule 14
Indigenous and Northern Affairs Canada Quarterly Financial Report for the Quarter ended September 30, 2017

to the multi-national corporations. Neither option is acceptable in the 21st century.

26.     Failure to lift the corporate veil in this case when to do so is required to ensure a remedy for the 30000 Indigenous Ecuadorans will impact not only the Appellants, but also the aboriginal people of Canada whose constitutionally protected rights risk being rendered illusory by similar conduct of multinationals in Canada.

ALL OF WHICH IS RESPECTFULLY SUBMITTED THIS 20th DAY OF December, 2017.


_____                    _____

Peter R. Grant                                   Diane Soroka


Counsel for the Appellants



10



**NOTARIA CUADRAGESIMO PRIMERA**
**DEL DISTRITO METROPOLITANO DE QUITO**



REPUBLICA
DEL ECUADOR

**RAZON DE PROTOCOLIZACION:** A petición del Doctor Patricio Salazar Córdova profesional con matricula número cinco mil cuatrocientos noventa y ocho del Colegio de Abogados de Pichincha, en esta fecha y en 13 fojas útiles, protocolizo en el Registro de Escrituras Públicas de la Notaría Cuadragésimo Primera del Cantón Quito, cuyo archivo se halla a mi cargo, **LA DECLARACIÓN JURAMENTADA NÚMERO 2 DEL DOCTOR PATRICIO SALAZAR CÓRDOVA Y UN BORRADOR DE ALEGATO DENTRO DEL PROCESO C633309, C633010 AMBOS ANTE LA CORTE DE APELACIÓN DE ONTARIO CANADA,** que antecede.- Quito, a 27 de Diciembre de dos mil diecisiete.

DR. DOBRI ALBORNOZ DONOSO
NOTARIO CUADRAGESIMO PRIMERO DEL CANTON QUITO

Se protocolizó ante mi y en fe de ello confiero esta **SEGUNDA COPIA CERTIFICADA**, debidamente firmada y sellada en Quito a los 27 días del mes de Diciembre de 2017.

DR. DOBRI ALBORNOZ DONOSO
NOTARIO CUADRAGESIMO PRIMERO DEL CANTON QUITO