UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEVRON CORPORATION, | : |
| Plaintiff, | : |
| v. | : 11 Civ. 0691 (LAK) |
| STEVEN DONZIGER, et al., | : |
| Defendants. | : |

**Reply Memorandum of Law in Support of Non-Party Patricio Salazar Cordova's Motion to Quash**

Non-Party Patricio Salazar Cordova, by and through his undersigned counsel, respectfully submits this reply memorandum of law in support of his motion to quash subpoenas served on him by Plaintiff Chevron Corporation ("Chevron").

**I.  Chevron Has Wrongly Accused Salazar of Not Being Forthright With the Court**

In order to sow doubt about whether Salazar regularly transacts business within 100-miles of the Southern District of New York – and his prior declaration makes clear he does not – Chevron undermines its own credibility by citing to documents that do not support its insinuations. For example, citing Exhibits 3 and 5 to the Declaration of Anne Champion, dated October 18, 2019 (hereinafter "Champion Decl.,"), Chevron claims that these documents "show" that the "LAPs worked feverishly with Salazar to prevent the inspection . . ." (emphasis added). *See* Chevron's Opposition, p. 2. But Patricio Salazar Cordova's name is nowhere to be found in *either* of those exhibits. He was not even copied on the e-mails that Chevron writes so breathlessly about. *See* Champion Decl, Ex. 5. Chevron repeats this false allegation on the next page of its brief, stating that "the law firm Salazar Cordova (including Patricio and Augustin Salazar) coordinated closely with, and took direction from, the LAPs' counsel," citing again to

1

Exhibit 3. Opp., p.3 (emphasis added). Again, contrary to Chevron's claims, Salazar is not included in the correspondence in Exhibit 3, and thus cannot be said to be "coordinating closely with" or "taking direction from" the LAPs' counsel.

True, his former firm (including his brother Augustin) represented <u>a non-party</u> to the Ecuadorian litigation, Havoc laboratory, seeking to avoid an inspection in connection with the Lago Agrio litigation. Among the many documents it presumably has in its possession, it seems Chevron's only evidence connecting Patricio Salazar to the representation of Havoc in 2007 is an interview he sat in on with his brother regarding the Havoc inspection. *See* Champion Decl., Ex. 2. But Salazar's absence from these "Internal LAP documents" and "candid email[s]" (Opp., p.2) shows he did not actually work on the case. He therefore did not "misrepresent his prior involvement" to the Court. Opp., p.3.[1] Chevron puts nothing in the record – because they cannot – connecting Salazar with the LAP, the FDA, their respective counsels, or Donziger, prior to 2015.

Chevron further strains its reliance on its exhibits when it claims Salazar testified (in the Donziger disbarment proceeding) that he "repeatedly" traveled to the U.S. to attend Chevron shareholders meetings. Opp., p.4. Exhibit 13, which Chevron cites in support, simply does not say that. *See* Champion Decl., Ex. 13, p.2 ("I have never come to the States to do anything related to the case beside attending the general shareholders meeting and this time for this hearing."). Nowhere does it say that Salazar attended more than one general shareholders meeting or did so "repeatedly." If anything, his testimony that he has traveled to the U.S. infrequently for this case is entirely consistent with his declaration.

---

[1] Even if it were reasonable to attribute the representation by Salazar's former firm of a non-party to the Lago Agrio litigation to him personally, no statement in his declaration is misleading. *See, e.g.,* ¶ 4 ("I first began working with <u>the indigenous people of the Lago Agrio region</u> in Ecuador in April 2015 . . .") (emphasis added) and ¶ 5 ("I was not involved in the *Aguinda* trial in Ecuador and <u>played no role in obtaining the judgment</u> on behalf of the plaintiffs in that case.") (emphasis added).

In any event, his attendance at the shareholders meeting is entirely irrelevant to the present motion. As is clear from Exhibit 14 to the Champion Declaration, the general shareholders meeting was in California. Champion Decl., Ex. 14. Salazar did not disclose the visit to California to the Court because the only contacts that are relevant to this motion are those within 100-miles of the Southern District of New York.[2]

## II. Chevron Cannot Elect Its Discovery Devices Ex Post Facto

Whether Rule 69 applies here is academic. Yes, Rule 69 allows a judgment creditor to use state or federal law discovery devices. But Chevron *elected* to use a Rule 45 subpoena.

