UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHEVRON CORPORATION,

               Plaintiff,

          -against-

STEVEN DONZIGER, et al.,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Filed stamp

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/9/2019

11-cv-0691 (LAK)

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

      Steven Donziger, a suspended lawyer,[1] has led a corrupt effort to extort billions of dollars from Chevron Corporation ("Chevron"). One element of that scheme was the fraudulent procurement of a multibillion judgment from a provincial court in Ecuador (the "Ecuador Judgment"). Chevron brought this action against Donziger and others to enjoin enforcement of the Ecuador Judgment, to prevent Donziger from profiting from his actions, and for other relief. After a lengthy trial on the merits, the Court ruled in Chevron's favor. In consequence, Donziger is subject to a constructive trust and a permanent injunction (the "RICO Judgment") as well as a money judgment for more than $800,000 (the "Money Judgment").

---

[1]    Donziger has been suspended from the practice of law in the State of New York, *Matter of Donziger*, 163 A.D.3d 123, 80 N.Y.S.3d 269 (1st Dept. 2018), the District of Columbia, *Matter of Donziger*, No. 18-BG-967 (D.C. App. filed Sept. 20, 2018) [DI 2091-68, 2091-69], and by this Court. He therefore now represents only himself and no longer may represent the Donziger & Associates, PLLC or any other person or entity. *E.g.*, *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007).

The RICO Judgment has been affirmed on appeal. In the words of the Court of Appeals, "[t]he record in the present case reveals a parade of corrupt actions by the LAPs' [i.e., the Ecuadorian plaintiffs'] legal team, including coercion, fraud, and bribery, culminating in the promise to [Ecuadorian] Judge Zambrano of $500,000 from a judgment in favor of the [Ecuadorian plaintiffs, the] LAPs."[2] Donziger has exhausted all appellate avenues with respect to the RICO Judgment. And

---

[2]

*Chevron Corp. v. Donziger*, 833 F.3d 74, 126 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2268 (2017).

Nor is this the only tribunal to reach such conclusions. To mention one other, an arbitration tribunal under the auspices of the Permanent Court on Arbitration at the Hague, after extensive hearings, found, among many other things, the following:

- "This assessment starts with certain of the Lago Agrio Plaintiffs' representatives, especially Mr Donziger and Mr Fajardo. The evidence before this Tribunal points clearly to the conclusion that *they engaged in prolonged, malign conduct towards the Respondent's legal system generally and, particularly, the Lago Agrio Court in a manner that almost beggars belief in its arrogant contempt for elemental principles of truth and justice.* It is pointless here to characterise such conduct any further, because these individuals are not the object of the exercise required for this Award under the Treaty applying international law. Such conduct, as related above, also speaks for itself. Moreover, others unknown were also involved in the 'ghostwriting' exercise."

- The Ecuadorian "*Judge Zambrano actively solicited a bribe from whichever side in the Lago Agrio Litigation would be willing to pay him for issuing a favourable judgment in the Lago Agrio Litigation. Chevron refused his approaches; but certain of the Lago Agrio Plaintiffs' representatives did not.* It is not proven that Judge Zambrano did receive a monetary consideration actually paid to him before the issuance of the Lago Agrio Judgment. On a balance of probabilities, however, *it is proven that the consideration was a promise to reward him financially at a later date from proceeds to be recovered from the enforcement against Chevron of the Lago Agrio Judgment.*"

- "Judge Zambrano did not draft the entirety of the Lago Agrio Judgment by himself, as he falsely testified on oath in the RICO Litigation. The Tribunal finds that *Judge Zambrano, in return for his promised reward, allowed certain of the Lago Agrio Plaintiffs' representatives, corruptly, to 'ghostwrite' at least material parts of the Lago Agrio Judgment (with its Clarification). These representatives included Mr Fajardo and Mr Donziger.*" *Matter of Chevron Corp. v. Republic of Ecuador*, PCA No. 2009-23, Second Partial Award on Track 2 §§ 5.229-5.231 (Aug. 30, 2018) [DI

while the Money Judgment is on appeal, Donziger neither has paid it nor obtained a stay. So both judgments are fully enforceable. Accordingly, Chevron has undertaken supplementary proceedings to locate assets to satisfy the Money Judgment, to determine whether Donziger has complied with the RICO Judgment, and to obtain remedies for alleged non-compliance.

