THE LAW OFFICES OF
ANDREW J. FRISCH, PLLC

ONE PENN PLAZA
53rd FLOOR
NEW YORK, NEW YORK 10119
(212) 285-8000
FAX: (646) 304-0352

January 5, 2020

*By ECF*
The Honorable Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re: *Chevron Corp. v. Steven Donziger, et al.;*
     *Criminal Docket Number 19-561 (LAP);*
     *Civil Docket Number 11-0691*

Dear Judge Preska:

  I write in brief reply to Ms. Glavin's letter of January 3, 2020, in further support of Mr. Donziger's request that the Court require the prosecutors to make the disclosures discussed below, and also to conduct an evidentiary hearing and set an expedited schedule for motions related to issues raised herein.

  Ms. Glavin's letter stonewalls the pivotal issue, which is whether the prosecutors are disinterested and conflict-free. Seward & Kissel LLP ("Seward") does not represent a mere civil litigant which can rely on garden variety "conflict checks" as Ms. Glavin suggests, but stands in this Court in the shoes of the United States Department of Justice; for purposes of this case, Seward is the sovereign. Seward does not deny that it has significant relationships with Chevron as part of its longstanding and substantial legal work in the oil and gas industry. Seward's silence on the facts warrants the inference that it has business, professional and/or personal relationships that compromise both the fact and appearance of the necessary "disinteredness," which Professors Green and Roiphe in their article describe as prerequisites to proper and ethical exercise of prosecutorial power.

  The United States Supreme Court has "stressed that a prosecutor seeking a contempt conviction must be both impartial in fact and appear to be so." *FTC v. American Nat'l Cellular*, 868 F.2d 315, 319 (9th Cir 1989) ("the Court in *Vuitton* appears largely to have been concerned with conflicting *financial* interests") (citing *Young v. United States ex rel. Vuitton Et Fils S. A.*, 481 U.S. 787 (1987)); *United States v. Neal*, 101 F.3d 993, 997 (4th Cir. 1996) ("Among those procedures that are fundamental to our adversary system is the use of an

independent prosecutor to pursue charges against a criminal defendant"); *see also In re Murchison*, 349 U.S. 133, 136 (1955) ("Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness . . . . That interest cannot be defined with precision. Circumstances and relationships must be considered").

Ms. Glavin attempts to shift the focus from Seward's relationships to the adequacy of defense counsel's research revealing them, but counsel's first step was to raise Seward's ties to Chevron with Ms. Glavin (Exhibit A), who declined to address the issue at all, advising that she would disclose only what her discovery obligations required. The following facts, however, are now undisputed:

(1) Since 2017, Chevron's board has included John B. Frank, Vice Chairman of Oaktree Capital Group, LLC (Exhibit B), which, according to Seward's own website, significantly invests in Seward's clients, including TORM plc, one of the world's largest product tanker companies; Eagle Bulk Shipping Inc.; and Kudu investment management (Exhibit C);

(2) Seward's clients deriving significant income from Chevron include Ocean Rig UDW, an operator of oil platforms (Exhibit D), and apparently Dynegas Ltd, a shipper of liquified natural gas (Exhibit E); and

(3) Michael Timpone, the Seward partner identified online as having served on Chevron's board (Exhibit F), appears to be among Seward partners who have relationships with Oaktree, Chevron, or both.

Ms. Glavin has unlimited and unique access to the facts. It is her obligation, as a Seward partner and *de facto* sovereign in this case, to disclose the full extent of Seward's relevant relationships, not deflect the issue by critiquing defense counsel's research. It is not defense counsel's obligation to scour the Internet and try to piece it all together from Seward's website, the mountain of SEC filings related to Seward's clients, corporate postings, and industry biographies. We respectfully request that the Court require the prosecutors to disclose the full extent and nature of the business, professional and personal relationships between Seward and its clients and Oaktree and Chevron. In addition, the Court should order an evidentiary hearing at which Mr. Frank and Mr. Timpone at a minimum should testify so a proper non-stonewalled record is made on this fundamental issue. Since receiving Ms. Glavin's letter of January 3, 2019, I have consulted with a highly-regarded expert in legal ethics, whose view is that the current state of the record is itself a concern and from whom I expect to request a written opinion.

