# EXHIBIT H

From: Steven Donziger <sdonziger@donzigerandassociates.com>
Sent: Monday, May 7, 2018 12:12 PM
To: Aaron Marr Page <aaron@forumnobis.org>
Subject: Re: Email Memorandum re FDA Funds received from Katie Sullivan



Thank you Aaron for this thoughtful analysis which I agree with.

I instruct you to please wire the funds cited to the following account:

TD Bank
2831 Broadway
New York, NY 10025
phone: 212-932-7859

**EXHIBIT
PX 9119**

Account name: Steven R. Donziger
Account #: 4311018132
Routing: 026013673
Swift Code: NRTHUS33

Thanks, Steven

---

**From:** Aaron Marr Page <aaron@forumnobis.org>
**Sent:** Monday, May 7, 2018 1:31:58 AM
**To:** Steven Donziger
**Subject:** Email Memorandum re FDA Funds received from Katie Sullivan

Steven,

Please read this email memorandum carefully and respond with your instructions.

As you know, I recently received into my client escrow account certain Ecuador case litigation funds raised by you and previously held by Ms. Katie Sullivan, who recently decided that she no longer wished to perform the administrative and financial management role for you and the Frente de Defensa de la Anazonía (FDA) that she had previously been performing. The details of that transfer are set forth in the attached letter from me to Ms. Sullivan's attorney.

Although I received the funds for the benefit of the FDA, and expressly not as a "not as an agent for Mr. Steven Donziger in his personal capacity," I nonetheless recognize you as the lead representative of the FDA on all matters other than those internal to Ecuador. This is specifically reflected (most recently) in the superior international durable power of attorney ("poder superior legal internacional duradero") conferred upon you in November 2017 (attached), that expressly gives you the power to "direct and manage all legal efforts" of the FDA abroad, including specifically the power to "direct and manage all lawyers and service providers under contract with or otherwise linked to the FDA."

I recognize that this confers and was intended to confer a power on you to direct my own efforts when I act, pursuant to my own representation agreement dated January 2017, as a representative of the FDA.

I also understand that under the specific terms of the investment contracts pursuant to which the relevant funds were originally obtained, you are specifically provided with authority to direct use of the funds.

Accordingly, I understand you to be the individual with primary authority to direct my use or discharge, at this point in time, of the funds I received for the benefit of the FDA.

In receiving the funds, I represented that "I am aware of no Order or other writing from any source having the force or effect of precluding either Ms. Sullivan's transfer or my receipt of the Materials and/or Funds under the terms and conditions set forth herein. To the extent any Order or writing impacts, is deemed to impact, or hereafter comes to impact the Materials and/or Funds, any such Order and/or writing will be duly observed by me."

I hereby affirm that I am still, as of this writing, aware of no Order with force or effect as referenced above. To be specific:

1. It is true that the language of Judge Kaplan's March 4, 2014 Operative Judgment (Dkt. 1875), while not entirely clear, initially raised the concern that it could be read to bar the raising and use of litigation expense funds from investors, financial activity which of course was and is absolutely necessary to be able to continue litigating both the appeal of Kaplan's judgment and other ongoing aspects of the larger litigation in Canada and elsewhere. You immediately raised these concerns as part of a motion to stay. In a subsequent order addressing your motion and your concerns (Dkt. 1901), Judge Kaplan clarified his own understanding of the language and effect of Dkt. 1875.

2. Most notably, Kaplan made clear that the language imposing a constructive trust on funds "traceable to the judgment" in paragraphs 1-2 only covered funds received as part of a *collection* of monies or proceeds on the Ecuador environmental judgment, and did not include funds raised for litigation fees and expenses (including retainer payments to you) in exchange for an interest in any future collection, as funds have always been raised on this case. Kaplan concluded: "Thus, at least as long as no *collections* are made in respect of the Lago Agrio Judgment and funneled to Donziger as retainer payments, the NY Judgment would not prevent Donziger from being paid, just as he has been paid at least $958,000 and likely considerably more over the past nine or ten years." By contrast, the Operative Judgment would at least "change things" with respect to your ability to receive "payment of any Contingent Fee," i.e. upon the realized contingency of a collection.

