# EXHIBIT L

```
                                                          633
DEPARTMENTAL DISCIPLINARY COMMITTEE
FIRST JUDICIAL DEPARTMENT
SUPREME COURT - APPELLATE DIVISION
----------------------------------------x

In the Matter of:                         RP #2018.7008

     STEVEN DONZIGER


----------------------------------------x
                              61 Broadway
                              New York, New York 10006
                              Wednesday, October 28, 2019

BEFORE:  JOHN HORAN, REFEREE

APPEARANCES:

For the Departmental Disciplinary Committee
First Judicial Department:
        61 Broadway
        2nd Floor
        New York, New York 10006

    BY: NAOMI GOLDSTEIN, ESQ.
        GEORGE DAVIDSON, ESQ.

For the Respondent:

    RICHARD FRIEDMAN, ESQ.
    MARTIN GARBUS, ESQ.
    AARON PAGE, ESQ.
```

*Transcription Services*

```
                                                             793
 1           DONZIGER - RECROSS (by Davidson)
 2      which point that particular money became my
 3      money.
 4           MR. DAVIDSON:  But you also said that she
 5      was holding the money under your authority.
 6           THE WITNESS:  Well I had different
 7      authorities, okay, one of my authorities was I
 8      represented the FDA in a variety of matters,
 9      including trying to help them raise money, as
10      well as manage resources. So she created the
11      account under the FDA's authority and I helped
12      her because I represented the FDA for types of
13      things.
14           MR. DAVIDSON:  Well whose name is on that
15      account?
16           THE WITNESS:  I believe it was her name
17      or an entity that she created.
18           MR. DAVIDSON:  Right.  Now there's a, it
19      will take me a minute to find it, but there is
20      a wire transfer information that goes along
21      with Aaron Page's sending you the $342,000 and
22      change, and that wire transfer reflects that
23      the money came out of Aaron Page's trust
24      account and was f/b/o FDA.
25           THE WITNESS:  What do you mean?
```

                                                        794
1            DONZIGER - RECROSS (by Davidson)
2              MR. DAVIDSON: So f/b/o, that means for
3       the benefit of, so you received that money in
4       your account for the benefit of FDA, okay? It
5       seems to me that that's got to be client money
6       when it hits your account.
7              THE WITNESS: No.
8              MR. DAVIDSON: I don't think there's
9       another way to look at that.
10             THE WITNESS: I respectfully disagree.
11      As I testified before, I had millions of
12      dollars owed to me and when it hit my account
13      it became my money and I hoped to, other than
14      money I was going to immediately pay back to
15      Mr. Page for his fee, I hoped to keep it all.
16             MR. DAVIDSON: If you'll hold on one
17      second I'll find the reference.
18             THE REFEREE: Mr. Donziger, what you're
19      really saying is that since you had the
20      authorizing power, there was no authorization
21      by FDA needed for arrears which were,
22      according to your accounting, owed to you. In
23      other words, you could authorize Sullivan to
24      send it to you.
25             THE WITNESS: I think it's very common in

795

1        DONZIGER - RECROSS (by Davidson)
2    plaintiff's law, just if I may, and I don't
3    think this is that unusual where if you have a
4    client or, say, multiple clients, and you,
5    say, settle, say there is more than one
6    defendant and settle with one defendant and
7    the entirety of that money comes in and you
8    have a debt that you've already paid into the
9    case that's greater than that amount of money
10   from the first defendant, the lawyer would be
11   able to reimburse him or herself all of that
12   without giving any of it to the client. So I
13   think that's --
14        THE REFEREE:  With an authorization of
15   the client.
16        THE WITNESS:  Well I would assume there
17   would be authorization that the retainer
18   agreement under my analogy to pay expenses
19   first. So I don't think this is a dissimilar
20   situation.  Now in my analogy I think that
21   lawyer could also choose on his or her own
22   volition to give some of the money to his
23   client anyway and keep some and that's how I
24   looked at it.
25        MR. DAVIDSON:  Mr. Donziger, I found the