USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/11/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
CHEVRON CORPORATION,

        Plaintiff,

    -against-                                   11 Civ. 0691 (LAK)

STEVEN DONZIGER, et al.,

        Defendants.
------------------------------------- x

## MEMORANDUM OPINION

Appearances:

        Randy M. Mastro
        Andrea E. Neuman
        Anne Champion
        William E. Thomson
        GIBSON, DUNN & CRUTCHER, LLP

        Herbert J. Stern
        Joel M. Silverstein
        STERN, KILCULLEN & RUFOLO, LLC

        *Attorneys for Plaintiff*

        James Bailey
        Eric Wertheim
        BAILEY DUQUETTE
        *Attorneys for Non-Party Patricio Salazar Cordova*

LEWIS A. KAPLAN, *District Judge.*

On September 17, 2019, plaintiff Chevron Corporation ("Chevron") served nonparty Patricio Salazar Cordova ("Salazar"), an Ecuadorian attorney, in Manhattan, with document and deposition subpoenas in connection with Chevron's attempts to enforce several judgments against Steven Donziger. Salazar moves to quash the subpoenas, asserting that they violate the geographical limitations of Federal Rule of Civil Procedure 45 and that the documents and other evidence Chevron demands are privileged under the law of Ecuador. Chevron seeks to enforce the subpoenas as served.

*Facts*

In 2011, Steven Donziger procured a judgment from a provincial court in Ecuador (the "Ecuador Judgment") ordering Chevron to pay billions of dollars into a trust established for the benefit of the Frente de la Defensa de la Amazonia (the "ADF"),[1] an organization that Donziger controlled.[2] In 2014, the Court held that Donziger obtained the Ecuador Judgment fraudulently.[3] It issued a judgment (the "RICO Judgment") imposing upon Donziger and related parties a constructive trust and permanent injunction that, among other things, requires them to assign to

---

[1] *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 481 (S.D.N.Y. 2014), *aff'd*, 833 F.3d 74 (2d Cir. 2016). Donziger has since been suspended from the practice of law. *See Chevron Corp. v. Donziger*, 384 F. Supp. 3d 465, 471 n.1 (S.D.N.Y. 2019) (citing, *e.g.*, *Matter of Donziger*, 163 A.D.3d 123, 80 N.Y.S.3d 269 (1st Dept. 2018) (suspending Donziger from the practice of law in the State of New York)).

[2] *Chevron*, 974 F. Supp. 2d at 399.

[3] *Id.* at 644.

Chevron their rights to any property traceable to the Ecuador Judgment.[4] Donziger repeatedly has violated this injunction.[5]

In 2018, the Court issued a judgment against several dozen defaulted defendants, including the ADF (the "Default Judgment").[6] In terms nearly identical to those of the RICO Judgment, the Default Judgment imposed upon these defendants a constructive trust and permanent injunction that, among other things, requires them to assign to Chevron their rights to any property traceable to the Ecuador Judgment.[7]

The Court has issued also three supplemental judgments (collectively, the "Money Judgments") in favor of Chevron and against Donziger and some affiliated parties. The first, dated February 28, 2018, ordered Donziger to pay $813,602.71 in costs to Chevron.[8] Then in May 2019, the Court granted in whole or in part four motions by Chevron to hold Donziger in civil contempt.[9] One contempt finding yielded a May 24, 2019 supplemental judgment ordering Donziger to pay

---

[4] Judgment as to Donziger Defendants and Defendants Camacho and Piaguaje [DI-1875].

[5] *Chevron*, 384 F. Supp. 3d at 472.

[6] Default Judgment as to Defaulted Defendants [DI-1985].

[7] *Compare id., with* Judgment as to Donziger Defendants and Defendants Camacho and Piaguaje [DI-1875].

[8] *Chevron Corp. v. Donziger*, 11-cv-0691 (LAK), 2018 WL 1137119, at *21 (S.D.N.Y. Mar. 1, 2018), *appeal dismissed* (May 7, 2018); Supplemental Judgment as to Donziger Defendants and Defendants Camacho and Piaguaje (Feb. 28, 2018) [DI-1962].

[9] *Chevron*, 384 F. Supp. 3d at 506-07.

