UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
CHEVRON CORPORATION,   :
:
    Plaintiff,   :
:
 v.   :  11 Civ. 0691 (LAK)
:
STEVEN DONZIGER, *et al*.,   :
:
    Defendants.   :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CHEVRON CORPORATION'S OPPOSITION TO JAMES BAILEY'S MOTION TO WITHDRAW AS COUNSEL FOR PATRICIO SALAZAR**

            GIBSON, DUNN & CRUTCHER LLP
            200 Park Avenue
            New York, New York 10166-0193
            Telephone: 212.351.4000
            Facsimile: 212.351.4035

            STERN, KILCULLEN & RUFOLO LLC
            325 Columbia Tpke, Ste 110
            P.O. Box 992
            Florham Park, New Jersey 07932-0992
            Telephone: 973.535.1900
            Facsimile: 973.535.9664

            *Attorneys for Plaintiff Chevron Corporation*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .............................................................................................................................. 2

LEGAL STANDARD...................................................................................................................... 7

ARGUMENT.................................................................................................................................... 8

    A.    The Motion Provides Insufficient Information to Justify Withdrawal Based on Termination................................................................................................................... 8

    B.    Bailey Falls Well Short of Justifying Withdrawal Based on Non-Payment of Fees ............................................................................................................................ 11

    C.    At a Minimum, the Court Should Impose Safeguards to Ensure the Orderly Continuation of These Proceedings ................................................................................ 14

CONCLUSION................................................................................................................................ 16

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*,
  No. 1:10 C 2333 MEA, 2014 WL 1087934 (S.D.N.Y. Mar. 19, 2014)...........7, 8, 9, 11, 14, 15

*Chevron Corp. v. Donziger*,
  384 F. Supp. 3d 465 (S.D.N.Y. 2019)......................................................................................2

*Chevron Corp. v. Donziger*,
  974 F. Supp. 2d 362 (S.D.N.Y. 2014)......................................................................................3

*Chevron Corp. v. Salazar*, 275 F.R.D. 437 (S.D.N.Y. 2011) ......................................................5, 6

*Ellis v. Jean*,
  No. 10 CIV. 8837 AJN KNF, 2013 WL 662454 (S.D.N.Y. Feb. 20, 2013)..................8, 11, 12

*Grossman v. Schwarz*, 125 F.R.D. 376 (S.D.N.Y. 1989) ................................................................6

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
  No. 16CV1318GBDBCM, 2017 WL 5067432 (S.D.N.Y. May 9, 2017)................................14

*Rophaiel v. Alken Murray Corp.*,
  No. 94 CIV. 9064 (CSH), 1996 WL 306457 (S.D.N.Y. June 7, 1996) ...................8, 12, 14, 15

*S.E.C. v. Gibraltar Glob. Sec., Inc.*,
  No. 13 CIV. 2575 GBD JCF, 2015 WL 2258173 (S.D.N.Y. May 8, 2015)..... 2, 7, 8, 9, 11, 15

*Towns v. Morris*,
  50 F.3d 8 (4th Cir. 1995) .......................................................................................................15

*United States v. Estate of Machat*,
  No. 08 CIV. 7936 JGK, 2011 WL 2119750 (S.D.N.Y. May 24, 2011) .................................15

*United States v. Parker*,
  439 F.3d 81 (2d Cir. 2006).......................................................................................................8

*United States v. Stein*,
  488 F. Supp. 2d 370 (S.D.N.Y. 2007)....................................................................................13

## PRELIMINARY STATEMENT

James Bailey, who has represented Patricio Salazar Cordova ("Salazar") in these proceedings, has moved to withdraw as Salazar's counsel, based on his assertions that Salazar has not paid his fees and has terminated him. Bailey's cursory motion and supporting declaration provide little or no information regarding Salazar's alleged inability to pay and the circumstances of his counsel's "termination," but coincided with Salazar's previously-agreed deadline to produce a privilege log. But there is also a troubling subtext here about Donziger and his associates evading this Court's orders that has become a pattern in this litigation and warrants particular scrutiny. For all of these reasons, Bailey's motion should be denied.

