UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
:
CHEVRON CORPORATION, :
:
Plaintiff, :
:
v. : 11 Civ. 0691 (LAK)
:
STEVEN DONZIGER, *et al.*, :
:
Defendants. :
:
------------------------------------- x

**28 U.S.C. § 1746 DECLARATION OF SPENCER LYNCH IN SUPPORT OF CHEVRON CORPORATION'S LETTER BRIEF IN OPPOSITION TO RENEWED MOTION BY NONPARTIES JOSHUA RIZACK AND THE RISING GROUP CONSULTING, INC. FOR PAYMENT OF REASONABLE ATTORNEYS' FEES AND EXPENSES**

I, Spencer Lynch, declare as follows under 28 U.S.C. § 1746:

1. I am the Managing Director of Stroz Friedberg's EMEA business. I have worked at Stroz Friedberg for over 11 years. Prior to working for Stroz Friedberg, I worked for Ernst & Young performing forensic analysis and database analytics. I have testified as an expert in digital forensics in multiple courts, including the Northern, Eastern, and Southern Districts of New York, the High Court of Justice in the United Kingdom, criminal court in Italy, and before international tribunals.

2. In my capacity at Stroz Friedberg, my team and I have worked on this and related cases for over eight years. I testified as an expert witness in the forensic analysis of multiple forms of electronic media in both this action and in the Bilateral Investment Treaty arbitration between Chevron Corporation, et. al., and the Republic of Ecuador.

3. As part of my work in this matter, I have consulted with Counsel for Chevron regarding the Review, Production, and Forensic Inspection protocol that was ordered by the court on October 7, 2019 (the "Court Order"). Per that order, I was to meet with Crypsis and

agree a protocol to forensically analyse the data collected by Crypsis from Mr. Rizack (the "Protocol"). In addition, Counsel for Chevron asked that I review the estimated fees for that work. After Crypsis performed work under the Protocol and Chevron received invoices, I was asked to review the invoices for that work and provide feedback to Chevron as to whether the invoice was in-line with my expectations from my experience in the industry and conversations with Mr. Faulkner. This declaration summarises my opinions regarding that work.

**Crypsis's Proposed Work & Fees**

4.     In the weeks following the Court Order, Mr. Faulkner and I spent several hours on the phone, and discussed in detail the Protocol, and what steps should be taken to fully implement the work required under the Court Order. As a result of those conversations, on or around October 16, 2019, we agreed on a series of steps that were memorialised in a document titled "Forensic Recovery Protocol" (Attached hereto as Exhibit A). As part of my discussions with Mr. Faulkner, we also discussed Crypsis's proposed budget, of $60,000 to $70,000, which is confirmed in the "Forensic Recovery Protocol" document, and Crypsis agreed that they would not exceed that budget without approval and only "if unexpected exceptions arose during execution of the work." While a budget of $60,000 to $70,000 to analyse a single custodian's devices is higher than one might initially expect, it seemed reasonable to me as it had to account for a thorough and rigorous analysis of those devices.

**Review of Invoices**

5.     In January 2020, I was asked to review Invoice 230149, from Crypsis to "The Rising Group Consulting, Inc." for November 2019, and an associated Excel spreadsheet (Attached hereto as Exhibit B). As part of that review, I was asked to provide feedback as to whether the invoice appeared reasonable for the different tasks called for under the Protocol. I was also informed that Counsel for Mr. Rizack and/or Crypsis were requesting additional

2

approval for budget to complete the Protocol.

6.   As I informed Counsel for Chevron in January 2020, Invoice 230149 and the attached spreadsheet did not provide sufficient information for me to offer any feedback as to whether the fees were appropriate. Of the 110.5 hours listed in the spreadsheet, 102.75 hours were provided with the memo "Work on data recovery under Forensics Protocol." From that description alone, it is impossible for me to determine which of the Protocol steps were being executed, or which of the devices was being analysed.

7.   Generally, in conducting my review of the invoice and spreadsheet I noted that the level of detail provided is not what I would expect in an invoice for these types of services. Based on my experience invoicing clients for these types of services, I would expect more detailed information to be available that would allow someone to determine, even at a high level, what process or analysis was represented by the time for a line item, and which device or devices were being subjected to that analysis.

8.   I understand that in February 2020 that Counsel for Mr. Rizack provided Counsel for Chevron with an expanded Excel spreadsheet (Attached hereto as Exhibit C) providing additional information for the invoice line items. I performed an initial review of that spreadsheet and confirmed to Chevron that it was more aligned to the level of detail I would expect from such an invoice.

9.   However, I also noted in my review that there were some issues for which I considered it worthwhile to request additional detail, as absent that detail, the charges appeared higher than would be typical for the task called for under the Protocol. As an example, in my initial review, I noted that one line item refers to preparing to send data to an "LA Office." I do not understand why data would have been sent to an LA office when nothing in the protocol calls for data to be shipped to a remote Crypsis office, or for a task that would require such specialized knowledge that such knowledge would not be available in

the same office as Mr. Faulkner, or at least through remote access.

10.     I also observed that over 41 hours were spent imaging the devices made available by Mr. Rizack and making copies of those images. The spreadsheet provided by Crypsis identified that 22.25 hours were spent imaging the devices, and an additional 19.5 hours were spent making copies of those images. Based on my experience, 22.25 hours is on the high side of what I would consider typical to image a single custodian's devices, but depending on the circumstances could be reasonable. On the other hand, absent further information, it does not seem reasonable to bill nearly the same amount of time to copy those same images. Copying images is generally a straightforward process that requires significantly less expertise and time than creating the images themselves. In most circumstances, I would not expect it to take more than 30 minutes, and at most an hour, of billable time to make a copy of an image. I thus proposed that Chevron should enquire as to why so many hours were required for the imaging and copying.

11.     Finally, I noted that 91 hours, or just over $50,000 of the budget, was spent on "Recovering files and compare anything recovered with active files" over a period from October 23, 2019 to November 9, 2019. While I predicted that task may have taken a few hours of dedicated work, I would not have expected the task to take more than 11 8-hour days of billable time to complete. Generally, in any normal operation of a computer, files are deleted automatically by an Operating System. There are also actions, such as some ways of moving a file, that can appear as a deletion of one file, and a creation of a new file. Thus, it would be expected for there to be apparently deleted and/or recovered files for which to perform this analysis. The fact that this analysis took 11 days suggests there were many more apparently deleted files than is typical. Even then, 11 days is a very significant amount of time for this task. That is in part because I would expect the comparison to be facilitated through using spreadsheets or databases that would automate portions of the process. Like the

imaging, I proposed that Chevron should enquire as to why so many hours were required for that task.

12. After the Protocol and budget was agreed, the only time Mr. Faulkner and I communicated was to schedule and attend a telephone call on November 12, 2019 to discuss a technical point about the file types included in the deletion analysis. At no point did Mr. Faulkner contact me and explain that the work was going to significantly exceed the budget that Crypsis had proposed and that Chevron had approved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed at London, England on this 20 day of April, 2020.

Spencer Lynch