# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHEVRON CORPORATION,<br><br>                    Plaintiff,<br><br>        -against-<br><br>STEVEN DONZIGER, *et al.*,<br><br>                    Defendants. | 11 Civ. 0691 (LAK) (RWL) |

### Declaration of Joshua Rizack in Further Support of Renewed Application by Nonparties Joshua Rizack and The Rising Group Consulting, Inc. for Reasonable Attorneys' Fees and Expenses

I, Joshua Rizack, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am the President of The Rising Group Consulting, Incorporated. I make this declaration based on my personal knowledge.

2. For over 30 years, I have worked as a consultant for bankrupt and struggling companies, representing these entities in court as a bankruptcy trustee or administrator.

3. Steven Wirth is a corporate bankruptcy and reorganization attorney and partner at Akerman LLP. I have known Mr. Wirth for nearly two decades. We have worked together on a number of prior matters, including two current matters, one in the U.S. Bankruptcy Court for the Southern District of Florida and one in the U.S. Bankruptcy Court for the Southern District of New York. I am the court-appointed and approved liquidating trustee in both of these cases. In addition to doing business together, Mr. Wirth and I are also close personal friends.

4.	In April 2018, I received the subpoena from Chevron that is currently the subject of this fee application (the "Subpoena").

5.	On April 25, 2018, I emailed a copy of the Subpoena to Mr. Wirth because I was highly concerned that complying with the Subpoena might inadvertently result in the disclosure of privileged and confidential documents and/or communications that I had on my devices and in my accounts from unrelated bankruptcy cases with Akerman, as well as other law firms that I work with in connection with my consulting matters. A true and correct copy of my email to Mr. Wirth enclosing the Subpoena is attached hereto as **Exhibit A** (Privilege Log No. 9).

6.	At some point shortly after April 25, 2018, Mr. Wirth and I spoke over the phone to discuss the Subpoena, and, more specifically, my concerns about protecting the privilege and confidentiality of my bankruptcy matters. At the outset of that conversation, Mr. Wirth stated in no uncertain terms that he could not represent me in connection with the Subpoena.

7.	Generally aware of the significant legal fees other nonparties had incurred in responding to similar Chevron subpoenas – and seeking to avoid having to retain an attorney I knew I could not afford – I forwarded Mr. Wirth certain documents and emails concerning the Subpoena on sporadic occasions between April 2018 and July 2019.

8.	Attached hereto as **Exhibit B** (Privilege Log Nos. 7-8) are true and correct copies of two emails I sent to Mr. Wirth on June 13, 2018, roughly 20 minutes apart. The first email (sent at 10:47 a.m.) forwarded a letter that I received from Chevron's counsel, dated June 8, 2018, which had been so-ordered by Judge Kaplan on June 11, 2018. The second email (sent at 11:05 a.m.) enclosed the same June 8th letter before it had been so-ordered. In sending these emails to Mr. Wirth I asked simply: "What does the attached letter authorize?"

9. Although I do not specifically recall Mr. Wirth's response to my June 13th emails, I do recall that he was once again clear in his inability to represent me with respect to the Subpoena.

10. Attached hereto as **Exhibit C** (Privilege Log No. 10) is a true and correct copy of a February 4, 2019 email I sent to Mr. Wirth, which forwarded an email and letter that I received from Chevron's counsel, each also dated February 4, 2019. My email to Mr. Wirth simply asked: "Can you please take a look at the attached[?]" A true and correct copy of Mr. Wirth's February 4, 2019 response to my email is attached hereto as **Exhibit D** (Privilege Log No. 6).

11. Given the seriousness of the false accusations that Chevron asserted against me in its February 4, 2019 letter (Ex. C), Mr. Wirth agreed – as my close friend, not my lawyer – to assist me in preparing a response. To that end, while we were on the phone, I dictated a roughly one paragraph response to Mr. Wirth which he was typing. He subsequently "polished" the response that I dictated and emailed me a copy on February 5, 2019. Of the approximately 18 total emails that Mr. Wirth and I exchanged about the Subpoena, one-third of them were sent on February 5, 2019, in a span of 25 minutes, and consisted of less than 55 total words regarding corrected, revised and/or final drafts of the language I initially dictated to Mr. Wirth over the phone. True and correct copies of these February 5, 2019 emails are attached hereto as **Exhibit E** (combining Privilege Log Nos. 11-14, 17-18).

