**SEWARD & KISSEL LLP**

ONE BATTERY PARK PLAZA
NEW YORK, NEW YORK  10004

TELEPHONE:  (212) 574-1200
FACSIMILE:  (212) 480-8421
WWW.SEWKIS.COM

RITA GLAVIN
PARTNER
(212) 574-1309
glavin@sewkis.com

901 K STREET, N.W.
WASHINGTON, DC  20005
TELEPHONE:  (202) 737-8833
FACSIMILE:  (202) 737-5184

May 26, 2020

**VIA ECF**

Honorable Loretta A. Preska
U.S. District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Donziger*, 19 Cr. 561 (LAP); 11 Civ. 691 (LAK)

Dear Judge Preska:

      I write on behalf of the United States in response to defendant Steven Donziger's May 20, 2020 letter application for modification of release conditions to permit him to leave his apartment each day without advance permission, from 4:00 p.m. to 6:00 p.m., so long as he remains on the Upper West Side between 96th Street and 116th Street.  The Government opposes this request.

      At the May 18, 2020 conference, the defense made a very similar modification request, asking that the Court allow Mr. Donziger to be outside on the Upper West Side each day for a three-hour period.  May 18, 2020 Tr. at 19.  The Court expressed concern that "with a blanket three-hour block, I could be to the airport and on an airplane in three hours, so I'm not sure I'm ready for that."  *Id.* at 20.  The Government shares that concern.

      Following the May 18 conference, the Government conferred with one of Pretrial Services' ("PTS") location monitoring specialists,[1] who indicated that allowing a defendant on home detention with electronic monitoring to be outside each day for two hours—even within a certain radius—would be unusual absent a specific reason.  For defendants with home detention and location monitoring release conditions, the specialist indicated that requests to be outside are addressed with their PTS officer on a case-by-case basis.  The Government sees no reason to deviate from that practice here, given the findings the Court has already made regarding flight risk.  This is particularly true where, as the Government understands from PTS, Mr. Donziger has not been fully compliant with his release conditions.  Specifically, in March 2020, PTS

---

[1] Mr. Donziger's PTS Officer, Ms. Harmon, is not a location monitoring specialist and she referred the Government to one of those PTS specialists, with whom the Government consulted.

Hon. Loretta A. Preska
May 26, 2020
Page 2

approved Mr. Donziger's attendance at a specific event at Madison Square Garden with his son. Without informing PTS, Mr. Donziger did not go to the event and went someplace in Brooklyn instead. PTS only learned about Mr. Donziger's noncompliance when it later reviewed GPS data from his ankle monitor. This incident raises concern given the defendant's history of violating court orders, which was among the numerous reasons the Court found him to be a flight risk.

  Under the current release conditions, Mr. Donziger is expressly permitted to leave his apartment for family obligations, employment, education, religious services, medical treatment, attorney visits, court appearances, and "other activities approved in advance" by PTS.[2] Dkt. 4 at 4-5. In line with those release conditions, PTS has permitted Mr. Donziger to attend events with his son and go to the park to play basketball with his son—with PTS approving each activity in advance such that PTS knows exactly where Mr. Donziger will be and the duration. There is no reason to vary from this practice. As the Court noted on May 18, these circumstances "are really the inconvenience that befalls anyone who's been found to be a risk of flight" with release conditions of home detention and location monitoring. Tr. at 18.

Respectfully submitted,

*s/Rita M. Glavin*
Rita M. Glavin
Special Prosecutor

cc: Andrew J. Frisch, Esq.
   PTS Officer Lea Harmon

---

[2] The Government's understanding is that, generally, PTS requires specific requests to leave the home be made 48 hours in advance.