# SEWARD & KISSEL LLP

ONE BATTERY PARK PLAZA
NEW YORK, NEW YORK 10004

TELEPHONE: (212) 574-1200
FACSIMILE: (212) 480-8421
WWW.SEWKIS.COM

RITA M. GLAVIN
(212) 574-1309
glavin@sewkis.com

901 K STREET, N.W.
WASHINGTON, DC 20005
TELEPHONE: (202) 737-8833
FACSIMILE: (202) 737-5184

August 11, 2020

**VIA ECF**
Hon. Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

   Re: *United States v. Steven Donziger*, No. 19-cr-561 (LAP) [11-cv-691 (LAK)]

Dear Judge Preska:

  We respectfully submit this letter on behalf of the United States to request a conference, pursuant to the Second Circuit's guidance in *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982), to address potential conflicts of interest with respect to two of defendant Steven Donziger's four attorneys of record in this criminal case, Richard H. Friedman, Esq. and Zoe Littlepage, Esq. Mr. Friedman and Ms. Littlepage also represented Mr. Donziger at the civil RICO trial in *Chevron Corp. v. Donziger*, 11 Civ. 691 (the "Civil Case"). At the upcoming criminal contempt trial, we expect to introduce into evidence correspondence from August 2014 between Chevron's attorneys and Mr. Friedman, Ms. Littlepage and Mr. Donziger relating to Mr. Donziger's noncompliance with the RICO Judgment. While we do not intend to call Mr. Friedman or Ms. Littlepage as witnesses at trial, we bring this issue to the Court's attention given that their appearance on that correspondence could ostensibly make them unsworn witnesses or potentially impact a defense theory of the case. Our understanding is that Mr. Donziger has represented himself *pro se* in the post-judgment proceedings at issue in this criminal case.[1] However, upon review of the Civil Case docket we have not located an entry reflecting Mr. Friedman's or Ms. Littlepage's withdrawal as counsel.

  In addition, we bring to the Court's attention the fact that Mr. Donziger's compensation arrangement with Mr. Friedman and Ms. Littlepage for their work in the civil RICO trial included Mr. Donziger pledging a portion of his contingent fee interest in the Ecuadorian judgment to them. We understand that this was agreed upon before that civil trial and the RICO Judgment. Given the RICO Judgment's requirement that Mr. Donziger transfer and assign to

---

[1] In a March 25, 2018 filing during post-judgment proceedings, Mr. Donziger stated "I am currently representing myself *pro se* in this case and related collateral litigation," Civ. Dkt. 1969, and no counsel appeared on papers for Mr. Donziger during the post-judgment proceedings that commenced on March 19, 2018 with Chevron's motion for leave to conduct post-judgment discovery and hold Mr. Donziger in contempt.

Hon. Loretta A. Preska
August 11, 2020
Page 2

Chevron any contingent fee interest he has traceable to the Ecuadorian judgment, Mr. Friedman and Ms. Littlepage confirmed to us their understanding that the interest Mr. Donziger pledged to each of them from his contingent interest is extinguished. Thus, we do not think this presents a potential conflict but defer to the Court as to whether any further inquiry is warranted.

### I. Background

On July 31, 2019, defendant Steven Donziger was charged by Order to Show Cause with six counts of criminal contempt. Civ. Dkt. 2276. Two of those counts—Four and Five—concern the defendant's disobedience of paragraph one of the March 4, 2014 RICO Judgment which imposed

> . . . a constructive trust for the benefit of Chevron on all property, whether personal or real, tangible or intangible, vested or contingent, that Donziger has received, or hereafter may receive, directly or indirectly, or to which Donziger now has, or hereafter obtains, any right, title or interest, directly or indirectly, that is traceable to the [Ecuadorian] Judgment or the enforcement of the [Ecuadorian] Judgment anywhere in the world <u>including, without limitation, all rights to any contingent fee under the Retainer Agreement and all stock in Amazonia. Donziger shall transfer and forthwith assign to Chevron all such property that he now has or hereafter may obtain.</u>

Civ. Dkt. 1875 (emphasis added). In addition, paragraph 3 of the RICO Judgment directed that:

> Donziger shall execute in favor of Chevron a stock power transferring to Chevron all of his right, title, and interest in his shares of Amazonia, and Donziger and the LAP Representatives, and each of them, shall execute such other and further documents as Chevron reasonably may request or as the Court hereafter may order to effectuate the foregoing provisions of this Judgment.

