# SEWARD & KISSEL LLP

ONE BATTERY PARK PLAZA
NEW YORK, NEW YORK 10004

TELEPHONE: (212) 574-1200
FACSIMILE: (212) 480-8421
WWW.SEWKIS.COM

RITA GLAVIN
PARTNER
(212) 574-1309
glavin@sewkis.com

901 K STREET, N.W.
WASHINGTON, DC 20005
TELEPHONE: (202) 737-8833
FACSIMILE: (202) 737-5184

December 29, 2020

**VIA ECF**
Hon. Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

      Re:    *United States v. Donziger*, 19 Cr. 561 (LAP); 11 Civ. 691 (LAK)

Dear Judge Preska:

      We write on behalf of the United States in opposition to the defendant's December 17, 2020 application to eliminate his pretrial release conditions of home detention and electronic monitoring. Dkt. 227. Given this Court's multiple prior findings that Donziger poses a flight risk and the release conditions of home detention and electronic monitoring are necessary to address that risk, and the fact that this newest application proffers no new facts on this issue, the defendant's application should be denied. Donziger remains a flight risk for the reasons the Court has articulated on many occasions, and these conditions are necessary to address that risk and reasonably assure his appearance as this Court previously determined.

      Trial is currently scheduled for January 19, 2021, following adjournments of the September 9, 2020 trial date and then the November 9, 2020 trial date—which came after repeated adjournment requests by the defense.

## Background

      To provide context to this most recent defense request, set forth below is a summary of the defendant's various requests to modify his release conditions, as well as the Court's numerous findings regarding Donziger's flight risk and the Court's reasoning in denying the defendant's prior requests for elimination of home detention and electronic monitoring.

**A.**    **August 6, 2019 Bail Hearing and Flight Risk Finding**

      On August 6, 2019, at the defendant's initial appearance, this Court heard oral argument from the parties on the issue of release conditions for the defendant. The Special Prosecutors

Hon. Loretta A. Preska
December 29, 2020
Page 3

argued in favor of a secured bond, home detention and electronic monitoring—as recommended by Pretrial Services ("PTS")—because of Donziger's flight risk given the criminal charges, likely jail time, the strength of the evidence, financial issues stemming from the Civil Case, his frequent travel and ties to Ecuador, and Ecuador's unreliable extradition process. Dkt. 18 at 21-24. Donziger—who was represented by temporary advisory CJA counsel at the proceeding because he declined to fill out a financial affidavit for the appointment of CJA counsel—objected to the conditions of home detention, a secured bond and surrender of his passport. In support of his position, the defendant noted his obligations with his son, community and family ties, history of appearing in court and pending appeals. *Id*. at 17-20.

After hearing lengthy argument, the Court considered the factors set forth in 18 U.S.C. § 3142 and concluded:

> . . .[T]his is a new type of proceeding, and although Mr. Donziger has appeared in the civil case, we are in a brave new world now. He is facing jail time. The weight of the evidence seems to be very strong. I acknowledge Mr. Donziger's place in the community and his community ties, but I'm also quite troubled by Mr. Donziger's past refusal to comply with orders of the court. I am troubled by the frequent travel to Ecuador which. . . has less than a reliable system for extradition. I am also concerned that without any security on the bond there will be no moral imperative or any financial imperative to show up.

*Id*. at 27-28. The Court then ordered Donziger released on the following conditions, which were recommended by PTS: a secured $800,000 bond with two co-signors;[1] pretrial supervision with location monitoring and home detention; travel restricted to Eastern and Southern Districts of New York; and surrender of any passport and no new applications for a passport. Dkts. 4, 18 at 27-28. The condition of home detention specifically allowed Donziger to leave his residence for family obligations, employment, attorney visits, religious services, medical appointments, and other activities approved in advance by PTS. Dkt. 4 at 5.

