```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| UNITED STATES OF AMERICA, | No. 19-CR-561 (LAP) |
|---|---|
| -against- | No. 11-CV-691 (LAK) |
| STEVEN DONZIGER, | ORDER |
| Defendant. | |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant Steven Donziger's motion to discontinue his pretrial conditions of home confinement and electronic location monitoring.  (See dkt. no. 227; see also dkt. no. 236.)  The Special Prosecutor opposes the motion.  (See dkt. no. 235.)  For the reasons below, the motion is DENIED.

### I.    Background

Mr. Donziger's current motion does not paint on a blank canvas.  Accordingly, it is helpful to catalogue the extensive background surrounding Mr. Donziger's various applications for modification of the conditions of his pretrial supervision.

On August 19, 2019, Mr. Donziger appeared before the Court for arraignment.  (See dkt. no. 18.)  At the hearing, the Special Prosecutor--based on the recommendation by the Pretrial Services ("PTS") officer--advocated for several conditions of release, including, most notably, home confinement and location monitoring.  (See id. at 13:13-14:2.)  The Special Prosecutor asserted that those conditions were necessary because Mr.

1

Donziger was a flight risk, citing the possibility of imprisonment, the strength of the evidence, the substantial American civil judgments against Mr. Donziger, and his frequent travel to Ecuador.  (See id. at 21:14-24:18.)  Mr. Donziger opposed those conditions, relying on, among other things, his pending proceedings before the Court of Appeals, his history of appearing for court proceedings in New York, his intent to contest vigorously the charges against him, his ongoing work in other countries to enforce an Ecuadorian judgment against Chevron, and his ties to his family and the community.  (See id. at 14:25-16:24, 17:8-20:10.)

The Court disagreed with Mr. Donziger, citing, inter alia, the possibility of a term of imprisonment, the "weight of the evidence" against him, his "past refusal to comply with orders of the court," and his "frequent travel to Ecuador which . . . has less than a reliable system for extradition."  (Id. at 27:6-13.)  The Court also "acknowledge[d] Mr. Donziger's place in the community and his community ties" but found that those facts did not outweigh the other considerations.  (Id. at 27:8-9.)  Ultimately, the Court released Mr. Donziger subject to several conditions, including supervision by PTS subject to home

confinement and with location monitoring.[1]  Mr. Donziger's home detention expressly allowed for him "to take care of his family relations and family obligations, and to have lawyer-client meetings."  (Dkt. no. 18 at 27:22-24; see also dkt. no. 4 at 4.)

Three months later, Mr. Donziger moved to eliminate the conditions regarding home confinement and location monitoring. (See dkt. no. 30.)  For support, Mr. Donziger relied on, among other things, (1) PTS's new position that a curfew condition could potentially replace the home confinement and monitoring; (2) numerous additional individuals willing to sign his bond on his behalf; (3) Mr. Donziger's regular appearances in court; and (4) his engagement with this case, the related civil case, and a state disciplinary proceeding regarding his law license.  (See id. at 1-3.)  The Special Prosecutor opposed the motion, maintaining that the critical facts underlying the need for home confinement and location monitoring had not changed.  (See dkt. no. 31 at 1.)

After holding oral argument, the Court denied Mr. Donziger's motion.  (See dkt. no. 44 at 13:1-3.)  After considering Mr. Donziger's various arguments, the Court

---

[1] (See dkt. no. 4 at 4-5.)  The Court also imposed the following conditions: (1) a secured $800,000 bond with two, financially responsible co-signors; (2) surrender of any passport to PTS; and (3) travel restrictions to the Southern and Eastern Districts of New York.  (See id. at 1-2, 4-5.)

concluded that "we are in the same position we were in August." (Id. at 12:7-8.)  Specifically, the Court observed that Mr. Donziger (1) still had significant "ties to Ecuador," including to "high-ranking government officials," and had traveled there extensively in the past, (2) still had "failed to comply with numerous court orders in the past," and (3) still was "facing a criminal trial and facing the real prospects of incarceration." (Id. at 12:8-25.)  Based on those unchanged facts, the Court concluded that Mr. Donziger "remain[ed] a flight risk."  (Id. at 13:1-2.)

A few weeks later, Mr. Donziger moved for reconsideration of the Court's decision.  (See dkt. no. 39.)  After presenting some arguments on the motion at a status conference, (see dkt. no. 42 at 3:7-6:20), and following the Special Prosecutor's filing a written response, (see dkt. no. 40), Mr. Donziger withdrew his motion, (see dkt. no. 47).  Shortly thereafter, he appealed the Court's bail determination and denial of the motion to discontinue home confinement and electronic monitoring.  (See dkt. no. 46.)  On February 18, 2020, the Court of Appeals affirmed in a one-page order.  (See dkt. no. 57.)

