**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------x
                                             :
CHEVRON CORPORATION,                         :
                                             :
                    Plaintiff,               :
                                             :
          v.                                 :   Case No. 11 Civ. 0691 (LAK)
                                             :
STEVEN DONZIGER, et al.,                     :
                                             :
                    Defendants.              :
                                             :
------------------------------------------------------x
```

**CHEVRON CORPORATION'S FURTHER BRIEFING REGARDING THE EFFECT OF
THE SECOND CIRCUIT'S DECISION ON REPORT & RECOMMENDATION THAT
AARON MARR PAGE BE HELD IN CONTEMPT OF COURT**

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ........................................................................... 1

II. BACKGROUND ............................................................................................... 2

    A.    This Court's Report and Recommendation on Chevron's Contempt Motion ............... 2

    B.    The Second Circuit Opinion ........................................................................... 5

III. ARGUMENT ................................................................................................... 6

    A.    The Second Circuit's Opinion Does Not Disturb This Court's Findings That Page Committed Numerous Acts of Contempt .............................................. 6

    1.    Page Violated Paragraph 1 of the Default Judgment When He Transferred $342,045.16 of Investor Funds Traceable to the Ecuadorian Judgment to Donziger—and Then Received a $50,000 Kickback .................................... 6

    2.    Page Continues to Violate Paragraph 1 of the Default Judgment By Not Transferring His Interest in the Ecuadorian Judgment to Chevron .............................. 9

    B.    Page's Conduct Should Continue to Be Imputed to Forum Nobis .............................. 10

IV. CONCLUSION .............................................................................................. 10

## TABLE OF AUTHORITIES

<u>Page(s)</u>

**Cases**

*Chevron Corp. v. Donziger*,
    No. 18-855 (2d Cir. March 4, 2021) ..............................................................................1, 5, 6

*Telenor Mobile Commc'ns AS v. Storm LLC*,
    587 F. Supp. 2d 594 (S.D.N.Y. 2008), *aff'd*, 351 F. App'x 467 (2d Cir. 2009).....................10

## I.  PRELIMINARY STATEMENT

For over a decade, Aaron Marr Page has served as adjudicated racketeer Steven Donziger's "right hand person," Dkt. 2317-4, helping Donziger perpetrate a massive fraud to obtain an Ecuadorian judgment against Chevron and then violate various orders of this Court.  In the process, Page has himself engaged in contempt of this Court's orders, including willful contempt of the RICO and Default Judgments, as this Court's Report and Recommendation ("R&R") determined.

In its March 4, 2021 decision on Donziger's contempt appeal, the Second Circuit repeatedly underscored the serious and settled nature of the misconduct for which Donziger has been held liable, highlighting the district court's "thorough and fully persuasive fact findings and legal conclusions, which we have already affirmed in full, establishing Donziger's violations of law and ethics that added up to a pattern of racketeering in violation of the RICO statute."  *Chevron Corp. v. Donziger*, No. 18-855 (2d Cir. March 4, 2021) ("Op.") at 48; *see also id.* at 25 n.7 (affirming award of costs against Donziger, regardless of any "disparity in resources between the parties," in light of "Donziger's obstructive conduct" and fact that "costs were sought in a litigation in which Donziger has been found liable for engaging in a pattern of racketeering involving corruption of a foreign judiciary resulting in a multi-billion dollar judgment").  The Second Circuit also emphasized the narrowness of the contempt issue before it, noting that except for one "very specific alleged violation of the Injunction," Donziger did "not even attempt to challenge the district court's findings of his contumacious conduct."  *Id.* at 48; *see also id.* at 15 n.4 (itemizing the district court's "very detailed" contempt findings and noting that Donziger "admits" he failed to challenge four of the five contempt rulings); *id.* at 30–31 (affirming multiple contempt rulings).

As with Donziger's own multiple contempts, the Second Circuit's decision leaves unaltered the bulk of this Court's findings and conclusions that Page should be held in contempt:

- Page aided Donziger and the FDA in violating Paragraph 1 of both the RICO and the Default Judgments by transferring $342,045.16 in FDA funds to Donziger's personal bank account, after entry of the Default Judgment;

- Page further engaged in his own direct contempt by accepting $50,000 that was subject to the Paragraph 1 constructive trust, again after entry of the Default Judgment;

- Page has violated the constructive trust provisions of the Default Judgments by continuing to retain a 0.25% interest in the Ecuadorian judgment that Page, as an agent and attorney for the FDA, should have transferred to Chevron. On paper, Page's 0.25% interest in the $9.5 billion judgment represents nearly $24 million.

