UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

STEVEN DONZIGER,

　　　　　　　　　　Defendant.

19 Cr. 561 (LAP); 11 Civ. 691 (LAK)

**MEMORANDUM OF LAW OF THE UNITED STATES IN
<u>OPPOSITION TO THE DEFENDANT'S THIRD MOTION TO DISMISS</u>**

Rita M. Glavin
Brian P. Maloney
Sareen K. Armani

*Special Prosecutors on behalf of the
United States of America*

**TABLE OF CONTENTS**

TABLE OF CONTENTS....................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ..................................................................................................................... 12

I.      THE SUBSTANCE OF THE DEFENSE CLAIMS OF VINDICTIVE AND
        SELECTIVE PROSECUTION ARE MERITLESS AND HAVE ALREADY BEEN
        DECIDED BY THIS COURT ................................................................................ 12

        A.      Applicable Law................................................................................................ 12

        B.      Discussion ....................................................................................................... 15

II.     DONZIGER'S REQUEST FOR DISCOVERY IS MERITLESS ................................... 23

        A.      Applicable Law................................................................................................ 23

        B.      Discussion ....................................................................................................... 24

III.    THE DEFENSE'S RENEWED MOTION TO RECUSE THE COURT IS
        WITHOUT MERIT .............................................................................................. 25

        A.      Applicable Law................................................................................................ 25

        B.      Discussion ....................................................................................................... 26

CONCLUSION.................................................................................................................. 28

# TABLE OF AUTHORITIES

## CASES

*Bordenkircher v. Hayes*,
    434 U.S. 357 (1978).................................................................................. 13

*Brady v. Maryland*,
    373 U.S. 83 (1963)..................................................................................... 24

*Dinler v. City of N.Y. (In re City of N.Y.)*,
    607 F.3d 923 (2d Cir. 2010)...................................................................... 21

*Goldfine v. United States*,
    268 F.2d 941 (1st Cir. 1959)..................................................................... 17

*Gompers v. Bucks Stove & Range Co.*,
    221 U.S. 418 (1911).................................................................................. 14

*Hoffenberg v. United States*,
    333 F.Supp. 2d 166 (S.D.N.Y. 2004)....................................................... 26

*In re Crim. Contempt Proc. Against Crawford*,
    329 F.3d 131 (2d Cir. 2003)...................................................................... 20

*In re Drexel Burnham Lambert Inc.*,
    861 F.2d 1307 (2d Cir. 1988).................................................................... 25

*In re Holloway*,
    995 F.2d 1080 (D.C. Cir. 1993).............................................................. 7, 18

*In re Levine*,
    27 F.3d 594 (D.C Cir. 1994)............................................................... *passim*

*In re Weiss*,
    703 F.3d 653 (2d Cir. 1983) ..................................................................... 21

*Lamborn v. Dittmer*,
    726 F. Supp. 510 (S.D.N.Y. 1989) ........................................................... 26

*Leja v. Schmidt Mfg., Inc.*,
    No. 01-5042, 2010 U.S. Dist. LEXIS 61876 (D.N.J. June 22, 2010)....................... 27

*Liteky v. United States*,
    510 U.S. 540 (1994).................................................................................. 16

*Marcavage v. Bd. of Trs. of Temple Univ.*,
    232 F. App'x 79 (3d Cir. 2007) ...................................................... 2, 27

*Moran v. Clarke*,
    213 F. Supp. 2d 1067 (E.D. Mo. 2002)........................................... 28

*United States v. Alameh*,
    341 F.3d 167 (2d Cir. 2003).............................................................. 13

*United States v. Armstrong*,
    517 U.S. 456 (1996)................................................................. 13, 23

*United States v. Avenatti*,
    433 F. Supp. 3d 552 (S.D.N.Y. 2020)............................................. 23

*United States v. Bass*,
    536 U.S. 862 (2002)........................................................................... 23

*United States v. Cutler*,
    58 F.3d 825 (2d Cir. 1995).......................................................... 20, 26

*United States v. Fares*,
    978 F.2d 52 (2d Cir. 1992)................................................... 13, 23, 24

*United States v. Goodwin*,
    457 U.S. 368 (1982)........................................................................... 12

*United States v. Hinton*,
    703 F.2d 672 (2d Cir. 1983).............................................................. 13

*United States v. Johnson*,
    171 F.3d 139 (2d Cir. 1999).............................................................. 12

*United States v. King*,
    126 F.3d 394 (2d Cir. 1997).............................................................. 12

*United States v. Koh*,
    199 F.3d 632 (2d Cir. 1999).............................................................. 12

*United States v. Lovaglia*,
    954 F.2d 811 (2d Cir. 1992)........................................................ 25, 26

*United States v. Moon*,
    718 F.2d 1210 (2d Cir. 1983)............................................................ 13

*United States v. Sanders*,
  211 F.3d 711 (2d Cir. 2000)................................................................................ 12, 23

*United States v. Souza*,
  No. 06 Cr. 806, 2008 WL 753736 (E.D.N.Y. Mar. 19, 2008) ................................ 24

*United States v. Stewart*,
  590 F.3d 93 (2d Cir. 2009).................................................................................. 13

*United States v. United Mine Workers*,
  330 U.S. 258 (1947)............................................................................................ 20

*Young v. United States ex rel. Vuitton*,
  481 U.S. 787 (1987).................................................................................... *passim*

## STATUTORY AUTHORITIES

18 U.S.C. § 401(3) ...................................................................................................... 3
18 U.S.C. § 3500.......................................................................................................... 24
28 U.S.C. § 455(a)........................................................................................................ 25

## RULES AND REGULATIONS

Fed. R. Crim. P. 42 ............................................................................................. *passim*

The Government opposes the defendant's third motion to dismiss the criminal contempt charges in the Order to Show Cause for the reasons set forth below.

## PRELIMINARY STATEMENT

The defendant's motion seeks (1) dismissal on the grounds of "vindictive and selective prosecution," or in the alternative, "unconstitutional use of Fed. R. Crim. P. 42, as applied," or in the alternative, (2) "authorizing discovery and directing the parties to confer on an expedited discovery plan that will provide the defense with the requested information and deposition testimony in advance of trial"; and (3) "recusing the presiding judge and directing that another judge of this court be selected by random assignment." Dkt. 258 at 1.

Defendant Steven Donziger contends that he is the subject of a "vindictive and selective prosecution," and therefore the use of Fed. R. Crim. P. 42 is unconstitutional under these circumstances (*see* Dkt. 259 at 5-10). The defendant's arguments in support of that claim are principally directed at Judge Kaplan's (1) issuance of an Order to Show Cause why Donziger should not be held in criminal contempt for his repeated disobedience of court orders, (2) transfer of the criminal contempt matter to this Court pursuant to Rule 14 of the S.D.N.Y. Rules for the Division of Business Among District Judges ("RDB"), and (3) appointment of the three Special Prosecutors from Seward & Kissel LLP ("Seward") to prosecute the criminal contempt after the U.S. Attorneys' Office for the Southern District of New York "respectfully decline[d] on the ground that the matter would require resources that we do not readily have available." Civ. Dkt. 2277; *see* Fed. R. Crim. P. 42(a)(2) ("If the government declines the request, the court *must* appoint another attorney to prosecute the contempt.") (emphasis added).

