UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
CHEVRON CORPORATION,

            Plaintiff,

    v.

STEVEN DONZIGER, *et al.*,

            Defendants.
------------------------------------------------------------x

Case No. 11 Civ. 0691 (LAK)

**CHEVRON CORPORATION'S REPLY TO
AARON MARR PAGE'S RESPONSE PURSUANT TO DKT. 2610**

## TABLE OF CONTENTS

                                                                                                                         <u>Page</u>

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. ARGUMENT .............................................................................................................................. 2

III. CONCLUSION ......................................................................................................................... 5

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Chevron Corp. v. Donziger*,
   No. 18-855 (2d. Cir. March 4, 2021) ...................................................................................1, 2, 3

*Chevron Corp. v. Donziger*,
   384 F. Supp. 3d 465, 485 (S.D.N.Y. 2019)...................................................................................4

## I. PRELIMINARY STATEMENT

Despite spending pages re-arguing points he lost previously—contrary to this Court's express instructions (Dkt. 2610 at 1)—Aaron Marr Page all but ignores the decisive impact of the Default Judgment on the contempt proceedings before this Court. In fact, Page barely mentions it—and then only to dismiss it without analysis. But, as the Second Circuit observed, the Default Judgment removed any possible ambiguity the Stay Order might have injected into the unambiguously clear terms of the original RICO injunction. By preventing the LAPs and their allies from raising funds by selling *any* interests in the Ecuadorian judgment, any ambiguity "most emphatically no longer exists," and following entry of the Default Judgment "[i]t can no longer be argued that Donziger is entitled to profit from the sale of ['his clients'] interests in the Ecuadorian Judgment." *Chevron Corp. v. Donziger*, No. 18-855 (2d. Cir. March 4, 2021) ("Op.") at 49–50 n.12. And the Default Judgment created a constructive trust with respect to "all property . . . that the Defaulted Defendants **have received**, or hereafter may receive, . . . or to which the Defaulted Defendants **now have**, or hereafter obtain, any right title or interest, . . . that is traceable to the [Ecuadorian] Judgment." Dkt. 1985 ¶ 1 (emphasis added). As previously found by this Court, Page received, held, and transferred to Donziger funds traceable to the Ecuadorian judgment after entry of the Default Judgment—$50,000 of which then flowed back into his own pocket—and, until last week, failed to transfer his 0.25% interest in that judgment to Chevron. Far from excusing Page's misconduct, both the language and the logic of the Second Circuit's opinion confirm that these acts violated Paragraph 1 of the Default Judgment, for which this Court has already properly held Page in contempt of court.

Accordingly, as set forth herein and in Chevron's Supplemental brief (Dkt. 2620), this Court's Report & Recommendation ("R&R"), should be reaffirmed in relevant part.

## II. ARGUMENT

As Chevron noted in its Supplemental Brief, the Second Circuit's opinion left most of the findings in the R&R undisturbed.[1]

***1. The $342,045.16 Transfer.***  Page claims that the Second Circuit decision "eliminates the foundation of the court's conclusion that it was contemptuous" for Page to fail to turn over $342,045.16 in funds to Chevron and instead transfer them to Donziger. Dkt. 2621 ("Br.") at 1. According to Page, "[t]he Second Circuit held that Mr. Donziger could not be held in contempt for failing to so transfer FDA funds that he received and kept as personal payment," and that "for the same reasons" Page "cannot be held in contempt for a non-transfer of precisely the same funds and types of funds, either under the RICO Injunction or the identical operative language of the Default Judgment." *Id.* at 1. But the Second Circuit decision is grounded on the *RICO Judgment* and, as Page acknowledges, makes no findings as to the Default Judgment. *Id.* at 2 n. 2. In fact, the Second Circuit expressly "[took] no position" as to whether the Default Judgment prevented the conduct at issue. Op. at 52 n. 14. As a result, the Second Circuit's opinion had no effect on this Court's finding that "Page's acts with respect to the $342,045.16 violated Paragraph 1 of the Default Judgment," R&R at 26. Page ignores that critical distinction.

---

[1] In fact, the only contempt finding even arguably affected by the Second Circuit's opinion is the $102,000 personal debt that Page helped Donziger extinguish. As this Court previously found, the evidence is clear that Page drafted the instrument in question and "knew how the funds (i.e., $102,000 of debt) provided in exchange for the interest were to be used." R&R at 24. Because this transaction served only to benefit Donziger personally, not "to assist his clients in raising funds to continue their litigation efforts" (Op. at 30), and was not a monthly retainer, this Court's finding that Page "helped Donziger personally profit in the amount of $102,000 traceable to the Ecuador Judgment in violation of Paragraphs 1 and 5 of the RICO Judgment" (R&R at 24) is consistent with the Second Circuit's opinion. Nonetheless, in order to streamline the current proceedings, Chevron's April 21, 2021 Further Briefing did not seek contempt sanctions for Page's role in helping Donziger extinguish the $102,000 personal debt. *See* Dkt. 2620.

Page violated Paragraph 1 of the Default Judgment by transferring the $342,045.16 to Donziger after the entry of the Default Judgment, and that contempt cannot be excused based on the reasoning of the Second Circuit's opinion, which made clear that any ambiguity that the Stay Order may have created regarding the scope of the RICO Judgment was extinguished once the Default Judgment issued. *See* Op. at 49 n.12. Page ignores that reasoning, and instead simply asserts in conclusory fashion that the Second Circuit's analysis regarding the RICO Judgment should apply equally to the Default Judgment. But entry of the Default Judgment was a critical event, as its entry undermined any excuse that it was permissible for Donziger to keep funds raised by selling the interests of those defendants who had defaulted, such as the FDA.

