UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

STEVEN DONZIGER,

                    Defendant.

No. 19-CR-561 (LAP)

No. 11-CV-691 (LAK)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

      Before the Court are Defendant Steven Donziger's (1) motion

to dismiss the July 31, 2019 Order to Show Cause on the grounds

of vindictive or selective prosecution, (see dkt. no. 258; see

also dkt. nos. 259, 260, 280, 292),[1] and (2) his related request

for oral argument, (see dkt nos. 262, 267).  The Special

Prosecutors[2] oppose the motion to dismiss, (see dkt. no. 271),

and defer to the Court on the issue of oral argument, (see dkt.

no 262).  For the reasons explained below, the motion to dismiss

and request for oral argument are DENIED.

I.    **Background**

      The Court has already recounted the lengthy procedural

history of this case in several previous orders.  (See, e.g.,

---

      [1] Unless otherwise specified, all docket cites in this order
refer to 19-CR-561.  Mr. Donziger filed only a reply
declaration; he did not file a reply memorandum of law.  (See
dkt. no. 280.)

      [2] On February 2, 2021, Mr. Donziger requested that the Court
use the designation "Special Prosecutor" to refer to the
prosecution.  (Dkt. no. 246.)  The Court will do so.

dkt. no. 68 at 2-7; dkt. no. 243 at 1-4.)  Consequently, the Court will summarize only the history relevant to the instant motion here.

### a. The Charges

This criminal contempt case is an outgrowth of Chevron Corp. v. Donziger, 11-CV-691 (S.D.N.Y.), over which Judge Lewis A. Kaplan presides.  (See dkt. no. 68 at 2.)  In 2014, following a lengthy trial, Judge Kaplan issued a decision and judgment in Chevron's favor ("the RICO Judgment").  See Chevron Corp. v. Donziger, 974 F. Supp. 2d 362 (S.D.N.Y. 2014).  The Court of Appeals affirmed that judgment, see Chevron Corp. v. Donziger, 833 F.3d 74 (2d Cir. 2016), and the Supreme Court denied certiorari, 137 S. Ct. 2268 (2017).  Most relevantly, the RICO Judgment: (1) established "a constructive trust for the benefit of Chevron on all property" that Mr. Donziger has received or receives that is traceable, directly or indirectly, to the Ecuadorian Judgment, including Mr. Donziger's personal interest in that judgment; and (2) enjoined Mr. Donziger from "undertaking any acts to monetize or profit from" the Ecuadorian Judgment.  (Dkt. no. 1875 in 11-CV-691 ¶¶ 1, 5.)

Thereafter, Judge Kaplan issued a supplemental judgment for costs against Mr. Donziger and others.  (See dkt. no. 1962 in 11-CV-691.)  On March 5, 2019, as part of the post-judgment discovery proceedings and following Mr. Donziger's refusal to

2

produce documents, Judge Kaplan issued an order (the "Protocol Order") establishing a protocol governing the collection, imaging, and examination of Mr. Donziger's electronic devices. (See dkt. no. 2172 in 11-CV-691.)  That order required Mr. Donziger, inter alia, to: (1) provide a list of all his electronic devices and accounts to an appointed forensic expert, (id. ¶ 4); and (2) surrender those devices to the forensic expert for imaging, (id. ¶ 5).  Mr. Donziger did not comply with either directive, informing the expert that he would not do so "until [his] due process rights [we]re respected."  (Dkt. no. 2173-1 in 11-CV-691 at 2.)

A few months later, Judge Kaplan issued another order (the "Passport Surrender Order") directing Mr. Donziger to surrender his passport(s) to the Clerk of the Court.  (See dkt. no. 2232 in 11-CV-691 at 2.)  That order was imposed, in addition to a series of coercive fines, as a civil contempt sanction based on Mr. Donziger's noncompliance with the Protocol Order.  (See id. at 1-2.)  Mr. Donziger filed an emergency motion to stay the contempt sanctions pending an appeal, (see dkt. no. 2234 in 11-CV-691), which Judge Kaplan granted in part and denied in part on July 2, 2019, (see dkt. nos. 2252, 2254 in 11-CV-691).  In so ordering, Judge Kaplan again directed Mr. Donziger to surrender his passports and declined to stay the Protocol Order pending appeal.  (See dkt. no. 2254 in 11-CV-691 at 3.)  Mr. Donziger

3

still did not comply and did not seek a stay or a writ of mandamus from the Court of Appeals.

