UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-CR-561 (LAP) |
| -against- | No. 11-CV-691 (LAK) |
| STEVEN DONZIGER, | ORDER |
| Defendant. | |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court are Defendant Steven Donziger's (1) motion for reconsideration of the Court's May 7, 2020 order denying Mr. Donziger's motion to dismiss the charges against him and (2) fourth motion to dismiss the criminal contempt charges in the July 31, 2019 Order to Show Cause. (See dkt. no. 274.) The Special Prosecutors oppose the motion. (See dkt. no. 288.) Mr. Donziger did not file a reply by the agreed-upon May 6, 2021 deadline. For the reasons below, the motion for reconsideration and the motion to dismiss are DENIED.

## I. **Background**

The Court already has recounted the lengthy procedural history of this case in several prior orders. (See, e.g., dkt. no. 68 at 2-7; dkt. no. 243 at 1-4; dkt. no. 297 at 2-11.) Consequently, the Court will summarize only the history relevant to the instant motion here.

This criminal contempt case is an outgrowth of Chevron Corp. v. Donziger, 11-CV-691 (S.D.N.Y.), over which Judge Lewis

1

A. Kaplan presides.  (See dkt. no. 68 at 2.)  In 2014, following a lengthy trial, Judge Kaplan issued a decision and judgment in Chevron's favor ("the RICO Judgment").  See Chevron Corp. v. Donziger, 974 F. Supp. 2d 362 (S.D.N.Y. 2014).  The Court of Appeals affirmed that judgment, see Chevron Corp. v. Donziger, 833 F.3d 74 (2d Cir. 2016), and the Supreme Court denied certiorari, 137 S. Ct. 2268 (2017).  Most relevantly, the RICO Judgment: (1) established "a constructive trust for the benefit of Chevron on all property" that Mr. Donziger has received or receives that is traceable, directly or indirectly, to the Ecuadorian Judgment, including Mr. Donziger's personal interest in that judgment; and (2) enjoined Mr. Donziger from "undertaking any acts to monetize or profit from" the Ecuadorian Judgment.  (Dkt. no. 1875 in 11-CV-691 ¶¶ 1, 5.)

Thereafter, Judge Kaplan issued a supplemental judgment for costs against Mr. Donziger and others.  (See dkt. no. 1962 in 11-CV-691.)  On March 5, 2019, as part of the post-judgment discovery proceedings and following Mr. Donziger's refusal to produce documents, Judge Kaplan issued an order (the "Protocol Order") establishing a protocol governing the collection, imaging, and examination of Mr. Donziger's electronic devices. (See dkt. no. 2172 in 11-CV-691.)  That order required Mr. Donziger, inter alia, to: (1) provide a list of all his electronic devices and accounts to an appointed forensic expert,

(id. ¶ 4); and (2) surrender those devices to the forensic expert for imaging, (id. ¶ 5). Mr. Donziger did not comply with either directive, informing the expert that he would not do so "until [his] due process rights [we]re respected." (Dkt. no. 2173-1 in 11-CV-691 at 2.)

A few months later, Judge Kaplan issued another order (the "Passport Surrender Order") directing Mr. Donziger to surrender his passport(s) to the Clerk of the Court. (See dkt. no. 2232 in 11-CV-691 at 2.) That order was imposed, in addition to a series of coercive fines, as a civil contempt sanction based on Mr. Donziger's noncompliance with the Protocol Order. (See id. at 1-2.) Mr. Donziger filed an emergency motion to stay the contempt sanctions pending an appeal, (see dkt. no. 2234 in 11-CV-691), which Judge Kaplan granted in part and denied in part on July 2, 2019, (see dkt. nos. 2252, 2254 in 11-CV-691). In so ordering, Judge Kaplan again directed Mr. Donziger to surrender his passports and declined to stay the Protocol Order pending appeal. (See dkt. no. 2254 in 11-CV-691 at 3.) Mr. Donziger still did not comply and did not seek a stay or a writ of mandamus from the Court of Appeals.

On July 31, 2019, Judge Kaplan issued an order, pursuant to Federal Rule of Criminal Procedure 42, directing Mr. Donziger to show cause why he should not be held in criminal contempt, in violation of 18 U.S.C. § 401(3). (See dkt. no. 1.) The Order to

Show Cause, which was made returnable before the undersigned, cited six charges for criminal contempt premised on Mr. Donziger's alleged violations of court orders contained in the RICO Judgment, the Protocol Order, and the Passport Surrender Order. (See id. ¶¶ 1-21.)

On February 27, 2020, Mr. Donziger sought pre-trial relief on several grounds. (See dkt. no. 60.) Most relevantly, Mr. Donziger sought dismissal of the criminal contempt charges, asserting that: (1) some of the charges were unwarranted because Mr. Donziger purged the underlying contempt by taking corrective action before Judge Kaplan issued the Order to Show Cause, (see id. at 24, 31-32); (2) some of his alleged contemptuous conduct was "benign" or "too trivial" to warrant criminal sanctions, (id. at 24); and (3) Judge Kaplan's resort to criminal charges conflicted with the "principle that 'only the least possible power adequate to the end proposed' should be used in contempt cases," (id. at 5 (quoting Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 801 (1987); see also id. at 24).

