**GLAVIN PLLC**
2585 Broadway #211
New York, New York 10025
646-693-5505

August 24, 2021

**VIA ECF**
Honorable Loretta A. Preska
U.S. District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    <u>United States v. Donziger</u>, 19 Cr. 561 (LAP); [11 Civ. 691 (LAK)]

Dear Judge Preska:

      The Special Prosecutors respectfully submit this memorandum in advance of the sentencing of defendant Steven Donziger on October 1, 2021. On July 26, 2021, Mr. Donziger was convicted of six counts of criminal contempt in violation of 18 U.S.C. § 401(3) following a five-day bench trial. Dkt. 346. On all six counts, Mr. Donziger faces a maximum of "six months' imprisonment or a $5,000 fine." Dkt. 87 at 6. Set forth below is our assessment of the advisory U.S. Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") and the 18 U.S.C. § 3553(a) factors to be considered in imposing a sentence. We make no specific recommendation with respect to Mr. Donziger's sentence, deferring to the Court on the appropriate sentence to impose for Mr. Donziger's criminal contempt that goes to the rule of law and our system of justice.

    I.    **BACKGROUND**

      By order to show cause dated July 30, 2019 (the "Order to Show Cause"), Judge Lewis A. Kaplan charged Mr. Donziger with six counts of criminal contempt, in violation of 18 U.S.C. § 401(3), arising from Mr. Donziger's refusal to comply with multiple court orders in the *Chevron Corp. v. Donziger et al.,* 11 Civ. 691 (S.D.N.Y.) (the "Civil Case"). Civ. Dkt. 2276. Section 401(3) provides, in pertinent part: "A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as. . . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3).

      The criminal charges were premised on Mr. Donziger's willful violations of three court orders in the Civil Case: (1) the March 4, 2014 RICO Judgment, GX 1875; (2) the March 5, 2019 Forensic Inspection Protocol (the "Protocol") requiring Mr. Donziger to provide to a neutral forensic expert his electronic devices for imaging and a list of all of his electronic devices and accounts for messaging and document storage, GX 2172; and (3) a June 11, 2019 order

Hon. Loretta A. Preska
August 24, 2021
Page 2

directing Mr. Donziger to surrender all of his passports to the Clerk of the Court, GX 2232. Dkt. 346 at 5-6. The Order to Show Cause charged as follows:

> <u>Count I</u>. For the period of March 8, 2019 to May 28, 2019, Mr. Donziger willfully violated paragraph four of the Protocol, which directed him to provide, by March 8, 2019, a sworn list of all his electronic devices, communication and messaging accounts, and document management services accounts that he had used since March 4, 2012.
>
> <u>Count II</u>. For the period of March 18, 2019 to at least May 28, 2019, Mr. Donziger willfully violated paragraph five of the Protocol, which directed him to surrender, on March 18, 2019 at 12:00 p.m., to a neutral forensic expert all of his "Devices" and "Media" for imaging.
>
> <u>Count III</u>. Mr. Donziger willfully violated the Passport Order, which directed him to surrender, to the Clerk of Court by June 12, 2019 at 4:00 p.m., every passport issued to him.
>
> <u>Count IV</u>. For the period of March 4, 2014 to September 3, 2018, Mr. Donziger willfully violated paragraph one of the RICO Judgment by refusing to assign to Chevron his contractual rights to a contingent fee under the 2011 Retainer.
>
> <u>Count V</u>. For the period November 1, 2017 to May 27, 2019, Mr. Donziger willfully violated paragraph one of the RICO Judgment by refusing to assign to Chevron his contractual rights under the 2017 Retainer.
>
> <u>Count VI</u>. On December 23, 2016, Mr. Donziger willfully violated paragraph five of the RICO Judgment by assigning and pledging a portion of his own personal interest in the Ecuadorian Judgment in exchange for personal services.

Dkt. 346 at 6-7; *see* Dkt. 1.