Salazar received a subpoena that included *two* copies of Rule 45 (c) through (f).[3] The subpoenas that were served on him included no reference to Rule 69, and the only reference to the CPLR was to 5223 (not a discovery device, but a warning of the consequences of civil contempt). Despite Chevron's reference to CPLR 5224 and 3110(2) in its Opposition, there is no reference to either of those provisions in the subpoenas. In fact, the Chevron subpoenas are inconsistent with CPLR 5224 and therefore could not be issued under that rule. CPLR 5224(c) requires at least 10-days' notice to the recipient of a deposition or document subpoena. *See* CLPR 5224(c). Chevron's subpoenas provided 2 days' notice. *See* Salazar Decl., Ex. A. It is unlikely Chevron or its counsel are ignorant of this requirement; more likely, the absence of conformity to CPLR 5224 speaks to Chevron's ex post facto attempt to shoehorn its subpoenas into the CPLR to avoid this motion to quash. Had Chevron actually purported to serve the

---

[2] Chevron also missteps when it accuses Salazar of "avoid[ing] his obligations" under the subpoenas. If the subpoenas violate Rule 45(c), Salazar has no obligation to comply with them. Whatever stonewalling of post-judgment discovery the defendants and others might be doing or have done, this should not fall at the feet of Salazar, who is not a party to this case and has not engaged in any such stonewalling. Regardless of what others have done, he is entitled to rely on the plain meaning of Rule 45.

[3] Further evidence that Chevron had intended to serve Rule 45 subpoenas is that it included a check for $45.50, comprising the mandatory $40 witness fee prescribed by 28 U.S.C. § 1821(b) (i.e., *the federal* requirement) and $5.50 for travel expenses – subway fare ($2.75) to and from. *See* Salazar Decl., Ex. A.

subpoenas under CPLR 5224, the subpoenas would be subject to quashal for non-compliance with CPLR 5224(c).[4]

### III. Salazar Is Entitled To Rely On the Explanation of His Rights and Duties Set Forth in the Subpoenas

The reason Chevron served two copies of Rules 45(c) through (f) is because it is required to do so by Rule 45(a)(1)(A)(iv). As the Advisory Committee's commentary to the 1991 amendments to Rule 45 explain, requiring the accompaniment of the text of Rule 45(c) and (d) with the service of a subpoena was akin to a "statement of the rights and duties of witnesses." Fed. R. Civ. P. 45(c) advisory committee's note; *see also Price Waterhouse LLP v. First American Corp.*, 182 F.R.D. 56, 64 (S.D.N.Y. 1998) ("Subdivision (c) was added to Rule 45, and it 'states the rights of the witnesses.'"); *McCabe v. Ernst & Young, LLP,* 221 F.R.D. 423, 426 (D.N.J. 2004) ("The 1991 Amendment extends the 10-day deadline to object to a subpoena to 14 days and requires that 'the subpoena include a statement of the rights and duties of witnesses.'"). When a non-party witness receives a subpoena, he is entitled to know what he has to do, and what he does not have to do. A party receiving a subpoena that violates the 100-mile rule may surmise that the subpoena is void or quashable and act accordingly.[5] Indeed, the old Rule 45(e), prior to the 2013 amendments to Rule 45, explicitly stated that a "nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place

---

[4] Indeed, Plaintiff assumes, without discussion, that the CPLR gives it a clearer path to enforcement of the subpoenas than does Rule 45. That is doubtful at best. *See Ayyash v. Koleilat*, 38 Misc. 3d 916, 926, 957 N.Y.S.2d 574, 582 (Sup. Ct. 2012), *aff'd,* 115 A.D.3d 495, 981 N.Y.S.2d 536 (2014) (requiring comity analysis and holding: "The non-party banks have shown that were this Court to require that they comply with plaintiff's demands, they, their officers and/or employees could be subject to civil or criminal penalties merely for such compliance. Such intrusion into legal frameworks of foreign countries in unjustified by the record *sub judice.*").