Donziger largely has stonewalled Chevron's efforts. He has disobeyed explicit provisions of the RICO Judgment and defied court process compelling him to provide discovery and to take other actions. He has ignored the fundamental "proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal."[3] He has been held in civil contempt for, among other things, his disobedience of court orders compelling him to provide perfectly appropriate discovery. And he has been subjected to coercive fines, all to no avail. He has been charged with criminal contempt, in some respects for violating the RICO Judgment and in other respects for disobeying post-judgment discovery and related orders.

There now are two motions before the Court. One is Donziger's motion to stay the December 12 hearing in light of the pendency of the criminal contempt charges, trial of which now is set for June 15, 2020.[4] The other is by Chevron for a determination that Donziger has waived, and therefore is precluded from asserting, the Fifth Amendment in a December 12 hearing – which

---

2082-1] (emphasis added).

[3]

*In re Payne*, 707 F.3d 195, 206 (2d Cir. 2013) (quoting *Maness v. Meyers*, 419 U.S. 449, 458 (1975) (internal quotation marks omitted)).

[4]

Dkt. 2405.

orignally was scheduled for June 10, 2019 and delayed for months essentially by Donziger[5] – to determine Donziger's claim that he purged himself of civil contempt of one portion of a March 5, 2019 court order.[6]

Chevron's papers fully demonstrate that Donziger's motion for a stay or adjournment of that hearing and a stay of Chevron's motion should be denied. But the Court thinks it useful to place the matter of a stay or adjournment of the impending hearing in a fuller context. It briefly addresses also Chevron's motion with respect to the Fifth Amendment.

## I.    *The Motion for a Stay or Adjournment*

### A.    *Facts*

#### 1.    *The Forensic Inspection Protocol*

On March 5, 2019, the Court issued a forensic inspection protocol (the "Protocol") that required Donziger to (a) identify and provide certain additional information with regard to his electronic devices, media, and web-based accounts in writing on or before March 8, 2019, and (b) surrender his devices and allow on March 18, 2019 a Neutral Forensic Expert to access his accounts for forensic imaging.[7]    The identification requirements are set out in Protocol ¶ 4, the device

---

[5]

The hearing was convened on June 10, 2019. Donziger's effort to establish that he had purged himself of his contempt of the portion of the order in question failed on that date because Donziger declined to take the witness stand notwithstanding that he had the burden at least of going forward with evidence that the had complied with the portion of the order in question. *See* Tr., June 10, 2019 [Dkt. 2352].

[6]

Dkt. 2391.

[7]

Forensic Inspection Protocol [DI 2172] ¶¶ 4-10.

surrender and account access in Protocol ¶ 5. The reasons underlying this action are set out in a prior memorandum and need not be repeated here.[8] Suffice it to say that Donziger has been stonewalling appropriate post-judgment discovery for month after month, which has necessitated that his electronically stored information be reviewed by others.

Donziger made clear from the outset that he would not comply with the Protocol. Indeed, he invited a contempt finding.[9] Chevron moved to hold him in civil contempt. And on May 23, 2019, the Court found Donziger in civil contempt of paragraph 4 of the Protocol (as well as other legal obligations) and imposed escalating coercive fines in an effort to induce compliance. It did the same on June 4, 2019 with regard to Donziger's defiance of paragraph 5 of the Protocol.