Further, Ms. Glavin's letter establishes that her contacts with Judge Kaplan are continuing. These ongoing contacts raise unprecedented issues of fairness and due process at least in part because Judge Kaplan continues to preside over Chevron's civil case against Mr. Donziger and make rulings that risk irreparable prejudice to him. On December 9, 2019, after Magistrate Judge Robert W. Lehrburger had earlier adjourned a civil contempt hearing in light of this then-new criminal contempt case, Judge Kaplan denied Mr. Donziger's renewed motion to

stay or further adjourn the hearing when it became clear that this criminal case would not be resolved in December. In so ruling, Judge Kaplan granted Chevron's motion *in limine* to preclude Mr. Donziger from asserting his Fifth Amendment rights at the hearing, faulting Mr. Donziger's criminal defense counsel for the inconsequential difference of moving to hold Chevron's motion in abeyance pending resolution of the criminal case rather than moving for more time to respond.

The unusually extensive history of this case includes a petition for Judge Kaplan's recusal, which the Circuit denied in 2011 [Second Circuit Case No. 11-2259, Doc 75], quoting *Keith v. Barnhart*, 473 F.3d 782, 789 (7th Cir. 2007), that "[b]ias cannot be inferred from a mere pattern of rulings by a judicial officer, but requires evidence that the officer had it in for the party for reasons unrelated to the officer's view of the law[.]" The history of this case since 2011 and Judge Kaplan's charges of criminal contempt add substantially to the record and call out for special care. Justice White, in *Bloom v. Illinois*, 391 U.S. 194, 207 (1968), cautioned against "vesting the judiciary with completely untrammeled power to punish contempt." "[I]t is well established that the contempt power carries with it a great potential for abuse; its exercise must be delicate and care should be taken to avoid arbitrary or oppressive results." *Sandstrom v. Butterworth*, 738 F.2d 1200, 1209 (11th Cir. 1984) (*quoting Bloom* at 202). *See also United States v. Griffin*, 84 F.3d 820, 829 (7th Cir. 1996) (the "crucial determinant" of whether appropriate procedural protections have been afforded in a criminal contempt proceeding is "the extent of the judge's intrusion" into the authority of the executive branch to prosecute crimes").

The circumstances of this case require restraint and heightened vigilance to guard against abuse. The basis for Judge Kaplan's charges of criminal contempt are a matter of extensive filings by his Honor, Mr. Donziger, and Chevron; Judge Kaplan's continuing input is not necessary. Ms. Glavin's refusal to disclose the nature and extent of her contacts with Judge Kaplan justifies the inference that his Honor has not truly delegated authority over this criminal case as contemplated by Rule 42 and the relevant case law, but remains significantly involved in ways that risk arbitrary and oppressive results.

Substance is more important than form. "[T]he settled law of the Supreme Court [is] abundantly clear that the simultaneous assumption of the inconsistent roles of prosecutor and judge transgresses our most fundamental notions of procedural fairness." *Neal*, 101 F.3d at 98. *See United States v. Bland*, 697 F.2d 262, 265 (8th Cir. 1983) (warning against judicial assumption of "the mantle of an advocate"). The fact of Judge Kaplan's appointment of the three Seward lawyers is undisputed; it is the substance of his Honor's *subsequent* role that informs whether the resulting procedure is fair and comports with due process. Absent an elucidating response from Ms. Glavin that resolves our concerns, we expect to raise them more formally as part of motion practice following any additional disclosures about the Seward-Chevron ties.

We are also concerned about the continuing role of Gibson Dunn & Crutcher LLP, which appears to have provided information to the Seward lawyers which is false and misleading. We have reminded Ms. Glavin that her obligations under *Brady v. Maryland*, 373

3

U.S. 83 (1963), require her to disclose immediately any such information provided by Gibson Dunn on behalf of Chevron. We are also concerned, and will address in motion practice, that the substance of the prosecutors' contacts with Judge Kaplan and Gibson may constitute an end-run around settled law that prevented his Honor from himself prosecuting Mr. Donziger or appointing Gibson Dunn to prosecute Mr. Donziger in lieu of the United States Attorney.

Justice Scalia, dissenting in *Vuitton*, questioned the entire constitutional basis for establishing special protocols for prosecuting alleged disobedience to court orders, expressing great concern about the potential for abuse. *Vuitton*, 481 U.S. at 815-25. Here, where Judge Kaplan acted as *de facto* grand jury, appears to have bypassed the District's protocols for random assignment, and appointed prosecutors with ties to Oaktree, Chevron and the oil and gas industry, we believe that due process and fundamental fairness require that all the relevant facts be disclosed.

Respectfully submitted,

/s/
Andrew J. Frisch

cc: Ms. Rita Glavin

Enclosures