3. Kaplan further made clear that paragraph 5 of the Operative Judgment also did not impact fund-raising ahead of or outside of the actual collection of

monies on the Ecuador environmental judgment. Kaplan explained that the purpose of paragraph 5 "was to prevent Donziger and the LAP Representatives from avoiding the effect of the constructive trust imposed on assets in their hands that otherwise would have been direct *proceeds* of the Judgment by selling, assigning, or borrowing on their interests in the Lago Agrio Judgment and thus at least confusing the issue of traceability." Again, Kaplan indicated that the focus was on monies or proceeds obtained by way of collection, and not fundraising off of interests in some future collection. Thus, Kaplan concluded, there were no conceivable concerns regarding paragraph 5 because "[t]here is no reason to suppose that the Lago Agrio Judgment will be collected in any material part during the pendency of the appeal."

4. Kaplan repeated the same analysis with respect to the parts of Operative Judgment that concerned the LAP representatives. Indeed, Kaplan concluded that the concern expressed by you that "the Judgment's prohibition on monetizing the Lago Agrio Judgment would prevent [the LAP Representatives] from 'financ[ing]' any appeal of this action'" was so unfounded that the argument based on it "borders on the irresponsible."

5. Even if paragraph 5 could be said to somehow enjoin fundraising of litigation expenses in exchange for an interest on a future collection, Kaplan further made clear that paragraph 5 could only apply to "***their interests*** in the Lago Agrio Judgment" (emphasis original), i.e. only the specific interests of you and the two LAP Representatives. The other interests in the Ecuador environmental judgment (such as that held by the FDA) were intentionally unaffected. As we know, the fund-raising contracts were careful to specify that they were not in exchange for or in reliance upon your specific interest or that of the LAP Representatives (or indeed any LAPs).

6. Kaplan concluded that there was no basis for concern that funds to finance the appeal, or "any other" effort, "could not be raised [under the terms of Dkt. 1875] *just as* millions have been raised before." (emphasis added).

7. On the basis of the foregoing analysis and understanding, the litigation expense funds previous held by Ms. Sullivan, and now held by me, were raised and have been partially spent.

8. I am aware that Judge Kaplan recently issued a Default Judgment against the FDA and others (Dkt. 1985) that purports to apply the same terms of the Operative Judgment to the FDA and others. This *in absentia* Default Judgment seems to me to be patently illegal and improper. Nonetheless, even accepting it at face value, it would not, for the same reasons outlined above, impose any constructive trust or any other limitation or prohibition as regards funds for case litigation expenses received in exchange for an interest in a future collection, as opposed to funds or monies received as proceeds of an actual collection on the environmental judgment. Moreover, even if paragraph 5 were improperly read to enjoin the FDA fund-raising of litigation expenses as some kind of "monetization," this injunction would only come into force on a going-forward basis from the date of the Default Judgment (April 23, 2018), and would not impact funds that were raised by the FDA prior to that date, such as the funds previously held by Ms. Sullivan.

Accordingly, it remains my opinion, upon careful research and consideration, that neither the Operative Judgment, the Default Judgment, nor any other order from Judge Kaplan or any other court, nor any other provision of law of which I am aware, imposes any limitation or restriction on the use of the funds received by me on behalf of the FDA.

Because you are the lead representative of the FDA regarding the funds I received for the benefit of the FDA, I hereby await your instructions on what, if anything, I should now do with the funds.

Sincerely,

Aaron Marr Page
FORUM NOBIS PLLC
513 Capitol Court NE, Suite 100
Washington, D.C. 20002
(202) 618 2218
aaron@forumnobis.org