Chevron $666,476.34 he obtained in violation of the RICO Judgment.[10] The Court ordered also that Donziger pay Chevron's $3,433,384.40 in reasonable attorneys' fees for prosecuting its contempt motions.[11] According to Chevron, the Money Judgments remain unsatisfied, except that Chevron has realized $150,255.05 on the first judgment.[12]

As the Court previously observed, Donziger "largely has stonewalled Chevron's efforts" to take postjudgment discovery to find assets that may be applied to satisfaction of the money judgments and to determine whether he has complied RICO Judgment.[13] This remains a problem to this day. It has led Chevron to seek postjudgment discovery from nonparties, one of whom is Salazar.

According to his declaration in support of his motion to quash, Salazar resides and works in Cumbayá, Ecuador,[14] which is just outside Quito. Chevron and Salazar dispute Salazar's historical involvement in this litigation.[15] For present purposes, it suffices to note that Salazar has

---

[10] *Id.* at 505, 507; Supplemental Judgment (May 24, 2019) [DI-2210].

[11] *See Chevron*, 384 F. Supp. 3d at 507; Supplemental Judgment (Jul. 19, 2019) [DI-2271]; *see also* Memorandum Endorsement [DI-2264].

[12] Declaration of Patricio Salazar Cordova in Support of His Motion to Quash Chevron Corporation's Subpoena Duces Tecum and Subpoena Ad Testificandum (hereinafter "Salazar Dec.") Ex. A at 3 [DI-2349-1].

[13] *Chevron*, 384 F. Supp. 3d at 472.

[14] Salazar Dec. ¶¶ 2-3 [DI-2349].

[15] For example, Salazar states in his signed declaration that he "first began working with the indigenous people of the Lago Agrio region of Ecuador in April 2015." *Id.* ¶ 4. He notes also: "Having been engaged by the [ADF] in January 2016, I was not involved in the . . . trial in Ecuador [that produced the fraudulently obtained judgment] and played no role in

served as outside counsel for the ADF, the nominal beneficiary of the Ecuador Judgment, since at least January 2016.[16] He characterizes his "role, among others," as "oversee[ing] the enforcement of the [Ecuador J]udgment in Ecuador and other jurisdictions and provid[ing] support for those activities from Ecuador."[17]

Salazar claims to have traveled to the New York area only four times "in the last three years."[18] He acknowledges trips to attend a conference in September 2016, to sit for an interview concerning the Ecuador litigation in April 2018, and to take a vacation in May 2019, during which

---

obtaining the judgment on behalf of the plaintiffs in that case. . . . Similarly, until now, I had no involvement in this case in New York." *Id.* ¶ 5.

Chevron submitted a lengthy declaration with exhibits to suggest that these and similar claims are false or misleading. *See* Declaration of Anne Champion in Opposition to Patricio Salazar's Motion to Quash [DI-2377]. Though rejecting Chevron's contention, Salazar concedes the veracity of some of the facts that Chevron claims he omitted from his declaration about his prior involvement in the Ecuador litigation and surrounding events. *See* Reply Memorandum of Law in Support of Non-Party Patricio Salazar Cordova's Motion to Quash 2-3 [DI-2384] (hereinafter "Salazar Rep. Mem."). If Salazar's prior involvement goes beyond what he has admitted, such involvement may become relevant. The Court need not and does not, however, make any findings on this topic at this time.

[16] Salazar Dec. ¶ 4.

[17] *Id.* ¶ 7.

[18] *Id.* ¶ 9.

Chevron questions Salazar's credibility as to this assertion in light of what it views as his misrepresentations about his historical involvement in the Ecuadorian litigation. Chevron's Memorandum of Law in Opposition to Patricio Salazar's Motion to Quash 15, 21 [DI-2376] (hereinafter "Chevron Mem."). Salazar's decision to limit his admitted travel to "the last three years" is unusual when he claims to have represented ADF for nearly four years as of the time that he made this assertion. But as above, there is no need to resolve these factual disputes at this time.

he spent at least some time working on what he implies was an unrelated matter.[19] Salazar's fourth trip, taken in September 2019 for the purpose of testifying at Donziger's disbarment proceeding, gave rise to the present dispute.[20]

On September 17, 2019, Salazar was served in Manhattan with a packet[21] containing the following items:

- A documented titled "Chevron Corporation's Second Information Subpoena Duces Tecum, and Subpoena Ad Testificandum to Patricio Salazar Cardova," which (1) stated that Chevron was serving Salazar with document, information, and deposition subpoenas in connection with the RICO Judgment, the Money Judgments, and the Default Judgment, (2) cited provisions of Federal Rule of Civil Procedure 45 concerning Salazar's rights and obligations, and (3) and warned that Salazar could be held in contempt under New York CPLR 5223 for his failure to comply with the subpoenas.[22]

- A page captioned "Exhibit A," which listed three types of "documents requested."[23]

- A standard Administrative Office form 88A of Rule 45 subpoena, entitled "Subpoena to Testify at a Deposition in a Civil Action," which demanded that Salazar appear on September 19, 2019 at Chevron's counsel's Manhattan office for testimony.[24]

- A standard Administrative Office form 88B of Rule 45 subpoena, entitled "Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action," which demanded that Salazar produce on September 19, 2019 at

---

[19] Salazar Dec. ¶ 9.