Although Chevron Corporation ("Chevron") would not ordinarily oppose a motion to withdraw, the circumstances here are far from ordinary. Indeed, they are reminiscent of the collusive *Cordova* action that Donziger and the LAPs orchestrated to evade U.S. discovery orders and for which they got sanctioned as a result. Granting Bailey's motion would leave unrepresented a foreign national who has disregarded this Court's discovery order and is now attempting to use the Ecuadorian authorities as an excuse to delay or defeat Chevron's efforts to obtain discovery. Despite being properly served with post-judgment subpoenas and ordered by this Court to comply with those subpoenas by producing documents, submitting a privilege log, and appearing for a deposition in Manhattan, Salazar has failed to do any of those things. Salazar has produced no documents and after initially agreeing to produce a privilege log by March 23, 2020 as ordered, his counsel then brought this motion to evade that obligation. Ex. 4 to Declaration of Andrea Neuman ("Neuman Decl."). And in a message sent via Bailey to Chevron as his supposed "final act" as Salazar's counsel, Salazar claimed that "no order of a Foreign Judge can" override his relationship with his Ecuadorian clients, which he claims prevents him from producing any relevant information and declined to come to Manhattan for the deposition. Ex. 1 to

Neuman Decl. Instead of complying with this Court's order, Salazar claims he will seek an opinion from the Ecuadorian bar regarding whether he should follow this Court's directive—an improper strategy that appears to be modeled off the sham *Cordova* lawsuit that the LAPs and their counsel sought to use to block discovery in this action.

Under the circumstances here, this Court should require Bailey to produce further information regarding, among other things, his purported termination and Salazar's alleged inability to pay before allowing him to withdraw from this action. Additionally, given Salazar's non-compliance with the Court's order and the risk that Bailey's withdrawal could "delay—perhaps indefinitely—the already overdue production of documents" that this Court has ordered, Bailey's withdrawal should be conditioned on Salazar's fulfillment of his discovery obligations. *S.E.C. v. Gibraltar Glob. Sec., Inc.*, No. 13 CIV. 2575 GBD JCF, 2015 WL 2258173, at *3–4 (S.D.N.Y. May 8, 2015) (denying counsel's motion to withdraw when granting the motion would "reward [] dilatory tactics" and "disrupt the proceedings"). Finally, if the Court is inclined to permit Bailey to withdraw and to allow Salazar to proceed *pro se*, it should impose sufficient safeguards to ensure the orderly continuation of this litigation.

## BACKGROUND

As a result of defendant and judgment-debtor Steven Donziger's repeated and continuing discovery obstruction, Chevron has been forced to resort to extensive third-party discovery, including from Salazar, to obtain information relevant to both Donziger's compliance with the RICO Judgment and the location of assets on which Chevron could levy to satisfy the millions of dollars of money judgments against Donziger that it now holds. As this Court has noted, Defendant Steven Donziger "largely has stonewalled" post-judgment discovery in this matter. *Chevron Corp. v. Donziger*, 384 F. Supp. 3d 465, 472 (S.D.N.Y. 2019). Donziger's resistance to producing any meaningful discovery has been so extreme, including—even in the

2

face of significant civil contempt coercive sanctions—refusing to comply with this Court's orders regarding the forensic imaging of his electronic devices and accounts, that this Court charged him with criminal contempt. Dkt. 2276.

In furtherance of its effort to obtain discovery, on September 17, 2019, Chevron served Salazar, in person, with post-judgment subpoenas to produce documents and testify at a deposition while he was in New York City to testify at Donziger's bar hearing. Although the parties disagree regarding the extent of Salazar's involvement in the underlying litigation, this Court found that Salazar has served as outside counsel for the FDA—an entity "controlled" by Donziger, *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 392 (S.D.N.Y. 2014), *aff'd*, 833 F.3d 74 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2268 (2017)—since at least January 2016 and is a beneficiary of the Ecuadorian judgment. Dkt. 2455 at 4–5. In that capacity, Salazar "overs[aw]" the enforcement of the Ecuadorian judgment in Ecuador and around the world. *Id*. at 5 (citation and quotation marks omitted). In fact, Salazar actively participated in Donziger's contemptuous effort to raise funds through the sale of interests in the Ecuadorian judgment. *See* Dkt. 2376 at 3–4. In short, Salazar has been at the very center of the efforts to enforce the fraudulent Ecuadorian judgment and to violate this Court's injunction (to which his client, the FDA, has been directly subject since April 2018, *see* Dkt. 1985).