12. The next time I spoke to Mr. Wirth about the Subpoena was on February 24, 2019, when I forwarded him a February 22, 2019 email that I received from Chevron's counsel. I asked Mr. Wirth if he would review a response that I had drafted, noting that "I appreciate [his] help." Five minutes later, Mr. Wirth responded: "I think your response is fine." True and correct copies of these emails are attached hereto as **Exhibit F** (combining Privilege Log Nos. 3-5).

3

13. On or about February 25, 2019, I received another email from Chevron and forwarded it to Mr. Wirth, again asking if he would simply review my response. The next day, Mr. Wirth responded: "I think it's fine." True and correct copies of these February 25, 2019 and February 26, 2019 emails are attached hereto as **Exhibit G** (combining Privilege Log Nos. 1-2).

14. In or around July 16, 2019, I received a copy of Chevron's motion to compel mirror images of my electronic devices and media accounts. Dkt. 2266. At some point between July 16 and July 19, I called Mr. Wirth to tell him about Chevron's motion and ask whether he believes I now need to hire an attorney to represent me. I recall him stating that it was time for me to hire a lawyer with relevant experience and that he would think about who he can recommend.

15. On July 19, 2019, Mr. Wirth emailed me and advised that I contact Carlton Fields. He also emailed me a link to Michael Yaeger's biography on the Carlton Fields website. True and correct copies of two July 19, 2019 emails from Mr. Wirth are attached hereto as **Exhibit H** (combining Privilege Log Nos. 15-16).

16. Mr. Wirth never asked to be paid for any of the one-off legal advice that he provided me regarding the Subpoena, nor did we have an alternative fee arrangement of any kind.

17. Aside from the communications reflected in this Declaration, I never received any other legal advice or other services from Mr. Wirth as it relates to the Subpoena or any other matter pertaining to Chevron.

18. Mr. Wirth did not provide me with advice or other legal support when I collected, reviewed and produced documents to Chevron on 8 occasions between April 2018 and July 2019; he neither prepared me for nor attended either of the depositions that I appeared for in connection with the Subpoena; he never communicated with Chevron or any other party on my behalf as it relates to the Subpoena; and never provided any other counsel to me as it relates to the Subpoena,

4

aside from the sporadic advice discussed above.

19. While I did hope to receive certain legal advice from Mr. Wirth in contacting him about the Subpoena, at no time did I ever actually consider him to be my lawyer, or to otherwise represent me with respect to the Subpoena. To the contrary, as stated, Mr. Wirth advised me multiple times, in no uncertain terms, that he could *not* represent me. For this reason, I never believed I was represented by counsel as to the Subpoena when receiving advice from him between April 2018 and July 2019. It was not until I retained Carlton Fields in July 2019 that I considered myself "represented."

20. Accordingly, while it is my understanding that my communications with Mr. Wirth are protected by attorney-client privilege and/or the work product doctrine, in the interest of transparency with respect to the status of my legal representation before retaining Carlton Fields, I have decided to voluntarily waive those protections as it relates solely to my communications with Mr. Wirth concerning the Subpoena (*i.e.*, the communications reflected in this Declaration, which took place between April 2018 and July 2019). For the avoidance of doubt, this waiver does not apply to any other communications I have had with Mr. Wirth or any other attorney about any other subject matter at any time, specifically including the unrelated bankruptcy consulting matters for which Akerman LLP and various other law firms have been retained.

21. My attorneys have fully informed me of the consequences of waiving these protections, including the permanent nature of the waiver.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed at Westport, Connecticut on this 30th day of April, 2020.

_____
Joshua Rizack