*Id*.

Count Four charges Mr. Donziger with willful disobedience of the RICO Judgment by his willful failure and refusal to assign to Chevron his rights to a contingent fee under a 2011 Retainer Agreement from March 4, 2014 to September 3, 2018 as required. Count Five charges Mr. Donziger with his willful disobedience of the RICO Judgment by his willful failure and refusal to assign to Chevron his property right to a November 1, 2017 ADF Contingent Fee Grant from November 1, 2017 to May 27, 2019 as required.

To provide background and context to the defendant's conduct with respect to Counts Four and Five, as well as to prove the defendant's state of mind, we intend to introduce evidence

that the defendant similarly disobeyed the RICO Judgment by refusing to execute in Chevron's favor a stock power transferring his interest in his shares of Amazonia. After the defendant sought a stay of the RICO Judgment pending appeal and argued that he would suffer irreparable harm if he transferred his interest in the Amazonia shares, on April 25, 2014 Judge Kaplan granted in part and denied in part Donziger's motion for a stay pending appeal as follows:

> The motion for a stay pending appeal [DI 1888] is granted to the extent that paragraph 3 of the Judgment, solely pending the determination of the appeal in this case, is modified to read as follows:
>
> "Donziger shall execute in favor of the Clerk of this Court a stock power transferring to the Clerk all of his right, title and interest in his shares of Amazonia. The Clerk shall hold the Amazonia shares thus transferred, and all proceeds thereof, pending the determination of the appeal in this case, for the benefit of Donziger and Chevron, as their interests then may appear. Upon request by Donziger, given on notice to Chevron at least ten days in advance of the date for the proposed vote, the Clerk shall vote or direct the owner of record thereof such to vote, such shares as directed by Donziger unless otherwise ordered by the Court. Donziger and the LAP representatives, and each of them, shall execute such other and further documents as Chevron reasonably may request or as the Court hereafter may order to effectuate the foregoing provisions of this Judgment."
>
> It is denied in all other respects.

Civ. Dkt. 1901 at 32. On receipt of this order, Mr. Donziger did not subsequently transfer his shares in Amazonia to the Clerk of the Court during the pendency of the appeal—despite a written request from Chevron in August 2014 that he do so. This August 2014 correspondence between Chevron and Donziger (attached as Exhibit A), which we intend to introduce into evidence at trial, is what gives rise to the possible conflict with Mr. Friedman and Ms. Littlepage.

Specifically, on August 7, 2014, Chevron attorney Randy Mastro sent a letter via email to Mr. Friedman, Ms. Littlepage, and the defendant requesting the defendant's "long overdue compliance" with the RICO Judgment, including (a) executing in favor of the Clerk of Court a stock power transferring his interest in his Amazonia shares and (b) transferring to Chevron any of Mr. Donziger's property traceable to the Ecuadorian judgment. Ex. A at DONZIGER_107401-107403. On August 7, 2014, Mr. Friedman replied, copying Ms. Littlepage and Mr. Donziger, stating: "Please send the stock document you reference in your letter." *Id.* at DONZIGER_107404. On August 8, 2014, Chevron attorney Jefferson Bell replied to Mr. Friedman, copying Ms. Littlepage and Mr. Donziger, with a stock power transfer form

stating: "Please find attached a form stock power agreement." *Id.* at DONZIGER_107405-107407.  On August 22, 2014, Mr. Donziger sent Chevron attorney Randy Mastro an email, copying Mr. Friedman and Ms. Littlepage, that attached a letter and a proposed stipulation.  *Id.* at DONZIGER_107408-107412.  In the attached letter, Mr. Donziger explained why he would not execute a transfer of his shares as directed: "a simple transfer to the clerk's office of my Amazonia shares would in practice mean the complete divestiture—and potentially irretrievable loss—of more than two decades of labor on the part of me and some of my colleagues, before the Second Circuit even has a chance to decide our appeal. . ." *Id.* at DONZIGER_107410.  Mr. Donziger then asked Chevron to enter into a "Stipulation Regarding Compliance" whereby he would agree not to transfer his interest in the Amazonia shares during the pendency of his appeal, and would transfer any money he received traceable to the Ecuadorian Judgment to the "registry" of the District Court.  *Id*. at DONZIGER_107411-107412.  No such stipulation was ever agreed to, and Donziger did not transfer his interest as directed in the RICO Judgment or the April 25, 2014 Order.