**B.     November 25, 2019 Bail Hearing and Flight Risk Finding**

Three months after the initial bail determination, by letters dated November 4, 18, 22 and at a November 25, 2019 hearing, Donziger moved to eliminate the conditions of home detention and electronic monitoring based on: PTS's new position that Donziger could be subject to a curfew with location monitoring given Donziger's prior compliance with his release conditions; 27 people were willing to co-sign Donziger's bond; the argument that Donziger was not a flight risk who would abandon his family, friends, supporters and his cause; Donziger's track record of appearing in court and engagement in his appeals, the criminal and civil cases, and disciplinary hearing; Donziger's representation that, at defense counsel's direction, he recently made images

---

[1] PTS recommended one co-signor instead of two. Dkt. 18 at 13.

of the devices at issue in Count Two of the July 31, 2019 Order to Show Cause and those images "are secure;" and the Special Prosecutors' November 21 letter stating its present intention not to seek more than six months' imprisonment if Donziger is convicted. Dkts. 30, 32, 36, 44 at 2-5, 9-11.

The Special Prosecutors opposed modification of the release conditions in letters dated November 13 and 21 and at the November 25 hearing, arguing that Donziger posed the same flight risk as he did in August and nothing warranted changing those conditions. Dkts. 31, 35, 44 at 5-9. The Special Prosecutors cited: Donziger's travel to Ecuador and strong ties to Ecuador, including to high-level officials such as former President Correa; Ecuador's unreliable extradition; Donziger's history of failing to comply with court orders and ongoing failure to comply with the March 5, 2019 order regarding surrendering his devices for imaging; the findings that Donziger engaged in fraud and corruption to obtain the Ecuador judgment; the fact that the bond was already fully secured by property, and the proposed co-signors were therefore not at financial risk; this is a criminal case where he faces likely jail; the fact that he is facing the loss of his law license and civil proceedings seeking enforcement of the $813,602.71 money judgment against him; and the fact that Donziger cannot enforce the Ecuadorian judgment in the U.S. or profit from it. *Id.*

After hearing argument at a November 25, 2019 hearing, the Court found that Donziger remained a flight risk and denied the defendant's request to eliminate the conditions of home detention and electronic monitoring. The Court stated:

> Counsel, I think we are in the same position we were in August when we were together. We know that Mr. Donziger has ties to Ecuador; we know indeed to high-ranking government officials. We know he has traveled to Ecuador on numerous, numerous occasions. We know that he has been found to have failed to comply with numerous court orders in the past. I think I read in the recent exchange of letters that [the PTS] Officer [] did not know that Mr. Donziger has still failed to comply with Judge Kaplan's March 5 order. With respect to the people who have offered to be co-signatures and the folks who have already signed the bond . . . because the bond is fully secured, these folks are really facing no monetary risk. With respect to the engagement that counsel talks about, certainly Mr. Donziger has every incentive to fight the efforts to disbar him and to fight the civil suit. What has changed, however, is that Mr. Donziger is facing a criminal trial and facing the real prospects of incarceration. For these reasons, I find that he remains a flight risk, and accordingly, the request to eliminate monitoring and confinement is denied.

Dkt. 44 at 12-13.

Hon. Loretta A. Preska
December 29, 2020
Page 5

### C. December 3, 2019 Defense Motion for Reconsideration and Second Circuit Appeal

On December 3, 2019, Donziger submitted a letter seeking reconsideration of the Court's November 25, 2019 decision regarding his bail modification request and, at a December 4, 2019 status conference, the District Court heard argument from Donziger on that application. Dkts. 38, 39, 42. Donziger argued that he was not a flight risk because former Ecuadorian President Correa was not in a position to help him flee, he had always appeared in court, he could not flee to Ecuador without a passport and in the current Ecuadorian political climate, and "nobody in the world . . . has any incentive to help [Donziger] run away from this case or to violate American law." Dkts. 38, 39, 42 at 4, 7-8. The Court expressed its concern that "I wouldn't presume that the individuals whom Mr. Donziger represented all these years and fought for all these years would not be inclined to take care of him." Dkt. 42 at 7. The District Court then granted the Special Prosecutors' request to submit a written response to Donziger's reconsideration motion. *Id*. at 9-10.