Three months later, at a pretrial conference, Mr. Donziger again requested to eliminate the conditions of home confinement and location monitoring.  (See dkt. no. 87 at 9:12-13.)  Mr. Donziger averred that the conditions should be terminated

4

because: (1) Mr. Donziger had already been confined for ten months, even though he faced only six month's imprisonment; (2) the referee in his state attorney disciplinary hearings found his testimony to "candid and clear, with no sign of evasiveness"; (3) "Mr. Donziger ha[d] the support of 29 Nobel Laureates and many others"; and (4) international travel to Ecuador would be exceedingly difficult given the pandemic and his lack of a passport.  (Id. at 9:12-10:23.)

The Court disagreed, finding instead that "nothing really ha[d] changed of significance from the Court's prior findings that the defendant is a risk of flight."  (Id. at 13:8-10.)  The Court again noted that its past orders were "based on the defendant's history of violating court orders, based on his strong ties and extensive travel to Ecuador, and the fact that this is a criminal case where the defendant faces jail time."  (Id. at 13:10-13.)  "The only other changed circumstance," the Court indicated, was the COVID-19 pandemic, in response to which New Yorkers were "strongly . . . encouraged to stay in their homes," not "go out into the community where the risk of infection is higher."  (Id. at 13:17-22.)  Based on those considerations, the Court declined to remove the conditions of home confinement and electronic monitoring.  (See id. at 13:24-14-1.)

In response, Mr. Donziger asked that Court consider a curfew in lieu of home confinement with electronic monitoring remaining in place.  (See id. at 14:7-15:9.)  Mr. Donziger suggested that the curfew could require him to be at home between 10:00 p.m. and 6:00 a.m. but otherwise permit him to leave the apartment so long as he remained in the Upper West Side between 96th and 116th Street.  (See id. at 14:22-15:9.)  The Court likewise declined that request based on its findings that he was a flight risk.  (See id. at 18:15-19.)

Mr. Donziger responded with a final appeal that the Court recommend that PTS allow Mr. Donziger to leave his home for a period of three hours each day without pre-approval so that he could run errands, spend time with his son, or other similar activities.  (See id. at 19:5-13.)  Before ruling on the issue, the Court afforded the parties an opportunity to confer with each other and with PTS.  (See id. at 20:12-19.)  Two days later, Mr. Donziger renewed his request for permission to leave his home each day, this time between 4:00 p.m. and 6:00 p.m. between 96th and 116th Streets in the Upper West Side.  (See dkt. no. 77 at 1.)  The Special Prosecutor opposed the motion, indicating that such an accommodation would break with typical PTS practice requiring a defendant to obtain pre-approval to leave his home on a case-by-case basis.  (See dkt. no. 79 at 1-2.)

On June 3, 2020, the Court denied Mr. Donziger's "request for blanket permission to depart his residence, despite being on home confinement, every day to roam his neighborhood for several hours for any of a number of activities." (Dkt. no. 90 at 1.) The Court observed that the terms of Mr. Donziger's confinement already permitted him to leave his home on a case-by-case basis with pre-approval and noted PTS's report that "allowing a defendant on home detention with electronic monitoring to be outside each day for two hours . . . would be unusual absent a specific reason." (Id. at 1-2.) Based on that, the Court found that "[t]here [wa]s no reason why Mr. Donziger should be treated any differently from any other pretrial defendant." (Id. at 2.) In addition, the Court observed that Mr. Donziger had previously breached the terms of his home confinement, which, when combined with the Court's "multiple previous findings that Mr. Donziger constitute[d] a flight risk," counseled further in favor of denying his request. (Id. at 3.)

Mr. Donziger filed an appeal of the Court's June 3 order, (see dkt. no. 92), which remains pending before the Court of Appeals. On December 17, 2020, Mr. Donziger filed his latest motion seeking to discontinue the conditions of home confinement and location monitoring. (See dkt. no. 227.) Like the requests before it, the Special Prosecutor opposes Mr. Donziger's latest filing. (See dkt. no. 235.)

**II. Discussion**

Mr. Donziger's latest motion offers several reasons he contends support discontinuing the conditions of home confinement and electronic location monitoring. (See dkt. no. 227 at 1-3.) The Court will address each in turn.