This Court's contempt rulings have particular vitality in view of this Court's finding that "Page's argument fails to excuse his repeated violations of the Default Judgment, which expressly applies to the FDA's interests in the Ecuador Judgment." Dkt. 2451 at 29. And, in addition to his violations of court orders, nothing in the Second Circuit opinion disturbs this Court's finding that Page's actions also flouted his obligations as a lawyer: "By transferring funds to Donziger's personal account, Page participated in the mishandling and commingling of client funds that he and Donziger caused to flow into and out of Donziger's personal and non-client-trust accounts in violation of their ethical obligations as attorneys." Dkt. 2451 at 13–14 n. 8.

Accordingly, Chevron respectfully requests that the Court re-affirm these contempt findings against Page and his law firm, together with the R&R's recommended sanctions.[1]

## II. BACKGROUND

## A.    This Court's Report and Recommendation on Chevron's Contempt Motion

---

[1] As instructed, Dkt. 2610 at 1, Chevron here addresses only the impact of the Second Circuit's decision in Donziger's contempt appeal on the Page contempt proceedings. Chevron respectfully maintains and does not waive its Response to Page's Objections to this Court's R&R, Dkt. 2461, as well as its previously filed "limited objection" to the "thorough and thoughtful" R&R, as appealed to Judge Kaplan. Dkt. 2452 (arguing solely that "the Court should decline Judge Lehrburger's suggestion that Chevron's contempt motion against Page be held in abeyance pending resolution of Donziger's appeal to the Second Circuit."). As for this latter point, Chevron recognizes it is likely moot unless Donziger petitions for a writ of certiorari

*(Cont'd on next page)*

On August 28, 2019, Chevron moved to hold Page and his law firm, Forum Nobis, in contempt for violating, and helping Donziger violate, this Court's March 4, 2014 RICO Judgment (Dkt. 1875), and April 23, 2018 Default Judgment (Dkt. 2316).[2]

Following full briefing and an evidentiary hearing at which Page testified, this Court issued an R&R on January 27, 2021, making extensive findings of fact that detailed Page's "active role in Donziger's efforts following the RICO Judgment to enter into investment contracts to monetize and profit from the Ecuador Judgment." Dkt. 2451 ¶ 28–36.  In particular, this Court further found that Page had collaborated with Donziger to "transfer interests in the Ecuador Judgment to financially benefit themselves," including drafting an agreement awarding Page a 0.25% interest in the Ecuadorian judgment and preparing a new retainer agreement that "reaffirmed Donziger's interest and granted Donziger a new personal interest in the Ecuador Judgment, which the Court determined should have been transferred to Chevron under Paragraph 1 of the RICO Judgment."  *Id.* ¶¶ 37–39.  Page also drafted an agreement that helped Donziger benefit financially "from the Ecuador Judgment by extinguishing Donziger's personal one-hundred and two-thousand-dollar debt," *id.* ¶ 40, and agreements granting interests in the Ecuadorian Judgment to Canadian activists and counsel after the entry of the Default Judgment "enjoined the FDA and its agents and attorneys from 'selling, assigning, pledging, transferring or encumbering any interest [in the Ecuador Judgment]'" (*id.* ¶ 41 (quoting Dkt. 1985 ¶ 4) (alteration in original)).  The Court also detailed Page's assistance in wiring, at Donziger's direction, $342,045.16 in investor funds to Donziger's personal account.  *Id.* ¶¶ 43–44.  Two days later, Donziger transferred the funds into a business account and wired $50,000 back to Forum Nobis.  *Id.* ¶ 44.

---

[2]  Given space constraints, Chevron will repeat here only the details relevant to this briefing, and respectfully refers the Court to its motion for additional background on Page, his contemptuous conduct, and his involvement in this litigation.  Dkt. 2316 at 4-21.

Turning to the merits of Chevron's motion, the Court found that Page could be held in contempt of the RICO and Default Judgments for several reasons.

*First*, while Page "knew of the RICO Judgment on or about the day it issued" (*id.* at 22), Page assisted Donziger with personally profiting from the Ecuadorian judgment by drafting an investor agreement that "extinguished a personal debt of Donziger in the amount of $102,000 in exchange for a percentage interest in the Ecuador Judgment." *Id.* at 24. Under oath, Page "denied knowing that the $102,000 was to extinguish Donziger's debt to Waters; rather, Page testified that he thought the extra $102,000 was a donation." Dkt. 2451 at 12 n.7. This Court found Page's testimony "was not reliable," because "the email trail clearly and convincingly shows that Page was aware that the Waters' agreement extinguished an earlier debt" and "no record evidence supports Page's contention that the $102,000 was a 'donation.'" *Id.* The Court noted Page's "conspicuous[]" failure to address this conduct, and that the evidence shows that "Page knew how the funds (i.e., $102,000 of debt) provided in exchange for the interest were to be used." *Id.* at 24.

*Second*, the Court found Page's May 8, 2018 transfer of $342,045.16 to Donziger violated Paragraph 1 of the RICO Judgment and Paragraph 1 of the Default Judgment by transferring to Donziger rather than to Chevron funds traceable to the Ecuadorian judgment. *Id.* at 25.

*Third*, Page's acceptance of $50,000 that Donziger transferred back to Forum Nobis out of the $342,045.16 constituted a separate contempt violation. *Id.* The Court specifically found that Page's actions also violated Paragraph 1 of the Default Judgment, and that Page knew of the Default Judgment "on or about the time it was issued on April 23, 2018). *Id.* at 26.

*Fourth*, the Court found Page in contempt of the Default Judgment for failing to "transfer[] to Chevron his .25% (or any additional percentage) interest in the Ecuador Judgment" because, as an attorney for the FDA, he is bound by the Default Judgment's constructive trust provision. *Id.*

4

at 26–27.  (Page still has not transferred his interest in the Ecuadorian judgment to Chevron.)  The Court also found Forum Nobis in contempt, finding it "controlled entirely by Page," who "has used it as an instrument to perpetrate acts in contempt of this Court's orders."  *Id.* at 29–30.

The Court then recommended compensatory sanctions in the amount of $444,045.16, representing the total of the $102,000 in personal profit to Donziger received by exchanging an interest in the Ecuadorian judgment and the $342,045.16 in investor funds that Page received and then transferred into Donziger's personal account.  *Id*. 33.  The Court further recommended that Page and Forum Nobis be ordered to transfer to Chevron "the .25% interest and any additional percentage interest they own" in the Ecuadorian judgment to Chevron.  *Id.*

**B.     The Second Circuit Opinion**

On March 4, 2021, the U.S. Court of Appeals for the Second Circuit issued a 53-page opinion that *affirmed* all but one of the contempt findings against Donziger, pointedly acknowledging that "Donziger acted in contempt of the Injunction that resulted from the RICO Judgment in numerous ways" and that he did not "even attempt to challenge" most of this Court's "findings of his contumacious conduct."  *Chevron Corp. v. Donziger*, No. 18-855 (2d. Cir. March 4, 2021) ("Op.") at 48.  In particular, the Second Circuit acknowledged this Court's "very detailed" findings holding Donziger in contempt of the RICO Judgment for "(1) failing to transfer and assign his right to a 6.3 percent contingent fee of moneys obtained from the Ecuadorian Judgment; (2) attempting to sell a portion of his personal contingent fee recovery in exchange for services; (3) monetizing and profiting from the Ecuadorian Judgment by using it to raise funds to pay his personal expenses; (4) transferring property in which he had an interest in violation of a restraining notice; and (5) violating a court order to provide forensic experts access to certain electronically stored information," as well as for a four-year period of time failing to transfer Amazonia stock to Chevron.  Op. at 15 n.4.  Of these many contempt findings, Donziger challenged only the third

5

one: monetizing and profiting from the Ecuadorian judgment.  *Id.*

The Second Circuit held that the RICO Judgment is "unambiguous" and "would support a contempt finding if Donziger sold interests in the Ecuadorian Judgment to pay himself retainer payments."  *Id.* at 35.  It further made clear that the stay order issued by Judge Kaplan in April 2014 "could not and did not" modify the RICO Judgment.  *Id.* at 41.  The Second Circuit concluded, however, that it was possible that for a period of time, this Court's April 25, 2014 Stay Order "created ambiguity" on the question "as to what precisely Donziger could no longer do to assist his clients in raising funds to continue their litigation efforts" and reversed only as to that "limited issue."  *Id.* at 30.  The Second Circuit emphasized that to the extent that such an ambiguity may have existed, it "most emphatically no longer exists," and specifically observed that since entry of the Default Judgment, "[i]t can no longer be argued that Donziger is entitled to profit from the sale of ['his clients'] interests in the Ecuadorian Judgment."  *Id.* at 49–50 n.12.

This Court ordered briefing "on the extent to which the Second Circuit's decision requires a different outcome than previously recommended by this Court."  Dkt. 2610 at 1.  The Court did not "invit[e] reconsideration" of the R&R in any other respect.  *Id.*

### III.  ARGUMENT

**A.    The Second Circuit's Opinion Does Not Disturb This Court's Findings That Page Committed Numerous Acts of Contempt**

The R&R's findings that Page engaged in willful contempt of the RICO and Default Judgments are supported by overwhelming evidence, are consistent with the Second Circuit's opinion, and should be re-affirmed by this Court.

> **1.    Page Violated Paragraph 1 of the Default Judgment When He Transferred $342,045.16 of Investor Funds Traceable to the Ecuadorian Judgment to Donziger—and Then Received a $50,000 Kickback**

6

The Second Circuit's opinion has no effect on this Court's finding that Page willfully violated Paragraph 1 of the April 23, 2018 Default Judgment by receiving $342,045.16 traceable to the Ecuadorian judgment and later, on May 8, 2018, transferring those funds to Donziger, in exchange for a $50,000 kickback payment. Page claimed the $342,045.16 were funds "raised by the FDA" "for case litigation expenses received in exchange for an interest in a future collection" on the Ecuadorian judgment, Dkt. 2317-8 at 2, and that the funds "were FDA funds" that Donziger "had authority to spend," Dkt. 2317-7 at 293:22–25. If they were, in fact, "FDA funds," as Page testified, then Page should have transferred them to Chevron, not to Donziger, under Paragraph 1 of the Default Judgment, as this Court found. Dkt. 2451 at 25–26.

Instead of transferring these funds to Chevron, however, Page transferred the funds to Donziger's personal bank account: "Page indisputably facilitated delivery of traceable funds away from Chevron and to Donziger's personal account." *Id.* at 25. Page's $342,045.16 transfer to Donziger resulted in his willful contempt of the Default Judgment. *Id.*[3] Moreover, Page's acceptance of the $50,000 kickback from Donziger from the same funds Page transferred to Donziger (*id.* at ¶ 44) constituted a separate contempt, in direct violation of Paragraph 1 of the Default Judgment since the $50,000 was subject to the Paragraph 1 constructive trust. *Id.* at 25–26.

This analysis is consistent with the Second Circuit's opinion. Indeed, the Second Circuit repeatedly stated that it took:

> no position as to whether Donziger could be held in contempt for any actions he took or payments he received after April 23, 2018, the date of the default judgment and injunction against the nonappearing defendants, who, of course, were the only individuals with any interest in the Ecuadorian Judgment on which Donziger could have reasonably believed, between the date of the Stay Order and the imposition of

---

[3]   Page's transfer of funds to Donziger's personal account was also participation in "the mishandling and commingling of client funds" in which he and Donziger engaged, "in violation of their obligations as attorneys." Dkt. 2451 at 13–14 n.8.

a parallel injunction against them, that he was permitted to raise money.

Op. at 52 n.14, 49 n.12.  The Second Circuit explained that because "the non-appearing defendants have since been enjoined from selling their own interests in the Ecuadorian Judgment," as of the date of the Default Judgment, "it can no longer be argued that Donziger is entitled to profit from the sale of their interests."  *Id.* at 49 n.12.

This result makes sense.  Any ambiguity introduced by the April 2014 stay opinion was premised on the idea that the RICO Judgment did not bind the non-appearing LAPs or the FDA and thus "[n]othing in the [RICO] Judgment prevent[ed] the [non-appearing] LAPs . . . and their allies from continuing to raise money in the same fashion" they had before, Dkt. 1901 at 11–12, just as nothing "prevent[ed] Donziger from being paid" out of those funds "just as he ha[d] been paid" for years, *id.* at 7–8.  But once the Default Judgment was entered, that ambiguity disappeared because the Default Judgment *did* prevent the LAPs and their allies from raising funds by selling interests in the Ecuadorian judgment and, moreover, created a constructive trust with respect to "all property . . . that the Defaulted Defendants ***have received***, or may hereafter may receive, . . . or to which the Defaulted Defendants ***now have***, or hereafter obtain, any right title or interest, . . . that is traceable to the [Ecuadorian] judgment."  Dkt. 1985 ¶ 1 (emphasis added).  Even if some ambiguity existed as to what activities were permissible at the time the funds were raised, the Default Judgment made clear that the constructive trust applied to all property traceable to the Ecuadorian judgment to which the Defaulted Defendants had an interest when the Default Judgment was entered, regardless of when that property was obtained.

Because the funds Page received were raised by selling interests in the Ecuadorian judgment and were thus traceable to that judgment, they were subject to the constructive trust created by Paragraph 1 of the Default Judgment.  By that time, there was also no ambiguity that Donziger was obligated under the RICO and Default Judgments to transfer to Chevron "all property . . . that

Donziger has received, or hereafter may receive, . . . that is traceable to the Judgment" (Dkt. 1875 ¶ 1).  As this Court found, Page was aware of the Default Judgment "on or about the time it was issued."  Dkt. 2451 at 26.  Page's willful decision to receive those funds and then forward them on to Donziger—rather than turning them over to Chevron, as required by the constructive trust—constitutes contempt.  For the same reasons, Page's receipt of a $50,000 kickback payment—and his failure to transfer those funds to the constructive trust—was a separate, direct contempt of Paragraph 1 of the Default Judgment.  The Second Circuit's opinion provides no basis to alter these contempt findings.

### 2. Page Continues to Violate Paragraph 1 of the Default Judgment By Not Transferring His Interest in the Ecuadorian Judgment to Chevron

The Second Circuit's opinion does not alter the fact that Page's continued possession of an interest in the Ecuadorian judgment places him in contempt of Paragraph 1 of the Default Judgment, which requires the FDA and its agents and attorneys to "transfer and forthwith assign to Chevron" "all property," including "contingent" property, "that is traceable to the Judgment." Dkt. 1985 ¶¶ 1, 7.  This Court found as much when it held that after the Default Judgment, "[a]s FDA's attorney, Page is bound by" Paragraph 1 of the Default Judgment.  R&R at 26–27.  Further, the Second Circuit explicitly affirmed Judge Kaplan's "numerous other contempt findings," including his finding that Donziger was in contempt for failure to transfer his interests in the Ecuadorian judgment to Chevron.  Op. at 30–31.  More than a year after Page seemed to recognize that his possession of an interest in the Ecuadorian judgment violated this Court's orders,[4] he has still

---

[4]  Page "agree[d] . . . that the obligation to turn over [his interest] under the default [judgment] extends backwards in time" to interests granted before the Default Judgment and stated that "there may be ways of sort of stipulating or negotiating the release of that" interest and that he "wouldn't want that to happen through a contempt finding."  Page Contempt Hr'g Tr. at 53:5–22, Jan. 16, 2020.

not turned over his interest to Chevron.  Nothing in the Second Circuit's opinion excuses this willful and ongoing contempt.

**B.      Page's Conduct Should Continue to Be Imputed to Forum Nobis**

The Second Circuit opinion does not address the issue of whether Forum Nobis is an alter ego of Page, and thus it cannot disturb this Court's recommendation that Page's conduct should be imputed to Forum Nobis.  R&R at 29–30.  This Court held that imputing a contemnor's conduct to an entity is appropriate where "a contemnor 'exercise[s] complete domination over [a] corporation' and uses that entity to engage in contemptuous behavior," *id.* at 29 (quoting *Telenor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 619 (S.D.N.Y. 2008), *aff'd*, 351 F. App'x 467 (2d Cir. 2009)) (alterations in original), and found that Page's "dominance" over and use of his "alter-ego law firm" to perpetrate contempt of this Court's orders justifies a contempt finding against Forum Nobis.  R&R at 29–30.  And the example this Court cited of Page's use of Forum Nobis to violate the RICO and Default Judgments—the transfer of $342,045.16 in funds traceable to the Ecuadorian judgment through Forum Nobis's account to Donziger's personal account— occurred after entry of the Default Judgment.  *See* Section III.A.1.

## IV.  CONCLUSION

The Court should reaffirm its findings that Page violated Paragraph 1 of the Default Judgment with respect to the $342,045.16 transfer (including its associated $50,000 kickback) and continues to violate Paragraph 1 of the Default Judgment by failing to turn over his interest in the Ecuadorian judgment to Chevron.  The Court should also affirm the R&R's recommended commensurate sanctions, including compensatory sanctions in the amount of $342,045.16 and the assignment of Page's 0.25% interest in the Ecuadorian judgment to Chevron on terms substantially identical to those under which Donziger transferred his interest in the Ecuadorian judgment.

Dated: April 21, 2021

Respectfully submitted,

*/s/ Randy M. Mastro*
Randy M. Mastro
Andrea E. Neuman
Anne Champion
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY  10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520
Email: WThomson@gibsondunn.com

Stern, Kilcullen & Rufolo LLC
Herbert J. Stern
Joel M. Silverstein
325 Columbia Tpke, Ste 110
P.O. Box 992
Florham Park, New Jersey 07932-0992
Telephone:  973.535.1900
Facsimile:  973.535.9664
Email: hstern@sgklaw.com
Email: jsilverstein@sgklaw.com

*Attorneys for Chevron Corporation*