Because Donziger has already litigated, and this Court rejected, his claims that (1) Judge Kaplan has "demonstrable bias" and improperly instituted these criminal contempt charges, (2) the case was improperly transferred to this Court and should be randomly reassigned, and (3)

the Special Prosecutors have a conflict of interest based on the law firm Seward & Kissel LLP's ("Seward") purported ties to Chevron and the oil and gas industry, the Court should similarly reject those same repackaged claims in this motion.  *See* Dkts. 60, 65, 68.

With respect to the defendant's request for undefined discovery from the District Court and the Special Prosecutors into "further facts related to the dismissal claims, specifically addressing the roles, relationships and actions of Judge Kaplan, the private prosecutor, Chevron and Judge Preska," s*ee* Dkt. 260 at ¶ 2(b), so that he may "further establish his vindictive and selective prosecution claims," Dkt. 259 at 10-11, the defense has not made the requisite evidentiary showing that he is entitled to such undefined discovery. Donziger's unsupported proffers, speculation, conspiracy theories, and generalizations are not sufficient evidence to support a claim for selective or vindictive prosecution or to support discovery for those claims.

Finally, the Court should deny the defendant's third recusal motion, for which there is no argument made in his brief other than a reference to Judge Kaplan "hand-picking" the judge in this criminal contempt case and "hand-picking" the prosecutors "who also appear to have personal ties to the presiding judge" by serving "on a law school alumni committee together." Dkt. 259 at 12.  This Court already addressed and denied two recusal motions that complained about the transfer of the criminal contempt case to this Court under RDB Rule 14 rather than by random assignment.  Dkt. 68 at 10-12; Dkt. 171. As for the Court's service on a law school alumni committee with one of the special prosecutors, such service is not enough to cause an objective observer, knowing all the facts, to reasonably question a judge's impartiality. *See Marcavage v. Bd. of Trs. of Temple Univ. of the Commonwealth Sys. of Higher Educ.*, 232 F. App'x 79, 83 (3d Cir. 2007) ("Common membership in a legal organization between a judge and counsel is not, by itself, enough to create a situation in which a judge's impartiality might reasonably be questioned.

Any other rule would potentially preclude a substantial number of judges from presiding over cases before a large portion of the bar.")

## BACKGROUND

### A.  The Initiation of Criminal Charges

On July 31, 2019, the Honorable Lewis A. Kaplan issued an order directing Defendant Steven Donziger to show cause why he should not be held in criminal contempt of court, in violation of 18 U.S.C. § 401(3), citing six separate counts:

- Counts One through Three are based on Donziger's conduct in violating orders during post-judgment discovery: (1) from March 8, 2019 through May 28, 2019, failing to provide a list of his electronic devices, messaging accounts and document management accounts as directed by paragraph four of a March 5, 2019 "Forensic Inspection Protocol" Order ("Protocol") to govern the collection, imaging and examination of Donziger's electronically stored information; (2) from March 18, 2019 through at least May 28, 2019, failing to surrender his electronic devices for imaging as directed by paragraph five of the Protocol; and (3) from June 12, 2019 through at least July 31, 2019, failing to surrender his passports to the Clerk of the Court as directed by a June 11, 2019 order.

- Counts Four and Five are based on Donziger's disobedience of paragraph one of the RICO Judgment: (4) from March 4, 2014 through September 3, 2018, Donziger's failure and refusal to assign to Chevron his right under a 2011 Retainer Agreement to a 6.3% contingent fee interest in the Ecuadorian judgment; and (5) from November 1, 2017 through May 27, 2019, Donziger's failure and refusal to assign to Chevron his right under a 2017 Retainer Agreement to a 6.3% contingent fee interest in Ecuadorian judgment.

- Count Six is based on Donziger's disobedience of paragraph five of the RICO Judgment by, on December 23, 2016, pledging a portion of his contingent fee interest in the Ecuadorian judgment in exchange for personal services.

See Dkt. 1.  These charges were initiated on notice by an Order to Show Cause only after Donziger had, for more than a year, disobeyed court orders that were not stayed or modified, and for which Donziger strategically sought no stay or mandamus relief from the Second Circuit. See, e.g., Dkt. 62 at 17-18. As Judge Kaplan summarized in his response to Second Circuit mandamus petition:

> By July 2019, Donziger remained in violation of the RICO Judgment, the May 23 and July 23, 2018 Orders, the Passport Order, and paragraphs 4 and 5 of the Protocol. The civil contempt sanctions did not induce his compliance, and he repeatedly asserted that he would "defy the [c]ourt's order[s]" unless they were affirmed by this Court. [Dkt. 2184; Dkt. 2173-1.]. Having exhausted all other options, the district court tendered the prosecution of Donziger for criminal contempt of court to the U.S. Attorney.

2d Cir. No. 20-464, Dkt. 28 (J. Kaplan Response to Petition for a Writ of Mandamus) at 17-18. After the U.S. Attorney's Office for the S.D.N.Y. "respectfully decline[d] on the ground that the matter would require resources that we do not readily have available," Civ. Dkt.[1] 2277, Judge Kaplan followed Fed. R. Crim. P. 42(a) in initiating criminal contempt charges on notice by an Order to Show Cause and appointed the undersigned counsel to prosecute the criminal contempt charges on behalf of the United States:

> The district court followed Rule 42(a) to the letter. It tendered the prosecution to the U.S. Attorney. It gave the notice required by Rule 42(a)(1) by issuing an order to show cause. When the government "respectfully decline[d] [prosecution] on the ground that the matter would require resources that we do not readily have available," the court appointed outside attorneys to prosecute the case, as Rule 42(a)(2) *required*. The suggestions that the district court usurped the functions of the prosecutor or the grand jury or erred in appointing outside counsel to prosecute once the U.S. Attorney declined are frivolous.

2d Cir. No. 20-464, Dkt. 28 at 44, 48 (J. Kaplan Response to Petition for a Writ of Mandamus) (emphasis in original). This criminal contempt case was properly transferred to this Court, in accordance with Rule 14 of the Southern District Rules for the Division of Business Among District Judges ("RDB"). *Id.* at 46-47 (explaining that the criminal case came to the Court under RDB Rule 14, which provides that "[a]ny judge, upon written advice to the assignment

---

[1] References to "Civ. Dkt." refer to docket entries in *Chevron Corp. v. Steven Donziger*, 11-cv-691 (LAK).

committee, may transfer directly any case or any part of any case on that judge's docket to any consenting judge").

**B.  The Initial Pretrial Motions**

On February 27, 2020, the defendant moved among other things for dismissal of the charges contained in the Order to Show Cause.  *See* Dkt. 60 (Defense Pretrial Motions) at 24-33.  The defense cited that to guard against "intemperate use" of the contempt power, only "[t]he least possible power adequate to the end proposed" should be used in contempt cases and argued that Judge Kaplan did not conform to this principle.  *See id.* at 5 (citing *Young v. United States ex rel. Vuitton*, 481 U.S. 787, 801 (1987) (quotations omitted).  The defense argued that Judge Kaplan had a "demonstrable bias" against Donziger, based on: events in 2010 and 2011 that the defense already argued in an unsuccessful recusal motion in the *Chevron Corp. v. Donziger*, 11 Civ. 691 (the "Civil Case") before Judge Kaplan; the "nature and timing" of the criminal contempt charges; appointment of lawyers from Seward with "ties" to the oil and gas industry; and the manner of the transfer of the criminal contempt charges to this Court rather than by random assignment.  The defense moved to disqualify (1) the Special Prosecutors based on sweeping assertions of Seward's purported "ties" to Chevron and the oil and gas industry, and (2) all judges from the Southern District of New York, including this Court, from presiding over the case.  Dkt. 60 at 14-21.  The defense raised concerns that Judge Kaplan was improperly involving himself in the criminal contempt case and/or communicating with the Court.  Dkt. 60 at 15-16; Dkt. 65 at 12-16.

The Special Prosecutors opposed the pretrial motions on March 24, 2020.  *See* Dkt. 62.  Contrary to the defense arguments that Judge Kaplan did not use the "least possible

power adequate to the end proposed," the Special Prosecutors cited that the defendant ignored

critical, undisputed facts, including that:

- The defendant did not produce documents as directed by June 15, 2018 and August 15, 2018 (and still has not), and continued to withhold documents on previously rejected First Amendment objections and unspecified privilege assertions.

- The defendant did not provide by March 8, 2019, as directed, a sworn list of all his electronic devices, communication and messaging accounts, and document management services accounts.

- The defendant did not surrender his electronic devices for imaging by March 18, 2019 at 12:00 p.m. as directed (and still has not).

- On March 11, 2019, the defendant stated that he would go into civil contempt rather than comply with the March 5, 2019 Protocol order.  Civ. Dkt. 2173-1.

- On May 23 and June 4, 2019, Judge Kaplan found the defendant in civil contempt and imposed coercive fines.

- The defendant did not surrender his passport to the Clerk of the Court by June 12, 2019 at 4 p.m. as directed by the June 11 order, nor at any point thereafter.[2]

- No stay was in effect for any of the above-referenced orders, and the defendant did not seek appellate relief from compliance with those orders, such as a stay or mandamus.

Dkt. 62 at 30-31.  The record demonstrated that Judge Kaplan instituted criminal contempt

charges only after findings of civil contempt and coercive fines and sanctions did not induce

Donziger's compliance with outstanding orders. With respect to Donziger's characterization of

his refusal to comply with court orders as "persistent, ethically grounded and strenuous

advocacy," the Special Prosecutors argued that this was not a defense given Donziger's failure to

seek appellate relief from those outstanding orders.  *See id.* at 32.

---

[2] The defendant surrendered his passports to Pretrial Services in August 2019 as a condition of his release in this criminal contempt case. Dkt. 12.

On May 7, 2020, the Court denied the defendant's pretrial motions. Dkt. 68 at 1. With respect to the defense contention that the contempt charges instituted by Judge Kaplan were "intemperate" or otherwise excessive or unwarranted, the Court found as follows:

> From the facts set forth in the parties' papers, however, it appears that Mr. Donziger left Judge Kaplan with no real option other than criminal charges. Mr. Donziger is alleged to have repeatedly defied court orders, openly invited civil contempt, and refused to budge even when faced with coercive sanctions. That course of conduct gives "no basis for thinking that more orders, warnings, or threats would have produced improvement." In re Holloway, 995 F.2d 1080, 1087 (D.C. Cir. 1993); see also In re Levine, 27 F.3d 594, 595 (D.C Cir. 1994) ("When the presiding judge makes serious and repeated efforts to require a lawyer to abide by the judge's orders, it is difficult to discern 'what lesser remedy [the judge] could have reasonably employed.'" (quoting Holloway, 995 F.2d at 1087)). The Court therefore disagrees that contempt charges were excessive or unwarranted under the circumstances alleged.

Dkt. 68 at 22-23.

The defense motions to disqualify the Special Prosecutors, as well as all S.D.N.Y. Judges and this Court, were likewise denied. *Id.* at 9, 10-20. With respect to the Special Prosecutors, the Court analyzed the defense claims through the lens of *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987) and found that the defense argument that Seward had a financial conflict based on its clients' ties to Chevron was "wholly unconvincing." Dkt. 68 at 15. As the Court stated:

> Even if Seward's clients do a large volume of business with Chevron and other oil companies, Mr. Donziger makes no effort to explain how those clients could be made better off and worse off or affected in any way whatsoever depending on how the special prosecutors go about this case. . . . [N]o scenario presents itself in which financial rewards for Seward's clients might trickle down from the special prosecutors' decision. To the extent Mr. Donziger argues that the prosecutors might come after him harder than they otherwise would to indulge their shipping clients, who may generally like to see Chevron happy, that theory is far too attenuated to justify relief. The ties between Seward's client and Chevron and the oil industry

creates no conflicts of interest, real or potential, of the ilk *Vuitton* warned against.

Dkt. 68 at 16.   With respect to Seward's prior legal work for Chevron in the last 10 years—i.e., preparation of corporate forms and issuance of related legal opinion for two Chevron foreign affiliates in 2016 and 2018, which generated around $30,000 in legal fees and disbursements, amounting to less than 0.1% of Seward's 2016 and 2018 revenues—the Court ruled that this "minimal" work did not create a conflict of interest requiring disqualification of the Special Prosecutors.  *Id.* at 15-17.   The Court noted that Seward does not currently serve as Chevron's counsel, and found: "In light of the extremely limited scope of Seward's work for Chevron, their former relationship does not risk a conflict for the prosecutors or otherwise give rise to an appearance of impropriety."  *Id.* at 20.

As for the motion to disqualify all S.D.N.Y. Judges, the Court denied the motion, noting:   "Reviewing the decisions of fellow judges is, simply put, part of the judicial job description.  To the extent such a review is called for here, it is neither extraordinary nor grounds for recusal."  Dkt. 68 at 8 (quoting *United States v. Cutler*, 796 F. Supp. 710, 714 (E.D.N.Y. 1992), "All judges, whether trial or appellate, are called upon on an almost daily basis to review decisions of other judges:  it is a routine part of their work and friendship or collegiality plays no part in their decisions."). As for the motion for this Court to recuse itself because of the manner in which this case was transferred, the Court determined: "given that Judge Kaplan was not required to recuse himself, there is no merit to Mr. Donziger's contention that his decision to transfer this case to the undersigned was somehow inappropriate." *Id.* at 12.

### C. The Prior Defense Discovery Demands

In letters filed December 31, 2019 and January 5, 2020, defense attorney Andrew Frisch[3] asked for an inquiry by this Court to "clarify whether and the extent to which Judge Kaplan has played or is playing a continuing role in this prosecution" (Dkt. 49 at 2) because of a defense concern that the "substance of the prosecutors' contacts with Judge Kaplan. . . may constitute an end-run around settled law that prevent[s] his Honor from himself prosecuting Mr. Donziger." Dkt. 51 at 4. The Special Prosecutors made clear to Mr. Frisch that while Judge Kaplan appointed the prosecutors and filed the criminal charges, Judge Kaplan is not prosecuting the case. Dkts. 50, 52 at 4, 16-17. At a January 6, 2020 hearing on this issue, the Special Prosecutors stated: "the prosecution does not seek Judge Kaplan's input with respect to our prosecution decisions or our strategy, and Judge Kaplan does not weigh in on our prosecution decisions or strategy." Dkt. 52 at 16-17. This Court denied the defense request for disclosure of information regarding the Special Prosecutors' contacts with Judge Kaplan. Dkt. 52 at 18.

On February 27, 2020, in connection with the defense's first set of pretrial motions, Donziger asked this Court to "disclose how Judge Kaplan transferred [this] case and what information was relayed in doing so." (Dkt. 60 at 16.). The Court denied Donziger's request, ruling: "As far as the Court is aware, there is no rule of law that entitles a defendant to serve discovery demands on the presiding judge." Dkt. 68 at 12 n.3. The defense also requested an order directing the Special Prosecutors to disclose their communications with counsel from Gibson Dunn & Crutcher LLP. Dkt. 60 at 33-37. That motion was likewise denied as it was not encompassed within the proper scope of discovery in this criminal case. *See* Dkt. 68 at 24. The

---

[3] Mr. Frisch moved to withdraw as defense counsel for Donziger in July 2020, and this Court subsequently granted Mr. Frisch's motion to withdraw.

Court noted: "Mr. Donziger's speculation that the universe is conspiring against him is not a basis for compelling disclosure." *Id.*

By letter dated August 21, 2020 (Dkt. 131), the defense requested that the Court: require the Special Prosecutor to disclose any communications with Judge Kaplan regarding Mr. Donziger; require the Special Prosecutors to produce documents reflecting or referring to any such communications; and disclose whether any of the Special Prosecutors' invoices reflect communications between them and Judge Kaplan or his chambers. Dkt. 131 at 1.   On the issue of communications with Judge Kaplan, the Special Prosecutors again affirmed that "the prosecution does not seek Judge Kaplan's input with respect to our prosecution decisions or our strategy, and Judge Kaplan does not weigh in on our prosecution decisions or strategy" and that the information sought was outside criminal discovery rules.  Dkt. 141.  By order dated August 28, 2020, the Court denied Donziger's request, citing among other things that "[t]here is no provision permitting the disclosure requested by Mr. Donziger, and he cites to none." Dkt. 150 at 1.  As the Court had previously denied these requests, the Court also noted that Donziger "cites no fact or law overlooked by the Court sufficient to merit reconsideration."  *Id.* at 1-2.

D.      **The Prior Recusal Motions**

Following the defense's initial pre-trial motions filed on February 27, 2020, which included an unsuccessful motion to disqualify this Court (*see* Dkt. 60 at 15), on September 14, 2020, Martin Garbus, Esq. filed a "Letter Motion to Recuse Judge Preska" and sought an evidentiary hearing.  *See* Dkt. 171. Donziger's second motion to disqualify this Court claimed that the Court must recuse itself because of:  "the circumstances surrounding [its] acceptance of this case" from Judge Kaplan; Donziger's factually unsupported suspicion that Judge Kaplan is playing a "secretive role" in the case and covertly communicating with the Court and the

Government; and that the Court had somehow "mistreat[ed]" Donziger and showed

"[f]avoritism" to the Government by, among other things, imposing certain pretrial conditions,

the scheduling of the trial date for November 3, 2020, and using the word "machinations" to

describe aspects of the defense litigation strategy.  Dkt. 171 at 1-4.

      This Court denied Donziger's September 14 recusal motion by order dated

September 16, 2020.  Dkt. 172. The Court noted, first, that "because Mr. Donziger's arguments

about Judge Kaplan are just a repackaged version of the theories the Court previously rejected in

denying Mr. Donziger's first recusal motion, the Court construes the renewed arguments as a

motion for reconsideration," and found reconsideration unwarranted as Donziger had

"identifie[d] no facts or law that the Court ignored and simply elaborate[d] on the same

speculations the Court rejected months ago." Dkt. 172 at 3.  Second, the Court found that

Donziger's complaints about multiple rulings that did not go his way were not a ground for

recusal, as "[i]t is black letter law…that a party's unhappiness with the judge's decisions is not a

basis for recusal."  Dkt. 172 at 4.

      Thereafter, on November 16, 2020, Ronald L. Kuby, Esq. entered his notice of

appearance on behalf of the defendant in this criminal case.  Dkt. 215.  Mr. Kuby then wrote to

Judge Kaplan seeking to have Judge Kaplan (1) revoke the July 31, 2019 order transferring the

criminal contempt matter to this Court and (2) transfer the case to a randomly selected judge.

*See* Dkt. 216.  Mr. Kuby further requested that Judge Kaplan "formally recuse itself from further

actions in the criminal matter." *See* Dkt. 216. Judge Kaplan denied Mr. Kuby's motion by order

dated November 20, 2020.  *See* Civ. Dkt. 2590.

## ARGUMENT

### I. THE SUBSTANCE OF THE DEFENSE CLAIMS OF VINDICTIVE AND SELECTIVE PROSECUTION ARE MERITLESS AND HAVE ALREADY BEEN DECIDED BY THIS COURT

#### A. Applicable Law

##### 1. *Vindictive Prosecution*

A defendant is entitled to dismissal of a charge on the ground of alleged vindictiveness only if he demonstrates "'actual' vindictiveness, or if there is a presumption of vindictiveness that has not been rebutted by objective evidence justifying the prosecutor's action." *United States v. Johnson*, 171 F.3d 139, 140 (2d Cir. 1999) (per curiam).

To establish actual vindictiveness, a defendant must prove that the prosecutor's charging decision was a "direct and unjustifiable penalty," *United States v. Goodwin*, 457 U.S. 368, 384 n.19 (1982) (internal quotation marks omitted), that resulted "solely from the defendant's exercise of a protected legal right," *id.* at 380 n.11. "Put another way, the defendant must show that '(1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse,' and (2) the defendant would not have been prosecuted except for the animus.'" *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) (quoting *United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999)) (alteration incorporated). "A finding of actual vindictiveness requires 'direct' evidence, such as evidence of a statement by the prosecutor, which is available 'only in a rare case.'" *Johnson*, 171 F.3d at 140 (quoting *Goodwin*, 457 U.S. at 380-81 & nn.12-13, 384 & n.19).

To establish a presumption of prosecutorial vindictiveness, a defendant "must show that 'the circumstances of a case pose a realistic likelihood of such vindictiveness.'" *Sanders*, 211 F.3d at 717 (quoting *United States v. King*, 126 F.3d 394, 397 (2d Cir. 1997)

12

(internal quotation marks omitted)). "[A]ny such presumption may be overcome by objective evidence justifying the prosecutor's action." *Id*. The Second Circuit "has consistently adhered to the principle that the presumption of prosecutorial vindictiveness does not exist in a pretrial setting." *United States v. Stewart*, 590 F.3d 93, 122 (2d Cir. 2009); *see also, e.g., United States v. Hinton*, 703 F.2d 672, 678 (2d Cir. 1983) ("[A] presumption of prosecutorial vindictiveness does not exist in a pre-trial setting.").

##### 2.   *Selective Prosecution*

To establish a claim of selective prosecution, a defendant must present "clear evidence" that the decision to prosecute not only (1) "had a discriminatory effect" but was also (2) "motivated by a discriminatory purpose." *United States v. Armstrong*, 517 U.S. 456, 465 (1996); *United States v. Alameh*, 341 F.3d 167, 173 (2d Cir. 2003); *United States v. Fares*, 978 F.2d 52, 59 (2d Cir. 1992); *United States v. Moon*, 718 F.2d 1210, 1229 (2d Cir. 1983). The crux of a selective prosecution claim is that "the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *See Armstrong*, 517 U.S. at 464 (internal quotation marks omitted). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Id*. (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 54 L. Ed. 2d 604, 98 S. Ct. 663 (1978)).

##### 3.   *The Judicial Contempt Power*

Courts possess the inherent authority to initiate contempt proceedings, and to appoint a private attorney to prosecute contempt charges. *Young v. United States ex rel. Vuitton Et Fils S. A.*, 481 U.S. 787, 793 (1987) ("[I]t is long settled that courts possess inherent authority

to initiate contempt proceedings for disobedience to their orders, authority which necessarily encompasses the ability to appoint a private attorney to prosecute the contempt."); *id.* at 795 ("the initiation of contempt proceedings to punish disobedience to court orders is a part of the judicial function."); *id.* at 796 ("If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls 'the judicial power of the United States' would be a mere mockery.") (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911)).  Indeed, as the Supreme Court stated in *Vuitton*:

> [T]here could be no more important duty than to render such a decree as would serve to vindicate the jurisdiction and authority of courts to enforce orders and to punish acts of disobedience. Courts cannot be at the mercy of another Branch in deciding whether such proceedings should be initiated. The ability to appoint a private attorney to prosecute a contempt action satisfies the need for an independent means of self-protection, without which courts would be mere boards of arbitration whose judgments and decrees would be only advisory.

481 U.S. at 796 (internal quotations and citations omitted).

The prosecution of contempt charges arising from the actions or conduct of parties within the court's jurisdiction vindicates the authority of the judiciary to regulate persons who appear before them in judicial proceedings.  *See id.* at 800 ("In punishing contempt, the Judiciary is sanctioning conduct that violates specific duties imposed by the court itself, arising directly from the parties' participation in judicial proceedings."); *id.* at 800-01 ("While contempt proceedings are sufficiently criminal in nature to warrant the imposition of many procedural protections, their fundamental purpose is to preserve respect for the judicial system itself.  As a result, courts have long had, and must continue to have, the authority to appoint private attorneys to initiate such proceedings when the need arises.").  This exercise of judicial authority is restrained by the

principle that only "the least possible power adequate to the end proposed" should be used in contempt cases.  *See id.* at 801.

**B.  Discussion**

Donziger does not find himself in this criminal contempt case based on his speculative contentions that he is the victim of "10+ years of animus" from Judge Kaplan or "personal ill-will" to "target and retaliate against Mr. Donziger's exercise of his constitutional free speech and petitioning rights" (Dkt. 259 at 8).  Instead, the record reflects that Donziger was charged with criminal contempt after deliberately and repeatedly violating various court orders over the course of years, and continuing his deliberate disobedience of court orders despite findings of civil contempt and the imposition of coercive fines and sanctions.  In denying Donziger's first motion to dismiss, this Court observed:

> From the facts set forth in the parties' papers, however, it appears that Mr. Donziger left Judge Kaplan with no real option other than criminal charges.  Mr. Donziger is alleged to have repeatedly defied court orders, openly invited civil contempt, and refused to budge even when faced with coercive sanctions.  That course of conduct gives "no basis for thinking that more orders, warnings or threats would have produced improvement". . . The Court therefore disagrees that contempt charges were excessive or unwarranted under the circumstances alleged.

Dkt. 68 at 23.

As set forth below, Donziger cites to no real basis for his "vindictive" and "selective prosecution" claims other than raising rehashed arguments already rejected by this Court.

1.     *Donziger's Unhappiness with Judge Kaplan's Decisions in the Civil Case is not a Valid Basis for a Selective or Vindictive Prosecution Claim*

Donziger's assertion that "Judge Kaplan's 10+ years of animus against Mr. Donziger" serves as "abundant actual evidence" of selective or vindictive prosecution, Dkt. 259 at 5-8, is based entirely on recycled arguments that have already been rejected by this Court and by the Circuit, namely, unhappiness with Judge Kaplan's decisions.

15

This Court already addressed and rejected the defendant's February 27, 2020 motion to dismiss on the same basis– i.e., alleged "demonstrable bias" by Judge Kaplan – much of which Donziger had rehashed from his April 20, 2011 recusal motion that Judge Kaplan denied and for which the Second Circuit denied mandamus.  *See* Dkt. 60 at 7-13 (defendant's pretrial motions brief asserting that Judge Kaplan had a "demonstrable bias" based on: events in 2010 and 2011 already cited in a previously unsuccessful recusal motion; the "nature and timing" of the criminal contempt charges; appointment of lawyers from Seward with "ties" to the oil and gas industry; and the appointment of this Court to handle the contempt charges rather than random assignment); Dkt. 62 at 15-16 (Government's opposition brief opposing those arguments and citing to Civ. Dkt. 285 at 2-5, 17-18; 2d Cir. Case No. 11-2259, Dkt. 75); Dkt. 68 (this Court's May 7, 2020 Order rejecting Donziger's motions).

The Supreme Court has held that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). "Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.*  "It is black letter law…that a party's unhappiness with the judge's decisions is not a basis for recusal." Dkt. 172 at 4.

As for the defense argument that Judge Kaplan "should have dropped the idea [to make a prosecutorial decision] or at the very minimum recused himself" after "the U.S. Attorney refused to prosecute Judge Kaplan's criminal contempt charges," Dkt. 259 at 7, nothing about

the manner in which Judge Kaplan instituted this criminal contempt proceeding was improper.[4]

Rule 42(a)(2) explicitly requires the appointment of another attorney if the government declines

to proceed.  Fed. R. Crim. P. 42(a)(2) ("If the government declines the request, the court must

appoint another attorney to prosecute the contempt.").  And this Court has found that "[t]o the

extent Mr. Donziger claims that Judge Kaplan had an obligation to recuse himself, he is

mistaken," given that "Federal Rule of Criminal Procedure 42, the basis for this contempt case,

mandates recusal only when the 'contempt involves disrespect or criticism of a judge" and that

"the recusal requirement is not triggered where, as here, criminal contempt charges flow from an

allegedly willful disobedience of court orders."  Dkt. 68 at 11. (citing *Goldfine v. United States*,

268 F.2d 941, 947 (1st Cir. 1959) (noting that Rule 42 has no mandatory disqualification

provision and that it is "routine" for the judge who issues the disobeyed order to preside over the

contempt trial).

Indeed, "because Mr. Donziger's arguments about Judge Kaplan are just a

repackaged version of the theories the Court previously rejected in denying Mr. Donziger's first

recusal motion," this Court should once again construe the renewed arguments as a motion for

reconsideration.  Dkt. 172 at 3 (finding reconsideration unwarranted because Donziger had

"identifie[d] no facts or law that the Court ignored and simply elaborate[d] on the same

speculations the Court rejected months ago").

2.   *Judge Kaplan Initiation of Criminal Contempt Proceedings Against
Donziger is not a Valid Basis for A Selective or Vindictive Prosecution
Claim*

---

[4] Donziger similarly cites to no law for his later claim that "[t]o the extent Rule 42 is interpreted
to permit this prosecution and this set of prosecutors, it is unconstitutional."  Dkt. 259 at 10.
That claim is baseless for these same reasons.

Donziger cites to no evidence for the proposition that "Judge Kaplan's targeting of Mr. Donziger['s] decision to voluntarily undertake civil contempt as a means to achieve appellate review," amounts to selective or vindictive prosecution, Dkt. 259 at 8-9.  Of course, the defense's prior argument in this context—that the contempt charges initiated by Judge Kaplan ran afoul of *Vuitton* because they were excessive or unwarranted under the circumstances—has already been raised, briefed, and rejected by this Court.  As this Court concluded from the motion to dismiss briefing, Judge Kaplan instituted the criminal contempt proceeding only after "Mr. Donziger left Judge Kaplan with no real option other than criminal charges."  Dkt. 68 at 22. Specifically, after briefing by both sides on the precise issue of whether Judge Kaplan bringing criminal charges was the "least possible power adequate to the end proposed should be used in contempt cases," this Court held:

> From the facts set forth in the parties' papers, however, it appears that Mr. Donziger left Judge Kaplan with no real option other than criminal charges. Mr. Donziger is alleged to have repeatedly defied court orders, openly invited civil contempt, and refused to budge even when faced with coercive sanctions. That course of conduct gives "no basis for thinking that more orders, warnings, or threats would have produced improvement." *In re Holloway*, 995 F.2d 1080, 1087 (D.C. Cir. 1993); *see also In re Levine*, 27 F.3d 594, 595 (D.C Cir. 1994) ("When the presiding judge makes serious and repeated efforts to require a lawyer to abide by the judge's orders, it is difficult to discern 'what lesser remedy [the judge] could have reasonably employed.'" (quoting *Holloway*, 995 F.2d at 1087)). The Court therefore disagrees that contempt charges were excessive or unwarranted under the circumstances alleged.

*Id* at 22-23.

Indeed, Judge Kaplan afforded Donziger every opportunity to comply and instituted criminal contempt proceedings only after a finding of civil contempt and imposition of coercive sanctions did not bring about the defendant's compliance with specific orders that had not been stayed and from which Donziger did not seek appellate intervention to relieve him from immediate compliance.  In particular, in April 2018, Donziger was served with post-judgment

discovery requests and then stymied discovery for more than a year by disobeying court orders that were not stayed and for which Donziger did not seek relief from compliance from the Second Circuit.  *See* Dkt. 40 at 3-4; Civ. Dkt. 2088, 2108.  In May of 2019, Judge Kaplan found Donziger in civil contempt and instituted coercive fines to induce compliance with discovery orders. Civ. Dkt. 2209. After the coercive fines did not induce compliance, Judge Kaplan imposed an additional coercive sanction, i.e., a June 11, 2019 order to surrender his passports to the Clerk of the Court. Civ. Dkt. 2232.  Donziger did not comply with that order.

On June 28, 2019, Judge Kaplan suspended further accumulation of the coercive fines for Donziger's failure to comply various orders.  Civ. Dkt. 2252.  On July 2, 2019, Judge Kaplan granted Donziger's emergency motion for a stay pending appeal of the specific provisions of the Protocol that required or permitted disclosure to Chevron of information obtained from Donziger. Civ. Dkt. 2254. However, Judge Kaplan specifically conditioned that stay on Donziger filing his appellate brief to support his appeal from the May 23 contempt findings no later than July 31, 2019. *Id*. Judge Kaplan denied the stay with respect to the provisions of the Protocol that required him to (1) provide of a list of his accounts and devices to the Neutral Forensic Expert and (2) surrender his devices to the Neutral Forensic Expert for imaging.  *Id.*  Judge Kaplan expressly directed Donziger to comply with those Protocol provisions and to "surrender his passport(s) to the Clerk as previously directed." *Id*. Donziger did not file his appellate brief by July 31, did not produce his devices to the Neutral Forensic Expert for imaging, and did not surrender any passport to the Clerk of the Court as directed. Donziger also did not seek a stay from the Second Circuit at any point during the post-judgment proceedings described above.  When Donziger finally did file his appellate brief from the civil contempt findings on September 9, 2019, Donziger did not challenge Judge Kaplan's civil

contempt findings stemming from his violations of the Protocol. *See* 2d Cir. No. 19-1584, Dkt. 48.

On July 31, 2019, after the defendant remained in disobedience of court orders that he did not appeal and were not stayed, Judge Kaplan instituted criminal contempt proceedings on notice as required by Fed. R. Crim. P. 42. Civ. Dkt. 2276.  Judge Kaplan subsequently properly commenced this Rule 42 criminal contempt proceeding only after exhausting other civil remedies, thus following the Supreme Court's suggestion in *Vuitton* that a court consider the imposition of civil contempt before resorting to criminal sanctions.  481 U.S. at 801; *see In re Levine*, 27 F.3d at 595 ("when the presiding judge makes serious and repeated efforts to require a lawyer to abide by the judge's orders, it is difficult to discern what lesser remedy the judge could reasonably have employed" (internal quotations and citation omitted)).

Further, Donziger cites to no support for his claim that "the forward-looking, relief-seeking course of action Mr. Donziger undertook [i.e. violating court orders with the intent to only face a civil contempt citation] has been repeatedly affirmed as a legitimate means of securing appellate review…and thus was a right…as a civil litigant." Dkt. 259 at 8.  To the contrary, Donziger was well aware that "a party may not challenge a district court's order by violating it. Instead, he must move to vacate or modify the order, or seek relief in [the Second Circuit].  If he fails to do either, ignores the order, and is held in contempt, he may not challenge the order unless it was transparently invalid or exceeded the district court's jurisdiction."  *United States v. Cutler*, 58 F.3d 825, 832 (2d Cir. 1995).  Further, "it is equally well established that an order that is set aside on appeal may give rise to a charge of criminal contempt." *In re Crim. Contempt Proc. Against Crawford*, 329 F.3d 131, 138-39 (2d Cir. 2003) (citing *United States v. United Mine Workers*, 330 U.S. 258, 294-95 (1947)).  Donziger made the decision to accept a

civil contempt finding—and simultaneously risk criminal contempt—by refusing to comply with court orders without seeking any appellate relief from compliance with those orders by way of a stay or mandamus.  *See Dinler v. City of N.Y. (In re City of N.Y.)*, 607 F.3d 923, 934 (2d Cir. 2010) (stating that when a party to an action refused to comply with a production order, "the choice of sanctions—civil or criminal—is vested in the discretion of the District Court"); *In re Weiss*, 703 F.3d 653, 664 (2d Cir. 1983) (holding that courts "may impose criminal contempt sanctions, or civil contempt sanctions, or both" in response to a party's willful refusal to obey a court order, "the contemnor has the power to end his contumacy," and "the determination of the appropriate response is committed largely to the court's discretion").  Donziger, having repeatedly and consciously disobeyed court orders that were not stayed or modified, cannot now claim that his decisions to risk contempt are a basis for a selective or vindictive prosecution claim.

Finally, Donziger's claim that his "core contentions as to the unlawfulness of that discovery process **have now been affirmed by the Second Circuit**" in his appeal from Judge Kaplan's May 23, 2019 civil contempt findings is false. Dkt. 259 at 8 (emphasis in original).  On March 4, 2021, the Circuit reversed the district court's May 23, 2019 civil contempt only on the narrow issue of "Donziger's sale of interests in the Ecuadorian Judgment *other than of interests in his contingent share of that judgment*," and affirmed "[t]he district court's judgment finding Donziger in contempt of its orders *in all respects* other than his participation in the sale of interests in the Ecuadorian Judgment (*as distinct from interests in his own right to a portion of that judgment as a contingent fee*)." *Donziger*, 990 F.3d at 191, 206, 214 (2d Cir. 2021) (emphasis added).  The Circuit's March 4, 2021 opinion accordingly does not disturb any of the post-judgment discovery orders that will be at issue in the May 10, 2020 criminal contempt trial.

Specifically, the Circuit affirmed the District Court's civil contempt findings with respect to the specific conduct by Donziger which forms the bases for criminal contempt in Counts One (disobedience of order directing Donziger to provide a list of his devices and accounts), Two (disobedience of order directing Donziger to surrender devices for imaging), Five (Donziger's failure to assign his interest in a contingent fee granted by a 2017 agreement with the ADF to Chevron) and Six (violating the RICO Judgment by assigning a portion of his personal interest in the Ecuadorian judgment to a coach in exchange for personal services) in the Order to Show Cause.  *See id; see also* Civ. Dkt. 2209.

3.      *Previously Rejected Conflicts Arguments Concerning the Special Prosecutors are not a Valid Basis for A Selective or Vindictive Prosecution Claim*

Donziger's argument that the "private prosecutor's ongoing prosecution merely channels Judge Kaplan's vindictiveness and is independently vindictive for conflict-of-interest reasons" because "Seward has an attorney-client relationship to Chevron and a deep loyalty to the oil & gas sector," Dkt. 259 at 9-10, is meritless and has previously been rejected by this Court.

As a preliminary matter, as the docket reflects, two of the three Special Prosecutors, including the lead prosecutor, are no longer associated with Seward & Kissel LLP.

Nevertheless, this Court has already denied the motion to disqualify the Special Prosecutors on these same grounds.  *See* Dkt. 68 at 15-16 (finding among other things that "the theory that Seward has a financial conflict based on its clients' ties to Chevron is wholly unconvincing. . . no scenario presents itself in which financial rewards for Seward's clients might trickle down from the special prosecutors' decisions," and that Seward's "former attorney-client relationship with Chevron. . .fails, too, because that relationship still does not raise the impartiality problems that necessitated disqualification in Vuitton.").  Dkt. 68 at 15-16.

The remainder of Donziger's arguments and assertions necessarily assume – without providing any basis – that the Special Prosecutors will not follow their ethical responsibilities.[5]  We have and will comply with our ethical obligations as lawyers and officers of the court.  The simple fact that the Special Prosecutors are prosecuting this case, does not form any basis for a vindictive prosecution claim.

## II.   DONZIGER'S REQUEST FOR DISCOVERY IS MERITLESS

### A.   Applicable Law

The standard for discovery in aid of a claim of a selective or vindictive prosecution is the same.  *United States v. Avenatti*, 433 F. Supp. 3d 552, 564 (S.D.N.Y. 2020).  In either case, the standard is a "rigorous" one.  *Sanders*, 211 F.3d at 717 (quoting Armstrong, 517 U.S. at 468); *see also Armstrong*, 517 U.S. at 463-64 (1996) ("the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims.").

To obtain discovery for a selective prosecution claim, a defendant "must show some evidence of both discriminatory effect and discriminatory intent." *United States v. Bass*, 536 U.S. 862, 863 (2002) (per curiam); *see also United States v. Fares*, 978 F.2d 52, 59 (2d Cir. 1992) ("[t]o warrant discovery with respect to a claim of selective prosecution, a defendant must

---

[5]      Donziger makes unsupported proffers, speculative claims, and generalizations that for example: the Special Prosecutors are engaged in "ongoing facilitation of Judge Kaplan's vindictiveness," (Dkt. 259 at 10); are using this case to deliver a "payback" for an entire industry that was deeply threatened by the litigation model Donziger dedicated his career to (*id.*); and are engaged in improper "continuing communications" with Judge Kaplan and this Court, (Dkt. 260 at ¶ 3(f).   Similarly, Mr. Garbus states that "a criminal conviction of Mr. Donziger by the Seward firm serves the financial and professional interest of Seward."  Dkt. 260 at ¶ 3(c), without providing a basis or explanation as to what those interests are and precisely how a conviction of Donziger on criminal contempt charges would advance those interests.  Further, Mr. Garbus's affidavit states that he has "been advised that [the lead prosecutor's] husband, a lawyer, worked for Exxon during the same time that she was prosecuting this case." *Id.* at ¶ 3(d). Even assuming *arguendo* that this hearsay was accurate, Mr. Garbus offers no basis for why that would support his vindictive and selective prosecution argument.

present at least 'some evidence tending to show the existence of the essential elements of the defense and that the documents in the government's possession would indeed be probative of these elements.'")  To obtain discovery under a vindictive prosecution claim, the defendant "must show 'some evidence' of 'genuine animus', not the mere possibility that animus might exist under the circumstances." *Id.* at 718.  Otherwise, "[i]t would be too easy for defendants to obtain discovery on vindictive prosecution claims if all that was required was to identify a potential motive for prosecutorial animus." *Id.*

### B.    Discussion

Donziger has provided no evidence tending to show the essential elements of his vindictive or selective prosecution claims or that the discovery he seeks would be probative of those claims.  Unsupported proffers, speculation and generalizations are not sufficient evidence to support a claim for selective or vindictive prosecution or to support discovery for those claims.  *Fares*, 978 F.2d 52, 59 (2d Cir. 1992) ("Mere assertions and generalized proffers on information and belief are insufficient.")  He cites to no law allowing for a somehow "relaxed and even reversed," Dkt. 259 at 10, standard applicable only to his case.

As this Court has previously found, "Mr. Donziger's speculation that the universe is conspiring against him is not a basis for compelling disclosure."  Dkt. 68 at 24 (denying Donziger's previous request for an order under *Brady v. Maryland*, 373 U.S. 83 (1963), directing the Government to disclose all of its communications with Chevron's counsel in the underlying civil case).  "Like all criminal defendants," Donziger is "only entitled to disclosure of statements expressly authorized by Rule 16 or otherwise discoverable as exculpatory under <u>Brady</u>, or impeaching under 18 U.S.C. § 3500." *Id.* (citing *United States v. Souza*, No. 06 Cr. 806, 2008 WL 753736, at *2 (E.D.N.Y. Mar. 19, 2008) (international quotes omitted); *see also id*. at 12 n.3 (denying Donziger's request for the Court to "disclose how Judge Kaplan transferred [this] case

and what information was relayed in doing so" because "[a]s far as the Court is aware, there is no rule of law that entitles a defendant to serve discovery demands on the presiding judge.").

Donziger is being prosecuted for his repeated, willful, and ongoing violation of court orders, and the evidence at trial will reveal the extent of Donziger's willfulness over many years in violating court orders for which there was no stay of his compliance obligations. The evidence will also show Donziger's continuing refusal to comply with court orders even after civil contempt findings and the imposition of coercive sanctions. Donziger has put forth no evidence that the Special Prosecutors are motived by a genuine animus or discriminatory purpose in prosecuting this case. Nor has he put forth any evidence that Judge Kaplan was motived by any genuine animus or discriminatory purpose of initiating this criminal contempt proceeding.

## III.  THE DEFENSE'S RENEWED MOTION TO RECUSE THE COURT IS WITHOUT MERIT

### A.  Applicable Law

Judges must recuse themselves from proceedings in which their "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). In particular, a court should ask whether "a reasonable person, knowing all the facts, [would] conclude that the trial judge's impartiality could reasonably be questioned." *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992). "Or phrased differently, would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?" *Id.*

The district judge whose partiality has been asserted may decide the motion for recusal: "[d]iscretion is confided in the district judge in the first instance to determine whether to disqualify [her]self." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988).

The court must make its determination "not by considering what a straw poll of the only partly informed man-in-the-street would show[,] but by examining the record facts and the law." *Id.* at 1313.  Recusal is not appropriate where the circumstances giving rise to the purported appearance of impropriety are "remote, contingent, indirect or speculative." *Lovaglia*, 954 F.2d at 815; *see also Hoffenberg v. United States*, 333 F.Supp.2d 166, 173 (S.D.N.Y. 2004) ("[R]ecusal motions should not be allowed to be used as strategic devices to judge shop.'"); *Lamborn v. Dittmer*, 726 F. Supp. 510, 514 (S.D.N.Y. 1989) ("A judge should not recuse [her]self on unsupported, irrational, or highly tenuous speculation.").

**B.    Discussion**

Although the defendant moves for recusal of this Court in its notice of motion (*see* Dkt. 258 at 1), the defendant's brief does not identify the specific grounds on which the recusal motion is based, instead focusing on his claim of vindictive or selective prosecution by Judge Kaplan, and raising previously litigated-and-rejected conflict of interest arguments seeking disqualification of the Special Prosecutors.  *See* Dkt. 259 at 5-10.  The defendant's brief raises in passing that Judge Kaplan "hand-picked this court to preside over the criminal case, instead of relying on the usual random selection procedure as was done in the *Cutler* case," and Judge Kaplan "hand-picked private prosecutors with personal ties to [this Court]" "having served on a law school alumni committee together."  Dkt. 259 at 7.  Neither of those facts warrant recusal.

This Court has already denied Donziger's previous motion to disqualify the Court on the grounds that, pursuant to S.D.N.Y. RDB Rule 16, Judge Kaplan "should not have transferred this case to the [Court] after he purportedly recused himself from it."  Dkt. 68 at 10.  The Court ruled that the S.D.N.Y. RDB vests no rights in litigants and even if RDB Rule 16 did apply, the rule would have no bearing here given that Judge Kaplan had not recused himself.  *Id.* at 10-12.

The Court also noted that the criminal contempt matter was properly transferred to its docket, pursuant to RDB Rule 14. *Id.* at 12 n.3.

Further, this Court's service on a law school alumni committee with one of the special prosecutors is a not basis for recusal. We understand that the defendant is apparently referring to the fact that this Court and the lead prosecutor serve on the Board of Directors for the Fordham Law School Alumni Association. That Board consists of more than 100 members, including numerous federal and state judges. *See FLAA Strategic Plan, Leadership and History*, Fordham University School of Law,

https://www.fordham.edu/info/23339/flaa_strategic_plan_leadership_and_history (last visited Apr. 27, 2021). Nothing about a judge's service on such a law school alumni association board is a basis for recusal. Judges are permitted to engage in extrajudicial activities, including "law-related pursuits and civic, charitable, educational, religious, social, financial, fiduciary, and governmental activities and may speak, write, lecture, and teach on both law-related and nonlegal subjects." Code of Conduct for United States Judges Canon 4. A judge's participation in such organizations, including, for example, common membership with counsel in bar associations or attendance at events conducted by those organizations, does not suffice to create a reasonable question about a judge's impartiality. *See Marcavage v. Bd. of Trs. of Temple Univ. of the Commonwealth Sys. of Higher Educ.*, 232 F. App'x 79, 83 (3d Cir. 2007) ("Common membership in a legal organization between a judge and counsel is not, by itself, enough to create a situation in which a judge's impartiality might reasonably be questioned. Any other rule would potentially preclude a substantial number of judges from presiding over cases before a large portion of the bar."); *see also Leja v. Schmidt Mfg., Inc.*, No. 01-5042 (DRD), 2010 U.S. Dist. LEXIS 61876, at *6 (D.N.J. June 22, 2010) (noting, upon denial of recusal motion, that to

27

permit allegations of personal friendships with members of the Bar or participation in charitable, legal and public service organizations with lawyers, law firms and other judges "to become grounds for recusal would either push judges towards a hermit like existence or open the floodgates to recusal motions."); *Moran v. Clarke*, 213 F. Supp. 2d 1067, 1073 (E.D. Mo. 2002) ("A judge's involvement with other attorneys in bar association activities is not a basis for recusal. Indeed, the commentary to Canon 4 . . . encourages judges to 'contribute to the improvement of the law, the legal system, and the administration of justice . . . . The judge is encouraged to do so, either independently or through a bar association, judicial conference, or other organization dedicated to the improvement of the law.' A judge should not be required to withdraw from all social relationships and live in seclusion.')

## CONCLUSION

For the foregoing reasons, the defendant's motion should be denied in its entirety.

Dated: April 27, 2021
New York, New York

Respectfully submitted,

*s/Rita M. Glavin*
Rita M. Glavin
Sareen K. Armani
Glavin PLLC
2585 Broadway #211
New York, NY 10025
Tel: (646) 693-5505
rglavin@glavinpllc.com
sarmani@glavinpllc.com

Brian P. Maloney
Seward & Kissel LLP
One Battery Park Plaza
New York, New York 10004
Tel: (212) 574-1200
Fax: (212) 480-8421
maloney@sewkis.com

*Special Prosecutors on behalf of the United States*

28