Page has claimed that the $342,045.16 that he received and then transferred to Donziger were FDA funds raised by selling interests in the Ecuadorian judgment. Dkt. 2317-7 at 293:22–25. That assertion does not absolve him of his obligation to abide by the Default Judgment. Under the plain language of the Default Judgment, Page—as an agent for the FDA—was required to turn those funds over to Chevron because they were "traceable to the [Ecuador] Judgment." Dkt. 1985 ¶ 1. It also stands to reason that, if Page and Donziger understood the language from the RICO Judgment to enjoin sales of Donziger's interests when the injunction applied to Donziger—which appears to be the only reason why Page was involved in this transaction at all—then they must also have understood the identical language in the Default Judgment to enjoin sales of all other interests in the Ecuadorian judgment once the injunction applied to all the defaulted defendants. And the plain and unambiguous language of Paragraph 1 of the Default Judgment confirms that Paragraph 1 of the Default Judgment applied to funds already raised. The constructive trust was imposed "on all property . . . that Defaulted Defendants ***have received*** . . . or to which Defaulted Defendants ***now have*** . . . any right, title or interest, directly or indirectly, that is traceable to the

[Ecuador] Judgment." Dkt. 1985 ¶ 1 (emphases added). Thus, Paragraph 1 applied to funds raised even before the Default Judgment issued and certainly applied to the $342,045.16 that Page received and then transferred to Donziger after the Default Judgment's entry.

*2. The $50,000 Kickback.* Page does not address the impact of the Second Circuit's opinion on the $50,000 kickback that he received. That is because there is none.

Instead of addressing the Second Circuit's opinion, on this issue Page asserts that the kickback is distinguishable from how Donziger profited from the Ecuadorian judgment because it was payment for invoiced legal services as opposed to payments transferred "without any invoices or accounting." Br. at 2 n.1. Page offers no justification as to why "invoices or accounting" are relevant to the application of the Default Judgment's constructive trust (they are not), which applied to "all property" traceable to the Ecuadorian judgment. Dkt. 1985 ¶ 1.

In any event, the invoice to which Page refers—issued shortly before the $50,000 transfer to him—appears to be little more than a ruse designed to disguise the kickback as a payment for legal fees. *See* Dkt. 2317-105 at 3. The invoice was issued to Donziger in his personal capacity on April 17, 2018—just three weeks before Page transferred the $342,045.16 to Donziger and then received $50,000 back. The invoice refers to the $50,000 as a "retainer for professional services," but the circumstances surrounding its issuance all point to this payment being something else entirely. During the more than a decade that he had worked for Donziger, Page had never before been paid a retainer this large, and Page's principal role in the circuitous transactions was to cajole and threaten the lawyer for Katie Sullivan, the holder of the funds, into turning over the money despite the express terms of the RICO Judgment. *Chevron Corp. v. Donziger*, 384 F. Supp. 3d 465, 485 (S.D.N.Y. 2019), *aff'd in part, vacated and remanded in part on other grounds* by *Chevron Corp. v. Donziger*, 990 F.3d 191 (2d Cir. 2021) (citing Sullivan Decl. (Dkt. 2116) ¶¶ 56–59 &

4

Ex. 39). Further, at the time the $50,000 invoice was issued, Page was already claiming entitlement to a $7,500 monthly retainer (Dkt. 2317-105 at 2), notwithstanding that his written retainer agreements entitled him only to $5,000 per month. Dkts. 2453-2, 2453-3. And his own records show that Page was paid up on his outstanding invoices at the time the $50,000 invoice was issued. Dkt. 2317-105 (Forum Nobis statement showing account balance of "$0.00"). Page's statement that the $50,000 was payment for "invoiced legal services" (Br. at 2 n. 1) is thus demonstrably false.

**3. The 0.25% Interest.** This Court also held Page in contempt for failing to transfer his 0.25% interest in the Ecuadorian judgment to Chevron pursuant to Paragraph 1 of the RICO Judgment and Paragraph 1 of the Default Judgment. Page tries to blame Chevron for his continued flouting of the Default Judgment, claiming that Chevron "never . . . provided a form it would consider sufficient to execute a 'transfer.'" Br. at 4. But this is false, since Chevron filed a Transfer and Assignment form with this Court more than eighteen months ago. Dkt. 2317-113; *see also* Declaration of Anne Champion and Exhibit A attached thereto. In any event, this issue is now moot, as Page on April 22, 2021 finally agreed to make the transfer (Champion Decl., Ex. A.) and has provided Chevron with a signed and notarized form effecting the same.

### III. CONCLUSION

For the reasons set forth herein and in Chevron's Supplemental Brief (Dkt. 2620), the Court should reaffirm its findings and recommended sanctions that Page violated Paragraph 1 of the Default Judgment with respect to the $342,045.16 transfer (including its associated $50,000 kickback), and until last week by failing to turn over his interest in the Ecuadorian judgment.

Dated: April 30, 2021                              Respectfully submitted,

                                                           */s/ Randy M. Mastro*
                                                           Randy M. Mastro
                                                           Andrea E. Neuman
                                                           Anne Champion

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520
Email: WThomson@gibsondunn.com

Stern, Kilcullen & Rufolo LLC
Herbert J. Stern
Joel M. Silverstein
325 Columbia Tpke, Ste 110
P.O. Box 992
Florham Park, New Jersey 07932-0992
Telephone: 973.535.1900
Facsimile: 973.535.9664
Email: hstern@sgklaw.com
Email: jsilverstein@sgklaw.com

*Attorneys for Chevron Corporation*

\