On July 31, 2019, Judge Kaplan issued an order, pursuant to Federal Rule of Criminal Procedure 42 ("Rule 42"), directing Mr. Donziger to show cause why he should not be held in criminal contempt, in violation of 18 U.S.C. § 401(3). (See dkt. no. 1.) The Order to Show Cause, which was made returnable before the undersigned, cited six charges for criminal contempt premised on Mr. Donziger's alleged violations of court orders contained in the RICO Judgment, the Protocol Order, and the Passport Surrender Order. (See id. ¶¶ 1-21.)

### b. **The Initial Pretrial Motions**

On December 30, 2019, Mr. Donziger filed a letter seeking, inter alia, an order directing the Special Prosecutors to disclose the extent to which they had been in contact with Judge Kaplan during the pendency of this criminal case. (See dkt. no. 49 at 2.) The Special Prosecutors responded that "the prosecution does not work for Judge Kaplan and makes its own decisions in this case." (Dkt. no. 50 at 2.) At a January 6, 2020 hearing on the issue, the Special Prosecutors clarified that "the prosecution does not seek Judge Kaplan's input with respect to our prosecution decisions or our strategy, and Judge Kaplan does not weigh in on our prosecution decisions or strategy." (Dkt. no. 52 at 16:25-17:3.) Based on those

4

representations, the Court denied the request for disclosure.
(See id. at 18:13-22.)

On February 27, 2020, Mr. Donziger sought pre-trial relief
on several grounds. (See dkt. no. 60.)  Most relevantly, Mr.
Donziger sought: (1) recusal of the Court based on the improper
transfer of this case to the undersigned, (see id. at 15-16);
(2) the Special Prosecutors' disqualification on the basis that
the law firm of Seward & Kissel LLP ("Seward") was not
disinterested, (see id. at 17-24); and (3) dismissal of the
charges because of, among other reasons, Judge Kaplan's
"demonstrable bias" against Mr. Donziger and Judge Kaplan's
improper invocation of the criminal contempt power, (see id. at
8-14, 24-33).  The Court rejected each of those arguments.

As to the Court's recusal, the Court found that, because
Rule 42 did not require Judge Kaplan "to recuse himself, there
[wa]s no merit to Mr. Donziger's contention that [Judge
Kaplan's] decision to transfer this case to the undersigned was
somehow inappropriate."³  Regarding disqualification of the

---

³ (Dkt. no. 68 at 12; see also id. at 12 n.3.)  The Court
also denied Mr. Donziger's request that the Court disclose how
Judge Kaplan transferred the case for two reasons: (1) the Court
was not aware of, and Mr. Donziger did not identify, any "rule
of law that entitles a defendant to serve discovery demands on
the presiding judge"; and (2) Judge Kaplan had already
explained, in mandamus papers filed with the Court of Appeals,
how the case arrived before this Court. (Id. at 12 n.3; see
also dkt. no. 28 in 2d Cir. No. 20-464 at 44-47 (Kaplan, J.,
Response to Petition for Writ of Mandamus).)

Special Prosecutors, the Court analyzed the facts under <u>Young v.</u>
<u>United States ex rel. Vuitton et Fils S.A.</u>, 481 U.S. 787 (1987),
and found disqualification unwarranted for two reasons: (1)
Seward's relationships with clients who do business with Chevron
or other oil companies were far too attenuated to justify
relief, and (2) Seward did not have a current attorney-client
relationship with Chevron and its past work for the company was
both extremely limited and entirely unrelated to this case.
(See dkt. no. 68 at 13-20.)  As for Judge Kaplan's invocation of
the criminal contempt power, the Court found that "[f]rom the
facts set forth in the parties' papers, . . . it appears that
Mr. Donziger left Judge Kaplan with no real option other than
criminal charges."  (<u>Id.</u> at 22.)

### c. **Additional Disclosure and Recusal Motions**

On August 21, 2020, Mr. Donziger filed a letter asking the
Court to, among other things, (1) direct the Special Prosecutors
to disclose any communications with Judge Kaplan regarding Mr.
Donziger, and (2) order the Special Prosecutors to produce all
documents related to any communications with Judge Kaplan.  (<u>See</u>
dkt. no. 131 at 1.)  The Special Prosecutors responded by
reiterating their previous representation that Judge Kaplan was
not consulted or involved in prosecutorial decisions or
strategy.  (<u>See</u> dkt. no. 141 at 2.)  The Court denied Mr.
Donziger's request for three reasons.  First, the Court found no

legal authority applicable to criminal discovery that permitted
the disclosures sought.  (See dkt. no. 150 at 1.)  Second, the
Court observed that it had already denied the same request by
Mr. Donziger and that he "cite[d] no fact or law overlooked by
the Court sufficient to merit reconsideration."  (Id. at 2.)
And third, the Court again credited the Special Prosecutors'
representation that Judge Kaplan did not contribute to any
prosecutorial decisions or strategy.  (See id.)

A few weeks later, on September 14, 2020, Mr. Donziger
filed a letter again requesting that the Court recuse itself.
(See dkt. no. 171.)  The letter asserted that recusal was
required because of (1) the circumstances surrounding the
Court's acceptance of the case from Judge Kaplan, (2) Mr.
Donziger's speculation that Judge Kaplan was communicating ex
parte with the Court and the Special Prosecutors, and (3) the
Court's alleged mistreatment of Mr. Donziger in hearings and
written orders.  (See id. at 1-4.)  The Court denied the motion,
finding that none of Mr. Donziger's "arguments provide[d] a
basis for disqualification."  (Dkt. no. 172 at 2.)  "[B]ecause
Mr. Donziger's arguments about Judge Kaplan [we]re just a
repackaged version of the theories the Court previously
rejected"--and because Mr. Donziger did not point to any facts
or law that the Court overlooked--the Court declined to
reconsider its prior recusal order.  (Id. at 3.)  As for Mr.

Donziger's complaints regarding his treatment by the Court, the Court noted "that a party's unhappiness with the judge's decisions is not a basis for recusal." (Id. at 4.)

### d. The December 2020 Motion to Dismiss

On December 16, 2020, Mr. Donziger again moved to dismiss the criminal contempt charges but this time sought dismissal of only Counts One, Two, and Three. (See dkt. no. 225.) Those counts required Mr. Donziger to produce certain electronic devices and documents to the Court. (See dkt. no. 1 ¶¶ 1-9.) Mr. Donziger's principal argument, premised on four Supreme Court cases,[4] was that those criminal contempt charges must be dismissed because he had voluntarily invited civil contempt in order to seek appellate review. (See dkt. no. 225-1 at 3-12.) The Court disagreed, ruling that, although the cases on which Mr. Donziger relied did "sanction an avenue whereby a litigant may obtain review of certain court orders . . . by refusing to comply and risking contempt," those cases did "not limit a court's discretion as to what flavor of contempt to impose." (Dkt. no. 243 at 9.) The Court also observed that Mr. Donziger's desire to appeal did not, absent a stay, absolve him

---

[4] Those cases were Alexander v. United States, 201 U.S. 117 (1906), Cobbledick v. United States, 309 U.S. 323 (1940), United States v. Ryan, 402 U.S. 530 (1971), and Maness v. Meyers, 419 U.S. 449 (1975).

of his responsibility to comply with the challenged orders.
(See id. at 5 (citing Maness, 419 U.S. at 458).)

### e. **The Court of Appeals' March 2021 Opinion**

On March 4, 2021, the Court of Appeals issued an opinion
resolving Mr. Donziger's appeal of several orders in the
underlying civil case, most notably the supplemental judgment
awarding costs to Chevron and orders finding Mr. Donziger to be
in civil contempt and awarding compensatory sanctions.  See
Chevron Corp. v. Donziger, 990 F.3d 191, 196 (2d Cir. 2021).
The Court of Appeals affirmed the judgment awarding costs,
holding that "there [wa]s nothing unfair about this result"
because "Donziger failed to object to the imposition of costs
when he had the opportunity to do so."  Id. at 204.  As for the
civil contempt findings, the Court of Appeals affirmed, save for
one exception.  Id. at 214.

The Court reversed the "contempt finding as to Donziger's
sale of interests in the Ecuadorian Judgment other than of
interests in his contingent share of that judgment" and vacated
"the supplemental judgments awarding Chevron . . . compensatory
sanctions related to that erroneous finding and attorneys'
fees."  Id. (emphasis added).  In doing so, the Court of Appeals
went out of its way to stress the narrowness of its ruling:

> Lest this Opinion be taken as somehow vindicating
> Donziger, it is important to put our holding in
> context.  Our ruling today has no effect on, and does

not in any way call into question, the district
court's thorough and fully persuasive fact findings
and legal conclusions, which we have already affirmed
in full, establishing Donziger's violations of law and
ethics that added up to a pattern of racketeering in
violation of the RICO statute. Nor does it question
in any way the district court's conclusions that
Donziger acted in contempt of the Injunction that
resulted from the RICO Judgment in numerous ways.
Indeed, except with respect to the very specific
alleged violation of the Injunction discussed in this
Opinion, Donziger does not even attempt to challenge
the district court's findings of his contumacious
conduct.

Id. at 212-13. The Court of Appeals then remanded for "the

district court to determine the fees reasonably expended to

secure the contempt findings affirmed on appeal, and for any

further proceedings consistent with this Opinion." Id. at 215.

### f. **The Instant Motion**

Just over one week after the Court of Appeals' decision,

Mr. Donziger moved for a third time to dismiss the criminal

contempt charges. (See dkt. no. 258.) Mr. Donziger avers that:

(1) the charges must be dismissed on grounds of vindictive and

selective prosecution; (2) Rule 42 is unconstitutional as

applied to the facts of this case; (3) if dismissal is not

granted, Mr. Donziger nevertheless is entitled to discovery on

his claims; and (4) the Court must recuse itself. (See id.; see

also dkt. no. 259 at 5-11.) Mr. Donziger also seeks oral

argument on the motion. (See dkt nos. 262, 267.) Like Mr.

Donziger's previous motions to dismiss, the Special Prosecutors

10

oppose this motion.  (See dkt. no. 271.)  The Special
Prosecutors defer to the Court on whether argument is necessary.
(See dkt. no. 262.)

## II.  Discussion

### a. Selective and Vindictive Prosecution

First, Mr. Donziger asserts that dismissal of the criminal
contempt charges is necessary on the grounds of both vindictive
prosecution and selective prosecution.  (See dkt. no. 259 at 5-
10.)  Although those claims are related, the legal standards
differ slightly.

#### 1. Legal Standards

"As an initial proposition, the decision as to whether to
prosecute generally rests within the broad discretion of the
prosecutor, and a prosecutor's pretrial charging decision is
presumed legitimate."  United States v. Sanders, 211 F.3d 711,
716 (2d Cir. 2000) (cleaned up).  But "[a]ctual vindictiveness
must play no part in a prosecutorial . . . decision and, since
the fear of such vindictiveness may unconstitutionally deter a
defendant's exercise of his rights, the appearance of
vindictiveness must also be avoided."  United States v. Johnson,
171 F.3d 139, 140 (2d Cir. 1999) (per curiam).  Criminal charges
will be dismissed "if actual vindictiveness has been
demonstrated, or if, under the circumstances, there is a
presumption of vindictiveness that has not been rebutted by

11

objective evidence justifying the prosecutor's action." United States v. Stewart, 590 F.3d 93, 122 (2d Cir. 2009) (quotation marks omitted).

"To demonstrate an actual vindictive motive, the defendant must show that (1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a stalking horse, and (2) the defendant would not have been prosecuted except for the animus." United States v. Bout, 731 F.3d 233, 238 (2d Cir. 2013) (footnote and quotation marks omitted). "To establish a presumption of prosecutorial vindictiveness, the defendant must show that the circumstances of a case pose a realistic likelihood of such vindictiveness." Sanders, 211 F.3d at 717 (quotation marks omitted). The Court of Appeals "has consistently adhered to the principle that the presumption of prosecutorial vindictiveness does not exist in a pretrial setting." Stewart, 590 F.3d at 122.

Just as a prosecution cannot be motivated by animus, a "decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." United States v. Armstrong, 517 U.S. 456, 464 (1996) (quotation marks omitted). "To make out a claim of selective prosecution, a defendant . . . must provide clear evidence that the prosecutorial decision or policy in question

12

had both [1] a discriminatory effect and [2] was motivated by a discriminatory purpose." United States v. Alameh, 341 F.3d 167, 173 (2d Cir. 2003) (cleaned up).  That standard is a "rigorous" one.  Armstrong, 517 U.S. at 468.

To establish discriminatory effect, a defendant must show "that similarly situated individuals of a different classification were not prosecuted." Alameh, 341 F.3d at 173 (cleaned up).  To establish discriminatory purpose, a defendant must show more than "intent as awareness of consequences." Wayte v. United States, 470 U.S. 598, 610 (1985).  "Absent a showing that a defendant was prosecuted 'because of' protected status or conduct, a 'claim of selective prosecution fails.'" United States v. Avenatti, 433 F. Supp. 3d 552, 563 (S.D.N.Y. 2020) (quoting Wayte, 470 U.S. at 610).  "In the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute . . . generally rests entirely in his discretion." Armstrong, 517 U.S. at 464 (quotation marks omitted).

## 2. Analysis

Mr. Donziger recognizes that the traditional frameworks for analyzing vindictive and selective prosecution claims pose a difficult hurdle to clear given the "presumption of regularity" for prosecutorial decisions and the high standard for presuming

13

vindictiveness.  (See dkt. no 259 at 2-3.)  Mr. Donziger asserts, however, that those standards do not apply in his case because Judge Kaplan initiated the contempt charges and appointed private attorneys to prosecute the matter.  (See id. at 2-4.)  In Mr. Donziger's view, "the manifest irregularity of the foundation of this case justifies scrutiny, not deference." (Id. at 4 (emphasis omitted).)

Mr. Donziger offers no caselaw to support his proposed rule, however, beyond invoking the Constitution's separation-of-powers principle.  While the Court recognizes that the prosecutorial function is traditionally housed within the Executive Branch, federal law spells out a separate process for criminal contempt charges.  The charging judge must first "request that the contempt be prosecuted by an attorney for the government," but "[i]f the government declines the request" then "the court must appoint another attorney to prosecute the contempt."  FED. R. CRIM. P. 42(a)(2) (emphasis added).  The Supreme Court has stressed the importance of that provision, noting that "[t]he ability to appoint a private attorney to prosecute a contempt action satisfies the need for an independent means of self-protection, without which courts would be mere boards of arbitration whose judgments and decrees would be only advisory."  Young, 481 U.S. at 796 (quotation marks omitted) (emphasis added).  The Court will not flip the

presumption of regularity on its head where Rule 42 and the Supreme Court explicitly sanction--and, in fact, appear to require--the charging procedure used in this case when the Government declines to prosecute criminal contempt charges.

Undeterred, Mr. Donziger argues that three bases for vindictiveness or selectivity exist: (1) "Judge Kaplan's 10+ years of animus against Mr. Donziger," (dkt. no. 259 at 5); (2) "Judge Kaplan's targeting of Mr. Donziger's decision to voluntarily undertake civil contempt as a means to achieve appellate review," (id. at 8); and (3) the Special Prosecutors' channeling of Judge Kaplan's vindictiveness and their independent vindictiveness caused by their conflicts of interest, (id. at 9-10).  Those arguments are not painted on a blank canvas; Mr. Donziger has raised many of them before, some more than once, in other motions.  Although Mr. Donziger now attempts to shoehorn those contentions into a claim for either vindictive prosecution or selective prosecution, none evinces either actual vindictiveness or selectivity.[5]

---

[5] Mr. Donziger acknowledges that a presumption of "vindictiveness generally does not arise in the pretrial setting," but he contends that, "given the extraordinary and unprecedented conflicts in this matter and the absence of executive branch control of the prosecutorial function, that principle does not apply here."  (Dkt. no. 259 at 2 (emphasis omitted).)  Because he cites no authority for that proposition, the Court will not depart from the Court of Appeals' longstanding rule.  See Stewart, 590 F.3d at 122.

First, Mr. Donziger avers that "Judge Kaplan's animosity toward Mr. Donziger stretches back over a decade and is evident at every turn in the underlying civil litigation and behind the founding prosecutorial decision in this case." (Id. at 5.) That "animus," Mr. Donziger suggests, "appears to be based on a combination of personal ill-will, perhaps based on Judge Kaplan's career in private practice, and a strategic decision to target and retaliate against Mr. Donziger's exercise of his constitutional free speech and petitioning rights." (Id. at 6-7.)  To support that contention, Mr. Donziger points to (1) Judge Kaplan's decision to press forward with charging Mr. Donziger after the United States Attorney's Office respectfully declined to prosecute due to resource constraints, (2) Judge Kaplan's refusal to recuse himself, (3) Judge Kaplan's "hand-pick[ing] this court to preside over the criminal case," and (4) his "hand-pick[ing] private prosecutors with financial ties to Chevron and the oil and gas industry." (Id. at 7.)

This is not the first time Mr. Donziger has made these arguments.  Indeed, he raised all of those points in previous

motions.[6]  The Court rejected them.[7]  Rather, the only thing new about these arguments is the package in which they are presented.  Yet, even setting aside the recycled nature of Mr. Donziger's contentions, he still is not entitled to a dismissal. At base, Mr. Donziger's assertions of vindictiveness and selectivity boil down to his disagreement with several of Judge Kaplan's decisions (or comments) in the underlying civil proceedings.  But those rulings, especially considered in light of the presumption of regularity and Mr. Donziger's refusal to comply with the Court's orders, do not evidence that Judge

---

[6] (See, e.g., dkt. no. 60 at 8-14 (alleging "demonstrable bias" by Judge Kaplan); id. at 15-16 (suggesting that Judge Kaplan should have recused himself and asserting that this case was improperly transferred to the undersigned); id. at 17-24 (averring that the Special Prosecutors were not disinterested and must be disqualified); id. at 24-33 (averring that Judge Kaplan improperly invoked the power of criminal contempt); dkt. no. 171 at 1-2 (seeking this Court's disqualification based on the transfer of this case).)

[7] (See dkt. no. 68 at 10-12 & n.3 (finding nothing improper about how this case came before the undersigned); dkt. no. 172 at 1-2 (same); dkt. no. 68 at 11-12 (noting that Rule 42 did not require Judge Kaplan to recuse himself); id. at 12-20 & n.4 (observing that Mr. Donziger's arguments regarding the interestedness of the Special Prosecutors did not merit disqualification); id. at 22-23 (finding that Judge Kaplan's charging Mr. Donziger with criminal contempt was not excessive or unwarranted under the circumstances alleged); dkt. no. 172 at 2-3 (denying second recusal request based).)

Kaplan "had it in for [Mr. Donziger] for reasons unrelated to [his] view of the law."[8]

Second, Mr. Donziger asserts that Judge Kaplan initiated the criminal proceedings against him "as a strategic and bad-faith means to intimidate and oppress Mr. Donziger into giving up his legal appellate rights" related to several of Judge Kaplan's post-judgment discovery orders.[9]  Mr. Donziger offers no evidence, beyond his own speculation, to support that position. See United States v. Sanchez, 517 F.3d 651, 671 (2d Cir. 2008) ("Generalized allegations of improper motive do not disturb the presumption of regularity.").  Moreover, as the Court has already recognized, (see dkt. no. 243 at 5-9), Mr. Donziger's

---

[8] Keith v. Barnhart, 473 F.3d 782, 789 (7th Cir. 2007); see also Liteky v. United States, 510 U.S. 540, 555-56 (1994) ("Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display.").

[9] (Dkt. no. 259 at 9.)  Mr. Donziger also asserts that his "core contentions as to the unlawfulness of [the post-judgment] discovery process have now been affirmed by the Second Circuit." (Id. at (emphasis omitted).)  Not so.  To the contrary, the Court of Appeals affirmed the district court's judgments--including the award of costs to Chevron and the findings of civil contempt--in all respects save for the civil contempt finding and compensatory sanctions related to Mr. Donziger's "sale of interests in the Ecuadorian Judgment other than of interests in his contingent share of that judgment." Donziger, 990 F.3d at 214.  Indeed, the Court of Appeals took pains to clarify the narrow scope of its holding, "[l]est [its] Opinion be taken as somehow vindicating Donziger." Id. at 212.

willingness to go into civil contempt did not (1) relieve him of his obligations to comply with any unstayed orders that he wished to appeal,[10] or (2) limit Judge Kaplan's discretion to charge criminal contempt if Mr. Donziger refused to comply with those orders.[11]

Next, Mr. Donziger contends that the Special Prosecutors are merely channeling Judge Kaplan's vindictiveness through their continued prosecution of this case.  For support, Mr. Donziger points to Judge Kaplan's refusal to recuse himself, which Mr. Donziger surmises must be to provide cover for Judge Kaplan's "continu[ing] to influence or control the prosecution from behind the scenes."  (Dkt. no. 259 at 9.)  That theory is long on conjecture but short on evidence.  Mr. Donziger's suppositions regarding Judge Kaplan's motivations or involvement with the prosecution cannot substitute for actual evidence of vindictiveness or selectivity, see Sanchez, 517 F.3d at 671, especially because the Special Prosecutors have repeatedly represented that Judge Kaplan is not involved in any

---

[10] See Maness, 419 U.S. at 458 ("If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.").

[11] (See dkt. no. 243 at 6-9 (analyzing Alexander, Cobbledick, Ryan, and Maness, on which Mr. Donziger relied to support his proposed rule).)

prosecutorial strategy decisions, (<u>see</u> dkt. no. 52 at 16:25–17:3; dkt. no. 150 at 2).

Finally, Mr. Donziger posits that the Special Prosecutors' conduct is independently vindictive because (1) Seward "has an attorney-client relationship to Chevron and a deep loyalty to the oil & gas sector," (dkt. no. 259 at 9); (2) "it appears [Seward] is using this criminal case to deliver a 'payback' for an entire industry that was deeply threatened by the litigation model that Mr. Donziger openly espoused and dedicated his career to," (<u>id.</u> at 9–10); (3) Chevron and, by extension, its counsel at Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), effectively bankroll and control the criminal prosecution of Mr. Donziger through a "partnership" with the Special Prosecutors, (<u>see</u> dkt. no. 280 ¶¶ 12–15); and (4) Seward's actions are driven by an understanding that it will receive business or a "kickback" potentially worth "tens or hundreds of millions of dollars" in future legal fees from Chevron or others, (<u>see id.</u> ¶¶ 17–26).[12]

---

[12] The third and fourth arguments were raised for the first time in a reply declaration filed--under penalty of perjury, no less--by Mr. Donziger's attorney Martin Garbus. "It is well settled that a court has wide discretion to accept or reject factual assertions and arguments made for the first time on reply." <u>Wells Fargo Bank, N.A. v. Watts</u>, No. 16-CV-6919 (ENV) (RER), 2020 WL 6370057, at *1 (E.D.N.Y. May 27, 2020), <u>rep. & recommendation adopted</u>, 2020 WL 5200903 (E.D.N.Y. Sept. 1, 2020). Although these contentions certainly could have been raised in Mr. Donziger's initial moving papers, the Court will address them nonetheless.

As to the first contention, Mr. Donziger already raised the same arguments in the context of his previous motion to disqualify the Special Prosecutors.  (See dkt. no. 60 at 17-24.) The Court rejected them, (see dkt. no. 68 at 13-20), and Mr. Donziger has provided no controlling law or overlooked facts supporting reconsideration.  See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  As for the remaining allegations, they are, again, premised solely on Mr. Donziger's conjectures and suppositions, not actual evidence.  See Sanchez, 517 F.3d at 671.  The Court will not indulge Mr. Donziger's "free-wheeling theories of sinister prosecutorial motives." United States v. Basciano, No. 05-CR-060 (NGG), 2009 WL 8673013, at *3 (E.D.N.Y. Jan. 20, 2009).

In short, Mr. Donziger has not established a claim of either vindictive prosecution or selective prosecution under the governing legal standards.  See Bout, 731 F.3d at 238; Alameh, 341 F.3d at 173.  To the extent Mr. Donziger's arguments are not explicitly addressed above, the Court has considered them and found them to be meritless.  Accordingly, Mr. Donziger is not entitled to a dismissal.

### b. Fed. R. Crim. P. 42

Next, Mr. Donziger asserts that Rule 42 is unconstitutional as applied to this case because the Special Prosecutors are "interested" and "[t]he actual conduct of the prosecutors after

their appointment" establishes that point.  (Dkt. no. 259 at 10.)  But that argument simply attempts to repackage Mr. Donziger's previous contentions that the Special Prosecutors are not disinterested, which the Court has already rejected.  (See dkt. no. 68 at 13-20.)  Consequently, Mr. Donziger's as-applied constitutional challenge to Rule 42, which relies only on those previously rejected arguments, necessarily fails.  Mr. Donziger's assertion that "there appears to be no case in the United States dealing with Rule 42 that is anything like this" does not alter that conclusion.  (Dkt. no. 280 ¶ 5.)

### c. Discovery

Mr. Donziger nevertheless maintains that he is entitled to various forms of discovery, including, among other things, records and depositions regarding billing, marketing materials, communications, and internal business decisions from the Special Prosecutors and Seward as well as numerous non-parties including Chevron, Gibson Dunn, the United States Attorney's Office, former U.S. Attorney Geoffrey Berman, and unnamed public relations firms.  (See dkt. no. 259 at 10-11; dkt. no. 280 ¶ 40; dkt. no. 292 ¶¶ 1-5.)  This is not the first time that Mr. Donziger has sought at least some of this discovery.  (See dkt. nos. 49, 60, 131.)

"The standard for discovery in aid of a claim of vindictive prosecution or selective prosecution is the same."  Avenatti,

433 F. Supp. 3d at 563-64.  To obtain such discovery, "a defendant must provide some evidence tending to show the existence of the essential elements of the defense."[13]  "Mere assertions and generalized proffers on information and belief are insufficient."  United States v. Fares, 978 F.2d 52, 59 (2d Cir. 1992).  The Supreme Court has made clear that "the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims."  Armstrong, 517 U.S. at 464 (emphasis added).

Mr. Donziger has not met that standard.  As discussed above, Mr. Donziger's arguments rely on: (1) his displeasure with Judge Kaplan's rulings in the underlying civil case, (2) unsupported assertions that Judge Kaplan is somehow influencing this case from behind the scenes, (3) speculation that the Special Prosecutors are deliberately trying to punish Mr. Donziger on behalf of their clients or stand to gain millions of dollars worth of future business following their prosecution of this case, and (4) speculation that Chevron is bankrolling the prosecution of this case or otherwise pulling the strings from behind the scenes.  Related to the first bucket, the Court

---

[13] Sanders, 211 F.3d at 717 (quotation marks omitted).  Mr. Donziger asserts that the governing "standard should be dramatically relaxed and even reversed" based on the facts of this case, (dkt. no. 259 at 10), but he cites no legal authority for that proposition beyond a generalized invocation of the Constitution's separation-of-powers principle.

concluded above that Judge Kaplan's orders in the underlying civil case do not evidence that his charging Mr. Donziger was vindictive or selective.  (See supra at 16-17 & n.7.)  As for the remaining buckets, those unsupported allegations are of exactly the kind that are insufficient to merit discovery.  See Fares, 978 F.2d at 59.  Indeed, Mr. Donziger's moving papers point to absolutely nothing--only innuendo and conjecture--that would entitle him to the vast swath of discovery that he seeks.

In short, as the Court has already recognized, "Mr. Donziger's speculation that the universe is conspiring against him is not a basis for compelling disclosure."  (Dkt. no. 68 at 24.)  Because Mr. Donziger has not offered evidence tending to show the elements of either vindictive or selective prosecution, he is not entitled to discovery.

### d. Renewed Request to Recuse the Court

In his notice of motion, Mr. Donziger, for a third time, requests that the Court recuse itself.  (See dkt. no. 258.)  Mr. Donziger does not elaborate much on that argument in his memorandum of law, however, offering only that the Judge Kaplan "hand-picked private prosecutors . . . who also appear to have personal ties to the presiding judge, having served on a law school alumni committee together."  (Dkt. no. 259 at 7.)

The Court understands Mr. Donziger to be referring to the undersigned's and Ms. Glavin's membership on the Board of

Directors of the Fordham Law School Alumni Association ("FLAA"),
an organization with more than 100 members.  Canon 4 of the Code
of Conduct of United States Judges expressly authorizes a judge
to "engage in extrajudicial activities, including law-related
pursuits and civic, charitable, educational, religious, social,
financial, fiduciary, and governmental activities."  The
undersigned's involvement with the FLAA provides no basis for
recusal.[14]

To the extent Mr. Donziger's request relies on other
previously raised grounds, the Court construes it as a motion
for reconsideration of its past recusal orders.  And because Mr.
Donziger has identified no facts or law that the Court

---

[14] See, e.g., In re Aguinda, 241 F.3d 194, 203 (2d Cir.
2001) (holding that a judge's participation in programs
sponsored by bar associations or law schools does not require
recusal); Kinchen v. St. John's Univ., 830 F. App'x 691, 692-93
(2d Cir. 2020) (summary order) (holding that allegations of a
judge's "participat[ion] in a speaking engagement at St. John's
and maintain[ing] professional relationships with St. John's
alumni . . . raise no inference of bias"); Marcavage v. Bd. of
Trs. of Temple Univ., 232 F. App'x 79, 83 (3d Cir. 2007)
("Common membership in a legal organization between a judge and
counsel is not, by itself, enough to create a situation in which
a judge's impartiality might reasonably be questioned."); 
Casciani v. Town of Webster, No. 09-CV-6519L, 2012 WL 6131017,
at *1 (W.D.N.Y. Dec. 11, 2012) (holding that disqualification
was not warranted where judge and potential witness had
"attended the same college" and belonged "to the same alumni
association"); Am. Dairy Queen Corp. v. Blume, No. Civ. 11-358
(RHK/TNL), 2012 WL 1005015, at *2 (D. Minn. Mar. 26, 2012)
("Simply put, a judge must have neighbors, friends, and
acquaintances, business and social relations, and be a part of
his day and generation, but such associations do not require
recusal." (quotation marks omitted)).

overlooked in those orders, reconsideration is not warranted. See <u>Shrader</u>, 70 F.3d at 257.

### e. Oral Argument

Although parties may request oral argument, "the decision whether or not to hold an oral hearing on a motion to dismiss lies in the sound discretion of the trial court." <u>Greene v. WCI Holdings Corp.</u>, 136 F.3d 313, 316 (2d Cir. 1998) (per curiam); <u>see also</u> <u>Basciano</u>, 2009 WL 8673013, at *2 (applying <u>Greene</u>'s rule in a criminal case). Mr. Donziger believes that his "motion raises serious Constitutional issues and . . . should not be decided on submission." (Dkt. no. 267 at 1.) But, as has been explained repeatedly above, the Court has already considered--some more than once--the lion's share of issues underlying Mr. Donziger's motion. To the extent the motion raises new issues not before considered, the Court has had the benefit of detailed briefing from the parties, which more than adequately presents the issues. Oral argument is not necessary.

### III. Conclusion

For the foregoing reasons, Mr. Donziger's (1) motion to dismiss the Order to Show Cause [dkt. no. 258] and (2) request for oral argument [dkt nos. 262, 267] are <u>DENIED</u>. The Clerk of the Court shall close the open motions.

Trial in this matter will begin, as scheduled, on May 10, 2021 at 10:00 a.m. in Courtroom 24B.

**SO ORDERED.**

Dated:    May 6, 2021
          New York, New York

LORETTA A. PRESKA
Senior United States District Judge