The Court rejected each of those arguments. The first contention failed "because it misunderst[ood] the crucial distinction between civil contempt, which serves to coerce compliance with an outstanding order, and criminal contempt, which punishes the contemnor for a 'completed act of

disobedience.'"[1]   The second argument was "meritless" because the caselaw "acknowledge[d] that criminal contempt includes 'a broad range of conduct, from trivial to severe.'"   (Dkt. no. 68 at 22 (quoting United States v. Carpenter, 91 F.3d 1282, 1284 (9th Cir. 1996).)   As for the last assertion, the Court observed that:

> [f]rom the facts set forth in the parties' papers, however, it appears that Mr. Donziger left Judge Kaplan with no real option other than criminal charges. Mr. Donziger is alleged to have repeatedly defied court orders, openly invited civil contempt, and refused to budge even when faced with coercive sanctions. That course of conduct gives no basis for thinking that more orders, warnings, or threats would have produced improvement.

Id. at 22 (quotation marks and citations omitted).   On those bases, the Court denied Mr. Donziger's motion.   (See id. at 25.)

On April 30, 2021, Mr. Donziger filed the instant motion, seeking (1) reconsideration of the Court's May 7, 2020 order denying his motion to dismiss as to Counts IV and V because Mr. Donziger complied with the relevant orders before he was charged with criminal contempt, and (2) dismissal of the criminal contempt charges on the grounds that Judge Kaplan did not make a

---

[1] (Dkt. no. 68 at 21 (citing Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 829 (1994)).)   "In the same way that a car theft defendant cannot extricate himself from exposure by eventually returning the stolen vehicles," the Court explained, "a contempt defendant is not entitled to dismissal because he eventually complied with the previously disobeyed orders."   (Id.)

judicial "determination" that imposing civil contempt sanctions would be inappropriate or futile.  (See dkt. no. 274 at 1-3.) Like Mr. Donziger's previous motions to dismiss, the Special Prosecutors oppose this motion.  (See dkt. no. 288.)

## II. Discussion

### a. Motion for Reconsideration

The standard governing reconsideration motions "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" Analytical Survs., Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (quoting Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998).  Nor is a reconsideration motion properly made to "reargue those issues already considered when a party does not like the way the original motion was resolved." United States v. Lisi, No. 15 Cr. 457 (KPF), 2020 WL 1331955, at *2 (S.D.N.Y. Mar. 23, 2020) (quotation marks omitted).

Mr. Donziger asserts that reconsideration of the Court's May 7, 2020 order is warranted as to Counts IV and V of the Order to Show Cause, which charge violations of paragraph 1 of the RICO Judgment. (See dkt. no. 274 at 1-3; see also dkt. no. 1 ¶¶ 10-12, 15.) Count IV is based on Mr. Donziger's refusal to assign to Chevron, between March 4, 2014 and September 3, 2018, his 6.3% contingent fee interest in the Ecuadorian Judgment pursuant to a January 5, 2011 Retainer Agreement (the "2011 Retainer"). (See id. ¶¶ 10-14.) Count V is predicated on Mr. Donziger's failure to assign to Chevron, between November 1, 2017 and May 27, 2019, his 6.3% contingent fee interest in the Ecuadorian Judgment pursuant to a Retainer Agreement entered into on or about November 1, 2017 (the "2017 Retainer"). (See id. ¶¶ 15-18.) Mr. Donziger avers that it was unlawfully excessive for Judge Kaplan to charge him with Counts IV and V after he had purged the underlying contempt by transferring his interests under the 2011 Retainer and 2017 Retainer to Chevron. (See dkt. no. 274 at 1-3.) Put differently, Mr. Donziger asserts "that criminal contempt may be used only as a last resort," which Mr. Donziger maintains could not have happened here. (Id. at 2.)

Mr. Donziger's theory essentially combines two arguments that he raised in his initial pretrial motions: (1) that some of the charges were unwarranted because Mr. Donziger had purged the

contempts before he was criminally charged, and (2) Judge Kaplan improperly invoked criminal contempt sanctions, i.e., he did not use criminal contempt as a "last resort" option.  (See dkt. no. 60 at 1, 5, 24, 31-32.)  The Court rejected those contentions separately after reviewing the controlling precedent, including Young, 481 U.S. at 801, on which Mr. Donziger principally relies.  (See dkt. no. 68 at 21-23; see also dkt. no. 274 at 2.)  Based on that, whether Mr. Donziger's new theory combining two previously rejected ones is a proper subject for a reconsideration motion is questionable.  See Analytical Survs, 684 F.3d at 52.

But even setting that aside and assuming reconsideration would otherwise be proper, Mr. Donziger still would not be entitled to a dismissal of Counts IV and V.  It is hornbook law that the same contemptuous act can subject a contemnor to both civil and criminal sanctions.[2]  That makes sense because civil

---

[2] See, e.g., In re Grand Jury Witness, 835 F.2d 437, 440 (2d Cir. 1987) ("Refusal to obey a court order may subject a person to both civil and criminal contempt for the same acts."); SEC v. Am. Bd. of Trade, Inc., 830 F.2d 431, 439 (2d Cir. 1987) ("When a district court's order has been violated, the court may impose either civil contempt remedies or criminal contempt sanctions, or both."); Universal City Studios, Inc. v. N.Y. Broadway Int'l Corp., 705 F.2d 94, 96 (2d Cir. 1983) ("Though the use of judicial power to secure future compliance with a court order involves civil contempt remedies, the use of such power in the aftermath of past violations can take the form of either civil contempt remedies or criminal contempt punishments, or both." (citations omitted)); In re Weiss, 703 F.2d 653, 664 (2d Cir. 1983) ("If conduct is tantamount to a willful refusal to obey an

and criminal contempt serve two different purposes.[3]  Indeed, In re Irving--which Mr. Donziger avers establishes the legal rule for which he advocates, (see dkt. no. 274 at 2)--recognizes that, "[i]n responding to a single contemptuous act, a court may well impose both criminal and civil sanctions wishing to vindicate its authority and to compel compliance."  600 F.2d 1027, 1031 (2d Cir. 1979) (emphasis added).  The fact that Mr. Donziger ultimately acquiesced to Judge Kaplan's orders before he was criminally charged does not mean that Judge Kaplan was then forced to ignore the years of alleged noncompliance up to the purges.[4]  Mr. Donziger's motion for reconsideration of the Court's May 7, 2020 order is denied.

### b. Motion to Dismiss

Next, Mr. Donziger asserts that all six criminal contempt charges must be dismissed as procedurally deficient because "Judge Kaplan failed to make basic determinations that are a condition precedent to using the criminal contempt power,"

---

order of the court, and the contemnor has the power to end his contumacy, a court may impose criminal contempt sanctions, or civil contempt sanctions, or both.")

[3] See, e.g., In re Grand Jury Witness, 835 F.2d at 440 ("An adjudication of civil contempt is coercive--to compel obedience to a lawful court order--criminal contempt is imposed to punish the contemnor for an offense against the public and to vindicate the authority of the court.").

[4] Count IV alleges a period of noncompliance of more than four years, (see dkt. no. 1 ¶¶ 10-14), and Count V alleges a period of noncompliance of nearly two years, (see id. ¶¶ 15-18).

namely that imposing civil sanctions would be "inappropriate or useless." (Dkt. no. 274 at 1, 3.) To support that position, Mr. Donziger invokes a passage from Irving, which states that "[a] judge should resort to criminal contempt only after he determines that holding the contemnor in civil contempt would be inappropriate or fruitless." 600 F.2d at 1037 (citing Shillitani v. United States, 384 U.S. 364, 371 & n.9 (1966)).

Mr. Donziger's contention misses the mark. In Universal City, 705 F.2d at 96 n.1--a case decided four years after Irving--the Court of Appeals explicitly rejected the contemnors' argument that "criminal contempt sanctions may not be imposed until there has been a determination that civil contempt remedies are ineffective." The contemnors had relied on Shillitani, just as Irving did. In so holding, the Court of Appeals clarified that Shellitani's rule--and, by extension, Irving's--"applies when a court is endeavoring to secure future compliance with a court order, not when a court is taking cognizance of past violations." Id. (citations omitted) (emphasis added). Put simply, contrary to Mr. Donziger's assertions, Irving does not impose a procedural requirement for charging criminal contempt when the charges are backward-looking rather than forward-looking. The contempt charges in this case are of the latter variety: Each criminal contempt charge

10

alleges Mr. Donziger's <u>past violations</u> of Judge Kaplan's orders. (<u>See</u> dkt. no. 1 ¶¶ 3, 6, 9, 14, 18, 21.)

In short, because the criminal contempt charges against Mr. Donziger are not directed at securing his future compliance with a court order, <u>Irving</u> provides him no help.  Accordingly, Mr. Donziger's <u>Irving</u>-based motion to dismiss is denied.

## III. **Conclusion**

For the foregoing reasons, Mr. Donziger's (1) motion for reconsideration and (2) fourth motion to dismiss [dkt. no. 274] are <u>DENIED</u>.  The Clerk of the Court shall close the open motions.

**SO ORDERED.**

Dated:     May 7, 2021
           New York, New York

                    _Loretta A. Preska_
                    LORETTA A. PRESKA
                    Senior United States District Judge

11