On May 18, 2020, prior to trial, the Court determined that "although 18, U.S.C., Section 401 does not prescribe any maximum penalty, a review of the cases, particularly *United States v. Cutler*, 796 F. Supp. 710 (E.D.N.Y. 1992), persuades the Court that, if convicted, defendant should be sentenced to no more than six months' imprisonment or a $5,000 fine." Dkt. 87 at 5-6.

The bench trial in this matter was held from May 10 – May 17, 2021. The Special Prosecutors elicited testimony from seven witnesses and more than 160 exhibits were

received into evidence. *See* Dkt. 326 at 7-8. Mr. Donziger did not call a single witness and elected not to testify in his own defense, waiving his right to do so in open court. Dkt. 346 at 8-9. Following the trial, "and upon careful consideration of the trial record and arguments made in the post-trial briefing," the Court found Mr. Donziger guilty of all six counts of criminal contempt in its 245-page Findings of Fact and Conclusions of Law. Dkt. 346 at 3.

With respect to the offense conduct, we respectfully incorporate by reference the Court's findings in the July 26, 2021 Findings of Fact and Conclusions of Law, Dkt. 346.

## II.   PRESENTENCE INVESTIGATION REPORT AND THE U.S. SENTENCING GUIDELINES

### A.   Waiver of Pre-Sentence Investigation Report

After conferring with Ronald Kuby, defense counsel to Mr. Donziger, we understand that Mr. Donziger waives any presentence investigation and presentence investigation report, as set forth in Fed. R. Crim. P. 32(c)-(d), and that Mr. Donziger prefers to proceed to sentencing without a presentence interview, investigation and report. The Special Prosecutors do not object to the defense's position insofar as the Court "finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553, and…explains its finding on the record." Fed. R. Crim. P. 32(c)(1)(A)(ii); *see also United States v. McCoy*, 828 F. App'x 910, 911 (4th Cir. 2020) (finding no abuse of discretion in criminal contempt proceeding where district court "explicitly found that a presentence report was not necessary and counsel agreed" and "the court explained its reasoning for dispensing with a presentence report and offered counsel additional time to present any evidence regarding the § 3553(a) factors.").

### B.   The Sentencing Guidelines

The advisory Sentencing Guidelines promote the "basic aim" of Congress in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States v. Booker*, 543 U.S. 220, 252 (2005). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

Section 2J1.1 of the Sentencing Guidelines applies to "contempt," and directs court to "[a]pply § 2X5.1," which is for "Other Offenses." U.S.S.G. § 2J1.1. Section 2X5.1, in turn, provides that "[i]f the offense is a felony for which no guideline expressly has been promulgated, apply the most analogous offense guideline. If there is not a sufficiently analogous guideline, the provisions of 18 U.S.C. § 3553 shall control." U.S.S.G. § 2X5.1. Application Note 1 of Section 2J1.1 provides, in relevant part:

> Because misconduct constituting contempt varies significantly and the nature of the contemptuous conduct, the circumstances under which the contempt was committed, the effect the misconduct had

>on the administration of justice, and the need to vindicate the authority of the court are highly context-dependent, the Commission has not provided a specific guideline for this offense.

U.S.S.G. § 2J1.1, App. Note 1. In some cases, "the offense conduct [constituting contempt] will be sufficiently analogous to § 2J1.2," the Obstruction of Justice guideline, and in cases "involving the violation of a judicial order enjoining fraudulent behavior, the most analogous guideline is §2B1.1." U.S.S.G. § 2J1.1, App. Notes 1 and 3.

The Court has already determined that, if convicted, Mr. Donziger should be sentenced to no more than six months' imprisonment or a $5,000 fine. Dkt. 87 at 5-6. In *Cutler*, the Second Circuit noted the difficulty in applying the Sentencing Guidelines to criminal contempt cases charged under § 401(3) with a six-month maximum sentence:

>The Guidelines offer little guidance on sentences for defendants convicted of criminal contempt, in violation of 18 U.S.C. § 401(3), a misdemeanor. The applicable guideline, U.S.S.G. § 2J1.1, instructs the court to apply U.S.S.G. § 2X5.1…[which] in turn, tells the court to "apply the most analogous offense guideline," and, "[i]f there is not a sufficiently analogous guideline, the provisions of 18 U.S.C. § 3553(b)." That statute, in turn, commands the court to impose an appropriate sentence."

58 F.3d 825, 838 (2d Cir. 1995).

While there are criminal contempt cases in which courts have made findings regarding an applicable Guidelines calculation given the particular facts of the case,[1] our view is that the Court should look to the § 3553(a) factors here given that the maximum penalty is six months' imprisonment or a $5,000 fine. *See United States v. McCoy*, 828 F. App'x 910, 911-12 (4th Cir. 2020) ("Criminal contempt has no statutory maximum and can be treated as either a felony or as misdemeanor…[t]he length of a sentence for contempt thus rests in the sound discretion of the court….[h]ere, the district court thoroughly addressed the relevant factors under 18 U.S.C. § 3553(a), taking into account [the defendant's] family circumstances and medical needs, the seriousness of his offense, the need to promote respect for the law and to provide just punishment, and to deter others from violating the court's orders.").

---

[1] *See, e.g.*, *United States v. Brennerman*, 17-cr-155 (LAK) (S.D.N.Y. May 21, 2018), Dkt. 152 at 5, 12 (finding § 2J1.2 to apply given that "contempt constituted willful disobedience of court orders, compelling certain actions, and that is certainly analogous to obstruction of justice" and sentencing defendant to 24 months' imprisonment, a three-year term of supervised release, payment of a mandatory special assessment of $200, and a fine of $10,000 based on a Guidelines range of 24 to 30 months' imprisonment); *United States v. Vario*, 2 CR 652 (RWS), 2003 WL 1740433, at *2 (S.D.N.Y. Apr. 2, 2003) (noting that "[s]ince Vario attempted to embezzle funds from a pension fund, the most analogous offense guideline is § 2B1.1," and sentencing him to six months' imprisonment and a three-year term of supervised release).

We do note that Mr. Donziger's Criminal History Category is I and, pursuant to U.S.S.G. § 3D1.2(b), the six counts should be grouped because they involve substantially the same harm. Further, after determining the defendant's ability to pay a fine, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2.

**III.     Section 3553(a) Factors**

Courts must consider the factors outlined in Title 18, United States Code, Section 3553(a), and "impose a sentence sufficient, but not greater than necessary" to comply with the purposes set forth in § 3553(a)(2). In determining the particular sentence to be imposed, the court shall consider—

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for…(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines…
>
> (5) any pertinent policy statement…
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).   In imposing sentence, it is entirely proper for a judge to take into consideration his or her "own sense of what is a fair and just sentence under all the circumstances." *United States v. Jones*, 460 F.3d 191, 195 (2d Cir. 2006).

Hon. Loretta A. Preska
August 24, 2021
Page 6

As a preliminary matter, "a lawyer, of all people, should know that in the face of a perceived injustice, one may not take the law into his own hands."  Dkt. 346 at 240 (citing *Cutler*, 58 F.3d at 840).

Here, Mr. Donziger repeatedly and willfully disregarded court orders over the course of years.  Mr. Donziger's disobedience was deliberate and repeated.  He has expressed no remorse for his conduct.  To this day, Mr. Donziger has not produced documents he was ordered to produce in the Civil Case back in 2018 and withheld on rejected First Amendment grounds.  Mr. Donziger still has not complied with Paragraph Five of the Protocol.  The Court should take these facts into account in imposing sentence.  The Court should also consider a sentence to deter those who would seek to undermine the rule of law in this way in the future, as well as to promote respect for the law and the principle that court orders cannot be broken with impunity.

### A. The Nature and Circumstances of the Offense

  1. *Counts Four and Five: Donziger Failed and Refused to Transfer and Assign to Chevron his 2011 and 2017 Contingent Fee Interests*

With respect to Counts Four and Five, Mr. Donziger acted willfully and knowingly when he did not transfer "forthwith" and assign his property rights to the 2011 Contingent Fee and 2017 Contingent Fee (as well as his stock in Amazonia), and instead played a shell game regarding his property rights, refusing to timely, completely, and properly transfer his interests in the Ecuadorian Judgment in whichever form they existed.  Dkt. 327 ¶ 177.  Mr. Donziger had no intention of complying with Paragraph One of the RICO Judgment—which required him to transfer his property right to the Amazonia shares and to the 6.3% contingent fee – because he did not want to relinquish his "nine-figure payday" interest of up to $540 million in the fraudulently obtained Ecuadorian Judgment.  *Id*. at ¶ 178; Dkt. 346 at 219, 219 n.751.  The evidence established unequivocally that Mr. Donziger – an attorney – understood the plain terms of Paragraph One of the RICO Judgment, but "consciously disregard[ed]" Paragraph One, and chose not to transfer and assign the 2011 Contingent Fee for more than four years – from March 4, 2014 to and including September 3, 2018.  Dkt. 346 at 188, 198-99, 222.

Mr. Donziger never disputed that from 2014 to 2018 he did not comply with Paragraph One's direction that he "transfer and forthwith assign to Chevron" that right.  Dkt. 327 ¶ 181.  Indeed, even after Judge Kaplan put Mr. Donziger on notice on May 16, 2018 that the Court would consider a motion to hold him in contempt for failure to transfer his right to the 2011 Contingent Fee ordered by Paragraph One, Mr. Donziger still did not execute a transfer to Chevron.  Dkt. 346 at 220; Dkt. 327 ¶ 181; GX 2006; Tr. at 150:25-151:2.  In September 2018, only after motion practice (GX 2046, 2047, 2075), did Mr. Donziger finally execute a notarized assignment of 2011 Contingent Fee interest.  Dkt. 346 at 199-200; Dkt. 327 ¶ 181; GX 2085-1; Tr. at 180-181.

Not only did Mr. Donziger refuse for years to surrender his property right to the 2011 Contingent Fee, Mr. Donziger secretly entered into the 2017 Retainer *after* the RICO

Hon. Loretta A. Preska
August 24, 2021
Page 7

Judgment, which granted to him personally the 2017 Contingent Fee interest and "superseded" the 2011 Retainer. Dkt. 346 at 44, 221-222; Dkt. 327 ¶¶ 173, 182; GX 201; Tr. at 200:24-205:13. The 2017 Retainer only came to light in response to questions at his June 25, 2018 deposition. *Id*. Soon thereafter, Mr. Donziger produced a copy of the 2017 Retainer to Chevron, even though it was responsive to a document request that would have required compliance before – by June 15, 2018 – as per a May 17, 2018 discovery order. Dkt. 327 ¶ 182; GX 1989-1A, 2009, 118. On May 28, 2019—only after Judge Kaplan found him in civil contempt for failing to assign to Chevron the property interest granted to him by the 2017 Retainer and imposed coercive fines to compel compliance—did Mr. Donziger finally assign to Chevron the 2017 Contingent Fee interest. Dkt. 346 at 200-201; Dkt. 327 ¶ 184; GX 136, 2216-1; Tr at 229-30.

> 2. *Count Six: Mr. Donziger's Disobedience of Paragraph Five of the RICO Judgment By Pledging A Portion of His Personal Interest in the Ecuador Judgment in Exchange for Personal Services*

With respect to Count Six, Mr. Donziger pledged a portion of his contingent fee interest to a life coach in exchange for thousands of dollars of services. He did this knowing this transaction violated Paragraph Five of the RICO Judgment—which specifically prohibited him from profiting from the Ecuadorian judgment, including by pledging his interest in that judgment. Mr. Donziger subsequently failed to produce to Chevron documents evidencing that transaction despite being ordered to do so by Judge Kaplan. Dkt. 326 at 228-229.

Mr. Donziger specifically acknowledged that Paragraph Five prohibited him from monetizing the Ecuadorian Judgment by selling or pledging his own interest in that judgment[2] —which Judge Kaplan found he had obtained by fraud and corruption. Dkt. 346 at 225. To stave off Chevron's application for post-judgment discovery on his compliance with the RICO Judgment, Mr. Donziger repeatedly represented that he had not sold his interest in the Ecuadorian judgment.[3] *Id.* at 225-226. Nonetheless, on December 23, 2016, Mr. Donziger entered into an arrangement with life coach David Zelman to compensate him for providing Mr. Donziger with the Transitions Process Program by pledging to Mr. Zelman a portion of Mr. Donziger's personal contingency interest in the Ecuadorian Judgment. Dkt. 346 at 203-204; Dkt. 327 ¶ 190; GX 105, 106; Tr. at 574:17-575:24; 576:12-25. Mr. Donziger proposed the financial arrangement with a pledge of his interest via a December 21, 2016 email to Mr.

---

[2] *See, e.g.*, GX 2010 at 18:23-19:1 (May 8, 2018 Hearing) ("I am not selling my own shares, because that obviously is prohibited by your Honor's RICO judgment."); GX 2051 at 2 (Donziger July 9, 2018 Ltr.) ("It remains that Chevron has not presented even a scintilla of evidence that I have sold any of my interests in the Ecuador judgment—the *only operative factual question* at issue that could provide a basis for a contempt finding on the judgment compliance issue.")

[3] *See, e.g.*, GX 2010 at 21:5-7 ("What evidence have they presented to show I have sold a single piece of my interest? Zero. And it hasn't happened. I'll make that representation right now."); *Id.* at 26:3-4 ("I'm not selling my shares; I'm selling my clients' shares.").

Hon. Loretta A. Preska
August 24, 2021
Page 8

Zelman, and Mr. Zelman accepted the arrangement via a December 23, 2016 email to Mr. Donziger. Dkt. 327 ¶ 191; GX 105, 106.

Mr. Donziger knew that his financial agreement with Mr. Zelman violated the RICO Judgment, which is why he made no disclosure of that arrangement during the post-judgment discovery process. Dkt. 327 ¶ 195. He did not produce his emails with Mr. Zelman even though they were responsive to discovery requests with which he had been ordered to comply. Dkt. 346 at 227-228; Tr. at 355:8-11. After Chevron took Mr. Zelman's deposition in February 2019, on March 20, 2019, Chevron moved to hold Mr. Donziger in contempt for his financial arrangement with Zelman. Dkt. 346 at 57; GX 2179. Mr. Donziger spoke with Mr. Zelman about how their arrangement had become problematic, which prompted Mr. Zelman to send Mr. Donziger an email on April 21, 2019 "canceling our deal" due to "all the complications regarding our financial arrangement." Dkt. 346 at 58; Dkt. 327 ¶ 197; GX 135; Tr. at 590:6-24. By pledging a portion of his own interest in the Ecuadorian judgment to Zelman in exchange for receiving personal consulting services from Zelman, Mr. Donziger disobeyed the plain terms of Paragraph Five of the RICO Judgment.

> 3. *Counts One and Two: Mr. Donziger's Disobedience of Paragraphs Four and Five of the Protocol*

With respect to Counts One and Two, Mr. Donziger deliberately disobeyed Paragraph Four of the Protocol between March 8, 2019 and May 28, 2019 by not providing the required list of his devices and accounts to neutral forensic expert Ondrej Krehel, and deliberately disobeying Paragraph Five of the Protocol by refusing to surrender his devices to Mr. Krehel for imaging on March 18, 2019. Dkt. 346 at 211, 213. Judge Kaplan resorted to the Protocol only after Donziger had stonewalled discovery and failed to produce documents as directed by court orders.

With respect to Paragraph Four, the first time Mr. Donziger emailed any list to Mr. Krehel purporting to list his electronic devices and accounts was three months later, on May 29, 2019—only after Judge Kaplan found Mr. Donziger in civil contempt and coercive fines commenced on May 28, 2019. Dkt. 346 at 211-212; GX 138, 2230-1, 2209 at 73; Tr. at 804:19—806:10. When Krehel informed Chevron's attorneys and Mr. Donziger, via a March 11, 2019 email, that he did not receive any listing of devices or accounts from Mr. Donziger, Mr. Donziger did not dispute this assertion. Dkt. 326 at 100; GX 132. Indeed, in a March 11, 2019 email responding to Mr. Krehel, Mr. Donziger broadcast his intent not to comply with the Protocol: "I clearly have stated that I will voluntarily go into civil contempt of the legally unfounded orders in order to obtain proper appellate review." Dkt. 346 at 100-101, 212-213; GX 133. Mr. Donziger further told Mr. Krehel that appointing him and issuing the Protocol was a "pointless process" and that "I hope you have not cleared your schedule to work on this matter, because, as Chevron knows, I will not be producing documents until my due process rights are respected." Dkt. 346 at 230-231; Dkt. 327 ¶ 151; GX 133.

As for Paragraph Five, Mr. Donziger never surrendered any devices to Mr. Krehel for imaging, despite acknowledging that he had devices. Dkt. 346 at 213-214; Dkt. 327 ¶ 156;

Hon. Loretta A. Preska
August 24, 2021
Page 9

Tr. at 803:6-804:6, 805:19-806:10; GX 138.  On March 18, 2019, when Mr. Krehel arrived at Mr. Donziger's address to collect the devices for imaging, Mr. Donziger was not there at 12:00 p.m. Dkt. 346 at 213-214; Tr. at 796:8-799:4.  Mr. Krehel stayed in the building lobby and Mr. Donziger walked in around 1:00 p.m. Dkt. 346 at 213-214; Tr. at 798:1-19.  Mr. Donziger told Mr. Krehel that he would not be surrendering his devices for imaging.  *Id.*

When Chevron moved on March 20, 2019 to hold Mr. Donziger in civil contempt for disobeying Paragraphs Four and Five of the Protocol (GX 2175, 2176), Mr. Donziger's April 8, 2019 response did not dispute that he did not comply with Paragraphs Four and Five.  Dkt. 327 ¶ 152; GX 2184.  He stated: "it is my intention to go into voluntary contempt as a matter of principle rather than submit to the review process prior to achieving any appellate review."  Dkt. 346 at 104, 231; GX 2184 at 4-5.

Mr. Donziger knew full well that there were appellate options available to him—such as applications for a stay, mandamus, and/or expedited appeal—based on his years of litigation with Chevron and his previous filings with the Second Circuit seeking precisely that kind of relief from orders with which he disagreed and did not want to comply. Dkt. 327 ¶ 153; GX 3, 4, 5, 300, 301, 302, 304, 305, 400, 401, 1000-327, 501, 502; Tr. at 661:2-682:9.  Mr. Donziger, however, did not seek any emergency relief from the Court of Appeals from complying with the Protocol.  Dkt. 346 at 99-100; Tr. at 656:13-19.  Mr. Donziger instead chose to disobey court orders.  Dkt. 327 ¶ 153.

Moreover, when Mr. Donziger finally did file his appellate brief, *he never challenged the Protocol order requiring him to turn over his devices to the neutral forensic expert for imaging and to provide a list of devices and accounts.* Mr. Donziger in no way challenged Judge Kaplan's contempt findings regarding Mr. Donziger's disobedience of the Paragraphs Four and Five of the Protocol. Dkt. 346 at 164.

To our knowledge, Mr. Donziger still has not surrendered his devices to the neutral forensic expert for imaging despite the fact that the Protocol has never been stayed.

    4.  *Count Three: Mr. Donziger's Disobedience of the Passport Surrender Order*

With respect to Count Three, Mr. Donziger willfully disobeyed the June 11, 2019 Passport Order directing him to surrender all of his passports to the Clerk of the Court by June 12, 2019 at 4 p.m.  *See* GX 2232 at 2.  The June 11, 2019 Passport Surrender Order – which was imposed as an additional coercive sanction for Mr. Donziger's refusal to comply with the Protocol – directed Mr. Donziger, "on or before June 12, 2019 at 4 p.m." to "surrender to the Clerk of the Court each and every passport issued to him by each and every nation to have issued a passport to him, the Clerk to retain possession thereof unless and until this Court determined that Donziger has complied fully with paragraphs 4 and 5 of the Protocol."  Dkt. 346 at 111, 215; GX 2232 at 2.

Mr. Donziger knew on June 10, 2019 that Chevron was seeking an order directing that he surrender his passports as a further measure to coerce his compliance with Paragraph Five

Hon. Loretta A. Preska
August 24, 2021
Page 10

of the Protocol given that the coercive fines had not induced compliance. Dkt. 327 ¶ 167; GX 2229. Despite stating at a June 10, 2019 hearing, "I will voluntarily surrender my passport until I can deal with it at the Second Circuit," Mr. Donziger did not do so. Dkt. 346 at 216; Dkt. 327 ¶ 167; GX 2352 at 16:8-9; Tr. at 338:8-25. Judge Kaplan denied Mr. Donziger's request for a stay and stated that he remains "obligated" to surrender his passports to the Clerk as previously directed. Dkt. 346 at 216; GX 2254 at 4. Mr. Donziger never sought any relief from the Court of Appeals – he simply chose not to comply because he disagreed with the order. Dkt. 346 at 216-217; Dkt. 327 ¶¶ 160, 169, 170; GX 9; Tr. at 657:3-9.

### B. The Need to Promote Respect for the Law and Adequate Deterrence

Promoting respect for the law is paramount in a case such as this, involving Mr. Donziger's ongoing refusal to comply with court orders. Here, the Court should impose a just punishment to uphold respect for the law. Indeed, as this Court found:

> …[T]his case is no less important to a society, like ours, that holds the *rule of law among its cardinal virtues*. Indeed, at stake here is the fundamental principle that a party to a legal action must abide by court orders or risk criminal sanctions, no matter how fervently he believes in the righteousness of his cause or how much he detests his adversary.

Dkt. 346 at 1-2 (emphasis added).

With respect to specific deterrence, Mr. Donziger – a now disbarred Harvard-educated lawyer[4] – disobeyed not one, but a series of orders starting with the March 4, 2014 RICO Judgment. He remains in noncompliance with: (1) the Protocol order directing the surrender of his devices for imaging and (2) discovery orders directing his production of documents he withheld on First Amendment grounds that Judge Kaplan rejected (Dkt. 327 at ¶¶ 79, 83, 84, 86, 88-95). Critically, Mr. Donziger knowingly evaded court orders to play a shell game with his property rights to the $8.6 billion Ecuadorian Judgment, of which he stood to make up to $540 million, to avoid giving up rights to a hefty "nine-figure payday" even though he had been found to have procured the Judgment underlying those rights by fraudulent means. He knowingly refused to turn over his devices as directed by the Protocol – a measure that would have been unnecessary had he previously complied with prior orders of the district court. After the imposition of monetary sanctions failed to coerce Mr. Donziger's compliance with the Protocol, Mr. Donziger refused to surrender his passport(s) as directed by Judge Kaplan as an additional coercive sanction.

---

[4] In an August 13, 2020 *per curiam* order, the New York State Appellate Division, First Department, disbarred Mr. Donziger from the practice of law in the State of New York. *Matter of Donziger*, 186 A.D.3d 27 (1st Dep't 2020) (*per curiam*). Mr. Donziger's motion for leave to appeal his disbarment to the Court of Appeals was denied on May 6, 2021. *Matter of Donziger*, 36 N.Y.3d 913 (2021).

Mr. Donziger has shown no contrition for his disobedience or acknowledgement of the principle that "court orders cannot be broken with impunity." *Cf. United States v. Terry*, 92 Cr. Misc. #1 Pg. 46 (RJW), 1995 WL 46679, at *1 (S.D.N.Y. Feb. 7, 1995) (reducing five-month sentence of imprisonment to probation and home confinement following defendant's acknowledgment of responsibility). The sentence to be imposed on Mr. Donziger in this case should reflect that court orders are not to be defied or circumvented—by Mr. Donziger or anyone else. The justice system depends on compliance with court orders.

### C. Other Factors

Given that "misconduct constituting contempt varies significantly," U.S.S.G. § 2J1.1, App. Note 1, courts have imposed a wide range of sentences for criminal contempt convictions following bench trials. *See, e.g.*, *United States v. Weslin*, 01-CR-02, 204 F. Supp. 2d 547, 548 (W.D.N.Y. 2001), Dkt. 28, *aff'd*, 34 Fed. Appx. 815 (2d Cir. 2002 (unpubslihed) (5 months' imprisonment); *Rojas v. United States*, 55 F.3d 61, 63 (2d Cir. 1995) (3 months' imprisonment); *United States v. Agajanian*, 852 F.2d 56, 57-58 (2d Cir. 1988) (3 months' imprisonment); *In re Crim. Contempt Proceedings Against Crawford*, 329 F.3d 131 (2d Cir. 2003) (30 days' imprisonment); *United States v. Cutler*, 58 F.3d 825 (2d Cir. 1995) (90 days' house arrest, 3 years' probation, 180-day legal practice suspension, and 600 hours of community service); *In re Pollack*, 07-MC-347 (ARR), 2008 WL 4327000 (E.D.N.Y. Sept. 22, 2008), Dkt. 40 (2 years' probation and 45-day legal practice suspension).

Mr. Donziger has at all times been on pretrial release with conditions, including home detention to address the flight risk concern the Court found he posed.[5] The Court may consider Mr. Donziger's time spent on release with a condition of "home detention" as a factor in imposing sentence, however, Mr. Donziger's pretrial release conditions do not constitute "official detention."[6] We note that the home detention condition specifically permitted Mr.

---

[5] Mr. Donziger made at least eight trial adjournment requests. *See, e.g.*, Dkts. 111, 130, 180, 187, 194, 200-1, 204, 207.

[6] 18 U.S.C. § 3585(b) ("A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in *official detention* prior to the date the sentence commences…") (emphasis added); *see Reno v. Koray*, 115 S. Ct. 2021 (1995) (finding defendant not entitled to sentence credit for time spent confined at treatment center while released on bail because that confinement was not "official detention" within the meaning of 18 USC 3585(b)); *United States v. Edwards*, 960 F.2d 278, 283 (2d Cir. 1992) ("we conclude that a defendant…who is released on bail pending sentence, is not entitled to sentencing credit for the time spent on bail, during which he was placed under electronic monitoring and largely restricted to his residence, although such terms of release on bail ofttimes may be rather restrictive."); *King v. United States*, 2017 WL 1483337, at *61 (S.D.N.Y. Apr. 25, 2017) ("The period of home confinement was only a factor for the Court to consider in determining her sentence. The Court

Donziger to leave his residence for family obligations, employment, attorney visits, religious services, medical appointments, and other activities approved in advance by his Pretrial Services Officer.  Dkt. 4 at 5.   Mr. Donziger's Pretrial Services Officer recently informed us that he has been "outside daily" for various activities, including "walking his son to school and basketball practice each day, regularly going to the park with his son, attending sporting events such as professional baseball games with his son, going to the grocery store, and attending legal meetings several times a week, "and she also "approved Donziger attending the ballet with his son, but Donziger ultimately decided not to attend." Dkt. 345 at 12-13 and n.4.

### IV.    Conclusion

We request that the Court impose a sentence that is "sufficient, but not greater than necessary to comply with the purposes" set forth in 18 U.S.C. § 3553(a)(2).

Respectfully submitted,

_____/s/_____
Rita M. Glavin

*Special Prosecutor on behalf
of the United States*

---

was not required to afford the petitioner any credit for the time that she had spent in home confinement…").