[5] For example, Salazar might have chosen to immediately move to quash based on the fact that the subpoenas compelled compliance two days after Salazar was served – a motion which, had he made it, was likely to succeed. *See, e.g., In re Malyugin*, 310 F. Supp. 3d, 6 (D.D.C. 2018) (quashing subpoena served on Russian doctor while visiting D.C. for a conference giving two days' notice of deposition). Instead, he sought an extension of time to respond, with the understanding that the 100-mile rule was an equally compelling ground for quashal. Salazar should not be disadvantaged because he sought the courtesy of an extension of time to respond to the subpoena because he was misled to believe it was a Rule 45 subpoena.

outside the limits of the Rule 45(c)(3)(A)(ii)." Fed. R. Civ. P. 45(e) (2012), *amended by* Fed. R. Civ. P. 45(g) (2013). It would be an injustice if a non-party witness relied to his detriment on the fact that the face of the subpoena purported to be a Rule 45 subpoena, only to later learn the issuer decided different rules should apply. It is important – indeed, Rule 45 requires – that a non-party witness be notified of his rights and obligations.

Where, as here, the judgment creditor "clearly indicated its intent to pursue post-judgment discovery in the manner provided by the Federal Rules of Civil Procedure," state procedures do not apply. *FDIC v. LeGrand*, 43 F.3d 163, 171 (5th Cir. 1995); *see also Iroquois Master Fund, Ltd. v. Glob. ePoint, Inc.,* No. CV 08-7761 UA (SSx), 2018 WL 6929337, at *6 (C.D. Cal. Jan. 9, 2018); *Textron Fin. Corp. v. Gallegos*, No. 15CV1678-LAB (DHB), 2016 WL 4077505, at *3 (S.D. Cal. Aug. 1, 2016); *Liberty Mut. Ins. Co. v. Lewis*, No. DR–12–MC–12–AM, 2012 WL 12888341 (W.D. Tex. Dec. 18, 2013).

To this end, the California case upon which Chevron heavily relies, *Retamco Operating, Inc. v. Carone*, No. CV 04-02997 CBM (RZx), 2007 WL 9752773, at *1 (C.D. Cal. June 29, 2007), is easily distinguishable. Chevron quotes the language from that case that a judgment creditor need not "make an election between federal and state procedures." But the judgment debtor's argument in that case was that "Plaintiff began post-judgment discovery utilizing State law procedures and, having done so, cannot now utilize federal law procedures." *Id.* It was not a case, like here, where the judgment creditor issued subpoenas clearly identified as Rule 45 subpoenas and then later claimed they were, despite clear evidence to the contrary, New York State law subpoenas governed by the CPLR. *Carone* stands for the proposition that a judgment creditor can use both state and federal law devices, or alternate between state and federal law devices; it does not stand for the proposition that a judgment creditor can issue a subpoena under

one of the judicial procedures, and then argue, when convenient, that in fact the other rules applies. In other words, it does not stand for the proposition that you can elect your procedural device *after the fact*.[6]

Similarly, the Court's Order as to the subpoena issued by Chevron to Katie Sullivan is distinguishable from the present motion. There, the subpoena did not violate Rule 45 – Sullivan was compelled for deposition near her place of residence or business in Massachusetts. *See* Champion Decl., Ex. 19. Moreover, Sullivan does not appear to have objected to the subpoena. There was not any risk, as there is here, that the recipient would be prejudiced by relying on one set of rules only to later learn that a different set apply.

Indeed, the Sullivan subpoena was not subject to a motion to quash under Rule 45 at all, but rather the defendant, Donziger, sought to continue a hearing based on whether or not he had received the appropriate notice of the Sullivan deposition. Chevron raised the issue of Rule 69 in a footnote in its opposition to Donziger's motion to continue. [Dkt. No. 2040.] Donziger did not address the issue of Rule 69 in his subsequent reply. [Dkt. No 2042.] In other words, not only was the Sullivan subpoena not subject to a motion to quash under Rule 45, but the issue of Rule 69 was not briefed. Finally, the Court held that Donziger had received notice of Sullivan's deposition anyway, despite the fact that he was not entitled to such notice under the CPLR. [Dkt. No. 2044.] There was, therefore, no practical conflict between the CPLR and the Federal Rules (and no prejudice to anyone). Here, on the other hand, the 100-mile requirement of Rule 45(c) is clearly in conflict with Chevron's reading of the CPLR.

The other cases relied on Chevron are similarly distinguishable. *First City, Texas-Houston, N.A. v. Rafidain Bank*, 197 F.R.D. 250, 256 (S.D.N.Y. 2000) and *Amaprop Ltd. v.*

---

[6] Moreover, in *Carone,* there was no conflict between the federal and state law rules. The plaintiff there served document requests, interrogatories and requests for production. The Court noted that "in this case at least, there seems little reason to distinguish between state and federal procedures." *Id.* at *2.

*Indiabulls Fin. Servs. Ltd.*, No. 10 Civ. 1853(PGG)(JCF), 2012 WL 4801452 (S.D.N.Y Oct. 5, 2012), involved the propriety of service, not to the viability of the post-judgment enforcement device itself. The Courts there ruled that service under state or federal rules was proper; it was not a case, like here, where the judgment creditor clearly elected a federal discovery device and later argued that it should be treated as a state law discovery device. *LeGrand*, 43 F.3d at 171.

### IV. The Document Subpoena Is Not Valid

The cases relied on by Chevron on page 16 of its Opposition arguing that the subpoena duces tecum is valid because the requested documents can be e-mailed or mailed are easily side-stepped. First, these cases are inconsistent with the plain meaning of Rule 45(c). Second, they all involve instances where the non-party had received a document subpoena unaccompanied by a deposition subpoena. *See, e.g., Dippel v. S.C. Farm Bureau*, No. 4:16-CV-1605-RBH-TER, 2018 WL 5763690, at *1 (D.S.C. Nov. 2, 2018), *aff'd sub nom. Dippel v. S.C. Farm Bureau Mut. Ins. Co.*, No. 4:16-CV-01605-RBH-TER, 2019 WL 132881 (D.S.C. Jan. 8, 2019) ("[a] number of courts have held that Rule 45(c)(2)(A)'s 100–mile boundary is not violated where, as here, the subpoenaed person is not instructed to also appear at the production location along with the requested documents."). Compliance with Salazar's document subpoena was required on the same date as his deposition subpoena. *See* Salazar Decl., Ex. A.

Moreover, none of the non-party witnesses in those cases where residents of foreign countries, like Salazar. Requiring Salazar to produce documents electronically is as much an extraterritorial reach as requiring him to produce them physically in New York, and comity considerations must be taken into account. *See Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 151 (S.D.N.Y. 2011), *aff'd sub nom. Tiffany (NJ) LLC v. Andrew*, No. 10 CIV. 9471 WHP, 2011 WL 11562419 (S.D.N.Y. Nov. 14, 2011); *Astra Aktiebolag v. Andrx Pharm., Inc.*, 208 F.R.D. 92, 98 (S.D.N.Y. 2002). Comity is especially relevant in a case like this one where production of

7

privileged documents by Salazar could result in criminal sanction under Ecuadorian law. Salazar Decl., ¶ 13, Ex. D.

V.     **The Court Should Not Modify the Subpoenas**

For the reasons set forth in Salazar's moving brief, we submit modification is not an appropriate remedy here. The language of Rule 45(c) is clear.[7] Respectfully, while the literal application of Rule 45(c) may lead to the "absurd result," discussed in the Court's *Probulk* decision, that a witness served on the courthouse steps could not be compelled to testify a few miles away, there are also due process considerations. A non-U.S. resident should be able to rely on the text of Rule 45(c) and not be surprised that a visit to New York could result in a vacation spent in deposition. This is as much an "undue burden" as being forced to travel more than 100-miles to attend the deposition. An American traveler would certainly be surprised to find its own vacation so waylaid in Quito, London or Istanbul.

In any event, we submit that the Court should reach a different result here than it did in *Probulk* and *Yukos Capital*. Other Rule 45(d)(3) factors – namely, the likely amount of privileged material and the undue burden on the non-party in responding to the subpoenas – combined with the bright line of the 100-mile rule, militate against modification. Salazar is an Ecuadorian attorney, a solo practitioner whose clients in this case are the indigenous people of Ecuador. He has limited funds with which to respond to these subpoenas. And even compliance with a modified subpoena (such as a deposition in Quito) will force him to navigate difficult questions of privilege, difficult questions about applicable law and spend significant time and expense reviewing and redacting privileged documents. *See In re Rezulin Products Liab. Litig.*, No. CIV.00 CIV.2843 LAK, 2002 WL 24475, at *2 (S.D.N.Y. Jan. 10, 2002) ("The Advisory

---

[7] The old Rule 45(e) (referenced above) invited non-compliance without the fear of a contempt sanction, suggesting that, at least prior to the 2013 amendments, there was no way for a Court to modify the 100-mile rule and force compliance.

Committee Note to the 1991 amendment makes plain that '[a] non-party required to produce documents or materials is protected against significant expense resulting from involuntary assistance to the court.' In this case, the risk of significant expense is occasioned by the fact that plaintiffs have subpoenaed privileged material which may be made available to them only in consequence of time consuming and exacting redaction for the purpose of protecting patient identities.") (modifying subpoena to shift the costs). The burden is disproportionate to his involvement or usefulness.

## VI. 45(d)(3)(iii) Provides Another Basis for Quashing the Subpoenas

### 1. Salazar Has Not Waived The Privilege By Failing to Provide a Privilege Log

Failure to produce a privilege log is not always a waiver of the privilege. The Court has discretion to fashion remedies to objections to subpoenas. *See In re DG Acq. Corp.*, 151 F.3d 75, 81 (2d Cir. 1998) (holding that the privilege log should follow within a "reasonable time" after propounding objections). As one Court has explained, "Courts have not always enforced [Local] Rule 26.2(c) stringently, and 'some have limited enforcement to situations in which there was no sufficient justification for the failure to produce a log on time or to seek leave to delay.'" *Williams v. Bridgeport Music, Inc.*, 300 F.R.D. 120, 124 (S.D.N.Y. 2014) (quoting *In re Chevron Corp.,* 749 F.Supp.2d 170, 181 (S.D.N.Y.2010)). A court is "free to take into account all relevant factors." *In re Chevron* Corp, 749 F.Supp.2d at 182. "There is no unmistakable deadline [in Rule 45] for assertion of objections, at least to the extent they concern privileges." *New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 186 F.R.D. 317, 321 (S.D.N.Y. 1999) (internal quotations omitted).

A through-line of Rule 45 is the goal of avoiding undue burden on a non-party. *See, e.g.,* Rule 45(d). Here, the combination of the fact that Salazar could rely on the bright line 100-mile rule in Rule 45(c) to quash the subpoena and that the documents requested only involve his

actions as an attorney (and therefore encompass significant privileged material, requiring significant time and expense) provide the justification for not providing a privilege log at this time. Should his motion to quash be denied, Salazar requests that the Court preserve his privilege objections and grant him leave to serve a privilege log at the appropriate time.

### 2. Donziger's Waiver Should Not Transfer to Salazar

Chevron simply assumes that any documents in Salazar's possession responsive to its document requests are co-extensive with documents in Donziger's possession and for which Donziger has waived the privilege. But Chevron's first document request does not seek documents specific to Donziger. It seeks any documents within Salazar's possession with respect to any efforts (by anyone) to sell an interest in the Ecuadorian Judgment. *See* Salazar Decl., Ex. A.

There is an important difference between this case and *Chevron Corp. v Salazar*, 275 F.R.D. 437, 446 (S.D.N.Y. 2011). In that case, the privilege waiver transferred to the LAPs attorneys, but they were US attorneys. Here, Chevron seeks to transfer a waiver of a privilege under U.S. law to waive a privilege under Ecuadorian law; it is a question of Ecuadorian law whether any such waiver would transfer. *Astra Aktiebolag v. Andrx Pharm., Inc.*, 208 F.R.D. 92, 98 (S.D.N.Y. 2002) ("Where, as here, alleged privileged communications took place in a foreign country or involved foreign attorneys or proceedings, this court defers to the law of the country that has the 'predominant' or 'the most direct and compelling interest' in whether those communications should remain confidential.").

## CONCLUSION

For the foregoing reasons, and for those set forth in his moving brief, Patricio Salazar Cordova respectfully requests that this Court quash the third-party subpoenas issued to him by Chevron Corporation.

Dated: New York, New York
      October 23, 2019   BAILEY DUQUETTE P.C.

By: /s/ James Bailey_____

James D. Bailey
Eric Wertheim
104 Charlton St., Suite 1W
New York, NY 10014
Tel: (212) 658-1946
Fax: (866) 233-5869
james@baileyduquette.com

*Attorneys for Non-Party Patricio Salazar Cordova*