Following the civil contempt adjudications, Donziger took some steps in the direction of compliance with paragraph 4 of the Protocol. Chevron disputed their sufficiency. In consequence, the Court scheduled a hearing for June 10, 2019 that now is to resume on December 12, 2019 before Magistrate Judge Lehrburger. Nothing pertaining to paragraph 5 is pending before Magistrate Judge Lehrburger. And the hearing relating to paragraph 4 concerns only whether Donziger, after he was held in civil contempt on May 23, 2019, purged himself of that civil contempt of that provision of the Protocol. It has nothing to do with whether he defied paragraph 4 of the Protocol between March 2019 and May 23, 2019. As just noted, he made clear that he would not

---

[8]     Dkt. 2171.

[9]     *See, e.g.*, Donziger Letter to Neutral Forensic Expert, Mar. 11, 2019, Dkt. 2173-1 ("I clearly have stated that I will voluntarily go into civil contempt of the legally unfounded orders in order to obtain proper appellate review."); Donziger Response to Motion to Hold Him in Contempt of the Protocol, Dkt. 2184, at 4-5 ("[I]t is my intention to go into voluntary contempt as a matter of principle rather than submit to the review process prior to achieving any appellate review.").

comply and invited the contempt determination.

### 2. *The Appeal*

Donziger never appealed from nor sought other review of the Protocol. He did appeal, however, from the May 23, 2019 decision that, among other things, held him in civil contempt of paragraph 4 of the Protocol.[10] He did not seek any stay from the Circuit. His appellate brief raises no issue concerning the merits of the civil contempt determination with respect to paragraph 4 of the Protocol or the Protocol itself.[11] He never appealed from the June 4, 2019 order holding him in civil contempt of paragraph 5. Thus, the appeal from the May 23, 2019 civil contempt determination is the only such appeal Donziger has filed.

### 3. *The Criminal Contempt Charges*

On July 31, 2019, this Court charged Donziger with six counts of criminal contempt of court. Three counts charge violations of the underlying merits judgment in this case. One relates to an order that Donziger surrender his passport. Two relate to his violations of the Protocol. There is no relevant relationship between the December 12, 2019 hearing and those two counts.

Count II charges that Donziger violated paragraph 5 of the Protocol. But paragraph 5 is not implicated at all in the December 12, 2019 hearing.

---

10

*Chevron Corp. v. Donziger*, No. 19-1584 (2d Cir. filed May 28, 2019).

11

Any such contention would be deemed waived by the failure to include it in his brief. *See, e.g., Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

Count I charges that Donziger disobeyed paragraph 4 of the Protocol for all or part of the period from March 8, 2019 to and including May 28, 2019. Not surprisingly in view of his claimed intention to go into civil contempt, Donziger made not even a colorable effort to comply with paragraph 4 of the Protocol until May 29, 2019.[12]

Accordingly, there is no real overlap or relationship between Count I of the criminal contempt case and the December 12 hearing apart from the obvious background fact that both arise in the context of Protocol paragraph 4. They concern two different time periods. Moreover, the crime of criminal contempt is completed at the first moment the contemnor violated the order in question, and that is so regardless of any subsequent compliance.[13] As the criminal contempt charge concerns a different and earlier time period than the December 12 hearing, there is no overlap between the two matters at all.

B.     *Discussion*

The discovery requests with which Donziger failed to comply – the failure of which led to orders to comply, to the Protocol and ultimately to the contempt proceedings – were served in April 2018, almost two years ago. Donziger simply has refused to discharge his obligations.

He now seizes on the criminal contempt charges – which were filed on July 31, 2019 and are unlikely to be tried until June 15, 2020. But there is nothing in the criminal contempt

---

[12]     Champion Decl. [Dkt. 2230] ¶¶ 3-9 & Exs. A, B.

[13]     *United States v. Marquardo*, 149 F.3d 36 (1st Cir. 1998) ("This crime [criminal contempt] is completed when contumacious conduct has taken place, regardless of whether the subject later complies with the order he or she had earlier violated.").

charges or the broader context of this case that warrants any exercise of discretion in his favor on this issue. Five of the six criminal contempt charges have nothing at all to do with the December 12 hearing. That hearing is directed solely to the very narrow issue whether Donziger – as he has claimed – in fact complied with paragraph 4 of the Protocol on or after March 29, 2019. And that issue does not bear on the criminal contempt matter for the very simple reason that the criminal charge is that he disobeyed paragraph 4 during a different time period.

## II.    *The Fifth Amendment Motion*

Chevron's papers arguably demonstrate also that an invocation by Donziger at the December 12 hearing of the Fifth Amendment privilege against self incrimination, if permitted and otherwise unremedied, would leave Chevron without the ability to challenge on cross examination Donziger's assertions of compliance with paragraph 4 of the Protocol. This would be extremely unfair, it contends, in that it would result in Donziger relying on those assertions that he voluntarily chose to make in the three declarations in which he claimed that he had complied without his adversary having a proper opportunity to challenge Donziger's statements.

If Chevron were to prevail on its contention, one appropriate remedy in these circumstances might well be to preclude Donziger from asserting the Fifth Amendment in the hearing on the ground that his prior statements in the declarations waived his privilege on the subject of his compliance or lack thereof with paragraph 4. That remedy might be coupled with the drawing of an inference adverse to Donziger from his assertion of the privilege.[14] In the posture of this case,

---

[14]
> *E.g., Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)*; LiButti v. United States*, 107 F.3d 110, 121 (2d Cir. 1997); *Brink's, Inc. v. City of New York*, 717 F.2d 700, 707-10 (2d Cir. 1983).

however, another remedy is available and possibly of equal efficacy.

Here, Donziger asserts that he has purged himself of his contempt of paragraph 4 of the Protocol. On that question, he bears the burden of going forward and probably the burden of persuasion. The only evidence he thus far has offered to support that contention is the three declarations. Should he refuse to testify and to respond to appropriate questions on cross examination, whether on the basis of the Fifth Amendment or for another reason, the Magistrate Judge might well consider disregarding the three declarations.[15] Were this to occur, Donziger's contention that he has purged himself of his civil contempt of paragraph 4 might well fail, leaving him in civil contempt in accordance with the Court's May 23, 2019 order.

*Conclusion*

Donziger's letter motion to stay or adjourn the December 12, 2019 hearing, to hold Chevron's motion in abeyance, and to permit his counsel in the criminal contempt case to make a special appearance or, alternatively, to give Donziger "an opportunity either to address the substance of Chevron's motion or pursue appellate rights [Dkt. 2405] is denied in all respects,[16] provided, however, that the Court has considered the submission by Donziger's criminal defense counsel on

---

[15]

*United States v. Rylander,* 460 U.S. 752, 758 (1983) (holding that a civil contemnor's affidavit and direct testimony "were properly disregarded by the District Court" because he refused to be cross-examined on Fifth Amendment grounds at his contempt hearing).

[16]

The prayer for alternative relief is denied because Donziger already has had an opportunity to address the substance of Chevron's motion but elected not to do so. He had the usual fourteen day period from the filing of Chevron's motion within which to file answering papers and, indeed, sought no extension of that period. He instead moved for a stay or adjournment of the December 12 hearing without addressing the substance of Chevron's motion. He thus knowingly took the risk that his attempt to delay the hearing further would be denied and that Chevron's motion would be decided against him.

this occasion and, on appropriate application and for good cause, might do so in the future. Chevron's motion *in limine* for an order precluding Donziger from refusing on the basis of his Fifth Amendment privilege against self incrimination to answer questions as to whether he has cured his contempt of Paragraph 4 of the Forensic Inspection Protocol Order [Dkt. 2391] denied without prejudice to the assertion of its contentions before the Magistrate Judge.

       SO ORDERED.

Dated:      December 9, 2019

                            Lewis A. Kaplan
                      United States District Judge