[20] Id. ¶ 8 and Ex. A.

[21] Salazar Dec. Ex. A.

[22] Id. at 1-4.

[23] Id. at 5.

[24] Id. at 6-8.

Chevron's counsel's Manhattan office the "documents, electronically stored information, or objects" described in "Exhibit A."[25]

The three categories of "documents requested" in Exhibit A are:

1. "All documents relating to any attempted or completed sale, assignment, or transfer of rights, title, claims, or interest in or to any proceeds or other interest, whether held directly or indirectly, in the Ecuador Judgment, enforcement of the Ecuador Judgment, or proceeds of such enforcement, since March 4, 2014, including any communications regarding the same.

2. "All documents reflecting or relating to any acts that Steven Donziger, any other person acting in concert with Donziger, or anyone else acting on their collective or individual behalf, have undertaken to monetize or profit from the Ecuador Judgment in any way, including by selling, assigning, pledging, promising, transferring, borrowing against, encumbering, or purchasing any interest therein, since March 4, 2014, including any communications regarding the same.

3. "All documents reflecting or relating to any property, whether personal or real, tangible or intangible, vested or contingent, that Donziger has received, or hereafter may receive, directly or indirectly, or to which Donziger has obtained or hereafter obtains any right, title, or interest, directly or indirectly, that is traceable to the Ecuador Judgment or actions to enforce the Ecuador Judgment anywhere in the world, since March 4, 2014, including any communications regarding the same."[26]

After the parties agreed to stay the September 19 deadlines,[27] Salazar moved to quash both subpoenas.

---

[25] *Id.* at 9-11.

[26] *Id.* at 5.

[27] *See, e.g.*, Memorandum of Law in Support of Non-Party Patricio Salazar Cordova's Motion to Quash 2 n.1 [DI-2350] (hereinafter "Salazar Mem."); Chevron Mem. 6.

*Discussion*

Salazar makes two arguments in support of his motion to quash: that (1) the subpoenas are invalid under Rule 45 because he does not reside or work within 100 miles of Manhattan, and (2) the documents Chevron seeks and the testimony likely to arise out of the deposition are protected under Ecuadorian privilege law in light of his representation of the ADF.

I.  *Validity of the Subpoenas*

Two Federal Rules that are potentially relevant to the validity of Chevron's subpoenas. The first is Rule 69(a), which pertains to execution to satisfy a money judgment and proceedings supplemental thereto as well as discovery in postjudgment proceedings.[28] The second is Rule 45, which is the general subpoena provision of the Federal Rules.[29]

There are two parts to Rule 69(a). Rule 69(a)(1) is focused on money judgments and the procedures for executing on them. It provides that "[a] money judgment is enforced by a writ of execution unless the court directs otherwise" and that the procedure on execution and proceedings supplementary to execution "must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."[30] A "writ of execution" is "[a] court order directing a sheriff or other officer to enforce a judgment, [usually] by seizing and selling the

---

[28] FED. R. CIV. P. 69(a)(2).

[29] FED. R. CIV. P. 45.

[30] FED. R. CIV. P. 69(a)(1).

judgment debtor's property."[31]

Rule 69(a)(2) focuses on obtaining discovery. It provides that "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person" – including the judgment debtor – "as provided in these rules or by the procedure of the state where the court is located."[32] Discovery "in aid of a judgment or execution" allows a judgment creditor "to find out about assets on which execution can issue or about assets that have been fraudulently transferred or are otherwise beyond the reach of execution."[33]

Thus, Rule 69(a)(1) focuses on the enforcement of a money judgment via writ of execution and the procedures surrounding execution. Rule 69(a)(2) authorizes discovery in aid of the money judgment or the execution thereof.

These provisions specify different relationships between federal and state law. Under Rule 69(a)(1), the procedure on a writ of execution, and "in proceedings supplementary to and in aid of judgment or execution," must follow state law *unless* federal law applies also, in which case federal law trumps state law. Under Rule 69(a)(2), however, parties seeking to obtain discovery – whether from a party or a nonparty – in aid of a money judgment or its execution may do so "as provided in these rules *or* by the procedure of the state where the court is located."[34] This language

---

[31] *Execution*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[32] FED. R. CIV. P. 69(a)(2).

[33] 12 CHARLES ALAN WRIGHT, ARTHUR R. MILLER ET AL., FEDERAL PRACTICE AND PROCEDURE § 3014 (3d ed. 2019).

[34] FED. R. CIV. P. 69(a)(2) (emphasis added).

is quite clear, particularly when viewed alongside the near opposite command of Rule 69(a)(1). Federal law *does not* trump state law with respect to obtaining discovery under Rule 69(a)(2). Instead, both federal and state procedures are available.[35]

In order for Chevron's subpoenas to be enforceable under federal law, they must comply with Rule 45. Under Rules 45(c)(1)(A) and 45(c)(2)(A), subpoenas may direct a person to sit for a deposition or produce documents only if the site of the deposition or the place where the documents must be produced is "within 100 miles of where the person resides, is employed, or regularly transacts business in person."[36] Salazar argues that these conditions are not met because he resides and is employed in Ecuador and his four admitted trips to the New York area do not constitute the regular transaction of business. Assuming these assertions are true and that the accounts Salazar has provided of his trips to the New York area are complete, the Court agrees.

Chevron argues that Rule 45's geographical restrictions do not apply where the subpoenaed party could submit the requested documents electronically.[37] But the plain text of Rule

---

[35] *See, e.g., El Salto, S. A. v. PSG Co.*, 444 F.2d 477, 484 (9th Cir. 1971) ("A judgment creditor proceeding under Rule 69(a) may utilize either state practice or the Federal Rules for taking depositions."); *First City, Texas-Houston, N.A. v. Rafidain Bank*, 197 F.R.D. 250, 256 (S.D.N.Y. 2000) ("[W]hen Rule 69 discovery is sought from a party represented by an attorney, service may proceed either under Rule 5(b) of the Federal Rules of Civil Procedure or under the rules of service established in the relevant state."), *aff'd sub nom. First City, Texas Houston, N.A. v. Rafidain Bank*, 281 F.3d 48 (2d Cir. 2002); *Retamco Operating, Inc. v. Carone*, No. 04-cv-02997 (CBM) (RZX), 2007 WL 9752774, at *1 (C.D. Cal. June 29, 2007) (Rule 69(a) specifies that a "judgment creditor may use procedures under either State or federal law" and "does not require the judgment creditor to make an election between federal and state procedures.").

[36] FED. R. CIV. P. 45(c)(1)(A), (2)(A).

[37] Chevron Mem. 16-17.

11

45 is to the contrary. It unambiguously and without exception restricts the location of a deposition or production site to "within 100 miles of where the person resides, is employed, or regularly transacts business in person."[38] Rule 45, however, has no bearing on whether the subpoenas are consistent with state law.

New York CPLR 5224(a) authorizes document and deposition subpoenas in aid of enforcing a money judgment.[39] It contains no geographical limitation similar to that of Rule 45. Indeed, CPLR 3110(2) expressly authorizes the deposition of a nonparty "within the [New York State] county *in which he is served.*"[40] Because Salazar was served in Manhattan, the geographical limitations of Rule 45 are irrelevant under New York law.[41] Thus, to the extent that the subpoenas command discovery in aid of the Money Judgments or execution thereof, they are enforceable under Rule 69(a)(2) and the CPLR without regard to Rule 45.

The second and third categories of documents sought by the subpoenas clearly come

---

[38] FED. R. CIV. P. 45(c)(1)(A).

[39] N.Y. CPLR 5224(a)(1)-(2).

[40] N.Y. CPLR 3110(2) (emphasis added).

[41] CPLR 5224(c) states that a party seeking a deposition or documents via subpoena may do so "upon not less than ten days' notice to the person subpoenaed, unless the court orders shorter notice." Salazar argues in his reply brief that Chevron's subpoenas are invalid because they provided only two day's notice. But he did not advance this argument in his original memorandum in support of his motion to quash *or* in his supplemental memorandum in which the Court invited him to address the effect of Rule 69 on his motion. *See* Salazar Mem.; Supplemental Memorandum of Law in Support of Non-Party Patricio Salazar Cordova's Motion to Quash [DI-2367]. "Issues raised for the first time in a reply brief are generally deemed waived." *Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 91 (2d Cir. 2010). Further, any notice problem is mooted by the fact that Salazar now has been on notice for several months of Chevron's subpoenas. Under these circumstances, the Court would modify the subpoenas to bring them into compliance with the notice provision.

within Rule 69(a)(2). They focus on documents relating to Donziger's attempts – or the attempts of those acting on his behalf – to profit from the Ecuador Judgment. There is a direct link between Donziger's assets or expected future assets and assets available to satisfy the Money Judgments.[42]

At first blush, the first category of documents requested appears to be broader. It seeks "documents relating to *any* attempted or completed sale, assignment, or transfer of rights, title, claims, or interest in or to any proceeds or other interest, whether held directly or indirectly, in the Ecuador Judgment, enforcement of the Ecuador Judgment, or proceeds of such enforcement."[43] One might argue that this information would be relevant only to whether individuals or entities other than Donziger have violated the Default Judgment and the RICO Judgment.

But considerable evidence demonstrates that the first request, like the other two, focuses on Donziger's assets and, thus, Donziger's ability to satisfy the Money Judgments. At least $1.53 million Donziger collected from the sale or attempted sale of the Ecuador Judgment was deposited, directly or indirectly, into Donziger or Donziger-related bank accounts.[44] And in testimony given under oath, Donziger took the position that at least some of the funds he raised from selling shares in the Ecuador Judgment, if not all of that money, belonged to him. For example,

---

[42] These materials may be relevant also to the enforcement of the RICO Judgment and the Default Judgment. But nothing prohibits a party from using materials discovered through a subpoena valid under Rule 69 for other purposes, as well.

[43] Salazar Dec. Ex. A at 5 (emphasis added).

[44] *See Chevron*, 384 F. Supp. 3d at 482-85 (noting Donziger's "apparent failure or refusal to maintain the funds in a separate account" and citing evidence that investor funds "went directly into his personal account," "directly into a Donziger & Associates [Donziger's law firm] account," or indirectly into these accounts after being funneled through other accounts that Donziger controlled).

when asked about $200,000 that he raised by selling shares of the Ecuador Judgment to Pink Floyd front man Roger Waters,[45] Donziger testified: "I dispute the idea, just to be clear, . . . that these were client funds at the time I received them."[46] Similarly, when asked about a wire transfer of $342,000 he received from Aaron Marr Page that was marked as being for the benefit of the ADF, Donziger was asked whether this was "client money when it hits your account."[47] Donziger replied "No," testifying: "I had millions of dollars owed to me and when it hit my account it became my money and I hoped to . . . keep it all."[48] Moreover, under his November 2017 retainer agreement, Donziger has power of attorney over ADF. He has the authority to "direct and manage all current and future legal, political, and public relations efforts in connection with the enforcement of the [Ecuador Judgment]," including "the power to negotiate – and with prior consultation and approval by the [ADF], also to finalize and execute – financing agreements granting a percentage interest in any recovery related to the [Ecuador Judgment]."[49] This evidence shows that there is a direct nexus between Donziger's assets and documents relating to any attempted sale, transfer, or other transaction involving sales of the Ecuador Judgment. It is certainly enough for the Court to conclude

---

[45] *See id.* at 483 (documenting these transactions).

[46] Transcript, *In re Donziger*, RP # 2010.7008 (Departmental Disciplinary Committee First Jud. Dep't, Sept. 18, 2019) 606:2-5 [DI-2358-1].

[47] Transcript, *In re Donziger*, RP # 2010.7008 (Departmental Disciplinary Committee First Jud. Dep't, Sept. 18, 2019) 794:2-6 [DI-2454-12].

[48] *Id.* at 784:7, 784:10-15.

[49] Declaration of Anne Champion in Support of Chevron Corporation's Motion to Hold Steven Donziger in Contempt of Court or his Failure to Comply with the RICO and Default Judgments and the April 16, 2018 Restraining Notice, Ex. 23 at 2 [DI-2091-23].

that Chevron's first document request seeks discovery in aid of the Money Judgments against Donziger or execution thereof.

The subpoenas therefore are enforceable under Rule 69(a)(2). But even if Salazar had persuaded the Court that some or all of the materials Chevron seeks do not fall within the scope of Rule 69(a)(2), the Court would enforce the subpoenas on an alternative ground. Under Rule 45(d)(3)(A)(ii), a court "must quash *or modify* a subpoena that . . . requires a person to comply beyond the geographical limits specified in Rule 45(c)."[50] "[M]odification is generally preferred over quashing of a subpoena."[51] And that would be the appropriate remedy here if any remedy were warranted. The documents and deposition Chevron seeks are relevant to its attempts to enforce the RICO Judgment, the Default Judgment, and the Money Judgments against Donziger. Thus, in the event that Rule 69(a)(2) did not apply, the Court would modify the subpoenas to order that Salazar produce the requested documents, and submit to a deposition, in the Quito, Ecuador area or another location agreed upon by the parties.

*II.  Privilege Under Ecuadorian Law*

There remains the question of whether modifying the subpoena would be futile

---

[50] FED. R. CIV. P. 45(d)(3)(A)(ii) (emphasis added).

[51] 9 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 45.50[5], at 45-77 (3d ed. 2015).

Salazar argues that "the vast majority of courts have interpreted Rule 45(d)(3)(A)(ii) to require the quashing of subpoenas violating the 100-mile rule." Salazar Mem. 5. But the authority Salazar cites does not support his assertion, which, in any event, is contrary to the text of Rule 45 and sound policy. *See, e.g., Probulk Carriers Ltd. v. Marvel Int'l Mgmt. & Transp.*, 180 F. Supp. 3d 290, 294 (S.D.N.Y. 2016) (modifying a subpoena that violated the geographical limits specified in Rule 45(c)).

because the material and testimony Chevron seeks is protected under Ecuadorian privilege law. Salazar argues, without any specificity, that all such documents and possible testimony "are likely" protected.[52] He has not, as required by Rule 45(e)(2)(A)(ii) and Local Civil Rule 26.2, provided Chevron a privilege log or otherwise offered any significant detail that would allow Chevron or the Court to understand what materials he wishes to withhold and why, in his view, they are subject to an applicable privilege.[53] Moreover, claims of attorney-client privilege relating to testimony must be asserted in response to specific questions.[54]

Salazar argues that requiring him to comply with Rule 45(e)(2)(A)(1) and Local Civil Rule 26.2 would impose upon him an "undue burden" because the subpoena is "facially improper."[55] But that would not be a legitimate excuse even if the subpoenas were invalid – and they are not.[56]

---

[52] *E.g.*, Salazar Mem. 9.

[53] *See* FED. R. CIV. P. 45(e)(2)(A)(ii) ("A person withholding subpoenaed information under a claim that it privileged . . . must . . . describe the nature of the withheld documents, communications, or tangible things that, without revealing information itself privileged or protected, will enable the parties to assess the claim."). Salazar recognizes his duty to submit a privilege log and concedes that this Court in this litigation has held that, under certain circumstances, a failure to submit a privilege log can constitute waiver of a privilege assertion. *See* Salazar Mem. 8 (citing *In re Chevron Corp.*, 749 F. Supp. 2d 170, 183 (S.D.N.Y.), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010) (unpublished)).

[54] *See* 24 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5507 (2019) ("One cannot assert the privilege by a blanket refusal to testify; there must be specific objection to particular questions calling for privileged information." (footnote omitted)).

[55] Salazar Mem. 8 n.5.

[56] *Cf. In re Chevron Corp.*, 749 F. Supp. 2d 141, 168 n.157 (S.D.N.Y. 2010) ("Donziger has advanced no persuasive reason why he should not be compelled to claim privilege in the same manner as any other litigant – providing a privilege log enumerating the documents

He asks alternatively for an opportunity to provide a privilege log if the Court enforces the subpoenas. The Court will grant him this opportunity on the terms described below.

*Conclusion*

The motion to quash is denied. Salazar is directed to:

1. Produce to Chevron all documents responsive to the deposition subpoena to which he asserts no claim of privilege no later than March 11, 2020.

2. To the extent a good-faith argument for privilege may be asserted, produce a privilege log describing, in accordance with Rule 45(e)(2)(A) and Local Rule 26.2, the nature of any and all documents, communications, or tangible things responsive to the September 17, 2019 document subpoena no later than March 11, 2020.

3. Appear for a deposition at such location and on such date or dates as the parties may agree by written stipulation or, in default of a stipulation, at the Manhattan offices of Chevron's counsel on a date or dates to be fixed by the Court.

SO ORDERED.

Dated: February 11, 2020

Lewis A. Kaplan
United States District Judge

---

as to which privilege is claimed, claiming privilege in response to deposition questions, and in each case providing such information as may be necessary to make out his claim. Although Donziger claims that a privilege review of his files would be 'time consuming' and 'complicated,' the Court is not persuaded that he should not be required to conform to the usual rules . . . ."), *aff'd sub nom. Lago Agrio Plaintiffs*, 409 F. App'x 393.