Salazar obtained an extension to respond to Chevron's subpoenas by promising to comply with them and appear for a deposition in Manhattan if ordered by this Court. Dkt. 2377-18. Salazar then moved to quash Chevron's subpoenas, raising two principal arguments. First, Salazar claimed that the subpoenas did not comply with Rule 45 of the Federal Rules of Civil Procedure. Second, he argued that the Court should quash the subpoenas outright because the materials Chevron sought were allegedly protected by Ecuadorian privilege. *See* Dkt.

3

2350. Bailey represented Salazar during these negotiations with Chevron and appears as counsel of record on Salazar's motion to quash and subsequent briefing.

In February, this Court denied Salazar's motion to quash in all respects. *See* Dkt. 2455. The Court found that Rule 69(a) of the Federal Rules of Civil Procedure authorized Chevron to rely on either New York judgment enforcement rules or the Federal Rules of Civil Procedure in serving the subpoenas and that both subpoenas were valid as a matter of New York law. *Id*. at 8–14. Alternatively, the Court found that it could modify the subpoenas to comply with Rule 45 of the Federal Rules and stated that, if necessary, it would exercise that discretion. *Id*. at 14.

With respect to Salazar's privilege objection, the Court found that Salazar raised his argument "without any specificity," failed to produce a privilege log "as required by Rule 45(e)(2)(A)(ii) and Local Civil Rule 26.2," and further failed to "otherwise offer[] any significant detail that would allow Chevron or the Court to understand what materials he wishes to withhold and why, in his view, they are subject to an applicable privilege." *Id*. at 15. As the Court noted, Salazar's motion to quash *recognized* his obligation to produce a privilege log under the applicable rules and *specifically requested* the opportunity to submit such a log if the Court found the subpoenas were enforceable: "We [Salazar] respectfully request that, should the Court enforce the subpoenas and require production from Mr. Salazar, that he be permitted to provide a privilege log at the future deadline for responding to the subpoena." Dkt. 2350 at 8–9 n.5; *see also* Dkt. 2455 at 16.

The Court ordered Salazar to produce documents by March 11, 2020. Dkt. 2455 at 16. In response to Salazar's request for the opportunity to produce a privilege log, the Court pro-

4

vided that "[t]o the extent a good-faith argument for privilege may be asserted, [Salazar is directed to] produce a privilege log describing, in accordance with Rule 45(e)(2)(A) and Local Rule 26.2, the nature of any and all documents, communications, or tangible things responsive to the September 17, 2019 documents subpoena no later than March 11, 2020." *Id.* The Court also ordered Salazar to appear for a deposition at the Manhattan offices of Chevron's counsel on a date agreed to by the parties or, alternatively, a date set by the Court. *Id.* Chevron had already agreed that it would pay Salazar's airfare to New York. Ex. 2 to Neuman Decl.

On March 5, 2020, Chevron reached out to Bailey to confirm the logistics of Salazar's production. Ex. 3 to Neuman Decl. In response, Bailey asked to meet and confer regarding the Court's order. *Id.* On March 9, Chevron agreed to extend Salazar's deadline to produce a privilege log from March 11 to March 23. *Id.* Chevron did not agree to extend Salazar's deadline to produce responsive, non-privileged documents, which remained March 11. *Id.* On March 11, Salazar did not produce any documents. On March 23—the new deadline to produce a privilege log—Bailey requested an additional meet and confer and requested a further extension. *Id.* During that meet and confer, Bailey also requested that Chevron grant Salazar an indefinite extension so that Salazar could seek an opinion from the Ecuadorian bar regarding the scope of his duties under Ecuadorian law. Neuman Decl. ¶ 4. As a professional courtesy, Chevron agreed to extend Salazar's deadline to produce a privilege log until March 27, but it did not agree to any extension to permit Salazar to seek an opinion from the Ecuadorian bar. *Id.*

On March 27, Salazar still did not produce a privilege log.[1] Instead, Bailey filed his mo-

---

[1] Salazar's failure, yet again, to produce a timely privilege log waives any privilege he may have asserted. *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 447 (S.D.N.Y. 2011), *objections*

5

tion to withdraw, stating he had been terminated by Salazar due to unspecified "strategic and tactical differences" and an asserted unwillingness on Salazar's part to "incur additional attorneys' fees, which he could not afford to pay." Dkt. 2467 at ¶¶ 3–4. Additionally, Bailey stated he was seeking to withdraw because "Salazar has failed to pay any of [Bailey's] fees to date." *Id*. at ¶ 5. Bailey claimed that "Salazar has indicated he does not have the resources to pay our invoices," but provided no evidence to support that assertion. *Id*. at ¶ 12.

Within minutes of filing his motion to withdraw, Bailey sent Chevron's counsel an email message notifying them of the motion and purporting "as a final act" on behalf of Salazar to transmit a message to Chevron from Salazar. Ex. 1 to Neuman Decl. In that message, Salazar stated that he was subpoenaed "by surprise," claimed to be "subject to the Ecuadorean Law about the professional secret as an Ecuadorean Lawyer," and contended that "no order of a Foreign Judge can rule over that relationship." *Id*. Salazar claimed his clients instructed him "not to disclose any of the information [sought by Chevron's subpoenas] because all of it is protected under the Ecuadorean Professional Secret." *Id*. Salazar stated that "in [his] opinion," responding to any of Chevron's requests, or even "present[ing] a privilege log," would violate his duties under Ecuadorian law and subject him to liability in Ecuador. *Id*. Contradicting his prior agreement to return to the United States for a deposition and this Court's order requiring a deposition in Manhattan, Salazar stated that if the Ecuadorian bar issued an opinion permitting him to share some information, he would produce the permissible documents and negotiate a time for a deposition via video conference. *Id*.

---

*overruled*, No. 11 CIV 3718 LAK JCF, 2011 WL 13243797 (S.D.N.Y. Aug. 16, 2011); *Grossman v. Schwarz*, 125 F.R.D. 376, 386 (S.D.N.Y. 1989).

After making it clear that he had no intention of complying with this Court's order, Salazar stated that "demonstrating [his] good faith to collaborate" he was seeking an opinion of the Ecuadorian bar regarding what information (if any) he could provide. *Id.* Salazar claimed that "the alternative that [he was] putting forward is of [sic] Chevron's interest rather than [his], since this would enable Chevron to have lawful access to the information that was requested." *Id.* Despite the obviously coordinated nature of the motion to withdraw and the "final act" message, Bailey's motion to withdraw did not disclose to the Court the existence or content of Salazar's "final" "message."

## LEGAL STANDARD

S.D.N.Y. Local Rule 1.4 provides that "[a]n attorney who has appeared as attorney of record for a party . . . may not withdraw from a case without leave of the Court granted by order" and that "[s]uch an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal." "When considering whether to grant a motion to dismiss, district courts analyze the reasons for withdrawal and the impact of the withdrawal on the timing of the proceeding." *S.E.C. v. Gibraltar Global. Sec., Inc.*, No. 13 CIV. 2575 GBD JCF, 2015 WL 2258173, at *1 (S.D.N.Y. May 8, 2015); *see also Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*, No. 1:10 C 2333 MEA, 2014 WL 1087934, at *1–2 (S.D.N.Y. Mar. 19, 2014).

While termination of the attorney is "generally [a] satisfactory" reason for withdrawal under Local Rule 1.4, *Gibraltar Global*, 2015 WL 2258173, at *1, courts have denied motions to withdraw based on termination where "no reason has been offered" for termination, *Bruce Lee Enters., LLC*, 2014 WL 1087934, at *3. And termination has been held to be an insufficient reason for withdrawal where the client has not complied with court orders regarding discovery and granting "withdrawal would further delay—perhaps indefinitely—the already overdue production of documents and the scheduling of the [client's] deposition[]." *Gibraltar Global*, 2015 WL

7

2258173, at *3.

"Non-payment of legal fees, without more, is not usually a sufficient basis to permit an attorney to withdraw from representation." *United States v. Parker*, 439 F.3d 81, 104 (2d Cir. 2006) (citation and quotation marks omitted). Indeed, "[i]n most cases . . . courts have permitted counsel to withdraw for lack of payment only where the client either deliberately disregarded financial obligations or failed to cooperate with counsel." *Id.* (citation and quotation marks omitted); *see also* Dkt. 1910 at 2. To justify withdrawal based on non-payment of fees, courts routinely require counsel to submit "tax returns" or "financial statements demonstrating" the client's inability to pay. *Rophaiel v. Alken Murray Corp.*, No. 94 CIV. 9064 (CSH), 1996 WL 306457, at *2 (S.D.N.Y. June 7, 1996). A "hearsay statement attributed to" the client that asserts an inability to pay is "to no avail." *Ellis v. Jean*, No. 10 CIV. 8837 AJN KNF, 2013 WL 662454, at *1 (S.D.N.Y. Feb. 20, 2013).

**ARGUMENT**

**A.    The Motion Provides Insufficient Information to Justify Withdrawal Based on Termination**

Bailey claims that this Court must grant his motion to withdraw because Salazar has terminated the representation. Dkt. 2468 at 1. He is wrong. While the ethical rules may impose *on Bailey* a duty to seek to withdraw once terminated, that does not mean that *this Court* must automatically grant him permission to withdraw. Although termination can serve as the basis for withdrawal, courts in the Southern District and elsewhere have denied leave to withdraw based on termination when "no reason" was offered for the termination and there was no evidence that there were "irreconcilable . . . differences" between the attorney and client, *Bruce Lee Enters., LLC*, 2014 WL 1087934, at *2, or where withdrawal would significantly delay discovery, *Gibraltar Global*, 2015 WL 2258173, at *3.

8

In *Gibraltar Global*, for example, the Court denied defense counsel's motion to withdraw based on termination and non-payment of fees where the defendants had failed to produce documents or appear for depositions as ordered by the Court. 2015 WL 2258173, at *4. The Court reasoned that "withdrawal would further delay—perhaps indefinitely—the already overdue production of documents and the scheduling of the defendants' depositions" and any efforts to continue discovery would be "further frustrated" because the plaintiff lacked the ability to communicate directly with the defendants. *Id*. at *3. As a result, the Court denied the request for withdrawal and conditioned any future request to withdraw on a showing that the defendants had complied with their discovery obligations and appeared for depositions in New York, as ordered. *Id*. at *4.

Here, Bailey states without elaboration that he was terminated due to unspecified "strategic and tactical differences" and an unwillingness to incur additional fees. Dkt. 2467 at ¶ 4. But Bailey's declaration does not include evidence of "irreconcilable . . . differences," *Bruce Lee Enters., LLC*, 2014 WL 1087934, at *3, with Salazar and fails to account for the fact that withdrawal would "further delay—perhaps indefinitely—the already overdue production of documents" ordered by this Court, *Gibraltar Global*, 2015 WL 2258173, at *3. Salazar's statement (ostensibly relayed second-hand in Bailey's "final act" email and made six months after Chevron first served him with subpoenas in September 2019) that he supposedly is seeking an opinion from the Ecuadorian bar regarding his obligation to produce documents in this matter amounts to a request for an indefinite extension of compliance with this Court's order without the consent of either Chevron and without seeking an order from this Court. In these circumstances, the Court should not grant withdrawal on such a minimal showing. The history of this litigation suggests that Salazar will attempt to use his alleged submission to the Ecuadorian bar—regarding which

9

he has offered no particulars—as a vehicle to attempt to justify his refusal to comply with his discovery obligations in this action. Salazar's ploy is similar to the *Cordova* lawsuit that the LAPs undertook in an effort to avoid producing documents in the underlying RICO litigation. *See* Dkt. 1529 at 25–27. The resemblance between Salazar's proposal and the *Cordova* suit is striking: both seek to avoid discovery obligations pursuant to orders of this Court by seeking a subsequent and contradictory decision from an Ecuadorian authority. Indeed, the scope of the discovery preclusion sought by the *Cordova* suit and Salazar's purported understanding of the materials exempt from discovery is almost identical. *Compare* Dkt. 1529 at 26 (quoting the *Cordova* ruling as prohibiting the disclosure of "any information [the defendants' counsel] have . . . that has been generated by, or is known to, [the defendants' counsel] by their representation and is available to them regarding the lawsuit against Chevron") *with* Ex. 1 to Neuman Decl. (Salazar claiming that he is prohibited from disclosing "any of the information" requested by Chevron's subpoenas "because all of it is protected under the Ecuadorean Professional Secret").

That Salazar could have (but apparently did not) seek such an opinion months ago, when he first raised the privilege issue, further demonstrates that this is nothing more than a bad-faith attempt to delay discovery. Indeed, as this Court has previously discussed in some detail, Ecuadorian privilege law does not shield documents from discovery in this action, because U.S. law governs under the appropriate choice-of-law analysis, *see* Dkt. 1529 at 59–67, 78–80—a conclusion Chevron argued applied with equal force to this circumstance, Dkt. 2376 at 28–31.

Granting Bailey's request to withdraw, coming at the same time that Salazar has announced his intention to disobey this Court's order, would lead to significant delay of this action. Bailey makes no representations regarding whether Salazar is seeking to substitute counsel or how Salazar intends to participate in this litigation going forward. Chevron is not permitted to

10

and has not communicated with Salazar directly, and Bailey provides no means to do so, further increasing the risk of delay. *See Gibraltar Global*, 2015 WL 2258173, at *3 (noting that the lack of a method to contact defendants directly weighed against withdrawal).

Because Salazar has not complied with his discovery obligations and withdrawal would likely delay discovery—"perhaps indefinitely"—this Court should condition Bailey's withdrawal on Salazar's production of documents, submission of a privilege log that complies with the local rules, and appearance at a deposition. *Gibraltar Global*, 2015 WL 2258173, at *4. At a minimum, this Court should require Bailey to demonstrate that he and Salazar have "irreconcilable … differences," *Bruce Lee Enters., LLC*, 2014 WL 1087934, at *3, and provide additional information regarding his termination, including whether Bailey participated in the development of Salazar's *Cordova*-like strategy to delay discovery. Finally, if withdrawal is granted, the Court should impose safeguards to ensure the orderly continuation of this litigation. *See infra* at C.

**B.      Bailey Falls Well Short of Justifying Withdrawal Based on Non-Payment of Fees**

Bailey also argues that the Court should grant him permissive withdrawal because Salazar supposedly has failed to pay Bailey's outstanding invoices. But Bailey's declaration does not provide sufficient information to support a finding of deliberate non-payment of fees. This Court should therefore require, at a minimum, a further showing before granting withdrawal based on Salazar's alleged non-payment of fees.

The only statement in Bailey's declaration regarding Salazar's ability to pay is a hearsay statement that Salazar has told Bailey he is unable to pay the fees associated with this litigation. See Dkt. 2467 ¶ 4. There is no Salazar declaration, much less any documentary evidence establishing Salazar's inability to pay. And Bailey's "hearsay statement" regarding the alleged inability to pay "attributed [to Bailey's client Salazar] is to no avail," *Ellis*, 2013 WL 662454, at *1—courts require a much more substantial showing. In *Ellis*, for instance, the court denied a

11

motion to withdraw where the only evidence of inability to pay was a hearsay statement from the client's "business manager" contained in an attorney declaration. *Id*. Similarly, in *Rophaiel*, counsel supported their motion to withdraw with hearsay statements from their clients and evidence of missed payments, but the court denied the motion, holding that showing was "not enough to justify withdrawal." 1996 WL 306457 at *2. The Court required that any further attempt to withdraw be supported by "tax returns" or "financial statements demonstrating the" clients' inability to pay. *Id*. This showing is important as, in its absence, "[i]t would be too easy for a defendant to stall proceedings by inducing the withdrawal of its attorney by non-payment of fees." *Id*.

A more detailed showing is required here because there is real reason to doubt Salazar's alleged inability to pay. The declaration's statement that Salazar's client—co-conspirator and defaulted defendant, the FDA—is "a non-profit organization acting on behalf of the indigenous population of Ecuador" is both disingenuous and misleading. Dkt. 2467 ¶ 12. Salazar has admitted in his affidavits to this Court that he has other, commercial clients, including apparently at least two clients he met with in New York. Dkt. 2349 at ¶ 9 (detailing travel to New York "to help two clients reach an agreement about a business they have together in Ecuador"). And at Donziger's bar hearing, Salazar testified that he is "part of the Board of Directors for the Quito Chamber of Commerce" and his legal practice is comprised of "[m]ostly corporate things, negotiations, mergers, acquisitions, [and] corporate structures." Ex. 5 to Neuman Decl. (Bar Tr. at 169:22–170:9). Additionally, as recounted in Chevron's opposition to the motion to quash, it also appears that Salazar possesses business interests in Florida. Dkt. 2376 at 5 n.2; Dkt. 2377-17 (Florida LLC annual report showing Salazar as the company's Managing Member).

Moreover, as this Court is well aware, the FDA is anything but a harmless "non-profit"

entitled to a sympathetic eye. The FDA was conceived of and is controlled by Donziger for the express purpose of furthering his attempt to defraud Chevron of billions of dollars. The FDA is also allegedly the sole beneficiary of a fraudulent, multibillion-dollar judgment it has sought to enforce all over the world and through which it has raised millions of dollars in litigation funding. Any implication that Salazar's association with the FDA is a reason to credit his representations regarding his ability to pay should be rejected.

This Court should also "consider the extent to which a more careful or prudent approach to the retainer agreement might have avoided the current problem." *United States v. Stein*, 488 F. Supp. 2d 370, 374 (S.D.N.Y. 2007) (denying motion to withdraw in part because counsel accepted an insufficient retainer at the outset of the litigation and did not otherwise ensure payment). Bailey's declaration appears to imply that he took on the representation of a foreign national, with whom he had no prior relationship, in a long-running, complex piece of civil litigation without obtaining any retainer payment or other assurance of compensation. *See* Dkt. 2467 ¶ 6. Given the long history of third-party litigation funders paying for legal expenses in this case, this issue requires further examination.

Although Bailey's declaration states that "*Salazar* has not made any payment to the firm in connection with this invoice" and that *Salazar* lacks the resources to pay his fees, he does not disclaim the possibility that a third party might settle Salazar's account after withdrawal or that individuals other than Salazar may have already made payments. Dkt. 2467 ¶¶ 9, 12 (emphasis added). It is possible that the declaration's omission of any discussion on this point is innocuous. But this Court has previously considered the well-documented history of legal expenses in this case being paid by investors and other third parties "bankrolling this and related cases" on behalf of the defendants when considering requests to withdraw based on the purported inability

13

of a client to pay legal fees. *See* Dkt. 1910 at 2 (denying leave to withdraw where counsel for the LAP Representatives claimed his clients lacked the ability to pay his fees when it was clear that "the LAP Representatives never have paid, and never were intended to pay, any part of the cost of defending them here" and counsel's declaration did not include any information regarding "the resources available to those bankrolling" the LAP Representatives' defense).

In light of Bailey's insufficient showing on this point and the circumstances of this case, the Court should, at a minimum, require additional information before granting any request to withdraw. Specifically, the Court should require the production of financial statements or other documents establishing Salazar's alleged inability to pay—including from his business interests in Florida. *Rophaiel*, 1996 WL 306457, at *2 (requiring the production of financial statements and tax returns). This Court should also require Bailey to explain why he undertook this representation without any retainer and further require him to produce a copy of his retainer agreement with Salazar and "all emails or other communications . . . concerning the Retainer Agreement" or payments between Bailey and Salazar or anyone acting on Salazar's behalf. *See Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16CV1318GBDBCM, 2017 WL 5067432, at *7 (S.D.N.Y. May 9, 2017) (conditioning withdrawal on such a production and noting that "[s]uch information is not itself privileged."). Finally, the Court should require representations from Bailey and Salazar that no person or entity other than Salazar has formally or informally agreed to or is expected to pay Salazar's legal fees or has previously paid any legal fees.

## C. At a Minimum, the Court Should Impose Safeguards to Ensure the Orderly Continuation of These Proceedings

This Court should "also consider whether the prosecution of the suit is likely to be disrupted by the withdrawal of counsel," *Bruce Lee Enters., LLC*, 2014 WL 1087934, at *2, and implement safeguards to ensure the orderly continuation of the litigation. In this case, a withdrawal

14

has the potential to prejudice Chevron substantially and threatens to bring these proceedings to a halt. Bailey's proposed withdrawal and Salazar's refusal to produce any documents or privilege log pending an opinion from the Ecuadorian bar would amount to an indefinite postponement of the discovery to which this Court already found Chevron is entitled. Such an indefinite discovery delay weighs heavily against allowing an unconditional withdrawal. *Gibraltar Global*, 2015 WL 2258173, at *4.

As discussed above, this Court should, at a minimum, require Bailey and Salazar to produce additional information regarding Bailey's termination, *see Bruce Lee Enters., LLC*, 2014 WL 1087934, at *3, and Salazar's alleged inability to pay, *Rophaiel*, 1996 WL 306457, at *2. This Court should also implement conditions on Bailey's withdrawal to promote the orderly continuation of this litigation.

Specifically, Chevron requests that the Court condition Bailey's withdrawal on the retention of substitute counsel or the fulfillment of Salazar's discovery obligations. *See Gibraltar Glob. Sec., Inc.*, 2015 WL 2258173, at *4; *Towns v. Morris*, 50 F.3d 8 (table) at *2 (4th Cir. 1995). If the Court were inclined to grant withdrawal and allow Salazar to proceed *pro se*, it should authorize email service of all future papers on Salazar and require Bailey to provide Chevron and the Court with sufficient contact information for Salazar, including his email address, physical address, and telephone number. *See United States v. Estate of Machat*, No. 08 CIV. 7936 JGK, 2011 WL 2119750, at *1 (S.D.N.Y. May 24, 2011) (ordering, in connection with a motion to withdraw, that "alternative service of all papers in this action is to be made on [the defendant] by e-mail to the address that counsel for [the defendant] has been using and also by ECF."). These provisions would provide assurance to Chevron and the Court that this request to withdraw is not intended to delay the proceedings and, at a minimum, provide Chevron with a

15

reliable method to serve any additional papers on Salazar, if necessary.

## CONCLUSION

Chevron respectfully requests that the Court deny Bailey's request to withdraw pending fulfillment of Salazar's discovery obligations in this matter, as well as the submission of additional information regarding the circumstances of Bailey's termination and Salazar's alleged inability to pay. In the alternative, Chevron requests that the Court impose safeguards sufficient to ensure the orderly continuation of this litigation.

Dated: April 10, 2020

New York, New York

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

/s/ Randy M. Mastro

Randy M. Mastro
Andrea E. Neuman
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035
Email: RMastro@gibsondunn.com
Email: ANeuman@gibsondunn.com

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520
Email: WThomson@gibsondunn.com

STERN, KILCULLEN & RUFOLO LLC
Herbert J. Stern
Joel M. Silverstein
325 Columbia Tpke, Ste 110
P.O. Box 992
Florham Park, New Jersey 07932-0992
Telephone:  973.535.1900
Facsimile:  973.535.9664
Email: hstern@sgklaw.com
Email: jsilverstein@sgklaw.com

*Attorneys for Chevron Corporation*

17