On March 19, 2018, after Mr. Donziger had exhausted his appeals from the RICO Judgment, Chevron instituted post-judgment discovery proceedings and moved to hold Mr. Donziger in contempt for failure to transfer his interest in the Amazonia shares as directed.  In a March 25, 2018 filing, Mr. Donziger addressed Chevron's motion to hold him in contempt for his disobedience of the RICO Judgment by failing to execute a stock power in favor of Chevron for his Amazonia shares.  Civ. Dkt. 1969 (attached as Exhibit B).  Mr. Donziger characterized the Chevron's motion as "baseless and not facially concerning," and stated: "regarding my [Amazonia] shares*, I long ago crafted with counsel* and communicated to Chevron a responsive approach that fully achieves the purpose of the Court's order while avoiding certain ethical conflicts and client prejudices—Chevron has never objected to that approach…." *Id.* (emphasis added).

Only on May 9, 2018, after Chevron moved to hold him in contempt, did Mr. Donziger provide to Chevron an executed transfer form pertaining to the shares, albeit with an "addendum of understandings" that sought to negate his transfer of the shares to Chevron.  Civ. Dkts. 1966, 1967, 1968, 2003-3.  On May 16, 2018, Judge Kaplan found that Donziger was in civil contempt for his failure to execute, as directed by paragraph 3 of the RICO Judgment, a stock power transferring his interest in the Amazonia shares to Chevron from March 4, 2014 until May 9, 2018.

Mr. Donziger willfully disobeyed—for over four years—the March 4, 2014 RICO Judgment order and April 25, 2014 order directing him to transfer his interest in the Amazonia shares.  Similarly, Mr. Donziger also willfully disobeyed—for over four years—the RICO Judgment order directing him to "transfer and assign forthwith" to Chevron all rights to any contingent fee.  The willful failure to assign his contingent fee rights stemming from two separate agreements forms the basis for Counts Four and Five.  Like the Amazonia share transfer, Mr. Donziger only transferred his interest in a contingent fee under a 2011 Agreement and a separate 2017 Agreement after extensive motion practice.

## II.     Potential Conflict

Given we do not know all the defense theories of the case, it is possible that Mr. Donziger may seek to pursue a defense based on discussions he may have had with Mr. Friedman and Ms. Littlepage about his compliance with the RICO Judgment and April 25, 2014 Order. While it is the law of the Second Circuit that "advice of counsel is not a defense to the act of contempt, although it may be considered in mitigation of punishment," *United States v. Remini*, 967 F.2d 754, 757 (2d Cir. 1992), how Mr. Friedman or Ms. Littlepage handle the August 2014 correspondence at his criminal trial—including arguments they might make, cross-examination of prosecution witnesses or perhaps on direct examination of Mr. Donziger if he takes the stand—may be impacted by their own involvement in that correspondence. Thus, we seek inquiry regarding that potential conflict.

## III.     Discussion

The Sixth Amendment provides a criminal defendant with the right to the effective assistance of counsel, which includes "the right to representation by conflict-free counsel." *United States v. Schwarz*, 283 F. 3d 76, 90 (2d Cir. 2002). District courts have two separate obligations where there is a possible conflict of interest. First, the district court has an "inquiry obligation" when it is apprised of the possibility of a conflict of interest, under which it must "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States v. Levy*, 25 F.3d 146, 153-54 (2d Cir. 1994). Second, if the district court finds after some inquiry that the defendant's attorney suffers from an actual or potential conflict, the district court then has a "disqualification/waiver" obligation, under which it is required either to disqualify the attorney if the conflict is sufficiently severe, or, if the conflict may be waived, to conduct a *Curcio* hearing to advise the defendant of the ramifications of the conflict and obtain a waiver of any conflict of the defendant. *Id.*

Three types of conflicts of interest are the subject of judicial inquiry and can potentially result in the deprivation of the effective assistance of counsel: (1) a per se conflict; (2) an actual conflict; and (3) a potential conflict that results in prejudice to the defendant. *See Armienti v. United States*, 313 F.3d 807, 810 (2d Cir. 2002); *United States v. John Doe No. 1*, 272 F.3d 116, 125 (2d Cir. 2001).

In the Second Circuit, per se conflicts have been found only in two classes of cases: where trial counsel "is not authorized to practice law" and where trial counsel "is implicated in the very crime for which his or her client is on trial." *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000); *accord United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004); *see also Solina v. United States*, 709 F.2d 160, 164 (2d Cir. 1983) (unlicensed attorney); *United States v. Cancilla*, 725 F.2d 867, 868-70 (2d Cir. 1984) (attorney implicated in client's crime). The Second Circuit has repeatedly and consistently refused to extend the per se rule beyond the two

prescribed categories. *United States v. Levy*, 25 F.3d 146, 157 n.8 (2d Cir. 1994) ("[W]e have repeatedly stressed the limited reach of the *per se* rule, emphasizing that it applies only when a defendant's lawyer was unlicensed or had engaged in the defendant's crimes.").

An actual conflict exists when "during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *Schwarz*, 283 F.3d at 91 (applying standard derived from *Cuyler* v. *Sullivan*, 446 U.S. 335 (1980)). To show divergent interests, "[s]peculation is not enough." *Triana* v. *United States*, 205 F.3d 36, 42 (2d Cir. 2000). Nor is a "mere theoretical division of loyalties." *Mickens* v. *Taylor*, 535 U.S. 162, 171 (2002). There can be an actual conflict of interest only if "the attorney's current representation is impaired by the loyalty he owes a former client." *United States* v. *Leslie*, 103 F.3d 1093, 1098 (2d Cir. 1997) (citing *United States* v. *Malpiedi*, 62 F.3d 465, 469 (2d Cir. 1995).

Conflicts that do not fall into the categories of per se conflicts or actual conflicts are described as potential conflicts. *See, e.g.*, *Armienti*, 234 F.3d at 824. "An attorney has a potential conflict of interest if 'the interests of the defendant may place the attorney under inconsistent duties at some time in the future.'" *United States* v. *Perez*, 325 F.3d 115, 125 (2d Cir. 2003) (quoting *United States* v. *Kliti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998)).

The Second Circuit has recognized that a conflict of interest may arise when an attorney's relationship to his client results in his having first-hand knowledge of the events presented at trial, i.e., the attorney becomes an "unsworn witness"[2] or is a potential witness. *United States v. Perez*, 325 F.3 115, 127-29 (2d Cir. 2003) (determining that conflict posed by attorney's potential status as a trial witness was a waivable conflict); *United States v. Locascio*, 6 F.3d 924, 933-35 (2d Cir. 1983) (determining that trial court properly disqualified attorneys, after careful findings of fact, where those attorneys would be "unsworn" witnesses at trial); *United States v. Liszewski*, 2006 U.S. Dist. LEXIS 59608 (E.D.N.Y. Aug. 6, 2006) (determining that potential conflicts posed by what the government argued was an attorney's status as a potential witness or "unsworn witness" did not raise a potentially serious conflict of interest to warrant disqualification at that time and was waivable).

We submit that the Court should conduct an inquiry to determine whether Mr. Friedman and Ms. Littlepage have a conflict given their involvement in the August 2014 correspondence, and if so, determine the nature of that conflict. *See United States* v. *Stein*, 410 F. Supp. 2d 316, 323-24 (S.D.N.Y. 2006) ("[A]fter learning of the possibility of a conflict of interest, the district court first must determine whether the attorney has an actual conflict, a potential conflict, or no

---

[2] Where the attorney may be an "unsworn" witness as trial, we note that one principal concern is the impact on the jury because the attorney's version of events as he advocates for his client might be given added credibility by the factfinder. *See United States v. Locascio*, 6 F.3d 924, 934 (2d Cir. 1983). This would give the defense an unfair advantage since the attorney would not have taken an oath in presenting his interpretation, but merely frame it in the form of legal argument. *Id*. Because this is a bench trial, this particular concern about prejudice to the prosecution based on the attorney's advocacy in front of the jury should not exist.

Hon. Loretta A. Preska
August 11, 2020
Page 7

conflict at all.") (internal quotation marks omitted). As part of that inquiry, the Court "must investigate the facts and details of the attorney's interests." *United States* v. *Levy*, 25 F.3d 146, 153 (2d Cir. 1994). Assuming a lesser actual or potential conflict exists, we respectfully request that the Court proceed pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982).

The Second Circuit has set forth the requirements for a *Curcio* procedure in great detail:

> At such a hearing, the trial court (1) advises the defendant of his right to representation by an attorney who has no conflict of interest, (2) instructs the defendant as to the dangers arising from particular conflicts, (3) permits the defendant to confer with his chosen counsel, (4) encourages the defendant to seek advice from independent counsel, (5) allows a reasonable time for the defendant to make a decision, and (6) determines, preferably by means of questions that are likely to be answered in narrative form, whether the defendant understands the risk of representation by his present counsel and freely chooses to run them.

*Perez*, 325 F.3d at 119. If, as a result of that inquiry,

> the court discovers no genuine conflict, it has no further obligation. At the other end of the spectrum, if the court determines that counsel has an actual conflict that is so severe as to indicate *per se* that the rendering of effective assistance will be impeded, or is analogous to such a conflict in breadth and depth, the court must . . . disqualify counsel. And if, between these two extremes, the court determines that the attorney suffers from a lesser [actual] or only a potential conflict, then it may accept a defendant's knowing and intelligent waiver of his right to conflict-free counsel and permit the defendant to be represented by the attorney of his choice.

*Stein*, 410 F. Supp. 2d at 324 (internal citations and quotation marks omitted) (quoting *United States* v. *Perez*, 325 F.3d 115, 125 (2d Cir. 2003)).

In the case of a lesser actual or potential conflict, before accepting a defendant's waiver, "the court must advise the defendant of the dangers arising from the conflict, encourage the defendant to seek advice from independent counsel, and then determine whether the defendant understands the dangers of proceeding with conflicted counsel and knowingly and intelligently chooses to continue with the representation in spite of the conflict." *Id.* (citing *Curcio*, 680 F.2d at 888-89).

### IV. Proposed Inquiry

We respectfully request that the Court "investigate the facts and details of the attorney[s'] interests," *Levy*, 25 F.3d at 153, by asking Mr. Friedman and Ms. Littlepage about their involvement in the 2014 correspondence and any involvement in the post-judgment proceedings, and determine whether such involvement could impact the defense in this criminal contempt trial. *See United States* v. *Kliti*, 156 F.3d 150, 153 (2d Cir. 1998) ("In fulfilling this initial obligation to inquire into the existence of a conflict of interest, the trial court may rely on counsel's representations." (citing *Levy*, 25 F.3d at 154)). Assuming the Court's inquiry of Mr. Friedman and Ms. Littlepage reveals only a potential conflict, we respectfully request that the Court advise the defendant about his right to conflict-free counsel, the potential conflict and risks posed by the conflict, confirm his understanding of the issue, confirm his consultation with independent counsel on this issue, and determine whether he knowingly and intelligently waives that potential conflict.[3] In connection with this process, we respectfully request that the Court encourage and afford Mr. Donziger the opportunity to consult with independent counsel who can also attend any such *Curcio* inquiry with Mr. Donziger.

Given the practice of the U.S. Attorney's Office in this District to propose questions for the Court to pose to a defendant as part of a *Curcio* inquiry, we remain available to propose such questions should the Court deem it to be of assistance here.

Respectfully submitted,

*s/ Rita M. Glavin*
Rita M. Glavin
Brian P. Maloney
Sareen K. Armani
*Special Prosecutors on behalf*
*of the United States*

---

[3] To the extent this inquiry of the defendant's attorneys, or inquiry of the defendant, calls for them to discuss communications subject to the attorney-client privilege, the Court could pose such questions *ex parte* and *in camera*.