On December 10, 2019, the Special Prosecutors responded to the defense motion for reconsideration, arguing that Donziger remained the same flight risk he posed on August 6, 2019, due to: his historical and ongoing violation of court orders; his strong ties to Ecuador over the last 25 years, including to Ecuadorian community leaders, the thousands of Ecuadorians he purports to represent, his client Frente de Defensa de la Amazonia whom Donziger has stated "enjoys wide influence in Ecuador" and can "command meetings with government ministers," his Ecuadorian co-conspirator (Luis Yanza) in the fraud and corruption who is a defaulted defendant in the Civil Case, and to Ecuadorian government officials; Ecuador's unreliable extradition process, including the Ecuadorian President's June 2019 refusal to extradite a U.S. citizen fugitive charged with fraud in S.D.N.Y. (even after the Ecuador National Court of Justice approved extradition) who somehow made his way to Ecuador despite having surrendered travel documents to PTS and being on electronic monitoring; after years of defiance of court orders and legal obligations in civil proceedings, Donziger faced criminal prosecution and incarceration upon conviction for a crime with no statutory maximum penalty; and the strong weight of the evidence. Dkt. 40.

On December 17, 2019, Donziger informed the District Court that he was withdrawing his motion for reconsideration of the Court's denial of his application for modification of the conditions of his release. Dkt. 47. On January 9, 2020, Donziger filed a motion with the Second Circuit appealing this Court's bail determination and seeking elimination of home confinement and electronic monitoring. 2d Cir. No. 19-4155, Dkt. 16. After hearing oral argument, on February 18, 2020, the Second Circuit affirmed the District Court's denial of Donziger's request to modify his bail conditions. 2d Cir. No. 19-4155, Dkt. 53.

### D. May 18, 2020 Flight Risk Finding, June 3, 2020 Order and Second Circuit Appeal

On May 18, 2020, following the Court's denial of the defendant's pretrial motions, the parties appeared for a telephonic conference, at which time the Court adjourned the June 15 trial date to September 9, 2020 due to the pandemic, and announced that the Court would sentence

Donziger to no more than six months' imprisonment or a $5,000 fine if he is convicted after trial. Dkt. 87 at 5-6. Donziger then sought elimination of the release conditions of home detention and electronic monitoring. *Id*. at 9-11. The defendant made the following arguments: he has been on home confinement for approximately ten months and the maximum penalty he faces is six months' jail; the referee in Donziger's disciplinary disbarment hearing found Donziger's testimony to be "candid and clear with no sign of evasiveness," and Donziger has the support of "29 Nobel Laureates and many others;" "international travel is especially difficult right now…because of the pandemic, and especially in Ecuador…which is the specific country to which the prosecutor has previously referred…is just not possible at this point, let alone that Mr. Donziger would have to cross eight international borders without a passport"; "resources of pretrial services can be far better devoted than tracking Mr. Donziger's comings and goings;" and he has no incentive to flee, is "not a risk of flight," and "he's not going anywhere." *Id*.

The Special Prosecutors opposed Donziger's request, arguing Donziger still remained a flight risk for the same reasons the Court found on August 6, November 25 and again on December 4, 2019. *Id*. at 11-12. The Special Prosecutors also noted that with a September 9 trial date, "as we get closer to trial…flight risk becomes actually more of an issue…," and the New York State bar disciplinary committee had appealed to the First Department the disciplinary decision of the referee in Donziger's disbarment hearing.[2] *Id.*

The Court denied the request to modify the release conditions and stated:

> Counsel, nothing really has changed of significance from the Court's prior findings that the defendant is a risk of flight…that was based on the defendant's history of violating court orders, based on his strong ties and extensive travel to Ecuador, and the fact that this is a criminal case where the defendant faces jail time, I take Mr. Frisch's note that today the Court has set six months as the maximum period of imprisonment in the case of a conviction, but prison time is prison time. The only other changed circumstance is the outbreak of COVID-19. As we all know, and as counsel has alluded to, residents of New York have strongly been encouraged to stay in their homes. What Mr. Donziger is requesting is the opposite; that is, to go out into the community where the risk of infection is higher. If that is the current request, it does cast some doubt on the good-faith in which the request is made, but, in any event, based on my prior findings of his risk of flight, the request to delete electronic monitoring and home confinement is denied.

Dkt. 87 at 13-14.

---

[2] In an August 13, 2020 *per curiam* order, the New York State Appellate Division, First Department, disbarred Donziger from the practice of law in the State of New York. *Matter of Donziger*, 186 A.D.3d 27 (1st Dep't 2020) (*per curiam*). In September 2020 Donziger filed papers asking the New York State Court of Appeals to review the disbarment decision.

Hon. Loretta A. Preska
December 29, 2020
Page 7

Donziger then made a second modification request at the May 18 hearing: that the Court consider a curfew, rather than home confinement, such that Donziger would be at home from 10 p.m. until 6 a.m. with electronic monitoring in place and remain between 96th and 116th Street on the Upper West Side. *Id*. at 14-15, 16. The defense principally argued that his apartment is "not a big place," the current release conditions placed difficulties on his "day-to-day life and especially on his family," that the curfew would allow him to leave the apartment with his son and walk around the neighborhood without advance permission, and that "[h]e's defending himself." *Id.*

The Special Prosecutors opposed the curfew request because: (1) "the Court's findings on risk of flight are still there," and the curfew meant that Mr. Donziger would be out from 6:00 a.m. to 10:00 p.m. at night, which would mean many hours of him being unaccounted for; and (2) the Court already tailored the home detention condition to allow for Donziger to leave the apartment for family obligations, but they must be preapproved by PTS. *Id.* at 15.

The Court "adhere[d] to [its] prior findings" and denied the defense request, noting that "the circumstances that Mr. Frisch relates are really the inconvenience that befalls anyone who's been found to be a risk of flight." *Id*. at 18. The defense then made a third modification request at the May 18 hearing, asking that Donziger "be permitted every afternoon to leave home, provided he stays on the Upper West Side, for, say, a period of three hours…for whatever purpose, for shopping, to go to the pharmacy, if necessary, to hang out with his son." *Id*. at 19- The Special Prosecutors stated that it was not in a "position to consent to [him] out every day for three hours without having a sense from pretrial about how this is handled with defendants similarly situated with these conditions," and that it wanted "to make sure this is done in the usual course." *Id*. at 19-20. The Court asked the prosecutors to confer with PTS, and noted its concern that "with a blanket three-hour block, I could be to the airport and on an airplane in three hours, so I'm not sure I'm ready for that." *Id*. at 20.

Two days later, by letter dated May 20, 2020, Donziger again requested that the District Court modify his release conditions to permit him to be outside his apartment from 4:00 p.m. to 6:00 p.m. each day within 96th and 116th Streets on the Upper West Side. Dkt. 77. The defense indicated that Donziger's PTS Officer did not oppose this proposal. *Id.*

By letter dated May 26, 2020, the Special Prosecutors opposed the requested modification for three reasons. Dkt. 79. First, as discussed at the May 18 hearing, the prosecutors conferred with an S.D.N.Y. PTS location monitoring specialist on the issue of the practice of allowing defendants on home detention with electronic monitoring to be out every day for several hours absent a specific reason and advance PTS approval. The specialist reported that "allowing a defendant on home detention with electronic monitoring to be outside each day for two hours—even within a certain radius—would be unusual absent a specific reason. For defendants with home detention and location monitoring release conditions, the specialist indicated that requests to be outside are addressed with their PTS officer on a case-by-case

basis." *Id*. at 1. Thus, there was no reason to deviate from that standard practice of PTS, given the findings the Court had already made regarding Donziger's flight risk. *Id*.

Second, the Special Prosecutors pointed out that Donziger had not been fully compliant with his release conditions, which was concerning given the defendant's history of violating court orders—a factor among the numerous reasons the Court found Donziger to be a flight risk. *Id*. Specifically, in March 2020, PTS approved Donziger to attend an event at Madison Square Garden with his son. Without informing PTS, Donziger did not go to that event and went someplace in Brooklyn instead. PTS only learned about the noncompliance when it later reviewed GPS data from his ankle monitor. *Id*. Third, the Special Prosecutors noted that Donziger's release conditions expressly permitted him to leave his apartment for family obligations, employment, education, religious services, medical treatment, attorney visits, court appearances, and other activities approved in advance by PTS. *Id*. at 2. In line with those conditions, PTS had permitted Donziger to leave his apartment with PTS approving each activity in advance such that PTS knew exactly where Donziger would be and the duration. *Id.* Thus, there was no reason to vary from the practice given Donziger's flight risk.

By reply letter dated May 29, 2020, the defendant: pointed out that the New York State Department of Health encourages residents to be outside to walk, jog, hike, bicycle, garden or visit a park to reduce stress while engaging in social distancing strategies; argued that Donziger's assigned PTS Officer did not oppose the modification request; surmised that the lead Special Prosecutor may not be acting in good faith but rather out of "allegiance to Chevron, the oil and gas industry, and her former Southern District Colleagues who now work at Gibson Dunn;" noted that Donziger only violated his conditions once and was home within the approved window; and referred to the support Donziger has from Nobel Laureates, 475 lawyers and legal organizations from around the world, including the President of the Paris Bar. Dkt. 85.

In a June 3, 2020 order, the Court denied Donziger's request for "blanket permission to depart his residence, despite being on home confinement, every day to roam his neighborhood for several hours for any of a number of activities" given that he had "not proffered any specific reason that he should be treated differently from any other pretrial defendant, and, even if he had, his prior material breach of the terms and conditions of his home confinement counsel against making the exception requested." Dkt. 90. The Court specifically noted that the prosecutors consulted with a PTS location monitoring specialist who indicated that allowing a defendant to be outside each day for two hours within a certain radius would be "unusual absent a specific reason," and that such requests are typically made on a case-by-case basis, which was exactly the terms of Donziger's home confinement. *Id*. at 2. The Court observed that the defendant's "desire to be outside [is] shared by every other defendant who is on home confinement, and, indeed, by the many people in New York City who have sheltered in place over the last several months." *Id*. The Court also found the March 2020 violation to be "a material breach of the terms and conditions of his home confinement," which, combined with the Court's multiple previous findings that Donziger constitutes a flight risk, justified the Court's concern that freedom to roam would create an opportunity to get to the airport and depart the country. *Id*. at 2-3. Thus, the Court denied Donziger's "request to leave his apartment daily

Hon. Loretta A. Preska
December 29, 2020
Page 9

without advance permission." *Id*. at 3.

The defendant appealed from that June 3, 2020 order, and the appeal has been fully briefed and is pending before the Second Circuit. *See* 2d Cir. No. 20-1710.

In a September 3, 2020 order denying a defense motion for a jury trial, the Court reiterated its flight risk finding in response to arguments by Donziger that his pretrial release conditions indicate that his charges are "serious" for Sixth Amendment purposes. Dkt. 163 ("[] Mr. Donziger's pretrial release conditions do not indicate that his charges are 'serious' for Sixth Amendment purposes; they instead reflect the Court's assessment that he is a flight risk given his ties to Ecuador, the strength of the evidence, his past refusal to abide by court orders, and the fact that he now faces possible incarceration.").

## Argument

In this latest application to eliminate the conditions of home detention and electronic monitoring, Donziger proffers no new facts in arguing that he is not a flight risk. Rather—with one exception—Donziger makes arguments he has previously made, as set forth *supra*, in arguing for the elimination of those conditions: he is not a flight risk because he only faces six months in jail; he is a "respected and successful human rights attorney with decades of good standing;" he would not abandon his long-time New York residence and family; he would not abandon his efforts to overturn his disbarment and civil contempt findings in his pending appeal; he cannot travel abroad without a passport; and he would not want to live his life as a fugitive in Ecuador. Dkt. 227.

The one new argument that Donziger makes is that the Court, when it stated on June 3, 2020 that "[t]here is no reason why Mr. Donziger should be treated any differently from any other pretrial defendant" (Dkt. 90 at 2), is somehow treating Donziger differently than other pretrial defendants by imposing the release conditions of home detention and electronic monitoring. This argument should be rejected for several reasons.

First, the defendant takes the Court's June 3, 2020 statement that "[t]here is no reason why Mr. Donziger should be treated any differently from any other pretrial defendant" out of context. Dkt. 90 at 2. In making that statement, the Court was referring to *pretrial defendants found to be a flight risk and under the release conditions of home detention with electronic monitoring*. Specifically, the Court made that statement in denying Donziger's May 20, 2020 request "for blanket permission to depart his residence, despite being on home confinement, every day to roam his neighborhood for several hours for any of a number of activities." Dkt. 90 at 1. The Court pointed out that: (1) Donziger's requested modification for a defendant on the pretrial release conditions of "home detention with electronic monitoring" would be "unusual;" (2) requests to be outside by "such defendants" are addressed with PTS on a case-by-case basis—which is "exactly the terms of Mr. Donziger's home confinement;" and (3) Donziger had "proffered no specific reason for his request, other than the desire to be outside shared by every other defendant who is on home confinement, and, indeed by the many people in New York City

who have sheltered in place over the last several months." *Id.* at 1-2. Thus, the Court determined that an exception for Donziger to be treated differently from any other pretrial defendant on home detention was not warranted, and even if it were, the request would still be denied because of Donziger's March 2020 material breach of his release conditions combined with the Court's multiple previous findings that he posed a flight risk. *Id.* at 3.

Second, while the defense points to several other cases where attorneys facing longer terms of imprisonment for various other crimes were not subject to the pretrial release condition of home detention, the defense ignores that this Court's findings regarding Donziger's flight risk and the need for home detention and electronic monitoring to address that risk were based on the Court's assessment of *Donziger's particular situation*. *See* 18 U.S.C. § 3142(g) (listing factors for courts to consider in pretrial release decisions, including the nature and circumstances of the offense charged, the weight of the evidence "against the person," and the history and characteristics "of the person"); *see United States v. Vizcaino*, 2020 U.S. Dist. LEXIS 65212, at *4 (S.D.N.Y. Apr. 14, 2020) (RMB) (KHP) ("In making a bail determination, the court makes an individualized assessment based on specific factors set forth in 18 U.S.C. § 3142(g)."). Release conditions imposed in different cases with different facts and circumstances involving other defendants who happen to be attorneys are not pertinent to the individualized assessment the Court must make here. This Court imposed the release conditions here after assessing the particular facts and circumstances in this case with this particular defendant—just as 18 U.S.C. § 3142(g) requires.

While the defendant complains that these release conditions have "grown more . . . punitive" with the passage of time, this Court most recently made clear on September 3, 2020 that the release conditions were imposed based on the Court's assessment that Donziger is a flight risk—not as a punitive measure. Dkt. 163 at 9 n.4 (Donziger's pretrial release conditions "reflect the Court's assessment that he is a flight risk" for numerous reasons). As for the "passage of time," Donziger is responsible for the adjournments of the September 9 and November 9 trial dates. *See* Dkt. 168 ("Mr. Donziger and his counsel have employed virtually every conceivable tactic to stop trial from starting as long-scheduled on September 9."); *see also* Dkts. 111, 130, 158, 180, 187, 194, 200, 204, 207 (defense requests for adjournment of the trial date made on July 29, August 21, August 27, October 18, October 22, October 27, November 4 and November 6).

Finally, Donziger remains a flight risk and the release conditions of home detention and electronic monitoring should remain for all the reasons: (a) the Special Prosecutors previously articulated on August 6, November 13, November 21, November 25, December 10, 2019 and May 18 and 26, 2020; and (b) the Court previously stated on August 6, November 25, and December 4, 2019, as well as on May 18 and June 3, 2020. The defendant has cited to no change in circumstances warranting modification of his release conditions.

Hon. Loretta A. Preska
December 29, 2020
Page 11

                                                            Respectfully submitted,

                                                      _____/s/_____
                                                      Rita M. Glavin
                                                      Brian P. Maloney
                                                      Sareen K. Armani
                                                      *Special Prosecutors on behalf*
                                                      *of the United States*