First, Mr. Donziger, quoting the Court's June 3 order, suggests that he is being "treated differently from any other pretrial defendant" by being subject to home confinement. (Id. at 1.) In fact, his counsel proffers that he "has been unable to locate a single verifiable instances of home confinement for a misdemeanor defendant who has no criminal record." (Id.) That contention is too clever by half, precisely because Mr. Donziger has unmoored the Court's statement from its underlying context. Although the Court did find that "[t]here [wa]s no reason why Mr. Donziger should be treated any differently from any other pretrial defendant," it did so in the context of denying Mr. Donziger's request to allow him hours of pre-approved time outside his home each day for any purpose he wished. (Dkt. no. 90 at 2.) Moreover, the mere fact that Mr. Donziger's conditions of pretrial release differ from those imposed on other misdemeanor defendants does not mean that Mr. Donziger's conditions are not necessary to assure his appearance. After all, when evaluating conditions of pretrial release, the Court must make "an individualized assessment based

on specific factors set forth in 18 U.S.C. [§] 3142(g)." <u>United States v. Suazo Nunez</u>, No. 20 MAG 1734, 2020 WL 1911226, at *2 (S.D.N.Y. Apr. 20, 2020); <u>United States v. Vizcaino</u>, No. 20 CR. 241 (RMB), 2020 WL 1862631, at *2 (S.D.N.Y. Apr. 14, 2020). As noted above, the Court did exactly that on at least three occasions in considering and rejecting Mr. Donziger's objections to home confinement. (<u>See</u> dkt. no. 18 at 27:6-13; dkt. no. 44 at 12:7-13:3; dkt. no. 87 at 13:8-14:1.)

Second, Mr. Donziger avers that his "status as a respected and successful human rights attorney with decades of good-standing" also counsels against home confinement. (Dkt. no. 227 at 2.) That is especially true, he maintains, considering that many other attorneys facing criminal charges--some more serious than Mr. Donziger--have not been so confined before trial. (<u>See id.</u>) Again, however, the bail inquiry is one that is individualized to the particular defendant. <u>See</u>, <u>e.g.</u>, <u>Suazo Nunez</u>, 2020 WL 1911226, at *2; <u>Vizcaino</u>, 2020 WL 1862631, at *2. The Court made such a determination when it found Mr. Donziger to be a flight risk. (<u>See</u> dkt. no. 18 at 27:6-13; dkt. no. 44 at 12:7-13:3; dkt. no. 87 at 13:8-14:1.) Mr. Donziger does not explain how other courts' releasing other defendants before trial somehow shows that <u>he is not a flight risk</u>.

Third, Mr. Donziger argues that the fact that he is facing incarceration does not support home confinement; otherwise, many

9

more accused misdemeanants would be held under such pretrial conditions. (See dkt. no. 227 at 3.) That contention is unavailing for two reasons. First, the argument fails to recognize that, in addition to observing the possibility of incarceration, the Court also rested its risk-of-flight determination on the "weight of the evidence" against Mr. Donziger. (E.g., dkt. no. 18 at 27:7.) That latter topic is indisputably a proper consideration when evaluating conditions of pretrial release. See 18 U.S.C. § 3142(g)(2). And second, that argument, like the two before it, is premised on how other courts have considered other defendants--it does not change this Court's individualized determination as to Mr. Donziger.

Fourth, Mr. Donziger attempts to discount the possible refuge he could find in Ecuador by pointing out that many criminal defendants who are dual nationals are not subjected to home confinement. (See dkt. no. 227 at 3.) But, once again, Mr. Donziger's reliance on how other courts have evaluated other defendants does not change the calculus in his case. Instead, as the Court has repeatedly found, Mr. Donziger's long travel history to Ecuador and extensive contacts there--including with high-level officials--support the Court's risk-of-flight finding. (See dkt. no. 18 at 27:6-13; dkt. no. 44 at 12:7-13:3; dkt. no. 87 at 13:8-14:1.)

Finally, Mr. Donziger raises a bevy of arguments that he has marshalled before in his efforts to eliminate the conditions of home confinement and electronic monitoring.[2]  Of course, as discussed above, the Court has already concluded that those arguments do not overcome its initial finding that Mr. Donziger is a flight risk, especially given (1) his history of disobeying court orders, (2) his extensive travel history and contacts in Ecuador, including with high-level officials, and (3) the fact that, for the first time, he faces incarceration rather than just civil penalties.  (See dkt. no. 18 at 27:6-13; dkt. no. 44 at 12:7-13:3; dkt. no. 87 at 13:8-14:1.)  Because nothing of significance has changed regarding those findings, the Court declines to discontinue the conditions of home confinement and electronic location monitoring.

### III. Conclusion

For the reasons above, Mr. Donziger's motion to discontinue the pretrial conditions of home confinement and electronic

---

[2] (See dkt. no. 227 at 3.)  Specifically, Mr. Donziger avers that he is not a flight risk because (1) he faces less than six months in prison if convicted; (2) he would not abandon his longtime residence in New York; (3) he would not abandon his wife, 14-year-old son, or extended family; (4) he would not give up his appeal efforts related to his disbarment or the civil contempt findings; and (5) he would not commit a felony to find himself living as a fugitive without the ability to travel outside Ecuador.  (See id.)

11

location monitoring [dkt. no. 227] is DENIED.  The Clerk of the Court shall close the open motion.

**SO ORDERED.**

Dated:    December 31, 2020
          New York, New York

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge